WILLIAMS & CONNOLLY LLP
Joseph G. Petrosinelli, *pro hac vice*
Ashley W. Hardin, *pro hac vice*
680 Maine Avenue SW
Washington, DC 20024
Tel.: (202) 434-5000
jpetrosinelli@wc.com
ahardin@wc.com

*Attorney for Defendants YouTube, LLC
and Google LLC*

*[Additional parties and counsel listed on
signature pages]*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION,<br><br>THIS DOCUMENT RELATES TO:<br><br>*Charleston County School District v. Meta Platforms Inc., et al.* | MDL No. 3047<br><br>Case No.: 4:23-cv-04659-YGR<br><br>**PARTIES' JOINT PROPOSED JURY INSTRUCTIONS (CHARLESTON COUNTY SCHOOL DISTRICT)**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

1

## I.    Index

Plaintiff Charleston County School District and Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Instagram, LLC (collectively, "Meta"); Snap, Inc. ("Snap"); ByteDance Ltd.; ByteDance Inc.; TikTok Ltd.; TikTok LLC; and TikTok Inc. (collectively, "TikTok"); and Google LLC and YouTube LLC (collectively, "YouTube"), by and through their attorneys of record (collectively, the "Parties"), hereby submit these Joint Proposed Jury Instructions pursuant to Paragraph 3(g) of the Court's Standing Order Re: Pretrial Instructions in Civil Cases (last updated March 17, 2025).[1]

The Parties respectfully reserve the right to amend or supplement these proposed instructions and their objections thereto as the case proceeds towards trial, as the Parties continue to meet and confer regarding these instructions, and as the Court considers these proposals and objections.

| No. | Description | Whether the Parties Stipulate or Object |
|---|---|---|
| **Preliminary Instructions** | | |
| 1 | Duty of Jury | Stipulate. |
| 2 | Claims and Defenses | Charleston objects to this instruction in part. The Parties propose partial competing instructions. |
| 3 | Burden of Proof – Preponderance of the Evidence | The Parties propose partial competing instructions. |
| 4 | Companies | The Parties propose partial competing instructions. |
| 5 | Two or More Parties – Different Legal Rights | The Parties propose partial competing instructions. |
| 6 | What is Evidence | Stipulate. |
| 7 | Direct and Circumstantial Evidence | Stipulate. |
| 8 | What Is Not Evidence | Stipulate. |
| 9 | Evidence for a Limited Purpose | Stipulate (conditioned on limiting instruction being given). |

[1] The Parties submit, as Exhibits A and B, redlines reflecting the Parties' proposed modifications to the 9th Circuit Model Instructions, consistent with the Court's Standing Order at Paragraph 3(g)(ii)(H). The Parties understand that this instruction relates solely to the 9th Circuit Model Instruction, and does not apply to any model or pattern instructions regarding state law. However, the Parties are happy to provide such redlines against the state law model instructions if it would be helpful to the Court.

| No. | Description | Whether the Parties Stipulate or Object |
|---|---|---|
| 10 | Ruling on Objections | Stipulate (the Parties propose giving instruction before the start of evidence). |
| 11 | Credibility of Witnesses | Stipulate. |
| 12 | Publicity During Trial | Stipulate (the Parties propose giving instruction before the start of evidence). |
| 13 | No Transcript Available | Stipulate (the Parties propose giving instruction before the start of evidence). |
| 14 | Bench Conferences and Recesses | Stipulate (the Parties propose giving instruction before the start of evidence). |
| 15 | Video Deposition | Stipulate (the Parties propose giving instruction before the start of evidence). |
| 16 | Expert Opinion Testimony | Stipulate. |
| 17 | Protection for Publishing and Expressive Activity | The Parties propose complete competing instructions. |
| N/A | Transition Instruction | Stipulate. |
| **First Claim – Negligence** | | |
| 18 | Negligence – Elements | The Parties propose partial competing instructions. |
| 19 | Negligence – Proximate Cause | The Parties propose complete competing instructions. |
| 20 | Negligence – Substantial Factor | Defendants object to this instruction in full. |
| 21 | Negligence – Concurring Cause | Defendants object to this instruction in full. The Parties propose complete competing instructions. |
| 22 | Negligence – Intervening Cause | Defendants object to this instruction in full. The Parties propose complete competing instructions. |
| **Additional Substantive Instructions** | | |
| 23 | Statute of Limitations | Charleston objects to this instruction in full. The Parties propose partial competing instructions. |
| 24 | Comparative Negligence | Charleston objects to this instruction in full. The Parties propose complete competing instructions. |
| 25 | Assumption of Risk | Charleston objects to this instruction in full. The Parties propose partial competing instructions. |
| 26 | Damages – Nominal Damages | The Parties propose partial competing instructions. |
| 27 | Damages – Actual Damages | The Parties propose partial competing instructions. |

| No. | Description | Whether the Parties Stipulate or Object |
|---|---|---|
| 28 | Damages – Elements of Actual Damages in Negligence Cases | The Parties propose partial competing instructions. |
| 29 | Damages – Punitive Damages | Defendants object to this instruction in full.  The Parties propose partial competing instructions. |
| 30 | Burden of Proof – Clear and Convincing Evidence | Stipulate. |
| 31 | Damages – Pre-Existing Condition | Defendants object to this instruction in full. |
| 32 | Damages – Future Damages | Defendants object to this instruction in full.  The Parties propose partial competing instructions. |
| 33 | Damages – Double Recovery | Charleston objects to this instruction in full. |
| 34 | Damages – Duty to Mitigate Damages | Charleston objects to this instruction in full.  The Parties propose partial competing instructions. |
| **STOP (CLOSING ARGUMENTS)** | | |
| **Post-Closing Instructions** | | |
| 35 | Duty to Deliberate | Stipulate. |
| 36 | Consideration of Evidence | Stipulate. |
| 37 | Communications with Court | Stipulate. |
| 38 | Return of Verdict | Stipulate. |

PARTIES' JOINT PROPOSED JURY INSTRUCTIONS (CHARLESTON COUNTY SCHOOL DISTRICT)
4:22-md-03047-YGR

1    UNITED STATES DISTRICT COURT

2    NORTHERN DISTRICT OF CALIFORNIA

3    OAKLAND DIVISION

4

5    IN RE: SOCIAL MEDIA ADOLESCENT
     ADDICTION/PERSONAL INJURY
6    PRODUCTS LIABILITY LITIGATION

                                                    Case No. 4:23-CV-04659-YGR
7    This Document Relates to:

8    *Charleston County School District v. Meta*
9    *Platforms Inc., et al.*

10

11

12   **JURY INSTRUCTIONS (COVER PAGE)**

13

14

15   Dated: _____

16

17                                        _____

18                                        UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28

## II.    [Preliminary Instructions]

### 1.  INSTRUCTION NO. 1: DUTY OF JURY

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

**AUTHORITY**:        Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2025 ed., last updated September 2025) ("Ninth Cir. Model Instructions"), Instruction No. 1.4.

DATE SUBMITTED: January 28, 2026

## 2. INSTRUCTION NO. 2: CLAIMS AND DEFENSES

[*Plaintiff objects to instructing the jury on affirmative defenses in this instruction because Defendants have not demonstrated they are entitled to affirmative defenses instructions.*

*Defendants' proposal in green text; Charleston's proposal in blue text.*]

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The Plaintiff in this case is the Charleston County School District, also referred to as "Plaintiff" or the "School District." The Defendants in this case are four separate groups of social media technology companies:

(1) Meta Platforms, Inc. f/k/a Facebook, Inc. and Instagram, LLC, referred to collectively as "Meta;"

(2) Snap, Inc., referred to as "Snap."

(3) TikTok Inc., ByteDance Inc., ByteDance Ltd., TikTok Ltd., and TikTok, LLC, referred to collectively as "TikTok;" and

(4) YouTube, LLC and Google LLC, referred to collectively as "YouTube."

Collectively, these four groups social media companies are referred to as "Defendants."

Charleston County School District brings a claim of negligence against each Defendant. The School District asserts that the Defendants negligently designed, operated, and/or marketed their social media platforms to target students and schools. The School District asserts that the Defendants' actions caused students to experience problematic use, compulsive use, and/or addiction to their platforms, resulting in a deterioration of youth learning, mental health, and overall well-being. The School District also asserts that Defendants' actions disrupted school operations and negatively impacted the school environment. The School District asserts that Defendants' actions harmed the School District by requiring the School District to expend and redirect already limited resources. The School District further asserts that the harms to the School District are ongoing and will continue to cause the School District harm. The School District asserts that the consequences of Defendants' actions were foreseeable, and Defendants failed to warn about those consequences.

Charleston County School District has the burden of proving its claim. Later, I will explain the legal requirements that the School District must prove for each of these claims.

Defendants deny the School District's claims. Defendants also assert four three affirmative defenses: (1) failure to mitigate, (2) (1) comparative negligence, (3) (2) statute of limitations, and (4) (3) assumption of risk.   Defendants have the burden of proof on these affirmative defenses. If Defendants meet their burden of proof on any of these affirmative defenses, it will mean you cannot find for the School District, or it could reduce or eliminate Charleston County School District's claimed damages.  Charleston County School District denies Defendants' affirmative defenses.

**PLAINTIFFS' AUTHORITY**: Ninth Circuit Manual of Model Jury Instructions 1.5.

**DEFENDANTS' AUTHORITY**:  Ninth Cir. Model Instructions, Instruction 1.5.

DATE SUBMITTED: January 28, 2026

### 1.    Plaintiffs' Argument

**Social Media Companies.** Defendants' refusal to describe themselves as "social media companies" is unjustifiable. Demanding that they only be called "technology companies" is unduly restrictive for no legitimate reason, confusing, and prejudicial because it does not match reality, the testimony, or documentary evidence that will be admitted at trial, which commonly refers to Defendants as social media companies, including their own press releases. Nor is it prejudicial to Defendants to call them social media companies; that *is* what they are, hence the case caption.

**Statement of Case.** Defendants' cursory statement of the case does not explain the nature of the harm or the plaintiff's theory. Plaintiff's proposed instruction includes a brief, accurate, and neutral description of its theories of liability to provide the jury with essential context regarding the claims at issue, as the Court has requested. *See* YGR Pretrial Standing Order 3(h).  Contrary to Defendants' claims, Plaintiff's instruction includes detail consistent with this Court's practice, especially in complex cases.

Furthermore, Defendants misread Plaintiffs' instruction. They claim that Charleston's instruction is not accurate because "there is nothing inherently wrong" with their actions, but Charleston's instruction specifies that Defendants acted "negligently." Nor does Charleston say that it may recover for harm to students; rather, it makes clear that its actionable injuries arise from the "expend[iture] and redirect[ion of]" its resources. Similarly, Plaintiff's language that Charleston would hold Defendants liable for school disruptions and failure to warn is consistent with theories of liability that the Court has allowed to proceed. *See infra* [Negligence – Elements].

Finally, Defendants object that referring to them as "Defendants" will "improperly . . . lump Defendants together" when it comes to apportioning fault, and that the phrase "Defendants' actions" does not adequately explain their Section 230 and First Amendment defenses. But they propose no alternative—for example, Defendants' own instruction refers to them collectively. The use of these shorthand phrases here says nothing about the law on liability, apportionment, Section 230, or the First Amendment, on which the jury will be separately instructed as appropriate. *See infra* [Causation – Proximate Cause], [Causation – Substantial Factor], [Causation – Concurring Cause], [Section 230];  *see also State v. Brandt*, 713 S.E.2d 591, 549 (S.C. 2011) ("A jury charge which is

1  substantially correct and covers the law does not require reversal"); *United States v. Jackson*, 126

2  F.4th 847, 862 n.12 (4th Cir. 2025) (similar).

3  **Evidence Does Not Support Instruction on Affirmative Defenses.**  Charleston also objects

4  to Defendants' instruction on affirmative defenses. Under South Carolina law, "the trial court is

5  required to charge only principles of law that apply to the issues raised in the pleadings and

6  developed by the evidence in support of those issues." *Clark v. Cantrell*, 529 S.E.2d 528, 539 (S.C.

7  2000); *see also State v. Gaines*, 667 S.E.2d 728, 732 (S.C. 2008). As explained in Charleston's

8  specific objections to Defendants' proposed instructions on each of these defenses, Defendants have

9  not substantiated any basis from which the jury may find failure to mitigate, comparative

10  negligence, a statute of limitations bar, or assumption of risk. Thus, instructing on those defenses

11  would "consist[] of irrelevant and inapplicable principles [that] may confuse the jury." *Berberich v.*

12  *Jack*, 709 S.E.2d 607, 611 (S.C. 2011). If the Court denies any of Defendants' affirmative defense

13  instructions, it should remove mention of those instructions here.

14  **Mitigation is Not a Defense to Claims.** Plaintiffs object to including "failure to mitigate"

15  as an affirmative defense to "School District's *claims*." (emphasis added); *see infra* [Failure to

16  Mitigate]. Failure to mitigate is a limitation on damages, not a defense to liability. *See Baril v. Aiken*

17  *Reg'l Med. Centers*, 2005 WL 7083683, at *2 (S.C. Ct. App. Apr. 19, 2005) (rejecting defendant's

18  argument that plaintiff "should be barred from any recovery in this action because she failed to

19  mitigate her damages"). Thus, although mitigation is a "defense" in that Defendants bear the burden

20  of proof, *see Sloan Const. Co. v. Southco Grassing, Inc.*, 717 S.E.2d 603, 608 (S.C. 2011),

21  enumerating it alongside assumption of risk and comparative fault as a defense to Charleston's

22  "claims" will likely mislead the jury into believing that a finding of failure to mitigate operates as a

23  complete bar to recovery.

24  **2.      Defendants' Argument**

25  Defendants' Instruction is consistent with Ninth Circuit Jury Instructions and the Court's

26  Standing Order Re: Pretrial Instructions in Civil Cases ("Standing Order").[2] Defendants' Instruction

---

[2] Defendants maintain that summary judgment should be granted because Plaintiffs have not identified any actionable conduct that **caused** their alleged harms, and they submit these proposed instructions without waiving such arguments.

9

1  is modeled after Model Instruction 1.5, which requires: "a brief summary of the positions of the

2  parties" and goes on to identify the parties, "plaintiff's claims," "defendant's . . . . affirmative

3  defenses," which party has the burden of proving plaintiff's claims and defendant's affirmative

4  defenses, and the denials of the same.  Defendants' Instruction includes all of this information.  By

5  contrast, Plaintiff objects to instructing on affirmative defenses—a position that is in direct

6  opposition to Model Instruction 1.5.  Plaintiff can raise that argument after the close of evidence,

7  but it did not move for summary judgment on these defenses so they remain in the case.  Plaintiff's

8  argument on mitigation is unfounded.  Defendants' proposed instruction makes clear that not all

9  affirmative defenses are a bar on liability: it states that the defenses "could reduce or eliminate

10  Charleston County School District's claimed damages."

11      Plaintiff's proposed Instruction includes argumentative detail that goes beyond the Model

12  Instruction and is inconsistent with the Court's Standing Order.  Plaintiff's paragraph starting "The

13  School District asserts that Defendants . . ." sets out assertions that are unnecessary to assist the jury

14  and argumentative.  *See* Standing Order at 6 (instructions shall be "free of argument.").  By contrast,

15  Defendants propose a short and neutral summary that closely tracks the complaint.

16      In the same paragraph, Plaintiff improperly attempts to lump Defendants together, despite

17  South Carolina law requiring assessment of liability and apportionment of fault for each party.

18  Defendants object to Plaintiff's language that Defendants "negligently designed, operated,

19  and/or marketed their social media platforms to target students and schools" because it is not an

20  accurate description of their claims.  There is nothing inherently wrong with designing, operating,

21  or marketing a service to children or schools, and this language inaccurately tells the jury that those

22  things are actionable alone, but they are not.  Plaintiff has pointed to no case law supporting a

23  position that marketing to children or schools is inherently actionable.

24  Defendants object to Plaintiff's language (that "Defendants' actions caused students to

25  experience problematic use, compulsive use, and/or addiction to their platforms, resulting in a

26  deterioration of youth learning, mental health, and overall well-being").  Plaintiff may not recover

27  in this lawsuit for alleged harm to students.  Nor may Plaintiff recover for the "deterioration of

28

PARTIES' JOINT PROPOSED JURY INSTRUCTIONS (CHARLESTON COUNTY SCHOOL DISTRICT)
4:22-md-03047-YGR

1  [students'] learning, mental health, and overall well-being."  The only claims for which Plaintiff

2  may recover are that alleged mental health harms suffered by its students caused Plaintiff to incur

3  increased costs.  That should be made clear in the instruction.

4      Defendants also object to the language about disruption to and "negative impacts" because it

5  misstates what Plaintiff must prove.  Plaintiff must show actionable, concrete injuries.  Plaintiff's

6  language about "negative impacts" on "school operations" and the "school environment" is vague

7  and suggests to the jury that Plaintiff can recover if there is any unfavorable impact on the School

8  District.  That is not sufficient.  Plaintiff cannot recover for "disruption" not tied to student mental

9  health harms.  Unless the reason for the disruption is a mental health harm caused by Defendants'

10  platforms, Defendants cannot be liable, including because there is no wrongful conduct. Defendants

11  further object to "negative impacts" and "school environment" as vague, undefined, and confusing.

12      Defendants object to the use of the phrase "Defendants' actions" because it impermissibly

13  suggests that all alleged actions are subject to liability, which is not accurate in this case given the

14  Court's prior rulings on Section 230 and the First Amendment.

15      Defendants object to any instruction to the jury about Plaintiff's failure to warn theory

16  because it is not legally viable.  *See* ECF No. 2293 at 39–43; ECF No. 2510 at 6–12.

17      Defendants object to the use of "social media" to describe their platforms.  YouTube and

18  Snap do not agree with the characterization of their platforms as "social media," and that will be a

19  contested fact at trial.  Plaintiff offers no support for its purported definition of social media, and

20  gets the law wrong by characterizing Section 230 as "protections afforded to social media

21  companies"—Section 230 protects publishing activity.  Plaintiff factually asserts that references to

22  "social media" in the record mean these Defendants, but that is disputed.

23

24

25

26

27

28

PARTIES' JOINT PROPOSED JURY INSTRUCTIONS (CHARLESTON COUNTY SCHOOL DISTRICT)
4:22-md-03047-YGR

### 3.  INSTRUCTION NO. 3: BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE

[*Defendants' proposal in green text; Charleston's proposal in blue text.*]

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more likely true than not true.

Charleston County School District has the burden of proving its claim for negligence by a preponderance of the evidence.

The Defendants have each raised affirmative defenses, including statute of limitations, contributory negligence, assumption of risk, and failure to mitigate damages. Defendants have the burden of proving the affirmative defenses by a preponderance of the evidence.

You should base your decision on all of the evidence, regardless of which party presented it.

**PLAINTIFFS' AUTHORITY:**  Ninth Cir. Model Instructions, Instruction 1.6

**DEFENDANTS' AUTHORITY:**  Ninth Circuit Manual of Model Civil Jury Instructions 1.6.

DATE SUBMITTED: January 28, 2026

1

#### 1. Plaintiffs' Argument

Charleston objects to combining the Ninth Circuit pattern language with South Carolina pattern language. South Carolina's law on burden of proof is no different from any other state, and there is no reason to prefer this instruction over the standard instruction that other School Districts are using, and which Defendants have agreed to without objection for the majority of the School Districts.

To the extent that Defendants wish again to enumerate Plaintiff's claims and Defendants' affirmative defenses, that is accomplished in the Claims and Defenses instruction such that reiterating the instruction here would also be duplicative. *See supra* [Claims and Defenses]. As explained above, any such instruction should not include affirmative defenses that the evidence does not entitle Defendants to assert. *See id.*

PARTIES' JOINT PROPOSED JURY INSTRUCTIONS (CHARLESTON COUNTY SCHOOL DISTRICT)
4:22-md-03047-YGR

1          **2.      Defendants' Argument**

2          Plaintiff and Defendants agree that Ninth Circuit Manual of Model Civil Jury Instructions

3    1.6 is the appropriate model instruction.  Defendants do not object to Plaintiff's position that this

4    instruction should be given with the other Ninth Circuit model instructions prior to the substantive

5    instructions.  Defendants propose adding the two middle paragraphs to provide clarity on which

6    party has the burden on which claims.

### 4.   INSTRUCTION NO. 4: COMPANIES AND PUBLIC ENTITIES

[*Defendants' proposal in green text; Charleston's proposal in blue text.*]

The Defendants in this case are companies. The Plaintiff in this case is a public entity. All parties are equal before the law. Companies and public entities are entitled to the same fair and conscientious consideration by you as any party. Under the law, Plaintiff and Defendants are each considered to be a person and can only act through its subsidiaries, employees, agents, directors, or officers.  Therefore, Plaintiff and Defendants are each responsible for the acts of its subsidiaries, employees, agents, directors, and officers performed within the scope of their authority. An employee, agent, director, or officer is acting within the scope of authority if he or she is engaged in the performance of duties which were expressly or impliedly assigned to them by the corporation.

**AUTHORITY**:          Ninth Cir. Model Instructions, Instructions 4.1, 4.2, and 4.5 (modified).


DATE SUBMITTED: January 28, 2026

### 1. Plaintiffs' Argument

The parties began with the Ninth Circuit Model Civil Jury Instructions 4.1 (Corporations and Partnerships – Fair Treatment) and 4.2 (Liability of Corporations – Scope of Authority Not in Issue), which instruct on treating corporate parties fairly and explain that corporations can be held accountable through their employees and officers. The parties agreed to revise the instruction to say "companies" rather than "corporations" (as LLCs are technically companies, but not corporations), and to instruct the jury that they also should not treat Bellwether School District Plaintiffs differently by nature of the fact that they are public entities.

The parties conferred about the applicability of Model Civil Jury Instruction 4.2, which instructs the jury on how to determine liability for corporations—a pattern instruction that contemplates that scope of authority is *not* at issue. Plaintiffs believe this instruction may be useful, as the jury will hear testimony from both parties' employees.

However, Defendants also suggested including language from Model Civil Jury Instruction 4.5 (Agent – Scope of Authority Defined), which goes on to describe what conduct falls "within the scope of authority." Plaintiffs objected to this language, because no party has suggested that any person was not acting within the scope of their authority. Further, Defendants have failed to bring to Plaintiffs' attention any live dispute regarding the liability of parent corporations with respect to the actions of their subsidiaries.[3] Because the jury will not be asked to determine when an employee acts within the scope of their authority, that instruction language is not relevant for the purposes of this case, and risks confusing the jury about what issues they must decide. When given this explanation, Defendants then objected that language from Model Instruction 4.5 is necessary to prevent juror confusion about the meaning of the reference to "scope of authority" in Model Instruction 4.2. The solution there is simple: rather than instruct the jury on an irrelevant concept which may introduce new legal issues and confusion, just remove the language regarding the scope of an employee's authority from Model Instruction 4.2.

---

[3] *E.g.* Order on Stipulation to Dismiss Certain Meta Defendants, ECF 2401 at 1 ("Meta Platforms Inc. agrees not to assert as a defense to liability in this Matter that it is not responsible for any actions or inactions alleged by Bellwethers as wrongful on the grounds that such actions or inactions were taken in whole or in part by any or all of the Meta Subsidiaries.").

Plaintiffs' proposal informs the jury on all relevant issues of law that will help them resolve the questions they are tasked with answering.

## 2.    Defendants' Argument

The Parties jointly propose giving an instruction based on Ninth Circuit Model Instructions 4.1 and 4.2, slightly modified for the facts of this case.  In doing so, Defendants also seek to include in this instruction Ninth Circuit Model Instruction 4.5, which is similarly modified for the facts of this case.  Plaintiff objects to the inclusion of language from Model Instruction 4.5 ("An agent is acting within the scope of authority if the agent is engaged in the performance of duties which were expressly or impliedly assigned to the agent by the principal."), and the final clause of Model Instruction 4.2 ("Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.").

Defendants propose this language because the "scope of authority" is integral to understanding and then applying agency law.  What is more, Plaintiff provides no authority for the position that Defendants can be held liable for acts of their agents performed outside the scope of their authority.  Because several Defendant groups include parent companies and subsidiaries, this language is necessary for the jury to determine potential liability of parent organizations for actions taken by subsidiaries or employees of subsidiaries.  *See, e.g.*, *Brit. Telecommunications PLC v. IAC/InteractiveCorp*, 356 F. Supp. 3d 405, 409 (D. Del. 2019) (holding that "a parent corporation is held liable for the actions of its subsidiary if the parent directed or authorized those actions" under an agency theory if the relationship is directly related to the cause of action) (citing *Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.*, 842 F.2d 1466, 14777 (3d Cir. 1988)); *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017) (proving agency relationship between parent and subsidiary requires that establishing the agent "'act[ed] on the principal's behalf and subject to the principal's control.'" (quoting Restatement (Third) Of Agency § 1.01 (2006)).

The Court should give Defendants' requested language in this instruction because it clearly states the law—and Plaintiff fails to provide any basis for rejecting a model instruction.

1
2

**5. INSTRUCTION NO. 5: TWO OR MORE PARTIES – DIFFERENT LEGAL RIGHTS**

3      You should decide the case as to each party separately.  Unless otherwise stated, the

4  instructions apply to all parties. You should decide the case as to each party separately.  A

5  Defendant is responsible only for its own conduct, and one Defendant cannot be liable as a result

6  of conduct by a different Defendant.  Unless otherwise stated, the instructions apply to all parties.

7
8
9  **AUTHORITY**:        Ninth Cir. Model Instructions, Instruction 1.8 (modified).

