1    Ashley M. Simonsen (Bar No. 275203)
     COVINGTON & BURLING LLP
2    1999 Avenue of the Stars
     Los Angeles, California 90067
3    Telephone: (424) 332-4800
     Facsimile: (424) 332-4749
4    Email: asimonsen@cov.com

5    *Attorneys for Defendants Meta Platforms, Inc.*
     *f/k/a Facebook, Inc.; and Instagram, LLC*
6
7    *[Additional parties and counsel listed on*
     *signature pages]*

8
                    UNITED STATES DISTRICT COURT
9
                   NORTHERN DISTRICT OF CALIFORNIA
10
                          OAKLAND DIVISION
11

12
     IN RE: SOCIAL MEDIA ADOLESCENT          MDL No. 3047
13   ADDICTION/PERSONAL INJURY
     PRODUCTS LIABILITY LITIGATION           Case No. 4:23-CV-01804-YGR
14
                                             **JOINT SET OF PROPOSED JURY**
15                                           **INSTRUCTIONS**

16   ─────────────────────────────────      Judge: Hon. Yvonne Gonzalez Rogers
                                             Magistrate Judge: Hon. Peter H. Kang
17   This Document Relates to:
                                             Pretrial Conference:       TBD
18   *Breathitt County Board of Education v. Meta*   Trial Date:        TBD
     *Platforms Inc., et al*

19

20

21

22

23

24

25

26

27

28

Plaintiff Breathitt County School District ("Breathitt" or "Plaintiff") and Defendants Meta Platforms, Inc. f/k/a Facebook, Inc., and Instagram, LLC (collectively, "Meta"); Snap, Inc. ("Snap"); TikTok Inc., ByteDance Inc., ByteDance Ltd., TikTok Ltd., and TikTok, LLC (collectively, "TikTok"); YouTube, LLC and Google LLC (collectively "YouTube"), by and through their attorneys of record (collectively, the "Parties"), hereby submit these Joint Proposed Jury Instructions pursuant to Paragraph 3(g) of the Court's Standing Order Re: Pretrial Instructions in Civil Cases (last updated March 17, 2025) ("Standing Order") and Case Management Order No. 30 (Doc. 2549).[1]

The Parties respectfully reserve the right to amend or supplement these proposed instructions and their objections thereto as the case proceeds towards trial, as the Parties continue to meet and confer regarding these instructions, and as the Court considers these proposals and objections.

| No. | Description | Whether the Parties Stipulate or Object |
|---|---|---|
| **Preliminary Instructions** | | |
| 1 | Duty of Jury | Stipulate |
| 2 | Claims and Defenses | Breathitt objects to this instruction in part. The Parties propose conflicting modifications. |
| 3 | Companies and Public Entities | The Parties propose conflicting modifications. |
| 4 | Burden of Proof – Preponderance of the Evidence | Stipulate |

---

[1] The Parties submit, as Exhibits A and B, redlines reflecting the Parties' proposed modifications to the 9th Circuit Model Instructions, consistent with the Court's Standing Order at Paragraph 3(g)(ii)(H). The Parties understand that this instruction relates solely to the 9th Circuit Model Instruction, and does not apply to any model or pattern instructions regarding state law. However, the Parties are happy to provide such redlines against the state law model instructions if it would be helpful to the Court.

| 5 | Burden of Proof – Clear and Convincing Evidence | Defendants object to the instruction in full.  The Parties agree that this instruction is only appropriate if a punitive damages instruction is given. If a punitive damages instruction is given over Defendants' objection, the Parties stipulate to the proposed language for this instruction and suggest giving this instruction after the punitive damages instruction. |
| 6 | Two or More Parties – Different Legal Rights | The Parties propose conflicting modifications. |
| 7 | What is Evidence | Stipulate |
| 8 | Direct and Circumstantial Evidence | Stipulate |
| 9 | What Is Not Evidence | Stipulate |
| 10 | Evidence for a Limited Purpose | Stipulate (conditioned on limiting instruction being given) |
| 11 | Ruling on Objections | Stipulate (the Parties propose giving instruction before the start of evidence) |
| 12 | Credibility of Witnesses | Stipulate |
| 13 | Publicity During Trial | Stipulate (the Parties propose giving instruction before the start of evidence) |
| 14 | No Transcript Available | Stipulate (the Parties propose giving instruction before the start of evidence) |
| 15 | Bench Conferences and Recesses | Stipulate (the Parties propose giving instruction before the start of evidence) |
| 16 | Video Deposition | Stipulate (the Parties propose giving instruction before the start of evidence) |
| 17 | Expert Opinion Testimony | Stipulate |
| 18 | Protection for Publishing and Expressive Activity | The Parties propose conflicting instructions. |
| N/A | Transition Instruction | Stipulate |
| **First Claim - Negligence** | | |
| 19 | First Claim – Negligence | The Parties propose conflicting modifications. |

3

| Second Claim – Public Nuisance | | |
|---|---|---|
| 20 | Second Claim – Public Nuisance | The Parties propose conflicting modifications. |
| **Additional Substantive Instructions** | | |
| 21 | Causation – Generally | The Parties propose conflicting instructions. |
| 22 | Causation – Substantial Factor | The Parties propose conflicting modifications. |
| 23 | Causation – No Duy to Prevent Harm Caused by Third Parties | The Parties propose conflicting instructions. |
| 24 | Causation – Multiple Causes | Defendants object to the instruction in full. |
| 25 | Heeding Presumption | Defendants object to the instruction in full. |
| 26 | Eggshell Plaintiff / Aggravation of Pre-Existing Condition | Defendants object to the instruction in full. |
| 27 | Statute of Limitations | Breathitt objects to the instruction in full. |
| 28 | Comparative Fault | Breathitt objects to the instruction in full. |
| 29 | Apportionment of Liability | Defendants object to the instruction in full. |
| 30 | Compensatory Damages | Stipulate |
| 31 | Mitigation | Breathitt objects to the instruction in full. |
| 32 | No Double Recovery | Breathitt objects to the instruction in full. |
| 33 | Punitive Damages | Defendants object to the instruction in full. |
| **STOP (CLOSING ARGUMENTS)** | | |
| **Post-Closing Instructions** | | |
| 34 | Duty to Deliberate | Stipulate |

| 35 | Consideration of Evidence | Stipulate |
|----|---------------------------|-----------|
| 36 | Communications with Court | Stipulate |
| 37 | Return of Verdict | Stipulate |

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (BREATHITT)
4:22-md-03047-YGR

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

IN RE: SOCIAL MEDIA ADOLESCENT
ADDICTION/PERSONAL INJURY
PRODUCTS LIABILITY LITIGATION

Case No. 4:23-CV-01804-YGR

This Document Relates to:

*Breathitt County Board of Education v. Meta
Platforms Inc., et al*

**JURY INSTRUCTIONS (COVER PAGE)**

Dated: _____

_____
UNITED STATES DISTRICT JUDGE

1

2

**I.    PRELIMINARY INSTRUCTIONS**

3

**Jury Instruction # 1**
**Duty of Jury**

4

5

6

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.

7

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

8

9

10

11

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

12

13

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

14

15

16

AUTHORITY:        Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2025 ed., last updated September 2025) ("Ninth Cir. Model Instructions"), Instruction No. 1.4.

17

18

DATE SUBMITTED:   January 28, 2026

19

DATE REVISED:     [insert date]

20

21

22

23

24

25

26

27

28

**Jury Instruction # 2**
**Claims and Defenses±**

*[±Defendants' proposed language in <span style="color:blue">blue text</span>.  Breathitt objects to instructing on affirmative defenses, which Breathitt objects to instructing about generally, but will consider its below proposed language in <span style="color:red">red text</span> if affirmative defenses instructions are ordered.]*

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The Plaintiff in this case is Breathitt County School District, also referred to as "Plaintiff" or "Breathitt."  The Defendants in this case are four <span style="color:blue">separate</span> groups of <span style="color:blue">technology</span> ~~social media~~ companies:

1. Meta Platforms, Inc. f/k/a Facebook, Inc., and Instagram, LLC, referred to collectively as "Meta";

2. Snap Inc., referred to as "Snap";

3. TikTok Inc., ByteDance Inc., ByteDance Ltd., TikTok Ltd., and TikTok, LLC, referred to collectively as "TikTok"; and

4. YouTube, LLC and Google LLC, referred to collectively as "YouTube."

Collectively, these <span style="color:blue">four groups</span> ~~social media companies~~ are referred to as "Defendants."

<span style="color:blue">Breathitt claims that Defendants developed and operated their online platforms—specifically Instagram, Facebook, TikTok, Snapchat, and YouTube—in a manner that caused mental health harms to Breathitt students and led to additional expenses for the school district.</span>

<span style="color:red">The School District asserts that the Defendants negligently designed, operated, and/or marketed their social media platforms to target students and schools. The School District asserts that the Defendants' actions caused students to experience problematic use, compulsive use, and/or addiction to their platforms, resulting in a deterioration of youth learning, mental health, and overall well-being. The School District also asserts that Defendants' actions disrupted school operations and negatively impacted the school environment. The School District asserts that Defendants' actions harmed the School District by requiring the School District to expend and redirect already limited resources. The School District further asserts that the harms to the School District are ongoing and will continue to cause the School District harm. The School District asserts that the consequences of Defendants' actions were foreseeable, and Defendants failed to warn about those consequences.</span>

Breathitt brings two legal claims against <span style="color:blue">each</span> Defendant<span style="color:blue">s</span>: negligence and public nuisance.  Breathitt has the burden of proving these claims.

The Defendants deny Breathitt's claims.  Defendants also assert <span style="color:blue">three</span> <span style="color:red">two</span> affirmative defenses to Breathitt's claims: (1) statute of limitations<span style="color:red">, and</span>  (2) comparative fault<span style="color:blue">, and (3) failure</span>

8

1    to mitigate.  Defendants have the burden of proving these affirmative defenses.  Breathitt denies
2    Defendants' affirmative defenses.

3           Later I will explain the specific legal requirements that the parties must prove for each
      claim or defense.
4

5    AUTHORITY:                  Ninth Cir. Model Instructions, Instruction 1.5 (modified to reflect the
6                                claims and defenses in this case).

7

8    DATE SUBMITTED:    January 28, 2026

9    DATE REVISED:          [insert date]

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BREATHITT'S POSITION**

**Social Media Companies.** Defendants' refusal to describe themselves as "social media companies" is unjustifiable. Demanding that they only be called "technology companies" is unduly restrictive for no legitimate reason, confusing, and prejudicial because it does not match reality, the testimony, or documentary evidence that will be admitted at trial, which commonly refers to Defendants as social media companies, including their own press releases. Nor is it prejudicial to Defendants to call them social media companies; that *is* what they are, hence the case caption.

To the extent YouTube specifically objects, its own internal documents refer to it as social media. As far back as 2020, YouTube explicitly stated that "YouTube is the most popular social media site used by 15-25 year olds." (GOOG-3047MDL-00402817).

**Statement of the Case.** Plaintiff's proposed instruction includes a brief, accurate, and neutral description of its theories of liability to provide the jury with essential context regarding the claims at issue, as the Court has requested and as is the Court's common practice. *See* YGR Pretrial Standing Order 3(h); *see also Est. of Tindle v. Mateu*, No. 18-CV-05755-YGR, ECF No. 138, at *2 (N.D. Cal. Sept. 28, 2020) (explaining the plaintiff's theory as to how the defendant's conduct violated the U.S. Constitution in its "Claims and Defenses" instruction); *Simmons v. Federal Insurance Company*, No. 4:21-cv-03534-YGR, ECF No. 211, at *1 (explaining, in its first instruction to the jury, the plaintiffs' theory of liability and defendant's position).

Defendants' statement of the case is cursory and does not explain the nature of the harm or the plaintiff's theory of the case. It does little to inform the jury beyond naming the parties.

**Evidence Does Not Support Instruction on Affirmative Defenses.** Breathitt objects to Defendants' instruction on affirmative defenses, not because it is not contemplated by the pattern, but because Defendants have not carried their burden of showing they are entitled to these instructions. As explained *infra* in Breathitt's specific objections to Defendants' proposed instructions on each of these defenses, Defendants have not articulated nor substantiated any basis from which the jury may find a failure to mitigate, comparative fault, or a statute of limitations bar. *See infra* [Statute of Limitations], [Comparative Fault], [Mitigation]. Under Kentucky law,

1    "'[t]he entitlement to an affirmative [defense] instruction is dependant [*sic*] upon the introduction

2    of some evidence justifying a reasonable inference of the existence of a defense.'" *Fredline v.*

3    *Com.*, 241 S.W.3d 793, 797 (Ky. 2007) (quoting *Grimes v. McAnulty*, 957 S.W.2d 223, 226 (Ky.

4    1997)); *Murphy v. Commonwealth*, 509 S.W.3d 34, 49 (Ky. 2017) (denying request for jury

5    instruction on statute that is inapplicable to the facts of the case).

6         To the extent the Court denies any or all of Defendants' affirmative defense instructions, it

7    should also remove any mention of those instructions in this preliminary instruction.

8         **Singular vs. Plural Defendants.** The Court should not blanketly refer to Defendants in

9    the collective or singular, but should do whichever is appropriate for each instruction. Here, the

10    instruction is describing Breathitt's allegations as to all Defendants, so the plural is appropriate.

11    *Cf. infra* [Causation – Multiple Causes] (referring to "each Defendant").

12         **Mitigation is Not a Defense to Claims.** Breathitt also objects to including "failure to

13    mitigate" damages as an affirmative defense "to Breathitt's *claims*." Even if Defendants plead

14    and prove failure to mitigate, it would not serve as an affirmative defense to liability, only as a

15    limitation on damages. *See Fifth Third Bank v. Waxman*, 726 F. Supp. 2d 742, 750-51 (E.D. Ky.

16    2010) ("[T]he failure to mitigate by Fifth Third would not have precluded its recovery, although it

17    might have diminished it to the extent that reasonable efforts at mitigation were not

18    undertaken."). Including it as an affirmative defense alongside statute of limitations and

19    comparative fault thus fault risks misleading the jury into believing that, if Defendants are

20    successful on their mitigation defense, they cannot be held liable.

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (BREATHITT)
4:22-md-03047-YGR

1    **DEFENDANTS' POSITION**

2        Defendants' Instruction on Claims and Defenses is consistent with Ninth Circuit Jury

3    Instructions and the Court's Standing Order Re: Pretrial Instructions in Civil Cases (last updated

4    March 17, 2025) ("Standing Order").[2]  The Standing Order requires that instructions "begin with

5    the standard Ninth Circuit Manual of Model Jury Instructions ("Model Instructions") in Chapters

6    1 and 3."  Standing Order at 5–6.  Defendants' Instruction is therefore modeled after Model

7    Instruction 1.5, which states that the instruction will "give a brief summary of the positions of the

8    parties" and identify the parties, "plaintiff's claims," "defendant's … affirmative defenses,"

9    which party bears the burden of proving those claims and defenses, and denials of the same.

10       **Affirmative Defenses.**  Defendants include their affirmative defenses in their proposed

11   language, whereas Breathitt objects to instructing on affirmative defenses—a position that is in

12   direct opposition to Model Instruction 1.5 and has no support.  Defendants' defenses are properly

13   asserted, and Breathitt has not moved to strike them and did not seek summary judgment on those

14   defenses.  Additionally, Breathitt's objection to the inclusion of failure to mitigate damages as an

15   affirmative defense is inconsistent with the findings by Kentucky courts and federal courts that an

16   assertion of failure to mitigate damages is an affirmative defense.  *See Haymaker Dev. Co., LLC

17   v. Gatton*, 2022 WL 1250388, at *5 (E.D. Ky. Apr. 27, 2022) (citations omitted).

18       **Objectionable Language.**  Breathitt's Instruction provides unnecessary details and

19   objectionable characterizations of its claims that are inconsistent with the Model Instruction and

20   the Court's Standing Order.  Specifically, Breathitt's paragraph starting "The School District

21   asserts that Defendants …" sets out numerous assertions about Breathitt's allegations that are

22   unnecessary to assist the jury, not in the Model Instructions, and argumentative.  *See* Standing

23   Order at 6 (instructions shall be "free of argument").  By contrast, Defendants propose a short and

24   neutral summary of Breathitt's claims that closely tracks its complaint.

25

26

---

27   [2] Defendants maintain that summary judgment should be granted because Breathitt has not
     identified any actionable conduct that caused its alleged harms, and Defendants submit the
28   proposed Instruction without waiving such arguments.

1    Breathitt's language that "Defendants' actions caused students to experience problematic

2  use, compulsive use, and/or addiction to their platforms, resulting in a deterioration of youth

3  learning, mental health, and overall well-being" is also objectionable.  Breathitt may not recover

4  in this lawsuit for alleged harm to students, including for the "deterioration of [students']

5  learning, mental health, and overall well-being."  Rather, Breathitt can only recover the additional

6  expenses incurred by the district as a result of the alleged mental health harms suffered by its

7  students.  The jury should not erroneously be led to believe that Breathitt can recover for harms to

8  students alone.    Breathitt must show actionable, concrete economic injuries, not simply any

9  unfavorable impact on the school district.  Nor should Breathitt be permitted to recover based

10  upon "disruptive" student behavior that is not tied to student mental health harms; unless the

11  reason that students are being disruptive is a mental health harm caused by Defendants'

12  platforms, Defendants cannot be held liable for that disruption, including because there is no

13  public health interference.

14    **Separate Defendants.**  Breathitt's language improperly lumps Defendants together,

15  despite Kentucky requiring assessment of liability and apportionment of each party's fault.  *See*

16  *Mullins v. Appalachian Reg'l Healthcare, Inc.,* 707 S.W.3d 1, 8 (Ky. Ct. App. 2025).

17    **"Social Media."**  Defendants object to the use of "social media" to describe their

18  companies and platforms, as YouTube and Snap do not agree with those characterizations.

19  Breathitt takes the position that "social media" references in the evidentiary record equal

20  Defendants, but Defendants contest this.  The Court's instructions should not unnecessarily weigh

21  in on that factual dispute in Plaintiff's favor.

22

23

24

25

26

27

28

**Jury Instruction # 3**
**Companies and Public Entities±**

*[± Defendants' proposal in blue text.]*

      The Defendants in this case are companies. The Plaintiff in this case is a public entity. All parties are equal before the law. Companies and public entities are entitled to the same fair and conscientious consideration by you as any party. Under the law, Plaintiff and Defendants are each considered to be a person and can only act through its subsidiaries, employees, agents, directors, or officers. Therefore, Plaintiff and Defendants are each responsible for the acts of its subsidiaries, employees, agents, directors, and officers performed within the scope of their authority. An employee, agent, director, or officer is acting within the scope of authority if he or she is engaged in the performance of duties which were expressly or impliedly assigned to them by the corporation.

AUTHORITY:          Ninth Cir. Model Instructions, Instructions 4.1, 4.2, and 4.5 (modified).

DATE SUBMITTED:   January 28, 2026

DATE REVISED:      [insert date]

1    **BREATHITT'S POSITION**

2          The parties began with the Ninth Circuit Model Civil Jury Instructions 4.1 and 4.2, which

3    instruct on treating corporate parties fairly and explain that corporations can be held accountable

4    through their employees and officers. The parties agreed to revise the instruction to say

5    "companies" rather than "corporations" (as LLCs are technically companies, but not

6    corporations), and to instruct the jury that they also should not treat Bellwether School District

7    Plaintiffs differently by nature of the fact that they are public entities.

8          The parties conferred about the applicability of Model Civil Jury Instruction 4.2, which

9    instructs the jury on how to determine liability for corporations (when scope of authority is *not* at

10   issue). Plaintiffs believe this instruction may be useful, as the jury will hear testimony from both

11   parties' employees.

12         However, Defendants also suggested including language from Model Civil Jury

13   Instruction 4.5, which goes on to describe what conduct falls "within the scope of authority."

14   Plaintiffs objected to this language, because no party has suggested that any person was not acting

15   within the scope of their authority. Because the jury will not be asked to determine when an

16   employee acts within the scope of their authority, that instruction language is not relevant for the

17   purposes of this case, and risks confusing the jury about what issues they must decide. When

18   given this explanation, Defendants then objected that this language is necessary to prevent juror

19   confusion about the meaning of the reference to "scope of authority" in Model Civil Jury

20   Instruction 4.2. The solution there is simple: rather than instruct the jury on an irrelevant concept

21   which may introduce new legal issues and confusion, just remove the language regarding the

22   scope of an employee's authority from Instruction 4.2.

23         Plaintiffs' proposal informs the jury on all relevant issues of law that will help them

24   resolve the questions they are tasked with answering.

25

26

27

28

**DEFENDANTS' POSITION**

The Parties jointly propose giving an instruction based on Ninth Circuit Model Instructions 4.1 and 4.2, slightly modified for the facts of this case. In doing so, Defendants also seek to include in this instruction Ninth Circuit Model Instruction 4.5, which is similarly modified for the facts of this case. Breathitt objects to the inclusion of language from Model Instruction 4.5 ("An agent is acting within the scope of authority if the agent is engaged in the performance of duties which were expressly or impliedly assigned to the agent by the principal."), and the final clause of Model Instruction 4.2 ("Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.").

Defendants propose this language because the "scope of authority" is integral to understanding and then applying agency law. What is more, Breathitt provides no authority for the position that Defendants can be held liable for acts of their agents performed outside the scope of their authority. Because several Defendant groups include parent companies and subsidiaries, this language is necessary for the jury to determine potential liability of parent organizations for actions taken by subsidiaries or employees of subsidiaries. *See, e.g.*, *Brit. Telecommunications PLC v. IAC/InteractiveCorp*, 356 F. Supp. 3d 405, 409 (D. Del. 2019) (holding that "a parent corporation is held liable for the actions of its subsidiary if the parent directed or authorized those actions" under an agency theory if the relationship is directly related to the cause of action) (citing *Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.*, 842 F.2d 1466, 1476-77 (3d Cir. 1988)); *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017) (proving agency relationship between parent and subsidiary requires that establishing that the agent "act[ed] on the principal's behalf and subject to the principal's control" (quoting Restatement (Third) Of Agency § 1.01 (2006)).

The Court should give Defendants' proposed language in this instruction because it accurately reflects the law—and Breathitt fails to provide any basis for rejecting a model instruction.

**Jury Instruction # 4**
**Burden of Proof – Preponderance of the Evidence**

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more likely true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

AUTHORITY:           Ninth Cir. Model Instructions, Instruction 1.6.

DATE SUBMITTED:   January 28, 2026

DATE REVISED:       [insert date]

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (BREATHITT)
4:22-md-03047-YGR

**Jury Instruction # 5**
**Burden of Proof – Clear and Convincing Evidence**

*[Defendants object to instructing the jury on punitive damages and, therefore, object to this instruction in full. The Parties agree that this instruction is only appropriate if the jury is instructed on punitive damages. If a punitive damages instruction is given over Defendants' objection, the Parties agree to the below language and suggest giving this instruction before the punitive damages instruction.]*

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

AUTHORITY:          Ninth Cir. Model Instructions, Instruction 1.7.

DATE SUBMITTED:   January 28, 2026

DATE REVISED:      [insert date]

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (BREATHITT)
4:22-md-03047-YGR

**Jury Instruction # 6**
**Two or More Parties – Different Legal Rights**

*[± Defendants' proposal in blue text.]*

You should decide the case as to each party separately. A Defendant is responsible only for its own conduct, and one Defendant cannot be liable as a result of conduct by a different Defendant. Unless otherwise stated, the instructions apply to all parties.

AUTHORITY:                  Ninth Cir. Model Instructions, Instruction 1.8 (modified).

DATE SUBMITTED:    January 28, 2026

DATE REVISED:          [insert date]

1    **BREATHITT'S POSITION**

2         Plaintiffs propose the pattern instruction language from Ninth Circuit Model Civil Jury

3    Instruction 1.8. Defendants' additional language ("A Defendant is responsible only for its own

4    conduct, and one Defendant cannot be liable as a result of conduct by a different Defendant.")

5    invites juror confusion and misstates the law for indivisible injuries, which each Bellwether

6    School District Plaintiff alleges.

7         Each state has developed law for instances of multiple causes that combine or commingle

8    to produce harm: in cases involving multiple alleged tortfeasors whose actions allegedly

9    contributed to an indivisible harm, the plaintiff is required to show that each defendant was a

10   cause-in-fact (typically substantial factor, though Georgia objects that "substantial" sets the bar

11   even too high) before that defendant can be held liable. *See Holland v. United Servs. Auto. Ass'n*,

12   707 S.W.3d 541, 556 (Ky. Ct. App. 2025); *Salica v. Tucson Heart Hosp.-Carondelet, L.L.C.*, 231

13   P.3d 946, 950-51 (Ariz. Ct. App. 2010); *Deaton Holdings, Inc. v. Reid*, 888 S.E.2d 333, 336 (Ga.

14   Ct. App. 2023); *Carter v. Wallace & Gale Asbestos Settlement Tr.*, 96 A.3d 147, 157-59 (Md. Ct.

15   App. 2014); *Boryszewski ex rel. Boryszewski v. Burke*, 380 N.J. Super. 361, 376 (App. Div.

16   2005); *Jolly v. Gen. Elec. Co.*, 869 S.E.2d 819, 829 (S.C. Ct. App. 2021).

