WILLIAMS & CONNOLLY LLP
Joseph G. Petrosinelli, *pro hac vice*
Ashley W. Hardin, *pro hac vice*
680 Maine Avenue SW
Washington, DC 20024
Tel.: (202) 434-5000
jpetrosinelli@wc.com
ahardin@wc.com

*Attorney for Defendants YouTube, LLC
and Google LLC*

*[Additional parties and counsel listed on
signature pages]*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION, <br><br> THIS DOCUMENT RELATES TO: <br><br> Board of Education of Harford County v. Meta Platforms Inc., et al. | MDL No. 3047 <br><br> Case No.: 4:23-cv-03065-YGR <br><br> **PARTIES' JOINT PROPOSED JURY INSTRUCTIONS (BOARD OF EDUCATION OF HARFORD COUNTY)** <br><br> Judge: Hon. Yvonne Gonzalez Rogers <br> Magistrate Judge: Hon. Peter H. Kang |

**TABLE OF CONTENTS**

I.    PRELIMINARY INSTRUCTIONS ........................................................................5

    A.    INSTRUCTION NO. 1: DUTY OF JURY ..................................................5

    B.    INSTRUCTION NO. 2: CLAIMS AND DEFENSES ...............................6

        1.    Plaintiff's Argument ..................................................................8

        2.    Defendants' Argument .............................................................10

    C.    INSTRUCTION NO. 3: BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE..................................................................................................12

        1.    Plaintiff's Argument ................................................................13

        2.    Defendants' Argument .............................................................14

    D.    INSTRUCTION NO. 4: COMPANIES AND PUBLIC ENTITIES ...................15

        1.    Plaintiff's Argument ................................................................16

        2.    Defendants' Argument .............................................................18

    E.    INSTRUCTION NO. 5: TWO OR MORE PARTIES – DIFFERENT LEGAL RIGHTS ...............................................................................................19

        1.    Plaintiff's Argument ................................................................20

        2.    Defendants' Argument .............................................................22

    F.    INSTRUCTION NO. 6: WHAT IS EVIDENCE ...................................24

    G.    INSTRUCTION NO. 7: DIRECT AND CIRCUMSTANTIAL EVIDENCE.......25

    H.    INSTRUCTION NO. 8: WHAT IS NOT EVIDENCE ..........................26

    I.    INSTRUCTION NO. 9: EVIDENCE FOR A LIMITED PURPOSE .................27

    J.    INSTRUCTION NO. 10: RULING ON OBJECTIONS ........................28

    K.    INSTRUCTION NO. 11: CREDIBILITY OF WITNESSES.............................29

    L.    INSTRUCTION NO. 12: PUBLICITY DURING TRIAL....................30

    M.    INSTRUCTION NO. 13: NO TRANSCRIPT AVAILABLE..............................31

    N.    INSTRUCTION NO. 14: BENCH CONFERENCES AND RECESSES............32

    O.    INSTRUCTION NO. 15: VIDEO DEPOSITION ................................33

    P.    INSTRUCTION NO. 16: EXPERT OPINION TESTIMONY ............................34

i

Q.   INSTRUCTION NO. 17: PROTECTION FOR PUBLISHING AND
     EXPRESSIVE ACTIVITY ................................................................35

        1.   Plaintiff's Argument ...................................................39

        2.   Defendants' Argument ................................................41

R.   TRANSITION INSTRUCTION ........................................................43

II.   FIRST CLAIM – NEGLIGENCE ...............................................................44

A.   INSTRUCTION NO. 18: FIRST CLAIM – NEGLIGENCE ...............................44

        1.   Plaintiff's Argument ...................................................45

        2.   Defendants' Argument ................................................47

B.   INSTRUCTION NO. 19: NEGLIGENCE – STANDARD OF REASONABLE
     CARE ...........................................................................................49

        1.   Plaintiff's Argument ...................................................50

        2.   Defendants' Argument ................................................51

C.   INSTRUCTION NO. 20: FORESEEABLE CIRCUMSTANCES ......................53

III.   SECOND CLAIM – PUBLIC NUISANCE ................................................54

A.   INSTRUCTION NO. 21: SECOND CLAIM – PUBLIC NUISANCE.................54

        1.   Plaintiff's Argument ...................................................55

        2.   Defendants' Argument ................................................57

B.   INSTRUCTION NO. 22: PUBLIC NUISANCE – UNREASONABLE
     INTERFERENCE WITH A RIGHT COMMON TO THE GENERAL PUBLIC 59

        1.   Plaintiff's Argument ...................................................60

        2.   Defendants' Argument ................................................61

IV.   ADDITIONAL SUBSTANTIVE INSTRUCTIONS ........................................62

A.   INSTRUCTION NO. 23: CAUSATION ......................................................62

        1.   Plaintiff's Argument ...................................................64

        2.   Defendants' Argument ................................................66

B.   INSTRUCTION NO. 24: CAUSATION – SUBSTANTIAL FACTOR...............68

        1.   Plaintiff's Argument ...................................................69

        2.   Defendants' Argument ................................................71

C.      INSTRUCTION NO. 25: CAUSATION – INTERVENING/SUPERSEDING CAUSE ...............................................................................73

    1.     Plaintiff's Argument ........................................................74

    2.     Defendants' Argument ....................................................75

D.      INSTRUCTION NO. 26: HEEDING PRESUMPTION ....................76

    1.     Plaintiff's Argument ........................................................77

    2.     Defendants' Argument ....................................................78

E.      INSTRUCTION NO. 27: STATUTE OF LIMITATIONS .................80

    1.     Plaintiff's Argument ........................................................81

    2.     Defendants' Argument ....................................................82

F.      INSTRUCTION NO. 28: CONTRIBUTORY NEGLIGENCE ...........84

    1.     Plaintiff's Argument ........................................................85

    2.     Defendants' Argument ....................................................87

G.      INSTRUCTION NO. 29: ASSUMPTION OF RISK .........................89

    1.     Plaintiff's Argument ........................................................90

    2.     Defendants' Argument ....................................................91

H.      INSTRUCTION NO. 30: COMPENSATORY DAMAGES – GENERALLY.....93

    1.     Plaintiff's Argument ........................................................94

    2.     Defendants' Argument ....................................................95

I.      INSTRUCTION NO. 31: COMPENSATORY DAMAGES – NO DOUBLE RECOVERY ...............................................................97

    1.     Plaintiff's Argument ........................................................98

    2.     Defendants' Argument ....................................................99

J.      INSTRUCTION NO. 32: COMPENSATORY DAMAGES – MEASURE .......100

    1.     Plaintiff's Argument ........................................................101

    2.     Defendants' Argument ....................................................102

K.      INSTRUCTION NO. 33: COMPENSATORY DAMAGES – MITIGATION OF DAMAGES.................................................................103

    1.     Plaintiff's Argument ........................................................104

iii

2.      Defendants' Argument ..................................................................105

L.      INSTRUCTION NO. 34: UNUSUALLY SUSCEPTIBLE PLAINTIFF............107

1.      Plaintiff's Argument ..................................................................108

2.      Defendants' Argument ..................................................................109

M.      INSTRUCTION NO. 35: COMPENSATORY DAMAGES – APPORTIONMENT ..................................................................................111

1.      Plaintiff's Argument ..................................................................113

2.      Defendants' Argument ..................................................................115

N.      INSTRUCTION NO. 36: PUNITIVE DAMAGES ............................................117

1.      Plaintiff's Argument ..................................................................118

2.      Defendants' Argument ..................................................................119

O.      INSTRUCTION NO. 37: BURDEN OF PROOF – CLEAR AND CONVINCING EVIDENCE..................................................................................120

STOP  (CLOSING ARGUMENTS) ............................................................................121

V.      POST CLOSING INSTRUCTIONS.............................................................122

A.      INSTRUCTION NO. 38: DUTY TO DELIBERATE .......................................122

B.      INSTRUCTION NO. 39: CONSIDERATION OF EVIDENCE .......................123

C.      INSTRUCTION NO. 40: COMMUNICATIONS WITH COURT ....................124

D.      INSTRUCTION NO. 41: RETURN OF VERDICT.........................................125

**ATTESTATION PURSUANT TO LOCAL RULE 5-1** ...........................................1

Plaintiff Board of Education of Harford County ("Harford") and Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Instagram, LLC (collectively, "Meta"); Snap, Inc. ("Snap"); ByteDance Ltd.; ByteDance Inc.; TikTok Ltd.; TikTok LLC; and TikTok Inc. (collectively, "TikTok"); and Google LLC and YouTube LLC (collectively, "YouTube"), by and through their attorneys of record (collectively, the "Parties"), hereby submit these Joint Proposed Jury Instructions pursuant to Paragraph 3(g) of the Court's Standing Order Re: Pretrial Instructions in Civil Cases (last updated March 17, 2025).[1]

The Parties respectfully reserve the right to amend or supplement these proposed instructions and their objections thereto as the case proceeds towards trial, as the Parties continue to meet and confer regarding these instructions, and as the Court considers these proposals and objections.

| No. | Description | Whether the Parties Stipulate or Object |
|---|---|---|
| **Preliminary Instructions** | | |
| 1. | Duty of Jury | Stipulate |
| 2. | Claims and Defenses | **Harford objects to this instruction in part.** The Parties propose partial competing instructions. |
| 3. | Burden of Proof – Preponderance of the Evidence | The Parties propose partial competing instructions. |
| 4. | Companies and Public Entities | The Parties propose partial competing instructions. |
| 5. | Two or More Parties – Different Legal Rights | The Parties propose partial competing instructions. |
| 6. | What is Evidence | Stipulate |
| 7. | Direct and Circumstantial Evidence | Stipulate |
| 8. | What Is Not Evidence | Stipulate |
| 9. | Evidence for a Limited Purpose | Stipulate (conditioned on limiting instruction being given) |

---

[1] The Parties submit, as Exhibits A and B, redlines reflecting the Parties' proposed modifications to the 9th Circuit Model Instructions, consistent with the Court's Standing Order at Paragraph 3(g)(ii)(H). The Parties understand that this instruction relates solely to the 9th Circuit Model Instruction, and does not apply to any model or pattern instructions regarding state law. However, the Parties are happy to provide such redlines against the state law model instructions if it would be helpful to the Court.

| 10. | Ruling on Objections | Stipulate (the Parties propose giving instruction before the start of evidence) |
|---|---|---|
| 11. | Credibility of Witnesses | Stipulate |
| 12. | Publicity During Trial | Stipulate (the Parties propose giving instruction before the start of evidence) |
| 13. | No Transcript Available | Stipulate (the Parties propose giving instruction before the start of evidence) |
| 14. | Bench Conferences and Recesses | Stipulate (the Parties propose giving instruction before the start of evidence) |
| 15. | Video Deposition | Stipulate (the Parties propose giving instruction before the start of evidence) |
| 16. | Expert Opinion Testimony | Stipulate |
| 17. | Protection for Publishing and Expressive Activity | The Parties propose complete competing instructions. |
| N/A | Transition Instruction | Stipulate |
| **First Claim - Negligence** | | |
| 18. | First Claim – Negligence | The Parties propose partial competing instructions. |
| 19. | Negligence – Standard of Reasonable Care | The Parties propose partial competing instructions. |
| 20. | Foreseeable Circumstances | Stipulate |
| **Second Claim – Public Nuisance** | | |
| 21. | Second Claim – Public Nuisance | The Parties propose partial competing instructions. |
| 22. | Public Nuisance – Unreasonable Interference with a Right Common to the General Public | The Parties propose partial competing instructions. |
| **Additional Substantive Instructions** | | |
| 23. | Causation | The Parties propose partial competing instructions. |
| 24. | Causation – Substantial Factor | The Parties propose complete competing instructions. |
| 25. | Causation – Intervening/Superseding Cause | **Defendants object to this instruction in full.** The Parties propose partial competing instructions. |
| 26. | Heeding Presumption | **Defendants object to this instruction in full.** The Parties |

| | | | |
|---|---|---|---|
| | | | propose partial competing instructions. |
| 27. | | Statute of Limitations | **Harford objects to this instruction in full.** The Parties propose partial competing instructions. |
| 28. | | Contributory Negligence | **Harford objects to this instruction in full.** The Parties propose partial competing instructions. |
| 29. | | Assumption of Risk | **Harford objects to this instruction in full.** The Parties propose partial competing instructions. |
| 30. | | Compensatory Damages – Generally | The Parties propose partial competing instructions. |
| 31. | | Compensatory Damages – No Double Recovery | **Harford objects to this instruction in full.** The Parties propose complete competing instructions. |
| 32. | | Compensatory Damages – Measure | **Harford objects to this instruction in full.** |
| 33. | | Compensatory Damages – Mitigation of Damages | **Harford objects to this instruction in full.** The Parties propose partial competing instructions. |
| 34. | | Unusually Susceptible Plaintiff | **Defendants object to this instruction in full.** The Parties propose partial competing instructions. |
| 35. | | Compensatory Damages– Apportionment | **Harford objects to this instruction in full.** |
| 36. | | Punitive Damages | **Defendants object to this instruction in full.** The Parties propose partial competing instructions. |
| 37. | | Burden of Proof – Clear and Convincing Evidence | Stipulate |
| **STOP (CLOSING ARGUMENTS)** | | | |
| **Post-Closing Instructions** | | | |
| 38. | | Duty to Deliberate | Stipulate |
| 39. | | Consideration of Evidence | Stipulate |
| 40. | | Communications with Court | Stipulate |
| 41. | | Return of Verdict | Stipulate |

3

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

IN RE: SOCIAL MEDIA ADOLESCENT
ADDICTION/PERSONAL INJURY
PRODUCTS LIABILITY LITIGATION

Case No. 4:23-CV-01804-YGR

This Document Relates to:

Board of Education of Harford County v. Meta
Platforms Inc., et al.

**JURY INSTRUCTIONS (COVER PAGE)**

Dated: _____

_____

UNITED STATES DISTRICT JUDGE

1

2

## I.    PRELIMINARY INSTRUCTIONS

### A.    INSTRUCTION NO. 1: DUTY OF JURY

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.


AUTHORITY:        Manual of Model Civil Jury Instructions for the District Courts of the
                 Ninth Circuit (2025 ed., last updated September 2025) ("Ninth Cir. Model
                 Instructions"), Instruction No. 1.4.


DATE SUBMITTED:  January 28, 2026

### B.    INSTRUCTION NO. 2: CLAIMS AND DEFENSES

[*Plaintiff objects to instructing on Defendants' affirmative defenses.  Defendants' proposal in green text; Harford's proposal in blue text.*]

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The Plaintiff in this case is the Board of Education of Harford County, also referred to as "Plaintiff," or "Harford."  The Defendants in this case are four separate groups of technology social media companies:

1.  Meta Platforms, Inc. f/k/a Facebook, Inc., and Instagram, LLC, referred to collectively as "Meta";

2.  Snap Inc., referred to as "Snap";

3.  TikTok Inc., ByteDance Inc., ByteDance Ltd., TikTok Ltd., and TikTok, LLC, referred to collectively as "TikTok"; and

4.  YouTube, LLC and Google LLC, referred to as "YouTube."

Collectively, these four groups social media companies are referred to as "Defendants."

Harford claims that Defendants developed and operated their online platforms—specifically Instagram, Facebook, TikTok, Snapchat, and YouTube—in a manner that caused mental health harms to Harford students and led to additional expenses for the school district. Harford brings two legal claims against each Defendants: negligence and public nuisance. The School District asserts that the Defendants negligently designed, operated, and/or marketed their social media platforms to target students and schools. The School District asserts that the Defendants' actions caused students to experience problematic use, compulsive use, and/or addiction to their platforms, resulting in a deterioration of youth learning, mental health, and overall well-being. The School District also asserts that Defendants' actions disrupted school operations and negatively impacted the school environment. The School District asserts that Defendants' actions harmed the School District by requiring the School District to expend and redirect already limited resources. The School District further asserts that the harms to the School District are ongoing and will continue to cause the School District harm. The School District asserts that the consequences of Defendants' actions were foreseeable, and Defendants failed to warn about those consequences.

Harford has the burden of proving these claims.

The Defendants deny Harford's claims. Defendants also assert three affirmative defenses to Harford's claims: (1) statute of limitations, (2) contributory negligence, and (3) assumption of risk.  Defendants have the burden of proving these affirmative defenses.  Harford denies Defendants' affirmative defenses.

Later, I will explain the specific legal requirements that the parties must prove for each claim or defense.

**PLAINTIFF'S AUTHORITY:**  Ninth Circuit Manual of Model Jury Instructions 1.5

6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DEFENDANTS' AUTHORITY:**  Ninth Circuit Manual of Model Jury Instructions 1.5 (modified to reflect the claims and defenses in this case).

DATE SUBMITTED:  January 28, 2026

### 1.    Plaintiff's Argument

**Social Media Companies.** Defendants' refusal to describe themselves as "social media companies" is unjustifiable. Demanding that they only be called "technology companies" is unduly restrictive for no legitimate reason, confusing, and prejudicial because it does not match reality, the testimony, or documentary evidence that will be admitted at trial, which commonly refers to Defendants as social media companies, including their own press releases. Nor is it prejudicial to Defendants to call them social media companies; that *is* what they are, hence the case caption.

To the extent YouTube specifically objects, its own internal documents refer to it as social media. As far back as 2020, YouTube explicitly stated that "YouTube is the most popular social media site used by 15-25 year olds." (GOOG-3047MDL-00402817).

**Statement of Case.** Plaintiff's proposed instruction includes a brief, accurate, and neutral description of its theories of liability to provide the jury with essential context regarding the claims at issue, as the Court has requested and as is the Court's common practice. *See* YGR Pretrial Standing Order 3(h); *see also Est. of Tindle v. Mateu*, No. 18-CV-05755-YGR, ECF No. 138, at *2 (N.D. Cal. Sept. 28, 2020) (explaining the plaintiff's theory as to how the defendant's conduct violated the U.S. Constitution in its "Claims and Defenses" instruction); *Simmons v. Federal Insurance Company*, No. 4:21-cv-03534-YGR, ECF No. 211, at *1 (explaining, in its first instruction to the jury, the plaintiffs' theory of liability and defendant's position).

Defendants' statement of the case is cursory and does not explain the nature of the harm or the plaintiff's theory of the case. It does little to inform the jury beyond naming the parties.

**Evidence Does Not Support Instruction on Affirmative Defenses.** Harford also objects to Defendants' instruction on affirmative defenses. Under Maryland law, "[t]he defendant is entitled to have the jury instructed on any theory of the defense that is ***fairly supported by the evidence***." *Gen. v. State*, 789 A.2d 102 (2002) (internal citations omitted) (emphasis added); *see also Collins v. Nat'l R.R. Passenger Corp.*, 9 A.3d 56, 229 (2010). As explained in Harford's specific objections to Defendants' proposed instructions on each of these defenses, Defendants have not articulated nor substantiated any basis from which the jury may find assumption of risk, contributory negligence, or a statute of limitations bar. Thus, Defendants' affirmative defenses instruction "'permits the jury

1  members to speculate about inapplicable legal principles,' which is potentially prejudicial." *Giant*

2  *of Maryland LLC v. Webb*, 246 A.3d 664, 681, *aff'd*, 266 A.3d 339 (2021) (quoting *Barksdale v.*

3  *Wilkowsky*, 20 A.3d 765, 777 (2011)).

4        To the extent the Court denies any or all of Defendants' affirmative defense instructions, it

5  should also remove any mention of those instructions in this preliminary instruction.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### 2.    Defendants' Argument

2      Defendants Instruction on Claims and Defenses is consistent with Ninth Circuit Jury

3  Instructions and the Court's Standing Order Re: Pretrial Instructions in Civil Cases (last updated

4  March 17, 2025) ("Standing Order"). [2]  The Standing Order requires that instructions "begin with

5  the standard Ninth Circuit Manual of Model Jury Instructions ('Model Instructions') in Chapters 1

6  and 3 . . . ." Standing Order at 5–6.  Defendants' Instruction is modeled after Model Instruction 1.5,

7  which states that the instruction will "give a brief summary of the positions of the parties" and goes

8  on to identify the parties, "plaintiff's claims," "defendant's . . . affirmative defenses," which party

9  has the burden of proving plaintiff's claims and defendant's affirmative defenses, and the denials of

10  the same.  Defendants' Instruction includes all of this information.  By contrast, Harford objects to

11  instructing on affirmative defenses—a position that is in direct opposition to Model Instruction 1.5.

12      Harford's proposed Instruction provides objectionable characterizations of its claims that

13  are inconsistent with the Model Instruction and the Court's Standing Order.  Harford's paragraph

14  starting "The School District asserts that Defendants . . ." sets out numerous assertions about

15  Harford's allegations that are unnecessary to assist the jury, not in the Model Instructions, and

16  argumentative.  *See id.* at 6 (instructions shall be "free of argument.").  By contrast, Defendants

17  propose a short and neutral summary of Harford's claims that closely tracks its complaint.

18      Defendants object to Harford's language that Defendants "negligently designed, operated,

19  and/or marketed their social media platforms to target students and schools" because it is not an

20  accurate description of their claims.  There is nothing inherently wrong with designing, operating,

21  or marketing a service to children or schools, and this language inaccurately tells the jury that those

22  things are actionable alone, but they are not.

23      Harford's language that "Defendants' actions caused students to experience problematic use,

24  compulsive use, and/or addiction to their platforms, resulting in a deterioration of youth learning,

25  mental health, and overall well-being" is also objectionable.  Harford may not recover in this lawsuit

26  for alleged harm to students, including "deterioration of [students'] learning, mental health, and

27

28

---

[2] Defendants maintain that summary judgment should be granted because Plaintiff has not identified any actionable conduct that caused its alleged harms, and they submit the proposed instruction without waiving such arguments.

1  overall well-being."  The only claims for which Harford may recover are that it incurred its own

2  economic expense as a result of alleged mental health harms suffered by its students.  The jury

3  should not erroneously be instructed that Harford can recover just for harms to students alone.

4  Harford must show actionable, concrete economic injuries, not simply any unfavorable impact on

5  the school district.  Nor should Harford be permitted to recover based upon "disruptive" student

6  behavior that is not tied to student mental health harms; unless the reason that students are being

7  disruptive is a mental health harm caused by Defendants' platforms, Defendants cannot be held

8  liable for that disruption, including because there is no public health interference.

9        Defendants also object to the language about disruption to and "negative impacts on school

10 operations and the school environment" because it misstates what Harford must prove.  Harford

11 must show actionable, concrete injuries, such as out-of-pocket expenses.  Harford's language about

12 "negative impacts"—whatever that means—on "school operations" and the "school environment"

13 suggests that Harford can recover even if it cannot show concrete damages.  That is not sufficient

14 for Harford to prove liability or recover damages.  Defendants further object to this language

15 because "negative impacts," and "school environment" are vague, undefined, and confusing.

16       Harford's language also improperly lumps Defendants together, despite Maryland requiring

17 assessment of liability and apportionment of fault for each party.

18       Defendants object to Harford's use of "Defendants' actions" because it impermissibly

19 suggests that all alleged actions are subject to liability, which is not accurate given the Court's prior

20 rulings on Section 230 and the First Amendment.  *See* Defs.' Proposed Instruction No. 2.

21       Defendants object to any instruction about Harford's failure to warn theory because it is not

22 legally viable.  *See* MSJ (ECF No. 2296) 41–46; MSJ Reply (ECF No. 2511) 12–16.

23       Defendants object to the use of "social media" to describe their companies and platforms, as

24 YouTube and Snap do not agree with those characterizations, and that will be a contested fact at

25 trial.  Harford argues that references to "social media" means Defendants, but Defendants contest

26 this.  The Court's instruction should not weigh in on that factual dispute in Harford's favor.

27

28

## C.     INSTRUCTION NO. 3: BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE

[Defendants' proposal in green text.]

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more likely true than not true. In other words, a preponderance of the evidence means such evidence which, when considered and compared with the evidence opposed to it, has more convincing force and produces in your minds a belief that it is more likely true than not true.

You should base your decision on all of the evidence, regardless of which party presented it. If you believe that the evidence is evenly balanced on an issue, then your finding on that issue must be against the party who has the burden of proving it.

**PLAINTIFF'S AUTHORITY:**

**DEFENDANTS' AUTHORITY:**  Ninth Circuit Manual of Model Civil Jury Instructions 1.6; MPJI-Cv 1:16 BURDEN OF PROOF—PREPONDERANCE OF EVIDENCE STANDARD (modified).

DATE SUBMITTED: January 28, 2026

## 1.    Plaintiff's Argument

Harford objects to reinstructing the jury on the burden of proof, when there is already a burden of proof instruction in the preliminary instructions applicable to all School Districts. Maryland's law is no different on burden proof than the Ninth Circuit patterns instruct, and there is no reason to prefer this instruction over the standard instruction other Bellwether School District Plaintiffs are using, and which Defendants otherwise have agreed to without objection.

It is unnecessary to repeat the burdens of proof per claim and affirmative defense, as the same information is covered just two instructions prior in Claims and Defenses.

1

### 2.    Defendants' Argument

Harford and Defendants agree that Ninth Circuit Manual of Model Civil Jury Instructions 1.6 is the appropriate model instruction.  Defendants do not object to Harford's position that this instruction should be given with the other Ninth Circuit model instructions prior to the substantive instructions.  Defendants propose including additional language from the Maryland Pattern Jury Instructions to assist the jury in its understanding of the preponderance of the evidence standard, including language that clarifies how the jury should handle evidence it believes is evenly balanced on an issue.

1

## D.    INSTRUCTION NO. 4: COMPANIES AND PUBLIC ENTITIES

2

[*Defendants' proposal in green text.*]

3

4        The Defendants in this case are companies. The Plaintiff in this case is a public entity. All parties are equal before the law. Companies and public entities are entitled to the same fair and conscientious consideration by you as any party. Under the law, Plaintiff and Defendants are each considered to be a person and can only act through its subsidiaries, employees, agents, directors, or officers.  Therefore, Plaintiff and Defendants are each responsible for the acts of its subsidiaries, employees, agents, directors, and officers performed within the scope of their authority. An employee, agent, director, or officer is acting within the scope of authority if he or she is engaged in the performance of duties which were expressly or impliedly assigned to them by the corporation.

