Jonathan H. Blavin (State Bar No. 230269)
Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-2907
Telephone:    (415) 512-4000
Facsimile:    (415) 512-4077

Victoria A. Degtyareva (State Bar No. 284199)
Victoria.Degtyareva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Telephone:    (213) 683-9100
Facsimile:    (213) 687-3702

*Attorneys for Defendant Snap Inc.*

*[Additional parties and counsel listed on signature pages]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047<br><br>Case No. 4:25-CV-02310-YGR<br><br>**JOINT SET OF PROPOSED JURY INSTRUCTIONS (TUCSON UNIFIED SCHOOL DISTRICT)** |
| This Document Relates to:<br><br>*Tucson Unified School District v. Meta Platforms, Inc. et al.* | Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang<br><br>Pretrial Conference:    TBD<br>Trial Date:    TBD |

Plaintiff Tucson Unified School District and Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Instagram, LLC; (collectively, "Meta"); Snap, Inc. ("Snap"); ByteDance Ltd.; ByteDance Inc.; TikTok Ltd.; TikTok LLC; and TikTok Inc. (collectively, "TikTok"); and Google LLC and YouTube LLC (collectively, "YouTube"), by and through their attorneys of record (collectively, the "Parties"), hereby submit these Joint Proposed Jury Instructions pursuant to Paragraph 3(g) of the Court's Standing Order Re: Pretrial Instructions in Civil Cases (last updated March 17, 2025).[1]

The Parties respectfully reserve the right to amend or supplement these proposed instructions and their objections thereto as the case proceeds towards trial, as the Parties continue to meet and confer regarding these instructions, and as the Court considers these proposals and objections.

| No. | Description | Whether the Parties Stipulate or Object |
|---|---|---|
| **Preliminary Instructions** | | |
| 1 | Duty of Jury | Stipulate |
| 2 | Claims and Defenses | **Tucson objects to this instruction in part. The Parties propose partial competing instructions.** |
| 3 | Companies and Public Entities | **The Parties propose conflicting modifications.** |
| 4 | Burden of Proof – Preponderance of the Evidence | Stipulate |
| 5 | Burden of Proof – Clear and Convincing Evidence | **Defendants object to the instruction in full. However, the Parties agree that this instruction is only appropriate if a Punitive Damages Instruction is given. If a Punitive Damages instruction is given over** |

---

[1] The Parties submit, as Exhibits A and B, redlines reflecting the Parties' proposed modifications to the 9th Circuit Model Instructions, consistent with the Court's Standing Order at Paragraph 3(g)(ii)(H). Exhibit A compares the Parties' stipulated instructions, as well as Defendants' proposals for contested instructions. Exhibit B compares Tucson's proposals for the contested instructions. The Parties understand that this instruction relates solely to the 9th Circuit Model Instruction, and does not apply to any model or pattern instructions regarding state law. However, the Parties are happy to provide such redlines against the state law model instructions if it would be helpful to the Court.

| | | | |
|---|---|---|---|
| | | | Defendants' objection, the Parties stipulate to the proposed language for this instruction. |
| | 6 | Two or More Parties – Different Legal Rights | **The Parties propose partial competing instructions.** |
| | 7 | What is Evidence | Stipulate. |
| | 8 | Direct and Circumstantial Evidence | Stipulate. |
| | 9 | What Is Not Evidence | Stipulate. |
| | 10 | Evidence for a Limited Purpose | Stipulate (conditioned on limiting instruction being given). |
| | 11 | Ruling on Objections | Stipulate (the Parties propose giving instruction before the start of evidence). |
| | 12 | Credibility of Witnesses | Stipulate. |
| | 13 | Publicity During Trial | Stipulate (the Parties propose giving instruction before the start of evidence). |
| | 14 | No Transcript Available | Stipulate (the Parties propose giving instruction before the start of evidence). |
| | 15 | Bench Conferences and Recesses | Stipulate (the Parties propose giving instruction before the start of evidence). |
| | 16 | Video Deposition | Stipulate (the Parties propose giving instruction before the start of evidence). |
| | 17 | Expert Opinion Testimony | Stipulate. |
| | 18 | Protection for Publishing and Expressive Activity | **The Parties propose complete competing instructions.**<br><br>**Tucson argues that this instruction should be given later—between No Duty to Prevent Harm Caused by Third Parties and Comparative Fault.** |
| | N/A | Transition Instruction | Stipulate. |
| **Substantive Instructions** | | | |
| **First Claim – Negligence** | | | |
| | 19 | Negligence - Definition | **The parties propose conflicting** |

|  |  |  | modifications. |
|---|---|---|---|
| | **Second Claim – Public Nuisance** | | |
| 20 | Public Nuisance | | **The parties propose conflicting modifications.** |
| 21 | Damages for Public Nuisance | | **Defendants object to this instruction in full.** |
| | **Additional Substantive Instructions** | | |
| 22 | Burden of Proof | | **Tucson objects to this instruction in part.** **Defendants object to this instruction in full.** |
| 23 | Causation – Generally | | **The parties propose conflicting modifications.** |
| 24 | Causation – Multiple Causes | | **Defendants object to this instruction in full.** |
| 25 | Causation – Substantial Factor | | **The parties propose partial competing instructions.** |
| 26 | Liability | | **Tucson objects to this instruction in part.** **The parties propose conflicting modifications.** |
| 27 | Liability – Relative Degrees of Fault | | **The parties propose conflicting modifications.** |
| 28 | Unusually Susceptible Plaintiff | | **Defendants object to this instruction in full.** |
| 29 | No Duty to Prevent Harm Caused by Third Parties | | **The parties propose partial competing instructions.** |
| 30 | Comparative Fault | | **Tucson objects to this instruction in full.** |
| 31 | Mitigation of Damages | | **Tucson objects to this instruction in full.** |
| 32 | Assumption of Risk | | **Tucson objects to this instruction in full.** |
| 33 | Damages | | Stipulate |
| 34 | Compensatory Damages | | **Tucson objects to this instruction in part.** **The parties propose conflicting modifications.** |

4

| 35 | Punitive Damages | **Defendants object to this instruction in full.** |
|---|---|---|
| 36 | Punitive Damages – Burden of Proof | **Defendants object to this instruction in full.** |
|  | **STOP (CLOSING ARGUMENTS)** | |
|  | **Post-Closing Instructions** | |
| 37 | Duty to Deliberate | Stipulate |
| 38 | Consideration of Evidence | Stipulate |
| 39 | Communications with Court | Stipulate |
| 40 | Return of Verdict | Stipulate |

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (TUCSON)

I.    <u>**PRELIMINARY INSTRUCTIONS**</u>

**Jury Instruction #1**

**Duty of Jury**

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

AUTHORITY:          Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2025 ed., last updated September 2025) ("Ninth Cir. Model Instructions"), Instruction No. 1.4.

DATE SUBMITTED:    January 28, 2026

DATE REVISED:      [insert date]

1

2

**Jury Instruction #2**

**Claims and Defenses±**

3    *[±Defendants' proposed language is in blue text.  Tucson objects to instructing on affirmative*

4    *defenses, which Tucson objects to instructing about generally, but will consider its below proposed*

5    *language in red text if affirmative defenses instructions are ordered.]*

6    To help you follow the evidence, I will give you a brief summary of the positions of the parties:

7            The Plaintiff in this case is Tucson Unified School District, also referred to as "Plaintiff" or

8    "the School District."  The Defendants in this case are four separate groups of [social media]

9    [technology]  companies:

10        1.  Meta Platforms, Inc. f/k/a Facebook, Inc.; and Instagram, LLC, referred to collectively as

11            "Meta;"

12        2.  Snap Inc., referred to as "Snap;"

13        3.  TikTok Inc., ByteDance Inc., ByteDance Ltd., TikTok Ltd., and TikTok, LLC, referred to

14            collectively as "TikTok;" and

15        4.  YouTube, LLC and Google LLC, referred to collectively as "YouTube."

16    Collectively, these [social media companies] [four groups] are referred to as "Defendants."

17            [The School District asserts that the Defendants negligently designed, operated, and/or

18    marketed their social media platforms to target students and schools.  The School District asserts

19    that the Defendants' actions caused students to experience problematic use, compulsive use, and/or

20    addiction to their platforms, resulting in a deterioration of youth learning, mental health, and overall

21    well-being.  The School District also asserts that Defendants' actions disrupted school operations

22    and negatively impacted the school environment.  The School District asserts that Defendants'

23    actions harmed the School District by requiring the School District to expend and redirect already

24    limited resources.  The School District further asserts that the harms to the School District are

25    ongoing and will continue to cause the School District harm.  The School District asserts that the

26    consequences of Defendants' actions were foreseeable, and Defendants failed to warn about those

27    consequences.]

28            [Tucson Unified School District claims that Defendants developed and operated their online

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (TUCSON)

platforms—specifically Instagram, Facebook, TikTok, Snapchat, and YouTube—in a manner that caused mental health harms to Tucson Unified School District's students and led to additional expenses for the School District.]

Tucson Unified School District brings two legal claims against [Defendants] [each Defendant]: negligence and public nuisance. Tucson Unified School District has the burden of proving these claims.

The Defendants deny Tucson Unified School District's claims. Defendants also assert the following affirmative defenses to Tucson Unified School District's claims: (1) comparative fault, [(2) failure to mitigate,] and (3) assumption of risk. Defendants have the burden of proving these affirmative defenses. Tucson Unified School District denies Defendants' affirmative defenses.

Later I will explain the specific legal requirements that the parties must prove for each claim or defense.


AUTHORITY:            Ninth Circuit Manual of Model Civil Jury Instructions 1.5


DATE SUBMITTED: January 28, 2026

DATE REVISED:       [insert date]

**TUCSON'S POSITION ON INSTRUCTION 2:**

**Social Media Companies.** Defendants' refusal to describe themselves as "social media companies" is unjustifiable. Demanding that they only be called "technology companies" is unduly restrictive for no legitimate reason, confusing, and prejudicial because it does not match reality, the testimony, or documentary evidence that will be admitted at trial, which commonly refers to Defendants as social media companies, including their own press releases. Nor is it prejudicial to Defendants to call them social media companies; that *is* what they are, hence the case caption.

**Statement of Case.** Tucson's proposed instruction includes an accurate and neutral description of its theories of liability to provide the jury with essential context regarding the claims at issue, as the Court has requested and as is the Court's common practice. *See* YGR Pretrial Standing Order 3(h); *see*, *e.g.*, *AngioScore, Inc. v. TriReme Medical, Inc., et al.*, No. 4:12-cv-03393-YGR, ECF No. 800, at *2 (N.D. Cal. Oct. 1, 2015) ("AngioScore also argues that Defendants have actively induced others to infringe" specific patent claims with specific products); *Genentech, Inc. v. Biogen MA, Inc.*, 4:23-cv-00909-YGR, ECF No. 202, at *2 (N.D. Cal. July 2, 2025) ("Genentech is claiming that Biogen breached the agreement by failing to pay royalties on Tysabri that Biogen manufactured in or imported into the United States before Cabilly expired on December 18, 2018, but sold after that date"); *Zertuche v. Cnty. of Santa Clara et al.*, No. 4:11-cv-03691-YGR, ECF No. 157, at *3 (N.D. Cal. Nov. 20, 2013) (outlining plaintiff's claim that "she was retaliated against on account of complaints that she made concerning whether the Independent Defense Counsel Office was operated in a proper and ethical manner" and explaining three specific forms of retaliation); *Trulove v. D'Amico et al.*, No. 4:16-cv-00050-YGR, ECF No. 508, at *17 (N.D. Cal. Apr. 4, 2018) (outlining plaintiff's theories of deprivation of due process rights and defendants' conspiracy).

Defendants' statement of the case is cursory and does not explain the nature of the harm or the Tucson's theory of the case. It does little to inform the jury beyond naming the parties.

**"Defendants" vs. "a Defendant."** Tucson's references to "Defendants" in the collective is appropriate for this instruction because it summarizes allegations that Tucson asserts uniformly

against all Defendants. It does not—as Defendants claim—relieve Tucson of its obligation to prove causation against each Defendant, which Tucson addresses in a separate instruction. *See infra* [Causation – Generally].

**Evidence Does Not Support Instruction on Affirmative Defenses.** Tucson also objects to Defendants' instruction on affirmative defenses. First, Arizona law recognizes that "[a] defendant is entitled to an instruction on 'any theory of defense which is recognized by law *and supported by the evidence*.'" *State v. Johnson*, 2018 WL 328724, at *3 (Ariz. Ct. App. Jan. 9, 2018) (citing *State v. Strayhand*, 911 P.2d 577, 594–94 (Ariz. Ct. App. 1995)) (emphasis added). As explained in Tucson's specific objections to Defendants' proposed instructions on each of these defenses, Defendants have not articulated nor substantiated any basis from which the jury may find comparative fault, assumption of risk, or failure to mitigate. *See infra* [Comparative Fault], [Assumption of Risk], [Mitigation of Damages]. In other words, Defendants' "version of the facts did not place [those defenses] at issue, and the jury would not [be] aided by" an instruction on those defenses. *State v. Almaguer*, 303 P.3d 84, 91 (Ariz. Ct. App. 2013).

To the extent the Court denies any or all of Defendants' affirmative defense instructions, it should also remove any mention of those instructions in this preliminary instruction.

**Mitigation is Not a Defense to Claims.** Tucson objects to including "failure to mitigate" damages as an affirmative defense "to Tucson Unified School District's *claims*." (emphasis added); *see infra* [Mitigation of Damages]. Failure to mitigate "affects the measure of damages, not the right to recover." *Universal Inv. Co. v. Sahara Motor Inn, Inc*., 619 P.2d 485, 487 (Ariz. Ct. App. 1980). Thus, although mitigation is a "defense" in that Defendants bear the burden of proof, *see Next Gen Cap., L.L.C. v. Consumer Lending Assocs., L.L.C.*, 316 P.3d 598, 602 (Ariz. Ct. App. 2013), enumerating it alongside assumption of risk and comparative fault as a defense to Tucson's "claims" will likely mislead the jury into believing that a finding of failure to mitigate operates as a complete bar to recovery.

**DEFENDANTS' POSITION ON INSTRUCTION 2:**

Defendants' proposed Instruction on Claims and Defenses is consistent with Ninth Circuit Jury Instructions and the Court's Standing Order Re: Pretrial Instructions in Civil Cases (last updated March 17, 2025) ("Standing Order").[2]  *See* Standing Order at 5–6.  Specifically, Defendants' Instruction is modeled after and consistent with Ninth Circuit Model Instruction 1.5, which states that the instruction will "give a brief summary of the positions of the parties" and goes on to identify the parties, "plaintiff's claims," "defendant's . . . affirmative defenses," which party has the burden of proving plaintiff's claims and defendant's affirmative defenses, and the denials of the same.

**Affirmative Defenses.**  Defendants include their affirmative defenses in their proposed language, whereas Tucson objects to instructing on affirmative defenses—a position that is in direct opposition to Model Instruction 1.5 and has no support.  Defendants' defenses are properly asserted and Defendants intend to offer supporting evidence at trial,[3] and Tucson has not moved to strike them and did not seek summary judgment on those defenses.  Tucson concedes that each of these three defenses is a proper affirmative defense under Arizona law.  *See, e.g.*, *Braunstein v. Honor Family Healthcare, LLC*, 2025 WL 1554316, at *2 (Ariz. Ct. App. May 22, 2025) ("Mitigation is an affirmative defense"); *Del E. Webb Corp. v. Super. Ct.*, 726 P.2d 580, 587 (Ariz. 1986) (en banc) ("contributory negligence and assumption of the risk" are "affirmative defenses").  Defendants' proposed instructions for each accurately explain the applicable Arizona law, including that if the jury finds the defenses apply, the Court will reduce Tucson's full damages by the corresponding amount.  *See* Proposed Instructions 30 ("Comparative Fault"), 31 ("Mitigation of Damages"), 32 ("Assumption of Risk").  There is no risk of juror confusion.

**Statement of Claims.**  Tucson's proposed instruction provides unnecessary details, improper arguments, and objectionable characterizations of Tucson's claims  Defendants object to

---

[2] Defendants maintain that summary judgment should be granted because Plaintiffs have not identified any actionable conduct that caused their alleged harms, and they submit these proposed instructions without waiving such arguments.

[3] These affirmative defenses were raised in each of the Defendants' answers to the Districts' Master Complaint.  *See* Dkt. 1419 (YouTube); 1421 (TikTok); Dkt. 1423 (Snap); Dkt. 1424 (Meta).

Tucson's language that "Defendants' actions caused students to experience problematic use, compulsive use, and/or addiction to their platforms, resulting in a deterioration of youth learning, mental health, and overall well-being." Tucson may not recover in this lawsuit for alleged harm to students, including for the "deterioration of [students'] learning, mental health, and overall well-being." Tucson may recover only for its own economic expenses resulting from the alleged mental health harms suffered by its students. The jury should not erroneously be instructed that Tucson can recover just for harms to students alone. Nor should Tucson be permitted to recover based upon "disruptive" student behavior unless the reason that students are being disruptive is a mental health harm caused by Defendants' platforms. Otherwise, Defendants cannot be held liable for that disruption, including because there is no public health interference.

Defendants also object to the language about disruption to and "negative impacts on school operations and the school environment" because it is vague and misstates what Tucson must prove. Tucson must show actionable, concrete injuries, such as out-of-pocket expenses, but Tucson's language about "negative impacts" on "school operations" and the "school environment" suggests to the jury that Tucson can recover even if it cannot show concrete damages.

**Referring to Each Defendant.** Tucson improperly attempts to lump Defendants together, despite Arizona requiring assessment of liability and apportionment of fault for each party. *See Scottsdale Ins. Co. v. Cendejas*, 205 P.3d 1128, 1132 (Ariz. Ct. App. 2009) (stating that under Arizona law, "a defendant is liable to an injured party only for his percentage of fault and may ask the trier of fact to apportion fault among all of those who contributed to the injury."); A.R.S. § 12–2506(B)–(C) ("[T]rier of fact shall consider the fault of all persons who contributed to the alleged injury" and apportion "the relative degree of fault" of the claimant, the defendants, and nonparties).

**Reference to "Social Media" Companies.** Defendants object to the use of "social media" to describe their platforms. YouTube and Snap do not agree with the characterization of their platforms as "social media." Tucson takes the position that "social media" references in the evidentiary record equal Defendants, but Defendants contest this. The Court's instructions should not unnecessarily weigh in on that factual dispute in Tucson's favor.

**Jury Instruction #3**

**Companies and Public Entities[±]**

*[±Defendants' proposed language is in blue text.]*

The Defendants in this case are companies. The Plaintiff in this case is a public entity. All parties are equal before the law. Companies and public entities are entitled to the same fair and conscientious consideration by you as any party. Under the law, Plaintiff and Defendants are each considered to be a person and can only act through its subsidiaries, employees, agents, directors, or officers. Therefore, Plaintiff and Defendants are each responsible for the acts of its subsidiaries, employees, agents, directors, and officers performed within the scope of their authority. An employee, agent, director, or officer is acting within the scope of authority if he or she is engaged in the performance of duties which were expressly or impliedly assigned to them by the corporation.

AUTHORITY:          Ninth Cir. Model Instructions, Instructions 4.1, 4.2, and 4.5 (modified).

DATE SUBMITTED:   January 28, 2026

DATE REVISED:        [insert date]

1    **TUCSON'S POSITION ON INSTRUCTION 3:**

2          The parties began with the Ninth Circuit Model Civil Jury Instructions 4.1 (Corporations

3    and Partnerships – Fair Treatment) and 4.2 (Liability of Corporations – Scope of Authority Not in

4    Issue), which instruct on treating corporate parties fairly and explain that corporations can be held

5    accountable through their employees and officers. The parties agreed to revise the instruction to

6    say "companies" rather than "corporations" (as LLCs are technically companies, but not

7    corporations), and to instruct the jury that they also should not treat Bellwether School District

8    Plaintiffs differently by nature of the fact that they are public entities.

9          The parties conferred about the applicability of Model Civil Jury Instruction 4.2, which

10   instructs the jury on how to determine liability for corporations—a pattern instruction that

11   contemplates that scope of authority is *not* at issue. Plaintiffs believe this instruction may be useful,

12   as the jury will hear testimony from both parties' employees.

13         However, Defendants also suggested including language from Model Civil Jury Instruction

14   4.5 (Agent – Scope of Authority Defined), which goes on to describe what conduct falls "within

15   the scope of authority." Plaintiffs objected to this language, because no party has suggested that

16   any person was not acting within the scope of their authority. Further, Defendants have failed to

17   bring to Plaintiffs' attention any live dispute regarding the liability of parent corporations with

18   respect to the actions of their subsidiaries.[4] Because the jury will not be asked to determine when

19   an employee acts within the scope of their authority, that instruction language is not relevant for

20   the purposes of this case, and risks confusing the jury about what issues they must decide. When

21   given this explanation, Defendants then objected that language from Model Instruction 4.5 is

22   necessary to prevent juror confusion about the meaning of the reference to "scope of authority" in

23   Model Instruction 4.2. The solution there is simple: rather than instruct the jury on an irrelevant

24   concept which may introduce new legal issues and confusion, just remove the language regarding

25   the scope of an employee's authority from Model Instruction 4.2.

26

27   [4] *E.g.* Order on Stipulation to Dismiss Certain Meta Defendants, ECF 2401 at 1 ("Meta Platforms
     Inc. agrees not to assert as a defense to liability in this Matter that it is not responsible for any
28   actions or inactions alleged by Bellwethers as wrongful on the grounds that such actions or
     inactions were taken in whole or in part by any or all of the Meta Subsidiaries.").

Plaintiffs' proposal informs the jury on all relevant issues of law that will help them resolve the questions they are tasked with answering.

**DEFENDANTS' POSITION ON INSTRUCTION 3:**

The Parties jointly propose giving an instruction based on Ninth Circuit Model Instructions 4.1 and 4.2, slightly modified for the facts of this case. In doing so, Defendants also seek to include in this instruction Ninth Circuit Model Instruction 4.5, which is similarly modified for the facts of this case. Plaintiffs object to the inclusion of language from Model Instruction 4.5 ("An agent is acting within the scope of authority if the agent is engaged in the performance of duties which were expressly or impliedly assigned to the agent by the principal."), and the final clause of Model Instruction 4.2 ("Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.").

Defendants propose this language because the "scope of authority" is integral to understanding and then applying agency law. What is more, Plaintiffs provide no authority for the position that Defendants can be held liable for acts of their agents performed outside the scope of their authority. Because several Defendant groups include parent companies and subsidiaries, this language is necessary for the jury to determine potential liability of parent organizations for actions taken by subsidiaries or employees of subsidiaries. *See, e.g.*, *Brit. Telecomm. PLC v. IAC/InteractiveCorp*, 356 F. Supp. 3d 405, 409 (D. Del. 2019) (holding that "a parent corporation is held liable for the actions of its subsidiary if the parent directed or authorized those actions" under an agency theory if the relationship is directly related to the cause of action) (citing *Phoenix Canada Oil Co. v. Texaco, Inc.*, 842 F.2d 1466, 1477 (3d Cir. 1988)); *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017) (proving agency relationship between parent and subsidiary requires that establishing that the agent "act[ed] on the principal's behalf and subject to the principal's control" (quoting Restatement (Third) Of Agency § 1.01 (2006)).

The Court should give Defendants' requested language in this instruction because it clearly states the law—and Plaintiffs fail to provide any basis for rejecting a model instruction.

**Jury Instruction # 4**

**Burden of Proof – Preponderance of the Evidence**

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more likely true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

AUTHORITY:              Ninth Cir. Model Instructions, Instruction 1.6.

DATE SUBMITTED:    January 28, 2026

DATE REVISED:        [insert date]

**Jury Instruction # 5**

**Burden of Proof – Clear and Convincing Evidence**

*[Defendants object to the instruction in full. However, the Parties agree that this instruction is only appropriate if a Punitive Damages Instruction is given. If a Punitive Damages instruction is given over Defendants' objection, the Parties stipulate to the proposed language for this instruction.]*

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

AUTHORITY:            Ninth Cir. Model Instructions, Instruction 1.7.

DATE SUBMITTED:   January 28, 2026

DATE REVISED:        [insert date]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Jury Instruction #6**

**Two or More Parties – Different Legal Rights[±]**

*[[±]Defendants' proposal is in blue text.]*

  You should decide the case as to each party separately.  A Defendant is responsible only for its own conduct, and one Defendant cannot be liable as a result of conduct by a different Defendant. Unless otherwise stated, the instructions apply to all parties.

AUTHORITY:    Ninth Cir. Model Instructions, Instruction 1.8 (modified).

