1   ALLISON BROWN, *pro hac vice*
    alli.brown@kirkland.com
2   KIRKLAND & ELLIS LLP
    2005 Market Street, Suite 1000
3   Philadelphia, PA 19103
    Tel.: (215) 268-5000
4
    JESSICA DAVIDSON, *pro hac vice*
5   jessica.davidson@kirkland.com
    KIRKLAND & ELLIS LLP
6   601 Lexington Avenue
    New York, NY 10022
7   Tel.: (212) 446-4800
8   PATRICK G. MAROUN, *pro hac vice*
    patrick.maroun@kirkland.com
9   KIRKLAND & ELLIS LLP
    333 West Wolf Point Plaza
10  Chicago, IL 60654
    Tel: (312) 862-0743
11
    *Attorneys for Defendant Snap Inc.*
12
    [*Additional parties and counsel listed on
13  signature pages*]
14
                  UNITED STATES DISTRICT COURT
15
             FOR THE NORTHERN DISTRICT OF CALIFORNIA
16
                       OAKLAND DIVISION
17
18
    IN RE: SOCIAL MEDIA ADOLESCENT          MDL No. 3047
19  ADDICTION/PERSONAL INJURY
    PRODUCTS LIABILITY LITIGATION           Case No. 4:23-CV-01467-YGR
20
                                            **JOINT SET OF PROPOSED JURY
21                                          INSTRUCTIONS**
22  This Document Relates to:              Judge: Hon. Yvonne Gonzalez Rogers
                                           Magistrate Judge: Hon. Peter H. Kang
23  *Irvington Public Schools v. Meta Platforms, Inc.
    et al.*                                Pretrial Conference:      TBD
24                                         Trial Date:               TBD
25
26
27
28

                                    1

Plaintiff Irvington Public Schools and Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Instagram, LLC; Facebook Payments, Inc.; Snap, Inc. ("Snap"); ByteDance Ltd.; ByteDance Inc.; TikTok Ltd.; TikTok LLC; and TikTok Inc. (collectively, "TikTok"); and Google LLC and YouTube LLC (collectively, "YouTube"), by and through their attorneys of record (collectively, the "Parties"), hereby submit these Joint Proposed Jury Instructions pursuant to Paragraph 3(g) of the Court's Standing Order Re: Pretrial Instructions in Civil Cases (last updated March 17, 2025).

The Parties respectfully reserve the right to amend or supplement these proposed instructions and their objections thereto as the case proceeds towards trial, as the Parties continue to meet and confer regarding these instructions, and as the Court considers these proposals and objections.

| No. # | Description | Whether the Parties Stipulate or Object |
|---|---|---|
| **Preliminary Instruction** | | |
| 1. | Duty of Jury | Stipulated |
| 2. | Claims and Defenses | Irvington objects to this instruction in part. The parties propose conflicting modifications. |
| 3. | Companies and Public Entities | Defendants propose a modified instruction to which Irvington objects. |
| 4. | Burden of Proof – Preponderance of the Evidence | Stipulated |
| 5. | Two or More Parties – Different Legal Rights | Defendants propose a modified instruction to which Irvington objects. |
| 6. | What is Evidence? | Stipulated |
| 7. | Direct and Circumstantial Evidence | Stipulated |
| 8. | What is Not Evidence? | Stipulated |
| 9. | Evidence for a Limited Purpose | Stipulated |
| 10. | Ruling on Objections | Stipulated |
| 11. | Credibility of Witnesses | Stipulated |
| 12. | Publicity During Trial | Stipulated |
| 13. | No Transcript Available | Stipulated |

| 14. | Bench Conferences and Recesses | Stipulated |
|---|---|---|
| 15. | Video Deposition | Stipulated |
| 16. | Expert Opinion Testimony | Stipulated |
| 17. | Protection for Publishing and Expressive Activity | Irvington objects to this instruction in full. Irvington has proposed a competing instruction to the extent this instruction is included over its objection. |
| **First Claim - Negligence** | | |
| 18. | Negligence | The Parties propose conflicting modifications. |
| 19. | Foreseeability | The Parties propose conflicting modifications. |
| 20. | Heeding Presumption | Defendants object to this instruction in full. Defendants have proposed edits to the extent this instruction is included over their objection. |
| 21. | Adequate Warning or Instruction | Defendants object to any instruction related to Irvington's failure-to-warn theory but offer this instruction if the Court rules that theory is viable. Irvington objects to this instruction but proposes revisions if the Court rules this instruction should be given. |
| 22. | Proximate Cause | Irvington objects to this instruction. The Parties propose conflicting modifications if the Court rules this instruction is proper. |
| 23. | Proximate Cause – Concurrent Cause | The Parties propose conflicting modifications. |
| 24. | Proximate Cause – Intervening / Superseding Cause | Defendants object to this instruction in full. Defendants have proposed edits to the extent this instruction is included over Defendants' objection. Irvington stipulates to remove if Defendants will not argue that there is an intervening or superseding cause. |
| 25. | More Vulnerable or Susceptible Plaintiff | Defendants object to this instruction in full. Defendants have proposed edits to the extent this instruction is included over their objection. |
| 26. | No Duty to Prevent Harm Caused by | The Parties propose conflicting |

| | Third Parties | instructions. |
|---|---|---|
| 27. | Statute of Limitations | Irvington objects to this instruction in full. Irvington has proposed edits to the extent this instruction is included over its objection. |
| 28. | Comparative Negligence | Irvington objects to this instruction in full. Irvington has proposed edits to the extent this instruction is included over its objection. |
| 29. | Duty to Mitigate | Irvington objects to this instruction in full. Irvington has proposed edits to the extent this instruction is included over its objection. |
| 30. | Damages | The Parties propose conflicting modifications. |
| 31. | Compensatory Damages | Defendants object to this instruction in full. Defendants have proposed edits to the extent this instruction is included over their objection. |
| 32. | Future Damages | Defendants object to this instruction in full. Defendants have proposed edits to the extent this instruction is included over their objection. |
| 33. | Apportionment for Indivisible Harm / Damages from Multiple Defendants | The parties propose conflicting instructions |
| 34. | Punitive Damages | Defendants object to this instruction in full. Defendants have proposed edits to the extent this instruction is included over their objection. |
| **STOP (Closing Arguments)** | | |
| **Post-Closing Instructions** | | |
| 36. | Duty to Deliberate | Stipulated |
| 37. | Consideration of Evidence | Stipulated |
| 38. | Communications with Court | Stipulated |
| 39. | Return of Verdict | Stipulated |

4

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

IN RE: SOCIAL MEDIA ADOLESCENT
ADDICTION/PERSONAL INJURY
PRODUCTS LIABILITY LITIGATION

Case No. 4:23-CV-01467-YGR

This Document Relates to:

*Irvington Public Schools*

**JURY INSTRUCTIONS (COVER PAGE)**

Dated: _____

_____

UNITED STATES DISTRICT JUDGE

## I.    PRELIMINARY INSTRUCTIONS[1]

### Jury Instruction # 1

### Duty of Jury

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

AUTHORITY:          Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2025 ed., last updated September 2025) ("Ninth Cir. Model Instructions"), Instruction No. 1.4.

DATE SUBMITTED:          January 28, 2026

---

[1]    The Parties submit, as Exhibits A and B, redlines reflecting the Parties' proposed modifications to the 9th Circuit Model Instructions, consistent with the Court's Standing Order at Paragraph 3(g)(ii)(H).  The Parties understand that this instruction relates solely to the 9th Circuit Model Instruction and does not apply to any model or pattern instructions regarding state law. However, the Parties are happy to provide such redlines against the state law model instructions if it would be helpful to the Court.

**Jury Instruction # 2**

**Claims and Defenses**

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The plaintiff in this case is Irvington Public Schools. The Defendants in this case are four separate groups of [technology] [social media] companies:

1. Meta Platforms, Inc. f/k/a Facebook, Inc.; and Instagram, LLC, referred to collectively as "Meta;"

2. Snap Inc., referred to as "Snap";

3. TikTok Inc., ByteDance Inc., ByteDance Ltd., TikTok Ltd., and TikTok, LLC, referred to collectively as "TikTok;" and

4. YouTube, LLC and Google LLC, referred to collectively as "YouTube."

Collectively, these [four groups] [social media companies] are referred to as "Defendants."

Irvington Public Schools claims that Defendants developed and operated their online platforms specifically Instagram, Facebook, TikTok, Snapchat, and YouTube—in a manner that caused mental health harms to Irvington Public Schools' students and led to additional expenses for the school district.

Irvington Public Schools brings a claim of negligence against Defendants Irvington Public Schools asserts that the Defendants negligently designed, operated, and/or marketed their social media platforms in ways that harmed students and schools. Irvington Public Schools asserts that the Defendants' actions caused students to experience problematic use, compulsive use, and/or addiction to their platforms, resulting in a deterioration of youth learning, mental health, and overall well-being. Irvington Public Schools also asserts that Defendants' actions disrupted school operations and negatively impacted the school environment. Irvington Public Schools asserts that Defendants' actions harmed it by requiring Irvington Public Schools to expend and redirect already limited resources. Irvington Public Schools further asserts that its harms are ongoing and will continue in the future. Irvington Public Schools asserts that the consequences of Defendants' actions were foreseeable, and Defendants failed to warn about those consequences.

1    Irvington Public Schools brings a claim of negligence against each Defendant. Irvington

2    Public Schools has the burden of proving its negligence claim as to each Defendant. Later I will

3    explain the specific legal requirements for that claim.

4    [The] Defendants deny Irvington Public Schools' claim. Defendants also assert three

5    affirmative defenses: (1) statute of limitations, (2) comparative negligence/fault, and (3) failure to

6    mitigate damages. Defendants have the burden of proof on these affirmative defenses. Irvington

7    Public Schools denies Defendants' affirmative defenses.

8    Later I will explain the specific legal requirements that the parties must prove for each claim

9    or defense.

10

11    ± Irvington's proposal in red text; Defendants' proposal in blue text.

12

13    OBJECTION: Irvington objects to instructing about affirmative defenses where Defendants have

14    failed to identify facts or evidence that would support them.

15

16    AUTHORITY: Ninth Circuit Model Civil Jury Instruction No. 1.5 (2017, rev. 2025).

17

18    DATE SUBMITTED:          January 28, 2026

19

20

21

22

23

24

25

26

27

28

1    **IRVINGTON'S POSITION ON INSTRUCTION 2:**

2    **Social Media Companies.**  Defendants' refusal to describe themselves as "social media

3    companies" is unjustifiable. Demanding that they only be called "technology companies" is unduly

4    restrictive for no legitimate reason, confusing, and prejudicial because it does not match reality, the

5    testimony, or documentary evidence that will be admitted at trial, which commonly refers to

6    Defendants as social media companies, including their own press releases. Nor is it prejudicial to

7    Defendants to call them social media companies; that *is* what they are, hence the case caption.

8        To the extent YouTube specifically objects, its own internal documents refer to it as social

9    media. As far back as 2020, YouTube explicitly stated that "YouTube is the most popular social

10   media site used by 15-25 year olds." (GOOG-3047MDL-00402817). Likewise, Snap engaged in

11   press relations research to develop "strategic" proposals to "focus on framing Snap as a tech

12   company, rather than social media, motivated by innovation that will define the coming years and

13   decades." (SNAP3222970).

14   **Statement of Case.**  Irvington's proposed instruction includes an accurate and neutral

15   description of its theories of liability to provide the jury with essential context regarding the claims

16   at issue, as the Court has requested.  *See* YGR Pretrial Standing Order 3(h) ("The parties shall

17   propose a short, non-argumentative joint statement of the case ***to be read to the jury.***" (emphasis

18   added)). It is also consistent with the Court's common practice.  *see, e.g.*, *AngioScore, Inc. v.*

19   *TriReme Medical, Inc.*, *et al.*, No. 4:12-cv-03393-YGR, ECF No. 800, at *2 (N.D. Cal. Oct. 1,

20   2015) ("AngioScore also argues that Defendants have actively induced others to infringe" specific

21   patent claims with specific products); *Genentech, Inc. v. Biogen MA, Inc.*, 4:23-cv-00909-YGR,

22   ECF No. 202, at *2 (N.D. Cal. July 2, 2025) ("Genentech is claiming that Biogen breached the

23   agreement by failing to pay royalties on Tysabri that Biogen manufactured in or imported into the

24   United States before Cabilly expired on December 18, 2018, but sold after that date"); *Zertuche v.*

25   *Cnty. of Santa Clara et al.*, No. 4:11-cv-03691-YGR, ECF No. 157, at *3 (N.D. Cal. Nov. 20, 2013)

26   (outlining plaintiff's claim that "she was retaliated against on account of complaints that she made

27   concerning whether the Independent Defense Counsel Office was operated in a proper and ethical

28   manner" and explaining three specific forms of retaliation); *Trulove v. D'Amico et al.*, No. 4:16-

9

cv-00050-YGR, ECF No. 508, at *17 (N.D. Cal. Apr. 4, 2018) (outlining plaintiff's theories of deprivation of due process rights and defendants' conspiracy).

Defendants' statement of the case is cursory and does not explain the nature of the harm or Irvington's theory of the case. It does little to inform the jury beyond naming the parties. *See Prioleau v. Kentucky Fried Chicken, Inc.*, 122 A.3d 328, 334 (N.J. 2015) ("Jury charges must outline the function of the jury, set forth the issues, correctly state the applicable law in understandable language, and plainly spell out how the jury should apply the legal principles to the facts as it may find them." (cleaned up)).

**"Defendants" vs. "a Defendant."** Irvington's references to "Defendants" in the collective is appropriate for this instruction because it summarizes allegations that Irvington asserts uniformly against all Defendants. It does not—as Defendants claim—relieve Irvington of its obligation to prove causation against each Defendant, which Irvington addresses in a separate instruction. *See infra* [Proximate Cause].

**Evidence Does Not Support Instruction on Affirmative Defenses.** Irvington also objects to Defendants' instruction on affirmative defenses. Under New Jersey law, "[a] jury instruction that has no basis in the evidence is insupportable, as it tends to mislead the jury." *Prioleau*, 122 A.3d at 257 (quoting *Dynasty, Inc. v. Princeton Ins. Co.*, 754 A.2d 1137, 1143-44 (N.J. 2000)). As explained in Irvington's specific objections to Defendants' proposed instructions on each of these defenses, Defendants have not articulated nor substantiated any basis from which the jury may find comparative fault, duty to mitigate, or a statute of limitations bar. *See infra* [Statute of Limitations]; [Comparative Negligence]; [Duty to Mitigate]. Because they lack a basis in the evidence, these instructions should not be delivered for their tendency to mislead the jury.

To the extent the Court denies any or all of Defendants' affirmative defense instructions, it should also remove any mention of those instructions in this preliminary instruction.

1    **DEFENDANTS' POSITION ON INSTRUCTION 2:**

2    Defendants propose instructing the jury according to Ninth Circuit Model Civil Jury

3    Instruction No. 1.5, modified to reflect the facts of this case. Defendants' proposal accurately and

4    neutrally describes the Parties, the nature of Irvington's claim, and Defendants' affirmative defenses

5    to that claim. In contrast, Irvington's instruction improperly lumps Defendants together and

6    includes inappropriate argument. For these reasons, the Court should instruct the jury using

7    Defendants proposal.

8    Defendants' proposal clearly describes the Defendants in this case and their relationships to

9    each other. It also accurately reflects—without unduly emphasizing—the fact that jurors must

10   decide Irvington's claim as to each defendant individually under New Jersey law. *See Kurak v. A.P.*

11   *Green Refractories Co.*, 689 A.2d 757, 766 (N.J. Super Ct. App. Div. 1997) (entering judgment

12   notwithstanding the verdict where no causation evidence existed as to that defendant, despite

13   sufficient evidence as to another defendant). In contrast, Irvington's proposal improperly lumps

14   Defendants together, suggesting not only that the four groups described in the instruction are

15   "referred to collectively," but also that they may be considered collectively for all purposes. The

16   jury must assess each Defendant separately based on the unique evidence of the specific

17   Defendant's conduct. Permitting the jury to impute the actions of each Defendant to all other

18   Defendants—as Irvington's proposal suggests—would prejudice Defendants.

19   Defendants object to the use of "social media" to describe their platforms. YouTube and

20   Snap do not agree with the characterization of their platforms as "social media," and that will be a

21   contested fact at trial. This Court should, instead, adopt the neutral language that Defendants

22   propose.

23   Defendants' proposal also properly describes all claims and affirmative defenses at issue in

24   this case, as required by Model Instruction No. 1.5. And to the extent Irvington objects there is

25   insufficient evidence to instruct the jury on these defenses, it is mistaken. *Infra* Instruction No. 26

26   (Statute of Limitations), Instruction No. 29 (Comparative Negligence), Instruction No. 30 (Duty of

27   Mitigate).

28

1    Irvington's proposal includes an unnecessary and argumentative discussion of Defendants'

2    alleged conduct and Irvington's alleged injuries that would improperly influence the jury and

3    prejudice Defendants.  *See United States v. Jackson*, 72 F.3d 1370, 1380 (9th Cir. 1995) (affirming

4    rejection of argumentative proposed jury instructions); *Bird v. Lewis & Clark Coll.*, 303 F.3d 1015,

5    1022 (9th Cir. 2002) (affirming trial court denial of proposed jury instructions that were

6    "argumentative and misleading").

7    To the extent Irvington argues such an explanation is warranted under the Court's standing

8    order directing the Parties to prepare a "joint statement of the case to be read to the jury," it is

9    mistaken.  Standing Order re: Pretrial Instructions in Civil Cases of Judge Yvonne Gonzales Rogers

10   at 3(h) [hereafter Standing Order].[2]  First, Irvington's proposed language fails to follow the Court's

11   direction to prepare a "non-argumentative" statement.   Second, the Standing Order's structure

12   makes clear that the joint statement is not intended to be included in the jury instructions.  See

13   Standing Order at 3(g)–(h) (describing requirements for "Jury Instructions" and "Preliminary

14   Statement of the Case" in separate sections).  Third, the Court's practice of reading jury instructions

15   (including those from Chapter 1 of the Ninth Circuit's Model Instructions) "AFTER the close of

16   evidence" reinforces the argumentative nature of Irvington's proposal because such an instruction

17   would result in the Court recapitulating Irvington's theories for the jury immediately prior to closing

18   arguments.

19

20

21

22

23

24

25

26

27

28

---

[2]    Defendants maintain that summary judgment should be granted because Plaintiffs have not identified any actionable conduct that caused their alleged harms, and they submit these proposed instructions without waiving such arguments.

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS

**Jury Instruction # 3**

**Companies and Public Entities**

The Defendants in this case are companies. The Plaintiff in this case is a public entity. All parties are equal before the law. Companies and public entities are entitled to the same fair and conscientious consideration by you as any party. Under the law, Plaintiff and Defendants are each considered to be a person and can only act through its subsidiaries, employees, agents, directors, or officers.  Therefore, Plaintiff and Defendants are each responsible for the acts of its subsidiaries, employees, agents, directors, and officers performed within the scope of their authority. An employee, agent, director, or officer is acting within the scope of authority if he or she is engaged in the performance of duties which were expressly or impliedly assigned to them by the corporation.

± Defendants' proposal in blue text.

AUTHORITY:           Ninth Cir. Model Instructions, Instruction Nos. 4.1, 4.2, and 4.5
                     (modified).

DATE SUBMITTED:           January 28, 2026

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS

1    **IRVINGTON'S POSITION ON INSTRUCTION 3:**

2    The parties began with the Ninth Circuit Model Civil Jury Instructions 4.1 (Corporations

3    and Partnerships – Fair Treatment) and 4.2 (Liability of Corporations – Scope of Authority Not in

4    Issue), which instruct on treating corporate parties fairly and explain that corporations can be held

5    accountable through their employees and officers. The parties agreed to revise the instruction to

6    say "companies" rather than "corporations" (as LLCs are technically companies, but not

7    corporations), and to instruct the jury that they also should not treat Bellwether School District

8    Plaintiffs differently by nature of the fact that they are public entities.

9    The parties conferred about the applicability of Model Civil Jury Instruction 4.2, which

10   instructs the jury on how to determine liability for corporations—a pattern instruction that

11   contemplates that scope of authority is *not* at issue. Plaintiffs believe this instruction may be useful,

12   as the jury will hear testimony from both parties' employees.

13   However, Defendants also suggested including language from Model Civil Jury Instruction

14   4.5 (Agent – Scope of Authority Defined), which goes on to describe what conduct falls "within

15   the scope of authority." Plaintiffs objected to this language, because no party has suggested that

16   any person was not acting within the scope of their authority. Further, Defendants have failed to

17   bring to Plaintiffs' attention any live dispute regarding the liability of parent corporations with

18   respect to the actions of their subsidiaries.[3] Because the jury will not be asked to determine when

19   an employee acts within the scope of their authority, that instruction language is not relevant for

20   the purposes of this case, and risks confusing the jury about what issues they must decide. When

21   given this explanation, Defendants then objected that language from Model Instruction 4.5 is

22   necessary to prevent juror confusion about the meaning of the reference to "scope of authority" in

23   Model Civil Jury Instruction 4.2. The solution there is simple: rather than instruct the jury on an

24   irrelevant concept which may introduce new legal issues and confusion, just remove the language

25   regarding the scope of an employee's authority from Model Instruction 4.2.

26

27   _____

[3]    *E.g.* Order on Stipulation to Dismiss Certain Meta Defendants, ECF 2401 at 1 ("Meta

28   Platforms Inc. agrees not to assert as a defense to liability in this Matter that it is not responsible
for any actions or inactions alleged by Bellwethers as wrongful on the grounds that such actions or
inactions were taken in whole or in part by any or all of the Meta Subsidiaries.").

Plaintiffs' proposal informs the jury on all relevant issues of law that will help them resolve the questions they are tasked with answering.

1    **DEFENDANTS' POSITION ON INSTRUCTION 3:**

2          The Parties jointly propose giving an instruction based on Ninth Circuit Model Instructions

3    4.1 and 4.2, slightly modified for the facts of this case. In doing so, Defendants also seek to include

4    in this instruction Ninth Circuit Model Instruction 4.5, which is similarly modified for the facts of

5    this case. Irvington objects to the inclusion of language from Model Instruction 4.5 ("An agent is

6    acting within the scope of authority if the agent is engaged in the performance of duties which were

7    expressly or impliedly assigned to the agent by the principal."), and the final clause of Model

8    Instruction 4.2 ("Therefore, a corporation is responsible for the acts of its employees, agents,

9    directors, and officers performed within the scope of authority.").

10          Defendants propose this language because the "scope of authority" is integral to

11    understanding and then applying agency law. What is more, Irvington provides no authority for the

12    position that Defendants can be held liable for acts of their agents performed outside the scope of

13    their authority. Because several Defendant groups include parent companies and subsidiaries, this

14    language is necessary for the jury to determine potential liability of parent organizations for actions

15    taken by subsidiaries or employees of subsidiaries. *See, e.g.*, *Brit. Telecommunications PLC v.*

16    *IAC/InteractiveCorp*, 356 F. Supp. 3d 405, 409 (D. Del. 2019) (holding that "a parent corporation

17    is held liable for the actions of its subsidiary if the parent directed or authorized those actions"

18    under an agency theory if the relationship is directly related to the cause of action) (citing *Phoenix*

19    *Canada Oil Co. Ltd. v. Texaco, Inc.*, 842 F.2d 1466, 1476-77 (3d Cir. 1988)); *Williams v. Yamaha*

20    *Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017) (proving agency relationship between parent and

21    subsidiary requires that establishing that the agent "act[ed] on the principal's behalf and subject to

22    the principal's control" (quoting Restatement (Third) Of Agency § 1.01 (2006)).

23          The Court should give Defendants' requested language in this instruction because it clearly

24    states the law—and Irvington fails to provide any basis for rejecting a model instruction.

25

26

27

28

**Jury Instruction # 4**

**Burden of Proof – Preponderance of the Evidence**

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more likely true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

AUTHORITY: Ninth Circuit Manual of Model Civil Jury Instructions, Instruction No. 1.6.

