*[Submitting Counsel on Signature Page]*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case No. 4:22-md-03047-YGR |
| THIS DOCUMENT RELATES TO: | **STATE ATTORNEYS GENERAL'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| 4:23-cv-05448 | Judge: Hon. Yvonne Gonzalez Rogers |
| | Magistrate Judge: Hon. Peter H. Kang |

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

PLEASE TAKE NOTICE THAT, at a date and time to be determined by the Court, before the Honorable Yvonne Gonzalez Rogers, in Courtroom 1, Floor 4, of the United States District Court, Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, the State Attorneys General Plaintiffs ("State AGs") will and hereby do move this Court, under Federal Rule of Civil Procedure 56, for an order granting partial summary judgment in favor of the State AGs on a portion of their COPPA claims. This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, any Reply or other papers submitted in connection with the Motion, the accompanying Declarations of Matthew Cocanougher, Kate Gooler and Catherine Diaz and the exhibits thereto, and any other matters presented at the time of the hearing.

1

**STATEMENT OF RELIEF SOUGHT**

2
    The State AGs seek entry of partial summary judgment in their favor on the following

3
elements of COPPA:

4
  1.  Meta Platforms, Inc. and Instagram, LLC are "operators" of Instagram;

5
  2.  Meta collects "personal information" from users of Facebook and Instagram, including

6
      those who visit Facebook and Instagram without logging into an account; and

7
  3.  Meta has not provided COPPA's protections for any children under 13 ("child" or

8
      "children") on Facebook or Instagram, including:

9
      a.  Meta has not sought or obtained "verifiable parental consent" before any collection,

10
         use, or disclosure of personal information from children on Facebook or Instagram,

11
         16 C.F.R. § 312.5(a)(1);

12
      b.  Meta has not provided parents with "direct notice of [its] practices with regard to

13
         the collection, use, or disclosure of personal information from children," 16 C.F.R.

14
         § 312.4(b), nor has Meta posted a notice of its practices with respect to children's

15
         personal information, 16 C.F.R. § 312.4(d);

16
      c.  Meta has not provided parents with "a means of reviewing any personal information

17
         collected from the[ir] child" on Facebook or Instagram, 16 C.F.R. § 312.6(a)(3); and

18
      d.  Meta has not provided parents with "[t]he opportunity at any time to refuse to permit

19
         [Meta's] further use or future online collection of personal information from that

20
         child, and to direct [Meta] to delete the child's personal information." 16 C.F.R. §

21
         312.6(a)(2).

22
    The State AGs also seek entry of partial summary judgment in their favor on their claim

23
that Meta has violated COPPA by using the "personal information" of children under 13 to train its

24
machine learning and generative AI models even after it gained actual knowledge that the accounts

25
belong to children under 13.

26

27

28

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ......................................... i

STATEMENT OF RELIEF SOUGHT ....................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................. 1

    I.    INTRODUCTION ....................................................................................................... 1

    II.    FACTUAL BACKGROUND ....................................................................................... 2

        A.    Meta Platforms, Inc. and Instagram, LLC operate the Facebook and Instagram
Platforms. .................................................................................................................... 2

        B.    Meta collects large volumes of data from users. ......................................................... 2

        C.    Meta detects children on its platforms. ....................................................................... 3

            1.    Checkpointing ....................................................................................................... 5

            2.    Disabled State and Retention of Data ................................................................... 5

            3.    Deletion ................................................................................................................. 5

        D.    Meta trains its machine learning and generative AI models on user data, including
personal information. .................................................................................................. 6

            1.    Meta uses ▓ users' data to train its models, ▓▓▓▓▓▓▓▓▓▓
▓▓▓▓ . ▓▓▓▓▓▓ ............................................................................................ 7

            2.    Meta continues training its machine learning and generative AI models on user data
from accounts that are checkpointed, disabled. ▓▓▓▓▓▓▓▓▓▓▓▓▓ .................. 9

            3.    Meta does not obtain parental consent for the collection, use, or disclosure of users'
data; provide notice to parents of its data collection practices; nor provide parental rights
over their children's data. ..................................................................................................... 10

    III.    LEGAL STANDARD ................................................................................................ 10

    IV.    ARGUMENT ............................................................................................................ 11

        A.    Summary judgment should be granted for the State AGs as to certain elements of
COPPA. ....................................................................................................................... 11

            1.    Meta Platforms, Inc. and Instagram, LLC are operators under COPPA. ................... 11

            2.    Meta collects personal information from ▓ users of Facebook and Instagram
whether they are logged in or not. ................................................................................. 17

            3.    Meta does not provide COPPA's required protections for children on Facebook or
Instagram. ..................................................................................................................... 18

        B.    Summary judgment should be granted as to the State AGs' claim that Meta violates
COPPA by continuing to use the personal information of children to train its machine
learning and generative AI models, even after it checkpointed or disabled their accounts
because they belong to children. .................................................................................... 20

            1.    Meta has actual knowledge that the children whose accounts it checkpoints and
ultimately disables for being underage are under 13. ..................................................... 21

            2.    Meta continues using users' personal information for model training  after gaining
actual knowledge that those users are children. ............................................................. 27

            3.    Meta does not provide COPPA's protections to any users, including those it

1

checkpoints and disables. ................................................................................................. 28

V.    CONCLUSION ............................................................................................................ 28

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Anderson v. Liberty Lobby,*
  *Inc.*, 477 U.S. 242 (1986).................................................................................... 11

4

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ........................................................................................... 10

5

6

*Commodity Futures Trading Comm'n. v. Int'l Berkshire Grp. Holdings, Inc.,*
  2006 WL 3716390 (S.D. Fla. Nov. 3, 2006) ....................................................... 15

7

*Freeman v. Ethicon, Inc.,*
  619 F. Supp. 3d 998 (C.D. Cal. 2022).................................................................. 11

8

9

*FTC v. E.M.A. Nationwide, Inc.,*
  767 F.3d 611 (6th Cir. 2014)................................................................................ 14

10

*FTC v. Network Servs. Depot, Inc.,*
  617 F.3d 1127 (9th Cir. 2010).............................................................................. 14

11

12

*FTC v. On Point Cap. Partners LLC,*
  17 F.4th 1066 (11th Cir. 2021)............................................................................. 14

13

*FTC v. Surescripts, LLC,*
  665 F. Supp. 3d 14 (D.D.C. 2023) ....................................................................... 11

14

15

*FTC v. WV Universal Mgmt., LLC,*
  877 F.3d 1234 (11th Cir. 2017)............................................................................ 14

16

*Glob. Tech Appliances, Inc. v. SEB S.A.,*
  563 U.S. 754 (2011) ........................................................................................... 21

17

18

*Gordon v. Virtumundo, Inc.,*
  575 F.3d 1040 (9th Cir. 2009).............................................................................. 13

19

*Intel Corp. Inv. Pol'y Comm. v. Sulyma,*
  589 U.S. 178 (2020) ........................................................................................... 21

20

21

*Kanaan v. Yaqub,*
  799 F. Sup. 3d 960 (N.D. Cal. 2025) ................................................................... 11

22

*Leisek v. Brightwood Corp.,*
  278 F.3d 895 (9th Cir. 2002)................................................................................ 10

23

24

*Lopez v. Smith,*
  203 F.3d 1122 (9th Cir. 2000).............................................................................. 10

25

*New Mexico ex rel. Balderas v. Real Estate Law Center, P.C.,*
  401 F. Supp. 3d 1229 (D.N.M. 2019) .................................................................. 14

26

27

*Nuth v. Newrez LLC,*
  755 F. Supp. 3d 1258 (N.D. Cal. 2024) ............................................................... 11

28

*Office of the Attorney General v. Berger Law Group., P.A.*,
2015 WL 5922933 (M.D. Fla. Oct. 9, 2015) ........................................................... 15

*Register.com, Inc. v. Verio, Inc.*,
356 F.3d 393 (2d Cir. 2004) ................................................................................. 13

*Staples v. United States*,
511 U.S. 600 (1994) ............................................................................................ 21

*State Farm Fire & Cas. Co. v. Geary*,
699 F. Supp. 756 (N.D. Cal. 1987) ....................................................................... 11

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
595 U.S. 178 (2022) ............................................................................................ 21

*United States ex rel. Landis v. Tailwind Sports Corp.*,
234 F. Supp. 3d 180 (D.D.C. 2017) ..................................................................... 11

*United States ex rel. Schutte v. SuperValu Inc.*,
598 U.S. 739 (2023) ................................................................................ 21, 22, 26

**Statutes**

12 U.S.C. § 5538(a)(1) .......................................................................................... 14

12 U.S.C. § 5538(b)(1) .......................................................................................... 14

15 U.S.C. § 6502 ................................................................................................... 18

15 U.S.C. § 6502(c) .............................................................................................. 14

**Rules**

64 Fed. Reg. 59888 (1999) ..................................................................................... 23

89 Fed. Reg. 2034 (2024) ...................................................................................... 21

Fed. R. Civ. P. 56(a) ............................................................................................ 10

