James P. Rouhandeh, *pro hac vice*
Antonio J. Perez-Marques, *pro hac vice*
Caroline Stern, *pro hac vice*
Corey M. Meyer, *pro hac vice*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:    rouhandeh@davispolk.com
          antonio.perez@davispolk.com
          caroline.stern@davispolk.com
          corey.meyer@davispolk.com

*Attorneys for Defendants Meta Platforms, Inc. and
Instagram, LLC*

*Additional counsel listed on signature pages*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION <br><br> THIS DOCUMENT RELATES TO: <br><br> *People of the State of California, et al. v. Meta Platforms, Inc., et al.* | MDL No. 3047 <br><br> Case Nos. 4:22-md-03047-YGR-PHK <br> 4:23-cv-05448-YGR <br><br> **META'S NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT TESTIMONY OF ADAM ALTER AND RAVI IYER** <br><br> Judge: Hon. Yvonne Gonzalez Rogers <br> Magistrate Judge: Hon. Peter H. Kang <br><br> Date: April 15, 2026 <br> Time: 1:00 PM <br> Place: Courtroom 1, 4th Floor |

**[REDACTED]**

**NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT TESTIMONY**

PLEASE TAKE NOTICE THAT, at 1:00 PM on April 15, 2026, before the Honorable Yvonne Gonzalez Rogers, in Courtroom 1, Floor 4 of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California, 94612, Defendants Meta Platforms, Inc. and Instagram, LLC (hereinafter, "Meta") will and hereby do move this Court, under Federal Rule of Evidence 702, for an order excluding testimony of Plaintiffs' experts Dr. Adam Alter and Dr. Ravi Iyer.  This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, any Reply or other papers submitted in connection with the Motion, the accompanying Declaration of Antonio J. Perez-Marques and all exhibits thereto, and on such other written and oral argument as may be presented to the Court.

**STATEMENT OF RELIEF SOUGHT**

Meta seeks an order granting its motion to exclude the expert testimony of Dr. Adam Alter and Dr. Ravi Iyer.

Dated:  January 30, 2026

Respectfully submitted,

DAVIS POLK & WARDWELL LLP

*/s/ Antonio J. Perez-Marques*
James P. Rouhandeh, *pro hac vice*
Antonio J. Perez-Marques, *pro hac vice*
Caroline Stern, *pro hac vice*
Corey M. Meyer, *pro hac vice*
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
rouhandeh@davispolk.com
antonio.perez@davispolk.com
caroline.stern@davispolk.com
corey.meyer@davispolk.com

*Attorneys for Defendants Meta Platforms, Inc. and Instagram, LLC.*

*Additional counsel listed on signature pages*

# TABLE OF CONTENTS

PAGE

LEGAL STANDARD.....................................................................................................................2

ARGUMENT ..................................................................................................................................2

I.      Alter's Deception Opinions Should Be Excluded.................................................................2

        A.      Alter's Opinion That Meta Intended to Shape Consumer Perceptions Is Improper State of Mind Testimony and Factual Narrative (Op. D)............................2

        B.      Alter Is Not Qualified and Lacks a Reliable Basis to Opine That Social Media Platforms Are "Credence Goods" (Op. A) ...........................................................3

        C.      Alter Lacks a Reliable Methodology for Opining on How a Reasonable Consumer Would Understand Meta's Statements (Ops. B, C, F, G)..........................5

        D.      Alter's Opinion That Meta's Statements Were False or Misleading Is Impermissible Factual Narrative and State of Mind Testimony That Is Not Helpful to the Factfinder (Ops. E, G)................................................................................7

        E.      Alter Lacks a Reliable Methodology for His Opinion That Consumers Were "Exposed" to Meta's Statements (Op. H) .......................................................................8

II.     Alter's COPPA Opinions Should Be Excluded (Ops. L-P)........................................................9

        A.      Alter's Opinion That Meta Intended to Attract U13s Is Improper State of Mind Testimony and Factual Narrative and Unreliable (Ops. L, M, O).......................9

        B.      Alter's Opinions That Meta's Platforms Are Directed to Children Should Be Excluded (Ops. M-P) ...............................................................................................10

                1.      Alter's Opinions Are Impermissible Legal Conclusions ..............................10

                2.      Alter Applies an Unreliable Methodology to Determine Whether the Platforms, or Portions Thereof, Are Directed to Children.............................10

III.    Iyer's Opinions Should Be Excluded in Their Entirety .........................................................12

        A.      Iyer's "Mitigation" Opinions Are Too Vague to Assist the Trier of Fact and Are Not Based on a Reliable Methodology (Ops. 1, 3, 4).........................................12

        B.      Iyer's "Feasibility" Opinion Is Not Based on a Reliable Methodology (Op. 2)........14

CONCLUSION.............................................................................................................................14

i

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*In re Apple Inc. Sec. Litig.*,
   2023 WL 4556765 (N.D. Cal. 2023) ............................................................................. 3, 6, 7, 8, 11

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
   613 F. Supp. 3d 1308 (S.D. Cal. 2020) ................................................................................... 3, 8

