[*Submitting Counsel on Signature Page*]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THIS DOCUMENT RELATES TO: | MDL No. 3047 |
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | Case Nos. 4:22-md-03047-YGR-PHK |
| | 4:23-cv-05448-YGR |
| ------------------------------------------------------------ | **STATE ATTORNEYS GENERAL REPLY TO META TRIAL STRATEGY BRIEF RESPONSE** |
| *People of the State of California, et al. v. Meta Platforms, Inc., et al.* | Judge: Hon. Yvonne Gonzalez Rogers |
| | Magistrate Judge: Hon. Peter H. Kang |

I.    **INTRODUCTION**

A single, consolidated jury trial of the State AG claims remains the most appropriate and efficient course, and it should follow promptly after the initial school district bellwether trial. Meta's proposal brings this suit no closer to resolution: it offers no plan to resolve the core COPPA claim, its choice of initial states is unlikely to create the highest likelihood of resolution, and piecemeal trials of three states at a time will mean years of repetitive litigation. At a minimum, the COPPA claim and a subset of the consumer protection claims should be tried together in an initial AG trial.

Meta's arguments about juror confusion and prejudice are unfounded. The evidence in this case concerns Meta's uniform conduct and nationwide practices. The distinctions among the relevant state consumer protection laws are not significant enough to require separate trials. The State AGs have

developed comprehensive jury instructions that address state-specific variations in consumer protection laws and provide clear guidance for the jury. These instructions, combined with structured verdict forms, are a reasonable and effective means of managing complexity, particularly when weighed against a series of duplicative trials that would waste resources and delay resolution. Variations in legal standards—whether related to deception, unfairness, or mental state—are fully accounted for in the proposed jury instructions. Importantly, there is no category of evidence that would be admissible for one state's claims but impermissible for another.

Further, Meta's arguments about state-specific evidence that it may introduce in its defense are a red herring. This evidence—which deals with the actions, inactions, and beliefs of state agency employees—is flatly irrelevant to the key questions of this case: whether Meta violated COPPA and engaged in unfair and deceptive business practices. To the extent Meta argues that the evidence is relevant to certain affirmative defenses, those defenses are inapplicable to government enforcers litigating consumer protection claims. And that evidence—including the 137 witnesses Meta intends to call—is prejudicial, confusing, and needlessly cumulative.

Finally, Meta has repeatedly and unequivocally demanded a jury trial throughout this litigation, and the State AGs have relied on that demand in shaping their strategy, selecting experts, and preparing evidence. Under well-established federal rules and case law, a valid jury demand cannot be withdrawn unilaterally, and the State AGs do not consent.

## II.    <u>META'S TRIAL PROPOSAL SHOULD BE REJECTED, AND, AT A MINIMUM, THE COPPA CLAIM AND A SUBSET OF THE CONSUMER PROTECTION CLAIMS SHOULD BE TRIED TOGETHER.</u>

Meta objects to any AG trial consisting of more than one state's consumer protection claims but proposes a grouping of three states' consumer protection claims solely for the purpose of their trial planning submission, namely, Colorado, Kansas, and Kentucky.  Meta's Response to Letter Br. by State Attorneys General Regarding Trial Strategy, ECF 2645 ("Meta Response") at 2, n.1. This proposal is arbitrary, wasteful, and prejudicial to the State AGs and does not demonstrate any good faith effort to propose a workable trial plan.

*First,* Meta's proposal reflects an arbitrary parsing of states' laws, and by Meta's purported logic, many other states meet the criteria Meta set forth for states' claims being tried together. On one hand, Meta claims that Colorado, Kansas, and Kentucky "either require ***or*** consider actual falsity for deception." *Id.* at 27 (emphasis added). On the other, Meta insists—incorrectly—that it would be prejudicial for jurors to consider falsity alongside the capacity to deceive. *Id.* at 6–7. That is an irreconcilable argument: Meta concedes these elements coexist in the very states whose claims it proposes to try together.

Moreover, elsewhere Meta claims that *other* states—including Minnesota[1] and New Jersey—either consider or require falsity, *id.* at 7 & n.7, but it does not include them in its proposal. Meta even admits that falsity relates to capacity to deceive, citing South Carolina law: "testimony will show, *among other things*, that alleged misstatements were not *false* and thus had no 'capacity to deceive.'" *Id.* at 21 (emphasis added). Regarding the element of intent, whether correct or not, Meta's own pre-motion filing identifies 10 states[2] with intent requirements for their deception claims, unfairness claims, or both. Meta Ltr. Br. re Anticipated MSJs and 702 Motions, ECF 2466, at 1–3. Finally, Meta suggests that Colorado, Kansas, and Kentucky are unique in applying a reasonable consumer standard, Meta Response, ECF 2645, at 27, but several other states also assess deception against the reasonable consumer. *See* Letter Br. By State AGs Regarding Trial Strategy, ECF 2626 ("AG Trial Strategy Br."), at 12 n.7. In short, Meta's argument based on their arbitrary criteria is not only inconsistent—it is irrelevant. State-by-state jury instructions already account for these nuances.

*Second*, Meta's proposal exhibits a disregard for judicial efficiency and provides no realistic roadmap to resolve this case in its entirety. Trials of the consumer protection claims of only three states at a time—as Meta suggests—would not only be entirely duplicative in terms of the evidence put forward but also would be cumbersome to the Court. Moreover, Meta's proposal completely fails to address the COPPA claim that (1) is identical as pled by all 29 states engaged in this litigation; (2) provides this Court

---

[1] To the extent Meta argues that Minnesota's law requires falsity (as opposed to considering it), that is incorrect because the Minnesota Deceptive Trade Practices Act "prohibit[s] false or misleading representations which have a tendency to deceive." *See Minnesota Min. & Mfg. Co. v. Rauh Rubber, Inc.*, 130 F.3d 1305, 1309 (8th Cir. 1997).

[2] Meta identifies California, Colorado, Illinois, Indiana, Kansas, Kentucky, Louisiana, New Jersey, Pennsylvania, and Virginia as requiring intent.

with jurisdiction to hear this case; and (3) is inextricably intertwined with the consumer protection claims that 18 State AGs allege.

