# EXHIBIT 8

James P. Rouhandeh, *pro hac vice*
Antonio J. Perez-Marques, *pro hac vice*
Caroline Stern, *pro hac vice*
Corey M. Meyer, *pro hac vice*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:   rouhandeh@davispolk.com
         antonio.perez@davispolk.com
         caroline.stern@davispolk.com
         corey.meyer@davispolk.com

*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Meta Payments Inc. f/k/a Facebook Payments Inc.; Meta Platforms Technologies, LLC f/k/a Facebook Technologies, LLC; Instagram, LLC; and Siculus LLC f/k/a Siculus, Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*ALL CASES* | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR<br><br>**DECLARATION OF CURTISS COBB IN SUPPORT OF META'S OMNIBUS MOTION TO SEAL (REPLACEMENT EXHIBITS TO PLAINTIFFS' CORRECTED OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT)**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

**DECLARATION OF CURTISS COBB**

I, Curtiss Cobb, declare and state as follows:

1. I am Vice President for Central Science, Strategy and Research at Meta Platforms, Inc. ("Meta"). I joined Meta in 2013 and was previously Director of Research for Demography and Survey Science. I submit this Declaration in support of Meta's motion to seal replacement exhibits to Plaintiffs' Corrected Omnibus Opposition to Defendants' Motions for Summary Judgment. This Declaration is based on my personal knowledge and experience at Meta and in my career. If called upon to do so, I could and would competently testify as follows.

2. I have reviewed the excerpts listed below that Meta seeks to seal. These excerpts include confidential and proprietary information, including information relating to Meta's internal research, and could cause Meta competitive harm if disclosed publicly for the reasons explained below:

| Document | Portion of Document at Issue |
|---|---|
| Exhibit 15: META3047MDL-047-00649343 | Page 5, "Goal Metrics" and associated numerical data in table |
| | Page 6, goal "Metrics" and associated numerical data in table |
| | Page 7, "Goal Metrics" and associated data and commentary |
| | Page 8, text of first bullet describing "Major Drivers of MAU and DAU"; text of bullets describing "H2 2022 MAU Product Impact" |
| | Page 11, text of fourth bullet containing data on "YA Age Model Updates" |
| | Pages 21-22, entire slides |
| Exhibit 84: META3047MDL-072-00327080 | -7091-95, content of "Methods," "Sample, "FB & IG Log Data," "Data Access," and "IRB Review?" Columns of chart |
| | -7092-93, content of "Research Instrument," "Description, "Topics Covered," and "Submit for review" Columns of chart |

| | | |
|---|---|---|
| | | -7093-94, content of "Description" and "Submit for Review" columns of chart |
| | Exhibit 85: META3047MDL-050-00215015 | -5017-18, content between "Method" and "Results" |
| | | -5019, text of sentence following "social media platform."; text of sentence following "on the attentiveness scale; chart of reported "attentiveness"; text following sentence following "'often' or 'all the time.'" |
| | Exhibit 109: Problematic Use On-Platform Measurement, Concentration survey results for IG | Page 8, content of chart below "Low attentiveness around use" and "Perceived control capability"; text at bottom of slide |
| | | Page 11, statistics relating to low attentiveness and low capability in different cohorts on Instagram |
| | | Page 15, content of "Product" and "Detail" columns |
| | | Page 18, content of second, third, fourth, and fifth rows of chart; definitions of "Low Attentiveness" and "Low Capability" |
| | | Page 19, content of second, third, and fourth rows of chart; definitions of "Low Attentiveness" and "Low Capability" |
| | | Page 20, content of second row of chart; definitions of "Low Attentiveness" and "Low Capability" |
| | | Page 25, content of "Gain (marginal effect of predictive accuracy)," "Frequency (of behavior)" and "Correlation" columns of chart |
| | Exhibit 245: Teen Support for SSI & ED | Page 6, content to the right of "Resource Allocation" |
| | | Page 10, bullets below "SSI & ED Interventions" |
| | | Page 17, content below "Prevalence on platform" |
| | | Page 27, all content below "Measurement Approach" |

| | | |
|---|---|---|
| | | Page 42, all content under "Phase 1 product experiences"  Page 43, rows of table under "Focus Area," "Timing," Key Hypotheses" and "Measurement"  Page 46, all content under "1) Empty SERP ('search engine results page'); and 2) Deter Results Inform Module."  Page 47, content of "User Experience" and "Ex. Trigger Words" rows of table  Pages 48, 51, all content |
| | Exhibit 322: Apr. 17, 2025, Meta's Sixth Supplemental and Amended Responses and Objections to Plaintiffs' Second Set of Interrogatories, MDL NO. 3047 Civil Case No. 4:22-md-03047-YGR | Page 36, statistics in lines 17, 20, and 24  Page 37, statistics in lines 1, 8, 10, 13, 16, 19, and 22  Page 38, statistic in line 26  Page 39, statistics in lines 3, 9, 11, 15, 19, and 22  Page 40, statistics in lines 1 and 3 |
| | Exhibit 982: May 16, 2025, Expert Report of Dimitri A. Christakis, M.D., M.P.H. | Pages 349-351, statistics in column under "Adoption Rate"  Page 386, statistic in paragraph 627 |
| | Exhibit 990: July 30, 2025, Expert Rebuttal Report of Tim Estes | Page 15, statistics in paragraphs 35, 36 |

