# AMENDED Exhibit 367

# PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Case No.: 4:22-md-03047-YGR
MDL No. 3047
In Re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation

```
                                               Page 1
 1            UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3    ------------------------------
 4    IN RE: SOCIAL MEDIA ADOLESCENT Case No.
      ADDICTION/PERSONAL INJURY      4:22-MD-03047-YGR
 5    PRODUCTS LIABILITY LITIGATION
 6    --------------------------------------------------
 7        SUPERIOR COURT OF THE STATE OF CALIFORNIA
                FOR THE COUNTY OF LOS ANGELES
 8                SPRING STREET COURTHOUSE
 9    -------------------------
10    COORDINATION PROCEEDING
      SPECIAL TITLE(RULE 3.400) Lead Case No. for
11
      SOCIAL MEDIA CASES        Filing Purposes
12
      ------------------------- 22STCV21355
13
      This Document Relates to:
14
      STATE OF TENNESSEE,
15    ex rel. JONATHAN SKRMETTI,
      ATTORNEY GENERAL and REPORTER,
16    v.
      META PLATFORMS, INC., and
17    INSTAGRAM, LLC,
      Case No. 23-1364-IV
18                            VOLUME I
      -------------------------
19
20        VIDEO-RECORDED DEPOSITION LIZA CRENSHAW
21             Wednesday, March 5, 2025
22                  9:15 AM EST
23
24    Reported by:  Denise Dobner Vickery, CRR, RMR
25    JOB NO.: 7134991
```

Page 17

1                P R O C E E D I N G S

2                        -  -  -

3                THE VIDEOGRAPHER:  We are now

4        on the record.

5                My name is Daniel Holmstock.

6        I am the videographer for Golkow.

7        Today's date is March 5, 2025.  Time on

8        the video screen is 9:15 AM.

9                This video deposition is being

10       held at the location of 850 10th Street

11       Northwest in Washington, DC in the matter

12       of In re: Social Media Adolescent

13       Addiction/Personal Injury Products

14       Liability Litigation with an MDL of 3047,

15       pending before the United States District

16       Court for the Northern District of

17       California.

18                Our deponent today is Liza

19       Crenshaw.

20                Counsel, your appearances will

21       be noted on the stenographic record.

22                Our court reporter today is

23       Denise Vickery, who will now administer

24       the oath to the witness and, counsel, you

25       may proceed after that.

Page 18

```
 1                         - - -
 2                   LIZA CRENSHAW
 3     called for examination, and, after having been
 4     duly sworn, was examined and testified as
 5     follows:
 6                         - - -
 7                    EXAMINATION
 8                         - - -
 9   BY MR. COCANOUGHER:
10         Q.      Good morning, Ms. Crenshaw.
11         A.      Good morning.
12         Q.      And is it Liza Crenshaw?
13         A.      It's Liza, yes.
14         Q.      Liza Crenshaw.
15                 Good morning.  My name is Matt
16   Cocanougher, and I'm here on the behalf of the
17   Kentucky Attorney General's Office.
18                 Can you state your name and
19   address for the record, please?
20         A.      Yes.  My name is Liza Crenshaw.
21   My address is ████  █████  ███████  ██████  █████████
22   ████████
23                 MR. COCANOUGHER:  First, we're
24         going to go over some stipulations that
25         some other states may have.
```

Page 19

```
 1              Massachusetts, I don't know if
 2         you want to go first.
 3              MR. DAVIS:  Yeah.  So good
 4         morning.  My name is Aaron Davis.  I'm
 5         Assistant Attorney General here on behalf
 6         of the Commonwealth of Massachusetts.
 7              As the parties know, the
 8         Commonwealth has independently noticed
 9         Liza Crenshaw's deposition in the pending
10         action Commonwealth of Massachusetts
11         versus Meta Platforms, Inc. and
12         Instagram, LLC in Suffolk Superior Court,
13         Civil Action Number 2384cv02397.
14              The Commonwealth has
15         coordinated to make this deposition as
16         conveniently as possible for Ms. Crenshaw
17         given the number of separate cases in
18         which this testimony is necessary.
19              However, recognizing that
20         certain plaintiffs groups in this
21         coordinated deposition are governed by
22         time limits or other restrictions that do
23         not apply to the Massachusetts case, the
24         Commonwealth reserves the right to
25         suspend or continue this deposition for
```

