# AMENDED Exhibit 393

# PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

CONFIDENTIAL

Page 1

1                    UNITED STATES DISTRICT COURT
2                   NORTHERN DISTRICT OF CALIFORNIA
3
4      IN RE: SOCIAL MEDIA          )
       ADOLESCENT ADDICTION/        )
5      PERSONAL INJURY PRODUCTS     )   MDL No. 3047
       LIABILITY LITIGATION         )
6                                   )
                                    )
7
8       SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE
         COUNTY OF LOS ANGELES - SPRING STREET COURTHOUSE
9
10     COORDINATION PROCEEDING     )
       SPECIAL TITLE [RULE 3.400]  )
11                                 )
       SOCIAL MEDIA CASES          )   Lead Case No.
12     _____) 22STCV21355
       This Document Relates To    )
13                                 )
       STATE OF TENNESSEE, ex rel.)
14     JONATHAN SKRMETTI,          )
       ATTORNEY GENERAL and        )
15     REPORTER,                   )
       v.                          )
16     META PLATFORMS, INC., and   )
       INSTAGRAM, LLC.             )
17     _____)
18
                 CONFIDENTIAL - ATTORNEYS' EYES ONLY
19                  PURSUANT TO PROTECTIVE ORDER
                           Volume 1
20                      VIDEO-RECORDED
                   DEPOSITION OF JUSTIN CHENG
21                     (Pages 1 - 375)
                   Held at Covington & Burling
22        3000 El Camino Real, Palo Alto, California
              Thursday, March 13, 2025, 9:16 a.m.
23                        - - - -
24     REPORTED BY:  ELAINA BULDA-JONES, CSR 11720
25

CONFIDENTIAL

Page 13

```
 1              THE VIDEOGRAPHER:  We are now on the
 2   record.  My name is James Vonwiegen.  I'm a
 3   videographer for Golkow.
 4              Today's date is March 13th, 2025, and the
 5   time is 9:16 a.m.                                    0
 6              The video deposition is being held in
 7   Palo Alto, California, in the matter of Social Media
 8   MDL3047, State of Tennessee versus Meta, for the
 9   Superior Court of the State of California for the
10   County of Los Angeles.
11              The deponent is Justin Cheng.
12              Will counsel please identify themselves.
13              MR. AYERS:  Chris Ayers of Seeger Weiss on
14   behalf of the plaintiffs, the personal injury and
15   school district plaintiffs.
16              MR. MAINLAND:  Grant Mainland of
17   Milbank LLP on behalf of the witness.
18              MS. BARNHART:  Lindsey Barnhart,
19   Covington & Burling, for Meta.
20              MR. BANKS:  Paul Banks, Covington &
21   Burling, for Meta.
22              MS. HUANG:  Sylvia Huang, counsel at Meta.
23              MS. SPICA:  Elizabeth Spica, State of
24   Tennessee.
25              MS. SHEIKH:  Shaheen Sheikh, State of
```

CONFIDENTIAL

Page 14

1    Colorado, on behalf of the MDL State Attorney

2    Generals.

3                    MS. KARPENKO:  Kaitlyn Karpenko on behalf

4    of Massachusetts.

5                    MR. DAVIS:  I'm Aaron Davis on behalf of

6    Massachusetts.

7                    MS. KHANDESHI:  Snehee Khandeshi from

8    Robbins Geller Rudman & Dowd on behalf of the State

9    of Arkansas.

10                   THE VIDEOGRAPHER:  We aren't going to do

11   Zoom appearances.

12                   The court reporter is Elaina Bulda-Jones,

13   who will now swear in the witness.

14                   THE REPORTER:  I'm Elaina Bulda-Jones.  My

15   CSR Number is 11720.  And I get to be the court

16   reporter today.

17                   Can I ask you to raise your right hand.

18   Thank you.

19                              JUSTIN CHENG,

20   called as a witness by the Plaintiffs herein, being

21   first duly sworn by the Certified Shorthand Reporter

22   was thereupon examined and testified as is

23   hereinafter set forth.

24                   MR. AYERS:  I believe there are some

25   stipulations that some of the Attorney Generals want

CONFIDENTIAL

Page 15

1    to put on the record.

2              MR. DAVIS:  So good morning.  My name's

3    Aaron Davis.  I'm an Assistant Attorney General here

4    on behalf of the Commonwealth of Massachusetts.

