# AMENDED Exhibit 851

# PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Case No.: 4:22-md-03047-YGR
MDL No. 3047
In Re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation

```
1                UNITED STATES DISTRICT COURT

2          FOR THE NORTHERN DISTRICT OF CALIFORNIA

3

4     ------------------------------x
      IN RE: SOCIAL MEDIA ADOLESCENT ) Case No. 4:22-md-
5     ADDICTION/PERSONAL INJURY      ) 3047-YGR
      PRODUCTS LIABILITY LITIGATION  ) MDL No. 3047
6     ------------------------------x

7

8         SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              FOR THE COUNTY OF LOS ANGELES

10                  UNLIMITED JURISDICTION

11    COORDINATION PROCEEDING          ) Judicial Council
      SPECIAL TITLE [RULE 3.550]       ) Coordination
12                                     ) No. 5255
      SOCIAL MEDIA CASES               )
13    _____  ) Judge Carolyn Kuhl

14

15        CONTAINS HIGHLY CONFIDENTIAL INFORMATION

16

17

18       VIDEOTAPED DEPOSITION OF DAVID LEVENSON

19               LOS ANGELES, CALIFORNIA

20                    MARCH 14, 2025

21                       8:45 A.M.

22

23    Job No.: 7209739

24    Pages: 1 - 463

25    Reported by: Leslie A. Todd, CSR No. 5129 and RPR
```

1   education, that you might not have been able
2   to achieve what you achieved in terms of your
3   academic performance.  True?
4              MR. MAJOR:  Objection.  Vague,
5        improper opinion.
6              THE WITNESS:  Yes, if I was not
7        paying attention in class or in
8        college, I don't believe I would have
9        achieved what I've achieved today.
10  BY MR. HONNOLD:
11       Q.    You would agree with me that
12  collectively if a number of students during
13  the course of a school day are involved in
14  looking at social media during class, at the
15  time of class, around class, associated with
16  the school day, that that may impact a
17  teacher's ability -- a teacher's ability to
18  provide them with good quality instruction?
19             MR. MAJOR:  Objection.  Vague,
20       compound, speculation, improper
21       opinion.
22             THE WITNESS:  If I understand
23       your question, yes, if collectively
24       students are not paying attention,
25       that would disrupt the teacher's

1         ability to teach.
2    BY MR. HONNOLD:
3         Q.    Okay.  You would agree with me
4    that as a general matter, public school
5    teachers, it is reasonable for them to expect
6    a classroom environment that is not
7    disruptive, correct?
8              MR. MAJOR:  Objection.  Vague,
9         foundation, speculation.
10             THE WITNESS:  I don't know if I
11        could speak to what teachers should
12        expect.  Teachers control the
13        classroom, so I would expect that they
14        would create an environment that is
15        distraction-free.
16   BY MR. HONNOLD:
17        Q.    Could it be a distraction or
18   disruptive to the educational process if
19   students in class are spending a fair amount
20   of time -- and I'm now holding my cell phone
21   and I'm going to hold it down under the
22   desk -- if students are doing that a fair
23   amount of time during the school day, that
24   could be disruptive to the school
25   environment.  True?

1        MR. MAJOR: They've been
2    produced.
3        MR. HONNOLD: All of the
4    things, the personal notes were
5    produced, his handwritten notes?
6        MR. MAJOR: We can talk about
7    it off the record.
8        MR. HONNOLD: Okay, great.
9    BY MR. HONNOLD:
10       Q.    Okay. Let's go to this
11   document, which we marked as an exhibit.
12   It's Bates 7394 at the end.
13            And if we look at the bottom or
14   about two-thirds of the way down, there is a
15   sentence above the web chat heading that
16   says: "The following projects are presented
17   in order of estimated investment size and
18   impact."
19            Do you see that?
20       A.    Yes.
21       Q.    And it looks like above there's
22   discussion between you and Siegel, and you're
23   kind of talking about the impact of COVID on
24   school and maybe that's slowing down DAU.
25   Right?

