*[Submitting Counsel on Signature Page]*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case No. 4:22-md-03047-YGR |
| THIS DOCUMENT RELATES TO: | **STATE ATTORNEYS GENERAL'S RESPONSE TO META'S MOTION TO EXCLUDE EXPERT TESTIMONY OF ADAM ALTER AND RAVI IYER** |
| 4:23-cv-05448 | |
| | Judge: Hon. Yvonne Gonzalez Rogers |
| | Magistrate Judge: Hon. Peter H. Kang |

i

# TABLE OF CONTENTS

I.    Introduction ................................................................................................................. 2

II.   Legal Standard ........................................................................................................... 2

III.  Dr. Alter's Opinions Are Admissible Under Rule 702 ............................................... 2

   A.    Dr. Alter's Opinions Are Grounded in Relevant Facts and Tethered to His Expertise (Ops. D, E, G, L, M, O) .......................................................................... 3

   B.    Dr. Alter's Opinions Will Aid the Factfinder in Understanding How Meta's Marketing Strategies Influenced Consumer Perception (Ops. D, E, G, L, M, O) ..................................... 5

   C.    Dr. Alter Employs a Reliable Methodology to Formulate His Consumer Perception Opinions (Ops. B, C, F, G, H) ................................................................ 6

   D.    Dr. Alter's Opinions Are Within the Bounds of Permissible Expert Testimony ............ 9

   E.    Dr. Alter Properly and Reliably Opines on Child-Directedness (Ops. L-P) ................ 10

IV.  Dr. Iyer's Testimony Is Reliable and Relevant For the Factfinder ................................... 11

   A.    Dr. Iyer's Opinions are Methodologically Sound ........................................................ 12

   B.    Opinions 1, 3, and 4 Are Relevant and Helpful For the Factfinder ............................. 13

V.    Conclusion ................................................................................................................. 14

1

# TABLE OF AUTHORITIES

2

**Cases**

3  *Bailey v. Rite Aid Corp.*,
    338 F.R.D. 390 (N.D. Cal. 2021) ........................................................................................... 7

4
   *Blue Bottle Coffee, LLC v. Liao*,
5    2023 WL 6850573 (N.D. Cal. Oct. 16, 2023) ........................................................................ 7

6  *Capri Sun GmbH v. Am. Beverage Corp.*,
    595 F. Supp. 3d 83 (S.D.N.Y. 2022) ..................................................................................... 6

7
   *D.F. by & through Amador v. Sikorsky Aircraft Corp.*,
8    2017 WL 4922814 (S.D. Cal. Oct. 30, 2017) ........................................................................ 4

9  *Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) ......................................................................................................... 12, 13
10
   *Engilis v. Monsanto Co.*,
11   151 F.4th 1040 (9th Cir. 2025) .............................................................................................. 2

12 *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management, Inc.*,
    618 F.3d 1025 (9th Cir. 2010) ............................................................................................... 5
13
   *FTC v. BurnLounge, Inc.*,
14   753 F.3d 878 (9th Cir. 2014) ............................................................................................... 12

15 *Fujifilm Corp. v. Motorola Mobility LLC*,
    2015 WL 1737951 (N.D. Cal. Apr. 8, 2015) ......................................................................... 7
16
   *Georges v. Novartis Pharms. Corp.*,
17   2013 WL 5217198 (C.D. Cal. Apr. 4, 2013) ........................................................................ 13

18 *Hadley v. Kellogg Sales Co.*,
    324 F. Supp. 3d 1084 (N.D. Cal. 2018) ................................................................................. 7
19
   *Hangarter v. Provident Life & Acc. Ins. Co.*,
20   373 F.3d 998 (9th Cir. 2004) ............................................................................................. 9, 10

21 *In re Apple Inc. Sec. Litig.*,
    2023 WL 4556765 (N.D. Cal. July 17, 2023) ..................................................................... 6, 9
22
   *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*,
23   2014 WL 3557345 (N.D. Tex. July 18, 2014) ....................................................................... 8

24 *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*,
    2016 WL 9560113 (N.D. Tex. Oct. 3, 2016) ......................................................................... 7
25
   *In re Glumetza Antitrust Litig.*,
26   2021 WL 3773621 (N.D. Cal. Aug. 25, 2021) ....................................................................... 3

27 *In re Google RTB Consumer Privacy Litig.*,
    2024 WL 2242690 (N.D. Cal. Apr. 4, 2024) ......................................................................... 2
28

*In re Juul Labs, Inc. Mktg., Sales Pracs. & Prods. Liab. Litig.*,
   2022 WL 1814440 (N.D. Cal. June 2, 2022) ...................................................... 6, 7, 8

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*,
   609 F. Supp. 3d 942 (N.D. Cal. 2022) ............................................................. 10

*In re Packaged Seafood Prods. Antitrust Litig.*,
   2024 WL 1269863 (S.D. Cal. Mar. 25, 2024) ....................................................... 10

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   638 F. Supp. 3d 227 (E.D.N.Y. 2022) ............................................................. 11

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
   753 F. Supp. 3d 849 (N.D. Cal. 2024) ............................................................. 11

*In re: Tylenol (Acetaminophen) Mktg., Sales Pracs. and Prods. Liab. Litig.*,
   2016 WL 807377 (E.D.P.A March 2, 2016) .......................................................... 4, 7

*Innovation Ventures, LLC v. Custom Nutrition Labs., LLC*,
   2021 WL 12255004 (E.D. Mich. Sept. 29, 2021) ..................................................... 14

*Krommenhock v. Post Foods, LLC*,
   334 F.R.D. 552 (N.D. Cal. 2020) ................................................................... 7

*Manpower, Inc. v. Ins. Co. of Pa.*,
   732 F.3d 796 (7th Cir. 2013) ...................................................................... 9

*Montera v. Premier Nutrition Corp.*,
   2022 WL 1225031 (N.D. Cal. Apr. 26, 2022) ....................................................... 5

*Schwab v. Philip Morris USA, Inc.*,
   2005 WL 2401647 (E.D.N.Y. September 29, 2005) ................................................... 5

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997) .................................................................... 13

*United States Fid. & Guar. Co. v. Ulbricht*,
   576 F. Supp. 3d 850 (W.D. Wash. 2021) ........................................................... 10

*United States v. Diaz*,
   876 F.3d 1194 (9th Cir. 2017) .................................................................... 8

*United States v. Finley*,
   301 F.3d 1000 (9th Cir. 2002) .................................................................... 14

*United States v. Hankey*,
   203 F.3d 1160 (9th Cir. 2000) .................................................................... 13

*United States v. Romero-Lobato*,
   379 F. Supp. 3d 1111 (D. Nev. 2019) ............................................................. 14

*United States v. Soulard*,
   730 F.2d 1292 (9th Cir. 1984) .................................................................... 13

iv

*Vizcarra v. Michaels Stores, Inc.*,
  2025 WL 1561530 (N.D. Cal. June 2, 2025) ............................................................................ 10

**Rules**

Fed. R. Evid. 702 ..................................................................................................................... 2, 9

## I.        Introduction

The AGs' experts, Drs. Adam Alter and Ravi Iyer, are qualified experts in their respective fields. Both employ reliable methodologies to reach their opinions, and their opinions will aid the factfinder on key issues by providing frameworks to understand complex issues that are present in this case. Their opinions therefore satisfy the *Daubert* standard. Fed. R. Evid. 702. Meta's motion is a textbook example of misapplying that standard to exclude opinions for issues primarily relating to the weight or phrasing of the testimony, rather than its admissibility. Meta ignores both experts' relevant qualifications, summarily describes their opinions as "irrelevant" to the factfinder, and nitpicks word choice. Lacking the requisite specificity, Meta's scattershot motion seeks the exclusion of virtually all of Drs. Alter and Iyer's reports, and its qualms with the opinions can be addressed on cross-examination or with objections at trial. This Court should deny Meta's motion.

