# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case Nos.:    4:22-md-03047-YGR (PHK)<br>4:23-cv-05448-YGR |
| This Document Relates To: | **JOINT LETTER BRIEF ON NEW JERSEY'S PRODUCTION OF DOCUMENTS** |
| *People of the State of California, et al. v. Meta Platforms, Inc., et al.* | Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

Dear Judge Kang:

      Pursuant to Rule H of the Court's Standing Order for Discovery in Civil Cases, Defendants Meta Platforms, Inc. f/k/a Facebook, Inc. and Instagram, LLC (collectively, "Meta") and certain New Jersey State Agencies (the "New Jersey Agencies" or "Agencies," and collectively with Meta, the "Parties") respectfully submit this joint letter brief regarding the New Jersey Agencies' assertions of deliberative process privilege.[1]  In particular, Meta seeks an order compelling the New Jersey Agencies to produce documents they have improperly withheld under the deliberative process privilege within two weeks of this Court's order.

      Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, the undersigned attest that they met and conferred before filing this brief, including through a Rule H.2 conferral that was attended on February 18, 2025.  Because all lead counsel were not located in the geographic region of the Northern District of California or otherwise located within 100 miles of each other, they met via videoconference.

---

[1] "New Jersey Agencies" shall refer collectively to the New Jersey Department of Children and Families ("DCF"), Department of Education ("DOE"), Office of the Secretary of Higher Education ("OSHE"), Department of Treasury ("DOT"), and Governor's Office ("GO").

Dated: February 27, 2026

**NEW JERSEY ATTORNEY GENERAL**

*/s/ Jae K. Shim*
Jae K. Shim (NJ Bar No. 3064320119)
Deputy Attorney General
New Jersey Office of the Attorney General
Division of Law
25 Market Street
Trenton, NJ 08625
Jae.Shim@law.njoag.gov
*Attorney for Non-Party New Jersey Office of the Governor*

*/s/ Jonathan Peitz*
Jonathan Peitz (NJ Bar No. 04155-2010)
Assistant Attorney General
*Attorney for Non-Party the New Jersey Department of Treasury*

*/s/ Kseniia I. Michkodan*
Kseniia I. Michkodan (NJ Bar No. 460582024)
Deputy Attorney General
*Attorney for Non-Party the New Jersey Department of Treasury*

*/s/ Kenneth M. Cabot*
Kenneth M. Cabot (NJ Bar No.012142007)
Deputy Attorney General
*Attorney for Non-Party the Department of Children and Families*

*/s/ Rachel B. Kristol*
Rachel B. Kristol (NJ Bar No.228212017)
Deputy Attorney General
*Attorney for Non-Party the New Jersey Department of*
*Education and New Jersey Department of Higher Education*

Respectfully submitted,

**COVINGTON & BURLING LLP**

*/s/ Ashley Simonsen*
Ashley Simonsen (State Bar. No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: +1 (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com
Email: pschmidt@cov.com

*Attorneys for Defendants Meta Platforms, Inc.*
*f/k/a Facebook, Inc.; and Instagram, LLC*

**Meta's Position:** Meta has been engaged in a months-long conferral process with certain New Jersey Agencies regarding their excessive, improper claims of deliberative process privilege. Despite Meta's best efforts to narrow and resolve this dispute—which resulted in full agreements with the New Jersey Department of Health ("DOH") and New Jersey Department of Human Services ("DHS")—this Court's intervention is now necessary for the remaining Agencies. For the reasons set forth below, Meta respectfully requests the Court order production of the limited set of improperly-designated documents set forth in **Exhibit A**.[2]

"Like all evidentiary privileges that derogate a court's inherent power to compel the production of relevant evidence, ***the deliberative process is narrowly construed***." *Corr. Med. Servs. v. State of New Jersey, Dep't of Corr.*, 43 A.3d 1174 (N.J. Super. Ct. App. Div. 2012) (citation omitted and emphasis added). The New Jersey Agencies have violated that foundational principle by asserting deliberative process privilege over more than *10,000 documents*, which far exceeds the total number of documents actually produced to Meta in this litigation by all New Jersey agencies (just over 6,600). *See* Ex. B, NJ Revised Privilege Log. For over *8,500 documents*, deliberative process was the Agencies' sole basis for withholding. *Id.*

Following several conferrals regarding the Agencies' full privilege log, Meta agreed to challenge a reasonable subset of specific improperly-designated documents. On December 3, 2025, Meta made that challenge by highlighting 982 entries in the Agencies' combined privilege log—*less than 10%* of the documents those agencies had withheld. Two agencies—DOH and DHS—agreed to produce virtually all of the documents Meta challenged, narrowing the dispute. After two months of silence, the remaining Agencies notified Meta on February 9, 2026 that they would not waive or withdraw claims of privilege for *any* of the challenged documents without countering or providing any further detail to substantiate the privilege designation. Nonetheless, Meta has further narrowed this dispute by deferring its challenge over an additional 49 documents that have multiple privilege designations. Meta is now only seeking adjudication of the 899 documents reflected in **Exhibit A** where deliberative process is the sole basis for withholding.

