Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc. and Instagram, LLC*

[Additional parties and counsel listed on signature pages]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>*Breathitt County Board of Education vs. Meta Platforms, Inc. et al* | MDL No. 3047<br><br>Case No.: 4:23-cv-01804-YGR<br><br>**DEFENDANTS' MOTION IN LIMINE No. 4 TO EXCLUDE HEARSAY TESTIMONY**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang<br><br>Date: March 18, 2026<br>Time: 9:00 AM<br>Place: Courtroom 1, 4th Floor |

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT, at 9:00 AM on March 18, 2026, before the Honorable Yvonne Gonzalez Rogers, in Courtroom 1, Floor 4, of the United States District Court, Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Defendants will and hereby do move this Court, under the Federal Rules of Evidence, for an order excluding testimony at trial as described in the accompanying Memorandum of Points and Authorities. This Motion is based on this Notice, the accompanying Memorandum, any other papers submitted in connection with the Motion, the accompanying Declaration of Ashley M. Simonsen and the exhibits thereto, and any other matters presented at the time of the hearing.

DATED: March 2, 2026                                Respectfully submitted,

By:     /s/ Ashley M. Simonsen

Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc. and Instagram, LLC*

*[Additional parties and counsel listed on signature pages]*

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT........................................................................................................................1

    A. Out-of-Court Statements of Students and Parents .................................................1

    B. Hoover "Key Informant" Interviews of Breathitt Staff ..........................................4

    C. Other Out-of-Court Statements of Teachers and Administrators ..........................6

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Blackshire v. Cnty. of Yuba*,
    648 F. Supp. 3d 1221 (E.D. Cal. 2023) ................................................................................. 5

*Paddack v. Dave Christensen, Inc.*,
    745 F.2d 1254 (9th Cir. 1984) ................................................................................................ 5

*Serjeant v. Foster Wheeler LLC*,
    2024 WL 4658407 (N.D. Cal. Oct. 24, 2024) ........................................................................ 6

*Stewart v. Cowan*,
    528 F.2d 79 (6th Cir. 1976) ......................................................................................... 3, 4, 5, 6

*United States v. Kent*,
    93 F.4th 1213 (11th Cir. 2024) ............................................................................................... 3

*United States v. Reyes*,
    18 F.3d 65 (2d Cir. 1994) ....................................................................................................... 3

**Rules of Evidence**

Fed. R. Evid. 403 ............................................................................................................................ 3, 6

Fed. R. Evid. 602 ............................................................................................................................ 2, 7

Fed. R. Evid. 703 ................................................................................................................................ 5

Fed. R. Evid. 801 ................................................................................................................................ 2

Fed. R. Evid 802 ............................................................................................................................. 1, 2

Fed. R. Evid 803 ................................................................................................................................ 3

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.   **INTRODUCTION**

Defendants seek to exclude the following categories of hearsay evidence: (1) out-of-court statements by students and parents, (2) out-of-court statements made to Dr. Sharon Hoover in her "key informant" interviews of Breathitt staff, and (3) other out-of-court statements made by Breathitt teachers and administrators. In addition to being inadmissible hearsay, such evidence should be excluded because it is not based on personal knowledge and would be prejudicial and/or misleading to the jury. *See* Fed. R. Evid 802; *see also id.* 402, 403, 602. Defendants further request that any conclusions based on these categories of hearsay evidence reached by witnesses should also be excluded.

This motion identifies each category of evidence to be excluded with specificity, including by reference to specific evidence representative of each category.[1]

II.   **ARGUMENT**

    A.   **Out-of-Court Statements of Students and Parents**

The Court should exclude as hearsay any evidence or argument referencing out-of-court statements made by Breathitt students or parents to Breathitt staff. *See* Fed. R. Evid. 802. Defendants further respectfully request that, in light of how the evidence has developed, Plaintiff be required to make a proffer of the non-hearsay basis for their witnesses' statements about students' alleged harms prior to offering such testimony.

Breathitt witnesses repeatedly testified in their depositions and affidavits about statements made to them by students to support their testimony that Defendants' platforms have harmed Breathitt. For example, Breathitt High School guidance counselor Kera Howard relied exclusively on her conversations with students and parents to support her assertion that Breathitt students have developed depression as a result of social media use:

> Q. And so sitting here today, you can't tell me the number of students that have developed, say, depression from using social media, right?
>
> A. I can't give you the exact number, but I would assume it's high.

---

[1] In accordance with this Court's Standing Orders, the specific evidence referenced in this section is attached to the Declaration of Ashley M. Simonsen filed concurrently with this motion.

