# EXHIBIT A

CONFIDENTIAL

Page 1

```
 1            UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF CALIFORNIA
 2
              Case No. 4:22-md-03047-YGR
 3                   MDL No. 3047
 4
 5   IN RE:  SOCIAL MEDIA ADOLESCENT
     ADDICTION/PERSONAL INJURY
 6   PRODUCTS LIABILITY LITIGATION,
 7   THIS DOCUMENT RELATES TO:
 8   Breathitt County School District,
     By and Through The Breathitt
 9   Board of Education
     v. Meta Platforms, Inc., et al.
10
     Member Case No.:  4:23-cv-01804
11   _____
12       DEPOSITION OF:  PHILLIP WATTS 30(b)(6)
        CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
13   _____
14   The video deposition of Phillip Watts was taken
15   before Janine N. Leroux, Stenographic Court Reporter
16   and Notary Public in and for the State of Kentucky,
17   at the Breathitt County Schools Central Office
18   located at 420 Court Street, Jackson, Kentucky
19   commencing on April 22nd, 2025, at the approximate
20   hour of 9:00 a.m.  This deposition was taken in
21   accordance with Federal Rules of Civil Procedure 26
22   and 30.
23
24
25
```

CONFIDENTIAL

Page 2

```
 1    APPEARANCES:
 2
      SARAH EMERY, ESQUIRE
 3    RONALD JOHNSON, ESQUIRE
      HENDY JOHNSON VAUGHN
 4    2380 Grandview Drive
      Ft. Mitchell, Kentucky 41017
 5    rjohnson@justicestartshere.com
      semery@justicestartshere.com
 6
      APPEARING ON BEHALF OF THE PLAINTIFFS
 7
 8    ANDREW STANNER, ESQUIRE
      COVINGTON & BURLING LLP
 9    One City Center
      850 Tenth Street, NW
10    Washington DC 20001-4956
      cpistilli@cov.com
11
      and
12
      MATTHEW E. DePAZ, ESQUIRE
13    COLIN MURPHY, ESQUIRE
      SHOOK, HARDY & BACON, L.L.P
14    2555 Grand Boulevard
      Kansas City, Missouri 64108
15    mdepaz@shb.com
      kromeo@shb.com
16    cmurphy@shb.com
17    APPEARING ON BEHALF OF THE META PLATFORMS, et al.
18
      CAROLINE KANE, ESQUIRE (Via Zoom)
19    KIRKLAND & ELLIS, LLP
      333 West Wolf Point Plaza
20    Chicago, Illinois 60654
      faraz.shahidpour@kirkland.com
21    patrick.maroun@kirkland.com
      caroline.kane@kirkland.com
22
      REMOTE APPEARANCE ON BEHALF OF DEFENDANTS,
23    SNAP INC.
24
25
```

CONFIDENTIAL

Page 3

1  APPEARANCES CONTINUED:
2
   ADAM REINKE, ESQUIRE (Via Zoom)
3  KING & SPALDING LLP
   500 West Second Street
4  Austin, Texas 78701
   areinke@kslaw.com
5
   APPEARING ON BEHALF OF THE DEFENDANTS,
6  TIKTOK, INC., BYTEDANCE LTD. and TIKTOK LTD.,
   TIKTOK, LLC
7
8  SOPHIA YOUNG, ESQUIRE (Via Zoom)
   WILLIAMS & CONNOLLY LLP
9  680 Maine Avenue, SW
   Washington, DC 20024
10 syoung@wc.com
11 APPEARING ON BEHALF OF THE DEFENDANTS,
   YOUTUBE LLC and GOOGLE LLC
12
13 ALSO APPEARING:
14 JEFF SINDIONG, VIDEOGRAPHER
   TEJASH PATEL, EXHIBIT TECHNICIAN
15
16
17
18
19
20
21
22
23
24
25

Page 51

```
 1           MR. STANNER:  Okay.  Tab 7.
 2              (Exhibit 7 was marked.)
 3   BY MR. STANNER:
 4      Q.    I'm going to hand you what I just
 5   marked as Exhibit 7.  You recognize Exhibit 7 as
 6   the minutes of the board meeting from February
 7   28th, 2023?
 8      A.    Yes.
 9      Q.    If you turn with me to Page 808 at the
10   top you see there is Roman III.3.B.14.  Do you see
11   that?
12      A.    Yes.
13      Q.    And this is the minutes from just a
14   couple years ago in February when you recommended
15   to the Board that you bring this lawsuit against
16   social media companies, right?
17      A.    Correct.
18      Q.    It says:  Based upon the recommendation
19   of Superintendent Phillip Watts, approval of
20   entering into a contract resolution authorizing
21   litigation against social media platforms.  Board
22   approval is subject to final review of the
23   agreement and attorney approval passed with a
24   motion by Ms. Anna Morris and a second by
25   Mr. Albert Little.
```

