WILLIAMS & CONNOLLY LLP
Joseph G. Petrosinelli, *pro hac vice*
Ashley W. Hardin, *pro hac vice*
680 Maine Avenue SW
Washington, DC 20024
Tel.: (202) 434-5000
jpetrosinelli@wc.com
ahardin@wc.com

*Attorney for Defendants YouTube, LLC and Google LLC*

*[Additional parties and counsel listed on signature pages]*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>*Breathitt County Board of Education v. Meta Platforms, Inc., et al.*<br>Case No.: 4:23-CV-1804 | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR-PHK<br><br>**DEFENDANTS' MOTION IN LIMINE NO. 3 TO EXCLUDE LAY WITNESS TESTIMONY REGARDING ALLEGED STUDENT "ADDICTION" OR CAUSATION OF MENTAL HEALTH HARMS**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang<br><br>Date: March 18, 2026<br>Time: 9:00 AM<br>Place: Courtroom 1, 4th Floor |

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT, at 9:00 AM on March 18, 2026, before the Honorable Yvonne Gonzalez Rogers, in Courtroom 1, Floor 4, of the United States District Court, Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Defendants will and hereby do move this Court, under Federal Rules of Evidence 701, 702, and 403, for an order excluding testimony at trial as described in the accompanying Memorandum of Points and Authorities. This Motion is based on this Notice, the accompanying Memorandum, any other papers submitted in connection with the Motion, the accompanying Declaration of Ashley W. Hardin and the exhibits thereto, and any other matters presented at the time of the hearing.

DATED: March 2, 2026                                        Respectfully submitted,

By:   */s/ Ashley W. Hardin*

WILLIAMS & CONNOLLY LLP
Joseph G. Petrosinelli, *pro hac vice*
Ashley W. Hardin, *pro hac vice*
680 Maine Avenue SW
Washington, DC 20024
Tel.: (202) 434-5000
jpetrosinelli@wc.com
ahardin@wc.com

*Attorney for Defendants YouTube, LLC and Google LLC*

*[Additional parties and counsel listed on signature pages]*

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 1

    A. Breathitt Fact Witnesses' Lay Opinion Testimony Is Inadmissible Under Federal Rules of Evidence 701 and 702. ............................................................... 1

        i. The Court Should Exclude Breathitt Fact Witness Testimony Characterizing Students as "Addicted" to or Compulsively Using Social Media or Defendants' Platforms. ....................................................... 2

        ii. The Court Should Exclude Breathitt Fact Witnesses' Testimony Opining That Social Media or Defendants' Platforms Caused Mental Health Conditions. ........................................................................................ 5

    B. Breathitt Witnesses' Lay Opinion Testimony Is Inadmissible Under FRE 403. ....................................................................................................................... 6

-ii-     Case No. 4:22-md-03047-YGR-PHK

DEFENDANTS' MOTION IN LIMINE NO. 3 TO EXCLUDE LAY WITNESS TESTIMONY REGARDING ALLEGED STUDENT "ADDICTION" OR CAUSATION OF MENTAL HEALTH HARMS

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Crawford v. City of Bakersfield*,
    944 F.3d 1070 (9th Cir. 2019) ............................................................................................. 2

*Drake v. R.J. Reynolds Tobacco Co.*,
    2015 WL 12746105 (S.D. Fla. Jan. 29, 2015) ...................................................................... 2

*Frisone v. United States*,
    270 F.2d 401 (9th Cir. 1959) ............................................................................................ 3, 5

*Lillie v. ManTech Int'l Corp.*,
    2018 WL 6323076 (C.D. Cal. Dec. 3, 2018) ........................................................................ 5

*Sowers v. R.J. Reynolds Tobacco Co.*,
    2015 WL 12839775 (M.D. Fla. Jan. 23, 2015), *aff'd*, 975 F.3d 1112 (11th Cir. 2020) ... 3, 5, 6

*United States v. Castro–Juarez*,
    654 F. App'x 364 (9th Cir. 2016) ......................................................................................... 6

*Vincent v. Reyes*,
    2021 WL 4262289 (N.D. Cal. Sep. 20, 2021) ....................................................................... 5

**OTHER AUTHORITIES**

Fed. R. Evid. 403 ....................................................................................................................... 1, 6
Fed. R. Evid. 701 ........................................................................................................... 1, 2, 3, 5, 8
Fed. R. Evid. 702 .................................................................................................................. 1, 2, 5, 8
Fed. R. Evid. 801(c) ....................................................................................................................... 2
Fed. R. Evid. 802 ........................................................................................................................... 2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendants move to exclude lay opinion testimony by Breathitt fact witnesses characterizing students as "addicted" to social media in general or to Defendants' platforms specifically, describing students' use of social media or Defendants' platforms as "compulsive," or opining that student use of social media or Defendants' platforms is a cause of any student mental health condition. Such testimony should be excluded under Federal Rules of Evidence 701, 702, and 403.

