# EXHIBIT 2

CONFIDENTIAL

Page 1

```
 1            UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF CALIFORNIA
 2
              Case No. 4:22-md-03047-YGR
 3                  MDL No. 3047
 4
 5    IN RE:  SOCIAL MEDIA ADOLESCENT
      ADDICTION/PERSONAL INJURY
 6    PRODUCTS LIABILITY LITIGATION,
 7    THIS DOCUMENT RELATES TO:
 8    Breathitt County School District,
      By and Through The Breathitt
 9    Board of Education
      v. Meta Platforms, Inc., et al.
10
      Member Case No.:  4:23-cv-01804
11   _____
12         DEPOSITION OF:  HANNAH WATTS 30(b)(6)
         CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
13   _____
14    The video deposition of Hannah Watts was taken
15    before Janine N. Leroux, Stenographic Court Reporter
16    and Notary Public in and for the State of Kentucky,
17    at the Breathitt County Schools Central Office
18    located at 420 Court Street, Jackson, Kentucky
19    commencing on March 12th, 2025, at the approximate
20    hour of 9:06 a.m.  This deposition was taken in
21    accordance with Federal Rules of Civil Procedure 26
22    and 30.
23
24
25
```

CONFIDENTIAL

Page 2

```
 1    APPEARANCES:
 2
      SARAH EMERY, ESQUIRE
 3    HENDY JOHNSON VAUGHN
      2380 Grandview Drive
 4    Ft. Mitchell, Kentucky 41017
      rjohnson@justicestartshere.com
 5    semery@justicestartshere.com
 6    APPEARING ON BEHALF OF THE PLAINTIFFS
 7
      CHRISTIAN J. PISTILLI, ESQUIRE
 8    COVINGTON & BURLING LLP
      One City Center
 9    850 Tenth Street, NW
      Washington DC 20001-4956
10    cpistilli@cov.com
11    and
12    MATTHEW E. DePAZ, ESQUIRE
      KATELYN A. ROMEO, ESQUIRE
13    SHOOK, HARDY & BACON, L.L.P
      2555 Grand Boulevard
14    Kansas City, Missouri 64108
      mdepaz@shb.com
15    kromeo@shb.com
16    APPEARING ON BEHALF OF THE META PLATFORMS, et al.
17
      FARAZ SHAHIDPOUR, ESQUIRE (Via Zoom)
18    KIRKLAND & ELLIS, LLP
      333 West Wolf Point Plaza
19    Chicago, Illinois 60654
      faraz.shahidpour@kirkland.com
20
      REMOTE APPEARANCE ON BEHALF OF DEFENDANTS,
21    SNAP INC.
22
23
24
25
```

```
 1     APPEARANCES CONTINUED:
 2
       TaCARA HARRIS, ESQUIRE (Via Zoom)
 3     KING & SPALDING LLP
       500 West Second Street
 4     Austin, Texas 78701
       pprice@kslaw.com
 5     tharris@kslaw.com
 6
       APPEARING ON BEHALF OF THE DEFENDANTS,
 7     TIKTOK, INC., BYTEDANCE LTD. and TIKTOK LTD.,
       TIKTOK, LLC
 8
 9     DANIEL WHITELEY, ESQUIRE (Via Zoom)
       WILLIAMS & CONNOLLY LLP
10     680 Maine Avenue, SW
       Washington, DC 20024
11     akeyes@wc.com
       dwhiteley@wc.com
12
       APPEARING ON BEHALF OF THE DEFENDANTS,
13     YOUTUBE LLC and GOOGLE LLC
14
       ALSO APPEARING:
15
       JEFF SINDIONG, VIDEOGRAPHER
16     RAY MOORE, EXHIBIT TECHNICIAN
17
18
19
20
21
22
23
24
25
```

```
                                                      Page 35
 1          Q.    And I think you agreed with this
 2    before, but I just want to make sure the record is
 3    clear.  You agree that all sorts of violation
 4    types can potentially go unreported to Infinite
 5    Campus?
 6          A.    It can, yes.
 7                MR. PISTILLI:  Let's -- let's take a
 8          look at fighting.
 9                THE EXHIBIT TECH:  All three?
10                MR. PISTILLI:  Sure.  Let's combine the
11          three fighting categories.
12    BY MR. PISTILLI:
13          Q.    There were 240 instances of fighting
14    reported to Infinite Campus during the 2019 to
15    2024 time period, right?
16          A.    Yes.
17                MR. PISTILLI:  Let's take a look at
18          disruptive behavior.
19          Q.    You think every instance -- before we
20    look at it, do you think every instance of
21    disruptive behavior gets reported to Infinite
22    Campus?
23          A.    Probably more so than cellphone misuse.
24          Q.    What's your basis for that?
25          A.    Just as I said, ==kids are addicted to==
```

```
                                                      Page 36
 1     their cellphones.  I mean, they...
 2          Q.    What's your basis for that claim?  Are
 3     you a doctor?
 4          A.    I'm not a doctor, no, but I'm an
 5     educator.  I'm in classrooms.  I mean.
