[*Submitting Counsel on Signature Page*]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR (PHK) |
| This Document Relates To:<br><br>*Breathitt County Board of Education v. Meta Platforms, Inc., et al.*<br>Case No.: 4:23-cv-01804 | **PLAINTIFF'S MOTION IN LIMINE #4, TO EXCLUDE ADVOCACY OPINIONS OF DEFENDANTS' EXPERTS DR. ETHAN HUTT AND DR. KEITH HAMPTON**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

**Table of Contents**

I.   INTRODUCTION ................................................................................................1

II.  BACKGROUND ..................................................................................................2

III. LEGAL STANDARD............................................................................................4

IV.  ARGUMENT.........................................................................................................4

   A. Drs. Hutt and Hampton Offer Impermissible Advocacy Pieces. .......................4

   B. Dr. Hutt's Opinions 1 and 2 Are Impermissible Legal Conclusions that Contradict this Court's Rulings and Invite Jury Nullification ...........................6

   C. Dr. Hutt's *Ipse Dixit* Views Are Untethered to the Facts. ...............................7

   D. Dr. Hutt's Testimony Will Not Assist the Jury in Deciding Any Dispute. .......8

V.   CONCLUSION....................................................................................................10

## I. INTRODUCTION

This Court has made clear that experts may not "opine on issues of law or ultimate fact," may not "advance a narrative rather than offer expertise," and may not "serve as advocates." ECF No. 2750 at 17. It warned that experts who "pontificate[]" about what parties "should be doing" are making argument that will be "stricken." Feb. 11 Tr. at 65:1–11. That is precisely what Defendants' experts Dr. Ethan Hutt and Dr. Keith Hampton do. Both eschew any expert analysis of the facts (Hutt)[1] or research (Hampton)[2] and are offered as mouthpieces on what schools and society should do and believe about social media. Their opinions doing so should be excluded.[3]

Dr. Hutt (an historian) would tell the jury that, by suing Defendants, Breathitt ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Decl. Ex. C ¶ 175. That is not historical analysis. It is pure *ipse dixit* policy prescription that contradicts this Court's rulings on what the law actually is, inviting jury nullification. It should be precluded under FRE 702 and 403.

Dr. Hampton (a sociologist) opines that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Decl. Ex. B. at 167:6-17; Decl. Ex. D ¶¶ 20-104. Judge Kuhl correctly found these opinions of Dr. Hampton to be "admittedly extreme," and that he had "failed to employ scientifically reliable methodologies" to reach them. Kuhl Op. (ECF No. 2324-4) at 4. Judge Kuhl therefore excluded these opinions. Breathitt respectfully submits the Court should do the same here.

---

[1] When asked whether any facts in evidence could change his opinions, Dr. Hutt testified: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Declaration of Lexi Hazam ("Decl."), Ex. A (8/18/25 Hutt Dep.) at 142:5–8.

[2] Dr. Hampton brushed aside studies and meta-analyses that contradict his extreme view, testifying he ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and he ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ … ." Decl. Ex. B (7/2/25 Hampton Dep.) at 306:8-17, 405:5-18.

[3] Breathitt challenges Dr. Hutt's Opinions 1 and 2 (Decl. Ex C (7/11/25 Hutt Rpt.) ¶¶ 2–4, 16(1)–(2), 17–134, 173–175) and do not seek to exclude Opinion 3, which addresses alternative explanations for trends in student outcomes and is proper rebuttal testimony. Breathitt challenges Dr. Hampton's Opinion 1 regarding moral panic (Decl. Ex. D, (7/9/25 Hampton Rpt.) ¶¶ 10A, 13-14, 20-104) and his opinion that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Ex. B at 167:6-17).

1

II. **BACKGROUND**

**Hutt:** Dr. Hutt is a historian. His field is the history of American education policy. He is not a psychologist, a psychiatrist, an economist, a technology researcher, or a school administrator.

In his Opinion 1 (Decl. Ex. C. ¶¶ 2, 16(1), 17–68), Dr. Hutt ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* ¶ 2). Thus, Dr. Hutt concludes that: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Dr. Hutt's Opinion 2 (Decl. Ex. C. ¶¶ 3–4, 16(2), 70–135) focuses on what he refers to as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dr. Hutt's conclusion: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ But, other than dismissing Dr. Hoover's plan as ▮▮▮▮▮▮▮▮▮▮ Dr. Hutt offers no concrete analysis of the effectiveness of any portion of the plan. Instead, he makes an advocate's plea for jury nullification: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*id.* ¶¶ 134, 175).

