1  JONATHAN H. BLAVIN (State Bar No. 230269)
   Jonathan.Blavin@mto.com
2  MUNGER, TOLLES & OLSON LLP
   560 Mission Street, 27th Floor
3  San Francisco, CA 94105-2907
   Telephone:    (415) 512-4000
4  Facsimile:    (415) 512-4077

5  E. MARTIN ESTRADA (State Bar No. 223802)
   Martin.Estrada@mto.com
6  L. ASHLEY AULL (State Bar No. 257020)
   Ashley.Aull@mto.com
7  VICTORIA A. DEGTYAREVA (State Bar No. 284199)
   Victoria.Degtyareva@mto.com
8  MUNGER, TOLLES & OLSON LLP
   350 South Grand Avenue, 50th Floor
9  Los Angeles, CA 90071-3426
   Telephone: (213) 683-9100
10 Facsimile: (213) 687-3702

11 *Attorneys for Defendant Snap Inc.*

12 *[Additional parties and counsel listed on
   signature pages]*

13

14                 UNITED STATES DISTRICT COURT

15              NORTHERN DISTRICT OF CALIFORNIA

                        OAKLAND DIVISION
16

17 | IN RE: SOCIAL MEDIA ADOLESCENT | MDL No. 3047 |
   ADDICTION/PERSONAL INJURY
18 PRODUCTS LIABILITY LITIGATION       Case No. 4:22-MD-03047-YGR-PHK

19                                      Honorable Yvonne Gonzalez Rogers

20 THIS DOCUMENT RELATES TO:           **DEFENDANTS' NOTICE OF MOTION
                                        AND MOTION IN LIMINE NO. 1 TO
21                                      EXCLUDE EVIDENCE OF CONTENT
   *Breathitt County Board of Education v. Meta*  **AND FEATURES PROTECTED BY
22 *Platforms, Inc., et al.*           SECTION 230 AND THE FIRST
   Case No.: 4:23-CV-1804               AMENDMENT**
23
                                        **Hearing**:
24                                      Date:    March 18, 2026
                                        Time:    9:00 am
25                                      Place:   Courtroom 1, Floor 4
                                        Judge:   Hon. Yvonne Gonzalez Rogers
26

27

28

DEFENDANTS' MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OF CONTENT AND FEATURES
PROTECTED BY SECTION 230 AND THE FIRST AMENDMENT

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT, at 9:00 AM on March 18, 2026, before the Honorable Yvonne Gonzalez Rogers, in Courtroom 1, Floor 4, of the United States District Court, Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Defendants will and hereby do move this Court, under Federal Rules of Evidence 402 and 403, for an order excluding evidence at trial as described in the accompanying Memorandum of Points and Authorities.  This Motion is based on this Notice, the accompanying Memorandum, any other papers submitted in connection with the Motion, the accompanying Declaration of Jonathan H. Blavin and the exhibits thereto, and any other matters presented at the time of the hearing.

DATED:  March 2, 2026

Respectfully submitted,

MUNGER, TOLLES & OLSON LLP


By:      /s/ Jonathan H. Blavin
JONATHAN H. BLAVIN (State Bar No. 230269)
Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel: (415) 512-4000

E. MARTIN ESTRADA (State Bar No. 223802)
Martin.Estrada@mto.com
L. ASHLEY AULL (State Bar No. 257020)
Ashley.Aull@mto.com
VICTORIA A. DEGTYAREVA (State Bar No. 284199)
Victoria.Degtyareva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel.: (213) 683-9100

*Attorneys for Defendant Snap Inc.*

DEFENDANTS' MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OF CONTENT AND FEATURES PROTECTED BY SECTION 230 AND THE FIRST AMENDMENT

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ..................................................................................................... 1

II.    ARGUMENT ............................................................................................................ 1

    A.    Evidence of Harm From Content or Protected Features Is Irrelevant ......................... 2

        1.    Evidence of Allegedly Harmful Content ................................................. 2

        2.    Lay Witness Testimony and Documents Discussing Protected Features ................................................................................................................. 3

        3.    Expert Testimony about Content and Protected Features ............................ 4

        4.    Generalized Evidence About Harm from "Social Media" ............................. 5

    B.    Evidence of Content or Protected Features Is Not Relevant for Another Purpose ................................................................................................................. 6

    C.    Evidence of Content or Protected Features Is Unfairly Prejudicial ........................... 7

    D.    A Jury Instruction Will Not Sufficiently Cure the Prejudice ................................. 9

    E.    The JCCP Court's Ruling Should Not Be Followed ................................................. 10

III.   CONCLUSION ......................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Batzel v. Smith*,
    333 F.3d 1018 (9th Cir. 2003)................................................................8

*City of Cleveland v. Cleveland Elec. Illuminating Co.*,
    734 F.2d 1157 (6th Cir. 1984)................................................................8

*DataTreasury Corp. v. Wells Fargo & Co.*,
    2010 WL 11538713 (E.D. Tex. Feb. 26, 2010) ....................................9

*Doe v. MySpace*,
    528 F.3d 413 (5th Cir. 2008)................................................................7

*Doe v. Snap, Inc.*,
    2022 WL 2528615 (S.D. Tex. July 7, 2022) ........................................7

*Est. of Bride v. Yolo Techs., Inc.*,
    112 F.4th 1168 (9th Cir. 2024)..............................................................6

*Feminist Women's Health Ctr., Inc. v. Mohammad*,
    586 F.2d 530 (5th Cir. 1978)................................................................8

*Old Chief v. United States*,
    519 U.S. 172 (1997) ............................................................................8

*Pivot Point Int'l, Inc. v. Charlene Prods., Inc.*,
    932 F. Supp. 220 (N.D. Ill. 1996) .......................................................8

*In re Soc. Media*,
    702 F. Supp. 3d 809 (N.D. Cal. 2023) ..........................................1, 4, 7

*In re Soc. Media*,
    754 F. Supp. 3d 946 (N.D. Cal. 2024) ..........................................1, 4, 8

*U.S. Football League v. Nat'l Football League*,
    634 F. Supp. 1155 (S.D.N.Y. 1986), aff'd, 842 F.2d 1335 (2d Cir. 1988) ....................1, 8, 9

