1  [Parties and Counsel Listed on Signature Pages]

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case No. 4:22-md-03047-YGR (PHK) |
| This Document Relates To: | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 5** |
| *Breathitt County Board of Education v. Meta Platforms, Inc., et al.* Case No.: 4:23-cv-01804 | Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

    I.     The Court Should Admit Evidence About Foreign Regulatory Actions, Reports, and Investigations Regarding Defendants. ............................................................... 1

    II.    The Court Should Deny Defendants' Motion to Exclude Evidence of Their Platform Operations in Foreign Markets ................................................................. 5

    III.   Plaintiff Does Not Intend to Offer Evidence of Foreign Ownership. ..................... 9

CONCLUSION ...................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

Cases

*Burke v. City of Santa Monica*,
 2011 WL 13213593 (C.D. Cal. Jan. 10, 2011) .................................................................... 2

*Dayals v. Fiji Water*,
 2008 WL 11636970 (C.D. Cal. May 19, 2008) ................................................................... 2

*Deviner v. Electrolux Motor, A.B.*,
 844 F.2d 769 (11th Cir. 1988) ............................................................................................. 3

*Hardeman v. Monsanto Co.*,
 997 F.3d 941 (9th Cir. 2021) ............................................................................................... 2

*Hurt v. Coyne Cylinder Co.*,
 956 F.2d 1319 (6th Cir. 1992) ......................................................................................... 3, 8

*ICU Medical, Inc. v. RyMed Technologies, Inc.*,
 752 F. Supp. 2d 486 (D. Del. 2010) .................................................................................... 8

*In re Baycol Prods. Litig.*,
 532 F. Supp. 2d 1029 (D. Minn. 2007) ............................................................................... 3

*In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*,
 499 F. Supp. 3d 505 (S.D. Ohio 2020) ............................................................................ 2, 3

*In re Depakote*,
 87 F. Supp. 3d 916 (S.D. Ill. 2015) ..................................................................................... 2

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
 681 F. Supp. 2d 141 (D. Conn. 2009) ......................................................................... 4, 5, 6

*In re Mirena IUD Prods. Liab. Litig.*,
 169 F. Supp. 3d 396 (S.D.N.Y. 2016) ................................................................................. 4

*In re Second Chance Body Armor, Inc.*,
 421 B.R. 823 (Bankr. W.D. Mich. 2010) ............................................................................ 4

*In re Seroquel Prods. Liab. Litig.*,
 2009 WL 223140 (M.D. Fla. Jan. 30, 2009) ....................................................................... 3

*In re Seroquel*,
 601 F. Supp. 2d 1313 (M.D. Fla. 2009) .......................................................................... 3, 8

*In re Smith & Nephew Birmingham Hip Resurfacing (BHR) Hip Implant Prods. Liab. Litig.*,
   2021 WL 2407566 (D. Md. June 11, 2021) .................................................................................... 2

*In re Viagra Prods. Liab. Litig.*,
   658 F. Supp. 2d 950 (D. Minn. 2009) ......................................................................................... 3

*In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices and PMF Products Liab. Litig.*,
   2011 WL 6740391 (S.D. Ill. Dec. 22, 2011) ........................................................................... 2, 4

*In Re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*,
   2026 WL 587754 (N.D. Cal. Feb. 9, 2026) ................................................................... 1, 5, 7, 9

*Info. Res., Inc. v. Dun & Bradstreet Corp.*,
   1998 WL 851607 (S.D.N.Y. Dec. 8, 1998) ............................................................................. 4, 5

*Inj. Prods. Liab. Litig.*,
   754 F. Supp. 3d 946 (N.D. Cal. 2024) ........................................................................................ 8

*James v. Meow Media, Inc.*,
   300 F.3d 683 (6th Cir. 2002) (applying Kentucky law) ............................................................. 7

*Katzenmeier v. Blackpowder Prods., Inc.*,
   628 F.3d 948 (8th Cir. 2010) ...................................................................................................... 3

*Kirksey v. Schindler Elevator Corp.*,
   2016 WL 7116223 (S.D. Ala. Dec. 6, 2016) .............................................................................. 7

*Knight v. Boehringer Ingelheim Pharms., Inc.*,
   323 F. Supp. 3d 809 (S.D. W. Va. 2018) ................................................................................... 7

