[*Submitting Counsel on Signature Page*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION** | MDL No. 3047 |
| | Case No. 4:22-md-3047-YGR |
| This Document Relates to: *Breathitt County Board of Education v. Meta Platforms, Inc., et al.,* Case No.: 4:23-CV-01804 | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 3 TO EXCLUDE LAY WITNESS TESTIMONY REGARDING ALLEGED STUDENT "ADDICTION" OR CAUSATION OF MENTAL HEALTH HARMS** |

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................... 1

II.   ARGUMENT .......................................................................................................... 2

    A.    Rule 701 Does Not Preclude the School District Lay Witnesses from Using the Words "Addictive" or "Compulsive" to Describe Students' Social Media Use. ..... 2

    B.    The Testimony of Breathitt Fact Witnesses Does Not Encompass Medical Causation. ............................................................................................................... 5

    C.    The Testimony at Issue Should Not be Precluded Under Rule 403. ....................... 7

    D.    Cross-Examination and a Limiting Instruction Address Any Remaining Concerns. 8

III.  CONCLUSION ...................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Crawford v. City of Bakersfield*,
   944 F.3d 1070 (9th Cir. 2019) .................................................................................................. 4

*Drake v. R.J. Reynolds Tobacco Co.*,
   2015 WL 12746105 (S.D. Fla. Jan. 29, 2015) ........................................................................... 3

*Farfaras v. Citizens Bank and Tr. of Chicago*,
   433 F.3d 558 (7th Cir. 2006) ........................................................................................... 1, 3, 4, 8

*Food & Water Watch, Inc. v. United States Env't Prot. Agency*,
   2024 WL 4035924 (N.D. Cal. Jan. 18, 2024) ............................................................................ 3

*Gargano v. Plus One Holdings, Inc.*,
   2023 WL 5186237 (S.D. Cal. Aug. 11, 2023) ....................................................................... 1, 4

*Ishee v. Fed. Nat'l Mortg. Ass'n*,
   2014 WL 6686705 (S.D. Miss. Nov. 26, 2014) ..................................................................... 2, 6

*Lillie v. ManTech Int'l Corp.*,
   2018 WL 6323076 (C.D. Cal. Dec. 3, 2018) ............................................................................. 6

*Sanchez v. Master Prot.*, LP,
   2022 WL 2092995 (C.D. Cal. May 4, 2022) ............................................................................. 2

*Sidibe v. Sutter Health*,
   103 F.4th 675 (9th Cir. 2024) .................................................................................................. 2, 7

*Sowers v. R.J. Reynolds Tobacco Co.*,
   2015 WL 12839775 (M.D. Fla. Jan. 23, 2015) ...................................................................... 3, 6

*United States v. Castro-Juarez*,
   654 F. App'x 364 (9th Cir. 2016) .............................................................................................. 6

*United States v. Gadson*,
   763 F.3d 1189 (9th Cir. 2014) ........................................................................................... 3, 8, 9

*Vincent v. Reyes*,
   2021 WL 4262289 (N.D. Cal. Sep. 20, 2021) ........................................................................... 6

*Williams v. McDermott Int'l Inc.*,
   2022 WL 1664552 (W.D. La. May 25, 2022) ........................................................................... 6

**Rules**

Federal Rule of Evidence 701 ................................................................................................ passim

## I. INTRODUCTION

Defendants ask the Court to keep the jury from hearing teachers and school administrators use ordinary language to describe behavior they observe every day among Breathitt students. Defendants' motion rests on a false premise—that when educators describe students' social media use as "addictive" or "compulsive," or describe changes they have observed as social media use increased, they are attempting to render clinical diagnoses or medical causation opinions. They are not. Defendants seek to transform ordinary lay observations into expert testimony to manufacture a basis for exclusion that does not exist.

Defendants' motion would exclude words that Breathitt teachers and administrators use to describe behavior they regularly observe among their students. These witnesses interact with students daily in classrooms, hallways, and school activities and observe firsthand how students engage with social media. When these educators describe that behavior as "addictive" or "compulsive," they are not rendering clinical diagnoses; they are using common descriptive language in its ordinary, non-clinical sense to convey what they observe. The same is true for the purported "causation" testimony of Breathitt High School counselor Kera Howard, who simply described changes she observed in students' emotional states as social media use among the student body increased.

