Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc. and Instagram, LLC*

*[Additional parties and counsel listed on signature pages]*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>*Breathitt County Board of Education vs. Meta Platforms, Inc. et al*<br>Case No.: 4:23-CV-01804 | MDL No. 3047<br><br>Case No. 4:22-MD-03047-YGR-PHK<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 1 TO EXCLUDE REFERENCE TO PAST LITIGATION AND ATTORNEY BUSINESS PRACTICES**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang<br><br>Date: March 18, 2026<br>Time: 9:00 AM<br>Place: Courtroom 1, 4th Floor |

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 1 TO EXCLUDE REFERENCE TO PAST LITIGATION AND
ATTORNEY BUSINESS PRACTICES
4:22-md-03047-YGR

55982707.4

# TABLE OF CONTENTS

I.    INTRODUCTION ...........................................................................................................1

II.    BACKGROUND .............................................................................................................2

III.    ARGUMENT ..................................................................................................................3

    A.    Evidence of Breathitt's Involvement and Statements in Prior Litigation Is Relevant. .........3

        1.    Breathitt's Lawsuits and Statements Are Evidence of Alternative Causation.........4

        2.    Breathitt's Lawsuits and Statements Speak to the Credibility of Breathitt's Witnesses. ...............................................................................................................5

    B.    Evidence of Breathitt's Involvement and Statements in Prior Litigation Is Not Prejudicial, Misleading, or Confusing............................................................................6

    C.    Evidence of Breathitt's Involvement and Statements in Prior Litigation Is Not Barred by the Settlement Exclusion Rule. .................................................................................8

    D.    Breathitt's Invocation of the JCCP Personal-Injury Stipulation Is Inapposite. ...................9

    E.    Breathitt's Request to Conceal the Circumstances of Breathitt's Decision to Retain Outside Counsel Should be Denied. ................................................................................9

IV.    CONCLUSION ..............................................................................................................10

ii

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 1 TO EXCLUDE REFERENCE TO PAST LITIGATION AND ATTORNEY BUSINESS PRACTICES
4:22-md-03047-YGR

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ADT Sec. Servs. v. Sec. One Int'l, Inc.*,
  No. 4:11-cv-05149-YGR (N.D. Cal. Aug. 26, 2013), Dkt. No. 263......................................................8

*ADT Security Services v. Security One International, Inc.*,
  2013 U.S. Dist. LEXIS 180339 (N.D. Cal. Sep. 9, 2013) ...................................................................8

*Breathitt Cnty. Pub. Schs., By & Through The Breathitt Cnty. Bd. of Educ. v. Juul Labs Inc.*,
  No. 3:20-cv-04868-WHO (N.D. Cal. July 21, 2020), Dkt. No. 1.............................................1, 2, 3, 4

*Christin v. Wal-Mart Assocs., Inc.*,
  2025 WL 391013 (E.D. Cal. Feb. 3, 2025).........................................................................................4

*Henderson v. Peterson*,
  2011 WL 2838169 (N.D. Cal. July 15, 2011).....................................................................................7

*Kline v. Zimmer, Inc.*,
  79 Cal. App. 5th 123 (2022) ...............................................................................................................5

*Lewis & Clark Bank v. Stewart Title Guar. Co.*,
  2012 WL 2946717 (D. Or. July 17, 2012)..........................................................................................9

*Palantir Techs. Inc. v. Abramowitz*,
  639 F. Supp. 3d 981 (N.D. Cal. 2022) ................................................................................................5

*Rico v. Am. Fam. Ins. Grp.*,
  267 F. Supp. 2d 554 (E.D. La. 2002)..................................................................................................8

*Seals v. Mitchell*,
  2011 WL 1399245 (N.D. Cal. Apr. 13, 2011) ....................................................................................7

*Strategic Partners, Inc. v. Figs, Inc.*,
  2022 WL 18399950 (C.D. Cal. Sept. 26, 2022) .................................................................................6

