JONATHAN H. BLAVIN (State Bar No. 230269)
Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-2907
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

E. MARTIN ESTRADA (State Bar No. 223802)
Martin.Estrada@mto.com
L. ASHLEY AULL (State Bar No. 257020)
Ashley.Aull@mto.com
VICTORIA A. DEGTYAREVA (State Bar No. 284199)
Victoria.Degtyareva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

*Attorneys for Defendant Snap Inc.*

*[Additional counsel listed on signature pages]*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>*Breathitt County Board of Education v. Meta Platforms, Inc., et al.*<br>Case No.: 4:23-CV-1804 | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR-PHK<br><br>**DEFENDANTS' OPPOSITION TO BREATHITT'S MOTION IN LIMINE NO. 3, TO EXCLUDE EVIDENCE OF CRIMINAL CONDUCT, CRIMINAL LITIGATION, AND CIVIL LITIGATION INVOLVING FORMER EMPLOYEES AND VOLUNTEERS**<br><br>**Hearing:**<br>Date: March 18, 2026<br>Time: 9:00 a.m.<br>Place: Courtroom 1, Floor 4<br>Judge: Hon. Yvonne Gonzalez Rogers |

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................... 1

    A. The Motion Should Be Denied as to the Criminal and Civil Proceedings Involving Former Superintendent Arch Turner ............................................... 1

    B. The Motion Should Be Denied as to Breathitt's Response to the Misconduct of Sebastian Middle School Teacher Charles Mitchell. ..................................... 5

III. CONCLUSION ................................................................................................................ 7

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*United States v. Hankey*,
  203 F.3d 1160 (9th Cir. 2000) ................................................................................................5

**STATE CASES**

*Ritchie v. Turner*,
  559 S.W.3d 822 (Ky. 2018) ................................................................................................5, 6

**FEDERAL RULES**

Fed. R. Evid. 403 ............................................................................................................................7

## I. INTRODUCTION

Breathitt's Motion in Limine No. 3 seeks to prevent the jury from hearing evidence of corruption and other criminal misconduct by its former superintendent, Arch Turner, and other Breathitt administrators and board members[1] that bears directly on the central issue in this case: the true cause of the District's alleged harms. Breathitt claims that Defendants' platforms are responsible for years of student mental health challenges and operational strain. But the evidence Breathitt asks the Court to exclude shows that the District was destabilized by dysfunctional leadership, repeated governance failures, and serious misconduct involving school administrators—all of which caused long-lasting harms that required more than a decade of state intervention to address and extended well into the period for which Breathitt seeks damages. The jury is entitled to consider that evidence in evaluating whether the actionable features of Defendants' platforms were a substantial factor in causing the harms Breathitt alleges as well as to evaluate the proper apportionment of damages, if any are awarded.

## II. ARGUMENT

### A. The Motion Should Be Denied as to the Criminal and Civil Proceedings Involving Former Superintendent Arch Turner.

Evidence concerning the criminal prosecution, conviction, and related civil litigation of former Breathitt County School District Superintendent Arch Turner is highly probative and directly relevant to causation during the very period for which Breathitt seeks recovery.

Breathitt has a documented history of mismanagement and dysfunctional leadership, which has caused learning loss and negative mental health effects for its students. That mismanagement can be traced back to Arch Turner, who served as the Superintendent from 2005 through 2012. Decl. of Ronald Johnson in Supp. of Pl.'s Mot. in Limine No. 3 ("Johnson Decl.") Ex. 1. During that period, Turner centralized authority in himself, exerting "a great amount of control without proper oversight of the school board." Decl. of Jonathan H. Blavin in Supp. of Defs.' Opp'n to Pl.'s Mot.

---

[1] Defendants do not intend to introduce evidence relating to an incident in 2022 in which Breathitt County High School's head baseball coach, Alex Hamilton, exposed students to sexually explicit material. Accordingly, Breathitt's request to exclude this evidence should be denied as moot.

in Limine No. 3 ("Blavin Decl.") Ex. A ("McKnight 30(b)(6) Dep.") at 27:25–28:8.  He unilaterally approved payments to employees beyond the amount authorized by their contracts; permitted excessive spending of District funds on events that did not benefit students, such as more than $35,000 for school officials and their guests to attend basketball tournaments in which Breathitt did not participate; and caused Breathitt to lose approximately $191,000 in state funding after failing to provide the required number of instructional days.  Blavin Decl. Ex. B ("2012 Audit Letter") at 3, 5, 7.  All the while, the Breathitt Board of Education exercised remarkably little oversight over Turner, routinely approving his activities in 10-minute-long meetings.  *Id.* at 8.

