JONATHAN H. BLAVIN (State Bar No. 230269)
Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-2907
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

E. MARTIN ESTRADA (State Bar No. 223802)
Martin.Estrada@mto.com
L. ASHLEY AULL (State Bar No. 257020)
Ashley.Aull@mto.com
VICTORIA A. DEGTYAREVA (State Bar No. 284199)
Victoria.Degtyareva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

*Attorneys for Defendant Snap Inc.*

*[Additional counsel listed on signature pages]*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>*Breathitt County Board of Education v. Meta Platforms, Inc., et al.*<br>Case No.: 4:23-CV-1804 | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR-PHK<br><br>**DEFENDANTS' OPPOSITION TO BREATHITT'S MOTION IN LIMINE NO. 5, TO EXCLUDE CERTAIN OPINIONS OF TIKTOK'S EXPERT DR. CHRIS MATTMANN AND SNAP'S EXPERT DR. SANDEEP CHATTERJEE**<br><br><u>**Hearing:**</u><br>Date:   March 18, 2026<br>Time:  9:00 a.m.<br>Place:  Courtroom 1, Floor 4<br>Judge: Hon. Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 1

    A. The Experts' Content-Moderation Testimony Is Relevant Rebuttal Evidence. ............................................................................................................. 1

        1. Defendants Will Introduce Content-Moderation Expert Testimony Only If Breathitt Relies On Content-Related Evidence At Trial .................... 1

        2. Defendants' Content-Moderation Expert Testimony Is Relevant. ................. 2

        3. Defendants' Content-Moderation Expert Testimony Is Responsive ............. 4

    B. A Limiting Instruction Will Not Adequately Protect Defendants' Interests .............. 6

    C. Drs. Mattmann's and Chatterjee's Content-Moderation Opinions Are Not Improper Character Evidence ........................................................................... 8

III. CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Hana Financial, Inc. v. Hana Bank*,
  735 F.3d 1158 (9th Cir. 2013) ...................................................................................................7

*Pinterest, Inc. v. Pintrips, Inc.*,
  2015 WL 2268498 (N.D. Cal. May 14, 2015) ...........................................................................8

*Primiano v. Cook*,
  598 F.3d 558 (9th Cir. 2010) .....................................................................................................6

*In re Soc. Media*,
  702 F. Supp. 3d 809 (N.D. Cal. 2023) ...................................................................................2, 4

*In re Soc. Media*,
  754 F. Supp. 3d 946 (N.D. Cal. 2024) ...................................................................................1, 2

*Spellbound Dev. Grp. Inc. v. Pac. Handy Cutter Inc.*,
  2012 WL 8748801 (C.D. Cal. Feb. 24, 2012) ...........................................................................9

*Stevenson v. Holland*,
  504 F. Supp. 3d 1107 (E.D. Cal. 2020) .................................................................................7, 8

*U.S. Football League v. Nat'l Football League*,
  634 F. Supp. 1155 (S.D.N.Y. 1986), aff'd, 842 F.2d 1335 (2d Cir. 1988) ................................7

*United States v. Shields*,
  673 F.App'x. 625 (9th Cir. 2016) ..............................................................................................7

*In re Univ. of S. Cal. Tuition and Fees COVID-19 Refund Litig.*,
  695 F. Supp. 3d 1128 (C.D. Cal. 2023) .....................................................................................8

*Valadez v. Watkins Motor Lines, Inc.*,
  758 F.3d 975 (8th Cir. 2014) .....................................................................................................3

*Weit v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*,
  641 F.2d 457 (7th Cir. 1981) .....................................................................................................7

**RULES - OTHER**

Fed. R. Evid. 401 ..............................................................................................................................2

Fed. R. Evid. 404(a)(1) .....................................................................................................................9

## I. INTRODUCTION

Notwithstanding this Court's repeated rulings that Section 230 and the First Amendment significantly limit Plaintiffs' theories of recovery, *see, e.g.*, *In re Soc. Media*, 754 F. Supp. 3d 946, 963 (N.D. Cal. 2024), Breathitt has repeatedly relied on content-related documentary evidence, lay witness testimony, and expert opinions in attempting to establish Defendants' liability, *see infra* Section II.A.2 (discussing examples); *see also* Defs.' MIL No. 1, Dkt. No. 2804 (moving to exclude such evidence). Defendants agree that such evidence should be excluded, and have filed a motion in limine to accomplish that, such that expert opinion related to content moderation and publishing activities should be unnecessary. But given Breathitt's repeated reliance on harmful content to date, and its emphasis on Defendants' publishing activities and systems, Defendants are concerned that Breathitt will attempt to rely on these same theories at trial and are reserving their right to present evidence of content moderation practices if (and only if) content-related or publishing-activity evidence is admitted at trial.[1]

