# EXHIBIT B

CONFIDENTIAL

Page 1

1    SUPERIOR COURT OF THE STATE OF CALIFORNIA
          FOR THE COUNTY OF LOS ANGELES
2              SPRING STREET COURTHOUSE
3    _____
                                    |
4    COORDINATION PROCEEDING        | JUDICIAL COUNCIL
     SPECIAL TITLE [RULE 3.400]     | COORDINATION PROCEEDING
5                                   | NO. 5255
     IN RE: SOCIAL MEDIA            |
6    ADOLESCENT ADDICTION           | Lead Case Number For
     (JCCP No. 5255)                | Filing Purposes:
7    _____| 22STCV21355
                                    |
8    THIS DOCUMENT RELATES TO:      | Assigned Coordination
                                    | Judge: Hon Carolyn B. Kuhl
9    Christina Arlington Smith,     | SSC-12
     et al., v. TikTok Inc.,        |
10   et al.,                        |
     Case No. 22STCV21355,          |
11   Los Angeles Superior Court     |
     _____|
12
13
14   VIDEOTAPED DEPOSITION OF KEITH N. HAMPTON, PH.D.
15                   CONFIDENTIAL
16              Wednesday, July 2, 2025
17                   9:12 a.m.
18
19   Taken at:
20   Marriott East Lansing at University Place
     Great Lakes Conference Room
21   300 M.A.C. Avenue
     East Lansing, Michigan  48823
22
23   Reported by:  Carol A. Kirk, RMR, CSR-9139
24
             Golkow, a Veritext Division
25        877.370.DEPS - fax 917.591.5672
                 deps@golkow.com

Page 7

1                      - - -
2            P R O C E E D I N G S
3                      - - -
4           THE VIDEOGRAPHER:  We are now on
5    the record, and the time is 9:12 a.m.
6           This is the video deposition of
7    Keith Hampton in the matter of the
8    Social Media Litigation, JCCP Number
9    5255, et al. versus Tik Tok, Inc.
10          This deposition is being held in
11   East Lansing, Michigan on July 2, 2025.
12          My name is Caleb Arndt, and I'm
13   the videographer.  The court reporter is
14   Carol Kirk.
15          Counselors, please introduce
16   yourselves and your affiliations, and
17   the witness will be sworn.
18          MR. KIEFFER:  John Kieffer on
19   behalf of the plaintiffs.
20          MR. HYDE:  Jack Hyde on behalf of
21   the plaintiffs.
22          MS. HORVATH:  Lisa Horvath with
23   King & Spalding on behalf of defendant
24   TikTok.
25          We need Zoom appearances.  And for

1         those of you on Zoom, the court reporter
2         is going to need you to speak up loudly.
3              (Inaudible.)
4              (Discussion held off the record.)
5                      - - -
6              KEITH N. HAMPTON, Ph.D.
7    being by me first duly sworn, as hereinafter certified,
8    testifies and says as follows:
9                   CROSS-EXAMINATION
10   BY MR. KIEFFER:
11        Q.   Good morning.
12        A.   Good morning.
13        Q.   Will you state your name for the
14   record, please.
15        A.   Keith Neil Hampton.
16        Q.   Sir, my name is John Kieffer.  I'm a
17   lawyer.  I represent the plaintiffs in this
18   litigation, both individuals and school districts,
19   who've filed various lawsuits against certain
20   social media companies.
21             Do you understand that?
22        A.   Yes.
23        Q.   And do you understand that you've
24   been disclosed as an expert witness on behalf of
25   the defendant social media companies in this

Page 167

1  ago, I said, "You don't believe in any risks
2  related to social media?"  And you said, "I don't
3  believe there is any evidence of harm from social
4  media," correct?
5           A.    Correct.
6           Q.    So for the record, that is your --
7  one of your opinions in this case, there is no
8  evidence of harm from social media?
9           A.    Correct.
10          Q.    None?
11          A.    None.
12          Q.    None at all?
13          A.    None.
14          Q.    Okay.  Nothing but a moral panic,
15 right?
16          A.    There is no evidence based on
17 reliable data of harm.
18          Q.    Okay.  Absolute harm, relative harm,
19 any kind of harm, right?
20                MS. HORVATH:  Objection; form,
21      vague.
22          A.    So the available evidence does not
23 support evidence of harm.
24          Q.    And the evidence you would need to
25 see is a randomized controlled trial?