10
11  DATE SUBMITTED: January 28, 2026

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

### 1.    Plaintiffs' Argument

2        Plaintiffs propose the pattern instruction language from Ninth Circuit Model Civil Jury

3  Instruction 1.8. Defendants' additional language ("A Defendant is responsible only for its own

4  conduct, and one Defendant cannot be liable as a result of conduct by a different Defendant.") invites

5  juror confusion and misstates the law for causation by multiple tortfeasors, which each Bellwether

6  School District Plaintiff alleges.

7        Each state has developed law for instances of multiple causes that combine or commingle to

8  produce harm: in cases involving multiple alleged tortfeasors whose actions allegedly contributed

9  to an indivisible harm, the plaintiff is required to show that each defendant was a cause-in-fact

10  (typically substantial factor, though Georgia objects that "substantial" sets the bar even too high)

11  before that defendant can be held liable. *See Holland v. United Servs. Auto. Ass'n*, 707 S.W.3d 541,

12  556 (Ky. Ct. App. 2025); *Salica v. Tucson Heart Hosp.-Carondelet, L.L.C.*, 231 P.3d 946, 950-51

13  (Ariz. Ct. App. 2010); *Deaton Holdings, Inc. v. Reid*, 888 S.E.2d 333, 336 (Ga. Ct. App. 2023);

14  *Carter v. Wallace & Gale Asbestos Settlement Tr.*, 96 A.3d 147, 157-59 (Md. Ct. App. 2014);

15  *Boryszewski ex rel. Boryszewski v. Burke*, 380 N.J. Super. 361, 376 (App. Div. 2005); *Jolly v. Gen.*

16  *Elec. Co.*, 869 S.E.2d 819, 829 (S.C. Ct. App. 2021).

17        However, and crucially important, under every state's law, if a defendant is determined to

18  be a cause of the indivisible harm, then it is liable for causing the entire harm. This means that

19  Defendants' language that a Defendant "is responsible only for its own conduct" is not wholly true.

20  Plaintiffs must show that each Defendant was a cause-in-fact and a proximate cause of the harm the

21  Plaintiff alleges, but once shown, all Defendants are responsible for the entire harm.

22        In three of the bellwether states—South Carolina, New Jersey, and Maryland—every

23  defendant is jointly-and-severally liable for the full amount of damages. *Pratt v. Amisub of SC, Inc.*,

24  912 S.E.2d 268, 282-83 (S.C. Ct. App. 2025); *O'Brien (Newark) Cogeneration, Inc. v. Automatic*

25  *Sprinkler Corp. of Am.*, 825 A.2d 524, 531-32 (NJ App. Div. 2003); *Consumer Prot. Div. v. Morgan*,

26  874 A.2d 919, 950 (Md. App. Ct. 2005). In Kentucky, Arizona, and Georgia, the jury apportions

27  damages according to the proportionate fault of the tortfeasors. *Owens Corning Fiberglas Corp. v.*

28  *Parrish*, 58 S.W.3d 467, 477 n. 30 (Ky. 2001); *Piner v. Superior Ct. in and for Cnty. of Maricopa*,

962 P.2d 909, 916 (Ariz. 1998) (en banc); *Fed. Deposit Ins. Corp. v. Loudermilk*, 826 S.E.2d 116, 126 (Ga. 2019). Either way, in all six states, for purposes of causation, the defendant is considered to have *caused* the harm as a whole. *See Owens Corning Fiberglas Corp. v. Parrish*, 58 S.W.3d 467, 477 n. 30 (Ky. 2001); K.R.S. § 411.182; *Piner v. Superior Ct. in and for Cnty. of Maricopa*, 962 P.2d 909, 916 (Ariz. 1998) (en banc); *Deaton Holdings, Inc.*, 888 S.E.2d at 336; O.G.C. § 51-12-33; *Carter*, 96 A.3d at 157-59; *Reichert v. Vegholm*, 366 N.J. Super. 209, 221 (App. Div. 2004); *Smith v. Tiffany*, 799 S.E.2d 479, 481 (S.C. 2017); S.C. Code § 15-38-15.

The only way that a defendant can avoid responsibility for causing an entire indivisible harm is to prove that (1) the harm is actually divisible, and (2) evidence exists that would allow the jury to connect a particular Defendant's actions to a particular part of the divisible harm. Defendants have the burden to show each aspect of apportionability; otherwise, the harm is considered indivisible, and all contributing tortfeasors are considered responsible for the whole. *See* Restatement (Second) Torts §§ 433A, 433B (1965); *see also Parrish*, 58 S.W.3d at 477 n.28; *Piner*, 962 P.2d at 916; *Polston v. Boomershine Pontiac-GMC Truck, Inc.*, 423 S.E.2d 659, 660-61 (Ga. 1992); *Carter*, 96 A.3d at 159-60; *Reichert*, 366 N.J. Super. at 221.

Despite appearing to suggest at the summary judgment hearing that they would not seek instructions that would require *Plaintiffs* to apportion causation, Defendants repeatedly propose jury instructions throughout each Bellwether School District Plaintiff's jury instruction set that ask exactly that—and here as well.

Because Defendants' proposed language suggests that liability must be limited according to each Defendants' causal contribution to the harm, despite no Defendant proving that any Plaintiff's harm is capable of divisibility, the proposal misstates the law and invites jurors to err in their consideration of the evidence. The Court should reject Defendants' added language, and instead give the Ninth Circuit pattern language as written.

1      **2.      Defendants' Argument**

2      Defendants propose adding a sentence to Ninth Circuit Model Instruction 1.8 to explicitly

3      instruct the jury on the implications of "decid[ing] the case as to each party separately."  This

4      additional language conveys the black letter law that one party cannot be held liable for the actions

5      of another unless the principles of agency (on which the jury will be instructed) require such a

6      finding of liability.  In all other instances, a defendant is only responsible for its own conduct.

7      Moreover, the law requires that Plaintiff prove that its injuries were individually caused by each

8      defendant. *McKnight v. S.C. Dep't of Corr.*, 684 S.E.2d 566, 569 (S.C. Ct. App. 2009) ("When the

9      cause of a plaintiff's injury may be as reasonably attributed to an act for which the defendant is not

10     liable as to one for which he is liable, the plaintiff has failed to carry the burden of establishing the

11     defendant's conduct proximately caused his injuries.").  Thus, Plaintiff has no legal basis to object

12     to this instruction, which would be helpful to the jury alongside aiding in avoiding confusion over

13     how to view corporate separateness among distinct legal entities.

14     This additional sentence "A Defendant is responsible only for" will also prevent confusion

15     for the jury.  Repeatedly throughout the proposed substantive instructions, Defendants are

16     referenced as a group.  Defendants have objected to this "lumping together" of Defendants and

17     proposed alternative language where appropriate.  Despite these objections, however, the jury may

18     still fail to appropriately consider Plaintiff's claims against each Defendant separately or to

19     recognize what it means to consider the claims separately.  And this concern becomes particularly

20     acute if the Court does not adopt Defendants' proposed language in the substantive instructions.

21     Thus, this modification to the Model Instruction will aid the jury in faithfully applying the law.

22     It would be error to instruct the jury, under South Carolina law, that "if a defendant is

23     determined to be a cause of the indivisible harm, then it is liable for the entire harm."  First, there

24     has been no determination that Plaintiff's injury is indivisible, and it is not.  Second, that is contrary

25     to South Carolina's statutory requirement that the jury apportion *fault* in cases of indivisible injuries:

26     "if indivisible damages are determined to be proximately caused by more than one defendant, joint

27     and several liability does not apply to any defendant whose conduct is determined to be less than

28     fifty percent of the total fault for the indivisible damages."  S.C. Code § 15-38-15(A).  In that

22

1  situation, "[a] defendant whose conduct is determined to be less than fifty percent of the total fault

2  shall only be liable for that percentage of the indivisible damages determined by the jury or trier of

3  fact" and the jury must apportion specific percentages of fault to the plaintiff and the defendant(s).

4  *Id.* & § 15-38-15(C).

5      South Carolina does not use the substantial factor test in general negligence cases. Plaintiff's

6  cite to *Jolly v. Gen. Elec. Co.*, 869 S.E.2d 819, 829 (S.C. Ct. App. 2021), is unavailing. That case

7  makes clear that the comparatively lower bar of substantial factor causation used in asbestos cases

8  does not apply in general negligence cases, which still require showing but-for causation. *See Jolly*,

9  869 S.E.2d at 829. Defendants are not aware of any South Carolina cases applying the substantial

10  factor test to causation analysis outside of the asbestos context or in general negligence cases, and

11  Plaintiff cites none.

12      Plaintiff cites no South Carolina case or statute that supports its assertion that Defendants

13  bear the burden to show: "(1) the harm is divisible, and (2) evidence exists that would allow the jury

14  to connect a particular Defendant's actions to a particular part of the divisible harm." Accordingly,

15  it would be error to so instruct the jury. Plaintiff has not established that its injuries are indivisible.

16  This is not the case where a plaintiff suffers a single injury, like a broken leg, as a result of multiple

17  alleged tortfeasors. Plaintiffs are claiming damages based on thousands of different behavioral

18  incidents relating to thousands of different children over the years (along with discrete out of pocket

19  costs paid to different organizations over many years). These separate incidents and resulting

20  alleged harms each stem from independent, divisible causes.

1

### 6.  INSTRUCTION NO. 6: WHAT IS EVIDENCE

2

The evidence you are to consider in deciding what the facts are consists of:

3

(1)    the sworn testimony of any witness;

4

(2)    the exhibits that are admitted into evidence;

5

(3)    any facts to which the lawyers have agreed; and

6

(4)    any facts that I have instructed you to accept as proved.

7

8

**AUTHORITY**:        Ninth Cir. Model Instructions, Instruction 1.9.

9

10

DATE SUBMITTED: January 28, 2026

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 7.  INSTRUCTION NO. 7: DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night.  However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk.  Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

**AUTHORITY**:          Ninth Cir. Model Instructions, Instruction 1.12 (modified to include illustrative example suggested in comment to Instruction 1.12).

DATE SUBMITTED: January 28, 2026

## 8. INSTRUCTION NO. 8: WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they say in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**AUTHORITY**:          Ninth Cir. Model Instructions, Instruction 1.10 (modified).


DATE SUBMITTED: January 28, 2026

## 9.  INSTRUCTION NO. 9: EVIDENCE FOR A LIMITED PURPOSE

*[The Parties agree to this instruction on the condition that it be given only if there is a limiting instruction ordered.]*

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you may consider it only for that limited purpose and not for any other purpose.

**AUTHORITY**:        Ninth Cir. Model Instructions, Instruction 1.11.

DATE SUBMITTED: January 28, 2026

## 10. INSTRUCTION NO. 10: RULING ON OBJECTIONS

*[The Parties propose this instruction be given before the start of evidence.]*

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.

If I overrule the objection, the question may be answered, or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

**AUTHORITY**:          Ninth Cir. Model Instructions, Instruction 1.13.

DATE SUBMITTED: January 28, 2026

**11. INSTRUCTION NO. 11: CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)    the opportunity and ability of the witness to see or hear or know the things testified to;

(2)    the witness's memory;

(3)    the witness's manner while testifying;

(4)    the witness's interest in the outcome of the case, if any;

(5)    the witness's bias or prejudice, if any;

(6)    whether other evidence contradicted the witness's testimony;

(7)    the reasonableness of the witness's testimony in light of all the evidence; and

(8)    any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**AUTHORITY**:        Ninth Cir. Model Instructions, Instruction 1.14.

29

DATE SUBMITTED: January 28, 2026

**12. INSTRUCTION NO. 12: PUBLICITY DURING TRIAL**

*[The Parties propose this instruction be given before the start of evidence.]*

If there is any news media account or commentary about the case or anything to do with it, you must ignore it.  You must not read, watch or listen to any news media account or commentary about the case or anything to do with it.  The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies. If any juror is exposed to any outside information, please notify me immediately.

**AUTHORITY**:        Ninth Cir. Model Instructions, Instruction 1.16.

DATE SUBMITTED: January 28, 2026

**13. INSTRUCTION NO. 13: NO TRANSCRIPT AVAILABLE**

*[The Parties propose this instruction be given before the start of evidence.]*

      I urge you to pay close attention to the trial testimony as it is given.  During deliberations you will not have a transcript of the trial testimony.

**AUTHORITY**:      Ninth Cir. Model Instructions, Instruction 1.17.

DATE SUBMITTED: January 28, 2026

PARTIES' JOINT PROPOSED JURY INSTRUCTIONS (CHARLESTON COUNTY SCHOOL DISTRICT)
4:22-md-03047-YGR

## 14. INSTRUCTION NO. 14: BENCH CONFERENCES AND RECESSES

*[The Parties propose this instruction be given before the start of evidence.]*

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of you the jury, either by having a conference at the bench when you the jury are present in the courtroom, or by calling a recess.  Please understand that when this happens and you are waiting, we will be working.   The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

**AUTHORITY**:        Ninth Cir. Model Instructions, Instruction 1.20 (modified).

DATE SUBMITTED: January 28, 2026

## 15. INSTRUCTION NO. 15: VIDEO DEPOSITION

*[The Parties propose this instruction be given before the start of evidence.]*

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.

You will be shown video-recorded testimony of certain witnesses. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

**AUTHORITY**:        Ninth Cir. Model Instructions, Instruction 2.4 (modified).

DATE SUBMITTED: January 28, 2026

1

### 16. INSTRUCTION NO. 16: EXPERT OPINION TESTIMONY

2

3

4

You have heard testimony from experts who testified about their opinions and the reasons for those opinions.  This opinion testimony is allowed, because of the specialized knowledge, skill, experience, training, or education of this witness.

5

6

7

8

Such opinion testimony should be judged like any other testimony.  You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's specialized knowledge, skill, experience, training, or education, the reasons given for the opinion, and all the other evidence in the case.

9

10    **AUTHORITY**:          Ninth Cir. Model Instructions, Instruction 2.13.

11

12    DATE SUBMITTED: January 28, 2026

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 17. INSTRUCTION NO. 17: PROTECTION FOR PUBLISHING AND EXPRESSIVE ACTIVITY

### Instruction 17.1-P

[*Plaintiffs continue to object to the inclusion of this instruction and any instruction on the First Amendment, but if one is given they propose the following language and propose that the Court instruct on Section 230 only.*]

In this case, you may not hold Defendants liable simply because Defendants hosted or published users' content, or because they removed or failed to remove content posted by users.

However, in deciding whether Defendants are liable for negligence or public nuisance, you may hold Defendants liable for their own actions, even if users' content contributed to the harm, so long as Defendants' actions were a substantial factor in causing Charleston's harm. You may also hold Defendants liable for failing to warn about the risks of harm caused by their platforms even if users' content contributed to the harm, so long as Defendants' failure to warn was a substantial factor in causing Charleston's harm.

### Instruction 17.1-D

Defendants in this case are providers of online platforms that publish their own content and content generated by users. The U.S. Constitution's First Amendment, as well as a federal law called Section 230, provides certain protections for Defendants when they publish such content or otherwise engage in expressive activity.

Under Section 230, Defendants are not liable when they act as publishers of "third-party content"—that is, content posted by the users of Defendants' platforms on those platforms. Such "third-party content" includes words, messages, pictures, video, audio, comments, or any other form of communication that users post, whether publicly or privately, on the Defendants' platforms. Each Defendant cannot be found liable under Section 230 for publishing third-party content on its platform, including whether, how, when, and to whom that content is published.

Under the First Amendment, each Defendant is not liable for exercising its right to speak or engage in expressive activity. That means each Defendant cannot be found liable for making available the content displayed on its platform, such as posts, text, videos, images, music, comments,

and "likes," as well as recommending, delivering, displaying, compiling, ranking, and organizing posts, comments or other content made by users of its platform.

The Court has ruled that these legal protections apply to certain types of Defendants' conduct that are "Protected Conduct" and cannot be the basis for finding any Defendant liable.

"Protected Conduct" includes making user content or communications available on Defendants' platforms. You may not find any Defendant liable on the basis of user content (e.g., posts) or communications (e.g., messages) published on the Defendant's platform—whether shared privately between users or shared publicly to a broader audience. In other words, if you find that user content or communications on a Defendant's platform caused some or all of the harms to students alleged by Charleston County School District, you may not find the Defendant liable on the basis of that user content or communications.

"Protected Conduct" also includes a Defendant's publishing decisions. You may not find any Defendant liable on the basis of its decisions about whether and how to compile, disseminate, or display content to its users. This protection applies even when a Defendant uses technological tools, like an algorithm that recommends content to users.

"Protected Conduct" also includes specific design features of Defendants' platforms that the Court has already ruled are protected by Section 230 and/or the First Amendment and cannot be the basis for finding any Defendant liable.

Therefore, you may not find any Defendant liable on the basis of any of the following "Protected Conduct":

(1)    Making third-party content available on a Defendant's platform;

(2)    Making decisions about whether and how to recommend, compile, organize, disseminate, and display content to users of a Defendant's platform;

(3)    Using algorithms to encourage users to spend more time on a platform, including the use of algorithms to display content;

(4)    Providing users with an endless feed or infinite scroll;

(5)     Providing informational messages, notifications, or alerts about third-party content or a Defendant's own content, including the timing and clustering of those notifications and regardless of how they are sent (i.e., audiovisually or through vibrations);

(6)     Not placing default protective limits on the length and frequency of use sessions;

(7)     Making decisions about whether or not to institute blocks preventing use of a platform during certain times of day (such as during school hours or late at night);

(8)     Making decisions to recommend certain accounts to certain users;

(9)     Providing content in short-form or ephemeral formats (i.e., formats that disappear after a certain period of time);

(10)    Allowing users to post or provide comments or to receive comments posted by others;

(11)    Allowing users to exchange, send, or post private content;

(12)    Publishing geolocating information (i.e., information about users' locations) for users;

(13)    Using autoplay features (i.e., videos playing automatically after a video ends);

(14)    Displaying "Likes" or listing the number of "Likes" certain content has received; and

(15)    Providing awards to users, including to frequent users or for continuous engagement with a Defendant's platform.

Therefore, in evaluating whether Charleston County School District has met its burden to satisfy the elements of a claim as to each Defendant, you may consider only "Non-Protected Conduct," which consists only of the Defendant's design and/or use of the following:

*["Non-Protected Conduct" list to be completed after ruling on MSJ and other motions and based upon case-specific evidence, but not to exceed the below list.]*

(1)     Options for users to self-restrict time spent using a platform;

(2)     The process for users to delete their accounts;

(3)     Labels for filtered content;

(4)     Appearance-altering filters; and

(5)     Processes for users to report suspected child sexual abuse materials to Defendants' platforms.

1    You may impose liability, if any, only if the harm is caused by this Non-Protected Conduct

2    and the other elements of each claim are met.  You may not find any Defendant liable on the basis

3    that the Defendant's platform as a whole caused harm.  It is Charleston County School District's

4    burden to prove that any harm it allegedly suffered was caused by Non-Protected Conduct.  I will

5    now instruct you on the elements of each claim.

6

7    **PLAINTIFFS' AUTHORITY:**  N/A

8

9    **DEFENDANTS' AUTHORITY:** 47 U.S.C. § 230(c)(1); *In re Soc. Media Adolescent*

10   *Addiction/Pers. Inj. Prods. Liab. Litig.*, 702 F. Supp. 3d 809, 825–37 (N.D. Cal. 2023) (outlining

11   relevant protections under Section 230 and the First Amendment) ("PI Order"); *In re Soc. Media*

12   *Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 754 F. Supp. 3d 946, 962–64 (N.D. Cal. 2024)

13   (same, for school districts' claims) ("SD Order"); *In re Soc. Media Adolescent Addiction/Pers. Inj.*

14   *Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 878–85, 894–95 (N.D. Cal. 2024) (same, for state attorneys

15   general claims); *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1107 (9th Cir. 2009), *as amended* (Sept. 28,

16   2009) (holding that Section 230 "precludes liability when the duty the plaintiff alleges the defendant

17   violated derives from the defendant's status or conduct as a publisher or speaker."); *id.* at 1102

18   (publication "involves reviewing, editing, and deciding whether to publish or to withdraw from

19   publication third-party content."); *Estate of Bride by and through Bride v. Yolo Technologies, Inc.*,

20   112 F.4th 1168, 1180 (9th Cir. 2024) (Section 230 precludes failure-to-warn theories that fault

21   platform "for not mitigating, in some, way, the harmful effects of . . . content"); *Doe v. Grindr Inc.*,

22   128 F.4th 1148, 1154 (9th Cir. 2025) (similar); U.S. Const. Amend. I; *Bartnicki v. Vopper*, 532 U.S.

23   514, 527 (2001) ("If the acts of 'disclosing' and 'publishing' information do not constitute speech,

24   it is hard to imagine what does fall within that category[.]"); *NetChoice, LLC v. Bonta*, 113 F.4th

25   1101, 1119 (9th Cir. 2024) (holding law that would require platforms to "opine on potential speech-

26   based harms to children" was subject to strict scrutiny and was likely invalid); *NetChoice v. Carr*,

27   789 F. Supp. 3d 1200, 1225 (N.D. Ga. 2025) (holding that age verification requirement "imposes a

28   sweeping burden on adults' access to speech"); *Students Engaged in Advancing Texas v. Paxton*,

39

1    765 F. Supp. 3d 575, 595–600 (W.D. Tex. 2025) (similar); *NetChoice, LLC v. Griffin*, 2025 WL

2    978607, at *13 (W.D. Ark. Mar. 31, 2025) (similar).

3

4    DATE SUBMITTED: January 28, 2026

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### 1.    Plaintiffs' Argument

2

Plaintiffs' proposal accurately instructs the jury that it cannot impose liability on Defendants

3

for hosting or publishing users' content, or for removing or failing to remove content posted by

4

users. It also explains that Defendants may be held liable for their own actions, including failing to

5

warn of known risks from the platform as a whole, even if content is in the causal chain. That latter

6

instruction is in keeping with the Court's past rulings.[4] It is in keeping with the parties' longstanding

7

understanding of the Court's past rulings.[5] And it is in keeping with binding Ninth Circuit precedent.

8

*See Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 744 (9th Cir. 2024) ("In *Internet Brands*, the

9

platform faced liability not because it failed to remove the ads, but because it failed to warn about

10

their content. Thus, Plaintiffs' claims may fare better if they sought to impose liability on Meta for

11

failing to warn about fraudulent content….").

12

By contrast, Defendants' obtuse and bloated instruction invites the jury to apply the wrong

13

Section 230 test and disregard evidence the Court may deem admissible. It has three problems. First,

14

the instruction improperly tells the jury that Defendants "are not liable when they act as publishers

15

of 'third-party content.'" This is wrong. Section 230 protection hinges on the *legal duties* being

16

imposed, not whether or not Defendants act as publishers. *See e.g.*, *Lemmon v. Snap, Inc.*, 995 F.3d

17

1085, 1092–93 (9th Cir. 2021); *Calise*, 103 F.4th at 740-42. The duties at issue in this case are,

18

roughly, (a) a duty to warn students, parents, and school districts about the risk of compulsive and

19

addictive use from Defendants' platforms; (b) a duty not to negligently design and target at young

20

people platforms with defective age verification, parental controls, and other Court-specified

21

22

23

24

25

26

---

[4] ECF 430 at 20 (failure to warn claims "plausibly allege that defendants are liable for conduct other than publishing of third-party content and that they could address their duty without changing what they publish"); ECF 716 at 4-5 ("based on" Court's motion to dismiss ruling, "particularly with respect to Claims 2 and 4, the scope of discovery in this matter encompasses all product defects alleged"); ECF 1214 at 45 (Section 230 does not "bar[] liability predicated on a failure to warn of known risks of addiction attendant to any platform features or as to platform construction in general"); ECF 1267 at 14 (same); Hearing Tr. 27:24-28:9, Nov. 16, 2023 (affirming that the failure to warn claim extends beyond features barred by Section 230 for the product liability claims); Hearing Tr. 33:22-34:23, Mar. 21, 2024 (Judge Kang: "the Claims 2 and 4 were not dismissed and on the face of it keep any and all of the alleged defects in the case. That's the way I read the order.").

27

28

[5] *See, e.g.*, Br. For Meta at 2, *California et al. v. Meta*, No. 24-7037 (9th Cir. Mar. 31, 2025) (Court permitted "plaintiffs' failure to warn claims relating to certain platform features to proceed, even though . . . other claims as to the same features are barred by Section 230").

41

1   features, *see* ECF 430 at 14-15; and (c) a duty not to interfere with the public rights to health, safety,

2   and education through the foregoing actions. None of these duties would require Defendants to

3   monitor or remove third-party content, or change how they publish content. As such, claims based

4   on these duties are not protected by Section 230. *See Calise*, 103 F.4th at 741.

5         Second, Defendants' instruction includes an instruction on "protected" versus "non-

6   protected" features that is both confusing and legally incorrect. Under the Court's pretrial rulings,

7   Defendants are protected from a state law duty to modify certain features such as their

8   recommendation algorithm. But Section 230 does not protect Defendants from a duty to warn of

9   known risks attendant to use of those same features. That duty *would* require Defendants to put

10  others on notice of known harms, but it *would not* require Defendants to change anything about

11  how, what, or when they publish. *See Internet Brands, Inc*., 824 F.3d at 851; *see also Est. of Bride*

12  *by & through Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1179 (9th Cir. 2024) (no Section 230

13  protection where "online content is involved in these facts, and content moderation is one possible

14  solution for [defendant] to fulfill its promise, [but] the underlying duty . . . is the promise itself").

15        Third, Defendants' instruction erroneously asks the jury to disregard whole categories of

16  evidence *even if* the Court deems it admissible for certain purposes. *See* Defs' Instruction ("you <u>may</u>

17  consider only "Non-Protected Conduct"). Facts that are not independently actionable may still be

18  evidence in support of other claims.  *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab.*

19  *Litig*., 497 F. Supp. 3d 552, 633 n.61 (N.D. Cal. 2020). This principle extends to cases involving

20  Section 230. *Calise*, 103 F.4ᵗʰ at 742 ("How could Internet Brands warn about certain harmful

21  content without considering what it was? Such a rudimentary fact-bound inquiry quickly falls apart

22  and runs up against our precedent."). Accordingly, the jury may properly hear evidence about the

23  various mechanisms through which Defendants fostered compulsive use, their corporate knowledge

24  about the same, and the resulting harm to students and school districts.