17        However, and crucially important, under every state's law, if a defendant is determined to

18   be a cause of the indivisible harm, then it is liable for the entire harm. This means that

19   Defendants' language that a Defendant "is responsible only for its own conduct" is not wholly

20   true. Plaintiffs must show that each Defendant was a cause-in-fact and a proximate cause of the

21   harm the Plaintiff alleges, but once shown, all Defendants are responsible for the entire harm.

22        This does not necessarily mean that every defendant is jointly-and-severally liable for the

23   full amount of damages. States have different manners of allocating fault to potentially limit the

24   amount of damages which are recoverable, but those rules do not change that, for purposes of

25   causation, the defendant is considered to have caused the harm as a whole. *See Owens Corning*

26   *Fiberglas Corp. v. Parrish*, 58 S.W.3d 467, 477 n. 30 (Ky. 2001); K.R.S. § 411.182; *Piner v.*

27   *Superior Ct. in and for Cnty. of Maricopa*, 962 P.2d 909, 916 (Ariz. 1998) (en banc); *Deaton*

28   *Holdings, Inc.*, 888 S.E.2d at 336; O.G.C. § 51-12-33; *Carter*, 96 A.3d at 157-59; *Reichert v.*

1    *Vegholm*, 366 N.J. Super. 209, 221 (App. Div. 2004); *Smith v. Tiffany*, 799 S.E.2d 479, 481 (S.C.

2    2017); S.C. Code § 15-38-15. Even if the percentage of damages that they must pay is reduced

3    based on the jury's allocation of fault, any defendant found to have been a cause of the harm is

4    liable for the harm as a whole.

5           The only way that a defendant can avoid responsibility for the entire harm is to prove that

6    (1) the harm is divisible, and (2) evidence exists that would allow the jury to connect a particular

7    Defendant's actions to a particular part of the divisible harm. Defendants have the burden to show

8    each aspect of apportionability; otherwise, the harm is considered indivisible, and all contributing

9    tortfeasors are considered responsible for the whole. *See* Restatement (Second) Torts §§ 433A,

10   433B (1965); *see also Parrish*, 58 S.W.3d at 477 n.28; *Piner*, 962 P.2d at 916; *Polston v.*

11   *Boomershine Pontiac-GMC Truck, Inc.*, 423 S.E.2d 659, 660-61 (Ga. 1992); *Carter*, 96 A.3d at

12   159-60; *Reichert*, 366 N.J. Super. at 221.

13          Because Defendants' proposed language suggests that liability must be limited according

14   to each Defendants' causal contribution to the harm, despite no Defendant proving that any

15   Plaintiff's harm is divisible, the proposal misstates the law and invites jurors to err in their

16   consideration of the evidence. The Court should reject Defendants' added language, and instead

17   give the Ninth Circuit pattern language as written.

18

19

20

21

22

23

24

25

26

27

28

1    **DEFENDANTS' POSITION**

2    Defendants propose adding a sentence to Ninth Circuit Model Instruction 1.8 to explicitly

3    instruct the jury on the implications of "decid[ing] the case as to each party separately."

4    **"Indivisible Harm" Argument.**  Breathitt objects to the inclusion of this sentence on the

5    basis of its newly raised argument that its alleged harm is somehow "indivisible."  However,

6    Breathitt's argument is unsupported by the law and facts of this case and does not preclude the

7    addition of Defendants' proposed sentence.

8    First, as explained further *supra* in Defendants' Position to Jury Instruction #22

9    (Causation – Substantial Factor), there is no factual basis for Breathitt's assertion that it has

10    suffered a "single indivisible injury."  The authority cited by Breathitt does not support a contrary

11    theory; *Owens Corning Fiberglass Corp.*, 58 S.W.3d 467 (Ky. 2001), presented an indivisible

12    medical injury that could not be apportioned between separate causes, and  *Holland v. United*

13    *Servs. Auto. Ass'n*, 707 S.W.3d 541, 556 (Ky. Ct. App. 2025) does not involve or address

14    indivisible injury.

15    Second, Breathitt's position is unsupported by Kentucky law, which requires assessment

16    of both liability and apportionment of fault for each party.  "To prove liability, [a plaintiff] must

17    show that *each defendant* both violated the standard of care and that the violation caused [the

18    plaintiff's] injuries."  *Mullins,* 707 S.W.3d at 8 (emphasis in original).

19    Kentucky is a "pure" comparative fault state, meaning the jury must apportion a specific

20    share of total liability among the plaintiff and each defendant.  *See* KRS 411.182; *see also Carter*

21    *v. Bullitt Host, LLC*, 471 S.W.3d 288, 298 (Ky. 2015) ("[L]iability—responsibility—

22    under Kentucky law must be determined based on the principles of comparative fault."); *United*

23    *States Fid. & Guar. Co. v. Clara J. Preston*, 26 S.W.3d 145, 148 (Ky. 2000) (explaining that

24    Kentucky is a "pure" comparative negligence state, meaning that "an injured person may recover

25    against one who is negligent even if the injured person was partly responsible for the injury[,]"

26    but "the amount of recovery is reduced in proportion to the injured party's fault").

27    In support of its argument, Breathitt cites KRS 411.182—but KRS 411.182 abolished

28    joint-and-several liability in Kentucky.  *See Hayes v. Goldsmith*, 2016 WL 4256910, at *3 (Ky.

1   Ct. App. 2016)  ("In Kentucky, the law is well-settled that our comparative fault statute, KRS

2   411.182, mandates apportionment of fault in all tort actions . . . .").

3          The Kentucky Supreme Court has emphasized that liability among joint tortfeasors is

4   several only.  *Dix & Assocs. Pipeline Contractors, Inc. v. Key*, 799 S.W.2d 24, 27 (Ky.

5   1990).  Kentucky does not follow the common law rule that each negligent party may be held

6   entirely responsible for a single, indivisible injury.  *Id*.  And because the liability is several to

7   each negligent joint tort-feasor, it is necessary to apportion a specific share of the liability to each

8   of them.  *Id*.  Thus, Defendants' proposed additional sentence is consistent with  KRS 411.182's

9   mandatory apportionment in actions involving more than one potentially at-fault party.

10         **Prevent Juror Confusion.**  Defendants' modification to the Model Instruction will also

11  prevent juror confusion.  Repeatedly throughout the proposed substantive instructions,

12  Defendants are referenced as a group.  Defendants have objected to this "lumping together" of

13  Defendants and proposed alternative language where appropriate.  Despite these objections,

14  however, the jury may still fail to appropriately consider Breathitt's claims against each

15  Defendant separately or to recognize what it means to consider the claims separately.  And this

16  concern becomes particularly acute if the Court does not adopt Defendants' proposed language in

17  the substantive instructions.  The concern of juror confusion is also increased because Breathitt's

18  alleged evidence is not specific to Defendants' platforms or at-issue features.  Thus, this

19  modification to the Model Instruction will aid the jury in faithfully applying the substantive law

20  in each case.

21

22

23

24

25

26

27

28

**Jury Instruction # 7**
**What Is Evidence**

The evidence you are to consider in deciding what the facts are consists of:

     1.  the sworn testimony of any witness;

     2.  the exhibits that are admitted into evidence;

     3.  any facts to which the lawyers have agreed; and

     4.  any facts that I have instructed you to accept as proved.

AUTHORITY:       Ninth Cir. Model Instructions, Instruction 1.9.

DATE SUBMITTED:  January 28, 2026

DATE REVISED:    [insert date]

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (BREATHITT)
4:22-md-03047-YGR

1

**Jury Instruction # 8**
**Direct and Circumstantial Evidence**

2

3

4        Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact.

5

6        By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night.  However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

7

8

9        You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

10

11

12

13    AUTHORITY:              Ninth Cir. Model Instructions, Instruction 1.12 (modified to include illustrative example suggested in comment to Instruction 1.12).

14

15    DATE SUBMITTED:   January 28, 2026

16    DATE REVISED:       [insert date]

17

18

19

20

21

22

23

24

25

26

27

28

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (BREATHITT)
4:22-md-03047-YGR

**Jury Instruction # 9**
**What Is Not Evidence**


    In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1)    Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)    Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

(3)    Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.

(4)    Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.


AUTHORITY:          Ninth Cir. Model Instructions, Instruction 1.10 (modified).


DATE SUBMITTED:  January 28, 2026

DATE REVISED:      [insert date]

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (BREATHITT)
4:22-md-03047-YGR

**Jury Instruction # 10**
**Evidence for a Limited Purpose**

*[The Parties agree to this instruction on the condition that it be given only if there is a limiting instruction ordered.]*

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you may consider it only for that limited purpose and not for any other purpose.

AUTHORITY:           Ninth Cir. Model Instructions, Instruction 1.11.

DATE SUBMITTED:   January 28, 2026

DATE REVISED:       [insert date]

**Jury Instruction # 11**
**Ruling on Objections**

*[The Parties propose this instruction be given before the start of evidence.]*

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.

If I overrule the objection, the question may be answered, or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

AUTHORITY:              Ninth Cir. Model Instructions, Instruction 1.13.


DATE SUBMITTED:   January 28, 2026

DATE REVISED:        [insert date]

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (BREATHITT)
4:22-md-03047-YGR

**Jury Instruction # 12**
**Credibility of Witnesses**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)     the opportunity and ability of the witness to see or hear or know the things testified to;

(2)     the witness's memory;

(3)     the witness's manner while testifying;

(4)     the witness's interest in the outcome of the case, if any;

(5)     the witness's bias or prejudice, if any;

(6)     whether other evidence contradicted the witness's testimony;

(7)     the reasonableness of the witness's testimony in light of all the evidence; and

(8)     any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said.  Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently.  You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.  On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.  What is important is how believable the witnesses were, and how much weight you think their testimony deserves.


AUTHORITY:          Ninth Cir. Model Instructions, Instruction 1.14.

DATE SUBMITTED:   January 28, 2026

DATE REVISED:       [insert date]

**Jury Instruction # 13**
**Publicity During Trial**

*[The Parties propose this instruction be given before the start of evidence.]*


If there is any news media account or commentary about the case or anything to do with it, you must ignore it. You must not read, watch, or listen to any news media account or commentary about the case or anything to do with it. The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies. If any juror is exposed to any outside information, please notify me immediately.


AUTHORITY:              Ninth Cir. Model Instructions, Instruction 1.16.


DATE SUBMITTED:    January 28, 2026

DATE REVISED:        [insert date]

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (BREATHITT)
4:22-md-03047-YGR

**Jury Instruction # 14**
**No Transcript Available**

*[The Parties propose this instruction be given before the start of evidence.]*

     I urge you to pay close attention to the trial testimony as it is given.  During deliberations you will not have a transcript of the trial testimony.

AUTHORITY:          Ninth Cir. Model Instructions, Instruction 1.17.

DATE SUBMITTED:   January 28, 2026

DATE REVISED:      [insert date]

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (BREATHITT)
4:22-md-03047-YGR

**Jury Instruction # 15**
**Bench Conferences and Recesses**

*[The Parties propose this instruction be given before the start of evidence.]*

   From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of you the jury, either by having a conference at the bench when you the jury are present in the courtroom, or by calling a recess. Please understand that when this happens and you are waiting, we will be working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

AUTHORITY:   Ninth Cir. Model Instructions, Instruction 1.20 (modified).

DATE SUBMITTED: January 28, 2026

DATE REVISED:  [insert date]

**Jury Instruction # 16**
**Video Deposition**

*[The Parties propose this instruction be given before the start of evidence.]*

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.

You will be shown video-recorded testimony of certain witnesses. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

AUTHORITY:              Ninth Cir. Model Instructions, Instruction 2.4 (modified).

DATE SUBMITTED:    January 28, 2026

DATE REVISED:        [insert date]

**Jury Instruction # 17**
**Expert Opinion Testimony**


   You have heard testimony from experts who testified about their opinions and the reasons for those opinions.  This opinion testimony is allowed, because of the specialized knowledge, skill, experience, training, or education of this witness.

   Such opinion testimony should be judged like any other testimony.  You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's specialized knowledge, skill, experience, training, or education, the reasons given for the opinion, and all the other evidence in the case.


AUTHORITY:    Ninth Cir. Model Instructions, Instruction 2.13.


DATE SUBMITTED: January 28, 2026

DATE REVISED:  [insert date]

**Jury Instruction # 18**
**Protection for Publishing and Expressive Activity±**

*[± Defendants' proposal in blue text; Breathitt's proposal in red text.]*

### (1)    Instruction # 18-D (Defendants' Proposed Instruction)

Defendants in this case are providers of online platforms that publish their own content and content generated by users.  The U.S. Constitution's First Amendment, as well as a federal law called Section 230, provide certain protections for Defendants when they publish such content or otherwise engage in expressive activity.

Under Section 230, Defendants are not liable when they act as publishers of "third-party content"—that is, content posted by the users of Defendants' platforms on those platforms.  Such "third-party content" includes words, messages, pictures, video, audio, comments, or any other form of communication that users post, whether publicly or privately, on the Defendants' platforms.  Each Defendant cannot be found liable under Section 230 for publishing third-party content on its platform, including whether, how, when, and to whom that content is published.

Under the First Amendment, each Defendant is not liable for exercising its right to speak or engage in expressive activity. That means each Defendant cannot be found liable for making available the content displayed on its platform, such as posts, text, videos, images, music, comments, and "likes," as well as recommending, delivering, displaying, compiling, ranking, and organizing posts, comments or other content made by users of its platform.

The Court has ruled that these legal protections apply to certain types of Defendants' conduct that are "Protected Conduct" and cannot be the basis for finding any Defendant liable.

"Protected Conduct" includes making user content or communications available on Defendants' platforms.  You may not find any Defendant liable on the basis of user content (e.g., posts) or communications (e.g., messages) published on the Defendant's platform—whether shared privately between users or shared publicly to a broader audience.  In other words, if you find that user content or communications on a Defendant's platform caused some or all of the harms to students alleged by Breathitt, you may not find the Defendant liable on the basis of that user content or communications.

"Protected Conduct" also includes a Defendant's publishing decisions.  You may not find any Defendant liable on the basis of its decisions about whether and how to compile, disseminate, or display content to its users.  This protection applies even when a Defendant uses technological tools, like an algorithm that recommends content to users.

"Protected Conduct" also includes specific design features of each Defendant's platforms that the Court has already ruled are protected by Section 230 and/or the First Amendment and cannot be the basis for finding any Defendant liable.

Therefore, you may not find any Defendant liable on the basis of any of the following "Protected Conduct":

1.  Making third-party content available on a Defendant's platform;

2.  Making decisions about whether and how to recommend, compile, organize, disseminate, and display content to users of a Defendant's platform;

3.  Using of algorithms to encourage users to spend more time on a platform, including the use of algorithms to display content;

4.  Providing users with an endless feed or infinite scroll;

5.  Providing informational messages, notifications, or alerts about third-party content or a Defendant's own content, including the timing and clustering of those notifications and regardless of how they are sent (i.e., audiovisually or through vibrations);

6.  Not placing default protective limits on the length and frequency of use sessions;

7.  Making decisions about whether or not to institute blocks preventing use of a platform during certain times of day (such as during school hours or late at night);

8.  Making decisions to recommend certain accounts to certain users;

9.  Providing content in short-form or ephemeral formats (i.e., formats that disappear after a certain period of time);

10. Allowing users to post or provide comments or to receive comments posted by others;

11. Allowing users to exchange, send, or post private content;

12. Publishing geolocating information (i.e., information about users' locations) for users;

13. Using autoplay features (i.e., videos playing automatically after a video ends);

14. Displaying "Likes" or listing the number of "Likes" certain content has received; and

15. Providing awards to users, including to frequent users or for continuous engagement with a Defendant's platform.

Therefore, in evaluating whether Breathitt has met its burden to satisfy the elements of a claim as to each Defendant, you <u>may</u> consider only "Non-Protected Conduct," which consists only of the Defendant's design and/or use of the following:

*["Non-Protected Conduct" list to be completed after ruling on MSJ and other motions and based upon case-specific evidence, but not to exceed the below list.]*

1.  Options for users to self-restrict time spent using a platform;

2.   The process for users to delete their accounts;

3.   Labels for filtered content;

4.   Appearance-altering filters; and

5.   Processes for users to report suspected child sexual abuse materials to Defendants' platforms.

You may impose liability, if any, only if the harm is caused by this Non-Protected Conduct and the other elements of each claim are met.  You may not find any Defendant liable on the basis that the Defendant's platform as a whole caused harm.  It is Breathitt's burden to prove that any harm it allegedly suffered was caused by Non-Protected Conduct.

### (2)   Instruction # 18-P (Plaintiff's Objection and Proposed Instruction)

In this case, you may not hold Defendants liable simply because Defendants hosted or published users' content, or because they removed or failed to remove content posted by users.

However, in deciding whether Defendants are liable for negligence or public nuisance, you may hold Defendants liable for their own actions, even if users' content contributed to the harm, so long as Defendants' actions were a substantial factor in causing Breathitt's harm. You may also hold Defendants liable for failing to warn about the risks of harm caused by their platforms even if users' content contributed to the harm, so long as Defendants' failure to warn was a substantial factor in causing Breathitt's harm.

PLAINTIFF'S AUTHORITY:        N/A

DEFENDANTS' AUTHORITY:        47 U.S.C. § 230(c)(1); *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 702 F. Supp. 3d 809, 825–37 (N.D. Cal. 2023) (outlining relevant protections under Section 230 and the First Amendment); *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 754 F. Supp. 3d 946, 962–64 (N.D. Cal. 2024) (same, for school districts' claims); *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 878–85 (N.D. Cal. 2024) (same, for state attorneys general claims); *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1107 (9th Cir. 2009), *as amended* (Sept. 28, 2009) (holding that Section 230 "precludes liability when the duty the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a publisher or speaker"); *id.* at 1102 (publication "involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content"); *Estate of Bride by and through Bride v. Yolo Technologies, Inc.*, 112 F.4th 1168, 1180 (9th Cir. 2024) (Section 230 precludes failure-to-warn theories that fault platform "for not mitigating, in some, way, the harmful effects of . . . content"); *Doe v. Grindr*, 128 F.4th 1148 (9th Cir. 2025) (similar); U.S. Const. Amend. 1; *Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) ("If the acts of 'disclosing' and 'publishing' information do not constitute speech, it is hard to imagine what does fall within that category[.]"); *NetChoice, LLC v. Bonta*, 113 F.4th 1101, 1119 (9th Cir. 2024) (holding law that would require platforms to "opine on potential speech-based harms to children" was subject to strict scrutiny and was likely invalid); *NetChoice v. Carr*, 789 F. Supp. 3d 1200 (N.D. Ga. June 26, 2025) (holding that age verification requirement "imposes a

sweeping burden on adults' access to speech"); *Students Engaged in Advancing Texas v. Paxton*, 765 F. Supp. 3d 575, 559–600 (W.D. Tex. 2025) (similar); *NetChoice, LLC v. Griffin*, 2025 WL 978607, at *13 (W.D. Ark. Mar. 31, 2025) (similar).


DATE SUBMITTED:    January 28, 2026

DATE REVISED:      [insert date]

1    **BREATHITT'S POSITION**

2    Plaintiffs' proposal accurately instructs the jury that it cannot impose liability on

3    Defendants for hosting or publishing users' content, or for removing or failing to remove content

4    posted by users. It also explains that Defendants may be held liable for their own actions,

5    including failing to warn of known risks from the platform as a whole, even if content is in the

6    causal chain. That latter instruction is in keeping with the Court's past rulings.[3] It is in keeping

7    with the parties' longstanding understanding of the Court's past rulings.[4] And it is in keeping with

8    binding Ninth Circuit precedent. *See Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 744 (9th Cir.

9    2024) ("In *Internet Brands*, the platform faced liability not because it failed to remove the ads,

10   but because it failed to warn about their content. Thus, Plaintiffs' claims may fare better if they

11   sought to impose liability on Meta for failing to warn about fraudulent content….").

12   By contrast, Defendants' obtuse and bloated instruction invites the jury to apply the wrong

13   Section 230 test and disregard evidence the Court may deem admissible. It has three problems.

14   First, the instruction improperly tells the jury that Defendants "are not liable when they act as

15   publishers of 'third-party content.'" This is wrong. Section 230 protection hinges on the *legal*

16   *duties* being imposed, not whether or not Defendants act as publishers. *See e.g.*, *Lemmon v. Snap,*

17   *Inc.*, 995 F.3d 1085, 1092–93 (9th Cir. 2021); *Calise*, 103 F.4th at 740-42. The duties at issue in

18   this case are, roughly, (a) a duty to warn students, parents, and school districts about the risk of

19   compulsive and addictive use from Defendants' platforms; (b) a duty not to negligently design

20   and target at young people platforms with defective age verification, parental controls, and other

21   _____

22   [3] ECF 430 at 20 (failure to warn claims "plausibly allege that defendants are liable for conduct other than publishing of third-party content and that they could address their duty without changing what they publish"); ECF 716 at 4-5 ("based on" Court's motion to dismiss ruling, "particularly with respect to Claims 2 and 4, the scope of discovery in this matter encompasses all product defects alleged"); ECF 1214 at 45 (Section 230 does not "bar[] liability predicated on a failure to warn of known risks of addiction attendant to any platform features or as to platform construction in general"); ECF 1267 at 14 (same); Hearing Tr. 27:24-28:9, Nov. 16, 2023 (affirming that the failure to warn claim extends beyond features barred by Section 230 for the product liability claims); Hearing Tr. 33:22-34:23, Mar. 21, 2024 (Judge Kang: "the Claims 2 and 4 were not dismissed and on the face of it keep any and all of the alleged defects in the case. That's the way I read the order.").

27

28   [4] *See, e.g.*, Br. For Meta at 2, *California et al. v. Meta*, No. 24-7037 (9th Cir. Mar. 31, 2025) (Court permitted "plaintiffs' failure to warn claims relating to certain platform features to proceed, even though . . . other claims as to the same features are barred by Section 230").

1   Court-specified features, *see* ECF 430 at 14-15; and (c) a duty not to interfere with the public

2   rights to health, safety, and education through the foregoing actions. None of these duties would

3   require Defendants to monitor or remove third-party content, or change how they publish content.

4   As such, claims based on these duties are not protected by Section 230. *See Calise*, 103 F.4th at

5   741.

6          Second, Defendants' instruction includes an instruction on "protected" versus "non-

7   protected" features that is both confusing and legally incorrect. Under the Court's pretrial rulings,

8   Defendants are protected from a state law duty to modify certain features such as their

9   recommendation algorithm. But Section 230 does not protect Defendants from a duty to warn of

10  known risks attendant to use of those same features. That duty *would* require Defendants to put

11  others on notice of known harms, but it *would not* require Defendants to change anything about

12  how, what, or when they publish. *See Internet Brands, Inc*., 824 F.3d at 851; *see also Est. of*

13  *Bride by & through Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1179 (9th Cir. 2024) (no Section

14  230 protection where "online content is involved in these facts, and content moderation is one

15  possible solution for [defendant] to fulfill its promise, [but] the underlying duty . . . is the promise

16  itself").

17         Third, Defendants' instruction erroneously asks the jury to disregard whole categories of

18  evidence *even if* the Court deems it admissible for certain purposes. *See* Defs' Instruction ("you

19  <u>may</u> consider only "Non-Protected Conduct"). Facts that are not independently actionable may

20  still be evidence in support of other claims. *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods.*

21  *Liab. Litig*., 497 F. Supp. 3d 552, 633 n.61 (N.D. Cal. 2020). This principle extends to cases

22  involving Section 230. *Calise*, 103 F.4th at 742 ("How could Internet Brands warn about certain

23  harmful content without considering what it was? Such a rudimentary fact-bound inquiry quickly

24  falls apart and runs up against our precedent."). Accordingly, the jury may properly hear evidence

25  about the various mechanisms through which Defendants fostered compulsive use, their corporate

26  knowledge about the same, and the resulting harm to students and school districts.

27         Finally, Judge Kuhl has indicated a First Amendment instruction would be improper, as

28  the scope of protection is not a jury question, and the Court should take the same approach here.