5

6

7

8

9    AUTHORITY:            Ninth Cir. Model Instructions, Instructions 4.1 4.2, and 4.5 (modified).

10

11    DATE SUBMITTED: January 28, 2026

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### 1.    Plaintiff's Argument

2      The parties began with the Ninth Circuit Model Civil Jury Instructions 4.1 (Corporations

3  and Partnerships – Fair Treatment) and 4.2 (Liability of Corporations – Scope of Authority Not in

4  Issue), which instruct on treating corporate parties fairly and explain that corporations can be held

5  accountable through their employees and officers. The parties agreed to revise the instruction to say

6  "companies" rather than "corporations" (as LLCs are technically companies, but not corporations),

7  and to instruct the jury that they also should not treat Bellwether School District Plaintiffs differently

8  by nature of the fact that they are public entities.

9      The parties conferred about the applicability of Model Civil Jury Instruction 4.2, which

10  instructs the jury on how to determine liability for corporations—a pattern instruction that

11  contemplates that scope of authority is *not* at issue. Plaintiffs believe this instruction may be useful,

12  as the jury will hear testimony from both parties' employees.

13      However, Defendants also suggested including language from Model Civil Jury Instruction

14  4.5 (Agent – Scope of Authority Defined), which goes on to describe what conduct falls "within the

15  scope of authority." Plaintiffs objected to this language, because no party has suggested that any

16  person was not acting within the scope of their authority. Further, Defendants have failed to bring

17  to Plaintiffs' attention any live dispute regarding the liability of parent corporations with respect to

18  the actions of their subsidiaries.[3] Because the jury will not be asked to determine when an employee

19  acts within the scope of their authority, that instruction language is not relevant for the purposes of

20  this case, and risks confusing the jury about what issues they must decide. When given this

21  explanation, Defendants then objected that language from Model Instruction 4.5 is necessary to

22  prevent juror confusion about the meaning of the reference to "scope of authority" in Model

23  Instruction 4.2. The solution there is simple: rather than instruct the jury on an irrelevant concept

24  which may introduce new legal issues and confusion, just remove the language regarding the scope

25  of an employee's authority from Model Instruction 4.2.

26

27  _____

28  [3] *E.g.* Order on Stipulation to Dismiss Certain Meta Defendants, ECF 2401 at 1 ("Meta Platforms Inc. agrees not to assert as a defense to liability in this Matter that it is not responsible for any actions or inactions alleged by Bellwethers as wrongful on the grounds that such actions or inactions were taken in whole or in part by any or all of the Meta Subsidiaries.").

1    Plaintiffs' proposal informs the jury on all relevant issues of law that will help them resolve

2 the questions they are tasked with answering.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PARTIES' JOINT PROPOSED JURY INSTRUCTIONS (BOARD OF EDUCATION OF HARFORD COUNTY)
4:22-md-03047-YGR

### 2.    Defendants' Argument

The Parties jointly propose giving an instruction based on Ninth Circuit Model Instructions 4.1 and 4.2, slightly modified for the facts of this case.  In doing so, Defendants also seek to include in this instruction Ninth Circuit Model Instruction 4.5, which is similarly modified for the facts of this case. Plaintiff objects to the inclusion of language from Model Instruction 4.5 ("An agent is acting within the scope of authority if the agent is engaged in the performance of duties which were expressly or impliedly assigned to the agent by the principal."), and the final clause of Model Instruction 4.2 ("Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.").

Defendants propose this language because the "scope of authority" is integral to understanding and then applying agency law. What is more, Plaintiff provides no authority for the position that Defendants can be held liable for acts of their agents performed outside the scope of their authority. Because several Defendant groups include parent companies and subsidiaries, this language is necessary for the jury to determine potential liability of parent organizations for actions taken by subsidiaries or employees of subsidiaries. *See, e.g.*, *Brit. Telecommunications PLC v. IAC/InteractiveCorp*, 356 F. Supp. 3d 405, 409 (D. Del. 2019) (holding that "a parent corporation is held liable for the actions of its subsidiary if the parent directed or authorized those actions" under an agency theory if the relationship is directly related to the cause of action) (citing *Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.*, 842 F.2d 1466, 14777 (3d Cir. 1988)); *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017) (proving agency relationship between parent and subsidiary requires that establishing the agent "'act[ed] on the principal's behalf and subject to the principal's control.'" (quoting Restatement (Third) Of Agency § 1.01 (2006)).

The Court should give Defendants' requested language in this instruction because it clearly states the law—and Plaintiff fails to provide any basis for rejecting a model instruction.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### E.   INSTRUCTION NO. 5: TWO OR MORE PARTIES – DIFFERENT LEGAL RIGHTS

[Defendants' proposal in green text.]

You should decide the case as to each party separately. A Defendant is responsible only for its own conduct, and one Defendant cannot be liable as a result of conduct by a different Defendant. Unless otherwise stated, the instructions apply to all parties.

AUTHORITY:          Ninth Cir. Model Instructions, Instruction 1.8 (modified).

DATE SUBMITTED: January 28, 2026

1

### 1.    Plaintiff's Argument

2          Plaintiffs propose the pattern instruction language from Ninth Circuit Model Civil Jury

3    Instruction 1.8. Defendants' additional language ("A Defendant is responsible only for its own

4    conduct, and one Defendant cannot be liable as a result of conduct by a different Defendant.") invites

5    juror confusion and misstates the law for causation by multiple tortfeasors, which each Bellwether

6    School District Plaintiff alleges.

7          Each state has developed law for instances of multiple causes that combine or commingle to

8    produce harm: in cases involving multiple alleged tortfeasors whose actions allegedly contributed

9    to an indivisible harm, the plaintiff is required to show that each defendant was a cause-in-fact

10   (typically substantial factor, though Georgia objects that "substantial" sets the bar even too high)

11   before that defendant can be held liable. *See Holland v. United Servs. Auto. Ass'n*, 707 S.W.3d 541,

12   556 (Ky. Ct. App. 2025); *Salica v. Tucson Heart Hosp.-Carondelet, L.L.C.*, 231 P.3d 946, 950-51

13   (Ariz. Ct. App. 2010); *Deaton Holdings, Inc. v. Reid*, 888 S.E.2d 333, 336 (Ga. Ct. App. 2023);

14   *Carter v. Wallace & Gale Asbestos Settlement Tr.*, 96 A.3d 147, 157-59 (Md. Ct. App. 2014);

15   *Boryszewski ex rel. Boryszewski v. Burke*, 380 N.J. Super. 361, 376 (App. Div. 2005); *Jolly v. Gen.*

16   *Elec. Co.*, 869 S.E.2d 819, 829 (S.C. Ct. App. 2021).

17         However, and crucially important, under every state's law, if a defendant is determined to

18   be a cause of the indivisible harm, then it is liable for causing the entire harm. This means that

19   Defendants' language that a Defendant "is responsible only for its own conduct" is not wholly true.

20   Plaintiffs must show that each Defendant was a cause-in-fact and a proximate cause of the harm the

21   Plaintiff alleges, but once shown, all Defendants are responsible for the entire harm.

22         In three of the bellwether states—South Carolina, New Jersey, and Maryland—every

23   defendant is jointly-and-severally liable for the full amount of damages. *Pratt v. Amisub of SC, Inc.*,

24   912 S.E.2d 268, 282-83 (S.C. Ct. App. 2025); *O'Brien (Newark) Cogeneration, Inc. v. Automatic*

25   *Sprinkler Corp. of Am.*, 825 A.2d 524, 531-32 (NJ App. Div. 2003); *Consumer Prot. Div. v. Morgan*,

26   874 A.2d 919, 950 (Md. App. Ct. 2005). In Kentucky, Arizona, and Georgia, the jury apportions

27   damages according to the proportionate fault of the tortfeasors. *Owens Corning Fiberglas Corp. v.*

28   *Parrish*, 58 S.W.3d 467, 477 n. 30 (Ky. 2001); *Piner v. Superior Ct. in and for Cnty. of Maricopa*,

962 P.2d 909, 916 (Ariz. 1998) (en banc); *Fed. Deposit Ins. Corp. v. Loudermilk*, 826 S.E.2d 116, 126 (Ga. 2019). Either way, in all six states, for purposes of causation, the defendant is considered to have *caused* the harm as a whole. *See Owens Corning Fiberglas Corp. v. Parrish*, 58 S.W.3d 467, 477 n. 30 (Ky. 2001); K.R.S. § 411.182; *Piner v. Superior Ct. in and for Cnty. of Maricopa*, 962 P.2d 909, 916 (Ariz. 1998) (en banc); *Deaton Holdings, Inc.*, 888 S.E.2d at 336; O.G.C. § 51-12-33; *Carter*, 96 A.3d at 157-59; *Reichert v. Vegholm*, 366 N.J. Super. 209, 221 (App. Div. 2004); *Smith v. Tiffany*, 799 S.E.2d 479, 481 (S.C. 2017); S.C. Code § 15-38-15.

The only way that a defendant can avoid responsibility for causing an entire indivisible harm is to prove that (1) the harm is actually divisible, and (2) evidence exists that would allow the jury to connect a particular Defendant's actions to a particular part of the divisible harm. Defendants have the burden to show each aspect of apportionability; otherwise, the harm is considered indivisible, and all contributing tortfeasors are considered responsible for the whole. *See* Restatement (Second) Torts §§ 433A, 433B (1965); *see also Parrish*, 58 S.W.3d at 477 n.28; *Piner*, 962 P.2d at 916; *Polston v. Boomershine Pontiac-GMC Truck, Inc.*, 423 S.E.2d 659, 660-61 (Ga. 1992); *Carter*, 96 A.3d at 159-60; *Reichert*, 366 N.J. Super. at 221.

Despite appearing to suggest at the summary judgment hearing that they would not seek instructions that would require *Plaintiffs* to apportion causation, Defendants repeatedly propose jury instructions throughout each Bellwether School District Plaintiff's jury instruction set that ask exactly that—and here as well.

Because Defendants' proposed language suggests that liability must be limited according to each Defendants' causal contribution to the harm, despite no Defendant proving that any Plaintiff's harm is capable of divisibility, the proposal misstates the law and invites jurors to err in their consideration of the evidence. The Court should reject Defendants' added language, and instead give the Ninth Circuit pattern language as written.

## 2.    Defendants' Argument

Defendants propose adding a sentence to Ninth Circuit Model Instruction 1.8 to explicitly instruct the jury on the implications of "decid[ing] the case as to each party separately." This modification to the Model Instruction will prevent confusion for the jury. Repeatedly throughout the proposed substantive instructions, Defendants are referenced as a group. Defendants have objected to this "lumping together" of Defendants and proposed alternative language where appropriate. Despite these objections, however, the jury may still fail to appropriately consider Harford's claims against each Defendant separately or to recognize what it means to consider the claims separately. And this concern becomes particularly acute if the Court does not adopt Defendants' proposed language in the substantive instructions. Thus, this modification to the Model Instruction will aid the jury in faithfully applying the substantive law in each case.

Harford's objections to the basic premise that a "Defendant cannot be liable as a result of conduct by a different Defendant" reflects an attempt to end-run its burden to prove causation. It cannot do that for three reasons.

*First*, Harford puts the cart before the horse: Which party has the burden to prove apportionment of damages is a question that comes into play *after* Harford has met its burden of proof on each element of its claim. *See Carter v. Wallace & Gale Asbestos Settlement Tr.*, 96 A.3d 147, 157 (2014) ("*Following a determination that a defendant's conduct was a substantial factor in causing injury to a plaintiff*, the fact finder must *then* determine an appropriate award of money damages." (emphases added) (footnote omitted)). Defendants' proposed instruction explains to the jury that it may not find one Defendant's conduct caused Harford's injury simply because Harford proved that a *different* Defendant's conduct was a substantial factor in causing its injury.

*Second*, as Harford acknowledges, it bears the burden to prove that a particular Defendant caused its injury. There is no dispute that causation of injury is an element of Harford's claims. *See Asphalt & Concrete Servs., Inc. v. Perry*, 108 A.3d 558, 574 (Md. Ct. Spec. App. 2015), *aff'd*, 133 A.3d 1143 (2016) (explaining that a plaintiff must prove that defendant's conduct "*actually* produced [the purported] injury" and that where multiple potential causes of the injury exist, it must be shown that "either cause, standing alone" would have caused plaintiff's injury (citations

1    omitted)).  This basic tenant of tort law is true even in a case of indivisible injury.  *Carter*, 96 A.3d

2    at 159 ("[I]f an injury is indivisible, any tortfeasor joined in the litigation *whose conduct was a*

3    *substantial factor in causing the plaintiff's injury* would be legally responsible for the entirety of

4    the plaintiff's damages." (emphasis added)).  The substantial factor test under Maryland law is

5    robust: Harford must prove that a particular Defendant's conduct, standing alone, was sufficient to

6    cause its injury.  *Yonce v. SmithKline Beecham Clinical Laboratories*, *Inc.*, 680 A.2d 569, 575–76

7    (Md. Ct. Spec. App. 1996) (explaining that the "but for" test does not resolve situations where more

8    than one cause can bring about an injury, but the "substantial factor" test does); *Maryland v. Exxon*

9    *Mobil Corp.*, 406 F. Supp. 3d 420, 455 (D. Md. 2019) ("[f]atal to the State's argument . . . is that a

10   cause *must be sufficient before it can be substantial*" (emphasis added)) (citation omitted).   In

11   objecting to Defendant's proposed language, Harford ignores this stringent standard.

12        *Third*, Harford's alleged damages are reasonably divisible.   Under Maryland law,

13   apportionment of damages is appropriate in cases "where the injury is reasonably divisible and

14   where there are two or more causes of the injury."  *Carter*, 96 A.3d at 156.  Damages for harm "are

15   to be apportioned" where "(a) there are distinct harms or (b) there is a reasonable basis for

16   determining the contribution of each cause to a single harm."  *Id.* at 158 (quoting Restatement

17   (Second) of Torts §433A); *see also Mayor & City Council of Baltimore v. Purdue Pharma, L.P.*,

18   2025 WL 1707625, at *4 (Md. Cir. Ct. June 12, 2025) ("[T]he public nuisance injury claimed by

19   the City is divisible, meaning that any liability or damages proved by the City could be apportioned

20   both among any liable Defendants and to other actors.").  As in *Mayor & City Council of Baltimore*

21   *v. Purdue Pharma, L.P.*, Harford's claimed damages span across a number of years.  "It is plain that

22   conduct and causative factors change over such a long span of time."  *Id.* at *31.  Moreover, just as

23   prescription opioid misuse "occurs in different ways with opioids from differing sources," so too

24   here, the alleged overuse of "social media" by Harford students occurs in different ways on distinct

25   platforms.  *See id.*  For these reasons, Harford's injuries are reasonably divisible.

26        Thus, Harford has no legal basis to object to this instruction, which would be helpful to the

27   jury alongside aiding in avoiding confusion over how to view corporate separateness among distinct

28   legal entities.

## F.     INSTRUCTION NO. 6: WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

1.   the sworn testimony of any witness;

2.   the exhibits that are admitted into evidence;

3.   any facts to which the lawyers have agreed; and

4.   any facts that I have instructed you to accept as proved.

AUTHORITY:          Ninth Cir. Model Instructions, Instruction 1.9.

DATE SUBMITTED: January 28, 2026

1

## G.    INSTRUCTION NO. 7: DIRECT AND CIRCUMSTANTIAL EVIDENCE

2

3        Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as
testimony by a witness about what that witness personally saw or heard or did. Circumstantial
4 evidence is proof of one or more facts from which you could find another fact.

5        By way of example, if you wake up in the morning and see that the sidewalk is wet, you
may find from that fact that it rained during the night.  However, other evidence, such as a turned-
6 on garden hose, may provide a different explanation for the presence of water on the sidewalk.
Therefore, before you decide that a fact has been proved by circumstantial evidence, you must
7 consider all the evidence in the light of reason, experience, and common sense.

8        You should consider both kinds of evidence.  The law makes no distinction between the
weight to be given to either direct or circumstantial evidence.  It is for you to decide how much
9 weight to give to any evidence.

10

11

AUTHORITY:        Ninth Cir. Model Instructions, Instruction 1.12 (modified to include
12                 illustrative example suggested in comment to Instruction 1.12).

13

14

DATE SUBMITTED: January 28, 2026

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## H.    INSTRUCTION NO. 8: WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1)    Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses. What they say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)    Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)    Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.

(4)    Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

AUTHORITY:        Ninth Cir. Model Instructions, Instruction 1.10 (modified).

DATE SUBMITTED:  January 28, 2026

1

## I.    INSTRUCTION NO. 9: EVIDENCE FOR A LIMITED PURPOSE

2

3    *[The Parties agree to this instruction on the condition that it be given only if there is a limiting*
     *instruction ordered.]*

4

5          Some evidence may be admitted only for a limited purpose.

6

7          When I instruct you that an item of evidence has been admitted only for a limited purpose,
     you may consider it only for that limited purpose and not for any other purpose.

8

9    AUTHORITY:           Ninth Cir. Model Instructions, Instruction 1.11.

10

11

12   DATE SUBMITTED: January 28, 2026

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## J.    INSTRUCTION NO. 10: RULING ON OBJECTIONS

*[The Parties propose this instruction be given before the start of evidence.]*

There are rules of evidence that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.

If I overrule the objection, the question may be answered, or the exhibit received.  If I sustain the objection, the question cannot be answered, and the exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence.  That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

AUTHORITY:            Ninth Cir. Model Instructions, Instruction 1.13.

DATE SUBMITTED:  January 28, 2026

## K.    INSTRUCTION NO. 11: CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)    the opportunity and ability of the witness to see or hear or know the things testified to;

(2)    the witness's memory;

(3)    the witness's manner while testifying;

(4)    the witness's interest in the outcome of the case, if any;

(5)    the witness's bias or prejudice, if any;

(6)    whether other evidence contradicted the witness's testimony;

(7)    the reasonableness of the witness's testimony in light of all the evidence; and

(8)    any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said.  Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently.  You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.  On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.  What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

AUTHORITY:          Ninth Cir. Model Instructions, Instruction 1.14.

DATE SUBMITTED:  January 28, 2026

## L.    INSTRUCTION NO. 12: PUBLICITY DURING TRIAL

*[The Parties propose this instruction be given before the start of evidence.]*


    If there is any news media account or commentary about the case or anything to do with it, you must ignore it.  You must not read, watch or listen to any news media account or commentary about the case or anything to do with it.  The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies. If any juror is exposed to any outside information, please notify me immediately.


AUTHORITY:          Ninth Cir. Model Instructions, Instruction 1.16.


DATE SUBMITTED: January 28, 2026

1

## M.    INSTRUCTION NO. 13: NO TRANSCRIPT AVAILABLE

2

3    *[The Parties propose this instruction be given before the start of evidence.]*

4

5    I urge you to pay close attention to the trial testimony as it is given.  During deliberations
6    you will not have a transcript of the trial testimony.

7

8    AUTHORITY:        Ninth Cir. Model Instructions, Instruction 1.17.

9

10    DATE SUBMITTED: January 28, 2026

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## N.    INSTRUCTION NO. 14: BENCH CONFERENCES AND RECESSES

2

3    *[The Parties propose this instruction be given before the start of evidence.]*

4

5         From time to time during the trial, it may become necessary for me to talk with the
6    attorneys out of the hearing of you the jury, either by having a conference at the bench when you
7    the jury are present in the courtroom, or by calling a recess.  Please understand that when this
     happens and you are waiting, we will be working.  The purpose of these conferences is not to keep
8    relevant information from you, but to decide how certain evidence is to be treated under the rules
     of evidence and to avoid confusion and error.

9

10   AUTHORITY:         Ninth Cir. Model Instructions, Instruction 1.20 (modified).

11

12   DATE SUBMITTED:  January 28, 2026

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## O.    INSTRUCTION NO. 15: VIDEO DEPOSITION

*[The Parties propose this instruction be given before the start of evidence.]*

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.

You will be shown video-recorded testimony of certain witnesses.  Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

AUTHORITY:        Ninth Cir. Model Instructions, Instruction 2.4 (modified).

DATE SUBMITTED:  January 28, 2026

## P.    INSTRUCTION NO. 16: EXPERT OPINION TESTIMONY

You have heard testimony from experts who testified about their opinions and the reasons for those opinions.  This opinion testimony is allowed, because of the specialized knowledge, skill, experience, training, or education of this witness.

Such opinion testimony should be judged like any other testimony.  You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's specialized knowledge, skill, experience, training, or education, the reasons given for the opinion, and all the other evidence in the case.

AUTHORITY:    Ninth Cir. Model Instructions, Instruction 2.13.

DATE SUBMITTED: January 28, 2026

PARTIES' JOINT PROPOSED JURY INSTRUCTIONS (BOARD OF EDUCATION OF HARFORD COUNTY)
4:22-md-03047-YGR

## Q.     INSTRUCTION NO. 17: PROTECTION FOR PUBLISHING AND EXPRESSIVE ACTIVITY

[*Defendants' proposal in green text; Harford's proposal in blue text.*]

### Instruction 17-P

In this case, you may not hold Defendants liable simply because Defendants hosted or published users' content, or because they removed or failed to remove content posted by users.

However, in deciding whether Defendants are liable for negligence or public nuisance, you may hold Defendants liable for their own actions, even if users' content contributed to the harm, so long as Defendants' actions were a substantial factor in causing Harford's harm. You may also hold Defendants liable for failing to warn about the risks of harm caused by their platforms even if users' content contributed to the harm, so long as Defendants' failure to warn was a substantial factor in causing Harford's harm.

### Instruction 17-D

Defendants in this case are providers of online platforms that publish their own content and content generated by users. The U.S. Constitution's First Amendment, as well as a federal law called Section 230, provide certain protections for Defendants when they publish such content or otherwise engage in expressive activity.

Under Section 230, Defendants are not liable when they act as publishers of "third-party content"—that is, content posted by the users of Defendants' platforms on those platforms. Such "third-party content" includes words, messages, pictures, video, audio, comments, or any other form of communication that users post, whether publicly or privately, on the Defendants' platforms. Each Defendant cannot be found liable under Section 230 for publishing third-party content on its platform, including whether, how, when, and to whom that content is published.

Under the First Amendment, each Defendant is not liable for exercising its right to speak or engage in expressive activity. That means each Defendant cannot be found liable for making available the content displayed on its platform, such as posts, text, videos, images, music, comments, and "likes," as well as recommending, delivering, displaying, compiling, ranking, and organizing posts, comments or other content made by users of its platform.

The Court has ruled that these legal protections apply to certain types of Defendants' conduct that are "Protected Conduct" and cannot be the basis for finding any Defendant liable.

"Protected Conduct" includes making user content or communications available on Defendants' platforms. You may not find any Defendant liable on the basis of user content (e.g., posts) or communications (e.g., messages) published on the Defendant's platform—whether shared privately between users or shared publicly to a broader audience. In other words, if you find that user content or communications on a Defendant's platform caused some or all of the harms to students alleged by Harford, you may not find the Defendant liable on the basis of that user content or communications.

"Protected Conduct" also includes a Defendant's publishing decisions. You may not find any Defendant liable on the basis of its decisions about whether and how to compile, disseminate, or display content to its users. This protection applies even when a Defendant uses technological tools, like an algorithm that recommends content to users.

"Protected Conduct" also includes specific design features of each Defendant's platforms that the Court has already ruled are protected by Section 230 and/or the First Amendment and cannot be the basis for finding any Defendant liable.

Therefore, you may not find any Defendant liable on the basis of any of the following "Protected Conduct":

1. Making third-party content available on a Defendant's platform;

2. Making decisions about whether and how to recommend, compile, organize, disseminate, and display content to users of a Defendant's platform;

3. Using of algorithms to encourage users to spend more time on a platform, including the use of algorithms to display content;

4. Providing users with an endless feed or infinite scroll;

5. Providing informational messages, notifications, or alerts about third-party content or a Defendant's own content, including the timing and clustering of those notifications and regardless of how they are sent (i.e., audiovisually or through vibrations);

6. Not placing default protective limits on the length and frequency of use sessions;

7. Making decisions about whether or not to institute blocks preventing use of a platform during certain times of day (such as during school hours or late at night);

8. Making decisions to recommend certain accounts to certain users;

9. Providing content in short-form or ephemeral formats (i.e., formats that disappear after a certain period of time);

10. Allowing users to post or provide comments or to receive comments posted by others;

11. Allowing users to exchange, send, or post private content;

12. Publishing geolocating information (i.e., information about users' locations) for users;

13. Using autoplay features (i.e., videos playing automatically after a video ends);

14. Displaying "Likes" or listing the number of "Likes" certain content has received; and

36

15. Providing awards to users, including to frequent users or for continuous engagement with a Defendant's platform.

Therefore, in evaluating whether Harford has met its burden to satisfy the elements of a claim as to each Defendant, you <u>may</u> consider only "Non-Protected Conduct," which consists only of the Defendant's design and/or use of the following:

*["Non-Protected Conduct" list to be completed after ruling on MSJ and other motions and based upon case-specific evidence, but not to exceed the below list.]*

1. Options for users to self-restrict time spent using a platform;

2. The process for users to delete their accounts;

3. Labels for filtered content;

4. Appearance-altering filters; and

5. Processes for users to report suspected child sexual abuse materials to Defendants' platforms.

You may impose liability, if any, only if the harm is caused by this Non-Protected Conduct and the other elements of each claim are met. You may not find any Defendant liable on the basis that the Defendant's platform as a whole caused harm. It is Harford's burden to prove that any harm it allegedly suffered was caused by Non-Protected Conduct. I will now instruct you on the elements of each claim.

**PLAINTIFF'S AUTHORITY:** N/A

**DEFENDANTS' AUTHORITY:** 47 U.S.C. § 230(c)(1); *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 702 F. Supp. 3d 809, 825–37 (N.D. Cal. 2023) (outlining relevant protections under Section 230 and the First Amendment); *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 754 F. Supp. 3d 946, 962–64 (N.D. Cal. 2024) (same, for school districts' claims); *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 878–85, 894–95 (N.D. Cal. 2024) (same, for state attorneys general claims); *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1107 (9th Cir. 2009), *as amended* (Sept. 28, 2009) (holding that Section 230 "precludes liability when the duty the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a publisher or speaker"); *id.* at 1102 (publication "involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content"); *Estate of Bride by and through Bride v. Yolo Technologies, Inc.*, 112 F.4th 1168, 1180 (9th Cir. 2024) (Section 230 precludes failure-to-warn theories that fault platform "for not mitigating, in some, way, the harmful effects of . . . content"); *Doe v. Grindr*, 128 F.4th 1148 (9th Cir. 2025) (similar); U.S. Const. Amend. I; *Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) ("If the acts of 'disclosing' and 'publishing' information do not constitute speech, it is hard to imagine what does fall within that category[.]"); *NetChoice, LLC v. Bonta*, 113 F.4th 1101, 1119 (9th Cir. 2024) (holding law that would require platforms to "opine on potential speech-based harms to children" was subject to strict scrutiny and was likely invalid); *NetChoice v. Carr*, 789 F. Supp. 3d 1200 (N.D. Ga. June 26, 2025) (holding that age verification requirement "imposes a sweeping burden on adults' access to speech"); *Students Engaged in Advancing Texas*

37

1    *v. Paxton*, 765 F. Supp. 3d 575, 559–600 (W.D. Tex. 2025) (similar); *NetChoice, LLC v. Griffin*,

2    2025 WL 978607, at *13 (W.D. Ark. Mar. 31, 2025) (similar).