DATE SUBMITTED: January 28, 2026

DATE REVISED:  [insert date]

1  **TUCSON'S POSITION ON INSTRUCTION 6:**

2      Plaintiffs propose the pattern instruction language from Ninth Circuit Model Civil Jury

3  Instruction 1.8. Defendants' additional language ("A Defendant is responsible only for its own

4  conduct, and one Defendant cannot be liable as a result of conduct by a different Defendant.")

5  invites juror confusion and misstates the law for causation by multiple tortfeasors, which each

6  Bellwether School District Plaintiff alleges.

7      Each state has developed law for instances of multiple causes that combine or commingle

8  to produce harm: in cases involving multiple alleged tortfeasors whose actions allegedly

9  contributed to an indivisible harm, the plaintiff is required to show that each defendant was a cause-

10  in-fact (typically substantial factor, though Georgia objects that "substantial" sets the bar even too

11  high) before that defendant can be held liable. *See Holland v. United Servs. Auto. Ass'n*, 707 S.W.3d

12  541, 556 (Ky. Ct. App. 2025); *Salica v. Tucson Heart Hosp.-Carondelet, L.L.C.*, 231 P.3d 946,

13  950-51 (Ariz. Ct. App. 2010); *Deaton Holdings, Inc. v. Reid*, 888 S.E.2d 333, 336 (Ga. Ct. App.

14  2023); *Carter v. Wallace & Gale Asbestos Settlement Tr.*, 96 A.3d 147, 157-59 (Md. Ct. App.

15  2014); *Boryszewski ex rel. Boryszewski v. Burke*, 380 N.J. Super. 361, 376 (App. Div. 2005); *Jolly

16  v. Gen. Elec. Co.*, 869 S.E.2d 819, 829 (S.C. Ct. App. 2021).

17      However, and crucially important, under every state's law, if a defendant is determined to

18  be a cause of the indivisible harm, then it is liable for causing the entire harm. This means that

19  Defendants' language that a Defendant "is responsible only for its own conduct" is not wholly true.

20  Plaintiffs must show that each Defendant was a cause-in-fact and a proximate cause of the harm

21  the Plaintiff alleges, but once shown, all Defendants are responsible for the entire harm.

22      In three of the bellwether states—South Carolina, New Jersey, and Maryland—every

23  defendant is jointly-and-severally liable for the full amount of damages. *Pratt v. Amisub of SC, Inc.*,

24  912 S.E.2d 268, 282-83 (S.C. Ct. App. 2025); *O'Brien (Newark) Cogeneration, Inc. v. Automatic

25  Sprinkler Corp. of Am.*, 825 A.2d 524, 531-32 (NJ App. Div. 2003); *Consumer Prot. Div. v.

26  Morgan*, 874 A.2d 919, 950 (Md. App. Ct. 2005). In Kentucky, Arizona, and Georgia, the jury

27  apportions damages according to the proportionate fault of the tortfeasors. *Owens Corning

28  Fiberglas Corp. v. Parrish*, 58 S.W.3d 467, 477 n. 30 (Ky. 2001); *Piner v. Superior Ct. in and for*

*Cnty. of Maricopa*, 962 P.2d 909, 916 (Ariz. 1998) (en banc); *Fed. Deposit Ins. Corp. v. Loudermilk*, 826 S.E.2d 116, 126 (Ga. 2019). Either way, in all six states, for purposes of causation, the defendant is considered to have *caused* the harm as a whole. *See Owens Corning Fiberglas Corp. v. Parrish*, 58 S.W.3d 467, 477 n. 30 (Ky. 2001); K.R.S. § 411.182; *Piner v. Superior Ct. in and for Cnty. of Maricopa*, 962 P.2d 909, 916 (Ariz. 1998) (en banc); *Deaton Holdings, Inc.*, 888 S.E.2d at 336; O.G.C. § 51-12-33; *Carter*, 96 A.3d at 157-59; *Reichert v. Vegholm*, 366 N.J. Super. 209, 221 (App. Div. 2004); *Smith v. Tiffany*, 799 S.E.2d 479, 481 (S.C. 2017); S.C. Code § 15-38-15.

The only way that a defendant can avoid responsibility for causing an entire indivisible harm is to prove that (1) the harm is actually divisible, and (2) evidence exists that would allow the jury to connect a particular Defendant's actions to a particular part of the divisible harm. Defendants have the burden to show each aspect of apportionability; otherwise, the harm is considered indivisible, and all contributing tortfeasors are considered responsible for the whole. *See* Restatement (Second) Torts §§ 433A, 433B (1965); *see also Parrish*, 58 S.W.3d at 477 n.28; *Piner*, 962 P.2d at 916; *Polston v. Boomershine Pontiac-GMC Truck, Inc.*, 423 S.E.2d 659, 660-61 (Ga. 1992); *Carter*, 96 A.3d at 159-60; *Reichert*, 366 N.J. Super. at 221.

Despite appearing to suggest at the summary judgment hearing that they would not seek instructions that would require *Plaintiffs* to apportion causation, Defendants repeatedly propose jury instructions throughout each Bellwether School District Plaintiff's jury instruction set that ask exactly that—and here as well.

Because Defendants' proposed language suggests that liability must be limited according to each Defendants' causal contribution to the harm, despite no Defendant proving that any Plaintiff's harm is capable of divisibility, the proposal misstates the law and invites jurors to err in their consideration of the evidence. The Court should reject Defendants' added language, and instead give the Ninth Circuit pattern language as written.

1   **DEFENDANTS' POSITION ON INSTRUCTION 6:**

2         Defendants propose adding a sentence to Ninth Circuit Model Instruction 1.8 to explicitly

3   instruct the jury on the implications of "decid[ing] the case as to each party separately."  This

4   additional language makes good sense not least because it is black letter law in all six bellwether

5   jurisdictions that one party cannot be held liable for the actions of another unless the principles of

6   agency (on which the jury will be instructed) require such a finding of liability.  In all other

7   instances, a defendant is only responsible for its own conduct.

8         For the first time, Tucson argues that Defendants caused it a "single indivisible injury" and

9   that this establishes an exception to its burden to establish causation as to each Defendant.  As an

10  initial matter, Tucson has presented no evidence or argument that its injuries are indivisible.  And

11  even if they were, under Arizona law, the plaintiff always bears the "burden of proving that the

12  conduct of *each defendant* was a cause of the injury."  *Piner v. Super Ct.*, 962 P.2d 909, 916 (Ariz.

13  1998) (emphasis added) (quoting Restatement (Second) of Torts § 433B).  In other words, the

14  plaintiff must show that each defendant was a proximate cause in harming the plaintiff, or that each

15  defendant was a "substantial factor" in causing that harm.  *Salica v. Tucson Heart Hosp.-*

16  *Carondelet, LLC*, 231 P.3d 946, 950 (Ariz. Ct. App. 2010).

17        Arizona law does not provide any exception to the threshold causation requirement,

18  including where a plaintiff experienced an indivisible injury.  Rather, in a case of indivisible injury,

19  "each tortfeasor whose *conduct caused the injury* is severally liable only for a percentage of the

20  total damages recoverable by the plaintiff, the percentage based on each actor's allocated share of

21  fault."  *Piner*, 962 P.2d at 915 (emphasis added); *Salica*, 231 P.3d at 951 ("A plaintiff therefore will

22  be allowed to recover if he or she shows multiple defendants '*contributed to the final result*,' in

23  which case 'the burden of proof is on them.'") (quoting *Piner*, 962 P.2d at 916 (emphasis added));

24  *Cramer v. Starr*, 375 P.3d 69, 73 (Ariz. 2016) (same).  *Salica* does not support Tucson's argument

25  because in that case, the court permitted claims against a defendant based on evidence that the

26  defendant's conduct "substantially increased the likelihood of [the decedent's] death" and specified

27  that a plaintiff "cannot leave causation to the jury's speculation."  231 P.3d at 951–52.  Therefore,

28  while a plaintiff does not always bear the burden of establishing the proper apportionment of

1 damages, they always bear the burden of showing causation as to each defendant before they can

2 be held liable for any amount.

3     Tucson also argues that any defendant who contributed to an indivisible harm is liable for

4 the entire harm, but that claim precisely describes the rule of joint and several liability, where all

5 defendants who proximately caused a harm were "jointly and severally liable for the whole amount

6 of damage." *Piner*, 962 P.2d at 914.  By statute, the Arizona legislature "abolish[ed] joint liability

7 and replac[ed] it with a system that requires the court to allocate responsibility among all parties

8 who caused the injury, whether or not they are present in the action."  *Id.* at 915; *see also* A.R.S.

9 § 12–2506(B)–(C) ("[T]rier of fact shall consider the fault of all persons who contributed to the

10 alleged injury" and apportion "the relative degree of fault" of the claimant, the defendants, and

11 nonparties).  Thus, Tucson has no legal basis to object to this instruction, which would be helpful

12 to the jury alongside aiding in avoiding confusion over how to view corporate separateness among

13 distinct legal entities.

14     This modification to the Model Instruction will also prevent confusion for the jury.

15 Repeatedly throughout the proposed substantive instructions, Defendants are referenced as a group.

16 Defendants have objected to this "lumping together" of Defendants and proposed alternative

17 language where appropriate.  Despite these objections, however, the jury may still fail to

18 appropriately consider Plaintiffs' claims against each Defendant separately or to recognize what it

19 means to consider the claims separately.  And this concern becomes particularly acute if the Court

20 does not adopt Defendants' proposed language in the substantive instructions.  Thus, this

21 modification to the Model Instruction will aid the jury in faithfully applying the substantive law in

22 each case.

23

24

25

26

27

28

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (TUCSON)

**Jury Instruction # 7**

**What Is Evidence**

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits that are admitted into evidence;

3. any facts to which the lawyers have agreed; and

4. any facts that I have instructed you to accept as proved.


AUTHORITY:          Ninth Cir. Model Instructions, Instruction 1.9.


DATE SUBMITTED:    January 28, 2026

DATE REVISED:      [insert date]

**Jury Instruction # 8**

**Direct and Circumstantial Evidence**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night.  However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

AUTHORITY:            Ninth Cir. Model Instructions, Instruction 1.12 (modified to include illustrative example suggested in comment to Instruction 1.12).

DATE SUBMITTED:   January 28, 2026

DATE REVISED:       [insert date]

**Jury Instruction #9**

**What Is Not Evidence**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1)  Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses. What they say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)  Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)  Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.

(4)  Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

AUTHORITY:              Ninth Cir. Model Instructions, Instruction 1.10 (modified).


DATE SUBMITTED:   January 28, 2026

DATE REVISED:        [insert date]

**Jury Instruction #10**

**Evidence for a Limited Purpose**

*[The Parties agree to this instruction on the condition that it be given only if there is a limiting instruction ordered.]*

      Some evidence may be admitted only for a limited purpose.

      When I instruct you that an item of evidence has been admitted only for a limited purpose, you may consider it only for that limited purpose and not for any other purpose.


AUTHORITY:         Ninth Cir. Model Instructions, Instruction 1.11.


DATE SUBMITTED:  January 28, 2026

DATE REVISED:     [insert date]

**Jury Instruction # 11**

**Ruling on Objections**

*[The Parties propose this instruction be given before the start of evidence.]*

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.

If I overrule the objection, the question may be answered, or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.


AUTHORITY:            Ninth Cir. Model Instructions, Instruction 1.13.


DATE SUBMITTED:   January 28, 2026

DATE REVISED:       [insert date]

**Jury Instruction # 12**

**Credibility of Witnesses**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)    the opportunity and ability of the witness to see or hear or know the things testified to;

(2)    the witness's memory;

(3)    the witness's manner while testifying;

(4)    the witness's interest in the outcome of the case, if any;

(5)    the witness's bias or prejudice, if any;

(6)    whether other evidence contradicted the witness's testimony;

(7)    the reasonableness of the witness's testimony in light of all the evidence; and

(8)    any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

1  AUTHORITY:                Ninth Cir. Model Instructions, Instruction 1.14.

2  DATE SUBMITTED:     January 28, 2026]

3  DATE REVISED:          [insert date]

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (TUCSON)

**Jury Instruction # 13**

**Publicity During Trial**

*[The Parties propose this instruction be given before the start of evidence.]*

      If there is any news media account or commentary about the case or anything to do with it, you must ignore it.  You must not read, watch or listen to any news media account or commentary about the case or anything to do with it.  The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies. If any juror is exposed to any outside information, please notify me immediately.


AUTHORITY:          Ninth Cir. Model Instructions, Instruction 1.16.


DATE SUBMITTED:   January 28, 2026

DATE REVISED:     [insert date]

**Jury Instruction # 14**

**No Transcript Available**

*[The Parties propose this instruction be given before the start of evidence.]*

I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony.


AUTHORITY:        Ninth Cir. Model Instructions, Instruction 1.17.


DATE SUBMITTED:  January 28, 2026

DATE REVISED:      [insert date]

**Jury Instruction # 15**

**Bench Conferences and Recesses**

*[The Parties propose this instruction be given before the start of evidence.]*

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of you the jury, either by having a conference at the bench when you the jury are present in the courtroom, or by calling a recess. Please understand that when this happens and you are waiting, we will be working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

AUTHORITY:          Ninth Cir. Model Instructions, Instruction 1.20 (modified).

DATE SUBMITTED:  January 28, 2026

DATE REVISED:      [insert date]

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (TUCSON)

**Jury Instruction # 16**

**Video Deposition**

*[The Parties propose this instruction be given before the start of evidence.]*

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.

You have been shown video-recorded testimony of certain witnesses. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

AUTHORITY:              Ninth Cir. Model Instructions, Instruction 2.4 (modified).


DATE SUBMITTED:    January 28, 2026

DATE REVISED:         [insert date]

**Jury Instruction # 17**

**Expert Opinion Testimony**

You have heard testimony from experts who testified about their opinions and the reasons for those opinions. This opinion testimony is allowed, because of the specialized knowledge, skill, experience, training, or education of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's specialized knowledge, skill, experience, training, or education, the reasons given for the opinion, and all the other evidence in the case.

AUTHORITY:        Ninth Cir. Model Instructions, Instruction 2.13.

DATE SUBMITTED:  January 28, 2026

DATE REVISED:    [insert date]

**Jury Instruction # 18**

**Protection for Publishing and Expressive Activity**

*[The Parties propose complete competing instructions. Tucson also argues that this instruction should be given later—between No Duty to Prevent Harm Caused by Third Parties and Comparative Fault.]*

**(1)    Instruction # 18-P (Tucson's Proposed Instruction)**

In this case, you may not hold Defendants liable simply because Defendants hosted or published users' content, or because they removed or failed to remove content posted by users.

However, in deciding whether Defendants are liable for negligence or public nuisance, you may hold Defendants liable for their own actions, even if users' content contributed to the harm, so long as Defendants' actions were a substantial factor in causing Tucson's harm. You may also hold Defendants liable for failing to warn about the risks of harm caused by their platforms even if users' content contributed to the harm, so long as Defendants' failure to warn was a substantial factor in causing Tucson's harm.


**(2)    Instruction # 18-D (Defendants' Proposed Instruction)**

Defendants in this case are providers of online platforms that publish their own content and content generated by users. The U.S. Constitution's First Amendment, as well as a federal law called Section 230, provide certain protections for Defendants when they publish such content or otherwise engage in expressive activity.

Under Section 230, Defendants are not liable when they act as publishers of "third-party content"—that is, content posted by the users of Defendants' platforms on those platforms. Such "third-party content" includes words, messages, pictures, video, audio, comments, or any other form of communication that users post, whether publicly or privately, on Defendants' platforms. Each Defendant cannot be found liable under Section 230 for publishing third-party content on its platform, including whether, how, when, and to whom that content is published.

Under the First Amendment, each Defendant is not liable for exercising its right to speak or engage in expressive activity. That means each Defendant cannot be found liable for making

available the content displayed on its platform, such as posts, text, videos, images, music, comments, and "likes," as well as recommending, delivering, displaying, compiling, ranking, and organizing posts, comments or other content made by users of its platform.

The Court has ruled that these legal protections apply to certain types of Defendants' conduct that are "Protected Conduct" and cannot be the basis for finding any Defendant liable.

"Protected Conduct" includes making user content or communications available on Defendants' platforms. You may <u>not</u> find any Defendant liable on the basis of user content (e.g., posts) or communications (e.g., messages) published on the Defendant's platform—whether shared privately between users or shared publicly to a broader audience. In other words, if you find that user content or communications on a Defendant's platform caused some or all of the harms to students alleged by Tucson Unified School District, you may not find the Defendant liable on the basis of that user content or communications.

"Protected Conduct" also includes a Defendant's publishing decisions. You may <u>not</u> find any Defendant liable on the basis of its decisions about whether and how to compile, disseminate, or display content to its users. This protection applies even when a Defendant uses technological tools, like an algorithm that recommends content to users.

"Protected Conduct" also includes specific design features of Defendants' platforms that the Court has already ruled are protected by Section 230 and/or the First Amendment and cannot be the basis for finding any Defendant liable.

Therefore, you may not find any Defendant liable on the basis of any of the following "Protected Conduct":

    1.   Making third-party content available on a Defendant's platform;

    2.   Making decisions about whether and how to recommend, compile, organize, disseminate, and display content to users of a Defendant's platform;

    3.   Using of algorithms to encourage users to spend more time on a platform, including the use of algorithms to display content;

    4.   Providing users with an endless feed or infinite scroll;

5.  Providing informational messages, notifications, or alerts about third-party content or a Defendant's own content, including the timing and clustering of those notifications and regardless of how they are sent (i.e., audiovisually or through vibrations);

6.  Not placing default protective limits on the length and frequency of use sessions;

7.  Making decisions about whether or not to institute blocks preventing use of a platform during certain times of day (such as during school hours or late at night);

8.  Making decisions to recommend certain accounts to certain users;

9.  Providing content in short-form or ephemeral formats (i.e., formats that disappear after a certain period of time);

10. Allowing users to post or provide comments or to receive comments posted by others;

11. Allowing users to exchange, send, or post private content;

12. Publishing geolocating information (i.e., information about users' locations) for users;

13. Using autoplay features (i.e., videos playing automatically after a video ends);

14. Displaying "Likes" or listing the number of "Likes" certain content has received; and

15. Providing awards to users, including to frequent users or for continuous engagement with a Defendant's platform.

Therefore, in evaluating whether Tucson Unified School District has met its burden to satisfy the elements of a claim as to each Defendant, you <u>may</u> consider only "Non-Protected Conduct," which consists only of the Defendant's design and/or use of the following:

*["Non-Protected Conduct" list to be completed after ruling on MSJ and other motions and based upon case-specific evidence, but not to exceed the below list.]*

1.  Options for users to self-restrict time spent using a platform;

2.  The process for users to delete their accounts;

3.  Labels for filtered content;

4.    Appearance-altering filters; and

5.    Processes for users to report suspected child sexual abuse materials to Defendants' platforms.

You may impose liability, if any, only if the harm is caused by this Non-Protected Conduct and the other elements of each claim are met.  You may not find any Defendant liable on the basis that the Defendant's platform as a whole caused harm.  It is Tucson Unified School District's burden to prove that any harm it allegedly suffered was caused by Non-Protected Conduct.  I will now instruct you on the elements of each claim.

AUTHORITY:        47 U.S.C. § 230(c)(1)

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 702 F. Supp. 3d 809, 825–37 (N.D. Cal. 2023) (outlining relevant protections under Section 230 and the First Amendment)

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 754 F. Supp. 3d 946, 962–64 (N.D. Cal. 2024) (same, for school districts' claims)

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 878–85,  894–95 (N.D. Cal. 2024) (same, for state attorneys general claims)

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102, 1107 (9th Cir. 2009), *as amended* (Sept. 28, 2009) (publication "involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content") (holding that Section 230 "precludes liability when the duty the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a publisher or speaker")

*Estate of Bride by and through Bride v. Yolo Technologies, Inc.*, 112 F.4th 1168, 1180 (9th Cir. 2024) (Section 230 precludes failure-to-warn theories that fault platform "for not mitigating, in some, way, the harmful effects of . . . content")

1   *Doe v. Grindr Inc.*, 128 F.4th 1148, 1154 (9th Cir. 2025) (similar)

2   U.S. Const. Amend. I

3   *Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) ("If the acts of 'disclosing'

4   and 'publishing' information do not constitute speech, it is hard to imagine

5   what does fall within that category[.]")

6   *NetChoice, LLC v. Bonta*, 113 F.4th 1101, 1119 (9th Cir. 2024) (holding law

7   that would require platforms to "opine on potential speech-based harms to

8   children" was subject to strict scrutiny and was likely invalid)

9   *NetChoice v. Carr*, 789 F. Supp. 3d 1200 (N.D. Ga. 2025) (holding that age

10  verification requirement "imposes a sweeping burden on adults' access to

11  speech")

12  *Students Engaged in Advancing Texas v. Paxton*, 765 F. Supp. 3d 575, 595–

13  600 (W.D. Tex. 2025) (similar)

14  *NetChoice, LLC v. Griffin*, 2025 WL 978607, at *13 (W.D. Ark. Mar. 31,

15  2025) (similar)

16

17  DATE SUBMITTED: January 28, 2026

18  DATE REVISED:    [insert date]

19

20

21

22

23

24

25

26

27

28

**TUCSON'S POSITION ON INSTRUCTION 18:**

Plaintiffs' proposal accurately instructs the jury that it cannot impose liability on Defendants for hosting or publishing users' content, or for removing or failing to remove content posted by users. It also explains that Defendants may be held liable for their own actions, including failing to warn of known risks from the platform as a whole, even if content is in the causal chain. That latter instruction is in keeping with the Court's past rulings.[5] It is in keeping with the parties' longstanding understanding of the Court's past rulings.[6] And it is in keeping with binding Ninth Circuit precedent. *See Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 744 (9th Cir. 2024) ("In *Internet Brands*, the platform faced liability not because it failed to remove the ads, but because it failed to warn about their content. Thus, Plaintiffs' claims may fare better if they sought to impose liability on Meta for failing to warn about fraudulent content….").

By contrast, Defendants' obtuse and bloated instruction invites the jury to apply the wrong Section 230 test and disregard evidence the Court may deem admissible. It has three problems. First, the instruction improperly tells the jury that Defendants "are not liable when they act as publishers of 'third-party content.'" This is wrong. Section 230 protection hinges on the *legal duties* being imposed, not whether or not Defendants act as publishers. *See e.g.*, *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1092–93 (9th Cir. 2021); *Calise*, 103 F.4th at 740-42. The duties at issue in this case are, roughly, (a) a duty to warn students, parents, and school districts about the risk of compulsive and addictive use from Defendants' platforms; (b) a duty not to negligently design and target at young people platforms with defective age verification, parental controls, and other Court-

---

[5] ECF 430 at 20 (failure to warn claims "plausibly allege that defendants are liable for conduct other than publishing of third-party content and that they could address their duty without changing what they publish"); ECF 716 at 4-5 ("based on" Court's motion to dismiss ruling, "particularly with respect to Claims 2 and 4, the scope of discovery in this matter encompasses all product defects alleged"); ECF 1214 at 45 (Section 230 does not "bar[] liability predicated on a failure to warn of known risks of addiction attendant to any platform features or as to platform construction in general"); ECF 1267 at 14 (same); Hearing Tr. 27:24-28:9, Nov. 16, 2023 (affirming that the failure to warn claim extends beyond features barred by Section 230 for the product liability claims); Hearing Tr. 33:22-34:23, Mar. 21, 2024 (Judge Kang: "the Claims 2 and 4 were not dismissed and on the face of it keep any and all of the alleged defects in the case. That's the way I read the order.").

[6] *See, e.g.*, Br. For Meta at 2, *California et al. v. Meta*, No. 24-7037 (9th Cir. Mar. 31, 2025) (Court permitted "plaintiffs' failure to warn claims relating to certain platform features to proceed, even though . . . other claims as to the same features are barred by Section 230").

1    specified features, *see* ECF 430 at 14-15; and (c) a duty not to interfere with the public rights to

2    health, safety, and education through the foregoing actions. None of these duties would require

3    Defendants to monitor or remove third-party content, or change how they publish content. As such,

4    claims based on these duties are not protected by Section 230. *See Calise*, 103 F.4th at 741.

5        Second, Defendants' instruction includes an instruction on "protected" versus "non-

6    protected" features that is both confusing and legally incorrect. Under the Court's pretrial rulings,

7    Defendants are protected from a state law duty to modify certain features such as their

8    recommendation algorithm. But Section 230 does not protect Defendants from a duty to warn of

9    known risks attendant to use of those same features. That duty *would* require Defendants to put

10   others on notice of known harms, but it *would not* require Defendants to change anything about

11   how, what, or when they publish. *See Internet Brands, Inc.*, 824 F.3d at 851; *see also Est. of Bride*

12   *by & through Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1179 (9th Cir. 2024) (no Section 230

13   protection where "online content is involved in these facts, and content moderation is one possible

14   solution for [defendant] to fulfill its promise, [but] the underlying duty . . . is the promise itself").