DATE SUBMITTED:          January 28, 2026

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS

**Jury Instruction # 5**

**Two or More Parties – Different Legal Rights**

You should decide the case as to each party separately.  A Defendant is responsible only for its own conduct, and one Defendant cannot be liable as a result of conduct by a different Defendant.  Unless otherwise stated, the instructions apply to all parties.

± Defendants' proposal in blue text.

AUTHORITY:          Ninth Cir. Model Instructions, Instruction No. 1.8 (modified).

DATE SUBMITTED:          January 28, 2026

1  **IRVINGTON'S POSITION ON INSTRUCTION 5:**

2      Plaintiffs propose the pattern instruction language from Ninth Circuit Model Civil Jury

3  Instruction 1.8. Defendants' additional language ("A Defendant is responsible only for its own

4  conduct, and one Defendant cannot be liable as a result of conduct by a different Defendant.")

5  invites juror confusion and misstates the law for causation by multiple tortfeasors, which each

6  Bellwether School District Plaintiff alleges.

7      Each state has developed law for instances of multiple causes that combine or commingle

8  to produce harm: in cases involving multiple alleged tortfeasors whose actions allegedly

9  contributed to an indivisible harm, the plaintiff is required to show that each defendant was a cause-

10  in-fact (typically substantial factor, though Georgia objects that "substantial" sets the bar even too

11  high) before that defendant can be held liable. *See Holland v. United Servs. Auto. Ass'n*, 707 S.W.3d

12  541, 556 (Ky. Ct. App. 2025); *Salica v. Tucson Heart Hosp.-Carondelet, L.L.C.*, 231 P.3d 946,

13  950-51 (Ariz. Ct. App. 2010); *Deaton Holdings, Inc. v. Reid*, 888 S.E.2d 333, 336 (Ga. Ct. App.

14  2023); *Carter v. Wallace & Gale Asbestos Settlement Tr.*, 96 A.3d 147, 157-59 (Md. Ct. App.

15  2014); *Boryszewski ex rel. Boryszewski v. Burke*, 380 N.J. Super. 361, 376 (App. Div. 2005); *Jolly

16  v. Gen. Elec. Co.*, 869 S.E.2d 819, 829 (S.C. Ct. App. 2021).

17      However, and crucially important, under every state's law, if a defendant is determined to

18  be a cause of the indivisible harm, then it is liable for causing the entire harm. This means that

19  Defendants' language that a Defendant "is responsible only for its own conduct" is not wholly true.

20  Plaintiffs must show that each Defendant was a cause-in-fact and a proximate cause of the harm

21  the Plaintiff alleges, but once shown, all Defendants are responsible for the entire harm.

22      In three of the bellwether states—South Carolina, New Jersey, and Maryland—every

23  defendant is jointly-and-severally liable for the full amount of damages. *Pratt v. Amisub of SC, Inc.*,

24  912 S.E.2d 268, 282-83 (S.C. Ct. App. 2025); *O'Brien (Newark) Cogeneration, Inc. v. Automatic

25  Sprinkler Corp. of Am.*, 825 A.2d 524, 531-32 (NJ App. Div. 2003); *Consumer Prot. Div. v.

26  Morgan*, 874 A.2d 919, 950 (Md. App. Ct. 2005). In Kentucky, Arizona, and Georgia, the jury

27  apportions damages according to the proportionate fault of the tortfeasors. *Owens Corning

28  Fiberglas Corp. v. Parrish*, 58 S.W.3d 467, 477 n. 30 (Ky. 2001); *Piner v. Superior Ct. in and for

1   *Cnty. of Maricopa*, 962 P.2d 909, 916 (Ariz. 1998) (en banc); *Fed. Deposit Ins. Corp. v.*

2   *Loudermilk*, 826 S.E.2d 116, 126 (Ga. 2019).  Either way, in all six states, for purposes of causation,

3   the defendant is considered to have caused the harm as a whole. *See Owens Corning Fiberglas*

4   *Corp. v. Parrish*, 58 S.W.3d 467, 477 n. 30 (Ky. 2001); K.R.S. § 411.182; *Piner v. Superior Ct. in*

5   *and for Cnty. of Maricopa*, 962 P.2d 909, 916 (Ariz. 1998) (en banc); *Deaton Holdings, Inc.*, 888

6   S.E.2d at 336; O.G.C. § 51-12-33; *Carter*, 96 A.3d at 157-59; *Reichert v. Vegholm*, 366 N.J. Super.

7   209, 221 (App. Div. 2004); *Smith v. Tiffany*, 799 S.E.2d 479, 481 (S.C. 2017); S.C. Code § 15-38-

8   15.

9       The only way that a defendant can avoid responsibility for causing an entire indivisible

10   harm is to prove that (1) the harm is actually divisible, and (2) evidence exists that would allow the

11   jury to connect a particular Defendant's actions to a particular part of the divisible harm. Defendants

12   have the burden to show each aspect of apportionability; otherwise, the harm is considered

13   indivisible, and all contributing tortfeasors are considered responsible for the whole. *See*

14   Restatement (Second) Torts §§ 433A, 433B (1965); *see also Parrish*, 58 S.W.3d at 477 n.28; *Piner*,

15   962 P.2d at 916; *Polston v. Boomershine Pontiac-GMC Truck, Inc.*, 423 S.E.2d 659, 660-61 (Ga.

16   1992); *Carter*, 96 A.3d at 159-60; *Reichert*, 366 N.J. Super. at 221.

17       Despite appearing to suggest at the summary judgment hearing that they would not seek

18   instructions that would require *Plaintiffs* to apportion causation, Defendants repeatedly propose

19   jury instructions throughout each Bellwether School District Plaintiff's jury instruction set that ask

20   exactly that—and here as well.

21       Because Defendants' proposed language suggests that liability must be limited according

22   to each Defendants' causal contribution to the harm, despite no Defendant proving that any

23   Plaintiff's harm is capable of divisibility, the proposal misstates the law and invites jurors to err in

24   their consideration of the evidence. The Court should reject Defendants' added language, and

25   instead give the Ninth Circuit pattern language as written.

26

27

28

1    **DEFENDANTS' POSITION ON INSTRUCTION 5:**

2           Defendants propose adding a sentence to Ninth Circuit Model Instruction 1.8 to explicitly

3    instruct the jury on the implications of "decid[ing] the case as to each party separately."  This

4    additional language makes good sense not least because it is black letter law in New Jersey that one

5    party cannot be held liable for the actions of another unless the principles of agency (on which the

6    jury will be instructed) require such a finding of liability.  In all other instances, a defendant is only

7    responsible for its own conduct. Moreover, New Jersey law requires Irvington to  prove that its

8    injuries were individually caused by each Defendant.  *See Kurak*, 689 A.2d at 766  (entering

9    judgment notwithstanding the verdict where no causation evidence existed as to that defendant,

10   despite sufficient evidence as to another defendant).  Thus, Irvington has no legal basis to object to

11   this instruction, which would be helpful to the jury alongside aiding in avoiding confusion over

12   how to view corporate separateness among distinct legal entities.

13          This modification to the Model Instruction will also prevent confusion for the jury.

14   Repeatedly throughout Irvington's proposed substantive instructions, Defendants are referenced as

15   a group. Defendants have objected to this "lump[ing]" together of Defendants and proposed

16   alternative language where appropriate.  Despite these objections, however, the jury may still fail

17   to appropriately consider Irvington's claims against each Defendant separately or to recognize what

18   it means to consider the claims separately.  And this concern becomes particularly acute if the Court

19   does not adopt Defendants' proposed language in the substantive instructions.   Thus, this

20   modification to the Model Instruction will aid the jury in faithfully applying the substantive law.

21          Finally, Irvington's argument that the clarification Defendants propose is improper because

22   Irvington suffered an indivisible injury is without merit.  Irvington's alleged injuries are not

23   indivisible because a "rational basis" (the nature of Defendants' allegedly negligent conduct) exists

24   for the jury to assign fault, and that is all that is required.  *Baglini v. Lauletta*, 768 A.2d 825, 838

25   (N.J. Super. Ct. App. Div. 2001).   This "permissive standar[d] reflect[s] New Jersey's policy of

26   favoring apportionment among responsible parties."  *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 108

27   (3d Cir. 2012).  It is a fundamental principle of New Jersey law that fairness requires "that each

28   person only pay for injuries he or she proximately caused."  *Waterson v. Gen. Motors Corp.*, 544

A.2d 357, 372 (1988).  That is true even in actions where the substantial factor test applies *and* New Jersey's Comparative Negligence Act explicitly permits joint and several liability.  *See Kurak*, 689 A.2d at 765–66 (considering defendants' liability separately in asbestos case applying substantial factor test); N.J.S.A. 2A:15-5.3(d) (providing unique for joint and several liability in "environmental tort actions . . . except in cases where the extent of negligence or fault can be apportioned"); N.J.S.A. 2A:58C-1 ("'Environmental tort action" means a civil action seeking damages for harm where the cause of the harm is exposure to toxic chemicals or substances . . . .").  That makes sense.  Joint and several liability—for whatever reason imposed—is not a "liability doctrine." *Erny v. Est. of Merola*, 792 A.2d 1208, 1214–15 (N.J. 2002).  It is merely a "damages provision."

**Jury Instruction # 6**

**What is Evidence?**

The evidence you are to consider in deciding what the facts are consists of:

    1.  The sworn testimony of any witness;

    2.  The exhibits that are admitted into evidence;

    3.  Any facts to which the lawyers have agreed; and

    4.  Any facts that I have instructed you to accept as proved.

AUTHORITY:        Ninth Cir. Model Instructions, Instruction No. 1.9.

DATE SUBMITTED:      January 28, 2026

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS

**Jury Instruction # 7**

**Direct and Circumstantial Evidence**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night.  However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.


AUTHORITY:              Ninth Cir. Model Instructions, Instruction No. 1.12 (modified to include
                        illustrative example suggested in comment to Instruction 1.12).


DATE SUBMITTED:         January 28, 2026

**Jury Instruction # 8**

**What is Not Evidence?**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

1.  Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.  Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

3.  Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.

4.  Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

AUTHORITY:          Ninth Cir. Model Instructions, Instruction No. 1.10 (modified).


DATE SUBMITTED:          January 28, 2026

1

**Jury Instruction # 9**

2

**Evidence for a Limited Purpose**

3 *[The Parties agree to this instruction on the condition that it be given only if there is a limiting*

4 *instruction ordered.]*

5          Some evidence may be admitted only for a limited purpose.

6          When I instruct you that an item of evidence has been admitted only for a limited purpose,

7 you may consider it only for that limited purpose and not for any other purpose.

8

9 AUTHORITY:          Ninth Cir. Model Instructions, Instruction No. 1.11.

10

11 DATE SUBMITTED:          January 28, 2026

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Jury Instruction # 10**

**Ruling on Objections**

*[The Parties propose this instruction be given before the start of evidence.]*

There are rules of evidence that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.

If I overrule the objection, the question may be answered, or the exhibit received.  If I sustain the objection, the question cannot be answered, and the exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence.  That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

AUTHORITY:            Ninth Cir. Model Instructions, Instruction No. 1.13.

DATE SUBMITTED:            January 28, 2026

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS

**Jury Instruction # 11**

**Credibility of Witnesses**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

    1.  the opportunity and ability of the witness to see or hear or know the things testified to;

    2.  the witness's memory;

    3.  the witness's manner while testifying;

    4.  the witness's interest in the outcome of the case, if any;

    5.  the witness's bias or prejudice, if any;

    6.  whether other evidence contradicted the witness's testimony;

    7.  the reasonableness of the witness's testimony in light of all the evidence; and

    8.  any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently.  You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.  On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.  What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

1    AUTHORITY:              Ninth Cir. Model Instructions, Instruction No. 1.14.

2

3    DATE SUBMITTED:              January 28, 2026

**Jury Instruction # 12**

**Publicity During Trial**

*[The Parties propose this instruction be given before the start of evidence.]*

If there is any news media account or commentary about the case or anything to do with it, you must ignore it. You must not read, watch or listen to any news media account or commentary about the case or anything to do with it. The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies. If any juror is exposed to any outside information, please notify me immediately.


AUTHORITY:          Ninth Cir. Model Instructions, Instruction No. 1.16.


DATE SUBMITTED:          January 28, 2026

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS

**Jury Instruction # 13**

**No Transcript Available**

*[The Parties propose this instruction be given before the start of evidence.]*

I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony.

AUTHORITY:          Ninth Cir. Model Instructions, Instruction No. 1.17.

DATE SUBMITTED:          January 28, 2026

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS

**Jury Instruction # 14**

**Bench Conferences and Recesses**

*[The Parties propose this instruction be given before the start of evidence.]*

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of you the jury, either by having a conference at the bench when you the jury are present in the courtroom, or by calling a recess. Please understand that when this happens and you are waiting, we will be working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

AUTHORITY:              Ninth Cir. Model Instructions, Instruction 1.20 (modified).

DATE SUBMITTED:              January 28, 2026

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS

**Jury Instruction # 15**

**Video Deposition**

*[The Parties propose this instruction be given before the start of evidence.]*

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.

You will be shown video-recorded testimony of certain witnesses. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

AUTHORITY:          Ninth Cir. Model Instructions, Instruction 2.4 (modified).

DATE SUBMITTED:          January 28, 2026

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS

**Jury Instruction # 16**

**Expert Opinion Testimony**

You have heard testimony from experts who testified about their opinions and the reasons for those opinions. This opinion testimony is allowed, because of the specialized knowledge, skill, experience, training, or education of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's specialized knowledge, skill, experience, training, or education, the reasons given for the opinion, and all the other evidence in the case.

AUTHORITY:          Ninth Cir. Model Instructions, Instruction 2.13.

DATE SUBMITTED:          January 28, 2026

**Jury Instruction # 17P**

**Section 230**

In this case, you may not hold Defendants liable simply because Defendants hosted or published users' content, or because they removed or failed to remove content posted by users.

However, in deciding whether Defendants are liable for negligence, you may hold Defendants liable for their own actions, even if users' content contributed to the harm, so long as Defendants' actions were a substantial factor in causing harm to Irvington Public Schools. You may also hold Defendants liable for failing to warn about the risks of harm caused by their platforms even if users' content contributed to the harm, so long as Defendants' failure to warn was a substantial factor in causing harm to Irvington Public Schools.

AUTHORITY: N/A

OBJECTION: Defendants object to this instruction and propose the Court give their competing instruction.

DATE SUBMITTED:          January 28, 2026

**Jury Instruction # 17D**

**Protection for Publishing and Expressive Activity**

Defendants in this case are providers of online platforms that publish their own content and content generated by users. The U.S. Constitution's First Amendment, as well as a federal law called Section 230, provide certain protections for Defendants when they publish such content or otherwise engage in expressive activity.

Under Section 230, Defendants are not liable when they act as publishers of "third-party content"—that is, content posted by the users of Defendants' platforms on those platforms. Such "third-party content" includes words, messages, pictures, video, audio, comments, or any other form of communication that users post, whether publicly or privately, on the Defendants' platforms. Each Defendant cannot be found liable under Section 230 for publishing third-party content on its platform, including whether, how, when, and to whom that content is published.

Under the First Amendment, each Defendant is not liable for exercising its right to speak or engage in expressive activity. That means each Defendant cannot be found liable for making available the content displayed on its platform, such as posts, text, videos, images, music, comments, and "likes," as well as recommending, delivering, displaying, compiling, ranking, and organizing posts, comments or other content made by users of its platform.

The Court has ruled that these legal protections apply to certain types of Defendants' conduct that are "Protected Conduct" and cannot be the basis for finding any Defendant liable. "Protected Conduct" includes making user content or communications available on Defendants' platforms. You may not find any Defendant liable on the basis of user content (e.g., posts) or communications (e.g., messages) published on the Defendant's platform—whether shared privately between users or shared publicly to a broader audience. In other words, if you find that user content or communications on a Defendant's platform caused some or all of the harms to students alleged by Irvington Public Schools, you may not find the Defendant liable on the basis of that user content or communications.

"Protected Conduct" also includes a Defendant's publishing decisions. You may not find any Defendant liable on the basis of its decisions about whether and how to compile, disseminate,

or display content to its users.  This protection applies even when a Defendant uses technological tools, like an algorithm that recommends content to users.

"Protected Conduct" also includes specific design features of Defendants' platforms that the Court has already ruled are protected by Section 230 and/or the First Amendment and cannot be the basis for finding any Defendant liable.

Therefore, you may not find any Defendant liable on the basis of any of the following ["Protected Conduct":

1. Making third-party content available on a Defendant's platform;
2. Making decisions about whether and how to recommend, compile, organize, disseminate, and display content to users of a Defendant's platform;
3. Using algorithms to encourage users to spend more time on a platform, including the use of algorithms to display content;
4. Providing users with an endless feed or infinite scroll;
5. Providing informational messages, notifications, or alerts about third-party content or a Defendant's own content, including the timing and clustering of those notifications and regardless of how they are sent (*i.e.*, audiovisually or through vibrations);
6. Not placing default protective limits on the length and frequency of use sessions;
7. Making decisions about whether or not to institute blocks preventing use of a platform during certain times of day (such as during school hours or late at night);
8. Making decisions to recommend certain accounts to certain users;
9. Providing content in short-form or ephemeral formats (i.e., formats that disappear after a certain period of time);
10. Allowing users to post or provide comments or to receive comments posted by others;
11. Allowing users to exchange, send, or post private content;
12. Publishing geolocating information (i.e., information about users' locations) for users;
13. Using autoplay features (i.e., videos playing automatically after a video ends);
14. Displaying "Likes" or listing the number of "Likes" certain content has received;
15. Providing awards to users, including to frequent users or for continuous engagement with a Defendant's platform.

Therefore, in evaluating whether Irvington Public Schools has met its burden to satisfy the elements of a claim as to each Defendant, you may consider only "Non-Protected Conduct," which consists only of the Defendant's design and/or use of the following:

["Non-Protected Conduct" list to be completed after ruling on MSJ and other motions and based upon case-specific evidence, but not to exceed the below list.]

1. Options for users to self-restrict time spent using a platform;
2. The process for users to delete their accounts;

3.  Labels for filtered content;
4.  Appearance-altering filters;
5.  Processes for users to report suspected child sexual abuse materials to Defendants' platforms.

You may impose liability, if any, only if the harm is caused by this Non-Protected Conduct and the other elements of each claim are met.  You may not find any Defendant liable on the basis that the Defendant's platform as a whole caused harm.  It is Irvington Public Schools' burden to prove that any harm it allegedly suffered was caused by Non-Protected Conduct.

I will now instruct you on the elements of each claim.

OBJECTION: Irvington objects to this instruction and proposes the Court give its competing instruction.

AUTHORITY: 47 U.S.C. § 230(c)(1); *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 702 F. Supp. 3d 809, 825–37 (N.D. Cal. 2023) (outlining relevant protections under Section 230 and the First Amendment); *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 754 F. Supp. 3d 946, 962–64 (N.D. Cal. 2024) (same, for school districts' claims); *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 878–85 (N.D. Cal. 2024) (same, for state attorneys general claims); *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1107 (9th Cir. 2009), *as amended* (Sept. 28, 2009) (holding that Section 230 "precludes liability when the duty the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a publisher or speaker"); *id.* at 1102 (publication "involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content"); *Estate of Bride by and through Bride v. Yolo Technologies, Inc.*, 112 F.4th 1168, 1180 (9th Cir. 2024) (Section 230 precludes failure-to-warn theories that fault platform "for not mitigating, in some, way, the harmful effects of . . . content"); *Doe v. Grindr*, 128 F.4th 1148 (9th Cir. 2025) (similar); U.S. Const. Amend. 1; *Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) ("If the acts of 'disclosing' and 'publishing' information do not constitute speech, it is hard to imagine what does fall within that category[.]"); *NetChoice, LLC v. Bonta*, 113 F.4th 1101, 1119 (9th Cir. 2024) (holding law that would require

platforms to "opine on potential speech-based harms to children" was subject to strict scrutiny and was likely invalid); *NetChoice v. Carr*, 789 F. Supp. 3d 1200 (N.D. Ga. June 26, 2025) (holding that age verification requirement "imposes a sweeping burden on adults' access to speech"); *Students Engaged in Advancing Texas v. Paxton*, 765 F. Supp. 3d 575, 559–600 (W.D. Tex. 2025) (similar); *NetChoice, LLC v. Griffin*, 2025 WL 978607, at *13 (W.D. Ark. Mar. 31, 2025) (similar).

DATE SUBMITTED:        January 28, 2026

1

2

**IRVINGTON'S POSITION ON INSTRUCTION 17:**

3

Plaintiffs' proposal accurately instructs the jury that it cannot impose liability on Defendants

4

for hosting or publishing users' content, or for removing or failing to remove content posted by

5

users. It also explains that Defendants may be held liable for their own actions, including failing to

6

warn of known risks from the platform as a whole, even if content is in the causal chain. That latter

7

instruction is in keeping with the Court's past rulings.[4] It is in keeping with the parties' longstanding

understanding of the Court's past rulings.[5] And it is in keeping with binding Ninth Circuit

8

precedent. *See Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 744 (9th Cir. 2024) ("In *Internet*

9

*Brands*, the platform faced liability not because it failed to remove the ads, but because it failed to

10

warn about their content. Thus, Plaintiffs' claims may fare better if they sought to impose liability

11

on Meta for failing to warn about fraudulent content….").

12

By contrast, Defendants' obtuse and bloated instruction invites the jury to apply the wrong

13

Section 230 test and disregard evidence the Court may deem admissible. It has three problems.

14

First, the instruction improperly tells the jury that Defendants "are not liable when they act as

15

publishers of 'third-party content.'" This is wrong. Section 230 protection hinges on the *legal duties*

16

being imposed, not whether or not Defendants act as publishers. *See e.g.*, *Lemmon v. Snap, Inc.*,

17

995 F.3d 1085, 1092–93 (9th Cir. 2021); *Calise*, 103 F.4th at 740-42. The duties at issue in this

18

case are, roughly, (a) a duty to warn students, parents, and school districts about the risk of

19

compulsive and addictive use from Defendants' platforms; (b) a duty not to negligently design and

20

21

---

22

[4]   ECF 430 at 20 (failure to warn claims "plausibly allege that defendants are liable for conduct other than publishing of third-party content and that they could address their duty without changing what they publish"); ECF 716 at 4-5 ("based on" Court's motion to dismiss ruling, "particularly with respect to Claims 2 and 4, the scope of discovery in this matter encompasses all product defects alleged"); ECF 1214 at 45 (Section 230 does not "bar[] liability predicated on a failure to warn of known risks of addiction attendant to any platform features or as to platform construction in general"); ECF 1267 at 14 (same); Hearing Tr. 27:24-28:9, Nov. 16, 2023 (affirming that the failure to warn claim extends beyond features barred by Section 230 for the product liability claims); Hearing Tr. 33:22-34:23, Mar. 21, 2024 (Judge Kang: "the Claims 2 and 4 were not dismissed and on the face of it keep any and all of the alleged defects in the case. That's the way I read the order.").

23

24

25

26

27

28

[5]   *See, e.g.*, Br. For Meta at 2, *California et al. v. Meta*, No. 24-7037 (9th Cir. Mar. 31, 2025) (Court permitted "plaintiffs' failure to warn claims relating to certain platform features to proceed, even though . . . other claims as to the same features are barred by Section 230").

target at young people platforms with defective age verification, parental controls, and other Court-specified features, *see* ECF 430 at 14-15; and (c) a duty not to interfere with the public rights to health, safety, and education through the foregoing actions. None of these duties would require Defendants to monitor or remove third-party content, or change how they publish content. As such, claims based on are not protected by Section 230. *See Calise*, 103 F.4th at 741.

Second, Defendants' instruction includes an instruction on "protected" versus "non-protected" features that is both confusing and legally incorrect. Under the Court's pretrial rulings, Defendants are protected from a state law duty to modify certain features such as their recommendation algorithm. But Section 230 does not protect Defendants from a duty to warn of known risks attendant to use of those same features. That duty *would* require Defendants to put others on notice of known harms, but it *would not* require Defendants to change anything about how, what, or when they publish. *See Internet Brands, Inc*., 824 F.3d at 851; *see also Est. of Bride by & through Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1179 (9th Cir. 2024) (no Section 230 protection where "online content is involved in these facts, and content moderation is one possible solution for [defendant] to fulfill its promise, [but] the underlying duty . . . is the promise itself").