Fed. R. Evid. 803(17) ........................................................................................... 13

**Regulations**

16 C.F.R § 312.3 ................................................................................................... 18

16 C.F.R § 312.5(a)(1) .......................................................................................... 18

16 C.F.R. § 312.2 ............................................................................................ 12, 17

16 C.F.R. § 312.4 ............................................................................................ 18, 19

16 C.F.R. § 312.5 ................................................................................................. 18

16 C.F.R. § 312.6 ......................................................................................... 18, 19, 20

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The Children's Online Privacy Protection Act (COPPA) exists to protect the online privacy and safety of children under the age of 13.[1] Discovery has shown it is undisputed that Meta Platforms, Inc. and Instagram, LLC do not meet COPPA's requirements for certain child users of their platforms. There is no dispute of material fact that:

(1) Meta Platforms, Inc. and Instagram, LLC are operators of Instagram under COPPA;

(2) Meta[2] collects "personal information" for ▮ users of Facebook and Instagram, including logged out users;

(3) Meta does not provide direct notice to parents, obtain verifiable parental consent, or provide parents with the right to meaningfully review, delete, and restrict the use of their child's data, on Facebook and Instagram;

(4) Meta has "actual knowledge" of children whose accounts it checkpoints (i.e., suspends) for being underage, and those whose accounts it ultimately disables on Facebook and Instagram; and

(5) Meta continues to use these children's personal information for machine learning and generative AI model training after it develops actual knowledge that they are children.

The State AGs are bringing two requests for partial summary judgment based on the above. The first seeks partial summary judgment to establish the elements set forth in (1) through (3). The second seeks partial summary judgment that Meta has violated COPPA through its use of children's personal information in machine learning and generative AI model training after it obtains actual knowledge that the children whose accounts it checkpoints and ultimately disables are under 13. Partial summary judgment should be granted on both.

---

[1] This Motion will refer to persons under the age of 13 as "children" or "child."

[2] For purposes of this Motion, "Meta" is defined as Meta Platforms, Inc. and Instagram, LLC. Otherwise, the Motion will specify the particular entity at issue.

## II.    FACTUAL BACKGROUND

### A.  Meta Platforms, Inc. and Instagram, LLC operate the Facebook and Instagram Platforms.

The Parties have stipulated that Instagram and Facebook are "websites" and "online services" as those terms are used in COPPA. *See* Ex. 1[3], Stipulation Regarding Certain Aspects of the State AGs' COPPA Claim, ECF No. 2628, ¶ 1. They also have stipulated that Meta Platforms, Inc. has been an "operator," as that term is used in COPPA, of Facebook at all relevant times in this Action. ECF No. 2628, ¶ 2. As will be shown below, the evidence is also undisputed that Meta Platforms, Inc. and Instagram, LLC have served and continue to serve as "operators" of Instagram.

### B.  Meta collects large volumes of data from users.

Meta collects a wide array of personal information from its users. *See* Ex. 2, H████ 30(b)(6) Dep. (Meta Platforms, Inc.; Instagram, LLC; Meta Payments, Inc.; and Meta Platforms Technologies, LLC) [hereinafter "H████ Dep."] 28:17-34:8. The types of personal information collected include ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *Id.* ███████████████████████████████████████████████████████████ *Id.* at 30:1-4. ████████████████████████████████████████████████████████████████ Meta also collects personal information belonging to logged-off users. *See* Ex. 2, H████ Dep. 59:13-60:18, 99:4-100:3. ████████████████████████████████████████████████████████████████████████████████████████ Ex. 3, Meta Defs.' 2nd Amended Resp. & Objs. to State AGs' 1st Set of Requests for Admission, May 8, 2025 at 2-3.

---

[3] Unless otherwise specified, all exhibits referenced in this motion are exhibits to the Declaration of Matthew Cocanougher.



1

2  . *See* Ex. 2, H███ Dep.

3  59:13-60:18.

4

5  Ex. 4, META3047MDL-030-00000058 at –62, –63.

6  **C. Meta detects children on its platforms.**

7

8  *See* Ex. 2, H███ Dep. 101: 2-6

9

10  *Id.* at 103:5-7.

11

12  *See* Ex. 5, META3047MDL-287-00003183.

13  *See* Ex. 6, Meta Defs.'

14  Resp. To N.J.'s April 10, 2023, Demand for Statements Under Oath, May 22, 2023, AG-MDL3047-

15  020615 at –617.

16  *Id.*

17  *See*

18  Ex. 2, H███ Dep. 101:10-14.

19  *See* Ex. 7,

20  , META3047MDL-053-00012709 at –716.

21

22

23  *See* Ex. 8, H█

24  Dep. Ex. 6, at 5; Ex. 7,                    META3047MDL-

25  053-00012709 at –719.

26

27  *See* Ex. 2, H███ Dep. 101:15-18; 101:21-102:16.

28



Ex. 2, H▮▮▮ Dep. 110:8-17.

*See* Ex. 7,

META3047MDL-053-00012709 at –717.

*See* Ex. 2, H▮▮▮ Dep. 110:24-111:13.

*See* Ex. 2, H▮▮▮ Dep. 211:14-212:11; Ex. 8, H▮▮▮ Dep.

Ex. 6 at 6-8; Ex. 9, META3047MDL-155-00009593.[4]

*See* Ex. 8, H▮▮▮ Dep. Ex. 6 at 11; Ex. 12,

META3047MDL-146-00072943 at –72955-56; Ex. 13, META3047MDL-146-00072869.

*See* Ex. 14, META3047MDL-091-00022408; Ex. 15,

H▮▮▮ Dep. Ex. 26.

*See* Ex. 2, H▮▮▮ Dep., 223:11-225:4, 226:12-227:23; 296:12-297:16.

[4] *See* Ex. 10, META3047MDL-037-00083064

, Ex. 11,

META3047MDL-020-00656153

1    Meta uses three stages of enforcement against children's accounts: checkpointing; a

2 "disabled" state; and eventually deletion.

### 1. Checkpointing

4    Checkpointing is akin to a suspension of a user's account.

6                                        Ex. 2, H████ Dep. 103:15-106:17.

9                                                                    *See id.* at 297:17-

10 301:13.

11              *See* Ex. 16, Corrected Expert Report of Patrick McDaniel, p. 104, 117, 146

### 2. Disabled State and Retention of Data

14    If a user does not successfully appeal the checkpoint, their account is "disabled."

15                                                    *See* Ex. 2, H████ Dep.

16 297:17-301:13.

17    *See* Ex. 7,                                                      , META3047MDL-053-

18 00012709 at –720-21.

20                            *See* Ex. 2, H████ Dep. 299:22-24.

21                                              *Id.* at 300:21-301:4.

22                            *Id.* at 301:6-13.

24              *See* Ex. 16, Corrected Expert Report of Patrick McDaniel, p. 104, 117, 150

25                  .

### 3. Deletion

27

28 *See* Ex. 2, H████ Dep. 301:15-19.

1

2

**D. Meta trains its machine learning and generative AI models on user data, including personal information.**

3

4

5

6

7

See Ex. 17, B⬛⬛⬛ 30(b)(6) Dep. (Meta Platforms, Inc.; Instagram, LLC; Meta

8

Payments, Inc.; and Meta Platforms Technologies, LLC) (June 26, 2025) [hereinafter "B⬛⬛

9

30(b)(6) Dep."] 12:15-14:20; Ex. 18, B⬛⬛⬛ Dep. (December 10, 2025) 104:1-106:14.

10

11

See Ex. 17, B⬛⬛⬛ 30(b)(6) Dep. 15:1-3.

12

13

*Id.* at

14

16:10-25.

15

16

17

18

19

20

21

22

23

See Ex. 19, META3047MDL-014-00405380 at –386-87⬛⬛⬛

24

25

26

See Ex. 17, B⬛⬛⬛ 30(b)(6) at 15:10-17.

27

*Id.* at 15:18-25.

28



*Id.* at 16:2-4.

*Id.* at 16:5-9.

Ex. 17, B███ 30(b)(6) Dep. 13:15-23

**1. Meta uses ██ users' data to train its models,**

Meta uses ██ users' data for model training for machine learning models. *See* Ex. 17, B███ 30(b)(6) Dep. 25:4-21, 27:15-21; Ex. 20, B███ 30(b)(6) Amended Errata at 1. Ex. 17, B███ 30(b)(6) Dep. 36:3-39:25.

Ex. 18, B███ Dep. (December 10, 2025) 111:19-117:10; Ex. 17, B███ 30(b)(6) 19:12-24:9. *See* Ex. 17, B███ 30(b)(6) Dep. 22:2-25.