*In re Bextra & Celebrex Mktg. Sales Pracs. & Prod. Liab. Litig.*,
   524 F. Supp. 2d 1166 (N.D. Cal. 2007) ............................................................................. 5, 11, 13

*Cadena v. Am. Honda Motor Co.*,
   2025 WL 3483436 (C.D. Cal. Dec. 3, 2025) ............................................................................ 3

*In re ConAgra Foods*, *Inc.*
   302 F.R.D. 537 (C.D. Cal. 2014) ................................................................................... 8, 11-12

*Daubert v. Merrell Dow Pharms., Inc.*,
   43 F.3d 1311 (9th Cir. 1995) ....................................................................................... 4, 7

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ............................................................................................................. 5

*Engilis v. Monsanto Co.*,
   151 F.4th 1040 (9th Cir. 2025) ....................................................................................... 2, 10

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) ......................................................................................................... 6

*Georges v. Novartis Pharms. Corp.*,
   2013 WL 5217198 (C.D. Cal. Apr. 4, 2013) ............................................................................ 13

*Grodzitsky v. Am. Honda Motor Co., Inc.*,
   957 F.3d 979 (9th Cir. 2020) ................................................................................... 13, 14

*Innovation Ventures, LLC v. Custom Nutrition Labs., LLC*,
   2021 WL 12255004 (E.D. Mich. Sept. 29, 2021) ..................................................................... 12

*Jauregui v. Daimler Truck N. Am. LLC*,
   2025 WL 904744 (D. Ariz. Mar. 25, 2025) .............................................................................. 9

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ......................................................................................................... 4

*McGinity v. Procter & Gamble Co.*,
   69 F.4th 1093 (9th Cir. 2023) ............................................................................................ 7

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Wells Fargo Bank, N.A.*,
  2005 WL 6459866 (C.D. Cal. Mar. 17, 2005) ........................................................................ 3-4, 9

*In re Novatel Wireless Sec. Litig.*,
  846 F. Supp. 2d 1104 (S.D. Cal. 2012) .......................................................................................... 11

*OCG Energy, LLC v. Shen*,
  2024 WL 694912 (C.D. Cal. Feb. 12, 2024) ............................................................................... 8, 10

*Open Text S.A. v. Box, Inc.*,
  2015 WL 349197 (N.D. Cal. Jan. 23, 2015) ............................................................................... 9, 14

*Otto v. LeMahieu*,
  2021 WL 1615311 (N.D. Cal. Apr. 26, 2021) ................................................................................. 3

*Pelican Int'l, Inc. v. Hobie Cat Co.*,
  655 F. Supp. 3d 1002 (S.D. Cal. 2023) ............................................................................................ 7

*People v. Kinder Morgan Energy Partners, L.P.*,
  159 F. Supp. 3d 1182 (S.D. Cal. 2016) ............................................................................................ 4

*Rodriguez v. Google LLC*,
  2025 WL 1569361 (N.D. Cal. June 2, 2025) .................................................................................... 3

*Sanchez v. Jiles*,
  2012 WL 13005996 (C.D. Cal. June 14, 2012) ........................................................................... 7, 13

*Snyder v. Bank of Am., N.A.*,
  2020 WL 6462400 (N.D. Cal. Nov. 3, 2020) .................................................................................... 4

*In re Toyota Motor Corp.*,
  978 F. Supp. 2d 1053 (C.D. Cal. 2013) .......................................................................................... 14

*United States v. Alo-Kaonohi*,
  635 F. Supp. 3d 1074 (D. Haw. 2022) .............................................................................................. 7

*United States v. Holguin*,
  51 F.4th 841 (9th Cir. 2022) ............................................................................................................. 6

*White v. Ethicon, Inc.*,
  2022 WL 538760 (W.D. Wash. Feb. 23, 2022) ................................................................................ 3

STATUTES & RULES

15 U.S.C. § 6501 ............................................................................................................................. 10

15 U.S.C. § 6502 ............................................................................................................................. 10

16 C.F.R. § 312.2 ............................................................................................................................. 10

Federal Rule of Evidence 702 .......................................................................................................... 2

## MEMORANDUM OF POINTS AND AUTHORITIES

**Dr. Adam L. Alter.** Experts cannot be a conduit for someone else's facts or opine on intent. Yet vast portions of Alter's nearly 400-page report, reflecting key opinions, do just that—merely summarizing the record and opining on Meta's "beliefs," "goals," "intent," "knowledge," and "understanding." These are core opinions, not mere background. Most of Alter's other opinions are unreliable pseudo-science. Alter's report should be excluded.

Alter is a professor of marketing with a background in psychology and a prominent public critic of social media. In Part I of his report, Alter opines on whether certain statements deceived consumers (Ops. A-H).[1] Most of those opinions (the "Deception Opinions") should be excluded. First, Alter's opinion that Meta ███████████████████████████████ (Op. D) constitutes improper state of mind testimony and factual narrative. Second, Alter is not qualified to opine that social media platforms are "credence goods" (Op. A), and the opinion also lacks a reliable basis. Third, Alter's opinions on how reasonable consumers "would have understood" Meta's statements (Ops. B, C, F, G) are based on unreliable pseudo-science and amount to untested hypotheses, without empirical support. Fourth, Alter's opinion that Meta's statements were false or had a tendency to mislead (Ops. E, G) impermissibly invades the province of the factfinder. Fifth, Alter's opinion that such statements or their "gist" were "transmitted to" and "spread" by consumers (Op. H) lacks any reliable methodology.