The COPPA claim should be heard in its entirety in any first trial of AG claims. The Court has recognized, and Meta has acknowledged, that there is "one COP[P]A claim." CMC Tr. (Oct. 24, 2025), 24:18–22 (further noting that the COPPA claim has "one set of elements" and is "one claim based upon nationwide conduct"). Meta does not—and cannot—dispute that there is no state-by-state variation in either the relevant legal elements or the evidence to be presented for COPPA liability.[3] It thus faces no risk of prejudice or juror confusion, and the alternative—multiple trials of the exact same claim—is the definition of inefficiency.

*Third*, with respect to the consumer protection claims, Meta's proposal of a three-AG trial involving Colorado, Kansas, and Kentucky is not only arbitrary and wasteful but also prejudicial to the State AGs. Any initial trial of AG claims *must* include the four lead State AGs—California, Colorado, Kentucky, and New Jersey—half of which Meta arbitrarily excluded in a transparent attempt to sideline the attorneys who have litigated this case since its inception. The exclusion of California is particularly egregious: California is both the home jurisdiction of Meta and the forum of this Court. Because the lead State AGs function as the coalition's lead counsel, they must be included in any opening AG trial, which will set the model for future MDL AG trials. Moreover, the lead State AGs are representative of the AG coalition, and reflect the geographical, political, and cultural diversity of the group as a whole.

While the State AGs maintain that trying all claims together is feasible and sufficiently protective of all parties' interests, a trial limited to COPPA and a subset of the AGs' consumer protection claims would significantly lessen the supposed potential for juror confusion or prejudice, even under Meta's view. For example, a trial of six or nine State AGs' consumer protection claims—representing one-third or one-half of the AGs asserting consumer protection claims in this MDL—will provide substantially more information for potential settlement discussions than a trial of three. Groups of at least six states will

---

[3] The remedies that the State AGs seek pursuant to COPPA are also uniform. The State AGs seek the same injunctive relief. Monetary relief will be calculated in a standardized manner across the State AGs, and the resulting amounts will vary only based on the number of users and usage metrics.

also significantly reduce the total number of trials necessary to resolve all claims if no settlement is reached.

III.     **THE AG TRIAL SHOULD BE SCHEDULED AFTER THE FIRST SCHOOL DISTRICT BELLWETHER TRIAL.**

There is substantial strategic and practical value in setting any initial AG trial after the first school district bellwether trial, particularly with respect to facilitating a potential global resolution of the claims in this MDL and related state-court actions. Meta's position—that the Court should indefinitely postpone scheduling the trial—is a mere delay tactic. Meta's arguments in support of this tactic are misguided at best and nonsensical at worst.

Meta's suggestion that the Court must wait until after summary judgment motions or the Ninth Circuit appeal are fully adjudicated to set a trial date is unwarranted and inconsistent with this Court's approach to scheduling. The Court has proceeded to plan trials for school district bellwether cases (and has even scheduled the first bellwether case for trial in June) even though summary judgment motions in those cases remain pending, and despite the fact that those motions may significantly affect the structure of those trials. Likewise, both the AGs and the school district plaintiffs are parties to the appeal and cross-appeal, and Meta provides no reason why the AG case is differently situated.

Further, waiting for two state-court AG trials to conclude (New Mexico and Tennessee, currently set for 2026) would be inefficient and misguided, as their narrow issues and distinct legal theories cannot substitute for the comprehensive resolution that only this State AG case can provide.  The New Mexico AG's trial is partially a bench trial, and Meta has objected to the Tennessee AG's jury demand. *See* CMC Tr. (Aug. 22, 2025), ECF 2240, at 60:3–18. As such, the full outcome of these trials may not be known for months. Moreover, there are key distinctions between these cases and the MDL AG case: for example, neither state-court case has a federal COPPA claim, the New Mexico case focuses on child safety issues such as CSAM, and the Tennessee case does not include key theories advanced by the MDL AGs, such as deception based on the visibility of "likes." More fundamentally, these cases involve *2 separate* State AGs litigating individually, rather than the *29 unified* State AGs involved in this case. The resolution of MDL AG claims—even if an initial trial comprises fewer than all 29 AGs—will be enormously

1  consequential to any potential resolution of not only AG claims nationwide but also the claims of personal

2  injury and school district plaintiffs.

3      Finally, any question as to the scope of issues to be tried to the jury as opposed to the Court is not

4  a barrier to setting the AG case for trial. Any trial would not occur until later in 2026, giving the parties

5  ample time to confer and brief disputed issues, and for the Court to resolve any remaining disagreements.

6  **IV.**    **ANY RISK OF JUROR CONFUSION AND PREJUDICE IS ADEQUATELY**

7      **ADDRESSED THROUGH COMPREHENSIVE AND DETAILED JURY**

8      **INSTRUCTIONS, SIGNIFICANTLY OUTWEIGHED BY THE INEFFICIENCY OF**

9      **SEPARATE AND DUPLICATIVE TRIALS, AND UNSUPPORTED BY THE**

10      **AUTHORITIES CITED BY META.**

11      Meta gestures vaguely to concepts of juror confusion and prejudice as a pretext to advance a trial

12  plan that would be highly duplicative, fraught with delays, and enormously burdensome on the Court,

13  the parties, and the witnesses. To be clear, the State AGs do not dispute that this will be a complex trial;

14  however, the fact remains that the State AGs will present a *single* body of evidence addressing every

15  element of each claim in this case and, with the Court's guidance, have prepared detailed jury

16  instructions to clarify the questions for each count.

17      **A.**    **Differences in state law do not impact admissibility of probative evidence.**

18      Differences among state law elements do not create confusion because the parties have already

19  prepared detailed instructions to guide the jury through all counts in one proceeding. Fourteen states

20  share the same core question—whether Meta's conduct had the capacity, tendency, or likelihood to

21  deceive a reasonable consumer—and where additional elements apply, the instructions explain them

22  individually. Meta does not dispute that the single presentation of evidence satisfies every state-specific

23  requirement, and every distinction Meta cites is addressed in the instructions.[4] The same is true for

24  unfairness standards and mental state requirements; the instructions define each test, explain nuances

25  among states, and set out all mens rea standards. Far from causing confusion, these instructions ensure

---

26

27  [4] As just a few examples, the instructions clearly explain Colorado's falsity requirement, *see* ECF 2313-1 at 21–24, Delaware's sponsorship language, *id.* at 47, New Jersey's alternative liability pathways, *id.*

28  at 109–10, and more.

clarity and accuracy on a state-by-state basis, making a single jury trial not only feasible but the most efficient and fair approach.