3. Meta does not disclose this information publicly in the ordinary course of business. It is confidential, proprietary, and valuable. Meta invests significant time and financial resources in its research and development efforts, including compiling data and statistics on how users drive activity on Meta's platforms, the percentage of activity these users drive, and the features of its services that provide the most value to its users. Disclosure of this information would provide Meta's competitors with insights about Meta's business that they would not otherwise have and without incurring the same development costs or risks as Meta.

4. Meta is a leader in its marketplace and its competitive advantage in part is derived from its internal understanding of its users and the features of Meta's services that they value most. Meta uses its market data and research on users and their activity to generate and provide innovative features in the competitive social media market, inform future development priorities, and prepare new services and marketing strategies to stay ahead of our competitors. Public disclosure of this information would provide competitors with a competitive advantage that they would not otherwise have. Competitors could use this information to test the accuracy of their own internal estimates of usage of Meta's platforms, which they otherwise would not be able to do. In other words, if a competitor estimates (but did not know) which users drive value on Meta's platforms, possessing this information would provide them with information to either confirm that their data is accurate or confirm that it is not accurate, requiring them to adjust. With precise data on Meta's users, competitors would have our proprietary insight into what makes Meta's services competitive to our users, allowing them to reliably infer or predict Meta's future development efforts and ultimately undercut Meta's competitive advantages. In either circumstance, competitors would not be able to do that without this information, just as Meta cannot without those competitors' information.

5. The excerpted portions of Exhibits 15, 84, 85, 109, 322 and 982 include or reflect internal research relating to usage across Meta's platforms. Competitors can use this data to inform themselves about Meta's platform roadmap and to influence their own platform strategy. This research explicitly identifies which platform surfaces and behaviors are priorities for Facebook and Instagram to develop future interventions and which platforms drive the most engagement. Competitors could use this information to prioritize their own interventions or optimize their own platforms, which could undercut Meta in the market.

6. The excerpted portions of Exhibits 982 and 990 include internal research about drivers of certain user activity on Meta's platforms. This information can be used to inform competitors of Meta's platform roadmap or influence interventions that they could take. Specifically, this information could allow competitors to stack-rank platform features for their

4

DECLARATION OF CURTISS COBB IN SUPPORT OF META'S MOTION TO SEAL (REPLACEMENT EXHIBITS TO PLAINTIFFS' CORRECTED OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT)
Case No. 4:22-MD-03047-YGR

own use or convey information about the platform features that Meta is looking to modify. They can also use it to position themselves in the market and thereby strategically undercut Meta.

7. The excerpted portions of Exhibit 245 contain Meta's confidential assessment of certain of its platforms and services, such as those that help moderate violating content. For example, page 43 of Exhibit 245 contains assessments of the specific tools that Meta is focused on deploying to help moderate violating content as of late 2023, including qualitative descriptions of the potential efficacy of each. This information has never been disclosed publicly and Meta's teams treat it as strictly confidential. Public disclosure of this information may influence the competitive decision-making and business strategies employed by Meta's competitors, for example by influencing how those competitors develop similar features, critique Meta's platforms prior to their launch, or otherwise distinguish themselves from Meta. This information is thus extremely valuable to any competitor seeking to enhance their own platform offerings to compete with Meta's services and attract Meta's users.

8. Meta keeps the above information confidential and takes steps to maintain its confidentiality, including not sharing it publicly and limiting who can access it.

9. Meta derives value from this information's confidentiality. As explained above, if the information were publicly disclosed, competitors could make use of it to undercut Meta.

10. Meta competes with many companies, including companies that facilitate the ability of users to share, communicate, and discover content and information online. Meta faces intense competition in every aspect of its business. As a result, Meta takes great care to protect information related to user statistics, performance metrics, and business strategy. For the reasons described above, this information could give Meta's competitors an unfair advantage and thereby cause Meta competitive harm. I have no doubt that competitors would capitalize on the release of the competitively sensitive information and data that Meta seeks to seal if it were released.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

1 | Executed on: February 9, 2026   By:   *Signed by:* Curtiss L Cobb III

Curtiss Cobb

6
**DECLARATION OF CURTISS COBB IN SUPPORT OF META'S MOTION TO SEAL (REPLACEMENT EXHIBITS TO PLAINTIFFS' CORRECTED OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT)**
Case No. 4:22-MD-03047-YGR