Page 20

1    purposes of the Massachusetts litigation
2    as we deem necessary to complete our
3    deposition questioning in the event that
4    our opportunity to fully examine the
5    witness is impacted due to the time
6    limits imposed on certain parties, the
7    number of parties participating in this
8    coordinated deposition, the needs of the
9    witness, newly received or not yet
10   received documents or other similar
11   circumstances.
12            We will communicate separately
13   with the relevant counsel to continue the
14   deposition if and when necessary.  Thank
15   you.
16            MR. COCANOUGHER:  All right.
17   And New Mexico?
18            MR. ACKERMAN:  Yeah, I'll go
19   ahead.
20            Good morning.  My name is
21   David Ackerman from Motley Rice.  I'm
22   appearing on behalf of the State of New
23   Mexico.  Julie Sakura, Assistant Attorney
24   General, is also attending this
25   deposition virtually.

Page 21

1            As counsel for Meta is aware,
2       the State of New Mexico has agreed to
3       participate in this deposition for the
4       convenience of the witness.
5                However, Meta has yet to
6       produce significant volumes of documents
7       in the New Mexico litigation, including
8       but not limited to documents containing
9       search terms specific to the State's
10      claims, documents from additional
11      custodians relevant to the State's
12      claims, and documents that were sub --
13      that were the subject of the State's
14      motion to compel, which the court has
15      granted.
16               Therefore, the State reserves
17      the right to keep this deposition open
18      and to seek to recall this witness for
19      deposition to the extent later produced
20      documents require further questioning on
21      any topic.
22               The State also participates
23      subject to its understanding that Meta
24      will provide counsel a full and fair
25      opportunity to question this witness, and

Page 22

1          the State reserves the right to raise any
2          constraint on counsel's ability to
3          question the witness with the court.
4                    MR. EGLER:   And my name is
5          Thomas Egler.   I represent the State of
6          Arkansas in this matter.
7                    And similar to the other
8          counsel, the State of Arkansas reserves
9          all its rights to continue this
10         deposition if necessary under
11         circumstances presented.
12                   MS. GUIRGUIS:   And the State
13         of Tennessee also has its independent
14         claims against Meta, and we also reserve
15         the right to continue or suspend the
16         deposition.
17                   MR. SNEED:   All right.   As
18         we've done in prior depositions, Meta --
19         I'm counsel for Meta.   My name is David
20         Sneed.
21                   As we've done in prior
22         depositions to respond to the
23         stipulations that have been put forward
24         by the various State Attorneys General,
25         for each of one of them our position is

Page 23

```
 1          that it is certainly before any
 2          questioning has begun far too premature
 3          from Meta's perspective to assert any
 4          rights to holding open or seeking to
 5          reopen the deposition of Ms. Liza
 6          Crenshaw.
 7                    We have brought the witness
 8          here so that she would be able to
 9          participate in the deposition process,
10          and she's available for questioning today
11          as the parties have agreed.
12                    To the extent that -- that any
13          of the individual AGs would seek to do
14          so, Meta is happy to meet and confer down
15          the road.  But to be clear, we do not
16          agree with any of the statements that
17          have been made about opening or reopening
18          the deposition down the road for any of
19          the states that have asserted that
20          position at this stage.
21   BY MR. COCANOUGHER:
22          Q.     All right.  So, Ms. Crenshaw,
23   speaking of Chicago, I'm here with my colleague,
24   Meera Khan from the Illinois Attorney's General
25   Office, and so both Kentucky and Illinois are
```

Page 24

1  part of the State Attorneys General in the MDL
2  case in the Northern District of California.

3                Are you aware of that lawsuit?
4        A.        Yes.
5        Q.        Do you understand the AG's role in
6  that particular lawsuit?
7        A.        Yes, I do.
8        Q.        So as you just heard, in addition
9  to a number of states who are in that MDL in the
10 Northern District of California, there are also
11 personal injury plaintiffs and school district
12 plaintiffs whose claims are also included in
13 that MDL, but they are separate from the MDL
14 state AGs.
15                Do you understand that?
16       A.        I do.
17       Q.        So an attorney representing those
18 plaintiffs is on Zoom.
19                Okay?
20       A.        Understand.
21       Q.        As you heard in the stipulations,
22 there are also State Attorneys General who filed
23 lawsuits in their own state courts, specifically
24 Tennessee, Massachusetts, Arkansas, and New
25 Mexico, and attorneys from those offices are