5              As the parties know, the Commonwealth has

6    independently noticed Justin Cheng's deposition in

7    this pending action, the Commonwealth of

8    Massachusetts versus Meta Platforms, Inc., and

9    Instagram, LLC, Suffolk Superior Court, Civil Action

10   Number 2384 CV 02397.

11             The Commonwealth has coordinated to make

12   this deposition as convenient as possible for

13   Mr. Cheng given the number of separate cases in

14   which his testimony is necessary.

15             However, recognizing that certain

16   plaintiff groups in this coordinated deposition are

17   governed by time limits or other restrictions that

18   do not apply to the Massachusetts case, the

19   Commonwealth reserves the right to suspend or

20   continue this deposition for purposes of the

21   Massachusetts litigation as we deem necessary to

22   complete our deposition questioning in the event

23   that our opportunity to fully examine the witness is

24   impacted due to the time limits imposed on certain

25   parties, the number of parties participating in this

CONFIDENTIAL

Page 16

1    coordinated deposition, the needs of the witness,

2    newly received or not yet received documents or

3    other similar circumstances.

4         We will communicate separately with the

5    relevant counsel to continue the deposition if and

6    when necessary.

7         Thank you.

8         MR. MAINLAND:  On behalf of the witness,

9    we reserve all rights as well.

10        MS. KHANDESHI:  I would like to also put

11   in a reservation on behalf of the State of Arkansas.

12   My name is Snehee Khandeshi.  And on behalf of the

13   State of Arkansas we reserve our right to keep this

14   deposition open.  The reasons for this are twofold.

15        First, Arkansas law and procedure do not

16   limit the deposition to a set number of hours.  And

17   second, Meta has very recently produced more than

18   9 million pages of documents into the State of

19   Arkansas's case and continues to produce documents.

20        Accordingly, we reserve our right to

21   resume questioning as needed once such documents and

22   any further productions have been fully reviewed.

23        MR. GREENE:  Good morning.  This is

24   Vincent Greene from the law firm of Motley Rice.  I

25   have an additional statement to make on the record

CONFIDENTIAL

Page 17

1    on behalf of the State of New Mexico.

2            As counsel for Meta is aware, the State of

3    New Mexico has agreed to participate in this

4    deposition for the convenience of the witness.

5            However, Meta has yet to produce

6    significant volumes of documents in the New Mexico

7    litigation, including, but not limited to, documents

8    containing search terms, specified -- strike that --

9    specific to the State's claims, documents and

10   additional custodians relevant to the State's

11   claims, and documents that were subject to the

12   State's motion to compel, which the court has

13   granted.

14           Therefore, the State reserves the right to

15   keep this deposition open and to seek to recall this

16   witness for deposition to the extent later produced

17   documents require further questioning on any topic.

18           The State also participates subject to its

19   understanding that Meta will provide counsel a full

20   and fair opportunity to question this witness.  And

21   the State reserves the right to raise any

22   constraints on counsel's ability to question this

23   witness with the court.

24           Thank you.

25           MR. AYERS:  Okay.

CONFIDENTIAL

Page 18

1          MS. BARNHART:  On behalf of Meta, we
2    dispute these issues this brings up on the record.
3    We're happy to take them up offline.  But from our
4    position this is, you know, the day of the
5    deposition and we'll get it done today.
6          MR. MAINLAND:  Just to close this out,
7    this is -- you know, on behalf of the witness, we've
8    been in discussions with counsel for the New Mexico
9    Attorney General.  We're happy to take under
10   advisement any requests for further questioning,
11   whether it's by New Mexico or any other party here.
12         But we did have an agreement with at least
13   a significant set of State Attorney Generals and
14   private plaintiffs to limit today's deposition to
15   seven hours on the record.  We'll take under
16   advisement any requests, but we reserve all rights
17   to object to any continuation.
18         Thank you.
19         MR. GREENE:  And this is Vincent Greene
20   for the State of New Mexico.  I just want to make
21   sure this is clear for the record.
22         The State of New Mexico was not part of
23   those conversations setting a time limit for this
24   deposition.  We have discussed that time limit with
25   Mr. Ayers from Seeger Weiss, as well as counsel for