| | | |
|---|---|---|
| 1 | A. | Yes, I see a sentence |
| 2 | representing that, yes. | |
| 3 | Q. | Okay.  Then in this heading |
| 4 | that's called "Web Chat," it says:  "Today's | |
| 5 | students and young working professionals are | |
| 6 | spending a higher amount of time in front of | |
| 7 | screens in general.  So mobile time spent is | |
| 8 | growing, but we believe desktop -- | |
| 9 | desktop/web time is up even more, as more | |
| 10 | class and work shifts to online video | |
| 11 | services like Zoom, and commute and | |
| 12 | under-the-desk phone time decreases." | |
| 13 | | Do you see that? |
| 14 | A. | I see that, yes. |
| 15 | Q. | Okay.  So the context there for |
| 16 | under-the-desk phone time, what -- what is | |
| 17 | your under- -- understanding of -- of that, | |
| 18 | as Josh Siegel was using that term and as -- | |
| 19 | as you read this? | |
| 20 | A. | So I don't have a recollection |
| 21 | or a direct understanding of that term, but | |
| 22 | in context, I would assume it means as | |
| 23 | students were looking at their phone under a | |
| 24 | desk, in class. | |
| 25 | Q. | And you remember we -- you |

1    remember we talked about distractions in
2    school, and teachers having the expectation
3    of -- you know, or needing to have a
4    distraction-free classroom and kids needing a
5    distraction-free classroom?
6              Here is you, head of the growth
7    team, and Siegel -- what was his role?
8         A.   At this time I believe he was
9    head of growth product.
10        Q.   Okay.  You're talking on
11   your -- your Slack about the phenomena of
12   kids using their phone looking at social
13   media, maybe including Snapchat in school.
14   Right?
15             MR. MAJOR:  Objection.
16        Misstates the document.
17             THE WITNESS:  Josh sent me an
18        update that references that, yes.
19   BY MR. HONNOLD:
20        Q.   Okay.  Did you anywhere in this
21   document say, Hey, we got to get this stuff
22   out of the schools.  We can't be having
23   kids -- we got to make sure that we're not
24   doing anything to promote or perpetuate kids
25   being on our platform at school?

1                Did you ever say that?
2        A.      That's not in this document,
3    no.
4        Q.      Have you ever said -- have you
5    ever said in your professional role ever,
6    We've got to take some action now today to
7    make sure that we aren't doing anything to
8    promote or enable kids getting on the
9    Snapchat platform when they're in class doing
10   this under-the-desk time sort of stuff?
11       A.      Not to my recollection.
12               MR. HONNOLD:  Okay.  All right.
13           Let's take a break.  We will get an
14           updated time.  I may be done.  I might
15           not be, depending on what I got left.
16           Thank you.
17               THE VIDEOGRAPHER:  We are now
18           going off the record, and the time is
19           now 4:47.
20               (Recess.)
21               THE VIDEOGRAPHER:  We are now
22           going back on the record, and the time
23           is 4:57 p.m.
24   BY MR. HONNOLD:
25       Q.      Mr. Levenson, we're back on

1          ▇▇▇▇▇ (phonetic).  Do you see that?
2          A.      Yes.
3          Q.      Who is Mr. ▇▇▇▇▇, do you
4    know?
5          A.      I don't know.  He's an employee
6    at Snapchat if he has access to this.
7          Q.      And do you see him kind of
8    talking in detail about a conversation that
9    he had with an elementary school teacher?
10         A.      Yes, I see that.
11         Q.      And did you read that note
12   about how this teacher is talking about how
13   there's concern about Snapchat accounts and
14   how they may be being used to at least play a
15   part in bullying in school?
16         A.      Yes, I see that message.
17         Q.      Okay.  Had anything like this
18   ever been brought to your attention before
19   about concern about a relationship with
20   Snapchat and school?
21         A.      Not that I can recall.
22         Q.      Okay.  By this time in 2022,
23   September of 2022, had you heard anything
24   about concern within Snapchat about some
25   schools or school districts putting in place

1    CERTIFICATE OF CERTIFIED SHORTHAND REPORTER
2       The undersigned Certified Shorthand Reporter
3    does hereby certify:
4       That the foregoing proceeding was taken before
5    me at the place and time therein set forth, at
6    which time the witness was duly sworn; That the
7    testimony of the witness and all objections made
8    at the time of the examination were recorded
9    stenographically by me and were thereafter
10   transcribed, said transcript being a true and
11   correct copy of my shorthand notes thereof; That
12   the dismantling of the original transcript will
13   void the reporter's certificate.
14      In witness thereof, I have subscribed my name
15   this date:  March 28, 2025.
16
                        <%14542,Signature%>
17                      _____
18                      LESLIE A. TODD, CSR, RPR
19                      Certificate No. 5129
20
21   (The foregoing certification of
22   this transcript does not apply to any
23   reproduction of the same by any means,
24   unless under the direct control and/or
25   supervision of the certifying reporter.)