## II.       Legal Standard

An expert must: 1) be qualified in their field; 2) use reliable data and methodology; and 3) offer testimony that will assist the trier of fact. Fed. R. Evid. 702; *see also Engilis v. Monsanto Co.*, 151 F.4th 1040, 1047 (9th Cir. 2025). When assessing a *Daubert* motion, courts must focus on the expert's methods, not their conclusions. *In re Google RTB Consumer Privacy Litig.*, 2024 WL 2242690, at *2 (N.D. Cal. Apr. 4, 2024). Courts consistently state that Rule 702 should be applied with a "liberal thrust favoring admission" when the expert's opinion "satisfies the threshold requirements established by Rule 702." *Engilis,* 151 F. 4th at 1050 (cleaned up).

## III.      Dr. Alter's Opinions Are Admissible Under Rule 702

The State AGs' claims will require the jury to determine: 1) whether Meta engaged in deceptive marketing practices by making false or misleading claims; and 2) whether Meta's platforms, or portions thereof, are child-directed. Dr. Adam Alter provides a reliable methodology and probative testimony to help the jury undertake those determinations.

Dr. Alter is a well-regarded authority on the science of marketing and consumer behavior. He is a tenured Professor of Marketing at NYU's Stern School of Business, with an affiliated professorship in NYU's Department of Psychology. With 25 years of academic, research, and consulting experience, Alter's work examines "human judgment and decision-making," cognitive

fluency or the "ease or difficulty a person experiences when processing or making sense of information," and "adolescent social and cognitive psychology." Ex. 1, Alter Rep. ¶¶ 8, 11. Alter applies his expertise in the psychology of communication, as a marketing professor, and as a business consultant to "corporate communications," marketing, and "business and product strategy." Ex. 1, Alter Rep. ¶¶ 12, 13, 17. His research has been widely published in academic journals, and his decade-long work on screen-based technologies has also led to "consulting and policymaking engagements on the topic of online engagement and behavior" including "directly speaking to, interacting with, and gathering perceptions from a variety of public audiences on social media issues." Ex. 1, Alter Rep. ¶¶ 6, 7.

### A. Dr. Alter's Opinions Are Grounded in Relevant Facts and Tethered to His Expertise (Ops. D, E, G, L, M, O)

Under Rule 26(a)(2), an expert must summarize the facts and data considered in their report. An expert's testimony at trial must "remain tethered to the expert opinions he provides, but he must be allowed to discuss facts apropos to those opinions." *In re Glumetza Antitrust Litig.*, 2021 WL 3773621, at *20 (N.D. Cal. Aug. 25, 2021). To formulate his deception opinions, Alter first sets forth the foundational marketing and consumer psychology principles integral to his analysis and assignment. He lays out precepts regarding: 1) social media's unique attributes as a product in the marketplace; 2) the role of persuasion in corporate communication; and 3) consumer information processing. Ex. 1, Alter Rep. ¶¶ 42-100. He then applies his expertise and a social influence analytic framework (SIA)—anchored in established behavioral theories that examine the science and tactics associated with persuasion and communications—to determine the messages that a reasonable consumer would likely understand Meta to be conveying. Ex. 1, Alter Rep. ¶ 32. In doing so, Alter concludes that Meta conveyed the following net impressions: 1) it prioritizes health and safety over its own business interests (Ex. 1, Alter Rep. ¶ 163); 2) its platforms were not addictive (Ex. 1, Alter Rep. ¶¶ 226-30); 3) its platforms do not harm users (Ex. 1, Alter Rep. ¶¶ 289-92); and 4) it effectively prevents U13s from using its platforms (Ex. 1, Alter Rep. ¶¶ 359-61).

In addition to applying his expertise and SIA, Alter reviewed and synthesized Meta's internal documents to determine the factual underpinnings of Meta's marketing strategies and

tactics. An expert in consumer psychology may review and analyze company documents to extrapolate marketing strategies. *In re: Tylenol (Acetaminophen) Mktg., Sales Pracs. and Prods. Liab. Litig.*, 2016 WL 807377, at *5 (E.D.P.A March 2, 2016). Alter's review of internal documents uncovered ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████ Ex. 2, Alter Rebuttal ¶ 35; Ex. 1, Alter Rep. § IX.C; ¶ 282. Similarly, Meta's internal research reveals that certain platform features appeal to adolescents and details how Meta approached attracting this audience. Ex. 1, Alter Rep. ¶¶ 115-119, 239-246. Focus groups and surveys conducted by Meta demonstrated how consumers reacted to these efforts. *See, e.g.*, Ex. 1, Alter Rep. ¶¶ 125-129. This evidence is a central basis for Alter's opinions and is essential to rebutting claims that his conclusions are incorrect.

While Meta does not challenge Alter's overall expertise, it incorrectly asserts that Alter lacks the academic and professional qualifications necessary to opine whether Meta's platforms are credence goods. The concept of "credence goods" is a widely recognized concept in marketing and consumer behavior, as evidenced by its frequent discussion in marketing textbooks, including works co-authored by Meta's own marketing expert responsive to Alter, Professor Kevin Keller.[1] Alter may offer testimony on credence goods as it is "within the reasonable confines of his subject area." *D.F. by & through Amador v. Sikorsky Aircraft Corp.*, 2017 WL 4922814, at *14 (S.D. Cal. Oct. 30, 2017) (citation omitted). Drawing on his expertise, Alter's testimony will provide a conceptual framework for the Factfinder to understand information asymmetry in the marketplace in the context of digital products like Meta's platforms. Meta's remaining objections to Alter's articulation of credence goods and the evidence he relies on are best addressed through cross-examination. *See* Ex. 2, Alter Rebuttal ¶¶ 24-26.