The New Jersey Agencies have adopted an overbroad interpretation of the deliberative process privilege and applied it indiscriminately to routine government documents that are clearly relevant to the claims and defenses at issue in this case. Under New Jersey law, the designating party bears the initial burden of establishing entitlement to deliberative process protection by demonstrating two factors: (1) that the document was generated before adoption of a *specific agency policy or decision*, *i.e.*, that it is "pre-decisional"; and (2) that the document is deliberative in nature, *i.e.*, that it contains opinions, recommendations, or advice about agency policies. *In re Liquidation of Integrity Ins. Co.*, 165 N.J. 75, 84-85 (2000). Even where those elements are satisfied (which is not the case here), this privilege is a qualified one. It may be overcome where disclosure outweighs the government's need for confidentiality upon consideration of four factors: (1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion among government officials. *Id.* at 85-86. Disclosure is warranted for several reasons.

---

[2] All exhibits referenced in this brief are attached to the accompanying Declaration of Ashley Simonsen and lodged with this Court.

*First*, the New Jersey Agencies have failed to satisfy their threshold burden by identifying any specific agency actions or policies that relate to the withheld documents. The deliberative process privilege only protects documents that are pre-decisional, *i.e.*, those made "prior to a *clearly-defined* decision or policy." *Corr. Med. Servs.*, 43 A.3d at 1181 n.4 (emphasis added); *see also C.P. v. N.J. Dep't of Educ.*, No. 19-12807, 2022 WL 795712, at *2 (D.N.J. Mar. 16, 2022) ("[T]he document in question 'must concern an anticipated agency decision and have been generated prior to the actual decision being reached[.]"). Absent any showing that the withheld documents pre-date a specific New Jersey Agency decision or policy, there is no basis to withhold documents as pre-decisional. *United States v. Pechiney Plastics Packaging, Inc.*, No. 09-5692, 2013 WL 1163514, at *24 (D.N.J. Mar. 19, 2013) (stating that failure to identify the specific government decision at issue rendered it impossible to establish whether some documents were pre-decisional).

The Agencies have not made that showing. Beyond the vague, categorical information included in the privilege log—*i.e.*, that a document reflects ██████████████████████████████████████████████████████████████—the Agencies have not identified a single "clearly defined decision or policy" relating to any of the thousands of documents they withheld, including in their portion of this Joint Letter Brief.[3] That omission is fatal. The "deliberative process privilege is narrowly construed," *Corr. Med. Servs.*, 43 A.3d at 1181, and the propriety of withholding turns on a detailed inquiry into the specific "decision or policy" at issue and whether the information truly was "part of the process leading to formulation of an agency's decision," *id.* at 1183. It is not enough for a document to reflect opinions or deliberations—routine discussions or "decisionmaking" unrelated to the agency's policy formulation function "are not the sort of actual policymaking that the deliberative process privilege was designed to protect." *Id.* at 1185. Here, the Agencies have simply asserted in a conclusory fashion that the privilege applies to thousands of documents with titles like ██████████████████████████████████████ But the deliberative process privilege protects documents that relate to "actual policymaking" and were "part of the process leading to formulation of an agency's decision," *Corr. Med. Servs.*, 43 A.3d at 1183-85, ████████████████████████████████████

*Second*, the New Jersey Agencies have withheld documents that do not appear to be deliberative. The privilege only protects documents that reveal opinions, recommendations, or advice about agency policy. *Integrity*, 165 N.J. at 84-85. Purely factual materials, research materials untethered to a specific agency action, and routine communications fall outside of the privilege. *Id.* at 85; *see also Paff v. Off. of Prosecutor of Cnty. of Warren*, No. A-2426-13T3, 2015 WL 8213256, at *5 (N.J. Super. Ct. App. Div. Dec. 9, 2015). Nevertheless, the State has withheld highly pertinent documents such as ██████████████████████████ which, based on the title alone, is likely to contain routine and factual material collected by the agency regarding issues that are unquestionably relevant to this case, *i.e.*, ██████████████████████████████████. That routine factual material is not protected by the deliberative process privilege. Moreover, "if a document contains both deliberative and factual materials, the deliberative materials must be redacted and the factual materials disclosed." *Gannett New Jersey Partners v.*

---

[3] Deposition testimony suggests that the Agencies cannot make this showing. For example, employees from DOE and DCF—two agencies that refused to produce any documents—confirmed that they have not taken any action on social media besides a statewide study.