> Q. What data do you have to support that?
>
> A. Just students who speak to me about their mental health.
>
> Q. What — what do they tell you?
>
> A. What do students tell me? Students tell me that due to interactions that they have on social media platforms or things that have been said about them on social media platforms and the number of people that it[] has reached, that they suffer from depression. A lot of my students are medicated for depression and their parents will normally corroborate that story.

Ex. 1, Mar. 10, 2025 Howard Fact Dep. 32:24–33:16; *see also* Ex. 2, May 2, 2025 Howard Aff. ¶ 8 ("Both parents and students report sleep deprivation amongst students in our school district due to excessive social media use . . . ."); *id.* ¶ 9 ("many students have developed the belief that they can say or send virtually anything through these platforms without consequence" due to "features that allow messages and images to disappear after being sent").

Compounding this problem, Breathitt administrators repeatedly testified to the contents of communications between teachers and students. For instance, Superintendent Philip Watts testified that, in the vast majority of instances where a student has their cell phone taken away in class, he believes the student was using social media. *See* Ex. 3, July 28, 2025 P. Watts Fact Dep. 13:13–19:13. Mr. Watts's belief, however, is based on *double-hearsay*—students made out-of-court statements to teachers or staff, and teachers or staff in turn reported those statements in their own out-of-court statements to Mr. Watts. *See id.* at 19:7–9 ("Q. How would the teachers know? A. Most students would tell you what they were doing. Most of — their peers would tell."); *see also id.* at 60:10–15 (basis for his testimony that "a lot of the classroom disruptions stem from something that may have happened on social media the night before" is "just my current conversations with administrators and teachers"). In addition to being double-hearsay, Mr. Watts's testimony demonstrates that he lacks personal knowledge regarding these underlying incidents. *See* Fed. R. Evid. 602.

The out-of-court statements of students (and parents) are paradigmatic examples of inadmissible hearsay. *See* Fed. R. Evid. 801(c), 802. Throughout discovery, Plaintiff vigorously opposed any discovery into the experiences of individual students. Having deprived Defendants of any ability to seek such

discovery or to cross-examine those students, Plaintiff should be prohibited from building its case on the foundation of those students' and their parents' purported out-of-court statements.

Any suggestion that out-of-court statements allegedly made by students or parents should be admitted for some reason other than the truth of the matter asserted would be, at best, pretextual. *See United States v. Kent*, 93 F.4th 1213, 1219 (11th Cir. 2024) ("[A] party cannot launder hearsay into a trial by offering it for an irrelevant non-hearsay purpose.") (citation omitted)). Breathitt's witnesses can testify regarding events *they* witnessed or actions that *they* took in response to student mental health issues or disciplinary incidents involving social media. But that is not a basis for Plaintiffs to smuggle into evidence the untested—and untestable—out-of-court statements of students or parents on a central issue in this case. *See Stewart v. Cowan*, 528 F.2d 79, 86 n.4 (6th Cir. 1976) (hearsay exception insufficient to admit "testimony going to the very heart of the [] case" because "the hearsay rule signifies a rule rejecting assertions, offered testimonially, which have not been in some way subjected to the test of cross-examination" (internal citations and quotation marks omitted)). Even if such evidence had some minimal probative value for some non-hearsay purpose (such as "notice" or the effect of the statements on the listener), that would be outweighed by the extreme prejudice to Defendants and the risk of juror confusion it would create. *See* Fed. R. Evid. 403; *United States v. Reyes*, 18 F.3d 65, 72 (2d Cir. 1994) (admission of evidence was error where "the resulting prejudice" was "considerable and far exceeded the minimal or non-existent probative value of the non-hearsay uses of this evidence.").

No exception to the hearsay rule authorizes introduction of these student and parent statements. Plaintiffs' own witnesses make clear that their testimony about students is not based on contemporaneous business records—because no such records exist. *See, e.g.*, Ex. 3, July 28, 2025 P. Watts Fact Dep. 19:1–5 ("The teachers would know most — know most of the time what they were doing. But as far as a way to document the accuracy of that would almost be impossible with everything a classroom teacher is challenged with doing."); Ex. 1, Mar. 10, 2025 Howard Fact Dep. 33:5–7: ("Q. What data do you have to support that? A. Just students who speak to me about their mental health."). Thus, they do not qualify for a hearsay exception under Federal Rule of Evidence 803(6). And none of the student statements were made for purposes of medical diagnosis or treatment. *See* Fed. R. Evid 803(4). Among other reasons, none of the Breathitt witnesses, including Ms. Howard, is a medical professional with the qualifications

necessary to make diagnoses or provide medical treatment. *See, e.g.*, Ex. 1, Mar. 10, 2025 Howard Fact Dep. 27:10–19 (confirming that Ms. Howard does not "have the medical training to diagnose students").