Page 52

1  　　　　　Do you see that?
2  　　A.　Yes.
3  　　Q.　It was your recommendation to hire
4  outside counsel and join the lawsuits against the
5  social media companies, right?
6  　　A.　Correct.
7  　　Q.　And the outside counsel we're talking
8  about are the lawyers that are here with you
9  today, right?
10 　　A.　Yes.
11 　　Q.　Okay. And you have a pre-existing
12 relationship with the law firm that -- that
13 represents the School District here today, right?
14 　　A.　Yes.
15 　　Q.　They've represented the District in
16 other litigation.
17 　　A.　Yes.
18 　　Q.　If we look at the agenda item
19 immediately before this one, we see 3.B.13.
20 Consider approval of entering into -- I'm sorry,
21 consider approval of accepting the Juul settlement
22 allocation. Board approval is subject to final
23 review of the agreement and attorney approval.
24 　　　　　Do you see that?
25 　　A.　Yes.

Page 53

1   Q.   And it says:  Based upon the
2   recommendation of Superintendent Phillip Watts,
3   approval of accepting the Juul settlement
4   allocation.
5        Do you see that?
6   A.   Yes.
7   Q.   All right.  What this is is that there
8   was a prior lawsuit that the District joined
9   against a company called Juul.
10  A.   Yes.
11  Q.   And Juul makes e-cigarettes, sometimes
12  known as vapes, right?
13  A.   Yes.
14  Q.   And in the years before 2023, Breathitt
15  decided to sue Juul for harms it alleged were
16  caused by vaping, right?
17  A.   Yes.
18  Q.   I'm going to show you a copy of the
19  complaint in that case.
20       MR. STANNER:  This is Tab 8.  I'll mark
21  it as exhibit 8.
22       (Exhibit 8 was marked.)
23  BY MR. STANNER:
24  Q.   Do you remember when the lawsuit was
25  filed?

Page 54

1   A. Not the exact date.
2   Q. Okay. Do you see at the top of
3   Exhibit 8 it says: Filed 7/21/2020?
4   A. Yes.
5   Q. All right. So in July of 2020,
6   Breathitt County sued Juul Labs in San Francisco,
7   California, right?
8   A. That's what the document says.
9   Q. And it was the same -- you used the
10  same lawyers that you used right now, right?
11  A. Yes.
12  Q. And I want to look at some of the
13  things that were alleged. If you turn to Page 10
14  with me. It's not -- the pages aren't numbered.
15  I'm sorry about that. If you -- actually, they
16  are. On the top right, if you look, Page 10 of 79
17  just down at the bottom it says: Section C,
18  e-cigarette use presents severe physical and
19  mental health risks, particularly to youth.
20      Do you see that?
21  A. Yes.
22  Q. The allegation -- this allegation was
23  e-cigarettes -- Juul, maker of e-cigarettes, is
24  causing mental health consequences for the youth
25  of Breathitt County, right?

Page 55

1     A.    Yes.
2     Q.    If you look at Paragraph 30 -- well,
3  let's go -- let's start at Paragraph 48.
4           In Paragraph 48 your complaint against
5  Juul said:  With the help of the Big Tobacco
6  playbook on addicting young consumers to nicotine
7  in hand, Juul launched its current design in 2015.
8           Do you see that?
9     A.    Yes.
10    Q.    So what this lawsuit was saying is
11 there's something about the design of Juul vapes
12 that is harming the mental health of teens in
13 Breathitt County, right?
14    A.    Yes.
15    Q.    And it alleges that nicotine of course
16 is addictive, which is true, right?
17    A.    Yes.
18    Q.    If you go back with me to Page 12,
19 Paragraph 35, it says:  Once a brain is addicted
20 to nicotine, the absence of nicotine causes
21 compulsive drug-seeking behavior which, if not
22 satisfied, results in withdrawal symptoms
23 including:  Anxiety, tension, depression,
24 irritability, difficulty in concentrating,
25 disorientation, increased eating, restlessness,

```
                                                    Page 56
 1    headaches, sweating, insomnia, heart palpitations
 2    and tremors and intense cravings for nicotine.
 3              Do you see that?
 4         A.   Yes.
 5         Q.   Depression, irritability, anxiety,
 6    these are a lot of the same things that you've
 7    alleged are caused by social media companies,
 8    right?
 9         A.   Yes.
10         Q.   If we look at Paragraph 40, Page 14,
11    you allege:  Additional evidence suggests that
12    nicotine can affect an adolescent's neurological
13    development and that adolescents are more
14    vulnerable to nicotine addiction.
15              Do you see that?
16         A.   Yes.
17         Q.   And it goes on to say:  Smoking
18    cigarettes during adolescence has been associated
19    with lasting cognitive and behavioral impairments
20    including effects on working memory and attention
21    and reduced prefrontal cortex activation.
22              Do you see that?
23         A.   Yes.
24         Q.   Okay.  This is, also, similar to what
25    you're alleging in this lawsuit against social
```