## II.   ARGUMENT

### A. Breathitt Fact Witnesses' Lay Opinion Testimony Is Inadmissible Under Federal Rules of Evidence 701 and 702.

In their depositions, multiple Breathitt fact witnesses testified that, in their opinion, students are "addicted" to or compulsively use social media and/or cellphones. For example:

- Phillip Watts, Superintendent for the Breathitt School District, testified as a 30(b)(6) witness that it "[s]eems like our students and parents have an addiction to social media." Ex. 1, P. Watts 30(b)(6) Dep. (Apr. 22, 2025) at 23:19–20.

- Hannah Watts, Director of Special Education for the Breathitt School District, testified, also as a Breathitt 30(b)(6) witness, that "kids are addicted to their cellphones." Ex. 2, H. Watts 30(b)(6) Dep. (Mar. 12, 2025) at 35:25–36:1.

- Daphne Noble, principal of Breathitt High School, testified as one of Breathitt's 30(b)(6) witnesses that "[T]he kids are addicted to the social media, and they want to be a part of what was going on there. They wanted to get their likes up." Ex. 3, D. Noble 30(b)(6) Dep. (Mar. 11, 2025) at 74:15–18.

- Jeremy Hall, principal of Sebastian Elementary School, testified that students' problems with social media include "just scrolling through and looking and stuff and

being like almost what I would call addicted to it." Ex. 4, Hall Dep. (Apr. 23, 2025) at 70:20–71:1.[1]

- Kera Howard, a school counselor at Breathitt High School stated, "In my experience, I have seen a growing problem of addictive, compulsive and problematic social media use among our students." Ex. 6, Howard Decl. ¶ 8.

This testimony is inadmissible under Federal Rules of Evidence 701 and 702, which limit lay witness opinion testimony to that which is "rationally based on the witness's perception" and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(a), (c).

### i. The Court Should Exclude Breathitt Fact Witness Testimony Characterizing Students as "Addicted" to or Compulsively Using Social Media or Defendants' Platforms.

Breathitt's fact witnesses' statements that students are "addicted" to social media or "compulsively" use social media fail Federal Rule of Evidence 701 because they are not rationally based on the witness's perception. *See Crawford v. City of Bakersfield*, 944 F.3d 1070, 1079 (9th Cir. 2019) (witness could "testify about her own observations . . . and experiences" as long as she "stopped short of opining that [her son] had a mental illness").

While Breathitt fact witnesses can testify about student actions that they have personally observed—*e.g.*, fact witnesses can testify that they witnessed students looking at their cellphones[2] and how often they witnessed that—"opinions regarding whether [students are] addicted to [social media] are too far removed from the witnesses' own perceptions to be admitted as lay opinion testimony under Rule 701." *See Drake v. R.J. Reynolds Tobacco Co.*, 2015 WL 12746105, at *2 (S.D. Fla. Jan. 29, 2015) (disallowing lay witness opinion regarding whether the decedent was

---

[1] *See also* Ex. 5, Hall Dep. (July 28, 2025) at 67:12–16 ("Q. Okay. And is this in part what you mean by that, that they're not doing what they're supposed to be doing because they're compulsively using social media? A. Yes.").

[2] Breathitt fact witnesses may testify that they witnessed students on Defendants' specific platforms only if they personally witnessed what students were doing on their phones but may not testify to that if their only basis for that testimony is that students told them what they were doing because that would be inadmissible hearsay. Fed. R. Evid. 801(c), 802.