 6          Q.    When was the last time you were in a
 7     classroom?
 8          A.    Last week.
 9          Q.    When was the last time you were a
10     classroom teacher?
11          A.    2018-19 school year.
12          Q.    Okay.  And in your current role, how
13     much time do you spend teaching students?
14          A.    I don't -- I don't spend time teaching
15     students.  I help administrators deal with
16     students' behaviors.
17          Q.    How much time -- what percentage of
18     your time do you spend in classrooms currently?
19          A.    Probably more than you would think.  I
20     don't have -- I can't put the percentage on that,
21     per se.
22          Q.    And you're not a mental health
23     professional, are you?  You can't diagnose
24     students?
25          A.    No.
```

```
                                               Page 37
 1        Q.    No.   You don't have any advanced
 2   degrees that would allow you to do that?
 3        A.    No.
 4        Q.    You don't have any experience that
 5   would allow to you make a diagnoses?
 6        A.    Un-huh (negative).
 7              MR. PISTILLI:  Let's take a look at the
 8        disruptive behavior.
 9        Q.    You see a hundred and --
10              MR. PISTILLI:  Oh, no.  I'm sorry,
11        disruptive behavior, not disrespectful.  I
12        apologize.
13              THE EXHIBIT TECH:  Sorry about that.
14        Q.    Would you agree that 202 incidents of
15   disruptive behavior were reported to the Infinite
16   Campus system during the 2019 to 2024 time period?
17        A.    Yes.
18              MR. PISTILLI:  Let's take a look at
19        threats.  We -- we can combine the threat
20        categories.
21        Q.    So terroristic bomb, terroristic threat
22   and threatening another student.
23              You agree that there were 74 incidents
24   of those types of violations during that relevant
25   time period?
```

```
                                                      Page 41

 1              MR. PISTILLI:  Sure.
 2      BY MR. PISTILLI:
 3         Q.    I just want to understand the data.  I
 4      just want to make sure we're on the same page.
 5              This shows no violation to the
 6      cellphone policy, personal electronic device
 7      policy or acceptable use policy, right?
 8         A.    It does not because they're preschool
 9      through second graders.
10                    (Exhibit 6 was marked)
11      BY MR. PISTILLI:
12         Q.    Okay.  Thank you.  Let's take a look at
13      Tab 7.  Do you recognize this data?
14         A.    Yes.
15         Q.    And what is it?
16         A.    It's behavior, Infinite Campus extract
17      for Highland-Turner Elementary.
18         Q.    And then it's in the same format as the
19      other data we've been looking at, right?
20         A.    Correct.
21         Q.    And what -- what grade period does this
22      cover?
23         A.    It is preschool through 6th grade.
24         Q.    Okay.  And these preschool through
25      6th graders, some of the events listed here
```

```
                                                          Page 42
 1      include:  Terroristic bomb, two terroristic
 2      threats, right?
 3              A.    Correct.
 4              Q.    Student to student fighting?
 5              A.    Correct.
 6              Q.    Abuse of a teacher?
 7              A.    Correct.
 8              Q.    Alcohol use and alcohol possession?
 9              A.    Correct.
10              Q.    Disruptive behavior?
11              A.    Correct.
12              Q.    Disrespectful behavior?
13              A.    Correct.
14              Q.    But no violations of any technology
15      policies, right?
16              A.    No.  Not documented in Infinite Campus.
17      Again, they are not addicted to cellphones that
18      are linked to social media at this age.  It's...
19              Q.    Ma'am, I -- you testified earlier that
20      you don't have any basis to diagnose addiction,
21      right?
22              A.    I don't, no.
23              Q.    Okay.  Thank you.
24                    MR. PISTILLI:  Let's take a look at Tab
25      8.
```