Dr. Hutt ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Decl. Ex. A at 104:6–106:10; 141:1–19), nor did he ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*id.* 94:5–96:2). When asked whether

2

3446859.2

1    any facts could change his opinions, he testified: ▮▮▮▮ *Id*. 142:5–8.

2    **Hampton:** Dr. Hampton is a sociologist focusing on media and information. Decl. Ex. B at 173:23–
3    174:5. He opines that ▮▮▮▮. *Id*.
4    167:6-17. One opinion he offers to support this conclusion is that ▮▮▮▮
5    ▮▮▮▮
6    ▮▮▮▮. Decl. Ex. D. ¶¶ 20-104. Dr. Hampton defines moral panics as
7    ▮▮▮▮
8    ▮▮▮▮ *Id*. ¶ 13. Dr. Hampton claims t▮▮▮▮
9    ▮▮▮▮ *Id*. ¶ 38. Based on this sociological history, he seeks to testify that ▮▮▮▮
10    ▮▮▮▮. *Id*.
11    In developing this opinion, Dr. Hampton ▮▮▮▮
12    ▮▮ (Decl. Ex. B at 262:24–264:1), and ▮▮▮▮
13    ▮▮▮▮
14    ▮▮▮▮ … ." *Id*. 306:8-17, 405:5-18. ▮▮
15    ▮▮▮▮. *Id*. 305:15–21. ▮▮▮▮
16    ▮▮▮▮
17    ▮▮▮▮
18    ▮▮▮▮
19    ▮▮▮▮ *Id*. 234:25–
20    235:10.

21    When Dr. Hampton offered the exact same opinions in the JCCP, Judge Kuhl found that "Plaintiffs
22    are correct (and Defendants do not dispute) that Hampton has failed to employ scientifically reliable
23    methodologies in reaching such a conclusion. Hampton cannot exclude evidence from his review and
24    claim that there is no such evidence." ECF No. 2324-4 at 4. She ruled that Hampton may not testify at
25    trial that "there is no evidence that social media use causes mental health harm." *Id*. Judge Kuhl similarly
26    found that Dr. Hampton's "moral panic" opinion was pure *ipse dixit* andnot based on any reliable method,
27    concluding "it does not appear that Hampton's analysis takes any account of the possibility that some
28

'moral panics' might in fact have identified real harms caused by a new technology. Hampton's analysis thus assumes (without providing a basis for that assumption) that a society's negative reactions to a new technology suggest that the technology does not cause harm to individuals in that society." *Id.* Despite Judge Kuhl's ruling excluding Dr. Hampton's extreme and methodless opinions, Defendants offer the identical opinions here.

### III. LEGAL STANDARD

Expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). "An expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law. Similarly, instructing the jury as to the applicable law is the distinct and exclusive province of the court." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008). Testimony that "merely tells the jury what result to reach is not sufficiently helpful to the trier of fact to be admissible." *Id.* at 1059–60 (quoting *Kostelecky v. NL Acme Tool/NL Indus., Inc.*, 837 F.2d 828, 830 (8th Cir.1988)). An expert may not draw legal conclusions or instruct the jury on how to decide the case. *Aguilar v. Int'l Longshoremen's Union Local #10*, 966 F.2d 443, 447 (9th Cir. 1992) (excluding testimony "focused on matters of law for the court's determination" as "utterly unhelpful" to the jury). And an expert's methodology may not be reliable "if an expert fail[s] to address and exclude alternative explanations for the data on which he bases his findings or reject[s] studies reporting contrary empirical findings." *Pooshs v. Phillip Morris USA, Inc.*, 287 F.R.D. 543, 546 (N.D. Cal. 2012) (cleaned up). Under Rule 403, otherwise relevant evidence may be excluded when its probative value is substantially outweighed by the danger of misleading the jury or confusing the issues. Fed. R. Evid. 403. Dr. Hutt's challenged opinions fail on both counts.