*Valadez v. Watkins Motor Lines, Inc.*,
    758 F.3d 975 (8th Cir. 2014)................................................................5

*Weit v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*,
    641 F.2d 457 (7th Cir. 1981)........................................................8, 9, 10

DEFENDANTS' MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OF CONTENT AND FEATURES
PROTECTED BY SECTION 230 AND THE FIRST AMENDMENT

**STATE CASES**

*Doe II v. MySpace Inc.*,
    175 Cal. App. 4th 561 (2009).......................................................................................7

*Social Media Cases*,
    2024 WL 400371 (Cal. Super. Ct. July 19, 2024).....................................................7

**FEDERAL STATUTES**

47 U.S.C. § 230 .................................................................................. 1, *passim*

**FEDERAL RULES**

Fed. R. Evid. 401................................................................................................2

Fed. R. Evid. 402...........................................................................................1, 2

Fed. R. Evid. 403...........................................................................................1, 8

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Amend. I ......................................................................... 1, *passim*

DEFENDANTS' MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OF CONTENT AND FEATURES
PROTECTED BY SECTION 230 AND THE FIRST AMENDMENT

# I.    INTRODUCTION

Defendants move under Federal Rules of Evidence 402 and 403 to exclude argument or evidence—including testimony, expert opinion, or documents—about third-party content or features that this Court has held are protected by Section 230 or the First Amendment.  As the Court has recognized, Section 230 and the First Amendment place a "significant limitation on [P]laintiffs' theories of recovery": third-party content and protected publishing features are simply "no longer part of this case." *In re Soc. Media*, 754 F. Supp. 3d 946, 963 (N.D. Cal. 2024); *In re Soc. Media*, 702 F. Supp. 3d 809, 846 (N.D. Cal. 2023).  Despite this Court's rulings, Breathitt appears intent on making this a trial about Defendants' protected publishing activity, as it made clear when it submitted thousands of pages of evidence concerning protected features—and content—at summary judgment.[1] Evidence that invites a jury to base liability on conduct protected by a First Amendment doctrine is "presumptively prejudicial" and exclusion "should be the rule rather than the exception." *U.S. Football League v. Nat'l Football League*, 634 F. Supp. 1155, 1181 (S.D.N.Y. 1986), *aff'd*, 842 F.2d 1335 (2d Cir. 1988).  If Breathitt is permitted to overwhelm the jury with evidence about third-party content like bullying comments and "fight videos," and publishing features like algorithmic recommendations and endless scroll—none of which is actionable—the jury will be misled, Defendants will be prejudiced, and the Court's carefully crafted feature-by-feature approach to Section 230 and the First Amendment will be for naught.  To prevent this prejudice and to properly delineate the scope of trial, the Court should exclude evidence of content and protected features.

# II.    ARGUMENT

This motion seeks to exclude four categories of evidence: (1) documents and lay witness testimony discussing allegedly harmful content—either specific instances of content or general categories of content such as bullying, content related to disordered eating, or viral challenges; (2) documents and lay witness testimony discussing protected publishing features, including company

---

[1] The Court permitted Breathitt to move forward with its theories that "defective . . . age verification," "defective parental controls," "failure to assist users in limiting in-app screen time," and "barriers to account deactivation and/or deletion" caused it harm.  Order Denying Mot. for Summ. J. 12-16, Dkt. No. 2728 ("MSJ Order").  Breathitt has not put forward evidence with respect to any *other* non-protected features. *Id.* at 5.  Defendants separately move in limine as to those features.

documents discussing the design, development, or purported effects of protected features; (3) expert testimony discussing content or protected publishing features, including the design, development, or purported effects of such features; and (4) documents or testimony that purports to attribute Breathitt's harm to Defendants' platforms or "social media" in general, non-specific terms—unless Breathitt lays a foundation that the evidence relates to an actionable feature.[2]

### A.    Evidence of Harm From Content or Protected Features Is Irrelevant

Evidence of third-party content and protected features is irrelevant and therefore "not admissible" to the extent it is offered to show that protected features or content caused Breathitt's harm. Fed. R. Evid. 402. Evidence is relevant only if it tends to make a fact *of consequence* more or less probable. Fed. R. Evid. 401. Because this Court has held that content and protected features cannot serve as a basis for liability, any evidence about them is necessarily irrelevant and inadmissible. Despite this Court's ruling that such evidence is no longer part of the case, Breathitt relied on extensive evidence of content and protected features in opposition to summary judgment.

### 1.    Evidence of Allegedly Harmful Content

The Court should exclude documents and lay witness testimony discussing allegedly harmful content—either specific instances of content or general categories of content such as that relating to bullying or disordered eating. As support for its argument at summary judgment that "Defendants' Conduct Harmed BCSD," Pl.'s Opp'n to Mot. for Summ. J. ("Breathitt MSJ Opp'n") 6-9, Dkt. No. 2360, Breathitt relied on testimony from Breathitt High School counselor Kera Howard that third-party content "targeting students at Breathitt," including posts with "explicitly harmful" captions, posts that "spread rumors," and "videos of fights" was "fostering fear, anxiety, embarrassment," and "long-term damage to self-esteem" among Breathitt students. Breathitt MSJ Opp'n Ex. 5 ¶ 13; *see id.* Ex. 6 (J. Hall Dep. at 59:10-21) (testifying that "kids are using" a Defendant's platform "to bully [children]"). Breathitt also relied on documentary evidence about content, including a coroner's report faulting exposure to social media "content" that "romanticised acts of self-harm" for the death

---

[2] This Motion identifies each category of evidence to be excluded with specificity, including by citing specific evidence representative of each category, which is listed in Appendix A. Defendants will provide courtesy copies of this evidence, all of which has previously been filed, via flash drive.

of a 14-year-old girl in the United Kingdom, Pls.' Omnibus Opp'n to Defs.' Mot. for Summ. J. ("Om. Opp'n") Ex. 161 at 3, Dkt. No. 2414-01, as well as Defendants' company documents discussing user exposure to "suicide and self-injury" content. *Id.* Ex. 182 at -8889; *id.* Ex. 517 at -8487.