*Mahaney ex rel. estate of Kyle v. Novartis Pharms. Corp.*,
   835 F. Supp. 2d 299 (W.D. Ky. 2011) ........................................................................................ 2

*McBroom v. Ethicon*,
   2021 WL 2709292 n.5 (D. Ariz. July 1, 2021) ........................................................................... 8

*McWilliams v. Novartis AG*,
   2018 WL 3369655 (S.D. Fla. July 9, 2018) ............................................................................... 2

*Meridia Products Liability Litigation v. Abbott Laboratories*,
   447 F.3d 861 (6th Cir. 2006) ...................................................................................................... 9

*Munoz v. PHH Mortg. Corp.*,
   478 F. Supp. 3d 945 (E.D. Cal. 2020) ........................................................................................ 9

*Newman ex rel. Newman v. McNeil Consumer Healthcare*,
   No. 10 C 1541, 2013 WL 4460011 (N.D. Ill. Mar. 29, 2013) .................................................... 7

*Nunez v. Coloplast Corp.*,
   2020 WL 2315077 (S.D. Fla. May 11, 2020) ............................................................................. 3

*Schueneman v. Arena Pharmaceuticals, Inc.*,
  2017 WL 3118738 (S.D. Cal. July 21, 2017) .................................................................. 9

*Surefire, LLC v. Jetbeam USA*,
  2014 WL 1512983 (S.D. Cal. Apr. 16, 2014) ................................................................... 8

*United States v. Matthies*,
  319 F. App'x 554 (9th Cir. 2009) .............................................................................. 4, 6

*Wilson v. City of Los Angeles*,
  2020 WL 7711836 (C.D. Cal. July 20, 2020) ................................................................... 5

Rules

Fed. R. Evid. 401 ................................................................................................. 2

Fed. R. Evid. 402 ................................................................................................. 2

Fed. R. Evid. 403 .............................................................................................. 2, 9

Fed. R. Evid. 801(c)(2) .......................................................................................... 4

Fed. R. Evid. 803(8) ........................................................................................... 2, 4

# INTRODUCTION

Defendants move to exclude three categories of evidence: foreign regulatory actions and reports, evidence of how Defendants' platforms operate outside the United States, and evidence of TikTok's foreign ownership. The motion should be denied as to the first two categories. The third is unnecessary; Plaintiff does not intend to characterize TikTok as "foreign-owned" or "Chinese-owned" at trial.

Foreign regulatory evidence is straightforwardly relevant to what Defendants knew and when they knew it. Courts routinely admit foreign government investigations and reports when offered to show notice and knowledge rather than to prove defect or establish a standard of care. That distinction controls the analysis. Plaintiff's evidence will not require the jury to evaluate any foreign regulatory scheme or invite deference to a foreign agency's conclusions. It will simply show that formal investigations, directed at these Defendants and concerning these products, put Defendants on notice of risks.

Defendants' platform operations in other markets are relevant for the same reason that their conduct within the United States is relevant. This evidence shows what Defendants knew and when, and what they were capable of and when, during the time their platforms were used by Breathitt students. Each Defendant deployed protections in other markets and could likewise have reduced the risk of addictive use and mental health harms posed by its platform to minors in the United States, but affirmatively chose not to do so. ECF 2800, Def. MIL 5, at 12. The jury is entitled to know what safety measures Defendants built, for which markets, and why they drew the lines where they did. Indeed, this Court previously relied on such evidence when it denied summary judgment. *In Re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*, 2026 WL 587754, at *9 (N.D. Cal. Feb. 9, 2026). Defendants offer no reason why this evidence is any less probative at trial than it was then.[1]

**I.    The Court Should Admit Evidence About Foreign Regulatory Actions, Reports, and Investigations Regarding Defendants.**

What did Defendants know and when did they know it? To fully answer this key question, the jury must be able to consider foreign regulatory actions, reports, and investigations regarding Defendants. Because Defendants' "compan[ies] transcend[] international boundaries," evidence about foreign

---

[1] Defendants' motion also makes several arguments related to Section 230 and the First Amendment. These are unsuccessful for the reasons laid out in Plaintiff's opposition to Defendants First Motion in Limine.