Rule 701 permits this type of perception-based testimony. Lay witnesses may testify about perceived emotional states and behavioral observations when those opinions arise from firsthand experience and do not purport to be clinical diagnoses. *Gargano v. Plus One Holdings, Inc.*, 2023 WL 5186237, at *2 (S.D. Cal. Aug. 11, 2023). While Defendants' motion assumes that jurors will confuse this testimony with medical diagnoses or medical causation opinions, Courts recognize that jurors readily distinguish between a witness's ordinary descriptive language and an expert's use of the same word as a defined psychological condition. *See Farfaras v. Citizens Bank and Tr. of Chicago*, 433 F.3d 558, 565-66 (7th Cir. 2006) ("[A] reasonable jury can be expected to understand the difference between lay use of an adjective and an expert's use of the same word to describe a specific psychological condition."). Thus, when a witness observes a person's emotional state before and after particular conduct and forms an opinion about the effect of that conduct, the

1  testimony reflects the type of everyday reasoning Rule 701 permits. *See, e.g., Ishee v. Fed. Nat'l Mortg. Ass'n*, 2014 WL 6686705, at *1-2 (S.D. Miss. Nov. 26, 2014).

Courts in this circuit likewise recognize that while a lay witness may not render a medical diagnosis, the witness may describe emotional conditions in ordinary terms—such as feeling "depressed," "anxious," or "sleep deprived"—because those descriptors reflect perceptions rather than clinical opinions. *Sanchez v. Master Prot.,* LP, 2022 WL 2092995, at *2 (C.D. Cal. May 4, 2022). And if Defendants believe clarification is necessary, cross-examination provides the appropriate mechanism. Indeed, the very testimony cited by Defendants underscores the point because the witnesses repeatedly explained that they were not offering medical diagnoses or causation and did not claim any clinical expertise. ECF No. 2797 at 3-4 & n.3, 6 & n.4, 7-8 & n.6.

Finally, Defendants seek to exclude the challenged testimony under Rule 403, arguing that the mere mention of the word "addiction," references to social media use as "compulsive," or testimony suggesting detrimental effects of social media use will prejudice or mislead the jury. ECF No. 2797 at 6–8. But Defendants' support for that argument amounts to nothing more than speculation that the testimony will harm them at trial. *See id.* The Ninth Circuit has made clear that exclusion under Rule 403 "must be cautious and sparing." *Sidibe v. Sutter Health*, 103 F.4th 675, 691 (9th Cir. 2024) (internal quotation marks omitted). Defendants cannot meet that demanding standard here.

For these reasons, Defendants' motion should be denied. The challenged testimony reflects ordinary perception-based observations admissible under Rule 701, not medical diagnosis or causation testimony, and presents no basis for exclusion under Rule 403.

**II.    ARGUMENT**

    **A.    Rule 701 Does Not Preclude the School District Lay Witnesses from Using the Words "Addictive" or "Compulsive" to Describe Students' Social Media Use.**

Federal Rule of Evidence 701 permits lay witnesses to offer opinion testimony when it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. The Ninth Circuit

recognizes that such testimony routinely reflects a witness's experience and observations, and may draw on "a wealth of personal information, experience, and education, that cannot be placed before the jury." *United States v. Gadson*, 763 F.3d 1189, 1208 (9th Cir. 2014). Indeed, "the experience of the witness may properly impact the observation." *Food & Water Watch, Inc. v. United States Env't Prot. Agency*, 2024 WL 4035924, at *12 (N.D. Cal. Jan. 18, 2024). Here, teachers and administrators formed their observations through daily interactions with students in Breathitt schools. The testimony Defendants challenge reflects observations they developed through years of working with students.

Contrary to this settled principle, Defendants propose a per se rule—unsupported by any authority—that the word "addiction" is "too far removed from the witnesses' own perceptions to be admitted as lay opinion testimony under Rule 701." ECF No. 2797 at 2. The cases relied upon by Defendants are readily distinguishable because they involved witnesses attempting to offer testimony that amounted to a diagnosis of a *specific plaintiff's* actual addiction to cigarettes. *See, e.g., Drake v. R.J. Reynolds Tobacco Co.*, 2015 WL 12746105, at *2-3 (S.D. Fla. Jan. 29, 2015) (allowing for a limiting jury instruction in the event the lay witness described the decedent as "addicted" to cigarettes); *Sowers v. R.J. Reynolds Tobacco Co.*, 2015 WL 12839775, at *4-5 (M.D. Fla. Jan. 23, 2015), *aff'd,* 975 F.3d 1112 (11th Cir. 2020) (seeking to preclude lay witness testimony that the decedent was addicted rather than testimony describing decedent's smoking habits).