*The Fiscal Ct. of Breathitt Cnty., Ky. et al. v. McKinsey & Co., Inc. U.S.*,
  No. 3:21-CV-00326-CHB (W.D. Ky. May 21, 2021) ........................................................................2

*Tomaino v. O'Brien*,
  315 F. App'x 359 (2d Cir. 2009) ........................................................................................................5

*United States v. Bao*,
  189 F.3d 860 (9th Cir. 1999)..............................................................................................................6

*Yates v. Sweet Potato Enters., Inc.*,
  2013 WL 4067783 (N.D. Cal. Aug. 1, 2013) .................................................................................5, 6

*Yue v. Chordiant Software, Inc.*,
    2010 WL 11575579 (N.D. Cal. Apr. 22, 2010) ................................................................................6

**Rules of Evidence**

Federal Rule of Evidence 403 ...........................................................................................................7

Federal Rule of Evidence 404 ......................................................................................................5, 6

Federal Rule of Evidence 408 ......................................................................................................8, 9

## I. INTRODUCTION

Breathitt's Motion in Limine No. 1 seeks to hide from the jury its own prior statements and actions in two prior lawsuits blaming vaping and opioids for causing the same issues it now tries to pin on Defendants' platforms.[1] In each case, Breathitt has claimed that different companies are responsible for negatively impacting its students' mental health and are on the hook for the time and resources that Breathitt spends responding to these varying mental health "crises." In each case, Breathitt sought compensatory damages relating to its efforts to address these issues. In each case, Breathitt was represented by the same lawyers. And in each case, Breathitt's "local board attorney" brought these cases to Breathitt. Mot. Ex. A (P. Watts 30(b)(6) Dep.) at 58:14–22. The Court should not permit Breathitt to exclude this highly probative evidence of alternative causation from the jury.

Breathitt's prior statements in the Complaints it filed in federal court—including that e-cigarettes were responsible for its students' alleged "anxiety, tension, depression, irritability, difficulty in concentrating, . . . [and] insomnia," JUUL Complaint ¶ 35, and that opioids created a "public health emergency" in its schools, Opioid Complaint ¶ 1—are relevant for two independent reasons that have nothing to do with settlements, improper character evidence, or showing that Breathitt is litigious. *First*, Breathitt's lawsuits and statements demonstrate alternative causes for the harms Breathitt alleges here—a core factual issue in the case. *Second*, they go to the credibility of Breathitt's witnesses. If Breathitt's position were accepted, any of its witnesses could get on the stand and deny that vaping or opioids were potential alternative causes of its students' ills—and Defendants could not use Breathitt's own words, made to other federal courts, to show the jury that Breathitt previously said the opposite. No rule of evidence requires that unfair result. The jury should be the one to decide the impact of these prior lawsuits and statements.

---

[1] The prior complaints are: Complaint, *Breathitt Cnty. Pub. Schs., By & Through The Breathitt Cnty. Bd. of Educ. v. Juul Labs Inc.*, No. 3:20-cv-04868-WHO (N.D. Cal. July 21, 2020), Dkt. No. 1 ("JUUL Complaint"); Complaint, *Bullitt Cnty. Bd. of Educ. et al. v. McKinsey & Co., Inc. et al.*, No. 3:21-cv-00734-DJH (W.D. Ky. Dec. 10, 2021), Dkt. No. 1 ("Opioid Complaint").

## II. BACKGROUND

Over the course of three years during the relevant time period of this lawsuit, Breathitt filed three nearly-identical lawsuits: (1) against JUUL Labs, Inc. ("JUUL") in mid-2020, alleging that its products have caused an "epidemic" of vaping; (2) against McKinsey & Company, Inc. ("McKinsey") in late 2021, alleging that its actions have contributed to an "opioid epidemic," and, finally, (3) against Defendants here in early 2023. *See* Mot. 2; Complaint, *Breathitt Cnty. Bd. of Educ. v. Meta Platforms, Inc. et al.*, No. 4:23-cv-01804-YGR (N.D. Cal. Mar. 30, 2023), Dkt. No. 1 ("Breathitt Social Media Complaint"). Breathitt County itself also filed a lawsuit against McKinsey, alleging widespread harms to the residents of Breathitt County as a result of the opioid epidemic. *See The Fiscal Ct. of Breathitt Cnty., Ky. et al. v. McKinsey & Co., Inc. U.S.*, No. 3:21-CV-00326-CHB (W.D. Ky. May 21, 2021).