Turner's mismanagement was deeply intertwined with corruption.  By 2012, it came to light that Turner had been conspiring to buy votes in the Breathitt County School Board election in order to "pack the Board with people who are friendly" and insulate himself from oversight and accountability.  Blavin Decl. Ex. C ("Watts 30(b)(6) Dep.") at 78:7–21.  While Turner was being criminally investigated for that misconduct, he continued to serve as Breathitt's superintendent.  McKnight 30(b)(6) Dep. at 46:19–47:9.  During that time, Turner—with the Breathitt County Board of Education's assistance—threatened and retaliated against Breathitt employees who cooperated with the FBI, including by reducing the pay of three employees who assisted the investigation.  Johnson Decl. Ex. 2 at 2–3.  Turner and 11 others—including a Breathitt Board member and a Breathitt employee—were prosecuted, and Turner was eventually convicted.  Blavin Decl. Ex. D (Lexington Herald-Leader Article) at 1; Johnson Decl. Ex. 1.  He was later sued civilly for unlawful retaliation.  Johnson Decl. Ex. 2 at 2–3.

Turner's years of mismanagement and corruption inflicted deep and systemic harm on Breathitt and its students.  In 2012—just two months after Turner was convicted—the Kentucky Board of Education audited Breathitt and found that it suffered from widespread dysfunction and a crippling financial situation.  2012 Audit Letter at 3–12.  The audit identified failures across virtually every domain—including dysfunctional governance, poor instructional oversight, an ineffective curriculum, frivolous spending, noncompliance with Board policy, and even potential violations of state law, *see* Blavin Decl. Ex. E ("2012 Audit Report") at -9140–71—all of which contributed to learning loss and negative mental health effects for Breathitt students.  As a result, the state seized

control over Breathitt and placed it under state management. Breathitt's corporate representatives confirmed the connection between these events and Turner's criminal conduct: "the reason why the District was placed under state management" was because "the superintendent at the time had been engaged in corruption" and "there had been instances of financial mismanagement." McKnight 30(b)(6) Dep. at 24:19–25:9; *see also* Watts 30(b)(6) Dep. at 75:15–21 (testifying that Breathitt was "under state management" in part because "the previous superintendent at the time was convicted of a federal crime for vote buying").

The harms stemming from Turner's corruption and mismanagement persisted for more than a decade. In 2014, the state conducted another audit and found that Breathitt still suffered from "a pattern of a significant lack of efficiency and effectiveness in [its] governance and administration." Blavin Decl. Ex. F ("2014 Audit Report") at -8019. Kentucky audited Breathitt once again in 2017 and found that "state management is necessary to correct the inefficiencies and ineffectiveness within Breathitt County Schools." Blavin Decl. Ex. G ("2017 Audit Report") at -9091–92. Breathitt remained under state management until December 2019 when it was placed under state assistance, restoring limited authority to the Board but continuing active state oversight and supervision. McKnight 30(b)(6) Dep. at 105:9–107:14, 108:18–109:3. Breathitt remained under state assistance until 2023. Watts 30(b)(6) Dep. at 74:14–19.

Throughout this decade-long period, students suffered. Turner's mismanagement and corruption subjected them to years of instability, a substandard education, diverted resources, and a poor educational environment—all of which impacted their mental health. *See* 2014 Audit Report at -8016–19; 2017 Audit Report at -9094–100, -9113–23. Stacy McKnight—Breathitt's Director of Financial Services who testified as a corporate representative—stated that "[o]bviously, the school can't succeed if the leaders of the school are focused on buying elections." McKnight 30(b)(6) Dep. at 60:12–21. Likewise, Phillip Watts—Breathitt's current Superintendent who also testified as a corporate representative—stated that it is not "surpris[ing] that there were quite a number of problems in the Breathitt County School Board" as a result of Turner's "federal crime for trying to buy votes in the School Board election." Watts 30(b)(6) Dep. at 78:7–79:6.