Breathitt's motion to exclude Defendants' content-moderation rebuttal expert testimony should therefore be denied as premature. If Breathitt ultimately does not introduce evidence of harmful content or publishing activities on Defendants' platforms at trial, Defendants will not rely on Dr. Mattmann's or Dr. Chatterjee's content-moderation opinions. If Breathitt is permitted to introduce any categories of content-related or publishing-activity evidence, the Court can evaluate at that time the extent to which Dr. Mattmann and Dr. Chatterjee can respond.

## II. ARGUMENT

### A. The Experts' Content-Moderation Testimony Is Relevant Rebuttal Evidence.

#### 1. Defendants Will Introduce Content-Moderation Expert Testimony Only If Breathitt Relies On Content-Related Evidence At Trial.

Breathitt's motion to exclude the content-moderation opinions of Dr. Mattmann and Dr. Chatterjee is premature. Defendants have repeatedly stated that these opinions will be offered only

---

[1] Meta and YouTube do not join this opposition because Plaintiff's MIL No. 5 concerns only the opinions of Snap's and TikTok's experts, Drs. Chatterjee and Mattmann, respectively. *See generally* Pl.'s MIL No. 5, Dkt. No. 2798.

1  if Plaintiffs affirmatively introduce content-related or publishing-activity evidence at trial. *See, e.g.*,
2  Defs.' Letter Br. Opposing Pls.' Anticipated Rule 702 Motions, Dkt. No. 2183 at 1–2 ("Drs.[]
3  Mattmann[] and Chatterjee's opinions about 'content moderation' are rebuttal opinions . . . if
4  Plaintiffs are precluded from presenting evidence regarding third-party content, protected
5  publishing activities, and content moderation, Defendants would have no need to (and would not)
6  present expert evidence on these issues."). Breathitt's attempt to exclude Defendants' rebuttal
7  evidence before seeing whether such evidence will be required puts the cart before the horse.

8  Breathitt argues that it has always focused only on feature-based harms and has "no intention
9  of bandying about bad content before the jury." Pl.'s MIL No. 5, Dkt. No. 2798 at 2:10–11, 6:14–
10 15. But Breathitt has repeatedly relied on content-related evidence over the course of this litigation,
11 notwithstanding the Court's rulings forbidding it from doing so. *See infra* Section II.A.2 (discussing
12 the extensive content-related documentary, lay witness, and expert evidence Plaintiffs have relied
13 on); Defs.' MIL No. 1, Dkt. No. 2804 (same); *see also In re Soc. Media*, 754 F. Supp. 3d 946, 963
14 (N.D. Cal. 2024) (ruling that third-party content is "no longer part of this case."); *In re Soc. Media*,
15 702 F. Supp. 3d 809, 846 (N.D. Cal. 2023) (similar). Breathitt's assurances that it will not do so at
16 trial therefore do not address Defendants' concern. If Breathitt avoids content-related and
17 publishing-activity evidence, then Defendants' experts' content-moderation opinions will be
18 unnecessary. But if such evidence is introduced at trial, Defendants must be able to rebut it.

19 **2. Defendants' Content-Moderation Expert Testimony Is Relevant.**

20 Breathitt also argues that Defendants' expert testimony on content moderation is not relevant
21 even as rebuttal evidence because it does not rebut any of Breathitt's theories or evidence. *See* Pl.'s
22 MIL No. 5 at 2:4–5; *id.* at 4:10–11, 5:18–19; *see also id.* at 4:16–19 ("None of Breathitt's claims or
23 legal theories seek to hold Defendants liable for failing to moderate content. So whether Defendants
24 are doing a good job at content moderation (or not) is neither responsive nor relevant[.]"). But this
25 argument, too, ignores the extensive evidence of harmful third-party content and publishing
26 activities on which Breathitt has relied thus far, to which evidence of Defendants' moderation efforts
27 and systems are undeniably relevant. *See* Fed. R. Evid. 401 (defining relevant evidence as evidence
28 having "any tendency to make a fact more or less probable than it would be without the evidence.").