Page 168

1      A.    It would be nice.  I am not
2  convinced that it's possible in this context.  And
3  so I would be likely to put more weight on
4  well-designed longitudinal observational studies.
5      Q.    Okay.  Would you ever make a
6  conclusion about the relative harm of social media
7  compared to something else based on a single
8  cross-sectional survey?
9      A.    Never.
10     Q.    Never?
11     A.    No.
12     Q.    Okay.  So if one were to say social
13 media is more harmful or less harmful than X based
14 on a single cross-sectional survey, you would say
15 what?  Bad science?
16     A.    No, because I believe such
17 comparisons can inform theory, but that's not a
18 causal -- you asked me about a causal explanation.
19 And so I wouldn't support a causal explanation.
20     Q.    Causal explanation could be social
21 media causes harm or social media is more harmful
22 or less harmful than something else, true?
23          MS. HORVATH:  Objection.
24     Q.    Absolute harm, relative harm?
25          MS. HORVATH:  Objection; compound,

Page 222

1  Q. Okay. If you turn the page, there's
2  a section called "Endnotes."
3  Do you see that?
4  A. Yes.
5  Q. And you recognize what those are?
6  A. Yes.
7  Q. Okay. And those go on for several
8  pages, over to page 25. And if we look, there's
9  104 of them.
10  A. Okay.
11  Q. Okay. So there's more here than
12  just a policy advisory. There's actually studies
13  and information cited if one cares to see what it
14  is and look at it for themselves, right?
15  MS. HORVATH: Objection; form,
16  vague, overbroad.
17  A. There's a reference section and
18  notes.
19  Q. With a lot of references?
20  A. There is 104 of them.
21  Q. Okay. That's quite a few, right?
22  MS. HORVATH: Objection.
23  A. I have over 1,000.
24  Q. In a single paper?
25  A. In this report that I've given you.

Page 223

```
 1   Or pretty close to 1,000.
 2           Q.    Yeah.
 3           A.    So 104, relative.  We'll call it
 4   that.  Is it thorough?
 5           Q.    Yeah.  I don't know if the Surgeon
 6   General got paid a half a million dollars do this
 7   or not.
 8                 MS. HORVATH:  Objection to
 9           comments by counsel.  Argumentative.
10           Move to strike.
11           Q.    In your over 1,000 references --
12   let's talk about that for a second.
13                 Your report is how many pages long?
14                 MS. HORVATH:  The original one?
15                 MR. KIEFFER:  Yeah.
16           A.    The original one, including my CV
17   and references?
18           Q.    No, just the report, the body.
19           A.    Not including the references?
20           Q.    You can include the references if
21   you want.
22           A.    It's your question, so I leave it to
23   you.  Let's see.
24                 272 pages.
25           Q.    272 pages.
```

```
                                              Page 230
 1   researchers typically use that term.
 2        A.    My review is systematic.
 3        Q.    Is that the same as a systematic
 4   review?
 5        A.    There are a lot of methodologies
 6   called systematic review.  I'm not sure I met the
 7   criteria that you are describing, but my review
 8   was systematic.
 9        Q.    Okay.  You didn't have any
10   particular methodology as you went about preparing
11   your report, true?
12              MS. HORVATH:  Objection; form.
13        Q.    There's no section in --
14              MS. HORVATH:  Misstates his
15        testimony.
16        Q.    There's no section in your report
17   that even is titled methodology or any attempt to
18   describe a methodology?
19              MS. HORVATH:  Objection;
20        argumentative.
21        A.    So I reviewed the literature in this
22   area, including reading all the studies that are
23   included in my report, and so that review was
24   systematic, and so yes.
25        Q.    When you say you reviewed all the
```

Page 250

1  in that paper.
2        Q.    But you didn't review the paper?
3        A.    I'm familiar with that paper.
4        Q.    It's not -- it's not on your list.
5  I asked you is there -- is this everything you've
6  reviewed for the case --
7              MS. HORVATH:  Objection.
8        Q.    -- and your answer was yes.
9              MS. HORVATH:  Objection; form,
10       misstates his testimony.
11       A.    So as I previously said, I have
12  reviewed a lot of literature in this area over my
13  career.  I think that this paper might even be in
14  one of the courses I offer.  I've certainly seen
15  it.  Everything that's in this report is cited to
16  the best of my ability.
17             But as I've mentioned, there's a lot
18  of literature in this area that I have seen and
19  been exposed to.  The list of literature that
20  I reviewed is certainly more extensive than is in
21  any of the plaintiffs' reports, and so I feel like
22  it has done a very strong job of reviewing
23  literature in this area.
24       Q.    I wasn't asking you -- we're not in
25  a citation competition, sir, with the plaintiffs'

Page 263

1  considered something.  My question isn't what you
2  might think be relevant.
3              My question is, did you consider
4  something.  Did you actually even look at it in
5  the course of your work in this case?  And it
6  sounds like the answer to this Lonergan article is
7  you did not even look at it, true?
8              MS. HORVATH:  Objection; misstates
9         his testimony, calls for speculation.
10        A.    So I can't recall if I've seen this
11 article before.  However, I would put no weight or
12 little weight, if any, on a study that is
13 cross-sectional in nature, and so I wouldn't have
14 included it.
15        Q.    Okay.  You'd put little or no weight
16 on the study even though you did not even look at
17 it?
18             MS. HORVATH:  Objection; misstates
19        his testimony.  That's not what he said.
20        A.    So just to repeat what I thought
21 I said, which is, is that I can't recall if
22 I actually read the study or not.  I have a
23 feeling that I have.
24             But if it is cross-sectional in
25 nature, I would not then have given it enough