25        Finally, Judge Kuhl has indicated a First Amendment instruction would be improper, as the

26  scope of protection is not a jury question, and the Court should take the same approach here.

27

28

1

## 2.    Defendants' Argument

2

3       The Court has already ruled that Section 230 and the First Amendment impose a "significant

4  limitation on Plaintiffs' theories of recovery."  SD Order at 2.  To give effect to these rulings, the

5  Court must instruct the jury on which conduct may—and may not—form the basis of liability.

6  Defendants' proposed instruction identifies the specific features and activities that this Court has

7  already held are protected as a matter of law, as well as those that may form the basis of liability.

8  Without that specificity, the instructions would improperly invite the jury to find a Defendant liable

   for conduct that is "no longer part of this case."[6]

9       Plaintiff's proposal disregards the Court's "feature-by-feature" analysis altogether and does

10 not even mention any of the features or activities this Court held are protected.  SD Order at 12; PI

11 Order at 14–16.  Plaintiff's instruction would thus improperly require the jury to determine on its

12 own which features are protected, rather than applying this Court's answers to those legal questions.

13 *See Tortu v. L.V. Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009) (courts must resolve

14 legal questions and instruct the jury accordingly).  And it creates a high risk of confusing the jury

15 into thinking that *none* of Defendants' conduct is protected, contrary to this Court's rulings.  *See*

16 *L.A. Mem'l Coliseum Comm'n v. NFL*, 726 F.2d 1381, 1398 (9th Cir. 1984) ("Well-tailored and

17 specific instructions" may be necessary where "abstract legal principles are not self-explanatory to

18 a lay jury" and the facts "are complex" (citation omitted)).

19      Plaintiff's misguided assertion that its failure-to-warn theory renders the distinction between

20 protected and unprotected conduct irrelevant fails for numerous reasons.  First, a substantial body

21 of binding case law has emerged since the Court's prior rulings confirming that Section 230 bars

22 failure-to-warn claims that arise from protected publishing activity, including challenged features.[7]

23 *See, e.g., Doe v. Grindr*, 128 F.4th 1148, 1154 (9th Cir. 2025); *Estate of Bride by and through Bride*

24 *v. Yolo Technologies, Inc.*, 112 F.4th 1168, 1179–80 (9th Cir. 2024); *Doe (K.B.) v. Backpage.com,*

25

26 ───────────────

   [6] Defendants reserve the right to argue for the exclusion at trial of any evidence of content and
   protected publishing features.

27 [7] In light of this intervening authority, Defendants did not include failure to warn in their list of non-
   protected conduct.  Defendants omitted age verification from the list for similar reasons.  *See, e.g.*,
28 *NetChoice v. Carr*, 789 F. Supp. 3d 1200, 1230 (N.D. Ga. 2025).

*LLC*, 768 F. Supp. 3d 1057, 1067 (N.D. Cal. 2025). *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 743, 746 (9th Cir. 2024), is not to the contrary, because that case did not involve any failure- to-warn claims at all, and it held that Section 230 barred all of the plaintiff's non-contractual claims. *See id.* at 743, 746. Further, *Calise*'s discussion of failure-to-warn claims is *dicta*—not binding precedent—and it is inconsistent with the Ninth Circuit's subsequent decisions in *Bride* and *Grindr*.

In any event, even if the Court permits the failure-to-warn claim to proceed in its entirety, the jury still could not find liability for any damages caused by protected conduct; it could find liability only for damages caused by failing to warn about that protected conduct.[8] Plaintiff's proposal ignores that distinction and renders the vast majority of the Court's rulings null.

It is not correct that the jury "may hold Defendants liable for their own actions even if users' content contributed to the harm, so long as Defendants' actions were a cause of Plaintiff's harm." This instruction ignores this Court's rulings that many categories of "Defendants' actions" are protected publishing conduct that cannot form the basis of liability. *See* SD Order at 14; PI Order at 5, 22. Further, Plaintiff's instruction invites error by encouraging the jury to hold Defendants liable for harms so long as any unprotected conduct is involved in any way, however minimal, in the causal chain. But claims against online platforms like Defendants must be "*fully independent of* [their] role in monitoring or publishing third-party content." *Lemmon v. Snap Inc.*, 995 F.3d 1085, 1093 (9th Cir. 2021) (emphasis added); *Grindr*, 128 F.4th at 1153 n.3 (same; it is "analytically insignificant whether [the plaintiff's] injuries would not have occurred 'but for' [a platform's] role as a publisher"); *see* PI Order at 11 (requiring claims "ha[ve] nothing to do" with platform's role as publisher).

Finally, because the protections of Section 230 and the First Amendment cut across all of Plaintiff's claims, Defendants submit that this instruction must be placed early in the instructions to give important context to the remaining instructions. Placing the instruction near the end, as Plaintiff proposes, would risk confusing the jury into erroneously concluding that Section 230 and the First Amendment are distinct issues that do not affect the proper framing of Plaintiff's claims.

---

[8] If the Court permits the jury to hold Defendants liable for failure to warn about protected conduct, the proper approach would be to add failure to warn to the list of non-protected conduct.

III.    **[Substantive Instructions]**

      The Court will now explain the substantive law applicable to the Claim brought in this action.

1.  **INSTRUCTION NO. 18: NEGLIGENCE – ELEMENTS**

[*Defendants' proposal in green text; Charleston's proposal in blue text.*]

The Court will now explain the substantive law applicable to the claims brought in this action.

In this case, the plaintiff, Charleston County School District, claims that it has suffered harms for which the Defendants are responsible in damages.

Charleston County School District has brought this lawsuit against the Defendants alleging a cause of action for negligence. There are three essential elements of its negligence claim. Each element is denied by the Defendants' answers. Since the Charleston County School District has initiated and brought this lawsuit against the Defendants, and the burden of proof is upon the School District to establish the following by Since the Charleston County School District has initiated and brought this lawsuit against the Defendants, and the burden of proof is upon the School District to establish the following by the greater weight, or otherwise called a preponderance of the evidence with respect to each Defendant:

(1) that the Defendants breached their duty to use ordinary care in one or more ways, including—but not limited to—the following:

    a.  By not providing the warnings that a reasonably prudent, competent company concerned with user safety would have provided; or

    b.  By designing, operating, and/or marketing their social media platforms in a way that caused students to engage in problematic use, compulsive use, and/or become addicted; or

    c.  By deliberately targeting school-aged children, when the Defendants knew or reasonably should have foreseen the impact that doing so would have on schools; or

    d.  By not designing, operating, and/or marketing their social media platforms as a reasonably prudent, safety conscious, and competent company would have done;

(2) Defendants' failure to use ordinary care was a substantial factor in causing harm to Charleston County School District to suffer harm; and

(3) Charleston County School District incurred expenses related to the harm Defendants' social media platforms caused that it claims as damages.

1.  that the Defendant's Non-Protected Conduct was negligent or careless;

2.  that negligent or careless Non-Protected Conduct caused Charleston County School District's students to suffer mental health harms;

3.  that those students' mental health harms caused Charleston County School District to incur additional expenses it claims as damages.

What is negligence?  Negligence is defined in the law as the absence of due care.  In other words, the lack of ordinary care.  The word carelessness conveys the same idea as negligence, and for purposes here, those two terms are synonymous.  Negligence is the breach of a duty of care owed to Charleston County School District by each Defendant.  Negligence is the failure, by omission or commission, to exercise due care as a company exercising ordinary reason and prudence would exercise in the same circumstances.  It is the doing of some act which a person or company exercising due care would not have done under similar circumstances, or failure to do what a person or company exercising ordinary prudence would have done under similar circumstances. A company can be found negligent if it fails to warn about harms it knows, or has reason to know, can result from the use of its platform when used in the manner intended.

In determining whether each Defendant's conduct is negligent, the test you must apply is what a reasonable company exercising due care, or ordinary prudence, would do under those circumstances at that time and place.  "Due care," as applied to Defendants in this case, means such care a company of ordinary reason and prudence would exercise in the design or operation of an online platform. Conduct that breached the duty to exercise due care is negligent conduct.

"Negligent Non-Protected Conduct" is Non-Protected Conduct that you find breached the Defendant's duty to use reasonable care.

Charleston County School District must prove that each Defendant was negligent with respect to the Non-Protected Conduct in one or more of the particulars as alleged in the complaint. Charleston County School District is not required to prove It is not required that Charleston County School District prove that each Defendant was negligent as to all particulars alleged in its complaint,

47

1   but it is essential that Charleston County School District prove the Defendant was negligent in at

2   least one way a Defendant was negligent with respect to all the Non-Protected Conduct, but to find

3   any of the Defendants negligent, it is absolutely essential that Charleston County School District

4   prove at least some of that Defendant's Non-Protected Conduct was negligent.  If it does not, you

5   would be required to find a verdict for that Defendant.

6        Negligence, like any other fact in the case, must be proved.  The mere allegation, or filing

7   of a complaint, or the fact that damages have been sustained Charleston County School District has

8   sustained damages, does not create a presumption of negligence.  A surmise or conjecture that a

9   Defendant was negligent is not evidence thereof.  The bare fact that an innocent party sustained

10  harm or damage does not place any responsibility on another party unless you find that there was

11  some act of negligence on the part of that company party which caused the harm or damage injury

12  or damage.

13       If you find that Charleston County School District has proved any of the Defendants were

14  negligent, your next inquiry is whether the School District has proved that such Defendant's

15  negligence was the proximate cause of the harm injury or damage.  Negligence is not actionable

16  unless it proximately caused the School District's injuries harms.  Charleston County School District

17  may only recover for damages injuries proximately caused by Defendants' negligence a Defendant's

18  negligent Non-Protected Conduct.

19       Even if you find that Charleston County School District has proved that one or more

20  Defendants were a Defendant was negligent, but has failed to prove that such negligence was a

21  proximate cause of the harm injury or damage, the School District would have failed to make out

22  its case and you would be required to find for that Defendant.  However, if Charleston County

23  School District has proved these two propositions, then the School District must prove its damages.

24

25  **PLAINTIFFS' SOURCE:** Anderson, S.C. Requests to Charge – Civil, 20-1; *see also Thomasko v.*

26  *Poole*, 349 S.C. 7, 561 S.E.2d 597 (2002); *Arthurs v. Aiken County*, 346 S.C. 97, 551 S.E.2d 579

27  (2001); *Holst v. KCI Konecranes Intern. Corp.*, 699 S.E.2d 715, 723 (S.C. Ct. App. 2010).

28

1    **DEFENDANTS' SOURCE:** Anderson, South Carolina Requests to Charge – Civil, § 20-1 (rev.

2    2d ed. 2016).

3

4    DATE SUBMITTED: January 28, 2026

### 1.     Plaintiffs' Argument

Charleston's proposed instruction follows South Carolina's pattern instruction on the elements of negligence. *See* Anderson, S.C. Requests to Charge – Civil, 20-1; *see also United States v. Hope*, 28 F.4th 487, 503 (4th Cir. 2022). Given that South Carolina's pattern instructions are particularly lengthy, Charleston has sought to streamline language where doing so would not alter the meaning. Additionally, Charleston has throughout the instructions substituted the word "harm" for "injury," as it better suits the circumstances of this case involving economic harms.

**Elements.**  As discussed below, Charleston's recitation is preferable because it (1) explains that a failure to warn is negligence; (2) enumerates the relevant duties Charleston alleges Defendants breached; (3) does not improperly limit Charleston's theory of harm to its students' mental health harms; and (4) does not improperly repeat the Section 230 defense.

**Failure to Warn Theory.** Charleston's proposed language is also drawn from South Carolina caselaw discussing when a failure to warn qualifies as negligence. *See Holst v. KCI Konecranes Int'l Corp*., 699 S.E.2d 715, 723 (Ct. App. 2010). This will assist the jury in applying the correct legal standard when evaluating the negligence claim, which includes failure to warn.

**Enumerated Breaches.** Charleston's recitation of the element of breach is superior because it identifies the specific theories of breach Charleston asserts. These theories track this Court's prior rulings and tie the instructions to the actual theories of the case alleged, making the instruction easier for the jury to apply to the evidence they will hear at trial. *See* ECF 1267 at 26.

**Improper Limitation to Mental Health Harms.** Defendants' instruction improperly suggests that the harm Defendants caused was to students' mental health, and that Charleston's harm is entirely derivative of students' mental health harms. This is contrary to the Court's prior order, which allowed Charleston's alleged harms—including damages stemming from "disruption to the school environment"—to proceed past dismissal under a negligence claim. ECF 729 at ¶ 194; *see* ECF 1267 at 25-26. Defendants' instruction will mislead the jury into believing that mental health harms to Charleston's students are the only kind of harm they may be liable for.

**Repeated 230 Instruction.** Defendants' repetition of the phrases "Non-Protected Conduct" and "Protected Conduct" throughout their proposed instructions is prejudicial, mischaracterizes the

law, and unduly emphasizes a single affirmative defense and Defendants' repetition of the phrases "Non-Protected Conduct" and "Protected Conduct" throughout their instructions is prejudicial, misstates the law, and unduly emphasizes one affirmative defense. Defendants use "Non-Protected Conduct" *ad nauseam* in their instructions: 45 times in Charleston's alone. "Repetitious instructions which place undue emphasis on matters favorable to either side constitute reversible error," *Flentie v. Am. Cmty. Stores Corp.*, 389 F.2d 80, 83 (8th Cir. 1968), and the repetition here exceeds what courts have found prejudicial, *e.g., Mack v. Precast Indus., Inc.*, 369 Mich. 439, 448 (1963) (reversible error where burden of proof was repeated 16 times); *see also United States v. Schilleci*, 545 F.2d 519, 526 (5th Cir. 1977) (reversible error where trial court likely caused "undue concentration on a specific paragraph" of instructions). Because the improper Section 230 instruction permeates the entire set, any error is unlikely to be harmless. *See Sidibe v. Sutter Health*, 103 F.4th 675, 705 (9th Cir. 2024) (court must consider "cumulative error" in deciding whether error in instructions was harmless).

Defendants' repeated term also violates the mandate that jury instructions should be "simple" and "use language that laypersons can understand." *Manual for Complex Lit.*, § 12.431 (4th ed. 2004). By requiring the reader to turn to the definition repeatedly, defined terms introduce excessive ambiguity. This concern is magnified where, as here, the definition itself is "cumbersome" (spanning 3 full pages). *See LG Philips LCD Co. v. Tatung Co. of Am.*, 2005 WL 6219893, at *4 (C.D. Cal. May 5, 2005).

Jurors will "carefully follow" an instruction once it is given. *Francis v. Franklin*, 471 U.S. 307, 324 (1985). That is why courts generally do not instruct on statute of limitation and preemption and then use the phrase "non-time-barred non-preempted conduct" throughout the instruction set. Following a single instruction on immunity, the Court should simply refer to Defendants' "conduct" as it gives remaining instructions, removing further references to "Non-Protected Conduct" or "Protected Conduct." *See infra* [Section 230].

1

### 2.    Defendants' Argument

2       The phrase "Negligent Non-Protected Conduct" should be included in this instruction and

3   other applicable instructions because not all potential negligence by Defendants is actionable given

4   the Court's rulings about Section 230 and the First Amendment.  PI Order, 702 F. Supp. 3d 809,

5   825–37 (N.D. Cal. 2023) (outlining relevant protections under Section 230 and the First

6   Amendment); SD Order, 754 F. Supp. 3d 946, 962–64 (N.D. Cal. 2024) (same, for school districts'

7   claims).  Instructions to the jury that explain how to evaluate Defendants' conduct should include

8   language that incorporates that limitation on liability.  Negligent Non-Protected Conduct is easy to

9   understand, defined, and does not require that the jury look back to the Section 230 instruction each

10  time they see the term.   Defendants propose instructions that the jury must consider only

11  Defendants' Non-Protected Conduct at each step of the factfinding inquiry because the jury *must*

12  consider only Defendants' Non-Protected Conduct at each step of the factfinding inquiry.

13       Plaintiff's proposed instruction also fails to sufficiently explain to the jury that each case

14  against each Defendant must be evaluated separately.  The instruction should use the language

15  "Charleston County School District must prove *that each Defendant* was negligent with respect to

16  the Non-Protected Conduct" to make clear that a finding that one Defendant is negligent does not

17  mean a verdict can be found against all Defendants.

18       Defendants object to Plaintiff, throughout the instructions, changing the word "injury,"

19  which is used in the South Carolina model instructions, to "harm."  This (and all other instructions)

20  should use "injury."  Plaintiff does not define the vague term "harm" and does not provide authority

21  supporting deviating from the term "injury," which is used in the model instruction and South

22  Carolina case law.  The elements of a negligence claim require showing injury (or damages), not

23  "harm."  *Wright v. S.C. Dep't of Transp.*, 877 S.E.2d 788, 791 (S.C. Ct. App. 2022) (elements

24  include showing "plaintiff suffered an injury or damages")  (quoting *Doe v. Marion*, 645 S.E.2d

25  245, 250 (S.C. 2007)).  Plaintiff's use of "harm" is an attempt to lower the bar of what it must prove,

26  and the Court should reject that attempt.  If Plaintiff wants to make clear that its injury is economic,

27  if anything, the word "economic" can be added before "injury."

28

1    Defendants object to any instruction about Plaintiff's failure to warn theory because it is not

2  legally viable. *See* ECF No. 2293 at 39–43; ECF No. 2510 at 6–12.

3    If the Court instructs on this over Defendants' objection, Defendants object to Plaintiff's

4  proposed language that "A company can be found negligent if it fails to warn about harms it knows,

5  or has reason to know, can result from the use of its platform when used in the manner intended."

6  None of Plaintiff's cited authorities support its proposed language.  The elements of a failure to

7  warn claim requires showing that Defendants "know or have reason to know the product is or is

8  likely to be dangerous for its intended use; they have no reason to believe the user will realize the

9  potential danger; and, they fail to exercise reasonable care to inform of its dangerous condition or

10  of the facts which make it likely to be dangerous." *Holst v. KCI Konecranes Int'l Corp.*, 699 S.E.2d

11  715, 723 (S.C. Ct. App. 2010) (citing *Livingston v. Noland Corp.*, 362 S.E.2d 16, 18 (S.C. 1987)).

12  Plaintiff's burden is to show actual knowledge or reason to know that a product is likely to be

13  dangerous for its intended use.  Plaintiff lowers that burden to require only knowledge that some

14  injuries can result from use of Defendants' products.  Plaintiff also omits the requirement that

15  Defendants have no reason to believe users will realize any purported dangers.

16    Plaintiff's proposal lowers its burden to establish that Defendants were negligent by

17  erroneously requiring that the jury consider whether each Defendant was "a reasonably prudent,

18  competent company concerned with user safety" rather than whether they were acting as a company

19  "exercising ordinary prudence would have done under similar circumstances."  Plaintiff provides

20  no support for the inclusion of "safe" or "competent."  Plaintiff is incorrect that Defendants

21  "improperly suggests that the harm Defendants caused was to students' mental health."  Plaintiff's

22  entire case is premised on allegations that Defendants negligently designed their platforms to be

23  addictive and cause mental health harms to students.  Plaintiff must therefore prove that Defendants'

24  platforms caused such harms to students and then also prove that those harms to students caused

25  Charleston to expend additional resources.  Charleston's alleged damages must be tied to the alleged

26  breach—which, here, is the platforms' supposed harmful impact on students' mental health.

27
28

## 2. INSTRUCTION NO. 19: NEGLIGENCE – PROXIMATE CAUSE

### Instruction 19.1-P

Negligence is not actionable unless it proximately caused harm to the Charleston County School District.  Proximate cause means the direct cause of a harm.  Charleston County School District has the burden of proving that each Defendant's negligent conduct was a cause of the harm. You will decide, based on the evidence, if all, some, or none of the Defendants caused the harm.

The harm must be foreseeable, or a predictable result of the defendant's actions or failures to act.  The test of foreseeability is whether some harm to another is the natural and probable consequence of the complained of act.

The law requires only reasonable foresight, so you should consider the circumstances and what each Defendant knew at the time of the conduct.  If the harms alleged are not reasonably foreseeable when due care is exercised, there is no liability.  However, if that harm is within the scope of foreseeable risks from the alleged negligent conduct, Defendants may be held liable.

It is not necessary that Defendants should have contemplated the particular event which occurred as a result of their negligent conduct.  It is sufficient that the Defendants should have foreseen that their negligence would probably result in harm of some kind to someone.  The Defendants may be held liable for anything which, after the harm is complete, appears to have been a natural and probable consequence of their negligence.

The School District must prove the harm in question occurred as a natural and probable consequence of the Defendant's negligent conduct.  In determining whether a consequence is one that is natural and probable, a Defendant's conduct must be viewed in the light of the attendant circumstances.

Proximate cause does not mean the only cause.  A Defendant's conduct can be a proximate cause if it was at least one of the direct causes of the harm to the School District.  Even if there are other causes that contribute to the harm, Defendants may still be liable.  A Defendant cannot avoid responsibility just because some other Defendant, person, condition, or event was also a proximate cause of Charleston County School District's harm, unless the other cause was the sole cause of the School District's harm.

The law defines proximate cause of an harm to be something that produces a natural chain of events which, in the end, brings about the harm.

The mere fact that a Defendant generally knows that third-party bad actors may use their social media platforms to spread harmful challenges, transmit threats, or engage in crimes, is not, by itself, sufficient to show that Defendants caused the School District's harm. However, even if a third party is involved in the harm, you may hold Defendants liable for their own conduct, including conduct that foreseeably facilitates harm from third parties.

### Instruction 19.1-D

Negligence is not actionable unless it proximately caused Charleston County School District's injuries. Proximate cause means the direct cause of an injury. Charleston County School District bears the burden of proving that the Negligent Non-Protected Conduct of each Defendant was a cause of the injury. You may find causation as to all Defendants, as to none of the Defendants, or as to some Defendants and not others.

Proximate cause requires proof of both causation in fact and legal cause. Causation in fact is proved by establishing the School District's injuries would not have occurred "but for" the Defendant's negligence. Legal cause is proved by establishing foreseeability.

Foreseeability of some injury from a negligent act or omission is a prerequisite to its being a proximate cause of the injury for which recovery is sought. The test of foreseeability is whether some injury to another is the natural and probable consequence of the complained of act. The law requires only reasonable foresight, so you should consider the circumstances and what each Defendant knew at the time of the conduct. If the injuries are not reasonably foreseeable when due care is exercised, there is no liability. However, if that injury is within the scope of foreseeable risks from the alleged negligent conduct, Defendants may be held liable.

While it is not necessary that a Defendant must have contemplated or could have anticipated the particular event which occurred, liability cannot rest on mere possibilities. A Defendant cannot be charged with that which is unpredictable or that which could not be expected to happen. The School District therefore proves legal cause by establishing the injury in question occurred as a natural and probable consequence of the Defendant's Negligent Non-Protected Conduct. In

55

determining whether a consequence is one that is natural and probable, a Defendant's conduct must be viewed in the light of the attendant circumstances.

Proximate cause does not mean the only cause. A Defendant's conduct can be a proximate cause if it was at least one of the direct, concurring causes of the injury.

The law defines proximate cause of an injury to be something that produces a natural chain of events which, in the end, brings about the injury. In other words, proximate cause is the direct cause, without which the injury would not have occurred. If the injury would have happened as a natural and probable consequence, even in the absence of the alleged breach of duty of care, then the School District has failed to demonstrate proximate cause.

Further, if the cause of Charleston County School District's injury may be as reasonably attributed to an act for which a Defendant is not liable as to one for which they are liable, then Charleston County School District has failed to carry the burden of establishing that its injuries were the proximate result of that Defendant's negligence.

Defendants do not have a duty to prevent third parties (for example, individuals who post dangerous "challenges" on Defendants' platforms, commit crimes, or post threats on Defendants' platforms) from using their platforms in ways that may cause harm to Charleston County School District or its students. However, Defendants may be held liable for their own actions, when those actions foreseeably cause a third party to harm the School District. Defendants also may be held liable for viral challenges, including by creating filters or overlays, or encouraging participation, that facilitate viral challenges.

You may not impose liability based on any injuries that you believe may have been caused by the Defendants' Protected Conduct, even if you think it was wrongful.

**PLAINTIFFS' SOURCE:** Anderson, S.C. Requests to Charge – Civil, 20-2; *see also Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 371 S.C. 123, 638 S.E.2d 650 (2006); *J.T. Baggerly v. CSX Transp., Inc.*, 370 S.C. 362, 635 S.E.2d 97 (2006); *Hurd v. Williamsburg Cnty.*, 363 S.C. 421, 611 S.E.2d 488 (2005); *Brown v. Nat'l Oil Co.*, 105 S.E.2d 81, 84-85 (S.C. 1958); *Hicklin v. Jeff Hunt Machinery Co.*, 226 S.C. 484, 85 S.E.2d 739, 743 (1955) *Little v. Brown & Williamson Tobacco*

56

*Corp.*, 243 F. Supp. 2d 480, 498 (D.S.C. 2001) (noting that causation in fact is determined under a substantial factor test where several causes combine to produce an injury to avoid perverse result (citing *South Carolina Ins. Co. v. James C. Greene and Co.*, 348 S.E.2d 617, 620 (1986)); *see also* S.C. Code § 15-18-15 (modifying joint-and-several liability scheme but expressly recognizing indivisible injury rule); *Glenn v. 3M Co.*, 890 S.E.2d 569, 591 (S.C. Ct. App. 2023) ("negligence of a third party . . . does not relieve [original tortfeasor] of liability."); *Small v. Pioneer Mach., Inc.*, 494 S.E.2d 835, 844 (Ct. App. 1997) ("A third party's acts of negligence do not break the causal chain if the acts are foreseeable." (internal citations omitted)).