1    **DEFENDANTS' POSITION**

2        The Court has already ruled that Section 230 and the First Amendment impose a

3    "significant limitation on Plaintiffs' theories of recovery."  *See* ECF 1267 ("SD Order") at 2.  To

4    give effect to these rulings, the Court must instruct the jury on which conduct may—and may

5    not—form the basis of liability.  Defendants' proposed Instruction identifies the specific features

6    and activities that this Court has already held are protected as a matter of law, as well as those

7    that may form the basis of liability.  Without that specificity, the instructions would improperly

8    invite the jury to find a Defendant liable for conduct that is "no longer part of this case." [5]

9        Breathitt's proposed Instruction disregards the Court's "feature-by-feature" analysis

10   altogether and does not even mention any of the features or activities this Court held are

11   protected.  SD Order at 12; *also* ECF 430 ("PI Order") at 14-16.  Breathitt's Instruction would

12   thus improperly require the jury to determine on its own which features are protected, rather than

13   applying this Court's answers to those legal questions.  *See Tortu v. L.V. Metro. Police Dep't*, 556

14   F.3d 1075, 1085 (9th Cir. 2009) (courts must resolve legal questions and instruct the jury

15   accordingly).  It creates a risk of confusing the jury into thinking *none* of Defendants' conduct is

16   protected.  *See L.A. Memorial Coliseum Comm'n v. Nat'l Football League*, 726 F.2d 1381, 1398

17   (9th Cir. 1984) ("Well-tailored and specific instructions" necessary where "abstract legal

18   principles are not self-explanatory to a lay jury" and facts "are complex.") (citation omitted).

19       Breathitt's misguided assertion that its failure-to-warn theory renders the distinction

20   between protected and unprotected conduct irrelevant fails for numerous reasons.  First, a

21   substantial body of case law has emerged since the Court's prior rulings confirming that Section

22   230 bars failure-to-warn claims that arise from protected publishing activity, including challenged

23   features.[6]  *See, e.g., Doe v. Grindr*, 128 F.4th 1148, 1154 (9th Cir. 2025); *Estate of Bride by and*

24   *through Bride v. Yolo Technologies, Inc.*, 112 F.4th 1168, 1179–80 (9th Cir. 2024); *Doe (K.B.) v.*

---

25   [5] Defendants reserve the right to argue for the exclusion at trial of any evidence of content and

26   protected publishing features.

27   [6] In light of this intervening authority, Defendants did not include failure to warn in their list of
     non-protected conduct.  Defendants omitted age verification from the list for similar reasons.  *See,*

28   *e.g., NetChoice v. Carr*, 789 F. Supp. 3d 1200, 1230 (N.D. Ga. 2025).

1    *Backpage.com, LLC*, 768 F. Supp. 3d 1057, 1067 (N.D. Cal. 2025). *Calise*, 103 F.4th at 743,

2    746, is not to the contrary, because that case did not involve any failure- to-warn claims at all, and

3    it held that Section 230 barred all of the plaintiff's non-contractual claims. *See id.* at 743, 746.

4    Further, *Calise*'s discussion of failure-to-warn claims is *dicta*—not binding precedent—and it is

5    inconsistent with the Ninth Circuit's subsequent decisions in *Bride* and *Grindr*. In any event,

6    even if the Court permits the failure-to-warn claim to proceed in its entirety, the jury still could

7    not find liability for any damages caused by protected conduct; it could find liability only for

8    damages caused by failing to warn about that protected conduct.[7] Breathitt's proposal ignores

9    that distinction and renders the vast majority of the Court's rulings null.

10        Breathitt's proposal is also erroneous because it states that the jury "may hold Defendants

11    liable for their own actions, even if users' content contributed to the harm, so long as Defendants'

12    actions were a substantial factor in causing Breathitt's harm." This Instruction ignores this

13    Court's rulings that many categories of "Defendants' actions" are protected publishing conduct

14    that cannot form the basis of liability. *See* SD Order at 14; PI Order at 5, 22. Further, Breathitt's

15    Instruction invites error by encouraging the jury to hold Defendants liable for harms where

16    unprotected conduct is involved in any way, however minimally, in the causal chain. But claims

17    against online platforms like Defendants must be "*fully independent of* [their] role in monitoring

18    or publishing third-party content." *Lemmon*, 995 F.3d at 1093 (emphasis added); *Grindr*, 128

19    F.4th at 1153 n.3 (same; it is "analytically insignificant whether [the plaintiff's] injuries would

20    not have occurred 'but for' [a platform's] role as a publisher"); *see* PI Order at 11 (requiring

21    claims "ha[ve] *nothing to do*" with platform's role as publisher (emphasis added)).

22        Finally, because the Section 230 and the First Amendment protections cut across all of

23    Breathitt's claims, Defendants submit that this instruction must be placed early in the instructions

24    to give important context to the remaining instructions. Placing it near the end, as Breathitt

25    proposes, would risk confusing the jury into erroneously concluding that Section 230 and the First

26    Amendment are distinct issues that do not affect the framing of Breathitt's claims.

27

28

---

[7] If the Court permits the jury to hold Defendants liable for failure to warn about protected conduct, the proper approach would be to add failure to warn to the list of non-protected conduct.

**Transition Instruction**

The Court will now explain the substantive law applicable to the claims and defenses brought in this action.  These include Breathitt's negligence claim and public nuisance claims, and Defendants' affirmative defenses of statute of limitations, comparative fault, and failure to mitigate.

AUTHORITY:              Standing Order, § 3(g)(ii)(B) (modified to reflect the claims and defenses in this case).

DATE SUBMITTED:    January 28, 2026

DATE REVISED:        [insert date]

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (BREATHITT)
4:22-md-03047-YGR

## II.    FIRST CLAIM – NEGLIGENCE

**Jury Instruction # 19**
**First Claim - Negligence±**

*[± Defendants' proposal in blue text; Breathitt's proposal in red text.]*

Breathitt claims that Defendants were negligent and that it was harmed by Defendants' negligence.  The term "negligence" means the failure to exercise ordinary care.  A Defendant may be negligent by acting or by failing to act.  The term "ordinary care" means such care as the jury would expect an ordinarily prudent person or company engaged in the same type of business to exercise under similar circumstances.

To establish its negligence claim against a Defendant, Breathitt must prove by a preponderance of the evidence each of the following:

1. That the Defendant's Non-Protected Conduct breached the duty to use ordinary care;

2. That such breach caused Breathitt's students to suffer mental health harms; and

3. That those students' harms caused Breathitt to incur additional expenses it claims as damages.

In determining whether each Defendant was negligent, you must consider only if that Defendant failed to act as an ordinarily careful person or company would act under the circumstances with respect to the specific Non-Protected Conduct at issue.  You may not make your determination based on consideration of any Protected Conduct, even if you determine that it was wrongful.

It was Defendants' duty to exercise the degree of care and skill ordinarily expected of a reasonably prudent, safe, and competent company acting under the same or similar circumstances. You must decide how an ordinarily careful person or company would act under these circumstances.

Breathitt must prove by a preponderance of the evidence:

1. That the Defendants failed to comply with their duty to use ordinary care in one or more ways, including—but not limited to—the following:

   a. By not providing the warnings that a reasonably prudent, safe, and competent company would have provided; or

   b. By designing, operating, and/or marketing their social media platforms in a way that caused minors to experience problematic use, compulsive use, and/or addiction; or

c.  By deliberately targeting school-aged children, knowing of the impact that doing so could have on schools; or

d.  By not designing, operating, and/or marketing their social media platforms as a reasonably prudent, safe, and competent company would have done.

2.  That the Defendants' failure or failures to use ordinary care were a substantial factor in causing Breathitt to suffer harm or harms.

3.  As a result of these harms, Breathitt incurred expenses and/or the diversion of time and resources which it claims as damages.

If you do not believe from the evidence that the following are more likely than not to be true, you will find for Defendants on Breathitt's negligence claim.

PLAINTIFF'S AUTHORITY:        As there is no pattern instruction for this specific situation, this instruction is based on language adapted from pattern negligence instructions in Cetrulo, Kentucky Instructions to Juries – Civil (Palmore) §§ 16.05 (Pedestrians; walking on Left Side Facing Traffic; Nighttime Collision; Comparative Fault); 23.01 (Liability of Physician or Surgeon to Patient; Standard of Care); 31.11 (Negligent misrepresentation; alternate form); *see also Clark v. Hauck Manufacturing Company*, 910 S.W.2d 247, 251 (Ky. 1995) (holding that a party is entitled to a jury instruction regarding every duty owed to that party that is supported by the facts entered into evidence.  Definitions of terms are provided in Cetrulo, Kentucky Instructions to Juries – Civil (Palmore) §§ 14.04 (Ordinary Care; Conduct of Business).

DEFENDANTS' AUTHORITY:       Cetrulo, Kentucky Instructions to Juries – Civil (Palmore) §§ 14.01 (Ordinary Care; Adults Generally) and 14.04 (Ordinary Care; Conduct of Business) (defining "ordinary care" consistent with this Instruction); *Brotherton v. Victory Sports, Inc*., 24 F. Supp. 3d 617, 620 (E.D. Ky. 2014) (defining ordinary negligence (as opposed to gross negligence) under Kentucky law as "the absence of ordinary care"); *Lowe v. Commonwealth*, 181 S.W.2d 409, 412 (Ky. 1944); *Patton v. Bickford*, 529 S.W.3d 717, 729 (Ky. 2016) ("The elements of a negligence claim are (1) a legally-cognizable duty, (2) a breach of that duty, (3) causation linking the breach to an injury, and (4) damages.").

The substantive law expressed in this Instruction is also generally consistent with the substantive law expressed in the instructions in *Embry v. Wal-Mart Stores, Inc*., No. 3:00CV-456-H (W.D. Ky. Jan. 8, 2002) (instructing, "If you are satisfied from the evidence that Defendant failed to exercise ordinary care to maintain its premises in a reasonably safe condition, and that this failure was a substantial factor in causing Plaintiff to fall and sustain injury, then you will find for Plaintiff. Otherwise, you will find for Defendant.") and *Logan v. ERMC Prop. Mgmt. Co. of Ill., LLC*, No. 3:09-CV-844-S (W.D. Ky. Apr. 15, 2013) (instructing, "In order to find for Barbara Logan, you must be satisfied from the evidence that The Mall's premises were not in a reasonably safe condition for public use because there was a foreign substance located on the floor that caused Barbara Logan to fall and suffer injuries. Otherwise, you will find for The Mall.") (at https://www.kywd.uscourts.gov/jury-info/jury-instructions, last visited Jan. 13, 2026).

DATE SUBMITTED:    January 28, 2026

DATE REVISED:    [insert date]

1    **BREATHITT'S POSITION**

2          Breathitt's proposed instruction adapts pattern negligence instructions. *See* Cetrulo

3    Kentucky Instructions to Juries - Civil §§ 16.05, 23.01, 31.11.

4          **Elements.** Breathitt's instruction is preferable because it (1) explains that a failure to warn

5    is negligence; (2) lists the duties alleged to have been breached; (3) does not improperly limit

6    Breathitt's theory of harm; and (4) does not include improper Section 230 language.

7          **Failure to Warn Theory.** Because Breathitt's negligence claim includes failure to warn,

8    the jury should be instructed on it, as Breathitt proposes. *E.g. Clark v. Hauck Mfg. Co.*, 910

9    S.W.2d 247, 251 (Ky. 1995) ("[A] party is entitled to a jury instruction in every duty supported

10   by the facts entered into by the evidence.") (overruled on other grounds).

11         **Enumerated Breaches.** Breathitt's instruction is superior because it identifies Breathitt's

12   specific theories of breach. These theories track this Court's prior rulings and tie the instructions

13   to the case alleged, making the instruction easier for the jury to apply to the evidence they will

14   hear at trial. *See* ECF 1267 at 26, 34. It also aligns with Kentucky law by instructing on each duty

15   alleged to have been breached. *See Oghia v. Hollan*, 363 S.W.3d 30, 33 (Ky. Ct. App. 2012)

16   (court may "instruct on separate duties of care" where the "evidence support[s]" multiple duties).

17   Because there are multiple duties that Breathitt claims Defendants breached, Kentucky permits

18   instructing juries that there are multiple theories of negligence to ensure a fair result. This is

19   different from merely listing all ways that Defendants breached the same duty of care.

20         **Improper Limitation to Mental Health Harms.** Defendants improperly suggest that

21   they are only alleged to have harmed students' mental health, and that Breathitt's harm is entirely

22   derivative of that harm. This is contrary to the Court's prior order, which allowed Breathitt's

23   claims for harms that included damages from "disruption to the school environment" to proceed.

24   ECF 729 at ¶ 194; *see* ECF 1267 at 25-26. Defendants' instruction will mislead the jury into

25   believing that mental health harms to students are the only harm to which liability may attach.

26         **Repeated Section 230 Instruction.** Defendants' repetition of the phrases "Non-Protected

27   Conduct" and "Protected Conduct" throughout their instructions is prejudicial, misstates the law,

28   and unduly emphasizes one affirmative defense. Defendants use "Non-Protected Conduct" *ad*

1    *nauseam* in their instructions: Breathitt (29), Charleston (45), DeKalb (15), Harford (25),

2    Irvington (53), Tucson (20). "Repetitious instructions which place undue emphasis on matters

3    favorable to either side constitute reversible error," *Flentie v. Am. Cmty. Stores Corp.*, 389 F.2d

4    80, 83 (8th Cir. 1968), and the repetition here exceeds what courts have found prejudicial, *e.g.,*

5    *Mack v. Precast Indus., Inc.*, 369 Mich. 439, 448 (1963) (reversible error where burden of proof

6    was repeated 16 times); *see also United States v. Schilleci*, 545 F.2d 519, 526 (5th Cir. 1977)

7    (reversible error where trial court likely caused "undue concentration on a specific paragraph" of

8    instructions); *United States v. Jones*, 353 F.3d 816, 819 (9th Cir. 2003) (cautioning against

9    "overemphasis of isolated parts" of jury instructions). Because the improper Section 230

10    instruction permeates the entire set, any error is unlikely to be harmless. *See Sidibe v. Sutter*

11    *Health*, 103 F.4th 675, 705 (9th Cir. 2024) (court must consider "cumulative error" in deciding

12    whether error in instructions was harmless).

13       Defendants' repetition of this tendentiously-defined term also violates the mandate that

14    jury instructions should be "simple" and "use language that laypersons can understand." Manual

15    on Complex Lit., Fourth, § 12.431. By requiring the reader to turn to the definition repeatedly,

16    defined terms introduce excessive ambiguity. This concern is magnified where, as here, the

17    definition itself is "cumbersome" (spanning 3 full pages). *See LG Philips LCD Co. v. Tatung Co.*

18    *of Am.*, 2005 WL 6219893, at *4 (C.D. Cal. May 5, 2005).

19       Plaintiffs' approach is sufficient and respects the presumption that jurors will "carefully

20    follow" an instruction once it is given. *Francis v. Franklin*, 471 U.S. 307, 324 (1985). That is

21    why courts generally do not instruct on statute of limitation and preemption and then use the

22    phrase "non-time-barred non-preempted conduct" throughout the instruction set.

23       Plaintiffs propose that, following a single instruction on immunity, the Court should

24    simply refer to Defendants' "conduct" as it gives remaining instructions, removing further

25    references to "Non-Protected Conduct" or "Protected Conduct." *See infra* [Section 230].

26

27

28

**DEFENDANTS' POSITION**

Defendants' proposed Negligence Instruction as to the elements of Breathitt's negligence claim is consistent with Kentucky case law and federal court jury instructions. "The elements of a negligence claim are (1) a legally-cognizable duty, (2) a breach of that duty, (3) causation linking the breach to an injury, and (4) damages." *Patton v. Bickford*, 529 S.W.3d 717, 729 (Ky. 2016). When delineating negligence elements in jury instructions, Kentucky courts "couch[]" negligence "in terms of duty." *Rogers v. Kasdan*, 612 S.W.2d 133, 136 (Ky. 1981). Accordingly, Kentucky courts substitute the word "negligence" with the phrase "ordinary care." *See, e.g.*, *Embry v. Wal-Mart Stores, Inc*., No. 3:00CV-456-H, at 3 (W.D. Ky. Jan. 8, 2002) (at https://www.kywd.uscourts.gov/jury-info/jury-instructions) (jurors should consider whether "Defendant *failed to exercise ordinary care* to maintain its premises in a reasonably safe condition") (emphasis added).

Contrary to Breathitt's argument that Defendants' Instruction is improperly limited to mental health harms, Defendants' language is aligned with the Court's order defining the "proximate cause" element of Breathitt's negligence claim. *See* SD Order (ECF 1267) at 13–14 (limiting Defendants' actionable conduct to the non-protected features of Defendants' platforms, as determined by the Court); *id.* at 26 (defining Breathitt's proximate cause theory as (1) "defendants' [non-protected] conduct deliberately fostered compulsive use of their platforms" and (2) that compulsive use "caused the plaintiff school districts to respond by expanding resources"); *see also Patton*, 529 S.W.3d at 730 (Kentucky's causation "consists of two distinct components: 'but for' causation[] . . . and proximate causation.").

**Objectionable Language.** Breathitt's proposed Negligence Instruction sets out a non-comprehensive list of ways by which Breathitt contends Defendants may have failed to exercise their duty to use ordinary care. However, in *Rogers v. Kasdan*, 612 S.W.2d 133, 136 (Ky. 1981), the Supreme Court of Kentucky held that providing such a list in a negligence jury instruction is improper and prejudicial:

> [I]nstructions should not make a rigid list of ways in which a defendant must act in order to meet his duty. … In the instant case, the listing of various means by which the plaintiff contended the hospital failed to exercise the proper standard of care

49

1
2
3

begged the jury to find some minor or technical error.  It could have given them the false impression that unless all these procedures were complied with exactly, the hospital breached its duty.  The effect of the instruction was to demand more of the hospital than the law requires.

4
5
6
7
8
9
10
11
12
13
14
15

Moreover, the above list provided in Breathitt's Negligence Instruction includes numerous assertions that are inaccurate, argumentative, or prejudicial.  For example, Breathitt includes examples regarding Defendants' purported failure to warn, but Defendants object to any instruction to the jury about Breathitt's failure to warn theory because it is not legally viable. Defendants have no duty to warn Breathitt, students, or parents for which Breathitt can recover. Further, Breathitt's list includes purported failures that "caused minors to experience problematic use, compulsive use, and/or addiction"; however, a Defendant did not breach its duty of ordinary care to Breathitt simply because students experienced harm.  The breach must have resulted in economic harm to the school district.  Additionally, Breathitt's description of the Defendants as "deliberately targeting school-aged children" is particularly argumentative, biased, and incorrect. There is nothing inherently wrongful about targeting a group of users.  Charging the jury with such an instruction would prejudice Defendants.

16
17
18
19
20

**Separate Defendants.**  Breathitt's proposed Instruction lumps the Defendants together and invites the jury to do the same, rather than instructing the jury that each Defendant must be evaluated separately.  "To prove liability, [a plaintiff] must show that *each defendant* both violated the standard of care and that the violation caused [the plaintiff's] injuries."  *Mullins v. Appalachian Reg'l Healthcare, Inc.,* 707 S.W.3d 1, 8 (Ky. Ct. App. 2025) (emphasis in original).

21
22
23
24
25
26

**Non-Protected Conduct.**  Breathitt's proposed Instruction also inappropriately invites the jury to consider all of Defendants' conduct, even conduct that the Court has ruled cannot form the basis of liability on the basis of Section 230 and the First Amendment.  *See* SD Order at 2, 12–14; PI Order at 14.  Defendants' "Non-Protected Conduct" language helps jurors understand the proper scope of their negligence analysis, which Breathitt's proposed language does not do. Defendants' "Non-Protected Conduct" language should, therefore, be included.

27
28

**"Social Media."**  Defendants object to the use of "social media" to describe their platforms, as YouTube and Snap disagree with that characterization, which will be a trial issue.

50

III.    **SECOND CLAIM – PUBLIC NUISANCE**

**Jury Instruction # 20**
**Second Claim – Public Nuisance±**

*[± Defendants' proposal in blue text; Breathitt's proposal in red text.]*

**Elements**

Breathitt claims that Defendants created and maintained a public nuisance. A public nuisance is an unreasonable and substantial interference with a right common to the general public. To establish its claim against a Defendant, Breathitt must prove by a preponderance of the evidence that the Defendant's Non-Protected Conduct created an unreasonable and substantial interference with a public right to health and safety. Breathitt must prove by a preponderance of the evidence that the Defendant's conduct created or was a substantial factor in creating an unreasonable interference with a right common to the general public.

A right common to the general public is distinct from a private right. A right common to the general public is collective in nature and not like the individual right that everyone has not to be assaulted or defamed or defrauded or negligently injured. Breathitt claims Defendants interfered with the public right to health, safety, and/or education.

**Unreasonable and Substantial Interference**

In determining whether a Defendant's interference with a public right is unreasonable, you should take into consideration all of the circumstances of the case as shown by the evidence, including the lawful nature of the Defendant's conduct; the manner of the Defendant's conduct; the importance and influence of the Defendant's conduct on the growth and prosperity of the public (including Breathitt); the kind, volume and duration of the interference with a public right to health and safety (if any); the respective situations of the parties; the utility or benefit to the Defendant and the degree of harm caused to Breathitt; and such alternatives to the Defendant's conduct as were reasonably available to the Defendant. No one of these factors is conclusive, but all are to be considered together and in relation to all of the surrounding circumstances.

In determining whether a Defendant's interference with a public right is substantial, you should consider that a nuisance depends on its effect upon persons of ordinary health and average sensibilities, and not on its effect upon persons who are delicate or supersensitive.

A Defendant's conduct is an unreasonable interference with a public right if any of the following is true:

(1) The conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort, or the public convenience;

(2) The conduct is prohibited by a statute, ordinance, or administrative regulation; or

(3) The conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the Defendant knows or has reason to know, has a significant effect on the public right.

PLAINTIFF'S AUTHORITY:    *Roberie v. VonBokern*, No. 2004-SC-000250-DG, 2006 WL 2454647, at *3–4 (Ky. Aug. 24, 2006), as modified (Dec. 21, 2006) (quoting Restatement Second, Torts § 821B & cmt. g); *see also Maum v. Com.*, 490 S.W.2d 748, 749–50 (Ky. 1973); *Nuchols v. Com.*, 312 Ky. 171, 173, 226 S.W.2d 796, 798 (1950); *City of Ludlow v. Com.*, 247 Ky. 166, 56 S.W.2d 958, 959 (1933).

DEFENDANTS' AUTHORITY:    Kentucky courts have not previously recognized the type of public nuisance claim asserted here.  *See* Order Granting in Part and Denying in Part Motion to Dismiss School District and Local Government Entities Claims of Public Nuisance ("Second SD Order") at 4 (ECF 1332).  Nevertheless, this Instruction includes elements and factors considered for other nuisance claims recognized under Kentucky law from the Kentucky Model Instructions §§ 48.01–48.05.  *See, e.g.,* Cetrulo, Kentucky Instructions to Juries – Civil (Palmore), § 48.01 (Industrial Noise; Permanent Condition; Damages) ("that such noise would cause substantial annoyance to a person of ordinary health and normal sensitivities occupying her home …. In determining whether such annoyance (if any) is unreasonable you shall take into consideration all of the circumstances of the case as shown by the evidence, including the lawful nature and location of D's refinery; the manner of its operation; its importance and influence on the growth and prosperity of the community; the kind, volume and duration of the noise (if any)"); *see also id.* § 48.05 (Damage from Surface Water; Temporary Condition; Damages) ("In determining whether such change in the flow of surface water (if any) is unreasonable you shall take into consideration all of the circumstances of the case, including the utility or benefit to D's property and the degree of harm thereby caused to P's property; … such alternative methods of construction or drainage as were reasonably available to D ….").

*Roberie v. VonBokern*, No. 2004- SC-000250-DG, 2006 WL 2454647, at *3–4 (Ky. Aug. 14, 2006), as modified (Dec. 21, 2006); Restatement (Second) of Torts § 821B (1979), 822, 826–831 (1979); Restatement (Third) of Torts: Liability for Economic Harm § 8 (Public Nuisance Resulting in Economic Loss); *Commonwealth v. S. Covington & C. St. Ry. Co.*, 205 S.W. 581, 583 (Ky. 1918) (citing Joyce on Nuisance, § 476) ("The injurious consequences or nuisance complained of should be the *natural, direct, and proximate cause* of defendant's acts to render him liable for maintaining a public nuisance, for it is a good defense that the tortious act was committed by other or third parties; and if the injurious results flow from acts done by others operating on the alleged nuisancer's acts, so as to produce such results, then he is not liable.") (emphasis added); *see also Louisville Ref. Co. v. Mudd*, 339 S.W.2d 181, 185 (Ky. 1960) (referring to nuisance as "substantial and unreasonable in degree" if it "produce[s] actual physical discomfort and annoyance to a person of ordinary sensibilities"); *Se. Coal Co. v. Combs*, 760 S.W.2d 83, 84 (Ky. 1988) (explaining that "one who contributes to a nuisance is responsible in damages and/or diminution of market value only to the extent of his contribution"); *Petroleum Ref. Co. v. Commonwealth*, 232 S.W. 421, 423 (Ky. 1921) (stating that "[w]hether a particular annoyance is such as to constitute a nuisance depends on its effect upon persons of ordinary health and average sensibilities, and not on its effect upon persons who are delicate or supersensitive").