1                              **1.    Plaintiff's Argument**

2              Plaintiffs' proposal accurately instructs the jury that it cannot impose liability on Defendants

3     for hosting or publishing users' content, or for removing or failing to remove content posted by

4     users. It also explains that Defendants may be held liable for their own actions, including failing to

5     warn of known risks from the platform as a whole, even if content is in the causal chain. That latter

6     instruction is in keeping with the Court's past rulings.[4] It is in keeping with the parties' longstanding

7     understanding of the Court's past rulings.[5] And it is in keeping with binding Ninth Circuit precedent.

8     *See Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 744 (9th Cir. 2024) ("In *Internet Brands*, the

9     platform faced liability not because it failed to remove the ads, but because it failed to warn about

10    their content. Thus, Plaintiffs' claims may fare better if they sought to impose liability on Meta for

11    failing to warn about fraudulent content….").

12             By contrast, Defendants' obtuse and bloated instruction invites the jury to apply the wrong

13    Section 230 test and disregard evidence the Court may deem admissible. It has three problems. First,

14    the instruction improperly tells the jury that Defendants "are not liable when they act as publishers

15    of 'third-party content.'" This is wrong. Section 230 protection hinges on the *legal duties* being

16    imposed, not whether or not Defendants act as publishers. *See e.g.*, *Lemmon v. Snap, Inc.*, 995 F.3d

17    1085, 1092–93 (9th Cir. 2021); *Calise*, 103 F.4th at 740-42. The duties at issue in this case are,

18    roughly, (a) a duty to warn students, parents, and school districts about the risk of compulsive and

19    addictive use from Defendants' platforms; (b) a duty not to negligently design and target at young

20    people platforms with defective age verification, parental controls, and other Court-specified

21

22    _____

      [4] ECF 430 at 20 (failure to warn claims "plausibly allege that defendants are liable for conduct
23    other than publishing of third-party content and that they could address their duty without
      changing what they publish"); ECF 716 at 4-5 ("based on" Court's motion to dismiss ruling,
24    "particularly with respect to Claims 2 and 4, the scope of discovery in this matter encompasses all
      product defects alleged"); ECF 1214 at 45 (Section 230 does not "bar[] liability predicated on a
25    failure to warn of known risks of addiction attendant to any platform features or as to platform
      construction in general"); ECF 1267 at 14 (same); Hearing Tr. 27:24-28:9, Nov. 16, 2023
26    (affirming that the failure to warn claim extends beyond features barred by Section 230 for the
      product liability claims); Hearing Tr. 33:22-34:23, Mar. 21, 2024 (Judge Kang: "the Claims 2 and
27    4 were not dismissed and on the face of it keep any and all of the alleged defects in the case.
      That's the way I read the order.").

28    [5] *See, e.g.*, Br. For Meta at 2, *California et al. v. Meta*, No. 24-7037 (9th Cir. Mar. 31, 2025)
      (Court permitted "plaintiffs' failure to warn claims relating to certain platform features to
      proceed, even though . . . other claims as to the same features are barred by Section 230").

1    features, *see* ECF 430 at 14-15; and (c) a duty not to interfere with the public rights to health, safety,

2    and education through the foregoing actions. None of these duties would require Defendants to

3    monitor or remove third-party content, or change how they publish content. As such, claims based

4    on these duties are not protected by Section 230. *See Calise*, 103 F.4th at 741.

5           Second, Defendants' instruction includes an instruction on "protected" versus "non-

6    protected" features that is both confusing and legally incorrect. Under the Court's pretrial rulings,

7    Defendants are protected from a state law duty to modify certain features such as their

8    recommendation algorithm. But Section 230 does not protect Defendants from a duty to warn of

9    known risks attendant to use of those same features. That duty *would* require Defendants to put

10    others on notice of known harms, but it *would not* require Defendants to change anything about

11    how, what, or when they publish. *See Internet Brands, Inc*., 824 F.3d at 851; *see also Est. of Bride*

12    *by & through Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1179 (9th Cir. 2024) (no Section 230

13    protection where "online content is involved in these facts, and content moderation is one possible

14    solution for [defendant] to fulfill its promise, [but] the underlying duty . . . is the promise itself").

15           Third, Defendants' instruction erroneously asks the jury to disregard whole categories of

16    evidence *even if* the Court deems it admissible for certain purposes. *See* Defs' Instruction ("you <u>may</u>

17    consider only "Non-Protected Conduct"). Facts that are not independently actionable may still be

18    evidence in support of other claims.  *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab.*

19    *Litig.*, 497 F. Supp. 3d 552, 633 n.61 (N.D. Cal. 2020). This principle extends to cases involving

20    Section 230. *Calise*, 103 F.4th at 742 ("How could Internet Brands warn about certain harmful

21    content without considering what it was? Such a rudimentary fact-bound inquiry quickly falls apart

22    and runs up against our precedent."). Accordingly, the jury may properly hear evidence about the

23    various mechanisms through which Defendants fostered compulsive use, their corporate knowledge

24    about the same, and the resulting harm to students and school districts.

25           Finally, Judge Kuhl has indicated a First Amendment instruction would be improper, as the

26    scope of protection is not a jury question, and the Court should take the same approach here.

27

28

1

## 2.    Defendants' Argument

2

The Court has already ruled that Section 230 and the First Amendment impose a "significant

3

limitation on Plaintiffs' theories of recovery."  ECF No. 1267 ("First SD Order") at 2.  To give

4

effect to these rulings, the Court must instruct the jury on which conduct may—and may not—form

5

the basis of liability.  Defendants' proposed instruction identifies the specific features and activities

6

that this Court has already held are protected as a matter of law, as well as those that may form the

7

basis of liability.  Without that specificity, the instructions would improperly invite the jury to find

8

a Defendant liable for conduct that is "no longer part of this case."[6]

9

Harford's proposed instruction disregards the Court's feature-by-feature analysis altogether

10

and does not even mention any of the features or activities this Court held are protected.  First SD

11

Order at 12–13; *see also*  ECF No. 430 ("PI Order") at 14–16.  Harford's instruction would thus

12

improperly require the jury to determine on its own which features are protected, rather than

13

applying this Court's answers to those legal questions.  *See Tortu v. L.V. Metro. Police Dep't*, 556

14

F.3d 1075, 1085 (9th Cir. 2009) (courts must resolve legal questions and instruct the jury

15

accordingly).  And it creates a high risk of confusing the jury into thinking that *none* of Defendants'

16

conduct is protected.  *See L.A. Mem'l Coliseum Comm'n v. NFL*, 726 F.2d 1381, 1398 (9th Cir.

17

1984) ("Well-tailored and specific instructions" may be necessary where "abstract legal principles

18

are not self-explanatory to a lay jury" and the facts "are complex" (citation omitted)).

19

Harford's misguided assertion that its failure-to-warn theory renders the distinction between

20

protected and unprotected conduct irrelevant fails for numerous reasons.  First, a substantial body

21

of binding case law has emerged since the Court's prior rulings confirming that Section 230 bars

22

failure-to-warn claims that arise from protected publishing activity, including challenged features.[7]

23

*See, e.g., Doe v. Grindr*, 128 F.4th 1148, 1154 (9th Cir. 2025); *Estate of Bride by and through Bride*

24

*v. Yolo Technologies, Inc.*, 112 F.4th 1168, 1179–80 (9th Cir. 2024); *Doe (K.B.) v. Backpage.com,*

25

*LLC*, 768 F. Supp. 3d 1057, 1067 (N.D. Cal. 2025).  *Calise v. Meta Platforms, Inc.*, 103 F.4th 732,

26

27

---

[6] Defendants reserve the right to argue for the exclusion at trial of any evidence of content and protected publishing features.

28

[7] In light of this intervening authority, Defendants did not include failure to warn in their list of non-protected conduct.  Defendants omitted age verification from the list for similar reasons.  *See, e.g., NetChoice v. Carr*, 789 F. Supp. 3d 1200, 1230 (N.D. Ga. 2025).

41

1    743, 746 (9th Cir. 2024), is not to the contrary, because that case did not involve any failure- to-

2    warn claims at all, and it held that Section 230 barred all of the plaintiff's non-contractual claims.

3    *See id.* at 743, 746.  Further, *Calise*'s discussion of failure-to-warn claims is *dicta*—not binding

4    precedent—and it is inconsistent with the Ninth Circuit's subsequent decisions in *Bride* and *Grindr*.

5         In any event even if the Court permits the failure-to-warn claim to proceed in its entirety, the

6    jury still could not find liability for any damages caused by protected conduct; it could find liability

7    only for damages caused by failing to warn about that protected conduct.[8]  Harford's proposal

8    ignores that distinction and renders the vast majority of the Court's rulings null.

9         Harford's proposal is also erroneous because it states that the jury "may hold Defendants

10   liable for their own actions even if users' content contributed to the harm, so long as Defendants'

11   actions were a cause of Plaintiff's harm."  This instruction ignores this Court's rulings that many

12   categories of "Defendants' actions" are protected publishing conduct that cannot form the basis of

13   liability.  *See* First SD Order at 14; PI Order at 5, 22. Further, Harford's instruction also invites error

14   by encouraging the jury to hold Defendants liable for harms so long as any unprotected conduct is

15   involved in any way, however minimally, in the causal chain.  But claims against online platforms

16   like Defendants must be "*fully independent of* [their] role in monitoring or publishing third-party

17   content." *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1093 (9th Cir. 2021) (emphasis added); *Grindr*,

18   128 F.4th 1148, 1153 n.3 (9th Cir. 2025) (same; it is "analytically insignificant whether [the

19   plaintiff's] injuries would not have occurred 'but for' [a platform's] role as a publisher" (citation

20   omitted)); *see* PI Order at 11 (requiring claims "ha[ve] *nothing to do*" with platform's role as

21   publisher (emphasis added)).

22        Finally, because the protections of Section 230 and the First Amendment cut across all of

23   Harford's claims, Defendants submit that this instruction must be placed early in the instructions to

24   give important context to the remaining instructions.  Placing the instruction near the end, as Harford

25   proposes, would risk confusing the jury into erroneously concluding that Section 230 and the First

26   Amendment are distinct issues that do not affect the proper framing of Harford's claims.

27

28   _____

[8] If the Court permits the jury to hold Defendants liable for failure to warn about protected conduct, the proper approach would be to add failure to warn to the list of non-protected conduct.

1

## R.     TRANSITION INSTRUCTION

2

3          The Court will now explain the substantive law applicable to the claims and defenses
brought in this action.  These include Harford's negligence claim and public nuisance claims, and
4   Defendants' affirmative defenses of statute of limitations, contributory negligence, and
assumption of risk.

5

6   AUTHORITY:          Standing Order, § 3(g)(ii)(B) (modified to reflect the claims and defenses
in this case).
7

8

9   DATE SUBMITTED: January 28, 2026

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.    FIRST CLAIM – NEGLIGENCE

### A.    INSTRUCTION NO. 18: FIRST CLAIM – NEGLIGENCE

[*Defendants' proposal in green text; Harford's proposal in blue text.*]

Harford's first claim is negligence.  In order for Harford to prove its negligence claim against Meta, Snap, TikTok, or YouTube, Harford must prove by a preponderance of the evidence all of the following as to each Defendant:

(a) Duty or obligation, recognized by law, requiring conformance to a certain standard of conduct for the protection of others against unreasonable risks;

(b) Failure to conform to that standard (breach of duty);

(c) Reasonably close causal connection and resulting harm (proximate cause); and

(d) Actual damage or loss by others.

(1) That the Defendant's Non-Protected Conduct breached the duty to use reasonable care;

(2) That such breach caused Harford's students to suffer mental health harms; and

(3) That those students' mental health harms caused Harford to incur the additional expenses it claims as damages.

In determining whether any Defendant was negligent, you must consider only whether that Defendant exercised reasonable care with respect to the specific Non-Protected Conduct at issue. You may not make your determination based on any Defendants' platforms as a whole, and you may not make your determination based on consideration of any Protected Conduct, even if you determine that it was negligent.

**PLAINTIFF'S AUTHORITY:**

**DEFENDANTS' AUTHORITY:** MPJI-Cv 19:1 DEFINITION cmt. A.1 (describing "the elements of a negligence action") (modified); First SD Order at 2, 12–14; PI Order at 14; *Yonce v. SmithKline Beecham Clinical Laboratories*, *Inc.*, 680 A.2d 569, 575–76 (Md. Ct. Spec. App. 1996).

### 1.     Plaintiff's Argument

**Elements.** The *Maryland Pattern Jury Instructions – Civil*, do not list elements in of its pattern jury instruction on negligence. *See* MPJI-Cv 19:1 DEFINITION. Defendants cite to MPJI-Cv 19:1, comment A.1(a) for the elements of negligence, but their proposed language mischaracterizes and omits the elements listed therein. The Court should adopt Plaintiffs' elements, which are taken verbatim from that comment. *Id.*

**Defendants' Instruction Omits Proximate Cause as an Element.** Defendants' instruction omits the element of proximate cause, which misstates Maryland law. The Court should adopt the language Plaintiffs state verbatim from the Maryland pattern instruction. *See id.* ("The elements of a negligence action are: . . . (c) Reasonably close causal connection and resulting injury (proximate cause); . . .").

**Improper Limitation to Mental Health Harms**. Defendants' instruction improperly suggests that the only harm Harford alleges was to students' mental health, and that Harford's harm is entirely derivative of its students' harms. This is contrary to the Court's prior order, which allowed Harford's alleged harms—including damages stemming from "disruption to the school environment"—to proceed past dismissal under a negligence claim. ECF 729 at ¶ 194; *see* ECF 1267 at 25-26. Defendants' instruction will mislead the jury into believing that mental health harms to Harford's students are the only kind of harm to which liability may attach.

**Indivisible Injury.** As explained below, *see infra* [Public Nuisance], [Causation – Substantial Factor], Defendants' language that Harford must prove damages as to each Defendant risks confusing the jury about Harford's actual burden in cases of multiple alleged tortfeasors. Harford's instructions make clear that it must show that a particular Defendant breached its duty of care and was a substantial factor that caused Harford's harm, but whether it must apportion damages among the Defendants in any event is a separate question.

**Repeated 230 Instruction.** Defendants' repetition of the phrases "Non-Protected Conduct" and "Protected Conduct" throughout their instructions is prejudicial, misstates the law, and unduly emphasizes one affirmative defense. Defendants use "Non-Protected Conduct" *ad nauseam* in their instructions: Breathitt (29), Charleston (45), DeKalb (15), Harford (25), Irvington (53), Tucson (20).

1    "Repetitious instructions which place undue emphasis on matters favorable to either side constitute

2    reversible error," *Flentie v. Am. Cmty. Stores Corp.*, 389 F.2d 80, 83 (8th Cir. 1968), and the

3    repetition here exceeds what courts have found prejudicial, *e.g., Mack v. Precast Indus., Inc.*, 369

4    Mich. 439, 448 (1963) (reversible error where burden of proof was repeated 16 times); *see also*

5    *United States v. Schilleci*, 545 F.2d 519, 526 (5th Cir. 1977) (reversible error where trial court likely

6    caused "undue concentration on a specific paragraph" of instructions); *United States v. Jones*, 353

7    F.3d 816, 819 (9th Cir. 2003) (cautioning against "overemphasis of isolated parts" of jury

8    instructions). Because the Defendants' improper Section 230 instruction permeates the entire set,

9    any error is unlikely to be harmless. *See Sidibe v. Sutter Health*, 103 F.4th 675, 705 (9th Cir. 2024)

10   (court must consider "cumulative error" in deciding whether error in instructions was harmless).

11       Defendants' repetition of this tendentiously-defined term also runs contrary to the *Manual for*

12   *Complex Litigation's* mandate that jury instructions should be "simple" and "use language that

13   laypersons can understand." § 12.431 (4th ed. 2004). By requiring the reader to turn to the definition

14   repeatedly, defined terms introduce excessive ambiguity. This concern is magnified where, as here,

15   the definition itself is "cumbersome" (spanning 3 full pages). *See LG Philips LCD Co. v. Tatung*

16   *Co. of Am.*, 2005 WL 6219893, at *4 (C.D. Cal. May 5, 2005).

17       It is also simply unnecessary to repeat Defendants' Section 230 defense in other instructions,

18   especially where the Court plans to limit introduction of any such evidence in the first instance. It

19   is presumed that jurors will "carefully follow" an instruction once it is given. *Francis v. Franklin*,

20   471 U.S. 307, 324 (1985). That is why courts generally do not instruct on statute of limitation and

21   preemption and then use the phrase "non-time-barred non-preempted conduct" throughout the

22   instruction set.

23       Plaintiffs propose that, following a single instruction on immunity, the Court should simply

24   refer to Defendants' "conduct" as it gives remaining instructions, removing further references to

25   "Non-Protected Conduct" or "Protected Conduct." *See infra* [Section 230].

26

27

28

1

2.      **Defendants' Argument**

2          This Court should reject Harford's proposal and accept Defendants' because Harford's

3    proposal is deficient in several important respects:

4          *First*, Harford's proposed negligence instruction does not address its burden.  The Court

5    should instruct the jury that it is Harford's burden to prove each element of its negligence claim by

6    a preponderance of the evidence.

7          *Second*, and relatedly, Harford's proposed instruction fails to sufficiently explain to the jury

8    that its case against each Defendant must be evaluated separately.  The instruction should use the

9    language "Harford must prove by a preponderance of the evidence all of the following as to each

10   Defendant" to make clear that a finding that one Defendant is negligent does not mean a verdict can

11   be found against all Defendants.  In raising the concept of indivisible injury in Harford's objection

12   to this language, Harford overlooks the fact that apportionment of damages is an issue that comes

13   into play *after* Harford has met its burden of proof on each element of its claim.  Harford must first

14   prove that a particular Defendant caused its injury in order to recover against that Defendant.

15   Moreover, even in the context of an indivisible injury (which Harford's injuries are not), a plaintiff

16   must prove that a Defendant's conduct caused its injury in order for the defendant to be legally

17   responsible for plaintiff's damages.  *See Carter v. Wallace & Gale Asbestos Settlement Tr.*, 96 A.3d

18   147, 159 (2014) ("[I]f an injury is indivisible, any tortfeasor joined in the litigation *whose conduct*

19   *was a substantial factor in causing the plaintiff's injury* would be legally responsible for the entirety

20   of the plaintiff's damages." (emphasis added)).

21         *Third*, Harford's proposed instruction, which sweeps in any "failure to conform" to "a

22   certain standard of conduct for the protection of others against unreasonable risks" inappropriately

23   invites the jury to consider conduct that cannot form the basis of liability.  Not all potential

24   negligence by Defendants is actionable given the Court's rulings on Section 230 and the First

25   Amendment.  *See* First SD Order at 2, 12–14; PI Order at 14.  Defendants' proposed sentence

26   defining "Non-Protected Conduct" should, therefore, be included.

27         *Fourth*, Harford's recitation of the elements—taken from the *comments* to the pattern—is

28   imprecise.  Harford characterizes the causation element as requiring "[r]easonably close causal

1   connection and resulting harm." That is incomplete. Even under the substantial factor test, Harford

2   must show that each Defendant's actionable conduct was *both* a cause-in-fact and a legally

3   cognizable cause of any diversion of financial resources. Put another way, Harford must

4   demonstrate that, "standing alone," each Defendant's actionable conduct "would have wrought the

5   identical harm." *See Yonce v. SmithKline Beecham Clinical Laboratories*, *Inc.*, 680 A.2d 569, 575–

6   76 (Md. Ct. Spec. App. 1996). That is more than a "reasonably close causal connection." Similarly,

7   Harford characterizes the damages element as requiring a demonstration of "[a]ctual damage or loss

8   by others." That is incorrect. To recover, Harford must prove that *it* suffered damage. The use of

9   "others" improperly removes the distinction between plaintiff Harford and non-party students and

10  parents. Finally, Harford's proposed language outlining legal duty, and its inclusion of the phrase

11  "protection of others," is overbroad in that it suggests that the jury could find the breach of a legal

12  duty owed to someone other than Harford. Relatedly, legal duty is for this Court to decide, not for

13  the jury to find. Harford's recitation of the elements may be taken "verbatim" from the *comments*

14  to the Maryland pattern instructions, but that does not mean that Harford's proposed language is a

15  proper jury instruction in this case.

16      *Finally*, Harford is incorrect that Defendants' proposed instruction "improperly suggests that

17  the only harm Harford alleges was to students' mental health." Harford's entire case is premised

18  on allegations that Defendants' negligently designed their platforms to be addictive and cause

19  mental health harms to students. Harford must therefore prove that Defendants' platforms caused

20  such harms to students and then also prove that those harms to students caused Harford to expend

21  additional resources. Harford's alleged damages must be tied to the alleged breach—which, here,

22  is the platforms' supposed harmful impact on students' mental health.

23      The Court should reject the additional language Harford proposes in favor of Defendants'

24  proposal, which is tailored to the facts of this case and accounts for the Court's prior orders.

25

26

27

28

## B.    INSTRUCTION NO. 19: NEGLIGENCE – STANDARD OF REASONABLE CARE

[*Harford's proposal in* blue text.]

Negligence is doing something that a person or corporation using reasonable care would not do, or not doing something that a person or corporation using reasonable care would do. Reasonable care means that caution, attention, or skill a reasonable person or corporation would use under similar circumstances.

A company that creates a platform has a duty to use reasonable care in the design, testing and inspection of the platform to see that the platform is safe for any reasonably foreseeable use. A failure to fulfill that duty is negligence.

A company that makes a platform available to the public must give adequate warnings of those dangers which are known to it or by the use of reasonable care should be known to it and which would not be obvious to users. A failure to fulfill that duty is negligence.

**PLAINTIFF'S AUTHORITY:** MPJI-Cv 19:1 DEFINITION; *Mayor and City Council of Baltimore v. Utica Mut. Ins. Co.*, 802 A.2d 1070, 1089 (Md. Ct. Special App. 2002); MPJI-Cv 26:1 MANUFACTURER'S LIABILITY--NEGLIGENCE, MPJI-Cv 26:1; MPJI-Cv 26:3 SUPPLIER'S DUTY TO WARN, MPJI-Cv 26:3.

**DEFENDANTS' AUTHORITY:** MPJI-Cv 19:1 DEFINITION (modified).

1

### 1.     Plaintiff's Argument

**Failure to Warn Theory.** Harford's proposed instruction on design defect and failure to warn are drawn directly from Maryland Pattern Jury Instructions, which provide added helpful context to supplement the standard negligence instructions. *See* MPJI-Cv 26:1, MANUFACTURER'S LIABILITY—NEGLIGENCE, cmt. C.1 ("These instructions are essentially standard negligence instructions, but they state more particularly the degree of care required of a manufacturer."); MPJI-Cv 26:3 SUPPLIER'S DUTY TO WARN, cmt. A.1 ("This instruction is applicable to all persons supplying chattels for the use of others, whether as manufacturer, seller, lessor, or bailor, either for hire or gratuitously."). These instructions are necessary to ensure that the jury applies the correct legal standard when evaluating Harford's negligence claim, which is premised on a design defect and failure to warn theory. As this Court has stated, there are numerous of "[D]efendants' design, development, and deployment of certain features" that are not barred by Section 230. ECF 1267 at 13-14. Moreover, the Court specifically declined "to dismiss any theories of a failure-to-warn of known risks of addiction attendant to any platform features or as to platform construction in general." *Id*. at 14. In the alternative, Harford proposes separate jury instructions for design defect and failure to warn.

1

### 2. Defendants' Argument

2          The Court should reject Harford's proposed instruction because, unlike Defendants'

3   proposal, it inserts incorrect legal concepts.

4          Defendants' instruction is faithful to Maryland law.  Defendants' proposal tracks the

5   Maryland Civil Pattern Jury Instruction that defines negligence with only one minor deviation:  the

6   addition of "or company" after each use of "person" given the nature of Defendants in this case.

7   *See* MPJI-CV 19:1.

8          By contrast, Harford injects additional instructions from the "CHAPTER TWENTY-SIX:

9   PRODUCTS LIABILITY" section of the Maryland Civil Pattern Jury Instructions and cites only a

10  product liability case as authority for its proposed instruction.  *See* MPJI-Cv 26:1, MPJI-Cv 26:3;

11  *Mayor of Balt. v. Utica Mut. Ins. Co.*, 802 A.2d 1070, 1089 (Md. Ct. Spec. App. 2002) (Failure to

12  warn that asbestos is "defective with respect to its latent dangerous characteristics.").  Product

13  liability is a distinct area of law, and Harford has not brought a product liability design defect claim,

14  as Plaintiffs' counsel confirmed during the summary judgment hearing.  Indeed, it previously argued

15  to this Court that its claims "do not concern product liability law as they do not seek to recover for

16  injuries suffered from a defective product."  Order Granting in Part and Denying in Part Defendants'

17  Motion to Dismiss The School District and Local Government Entities' Claims of Public Nuisance

18  at 23 (Nov. 15, 2024) ECF No. 1332 ("Second SD Order") at 19 (quoting Plaintiffs' Opposition to

19  Defendants' Motion to Dismiss the School District and Local Government Entities' Master

20  Complaint (Mar. 4, 2024) (ECF No. 668) ("MTD Opp.") at 30).  This Court has not held that

21  Defendants had any duties with regard to "testing and inspection" of their platforms, nor has the

22  Court held that the platforms had to be "safe for any reasonably foreseeable use."  *See* First SD

23  Order at 27–34.  Harford argues that its proposed language is drawn directly from the Maryland

24  Pattern Jury Instructions.  But its revisions to those instructions only underscore Harford's attempts

25  to shoehorn product liability concepts into an instruction about the standard of reasonable care in a

26  general negligence case.  *See* MPJI-Cv 26:1 (discussing a "manufacturer of a product" *not* a

27  "company that creates a platform"); MPJI-Cv 26:3 (discussing a "supplier of a product" *not* a

28  "company that makes a platform available to the public").  Further, Defendants object to instructing

1   the jury that Defendants have a duty to warn Harford because there is no such legal duty and Harford

2   has no evidence that any alleged failure to warn caused it harm.  *See* Harford MSJ at 41–46; Om.