15       Third, Defendants' instruction erroneously asks the jury to disregard whole categories of

16   evidence *even if* the Court deems it admissible for certain purposes. *See* Defs' Instruction ("you

17   <u>may</u> consider only "Non-Protected Conduct"). Facts that are not independently actionable may still

18   be evidence in support of other claims. *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab.*

19   *Litig.*, 497 F. Supp. 3d 552, 633 n.61 (N.D. Cal. 2020). This principle extends to cases involving

20   Section 230. *Calise*, 103 F.4th at 742 ("How could Internet Brands warn about certain harmful

21   content without considering what it was? Such a rudimentary fact-bound inquiry quickly falls apart

22   and runs up against our precedent."). Accordingly, the jury may properly hear evidence about the

23   various mechanisms through which Defendants fostered compulsive use, their corporate knowledge

24   about the same, and the resulting harm to students and school districts.

25       Finally, Judge Kuhl has indicated a First Amendment instruction would be improper, as the

26   scope of protection is not a jury question, and the Court should take the same approach here.

27

28

1   **DEFENDANTS' POSITION ON INSTRUCTION 18:**

2        The Court has already ruled that Section 230 and the First Amendment impose a "significant

3   limitation on Plaintiffs' theories of recovery."  Dkt. No. 1267 ("SD Order") at 2.  To give effect to

4   these rulings, the Court must instruct the jury on which conduct may—and may not—form the basis

5   of liability.  Defendants' proposed instruction identifies the specific features and activities that this

6   Court has already held are protected as a matter of law, as well as those that may form the basis of

7   liability.  Without that specificity, the instructions would improperly invite the jury to find a

8   Defendant liable for conduct that is "no longer part of this case."[7]

9        Tucson's proposed instruction disregards the Court's "feature-by-feature" analysis

10  altogether and does not even mention any of the features or activities this Court held are protected.

11  SD Order at 12; *see also* Dkt. No. 430 ("PI Order") at 14–16.  Tucson's instruction would thus

12  improperly require the jury to determine on its own which features are protected, rather than

13  applying this Court's answers to those legal questions.  *See Tortu v. L.V. Metro. Police Dep't*, 556

14  F.3d 1075, 1085 (9th Cir. 2009) (courts must resolve legal questions and instruct the jury

15  accordingly).  And it creates a high risk of confusing the jury into thinking that *none* of Defendants'

16  conduct is protected.  *See L.A. Memorial Coliseum Comm'n v. Nat'l Football League*, 726 F.2d

17  1381, 1398 (9th Cir. 1984) ("Well-tailored and specific instructions" necessary where "abstract

18  legal principles are not self-explanatory to a lay jury" and facts "are complex" (citation omitted)).

19       Tucson's misguided assertion that its failure-to-warn theory renders the distinction between

20  protected and unprotected conduct irrelevant fails for numerous reasons.  First, a substantial body

21  of binding case law has emerged since the Court's prior rulings confirming that Section 230 bars

22  failure-to-warn claims that arise from protected publishing activity, including challenged features.[8]

23  *See, e.g., Doe v. Grindr*, 128 F.4th 1148, 1154 (9th Cir. 2025); *Estate of Bride by and through Bride*

24  *v. Yolo Technologies, Inc.*, 112 F.4th 1168, 1179–80 (9th Cir. 2024); *Doe (K.B.) v. Backpage.com*,

25  _____

26  [7] Defendants reserve the right to argue for the exclusion at trial of any evidence of content and
    protected publishing features.

27  [8] In light of this intervening authority, Defendants did not include failure to warn in their list of
    non-protected conduct.  Defendants omitted age verification from the list for similar reasons.  *See,*
28  *e.g., NetChoice v. Carr*, 789 F. Supp. 3d 1200, 1230 (N.D. Ga. 2025).

1    *LLC*, 768 F. Supp. 3d 1057, 1067 (N.D. Cal. 2025).  *Calise v. Meta Platforms, Inc.*, 103 F.4th 732,

2    743, 746 (9th Cir. 2024), is not to the contrary, because that case did not involve any failure-to-

3    warn claims at all, and it held that Section 230 barred all of the plaintiff's non-contractual claims.

4    *See id.* at 743, 746.  Further, *Calise*'s discussion of failure-to-warn claims is *dicta*—not binding

5    precedent—and it is inconsistent with the Ninth Circuit's subsequent decisions in *Bride* and *Grindr*.

6         In any event, even if the Court permits the failure-to-warn claim to proceed in its entirety,

7    the jury still could not find liability for any damages caused by protected conduct; it could find

8    liability only for damages caused by failing to warn about that protected conduct.[9]  Tucson's

9    proposal ignores that distinction and renders the vast majority of the Court's rulings null.

10        Tucson's proposal is also erroneous because it states that the jury "may hold Defendants

11   liable for their own actions even if users' content contributed to the harm, so long as Defendants'

12   actions were a cause of Plaintiff's harm."  This instruction ignores this Court's rulings that many

13   categories of "Defendants' actions" are protected publishing conduct that cannot form the basis of

14   liability.  *See* SD Order at 13–14; PI Order at 5, 22.  Tucson's instruction also invites error by

15   encouraging the jury to hold Defendants liable for harms so long as any unprotected conduct is

16   involved in any way, however minimally, in the causal chain.  But claims against online platforms

17   like Defendants must be "*fully independent of* [their] role in monitoring or publishing third-party

18   content."  *Lemmon v. Snap Inc.*, 995 F.3d 1085, 1093 (9th Cir. 2021) (emphasis added); *Grindr*,

19   128 F.4th at 1153 n.3 (same; it is "analytically insignificant whether [the plaintiff's] injuries would

20   not have occurred 'but for' [a platform's] role as a publisher"); *see* PI Order at 11 (requiring claims

21   "ha[ve] *nothing to do*" with platform's role as publisher (emphasis added)).

22        Finally, because the protections of Section 230 and the First Amendment cut across all of

23   Tucson's claims, Defendants submit that this instruction must be placed early in the instructions to

24   give important context to the remaining instructions.  Placing the instruction near the end, as Tucson

25   proposes, would risk confusing the jury into erroneously concluding that Section 230 and the First

26   Amendment are distinct issues that do not affect the proper framing of Tucson's claims.

27

---

28   [9] If the Court permits the jury to hold Defendants liable for failure to warn about protected conduct, the proper approach would be to add failure to warn to the list of non-protected conduct.

1

**Transition Instruction**

2        The Court will now explain the substantive law applicable to the claims and defenses

3   brought in this action.  These include Tucson's negligence claim and public nuisance claim,

4   Defendants' affirmative defenses of comparative fault, mitigation of damages, and assumption of

5   risk.

6

7   AUTHORITY:              Standing Order, § 3(g)(ii)(B) (modified to reflect the claims and defenses
                             in this case).

8

9   DATE SUBMITTED:  January 28, 2026

10  DATE REVISED:      [insert date]

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**II.    SUBSTANTIVE INSTRUCTIONS**

**III.    FIRST CLAIM – NEGLIGENCE**

**Jury Instruction # 19**

**Negligence – Definition±**

*[±Defendants' proposed language is in blue text.  Tucson's proposed language is in red text.]*

Tucson Unified School District claims that Defendants were at fault.  Defendants claim that Tucson Unified School District [was at fault] [contributed to causing the alleged harms].

Fault is negligence that was a cause of Tucson Unified School District's harm.

Negligence is the failure to use reasonable care.  Negligence may consist of action or inaction.  Negligence is the failure to act as a reasonably careful person or organization would act under the circumstances.  The failure to warn of a risk that a reasonably prudent company would have known warned about is negligence.  To establish this claim, Tucson Unified School District must prove all of the following as to each Defendant by a preponderance of the evidence:

1.  [That Defendants failed to comply with their duty to use ordinary care in one or more ways, including—but not limited to—the following:

    a.  By not providing the warnings that a reasonably prudent, safe, and competent company would have provided; or

    b.  By designing, operating, and/or marketing their social media platforms in a way that caused minors to experience problematic use, compulsive use, and/or addiction;

    c.  By deliberately targeting school-aged children, knowing of the impact that doing so could have on schools; or

    d.  By not designing, operating, and/or marketing their social media platforms as a reasonably prudent, safe, and competent company would have done.

2.  That Defendants' failure or failures to use ordinary care were a substantial factor in causing Tucson to suffer harm or harms.

3.  As a result of these harms, Tucson incurred expenses and/or the diversion of time and resources which it claims as damages.]

1.  [That the Defendant's Non-Protected Conduct breached the duty to use reasonable care under the circumstances;

2.  That such breach caused Tucson Unified School District's students to suffer mental health harms; and

3.  That those students' harms caused Tucson Unified School District to incur the additional expenses it claims as damages.]

In determining whether each Defendant was negligent, you must consider only whether the Defendant exercised reasonable care with respect to the specific Non-Protected Conduct at issue. You may not make your determination based on the Defendant's platform(s) as a whole, and you may not make your determination based on consideration of any Protected Conduct, even if you find it negligent. You must identify the precise conduct at issue and disregard any claims based on platform-wide features or user-generated content.

AUTHORITY:       RAJI (Civil) FI 5 (7th ed.)

*Powers v. Taser Intern., Inc.*, 174 P.3d 777, 783 (Ariz. Ct. App. 2007), as corrected (Jan. 4, 2008) (for failure to warn language).

*Quiroz v. ALCOA Inc.*, 416 P.3d 824, 827-28 (Ariz. 2018) ("To establish a defendant's liability for a negligence claim, a plaintiff must prove: (1) a duty requiring the defendant to conform to a certain standard of care; (2) breach of that standard; (3) a causal connection between the breach and the resulting injury; and (4) actual damages.")

*Markowitz v. Ariz. Parks Bd.*, 706 P.2d 364, 368 (Ariz. 1985) ("In negligence cases that is usually 'reasonable care under the circumstances,' though it may differ, depending on the relationship.")

*Johnson v. Pankratz*, 2 P.3d 1266, 1270 (Ariz. Ct. App. 2000) ("In an ordinary negligence case, 'it is not necessary for the plaintiff to present evidence to establish the standard of care because the [fact finder] can rely on its own experience in determining whether the defendant acted with

reasonable care under the circumstances." (quoting *Bell v. Maricopa Med. Ctr.*, 755 P.2d 1180, 1182 (Ariz. Ct. App. 1988)))

*Johnson v. Pankratz*, 2 P.3d 1266, 1270 (Ariz. Ct. App. 2000) ("In an ordinary negligence case, 'it is not necessary for the plaintiff to present evidence to establish the standard of care because the [fact finder] can rely on its own experience in determining whether the defendant acted with reasonable care under the circumstances." (quoting *Bell v. Maricopa Med. Ctr.*, 755 P.2d 1180, 1182 (Ariz. Ct. App. 1988)))

DATE SUBMITTED:   January 28, 2026

DATE REVISED:    [insert date]

**TUCSON'S POSITION ON INSTRUCTION 19:**

Tucson's proposed instruction hews closely to Arizona's pattern instruction on negligence, but is tailored to the case. *See* RAJI (Civil) FI 1 (7th ed.).

**Elements.** Tucson's instruction enumerates the elements of negligence under Arizona law pursuant to the Court's standing order. *See* YGR Pretrial Standing Order at 3.g.ii.c. As discussed below, Tucson's recitation is preferable because it (1) explains that a failure to warn is negligence; (2) enumerates the relevant duties Tucson alleges Defendants breached; (3) does not improperly limit Tucson's theory of harm; and (4) does not include improper Section 230 language.

**Failure to Warn Theory.** Tucson's instruction includes language from caselaw discussing when a failure to warn qualifies as negligence. *See Powers v. Taser Int'l, Inc*., 174 P.3d 777, 783 (Ariz. Ct. App. 2007). This will assist the jury in applying the correct legal standard because Tucson's negligence claim is based on a failure to warn theory.

**Enumerated Breaches.** Tucson's recitation of the element of breach is superior because it identifies the specific theories of breach Tucson asserts. These theories track this Court's prior rulings and tie the instructions to the actual theories of the case alleged, making the instruction easier for the jury to apply to the evidence they will hear at trial. *See* ECF No. 1267 at 26, 34.

**Improper Limitation to Mental Health Harms.** Defendants' instruction improperly suggests that the harm Defendants caused was to students' mental health, and that Tucson's harm is entirely derivative of students' mental health harms. This is contrary to the Court's prior order, which allowed Tucson's alleged harms—including damages stemming from "disruption to the school environment"—to proceed past dismissal under a negligence claim. ECF No. 729 at ¶ 194; *see* ECF No. 1267 at 25-26. Defendants' instruction will therefore mislead the jury into believing that mental health harms to Tucson's students are the only kind of harm to which liability may attach.

**Repeated 230 Instruction.** Defendants' repetition of the phrases "Non-Protected Conduct" and "Protected Conduct" throughout their instructions is prejudicial, misstates the law, and unduly emphasizes one affirmative defense. Defendants use "Non-Protected Conduct" *ad nauseam* in their instructions: Breathitt (29), Charleston (45), DeKalb (15), Harford (25), Irvington (53), Tucson

(20). "Repetitious instructions which place undue emphasis on matters favorable to either side constitute reversible error," *Flentie v. Am. Cmty. Stores Corp.*, 389 F.2d 80, 83 (8th Cir. 1968), and the repetition here exceeds what courts have found prejudicial, *e.g.*, *Mack v. Precast Indus., Inc.*, 120 N.W.2d 225, 229 (Mich. 1963) (reversible error where burden of proof was repeated 16 times); *see also United States v. Schilleci*, 545 F.2d 519, 526 (5th Cir. 1977) (reversible error where trial court likely caused "undue concentration on a specific paragraph" of instructions); *United States v. Jones*, 353 F.3d 816, 819 (9th Cir. 2003) (cautioning against "overemphasis of isolated parts" of jury instructions). Because the improper Section 230 instruction permeates the entire set, any error is unlikely to be harmless. *See Sidibe v. Sutter Health*, 103 F.4th 675, 705 (9th Cir. 2024) (court must consider "cumulative error" in deciding whether error in instructions was harmless).

Defendants' repetition of this tendentiously defined term also violates the mandate that jury instructions should be "simple" and "use language that laypersons can understand." Manual on Complex Lit., Fourth, § 12.431. By requiring the reader to turn to the definition repeatedly, defined terms introduce excessive ambiguity. This concern is magnified where, as here, the definition itself is "cumbersome" (spanning 3 full pages). *See LG Philips LCD Co. v. Tatung Co. of Am.*, 2005 WL 6219893, at *4 (C.D. Cal. May 5, 2005).

It is also simply unnecessary to repeat Defendants' Section 230 defense in other instructions. It is presumed that jurors will "carefully follow" an instruction once it is given. *Francis v. Franklin*, 471 U.S. 307, 324 (1985). That is why courts generally do not instruct on statute of limitation and preemption and then use the phrase "non-time-barred non-preempted conduct" throughout the instruction set.

Plaintiffs propose that, following a single instruction on immunity, the Court should simply refer to Defendants' "conduct" as it gives remaining instructions, removing further references to "Non-Protected Conduct" or "Protected Conduct." *See supra* [Section 230].

1  **DEFENDANTS' POSITION ON INSTRUCTION 19:**

2      The Court should adopt Defendants' proposed instruction because it informs the jury of the

3  elements of Tucson's negligence claim while minimizing the risk of the jury improperly holding

4  Defendants liable for protected conduct.

5      **Comparative Fault.**  Defendants' instruction states that Defendants claim that Tucson

6  "contributed to causing the harms that the School District alleges," rather than stating that

7  Defendants claim that Tucson "was at fault."  This statement would avoid jury confusion by

8  clarifying that Defendants claim that Tucson contributed to its alleged harms, rather than claiming

9  that Tucson is entirely at fault for those harms.  That statement comports with the remainder of the

10  pattern instruction on contributory negligence (now referred to by courts as comparative fault),

11  which specifies that if the jury applies this defense, "the court will later reduce" any damages, rather

12  than negating them altogether.  *See* RAJI (Civil) FI 19 (7th ed.).

13      **Failure to Warn.**  Defendants oppose Tucson's proposed statement about failure to warn.

14  Defendants do not owe Tucson a legal duty to warn.  Tucson MSJ at 45–48.  But even putting that

15  aside, it is improper to inject failure to warn into the instruction.  The addition goes beyond reciting

16  the elements of Tucson's claim to improperly present an argument that Defendants are liable.  *See*

17  *United States v. Jackson*, 72 F.3d 1370, 1380 (9th Cir. 1995) (affirming rejection of argumentative

18  proposed instructions).  Further, it would risk confusing the jury into thinking that allegations of

19  failure to warn present an alternative basis for finding Defendants negligent without establishing

20  the required elements of negligence.  *See* RAJI (Civil) FI 5 (7th ed.).

21      **Mental Health Harms.**  Defendants propose explaining that to prevail on its negligence

22  claim, Tucson must show that a breach caused Tucson's students to suffer mental health harms,

23  and that those students' harms in turn caused Tucson's alleged damages.  As explained in

24  Defendants' motion for summary judgment, all of Tucson's alleged damages flow from its students'

25  alleged mental health harms caused by their use of Defendants' platforms, including Tucson's

26  allegations that students' "addiction" to the platforms disrupted the school environment.  Tucson

27  MSJ at 7–10.  Defendants' instruction would explain that fact to the jury and clarify that Tucson

28  has no theory that Defendants' platforms directly harmed Tucson in any way.

1    **Statement of Elements.**  Tucson's proposal includes numerous allegations of Defendants'

2    allegedly negligent conduct that are inaccurate, argumentative, and prejudicial, reading more like

3    a complaint than a jury instruction.  Nothing in this Court's Standing Order nor the pattern

4    instructions permits injecting arguments into the recitation of elements, let alone inflammatory

5    accusations that Defendants "deliberately target[ed] school-aged children" or references to

6    contested concepts such as "addiction."  *See United States v. Shafi*, 252 F. Supp. 3d 787, 793 (N.D.

7    Cal. 2017) (an "element is a constituent part of a claim that must be proved for the claim to

8    succeed[.]" (internal quotation omitted)); *United States v. Jackson*, 72 F.3d 1370, 1380 (9th Cir.

9    1995) (affirming rejection of argumentative proposed jury instructions).

10    **Protected Conduct.**  Defendants propose specifying that Tucson must show that

11    "Defendants' Non-Protected Conduct" breached the relevant duty of care and caused Tucson's

12    alleged damages.  Defendants also propose clarifying that the jury cannot hold any Defendant liable

13    for negligence based on Defendants' Protected Conduct or "Defendants' platforms as a whole."  As

14    explained in Defendants' briefing regarding the instruction addressing Section 230 and the First

15    Amendment, the jury cannot be permitted to hold Defendants liable for any harms allegedly caused

16    by their Protected Conduct.  *See* Defendants' Position on Proposed Instruction 18 ("Protection for

17    Publishing and Expressive Activity").  Referencing these protections again when instructing on the

18    elements of Tucson's claims is warranted to explain to the jury how to apply these highly complex

19    legal concepts to the specific claims and elements.  Without such an explanation, there is a serious

20    risk that the jury will hold Defendants liable on protected conduct.  Especially in a case this

21    complex, it is proper to "repeatedly remind[]" the jury of "the proper legal standard."  *See United*

22    *States v. Ancheta*, 38 F.3d 1114, 1116–17 (9th Cir. 1994) (finding no error where jury "instructions

23    repeatedly and exhaustively reminded the jury of the proper legal standard").

24

25

26

27

28

**IV.**     **SECOND CLAIM – PUBLIC NUISANCE**

**Jury Instruction # 20**

**Public Nuisance**±

*[*±*Defendants' proposed language is in* <span style="color:blue">blue text</span>.   *Tucson's proposed language is in* <span style="color:red">red text</span>. *Tucson argues that this instruction should be given earlier—between Negligence and Burden of Proof.]*

Tucson Unified School District's second claim is public nuisance.  Tucson Unified School District claims that Defendants caused, created, or contributed to a public nuisance in its schools consisting of interference with the community's right to health [and] safety, and/or education.

A public nuisance is a substantial and unreasonable interference with a right common to the general public.  A right common to the general public is collective in nature and not like the individual right that everyone has not to be assaulted or defamed or defrauded or negligently injured.

An interference with a public right is unreasonable where the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort, or the public convenience, or where the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon a public right.  An interference is also unreasonable if its social utility is outweighed by the gravity of the harm inflicted.  In order to recover on this claim, Tucson Unified School District must prove each of the following elements as to each Defendant:

1. The [Defendant's Non-Protected Conduct] [condition] substantially interfered with the community's [comfortable enjoyment of life or property] [right to public health and safety];

2. The [Defendant's] [Defendants] Non-Protected Conduct intentionally caused, created, or contributed to this interference, or set in motion a force or chain of events resulting in the interference;

3. The interference was unreasonable under the circumstances; and

4. Tucson Unified School District was substantially damaged.

1    In determining whether any Defendant's conduct caused a public nuisance, you must

2  consider only whether each Defendant's Non-Protected Conduct caused a nuisance.  You may not

3  make your determination based on Defendants' platforms as a whole, and you may not make your

4  determination based on consideration of any Defendant's Protected Conduct, even if you find it

5  unreasonable.

6

7  AUTHORITY:    RAJI (Civil) NUISINST 3 (7th ed.)

8    *Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Ariz.*, 712

9    P.2d 914, 917 (Ariz. 1985) (adopting the definition of public nuisance from

10    Restatement (Second) of Torts § 821B).

11    *Mutschler v. City of Phoenix*, 129 P.3d 71, 77 (Ariz. Ct. App. 2006)

12    *Bradford v. City of Tucson*, 573 P.3d 557, 562 (Ariz. Ct. App. 2025), *review*

13    *denied* (Nov. 4, 2025)

14    Restatement (Second) of Torts §§ 821B, 825, 826

15

16

17  DATE SUBMITTED: January 28, 2026

18  DATE REVISED:    [insert date]

19

20

21

22

23

24

25

26

27

28

1    **TUCSON'S POSITION ON INSTRUCTION 20:**

2        **Ordering.** Plaintiffs propose the public nuisance instruction follows the Heeding

3    Presumption instruction and precedes the Burden of Proof instruction.

4        **Public Rights.** Tucson's proposed instruction makes clear that public health and safety, and

5    public education, are both rights common to the public, which is consistent with Arizona law's

6    definition of public nuisance as anything "injurious to health, indecent, offensive to the senses or

7    an obstruction to the free use of property that interferes with the comfortable enjoyment of life or

8    property by an entire community or neighborhood or by a considerable number of persons." Ariz.

9    Rev. Stat. Ann. § 13-2917(A)(1); *see also Mutschler v. City of Phoenix*, 129 P.3d 71, 77 (Ariz. Ct.

10   App. 2006) (noting that a public nuisance is broadly defined and includes damage to "the public

11   health, the public safety, the public peace, the public comfort, or the public convenience" (internal

12   citations omitted)). It is also consistent with Defendants' previous position. *See* ECF No. 1332 at

13   21 (noting Defendants' lack of dispute on Plaintiffs' claim that education is a public right).

14       Tucson's proposed instruction also closely tracks the pattern instruction, only substituting

15   words for clarity or providing additional context grounded in Arizona law. *See* RAJI (Civil)

16   NUIINST 3, 4 (7th ed.). Defendants' proposal misconstrues Arizona law by omitting that the

17   interference is to the "community's comfortable enjoyment of life or property," that a defendant

18   can be liable if it "set in motion a force or chain of events resulting in the interference," and

19   switching out "condition" for "each Defendant['s]" "conduct" in contravention to the pattern

20   instruction. Neither Defendants' sources nor the facts of this case support Defendants' changes to

21   the pattern instruction.

22       "Public education" is appropriate for inclusion because Arizona recognizes the public right

23   to an education and public nuisance is meant to address public rights. Defendants choose to ignore

24   the evidence of this case in its attempt to delete "comfortable enjoyment of life or property" and

25   "the public peace, the public comfort, or the public convenience" from the pattern instruction.

26   Plaintiff will present evidence that Defendants substantially interfered with both.

27

28

**Definition of Unreasonable Interference.** Unlike Tucson's instruction, Defendants' instruction presents an improperly narrow definition of unreasonable interference by omitting well-established, alternative grounds for finding unreasonableness under Arizona law.

> Plaintiff's proposal, by contrast, tracks the language from the Second Restatement on what unreasonable interference means: Circumstances that may sustain a holding that an interference with a public right is unreasonable include . . . [w]hether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or … whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.