Third, Defendants' instruction erroneously asks the jury to disregard whole categories of evidence *even if* the Court deems it admissible for certain purposes. *See* Defs' Instruction ("you <u>may</u> consider only "Non-Protected Conduct"). Facts that are not independently actionable may still be evidence in support of other claims. *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 633 n.61 (N.D. Cal. 2020). This principle extends to cases involving Section 230. *Calise*, 103 F.4th at 742 ("How could Internet Brands warn about certain harmful content without considering what it was? Such a rudimentary fact-bound inquiry quickly falls apart and runs up against our precedent."). Accordingly, the jury may properly hear evidence about the various mechanisms through which Defendants fostered compulsive use, their corporate knowledge about the same, and the resulting harm to students and school districts.

Finally, Judge Kuhl has indicated a First Amendment instruction would be improper, as the scope of protection is not a jury question, and the Court should take the same approach here.

1    **DEFENDANTS' POSITION ON INSTRUCTION 17:**

2          The Court has already ruled that Section 230 and the First Amendment impose a "significant

3    limitation on Plaintiffs' theories of recovery."  Dkt. No. 1267 ("SD Order") at 2.  To give effect to

4    these rulings, the Court must instruct the jury on which conduct may—and may not—form the basis

5    of liability.  Defendants' proposed instruction identifies the specific features and activities that this

6    Court has already held are protected as a matter of law, as well as those that may form the basis of

7    liability.   Without that specificity, the instructions would improperly invite the jury to find a

8    Defendant liable for conduct that is "no longer part of this case."[6]

9          Irvington's proposed instruction disregards the Court's "feature-by-feature" analysis

10   altogether and does not even mention any of the features or activities this Court held are protected.

11   SD Order at 12; *see also* Dkt. No. 430 ("PI Order") at 14–16.  Irvington's instruction would thus

12   improperly require the jury to determine on its own which features are protected, rather than

13   applying this Court's answers to those legal questions.  *See Tortu v. L.V. Metro. Police Dep't*, 556

14   F.3d 1075, 1085 (9th Cir. 2009) (courts must resolve legal questions and instruct the jury

15   accordingly).  And it creates a high risk of confusing the jury into thinking that *none* of Defendants'

16   conduct is protected.  *See L.A. Memorial Coliseum Comm'n v. Nat'l Football League*, 726 F.2d

17   1381, 1398 (9th Cir. 1984) ("Well-tailored and specific instructions" necessary where "abstract

18   legal principles are not self-explanatory to a lay jury" and facts "are complex" (citation omitted)).

19         Irvington's misguided assertion that its failure-to-warn theory renders the distinction

20   between protected and unprotected conduct irrelevant fails.  First, a substantial body of binding

21   case law has emerged since the Court's prior rulings confirming that Section 230 bars failure-to-

22   warn claims that arise from protected publishing activity, including challenged features.[7]  *See, e.g.*,

23   *Doe v. Grindr*, 128 F.4th 1148, 1154 (9th Cir. 2025); *Estate of Bride by and through Bride v. Yolo*

24   *Technologies, Inc.*, 112 F.4th 1168, 1179–80 (9th Cir. 2024); *Doe (K.B.) v. Backpage.com, LLC*,

25   _____

26   [6]      Defendants reserve the right to argue for the exclusion at trial of any evidence of content
     and protected publishing features.

27   [7]      In light of this intervening authority, Defendants did not include failure to warn in their
     list of non-protected conduct.  Defendants omitted age verification from the list for similar
28   reasons.  *See, e.g.*, *NetChoice v. Carr*, 789 F. Supp. 3d 1200, 1230 (N.D. Ga. 2025).

768 F. Supp. 3d 1057, 1067 (N.D. Cal. 2025). *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 743, 746 (9th Cir. 2024), is not to the contrary, because that case did not involve any failure- to-warn claims at all, and it held that Section 230 barred all of the plaintiff's non-contractual claims. *See id.* at 743, 746. Further, *Calise*'s discussion of failure-to-warn claims is *dicta*—not binding precedent—and it is inconsistent with the Ninth Circuit's subsequent decisions in *Bride* and *Grindr*.

In any event, even if the Court permits the failure-to-warn claim to proceed in its entirety, the jury still could not find liability for any damages caused by protected conduct; it could find liability only for damages caused by failing to warn about that protected conduct.[8] Irvington's proposal ignores that distinction and renders the vast majority of the Court's rulings null.

Irvington's proposal is also erroneous because it states that the jury "may hold Defendants liable for their own actions even if users' content contributed to the harm, so long as Defendants' actions were a cause of Plaintiff's harm." This instruction ignores this Court's rulings that many categories of "Defendants' actions" are protected publishing conduct that cannot form the basis of liability. *See* SD Order at 13–14; PI Order at 5, 22. Irvington's instruction also invites error by encouraging the jury to hold Defendants liable for harms so long as any unprotected conduct is involved in any way, however minimally, in the causal chain. But claims against online platforms like Defendants must be "*fully independent of* [their] role in monitoring or publishing third-party content." *Lemmon v. Snap Inc.*, 995 F.3d 1085, 1093 (9th Cir. 2021) (emphasis added); *Grindr*, 128 F.4th at 1153 n.3 (same; it is "analytically insignificant whether [the plaintiff's] injuries would not have occurred 'but for' [a platform's] role as a publisher"); *see* PI Order at 11 (requiring claims "ha[ve] *nothing to do*" with platform's role as publisher (emphasis added)).

Finally, because the protections of Section 230 and the First Amendment cut across all of Irvington's claims, Defendants submit that this instruction must be placed early in the instructions to give important context to the remaining instructions. Placing the instruction near the end, as Irvington proposes, would risk confusing the jury into erroneously concluding that Section 230 and the First Amendment are distinct issues that do not affect the proper framing of Irvington's claims.

---

[8]    If the Court permits the jury to hold Defendants liable for failure to warn about protected conduct, the proper approach would be to add failure to warn to the list of non-protected conduct.

1

2

3     **Transition Instruction**

4          The Court will now explain the substantive law applicable to the claims and defenses

5     brought in this action.   These include Irvington's negligence claim and Defendants' affirmative

6     defenses of statute of limitations, comparative negligence, and failure to mitigate.

7

8     AUTHORITY:          Standing Order, § 3(g)(ii)(B) (modified to reflect the claims and defenses in

9     this case).

10

11    DATE SUBMITTED:          January 28, 2026

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    I.    **FIRST CLAIM – NEGLIGENCE**

2    **Jury Instruction # 18**

3    **Negligence**

4    Negligence is the failure to use that degree of care, precaution, and vigilance which a

5    reasonably prudent entity would use under the same or similar circumstances. It includes both

6    affirmative acts which a reasonably prudent entity would not have done and the omission of acts or

7    precautions which a reasonably prudent entity would have done or taken in the circumstances.

8    Negligence also includes the failure to warn of risks a defendant knows of or reasonably should

9    know of.

10    "A reasonably prudent entity" does not mean the most cautious entity, nor one that is

11    unusually bold, but rather one of reasonable vigilance, caution, and prudence.

12    In order to establish negligence, it is not necessary that it be shown that Defendants had an

13    evil heart or an intent to do harm.

14    To succeed on its claim for negligence, Irvington Public Schools must prove the following

15    by a preponderance of the evidence as to each Defendant:

16    1.    The Defendant[']s Non-Protected Conduct breached [that] [their] duty to use ordinary

17    [prudence;] [care in one or more ways, including—but not limited to—the following:

18       a.   By not providing the warnings that a reasonably prudent, safe, and competent
            company would have provided; or

19       b.   By designing, operating, and/or marketing their social media platforms in a way that

20            caused students to engage in problematic use, compulsive use, and/or become
            addicted; or

21       c.   By deliberately targeting school-aged children, when the Defendants knew or

22            reasonably should have foreseen the impact that doing so would have on schools; or

23       d.   By not designing, operating, and/or marketing their social media platforms as a

24            reasonably prudent, safe, and competent company would have done.]

25    2.    [That such breach proximately caused] [Defendants' failure to use ordinary care was a

26    substantial factor in causing] Irvington Public Schools' students to suffer mental health

27    harm[;][.]

28

3. That those students' mental health harm caused Irvington Public Schools to incur[red] the additional expenses it claims as damages; and [.]

4. The additional expenses were foreseeable to the Defendant.

In determining whether a Defendant was negligent, you must consider only whether that Defendant exercised ordinary prudence with respect to its specific Non-Protected Conduct at issue. You may not make your determination based on the Defendant's platform(s) as a whole, and you may not make your determination based on consideration of any Protected Conduct, even if you find it negligent.  The fact that Irvington Public Schools has an injury is not proof that any Defendant was negligent."Negligent Non-Protected Conduct" is Non-Protected Conduct that you find breached the Defendant's duty to use reasonable prudence.

To summarize, every entity is required to exercise the foresight, prudence, and caution which a reasonably prudent entity would exercise under the same or similar circumstances. Negligence, then, is a failure to use that standard of care.

± Irvington's proposal in red text; Defendants' proposal in blue text.

AUTHORITY: NJ Model Civil Jury Charge 5.10A (1984, rev. 2022); *James v. Bessemer Processing Co.*, 714 A.2d 898, 907 (N.J. 1998); *Gilbert v. Stewart*, 247 N.J. 421, 444 (2021); *Townsend v. Pierre*, 110 A.3d 52, 61 (N.J. 2015) and *People Exp. Airlines, Inc. v. Consol. Rail Corp.*, 495 A.2d 107, 116–118 (N.J. 1985); *Akua Osei-Amoako v. Stafford FEC*, No. A-5594-15T2, 2017 WL 6398858, at *2 (N.J. Super. Ct. App. Div. Dec. 12, 2017).

DATE SUBMITTED:        January 28, 2026

**IRVINGTON'S POSITION ON INSTRUCTION 18:**

The parties agree on the basic definition of negligence drawn from New Jersey pattern instruction 5.10A, and both propose elements as the Standing Order requires. Irvington Public Schools' ("IPS") proposal is preferable because it (1) explains that a failure to warn is negligence; (2) enumerates the relevant duties IPS alleges Defendants breached; (3) does not improperly limit IPS' theory of harm; and (4) does not include improper Section 230 language.

**Foreseeability.** Defendants' inclusion of a foreseeability element for negligence is not in pattern 5.10A and is duplicative of the instruction based on 5.10B. *See infra* [Foreseeability].

**Failure to Warn.** IPS' instruction includes language from caselaw discussing when failure to warn qualifies as negligence. *See James v. Bessemer Processing Co.*, 714 A.2d 898, 907 (N.J. 1998). This will assist the jury in applying the correct legal standard when evaluating Irvington's negligence claim, which includes a failure to warn theory.

**Enumerated Breaches.** IPS' explanation of the element of breach is superior because it identifies the specific theories of breach that Irvington asserts. These theories track this Court's prior rulings and tie the instructions to the actual theories of the case alleged, making the instruction easier for the jury to apply to the evidence they will hear at trial. *See* ECF 1267 at 26, 34.

**Causation & Harm.** IPS' instruction recites the correct standard for the causation element: proof that "Defendants' failure to use ordinary care was a substantial factor in causing Irvington Public Schools harm." *See Gilbert v. Stewart*, 247 N.J. 421, 444 (2021). Defendants would require IPS to prove a two-step causation chain: (1) that their breach caused students to suffer mental health harm, and (2) that students' harms caused IPS to incur additional expenses. But IPS also claims Defendants harmed it directly by disrupting school operations and diverting teacher and staff time. Defendants' instruction ignores the Court's holding that IPS claims injuries that are "distinct" from students' harms. ECF 1267 at 20, 26. It also improperly limits IPS's claims to students' "mental health harm" when evidence is broader—including harm from compulsive platform use by IPS students.

**Injury as Proof of Negligence.** Defendants improperly insert that "injury is not proof" of negligence—the instruction clearly states IPS must prove breach, causation, and damages.

1    **Repeated 230 Instruction.**  Defendants' repetition of the phrases "Non-Protected Conduct"

2    and "Protected Conduct" throughout their instructions is prejudicial, misstates the law, and unduly

3    emphasizes one affirmative defense.  Defendants use "Non-Protected Conduct" *ad nauseam* in their

4    instructions: Breathitt (29), Charleston (45), DeKalb (15), Harford (25), Irvington (53), Tucson

5    (20).  "Repetitious instructions which place undue emphasis on matters favorable to either side

6    constitute reversible error," *Flentie v. Am.  Cmty. Stores Corp.*, 389 F.2d 80, 83 (8th Cir. 1968),

7    and the repetition here exceeds what courts have found prejudicial, *e.g., Mack v. Precast Indus.,*

8    *Inc.*, 369 Mich. 439, 448 (1963) (reversible error where burden of proof was repeated 16 times);

9    *U.S. v. Jones*, 353 F.3d 816, 819 (9th Cir. 2003) (cautioning against "overemphasis of isolated

10    parts" of jury instructions).  Because the improper Section 230 instruction permeates the entire set,

11    any error is unlikely to be harmless.  *See Sidibe v. Sutter Health*, 103 F.4th 675, 705 (9th Cir. 2024)

12    (considering "cumulative error" when deciding if error in instructions was harmless).

13    Defendants' repetition of this tendentiously-defined term also violates the mandate that jury

14    instructions should be "simple" and "use language that laypersons can understand."  Manual on

15    Complex Lit., Fourth, § 12.431.  By requiring the reader to turn to the definition repeatedly, defined

16    terms introduce excessive ambiguity.  This concern is magnified where, as here, the definition itself

17    is "cumbersome" (spanning 3 full pages).  *See LG Philips LCD Co. v. Tatung Co. of Am.*, 2005 WL

18    6219893, at *4 (C.D. Cal. May 5, 2005).

19    It is also unnecessary to repeat Defendants' Section 230 defense in other instructions.  It is

20    presumed that jurors will "carefully follow" an instruction once given.  *Francis v. Franklin*, 471

21    U.S. 307, 324 (1985).  Courts generally do not instruct on statute of limitations and preemption,

22    then repeatedly use the phrase "non-time-barred non-preempted conduct."

23    Plaintiffs propose that, following a single instruction on immunity, the Court simply refer

24    to Defendants' "conduct" in further instructions, removing further references to "Non-Protected

25    Conduct" or "Protected Conduct."  *See supra* [Section 230].

26

27

28

1    **DEFENDANTS' POSITION ON INSTRUCTION 18:**

2        Defendants propose giving New Jersey's pattern instruction, modified so that it (1) clearly

3    enumerates the elements of negligence as required by the Standing Order; (2) applies binding New

4    Jersey law applicable to negligence actions seeking purely economic damages; and (3) gives effect

5    to the Court's prior rulings.  Specifically, Defendants' proposal provides the jury with the elements

6    as described by New Jersey courts; it introduces the concept of proximate cause while leaving it to

7    later instructions to fully define its contours and giving effect to New Jersey's "particularly

8    foreseeable" test; and it gives effect to the Court's prior rulings on Section 230 and the First

9    Amendment by limiting liability to Non-Protected Conduct,[9] discussed in more detail, *supra*

10    Instruction No. 17  (Protection for Publishing and Expressive Activity).  Irvington asserts that

11    incorporating the concepts of Protected and Non-Protected Conduct into other instructions

12    (including this one) "place[s] undue emphasis on matters favorable to [Defendants,] constitute[ing]

13    reversible error."  *Supra* Instruction No. 18 (Negligence) (quoting *Flentie v. Am.  Cmty. Stores

14    Corp.*, 389 F.2d 80, 83 (8th Cir. 1968)).  That is not so.  Defendants' proposed instructions do

15    nothing more than define the scope of Irvington's claims, which necessarily includes the limitations

16    imposed by Section 230 and the First Amendment.  Further, Irvington argues that Defendant's

17    alleged error is compounded because it implements a "cumbersome" instruction.   But, in

18    Irvington's own words (on concurrent causes): "This concept is complex and is likely to lead to

19    juror confusion without clear instruction, especially in a case involving multiple Defendants[.]"

20        Defendants also propose to instruct the jury that injury itself is not evidence of negligence,

21    consistent with New Jersey law.  *See Akua Osei-Amoako v. Stafford FEC*, No. A-5594-15T2, 2017

22    WL 6398858, at *2 (N.J. Super. Ct. App. Div. Dec. 12, 2017) ("The mere occurrence of an incident

23    causing an injury is not alone sufficient to impose liability.").

24

25    [9]    For the reasons explained in above, *supra* Instruction No. 17 (Protection for Publishing and
      Expressive Activity), any verdict against any Defendant must be based only on that specific

26    Defendant's actionable conduct, as confined by the Court's prior orders.  The clearest and most
      efficient way to properly instruct the jury on the law of the case on this issue is to define Protected

27    and Non-Protected conduct and integrate that concept in other instructions where appropriate.
      Defendants globally object to Irvington's omission of this concept from this and other instructions

28    and indicate these objections by way of redline.  To reduce repetitive argument, however, they do
      not reiterate the grounds of the objection in subsequent instructions.

1    Irvington's proposal misstates New Jersey law, is improperly argumentative, and ignores
2    this Court's binding rulings.  **First**, Defendants object to Irvington's incorporation of a failure-to-
3    warn theory because Defendants did not owe Irvington a duty to warn of downstream economic
4    impacts from its students' use of Defendants' platforms.  *See also infra* Instruction No. 19 (Heeding
5    Presumption).  **Second**, Irvington's recitation of the elements is argumentative.  The Standing Order
6    requires a recitation of the elements of each claim, Standing Order at 3(g)(ii)(C), but it does not
7    authorize argument.  *See also United States v. Jackson*, 72 F.3d 1370, 1380 (9th Cir. 1995)
8    (affirming rejection of argumentative jury instructions).  Defendants' proposal sticks to the
9    **elements**: the most basic requirements of Irvington's claim.  *United States v. Shafi*, 252 F. Supp. 3d
10   787, 793 (N.D. Cal. 2017) (An "element is a constituent part of a claim that must be proved for the
11   claim to succeed.") (internal quotation omitted).  Irvington's approach does not.  Its proposed first
12   element is list of allegations that reads more like a complaint than jury instructions.  Describing
13   Defendants as "deliberately targeting school-aged children" is particularly argumentative and
14   biased, but each allegation in Irvington's proposed breach element is improper.  Charging the jury
15   with this instruction would prejudice Defendants and constitute reversible error.  **Third**, Irvington's
16   proposed third element errs by requiring only that Irvington "incurred expenses" without
17   connecting those alleged expenses to Defendants' actionable conduct **or** instructing the jury on New
18   Jersey's "particularly foreseeable" standard applicable to purely economic damages.  *See* SD Order
19   at 20, 26, 30 n.25 (permitting school districts to proceed on narrow theory of direct financial harms
20   as a result of **additional** services provided); *see also infra* Instruction No. 19 (Foreseeability).

21   Irvington objects that Defendants' proposal imposes a "two-step causation chain" as if this
22   were Defendants invention.  But Defendants' proposal accurately describes Irvington's theory of
23   the case, which the Court has recognized includes at least two causal steps.  *See* SD Order at 30
24   n.25 ("[A]s alleged, the social media platforms' intentional design choices *caused* a youth mental
25   health crisis, which *caused* schools to expend resources to mitigate its harmful effects.")  Irvington
26   bears the burden on both steps, and the jury should be instructed accordingly.

27   Finally, Defendants object to the paragraph beginning with "To summarize" because it
28   improperly focuses **solely** on the breach element.

**Jury Instruction # 19**

**Foreseeability**

In determining whether [Defendants exercised] reasonable care [has been exercised,] you [will] [must] consider whether, under the circumstances, the specific Defendant[s] ought to have foreseen that the natural and probable consequence of [the Defendant's Negligent Non-Protected Conduct] [their actions, failures to act, or failures to warn] would have been the types of harms to school districts that Irvington Public Schools [and entities like it would be required to make the claimed additional expenditures as a result of mental health harm to students] [asserts]. It is not necessary for Irvington Public Schools to prove that the Defendant[s] anticipated the very occurrence which resulted from [the Defendant's] [their] wrongdoing, [but it must have been foreseeable] [or] that the Defendant[']s [Negligent Non-Protected Conduct would have disrupted the economic expectations of] [specifically foresaw harm to] Irvington Public Schools and similar entities by expenditures incurred as a result of mental health harm to students. To recover for harms caused by Defendants' negligence, Irvington Public Schools only need to prove that such harms to school districts were a foreseeable result of Defendants' actions, inactions, or failures to warn.

The test is whether an ordinary company, under similar circumstances and by the use of ordinary care, could have foreseen this type of harm. If an ordinary company could have foreseen that this type of harm or damage would probably result and either would not have acted, taken precaution to avoid the harm, or warned of the risk, then taking the action, failing to take precautions, or failing to warn of the risk constitutes negligence.


± Irvington's proposal in red text; Defendants' proposal in blue text.


AUTHORITY: NJ Model Civil Jury Charge 5.10B (1984, rev. 2022); *People Exp. Airlines, Inc. v. Consol. Rail Corp.*, 495 A.2d 107, 116–18 (N.J. 1985).


DATE SUBMITTED:         January 28, 2026

**IRVINGTON'S POSITION ON INSTRUCTION 19:**

The parties dispute the correct foreseeability instruction. Irvington proposes an instruction that tracks New Jersey's pattern instruction 5.10B, *People's Express Airlines, Inc. v. Consolidated Rail Corp.*, 100 N.J. 246 (1985), and IPS' asserted harms. Defendants invoke *People Express's* "particular foreseeability" language to argue that IPS must prove Defendants foresaw the specific expenditures claimed. This misreads the decision. *People Express* addressed both duty and proximate cause, and both inquiries center on the plaintiff or class of plaintiffs, not the specific damages. The "particular foreseeability" standard answers the threshold question of who may recover. "An identifiable class of plaintiffs must be particularly foreseeable in terms of the type of persons or entities comprising the class, the certainty or predictability of their presence, the approximate numbers of those in the class, as well as the type of economic expectations disrupted." 100 N.J. at 263–64. On proximate cause, the Court held that "economic losses are recoverable as damages when they are the natural and probable consequence of a defendant's negligence in the sense that they are reasonably to be anticipated in view of defendant's capacity to have foreseen that the particular plaintiff or identifiable class of plaintiffs . . . is demonstrably within the risk created by defendant's negligence." *Id*. at 267. The inquiry throughout is whether the class of plaintiffs was identifiable, foreseeable, and within the zone of risk, not whether defendants could foresee specific damages. *See also In re Paulsboro Derailment Cases*, 2015 WL 3545247, at *3 (D.N.J. June 8, 2015) (explaining that under *People Express* "[t]he class of plaintiffs affected must be 'particularly foreseeable' by the defendant."). The *People Express* Court underscored this point: "[w]e do not mean to suggest . . . that actual knowledge of the eventual economic losses is necessary to the cause of action; rather, particular foreseeability will suffice." *Id*. at 267–68.

IPS's instruction captures this standard. It builds on the pattern instruction to require IPS to prove that "harms to school districts were a foreseeable result" and asks whether "an ordinary company, under similar circumstances and by the use of ordinary care, could have foreseen this type of harm." That is the *People Express* inquiry: the type of plaintiff, type of harm. Defendants' proposed instruction does precisely what *People Express* forbids; it demands foreseeability of "additional expenditures'" rather than foreseeability of the plaintiff class.

New Jersey Model Charge 5.10B instructs that a defendant need not anticipate the precise harm that occurred: "it is sufficient that it was within the realm of foreseeability that some harm might occur thereby." *See* NJ-JICIV 5.10B. Defendants delete this language entirely. The Model Charge's "some harm" formulation captures what *People Express* requires: general foreseeability that harm would result, coupled with particular foreseeability that the plaintiff was within the zone of risk.