*See* Ex. 21, Meta Defs.' 3rd Supp. Resp. & Objs. to Pls.' 2nd Set of Interr., November 18, 2024, META3047MDL-118-000000459 at –474; *id.* at –649-50

1

2

3

4                                                                                              *See*

5   Ex. 17, B█████████ 30(b)(6) Dep. 19:12-24:9. ████████████████████

6   ██████████████████████████████████████████████████ *See*

7   Ex. 21, Meta Defs.' 3rd Supp. Resp. & Objs. to Pls.' 2nd Set of Interr., November 18, 2024,

8   META3047MDL-118-000000459 at –637.

9

10

11  by ████████████ Ex. 17, B█████████ 30(b)(6) Dep. 36:19-39:25. As noted

12  by Chris Cox, Meta's Chief Product Officer, in a May 9, 2024 interview:

13      [a]nd if you look at our image model, EMU is its name. If you use . . . [i]magine in
14      one of our products, you'll use our text to image model. You get really amazing
        quality images and a lot of that is because Instagram is the dataset that was used to
15      train it, which is just one of the great repositories of incredible imagery in a lot of
        different types of art, fashion, you know, culture and also just imagery of people
16      and us.

17  Declaration of Kate Gooler, Ex. L, *Meta's Cox on Building AI Into the Product*

18  *Suite*, Bloomberg (May 9, 2024), https://www.bloomberg.com/news/videos/2024-05-09/meta-s-

19  cox-on-building-ai-into-the-product-suite-video, at 6:09-6:29.

20

21                                                                                            *See* Ex.

22  17, B█████████ 30(b)(6) Dep. 17:16-19:10. ████████████████

23  ██████████████████████████████████ *See* Ex. 22,

24  META3047MDL-072-01245074 at –076.

25

26

27

28

1

2 *Id.*

3

4 *Id.* at –075.

5

6

7

8

9

10 *Id.*

11

12

13

14 *Id.* at –076.

15

16

17

18

19

20

21

22 *See* Ex. 23, META3047MDL-047-01202953.

23    **2. Meta continues training its machine learning and generative AI models on**
24       **user data from accounts that are checkpointed, disabled,**

25

26    As discussed above, some Meta accounts are checkpointed (i.e., suspended), disabled, or
27 deleted. *See supra* Section II.C.
28                                                                Ex. 17, B            30(b)(6)

1    Dep. 30:7-22; Ex. 20, B████████ 30(b)(6) Amended Errata at 2. 

2    ████████████████████████████████████████████████████████ Ex. 18,

3    B█████████ Dep. (December 10, 2025) 155: 4-17. ████████████████████

4    ████████████████████████ *Id.* at 156:11-22. ████████████████████

5    ███████████████████████████████████ *Id.*

**3. Meta does not obtain parental consent for the collection, use, or disclosure of users' data; provide notice to parents of its data collection practices; nor provide parental rights over their children's data.**

Meta does not provide clear and comprehensive notice to parents regarding the collection, use, and disclosure of children's personal information. *See* Ex. 24, Meta Defs.' Amended Resp. & Objs. to Pls.' 3rd Set of RFAs, May 2, 2025 at No. 18. Meta has not sought or obtained verifiable parental consent for the collection or use of data from users under the age of 13 on Facebook or Instagram. *Id.* at 19; Ex. 25, Meta Defs.' First Amended Resp. & Objs. to Pls.' 1st Set of RFAs, Feb. 11, 2025, at No. 6. It also does not provide parents with ongoing rights to access, review, delete, and restrict further use of their child's personal information. *See* Ex. 25, Meta Defs.' First Amended Resp. & Objs. to Pls.' 1st Set of RFAs, Feb. 11, 2025, at No. 7; Ex. 24, Meta Defs.' Amended Resp. & Objs. to Pls.' 3rd Set of RFAs, May 2, 2025, at Nos. 20, and 21.

**III.    LEGAL STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must determine "whether, viewing the evidence in the light most favorable to the non-moving party, there are any genuine issues of material fact." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002), quoting *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and "set forth specific facts" that show a genuine issue for trial. *Id.* at 323–24. "Unsupported conjecture or conclusory statements, however, cannot defeat summary judgment." *Nuth v. Newrez LLC*, 755 F.

1   Supp. 3d 1258, 1262 (N.D. Cal. 2024). The standard thus requires "sufficient evidence favoring the

2   nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477

3   U.S. 242, 249 (1986).

4       Partial summary judgment is appropriate on discrete factual issues and elements of a claim.

5   "Rule 56(a) allows a court to enter summary judgment on . . . a part of each claim or defense."

6   *Kanaan v. Yaqub*, 799 F. Sup. 3d 960, 964 (N.D. Cal. 2025). Partial summary judgment "serves the

7   purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine

8   issue of fact." *Id.* (internal citations omitted). "Partial summary judgment that falls short of a final

9   determination, even of a single claim, is authorized by Rule 56 in order to limit the issues to be

10  tried." *State Farm Fire & Cas. Co. v. Geary*, 699 F. Supp. 756, 759 (N.D. Cal. 1987) (granting

11  summary judgment to plaintiff on liability for two theories); *see also Freeman v. Ethicon, Inc.*, 619

12  F. Supp. 3d 998, 1008 (C.D. Cal. 2022) (granting partial summary judgment to establish five facts

13  that had been found in a previous trial against the same defendant); *United States ex rel. Landis v.

14  Tailwind Sports Corp.*, 234 F. Supp. 3d 180, 191 (D.D.C. 2017) (summary judgment can be entered

15  on narrow, factual issues such as the amount of invoices presented by the defendant to the

16  government and the amount paid by the government); *FTC v. Surescripts, LLC*, 665 F. Supp. 3d 14,

17  37-38 (D.D.C. 2023) (granting partial summary judgment on issues of market definition and

18  monopoly power).

19  **IV.    ARGUMENT**

20      **A. Summary judgment should be granted for the State AGs as to certain elements of
        COPPA.**

21

22      There is no dispute of material fact that: (1) Meta Platforms, Inc. and Instagram, LLC are

23  operators under COPPA; (2) Meta collects "personal information" for ███ users; and (3) Meta has

24  never provided at least four required protections under COPPA on Facebook or Instagram.

25      **1.  Meta Platforms, Inc. and Instagram, LLC are operators under COPPA.**

26      For COPPA purposes, an "operator" is "any person who operates a website located on the

27  internet or an online service and who collects or maintains personal information from or about the

28

users of or visitors to such website or online service, or on whose behalf such information is collected or maintained." 16 C.F.R. § 312.2.

### a. Meta Platforms, Inc. operates Facebook and Instagram.

Meta Platforms, Inc. stipulated that it is an operator of Facebook. Additionally, there is no dispute that Meta Platforms, Inc. is also an operator of Instagram.[5] ██████████████████

████████████████████████████████████████████████

████████████████    *See* Ex. 26, Meta Defs. Resp. & Objs. to Pls' R30(b)(6) Written Questions, July 25, 2024, at No. 48.  In fact, the current Instagram Terms of Service note "**[t]he Instagram Service is one of the Meta Products, provided to you by Meta Platforms, Inc**. These Terms of Use therefore constitute an agreement between you and Meta Platforms, Inc." *See* Gooler Declaration, Ex. A, Instagram, *Terms of Use* (last visited January 23, 2026) (emphasis added). These undisputed facts demonstrate that Meta Platforms, Inc. is an "operator" of Instagram, and partial summary judgment should be granted on this element.

### b. Instagram LLC operates Instagram.

Instagram, LLC is also an operator of the Instagram platform. The Instagram Terms of Service in effect from January 19, 2013, through April 18, 2018, identified Instagram, LLC as the "owner" of Instagram. *See* Ex. 27, Instagram, *Terms of Use*, retrieved 2015, META3047MDL-068-00000001 ("The Service is owned or controlled by Instagram LLC ('Instagram')."); Ex. 28, ██████████████████████████████████ META3047MDL-072-01498784 ██████ Gooler Declaration, Ex. B, Internet Archive snapshot of Instagram Terms of Use, Apr. 18, 2018, https://web.archive.org/web/20180418220749/https://help.instagram.com/478745558852511/ (identical, and still showing an effective date of Jan. 19, 2013).

Instagram, LLC is also the declared registrant (i.e., the owner) and administrator of the Instagram.com domain name. Declaration of Catherine Diaz, ¶¶ 4-8; Diaz Declaration Exs. A-C,

---

[5] Meta conceded in its letter brief before this Motion that it "does not dispute that Meta Platforms, Inc. is an operator of Instagram and Facebook," and asserted that this Motion was unnecessary because it would so stipulate. ECF 2497, at 3. Yet, Meta refused to stipulate that Meta Platforms, Inc. was an operator of Instagram, necessitating this portion of the Motion.