In Part II of his report, Alter opines that Instagram and Facebook are directed to U13 users in support of the AGs' COPPA claims (the "COPPA Opinions"). Alter Rep. Part II (Ops. I-P). Those opinions should also be excluded. Alter's opinion that Meta "intended" to attract U13s to its platforms (Ops. L, M, O) is improper state of mind testimony and factual narrative. Alter's opinion that Meta's platforms, as a whole and portions thereof, are "directed to children" (Ops. M, N, O, P) impermissibly draws the ultimate conclusion for the factfinder and lacks a reliable methodology.

Appendix A maps the opinions that Meta seeks to exclude to sections of Alter's report.

**Dr. Ravi Iyer.** Iyer, a social psychologist, offers two overarching opinions. First, Iyer opines

---

[1] When referring to Alter, "Opinion" or "Op." refers to the lettered bullets in Paragraphs 2 and 3 of the "Executive Summary of Opinions" of Alter's Report. *See* Ex. 1 (Alter Rep.) ¶¶ 2-3.

that Meta's current safety tools and features are "insufficient to mitigate the unwanted, negative, and harmful experiences" of young users (Ops. 3-4[2]) and proposes design changes that would mitigate such experiences (Op. 1). Iyer never defines what he considers "sufficient" mitigation, describing it as ███████████████████████████████ Instead, Iyer simply assumes that certain features are harmful to young users and asserts that removing those features would reduce that assumed harm by some unidentified amount. The factfinder does not need Iyer's testimony to understand that removing an allegedly harmful feature could reduce harm. Second, Iyer opines that Meta could "feasibl[y]" implement his proposed changes (Op. 2). That opinion also lacks a reliable methodology: Iyer does not define "feasibility" or employ any reliable method to assess it. Lacking in reliability, Iyer's opinions are inadmissible *ipse dixit*.

## LEGAL STANDARD

To establish the admissibility of expert testimony, the AGs must establish by a preponderance of the evidence that (i) the expert is qualified; (ii) the testimony "will help the trier of fact;" (iii) "the testimony is based on sufficient facts or data," (iv) "the testimony is the product of reliable principles and methods," and (v) the testimony "reflects a reliable application of the principles and methods to the facts of the case." *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049 (9th Cir. 2025); Fed. R. Evid. 702. "[C]hallenges to an expert's opinion go to the weight of the evidence *only if* a court first finds it more likely than not that an expert has a sufficient basis to support an opinion." *Engilis*, 151 F.4th at 1049 (emphasis added).

## ARGUMENT

I.    **Alter's Deception Opinions Should Be Excluded**

    A.    **Alter's Opinion That Meta Intended to Shape Consumer Perceptions Is Improper State of Mind Testimony and Factual Narrative (Op. D)**

As part of his Deception Opinions, Alter opines that ████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ███████████████████ Op. D; Alter Rep. ¶ 102 (emphases added). Those opinions, set forth in Section IX and Appendix A, should be excluded for two reasons.

---

[2] When referring to Iyer, "Opinion" or "Op." refers to Paragraphs 1-4 of the "Summary of Opinions" of Iyer's Report. *See* Ex. 2 (Iyer Rep.) ¶¶ 1-4.

*First*, they impermissibly opine on Meta's state of mind, knowledge, or intent, as Alter acknowledged. *See* Ex. 3 (Alter Dep.) 172:1-12. An expert cannot "testify as to [a defendant's] intent" or state of mind. *Rodriguez v. Google LLC*, 2025 WL 1569361, at *3-4 (N.D. Cal. June 2, 2025) (excluding testimony on defendant's intent); *Cadena v. Am. Honda Motor Co.*, 2025 WL 3483436, at *7, 16, 20 (C.D. Cal. Dec. 3, 2025) (excluding testimony on what defendant "knew" or "believed").

*Second*, the opinions constitute impermissible factual narrative. Experts cannot be a "conduit for attorney argument," *In re Apple Inc. Sec. Litig.*, 2023 WL 4556765, at *5 (N.D. Cal. July 17, 2023), or testify "solely for the purpose of constructing a factual narrative based upon record evidence," *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 613 F. Supp. 3d 1308, 1322 (S.D. Cal. 2020), *aff'd*, 9 F.4th 1102 (9th Cir. 2021); *see also Otto v. LeMahieu*, 2021 WL 1615311, at *5 (N.D. Cal. Apr. 26, 2021) (excluding testimony that "merely regurgitates information untethered to any methodology"). Alter merely summarizes the contents of internal Meta documents and other public information, without applying any expertise. A factfinder "is capable of reading [these] document[s] itself." *White v. Ethicon, Inc.*, 2022 WL 538760, at *2 (W.D. Wash. Feb. 23, 2022).