Meta's opposition never explains why the detailed jury instructions fail to address its concerns about juror confusion. Nor does Meta meaningfully confront the State AGs' showing that any hypothetical prejudice is far outweighed by the probative value of the evidence. Meta offers no reason why a jury cannot follow state-specific instructions and evaluate a unified evidentiary record.

The State AGs' claims relate to three overarching evidentiary storylines: 1) all State AGs have asserted a claim under COPPA, related to under-13 users and Meta's business practices related to those users, 2) eighteen states have claims under deception statutes, where the evidence will demonstrate that Meta deceptively sought to reassure consumers that the company prioritizes health and safety over business interests, downplayed the addictiveness of its platforms, downplayed the safety risks of its platforms, and misled the public that it was keeping under-13 users off its platforms, and 3) sixteen states have claims under unfairness statutes, where the evidence will center on Meta's design, implementation, and maintenance of four discrete features: appearance-altering filters, time restriction tools, the multiple accounts function, and Meta's age verification tools.

### 1.     The COPPA claim will be evaluated on evidence relevant to the State AGs' other claims.

The COPPA claim is asserted by all State AGs, has one set of elements and is based upon nationwide conduct, with no risk of juror confusion or prejudice to Meta. Importantly, this evidence is also relevant to the claims under the State AGs' respective deception and unfairness statutes. In particular, the State AGs intend to prove that Meta misled the public that it was keeping under-13 users off its platforms, and that Meta violated states' unfairness laws in its design, implementation and maintenance of Meta's age verification tools.  Trying these related claims together increases efficiency.

### 2.     Deception claims will be evaluated on the same evidence.

After hearing evidence related to Meta's public messaging and Meta's internal operations, a jury can manage determining whether Meta's conduct has the capacity, tendency, or likelihood to deceive,

including whether, in fact, the conduct was shown to be actually false.[5] While the State AGs will not address each misstatement of state standards contained in Meta's response within this reply, we do note that, for example, Meta misidentifies the enumerated violations under certain states' laws as heightening the State AGs' threshold for liability.[6] This is a common formulation of consumer protection law, where a statute enumerates specific misrepresentations prohibited by law, in addition to a broader prohibition on any deceptive act or practice.[7] The same evidence of what Meta said or omitted about its platforms is relevant and admissible for all theories. Meta's vague point about differing definitions of deception fails to substantiate how those variations matter to the four categories of deceptive conduct at issue.

### 3. Unfairness claims will be evaluated on the same evidence.

The evidence related to the State AGs' claims for unfairness or unconscionability should be presented together, and the application of the factors under each states' law can be assessed by the jury according to the specific instructions for the claims at issue.

Meta expresses a concern that application of the *Sperry* factor related to conduct offending public policy would be confusing for jurors, but any distinctions are detailed in the jury instructions, and

---

[5] **Colorado** may establish either a misrepresentation or that the false representation had the capacity or tendency to deceive, even if it did not. *See* Initial Letter Br. By State AGs Regarding Trial Strategy, ECF 2541 ("Initial AG Trial Strategy Br.") at 12, n. 7; ECF 2313-1 at 22. For Kansas and Minnesota, falsity is one method of establishing a violation, but it would be sufficient to demonstrate the tendency or capacity to deceive. *See Smith v. Gateway Ford-Mercury, Inc.* No. 58,610, 1987 WL 1496941 at *7 (Kan. Ct. App. Aug. 13, 1987) (affirming jury instruction) **(Kansas);** ECF 2541 at 12, n. 7.; 2313-1 at 95–96 **(Minnesota).**

[6] *See* Meta Response, ECF 2645 at 7. Delaware asserts claims under both the Delaware Deceptive Trade Practices Act and the Delaware Consumer Fraud Act, which has a more expansive standard. Am. Compl., No. 23-CV-05448, ECF 207, at ¶ 907, 916-917; Initial AG Trial Strategy Br., ECF 2541 at 13, n.8 (Delaware's claims under two laws). Meta mischaracterizes New Jersey law in a similar way. *See Gennari v. Weicher Co. Realtors,* 148 N.J. 582, 605, 691 A.2d 350, 365 (1997) ("One who makes an affirmative misrepresentation is liable even in the absence of knowledge of the falsity of the misrepresentation, negligence, or the intent to deceive.").

[7] *See, e.g.*, Am. Compl. at ¶ 968 and Ind. Code § 24-5-0.5-3(b)(1) (identifying as a deceptive act a representation that the subject of a consumer transaction has characteristics, uses, or benefits it does not have).

1   the differences are not determinative. The examples cited by Meta are nearly identical language and

2   Meta makes no meaningful distinction between them.[8]

3          **4.**      ***Evidence for other relevant elements will be encompassed in the presentation of***

4                   ***the claim elements above.***

5       Meta also expresses a concern that evidence concerning trade, commerce, or business elements

6   would cause juror confusion. Meta Response, ECF 2645 at 11. The examples provided do not reveal any

7   basis for this position. The evidence to be presented will demonstrate how Meta engages in its business

8   in designing, promoting, and providing its services to millions of users nationwide and will readily meet

9   each of the specific trade or commerce requirements for purposes of multiple state statutes.

10       As to the elements of knowledge, intent, and other mental states, Meta misstates the

11   requirements of many states' laws and overstates how any differences among those laws impacts this

12   case. For some State AGs, Meta increases the burden,[9] and in others, Meta asserts an obligation that

13   does not exist.[10] With respect to the elements of knowledge and intent for other states' penalty

14   provisions, these are specifically described in the proposed jury instructions. Meta failed to engage

15   meaningfully with the jury instruction packets proposed by State AGs and did not identify specific

16   categories or pieces of evidence that would be impermissible for certain claims due to any slight

17   differences in statutory language.

---

[8] *See* Meta Response, ECF 2645 at 8–9; ECF 2313-1 at 37 **(Connecticut)**, 103 **(Nebraska)**. Both states prohibit practices offending public policy or concepts of unfairness based on common law, statute, or other established concept of unfairness.