Page 25

```
 1   here today; correct?
 2        A.      Understand.
 3        Q.      Okay.  So you were sworn in by the
 4   court reporter earlier; right?
 5        A.      Yes.
 6        Q.      Which means that you're testifying
 7   here just like you were sitting in a courtroom
 8   before a jury and a judge.
 9               Okay?
10        A.      I understand.
11        Q.      Sometimes you may hear me refer to
12   the jury in one of my questions, even though
13   they're obviously not physically present today.
14   That's because the deposition is being
15   videotaped.
16               Do you understand that?
17        A.      I do.
18        Q.      And the video and the written
19   transcript maybe presented later in court are
20   used for any purposes authorized under state and
21   federal rules of procedure and evidence.
22               Do you have any questions about
23   that?
24        A.      No.
25        Q.      And I know you currently live in
```

```
 1   ████████.
 2                Do you have any plans in the near
 3   future to move within 100 miles of San Francisco
 4   or Oakland?
 5        A.      I do not.
 6        Q.      All right.  Have you ever given a
 7   deposition before?
 8        A.      No.
 9        Q.      Okay.  So I'm going to go over
10   some ground rules for today's deposition, see if
11   you have any questions about how the process
12   will generally go.
13                Okay?
14        A.      Thank you.
15        Q.      So you're already doing a good job
16   of this, but I will ask that you answer my
17   questions verbally.  If we were in a normal
18   conversation, we would use nods or shrugs, but
19   the court reporter will not be able to pick that
20   up and transcribe your answer, and so we want to
21   make sure the record is clear as to what your
22   answer is.
23                Okay?
24        A.      I understand.
25        Q.      I'd also ask -- and I will hold
```

Page 27

```
 1   myself accountable too for this -- to make sure
 2   that we don't talk over each other, which is,
 3   again, something that in ordinary conversation
 4   we might do, but it's very difficult for the
 5   court reporter to take down what we're saying if
 6   we're speaking over each other.
 7               Okay?
 8        A.     Of course.
 9        Q.     There may and there will be points
10   today when I ask a question that is not
11   particularly clear.  It could be confusing.  If
12   that happens, I want you to simply ask me what
13   the question means or ask me to rephrase the
14   question.
15               Is that fair?
16        A.     Yes.  Thank you.
17        Q.     So your attorney will offer
18   objections throughout this deposition.  What
19   will happen is:  I will ask the question.  Your
20   attorney will then be given a chance to offer an
21   objection.  And then after he is finished, then
22   you'll start your answer.
23               Does that make sense?
24        A.     Yes.
25        Q.     There may be a chance that your
```

Page 28

1  attorney instructs you not to answer the
2  question.  So, of course, in that case, you will
3  not answer the question.  But most objections
4  will be to the form of my question, and after
5  the objection is stated, you will end up
6  answering the question.
7                Okay?
8       A.       Yes, I understand.
9       Q.       If you need a break at any time
10 for any reason, just let me know.  The only rule
11 is that if there's a question pending before
12 you, please answer that question before we take
13 a break.
14                Okay?
15      A.       Okay.
16      Q.       Sitting here today, is there
17 anything that would negatively affect your
18 memory?
19      A.       No, there's not.
20      Q.       Is there anything, sitting here
21 today, that would affect your ability to tell
22 the truth?
23      A.       No.
24      Q.       Are you on any kind of
25 prescription or medication that would affect

```
 1   your ability to provide truthful testimony
 2   today?
 3        A.      No.
 4        Q.      We are in the office of the law
 5   firm Covington & Burling in Washington, DC.
 6                Do you understand that?
 7        A.      I do.
 8        Q.      And are you represented by
 9   Covington & Burling?
10        A.      I am.
11        Q.      Did you sign an engagement letter
12   with Covington & Burling?
13        A.      I did not.
14        Q.      Are you paying for Covington &
15   Burling?
16        A.      No.
17        Q.      Do you know who is paying for
18   Covington & Burling?
19        A.      I believe Meta is.
20        Q.      That leads to my next question.
21                You understand that Meta's
22   attorneys in this matter are also Covington &
23   Burling?
24        A.      Yes.
25        Q.      But today, today will you be
```

```
                                            Page 30
 1   speaking on behalf of yourself or on behalf of
 2   Meta?
 3                    MR. SNEED:  Object to form.
 4                    THE WITNESS:   I'll be telling
 5         the truth based on my own personal
 6         knowledge.
 7   BY MR. COCANOUGHER:
 8        Q.       And if your interests and Meta's
 9   interests diverge in the course of our
10   conversation today, you understand that your
11   obligation is to tell the truth irrespective of
12   whose interest that truth will benefit; right?
13                    MR. SNEED:  Object to form.
14                    THE WITNESS:   I do.
15   BY MR. COCANOUGHER:
16        Q.       Did you meet with your attorneys
17   from Covington to prepare for today's
18   deposition?
19        A.       Yes.
20        Q.       And I'll just say, I'm not going
21   to ask about any conversations that you had with
22   your attorneys.  So if I ask a poor question
23   that would get into any of that information,
24   don't answer.
25                    Okay?
```