CONFIDENTIAL

Page 19

```
 1    the witness.  Have not come to any particular
 2    agreement but agreed to address these as we go along
 3    in the deposition.  But I just want to be clear for
 4    the record that New Mexico is not part of those
 5    conversations.
 6              Thank you.
 7                    EXAMINATION
 8    BY MR. AYERS:
 9         Q.   Good morning, Mr. Cheng.
10         A.   Good morning.
11         Q.   How are you?
12         A.   Good.
13         Q.   My name is Chris Ayers.  I'm with the law
14    firm of Seeger Weiss, and I represent the personal
15    injury plaintiffs and the school districts.
16         A.   Okay.
17         Q.   Could you state your full name for the
18    record.
19         A.   Justin Cheng.
20         Q.   And what is your home address?
21         A.   ███████████████████████████████████████
22    ████████████████████
23         Q.   And who is your current employer?
24         A.   It is Discord.
25         Q.   What is your work address?
```

CONFIDENTIAL

Page 20

1          A.    I do not remember my work address.

2          Q.    What city and state is it in?

3          A.    It's in San Francisco, California.

4          Q.    And what is your current title and

5     position?

6          A.    Staff data scientist.

7          Q.    What is the scope of your responsibility

8     at Discord?

9          A.    I help Discord use data to make better

10    decisions.  I help teams run experiments.

11         Q.    What kind of experiments?

12         A.    Just regular A/B tests, experiments just

13    to understand different features that Discord is

14    thinking about shipping or not shipping.

15         Q.    How long have you worked at Discord?

16         A.    I've worked at Discord for just over a

17    year and a half.

18         Q.    I would like to cover some ground rules

19    with you today.

20               Have you ever been deposed before?

21         A.    No, I have not.

22         Q.    Okay.  So I'm going to ask you a series of

23    questions.  If you do not understand the questions,

24    just let me know, and I will clarify for you.

25               Because this testimony is being

CONFIDENTIAL

Page 21

1    transcribed by the court reporter, it's important

2    that you respond verbally and not simply with a nod

3    or shake of the head.  We're going to try not to

4    talk over each other.  In the ordinary flow of

5    conversation it is natural for us to interrupt each

6    other, but in this setting it would be difficult for

7    the court reporter to transcribe.

8             Your counsel may object to some of my

9    questions.  Those objections are just made for the

10   record purposes.  In response, I may or may not

11   rephrase my question.  But unless your counsel

12   specifically instructs you not to answer, though,

13   you must answer any questions to the best of your

14   ability.

15            If you would like to take a break at any

16   time, please let me know and we can take one.  I

17   only ask that if a question is pending, you answer

18   it first.

19            Do you understand everything that we have

20   gone over so far?

21       A.   Yes, I do.

22       Q.   Great.  Is there anything that would

23   affect your memory sitting here today, such as

24   prescription medications?

25       A.   No.

CONFIDENTIAL

Page 22

1      Q.    Is there any -- anything that would
2   prevent you from providing truthful testimony today?
3      A.    No.
4      Q.    If I use the term "defendants," do you
5   understand that I mean Meta Platforms, Inc.,
6   Facebook Payments, Inc., Siculus, Inc., Facebook
7   Operations, LLC, and Instagram, LLC?
8      A.    Yes.
9      Q.    If I use the term "Meta," do you
10   understand that I mean Meta Platforms, Inc., former
11   Facebook?
12      A.    Yes.
13      Q.    And Facebook, the company changed its name
14   to Meta in 2021, correct?
15      A.    That's right.
16      Q.    And Facebook, the company owned and
17   operated both Facebook app and Instagram app,
18   correct?
19      A.    Correct.
20      Q.    When Meta was called Facebook company, its
21   research and discussions about platform addiction or
22   problematic use, engagement, mental health often
23   included both Facebook and Instagram since Meta,
24   formerly Facebook, owns and operates both platforms,
25   right?

CONFIDENTIAL

Page 23

1          MR. MAINLAND:  Objection to form.

2    Foundation.

3          THE WITNESS:  I'm sorry.  Could you

4    restate the question?

5    BY MR. AYERS:

6        Q.   Sure.  Sure.  When Meta was still called

7    Facebook -- we're talking about the company not the

8    app -- its research and discussions about platform

9    addiction or problematic use, engagement, and mental

10   health often included both the Facebook app and

11   Instagram app, correct?

12          MR. MAINLAND:  Same objection.

13          THE WITNESS:  I think the -- I think

14   definitely problematic use.  I think there was

15   discussion whether stuff is defined as addiction or

16   not.