Similarly, Alter relies on his marketing and social and cognitive adolescent development expertise to formulate his child-directedness opinions. He applies his experience to examine internal and external documents to understand Meta's marketing strategies towards child users and

---

[1] *See e.g.* Ex. 3, Kapferer, J. N. (2008). *The New Strategic Brand Marketing (4th ed.)*, Kogan Page Limited. p. 22; Keller, K. L. and Swaminathan, V. (2020), and Ex. 4, *Strategic brand management: Building, Measuring, and Managing Brand Equity* (5th ed.), Pearson. pp. 36-37.

evaluate the child-directed features of Instagram and Facebook. Ex. 1, Alter Rep. ¶ 401. Using his expertise, Alter synthesizes evidence of Meta's efforts to attract young users, the prevalence of child-oriented content and features on Meta's platforms, and the significant use of Meta's platforms by children, which will assist the jury in assessing whether the platforms are directed to children.

**B. Dr. Alter's Opinions Will Aid the Factfinder in Understanding How Meta's Marketing Strategies Influenced Consumer Perception (Ops. D, E, G, L, M, O)**

Alter's testimony will aid the factfinder in understanding key concepts such as corporate communications (Ex. 1, Alter Rep. ¶¶ 62-64), tools to influence consumer perceptions (Ex. 1, Alter Rep. ¶¶ 65-74), how consumers process information (Ex. 1, Alter Rep. ¶¶ 76-95), how individuals distill central messages into narratives or gists (Ex. 1, Alter Rep. ¶¶ 96-97), and how certain platform features and content appeal to children (Ex. 1, Alter Rep. ¶¶ 406-421).

Courts have expressly found marketing and consumer perception opinions explaining advertising methodologies, like Alter's, to be helpful to the average juror. *Schwab v. Philip Morris USA, Inc.,* 2005 WL 2401647, at *5 (E.D.N.Y. September 29, 2005). The Ninth Circuit has also ruled it "plainly wrong" to exclude expert testimony on corporate marketing strategy and objectives where that testimony may assist the factfinder. *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management, Inc.*, 618 F.3d 1025, 1043 (9th Cir. 2010). Indeed, Courts "regularly admit marketing testimony that explains what a company intended to convey through [its] marketing."[2] *Montera v. Premier Nutrition Corp.*, 2022 WL 1225031, at *5 (N.D. Cal. Apr. 26, 2022). This is especially true in cases involving fraud allegations, which "[make] relevant both what defendants knew and intended and how their activities were designed to influence the beliefs and activities of consumers." *Schwab,* 2005 WL 2401647, at *5 (permitting consumer psychology expert).

---

[2] Alter has stated he is NOT opining on any individual's motive or intent, but rather Meta's corporate objectives and strategic planning. Alter Dep. 170:4-6, 171:20-25 ("I'm not talking about individuals, but at a company level, the company has certain strategic intentions that it puts forth...as an academic matter, as someone who investigates this subject in many contexts across many companies, who teaches the topic and speaks about how you figure out what the intention of a company is and its strategy, I've used the same methods here and I'm able to offer those conclusions."); *Id.* at 250:10-11 ████████████████████████

Alter will also assist the jury in understanding the technical nature of Meta's internal research such as Meta's CSER and BEEF surveys. *See* Ex. 1, Alter Rep. ¶¶ 275-277, 308-325. As part of his assignment, Alter reviewed several thousand Meta documents—a large undertaking that will undoubtedly be helpful to the jury when confronted with complicated internal materials. *See, e.g., Capri Sun GmbH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83, 133-34 (S.D.N.Y. 2022). To that end, courts have broad discretion to permit "synthesized" factual testimony where a streamlined presentation will assist the jury. *Id.* at 133. And, with sufficient expertise, opinions based on "what a defendant knew at a certain time may be appropriate where reasonably based on admissible evidence." *In re Apple Inc. Sec. Litig.*, 2023 WL 4556765, at *2 (N.D. Cal. July 17, 2023).

**C. Dr. Alter Employs a Reliable Methodology to Formulate His Consumer Perception Opinions (Ops. B, C, F, G, H)**

Meta misconstrues Alter's consumer understanding methodology. To formulate his opinions, Alter applies the standard methods of scientific inquiry in his field by using well-known frameworks, methodologies, and theories. Ex. 1, Alter Rep. ¶¶ 31, 32, 41, Ex. 2, Alter Rebuttal ¶ 20-22. By triangulating data from disparate sources, Alter affirms or disaffirms working generalizations or hypotheses. Ex. 1, Alter Rep. ¶¶ 34, 35; Ex. 2, Alter Rebuttal ¶ 20. Alter's sources include academic research, internal and external market research including Meta's own surveys and focus groups, record evidence including deposition testimony, and his experiences speaking directly to parents and children. "[E]xperience, review of relevant literature, and review of the record" constitute sufficient methodology to qualify marketing experts. *See In re Juul Labs, Inc. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2022 WL 1814440, at *4 (N.D. Cal. June 2, 2022).

Alter employs SIA to assess Meta's statements in light of its marketing tactics and understand how Meta's statements influence consumers. This three step approach: 1) analyze Meta's marketing and public relations efforts; 2) evaluate those actions against Meta's internal data and communications; and 3) apply established principles of marketing and cognitive behavioral science to assess and explain how Meta's tactics are likely to influence consumer understanding. *See* Ex. 1, Alter Rep. ¶¶ 137-384; Ex. 5, Alter Dep. 221:8-222:23. Alter extensively detailed SIA's foundational scientific principles throughout his report and at his deposition. *See* Ex. 1, Alter Rep.

¶¶ 31-100; Ex. 5, Alter Dep. 130:9-137:20, 147:5-150:21, 152:6-157:21, 211:18-216:1. Courts generally endorse such methods as reliable in the marketing and consumer perception context. *See, e.g.*, *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.,* 2016 WL 9560113, at *7 (N.D. Tex. Oct. 3, 2016); *In re Juul*, 2022 WL 1814440, at *20 (denying motion to exclude "assessment of consumer perception" and explaining that expert's "reliance on [the defendant's] own documents and research and publications is sufficient").

Meta's criticism of Alter's decision not to conduct a consumer survey goes to the weight, not the admissibility, of his testimony. *Blue Bottle Coffee, LLC v. Liao*, 2023 WL 6850573, at *6 (N.D. Cal. Oct. 16, 2023). Courts recognize that marketing and consumer psychology experts need not conduct surveys or speak to consumers to reliably opine on how tactics employed by companies like Meta influence consumer perception. *Tylenol*, 2016 WL 807377, at *5. There is no requirement that all expert testimony be supported by empirical data, *Fujifilm Corp. v. Motorola Mobility LLC*, 2015 WL 1737951, at *3 (N.D. Cal. Apr. 8, 2015), nor is an expert required to conduct a survey for consumer perception methodology to be reliable under Rule 702. *See, e.g.*, *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 580 (N.D. Cal. 2020); *Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 401 (N.D. Cal. 2021); *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1115 (N.D. Cal. 2018). Instead, Alter's report is replete with citations to academic literature (*e.g.*, Ex. 1, Alter Rep. ¶¶ 31-32, 53-55, 66-67, 78, 84-85, 92-94), studies, research (*e.g.*, Ex. 1, Alter Rep. ¶¶ 106-113, 295, 300-305, 316), and Meta's own documents (*e.g.*, Ex. 1, Alter Rep. ¶¶ 114-121, 125-129, 223, 239-243) that support his analysis and opinions. Alter also explained why these materials, especially Meta's own contemporaneous research, are more probative than a post-hoc survey subject to substantial hindsight basis. Ex. 2, Alter Rebuttal ¶¶ 18-22. The materials relied upon are a sufficient basis for Alter's opinions, even absent a consumer survey.