*Cnty. of Middlesex*, 877 A.2d 330, 338 (N.J. Super. Ct. App. Div. 2005).  The Agencies withheld thousands of documents like the one discussed above, *en masse,* without even considering whether they can be redacted to protect actual deliberation.

***Third***, the privilege is qualified and readily overcome on this record.  Applying the factors from *Integrity*: (1) these documents— ██████████████████████  are highly relevant because they go to the core of Meta's defenses and bear directly on the State's allegations of harm; (2) they are non-public and not available from any other source but the Agencies; (3) the State is a party to this litigation and the Agencies are in possession of documents central to the State's broad claims of harm allegedly caused by Meta; and (4) these documents are likely to contain routine discussions and factual information, which would not chill frank and independent policy deliberations (especially where actual deliberative material can be redacted).

***Fourth***, the Agencies' burden arguments are overblown.  The documents at issue have already been collected, reviewed, and logged, and producing them now (because the designations are improper) would require minimal effort.  *See, e.g.*, *M & F Fishing, Inc. v. Certain Underwriters at Lloyds*, 2007 WL 9706491, at *5 (S.D. Cal. Apr. 13, 2007) (holding that the burden and expense of producing already-collected documents would be low and not contrary to Rule 45).

Accordingly, this Court should order the Agencies to produce the improperly-designated documents reflected in Exhibit A.  Alternatively, Meta respectfully requests that the Court either (1) order the Agencies to provide further substantiation for the challenged designations, including the "clearly defined decision or policy" to which the document relates or (2) conduct an *in camera* review of a representative portion of the challenged documents.

**Agencies' Position**: The Agencies properly invoked the deliberative process privilege with respect to the documents at issue.[4] In 2025, the Agencies' e-discovery vendor assisted with the Agencies' review of roughly 3 million documents for responsiveness, privilege, and confidentiality. The Agencies conducted a second-level review to confirm designations. The Agencies produced a privilege log identifying about 14,000 documents to which they assigned a deliberative process designation. On June 10, 2025, Meta challenged the deliberative process privilege designations. The vendor and the Agencies' counsel reviewed the privilege log again, resulting in changes to only 245 designations, with 140 documents released in their entirety. In addition, the Agencies provided additional descriptive categories for the withheld documents beyond the stipulated topics of the Privilege Log Protocol (ECF 740). Finally, and pursuant to the Ninth Circuit's mandamus relief, ECF 90.1, the Agencies are not parties to the litigation, but remain subject to the onerous Rule 45 subpoenas issued by Meta and to which the Agencies submitted written objections. Despite this comprehensive multi-level review, all by non-parties to this litigation, Meta continues to dispute the deliberative process privilege claims.

On October 22, 2025, the Agencies met and conferred with Meta to narrow the scope of documents that Meta sought to compel. Despite two follow-up emails during the interim, Meta did not provide

---

[4] Meta does not dispute assertions of executive, attorney-client, and other privilege designations by the Agencies, who reserve the right to claim any additional privileges that may apply to the documents at issue.

5

a revised list of requested documents until December 3, 2025. When Meta ultimately submitted its revised demand, it not only expanded the scope of its request to include documents subject to privileges beyond the deliberative process privilege but also presented the request in a single voluminous Excel spreadsheet, requiring each Agency to interpret and identify the document sought by Meta. *See* **Exhibit C.** Meta's assertion that the subset would resolve the dispute is inaccurate; in its revised demand Meta "[r]etain[ed] [its] right to request additional documents from the privilege log… ." During the holiday season, the multiple state agencies met with their respective clients to review the hundreds of requested documents. However, after careful review, on February 9, 2026, the Agencies advised Meta that they could not, in good faith, waive the deliberative process privilege asserted over the documents Meta identified. Meta and the Agencies are now unable to resolve the dispute, and we ask this court to uphold the privilege designations, which are fully supported by law, and any further review of these designations by the Agencies is duplicative, unnecessary, and overly burdensome.

District courts have broad discretion to limit discovery to prevent its abuse. *See* Fed. R. Civ. P. 26(b)(2) (instructing that courts must limit discovery where the party seeking the discovery "has had ample opportunity to obtain the information by discovery in the action" or where the proposed discovery is "unreasonably cumulative or duplicative."); *see also U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011). Under Rule 26(b)(1), discovery must be "proportional to the needs of the case," and the Court may prevent a party from using discovery to impose undue burden or expense. Fed. R. Civ. P. 26(c)(1). The proportionality requirement guards against "redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality requirement] is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment.