\* \* \*

Further, because Plaintiff's witnesses have repeatedly testified that Breathitt has suffered sweeping harms, only to explain that the sole basis for their sweeping claims are out-of-court statements made by students and teachers, Defendants respectfully submit that Plaintiff be required to make a proffer that it has a non-hearsay basis for a claim before eliciting generalized testimony of harm from a Breathitt fact witness. For example, after Ms. Howard testified that the number of students who experience "depression from using social media" is "high," Ex. 1, Mar. 10, 2025 Howard Fact Dep. 32:24–33:4, her subsequent testimony revealed her sole basis for that statement was inadmissible hearsay (and her own speculation). *See supra* at 1–2. Plaintiff witnesses should be precluded from offering broad testimony to the effect that social media causes in-class disruptions or mental health harms absent some proper evidentiary foundation for such testimony. Because counsel's questions can easily be crafted in a way that avoids a hearsay objection ("Tell the jury what the harms from social media are in Breathitt schools."), only an advance proffer will ensure that out-of-court statements—or vague conclusions based on such statements—do not improperly come into evidence. Cross-examination alone, or an after-the-fact curative instruction, cannot unring that bell. *See, e.g.*, *Stewart*, 528 F.2d at 86 n.4 ("The naïve assumption that prejudicial effects can be overcome by instructions to the jury . . . all practicing lawyers know to be unmitigated fiction.") (quoting *Bruton v. United States*, 391 U.S. 123, 129 (1968) (internal quotation marks omitted)).

### B.     Hoover "Key Informant" Interviews of Breathitt Staff

Plaintiff's expert, Dr. Sharon Hoover, bases her opinions in substantial part on interviews she conducted with so-called "key informants" from among Breathitt's staff. For example, Dr. Hoover states that Breathitt informants "expressed deep concerns about the negative effects of social media on the school environment as well as student mental health and learning," and outlines in detail the various out-of-court statements made to her by these unidentified individuals. Ex. 4, Hoover Rep. ¶ 47; *see also id.* ¶¶ 48–52. These statements are indisputably hearsay and should not be admitted into evidence. *See* ECF 2750 at 16 (parties cannot use expert testimony to "regurgitate . . . hearsay at trial").

In her report, Dr. Hoover did not identify any of the key informants. Plaintiff's counsel provided Defendants with a list of the key informants only after the close of fact discovery (and shortly before Dr. Hoover's deposition), and Defendants therefore had no meaningful opportunity to seek discovery from those individuals regarding the statements they made to Dr. Hoover and do not know which statements were made by which staff members. Dr. Hoover told each of the "key informants" that she would not "attribut[e] particular quotes to particular key informants" in order to "retain their individual confidentiality" and to support "a comfortable … interview process." Ex. 5, Hoover Dep. Vol. II 574:7–16, 577:3–578:8. True to her word, at deposition, Dr. Hoover either would not or could not attribute any specific statement by a Breathitt key informant to a particular witness. *Id.* at 577:3–19.[2] And Dr. Hoover did not create or maintain any record of her conversations with key informants beyond her report itself. Ex. 5, Hoover Dep. Vol. I 30:21–32:12.

Dr. Hoover should be precluded at trial from relaying or characterizing the supposed statements made to her by these "key informants" for two reasons. *First*, while experts may rely on hearsay to *form* opinions, they cannot disclose that hearsay to the jury except for the limited purpose of explaining the basis for their expert opinions, *see* Fed. R. Evid. 703, and it is blackletter law that Plaintiff may not rely on the content of the Breathitt key informant interviews "to establish the truth of what they assert," *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1261–62 (9th Cir. 1984). *Second*, because Dr. Hoover is either unwilling or unable to attribute any specific statements to any specific key informant, her testimony is functionally equivalent to anonymous hearsay—rendering it especially prejudicial. *See Blackshire v. Cnty. of Yuba*, 648 F. Supp. 3d 1221, 1232 (E.D. Cal. 2023) (hearsay statement inadmissible at trial where "no individual is identified as the declarant"); *see also Stewart*, 528 F.2d at 80 (anonymous telephone calls to police inadmissible).