Case 4:22-md-03047-YGR   Document 2796-2   Filed 03/02/26   Page 11 of 15

CONFIDENTIAL

```
                                                      Page 57
 1    media companies, right?
 2         A.    I'm not for sure.
 3         Q.    That social media can be an impairment
 4    on neurological development for adolescents?
 5         A.    Yes.
 6         Q.    Does that sound familiar?
 7         A.    Yes.
 8         Q.    You've also, as part of working with
 9    your outside counsel, have brought a lawsuit on
10    behalf of the District against companies in the
11    opioid litigation, right?
12         A.    I'm not for sure.
13         Q.    You don't remember?
14         A.    It sounds right.
15         Q.    Okay.  You remember bringing a lawsuit
16    against a company called McKinsey?
17         A.    Do you have a document to refresh my
18    memory?
19         Q.    Sure.
20         A.    I was thinking that was coming.  Sorry.
21    This is stressful.
22         Q.    That's all right.  It's Tab 9, it's
23    Exhibit 9.
24                   (Exhibit 9 was marked.)
25                   THE WITNESS:  Before you ask me a
```

Golkow Technologies,
877-370-3377            A Veritext Division            www.veritext.com

Page 58

1       question, could we take a restroom break?
2              MR. STANNER:  Oh, yeah, sure.
3              THE VIDEOGRAPHER:  We are now going off
4       record.  The time is 9:54.
5              (Thereupon, a break was taken.)
6              THE VIDEOGRAPHER:  We are now back on
7       the record.  The time is 10:05.  You may
8       continue.
9    BY MR. STANNER:
10       Q.    Mr. Watts, welcome back.
11       A.    Thank you.
12       Q.    Did you get a break?
13       A.    Yes.
14       Q.    All right.  We were talking about the
15    District's decision to sue McKinsey for its role
16    in the opioid crisis.  Do you remember that?
17       A.    Yes.  And with all three of these, our
18    local board attorney brings us these.  You know,
19    he represents us and looks out for our kids and
20    students and staff, and he's the expert and the
21    person that I rely on to go through these
22    exhibits.
23       Q.    Okay.  But in this case against
24    McKinsey, this was filed in December 2021, right?
25       A.    Yes.

Page 59

1  Q. And, again, it alleged that opioids,
2  abuse of opioids, was causing problems for the
3  School District, right?
4  A. Correct.
5  Q. If we look specifically at Page 9,
6  Paragraph 24, it says: In addition, the need for
7  special education services because of the opioid
8  epidemic is not limited to children born with
9  NOWS.
10     Do you see that?
11  A. Yes.
12  Q. Do you know what NOWS is?
13  A. You would need to explain that to me.
14  Q. All right. If you look back on the
15  page before you can see it's defined Neonatal
16  Opioid Withdrawal Syndrome, NOWS, right?
17  A. Yes.
18  Q. Okay. And it basically says -- what we
19  just looked at in Paragraph 24 says: We need to
20  provide more special education services as a
21  school district because of parent -- kids born
22  with opioid addiction, right?
23  A. Correct.
24  Q. And in Paragraph 25, the District
25  alleged: The opioid epidemic has required many

Page 60

1   public school districts, including the Plaintiffs
2   named in this Complaint, to expend or divert
3   already scarce resources to support children born
4   with neonatal opioid withdrawal syndrome or whose
5   families are struggling with opioid addiction and
6   death, right?
7        A.   Yes.
8        Q.   All right.  At the time that you
9   encouraged the Board to join this, you didn't know
10  what NOWS was.
11       A.   I didn't know what that -- in education
12  where we use a lot of acronyms, but after you
13  explained it, yes, I understood the context of the
14  lawsuit.
15       Q.   Okay.  And this lawsuit, and the one
16  against Juul and the one against the social media
17  companies, if successful, the School District
18  stands to make some money as a result of those
19  lawsuits, right?
20       A.   Yes.
21       Q.   And each of them is alleging that some
22  form of product is addictive and that that has
23  negative consequences for the kids and for the
24  School District, right?
25       A.   Yes.

1   STATE OF KENTUCKY         )
                              )
2   COUNTY OF MONTGOMERY      )

3           I, JANINE N. LEROUX, Court Reporter and
4   Notary Public in and for the State of Kentucky at
5   Large, certify that the facts stated in the
6   caption hereto are true, and that at the time and
7   place stated in said caption the witness named in
8   the caption hereto personally appeared before me.
9           I further certify that after being duly
10  sworn by me the witness was examined by counsel
11  for the parties, and that said testimony was taken
12  in stenotype by me and later reduced to
13  computer-aided transcription, and that the
14  foregoing is a true record of the testimony given
15  by said witness.
16          The foregoing deposition has been
17  submitted to the witness for reading and signing.

23          JANINE LEROUX - COURT REPORTER
            NOTARY PUBLIC STATE-AT-LARGE
24          MY COMMISSION EXPIRES: NOVEMBER 26, 2027
            NOTARY ID KYNP1406