-2-  Case No. 4:22-md-03047-YGR-PHK
DEFENDANTS' MOTION IN LIMINE NO. 3 TO EXCLUDE LAY WITNESS TESTIMONY REGARDING ALLEGED STUDENT "ADDICTION" OR CAUSATION OF MENTAL HEALTH HARMS

addicted to smoking); *Sowers v. R.J. Reynolds Tobacco Co.*, 2015 WL 12839775, at *4 (M.D. Fla. Jan. 23, 2015) (excluding lay witness opinions that the decedent was addicted to cigarettes), *aff'd*, 975 F.3d 1112 (11th Cir. 2020). Indeed, the fact witnesses admitted that their testimony about student addiction is not based on actual knowledge about the students' mental states or perceptions and is therefore nothing more than rank speculation and inadmissible opinion. *See, e.g.*, Ex. 1, P. Watts 30(b)(6) Dep. (Apr. 22, 2025) at 26:9–24 ("Q. . . . You talk to the students about being addicted to social media? A. No. Q. Never had a conversation with them about being addicted? A. No. Q. Okay. So when you say in your view that they are addicted, it's based on, I guess, your observation that people are using their phones a lot? A. Yes. And it's—it would be nice to see them put their phones, the—the—put them down. Put them down more.").[3]

This testimony also violates Rule 701 because whether an individual student is, or groups of students are, "addicted" to social media is not the proper subject of a lay opinion. Rather, diagnosing "addiction" or "compulsive" use requires scientific, technical, or other specialized knowledge that the Breathitt fact witnesses do not have. *See Frisone v. United States*, 270 F.2d 401, 403 (9th Cir. 1959) ("[T]estimony as to the existence or treatment of a mental illness serious enough to cause permanent memory impairment falls clearly outside the area of common knowledge and within the area where expert testimony is required."). As one of Breathitt's general causation experts, Dr. Anna Lembke, acknowledges, there are specific diagnostic criteria that must be met to diagnose someone with addiction. In particular, "[y]ou need two of 11 of the DSM criteria to meet threshold for diagnosing addiction according to the DSM." Ex. 7, Lembke Dep. (Aug. 27, 2025) at 254:8–10. And according to Dr. Lembke, within the clinical setting, before a professional diagnoses a person with social media addiction, the "standard is to meet patients and to do a clinical interview."

---

[3] *See also* Ex. 2, H. Watts 30(b)(6) Dep. (Mar. 12, 2025) at 36:2–5 ("Q. What's your basis for that claim [that kids are addicted to their cellphones]? Are you a doctor? A. I'm not a doctor, no, but I'm an educator. I'm in classrooms. I mean."); Ex. 3, D. Noble 30(b)(6) Dep. (Mar. 11, 2025) at 76:4–14 ("Q. Sorry, Ms. Noble, you said the—the kids are addicted to TikTok. I just want to ask if—you don't have experience or training in addiction disorder, right? A. I do not. Q. Okay. You don't have any data or studies you can point me to support that testimony, it's just your impression, is that right. A. Correct.").

*Id.* at 285:4–20. This process is rigorous: professionals "usually do a lifetime chronological assessment of their behaviors, looking for the first signs and symptoms of psychiatric symptoms and how they progressed or changed over time in response to interventions or social stressors or what have you. We will often also get collateral information from family members and such." *Id.* at 285:23–286:7.

      The Breathitt fact witnesses have not been disclosed as experts; they disclaimed any specialized knowledge that would enable them to diagnose students with addiction; and none has ever diagnosed anyone with any mental health condition, much less addiction or compulsive use. *See* Ex. 4, Hall Dep. (Apr. 23, 2025) at 93:3–13 (admitting that he is not an expert on addiction, has no medical background on addiction, and has not studied addiction); Ex. 3, D. Noble 30(b)(6) Dep. (Mar. 11, 2025) at 76:5–9 ("[Y]ou don't have any expertise or training in addiction disorder, right? A. I do not."); Ex. 2, H. Watts 30(b)(6) Dep. (Mar. 12, 2025) at 36:22–37:3, 42:19–22 ("[Y]ou testified earlier that you don't have any basis to diagnose addiction, right? A. I don't, no."); Ex. 12, H. Watts Dep. (Mar. 12, 2025) at 37:13–17 ("Q. You've not done any work to diagnose any of your students to determine the causes of any mental health issues that they may have, have you? A. No."); Ex. 1, P. Watts 30(b)(6) Dep. (Apr. 22, 2025) at 24:22–25:6 (no training in addiction, not a psychologist, and not a psychiatrist); Ex. 8, Howard Dep. (Mar. 10, 2025) at 27:10–19 ("Q. . . . You don't have the medical training to diagnose students, right? A. I do not."). Further, the Breathitt fact witnesses have not conducted the analysis necessary to diagnose those conditions in a person. *See, e.g.*, Ex. 1, P. Watts 30(b)(6) Dep. (Apr. 22, 2025) at 26:9–17 ("Q. . . . You talk to the students about being addicted to social media? A. No. Q. Never had a conversation with them about being addicted? A. No."); *see also* Ex. 8, Howard Dep. (Mar. 10, 2025) at 27:17–22 ("Q. All right. You don't have the medical training to diagnose students, right? A. I do not. Q. So you haven't then diagnosed any of your students. A. No."). Because the witnesses have not conducted this analysis with regard to even one student, they certainly cannot make sweeping conclusions about students in the aggregate.