### IV. ARGUMENT.

#### A. Drs. Hutt and Hampton Offer Impermissible Advocacy Pieces.

At the February 11 hearing, the Court made it clear that an expert who editorializes about the perceived unfairness of the litigation or opines on what the parties should or should not be doing is making argument, not offering expertise, and that such testimony will not be permitted at trial. (Feb. 11 Tr. at 65:1–11). The Court correctly identified the line between helpful expert testimony and impermissible

1  advocacy. Dr. Hutt's Opinions 1 and 2 and Dr. Hampton's moral panic and "no evidence" opinions fall
2  squarely in the "impermissible advocacy" camp.
3       **Hutt:** Without having examined <u>any</u> of the facts in the case and with no expertise in social media
4  or its impacts on student mental health, Dr. Hutt blithely dismisses schools' responses to social media as
5  ███████████████████████████████████ Decl. Ex. C. ¶ 133. He warns about the ████
6  ████████████████████████████████████████████████████████ *Id*. ¶ 80. ████
7  ████████████████████████████████████████████████████████████████████████
8  ████████████████████████████████████████████████████████████████████████
9  ███████████████████████████████████████████████████████████████████ *Id*.
10 ¶ 77. This is not history. It is advocacy. It belongs in a legal brief, not an expert report.
11      Dr. Hutt's polemic on what schools should be able to do to redress Defendants' impact on students
12 should be excluded as impermissible *ipse dixit* advocacy that will not help the jury and instead seeks to
13 usurp the Court's role in saying what the law is. This Court has already made clear that experts may not
14 "opine on issues of law or ultimate fact," may not "advance a narrative rather than offer expertise," and
15 may not "serve as advocates." ECF No. 2750 at 17. It warned that experts who "pontificate[]" about what
16 parties "should be doing" are making argument that will be "stricken." Feb. 11 Tr. at 65:1–11. That is
17 precisely what Opinions 1 and 2 do. Both should be stricken.
18      **Hampton:** Dr. Hampton offers the opinion that ████████████████████████████
19 ██████████████████████████████. Ex. B. at 167:6-17. As Judge Kuhl concluded, this opinion
20 plainly crosses the line from permissible expert opinion to impermissible advocacy, because he offers an
21 "admittedly extreme conclusion" and "has failed to employ scientifically reliable methodologies" to reach
22 it. ECF No. 2324-4 at 4. His "methodology" in reaching this conclusion was simply to ignore all evidence
23 contradicting his predetermined opinion. Dr. Hampton discounted scores of high-quality studies and meta-
24 analyses published in respected, peer-reviewed journals about social media use and adolescent mental
25 health. Although it is not the Court's role to substitute its judgment for the expert's judgment, it <u>is</u> the
26 Court's role to ensure that the expert has used a sound methodology for evaluating the available evidence.

28                                    5

1  Dr. Hampton's failure to do so is particularly problematic given the strident nature of his opinion claiming
2  there is no evidence of a link between social media and adolescent mental health issues.
3      Dr. Hampton's "moral panic" opinion is likewise devoid of any reliable expert methodology. Decl.
4  Ex. D. ¶¶ 10A, 13-14, 20-104. Dr. Hampton compares wildly different forms of media and communication
5  to support his view that <u>all</u> concerns about media use are overblown. Traveling miles afield from the issues
6  in this litigation, Dr. Hampton concludes that ███
7  ███
8  ███s. *See id*. ¶¶ 20-104. Moreover, Dr. Hampton simply ███
9  ███
10 ███
11 *Id.*
12     As Judge Kuhl found, Dr. Hampton's diatribe about media "panics" rests on no actual
13 methodology at all—and instead relies on wholly circular "logic" that "assumes (without providing a basis
14 for that assumption) that a society's negative reactions to a new technology suggest that the technology
15 does not cause harm to individuals in that society." ECF No. 2324-4 at 4. This is the impenetrable, self-
16 fulfilling logic of a conspiracy theory, not admissible expert opinion. None of it should reach a jury.

17     **B.    Dr. Hutt's Opinions 1 and 2 Are Impermissible Legal Conclusions that Contradict this Court's Rulings and Invite Jury Nullification**
18
19     Dr. Hutt sums up his Opinions 1 and 2 with a stark assertion: ███
20 ███
21 ███ Decl. Ex. C. ¶ 175. That is not a relevant historical observation. It is the
22 language of prescription. Dr. Hutt is telling the jury that Breathitt's funding should be limited to
23 "traditional," non-litigation sources of funding. That is the kind of testimony the Ninth Circuit has held to
24 be inadmissible. *Nationwide*, 523 F.3d at 1059–60; *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 679–80
25 (N.D. Cal. 2021) (testimony that "instruct the jury regarding how it should decide" is inadmissible).
26     Paragraph 175 is not an isolated sentence. It is the conclusion toward which every paragraph in
27 Opinions 1 and 2 builds. Dr. Hutt opens his report opens with the claim that Dr. Hoover's proposed
28