### 2. Lay Witness Testimony and Documents Discussing Protected Features

The Court should exclude documents and lay witness testimony discussing publishing features that this Court already determined are protected by Section 230 and the First Amendment, including company documents discussing the design, development, or purported effects of those protected features.[3]  This includes, for example, the scores of documents about the design and functionality of **endless scroll and autoplay** that Breathitt cited in its summary judgment briefing to argue that Defendants breached their duty of care.  *See, e.g.*, Om. Opp'n 165-68 (citing *e.g.*, Om. Opp'n Ex. 789 at -1962 (document that Plaintiffs allege shows that autoplay creates wellbeing issues for some users); *id.* Ex. 790 at 10-12; *id.* Ex. 775 at 13); Om. Opp'n 185 (citing Om. Opp'n Ex. 774 (autoplay)).    Breathitt cited dozens more documents about the design and functionality of **notifications**, another protected feature, for the same purpose.  *See, e.g.*, Om. Opp'n 46-47 (citing *e.g.*, Om. Opp'n Ex. 107 at -0201 ("Notifications" among the "10+ triggers contributing to [problematic use] habits."); *id.* Ex. 105 at -4015; *id.* Ex. 300 at -3213; *id.* Ex. 665 at -0086).  And it did the same for **recommendation algorithms**.  *See, e.g.*, Om. Opp'n 106-08 (citing *e.g.*, Om. Opp'n Ex. 505 at -0457 (discussing the effect of recommendation algorithms on user retention and stay duration); *id.* Ex. 503 at 13; *id.* Ex. 502 at -9725; *id.* at 507 at -7196; Ex. 509 at -4763).  Likewise, when pressed by the Court at oral argument to identify "specific evidence" tying "defendants' actionable conduct to the specific harms," Breathitt's counsel again relied on *protected* features, pointing to an internal company document about "Snap Streaks," a feature identified in the Master Complaint as a **"reward" feature** that conveys a notification containing Snap's *own speech*, which the Court has held protected.[4]  Declaration of Jonathan H. Blavin ("Blavin Decl.") Ex. A (Tr. at 50:6-

---

[3]  With respect to company documents that discuss both protected and non-protected features, Defendants request that the portions referencing protected features be excluded.

[4] This Court has explained, citing the Complaint, that Plaintiffs allege that "Snap rewards continuous engagement with the app by providing 'elevated status,' 'trophies,' and other awards to frequent

51:16 (discussing Om. Opp'n Ex. 933)); s*ee also* Om. Opp'n Ex. 812 at -8652 (Snap Score). Breathitt's witnesses, too, have offered testimony on protected features, such as **likes**.  *See, e.g.*, Breathitt MSJ Opp'n Ex. 7 (D. Noble 30(b)(6) Dep. 74:11-19) ("kids are addicted to the social media" as "[t]hey want[] to get their likes up").  Evidence concerning protected features should be excluded.[5]

### 3. Expert Testimony about Content and Protected Features

The Court should also exclude expert testimony discussing content or protected publishing features, including those features' design, development, or purported effects.  Breathitt's experts have testified that content and protected features could *cause* the district's harms.  Dr. Twenge, for example, testified that the causal mechanisms of harm from social media include "exposure to suicide and self-injury content," "cyberbullying," and social comparison content.  Pls.' Resp. to Mot. to Exclude GC Test. ("GC Opp'n") Ex. 76 (Twenge MDL Dep. 390:7-17, 395:6-13, 398:1-22, 402:7-403:24).[6]  Dr. Christakis identified "likes," "comments," "rewards," "algorithmic recommendations," "auto-play," "infinite scroll," and "notifications"—all protected features—as capable of causing harm.  GC Opp'n Ex. 15 ¶¶ 187-196.[7]  And Ms. Istook opined that "[c]hildren and adolescents face material risks of sexual harm online," which are "facilitate[d]" by Defendants' platforms.  Om. Opp'n Ex. 995 ¶¶ 1-2.[8]  Breathitt's experts should be precluded from offering such testimony at trial.

---

users," and concluded that "[t]here is no dispute" that such "awards, are speech" protected by the First Amendment.  *In re Soc. Media*, 702 F. Supp. 3d at 820-21, 837.  Included in the cited paragraph of the Master Complaint are "Snapscores, Snap Streaks, and Snap Awards[.]"  First Amended Master Compl. ¶ 595, Dkt. No. 729.

[5] Evidence of alleged harm from all other protected features, *see In re Soc. Media*, 754 F. Supp. 3d at 963 (listing features), is likewise irrelevant and should be excluded.  *See, e.g.*, Om. Opp'n Ex. 1152 at -2064 (ephemerality); *id.* Ex. 806 at -6130 ("Quick Add" friend recommendation feature); *id.* Ex. 809 at -8084 ("Snap Map" user geolocation feature).

[6] *See also, e.g.*, GC Opp'n Ex. 1 (A. Lembke JCCP Dep. 225:16-226:5) (Social media leads to eating disorders by "push[ing] increasingly potent images," like "anorexia-related content.").

[7] *See also, e.g.*, GC Opp'n Ex. 62 (Telzer Rep. ¶¶ 123-138) (identifying "algorithm," "default setting to public," "ephemeral content," "likes/metrics," "infinite/endless scroll," "direct messaging," "comments," "notifications," "stories," "explore/for you page" as capable of causing harm); GC Opp'n Ex. 52 (Goldfield MDL Dep. 665:25-666:11, 691:8-14).