1  regulatory actions "bear[s] on what information the company's executives were privy to and when they recognized the alleged connection" between their products and Breathitt's harms. *Mahaney ex rel. estate of Kyle v. Novartis Pharms. Corp.*, 835 F. Supp. 2d 299, 318 (W.D. Ky. 2011). While choice of law rules determine the substantive laws that apply to this litigation, there are no such geographic limits on Defendants' knowledge about the dangers of their products. This evidence is relevant, non-prejudicial, and admissible under the public records hearsay exception. Fed. R. Evid. 401, 402, 403, 803(8).

***This evidence is relevant and is not unfairly prejudicial.*** Defendants' insistence that foreign regulatory evidence is inherently irrelevant, Def. MIL 5 at 2, is contradicted by Ninth Circuit precedent such as *Hardeman v. Monsanto Co*., 997 F.3d 941, 967 (9th Cir. 2021), where an international regulatory body's classification of a chemical was properly admitted. Here, Plaintiff intends to use evidence of foreign regulatory actions, reports, and investigations to show Defendants' notice and knowledge of the dangers of their platforms. Courts generally permit foreign regulatory evidence under Rules 401 and 403 when offered for this purpose. *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*, 499 F. Supp. 3d 505, 521 (S.D. Ohio 2020); *see also In re Depakote*, 87 F. Supp. 3d 916, 927 (S.D. Ill. 2015) (foreign regulatory evidence offer to show notice is relevant and non-prejudicial)*; In re Smith & Nephew Birmingham Hip Resurfacing (BHR) Hip Implant Prods. Liab. Litig.*, 2021 WL 2407566, at *5 (D. Md. June 11, 2021) (same); *McWilliams v. Novartis AG*, 2018 WL 3369655, at *6 n.2 (S.D. Fla. July 9, 2018) (same); *Dayals v. Fiji Water*, 2008 WL 11636970, at *2 (C.D. Cal. May 19, 2008) (excluding evidence of foreign trademark when offered to prove existence of domestic trademark, but permitting it when "relevant to a particular factual issue in this action").

Conversely, when courts exclude evidence of foreign regulatory action, it is generally because "the evidence is put forth to demonstrate a product defect or a breach of the duty of care," not to show notice. *In re Davol*, 499 F. Supp. 3d at 521; *see also, e.g.*, *Burke v. City of Santa Monica*, 2011 WL 13213593, at *27 (C.D. Cal. Jan. 10, 2011) (excluding report on application of foreign use of force standards in excessive force case). This distinction reflects the fact that admitting foreign regulatory evidence to show notice and knowledge will actively "assist[] the jury" in its deliberations, *In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices and PMF Products Liab. Litig.*, 2011 WL 6740391, at *2 (S.D. Ill.

Dec. 22, 2011)—and does not require the defendant to "contextualize the action and refute any adverse determinations." *In re Davol*, 499 F. Supp. 3d at 521.

Defendants cite two cases from the Sixth Circuit and Eleventh Circuit in which foreign regulatory evidence was excluded despite the party offering it to show notice and knowledge: *Deviner v. Electrolux Motor, A.B.*, 844 F.2d 769 (11th Cir. 1988) and *Hurt v. Coyne Cylinder Co.*, 956 F.2d 1319 (6th Cir. 1992), which also cites *Deviner*. These opinions cannot support the weight of the arguments piled upon them. *Deviner* held only that the district court did not abuse its discretion in excluding evidence related to foreign law, not that such exclusion was *required*, and offers almost no reasoning for this holding. 844 F.2d at 773. And in *Hurt*, the court cited *Deviner* in a single sentence without any further analysis in coming to its bare conclusion that foreign regulatory evidence is excludable. 956 F.2d at 1327.

Defendants cite other cases from outside the Ninth Circuit that rely on *Deviner* and *Hurt* but they, too, largely fail to consider the purpose for which the foreign regulatory evidence is offered or to acknowledge contrary precedent. The only other appellate decision Defendants cite is *Katzenmeier v. Blackpowder Prods., Inc.*, 628 F.3d 948, 950 n.4 (8th Cir. 2010). There, the Eighth Circuit agreed in passing with the district court's decision to exclude foreign regulatory evidence. *Id.* But it cited only *Hurt* and *Deviner* for this conclusion and noted that the issue had not been briefed by the plaintiffs. *Id.* Defendants' remaining citations are to cases from district courts in Florida and Minnesota.