By contrast, Breathitt's witnesses did not use the term "addicted" to diagnose any individual student. They used it to describe behavior they observed across the student body as a whole. *See, e.g.*, ECF No. 2797 at 1-2 (Jeremy Hall testifying about his observation that students were "just scrolling through and looking and stuff and being like almost what I would call addicted to it."). There is no suggestion that these witnesses offered a clinical diagnosis of any student. They used an adjective to describe behavior they observed. Defendants' own citations confirm this point: they quote a witness as stating "I just mean that—that kids are on social media a lot." *Id*. at 7.

Courts routinely permit lay witnesses to use everyday language that may also appear in clinical or technical contexts when the witness uses the term descriptively rather than as a diagnosis. *See Farfaras*, 433 F.3d at 565–66 (explaining that a jury can distinguish between a lay witness's

use of a word as an ordinary descriptor and an expert's use of the same word as a defined psychological condition). Describing observed behavior as "addictive" or "compulsive" in the ordinary sense does not transform perception-based testimony into a medical diagnosis; here, the witnesses simply used everyday language to convey what they observed among students.

Defendants also challenge the perception of these witnesses by asserting that they had no "actual knowledge about the students' mental states or perceptions and [their testimony] is therefore nothing more than rank speculation and inadmissible opinion." ECF No. 2797 at 3. This argument not only ignores the educators' experience and the role that experience plays in informing their observations that students' social media use appears "addictive" or "compulsive," but it is also contrary to law. As noted above, "[a] witness's testimony on their perception that someone appeared to be in a particular emotional state is proper lay testimony so long as the jury is unlikely to believe that the witness was offering a clinical opinion or diagnosis." *Gargano*, 2023 WL 5186237, at *2. "[A] reasonable jury can be expected to understand the difference between lay use of an adjective and an expert's use of the same word to describe a specific psychological condition." *Farfaras*, 433 F.3d at 565.

Defendants' challenge to the witnesses' characterization of the students' social media use as "addictive" or "compulsive" on the grounds that these characterizations require "scientific, technical, or other specialized knowledge" is equally unavailing. Defendants correctly summarize the law as holding that it would be improper lay opinion to offer a diagnosis, but ignore that the parties appear to agree that the lay witnesses in question are not seeking to offer such a diagnosis. *See, e.g.*, ECF No. 2797 at 2 (citing *Crawford v. City of Bakersfield*, 944 F.3d 1070, 1079 (9th Cir. 2019)). Indeed, Defendants themselves cite substantial testimony from these witnesses explaining that they are not qualified to medically diagnose students. ECF No. 2797 at 3-4 & n.3. Having elicited those clarifications during deposition, Defendants cannot now seek to exclude the testimony by recasting those same lay-observation descriptions as clinical diagnoses. Under these circumstances, a jury can be expected to understand that the witness is using the terms as descriptors rather than as defined clinical terms of art. *Gargano*, 2023 WL 5186237, at *2; *Farfaras*, 433 F.3d at 565-66.

Finally, Defendants' blending of their argument regarding the word "addiction" and the word "compulsion" is an effort to hide the fact that there is almost no support for precluding witnesses from using the word "compulsive" to describe students' social media use. Defendants attempt to elevate the word "compulsive" to a term of art by arguing that compulsive behavior is one of the "clinical criterion used in assessing addiction or 'use disorder'," and then seek to use the deposition testimony of one of Plaintiff's experts, Dr. Lembke, to turn it into something that requires diving into the minds of students. ECF No. 2797 at 4. Describing students' social media use as "compulsive" is something the general public readily understands. The fact that compulsive behavior may appear as one factor in certain clinical assessments does not transform every lay description of compulsive conduct into a medical diagnosis.

### B. The Testimony of Breathitt Fact Witnesses Does Not Encompass Medical Causation.

Defendants challenge a second category of testimony—statements by educators describing effects they observed among students as social media use increased—claiming that such observations amount to improper "medical causation" testimony. ECF No. 2797 at 6. Like the testimony discussed above, the school counselor statements highlighted by Defendants reflect the witness's observations based on her direct experience with the Breathitt student body—not medical causation opinions.[1] The witness was simply describing behavioral changes she observed through her daily interactions with students, and the fact that students may seek guidance or counseling from school personnel does not transform those observations into expert opinions. The statements cited by Defendants contain general phrases like "negative effects," "impacts student[s'] mental health," "mental health deterioration," and "students' wellbeing." *Id*. School employees generally, and school counselors in particular, have observed students as social media use has become more prevalent in their schools and have observed corresponding changes in student behavior. This type of before and after observation is permissible under Rule 701.