In each suit, Breathitt warned of a "crisis" or "epidemic" caused by the respective defendants' products or services. *See, e.g.*, Breathitt Social Media Complaint ¶ 6 ("The Defendants' conduct has led to a mental health crisis among America's youth."); Dkt. No. 505 ("Master Complaint") ¶ 134 (same); JUUL Complaint ¶ 10 ("Vaping is now an epidemic in the Commonwealth of Kentucky."); Opioid Complaint ¶ 1 (describing "opioid crisis" as a "public health emergency").

In each suit, Breathitt specifically alleged that the defendants' products or services had caused Breathitt students to struggle with the same mental health issues, which impacted their educational experience:

- **Defendants' Platforms**: "Defendants' misconduct is a substantial factor in causing" increases in "anxiety, depression, thoughts of self-harm and suicidal ideation." Breathitt Social Media Complaint ¶ 7. "[M]ore students have been acting out as a result of the decline Defendants caused in studens['] mental, emotional, and social health." *Id.* ¶ 309.

- **JUUL**: JUUL vapes caused "severe physical and mental health risks, particularly to youth" including "anxiety, tension, depression, irritability, difficulty in concentrating, . . . [and] insomnia," among other things. JUUL Complaint ¶¶ 32–43.

- **Opioids:** Students "present behavioral and emotional challenges that disrupt classrooms" due to the opioid epidemic. Opioid Complaint ¶ 25. Students' "ability to self-regulate has been compromised by prenatal opioid exposure or their families' addiction to opioids." *Id.* ¶ 55.

And in each suit Breathitt alleged that, as a consequence, Breathitt's schools had been forced to expend resources and time to respond to the alleged harms caused to its students:

- **Defendants' Platforms:** Due to the "the decline in students' mental, emotional, and social health, Plaintiff has been forced to divert resources and expend additional resources" including hiring additional personnel and notifying parents of students' behavioral issues. Breathitt Social Media Complaint ¶ 308; Master Complaint ¶ 973 (same, to "address youth and student discipline issues").
- **JUUL:** The District expended "substantial institutional energy, resources, and money in the monitoring, educating and disciplining of students" as a result of the alleged vaping epidemic. JUUL Complaint ¶ 175.
- **Opioids:** Costs to schools included "increased administrative expenses, and resources increasingly diverted from classroom instruction to address behavioral disruptions caused by students whose ability to self-regulate has been compromised." Opioid Complaint ¶ 55. Breathitt had incurred costs for "psychological counseling . . . due to opioid-related family crises." *Id.* ¶ 54.

### III. ARGUMENT

The Court should reject Breathitt's attempt to hide evidence of its prior lawsuits and statements it has made in those lawsuits, filed in federal court, from the jury. The fact of those lawsuits and prior statements are relevant to demonstrating alternative causation and the credibility of Breathitt's witnesses. They are not unduly prejudicial. Nor are they barred by the settlement rule because Defendants do not seek to introduce any evidence related to any settlements.

**A.    Evidence of Breathitt's Involvement and Statements in Prior Litigation Is Relevant.**

Evidence that Breathitt has brought two other lawsuits alleging that other products or services caused many of the *same harms* as claimed here and caused the District to incur many of the *same costs* that it attempts to attribute to Defendants' platforms is highly relevant to this case. Breathitt's Motion does not even try to argue otherwise. And Breathitt's efforts to suggest that this relevant evidence is improper character-evidence is flat wrong.