Evidence concerning Turner's criminal prosecution and conviction is therefore directly

relevant to causation and apportioning damages (if any). Breathitt bears the burden of proving that Defendants' actionable conduct was a substantial factor in causing its students' mental health challenges and its operational strain. The evidence of Turner's dysfunctional leadership, corruption, and financial mismanagement is relevant to showing that Breathitt's institutional problems—and the harms it now ascribes to Defendants—were caused by factors unrelated to social media. Turner's criminal conduct is indispensable to that showing—it provides direct evidence of Turner's and the Board's corruption, which was a core aspect of their dysfunctional leadership and a significant contributing factor to Kentucky's decade-long intervention into Breathitt's governance. *See* McKnight 30(b)(6) Dep. at 24:19–25:9; Watts 30(b)(6) Dep. at 75:15–21. It is essential that the jury receive this evidence in order to properly evaluate causation and apportionment of damages, if any.

Breathitt's arguments for exclusion are meritless. Breathitt first contends that Turner's conviction is "unrelated to this litigation" because it merely involved "a vote buying scheme" for a "primary election." Breathitt MIL No. 3 at 2–3. But Turner was *Breathitt's Superintendent*, who was convicted for conspiring with another *Breathitt School Board member* and a *Breathitt employee* to buy votes in the *Breathitt School Board* election in order to insulate himself from oversight in *managing the Breathitt school district*. And as Breathitt's own corporate representatives testified, Turner's "corruption" was "the reason why the District was placed under state management." McKnight 30(b)(6) Dep. at 24:19–25:9; *see also* Watts 30(b)(6) Dep. at 75:15–21. Breathitt concedes evidence of state management is admissible, *see* Breathitt MIL No. 3 at 6, but the fact of state control cannot be meaningfully presented to the jury without explaining why it occurred. The conviction is therefore not a tangential political scandal—it is part and parcel of the widespread dysfunction and corruption of Breathitt's administration that led to a crippling financial situation, more than a decade of state control, and prolonged instability in the schools. All the while, Breathitt's students were forced to suffer from diverted resources, an ineffective curriculum, and poor instructional oversight. *See* 2012 Audit Report at -9140–71. And while "[c]riminal conduct involving public corruption" may be "inflammatory," Breathitt MIL No. 3 at 5, "[r]elevant evidence is inherently prejudicial; but it is only *unfair* prejudice, substantially outweighing probative value,

which permits exclusion of relevant matter under Rule 403," *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) (emphasis added). That standard for exclusion is not satisfied here.

Breathitt next argues that Turner's conviction is too "temporally remote" because it occurred in 2012. Breathitt MIL No. 3 at 2. But Turner's misconduct caused lasting consequences that extended well into the damages period for this case, as demonstrated by Kentucky's imposition of state management and assistance of Breathitt through 2023. Moreover, Breathitt itself has taken the position that pre-2014 conduct by Defendants—indeed, conduct going as far back as 2004—is relevant and admissible in this case because it allegedly caused consequences for Breathitt students within the damages period and "led to [Breathitt's] damages." *See* Blavin Decl. Ex. H (Breathitt's Am. Resp. to Defs.' Interrog. No. 2) at 5. Having taken the position that alleged conduct from a decade before the first claimed damages year is relevant to causation, Breathitt cannot credibly argue that Turner's 2012 criminal conviction—and the resulting state takeover of the District—is too remote to be considered by the jury. At a minimum, the Court should treat all pre-2014 evidence evenhandedly: if it is excluded for one side, it should be excluded for both.

Finally, admitting evidence of Turner's prosecution and conviction will not cause undue delay. There is no serious dispute regarding the facts of Turner's criminal proceeding, and those facts can be presented succinctly to the jury.

### B. The Motion Should Be Denied as to Breathitt's Response to the Misconduct of Sebastian Middle School Teacher Charles Mitchell.

Evidence concerning Breathitt's inadequate response to the misconduct of a Breathitt middle school teacher, Charles Mitchell, is relevant because it exemplifies the same pattern of dysfunctional leadership and governance failures discussed above, which resulted in long-standing harm to Breathitt and its students as well as more than a decade of state intervention.