A few examples:

- In opposition to summary judgment, Breathitt relied on evidence about third-party bullying content. *See, e.g.*, Breathitt MSJ Opp'n Ex. 5 ¶ 13, Dkt. No. 2368-7 (relying on testimony from high school counselor that third-party content "targeting students at Breathitt"—including posts with "explicitly harmful" captions, posts that "spread rumors," and "videos of fights"—was "fostering fear, anxiety, embarrassment," and "long-term damage to self-esteem" among students); *id.* Ex. 6, Dkt. No. 2368-8 (J. Hall Dep. at 59:10–21) (testifying that "kids are using" a Defendant's platform "to bully [children]").[2]

- In the omnibus opposition to summary judgment, Plaintiffs relied on documentary evidence about self-harm content. *See* Pls.' Omnibus Opp'n to Defs.' Mot. for Summ. J. ("Om. Opp'n") Ex. 161 at 3, Dkt. No. 2414-01 (relying on a coroner's report blaming the death of a 14-year-old girl on exposure to social media "content" that "romanticised acts of self-harm."); *id.* Ex. 182 at -8889, Dkt. 2757-8 (relying on company documents discussing "suicide and self-injury" content); *id.* Ex. 517 at -8487, Dkt. No. 2755-23 (same).

- Plaintiffs' expert Dr. Twenge testified that the causes of social media harm include "exposure to suicide and self-injury content," "cyberbullying," and social

---

[2] Breathitt also relied on Ms. Howard's testimony about a survey that found that 200 to 220 students "have been seen [by Breathitt administrators] due to issues explicitly related to social media," Breathitt MSJ Opp'n Ex. 14, Dkt. No. 2368-16 (K. Howard 30(b)(6) Dep. at 104:1–5), even though further questioning at Ms. Howard's deposition revealed that all of the instances cited by Breathitt were directly related to content, *id.* at 105:17–113:13 (noting "what another kid is saying" or "spread[ing]" about a student, posting of "nude" or "inappropriate pictures," a "gay pride poster," a "trust[/]do not trust list," "videos of fight[s]," "threats," and "cyberbullying" as a "complete list"). Were Breathitt to admit this or similar evidence at trial, Defendants must at minimum be allowed on cross-examination to probe such generalized testimony and show the jury that the testimony is based on protected content or features, without being found to have "opened the door" to other evidence about content and protected features. *See Valadez v. Watkins Motor Lines, Inc.*, 758 F.3d 975, 981 (8th Cir. 2014) ("[T]he door is not opened to all similar, inadmissible evidence . . . . The doctrine of opening the door cannot 'be subverted into a rule for injection of prejudice.'"); *see also* Defs.' MIL No. 1 at 5:17–6:2.

- comparison content. Pls.' Resp. to Mot. to Exclude GC Test. ("GC Opp'n") Ex. 76 (Twenge MDL Dep. 390:7–17, 395:6–13, 398:1–22, 402:7–403:24), Dkt. No. 2535-77.

- Plaintiffs' expert Dr. Lembke testified that social media leads to eating disorders by "push[ing] increasingly potent images," like "anorexia-related content." GC Opp'n Ex. 1 (A. Lembke JCCP Dep. 225:16–226:5), Dkt. No. 2535-2.

- Plaintiffs' expert Ms. Istook consistently emphasizes allegedly harmful content, *see, e.g.*, Om. Opp'n Ex. 995 ¶ 64, Dkt. No. 2577-45 ("nude content"), ¶ 89 ("severe harms [on Snapchat] include child sexual abuse material"), ¶ 100 ("nude photos leaked on the platform"), ¶ 206 ("deep fake nudes circulating on social media and in schools"),[3] going far beyond this Court's holding that certain deficiencies in user reporting processes for CSAM are actionable, *see In re Soc. Media*, 702 F. Supp. 3d at 836.[4]

To be sure, this content-related and publishing-activity evidence should be excluded and is the subject of Defendants' motion in limine to exclude evidence of content and features protected by Section 230 and the First Amendment. *See* Defs.' MIL No. 1. But if any content-related or publishing-activity evidence is introduced at trial, testimony from Defendants' experts regarding content moderation would be plainly admissible in response.