CONFIDENTIAL

Page 292

```
 1           Q.    But you know better?
 2                 MS. HORVATH:  Objection;
 3        argumentative.
 4                 You don't have to answer that
 5        question.
 6           A.    I mean, it's well established.
 7           Q.    It's your testimony -- let me get
 8   this right.  It's your --
 9           A.    To be clear, so it's well
10   established that nonscientific literature, when it
11   asks -- when it's providing statistics about
12   prevalence of something, if we don't know that
13   scientific, then there's a high risk of bias, and
14   so we don't give it weight.
15           Q.    Is it your testimony that what the
16   Surgeon General describes as a national
17   representative survey is non- -- is not scientific
18   information?
19           A.    Like I said, it is unclear, because
20   it is not peer-reviewed.
21           Q.    Well, let's unpack that.
22           A.    Okay.
23           Q.    Because I heard you say a couple of
24   times it's not scientific information.  And this
25   is an important point to me, okay?
```

Page 368

1              It is not a randomized controlled
2    trial, true?
3         A.   True.
4         Q.   It is not a longitudinal study over
5    time, true?
6         A.   This is just one snapshot.
7         Q.   Yeah.  Would you characterize it as
8    even cross-sectional?
9         A.   Yes.
10        Q.   It's cross-sectional.  It is one
11   snapshot in time over a two-month period of 3,258
12   students in rural Michigan, right?
13        A.   It is one snapshot in time.  It's
14   not over time at all.  It is one snapshot that was
15   taken in that time period.
16        Q.   Okay.  Thank you for the correction.
17             The data was obtained by means of a
18   survey.  That's the snapshot, and that survey was
19   administered in the May/June time frame of 2019,
20   correct?
21        A.   Correct.
22        Q.   Okay.  That survey consisted of
23   27 questions; is that right?
24        A.   It sounds about right.
25        Q.   Okay.

Page 401

```
 1   studies the Surgeon General specifically cited,
 2   correct?
 3                MS. HORVATH:  Objection; misstates
 4         his testimony, assumes facts not in
 5         evidence.
 6         A.    So I excluded specific studies that
 7   we discussed.
 8         Q.    Okay.  When you say "excluded,"
 9   you're not testifying you considered them, studied
10   them in detail, looked at their methodology, and
11   chose to exclude them; you just didn't review
12   them?
13                MS. HORVATH:  Objection; misstates
14         his testimony.
15         A.    So that's not what I've said.  And
16   excluded is probably the wrong word.  The word
17   would be "gave no weight."
18         Q.    Gave them no weight?
19         A.    That's right.
20         Q.    Ignored them, in other words?
21                MS. HORVATH:  Objection; misstates
22         his testimony.
23         A.    No.  If I read it, I'm not ignoring
24   it.  There are reasons to exclude studies, such as
25   they're not scientific, or there is no way of
```

Page 402

1   assessing the scientific validity.
2           Q.    What you read for this case is what
3   you've itemized on Appendix A, correct?
4                 MS. HORVATH:  Objection; asked and
5           answered, harassing.  He's answered this
6           question now -- I don't know -- 30, 40
7           times.
8                 MR. KIEFFER:  His answer keeps
9           changing.
10                MS. HORVATH:  No.  His answer has
11          been the same and consistent.
12                MR. KIEFFER:  Now he's implying he
13          read everything, including --
14                MS. HORVATH:  You just don't like
15          it.  He's been saying all along --
16                THE WITNESS:  That is not what
17          I said.
18                MS. HORVATH:  -- he thinks he read
19          a lot of these.  He just didn't include
20          them on his appendix.  He's been in this
21          profession for 30 years.  He's testified
22          extensively on this question over an
23          over.
24  BY MR. KIEFFER:
25          Q.    The over 90 pieces of literature in

Page 412

```
 1                    CERTIFICATE
 2    STATE OF MICHIGAN        :
                               SS:
 3    COUNTY OF GRAND TRAVERSE :
 4            I, Carol A. Kirk, a Registered Merit Reporter
      and Notary Public in and for the State of Michigan,
 5    duly commissioned and qualified, do hereby certify that
      the within-named KEITH N. HAMPTON, Ph.D., was by me
 6    first duly sworn to testify to the truth, the whole
      truth, and nothing but the truth in the cause
 7    aforesaid; that the deposition then given by him was by
      me reduced to stenotype in the presence of said
 8    witness; that the foregoing is a true and correct
      transcript of the deposition so given by him; that the
 9    deposition was taken at the time and place in the
      caption specified and was completed without
10    adjournment; and that I am in no way related to or
      employed by any attorney or party hereto or financially
11    interested in the action; and I am not, nor is the
      court reporting firm with which I am affiliated, under
12    a contract as defined in Civil Rule 28(D).
13            IN WITNESS WHEREOF, I have hereunto set my
      hand and affixed my seal of office at Traverse City,
14    Michigan on this 3rd day of July 2025.
15
16                    *Carol A Kirk* (signature)
17
18           _____
              CAROL A. KIRK, RMR, CSR-9139
19            NOTARY PUBLIC - STATE OF MICHIGAN
20
21    My Commission Expires:  August 19, 2029.
22                     - - -
23
24
25
```