**DEFENDANTS' SOURCE:** Anderson, South Carolina Requests to Charge – Civil, § 20-2 (rev. 2d ed. 2016); SD Order, 754 F. Supp. 3d 946, 971–72 (N.D. Cal. 2024); Anderson, South Carolina Requests to Charge – Civil, § 20-1 (rev. 2d ed. 2016); *Wickersham v. Ford Motor Co.*, 853 S.E.2d 329, 332 (S.C. 2020).

DATE SUBMITTED: January 28, 2026

1

### 1.    Plaintiffs' Argument

2          The parties have revised South Carolina's pattern instruction to reduce repetition and

3    prioritize plain statements of South Carolina law. Charleston prefers "harm" to "injury" because it

4    better suits the facts of the case and thus will be more helpful to jurors. Substantively, Charleston

5    has added language explaining proximate cause in cases of indivisible injury, and Defendants have

6    proposed language on duty to prevent third-party harm.

7          **Indivisible Injury.** The only substantive change that Charleston proposes removes language

8    stating that a cause is only proximate if "without [the cause] the injury would not have occurred"

9    and adds language explaining the indivisible injury rule and its relationship to proximate cause. This

10    is consistent with South Carolina law in cases that involve multiple tortfeasors contributing to a

11    single harm. *See Little v. Brown & Williamson Tobacco Corp.*, 243 F. Supp. 2d 480, 498 (D.S.C.

12    2001) (noting that causation in fact is determined under a substantial factor test where several causes

13    combine to produce an injury to avoid perverse result); *see also* S.C. Code § 15-18-15 (modifying

14    joint-and-several liability but recognizing indivisible injury rule); *see also infra* [Causation –

15    Substantial Factor], [Causation – Concurring Cause]. In this context, Charleston's language is

16    sufficient and accurate.

17          Defendants claim that Plaintiff replaces causation-in-fact with foreseeability, but that is

18    incorrect: Plaintiff's instruction discusses foreseeability *and also* is consistent with South Carolina

19    law on substantial factor causation in cases of indivisible injury, as discussed in *Little*. Defendants

20    fail to address indivisible injury at all, so their cases do not help them: *Wickersham v. Ford Motor*

21    *Co.*, 853 S.E.2d 329, 332 (S.C. 2020) did not involve multiple tortfeasors contributing to a single

22    harm and is thus inapposite. And both *Brown v. Nat'l Oil Co.*, 105 S.E.2d 81, 84–85 (S.C. 1958)

23    and *Hicklin v. Jeff Hunt Mach. Co.*, 85 S.E.2d 739, 742–43 (S.C. 1955) confirm the applicability of

24    substantial factor causation in cases of indivisible injury. None of Defendants' authority abrogates

25    the principle expressed in *Little*, or explains why it is inapplicable here. Defendants also suggest

26    that Plaintiff seeks to avoid causation-in-fact with an "attenuated theory of causation," but

27    causation-in-fact does not turn on Defendants' characterization of the links in the causal chain.

28

Defendants are also wrong that Plaintiff's instruction on the foreseeability standard is outdated—it has been cited approvingly as recently as 2008 alongside Defendants' preferred "natural and probable consequence" language. *Mellen v. Lane*, 659 S.E.2d 236, 248 (S.C. Ct. App. 2008) And contrary to Defendants' claim, it does not imply that Charleston can recover "simply because a student user may have been harmed;" rather, it tells the jury how to apply foreseeability. This instruction (and others) make clear that an actionable harm must be "to the School District."

**Third Party Harm.** Plaintiff objects to instructing the jury on third-party harm, but offers competing language if necessary. This instruction is unwarranted. It is unlikely that challenges, crimes, or threats will be introduced at trial, much less play a role that would warrant cautioning the jury here. Defendants' duty is a question of law for the Court that it has already resolved. Defendants' language risks misleading jurors into confusing duty with the proximate cause question the jury must answer. Defendants also present an incomplete view of the law by creating the false impression that third-party negligence absolves them of liability. But, as Plaintiff's instruction makes clear, South Carolina holds a negligent wrongdoer liable for causing foreseeable third-party misconduct. *See Glenn v. 3M Co.*, 890 S.E.2d 569, 591 (S.C. Ct. App. 2023).

If the Court includes an instruction on third party conduct, Plaintiff's language more closely adheres to the Court's ruling and South Carolina law on third-party misconduct. *See* ECF 1267 at 25-26; *see also Small v. Pioneer Mach., Inc.*, 494 S.E.2d 835, 844 (Ct. App. 1997). Defendants claim that instructing the jury that they may be held liable for their conduct, including that which "foreseeably facilitates harm from third parties" suggests to the jury that they "could impose liability" for third-party conduct that was neither foreseeable nor facilitated by Defendants. But this claim is baseless: Charleston's language entails that third-party conduct be facilitated by Defendants and foreseeable for liability to attach, which tracks the Court's ruling about "foreseeable uses" of Defendants' features by third parties. ECF 1267 at 25.

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence]; *infra* [Section 230].

1

## 2.    Defendant's Argument

2          Plaintiff misstates the burden under SC law to show proximate causation.  Plaintiff must show

3   both causation in fact (but for) and legal cause.  *Wickersham v. Ford Motor Co.*, 853 S.E.2d 329,

4   332 (S.C. 2020).  Causation in fact "is proved by establishing the plaintiff's injury would not have

5   occurred 'but for' the defendant's negligence." *Id.*  Foreseeability alone is not sufficient.  *Brown*

6   *v. Nat'l Oil Co.*, 105 S.E.2d 81, 84–85 (S.C. 1958), discussed foreseeability in the context of

7   intervening cause; it did not replace the cause-in-fact requirement.  In *Hicklin v. Jeff Hunt Mach.*

8   *Co.*, 85 S.E.2d 739, 742–43 (S.C. 1955), the court found that the cause-in-fact requirement was met.

9          The burden to prove cause-in-fact is not lessened in cases involving an attenuated theory of

10  causation.  In *Wickersham*, the S.C. Supreme Court held that the burden to prove cause-in-fact was

11  "a difficult burden" in a wrongful death from suicide case where "proving causation-in-fact . . .

12  required [plaintiff] to prove [a] sequence of causal events."  853 S.E.2d at 332–33.  Defendants

13  object to Plaintiff's language that "It is sufficient that the Defendants should have foreseen that their

14  negligence would probably result in harm of some kind to someone."  Here, Plaintiff has to prove

15  that Defendants' Non-Protected Conduct, if any, caused students to suffer mental health harms that

16  in turn caused economic injury to Plaintiff.  Plaintiff only points to one case from this century

17  endorsing such language (*Mellen*).  But that case, as with the others, only use that language in

18  examining intervening cause, a different concept that should not be introduced here. More recent

19  SC cases consistently articulate the standard for determining foreseeability as "looking to the natural

20  and probable consequences of the defendant's act or omission."  *See, e.g.*, *Wickersham*, 853 S.E.2d

21  at 332.  Proving that an injury was a natural and probable consequence is a higher standard than

22  showing that some type of injury could be expected to result in some indeterminate group of people

23  or entities.  Plaintiff offers no support that "foreseeable" equates to "predictable."

24         Defendants' language follows the Court's prior orders that non-foreseeable third-party

25  conduct that occurs on Defendants' platforms is not actionable, nor is general knowledge about

26  harmful third-party content actionable.  *See* SD Order, 754 F. Supp. 3d 946, 971–72 (N.D. Cal.

27  2024).  Plaintiff's instruction omits that Defendants' role as a mere publisher of content is not

28  sufficient for liability to attach.  *See id.*  Plaintiff's paragraph on third-party harm ("The mere fact

60

1   that a Defendant generally knows . . .") is incorrect, confusing, and fails to provide any guideposts

2   for what type of conduct is and is not subject to liability.   Defendants object to Plaintiff's removal

3   of language that further explains the circumstances under which Plaintiff has not met its burden and

4   explainS the concept of cause-in-fact.  Defendants object to Plaintiff changing "injury" to "harm."

5       Instructions to the jury related to conduct should include language that incorporates the

6   limitations on liability set forth in the Court's rulings about Section 230 and the First Amendment.

7   *See* SD Order at 14; PI Order at 5, 22; Defs.' Position on Section 230 Instr.

8       Neither *Little* nor *Greene* holds that but-for cause is inapplicable where there are multiple

9   tortfeasors.  In *Greene*, the state case on which *Little* relies, the court explains the concept of

10  concurring cause, which still *explicitly recognizes the requirement of but-for cause*.  348 S.E.2d

11  617, 620 (S.C. Ct. App. 1986).  The federal court in *Little* misread different SC cases to infer that

12  but-for cause is not always required.  The court in *Little* claimed that *Small v. Pioneer Mach., Inc.*,

13  494 S.E.2d 835 (S.C. Ct. App. 1997) supports that position, but *Small* is clear: "Causation in fact

14  is proved by establishing the injury would not have occurred "but for" the defendant's

15  negligence." *Id.* at 842.  The *Little* court's gloss of *McCarty v. Kendall Co.* is also incorrect.  120

16  S.E.2d 860, 863 (S.C. 1961).  *McCarty* is "a workmen's compensation case" subject to relaxed

17  causation standards under the Workers' Compensation Act.  *See, e.g.*, *Pierre v. Seaside Farms,*

18  *Inc.*, 689 S.E.2d 615, 618 (2010).  And whether an injury is indivisible is a question of

19  apportionment of damages, which comes after a finding of causation and liability.  Plaintiff must

20  first prove that a particular Defendant caused its injury in order to recover against that Defendant.

21      S.C. Code § 15-38-15 sets out a process for fault apportionment for the purposes of

22  determining apportionment of damages.  It does not affect the standard for causation.  The statute

23  specifically requires juries to apportion fault for indivisible injuries.

24

25

26

27

28

### 3.   INSTRUCTION NO. 20: NEGLIGENCE – SUBSTANTIAL FACTOR

[*Defendants object to the inclusion of this instruction.  Charleston's proposal in blue text.*]

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.

**PLAINTIFFS' SOURCE:** *Brown v. Nat'l Oil Co.*, 233 S.C. 345, 353 (1958); *Jolly v. Gen. Elec. Co.*, 869 S.E.2d 819, 829 (S.C. Ct. App. 2021), *aff'd sub mon. Jolly v. Fisher Controls Int'l, LLC*, 905 S.E.2d 380 (2024); *Edwards v. Scapa Waycross, Inc.*, 422 S.C. 387, 391, 899 S.E.2d 597, 599 (2024); *Glenn v. 3M Co.*, 440 S.C. 34, 58-60, 890 S.E.2d 569, 581-83 (S.C. Ct. App. 2023); *Little v. Brown & Williamson Tobacco Corp.*, 243 F. Supp. 2d 480, 498-99 (D.S.C. 2001). *J.T. Baggerly v. CSX Transp., Inc.*, 635 S.E.2d 97, 101 (S.C. 2006)

DATE SUBMITTED: January 28, 2026

1          **1.      Plaintiffs' Argument**

2          **Instruction is Warranted.** The proposed instruction is consistent with South Carolina law,

3    which requires a plaintiff to show that "the conduct of the defendant was a substantial factor in

4    bringing about the [harm]" where, as here, there is more than one cause to the plaintiff's harm. *Little*

5    *v. Brown & Williamson Tobacco Corp.*, 243 F. Supp. 2d 480, 498-99 (D.S.C. 2001)  (recognizing

6    that a plaintiff must show that the defendant's negligence was a substantial factor "in addition" to

7    showing that it was a "direct, concurring cause[]" of his injury (citations omitted)); *see also Brown*

8    *v. Nat'l Oil Co.*, 105 S.E.2d 81, 353-54 (1958).

9          The proposed instruction also clarifies what is meant by "substantial," as the term—standing

10   alone—risks misleading the jury into believing that the defendants' negligence must be the sole or

11   overwhelming cause of Charleston's injury. South Carolina law requires no such showing. Rather,

12   as the proposed instruction explains, a substantial factor need only be what would "lead reasonable

13   men to regard . . . as a cause" of the harm. Restatement (Second) of Torts § 431 cmt. a (1965); *see*

14   *also Little*, 243 F. Supp. 2d at 499 (citing to the Second Restatement's substantial factor test when

15   explaining the test under South Carolina law). The instruction thus ensures that the jury applies the

16   correct legal standard and prevents prejudice to Charleston.

17         **The Court Should Not Instruct on But-For Causation.** It would be error for the Court to

18   instruct that conduct is not a substantial factor in causing harm if the same injury would have

19   occurred without the conduct in a case of indivisible injury. *See Jolly v. Gen. Elec. Co.*, 869 S.E.2d

20   819, 829 (S.C. Ct. App. 2021) (explaining that where there are multiple alleged sources of a

21   plaintiff's harm, the "'but-for' requirement of traditional tort cases" is "relaxed" in favor of the

22   "substantial factor test"); *see also supra* [Causation – Proximate Cause]; *infra* [Causation –

23   Concurring Cause]. Defendants object that the substantial factor test discussed in *Jolly*, *Edwards v.*

24   *Scapa Waycross, Inc.*, 899 S.E.2d 597, 599 (S.C. 2024), and *Glenn v. 3M Co.*, 890 S.E.2d 569, 581

25   (S.C. Ct. App. 2023), cannot apply because these cases involved indivisible injury in the context of

26   asbestos exposure. But Defendants are wrong to say there is no precedent for applying South

27   Carolina's substantial factor test outside of the asbestos context: the South Carolina Supreme Court

28   has applied it in the context of an indivisible injury inflicted by multiple tortfeasors' contributions

1   to a train derailment, *see  J.T. Baggerly v. CSX Transp., Inc.*, 635 S.E.2d 97, 101 (S.C. 2006), as

2   well as a fire caused by a negligently-maintained gas tank and a smoker's match, *see Brown v. Nat'l*

3   *Oil Co.*, 105 S.E.2d 81, 85 (S.C. 1958), and a federal court has applied it in the context of injuries

4   caused to a smoker by multiple tobacco manufacturers. *See Little*, 243 F. Supp. 2d at 499. The same

5   rule should apply here because this case involves precisely the same kind of indivisible injury. Thus,

6   it would be error to treat this as a run-of-the-mill negligence case governed by strict but-for

7   causation.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### 2.    Defendants' Argument

2       Defendants object to Plaintiff's substantial factor instruction because it has no basis in South

3   Carolina law.  In negligence cases, the test for causation in South Carolina is: (1) cause-in-fact (but-

4   for cause), and (2) legal cause (foreseeability).  *See Wickersham*, 853 S.E.2d at 332.  It would be

5   error to instruct the jury on the wrong causation standard.

6       Plaintiff's cited authorities do not support its position.  Plaintiff misreads the holding of

7   *Little*, which does not hold that but-for cause is inapplicable where there are multiple tortfeasors.

8   In fact, *James C. Greene*, the state case on which *Little* relies, explains the concept of concurring

9   cause, which still *explicitly recognizes the requirement of but-for cause*: "Where several causes

10  combine to produce injury, a person is not relieved from liability for negligence because he is

11  responsible for only one of them. It is sufficient that his negligence is an efficient cause ***without***

12  ***which the injury would not have resulted*** to as great an extent and that any other efficient cause is

13  not attributable to the person injured." *S.C. Ins. Co. v. James C. Greene & Co.*, 348 S.E.2d 617,

14  620 (S.C. Ct. App. 1986) (emphasis added).  The federal court in *Little* misread South Carolina

15  cases to infer that but-for cause is not always required.  The court in *Little* claimed that *Small v.*

16  *Pioneer Mach., Inc.*, 494 S.E.2d 835 (S.C. Ct. App. 1997) supports that position, but *Small* is clear:

17  "Causation in fact is proved by establishing the injury would not have occurred "but for" the

18  defendant's negligence." *Id.* at 842.  The *Little* court's gloss of *McCarty v. Kendall Co.* is also

19  incorrect.  120 S.E.2d 860, 863 (S.C. 1961).  The *Little* decision claimed *McCarty* held "that

20  causation was established where a doctor testified that immobilization was a 'contributing factor' to

21  a large degree' to the plaintiff's development of kidney stones." *Little v. Brown & Williamson*

22  *Tobacco Corp.*, 243 F. Supp. 2d 480, 499 (D.S.C. 2001) (citing *McCarty*, 120 S.E.2d at 863).  But

23  *McCarty* is "a workmen's compensation case," 120 S.E.2d at 861, meaning it is subject to relaxed

24  causation standards under South Carolina's Workers' Compensation Act.  *See, e.g.*, *Pierre v.*

25  *Seaside Farms, Inc.*, 689 S.E.2d 615, 618 (2010).

26       *Brown v. National Oil* cites language from the First Restatement of Torts using the language

27  "substantial factor" in the context of discussion about foreseeability (Restatement § 435) and

28  intervening cause (Restatement § 447) (the latter of which Defendants oppose instructing the jury

on), but does not analyze that standard, expound on how it would be applied, or adopt it as a causation standard for tort cases in South Carolina. *Brown v. Nat'l Oil Co.*, 105 S.E.2d 81, 84–85 (S.C. 1958). The other cases are all asbestos exposure cases. *See Edwards v. Scapa Waycross, Inc.*, 899 S.E.2d 597, 599 (S.C. 2024); *Jolly v. Gen. Elec. Co.*, 869 S.E.2d 819, 829 (S.C. Ct. App. 2021), *aff'd sub nom. Jolly v. Fisher Controls Int'l, LLC*, 905 S.E.2d 380 (S.C. 2024); *Glenn v. 3M Co.*, 890 S.E.2d 569, 581 (S.C. Ct. App. 2023). Each of those cases acknowledges that the comparatively lower bar of substantial factor causation does not apply in general negligence cases, which still require showing but-for causation. *See Edwards*, 899 S.E.2d at 599 (acknowledging that this standard "relaxes the 'but-for' requirement *that applies in traditional tort cases*" (emphasis added) (citation omitted)); *Jolly*, 869 S.E.2d at 829 (same); *Glenn*, 890 S.E.2d at 582 ("*By eliminating the 'but for' requirement for proximate cause applied in traditional tort cases, our asbestos jurisprudence* has recognized it as an 'insuperable barrier to many deserving plaintiffs' while still requiring the plaintiff to show 'more than a casual or minimum contact with the product' . . . ." (emphasis added) (footnotes and citations omitted)). Defendants are not aware of any South Carolina cases applying the substantial factor test to causation analysis outside of the asbestos context or in general negligence cases, and Plaintiff cites none.

*J.T. Baggerly v. CSX Transp., Inc.*, 635 S.E.2d 97 (S.C. 2006), did not apply a substantial factor test to eliminate the requirement for but-for cause—it explicitly held that "Proximate cause requires proof of: (1) causation-in-fact, and (2) legal cause." *Id.* at 101. The phrase "substantial factor" appears in that decision only in the context of analyzing foreseeability (which is called legal cause under S.C. law), not causation-in-fact (which is but-for cause under S.C. law). *Id.* at 101–02. None of *Little*, *Brown*, or the Restatement overrides black-letter South Carolina law that requires but-for cause and proximate cause in negligence cases.

Defendants object to Plaintiff changing "injury" to "harm." Plaintiff does not present any authority that supports deviating from the model instruction.

### 4.  INSTRUCTION NO. 21: NEGLIGENCE – CONCURRING CAUSE

[*Defendants object to inclusion of this instruction.*]

**Instruction 21.1-P**

When deciding if a Defendant's actions were the proximate cause of the School District's harm, you must distinguish between an intervening cause and a concurring cause. An intervening cause happens after the main or primary cause, while concurring causes work together at the same time to cause harm.

If a concurring cause should have been foreseen, a Defendant can still be held liable. However, the mere fact that one of several concurring causes may not have been reasonably anticipated, is not enough to shield a Defendant from liability. Even if a Defendant could not have predicted all factors involved, it is still responsible if its negligence was necessary for the harm to occur. Causes are concurrent if the individual acts of negligence combine to cause the harm. In such case, each of the contributing acts or omissions is a proximate cause for which each of the Defendants may be held responsible. A Defendant's negligence need not be the sole cause of the harm. It is enough to show that it is a proximate concurring cause, that is, one that was so efficient in causation that, but for it, the harm would not have occurred.

Consequently, if a company's negligence is a proximate cause of a harm to another, the fact that the negligence of another Defendant or a third party concurred with its own negligence to produce the harm does not relieve the original company of liability. In such cases, both wrongdoers are in breach of a duty of care owed to the plaintiff and, because the negligence of both concurred to produce the harm, both are liable.

In other words, where several causes produce a harm , the harm may be attributed to all or any of the causes, and recovery may be had against any of the responsible persons or entities, although one of them was more responsible.

Charleston County School District asserts that the independent wrongful conduct of each Defendant unites to produce a single indivisible harm. When the independent wrongful conduct of more than one defendant contributes to one indivisible harm, you may find each defendant liable

even if it is not possible to determine whether or not the wrongful acts of any particular defendant, acting alone, would have caused the same harm.

**Instruction 21.1-D**

When deciding if a Defendant's actions were the proximate cause of the School District's harm, you must distinguish between an intervening cause and a concurring cause. An intervening cause happens after the main or primary cause, while concurring causes work together at the same time to cause harm.

If, by the exercise of reasonable foresight and diligence, a concurring cause should have been foreseen and foreguarded, a Defendant can still be held liable. However, the mere fact that one of several concurring causes may not have been reasonably anticipated, is not enough to shield a Defendant from liability. Causes are concurrent if the individual acts of negligence combine to cause the harm. In such case, each of the contributing acts or omissions is regarded in law as a proximate cause for which each of the Defendants may be held responsible. A Defendant's negligence need not be the sole cause of the injury. It is enough to show that it is a proximate concurring cause, that is, one that was so efficient in causation that, but for it, the injury would not have occurred.

Consequently, if a person's negligence is a proximate cause of an injury to another, the fact that the negligence of a third party concurred with his own negligence to produce the injury does not relieve the original entity of liability. In such cases, both wrongdoers are in breach of a duty of care owed to the plaintiff and, because the negligence of both concurred to produce the injury, both are liable.

In other words, where several causes producing an injury are concurrent, and each is a direct cause without which the injury would not have happened, the injury may be attributed to all or any of the causes, and recovery may be had against any of the responsible persons or entities, although one of them was more responsible.

If an injury occurs through the concurrent negligence of two or more entities, and it would not have happened in the absence of the negligence of either one entity, the negligence of each participant is the proximate cause of the injury, although they may have acted independently of one another, and both are responsible.

1

2  **PLAINTIFFS' SOURCE:** Anderson, S.C. Requests to Charge – Civil, 20-3; *see also J.T. Baggerly*

3  *v. CSX Transp., Inc.*, 370 S.C. 362, 635 S.E.2d 97 (2006); *Bishop v. South Carolina Dep't of Mental*

4  *Health*, 331 S.C. 79, 502 S.E.2d 78 (1998); *Newton v. South Carolina Pub. Rys. Comm'n*, 319 S.C.

5  430, 462 S.E.2d 266 (1995); *Am. Motorcycle Assn. v. Superior Ct.*, 20 Cal. 3d 578, 588-89 (1978);

6  *Brown v. Nat'l Oil Co.*, 105 S.E.2d 81, 84–85 (S.C. 1958).

7

8  **DEFENDANTS' SOURCE:** Anderson, South Carolina Requests to Charge – Civil, § 20-3 (rev.

9  2d ed. 2016).

10

11  DATE SUBMITTED: January 28, 2026

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1              **1.      Plaintiffs' Argument**

2              **Instruction is Warranted.** Defendants object to the inclusion of a concurring cause

3      instruction without providing any authority that suggests the instruction should not be given. To the

4      contrary, failing to instruct on concurring causation in a case involving multiple defendants who all

5      allegedly contributed to a single harm risks severely prejudicing Charleston. Contrary to

6      Defendants' claim, the model instruction on concurring cause is not limited to third parties, but in

7      any case, the position that Defendants take in their briefing—that they "do not contend that the

8      negligence of third parties contributed to Plaintiff's injuries," but only posit alternative causes, is

9      contradicted by their representations elsewhere. *See* ECF No. 2293 at *16 ("Charleston must come

10     forward with evidence that Defendants' *actionable conduct*—as opposed to content, protected

11     features, or third-party bad acts—caused it harm"); *see also id.* at *19 (asserting that "Charleston

12     cannot connect *Defendants' actionable conduct*—as opposed to third-party wrongdoing or the

13     publication of content—to its alleged injuries"); *id.* at *34 ("Charleston Cannot Recover for

14     Property Damage That Results from Third-Party Acts.") (emphases in original). Given multiple

15     defendants who contributed to a single harm, as well as Defendants' references to third-party

16     misconduct, it is doubly important to include an instruction which clearly explains how to evaluate

17     Defendants' alleged negligence in the context of third parties acting during the same period. *See*

18     *Bishop v. S.C. Dep't of Mental Health*, 502 S.E.2d 78, 83 (1998) (recognizing that whether a third

19     party's negligence insulates the original wrongdoer from liability may depend on whether it is a

20     concurring or intervening cause to the plaintiffs' harm).

21             Charleston's proposed language follows South Carolina's pattern instruction on concurring

22     cause, *see* Anderson, S.C. Requests to Charge – Civil 20-3, with non-substantive edits for

23     comprehensibility and to substitute "harm" for "injury." Defendants do not support their objection

24     to the one sentence of Plaintiff's modified language that begins "[e]ven if a Defendant could not

25     have predicted . . .", which simply adjusts the language of the pattern instruction for

26     comprehensibility. Furthermore, Defendants are wrong that the jury must be instructed that

27     "concurrent causes must work contemporaneously to produce the injury." This misstates South

28     Carolina law, which does not require acts to occur contemporaneously with one another to be

                                                    70

1    concurrent causes—indeed, the only case Defendants cite involved *sequential* concurring causes.