This Instruction also includes elements consistent with the Court's Second SD Order (ECF 1332) (citing the Restatement (Second) of Torts as defining public nuisance to be "an unreasonable interference with a right common to the general public" and listing the appropriate considerations; stating that a "public right is one common to all members of the general public" and that "public nuisance arises from interference with shared public resources"; stating that "the Court has found that plaintiffs have successfully established unreasonable interference with the public's right to health and safety").

DATE SUBMITTED:    January 28, 2026

DATE REVISED:        [insert date]

1    **BREATHITT'S POSITION**

2        As there is no pattern jury instruction for public nuisance, Plaintiffs have provided a bare

3    bones instruction based on well settled Kentucky law. By contrast, Defendants' proposed

4    instruction provides far more detail than is appropriate under Kentucky law. Kentucky has "long

5    employed the use of 'bare bones' jury instructions, avoiding an abundance of detail and providing

6    only a framework of the applicable legal principles." *Sutton v. Commonwealth*, 627 S.W.3d 836,

7    851 (Ky. 2021); *see also Norton Healthcare, Inc. v. Disselkamp*, 600 S.W.3d 696, 723 (Ky. 2020)

8    ("Trial courts are called upon to engage in a balancing effort to ensure that jury instructions

9    *provide only the bare minimum necessary* to ensure that the jury understands the ultimate issue of

10   fact to be decided in any case . . .." (emphasis added)). The less the jury knows about the law of

11   the case, the easier it is for them to remain strictly within the province of fact-finding. *Robinson v.*

12   *Murlin Phillips & MFA Ins. Co.*, 557 S.W.2d 202, 204 (Ky. 1977); *Reed v. Craig*, 244 S.W.2d

13   733, 735 (Ky. 1951). Further, jury "instructions should be simple, direct, and confined to the

14   specific factual issues raised by the pleadings and the evidence." Cetrulo Kentucky Instructions to

15   Juries – Civil § 13.10 Content of Instructions; *see also Stephens v. Broyles*, 225 S.W.2d 319, 321

16   (Ky. 1949) (Jury "instructions must be based upon or cover the issues raised by the pleadings and

17   proof."); *Barker v. Sanders*, 347 S.W.2d 529, 531 (Ky. 1961).

18       **Unreasonable Interference.** The parties propose competing explanations of the concept

19   of unreasonable interference under Kentucky nuisance law. Defendants' proposed instruction

20   includes language from inapposite pattern instructions involving industrial noise, harm to surface

21   water, and locations of refineries. By contrast, Breathitt proposes general instructions from

22   caselaw in a more straightforward manner that will be easier for the jury to apply.

23       **Supersensitivity.** Defendants request language designed to address cases where there is a

24   question as to whether the people impacted by the nuisance are delicate or hypersensitive (e.g., "a

25   nuisance depends on its effects upon persons of ordinary health and average sensibilities, and not

26   on its effect upon persons who are delicate or supersensitive."). Because Breathitt expects that

27   Defendants intend to introduce evidence that Breathitt and its students were highly vulnerable,

28   *see infra* [Eggshell Plaintiff/Aggravation of Pre-existing Condition], instructing the jury that a

nuisance is not judged from one who is particularly sensitive may mislead the jury into finding that Breathitt cannot have been injured by a nuisance. But Defendants have produced no evidence that the nuisance complained of is one that would affect only especially sensitive students or schools, or that despite other vulnerabilities, that Breathitt School District students are abnormally sensitive or delicate as compared to any school district. Rather, the evidence shows that Breathitt students are resilient, likely more so than the average school district student. Thus, the requested instruction is inappropriate and likely to mislead the jury.

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence]; *infra* [Section 230].

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (BREATHITT)
4:22-md-03047-YGR

1    **DEFENDANTS' POSITION**

2         Kentucky courts have not previously recognized the type of public nuisance claim

3    asserted by Breathitt.  Second SD Order (ECF 1332), at 4.  Nevertheless, Kentucky's Model

4    Instructions provide specific examples of public nuisances in Kentucky, which Defendants'

5    Instruction draws upon as appropriate.  Kentucky law on public nuisance generally follows the

6    Restatement (Second) of Torts.  *See Roberie v. VonBokern*, 2006 WL 2454647, at *3-4 (Ky. Aug.

7    24, 2006), *modified* (Dec. 21, 2006).  Defendants' Instruction closely follows the Court's public

8    nuisance language in the SD Order, which cites to the Restatement (Second) of Torts § 821B,[8]

9    and is consistent with the Restatement (Third) of Torts: Liability for Economic Harm § 8.

10        Defendants' Instruction expressly draws from applicable language from the types of

11   nuisance claims that are addressed in the Kentucky Model Instructions.  *See* Cetrulo, Kentucky

12   Instructions to Juries – Civil (Palmore) § 48.01 (instructing, "You will find for P[laintiff] if you

13   are satisfied from the evidence as follows: (a) that the noise from D[efendant]'s refinery units

14   *causes unreasonable and substantial annoyance* to P[laintiff]… ; (b) that such noise *would cause*

15   *substantial annoyance* to a person of ordinary health and normal sensitivies") (emphasis added).

16        Moreover, the factors that Defendants' Instruction identifies for the jury's consideration

17   when determining whether an interference with a public right is unreasonable are taken directly

18   from Kentucky Model Instructions and Kentucky law.  *See* Cetrulo, Kentucky Instructions to

19   Juries – Civil (Palmore) §§ 48.01–48.05.  For example, when determining whether a defendant's

20   interference is unreasonable, Kentucky Model Instruction Section 48.01 directs the jury to

21   consider "*all of the circumstances of the case as shown by the evidence*, including the *lawful*

22   *nature* and location of D's refinery; the *manner* of its operation; its *importance and influence on*

23

---

24   [8]  The Court defined public nuisance as "an unreasonable interference with a right common to the
     general public."  Second SD Order, at 2–3 (quoting Restatement (Second) of Torts § 821B

25   (1979)).  The Court also differentiated between a public right and a private right, noting that "[a]
     public right is one common to all members of the general public."  *Id.* at 21–22 (quoting

26   Restatement (Second) of Torts § 821B cmt. g)); *see also id.* at 22 ("Courts generally conform to
     this historical conception, that a public nuisance arises from interference with *shared* public

27   resources . . . .").  The Court found that Breathitt sufficiently pleaded an "unreasonable
     interference with the public's right to health and safety."  *Id.* at 23.

28

1   *the growth and prosperity of the community*; the *kind, volume and duration* of the noise (if

2   any)…." (emphasis added).  Additionally, Kentucky Model Instruction Section 48.05 directs the

3   jury to consider "*the utility or benefit* to D's property and the *degree of harm thereby caused* to

4   P's property; … *such alternative methods* … as were *reasonably available to D* …." (emphasis

5   added).  These are the same factors in Defendants' Instruction, which Breathitt fails to include.

6          Similarly, the language in Defendants' Instruction as to how the jury should determine

7   whether an interference is substantial is taken directly from Kentucky Model Instructions and

8   case law.  *See* Cetrulo, Kentucky Instructions to Juries – Civil (Palmore) § 48.01 ("would cause

9   substantial annoyance to a person of *ordinary health and normal sensitivities*") (emphasis added);

10  *Petroleum Ref. Co. v. Commonwealth*, 232 S.W. 421, 423 (Ky. 1921) ("[w]hether a particular

11  annoyance . . . constitute[s] a nuisance depends on its effect upon persons of *ordinary health and*

12  *average sensibilities, and not on its effect upon persons who are delicate or supersensitive*")

13  (emphasis added); *Louisville Ref. Co.*, 339 S.W.2d at 187 (same).  Breathitt's objection to

14  Defendants' inclusion of this "ordinary health and average sensibilities" language is misguided,

15  because, contrary to Breathitt's argument, the language does not concern the sensitivity level of

16  Breathitt or its students at all.  Rather, the language provides the jury with the appropriate

17  standard for them to evaluate whether a possible nuisance is substantial or not.

18          **Objectionable Language.**  Breathitt's Instruction incorrectly claims that there is a "public

19  right" to "education,"  and fails to cite any cases recognizing a public right to education

20  redressable through public nuisance law.  Nor has this Court held that Kentucky recognizes such

21  a right.  Second SD Order (ECF 1332), at 23.  Breathitt's Instruction also incorrectly invites the

22  jury to consider whether there was an interference with the "public peace, the public comfort, or

23  the public convenience."  Breathitt has not pled an interference with the "public peace, the public

24  comfort, or the public convenience," nor has it argued those interests as the basis for its claims.

25          **Non-Protected Conduct.**  Breathitt's Instruction reaches all of Defendants' conduct and,

26  thus, inappropriately invites the jury to consider conduct that cannot form the basis of liability

27  given the Court's rulings about Section 230 and the First Amendment.  *See* SD Order at 2, 12–14;

28  PI Order at 14.  Defendants' "Non-Protected Conduct" language should, therefore, be included.

## IV.     ADDITIONAL SUBSTANTIVE INSTRUCTIONS

### Jury Instruction # 21
### Causation - Generally±

*[± Defendants' proposal in blue text; Breathitt's proposal in red text.]*

#### (1)     Instruction # 21-D (Defendants' Proposed Instruction)

On both its negligence and public nuisance claims, Breathitt must prove by a preponderance of the evidence that each Defendant's Actionable Non-Protected Conduct caused the harms alleged by Breathitt. As used throughout these instructions, "Actionable Non-Protected Conduct" is Non-Protected Conduct that you find (1) breached the Defendant's duty to use ordinary care or (2) unreasonably and substantially interfered with a right common to the public right to health and safety. Each Defendant can be liable only for harm that you determine was caused by that Defendant's Actionable Non-Protected Conduct.

Breathitt bears the burden of proving that the Non-Protected Conduct of each Defendant was a cause of the alleged harm.

To prove causation, Breathitt must prove the existence of a direct, distinct, and identifiable nexus between a Defendant's Actionable Non-Protected Conduct and Breathitt's harm such that the harm would not have occurred "but for" that Defendant's Actionable Non-Protected Conduct. A Defendant's Actionable Non-Protected Conduct is not regarded as a cause of a harm if the particular harm would have occurred without the conduct.

Moreover, a Defendant's Actionable Non-Protected Conduct can only be a cause of Breathitt's alleged harm if you determine the conduct was a "substantial factor" in bringing about the harm.

To prove causation against a Defendant, Breathitt must also prove that its alleged harm was a foreseeable result of that Defendant's Actionable Non-Protected Conduct. A Defendant's Actionable Non-Protected Conduct should not be considered a cause if it is too remote or removed from Breathitt's harms in time, place, or foreseeability to reasonably impose liability upon the Defendant. Breathitt's harms are foreseeable only if they are the natural and probable consequence of a Defendant's Actionable Non-Protected Conduct.

#### (2)     Instruction # 21-P (Plaintiff's Proposed Instruction)

To find for Breathitt on either its negligence claim and/or its public nuisance claim, you must find that Defendants caused the harm that Breathitt alleges. There may be more than one cause of Breathitt's harm. If Defendants' conduct was one cause of many, you may find Defendants are liable for Breathitt's harm unless an action or inaction from another party was the sole cause of Breathitt's harm. Defendants may be liable unless Breathitt's harm could not have been reasonably foreseen as a natural, reasonable, and probable outcome of Defendants' conduct.

Defendants' conduct is a cause of Breathitt's alleged harms if the conduct was a "substantial factor" in bringing about the alleged harms.

PLAINTIFF'S AUTHORITY:    *Holland v. United Servs. Auto. Assn.*, 707 S.W.3d 541, 555-56 (Ky. Ct. App. 2025) (explaining substantial factor test and affirming use of substantial factor causation jury instruction); *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009); *Rogers v. Kasdan*, 612 S.W.2d 133, 136 (Ky. 1981).

DEFENDANTS' AUTHORITY:    *Patton v. Bickford*, 529 S.W.3d 717, 730 (Ky. 2016) ("Causation consists of two distinct components: 'but-for' causation, also referred to as causation in fact, and proximate causation."); *Outfront Media, LLC v. LeMaster*, 399 F. Supp. 3d 671, 689 (E.D. Ky. 2019) (quoting *Jasper v. Blair*, 492 S.W.3d 579, 583 (Ky. Ct. App. 2016) (quoting *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 91–92 (Ky. 2003)) (A defendant's "conduct was a substantial factor if it had 'such an effect in producing the harm as to lead reasonable men to regard it as a cause.'"); *Morales v. Am. Honda Motor Co., Inc.*, 151 F.3d 500, 507 (6th Cir. 1998) ("[A] plaintiff has the burden of establishing causation in [negligence] claims …."); *Thacker v. Ethicon, Inc.*, 47 F.4th 451, 460 (6th Cir. 2022) (quoting *Morales*, 151 F.3d at 507) ("Kentucky uses the substantial factor test for proximate causation: 'was the defendant's conduct a substantial factor in bringing about plaintiff's harm?'"); *Ensey on Behalf of D.E. v. Shelter Gen. Ins. Co.*, 2020 WL 807530, at *4 (W.D. Ky. Feb. 18, 2020) (finding a third party's negligence "was a 'substantial factor in causing injury'" where "the injuries were … a 'direct consequence' of [the third party's] negligence"); *Lane v. Kentucky Dep't of Corr.*, 2025 WL 2678860, at *16 (Ky. Ct. App. Sept. 19, 2025) (quoting *Patton*, 529 S.W.3d at 730) (Causation's "[c]ause-in-fact [component] requires 'a direct, distinct, and identifiable nexus between the defendant's breach of duty and the plaintiff's damages such that the event would not have occurred "but for" the defendant's negligent or wrongful conduct.'"); *Barrios v. Elmore*, 430 F. Supp. 3d 250, 259 (W.D. Ky. 2020) (quoting *Sidebottom v. Harrisburg Masonry*, No. 95-6195 and No. 95-6216, 1996 WL 623039, at *3 (6th Cir. Oct. 25, 1996)) ("Generally, under Kentucky law, proximate cause is determined based on 'whether the injury is a natural and probable consequence of the negligent act, which test involves the element of foreseeability.'"); *Cantrell v. Ashland Oil, Inc.*, No. 2006-SC-000763-DG, 2010 WL 1006391, at *15 (Ky. Mar. 18, 2010) (jury instructions are sufficient so long as the instructions "generally compl[y] with the applicable law").

DATE SUBMITTED:    January 28, 2026

DATE REVISED:    [insert date]

1    **BREATHITT'S POSITION**

2         **Causation for Indivisible Injury.** Kentucky does not have a general causation pattern

3    instruction. However, Breathitt's proposed instruction is consistent with Kentucky caselaw

4    defining causation. *See Holland v. United Servs. Auto. Assn.*, 707 S.W.3d 541, 555-56 (Ky. Ct.

5    App. 2025) (explaining substantial factor test). Breathitt's proposed instruction is a plain

6    language version which instructs the jury on the requirements of cause-in-fact and foreseeability,

7    as well as the permissibility that there could be more than one cause of Breathitt's harm.

8         Despite appearing to agree that the substantial factor test controls, Defendants' version

9    invites error by failing to format the instruction for a case with multiple alleged tortfeasors.

10   Defendants erroneously instruct the jury that they cannot find causation unless "the harm would

11   not have occurred 'but for' that Defendant's Actionable Non-Protected Conduct." This is wrong

12   on several levels. First, the "but for" test is not the correct test for a case with multiple alleged

13   contributing tortfeasors. Defendants cite a case that glosses "causation in fact" as "but-for"

14   causation, and then goes on to explain the substantial factor test for multiple defendant cases.

15   *Patton v. Bickford*, 529 S.W.3d 717, 730 (Ky. 2016). To the extent that Kentucky courts refer

16   generally to causation in fact as but-for causation, it is unnecessary to use this confusing language

17   with the jury. Second, and relatedly, Defendants erroneously instruct the jury that Breathitt must

18   show but-for causation to each Defendant—a logical impossibility where evidence shows all

19   Defendants harmed Breathitt.

20        Using "but-for" as shorthand for causation in fact—even if commonly used by courts—

21   invites error here. The test, as the parties agree, is that Breathitt must show a Defendant was a

22   substantial factor before that Defendant can be liable for causing harm—*not* that a Defendant can

23   avoid liability if Breathitt was harmed by another Defendant, too, or by "protected" conduct, or

24   by an alternate cause.

25        As explained in more detail below, *see infra* [Causation Multiple Causes], Breathitt

26   alleges that Defendants all contributed to an indivisible harm. Defendants' proposed language that

27   a Defendant may avoid liability "if the particular harm would have occurred without the conduct"

28   is contrary to law under these circumstances, as is the instruction that Breathitt must prove its

harm "would not have occurred 'but for' that Defendant's [conduct]." Defendants cite a case where it was clear that "[t]he jury could well have found" that one of the defendants "was the sole cause of the accident." *Tennyson v. Brower*, 823 F. Supp. 421, 424 (E.D. Ky. 1993). Aside from being factually inapposite to the case here, Defendants essentially preview a situation where each Defendant could point at another to avoid liability because, as the evidence showed, all harmed Breathitt.

This is further reflected in Defendants' suggestion that Breathitt must apportion causation to each party. As the Court reasoned at the summary judgment hearing, and as Kentucky law clearly states, that burden is not on Breathitt. The jury may allocate fault, as explained below, *see infra* [Apportionment of Liability], but all that Breathitt must prove is that each Defendant was a substantial factor in causing Breathitt's alleged harm.

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence]; *infra* [Section 230].

1    **DEFENDANTS' POSITION**

2         Defendants' Instruction correctly reflects Kentucky causation law. Kentucky law requires

3    that Breathitt prove causation for its negligence and public nuisance claims. *See Patton*, 529

4    S.W.3d at 730 (negligence); *Commonwealth v. S. Covington & Cincinnati St. Ry. Co.*, 205 S.W.

5    581, 583 (Ky. Ct. App. 1918) (public nuisance). Causation involves two components: cause-in-

6    fact (also referred to as "but-for" causation) and proximate cause. *Patton*, 529 S.W.3d at 730. As

7    to the first component, Kentucky law requires that the "but for" cause be a "substantial factor" in

8    causing the harm, which requires "the existence of a direct, distinct, and identifiable nexus

9    between the defendant's breach of duty (negligence) and the plaintiff's damages." *Id.* at 731. A

10   defendant's conduct cannot be a substantial factor in causing a plaintiff's alleged harm "if the

11   harm would have been sustained even if the actor had not been negligent." *Tennyson v. Brower*,

12   823 F. Supp. 421, 423 n.5 (E.D. Ky. 1993) (quoting Restatement (Second) of Torts § 432(1)

13   (1965)); *see also Faesy v. JG 1187, Inc.*, 2015 WL 5178448, at *4 (Ky. Ct. App. Sept. 4, 2015)

14   (finding that, where a plaintiff fell and spilled hot coffee on herself, the fall, which was plaintiff

15   admitted was 100% her fault, was the substantial factor in causing plaintiff's injury, and the hot

16   coffee "was a condition rather than a legal cause of [plaintiff's] injury").

17         As to the second component, Kentucky measures proximate cause by whether the injury

18   was the "natural and probable" consequence of the conduct, which "involves the element of

19   foreseeability." *Barrios v. Elmore*, 430 F. Supp. 3d 250, 259 (W.D. Ky. 2020) (quoting

20   *Sidebottom v. Harrisburg Masonry*, No. 95-6195 and No. 95-6216, 1996 WL 623039, at *3 (6th

21   Cir. Oct. 25, 1996)). A defendant's conduct should not be considered a cause if it is too remote or

22   removed from the plaintiff's harm. *See Ky. Laborers Dist. Council Health & Welfare Trust Fund*

23   *v. Hill & Knowlton, Inc.*, 24 F. Supp. 2d 755, 762 (W.D. Ky. 1998) ("Over the past century,

24   [Kentucky's] practice of precluding recovery for remote injuries has appeared in many forms,

25   including foreseeability and proximate cause ….") (internal citation and quotation marks

26   omitted). And Kentucky case law provides that a defendant's conduct cannot be a substantial

27   factor in causing a plaintiff's alleged harm if the same harm would have occurred without the

28

1  defendant's conduct. *See Tennyson*, 823 F. Supp. at 423 n.5 (quoting Restatement (Second) of

2  Torts § 432(1) (1965)).

3      Breathitt's Instruction includes language not supported by Kentucky Model Instructions or

4  Kentucky case law. Accordingly, the Court should reject Breathitt's Instruction.

5      **Non-Protected Conduct.** Breathitt's proposed Instruction also reaches all of Defendants'

6  conduct and, thus, inappropriately invites the jury to consider conduct that cannot form the basis

7  of liability. Not all conduct by the Defendants is actionable given the Court's rulings about

8  Section 230 and the First Amendment. *See* SD Order at 2, 12–14; PI Order at 14. Defendants'

9  "Non-Protected Conduct" language should, therefore, be included.

10      Additionally, Defendants' Instruction is consistent with this Court's ruling, which limits

11  Plaintiff's causal theory to "allegations that focus on defendants' own conduct—fostering

12  compulsive use—and the corresponding foreseeability of injury to school districts." SD Order

13  (ECF 1267) at 26-27 n.19. As noted, Kentucky law requires a plaintiff to prove that a defendant's

14  *negligent* conduct was a "substantial factor" in causing a plaintiff's harm. *Patton*, 529 S.W.3d at

15  730. Even then, causes that are too "attenuated" are not proximate causes and cannot lead to

16  liability. *Id.* at 731. Thus, in light of the "conduct-specific, feature-by-feature assessment"

17  required by the Court, the jury cannot find for Breathitt unless Breathitt comes forward with

18  evidence demonstrating that each Defendant's actionable conduct directly harmed Breathitt.

19      **"Indivisible Harm" Argument.** As explained further below, *see infra* Defendants'

20  Positions to Jury Instruction #22 (Causation – Substantial Factor) and Jury Instruction # 24

21  (Causation - Multiple Causes), Breathitt's argument that its alleged harm is indivisible is

22  unsupported by law and fact.

23      **Separate Defendants.** Lastly, Breathitt's Instruction improperly lumps Defendants

24  together, despite Kentucky requiring assessment of liability and apportionment of fault for each

25  party. "To prove liability, [a plaintiff] must show that *each defendant* both violated the standard

26  of care and that the violation caused [the plaintiff's] injuries." *Mullins,* 707 S.W.3d at 8

27  (emphasis in original).

28

**Jury Instruction # 22**
**Causation – Substantial Factor[±]**

*[[±] Defendants' proposal in blue text; Breathitt's proposal in red text.]*


A Defendant's Actionable Non-Protected Conduct is a cause of Breathitt's harm only if that Defendant's conduct is a "substantial factor" in bringing about the harm. A substantial factor in causing harm is a factor that had such an effect in producing the harm as to lead a reasonable person to regard it as a cause would consider to have contributed to the harm. It must be more than a remote or trivial factor, but iIt does not have to be the only cause of the harm. Conduct is not a substantial factor in causing harm if the same harm would have occurred without the conduct.


PLAINTIFF'S AUTHORITY:    *Holland v. United Servs. Auto. Assn.*, 707 S.W.3d 541, 556 (Ky. Ct. App. 2025); *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009); *Rogers v. Kasdan*, 612 S.W.2d 133, 136 (Ky. 1981).

DEFENDANTS' AUTHORITY:    *Outfront Media, LLC v. LeMaster*, 399 F. Supp. 3d 671, 689 (E.D. Ky. 2019) (citing *Jasper v. Blair*, 492 S.W.3d 579, 583 (Ky. Ct. App. 2016)) (quoting *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 91–92 (Ky. 2003)); *Stallings v. Georgia-Pac. Corp.*, 675 F. App'x 548, 550-51 (6th Cir. 2017); *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 91–92 (Ky. 2003); Restatement (Second) of Torts § 433 (1965) (on substantial factor); *Cantrell v. Ashland Oil, Inc.*, No. 2006-SC-000763-DG, 2010 WL 1006391, at *15 (Ky. Mar. 18, 2010).


DATE SUBMITTED:   January 28, 2026

DATE REVISED:     [insert date]

1    **BREATHITT'S POSITION**

2        Kentucky does not have a pattern instruction that defines substantial factor under

3    Kentucky law, but the parties appear to agree that an instruction would be helpful to the jury.

4        Breathitt's instruction explains the substantial factor test, which Kentucky recognizes. *See*

5    *supra* [Causation – Generally]; *Holland v. United Servs. Auto. Assn.*, 707 S.W.3d 541, 556 (Ky.