3   Reply (ECF  Part II.B.1; Harford MSJ Reply (ECF No. 2517) at 12–16.

4          Further, even if the Court holds that Defendants owe a duty to warn Harford, Harford

5   attempts to improperly inject the concept of a duty to warn—which is an *application* of the standard

6   of care—into an instruction defining what constitutes the standard of reasonable care.  The jury can

7   apply this standard of reasonable care itself, without unnecessary (and erroneous) supplementation.

8   For these reasons, the Court should reject the additional language proposed by Harford.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PARTIES' JOINT PROPOSED JURY INSTRUCTIONS (BOARD OF EDUCATION OF HARFORD COUNTY)
4:22-md-03047-YGR

1

## C.    INSTRUCTION NO. 20: FORESEEABLE CIRCUMSTANCES

2

3        The care exercised by a reasonable person or company varies according to the circumstances
and the danger that is known or should be appreciated by a reasonable person or company.
Therefore, if the foreseeable danger increases, a reasonable person or company acts more carefully.

4

5    **PLAINTIFF'S AUTHORITY:** MPJI-Cv 19:3 FORESEEABLE CIRCUMSTANCES; *Martin G.*
*Imbach, Inc. v. Tate*, 100 A.2d 808, 813 (Md. 1953); *Armacost v. Davis*, 200 A.3d 859, 866 (Md.
6    2019).

7    **DEFENDANTS' AUTHORITY:** MPJI-Cv 19:3 FORESEEABLE CIRCUMSTANCES
(modified).
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PARTIES' JOINT PROPOSED JURY INSTRUCTIONS (BOARD OF EDUCATION OF HARFORD COUNTY)
4:22-md-03047-YGR

1

## III.    SECOND CLAIM – PUBLIC NUISANCE

2

### A.    INSTRUCTION NO. 21: SECOND CLAIM – PUBLIC NUISANCE

3

[*Defendants' proposal in* green text*; Harford's proposal in* blue text*.*]

4

5

6

7

The second claim that Harford has brought is a claim for public nuisance.  Harford alleges that each Defendant's Non-Protected Conduct constitutes a public nuisance.  In order for Harford to prove its public nuisance claim, it has to prove three separate elements or components of that claim.  Because Harford has brought this lawsuit against each of Defendants Meta, Snap, TikTok, and YouTube, Harford has the burden of proving the following elements by a preponderance of the evidence as to each Defendant:

8

9

10

11

12

13

(1)    That each Defendants' Non-Protected Conduct was an unreasonable and substantial interference with the right to health and safety common to the general public.

(2)    That the Non-Protected Conduct that unreasonably and substantially interfered with the public right to health and safety caused the Harford School District's students to suffer mental health harms, which, in turn, caused Harford to incur additional expenses to respond to those injuries;  and

(3)    Harford incurred damages, in the form of additional expenses.  To recover damages, Harford must have suffered harm of a kind different from that suffered by other members of the public exercising the public right to health and safety that was the subject of interference.

14

15

16

As it relates to Harford's public nuisance claim, "Actionable Non-Protected Conduct" means Non-Protected Conduct that unreasonably and substantially interfered with a right common to the general public.

17

Harford has the burden of proving the following elements:

18

(1) That Defendants unreasonably interfered with the public's right to health, safety, and/or education;

19

20

(2) That the Defendants' conduct was a substantial factor in causing the public nuisance; and;

21

(3) That Harford County suffered harms from the public nuisance that are different from the harms suffered by members of the general public.

22

23

24

25

**PLAINTIFF'S AUTHORITY:** *Wietzke v. Chesapeake Conference Ass'n*, 26 A.3d 931, 943 (Md. 2011); *see also Collins v. Tri-State Zoological Park of W. Maryland, Inc.*, 514 F. Supp. 3d 773, 780 (D. Md. 2021); *Mayor and City Council of Baltimore v. Philip Morris USA, Inc.*, 2024 WL 229586, at \*5 (D. Md. Jan. 19, 2024); *Mayor & City Council of Baltimore v. Purdue Pharma, L.P.*, No. 24-C-18-000515, 2025 WL 1707625, at \*5 (Md.Cir.Ct. June 12, 2025).

26

27

28

**DEFENDANTS' AUTHORITY:** *Tadjer v. Montgomery Cnty.*, 479 A.2d 1321 (Md. 1984); Restatement (Second) of Torts § 821B; Second SD Order at 20 ("Proximate causation serves to limit the scope of liability only to the reach of defendants' own actions."); First SD Order at 2, 12–14; PI Order at 14; *Mayor & City Council of Baltimore v. Purdue Pharma, L.P.*, No. 24-C-18-000515, 2025 WL 1707625, at \*5 (Md. Cir. Ct. June 12, 2025).

1

### 1.    Plaintiff's Argument

2

**Defendants' instruction misstates Plaintiffs burden as to "each" Defendant.**

3

Defendants' instruction prematurely implies that Plaintiffs must carry the evidentiary burden of

4

apportioning fault among each Defendant. Any instruction related to apportionment misstates

5

Maryland law, where the concept of apportionment only arises when the injury is "reasonably or

6

theoretically" divisible, which is Defendants' burden to show:

7
8
> To be sure, if an injury is indivisible, any tortfeasor joined in the litigation whose
> conduct was a substantial factor in causing the plaintiff's injury would be legally
> responsible for the entirety of the plaintiff's damages. Only if the harm is reasonably
> divisible is the issue of apportionment a question of fact for the jury . . .. Only if the
> harm is reasonably divisible is the issue of apportionment a question of fact for the jury
> . . .. In that instance, where an injury is reasonably—or theoretically—divisible, the
> burden of proof would shift to the defendant to prove that apportionment of damages
> is appropriate.

9
10
11

12

*Carter v. Wallace & Gale Asbestos Settlement Tr.*, 96 A.3d 147, 159–60 (2014); *see also* MPJI-Cv

13

1:16, BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE STANDARD (noting

14

evidentiary burden shift to defendant where defendants have not carried burden of showing injury

15

is divisible); *see also infra* [Compensatory Damages – Apportionment]. Here, Defendants have not

16

presented any evidence showing that the injury is divisible (*i.e.*, that one Defendant is more liable

17

than another) nor is it clear how apportionment would be "reasonably or theoretically possible" over

18

a multi-year period involving multiple Defendants. This instruction is a misstatement of the law.

19

**Defendants' instruction improperly limits rights interfered with to "student mental**

20

**health harms" and "expenses."** Defendants attempt to narrow their liability by suggesting that the

21

only recoverable interference with a public right is one that "caused the Harford School District's

22

students to suffer mental health harms, which, in turn, caused Harford to incur additional expenses

23

to respond to those injuries." As described *supra* in Plaintiffs description of issues with Defendants'

24

negligence instructions, this inappropriately conflates the institutional harms suffered by the school

25

district that are at issue with the individual harms suffered by its students, which are not at issue.

26

Similarly, the use of the word "expenses" seeks to limit the jury to those harms for which there is a

27

receipt that states "mental health" or similar. This use of "expenses" is particularly inappropriate in

28

1    describing damages for public nuisance, which include an abatement remedy that is forward-looking

2    to stop the nuisance and different in kind from past expenditures.

3    **Defendants' Citations Do Not Support Their Description of the Elements.** Defendants

4    cite to a single Maryland case as basis for the elements they provide on public nuisance, *Tadjer v.*

5    *Montgomery Cnty.*, 479 A.2d 1321, 1327 (1984) (quoting Restatement (Second) of Torts § 821B).

6    Notably, this case adopts the elements in the Second Restatement (also cited by Defendants), which

7    do not contain the additional inappropriately limiting commentary that Defendants' propose. *Id.*

8    Departing from the Second Restatement's language, Defendants have added the *italicized* text:

9    "*Harford incurred damages, in the form of additional expenses.* To recover damages, Harford must

10   have suffered harm of a kind different from that suffered by other members of the public *exercising*

11   *the right common to the general public that was the subject of interference*." This contributes neither

12   to clarity nor understanding; it only serves to confuse the jury as to what categories of damages may

13   be recovered.

14   Plaintiffs have adopted the elements of public nuisance from jury instructions that were

15   actually presented to a jury in *Mayor & City Council of Baltimore v. Purdue Pharma, L.P.*, No. 24-

16   C-18-000515, 2025 WL 1707625, at *5 (Md. Cir. Ct. June 12, 2025), which follow the Second

17   Restatement's approach to public nuisance adopted in Maryland cases. Defendants have cited this

18   case numerous times in their instructions, but not here. The Court should adopt Plaintiff's proposed

19   instructions.

20   **Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra*

21   [Negligence]; *infra* [Section 230].

22

23

24

25

26

27

28

1

###       2.       **Defendants' Argument**

2       The Court should accept Defendants' proposed instruction and reject Harford's for five

3    independent reasons. *First*, Harford's proposed instruction, which reaches "Defendants' conduct"

4    writ large, inappropriately invites the jury to consider conduct that cannot form the basis of liability.

5    Not all conduct by the Defendants is actionable given the Court's rulings about Section 230 and the

6    First Amendment. *See* First SD Order at 2, 12–14; PI Order at 14. The definitional "Non-Protected

7    Conduct" language should, therefore, be included.

8       *Second*, Harford's proposed instruction fails to sufficiently explain to the jury that it must

9    meet its burden to show that *each* Defendant unreasonably and substantially interfered with a public

10   right. The instruction should use the language "Because Harford has brought this lawsuit against

11   each of Defendants Meta, Snap, TikTok, and YouTube, Harford has the burden of proving the

12   following elements by a preponderance of the evidence as to each Defendant . . ." to make clear that

13   a finding that one Defendant unreasonably and substantially interfered with a public right does not

14   mean a verdict can be found against all Defendants. Harford contends that Defendants' instruction

15   implies that Harford must carry the evidentiary burden of apportioning fault among the Defendants.

16   But the instruction does not require the jury to apportion anything. It simply requires that the jury

17   evaluate each Defendant's conduct separately to determine whether that Defendant's conduct was

18   an unreasonable and substantial interference with the right to health and safety. Harford cannot

19   avoid its burden to prove an element of its claim by arguing that the injury in this case is indivisible

20   (it is not). The jury may only apportion damages to a Defendant if it determines that the Defendant's

21   conduct constituted a public nuisance. As a result, Harford must first prove each of the elements of

22   public nuisance as to a particular defendant before the question of apportionment comes into play.

23       *Third*, Harford's proposed instruction claims that there is a "public right" to "education."

24   But Harford does not cite a single case in Maryland or elsewhere that has recognized a public right

25   to education redressable through public nuisance law—and there is not one. Nor has Harford cited

26   any cases that allow a School District to assert such a right on behalf of the general public—and

27   there is not one. *See Wietzke v. Chesapeake Conf. Ass'n*, 26 A.3d 931, 934 (Md. 2011) (private

28   nuisance claim); *Collins v. Tri-State Zoological Park*, 514 F. Supp. 3d 773, 780–81 (D. Md. 2021)

1    (animal cruelty); *Mayo of Balt. v. Philip Morris USA, Inc.*, 2024 WL 229586, at *5 (D. Md. Jan. 19,

2    2024) (environmental harms).  This Court has not held that Maryland recognizes a public right to

3    education as an actionable "public right" in the context of nuisance law.  *See* Second SD Order at

4    23.  The Court, therefore, should not instruct the jury on interference with a right to "education."

5        *Fourth*, Harford's instruction omits a key requirement of nuisance law—that each

6    Defendant's conduct unreasonably *and substantially* interfered with a public right, as recognized in

7    the cases Harford cites.[9]  *See Mayor of Balt. v. Purdue Pharma, L.P.*, 2025 WL 1707625, at *5 (Md.

8    Cir. Ct. June 12, 2025) ("[P]ublic nuisance is an unreasonable and substantial interference with a

9    right common to the general public").  The Court should instruct the jury that a public nuisance

10   claim requires Harford to establish "an unreasonable and substantial" interference.

11       *Fifth*, Harford's reference to "Harford County" is misleading.  The municipality is not a

12   plaintiff.  The instructions should refer to "Harford," which is defined shorthand for the District.

13       *Sixth*, Harford is incorrect that Defendants' proposed instruction "improperly limits rights

14   interfered with to 'student mental health harms.'"  Harford's entire case is premised on allegations

15   that Defendants' negligently designed their platforms to be addictive and cause mental health harms

16   to students.  Harford must therefore prove that Defendants' platforms caused such harms to students

17   and then also prove that those harms to students caused Harford to expend additional resources.

18   Harford's alleged damages must be tied to the alleged breach—which, here, is the platforms'

19   supposed harmful impact on students' mental health.

20       *Seventh*, the Court should adopt Defendants' instruction on the third element because it sets

21   forth the correct standard for recovering damages in a public nuisance case.  Harford's instruction

22   does not mention the damages element of its claim.  Harford claims to have suffered damages in the

23   form of additional costs, and it bears the burden of establishing those damages.  The Court should,

24   therefore, give Defendants' instruction on the third element of Harford's public nuisance claim.

25

26

27

---

28   [9] Harford erroneously relies on a Maryland Pattern Jury Instruction for *private* nuisance to support
     its instruction. MPJI-Cv 20:1 (DEFINITION), comment 2 ("This instruction and these comments
     are limited to private nuisances . . . It does not include public nuisances.").

## B.    INSTRUCTION NO. 22: PUBLIC NUISANCE – UNREASONABLE INTERFERENCE WITH A RIGHT COMMON TO THE GENERAL PUBLIC

[*Defendants' proposal in green text; Harford's proposal in blue text.*]

To establish a public nuisance claim, Harford must prove that each Defendant's Non-Protected Conduct was an unreasonable and substantial interference Defendants unreasonably and substantially interfered with a right common to the general public.

A right common to the general public is distinct from a private right. A right common to the general public is collective in nature and not like the individual right that everyone has not to be assaulted or defamed or defrauded or negligently injured. Harford claims an interference with the public right to health and safety in the form of students suffering from mental health harms.  If a Defendant's conduct separately imposes risks of harm to individuals, rather than a risk of harm to public health or safety generally, that Defendant's conduct does not interfere with a right common to the general public.

In determining whether each Defendant's Non-Protected Conduct Defendants' conduct was an unreasonable interference with a right common to the general public, you may consider:

(1) Whether the conduct involves a significant interference with the public health or the public safety, the public peace, the public comfort, or the public convenience;

(2) Whether the conduct involves a dereliction of public morals; or

(3) Whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the Defendant knows or has Defendants know or have reason to know, has a significant effect on the a public right to the public health or the public safety.

**PLAINTIFF'S AUTHORITY:** *Tadjer v. Montgomery Cnty.*, 479 A.2d 1321, 1327-28 (Md. 1984); *see also Collins v. Tri-State Zoological Park of W. Md., Inc.*, 514 F. Supp. 3d 773 (D. Md. 2021).

**DEFENDANTS' AUTHORITY:** Restatement (Second) of Torts § 821B cmt. g ("A public right is one common to all members of the general public.  It is collective in nature and not like the individual right that everyone has not to be assaulted or defamed or defrauded or negligently injured."); *id.* cmt. e ("The defendant is held liable for a public nuisance if his interference with the public right was intentional or was unintentional and otherwise actionable under the principles controlling liability for negligent or reckless conduct or for abnormally dangerous activities. Liability was not normally imposed for a pure accident that did not fall into one of the three traditional categories of tort liability. In each of these categories, some aspect of the concept of unreasonableness is to be found. If the interference with the public right is intentional, it must also be unreasonable.  (See § 822, and §§ 826- 831, involving the weighing of the gravity of the harm against the utility of the conduct).  If the interference was unintentional, the principles governing negligent or reckless conduct, or abnormally dangerous activities all embody in some degree the concept of unreasonableness."); *Grace v. Bd. of Liquor License Commissioners for Baltimore City*, 2018 WL 367852, at *4 (Md. Ct. Spec. App. Jan. 11, 2018) ("The Court of Appeals has defined a public nuisance as an act that causes substantial interference with the public's right to public safety, public health, and public convenience."); First SD Order at 2, 12–14; PI Order at 14.

### 1.     Plaintiff's Argument

Harford's proposed instruction is consistent with Maryland law, which has adopted the Second Restatement's definition of public nuisance. Indeed, the proposed language is drawn directly from cases cited by Defendants. *See supra* [Public Nuisance] (citing *Tadjer*, 479 A.2d at 1327-28 and Restatement (Second) of Torts § 821B).

By contrast, Defendants' cited authorities do not contain the language they propose. None of those cases suggest that the jury's analysis should be confined to the two circumstances of unreasonable interference identified by Defendants, rather than the full list of circumstances recognized in the Restatement and reflected in Harford's proposed instruction. *See Grace v. Bd. of Liquor License Comm'rs for Balt. City*, 2018 WL 367852, at *4 (Md. Ct. Spec. App. Jan. 11, 2018).

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence]; *infra* [Section 230].

1

### 2.     Defendants' Argument

2      The Court should reject Harford's proposed instruction because it could cause confusion

3 about the scope of liability and invites jurors to improperly group Defendants together.

4      *First*, Harford's proposed instruction, which reaches "Defendants' conduct" writ large,

5 inappropriately invites the jury to consider conduct that cannot form the basis of liability.  Not all

6 conduct by the Defendants is actionable given the Court's rulings about Section 230 and the First

7 Amendment.  *See* First SD Order at 2, 12–14; PI Order at 14.  The definitional "Non-Protected

8 Conduct" language should, therefore, be included.

9      *Second*, and relatedly, Harford's proposed instruction fails to sufficiently explain to the jury

10 that Harford must meet its burden to show that *each* Defendant unreasonably and substantially

11 interfered with a public right.  The instruction should use the language "Because Harford has

12 brought this lawsuit against each of Defendants Meta, Snap, TikTok, and YouTube, Harford has the

13 burden of proving the following elements by a preponderance of the evidence as to each Defendant

14 . . ." to make clear that a finding that one Defendant unreasonably and substantially interfered with

15 a public right does not mean a verdict can be found against all Defendants.  For the same reasons,

16 the instruction should use the language "In determining whether each Defendant's Non-Protected

17 Conduct was an unreasonable interference with a right common to the general public, you may

18 consider [ . . .]  Whether the conduct is of a continuing nature or has produced a permanent or long-

19 lasting effect, and, as the Defendant knows or has reason to know, has a significant effect on the

20 public right to the public health or the public safety."

21      The Court's instructions to the jury should—as Defendants' instruction does—focus on the

22 at-issue public rights: the public rights to "health and safety," which are the ones on which Plaintiff

23 defended its nuisance claim at the motion-to-dismiss stage and the only ones addressed by the Court

24 in allowing the nuisance claim to proceed.

25

26

27

28

## IV.    ADDITIONAL SUBSTANTIVE INSTRUCTIONS

### A.    INSTRUCTION NO. 23: CAUSATION

[*Defendants' proposal in green text; Harford's proposal in blue text.*]

For Harford to recover damages against a particular Defendant Defendants for negligence or nuisance, Harford must prove that its injuries resulted from and were a reasonably foreseeable consequence of that Defendant's Actionable Non-Protected Conduct Defendants' conduct.
There may be more than one cause of an injury harm, that is, several negligent acts may work together to cause the injury harm. Each person or corporation whose Actionable Non-Protected Conduct negligent act is a substantial factor in causing an injury harm is responsible. A Defendant cannot avoid responsibility just because some other Defendant, person, condition, or event was also a substantial factor in causing Harford's harm, unless the other cause with the sole cause of Harford's harm. Harford asserts that the independent wrongful conduct of each Defendant unites to produce a single indivisible harm. When the independent wrongful conduct of more than one defendant contributes to one indivisible harm, you may find each defendant liable even if it is not possible to determine whether or not the wrongful acts of any particular defendant, acting alone, would have caused the same harm.

Additionally, the additional expenses that Harford seeks to recover as damages cannot be so remote in time and space from the Defendant's original Actionable Non-Protected Conduct that a reasonable person would not regard that conduct as a cause.  Harford also cannot recover if the Actionable Non-Protected Conduct of the Defendant is merely passive and potential while the negligence of another is the moving and effective cause of the injury.

Moreover, a Defendant's Actionable Non-Protected Conduct must be the direct and continuing cause of Harford's additional expenses.  Each Defendant's Actionable Non-Protected Conduct must continue through every event and occurrence, and itself be the natural and logical cause of Harford's additional expenses.  The additional expenses incurred by Harford must be the natural and probable consequence of the Actionable Non-Protected Conduct, unbroken by any intervening agency.

Defendants do not have a duty to prevent third parties (for example, individuals who post dangerous "challenges" on Defendants' platforms, commit crimes, or post threats on Defendants' platforms) from using their platforms in ways that may cause harm to Harford or its students.

Any injuries stemming from non-foreseeable third-party conduct cannot be attributable to Defendants. A Defendant's general knowledge that bad actors may post harmful challenges, transmit threats, or engage in crime on its platform does not, on its own, suffice to establish causation.  Where a social media challenge is at issue, the Defendant on whose platform the challenge was posted may be held liable only if the Defendant's own actions promoted, developed, or participated in the foreseeably dangerous challenge.  That Defendant may not be held liable if its only role in the challenge was publishing or recommending the third-party challenge on its platform.

The mere fact that a Defendant generally knows that third-party bad actors may use their social media platforms to spread harmful challenges, transmit threats, or engage in crimes, is not, by itself, sufficient to show that Defendants caused the School District's harm. However, even if a third party is involved in the harm, you may hold Defendants liable for their own conduct, including conduct that foreseeably facilitates harm from third parties.

1

2

3

4

**PLAINTIFF'S AUTHORITY:** MPJI-Cv 19:10 DEFINITION; *Consumer Prot. Div. v. Morgan*, 874 A.2d 919, 950 (Md. 2005); *Yonce v. SmithKline Beecham Clinical Lab'ys, Inc.,* 680 A.2d 569, 576 *cert. denied*, 685 A.2d 452 (Md. 1996); *Carter v. Wallace & Gale Asbestos Settlement Tr.*, 96 A.3d 147, 159-60 (Md. 2014); *Pittway Corp. v. Collins*, 973 A.2d 771, 790 (Md. 2009); *see also Am. Motorcycle Assn. v. Superior Ct.*, 20 Cal. 3d 578, 578-89 (1978).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

**DEFENDANTS' AUTHORITY:** MPJI-Cv 19:10 DEFINITION (modified); Restatement (Second) of Torts § 821C (1979); *Pittway Corp. v. Collins*, 973 A.2d 771, 788 (Md. 2009) ("The question of legal causation most often involves a determination of whether the injuries were a foreseeable result of the negligent conduct."); *Bloom v. Good Humor Ice Cream Co. of Baltimore*, 18 A.2d 592, 593 (Md. 1941) ("Variously stated, the universally accepted rule as to the proximate cause is that, unless an act, or omission of a duty, or both, are the direct and continuing cause of an injury, recovery will not be allowed. The negligence acts must continue through every event and occurrence, and itself be the natural and logical cause of the injury."); *Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.*, 642 A.2d 219, 230 (Md. 1994) ("Thus, although an injury might not have occurred 'but for' an antecedent act of the defendant, liability may not be imposed if for example the negligence of one person is merely passive and potential, while the negligence of another is the moving and effective cause of the injury.... [O]r if the injury is so remote in time and space from defendant's original negligence and another's negligence intervenes." (quoting *Peterson v. Underwood*, 264 A.2d 851, 855 (Md. 1970)); *Carter v. Wallace & Gale Asbestos Settlement Tr.*, 96 A.3d 147, 159 (2014) ("[I]f an injury is indivisible, any tortfeasor joined in the litigation *whose conduct was a substantial factor in causing the plaintiff's injury* would be legally responsible for the entirety of the plaintiff's damages." (emphasis added)); First SD Order at 25 ("[A]lleged injury stemming from non-foreseeable third-party conduct cannot be attributable to defendants. Consistent with the above recitation of proximate causation principles, defendants' general knowledge that bad actors may propagate harmful challenges, transmit threats, or engage in crime on their platforms does not, on its own, suffice to establish proximate cause."); *id.* at 26 ("As to any alleged injuries to the school districts stemming from dangerous challenges, threats, and crimes disseminated or perpetrated on defendants' platforms caused by deteriorated youth mental health, those allegations fail proximate causation for a lack of particularized allegations. However, such allegations are not barred to the extent defendants promoted, developed, or participated in a foreseeably dangerous challenge, *beyond* the algorithmic publication, curation, or amplification of that third-party challenge."); *Yonce v. SmithKline Beecham Clinical Laboratories*, *Inc.*, 680 A.2d 569, 575–76 (Md. Ct. Spec. App. 1996).

21

22

23

24

25

26

27

28

1

### 1.    Plaintiff's Argument

2      The parties agree to include Maryland's pattern instruction language on the Definition of

3   Causation, *see* MPJI-Cv 19:10, DEFINITION, but Harford also seeks to include an instruction on

4   multiple causes of injury, which is necessary in a multi-Defendant case.

5      **Multiple Causes of Injury.** The Maryland pattern instruction defining causation also

6   instructs that, "when there is evidence that two or more independent negligent causes may have

7   brought about the alleged harm," the Court should instruct the jury that "There may be more than

8   one cause of an injury, that is, several negligent acts may work together to cause the injury. Each

9   person whose negligent act is a substantial factor in causing an injury is responsible." *See id.* at cmt.

10  A.1. Where there are multiple allegedly negligent defendants, as in this case, the bracketed language

11  should be given.

12     **Indivisible Injury.** Defendants' additional proposed language that conduct may not be a

13  cause "if the particular event would have occurred without" Defendants' conduct is inappropriate

14  in a case that alleges multiple causes of harm from multiple Defendants caused an indivisible injury.

15  *See Carter v. Wallace & Gale Asbestos Settlement Tr.*, 96 A.3d 147, 157-59 (Md. 2014) (adopting

16  Restatement (Second) Torts § 433A and explaining that it may be possible for multiple tortfeasors

17  to act "independently from—and concurrently with—other individuals to produce an indivisible

18  injury to a plaintiff"); *see also supra* [Public Nuisance]. For instance, in a hypothetical scenario

19  where Harford's harm might still have occurred had Snap not acted because Meta had, and vice-

20  versa, there is not a defense to liability under Maryland law if both parties are a substantial factor in

21  causing Harford's harm. The Court should instead adopt Plaintiff's paragraph explaining the

22  indivisible injury rule, as it clearly articulates Maryland law applicable to a case with multiple

23  alleged tortfeasors contributing to a single indivisible harm.