Restatement (Second) of Torts § 821B; *see also Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Arizona*, 712 P.2d 914, 922 (Ariz. 1985) (quoting § 821B). Defendants' proposal only includes balancing test language which fails to explain what the jury is meant to balance and does not include what "significant" means. Tucson's instruction captures these alternative bases for finding unreasonableness, whereas Defendants' instruction is improperly limited to a social utility balancing test and therefore risks misleading the jury.

**Causation.** Tucson's instruction recognizes that Defendants need not to have "intentionally caused, created, or contributed" to an interference to a public right to be held liable for public nuisance; rather, Defendants will also be held liable "when its acts 'set in motion a force or chain of events resulting in the invasion.'" *Bradford v. City of Tucson*, 573 P.3d 557, 562 (Ariz. Ct. App. 2025), *review denied* (Nov. 4, 2025) (quoting *Armory Park*, 712 P.2d at 920). Tucson's instruction is thus necessary to prevent the jury from conflating the causation elements of its negligence and public nuisance claims, and from applying a stricter causation standard to the public nuisance claim than Arizona law requires. That the jury must individually determine whether each Defendant caused Tucson's harms will be addressed in a separate instruction and need not be repeated here. *See supra* [Causation – Generally].

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence – Definition]; [Section 230].

**DEFENDANTS' POSITION ON INSTRUCTION 20:**

**Public Rights.**  Defendants oppose Tucson's proposal to reference an interference with the community's right to education because Tucson has not identified any Arizona (or any other) authority recognizing such a right enforceable by a nuisance claim.  Nor has this Court held that Arizona recognizes such a right.  Order Granting in Part and Denying in Part Defendants' Motion to Dismiss The School District and Local Government Entities' Claims of Public Nuisance (Nov. 15, 2024) Dkt. No. 1332 ("Second SD Order") at 23 ("[T]he Court declines to rule on the issue of whether defendants[] have unreasonably interfered with a public right to education.").  Defendants have consistently disputed Tucson's claim that it can enforce a public right to education through a nuisance claim.  *See* Defendants' Motion to Dismiss the School District and Local Government Entities' Master Complaint (Feb. 5, 2024) Dkt. No. 601 at 45; Dkt. No. 723 at 21–22.

Similarly, Defendants oppose instructing the jury regarding an alleged interference with the "comfortable enjoyment of life or property" or "the public peace, the public comfort, or the public convenience" because Tucson has not identified any evidence to support such alleged harms.  Indeed, these claims are referenced nowhere in Tucson's complaint, opposition to the motion to dismiss, or for summary judgment.

**Unreasonableness Standard.**  Defendants also oppose Tucson's proposed addition to the unreasonableness standard.  The parties agreed to the definition of unreasonableness included in the pattern instruction.  RAJI (Civil) NUISNST 3 (7th ed.) n.1 ("Reasonableness is assessed using a balancing test, considering 'the utility and reasonableness of the conduct and balanc[ing] these factors against the extent of the harm inflicted and the nature of the affected [area].'") (quoting Restatement (Second) Torts § 821B)).  Tucson's additional, alternative definition has no basis in the pattern instructions and would risk confusing the jury by offering two different definitions.

**Defendants' Alleged Conduct Must Interfere With a Public Right.**  Defendants also object to Tucson's proposal that the "condition" can be the unreasonable interference with a right common to the general public.  The Restatement states explicitly that the defendant's *conduct* must unreasonably interfere with a public right.  Restatement (Second) Torts § 821B (factors for evaluating nuisances are "[w]hether the *conduct* involves a significant interference . . . ", "whether

1    the *conduct* is proscribed by a statute . . . ", and "whether the *conduct* is of a continuing nature . . . ."

2    (emphasis added)).

3    **Finding as to Each Defendant.**  Defendants propose clarifying that the jury must find that

4    each of the elements is true for each Defendant, as opposed to all Defendants collectively.  That

5    instruction respects the requirement that "the plaintiff has the burden of proving that the conduct

6    of *each defendant* was a cause of the injury."  *Piner,* 962 P.2d at 916 (emphasis added) (quoting

7    Restatement (Second) of Torts § 433B); *see also, e.g.*, *Salica,* 231 P.3d at 952 (same).  Tucson's

8    proposal to merely reference all "Defendants" together would invite the jury to ignore that

9    requirement.  As explained above, under Arizona law, the causation standard for negligence applies

10   equally to nuisance claims.  *See* Defendants' Position on Proposed Instruction 23 ("Causation –

11   Generally").

12   **Protected Conduct.**  Defendants also propose specifying that Tucson must show that

13   "Defendants' Non-Protected Conduct" created the alleged public nuisance and that the jury cannot

14   make this determination based on Defendants' Protected Conduct or Defendants' platforms as a

15   whole.  As explained in Defendants' briefing regarding the instruction addressing Section 230 and

16   the First Amendment, the jury cannot be permitted to hold Defendants liable for any harms

17   allegedly caused by their Protected Conduct.  *See* Defendants' Position on Proposed Instruction 18

18   ("Protection for Publishing and Expressive Activity").  And referencing that instruction here is

19   necessary to explain how the general Section 230 and First Amendment instruction applies to the

20   elements of a nuisance claim; failing to do so could invite the jury to hold Defendants liable based

21   on protected conduct.  *See* Defendants' Position on Proposed Instruction 19 ("Negligence –

22   Definition").

23   Causation Element.  Finally, Defendants oppose Tucson's proposal to change the pattern

24   instruction's statement that Tucson must show that Defendants "caused, created, or contributed to"

25   the interference to add "or set in motion a force or chain of events resulting in the interference."

26   Defendants' proposed language copies the pattern instruction verbatim, and Tucson's proposed

27   addition to the pattern instruction would risk confusing the jury into thinking that an improperly

28   attenuated relationship can show causation.

1              **Jury Instruction # 21 – P**

2              **Damages for Public Nuisance±**

3   *[±Defendants object to this instruction in full.]*

4        If you find that Defendants are liable to Tucson Unified School District on the claim of

5   public nuisance, you must then decide the full amount of money that will reasonably and fairly

6   compensate Tucson Unified School District for any of the following elements of damage proved

7   by the evidence to have resulted from the nuisance:

8      1.  Harm to the schools;

9      2.  Loss of use of the schools; and

10     3.  Discomfort and annoyance to Tucson Unified School District.

11

12  AUTHORITY:     RAJI (Civil) NUISINST 5 (7th ed.).

13

14  DATE SUBMITTED: January 28, 2026

15  DATE REVISED:   [insert date]

**TUCSON'S POSITION ON INSTRUCTION 21:**

Plaintiff's proposed instruction is a near verbatim reproduction of Arizona's pattern instruction on public nuisance damages, with only minor revisions to tailor the pattern to the facts of this case and to insert the parties' names. *See* RAJI (Civil) NUIINST 5 (7th ed.). Defendants have not articulated any reasonable basis for objecting to this instruction, which is relevant and will assist the jury in applying the correct legal framework when assessing damages for Plaintiff's public nuisance claim.

Instead, Defendants argue that the instruction should not be given "because Tucson has failed to show that it is entitled to any recovery for public nuisance," arguing that nuisance requires harm to property, and lack of evidence of loss of use to schools. Tucson Unified School District and Plaintiffs addressed these arguments in their responses to Defendants' Motion to Dismiss and Motion for Summary Judgment and incorporate that briefing here. If the Court allows Tucson Unified School District's Public Nuisance claim to proceed to trial—and it should—the Court should instruct the jury on Public Nuisance Damages as outlined in Tucson Unified School District's proposed instruction.

**DEFENDANTS' POSITION ON INSTRUCTION 21:**

**Tucson is Not Entitled to Instructions on Public Nuisance.**  The Court should decline to include this instruction because Tucson has failed to show that it is entitled to any recovery for public nuisance.  Tucson has proposed the "Hoover Strategic Plan" to compensate for harm allegedly incurred as a result of the public nuisance.  As Defendants previously argued, Tucson has failed to show that it is entitled to recover under that theory.[10]  Tucson MSJ at 38.  Because Arizona nuisance law does not support Tucson's alleged theory of damages, any instruction as to damages for public nuisance is inappropriate.

Moreover, to the extent Tucson seeks to recover its alleged "lost time" and out-of-pocket compensatory damages based on its public nuisance claim, the proposed instruction regarding compensatory damages is sufficient.  *See* Proposed Instruction 34 ("Compensatory Damages").  Tucson does not identify any reason why a separate instruction on damages for its public nuisance claim is necessary, so it could only confuse the jury.  And to the extent Tucson seeks an abatement remedy, that determination would be reserved for the Court, not the jury.  *See Walnut Creek Manor, LLC v. Mayhew Ctr., LLC*, 2010 WL 653561, at *8 (N.D. Cal. Feb. 22, 2010) (courts decide abatement remedies for nuisance after jury finds a nuisance).  Indeed, Tucson's proposed instruction on damages for public nuisance does not reference abatement.

**Tucson Seeks to Improperly Expand Public Nuisance Damages.**  Even if the court allows Tucson to proceed with its public nuisance claim, Tucson's proposed instruction is improper.  Far from being a "near verbatim reproduction" of the pattern, Tucson's proposed instruction deviates from the pattern instruction in material ways and improperly expands what is recoverable as damages under a claim for public nuisance.

The pattern instruction for public nuisance damages is explicitly limited to recovering money to compensate for "harm to the *property*," "loss of use of the *property*" and "discomfort and annoyance to [plaintiff] as an *occupant of the property*." RAJI (Civil) NUISINST 5 (7th ed.).(emphasis added).  That narrow scope reflects Arizona nuisance law, which has only

---

[10] Tucson also may not recover the "Hoover Strategic Plan" as abatement, which in any event is not a question for the jury.

1  recognized public nuisance claims that are tied to damage to property.  *See, e.g.*, *Graber v. City of*
2  *Peoria*, 753 P.2d 1209, 1211 (Ariz. Ct. App. 1988) ("[A] nuisance is a condition which represents
3  an unreasonable interference with another person's use and enjoyment of his property and causes
4  damage."); *Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs.,* 712 P.2d 914, 923 (Ariz.
5  1985) (finding a public nuisance where the use of property to operate a soup kitchen in a residential
6  area "unreasonably and significantly interfere[d] with the public health, safety, peace, comfort, or
7  convenience"); *see also Congress Elementary School Dist. No. 17 of Yavapai Cnty. v. Warren*, 251
8  P.3d 395, 399 (Ariz. Ct. App. 2011) (rejecting the plaintiff's argument that the trial court "erred by
9  confining the concept of public nuisance to interference with the use of land); *Brown v. City of*
10  *Phoenix*, 557 P.3d 321, 328 (Ariz. Ct. App. 2024) ("One who owns land and fails to act to abate a
11  public nuisance originating on that land can be held liable under a public nuisance theory.")
12  (internal quotation marks omitted).  Tucson's proposal would ignore this limitation and permit it to
13  recover under its nuisance claim for nebulous and undefined "harm to the schools" and "loss of use
14  of the schools."  Nothing in Arizona law supports recovery under nuisance for such alleged harms,
15  divorced from any specific harms related to physical property.  Indeed, Tucson does not cite a single
16  authority to support these categories of damages for its nuisance claim.

17          **No Evidentiary Basis.**  Tucson's instruction is also improper because it has presented no
18  evidence of any loss of use of its schools.

19
20
21
22
23
24
25
26
27
28

## V.     ADDITIONAL SUBSTANTIVE INSTRUCTIONS

### Jury Instruction # 22 – P

### Burden of Proof[±]

*[±Defendants object to this instruction in full.  Defendants have proposed edits to the extent this instruction is included over Defendants' objection.  Defendants' proposed language is in* blue text*.  Tucson's proposed language is in* red text*.]*

To establish Defendants' liability, Tucson Unified School District must prove:

1. Defendants were at fault;

2. Tucson Unified School District was harmed; and

3. Tucson Unified School District's damages.

To establish that Tucson Unified School District is partially responsible for the harm that it suffered, Defendants must prove:

1. Tucson Unified School District [contributed to causing the harms that Tucson Unified School District alleges] [was at fault].

It will be your duty to decide the facts.  You must decide the facts only from the evidence presented in court.  You must not speculate or guess about any fact.  You must not be influenced by sympathy or prejudice.


AUTHORITY:          RAJI (Civil) FI 7 (7th ed.).

DATE SUBMITTED: January 28, 2026

DATE REVISED:     [insert date]

1    **TUCSON'S POSITION ON INSTRUCTION 22:**

2        **Instruction is Warranted.** Tucson's proposed instruction is drawn from Arizona's pattern

3    instructions on fault, which are expressly "drafted for negligence claims" and therefore applicable

4    to this case. RAJI (Civil) FI Intro. 1 (7th ed.). Defendants' argument that the instruction is

5    duplicative of the parties' "Negligence" and "Liability" instructions is belied by the pattern, which

6    includes—within its fault instructions—separate instructions addressing all three subjects. *See*

7    RAJI (Civil) FI 1 (7th ed.) ("Definition of Negligence"); RAJI (Civil) FI 7 (7th ed.) ("Burden of

8    Proof"); RAJI (Civil) FI 8 (7th ed.) ("Statement of Liability Issues"). Accordingly, Tucson's

9    proposed instruction is warranted.

10        **"Duty of Jury" Instruction.** Defendants' duplicative objection is further undermined by

11    their own proposed alternative, which includes language about the jury's duty to decide facts. That

12    language appears nowhere in the relevant pattern, *see* RAJI (Civil) FI 7 (7th ed.), and unhelpfully

13    reiterates or deviates from the language that the parties have already agreed to use for their "Duty

14    of Jury" instruction in a way that risks confusing the jury. *See* Ninth Circuit Model Instruction §

15    1.4; *see also State v. Mott*, 931 P.2d 1046, 1056 (Ariz. 1997) ("A trial court is not required to give

16    a proposed instruction when its substance is adequately covered by other instructions." (internal

17    citations omitted)).

18        **Comparative Fault Instruction Not Supported by Evidence.** Tucson objects to including

19    an instruction about comparative fault unless and until Defendants demonstrate that the evidence

20    supports instructing the jury about Tucson's alleged negligence. *See supra* [Claims and Defenses];

21    *see infra* [Comparative Fault].

22        **"At Fault" vs. "Contributed to Causing Harm."** Defendants' proposed instruction is

23    also improper because it mischaracterizes the showing required to prevail on that defense by

24    substituting "contributed to causing the harms" for the pattern's "at fault" language. *See infra*

25    [Contributory Negligence/Comparative Fault].

26

27

28

1    **DEFENDANTS' POSITION ON INSTRUCTION 22:**

2          **Tucson's Proposed Instruction is Unnecessarily Repetitive and Prejudicial.**    "Where

3    other instructions properly inform the jury as to the issues it is not error to refuse requested

4    instructions covering the same subject matter." *Gibbons v. Williams*, 378 P.2d 926, 927-28 (Ariz.

5    1963) (citing *Johnson v. Orcutt*, 376 P.2d 557 (Ariz. 1963)); ("A trial court . . . does not err in

6    refusing to give a jury instruction that is . . . adequately covered by the other instructions."); *Hing*

7    *v. Youtsey*, 460 P.2d 646, 651 (Ariz. Ct. App. 1969) (similar).    Both Tucson's and Defendants'

8    proposed Negligence instructions state that, to establish its negligence claim, Tucson must show

9    fault, harm, and damages.    *See* Proposed Instruction 19 ("Negligence – Definition").    The proposed

10    Liability instruction further expands on the issues of fault and comparative fault.    *See* Proposed

11    Instruction 26 ("Liability").    And the proposed preliminary instructions explain how to apply the

12    burden of proof.    *See* Proposed Instructions 4 ("Burden of Proof – Preponderance of the Evidence"),

13    5 ("Burden of Proof – Clear and Convincing Evidence").    This additional standalone, generic

14    instruction as to burden of proof is unnecessary and likely to confuse the jury by providing different

15    formulations of the burden of proof.    *See Aguilar v. Carpenter*, 399 P.2d 124, 127 (Ariz. Ct. App.

16    1965) ("[T]he trial court's refusal to give plaintiff's requested instruction on burden of proof was

17    not erroneous" because other instructions "properly instructed the jury on burden of proof.").

18    Including an unnecessarily repetitive instruction could create prejudicial error.    As the Arizona

19    Supreme Court cautioned, "[b]ecause of the high regard the jury holds for the trial judge,

20    unnecessary repetition may result in creating the impression that the judge feels a certain way on a

21    particular issue and thereby creates prejudicial error." *Orlando v. Northcutt*, 441 P.2 58, 63 (Ariz.

22    1968) (citing *Dubreuil v. Gardner*, 409 P.2d 23 (Ariz. 1965); *Bean v. Gorby*, 292 P.2d 199 (Ariz.

23    1956)).

24          **If the Instruction is Given, Comparative Fault Should Be Included.**    Should the Court

25    decide to include this instruction, Defendants' proposed language addressing comparative fault

26    should also be included.    Defendants' comparative fault affirmative defense is properly asserted,

27    and Tucson has not moved to strike it and did not seek summary judgment on that defense.    *See*

28    Defendants' Position on Proposed Instruction 2 ("Claims and Defenses").    Under Arizona law,

1    "[t]he defense of contributory negligence or of assumption of risk is in all cases a question of fact

2    and shall at all times be left to the jury."  A.R.S. § 12-2505(A); *see also Franklin v. Clemett*, 382

3    P.3d 802, 807 (Ariz. Ct. App. 2016) (recognizing defense of contributory negligence).  And "[a]

4    trial court must instruct the jury on all valid legal theories framed by the pleadings and supported

5    by substantial evidence."  *AMERCO v. Shoen*, 907 P.2d 536, 542 (Ariz. Ct. App. 1995).  "When

6    there is any evidence that a plaintiff is contributorily negligent, that issue must be presented to the

7    jury."  *Aztlan Lodge No. 1, Free & Accepted Masons of Prescott v. Ruffner*, 745 P.2d 611, 613

8    (Ariz. Ct. App. 1987).  As the Arizona Supreme Court stated, a trial court cannot "deprive[] the

9    parties of their right to have the jurors deal with [a plaintiff's] conduct as they [see] fit."  *Williams*

10   *v. Thude*, 934 P.2d 1349, 1352 (Ariz. 1997).

11        Defendants' instruction states that Defendants claim that Tucson "contributed to causing

12   the harms that the School District alleges," rather than stating that Defendants claim that Tucson

13   "was at fault."  This statement would avoid jury confusion by clarifying that Defendants claim that

14   Tucson contributed to its alleged harms, rather than claiming that Tucson is entirely at fault for

15   those harms.  That statement comports with the remainder of the pattern instruction on contributory

16   negligence (now referred to by courts as comparative fault), which specifies that if the jury applies

17   this defense, "the court will later reduce" any damages, rather than negating them altogether.  *See*

18   RAJI (Civil) FI 19 (7th ed.).

19        Should any Defendant fail to present any evidence of comparative fault on the part of

20   Tucson at trial, Tucson may object to the inclusion of comparative fault instructions at the close of

21   evidence.  However, objecting to the instruction at this point is premature and invades the province

22   of the jury.  *See Gunnell v. Ariz. Pub. Serv. Co.*, 46 P.3d 399, 405 (Ariz. 2002) ("[I]n a negligence

23   case, the jury is the sole arbiter of fact and law as to the defenses of contributory and comparative

24   negligence.").

25

26

27

28

**Jury Instruction # 23**

**Causation – Generally±**

*[±Defendants' proposed language is in blue text. Tucson's proposed language is in red text.]*

Before you can find any [party] [Defendant] at fault, you must find [that party's negligence] [the specific Defendant's Actionable Non-Protected Conduct] was a cause of Tucson Unified School District's harm. [Negligence] [As used throughout these instructions, "Actionable Non-Protected Conduct" is Non-Protected Conduct that you find (1) breached the Defendant's duty to use ordinary care or (2) substantially and unreasonably interfered with a public right to health or safety.

Actionable Non-Protected Conduct] causes a harm if it helps produce the harm, if the harm would not have happened without the Actionable Non-Protected Conduct, and if it directly caused the harm. There may be more than one cause of a harm.

Tucson Unified School District asserts that the independent wrongful conduct of each Defendant unites to produce a single indivisible injury. When the independent wrongful conduct of more than one defendant contributes to one indivisible injury, you may find each defendant liable even if it is not possible to determine whether or not the wrongful acts of any particular defendant, acting alone, would have caused the same injury.

Each Defendant can be liable only for harms that you determine were caused by that Defendant's Actionable Non-Protected Conduct.

You may not impose liability based on any harm(s) that you believe may have been caused by the Defendant's Protected Conduct, even if you find that Protected Conduct breached the Defendant's duty to use ordinary care or substantially and unreasonably interfered with a public right to health or safety.


AUTHORITY:        RAJI (Civil) FI 6 (7th ed.).

                  *Piner v. Superior Ct. in and for Cnty. of Maricopa*, 962 P.2d 909, 915–16 (Ariz. 1998 (en banc)

*Salica v. Tucson Heart Hosp.-Carondelet*, 231 P.3d 946, 950 (Ariz. Ct. App. 2010)

*Am. Motorcycle Assn. v. Superior Ct.*, 20 Cal. 3d 578, 588–89 (1978)

DATE SUBMITTED: January 28, 2026

DATE REVISED:     [insert date]

1    **TUCSON'S POSITION ON INSTRUCTION 23:**

2          Tucson's proposed instruction hews closely with Arizona's pattern instruction on causation.

3    *See* RAJI (Civil) FI 6 (7th ed.). Tucson's proposal only differs in that it inserts the parties' names,

4    replaces the word "injury" with "harm," and adds language addressing the indivisible injury rule—

5    as Tucson will present evidence that Defendants all contributed to an indivisible harm.

6          **Indivisible Injury.** Arizona law recognizes the indivisible injury rule, which eliminates the

7    requirement that a plaintiff prove their injury would not have happened ***but-for*** a particular

8    defendant's negligence "when multiple tortfeasors are alleged to have created an indivisible injury

9    and each defendant's causal role is potentially indeterminable." *Salica v. Tucson Heart Hosp.-*

10   *Carondelet, L.L.C.*, 231 P.3d 946, 950 (Ariz. Ct. App. 2010). In such cases, Arizona requires that

11   a plaintiff prove only that each defendant's actions "were 'a ***substantial factor***' in producing the

12   injury." *Id.*; *see also Piner v. Superior Ct. in and for Cnty. of Maricopa*, 962 P.2d 909, 910-11

13   (Ariz. 1998) (en banc) (emphasis added). Because Tucson plans on presenting evidence that

14   Defendants collectively caused an indivisible harm, the substantial factor test must govern.

15   Defendants' proposed instruction ignores this standard by directing the jury to apply traditional

16   but-for for principles and limit liability to "harm[s that] would not have happened without" a

17   particular Defendant's negligence.

18         Defendants' objection that the indivisible injury rule "applies only to the apportionment of

19   damages" and that Tucson's instruction "is an improper attempt to reduce Tucson's burden to show

20   causation" rests on a fundamental misunderstanding of the rule and Tucson's proposed language.

21   The indivisible injury rule affects *both* causation analysis and the jury's calculation of damages. In

22   terms of causation, the indivisible injury rule replaces the traditional but-for requirement with the

23   substantial factor test, but—as Tucson's proposed language captures—still requires the plaintiff to

24   prove "that the conduct of *each defendant* was a cause of the injury." *Piner*, 962 P.2d at 916

25   (emphasis added); *see also Salica*, 231 P.3d at 952 (rejecting the argument that "existence of

26   multiple defendants has no impact on plaintiff's burden to prove causation" as "an incorrect

27   statement of the law"). Tucson addresses this standard in greater detail in the following two

28   instructions. *See* [Causation – Substantial Factor]; [Causation – Multiple Causes].

In terms of damages, the indivisible injury rule requires the jury to "multiply . . . the total amount of damage sustained by the plaintiff [by] the percentage of fault of each tortfeasor," and assigns defendants the burden of proving how fault should be apportioned. *Piner*, 962 P.2d at 916 (interpreting Ariz. Rev. Stat. Ann. § 12-2506—Arizona's statute on apportionment); *see also Salica*, 231 P.3d at 953. Tucson addresses this standard through the instruction [Liability – Relative Degrees of Fault].

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence – Definition]; [Section 230]

1  **DEFENDANTS' POSITION ON INSTRUCTION 23:**

2  **Instruction Applies to Negligence and Nuisance Claims.**  Defendants propose properly

3  instructing the jury that the causation standards in this instruction apply to both of Tucson's claims.

4  Under Arizona law, the causation standard outlined in this instruction applies equally to negligence

5  and nuisance claims.  *See* Tucson MSJ Reply at 2–3; *see, e.g.*, *Brown v. City of Phoenix*, 557 P.3d

6  321, 328 (Ariz. Ct. App. 2024) ("[C]ausation is an essential element of a public nuisance claim");

7  *Thienes v. City Center Exec. Plaza, LLC*, 2016 WL 5219858, at *13 (Ariz. Ct. App. Sept. 22, 2016)

8  (nuisance claim required that defendant created condition that was a "substantial factor" in causing

9  plaintiff's harm).