Defendants also mischaracterize IPS's theories of injury. Defendants' proposed language frames the foreseeability issue as whether Defendants foresaw "additional expenditures as a result of mental health harm to students." That is not the full scope of what IPS claims. IPS seeks compensation for both direct and indirect harm flowing not only from mental health harm to students, but more broadly from the foreseeable compulsive and problematic use and addiction of students flowing from Defendants' negligence, including diversion of staff and teacher time addressing social media-related disruptions and behaviors, vendor costs for services necessitated by Defendants' platforms, and future expenses addressing ongoing harms to IPS and its students. *See* ECF No. 1267 at 20.

New Jersey Model Charge 5.10B instructs that a defendant need not anticipate the precise harm that occurred: "it is sufficient that it was within the realm of foreseeability that some harm might occur thereby." *See* NJ-JICIV 5.10B. Defendants delete this language entirely. The Model Charge's "some harm" formulation captures what *People Express* requires: general foreseeability that harm would result, coupled with particular foreseeability that the plaintiff was within the zone of risk.

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence]; [Section 230].

1    **DEFENDANTS' POSITION ON INSTRUCTION 19:**

2       The Parties agree on the appropriate authorities the Court should consider in fashioning an

3    instruction on foreseeability—New Jersey's Model Civil Jury Charge 5.10B and *People Express*

4    *Airlines, Inc. v. Consolidated Rail Corporation*, 495 A.2d 107 (N.J. 1985).  Indeed, the Parties

5    agree *People Express* imposes a heightened foreseeability standard to Irvington's negligence claim

6    because it alleges purely economic damages.  Defendants' proposal meaningfully instructs on this

7    principle; Irvington's does not.

8       In New Jersey, to recover purely economic damages in a negligence action, the plaintiff

9    must prove by a preponderance of the evidence that the economic damages were "particularly

10   foreseeable." *People Exp.*, 495 A.2d at 116.  For a plaintiff's injuries to be particularly foreseeable,

11   the plaintiff must be part of an "identifiable class" that is "particularly foreseeable in terms of the

12   type of persons or entities comprising the class, the certainty or predictability of their presence, the

13   approximate numbers of those in the class, as well as the type of economic expectations disrupted."

14   *Id.* This inquiry centers on ***both*** the plaintiff (*i.e.*, "[a]n identifiable class") ***and*** the type of damages

15   (*i.e.*, "the type of economic expectations disrupted"). Because Irvington seeks damages only for

16   economic damages the jury cannot reach a verdict under the applicable law without being instructed

17   on this standard.

18       Irvington does not dispute that *People Express* controls.  But Irvington's proposed

19   instruction fails to instruct the jury on that case's key holding and improperly invites the jury to

20   consider harms allegedly suffered by others that Irvington does not have standing to assert.

21   Irvington's proposed reference to the "types of harms to school districts that [it] asserts" not only

22   ignores the fact that it asserts just ***one*** type of harm (economic disruption), but also is so vague that

23   a jury might believe it is permitted to consider alleged harms to students' mental health and

24   educational outcomes or student disciplinary issues, as opposed to only the alleged economic

25   impact of those students' behavior ***on the school districts***.  As the Court explained in its motion to

26   dismiss order, the former are derivative.  *See* SD Order at 20, 26, 30 n.25 (permitting school districts

27   to proceed on narrow theory of direct financial harms as a result of ***additional*** services provided).

28   Irvington asserts that additional expenditures flowing from mental health harms to its students is

"not the full scope of what [it] claims." But its counter examples simply use more words to describe the same concept:

> IPS seeks compensation for both direct and indirect harm flowing not only from mental health harm to students, but more broadly from the foreseeable compulsive and problematic use and addiction of students flowing from Defendants' negligence, including diversion of staff and teacher time addressing social media-related disruptions and behaviors, vendor costs for services necessitated by Defendants' platforms, and future expenses addressing ongoing harms to IPS and its students.

*Supra* Instruction No. 19 (Foreseeability). Irvington succinctly describes what it terms "the *People Express* inquiry" as "type of plaintiff, type of harm." *Id.* That is precisely what Defendants' proposal does. It instructs the jury to consider foreseeability with respect to "Irvington Public Schools and similar entities"—type of plaintiff. And it further instructs the jury to consider foreseeability with respect to "expenditures incurred as a result of mental health harm to students"—type of harm.[10] Defendants' proposal accurately describes the "particularly foreseeable" standard by requiring Irvington to prove by a preponderance of the evidence that the types of *economic* damages *to Irvington and similar entities* was a foreseeable result of each Defendant's actionable conduct. *People Exp.*, 495 A.2d at 116. Therefore, Defendants' proposal should be given.

---

[10]    Any compensation Irvington seeks for "indirect harms" is foreclosed by this Court's prior order. *See* SD Order at 20, 26, 30 n.25.

**Jury Instruction # 20**

**Heeding Presumption**

Irvington Public Schools claims that the Defendant[s] failed to adequately warn about the risks [from using] [of] their social media platforms. You may begin with the [presumption] [assumption] that if an adequate warning were given, Irvington Public Schools, students, and families would have read and followed that warning. The Defendant may eliminate this presumption by presenting evidence that Irvington Public Schools would not have read or would not have followed an adequate warning. If the Defendant presents such evidence, it is Irvington Public Schools' burden to show by a preponderance of the evidence that it would have read and followed an adequate warning. It is Defendants' burden to prove that any warning would not have been followed. The Defendants may rebut this assumption by presenting evidence that Irvington Public Schools, students, or families would not have read or followed any warning .

If Defendants fail to present such evidence, you must find that Defendants' failure to warn Irvington Public Schools, students, or families was a proximate cause of the harm to Irvington Public Schools.

If Defendants present such evidence, Irvington Public Schools must prove that the Defendants' failure to warn Irvington Public Schools, students, or families was a proximate cause of the harm to Irvington Public Schools.

± Irvington's proposal in red text; Defendants' proposal in blue text.

OBJECTION: Defendants object to this instruction in full. Defendants have proposed edits to the extent this instruction is included over Defendants' objection.

AUTHORITY: *Coffman v. Keene Corp.*, 628 A.2d 710, 717 (N.J. 1993); *Sharpe v. Bestop*, *Inc.,* 713 A.2d 1079, 1084 (N.J. Super. Ct. App. Div. 1998); ), *aff'd* 730 A.2d 285 (1999); *In re 3M Combat Arms Earplug Prods.  Liab. Litig*., 2023 WL 4358713, at *2 (N.D. Fla. May 1, 2023) (applying New Jersey law); NJ Model Civil Jury Charge 5.40C (2000, rev. 2023).

1

2    DATE SUBMITTED:          January 28, 2026

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **IRVINGTON'S POSITION ON INSTRUCTION 20:**

2    **Heeding Presumption Instruction is Warranted.**    Plaintiff proposes a heeding

3    presumption instruction directing the jury that it may begin with the presumption that Irvington

4    Public Schools, students, and families would have heeded adequate warnings, and placing the

5    burden on Defendants to put forth competent evidence that any warning would not have been

6    followed.  Defendants improperly propose an alternative instruction that omits any reference to

7    warning IPS' students and families, incorrectly changes Plaintiff's burden after rebuttal from

8    "prove proximate cause"  to "prove it would have read and followed an adequate warning," and

9    conditions the instruction on Plaintiff affirmatively proving warning "effectiveness" and negating

10   "susceptibility due to unrelated factors," neither of which are supported by the caselaw.

11   The jury should be instructed that IPS is entitled to the presumption that it and its students

12   and their families would have heeded warnings about the risks posed by Defendants' platforms if

13   Defendants had given such warnings.  Where, as here, a plaintiff claims injury as a result of a

14   defendant's failure to warn of known risks, New Jersey law presumes the warning would have been

15   heeded.  *Coffman v. Keene Corp.*, 628 A.2d 710, 716–17 (N.J. 1993); *Sharpe v. Bestop, Inc.*, 713

16   A.2d 1079, 1084 (N.J. Super.  Ct. App. Div. 1998), *aff'd* 730 A.2d 285 (1999).  The presumption

17   applies to "all failure to warn ... cases." *In re 3M Combat Arms Earplug Prods.  Liab. Litig.*, 2023

18   WL 4358713, at *2 (N.D. Fla. May 1, 2023) (applying New Jersey law).

19   Contrary to what Defendants have argued, New Jersey does not restrict this presumption

20   to product "users." In *James v. Bessemer Processing Co., Inc.*, 714 A.2d 898 (N.J. 1998), the New

21   Jersey Supreme Court applied the heeding presumption in a case where the plaintiff, a widow, was

22   not herself exposed to the defendant's product.  Her husband had died from workplace exposure to

23   toxins manufactured by the defendant, and the court held that it was presumed the employer would

24   have heeded a warning and taken protective measures for its employees.  *Id.* at 908.  The

25   presumption ran through an intermediary: the manufacturer's duty to warn employees required

26   warning the employer, and the presumption assumed the employer would act to protect those under

27   its care. IPS stands in the same protective relationship to its students as employers do to employees.

28   Defendants also misstate the burden on IPS if Defendants do rebut the presumption.

1    Defendants' instruction would require IPS to prove "it would have read and followed an adequate

2    warning." *Sharpe,* which both parties cite, provides that after rebuttal, if a defendant rebuts the

3    heeding presumption, plaintiff must prove "the failure to warn was a proximate cause of his injury.

4    713 A.2d at 1085.  Proximate cause asks whether Defendants' failure to warn was a substantial

5    factor in bringing about harm, not whether Plaintiff would have complied with a hypothetical

6    warning.  The latter is exactly what the heeding presumption eliminates.  The New Jersey Supreme

7    Court adopted the presumption because requiring plaintiffs to prove what they would have done

8    "would most likely be highly speculative" and "impose an impossible burden." *Coffman*, 628 A.2d

9    at 720.  Defendants' instruction reimposes that burden.

10    Defendants compound the error. Their objection demands that IPS "prove that any warning

11    would have been effective and that susceptibility was not due to unrelated factors." *Coffman* places

12    the burden elsewhere: "the defendant in order to rebut that presumption must produce evidence that

13    such a warning would not have been heeded." *Id.*  A plaintiff bears no affirmative burden to prove

14    "effectiveness" or negate "susceptibility." These concepts appear nowhere in *Coffman, Sharpe,* or

15    any New Jersey heeding-presumption case.

16    Defendants' claim that juries are "never" instructed on the heeding presumption is wrong.

17    Defendants misread *Sharpe*. That case does not hold that juries receive no instruction on heeding;

18    it holds that juries should not be instructed using the word "presumption" after defendants have

19    presented rebuttal evidence. *Sharpe*, 713 A.2d at 1093 ("[I]f the heeding presumption is negated

20    by rebuttal evidence, it disappears, and the plaintiff is no longer entitled to the benefit of the

21    presumption. An instruction to the jury in such circumstances that mentions the 'presumption' and

22    the policy that undergirds it provides the plaintiff with an undue comment on the issue of credibility

23    to heed warnings."). Defendants have not presented sufficient evidence to rebut the presumption.

24

25

26

27

28

1    **DEFENDANTS' POSITION ON INSTRUCTION 20:**

2         Defendants object to the inclusion of this instruction for several reasons: (1) Irvington

3    should not be permitted to proceed on any failure-to-warn theory, making a heeding presumption

4    inapposite; (2) Irvington would not be entitled to the heeding presumption in any event; and (3)

5    there is no basis in New Jersey law for a jury to ***ever*** be instructed on the presumption itself.  Further,

6    Defendants object that Irvington's description of the presumption improperly shifts the burden of

7    persuasion to Defendants.

8         ***First***, there is no support in New Jersey law for Irvington's assertions that "Defendants

9    owed a duty to warn [it] or a duty to warn [its] students and parents that is enforceable by

10   [Irvington]."  Defs.' Omnibus Reply in Support of Mots. Summ. J. at 2, 14–19; *accord* Defs.' Mot.

11   Summ. J. (Irvington) at 31–32.  Therefore, instructing the jury on legal concepts related only to

12   Irvington's failure-to-warn theory—such as the heeding presumption—would be error.

13        ***Second***, even if Irvington's failure-to-warn theory were viable, there is no basis to apply

14   the heeding presumption to Irvington—much less a second-level heeding presumption to students

15   and parents.  Defs.' Omnibus Reply in Support of Mots. Summ. J. at 12–13.  New Jersey's heeding

16   presumption is a rebuttable presumption that a plaintiff would have read and followed an adequate

17   warning had one been provided.  Defs.' Mot. Summ. J. (Irvington) at 33.  The justification provided

18   by New Jersey law for the presumption is that it encourages adequate warnings to users to reduce

19   harm.  *See Coffman v. Keene Corp.*, 628 A.2d 710, 718 (N.J. 1993).

20        That justification makes no sense here.  In this context, it is unclear who at Irvington would

21   receive a hypothetical warning, what the warning would entail, and where, when, or how it would

22   be communicated.  *See* Defs.' Mot. Summ. J. (Irvington) at 33–34.  Further, Irvington has not

23   provided any evidence that a warning to Irvington would have reduced the alleged harms.  *See id.*

24   at 34–35.  Nor has it explained how any alleged failure to warn Irvington students and families

25   should be presumed to have proximately caused alleged harms ***to Irvington***.    Under the

26   circumstances of this case, therefore, the heeding presumption does not apply.

27        ***Third***, even in cases where the heeding presumption ***does*** clearly apply, New Jersey courts

28   do not instruct juries on the presumption itself.  *See* NJ Model Civil Jury Charge 5.40C.  Instead,

the court applies the presumption as a matter of law.  Where, as here, the Defendant presents evidence to rebut the presumption, the court instructs the jury on the plaintiff's burden to prove it would have followed an adequate warning if one had been given and refers to the fact that the Defendant has presented evidence suggesting Irvington would not have done so.  *See* NJ Model Civil Jury Charge 5.40C ("To establish a claim of failure to warn, [*Plaintiff*] [*sic*] must prove . . . by a preponderance (greater weight) of the credible evidence: . . . That the [*Plaintiff*] [*sic*] would have followed an adequate warning/instruction if it had been provided.").  Where the Defendant does not present evidence to rebut the presumption, the court directs a verdict as to proximate causation.  Irvington's proposed instruction contravenes this framework by expressly shifting the burden of persuasion to Defendants and requiring them to prove that a warning would not have been followed.  New Jersey law imposes no such burden, and no case or model instruction supports Irvington's formulation.

**Jury Instruction # 21**

**Adequate Warning or Instruction**

Irvington Public Schools claims that Defendants failed to warn about the risks associated with their social media platforms. Defendants have a duty to provide adequate warnings or instructions about the known risks of its platforms. To decide Irvington Public Schools' failure to warn claim, you must determine what warnings and instructions, if any, the Defendants provided and whether those warnings and instructions were adequate. Defendants who provided no warnings concerning the known risks of their platforms have breached their duty to warn. You do not need not to evaluate the adequacy of a warning that was never given.

If you find that Defendants knew or should have known of risks associated with their platforms and failed to provide any warning of those risks, you may find that Defendants breached their duty to warn.

Warnings or instructions may consist of statements that [an online] [a social media] platform should not be used at all under certain circumstances, that it should be used only in a particular way, or that it should be used with particular care. Warnings or instructions may be in the form of words, symbols, or pictures. They must be in a form which will effectively convey the information essential to make the use of the [online] [social media] platform reasonably safe.

To be adequate, the warning or instruction must be the kind of warning or instruction which a reasonably prudent entity in the same or similar circumstances would have provided to people intended to use the [online] [social media] platform. An adequate warning or instruction will communicate sufficient information on the dangers and risks of the [online] [social media] platform and how to use it safely. When deciding whether the information provided is adequate, you should take into account the characteristics of the people reasonably expected to use the [online] [social media] platform and ordinary common knowledge.

In deciding whether the warning or instruction given in this case was adequate, you must first determine whether the Defendant knew or should have known of the alleged danger posed by its platform(s). Then, you must decide whether the Defendant acted in a reasonable, prudent

manner in marketing their online platform(s) with the particular forms of warnings that were provided.

± Irvington's proposal in red text; Defendants' proposal in blue text.

OBJECTION: Defendants object to any instruction related to Irvington's failure-to-warn theory but offer this instruction if the Court rules that theory is viable. Plaintiff objects to this instruction but proposes the revisions indicated above if the Court rules this instruction should be given

AUTHORITY: NJ Model Civil Jury Charge 5.40C (2000, rev. 2023); *New Jersey Dep't of Env't Prot. v. E.I. du Pont de Nemours & Co.*, 2021 WL 6144081, at *7 (D.N.J. Dec. 30, 2021); *James v. Bessemer Processing Co.*, 714 A.2d 898, 908 (N.J. 1998).

DATE SUBMITTED:          January 28, 2026

**IRVINGTON'S POSITION ON INSTRUCTION 21:**

Both parties object to this instruction but offer competing versions if the Court determines one is necessary. Plaintiff objects because Defendants produced no evidence that they ever issued any warnings, and there is simply no factual basis for evaluating warning adequacy when no warnings exist. Defendants have never contended that they provided any warnings. Yet their proposed instruction asks the jury to assess "the warning or instruction given in this case" and whether Defendants "acted in a reasonable, prudent manner in marketing their online platform(s) with the particular forms of warnings that were provided." That language assumes warnings were given. They weren't.

Defendants have not established entitlement to their proposed instruction. The record is undisputed: Defendants provided no warnings about the risks their platforms pose to children. Pls.' Mot. for Summ. J. Omnibus Opp. at 11 ("Defendants do not dispute that they provided no warnings"). Defendants offered no contrary evidence. An instruction asking the jury to assess the adequacy of "the warning or instruction given" invites evaluation of something that does not exist. The jury cannot determine whether non-existent warnings were adequate.

Defendants' claim that Plaintiff's instruction is "needlessly long and complex" is meritless. Plaintiff offered a competing instruction only because Defendants, who object to any failure to warn instruction, nonetheless proposed one. The added length in IPS' instructions serves a necessary purpose. It informs the jury of Plaintiffs' failure to warn claim and that it need not assess the adequacy of warnings that were never given.

To the extent Defendants are proposing this instruction to support their argument that IPS must prove it would have read and followed an adequate warning, that argument fails for the reasons set forth in Plaintiff's brief on the heeding presumption. In short, the presumption does not require IPS to prove that a warning would have been adequate or effective. Rather, it presumes an adequate warning would have been heeded and shifts to Defendants to present evidence to rebut that presumption. Defendants' proposed instruction would improperly require the jury to evaluate warning adequacy and effectiveness—a burden IPS does not bear.

If the Court determines an adequate warning instruction is necessary, IPS's version should

be adopted. Plaintiff's instruction tells the jury that Defendants who provided no warnings concerning the known risks of their platforms have breached their duty to warn, and that the jury need not evaluate the adequacy of a warning that was never given.  That tracks the law and facts. Defendants' proposed instruction would improperly require the jury to evaluate warning adequacy—a burden Plaintiff does not bear and an inquiry that makes no sense when the undisputed evidence shows no warnings were ever given.

**DEFENDANTS' POSITION ON INSTRUCTION 21:**

Irvington intends to proceed on a negligent failure-to-warn theory, including by inserting that concept into other instructions and offering a standalone instruction that makes sense only in the context of that theory (*i.e.*, Instruction No. 21 (Heeding Presumption)). Irvington's proposed instruction on the heeding presumption even explicitly references the concept of adequate warnings. Yet, inexplicably, Irvington objects to instructing the jury on one of the key legal concepts integral to that theory: warning adequacy.[11]

Irvington's stated reasons for objecting to this instruction do not withstand scrutiny. It first objects on the basis that the "record is undisputed" that "Defendants' provided no warnings." *Supra* Instruction No. 21 (Adequate Warning or Instruction). Irvington's authority for this assertion is a single sentence from the Plaintiffs' omnibus summary judgment response, which itself is not supported by any authority. Pls.'s Omnibus Opp. Defs.' Mots. Summ. J. at 11. Defendants' decision not to argue warnings adequacy on summary judgment is *at most* an admission that a disputed issue of material fact exists on this issue. More fundamentally, Irvington's assertion is not an accurate reflection of the discovery record. *See, e.g.,* Snap Inc.'s Third Supplemental Responses and Objections to Plaintiffs' Second Set of Interrogatories at 33–34 (noting implementation of warnings, including when a minor receives a message from someone they do not already share mutual friends with or have in their contacts).

Next, Irvington argues it should be relieved of its burden to prove the warnings Defendants provided were inadequate by reference to its argument on Instruction No. 21 (Heeding Presumption). For the reasons Defendants explain above, Irvington is not entitled to the heeding presumption, and even if it were, the presumption imposes exactly *one* burden on Defendants: a burden of *producing* evidence that Irvington would not have read and followed an adequate instruction if given. *Supra* Instruction No. 20 (Heeding Presumption). Once such evidence is presented, it is Irvington's burden to prove a different warning would have reduced the risk of

---

[11]    To be clear, Defendants ultimately object to all instructions relating to Irvington's failure-to-warn theory for the reasons explained above, *infra* Instruction No. 19 (Heeding Presumption); however, if the jury is instructed to consider that theory, it should also be instructed on the meaning of an adequate warning under New Jersey law.

1    injury.   NJ Model Civil Jury Charge 5.40C (2000, rev. 2023) ('If . . . the failure to warn/instruct

2    does not add to the risk of the occurrence of this accident . . . , then plaintiff has failed to establish

3    that the failure to warn/instruct was a proximate cause[.]").

4         As to the content of a potential instruction, Defendants object to Irvington's proposed

5    additions to the model instruction as needlessly long and complex.  Defendants' proposal covers

6    the substance of Irvington's proposed additions in a more straightforward and simple manner.

7    Standing Order at (3)(g)(ii)(D); *e.g.*, *Curtis v. City of Oakland*, 2016 WL 1138457, at *5 (N.D. Cal.

8    Mar. 23, 2016) (recounting the court's direction to the parties to draft jury instructions that were

9    "brief, clear, written in plain English and free of argument") (internal citation omitted); *U.S. Fid.*

10   *& Guar. Co. v. Stanley Contracting, Inc.*, 2007 WL 9808328, at *2 (D. Or. Jan. 26, 2007) (noting

11   that the court strives to keep jury instructions "as short as possible to try to lessen the jury's

12   confusion").   Further, Defendants object to the removal of the last paragraph in Defendants'

13   proposed instruction.   This language tracks the New Jersey pattern and modifies it to reflect

14   Irvington's burden in a negligent failure-to-warn claim.   *James*, 714 A.2d at 908 ("When

15   proceeding under a theory of negligence, the plaintiff must demonstrate that the specific defendant

16   knew or should have known of the potential hazards of the product.").

17

18

19

20

21

22

23

24

25

26

27

28

**Jury Instruction # 22**

**Proximate Cause**

If you find that a Defendant[s] [was] [were] negligent, you must find that the Defendant[']s['] [Negligent Non Protected Conduct] [negligence] was a proximate cause of Irvington Public Schools' [alleged additional expenditures] [harm] before you can find that the Defendant[s] [was] [were] responsible for Irvington Public Schools' claimed harm. It is the duty of Irvington Public Schools to establish, by the preponderance of evidence, that the [Negligent Non Protected Conduct] [negligence] of the Defendant[s] was a proximate cause of the harm to Irvington Public Schools allegedly to have resulted from the Defendant[']s['] [Negligent Non Protected Conduct] [negligence]. You may find proximate causation as to all Defendants, as to no Defendants, or as to some Defendants and not others. Each Defendant can be liable only for harm that you determine was caused by that Defendant's Negligent Non-Protected Conduct. Defendants do not have a duty to prevent third parties (for example, individuals who post dangerous "challenges" on Defendants' platforms, commit crimes utilizing Defendants' platforms, or post threats on Defendants' platforms) from using their platforms in ways that may cause harm to Irvington Public Schools or its students.

Any harm stemming from non-foreseeable third-party conduct cannot be attributable to Defendants. A Defendant's general knowledge that bad actors may post harmful challenges, transmit threats, or engage in crime on its platform does not, on its own, suffice to establish proximate causation. Where a social media challenge is at issue, the Defendant on whose platform the challenge was posted is a proximate cause only if the Defendant's own actions promoted, developed, or participated in the foreseeably dangerous challenge. That Defendant may not be held liable if its only role in the challenge was publishing or recommending the third-party challenge on its platform.