1   WHOIS info.[6] Finally, Instagram, LLC is the declared owner of numerous platform-specific

2   trademarks on file with the U.S. Patent Office, including the terms "Instagram" and "Insta" and the

3   Instagram logo. *See* Gooler Declaration, Ex. D., U.S.

4   Trademark Registration No. 4170675 (filed Sep. 19, 2011) (issued Jul. 10. 2012); Gooler

5   Declaration, Ex. E, U.S. Trademark Registration No. 5061916 (filed May 21, 2015) (issued Oct.

6   18, 2016); and Gooler Declaration, Ex. F, U.S. Trademark Registration No. 5019151 (filed Aug.

7   14, 2015) (issued Aug. 9, 2016).

8       Still more core components of Instagram are identified as owned and maintained by

9   Instagram, Inc.—the entity that transferred the Instagram trademark to Instagram, LLC. *See* Gooler

10  Declaration, Ex. G, U.S. Trademark Reg. Nos. 4146057, 4170675 (showing full ownership history

11  of the Instagram trademark, including transfer from Instagram, Inc. to Instagram, LLC). ███

12  ████████████████████████████████████████████████████████

13  █████████████████████████████████ *See* Ex. 29, META3047MDL-040-

14  00000322. To this day, Instagram, Inc. remains listed as the owner and maintainer of the Instagram

15  App on the Apple Store—though the same page also specifies that the app's copyright is "© 2018

16  Instagram, LLC." *See* Gooler Declaration, Ex. I, Apple App Store, Instagram,

17  https://apps.apple.com/us/app/instagram/id389801252 (retrieved Jan. 23, 2025). Taken together,

18  the undisputed facts show that many core components of the Instagram platform—without which

19  the platform could not function—are owned by Instagram, LLC. Accordingly, there can be no

20  reasonable question that Instagram, LLC is also an operator of the platform, and partial summary

21  judgment should be granted on this element.

22          **c. In the alternative, Meta Platforms, Inc. and Instagram, LLC participate
               in a common enterprise as to the operation of Instagram and are therefore
23             jointly liable for violations of COPPA.**

24  _____

25  [6] The WHOIS directory is a "list, directory, or other compilation generally relied on by the
    public" and persons who work in information technology to identify who operates particular web
26  addresses. Fed. R. Evid. 803(17); *see also Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1064 & n.
    22 (9th Cir. 2009) (recognizing that WHOIS is "a publicly available online database through
27  which users can access information regarding domains, including the registrant's name, address,
    phone number, and e-mail address"); *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 395 (2d Cir.
28  2004) (similar).

As the Court has already noted, "a violation of the COPPA Rule 'shall be treated as a violation of a rule defining an unfair or deceptive act or practice under section 18(a)(1)(B) of the [FTC] Act (15 U.S.C. § 57a(a)(1)(B)).'" ECF 1214 at 18 (quoting 15 U.S.C. § 6502(c)). Under the FTC Act, "corporate entities can be responsible . . . for each other's actions through the common enterprise doctrine." *FTC v. On Point Cap. Partners LLC*, 17 F.4th 1066, 1081 (11th Cir. 2021) (*citing FTC v. WV Universal Mgmt., LLC*, 877 F.3d 1234, 1240 (11th Cir. 2017)). Under this theory, "[i]f the structure, organization, and pattern of a business venture reveal a 'common enterprise' or a 'maze' of integrated business entities, the FTC Act disregards corporateness." *FTC v. E.M.A. Nationwide, Inc*., 767 F.3d 611, 637 (6th Cir. 2014). Courts find that "entities constitute a common enterprise when they exhibit either vertical or horizontal commonality—qualities that may be demonstrated by a showing of strongly interdependent economic interests or the pooling of assets and revenues." *FTC v. Network Servs. Depot, Inc*., 617 F.3d 1127, 1142-43 (9th Cir. 2010) (finding a common enterprise where multiple "companies pooled resources, staff, and funds; they were all owned and managed [jointly]; and they all participated to some extent in a common venture"). Where these factors are present, "each of the[] [participating] corporations is to be held jointly and severally liable." *E.M.A. Nationwide, Inc*., 767 F.3d at 636.

The common enterprise doctrine has been extended beyond enforcing the FTC Act. For example, *New Mexico ex rel. Balderas v. Real Estate Law Center, P.C.* applied the common enterprise doctrine to a Mortgage Assistance Relief Services ("MARS") Rule enforcement action brought by the New Mexico Attorney General. 401 F. Supp. 3d 1229, 1308 n.63 (D.N.M. 2019). Like violations of COPPA, a violation of the MARS Rule "shall be treated as . . . a violation of a rule under section 18 of the Federal Trade Commission Act (15 U.S.C. 57a) regarding unfair or deceptive acts or practices." 12 U.S.C. § 5538(a)(1). The *Real Estate Law Center* court relied on this provision in applying the common enterprise doctrine to the State AG's enforcement action. *Real Estate Law Ctr., P.C.*, 401 F. Supp. 3d at 1308 n.63.[7]

---

[7] Notably, as under COPPA, State AGs have the power to bring a cause of action to directly enforce the MARS Rule. *See id.* at 1306 (citing 12 U.S.C. § 5538(b)(1)).

The court in *Office of the Attorney General v. Berger Law Group., P.A.* similarly applied the common enterprise doctrine to a State AG action to enforce the MARS Rule. 2015 WL 5922933, at *1–2 (M.D. Fla. Oct. 9, 2015). Courts have also applied the common enterprise doctrine to the enforcement of other consumer protection statutes. *See Commodity Futures Trading Comm'n. v. Int'l Berkshire Grp. Holdings, Inc.*, 2006 WL 3716390, at *7 (S.D. Fla. Nov. 3, 2006) (applying common enterprise doctrine in Commodity Exchange Act enforcement action).

There is abundant evidence that Instagram, LLC and Meta Platforms, Inc. have strongly interdependent economic interests, and have operated with shared ownership, resourcing, staff, and funding. Indeed, in most day-to-day respects, Instagram, LLC is operationally indistinguishable from its parent.





Ex. 34, META3047MDL-053-00012614 at –12619

Ex. 35, META3047MDL-129-00090783.

*See* Ex. 36, Newton Dep. 28:11-19; Ex. 32, META3047MDL-072-01230259,

*See* Ex. 37, META3047MDL-050-00309895,

*Id.*

Accordingly, there is no dispute of material fact regarding the pooled resources and shared employees, offices, and operational assets of Meta Platforms, Inc. and Instagram, LLC. Because the two companies function as a common enterprise as to the operation of Instagram, they are jointly liable for any violations of COPPA committed by either. As such, even if the Court were to find that there was a genuine dispute as to whether Meta Platforms, Inc. and Instagram, LLC were

independently "operators" of Instagram, partial summary judgment is appropriate to establish this element through a finding that these two entities operate as a common enterprise.

## 2. Meta collects personal information from ▮ users of Facebook and Instagram whether they are logged in or not.

Under COPPA, "personal information" is defined as:

"[I]ndividually identifiable information about an individual collected online, including:

(1) [a] first and last name;

(2) [a] home or other physical address including street name and name of a city or town;

(3) [o]nline contact information as defined in this section;

(4) [a] screen or user name where it functions in the same manner as online contact information, as defined in this section;

(5) [a] telephone number;

(6) [a] government-issued identifier, such as a Social Security, State identification card, birth certificate, or passport number;

(7) [a] persistent identifier that can be used to recognize a user over time and across different websites or online services[—such] persistent identifier includes, but is not limited to, a customer number held in a cookie, an . . . . IP address, a processor or device serial number, or unique identifier;

(8) [a] photograph, video, or audio file where such file contains a child's image or voice;

(9) [g]eolocation information sufficient to identify street name and name of a city or town;

(10) [a] biometric identifier that can be used for the automated or semi-automated recognition of an individual, such as fingerprints; handprints; retina patterns; iris patterns; genetic data, including a DNA sequence; voiceprints; gait patterns; facial templates; or faceprints; or

(11) [i]nformation concerning the child or the parents of that child that the operator collects online from the child and combines with an identifier described in this definition."

16 C.F.R. § 312.2.

As described more fully above, *supra* Section II.B, Meta collects a ▓▓▓▓ personal information under this definition. For example, it collects ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* Ex. 2, H▓▓▓▓ Dep. 28:17-34:8. It also collects personal information belonging to logged-off users, including ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See id.* at 59:13-60:18.