### B. Alter Is Not Qualified and Lacks a Reliable Basis to Opine That Social Media Platforms Are "Credence Goods" (Op. A)

Alter also opines that social media platforms are "credence goods"—according to Alter,

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████ Op. A; Alter Rep. ¶¶ 52, 54. This opinion, set forth in Section VI.C, should be excluded for three reasons.

*First*, Alter is unqualified to offer it. ████████████████████████

████████████████████████ Alter Rep. ¶¶ 52-53, but Alter is not an economist.

████████████████████████ Alter Dep. 19:2-8, does not make him qualified to offer novel opinions about how economic principles apply to social media. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Wells Fargo Bank, N.A.*, 2005 WL 6459866, at *4 (C.D. Cal. Mar. 17, 2005) ("An expert must have qualifications relevant to the particular evidence or fact

in issue."); *People v. Kinder Morgan Energy Partners, L.P.*, 159 F. Supp. 3d 1182, 1199 (S.D. Cal. 2016) (excluding testimony "evaluat[ing] hydrological and hydrogeological issues" because witness was "not a hydrogeologist" and "lack[ed] pertinent qualifications" even though she "may have dealt with issues related to the municipal water system" in her employment).

*Second*, Alter's opinion lacks a reliable basis. Alter cites *no* authority describing social media as a credence good and instead apparently "developed [this] opinion[] expressly for purposes of testifying," a "very significant fact" weighing against admissibility. *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995). ███████████████████████████████████████████████████████████████████████████████████ Alter Rep. ¶¶ 52-57. Alter's cursory analysis falls short of the "same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

Moreover, evidence that Alter relies on in support of other opinions contradicts his credence goods opinion. *See Snyder v. Bank of Am., N.A.*, 2020 WL 6462400, at *6 (N.D. Cal. Nov. 3, 2020) ("[A] contradiction renders [the] opinions unreliable"). Alter claims that ████████████ ██████████████████████████████████████████████████████████████████████████████ Op. A. But Alter repeatedly relies on contradictory evidence indicating that ████████ ████████████████████████████████████████████████████████████████████████████████ Alter Rep. Section IX.A.i., ¶ 106; *see also id.* ¶ 59 (████████████████████████████████████████ ██████████). And Alter acknowledges ████████████████████████████████ ████████████████████████████████████████████████ ██████████ Alter Dep. 145:4-146:2; Alter Rep. ¶ 6. Alter's own evidence flatly contradicts his

───────────────

[3] *See* Ex. 4 (Jan Biermann, John Horton, & Johannes Walter, *Algorithmic Advice as a Credence Good* (ZEW Ctr. for Eur. Econ. Rsch., Discussion Paper No. 22-071, 2022)), cited at Alter Rep. ¶ 55.

opinion that social media platforms are credence goods.

*Third*, there is a fatal analytical gap in Alter's method. *In re Bextra & Celebrex Mktg. Sales Pracs. & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1181 (N.D. Cal. 2007) ("[T]he 'analytical gap' between the data and these experts' conclusion is simply too great to make the opinion admissible."). Alter concedes that ███████████████████████████████████████████████████████ ██████████ Alter Dep. 142:19-143:5 (emphasis added), ███████████████████████ *id.* 144:12-21.  But he does not analyze ███████████████████████████████████████████████████ ██████████████ Thus, there is no basis for Alter's conclusion that ███████████████████ █████████████████████████████████████████████████ Alter Rep. ¶ 52.

### C.    Alter Lacks a Reliable Methodology for Opining on How a Reasonable Consumer Would Understand Meta's Statements (Ops. B, C, F, G)

Alter next opines on how reasonable consumers "would understand" or are "likely to believe" certain statements that the AGs allege are false or misleading.  Alter Rep. ¶¶ 137, 383.  Alter applies a so-called "social influence analysis" to predict how consumers might understand the statements, concluding ███████████████████████████████████████████████████████████████ ███████████████████████████████ Op. C; Alter Rep. ¶ 96.[4]  As addressed in Part I.D, *infra*, Alter then compares that presumed "message" with contrary assumptions provided by counsel to conclude the statements were false or misleading.  His consumer understanding opinion should be excluded for five reasons.[5]

*First*, Alter's methodology is unreliable.  He claims that his "social influence analysis" is a ███████████████████████████████████████ Alter Rep. ¶ 32, but it lacks the key indicia of reliability for science-based methods.  *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593-94 (1993).  Most notably, it is not based on any empirical analysis, including, for example, consumer surveys, which Alter himself calls the "standard approach,"[6] or ███████████████████████████████████████

---

[4] Alter's "social influence analysis" framework considers ███████████████████████ ██████████████████████████ Alter Rep. ¶ 2.

[5] Alter's consumer understanding opinion is interspersed throughout multiple sections of his report, specifically Sections VII, VIII, IX, and X.