[9] *See* Meta Response, ECF 2645 at 12 n.15; ECF 2313-1 at 16–17 **(California)** (instructs jury to find whether statement was "made about Meta's services *or* for purposes of inducing the public" to use them); ECF 2313-1 at 41–43 **(Delaware)** (intent requirement is particular to concealment, omission, or suppression of a material fact); *Stephenson v. Capano Dev.*, 462 A.2d 1069, 1074 (Del. 1983) (The Consumer Fraud Act generally does not require a defendant "intended to misrepresent or to make a deceptive or untrue statement"; intent is only required for omissions theory for Delaware claims).

[10] *See, e.g.*, Meta Response, ECF 2645 at 14, n.20 (asserting **Illinois** requires intent for any civil penalties), 13, n.16 (asserting that **Connecticut** and **South Carolina** allow for liability and civil penalties, respectively, based on what the defendant "knew or should have known"); *contra* 815 ILCS § 505/7(b) (intent to defraud entitles Illinois to *enhanced* per violation penalties); Conn. Gen. Stat. § 42-110o(b) (intent is relevant to penalties, not liability); SC Code § 39-5-110(a) (civil penalties for willful violations).

**B.    The authorities cited by Meta do not support the likelihood of juror confusion or prejudice in this case.**

Meta relies almost exclusively on cases applying Rule 23's class certification standard, which is a materially different inquiry from the trial-management question presented here. None of the cases Meta cites holds that differences among state laws render claims incapable of being tried together. Instead, they reflect the well-settled principle that private plaintiffs seeking a nationwide class must affirmatively demonstrate all four prerequisites under Rule 23(a) and at least one of the prerequisites under Rule 23(b). *See e.g.*, *DZ Rsrv. v. Meta Platforms, Inc*., 96 F.4th 1223, 1232 (9th Cir. 2024). This demanding standard was designed to protect absent class members and defendants alike and has no direct application where, as here, sovereign plaintiffs elected to proceed in one case on their own claims and proposed state-specific jury instructions tailored to the governing law for their unified trial.

Meta's reliance on *Banh v. Am. Honda Motor Co., Inc.* underscores the mismatch. There, the court declined to certify express warranty claims precisely because the plaintiffs failed to propose a "suitable and realistic plan for instructing the jury on the applicable legal standards at trial."  2020 WL 4390371, at *8 (C.D. Cal. July 28, 2020). Meta quotes the court's concern about complex jury instructions while ignoring the dispositive distinction: unlike the plaintiffs in *Banh*, the State AGs have done exactly what the *Banh* court found lacking. We have proposed detailed state-specific jury instructions that delineate the relevant differences in state law and guide the jury through each element of each claim. The same flaw pervades Meta's invocation of *In re Zyprexa, In re McCormick & Co., Inc., In re Paxil Litig.,* and *In re Celexa & Lexapro*. Each arose in the Rule 23 context, where plaintiffs bore the burden of proving that claims governed by many states' laws could be litigated on a class wide basis without sacrificing commonality or predominance. *See* 2008 WL 2696916 (E.D.N.Y. July 2, 2008);  422 F. Supp. 3d 194 (D.D.C. 2019); 212 F.R.D. 539 (C.D. Cal. 2003); 291 F.R.D. 13 (D. Mass. 2013) In *Zyprexa*, for example, the court did not conclude that the state law claims could not be tried together; it concluded only that "[d]ifferences among applicable state laws are barrier to class certification." 2008 WL 2696916, at *138. Critically, the court contrasted the plaintiffs' proposal, which relied on "broad jury instructions that sweep together the law of up to forty-one states" with what is required to respect state-law variation. *Id*. That criticism does not apply here. The State AGs are not asking the jury to apply a homogenized body of law.

We have proposed individualized instructions for each state, expressly accounting for material differences rather than eliding them. None of Meta's Rule 23 cases addresses—much less rejects—this approach.

Nor do Meta's remaining authorities demonstrate a cognizable risk of juror confusion or prejudice in this case. Decisions such as *Quint v. Vail Resorts, Inc.* and *AAA Max 1 Ltd. v. Boeing Co.* turn on circumstances that are not present here, including the introduction of evidence that would be legally "forbidden" as to certain claims, *see* 2023 WL 5564724, at *3 (D. Colo. July 11, 2023), or the spillover risk created by fraud allegations applicable to only some parties or transactions, *see* 2025 WL 2599927, at *2 (W.D. Wash. Aug. 13, 2025).  Similarly, the cases Meta cites in seeking bifurcation are either inapposite or misleading. *See* Meta Response, ECF 2645, at 5 (citing *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 602–03 (9th Cir. 2016) (evidence of a deceased party's gang affiliation was irrelevant and prejudicial to his estate's Section 1983 claims); and *Palm Springs Med. Clinic, Inc. v. Desert Hosp.*, 628 F. Supp. 454 (C.D. Cal. 1986) (involving supplemental jurisdiction over pendant state law claims and not discussing bifurcation)).

Concerns of "forbidden" or even prejudicial evidence are simply not relevant in this case, where the evidence the State AGs intend to present is admissible across the claims at issue and directed to a uniform course of conduct. In other words, evidence relevant to intent, willfulness, or other mental states is not rendered inadmissible merely because some states do not require proof of a heightened mental state, because that evidence is also relevant to show the underlying deceptive and unfair conduct that all states must prove. In the end, Meta's cases do not substantiate its claims that a single trial will confuse the jury or prejudice Meta. The cases show only that courts applying Rule 23 scrutinize whether private plaintiffs have met the different prerequisites for class certification–a question entirely distinct from whether a jury, equipped with detailed instructions and a structured verdict form, can fairly adjudicate the State AGs' claims.

## V.    THE PURPORTED NEED TO INTRODUCE STATE-SPECIFIC EVIDENCE DOES NOT JUSTIFY SEVERANCE.

### A.    State-Specific Evidence Is Irrelevant to the Claims and Defenses at Issue in This Case.

As a fundamental matter, state-specific evidence concerning a state's own conduct has no bearing on Meta's liability and cannot justify severance. All claims arise from Meta's uniform conduct and common product features—not state-specific actions—and the core liability questions are identical across states: whether Meta (1) violated COPPA and (2) engaged in deceptive or unfair trade practices. Meta's platforms, policies, and representations were standardized nationwide, and the evidence of Meta's design choices, safety features, and marketing applies equally to every state in this litigation. With respect to the consumer protection claims, every lay witness, expert witness, and exhibit introduced at trial by the State AGs will apply to those claims collectively—not to any standalone claim or state. The State AGs will not seek, at any point during trial, an instruction limiting any evidence to a specific claim or state.