Page 31

```
 1                    MR. SNEED:  And I will
 2         object --
 3                    MR. COCANOUGHER:  Correct.
 4                    MR. SNEED:  -- if that comes
 5         up.
 6                    So I will instruct the witness
 7         to not divulge the privileged
 8         communications between counsel and the
 9         witness.
10                    THE WITNESS:   Thank you.
11    BY MR. COCANOUGHER:
12         Q.      How many times did you meet with
13    attorneys from Covington in advance of this
14    deposition?
15         A.      I think about two or three times.
16         Q.      Do you recall when your first
17    meeting was?
18         A.      About two weeks ago.
19         Q.      On average, how long were those
20    two to three meetings?
21         A.      They varied in length.  I'm not
22    based in DC.  So anywhere from an hour to, I
23    think, probably around four hours.
24         Q.      Did you meet over Zoom or in
25    person?
```

Page 32

1          A.        We met over Zoom and in person.

2          Q.        How many times on Zoom?  How many

3    times in person?

4          A.        I would say one or two times on

5    Zoom and same with in person.  Probably about

6    two, two times.

7          Q.        When you met on Zoom, was anyone

8    present on the Zoom other than attorneys for

9    Covington or attorneys for Meta?

10         A.        No.

11         Q.        I know that you have not given a

12   deposition before.

13                   Have you ever testified in court?

14         A.        I have not.

15         Q.        Did you review any documents to

16   prepare for this deposition?

17         A.        Yes.

18         Q.        How many?

19         A.        I don't know that I could give you

20   an exact number, but probably -- I don't know --

21   about 20 to 30.

22         Q.        Okay.  And so I should have

23   included this in the ground rules, but -- so if

24   I ask you a question, I don't want -- I don't

25   want you to guess, but there may be times when

Page 33

```
 1    like this I do want a best estimate if you have
 2    it.
 3                   Okay?
 4         A.        Sure.   I'll do my best to provide
 5    that.
 6         Q.        So around 20 documents.
 7                   What kind of documents were these?
 8                        MR. SNEED:   Well, I'll object
 9            to the extent that this is seeking
10            information that is privileged relating
11            to the documents that were shared in the
12            course of preparation sessions.
13                        THE WITNESS:    I understand
14            that most of the documents were ones that
15            may have appeared in my custodial file.
16            I think that's how it's referred to.
17            That's my understanding of the documents.
18    BY MR. COCANOUGHER:
19         Q.        And you understand that your
20    custodial file as part of this lawsuit was
21    provided to the plaintiffs through discovery?
22         A.        Yes.
23         Q.        Okay.  Have you reviewed any of
24    the various plaintiffs' complaints in this case?
25         A.        I believe so.
```

Page 34

1          Q.       Do you know if you've reviewed the
2    State Attorney General's complaint?
3          A.       I'm not sure.
4                   MR. SNEED:  Well, object to
5            form.  Vague.  But go ahead.
6    BY MR. COCANOUGHER:
7          Q.       Do you understand the basics of
8    what this lawsuit is about?
9          A.       I do.
10         Q.       Have you read about this lawsuit,
11   specifically the State Attorney General's
12   lawsuit, in the press?
13         A.       I have.
14         Q.       And have you served as a
15   spokesperson in Meta's response externally to
16   the allegations in this lawsuit?
17                  MR. SNEED:  Object to form.
18                  THE WITNESS:   In some cases,
19           yes.
20   BY MR. COCANOUGHER:
21         Q.       So outside of any attorneys, have
22   you talked to any of your colleagues about this
23   deposition?
24         A.       No, I haven't.
25         Q.       Are you currently married?

最低



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25





Golkow Technologies,
A Veritext Division





Golkow Technologies,
A Veritext Division



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Golkow Technologies,
A Veritext Division



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25





Golkow Technologies,
A Veritext Division



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25





Golkow Technologies,
A Veritext Division





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Golkow Technologies,
A Veritext Division











1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25





1
1
1
1
1
1
1
1
1
1
2
2
2
2
2
2





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25