17   BY MR. AYERS:

18       Q.   But those discussions involved both --

19   both platforms, Facebook and Instagram, correct?

20          MR. MAINLAND:  Objection.

21          THE WITNESS:  As far as I know, I did

22   study both Facebook and Instagram apps.  But, yeah,

23   that is the extent of my knowledge.

24   BY MR. AYERS:

25       Q.   Over the -- and so it's true that over the

CONFIDENTIAL

Page 24

1    course of your career at Meta you studied both
2    Facebook and Instagram, correct?
3        A.    That's right.
4        Q.    Are you represented by counsel today at
5    your deposition?
6        A.    Yes.
7        Q.    Who is your counsel?
8        A.    My counsel -- I'm represented by Grant
9    Mainland from Milbank and Meta Platforms' counsel as
10   well.
11       Q.    Did you ever ask for separate, independent
12   counsel to represent you?
13           MR. MAINLAND:  I just want to caution the
14   witness not to divulge any communications you had
15   with counsel.  If you can answer the question
16   without testifying as to communications with
17   counsel, go ahead, but otherwise, I would instruct
18   you not to answer.
19           THE WITNESS:  Yeah, I decline to answer
20   the question.
21   BY MR. AYERS:
22       Q.    Are you here today representing Meta?
23           MR. MAINLAND:  Objection to form.
24           THE WITNESS:  I -- I don't believe so.
25   ///

CONFIDENTIAL

Page 25

1    BY MR. AYERS:

2        Q.    Have you spoken to anyone about your

3    deposition?

4        A.    Yes.

5        Q.    Who did you speak with?

6        A.    I have told coworkers that I'll be at a

7    deposition, but not what kind of deposition.

8        Q.    And who else did you speak with?

9        A.    I guess my wife knows about this.  I think

10   that might be it.

11       Q.    Did you speak with any of your former

12   colleagues at Meta?

13       A.    Yes.  I have spoken once with a former

14   colleague of Meta.

15       Q.    Who is that?

16       A.    It was over Chat.  It was one sentence.

17   It was Moira Burke.

18       Q.    And did you discuss anything related to

19   this litigation?

20       A.    No.

21       Q.    And did you speak with Meta's counsel in

22   advance of the deposition today?

23            MR. MAINLAND:  Objection.  Form.

24            You can answer yes or no.  I wouldn't

25   testify to the substance.

CONFIDENTIAL

Page 26

1              THE WITNESS:  Yes.

2    BY MR. AYERS:

3         Q.    And those are attorneys from Covington &

4    Burling?

5         A.    That's right.

6         Q.    And how many times did you meet with them?

7         A.    I have met with them, at this point, maybe

8    around five times.

9         Q.    And how -- when did you start -- when was

10    the first time you met with them?

11         A.    I do not recall.  It was probably some --

12    at some point last year.

13         Q.    When you started?

14         A.    Yeah, when?

15         Q.    When was the last meeting?

16         A.    I guess just before this deposition.

17         Q.    This morning?

18         A.    Yeah.

19         Q.    How long was each session?

20         A.    I think depending -- some sessions were a

21    couple hours.  Some sessions were shorter, like half

22    an hour or less.

23         Q.    How many hours do you think you spent

24    preparing for your deposition today?

25         A.    Around, maybe, 15 hours.

CONFIDENTIAL

Page 27

1    Q.    Did you review any documents to refresh
2    your recollection of any events?
3            MR. MAINLAND:  Objection to form.
4            You can answer yes or no, but I wouldn't
5    identify any particular documents on work product
6    grounds.
7            THE WITNESS:  Yes.
8    BY MR. AYERS:
9    Q.    Were all of those documents documents that
10   you created while you were at -- at Meta?
11           MR. MAINLAND:  You can answer that.
12           THE WITNESS:  Okay.  I reviewed some
13   documents that I created at the time.  I think I
14   also saw some documents that I did not create.
15   BY MR. AYERS:
16   Q.    Do you know what a Bates stamp is?
17   A.    No, I do not.
18   Q.    Okay.  How many documents do you think you
19   reviewed in preparation for your deposition?
20   A.    Maybe about a dozen or so.
21   Q.    Are you aware that plaintiffs' counsel had
22   requested some time to speak with you in advance of
23   your deposition today?
24           MR. MAINLAND:  So I'm going to direct you
25   not to answer about any communications you have had

Page 28

1    with counsel.  So I am going to instruct you not to

2    answer that question as answering it would reveal

3    any discussions you have had with counsel.