Meta further seeks to exclude Alter's testimony regarding his analysis of Statements B1-B7 by mischaracterizing his opinions regarding Meta's use of the word "addiction" as divining the speakers' subjective intent. Meta's arguments should be rejected. Each of the 12 instances in which Alter discusses addiction in the "broad, lay sense" in his report is tied to his permissible assessment of Meta's external marketing narrative and the message that narrative likely conveyed. *See* Ex. 1,

1   Alter Rep. ¶¶ 199, 207-208, 210-211, 219-220, 224, 231, 259; *see also Montera*, 2022 WL 1225031,

2   at \*5; *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.,* 2014 WL 3557345,

3   at \*5-8 (N.D. Tex. July 18, 2014). At no point in his report or deposition does Alter purport to

4   interpret the subjective beliefs of the individual speakers of these statements, *see supra* n. 2, and in

5   any event, such "objections are better ruled on at trial [as] the context of the testimony and the

6   purposes for which it is offered are critical." *In re Juul*, 2022 WL 1814440, at \*14.

7       Meta's final objection to Alter's consumer understanding opinions rests on the premise that

8   Alter applies an incorrect "reasonable consumer" standard. He does not. Alter explicitly offers the

9   notion of a reasonable consumer from his perspective as an expert in consumer psychology. Alter

10  explains that his usage of the term "reasonable consumer" is couched in marketing and social and

11  cognitive behavioral science, not law. Ex.1, Alter Rep. ¶¶ 98-100. The use of language that "recurs

12  in the applicable legal standard" does not transmute expert opinions into legal conclusions; experts

13  may use terms with meaning in both common parlance and the law. *United States v. Diaz*, 876 F.3d

14  1194, 1198-99 (9th Cir. 2017).

15      Meta also fundamentally misunderstands Alter's consideration of Meta's messaging to

16  "deciders and influencers." Ex. 1, Alter Rep. ¶ 48. Alter makes clear that Meta's messaging to

17  deciders in venues like congressional hearings is another way for Meta to disseminate its marketing

18  narratives to consumers. *See* Ex.1, Alter Rep. ¶¶ 206-11, 291, 389. Likewise, Alter discusses Meta's

19  own influencer strategy to show how Meta engaged influencers to act as messengers to families on

20  its behalf. *See* Ex.1, Alter Rep. ¶¶ 129-136. Alter's evaluation of deciders and influencers is relevant

21  because it relates to a messages "audience," and his conclusion is that the end recipient of Meta's

22  messaging is young users: "Meta's public messaging has the capacity to affect young users, even if

23  young users themselves have limited or no direct exposure to those public messages." Ex.1, Alter

24  Rep. ¶ 50.

25      Meta's objections to Alter's exposure opinions ultimately go to weight, not admissibility.

26  Rule 702 does not envision "nitpick[ing] an expert's opinion in order to reach a perfect expression

27  of what the basis and methodology can support." Fed. R. Evid. 702 adv. comm. n. (2023). Alter's

28  exposure opinions will assist the jury in understanding how messages and gist are disseminated,

not how many consumers were exposed to messages. Alter offers interactions with individuals over the course of his decades-long professional career not as scientific data points, but as evidence of his relevant experience and expertise. *See In re Apple*, 2023 WL 4556765, at *2 (Court found scientific modeling is not required when expert with decades of experience bases their opinion on their experience); *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1018 (9th Cir. 2004) (expert's "experience, training, and education" formed "foundation of reliability").

Alter reliably opines on consumer understanding without measuring reach or dissemination by state because he is not required to do so.  Alter references informal discussions with individuals for the limited purpose of identifying illustrative examples showing that Meta's statements were disseminated beyond their original venues; he does not extrapolate his informal research to quantify exposure, estimate damages, or reach any other conclusion beyond his narrow testimony. Reliability under Rule 702 focuses on methodology, not completeness of data or scope of analysis, and arguments about the merits of Alter's conclusions should be left to the jury. *See Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 808-09 (7th Cir. 2013).

**D. Dr. Alter's Opinions Are Within the Bounds of Permissible Expert Testimony**

Meta's remaining objections mischaracterize Alter's opinions and are irrelevant to admissibility considerations under Rule 702. As discussed in Section B, *supra*, Alter's deception and child-directedness opinions speak to Meta's strategic corporate decisions, not its mental state. Meta's objections to "narrative" portions of the deception and child-directedness opinions should also be rejected. As discussed in Section A, *supra*, Alter's report contains the factual bases of his opinion, including a review of the assumptions provided by counsel.[3] Such blanket objections are misguided and premature. This Court has previously found that "narrative," "state of mind," and "intent" objections are "better ruled on at trial [as] the context of the testimony and the purposes for which it is offered are critical." *In re Apple,* 2023 WL 4556765, at *2 (citation omitted).

Meta improperly raises additional arguments regarding Alter's "likelihood" or "tendency" to mislead opinions. While Meta argues that some of Alter's statements can be interpreted as

---

[3] Courts have prohibited experts from accepting assumptions absent some level of confirmation. *Se*e *Guidroz-Brault v. Missouri Pac. R. Co.*, 254 F.3d 825, 830 (9th Cir. 2001).

ultimate legal opinions, his report focuses on the likelihood or "tendency" for Meta's communications to mislead from a marketing or consumer psychology perspective, leaving the final legal determination to jury. Ex.1, Alter Rep. at 2, op. G; Alter Rep. at 100, fn. 335 ("I use the words 'mislead' and 'deceive' in a psychological sense"). When terms have both common usage and legal significance, it is frequently "impossible for an expert to render his or her opinion on a subject without resorting to language that recurs in the applicable legal standard." *In re Packaged Seafood Prods. Antitrust Litig.*, 2024 WL 1269863, at *15 (S.D. Cal. Mar. 25, 2024) (citation omitted). Courts in this district have permitted similar testimony. *See In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.,* 609 F. Supp. 3d 942, 1007-10 (N.D. Cal. 2022) (denying motion to exclude opinion that a "reasonable consumer would likely be misled by the marketing communications"); *see also Vizcarra v. Michaels Stores, Inc.*, 2025 WL 1561530, at *2-3 (N.D. Cal. June 2, 2025) (permitting opinion that marketing was misleading).

Regardless, expert testimony "on an ultimate issue is not per se improper," *Hangarter,* 373 F.3d at 1016 (citation omitted), and objections as to the precise wording and scope of Alter's testimony before the jury should be resolved at a later stage.