Similarly, under Rule 45, "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d). Where the target of discovery is a non-party, as is the case here, discovery restrictions may be even broader. *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980); *see also In re Mosaic LLM Litig.*, 2025 U.S. Dist. LEXIS 153961, at *4-5 (N.D. Cal. July 8, 2025) ("The Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts.") Accordingly, the Court has broad discretion to manage the onerous burdens placed on the non-party Agencies.

Meta and the Agencies agree that New Jersey law controls this dispute over the application of the deliberative process privilege. Under New Jersey law, the deliberative process privilege permits the withholding of documents reflecting advisory opinions, recommendations, and deliberations that are part of a governmental agency's decision-making process. *In re Liquidation of Integrity Ins. Co.*, 165 N.J. 75, 83-84 (N.J. 2000). The document withheld must: (1) be pre-decisional (that is, generated before any policy or decision is adopted); and (2) contain opinions, recommendations, or advice. *Id.* at 84-85. Permitting the disclosure of opinions, recommendations, and advice "would promote a chilling effect on the willingness of participants to share policy concerns and considerations in the sphere of governmental activities." *McGee v. Twp. of E. Amwell*, 416 N.J. Super. 602 (N.J. Super. Ct. App. Div. 2010). "[T]he key to identifying deliberative material must be how closely the material . . . relates to the formulation or exercise of . . . policy-oriented judgment or [to] the process by which policy is formulated." *Id.* at 619-20. Factual material may

also be considered part of the decision-making process, and thus privileged, if it was used in the decision-making and its disclosure would reveal the agency's deliberations. *See Educ. Law Ctr. v. N.J. Dept of Educ.*, 198 N.J. 274, 300-02 (N.J. 2009) (finding that even if factual statistical information was ultimately not used in any final policy decision, it was nevertheless protected because simulations were used to aid the agency in making a decision); *Larkins v. Solter*, 450 N.J. Super. 519, 537-39 (N.J. Super. Ct. App. Div. 2017) (internal "audit proposal, planning memorandum and risk/priority evaluation" were not subject to disclosure because they were vital "to safeguard efficient and independent public financial control and accountability statewide"). This protection also extends to pre-meeting emails circulated among government officials. *See McGee*, 416 N.J. Super. at 620-21 (N.J. Super. Ct. App. Div. 2010).

 "Once the deliberative nature of the documents is established, there is a presumption against disclosure." *Integrity Ins. Co.*, 165 N.J. at 88. The party seeking disclosure must demonstrate a compelling need for the materials that outweighs the government's interest in non-disclosure, considering factors such as the evidence's importance to the movant, its availability from other sources, and the potential chilling effect disclosure may have on candid government deliberations. *Ibid*. Through supplemental document tags, New Jersey has established the pre-decisional nature of the documents. Meta has not made a compelling need for any of the documents. Rather, Meta has made only broad arguments that the designation of privilege is facially unreasonable based solely on the number of documents that are marked deliberative among the eight Agencies.

Here, the Agencies provided additional descriptive categories for the withheld documents beyond the stipulated topics of the Privilege Log Protocol (ECF 740). *See*, Exhibit B. Each of these categories reflects the pre-decisional deliberations or policy judgments of the Agencies or relates to the process by which the Agencies make decisions. Nor would any amount of redactions be fruitful, as the documents in question represent deliberative discussions and any ancillary factual information is protected under the privilege. *See Educ. Law Ctr.,* 198 N.J. at 300-02.

Indeed, there need not be a single unifying policy adopted for the decision-making process to apply. For example, the categories ████████████████████████████████ ████████████████████████ and ████████ reflect draft versions of such documents and communications among agency leadership and/or staff discussing those drafts. *See*, Exhibit B.  The documents that the Agencies asserted deliberative privilege over are pre-decisional and "created in advance of an action by a public body." *See McGee*, 416 N.J. Super. at 621. The disclosure would necessarily cause a chilling effect on future communications among staff and leadership. *Ibid.* (Noting that, not every protected document becomes part of a final policy, but rather simply reflect part of the agency's decision-making process.*)

The Agencies have acted reasonably, going above and beyond to comply with Meta's voluminous discovery demands – completing two separate two-layer reviews of their documents and providing additional tags beyond those required in the Privilege Log Protocol. Thus, the State of New Jersey and the Agencies should not be prejudiced for Meta's untimely and delayed discovery dispute, and we ask this Court to uphold the Agencies' privilege designations.

## **ATTESTATION**

I, Ashley M. Simonsen, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that concurrence to the filing of this document has been obtained from each signatory hereto.


Dated: February 27, 2026

By: */s/ Ashley M. Simonsen*

Ashley M. Simonsen