Under these circumstances, it would both be unduly prejudicial to Defendants and create an intolerable risk of jury confusion to allow Dr. Hoover to testify as to the contents of these interviews. *See*

---

[2] Across the bellwethers, there was only one instance where a fact witness disclosed at her deposition that she had spoken with Dr. Hoover. And even then, Plaintiffs' counsel instructed the witness not to disclose her conversations with Dr. Hoover because they were purportedly not part of the representative's preparation to testify as a corporate representative. *See, e.g.*, Ex. 6, Shivanonda Dep., Vol. I 19:10–21:17.

Fed. R. Evid. 403; *see also Stewart*, 528 F.2d at 86 n.4; *Serjeant v. Foster Wheeler LLC*, 2024 WL 4658407, at *2 (N.D. Cal. Oct. 24, 2024) (excluding hearsay evidence ostensibly offered as basis for expert opinion where "its prejudicial effect . . . outweighs any potentially probative value") (citation omitted)). For example, at her deposition, Dr. Hoover testified that key informants told her that "specific [platform] features"—such as "auto play," the "lack of parental controls" and "age verification"—were impacting student mental health and/or causing Breathitt harm. Ex. 5, Hoover Dep. Vol. I 234:5–235:13. None of the Breathitt fact witnesses who Defendants deposed gave any such testimony when asked about the alleged harms from social media. They mentioned only content-related harms. If Breathitt fact witnesses plan to testify in contravention of their deposition testimony and attempt to offer testimony at trial linking specific actionable platform features to Breathitt's harms, they can do that from the stand themselves—and Dr. Hoover could in turn rely on that in-court testimony as a basis for her opinions.[3] But to allow Dr. Hoover to tell the jury that unidentified Breathitt personnel made such statements—which Defendants have had no ability to contest or explore—would be extraordinarily prejudicial. It would also inevitably confuse the jury, as it would be difficult (if not impossible) for jurors not to consider the supposed statements for the truth of the matters asserted. *See, e.g.*, *Stewart*, 528 F.2d at 86 n.4. Under these circumstances, any limited probative value from Dr. Hoover explaining that the basis for her opinions rests on these anonymous and untestable out-of-court statements would be far outweighed by the prejudice and jury confusion such testimony would create.

C. **Other Out-of-Court Statements of Teachers and Administrators**

Numerous Breathitt fact witnesses likewise appear intent on relaying to the jury out-of-court statements made by teachers and non-testifying administrators. This testimony too should be excluded as hearsay.

For example, Plaintiff relies on the testimony of Jeremy Hall—the principal of Sebastian Elementary School—to claim that a different principal of a different elementary school "spends a

---

[3] The same is true for the full range of the "key informant" statements relied on by Dr. Hoover: if Plaintiff presents admissible testimony at trial consistent with the out-of-court statements recounted in Dr. Hoover's report, then Dr. Hoover may rely on those statements as a basis for her opinions. But to permit the statements into evidence for any purpose while simultaneously depriving Defendants of any ability to test those statements through cross-examination would deny Defendants their fair-trial rights.

substantial portion of [his] days addressing social media related concerns[.]" Ex. 7, May 9, 2025 Hall Affidavit ¶ 16.  At his deposition, however, Mr. Hall made clear that his only basis for his estimate of the time spent by the principal of Highland Turner Elementary addressing "social media concerns" was the out-of-court statement of that principal:

> Q. … Do you have any basis for your statement about the Highland Turner Elementary School principal besides what that principal told you?
>
> A. No.

Ex. 8, July 28, 2025 Hall Fact Dep. 60:3–7; *see also id.* at 59:3–10 (confirming that he had no basis for estimate about time spent by his assistant principal "besides asking him how much time he spent").

The same is true for the principal of Breathitt High School, Daphne Noble, who confirmed that she had no basis on which to estimate time spent by her assistant principals addressing social media issues beyond those individuals' hearsay statements:

> Q. And did you do any work to make an independent determination as to the amount of time that your assistant principals spend on social media related issues?
>
> A. Conversations with them, debriefs with them.
>
> Q. Did you do anything besides asking them?
>
> A. No.

Ex. 9, July 29, 2025 D. Noble Fact Dep. 58:1–9.  Not only is this hearsay, these witnesses lack personal knowledge regarding these subjects.  *See* Fed. R. Evid. 602.

Likewise, Superintendent Watts was asked about his basis for his belief that "the real problem with the phones is social media."  Mr. Watts candidly admitted that his sole basis for the claim was the out-of-court statements of others:

> Q. But what I'm trying to understand is what's that based on? Do you have any data, anything, anybody do a study, any survey, anything like that that could say, you know, the real problem with the phones is social media?
>
> A. No.
>
> Q. Nothing like that?
>
> A. No.
>
> Q. Just anecdotal conversations.