      Dr. Lembke has also opined that "compulsion" is a clinical criterion used in assessing addiction or "use disorder," Ex. 9, A. Lembke Rep. at 5–6, which falls squarely within the gamut of

scientific or technical knowledge only permitted by disclosed experts under Rules 701 and 702. Dr. Lembke has also testified that "compulsion" means "a lot of mental real estate taken up with *thinking about using the drug* and a certain level of automaticity around using the drug, using it even when an individual didn't *intend to use it*." Ex. 10, Lembke Dep. (June 18, 2025) at 209:19–23 (emphases added); *id.* at 210:18–20 ("Again, compulsion has to do with a lot of *mental preoccupation* with using the drug." (emphasis added)). Breathitt fact witnesses cannot perceive or observe a student's thoughts or intentions around his or her use of social media—and have not interviewed students regarding their use, as a diagnosing expert would—and, in any event, do not have the requisite expertise to diagnose compulsive use. A student may check his or her phone, and do so repeatedly, for a variety of reasons, including that he or she is waiting for a specific text or message from a friend or relative, checking to see if a new piece of content was released, or simply averting boredom. Any lay witness testimony suggesting that these kinds of behaviors are "compulsive" is impermissible under Rules 701 and 702 and should be excluded. *See Sowers*, 2015 WL 12839775, at *7 (precluding testimony "opin[ing] on [the] state of mind of another person" because it is "speculative and not rationally based on [the witness's] own perceptions").

### ii. The Court Should Exclude Breathitt Fact Witnesses' Testimony Opining That Social Media or Defendants' Platforms Caused Mental Health Conditions.

For the same reasons, the Court should not permit Breathitt fact witnesses to testify that social media generally or the actionable features of Defendants' platforms specifically were the cause of any student(s)' mental health condition. "It is well settled that only expert testimony will be allowed on technical questions of causation." *Frisone v. United States*, 270 F.2d 401, 403 (9th Cir. 1959). This is because a witness's perception does not encompass "medical diagnosis" or "medical causation." *Vincent v. Reyes*, 2021 WL 4262289, at *1 (N.D. Cal. Sep. 20, 2021) (citation omitted). Consistent with these principles, courts have routinely excluded lay opinion testimony regarding medical causation. *See id.* at *1 ("Plaintiff may not testify on the medical cause of his injuries, since he is not an expert rendering medical diagnosis."); *Lillie v. ManTech Int'l Corp.*, 2018 WL 6323076, at *5 (C.D. Cal. Dec. 3, 2018) (granting motion to exclude lay witness medical opinions as to the causation of plaintiff's alleged emotional distress and diagnoses); *Sowers*, 2015

WL 12839775, at *5 ("[O]pinions regarding medical causation require scientific and specialized knowledge, and thus are not admissible when offered by lay witnesses."). *See also United States v. Castro–Juarez*, 654 F. App'x 364, 366 (9th Cir. 2016) (explaining that a lay person "is not qualified to attest that her past trauma caused her memory loss").

Despite expressly disclaiming any ability to identify the cause of a student's mental health issues,[4] one of Breathitt's fact witnesses nevertheless opined that social media or Defendants' platforms caused particular mental health conditions. *See, e.g.*, Ex. 6, Howard Decl. ¶ 10 (describing "numerous negative effects of social media on the students I and other counselors in our school district serve" including "excessive use of social media which impacts student's mental health, emotional wellbeing" and "mental health deterioration caused by students' use of social media"); *id.* at ¶ 11 ("[T]he impacts of social media on students' wellbeing are unique to social media use."); Ex. 11, Howard 30(b)(6) Dep. (Mar. 10, 2025) at 105:17–106:4 (testifying that social media "leads to [students] having anxiety").

Accordingly, the Court should exclude lay witness testimony opining that student usage of social media—or Defendants' actionable features—are a cause of any student mental health condition and should prohibit Breathitt from eliciting opinions from fact witnesses to that effect at trial.