1  responses to social media are ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Paragraph
2  80 warns against ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ And Paragraph 134 supplies
3  the punchline, asserting "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
4  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"

5  Courts routinely exclude such improper expert advocacy. In *Nationwide*, the Ninth Circuit drew
6  the proper line: the expert was permitted to explain the factual reasons supporting his view, but was barred
7  from opining on legal conclusions that would have done "nothing more than tell the jury what result it
8  should reach." 523 F.3d at 1059-60. In *Zeiger*, the court excluded expert testimony that "instructed the
9  jury regarding how it should decide" a liability issue as crossing the line from factual analysis to
10 impermissible legal instruction. 526 F. Supp. 3d at 679-80. In *Dold v. Snohomish County*, the court
11 similarly restricted expert testimony, barring opinions that amounted to telling the jury what result to
12 reach. 2023 WL 123335, at *3 (W.D. Wash. Jan. 5, 2023). Dr. Hutt's report does not just blur the line
13 between factual explanation and legal conclusion; it exists entirely on the wrong side.

14 Dr. Hutt's opinions also contradict this Court's rulings. Defendants twice lost the legal question
15 of whether Breathitt could bring these claims and seek damages and abatement, when the Court denied
16 their motion to dismiss (ECF Nos. 1267, 1332) and motion for summary judgment. ECF 2728. Yet when
17 Dr. Hutt tells the jury that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
19 ▮▮▮▮▮▮▮▮▮▮▮▮ (*id.* ¶ 175), he is asking the jury to reach the very legal conclusion this Court has
20 already denied: that Breathitt should not be allowed to ask Defendants to pay for the harms they are
21 causing. Dr. Hutt's Opinions 1 and 2 should be precluded on this basis. *See In re Delta/AirTran Baggage*
22 *Fee Antitrust Litigation*, 245 F. Supp. 3d 1343, 1362-63 (N.D. Ga. 2017) (precluding testimony that
23 "potentially encourages jury nullification").

24  C.  **Dr. Hutt's *Ipse Dixit* Views Are Untethered to the Facts.**
25 Expert testimony must be "sufficiently tied to the facts of the case that it will aid the jury in
26 resolving a factual dispute." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) (quoting
27 *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985)). This "fit" requirement is distinct from
28

7

general relevance. An expert whose knowledge is valid in the abstract but disconnected from the dispute before the jury has nothing admissible to offer. *Id*. at 591–92 ("'Fit' is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes"). Where the gap between an expert's data and his conclusion is too wide, the opinion must be excluded as "merely the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997).

Here, the gap is not between data (there is none) and opinion. It is between the expert and the case. Dr. Hutt has ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Decl. Ex. A. at 94:5-95:25. Before he was retained, he ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *Id*. 20:1–16. He has not ▇▇▇▇▇▇▇▇▇▇▇. *Id*. 73:18–25. He has not ▇▇▇▇▇▇▇▇▇▇▇▇. *Id*. 72:11–18.

Nor did he make any effort to connect his opinions to this case. As detailed above, he did not ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Decl. Ex. A at 101:6–17. When asked why, he explained: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id*. 141:15–17.

Dr. Hutt was right, although not in the way he intended. Dr. Hutt's opinions do not depend on what happened in this case because they are not about this case. They are about his views on whether lawsuits of this kind should be permitted at all. That is a policy preference, not an opinion drawn from the evidence in the case. Indeed, Dr. Hutt made clear that his preference is one he holds <u>regardless</u> of what the evidence shows. Asked at deposition whether any facts could change his opinions, he answered: "▇▇▇▇▇▇▇▇" Decl. Ex. A. at 142:5–8.

An expert who has decided what he thinks before looking at the facts and says he does not need to know any facts is not applying a methodology. He is restating in an "expert report' a preordained conclusion. That is *ipse dixit*: "nothing more than" the expert's own say-so. *Joiner*, 522 U.S. at 146. It does not "fit" the case in any way and should be excluded.