[8] The Court held that deficiencies in user reporting processes for CSAM—specifically deficiencies related to account sign up requirements—were actionable, *In re Soc. Media*, 702 F. Supp. at 836, but Ms. Istook's opinions go well beyond that, consistently emphasizing allegedly harmful content, *e.g.*, Om. Opp'n Ex. 995 ¶ 195 ("nudity or unwanted sexual images"), and faulting numerous protected

### 4. Generalized Evidence About Harm from "Social Media"

Lay or expert witness testimony purporting to attribute Breathitt's harm to Defendants' platforms in general terms should likewise be excluded unless Breathitt first lays a foundation that ties the testimony to actionable conduct. For example, Breathitt's representative testified about a survey that found that 200 to 220 students "have been seen [by Breathitt administrators] due to issues explicitly related to social media," Breathitt MSJ Opp'n Ex. 14 (K. Howard 30(b)(6) Dep. at 104:1-5). Breathitt did not make a link to non-protected features during this testimony, and further questioning revealed there is not one. Instead, *all* of the instances cited by Breathitt were directly related to *content*. *Id.* at 105:17–113:13 (noting "what another kid is saying" or "spread[ing]" about a student, posting of "nude" or "inappropriate pictures," a "gay pride poster," a "trust[/]do not trust list," "videos of fight[s]," "threats," and "cyberbullying" as a "complete list"). Similarly, Breathitt's superintendent testified that "most of the problems that teachers talk about . . . stem from social media." *Id.* Ex. 3 (P. Watts 30(b)(6) Dep. at 71:23-72:5). The only specifics he conveyed related to a protected feature—endless scroll—and messaging in groups, which is content. *Id.* at 72:6-73:4 (discussing "constant[] scrolling" and "apps they use in the groups"). Such generalized testimony is not tied to actionable features and would effectively rely on protected conduct as a basis for liability.

At a minimum, if Breathitt is permitted to present generalized testimony such as Ms. Howard's statement that students "have been seen [by Breathitt administrators] due to issues explicitly related to social media," then Defendants must be allowed on cross-examination to show the jury that that testimony is based on protected content or features. And Defendants must be able to do so without being found to have "opened the door" to other evidence about content and protected features (for example, documents displaying allegedly harmful content or expert opinions that barred features cause addiction). Defendants should not be forced into the Hobson's Choice of allowing the jury to hear only one-sided misleading statements on the one hand, or opening the door to evidence about protected conduct on the other. *See Valadez v. Watkins Motor Lines, Inc.*, 758 F.3d 975, 981

---

features, including "ephemeral messaging," *id.* ¶ 53 and account recommendations, *id.* ¶ 80 ("Quick Add"), for causing harm. The substantial majority of her report should be excluded.

DEFENDANTS' MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OF CONTENT AND FEATURES
PROTECTED BY SECTION 230 AND THE FIRST AMENDMENT

1    (8th Cir. 2014) ("[T]he door is not opened to all similar, inadmissible evidence . . . . The doctrine of

2    opening the door cannot 'be subverted into a rule for injection of prejudice.'").

3        **B.**    **Evidence of Content or Protected Features Is Not Relevant for Another Purpose**

4        Breathitt has pointed to various theories by which it could seek to paint evidence about content

5    or protected features as relevant and probative of its claims, but none justifies its admission.

6        ***Failure to Warn.***  Breathitt has argued that evidence of protected conduct is relevant to its

7    failure to warn claim.  *E.g.*, GC Opp'n 2-3.  Lead counsel for Plaintiffs has already conceded,

8    however, that harmful *content* is not an appropriate part of the case, representing to the Court that

9    "we are definitely not arguing about bad content or harmful content *or failure to warn* about bad or

10   harmful content.  *That is not a part of our case*."  Blavin Decl. Ex. A (Tr. at 219:7-12) (emphases

11   added).  Breathitt should be held to its counsel's representations.  In any event, binding precedent

12   bars a failure to warn claim premised on "the harmful effects of . . . content," *Est. of Bride v. Yolo*

13   *Techs., Inc.*, 112 F.4th 1168, 1180 (9th Cir. 2024), rendering evidence of such content irrelevant.

14       Nor should Breathitt be permitted to introduce evidence relating to publishing activity to

15   prove liability for failure to warn.  The Court's summary judgment order affirmed that Breathitt could

16   proceed with claims based *only* on the enumerated actionable features.  MSJ Order 5.  The Court

17   determined that there was a factual dispute on the failure to warn claim by referencing a prior

18   discussion about *actionable* features, with no reference to any *protected* features.  *Id.* at 30-31.[9]

19       The Court's ruling on the statute of limitations reinforces this restriction.  The Court held that

20

21

22   ---

[9] A contrary reading of the Court's ruling—that "knowledge of a foreseeable risk of harm" from the
*protected* features could render Section 230 inapplicable under a failure to warn theory—would go
against binding Ninth Circuit law.  In *Bride*, the plaintiffs alleged that the defendant had knowledge
that its anonymity messaging feature was harmful, including that it had "ignor[ed] the history of teen
suicides stemming from cyberbullying on anonymous apps," and had failed to warn of such risks.
*Bride*, 112 F.4th at 1174.  After holding that the feature was protected by Section 230, the Ninth
Circuit held that the failure to warn claim predicated on the harms caused by the feature was likewise
barred.  *Id.* at 1180-81.  *Bride* distinguished *Internet Brands* (cited by the Court in its MSJ ruling) on
the ground that it concerned a "known conspiracy operating independent of the site's publishing
function"—the site had actual knowledge that a specific "pair of men" were using the platform to
lure women to fake "auditions" and then assault them, and failed to warn of this.  *Id.*  But in *Bride*,
as here, the requested warning did not relate to a specific threat of off-platform harm—it related to
harm from the protected publishing feature itself.  *Id.*  Section 230 barred the claim.

Case No. 4:22-MD-03047-YGR

DEFENDANTS' MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OF CONTENT AND FEATURES
PROTECTED BY SECTION 230 AND THE FIRST AMENDMENT

1    Breathitt's claims were within the limitations period because "Defendants have proffered no evidence

2    that plaintiff knew, or could have known, *about defendants' Actionable Defects and the resulting*

3    *damage.*"  MSJ Order 9 (emphasis added).  And the Court expressly rejected evidence of harm that

4    related to content or protected features as insufficient to establish Breathitt's knowledge of injury.

5    *Id.* at 8.  If evidence of content and protected features is insufficient to trigger the running of the

6    statute of limitations with respect to Breathitt's failure to warn claim because it did not relate to the

7    "injury-causing conduct," *id.*, it cannot be relevant to establish *liability* for that very claim.

8        *Age Verification, Parental Controls, and Use Limitations.*  Breathitt may argue that evidence

9    that Defendants' platforms publish certain content or have protected features is probative of its theory

10   that age verification, parental controls, screen-time limitations, or deactivation barriers caused

11   Breathitt's harm.  But that contravenes both this Court's rulings and the law.  This Court permitted

12   Breathitt's allegations related to age verification to move forward only because Breathitt alleged a

13   "plausible theory under which failure to validly verify user age harms users *that is distinct from harm*

14   *caused by consumption of third-party content* on defendants' platforms."  *In re Soc. Media*, 702 F.