As to the Minnesota cases, neither considered the purpose of the foreign regulatory evidence offered nor analyzed contrary decisions, instead relying on the fleeting logic of *Deviner* and *Hurt*. *See In re Viagra Prods. Liab. Litig.*, 658 F. Supp. 2d 950, 965 (D. Minn. 2009); *In re Baycol Prods. Litig.*, 532 F. Supp. 2d 1029, 1054 (D. Minn. 2007). The district court decisions from Florida are similarly flawed in their reasoning. *See In re Seroquel*, 601 F. Supp. 2d 1313, 1318-19 (M.D. Fla. 2009) (failing to analyze contrary decisions); *In re Seroquel Prods. Liab. Litig.*, 2009 WL 223140, at *6 (M.D. Fla. Jan. 30, 2009) (failing to analyze contrary decisions and citing *Deviner*); *Nunez v. Coloplast Corp.*, 2020 WL 2315077, at *13 (S.D. Fla. May 11, 2020) (failing to analyze contrary decisions). Furthermore, all are drug and device cases, involving products which by law must be affirmatively approved by U.S. regulators before they can enter the market. In that context, evidence of foreign regulatory action presents a substantially

higher risk of jury confusion and prejudice, given the potential conflict in applicable law. Here, by contrast, Defendants' products have largely evaded domestic regulatory oversight since launch.

In further support of their jury confusion argument, Defendants cite *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396 (S.D.N.Y. 2016). But that case does not help their argument. It held that an expert was not qualified to testify on foreign regulatory issues under Rule 702. *Id.* at 477-78. But it explicitly noted that evidence about notice through foreign regulatory actions *could* be admitted through avenues other than the expert. *Id.* at 477. In any event, to the extent the Court is concerned about jury confusion, that is easily curable through a jury instruction making clear that foreign determinations do not bind the jury. *See In re Yasmin*, 2011 WL 6740391, at *2 (suggesting instruction to address confusion).

***Any preliminary foreign government reports are not inadmissible hearsay***. This is so for two reasons. First, if preliminary foreign government reports are offered to show that Defendants received notice of addiction risks, not to prove the truth of the regulator's findings, they fall outside the hearsay rule entirely. Fed. R. Evid. 801(c)(2); *United States v. Matthies*, 319 F. App'x 554, 557 (9th Cir. 2009). Second, to the extent any preliminary regulatory reports *are* offered for the truth of factual findings, rather than solely for notice, they would be independently admissible under the public records exception. Fed. R. Evid. 803(8).

Defendants misconstrue the application of the public records exception. There is no requirement that government investigative reports be final before they qualify for the exception. *See* Fed. R. Evid. 803(8*)*. While finality is one factor to be considered, it "is not the only factor." *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 681 F. Supp. 2d 141, 154 (D. Conn. 2009) (collecting cases). Courts have admitted interim reports, tentative conclusions, meeting minutes, and unreleased draft reports under Rule 803(8). *Id.* at 155. There is also no requirement that Defendants have the opportunity to "exercise [their] right to defense," Def. MIL 5 at 4-5, before the issuing government body. *See Info. Res., Inc. v. Dun & Bradstreet Corp.,* 1998 WL 851607, at *1-*2 (S.D.N.Y. Dec. 8, 1998) (admitting foreign preliminary investigative findings issued without a hearing). Instead, courts generally admit investigative reports that have been publicly released and endorsed by the responsible government body, regardless of whether or not they're termed "preliminary". *See In re Second Chance Body Armor, Inc.*, 421 B.R. 823, 831 (Bankr. W.D. Mich. 2010) (differentiating admissible findings made publicly available by department

1    from inadmissible "internal, interim work-product writings or records;" collecting cases). Cases where courts have found interim reports do not qualify for the public records exception have typically involved purely internal reports that have not been endorsed by the responsible government body or undertaken under the supervision of a senior employee. *See e.g.*, *Wilson v. City of Los Angeles*, 2020 WL 7711836, at *27-28 (C.D. Cal. July 20, 2020) (excluding preliminary report that was not publicly released and was not "reviewed by a higher up . . . much less adopted by the agency").