Defendants' authorities do not support the exclusion of this testimony. For example, in *Vincent v. Reyes*, the court simply stated that, "Defendants correctly assert Plaintiff may not testify

---

[1] The parties are well aware that expert testimony will be brought to show causation.

on the medical cause of his injuries, since he is not an expert rendering medical diagnosis; however, Plaintiff may testify about his mental and physical condition, as well as any treatment received, since those observations stem from his perception." 2021 WL 4262289, * 1 (N.D. Cal. Sep. 20, 2021). Plaintiff's witness here is also not testifying to the medical cause of anyone's injuries. *See also Lillie v. ManTech Int'l Corp.*, 2018 WL 6323076, at *5 (C.D. Cal. Dec. 3, 2018) (". . . Rule 701 has been used to bar lay witnesses from testifying as to their opinion on causation where such a determination would require the experience of an expert."); *Sowers*, 2015 WL 12839775, at *5 (precluding lay witness testimony opining that the decedent was addicted to cigarettes, while allowing testimony regarding behavior and condition relevant to addiction).[2] The distinction between medical causation opinions that require specialized knowledge and generalized opinions that are based on mere observation was described in *Ishee*:

> Defendants are correct that lay witnesses may not provide an opinion which "requires specialized medical knowledge." Such testimony "is not the type of opinion that one could reach as a process of everyday reasoning." However, Defendants have not cited to any authority applying that general principle to a case like this one. ***Dixon allegedly witnessed some of Plaintiff's interactions with Defendants, witnessed Plaintiff's emotional state during and after such interactions, and formed an opinion as to the causation of Plaintiff's emotional state***. The Court believes it arguable that such opinion testimony is the "product of reasoning processes familiar to the average person in everyday life," and arises from "common sense" and "firsthand observation." One does not need a medical degree to observe another person and discern whether they are upset.

2014 WL 6686705, at *1 (emphasis added) (internal citations omitted); *see also Williams v. McDermott Int'l Inc.*, 2022 WL 1664552, at *6-7 (W.D. La. May 25, 2022) (citing *Ishee*). Again,

---

[2] Defendants' citation to *United States v. Castro-Juarez*, 654 F. App'x 364 (9th Cir. 2016), is even further off the mark. In *Castro-Juarez*, the court was considering an affidavit submitted by the defendant to defeat summary judgment in a case where the government was seeking to revoke defendant's citizenship for willfully making false statements about her criminal past in her citizenship application. *Id*. at 366. In the affidavit, the defendant asserted, among other things, "that the repeated sexual abuse she suffered as a child, as well as her time spent in foster care during adolescence, caused her to repress her memories of her years of illegal drug use" and that it wasn't until years later after many hours of therapy that she realized her childhood trauma had caused her to repress these memories. *Id*. The court rejected the affidavit as self-serving and devoid of details as to how that trauma resulted in repressed memory. *Id*. Without discussing Rule 701, the court also noted that even if the defendant had attempted to connect her memory loss to childhood trauma, she was not qualified as a layperson to make that determination. *Id*. at 366-67. That is a far cry from educators observing that their students' use of social media appears addictive or compulsive.

1  this is not a case where witnesses sought to opine on medical causation but one where they observed
2  firsthand the impact of certain activities on the student body. Teachers and school administrators,
3  informed by their professional experience and daily interactions with students, observed the impact
4  of social media use on students' mental health. This is not "medical causation" testimony; rather,
5  it reflects the type of observation that arises from ordinary reasoning and common sense. Rule 701
6  permits such testimony.

### C. The Testimony at Issue Should Not be Precluded Under Rule 403.

Rule 403 sets a high bar for excluding relevant evidence, and application "must be cautious and sparing." *Sidibe*, 103 F.4th at 691. Defendants ask the Court to exclude ordinary fact testimony from teachers and school administrators based solely on the words those witnesses used to describe what they observed. Rule 403 does not permit that result.

Defendants argue the testimony should be excluded because its "probative value is substantially outweighed" by the risk of unfair prejudice or misleading the jury. ECF No. 2797 at 6–8. But Defendants offer no authority applying Rule 403 to exclude testimony like this. The observations of Breathitt's teachers and administrators are central to the jury's understanding of how social media use affected students and the school district. Excluding that testimony based on word choice would prevent the jury from appreciating its significance. Defendants' speculation about prejudice or jury confusion falls well short of Rule 403's demanding standard.