1. **Breathitt's Lawsuits and Statements Are Evidence of Alternative Causation.**

Breathitt's statements are vital evidence of potential alternative causes of the "mental health crisis" that Breathitt seeks to lay at Defendants' doorstep. Breathitt Social Media Complaint ¶ 6; *accord* Master Complaint ¶ 134. Breathitt has sought to blame Defendants' platforms for virtually every mental health, behavioral, and academic issue plaguing the District—ranging from increased rates of anxiety, depression, and suicidal ideation among teens; time spent engaging with parents on "youth mental health, behavioral issues, and attendance problems"; students' "reduced attention span" and "declining achievement"; and resources spent on "additional mental health resources" like added counselors. Master Complaint ¶¶ 6, 212; *see also* Breathitt Social Media Complaint ¶ 309 ("more students have been acting out as a result of the decline Defendants caused in students' mental, emotional, and social health"). But Breathitt has claimed in two different lawsuits that different defendants' actions have resulted in *the same* widespread issues, with the same attendant costs. Breathitt previously alleged that JUUL vapes caused the same "severe physical and mental health risks, particularly to youth," including anxiety, tension, depression, irritability, difficulty concentrating, and insomnia, among other things, which led the District to expend time and resources. *See, e.g.*, JUUL Complaint ¶¶ 32–43. And then it alleged that opioids led to increased costs to schools including "increased administrative expenses, and resources increasingly diverted from classroom instruction to address behavioral disruptions caused by students whose ability to self-regulate has been compromised"—costs that Breathitt here attempts to attribute solely to Defendants' platforms. Opioid Complaint ¶ 55; *see also id.* ¶ 25 (noting students "present behavioral and emotional challenges that disrupt classrooms" due to the opioid epidemic).

The ability to introduce evidence of alternative causes of these issues—and evidence that Breathitt has identified *other companies* as the responsible parties for these issues—is vital to Defendants' case.[2] *See, e.g.*, *Christin v. Wal-Mart Assocs., Inc.*, 2025 WL 391013, at *3 (E.D. Cal. Feb. 3, 2025) (discussing relevance of evidence that can show "possible alternate causes or contributors"). As one court aptly put it, it is "imperative that the party without the burden of proof be allowed to suggest alternative causes."

---

[2] In fact, this evidence is alternative-cause evidence twice-over: it demonstrates alternative causes for students' alleged mental health issues and for Breathitt's staff allegedly having to divert their time to address non-educational issues.

4

*Kline v. Zimmer, Inc.*, 79 Cal. App. 5th 123, 133 (2022). And such evidence would clearly not implicate Rule 404's prohibition on propensity evidence—evidence of alternative causation has nothing to do with Breathitt's character.

Breathitt's attempt to exclude this highly relevant evidence is unworkable and unfair. Breathitt concedes (as it must) that "Defendants are . . . free to make argument and introduce evidence regarding alternative causes of Breathitt's harm, including other addictive products." Mot. 5. But Defendants cannot effectively do that with respect to vaping and opioids without being able to use Breathitt's own past actions and statements in court. For instance, under Breathitt's approach, Defendants would be prohibited from telling the jury that Breathitt had previously told a court that opioids—not Defendants' platforms—created a "public health emergency" that affected the lives of nearly every American. *See* Opioid Complaint ¶ 1. The fact of that statement, as well as the context in which it was made—in a public filing in a court of law—is competent, appropriate evidence that is relevant to the jury's determination of how much weight to give to the evidence of alternative causation and the extent to which the alternative cause contributed to the claimed harms in this case. Similarly, if Defendants asked Mr. Watts, "do you agree that your students' health issues stem from opioids and vaping," and he replied "no" or attempted to minimize the extent of the harms from opioids and vaping, granting Breathitt's Motion would leave Defendants unable to rebut Mr. Watts's testimony by pointing to the contrary claims made by Breathitt in past cases.