Charles Mitchell was a teacher at Sebastian Middle School. Between 2009 and 2011, he engaged in serious misconduct involving several Sebastian Middle School students. *See Ritchie v. Turner*, 559 S.W.3d 822, 826–27 (Ky. 2018). Breathitt administrators—including Superintendent Turner and Sebastian Middle School Principal Reggie Hamilton—were notified of Mitchell's misconduct by one of the students' parents. *Id.* at 827. Those administrators "conducted a series of

1  interviews to assess whether Mitchell was engaged in" the misconduct, and Mitchell eventually
2  resigned voluntarily due to the allegations. *Id*. at 829. But "[d]espite Mitchell's resignation and the
3  investigation into his actions, school authorities did not alert anyone outside the school system." *Id*.

4    Eventually, Kentucky police were notified of Mitchell's misconduct through a report from
5  a local television station. *Id*. Police interviewed students, reviewed documentary evidence, and
6  then charged Mitchell with a series of crimes. *Id*. Mitchell pleaded guilty in 2012 and was
7  imprisoned. *Id*.

8    Police also charged several Breathitt administrators—including Turner and Hamilton—for
9  failing to report Mitchell's misconduct to the authorities, in violation of Kentucky state law. *Id*.
10 Turner and Hamilton were found guilty of failure to report child dependency, neglect, or abuse. *Id*.
11 Multiple parents of affected students then sued Turner and Hamilton, alleging they were negligent
12 for failing to adequately investigate Mitchell, not informing family members or police of his
13 misconduct, and not terminating Mitchell despite having knowledge of his activities. *See* Blavin
14 Decl. Ex. I (*Thorpe v. Mitchell* Compl.) at ¶¶ 25–30.

15    Evidence of Breathitt's response to Mitchell's misconduct demonstrates a broader pattern of
16 dysfunction and mismanagement among Breathitt's leadership. As discussed above, Breathitt has
17 been plagued by dysfunctional leadership that has undermined the District's operations, eroded
18 public trust, and harmed students. The same Superintendent who was convicted for failing to report
19 misconduct by a Breathitt teacher was also under scrutiny for corruption, governance failures, and
20 financial mismanagement. And Breathitt's response to Mitchell's misconduct—an inadequate
21 investigation, limited discipline, and a failure to notify law enforcement—reflects the very
22 governance breakdown that harmed Breathitt's students and ultimately required more than a decade
23 of state intervention. That pattern is probative of Breathitt's alleged harms stemming from its own
24 dysfunctional leadership, rather than from the actionable features of Defendants' platforms.

25    Moreover, evidence of Breathitt's inadequate response to Mitchell's misconduct is relevant
26 to Breathitt's failure-to-warn claim. Breathitt contends in this litigation that Defendants should have
27 provided stronger warnings to prevent harm to students and the District. However, when Breathitt
28 was confronted with direct warnings from parents about misconduct by one of its teachers, Breathitt

administrators failed to notify law enforcement and were later convicted for violating mandatory reporting laws. The jury should be able to consider whether Breathitt's own failure to heed and act upon clear warnings undermines its position that additional warnings from Defendants would have prevented the harms it now alleges.

Breathitt's arguments for exclusion fare no better here than they did with respect to Turner's conviction. Breathitt contends that Mitchell's misconduct is temporally remote because it occurred between 2009 and 2011. Breathitt MIL No. 3 at 2. But Breathitt's response to that misconduct is part of a broader pattern of dysfunction and mismanagement that affected Breathitt *long* into the damages period, as evidenced by Kentucky's intervention into Breathitt's governance through 2023. Moreover, Breathitt's contention that events in 2011 are too remote to bear on damages beginning in 2014 ignores Breathitt's own intention to introduce evidence dating back to 2004.

Nor does Rule 403 justify exclusion. The relevant facts are largely undisputed and can be presented in a limited and straightforward manner that focuses on Breathitt's knowledge of Mitchell's misconduct, its subsequent investigation, and its failure to report the matter. Defendants do not intend to seek to introduce any details regarding the nature of Mitchell's misconduct.

## III.   CONCLUSION

The Court should deny Breathitt's Motion in Limine No. 3, to exclude evidence of criminal conduct, criminal litigation, and civil litigation involving former employees and volunteers.

| | | |
|---|---|---|
| DATED: March 9, 2026 | | Respectfully submitted, |
| | | MUNGER, TOLLES & OLSON LLP |
| | By: | /s/ *Jonathan H. Blavin* |

JONATHAN H. BLAVIN (SBN 230269)
Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel: (415) 512-4000

E. MARTIN ESTRADA (SBN 223802)
Martin.Estrada@mto.com
L. ASHLEY AULL (SBN 257020)
Ashley.Aull@mto.com
VICTORIA A. DEGTYAREVA (SBN 284199)
Victoria.Degtyareva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel.: (213) 683-9100