### 3. Defendants' Content-Moderation Expert Testimony Is Responsive.

Finally, Breathitt argues that Dr. Mattmann's and Dr. Chatterjee's opinions are not sufficiently responsive to the evidence Breathitt might introduce at trial. This argument, too, is

---

[3] *See also, e.g.*, Om. Opp'n Ex. 995 ¶ 25 ("child's intimate images"), ¶ 34 ("nude or sexualized images"), ¶ 93 ("child exploitation material"), ¶ 195 ("nudity or unwanted sexual images"), ¶ 203 ("images that may contain nudity), ¶ 205 ("distribution of intimate images").

[4] As part of the parties' expert withdrawal stipulation, Plaintiffs reserved the right to present testimony from Dr. Twenge and Dr. Lembke. Dkt. No. 2808 at 1:28–2:1. And while Plaintiffs have separately withdrawn Ms. Istook's opinions as to Meta, YouTube, and TikTok, they have refused to do so as to Snap. The content-heavy nature of Ms. Istook's opinions about online sexual harms (and Plaintiffs' refusal to withdraw those opinions as to Snap) underscores Snap's need to reserve the right to present Dr. Chatterjee's rebuttal opinions about content moderation.

premature—the Court should evaluate whether Dr. Mattmann's and Dr. Chatterjee's opinions are responsive in the context of specific evidence Breathitt might introduce.

Regardless, Breathitt's arguments lack merit. First, Breathitt argues that Defendants' rebuttal expert opinions about content moderation are not responsive to Breathitt's expert opinions about content recommendation because the two are unrelated. Pl.'s MIL No. 5 at 4:5–13 ("Whether, how, to what extent, and for what purpose Defendants moderate content says nothing about whether, how, to what extent, and for what purpose they recommend content that it allows onto its platform. The former set of questions are irrelevant to this case."); *id.* at 7:26 ("[T]hese systems are both factually *and* causally distinct."). But content recommendation and content moderation are two sides of the same coin: a user cannot be recommended content that has been moderated off the platform, and one key method of moderating content is refusing to recommend it or recommending it less. *See* Pl.'s MIL No. 5, Ex. 3 (Chatterjee R.) ¶ 93, Dkt. No. 2799-5 (explaining that Snap "limits virality by heavily moderating content . . . before it can ever reach a wide audience."). The protected practice of recommending content cannot be disentangled from the protected practice of moderating content, as described by, for instance, Dr. Mattmann in his Rebuttal report. *See infra* Section II.C. In any event, Dr. Mattmann's and Dr. Chatterjee's opinions about content moderation are also responsive to a host of content-related evidence that Breathitt might rely on. *See supra* Section II.A.2 (discussing Plaintiffs' extensive content-related documentary, lay witness, and expert evidence). In the face of such extensive evidence of content on the platforms, whether Dr. Mattmann's and Dr. Chatterjee's opinions respond specifically to Plaintiffs' experts' opinions about content recommendation is ultimately beside the point: content moderation is responsive any time evidence of content is in play.

Breathitt's second argument appears to be based entirely on a mistake. Specifically, Breathitt claims that "Dr. Mattmann's opening report . . . includes one hundred and six paragraphs in the 'Content Moderation' section without a single cite to a single Plaintiffs' expert report," such that it cannot be a "rebuttal" report. Pl.'s MIL No. 5 at 4. But the report Breathitt cites was served only in the JCCP. In this MDL, Dr. Mattmann prepared and served only a rebuttal report, attached as Exhibit 2 to the Motion, within which Dr. Mattmann directly responds to Plaintiffs' experts'

opinions on TikTok's content moderation system. *See* Pl.'s MIL No. 5, Ex. 2 (Mattmann R.) ¶¶ 917–1153, Dkt. No. 2799-4 (providing rebuttal opinions to eight of Breathitt's experts); *see also id.* ¶¶ 962–971, 974, 981, 984, 1004–10, 1014, 1033, 1048–49, 1054, 1057, 1060 (specifically rebutting expert opinions regarding the design of TikTok's content moderation systems).