2    *See J.T. Baggerly v. CSX Transp., Inc.*, 635 S.E.2d 97, 101 (S.C. 2006) (citing railroad operators'

3    failure to maintain tracks and street sweeper's subsequent collision with tracks as concurring causes

4    of derailment). Other cases cited in the pattern instructions also show that concurrent causes need

5    not happen simultaneously. *See, e.g.*, *Brown v. Nat'l Oil Co.*, 105 S.E.2d 81, 84–85 (S.C. 1958)

6    (whether oil company's negligence in failing to construct underground gas tank with adequate vents

7    was concurring cause of fire sparked by smoker's match was question for jury).

8    **Indivisible Injury.** The only substantive addition is to clearly explain the indivisible injury

9    rule. Charleston adapted the final paragraph of the pattern instruction (which contemplates multiple

10    sources of harm) to fit this case, in which an indivisible injury is alleged. This is proper under South

11    Carolina law, which Charleston repeatedly cites throughout its briefing (contradicting Defendants'

12    claim that the instruction is only supported by California law). *See Jolly v. Gen. Elec. Co.*, 869

13    S.E.2d 819, 829 (S.C. Ct. App. 2021) (explaining that where there are multiple alleged sources of a

14    plaintiff's harm, the "'but-for' requirement of traditional tort cases" is "relaxed" in favor of the

15    "substantial factor test"); *see also Smith v. Tiffany*, 799 S.E.2d 479, 481 (S.C. 2017) (explaining

16    damages are allocatable between any plaintiff and defendant "whose actions are the proximate cause

17    of the indivisible injury"); *see also supra* [Negligence – Proximate Cause], [Negligence –

18    Substantial Factor]. Defendants' argument that "injuries are treated as separate where they result

19    from independent tortious conduct" does not grapple with the indivisible injury alleged in this case

20    or applicable South Carolina law, as its only cited authority involved tortfeasors responsible for

21    separate injuries. *See Collins v. Bisson Moving & Storage, Inc.*, 504 S.E.2d 347, 356 (S.C. Ct. App.

22    1998). Given the complexity of this issue and the potential for juror confusion, an express instruction

23    explaining the rule is warranted.

24    **Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra*

25    [Negligence]; *infra* [Section 230].

26

27

28

1

2.        **Defendants' Argument**

2

        Defendants object to the inclusion of this instruction in its entirety.  As the model instruction

3

states, a concurring cause instruction is appropriate where "the negligence of a third party concur[s]

4

with [a defendant's] own negligence to produce the injury."  That is not Defendants' position, nor

5

has Plaintiff made allegations supporting a concurring cause instruction.  Defendants contend that

6

other causes, such as broader, endemic issues like violence, poverty, racial issues, substance abuse,

7

and more, have caused the alleged injuries to Plaintiff, but Defendants do not contend that those are

8

"concurring" or "intervening" causes under the law.  They are simply alternative causes.  *See* ECF

9

No. 2293 at 1–2.  Alternative causes are causes that Defendants contend are the actual causes of

10

alleged injuries suffered by Plaintiff.  They exist independently of Defendants' actionable conduct.

11

And Defendants do not agree that there is a "single harm" here.

12

        If the Court gives the instruction over Defendants' objection, Defendants object to Plaintiff

13

adding the language "Even if a Defendant could not have predicted all factors involved, it is still

14

responsible if its negligence was necessary for the harm to occur" because it is not included in the

15

relevant model instruction.

16

        Defendants object to Plaintiff removing the language "are concurrent and each is a direct

17

cause without which the injury would not have happened" because that language is important for

18

the jury to understand that concurrent causes must work contemporaneously to produce the injury.

19

Causes that work at different times to produce the injury are not concurring causes under South

20

Carolina law.  *See J.T. Baggerly v. CSX Transp., Inc.*, 635 S.E.2d 97, 101 (S.C. 2006)

21

("[C]oncurring causes operate contemporaneously to produce the injury, so that it would not have

22

happened in the absence of either." (alteration in original) (quoting *Player v. Thompson*, 193 S.E.2d

23

531, 534 (S.C. 1972)).

24

        Defendants object to Plaintiff's addition of language about indivisible injury.  In South

25

Carolina, injuries are treated as separate where they result from independent tortious conduct.  *See*

26

*Collins v. Bisson Moving & Storage, Inc.*, 504 S.E.2d 347, 349, 356 (S.C. Ct. App. 1998) (finding

27

that plaintiff's injuries were separate where some injuries occurred in one car accident, and other

28

injuries resulted from a second car accident while riding to the hospital in an ambulance).  Moreover,

72

Plaintiff has not explained why or how its alleged injuries are not divisible. Plaintiff's argument on indivisible injury puts the cart before the horse. Whether an injury is indivisible is a question of apportionment of damages, which can only come after a finding of causation and liability.

Plaintiff's cite to *Jolly v. Gen. Elec. Co.*, 869 S.E.2d 819, 829 (S.C. Ct. App. 2021), is unavailing. That case makes clear that the comparatively lower bar of substantial factor causation used in asbestos cases does not apply in general negligence cases, which still require showing but-for causation. *See Jolly*, 869 S.E.2d at 829. Defendants are not aware of any South Carolina cases applying the substantial factor test to causation analysis outside of the asbestos context or in general negligence cases, and Plaintiff cites none.

The cite to *Smith v. Tiffany*, 799 S.E.2d 479, 481 (S.C. 2017) does not aid Plaintiff's argument. Defendants do not dispute that S.C. Code Ann. § 15-38-15 sets out procedures for fault apportionment after a liability finding.

Defendants object to Plaintiff changing "injury" to "harm." Plaintiff does not present any authority that supports deviating from the model instruction.

Defendants object to Plaintiff using "negligence" instead of "Negligent Non-Protected Conduct." Instructions to the jury related to conduct should include language that incorporates the limitations on liability set forth in the Court's rulings about Section 230 and the First Amendment. *See* SD Order at 14; PI Order at 5, 22; Defs.' Position on Section 230 Instr.

### 5.  INSTRUCTION NO. 22: NEGLIGENCE – INTERVENING CAUSE

**[*Defendants object to inclusion of this instruction.*]**

**Instruction 22.1-P**

When deciding if the Defendants' actions were the proximate cause of the School District's harm, you must consider whether there was another intervening cause.

An intervening cause only breaks the chain of responsibility if it was completely unexpected and not something the Defendants should have anticipated.

To determine if the Defendant is still responsible after the intervening cause, ask yourself if the Defendant could have reasonably predicted that another's actions would cause harm. If the Defendant wrongdoer should have foreseen that the actions of another could cause harm they may still be liable and the original negligence remains an active and contributing cause of the harm and liability exists for the consequences of negligent acts or omissions proximately flowing therefrom. The test is whether the harm could reasonably have been anticipated. If the harm was a natural result of the Defendants' conduct and actions, even if their actions set off a chain of events leading to harm, if those events were foreseeable, defendants are responsible, even if other factors were involved.

The law regarding foreseeability does not require proof of Defendants being able to foresee the exact consequences of their conduct. The test is whether the probable harm could reasonably have been anticipated.  It is sufficient if they should have foreseen that their wrongful conduct was likely to cause some harm. The key is whether the harm was a foreseeable result of their conduct and actions, in which case they are liable, even if other causes were involved.

The law does not require proof of being able to foresee the exact consequences. It is sufficient if a company should have foreseen that his wrongful conduct was likely to cause some harm to some other person.

An intervening act of a third person breaks the chain of causation and obviates liability for the original breach of duty only if it is a superseding cause and one which the original wrongdoer was not bound to anticipate as the natural or ordinary result of his acts. If, subsequent to an original wrongful or negligent act, a new cause has intervened, of itself sufficient to stand as the cause of

the harm, the former must be considered as too remote. However, if the character of the intervening act claimed to break the connection between the original wrongful act and the subsequent harm was such that its probable or natural consequences could reasonably have been anticipated or foreseen by the original wrongdoer, the causal connection is not broken and the original wrongdoer is responsible for all the consequences resulting from the intervening act.

The fact that an intervening act of a third person is negligent does not make it a superseding cause so as to relieve the original entity of liability if:

(1) the entity at the time of its conduct should have realized that a third person or entity might so act; or

(2) a reasonable entity knowing the situation existing when the act of the third person or entity was done would not regard it as highly extraordinary that the third person or entity had so acted; or

(3) the intervening act is a reasonable response to a situation created by the original entity's conduct and the manner in which it is done is not extraordinarily negligent.

A third party's acts of negligence do not break the causal chain if the acts are foreseeable. For an intervening force to be a superseding cause that relieves a defendant from liability, the intervening cause must be a cause that could not have been reasonably foreseen or anticipated.

If the intervening acts are: (1) set in motion by the original wrongful act; and (2) are the normal and foreseeable result of the original act, the final result, as well as every intermediate cause, is considered in law to be the proximate result of the first wrongful cause. An intervening act does not break the chain of causation if it is a normal response to the situation created by the original wrongful act.

### Instruction 22.1-D

The test by which the negligent conduct of the original wrongdoer is to be insulated as a matter of law by the independent negligent act of another is whether the intervening act and the injury resulting therefrom are of such character that the author of the primary negligence should have reasonably foreseen and anticipated them in the light of attendant circumstances. The law requires only reasonable foresight, and when the injury complained of is not reasonably foreseeable,

in the exercise of due care there is no liability.  One is not charged with foreseeing that which is unpredictable or that which could not be expected to happen.  When the negligence appears merely to have brought about a condition of affairs, or a situation in which another and entirely independent and efficient agency intervenes to cause the injury, the latter is to be deemed the direct or proximate cause, and the former only the indirect or remote cause.

Liability exists for the natural and probable consequences of negligent acts or omissions proximately flowing therefrom.  The intervening negligence of a third person will not excuse the first wrongdoer if such intervention should have been foreseen in the exercise of due care.  In such case, the original negligence still remains active, and a contributing cause of the injury.  The test is whether the probable injurious consequences could reasonably have been anticipated.

Any cause which is natural and of continuous sequence, unbroken by any efficient intervening cause, produces the result complained of, and without which the result would not have occurred is proximate cause.  A prior and remote cause cannot be made the basis of an action if such remote cause did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible, if there intervened between such prior or remote cause and the injury a distinct, successive, and unrelated and efficient cause of the injury, even though such injury would not have happened but for such condition or occasion.  If no danger existed in the condition except because of the independent cause, such condition was not the proximate cause.  If an independent negligent act or defective condition sets into operation the circumstances which result in injury because of the prior defective condition, such subsequent act or condition is the proximate cause.

The intervening negligence of another will not excuse the first tortfeasor, if the intermediate wrong or a similar one should have been foreseen in the exercise of due care; the original negligence remains active and constitutes a concurring proximate cause of the ultimate injury.

When you come to foreseeing a cause or a happening, the law does not require proof of your being able to foresee the exact consequences.  It is sufficient if a person should have foreseen that his wrongful conduct was likely to cause some injury to some other person.

Such an intervening cause must be at least new and independent, not under the control of the original wrongdoer, or one which by the exercise of reasonable foresight and diligence he should

76

1   have anticipated and guarded against. It must break the continuity of causal connection between
2   the original wrongful act or omission and the injury, so that the former cannot be said to have been
3   the efficient cause of the latter.

4        An intervening cause is an independent cause that intervenes between the original wrongful
5   act or omission and the injury, turns aside the natural sequence of events, and produces a result that
6   would not otherwise have followed and which could not have been reasonably anticipated. It is an
7   act of an independent agency which destroys the causal connection between the negligent act of the
8   defendant and the wrongful injury; the independent act being the immediate cause, in which case
9   damages are not recoverable because the original wrongful act is not the proximate cause. The
10  Defendants are liable for the intervening cause if it is foreseeable.

11       The mere fact that the intervention of a responsible human being can be traced between the
12  defendant's wrongful act and the injury complained of will not absolve a defendant. On the contrary,
13  the general rule is that whoever does a wrongful act is answerable for all the consequences that may
14  ensue in the ordinary course of events. Even though such consequences are immediately and
15  directly brought about by an intervening cause, if such intervening cause was set in motion by the
16  original wrongdoer, or was in reality only a condition on or through which the negligent act operated
17  to produce the injurious result, the wrongdoer is still liable. Any number of causes and effects may
18  intervene between the first wrongful cause and the final injurious consequence. If they are such as
19  might, with reasonable diligence have been foreseen, the last result, as well as the first, and every
20  intermediate result is to be considered a proximate result of the first wrongful cause. The question
21  always is: Was there any unbroken connection between the wrongful act and the injury, a continuous
22  operation? Did the facts constitute a succession of events so linked together as to make a natural
23  whole, or was there some new and independent cause intervening between the wrong and the injury?
24  An intervening act of a third person breaks the chain of causation and obviates liability for the
25  original breach of duty if it is a superseding cause and one which the original wrongdoer was not
26  bound to anticipate as the natural or ordinary result of his acts. If, subsequent to an original wrongful
27  or negligent act, a new cause has intervened, of itself sufficient to stand as the cause of the injury,
28  the former must be considered as too remote. However, if the character of the intervening act

claimed to break the connection between the original wrongful act and the subsequent injury was such that its probable or natural consequences could reasonably have been anticipated or foreseen by the original wrongdoer, the causal connection is not broken and the original wrongdoer is responsible for all the consequences resulting from the intervening act.

The fact that an intervening act of a third person is negligent does not make it a superseding cause so as to relieve the original entity of liability if:

(1)     the entity at the time of its conduct should have realized that a third person or entity might so act; or

(2)     a reasonable entity knowing the situation existing when the act of the third person or entity was done would not regard it as highly extraordinary that the third person or entity had so acted; or

(3)     the intervening act is a reasonable response to a situation created by the original entity's conduct and the manner in which it is done is not extraordinarily negligent.

A third party's acts of negligence do not break the causal chain if the acts are foreseeable. For an intervening force to be a superseding cause that relieves a defendant from liability, the intervening cause must be a cause that could not have been reasonably foreseen or anticipated.  That is, the intervening negligence of a third person or entity will not excuse the first wrongdoer if such intervention ought to have been foreseen in the exercise of due care.  In such case, the original negligence still remains active, and a contributing cause of the ultimate injury.

Evidence of an independent negligent act of a third party is directed to the question of proximate cause.  To exculpate a negligent defendant, the intervening cause must be one which breaks the sequence or causal connection between the defendant's negligence and the injury alleged. The superseding act must so intervene as to exclude the negligence of the defendant as one of the proximate causes of the injury.

In order to relieve the defendant of responsibility for the event, the intervening cause must be a superseding cause.  It is a superseding cause if it so entirely supersedes the operation of the defendant's negligence that it alone, without his negligence contributing thereto in the slightest degree, produces the injury.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

     If the intervening acts are: (1) set in motion by the original wrongful act; and (2) are the normal and foreseeable result of the original act, the final result, as well as every intermediate cause, is considered in law to be the proximate result of the first wrongful cause.  An intervening act does not break the chain of causation if it is a normal response to the situation created by the original wrongful act.

**PLAINTIFFS' SOURCE:** Anderson, S.C. Requests to Charge – Civil, 20-4; *see Bishop v. South Carolina Dep't of Mental Health*, 331 S.C. 79, 502 S.E.2d 78 (1998); *Oliver v. South Carolina Dep't of Hwys. and Pub. Transp.*, 309 S.C. 313, 422 S.E.2d 128 (1992).

**DEFENDANTS' SOURCE:** Anderson, South Carolina Requests to Charge – Civil, § 20-4 (rev. 2d ed. 2016).

DATE SUBMITTED: January 28, 2026

PARTIES' JOINT PROPOSED JURY INSTRUCTIONS (CHARLESTON COUNTY SCHOOL DISTRICT)
4:22-md-03047-YGR

1          **1.      Plaintiffs' Argument**

2          Charleston proposes non-substantive changes to South Carolina's pattern instruction on

3  intervening cause to improve readability and focus on a plain language explanation. *See* Anderson,

4  S.C. Requests to Charge – Civil 20-4. Again, despite their representations to the contrary in this

5  briefing, Defendants have repeatedly pointed to alleged third-party misconduct (not just alternative

6  causes) as a cause of Charleston's harm, *see supra* [Causation – Concurring Cause], requiring this

7  instruction to assist the jury in applying the correct legal standard when evaluating evidence of third-

8  party negligence. *See Bishop v. S.C. Dep't of Mental Health*, 502 S.E.2d 78, 83 (1998) (recognizing

9  that whether a third party's negligence insulates the original wrongdoer from liability may depend

10 on whether it is a concurring or intervening cause to the plaintiffs' harm). However, the pattern

11 language is extremely repetitive and spans six double-spaced pages—such length is unnecessary to

12 communicate the law to the jury.

13         Plaintiff's instruction is appropriate for this case and Defendants suggest no error in its

14 wording. Defendants' argument that this instruction "duplicate[s] core proximate cause concepts"

15 overlooks that Plaintiff's instruction explains distinct law on intervening cause that is not covered

16 elsewhere and is necessary for the jury in this case. Defendants point to nothing in this instruction

17 that is inconsistent with any proximate cause concepts explained elsewhere; nor does their objection

18 account for the context of this case. Their argument that no intervening cause instruction need be

19 given where proximate cause is separately explained also defies the logic of the pattern instructions,

20 which contemplate that when this instruction is given, it will appear alongside the instruction for

21 proximate cause that must be included in negligence cases.

22         Defendants further claim that Plaintiff's instruction misstates the standard of foreseeability.

23 However, this reading is based on snippets plucked out of context. First, Defendants object to the

24 language that an "intervening cause only breaks the chain of responsibility if it was completely

25 unexpected and not something the Defendants should have anticipated." But this is consistent with

26 the model language (which Defendants adopt) that a defendant "is not charged with foreseeing that

27 which is unpredictable or that which could not be expected to happen," as modified for

28 comprehensibility. Defendants also ignore that Plaintiff's instruction immediately fleshes out the

standard by 1) instructing the jury that subsequent actions of others do not break the causal chain only if Defendants "could have reasonably predicted" and "should have foreseen" them, and 2) stating that "[t]he test is whether the harm could reasonably have been anticipated."

Second, Defendants object to the language "[i]t is sufficient if [Defendants] should have foreseen that their wrongful conduct was likely to cause some harm" because it allegedly "fails to account for the fact that Defendants are only responsible for what can be reasonably foreseen." But the preceding sentence of Plaintiff's instruction does account for this, stating that "[t]he test is whether the probable harm could reasonably have been anticipated." Finally, Defendants object that Plaintiff's instruction "equates 'foreseeable' with 'predictable.'" But Plaintiffs use "predict[ed]" only once, and Defendants do not explain what error is risked by instructing the jury to ask "if the Defendant could have reasonably predicted that another's action would cause harm" when determining intervening cause. The also ignore that the model instruction also uses "foreseeable" and "predictable" together when it instructs the jury that a defendant "is not charged with foreseeing that which is unpredictable" (language that Defendants adopt). Read as a whole, Plaintiff's instruction accurately informs the jury about the applicable standard.

**Repeated 230 Instruction.** Defendants' objection that Plaintiff's instruction "does not cabin the claims to Non-Protected Conduct" is unwarranted and their speculation that "Plaintiffs will use the proposed intervening cause instruction to sidestep this Court's rulings on Section 230, the First Amendment, and third party conduct" is unfounded. Any appropriate restrictions based on these rulings will be covered in the relevant instructions and should not be reiterated here. *See supra* [Negligence—Elements], [Section 230], [Causation—Proximate Cause]; [Causation—Concurring Cause].

### 2.    Defendants' Argument

Defendants object to the inclusion of this instruction as unnecessary and likely to lead to jury confusion.

There is no basis for instructing on intervening cause in this case. Plaintiff's position appears to be that this instruction is necessary because Defendants may present evidence of alternative causes (e.g., COVID-19) at trial. That misunderstands the distinction between alternative causes, on the one hand, and intervening causes, on the other. An alternative cause is a cause that Defendants contend are the actual causes of any injuries suffered by Plaintiff. They exist independently of Defendants' actionable conduct. Because Defendants are not arguing that these alternative causes are intervening, the Court should not provide an instruction on intervening cause.

Plaintiff's proposed instruction introduces confusion by duplicating core proximate cause concepts. Refusing to give this instruction would not be error, as the proximate cause instruction adequately instructs the jury on principles of foreseeability. *See L.A. Mem'l Coliseum Comm'n v. NFL*, 726 F.2d 1381, 1398 (9th Cir. 1984) ("Well-tailored and specific instructions" may be necessary where "abstract legal principles are not self-explanatory to a lay jury" and the facts "are complex").

Defendants anticipate that Plaintiff will use the proposed intervening cause instruction to sidestep this Court's rulings on Section 230, the First Amendment, and third-party conduct; by omitting guidance tethered to those rulings and failing to delineate what may constitute "the natural, reasonable, and probable result" of Defendants' Non-Protected Conduct, the instruction invites juror confusion and encourages the jury to ascribe liability based on evidence of non-actionable conduct, effectively nullifying the Court's rulings through an all-purpose causation workaround. Given the complexity of determining which conduct is protected by Section 230 and the First Amendment, as well as the bar on recovery for certain third-party conduct, the instruction is likely to mislead the jury and permit a verdict resting on evidence of non-actionable conduct, contrary to the Court's prior rulings. *See* SD Order at 2, 12–14; PI Order at 14; Defs.' Position on Section 230 Instr.

If the Court provides this instruction over Defendants' objection, Defendants object to Plaintiff's substantial re-write of the model instruction and request that the Court provide an instruction in line with the model instruction.

Defendants object to the language "An intervening cause only breaks the chain of responsibility if it was completely unexpected and not something the Defendants should have anticipated" because it misstates the standard for intervening causes. As the model instruction makes clear, the standard to anticipate intervening causes is *reasonable foresight* and that a defendant "is not charged with foreseeing that which is unpredictable or that which could not be expected to happen." Likewise, the statement that "It is sufficient if they should have foreseen that their wrongful conduct was likely to cause some harm" is not accurate because it fails to account for the fact that Defendants are only responsible for what can be reasonably foreseen and does not cabin the claims to Non-Protected Conduct.

Defendants further object to Plaintiff adding language that equates "foreseeable" with "predictable," as Plaintiff provides no support for this proposition.

Defendants object to Plaintiff changing "injury" to "harm." Plaintiff does not present any authority that supports deviating from the model instruction.

## 6. INSTRUCTION NO. 23: STATUTE OF LIMITATIONS

[*Plaintiff objects to instructing the jury on the statute of limitations, as an instruction is not supported by the evidence and Defendants have not shown they are entitled to such an instruction.  Defendants' proposal in green text; Charleston's proposal in blue text.*]

Defendants raise the affirmative defense of the statute of limitations.  The statute of limitations is the period within which a plaintiff must file its case.  The statute of limitations for a negligence action is three years. The statute of limitations on a negligence claim accrues, or starts to run, at one of two times. First, a negligence claim can accrue at the time of the negligence the negligence occurred.  Alternatively, under what is called the discovery rule, a negligence claim can accrue when the facts and circumstances would put a person or entity of common knowledge on notice that they might have a claim against another party.  The date on which discovery should have been made is an objective, not subjective, question.

An action accrues when the injury harm is discovered or "reasonably ought to have been discovered." The "reasonably ought to have been discovered" requirement is the "reasonable diligence" requirement. The exercise of reasonable diligence means simply that a party must act with some promptness where the facts and circumstances of the injury harm would put a person or entity an entity on notice that some claim against another party might exist.

The statute of limitations begins to run from this point and not when advice of counsel is sought or a full blown theory of recovery is developed.  The fact that the injured harmed party may not comprehend the full extent of the damage is immaterial.

In this case, you should find that the statute of limitations bars Charleston County School District's recovery if you find that the Defendants proved by a preponderance of the evidence that by August 14, 2020, Charleston County School District knew or should have known, through the exercise of reasonable diligence, that it might have a cause of action against Defendants as of August 14, 2020.:

(1) It had been harmed; and

(2) The Defendants were the cause of its harm.

1

2

3

4

**PLAINTIFFS' SOURCE:** Anderson, S.C. Requests to Charge – Civil, 27-29 (modified); *see also Dunbar v. Carlson*, 341 S.C. 261, 533 S.E.2d 913 (Ct. App. 2000); *Doe v. Bishop of Charleston*, 407 S.C. 128, 754 S.E.2d 494 (2014); *McClain v. Jarrard*, 354 S.C. 218, 580 S.E.2d 763 (Ct. App. 2003); *Simons v. Wal-Mart Stores East, L.P.*, 2014 WL 2434825, at *3 (D.S.C. May 29, 2024).

5

6

7

8

9

10

11

**DEFENDANTS' SOURCE:** There is no pertinent Ninth Circuit Model Instruction or South Carolina Instruction for general negligence cases. *See also* S.C. Code Ann. § 15–3–530(5) (2005); *Gibson v. Bank of Am., N.A.*, 680 S.E.2d 778, 782 (S.C. Ct. App. 2009); *Burgess v. Am. Cancer Soc'y, S.C. Div., Inc.*, 386 S.E.2d 798, 800 (S.C. Ct. App. 1989); *Grillo v. Speedrite Products, Inc.*, 532 S.E.2d 1, 3 (S.C. Ct. App. 2000); *Snell v. Columbia Gun Exch., Inc.*, 278 S.E.2d 333, 334 (S.C. 1981); *Brown v. Finger*, 124 S.E.2d 781, 786 (S.C. 1962).