6    Ct. App. 2025). While Breathitt agrees that substantial factor can mean "a reasonable person

7    [would] regard it as a cause," Breathitt offers more specific language about contribution to assist

8    the jury in a case involving multiple tortfeasors.

9        Defendants' final sentence misstates the law when there are multiple independent causes

10   of harm, each of which could have harmed the plaintiff. The Court should not instruct the jury

11   that "Conduct is not a substantial factor in causing harm if the same harm would have occurred

12   without the conduct," as such an instruction is erroneous in a case involving multiple defendants

13   who allegedly contributed to an indivisible harm. *See infra* [Causation – Multiple Causes]. Again,

14   the reason for this is straightforward: instructing the jury in this way would allow each defendant

15   to avoid liability by arguing that evidence shows Breathitt would have been harmed anyway

16   because each Defendant harmed Breathitt.

17       **Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See*

18   *supra* [Negligence]; *see infra* [Section 230].

19

20

21

22

23

24

25

26

27

28

1    **DEFENDANTS' POSITION**

2        **Non-Protected Conduct.**  Defendants' language in this Instruction is consistent with the

3    Court's prior rulings on Defendants' Motions to Dismiss as to "Protected Conduct" and "Non-

4    Protected Conduct," along with the protections afforded by Section 230 and/or the First

5    Amendment.  *See* SD Order (ECF 1267) at 13–14 (limiting Defendants' actionable conduct to the

6    non-protected features of Defendants' platforms, as determined by the Court); *id.* at 26; *see also*

7    PI Order at 14; *Patton*, 529 S.W.3d at 730 (Kentucky's causation element "consists of two

8    distinct components: 'but for' causation[] . . . and proximate causation.").  Breathitt's proposed

9    Instruction improperly fails to limit the jury's consideration to "Non-Protected Conduct," as

10   required by this Court.  Defendants' "Non-Protected Conduct" language should, therefore, be

11   included.

12       **Proximate Cause.**  Defendants' proposed language defining a substantial factor as a

13   factor that had such an effect in producing the harm "as to lead a reasonable person <u>to regard it as</u>

14   <u>a cause</u>" is directly supported by Kentucky case law.  *Pathways, Inc. v. Hammons*, 113 S.W.3d

15   85, 92 (Ky. 2003) (emphasis added) (using this language).  Breathitt's proposed alternative

16   language is not supported by any cited Kentucky authority and is meant to improperly narrow its

17   burden to show mere "contribution" rather than but for and proximate causation.

18       Breathitt's objection to instructing the jury that "Conduct is not a substantial factor in

19   causing harm if the same harm would have occurred without the conduct," ignores Kentucky law.

20   Under Kentucky law, a defendant's conduct cannot be a substantial factor in causing a plaintiff's

21   alleged harm if the same harm would have occurred without the defendant's conduct.  *See*

22   *Tennyson*, 823 F. Supp. at 423 n.5 (E.D. Ky. 1993) (quoting Restatement (Second) of Torts §

23   432(1) (1965)) ("[T]he actor's negligent conduct is not a substantial factor in bringing about harm

24   to another if the harm would have been sustained even if the actor had not been negligent.");

25   *Franklin v. Franklin County, Kentucky*, 2023 WL 4406884, *5 (E.D. Ky. Jul. 7, 2023) (quoting

26   Restatement (Second) of Torts § 432(1)) (same).  Breathitt argues that such an instruction is

27   erroneous in a case involving an alleged indivisible harm, but the cases cited by Breathitt do not

28   support this position.

**"Indivisible Harm" Argument.**  As discussed *infra* in Defendants' Position to Jury Instruction #24 (Causation - Multiple Causes), Breathitt's argument that its alleged harm is somehow "indivisible" is unsupported by the law and facts of this case.  Breathitt's cited authorities do not permit the "indivisible injury" language in an instruction, likely because the language misstates Kentucky law and improperly attempts to reduce its burden to show causation. The alleged indivisibility of Breathitt's alleged harm is a matter of apportionment, not causation—which Breathitt must first demonstrate before the jury can apportion liability among alleged multiple tortfeasors.  *See* Restatement (Second) Torts § 433A cmt. a ("The rules stated in this Section apply whenever two or more causes have combined to bring about harm to the plaintiff, and *each has been a substantial factor in producing the harm* ....") (emphasis added). Instead, Breathitt encourages the jury to put the cart (apportionment) before the horse (causation).

KRS 411.182 abolished joint-and-several liability in Kentucky.  *See Hayes v. Goldsmith*, 2016 WL 4256910, at *3 (Ky. Ct. App. 2016)  ("In Kentucky, the law is well-settled that our comparative fault statute, KRS 411.182, mandates apportionment of fault in all tort actions"). Thus, any instruction suggesting the injury is "indivisible" conflicts with KRS 411.182's apportionment in actions involving more than one potentially at-fault party.

And Breathitt's attempt to use *Owens Corning Fiberglass Corp.*, 58 S.W.3d 467 (Ky. 2001), to support its argument that it has an "indivisible harm" in this case is misplaced.  Unlike *Owens Corning Fiberglass Corp.*, which presented an indivisible medical injury that could not be apportioned between separate causes, there is no factual basis for Breathitt's assertion that it has suffered an "indivisible injury."  The harms claimed in this case are capable of being divided.  For example, Breathitt could theoretically present the jury with data tracking its classroom disruptions, the circumstances of each, and which online platforms, if any, were involved.  Or Breathitt could have developed information about what online platforms its students use, such as surveying the student body.  Such data could also be divisible temporally, based on when particular platforms or at-issue features existed.  Breathitt should not be allowed to abuse the indivisible harm rule—which is for cases where the facts of the injury necessarily make it indivisible—to avoid having to provide evidence of specific causation in this case.

**Jury Instruction # 23**
**Causation – No Duty to Prevent Harm Caused by Third Parties±**

*[± Defendants' proposal in blue text; Breathitt's proposal in red text.]*

### (1) Instruction # 23-D (Defendants' Proposed Instruction)

Defendants do not have a duty to prevent third parties (for example, individuals who post dangerous "challenges" on Defendants' platforms, commit crimes, or post threats on Defendants' platforms) from using their platforms in ways that may cause harm to Breathitt or its students.

### (2) Instruction # 23-P (Plaintiff's Proposed Instruction)

The mere fact that a Defendant generally knows that third-party bad actors may use their social media platforms to spread harmful challenges, transmit threats, or engage in crimes, is not, by itself, sufficient to show that Defendants caused the School District's harm. However, even if a third party is involved in the harm, you may hold Defendants liable for their own conduct, including conduct that foreseeably facilitates harm from third parties.

PLAINTIFF'S AUTHORITY:     ECF 1267 at 25-26.

DEFENDANTS' AUTHORITY:     Order Granting in Part and Denying in Part Defendants' Motion to Dismiss ("SD Order") (ECF 1267) at 25, 26, and 26-27 n.19 (noting that allegations relating to "injuries caused by third-party conduct as with dangerous social media challenges, crimes, or threats on defendants' platforms" "have been excluded as a matter of proximate cause," and so "the Court's evaluation of legal duty focuses exclusively on the allegations that focus on defendants' own conduct—fostering compulsive use—and the corresponding foreseeability of injury to school districts").

DATE SUBMITTED:   January 28, 2026

DATE REVISED:     [insert date]

1    **BREATHITT'S POSITION**

2         Due to the multiple overlapping actions of Defendants during the case period, Defendants'

3    "disentanglment" arguments, and Defendants' indication that they intend to argue alternative

4    causes to harm, it is critical that the jury receive clear, explicit instruction about how to evaluate

5    multiple causes of harm. Breathitt proposes this instruct to clearly inform the jury how to apply

6    the substantial factor test under such complex circumstances.

7         **Indivisible Injury Rule.** Breathitt's proposed language clearly explains the indivisible

8    injury rule to the jury. *See Owens Corning Fiberglas Corp. v. Parrish*, 58 S.W.3d 467, 477 n. 30

9    (Ky. 2001) (citing Restatement (Second) Torts § 433A); *see also* K.R.S. § 411.182. Kentucky law

10   is clear that a Defendant's actions need only be a substantial factor in causing harm even if some

11   other condition, event, or person was also a substantial factor in causing the harm. *See Propane*

12   *Transport Co. v. Edelen*, 400 S.W.2d 697, 699 (Ky. App. 1966) (The idea "that there can be only

13   *one* proximate cause is of course fallacious."); *Holland v. United Servs. Auto. Ass'n*, 707 S.W.3d

14   541, 556 (Ky. App. 2025) (Under the substantial factor test, "a defendant's conduct 'need not be

15   the sole cause or even the primary cause' of a plaintiff's injury but must only be 'a material

16   element.'" (quoting *57 Am. Jur. 2d Negligence §443* (2022))).

17        In cases of indivisible injury, courts do not apply a "but-for" test of causation. That is

18   because it may not be possible, from the evidence, to determine the extent of any contributing

19   tortfeasor's effect on the total harm. The burden to show that causation is apportionable shifts to

20   the defendant to come forward with such evidence. *See* Restatement (Second) Torts §§ 433A,

21   433B; *see also Parrish*, 58 S.W.3d at 477 n. 28 (adopting the Restatement).

22        Defendants object to instructing the jury properly about how to determine causation in

23   cases of indivisible injury resulting from multiple alleged tortfeasors by muddling apportioning

24   causation with apportionment for damages. But the two are distinct. It is correct that Kentucky no

25   longer requires all joint tortfeasors to satisfy an entire judgment; instead, the jury assigns each

26   defendant found to have been a substantial factor in causing the harm a percentage of fault, and

27   only permits recovery of damages from that defendant up to its assigned percentage share. *See*

28   *infra* [Apportionment of Liability]. That has no bearing on how the factfinder determines

*causation* where the harm is allegedly caused by the combined actions of multiple tortfeasors. Kentucky still recognizes that multiple tortfeasors may, together, be the cause of the entire harm, and all that the plaintiff is required to show is that each tortfeasor was a substantial factor in causing the harm. If Defendants' position is that the harm Breathitt alleges is divisible, that each Defendant has only caused part of the total harm, and that their liability must be apportioned as a matter of causation, the burden is on them to show that. *See Parrish*, 58 S.W.3d at 477 n. 30 (quoting Restatement (Second) Torts § 433B). Where multiple tortfeasors contribute to causing a unitary harm—for example, a public nuisance in schools, and diverted resources over a period of years—it is proper to find any and all defendants which the jury finds was a substantial factor of the harm to be the cause of the harm. That is what this instruction clarifies.

**This Instruction Gives Non-Duplicative Information About How to Apply the Substantial Factor Test.** Defendants contend the instruction is unwarranted because it is duplicative of the Substantial Factor instruction. Not so. The only information about multiple causes in the Substantial Factor instruction is the acknowledgment that a substantial factor "does not have to be the only cause of the harm." The Multiple Causes instruction, by contrast, clarifies that the jury may not only find there were multiple causes generally, but may also find that there were multiple substantial factors. It explains to the jury that multiple Defendants may be substantial factors, or that there may be other causes which also combined to harm Breathitt (such as Defendants' "alternate" causation examples, or "protected" conduct). And it also explains that if the jury finds there was only one cause of harm, then it should only find one substantial factor. Given the complex causation issues in this case, further clarification is warranted to ensure the jury understands the law and applies it correctly.

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence]; *infra* [Section 230].

1    **DEFENDANTS' POSITION**

2        Defendants' language in this Instruction is drawn directly from the Court's prior rulings,

3    which establish that Defendants cannot be liable for harms caused by third-party conduct.  *See* SD

4    Order (ECF 1267) at 25, 26, and 26-27 n.19 (noting that allegations relating to "injuries caused by

5    third-party conduct as with dangerous social media challenges, crimes, or threats on defendants'

6    platforms" "have been excluded as a matter of proximate cause.").  Rather, the Court has limited

7    Breathitt's causal theory to "allegations that focus on defendants' own conduct—fostering

8    compulsive use—and the corresponding foreseeability of injury to school districts."  *Id.* at 26-27

9    n.19.  Notably, the example of third-party conduct set out in Defendants' Instruction—

10   "individuals who post dangerous 'challenges' on Defendants' platforms, commit crimes, or post

11   threats on Defendants' platforms"—is taken directly from the Court's Order.  *Id.* at 26-27 n.19.

12       The authorities cited by Breathitt do not dispute the propriety of Defendants' Instruction.

13   In support of its assertion that Kentucky law holds a negligent wrongdoer liable for causing

14   foreseeable third-party misconduct, Breathitt relies on *Walmart, Inc. v. Reeves*, 671 S.W.3d 24,

15   28 (Ky. 2023 ), which is inapplicable here.  *Walmart* involved extending negligence liability in

16   *premises liability* actions where there is a duty to prevent foreseeable harm caused by third

17   parties, so long as the owner can reasonably safeguard against them.  This is not a premise

18   liability case and thus *Walmart* is not applicable.  *See Walmart,* 671 S.W.3d at 26-27 ("In general,

19   negligence claims require proof that the defendant owed the plaintiff a duty, that the defendant

20   breached that duty, and that the plaintiff suffered a harm that was proximately caused by the

21   breach.  For premises liability cases involving third-party criminal acts, the owner of a premises

22   has a duty to protect patrons from third-party acts if he or she "knows of activities or conduct of

23   other patrons or third persons which would lead a reasonably prudent person to believe or

24   anticipate that injury to a patron might be caused," (in other words, is foreseeable), and if he or

25   she can reasonably safeguard against them.") (citations omitted).  And Breathitt's position is

26   similarly not supported by the pages it cites from the SD Order.

27       Unlike Defendants' Instruction, Breathitt's Instruction fails to properly reflect the Court's

28   exclusion of Breathitt's causal allegations relating to "injuries caused by third-party conduct as

1   with dangerous social media challenges, crimes, or threats on defendants' platforms …." *Id.*

2   Instead, Breathitt's Instruction invites error by encouraging the jury to hold Defendants liable for

3   harms that Defendants, as held by the Court, had no legal duty to prevent.  *See id.* at 26-27 n.19

4   (emphasis added) ("[T]he Court's evaluation of legal duty focuses exclusively on the allegations

5   that focus on defendants' own conduct— fostering compulsive use—and the corresponding

6   foreseeability of injury to school districts.").

7          Additionally, although Breathitt's Instruction acknowledges that a Defendant's general

8   awareness of third-party misconduct is insufficient, it immediately pivots to suggesting that

9   Defendants may still be held liable if their conduct "foreseeably facilitates" third-party harm.  But

10  this framing blurs the critical distinction between a non-actionable failure to prevent third-party

11  harm and an affirmative act that directly causes harm.  In doing so, Breathitt contravenes the

12  "conduct-specific, feature-by-feature assessment" required by the Court and instead attempts to

13  reintroduce causal pathways that the Court already rejected.  *See* SD Order at 12.  Breathitt's

14  framing is also divorced from Kentucky law, which not only requires "the existence of a direct,

15  distinct, and identifiable nexus between the defendant's breach of duty (negligence) and the

16  plaintiff's damages," but expressly prohibits a plaintiff from recovering when a cause is too

17  "attenuated" from the alleged harm.  *Patton*, 529 S.W.3d at 731.

18         It is especially important in this case to instruct the jury on the proper scope of conduct

19  that can and cannot serve as the basis for Breathitt's alleged harms.  Absent an instruction

20  incorporating the Court's limitations, the jury may improperly base liability on causal theories the

21  Court has already excluded.  This risk is especially prevalent when Breathitt's own discovery

22  record confirms that the harms it asserts arise from third-party conduct and third-party content.

23         **"Social Media."**  Defendants object to the use of "social media" to describe their

24  platforms.  YouTube and Snap do not agree with the characterization of their platforms as "social

25  media," and that will be a contested fact at trial.  This Court should, instead, adopt the neutral

26  language that Defendants propose.

27

28

**Jury Instruction # 24**

**Causation – Multiple Causes±**

*[±Breathitt's proposal in red text.  Defendants object to this instruction in full.  Defendants have proposed edits in blue text to the extent this instruction is given over Defendants' objection.]*

Breathitt asserts that the independent wrongful conduct of each Defendant unites to produce a single indivisible injury. When the independent wrongful conduct of more than one defendant contributes to one indivisible injury, you may find each defendant liable even if it is not possible to determine whether or not the wrongful acts of any particular defendant, acting alone, would have caused the same injury.

Under either Breathitt's negligence or public nuisance claim, A person's negligence a Defendant's conduct may combine with another factor to cause harm.  If you find that a Defendant's Actionable Non-Protected Cconduct was a substantial factor in causing Breathitt's harm, then that Defendant is responsible for the harm. A Defendant cannot avoid responsibility just because some other Defendant, person, condition, or event was also a substantial factor in causing Breathitt's harm, unless the other cause was the sole cause of Breathitt's harm.

PLAINTIFF'S AUTHORITY:    *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009); *Propane Transport Co. v. Edelen*, 400 S.W.2d 697, 699 (Ky. App. 1966) (The idea "that there can be only *one* proximate cause is of course fallacious."); *Holland v. United Servs. Auto. Ass'n*, 707 S.W.3d 541, 556 (Ky. App. 2025) (Under the substantial factor test, "a defendant's conduct 'need not be the sole cause or even the primary cause' of a plaintiff's injury but must only be 'a material element.'" (quoting 57 Am. Jur. 2d Negligence § 443 (2022))); *Owens-Corning Fiberglas Corp. v. Parrish*, 58 S.W.3d 467, 479 (Ky. 2001); *see also Am. Motorcycle Assn. v. Superior Ct.*, 20 Cal. 3d 578, 588-89 (1978).

DEFENDANTS' AUTHORITY:    N/A

DATE SUBMITTED:   January 28, 2026

DATE REVISED:    [insert date]

1    **BREATHITT'S POSITION**

2    Breathitt objects to instructing the jury on harms caused by third parties, but offers

3    competing language if the Court decides an instruction is necessary.

4    First, such an instruction is unwarranted. It is unlikely that evidence of the type

5    Defendants enumerate in their instruction (dangerous challenges, crimes, or threats) will play a

6    substantial role at trial, if even introduced at all, that would warrant cautioning the jury about it in

7    as a limitation on causation.

8    Second, Defendants' proposed instruction is fatally flawed because it blends the Court's

9    technical misfeasance ruling with a general statement about the scope of Defendants' duty of

10   care. Jurors are not tasked with determining the scope of a defendant's duty, and this instruction

11   is liable to create a great deal of confusion. Worse, although the Court's order ruled on discrete

12   factual issues, Defendants here propose them as an open-ended list ("for example . . ."). If the

13   Court is inclined to include an instruction on third party conduct, Breathitt's language more

14   closely adheres to the Court's actual ruling and the law on foreseeable harm generally, and

15   informs the jury about when it may consider third-party misconduct in its determination of

16   proximate cause. *See* ECF 1267 at 25-26.

17   Finally, Defendants' proposed instruction is misleading in that it presents an incomplete

18   picture of the law. The instruction creates the false impression that any third party misconduct

19   categorically relieves the Defendants from liability. In reality, Defendants can be liable for third-

20   party harms if their affirmative actions create a foreseeable risk of harm, *and* may be liable for

21   other negligence if the third party misconduct does not sever the causal chain. By contrast, and as

22   Breathitt's proposed instruction makes clear, Kentucky law holds a negligent wrongdoer liable for

23   causing foreseeable third-party misconduct. *See Walmart, Inc. v. Reeves*, 671 S.W.3d 24, 28 (Ky.

24   2023); *see also* ECF 1267 at 7-8. Failing to instruct the jury on both when Defendants cannot be

25   liable, *as well as when they may*, may be reversible error. *Corey v. Jones*, 650 F.2d 803, 807 (5th

26   Cir. 1981) (Georgia law) ( reversible error where Court failed to properly instruct the jury that

27   "where it is foreseeable that the defendant's original wrongful act will by itself cause some injury

28   or damage, his responsibility is not extinguished because another wrongful act or omission

1    concurs with his act to produce a greater injury."); *see also Hill v. Reederei F. Laeisz G.M.B.H.,*

2    *Rostock*, 435 F.3d 404, 419–20 (3d Cir. 2006) (finding a high likelihood of jury confusion, and

3    thus legal error, where a district court failed to adequately instruct the jury that third-party

4    negligence does not necessarily break the chain of causation).

5        Defendants seek throughout their proposed instructions to insert students as a link in the

6    causal chain, highlighting that Breathitt's harms requires students to first be affected, and that

7    Breathitt responds to student acts. Without clarification that Defendants may still be liable for

8    their own actions, and for any action that facilitates foreseeable harm to Breathitt, this instruction

9    is therefore more likely to do harm than good, as it may confuse the jury into believing that if

10    students acted in a way that harmed Breathitt, Defendants cannot be found to have caused

11    Breathitt's harm.

12        **Ordering.** If this instruction is given, it should follow Multiple Causes, not interject

13    between Substantial Factor and Multiple Causes.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **DEFENDANTS' POSITION**

2        Defendants object to Breathitt's Instruction on Multiple Causes because it is contradictory

3    to Kentucky case law, redundant given the general Causation Instructions set forth above, and

4    would mislead and confuse the jury.

5        Kentucky law provides that if an issue is "properly and adequately presented by the

6    principal or primary instruction," the parties are not entitled to an additional instruction.

7    *Shewmaker v. Richeson*, 344 S.W.2d 802, 807 (Ky. Ct. App. 1961). Further, a restatement of the

8    proposition that the defendant's negligence must constitute the proximate cause of the injury in a

9    "separate instruction would be an unnecessary and repetitious absurdity." *Id.* (citing *Reynolds v.*

10   *Commonwealth*, 257 S.W.2d 514, 516 (Ky. Ct. App. 1953)). The inclusion of the separate

11   Multiple Causes Instruction would needlessly "confuse rather than clarify the case for the jury."

12   *Id.* Here, the concept that there can be more than one cause for an injury is fully addressed in

13   Defendants' Causation—Substantial Factor Instruction, making this additional instruction

14   unnecessary and duplicative.

15        In support of its Multiple Causes Instruction, Breathitt cites five cases, none of which

16   address the propriety of a separate instruction on multiple causes. *Martin v. Cincinnati Gas &*

17   *Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (discussing how the substantial factor test would

18   become meaningless if every incidental exposure to asbestos was a substantial factor, but not

19   discussing the suitability of a separate instruction on multiple causes); *Propane Transport Co v.*

20   *Edelen*, 400 S.W.2d 697 (Ky. Ct. App. 1966) (rejecting the appellant's argument that there could

21   be only one proximate cause of the accident, but not discussing jury instructions or the propriety

22   of a separate instruction on multiple causes was proper); *Holland v. United Servs. Auto. Ass'n*,

23   707 S.W.3d 541 (Ky. Ct. App. 2025) (evaluating whether substantial factor was the proper test to

24   use in jury instructions to determine legal causation in a personal injury negligence claim, but not

25   discussing the propriety of a separate instruction on multiple causes); *American Motorcycle*

26   *Ass'n., v. Superior Ct.*, 20 Cal. 3d 578 (1978) (discussing California law's treatment of

27   apportionment of fault, but not the propriety of a separate multiple cause instruction); *Owens*

28

1    *Corning Fiberglas Corp. v. Parrish*, 58 S.W.3d 467 (Ky. 2001) (upholding the submission of

2    comparative fault instructions, but not discussing a multiple cause instruction).

3    **Non-Protected Conduct.**  Defendants' "Non-Protected Conduct" language should be

4    included because Breathitt's proposed Instruction inappropriately invites the jury to consider

5    conduct that cannot form the basis of liability given the Court's Section 230 and First

6    Amendment rulings.  SD Order at 2, 12–14; PI Order at 14.

7    **"Indivisible Harm" Argument.**  Breathitt proposes to instruct that "Breathitt asserts that

8    the independent wrongful conduct of each Defendant unites to produce a single indivisible

9    injury."  But none of Breathitt's cited authority permits the "indivisible injury" language in an

10   instruction, likely because the language misstates Kentucky law and is an improper attempt to

11   reduce its burden to show causation.  Breathitt's newly raised argument that its alleged harms are

12   somehow "indivisible" is unsupported by the law and facts of this case.  In support of its

13   "indivisible" argument, Breathitt relies on *American Motorcycle Ass'n v. Superior Ct.*, a

14   California decision grounded in California's joint-and-several liability law.  20 Cal. 3d at 582–

15   583.  But California law does not apply here, Kentucky law does.  And KRS 411.182 abolished

16   joint-and-several liability in Kentucky.  *Hayes*, 2016 WL 4256910, at *3 ("[it is] well-settled that

17   our comparative fault statute, KRS 411.182, mandates apportionment of fault in all tort actions").