24     **The Court Should Not Adopt Defendants' Proposed Language.** The Court should reject

25  Defendants' additional language regarding "remote" or "passive and potential" damages, as these

26  concepts are (1) not written in plain language that would be easy for a jury to understand, and (2)

27  the same legal concepts are covered by the following causation instructions Plaintiff proposes. *See*

28  *infra* [Causation – Substantial Factor]; [Causation – Intervening/Superseding Cause].

1    The Court should also reject Defendants' additional language that departs from the pattern

2    involving "direct and continuing cause," as it is more appropriately addressed by the Maryland

3    pattern instruction on intervening and superseding cause which Plaintiffs offer in a separate

4    instruction. *See infra* [Intervening/Superseding Cause].

5        **Third Party Conduct.** Plaintiff objects to instructing the jury on harms caused by third

6    parties, but offers competing language if the Court decides an instruction is necessary.

7        Such an instruction is unwarranted. It is unlikely that the Court will admit evidence of

8    challenges, crimes, or threats at trial, so there will be no evidence that warrants cautioning the jury

9    about such evidence in the proximate cause instruction. However, the scope of the Defendants' duty

10   is a question of law for the Court, and a question the Court has already resolved. Including

11   Defendants' proposed language risks misleading the jury into confusing duty with proximate cause.

12   If the Court is inclined to include an instruction on third party conduct, Plaintiff's language more

13   closely adheres to the Court's actual ruling and informs the jury about when it may consider third-

14   party misconduct in its determination of proximate cause. *See* ECF 1267 at 25-26.

15       Should this Court allow an instruction on third-party conduct, Defendants' proposed

16   instruction is misleading because it creates a false impression that third party negligence

17   categorically relieves the Defendants from liability. By contrast, and as Plaintiff's proposed

18   instruction faithfully describes, Maryland law holds a negligent wrongdoer liable for causing

19   foreseeable third-party misconduct. *See Pittway Corp. v. Collins*, 973 A.2d 771, 790 (Md. 2009) (a

20   defendant may be liable "when the original tortfeasor should have realized that the third person

21   might so act, when the act of the third person was not considered 'highly extraordinary' or when the

22   intervening act is a normal consequence of a situation created by the original tortfeasor's conduct."

23   (citing Rest. 2d Torts § 447)).

24       **Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra*

25   [Negligence]; [Section 230].

26

27

28

1

## 2.    Defendants' Argument

2          Defendant's proposed instruction, unlike Harford's, is a correct statement of Maryland law.

3   *First*, Harford's instruction fails to sufficiently explain that each case against each Defendant must

4   be evaluated separately. Defendants' proposed language makes clear that a finding that one

5   Defendant is negligent does not mean a verdict can be found against all Defendants.  By contrast,

6   Harford's proposed language suggests that it can recover from all Defendants if it proves that its

7   injuries "resulted from and were a reasonably foreseeable consequence of Defendants' conduct."

8          *Second*, Harford's proposed additions are superfluous and confusing. Given that Harford's

9   proposed instruction explains that "[e]ach person or corporation whose negligence act is a

10  substantial factor in causing a harm is responsible," it is unnecessary to add that "[a] Defendant

11  cannot avoid responsibility just because some other Defendant, person, condition, or event was also

12  a substantial factor in causing Harford's harm, unless the other cause with [sic] the sole cause of

13  Harford's harm."  Likewise, the addition of "for negligence or nuisance" is unnecessary, as the jury

14  will have already been told that those are the claims for which Harford seeks to recover damages.

15          *Third*, Defendants proposed additions to the pattern are consistent with Maryland law and

16  will help the jury understand how to evaluate the causation element.  *See Bloom v. Good Humor Ice*

17  *Cream Co.*, 18 A.2d 592, 593 (Md. 1941) ("[U]nless an act, or omission of a duty, or both, are the

18  direct and continuing cause of an injury, recovery will not be allowed."); *see also Hartford Ins. Co.*

19  *v. Manor Inn, Inc.*, 642 A.2d 219, 230 (Md. 1994).

20          *Fourth*, Defendants' proposed language regarding third party conduct and challenges is

21  consistent with this Court's prior rulings on Section 230. First SD Order at 25; *id.* at 26.  Harford's

22  proposed language is inconsistent with the Court's orders because it suggests that Defendants may

23  be held liable for conduct that "foreseeably facilitates harm from third parties," which could lead a

24  jury to believe that Defendants may be held liable for the publication or amplification of third-party

25  content.[10]  Harford's speculation about what evidence will be introduced at trial is not a basis to

26  _____

27  [10] In their motion for summary judgment, Defendants pointed out that Harford has no evidence
    that any Defendant promoted, developed, or participated in a foreseeably dangerous challenge
    that caused harm to Harford.  Harford did not address that argument or put forward any such
28  evidence in opposition.  *See* Harford MSJ Reply at 2 n.1.  Harford has, therefore, waived any
    claim that it has such evidence and is not entitled to a instruction suggesting that Defendants
    may be held liable for foreseeably dangerous challenges.

1    deny this instruction at this time.  Relatedly, not all potential conduct by the Defendants is actionable

2    given the Court's rulings about Section 230 and the First Amendment.  *See Id.* at 2, 12–14; PI Order

3    at 14.  The definitional "Actionable Non-Protected Conduct" language must, therefore, be included.

4        *Fifth*, Defendants object to the use of "social media" to describe their platforms.  YouTube

5    and Snap do not agree with the characterization of their platforms as "social media," and that will

6    be a contested fact at trial.  Harford takes the position that "social media" references in the

7    evidentiary record equal Defendants, but Defendants contest this.  The Court's instructions should

8    not unnecessarily weigh in on that factual dispute in Harford's favor.

9        Lastly, Harford proposes to instruct that "Harford asserts that the independent wrongful

10   conduct of each Defendant unites to produce a single indivisible harm."  Legal argument is not

11   properly included in a jury instruction, and for the reasons described in Defendants' apportionment

12   briefing, Harford's alleged damages are reasonably divisible.  Moreover, Harford relies on one

13   California case to propose instructing that "[w]hen the independent wrongful conduct or more than

14   one defendant contributes to one indivisible harm" the jury "may find each defendant liable even if

15   it is not possible to determine whether or not the wrongful acts of any particular defendant, acting

16   alone, would have caused the same harm."  But that is not the law in Maryland.  Indivisibility of

17   injury is an issue related to apportionment of damages, which comes into play *after* Harford has met

18   its burden of proof on each element of its claim.  Maryland law requires Harford to prove that a

19   particular Defendant caused its injury in order to recover against that Defendant.   This is true even

20   in the context of an indivisible injury.  *See Carter v. Wallace & Gale Asbestos Settlement Tr.*, 96

21   A.3d 147, 159 (2014) ("[I]f an injury is indivisible, any tortfeasor joined in the litigation *whose*

22   *conduct was a substantial factor in causing the plaintiff's injury* would be legally responsible for

23   the entirety of the plaintiff's damages." (emphasis added)).  For Harford to satisfy the substantial

24   factor test, Harford must demonstrate that, "standing alone," the Defendant's actionable conduct

25   "would have wrought the identical harm."  *See Yonce v. SmithKline Beecham Clinical Laboratories*,

26   *Inc.*, 680 A.2d 569, 575–76 (Md. Ct. Spec. App. 1996).

27

28

## B.    INSTRUCTION NO. 24: CAUSATION – SUBSTANTIAL FACTOR

[ *Defendants' proposal in green text; Harford's proposal in blue text.*]

### Instruction 24-P

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.

### Instruction 24-D

In order to show that a particular Defendant's Actionable Non-Protected conduct was a substantial factor in causing harm, Harford must prove that, standing alone, the Defendant's Actionable Non-Protected conduct was sufficient to cause Harford's injury.  It is not enough for Harford to show that the combined effects of all Defendants' actions caused Harford's injury.

**PLAINTIFF'S AUTHORITY:** *Consumer Prot. Div. v. Morgan*, 874 A.2d 919, 950 (Md. 2005); *Yonce v. SmithKline Beecham Clinical Lab'ys, Inc.,* 680 A.2d 569, 576 *cert. denied*, 685 A.2d 452 (Md. 1996); *Eagle-Picher Industries, Inc. v. Balbos*, 604 A.2d 445, 459 (Md. App. Ct. 1992); *Carter v. Wallace & Gale Asbestos Settlement Tr.*, 96 A.3d 147, 159-60 (Md. 2014); *Pittway Corp. v. Collins*, 973 A.2d 771, 790 (Md. 2009); *Walton v. Premier Soccer Club, Inc.*, 331 A.3d 406, 419 (Md. Ct. App. 2024); *Seites v. McGinley*, 84 Md. App. 292, 578 A.2d 840, 843-44 (Md. Ct. App. 1990) (recognizing the rule in § 433B including the exception for multiple causes); *Mayer v. N. Arundel Hosp. Ass'n, Inc.*, 145 Md. App. 253, 802 A.2d 48, 492-93 (Md. Ct. App. 2002); *Williams v. Dimensions Health Corp.*, 2023 WL 5523951, at *18 (Md. Ct. App. Aug. 28, 2023).

**DEFENDANTS' AUTHORITY:** *Yonce v. SmithKline Beecham Clinical Laboratories, Inc.*, 680 A.2d 569, 575–76 (Md. Ct. Spec. App. 1996); Restatement (Second) of Torts § 432(2) (A.L.I. 1965); *Maryland v. Exxon Mobil Corp.*, 406 F. Supp. 3d 420, 455 (D. Md. 2019); *Mitchell v. Rite Aid, Inc.*, 290 A.3d 1125, 1157 (Md. App. Ct. 2023); *Asphalt & Concrete Servs., Inc. v. Perry*, 108 A.3d 558, 574 (Md. Ct. Spec. App. 2015), *aff'd*, 133 A.3d 1143 (2016).

1          **1.       Plaintiff's Argument**

2          Harford's proposed instruction is consistent with Maryland law, which expressly requires

3    the trier of fact to apply the "substantial factor" test "when 'two or more independent negligent acts

4    bring about an injury,'" as is the case here. *Walton v. Premier Soccer Club, Inc.*, 311 A.3d 406, 419

5    (Md. App. Ct. 2024), *aff'd*, 334 A.3d 784 (Md. 2025) (quoting *Pittway Corp. v. Collins*, 973 A.2d

6    771, 787 (Md. 2009) (quoting Restatement (Second) of Torts § 431)); *see also Bartholomee v.*

7    *Casey*, 651 A.2d 908, 918 (Md. Ct. Spec. App. 1994) (collecting cases applying the "substantial

8    factor" test).

9          The proposed instruction also clarifies what is meant by "substantial," as the term—standing

10   alone—risks misleading the jury into believing that the defendants' negligence must be the

11   predominant cause of Harford's injury. Maryland law requires no such showing. *See Levitas v.*

12   *Christian*, 164 A.3d 228, 238 (Md. 2017) ("The substantial factor test does not require . . . the

13   plaintiff to show that one cause had a greater impact than any other substantial factor causing the

14   harm."). Rather, as the proposed instruction explains, a substantial factor need only be what would

15   "lead reasonable men to regard . . . as a cause" of the harm. *Lohrmann v. Pittsburgh Corning Corp.*,

16   782 F.2d 1156, 1162 (4th Cir. 1986) (quoting Restatement (Second) of Torts § 431 cmt. a). The

17   instruction thus ensures that the jury applies the correct legal standard and prevents prejudice to

18   Harford.

19         Defendants' objection to this instruction rests on overreading Maryland law. Defendants

20   assert that *Yonce v. SmithKline Beecham Clinical Labs., Inc.*, 680 A.2d 569, 575-76 (Md. Ct. Spec.

21   App. 1996), created a rule that requires each cause to be sufficient to cause the entire harm in order

22   to be a "substantial factor." That is not the law. *Yonce* discussed the need for an alternative to the

23   but-for test in the context of "situations in which two independent causes concur to bring about an

24   injury, and either cause, standing alone, would have wrought the identical harm." *Id.* (quoting But

25   Defendants overread this language: as another Maryland court put it in an asbestos case, "where the

26   plaintiff has sufficiently demonstrated both lung disease resulting from exposure to asbestos and

27   that the exposure was to the asbestos products of many different, but identified, suppliers, no

28   supplier enjoys a causation defense solely on the ground that the plaintiff would probably have

---

69

1    suffered the same disease from inhaling fibers originating from the products of other suppliers."

2    *Eagle-Picher Industries, Inc. v. Balbos*, 604 A.2d 445, 459 (Md. App. Ct. 1992). In the same

3    paragraph, the court noted that harm may be "cumulative" when contributed to from multiple

4    sources—in other words, recognizing that liability may lie for all parties even if the total harm

5    caused is greater than any single defendant's contribution. *Id*. Notably, *Yonce* (the case that

6    Defendants claim created a rule that a substantial factor must be "standing alone" sufficient to cause

7    the entire harm) relies on *Eagle-Picher* (the case that expressly acknowledged harm may be

8    cumulative) to explain substantial factor. 680 A.2d at 575-76.

9    　　　　Defendants find one federal court that shared its extreme reading of *Yonce*, but even in that

10   case the court recognized that Maryland (in line with many other states) endorses "a modification

11   of traditional causation principles" to allow recovery against several defendants where multiple

12   tortfeasors' actions allegedly combine to cause a single harm. *State v. Exxon Mobil Corp.*, 406 F.

13   Supp. 3d 420, 457-58 (D. Md. 2019) (quoting Restatement (Second) § 433B(2)). In such cases, if a

14   contributing defendant seeks to limit its own liability, it must prove with evidence that the harm

15   caused is apportionable, otherwise face full liability. *See id.* The fact that *Exxon Mobil* court referred

16   to the test as "commingled product liability" rather than a "substantial factor test" places form over

17   function—Maryland does not mandate that a plaintiff prove each of multiple contributing tortfeasors

18   was sufficient to cause the plaintiff's harm in cases where the harm is indivisible, unless the

19   defendants come forward with evidence that the harm *is* apportionable and their liability should be

20   limited to only part of the harm. *See supra* [Public Nuisance], [Causation].

21

22

23

24

25

26

27

28

1

### 2.    Defendants' Argument

2          This Court should adopt Defendants' proposed instruction because Harford's proposal

3    misstates the law.  Under the substantial factor test, Harford must show that each Defendant's

4    actionable conduct was *both* a cause-in-fact and a legally cognizable cause of any diversion of

5    financial resources.  Put another way, Harford must demonstrate that, "standing alone," each

6    Defendant's actionable conduct "would have wrought the identical harm."  *See Yonce v. SmithKline*

7    *Beecham Clinical Laboratories*, *Inc.*, 680 A.2d 569, 575–76 (Md. Ct. Spec. App. 1996); *Asphalt &*

8    *Concrete Servs., Inc. v. Perry*, 108 A.3d 558, 574 (Md. Ct. Spec. App. 2015), *aff'd*, 133 A.3d 1143

9    (2016).  Harford's proposed instruction—which defines a "substantial factor" as any "factor that a

10   reasonable person would consider to have contributed to the harm"—is, therefore, inaccurate.

11         To carry its burden, Harford must prove that each Defendant's conduct "itself [was]

12   sufficient to bring about harm to [Harford]."  Restatement (Second) of Torts § 432(2) (A.L.I. 1965);

13   *see also Mitchell v. Rite Aid, Inc.*, 290 A.3d 1125, 1157 (Md. App. Ct. 2023) ("[P]laintiff must show

14   that the defendant's conduct was a but-for cause of the plaintiff's injuries, or, if one of multiple

15   causes, that 'it is more likely than not that *the defendant's* conduct was a substantial factor in

16   producing the plaintiff's injuries.'" (emphasis added) (citation omitted)), *cert. denied*, 296 A.3d 419

17   (Md. 2023) (unpublished table decision).  Defendants do not argue, nor does their proposed

18   language require, that Harford show a Defendant's conduct had a greater impact than any other

19   substantial factor causing the harm.  Instead, Defendants' instruction makes clear that it is not

20   sufficient for Harford to show that the combined effects of Defendants' actions caused Harford's

21   injury.  *See Maryland v. Exxon Mobil Corp.*, 406 F. Supp. 3d 420, 455 (D. Md. 2019) (rejecting

22   State's argument that it plausibly alleged causation under the substantial factor test based on

23   allegations that "defendants are collectively responsible" for contamination).

24         Harford misinterprets *Exxon Mobil Corp*.  That case analyzed the plaintiff's argument that

25   it plausibly alleged causation under the substantial factor test. The Court explained that, "[f]atal to

26   the State's argument . . . is that a cause *must be sufficient before it can be substantial*." *Id.* at 455

27   (emphasis added).  The court continued: "Here, the State alleges that defendants are collectively

28   responsible for the MTBE gasoline that was released into its waters, resulting in widespread

1    contamination. . . . But, the State does not allege that any single defendant's conduct was sufficient

2    to cause its injury.  Accordingly, it fails to plausibly allege causation under the substantial factor

3    test."  *Id.*    Skipping over this analysis, Harford points to the court's *separate* analysis of the

4    plaintiff's theory of market share and/or commingled product theories of liability.  Harford has not

5    proceeded under a theory of market share liability nor has it argued for any sort of commingled

6    product theory of liability.  Instead, Harford asks the court to apply the substantial factor test.

7    Despite Harford's suggestion that focusing on the difference between the names of these legal

8    concepts "places form over function," these concepts have different names because they are, in fact,

9    different.  This is made clear by the court's separate analyses of these concepts in *Exxon Mobil*

10   *Corp.*  In *Exxon Mobil*, the court explained that the commingled product theory applies "only when:

11   (1) the product of each defendant is *present in the commingled product*, and; (2) the commingled

12   product caused the plaintiff's harm."  *Id.* at 458 (emphasis added).  These circumstances are not

13   present here.  Further, the court explained that "this theory will be inapplicable if traditional proof

14   of causation is possible after discovery. At this stage, however, the State may rely on this theory to

15   survive dismissal."  *Id.*

16         This Court should reject Harford's attempts to inject new, alternative theories of liability at

17   this stage in the case, and it should further reject Harford's argument that the substantial factor test

18   is just "commingled product liability" by another name.  It is not.

19

20

21

22

23

24

25

26

27

28

1

2

### C.    INSTRUCTION NO. 25: CAUSATION – INTERVENING/SUPERSEDING CAUSE

3

4

[*Defendants object to this instruction but have proposed the language below if the instruction is ordered over their objection.  Defendants' proposal in green text; Harford's proposal in blue text.*]

5

6

7

8

There can be additional causes for the injury harm that occur after the Defendant's conduct. If a later event or act could have been reasonably foreseen, the Defendant is not excused for responsibility for any injury harm caused by the Defendant's negligence. But if an event or act is so extraordinary that it was not reasonably foreseeable, the Defendant's conduct is not a legal cause of the injury harm.

9

10

**PLAINTIFF'S AUTHORITY:** MPJI-Cv 19:11 INTERVENING/SUPERSEDING CAUSE; *Sindler v. Litman*, 887 A.2d 97, 111-12 (Md. Ct. Spec. App. 2005); *Copsey v. Park*, 60 A.3d 623, 637 (Md. 2017).

11

12

**DEFENDANTS' AUTHORITY: N/A**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### 1.  Plaintiff's Argument

2          Harford's proposed instruction is a verbatim reproduction of Maryland's pattern instruction

3   on intervening and superseding cause. *See* MPJI-Cv 19:11, INTERVENING/SUPERSEDING

4   CAUSE. The only edit made is to change "injury" to "harm," for the ease of the jury's understanding

5   in a case that involves economic harms.

6          **Intervening/Superseding Cause Instruction is Warranted.** The proposed instruction is

7   also necessary to assist the jury in evaluating causation where, as here, defendants argue that there

8   were alternative causes to the plaintiff's injury. Maryland courts have regularly quoted this pattern

9   instruction where there is "evidence alleging multiple instances of breach," as is the case here.

10  *Handy v. Box Hill Surery Ctr. LLC*, 279 A.3d 1035, 1040-41 (Md. Ct. Spec. App. 2022) (affirming

11  the trial court's decision to give a jury instruction that quotes MPJI-CV 19:11 verbatim); *Beverly v.*

12  *Carp-Seca Corp.*, 2020 WL 1866936, *4-5 & n. 5 (Md. Ct. Spec. App. Apr. 14, 2020) (same); *see*

13  *also Sabrina Senn / Doloris Carter v. Ashlee Carterun*, 2023 WL 6377106 (Md. Cir. Ct. June 7,

14  2023) (jury instructions); *Doris Scott v. Univ. Protection Serv., LLC*, 2022 WL 22285821 (Md. Cir.

15  Ct. May 27, 2022) ([jury instructions](#)); *Daniel Riddic v. Patient First Med. Grp. P.L.L.C., et al.*, 2021

16  WL 10396274 (Md. Cir. Ct. July 9, 2021) ([jury instructions](#)).

17         An instruction that makes this caveat clear is thus necessary to explain to the jury that

18  Defendants cannot escape liability merely by pointing the finger at another party—whether that be

19  the "poverty," "homelessness," or "broken families" that Defendants have historically argued to be

20  the true source of Harford's harms, ECF No. 2289 at 1-2, or the "individuals who post dangerous

21  'challenges' on Defendant's platforms, commit crimes, or post threats on Defendants' platforms,"

22  which Defendants insist on mentioning to the jury through jury instructions. If Defendants agree to

23  abandon their unsupported proffer of alternative causes, then Harford agrees that this instruction

24  would be unnecessary.

25

26

27

28

## 2.    Defendants' Argument

There is no basis for instructing on intervening or superseding causes in this case.  These are affirmative defenses that Defendants are not asserting.  Harford cannot, therefore, unilaterally inject them into the jury instructions.

During the parties' conferral, Harford took the position that this instruction is necessary because Defendants may present evidence of alternative causes (e.g., COVID-19) at trial.  That misunderstands the distinction between alternative causes, on the one hand, and intervening or superseding causes, on the other.

An alternative cause is a cause that Defendants contend is the actual causes of any injuries suffered by Harford.  They exist independently of Defendants' conduct.  Under the affirmative defense of intervening/superseding cause, a defendant could argue that even if it acted negligently, another event occurred after that original negligent act that broke the chain of causation.  *Handy v. Box Hill Surgery Ctr LLC*, 279 A.3d 1035 (Md. Ct. Spec. App. 2022); *Pittway Corp. v. Collins*, 973 A.2d 771 (Md. 2009).  Because Defendants are not asserting that affirmative defense, the Court should not instruct on intervening or superseding cause.

If the Court gives this instruction over Defendants' objection, it should not accept Harford's modifications to the Maryland Pattern Civil Jury Instruction.  Harford modified the instruction to reference "harm" instead of "injury."  Injury is an element of Harford's claims, and Harford provides no authority for that deviation.  The Court should reject it.

1

### D.    INSTRUCTION NO. 26: HEEDING PRESUMPTION

2

*[Defendants object to this instruction but have proposed the language below if the instruction is ordered over their objection. Defendants' proposal in green text; Harford's proposal in blue text.]*

3

4

Harford claims that each Defendants failed to adequately warn Harford about the risks of their platforms the Defendant's platform(s) to Harford's students.  Unless there is evidence to the contrary, you may assume.  You may begin with the assumption that if an adequate warning were given, Harford the School District, students, and parents would have read and followed it that warning. It is the Defendants' burden to prove that an adequate warning would not have been followed. The Defendants must show this by a preponderance of the evidence.  A Defendant may rebut this presumption by presenting evidence that, even if an adequate warning had been given, Harford would not have read and followed it.

5

6

7

8

9

If a warning would not have prevented Harford's alleged harm from occurring, then a Defendant who failed to warn is not responsible because the absence of warning could not have been a cause of the injury.

10

11

**PLAINTIFF'S AUTHORITY:** *U.S. Gypsum Co. v. Mayor and City Council of Baltimore*, 647 A.2d 405, 413 (Md. Ct. App. 1994); *Eagle-Picher Indus., Inc. v. Balbos*, 604 A.2d 445, 469 (1992); *see also* MPJI-Cv 26:5 USER'S DUTY--WHEN AVAILABLE AS AFFIRMATIVE DEFENSE ("a manufacturer reasonably may assume that warnings and instructions will be read and heeded"); *State v. Exxon Mobil Corp.*, 406 F. Supp. 3d 420, 463-64 (D. Md. 2019) (recognizing heeding presumption where "the State [a forseeable third-party] plausibly alleges that the harm it suffered was a foreseeable result of defendants' placement of MTBE gasoline into the Maryland market").

12

13

14

15

16

17

**DEFENDANTS' AUTHORITY:** *Eagle-Picher Indus., Inc. v. Balbos*, 604 A.2d 445, 469 (Md. 1992) ("All of the facts and inferences were submitted to the jury, which was instructed that 'if a warning would not have prevented the harm from occurring then a defendant who failed to warn is not responsible because the absence of warning could not have been or would not have been a cause of the injury.'"); *McKenzie v. Anne Arundel County*, 2016 WL 4379127, at *9 (Md. Ct. Spec. App. Aug. 17, 2016); Second SD Order at 19 (Harford argued to this Court that its claims "do not concern product liability law as they do not seek to recover for injuries suffered from a defective product" (quoting ECF No. 668 at 30)); *U.S. Gypsum Co. v. Mayor & City Council of Balt.*, 647 A.2d 405, 413 (Md. 1994); *Certainteed Corp. v. Fletcher*, 794 S.E.2d 641, 645–46 (Ga. 2016); *Kuciemba v. Victory Woodworks, Inc.*, 531 P.3d 924, 943 (Cal. 2023) (employer had no duty to employee's wife to prevent spread of coronavirus at work); *Menard v. Newhall*, 373 A.2d 505, 505 (Vt. 1977).

18

19

20

21

22

23

24

25

26

27

28

1

### 1.    Plaintiff's Argument

2

**Heeding Presumption Instruction is Warranted.** Defendants object to the inclusion of

3

this instruction without providing any proposed edits or authority for doing so. Maryland law "has

4

long recognized" the heeding presumption, which "at a minimum means that jurors are entitled to

5

bring to their deliberations their knowledge of the 'natural instinct' and 'disposition' of persons to

6

guard themselves against danger." *Eagle-Picher Indus., Inc. v. Balbos*, 604 A.2d 445, 469 (Md. Ct.