10  **Protected Conduct.**  The Court should adopt Defendants' proposed instruction because it

11  reflects the Court's prior ruling that Tucson's recovery may not be premised on "protected

12  conduct," and is instead limited to "Actionable Non-Protected Conduct."  As explained in

13  Defendants' briefing regarding the instruction addressing Section 230 and the First Amendment,

14  the jury cannot be permitted to hold Defendants liable for any harms allegedly caused by their

15  Protected Conduct.  *See* Defendants' Position on Proposed Instruction 18 ("Protection for

16  Publishing and Expressive Activity").  Referencing these protections again when instructing on the

17  elements of Tucson's claims is warranted to explain to the jury how to apply these highly complex

18  legal concepts to the specific claims and elements.  Without such an explanation, there is a serious

19  risk that the jury will hold Defendants liable based on protected conduct.  By contrast, Tucson's

20  proposed statement that "Negligence causes a harm if it helps produce the harm" invites that error

21  because it makes no distinction between protected and non-protected conduct.  *See* Defendants'

22  Position on Proposed Instructions 18 ("Protection for Publishing and Expressive Activity"), 19

23  ("Negligence – Definition").

24  **Single Indivisible Injury.**  This proposed jury instruction is the first time Tucson has raised

25  this "single indivisible injury" theory in this case, and it has presented no evidence or argument that

26  its injuries are indivisible (and they are not).

27  But even if the injuries were indivisible, Tucson's discussion of the "single indivisible

28  injury" misstates Arizona law and is an improper attempt to reduce Tucson's burden to show

causation.  While Tucson's proposed instruction suggests it need not prove that each Defendant's actionable conduct caused Tucson's injury, that statement is contrary to Arizona law: Tucson bears the "burden of proving that the conduct of *each defendant* was a cause of the injury."  *Piner v. Super. Ct.*, 962 P.2d 909, 916 (Ariz. 1998) (emphasis added) (quoting Restatement (Second) of Torts § 433B).  Cases addressing the "single indivisible injury" rule, on which Tucson relies, are inapposite because that rule applies only to the apportionment of *damages*, not to the determination of liability.  *See id.* at 915 (explaining that damages are apportioned among "each tortfeasor whose conduct caused injury");  *Salica*, 231 P.3d at 952 (same); *Potts v. Litt*, 171 Ariz. 98 (App. 1991) (same); *see also Piner*, 962 P.2d at 916–17 (where one or more defendants is found liable for causing an indivisible harm, the factfinder must "allocate a percentage of fault" to each tortfeasor to determine the apportionment of damages).

Because this doctrine governs only the apportionment of damages among tortfeasors, it in no way abrogates Tucson's threshold burden of establishing that each Defendant is liable for its alleged injuries, including satisfying Arizona's causation requirements.  *See, e.g.*, *Piner*, 962 P.2d at 915 ("[E]ach tortfeasor whose *conduct caused the injury* is severally liable only for a percentage of the total damages recoverable by the plaintiff, the percentage based on each actor's allocated share of fault." (emphasis added)); *Cramer v. Starr*, 375 P.3d 69, 73 (Ariz. 2016) (same).  Tucson's citation to an out-of-state case is entirely irrelevant.  *See Am. Motorcycle Assn. v. Super. Ct.*, 578 P.2d 899 (Cal. 1978) (applying California's joint-and-several liability law to a plaintiff's claim for injuries sustained during a cross-country motorcycle race).

Further, Tucson falsely asserts that where multiple defendants are each found liable for causing an indivisible injury, all of those defendants may be held liable for the whole injury.  That claim describes joint and several liability, which the Arizona legislature abolished by statute, replacing it with a system that requires the court to allocate responsibility among all parties who caused the injury, whether or not they are present in the action."  *Piner*, 962 P.2d at 915; *see also id.* ("Under the present version of UCATA, 'the liability of each defendant is several only and not joint'").

1

**Jury Instruction # 24 – P**

2

**Causation – Multiple Causes±**

3

*[±Defendants object to this instruction in full.]*

4      There can be more than one cause of Tucson Unified School District's harm.  One person's

5   negligence may combine with another factor to cause harm.  If you find that Defendants' negligence

6   was a substantial factor in causing Tucson Unified School District's harm, then that Defendant is

7   liable for the harm.  A Defendant cannot avoid responsibility just because some other person,

8   condition, or event was also a substantial factor in causing Tucson Unified School District's harm.

9

10   AUTHORITY:          *State v. Aragon in and for Cnty. of Pima*, 505 P.3d 657, 660–61 (Ariz. 2022)

11                             (citing Restatement (Second) of Torts § 433 (1965))

12                             *Piner v. Super. Ct. in and for Cnty. of Maricopa*, 962 P.2d 909, 915 (Ariz.

13                             1998) (en banc)

14                             *In re: JUUL Labs, Inc. Mktg., Sales Pracs. and Prods. Liab. Litig.*, 3:19-md-

15                             02913-WHO (N.D. Cal.), ECF No. 4006

16

17

18   DATE SUBMITTED: January 28, 2026

19   DATE REVISED:        [insert date]

20

21

22

23

24

25

26

27

28

1    **TUCSON'S POSITION ON INSTRUCTION 24:**

2         Although Arizona's pattern instructions do not explicitly discuss multiple causation,

3    Tucson's proposed instruction is necessary to assist the jury in evaluating causation where, as here,

4    defendants argue that there were alternative causes to the plaintiff's injury. *Gomez v. Am. Med. Sys.*

5    *Inc*., 2021 WL 12313068, at *15 (D. Ariz. June 17, 2021) (granting the defendant's request for a

6    superseding cause instruction because "the facts support giving it," even though it "is not included

7    in the model instructions"); *see also Dupray v. JAI Dining Servs. (Phoenix), Inc*., 432 P.3d 937,

8    944-45 (Ariz. Ct. App. 2018) (reversing trial court's refusal to give an intervening and superseding

9    cause instruction where the parties presented evidence of such a cause, and "[t]he trial court's

10   general causation instruction did not address this issue").

11        Tucson's instruction thus makes clear that Defendants cannot escape liability merely by

12   pointing the finger at another party—whether that be the "poverty," "homelessness," and "gun

13   violence" that Defendants have historically argued to be the source of Harford's harms, ECF No.

14   2290 at 1-2—or the "individuals who post dangerous 'challenges' on Defendant's platforms,

15   commit crimes, or post threats on Defendants' platforms," which Defendants insist on mentioning

16   to the jury through jury instructions.

17

18

19

20

21

22

23

24

25

26

27

28

1    **DEFENDANTS' POSITION ON INSTRUCTION 24:**

2          Defendants object to this proposed instruction because it is redundant, unnecessary, and

3    confusing.

4          **Tucson's Proposed Instruction is Redundant and Unnecessary.**  There is no pattern

5    instruction addressing "multiple causes," and there is no need to fashion one here because this

6    concept is already addressed in other instructions.  *See* Proposed Instructions 23 ("Causation –

7    Generally"), 25 ("Causation – Substantial Factor"), 26 ("Liability"), and 27 ("Liability – Relative

8    Degrees of Fault").  Both Tucson's and Defendants' proposed "Substantial Factor" instructions

9    state that there may be more than one cause of Tucson's harm.  *See* Proposed Instruction 25

10   ("Causation – Substantial Factor").  Further, Defendants' Proposed Instructions 26 ("Liability")

11   and 27 ("Liability – Relative Degrees of Fault") clearly state that a finding of fault as to one

12   Defendant does not eliminate the possibility of finding fault as to another Defendant or actor.  Taken

13   together, these instructions explain to the jury that multiple factors may contribute to a harm, and

14   fault is to be apportioned among all actors who caused harm.  For these reasons, Tucson's proposed

15   standalone instruction on "multiple causes" is, thus, superfluous and unnecessary.  *See A Miner*

16   *Contracting, Inc. v. Safeco Ins. Co. of Am.*, 2021 WL 4477441, at *4 (Ariz. Ct. App. 2021)

17   (rejection of two of plaintiff's requested instructions was not error because "read as a whole, the

18   instructions given" properly addressed the required elements of the claim); *AMERCO*, 907 P.2d at

19   542–45 (rejecting several proposed instructions as repetitive and stating that "[t]he trial

20   court . . . need not instruct on every refinement suggested by counsel") (quoting *Pioneer Roofing*

21   *v. Mardian Constr. Co.*, 733 P.2d 652, 659 (Ariz. Ct. App. 1986)); *State v. Hoskins*, 14 P.3d 997,

22   1015 (Ariz. 2000) (stating the trial court is not required to give a proposed jury instruction if its

23   substance is adequately covered by other instructions and concluding the trial court did not err in

24   omitting a proposed jury instruction because it would have been superfluous in light of other

25   instructions).

26         **Tucson's Proposed Instruction Would Cause Juror Confusion.**  Moreover, including

27   this standalone instruction would risk confusing the jury.  The sentence stating that, "If you find

28   that Defendants' negligence was a substantial factor in causing Tucson Unified School District's

harm, then that Defendant is liable for the harm," would improperly suggest to the jury that this instruction provides an alternative standard for satisfying the causation element that is separate and independent of the accurate causation standard proposed by Defendants in Proposed Instruction 23 ("Causation – Generally").

**No Case Law Supports Giving a Standalone Instruction on "Multiple Causes."**  Neither of the cases cited by Tucson supports the inclusion of a standalone "multiple causes" instruction. In *State v. Aragon in and for Cnty. of Pima*, 505 P.3d 657, 660–61 (Ariz. 2022), the Court evaluated whether an "intervening cause" instruction was appropriate.  In *Piner*, 962 P.2d 909, the Court addressed the propriety of instructions on apportioning damages and the scope of the indivisible injury rule.

**Jury Instruction # 25**

**Causation – Substantial Factor[±]**

*[±Defendants' proposed language is in blue text.  Tucson's proposed language is in red text.]*

[A] [Actionable Non-Protected Conduct is a cause of a harm only if it was a] "substantial factor" in bringing about the [causing] harm [is a factor that a reasonable person would consider to have contributed to the harm].  To be a "substantial factor," the conduct must be foreseeable and must be more than a remote or trivial factor.  It does not have to be the only cause of the harm.  Conduct is not a substantial factor in causing harm if the same harm would have occurred without the conduct.  In determining whether [Actionable Non-Protected C][c]onduct is a "substantial factor" in causing harm, you [should] [may] consider (a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it; (b) whether the Defendant's [Actionable Non-Protected C][c]onduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which [the] Defendant[s] [are] [is] not responsible; and (c) lapse of time between the Actionable Non-Protected Conduct and the alleged harm.

AUTHORITY:    *Barrett v. Harris*, 86 P.3d 954, 960–61 (Ariz. Ct. App. 2004) (citing Restatement (Second) of Torts §§ 431, 433 (1965))

*Piner v. Super. Ct. in and for Cnty. of Maricopa*, 192 Ariz. 182, 962 P.2d 909, 915 (Ariz. 1998) (en banc)

*Salica v. Tucson Heart Hosp.-Carondelet, L.L.C.*, 224 Ariz. 414, 418-19, 231 P.3d 946, 950-51 (Ariz Ct. App. 2010)

*Thompson v. Better-Bilt Aluminum Prods. Co.*, 171 Ariz. 550, 554 n.6, 832 P.2d 203, 207 n.6  (Ariz. 1992) (citing Restatement (Second) of Torts § 433) Restatement (Second) of Torts § 432

DATE SUBMITTED:   January 28, 2026

DATE REVISED:    [insert date]

1    **TUCSON'S POSITION ON INSTRUCTION 25:**

2        **Ordering.** This instruction should follow the Causation – Generally instruction and precede

3    the Causation – Multiple Causes instruction.

4        **Indivisible Injury.** Defendants' proposed instruction suggests to the jury that it must find

5    each Defendant's conduct to be the but-for cause of Tucson's harm for it to qualify as a "substantial

6    factor." This is legal error. Where, as here, a plaintiff suffered an indivisible injury at the hands of

7    multiple defendants, the substantial factor test requires the plaintiff to prove only that each

8    defendant "contributed to the final result"—not that each defendant's negligence was a "necessary

9    condition for the occurrence of the injury." *Salica v. Tucson Heart Hosp.-Carondelet, L.L.C.*, 2331

10   P.3d 946, 950-52 (Ariz. Ct. App. 2010); *see also Piner v. Superior Ct. in and for Cnty. of Maricopa*,

11   962 P.2d 909, 916 (Ariz. 1998) (en banc). As Tucson's instruction explains, whether a cause

12   "contributed" to a harm is evaluated under a reasonable person standard. *See* Restatement (Second)

13   of Torts § 431, cmt. a; *see also Barrett v. Harris*, 86 P.3d 954, 961 (Ariz. Ct. App. 2004).

14       Both parties cite to § 431 of the Restatement and *Barrett* to support their respective

15   instructions, but neither authority supports the improper but-for language Defendants propose in

16   cases involving an indivisible harm. As § 431 explains, "[t]he word 'substantial' is used to denote

17   the fact that the defendant's conduct has such an effect in producing the harm ***as to lead reasonable***

18   ***men to regard it as a cause***, using that word in the popular sense, . . . ***rather than*** in the so-called

19   'philosophic sense,' which includes every one of the great number of events without which any

20   happening would not have occurred." Restatement (Second) of Torts § 431, cmt. a. *Barrett*

21   similarly notes that "'substantial factor' is used to differentiate events that lead to the harm but

22   would not be thought of by ***reasonable persons*** to have caused the harm." 86 P.3d at 961 (citing

23   § 431, cmt. a). To the extent that *Barrett* contains but-for language, that language is inapplicable

24   here; *Barrett* does not involve an indivisible injury and therefore provides no basis for extending

25   but-for principles to this case.

26       **Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra*

27   [Negligence – Definition]; [Section 230].

28

1    **DEFENDANTS' POSITION ON INSTRUCTION 25:**

2         The Court should adopt Defendants' proposed instruction because it accurately reflects

3    Arizona law while also incorporating the Court's prior order on protected content. *See* SD Order

4    at 13–14.

5         **Definition of "Substantial Factor."**  Defendants' definition of "substantial factor"—that

6    "[c]onduct is not a substantial factor in causing harm if the same harm would have occurred without

7    the conduct"—accurately reflects Arizona law.  This definition is taken directly from the substantial

8    factor test set forth in the Restatement, which has been adopted by Arizona courts.  Restatement

9    (Second) of Torts §§ 431("negligent conduct is a legal cause of harm" if it "is a substantial factor

10   in bringing about the harm"), 432(1) ("negligent conduct is not a substantial factor in bringing about

11   the harm . . . if the harm would have been sustained even if the actor had not been negligent"); *see*

12   *also Barrett v. Harris*, 86 P.3d 954, 961 (Ariz. Ct. App. 2004) ("Arizona courts follow the

13   substantial-factor test set forth in Restatement § 431").  Tucson's statement that a substantial factor

14   "is a factor that a reasonable person would consider to have *contributed* to the harm" misstates

15   Arizona law.  The substantial factor test asks whether "the defendant's conduct has such an effect

16   in producing the harm as to lead reasonable men to regard it as a *cause*," not merely "a

17   contribution."  Restatement (Second) of Torts § 431, cmt. a; *Barrett*, 86 P.3d at 961 ("[T]he term

18   'substantial factor' is used to differentiate events that lead to the harm but would not be thought of

19   by reasonable persons to have caused the harm.").  Tucson's instruction improperly alters the

20   meaning of "substantial factor" as set forth in the Restatement and embraced by Arizona courts.

21   The cases cited by Tucson do not support its position.  *Salica* states that a plaintiff may recover

22   where multiple defendants "contributed to the final result," but only after clearly establishing that

23   those multiple defendants were negligent. 231 P.3d at 953.  *Salica* does not support expanding the

24   meaning of "substantial factor" from conduct that "caused" harm to include conduct that merely

25   "contributed" to the harm.  *Piner v. Superior Court*, 962 P.2d 909 (Ariz. 1998), does not discuss

26   the substantial factor test at all.

27        **Protected Conduct.**  Defendants' proposed instruction properly acknowledges that conduct

28   that is protected under Section 230 and/or the First Amendment is irrelevant for the purposes of the

substantial factor test in this case. Tucson's proposed instruction, by contrast, fails to clarify to the jury that Defendants cannot be held responsible for harms allegedly stemming from protected conduct. This clarification is necessary in light of the Court's prior order. SD Order at 13–14.

**Jury Instruction # 26**

**Liability±**

*[±Tucson objects to the inclusion of comparative fault in this instruction.  Defendants' proposed language is in blue text.  Tucson's proposed language is in red text.]*

For any Defendant, if you find that the Defendant was not at fault for Tucson Unified School District's negligence or public nuisance claims, then your verdict must be for that Defendant on that claim or claims.

If you find that any Defendant was at fault for Tucson Unified School District's negligence or public nuisance claim, then that Defendant is liable to Tucson Unified School District and your verdict must be for Tucson Unified School District as to that Defendant on that claim or claims. For each claim, you may find that one or more Defendants is at fault, one or more Defendants is not at fault, that all Defendants are at fault, or that no Defendants are at fault.

If you find that any Defendant was liable on either claim, you should then determine the full amount of Tucson Unified School District's damages and enter that amount on the verdict form. You should then consider Defendants' claim that Tucson Unified School District [was at fault] [contributed to causing the harms that Tucson Unified School District alleges].


AUTHORITY:        RAJI (Civil) FI 8 (Statement of Liability Issues - Comparative Fault) (7th ed.)


DATE SUBMITTED: January 28, 2026

DATE REVISED:        [insert date]

1    **TUCSON'S POSITION ON INSTRUCTION 26:**

2        The parties' proposed language follows Arizona's pattern instruction on liability where only

3    "one plaintiff and one defendant each claim the other was at fault." *See* RAJI (Civil) FI 8 (7th ed.).

4    The parties revised the pattern to add language regarding liability where more than one Defendant

5    may be at fault, which is the case here. This change is consistent with the drafter's recommendation

6    that the pattern "will need modification if the case involves additional fault claims," such as

7    additional defendants. *Id.*

8        **Comparative Fault Instruction Not Supported by Evidence.** Tucson objects to including

9    an instruction about comparative fault unless and until Defendants demonstrate that the evidence

10   supports instructing the jury about Tucson's alleged negligence. *See supra* [Claims and Defenses];

11   *see infra* [Comparative Fault].

12       **"At Fault" vs. "Contributed to Causing Harm."** Defendants' proposed instruction is also

13   improper because it mischaracterizes the showing required to prevail on that defense by substituting

14   "contributed to causing the harms" for the pattern's "at fault" language. *See infra* [Contributory

15   Negligence/Comparative Fault].

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **DEFENDANTS' POSITION ON INSTRUCTION 26:**

2         **Reference to Comparative Fault.**    Defendants' proposed language addressing

3    comparative fault should be included in this instruction.  Defendants' comparative fault affirmative

4    defense is properly asserted, and Tucson has not moved to strike it and did not seek summary

5    judgment on that defense.  *See* Defendants' Position on Proposed Instruction 2 ("Claims and

6    Defenses").  Under Arizona law, "[t]he defense of contributory negligence or of assumption of risk

7    is in all cases a question of fact and shall at all times be left to the jury."  A.R.S. § 12-2505(A); *see*

8    *also Franklin*, 382 P.3d at 807 (recognizing defense of contributory negligence).  And "[a] trial

9    court must instruct the jury on all valid legal theories framed by the pleadings and supported by

10   substantial evidence."  *AMERCO*, 907 P.2d at 542.  "When there is any evidence that a plaintiff is

11   contributorily negligent, that issue must be presented to the jury."  *Aztlan*, 745 P.2d at 613.  As the

12   Arizona Supreme Court stated, a trial court cannot "deprive[] the parties of their right to have the

13   jurors deal with [a plaintiff's] conduct as they [see] fit."  *Thude*, 934 P.2d at 1352.  Should

14   Defendants fail to present any evidence of comparative fault on the part of Tucson at trial, Tucson

15   may object to the inclusion of comparative fault instructions at the close of evidence.  However,

16   objecting to the instruction at this point is premature and invades the province of the jury.  *See*

17   *Gunnell*, 46 P.3d at 405 ("[I]n a negligence case, the jury is the sole arbiter of fact and law as to the

18   defenses of contributory and comparative negligence.").

19        **Referencing Contribution to Harm.**  Defendants' instruction states that Defendants claim

20   that Tucson "contributed to causing the harms that the School District alleges," rather than stating

21   that Defendants claim that Tucson "was at fault."  This statement would avoid jury confusion by

22   clarifying that Defendants claim that Tucson contributed to its alleged harms, rather than claiming

23   that Tucson is entirely at fault for those harms.  That statement comports with the remainder of the

24   pattern instruction on contributory negligence, which specifies that if the jury applies this defense,

25   "the court will later reduce" any damages, rather than negating them altogether.  *See* RAJI (Civil)

26   FI 12 (7th ed.).

27

28

**Jury Instruction # 27**

**Liability – Relative Degrees of Fault±**

*[±Defendants' proposed language is in blue text.]*

If you find more than one Defendant at fault for Tucson Unified School District's harm, you must then determine the relative degrees of fault of all those whom you find to have been at fault.

The relative degrees of fault are to be entered on the verdict form as percentages of the total fault for Tucson Unified School District's harm.

The fault of one person may be greater or lesser than that of another, but the relative degrees of all fault, including Tucson Unified School District, must add up to 100%.  This will be clear from the verdict form.


AUTHORITY:          RAJI (Civil) FI 11 (Determining Relative Degrees of Fault – Comparative Fault) (7th ed.)



DATE SUBMITTED: January 28, 2026

DATE REVISED:      [insert date]

**TUCSON'S POSITION ON INSTRUCTION 27:**

Tucson's proposed instruction is a near verbatim reproduction of Arizona's pattern instruction on relative degrees of fault, with the only change being the insertion of the parties' names. *See* RAJI (Civil) FI 8 (7th ed.).

**Comparative Fault Instruction Not Supported by Evidence.** Tucson objects to including an instruction about comparative fault—including Defendants' inclusion of the language that "relative degrees of all fault . . . include[es] Tucson" here—unless and until Defendants demonstrate that the evidence supports instructing the jury about Tucson's alleged negligence. *See supra* [Claims and Defenses]; *see infra* [Comparative Fault].

1    **DEFENDANTS' POSITION ON INSTRUCTION 27:**

2        The Court should apply Defendants' proposed instruction because it is consistent with

3    Arizona state law.

4        **Reference to Tucson's Comparative Fault.**  Including a specific reference to Tucson

5    Unified School District in the sentence addressing "relative degrees of fault" is necessary to clarify

6    for the jury that a finding of fault by any of the Defendants does not alter the need to factor in

7    Tucson Unified School District's comparative fault.

8        As discussed above, Defendants are entitled to have the jury be instructed on comparative

9    fault because they assert comparative fault as a defense.  Defendants' comparative fault affirmative

10   defense is properly asserted, and Tucson has not moved to strike it and did not seek summary

11   judgment on that defense.  *See* Defendants' Position on Proposed Instruction 2 ("Claims and

12   Defenses").  Under Arizona law, "[t]he defense of contributory negligence or of assumption of risk

13   is in all cases a question of fact and shall at all times be left to the jury."  A.R.S. § 12-2505(A); *see*

14   *also Franklin*, 382 P.3d at 807 (recognizing defense of contributory negligence).  And "[a] trial

15   court must instruct the jury on all valid legal theories framed by the pleadings and supported by

16   substantial evidence."  *AMERCO*, 907 P.2d at 542.  "When there is any evidence that a plaintiff is

17   contributorily negligent, that issue must be presented to the jury."  *Aztlan*, 745 P.2d at 613.  As the

18   Arizona Supreme Court stated, a trial court cannot "deprive[] the parties of their right to have the

19   jurors deal with [a plaintiff's] conduct as they [see] fit."  *Thude*, 934 P.2d at 1352.  Should any

20   Defendant fail to present any evidence of comparative fault on the part of Tucson at trial, Tucson

21   may object to the inclusion of comparative fault instructions at the close of evidence.  However,

22   objecting to the instruction at this point is premature and invades the province of the jury.  *See*

23   *Gunnell*, 46 P.3d at 405 ("[I]n a negligence case, the jury is the sole arbiter of fact and law as to the

24   defenses of contributory and comparative negligence.").