The basic question for you to resolve is whether Irvington Public Schools' harm is [so connected with Negligent Non-Protected Conduct of each Defendant] [the natural and probable consequence of Defendants' negligent actions or inactions] that you decide it is reasonable, in

1    accordance with the instructions I will now give you, that Defendants should be held wholly or

2    partially responsible for the harm.

3

4    ± Irvington's proposal in red text; Defendants' proposal in blue text.

5

6    AUTHORITY: NJ Model Civil Jury Charge 6.10 (1998, rev. 2019); *People Exp. Airlines, Inc. v.*

7    *Consol. Rail Corp.*, 495 A.2d 107, 116–118 (N.J. 1985).

8

9    OBJECTION: Irvington objects to this instruction in full.

10

11    DATE SUBMITTED:      January 28, 2026

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IRVINGTON'S POSITION ON INSTRUCTION 22:**

Irvington objects to Instruction 6.10 in favor of Model Charge 6.12, which provides the applicable substantial factor test for concurrent causation by multiple defendants, but offers the proposed language in the event the Court finds such instruction necessary. Irvington's proposal mirrors the pattern.  *See* NJ-JICIV 6.10. Defendants articulate no basis for deviating from the pattern except to backdoor Section 230 language, which is improper. *See supra* [Section 230].

**Third Party Harms.**  Defendants also add language regarding third-party harms.  This instruction is duplicative of Defendants' No Duty to Prevent Harm Caused by Third Parties instruction*, see infra* [No Duty to Prevent Harm Caused by Third Parties], and for the same reasons as addressed therein, is unwarranted.  Separately, if there is likely to be evidence of third party misconduct introduced to the jury, it is better managed through an intervening/superseding causation instruction, which Defendants perplexingly oppose. *See id.*

1    **DEFENDANTS' POSITION ON INSTRUCTION 22:**

2    New Jersey's Model Civil Charge No. 6.10 is the "general charge" on proximate cause and

3    is to be given in every tort case, followed by one of 6.11, 6.12, or 6.13, and possibly 6.14, depending

4    on the facts of the specific case. Defendants thus propose to instruct the jury on 6.10, as modified

5    to reflect this Court's prior orders establishing the law of this case. *Supra* Instruction No. 17

6    (Protection for Publishing and Expressive Activity). Irvington contends that 6.10 should not be

7    given here, and that if it is given, it should not be modified. Neither contention is correct.

8    *First*, instruction 6.10 is necessary because it is the only instruction in the New Jersey

9    Model Civil Jury Instructions that discusses certain foundational aspects of proximate causation

10   law—for instance, Irvington's burden, the relative connectedness of each Defendants' conduct with

11   the alleged harms, and the (un)reasonableness of holding a Defendant responsible for Irvington's

12   alleged financial injuries. There is a risk of reversible error when jury instructions "fail to fairly

13   and correctly cover the substance of the applicable law." *White v. Ford Motor Co.*, 312 F.3d 998,

14   1012 (9th Cir. 2002). Thus, 6.10 should be given.

15   *Second*, Irvington's alternative proposal—to give an unmodified version of the pattern

16   instruction—also lacks merit. Pattern instructions are useful, but they are not one-size-fits-all.

17   Courts should mold pattern instructions to fit the law and facts of the specific case over which they

18   are presiding. *United States v. James*, 576 F.2d 223, 226 (9th Cir. 1978) ("[T]he trial judge is given

19   substantial latitude in tailoring the instructions so long as they fairly and adequately cover the issues

20   presented."). That is precisely what Defendants' proposed modifications to the pattern accomplish,

21   by integrating this Court's motion-to-dismiss rulings on Section 230 and the First Amendment. As

22   the Court put it succinctly, Section 230 and the First Amendment impose a "significant limitation

23   on Plaintiffs' theories of recovery." SD Order at 2. For the reasons explained above, *supra*

24   Instruction No. 17 (Protection for Publishing and Expressive Activity), those limitations should be

25   reflected in the Court's instructions to the jury. And to the extent Irvington asserts that New Jersey

26   law relating to joint and several liability for certain indivisible injuries overrides this Court's ruling,

27   *see infra* Instruction No. 33 (Multiple Defendants/Indivisible Injury), it is mistaken. Even assuming

28   *arguendo* that joint and several liability applies—it does not—under New Jersey law, joint and

several liability is a "damages provision," as opposed to a "liability doctrine." *Erny v. Est. of Merola*, 792 A.2d 1208, 1214–15 (N.J. 2002). Because causation is a fundamental requirement for liability, it cannot be supplanted by a doctrine that relates only to allocation of damages.

**Jury Instruction # 23**

**Proximate Cause – Concurrent Cause**

To find proximate cause, you must first find that a Defendant[']s['] [Negligent Non Protected Conduct] [negligence] was a cause of the harm Irvington Public Schools asserts. If you find that the Defendant[']s['] [Negligent Non Protected Conduct] [negligence] is not a cause of the harm, then you must find no proximate cause.

Second, you must find that the Defendant[']s['] [Negligent Non Protected Conduct] [negligence] was a substantial factor that alone, or in combination with other causes, brought about the harm claimed by Irvington Public Schools. By substantial, I mean that it was not a remote, trivial, or inconsequential cause. [The mere circumstance] [There may be more than one cause of a harm. The fact] that there may also be another cause of the harm does not mean that there cannot be a finding of proximate cause. Nor is it necessary for the Defendant[']s['] [Negligent Non Protected Conduct] [negligence] to be the sole cause of harm claimed by Irvington Public Schools.

Irvington Public Schools asserts that the negligence of each Defendant combined to have a single indivisible impact on Irvington Public Schools and its students. When the negligence of more than one defendant contributes to one indivisible harm, you may find each defendant liable, even if they acted independently and even if it is not possible to determine whether or not the wrongful acts of any particular defendant, acting alone, would have caused the same harm.

Where negligence by multiple Defendants concurrently produces harm, each Defendant whose negligence was a substantial factor in bringing about the harm is a proximate cause of that harm.

If you find that [the] [one] Defendant's [Negligent Non Protected Conduct] [negligence] was a substantial factor in bringing about [the] [Irvington Public Schools'] harm, then you [should] [must] find that the Defendant's [Negligent Non Protected Conduct] [negligence] was a proximate cause of the harm, even if you also find that other Defendants' negligence was also a substantial factor.

± Irvington's proposal in red text; Defendants' proposal in blue text.

AUTHORITY: NJ Model Civil Jury Charge 6.12 (1998, rev. 2023); *Boryszewski ex rel. Boryszewski v. Burke*, 882 A.2d 410, 419 (N.J. Super. Ct. App. Div. 2005); *Reichert v. Vegholm*, 840 A.2d 942, 947 n.1, 949 (N.J. Super. Ct. App. Div. 2004); *Poliseno v. Gen. Motors Corp.*, 744 A.2d 679, 686 (N.J. Super. Ct. App. Div. 2000).

DATE SUBMITTED:          January 28, 2026

**IRVINGTON'S POSITION ON INSTRUCTION 23:**

Irvington's proposed instruction hews closely with New Jersey's pattern instruction on concurrent cause. *See* NJ-JICIV 6.12. Irvington's proposal only differs in that it inserts the parties' names, substitutes the sentence starting with "the mere circumstance" to make the instruction more plain language, and adds language addressing the indivisible injury rule—as Irvington will present evidence that Defendants all contributed to an indivisible harm.

**Indivisible Injury.** New Jersey law also recognizes the indivisible injury rule, which shifts the burden of apportioning fault to defendants "where the plaintiff suffered a 'unitary harm'/ 'indivisible injury' caused by the concurrent wrongs of [those] defendants." *Boryszewski ex rel. Boryszewski v. Burke*, 882 A.2d 410, 419 (N.J. Super. Ct. App. Div. 2005); *see also Reichert v. Vegholm*, 840 A.2d 942, 947 n.1, 949 (N.J. Super. Ct. App. Div. 2004) (noting that the indivisible injury rule has been applied to asbestos exposure, toxic tort, legal malpractice, and transportation bailment cases (collecting cases)). Although Irvington addresses this standard in more detail in a separate instruction on damages, *see infra* [Damages from Multiple Defendants / Apportionment for Indivisible Harm], it is necessary to instruct the jury on how the rule affects the element of causation—namely, that Irvington need not prove that each Defendant's conduct was the but-for cause of its harms. *See Poliseno v. Gen. Motors Corp.*, 744 A.2d 679, 686 (N.J. Super. Ct. App. Div. 2000). Rather, Irvington need only prove that each Defendant's negligence "was a substantial factor in producing an injury that would not have occurred, ***or would have been substantially diminished***, in the absence" of that negligence. *Id.* (internal citations omitted) (emphasis added).

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence]; [Section 230].

1    **DEFENDANTS' POSITION ON INSTRUCTION 23:**

2        Defendants object to the additional language Irvington proposes to the pattern concurrent

3    causation instruction for two reasons.

4        *First*, Irvington's proposed additions improperly introduce a damages concept into an

5    instruction on proximate cause. *See Erny*, 792 A.2d at 1214–15. Specifically, Irvington proposes

6    instructing the jury that its assertion of "one indivisible harm" permits the jury to "find each

7    [Defendant] liable, even if they acted independently and even if it is not possible to determine

8    whether or not the wrongful acts of any particular defendant, acting alone, would have caused the

9    same harm." Whether Irvington's alleged financial injuries are indivisible is irrelevant to the

10   proximate cause analysis. To the extent that concept has any relevance to this case (which

11   Defendants dispute), it relates only to determining how much and from which Defendants Irvington

12   can recover a favorable verdict. *See infra* Instruction No. 33 (Multiple Defendants/Indivisible

13   Injury). Inserting the alleged indivisibility of Irvington's claimed injuries into an instruction on

14   proximate cause would serve only to confuse the jury. As such, if indivisible injury is instructed

15   on at all—and it should not be—such an instruction should be alongside other instructions relating

16   to its fellow "damages provision[s]." *Erny*, 792 A.2d at 1214 ("[J]oint and several liability has

17   been regarded generally as a damages provision.").

18       *Second*, the additional proposed language is duplicative of other language in the same and

19   other instructions. For example, the possibility that "[t]here may be more than one cause of a harm"

20   is already covered by the pattern language that "the mere circumstance that there may also be

21   another cause of the harm does not mean that there cannot be a finding of proximate cause," and

22   the additional language thus can only serve to place undue emphasis on this concept. Moreover,

23   the proposed language addresses the concept of "indivisible" impact or harm, which is covered in

24   Irvington's proposed standalone instruction on that concept (to which Defendants object on

25   substantive grounds). Thus, the additional language is argumentative, unnecessarily emphasizing

26   Irvington's view that each Defendant's alleged negligence can be a substantial factor in its alleged

27   harm. *See United States v. Hall*, 552 F.2d 273, 275 (9th Cir. 1977) (holding that a court "is not

28   required to accept a proposed instruction which is manifestly intended to influence the jury towards

accepting the evidence" of one party over another); *United States v. Jensen*, 573 F. App'x 863, 874 (11th Cir. 2014) ("Argumentative statements regarding the application of evidence to the law are appropriate in closings, not jury instructions.").

For both of these reasons, Irvington's proposed additions are likely to confuse the jury and unfairly prejudice Defendants, and, therefore, should not be given.

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS

**Jury Instruction # 24**

**Proximate Cause – Intervening / Superseding Cause**

In this case, Defendants claim that Irvington Public Schools' harm was caused by an independent intervening cause and, therefore, that each Defendant[']s [Negligent Non-Protected Conduct was] [acts or omissions were] not a contributing factor to the harm.

An intervening cause is the act of an independent agency that destroys the causal connection between the defendant's negligence and the harm. To be an intervening cause, the independent act must be the immediate and sole cause of the harm. The intervening cause must be one that so completely supersedes the operation of the Defendant[']s['] [Negligent Non Protected Conduct] [negligence] that you find that the intervening event caused the harm, without the Defendant[']s['] [Negligent Non Protected Conduct] [negligence] contributing to it in any material way. In that case liability will not be established because the Defendant[']s['] [Negligent Non Protected Conduct] [negligence] is not a proximate cause of the harm.

However, Defendants would not be relieved from liability for [Negligent Non Protected Conduct] [negligence] by the intervention of acts of third persons, if those acts were reasonably foreseeable that the third-party acts would have disrupted the economic expectations of Irvington Public Schools and similar entities by expenditures incurred as a result of mental health harm to students. By that I mean that the causal connection between Defendants' negligence and the harm is not broken if the intervening cause is one that might, in the natural course of things, be anticipated as not entirely improbable.

Where the intervention of third parties is reasonably foreseeable, then there still may be a causal connection between a Defendant[']s['] [Negligent Non Protected Conduct] [negligence] and the harm. The fact that there were intervening causes that were foreseeable or that were normal incidents of the risk created does not relieve Defendants of liability.

You must determine whether the alleged intervening cause was an intervening cause that destroyed the substantial causal connection between Defendants' [Negligent Non Protected Conduct] [negligence] and the harm. If it did, then Defendants' [Negligent Non Protected Conduct] [negligence] was not a proximate cause of the harm.

OBJECTION: Defendants object to this instruction in full. Defendants have proposed edits to the extent this instruction is included over Defendants' objection. Irvington stipulates to remove upon stipulation that Defendants will not argue an intervening or superseding cause.

± Irvington's proposal in red text; Defendants' proposal in blue text.

AUTHORITY: NJ Model Civil Jury Charge 6.14 (1998, rev. 2023); *Komlodi v. Picciano*, 89 A.3d 1234, 1253 (N.J. 2014); *People Exp. Airlines, Inc. v. Consol. Rail Corp.*, 495 A.2d 107, 116–118 (N.J. 1985).

DATE SUBMITTED:        January 28, 2026

**IRVINGTON'S POSITION ON INSTRUCTION 24:**

Irvington incorporates New Jersey's pattern instruction on concurrent cause nearly verbatim, with changes limited to the insertion of the parties' names and minor edits to make the instruction more plain language. *See* NJ-JICIV 6.14.

**Intervening/Superseding Cause Instruction is Warranted.** The proposed instruction is necessary to assist the jury in evaluating causation where, as here, defendants argue that there were alternative causes to the plaintiff's injury. Throughout the instructions, Defendants allude to the misconduct of third parties on their platforms, suggesting that the jury will hear evidence of harm caused by nonparties that *succeeded* Defendants' alleged harmful conduct. Defendants object to this instruction but do not provide any authority that suggests giving the pattern instruction is improper when the jury may hear such evidence. *Cf.* NJ-JICIV 6.14, cmt. a ("This charge should be given in conjunction with Model Civil Charge 6.12 or 6.13 where there is also a jury question as to whether an intervening or superseding cause brought about the injury or harm."); *see also Komlodi v. Picciano*, 89 A.3d 1234, 1253 (N.J. 2014) (affirming trial court's use of New Jersey's pattern instruction on intervening/superseding cause where there is evidence of such causes). To the extent that such evidence is introduced at trial, the jury should be instructed about when the chain of causation is and is not severed.

**Irvington's Language is Preferable.** Defendants' proposed language improperly cabins Irvington's liability to foreseeable third party acts that "would have disrupted the economic expectations of Irvington Public Schools and similar entities by expenditures incurred as a result of mental health harm to students." *See supra* [Foreseeability].

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence]; [Section 230].

1    **DEFENDANTS' POSITION ON INSTRUCTION 24:**

2         Defendants object to the Court instructing on intervening or superseding causes because (1)

3    there is no evidence supporting such an instruction, and (2) Irvington's proposal fails to properly

4    integrate New Jersey law's heightened standard of foreseeability in negligence claims seeking only

5    economic damages.

6         Irvington asserts that Defendants' opened the door to an intervening or superseding cause

7    instruction by including arguments relating to alternative causes (*e.g.*, poverty, community

8    violence, the pandemic) of Irvington's alleged injuries in their motion for summary judgment.  That

9    is not so.  Defendants' arguments relating to alternative (and more plausible) causes of Irvington's

10   alleged economic losses are legally distinct from intervening or superseding causes.  As the pattern

11   language makes clear, an intervening or superseding cause is one that occurs ***after*** a defendant's

12   alleged negligence that "destroys the causal connection between the defendant's negligence and the

13   harm."  That is ***not*** the argument Defendants presented or intend to present at trial.  Rather,

14   Defendants intend to argue Irvington's alleged damages are the result of other causes, not

15   Defendants.  Full stop.

16        Further, as discussed in more detail above, *infra* Instruction No. 19 (Foreseeability),

17   Irvington's negligence claim for economic losses is subject to a heightened "particularly

18   foreseeable" standard under New Jersey law.  *See People's Exp.*, 495 A.2d at 116.  Irvington's

19   proposal fails to incorporate this binding, substantive law.  Instead, it lowers the standard,

20   permitting a Defendant to be found a legally responsible cause of Irvington's alleged injuries,

21   provided an intervening cause that could "in the natural course of things, *be anticipated as not*

22   *entirely improbable*."  That is not the standard governing Irvington's claim.  In contrast,

23   Defendants' proposal appropriately incorporates the "particularly foreseeable" standard, bringing

24   this instruction in line with the other causation instructions relevant to causation.

25

26

27

28

**Jury Instruction # 25**

**More Vulnerable or Susceptible Plaintiff**

[A] Defendant[s] must take Irvington Public Schools as they find it, and the fact that the Irvington Public Schools may have been more vulnerable or susceptible to harm or to greater harm than other school districts does not relieve a Defendant[s] from liability for any harm it caused Irvington Public Schools, including liability for worsening any already existing conditions at Irvington Public Schools.

± Irvington's proposal in red text; Defendants' proposal in blue text.

OBJECTION: Defendants object to this instruction in full. Defendants have proposed edits to the extent this instruction is included over Defendants' objection.

AUTHORITY**:** *Frame v. Kothari*, 515 A.2d 810, 812 (N.J. Super. Ct. Law. Div. 1985); *Ostrowski v. Azzara*, 545 A.2d 148, 152 (N. J. 1988); *Cuevas v. Wentworth Grp.*, 144 A.3d 890, 908 (N.J. 2016); *Toscano v. Bd. of Trs., Pub. Employees' Ret. Sys.*, No. A-0861-20, 2022 WL 1446763, at *12 (N.J. Super. Ct. App. Div. May 9, 2022).

DATE SUBMITTED:          January 28, 2026

1    **IRVINGTON'S POSITION ON INSTRUCTION 25:**

2          Defendants object to Plaintiff's proposed instruction that they "must take the Irvington

3    Public Schools as they find it," contending without citation that the eggshell plaintiff doctrine is

4    inappropriate for an organizational plaintiff.  This objection fails.  The eggshell plaintiff doctrine

5    is among the most deeply rooted principles in New Jersey tort law, and nothing limits its application

6    to natural persons.  This instruction is necessary to prevent Defendants from using Irvington Public

7    Schools' existing institutional characteristics as a sword to reduce or eliminate liability for harm

8    Defendants proximately caused.

9          New Jersey law is settled: a defendant "must take plaintiff as he finds him." *Frame v.*

10   *Kothari,* 212 N.J. Super. 498, 501 (Law Div. 1985); *Ostrowski v. Azzara*, 111 N.J. 429, 438–39

11   (1988*); Cowan v. Doering*, 111 N.J. 451, 462 (1988).  This principle is "axiomatic," *Frame*, 212

12   N.J. Super. at 501, and reflects "the almost intuitive sense of injustice that would excuse negligent

13   conduct inflicted on the particularly susceptible victim," *Ostrowsk*i, 111 N.J. at 438–39.   The

14   Appellate Division reaffirmed the doctrine as recently as 2022.  *Toscano v. Bd. of Trs.,* 2022 WL

15   1446763, at *12 (N.J. Super. Ct. App. Div. May 9, 2022).

16         Nothing in any of these cases restricts the principle to natural persons.  The "intuitive sense

17   of injustice" applies with equal force to institutional plaintiffs.  If Defendants negligently caused

18   harm to Irvington's operations, they cannot escape liability by arguing that a wealthier or better-

19   resourced district might have weathered the storm more easily.

20         This instruction is necessary because Defendants have already signaled their intent to argue

21   that IPS' harms flow from what they assert are pre-existing conditions.  *See* Defs.' Mot. for Summ.

22   J. (ECF 2294).  Defendants emphasized that IPS "serves a diverse and generally socioeconomically

23   challenged student body, where nearly two-thirds of Irvington students are eligible for free or

24   reduced-cost lunch" *Id.* at 1.  They stressed that "[c]ommunity violence, particularly gun violence,

25   has tragically and directly affected Irvington's students," and that Irvington "has long partnered

26   with several outside resources to address issues such as student poverty, homelessness, drug and

27   alcohol use, and violence." *Id.* at 1, 3.  They further assert that "[g]iven that 64% of Irvington

28   students are classified as economically disadvantaged—with that figure reaching as high as 81.1%

1   in some schools—Irvington receives federal aid pursuant to a District-wide Title I." *Id.*  Defendants

2   plainly intend to argue that IPS operates under resource constraints, serves students facing

3   socioeconomic challenges, and faced mental health issues predating Defendants' conduct.  From

4   there, they will urge the jury to conclude that IPS' pre-existing circumstances, not Defendants'

5   platforms, caused the harm or that these factors make Irvington's damages excessive compared to

6   what other districts would have incurred.

7        Such a defense violates one of the most basic principles of tort law.  If a jury determines

8   that Defendants' conduct proximately caused harm to Irvington, Defendants cannot escape liability

9   by arguing that a different school district would have suffered less.  The proposed instruction

10  forecloses that error by stating the controlling rule: Defendants must take Irvington Public Schools

11  as they found it, and any pre-existing vulnerabilities Irvington Public Schools has do not reduce

12  Defendants' responsibility for harm Defendants actually caused.

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS

1    **DEFENDANTS' POSITION ON INSTRUCTION 25:**

2    Defendants object to this instruction because it does not apply to an organizational plaintiff

3    and because no evidence supports it.  The doctrine is limited to physical or psychological

4    vulnerabilities of natural persons and has never been applied to institutions such as a school district.

5    *See* Restatement (Second) of Torts § 461 (1965); *Ostrowski v. Azzara*, 545 A.2d 148, 155–56 (N.J.

6    1988) (explaining that the rationale of the more vulnerable plaintiff doctrine is that individuals'

7    preexisting health conditions are not "evidence of fault").[12]  An organization cannot suffer from

8    either a physical or psychological condition, much less one that could exacerbate an injury allegedly

9    caused by Defendants' conduct, and giving this instruction would improperly extend a narrow

10   doctrine beyond its intended scope.

11   Irvington's authority does not suggest otherwise.  Unsurprisingly, each of the cases it cites

12   as authority contemplate a ***natural person's*** unusual susceptibility to physical or emotional injury.

13   *See Cuevas*, 144 A.3d at 908 (discussing unusual susceptibility in the context of an employee's

14   discrimination suit); *Ostrowski v. Azzara*, 545 A.2d 148, 152 (N.J. 1988) (same, in context of

15   patient's medical malpractice suit); *Frame v. Kothari*, 515 A.2d 810, 812 (N.J. Super. App. Div.

16   1985) (same); *Toscano v. Bd. of Trs., Pub. Emps.' Ret. Sys.*, 2022 WL 1446763, at *12 (N.J. Super.