### 3. Meta does not provide COPPA's required protections for children on Facebook or Instagram.

COPPA imposes affirmative, nondiscretionary obligations on an operator once it has actual knowledge that a user is under the age of 13. 15 U.S.C. § 6502; 16 C.F.R. § 312.5.[8] These obligations include providing direct notice to parents of the operator's practices for children's data, obtaining verifiable parental consent, and affording parents the ongoing rights to review, delete, and restrict use of their child's personal information. 16 C.F.R. §§ 312.4, 312.5, 312.6. These duties are triggered when an operator acquires "actual knowledge that it is collecting or maintaining personal information from a child." 16 C.F.R § 312.3. "An operator is required to obtain verifiable parental consent before any collection, use, or disclosure of personal information from children." 16 C.F.R § 312.5(a)(1).

As the Federal Trade Commission has explained, this requirement means that if, after collecting a user's personal information, "the operator later determines that a particular user is a child under age 13, COPPA's notice and parental consent requirements will be triggered." Gooler Declaration, Ex. J, FTC, Complying with COPPA: Frequently Asked Questions, FAQ A-12, https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions.

### a. Meta does not seek or obtain and has never sought or obtained parental consent for the collection or use of children's data.

Meta admits that since 2012, it has not sought or obtained verifiable parental consent for the collection or use of data from users under the age of 13 on Facebook or Instagram. *See* Ex. 25,

---

[8] Operators of services "directed to children" also have obligations to protect the privacy of potential children pursuant to COPPA, but Meta's compliance with those obligations is not the subject of this motion.

Meta Defs.' First Amended Resp. & Objs. to Pls.' 1st Set of RFAs, Feb. 11, 2025, at No. 6; Ex. 24, Meta Defs.' Amended Resp. & Objs. to Pls.' 3rd Set of RFAs, May 2, 2025, at No. 19.

### b. Meta has not provided notice to parents of its practices for children's personal information.

Although COPPA requires operators to provide clear and comprehensive notice to parents regarding the collection, use, and disclosure of children's personal information prior to collecting, using or disclosing the information, *see* 16 C.F.R. § 312.4, Meta admits that, since 2012, it has not provided any such notice. *See* Ex. 24, Meta Defs.' Amended Resp. & Objs. to Pls.' 3rd Set of RFAs, May 2, 2025, at No. 18.

### c. Meta has not provided parents with a means of reviewing personal information collected from their children.

Meta also admits that, since 2012, it has not provided parents with ongoing rights to review their child's personal information. *See* Ex. 25, Meta Defs.' First Amended Resp. & Objs. to Pls.' 1st Set of RFAs, Feb. 11, 2025, at No. 7; Ex. 24, Meta Defs.' Amended Resp. & Objs. to Pls.' 3rd Set of RFAs, May 2, 2025, at No. 20; *cf.* 16 C.F.R. § 312.6(a)(3) (requiring means of review).

### d. Meta has not provided parents with the opportunity to refuse to permit the further collection or use of personal information from their children.

COPPA also requires operators to provide parents with ongoing rights to restrict further collection or use of their child's personal information. 16 C.F.R. § 312.6(a)(2). Meta admits it failed to provide these rights on its platforms, since 2012. *See* Ex. 25, Meta Defs.' First Amended Resp. & Objs. to Pls.' 1st Set of RFAs, Feb. 11, 2025, at No. 7; Ex. 24, Meta Defs.' Amended Resp. & Objs. to Pls.' 3rd Set of RFAs, May 2, 2025, at Nos. 20, 21.

**e. Meta has not provided parents with the opportunity to direct Meta to delete their children's personal information.**

COPPA also requires operators to provide parents with ongoing rights to delete their child's personal information. 16 C.F.R. § 312.6(a)(2). Meta admits it failed to provide these rights on its platforms, since 2012. *See* Ex. 25, Meta Defs.' First Amended Resp. & Objs. to Pls.' 1st Set of RFAs, Feb. 11, 2025, at No. 7; Ex. 24, Meta Defs.' Amended Resp. & Objs. to Pls.' 3rd Set of RFAs, May 2, 2025, at Nos. 20, 21.

Because there is no genuine dispute of material fact that Meta did not provide any of the four protections to any of its users, the State AGs are entitled to partial summary judgment for these specific elements of their COPPA claim.

**B. Summary judgment should be granted as to the State AGs' claim that Meta violates COPPA by continuing to use the personal information of children to train its machine learning and generative AI models, even after it checkpointed or disabled their accounts because they belong to children.**

The undisputed facts demonstrate that Meta has violated COPPA by continuing to use children's data after it checkpoints or disables their accounts. Meta checkpoints (i.e., suspends) the accounts of users it determines are actually or likely children and disables those accounts after 30 days if the user does not successfully appeal from the checkpoint. Despite Meta's actual knowledge that these checkpointed and disabled accounts belong to children, the company continues to use those children's personal information to train its machine learning and generative AI models. As discussed above, *see supra* Section IV.A.3, COPPA requires operators of websites or online services to provide certain protections to children that the operator has "actual knowledge" of, including seeking parental consent prior to the collection, use, or disclosure of personal information. As such, and because summary judgment is proper on all other COPPA elements, *see supra* Section II.A, summary judgment on the AGs' claim that Meta has violated COPPA with respect to checkpointed and disabled accounts should be granted.

**1.  Meta has actual knowledge that the children whose accounts it checkpoints and ultimately disables for being underage are under 13.**

"Actual knowledge" means being "aware of" information. *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 751 (2023); *see also id.* at 784 (citing Black's Law Dictionary (5th ed. 1979)) (endorsing the dictionary definition of actual knowledge as "to understand" or "the perception of the truth"). Actual knowledge may be proven by direct evidence or inferred from circumstantial evidence. *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 189 (2020); *see also Staples v. United States*, 511 U.S. 600, 615–16 n.11 (1994) ("[K]nowledge can be inferred from circumstantial evidence.").

Actual knowledge can also be shown by establishing the defendant's willful blindness. The U.S. Supreme Court has "recognized in civil cases that willful blindness may support a finding of actual knowledge." *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178, 187–88 (2022). A defendant is deemed to have actual knowledge when it "deliberately shield[s] [itself] from clear evidence of critical facts . . . strongly suggested by the circumstances," *Glob. Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011), and is "aware of a substantial risk that [a fact was true], but intentionally avoid[s] taking steps to confirm the [fact]'s truth or falsity." *SuperValu Inc.*, 598 U.S. at 751.

The doctrine of willful blindness implements the uncontroversial principle that "persons who know enough to blind themselves to direct proof of critical facts in effect have actual knowledge of those facts" and are in any event "just as culpable as those who have actual knowledge." *Glob. Tech Appliances*, 563 U.S. at 766. To show willful blindness, two requirements must be met: "(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Id*. at 769.

Willful blindness can establish actual knowledge under COPPA. *See* COPPA Rule, 89 Fed. Reg. 2034, 2037 (2024), fn 46 ("The concept of actual knowledge includes willful disregard. . . . Therefore, the Rule already applies to instances in which an operator of a general audience site or service willfully disregards the fact that a particular user is a child.") (citing *Glob.-Tech Appliances*, 563 U.S. at 766). In their proposed jury instructions, Meta agrees that "[a]ctual knowledge may

1    also be proved by showing that an operator acted with willful disregard." Draft Jury Instructions

2    and Forms, ECF 2313-1 at 12.

3        Meta has knowledge that the users whose accounts it checkpoints and/or disables for being

4    underage are children. These accounts fall into several categories:



*See* Ex. 38, META3047MDL-053-00012709 at –718.

Ex. 16, Corrected Expert Report of Patrick McDaniel, p. 147.

provides Meta "awareness" and "understanding" that the user is under 13. *See SuperValu Inc.*, 598 U.S. at 751.

*See* Ex. 38, META3047MDL-053-00012709 at -718

Ex. 39, META3047MDL-111-00135412.

21        According to the FTC and Meta's own proposed jury instructions in this case, Meta's

22    awareness of users who changed their date of birth to under 13 satisfies the actual knowledge

23    requirement of COPPA. The FTC has warned that obtaining users' ages or dates of birth that

24    indicate they are under 13 can trigger COPPA liability. Gooler Declaration, Ex. K, FTC, Complying

25    with COPPA: Frequently Asked Questions, FAQ H-3 ("[I]f you ask participants to enter age

26    information, and then you fail either to screen out children under age 13 or to obtain their parents'

27    consent to collecting these children's personal information, you may be liable for violating

28    COPPA."). Meta's proposed jury instruction also concedes that "examples of facts that would

establish that an operator has actual knowledge include . . . [w]here a child user enters age information indicating they are under 13." ECF 2313-1, at 13.

███████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████ *See* Ex. 2, H████ Dep. 182:9-186:19. Here, ████████████████████

█████████████████████ provides Meta awareness and understanding that the user is under 13. This commonsense conclusion is consistent with FTC guidance on this issue. *See* Gooler Declaration, Ex. J, FTC, Complying with COPPA: Frequently Asked Questions, FAQ H-6 ("[Y]ou may be considered to have actual knowledge where a child announces her age under certain circumstances, for example, if you monitor user posts. . ..").