[6] Ex. 5 (Expert Report of Professor Adam Alter ¶ 28, *O'Connor v. Ford*, 1:19-cv-05045 (N.D. Ill. Sept. 8, 2023), Dkt. No. 229-2); *see also* Alter Dep. 112:17-113:10; Ex. 6 (Isaacson Rep.) ¶¶ 27-29

5

██████████████████████ Alter Dep. 317:24-318:16; 227:5-15. As a result, there is no way of assessing whether his method accurately predicts what consumers would actually understand, i.e., an error rate. Without some measure of reliability, the methodology is nothing but an untested hypothesis, or mere "*ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).[7]

*Second*, because Alter provides no empirical evidence and relies on hypotheses, the application of his "social influence analysis" method here does not aid the factfinder. At base, Alter merely speculates on various statements' "message," which, even if permissible in the absence of consumer surveys, a factfinder would be equally capable of doing. *See Apple*, 2023 WL 4556765, at *3 (factfinders make determinations of fact, including statements' meanings). For example, Statements B8-B9 state:

- "We've built tools and controls to help people manage when and how they use our services. Furthermore, we have a dedicated team working across our platforms to better understand these issues and ensure people are using our apps in ways that are meaningful to them."
- "We want teens to feel good about the time they spend on our apps, which is why we've built features like Take a Break on Instagram. Soon, teens will also see a notification when they've spent 20 minutes on Facebook, prompting them to take time away from the app and set daily time limits. We're also exploring a new nudge on Instagram that suggests teens close the app if they are scrolling Reels at night."

Alter Rep. Table 6 at 135. According to Alter, the "message" a reasonable consumer would take from these statements is ████████████████████████████████ *id.* ¶ 225 (emphasis added). ████████████████████████████████████████ ██████████████. *See id.* ¶¶ 222-25. Alter then changes course for other statements, ████████ ████████████████████████████ also does not aid the factfinder. For example, Alter interprets, "We've been focused on well-being broadly, like I said, it's our number one priority," Alter Rep. Table 1 at 85, to mean that █████████████████████████████████████ █████████████ *id.* ¶ 149. Should these issues survive summary judgment, Alter's testimony is not helpful to the factfinder, "as it relies on common sense." *Sanchez v. Jiles*, 2012 WL 13005996,

(████████████████████████████████).

[7] To the extent Alter purports to testify from experience, he fails to establish reliability as well; for the reasons discussed *infra*, Alter's reasoning is "speculative," "flawed," and not "adequately explained." *United States v. Holguin*, 51 F.4th 841, 855 (9th Cir. 2022).

at *31 (C.D. Cal. June 14, 2012).

*Third*, in analyzing Statements B1-B7 regarding whether Meta's services are, or are designed to be, "addictive," Alter opines that ███████████████████████████████ ████████████████████████████e.  Alter Rep. ¶¶ 207, 208; *see also id.* ¶ 235.  But no one is "an expert in reading [another's] mind . . . when uttering [a word]."  *United States v. Alo-Kaonohi*, 635 F. Supp. 3d 1074, 1081 (D. Haw. 2022).

*Fourth*, Alter's consumer understanding opinions are based, in part, on the inadmissible opinions addressed above in Parts I.A and I.B.  *See, e.g.*, Ex. 7 (Alter Rebuttal Rep.) ¶ 20, Alter Rep. ¶ 57.  Because "the underlying opinions [should be] excluded, this opinion [should also be] excluded."  *See Apple*, 2023 WL 4556765, at *6.

*Fifth*, Alter does not apply the correct "reasonable consumer" standard.  *See Daubert II*, 43 F.3d at 1320-22 (excluding opinion for applying incorrect causation standard); *Pelican Int'l, Inc. v. Hobie Cat Co.*, 655 F. Supp. 3d 1002, 1023 (S.D. Cal. 2023) (excluding opinion for applying "incorrect legal standard" for patent claim).  "The touchstone under the 'reasonable consumer' test is whether the [statements] have a meaningful capacity to deceive *consumers*."  *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023) (emphasis added).  But Alter considers ███████ ██████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████████ ███████████████████  Alter Rep. ¶¶ 48-51; *see* Alter Dep. 138:13-16, presumably because many of the at-issue statements were *not* made in the context of a consumer transaction, *see* MSJ Part I.B.2.[8]  The understanding of these non-consumers is not the relevant inquiry.

**D.    Alter's Opinion That Meta's Statements Were False or Misleading Is Impermissible Factual Narrative and State of Mind Testimony That Is Not Helpful to the Factfinder (Ops. E, G)**

After determining how a reasonable consumer would supposedly understand the at-issue statements, Alter next opines that those statements are "false, incomplete, or otherwise have the tendency to mislead." Ops. E, G.  That opinion, interspersed throughout Section X, should be

---

[8] "MSJ" refers to Meta's Memorandum of Points and Authorities in support of its Motion for Summary Judgment, filed concurrently with this motion.

excluded for three reasons.

*First*, "falsity" and a "tendency to mislead" are judicially defined terms that Alter may not opine on without invading the province of the factfinder, should these claims survive summary judgment. *See, e.g., Apple*, 2023 WL 4556765, at *3 ("It is for the [factfinder] to determine both the meaning of the Statement and whether the facts indicate it was accurate."); *OCG Energy, LLC v. Shen*, 2024 WL 694912, at *10 (C.D. Cal. Feb. 12, 2024) (opinion that defendant "misled" plaintiffs or "made false representations" "improperly invade[d] the province of the [factfinder] by drawing the ultimate inference or conclusion'"); *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 558 (C.D. Cal. 2014) (expert opinion that defendant "'falsely and deceptively labeled its products' . . . [constitutes] an improper legal opinion that usurps the role of the court.").