Meta's assertion that state-specific witnesses are necessary to negate the State AG claims is baseless. *See* Meta Response, ECF 2645, at 20-21 (asserting that testimony of state witnesses will negate a finding that Meta's conduct was likely to cause substantial injury to consumers, or that Meta's conduct was unconscionable). The State AGs need not prove whether individual state employees were aware of Meta's conduct or that it was likely to cause substantial injury, nor are the State AGs required to prove that any state had commissioned a study related to social media. The State AGs will present evidence at trial for the factfinder to determine Meta's conduct and its impact. In other words, an individual state employee's awareness of an element to the claim does not tend to prove or disprove the element of the claim.

Further, testimony from the state witnesses identified by Meta would be relevant only if Meta's asserted affirmative defenses actually applied to the claims at issue—and they do not, as previously discussed. *See* Initial AG Trial Strategy Br., ECF 2541, at 20.  Although Meta states that "this is not the appropriate juncture to determine the merits of Meta's affirmative defenses," Meta Response, ECF 2645,

at 20, the fact that Meta is using the volume of witnesses it argues is necessary to support its affirmative defenses as a basis for bifurcation has put the validity of its affirmative defenses at issue.

**B.    State Specific Evidence is Needlessly Cumulative, Prejudicial, and Confusing to the Jury.**

The testimony of the 137 state witnesses that Meta intends to introduce at trial is irrelevant for all the reasons previously set forth. In addition, the testimony is needlessly cumulative, prejudicial, and confusing to the jury. Meta's reliance on over 100 witnesses does not advance the resolution of the claims. Instead of deeming Meta's bloated list of state witnesses as grounds to sever the AG case, the Court should weigh proportionality, avoid unnecessary delay, and recognize Meta's gamesmanship.

These witnesses are being offered to testify to facts of very low probative value, and which are not subject to any serious dispute. Permitting this largely uncontested and low probative value evidence to drive trial structure decisions would be to let the tail wag the dog.

The examples of state witness testimony that Meta cites in its Response confirm this conclusion. The three quoted witnesses are cited to support the premise that "states have not conducted research concerning the alleged harms of social media for teen users, and that they are not aware of any data linking social media and negative mental health harms for teen users in their states." Meta Response, ECF 2645, at 21. But whether any such data was gathered is irrelevant to whether Meta engaged in deceptive or unfair business practices, and the introduction of this testimony at trial would only serve to confuse the jury.

Consider Meta's reliance on statements in Connecticut. Meta quotes the Chief Administrator of Connecticut's Department of Children and Families as an "example" of what these 137 witnesses would supposedly say in Meta's defense. Ms. Hill-Lilly did confirm, as stated by Meta, that she has never collected data showing Facebook or Instagram caused mental health harms in Connecticut and is unaware of the State collecting such data. Meta Response, ECF 2645, at 20–21. However, Ms. Hill-Lilly's lack of awareness of research or outcomes has little to no probative value with respect to the State's claims or Meta's defenses, and such testimony would be confusing to the jury and prejudicial to the AGs. The other state witnesses identified by Meta similarly testified as having no awareness or

involvement with this case or, more broadly, data on the mental health impacts of social media, again

rendering their testimony irrelevant, confusing, and prejudicial.[11]

Given the deep bench of state witnesses Meta had to choose from, its selection of these witnesses as exemplars is telling. If this is a true representation of the utility of this testimony, the inclusion of 137 such witnesses would force the State AGs and this Court to address extensive efforts to exclude or limit redundant and irrelevant testimony—an unnecessary burden that undermines efficiency and fairness. At the very least, the specter of this irrelevant, confusing, and prejudicial testimony should not drive the Court's decisions regarding trial structure.

## VI.    THE JURY DEMAND REMAINS IN EFFECT

Meta unequivocally demanded a jury trial at the outset of this litigation and reaffirmed that demand no less than four times. During a hearing on its Motion to Dismiss, Meta argued to this Court that it was entitled to a jury and that it was not waiving that right. *See* CMC Tr. (Feb. 23, 2024), ECF 669, at 79:9–12 ("MR. HESTER: [A]s to the liability phase, we're entitled to a jury trial. At this point, we're not—we're simply being clear, we're not waiving our right to a jury trial. And we believe we have one as a matter of Seventh Amendment right…."). Meta formally demanded a jury in its Answer and Amended Answer, and as recently as August of 2025 reaffirmed that position. CMC Tr. (Aug. 22, 2025), ECF 2240, at 64:5–9 ("MR. ROUHANDEH: We do have a right to jury trial. We will consider that. We'd like to know what the trial would look like before we consider whether we would waive that potentially and have a bench trial.").

Meta has never moved this Court to withdraw that jury demand but now appears to be taking the position in its footnotes that a jury trial is inappropriate as to some or all of the claims. *See* Meta Response, ECF 2645, at 3 n.3 ("Meta disputes that any of the AGs' claims should be tried to a jury. However, for purposes of facilitating trial planning, Meta's proposal assumes a scenario where at least

---

[11] *See Ex A*, Fletcher Dep. Tr. 48:6–7, 51:11, , ("I personally have not asked anyone to collect that type of data" and "I'm not aware of any data" showing that Facebook or Instagram caused mental health harms in adolescents); *Ex. B*, Barton Dep. Tr. 14-15 and 51-53, (testifying that, before being subpoenaed for deposition, no one from the South Carolina AG's office had spoken with her regarding the mental health allegations in this case and that she had no knowledge of any research being conducted in South Carolina on social media and mental health).

some of the AGs' claims are tried to a jury."). Meta has never met and conferred on this apparent change in position, and the State AGs do not consent. *See* Fed. R. Civ. P. 38(d) ("A proper demand may be withdrawn only if the parties consent."); *see also Ross Dress for Less, Inc. v. Makarios-Oregon, LLC*, 39 F.4th 1113, 1120 (9th Cir. 2022) ("A party is generally entitled to rely on another party's original jury demand and need not file their own.").