4               THE WITNESS:  I decline to answer.

5    BY MR. AYERS:

6        Q.   But you did not meet with any plaintiffs'

7    counsel or Attorney Generals, correct, in advance of

8    your deposition?

9               MR. MAINLAND:  You can answer that.

10              THE WITNESS:  Yes, that's right.

11   BY MR. AYERS:

12       Q.   Did you do anything else to prepare for

13   your deposition today?

14       A.   No.

15       Q.   How many attorneys participated in those

16   earlier meetings?

17       A.   Can I answer?

18              MR. MAINLAND:  Sure.

19              THE WITNESS:  I think, depending on the

20   meeting, maybe three to four.

21   BY MR. AYERS:

22       Q.   Were those meetings in person or over

23   Zoom?

24       A.   There were some meetings over Zoom and

25   some meetings in person.

CONFIDENTIAL

Page 29

```
 1        Q.    Did you do any question-and-answer prep
 2   questions?
 3              MR. MAINLAND:  I am going to direct you
 4   not to answer that question.
 5              THE WITNESS:  I decline to answer.
 6   BY MR. AYERS:
 7        Q.    Mr. Cheng, do you understand that you're
 8   under oath and required to answer questions
 9   truthfully today?
10        A.    Yes.
11        Q.    Do you agree that when I ask you a
12   yes-or-no question, you will answer with a yes or no
13   first, and then if you feel the need, you can
14   provide an explanation afterwards?
15              MR. MAINLAND:  I object to that question.
16              THE WITNESS:  I think depending on the
17   question, that may or may not apply.
18   BY MR. AYERS:
19        Q.    Okay.  But you will do your best to answer
20   with a yes or no to the extent that the question
21   calls for a yes-or-no answer?
22              MR. MAINLAND:  Objection.
23              THE WITNESS:  I think I will do my best to
24   answer if a yes or no if I see -- I deem it
25   appropriate.
```

CONFIDENTIAL

Page 30

1              (Whereupon, Meta-Cheng Exhibit 1 was

2      marked for identification.)

3      BY MR. AYERS:

4          Q.   Mr. Cheng, I'm handing you what's been

5      marked as Exhibit Number 1 to your deposition.

6              I'll represent for the record that Exhibit

7      Number 1 is Plaintiffs' Amended Cross Deposition

8      Notice of Justin Cheng, dated February 21st of 2025.

9              That's the date when your deposition was

10     originally scheduled for, correct?

11         A.   I do not remember.

12         Q.   Okay.  Have you -- have you seen your

13     deposition notice before?

14         A.   I believe this is the first time I am

15     seeing this document.

16         Q.   And you -- you understand that you're

17     sitting here today at your deposition pursuant to

18     the notice of deposition?

19         A.   Yes.

20             (Whereupon, Meta-Cheng Exhibit 2 was

21     marked for identification.)

22     BY MR. AYERS:

23         Q.   I'm handing you what's been marked as

24     Exhibit 2 to your deposition.

25             Do you recognize this document?

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

CONFIDENTIAL



Golkow Technologies,
A Veritext Division

CONFIDENTIAL



CONFIDENTIAL



CONFIDENTIAL

1
1
1
1
1
1
1
1
1
1
2
2
2
2
2
2

CONFIDENTIAL



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

CONFIDENTIAL



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

CONFIDENTIAL

1
1
1
1
1
1
1
1
1
1
2
2
2
2
2
2

Golkow Technologies,
A Veritext Division

CONFIDENTIAL



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

CONFIDENTIAL



CONFIDENTIAL



CONFIDENTIAL



CONFIDENTIAL



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

CONFIDENTIAL



CONFIDENTIAL



CONFIDENTIAL

1
1
1
1
1
1
1
1
1
1
2
2
2
2
2
2

CONFIDENTIAL



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

CONFIDENTIAL



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

CONFIDENTIAL







CONFIDENTIAL



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

CONFIDENTIAL



CONFIDENTIAL



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

CONFIDENTIAL