**E.  Dr. Alter Properly and Reliably Opines on Child-Directedness (Ops. L-P)**

Meta is incorrect when it argues Alter improperly comments on Meta's state of mind when he opines on the child-directedness of Facebook and Instagram. His opinions focus on Meta's strategic decisions, not its mental state. *See supra* Section II.D; Ex. 5, Alter Dep. 270:20-271:12.

Meta wrongly argues that Alter did not consider Meta's stated policy prohibiting under-13s when assessing the intended audience of Meta's platforms. Alter did in fact note a "very large proportion of the tween population" is on Meta's platforms, which "is inconsistent with [Meta's claim about] … the permissibility of [under-13] users joining and staying on the platform." Ex.5, Alter Dep. 308:10-15; *see also* Alter Dep. 312:8-22, 338:17-339:4; Ex. 1, Alter Rep. ¶¶ 565, 570. Meta's qualms are best suited for cross examination, and go to weight, not admissibility of his opinion. *United States Fid. & Guar. Co. v. Ulbricht*, 576 F. Supp. 3d 850, 861 (W.D. Wash. 2021).

Meta's arguments that Alter's opinions are improper legal opinions also fail for the reasons described above: Alter is offering an opinion as a marketing expert, using language common in his

industry to offer a framework for the jury, not to subvert the jury's role. *See* discussion *supra* Section II.B*.*[4] As to whether an individual user account may constitute a "portion," this Court has already rejected Meta's argument. *See In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 878 at n.17 (N.D. Cal. 2024).

Finally, Meta mischaracterizes Alter's methodology, which is consistent with his role as a marketing expert, as discussed in Section II.A, *supra*. Alter's opinion that Meta's platforms are designed to appeal to young teens and therefore they also appeal to tweens is supported by adolescent developmental psychology—including Meta's own understanding thereof—and the law: the FTC's COPPA guidance warns that nominally teen-focused services "may attract a substantial number of children under 13, and thus may be considered" directed to children.[5] Ex. 1, Alter Rep. §§ XV-XVI. Further, Meta's claim that Alter cherry-picked accounts misunderstands his report, which states that the presence of child-directed accounts "illustrate[s] how the platform appeals to audiences under the age of 13," with content for other demographics being irrelevant. Ex. 1, Alter Rep. ¶ 513, 575. Lastly, Alter assessed nearly a dozen studies, including Meta's own data and surveys conducted by third parties, which all showed that a significant portion of all tweens in the United States use Meta's platforms. *See* Ex. 1, Alter Rep. §§ XVII.D, XIX.C; *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 638 F. Supp. 3d 227, 284-86 (E.D.N.Y. 2022) (refusing to exclude expert's consumer confusion opinions based on consumer surveys and "academic marketing and branding literature"). Meta's objection to a single survey's reliability is irrelevant, as child use of Instagram demonstrates the appeal of the platform regardless of whether children use their own account or a parent's.

## IV.    Dr. Iyer's Testimony Is Reliable and Relevant For the Factfinder

Dr. Ravi Iyer is a technologist and academic psychologist who led data science, research, and product teams at Facebook from 2018-2022. Ex. 8, Iyer Rep. ¶ 8. He offers opinions on why

---

[4] It is surprising Meta makes this argument, as Meta's own marketing expert offers opinions on what "directed to children" and "targeted to children" means. *See* Ex. 6, Venkataraman Rep. ¶ 1.

[5] Ex. 7, *Complying with COPPA: Frequently Asked Questions*, Federal Trade Commission (July 2020), at H.2, https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions#H.%20General%20Audience%20and%20Teen%20Sites.

Meta's current safety interventions do not effectively mitigate youths' harmful experiences on Instagram and Facebook (Ops. 3 and 4). He also offers opinions on the remedial interventions that would mitigate these harmful experiences (Ops. 1 and 2).[6] Meta's attacks largely go to weight, not admissibility, and its motion to exclude Iyer's testimony should be denied.

### A. Dr. Iyer's Opinions are Methodologically Sound

Iyer's opinions "have a reliable basis in the knowledge and experience of his discipline." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 594 (1993). Iyer answered the questions that the State AGs posed to him by gathering data and applying his extensive knowledge, training, and industry experience. Iyer considered experimental, correlational, observational, quantitative, and qualitative research describing the effects of platform tools and features on users. Ex. 9, Iyer Rebuttal ¶¶ 15-16. He explained this methodology in his trial (Ex. 8, Iyer Rep. § I.E) and rebuttal reports (Ex. 9, Iyer Rebuttal § III) and during his deposition. (Ex. 10, Iyer Dep. 233:6-234:9.)

Iyer used the same methodology he has utilized "in preparing dozens of empirical articles published in peer-reviewed journals and in making hundreds of product decisions across multiple companies," Ex. 9, Iyer Rebuttal ¶ 4, including when working on design and algorithmic innovations to mitigate negative user experiences while at Facebook. Iyer Rep. ¶ 8. This methodology is well-established in academic and industry disciplines involving user experience research and product design. Ex. 9, Iyer Rebuttal ¶¶ 4, 14 at fn. 11, 16 at fn. 15-16.

Meta's arguments are unavailing. With respect to his use of literature, Iyer has "written about, studied, [and] done research on the effects of social media and the design of social media on youth," providing him "extensive knowledge of the literature." Ex. 10, Iyer Dep. 266:25-267:11. He has reviewed this literature "many times, both things that are positive and negative" about the effects of social media design features." *Id.* This is not cherry picking; instead, that Iyer's "evidence grew out of pre-litigation research" further demonstrates the reliability of his opinions. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1141 (9th Cir. 1997).

---

[6] These opinions will likely be presented to the court during a short remedies presentation while the jury deliberates. *See FTC v. BurnLounge, Inc.*, 753 F.3d 878, 888 (9th Cir. 2014) ("When we consider the admissibility of expert testimony, we are mindful that there is less danger that a trial court will be unduly impressed by the expert's testimony or opinion in a bench trial.").

Iyer is not required to provide a rate of error or personally test the effects of all of his recommended changes on Meta's platforms. *See, e.g.*, *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000) ("The *Daubert* factors . . . simply are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it."). Iyer's methodology is consistent with established practice in the field of product design and user experience research, in which "researchers do not always have the ability to directly manipulate variables of interest." Iyer Rebuttal ¶ 18.