A. Yes.

Ex. 10, Apr. 22, 2025 30(b)(6) P. Watts. Dep. 73:19–74:3.

Other examples of similar testimony include:

- Phillip Watts: "Most of the problems that the teachers talk about that they're dealing with stem from social media." *Id.* at 71:23–72:2.
- Daphne Noble: "teachers say that — when they're in conversations with me, they would say that students — you know, kids are bringing in an extra phone." Ex. 9, July 29, 2025 D. Noble Fact Dep. 30:7–17.
- Daphne Noble: "Teachers were just saying that students were using their phones more in class, you know, scrolling on social media. It was like they — the kids were wanting to check social media more, checking their statuses." *Id.* at 40:1–8.

For the reasons explained above, Plaintiff's witnesses should not be permitted to testify to the out-of-court statements of other unidentified Breathitt personnel. Breathitt's employees can testify regarding events they witnessed or actions that they took. But they should not be able to offer anecdotes supposedly relayed to them by other unnamed employees (who were not deposed and will not be subject to cross-examination at trial).

DATED: March 2, 2026                                     Respectfully submitted,


By:   */s/ Ashley M. Simonsen*

Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones (*pro hac vice*)
Paul W. Schmidt (*pro hac vice*)
Christian J. Pistilli (*pro hac vice*)
COVINGTON & BURLING LLP
One City Center

|   |   |
|---|---|
| 1 | 850 Tenth Street, NW |
| 2 | Washington, DC 20001-4956 |
|   | Telephone: (202) 662-6000 |
| 3 | Facsimile: (202) 662-6291 |
|   | Email: pajones@cov.com |
| 4 | Email: pschmidt@cov.com |
|   | Email: cpistilli@cov.com |

*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc. and Instagram, LLC*

*/s/ Jonathan H. Blavin*
JONATHAN H. BLAVIN (State Bar No. 230269)
Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel: (415) 512-4000

E. MARTIN ESTRADA (State Bar No. 223802)
Martin.Estrada@mto.com
L. ASHLEY AULL (State Bar No. 257020)
Ashley.Aull@mto.com
VICTORIA A. DEGTYAREVA (State Bar No. 284199)
Victoria.Degtyareva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel.: (213) 683-9100

ALLISON BROWN (*pro hac vice*)
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Tel.: (215) 268-5000

JESSICA DAVIDSON (*pro hac vice*)
jessica.davidson@kirkland.com
JOHN J. NOLAN (*pro hac vice*)
jack.nolan@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800

*Attorneys for Defendant Snap Inc.*

|   |   |
|---|---|
| | /s/ Geoffrey M. Drake |
| | GEOFFREY M. DRAKE, *pro hac vice* |
| | gdrake@kslaw.com |
| | TACARA D. HARRIS, pro hac vice |
| | tharris@kslaw.com |
| | KING & SPALDING LLP |
| | 1180 Peachtree Street, NE, Suite 1600 |
| | Atlanta, GA 30309 |
| | Telephone: (404) 572-4600 |
| | Facsimile: (404) 572-5100 |

DAVID P. MATTERN, *pro hac vice*
dmattern@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, D.C. 20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737

BAILEY J. LANGNER (SBN 307753)
*blangner@kslaw.com*
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

/s/ Daniel M. Petrocelli
Daniel M. Petrocelli (SBN 97802)
Sabrina H. Strong (SBN 200292)
O'MELVENY & MYERS
1999 Avenue of the Stars
8th Floor
Los Angeles, CA 90067
Telephone: (310) 553-6700
Email: dpetrocelli@omm.com
          sstrong@omm.com

Steve Brody (pro hac vice)
O'MELVENY & MYERS
1625 Eye Street
Washington, DC 20006
Telephone: (202) 383-5300
Email: sbrody@omm.com

*Attorneys for Defendants TikTok Inc., ByteDance Inc., ByteDance Ltd., TikTok Ltd., and TikTok, LLC*

/s/ Ashley Hardin
JOSEPH G. PETROSINELLI, *pro hac vice*
jpetrosinelli@wc.com
ASHLEY W. HARDIN, *pro hac vice*

ahardin@wc.com
J. ANDREW KEYES, *pro hac vice*
akeyes@wc.com
NEELUM J. WADHWANI (SBN 247948)
nwadhwani@wc.com
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
Tel.: (202) 434-5000

*Attorneys for Defendants YouTube, LLC and Google LLC*

**FILER'S ATTESTATION**

I, Ashley M. Simonsen, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED: March 2, 2026     By:  */s/ Ashley M. Simonsen*
                                      Ashley M. Simonsen