**B.  Breathitt Witnesses' Lay Opinion Testimony Is Inadmissible Under FRE 403.**

The Court should also exclude lay witness statements about students' "addiction" to or "compulsive" use of social media and about the cause of any mental health harms for the independent reason that any "probative value is substantially outweighed by a danger of" unfair prejudice or misleading the jury. Fed. R. Evid. 403.

---

[4] *See, e.g.*, Ex. 8, Howard Dep. (Mar. 10, 2025) at 27:17–28:8 ("Q. All right. You don't have the medical training to diagnose students, right? A. I do not. Q. So you haven't then diagnosed any of your students. A. No. Q. No. And same would be true for the other guidance counselors. A. Correct. Q. So you're not in a position to say what caused any student's mental health issues. A. Unless they tell me. Q. They would tell you what they believe. A. What they believe. Q. Right. But they can't do diagnoses either, right? A. Correct.").

First, such testimony is unfairly prejudicial because it would constitute one-sided, speculative testimony that Defendants have no ability to refute with testimony from anyone with personal knowledge on the issue (i.e., the students themselves). Indeed, despite Defendants seeking discovery into individual Breathitt students or groups of students, Plaintiffs declined to produce individual student records. *See* ECF Dkt. No. 1951-12 ("Unlike the personal injury claims, the School Districts' claims do not involve harm to a particular individual, but instead concern harm sustained by the School Districts and thus in the aggregate of individual or specific occurrences. As such, the production of aggregate data, instead of individual student records, is appropriate. . . ."). Because Defendants have not had the ability to depose any students or have any expert evaluate the students,[5] it would be unduly prejudicial to Defendants if this evidence were admitted. The jury will be asked to decide if the actionable features of Defendants' platforms can cause clinical addiction, whether Defendants knew that and failed to warn about it, whether Breathitt students suffered mental health harms as a result of their use of the actionable features of Defendants' platforms, and whether that use caused Breathitt a compensable harm. Allowing Breathitt witnesses to provide one-sided testimony that students are addicted or that students' mental health conditions are caused by Defendants' platforms would give Breathitt an unfair advantage on those disputed issues of fact because of Defendants' inability to cross-examine the witnesses about the truth of those statements.

Second, Breathitt witnesses should not be allowed to cloak their subjective opinions in medical terminology when the witnesses admitted that they are not using the term "addiction" in its clinical sense, but only to convey that students use social media frequently. *See, e.g.*, Ex. 1, P. Watts 30(b)(6) Dep. (Apr. 22, 2025) at 25:7–11 ("Q. When you say 'addiction,' do you know the DSM definition of addiction or do you just mean that colloquially? A. I just mean that—that kids are on social media a lot.").[6] Allowing lay witnesses to use the rhetoric of "addiction" when they lack any

---

[5] Defendants could therefore not effectively cross-examine the witnesses on this point.

[6] *See also* Ex. 3, D. Noble 30(b)(6) Dep. (Mar. 11, 2025) at 76:5–14 ("Q. Sorry, Ms. Noble, you said the—the kids are addicted to TikTok. I just want to ask if—you don't have experience or

scientific or factual basis for doing so would serve only to inflame and mislead the jury in a case where they will be asked to determine whether Defendants' platforms are designed to be addictive and whether students at Breathitt County Public Schools are addicted to Defendants' platforms.[7] Cross-examination cannot cure the prejudice. Clinical addiction goes to the very heart of the disputed issues in this case. Repeated use of that term by multiple witnesses risks embedding in the jurors' minds the conclusion that students are "addicted," and the jury may believe that the Breathitt witnesses have first-hand knowledge of the state of the students' mental health condition before any clarification can meaningfully occur. Similar issues arise with references to "compulsive" behavior, which is often equated in lay persons' minds with "addiction." Any contrary conclusion would eviscerate the prohibition on lay witnesses offering expert testimony, so long as the opposing party could later clarify that the witness lacked expertise or meant the term in some different sense. The Federal Rules of Evidence do not permit such an end-run around Rules 701 and 702.

* * *

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion in Limine.

Dated: March 2, 2026                                         Respectfully submitted,

/s/ *Ashley W. Hardin*

---

training in addiction disorder, right? A. I do not. Q. Okay. You don't have any data or studies you can point me to support that testimony, it's just your impression, is that right. A. Correct.").