**D.  Dr. Hutt's Testimony Will Not Assist the Jury in Deciding Any Dispute.**

Expert testimony is admissible only if it "will help the trier of fact to understand evidence or to

8

1   determine a fact in issue." Fed. R. Evid. 702(a). The jury in this case must decide whether Defendants
2   negligently designed their platforms, whether that design caused compulsive student use, whether
3   compulsive use disrupted Breathitt's school operations, and what damages resulted. Dr. Hutt does not
4   opine on any of those questions. He does not address platform design, student behavior, compulsive use,
5   school disruption, or operational costs. Instead, his testimony addresses an entirely different question:
6   whether the remedies Plaintiff seeks are, in his view, generally appropriate. That is not a fact at issue. It
7   is a policy argument. *See United States v. Hoac*, 990 F.2d 1099, 1103 (9th Cir. 1993) (upholding exclusion
8   of testimony that "would not materially assist the jury with respect to the issues at hand").

9       Nor can Defendants try to save Dr. Hutt's opinions by arguing that his opinion that
10  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" is somehow useful to the jury assessing Plaintiff's 15-year
11  strategic plan. Dr. Hutt opines only in the broadest generalities about what allegedly has not been
12  "effective" in dealing with <u>different</u> issues American schools have faced in the past. With the exception
13  of ▓▓▓▓▓▓▓▓▓▓▓▓ Dr. Hutt asserts ineffectiveness without citing any effectiveness research.
14  His ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ His ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
15  ▓▓▓▓▓▓▓▓▓▓▓ His ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
16  ▓▓▓▓▓▓▓▓▓ And the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
17  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ This is argument by illustration, not expert
18  analysis.

19      Notably, Dr. Hutt does not claim that Dr. Hoover's proposed interventions lack empirical support.
20  He does not take issue with her cost projections, her staffing levels, or her implementation timelines. He
21  offers no alternative framework. His categorical claim that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ is a
22  generalization drawn from the supposed experience with home economics and drug abuse decades ago,
23  not from any analysis of what Breathitt has done or what Dr. Hoover has proposed with respect to social
24  media use. Dr. Hutt read Dr. Hoover's report only to label her recommendations "a▓▓▓▓▓▓▓▓▓
25  ▓▓▓▓▓▓▓▓▓▓" (Decl. Ex. C. ¶ 3) and to argue that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*see id.* ¶¶
26  76–77, 175). That is not a damages opinion. It is the same advocacy the Court has already indicated it will
27  exclude.
28

Dr. Hutt's engagement with Dr. Hoover's report confirms the point. Dr. Hutt did not review the testimony or documents Dr. Hoover cited in her report. He did not think they were ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Decl. Ex. A. at 103:13–104:5. To the extent he engages with Dr. Hoover's proposals, he merely argues that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Decl. Ex. C. ¶¶ 70, 76. He is not evaluating the plan. He is opposing the premise of the lawsuit—offering *sub silentio* opinions on the existence of social media addiction and the resulting harm to students and schools despite having <u>no expertise</u> in (and not being proffered on) such matters.

## V.    CONCLUSION

Dr. Hutt's Opinions 1 and 2 and Dr. Hampton's moral panic and "no evidence" opinions should be excluded. Both offer pure *ipse dixit* advocacy and policy positions untethered to the facts, actual research, and this Court's rulings on the applicable law. They are exactly the type of pontification the Court has told the parties is unacceptable in a court of law. They will not help the jury decide any of the important issues to be presented. And, in the case of Dr. Hutt, they invite jury nullification by telling the jury that Breathitt's lawsuit should not even exist. All of this proffered testimony is inadmissible under Rule 702, violates Rule 403, and violates this Court's instruction that experts are not advocates. Plaintiff respectfully requests that Dr. Hutt's Opinions 1 and 2 and Dr. Hampton's moral panic and "no evidence" opinions be excluded in their entirety.

Respectfully submitted,

DATED: March 2, 2026                By: */s/ Previn Warren*
                                    PREVIN WARREN
                                    **MOTLEY RICE LLC**
                                    401 9th Street NW Suite 630
                                    Washington DC 20004
                                    Telephone: 202-386-9610
                                    pwarren@motleyrice.com

                                    LEXI J. HAZAM
                                    **LIEFF CABRASER HEIMANN &
                                    BERNSTEIN, LLP**

10

3446859.2

275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

KHALDOUN BAGHDADI
**WALKUP, MELODIA KELLY & SCHOENBERGER**
650 CALIFORNIA STREET, 26th FL
SAN FRANCISCO, CA 94108
Telephone: 415-981-7210
kbaghdadi@walkuplawoffice.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KY 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

*Attorneys for Plaintiff*

3446859.2

**ATTESTATION**

I, Lexi J. Hazam, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: March 2, 2026                    By: */s/ Lexi J. Hazam*

3446859.2