15   Supp. at 830 (emphasis added).  Other courts, including the JCCP Court, have prohibited plaintiffs

16   from using age verification or other safety controls as a "back door" to content evidence, where the

17   theory of liability is premised on exposure to content on the platform.  *See Social Media Cases*, 2024

18   WL 4003712, at *18 (Cal. Super. Ct. July 19, 2024) ("Claims based on Defendants' failure to

19   implement effective age verification software . . . are barred." (citing *Doe II v. MySpace Inc.*, 175

20   Cal. App. 4th 561, 565 (2009)));  *Doe v. MySpace*, 528 F.3d 413, 420 (5th Cir. 2008) (age verification

21   "allegations are merely another way of claiming that MySpace was liable for publishing the

22   communications" and were barred by Section 230); *Doe v. Snap, Inc.*, 2022 WL 2528615, at *14

23   (S.D. Tex. July 7, 2022) ("Snapchat's alleged lack of safety features is only relevant to [Doe's]

24   injuries to the extent that such features would have averted wrongful communication via [Snap's]

25   platforms" (citation modified)).  This Court should too.

26       **C.      Evidence of Content or Protected Features Is Unfairly Prejudicial**

27           Even if evidence of content or protected features is theoretically relevant for some purpose

28   other than arguing that it caused Breathitt's harm, such evidence should nonetheless be excluded

-7-                                Case No. 4:22-MD-03047-YGR

under Rule 403 as unduly prejudicial, posing a serious risk of confusion of the issues, and likely to mislead the jury. Evidence that has an "undue tendency" to "suggest decision on an improper basis" is quintessentially prejudicial under Rule 403. *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

Courts have recognized that evidence of immunized conduct "poses a serious problem of confusion of issues" under Rule 403 where the jury is likely to consider the evidence for the prohibited purpose. *Weit v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*, 641 F.2d 457, 466-67 (7th Cir. 1981). For example, in cases involving the *Noerr-Pennington* doctrine, courts routinely exclude evidence of protected petitioning conduct pursuant to Rule 403. *E.g., Pivot Point Int'l, Inc. v. Charlene Prods., Inc.*, 932 F. Supp. 220, 224 (N.D. Ill. 1996) (Easterbrook, J.); *City of Cleveland v. Cleveland Elec. Illuminating Co.*, 734 F.2d 1157, 1163 (6th Cir. 1984). These cases afford significant weight to the threat of prejudice. *See U.S. Football League*, 634 F. Supp. at 1180 (exclusion of protected conduct "should be the rule rather than the exception" as "evidence which by its very nature chills the exercise of First Amendment rights is . . . presumptively prejudicial" (citation omitted)).

The threat of jury confusion and undue prejudice here is just as apparent as in the *Noerr* context. This Court has held that the First Amendment and Section 230—itself a statutory extension of First Amendment principles[10]—protect Defendants from liability based either on third-party content or on a specifically enumerated set of publishing features. Yet the evidence targeted by this motion would put those protected features squarely before the jury, inviting it to find liability on that basis, notwithstanding the "significant limitation" that Section 230 and the First Amendment place "on [Breathitt's] theories of recovery." *In re Soc. Media*, 754 F. Supp. 3d at 963. Even if, as Breathitt claims, a permissible inference "*could* be drawn from this evidence, the more *direct* link" is to the immunized conduct: Defendants' design of their protected publishing features and their publication of third-party content. *Weit*, 641 F.2d at 466-67 (emphases added); *see Feminist Women's Health Ctr., Inc. v. Mohammad*, 586 F.2d 530, 543 n.7 (5th Cir. 1978) (evidence of protected activity had "low" probative value, which was "far outweighed by the defendants' first amendment interests").

---

[10] *See Batzel v. Smith*, 333 F.3d 1018, 1028 (9th Cir. 2003) (noting there is "little doubt" that in enacting Section 230, Congress "sought to further First Amendment . . . interests on the Internet").

**D.    A Jury Instruction Will Not Sufficiently Cure the Prejudice**

Regardless of the outcome of this motion, instructions regarding the limitations on liability imposed by Section 230 and the First Amendment will be necessary.  Even if this motion is granted, the jury will hear evidence about the *actionable* features, which themselves are closely—in Defendants' view, inextricably—linked to the content available on the platforms; an instruction will be required to assist the jury in parsing out the causal impact of those features from that of content. But jury instructions cannot alone cure the prejudice that will be caused by the introduction of evidence about content and *protected* features.

As courts have recognized, when significant evidence is introduced regarding protected conduct, the "more likely result"—even with a cautionary instruction—is that the jury will improperly base liability on such conduct.  *Weit*, 641 F.2d at 467.  This is especially true here.  *First*, Breathitt has identified scant evidence that its harms can be linked to any actionable features,[11] and the dearth of such evidence makes the "threat of prejudice from admission of [the challenged] evidence" more "considerable" even with an instruction, as the "lack of other probative evidence . . . would serve to focus the jury's attention on" the prejudicial evidence.  *Id.*[12]  *Second*, the effect of this lack of evidence of actionable conduct is exacerbated by the fact that Breathitt's summary judgment filings evince a clear intent to repeatedly discuss (and implicitly blame) protected features, threatening to confuse the jury into imposing liability on prohibited grounds.  *See supra* Section II.A.  As courts have recognized in the *Noerr* context, a limiting instruction can be "quickly eviscerated" by the admission of evidence of protected conduct that is "clearly designed to place defendants in the harshest light."  *U.S. Football League*, 634 F. Supp. at 1181.  *Third*, a jury is "unskilled in the constitutional considerations" at play, and will struggle to parse the evidence according to the precise contours of this Court's orders—no

---

[11] Although the Court held that Breathitt identified a sufficient "quantum of evidence" of harm related to non-protected features to survive summary judgment, MSJ Order 17, the evidence of harm from non-protected features pales in comparison to that relating to content and protected features.  *Supra* Section II.A.  And the evidence of non-protected features is, at most, circumstantial and requires the jury to make inferences.  MSJ Order 17.