The preliminary reports that Plaintiff anticipates offering as evidence or argument are easily distinguishable from those that courts have excluded. For example, the European Commission's preliminary TikTok finding reflects a formal decision by the Commission—based on a years-long investigation—that the Commission publicly announced. Def. MIL 5 at 3 n.6. Several courts have admitted preliminary European Commission findings issued under nearly identical processes. *In re EPDM*, 681 F. Supp. 2d at 154-55; *Info. Res.*, 1998 WL 851607, at *1-*2.

II.    **The Court Should Deny Defendants' Motion to Exclude Evidence of Their Platform Operations in Foreign Markets**

Defendants ask this Court to exclude all evidence of how their platforms operate outside the United States. The motion's breadth obscures its real target. What Defendants euphemistically call "foreign platform evidence" is evidence of Defendants' own design decisions and engineering capacity for the same products, built on the same engineering infrastructure, serving the same function. It is evidence of their decisions to deploy safety protections for children outside of the United States and withhold them from children within the United States. Defendants state that they "will not argue that the features implemented in foreign countries [] were not feasible as a technical or financial matter in the U.S." Def. MIL 5 at 12. But that concession does not make this evidence irrelevant. It makes this evidence undisputed.

This Court has already considered—and relied upon—the evidence Defendants now seek to exclude. In denying summary judgment, the Court cited TikTok's decision to withhold effective screen-time management tools in the United States that it had deployed on Douyin (the Chinese version of TikTok), including screen-blocking reminders and forced-rest periods, and the documented differences between the two versions of the same product. *In Re: Social Media Adolescent Addiction/Personal Injury*

*Products Liability Litigation*, 2026 WL 587754, at *9. Defendants identify no change in the record or other reason to revisit that determination.

***This evidence is relevant.*** Defendants' relevance argument begins and ends with the assertion that, because Breathitt's students used platforms in the United States, evidence of how those platforms operate elsewhere is irrelevant. That argument presumes that foreign deployment is the relevant fact. It is not. The relevant facts are that Defendants knew how to protect children, chose to protect some children and not others, and made that choice to preserve revenue. This evidence is relevant under Rule 401 because it bears on defect, knowledge, and the reasonableness of the design decisions Defendants made for the U.S. market.

The record is specific to each platform. YouTube built age-inference models using data signals already available on the platform and deployed them in the EU and United Kingdom beginning in 2020, requiring no new data collection. ECF No. 2533 at 186–87. Those models triggered bedtime reminders, take-a-break prompts, and autoplay disabled by default. *Id*. at 187. YouTube did not use age inference to deploy any of those protections in the United States until February 2025. *Id.* at 187–88. YouTube's CEO attributed the delay in part to concern that adults incorrectly classified as minors would receive a "degraded" ad experience. *Id.* at 188.

In July 2023, Meta deployed ID verification in the EU to prevent adults from misrepresenting their age to obtain an ad-free experience. ECF No. 2533 at 77. The same tool could have been deployed in the United States, in reverse, to identify actual minors on the platform. But Meta chose not to, citing "the potential revenue impact it can cause." *Id*. Meta knew that at least 30–40% of its teen users were registered as adults and that its age gate was "pretty straightforward for people" to circumvent. *Id*. at 74. The verification technology existed. Meta weighed it against the revenue and chose the revenue.

Snap knew that its birthday registration flow, which defaulted every new user to age 18, caused children to bypass the birthday field entirely and register as adults, thereby going undetected by the platform's safety features. Snap changed the default for users in the U.K., ECF No. 2533 at 143, but ███████████████████████████████████████████████████████████████████ in the U.S. *Id.*; ECF No. 2575-13 at 174:2-19.

ByteDance built Douyin and TikTok on the same algorithm and core features. ECF No. 2533 at 107. TikTok's own witness confirmed that nothing prevented the company from launching TikTok with every safety feature already in place on Douyin. *Id*. at 115. Douyin imposed hard daily time limits, nighttime lockouts, forced rest periods, and real-name authentication for minors. By contrast, TikTok offered U.S. users an age gate that accepted whatever birthday a child entered—and when a minor lied, the safety architecture never activated. *Id*. at 107–08, 113–14. Internal documents explain why the company's goal was "not to reduce time spent" but to increase "DAU [daily active users] and retention." *Id*. at 112.