*First,* Defendants argue that they will be prejudiced by the challenged testimony because they did not obtain discovery of specific students. ECF No. 2797 at 7. That argument misunderstands the testimony. As discussed above, none of the testimony in question relates to specific students but instead consists of witnesses' perceptions gained from observing the student body as a whole on a day-to-day basis. The proper way to call into question the veracity or weight of that evidence is to cross-examine those witnesses, which is precisely what Defendants did during discovery. Calling that testimony "one-sided" does not make it so. Indeed, contradicting themselves, Defendants highlight and attempt to leverage their cross-examinations in their papers. *See*, *e.g.*, i*d.* at 4, 7–8 n.6.

*Second,* Defendants argue that the jury will be misled by the use of the clinical term

1  "addiction" because "they may believe that the Breathitt witnesses have first-hand knowledge of
2  the state of the students' mental health condition before any clarification can meaningfully occur."
3  *Id*. at 8. Defendants make this assertion despite beginning their argument with the statement that
4  "the witnesses admitted that they are not using the term 'addiction' in its clinical sense, but only to
5  convey that students use social media frequently." *Id*. at 7. That is precisely the point. The witnesses
6  did not use "addicted" or "compulsive" as clinical diagnoses; they used those words as ordinary
7  descriptions of behavior they observed. The law does not assume jurors lack that common
8  understanding. *See Farfaras*, 433 F.3d at 565-66 ("a reasonable jury can be expected to understand
9  the difference between lay use of an adjective and an expert's use of the same word to describe a
10 specific psychological condition."). Further, as the depositions of these witnesses has already
11 established, cross-examination would make the distinction clear.[3] *See Gadson*, 763 F.3d at 1206
12 (quoting Fed. R. Evid. 701, Advisory Committee Notes) ("The drafters of Rule 701 also rejected
13 the concern that lay opinion testimony would mislead juries. Rule 701 assumes . . . weaknesses in
14 the lay witness's testimony can be emphasized through 'cross-examination and argument.'").

15       Rule 403 does not justify excluding perception-based testimony simply because Defendants
16 dislike the descriptive language witnesses used.

17       **D.**    **Cross-Examination and a Limiting Instruction Address Any Remaining**
18             **Concerns.**

19       As the Ninth Circuit has stated clearly: "[t]he drafters of Rule 701 also rejected the concern
20 that lay opinion testimony would mislead juries. Rule 701 assumes instead that 'the natural
21 characteristics of the adversary system will generally lead to an acceptable result,' and weaknesses
22 in the lay witness's testimony can be emphasized through 'cross-examination and argument.'"
23 *Gadson*, 763 F.3d at 1206 (quoting Fed. R. Evid. 701, Advisory Committee Notes). "[T]he guiding
24 policy of [Rule 701] is to trust the jury to identify unreliable opinion testimony with the help of the

---

[3] In footnote 7 of their Motion, Defendants suggest that if their Motion in Limine No. 3 is denied, they should be able to offer content-related arguments for the same reasons they advance in the Motion in Limine No. 1. ECF No. 2797 at 8 n.7. This argument should be rejected for the same reasons set forth in Plaintiffs' Response in Opposition to Motion in Limine No. 1, which are incorporated herein by reference.

adversary process[.]" *Id.* at 1209 (citing Fed. R. Evid. 701, Advisory Committee Notes).

Here, Defendants will have the ability to cross-examine these witnesses, as they did during depositions, and highlight the concerns they are expressing to this Court. In the unlikely event the Court determines that such measures are insufficient, it may consider a limiting instruction so that the jury is instructed on the permissible scope of these witnesses' testimony.

### III. CONCLUSION

For these reasons, the Court should deny Defendants' Motion in Limine No. 3 in its entirety. The challenged testimony reflects ordinary observations based on firsthand perception, not medical diagnoses or causation opinions, and Rule 403 provides no basis for exclusion. Any remaining concerns can be readily addressed through cross-examination or, if necessary, a limiting instruction.

Dated: March 9, 2026                    Respectfully submitted,

/s/ *Michael Weinkowitz*
MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: 215-592-1500
MWeinkowitz@lfsblaw.com

*Co-chair of School District Committee*
*Plaintiffs Leadership Committee*

Lexi J. Hazam
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Tel.: 415-956-1000

Previn Warren
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Tel.: 202-386-9610

*Co-Lead Counsel*

**FILER'S ATTESTATION**

I, Michael M. Weinkowitz, do hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

/s/ *Michael Weinkowitz*

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: 215-592-1500
MWeinkowitz@lfsblaw.com

*Co-chair of School District Committee*
*Plaintiffs Leadership Committee*