### 2. Breathitt's Lawsuits and Statements Speak to the Credibility of Breathitt's Witnesses.

This evidence could also bear on the credibility of Breathitt's witnesses. *See Yates v. Sweet Potato Enters., Inc.*, 2013 WL 4067783, at *3 (N.D. Cal. Aug. 1, 2013) (evidence of the plaintiff's "prior lawsuits are probative of his credibility"); *Palantir Techs. Inc. v. Abramowitz*, 639 F. Supp. 3d 981, 986 (N.D. Cal. 2022) (evidence of prior litigation, "including [the plaintiff's] settlement of the matter on [the witness's] behalf, are probative of [the witness's] credibility and bias"); *Tomaino v. O'Brien*, 315 F. App'x 359, 361 (2d Cir. 2009) (upholding admission of evidence concerning plaintiff's five prior lawsuits on the ground that a jury could infer that plaintiff had made "strikingly similar claims [and] that his testimony in support of a sixth such suit was not credible"). Defendants anticipate that Plaintiff's witnesses may offer testimony suggesting that mental health challenges faced by Breathitt's students are attributable solely, or in large

part, to Defendants' products, as it did in its Complaint in this case. *See* Breathitt Social Media Complaint ¶ 6 ("The Defendants' conduct has led to a mental health crisis among America's youth."). For example, Breathitt's Superintendent—the same individual who oversaw Breathitt's decision to enter into the JUUL and opioid litigation and commence the instant suit, *see* Ex. 1 (Watts Dep. Ex. 7) at 7; Ex. 2 (BREATHITT00333457) at 6–7—submitted an affidavit in this litigation asserting that he spent "75–80% of [his] work time addressing social media issues" in 2025. Dkt. No. 45-17 (May 5, 2025 Watts Affidavit) ¶ 13.

Evidence of Breathitt's prior statements and claims in the JUUL and opioid litigation could be used to call into question the credibility of those assertions and, where relevant, rebut Breathitt's witnesses' representations that Breathitt is facing a mental health crisis precipitated by Defendants' platforms—rather than health crises precipitated by other causes. *See Strategic Partners, Inc. v. Figs, Inc.*, 2022 WL 18399950, at *5 (C.D. Cal. Sept. 26, 2022) ("The inconsistent positions taken by [the plaintiff's] witnesses in [a previous matter] . . . are also relevant, and would be admissible, for impeachment purposes."); *Yates*, 2013 WL 4067783, at *3 ("[Evidence of prior lawsuits] is admissible [for] other purposes, such as impeachment." (citing *United States v. Gay*, 967 F.2d 322, 328 (9th Cir. 1992)); *see also United States v. Bao*, 189 F.3d 860, 865–66 (9th Cir. 1999) ("A basic rule of evidence provides that prior inconsistent statements may be used to impeach the credibility of a witness." (citation omitted)). Again, such evidence would not constitute impermissible propensity evidence under Rule 404.

### B.    Evidence of Breathitt's Involvement and Statements in Prior Litigation Is Not Prejudicial, Misleading, or Confusing.

As demonstrated above, the probative value of the evidence Defendants would seek to admit is high—impacting important issues like alternative cause and witness credibility. *Supra* III.A. By contrast, Breathitt fails to identify anything concrete about *this particular evidence* that is unduly prejudicial or misleading. *Cf. Yue v. Chordiant Software, Inc.*, 2010 WL 11575579, at *1 (N.D. Cal. Apr. 22, 2010) ("[T]he Court finds it premature to decide whether evidence of prior litigation would be unduly prejudicial to Plaintiffs. The balancing of prejudice versus probative value will depend upon the specific reason for which the evidence is offered at trial."). And none of its authorities counsel in favor of excluding evidence relating to claims and statements Breathitt made in the JUUL and opioid suits.