ALLISON BROWN (*pro hac vice*)
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Tel.: (215) 268-5000

JESSICA DAVIDSON (*pro hac vice*)
jessica.davidson@kirkland.com
JOHN J. NOLAN (*pro hac vice*)
jack.nolan@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800

*Attorneys for Defendant Snap Inc.*

| | |
|---|---|
| | /s/ Ashley W. Hardin |
| | ASHLEY W. HARDIN (*pro hac vice*) |
| | ahardin@wc.com |
| | J. ANDREW KEYES (*pro hac vice*) |
| | akeyes@wc.com |
| | NEELUM J. WADHWANI (SBN 247948) |
| | nwadhwani@wc.com |
| | WILLIAMS & CONNOLLY LLP |
| | 680 Maine Avenue, SW |
| | Washington, DC 20024 |
| | Tel.: (202) 434-5000 |
| | |
| | *Attorneys for Defendants YouTube, LLC and Google LLC* |
| | |
| | /s/ Christian J. Pistilli |
| | ASHLEY M. SIMONSEN (State Bar No. 275203) |
| | asimonsen@cov.com |
| | COVINGTON & BURLING LLP |
| | 1999 Avenue of the Stars |
| | Los Angeles, California 90067 |
| | Tel.: (424) 332-4800 |
| | |
| | PHYLLIS A. JONES (*pro hac vice*) |
| | pajones@cov.com |
| | PAUL W. SCHMIDT (*pro hac vice*) |
| | pschmidt@cov.com |
| | CHRISTIAN J. PISTILLI (*pro hac vice*) |
| | cpistilli@cov.com |
| | COVINGTON & BURLING LLP |
| | One City Center |
| | 850 Tenth Street, NW |
| | Washington, DC 20001-4956 |
| | Tel.: (202) 662-6000 |
| | |
| | *Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc. and Instagram, LLC* |

| | |
|---|---|
| 1 | |
| 2 | */s/ Geoffrey M. Drake* |
| 3 | GEOFFREY M. DRAKE (*pro hac vice*) |
| | gdrake@kslaw.com |
| 4 | TACARA D. HARRIS (*pro hac vice*) |
| | tharris@kslaw.com |
| 5 | KING & SPALDING LLP |
| | 1180 Peachtree Street, NE, Suite 1600 |
| 6 | Atlanta, GA 30309 |
| 7 | Tel.: (404) 572-4600 |
| 8 | DAVID P. MATTERN (*pro hac vice*) |
| | dmattern@kslaw.com |
| 9 | KING & SPALDING LLP |
| | 1700 Pennsylvania Avenue, NW |
| 10 | Suite 900 |
| | Washington, D.C. 20006 |
| 11 | Tel.: (202) 737-0500 |
| 12 | |
| 13 | BAILEY J. LANGNER (State Bar No. 307753) |
| | *blangner@kslaw.com* |
| 14 | KING & SPALDING LLP |
| | 50 California Street, Suite 3300 |
| 15 | San Francisco, CA 94111 |
| | Tel.: (415) 318-1200 |
| 16 | |
| 17 | */s/ Daniel M. Petrocelli* |
| | DANIEL M. PETROCELLI (SBN 97802) |
| 18 | SABRINA H. STRONG (SBN 200292) |
| | O'MELVENY & MYERS |
| 19 | 1999 Avenue of the Stars |
| | 8th Floor |
| 20 | Los Angeles, CA 90067 |
| | Telephone: (310) 553-6700 |
| 21 | Email:dpetrocelli@omm.com |
| | sstrong@omm.com |
| 22 | |
| | STEVE BRODY (pro hac vice) |
| 23 | O'MELVENY & MYERS |
| | 1625 Eye Street |
| 24 | Washington, DC 20006 |
| | Telephone: (202) 383-5300 |
| 25 | Email: sbrody@omm.com |
| 26 | *Attorneys for Defendants* |
| | *TikTok Inc., ByteDance Inc., TikTok Ltd., ByteDance* |
| 27 | *Ltd., and TikTok LLC* |
| 28 | |

**ATTESTATION**

I, Jonathan H. Blavin, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED: March 9, 2026          By:  */s/ Jonathan H. Blavin*
                                        Jonathan H. Blavin