Third, Breathitt also argues that Defendants' content-moderation opinions are not relevant because Dr. Mattmann and Dr. Chatterjee "opine only on the *current state* of Defendants' content moderation practices, not the state of content moderation throughout the relevant time period." Pl.'s MIL No. 5 at 6:28–7:1 (emphasis in original). This argument is wrong as a matter of both fact and law. As a factual matter, Breathitt is wrong that Dr. Chatterjee's and Dr. Mattmann's opinions are limited to how Defendants' content moderation practices currently operate. For example, Dr. Chatterjee's report discusses testimony and internal documents reflecting the historical evolution of Snap's moderation policies and processes. *See, e.g.*, Pl.'s MIL No. 5, Ex. 3 ¶ 90 n.59 (citing to witness testimony regarding the evolution of Snap's moderation approach to "suggestive" and "sensitive" content); *id.* ¶ 91 n.61 (similar). And while he cites to a July 2025 version of Snap's Community Guidelines in support of several opinions, Snap's Community Guidelines have changed very little for many years. Breathitt has also badly missed the mark with respect to Dr. Mattmann, whose report includes a section detailing the "History and Development" of TikTok's content moderation system, spanning from August 2018 when TikTok launched in the United States to the date of his report. Pl.'s MIL No. 5, Ex. 2 ¶¶ 139–166.[5] Regardless, even if this argument were supported, it would merely go to the weight the jury should assign to these experts' opinions; it does not warrant exclusion. *See Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.").

### B. A Limiting Instruction Will Not Adequately Protect Defendants' Interests.

Breathitt also argues that the "best way" for the Court to cure Breathitt's potential violation

---

[5] Breathitt is correct that Dr. Mattmann's opinion does not reach back to 2014, but that period, of course, predates TikTok's existence. Dr. Mattmann has identified the full lifecycle of TikTok's content moderation system beginning when TikTok launched.

of the Court's rulings about content-related evidence is to determine—right now—that if Breathitt introduces content-related or publishing-activity evidence at trial, a limiting instruction will suffice and Defendants should not be able to introduce rebuttal evidence. Pl.'s MIL No. 5 at 7. Breathitt's argument is inconsistent with the Court's prior orders and relevant precedent, as explained more fully in Defendants' MIL No. 1. *See* Defs.' MIL No. 1 at 9–10; *see also Weit v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*, 641 F.2d 457, 467 (7th Cir. 1981) (the "more likely result" when significant evidence is introduced regarding protected conduct, even with a cautionary instruction, is that the jury will improperly base liability on such conduct); *United States v. Shields*, 673 F.App'x. 625, 628 (9th Cir. 2016) (a limiting instruction will not suffice where improperly admitted evidence is "highly prejudicial"); *U.S. Football League v. Nat'l Football League*, 634 F. Supp. 1155, 1181 (S.D.N.Y. 1986), *aff'd*, 842 F.2d 1335 (2d Cir. 1988) (a limiting instruction can be "quickly eviscerated" by the admission of evidence of protected conduct that is "clearly designed to place defendants in the harshest light").

But apart from the legal deficiencies in relying on a limiting instruction explained in Defs.' MIL No. 1 at 9–10, Breathitt's request fails as a matter of logic. First, as Breathitt correctly notes, the Court previously ruled that, rather than pre-exclude expert opinions that may cross the line between admissible and inadmissible topics, the Court would "deal with evidence according to Rule 403" "[a]t trial"—*i.e.*, when those opinions are being introduced. Dkt. No. 2728 at 18 n.9. The Court's prior ruling defeats Breathitt's request. If Breathitt improperly introduces content-related or publishing-activity evidence at trial, then Defendants must be permitted to rebut that evidence, all of which will be subject to Rule 403 objections that can be properly addressed "[a]t trial." *Id.* Second, each of the considerations Breathitt lists is best addressed at trial when the Court is able to evaluate them in the specific context in which they arise. "[A] court is almost always better situated during the actual trial to assess the value and utility of evidence" than months before it. *Stevenson v. Holland*, 504 F. Supp. 3d 1107, 1114 (E.D. Cal. 2020) (citing *Hana Financial, Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n.4 (9th Cir. 2013)). That rings especially true with this request, where Plaintiffs attack *rebuttal* evidence, the admissibility of which will necessarily depend on what is being rebutted. *Pinterest, Inc. v. Pintrips, Inc.*, 2015 WL 2268498, at *3 (N.D. Cal. May 14, 2015)