12

13

DATE SUBMITTED: January 28, 2026

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1          **1.     Plaintiffs' Argument**

2          **Instruction is Not Warranted.** Charleston objects to instructing the jury on the statute of

3      limitations, as there is no evidentiary support for such an instruction, nor have Defendants

4      demonstrated any basis for a determination that they are entitled to such an instruction. Under South

5      Carolina law, the defendant bears the burden of proving the statute of limitations defenses, *Brown*

6      *v. Finger*, 124 S.E.2d 781, 786 (1962), and courts should refrain from instructing juries on

7      affirmative defenses in the absence of any evidentiary proof of such defense. *Hoffman v. Greenville*

8      *Cnty.*, 129 S.E.2d 757, 760 (1963). Moreover, to the extent there are disputed factual questions

9      about when the plaintiff knew or should have known of the cause of action, the discovery rule is

10     operative, making the timing of the accrual ordinarily a question for the jury. *Walbeck v. I'On Co.,*

11     *LLC*, 889 S.E.2d 537, 543–44 (2023), *reh'g denied* (July 26, 2023). Here, the Defendants are asking

12     the court to arbitrarily instruct the jury that Charleston's date of accrual was three years and a day

13     before the filing of its suit.  Defendants have proffered no evidence to support such a finding, nor

14     any basis for an instruction regarding the statute of limitations. Defendants request to include such

15     an instruction should be denied.

16         **Charleston's Language is Preferable.** If the Court provides an instruction on statute of

17     limitations, the parties agree on the substance of the instruction, but Charleston makes two important

18     alterations that will be helpful for the jury. The first is to substitute "harm" for "injury," as

19     Charleston has done throughout. The second is to break out the elements of the discovery rule into

20     numbered components, which will make the rule easier for jurors to apply.

1

2.    **Defendants' Argument**

2          Plaintiff provides no authority for why this instruction should not be given when Defendants

3    are pursuing this affirmative defense.  Plaintiff's cited cases support Defendants' position or are

4    inapposite.  *See Simons v. Wal-Mart Stores E., L.P.*, 2014 WL 2434825, at *5 (D.S.C. May 29,

5    2014) (granting statute of limitations defense at summary judgment stage); *McClain v. Jarrard*, 580

6    S.E.2d 763, 764 (S.C. Ct. App. 2003) (per curiam) (upholding summary judgment grant on statute

7    of limitations ground where plaintiff sued defendants more than three years after discovery of their

8    injury); *Dunbar v. Carlson*, 533 S.E.2d 913, 916 (S.C. Ct. App. 2000) (dismissing statute of

9    limitations defense where it was not pled in the answer); *Doe v. Bishop of Charleston*, 754 S.E.2d

10   494, 501 (S.C. 2014) (overturning motion to dismiss in part on the grounds that a potential tolling

11   issue precluded application of the statute of limitations).

12          Defendants' proposed reference to August 14, 2020, is not "arbitrary," and does not tell the

13   jury that Plaintiff's claim accrued on that date.  Defendants do not disagree that it is the role of the

14   jury to determine when Plaintiff's claim accrued.  This instruction would tell the jury to determine

15   whether Plaintiff knew or should have known that it had a cause of action before August 14, 2020—

16   three years before Plaintiff filed its complaint in this litigation.  If so, Plaintiff's claims are barred.

17          Defendants object to Plaintiff's proposed language, stating that the standard for when the

18   statute of limitations begins to run is when a party knows "it had been harmed" and that "the

19   Defendants were the cause of its harm."  That is not the standard under South Carolina law.

20   Plaintiff's language impermissibly raises the bar for what a potential plaintiff's level of knowledge

21   should be.  All that is required is that the plaintiff know or should know "that a cause of action might

22   exist in his or her favor" —there is no requirement in SC that the plaintiff know who caused its

23   injuries before the statute of limitations begins to run.  *Gibson v. Bank of Am., N.A.*, 680 S.E.2d 778,

24   782 (S.C. Ct. App. 2009).

25          Defendants object to Plaintiff changing "injury" to "harm."  Plaintiff does not present any

26   authority that supports deviating from the model instruction.

27

28

### 7. INSTRUCTION NO. 24: COMPARATIVE NEGLIGENCE

[*Plaintiffs object to instructing the jury on comparative fault to the extent that Defendants argue Charleston is at fault, as an instruction is not supported by the evidence and Defendants have not shown they are entitled to such an instruction.*]

**Instruction 24.1-P**

Defendants raise the affirmative defense of comparative negligence. This means that Defendants claim that Charleston County School District was itself negligent, that the School District was a proximate cause of its own harms, and that its damages occurred as a result of its own negligence. Defendants must prove by a preponderance of the evidence that:

(1) Charleston County School District failed to act with ordinary care;

(2) Charleston County School District's failure to use ordinary care was a proximate cause of its harm;

(3) Charleston County School District's failure to use ordinary care caused it to incur damages.

A plaintiff's negligence does not automatically bar recovery unless such negligence exceeds that of the Defendants. When there is more than one defendant, the plaintiff's negligence, if any, shall be compared to the combined negligence of all defendants. A plaintiff in a negligence action where there is more than one defendant may recover damages if its negligence is not greater than the combined negligence of all defendants. If you find Charleston County School District was negligent, the amount of the its recovery shall be reduced in proportion to the amount of its negligence, if any.

You, the jury, must apportion fault between the Charleston County School District and the Defendants in this action. The School District may recover damages when its negligence, if any, is not greater than that of the Defendants. The School District's damages, however, may be reduced in proportion to the amount of its negligence, if any.

Charleston County School District has the burden of proving the negligence and fault, if any, of each Defendant. The Defendants have the burden of proving the negligence and fault, if any, of Charleston County School District and the degree of such.

In making this comparison, the degree of negligence attributable to a party should be measured by the conduct of a party as a whole. That is to say, once  fault has been established, it is then the jury's function to weigh their respective contributions to the result, which will, regardless of the nature of their acts or omissions, determine who made the larger contribution and to what extent it exceeds or is less than that of the other.

If you find that the harms were proximately caused by one or more Defendants' negligence, and not by negligence on the part of Charleston County School District, then the School District is entitled to recover the full amount of any damages you may find it has sustained as a result of the Defendants' negligence.

If you find the harms were proximately caused by both the negligence of the Defendants and Charleston County School District, then you must compare the percentages of that negligence. If the negligence of the School District is less than or equal to the combined negligence of the Defendants, then the School District is entitled to recover any damages which you may find it has sustained as a result of the harm after you have reduced its damages in proportion to the degree of the School District's own negligence. On the other hand, if the Defendants were not negligent, or if the combined negligence of the Defendants was less than the negligence of the Charleston County School District, then the School District is not entitled to recover any damages and you will find for the Defendants.

Please remember that if you find the School District was negligent, its negligence must have contributed proximately to its harm. If the negligence of the School District operated only remotely and not proximately to cause the harm, the School District is neither barred from recovery nor is its recovery reduced in any way.

You will express your determinations in the form of percentages. The percentages allocated between Charleston County School District and the Defendants must total 100%.

### Instruction 24.1-D

Under the doctrine of comparative negligence, a plaintiff's negligence does not automatically bar recovery unless such negligence exceeds that of the defendant. When there is more than one defendant, the plaintiff's negligence shall be compared to the combined negligence

of all defendants.  A plaintiff in a negligence action where there is more than one defendant may recover damages if its negligence is not greater than the combined negligence of all defendants. The amount of the plaintiff's recovery shall be reduced in proportion to the amount of its negligence, if any.

You, the jury, must apportion fault between the Charleston County School District and the Defendants in this action.  The School District may recover damages when its negligence is not greater than that of the Defendants.  The School District's damages, however, may be reduced in proportion to the amount of its negligence, if any.

One of the defenses asserted by the Defendants is comparative negligence.  The Defendants in essence say this: Even if the jury should find that we were at fault, Charleston County School District was more at fault than we were, and the fault of all of us combined and concurred to act as the proximate cause of the injury and, without which, the injury would not have happened.  In other words, it required the fault of each of us for the injury to have happened, but the Charleston County School District was more at fault than we were.

Charleston County School District has the burden of proving the negligence and fault, if any, of each Defendant.  The Defendants have the burden of proving the negligence and fault, if any, of Charleston County School District and the degree of such.

Where negligence has been established on the part of both the Defendants and Charleston County School District, then you must weigh or compare the respective contributions of each party to the occurrence.  You must determine whether Charleston County School District's negligence made a larger contribution than the Defendants' negligent Non-Protected Conduct.

In making this comparison, the degree of negligence attributable to a party should be measured by the conduct of a party as a whole.  That is to say, once it has been established that each has been at fault, it is then the jury's function to weigh their respective contributions to the result, which will, regardless of the nature of their acts or omissions, determine who made the larger contribution and to what extent it exceeds or is less than that of the other.

If you find that the occurrence was proximately caused by Negligent Non-Protected Conduct on the part of one or more Defendants and not by negligence on the part of Charleston County

90

School District, then the School District is entitled to recover the full amount of any damages you may find it has sustained as a result of the occurrence.

If you find the occurrence was proximately caused by both the negligence of Charleston County School District and Negligent Non-Protected Conduct of one or more Defendants, then you must compare the percentages of that negligence. If the negligence of the School District is less than or equal to the combined Negligent Non-Protected Conduct of the Defendants, then the School District is entitled to recover any damages which you may find it has sustained as a result of the occurrence after you have reduced its damages in proportion to the degree of the School District's own negligence. On the other hand, if the Defendants did not engage in Negligent Non-Protected Conduct or if the combined Negligent Non-Protected Conduct of the Defendants was less than the negligence of the Charleston County School District, then the School District is not entitled to recover any damages. If you find the School District's negligence to be greater than the combined Negligent Non-Protected Conduct of the Defendants against whom recovery is sought, then the School District shall not recover and you will find for the Defendants.

Comparative negligence, if proven by the Defendants, can have one of two possible effects. First, comparative negligence will totally defeat a recovery by the School District if the negligence of the School District was greater than that of the combined Negligent Non-Protected Conduct of the Defendants. Another way of saying this is to say that a School District can recover only when its negligence, if any, is equal to or less than the Negligent Non-Protected Conduct of the Defendants. In order to prevent a verdict in favor of a School District injured by the Negligent Non-Protected Conduct of a Defendant, the Defendants have the burden of proving by the greater weight or preponderance of the evidence that the School District was negligent and that the School District's negligence was greater than the Negligent Non-Protected Conduct of the Defendants.

The second possible effect of comparative negligence is that, if proven, it will reduce or partially defeat the School District's recovery. This applies when the School District's negligence is equal to or less than the combined Negligent Non-Protected Conduct of the Defendants. Such a reduction is made when the Defendants prove, by the preponderance or greater weight of the

evidence, that the plaintiff was negligent but that the plaintiff's negligence was equal to or less than the combined Negligent Non-Protected Conduct of the Defendants.

Please remember that the School District's negligence must have contributed proximately to its injury.  If the negligence of the School District operated only remotely and not proximately to cause the injury, the plaintiff is neither barred from recovery nor is its recovery reduced in any way. You will express your determinations in the form of percentages. The percentages allocated between Charleston County School District and the Defendants must total 100%.

If a Defendant did not engage in Negligent Non-Protected Conduct, or if such conduct did not proximately contribute to Charleston County School District's injuries, then the percentage of negligence attributed to that Defendant would be zero (0), and the 100% would be allocated among the remaining party or parties based on the greater weight of the evidence.

**PLAINTIFFS' SOURCE:** Anderson, S.C. Requests to Charge – Civil, 23-1; *see also Ross v. Paddy*, 340 S.C. 428, 532 S.E.2d 612 (Ct. App. 2000); *Creech v. South Carolina Wildlife & Marine Res. Dep't*, 328 S.C. 24, 491 S.E.2d 571 (1997).

**DEFENDANTS' SOURCE:** Anderson, South Carolina Requests to Charge – Civil, § 23-1 (rev. 2d ed. 2016); Anderson, South Carolina Requests to Charge – Civil, § 23-4 (rev. 2d ed. 2016).

DATE SUBMITTED: January 28, 2026

### 1.    Plaintiffs' Argument

**Instruction is Not Warranted.** Charleston objects to a jury instruction based on comparative fault, as there is no evidentiary support therefor, and as such Defendants have not demonstrated they are entitled to such an instruction. South Carolina law requires a clear evidentiary foundation requirement for all jury instructions. In *Clark v. Cantrell*, the South Carolina Supreme Court held that "when instructing the jury, the trial court is required to charge only principals of law that apply to the issues raised in the pleadings and developed by the evidence in support of those issues." 529 S.E.2d 528, 539 (2000). The court further emphasized that "the trial court is not required to instruct the jury on a principle of law that is irrelevant to the case as proved." *Id*. The South Carolina Court of Appeals recently reaffirmed this principle in a case specifically addressing comparative negligence instructions in *Mills v. South Carolina State Ports Authority*, holding that trial courts commit an abuse of discretion when their ruling "is based on an error of law or is not supported by the evidence." 865 S.E.2d 910, 914 (Ct. App. 2021) (quoting *Cole v. Raut*, 663 S.E.2d 30, 33 (2008).

Since comparative negligence is an affirmative defense, Defendants bear the burden of presenting evidence sufficient to establish all elements of negligence against the Charleston County School District, including duty, breach, causation, and damages. Indeed, the *Mills* Court concluded that defendants seeking comparative negligence instructions must present evidence to support an inference that the plaintiff was negligent, including evidence that the plaintiff breached a duty of care owed to the defendant. 865 S.E.2d 910, 916. When defendants fail to meet this evidentiary burden, the trial court properly excludes this instruction to prevent jury confusion. As the South Carolina Supreme Court explained in *Berberich v. Jack*, "a jury charge consisting of irrelevant and inapplicable principles may confuse the jury and constitutes reversible error where the jury's confusion affects the outcome of the trial." 709 S.E.2d 607, 611 (2011) (quoting *Cole* at 33). Not charging the jury with inapplicable principles protects the integrity of jury deliberations by ensuring that legal instructions correspond to actual factual dispute presented by the evidence. Moreover, if such an instruction is given, it must include the elements of negligence to prevent confusion between a determination of liability and fault apportionment and be streamlined to clearly convey the legal

93

concept. "[t]he substance of the law is what must be instructed to the jury, not any particular verbiage." *State v. Marin*, 783 S.E.2d 808, 812 (2016).

**Charleston's Language is Preferable.** As with other South Carolina pattern instructions, Charleston has endeavored to streamline the heavily repetitive, and sometimes antiquated language without changing the substance. The two changes Charleston made to the instruction were (1) to clearly set forth what Defendants must prove, Charleston has provided the elements that must be met to find Charleston's negligence was a proximate cause of its harm, and (2) to substitute "harm" for "injury," to better fit the facts of the case.

**Allocation of Fault if Comparative Negligence is Not Warranted.** Charleston maintains that Defendants do not have evidence to support a claim for comparative negligence. However, South Carolina suggests that a Defendant may seek to allocate fault under its modified joint-and-several liability scheme. If the Court determines that there is no basis to instruct on comparative fault, Charleston would consider, in the alternative, a modified instruction pursuant to S.C. Code § 15-38-15 at Defendants' request.

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence]; [Section 230].

## 2. Defendants' Argument

Plaintiff provides no authority for why this model instruction should not be given when Defendants are pursuing this affirmative defense. The evidentiary foundation for this defense will be laid at trial and is previewed in the summary judgment briefing. After the close of the evidence, Plaintiff can raise this objection, but Defendants preserve now their ability to seek this instruction. The Court can and should decide later whether to give this instruction after considering the evidence that Defendants present on this issue at trial.

For example, at trial, Defendants anticipate presenting evidence that Plaintiff's injuries were caused by Plaintiff's own decisions, e.g., funding priorities, staffing decisions, staff and teacher training (or lack thereof). Additionally, Defendants anticipate presenting evidence that Plaintiff itself, and its teachers and staff, promoted the use of Defendants' platforms to its students and families for educational and non-educational purposes, both in the classroom and outside the classroom. While Defendants dispute whether their platforms cause the injury Plaintiff alleges, Defendants anticipate arguing that if Plaintiff believed that Defendants' platforms were dangerous, the jury will have ample evidence to find that Plaintiff failed to exercise ordinary care, resulting in its injuries.

Defendants object to Plaintiff's proposed deletion of two paragraphs from the model instructions that explain that there are two possible effects of comparative negligence: totally barring the claim, or reducing damages. This language should be included to fully explain these diverging outcomes to the jury.

Defendants object to Plaintiff's removal of the paragraph explaining that if one Defendant is zero percent at fault, then 100% of the fault must be allocated to the remaining parties. That language is pulled from S.C. model instruction 23-4 and explains an important concept to the jury that would aid their ultimate allocation of responsibility.

Plaintiff's cited cases do not support its position. In *Mills*, the court found that it was not error to reject a comparative negligence instruction because the party seeking that instruction "failed to present evidence to support an inference [plaintiff] was negligent." 865 S.E.2d 910, 915

1    (S.C. Ct. App. 2021). That is not the case here, and in any event, Plaintiff can make that argument

2    after the close of evidence.

3         The Court should not instruct the jury that it is a Defendant's burden to establish that Plaintiff

4    owed a duty to a Defendant. Comparative negligence asks if a plaintiff's "own negligence is not

5    greater than that of the defendant." *Hurd v. Williamsburg Cnty.*, 611 S.E.2d 488, 492 (S.C. 2005).

6    Here, Plaintiff offers no explanation for how a breach of a duty it owes to Defendants could cause

7    injury to Plaintiff. No South Carolina case has interpreted the state's comparative negligence

8    jurisprudence in the same way that the Court of Appeals did in *Mills*, so this Court should not follow

9    *Mills* here. The proper analysis is whether Plaintiff's negligence contributed to its own injuries.

10   *See, e.g.*, *Bass v. Gopal, Inc.*, 680 S.E.2d 917, 922 (S.C. Ct. App. 2009), *aff'd,* 716 S.E.2d 910 (S.C.

11   2011) (comparing plaintiff's negligence in confronting an assailant against a hotel's possible

12   innkeeper negligence); *Berberich v. Jack*, 709 S.E.2d 607, 615 (S.C. 2011) (purpose of comparative

13   negligence is that "each party's relative fault in causing the *plaintiff's injury* will be given due

14   consideration" (emphasis added)); *Wilson v. Marshall*, 195 S.E.2d 610, 612 (S.C. 1973) (parties

15   have a "duty to exercise due care for one's own safety"). *Cf. Woods v. Rabon*, 368 S.E.2d 471, 473

16   (S.C. Ct. App. 1988) ("The defense of contributory negligence does not depend on any duty owed

17   by the injured party to the party sued. All that is necessary to establish the defense is to prove to

18   the satisfaction of the jury that the injured party did not in his own interest take reasonable care of

19   himself and contributed, by this want of care, to his own injury.").

20        Any duty running from Plaintiff to Defendants here is irrelevant because Defendants are

21   not asserting any counterclaims or injuries of their own. Defendants object to Plaintiff changing

22   "injury" to "harm." Plaintiff does not present any authority that supports deviating from the model

23   instruction.

24        Defendants object to Plaintiff using "negligence" instead of "Negligent Non-Protected

25   Conduct." Instructions to the jury related to conduct should include language that incorporates the

26   limitations on liability set forth in the Court's rulings about Section 230 and the First Amendment.

27   *See* SD Order at 14; PI Order at 5, 22; Defs.' Position on Section 230 Instr.

28

8.  **INSTRUCTION NO. 25: ASSUMPTION OF RISK**

[*Plaintiffs object to instructing the jury on assumption of the risk, as an instruction is not supported by the evidence and Defendants have not shown they are entitled to such an instruction. Defendants' proposal in green text; Charleston's proposal in blue text.*]

The Defendants raise assumption of risk as an affirmative defense.  If you find that Charleston County School District assumed the risk of its alleged injury, you cannot find for the School District.

There are four requirements to establishing assumption of risk:

(1) the plaintiff must have knowledge of the facts constituting the risk harmful condition;

(2) the plaintiff must know the risk could cause its alleged injury condition is harmful;

(3) the plaintiff must appreciate the nature and extent of the risk harm; and

(4) the plaintiff must voluntarily expose itself to the risk harm.

This is predicated on the situation of a defendant's acts alone creating the risk of harm and causing the injury damages, with the plaintiff voluntarily exposing itself to such an obvious risk with appreciation of the danger which resulted in the injury harm.  Assumption of risk may be implied from the plaintiff's conduct.

A plaintiff's conduct in assuming a risk can be compared with will not bar recovery unless its negligence exceeds the defendant's negligence. A plaintiff's conduct in assuming the risk will not bar recovery unless his negligence exceeds the defendant's negligence.  A plaintiff is not barred from recovery by the doctrine of assumption of risk unless the degree of fault arising therefrom is greater than the negligence of the defendant.  The main reason for having the doctrine of assumption of risk is not to determine fault, but to prevent a person who knowingly and voluntarily incurs a risk of injury harm from holding another person entity liable.

**PLAINTIFFS' SOURCE:** Anderson, S.C. Requests to Charge – Civil, 23.8 Comparative Negligence – Doctrine of Assumption of Risk.

**DEFENDANTS' SOURCE:** Anderson, South Carolina Requests to Charge – Civil, § 23-8 (rev. 2d ed. 2016); *Hurst v. E. Coast Hockey League, Inc.*, 637 S.E.2d 560, 562 (S.C. 2006).

DATE SUBMITTED: January 28, 2026

1            **1.**        **Plaintiffs' Argument**

2         **Instruction is Not Warranted.** Plaintiffs object to instructing the jury on assumption of the

3 risk, as such an instruction is neither supported by the evidence nor have Defendants demonstrated

4 they are entitled to such an instruction.

5         The South Carolina Supreme Court in *Davenport v. Cotton Hope Plantation Horizontal*

6 *Property Regime* held that "the absolute defense of assumption of risk is inconsistent with South

7 Carolina's comparative negligence system." 508 S.E.2d 565, 573 (1998). The *Davenport* Court

8 distinguished between three types of assumption of risk—express, primarily implied. and secondary

9 implied assumption of risk—determining that only secondary implied assumption of risk is a

10 defense to negligence. *Id*. at 570–71. "Express assumption of risk applies when the parties expressly

11 agree in advance, either in writing or orally, that the plaintiff will relieve the defendant of his or her

12 legal duty toward the plaintiff." *Id*. at 569. For this reason, an action for express assumption of risk

13 "sounds in contract, not tort and is based upon an express manifestation of consent." *Id*. at 570.

14 "Primary implied assumption of risk arises when the plaintiff impliedly assumes those risks that are

15 *inherent* in a particular activity." *Id*. (emphasis in original). Therefore, "[p]rimary implied

16 assumption of risk is not a true affirmative defense," as it does not focus on plaintiff's conduct in

17 assuming the risk, but "instead goes to the initial determination of whether the defendant's legal

18 duty encompassed the risk encountered by the plaintiff." *Id*. For this reason, the query under the

19 doctrine of implied assumption of risk goes to whether a duty of care exists which encompasses the

20 risk involved, *Hurst v. E. Coast Hockey League, Inc*., 637 S.E.2d 560, 562–63 (2006), rather than

21 an apportionment of fault under the doctrine of comparative negligence.

22         Secondary implied assumption of risk "arises when the plaintiff knowingly encounters a risk

23 created by the defendant's negligence" and operates as "a true defense because it is asserted only

24 after the plaintiff establishes a prima facie case of negligence against the defendant." *Id*. at 571. The

25 Court found this form of assumption of risk fundamentally at odds with comparative negligence

26 because it "may involve either reasonable or unreasonable conduct on the part of the plaintiff" yet

27 still result in complete barring recovery. *Id*. at 572–73. It therefore held that "a plaintiff is not barred

28

1    from recovery by the doctrine of assumption of risk unless the degree of fault arising therefore is

2    greater than the negligence of the defendant." *Id*. at 573–74.

3    As a threshold matter, Defendants have not put forth evidence that Charleston knowingly

4    encountered a risk created by their negligence which renders a jury instruction on assumption of

5    risk inapplicable. South Carolina courts have recognized that instructing juries on assumption of

6    risk can create harmful confusion when the defense does not properly apply. In *Cole v. Raut*, the

7    Supreme Court held that "[a] jury charge consisting of irrelevant and inapplicable principles may

8    confuse the jury and constitutes reversible error where the jury's confusion affects the outcome of

9    the trial." 663 S.E.2d 30, 33 (2008). Assumption of the risk requires that "the injured party must

10   have freely and voluntarily exposed himself to a known danger which he understood and

11   appreciated." *Id*. Due to a lack of evidence supporting a claim that Charleston knowingly assumed

12   the risk of the harm it suffered and the likely risk of jury confusion, Plaintiffs oppose a jury

13   instruction on assumption of the risk. However, if such an instruction is given, Charleston's

14   language is preferable and "harm" should be substituted for "injury" as it more closely aligns with

15   the characterization in the pleadings and evidence in this matter and, therefore, more accurately

16   conveys the basis for Charleston's claim. *Fairchild v. S.C. Dep't of Transp.*, S.E.2d 818, 822 (Ct.

17   App. 2009), aff'd, 727 S.E.2d 407 (2012) ("[J]ury instructions should be confined to the issues made

18   by the pleadings and supported by the evidence."); *Carolina Home Builders, Inc. v. Armstrong*

19   *Furnace Co.*, 191 S.E.2d 774, 780 (1972) ("[I]nstructions should be confined to issues made by the

20   pleadings and evidence, and an instruction which tenders an issue not so raised is error.").

21

22

23

24

25

26

27

28

1

### 2.     Defendants' Argument

Charleston County School District's continued use of some of Defendants' platforms (Facebook, Instagram, and YouTube) before and after filing its complaint warrants this instruction. To this day, Plaintiff uses these platforms to communicate with parents and students, creates content specifically designed for students to view, and even allows and encourages the use of YouTube as an educational tool.

Defendants object to Plaintiff changing "injury" to "harm."  Plaintiff does not present any authority that supports deviating from the model instruction.