18   The Kentucky Supreme Court has held that, under Kentucky law, liability among joint

19   tortfeasors is several only.  *Dix & Assocs. Pipeline Contractors, Inc. v. Key*, 799 S.W.2d 24, 27

20   (Ky. 1990).  Kentucky does not follow the common law rule that each negligent party may be

21   held entirely responsible for a single, indivisible injury.  *Id*.  And because the liability is several to

22   each negligent joint tort-feasor, it is necessary to apportion a specific share of the liability to each

23   of them.  *Id*.  Thus, any instruction suggesting the injury is "indivisible" conflicts with KRS

24   411.182's mandatory apportionment in actions involving more than one potentially at-fault party.

25   Breathitt's reliance on *Owens Corning Fiberglas Corp.* is inapplicable here.  As explained

26   further *supra* in Defendants' Position to Jury Instruction #22, unlike *Owens Corning Fiberglass

27   Corp.*, which presented an indivisible *medical injury* that could not be apportioned, there is no

28   factual basis for Breathitt's assertion that it has suffered a "single indivisible injury."

1

2

**Jury Instruction # 25**
**Heeding Presumption±**

3

*[±Breathitt's proposal in red text. Defendants object to this instruction in full. Defendants have proposed edits in blue text to the extent this instruction is given over Defendants' objection.]*

4

5

6

7

8

9

10

11

Breathitt claims that Defendants failed to adequately warn Breathitt about the risks of their to its students from using Defendants' online platforms. If you find that a Defendant did not provide an adequate warning, you may presume that, had an adequate warning been given, Breathitt would have read and followed the warning. A Defendant may rebut this presumption by presenting evidence that, even if an adequate warning had been given, Breathitt would not have read and followed it. If you find a Defendant has presented such evidence, the presumption has been overcome and no longer applies. You may begin with the assumption that if an adequate warning were given, Breathitt, students, and parents would have read and followed that warning. Defendants may rebut this presumption by showing with evidence that an adequate warning it would not have been followed.

12

13

14

PLAINTIFF'S AUTHORITY:    *Jones ex rel. Jones v. IC Bus, LLC*, 626 S.W.3d 661, 682 (Ky. Ct. App. 2020); *Snawder v. Cohen*, 804 F. Supp. 910, 911 (W.D. Ky. 1992), *aff'd*, 5 F.3d 1012 (6th Cir. 1993).

15

16

17

18

DEFENDANTS' AUTHORITY:[9]    *Snawder v. Cohen*, 749 F. Supp. 1473, 1479 (W.D. Ky. 1990) (explaining that the presumption may be rebutted by evidence showing that a different warning would not have altered the plaintiff's decision); *Snawder v. Cohen*, 804 F. Supp. 910, 911 (W.D. Ky. 1992) (same); *Papineau v. Brake Supply Co., Inc.*, No. 4:18-CV-168, 2022 WL 22902586, at *2 (W.D. Ky. Oct. 11, 2022) (denying motion to exclude evidence offered to rebut the heeding presumption and noting that Kentucky law recognizes a rebuttable presumption but permits defendants to present evidence that plaintiff would not have heeded warnings).

19

20

21

DATE SUBMITTED:   January 28, 2026

22

DATE REVISED:    [insert date]

23

24

25

26

27

28

---

[9] Defendants object to the inclusion of an instruction on the heeding presumption. To the extent such an instruction is given over Defendants' objections, Defendants provide this authority to support their proposed language.

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (BREATHITT)
4:22-md-03047-YGR

**BREATHITT'S POSITION**

**Heeding Presumption Instruction is Warranted.** Plaintiff's proposed instruction recites Kentucky law in a bare bones fashion.  Precedent holds that in a failure to warn case, the plaintiff is "entitled to a rebuttable presumption that [they] would have heeded a warning and acted to minimize the risk." *Snawder v. Cohen*, 804 F. Supp. 910, 911 (W.D. Ky. 1992), *aff'd*, 5. F.3d 1012 (6th Cir. 1993); *see also Jones v. IC Bus, LLC*, 626 S.W.3d 661, 682 (Ky. Ct. App. 2020); *Smith v. Parker-Hannifin Corp.*, 2014 U.S. Dist. LEXIS 50947, * 23 (Plaintiff is entitled to a presumption that had an adequate warning been given that it would have been followed.). Defendants do not contest that they failed to issue an adequate warning, and, under Kentucky law, they "cannot shift to the plaintiff the burden of proving that [they] would not have misused the product regardless' by failing to follow an adequate warning." *Smith v. Parker-Hannifin Corp.*, 2014 U.S. Dist. LEXIS 50947, * 23 (*quoting Leonard v. Uniroyal, Inc.*, 765 F.2d 560, 567 – 68 (6th Cir. 1985)).

Defendants' objection to this particular instruction is without merit. Defendants' failure to provide warnings—much less adequate warnings—is central to Breathitt's case and will be introduced at trial. Given their arguments at summary judgment, Defendants will likely argue that Breathitt and its students would not have read or followed any warning that they had issued. While presumptions are not typically included in jury instructions, in this situation, Kentucky law requires that the jury be informed as to "what it must believe from the evidence in order to resolve each dispositive factual issue in favor of the party who bears the burden of proof on that issue." *Olfice, Inc. v. Wilkey*, 173 S.W.3d 226, 229 (Ky. 2005). Without this instruction, the jury would not be appropriately informed of which party bears the burden of proof on this issue.

1    **DEFENDANTS' POSITION**

2            Defendants object to Breathitt's proposed Heeding Presumption Instruction because it is

3    inconsistent with Kentucky law.  *See Meyers v. Chapman Printing Co.*, 840 S.W.2d 814, 824

4    (Ky. 1992) ("In Kentucky jury instructions do not include evidentiary presumptions.  Such

5    presumptions alter the burden of going forward with the evidence, and thus may result in a

6    directed verdict in the absence of countervailing evidence."); *see also Norton Healthcare, Inc. v.*

7    *Disselkamp*, 600 S.W.3d 696, 723 (Ky. 2020) (explaining that in adherence to Kentucky practice

8    and law, instructions do not include "unnecessary details such as evidentiary presumptions").

9            Further, Breathitt's proposed Instruction is substantively inconsistent with Kentucky's

10    limited recognition of the presumption.  A heeding presumption has been applied in cases

11    involving physical injury, which bears no resemblance to the facts here.  Kentucky's limited

12    recognition of the heeding presumption stems from Comment j to the Restatement (Second) of

13    Torts Section 402A.  *See Jones ex rel. Jones v. IC Bus, LLC*, 626 S.W.3d 661, 668 (Ky. Ct. App.

14    2020) (applying Restatement (Second) of Torts § 402A cmt. j (1965)).  Section 402A expressly

15    addresses liability for "physical harm," such as injuries caused by allergic reactions or poisonous

16    substances.  *See* Restatement (Second) of Torts § 402A cmt. j (1965).  Likewise, both cases cited

17    by Breathitt involved allegations of physical injury—*Jones* concerned a defective school bus

18    causing multiple fatalities, and *Snawder* involved polio contracted from an oral vaccine.  *See*

19    *Jones*, 626 S.W.3d at 668; *Snawder v. Cohen*, 804 F. Supp. 910, 911 (W.D. Ky. 1992).

20    Moreover, neither case cited by Breathitt applied or approved a heeding presumption jury

21    instruction.  Breathitt's claims do not involve allegations of physical injury, and Breathitt fails to

22    cite any Kentucky law that applies a heeding presumption in a case (such as this) involving purely

23    economic injuries.  Extending the heeding presumption beyond its intended scope would

24    contravene Kentucky law and the Restatement's framework.

25            Additionally, Breathitt incorrectly asserts that "Defendants do not contest that they failed

26    to issue an adequate warning."  Defendants have made no such concession and dispute the legal

27    viability of Breathitt's failure to warn theory, which is the subject of Defendants' pending Motion

28    for Summary Judgement.  *See* Breathitt Motion for Summary Judgment ("Breathitt Mot.") (ECF

80

2288) at 34-39; Breathitt Motion for Summary Judgment Reply ("Breathitt Reply") (ECF 2512) at 10-12.  To the extent a failure to warn theory is allowed to proceed, the adequacy of any warning remains a disputed issue.  Breathitt's mischaracterization cannot support a presumption instruction.

Even assuming that the heeding presumption applies, Breathitt's theory set forth in its Instruction stretches that presumption beyond any recognized application.  The heeding presumption operates at a single level: that *the plaintiff*—the school district in this case—would have acted differently had an adequate warning been provided.  *See Snawder v. Cohen*, 749 F. Supp. 1473, 1479 (W.D. Ky. 1990).  Courts have not extended it to presume that third parties— such as students or parents—would have acted differently had Defendants provided warnings, let alone that their doing so would have reduced or eliminated Breathitt's claimed economic injuries. Kentucky law forbids such speculative inferences.  *See Southworth v. Commonwealth*, 435 S.W.3d 32, 45 (Ky. 2014).  To prevent Breathitt's alleged injuries, not only would Breathitt have had to act differently in the face of an adequate warning, but because it is not the end-user, students and parents would have had to act differently to avoid the alleged mental health harms. No case has allowed such a double-layer of presumption, and Breathitt does not cite any authority that would allow it to apply a presumption that *students* and *parents* would have acted differently in the face of an adequate warning and thereby avoided causing Breathitt's alleged harms.

Moreover, even if the heeding presumption were to apply, the evidence conclusively rebuts the presumption.  *See Snawder*, 749 F. Supp at 1479.  Breathitt has not told students or parents to stop using Defendants' platforms, proving it would not have heeded any warning and has not itself stopped encouraging students to use at least some of the platforms for educational use.[10]  Thus, the Court should not extend the presumption here, and if any instruction is given, it must include burden-shifting language to avoid risking juror confusion.

---

[10] To the contrary, Breathitt has maintained a Facebook and Instagram page to communicate with families and students Breathitt Mot. Ex. 33) (March 11, 2025 D. Noble Dep. 7:26–10:10), it has encouraged students to engage over Facebook even after filing this lawsuit (Breathitt Reply Ex. 9) (April 23, 2025 J. Hall Dep. 43:1-6), and it continues to permit use of social media on school campus to this day (Breathitt Reply Ex. 10)(March 11, 2025 D. Noble 30(b)(6) Dep. 24:1-4).

**Jury Instruction # 26**
**Eggshell Plaintiff / Aggravation of Pre-Existing Condition±**

*[±Defendants object to this instruction in full.  Breathitt's proposal in red text.]*

It is possible that Breathitt operated under such conditions that made it more susceptible to harm than a similar entity. If you find that Breathitt is entitled to recover damages for its harms, your award shall include compensation for losses attributable to or related to such pre-existing conditions, but only if and to the extent that Defendants' negligence aroused, aggravated, or exacerbated Breathitt's pre-existing conditions. Defendants take the School District as they find it, and even if Breathitt may have been more vulnerable or susceptible to harm, or to a greater harm, does not relieve any Defendant from liability for any aggravation of those conditions.

PLAINTIFF'S AUTHORITY:        Cetrulo, Kentucky Instructions to Juries – Civil (Palmore) § 39.11 (Personal Injury; Aggravation of Pre-Existing Condition); *Morgan v. Scott*, 291 S.W.3d 622, 640–41 (Ky. 2009); *Finn v. Warren County*, 768 F.3d 441, 452 (6th Cir. 2014).

DEFENDANTS' AUTHORITY:        N/A

DATE SUBMITTED:   January 28, 2026

DATE REVISED:      [insert date]

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (BREATHITT)
4:22-md-03047-YGR

1   **BREATHITT'S POSITION**

2         Under Kentucky law, it is well settled that a defendant "takes the claimant as he finds him

3   and is entitled to neither credit nor setoff against the amount of claimant's damages because of

4   preexisting physical conditions which make the claimant more susceptible to injury, or to greater

5   injury . . .." *Morgan v. Scott*, 291 S.W.3d 622, 640-41 (Ky. 2009) (*quoting Wemyss v. Coleman*,

6   729 S.W.3d 174, 178 (Ky. 1987)); *see also Finn v. Warren County*, 768 F.3d 441, 452 (6th Cir.

7   2014). The appropriateness of instructing the jury on this issue is so well settled that Breathitt's

8   proposed instruction is adapted from Kentucky's pattern instruction on the issue. Cetrulo

9   Kentucky Instructions to Juries – Civil § 39.11 Personal Injury; Aggravation of Pre-Existing

10  Condition.

11        Throughout this litigation, Defendants have pointed to preexisting conditions in Breathitt

12  which make Plaintiff more susceptible to the damages at issue. *E.g.*, ECF 2288 at 2, 4 (arguing

13  without citation that "floods, the COVID-19 pandemic, gross financial mismanagement, and

14  pervasive poverty" caused Breathitt's students' mental health harms). It is imperative that the jury

15  be appropriately instructed as to how these conditions should be considered to the extent they

16  predisposed Breathitt to damages or increased its damages.

17        Defendants' only (unfounded) objection to this instruction's inclusion is that an

18  organizational plaintiff cannot assert aggravation of a pre-existing condition. Defendants have

19  proffered no authority that suggests this basic principle of tort law is limited to bodily injuries, or

20  that a tortfeasor may avoid liability for harms just because the entity is more vulnerable to injury

21  than a comparable entity would be.

22        Where such an instruction is not issued, the Kentucky Supreme Court has found

23  prejudicial and reversible error: "In the circumstances of this case, respondent was entitled to an

24  instruction stating, in the affirmative, that she should be compensated for losses causally related

25  to a preexisting condition to the extent, if any, such condition was activated or aggravated by the

26  [Defendant's misconduct.]" *Drury v. Spalding*, 812 S.W.3d 713, 716 (Ky. 1991). The Court went

27  on to reverse and remand based on this substantial error. *Id.* at 717.

28

1    **DEFENDANTS' POSITION**

2         Defendants object to Breathitt's proposed Eggshell Plaintiff/Aggravation of Pre-existing

3    Condition Instruction. Breathitt's proposed Instruction improperly extends the concept of a pre-

4    existing condition beyond its intended scope. The Kentucky Model Instructions explicitly states

5    that a jury's award "shall include compensation for losses attributable or related to his pre-

6    existing *physical* condition." Cetrulo, Kentucky Instructions to Juries – Civil (Palmore) § 39.11

7    (emphasis added). Notably, Breathitt has omitted the word "physical" from its proposed

8    Instruction in an attempt to obscure the fact that the concept is not intended to address purely

9    economic injuries—which are the only injuries at issue here. Indeed, Breathitt fails to cite *any*

10   Kentucky law that applies an aggravation of pre-existing condition instruction to a case such as

11   this. And the only case cited in the Kentucky Instructions involves the classic scenario where this

12   concept applies—a car accident with evidence that the plaintiff had a pre-existing congenital back

13   condition that was aggravated by the crash, resulting in a herniated disc. *See Drury v. Spalding*,

14   812 S.W.2d 713, 714 (Ky. 1991). Applying the concept to alleged economic injuries suffered by

15   an entity (as opposed to physical injuries suffered by an individual) would expand Kentucky law

16   beyond its established limits.

17         Nor is there any support in the record that Breathitt was more susceptible to harm than

18   other similar entities, that Breathitt had any pre-existing condition, or that Defendants' conduct

19   aggravated any such pre-existing condition. Jury instructions must be supported by the record,

20   and Kentucky courts have upheld the refusal to give an aggravation of pre-existing condition

21   instruction where such proof is lacking. *See Ky. Guardianship Adm'rs, LLC v. Baptist*

22   *Healthcare Sys.*, 635 S.W.3d 14, 36 (Ky. 2021); *Stockdale v. Wimsatt*, 2004 WL 2984819, at *2

23   (Ky. Ct. App. Dec. 23, 2004).

24         Moreover, the instruction is improper because, under Kentucky law, a general damages

25   instruction—directing the jury to award damages only if Breathitt's alleged harm resulted from

26   Defendants' conduct, and to find for Defendants otherwise—is all that is required. *Peters v.*

27   *Wooten*, 297 S.W.3d 55, 64–65 (Ky. Ct. App. 2009) is instructive. There, the Court of Appeals

28   upheld the circuit court's refusal to give a special instruction on aggravation of a pre-existing

1   condition, holding that the general damages instruction sufficiently addressed the issue. *See id.*

2   The court further noted that plaintiff's counsel "had the opportunity in closing arguments to

3   explain to the jury how this [damages instruction] encompasses a pre-existing injury." *Id.*; *see*

4   *also Carlson v. McElroy*, 584 S.W.2d 754, 756 (Ky. Ct. App. 1979) (a general damages

5   instruction was proper despite evidence of a possible pre-existing condition); *Rippetoe v. Feese*,

6   217 S.W.3d 887, 892 (Ky. Ct. App. 2007) (same).

7          Breathitt relies on two cases to support its proposed Instruction, but that reliance is

8   misplaced.  First, Breathitt relies on *Morgan v. Scott*, 291 S.W.3d 622, 640–41 (Ky. 2009), which

9   addressed whether the defendant was entitled to a failure-to-mitigate instruction.  The court held

10   that such an instruction was unwarranted because the evidence was insufficient. *See id.* at 641.

11   In doing so, the court briefly referenced the general "eggshell plaintiff" principle to reaffirm that

12   a tortfeasor takes the plaintiff as found and cannot reduce damages due to pre-existing conditions.

13   *Id.* at 640–41.  However, the court did not consider or require a jury instruction on that principle.

14   Second, Breathitt relies on *Finn v. Warren County*, 768 F.3d 441, 452 (6th Cir. 2014), a Section

15   1983 action holding that reversal was unwarranted even if the eggshell plaintiff instruction had

16   been worded exactly as plaintiffs requested because the jury never reached the issue of damages.

17   *See id.*  Thus, even if that instruction was allowed, *Finn* does not establish an eggshell plaintiff

18   instruction is required under Kentucky law or warranted under these facts.

19

20

21

22

23

24

25

26

27

28

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (BREATHITT)
4:22-md-03047-YGR

**Jury Instruction # 27**
**Statute of Limitations[±]**

*[±Defendants' proposal in blue text. Breathitt objects to the instruction in its entirety, but, if such an instruction is given, proposes the language in red text.]*

Defendants have asserted the affirmative defense of the statute of limitations, which requires that Breathitt file its lawsuit within a certain period of time, depending on the type of claim. means that Defendants are arguing that Breathitt cannot recover from Defendants because it brought its claims too late. Defendants have the burden of proving this affirmative defense by a preponderance of the evidence. The statutes of limitations in this case are one year for Breathitt's negligence claim and five years for Breathitt's public nuisance claim. The statute of limitations period for each claim begins, or accrues, when the harm occurred. Breathitt filed this lawsuit against Defendants on March 30, 2023. Breathitt knew or reasonably should have known that it had been harmed, that it's harm was the fault of a particular Defendant, and that the Defendant's conduct was wrongful.

If you find that Breathitt filed this lawsuit more than one year after the date its negligence claim accrued, Breathitt's negligence claim is barred by the statute of limitations. Under no circumstances may Breathitt recover on its negligence claim for alleged harms that occurred prior to March 30, 2022 (one year before it filed this lawsuit).

If you find that Breathitt filed this lawsuit more than five years after the date the public nuisance claim accrued, Breathitt's public nuisance claim is barred by the statute of limitations. Under no circumstances may Breathitt recover on its public nuisance claim for alleged harms that occurred prior to March 30, 2018 (five years before it filed this lawsuit).

If you believe from the evidence that before March 30, 2022, Breathitt knew or by exercising reasonable diligence should have known all of the following:

(1) That Breathitt was harmed by reason of that Defendant's conduct; and

(2) That Breathitt's harm was caused by wrongful conduct of that Defendant,

then you will find for that Defendant on Breathitt's negligence claim.

If you believe from the evidence that before March 30, 2018, Breathitt reasonably knew or should have known all of the following:

(1) That Breathitt was harmed by reason of that Defendant's conduct; and

(2) That Breathitt's harm was caused by wrongful conduct of that Defendant,

then you will find for that Defendant on Breathitt's public nuisance claim.

PLAINTIFF'S AUTHORITY:      *R.T. Vanderbilt Co. v. Franklin*, 290 S.W.3d 654, 658 (Ky. Ct. App. 2009). *Wiseman v. Alliant Hosps., Inc.*, 37 S.W.3d 709, 712 (Ky. 2000); *Louisville Trust Co. v. Johnson-Manville Prods. Corp.*, 580 S.W.2d 497, 501 (Ky. 1979).

DEFENDANTS' AUTHORITY:      General negligence and personal injury actions are governed by KRS 413.140(1)(a), which establishes a one-year statute of limitations. *T & J Land Co., LLC v. Miller*, 701 S.W.3d 380, 383–84 (Ky. 2024); *Franzman v. Wyeth, LLC*, 451 S.W.3d 676, 692 (Mo. Ct. App. 2014) (applying Kentucky law and citing KRS 413.140(1)(a) when applying a one-year statute of limitations to a negligence claim). *Lynn Mining Co. v. Kelly*, 394 S.W.2d 755, 757 (Ky. 1965) (applying a five-year statute of limitations for Kentucky nuisance claims pursuant to KRS 413.120).

DATE SUBMITTED:   January 28, 2026

DATE REVISED:        [insert date]

1 **BREATHITT'S POSITION**

2      **Statute of Limitations Instruction Not Warranted.** The Court should reject Defendants'

3 proposed statute of limitations instruction as Defendants have failed to carry their burden of

4 demonstrating that Breathitt's' claims are barred by the applicable statute of limitations. Pursuant

5 to Kentucky law, Defendants must establish when the limitations period began and that it has

6 expired. *Campbell v. Grand Trunk W. R.R. Co*., 238 F.3d 772, 775 (6th Cir. 2001); Ky. C.R. 8.03.

7 Defendants have not carried their burden on this issue because, *inter alia*, they have not shown

8 that Breathitt knew or reasonably should have known that Defendants' conduct caused a legally

9 cognizable injury outside of the limitations period. Because Defendants have failed to

10 demonstrate that Breathitt's' claims are barred by the statute of limitations, no instruction on this

11 issue should be given.

12      **Breathitt's Instruction Properly Instructs the Jury on the Discovery Rule and**

13 **Prioritizes Plain Language.** To the extent the Court is inclined to provide an instruction on

14 Defendants' statute of limitations affirmative defense (which it should not), the Court should

15 adopt Breathitt's proposal for this instruction. Defendants' proposed instruction fails to properly

16 instruct the jury on Kentucky law regarding the discovery rule, and erroneously suggests that

17 "under no circumstances may Breathitt recover" if it filed its lawsuit after the a particular date.

18 Critically, Kentucky applies the discovery rule in cases where a plaintiff's awareness of the harm

19 and its causal link to wrongful conduct do not occur simultaneously. *Louisville Trust Co. v.*

20 *Johns-Manville Prods. Corp*., 580 S.W.2d 497, 501 (Ky. 1979); *Fluke Corp. v. LeMaster*, 306

21 S.W.3d 55, 60 (Ky. 2010). Breathitt's proposed instruction provides language that tracks this

22 discovery rule standard. Because the discovery rule is relevant to whether or not the statute of

23 limitations bars Breathitt's claim as Defendants assert, it is necessary to provide an instruction to

24 the jury that accounts for and explains the discovery rule. Breathitt's proposed instruction

25 provides this information and Defendants' does not.

26      Breathitt's version will be easier for the jury to apply, if the Court finds that Defendants

27 have proffered evidence supporting this instruction.

28

1    **DEFENDANTS' POSITION**

2          The Parties agree that the relevant statutes of limitations in this case are one year and five

3    years, respectively, for the negligence and public nuisance claims.  *See* KRS 413.140(1)(a);  *T &*

4    *J Land Co., LLC v. Miller*, 701 S.W.3d 380, 383–84 (Ky. 2024);   *Lynn Mining Co. v. Kelly*, 394

5    S.W.2d 755, 757 (Ky. 1965).

6          Breathitt's causes of action accrued when the alleged injury occurred.  *Exec. Branch*

7    *Ethics Comm'n v. Grimes*, 710 S.W.3d 8, 16 (Ky. Ct. App. 2025).  Contrary to Breathitt's

8    argument, the discovery rule does not apply in this case.  Kentucky courts apply the discovery

9    rule in only limited categories of cases and are hesitant to expand its reach.  *See id.* at 17.  The

10   limited circumstances where Kentucky recognizes the discovery rule do not apply here, and the

11   cases cited as authority by Breathitt do not support a contrary rule. *See Louisville Trust Co. v.*

12   *Johns-Manville Prods. Corp.,* 580 S.W.2d 497, 499 (Ky. 1979) (extending discovery rule

13   narrowly to "tort actions for injury resulting from a latent disease caused by exposure to a

14   harmful substance" like asbestos); *see also Fluke Corp. v. LeMaster,* 306 S.W.3d 55, 56 (Ky.