7

App. 1992) (collecting cases). Defendants have directly raised the issue of whether Harford would

8

have heeded a warning regarding Defendants' platforms. *See* SD MSJ No. 6, ECF No. 2296 at 43-

9

45 (Sept. 30, 2025) ("There is no evidence that, in the face of such a warning, Harford itself would

10

have further restricted access to Defendants' platforms by students."). Notably, the court in *Eagle-*

11

*Picher*, the case Defendants have cited as supporting authority did feature a heeding instruction,

12

including language which Plaintiffs have adopted in part. *Eagle-Picher Indus., Inc. v. Balbos*, 604

13

A.2d 445, 469 (Md. 1992). It is fair and appropriate to include an instruction on the relevant legal

14

standard under Maryland law; *State v. Exxon Mobil Corp.*, 406 F. Supp. 3d 420, 463-64 (D. Md.

15

2019) (recognizing heeding presumption where "the State [a forseeable third-party] plausibly

16

alleges that the harm it suffered was a foreseeable result of defendants' placement of MTBE gasoline

17

into the Maryland market").

18

Notably, the Maryland Pattern Jury Instructions do *explicitly* incorporate the heeding

19

presumption in the context of affirmative defenses. Where the defense is raised, the court may

20

instruct that: "a manufacturer reasonably may assume that warnings and instructions will be read

21

and heeded, and user's failure to read and follow the instructions is a defense." MPJI-Cv 26:5

22

(USER'S DUTY--WHEN AVAILABLE AS AFFIRMATIVE DEFENSE). Where Defendants plan

23

to argue that there is no evidence that a reasonable warning would have been heeded, the court

24

should instruct the jury to assume a hypothetical warning would have been read and followed by

25

Harford absent clear evidence to the contrary.

26

27

28

### 2.    Defendants' Argument

The heeding presumption does not apply for two reasons. *First*, "[t]he [h]eeding [p]resumption arises in product liability cases." *McKenzie v. Anne Arundel County*, 2016 WL 4379127, at *9 (Md. Ct. Spec. App. Aug. 17, 2016) ("Because [the plaintiff's] claims ar[o]se out of the law of negligence," the Court of Special Appeals of Maryland "[saw] no basis upon which to conclude that the court erred in refusing to instruct the jury on a doctrine derived from products liability."); *Eagle-Picher Indus., Inc. v. Balbos*, 604 A.2d 445, 469 (Md. 1992). Harford has not brought a product liability claim and previously argued to this Court that its claims "do not concern product liability law as they do not seek to recover for injuries suffered from a defective product." Second SD Order at 19 (quoting MTD Opp. at 30). Having disclaimed bringing products liability claims, Harford cannot use a product-liability doctrine to save its lack of causation evidence. *Exxon Mobile* is also of no help to Harford. The State there was not a "third-party"—it was the *plaintiff* suing in *parens patriae* and as the trustee of the State's resources. Harford does not sue in *parens patriae* or as anyone's trustee and has no authority to do so. Also, *Exxon Mobile* is a strict product liability failure to warn case, and this case is not. 406 F. Supp. 3d at 464 ("In some jurisdictions, including Maryland, there is a presumption in strict liability cases that a plaintiff would have read and heeded an adequate warning if it had been given." (quoting *White ex rel. White v. R.J. Reynolds Tobacco Co.*, 109 F. Supp. 2d 424, 435 (D. Md. 2000)).

Harford references MPJI-Cv 26:5 in support of its proposed instruction. That instruction is inapposite: MPJI-Cv 26:5 discusses the duty of *users* of a product to use reasonable care for their own safety. The fact that a comment to the instruction makes clear that a user's failure to read warnings is a *defense* does not mean that Harford is entitled to an evidentiary presumption that it would have read and heeded a warning. *See* MPJI-Cv 26:5 cmt. C.2.

*Second*, even where it applies, the heeding presumption allows the jury to presume only that "*plaintiff*[] would have heeded a legally adequate warning had one been given." *U.S. Gypsum Co. v. Mayor of Balt.*, 647 A.2d 405, 413 (Md. 1994) (emphasis added). In order to prevent Harford's alleged harms, not only would Harford have to have acted differently in the face of an adequate warning, but because Harford is not the end-user, students and parents would have had to act

1  differently to avoid the alleged mental health and classroom disruption harms.  No case has ever

2  allowed such a double-layer of presumption, and Harford does not cite any authority that would

3  allow it to apply a presumption that *students* and *parents* would have acted differently in the face of

4  an adequate warning.

5      If the Court instructs on the heeding presumption over Defendants' objection, it should give

6  Defendants' proposed instruction, which corrects the errors in Harford's proposal:  Defendants'

7  instruction makes clear that any duty to warn that Harford can enforce must run to Harford—not to

8  non-party students and parents.  *See U.S. Gypsum Co.*, 647 A.2d at 413.  Harford's proposed

9  instruction intentionally leaves vague to whom the duty runs, which would improperly allow the

10  jury to base a verdict on a duty to warn students and parents, or others.  Defendants' instruction also

11  explains the effect of rebutting the heeding presumption—namely, that "'if a warning would not

12  have prevented the harm from occurring then a defendant who failed to warn is not responsible

13  because the absence of warning could not have been or would not have been a cause of the injury.'"

14  *Eagle-Picher*, 604 A.2d at 469.  Nor is there any basis in Harford's cited authority for its proposed

15  instruction that: "It is the Defendants' burden to prove that an adequate warning would not have

16  been followed. The Defendants must show this by a preponderance of the evidence."  To the

17  contrary, *Eagle-Picher* and the cases it cites describe a burden of production, not persuasion.

18  *Menard v. Newhall*, 373 A.2d 505, 505 (Vt. 1977) (noting that the rebutting party was "obligated to

19  go forward with evidence that the [user] would have ignored any warning given and, after

20  introduction of that evidence, the presumption disappears").  Finally, Harford's proposed instruction

21  fails to sufficiently explain to the jury that it must meet its burden to show that *each* Defendant

22  failed to warn.  The instruction should use the language "each Defendant" to make clear that a

23  finding that one Defendant failed to warn does not mean a verdict can be found against all

24  Defendants.

25

26

27

28

### E.    INSTRUCTION NO. 27: STATUTE OF LIMITATIONS

[*Plaintiff objects to the inclusion of this instruction. Defendants' proposal in green text; Harford's proposal in blue text.*]

Harford's public nuisance claim is not subject to a statute of limitations but its negligence claim is. Therefore, consider this instruction as to Harford's negligence claim only.

A cause of action accrues when the plaintiff knows, or by reasonably diligent investigation should have known, of the injury or damage:

(1) of the nature of its harm or damage; and

(2) the cause of its harm or damage.

Once a cause of action accrues, a plaintiff must file their lawsuit within a specified amount of time called the statute of limitations. In this case, Harford must have filed its lawsuit within three years of when it knew, or by reasonably diligent investigation should have known, of its harm injury or damage.

Harford filed this lawsuit on June 1, 2023. As a result, if you find that Harford knew, or by reasonably diligent investigation should have known, of the nature and the cause of its harm injury or damages on or before June 1, 2020, its negligence and public nuisance claims are is barred by the statute of limitations.

**PLAINTIFF'S AUTHORITY:** MPJI-Cv 1:24 (ACCRUAL OF CAUSE OF ACTION); Md. Code Ann, Cts. & Jud. Proc. § 5-101 (West).

**DEFENDANTS' AUTHORITY:** Md. Code Ann., Cts. & Jud. Proc. § 5-101; MPJI-Cv 1:24 ACCRUAL OF CAUSE OF ACTION (modified); *Windesheim v. Larocca*, 116 A.3d 954, 962-63 (Md. 2015); *Litz v. Md. Dep't of Env't*, 646, 76 A.3d 1076, 1089 (Md. 2013).

1

### 1.    Plaintiff's Argument

**Defendants' inclusion of public nuisance is erroneous**. Under Maryland law, "[t]here is no such thing as a prescriptive right or any other right to maintain a public nuisance." *Liller v. State Highway Admin.*, 333 A.2d 644, 647–48 (Md. 1975) (collecting cases); *Hoffman v. United Iron & Metal Co.*, 671 A.2d 55, 64 n.9 (Md. Ct. Spec. App. 1996) ("Appellants also contend that the Facility constitutes a public nuisance, which no party may acquire a prescriptive right to maintain. Where, as here, the abatement remedy is sought to stop a public nuisance, the statute of limitations cannot apply to those damages, which necessarily seek to stop *future* conduct, not merely compensate for *past* conduct. The statute of limitations defense should only apply to Harford's claim for public nuisance.

**Plaintiffs' addition of language related to "nature and cause" of injury.** Plaintiffs' proposed instruction largely repeats the pattern instruction, but also includes language from Maryland caselaw that will assist the jury. As stated in the Maryland Pattern Jury Instruction comments "accrual of a cause of action occurs when all elements, including damages, however trivial, are present." MPJI-Cv 1:24, ACCRUAL OF CAUSE OF ACTION. Similarly, Maryland courts recognize that it is not merely discovery of injury or harm that allows for tolling of the discovery rule, but also "notice of the *nature and cause* of his or her injury." *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 756 A.2d 963, 973 (Md. 2000) (emphasis added). Inclusion of "nature and cause" language will assist the jury.

**Defendants' proposed date for the statute of limitations improperly removes consideration of a factual issue from the province of the jury.** The Maryland pattern instructions explain that when a plaintiff is charged with notice (*i.e.*, when an action has accrued under the discovery rule) is an issue of fact reserved for the jury's sound discretion. *See* MPJI-Cv 1:24, ACCRUAL OF CAUSE OF ACTION (citing *Baysinger v. Schmid Products Co.*, 307 Md. 361 (Md. Ct. App. 1986)). The jury is capable of making the factual determination of when Harford knew or should have known of its claim. That date need not be presumed via jury instructions.

## 2.   Defendants' Argument

Harford has no basis to object to a statute of limitations instruction.  The statute of limitation is an affirmative defense that Defendants asserted, that Harford never moved to strike and on which it did not move for summary judgment, and that is supported by the evidence.  Harford seeks damages dating as far back as 2017.  *See* Ward Harford Report ¶ 1(a); Myers Harford Report ¶ 1. Harford claims that it suffered damages such as lost time due to Defendants' platforms and purchasing internet filters as a result of Defendants' platforms.  If Harford teachers and staff were spending time addressing Defendants' platforms and spending money to purchase filters to block them, Harford knew that at the time in 2017.

This Court should adopt Defendants' proposed instruction because Harford's instruction is inconsistent with Maryland law.  Harford's proposed instruction that "Harford's public nuisance claim is not subject to a statute of limitations" is unsupported.  Maryland's general statute of limitations for civil actions provides that "a civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."  *See* Md. Code Ann, Cts. & Jud. Proc. § 5-101.  Numerous cases have applied that statute to public nuisance claims.  *See, e.g.*, *Litz v. Md. Dep't of Env't*, 646, 76 A.3d 1076, 1089 (Md. 2013).  Nor has Harford disclaimed seeking its past damages as a result of its nuisance claim.  Whether or not it may seek the Hoover plan as "equitable" future relief, it may not seek past damages for its nuisance claim for time-barred claims.

Nor does Harford cite any support for its position that a plaintiff's claim does not accrue until it knows both the (1) "nature" and (2) "cause" of its alleged injury.  This Court should adopt the pattern language Defendants propose, which accurately reflects Maryland law when it states: "A cause of action accrues when the plaintiff knows, or by reasonably diligent investigation should have known, of the injury or damage."  *See* MPJI-Cv 1:24.

Finally, Harford agrees that it must have filed its lawsuit within three years of when it knew, or by reasonably diligent investigation should have known, of its injury (or "harm," as Harford prefers).  Harford does not dispute that it filed this lawsuit on June 1, 2023.  As a result, if Harford knew or should have known of its injury on or before June 1, 2020, its claims are barred.  Providing

1  this date assists the jury in applying the statute of limitations to the facts of this case.  Contrary to

2  Harford's suggestion, June 1, 2020 is not the date that Harford's claims accrued.  It is simply the

3  date three years prior to Harford's filing of this lawsuit.  If Harford knew or should have known

4  about its injury *prior* to that date, its negligence and public nuisance claims are barred.  Md. Code

5  Ann., Cts. & Jud. Proc. § 5-101.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PARTIES' JOINT PROPOSED JURY INSTRUCTIONS (BOARD OF EDUCATION OF HARFORD COUNTY)
4:22-md-03047-YGR

## F.    INSTRUCTION NO. 28: CONTRIBUTORY NEGLIGENCE

[*Plaintiff objects to the inclusion of this instruction. Defendants' proposal in green text; Harford's proposal in blue text.*]

Harford cannot recover damages if its injuries result from and are a reasonably foreseeable consequence of its negligence. If you find that Harford acted or failed to act in a manner consistent with the knowledge or appreciation, actual or implied, of the danger or injury involved, it is not allowed to recover any damages, regardless of the extent of the Defendants' negligence.

Defendants have the burden of proving this defense each of the following elements by a preponderance of the evidence.:

(1) Harford either knew of or should have appreciated the risks involved,

(2) Harford failed to exercise reasonable and ordinary care for its own safety,

(3) Harford's failure to exercise reasonable and ordinary care for its own safety was the proximate cause of its damages,

(4) Harford inflicted actual harm on itself as a result of its negligence.

It is not enough that negligence exists or it is passive or potential. The harmed party's negligence must be the moving and effective cause of the injured party's own harm.

**PLAINTIFF'S AUTHORITY:** MPJI-Cv 19:12 (CONTRIBUTORY NEGLIGENCE—GENERALLY); *Campbell v. Montgomery Cty. Bd. of Educ.*, 533 A.2d 9 (Md. 1987), *cert. denied*, 537 A.2d 273 (Md. 1988); *Faith v. Keefer*, 736 A.2d 422, *cert. denied*, 742 A.2d 521 (Md. 1999) *Blake v. Chadwick*, 249 Md. App. 696, 704, 246 A.3d 752, 757 (2021) ("The defendants may, however, be guilty of the leap of logic that casually assumes that negligence on the part of a plaintiff is necessarily contributory negligence on the part of a plaintiff. To qualify as contributory negligence, it is not enough for negligence to exist. It must actively contribute."); *Peterson v. Underwood*, 258 Md. 9, 16, 264 A.2d 851 (1970) ("Thus, although injury might have not occurred 'but for' an antecedent act of the defendant, liability may not be imposed if for example the negligence of one person is merely passive and potential, while the negligence of another is the moving and effective cause of the injury."); *Barbosa v. Osbourne*, 237 Md. App. 1, 12, 183 A.3d 785, 792 (2018) ("[t]o be held contributorily negligent, a person must actually have been aware of or should have appreciated the risks involved and then failed to exercise reasonable and ordinary care for his own safety.").

**DEFENDANTS' AUTHORITY:** MPJI-Cv 19:12 CONTRIBUTORY NEGLIGENCE—GENERALLY; *id.* cmt. A.2; *Menish v. Polinger Co.*, 356 A.2d 233 (Md. 1976); *Coleman v. Soccer Ass'n of Columbia*, 69 A.3d 1149, 1159 (Md. 2013) ("Under the doctrine of contributory negligence, a plaintiff who fails to exercise ordinary care for his or her own safety, and thus contributes proximately to his or her injury, 'is barred from all recovery, regardless of the quantum of a defendant's primary negligence.'" (citation omitted)); *Poole v. Coakley & Williams Constr., Inc.*, 31 A.3d 212, 224 (2011) (quoting Page Keeton & William Lloyd Prosser, *Prosser and Keeton* § 68, at 482 (5th ed. 1984); *Blake v. Chadwick*, 246 A.3d 752, 757 (Md. Ct. Spec. App. 2021); *Peterson v. Underwood*, 264 A.2d 851 (Md. 1970).

1                    **1.    Plaintiff's Argument**

2          Harford objects to the inclusion of a contributory negligence instruction because Defendants

3    have failed to establish evidence to support one. Even if the Defendants were able to show that there

4    is evidence in the record that Harford failed to exercise due care and that failure was a proximate

5    cause of the harms it alleges, the court should reject Defendants' proposed language.

6          **Defendants must prove contributory negligence by Plaintiffs under the same standard**

7    **and elements that Plaintiffs must prove negligence by Defendants.** Under Maryland law, "[t]o

8    be held contributorily negligent, a person must actually have been aware of or should have

9    appreciated the risks involved and then failed to exercise reasonable and ordinary care for his own

10   safety." *Barbosa v. Osbourne*, 183 A.3d 785, 792 (Md. Ct. App. 2018). In other words, this is the

11   same standard and elements required from Plaintiffs to prove their case. Plaintiffs reiterate the

12   elements of negligence that Defendants must prove to establish the defense of contributory

13   negligence, as required by this Court's standing order. YGR Pretrial Standing Order at 3.g.ii.c ("The

14   instructions … shall begin with the elements.").

15         **Mere existence of negligence is not enough to show contributory negligence.**

16   Defendants' instruction implies that the mere existence of negligence on Harford's part should result

17   in no recovery under Maryland's contributory negligence scheme. The notion that slight negligence

18   should result in no recovery is plainly contrary to Maryland caselaw on contributory negligence. As

19   stated in *Blake v. Chadwick*, "[t]o qualify as contributory negligence, it is not enough for negligence

20   to exist. It must actively contribute." 246 A.3d 752, 757 (2021); *Peterson v. Underwood*, 258 Md.

21   9, 16, 264 A.2d 851 (1970) ("liability may not be imposed if for example the negligence of one

22   person is merely passive and potential, while the negligence of another is the moving and effective

23   cause of the injury").

24         **Maryland has explicitly disavowed the use of percentages in instructions on**

25   **negligence.** Defendants have added language to this instruction claiming that a percentage of

26   contributory negligence should preclude recovery without any basis in law. Under Maryland law it

27   is "objectionable" to give a jury instruction that "refers to negligence 'in any degree whatsoever' . .

28   . and more so when it refers to negligence in the slightest degree," as Defendants have done here.

1    *Johnson v. Mitchell Supply, Inc.,* 363 A.2d 657, 662 (Md. Ct. Spec. App. 1976). In fact, the highest

2    court in Maryland has explicitly rejected an instruction that is virtually identical to Defendants'

3    proposed addition, holding that "this court has repeatedly stated that no reference should be made

4    in a jury charge to a ***comparative degree or percentage of negligence*** or contributory negligence."

5    *Id.* at 109 (emphasis added). Defendants' additions would misstate the law and should be rejected.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### 2.    Defendants' Argument

2      There is no basis for Harford's objection to instructing on contributory negligence.

3  Maryland retains pure contributory negligence, and Defendants have properly asserted it as an

4  affirmative defense.

5      When it instructs on contributory negligence, this Court should reject Harford's substantial

6  deviations from the pattern.  The pattern sets out the substance of the contributory negligence

7  defense in a single, straightforward sentence: "A plaintiff cannot recover damages if the plaintiff's

8  injuries result from and are a reasonably foreseeable consequence of the plaintiff's negligence."

9  MPJI-Cv 19:12.  Harford's proposed edits—which transform that sentence into a half-page, four

10  element outline—are either legally incorrect, prejudicial alterations designed to make this defense

11  seem more difficult to prove, or both.

12      There are multiple legal errors in Harford's proposal.  *First*, Harford incorrectly states that

13  Defendants must prove "Harford either knew of or should have appreciated the risks involved."

14  That is not the law.  Unlike assumption of risk, which "is a matter of knowledge of the danger and

15  voluntary acquiescence in it," contributory negligence "is a matter of some fault or departure from

16  the standard of conduct of the reasonable person, however unaware, unwilling, or even protesting

17  the plaintiff may be." *Poole v. Coakley & Williams Constr., Inc.*, 31 A.3d 212, 224 (2011) (quoting

18  Page Keeton & William Lloyd Prosser, *Prosser and Keeton* § 68, at 482 (5th ed. 1984).  The case

19  Harford quotes in support of its proposal—*Barbosa v. Osbourne*, 183 A.3d 785, 792 (Md. Ct. Spec.

20  App. 2018)—is inapposite.  *Barbosa* concerns "whether the purported negligence of a patient

21  plaintiff, which precedes any medical treatment, may be raised as a defense of contributory

22  negligence, by a physician that subsequently treats that individual.  *Id.* at 792–93.  That is

23  (obviously) not an issue here.

24      *Second*, Harford invents a fourth element of contributory negligence—that "Harford inflicted

25  actual harm on itself as a result of its negligence."  To the extent "actual harm" is meant to have

26  some independent meaning, it is unsupported.  Defendants are not aware of—and Harford does not

27  cite—a single Maryland contributory negligence case that uses its proposed "actual harm" language.

28

Harford's other proposed changes are transparent, prejudicial attempts to stack the deck. For example, the Maryland pattern closes by reciting Defendants' burden. It states in a final sentence: "The defendant has the burden of proving this defense by a preponderance of the evidence." MPJI-Cv 19:12. Harford proposes placing the burden atop a list of elements of its own invention. That deviation can only be explained by Harford's desire to stilt the pattern instruction.

Harford also needlessly injects a separate final paragraph addressing general causation principles. This Court should reject Harford's transparent effort to make contributory negligence seem more difficult to prove. The Maryland pattern instruction already addresses causation. It states: "A plaintiff cannot recover damages *if the plaintiff's injuries result from and are a reasonably foreseeable consequence of* the plaintiff's negligence." MPJI-Cv 19:12 (emphasis added). The "result from" language in the pattern instruction reflects that a plaintiff's negligence must "actively contribute." *See Blake v. Chadwick*, 246 A.3d 752, 757 (Md. Ct. Spec. App. 2021). And the jury will receive separate instructions on causation and foreseeability. There is no justification for cluttering the contributory negligence instruction with stray sentences about general causation principles that Harford sees as favorable. *See, e.g.*, *Peterson v. Underwood*, 264 A.2d 851 (Md. 1970) (not addressing contributory negligence).

Harford's second and third elements likewise bloat the instructions by repeating concepts to give the jury the illusion that Defendants have more to prove. The pattern instruction sentence Harford retains states that "Harford cannot recover damages if its injuries result from and are a reasonably foreseeable consequence of its negligence," and the instructions contain freestanding instructions on negligence, causation, and reasonable foreseeability. Nothing more is needed.

Finally, Defendants dispute that they do not have evidence that Harford was contributorily negligent. That will be a contested issue at trial.

### G.    INSTRUCTION NO. 29: ASSUMPTION OF RISK

[*Plaintiff objects to the inclusion of this instruction. Defendants' proposal in green text; Harford's proposal in blue text.*]

Harford cannot recover damages if it assumed the risk of an injury harm. Harford assumed the risk of an injury if it knew and understood, or must have known and understood, the risk of an existing danger and voluntarily chose to encounter that danger.

To prove that Harford assumed the risk of a harm, Defendants must prove by a preponderance of the evidence that Harford:

(1) Had knowledge of the risk of the danger posed by Defendants' platforms;

(2) Appreciated the risk posed by Defendants' platforms; and

(3) Voluntarily confronted the risk of danger posed by Defendants' platforms.

**PLAINTIFF'S AUTHORITY:** MPJI-Cv 19:14 (ASSUMPTION OF RISK); *Baltimore Gas & Elec. Co. v. Flippo*, 348 Md. 680, 705–06, 705 A.2d 1144, 1156 (1998) ("It is well settled in Maryland that in order to establish the defense of assumption of risk, the defendant must prove that the plaintiff:  "(1) had knowledge of the risk of the danger; (2) appreciated that risk; and (3) voluntarily confronted the risk of danger.").

**DEFENDANTS' AUTHORITY**: MPJI-Cv 19:14 (ASSUMPTION OF RISK); *Schwartz v. Johnson*, 49 A.3d 359, 368 (Md. Ct. Spec. App. 2012); *Poole v. Coakley & Williams Constr., Inc.*, 31 A.3d 212, 227 (Md. 2011); *C & M Builders, LLC v. Strub*, 22 A.3d 867, 882 (Md. 2011).

1            **1.**     **Plaintiff's Argument**

2          **Assumption of Risk Instruction Not Warranted.** Harford objects to instructing the jury

3 on assumption of risk, as Defendants have not supplied any evidence suggesting that Harford

4 assumed any risk of its harms. Maryland law recognizes that, "[w]hen the doctrine of assumption

5 of risk is inapplicable under the facts of a given case, courts should spare juries intricate descriptions

6 of opaque legal doctrines[.]" *CSX Transp., Inc. v. Bickerstaff*, 978 A.2d 760, 781 (Md. Ct. Spec.

7 App. 2009) (internal citations omitted). As an affirmative defense, assumption of risk only warrants

8 a jury instruction if Defendants supply evidence that Harford "(1) had knowledge of the risk of the

9 danger; (2) appreciated that risk; and (3) voluntarily confronted the risk of danger." *Schwartz v.*

10 *Johnson*, 49 A.3d 359, 386 (Md. Ct. Spec. App. 2012). Defendants have not presented any evidence

11 that Harford had knowledge of the risks posed by Defendants' addictive platforms, appreciated that

12 risk, and voluntarily confronted that risk. Thus, a jury instruction on assumption of risk inapplicable

13 and would only serve to confuse the jury.

14          **Elements.** Should the Court decide to give this instruction, Plaintiffs have provided the

15 elements of this defense from Maryland caselaw, as required by this Court's standing order. YGR

16 Pretrial Standing Order at 3.g.ii.c ("The instructions … shall begin with the elements.").

17          **Affirmative Defense.** Defendants' proposed language omits that Defendants must prove the

18 statute of limitations by a preponderance of the evidence.

19

20

21

22

23

24

25

26

27

28

2.     **Defendants' Argument**

This Court should adopt Defendants' proposed instruction, which is the Maryland Pattern Jury Instruction with only cosmetic alterations (i.e., replacing "A plaintiff" with "Harford").  MPJI-Cv 19:14.  Harford's deviations from the pattern are inconsistent with Maryland law.

*First*, the pattern instruction alone contains all of the elements of the assumption of the risk defense that Harford quotes from *Schwartz*.  *Compare* MPJI-Cv 19:14 ("A person assumes the risk of an injury if that person knows and understands, or must have known and understood, the risk of an existing danger and voluntarily chooses to encounter that danger.") *with Schwartz v. Johnson*, 49 A.3d 359, 368 (Md. Ct. Spec. App. 2012) (defendant must show the plaintiff "(1) had knowledge of the risk of the danger; (2) appreciated that risk; and (3) voluntarily confronted the risk of danger.").  Nothing more is needed.