25       Defendants' proposed instruction is also consistent with the relevant statute and Arizona

26   caselaw.  A.R.S. § 12-2506 requires the trier of fact to determine and apportion "[t]he relative

27   degree of fault of the *claimant*, and the relative degrees of fault of all defendants and

28   nonparties . . . as a whole at one time."  A.R.S. § 12-2506(C) (emphasis added); *see also Cramer*,

375 P.3d at 72 ("[T]he trier of fact assesses percentages of fault after considering the fault of *all persons* who contributed to the alleged injury.") (citing A.R.S. § 12–2506(B)) (emphasis added). Defendants' proposal makes it explicitly clear that jurors must consider the relative fault of the claimant in their apportionment.  Arizona courts have "repeatedly held" that "the trier of fact must consider the fault of all parties and properly named nonparties in assessing and allocating percentages of fault." *Id.* at 73 (citing *State Farm Ins. Co. v. Premier Manufactured Sys., Inc.*, 172 P.3d 410, 416 (Ariz. 2007) (stating that § 12–2506(F)(2)'s "broad definition of fault" requires the trier of fact "to compare fault among all tortfeasors"); *Dietz v. Gen. Elec. Co.*, 821 P.2d 166, 169, 171 (Ariz. 1991) (observing that under UCATA, the trier of fact must "consider the fault of all persons who contributed to the alleged injury," and each tortfeasor is "responsible for paying for his or her percentage of fault *and no more*") (citing § 12–2506).

**Jury Instruction # 28 – P**

**Unusually Susceptible Plaintiff[±]**

*[±Defendants object to this instruction in full.  Defendants have proposed edits to the extent this instruction is included over Defendants' objection.  Defendants' proposed language is in blue text. Tucson's proposed language is in red text.]*

Tucson Unified School District is not entitled to compensation for any condition that pre-existed the fault of [all Defendants] [any Defendant].  However, if Tucson Unified School District had any pre-existing condition that was aggravated or made worse by [Defendants'] [a Defendant's] fault, you must decide the full amount of money that will reasonably and fairly compensate Tucson Unified School District for that aggravation or worsening.

You must decide the full amount of money that will reasonably and fairly compensate Tucson Unified School District for all damages caused by the fault of [Defendants] [a Defendant], even if Tucson Unified School District was more susceptible to harm than a typical school district would have been, and even if a typical school district would not have suffered similar harm.

AUTHORITY:      RAJI (Civil) PIDI 2 (Pre-Existing Condition, Unusually Susceptible Plaintiff) (7th ed.)

Gasiorowski v. Hose, 897 P.2d 678, 685 (Ariz. Ct. App. 1994)

DATE SUBMITTED: January 28, 2026

DATE REVISED:      [insert date]

**TUCSON'S POSITION ON INSTRUCTION 28:**

**Unusually Susceptible Plaintiff Instruction is Warranted.** Tucson Unified School District's instruction is the standard Arizona pattern instruction where there exist issues of aggravation or worsening of a pre-existing condition and/or injury to an unusually susceptible plaintiff. *See* RAJI (Civil) PIDI 2 (7th ed.). Defendants intend to excuse their conduct by pointing to what they term "the litany of problems facing Tucson [Unified School District]" —including students facing poverty and homelessness, students lacking health coverage and access to basic necessities, substance abuse, threats of gun violence, racial segregation, discrimination, racism, racially disparate discipline, and students who are refugees or undocumented—as the true cause of the mental health issues facing Tucson Unified School District's students. *See, e.g.*, ECF No. 2290 at 1, 3-4 (opening their MSJ brief with references to students' "lack [of] healthcare coverage and access to basic necessities," the district's "history of racial segregation and discrimination," and presence in "one of the most impoverished cities of its size in the nation"). To the extent Defendants intend and are allowed to introduce such evidence, Tucson Unified School District is entitled to an instruction that would help the jury evaluate the relationship between these "conditions" —which are ongoing, variable, outside of Tucson Unified School District's control, and predate Defendants' conduct—and the harm suffered by Tucson Unified School District due to Defendants' conduct. *See Gasiorowski v. Hose*, 897 P.2d 678, 685 (Ariz. Ct. App. 1994) (finding an unusually susceptible plaintiff instruction appropriate "to give the jury a proper legal context for evaluating the interplay of predisposing susceptibility and precipitating cause.").

Defendants' objection to this instruction takes the narrowest possible view of the established legal principle that a defendant must take the plaintiff as they find them, including pre-existing conditions or vulnerabilities. Defendants insist this instruction applies only in the personal injury context. But the same rationale applies to a plaintiff in any context, particularly where, as here, Defendants apparently intend to argue to the jury that Tucson Unified School District's claimed harms were caused or exacerbated by "the litany" of conditions already existing in the community which affect the school district and its students. There are no cases finding that the unusually susceptible or "eggshell" plaintiff rule <u>does not</u> apply in non-personal injury cases, and there is

authority that the rule applies in other contexts. *See, e.g., Colonial Inn Motor Lodge, for Use & Benefit of Cincinnati Ins. Co. v. Gay* 680 N.E.2d 407 (Ill. App. 1997) (finding defendant liable for the full extent of property damage and lost income despite a building's pre-existing vulnerability); Restatement (Second) of Torts § 461 cmt. b ("rule applies not only where a physical injury is unexpectedly increased by the unknown physical peculiarities of the other, but also where an injury to another's pecuniary interests is increased by the unexpected and unknown or unknowable value of the article damaged"); Restatement (Third) of Torts: Phys. & Emot. Harm § 31 cmt. d (2010) (rule applicable to property). Defendants further argue that Tucson Unified School District has not identified any pre-existing condition aggravated by Defendants' conduct, but Defendant has. Plaintiff's proposed instruction will aid the jury in considering those conditions in the context of Defendants' conduct and the school district's claimed harms.

**"Defendants" vs. "a Defendant."** Because Tucson Unified School District alleges an indivisible injury that all Defendants contributed to, instructing the jury to decide damages "caused by the fault of *a* Defendant"—rather than by multiple Defendants—would be misleading and risk suggesting that Tucson must prove each Defendant's specific proportion of fault in aggravating its injury. *See infra* [Causation – Proximate Cause].

1   **DEFENDANTS' POSITION ON INSTRUCTION 28:**

2       **Unusually Susceptible Plaintiff Instruction Cannot Apply to Entities.** Defendants

3   object to instructing the jury that Defendants may be held liable for "aggravating or worsening"

4   "any pre-existing condition" allegedly experienced by Tucson. The sole pattern instruction

5   addressing this doctrine governs personal injury damages, and Tucson has not identified any

6   authority applying it to an organization or the types of harms at issue in this case. *See* RAJI (Civil)

7   PIDI 2 (7th ed.). The language of that pattern instruction (which Tucson omits from its proposal)

8   confirms that it is limited to personal injuries, as it refers to, for example, "any physical or emotional

9   condition" of the plaintiff and whether the plaintiff "was more susceptible to injury than a normally

10  healthy person would have been." *Id.* An entity like Tucson (as opposed to a person) cannot suffer

11  from a physical or emotional condition, much less one that Defendants' conduct could aggravate

12  or worsen. And Tucson has not cited any Arizona cases applying this instruction, let alone any

13  cases doing so in cases like this one. Tucson's sole citation is to an inapposite case from Illinois,

14  which held that where the defendant hit a building with his car with a "substantial" impact, he may

15  have been a proximate cause of a resulting explosion because there is a known risk "that colliding

16  with a building will disrupt a gas line or create a fire hazard." *Colonial Inn Motor Lodge, for Use*

17  *& Benefit of Cincinnati Ins. Co. v. Gay*, 680 N.E.2d 407, 415 (Ill. Ct. App. 1997). The case did not

18  discuss the "unusually susceptible" or "eggshell plaintiff" rule, and it did not refer to the plaintiff's

19  building as having any kind of "pre-existing condition."

20      Moreover, Tucson has not identified any supposed pre-existing condition it possessed or

21  provided any evidence that Defendants aggravated such a condition. Nor has Tucson shown that

22  factors such as poverty could be treated as a preexisting condition even for an individual plaintiff.

23  Therefore, giving this instruction would improperly extend a narrow doctrine beyond its

24  permissible scope.

25      **If the Instruction is Given, it Should Not Lump Defendants Together.** If the Court gives

26  any version of this instruction over Defendants' objection, it should reject Tucson's proposed

27  references to the fault of "Defendants" or "Defendants'" fault. Instead, the Court should adopt

28  Defendants' proposed references to the fault of "any Defendant" or "a Defendant's fault." Tucson's

proposed language would impermissibly invite the jury to consider the alleged fault of all Defendants together, while Defendants' proposed language would properly require the jury to consider each Defendant's alleged fault individually.  To establish liability, "the plaintiff has the burden of proving that the conduct of *each defendant* was a cause of the injury."  *Piner,* 962 P.2d at 916 (emphasis added) (quoting Restatement (Second) of Torts § 433B); *see also, e.g.*, *Salica*, 231 P.3d at 952 (same).  Accordingly, the use notes of the relevant pattern jury instruction state that "[t]he instruction is drafted for a one-defendant, no comparative fault case.  In other cases, replace 'defendant' here with the same language used in Personal Injury Damages Instruction 1 from the '[any] [defendant] [party] [person]' options."  RAJI (Civil) PIDI 2 (7th ed.) Use Notes.  Defendants' proposal adopts that approach.

**Jury Instruction # 29**

**No Duty to Prevent Harm Caused by Third Parties[±]**

*[±Defendants object to this instruction in full. Defendants have proposed edits to the extent this instruction is included over Defendants' objection.]*

**(1)    Instruction # 28-P (Tucson's Proposed Instruction)**

The mere fact that a Defendant generally knows that third-party bad actors may use their social media platforms to spread harmful challenges, transmit threats, or engage in crimes, is not, by itself, sufficient to show that Defendants caused the School District's harm. However, even if a third party is involved in the harm, you may hold Defendants liable for their own conduct, including conduct that foreseeably facilitates harm from third parties.

**(2)    Instruction # 28-D (Defendants' Proposed Instruction)**

Defendants do not have a duty to prevent third parties (for example, individuals who post dangerous "challenges" on Defendants' platforms, commit crimes utilizing Defendants' platforms, or post threats on Defendants' platforms) from using their platforms in ways that may cause harm to Tucson Unified School District or its students.

AUTHORITY:    ECF No. 1267 at 26 n.19

*Petolicchio v. Santa Cruz Cnty. Fair & Rodeo Ass'n, Inc.*, 866 P.2d 1342, 1349 (Ariz. 1994) (en banc) ("When a defendant's action increase the foreseeable risk of a particular harm occurring through the conduct of a third party, that defendant is not relieved of liability.")

SD Order (Dkt. 1267) at 26–27 n.19 (noting that allegations relating to "injuries caused by third-party conduct as with dangerous social media challenges, crimes, or threats on defendants' platforms" "have been excluded as a matter of proximate cause," and so "the Court's evaluation of legal duty focuses exclusively on the allegations that focus on defendants' own conduct—fostering compulsive use—and the corresponding

foreseeability of injury to school districts")

DATE SUBMITTED: January 28, 2026

DATE REVISED:    [insert date]

1   **TUCSON'S POSITION ON INSTRUCTION 29:**

2       Plaintiff objects to instructing the jury on harms caused by third parties, but offers

3   competing language if the Court decides an instruction is necessary.

4       **Instruction Not Warranted.** It is unlikely that evidence of challenges, crimes, or threats

5   will be introduced at trial, much less play a substantial role that would warrant cautioning the jury

6   about it in the proximate cause instruction. Moreover, the scope of the Defendants' duty is a

7   question of law for the Court, and a question the Court has already resolved. *See* ECF No. 1267 at

8   26 n. 19. Including Defendants' proposed language risks misleading the jury into confusing duty

9   with proximate cause—the question they *are* tasked with answering. If the Court is inclined to

10  include an instruction on third party conduct, Plaintiff's language more closely adheres to the

11  Court's actual ruling and informs the jury about when it may consider foreseeable third-party

12  misconduct in its determination of proximate cause. *See id.* at 26 ("[Tucson's] allegations are not

13  barred to the extent defendants promoted, developed, or participated in a foreseeably dangerous

14  challenge, beyond the algorithmic publication, curation, or amplification of that third-party

15  challenge.").

16      **"Foreseeable" vs. "Non-Foreseeable" Third Party Conduct.** If the Court is inclined to

17  give an instruction, it should give Tucson's proposed language. Defendants' proposed instruction

18  is misleading in that it omits any discussion of foreseeability and thus presents an incomplete

19  picture of the law. The instruction creates the false impression that third party negligence

20  categorically relieves the Defendants from liability, which is inconsistent with both this Court's

21  order and Arizona law. *See* ECF No. 1267 at 25-26. By contrast, and as Plaintiff's proposed

22  instruction makes clear, Arizona law holds a negligent wrongdoer liable for causing foreseeable

23  third-party misconduct. *See Petolicchio v. Santa Cruz Cnty. Fair and Rodeo Ass'n, Inc.*, 866 P.2d

24  1342, 1349 (Ariz. 1994) ("When a defendant's action increases the foreseeable risk of a particular

25  harm occurring through the conduct of a third party, that defendant is not relieved of liability.").

26

27

28

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (TUCSON)

1   **DEFENDANTS' POSITION ON INSTRUCTION 29:**

2          **No Duty Regarding Third Parties.**  Defendants' proposed instruction implements the

3   Court's holding that "non-foreseeable third-party conduct"—such as "dangerous challenges,

4   threats, and crimes disseminated or perpetrated on defendants' platforms"—"cannot be attributable

5   to defendants."  SD Order at 25–26; *id.* at 26 ("As to any alleged injuries to the school districts

6   stemming from dangerous challenges, threats, and crimes disseminated or perpetrated on

7   defendants' platforms caused by deteriorated youth mental health, those allegations fail proximate

8   causation for a lack of particularized allegations.").

9          Defendants' proposed instruction tracks the Court's rulings that Defendants cannot be held

10  liable for unforeseeable conduct of third parties.  Defendants must be permitted to inform the jury

11  of this legal rule so that they can apply it to the facts at trial.  As Defendants explained in their

12  motion for summary judgment, Tucson's witnesses have repeatedly and consistently testified that

13  the District's alleged harms were caused by wrongful third-party conduct, and Tucson's databases

14  of safety and disciplinary incidents show the same.  *See* Tucson MSJ at 5–6, 18, 36; Tucson MSJ

15  Reply at 4.

16         By contrast, Tucson's proposed instruction omits these important limitations and states that

17  the jury "may hold Defendants liable for their own conduct, including conduct that foreseeably

18  facilitates harm from third parties."  Tucson's use of the word "including" improperly indicates that

19  Defendants may be held liable for non-foreseeable third-party conduct, contradicting this Court's

20  ruling.  SD Order at 25–26.

21         **Protected Conduct.**  Tucson's proposed instruction also provides no basis for the jury to

22  determine which of Defendants' "own conduct" can support liability.  This vague suggestion is

23  especially dangerous because it appears to encompass conduct protected under Section 230 and the

24  First Amendment.  For example, this language could invite the jury to hold a Defendant liable for

25  the "conduct" of offering a video-sharing platform that third parties used to transmit "dangerous

26  challenges, threats, and crimes," in direct contravention of this Court's ruling.  *See id.*

27         **No Evidentiary Basis.**  Finally, Tucson has no evidentiary basis to instruct the jury that it

28  may hold Defendants liable for harms caused by third parties.  As Defendants explained in their

1  motion for summary judgment, Tucson has no evidence that Defendants promoted dangerous

2  challenges on their platforms or that Tucson was damaged by any filter created by a Defendant, so

3  all of Tucson's allegations about misuse of Defendants' platforms are barred as a matter of law by

4  this Court's prior rulings.  Tucson MSJ at 19–20; *see* SD Order at 25–26.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (TUCSON)

**Jury Instruction # 30 – D**

**Comparative Fault[±]**

*[±Tucson objects to this instruction in full. Tucson has proposed edits to the extent this instruction is included over Defendants' objection. Defendants' proposed language is in blue text. Tucson's proposed language is in red text.]*

On Defendants' claim that Tucson Unified School District [contributed to causing the harms that Tucson Unified School District alleges] [was at fault, to find that Tucson Unified School District was comparatively at fault, Defendants must show by a preponderance of the evidence that:

(1) Tucson Unified School District breached its duty to use reasonable care under the circumstances; and

(2) Tucson Unified School District's failure to use reasonable care caused the harm it complains of in this lawsuit.]

[Y][y]ou must decide whether Defendants have proved that Tucson Unified School District was at fault and, under all the circumstances of this case, whether any such fault should reduce Tucson Unified School District's full damages. These decisions are left to your sole discretion.

If you decide that Tucson Unified School District's fault should reduce its full damages, the court will later reduce those damages by the percentage of fault you have assigned to Tucson Unified School District.

AUTHORITY:        RAJI (Civil) FI 9 (Plaintiff's Fault – Contributory Negligence) (7th ed.)

A.R.S. § 12-2505

*Dykeman ex rel. Dykeman v. Engelbrecht*, 803 P.2d 119, 121-22 (Ariz. Ct. App. 1990)

DATE SUBMITTED: January 28, 2026

DATE REVISED:        [insert date]

1    **TUCSON'S POSITION ON INSTRUCTION 30:**

2         **Instruction Not Supported by Evidence.** Consistent with Arizona's requirement that an

3    instruction only be given "if there is evidence upon which the jury could rationally sustain the

4    defense," Tucson objects to including an instruction about comparative fault unless and until

5    Defendants present evidence from which a jury could rationally find Tucson to be at fault. *State v.*

6    *Strayhand*, 184 Ariz. 571, 587-88 (Ariz. Ct. App. 1995); *see supra* [Claims and Defenses].

7         In arguing otherwise, Defendants rely on myriad cases interpreting Article 18, § 5 of the

8    Arizona Constitution, which states that "[t]he defense of contributory negligence . . . shall, in all

9    cases whatsoever, be a question of fact and shall, at all times, be left to the jury." Those cases are

10   inapposite. As the Arizona Court of Appeals held in *Franklin v. Clemett*—a case Defendants

11   themselves cite—"Article 18, § 5 does not guarantee the existence of contributory negligence as a

12   defense." 382 P.3d 802, 807 (Ariz. Ct. App. 2016) (citing Ariz. Const. art. XVIII, § 5). "Instead,

13   [it] is a procedural guarantee, and prescribes the procedure that must be followed" if the defense

14   "*is permitted to exist*." *Id.* (internal citations omitted) (emphasis in original). Put differently, the

15   provision "does not mean that the trial judge must submit the issue of contributory negligence to

16   the jury where there is no evidence from which a reasonable man could find the plaintiff guilty of

17   contributory negligence." *Sax v. Kopelman*, 396 P.2d 17, 18 (Ariz. 1964) (emphasis added).

18   Defendants therefore cannot demand an instruction on Tucson's comparative fault on an empty

19   record.

20        The remainder of Defendants' cited cases are likewise distinguishable because each

21   involved at least *some* evidence supporting the defense asserted; none of them eliminate the

22   threshold requirement that Defendants first present evidence sufficient to warrant an instruction on

23   that defense. *See e.g.*, *Aztlan Lodge No. 1, Free & Accepted Masons of Prescott v. Ruffner*, 745

24   P.2d 611, 614 (Ariz. Ct. App. 1987) (contributory negligence instruction warranted because there

25   was "[s]ubstantial evidence" of the plaintiff's negligence); *Williams v. Thude*, 934 P.2d 1349, 1351

26   (Ariz. 1997) (contributory negligence instruction warranted because "there is evidence that the

27   plaintiff negligently participated in causing his or her own injuries").

28

1    Nor is Defendants' complaint that Tucson did not seek summary judgement on comparative

2    fault a reason for instructing the jury on it here. As Defendants' own authority betrays, pursuant to

3    Article 18, § 5 of the Arizona Constitution, "[j]udges may not grant summary judgment or direct a

4    verdict for a defendant on the ground that the plaintiff was contributorily negligent." *Gunnell v.*

5    *Arizona Pub. Serv. Co.*, 46 P.3d 399, 405 (Ariz. 2002) (internal citations omitted). Thus, Tucson's

6    objection is procedurally timely and properly grounded in Arizona law.

7    **"At Fault" vs. "Contributed to Causing Harm."** Even if such an instruction were proper,

8    Tucson's proposed instruction is preferable because it uses the pattern's "at fault" language and

9    accurately enumerates the elements of comparative fault. *See* RAJI (Civil) FI 9 (7th ed.). By

10   contrast, Defendants' instruction falsely suggests that Defendants need only prove "Tucson School

11   District *contributed to causing* the harms that [it] alleges" to succeed on their defense. As Tucson's

12   proposed instruction and the pattern charge reflects, Defendants' must also prove that "Tucson

13   School District was *at fault,*" in the same way that Tucson must show Defendants were "*at fault.*"

14   *See* RAJI (Civil) FI 1 (7th ed.) (emphasis added). Arizona's comparative negligence statute

15   expressly requires that a claimant's fault be "a proximate cause of the injury." A.R.S. § 12-2505;

16   *see also Dykeman ex rel. Dykeman v. Engelbrecht*, 803 P.2d 119, 121-22 (Ariz. Ct. App. 1990)

17   (holding that Arizona's comparative negligence statute abrogated prior rule that a plaintiff "whose

18   own negligence contributed *in any degree* to his injury" was barred from recovering). Defendants'

19   proposal therefore misstates Arizona law and risks misleading the jury into believing that any

20   amount of contribution to Tucson's harm suffices to establish comparative fault.

21   **"Comparative Fault" v. "Contributory Negligence."** Arizona has transitioned from a

22   contributory negligence state to a comparative fault state. *Piner*, 962 P.2d at 914. Given the

23   possibility that a juror may be familiar with these concepts, the name of this instruction should

24   reflect the current state of Arizona law to avoid confusion.

25

26

27

28

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (TUCSON)

1    **DEFENDANTS' POSITION ON INSTRUCTION 30:**

2            **Defendants are Entitled to an Instruction on Comparative Fault.**  As discussed above,

3    Defendants are entitled to have the jury be instructed on comparative fault because they assert

4    comparative fault, also referred to as contributory negligence, as a defense.  Defendants'

5    comparative fault affirmative defense is properly asserted, and Tucson has not moved to strike it

6    and did not seek summary judgment on that defense.  *See* Defendants' Position on Proposed

7    Instruction 2 ("Claims and Defenses").  Under Arizona law, "[t]he defense of contributory

8    negligence or of assumption of risk is in all cases a question of fact and shall at all times be left to

9    the jury."  A.R.S. § 12-2505(A); *see also Franklin,* 382 P.3d at 807 (recognizing defense of

10   contributory negligence).  And "[a] trial court must instruct the jury on all valid legal theories

11   framed by the pleadings and supported by substantial evidence."  *AMERCO,* 907 P.2d at 542.

12   "When there is any evidence that a plaintiff is contributorily negligent, that issue must be presented

13   to the jury."  *Aztlan,* 745 P.2d at 613.  As the Arizona Supreme Court stated, a trial court cannot

14   "deprive[] the parties of their right to have the jurors deal with [a plaintiff's] conduct as they [see]

15   fit."  *Thude*, 934 P.2d at 1352.

16           Tucson's objection that Defendants have not demonstrated that the evidence supports such

17   an instruction falls flat at this stage of the proceedings.  Because Tucson has not moved to strike

18   this defense or moved for summary judgment on it, Defendants have had no opportunity to present

19   their anticipated evidence in support of the defense.  Should Defendants fail to present any evidence

20   of comparative fault on the part of Tucson at trial, Tucson may object to the inclusion of

21   comparative fault instructions at the close of evidence.  However, objecting to the instruction at

22   this point is premature and invades the province of the jury.  *See Gunnell,* 46 P.3d at 405 ("[I]n a

23   negligence case, the jury is the sole arbiter of fact and law as to the defenses of contributory and

24   comparative negligence.").

25           In any event, even the limited record that is currently before the Court on this point supports

26   including Defendants' proposed instruction.  *See* Tucson MSJ at 47–48 (demonstrating that Tucson

27   allows students to use cellphones and social media at school, actively uses Defendants' platforms

28   to communicate with students, and has never posted any warning in connection with that use).

**Reduction of Damages.**  Defendants propose an instruction regarding comparative fault that closely follows the pattern instruction.  Defendants' sole proposed modification to the pattern language is to clarify that Defendants claim that Tucson "contributed to causing the harms that [Tucson] alleges," rather than stating that Defendants claim that Tucson "was at fault."  *See* RAJI (Civil) FI 10 (7th ed.).  This statement would avoid jury confusion by clarifying that Defendants claim that Tucson contributed to its alleged harms, rather than claiming that Tucson is entirely at fault for those harms.  That change comports with the pattern instruction on assumption of risk, which specifies that if the jury applies this defense, "the court will later reduce" any damages, rather than eliminating them altogether.  *See id.*  Plaintiff has offered no authority to support its deviation from the pattern instruction.