17   Ct. App. Div. May 9, 2022) (same, in context of employee disability benefits).[13]  An organization

18   cannot possibly have the kind of physical or mental health condition to which this narrow doctrine

19   applies.  And Irvington does not identify—nor have Defendants been able to locate—a single

20

21   _____

[12]    While New Jersey does not have a pattern instruction describing the unusually susceptible
22   plaintiff, other states' pattern instructions underscore that the plaintiff must be a natural person.
*See, e.g.*, Judicial Council of California Civil Jury Instructions (CACI) No. 3928 (2023) ("You
23   must decide the full amount of money that will reasonably and fairly compensate [*name of plaintiff*]
for all damages caused by the wrongful conduct of [*name of defendant*], even if [*name of plaintiff*]
24   was more susceptible to injury than a ***normally healthy person*** would have been, and even if a
***normally healthy person*** would not have suffered similar injury.") (emphasis added); WPI
25   30.18.01 Particular Susceptibility, 6 Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 30.18.01 (7th
ed. 2019) ("If [your verdict is for the *[plaintiff] [defendant]*, and if] you find that: (1) before this
26   occurrence the *[plaintiff] [defendant]*  had a ***[bodily] [mental] condition*** that was not ***causing pain
or disability***; and (2) the condition made the *[plaintiff] [defendant]* more susceptible to injury than
27   ***a person in normal health***, then you should consider all the injuries and damages that were
proximately caused by the occurrence . . . .") (emphasis added).
28   [13]    Notably, none of these cases suggest that the jury should have been instructed on unusual
susceptibility.

instance of a court applying an unusual susceptibility instruction to an organizational plaintiff such as Irvington.  Defendants request that the Court decline to do so here.

Finally, Irvington mischaracterizes the arguments Defendants will make at trial. Defendants will not argue at trial that Irvington's damages should be reduced because "a different school district would have suffered less" than Irvington because of its student demographics, violence in the community it serves, its receipt of federal funds under Title I, and its limited resources (or for any other reason).  Instead, Defendants will argue that the mental health harms from which Irvington's alleged economic injuries flow were caused by these other circumstances, which are unrelated to the Defendants' platforms or actionable conduct.  Thus, even if it were theoretically appropriate to expand New Jersey law to apply the unusual-susceptibility doctrine to entities like a school district, Irvington lacks an evidentiary basis to have the jury instructed on that concept here.

**Jury Instruction # 26P**

**No Duty to Prevent Harm Caused by Third Parties**

The mere fact that a Defendant generally knows that third-party bad actors may use their social media platforms to spread harmful challenges, transmit threats, or engage in crimes, is not, by itself, sufficient to show that Defendants caused the School District's harm. However, even if a third party is involved in the harm, you may hold Defendants liable for their own conduct, including conduct that foreseeably facilitates harm from third parties.

AUTHORITY: *Lynch v. Scheininger*, 714 A.2d 970, 975 (N.J. Super. Ct. App. Div. 1998), *aff'd*, 744 A.2d 113 (N.J. 2000).

DATE SUBMITTED:          January 28, 2026

**Jury Instruction # 26D**

**No Duty to Prevent Harm Caused by Third Parties**

Defendants do not have a duty to prevent third parties (for example, individuals who post dangerous "challenges" on Defendants' platforms, commit crimes utilizing Defendants' platforms, or post threats on Defendants' platforms) from using their platforms in ways that may cause harm to Irvington Public Schools or its students.

AUTHORITY: SD Order (ECF 1267) at 26 n.19.

DATE SUBMITTED:        January 28, 2026

**IRVINGTON'S POSITION ON INSTRUCTION 26:**

Plaintiff objects to instructing the jury on harms caused by third parties, but offers competing language if the Court decides an instruction is necessary.

**Instruction Not Warranted**.  It is unlikely that evidence of challenges, crimes, or threats will be introduced at trial, much less play a substantial role that would warrant cautioning the jury about it in the proximate cause instruction.  However, the scope of the Defendants' duty is a question of law for the Court, and a question the Court has already resolved.  Including Defendants' proposed language risks misleading the jury into confusing duty with proximate cause—the question they *are* tasked with answering.  If the Court is inclined to include an instruction on third party conduct, Plaintiff's language more closely adheres to the Court's actual ruling and informs the jury about when it may consider third-party misconduct in its determination of proximate cause.  *See* ECF 1267 at 25-26.

**"Foreseeable" vs. "Non-Foreseeable" Third Party Conduct.**. If the Court is inclined to give an instruction, it should give Irvington's proposed language.  Defendants' proposed instruction is misleading in that it presents an incomplete picture of the law.  The instruction creates the false impression that third party negligence categorically relieves the Defendants from liability.  By contrast, and as Plaintiff's proposed instruction makes clear, New Jersey law holds a negligent wrongdoer liable for causing foreseeable third-party misconduct.  *See Lynch v. Scheininger*, 714 A.2d 970, 975 (N.J. Super. Ct. App. Div. 1998), *aff'd*, 744 A.2d 113 (N.J. 2000) ("And an intervening cause may be foreseeable even though it involves an intentional act of a third party." (internal citations omitted)); *see* ECF 1267 at 7-8.

1    **DEFENDANTS' POSITION ON INSTRUCTION 26:**

2        Defendants object to Irvington's proposed instruction because it is unsupported, prejudicial,

3    and likely to mislead the jury.

4        As this Court has explained, Section 230 and the First Amendment impose a "significant

5    limitation on [Irvington's] theories of recovery."  SD Order at 2.  Among these limitations is the

6    Court's ruling that allegations relating to "injuries caused by third-party conduct as with dangerous

7    social media challenges, crimes, or threats on defendants' platforms" cannot be the basis for any

8    Defendant's liability.  *Id.* 26–27 n.19.  The Court has expressly limited the scope of Defendants'

9    potential liability to each Defendant's own conduct, and the corresponding foreseeability of injury

10   to school districts.  *Id.* at 19–20, 25.  As such, the jury cannot consider third-party conduct to find

11   that a Defendant is the proximate cause of Irvington's alleged economic injuries.

12       Irvington's proposed instruction seeks to turn the Court's order on its head by conflating

13   "Defendants . . .  own conduct" with "harm from third parties."  Thus, Irvington's proposed

14   instruction improperly reintroduces an excluded theory of liability based on third-party conduct, in

15   direct defiance of the Court's prior orders.  Moreover, by reintroducing this previously rejected

16   theory, Irvington's proposal is likely to confuse and mislead the jury by conflating Defendants'

17   alleged conduct with the independent actions of third parties.  *United States v. Powell*, 955 F.2d

18   1206, 1212 (9th Cir. 1992) (holding that misleading jury instructions "constitutes prejudicial

19   error"); *see also Fornicola v. Haemonetics Corp.*, 131 F. App'x 867, 870 (3d Cir. 2005) (holding

20   that a case must be reversed "when jury instructions fail to advise, or misadvise, a jury of concepts

21   it needs to know to properly discharge its duties") (internal quotations omitted).  And to the extent

22   New Jersey law supports the proposition that a negligent wrongdoer may be held liable for causing

23   foreseeable third-party misconduct, that legal principle is superseded by this Court's rulings on

24   federal law (*i.e.*, Section 230 and the First Amendment).

25       In contrast, Defendants' proposed instruction accurately reflects the Court's prior rulings,

26   informing the jury of the matters it may properly consider in evaluating the evidence and rendering

27   a verdict.

28

1

2

3    **Jury Instruction # 27**

**Statute of Limitations**

Defendants contend that Irvington Public Schools' lawsuit was not filed within the time set

4    by law. To succeed on this defense, a Defendant[s] must establish by a preponderance of the

5    evidence that [a reasonably prudent entity exercising] [through the exercise of] ordinary diligence,

6    Irvington Public Schools would have been aware of both Irvington Public Schools' alleged harm

7    and the cause of that harm was that Defendant's negligence before March 3, 2013[.][:]

8        (1) that Irvington Public Schools suffered the alleged harm; and

9        (2) that a proximate cause of that harm was Defendants' negligence.

10

11   ± Irvington's proposal in red text; Defendants' proposal in blue text.

12

13   OBJECTION: Irvington objects to this instruction in full. Irvington has proposed edits to the extent

14   this instruction is included over its objection.

15

16   AUTHORITY**:** *Livingston Bd. of Educ. v. U.S. Gypsum Co*., 249 N.J. Super. 498, 592 A.2d 653

17   (App. Div. 1991); N.J.S.A. 2A:14–1.2; N.J.S.A. 2A:14–2(a); *Kendall v. Hoffman-LaRoche, Inc.*,

18   36 A.3d 541, 551–52 (N.J. 2012); *Ben Elazar v. Macrietta Cleaners, Inc.*, 165 A.3d 758, 764–65

19   (describing discovery rule as an "objective" standard); *Caravaggio v. D'Agostini*, 765 A.2d 182,

20   186–87 (same); *Washington v. CVS Pharmacy, Inc.*, No. 4:15-cv-3504-YGR, ECF No. 610, at 20–

21   21 (statute of limitations instruction).

22

23   DATE SUBMITTED:    January 28, 2026

24

25

26

27

28

1    **IRVINGTON'S POSITION ON INSTRUCTION 27:**

2    Defendants' request for a statute of limitations ("SOL") jury instruction as to Irvington

3    Public Schools' ("IPS") negligence claim should be denied because: Defendants have not

4    established any admissible evidence from which a reasonable juror could conclude that IPS knew

5    or should have known, before March 3, 2013, both that it was suffering harm and that Defendants'

6    negligence was the proximate cause of that harm.   If, however, the Court determines that an SOL

7    instruction is proper, then the parties agree that the applicable SOL is ten years.

8    The New Jersey Supreme Court has long prohibited jury charges that lack a factual

9    foundation: "A jury instruction that has no basis in the evidence is insupportable, as it tends to

10   mislead the jury." *Lesniak v. Cnty. of Bergen*, 117 N.J. 12, 20 (1989) citing *Guzzi v. Jersey Cent.*

11   *Power and Light Co.,* 12 N.J. 251, 260 (1953). To succeed on this defense, Defendants must prove

12   that IPS knew or should have known of both the alleged harm and the cause of that harm.

13   *Livingston Bd. of Educ. v. U.S. Gypsum Co.*, 249 N.J. Super. 498 (App. Div. 1991). Defendants'

14   purported evidence fails to establish accrual. Their claim that IPS employees "spent up to 5% of

15   their time on social media issues as early as 2004" is implausible as to these Defendants: Instagram

16   was created in 2010, Snapchat launched in 2011, TikTok entered the U.S. market in 2018, and

17   Facebook was not available to high school students until September 2005. Even their 2011–2012

18   evidence, that IPS was "aware of" social media and "attempting to keep students off the platform"

19   proves only that IPS knew students used social media, not that IPS knew or should have known

20   that Defendants' specific design choices were negligently causing institutional harm. *See The*

21   *Palisades At Fort Lee Condo. Ass'n, Inc. v. 100 Old Palisade, LLC*, 230 N.J. 427, (2017) ("Under

22   the discovery rule, the limitations clock does not commence until a plaintiff is able to discover,

23   through the exercise of reasonable diligence, the facts that form the basis for an actionable claim

24   against an identifiable defendant.").   Charging the jury on a speculative SOL bar would directly

25   contradict *Lesniak* and *Guzzi*. Moreover, because the statute of limitations is an affirmative defense,

26   an instruction suggesting the claim may be time-barred, without any supporting evidence meeting

27   Defendants' burden, improperly shifts the burden to IPS and suggests to the jury that Defendants

28   satisfied a burden they cannot carry.   New Jersey law forbids such misleading charges. *Lesniak*,

1    117 N.J. at 20; *Guzzi*, 12 N.J. at 260.

2        Therefore, because Defendants bear the burden of pleading and proving their statute of

3    limitations defense, and because they have not discovered (much less proffered) evidence from

4    which a reasonable juror could conclude that IPS's claim is untimely, Defendants are not entitled

5    to an SOL jury instruction.

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS

1    **DEFENDANTS' POSITION ON INSTRUCTION 27:**

2    Defendants respectfully request that the Court give their proposed statute of limitations

3    instruction. New Jersey sets a ten-year statute of limitations for civil actions brought by a state

4    entity such as Irvington. N.J. Stat. Ann. § 2A:14–1.2. Because "claims can proceed only where

5    they are not time-barred," Defendants' statute of limitations defense is dispositive of Irvington's

6    claims. *Nash v. New Jersey*, 2022 WL 4111169, at *2 (D.N.J. Sept. 8, 2022). Failure to instruct

7    the jury on such a "material aspect[]" of a case gives rise to reversible error. *See Sun Coast Merch.*

8    *Corp. v. Myron Corp.*, 922 A.2d 782, 803 (N.J. Super. Ct. App. Div. 2007) ("[A] judge's failure to

9    provide a jury with clear and accurate instructions regarding the material aspects of a case . . .

10   mandates a new trial."); *see also Cal-Agrex, Inc. v. Tassell*, 258 F.R.D. 340, 343 (N.D. Cal. 2009),

11   *aff'd*, 408 F. App'x 58 (9th Cir. 2011) ("The failure of the Court to correctly instruct the jury on a

12   dispositive issue has . . . been recognized as grounds for granting a new trial."). And "if an

13   instruction is timely requested, is supported by the evidence, and correctly states the law, it should

14   be given." *United States v. Davis*, 183 F.3d 231, 252 (3d Cir.), *amended*, 197 F.3d 662 (3d Cir.

15   1999).

16   The evidence in this case supports giving a statute of limitations instruction. Irvington's

17   own discovery responses assert that it first suffered harm as the result of Defendants' conduct as

18   early as 2011. *E.g.,* Snap Inc.'s Am. Resp. Bellwether Pl. Interrog. Regarding Affirmative

19   Defenses at 10. Irvington's employees also claimed that they spent up to 5% of their time on social

20   media issues as early as 2004 and testified that Irvington was aware of the alleged harms of social

21   media and was attempting to keep students off the platform as early as 2012. *E.g., id.* But Irvington

22   did not bring suit until March 3, 2023—after the ten-year statute of limitations had run. *E.g., id.*

23   Because this evidence will be presented at trial, instructing on the statute of limitations is essential

24   for the jury to properly decide the issue.

25   Defendants also object to Irvington's proposal that the statute of limitations instruction

26   focus on "Irvington Public Schools" rather than a "reasonably prudent entity." Subjective failure

27   to discover a cause of action does not toll the limitations period where a reasonable person would

28   have discovered it. *See Ben Elazar v. Macrietta Cleaners, Inc.*, 165 A.3d 758, 764–65 (2017)

94

(describing discovery rule as an "objective" standard); *Caravaggio v. D'Agostini*, 765 A.2d 182, 186–87 (2001) (same).    In other words, whether Irvington exercised ordinary diligence in investigating its claims should not be compared to what Irvington itself would have done, but what a reasonably prudent person (or entity) would have done.    Defendants' proposed revision accurately reflects this law and should be given.

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS

**Jury Instruction # 28**

**Comparative Negligence**

Defendants assert the affirmative defense of comparative negligence. Under this defense, Defendants must prove by a preponderance of the evidence that:

(1) Irvington Public Schools failed to exercise [ordinary prudence] [reasonable care];

(2) Irvington Public Schools' failure to exercise [ordinary prudence] [reasonable care] was a substantial factor in causing the [injury] [harm] it alleges in this lawsuit; and

(3) As a result of Irvington Public Schools' failure to exercise [ordinary prudence] [reasonable care], Irvington Public Schools suffered [injury] [harm].

If you find that Irvington Public Schools and one or more of the Defendants were negligent and proximately caused the harm, then you must compare the negligence of Irvington Public Schools and those Defendants in terms of percentages. You will attribute to each of them that percentage that you find describes or measures their negligence in proximately causing the harm. The percentages must add up to 100%. You should not allocate any percentage to any entity who you have found was not both negligent and a proximate cause of the harm.

I will explain to you the effect of these percentages. In order for Irvington Public Schools to recover against any [d][D]efendant, Irvington Public Schools' percentage of fault must be [no more than] 50% [or less]. If Irvington Public Schools' percentage is more than 50%, Irvington Public Schools will not recover damages at all, and your deliberations are concluded and you should not make any determination as to damages. If Irvington Public Schools' percentage is 50% or less, it will recover from any Defendant whose fault you have found was a proximate cause of the harm.

± Irvington's proposal in red text; Defendants' proposal in blue text.

OBJECTION: Irvington objects to this instruction in full. Irvington has proposed edits to the extent this instruction is included over its objection.

AUTHORITY: NJ Model Civil Jury Charge 7.31 (2000, rev. 2023).

1

2    DATE SUBMITTED:        January 28, 2026

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **IRVINGTON'S POSITION ON INSTRUCTION 28:**

2        **Instruction Not Supported by Evidence.**  Under New Jersey law, where "the record does

3    not contain a sufficient basis to establish ***every element*** of [an] affirmative defense, . . . the trial

4    court's refusal to charge [the jury on that defense] [is] proper." *State v. Smith*, 731 A.2d 77, 84 (N.J.

5    Super. Ct. App. Div. 1999) (internal citations omitted) (emphasis added); *see also Perez v. A-1*

6    *Prop. Mgmt., L.L.C.*, 2009 WL 1811443, at *7 (N.J. Super. Ct. App. Div. June 26, 2009) (affirming

7    trial court's refusal to give affirmative defense instruction in part because "the evidence [defendant]

8    adduced was insufficient to meet the two-prong test" of that defense).  Thus, comparative

9    negligence—as an affirmative defense—only warrants a jury instruction if Defendants supply

10   evidence on all elements of negligence against Irvington—including duty, breach, causation, and

11   damages. *See Ostrowski v. Azzara*, 545 A.2d 148, 151 (N.J. 1988) ("Fault in [the comparative fault]

12   context meant a breach of a legal duty that was comparable to the duty of the other actors to exercise

13   such care in the circumstances as was necessary to avoid the risk of injury incurred."). Defendants

14   have not met this burden; their justification for the instruction rests entirely on Irvington's decision

15   not to prohibit student personal devices on school grounds. But the mere decision not to ban

16   personal devices does not establish that Irvington breached a duty of care, much less that its conduct

17   caused the alleged harms. A jury instruction on comparative negligence is therefore inapplicable

18   and would only serve to confuse the jury.

19       **Defendants Have Not Shown Apportionment Is Possible.** Irvington also objects to this

20   instruction because Defendants have not met their burden to demonstrate that the harm at issue can

21   be apportioned to Irvington.  As explained *infra*, *see* [Damages from Multiple Defendants /

22   Apportionment for Indivisible Harm], Defendants bear the burden of proving apportionment is

23   feasible before any percentage allocation is appropriate. They have offered no such evidence. A

24   jury instruction on comparative negligence is therefore inapplicable and would only serve to

25   confuse the jury.

26       **Irvington's Language is Preferable.**  If the Court is inclined to instruct the jury on

27   comparative negligence, Irvington's language is preferable because it substitutes potentially

28   confusing terminology for plain language and is more closely tailored to the facts of this case.

Specifically, "reasonable care" is easier to understand than "ordinary prudence," and "harm" is more appropriate than "injury" in a case that involves economic harms. Similarly, Irvington's revisions from "individuals or entities" to "the Defendants" appropriately tailors the focus of harm that may be apportioned to the parties in this case. *See infra* [Damages from Multiple Defendants / Apportionment for Indivisible Harm].

1    **DEFENDANTS' POSITION ON INSTRUCTION 28:**

2    The Court should instruct the jury on comparative negligence.  Irvington's objection to the

3    instruction fails for several reasons.

4    ***First***, Irvington's claim that there is insufficient evidence of its fault is incorrect.  The Court

5    should reject out of hand Irvington's suggestion that it did not owe a duty to avoid undue risk to

6    itself.  An "underlying principle of the [Comparative Negligence Act] is the idea that 'every person

7    has an obligation to exercise reasonable care for his or her own safety [because i]t is only fair that

8    each person only pay for injuries he or she proximately caused."  *Hynes v. Gibson*, 2020 WL

9    4723742, at \*3 (N.J. Super. Ct. App. Div. Aug. 14, 2020) (quoting *Waterson*, 544 A.2d at 372).

10    Further, as explained in Defendants' Motion for Summary Judgment, Defendants will present

11    evidence at trial showing that Irvington would not have taken additional steps to restrict personal

12    device use on district property or attempted to do so when students were at home with parents.  *See*

13    Defs.' Mot. Summ. J. (Irvington) at 34–35 (cataloging evidence that Irvington would not have taken

14    "steps to prohibit student personal devices on school grounds entirely because Irvington considers

15    them safety tools," because personal devices are needed for parents to communicate with students,

16    and because the district's administrators consider parents—not the school district—responsible for

17    supervising students' technology use at home).  Accordingly, the jury must be instructed on how

18    to treat this evidence.

19    ***Second***, Irvington erroneously objects that the pattern instruction does not reflect that the

20    proper "apportionment burden" in this action.  As an initial matter, Irvington's argument is

21    mistaken because it conflates comparative negligence and apportionment of damages.  These are

22    distinct legal concepts.  *See Erny*, 792 A.2d at 1214–15  (distinguishing between functions and

23    purposes of comparative negligence and joint and several liability under New Jersey law).   While

24    comparative negligence concerns a plaintiff's own fault in the injury that occurred, apportionment

25    of damages concerns division of damages between and among defendants.  *Id.*  New Jersey's

26    Comparative Negligence Act "requires a trier of fact to" engage in both these exercises by

27    "translat[ing] common liability of joint or concurrent tortfeasors, including the plaintiff, into a

28    percentage of causal fault that contributed to the plaintiff's injuries."  *Id*.  Accepting Irvington's

1  demand to modify the pattern instruction so that "Defendants carry th[e] apportionment burden"

2  would improperly intermingle these legal concepts.

3      Further, Irvington's claim that Defendants bear the burden on apportionment is incorrect

4  because it flows from the erroneous legal argument that the harm is indivisible.  As explained in

5  Defendants' response to Instruction No. 34 (Multiple Defendants/Indivisible Injury), that is not the

6  case here.  For these reasons, Irvington should not be permitted to muddy the waters by entangling

7  apportionment with the comparative negligence instruction.

8      Finally, Defendants' proposed instruction is preferable to Irvington's proposal.

9  "Prudence" is the terminology consistently adopted by New Jersey courts in the model instruction

10  describing the duty of care applicable in negligence actions.  NJ Model Civil Jury Charge 5.10A

11  (1984, rev. 2022) (using "ordinary prudence," "ordinary prudent person," and "reasonably prudent

12  person" throughout instruction).  Ultimately, what would be most confusing for the jury is the use

13  of several terms, which could obscure the fact that they address the same issues.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Jury Instruction # 29**

**Duty to Mitigate**

If you decide that Irvington Public Schools is entitled to damages for its losses, you must then determine whether any of Irvington Public Schools' losses could have been avoided or alleviated by Irvington Public Schools' exercise of reasonable care.

It is a general rule that a plaintiff [injured] [harmed] by another's negligence has a duty to exercise reasonable care to minimize damages. [Failure] [If a plaintiff fails] or [refusal] [refuses] to [do so bars recovery for consequences which could have been avoided by the exercise of such care. In other words, damages that could have been prevented by Irvington Public Schools exercising reasonable care are not the responsibility of any] [use reasonable care to minimize damages, then it may not recover those damages against a] [D][d]efendant.

In this case, Defendants have introduced evidence by which they seek to reduce or avoid responsibility for Irvington Public Schools' injuries. A Defendant must prove by a preponderance of the evidence that after its negligence occurred, Irvington Public Schools acted unreasonably by failing to avoid further injury.

The duty to mitigate affects only the amount of damages that are recoverable—it is not a defense to liability. Even if you find that Irvington Public Schools failed to reasonably mitigate its damages, Defendants still remain liable for those damages that could have not been avoided through reasonable mitigation efforts.

Defendants have the burden of proving by a preponderance of the evidence that after Defendants' negligence occurred:

(1) Irvington Public Schools' damages could have been avoided through reasonable mitigation efforts; and

(2) Irvington Public Schools failed to exercise reasonable care to mitigate or minimize further losses.

Each Defendant is liable only for that portion of the injuries attributable to that specific Defendant's negligence. If you find that Irvington Public Schools did not act reasonably to avoid or alleviate [injury] [harm], you must assess in terms of percentages the degree to which the [injuries]

[harms] were the result of Irvington Public Schools' own unreasonable failure to minimize or to avoid further [injury] [harm].

± Irvington's proposal in red text; Defendants' proposal in blue text.

OBJECTION: Irvington objects to this instruction in full. Irvington has proposed edits to the extent this instruction is included over its objection.