████████████████████████████████████████████████████ children's accounts is further proof of Meta's actual knowledge. From the initial promulgation of the COPPA Rule in 1999, the FTC has recognized that operators obtain actual knowledge when they receive reports of underage children from parents. *See* 64 Fed. Reg. 59888, 59892 (1999) ("Actual knowledge will be present, for example, where an operator learns of a child's age or grade from the child's registration at the site or from a concerned parent who has learned that his child is participating at the site."). ████████████████ Ex. 40, META3047MDL-065-00153090 at –3101-3102 █████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████



1    Ex. 2,

2    H████ Dep. 206:7-208:24.

9    Meta also has actual knowledge

12    Ex. 9, META3047MDL-155-00009593.

13    *See, e.g.*, Ex. 41,

14    META3047MDL-146-00072994

18    *See* Ex. 2, Harnett

19    Dep. 291:20-297:5.

21    *See* Ex. 16, Corrected Expert Report of Patrick McDaniel, p. 172–85.

23    Meta has actual knowledge

24    accounts belong to children.

26    The undisputed facts also establish Meta's actual

27    knowledge through its willful blindness of

1   ▇▇▇▇. *See* Ex. 2, H▇▇ Dep. 211:14-212:11; Ex. 8, H▇▇ Dep. Ex. 6 at 6–

2   8.▇▇▇▇▇▇▇

3   ▇▇▇▇▇▇▇

4   ▇▇ *See* Ex. 2, H▇▇ Dep. 223:11-225:4, 226:12-227:23; Ex. 42, META3047MDL-037-

5   00076549.

6   ▇▇▇▇▇▇▇

7   ▇▇▇▇▇▇▇

8   ▇▇▇▇▇ *See* Ex. 9,

9   META3047MDL-155-00009593.▇▇▇

10  ▇▇▇ *See* Ex. 41, META3047MDL-146-00072994.

11  ▇▇▇▇▇▇▇

12  ▇▇▇▇▇▇▇

13  ▇▇▇▇▇▇▇

14  ▇▇ Ex. 43, META3047MDL-034-00455332 at -5338.▇▇

15  ▇▇▇▇▇▇▇

16  ▇▇ *Id.* at −5339.▇▇

17  ▇▇▇▇▇▇▇

18  ▇▇▇ *Id.* at −

19  340▇▇▇▇▇

20  ▇▇▇▇▇▇▇

21  ▇▇▇▇▇▇▇

22  ▇▇ *Id.* at −341.▇

23  ▇▇▇▇▇▇▇

24  ▇▇ Ex. 9, META3047MDL-155-00009593.

25  ▇▇▇▇▇▇▇

26  ▇▇▇▇▇▇▇

27  ▇▇▇▇▇▇▇

28  ▇▇▇▇▇▇▇

1

2                                                          Ex. 2, H███ Dep. 226:7-227:23, 296:12-297:16;

3 Ex. 44, META3047MDL-047-00945193 at -5194

4

5

6

7

8                                                          Ex. 45, H███ Dep. Ex. 27 at META3047MDL-050-

9 00014485.

10

11

12        After Meta checkpoints an account on the basis that the user is underage, the company

13 allows the user to appeal that determination by providing an identification document showing their

14 age.

15

16

17                                                                                Ex. 46, H█

18 Dep. Ex. 12; Ex. 47, H███ Dep. Ex. 13.

19                                confirms Meta's "awareness" and "understanding" that the user is under 13.

20 *SuperValu Inc.*, 598 U.S. at 751, 784. Moreover, Meta's actual knowledge is even more clear

21

22

23

24

25

26

27                        *See* Ex. 11, META3047MDL-020-00656153,

28

1 ███████████████████████████████████████████████████

2 ████████████████████████ *Id.* at Column F. ███████████

3 ███████████████████████████████████████████████████

4 ████████████████████████████ *Id.* at Columns D and G.

### 2. Meta continues using users' personal information for model training after gaining actual knowledge that those users are children.

As discussed above, *see supra* Sect. II.D, Meta uses ██ users' data for model training for machine learning models. *See* Ex. 17, B█████ 30(b)(6) Dep. at 25:4-21, 27:15-21. ██████ ████████████████████████████ *Id.* at 36:5-39:25. ████████ ██████████████████████████████

As also described above, *supra* II.C.1, when Meta checkpoints an account, that user is locked out of the account and unable to access it for a 30-day period in which the account holder is able to appeal. *See* Ex. 2, H████ Dep. 103:15-106:17. ████████████████████ ██████████████████████████ Ex. 17, B████ 30(b)(6) Dep. 30:7-22; Ex. 20, B█████ 30(b)(6) Amended Errata at 2; *see also* Ex. 18, B█████ Dep. (December 10, 2025) 143:21-145:2.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████ Ex. 18, B█████ Dep. (December 10, 2025) 142:1-6; Ex. 2, H████ Dep. 301:6-13, 299:22-24, 300:21-301:4. ███████████████████████ █████████████████████████████ *See* Ex. 17, B█████ 30(b)(6) 24:11-16 19, 17:23-19:10; Ex. 18, B█████ Dep. (December 10, 2025) 71:10-72:24.

████████████████████████████████████████████████

████████████████████████████████████████████████

████ *See* Ex. 2, H████ Dep. 211:14-212:11, 223:11-225:4, 226:12-227:23; Ex.

1   8, H███████ Dep. Ex. 6 at 6–8. ████████████████████████████

2   ██████████████████████████████████████████████████████████

3   ████████████

4       **3.  Meta does not provide COPPA's protections to any users, including those it**
5           **checkpoints and disables.**

6       Despite collecting information from users under 13 and using it in their machine learning

7   models and generative AI models, Meta fails to adhere to COPPA's unambiguous statutory

8   obligations of operators requiring direct notice to parents, obtaining verifiable parental consent, and

9   providing parents with the right to meaningfully review, delete, and restrict the use of their child's

10  data. 16 C.F.R. § 312. Meta fails to provide these protections to *any* of its users, including those it

11  checkpoints and disables. This is not speculation. As described above, *supra* Section IV.A.3, Meta

12  expressly admits the same. Ex. 25, Meta Defs.' First Amended Resp. & Objs. to Pls.' 1st Set of

13  RFAs, Feb. 11, 2025, at No. 6 and 7; Ex. 24, Meta Defs.' Amended Resp. & Objs. to Pls.' 3rd Set

14  of RFAs, May 2, 2025, at Nos. 18, 19, 20, and 21. Thus, Meta fails to provide COPPA's required

15  protections to its users whose accounts are checkpointed or disabled for belonging to children.

16  Partial summary judgment is proper on this claim.

17  **V.    CONCLUSION**

18      The State AGs seek entry of partial summary judgment in their favor on the specific COPPA

19  elements discussed above. They also seek partial summary judgment that Meta Platforms, Inc. and

20  Instagram, LLC have actual knowledge of children under 13 that they checkpoint, and those they

21  ultimately disable, but they continue to use these children's personal information for machine

22  learning and generative AI model training in violation of COPPA.

23

24

25

26

27

28

1    Respectfully submitted,

2

3    **KRIS MAYES**                          **ROB BONTA**
     Attorney General                        Attorney General
4    State of Arizona                        State of California

5    */s/ Reagan Healey*                      */s/ Megan O'Neill*
     Reagan Healey (AZ No. 038733), pro hac vice    Nicklas A. Akers (CA SBN 211222)
6    Assistant Attorney General              Senior Assistant Attorney General
     Arizona Attorney General's Office       Bernard Eskandari (CA SBN 244395)
7    2005 North Central Avenue               Emily Kalanithi (CA SBN 256972)
     Phoenix, AZ 85004                       Supervising Deputy Attorneys General
8    Phone: (602) 542-3725                   Megan O'Neill (CA SBN 343535)
     Fax: (602) 542-4377                     Nayha Arora (CA SBN 350467)
9    Reagan.Healey@azag.gov                  Joshua Olszewski-Jubelirer
10   *Attorneys for Plaintiff State of Arizona, ex rel.*    (CA SBN 336428)
     *Kris Mayes, Attorney General*          Marissa Roy (CA SBN 318773)
11                                           Brendan Ruddy (CA SBN 297896)
                                             Deputy Attorneys General
12   **PHILIP J. WEISER**                    California Department of Justice
     Attorney General                        Office of the Attorney General
13   State of Colorado                       455 Golden Gate Ave., Suite 11000
                                             San Francisco, CA 94102-7004
14   */s/ Krista Batchelder*                 Phone: (415) 510-4400
     Krista Batchelder (CO Reg.45066), *pro hac vice*    Fax: (415) 703-5480
15   Deputy Solicitor General               megan.oneill@doj.ca.gov
16   Shannon Stevenson (CO Reg. 35542), *pro hac vice*
     Solicitor General                       *Attorneys for Plaintiff the People of the State*
17   Elizabeth Orem (CO Reg. 58309), *pro hac vice*    *of California*
18   Assistant Attorney General
     Colorado Department of Law
19   Ralph L. Carr Judicial Center
     Consumer Protection Section             **RAÚL R. LABRADOR**
20   1300 Broadway, 7th Floor                Attorney General
     Denver, CO 80203                        State of Idaho
21   Phone: (720) 508-6384
22   krista.batchelder@coag.gov              */s/ James J. Simeri*
     Shannon.stevenson@coag.gov              James J. Simeri (ID Bar No. 12332)
23   Elizabeth.orem@coag.gov                 pro hac vice
24                                           Deputy Attorney General
                                             Attorney General's Office
25   *Attorneys for Plaintiff State of Colorado, ex rel.*    P.O. Box 83720
     *Philip J. Weiser, Attorney General*    Boise, ID 83720-0010
26                                           (208) 334-2424
27                                           james.simeri@ag.idaho.gov
28                                           *Attorneys for Plaintiff State of Idaho*