*Second*, Alter applies no expertise that could assist the factfinder. Alter simply ██████ ████████████████████████████████████████████████████████████████████ ██████████████████████ Op. G.[9] To the extent the at-issue statements survive summary judgment, Alter's testimony merely "addresses lay matters" that a factfinder is "capable of understanding and deciding without the expert's help." *See Aya Healthcare*, 613 F. Supp. 3d at 1322.

*Third*, Alter's opinion consists almost entirely of factual narrative and/or state of mind testimony. In analyzing the AGs' factual assumptions, Alter spends dozens of pages gratuitously summarizing the documentary record and opining on Meta's knowledge and state of mind. *See* App. A. Such testimony is inadmissible. *See supra* Part I.A.

**E.    Alter Lacks a Reliable Methodology for His Opinion That Consumers Were "Exposed" to Meta's Statements (Op. H)**

Alter opines that ████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

_____

[9] For example, after opining that a consumer would understand certain statements to mean that ████ ████████████████████████████████████████████ Alter compares that understanding to contrary assumptions, including that ████████████████████████ *Alter Rep.* ¶¶ 348, 362. Alter then concludes: ████████████████████████████████████████████████████ ████████████████████████████████████ *Id.* ¶ 363. Alter performs similar comparisons for other statements. *See id.* ¶¶ 167-68, 231-32, 293-94.

8

██████████████████ Op. H; Alter Rep. ¶ 385-86. Alter's opinion lacks a reliable methodology.

In support of his opinion, Alter first analyzes ███████████████████████ ████████████████████████████████████ Alter Rep. ¶ 386. But Alter provides no explanation or authority ██████████████████████ *See id.* ¶ 386.

Alter also conducted ███████████████████████████████ ████████████████████████████ *Id.* ¶ 387. ███████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████ *See* Alter Dep. 216:2-217:6. ████████ ████████████████ *See, e.g., id.* 127:1-16; 228:9-22. Such "informal" analysis cannot reliably support expert testimony. *See Jauregui v. Daimler Truck N. Am. LLC*, 2025 WL 904744, at *2 (D. Ariz. Mar. 25, 2025) (excluding expert opinion regarding plaintiff's earning capacity "based entirely upon informal google searches" and "[p]laintiff's mere say-so"); *Nat'l Union Fire*, 2005 WL 6459866, at *4 (similar).[10]

Alter also says ████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████ Alter Rep. ¶ 392. ██████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████ *See id.*; Alter Dep. 175:4-177:15. As he conceded, ██████████████████████████████ Alter Dep. 175:4-177:15. They are "a black box into which data is fed at one end and from which an answer emerges at the other." *Open Text S.A. v. Box, Inc.*, 2015 WL 349197, at *6 (N.D. Cal. Jan. 23, 2015).

## II.     Alter's COPPA Opinions Should Be Excluded (Ops. L-P)

### A.     Alter's Opinion That Meta Intended to Attract U13s Is Improper State of Mind Testimony and Factual Narrative and Unreliable (Ops. L, M, O)

In support of his opinion that Instagram and Facebook are directed to children, Alter concludes that ████████████████████████████████████████████ ████████████████████████████████ Alter Rep. Ops. L, M, O; *see id.* Sections XVI,

---

[10] Alter's reliance on certain internal Meta documents, Alter Rep. ¶¶ 389-91, is no more reliable, as none of the internal documents discuss the at-issue statements.

9



XVII.A, XIX.A; App. A.  Those opinions should be excluded for two reasons.

*First*, they are, again, impermissible opinions about Meta's— ███████████ ████████ —intent, knowledge, or state of mind.  *See supra* Part I.A.  They are also based on Alter's extensive factual narrative of Meta's internal documents and publicly available webpages without applying any specialized knowledge or expertise.  *See supra* Part I.A.

*Second*, Alter fails to consider relevant countervailing evidence, which the Ninth Circuit has held renders an expert's conclusion unreliable.  *Engilis*, 151 F.4th at 1051-52 (affirming exclusion of expert who ignored evidence of plaintiff's obesity which might have contributed to his cancer diagnosis).  Specifically, ██████████████████████████████████ █████████████████████████████████████████████████████ *See* MSJ Part IV.A.  Alter only ███████████████████████████████ █████████, *see, e.g.*, Alter Rep. ¶¶ 359, 429, even though it directly undermines his opinion.

### B.    Alter's Opinions That Meta's Platforms Are Directed to Children Should Be Excluded (Ops. M-P)

#### 1.    Alter's Opinions Are Impermissible Legal Conclusions

"Directed to children" is a legally defined term under COPPA, which the factfinder must decide (should the COPPA claims survive summary judgment).  15 U.S.C. § 6502(a)(1); 16 C.F.R. § 312.2(1).  Accordingly, Alter may not offer an opinion that Instagram and Facebook as a whole, or portions thereof, are "directed to children," because experts may not "draw[] the ultimate inference or conclusion."  *OCG Energy*, 2024 WL 694912, at *10; *see also supra* Part I.D.