The State AGs have relied on Meta's jury demand in making strategic decisions and allocating litigation resources: selecting expert witnesses with a jury in mind, developing the factual record and requesting discovery to obtain evidence that would make sense to a jury, and investing significant time drafting and exchanging comprehensive jury instructions, analyzing the likely jury pool, and developing themes and strategies. Further, this Court and the State AGs have now engaged in multiple rounds of briefing regarding jury instructions.

Additionally, Meta's proposal to sever the AG trial into remedies and liability phases is not determinative of the trial management question before the Court. Much of the evidence supporting liability and remedies substantially overlap. For example, expert Adam Alter will testify that Meta engaged in deceptive practices and misled consumers through drumbeat messaging-a scheme involving many statements across different fora and speakers. That same evidence supports penalties once liability is proven. *See, e.g.*, Cal. Bus. & Prof. Code § 17206 (including "the number of violations, the persistence of the misconduct, [and] the length of time over which the misconduct occurred" as factors in setting civil penalties). Likewise, the same internal documents and fact witness testimony discussing harms that youth experience on Meta's platforms and the company's knowledge of those harms are evidence of both liability on the AGs' deception and unfairness claims and the company's willfulness, which is relevant to penalties in many states. Testimony that is truly specific to the remedies sought by the AGs will be presented to the Court while the jury is deliberating.

## VII.    **CONCLUSION**

Meta's claims of juror confusion and prejudice fail. The case turns on Meta's uniform, nationwide conduct. Differences in state law are fully addressed through tailored jury instructions and structured verdict forms—tools far superior to duplicative trials. No evidence is admissible for one state

but barred for another, and Meta's reliance on irrelevant, prejudicial, and cumulative state-specific

agency testimony is misguided.

The most efficient and just course is a single, consolidated jury trial of the State AG claims,

promptly following the first school district bellwether trial. Meta's proposal delays resolution: it ignores

the core COPPA claim, proposes moving forward with a trial that is unlikely to provide a meaningful

path toward resolution, and guarantees years of repetitive trials. At minimum, the COPPA claim and a

subset of the consumer protection claims should be tried together in an initial AG trial. This approach

best serves judicial economy, ensures fairness to all parties, and delivers the timely resolution the public

deserves.

DATED: 01/30/2025

Respectfully submitted,

**PHILIP J. WEISER**
Attorney General
State of Colorado

*/s/ Krista Batchelder*
Krista Batchelder, CO Reg. No. 45066, *pro hac vice*
Deputy Solicitor General
Jason Slothouber, CO Reg. No. 43496, *pro hac vice*
Chief Trial Counsel, Consumer Protection
Lauren M. Dickey, CO Reg. No. 45773, *pro hac vice*
First Assistant Attorney General
Elizabeth Orem, CO Reg. No. 58309
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6000
Krista.Batchelder@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel. Philip J. Weiser, Attorney General*

**ROB BONTA**
Attorney General
State of California

*/s/ Megan O'Neill*
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Emily Kalanithi (SBN 256972)
Supervising Deputy Attorneys General
Nayha Arora (CA SBN 350467)
David Beglin (CA SBN 356401)
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer (CA SBN 336428)
Marissa Roy (CA SBN 318773)
Brendan Ruddy (CA SBN 297896)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Megan.ONeill@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

/s/ *J. Christian Lewis*
J. Christian Lewis (KY Bar No. 87109),
*pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*pro hac vice*
Zachary Richards (KY Bar No. 99209),
*pro hac vice*
Daniel I. Keiser (KY Bar No. 100264),
*pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Ste. 200
Frankfort, KY 40601
Christian.Lewis@ky.gov
Philip.Heleringer@ky.gov
Zach.Richards@ky.gov
Daniel.Keiser@ky.gov
Matthew.Cocanougher@ky.gov
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*


**KRIS MAYES**
Attorney General
State of Arizona

/s/ *Laura Dilweg*
Laura Dilweg (AZ No. 036066, CA No. 260663)
Chief Counsel - Consumer Protection and Advocacy Section
Assistant Attorney General
Arizona Attorney General's Office
2005 North Central Avenue
Phoenix, AZ 85004
Phone: (602) 542-3725
Fax: (602) 542-4377
Laura.Dilweg@azag.gov

**MATTHEW J. PLATKIN**
Attorney General
State of New Jersey

By: /s/ *Kashif T. Chand*
Kashif T. Chand (NJ Bar No. 016752008),
*Pro hac vice*
Assistant Attorney General
Thomas Huynh (NJ Bar No. 200942017),
*Pro hac vice*
Assistant Section Chief, Deputy Attorney General
Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*Pro hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiffs Matthew J. Platkin, Attorney General for the State of New Jersey, and Elizabeth Harris, Acting Director of the New Jersey Division of Consumer Affairs*


**WILLIAM TONG**
Attorney General
State of Connecticut

/s/ *Rebecca Borné*
Rebecca Borné
(CT Juris No. 446982), pro hac vice
Tess E. Schneider
(CT Juris No. 444175), *pro hac vice*
Krislyn M. Launer
(CT Juris No. 440789), *pro hac vice*
Assistant Attorneys General
Connecticut Office of the Attorney General
165 Capitol Avenue
Hartford, Connecticut 06106
Phone: 860-808-5306

*Attorneys for Plaintiff State of Arizona*

Fax: 860-808-5593
Rebecca.Borne@ct.gov
Tess.Schneider@ct.gov
Krislyn.Launer@ct.gov

*Attorneys for Plaintiff State of Connecticut*

**KATHLEEN JENNINGS**
Attorney General
State of Delaware

*/s/ Ryan Costa*
Marion Quirk (DE Bar 4136), *pro hac vice*
Director of Consumer Protection
Ryan Costa (DE Bar 5325), *pro hac vice*
Deputy Director of Consumer Protection
Delaware Department of Justice
820 N. French Street, 5th Floor
Wilmington, DE 19801
Phone: (302) 683-8811
Marion.Quirk@delaware.gov
Ryan.Costa@delaware.gov