Meta's remaining arguments go to weight, not admissibility, and can be addressed via "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596. The fact that counsel provided Iyer with assumptions on the effects of platform features is not grounds to exclude his testimony. *United States v. Soulard*, 730 F.2d 1292, 1298-1299 (9th Cir. 1984). In any case, Iyer did include evidence supporting those assumptions. *See, e.g.,* Ex. 8, Iyer Rep. § III.A; Ex. 9, Iyer Rebuttal § III.B; Ex. 10, Iyer Dep. 100:7-15. As for how to benchmark or test the effects of proposed changes, Iyer provided numerous methods, including surveys and research that Meta has previously run on its platforms. *See* Ex. 10, Iyer Dep. 134:3-21, 168:1-172:8, 176:12-180:23, 291:18-292:7; c*f. Georges v. Novartis Pharms. Corp.,* 2013 WL 5217198, at *16 (C.D. Cal. Apr. 4, 2013) (excluding opinion based solely on "personal opinion," rather than the kind of objective framework Iyer provides). Further, Iyer appropriately assessed feasibility by analyzing research on the effects of changing features across different platforms, *see* Ex. 10, Iyer Dep. 302:6-15, 339:1-25, 341:14-342:4; Ex. 8, Iyer Rep. § III, while also analyzing whether Meta itself had implemented some version of his recommended changes and the success of those experiments in reducing harms. Ex. 8, Iyer Rep. ¶¶ 34, 54, 57.

**B.  Opinions 1, 3, and 4 Are Relevant and Helpful For the Factfinder**

Iyer's opinions 1, 3, and 4 will aid the finder of fact, and Meta's arguments to the contrary go to the weight of Iyer's testimony rather than its admissibility.[7] These opinions are grounded in Iyer's education in psychology, along with his specialized experience working in technology

---

[7] Meta does not challenge Iyer's opinion 2 on this basis and thus has waived any argument to this effect.

13

companies—including Meta—and conducting academic research on the impact of platform design on users. Ex. 8, Iyer Rep. ¶¶ 5-9. Lay factfinders who lack these educational and practical experiences are ill-equipped to understand the complex interaction of the dozens of features, safety tools, and design elements of social media platforms, and to assess how users—particularly young users—interface with those platforms. *See United States v. Finley*, 301 F.3d 1000, 1013 (9th Cir. 2002) ("Our case law recognizes the importance of expert testimony when an issue appears to be within the parameters of a layperson's common sense, but in actuality, is beyond their knowledge," such as the testimony of psychologists.").

Meta's quibble with the definition of "sufficient" is not grounds for exclusion nor is it based in the law. Rule 702 does not require Iyer to identify a specific percentage change of harms for his opinions to be helpful. *See United States v. Romero-Lobato,* 379 F. Supp. 3d 1111, 1120 (D. Nev. 2019) (noting that an expert need not "reach a conclusion via an objective set of criteria or . . . be able to quantify his opinion with a statistical probability."). Unlike the expert in *Innovation Ventures*, *LLC v. Custom Nutrition Labs., LLC*, 2021 WL 12255004, at *17 (E.D. Mich. Sept. 29, 2021), Iyer provided a "coherent basis and methodology" for his analysis: that a design change "sufficiently" mitigates harms when it has an effect commensurate with the amount of harm; is usable by the people who need it; and is well-maintained and consistently works as advertised. *See* Ex. 10, Iyer Dep. 126:4-13, 128:8-15, 142:4-144:10. Iyer also explained that Meta's existing safety tools are insufficient, as they rely on teens' willpower and have extremely low usage rates. Ex. 10, Iyer Dep. 132:12-133:15; Ex. 8, Iyer Rep. §§ II.B, III.B; Ex. 9, Iyer Rebuttal ¶¶ 11, 39-46.

## V.    Conclusion

For the foregoing reasons, this Court should deny Meta's motion.

Respectfully submitted,

**KRIS MAYES**
Attorney General
State of Arizona

*/s/ Reagan Healey*
Reagan Healey (AZ No. 038733), pro hac vice
Assistant Attorney General
Arizona Attorney General's Office
2005 North Central Avenue
Phoenix, AZ 85004
Phone: (602) 542-3725
Fax: (602) 542-4377
Reagan.Healey@azag.gov
*Attorneys for Plaintiff State of Arizona, ex rel.*
*Kris Mayes, Attorney General*

**PHILIP J. WEISER**
Attorney General
State of Colorado

*/s/ Krista Batchelder*
Krista Batchelder (CO Reg.45066), *pro hac vice*
Deputy Solicitor General
Shannon Stevenson (CO Reg. 35542), *pro hac vice*
Solicitor General
Elizabeth Orem (CO Reg. 58309), *pro hac vice*
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6384
krista.batchelder@coag.gov
Shannon.stevenson@coag.gov
Elizabeth.orem@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel.*
*Philip J. Weiser, Attorney General*

**ROB BONTA**
Attorney General
State of California

*/s/ Megan O'Neill*
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (CA SBN 244395)
Emily Kalanithi (CA SBN 256972)
Supervising Deputy Attorneys General
Megan O'Neill (CA SBN 343535)
Nayha Arora (CA SBN 350467)
Joshua Olszewski-Jubelirer
(CA SBN 336428)
Marissa Roy (CA SBN 318773)
Brendan Ruddy (CA SBN 297896)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
megan.oneill@doj.ca.gov

*Attorneys for Plaintiff the People of the State*
*of California*

**RAÚL R. LABRADOR**
Attorney General
State of Idaho

*/s/ James J. Simeri*
James J. Simeri (ID Bar No. 12332)
pro hac vice
Deputy Attorney General
Attorney General's Office
P.O. Box 83720
Boise, ID 83720-0010
(208) 334-2424
james.simeri@ag.idaho.gov

*Attorneys for Plaintiff State of Idaho*

1

**WILLIAM TONG**
Attorney General
State of Connecticut

*/s/ Rebecca Borné*
Rebecca Borné
(CT Juris No. 446982), pro hac vice
Tess E. Schneider
(CT Juris No. 444175), *pro hac vice*
Krislyn M. Launer
(CT Juris No. 440789), *pro hac vice*
Assistant Attorneys General
Connecticut Office of the Attorney General
165 Capitol Avenue
Hartford, Connecticut 06106
Phone: 860-808-5400
Fax: 860-808-5593
Rebecca.Borne@ct.gov
Tess.Schneider@ct.gov
Krislyn.Launer@ct.gov

*Attorneys for Plaintiff State of Connecticut*


**KATHLEEN JENNINGS**
Attorney General
State of Delaware

*/s/ Ryan Costa*
Marion Quirk (DE Bar 4136), pro hac vice
Director of Consumer Protection
Ryan Costa (DE Bar 5325), *pro hac vice*
Deputy Director of Consumer Protection
Delaware Department of Justice
820 N. French Street, 5th Floor
Wilmington, DE 19801
Phone: (302) 683-8811
Marion.Quirk@delaware.gov
Ryan.Costa@delaware.gov

*Attorneys for Plaintiff State of Delaware,
ex rel. Kathleen Jennings, Attorney General
for the State of Delaware*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**THEODORE E. ROKITA**
Attorney General
State of Indiana

*/s/ Scott L. Barnhart*
Scott L. Barnhart (IN Atty No. 25474-82),
*pro hac vice*
Chief Counsel and Director of Consumer
Protection
Corinne Gilchrist (IN Atty No. 27115-53),
*pro hac vice*
Section Chief, Consumer Litigation
Mark M. Snodgrass (IN Atty No. 29495-49),
*pro hac vice*
Deputy Attorney General
Office of the Indiana Attorney General
Indiana Government Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46203
Telephone: (317) 232-6309
Scott.Barnhart@atg.in.gov
Corinne.Gilchrist@atg.in.gov
Mark.Snodgrass@atg.in.gov