[7] If the Court denies this motion and permits Breathitt fact witnesses to testify that students are "addicted" to or "compulsively" use social media or Defendants' platforms, or permit those witnesses to testify that social media use or Defendants' platforms are the cause of any student mental health harms, then for the reasons explained in Defendants' MIL No. 1, filed herewith, Defendants should be able to cross-examine Breathitt's fact witnesses to show that the real cause of any alleged social-media-related harms is the content that students post and see on social media and/or Defendants' protected publishing features without "opening the door" to evidence about the design or implementation of Defendants' protected features, allegedly harmful content on the sites, or Defendants' alleged inadequate content moderation policies or practices.

JOSEPH G. PETROSINELLI, *pro hac vice*
jpetrosinelli@wc.com
ASHLEY W. HARDIN, *pro hac vice*
ahardin@wc.com
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Tel.: (202) 434-5000

*Attorneys For Defendants YouTube, LLC And Google LLC*

/s/ *Ashley Simonsen*
Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones (*pro hac vice*)
Paul W. Schmidt (*pro hac vice*)
Christian J. Pistilli (*pro hac vice*)
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
Email: pajones@cov.com
Email: pschmidt@cov.com
Email: cpistilli@cov.com

*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc. and Instagram, LLC*

/s/ *Jonathan H. Blavin*
JONATHAN H. BLAVIN (State Bar No. 230269)
Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel: (415) 512-4000

DEFENDANTS' MOTION IN LIMINE NO. 3 TO EXCLUDE LAY WITNESS TESTIMONY REGARDING ALLEGED STUDENT "ADDICTION" OR CAUSATION OF MENTAL HEALTH HARMS

|   |   |
|---|---|
| 1 |   |
| 2 | E. MARTIN ESTRADA (State Bar No. 223802) |
| 3 | Martin.Estrada@mto.com |
|   | L. ASHLEY AULL (State Bar No. 257020) |
| 4 | Ashley.Aull@mto.com |
| 5 | VICTORIA A. DEGTYAREVA (State Bar No. 284199) |
|   | Victoria.Degtyareva@mto.com |
| 6 | MUNGER, TOLLES & OLSON LLP |
| 7 | 350 South Grand Avenue, 50th Floor |
|   | Los Angeles, CA 90071 |
| 8 | Tel.: (213) 683-9100 |
|   | Facsimile: (213) 687-3702 |
| 9 |   |
| 10 | ALLISON BROWN, *pro hac vice* |
|   | alli.brown@kirkland.com |
| 11 | KIRKLAND & ELLIS LLP |
| 12 | 2005 Market Street, Suite 1000 |
|   | Philadelphia, PA 19103 |
| 13 | Tel.: (215) 268-5000 |
| 14 | JESSICA DAVIDSON, *pro hac vice* |
|   | jessica.davidson@kirkland.com |
| 15 | JOHN J. NOLAN, *pro hac vice* |
|   | jack.nolan@kirkland.com |
| 16 | KIRKLAND & ELLIS LLP |
| 17 | 601 Lexington Avenue |
|   | New York, NY 10022 |
| 18 | Tel.: (212) 446-4800 |
| 19 |   |
| 20 | *Attorneys for Defendant Snap Inc.* |
| 21 |   |
| 22 | */s/ Geoffrey M. Drake* |
|   | GEOFFREY M. DRAKE, *pro hac vice* |
| 23 | gdrake@kslaw.com |
|   | TACARA D. HARRIS, pro hac vice |
| 24 | tharris@kslaw.com |
| 25 | KING & SPALDING LLP |
|   | 1180 Peachtree Street, NE, Suite 1600 |
| 26 | Atlanta, GA 30309 |
|   | Telephone: (404) 572-4600 |
| 27 | Facsimile: (404) 572-5100 |
| 28 | DAVID P. MATTERN, *pro hac vice* |

dmattern@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, D.C. 20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737

BAILEY J. LANGNER (SBN 307753)
blangner@kslaw.com
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

*/s/ Daniel M. Petrocelli*
DANIEL M. PETROCELLI (SB #97802)
dpetrocelli@omm.com
SABRINA H. STRONG (SB #200292)
sstrong@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 553-6700

STEPHEN D. BRODY (*pro hac vice*)
sbrody@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006
Telephone: (202) 383-5300

*Attorneys for Defendants TikTok Inc., ByteDance Inc., ByteDance Ltd., TikTok Ltd., and TikTok, LLC*

**ATTESTATION**

I, Ashley W. Hardin, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: March 2, 2026                    By: */s/ Ashley W. Hardin*
                                            Ashley W. Hardin