[12] *See also DataTreasury Corp. v. Wells Fargo & Co.*, 2010 WL 11538713, at *15 (E.D. Tex. Feb. 26, 2010) (considering and rejecting plaintiffs' argument that limiting instruction would cure prejudice from admission of evidence that could not give rise to liability under *Noerr*).

1  matter how detailed the instruction. *Weit*, 641 F.2d at 467.

2      **E.**    **The JCCP Court's Ruling Should Not Be Followed**

3      Defendants recognize that the JCCP Court denied a motion in limine seeking to exclude

4  evidence of content and publishing features. *See* Dkt. No. 2725-1, Ex. A. But that ruling does not

5  control, and material differences in the governing legal framework compel a different result here.

6      The JCCP Court took a fundamentally different approach to the applicability of Section 230

7  and the First Amendment than this Court. The JCCP Court declined to adopt a "feature-by-feature

8  approach to liability," holding that "the task for this court is instead to make sure that liability is not

9  improperly premised on third-party *content* present on the platforms." Blavin Decl. Ex. C at 1. And

10  the two courts have made diverging decisions on the conduct that is protected. As relevant here, this

11  Court has already held that many of the features addressed in the JCCP Court's MIL Order, such as

12  "endless scroll," *are* protected by Section 230 and therefore *could not* be the basis for liability.

13      Although the JCCP Court ruled that not *all* evidence of protected activity should be put before

14  the jury and has excluded certain evidence of content at trial, *e.g.*, Blavin Decl. Ex. B (Tr. at 2003:21-

15  2005:15) (excluding expert testimony about safety research involving content moderation), its ruling

16  is not based on the authorities that this Court relied upon, which caution against admitting evidence

17  that could invite a jury to find liability based on protected conduct. *See Weit*, 641 F.2d at 466-67.

18  While this Court noted in its summary judgment order, including in discussing *Weit*, that this was an

19  appropriate topic for a 403 challenge, MSJ Order 12, 18 n.9, the JCCP Court had not. This Court

20  should follow its own rulings in *this* case rather than deviating to follow the JCCP Court's ruling.

21      The practical consequences of the JCCP Court's approach counsel in favor of this Court

22  drawing a clear line before trial. There, the parties are often raising objections during testimony

23  related to the admissibility of content-related evidence and both sides have filed multiple motions

24  about line-drawing. Clear guidance from this Court in advance of trial would help avoid such issues.

25  **III.**    **CONCLUSION**

26      The Court should grant the motion and exclude evidence of content and protected features.

27

28

1

2  DATED: March 2, 2026

Respectfully submitted,

3

MUNGER, TOLLES & OLSON LLP

4

5  By: _____/s/ Jonathan H. Blavin_____

6  JONATHAN H. BLAVIN (State Bar No. 230269)
   Jonathan.Blavin@mto.com

7  MUNGER, TOLLES & OLSON LLP
   560 Mission Street, 27th Floor

8  San Francisco, CA 94105
   Tel: (415) 512-4000

9

10 E. MARTIN ESTRADA (State Bar No. 223802)
   Martin.Estrada@mto.com

11 L. ASHLEY AULL (State Bar No. 257020)
   Ashley.Aull@mto.com

12 VICTORIA A. DEGTYAREVA (State Bar No. 284199)
   Victoria.Degtyareva@mto.com

13 MUNGER, TOLLES & OLSON LLP
   350 South Grand Avenue, 50th Floor

14 Los Angeles, CA 90071
   Tel.: (213) 683-9100

15

16 ALLISON BROWN (*pro hac vice*)
   alli.brown@kirkland.com

17 KIRKLAND & ELLIS LLP
   2005 Market Street, Suite 1000

18 Philadelphia, PA 19103
   Tel.: (215) 268-5000

19

20 JESSICA DAVIDSON (*pro hac vice*)
   jessica.davidson@kirkland.com

21 JOHN J. NOLAN (*pro hac vice*)
   jack.nolan@kirkland.com

22 KIRKLAND & ELLIS LLP
   601 Lexington Avenue

23 New York, NY 10022
   Tel.: (212) 446-4800

24

25 *Attorneys for Defendant Snap Inc.*

26

27

28

DEFENDANTS' MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OF CONTENT AND FEATURES
PROTECTED BY SECTION 230 AND THE FIRST AMENDMENT

1

2                                      _____/s/ Ashley W. Hardin_____

3                                      JOSEPH G. PETROSINELLI (*pro hac vice*)
                                       jpetrosinelli@wc.com
4                                      ASHLEY W. HARDIN (*pro hac vice*)
                                       ahardin@wc.com
5                                      J. ANDREW KEYES (*pro hac vice*)
                                       akeyes@wc.com
6                                      NEELUM J. WADHWANI (SBN 247948)
                                       nwadhwani@wc.com
7                                      WILLIAMS & CONNOLLY LLP
8                                      680 Maine Avenue, SW
                                       Washington, DC 20024
9                                      Tel.: (202) 434-5000

10                                     *Attorneys for Defendants YouTube, LLC and Google LLC*

11

12                                     _____/s/ Ashley M. Simonsen_____

13                                     ASHLEY M. SIMONSEN (State Bar No. 275203)
                                       asimonsen@cov.com
14                                     COVINGTON & BURLING LLP
                                       1999 Avenue of the Stars
15                                     Los Angeles, California 90067
16                                     Telephone: (424) 332-4800

17                                     PHYLLIS A. JONES (*pro hac vice*)
                                       pajones@cov.com
18                                     PAUL W. SCHMIDT (*pro hac vice*)
                                       pschmidt@cov.com
19                                     CHRISTIAN J. PISTILLI (*pro hac vice*)
                                       cpistilli@cov.com
20                                     COVINGTON & BURLING LLP
                                       One City Center
21                                     850 Tenth Street, NW
22                                     Washington, DC 20001-4956
                                       Tel.: (202) 662-6000
23

24                                     *Attorneys for Defendants Meta Platforms, Inc. f/k/a*
                                       *Facebook, Inc. and Instagram, LLC*
25