The evidence above is relevant to every theory Breathitt will take to trial, including not only feasibility of safer alternatives but what Defendants knew about the risks of their own products and why they chose not to act on that knowledge here.

Kentucky imposes a "universal duty of care" requiring every person to "exercise ordinary care in his activities to prevent foreseeable injury." *James v. Meow Media, Inc*., 690 (6th Cir. 2002) (applying Kentucky law). The key question for trial on the negligence claim is whether Defendants acted reasonably in light of what they knew. Evidence that Defendants identified specific addiction risks, engineered features to mitigate those risks, deployed those features on other versions of the same products, and then chose not to deploy them in the United States to protect kids is directly probative of the reasonableness of their conduct. *See Knight v. Boehringer Ingelheim Pharms., Inc.,* 323 F. Supp. 3d 809, 826–27 (S.D. W. Va. 2018) (foreign labels and company data sheet admissible to show manufacturer's knowledge and beliefs about risk; probative value not substantially outweighed by danger of confusion); *Kirksey v. Schindler Elevator Corp*., 2016 WL 7116223, at *6 (S.D. Ala. Dec. 6, 2016) (evidence that manufacturers in other countries built and installed safer designs during the relevant period was probative of knowledge); *Newman ex rel. Newman v. McNeil Consumer Healthcare*, No. 10 C 1541, 2013 WL 4460011, at *13 (N.D. Ill. Mar. 29, 2013) (Defendants' foreign labeling is probative of "Defendants' knowledge of the risks and willfulness in not sharing certain of those risks").

The evidence is also independently admissible to show duty of care and causation. This Court has held that Defendants are under a duty to warn where they possessed "independent knowledge of a foreseeable risk of harm," *In Re: Social Media Adolescent Addiction/Personal Injury Products Liability*

7

1  *Litigation*, 2026 WL 587754, at *18, and that they may be liable for failing to warn "of known risks of
2  addiction attendant to any platform features or as to platform construction in general*," In re Soc. Media*
3  *Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.,* 754 F. Supp. 3d 946, 963-64 (N.D. Cal. 2024).
4  Defendants knew about the risks of addiction and deployed anti-addiction tools abroad because they
5  understood those tools addressed real risks to minors. But Defendants chose not to disclose those risks (or
6  provide those tools) to American users, parents, or schools.

7  Defendants contend that foreign platform evidence is irrelevant because those platforms "were
8  developed and are operated under a different set of laws and regulations that reflect different cultural
9  norms and different regulatory schemes." Def. MIL 5 at 12. If differing laws or cultural norms explained
10 the design divergence, Defendants' internal documents would say so. They do not. YouTube delayed its
11 age-inference model to avoid degrading ad revenue. ECF No. 2754-26 at 199:11-15. TikTok rejected
12 stronger screen-time tools to protect "stay duration." ECF No. 2533 at 113-14. Meta declined ID
13 verification for teens because of "the potential revenue impact it can cause." ECF No. 2533 at 144. Snap
14 ████████████████████████████████████████████████████████████████. ECF No. 2575-13 at
15 174:2-19. No foreign cultural norm required any of those choices. Defendants' own employees made
16 them, for their own commercial reasons, and documented them in their files.

17 The cases cited by Defendants do not compel a different conclusion. Those cases largely divide
18 into two groups. In the first group, the courts excluded evidence about products that were unconnected to
19 the claims at issue. *ICU Medical, Inc. v. RyMed Technologies, Inc.*, 752 F. Supp. 2d 486, 493 (D. Del.
20 2010) (excluding evidence of alleged prior copying of unrelated medical devices not at issue in the patent
21 litigation); *McBroom v. Ethicon*, 2021 WL 2709292, at *2 n.5 (D. Ariz. July 1, 2021)(noting in footnote
22 that expert opinions concerning three pelvic mesh devices other than those implanted in the plaintiff were
23 "not relevant in this case"); *Surefire, LLC v. Jetbeam USA*, 2014 WL 1512983, at *2 (S.D. Cal. Apr. 16,
24 2014) (denying discovery into geographic origin of patent plaintiff's manufacturing components as
25 irrelevant to any claim or defense). The second group involves foreign regulatory standards presented
26 without adequate context, not evidence of how a defendant designed and operated its own products in
27 foreign markets. *In re Seroquel*, 601 F. Supp. 2d at 1318; *Hurt*, 956 F.2d at 1327; *see also supra* page 3
28