To start, much of Breathitt's Rule 403 argument is premised on the idea that "the terms and amounts of any JUUL or Opioid related *settlement*" are inadmissible. Mot. 3 (emphasis added). But, as explained below, Defendants will not introduce *settlement* evidence. *See infra* III.C. That alone resolves much of Breathitt's Rule 403 argument.[3]

Aside from its settlement argument, Breathitt identifies only one form of potential prejudice: the risk of a "mini-trial" on a "collateral" issue. Mot. 4. But that cursory argument is incorrect on its own terms and does not "substantially outweigh[]," Fed. R. Evid. 403, the significant probative value of the evidence. Alternative cause and witness credibility are hardly "collateral" issues—they are all directly relevant to Breathitt's claims or Defendants' defenses. *See supra* III.A. Indeed, Breathitt all but concedes the point, noting that "Defendants are still free to make argument and introduce evidence regarding alternative causes of Breathitt's harm, including other addictive products," to which Breathitt may "respond in turn." Mot. 5. But Breathitt's own statements made in court filings are among the best evidence that Breathitt's alleged injuries were not caused in substantial part by Defendants' platforms. There is no valid reason to hide them from the jury.

Breathitt's authority does not compel a different outcome. Notably, the bulk of Breathitt's Rule 403 authority on this point applies, once again, to the issue of other *settlements*, not the sort of evidence Defendants may introduce here. *See id.* at 4 (citing four cases involving settlements only). And Breathitt's other authorities address fundamentally different situations. Two of its three cases not involving settlements excluded plaintiffs' history of filing dozens and dozens of grievances and suits challenging actions by the prisons in which the plaintiffs were held—a situation where the courts found the purpose would be to demonstrate "litigiousness," and the risk of prejudicing the jury about the merit of such prior claims is far more significant than here. *Henderson v. Peterson*, 2011 WL 2838169, at *5 (N.D. Cal. July 15, 2011); *Seals v. Mitchell*, 2011 WL 1399245, at *5 (N.D. Cal. Apr. 13, 2011). Here, Defendants would not introduce the evidence to prove Breathitt's "litigiousness" and there is no similar risk of the jury seeing

---

[3] For instance, without hearing about the settlement there is no risk that "jurors [would] believe that Breathitt need not be compensated for harms caused by Defendants here because it has already been compensated by different defendants, for different harms, in different lawsuits." Mot. 4. And, at any rate, Breathitt *was* compensated for the *same* harms in those other suits.

7

numerous past unsuccessful suits tainting their view of Breathitt's claims here. It was in *that* specific context, and with those specific reasons in mind, in which these courts said that past lawsuits should be excluded "[a]s a general matter." Mot. 5 (quoting *Henderson*, 2011 WL 2838169, at *5). Breathitt misreads those cases when it argues that there is a general rule that non-fraudulent past lawsuits should be excluded *for all purposes.*

This Court's decision in *ADT Security Services v. Security One International, Inc.*, 2013 U.S. Dist. LEXIS 180339 (N.D. Cal. Sep. 9, 2013), also concerned an entirely different situation. There, the defendant put forward one—and only one—argument for admitting evidence of "numerous" past lawsuits: that the plaintiff had a motive of bringing all of these lawsuits to engage in "market clearing." *See* Defs.' Response to ADT's Motion in Limine No. 5 to Exclude Evidence or Reference to Lawsuits That ADT Has Filed at 2–3, *ADT Sec. Servs. v. Sec. One Int'l, Inc.*, No. 4:11-cv-05149-YGR (N.D. Cal. Aug. 26, 2013), Dkt. No. 263. There was no indication that the defendant there sought, as Defendants here would, to use the evidence to bear on alternative cause or to rebut witnesses' inconsistent statements. Accordingly, the probative value of the evidence here is substantially higher than in *ADT Security Services*. At the same time, the unfair prejudice there does not exist here. Defendants will not use evidence of a slew of past suits to show that Breathitt is litigious; instead, Defendants will use specific statements from two particular suits for legitimate purposes.