(denying motion in limine to exclude testimony based on the moving party's assumptions of how trial may proceed); *In re Univ. of S. Cal. Tuition and Fees COVID-19 Refund Litig.*, 695 F. Supp. 3d 1128, 1154 (C.D. Cal. 2023) (declining as premature request to exclude expert opinion for lack of relevance in advance of trial).[6]

Third, Breathitt speaks out of both sides of its mouth in claiming that Defendants' anticipated rebuttal evidence on content moderation would be "collateral," "change the focus of trial," and "eat up cross-examination time." Pl.'s MIL No. 5 at 7–8. As noted throughout, Defendants agree that evidence of content and publishing activities should not be admitted and that trial should focus only on alleged harm from the non-content, non-publishing features that this Court has deemed actionable. But Plaintiffs have made clear that they oppose this view; if evidence about content-related harms is offered at trial, Defendants of course must be able to respond. Far from being "collateral," such evidence would be essential to rebutting issues that Breathitt will have raised despite this Court's orders barring content-related evidence.

C.  **Dr. Mattmann's and Dr. Chatterjee's Content-Moderation Opinions Are Not Improper Character Evidence.**

As a last-ditch effort, Breathitt disparages Defendants' experts' qualifications and expertise—like inventing the title "social media researcher" to describe Dr. Mattmann—and they reconstruct and reduce these experts' opinions to "good character" tropes. Pl.'s MIL No. 5 at 3, 8–9. But nowhere in these experts' reports, and nowhere in their depositions, did these highly qualified computer scientists opine on the morality or character of Defendants to prove that Defendants acted in conformity with that character at some other point in time. *See* Fed. R. Evid. 404(a)(1) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the

---

[6] Breathitt also makes a passing attack on the evidentiary foundation of Dr. Mattmann's and Dr. Chatterjee's opinions, suggesting the experts cannot repeat what they learned in company documents. Pl.'s MIL No. 5 at 9. Breathitt presumes that there will not be an adequate foundation for some unspecified set of documents upon which these experts relied. This question, too, should be reserved for trial, when the Court can evaluate what was necessary or offered. *Stevenson v. Holland*, 504 F. Supp. 3d 1107, 1114 (E.D. Cal. 2020) ("To exclude evidence on a motion in limine, the evidence must be inadmissible on all potential grounds. Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context.") (quotation marks omitted).

person acted in accordance with the character or trait."). Their technical opinions instead evaluate the design of the technological systems that Plaintiffs attack as flawed. Dr. Mattmann's and Dr. Chatterjee's opinions are thus relevant and admissible as rebuttal opinions in the event Breathitt lodges those attacks at trial. *Spellbound Dev. Grp. Inc. v. Pac. Handy Cutter Inc.*, 2012 WL 8748801, at *4 (C.D. Cal. Feb. 24, 2012) ("This evidence is not character evidence because it is not introduced to show character, but rather to show the acts that Defendant alleges *are* unfair business practices or unfair competition.").

The specifics of Dr. Mattmann's and Dr. Chatterjee's opinions underscore that they are not improper character evidence. For example, in his rebuttal report, Dr. Mattmann directly responds to the numerous Plaintiffs' experts who all reached beyond their personal areas of expertise and (unsuccessfully) attempted to wade into the technical design of TikTok's platform. Some of the affirmative opinions propounded by Plaintiffs' experts required Dr. Mattmann to opine on the design of TikTok's content moderation system. As one example, Plaintiffs' expert Dr. Arvind Narayanan opined: "The recommendation algorithms used by each of Defendants' social media platforms are separate from the content moderation algorithms used by those platforms, although the two interact in limited ways." Om. Opp'n Ex. 985 (Narayanan R.) ¶ 1, Dkt. No. 2577-35. But Dr. Mattmann explains in his Rebuttal report that this opinion is wrong from a technical perspective: "TikTok's [content recommendation] architecture integrates content moderation against community guidelines on every video *prior to uploading*. That is a significant *architectural distinction* from other major social media platforms, that rely on a post-publication reporting model to identify and remove offending content." Pl.'s MIL No. 5, Ex. 2 ¶ 921 (second emphasis added). He offers a design opinion that requires evaluation of TikTok's content moderation system, but which has nothing to do with TikTok's character or propensity. If Dr. Narayanan is permitted to opine on the technical design of TikTok's content moderation system, then Dr. Mattmann must be permitted to rebut that opinion to correct it.