Defendants object to Plaintiff using "negligence" instead of "Negligent Non-Protected Conduct."  Instructions to the jury related to conduct should include language that incorporates the limitations on liability set forth in the Court's rulings about Section 230 and the First Amendment. *See* SD Order at 14; PI Order at 5, 22; Defs.' Position on Section 230 Instr.

### 9.  INSTRUCTION NO. 26: DAMAGES – NOMINAL DAMAGES

[*Defendants' proposal in green text; Charleston's proposal in blue text.*]

The Defendants have denied Charleston County School District sustained any real or substantial harm as a result of Defendants' conduct. If you find a Defendant's Negligent Non-Protected Conduct one or more Defendants' negligence caused the School District some damage, but the evidence does not convince you the School District sustained substantial damages as a proximate result of that Negligent Non-Protected Conduct negligence, you could find nominal damages in favor of the School District.

A small sum, known as nominal damages, may be awarded when the plaintiff has proved no substantial loss or injury harm but when the law recognizes the violation or invasion of a legal right or the breach of a duty, or when the plaintiff's evidence shows the existence but not the amount of an actual injury harm. Nominal damages are a trivial or trifling sum awarded to a plaintiff in an action where there is not substantial loss or injury harm to be compensated, but still the law recognizes a technical invasion of the plaintiff's rights or a breach of the defendant's duty. Nominal damages are awarded for the vindication of a right where no real loss or injury harm can be proved.

If no actual damages capable of pecuniary estimation have been sustained, but the legal rights of Charleston County School District have been thereby violated through a Defendant's Negligent Non-Protected Conduct one or more Defendants' negligence, you can award only nominal damages-such as one dollar, one cent, or other inconsiderable amount-to vindicate the School District's legal right.

**PLAINTIFFS' SOURCE:** Anderson, S.C. Requests to Charge – Civil, 13-1; *Stevens v. Allen*, 342 S.C. 47, 53 n.5, 536 S.E.2d 663, 665 n.5 (2000); *Stephens v. Draffin*, 327 S.C. 1, 488 S.E.2d 307 (1997).

**DEFENDANTS' SOURCE:** Anderson, South Carolina Requests to Charge – Civil, § 13-1 (rev. 2d ed. 2016).

1  DATE SUBMITTED: January 28, 2026
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 1.    Plaintiffs' Argument

Charleston's proposed language follows South Carolina's pattern instruction on nominal damages. *See* Anderson, S.C. Requests to Charge – Civil 13-1. Nominal damages are available in cases where a right is violated, such as the case here, irrespective of whether general damages are proven. *J & W Corp. of Greenwood v. Broad Creek Marina of Hilton Head, LLC*, S.E.2d 328, 343 (Ct. App. 2023). The proposed instruction is therefore necessary to explain nominal damages to the jury. Charleston's only edits are to substitute "harm" for "injury" to more accurately align with the facts and claims in this case, to clarify that the jury may award nominal damages in cases where one or more Defendants are found to be negligent, and to remove the word "trifling" which is redundant of "trivial" but less commonly understood.

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence]; [Section 230].

1

2.    **Defendants' Argument**

2

Defendants object to Plaintiff changing "injury" to "harm."  Plaintiff does not present any

3

authority that supports deviating from the model instruction.

4

Defendants object to Plaintiff using "negligence" instead of "Negligent Non-Protected

5

Conduct."  Instructions to the jury related to conduct should include language that incorporates the

6

limitations on liability set forth in the Court's rulings about Section 230 and the First Amendment.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PARTIES' JOINT PROPOSED JURY INSTRUCTIONS (CHARLESTON COUNTY SCHOOL DISTRICT)
4:22-md-03047-YGR

## 10. INSTRUCTION NO. 27: DAMAGES – ACTUAL DAMAGES

[*Defendants' proposal in* green text; *Charleston's proposal in* blue text.]

If you find for Charleston County School District on the issue of negligence, then you must consider the question of damages. It will be your duty to determine what, if any, award will fairly compensate Charleston County School District.

Actual damages are properly called compensatory damages, meaning to compensate, to make the injured party whole, to put it in the same position it was in prior to the damages received insofar as this is monetarily possible. In other words, actual or compensatory damages include compensation for all injuries which are naturally the proximate result of the alleged negligent Non-Protected Conduct wrongful conduct of a Defendant.

In a negligence case, the plaintiff is entitled to past, present, and future damages. Actual damages are properly called compensatory damages, meaning to compensate, to make the harmed party whole. In other words, actual or compensatory damages include compensation for all damages which are naturally the proximate result of the alleged wrongful conduct of the Defendants.

Actual damages are awarded to a litigant in compensation for its actual loss or injury harm. Actual damages are such as will compensate the party for injuries harms suffered or losses sustained. Actual damages are to compensate for loss or harm sustained. They are such damages as will simply make good or replace the loss caused by the Negligent Non-Protected Conduct or injury. Actual damages are damages in satisfaction of, or in recompense for, loss or injury sustained. The goal is to restore the injured party harmed entity, as nearly as possible through the payment of money, to the same position it was in before the wrongful injury harm occurred.

The basic measure of actual damages is the amount needed to compensate Charleston County School District for the losses proximately caused by a Defendant's wrong so that the School District will be in the same position it would have been in if there had been no wrongful injury Defendants' wrongful conduct. Actual damages include compensation for all injuries harms which are naturally the proximate result of the alleged wrongful conduct of a Defendant Defendants.

The existence, causation, or amount of damages cannot be left to conjecture, guesswork or speculation. However, proof of the amount of loss with absolute or mathematical certainty is not

106

required, and you may rely on reasonable estimates where necessary. Damages must be proved with a reasonable degree of certainty. This includes the recovery for expected future damages, provided it establishes that the future damages are reasonably certain to occur, resulting from the consequences of the Defendants' negligence or negligent conduct. The evidence presented by Charleston County School District must enable you, the jury, to determine what amount is fair, just and reasonable.

Charleston County School District bears the burden of proving by the preponderance of the evidence that it is entitled to compensatory damages.

**PLAINTIFFS' SOURCE:** Anderson, S.C. Requests to Charge – Civil, 13-2; *see also Clark v. Cantrell*, 339 S.C. 369, 529 S.E.2d 528 (2000); *Baughman v. American Tel. and Tel. Co.*, 306 S.C. 101, 410 S.E.2d 537 (1991); *Barnwell v. Barber-Colman Co.*, 301 S.C. 534, 393 S.E.2d 162 (1989); *Whisenant v. James Island Corp.*, 277 S.C. 10, 281 S.E.2d 794 (1981); *Pearson v. Bridges*, 344 S.C. 366, 544 S.E.2d 617 (2001); *Haltiwanger v. Barr*, 258 S.C. 27, 186 S.E.2d 819 (1972).

**DEFENDANTS' SOURCE:** Anderson, South Carolina Requests to Charge – Civil, § 13-2 (rev. 2d ed. 2016); Anderson, South Carolina Requests to Charge – Civil, § 13-3 (rev. 2d ed. 2016); Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, 2017 Edition (last updated Mar. 2025), Instruction 5.1 and 5.2.

DATE SUBMITTED: January 28, 2026

1

**1.    Plaintiffs' Argument**

2    Charleston's instruction largely follows South Carolina's pattern instruction on Actual

3 Damages, with minor edits to improve readability and reduce repetition. The substantive changes

4 Charleston has made include (1) adding language to clarify that it is seeking future damages, which

5 are permissible under South Carolina law, *see infra* [Future Damages], and (2) changing "injury" to

6 "harm" and "person" to "entity" to avoid an overly legalistic phrasing which may confuse the jury

7 about what "injury" a school district may sustain.

8    **The Court Should Not Instruct the Jury on a Discrete Damages Figure, Whether**

9 **"Zero" or Otherwise.** Charleston objects to Defendants' proposed sentence that "A damages award

10 of zero is permissible." The instruction is unnecessary, as other language establishes that damages

11 must be supported by evidence if given at all and places the burden on Charleston. Additionally, the

12 instruction may be wrong, depending on the context. For example, if the jury finds that Defendants

13 were negligent, and that they caused Charleston to divert and/or expend resources, and that

14 Charleston reasonably established the amount of damages, an award of zero would be contrary to

15 the jury's findings. In other words, the instruction that an award of zero is permissible may give the

16 jury the impression that it can award damages in an amount unsupported by the evidence.

17    **Temporal Scope of Damages.** South Carolina law recognizes a comprehensive temporal

18 scope of damages in negligence cases, including past expenses, present and ongoing losses, as well

19 as future expenses. In *Green v McGee*, the Supreme Court explained that "actual damages are

20 awarded by a jury in a personal injury case to compensate a plaintiff for losses such as reasonably

21 incurred medical expenses, future medical expenses, pain and suffering, loss of enjoyment of life,

22 permanent impairment, disfigurement, lost wages, lost earning capacity, etc."

23 919 S.E.2d 903, 907 (2025).

24    **Reliance on Reasonable Estimates.** The Defendants assert that *Pearson v. Bridges*, 544

25 S.E.2d 617 (2001) and *Haltiwanger v. Barr*, 186 S.E.2d 819 (1972), hold that it is the duty of juries

26 to estimate damages. They do not and that is not the law in South Carolina. In *Pearson*, the Supreme

27 Court of South Carolina held that evidence of three different medical expense scenarios was

28 admissible and that whether the expenses were reasonably certain, entitling the plaintiff to an award

108

of future damages, was a question for the jury. 544 S.E.2d at 620. The *Haltiwanger* Court similarly held that future damages may be recovered in an action for injury action so long as the damages are reasonably certain to result in the future from the injury. 186 S.E.2d at 821. In arriving at this conclusion, the *Haltiwanger* Court was mindful of "the fact that it became the duty of the jury to estimate…the future damages which are reasonably certain to accrue" to the plaintiff. *Id*. In *Haltiwanger*, an economics professor provided a calculation for future losses due to the plaintiff's impairment. *Id*. Estimating which future damages are a likely result of Defendants' conduct is different from estimating damage amounts. When properly admitted, the jury may rely on reasonable estimates when considering the likelihood of future damages, just as the jury in *Pearson* considered evidence of various medical expense scenarios and the jury in *Haltiwanger* considered a calculation of projected losses.

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence]; [Section 230].

## 2.    Defendants' Argument

Defendants object to Plaintiff proposing adding the following language without support: "In a negligence case, the plaintiff is entitled to past, present, and future damages, including out-of-pocket expenses." Plaintiff provides no authority in support of that position, and it inappropriately suggests to the jury that Plaintiff does not need to prove that these damages were caused by Defendants' conduct. Defendants object to instructing the jury on future damages at all because the only future damages that Charleston seeks—payment for the Hoover "strategic plan"—are not proper future damages. *See* ECF No. 2293 at 35–39; ECF No. 2510 at 16–18. There is a separate instruction on future damages that explains the concept of future damages.

Defendants object to Plaintiff proposing, without support, cutting language from the model instruction that is black letter law in South Carolina: the "basic measure of actual damages is the amount needed to compensate the plaintiff for the losses proximately caused by the defendant's wrong so that the plaintiff will be in the same position he would have been in if there had been no wrongful injury." *Austin v. Specialty Transp. Servs., Inc.*, 594 S.E.2d 867, 874 (S.C. Ct. App. 2004). The instruction should include that language.

Plaintiff's modification of the model instruction to tell the jury that "you may rely on reasonable estimates where necessary" is improper and unsupported. Both sections 13-2 and 13-10 provide the language regarding conjecture, guesswork, or speculation, and neither include Plaintiff's proposed language. Neither of the two cases Plaintiff cites provide support for modifying the pattern instruction in this way. *See Pearson v. Bridges*, 544 S.E.2d 617, 620 (S.C. 2001); *Haltiwanger v. Barr*, 186 S.E.2d 819, 820–21 (S.C. 1972).

Defendants object to Plaintiff changing "injury" to "harm." Plaintiff does not present any authority that supports deviating from the model instruction.

Defendants object to Plaintiff using "negligence" instead of "Negligent Non-Protected Conduct." Instructions to the jury related to conduct should include language that incorporates the limitations on liability set forth in the Court's rulings about Section 230 and the First Amendment. *See* SD Order at 14; PI Order at 5, 22; Defs.' Position on Section 230 Instr.

## 11. INSTRUCTION NO. 28: DAMAGES – ELEMENTS OF ACTUAL DAMAGES IN NEGLIGENCE CASES

[*Defendants' proposal in green text; Charleston's proposal in blue text.*]

When one entity is injured harmed by the negligent acts of another, the injured harmed entity is entitled to be fully compensated for all injuries harms directly or proximately resulting from any negligent acts or omissions by the defendants.

In determining the amount of compensation for injuries harms suffered by Charleston County School District as a result of the Defendant's Negligent Non-Protected Conduct Defendants' negligence, it is proper for you to consider and award damages for out-of-pocket expenses. However, the School District's damages are not limited to its out-of-pocket expenses. Charleston County School District can be compensated for future damages, provided they are reasonably certain to occur. If you find the plaintiff is entitled to a verdict for actual damages, your verdict should include an amount to cover any damages that the evidence shows will be reasonably certain to occur in the future. Future damages and the amount of loss need not be proved to mathematical certainty and often must be approximated.

Charleston County School District bears the burden of proving these elements by the preponderance of the evidence.

**PLAINTIFFS' SOURCE:** Anderson, S.C. Requests to Charge – Civil, 13-3; *see also Bates v. Merritt Seafood, Inc.*, 663 F. Supp. 915 (D.S.C. 1987); *McNeill v. United States*, 519 F. Supp. 283 (D.S.C. 1981); *Baldowski v. United States*, 111 F. Supp. 653 (D.S.C. 1953); *Pearson v. Bridges*, 344 S.C. 366, 544 S.E.2d 617 (2001); *Haltiwanger v. Barr*, 258 S.C. 27, 186 S.E.2d 819 (1972).

**DEFENDANTS' SOURCE:** Anderson, South Carolina Requests to Charge – Civil, § 13-3 (rev. 2d ed. 2016).

DATE SUBMITTED: January 28, 2026

1          **1.      Plaintiffs' Argument**

2          As in other instructions, Charleston has changed "injury" to "harm" and "person" to "entity"

3  as they are more representative of the claims and parties, and to avoid an overly legalistic phrasing

4  which has the potential to confuse the jury about what "injury" a school district may sustain.

5          **Revision to Clarify "Out-of-Pocket Expenses"** Charleston agrees to include the pattern

6  language that damages may include "out-of-pocket expenses" but add clarifying language that

7  damages are not limited to "out-of-pocket expenses." Charleston includes language about the

8  requirement that future damages be non-speculative and reasonably certain here, as such instruction

9  is more thematically linked to the types of damages that the jury can consider awarding. *See infra*

10 [Future Damages].

11         **Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra*

12 [Negligence]; [Section 230].

### 2.    Defendants' Argument

Defendants object to Plaintiff's additions to the second paragraph, which are not contained in the model instruction.  Defendants object to instructing the jury on future damages at all because the only future damages that Charleston seeks—payment for the Hoover "strategic plan"—are not proper future damages.  *See* ECF No. 2293 at 35–39; ECF No. 2510 at 16–18.  In any event, even if an instruction on future damages is given over Defendants' objection, adding reference to future damages here is unnecessary.  If the Court decides such an instruction is proper, there will be a separate instruction on future damages.  *See* Instruction No. 32.

Defendants further object to Plaintiff's additional language because it misstates the standard for future damages.  The standard under South Carolina law is that a plaintiff can receive potential future damages based on an already sustained injury.  *E.g.*, *Wilder v. Blue Ribbon Taxicab Corp.*, 719 S.E.2d 703, 708 (S.C. Ct. App. 2011) (per curiam) ("Future damages are generally recoverable in personal injury actions as long as the damages are reasonably certain to result in the future from the injury.").  Plaintiff seeks the Hoover Plan as "future damages," although it is not compensation for past injuries.

Defendants object to Plaintiff changing "injury" to "harm."  Plaintiff does not present any authority that supports deviating from the model instruction.

Defendants object to Plaintiff using "negligence" instead of "Negligent Non-Protected Conduct."  Instructions to the jury related to conduct should include language that incorporates the limitations on liability set forth in the Court's rulings about Section 230 and the First Amendment.  *See* SD Order at 14; PI Order at 5, 22; Defs.' Position on Section 230 Instr.

## 12. INSTRUCTION NO. 29: DAMAGES – PUNITIVE DAMAGES

[*Defendants object to inclusion of this instruction. Defendants' proposal in* green text*; Charleston's proposal in* blue text.]

In this case, Charleston County School District seeks punitive damages in addition to actual damages. Punitive damages, also known as exemplary damages, are imposed as punishment, and are allowed in the interest of society and as a means to deter the wrongdoer and others from committing similar wrongdoing in the future.  They are not intended to compensate. Rather, punitive damages are allowed in the interest of society, in the nature of punishment and as a means to deter the wrongdoer and others from committing similar wrongdoing in the future. Moreover, they serve to vindicate a private right by requiring the wrongdoer to pay money to the injured harmed party.

Punitive damages serve at least three important purposes: punishment of the defendant's reckless, willful, wanton, or malicious conduct; deterrence of similar future conduct by the defendant or others; and compensation for the reckless or willful invasion of the plaintiff's private rights. The paramount purpose for awarding punitive damages is not to compensate the plaintiff, but to punish and set an example for others.

What would justify an award of punitive damages? As you consider the issue of punitive damages, the highest burden of proof known to the civil law is applicable. The law provides:

In any civil action where punitive damages are claimed, the plaintiff has the burden of proving such damages by clear and convincing evidence.

Punitive damages can only be awarded where the plaintiff proves by clear and convincing evidence the defendant's actions were willful, wanton, malicious, or in reckless disregard of the plaintiff's rights. A conscious failure to exercise due care constitutes willfulness. It is the present consciousness of wrongdoing that justifies the assessment of punitive damages against the wrongdoer. Punitive damages will be allowed even when the defendant does not realize it is invading the plaintiff's rights so long as the act is committed in such a manner that a person of ordinary prudence would conclude it was done in reckless disregard of the rights of another. Charleston County School District cannot recover punitive damages simply based on negligent conduct.

To recover punitive damages, Charleston County School District must prove by clear and convincing evidence that a particular Defendant's actions were willful, wanton, or reckless. The words recklessness, willfulness and wantonness are synonymous. The terms are used to describe a conscious failure to exercise and observe reasonable or due care.

Recklessness is distinguished from negligence. Negligence is the failure to use due care. Negligence is carelessness. Negligence is failure by omission or commission to exercise due care as a person of ordinary reason and prudence would exercise in the same circumstances.

Recklessness is a higher degree of culpability and responsibility. Recklessness signifies a conscious failure to exercise due care. Recklessness is a conscious indifference to the rights of the plaintiff, or a reckless disregard of the rights of the plaintiff. Recklessness is an awareness of wrongful conduct and a continuation to act regardless of consequences.

The test for determining reckless, willful or wanton conduct is whether it has been committed in such a manner and under such circumstances that a person of ordinary reason or prudence would have been conscious of it as an invasion of the rights of the injured harmed party.

Before you can award punitive damages, you must first find Charleston County School District is entitled to actual or nominal damages. There must be an award of actual or nominal damages for a verdict of punitive damages to be supported. This rule is premised on the fact that liability must be established before a plaintiff can seek punitive damages. Therefore, if you do not award actual or nominal damages, then you cannot award punitive damages.

There is no formula or standard that can be used as a measure for assessing punitive damages. However, factors relevant to your consideration of punitive damages are:

    (1)    the character of the Defendant's acts;

    (2)    the nature and extent of the injury harm to plaintiff which the Defendant caused or intended to cause;

    (3)    the Defendant's degree of culpability;

    (4)    the punishment that should be imposed;

    (5)    duration of the conduct;

    (6)    the Defendant's awareness or concealment;

115

(7)     the existence of similar past conduct;

(8)     likelihood the award will deter the Defendant or others from like conduct;

(9)     whether the award is reasonably related to the injury harm likely to result from such conduct; and

(10)     the Defendant's wealth or ability to pay.

The financial condition of the Defendant is a factor you should consider in awarding punitive damages. However, there is no requirement that the Defendant be a company of means before you are justified in awarding punitive damages. While the wealth of a Defendant is a relevant factor in assessing punitive damages, it is not necessarily controlling. In other words, the financial worth of a Defendant is a fact properly to be considered by you in determining the amount to be awarded as punitive damages, but evidence of net worth is not a prerequisite to a punitive damage award.

When under proper allegations a plaintiff proves, by clear and convincing evidence, a willful, wanton, reckless, or malicious violation of its rights, it is not only the right but the duty of the jury to award punitive damages. Accordingly, if you should find that Charleston County School District is entitled to recover punitive damages in addition to actual damages, it would be your duty to include such damages in your verdict and award such an amount as you may deem reasonable and proper in light of the facts and circumstances.

**PLAINTIFFS' SOURCE:** Anderson, S.C. Requests to Charge – Civil, 13.21

**DEFENDANTS' SOURCE:** Anderson, South Carolina Requests to Charge – Civil, § 13-21 (rev. 2d ed. 2016).

DATE SUBMITTED: January 28, 2026

PARTIES' JOINT PROPOSED JURY INSTRUCTIONS (CHARLESTON COUNTY SCHOOL DISTRICT)
4:22-md-03047-YGR

### 1. Plaintiffs' Argument

Charleston's revisions to this instruction are minor, focused on substituting "harm" for "injury" and otherwise reducing repetition or improving readability.

**Instruction is Warranted.** Charleston's proposed instruction on punitive damages is premised on South Carolina's statutory provision providing specific guidance in negligence cases. S.C. Code § 15-32-520(D) ("Punitive damages may be awarded only if the plaintiff proves by clear and convincing evidence that his harm was the result of the defendant's willful, wanton, or reckless conduct."). The clear and convincing evidence standard, codified in S.C. Code § 15-33-135, establishes that "[i]n any civil action where punitive damages are claimed, the plaintiff has the burden of proving such damages by clear and convincing evidence." This heightened burden of proof must be properly communicated to the jury through appropriate instructions. The South Carolina Supreme Court clarified the trial court's role in making threshold determinations in *Gurwood v. Servs. Grp*., holding that "the trial court does not decide whether the evidence is clear and convincing, but only whether the jury could reasonably find that it is." 914 S.E.2d 149, 155 n.3 (2025).

In *S.C. Farm Bureau Mut. Ins. Co. v. Love Chevrolet, Inc.*, the South Carolina Supreme Court held that "trial judges in this state have long been required, as a threshold matter, to assess the culpability of a defendant's conduct to determine whether punitive damages are available in a given case (i.e. whether the issue should be submitted to the jury)" 478 S.E.2d 57, 58 (1996). The court must first determine whether the defendant's conduct rises to the level of culpability, warranting a punitive damages award, and if not, the issue may not be submitted to the jury. *Id*. at 59. However, "[i]f so, the jury should be adequately instructed to assess the appropriate amount of damages." *Id*. This language creates an affirmative duty to provide proper jury instructions once the threshold is met, rather than leaving the matter to the trial court's discretion.

South Carolina courts apply a liberal standard for determining when punitive damages issues should be submitted to the jury. In *Abel v. Lack's Beach Serv*., the Court of Appeals stated that "the issue of punitive damages must be submitted to the jury if more than one reasonable inference can be drawn from the evidence as to whether the defendant's behavior was reckless, willful, or

117

wanton." *Abel v. Lack's Beach Serv.*, 920 S.E.2d 283, 301 (Ct. App. 2025), *reh'g denied* (Sept. 22, 2025) (quoting *Welch v. Epstein*, 536 S.E.2d 408, 419 (Ct. App. 2000).

South Carolina courts have also established specific requirements for punitive damages jury instructions. In *Hollis v. Stonington Dev., LLC*, the Court of Appeals noted that proper instructions must explain that "[p]unitive damages can only be awarded when the Plaintiff proves by clear and convincing evidence the Defendant's actions were willful, wanton, malicious, or in reckless disregard of the Plaintiff's rights." 714 S.E.2d 904, 910 (Ct. App. 2011). The instructions must adequately explain that plaintiffs cannot be awarded punitive damages unless they meet the applicable burden of proof. *Id*. at 911. Charleston's proposed jury instruction on punitive damages meets this requirement.

### 2.     Defendants' Argument

**Ordering**: If given, this instruction should come after all other damages instructions.

Defendants object to instructing the jury on punitive damages.  Plaintiff has not met its burden to show by clear and convincing evidence that a particular Defendant's actions were willful, wanton, or reckless.  The Court will function as a gatekeeper on this issue and evaluate whether this issue should be given to the jury.  Defendants also reserve all rights to a bifurcated trial in which the punitive damages stage follows separately from a proceeding on the merits, assuming a finding of liability.

If an instruction on punitive damages is given over Defendants' objection, Defendants object to Plaintiff's change of "injury" to "harm" in this instruction.

Defendants object to Plaintiff's removal of language instructing the jury that punitive damages in South Carolina are not meant to compensate a plaintiff.  That is black letter law in South Carolina, and the jury should be instructed on it.  *See Austin*, 594 S.E.2d at 874 (explaining that actual damages are used to compensate a plaintiff but punitive damages "also known as exemplary damages, are imposed as punishment[,]" and "they serve to vindicate a private right by requiring the wrongdoer to pay money to the injured party").

Defendants object to the introduction of the word "simply" in the sixth paragraph.  It is important for the jury to understand that negligent conduct does not warrant awarding punitive damages.  Plaintiff's instruction incorrectly suggests to the jury that it can consider mere negligence in deciding whether to award punitive damages.

Defendants object to Plaintiff changing "injury" to "harm."  Plaintiff does not present any authority that supports deviating from the model instruction.

Defendants object to Plaintiff using "negligence" instead of "Negligent Non-Protected Conduct."  Instructions to the jury related to conduct should include language that incorporates the limitations on liability set forth in the Court's rulings about Section 230 and the First Amendment. *See* SD Order at 14; PI Order at 5, 22; Defs.' Position on Section 230 Instr.