15   2010) (refusing "to extend application of the discovery rule to cases not involving latent injuries,

16   latent illnesses, or professional malpractice").  Unlike the injuries in the cited cases, Breathitt's

17   alleged injury was neither latent nor unknowable, according to its own evidence.  As such, the

18   discovery rule does not apply in this case under Kentucky law.

19

20

21

22

23

24

25

26

27

28

**Jury Instruction # 28**

**Comparative Fault<sup>±</sup>**

*[<sup>±</sup>Defendants' proposed language in blue text.  Breathitt objects to the instruction in its entirety, but, if such an instruction is given, proposes the language in red text.]*

Defendants raise the affirmative defense of comparative fault. Defendants claim that Breathitt failed to exercise ordinary care, and that its failure to exercise ordinary care was a substantial factor in causing the harms it complains of in this lawsuit. Defendants have the burden of proving this affirmative defense by a preponderance of the evidence.

It was Breathitt's duty to exercise ordinary care in operating its school district.  If you find for Breathitt under Instruction No. ___ [Negligence] and/or Instruction No. __ [Public Nuisance], and if you are further satisfied from the evidence that Breathitt failed to comply with this duty and that such failure on Breathitt's part was a substantial factor in causing Breathitt's harms claimed in this lawsuit, you will determine from the evidence what percentage of the total fault was attributable to each of the parties you find to have been at fault.  The relative degrees of fault are to be entered on the verdict form as percentages of the total fault for Breathitt's harms, as follows:

| | |
|---|---|
| Breathitt: | _____% |
| Meta: | _____% |
| Snap: | _____% |
| TikTok: | _____% |
| YouTube: | _____% |
| Total: | 100% |

In determining the percentages of fault you shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between its conduct and the damages claimed.  As explained above, in determining the percentages of fault for any Defendant in accord with this Instruction, you may only consider a Defendant's Actionable Non-Protected Conduct. Using the measure of damages set forth in Instruction No. __[Compensatory Damages], also state on the verdict form the total amount of damages Breathitt would be entitled to recover if its comparative fault (if any) is disregarded.

PLAINTIFF'S AUTHORITY:        Cetrulo, Kentucky Instructions to Juries – Civil (Palmore) § 14.09 (Comparative Fault; Alternative Form); *Jajic v. Sainato*, No. 2023-CA-0956-MR, 2025 WL 807663, at *12–13 (Ky. Ct. App. Mar. 14, 2025); *Carter v. Bullitt Host, LLC*, 471 S.W.3d 288, 298 (Ky. 2015) ("[E]very person has a duty of ordinary care *in light of the situation*, and that duty applies equally to plaintiffs and defendants.").

DEFENDANTS' AUTHORITY:        Cetrulo, Kentucky Instructions to Juries – Civil (Palmore) §§ 14.09 (Comparative Fault, Alternative Form), 14.08 (Comparative Fault), 39.30 (Separate Contributing Causation, Comparative Fault, Inseparable Injury), 46.01 (Apportionment of Liability), and 46.02 (Comparative Fault of Plaintiff); *see also* KRS 411.182; KRS 411.560(2); *Carter v. Bullitt Host, LLC*, 471 S.W.3d 288, 298 (Ky. 2015) ("[U]nder comparative fault, every

90

person has a duty of ordinary care in light of the situation, and that duty applies equally to plaintiffs and defendants. For fault to be placed on either party, a party must have *breached* his duty; and if there is a breach, fault must be apportioned based on the extent a party's breach caused or helped cause harm to the plaintiff." (emphasis in original)); *United States Fid. & Guar. Co. v. Clara J. Preston*, 26 S.W.3d 145, 148 (Ky. 2000) ("the amount of recovery is reduced in proportion to the injured party's fault"); *Se. Coal Co. v. Combs*, 760 S.W.2d 83, 84 (Ky. 1988) ("One who *contributes* to a nuisance is responsible in damages and/or diminution of market value *only* to the extent of his contribution" (emphasis in original)); *Radcliff Homes, Inc. v. Jackson*, 766 S.W.2d 63, 69–70 (Ky. Ct. App. 1989) (similar).

DATE SUBMITTED:    January 28, 2026

DATE REVISED:        [insert date]

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (BREATHITT)
4:22-md-03047-YGR

1    **BREATHITT'S POSITION**

2        **Comparative Instruction Not Warranted.** Breathitt objects to instructing the jury on

3    comparative fault, as Defendants have not supplied any evidence suggesting Breathitt was at

4    fault. Under Kentucky law, "an instruction must not be submitted on an issue that is entirely

5    unsupported by evidence or reasonable inferences therefrom." *West Virginia Tractor & Equip.*

6    *Co.*, 487 S.W.2d at 911 (Ky. 1972). As an affirmative defense, comparative fault only warrants a

7    jury instruction if Defendants supply evidence on all elements of negligence against Breathitt—

8    including duty, breach, causation, and damages. *See Taylor v. Commonwealth*, 671 S.W.3d 36, 43

9    (Ky. 2023); *Regenstreif v. Phelps*, 142 S.W.3d 1, 4 (Ky. 2004). Defendants have not presented

10   any evidence that Breathitt owed—let alone breached—a duty of care. Nor have Defendants

11   shown that Breathitt was the proximate cause of its own injuries. Thus, a jury instruction on

12   comparative fault is inapplicable and would only serve to confuse the jury.

13       **Duty of Care in Operating a School District.** To establish that Breathitt was a

14   substantial factor in causing its own harms, Defendants must prove that Breathitt breached a duty

15   of care and that breach was the cause of its harm. It is relevant what duty Defendants' allege

16   Breathitt breached. But Defendants offer no clarity on this point, only that Breathitt had a duty of

17   care with regards to "the conduct at issue." This is one of many reasons why Defendants' theory

18   makes little sense, and they have failed to proffer any evidence that Breathitt breached any duty

19   of care, much less explained how that breach caused the harms Breathitt alleges.

20       **Language if Comparative Fault is Disregarded.** Under Kentucky's comparative fault

21   statute, "the court . . . shall instruct the jury to answer interrogatories . . . indicating [t]he amount

22   of damages each claimant would be entitled to recover if contributory fault is disregarded." This

23   makes good sense, as the jury should be reminded that the total amount of damages recoverable

24   should not be reduced even if they find a plaintiff was comparatively at fault.

25       **Burden of Proof.** Defendants' language fails to instruct the jury that Defendants have the

26   burden of proving this affirmative defense.

27       **Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See*

28   *supra* [Negligence], [Protection for Publishing and Expressive Activity].

1    **DEFENDANTS' POSITION**

2         Kentucky is a "pure" comparative fault state, meaning the jury must apportion a specific

3    share of total liability among the plaintiff and each defendant, and thus Defendants' Instruction is

4    consistent with Kentucky law.  *See* KRS 411.182; *see also Carter v. Bullitt Host, LLC*, 471

5    S.W.3d 288, 298 (Ky. 2015) ("[L]iability—responsibility—under Kentucky law must be

6    determined based on the principles of comparative fault."); *United States Fid. & Guar. Co. v.*

7    *Clara J. Preston*, 26 S.W.3d 145, 148 (Ky. 2000) (Kentucky is a "pure" comparative negligence

8    state, meaning that "an injured person may recover against one who is negligent even if the

9    injured person was partly responsible for the injury[,]" but "the amount of recovery is reduced in

10   proportion to the injured party's fault"); *Wemyss v. Coleman*, 729 S.W.2d 174, 177 (Ky. 1987)

11   (same).

12        Additionally, the Kentucky Model Instructions allow the jury to simultaneously assess a

13   plaintiff's fault while apportioning liability among joint tortfeasors.  Cetrulo, Kentucky

14   Instructions to Juries – Civil (Palmore) § 46.02 (Comparative Fault of Plaintiff); *see also id.* §§

15   14.08 (Comparative Fault) and 14.09 (Comparative Fault, Alternative Form).  Moreover, the

16   comment in Kentucky Model Instruction Section 46.01 points directly to Section 46.02 as the

17   proper Instruction reflecting how to "combin[e] apportionment and comparative fault on the

18   plaintiff's part."  *Id.* § 46.01 (Apportionment of Liability) cmt.

19        Defendants' Instruction is consistent with the Kentucky Model Instructions by including

20   Breathitt in the apportionment of possible fault.  Defendants' Instruction is also consistent with

21   the Kentucky Model Instructions because its language follows the language of Kentucky Model

22   Instruction Section 14.09 (Comparative Fault; Alternate Form) and is otherwise consistent with

23   Sections 14.08 (Comparative Fault), 46.01 (Apportionment of Liability), and 46.02 (Comparative

24   Fault of Plaintiff).

25        In Kentucky, comparative fault principles are applicable in all tort actions, which

26   necessarily includes the public nuisance context.  KRS 411.182; *also Se. Coal Co. v. Combs*, 760

27   S.W.2d 83, 84 (Ky. 1988) ("One who contributes to a nuisance is responsible in damages and/or

28   diminution of market value only to the extent of his contribution, but the fact that others

1    participate in creating the nuisance does not exonerate the contributor completely."); *Radcliff*

2    *Homes, Inc. v. Jackson*, 766 S.W.2d 63, 69–70 (Ky. Ct. App. 1989); KRS 411.560(2) (in the

3    context of private nuisance that "[a] defendant who contributes to a nuisance is responsible for

4    damages … only to the extent of such defendant's proportionate contribution to the nuisance").

5    Defendants' Instruction accurately reflects this principle.

6        In this case, Defendants have an active assertion of comparative fault against Breathitt, as

7    it has been properly asserted, and Breathitt has not moved to strike it and did not seek summary

8    judgment on it.  Further, discovery has confirmed that Breathitt was responsible for at least a

9    portion of its alleged harms.  Defendants will introduce evidence at trial that Breathitt bore at

10   least some responsibility for the harms claimed.

11       **Objectionable Language.**  Defendants object to Breathitt's proposed language that

12   Breathitt had a duty "to exercise ordinary care in operating a school district."  The issue in this

13   case is not whether Breathitt exercised ordinary care in operating the school district generally, but

14   rather whether it exercised ordinary care with regard to the conduct at issue here.

15       **Non-Protected Conduct.**  Lastly, Breathitt's proposed Instruction is objectionable as it

16   reaches all of Defendants' conduct and, thus, inappropriately invites the jury to consider conduct

17   that cannot form the basis of liability.  Not all conduct by the Defendants is actionable given the

18   Court's rulings about Section 230 and the First Amendment.  *See* SD Order at 2, 12–14; PI Order

19   at 14.  Defendants' "Non-Protected Conduct" language should, therefore, be included.

20

21

22

23

24

25

26

27

28

**Jury Instruction # 29**
**Apportionment of Liability**

*[Defendants object to the inclusion of this Apportionment of Liability instruction, which is already addressed in the Comparative Fault instruction.  If an Apportionment of Liability instruction is given over Defendants' objection, Defendants propose the below agreed-upon language.]*

      If you find that more than one of the Defendants was at fault under Instruction No. ____ [Negligence] or Instruction No. ___ [Public Nuisance] or both, you shall determine from the evidence what percentage, if any, of the total fault was attributable to each such Defendant, as follows:

| | |
|---|---|
| Meta: | ____% |
| Snap: | ____% |
| TikTok: | ____% |
| YouTube: | ____% |
| Total: | 100% |

      In determining the percentages of fault, you shall consider both the nature of the conduct of each party at fault, and the extent of the causal relationship between the conduct and the damages claimed.

      If you have determined that a Defendant was not at fault under any of the preceding Instructions, you shall enter a zero by that Defendant's name in the space provided on the verdict form.

PLAINTIFF'S AUTHORITY:      Cetrulo, Kentucky Instructions to Juries – Civil (Palmore) § 46.01 (Apportionment of Liability).

DEFENDANTS' AUTHORITY:      N/A

DATE SUBMITTED:   January 28, 2026

DATE REVISED:      [insert date]

**BREATHITT'S POSITION**

Breathitt's instruction follows Kentucky's pattern charge on apportionment of damages. Cetrulo, Kentucky Instructions to Juries – Civil (Palmore) §§ 46.01. The parties agree upon the language, and only dispute whether the instruction should be given.

**Ordering.** This instruction should immediately precede the Compensatory Damages instruction.

**Apportionment Instruction is Warranted.** Breathitt's proposed instruction is consistent with Kentucky law, which requires the factfinder to apportion fault "'[i]n all tort actions . . . involving fault of more than one (1) party to the action.'" *Morgan v. Scott*, 291 S.W.3d 622, 634 (Ky. 2009) (quoting KRS § 411.182(1)). Here, because Breathitt alleges multiple Defendants to be at fault for its harms, and the record contains "evidence [that] is sufficient to submit the issue of liability" of each Defendant to the jury, "an apportionment instruction is required." *Id.* (citing *Owens Corning Fiberglas Corp. v. Parrish*, 58 S.W.3d 467, 471 n.5 (Ky. 2001), *as modified* (Nov. 7, 2001)) (cleaned up).

**Comparative Fault Instruction Not Supported by Evidence**. Defendants' true objection is that the Court should instruct on comparative fault instead of apportionment. Kentucky has two instruction schemes for cases involving multiple defendants: this apportionment pattern instruction, where there is no evidence to support the comparative fault of a plaintiff, and the comparative fault instruction, where the defendants have proffered evidence that would permit a jury to find that the plaintiff was a proximate cause of its own injuries. *See* Cetrulo, Kentucky Instructions to Juries – Civil (Palmore) §§ 46.01, 14.09.

Defendants object to the inclusion of an apportionment instruction by arguing that it is duplicative of their proposed instruction on comparative fault. A standalone instruction on apportionment is warranted; for reasons articulated below, *see supra* [Comparative Fault], Defendant's proposed instruction on comparative fault is inappropriate and should not be given to the jury.

1    **DEFENDANTS' POSITION**

2        Breathitt proposes its Apportionment of Liability Instruction in lieu of the Comparative

3    Fault Instruction in an attempt to escape having Breathitt be listed as a party that the jury

4    considers when assigning fault as required under Kentucky law.

5        Kentucky is a "pure" comparative fault state, meaning the jury must apportion a specific

6    share of total liability among the plaintiff and each defendant, and thus Defendant's proposed

7    Comparative Fault Instruction is consistent with Kentucky law. *See* KRS 411.182; *see also*

8    *Carter v. Bullitt Host, LLC*, 471 S.W.3d 288, 298 (Ky. 2015) ("[L]iability—responsibility—

9    under Kentucky law must be determined based on the principles of comparative fault."); *United*

10   *States Fid. & Guar. Co. v. Clara J. Preston*, 26 S.W.3d 145, 148 (Ky. 2000) (explaining that

11   Kentucky is a "pure" comparative negligence state, meaning that "an injured person may recover

12   against one who is negligent even if the injured person was partly responsible for the injury[,]"

13   but "the amount of recovery is reduced in proportion to the injured party's fault"); *Wemyss v.*

14   *Coleman*, 729 S.W.2d 174, 177 (Ky. 1987) (same).

15       The Kentucky Model Instructions allow the jury to simultaneously assess a plaintiff's

16   fault while apportioning liability among joint tortfeasors. Cetrulo, Kentucky Instructions to Juries

17   – Civil (Palmore) § 46.02 (Comparative Fault of Plaintiff); *see also* §§ 14.08 (Comparative Fault)

18   and 14.09 (Comparative Fault, Alternative Form). The comment to Breathitt's lone cited

19   authority—Kentucky Model Instruction Section 46.01— points directly to Section 46.02

20   (Comparative Fault of Plaintiff) as the proper Instruction in situations like this case, where the

21   jury must evaluate how to "combin[e] apportionment and comparative fault on the plaintiff's

22   part." *Id.* § 46.01 (Apportionment of Liability) cmt. The comment to Section 46.01 specifically

23   provides that this model instruction "assumes that no issue of comparative fault on the plaintiff

24   was raised," otherwise it directs you to Section 46.02 (Comparative Fault of Plaintiff). *Id.*

25       In this case, Defendants have an active assertion of comparative fault against Breathitt, as

26   it has been properly asserted, and Breathitt has not moved to strike it and did not seek summary

27   judgment on it. Further, discovery has confirmed that Breathitt was responsible for at least a

28

1    portion of its alleged harms.  Defendants will introduce evidence at trial that Breathitt bore at

2    least some responsibility for the harms claimed.

3         Breathitt's Instruction on Apportionment of Liability is also improper because it is fully

4    addressed in the Comparative Fault Instruction.  Kentucky law provides that when an issue is

5    "properly and adequately presented by the principal or primary instruction," as is the case here,

6    the parties are not entitled to an additional instruction.  *Shewmaker v. Richeson*, 344 S.W.2d 802,

7    807 (Ky. Ct. App. 1961).  The primary substantive difference between the instructions is that the

8    Comparative Fault Instruction lists the four Defendants and Breathitt as parties for the jury to

9    consider when assigning fault, while the Apportionment of Liability Instruction lists the four

10    Defendants and omits Breathitt.  Including Breathitt's proposed Apportionment of Liability

11    Instruction in addition to the proper Comparative Fault Instruction would needlessly "confuse

12    rather than clarify the case for the jury."  *Id*.

13         Breathitt's proposed Apportionment of Liability Instruction is an attempt to avoid having

14    the jury consider Breathitt's own possible comparative fault.  Breathitt's proposed Apportionment

15    of Liability Instruction contravenes Kentucky law requiring and would cause juror confusion.

16         The Court should therefore reject Breathitt's proposed Instruction on Apportionment of

17    Fault.  The proper instruction for the jury to assign liability in this case is the Comparative Fault

18    Instruction.

19

20

21

22

23

24

25

26

27

28

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (BREATHITT)
4:22-md-03047-YGR

**Jury Instruction # 30**

**Compensatory Damages**

It is the duty of the Court to instruct you about the measure of damages.  If you find for Breathitt, you will determine from the evidence and award Breathitt a sum of money that will fairly and reasonably compensate Breathitt for the damages you determine from the evidence it has incurred or is reasonably certain to incur hereafter as a direct result of the injuries sustained as a result of a Defendant's conduct.

Your award may not be based upon speculation, guesswork, or conjecture.  At the same time, the law does not require Breathitt to prove the amount of its damages with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

AUTHORITY:        Cetrulo, Kentucky Instructions to Juries – Civil (Palmore) §§ 13.14 (Damages), 39.02 (Personal Injury; Pain and Suffering), 39.17 (Injury to Real Property; Temporary); 39.29 (Separate Contributing Causation); *Western Union Telegraph Co. v. Ramsey*, 88 S.W.2d 675, 677 (Ky. 1935); *Louisville & N. Ro. Co. v. Lankford*, 200 S.W.2d 297, 298 (Ky. 1947); *Patton v. Bickford*, 529 S.W.3d 717, 731 (Ky. 2016); *Gassaway Constr. Co. v. Gentry*, 264 S.W.2d 658, 659 (Ky. 1954).

DATE SUBMITTED:    January 28, 2026

DATE REVISED:        [insert date]

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (BREATHITT)
4:22-md-03047-YGR

**Jury Instruction # 31**
**Mitigation±**

*[±Defendants' proposal in blue text. Breathitt objects to the instruction in its entirety, but, if such an instruction is given, proposes the language in red text.]*

      Breathitt has a duty to exercise ordinary care to mitigate damages. To mitigate means to avoid or reduce damages. If you find that one or more Defendants caused Breathitt's harms but are further satisfied from the evidence, and Defendants prove by a preponderance of the evidence that Breathitt failed to exercise ordinary care in avoiding or reducing its damages, you will exclude from the amount of the award the amount of damages that you determine from the evidence Breathitt would have avoided had it exercised ordinary care.

PLAINTIFF'S AUTHORITY:      Adopted from Cetrulo, Kentucky Instructions to Juries – Civil (Palmore) §§ 39.21 (Mitigation of Damages; Personal Injury); 39.22 (Mitigation of Damages; Property Damage); 23.04, subsection (3) (Chapter 23 Medical Malpractice, Liability of Physician or Surgeon to Patient; Mitigation of Damages).

DEFENDANTS' AUTHORITY:      This Instruction is consistent with Cetrulo, Kentucky Instructions to Juries – Civil (Palmore) §§ 39.21 (Mitigation of Damages; Personal Injury) and 39.22 (Mitigation of Damages), and Ninth Cir. Model Instructions, Instruction 5.3 (Damages-Mitigation). *See also Morgan v. Scott*, 291 S.W.3d 622, 640 (Ky. 2009); *Davis v. Fischer Single Family Homes, Ltd.*, 231 S.W.3d 767, 780 (Ky. Ct. App. 2007); *Carney v. Scott*, 325 S.W.2d 343, 347 (Ky. 1959); *Kentucky-Ohio Gas Co. v. Bowling*, 95 S.W.2d 1, 5 (Ky. Ct. App. 1936) (internal citations omitted); *Equitable Life Assurance Soc'y of United States v. Merlock*, 69 S.W.2d 12, 15 (Ky. Ct. App. 1934).

DATE SUBMITTED:   January 28, 2026

DATE REVISED:      [insert date]

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (BREATHITT)
4:22-md-03047-YGR

1    **BREATHITT'S POSITION**

2        **Instruction Not Warranted.** Breathitt objects to instructing the jury on the duty to

3    mitigate damages, as Defendants have not supplied any evidence suggesting that Breathitt

4    violated that duty. Under Kentucky law, a defendant is only entitled to a mitigation instruction

5    where "there was sufficient specific evidence introduced to support a mitigation of damages

6    instruction." *Morgan v. Scott*, 291 S.W.3d 622, 640 (Ky. 2009); *see also Morris v. Boerste*, 641

7    S.W.3d 688, 694 (Ky. Ct. App. 2022) (affirming trial court's holding that "there was no factual

8    basis for [an] instruction[] on . . . mitigation of damages."). Courts have routinely rejected such

9    instructions where, as here, the defendant failed to show that the plaintiff's own actions "caused a

10    worsening of her condition." *Morgan v. Scott*, 291 S.W.3d 622, 641 (Ky. 2009); *see also Morris

11    v. Boerste*, 641 S.W.3d 688 (Ky. Ct. App. 2022). Thus, Defendants' proposed mitigation

12    instruction is inapplicable to the facts of the case and, if given, likely to confuse the jury.

13        **Burden of Proof.** Defendants object to instructing the jury that mitigation is an

14    affirmative defense that Defendants have the burden to prove, despite elsewhere instructing the

15    jury on Plaintiffs' burden. This is improper and prejudicial.

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **DEFENDANTS' POSITION**

2    Defendants propose their Instruction on Mitigation of Damages because it is consistent

3    with Kentucky Model Instructions, Kentucky case law, and Ninth Circuit Jury Instructions.

4    Kentucky law imposes a duty on a party claiming personal injury to mitigate, or minimize,

5    its damages. *See, e.g.*, *Davis v. Fischer Single Family Homes, Ltd.*, 231 S.W.3d 767, 780 (Ky. Ct.

6    App. 2007) ("It is well-settled in this Commonwealth that a party must mitigate his damages.");

7    *Equitable Life Assurance Soc'y of United States v. Merlock*, 69 S.W.2d 12, 15 (Ky. 1934) ("It is a

8    rule of general application that where a plaintiff sustains damage by reason of an injury or

9    disease, it is his duty to minimize his damage."). Under this duty, a party must exercise "ordinary

10   care in an effort to cure or to relieve" its alleged injuries. *Merlock*, 69 S.W.2d at 15. This duty to

11   mitigate is also recognized in nuisance claims. *See Kentucky-Ohio Gas Co. v. Bowling*, 95

12   S.W.2d 1, 5 (Ky. 1936). Thus, Defendants' Instruction is consistent with Kentucky case law

13   imposing a duty to mitigate on Plaintiff.

14   Further, Kentucky case law supports providing the jury a "failure-to-mitigate-damages

15   instruction" when "a party introduces evidence that [the plaintiff] has failed properly to mitigate

16   [their] damages …." *Morgan v. Scott*, 291 S.W.3d 622, 640 (Ky. 2009) (first citing *Clark v.*

17   *Hauck Mfg. Co.*, 910 S.W.3d 247, 251 (Ky. 1995); then citing *Farrington Motors, Inc. v. Fidelity*

18   *& Cas. Co. of New York*, 303 S.W.2d 319, 321 (Ky. 1957)). The jury may then reduce the

19   plaintiff's damages "in proportion to the aggravation of injuries by the injured person's improper

20   conduct." *Carney v. Scott*, 325 S.W.2d 343, 347 (Ky. 1959). Discovery has revealed evidence

21   that Breathitt's failure to mitigate caused at least a portion of its alleged harms. Because

22   Defendants will introduce evidence that Plaintiff failed to properly mitigate its damages,

23   Defendants' Instruction will be properly submitted to the jury.

24   Additionally, the language in Defendants' Instruction is consistent with Kentucky Model

25   Instructions and the Ninth Circuit Model Instructions. *See* Cetrulo, Kentucky Instructions to

26   Juries – Civil (Palmore) §§ 39.21 (Mitigation of Damages; Personal Injury) ("… but if you are

27   further satisfied from the evidence that P failed to exercise ordinary care in treating or obtaining

28   proper treatment for his injuries, you will exclude from the amount of the award so much of his

1    damages as you believe from the evidence would have been avoided by the exercise of such

2    care.") and 39.22 (Mitigation of Damages; Property Damage) ("… but if you are further satisfied

3    from the evidence that P failed to exercise ordinary care for the protection of his cattle after

4    learning of the danger to which they were exposed, and that by reason of such failure on his part

5    the damage was greater than it would otherwise have been, you will exclude from the amount of

6    your award so much of P's damages as you believe from the evidence would have been avoided

7    by the exercise of such care."); Ninth Cir. Model Instructions, Instruction 5.3 (Damages-

8    Mitigation) ("The plaintiff has a duty to use reasonable efforts to mitigate damages.  To mitigate

9    means to avoid or reduce damages.").