*Second*, Harford's instruction oversimplifies the knowledge requirement.  The pattern states that a plaintiff "assume[d] the risk of an injury if [it knew] and underst[ood], *or must have known and understood*, the risk of an existing danger."  MPJI-Cv 19:14 (emphasis added).  That language reflects the standard Maryland courts apply when assessing assumption of the risk.  Under that standard, "'there are certain risks which any one of adult age must be taken to appreciate,' and, in those cases, a simple denial from a plaintiff concerning his or her knowledge of such a risk will not be sufficient to avoid judgment for the defendant as a matter of law."  *Poole v. Coakley & Williams Constr., Inc.*, 31 A.3d 212, 227 (Md. 2011) (citations omitted).  Harford's proposed instruction, which requires proof that Harford "[h]ad knowledge of the risk of the danger posed by Defendants' platforms" and that Harford "[a]appreciated the risk posed by Defendants' platforms" invites the erroneous reading that a denial from Harford suffices to defeat the defense no matter how obvious the danger.  That is not the law.  Maryland Courts "have held consistently that 'when it is clear that a person of normal intelligence in the position of plaintiff *must* have understood the danger, the issue is for the court.'"  *Id.* at 227, 230 (internal citation omitted) (emphasis added in original); *see also C & M Builders, LLC v. Strub*, 22 A.3d 867, 882 (Md. 2011) ("[T]he party must have known and appreciated the risk either because it is not credible that a similarly situated person would not

91

1    have done so, or because the risk was so obvious that it could not have been encountered

2    unwittingly.").

3    *Third*, Harford has changed the word "injury," which is used in the Maryland Pattern Jury

4    Instructions, to "harm." This (and all other instructions) should use "injury." Harford does not

5    present any authority that supports deviating from the model instruction.

6    *Fourth*, Harford's proposed alteration of the Maryland pattern instruction's "voluntarily

7    chooses to encounter that danger" language is needless and confusing. *See* MPJI-Cv 19:14. Harford

8    proposes replacing the pattern language with "voluntarily confronted the risk of danger." The

9    language of "encounter[ing a] danger" reflected in the current pattern is more intuitive to a lay jury

10    than Harford's proposal. Indeed, the same recitation of the elements that Harford quotes from

11    *Baltimore Gas & Elec. Co. v. Flippo*, 705 A.2d 1144, 1156 (Md. 1998) in their cited authority is

12    contained in numerous other cases that form the basis of the pattern. *See* MPJI-Cv 19:14 cmt. A.3.a

13    (citing *Am. Powerlifting Ass'n v. Cotillo*, 934 A.2d 27, 33 (Md. 2007), which contains the same

14    recitation of the elements as *Filippo*, in support of the comment to MPJI-Cv 19:14 that "[v]oluntary

15    *exposure* to danger constitutes consent by the plaintiff, which relieves the defendant of any

16    obligation owed to the plaintiff" (emphasis added)).

17    *Fifth*, the Court should reject Harford's proposed repetition of the phrase "the risk of the

18    danger posed by Defendants' platforms." Harford proposes repeating that phrase three times in a

19    two-sentence instruction. That proposal is prejudicial to Defendants. This Court should, instead,

20    use the more neutral "injury" language in the pattern.

21    Finally, Defendants dispute that they do not have evidence that Harford assumed the risk of

22    an injury. That will be a contested issue at trial.

23

24

25

26

27

28

## H.    INSTRUCTION NO. 30: COMPENSATORY DAMAGES – GENERALLY

[*Defendants' proposal in green text; Harford's proposal in blue text.*]

If you find for Harford on the issue of liability, then you must consider the question of damages. It will be your duty to determine what, if any, award will fairly compensate Harford.

Harford has the burden to prove by a preponderance of the evidence each item of damage claimed to be caused by a particular Defendants. In determining damages, you shall consider what will reasonably and fairly compensate Harford for harms that Harford sustained that you determine were caused by Defendants, as well as for any harms you determined Harford is reasonably certain to sustain from the conduct complained of in this case. In considering the items of damage, you must keep in mind that your award must adequately and fairly compensate Harford. However, an award should not be based on guesswork.

You may only award Harford damages, if any, that you find were directly and proximately caused by each Defendant's Actionable Non-Protected Conduct. As explained above, you may not award damages to Harford for harms stemming from non-foreseeable third-party conduct because such conduct cannot be attributable to Defendants.

You may not award damages for conduct that occurred outside the statute of limitations discussed below.

You must not include in your award of compensatory damages any damages to punish or make an example of Defendants. You must award only the damages that fairly compensate Harford for its loss.

**PLAINTIFF'S AUTHORITY:** MPJI-Cv 10:1 (INTRODUCTORY STATEMENT); *McKeever v. Wash. Heights Realty Corp.*, 37 A.2d 305 (Md. 1944); *Roebuck v. Steuart*, 544 A.2d 808 (1988); *Davidson v. Miller*, 344 A.2d 422 (Md. 1975).

**DEFENDANTS' AUTHORITY:** MPJI-Cv 10:1 INTRODUCTORY STATEMENT (modified); *id*. cmt. A.1 (citing case for the proposition that "damages must be affirmatively proved with reasonable certainty"); *id*. ("Damage awards may not be based on speculative, remote, or uncertain damages."); First SD Order at 25 ("[A]lleged injury stemming from non-foreseeable third-party conduct cannot be attributable to defendants. Consistent with the above recitation of proximate causation principles, defendants' general knowledge that bad actors may propagate harmful challenges, transmit threats, or engage in crime on their platforms does not, on its own, suffice to establish proximate cause."); *Carter v. Wallace & Gale Asbestos Settlement Tr.*, 96 A.3d 147, 159 (2014); *Peterson v. Goodyear Tire & Rubber Co.*, 254 A.2d 198, 200 (1969).

1

### 1.    Plaintiff's Argument

2    **Affirmative Defenses.** Defendants' inclusions deviate from the text of MPJI-Cv 10:1,

3    INTRODUCTORY STATEMENT, which is meant to generally introduce the concept of

4    compensatory damages. These inclusions are premature and duplicative because they mirror

5    Defendants' proposed instructions on their affirmative defenses on the statute of limitations,

6    apportionment, and punitive damages. Plaintiffs maintain that Defendants formulation is

7    inappropriate for the reasons discussed for each respective instruction. *See infra* [Mitigation],

8    [Statute of Limitations], Contributory Negligence], [Assumption of Risk]. If the Court finds there

9    is an evidentiary basis for giving these instructions, Defendants would be entitled to these

10    instructions later in the sequence of jury instructions proposed, if they are entitled to an instruction

11    on these issues at all.

12    **Indivisible Injury.** Defendants' instruction again attempts to limit damages recoverable

13    from a Defendant by improperly mandating that Harford must show particular damages were caused

14    by a particular Defendant. That is not Maryland law in cases of indivisible injury. *See supra* [Public

15    Nuisance], [Causation]; *see infra* [Compensatory Damages – Apportionment].

16    **Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra*

17    [Negligence]; [Section 230].

18

19

20

21

22

23

24

25

26

27

28

1

### 2.     Defendants' Argument

2          This Court should adopt Defendants' instruction because Harford's instruction misconstrues

3    Maryland law and introduces duplicative yet inconsistent language.

4          *First*, Harford's proposed instruction incorrectly lumps together Defendants by failing to

5    instruct the jury that the case, and by extension the damages, against each Defendant must be

6    separately assessed.   The Court should adopt Defendants' formulation, "each Defendant" as

7    opposed to "Defendants," to ensure that jurors do not assess damages based on the sum of

8    Defendants' alleged conduct, but rather as to each Defendant individually.   Despite Harford's

9    repeated insistence to the contrary, even in the context of an indivisible injury (which Harford's

10   injuries are not), a plaintiff must prove that a Defendant's conduct caused its injury in order for the

11   defendant to be legally responsible for plaintiff's damages.   *See Carter v. Wallace & Gale Asbestos*

12   *Settlement Tr.*, 96 A.3d 147, 159 (2014).

13         *Second*, the Court should reject Harford's proposed language instructing jurors to "consider

14   what will reasonably and fairly compensate Harford for harms that Harford sustained" and "for any

15   harms [the jurors] determined Harford is reasonably certain to sustain," because it is duplicative of

16   the pattern instruction.   The agreed pattern instruction already provides that damages should

17   "adequately and fairly compensate Harford."   This duplication would create confusion rather than

18   clarity because Harford's added language introduces inconsistencies with the pattern instruction.

19   Namely, Harford's instruction states that damages should "reasonably and fairly compensate"

20   whereas the pattern instruction says, "adequately and fairly compensate."   Likewise, because

21   Harford's proposed addition separately addresses both past and future damages, a juror could

22   reasonably conclude, contrary to Maryland law, that future damages are not limited to adequate and

23   fair compensation.   Also, Defendants object to instructing the jury about future damages at all

24   because the only "future damages" that Harford seeks is funding for Dr. Hoover's strategic plan,

25   which is not proper future damages.   *See* Harford MSJ at 39–41; Om. Reply Part II.D.4; Harford

26   MSJ Reply at 20. Harford has not sought any other reasonably certain future expenses as future

27   damages, and, therefore, instructing the jury on future damages would be error.

28

1    *Third*, the Court should include Defendants' proposed instruction that damages must have

2    been "directly and proximately caused by each Defendant's Actionable Non-Protected Conduct" to

3    prevent jurors from misunderstanding the scope of compensatory damages and awarding damages

4    for protected conduct.

5    *Fourth*, the Court should include Defendants' proposed instruction that damages cannot be

6    awarded "for harms stemming from non-foreseeable third-party conduct because such conduct

7    cannot be attributable to Defendants." Harford alleges complicated and multi-faceted harms. This

8    instruction would focus jurors on the harms allegedly caused by Defendants' conduct rather than by

9    the myriad other challenges students face.

10    *Fifth*, the Court should instruct the jurors that they may only award damages for conduct that

11    occurred within the statute of limitations. As discussed below, Harford's negligence and public

12    nuisance claims are both subject to a statute of limitations. Absent such an instruction, a juror could

13    reasonably assume that the statute of limitations controls when a claim can be brought but not the

14    time frame for which damages may be awarded. Such assumptions conflict with Maryland law.

15    *Sixth*, the Court should give Defendants instruction distinguishing punitive and

16    compensatory damages to avoid confusion about the appropriate scope of compensatory damages.

17    As explained below, the record does not support a punitive damages instruction in this case because

18    Maryland law requires proof of actual malice by clear and convincing evidence to support an award

19    of punitive damages, which Harford does not have. *See Spengler v. Sears, Roebuck & Co.*, 878

20    A.2d 628, 644 (Md. Ct. Spec. App. 2005). Defendants' proposed language is, therefore, crucial to

21    ensure that jurors understand that compensatory damages are not a backdoor to punish Defendants.

22    *See Peterson v. Goodyear Tire & Rubber Co.*, 254 A.2d 198, 200 (1969) (instructing that

23    compensatory damages "are not to be of a punitive nature" and that "[t]hey are not intended to

24    punish the Defendant [or] . . . to reward the Plaintiff.")

25    None of the cases cited account for Harford's additions to the pattern instructions or justify

26    Harford's objection to Defendants' proposed instruction.

27

28

1    **I.    INSTRUCTION NO. 31: COMPENSATORY DAMAGES – NO DOUBLE**

2         **RECOVERY**

3    [*Plaintiff objects to the inclusion of this instruction. Defendants' proposal in* green text*; Harford's*

4    *proposal in* blue text*.*]

5                              **Instruction 31-P**

6         If you award Harford damages under either one or both of its claims, you should not double

the amount of damages simply because there are two claims in this case.

7                              **Instruction 31-D**

8         I have a cautionary instruction before I define the types of damages you may award if you

9    find that Harford has proved liability according to the standards I have explained.

10        You should not award compensatory damages more than once for the same injury.  For

11   example, if Harford were to prevail on both its negligence and public nuisance claims and establish

a one-dollar injury, you could not award it one dollar on each claim.  Harford is only entitled to be

12   made whole again, not to recover more than it lost.

13

14   **PLAINTIFF'S AUTHORITY:**

15   **DEFENDANTS' AUTHORITY:** *Exxon Mobil Corp. v. Albright*, 71 A.3d 30, 89 (Md. 2013)

("Plaintiffs are entitled to 'but one compensation,' and thus may not recover twice for the same

16   injury." (citation omitted)).

17

18

19

20

21

22

23

24

25

26

27

28

### 1. Plaintiff's Argument

**Double Recovery Instruction Not Warranted.** This instruction is unnecessary and likely to confuse the jury. Harford has submitted evidence that clearly enumerates its compensatory damages. Even if there were some risk of confusion about seeking compensatory damages from two legal theories, any such risk can be clarified based on the construction of the verdict form.

The only authority that Defendants cite—*Exxon Mobil Corp. v. Albright*, 71 A.3d 30, 85 (Md. 2013)—involved a jury award where the damages were awarded two forms of compensatory damages to real property: remediation of loss of enjoyment and diminution of value. A duplicative award was improper in that context, but there is no such risk here, where the jury will be permitted to award compensatory past damages under either the negligence or public nuisance claim, but it will not double damages for each claim in the verdict form.

If there were a need for an instruction on double recovery, Harford's proposed instruction is preferable because it is simpler, more straightforward, and less apt to confuse the jury, consistent with Maryland's approach to jury instructions. *See State v. Allen*, 875 A.2d 724, 728 (Md. 2005) ("The main purpose of jury instructions is to aid the jury in understanding the case, to guide the jury's deliberations, and to help the jury arrive at a correct verdict."); *see also Thomas v. State*, 992 A.2d 423, 429 (Md. 2010) (reversible error where instructions are "ambiguous, misleading, or confusing" (citation omitted)).

1

### 2.     Defendants' Argument

2          The Court should give Defendants' proposed instruction because it is consistent with

3    Maryland law and helpful to the jury.  Harford's negligence and public nuisance claims are

4    undisputedly premised on the same facts, and Harford does not seek to distinguish the damage they

5    claim was caused by Defendants' alleged negligence from that they allege was caused by

6    Defendants' alleged nuisance-causing conduct.  An instruction on double recovery is important to

7    prevent the jury from awarding improperly duplicative and overlapping recovery. Defendants'

8    instruction, as written, makes clear that Harford is only entitled to be made whole again, not to

9    recover more than it lost.

10         Harford's objection to the inclusion of a double recovery instruction is misplaced and

11   unsupported.  Under Maryland law, Harford may not recover for the same injury twice, once for

12   negligence and again for public nuisance.  *Exxon Mobil Corp. v. Albright*, 71 A.3d 30, 89 (Md.

13   2013) ("Plaintiffs are entitled to 'but one compensation,' and thus may not recover twice for the

14   same injury." (citation omitted)).  Harford provides no authority to the contrary.  Yet, not instructing

15   the jury on double recovery invites such an outcome.

16         The instruction Harford proposes in the alternative fares no better because it is unsupported

17   and misses the purpose of such a double recovery instruction.  Harford's proposed instruction warns

18   jurors that they should "not double the amount of damages simply because there are two claims in

19   this case."   But concern that jurors will simply double the damages does not motivate this

20   instruction.  Rather, a double recovery instruction is necessary to help jurors understand that Harford

21   cannot recover twice for the same injury, whether in the same amount or not.  Harford's proposed

22   instruction does not capture that concern and, therefore, does little to prevent the jury from issuing

23   a duplicative award.

24

25

26

27

28

## J.    INSTRUCTION NO. 32: COMPENSATORY DAMAGES – MEASURE

[*Plaintiff objects to the inclusion of this instruction.  Defendants' proposal in green text.*]

In determining damages, you shall consider the additional expenses to which Harford was subjected, if any, in responding to Harford students' mental health harms, as a direct result of each Defendant's Actionable Non-Protected Conduct.

**PLAINTIFF'S AUTHORITY:**

**DEFENDANTS' AUTHORITY:** MPJI-Cv 10:7 COMPENSATORY DAMAGES FOR TORT WITHOUT BODILY HARM (modified).

### 1.     Plaintiff's Argument

**Instruction Not Supported.** Defendants' proposed instruction is not supported by the pattern instruction they cite. The cited pattern instruction aims to assist the jury in calculating damages where there is no evidence of bodily injury by enumerating examples of emotional harms in the personal injury context—such as "mental pain and suffering, fright, nervousness, indignity, humiliation, embarrassment, and insult." MPJI-Cv 10:7, COMPENSATORY DAMAGES FOR TORT WITHOUT BODILY HARM. Defendants' proposal substitutes these examples of irrelevant damages with their own, case-specific formulation of the types of harms they believe the jury should consider in calculating damages, which not only departs from the purpose of the pattern, but is also an inaccurate statement of the harms recoverable in this case.

Defendants' proposal also attempts to narrow recoverable damages to "expenses" Harford incurred "in responding to students' mental health harms." Harford also seeks recovery of the resources it expended to mitigate the disruptive forces of Defendants' platforms, which is consistent with both Harford's allegations, ECF 729 ¶ 194, and this Court's description of Plaintiffs' damages in its prior order. *See* ECF 1267 at 21 ("The social media defendants are alleged to have deliberately fostered compulsive use in minor users, which would foreseeably cause the kind of damage mitigation expenditure incurred by the school districts.").

Additionally, Defendants' proposal improperly suggests that damages are limited to past damages, when Harford may recover reasonably certain future damages. *Johns Hopkins Hosp. v. Pepper*, 697 A.2d 1358, 1366 (Md. 1997) (recognizing—in a negligence case—the "general principle that 'recovery of damages based on future consequences of an injury may be had ... if such consequences are reasonably probable or reasonably certain' to occur" (quoting *Cooper v. Hartman*, 533 A.2d 1294, 1299 (Md. 1987))).

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence]; [Section 230].

1

2.      **Defendants' Argument**

2       The Court should give Defendants' proposed instruction on the measure of compensatory

3    damage consistent with the Maryland pattern instructions to help jurors understand the scope of

4    permissible damages.

5       *First*, the Court should instruct the jury on the measure of compensatory damages to ensure

6    that jurors understand that Harford may not recover derivative damages for harm to its students.

7    Harford does not dispute that it seeks damages only for costs it incurred due to the alleged impacts

8    of Defendants' platforms on student mental health, not derivatively for the alleged harm to students,

9    *see* Om. Opp. at 217–18, and the parties agree that a derivative claim would be improper, *see id.*

10   Given that the Parties agree on the principle underlying this instruction and that Harford provides

11   neither authority nor an alternative instruction to the contrary, jurors could only benefit from a single

12   sentence clarifying the potential damages at issue.

13      *Second*, this is precisely the type of case in which an instruction on the measure of

14   compensatory damages is appropriate.    Defendants' instruction is adapted from the pattern

15   instruction for "compensatory damages for tort without bodily harm."    *See* MPJI-Cv 10:7

16   COMPENSATORY DAMAGES FOR TORT WITHOUT BODILY HARM.  This is such a tort.

17      Harford suggests that Defendants' proposal substitutes examples in the pattern with

18   Defendants' own, case-specific formulation of Harford's injury.  But Harford overlooks the fact that

19   the pattern instruction specifically contemplates "expenses" as a form of damages for a tort without

20   bodily harm, a word that Harford omits from its quote of the pattern instruction, which reads: "In

21   determining damages you shall consider any **expenses**, mental pain and suffering, fright,

22   nervousness, indignity, humiliation, embarrassment, and insult to which the plaintiff was subjected

23   as a direct result of the defendant's conduct."  MPJI-Cv 10:7 (emphasis added).  This Court's

24   standing order states that "Model Instructions shall be revised to address the particular facts and

25   issues of this case."  Standing Order at p. 5, § 3(g)(ii)(D).  Harford has not proposed alternative

26   language to cover the issues it now raises in briefing, such as its arguments that Defendants' framing

27   is overly narrow or that the instruction suggests damages are limited to past damages.

28

### K.     INSTRUCTION NO. 33: COMPENSATORY DAMAGES – MITIGATION OF DAMAGES

[*Plaintiff objects to the inclusion of this instruction.  Defendants' proposal in green text; Harford's proposal in blue text.*]

Harford has a duty to use reasonable efforts to reduce damages but is not required to accept the risk of additional loss or injury harm in these efforts. Harford is not entitled to recover damages for a loss that it could have avoided by a reasonable effort without risk of additional loss or injury.

**PLAINTIFF'S AUTHORITY:** MPJI-Cv 10:6 (MINIMIZING (MITIGATING) DAMAGES); *M& R Contractors & Builders, Inc. v. Michael*, 138 A.2d 350 (Md. 1958*); Schlossberg v. Epstein*, 534 A.2d 1003 (Md. 1998), *appeal after remand*, 570 A.2d 328, *cert. denied*, 577 A.2d 50 (Md. 1990).

**DEFENDANTS' AUTHORITY:** MPJI-Cv 10:6 MINIMIZING (MITIGATING) DAMAGES (modified); *M & R Contractors & Builders, Inc. v. Michael*, 138 A.2d 350, 358 (1958) ("With respect to minimization of damages, the ordinary rule is that damages are not recoverable if the consequences of a breach are avoidable.  In other words, a plaintiff is not entitled to a judgment for damages for a loss that he could have avoided by a reasonable effort without risk of additional loss or injury.").

1

### 1.    Plaintiff's Argument

**Mitigation Inapplicable to Nuisance Cases.** Maryland law recognizes that there is not a duty to mitigate damages in cases of nuisance, and the pattern instructions explicitly state that giving "[a]n instruction that plaintiff may not recover for any damages that could have been avoided by the exercise of ordinary care is erroneous." MPJI-Cv 20:5 (DAMAGES).

**Mitigation Instruction Not Warranted.** Even if it were not error to instruct the jury on mitigation in nuisance cases, Defendants have not shown they are entitled to such an instruction because they have not supplied any evidence suggesting that Harford violated the duty. Under Maryland law, a defendant is entitled to a duty to mitigate damages only where "the evidence . . . warrant[s] such an instruction." *Hopkins v. Silber*, 785 A.2d 806, 816 (Md. 2001); *see also Wartzman v. Hightower Prods., Ltd*., 456 A.2d 82, 88-89 (Md. 1983) (affirming trial court's refusal to give a mitigation instruction where there was no evidence of a failure to mitigate). The burden of producing such evidence "is upon the defendant," who must show that "'a loss could have been avoided by the exercise of reasonable effort on part of the plaintiff.'" *Id.* (quoting *Schlossberg v. Epstein*, 534 A.2d 1003, 1007 (Md. 1988)). Defendants have not carried their burden, so the instruction is unwarranted.

1

### 2.    Defendants' Argument

2      The duty to mitigate damages is well-settled under Maryland law.  None of Harford's cited

3   authorities support declining to give a mitigation instruction.  Harford is incorrect that there exists

4   no duty to mitigate damages in cases of nuisance.  In support of this claim, Harford cites to a

5   *comment* in the pattern instructions that states "[a]n instruction that plaintiff may not recover for

6   any damages that could have been avoided by the exercise of ordinary care is erroneous." MPJI-Cv

7   20:5 cmt. A.4 (citing *Carroll Springs Distilling Co. of Baltimore City v. Schnepfe*, 74 A. 828, 831

8   (Md. 1909).   *Carroll Springs* found that a particular instruction at issue was erroneous, but

9   nevertheless noted that "[t]here was evidence in the case upon which a proper instruction upon this

10  point might have been based" and further elaborated as follows:

11        Assuming that the tort had been committed, the plaintiff was under an obligation to do
12        what it could, by reasonable exertion and expense, to save himself from the
          consequences of the wrong, and *all damages which resulted from a failure to discharge*
13        *that duty must be borne by him*, subject, however, to this limitation, that such damages
          cannot be used to defeat the right of the plaintiff to maintain his action and recover
14        against the wrongdoer.

15  74 A. 828, 831 (emphasis added).

16      When it instructs on mitigation, the Court should reject Harford's proposed deviation from

17  the pattern instruction.  Harford has changed the word "injury," which is used in the Maryland

18  Pattern Jury Instructions, to "harm."  This (and all other instructions) should use "injury."  Harford

19  does not present any authority that supports deviating from the model instruction.

20      By contrast, Defendants' modification to the pattern is well supported.  Defendants propose

21  adding the sentence: "Harford is not entitled to recover damages for a loss that it could have avoided

22  by a reasonable effort without risk of additional loss or injury."  That addition is clarifying; it tells

23  the jury why the "duty to use reasonable efforts to reduce damages" mentioned in the pattern

24  matters.  MPJI-Cv 10:6.  And it accurately reflects Maryland law, quoting nearly verbatim a case

25  both parties cite as a source of their proposed instructions: *M& R Contractors & Builders, Inc. v.*

26  *Michael*, 138 A.2d 350 (Md. 1958).  *M & R* states: "[A] plaintiff is not entitled to a judgment for

27  damages for a loss that he could have avoided by a reasonable effort without risk of additional loss

28  or injury." *Id.* at 358.

1       Finally, Defendants dispute that they do not have evidence that Harford failed to use

2 reasonable efforts to reduce its damages.  That will be a contested issue at trial.

1

## L.    INSTRUCTION NO. 34: UNUSUALLY SUSCEPTIBLE PLAINTIFF

2

3

[*Defendants object to this instruction but have proposed the language below if the instruction is ordered over their objection.  Defendants' proposal in green text; Harford's proposal in blue text.*]

4

5

     The effect that an injury harm might have upon a particular person depends upon the susceptibility to injury harm of the plaintiff. In other words, the fact that the injury harm would have been less serious if inflicted upon another person should not affect the amount of damages to which the plaintiff may be entitled.

6

7

**PLAINTIFF'S AUTHORITY:** MPJI-Cv 10:3 (SUSCEPTIBILITY TO INJURY).

8

**DEFENDANTS' AUTHORITY: N/A**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 1.    Plaintiff's Argument

**Ordering.** This instruction should follow the Heeding Presumption instruction and precede Defendants' affirmative defenses instructions if given. Otherwise, it should follow the Compensatory Damages instructions.

**Unusually Susceptible Plaintiff Instruction is Warranted.** Defendants object to the inclusion of this instruction without providing any proposed edits or authority for doing so. This objection is particularly unsubstantiated where the instruction is taken verbatim from the Maryland's pattern jury instructions. *See* MPJI-Cv 10:3, SUSCEPTIBILITY TO INJURY. As shown in the cases cited in the Maryland Pattern Jury Instructions, this instruction is premised upon similar instructions affirmed by the Maryland Court of Appeals. For example, in *Peterson v. Goodyear Tire & Rubber Co.*, the "Court instruct[ed] the jury that the fact that the plaintiff . . . may have had a pre-existing condition which made him peculiarly susceptible to the injury complained of in this action would not excuse the defendants from the consequences of their wrongs if the jury finds that to be the case." 254 A.2d 198, 200 (Md. 1969). Plaintiff's proposed verbatim recital of the appropriate Maryland Patter A.2d n Jury Instruction should be given.