**Jury Instruction # 31 - D**

**Mitigation of Damages±**

*[±Tucson objects to this instruction in full.  Tucson has proposed edits to the extent this instruction is included over Defendants' objection.  Defendants' proposed language is in* blue text*.  Tucson's proposed language is in* red text*.]*

Tucson Unified School District has a duty to use reasonable efforts to mitigate damages.  To mitigate means to avoid or reduce damages.  If you decide that one or more Defendants caused harm to Tucson Unified School District, the School District is not entitled to recover damages for harms the School District could have avoided with reasonable efforts or expenditures.  However, Tucson is not prevented from recovering damages for a particular harm resulting from Defendants' conduct if you determine Defendants intended the harm or were aware of it and recklessly disregarded the harms caused by their conduct, unless Defendants prove that Tucson Unified School District intentionally or heedlessly failed to protect their own interests.

The Defendants have the burden of proving by a preponderance of the evidence:

First, that Tucson Unified School District failed to use reasonable efforts to mitigate damages; and

Second, the amount by which damages would have been mitigated.

If you apply the defense of mitigation of damages, the Court will later reduce the Tucson Unified School District's full damages by the percentage of fault you have assigned to Tucson Unified School District.

AUTHORITY:          Use Notes from RAJI (Civil) NUISINST 7 (Continuing or Permanent Nuisance) (7th ed.) ("The duty to mitigate damages has no application in cases of nuisance.")

*City of Tucson v. Apache Motors*, 74 Ariz. 98, 107, 245 P.2d 255, 261 (1952)

*Graber v. City of Peoria*, 753 P.2d 1209, 1211 (Ariz. Ct. App. 1988)

*United Verde Extension Mining Co. v. Ralston*, 37 Ariz. 554, 296 P. 262 (1931)

1    Restatement (Second) of Torts § 918

2    *Cavallo v. Phoenix Health Plans, Inc.*, 518 P.3d 759, 767 (Ariz. 2022)

3    *Chancellor v. Taylor*, 7112 P.2d 660, 662 (Ariz. Ct. App. 1985)

4    *Law v. Super. Ct. In and For Maricopa Cnty.*, 755 P.2d 1135, 1142 (Ariz.

5    1988)

6    Ninth Circuit Manual of Model Civil Jury Instructions 5.3 (instructing, "The

7    plaintiff has a duty to use reasonable efforts to mitigate damages.  To mitigate

8    means to avoid or reduce damages.  The defendant has the burden of proving

9    by a preponderance of the evidence: 1. that the plaintiff failed to use

10   reasonable efforts to mitigate damages; and 2. the amount by which damages

11   would have been mitigated.").

12

13

14   DATE SUBMITTED: January 28, 2026

15   DATE REVISED:      [insert date]

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **TUCSON'S POSITION ON INSTRUCTION 31:**

2        **Error to Instruct on Mitigation in Nuisance Cases.** Defendants' proposed instruction is

3    contrary to Arizona law. There is no duty to mitigate under Arizona public nuisance law. *See* RAJI

4    (Civil) NUISINST 7 (7th ed.) ("The duty to mitigate damages has no application in cases of

5    nuisance.") (citing *City of Tucson v. Apache Motors*, 245 P.2d 255, 261 (Ariz. 1952); *see also*

6    *Graber v. City of Peoria*, 753 P.2d 1209, 1211 (Ariz. Ct. App. 1988). Instructing the jury that

7    Tucson has a duty to mitigate its damages would therefore be erroneous.

8        Defendants' authorities involve claims for general personal injury and bad faith torts, fact

9    patterns not helpful here. *See Cavallo v. Phoenix Health Plans, Inc.*, 254 Ariz. 99, 107 (2022)

10   (insurance bad faith); *Chancellor v. Taylor*, 147 Ariz. 521, 523 (Ariz. Ct. App. 1985) (car accident);

11   *Law v. Super. Ct. In and For Maricopa Cnty.*, 157 Ariz. 147, 154 (1988) (car accident).

12       **Instruction Not Supported By Evidence.** Defendants have not cited evidence in the record

13   supporting the instruction, i.e., evidence demonstrating that damages could reasonably have been

14   avoided or reduced but Tucson failed to use reasonable efforts to do so. "Instructions must be based

15   on some theory supportable by the evidence in the case." *Chavez v. Pima County*, 488 P.2d 978,

16   980 (Ariz. 1971) (en banc); *see also supra* [Claims and Defenses]. Defendants have not identified

17   any damages that (1) could have been mitigated through the use of reasonable care or (2) instances

18   where Tucson failed to use reasonable care. *See Strawberry Water Co. v. Paulsen*, 207 P.3d 654,

19   664 (Ariz. Ct. App. 2008) (affirming trial court's decision to reject mitigation instruction "as not

20   supported by the evidence").

21       Should the Court decide to include this instruction, Defendants' proposal should be

22   revised to be consistent with the authorities Defendants cite. First, although Defendants include

23   language from (1) of § 918 of the Restatement, setting out when a injured party may not be

24   entitled to recover, they fail to include (2), which is an important limitation on (1) where, as here,

25   Plaintiff alleges Defendants intended or recklessly disregard the harm their conduct caused

26   Plaintiff. Similarly, although Defendants include language from the Ninth Circuit model

27   instructions regarding a Plaintiff's duty, in applicable cases (not here), to use reasonable efforts to

28   mitigate damages, Defendants fail to include what Defendants must prove to establish to be

entitled to a reduction in damages. If Defendants insist on the instruction, they cannot avoid

limitations to the instruction and a description of what Defendants must prove for the instruction

to apply, particularly when those hurdles come from the same sources Defendants rely on for the

instruction.

**DEFENDANTS' POSITION ON INSTRUCTION 31:**

**Defendants Are Entitled to an Instruction on Mitigation of Damages.** The Court should instruct the jury that Tucson has a duty to use reasonable efforts to mitigate damages in connection with its negligence claim. This is a foundational principle of tort remedies that Arizona courts have consistently applied to negligence claims. *See* Restatement (Second) of Torts § 918 (stating that except in cases of intentional harm, "one injured by the tort of another is not entitled to recover damages for any harm that he could have avoided by the use of reasonable effort or expenditure after commission of a tort"); *Cavallo v. Phoenix Health Plans, Inc.*, 518 P.3d 759, 767 (Ariz. 2022) ("Restatement § 918(1) provides the basis for a proper jury instruction where, as here, a party has allegedly failed to use 'reasonable effort or expenditure after commission of the tort' to avoid harm"); *Law v. Super. Ct. in and for Maricopa Cnty.*, 755 P.2d 1135, 1142 (Ariz. 1988) (applying doctrine to negligence claim); *McCaw v. Ariz. Snowbowl Resort*, 521 P.3d 381, 388 (Ariz. Ct. App. 2022) (same). Tucson has not identified any authority stating that this defense is unavailable in connection with negligence claims, and Arizona courts instruct juries on the duty to mitigate in negligence cases. *See, e.g.*, *Shepard v. Hewitt*, 2011 WL 941269, at *4–5 (Ariz. Ct. App. Mar. 17, 2011).

Defendants' failure to mitigate affirmative defense is properly asserted, and Tucson has not moved to strike it and did not seek summary judgment on that defense. *See* Defendants' Position on Proposed Instruction 2 ("Claims and Defenses"). And "[a] trial court must instruct the jury on all valid legal theories framed by the pleadings and supported by substantial evidence." *AMERCO*, 907 P.2d at 542.

Tucson's objection that Defendants have not demonstrated that the evidence supports such an instruction falls flat at this stage of the proceedings. Because Tucson has not moved to strike this defense or moved for summary judgment on it, Defendants have had no opportunity to present their anticipated evidence in support of the defense. Should Defendants fail to present any evidence of Tucson's failure to mitigate damages at trial, Tucson may object to the inclusion of the mitigation of damages instructions at the close of evidence. However, objecting to the instruction at this point is premature and invades the province of the jury. *See Cavallo*, 518 P.3d at 767 (jury must be

instructed on mitigation of damages where a defendant "presented evidence and argued at trial" that the plaintiff "could have prevented" some of its damages). In any event, even the limited record that is currently before the Court on this point supports including Defendants' proposed instruction. *See* Tucson MSJ at 47–48 (demonstrating that Tucson allows students to use cellphones and social media at school, actively uses Defendants' platforms to communicate with students, and has never posted any warning in connection with that use).

**Reduction of Damages.** The Court should include Defendants' proposed explanation that if the jury finds Tucson failed to mitigate some extent of its alleged damages, the Court will reduce its total damages by that extent. This explanation would avoid jury confusion by clarifying that the Court will reduce Tucson's damages based on Tucson's failure to mitigate, rather than negating them altogether. This statement aligns with the pattern instruction's treatment of relevantly similar defenses, such as contributory negligence and assumption of risk. *See* RAJI (Civil) FI 9 (7th ed.); RAJI (Civil) FI 10 (7th ed.).

**Exceptions to the Duty to Mitigate.** Defendants oppose Tucson's proposed lengthy addition regarding potential exceptions to the duty to mitigate, as Tucson has not identified any evidence that these exceptions should apply.

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (TUCSON)

**Jury Instruction # 32 – D**

**Assumption of Risk[±]**

*[±Tucson objects to this instruction in full.  Tucson has proposed edits to the extent this instruction is included over Defendants' objection.  Defendants' proposed language is in* blue text*.  Tucson's proposed language is in* red text.*]*

Defendants claim that Tucson Unified School District [contributed to causing the harms that the School District alleges] [was at fault] by assuming the risk of injury.  A person assumes the risk of injury when he has knowledge of a particular risk, appreciates its magnitude, and voluntarily subjects himself to the risk under circumstances that show his willingness to accept that particular risk.

As to this claim, Defendants must prove:

1.  Tucson Unified School District assumed a particular risk of injury; and

2.  The particular risk was a cause of Tucson Unified School District's injury.

You must decide whether Defendants have proved that Tucson Unified School District [contributed to causing the harms that the School District alleges] [was at fault] by assuming the risk of injury and, under all the circumstances of this case, whether any such fault should reduce Tucson Unified School District's full damages.  These decisions are left to your sole discretion.

If you apply the defense of assumption of risk, the court will later reduce the Tucson Unified School District's full damages by the percentage of fault you have assigned to Tucson Unified School District.


AUTHORITY:        RAJI (Civil) FI 10 (Plaintiff's Fault – Assumption of Risk) (7th ed.)



DATE SUBMITTED: January 28, 2026

DATE REVISED:     [insert date]

**TUCSON'S POSITION ON INSTRUCTION 32:**

**Instruction Not Supported by Evidence.** Tucson objects to instructing the jury on assumption of risk because the record is void of any evidence supporting the instruction. *See supra* [Claims and Defenses]. To justify an assumption of risk instruction, "there must be some element of acceptance of the defendant's negligence which indicates a willingness on the part of the plaintiff to take his own chances as far as the particular risk created by such negligence." *City of Tucson v. Holliday*, 411 P.2d 183, 190 (Ariz. Ct. App. 1966). Here, Defendants have presented no evidence that Tucson "expressly agree[d] in advance that [Defendants] . . . shall not be liable for the consequences of conduct which would otherwise be negligent." *See Hildebrand v. Minyard*, 494 P.2d 1328, 1330 (Ariz. Ct. App. 1972). Nor have Defendants presented any evidence that they warned of the risks of their social media platforms or that Plaintiff had actual knowledge of the risks, appreciated the magnitude of the risks, and voluntarily subjected itself to those risks. *Chavez v. Pima County*, 488 P.2d 978, 980 (Ariz. 1971) (en banc). On the contrary, the record is clear that Plaintiff, like millions of others, was ambushed by the significant risks of Defendants' platforms and in no way volunteered to be subject to the wave of addiction and other significant and continuing harms they have caused. "Instructions must be based on some theory supportable by the evidence in the case." *Chavez*, 488 P.2d at 980. Because the record lacks "substantial evidence from which the jury [could] conclude that" Plaintiff "subjectively had in mind" that it was willing to take its chances as to known risks posed by Defendants' platforms, an assumption of risk instruction is inappropriate. *City of Tucson*, 411 P.2d at 190-91.

To the extent that Defendants seek to instruct the jury that Tucson was somehow at fault for its damages, it must show that Tucson failed to exercise due care and lay out an argument for proximate cause, which the Court can evaluate under those instructions.

**"At Fault" vs. "Contributed to Causing Harm."** Defendants' proposed instruction is improper because it includes language on comparative fault that 1) cannot be justified by their evidence and 2) mischaracterizes the showing required to prevail on that defense by substituting "contributed to causing the harms" for the pattern's "at fault" language. *See supra* [Claims and Defenses]; *see supra* [Contributory Negligence/Comparative Fault].

**DEFENDANTS' POSITION ON INSTRUCTION 32:**

**Defendants are Entitled to an Instruction on Assumption of Risk.** Defendants propose an instruction regarding the assumption of risk that closely follows the pattern instruction, and the jury must be instructed "on assumption of the risk" "[i]f there is any evidence to establish such a theory." *Ashford v. Accuwright Indus., Inc.*, 2020 WL 950217, at *6 (Ariz. Ct. App. Feb. 27, 2020) (quoting *Pioneer Roofing Co. v. Mardian Constr. Co.*, 753 P.2d 652, 659 (Ariz. Ct. App. 1986)). Defendants' assumption of risk affirmative defense is properly asserted, and Tucson has not moved to strike it and did not seek summary judgment on that defense. *See* Defendants' Position on Proposed Instruction 2 ("Claims and Defenses"). And "[a] trial court must instruct the jury on all valid legal theories framed by the pleadings and supported by substantial evidence." *AMERCO*, 907 P.2d at 542. Tucson has not identified any authority demonstrating that this instruction should not be given in this case.

Tucson's objection that Defendants have not demonstrated that the evidence supports such an instruction falls flat at this stage of the proceedings. Because Tucson has not moved to strike this defense or moved for summary judgment on it, Defendants have had no opportunity to present their anticipated evidence in support of the defense. Should Defendants fail to present any evidence of Tucson's assumption of risk at trial, Tucson may object to the inclusion of the assumption of risk instruction at the close of evidence. However, objecting to the instruction at this point is premature and invades the province of the jury. *See Shaya v. Petzoldt*, 515 P.2d 1189, 1189–90 (Ariz. Ct. App. 1973) (upholding "jury instruction on assumption of risk" based on "[f]acts introduced at trial"). In any event, even the limited record that is currently before the Court on this point supports including Defendants' proposed instruction. *See* Tucson MSJ at 47–48 (demonstrating that Tucson allows students to use cellphones and social media at school, actively uses Defendants' platforms to communicate with students, and has never posted any warning in connection with that use).

Defendants have already demonstrated that after Tucson was aware of the alleged risks posed to it by Defendants' platforms—including after filing this lawsuit—Tucson voluntarily accepted those risks by not taking available steps to avoid them. *See* Tucson MSJ at 47–48 (noting

1  that Tucson has not banned possession or use of cellphones on campus).  Further, Tucson has made

2  the ongoing choice to maintain accounts on some of Defendants' platforms to engage with its

3  students and their families, voluntarily including Defendants' platforms in the operations of its

4  schools.  *Id.* at 48.  All this evidence could show that Tucson voluntarily assumed the risks of harm

5  for which it seeks to recover against Defendants.  And Defendants may demonstrate at trial that

6  Tucson could have taken the steps outlined by Dr. Hoover and Ms. Shivanonda to avoid those risks

7  after learning about them.  *See* Tucson MSJ Opp. at 12–14 (discussing expert report of Dr. Sharon

8  Hoover and testimony of Ms. Julie Shivanonda).

9        **Reduction of Damages.**  Defendants' sole proposed modification to the pattern language

10  is to clarify that Defendants claim that Tucson "contributed to causing the harms that the School

11  District alleges," rather than stating that Defendants claim that Tucson "was at fault."  *See* RAJI

12  (Civil) FI 10 (7th ed.).  This clarification would avoid jury confusion by clarifying that Defendants

13  claim that Tucson contributed to its alleged harms, rather than claiming that Tucson is entirely at

14  fault for those harms.  That change comports with the remainder of the pattern instruction, which

15  specifies that if the jury applies this defense, "the court will later reduce" any damages, rather than

16  negating them altogether.

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Jury Instruction # 33**

**Damages**

It is the duty of the Court to instruct you about the measure of damages as to Tucson Unified School District's negligence and public nuisance claims. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

AUTHORITY:          Ninth Circuit Manual of Model Civil Jury Instructions 5.1 (Damages – Proof)

**Jury Instruction # 34**

**Compensatory Damages±**

*[±Tucson objects to the inclusion of comparative fault in this instruction.  Defendants' proposed language is in blue text.  Tucson's proposed language is in red text.]*

If you find for Tucson Unified School District on either its negligence claim or public nuisance claims, you must determine Tucson Unified School District's damages.

Tucson Unified School District has the burden of proving damages by a preponderance of the evidence.  In this case, the School District is seeking compensatory damages.  The [goal] [purpose] of compensatory damages is to [put] [make] Tucson Unified School District [in the same position it would be had Defendants not committed the wrongful conduct.  Tucson Unified School District seeks to recover what it claims are substantial resources already diverted and expended and resources needed in the future to try to alleviate the negative impacts caused by Defendants' conduct.] [whole again, placing it back in the position the School District would have been in but for the allegedly Actionable Non-Protected Conduct.]

It is for you to determine what damages, if any, Tucson Unified School District has proved. [Tucson Unified School District does not have to provide the exact amount of damages that will provide reasonable compensation for the harm.  However, your] [Your] award must be based on evidence and not on speculation, guesswork, or conjecture.  A damages award of zero is permissible.

[If you award Tucson damages under either one or both of its claims, you] [You] should not [double the amount of] [award compensatory] damages [simply because there are two claims in this case] [more than once for the same injury.] You must not include in your award of compensatory damages any damages to punish or make an example of Defendants.  If you enter an amount of damages for Tucson Unified School District on the verdict form, you should then consider Defendants' claim that [Tucson] [the School District] contributed to causing [Tucson's] [the School District's] injuries.

AUTHORITY:      Ninth Circuit Manual of Model Civil Jury Instructions 5.1 (first paragraph only)

*In re: JUUL Labs, Inc. Mktg., Sales Pracs. and Prods. Liab. Litig.*, 3:19-md-02913-WHO (N.D. Cal.), ECF No. 4006

*Phoenix Ry. Co. v. Landis*, 108 P. 247, 248 (Ariz. 1910)(affirming decision where court charged the jury "it is not necessary on the part of the plaintiff to show the precise money value of the life of the deceased, or the exact amount of damages suffered by the beneficiaries, in order to sustain a recovery for substantial damages")

*Felder v. Physiotherapy Assocs.*, 158 P.3d 877, 885 (Ariz. Ct. App. 2007) (citing Restatement (Second) of Torts § 912 (1979))

*Arizona Biltmore Hotel Villas Condominiums Ass'n v. Conlon Grp. Arizona, LLC*, 469 P.3d 463, 470 (Ariz. Ct. App. 2020) ("The Association is entitled to compensatory damages under general tort principles, which aim to place the plaintiff in the position it would have occupied had the defendant not committed the tort.") (citing Restatement (Second) of Torts § 903 cmt. a. (1979))

*Cole v. Gerhart*, 423 P.2d 100, 103 (Ariz. Ct. App. 1967) ("Of course, in computing damages, the trier of fact must not be permitted to allow double recovery.")

*Coury Bros. Ranches v. Ellsworth*, 446 P.2d 458, 464 (Ariz. 1968) ("Proof of the fact of damages must be of a higher order than proof of the amount of damages.  Damages that are speculative, remote or uncertain may not form the basis of a judgment.  The speculations, guesses or estimates of witnesses form no better basis of recovery than the speculations of the jury themselves." (citations omitted))

DATE SUBMITTED: January 28, 2026

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (TUCSON)

DATE REVISED:     [insert date]

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (TUCSON)

**TUCSON'S POSITION ON INSTRUCTION 34:**

The parties' proposed instructions differ in seven respects.

**Separate Instructions on Negligence and Public Nuisance.** Tucson proposes separate damages instructions for its negligence and public nuisance claims. This approach is consistent Arizona's pattern instructions, which provide a standalone instruction for measuring damages in public nuisance claims. RAJI (Civil) NUISINST 5 (7th ed.); *see infra* [Damages for Public Nuisance Instruction]. It is also consistent with Arizona law, which recognizes distinct categories of damages recoverable for nuisance claims. *See Burns v. Jaquays Min. Corp.*, 752 P.2d 28, 32 (Ct. App. 1987) (quoting the Restatement (Second) of Torts § 929's on "the damages one can recover as a result of a nuisance," which includes the "cost of restoration," "loss of use of the land," and "discomfort and annoyance to [the plaintiff] as an occupant"). Defendants have not articulated any bases for departing from the pattern or caselaw.

**Unnecessary to Prove Exact Damages.** Tucson's instruction explains that it need not prove the exact amount of its damages to recover. This is consistent with Arizona law and prevents the jury from assuming Tucson must quantify its losses with greater precision than the law demands. *See Phoenix Ry. Co. v. Landis*, 108 P. 247, 248 (Ariz. 1910) (affirming decision where the jury was instructed that "it is not necessary on the part of the plaintiff to show the precise money value of the life of the deceased, or the exact amount of damages suffered by the beneficiaries, in order to sustain a recovery for substantial damages.").

**Future Damages Instruction is Warranted.** Tucson's instruction on future damages is an accurate statement of Arizona law, which allows a plaintiff to recover future damages if they can be proven with "reasonable certainty." *Felder v. Physiotherapy Assocs.*, 158 P.3d 877, 885 (Ariz. Ct. App. 2007) (citing Restatement (Second) of Torts § 912 (1979)). Defendants' objection that the amount of funding necessary for Dr. Hoover's strategic plan is "speculative and uncertain" is inaccurate and exaggerates the governing standard. Arizona law recognizes that "[f]act-finders have no crystal ball" so that "any award for future damages can only be a reasonable guess." *Smith v. Myers*, 887 P.2d 541, 547 (1994). Accordingly, "[u]ncertainty alone does not justify taking away a party's right to have evidence heard by a jury." *Felder*, 158 P.3d at 886.

**Double Recovery.** Defendants' proposal instructs the jury that it may "not award compensatory damages more than once for the same injury." This instruction risks confusing the jury as to whether it can award damages against *more than one Defendant* for an indivisible injury, which is permissible under Arizona law. *Piner v. Superior Ct. In & For Cnty. of Maricopa*, 962 P.2d 909, 917 (1998). Defendants rely on *Cole v. Gerhart*, 423 P.2d 100 (1967), but that case is inapposite. In *Cole*, the need for a double recovery instruction arose out of the risk that the jury could—on a fraudulent inducement claim—"comput[e] items, directly or indirectly, under a 'loss-of-bargain' theory and then including the same item in an 'out-of-pocket' computation." *Cole v. Gerhart*, 423 P.2d at 103. No such risk exists here. Tucson's proposed instruction enumerates the damages it seeks, and the jury will not hear multiple theories of recovery for the same category of damages. However, if the Court is concerned that the jury may erroneously double its damages award solely because there are two claims in this case, Tucson has proposed language that cautions the jury against doing so, and that—unlike Defendants' language—avoids juror confusion as to the liability of multiple defendants.

**Zero Damages Permissible Language.** Defendants' version instructs the jury that an award of zero damages is permissible. This instruction is unnecessary and risks instructing the jury that its damages award may be untethered from the evidence.

**Comparative Fault Instruction Not Supported by Evidence.** Tucson objects to including an instruction about comparative fault unless and until Defendants demonstrate that the evidence supports instructing the jury about Tucson's alleged negligence. *See supra* [Claims and Defenses]; *see supra* [Comparative Fault].

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence – Definition]; [Section 230].

1    **DEFENDANTS' POSITION ON INSTRUCTION 34:**

2    **Purpose of Compensatory Damages.**  Defendants' instruction explains to the jury that the

3    purpose of compensatory damages is to make the District whole and place it in the position it would

4    have been absent the alleged wrong.  This is a well-established principle in tort law and reduces the

5    risk the jury will award compensatory damages for an improper purpose such as punishing

6    Defendants or giving Tucson a windfall.  *See Arizona Biltmore Hotel Villas Condominiums Ass'n*

7    *v. Conlon Grp. Arizona, LLC*, 469 P.3d 463, 470 (Ariz. Ct. App. 2020) ("compensatory damages .

8    . . aim to place the plaintiff in the position it would have occupied had the defendant not committed

9    the tort.") (citing Restatement (Second) of Torts § 903 cmt. a. (1979)).