AUTHORITY: NJ Model Civil Jury Charge 8.11B (1996, rev. 2000); *Komlodi v. Picciano*, 89 A.3d 1234, 1253 (N.J. 2014); *Ingraham v. Trowbridge Builders*, 687 A.2d 785, 791 (N.J. Super. Ct. App. Div. 1997); *Russo Farms, Inc. v. Vineland Bd. of Educ.*, 675 A.2d 1077, 1088–89 (N.J. 1996).

DATE SUBMITTED:          January 28, 2026

1   **IRVINGTON'S POSITION ON INSTRUCTION 29:**

2   **Instruction Not Supported by Evidence.**  Irvington objects to instructing the jury on the

3   duty to mitigate damages, as Defendants have not supplied any evidence suggesting that Irvington

4   violated that duty.  Under New Jersey law, "[w]here there is no evidence of an unreasonable failure

5   to mitigate, a defendant is not entitled to have the jury instructed on the injured party's obligation

6   to mitigate its damages." *Grubbs v. Knoll*, 870 A.2d 713, 722-23 (N.J. Super. Ct. App. Div. 2005).

7   The burden of producing such evidence "rests upon the defendant." *Id.* Defendants have offered no

8   such evidence here. Thus, the proposed mitigation instruction is inapplicable to the facts of the case

9   and, if given, likely to confuse the jury.

10  **Irvington's Language is Preferable.**  If such an instruction is to be given, Irvington's

11  proposal is preferable.  Irvington has made stylistic changes to the pattern language to improve

12  readability and comprehension (e.g., changing injury to harm, revising sentence beginning "Failure

13  or refusal to do so . . ."), and added a substantive paragraph that explains mitigation of damages is

14  a defense to the amount of damages recoverable, but not liability.  *See Prioleau v. Kentucky Fried

15  Chicken, Inc.*, 122 A.3d 328, 334 (N.J. 2015) ("Jury charges must . . . correctly state the applicable

16  law in understandable language, and plainly spell out how the jury should apply the legal principles

17  to the facts as it may find them." (cleaned up)).  Additionally, Irvington's instruction clearly and

18  accurately enumerates the elements of a mitigation defense—namely, that Defendants must show

19  damages could have been avoided, and that Irvington failed to exercise reasonable care to minimize

20  its damages. *See Komlodi v. Picciano*, 89 A.3d 1234, 1253 (N.J. 2014) (recommending jury charge

21  that reads: "you must decide what percentage, if any, of [the plaintiff's] damages were caused by a

22  failure on her part to exercise reasonable care to avoid or mitigate those damages—provided she

23  was capable of doing so"); *see also Ingraham v. Trowbridge Builders*, 687 A.2d 785, 791 (N.J.

24  Super. Ct. App. Div. 1997) ("[W]here both the plaintiff and the defendant have had equal

25  opportunity to reduce the damages by the same act and it is equally reasonable to expect a defendant

26  to minimize damages, the defendant is in no position to contend that the plaintiff failed to

27  mitigate.").

28

1    **DEFENDANTS' POSITION ON INSTRUCTION 29:**

2       The Court should instruct the jury on duty to mitigate. Irvington's objection is without merit,

3 and its modifications to Defendants' proposal introduce improper argument.  Irvington's proposals

4 on mitigation should be rejected as a result.

5       As an initial matter, Irvington's contention that the jury does not need to be instructed on

6 mitigation is erroneous.  Trial courts "should give an instruction that appropriately guides the jury

7 on the legal basis of a plaintiff's claim or a defendant's affirmative defense, so long as there is a

8 reasonable factual basis in the evidence to support that claim or defense."  *Walker v. Costco*

9 *Wholesale Warehouse*, 136 A.3d 436, 442 (N.J. Super. Ct. App. Div. 2016).  Each Defendant in

10 this case has asserted failure to mitigate as an affirmative defense.  *See* ECF 1419 at 9 (YouTube's

11 Answer); ECF 1421 at 5 (TikTok's Answer); ECF 1423 at 10 (Snap's Answer); ECF 1424 at ¶ 44

12 (Meta's Answer).  Defendants will also present evidence at trial demonstrating that Irvington failed

13 to mitigate its damages.  *See, e.g.*, Mot. Summ. J. (Irvington) at 4–6 (describing Irvington

14 administrators' lack of action to addressing issues allegedly caused by students' use of Defendants'

15 platforms); *id.* at 34–35 (describing evidence showing Irvington Public Schools would not have

16 taken additional steps to restrict personal device use on district property or attempt to do so when

17 students are at home with parents).  As a result, mitigation is a "material aspect[]" of this case, and

18 failure to instruct the jury on this point would constitute reversible error.  *See Sun Coast Merch.*

19 *Corp. v. Myron Corp.*, 922 A.2d 782, 803 (N.J. Super. Ct. App. Div. 2007) ("[A] judge's failure to

20 provide a jury with clear and accurate instructions regarding the material aspects of a case . . .

21 mandates a new trial."); *see also Cal-Agrex, Inc. v. Tassell*, 258 F.R.D. 340, 343 (N.D. Cal. 2009),

22 *aff'd*, 408 F. App'x 58 (9th Cir. 2011) ("The failure of the Court to correctly instruct the jury on a

23 dispositive issue has . . . been recognized as grounds for granting a new trial.").

24       Further, Irvington's proposal is argumentative, improperly emphasizing the concept of

25 damages that cannot be avoided by reasonable efforts to mitigate by repeating it multiple times in

26 the same instruction.  *See Hall*, 552 F.2d at 275 (argumentative instructions are inappropriate).  For

27 these reasons, and to avoid juror confusion, Defendants propose instead charging the jury using

28 New Jersey's pattern language on this concept.

**Jury Instruction # 30**

**Damages**

I shall now instruct you on the law governing damages in the event you decide the liability issue in favor of Irvington Public Schools.

The fact that I instruct you on damages should not be considered as suggesting any view of mine about which party is entitled to prevail in this case. Instructions on damages are given for your guidance in the event you find that Irvington Public Schools is entitled to a verdict. I am required to provide instructions on damages in all cases where the trial includes a claim for damages.

Irvington Public Schools has the burden of establishing by a preponderance of the evidence each item of damages that it claims. Irvington Public Schools must also prove that the damages were the natural and probable consequences of the Defendant's Non-Protected Conduct. Defendants' Non-Protected Conduct must have been a proximate cause of the damages. Damages may not be based on conjecture or speculation.

In this case Irvington Public Schools is seeking compensatory and punitive damages.

± Irvington's proposal in red text; Defendants' proposal in blue text.

AUTHORITY: NJ Model Civil Jury Charge 1.12O (1998).

DATE SUBMITTED:        January 28, 2026

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS

**IRVINGTON'S POSITION ON INSTRUCTION 30:**

The parties largely agree on the language of this instruction. Irvington's proposed instruction states that it seeks both compensatory and punitive damages in order to orient the jury—before it is instructed on the details of each—regarding the types of damages at issue. Defendants' doomsday objection that a single prefatory sentence will "threaten[] to confuse [the] critical issue" of each type of damages' burden of proof is unfounded, since Irvington's proposed instructions on those damages clearly and separately articulate the applicable burdens of proof. *See infra* [Compensatory Damages]; [Punitive Damages].

**Repeated 230 Instruction.**  Irvington objects that Defendants improperly insert their 230 defense here. *See supra* [Negligence]; [Section 230].

1    **DEFENDANTS' POSITION ON INSTRUCTION 30:**

2    Defendants object to Irvington's insertion of the following sentence: "In this case the

3    Irvington Public Schools is seeking compensatory and punitive damages."  This language is

4    unnecessary because, assuming the jury is permitted to consider punitive damages over Defendants'

5    objections, it will be separately instructed on that issue.

6    The proposed placement of the language is also confusing because it comes in the middle

7    of instructions about compensatory damages.  Compensatory and punitive damages serve different

8    purposes.  *See Cortez v. Trans Union, LLC*, 617 F.3d 688, 718 n.37 (3d Cir. 2010) ("By their very

9    definition, punitive damages are intended to punish a defendant; they are not intended to

10   compensate the plaintiff.").  And critically, compensatory and punitive damages are also governed

11   by different standards: preponderance of the evidence and clear and convincing evidence,

12   respectively.  Moreover, Defendants reserve the right to seek bifurcation of punitive damages under

13   the Court's usual practice.  Standing Order at 2(h)(iv).  If the punitive damages are bifurcated,

14   "orient[ing]" the jury to an eventual punitive-damages phase during the liability/compensatory-

15   damages phase would be error.  *Rusak v. Ryan Auto., L.L.C.*, 12 A.3d 239, 248 (N.J. Super. Ct.

16   App. Div. 2011) ("Needless to say, the jury properly was not provided with instructions on punitive

17   damages during the liability phase of the trial." (citing N.J.S.A. 2A:15-5.13(b)).

18   Additionally, Defendants have replaced "conduct" with the phrase "Non-Protected

19   Conduct."  This modification aligns with the Court's motion to dismiss order on Section 230, as

20   well as Defendants' proposed instruction implementing the limits proposed by that order Instruction

21   No. 18 (Protection for Publishing and Expressive Activity).

22

23

24

25

26

27

28

1

**Jury Instruction # 31**

2

**Compensatory Damages**

3        Irvington Public Schools has the burden of establishing by a preponderance of the evidence

4    each item of damages that it claims. Damages may not be based on conjecture or speculation.

5        Compensatory damages are designed to compensate a plaintiff for an actual [injury] [harm]

6    or loss it suffered as a result of a defendant's [Non-Protected Conduct] [negligence]. They are

7    intended to make a plaintiff whole. In this case, the Irvington Public Schools is seeking

8    compensatory damages.

9

10    ± Irvington's proposal in red text; Defendants' proposal in blue text.

11

12    OBJECTION: Defendants object to this instruction in full. Defendants have proposed edits to the

13    extent this instruction is included over Defendants' objection.

14

15    AUTHORITY: *Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 97 N.J. 37, 48 (1984).

16

17    DATE SUBMITTED:            January 28, 2026

18

19

20

21

22

23

24

25

26

27

28

**IRVINGTON'S POSITION ON INSTRUCTION 31:**

This instruction is necessary and not duplicative of Irvington's proposed instruction on damages generally. *See supra* [Damages]. Unlike the general damages instruction, which merely includes prefatory remarks that the Court will instruct the jury on damages, Irvington's proposed instruction on compensatory damages explains the standard for measuring that specific type of damages—including the preponderance of the evidence standard, and the principle that compensatory damages are designed to make a plaintiff whole. Irvington's proposed language is also an accurate statement of New Jersey law. *See Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 477 A.2d 1224, 1230 (N.J.1984) (defining compensatory damages as the amount "designed to compensate a plaintiff for an actual injury or loss.").

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence]; [Section 230].

**DEFENDANTS' POSITION ON INSTRUCTION 31:**

Defendants object to this instruction as needlessly cumulative and repetitive because the substance of this instruction is covered by Instruction No. 31 (Damages).  The Court should presume that the model instruction on damages is comprehensive with respect to the subject matter it addresses, which includes compensatory damages.  *State v. Cotto*, 274 A.3d 618, 650 (N.J. Super. Ct. App. Div. 2022) ("[A] jury charge is presumed to be proper when it tracks the model jury charge because the process to adopt model jury charges is 'comprehensive and thorough.'") (citation omitted).  Moreover, courts "discourage repetitive or complex" jury instructions, owing to their potential to "confuse the jury."  *Cooper v. Paychex, Inc.*, 1998 WL 637274, at *10 (4th Cir. 1998); *cf. United States v. Field*, 625 F.2d 862, 872 (9th Cir. 1980) (affirming decision not to give "lengthy and involved" instruction because "the matter is covered by simpler instructions").  Because the jury has already been instructed on compensatory damages, repeating the instruction in different language that departs from the language approved by the Committee through its "comprehensive and thorough process" is unnecessary and risks confusing the jury.

**Jury Instruction # 32**

**Future Damages**

Irvington Public Schools seeks to recover future expenditures necessary to address ongoing harms caused by Defendants' conduct. Irvington Public Schools has a right to be compensated for any future expenditures resulting from the harm brought about by a Defendant['}s [negligent Non-Protected Conduct] [wrongdoing].

If it is reasonably probable that Irvington Public Schools will incur such expenditures in the future, then you should include an amount to compensate Irvington Public Schools for those [expenditures] [costs]. In deciding how much to award for future damages, think about the factors mentioned in discussing the nature, extent, and duration of Irvington Public Schools' harm. Also consider Irvington Public Schools' current operational circumstances and how long you reasonably expect the need for such expenditures to continue. Obviously, the time period covering Irvington Public Schools' future expenditures cannot go beyond that point when it is expected that Irvington Public Schools may recover from the alleged harm

For future damages, you must base your decision on the probable amount that Irvington Public Schools will incur. It is the burden of Irvington Public Schools to prove, by a preponderance of the evidence, the probable need for future expenditures to address ongoing harm and the reasonableness of the [amounts] [costs] of those expenditures. In deciding what Irvington Public Schools' future damages are, understand that the law does not require of you mathematical exactness. Rather, you must use sound judgment based on reasonable probability. Any award of future damages cannot be based upon speculation.

If you decide from the evidence that it is reasonably probable that Irvington Public Schools will need to incur costs in the future to address the harm caused by Defendants' conduct, then you should include an amount to compensate for those anticipated expenditures. The fact that Irvington Public Schools has not yet incurred these costs, or that Irvington Public Schools would not incur them absent an award in this case, does not preclude recovery if you find that such expenditures are reasonably necessary to address harm proximately caused by Defendants' negligent conduct.

± Irvington's proposal in red text; Defendants' proposal in blue text.

OBJECTION: Defendants object to this instruction in full. Defendants have proposed edits to the extent this instruction is included over Defendants' objection.

AUTHORITY: NJ Model Civil Jury Charge 8.11I (1997); *Mauro v. Raymark Indus., Inc.*, 561 A.2d 257, 261 (N.J. 1989); *Kahanovitz v. Electro-Biology, Inc.*, 2013 WL 3879906, at *12 (N.J. Super. Ct. App. Div. July 30, 2013); *Sandler v. Lawn–A–Mat Chem. Equip. Corp.*, 358 A.2d 805, 814 (N.J. Super. Ct. App. Div. 1976); *Battaglia v. United Parcel Serv., Inc.*, 70 A.3d 602, 623 (N.J. 2013).

DATE SUBMITTED:          January 28, 2026

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS

**IRVINGTON'S POSITION ON INSTRUCTION 32:**

**Ordering.**  This instruction should follow the Compensatory Damages instruction and precede the Damages from Multiple Defendants / Apportionment for Indivisible Harm instruction, as it is a subset of compensatory damages.

**Future Damages Instruction is Warranted.**  Irvington's instruction on future damages is an accurate statement of New Jersey law, which permits recovery of future damages when "they are reasonably probable to occur." *Mauro v. Raymark Indus., Inc*., 561 A.2d 257, 261 (N.J. 1989) (citing *Coll v. Sherry*, 148 A.2d 481, 485-86 (N.J. 1959)). Defendants' objection that the amount of funding necessary for Dr. Hoover's strategic plan is rooted in "conjecture or speculation" is inaccurate and exaggerates the governing standard. Again, Irvington is entitled to damages that are "***reasonably probable*** to occur." *Mauro*, 561 A.2d at 261 (emphasis added). "'[M]ere uncertainty as to the amount will not preclude the right of recovery.'" *Kahanovitz v. Electro-Biology, Inc*., 2013 WL 3879906, at *12 (N.J. Super. Ct. App. Div. July 30, 2013) ((quoting *Sandler v. Lawn–A–Mat Chem. Equip. Corp*., 358 A.2d 805, 814 (N.J. Super. Ct. App. Div. 1976)). Nonetheless, Defendants' attempt at litigating the weight of Irvington's evidence is improper and does not take the issue of future damages away from the jury.

**Time Period.**  The Court should not instruct the jury with Defendants' proposed sentence beginning "Obviously, the time period covering Irvington Public Schools' future expenditures . . . ." This sentence is likely to cause confusion, and Defendants have not introduced any evidence suggesting a time period from which Irvington is likely to recover.  The jury is already instructed that it should determine damages based upon the evidence, and that the jury should consider "the duration" of Irvington's harm.  That is sufficient, and does not imply that there is an "obvious" way for the jury to determine when precisely Irvington will recover from the harm.

**Repeated 230 Instruction.**  Defendants improperly insert their 230 defense here. *See supra* [Negligence]; [Section 230].

1    **DEFENDANTS' POSITION ON INSTRUCTION 32:**

2        Irvington's proposed instruction on future damages should not be given because Irvington

3    has insufficient evidence of future damages and, therefore, is not entitled to such an instruction.

4    The only future damages that Irvington seeks is the cost of Dr. Hoover's "strategic plan," which is

5    not proper future damages. *See* Defs.' Mot. Summ. J. (Irvington) at 28–29.

6        Under New Jersey law, prospective damages are only recoverable if the future injury is

7    "more probable than not" to occur. *Mauro v. Owens-Corning Fiberglas Corp.*, 542 A.2d 16, 20

8    (N.J. Super. Ct. App. Div. 1988), *affirmed by Mauro v. Raymark Indus., Inc.,* 561 A.2d 257, 261

9    (N.J. 1989). This rule requires future injury awards to not be rooted in "conjecture or speculation."

10   *Battaglia v. United Parcel Serv., Inc.*, 70 A.3d 602, 623 (N.J. 2013). Irvington's proposed

11   instruction—modeled on New Jersey's pattern instruction on future medical expenses—properly

12   includes references to these standards. But that is not enough for the Court to rule that such an

13   instruction is proper.

14       As Defendants explain in their motion to dismiss, Dr. Hoover's strategic plan consists

15   entirely of expenses she **_recommends_** Irvington incur to address teen mental health generally.[14]

16   These expenses are nothing like the future damages at issue in *Mauro* and *Battaglia*, where New

17   Jersey courts held a plaintiff may recover future damages for enduring harm that is reasonably

18   probable to occur as a result of personal physical or emotional injury. *Mauro*, 542 A.2d at 20;

19   *Battaglia*, 70 A.3d at 623. Nor are they in any way expected to flow from injuries Irvington has

20   already allegedly sustained. *See* Defs.' Reply in Support of Mot. Summ. J. (Irvington) at 17.

21

22

23

---

24   [14]     As Defendants have pointed out: "Irvington has not instituted Dr. Hoover's plan, it is under
     no obligation to do so, and absent a recovery of money from Defendants in this lawsuit, Irvington
25   will *not* institute the plan or incur the associated costs." Defs.' Mot. for Summary Judgment
     (Irvington) at 30. Irvington has no evidence beyond Dr. Hoover's *ipse dixit* to support the assertion
26   that it will more likely than not be forced to incur the expenses associated with Dr. Hoover's
     strategic plan. In an attempt to overcome this hurdle, Irvington seeks an instruction from the Court
27   directing the jury to ignore the inadequacy of Irvington's evidence. Irvington's future damages
     proposal contains language instructing the jury to ignore the "fact that [it] . . . would not incur [the
28   costs it claims as future damages] absent an award in this case." That is not New Jersey law.

**Jury Instruction # 33P**

**Apportionment for Indivisible Harm**

In this case, Irvington Public Schools has suffered a single, indivisible harm as a result of the negligence of multiple Defendants. Irvington Public Schools is not required to apportion its damages among the Defendants. Each Defendant whose actions or inactions you find to be negligent and a proximate cause of Irvington Public Schools' indivisible harm must be found liable for all of Irvington Public Schools' damages. Irvington Public Schools may recover the full amount of its damages from any one or more of the Defendants.

± Irvington's proposal in red text; Defendants' proposal in blue text.

OBJECTION: Defendants object to this instruction in full. Defendants have proposed a competing instruction.

AUTHORITY**:** *Boryszewski ex rel. Boryszewski v. Burke*, 882 A.2d 410, 419 (N.J. Super. Ct. App. Div. 2005); *Reichert v. Vegholm*, 840 A.2d 942, 949 (N.J. Super. Ct. App. Div. 2004); *O'Brien (Newark) Cogeneration, Inc. v. Automatic Sprinkler Corp. of America,* 825 A.2d 524, 531 (N.J. Super. Ct. App. Div. 2003); *Goodman v. Fairlawn Garden Assocs., Inc.,* 601 A.2d 766, 769 (N.J. Super. Ct. App. Div. 1992); *Biazzo v. Parker,* 2014 WL 3407818, at *7 (N.J. Super. Ct. App. Div. July 15, 2014); *Bucchi v. DeLuca*, 2020 WL 6325664, at *4 (N.J. Super. Ct. App. Div. Oct. 29, 2020); N.J.S.A. 2A:15–5.2(a)(2) (requiring the finder of fact to apportion fault in the form of a percentage in all negligence actions in which liability is in dispute).

DATE SUBMITTED:            January 28, 2026

**Jury Instruction # 33D**

**Damages from Multiple Defendants**

In this case, Irvington Public Schools seeks damages from more than one Defendant. You must determine whether each Defendant is liable to Irvington Public Schools separately.

If you determine that more than one Defendant is liable to Irvington Public Schools for damages, you will be asked to find Irvington Public Schools' total damages and the comparative negligence of Irvington Public Schools and each Defendant. You will express your determinations in the form of percentages. The percentages allocated between Irvington Public Schools and the Defendants must total 100%.

In deciding on the amount of damages, consider only Irvington Public Schools' claimed losses. Do not attempt to divide the damages among the Defendants. The allocation of responsibility for payment of damages among multiple Defendants is to be done by the Court after you reach your verdict.

± Irvington's proposal in red text; Defendants' proposal in blue text.

OBJECTION: Irvington objects to this instruction in full. Irvington has proposed a competing instruction.

AUTHORITY: N.J.S.A. 2A:15–5.2(a)(2); Judicial Council of California Civil Jury Instruction 3933 (2003 ed., last updated Feb. 2024).

DATE SUBMITTED:          January 28, 2026

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS

**IRVINGTON'S POSITION ON INSTRUCTION 33:**

IPS proposes an instruction on Apportionment for Indivisible Harm, which instructs the jury that, where concurrent tortfeasors cause indivisible harm, the burden shifts to Defendants to show the harm can be apportioned. Defendants propose a competing instruction that directs the jury to allocate percentages without addressing burden of proof or what happens when harm cannot be apportioned. The Court should adopt IPS' proposed instruction because it accurately states controlling New Jersey law on indivisible harm and joint and several liability.

New Jersey law shifts the burden to apportion damages to defendants  when the plaintiff has suffered "a 'unitary harm'/'indivisible injury' caused by the concurrent wrongs of several defendants." *Boryszewski ex rel. Boryszewski v. Burke*, 380 N.J. Super. 361, 376 (App. Div. 2005). Tellingly, the very authorities Defendants cite—*Reichert* and *Boryszewski*—establish this burden-shifting framework. *See Reichert v. Vegholm*, 366 N.J. Super. 209, 221 (App. Div. 2004) ("A plaintiff who suffers a unitary harm at the hands of multiple defendants has been relieved of the burden of proving apportionment because joint liability was 'the usual concomitant of concurrent negligence.'") *O'Brien (Newark) Cogeneration, Inc. v. Automatic Sprinkler Corp. of Am*., 361 N.J. Super. 264, 276, (App. Div. 2003) ("Where the tortious conduct of two or more actors has combined to bring about harm to the plaintiff, and one or more of the actors seeks to limit his liability on the ground that the harm is capable of apportionment among them, the burden of proof as to the apportionment is upon each such actor"). New Jersey recognizes the "potential applicability of the burden shifting doctrine in a non personal injury context." *Id.* IPS's harm fits squarely here:  The evidence will show that IPS's harms are the result of students using Defendants' platforms simultaneously, which drained IPS's funds and staff resources, as well as the disrupted IPS's operations and learning environment. There is no evidence these harms can be reasonably parsed among the Defendants. This is unitary harm from concurrent conduct.