**WILLIAM TONG**
Attorney General
State of Connecticut

*/s/ Rebecca Borné*
Rebecca Borné
(CT Juris No. 446982), pro hac vice
Tess E. Schneider
(CT Juris No. 444175), *pro hac vice*
Krislyn M. Launer
(CT Juris No. 440789), *pro hac vice*
Assistant Attorneys General
Connecticut Office of the Attorney General
165 Capitol Avenue
Hartford, Connecticut 06106
Phone: 860-808-5400
Fax: 860-808-5593
Rebecca.Borne@ct.gov
Tess.Schneider@ct.gov
Krislyn.Launer@ct.gov

*Attorneys for Plaintiff State of Connecticut*


**KATHLEEN JENNINGS**
Attorney General
State of Delaware

*/s/ Ryan Costa*
Marion Quirk (DE Bar 4136), pro hac vice
Director of Consumer Protection
Ryan Costa (DE Bar 5325), *pro hac vice*
Deputy Director of Consumer Protection
Delaware Department of Justice
820 N. French Street, 5th Floor
Wilmington, DE 19801
Phone: (302) 683-8811
Marion.Quirk@delaware.gov
Ryan.Costa@delaware.gov

*Attorneys for Plaintiff State of Delaware,*
*ex rel. Kathleen Jennings, Attorney General*
*for the State of Delaware*


**THEODORE E. ROKITA**
Attorney General
State of Indiana

*/s/ Scott L. Barnhart*
Scott L. Barnhart (IN Atty No. 25474-82),
*pro hac vice*
Chief Counsel and Director of Consumer
Protection
Corinne Gilchrist (IN Atty No. 27115-53),
*pro hac vice*
Section Chief, Consumer Litigation
Mark M. Snodgrass (IN Atty No. 29495-49),
*pro hac vice*
Deputy Attorney General
Office of the Indiana Attorney General
Indiana Government Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46203
Telephone: (317) 232-6309
Scott.Barnhart@atg.in.gov
Corinne.Gilchrist@atg.in.gov
Mark.Snodgrass@atg.in.gov

*Attorneys for Plaintiff State of Indiana*


**KRIS W. KOBACH**
Attorney General
State of Kansas

*/s/ Sarah M. Dietz*
Sarah M. Dietz, Assistant Attorney General
(KS Bar No. 27457), *pro hac vice*
Kaley Schrader, Assistant Attorney General
(KS Bar No. 27700), *pro hac vice*
Office of the Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Telephone: (785) 296-3751
Fax: (785) 296-3131
Email: sarah.dietz@ag.ks.gov

*Attorneys for Plaintiff State of Kansas*

1

**ANNE E. LOPEZ**
Attorney General
2   State of Hawaiʻi

3
*/s/ Douglas S. Chin*
4   Christopher J.I. Leong (HI JD No. 9662), *pro hac vice*
Supervising Deputy Attorney General
5
Kelcie K. Nagata (HI JD No. 10649), *pro hac vice*
6   Deputy Attorney General
Department of the Attorney General
7   Commerce and Economic Development Division
425 Queen Street
8   Honolulu, Hawaiʻi 96813
Phone: (808) 586-1180
9   Christopher.ji.leong@hawaii.gov
Kelcie.k.nagata@hawaii.gov
10
Douglas S. Chin (HI JD No. 6465), *pro hac vice*
11   John W. Kelly (HI JD No. 9907), *pro hac vice*
Special Deputy Attorney General
12   Starn O'Toole Marcus & Fisher
733 Bishop Street, Suite 1900
13   Honolulu, Hawaiʻi 96813
Phone: (808) 537-6100
14   dchin@starnlaw.com
jkelly@starnlaw.com
15

16
*Attorneys for Plaintiff State of Hawaiʻi*
17

18   **KWAME RAOUL**
Attorney General
19   State of Illinois

20
*/s/ Matthew Davies*
21   Susan Ellis, Chief, Consumer Protection
Division (IL Bar No. 6256460), *pro hac vice*
22   Greg Grzeskiewicz, Chief, Consumer
Fraud Bureau (IL Bar No. 6272322), *pro hac vice*
23   Jacob Gilbert, Deputy Chief, Consumer Fraud
Bureau (IL Bar No. 6306019), *pro hac vice*
24   Matthew Davies, Supervising Attorney,
Consumer Fraud Bureau (IL Bar No. 6299608),
25   *pro hac vice*
Daniel B. Roth, Assistant Attorney General,
26   Consumer Fraud Bureau (IL Bar No. 6290613),
*pro hac vice*
27   Meera Khan, Assistant Attorney General,
28

**LIZ MURRILL**
Attorney General
State of Louisiana

*/s/ Asyl Nachabe*
Asyl Nachabe (LA Bar No. 38846)
*Pro hac vice*
Assistant Attorney General
Louisiana Department of Justice
Public Protection Division
Consumer Protection Section
1885 N 3rd Street, 4th Floor
Baton Rouge, LA 70802
Tel: (225) 326-6438
NachabeA@ag.louisiana.gov

*Attorney for State of Louisiana*

**AARON M. FREY**
Attorney General
State of Maine

*/s/ Michael Devine*
Michael Devine, Maine Bar No. 5048,
*pro hac vice*
Assistant Attorney General
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333
(207) 626-8800
michael.devine@maine.gov

*Attorney for Plaintiff State of Maine*

**KEITH ELLISON**
Attorney General
State of Minnesota

*/s/ Caitlin Micko*
Caitlin Micko (MN Bar No. 0395388),
*pro hac vice*
Assistant Attorney General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1200
St. Paul, MN 55101-2130
Tel: (651) 724-9180

STATE ATTORNEYS GENERAL'S MOTION FOR PARTIAL SUMMARY JUDGMENT
4:22-md-03047-YGR; 4:23-cv-05448-YGR

Consumer Fraud Bureau (IL Bar No. 6345895),
*pro hac vice*
Office of the Illinois Attorney General
115 S. LaSalle Street
Chicago, Illinois 60603
312-814-8554
Susan.Ellis@ilag.gov
Greg.Grzeskiewicz@ilag.gov
Jacob.Gilbert@ilag.gov
Matthew.Davies@ilag.gov
Emily.Migliore@ilag.gov
Daniel.Roth@ilag.gov
Meera.Khan@ilag.gov


*Attorneys for Plaintiff the People of the State of Illinois*


**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

/s/ *Matthew Cocanougher*
J. Christian Lewis (KY Bar No. 87109),
*pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*pro hac vice*
Zachary Richards (KY Bar No. 99209),
*pro hac vice app. forthcoming*
Daniel I. Keiser (KY Bar No. 100264),
*pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Ste. 200
Frankfort, KY 40601
Christian.Lewis@ky.gov
Philip.Heleringer@ky.gov
Zach.Richards@ky.gov
Daniel.Keiser@ky.gov
Matthew.Cocanougher@ky.gov
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

caitlin.micko@ag.state.mn.us

*Attorney for Plaintiff State of Minnesota, by its Attorney General, Keith Ellison*


**JENNIFER DAVENPORT**
Acting Attorney General
State of New Jersey

By: /s/ *Kashif T. Chand*
Kashif T. Chand (NJ Bar No. 016752008),
*Pro hac vice*
Assistant Attorney General
Thomas Huynh (NJ Bar No. 200942017),
*Pro hac vice*
Assistant Section Chief, Deputy Attorney General
Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*Pro hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General, Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiffs Jennifer Davenport, Acting Attorney General for the State of New Jersey, and Jeremy E. Hollander, Acting Director of the New Jersey Division of Consumer Affairs*