Similarly, Alter's opinion that "portions" of the platforms are directed to children rests on his incorrect and impermissible legal conclusion that a single user's account may constitute a "portion" of a website under COPPA.  While COPPA recognizes that a "portion" of a website can be U13-directed, *see* 15 U.S.C. § 6501(10)(ii), an individual user account is not considered a "portion" for purposes of COPPA.  *See* MSJ Part IV.A.2.

#### 2.    Alter Applies an Unreliable Methodology to Determine Whether the Platforms, or Portions Thereof, Are Directed to Children

Alter's opinion that Instagram and Facebook are directed to children should also be excluded because it applies an unreliable methodology.  To reach his conclusion, Alter purportedly analyzes

10

the extent to which ███████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████ Alter

Rep. ¶¶ 455, 528 (same for Facebook).  Alter's methodology is unreliable for four reasons.

*First*, whether Meta viewed ████████████████████████ *id.* ¶ 455, is impermissible state of mind testimony, *see supra* Part II.A.  Because Alter's child-directness opinion relies in substantial part on that inadmissible opinion, *see* Alter Rep. Sections XVII.A, XIX.A, his child-directness opinion is also inadmissible.  *See Apple*, 2023 WL 4556765, at *6.

*Second*, Alter impermissibly ███████████████. *See, e.g.*, Alter Rep. ¶ 534 ████

████████████████████████████████████████████████████████████████

(emphasis added).  But appealing to teens 13 or older cannot make a website child-directed, as it would impose COPPA liability for conduct lawful on its face.[11]  *See In re Novatel Wireless Sec. Litig.*, 846 F. Supp. 2d 1104, 1108 (S.D. Cal. 2012) (excluding opinion "incompatible" with the law).

*Third*, Alter's opinion is based on an unrepresentative, cherry-picked sample ████████

██████████████████████████████████████████████████████ Alter

Rep. ¶¶ 513; *see id.* Sections XVIII, XX.  ████████████████████████

████████████████████████████████████████████████████████████████

███████████████████ renders his opinion unreliable.  *See, e.g.*, *Bextra.*, 524 F. Supp. 2d at 1176 (excluding expert for "cherry-picking" and "ignoring the great weight" of contradictory evidence).

*Fourth*, Alter's ████████████████████████████████████ Alter Rep. Sections XVII.D, XIX.C, is unreliable.  Alter did not ██████████████████████████ Alter Dep. 332:21-334:15.  While he summarizes ████████████████████████

██████████████████████████████████ *See generally* Alter Rep. Sections XVII.D, XIX.C; *In re ConAgra Foods*, 302 F.R.D. at 555-56 (requiring surveys incorporated into report to be "relevant and reliable").  And he relies on vague terms from the surveys,

---

[11] In discussing features or content that appeals to teens or tweens, Alter extensively summarizes Meta documents and public sources.  *See, e.g.*, Alter Rep. Sections XVII.B.ii-iv.  If Alter intends to testify about these documents at trial, Meta reserves the right to move to exclude such testimony.

11

such as ████████████████████████ *see, e.g.*, Alter Rep. ¶ 509, which could involve U13s viewing Instagram from their parents' account, which would not implicate COPPA.

### III. Iyer's Opinions Should Be Excluded in Their Entirety

#### A. Iyer's "Mitigation" Opinions Are Too Vague to Assist the Trier of Fact and Are Not Based on a Reliable Methodology (Ops. 1, 3, 4)

Iyer was asked by the AGs to assume that ████████████████████████████ ████████████████████████ Iyer Rep. ¶ 17. Based on that assumption, Iyer then opines that Meta's existing well-being tools and features are "insufficient," "not enough," or "ineffective." *See, e.g.*, *id.* ¶¶ 41, 44, 48; *see also* Op. 3-4. He then concludes that his recommended changes "will mitigate" those negative experiences. Op. 1. These "mitigation" opinions should be excluded for two reasons.

*First*, Iyer does not define "sufficient" or "effective" mitigation. *See Innovation Ventures, LLC v. Custom Nutrition Labs., LLC*, 2021 WL 12255004, at *17 (E.D. Mich. Sept. 29, 2021) ("[A]n arbitrary and undefined definition of [the term] 'significant' cannot meet the reliability standard demanded under *Daubert*."). Iyer explained only that █████████████████████ ██████████ Ex. 8 (Iyer Dep.) 146:6-147:11, but ████████████████ *id.* 313:24-314:8. Iyer could not say, for example, █████████████████████ ██████████████████████ *id.* 125:15-129:11, or whether ████████████████████████████████████████, *id.* 292:9-293:4.[12]    Nor could he explain ████████████████ ████████████████████ *see* Iyer Rep. ¶ 38—d██████████ ████████████.