*Attorneys for Plaintiff State of Delaware*

**ANNE E. LOPEZ**
Attorney General
State of Hawai'i

*/s/ Douglas S. Chin*
Christopher J.I. Leong (HI JD No. 9662), *pro hac vice*
Supervising Deputy Attorney General
Kelcie K. Nagata (HI JD No. 10649), *pro hac vice*
Deputy Attorney General
Department of the Attorney General
Commerce and Economic Development Division
425 Queen Street
Honolulu, Hawai'i 96813
Phone: (808) 586-1180
Christopher.ji.leong@hawaii.gov
Kelcie.k.nagata@hawaii.gov
Douglas S. Chin (HI JD No. 6465), *pro hac vice*
John W. Kelly (HI JD No. 9907), *pro hac vice*
Special Deputy Attorney General
Starn O'Toole Marcus & Fisher
733 Bishop Street, Suite 1900
Honolulu, Hawai'i 96813
Phone: (808) 537-6100
dchin@starnlaw.com
jkelly@starnlaw.com

*Attorneys for Plaintiff State of Hawai'i*

**RAÚL R. LABRADOR**
Attorney General
State of Idaho

By: */s/ James Simeri*
James Simeri (ID Bar No. 12332)
Deputy Attorney General
Attorney General's Office
P.O. Box 83720

**KWAME RAOUL**
Attorney General
State of Illinois

*/s/ Matthew Davies*
Susan Ellis, Chief, Consumer Protection Division (IL Bar No. 6256460)
Greg Grzeskiewicz, Chief, Consumer Fraud Bureau (IL Bar No. 6272322)

18

Boise, ID 83720-0010
(208) 334-4114
james.simeri@ag.idaho.gov

*Attorneys for Plaintiff State of Idaho*

Jacob Gilbert, Deputy Chief, Consumer Fraud
Bureau (IL Bar No. 6306019)
Matthew Davies, Assistant Attorney General,
Consumer Fraud Bureau (IL Bar No.
6299608), *pro hac vice*
Daniel B. Roth, Assistant Attorney General,
Consumer Fraud Bureau (IL Bar No. 6290613)
Meera Khan, Assistant Attorney General,
Consumer Fraud Bureau (IL Bar No. 6345895)
Office of the Illinois Attorney General
115 S. LaSalle Street
Chicago, Illinois 60603
312-814-2218
Susan.Ellis@ilag.gov
Greg.Grzeskiewicz@ilag.gov
Jacob.Gilbert@ilag.gov
Matthew.Davies@ilag.gov
Daniel.Roth@ilag.gov
Meera.Khan@ilag.gov

*Attorneys for Plaintiff the People of the State
of Illinois*

**THEODORE E. ROKITA**
Attorney General
State of Indiana

*/s/ Scott L. Barnhart*
Scott L. Barnhart (IN Atty No. 25474-82)
*pro hac vice*
Chief Counsel and Director of Consumer
Protection Corinne Gilchrist (IN Atty No.
27115-53)
*pro hac vice*
Section Chief, Consumer Litigation
Mark M. Snodgrass (IN Atty No. 29495-49)
*pro hac vice*
Deputy Attorney General
Office of the Indiana Attorney General
Indiana Government Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46203
Telephone: (317) 232-6309
Scott.Barnhart@atg.in.gov
Corinne.Gilchrist@atg.in.gov
Mark.Snodgrass@atg.in.gov

*Attorneys for Plaintiff State of Indiana*

**KRIS W. KOBACH**
Attorney General
State of Kansas
*/s/ Sarah Dietz*
Sarah Dietz, Assistant Attorney General
(KS Bar No. 27457), *pro hac vice*
Office of the Kansas Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Telephone: (785) 296-3751
sarah.dietz@ag.ks.gov

*Attorney for Plaintiff State of Kansas*

**LIZ MURRILL**
Attorney General
State of Louisiana

*/s/ Asyl Nachabe*
Asyl Nachabe (LA Bar No. 38846)
*pro hac vice*
Assistant Attorney General
Louisiana Department of Justice
Office of the Attorney General
Public Protection Division
Complex Litigation Section
1885 N 3rd Street, 4th Floor
Baton Rouge, LA 70802
Tel: (225) 326-6435
NachabeA@ag.louisiana.gov
*Attorney for State of Louisiana*

**ANTHONY G. BROWN**
Attorney General
State of Maryland

/s/ *Elizabeth J. Stern*
Philip D. Ziperman (Maryland CPF No.
9012190379), *pro hac vice*
Deputy Chief, Consumer Protection Division
Elizabeth J. Stern (Maryland CPF No.
1112090003), *pro hac vice*
Assistant Attorney General
Office of the Attorney General of Maryland
200 St. Paul Place
Baltimore, MD 21202
Phone: (410) 576-6417 (Mr. Ziperman)
Phone: (410) 576-7226 (Ms. Stern)
Fax: (410) 576-6566
pziperman@oag.state.md.us
estern@oag.state.md.us

*Attorneys for Plaintiff Office of the Attorney*
*General of Maryland*

**MICHAEL T. HILGERS**
Attorney General
State of Nebraska

/s/ Anna M. Anderson
Anna M. Anderson (NE #28080)

**AARON M. FREY**
Attorney General
State of Maine

   */s/ Michael Devine*
Michael Devine (Maine Bar No. 5048),
*pro hac vice*
Assistant Attorney General
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333-0006
(207) 626-8829
michael.devine@maine.gov
*Attorney for Plaintiff State of Maine*

**KEITH ELLISON**
Attorney General
State of Minnesota

/s/ Caitlin Micko
Caitlin Micko (MN Bar No. 0395388)
Assistant Attorney General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
St. Paul, MN 55101
Tel: (651) 724-9180
Caitlin.micko@ag.state.mn.us

*Attorney for State of Minnesota, by its*
*Attorney General, Keith Ellison*

**LETITIA JAMES**
Attorney General
State of New York

/s/ Nathaniel Kosslyn

Assistant Attorney General
*pro hac vice*
Benjamin J. Swanson (NE #27675)
Assistant Attorney General
Nebraska Attorney General's Office
1445 K Street, Room 2115
Lincoln, NE 68509
(402) 471-6034
anna.anderson@nebraska.gov
benjamin.swanson@nebraska.gov