*Attorneys for Plaintiff State of Indiana*


**KRIS W. KOBACH**
Attorney General
State of Kansas

*/s/ Sarah M. Dietz*
Sarah M. Dietz, Assistant Attorney General
(KS Bar No. 27457), *pro hac vice*
Kaley Schrader, Assistant Attorney General
(KS Bar No. 27700), *pro hac vice*
Office of the Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Telephone: (785) 296-3751
Fax: (785) 296-3131
Email: sarah.dietz@ag.ks.gov

*Attorneys for Plaintiff State of Kansas*

1  ANNE E. LOPEZ                                    LIZ MURRILL
   Attorney General                                Attorney General
2  State of Hawai'i                                State of Louisiana

3  */s/ Douglas S. Chin*                           */s/ Asyl Nachabe*
4  Christopher J.I. Leong (HI JD No. 9662), *pro hac*    Asyl Nachabe (LA Bar No. 38846)
   *vice*                                          *Pro hac vice*
5  Supervising Deputy Attorney General             Assistant Attorney General
   Kelcie K. Nagata (HI JD No. 10649), *pro hac vice*    Louisiana Department of Justice
6  Deputy Attorney General                         Public Protection Division
   Department of the Attorney General              Consumer Protection Section
7  Commerce and Economic Development Division      1885 N 3rd Street, 4th Floor
8  425 Queen Street                                Baton Rouge, LA 70802
   Honolulu, Hawai'i 96813                         Tel: (225) 326-6438
9  Phone: (808) 586-1180                           NachabeA@ag.louisiana.gov
10 Christopher.ji.leong@hawaii.gov
   Kelcie.k.nagata@hawaii.gov                      *Attorney for State of Louisiana*
11 Douglas S. Chin (HI JD No. 6465), *pro hac vice*
   John W. Kelly (HI JD No. 9907), *pro hac vice*
12 Special Deputy Attorney General                 **AARON M. FREY**
   Starn O'Toole Marcus & Fisher                   Attorney General
13 733 Bishop Street, Suite 1900                   State of Maine
   Honolulu, Hawai'i 96813
14 Phone: (808) 537-6100                           */s/ Michael Devine*
15 dchin@starnlaw.com                              Michael Devine, Maine Bar No. 5048,
   jkelly@starnlaw.com                             *pro hac vice*
16                                                 Assistant Attorney General
                                                   Office of the Maine Attorney General
17 *Attorneys for Plaintiff State of Hawai'i*      6 State House Station
                                                   Augusta, ME 04333
18 **KWAME RAOUL**                                 (207) 626-8800
19 Attorney General                                michael.devine@maine.gov
   State of Illinois
20                                                 *Attorney for Plaintiff State of Maine*
   */s/ Matthew Davies*
21 Susan Ellis, Chief, Consumer Protection
   Division (IL Bar No. 6256460), *pro hac vice*   **KEITH ELLISON**
22 Greg Grzeskiewicz, Chief, Consumer              Attorney General
   Fraud Bureau (IL Bar No. 6272322), *pro hac vice*    State of Minnesota
23 Jacob Gilbert, Deputy Chief, Consumer Fraud
   Bureau (IL Bar No. 6306019), *pro hac vice*     */s/ Caitlin Micko*
24 Matthew Davies, Supervising Attorney,           Caitlin Micko (MN Bar No. 0395388),
   Consumer Fraud Bureau (IL Bar No. 6299608),     *pro hac vice*
25 *pro hac vice*                                   Assistant Attorney General
   Daniel B. Roth, Assistant Attorney General,     Office of the Minnesota Attorney General
26 Consumer Fraud Bureau (IL Bar No. 6290613),     445 Minnesota Street, Suite 1200
27 *pro hac vice*                                   St. Paul, MN 55101-2130
   Meera Khan, Assistant Attorney General,         Tel: (651) 724-9180
28

Consumer Fraud Bureau (IL Bar No. 6345895),
*pro hac vice*
Office of the Illinois Attorney General
115 S. LaSalle Street
Chicago, Illinois 60603
312-814-8554
Susan.Ellis@ilag.gov
Greg.Grzeskiewicz@ilag.gov
Jacob.Gilbert@ilag.gov
Matthew.Davies@ilag.gov
Emily.Migliore@ilag.gov
Daniel.Roth@ilag.gov
Meera.Khan@ilag.gov

*Attorneys for Plaintiff the People of the State of Illinois*


**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

/s/ *Matthew Cocanougher*
J. Christian Lewis (KY Bar No. 87109),
*pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*pro hac vice*
Zachary Richards (KY Bar No. 99209),
*pro hac vice app. forthcoming*
Daniel I. Keiser (KY Bar No. 100264),
*pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Ste. 200
Frankfort, KY 40601
Christian.Lewis@ky.gov
Philip.Heleringer@ky.gov
Zach.Richards@ky.gov
Daniel.Keiser@ky.gov
Matthew.Cocanougher@ky.gov
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

caitlin.micko@ag.state.mn.us

*Attorney for Plaintiff State of Minnesota, by its Attorney General, Keith Ellison*


**JENNIFER DAVENPORT**
Acting Attorney General
State of New Jersey

By: /s/ *Kashif T. Chand*
Kashif T. Chand (NJ Bar No. 016752008),
*Pro hac vice*
Assistant Attorney General
Thomas Huynh (NJ Bar No. 200942017),
*Pro hac vice*
Assistant Section Chief, Deputy Attorney General
Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*Pro hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General, Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiffs Jennifer Davenport, Acting Attorney General for the State of New Jersey, and Jeremy E. Hollander, Acting Director of the New Jersey Division of Consumer Affairs*

**ANTHONY G. BROWN**
Attorney General
State of Maryland

/s/ *Elizabeth J. Stern*
Philip D. Ziperman (Maryland CPF No.
9012190379), *pro hac vice*
Deputy Chief, Consumer Protection Division
Elizabeth J. Stern (Maryland CPF No.
1112090003), *pro hac vice*
Assistant Attorney General
Office of the Attorney General of Maryland
200 St. Paul Place
Baltimore, MD 21202
Phone: (410) 576-6417 (Mr. Ziperman)
Phone: (410) 576-7226 (Ms. Stern)
Fax: (410) 576-6566
pziperman@oag.state.md.us
estern@oag.state.md.us

*Attorneys for Plaintiff Office of the Attorney
General of Maryland*

**MICHAEL T. HILGERS**
Attorney General
State of Nebraska

/s/ Anna M. Anderson
Anna M. Anderson (NE #28080),
*pro hac vice*
Benjamin J. Swanson (NE #27675),
*pro hac vice*
Assistant Attorneys General
Nebraska Attorney General's Office
1445 K Street, Room 2115
Lincoln, NE 68509
(402) 471-6034
anna.anderson@nebraska.gov
benjamin.swanson@nebraska.gov