26

27

28

DEFENDANTS' MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OF CONTENT AND FEATURES
PROTECTED BY SECTION 230 AND THE FIRST AMENDMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/ Geoffrey M. Drake
GEOFFREY M. DRAKE (*pro hac vice*)
gdrake@kslaw.com
TACARA D. HARRIS (*pro hac vice*)
tharris@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel.: (404) 572-4600

DAVID P. MATTERN (*pro hac vice*)
dmattern@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, D.C. 20006
Tel.: (202) 737-0500

BAILEY J. LANGNER (State Bar No. 307753)
*blangner@kslaw.com*
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Tel.: (415) 318-1200

/s/ Daniel M. Petrocelli
DANIEL M. PETROCELLI 9SBN 97802)
SABRINA H. STRONG (SBN 200292)
O'MELVENY & MYERS
1999 Avenue of the Stars
8th Floor
Los Angeles, CA 90067
Telephone: (310) 553-6700
Email: dpetrocelli@omm.com
        sstrong@omm.com
STEVE BRODY (pro hac vice)
O'MELVENY & MYERS
1625 Eye Street
Washington, DC 20006
Telephone: (202) 383-5300
Email: sbrody@omm.com

*Attorneys for Defendants*
*TikTok Inc., ByteDance Inc., TikTok Ltd., ByteDance Ltd.*
*and TikTok LLC*

DEFENDANTS' MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OF CONTENT AND FEATURES
PROTECTED BY SECTION 230 AND THE FIRST AMENDMENT

## <u>ATTESTATION</u>

I, Jonathan H. Blavin, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.


DATED:  March 2, 2026                    By:    */s/ Jonathan H. Blavin*

                                                        Jonathan H. Blavin

-14-                    Case No. 4:22-MD-03047-YGR

**APPENDIX A**

| Exhibit Number[1] | Docket Number | Pages | Description |
|---|---|---|---|
| **Third-Party Content** | | | |
| **Breathitt MSJ Opp'n Ex. 3** | 2368-05 | 71-73 | The transcript of the 30(b)(6) Deposition of Phillip Watts, dated April 22, 2025. Mr. Watts testified that "most of the problems that teachers talk about . . . stem from social media." He offered that these issues related to "constant[] scrolling" and to the "use in the groups." |
| **Breathitt MSJ Opp'n Ex. 5** | 2368-07 | 3 (¶13) | The Affidavit of Kera Howard, dated May 9, 2025. Ms. Howard testified that third-party content "targeting students at Breathitt," including posts with "explicitly harmful" captions, posts that "spread rumors," and "videos of fights" was "fostering fear, anxiety, embarrassment," and "long-term damage to self-esteem" among Breathitt students. |
| **Breathitt MSJ Opp'n Ex. 6** | 2368-08 | 59 | The transcript of the Deposition of Jeremy Hall, dated April 23, 2025. Mr. Hall testified that that "kids are using" a Defendant's platform "to bully [children]". |
| **Breathitt MSJ Opp'n Ex. 14** | 2368-16 | 104-113 | The transcript of the 30(b)(6) Deposition of Kera Howard, dated March 10, 2025. Ms. Howard, as Breathitt's representative, testified about a survey that found that 200 to 220 students "have been seen [by Breathitt administrators] due to issues explicitly related to social media." She later testified that "what another kid is saying" or "spread[ing]" about a student, posting of "nude" or "inappropriate pictures," a "gay pride poster," a |

---

[1] All exhibits in this column refer to the exhibits filed in connection with Plaintiffs' Corrected Omnibus Opposition to Defendants' Motions for Summary Judgment (Dkt. No. 2414-1), Plaintiff's Response in Opposition to Motion for Summary Judgment (Breathitt) (SD MSJ No. 1) (Dkt. No. 2360) and Plaintiffs' Response to Defendants' Motion to Exclude General Causation Testimony of Plaintiffs' Experts (Dkt. No. 2535).

| | | | |
|---|---|---|---|
| | | | "trust[/]do not trust list," "videos of fight[s]," "threats," and "cyberbullying" was a "complete list" of such issues. |
| **MSJ Om. Opp'n Ex. 161** | 2558-11 | 3 | A copy of the Regulation 28 Report to Prevent Future Deaths created by the North London Coroner's Service on October 13, 2022. This document was introduced as an exhibit during the deposition of Lotte Rubaek taken on April 1, 2025. The report faults exposure to social media "content," such as content that "romanticised acts of self-harm," for the death of a 14-year-old girl in the United Kingdom. |
| **MSJ Om. Opp'n Ex. 182** | 2757-08 | 28 (META3047MDL-003-00068889) | A document produced in this litigation by the Meta Defendants beginning with the Bates number META3047MDL-003-00068863. This document concerns "suicide and self-injury" content. |
| **MSJ Om. Opp'n Ex. 517** | 2755-23 | 4 (TIKTOK3047MDL-078-LARK-01818487) | A document produced in this litigation by the TikTok Defendants beginning with the Bates number TIKTOK3047MDL-078-LARK-01818485. This document concerns suicide and self-harm content. |
| **Likes** | | | |
| **Breathitt MSJ Opp'n Ex. 7** | 2368-09 | 74 | The transcript of the 30(b)(6) Deposition of Daphne Noble, dated March 11, 2025. Ms. Noble testifies, as Breathitt's representative, that "kids are addicted to the social media" as "[t]hey want[] to get their likes up." |
| **Recommendation Algorithms** | | | |
| **MSJ Om. Opp'n Ex. 502** | 2755-18 | 3 (TIKTOK3047MDL-002-00119725) | A document produced in this litigation by the TikTok Defendants beginning with the Bates number TIKTOK3047MDL-002-00119724. This document concerns recommendation algorithms. |
| **MSJ Om. Opp'n Ex. 503** | 2568-03 | 13 | A document produced in this litigation by the TikTok Defendants beginning with the Bates number TIKTOK3047MDL-015-00331402. This document concerns recommendation algorithms. |