(describing the inapplicability of *Seroquel* and *Hurt* to foreign regulatory evidence). Neither group bears on the admissibility of a defendant's own design choices regarding the same product in a different market.[2]

***Rule 403 does not require exclusion.*** Rule 403 permits exclusion only where probative value is "substantially outweighed" by the danger of unfair prejudice or confusion. Fed. R. Evid. 403. "That burden is significant, as exclusion under Rule 403 is an extraordinary remedy to be used sparingly." *Munoz v. PHH Mortg. Corp.,* 478 F. Supp. 3d 945, 965 (E.D. Cal. 2020) (cleaned up). The evidence here easily clears Rule 403. This evidence goes to knowledge and the deliberateness of Defendants' design choices—core trial issues on both of Breathitt's theories. A jury asked to decide whether Defendants acted reasonably is entitled to know that Defendants built safer versions of the same products and chose not to deploy them.

As with the admission of foreign regulatory actions, Defendants' prejudice argument rests on the premise that admitting this evidence will require "delving into the foreign laws, regulations, and priorities" of other countries, spawning mini-trials on comparative regulatory policy. Def. MIL 5 at 12. That concern is unfounded. If there is any prejudice in this calculus, it would accrue to Plaintiffs were this evidence to be excluded. Defendants ask this Court to prevent the jury from learning that they built safer versions of the same products for children in other markets and made a documented, revenue-driven decision not to extend those protections to the children of Breathitt County. Excluding that evidence would not protect the jury from confusion. It would deprive the jury of the evidence it needs to evaluate the central question at trial: whether Defendants acted reasonably in light of what they knew. To the extent any individual exhibit raises a discrete Rule 403 concern, the Court retains authority to address it on an exhibit-by-exhibit basis at trial. Blanket pretrial exclusion is not warranted.

### III.    Plaintiff Does Not Intend to Offer Evidence of Foreign Ownership.

Defendants' request that the Court exclude evidence that TikTok is foreign-owned is unnecessary. Plaintiff does not anticipate offering evidence or argument about the nationality of TikTok's ownership.

---

[2] The remaining cases are also not on point. *Schueneman v. Arena Pharmaceuticals, Inc.*, 2017 WL 3118738, at *4 (S.D. Cal. July 21, 2017) denied discovery into conduct that occurred after the class period. *Meridia Products Liability Litigation v. Abbott Laboratories*, 447 F.3d 861, 867 (6th Cir. 2006) dealt with summary judgment, not the admissibility of evidence, and was premised on the foreign conduct not creating a triable issue of fact. Here the Court has already found that foreign conduct contributes to creating a triable issue of fact. *See In Re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*, 2026 WL 587754, at *9 (N.D. Cal. Feb. 9, 2026) (discussing Douyin features).

Evidence of TikTok's *conduct* in other markets—including decisions made by ByteDance personnel based in China—is offered as evidence of Defendants' design choices and knowledge. But it will not be offered by Plaintiffs for the purpose of establishing TikTok's national origin or ownership structure. For the avoidance of doubt, Plaintiff will not characterize TikTok by reference to its foreign ownership or affiliation with the Chinese government. In particular, Plaintiff will not refer to TikTok as "foreign-owned" or "Chinese-owned" and agree that such comments would be unnecessarily inflammatory. Defendants' corporate callousness—not their country of ownership—is what turned the children of Breathitt into metrics to manipulate.

## CONCLUSION

The Court should not exclude evidence related to foreign regulatory actions, reports, or investigations, or evidence related to operation of Defendants' platforms overseas. This evidence is relevant, highly probative, and would not cause Defendants unfair prejudice.

Dated: March 9, 2026                               Respectfully submitted,

By: /s/ *Previn Warren*

Lexi J. Hazam
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

RONALD E. JOHNSON, JR.
SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KT 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com
semery@justicestartshere.com

Counsel for Breathitt

ANDRE M. MURA
**GIBBS MURA LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: 510-350-9700
amm@classlawgroup.com

Plaintiffs' Steering Committee Leadership

**ATTESTATION**

I, Abigail Burman, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: March 9, 2026

By: */s/ Abigail Burman*