**C. Evidence of Breathitt's Involvement and Statements in Prior Litigation Is Not Barred by the Settlement Exclusion Rule.**

Defendants do not intend to introduce evidence relating to Breathitt's *settlement* of the JUUL and opioid lawsuits. Instead, Defendants would introduce (1) *the fact* that Breathitt *brought suit* and (2) *statements* that Breathitt made in court in the course of litigating that suit (outside of settlement discussions), including statements that the jury may view as inconsistent with its statements here. Breathitt is wrong to suggest that Rule 408 bars evidence of such "claims or settlements." Mot. 3. Rule 408 applies only to certain categories of settlements and compromises—not to all actions or statements in litigation. *See* 2 McCormick on Evid. § 266 (9th ed. 2025) (Rule 408 only excludes "the [settlement] offer . . . , as well as any suggestions or overtures of settlement"); *see, e.g.*, *Rico v. Am. Fam. Ins. Grp.*, 267 F. Supp. 2d 554, 558 (E.D. La. 2002) (Rule 408 did not bar evidence related to prior litigation where the witness

testified "about the personal injuries plaintiff . . . alleged he suffered in the previous accident"); *Lewis & Clark Bank v. Stewart Title Guar. Co.*, 2012 WL 2946717, at *1 (D. Or. July 17, 2012) ("Rule 408 does not apply when the parties were not engaged in the compromise or settlement of a dispute at the time the statements were made or the documents created."). Though Breathitt's Motion repeatedly attempts to extend the prohibition to any fact concerning a lawsuit, none of its authorities support such a sweeping interpretation of Rule 408. That fact is unsurprising: Rule 408, by its own terms, does not apply to *all* evidence related to prior litigation (even if that litigation concluded in settlement). This Court should reject Plaintiffs' efforts to expand Rule 408 to encompass any information relating to publicly-filed lawsuits.

### D. Breathitt's Invocation of the JCCP Personal-Injury Stipulation Is Inapposite.

In an aside, Breathitt invokes a stipulation reached by Defendants and certain personal-injury bellwether plaintiffs in the JCCP. But the JCCP stipulation is materially different from Breathitt's request here. The JCCP stipulation was intended to prevent the introduction of broad allegations relating to the "existence of other litigation," such as arguments that the JCCP suit was contributing to a "litigation crisis" or "social inflation." It was not intended to address—because no trial pool one personal-injury Plaintiffs in the JCCP had made any—highly relevant prior statements or claims made in specific prior lawsuits.

For clarity, Defendants do not intend to use Breathitt's involvement or statements in prior litigation to "argue, before a jury, that this litigation is akin to other frivolous litigations, and is thus contributing to a 'litigation crisis.'" Mot. 6 (quoting Stipulation and [Proposed] Order to Exclude Certain Evidence, No. 22STCV21355 (L.A. Cnty. Super. Ct. Sept. 29, 2025)). Similarly, Defendants will not make arguments "concerning the size or makeup of any law firm involved in these cases" or comment on "attorney referral agreements" and the retention of "more than one law firm for this case." *Id.* But Defendants should be permitted, for all the reasons discussed above, to raise Breathitt's own statements made in two specific lawsuits to demonstrate alternative cause and undermine Breathitt's credibility.

### E. Breathitt's Request to Conceal the Circumstances of Breathitt's Decision to Retain Outside Counsel Should be Denied.

Breathitt also seeks to exclude a different category of evidence: Breathitt's retention of counsel in this or other litigation and the "conduct of outside counsel here or in similar litigation, including

9

advertisements, referrals, and other attorney business practices." Mot. 5. Defendants have no intention of offering evidence of attorney advertising in this case. But the circumstances surrounding Breathitt's decision to file suit—including that all three suits were suggested to Breathitt by the same "local board attorney," Mot. Ex. A (P. Watts 30(b)(6) Dep.) at 58:14–22, and its reliance on the same counsel to bring suits claiming nearly-identical harms to both students and Breathitt itself—is relevant to, at a minimum, the credibility of Breathitt's witnesses. As noted, Superintendent Watts oversaw Breathitt's participation in all three lawsuits at issue here, *see* Ex. 1 at; Ex. 2 at 6–7, and he has provided key testimony regarding the supposed effects of the claimed "social media crisis" in Breathitt. It is proper for Defendants to question Superintendent Watts and any other Breathitt witnesses who participated in the decision to bring suit on how they came to that decision; and whether they had any concerns about Defendants' platforms before the "local board attorney" recommended filing suit is relevant to the credibility of their assertions regarding the harm Breathitt has supposedly suffered as a consequence of Defendants' platforms.