Like Dr. Mattmann, Dr. Chatterjee applied his decades of experience to evaluate Snap's technical architecture and rebut Plaintiffs' experts' opinions about the design of Snap's features. As one example, Dr. Narayanan opined for Plaintiffs that Snap's recommendation algorithms are

designed to drive engagement above all else, on the basis that the only metrics for the algorithm that Dr. Narayanan had encountered related to view time. Dr. Chatterjee, however, responds in his report that this overlooks the fact that Snap's content moderation procedures limit virality and restrict engagement. *See* Pl.'s MIL No. 5, Ex. 3 ¶ 93. His rebuttal has nothing to do with Snap's propensity. It relates instead to Dr. Narayanan's mistaken understanding of how Snap's recommendations algorithm interacts with its content moderation practices.

### III. CONCLUSION

The Court should deny Breathitt's motion in limine No. 5 to exclude certain opinions of TikTok's expert Dr. Chris Mattmann and Snap's expert Dr. Sandeep Chatterjee.

| | | |
|---|---|---|
| 1 | DATED:  March 9, 2026 | Respectfully submitted, |
| 2 | | MUNGER, TOLLES & OLSON LLP |
| 4 | | By:  /s/ Jonathan H. Blavin |

JONATHAN H. BLAVIN (SBN 230269)
Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel: (415) 512-4000

E. MARTIN ESTRADA (SBN 223802)
Martin.Estrada@mto.com
L. ASHLEY AULL (SBN 257020)
Ashley.Aull@mto.com
VICTORIA A. DEGTYAREVA (SBN 284199)
Victoria.Degtyareva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel.: (213) 683-9100

ALLISON BROWN (*pro hac vice*)
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Tel.: (215) 268-5000

JESSICA DAVIDSON (*pro hac vice*)
jessica.davidson@kirkland.com
JOHN J. NOLAN (*pro hac vice*)
jack.nolan@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800

*Attorneys for Defendant Snap Inc.*

|   |   |
|---|---|
| 1 |   |
| 2 | /s/ Geoffrey M. Drake |
| 3 | GEOFFREY M. DRAKE (*pro hac vice*)<br>gdrake@kslaw.com |
| 4 | TACARA D. HARRIS (*pro hac vice*)<br>tharris@kslaw.com |
| 5 | KING & SPALDING LLP<br>1180 Peachtree Street, NE, Suite 1600 |
| 6 | Atlanta, GA 30309 |
| 7 | Tel.: (404) 572-4600 |
| 8 | DAVID P. MATTERN (*pro hac vice*)<br>dmattern@kslaw.com |
| 9 | KING & SPALDING LLP |
| 10 | 1700 Pennsylvania Avenue, NW<br>Suite 900 |
| 11 | Washington, D.C. 20006<br>Tel.: (202) 737-0500 |
| 12 |   |
| 13 | BAILEY J. LANGNER (State Bar No. 307753)<br>*blangner@kslaw.com* |
| 14 | KING & SPALDING LLP<br>50 California Street, Suite 3300 |
| 15 | San Francisco, CA 94111<br>Tel.: (415) 318-1200 |
| 16 |   |
| 17 | /s/ Daniel M. Petrocelli<br>DANIEL M. PETROCELLI (SBN 97802) |
| 18 | SABRINA H. STRONG (SBN 200292)<br>O'MELVENY & MYERS |
| 19 | 1999 Avenue of the Stars<br>8th Floor |
| 20 | Los Angeles, CA 90067<br>Telephone: (310) 553-6700 |
| 21 | Email:dpetrocelli@omm.com<br>       sstrong@omm.com |
| 22 | STEVE BRODY (pro hac vice) |
| 23 | O'MELVENY & MYERS<br>1625 Eye Street |
| 24 | Washington, DC 20006<br>Telephone: (202) 383-5300 |
| 25 | Email: sbrody@omm.com |
| 26 | *Attorneys for Defendants*<br>*TikTok Inc., ByteDance Inc., TikTok Ltd., ByteDance* |
| 27 | *Ltd., and TikTok LLC* |
| 28 |   |

**ATTESTATION**

I, Jonathan H. Blavin, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED:  March 9, 2026               By:   */s/ Jonathan H. Blavin*
                                                   Jonathan H. Blavin