### 13. INSTRUCTION NO. 30: BURDEN OF PROOF – CLEAR AND CONVINCING EVIDENCE

[*Defendants object to instructing the jury on Punitive Damages and, therefore, object to this instruction which sets out the corresponding burden of proof.  However, if a Punitive Damages instruction is given, Defendants propose the below language for the corresponding burden of proof instruction. Defendants' proposal in green text.*]

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

**PLAINTIFF'S AUTHORITY:**

**DEFENDANTS' AUTHORITY:**  Ninth Cir. Model Instructions, Instruction 1.7.

DATE SUBMITTED: January 28, 2026

### 14. INSTRUCTION NO. 31: DAMAGES – PRE-EXISTING CONDITION

[*Defendants object to the inclusion of this instruction.  Charleston's proposal in blue text.*]

If a person or entity is more vulnerable or susceptible to harm because of a pre-existing condition or weakness, a negligent Defendant is still responsible for the harm it caused or allowed to happen. A negligent Defendant must take its plaintiff as it finds it, whether the plaintiff, in this case Charleston County School District, be in perfect condition or in poor condition, or somewhere in between.

An harmed entity can recover all damages caused by a defendant's negligence. When a plaintiff's pre-existing condition is aggravated or activated by a subsequent act, a defendant is liable to the extent that its negligence proximately and naturally aggravated or activated the plaintiff's pre-existing weakness.

If you find that the School District was harmed as a result of the Defendants' negligence so that it is entitled to recover for said harms, the fact that it had a pre-existing defect would not defeat its recovery. It is the law that one who negligently inflicts harm on another is responsible for all ill effects which, considering the condition in which the plaintiff was in when it was harmed, naturally and necessarily follow such harm. For this reason, a defendant is not relieved of liability if the harm would not have resulted were the plaintiff not compromised by pre-existing conditions. In other words, if the presence of an existing condition or weakness aggravates and prolongs the harm and correspondingly increases the damages, such increased or added damages may be recovered.


**PLAINTIFFS' SOURCE:** Anderson, S.C. Requests to Charge – Civil, 13.3.


**DEFENDANTS' SOURCE:** *Watson v. Wilkinson Trucking Co.*, 136 S.E.2d 286, 291 (S.C. 1964); *Burnett v. Fam. Kingdom, Inc.*, 691 S.E.2d 170, 175 (S.C. Ct. App. 2010).


DATE SUBMITTED: January 28, 2026

1

### 1.     Plaintiffs' Argument

**Ordering.** This instruction should follow precede the affirmative defenses, if any such instructions are given. The concept is not limited to a measure of damages, but given Defendants' alternative causation theories, may help the jury determine whether Defendants' conduct was a proximate cause of Charleston's injuries.

**Instruction is Warranted.** Charleston's proposed instruction on pre-existing conditions is necessary to ensure the jury property applies the eggshell skull principle and understands that defendants remain fully liable for all proximately caused injuries, including aggravation of pre-existing conditions. South Carolina follows the well-established eggshell skull principle, which holds defendants liable for the full extent of injuries proximately caused by their negligence, regardless of whether the plaintiff had pre-existing conditions that made them more susceptible to injury. *See Watson v. Wilkinson Trucking Co.*, 136 S.E.2d 286 (1964). Accordingly, South Carolina courts recognize that injured persons are entitled to recover full compensation for all damages proximately resulting from a defendant's negligent acts, even when pre-exiting conditions are involved. *Id.* at 291 (citing 15 Am.Jr., Damages, Section 80 and 81). In *Watson v. Wilkinson Trucking Co.*, the Supreme Court held that, "[t]he plaintiff was entitled to recover all damages proximately resulting from the negligent acts of the defendants, including the aggravation of his pre-existing condition." *Id.* (affirming an award of substantial damages for a plaintiff who suffered severe aggravation of a pre-existing hip condition and a ruptured disc, emphasizing that defendants take their victims as they find them).

Pre-existing condition jury instructions are most critical when there is evidence, as here, that the defendant's conduct may have aggravated or exacerbated a plaintiff's pre-existing condition. The instruction is particularly important when the defense argues that the plaintiff's injuries were caused by pre-existing conditions rather than the defendant's negligence, or when the defense attempts to reduce damages based on the plaintiff's pre-existing vulnerabilities. South Carolina courts apply established standards for determining when trial courts must give requested jury instructions. The fundamental rule is that trial courts commit reversible error when they fail to give a requested jury charge on an issue raised by the evidence. In *State v. Harrison*, the court held that

122

1    the "trial court commits reversible error if it fails to give a requested charge on an issue raised by

2    the evidence." 539 S.E.2d 71, 75 (S.C. Ct. App. 2000).

3         **Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra*

4    [Negligence]; [Section 230].

1          ## 2.     Defendants' Argument

2          Defendants object to any instruction on preexisting injuries.  The preexisting injury doctrine

3   has no application to this case, and Plaintiff tellingly has no case law to support giving such an

4   instruction in a case involving alleged financial injuries to a plaintiff that is a public entity.

5   Plaintiff's own authorities demonstrate that the rule applies only to pre-existing *physical* injuries.

6   *E.g.*, *Watson v. Wilkinson Trucking Co.*, 136 S.E.2d 286, 291 (S.C. 1964) (in a case concerning

7   damages incurred after a trucking accident, the Court held that "plaintiff was entitled to recover all

8   *damages* proximately resulting from the negligent acts of the defendant, including the aggravation

9   of his pre-existing condition" (emphasis added)); *Burnett v. Fam. Kingdom, Inc.*, 691 S.E.2d 170,

10  175 (S.C. Ct. App. 2010) (applying rule in personal injury case).  Plaintiff has no evidence that any

11  condition *of the School District* was made worse by the actionable features of Defendants'

12  platforms, nor does it even make sense to speak in those terms.  This is an instruction about the

13  condition of the *plaintiff* itself, not the condition of third-party students, so it is inappropriate here.

14         Plaintiff offers no support for the assertion that the preexisting injury rule "is not limited to

15  a measure of damages." It would be error to instruct the jury on this issue without support.

16         Defendants object to Plaintiff changing "injury" to "harm."  Plaintiff does not present any

17  authority that supports deviating from the model instruction.

18         Defendants object to Plaintiff using "negligence" instead of "Negligent Non-Protected

19  Conduct."  Instructions to the jury related to conduct should include language that incorporates the

20  limitations on liability set forth in the Court's rulings about Section 230 and the First Amendment.

21  *See* SD Order at 14; PI Order at 5, 22; Defs.' Position on Section 230 Instr.

22

23

24

25

26

27

28

### 15. INSTRUCTION NO. 32: DAMAGES – FUTURE DAMAGES

[*Defendants object to inclusion of this instruction. Defendants' proposal in green text; Charleston's proposal in blue text.*]

A plaintiff cannot recover conjectural or speculative damages. However, if you find the plaintiff is entitled to a verdict for actual damages, your verdict should include an amount to cover any damages that result from the School District's existing injury harm and any harms that the evidence shows will be reasonably certain to occur in the future. Future damages need not be proved to a mathematical certainty and often must be approximated. These future damages must be the result of the defendant's Negligent Non-Protected Conduct Defendants' negligent conduct. Any future damages that you award must be reduced to their present-day value.

**PLAINTIFFS' SOURCE:** Anderson, S.C. Requests to Charge – Civil, 13-11

**DEFENDANTS' SOURCE:** *Wilder v. Blue Ribbon Taxicab Corp.*, 719 S.E.2d 703, 708 (S.C. Ct. App. 2011).

DATE SUBMITTED: January 28, 2026

1          1.       **Plaintiffs' Argument**

2          **Future Damages Instruction is Warranted.** Charleston's proposed jury instruction on

3    future damages is necessary to ensure the jury understands and can apply the correct standard of

4    proof required under South Carolina law. "Whether future damages are 'reasonably certain' to occur

5    is the standard of proof for future damages[.] *Pearson v. Bridges*, 544 S.E.2d 617, 619 (2001). In

6    addition, this instruction is necessary to instruct the jury on the level of confidence with which future

7    damages must be proven. "Future damages in personal injury cases need not be proved to a

8    mathematical certainty. Often a verdict involving future damages must be approximated. A wide

9    latitude is allowed the jury." *Wilder v. Blue Ribbon Taxicab Corp.*, 719 S.E.2d 703, 708 (Ct. App.

10   2011). "The fact that difficulty may be involved in determining future damages[ ] does not prevent

11   the granting of such relief where damages with reasonable certainty and probability will follow."

12   *Id. Gray v. S. Facilities, Inc*. explains, "While proof, with mathematical certainty, of the amount of

13   loss or damage is not required, in order for damages to be recoverable the evidence should be such

14   as to enable the court or jury to determine the amount thereof with reasonable certainty or accuracy."

15   183 S.E.2d 438, 444 (S.C. 1971). This language is echoed in *Whisenant v. James Island Corp*., 281

16   S.E.2d 794,796 (S.C. 1981) ("proof with mathematical certainty of the amount of loss or damage is

17   not required").

18         **Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra*

19   [Negligence]; [Section 230].

1

## 2.    Defendants' Argument

2    Defendants object to any instruction on future damages because Plaintiff's claim for future

3    damages is not legally cognizable.  The province of future damages is ongoing costs caused by the

4    past "injury."  *See, e.g.*, *Wilder*, 719 S.E.2d at 708; ECF No. 2293 at 35–39; ECF No. 2510 at 16–

5    18.  Plaintiff does not claim damages in the future as a result of its past injury.  Plaintiff's alleged

6    past injury is minimal out-of-pocket costs and "lost" teacher and staff time, which categories of

7    alleged injury bear no relation to the Hoover Plan that Charleston is seeking as "future damages."

8    Nor does Charleston offer any evidence of what lost time or out-of-pocket expenses it may incur in

9    the future.  Instead, Charleston claims that it needs money to fund a voluntary, recommended plan

10    put forward by its expert that it has not implemented and has no plans to implement.  The plan is

11    not tied to alleged injuries caused by Defendants' platforms but is a sweeping aspirational plan to

12    treat overall student mental health.  That is not "future damages."

13    *Pearson* does not aid Plaintiff's position.  That case involved an award for future damages

14    for medical expenses for an existing physical injury in a medical malpractice case.  *Pearson*, 544

15    S.E.2d at 618–19.

16    If an instruction on future damages is given over Defendants' objection, Defendants object

17    to Plaintiff's proposed addition, which is not included in the model instruction, that future damages

18    can be awarded for "any harms that the evidence shows will be reasonably certain to occur in the

19    future."  Plaintiff provides no authority for the addition of that language, and it is contrary to South

20    Carolina law, which requires showing that future damages stem from an existing injury.  *See, e.g.*,

21    *Wilder*, 719 S.E.2d at 708; ECF No. 2293 at 35–39; ECF No. 2510 at 16–18.

22    Defendants object to Plaintiff changing "injury" to "harm."  Plaintiff does not present any

23    authority that supports deviating from the model instruction.

24    Defendants object to Plaintiff using "negligence" instead of "Negligent Non-Protected

25    Conduct."  Instructions to the jury related to conduct should include language that incorporates the

26    limitations on liability set forth in the Court's rulings about Section 230 and the First Amendment.

27    *See* SD Order at 14; PI Order at 5, 22; Defs.' Position on Section 230 Instr.

28

### 16. INSTRUCTION NO. 33: DAMAGES – DOUBLE RECOVERY

**[*Plaintiffs object to inclusion of this instruction. Defendants' proposal in green text.*]**

As a general rule, there can be no double recovery for a single injury. Here, the injury of which Charleston County School District complains is that it allegedly incurred additional expenses to address student mental health harms caused by Defendants' Negligent Non-Protected Conduct. You may not award the same element of compensatory damages more than once. Any damages you award must compensate Plaintiff for the injury only once, and you must avoid overlapping or duplicative awards.

**PLAINTIFFS' SOURCE:** N/A

**DEFENDANTS' SOURCE:** There is no pertinent Ninth Circuit Model Instruction or South Carolina Instruction. *See New v. Max G. Crosby Const. Co.*, 2004 WL 6307901, at *3 (S.C. Ct. App. Apr. 27, 2004); *Collins Music Co. v. Smith*, 503 S.E.2d 481, 482 (S.C. Ct. App. 1998); *ARM Quality Builders, LLC v. Golson*, 2024 WL 180701, at *2 (S.C. Ct. App. Jan. 17, 2024).

DATE SUBMITTED: January 28, 2026

### 1.     Plaintiffs' Argument

This instruction is unnecessary and likely to confuse the jury. *See State v. Blurton*, 573 S.E.2d 02, 804 (S.C. 2002). ("Only law applicable to the case should be charged to the jury. Instructions that do not fit the facts of the case may serve only to confuse the jury."). Although there is no risk of confusion even in cases with two claims, the instruction is especially unwarranted here, where Charleston alleges a single claim for negligence. The distinguishable authorities that Defendants cite anticipate multiple theories of recovery for the same harm. *See, e.g.*, *New v. Max G. Crosby Const. Co., Inc.*, 2004 WL 6307901, at *3 (S.C. Ct. App. Apr. 27, 2004) (considering whether awarding cost of repairs and diminution in home value would be double recovery); *Collins Music Co., Inc. v. Smith*, 332 S.C. 145, 147 (1998) (holding that where the plaintiff had not "pleaded nor proved any damages other than those damages that were the direct and natural consequence of the breach of contract[,] [t]he trial court, therefore, did not err in entering a single judgment"); *ARM Quality Builders, LLC v. Golson*, 2024 WL 180701, at *2 (S.C. Ct. App. Jan. 17, 2024) (finding error when same damages were awarded under multiple claims). Here, again, Plaintiff has only one claim, and has submitted clear evidence under a single theory of recovery. Defendants' authorities are therefore inapposite.

Defendants' brief separately argues that there exists a "possibility of overlapping recovery" because "Plaintiff seeks recovery for past, present, and future damages." But they cite no case for the proposition that this instruction is required if there is a mere possibility that different categories of damages for the same injury will overlap.

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence]; [Section 230].

**Improper Limitation to Mental Health Harms.** Defendants' instruction improperly suggests that Charleston's harm is derivative of its students' mental health harms. *See supra* [Limitations of Evidence - Must Evaluate Each Case Against Each Defendant Separately].

## 2. Defendants' Argument

The Court should provide this non-controversial statement of well-settled law that is necessary to give in a case with multiple categories of potentially overlapping injuries. Plaintiff seeks recovery for past, present, and future damages. Defendants deny that Plaintiff is entitled to any of those categories of damages. Within and between each category of damages, there exists the possibility of overlapping recovery. For example, Plaintiff seeks recovery for future damages under the Hoover Plan, which seeks payment for a number of different policy changes and resources. An award for a subset of the proposed changes may be sufficient to compensate the District for its injuries, and additional changes would address only future potential injuries rather than future costs arising from past injuries, so the jury must not be allowed to provide an award that exceeds the scope of compensation for past injuries.

## 17. INSTRUCTION NO. 34: DAMAGES – DUTY TO MITIGATE DAMAGES

[*Plaintiffs object to instructing the jury on the duty to mitigate damages, on the basis that the instruction is not supported by the evidence and Defendants have not shown they are entitled to such an instruction. Defendants' proposal in green text; Charleston's proposal in blue text.*]

A party who has suffered injury or damage from the actionable conduct of another is under a duty to make all reasonable efforts to minimize the damages incurred. To the extent that it reasonably could have minimized those damages and failed to do so, it is not entitled to recover from the other party. In other words, one cannot recover any damages that might have been avoided by the use of reasonable care and diligence. A plaintiff's failure to mitigate damages allows the defendant to avoid only those damages that reasonably could have been avoided by the plaintiff.

An injured harmed party is required to do that which an ordinary, prudent person or organization would do under similar circumstances to mitigate its damages. However, the injured harmed party is not required to unreasonably exert itself or incur substantial expense in an effort to mitigate damages.

The party who claims damages should have been minimized has the burden of proving they could have been avoided or reduced. It is Defendants' responsibility therefore to prove that Charleston County School District should have minimized damages and failed to do so.


**PLAINTIFFS' SOURCE:** Anderson, S.C. Requests to Charge – Civil, 13-12; *see also Newman v. Brown*, 228 S.C. 472, 90 S.E.2d 649 (1955); *Du Bose v. Bultman*, 215 S.C. 468, 56 S.E.2d 95 (1949); *Currie v. Davis*, 130 S.C. 408, 126 S.E. 119 (1923); *Heath v. Postal Telegraph-Cable Co.*, 87 S.C. 219, 69 S.E. 283 (1910); *Creative Commc'n Servs., Inc. v. Travelers Prop. & Cas. Co. of Am.*, No. 2011-UP-525, 2011 WL 11735816, at *1 (S.C. Ct. App. Dec. 5, 2011); *Moore v. Moore*, 360 S.C. 241, 262, 599 S.E.2d 467, 478 (Ct. App. 2004).


**DEFENDANTS' SOURCE:** Anderson, South Carolina Requests to Charge – Civil, § 13-12 (rev. 2d ed. 2016).

DATE SUBMITTED: January 28, 2026

### 1.     Plaintiffs' Argument

**Instruction Not Warranted.** Plaintiffs object to instructing the jury on the duty to mitigate damages based on the lack of any evidentiary support, or Defendants demonstrating they are entitled to such an instruction. South Carolina courts have consistently held that defendants seeking mitigation jury instructions bear a substantial evidentiary burden that must be satisfied before any such instruction is warranted. In *Lyons v. Fidelity Nat. Title Ins. Co*., the Court of Appeals established the foundational principle that "a defendant who claims a plaintiff's damages could have been mitigated has the burden of proving that mitigation is possible and reasonable." 781 S.E.2d 126, 136 (Ct. App. 2015), *vacated pursuant to settlement* (Aug. 26, 2016); *see also Hughes v. Oconee Cnty., S.C.*, No. 2007 WL 8392131, at *8–9 (S.C. Ct. App. Oct. 11, 2007) (providing detailed guidance on what constitutes sufficient evidence to meet this burden). The *Lyons* Court recited "the party who claims damages should have been minimized has the burden of proving they could reasonably have been avoided or reduced." *Lyons* at 136.

As the Court in *Hughes* explained, defendants cannot make "naked assertions" about mitigation possibilities without providing concrete proof. Specifically, defendants must adduce evidence showing that proposed mitigation courses were "feasible," their costs, and "whether they would, in fact, reduce the damages." *Hughes* at *8. The court noted that, "at the very least there is no proof that a net reduction would have resulted" when defendants failed to provide this evidence. *Id*. The burden extends beyond mere speculation about what a plaintiff might have done differently. In *Sloan Const. Co., Inc. v. Southco Grassing, Inc*., the South Carolina Supreme Court confirmed that "the defendant has the burden of establishing the plaintiff's lack of due diligence in mitigating damages." 717 S.E.2d 603, 608 (2011). Courts will refuse mitigation instructions when defendants cannot present proof that damages were avoidable and so should this Court. *See Darby v. Waterboggan of Myrtle Beach, Inc.*, 344 S.E.2d 153, 156 (Ct. App. 1986). Accordingly, this court should not include a mitigation of harm instruction absent concrete evidence that damages caused by defendants could have been mitigated.

## 2.    Defendants' Argument

The Court should provide this non-controversial statement of well-settled law.  Defendants asserted this affirmative defense in their Answer.  Defendants plan to present evidence at trial that Charleston could have mitigated any alleged damages by taking certain actions, including instituting earlier a school-day cell phone ban, or purchasing Yondr or similar pouches for all of its schools rather than just a few.

Defendants object to Plaintiff changing "injury" to "harm."  Plaintiff does not present any authority that supports deviating from the model instruction.

**STOP**

PARTIES' JOINT PROPOSED JURY INSTRUCTIONS (CHARLESTON COUNTY SCHOOL DISTRICT)
4:22-md-03047-YGR

IV.    **[Post Closing Instructions]**

    1.  **INSTRUCTION NO. 35: DUTY TO DELIBERATE**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**AUTHORITY**:    Ninth Cir. Model Instructions, Instruction No. 3.1.

DATE SUBMITTED:  January 28, 2026

## 2. INSTRUCTION NO. 36: CONSIDERATION OF EVIDENCE

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media.

This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the

case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the court immediately.

**AUTHORITY**:          Ninth Cir. Model Instructions, Instruction No. 3.2.

DATE SUBMITTED: January 28, 2026

### 3.  INSTRUCTION NO. 37: COMMUNICATIONS WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Courtroom Deputy, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

**AUTHORITY**:        Ninth Cir. Model Instructions, Instruction No. 3.3.

DATE SUBMITTED: January 28, 2026

1    **4.  INSTRUCTION NO. 38: RETURN OF VERDICT**

2        A verdict form has been prepared for you. After you have reached unanimous agreement on

3    a verdict, your presiding juror should complete the verdict form according to your deliberations,

4    sign and date it, and advise the Courtroom Deputy that you are ready to return to the courtroom.

5

6    **AUTHORITY**:        Ninth Cir. Model Instructions, Instruction No. 3.5.

7

8    DATE SUBMITTED: January 28, 2026

Dated: January 28, 2026

**WILLIAMS & CONNOLLY LLP**

/s/ *Ashley W. Hardin*
JOSEPH G. PETROSINELLI, *pro hac vice*
jpetrosinelli@wc.com
ASHLEY W. HARDIN, *pro hac vice*
ahardin@wc.com
J. ANDREW KEYES, *pro hac vice*
akeyes@wc.com
NEELUM J. WADHWANI (SBN 247948)
nwadhwani@wc.com
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Tel.: (202) 434-5000

*Attorneys for Defendants YouTube, LLC and Google LLC*

**COVINGTON & BURLING LLP**

/s/ *Christian J. Pistilli*
ASHLEY M. SIMONSEN (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

PHYLLIS A. JONES (*pro hac vice*)
PAUL W. SCHMIDT (*pro hac vice*)
CHRISTIAN J. PISTILLI (*pro hac vice*)
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
Email: pajones@cov.com
Email: pschmidt@cov.com
Email: cpistilli@cov.com

*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Instagram, LLC.*

141

1

2
                **KING & SPALDING LLP**

3
                <u>/s/ *David P. Mattern*</u>

4
                GEOFFREY M. DRAKE, *pro hac vice*
                gdrake@kslaw.com

5
                TACARA D. HARRIS, pro hac vice
                tharris@kslaw.com

6
                KING & SPALDING LLP
                1180 Peachtree Street, NE, Suite 1600

7
                Atlanta, GA 30309
                Telephone: (404) 572-4600

8
                Facsimile: (404) 572-5100

9
                DAVID P. MATTERN, *pro hac vice*

10
                dmattern@kslaw.com
                KING & SPALDING LLP

11
                1700 Pennsylvania Avenue, NW
                Suite 900

12
                Washington, D.C. 20006
                Telephone: (202) 737-0500

13
                Facsimile: (202) 626-3737

14
                BAILEY J. LANGNER (SBN 307753)

15
                *blangner@kslaw.com*
                KING & SPALDING LLP

16
                50 California Street, Suite 3300
                San Francisco, CA 94111

17
                Telephone: (415) 318-1200
                Facsimile: (415) 318-1300

18

19
                *Attorneys for Defendants TikTok Inc.,*

20
                *ByteDance Inc., ByteDance Ltd., TikTok Ltd.,*
                *and TikTok, LLC*

21

22

23

24

25

26

27

28

PARTIES' JOINT PROPOSED JURY INSTRUCTIONS (CHARLESTON COUNTY SCHOOL DISTRICT)
4:22-md-03047-YGR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KIRKLAND & ELLIS LLP**

/s/ *Victoria A. Degtyareva*
ALLISON BROWN, *pro hac vice*
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Tel.: (215) 268-5000

JESSICA DAVIDSON, *pro hac vice*
jessica.davidson@kirkland.com
JOHN J. NOLAN, *pro hac vice*
jack.nolan@kirkland.com
ANDREW KARP, *pro hac vice*
andrew.karp@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800

**MUNGER, TOLLES & OLSON LLP**

JONATHAN H. BLAVIN (State Bar No.
230269)
Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel: (415) 512-4000

VICTORIA A. DEGTYAREVA (State Bar No.
284199)
Victoria.Degtyareva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel.: (213) 683-9100
Facsimile: (213) 687-3702

*Attorneys for Defendant Snap Inc.*

PARTIES' JOINT PROPOSED JURY INSTRUCTIONS (CHARLESTON COUNTY SCHOOL DISTRICT)
4:22-md-03047-YGR

By: /s/ Austin Brane
PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com
*Counsel for Plaintiffs and*
*Co-Lead Counsel*

LEXI J. HAZAM
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com
*Co-Lead Counsel*

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com
*Co-chair School District Committee*
*Plaintiffs' Steering Committee Leadership*

MELISSA YEATES
**KESSLER TOPAZ MELTZER**
**& CHECK LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com
*Co-chair School District Committee*
*Plaintiffs' Steering Committee Leadership*

ANDRE M. MURA
**GIBBS MURA LLP**
1111 Broadway, Suite 2100
Oakland, CA 94612
Telephone: 510-350-9717
amm@classlawgroup.com
*Plaintiffs' Steering Committee Leadership*

PARTIES' JOINT PROPOSED JURY INSTRUCTIONS (CHARLESTON COUNTY SCHOOL DISTRICT)
4:22-md-03047-YGR

## ATTESTATION PURSUANT TO LOCAL RULE 5-1

I, Ashley W. Hardin, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED:   January 28, 2026                    By:    */s/ Ashley W. Hardin*
                                                            Ashley W. Hardin

                                                            *Attorney for Defendants YouTube, LLC and*
                                                            *Google, LLC*

PARTIES' JOINT PROPOSED JURY INSTRUCTIONS (CHARLESTON COUNTY SCHOOL DISTRICT)
4:22-md-03047-YGR