10        Thus, based on Kentucky Model Instructions, Kentucky case law, and Ninth Circuit Jury

11   Instructions, the Court should accept Defendants' Instruction on Mitigation of Damages.

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (BREATHITT)
4:22-md-03047-YGR

**Jury Instruction # 32**
**No Double Recovery±**

*[±Defendants' proposed language in* blue text*. Breathitt objects to the instruction in its entirety, but, if such an instruction is given over Breathitt's objection, Breathitt proposes the language in* red text*.]*

### (1)    Instruction # 32-D (Defendants' Proposed Instruction)

As a general rule, there can be no double recovery for a single harm. Here, Breathitt complains that it was allegedly injured when it incurred additional expenses as a result of each Defendant's Actionable Non-Protected Conduct.

You may not award the same element of compensatory damages more than once (e.g., for both negligence and public nuisance). Any damages you award must compensate Breathitt for the harms only once, and you must avoid overlapping or duplicative awards.

### (2)    Instruction # 32-P (Plaintiff's Objection and Proposed Instruction)

If you award Breathitt damages under either one or both of its claims, you should not double the amount of damages simply because there are two claims in this case.

PLAINTIFF'S AUTHORITY: N/A

DEFENDANTS' AUTHORITY: *Hardaway Mgmt. Co. v. Southerland*, 977 S.W.2d 910, 918 (Ky. 1998) ("There is a strong public policy in this Commonwealth against double recovery for the same elements of loss."); *see also Schwartz v. Hasty*, 175 S.W.3d 621, 625 (Ky. Ct. App. 2005) ("As a result, an injured party typically cannot receive more than one recovery as compensation for the same harm or element of loss."); *Walls v. Robinson*, No. 2006-CA-002148-MR, 2007 WL 4355475, at *2 (Ky. Ct. App. Dec. 14, 2007) ("Typically, an injured party cannot receive more than one recovery as compensation for the same harm or element of loss." (citation omitted)).

DATE SUBMITTED:   January 28, 2026

DATE REVISED:     [insert date]

**BREATHITT'S POSITION**

Defendants' proposed instruction is not a pattern instruction, based on inapposite law, and likely to confuse the jury about how to consider damages. The Court should not instruct on double recovery at all, but if it elects to do so, it should use Breathitt's plain language instruction to avoid possibilities of error.

**Double Recovery Instruction Not Warranted.** Breathitt's theory of liability is straightforward and the evidence of past and future anticipated costs are enumerated in the evidence. Breathitt further instructs the jury on apportionment between multiple tortfeasors. There is therefore no risk of double recovery in this case. Even if there were, any such risk can be clarified based on the construction of the verdict form.

This is not an instruction routinely given in Kentucky, and the authorities that Defendants cite say no different. *Schwartz v. Hasty*, 175 S.W.3d 621, 625 (Ky. Ct. App. 2005), *Hardaway Management Co. v. Southerland*, 977 S.W.2d 910, 918 (Ky. 1998), and *Walls v. Robinson*, No. 2006-CA-002148-MR, 2007 WL 4355475, at *2 (Ky. Ct. App. Dec. 14, 2007)—are insurance cases involving the collateral source rule, which involves the possibility of recovering from both a tortfeasor and an insurer, or under multiple policies. These cases state only that there is a general rule that compensatory damages be awarded only once, and did not involve a potential jury instruction issue at all. Two involved a party seeking a credit or setoff against a judgment posttrial. *See Hardaway Mgmt.*, 977 S.W.2d at 918; *Schwartz*, 175 S.W.3d at 624-25. And the *Walls* involved an appeal of an evidentiary issue. 2007 WL 4355475, at *2. Defendants have proffered *no* instance of a jury being instructed in this manner.

Even if this had ever happened under Kentucky law, Defendants have not explained how the jury here may be given the impression that Plaintiff seeks duplicative damages awards for the same underlying harm—and in fact it does not. These particular operations of state law are inapplicable here, and Defendants have not articulated why instructing the jury about this prospectively is warranted or helpful.

If there were a need for an instruction on double recovery, Breathitt's proposed instruction is preferable because it is simpler, more straightforward, and less apt to confuse the jury in a way

1    that better comports with Kentucky's "bare bones" approach to jury instructions. *Osborne v.*

2    *Keeney*, 399 S.W.3d 1, 12 (Ky. 2012) ("We prefer 'bare bones' instructions to make the oft-

3    confusing task of determining liability easier for the layperson to perform"). By contrast,

4    Defendants' language highlighting "each Defendant's . . . Conduct" and "same element of

5    compensatory damages" invites error by suggesting that the jury may be limited in finding all

6    Defendants responsible for damages, or finding that damages are warranted under both claims.

7           There is no discernable risk that the jury will determine overlapping awards, so the Court

8    should not instruct on double recovery at all. If it does, it should provide Breathitt's plain

9    language instruction which more clearly addresses the real nature of Defendants objection: there

10   are two claims in the case, and the same damages are sought under each.

11          **Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See*

12   *supra* [Negligence]; [Section 230].

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (BREATHITT)
4:22-md-03047-YGR

1    **DEFENDANTS' POSITION**

2       Defendants' proposed Instruction on Double Recovery is consistent with Kentucky law

3    and helpful to the jury.  Breathitt's negligence and public nuisance claims are undisputedly

4    premised on the same facts, and Breathitt does not seek to distinguish the damage they claim was

5    caused by Defendants' alleged negligence from that they allege was caused by Defendants'

6    alleged nuisance-causing conduct.  An instruction on double recovery is important to preventing

7    the jury from awarding improperly duplicative and overlapping recovery.

8       Breathitt's objection to the inclusion of a double recovery instruction is misplaced and

9    unsupported.  Kentucky law provides that a plaintiff be compensated for injuries through actual or

10   compensatory damages. *Jackson v. Tullar*, 285 S.W.3d 290, 297 (Ky. Ct. App. June 1, 2007)

11   (citing *Ky. Cent. Ins. Co. v. Schneider*, 15 S.W.3d 373, 374 (Ky. 2000)).  Further, actual or

12   compensatory damages seek to make the plaintiff whole by awarding an amount of money

13   designed to equal the wrong done by the defendant. *Jackson*, 285 S.W.3d at 297–98; *Schwartz v.*

14   *Hasty*, 175 S.W.3d 621, 625 (Ky. Ct. App. Feb. 11, 2005) ("A general goal of compensatory

15   damages … is to put the victim in the same position he would have been prior to the injury or

16   make him whole to the extent that it is possible to measure his injury in terms of money.").  As a

17   result, an injured party typically cannot receive more than one recovery as compensation for the

18   same harm or element of loss. *Schwartz*, 175 S.W.3d at 625.

19      Additionally, under Kentucky law, there is strong public policy against double recovery

20   for the same harm or element of loss. *Hardaway Mgmt. Co. v. Southerland*, 977 S.W.2d 910, 918

21   (Ky. 1998) (citing *Morrison v. Ky. Cent. Ins. Co.*, 731 S.W.2d 822, 825 (Ky. Ct. App. April 17,

22   1987)); *Walls v. Robinson*, 2007 WL 4355475, at *2 (Ky. Ct. App. Dec. 14, 2007) ("Typically, an

23   injured party cannot receive more than one recovery as compensation for the same harm or

24   element of loss.") (citation omitted).

25      Moreover, for there to be no doubt that "the damages awarded by the jury are

26   compensatory only, and not punitive in effect, the measure of damages should be stated clearly,

27   simply, and in exact terms." *Coe v. Adwell*, 244 S.W.2d 737, 740 (Ky. Ct. App. 1951).  This is

28   consistent with Defendants' Instruction on Double Recovery, which reduces the possibility that

1    the jury that could award Breathitt a double recovery for the same elements of loss.  *See Coe*, 244

2    S.W.2d at 740; *Hardaway Mgmt. Co.*, 977 S.W.2d at 918.

3        In its argument, Breathitt attempts to discredit Defendants' cited cases as merely applying

4    to insurance cases involving the collateral source rule; however, the propositions for which

5    Defendants cite these cases apply to all tort cases and are not limited to those involving the

6    collateral source rule.  In fact, the *Schwartz* and *Hardaway Mgmt. Co.* cases specifically note that

7    the collateral source rule is an exception to the rule against double recovery.  *Schwartz*, 175

8    S.W.3d at 625 ; *Hardaway Mgmt. Co.*, 977 S.W.2d at 918.  This further supports Kentucky's

9    strong policy against double recovery.

10        **Objectionable Language.**  In contrast to Defendants' Instruction, Breathitt's Instruction

11   proposed in the alternative to its objection is unsupported and misses the purpose of such a double

12   recovery instruction.  Breathitt's proposed language warns jurors that they should "not double the

13   amount of damages simply because there are two claims in this case."  But concern that jurors

14   will simply double the damages does not motivate this instruction.  Rather, a double recovery

15   instruction is necessary to help jurors understand that Breathitt cannot recover twice for the same

16   injury, whether in the same amount or not.  Breathitt's proposed Instruction does not capture that

17   concern and therefore does little to prevent the jury from issuing a duplicative award.

18        **Non-Protected Conduct.**  Breathitt's proposed Instruction also reaches all of Defendants'

19   conduct and, thus, inappropriately invites the jury to consider conduct that cannot form the basis

20   of liability.  Not all conduct by the Defendants is actionable given the Court's rulings about

21   Section 230 and the First Amendment.  *See* SD Order at 2, 12–14; PI Order at 14.  Defendants'

22   "Non-Protected Conduct" language should, therefore, be included.

23

24

25

26

27

28

**Jury Instruction # 33**

**Punitive Damages±**

*[±Breathitt proposes the below red text. Defendants object to this instruction in full. If a punitive damages instruction is given over Defendants' objection, Defendants propose the below blue text.]*

If you find for Breathitt and award it compensatory damages under Instruction(s) ___, and if you are satisfied by clear and convincing evidence that one or more Defendants acted toward Breathitt with gross negligence, you may in your discretion award punitive damages against any such Defendant those Defendants in addition to the damages awarded under Instruction(s) ___.

As used in this instruction:

"Gross negligence" means a wanton or reckless disregard for the rights, safety, or property of others. Even where a single act of negligence might not constitute gross negligence, gross negligence may result from several acts.; and

"Punitive damages" are damages awarded against a Defendant for the purpose of punishing that Defendant for its Actionable Non-Protected Conduct and deterring it and others from engaging in similar Actionable Non-Protected Conduct misconduct in the future.

You may not award punitive damages to punish any Defendant for Protected Conduct or for the development of a Defendant's platform as a whole. Whether you make an award of punitive damages, in addition to the compensatory damages previously awarded, is a matter exclusively within your discretion. If, however, you decide to impose punitive damages, in determining the amount thereof, you should consider the following factors:

(a) The likelihood at the time of such misconduct by the Defendant that serious harm would arise from it;

(b) The degree of the Defendant's awareness of that likelihood;

(c) The profitability of the misconduct to the Defendant;

(d) The duration of the misconduct by the Defendant; and

(e) Any actions by the Defendant to remedy the misconduct once it became known to that Defendant.

Evidence of a Defendant's conduct occurring outside Kentucky may be considered only in determining whether Defendant's conduct occurring in Kentucky was reprehensible, and if so, the degree of reprehensibility. However, you must not use out-of-state evidence to award Breathitt punitive damages against a Defendant for conduct that occurred outside Kentucky.

If you award punitive damages, they must be fixed with calm discretion and sound reason, and must never be either awarded, or fixed in amount, because of any sympathy, or bias, or prejudice with respect to any party to the case.

If you award punitive damages, you will state the amount separately from the sum or sums awarded for compensatory damages under Instruction __.


PLAINTIFF'S AUTHORITY:        Cetrulo, Kentucky Instructions to Juries – Civil (Palmore) § 39.15 (Punitive Damages); *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 388 (Ky. 1985).

DEFENDANTS' AUTHORITY:        N/A


DATE SUBMITTED:    January 28, 2026

DATE REVISED:        [insert date]

1  **BREATHITT'S POSITION**

2      **Punitive Damages Instruction is Warranted.** Under Kentucky law, a party is entitled to

3  have the jury instructed on the issue of punitive damages "if there was *any evidence* to support an

4  award of punitive damages." *Shortridge v. Rice*, 929 S.W.2d 194, 197 (Ky. App. 1996); *Wittmer*

5  *v. Jones*, 864 S.W.2d 885, 890 (1993). Plaintiff's proposed instruction is taken verbatim from

6  Kentucky's pattern instruction for punitive damages. Cetrulo Kentucky Instructions to Juries –

7  Civil § 39.15 Punitive Damages. The use of these pattern instructions is so ubiquitous that the

8  Kentucky Supreme Court has advised courts issuing punitive damages instructions to instruct "the

9  jury in accordance with § 39.15 of *Kentucky Instructions to Juries* by John S. Palmore" to avoid

10  errors. *City of Middlesboro v. Brown*, 63 S.W.3d 179, FN 1 (Ky. 2001).

11      The only substantive change Breathitt adds to the punitive damages instruction is the

12  principle, well-supported in Kentucky law, that a jury may find gross negligence through a

13  culmination of several acts that may not standing alone constitute gross negligence. *See Horton v.*

14  *Union Light, Heat & Power Co.*, 690 S.W.2d 382, 388 (Ky. 1985).

15      **Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See*

16  *supra* [Negligence]; [Section 230].

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' POSITION**

Defendants object to Breathitt's proposed Instruction on Punitive Damages because it is not supported by the evidence. If, however, the Court submits an instruction on punitive damages over Defendants' objection, the Court should adopt Defendants' alternative proposed language. Defendants also reserve the right to seek bifurcation of punitive damages, and to preclude reference to or evidence regarding punitive damages during the liability phase.

It is reversible error "to instruct the jury on an issue when there has been insufficient evidence presented to support a jury finding on that issue." *Jones v. Consol. Rail Corp.*, 800 F.2d 590, 592 (6th Cir. 1986) (citing *Dixon v. Penn Cent. Co.*, 481 F.2d 833, 837 (6th Cir. 1973)); *U.S. Wholesale Outlet & Distrib., Inc. v. Innovation Ventures, LLC*, 89 F.4th 1126, 1136 (9th Cir. 2023) (similar). This principle extends to punitive damages instructions. *Louisville & N.R. Co. v. Sander's Adm'r*, 44 S.W. 644, 645 (Ky. Ct. App. 1898) (reversible error where an instruction "left the jury at liberty to find punitive damages, which was not authorized under the [case] facts"); *Louisville & N.R. Co. v. Licking*, 1873 WL 11076, at *1 (Ky. Ct. App. Jan. 11, 1873) (similar).

Under Kentucky law, punitive damages may only be awarded "for conduct that is outrageous, because of defendant's evil motive or his reckless indifference to the right of others." *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 389 (Ky. 1985) (quoting Restatement (Second) of Torts § 908(2) (1979)). "[T]here must be an element either of malice or willfulness or such an utter and wanton disregard of the rights of others as from which it may be assumed the act was malicious o[r] willful." *Cooper v. Barth*, 464 S.W.2d 233, 234 (Ky. Ct. App. 1971).

In support of Breathitt's proposed Instruction, Breathitt cites Kentucky Model Instructions § 39.15 (Punitive Damages), which provides a model instruction for situations where such an instruction is *permissible*. However, Breathitt's proposed Instruction is *impermissible* because there is no evidence that any Defendant intentionally harmed or deceived Breathitt or that any Defendant's conduct was outrageous. Thus, the Court should reject Breathitt's proposed Instruction.

Alternatively, if the Court submits such an instruction over Defendants' objection, it should reject Breathitt's proposed language and adopt Defendants' alternative language.  To begin, Breathitt's proposed language that gross negligence may result from several acts is not provided for in the Kentucky Model Instructions that Breathitt relies on as authority for its proposed Instruction.

Furthermore, Defendants' language is consistent with the Court's prior rulings on Defendants' Motions to Dismiss as to "Protected Conduct" and "Non-Protected Conduct," along with the protections afforded by Section 230 and/or the First Amendment.  *See* SD Order (ECF 1267) at 13–14 (limiting Defendants' actionable conduct to the non-protected features of Defendants' platforms, as determined by the Court); *id.* at 26 (defining Breathitt's proximate cause theory as (1) "defendants' [non-protected] conduct deliberately fostered compulsive use of their platforms" and (2) that compulsive use "caused the plaintiff school districts to respond by expanding resources"); *see also Patton*, 529 S.W.3d at 730 (Kentucky's causation element "consists of two distinct components: 'but for' causation[] . . . and proximate causation."). Breathitt's proposed Instruction improperly fails to limit the jury's consideration to "Non-Protected Conduct," as required by this Court, when considering punitive damages.  Thus, the Court should reject Breathitt's Instruction.

**STOP
(CLOSING ARGUMENTS)**

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (BREATHITT)
4:22-md-03047-YGR

## V.     POST-CLOSING INSTRUCTIONS

**Jury Instruction # 34**
**Duty to Deliberate**


Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.


AUTHORITY:            Ninth Cir. Model Instructions, Instruction No. 3.1.


DATE SUBMITTED:   January 28, 2026

DATE REVISED:        [insert date]

**Jury Instruction # 35**
**Consideration of Evidence**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media.

This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the court immediately.

AUTHORITY:          Ninth Cir. Model Instructions, Instruction No. 3.2 (modified).

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (BREATHITT)
4:22-md-03047-YGR

DATE SUBMITTED:    January 28, 2026

DATE REVISED:    [insert date]

1

**Jury Instruction # 36**
**Communications with Court**

2

3

4     If it becomes necessary during your deliberations to communicate with me, you may send
      a note through the Courtroom Deputy, signed by any one or more of you. No member of the jury

5     should ever attempt to communicate with me except by a signed writing. I will not communicate
      with any member of the jury on anything concerning the case except in writing or here in open

6     court. If you send out a question, I will consult with the lawyers before answering it, which may
      take some time. You may continue your deliberations while waiting for the answer to any

7     question. Remember that you are not to tell anyone—including the court—how the jury stands,
      whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or

8     have been discharged.

9

10    AUTHORITY:              Ninth Cir. Model Instructions, Instruction No. 3.3.

11

12

13    DATE SUBMITTED:    January 28, 2026

14    DATE REVISED:          [insert date]

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (BREATHITT)
4:22-md-03047-YGR

**Jury Instruction # 37**
**Return of Verdict**

     A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the Courtroom Deputy that you are ready to return to the courtroom.

AUTHORITY:           Ninth Cir. Model Instructions, Instruction No. 3.5.

DATE SUBMITTED:   January 28, 2026

DATE REVISED:      [insert date]

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (BREATHITT)
4:22-md-03047-YGR

1

DATED: January 28, 2026

2

**COVINGTON & BURLING LLP**

3

*/s/ Ashley M. Simonsen*
ASHLEY M. SIMONSEN (Bar No. 275203)

4

COVINGTON & BURLING LLP
1999 Avenue of the Stars

5

Los Angeles, California 90067
Telephone: (424) 332-4800

6

Facsimile: (424) 332-4749

7

Email: asimonsen@cov.com

8

PHYLLIS A. JONES (*pro hac vice*)
PAUL W. SCHMIDT (*pro hac vice*)

9

CHRISTIAN J. PISTILLI (*pro hac vice*)
COVINGTON & BURLING LLP

10

One City Center

11

850 Tenth Street, NW
Washington, DC 20001-4956

12

Telephone: (202) 662-6000
Facsimile: (202) 662-6291

13

Email: pajones@cov.com

14

Email: pschmidt@cov.com
Email: cpistilli@cov.com

15

*Attorneys for Defendants Meta Platforms, Inc. f/k/a*

16

*Facebook, Inc.; and Instagram, LLC*

17

18

19

20

21

22

23

24

25

26

27

28

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (BREATHITT)
4:22-md-03047-YGR

1
2

**WILLIAMS & CONNOLLY LLP**

3       /s/ *Ashley W. Hardin*
        JOSEPH G. PETROSINELLI, *pro hac vice*
4       jpetrosinelli@wc.com
        ASHLEY W. HARDIN, *pro hac vice*
5       ahardin@wc.com
        J. ANDREW KEYES, *pro hac vice*
6       akeyes@wc.com
        NEELUM J. WADHWANI (SBN 247948)
7       nwadhwani@wc.com
        WILLIAMS & CONNOLLY LLP
8       680 Maine Avenue SW
        Washington, DC 20024
9       Tel.: (202) 434-5000
10
11      *Attorneys for Defendants YouTube, LLC and*
        *Google LLC*
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (BREATHITT)
4:22-md-03047-YGR

1

**KING & SPALDING LLP**

2

*/s/David P. Mattern*

3
GEOFFREY M. DRAKE, *pro hac vice*
*gdrake@kslaw.com*

4
TACARA D. HARRIS, pro hac vice
*tharris@kslaw.com*

5
KING & SPALDING LLP

6
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309

7
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

8

9
DAVID P. MATTERN, *pro hac vice*
*dmattern@kslaw.com*

10
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW

11
Suite 900
Washington, D.C. 20006

12
Telephone: (202) 737-0500
Facsimile: (202) 626-3737

13

14
BAILEY J. LANGNER (SBN 307753)
*blangner@kslaw.com*

15
KING & SPALDING LLP
50 California Street, Suite 3300

16
San Francisco, CA 94111
Telephone: (415) 318-1200

17
Facsimile: (415) 318-1300

18

19
*Attorneys for Defendants TikTok Inc., ByteDance Inc., ByteDance Ltd., TikTok Ltd., and TikTok, LLC*

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MUNGER, TOLLES & OLSON LLP**

/s/ *Victoria A. Degtyareva*

JONATHAN H. BLAVIN (State Bar No. 230269)
Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel: (415) 512-4000

VICTORIA A. DEGTYAREVA (State Bar No. 284199)
Victoria.Degtyareva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel.: (213) 683-9100
Facsimile: (213) 687-3702

**KIRKLAND & ELLIS LLP**

ALLISON BROWN, *pro hac vice*
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Tel.: (215) 268-5000

JESSICA DAVIDSON, *pro hac vice*
jessica.davidson@kirkland.com
JOHN J. NOLAN, *pro hac vice*
jack.nolan@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800

*Attorneys for Defendant Snap Inc.*

By: /s/Ronald E. Johnson, Jr.
Ronald E. Johnson, Jr.
Sarah N. Emery
**HENDY JOHNSON VAUGHN**
2380 Grandview Drive
Ft. Mitchell, KY 41017
Tel: 859-578-4444
rjohnson@justicestartshere.com
semery@justicestartshere.com

*Attorneys for Plaintiffs*

LEXI J. HAZAM
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

*Co-Lead Counsel*

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

*Co-Lead Counsel*

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

*Co-chair School District Committee*
*Plaintiffs' Steering Committee Leadership*

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (BREATHITT)
4:22-md-03047-YGR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MELISSA YEATES
**KESSLER TOPAZ MELTZER
& CHECK LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com

*Co-chair School District Committee*
*Plaintiffs' Steering Committee Leadership*
ANDRE M. MURA
**GIBBS MURA LLP**
1111 Broadway, Suite 2100
Oakland, CA 94612
Telephone: 510-350-9717
amm@classlawgroup.com

*Plaintiffs' Steering Committee Leadership*

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (BREATHITT)
4:22-md-03047-YGR

1

## __ATTESTATION__

2

3     I, Ashely M. Simonsen, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the

4     concurrence to the filing of this document has been obtained from each signatory hereto.

5

6     DATED:   January 28, 2026                    By:     */s/ Ashley M. Simonsen*
                                                            Ashley M. Simonsen

7

8                                                         *Attorney for Defendants Meta Platforms,*
                                                        *Inc. f/k/a Facebook, Inc.; and Instagram,*
                                                        *LLC*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (BREATHITT)
4:22-md-03047-YGR