Moreover, Maryland courts have long held that "a wrong-doer is not permitted to relieve himself from responsibility for the consequences of his act, by showing that the injury would have been of less severity if it had been inflicted upon anyone else of a large majority of the human [population]." *Coca Cola Bottling Works v. Catron,* 46 A.2d 303, 305 (Md. 1946). Harford is a school district populated by students who are, for social and physiological reasons, especially vulnerable to the harms of social media. This makes Harford and school districts in generally particularly susceptible to injury as a result of Defendants platforms.

1

### 2.    Defendants' Argument

2        The "uniquely susceptible" or "eggshell" plaintiff doctrine has no application to this case.

3    Defendants are not aware of (and, tellingly, Harford has not cited) any case applying the eggshell

4    plaintiff doctrine outside of the personal injury context.  *E.g.*, *Williams v. Dimensions Health Corp.*,

5    2023 WL 5523951, at *11 (Md. App. Ct. Aug. 28, 2023) (applying the rule to a plaintiff's pre-

6    existing physical "frailties . . . namely, body pain, an amputated left leg, and a limited function left

7    arm." (citation omitted)); *Carter v. Wallace & Gale Asbestos Settlement Tr.*, 96 A.3d 147, 161 n.11

8    (Md. 2014) (applying the doctrine to a "longtime cigarette smoker" who sued alleging cancer as a

9    result of asbestos exposure); *Coca Cola Bottling Works, Inc. v. Catron*, 46 A.2d 303, 305 (Md.

10    1946) (susceptibility to nausea and injury from vomiting) ("[T]he effects of *personal physical*

11    *injuries* depend much upon the peculiar conditions and tendencies of the persons injured . . . ."

12    (emphasis added) (citation omitted)).  Harford is not claiming a personal injury—nor could it given

13    Harford is an entity, not a person.

14        Because this is not a personal injury case, the Court should not instruct the jury on the

15    "uniquely susceptible" or "eggshell" plaintiff doctrine.

16        Even if the doctrine could apply to this case as a matter of law (it cannot), there is no record

17    support for its application.  "[T]he general rule [is] that a plaintiff has the burden of showing an

18    aggravation of a preexisting condition."  *Mayer v. N. Arundel Hosp. Ass'n*, 802 A.2d 483, 492 (Md.

19    Ct. Spec. App. 2002).  Harford's experts did not opine that the Harford County Public Schools were

20    any more susceptible to the alleged effects of Defendants' platforms than any other school district,

21    or that Harford's harms were more serious than they would have been had they been "inflicted upon

22    another" school district.  *See* CMC (Sep. 19, 2025) Tr. 15:4-6 ([Plaintiffs' counsel] "I'm not

23    recalling . . . an expert looking at that demographic category and saying that it impacts damages.").

24    Indeed, Dr. Hoover's "strategic plan" for how to address alleged student mental health harms is the

25    exact same in all six districts, except for accounting for size of the district and is not tailored to any

26    specific "uniquely susceptible" characteristics of Harford.  And there is no fact evidence that

27    Harford was more susceptible to being harmed by Defendants' platforms than any other school

28    district.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

   If the Court decides to instruct on the "uniquely susceptible" or "eggshell" plaintiff doctrine over Defendants' objection, it should reject Harford's proposed deviations from the pattern.  Harford has changed the word "injury," which is used in the Maryland Pattern Jury Instructions, to "harm."  This (and all other instructions) should use "injury."  Harford does not present any authority that supports deviating from the model instruction.  Further, if given, this instruction should be given with the other Compensatory Damages instructions because it is an instruction about "the amount of damages to which the plaintiff may be entitled."

PARTIES' JOINT PROPOSED JURY INSTRUCTIONS (BOARD OF EDUCATION OF HARFORD COUNTY)
4:22-md-03047-YGR

1

2

### M.     INSTRUCTION NO. 35: COMPENSATORY DAMAGES – APPORTIONMENT

3

[*Plaintiff objects to the inclusion of this instruction.  Defendants' proposal in green text.*]

4

5

6

7

8

9

If you have found that Harford has proved liability and damages for either its negligence claim or its public nuisance claim against one or more of the Defendants, you must then apportion the fault among all culpable parties.  You should not proceed to apportion fault if you have found any contributory negligence on the part of Harford or if you have found that Harford assumed the risk of injury.  In either of those cases, Harford's negligence and nuisance claims are barred and Harford is not entitled to damages.

10

11

12

13

14

Weighing all the facts and circumstances, you must consider the total fault for causing Harford's injury and then determine what percentage of fault is chargeable to each culpable party. You should not apportion any fault to any Defendant for whom you did not find that Harford proved liability and damages for either its negligence or nuisance claim by a preponderance of the evidence. When you complete the verdict sheets in this case, the entire fault of all actors must add up to 100%.

15

16

17

18

19

In apportioning fault to each responsible Defendant, you must consider only whether that Defendant exercised ordinary prudence with respect to its specific Non-Protected Conduct at issue. You may not make your determination based on the Defendant's platform(s) as a whole, and you may not make your determination based on consideration of any Protected Conduct, even if you find it negligent.

20

21

22

23

24

25

26

27

28

In making this apportionment decision, you may consider such factors as the period of time this case covers and the role of the Non-Protected Conduct of Defendants Meta, Snap, TikTok, and YouTube, the conduct of the Harford School District, and the conduct of other actors over that span of time.  You may consider the relative roles of each Defendant.  You may also consider the relative roles of other actors, including but not limited to Harford, individuals who posted content on Defendants' platforms, and non-defendant technology companies.  Finally, although your answers are quantified as percentages, you may consider the quality or seriousness of the conduct of the Non-Protected Conduct of Defendants Meta, Snap, TikTok, and YouTube and the conduct of other actors.  These are only suggestions for the types of factors you may consider, and I do not mean to

111

suggest that all these factors are equally important.  You must decide this issue as a matter of fact based on all the evidence presented.

Considering the injury to Harford as a whole, what portion of the injury do you find was caused by each actor or group of actors on the verdict form?

**PLAINTIFF'S AUTHORITY:** *Franklin v. Morrison*, 711 A.2d 177, 189 (Md. Ct. App. 1998).

**DEFENDANTS' AUTHORITY:** *Mayor & City Council of Baltimore v. Purdue Pharma, L.P.*, 2025 WL 1707625, at *9-10 (Md. Cir. Ct. June 12, 2025); *Carter v. Wallace & Gale Asbestos Settlement Tr.*, 96 A.3d 147, 156 (Md. 2014); *Mayer v. N. Arundel Hosp. Ass'n*, 802 A.2d 483, 491–92 (Md. Ct. Spec. App. 2002), *cert. denied*, 806 A.2d 680 (Md. 2002).

1          **1.    Plaintiff's Argument**

2          **Maryland's contributory negligence scheme does not recognize apportionment absent**

3    **evidence that the injury is "reasonably or theoretically" divisible.** Under Maryland's

4    contributory negligence scheme, the concept of apportionment only arises where the injury is

5    reasonably divisible. As the Maryland pattern instructions state, "for there to be an apportionment

6    of damages among negligent parties, the injury in question must be reasonably divisible among

7    multiple causes." MPJI-Cv 12:10 (DEFINITION); *see also Mayer v. N. Arundel Hosp. Ass'n, Inc.,*

8    145 Md. App. 235, 254–55 (Md. Ct. Sp. App 2002) (citing the Restatement (Second) of Torts §433B

9    (1965)). Defendants' proposed instruction is not consistent with Maryland law and would confuse

10   the jury as to the state of the law.

11         **Defendants have the burden of showing divisibility of injury and apportionment of**

12   **fault.** Even if there are admissible facts showing that the injury is reasonably divisible, it is

13   Defendants' burden to show that the injury is "reasonably or theoretically" divisible, not Plaintiffs.

14   *Carter v. Wallace & Gale Asbestos Settlement Tr.*, 439 Md. 333, 354–55, 96 A.3d 147, 159–60

15   (2014); *see also supra* [Public Nuisance], [Causation]. The Maryland pattern jury instructions agree:

16

17         The burden on the plaintiff to show that the defendants' tortious conduct caused the
           harm is shifted to the defendants in two situations: (a) Where the tortious conduct of
18         two or more actors combined to cause harm and one or more actors contends that the
           harm is capable of division, the burden of proof is on each actor to show divisibility
19         and apportionment; and (b) Where the conduct of two or more actors was tortious, but
           the harm was caused by only one of them, the burden is on each actor to prove that he
20         or she did not cause the harm.

21

22   MPJI-Cv 1:16 (BURDEN OF PROOF—PREPONDERANCE OF EVIDENCE STANDARD). In

23   other words, Defendants bear the burden of proof and persuasion on both divisibility and

24   apportionment. Yet Defendant's proposed instruction states the exact opposite: it places the

25   evidentiary burden on the Plaintiffs to apportion fault if in fact the injury is divisible.

26         Defendants have not raised the issue of whether the injury is reasonably divisible among

27   Defendants. In fact, Defendants argue the opposite in their motion for summary judgment. SD MSJ

28   No. 6, ECF No. 2296 at 35 (Sept. 30, 2025) ("Harford has therefore put forth no competent evidence

113

1    to allow a factfinder to apportion costs appropriately or to calculate damages with reasonable

2    certainty."). An instruction on apportionment should not be given where Defendants have

3    disclaimed the existence of evidence that could be used to apportion.

4          **Defendants' authority does not support its instruction.** Defendants' cited authority

5    supports that it is their burden, not Plaintiffs', to apportion liability. After the court in *Purdue*

6    determined that apportionment was appropriate, it also held that "the Defendants had the burden of

7    proof on issues of apportionment." *Mayor & City Council of Baltimore v. Purdue Pharma, L.P.*,

8    No. 24-C-18-000515, 2025 WL 1707625, at *4 (Md. Cir. Ct. June 12, 2025).

9          Defendants' instruction also deviates significantly from the example provided in that case:

10

11    If you have found one or both of the defendants liable, consider the entire fault for
       creating the public nuisance. That entire fault of all actors totals 100%. You will divide
12     fault among any category for which you have not already placed 0% based on answers
       to earlier questions. For example, if you find that fault is shared by both defendants and
13     by at least one other actor, then you will divide or apportion fault three ways. The three
       percentages you assign must total 100%.
14

15    *Mayor & City Council of Baltimore v. Purdue Pharma, L.P.*, No. 24-C-18-000515, 2025 WL

16    1707625, at *9 (Md. Cir. Ct. June 12, 2025). Defendants have no authority to support their

17    instruction.

18          **Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra*

19    [Negligence]; [Section 230].

20

21

22

23

24

25

26

27

28

## 2.    Defendants' Argument

This Court should adopt Defendants' proposed instruction, which is based on a Maryland court's instructions on apportionment in a recent case.  *See Mayor & City Council of Baltimore v. Purdue Pharma, L.P.*, 2025 WL 1707625, at *9-10 (Md. Cir. Ct. June 12, 2025).[11]

Under Maryland law, apportionment of damages is appropriate in cases "where the injury is reasonably divisible and where there are two or more causes of the injury."  *Carter v. Wallace & Gale Asbestos Settlement Tr.*, 96 A.3d 147, 156 (Md. 2014).   These causes may include the "combination of acts" of two or more parties.  *See Mayer v. N. Arundel Hosp. Ass'n*, 802 A.2d 483, 491–92 (Md. Ct. Spec. App. 2002).  Damages for harm "are to be apportioned" where "(a) there are distinct harms or (b) there is a reasonable basis for determining the contribution of each cause to a single harm."  *Carter*, 96 A.3d at 158 (quoting Restatement (Second) of Torts §433A).  "The question of whether a harm is capable of apportionment between two or more causes is for the court if it can be decided as a matter of law." *Mayer*, 802 A.2d at 493; *see also Mayor & City Council of Baltimore*, 2025 WL 1707625, at *31 ("Here, the injury alleged – a public nuisance spanning more than twenty years – is so clearly divisible that the Court decided the issue before trial.").

Apportionment of damages is appropriate here, as Harford's alleged damages are reasonably divisible.  *See Mayor & City Council of Baltimore*, 2025 WL 1707625, at *4 ("[T]he public nuisance injury claimed by the City is divisible, meaning that any liability or damages proved by the City could be apportioned both among any liable Defendants and to other actors."); *id.* at *31 (outlining the reasons that "[d]ivisibility of harm is present . . . in at least four different dimensions").  As in *Mayor & City Council of Baltimore*, Harford's claimed damages span across a number of years. 2025 WL 1707625, at *31.  "It is plain that conduct and causative factors change over such a long span of time."  *Id.*  Moreover, just as prescription opioid misuse "occurs in different ways with opioids from differing sources," so too here, the alleged overuse of "social media" by Harford students occurs in different ways on distinct platforms.  *See id.*  Further, while "[t]here may be some commonality among those many [students], . . . there certainly also is extensive variability."  *See id.*  Unlike indivisible injuries, such as death, Harford's alleged injury—diverted staff time and

---

[11] We understand that this case has recently been appealed.

1    expenditures associated with its filtering software—is capable of reasonable division. *Cf. Carter*,

2    96 A.3d at 161 ("Our intermediate appellate court, courts in other states, and leading commentators

3    Prosser & Keeton conclude, as we do, that death is an indivisible injury incapable of

4    apportionment.").

5        In opposing this instruction, Harford points to a sentence in Defendants' motion for

6    summary judgment at the end of a section regarding out-of-pocket costs, asserting that Defendants

7    admit that the injury cannot be apportioned among Defendants. That is incorrect. Harford claims

8    that it can apportion 20% of the costs it paid for network-filtering products to Defendants' actionable

9    conduct. Defendants argued that Harford has put forward no competent evidence that Defendants'

10   actionable conduct was the cause of 20% (or any) of the costs Harford allegedly paid for those

11   products. That is a failure of Harford's causation proof and has nothing to do with whether

12   Harford's injuries are indivisible or whether fault for its injuries can be apportioned among

13   Defendants.

14       For these reasons, the Court should instruct the jury on apportionment of damages.

15       Throughout the parties' exchanges between October 27, 2025 and January 12, 2026, Harford

16   provided no edits to Defendants' proposed language for this instruction, which should, therefore, be

17   given as written. In opposing this instruction in its entirety, Harford cited a single case from 1998,

18   largely about indemnification. That case does not support Harford's position, given that more recent

19   case law outlined above both explains when apportionment of damages is appropriate and

20   demonstrates that apportionment instructions have been given in another complex public nuisance

21   case. And Harford has not explained why or how its alleged injuries are not divisible.

22

23

24

25

26

27

28

PARTIES' JOINT PROPOSED JURY INSTRUCTIONS (BOARD OF EDUCATION OF HARFORD COUNTY)
4:22-md-03047-YGR

1

## N.     INSTRUCTION NO. 36: PUNITIVE DAMAGES

2

3

[*Defendants object to this instruction but have proposed the language below if the instruction is ordered over their objection.  Defendants' proposal in* green text*; Harford's proposal in* blue text.]

4

        If you find for Harford and award damages to compensate for the injuries or losses suffered, you may go on to consider whether to make an award for punitive damages.

5

6

        To award punitive damages against a Defendant, you must find by clear and convincing evidence that that Defendant acted with malice in its Actionable Non-Protected Conduct. This burden of proof requires more than a preponderance of the evidence, but less than proof beyond a reasonable doubt. To be clear and convincing, evidence should be certain, plain to understand, and unambiguous in the sense that the evidence is so reasonable and persuasive as to cause you to believe it. Malice is conduct motivated by evil motive, intent to injure, ill will, or fraud.

7

8

9

        The purpose of punitive damages is not to compensate the plaintiff, but to punish the defendant and to deter others from this type of conduct in the future.

10

11

        (If the jury awards compensatory damages and decides also to award punitive damages, the following instruction should be given):

12

13

        An award for punitive damages should be:

14

        (1) In an amount that will deter the defendant and others from similar conduct.

15

        (2) Proportionate to the wrongfulness of the defendant's conduct and the defendant's ability to pay.

16

17

        (3) Not designed to financially destroy a defendant.

18

        You may impose punitive damages against all the Defendants, one or more of the defendants and not others, or none of the Defendants. You may award different amounts against different defendants or the same amount against all Defendants.

19

20

21

**PLAINTIFF'S AUTHORITY:** MPJI-Cv 10:14 (PUNITIVE DAMAGES – GENERALLY).

22

**DEFENDANTS' AUTHORITY:** MPJI-Cv 10:14 (PUNITIVE DAMAGES – GENERALLY) (modified); *Spengler v. Sears, Roebuck & Co.*, 163 Md. App. 220, 246–47 (2005); First SD Order at 2, 12–14; PI Order at 14 (explaining that only a subset of Defendants' alleged conduct is actionable).

23

24

25

26

27

28

117

1

### 1.     Plaintiff's Argument

**Punitive Damages Instruction is Warranted.** Defendants object to the inclusion of this instruction without providing any authority for doing so. Defendants alternatively add language to the instruction about how the jury might impose punitive damages in a case against multiple Defendants. There is no basis for Defendants' proposed additional text, particularly where (as addressed *infra*) Defendants have not provided any evidence to support divisibility of harm. This instruction is taken verbatim from the Maryland Bar's pattern jury instructions and Defendants have not given any reason to deviate from the instruction. *See* MPJI-Cv 10:14, PUNITIVE DAMAGES—GENERALLY.

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence]; [Section 230].

## 2.     Defendants' Argument

The record does not support a punitive damages instruction in this case.  Maryland law requires proof of actual malice by clear and convincing evidence to support an award of punitive damages.  *See Spengler v. Sears, Roebuck & Co.*, 878 A.2d 628, 644 (Md. Spec. Ct. App. 2005).  Under Maryland law, the trial court serves as a gatekeeper and must apply the clear and convincing evidence standard when determining whether the evidence is legally sufficient to submit the punitive damages question to the jury.  *See id.* at 247.  None of the evidence Harford marshalled in support of summary judgment shows proof of actual malice (or even negligence or public nuisance), so it is clear at this stage that Harford has no such evidence.  Because Harford cannot make the required showing, this issue should not reach the jury.

If this Court is inclined to instruct on punitive damages over Defendants' objection, it should give Defendants' proposed instruction.  *First*, Defendants' proposal accounts for the fact that, given the Court's rulings about Section 230 and the First Amendment, only a subset of Defendants' conduct is actionable.  *See* First SD Order at 2, 12–14; PI Order at 14.  Harford's proposal—which refers broadly to a finding that "Defendant acted with malice"—invites a verdict based on conduct this Court has ruled cannot form the basis of Harford's claims.  That would be error.  To ensure the verdict is grounded in actionable conduct, this Court should include the definitional "Actionable Non-Protected Conduct" language Defendants propose.

*Second*, Harford's proposed instruction deletes the notation to the Court that the latter half of the instruction should only be given "if the jury awards compensatory damages and decides also to award punitive damages."  That language should be included because it is taken directly from the pattern instruction, *see* MPJI-Cv 10:14, and accurately reflects Maryland law, *see id.* cmt. A.8 ("As a general proposition, punitive damages may not be awarded without an accompanying award of compensatory damages. . . ." (collecting cases)).

Finally, it is unclear why Harford raises the question of indivisible injury in the context of punitive damages, which are not meant to compensate Harford for its alleged injury.   In any event, Defendants do not understand to which proposed language Harford refers, as Harford agreed to the language in this instruction (other than the text in green) in its final exchange.

1

## O.     INSTRUCTION NO. 37: BURDEN OF PROOF – CLEAR AND CONVINCING

2

## EVIDENCE

3

4    *[The Parties agree that this instruction is only appropriate if the jury is instructed on Punitive*

5    *Damages.  Defendants object to instructing the jury on Punitive Damages and, therefore, object to*

     *this instruction.  However, if a Punitive Damages instruction is given over Defendants objection,*

6    *the Parties agree to the below language.]*

7

8            When a party has the burden of proving any claim or defense by clear and convincing

9    evidence, it means that the party must present evidence that leaves you with a firm belief or

     conviction that it is highly probable that the factual contentions of the claim or defense are true.

10   This is a higher standard of proof than proof by a preponderance of the evidence, but it does not

     require proof beyond a reasonable doubt.

11

12   AUTHORITY:          Ninth Cir. Model Instructions, Instruction 1.7.

13

14   DATE SUBMITTED:  January 28, 2026

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# STOP
# (CLOSING ARGUMENTS)

PARTIES' JOINT PROPOSED JURY INSTRUCTIONS (BOARD OF EDUCATION OF HARFORD COUNTY)
4:22-md-03047-YGR

# V.    POST CLOSING INSTRUCTIONS

## A.    INSTRUCTION NO. 38: DUTY TO DELIBERATE

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

AUTHORITY:        Ninth Cir. Model Instructions, Instruction No. 3.1.

DATE SUBMITTED: January 28, 2026

## B.    INSTRUCTION NO. 39: CONSIDERATION OF EVIDENCE

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media.

This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the court immediately.


AUTHORITY:          Ninth Cir. Model Instructions, Instruction No. 3.2.


DATE SUBMITTED: January 28, 2026

123

1

## C.     INSTRUCTION NO. 40: COMMUNICATIONS WITH COURT

2

3     If it becomes necessary during your deliberations to communicate with me, you may send
4   a note through the Courtroom Deputy, signed by any one or more of you. No member of the jury
should ever attempt to communicate with me except by a signed writing. I will not communicate
5   with any member of the jury on anything concerning the case except in writing or here in open
court. If you send out a question, I will consult with the lawyers before answering it, which may
6   take some time. You may continue your deliberations while waiting for the answer to any
question. Remember that you are not to tell anyone—including the court—how the jury stands,
7   whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or
have been discharged.

8

9

AUTHORITY:          Ninth Cir. Model Instructions, Instruction No. 3.3.

10

11

DATE SUBMITTED:  January 28, 2026

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PARTIES' JOINT PROPOSED JURY INSTRUCTIONS (BOARD OF EDUCATION OF HARFORD COUNTY)
4:22-md-03047-YGR

1

2

### D.    INSTRUCTION NO. 41: RETURN OF VERDICT

3

4          A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the Courtroom Deputy that you are ready to return to the courtroom.

5

6

7    AUTHORITY:          Ninth Cir. Model Instructions, Instruction No. 3.5.

8

9

10   DATE SUBMITTED:  January 28, 2026

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: January 28, 2026

**WILLIAMS & CONNOLLY LLP**

/s/ Ashley W. Hardin
JOSEPH G. PETROSINELLI, pro hac vice
jpetrosinelli@wc.com
ASHLEY W. HARDIN, pro hac vice
ahardin@wc.com
J. ANDREW KEYES, pro hac vice
akeyes@wc.com
NEELUM J. WADHWANI (SBN 247948)
nwadhwani@wc.com
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Tel.: (202) 434-5000

*Attorneys For Defendants Youtube, LLC And Google LLC*

**COVINGTON & BURLING LLP**

/s/ Christian J. Pistilli
ASHLEY M. SIMONSEN (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

PHYLLIS A. JONES (*pro hac vice*)
PAUL W. SCHMIDT (*pro hac vice*)
CHRISTIAN J. PISTILLI (*pro hac vice*)
Covington & Burling LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
Email: pajones@cov.com
Email: pschmidt@cov.com
Email: cpistilli@cov.com

*Attorneys For Defendants Meta Platforms, Inc. F/K/A Facebook, Inc.; Instagram, LLC.*

**KING & SPALDING LLP**

1

2      */s/ Bailey J. Langner*
       GEOFFREY M. DRAKE, *pro hac vice*
3      gdrake@kslaw.com
       TACARA D. HARRIS, *pro hac vice*
4      tharris@kslaw.com
       KING & SPALDING LLP
5      1180 Peachtree Street, NE, Suite 1600
       Atlanta, GA 30309
6      Telephone: (404) 572-4600
       Facsimile: (404) 572-5100
7

8      DAVID P. MATTERN, *pro hac vice*
       dmattern@kslaw.com
9      King & Spalding LLP
       1700 Pennsylvania Avenue, NW
10     Suite 900
       Washington, D.C. 20006
11     Telephone: (202) 737-0500
       Facsimile: (202) 626-3737
12

13     BAILEY J. LANGNER (SBN 307753)
       blangner@kslaw.com
14     King & Spalding LLP
       50 California Street, Suite 3300
15     San Francisco, CA 94111
       Telephone: (415) 318-1200
16     Facsimile: (415) 318-1300
17

18     *Attorneys For Defendants Tiktok Inc., Bytedance Inc.,*
       *Bytedance Ltd., Tiktok Ltd., and Tiktok, LLC*
19

20     **KIRKLAND & ELLIS LLP**

21     ALLISON BROWN, *pro hac vice*
       alli.brown@kirkland.com
22     KIRKLAND & ELLIS LLP
       2005 Market Street, Suite 1000
23     Philadelphia, PA 19103
       Tel.: (215) 268-5000
24

25     JESSICA DAVIDSON, *pro hac vice*
       jessica.davidson@kirkland.com
26     JOHN J. NOLAN, *pro hac vice*
       jack.nolan@kirkland.com
27     ANDREW KARP, *pro hac vice*
       andrew.karp@kirkland.com
28     KIRKLAND & ELLIS LLP
       601 Lexington Avenue

New York, NY 10022
Tel.: (212) 446-4800

**MUNGER, TOLLES & OLSON LLP**

/s/ *Victoria A. Degtyareva*
JONATHAN H. BLAVIN (State Bar No. 230269)
Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel: (415) 512-4000

VICTORIA A. DEGTYAREVA (State Bar No. 284199)
Victoria.Degtyareva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel.: (213) 683-9100
Facsimile: (213) 687-3702

*Attorneys for Defendant Snap Inc.*

By: /s/ *Lexi J. Hazam*
LEXI J. HAZAM
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com
*Counsel for Plaintiffs and Co-Lead Counsel*

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com
*Co-Lead Counsel*

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com
*Co-chair School District Committee*
*Plaintiffs' Steering Committee Leadership*

MELISSA YEATES
**KESSLER TOPAZ MELTZER**
**& CHECK LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com
*Co-chair School District Committee*
*Plaintiffs' Steering Committee Leadership*

ANDRE M. MURA
**GIBBS MURA LLP**
1111 Broadway, Suite 2100
Oakland, CA 94612
Telephone: 510-350-9717
amm@classlawgroup.com
*Plaintiffs' Steering Committee Leadership*

1

## <u>ATTESTATION PURSUANT TO LOCAL RULE 5-1</u>

2

I, Ashley W. Hardin, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence
to the filing of this document has been obtained from each signatory hereto.

3

4

DATED:   January 28, 2026                    By:     <u>*/s/ Ashley W. Hardin*</u>

5                                                              Ashley W. Hardin

6                                                              *Attorney for Defendants YouTube, LLC and*
                                                              *Google, LLC*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28