10    **Double Recovery.**   Defendants' proposed instruction instructs the jury to avoid

11    impermissible double recovery.  Under Arizona law, Tucson may not recover for the same injury

12    twice, once for negligence and again for public nuisance.  *See Cole v. Gerhart*, 423 P.2d 100, 103

13    (Ariz. Ct. App. 1967) ("the trier of fact must not be permitted to allow double recovery.").  Tucson's

14    proposed instruction warns jurors that they should "not double the amount of damages simply

15    because there are two claims in this case."  But a double recovery instruction is necessary to help

16    jurors understand that Tucson cannot recover twice for the same injury, whether in the same amount

17    or not.

18    **Evidentiary Basis.**  Defendants' proposed instruction instructs the jury that there must be

19    an appropriate evidentiary basis for damages.  *See Pompeneo v. Verde Vally Guidance Clinic*, 249

20    P.3d 1112, 1115 (Ariz. Ct. App. 2011) ("Damages . . . must be supported by admissible evidence.")

21    (citing *Tritschler v. Allstate Ins. Co.*, 144 P.3d 519, 534 (Ariz. Ct. App. 2006); *Earle M. Jorgensen*

22    *Co. v. Tesmer Mfg. Co.*, 459 P.2d 533, 540 (Ariz. Ct. App. 1969) ("[C]onjecture or speculation

23    cannot provide the basis for an award of damages, and the evidence must make an approximately

24    accurate estimate possible.").  By contrast, Tucson improperly suggests that the jury be instructed

25    that Tucson does not need to provide evidence to substantiate its claimed damages.  Tucson's only

26    Arizona citation for this addition is an inapposite case from 1910, which in no way supports that

27    claim.  The sole issue facing that court was whether an instruction permitting recovery for damages

28    that "the estate has suffered" could lead the jury to inappropriately award double recovery to both

1   "the estate" and to the deceased's "dependents" or "beneficiaries." *Phoenix Ry. Co. v. Landis*, 108

2   P. 247, 248–49 (Ariz. 1910).

3       **Zero Dollars Award.** Defendants' instruction properly reminds the jury that it may award

4   zero dollars in damages. Contrary to Tucson's argument, this statement reminds the jurors that any

5   award of damages must be directly tethered to the evidence: if Tucson fails to proffer sufficient

6   evidence of damages on either of its claims, the award of damages on that claim must be zero.

7       **Instruction Applicable to Negligence and Nuisance Claims.** Defendants' proposal

8   properly instructs that the standard for compensatory damages is the same for Tucson's negligence

9   and public nuisance claims. *See* Model Instructions 5.1 ("Damages means the amount of money

10  that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the

11  defendant"); RAJI NUISINST 5 ("[Y]ou must . . . decide the full amount of money that will

12  reasonably and fairly compensate [the] [plaintiff . . . .]"). For the reasons noted below, Tucson's

13  proposed standalone instruction on damages for public nuisance is improper. Tucson is incorrect

14  that it seeks "distinct categories of damages" for its negligence and nuisance claims. It seeks only

15  "lost time" damages, out-of-pocket damages, and funding for the Hoover plan for both claims.

16      **Future Damages.** Defendants object to instructing the jury about future damages because

17  the only "future damages" that Tucson seeks is funding for Dr. Hoover's strategic plan, which is

18  not proper future damages. Tucson MSJ at 43; see *Coury Bros. Ranches, Inc. v. Ellsworth*, 446

19  P.2d 458, 464 (Ariz. 1968) ("Damages that are speculative, remote or uncertain may not form the

20  basis of a judgment"). Tucson's proposed instruction also impermissibly seeks recovery for the

21  cost of alleviating "negative impacts" of Defendants' conduct, which is not tied to a concrete

22  economic loss that can be measured with "reasonably certainty." *See Gilmore v. Cohen*, 386 P.2d

23  81, 82 (Ariz. 1963).

24      **Comparative Fault.** A statement on comparative fault is properly included in this

25  instruction because Defendants have properly asserted a comparative fault affirmative defense, and

26  Tucson has not moved to strike it and did not seek summary judgment on that defense. *See*

27  Defendants' Position on Proposed Instructions 2 ("Claims and Defenses"), 30 ("Comparative

28  Fault").

**Jury Instruction # 35 – P**

**Punitive Damages±**

*[±Defendants object to this instruction in full.  Defendants have proposed edits to the extent this instruction is included over Defendants' objection.  Defendants' proposed language is in blue text. Tucson's proposed language is in red text.]*

If you find [Defendants] [a Defendant] liable for Tucson Unified School District's damages, you may, but are not required to, assess additional damages to punish [Defendants] [that Defendant] or to deter [Defendants] [that Defendant] and others from similar misconduct in the future.  Such damages are called "punitive damages."  Punitive damages may not be awarded to compensate a plaintiff.

To recover punitive damages, the Tucson Unified School District must prove by clear and convincing evidence that:

1. The [Defendants'] [Defendant's] misconduct was intended to cause harm, or

2. The [Defendants'] [Defendant's] misconduct was motivated by spite or ill will[;] [,] or

3. The [Defendants'] [Defendant's] misconduct was

    a. Outrageous, oppressive, or intolerable, and

    b. The [Defendants] [Defendant] knew or intentionally disregarded that [their] [its] conduct created a substantial risk of serious harm to others.

You may not award punitive damages to punish any Defendant for Protected Conduct or for the design of the Defendant's platform as a whole.

If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice, or sympathy toward any party.

In considering the amount of any punitive damages, consider the degree of reprehensibility of the defendant's conduct, including whether the conduct that harmed the plaintiff was particularly reprehensible because it also caused actual harm or posed a substantial risk of harm to people who are not parties to this case.  You may not, however, set the amount of any punitive damages in order to punish the defendant for harm to anyone other than the plaintiff in this case.

You may impose punitive damages against one or more of the Defendants and not others and may award different amounts against different Defendants.

AUTHORITY:          RAJI (Civil) PIDI 4 (Punitive Damages) (7th ed.)

                    *Swift Transp. Co. of Ariz. L.L.C. v. Carman*, 515 P.3d 685, 692 (Ariz. 2022).

DATE SUBMITTED: January 28, 2026

DATE REVISED:     [insert date]

**TUCSON'S POSITION ON INSTRUCTION 35:**

Plaintiff's proposed instruction tracks Arizona pattern's instruction on punitive damages. *See* RAJI (Civil) PIDI 4 (7th ed.). The instruction is warranted here because Tucson Unified School District intends to introduce evidence of Defendants' conduct that could reasonably be found to have been willful, outrageous, and in deliberate disregard of its effects. *See Swift Transp. Co. of Ariz. L.L.C. v. Carman*, 515 P.3d 685, 688 (Ariz. 2022) (in a negligence case, a plaintiff must establish a reasonable likelihood that a punitive damages claim will be submitted to the jury to make a prima facie case for punitive damages).

**Damages Not to Compensate.** Defendants' instruction states that punitive damages cannot be awarded for the purpose of compensating Defendants. This is duplicative and risks juror confusion, since compensatory damages are available in this case and addressed in a separate instruction. *See supra* [Compensatory Damages].

**"Bias, Prejudice, or Sympathy."** Defendants' instruction also directs the jury not to the use "bias, prejudice, or sympathy" when determining the amount of punitive damages to award. This language is duplicative of the preliminary instructions applicable to all School Districts, which already cautions the jury that they "must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy." *See supra* [Duty of Jury]. Repeating that directive here is unnecessary and risks suggesting that punitive damages warrant special scrutiny, which will prejudice Tucson Unified School District.

Plaintiff also does not agree to the paragraph about using reason to set the amount without bias, prejudice, or sympathy toward any party because it is vague and does not assist the jury in any meaningful way. The two paragraphs that follow, each proposed by Defendant and each accepted by Plaintiff with only minor revisions, provide a clearer and more appropriate framework for the jury to decide on and arrive at a punitive damages award.

**"Defendants" vs. "a Defendant."** Because Tucson Unified School District alleges an indivisible injury that all Defendants contributed to, instructing the jury to decide damages "caused by the fault of *a* Defendant"—rather than by multiple Defendants—would be misleading and risk suggesting that Tucson Unified School District must prove each Defendant's specific proportion of

fault in for its conduct warranting punitive damages. *See infra* [Causation – Proximate Cause]. The last sentence in the instruction, which was proposed by Defendants, clarifies that the jury may impose punitive damages against different defendants in different amounts.

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence – Definition]; [Section 230].

1  **DEFENDANTS' POSITION ON INSTRUCTION 35:**

2      **There is No Basis for a Punitive Damages Instruction.**  Defendants object to Tucson's

3  proposed instruction on punitive damages because it is not supported by the evidence.  Arizona

4  courts have "expressly rejected awarding punitive damages based on gross negligence or mere

5  reckless disregard of the circumstances."  *Volz v. Coleman Co.*, 748 P.2d 1191, 1194 (Ariz. 1987)

6  (en banc) (citing *Linthicum v. Nationwide Life Ins. Co.*, 723 P.2d 675, 680 (Ariz. 1986); *Gurule v.*

7  *Illinois Mut. Life and Cas. Co.*, 734 P.2d 85, 88 (Ariz. 1987)).  The standard for punitive damages

8  requires a showing of "the evil mind, which is satisfied by evidence 'that defendant's wrongful

9  conduct was motivated by spite, actual malice, or intent to defraud' or defendant's 'conscious and

10  deliberate disregard of the interest and rights of others.'"  *Volz*, 748 P. 2d at 1194.  To support an

11  instruction on punitive damages, a plaintiff must provide evidence demonstrating "outrageous

12  conduct" on the part of the defendant.  *Id.* (quoting *Thomas v. American Cystoscope Makers, Inc.*,

13  414 F. Supp. 255, 267 (E.D. Pa. 1976)).  Tucson's proposed instruction is impermissible because

14  there is no evidence that the conduct of any Defendant was "outrageous" or that any Defendant

15  acted with conscious or deliberate disregard of the interest and rights of others.

16      If the Court gives any version of this instruction, it should adopt Defendants' version, which

17  includes several important edits and additions to more accurately reflect Arizona law and to avoid

18  juror confusion.

19      **Finding as to Each Defendant.**  Defendants propose clarifying that the jury must evaluate

20  liability and award of damages as to each Defendant, as opposed to all Defendants collectively.

21  That instruction respects the requirement that "the plaintiff has the burden of proving that the

22  conduct of *each defendant* was a cause of the injury."  *Piner,* 962 P.2d at 916 (emphasis added)

23  (quoting Restatement (Second) of Torts § 433B); *see also, e.g.*, *Salica,* 231 P.3d at 952 (same).

24  The instruction also respects the requirement that "each defendant is liable only for the amount of

25  damages allocated to that defendant in direct proportion to that defendant's percentage of fault*."*

26  *Cramer,* 375 P.3d at 72*; Dietz,* 821 P.2d at 167.  Tucson's proposal to merely reference all

27  "Defendants" together would invite the jury to ignore these requirements.

28

1       **Punitive Damages May Not Be Awarded to Compensate.**  Defendants' revisions clarify,

2   consistent with Arizona law, that punitive damages may not be awarded to compensate a plaintiff.

3   *See, e.g.*, *Wyatt v. Wehmueller*, 806 P.2d 870, 874 (Ariz. 1991) ("Well-settled doctrine holds that

4   punitive damages are non-compensatory in nature and therefore are not designed to compensate for

5   any actual injury."); *see also City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266–67 (1981)

6   ("Punitive damages by definition are not intended to compensate the injured party, but rather to

7   punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and

8   others from similar extreme conduct."); *International Bhd. of Elec. Workers v. Foust*, 442 U.S. 42,

9   48, (1979) ("Punitive damages 'are not compensation for injury.  Instead, they are private fines

10  levied by civil juries to punish reprehensible conduct and to deter its future occurrence.'" (quoting

11  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974)).

12      **Protected Conduct.**  Defendants' proposed language states that punitive damages may not

13  be awarded to "punish" harm incurred as a result of protected conduct; this is necessary to mitigate

14  the risk of a jury inappropriately awarding punitive damages for conduct that this Court has already

15  held cannot form the basis of liability.  *See, e.g.*, *BMW of N. Am. v. Gore*, 517 U.S. 559 (1996)

16  (reducing punitive damage award where an Alabama jury inappropriately considered conduct of

17  defendant that was permissible under the law of other states); *State Farm Mut. Auto Ins. Co. v.*

18  *Campbell*, 538 U.S. 408, 409 (2000) (a state "cannot punish a defendant for conduct that may have

19  been lawful where it occurred.").

20      **Use of Reason.**  The statement in Defendants' proposed instruction that "reason" must be

21  used in setting the amount of punitive damages—which is pulled directly from the Ninth Circuit

22  Model Instruction governing punitive damages.  Ninth Circuit Model Instructions 5.5.  This

23  statement is also necessary to mitigate the risk of the jury awarding excessive punitive damages.

24  Defendants also reserve all rights to bifurcate where a trial on the merits and a finding of liability

25  is a condition precedent to a proceeding on punitive damages.

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Jury Instruction # 36 – P**

**Punitive Damages – Burden of Proof[±]**

*[±Defendants object to this instruction in full.]*

An award of punitive damages requires proof by clear and convincing evidence.

A party who has the burden of proof by clear and convincing evidence must persuade you by the evidence that the claim is highly probable.  This standard is more exacting than the standard of more likely true than not true, but is less exacting than the standard of proof beyond a reasonable doubt.

You are to use the standard of more likely true than not true for all claims in this case except for those on which you are specifically instructed that the burden of proof is the standard of clear and convincing evidence.

In determining whether a party has met any burden of proof, you will consider all the evidence, whether presented by Tucson Unified School District or Defendants.

AUTHORITY:        RAJI (Civil) Standard 3 (Burden of Proof – Clear and Convincing) (7th ed.)

DATE SUBMITTED: January 28, 2026

DATE REVISED:      [insert date]

**TUCSON'S POSITION ON INSTRUCTION 36:**

The parties agree on the language of this instruction if the Court instructs on punitive damages, which it should. *See supra* [Punitive Damages]; *see also* RAJI (Civil) PIDI (7th ed.), n.1 (explaining this instruction should be given with any punitive damages instruction).

1    **DEFENDANTS' POSITION ON INSTRUCTION 36:**

2        Defendants object to Tucson's proposed instruction on Punitive Damages – Burden of Proof

3    because Tucson is not entitled to an instruction on Punitive Damages.  Arizona courts have

4    "expressly rejected awarding punitive damages based on gross negligence or mere reckless

5    disregard of the circumstances." *Volz,* 748 P.2d at 1194 (en banc) (citing *Linthicum*, 723 P.2d at

6    680; *Gurule,* 734 P.2d at 88.  The standard for punitive damages requires a showing of "the evil

7    mind, which is satisfied by evidence 'that defendant's wrongful conduct was motivated by spite,

8    actual malice, or intent to defraud' or defendant's 'conscious and deliberate disregard of the interest

9    and rights of others.'" *Volz*, 748 P.2d at 1194.  To support an instruction on punitive damages, a

10   plaintiff must provide evidence demonstrating "outrageous conduct" on the part of the defendant.

11   *Id.* (quoting *Thomas v. American Cystoscope Makers, Inc.*, 414 F. Supp. 255, 267 (E.D. Pa. 1976)).

12   Tucson's proposed instruction is impermissible because there is no evidence that the conduct of

13   any Defendant was "outrageous" or that any Defendant acted with conscious or deliberate disregard

14   of the interest and rights of others.

15       Should the Court instruct on punitive damages over Defendants' objection, Defendants do

16   not object to the language in Tucson's Proposed Instruction on Punitive Damages – Burden of

17   Proof.

18

19

20

21

22

23

24

25

26

27

28

**STOP**
**(CLOSING ARGUMENTS)**

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (TUCSON)

## VI.     <u>POST-CLOSING INSTRUCTIONS</u>

### Jury Instruction # 37

### Duty to Deliberate

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.


AUTHORITY:          Ninth Cir. Model Instructions, Instruction No. 3.1.


DATE SUBMITTED: January 28, 2026

DATE REVISED:      [insert date]

**Jury Instruction # 38**

**Consideration of Evidence**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media.

This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (TUCSON)

be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the court immediately.

AUTHORITY:          Ninth Cir. Model Instructions, Instruction No. 3.2.

DATE SUBMITTED: January 28, 2026

DATE REVISED:     [insert date]

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (TUCSON)

**Jury Instruction # 39**

**Communications with Court**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Courtroom Deputy, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.


AUTHORITY:          Ninth Cir. Model Instructions, Instruction No. 3.3.


DATE SUBMITTED: January 28, 2026

DATE REVISED:     [insert date]

**Jury Instruction # 40**

**Return of Verdict**

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the Courtroom Deputy that you are ready to return to the courtroom.


AUTHORITY:          Ninth Cir. Model Instructions, Instruction No. 3.5.


DATE SUBMITTED: January 28, 2026

DATE REVISED:     [insert date]

1

2    DATED:  January 28, 2026             Respectfully submitted,

3                                        MUNGER, TOLLES & OLSON LLP

4

                                         By:        /s/ Victoria A. Degtyareva
5                                             JONATHAN H. BLAVIN (State Bar No. 230269)
                                             Jonathan.Blavin@mto.com
6                                            MUNGER, TOLLES & OLSON LLP
                                             560 Mission Street, 27th Floor
7                                            San Francisco, CA 94105
                                             Tel: (415) 512-4000
8

9                                            VICTORIA A. DEGTYAREVA (State Bar No. 284199)
                                             Victoria.Degtyareva@mto.com
10                                           MUNGER, TOLLES & OLSON LLP
                                             350 South Grand Avenue, 50th Floor
11                                           Los Angeles, CA 90071
                                             Tel.: (213) 683-9100
12

13                                           ALLISON BROWN (*pro hac vice*)
                                             alli.brown@kirkland.com
14                                           KIRKLAND & ELLIS LLP
                                             2005 Market Street, Suite 1000
15                                           Philadelphia, PA 19103
                                             Tel.: (215) 268-5000
16

17                                           JESSICA DAVIDSON (*pro hac vice*)
                                             jessica.davidson@kirkland.com
18                                           JOHN J. NOLAN (*pro hac vice*)
                                             jack.nolan@kirkland.com
19                                           KIRKLAND & ELLIS LLP
                                             601 Lexington Avenue
20                                           New York, NY 10022
                                             Tel.: (212) 446-4800
21

22                                           *Attorneys for Defendant Snap Inc.*

23

24

25

26

27

28

                                        137

1

2
                                        /s/ Ashley W. Hardin
3                          JOSEPH G. PETROSINELLI (*pro hac vice*)
                           jpetrosinelli@wc.com
4                          ASHLEY W. HARDIN (*pro hac vice*)
                           ahardin@wc.com
5                          J. ANDREW KEYES (*pro hac vice*)
                           akeyes@wc.com
6                          NEELUM J. WADHWANI (SBN 247948)
                           nwadhwani@wc.com
7                          WILLIAMS & CONNOLLY LLP
8                          680 Maine Avenue, SW
                           Washington, DC 20024
9                          Tel.: (202) 434-5000

10
                           *Attorneys for Defendants YouTube, LLC and Google*
11                         *LLC*

12

13
                                        /s/ Ashley M. Simonsen
14                         ASHLEY M. SIMONSEN (State Bar No. 275203)
                           asimonsen@cov.com
15                         COVINGTON & BURLING LLP
                           1999 Avenue of the Stars
16                         Los Angeles, California 90067
                           Telephone: (424) 332-4800
17

18                         PHYLLIS A. JONES (*pro hac vice*)
                           pajones@cov.com
19                         PAUL W. SCHMIDT (*pro hac vice*)
                           pschmidt@cov.com
20                         CHRISTIAN J. PISTILLI (*pro hac vice*)
                           cpistilli@cov.com
21                         COVINGTON & BURLING LLP
22                         One City Center
                           850 Tenth Street, NW
23                         Washington, DC 20001-4956
                           Tel.: (202) 662-6000
24

25                         *Attorneys for Defendants Meta Platforms, Inc. f/k/a*
                           *Facebook, Inc.; and Instagram, LLC*
26

27

28

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (TUCSON)

1

2
                                    */s/ David P. Mattern*
3                          GEOFFREY M. DRAKE (*pro hac vice*)
                           gdrake@kslaw.com
4                          TACARA D. HARRIS (*pro hac vice*)
                           tharris@kslaw.com
5                          KING & SPALDING LLP
                           1180 Peachtree Street, NE, Suite 1600
6                          Atlanta, GA 30309
7                          Tel.: (404) 572-4600

8                          DAVID P. MATTERN (*pro hac vice*)
                           dmattern@kslaw.com
9                          KING & SPALDING LLP
                           1700 Pennsylvania Avenue, NW, Suite 900
10                         Washington, D.C. 20006
                           Tel.: (202) 737-0500
11

12                         BAILEY J. LANGNER (State Bar No. 307753)
                           *blangner@kslaw.com*
13                         KING & SPALDING LLP
                           50 California Street, Suite 3300
14                         San Francisco, CA 94111
                           Tel.: (415) 318-1200
15

16                         *Attorneys for Defendants*
                           *TikTok Inc., ByteDance Inc., TikTok Ltd., ByteDance*
17                         *Ltd., and TikTok LLC*

18

19

20

21

22

23

24

25

26

27

28

1

2

/s/ Austin Brane

3    Thomas P. Cartmell (*pro hac vice*)
     Jonathan P. Kieffer (*pro hac vice*)
4    Austin Brane, SBN 286227
     **WAGSTAFF & CARTMELL LLP**
5    4740 Grand Avenue, Suite 300
     Kansas City, MO 64112
6    Tel: (816) 701-1100
7    tcartmell@wcllp.com
     jpkieffer@wcllp.com
8    abrane@wcllp.com

9    Kirk J. Goza (*pro hac vice*)
10   Brad Honnold (*pro hac vice*)
     **GOZA & HONNOLD LLC**
11   9500 Nall Ave., Ste 400
     Overland Park, KS 66207
12   Tel. (913) 451-3433
     kgoza@gohonlaw.com
13   bhonnold@gohonlaw.com

14   Joseph G. VanZandt (*pro hac vice*)
15   Davis Vaughn (*pro hac vice*)
     Jennifer Emmel (*pro hac vice*)
16   Clinton Richardson (*pro hac vice*)
     Seth Harding (*pro hac vice*)
17   **BEASLEY ALLEN CROW**
     **METHVIN PORTIS & MILES, LLC**
18   234 Commerce Street
19   Montgomery, AL 36103
     Tel:  334-269-2343
20   Joseph.VanZandt@BeasleyAllen.com
     Davis.Vaughn@BeasleyAllen.com
21   Jennifer.Emmel@BeasleyAllen.com
     Clinton.Richardson@BeasleyAllen.com
22   Seth.Harding@BeasleyAllen.com

23
     *Counsel for Plaintiffs*
24

25

26

27

28

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (TUCSON)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Thomas P. Cartmell (*pro hac vice*)
Jonathan P. Kieffer (*pro hac vice*)
Austin Brane, SBN 286227
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel: (816) 701-1100
tcartmell@wcllp.com
jpkieffer@wcllp.com
abrane@wcllp.com

Kirk J. Goza (*pro hac vice*)
Brad Honnold (*pro hac vice*)
**GOZA & HONNOLD LLC**
9500 Nall Ave., Ste 400
Overland Park, KS 66207
Tel. (913) 451-3433
kgoza@gohonlaw.com
bhonnold@gohonlaw.com

Joseph G. VanZandt (*pro hac vice*)
Davis Vaughn (*pro hac vice*)
Jennifer Emmel (*pro hac vice*)
Clinton Richardson (*pro hac vice*)
Seth Harding (*pro hac vice*)
**BEASLEY ALLEN CROW**
**METHVIN PORTIS & MILES, LLC**
234 Commerce Street
Montgomery, AL 36103
Tel: 334-269-2343
Joseph.VanZandt@BeasleyAllen.com
Davis.Vaughn@BeasleyAllen.com
Jennifer.Emmel@BeasleyAllen.com
Clinton.Richardson@BeasleyAllen.com
Seth.Harding@BeasleyAllen.com

*Counsel for Plaintiffs*

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (TUCSON)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LEXI J. HAZAM
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

*Co-Lead Counsel*

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

*Co-Lead Counsel*

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

*Co-chair School District Committee*
*Plaintiffs' Steering Committee Leadership*

MELISSA YEATES
**KESSLER TOPAZ MELTZER**
**& CHECK LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com

*Co-chair School District Committee*
*Plaintiffs' Steering Committee Leadership*

ANDRE M. MURA
**GIBBS MURA LLP**
1111 Broadway, Suite 2100
Oakland, CA 94612
Telephone: 510-350-9717
amm@classlawgroup.com

*Plaintiffs' Steering Committee Leadership*

142

1

## __ATTESTATION__

2        I, Victoria A. Degtyareva, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the

3   concurrence to the filing of this document has been obtained from each signatory hereto.

4

5   Dated: January 28, 2026

6                                 */s/ Victoria A. Degtyareva*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS (TUCSON)