Defendants' authorities are inapposite—they involve *successive* tortfeasors, not concurrent tortfeasors. *Campione*, 695 A.2d 1364 (1997) (two car collisions minutes apart); *Glassman*, 265 A.3d 84, 227 (2021) ("successive-tortfeasor" cases with "first and second causative events."); *Waterson*, 544 A.2d 357 (1988) (comparative negligence (failing to wear a seatbelt) not allocation

1   among multiple defendants.). IPS's case involves concurrent, simultaneous conduct.

2        If Defendants fail show apportionment is possible, the consequence is clear: each defendant

3   is jointly and severally liable for plaintiff's entire damages. "[P]laintiffs may collect damages from

4   the defendants jointly and severally unless the defendants can apportion the harm." *Reichert,* 366

5   N.J. Super. at 221. *O'Brien (Newark) Cogeneration, Inc*. 361 N.J. Super. At 277 ("[W]he plaintiffs

6   suffer a unitary harm at the hands of multiple defendants, the defendants causing the injury are

7   jointly and severally responsible unless the defendants can apportion the harm.").

8        Defendants rely on N.J.S.A. 2A:15-5.2(a)(2), requiring percentage allocation of fault "in all

9   negligence actions in which liability is in dispute." But that statute operates *only after* defendants

10  prove apportionment is possible, not as a substitute for the threshold inquiry of whether the harm

11  at issue is indivisible. Put another way, New Jersey did not abandon the indivisible injury doctrine

12  when it enacted the Comparative Negligence Act. The only way to square the two concepts is to

13  apply the Comparative Negligence Act's 60% fault threshold for joint and several liability (N.J.S.A.

14  2A:15-5.3) only *after* defendants have successfully carried their burden of proving the harm at issue

15  can be apportioned. Defendants' instruction has three fatal defects. It is silent on burden

16  allocation—effectively shifting to Plaintiff a burden that controlling authority places on

17  Defendants. It presupposes divisibility by directing percentage allocation without requiring

18  Defendants to prove the harm can be divided. *See Goodman*, 253 N.J. Super. at 305 ("Where the

19  suit seeks recovery for an indivisible injury caused by a defendant's negligence concurrently with

20  other causative factors… the burden rests on defendant."). And it provides no pathway if the jury

21  concludes the harm cannot be divided. If jurors look at Irvington's system-wide operational

22  disruption and determine they simply cannot parse it among platforms, which is precisely what

23  indivisible harm means, Defendants' instruction leaves them with no option but to force an

24  allocation the evidence does not support and that is contrary to controlling law.

25

26

27

28

1    **DEFENDANTS' POSITION ON INSTRUCTION 33:**

2         The Court should adopt Defendants' proposal because it is designed to instruct the jury on

3    New Jersey's Comparative Negligence Act ("CNA") , N.J.S.A. 2A:15-5.2, which requires "the trier

4    of fact" to apportion damages among multiple defendants in "all negligence actions in which the

5    question of liability is in dispute."   Defendants' proposal accurately reflects this requirement.

6    Irvington's competing proposal would impose a pure joint-and-several-liability regime that New

7    Jersey has abolished by statute and would flout New Jersey's well-established policy in favor of

8    apportionment.

9         "Apportionment of damages has long been favored by" New Jersey courts.  *Reichert v.*

10   *Vegholm*, 840 A.2d 942, 944 (N.J. Super. Ct. App. Div. 2004) (citation omitted).  As such, "[w]hen

11   the question of liability is in dispute, a charge on apportionment is generally appropriate."

12   *Boryszewski ex rel. Boryszewski v. Burke*, 882 A.2d 410, 418 (N.J. Super. Ct. App. Div. 2005).  The

13   standard for giving an apportionment instruction is "permissive": the trial court must simply

14   determine that there is "***any rational basis*** for the jury to conclude that the respective fault of each

15   defendant can be apportioned."  *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 108 (3d Cir. 2012)

16   (quoting *Baglini v. Lauletta*, 768 A.2d 825, 838 (N.J. Super. Ct. App. Div. 2001)) (emphasis added).

17   In other words, "the quantum of evidence required to qualify for an apportionment charge is low.

18   The law favors apportionment even where the apportionment proofs are imprecise, allowing only

19   for rough apportionment by the trier of fact."  *Boryszewski*, 882 A.2d at 423.

20        Defendants' proposal reflects this well-established preference for apportionment.   In

21   enacting the CNA, the New Jersey legislature "clearly expressed that the burden of a damages

22   award should be apportioned not by arbitrary factors such as the number of defendants named in a

23   case, but by the jury's determination of each party's degree of fault."  *Glassman v. Friedel*, 265

24   A.3d 84, 102 (2021).  The CNA provides only two circumstances where a defendant can be held

25   liable for the total amount of damages in a multiple-defendant case.  First, when a defendant is

26   found by the trier of fact to be 60% or more responsible for the total damages.  And second, in

27   environmental tort actions.  N.J.S.A. 2A:15-5.3.

28

Irvington ignores both the text of New Jersey's Comparative Negligence Act and the policy behind it, instead crafting an instruction from thin air that is not supported by Irvington's own authority. Indeed, several of the cases Irvington cites conclude that the jury ***should*** be instructed on apportionment, given the liberal standard governing the issuance of the instruction. *See, e.g.*, *Reichert*, 840 A.2d at 951 (N.J. Super. Ct. App. Div. 2004) (finding that plaintiff's injuries "were neither unitary nor so entwined that they were incapable of apportionment"); *Boryszewski*, 882 A.2d at 424 (emotional distress damages were "clearly capable of apportionment among all participating defendants"). As Irvington is aware, each Defendant is a distinct entity alleged to have engaged in different allegedly actionable conduct.

To the extent Irvington's proposal is based on the theory that damages cannot be apportioned because the alleged harm is "single and indivisible," Irvington is mistaken. First, New Jersey Courts have explained that the principle does not apply when the injury is in part the result of the plaintiff's own negligence. *See O'Brien (Newark) Cogeneration, Inc. v. Automatic Sprinkler Corp. of Am.*, 825 A.2d 524, 531 (N.J. Super. Ct. App. Div. 2003) (explaining rationale for apportionment burden shifting is to "ameliorate th[e] potential injustice" of "dismissal . . . when the injured plaintiff is completely innocent of any comparative negligence"). Because comparative negligence is at issue here, *supra* Instruction No. 28 (Comparative Negligence), burden shifting is inappropriate. Second, the fact that a harm is singular, even if proven, does not preclude apportionment where, as here, "a reasonable basis is found for the division of a single harm." *Waterson*, 544 A.2d at 364 (1988) (citation omitted). New Jersey courts have recognized that even unitary harms can be susceptible to apportionment. Even death—while indivisible as to result—is not necessarily indivisible as to causation. *Boryszewski*, 882 A.2d at 424. Thus, there is no support in New Jersey law or the facts of this case for Irvington's proposed joint-and-several liability instruction.

**Jury Instruction # 34**

**Punitive Damages**

If you find that a Defendant[s] [has] [have] engaged in [Non-Protected Conduct] [conduct] giving rise to a claim for punitive damages, you must consider whether or not to award punitive damages to Irvington Public Schools. Punitive damages are awarded to punish the Defendant[s]. Irvington Public Schools is not automatically entitled to punitive damages simply because you have found the Defendant engaged in Negligent Non-Protected Conduct or because you have awarded damages to compensate Irvington Public Schools for its harm. You may award punitive damages only under certain circumstances. You may impose punitive damages against one or more of the Defendants and not others and may award different amounts against different Defendants

**INTENT OF PUNITIVE DAMAGES**

The purposes of punitive damages are different from the purposes of compensatory damages. Compensatory damages are intended to compensate Irvington Public Schools for the actual [injury] [harm] or loss it suffered as a result of a Defendants' [Negligent Non-Protected Conduct] [negligence]. In contrast, punitive damages are intended to punish a wrongdoer and to deter the wrongdoer from similar wrongful conduct in the future. Punitive damages are designed to require the wrongdoer to pay an amount of money that is sufficient to punish a [D]efendant for particular [Non-Protected Conduct] [conduct] and to deter that party from future misconduct. Punitive damages are not to be awarded as a routine matter in every case; they are to be awarded only in exceptional cases, to punish a party which has acted in an especially egregious or outrageous matter and to discourage that party from engaging in similar misconduct in the future. Therefore, Irvington Public Schools is not entitled to punitive damages simply because you have found that the Defendant[s] engaged in specific [Non-Protected Conduct] [conduct] or because you have awarded damages to compensate Irvington Public Schools for its [injury] [harm]. You may award punitive damages to Irvington Public Schools only if you find that it has proved certain additional matters.

**STANDARD OF PROOF FOR PUNITIVE DAMAGES**

To support an award of punitive damages here, you must find that Irvington Public Schools has proved, by clear and convincing evidence, that the injury, loss, or harm suffered by Irvington Public Schools was the result of a Defendant[']s [Non-Protected Conduct] [actions or failures to act] and that either (1) the Defendant[']s [Non-Protected Conduct] [conduct] was malicious or (2) the Defendant[s] acted in wanton and willful disregard of Irvington Public Schools' rights. Malicious [Non-Protected Conduct] [conduct] is Defendant's Non-Protected Conduct that is intentional wrongdoing in the sense of an evil-minded act. Willful or wanton [Non-Protected Conduct] [conduct] is Non-Protected Conduct that is a deliberate act or omission with knowledge of a high degree of probability of harm to another who foreseeably might be harmed by that act or omission and reckless indifference to the consequence of the act or omission.

The standard of "clear and convincing evidence", which I mentioned above, means that evidence which leaves no serious or substantial doubt about the correctness of the conclusions drawn from the evidence. This is different – and less – than proof beyond a reasonable doubt. This is also different – and more - than a preponderance of evidence to support an award of punitive damages.

In determining whether to award punitive damages, consider all relevant evidence, including but not limited to the following: (1) the likelihood, at the relevant time, that serious harm would arise from a Defendant[']s [Non-Protected Conduct] [conduct]; (2) a Defendant[']s['] awareness or reckless disregard of the likelihood that such serious harm would arise from the Defendant[']s [Non-Protected Conduct] [conduct]; (3) the conduct of a Defendant[s] upon learning that [its Non-Protected Conduct] [their initial conduct] would likely cause harm; and (4) the duration of the [Non-Protected Conduct] [conduct] or any concealment of that [Non-Protected Conduct] [conduct] by the Defendant[s].

**AMOUNT OF PUNITIVE DAMAGES**

If you decide that a Defendant[']s [Non-Protected Conduct is] [have engaged in] the type of wrongdoing that justifies punitive damages, you must decide the amount of punitive damages that should be awarded.

1    In doing so, you must consider all relevant evidence, including but not limited to, evidence

2   of the four factors that I discussed in connection with your determination as to whether punitive

3   damages should be awarded at all. These are: (1) the likelihood, at the relevant time, that serious

4   harm would arise from [a] Defendant[']s [Non-Protected Conduct] [conduct]; (2) a Defendant[']s[']

5   awareness or reckless disregard of the likelihood that such serious harm would arise from [its Non-

6   Protected Conduct] [their conduct]; (3) the conduct of [a] Defendant[s] upon learning that [its Non-

7   Protected Conduct] [their initial conduct] t would likely cause harm; and (4) the duration of the

8   [Non-Protected Conduct] [conduct] or any concealment of it by [a] Defendant[s].

9    Consider, also, the profitability, if any, of the misconduct to a Defendant[s]; when the

10  misconduct was terminated; and the financial condition of a Defendant[s] or [its] [their] ability to

11  pay the punitive damages award. You must also make certain that there is a reasonable relationship

12  between the actual [injury] [harm] and the punitive damages.

13   Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but

14  should not reflect bias, prejudice, or sympathy toward any party.  Any punitive damages should be

15  based only on the harm to Irvington Public Schools, if any.

16  **CONCLUSION**

17   After considering all these factors, you should exercise your judgment and determine (1)

18  whether punitive damages should be awarded in this case; and (2) if you decide to award punitive

19  damages, what the proper amount should be.

20

21  ± Irvington's proposal in red text; Defendants' proposal in blue text.

22

23  OBJECTION: Defendants object to this instruction in full. Defendants have proposed edits to the

24  extent this instruction is included over Defendants' objection.

25

26  AUTHORITY: NJ Model Civil Jury Charge 8.60 (2000, rev. 2011); N.J.S.A. §§ 2A:15-5.11, 12(a),

27  13(c).

28

1

2    DATE SUBMITTED:        January 28, 2026

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS

**IRVINGTON'S POSITION ON INSTRUCTION 34:**

**Instruction is Warranted.**  Under New Jersey law, pattern jury instruction 8.60 Punitive Damages must be given when (1) punitive damages are "specifically prayed for in the complaint," (2) there is "an award of compensatory damages," and (3) the plaintiff has presented "clear and convincing evidence," that the acts or omissions of the actors causing the harm were "actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." N.J.S.A. §§ 2A:15-5.11, 12(a), 13(c); *see also* NJ-JICIV 8.60.

Here, Irvington is entitled to a punitive damages instruction because it has: (1) specifically prayed for punitive damages in its complaint," (2) sought actual and compensatory damages; and (3) will present clear and convincing evidence from which a reasonable juror could conclude that Defendants' acted with actual malice and/or wanton and willful disregard of persons who were foreseeably harmed by Defendants' acts or omissions.  *See* 1st Am. Master Compl. ¶¶ 1044(i), 1044(h).

**Repeated 230 Instruction.**  Defendants improperly insert their 230 defense here. *See supra* [Negligence]; [Section 230].

126

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS

1    **DEFENDANTS' POSITION ON INSTRUCTION 34:**

2         Irvington's proposed instruction on punitive damages should not be given because there is

3    insufficient evidence of malicious conduct or willful and wanton disregard of Irvington's rights.  If

4    the Court deems the instruction necessary, Defendants request that it be given with the

5    modifications discussed below.

6         As an initial matter, Irvington lacks evidence—much less clear and convincing evidence—

7    of either malicious conduct or willful and wanton disregard of Irvington's rights, which Irvington

8    must prove to receive punitive damages.  N.J. Stat. Ann. § 2A:15-5.12(a).  "A jury instruction is

9    only proper when there is an evidentiary basis on which to premise the instruction."  *Chavis v.*

10   *Nogan*, 2018 WL 1087497, at *5 (D.N.J. Feb. 28, 2018).  There is no evidentiary basis here.

11   If the Court decides that the instruction is necessary despite this lack of evidence, Defendants have

12   proposed several revisions to Irvington's proposal to clarify the jury's role in assessing punitive

13   damages:

14        **First**, Defendants have modified "Defendant" to "a Defendant" to reflect the fact that jurors

15   must decide the case as to each Defendant individually.  For the same purpose, Defendants propose

16   adding a sentence at the end of the instruction's introductory paragraph making this legal concept

17   explicit to the jury.  The instruction should reflect the fact that Defendants are distinct entities, and

18   Irvington must prove its case as to each.  *Kurak*, 689 A.2d at 766 (considering causation evidence

19   as to each defendant independently); *see also Coleman v. Allison Soc. Workers*, 2019 WL 2644233,

20   at *4 (N.D. Cal. June 27, 2019) ("For each of his claims, Coleman must link defendants to his

21   claims by alleging facts showing the basis for liability for each individual defendant. He should not

22   refer to them as a group (e.g., 'the defendants').");  *Wehlage v. EmpRes Healthcare Inc.*, 2012 WL

23   380364, at *6 (N.D. Cal. Feb. 6, 2012) ("Every case involving multiple defendants requires

24   consideration of each defendant's liability separately.").  Indeed, especially in the context of

25   punitive damages, the requirement that the jury individually evaluate the defendants is rooted in

26   due process.

27        **Second**, Defendants have replaced "conduct" with the phrase "Non-Protected Conduct."

28   This modification serves to focus the jury on the scope of conduct that can give rise to liability

1  under Section 230, as explained further in Defendants' response to Instruction No. 18 (Protection

2  for Publishing and Expressive Activity).

3      **Third**, Defendants have added language to the first paragraph instructing the jury that it

4  may not award punitive damages simply because it finds that a Defendant engaged in negligent

5  Non-Protected Conduct.  *See Smith v. Whitaker*, 160 N.J. 221, 242, 734 A.2d 243 (1999) ("Mere

6  negligence, no matter how gross, will not suffice as a basis for punitive damages.").

7      **Fourth**, Defendants have included a brief limiting instruction regarding the appropriate

8  scope of punitive damages, which must be assessed solely based on each Defendant's conduct in

9  this case.  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 423 (2003) ("A defendant

10  should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual

11  or business.  Due process does not permit courts, in the calculation of punitive damages, to

12  adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of

13  the reprehensibility analysis[.]"); *Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007) ("[T]he

14  Constitution's Due Process Clause forbids a State to use a punitive damages award to punish a

15  defendant for injury that it inflicts upon nonparties or those whom they directly represent, i.e.,

16  injury that it inflicts upon those who are, essentially, strangers to the litigation."); *see also* N.J.S.A

17  2A:15-5.13(e).[15]

18      **Finally**, Defendants reserve all rights to bifurcate where a trial on the merits and a finding

19  of liability is a condition precedent to a proceeding on punitive damages.

20      For these reasons, Defendants request that the Court either decline to give this instruction

21  or give a modified version of Irvington's proposal with Defendants' revisions.

22

23  ───────────────

[15]    *Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal. of Life Activists*, 422 F.3d
24  949, 961 (9th Cir. 2005) (due process requires "differentiat[ing] on the basis of harm inflicted upon
    a particular plaintiff by a particular defendant"); *Bell v. Clackamas Cnty.*, 341 F.3d 858, 867 (9th
25  Cir. 2003) (holding courts "should evaluate the degree of reprehensibility of each of the defendant's
    misconduct individually, as opposed to *en grosse*"); 1 Punitive Damages: Law and Prac. 2d § 9:7
26  (2025 ed.) (Even when "joint tortfeasors [are] each . . . responsible for compensatory damages,
    only those defendants who have themselves engaged in aggravated conduct may be held liable for
27  an award of punitive damages."); *see also BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)
    ("Perhaps the most important indicium of the reasonableness of a punitive damages award is the
28  degree of reprehensibility of the defendant's conduct").

**STOP**
**(CLOSING ARGUMENTS)**

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS

## II.    POST-CLOSING INSTRUCTIONS

### Duty to Deliberate # 36

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

AUTHORITY: Ninth Cir. Model Instructions, Instruction No. 3.1

DATE SUBMITTED:        January 28, 2026

1

**Consideration of Evidence # 37**

2      Because you must base your verdict only on the evidence received in the case and on these

3 instructions, I remind you that you must not be exposed to any other information about the case or

4 to the issues it involves.  Except for discussing the case with your fellow jurors during your

5 deliberations:

6      Do not communicate with anyone in any way and do not let anyone else communicate with

7 you in any way about the merits of the case or anything to do with it.  This includes discussing the

8 case in person, in writing, by phone, tablet, computer, or any other means, via email, via text

9 messaging, or any internet chat room, blog, website or application, including but not limited to

10 Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social

11 media.

12      This applies to communicating with your family members, your employer, the media or

13 press, and the people involved in the trial.  If you are asked or approached in any way about your

14 jury service or anything about this case, you must respond that you have been ordered not to discuss

15 the matter and to report the contact to the court.

16      Do not read, watch, or listen to any news or media accounts or commentary about the case

17 or anything to do with it; do not do any research, such as consulting dictionaries, searching the

18 Internet, or using other reference materials; and do not make any investigation or in any other way

19 try to learn about the case on your own.

20      Also, do not do any research about this case, the law, or the people involved—including the

21 parties, the witnesses, or the lawyers—until you have been excused as jurors. If you happen to read

22 or hear anything touching on this case in the media, turn away and report it to me as soon as

23 possible.

24      These rules protect each party's right to have this case decided only on evidence that has

25 been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy

26 of their testimony is tested through the trial process. If you do any research or investigation outside

27 the courtroom, or gain any information through improper communications, then your verdict may

28 be influenced by inaccurate, incomplete, or misleading information that has not been tested by the

trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the court immediately.

AUTHORITY: Ninth Cir. Model Instructions, Instruction No. 3.2 (modified)

DATE SUBMITTED:          January 28, 2026

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS

**Communications with Court # 38**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Courtroom Deputy, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

AUTHORITY: Ninth Cir. Model Instructions, Instruction No. 3.3

DATE SUBMITTED:            January 28, 2026

**Return of Verdict # 39**

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the Courtroom Deputy that you are ready to return to the courtroom.

AUTHORITY: Ninth Cir. Model Instructions, Instruction No. 3.5

DATE SUBMITTED:          January 28, 2026

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS

DATED: January 28, 2026

By: */s/ Patrick G. Maroun*

ALLISON BROWN, *pro hac vice*
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Tel.: (215) 268-5000

JESSICA DAVIDSON*, pro hac vice*
jessica.davidson@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800

PATRICK G. MAROUN, *pro hac vice*
patrick.maroun@kirkland.com
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Tel: (312) 862-0743

JONATHAN H. BLAVIN (SBN 230269)
jonathan.blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Telephone: (415) 512-4000

VICTORIA A. DEGTYAREVA (SBN 284199)
victoria.degtyareva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Telephone: (213) 683-9100

*Attorneys for Defendant Snap Inc.*

By: */s/ Bailey Langner*

GEOFFREY M. DRAKE, *pro hac vice*
gdrake@kslaw.com
TACARA D. HARRIS, *pro hac vice*
tharris@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600

135

Atlanta, GA 30309-3521
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

DAVID P. MATTERN, *pro hac vice*
dmattern@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone: (202) 737-0500
Facsimile: (202) 626-3737

BAILEY J. LANGNER (SBN 307753)
*blangner@kslaw.com*
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

*Attorneys for Defendants TikTok Inc., ByteDance Inc., TikTok Ltd., ByteDance Ltd., and TikTok LLC*

By:  */s/ Christian Pistilli*
ASHLEY M. SIMONSEN (Bar No. 275203)
asimonsen@cov.com
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749

PHYLLIS A. JONES, *pro hac vice*
pajones@cov.com
PAUL W. SCHMIDT, *pro hac vice*
pschmidt@cov.com
CHRISTIAN J. PISTILLI, *pro hac vice*
cpistilli@cov.com
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Instagram, LLC.*

By:    /s/ Ashley W. Hardin
JOSEPH G. PETROSINELLI, *pro hac vice*
jpetrosinelli@wc.com
ASHLEY W. HARDIN, *pro hac vice*
ahardin@wc.com
J. ANDREW KEYES, *pro hac vice*
akeys@wc.com
NEELUM J. WADHWANI (SBN 247948)
nwadhwani@wc.com
680 Maine Avenue, SW
Washington, DC 20024
Tel.: (202) 434-5000

*Attorneys for Defendants YouTube, LLC and Google LLC*

By:    /s/ Jennifer Scullion
Christopher Seeger
Jennifer Scullion
Carlos Rivera
Hillary Fidler
**SEEGER WEISS LLP**
55 Challenger Road, Suite 600
Ridgefield Park, NJ 07660
Telephone: 973-639-9100
JScullion@seegerweiss.com

James E. Cecchi
Michael A. Innes
David G. Gilfillan
**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: 973.994.1700
JCecchi@carellabyrne.com

Zachary S. Bower
**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.**
2222 Ponce De Leon Blvd.
Miami, Florida 33134

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS

*Co-Counsel for Irvington Public Schools*

LEXI J. HAZAM
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

*Co-Lead Counsel*

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

*Co-Lead Counsel*

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

*Co-chair School District Committee*
*Plaintiffs' Steering Committee Leadership*

MELISSA YEATES
**KESSLER TOPAZ MELTZER
& CHECK LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com

*Co-chair School District Committee*
*Plaintiffs' Steering Committee Leadership*

ANDRE M. MURA
**GIBBS MURA LLP**
1111 Broadway, Suite 2100
Oakland, CA 94612

Case 4:22-md-03047-YGR     Document 2691     Filed 01/28/26     Page 139 of 140

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Telephone: 510-350-9717
amm@classlawgroup.com

*Plaintiffs' Steering Committee Leadership*

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **ATTESTATION**

I, Patrick G. Maroun, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: January 28, 2026

_/s/ Patrick G. Maroun_
Patrick G. Maroun