1

2

**ANTHONY G. BROWN**
Attorney General
State of Maryland

3

4

/s/ *Elizabeth J. Stern*
Philip D. Ziperman (Maryland CPF No.
9012190379), *pro hac vice*

5

6

Deputy Chief, Consumer Protection Division
Elizabeth J. Stern (Maryland CPF No.
1112090003), *pro hac vice*

7

Assistant Attorney General
Office of the Attorney General of Maryland

8

200 St. Paul Place
Baltimore, MD 21202

9

Phone: (410) 576-6417 (Mr. Ziperman)
Phone: (410) 576-7226 (Ms. Stern)

10

Fax: (410) 576-6566

11

pziperman@oag.state.md.us
estern@oag.state.md.us

12

13

*Attorneys for Plaintiff Office of the Attorney General of Maryland*

14

**MICHAEL T. HILGERS**

15

Attorney General
State of Nebraska

16

/s/ *Anna M. Anderson*

17

Anna M. Anderson (NE #28080),
*pro hac vice*

18

Benjamin J. Swanson (NE #27675),
*pro hac vice*

19

Assistant Attorneys General

20

Nebraska Attorney General's Office
1445 K Street, Room 2115

21

Lincoln, NE 68509

22

(402) 471-6034
anna.anderson@nebraska.gov

23

benjamin.swanson@nebraska.gov

24

*Attorneys for Plaintiff State of Nebraska*

25

26

27

28

**LETITIA JAMES**
Attorney General
State of New York

/s/ Nathaniel Kosslyn
Nathaniel Kosslyn, Assistant Attorney
General
(NY Bar No. 5773676), *pro hac vice*
nathaniel.kosslyn@ag.ny.gov
Alex Finkelstein, Assistant Attorney General
(NY Bar No. 5609623), *pro hac vice*
alex.finkelstein@ag.ny.gov
New York Office of the Attorney General
28 Liberty Street
New York, NY 10005
(212) 416-8000

**DAVE YOST**
Attorney General
State of Ohio

/s/ *Kevin R. Walsh*
Melissa G. Wright (Ohio Bar No. 0077843)
Section Chief, Consumer Protection Section
Melissa.Wright@ohioago.gov
Melissa S. Smith (Ohio Bar No. 0083551)
Asst. Section Chief, Consumer Protection
Section
Melissa.S.Smith@ohioago.gov
Michael S. Ziegler (Ohio Bar No. 0042206)
Principal Assistant Attorney General
Michael.Ziegler@ohioago.gov
Kevin R. Walsh (Ohio Bar No. 0073999),
*pro hac vice*
Kevin.Walsh@ohioago.gov
Senior Assistant Attorney General
30 East Broad Street, 14th Floor
Columbus, Ohio 43215
Tel: 614-466-1031

*Attorneys for State of Ohio, ex rel. Attorney General Dave Yost*

**JEFF JACKSON**
Attorney General
State of North Carolina

*/s/ Charles White*
Charles G. White (N.C. State Bar No.
57735), *pro hac vice*
Assistant Attorney General
Kunal Choksi
Senior Deputy Attorney General
Josh Abram
Special Deputy Attorney General
N.C. Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6889
Facsimile: (919) 716-6050
E-mail: cwhite@ncdoj.gov
*Attorneys for Plaintiff State of North Carolina*

**DAVE SUNDAY**
Attorney General
Commonwealth of Pennsylvania

*/s/ Jonathan R. Burns*
Jonathan R. Burns
Deputy Attorney General
(PA Bar No. 315206), *pro hac vice*
Email: jburns@attorneygeneral.gov
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Tel: 717.787.4530

*Attorneys for Plaintiff the Commonwealth of Pennsylvania*

**PETER F. NERONHA**
Attorney General
State of Rhode Island

*/s/ Stephen N. Provazza*
Stephen N. Provazza (R.I. Bar No. 10435),
*pro hac vice*
Assistant Attorney General
Rhode Island Office of the Attorney General

**DAN RAYFIELD**
Attorney General
State of Oregon

*/s/ John Dunbar*
John J. Dunbar (Oregon Bar No. 842100)
Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, Oregon 97201
Telephone: (971) 673-1880
Facsimile: (971) 673-1884
E-mail: john.dunbar@doj.oregon.gov

*Attorneys for State of Oregon ex rel. Dan Rayfield, Attorney General*

**ALAN WILSON**
Attorney General
State of South Carolina

*/s/ Anna C. Smith*
C. Havird Jones, Jr.
Senior Assistant Deputy Attorney General
Jared Q. Libet (S.C. Bar No. 74975),
*pro hac vice*
Assistant Deputy Attorney General
Anna C. Smith (SC Bar No. 104749),
*pro hac vice*
Assistant Attorney General
Office of the South Carolina Attorney General
Post Office Box 11549
Columbia, South Carolina 29211
jlibet@scag.gov
annasmith@scag.gov
803-734-0536

*Attorneys for Plaintiff the State of South Carolina, ex rel. Alan M. Wilson, in His Official Capacity as Attorney General of the State of South Carolina*

| | | |
|---|---|---|
| 1 | 150 South Main St. | **MARTY J. JACKLEY** |
| 2 | Providence, RI 02903<br>Phone: 401-274-4400 | Attorney General<br>State of South Dakota |
| 3 | Email: SProvazza@riag.ri.gov | |
| 4 | *Attorney for Plaintiff State of Rhode Island* | /s/  *Amanda Miiller*<br>By: Amanda Miiller (SD Bar No. 4271) |
| 5 | **JAY JONES** | Deputy Attorney General<br>South Dakota Office of the Attorney General |
| 6 | Attorney General<br>Commonwealth Of Virginia | 1302 East SD Hwy 1889, Suite 1<br>Pierre, SD 57501-8501 |
| 7 | | Telephone: (605) 773-3215 |
| 8 | /s/ *Joelle E. Gotwals*<br>Travis G. Hill | Email: Amanda.Miiller@state.sd.us |
| 9 | Chief Deputy Attorney General<br>Helen O. Hardiman | *Attorneys for Plaintiff State of South Dakota* |
| 10 | Deputy Attorney General<br>Richard S. Schweiker, Jr. | |
| 11 | Senior Assistant Attorney General and<br>Section Chief | **JOHN B. MCCUSKLEY**<br>Attorney General<br>State of West Virginia |
| 12 | Joelle E. Gotwals (VSB No. 76779),<br>Senior Assistant Attorney General | |
| 13 | *pro hac vice* | /s/ *Laurel K. Lackey*<br>Laurel K. Lackey (WVSB No. 10267), |
| 14 | Chandler P. Crenshaw (VSB No. 93452)<br>Assistant Attorney General | *pro hac vice*<br>Abby G. Cunningham (WVSB No. 13388) |
| 15 | *pro hac vice*<br>Office of the Attorney General of Virginia | Assistant Attorneys General<br>Office of the Attorney General |
| 16 | Consumer Protection Section<br>202 N. 9th Street | Consumer Protection & Antitrust Division<br>Eastern Panhandle Office |
| 17 | Richmond, Virginia 23219 | 269 Aikens Center |
| 18 | Telephone: (804) 786-8789<br>Facsimile: (804) 786-0122 | Martinsburg, West Virginia 25404<br>(304) 267-0239 |
| 19 | E-mail: jgotwals@oag.state.va.us | laurel.k.lackey@wvago.gov |
| 20 | *Attorneys for the Plaintiff Commonwealth of*<br>*Virginia ex rel. Jay Jones, Attorney General* | *Attorneys for Plaintiff State of West Virginia,*<br>*ex rel. Patrick Morrisey, Attorney General* |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

1 | **NICHOLAS W. BROWN**
Attorney General State of Washington

2 |

3 | */s/ Claire McNamara*
Claire McNamara (WA Bar No. 50097)
Gardner Reed (WA Bar No. 55630)

4 | Assistant Attorneys General
Washington State Office of the Attorney General

5 | 800 Fifth Avenue, Suite 2000
Seattle, WA 98104

6 | (206) 340-6783
claire.mcnamara@atg.wa.gov

7 | gardner.reed@atg.wa.gov

8 | *Attorneys for Plaintiff State of Washington*

**JOSHUA L. KAUL**
Attorney General
State of Wisconsin

*/s/ Brittany Copper*
Brittany A. Copper
Assistant Attorney General
WI State Bar # 1142446, *pro hac vice*
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-1795
Brittany.copper@wisdoj.gov

*Attorneys for Plaintiff State of Wisconsin*

## ATTESTATION PURSUANT TO CASE MANAGEMENT ORDER NO. 27

I attest that the evidence cited herein fairly and accurately supports the facts as asserted.

DATED: January 30, 2026.

*/s/ Megan O'Neill*
Megan O'Neill

## ATTESTATION

I, Matthew Cocanougher, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED: January 30, 2026

*/s/ Matthew Cocanougher*
Matthew Cocanougher