Iyer's framework is entirely subjective. Iyer Dep. 184:13-185:9 ████████████ ████████████████████████████████ ████████). If Meta were to implement his proposals, there would be no way for anyone—a factfinder, Meta, or Iyer himself—to assess whether "sufficient" mitigation had been achieved. This falls far short of the scientific rigor required. *See Georges v. Novartis Pharms. Corp.*, 2013 WL

---

[12] *See also* Iyer Dep. 147:13-148:8 ("I have not formed an opinion as to the exact percentage" of sufficient harm mitigation).

12

5217198, at \*16 (C.D. Cal. Apr. 4, 2013) (excluding opinion that medical condition is "rare" because term is "subjective, based on . . . personal opinion, and undefined in the scientific literature").

Devoid of any reliable standard, Iyer's mitigation opinion is common sense that does not aid the factfinder. *Sanchez,* 2012 WL 13005996, at \*31. He merely (i) assumes that some features cause negative experiences; and (ii) concludes removing or changing those features would "mitigate" ███████████████████████████████████████████. Just as it is common sense that opening an umbrella would "mitigate" getting soaked in the rain, it is—as Iyer ████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████ Iyer Dep. 275:1-18.

*Second*, Iyer's "mitigation" opinions are not based on reliable principles or methods. Iyer fails even to identify the methodology he purportedly used to reach his conclusions, ████████ ████████████████████████████████████████████████████████████████ ███████████████████████ *See* Iyer Rep. Section III.B. Iyer did not determine ██████████ ████████████████████████████████████████████████████████ *Id.* ¶ 15. He performed no testing or analysis to show that █████████████████████████████████ ██████████████████████ *See, e.g.*, Iyer Dep. 132:12-133:4, 421:23-422:14. Iyer ████████ ███████████████████████████████████████████ of this purported effect, but failed to do so. *Id.* 190:23-191:10. Nor did Iyer ████████████████████████████████████████ ████████████████████████████████ The *only* research he reviewed was that which ██ ██████████████████████████████ *Id.* 270:2-10, 391:13-392:5. That is textbook cherry-picking. *See Bextra.*, 524 F. Supp. 2d at 1176 (excluding expert who "reache[d] his opinion by first identifying his conclusion . . . and then cherry-picking observational studies that support[ed] his conclusion and rejecting or ignoring the great weight of the evidence that contradict[ed] his conclusion."). Iyer's methodology, if it exists, cannot be and has not been tested. *Grodzitsky v. Am. Honda Motor Co., Inc.*, 957 F.3d 979, 985-86 (9th Cir. 2020). It has not been subject to peer review and does not derive from any academic literature. *Id.* Iyer provides no rate of error, and he cites no evidence that his methodology is generally accepted in any field. *Id.* His opinions are far afield from any reliable

13

principle or method that Rule 702 requires, and should be excluded.

**B.      Iyer's "Feasibility" Opinion Is Not Based on a Reliable Methodology (Op. 2)**

Iyer's "feasibility" opinion posits that his recommended changes are "feasible" for Meta to implement.  Op. 2.  That opinion is not supported by any discernible methodology.  Iyer provides no benchmark, definition, test, or framework for his determination of what is, or is not, "feasible."  He uses no yardstick from any academic literature, objective criteria, or data to measure his proposals.  That is textbook *ipse dixit*.  *See In re Toyota Motor Corp.*, 978 F. Supp. 2d 1053, 1067 (C.D. Cal. 2013) (excluding expert's opinions that "are not based on a reliable foundation or methodology . . . [and] amount to . . . *ipse dixit*").

The only purported support for Iyer's conclusion ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *See, e.g.*, Iyer Rep. ¶¶ 34-35, 54, 57, 60; Iyer Dep. 220:3-16, 339:1-25, 340:20-341:13.  But Iyer fails to provide any methodology ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *See, e.g.*, Iyer Dep. 220:11-16, 374:7-375:3 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).  All Iyer did was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and conclude that it was "feasible" for Meta to implement the same.  That is not a reliable methodology.  It has not been tested, peer-reviewed, or generally accepted in any field and hides unknown rates of error.  *See Grodzitsky*, 957 F.3d at 985-86.  The result is "a black box into which data is fed at one end and from which an answer emerges at the other." *Open Text S.A.*, 2015 WL 349197, at *6.

**CONCLUSION**

For the foregoing reasons, Meta respectfully requests that the Court grant its motion to exclude the opinions of Dr. Alter and Dr. Iyer.

Dated:  January 30, 2026

Respectfully submitted,

DAVIS POLK & WARDWELL LLP

*/s/ Antonio J. Perez-Marques*

James P. Rouhandeh, *pro hac vice*
Antonio J. Perez-Marques, *pro hac vice*
Caroline Stern, *pro hac vice*
Corey M. Meyer, *pro hac vice*
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
rouhandeh@davispolk.com
antonio.perez@davispolk.com
caroline.stern@davispolk.com
corey.meyer@davispolk.com

COVINGTON & BURLING LLP

Ashley M. Simonsen, SBN 275203
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-2749
asimonsen@cov.com

Paul W. Schmidt, *pro hac vice*
Phyllis A. Jones, *pro hac vice*
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
pschmidt@cov.com
pajones@cov.com

*Attorneys for Defendants Meta Platforms, Inc.
and Instagram, LLC.*

15