*Attorneys for Plaintiff State of Nebraska*

Nathaniel Kosslyn, Assistant Attorney General
(NY Bar No. 5773676), *pro hac vice*
nathaniel.kosslyn@ag.ny.gov
Alex Finkelstein, Assistant Attorney General
(NY Bar No. 5609623), *pro hac vice*
alex.finkelstein@ag.ny.gov
New York Office of the Attorney General
28 Liberty Street
New York, NY 10005
(212) 416-8000

**JEFF JACKSON**
Attorney General
State of North Carolina

*/s/ Charles White*
Charles G. White (N.C. State Bar No. 57735),
*pro hac vice*
Assistant Attorney General
Kunal Choksi
Senior Deputy Attorney General
Josh Abram
Special Deputy Attorney General
N.C. Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6006
Facsimile: (919) 716-6050
E-mail: cwhite@ncdoj.gov
*Attorneys for Plaintiff State of North Carolina*

**DAN RAYFIELD**
Attorney General
State of Oregon

/s/ John Dunbar
John J. Dunbar (Oregon Bar No. 842100)
Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, Oregon 97201
Telephone: (971) 673-1880
Facsimile:  (971) 673-1884

**DAVE YOST**
OHIO ATTORNEY GENERAL

_____/s/ Kevin R. Walsh_____
Melissa G. Wright (0077843)
Section Chief, Consumer Protection Section
Melissa.Wright@ohioago.gov
Melissa S. Smith (0083551)
Asst. Section Chief, Consumer Protection
Section
Melissa.S.Smith@ohioago.gov
Michael S. Ziegler (0042206)
Principal Assistant Attorney General
Michael.Ziegler@ohioago.gov
Kevin R. Walsh (0073999)
Senior Assistant Attorney General
Kevin.Walsh@ohioago.gov
30 East Broad Street, 14th Floor
Columbus, Ohio 43215
614-466-1031

**DAVID W. SUNDAY, JR.**
Attorney General
Commonwealth of Pennsylvania

*/s/ Jonathan R. Burns*
Jonathan R. Burns
Senior Deputy Attorney General
(PA Bar No. 315206), *pro hac vice*
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
717.787.3391

E-mail: john.dunbar@doj.oregon.gov

jburns@attorneygeneral.gov

*Attorneys for State of Oregon ex rel.*
*Dan Rayfield, Attorney General*

*Attorneys for Plaintiff the Commonwealth of*
*Pennsylvania*

**PETER F. NERONHA**
Attorney General
State of Rhode Island

**ALAN WILSON**
Attorney General
State of South Carolina

*/s/ Stephen N. Provazza*
Stephen N. Provazza (R.I. Bar No. 10435),
*pro hac vice*
Assistant Attorney General
Rhode Island Office of the Attorney General
150 South Main St.
Providence, RI 02903
Phone: 401-274-4400
Email: SProvazza@riag.ri.gov

*/s/ Anna C. Smith*
C. Havird Jones, Jr.
Senior Assistant Deputy Attorney General
Jared Q. Libet (S.C. Bar No. 74975),
*pro hac vice*
Assistant Deputy Attorney General
Anna C. Smith (SC Bar No. 104749),
*pro hac vice*
Assistant Attorney General
Office of the South Carolina Attorney General
Post Office Box 11549
Columbia, South Carolina 29211
jlibet@scag.gov
annasmith@scag.gov
803-734-0536

*Attorneys for Plaintiff State of Rhode Island*

*Attorneys for Plaintiff the State of South*
*Carolina,*
*ex rel. Alan M. Wilson, in His Official*
*Capacity as*
*Attorney General of the State of South*
*Carolina*

**MARTY J. JACKLEY**
Attorney General
State of South Dakota

**JASON S. MIYARES**
Attorney General
Commonwealth Of Virginia

*/s/ Amanda Miiller*
By: Amanda Miiller (SD Bar No. 4271)
Deputy Attorney General
1302 East SD Hwy 1889, Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215
Amanda.Miiller@state.sd.us

*/s/ Joelle E. Gotwals*
Steven G. Popps
Chief Deputy Attorney General
Thomas J. Sanford
Deputy Attorney General
Richard S. Schweiker, Jr.
Senior Assistant Attorney General and Section
Chief
Joelle E. Gotwals (VSB No. 76779),
Senior Assistant Attorney General
*pro hac vice*
Chandler P. Crenshaw (VSB No. 93452)

*Attorneys for Plaintiff State of South Dakota*

Assistant Attorney General
*pro hac vice*
Office of the Attorney General of Virginia
Consumer Protection Section
202 N. 9th Street
Richmond, Virginia 23219
Telephone:    (804) 786-8789
Facsimile:    (804) 786-0122
E-mail: jgotwals@oag.state.va.us

*Attorneys for the Plaintiff Commonwealth of Virginia*
*ex rel. Jason S. Miyares, Attorney General*

**NICHOLAS W. BROWN**
Attorney General State of Washington

*/s/ Claire McNamara*
Claire McNamara (WA Bar No. 50097)
Gardner Reed (WA Bar No. 55630)
Assistant Attorneys General
Washington State Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 340-6783
claire.mcnamara@atg.wa.gov
gardner.reed@atg.wa.gov

*Attorneys for Plaintiff State of Washington*

**JOHN B. MCCUSKEY**
Attorney General
State of West Virginia

*/s/ Laurel K. Lackey*

Laurel K. Lackey (WVSB No. 10267)
Abby G. Cunningham (WVSB No. 13388)
Assistant Attorneys General
Office of the Attorney General
Consumer Protection & Antitrust Division
Eastern Panhandle Office
269 Aikens Center
Martinsburg, West Virginia 25404
Telephone: (304) 267-0239
Email: laurel.k.lackey@wvago.gov
abby.g.cunningham@wvago.gov

*Attorneys for Plaintiff State of West Virginia,*
*ex rel. John B. McCuskey, Attorney General*

**JOSHUA L. KAUL**
Attorney General
State of Wisconsin

*/s/ Brittany Copper*
Brittany A. Copper
Assistant Attorney General
WI State Bar # 1142446
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-1795

Brittany.copper@wisdoj.gov

*Attorneys for Plaintiff State of Wisconsin*

## SIGNATURE CERTIFICATION

Under Civ. L.R. 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in this filing's content and have authorized this filing.

DATED: 01/30/2026

*/s/ Krista Batchelder*

Krista Batchelder

*Attorney for Plaintiff State of Colorado, ex rel. Philip J. Weiser, Attorney General*