*Attorneys for Plaintiff State of Nebraska*

**LETITIA JAMES**
Attorney General
State of New York

/s/ Nathaniel Kosslyn
Nathaniel Kosslyn, Assistant Attorney
General
(NY Bar No. 5773676), *pro hac vice*
nathaniel.kosslyn@ag.ny.gov
Alex Finkelstein, Assistant Attorney General
(NY Bar No. 5609623), *pro hac vice*
alex.finkelstein@ag.ny.gov
New York Office of the Attorney General
28 Liberty Street
New York, NY 10005
(212) 416-8000

**DAVE YOST**
Attorney General
State of Ohio

/s/ *Kevin R. Walsh*
Melissa G. Wright (Ohio Bar No. 0077843)
Section Chief, Consumer Protection Section
Melissa.Wright@ohioago.gov
Melissa S. Smith (Ohio Bar No. 0083551)
Asst. Section Chief, Consumer Protection
Section
Melissa.S.Smith@ohioago.gov
Michael S. Ziegler (Ohio Bar No. 0042206)
Principal Assistant Attorney General
Michael.Ziegler@ohioago.gov
Kevin R. Walsh (Ohio Bar No. 0073999),
*pro hac vice*
Kevin.Walsh@ohioago.gov
Senior Assistant Attorney General
30 East Broad Street, 14th Floor
Columbus, Ohio 43215
Tel: 614-466-1031

*Attorneys for State of Ohio, ex rel. Attorney
General Dave Yost*

**JEFF JACKSON**
Attorney General
State of North Carolina

*/s/ Charles White*
Charles G. White (N.C. State Bar No.
57735), *pro hac vice*
Assistant Attorney General
Kunal Choksi
Senior Deputy Attorney General
Josh Abram
Special Deputy Attorney General
N.C. Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6889
Facsimile: (919) 716-6050
E-mail: cwhite@ncdoj.gov
*Attorneys for Plaintiff State of North Carolina*

**DAVE SUNDAY**
Attorney General
Commonwealth of Pennsylvania

*/s/ Jonathan R. Burns*
Jonathan R. Burns
Deputy Attorney General
(PA Bar No. 315206), *pro hac vice*
Email: jburns@attorneygeneral.gov
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Tel: 717.787.4530

*Attorneys for Plaintiff the Commonwealth of
Pennsylvania*

**PETER F. NERONHA**
Attorney General
State of Rhode Island

*/s/ Stephen N. Provazza*
Stephen N. Provazza (R.I. Bar No. 10435),
*pro hac vice*
Assistant Attorney General
Rhode Island Office of the Attorney General

**DAN RAYFIELD**
Attorney General
State of Oregon

*/s/ John Dunbar*
John J. Dunbar (Oregon Bar No. 842100)
Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, Oregon 97201
Telephone: (971) 673-1880
Facsimile:  (971) 673-1884
E-mail: john.dunbar@doj.oregon.gov

*Attorneys for State of Oregon ex rel.
Dan Rayfield, Attorney General*

**ALAN WILSON**
Attorney General
State of South Carolina

*/s/ Anna C. Smith*
C. Havird Jones, Jr.
Senior Assistant Deputy Attorney General
Jared Q. Libet (S.C. Bar No. 74975),
*pro hac vice*
Assistant Deputy Attorney General
Anna C. Smith (SC Bar No. 104749),
*pro hac vice*
Assistant Attorney General
Office of the South Carolina Attorney General
Post Office Box 11549
Columbia, South Carolina 29211
jlibet@scag.gov
annasmith@scag.gov
803-734-0536

*Attorneys for Plaintiff the State of South
Carolina, ex rel. Alan M. Wilson, in His
Official Capacity as Attorney General of the
State of South Carolina*

150 South Main St.
Providence, RI 02903
Phone: 401-274-4400
Email: SProvazza@riag.ri.gov

*Attorney for Plaintiff State of Rhode Island*

**JAY JONES**
Attorney General
Commonwealth Of Virginia

*/s/ Joelle E. Gotwals*
Travis G. Hill
Chief Deputy Attorney General
Helen O. Hardiman
Deputy Attorney General
Richard S. Schweiker, Jr.
Senior Assistant Attorney General and
Section Chief
Joelle E. Gotwals (VSB No. 76779),
Senior Assistant Attorney General
*pro hac vice*
Chandler P. Crenshaw (VSB No. 93452)
Assistant Attorney General
*pro hac vice*
Office of the Attorney General of Virginia
Consumer Protection Section
202 N. 9th Street
Richmond, Virginia 23219
Telephone: (804) 786-8789
Facsimile: (804) 786-0122
E-mail: jgotwals@oag.state.va.us

*Attorneys for the Plaintiff Commonwealth of
Virginia ex rel. Jay Jones, Attorney General*

**MARTY J. JACKLEY**
Attorney General
State of South Dakota

*/s/ Amanda Miiller*
By: Amanda Miiller (SD Bar No. 4271)
Deputy Attorney General
South Dakota Office of the Attorney General
1302 East SD Hwy 1889, Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215
Email: Amanda.Miiller@state.sd.us

*Attorneys for Plaintiff State of South Dakota*

**JOHN B. MCCUSKLEY**
Attorney General
State of West Virginia

*/s/ Laurel K. Lackey*
Laurel K. Lackey (WVSB No. 10267),
*pro hac vice*
Abby G. Cunningham (WVSB No. 13388)
Assistant Attorneys General
Office of the Attorney General
Consumer Protection & Antitrust Division
Eastern Panhandle Office
269 Aikens Center
Martinsburg, West Virginia 25404
(304) 267-0239
laurel.k.lackey@wvago.gov

*Attorneys for Plaintiff State of West Virginia,
ex rel. Patrick Morrisey, Attorney General*

1  **NICHOLAS W. BROWN**
   Attorney General State of Washington

2
   */s/ Claire McNamara*
3  Claire McNamara (WA Bar No. 50097)
   Gardner Reed (WA Bar No. 55630)
4  Assistant Attorneys General
   Washington State Office of the Attorney General
5  800 Fifth Avenue, Suite 2000
   Seattle, WA 98104
6  (206) 340-6783
   claire.mcnamara@atg.wa.gov
7  gardner.reed@atg.wa.gov

8  *Attorneys for Plaintiff State of Washington*

**JOSHUA L. KAUL**
Attorney General
State of Wisconsin

*/s/ Brittany Copper*
Brittany A. Copper
Assistant Attorney General
WI State Bar # 1142446, *pro hac vice*
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-1795
Brittany.copper@wisdoj.gov

*Attorneys for Plaintiff State of Wisconsin*

16                                 **<u>ATTESTATION</u>**

18        I, Shaheen Sheikh, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the
19  concurrence to the filing of this document has been obtained from each signatory hereto.

20  DATED: February 27, 2026                    */s/ Shaheen Sheikh*
                                                 Shaheen Sheikh