| MSJ Om. Opp'n Ex. 505 | 2568-05 | 6 (TIKTOK3047MDL-024-LARK-00040457) | A document produced in this litigation by the TikTok Defendants beginning with the Bates number TIKTOK3047MDL-024-LARK-00040453. This document concerns recommendation algorithms. |
|---|---|---|---|
| MSJ Om. Opp'n Ex. 507 | 2755-19 | Entirety | A document produced in this litigation by the TikTok defendants beginning with the Bates number TIKTOK3047MDL-002-00077196. This document concerns recommendation algorithms. |
| MSJ Om. Opp'n Ex. 509 | 2568-09 | Entirety | A document produced in this litigation by the TikTok defendants beginning with the Bates number TIKTOK3047MDL-004-00144763. This document concerns recommendation algorithms. |
| **Account Recommendation Features** | | | |
| MSJ Om. Opp'n Ex. 806 | 2574-06 | 25 (SNAP0276130) | A document produced in this litigation by the Snap Defendants beginning with the Bates number SNAP0276106.  This document concerns the "Quick Add" account recommendation feature as well as the "Snap Score and "Snap Streaks" rewards features. |
| **User Geolocation Features** | | | |
| MSJ Om. Opp'n Ex. 809 | 2574-09 | 9 (SNAP1368084) | A document produced in this litigation by the Snap Defendants beginning with the Bates number SNAP1368077. This document concerns the "Snap Map" user geolocation feature as well as the "Snap Streaks" reward feature. |
| **Rewards Features** | | | |
| MSJ Om. Opp'n Ex. 812 | 2574-12 | 2 (SNAP6118652) | A document produced in this litigation by the Snap Defendants beginning with the Bates number SNAP6118652. This document concerns the "Snap Score" rewards feature. |
| MSJ Om. Opp'n Ex. 933 | 2576-33 | Entirety | A document produced in this litigation by the Snap Defendants beginning with the Bates number SNAP6145093. The document concerns the "Snap Streaks" reward feature. |

| | | Ephemerality Features | |
|---|---|---|---|
| **MSJ Om. Opp'n Ex. 1152** | 2582-02 | 12 (SNAP1342064) | A document produced in this litigation by the Snap Defendants beginning with the Bates number SNAP1342053. This document concerns ephemerality features. |
| | | **Endless Scroll and Autoplay** | |
| **MSJ Om. Opp'n Ex. 774** | 2754-20 | Entirety | A document produced in this litigation by the Google Defendants beginning with the Bates number GOOG-3047MDL-04625648. This document concerns autoplay. |
| **MSJ Om. Opp'n Ex. 775** | 2754-21 | 13 | A document produced in this litigation by the Google Defendants beginning with the Bates number GOOG-3047MDL-00874191. This document concerns autoplay. |
| **MSJ Om. Opp'n Ex. 789** | 2573-39 | 17 (GOOG-3047MDL-00641962) | A document produced in this litigation by the Google Defendants beginning with the Bates number GOOG-3047MDL-00641947. This document concerns autoplay. |
| **MSJ Om. Opp'n Ex. 790** | 2573-40 | 10-12 | A document produced in this litigation by the Google Defendants beginning with the Bates number GOOG-3047MDL-05193823. This document concerns autoplay. |
| **MSJ Om. Opp'n Ex. 105** | 2557-05 | 11 (META3047MDL-050-00184015) | A document produced in this litigation by the Meta Defendants beginning with the Bates number META3047MDL-050-00184006. This document concerns the "infinite scroll"/endless scroll feature as well as notifications. |
| | | **Notifications** | |
| **MSJ Om. Opp'n Ex. 107** | 2756-49 | 26 (META3047MDL-079-00000201) | A document produced in this litigation by the Meta Defendants beginning with the Bates number META3047MDL-079-00000177. This document concerns notifications as well as ephemerality features. |
| **MSJ Om. Opp'n Ex. 300** | 2758-14 | 51 (META3047MDL-136-00013213) | A document produced in this litigation by the Meta Defendants beginning with the Bates number META3047MDL-136-00013164. This document concerns notifications. |

| | | | |
|---|---|---|---|
| **MSJ Om. Opp'n Ex. 665** | 2758-43 | 3 (META3047MDL-038-00000086) | A document produced in this litigation by the Meta Defendants beginning with the Bates number META3047MDL-038-00000085. This document concerns notifications. |
| **Expert Testimony on Protected Features and Content** | | | |
| **GC Opp'n Ex. 1** | 2535-02 | 225-226 | The transcript of the deposition of Anna Lembke, MD, taken on June 8, 2025. Dr. Lembke testified that social media can cause harm by "push[ing] increasingly potent images," like "anorexia-related content." |
| **GC Opp'n Ex. 15** | 2535-16 | 105-111 (¶¶ 187-196) | The Expert Report of Dimitri Christakis, dated May 16, 2025. Dr. Christakis identified "likes," "comments," "rewards," "algorithmic recommendations," "auto-play," "infinite scroll," and "notifications" as capable of causing harm. |
| **GC Opp'n Ex. 52** | 2535-53 | 665-666, 691 | The transcript of the deposition of Gary Goldfield, taken on September 10, 2025. Dr. Goldfield testified that the "key drivers of engagement and addiction" include "algorithms, autoplay, infinite scroll, notifications, geolocation sharing, ephemeral content, short-form content" and "[l]ikes." |
| **GC Opp'n Ex. 62** | 2535-63 | 48-55 (¶¶ 123-138) | The Expert Report of Eva Telzer, dated May 16, 2025. Dr. Telzer identified the "algorithm," "default setting to public," "ephemeral content," "likes/metrics," "infinite/endless scroll," "direct messaging," "comments," "notifications," "stories," "explore/for you page" as capable of causing harm. |
| **GC Opp'n Ex. 76** | 2535-77 | 390, 395, 398, 402-403 | The transcript of the deposition of Jean M. Twenge, dated September 17, 2025. Dr. Twenge testified that the causal mechanisms of harm from social media include "exposure to suicide and self-injury content," "cyberbullying," and social comparison content. |
| **MSJ Om. Opp'n Ex. 995** | 2577-45 | 3 (¶¶ 1-2), 24 (¶ 53), 35 (¶ 80), 82 (¶ 195) | The Expert Report of Brooke Istook, dated May 16, 2025. Ms. Istook opines that "[c]hildren and adolescents face material risks of sexual harm online," |

| | | | which are "facilitate[d]" by Defendants' platforms. The report emphasizes allegedly harmful content, including "nudity or unwanted sexual images," and faults numerous protected features, including "ephemeral messaging" and account recommendation features for causing harm. |