## IV.   CONCLUSION

The Court should deny Plaintiff's Motion in Limine No. 1.

DATED: March 9, 2026                                       Respectfully submitted,

By:   */s/ Ashley M. Simonsen*

Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones (*pro hac vice*)
Paul W. Schmidt (*pro hac vice*)
Christian J. Pistilli (*pro hac vice*)
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000

```
                              Facsimile: (202) 662-6291
                              Email: pajones@cov.com
                              Email: pschmidt@cov.com
                              Email: cpistilli@cov.com
```

*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc. and Instagram, LLC*

*/s/ Jonathan H. Blavin*
JONATHAN H. BLAVIN (State Bar No. 230269)
Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel: (415) 512-4000

E. MARTIN ESTRADA (State Bar No. 223802)
Martin.Estrada@mto.com
L. ASHLEY AULL (State Bar No. 257020)
Ashley.Aull@mto.com
VICTORIA A. DEGTYAREVA (State Bar No. 284199)
Victoria.Degtyareva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel.: (213) 683-9100

ALLISON BROWN (*pro hac vice*)
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Tel.: (215) 268-5000

JESSICA DAVIDSON (*pro hac vice*)
jessica.davidson@kirkland.com
JOHN J. NOLAN (*pro hac vice*)
jack.nolan@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800

*Attorneys for Defendant Snap Inc.*

*/s/ Geoffrey M. Drake*
GEOFFREY M. DRAKE, *pro hac vice*
gdrake@kslaw.com

11

TACARA D. HARRIS, pro hac vice
tharris@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

DAVID P. MATTERN, *pro hac vice*
dmattern@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, D.C. 20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737

BAILEY J. LANGNER (SBN 307753)
*blangner@kslaw.com*
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

*/s/ Daniel M. Petrocelli*
Daniel M. Petrocelli (SBN 97802)
Sabrina H. Strong (SBN 200292)
O'MELVENY & MYERS
1999 Avenue of the Stars
8th Floor
Los Angeles, CA 90067
Telephone: (310) 553-6700
Email: dpetrocelli@omm.com
       sstrong@omm.com

Steve Brody (pro hac vice)
O'MELVENY & MYERS
1625 Eye Street
Washington, DC 20006
Telephone: (202) 383-5300
Email: sbrody@omm.com

*Attorneys for Defendants TikTok Inc., ByteDance Inc., ByteDance Ltd., TikTok Ltd., and TikTok, LLC*

*/s/ Ashley Hardin*
ASHLEY W. HARDIN, *pro hac vice*
ahardin@wc.com
J. ANDREW KEYES, *pro hac vice*
akeyes@wc.com
NEELUM J. WADHWANI (SBN 247948)
nwadhwani@wc.com

|   |   |
|---|---|
| 1 | WILLIAMS & CONNOLLY LLP |
| 2 | 680 Maine Avenue, SW |
|   | Washington, DC 20024 |
| 3 | Tel.: (202) 434-5000 |

*Attorneys for Defendants YouTube, LLC and Google LLC*

13

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 1 TO EXCLUDE REFERENCE TO PAST LITIGATION AND ATTORNEY BUSINESS PRACTICES
4:22-md-03047-YGR

## FILER'S ATTESTATION

I, Ashley M. Simonsen, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED: March 9, 2026     By:  */s/ Ashley M. Simonsen*
                                Ashley M. Simonsen