[*Submitting Counsel on Signature Page*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047<br><br>Case No. 4:22-md-3047-YGR<br><br>**REDACTED – PUBLICLY FILED VERSION**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 1 (TO EXCLUDE EVIDENCE OF CONTENT AND FEATURES PROTECTED BY SECTION 230 AND THE FIRST AMENDMENT)** |
| This Document Relates to:<br><br>*Breathitt County Board of Education v. Meta Platforms, Inc., et al.*<br>Case No.: 4:23-cv-01804 | Judge: Hon. Yvonne Gonzalez Rogers<br><br>Magistrate Judge: Hon. Peter H. Kang |

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................. 1

II.  ARGUMENT ................................................................................................................... 2

    A.  Attempted Exclusions Based on Third-Party Content ......................................... 2

    B.  Attempted Exclusions Based on Likes .................................................................. 5

    C.  Attempted Exclusions Based on Recommendation Algorithms ......................... 5

    D.  Attempted Exclusions Based on Account Recommendation Features ............. 7

    E.  Attempted Exclusions Based on User Geolocation Features .............................. 7

    F.  Attempted Exclusions Based on Rewards Features ............................................ 8

    G.  Attempted Exclusions Based on Ephemerality Features .................................... 8

    H.  Attempted Exclusions Based on Endless Scroll and Autoplay ........................... 8

    I.  Attempted Exclusions Based on Notifications .................................................... 10

    J.  Defendants' (Renewed) Challenge to Expert Testimony on "Protected Features & Content" ....... 10

III. CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

Cases                                                                 Page(s)

*Barry v. Shell Oil Co.*,
   2018 WL 2327369 (D. Alaska May 22, 2018) .................................................................................. 2

*Calise v. Meta Platforms, Inc.*,
   103 F.4th 732 (9th Cir. 2024) ........................................................................................................ 1, 3

*Doe 1 v. Twitter, Inc.*,
   148 F.4th 635 (9th Cir. 2025) ........................................................................................................... 3

*Est. of Bride by & through Bride v. Yolo Techs., Inc.*,
   112 F.4th 1168 (9th Cir. 2024) ..................................................................................................... 1, 3

*In Re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*,
   4:22MD03047, Order Denying Motion For Summary Judgment, Dkt. 2728 (N.D. Cal. Feb. 9,
   2026) ("MSJ Order") ............................................................................................................ *passim*

*In Re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*,
   4:22MD03047, Order Denying Rule 702 Motion to Exclude School District Experts, Dkt. 2750
   (N.D. Cal. Feb. 17, 2026) ("Rule 702 Order") ............................................................................ 1, 10

*In Re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*,
   4:22MD03047, Order Granting in Part and Denying in Part Defendants' Motions to Dismiss,
   Dkt. 430 (N.D. Cal. Nov. 14, 2023) ("PI MTD Order") ....................................................... 1, 5, 6, 7

*Lemmon v. Snap, Inc.*,
   995 F.3d 1085 (9th Cir. 2021) .......................................................................................................... 8

## I. INTRODUCTION

Defendants' motion in limine is premised on the same all-or-nothing understanding of Section 230 and the First Amendment that this Court has repeatedly rejected. Dkt. 2728 at 18-19, 30-31 ("MSJ Order"); Dkt. 2750 at 11-12 ("Rule 702 Order"); Dkt. 430 at 14 ("PI MTD Order"). In denying summary judgment, the Court rejected Defendants' sweeping argument that "evidence, including expert opinion, that fails to disentangle the effects of protected and unprotected features cannot be considered…." MSJ Order at 18 n.9. It also rejected their argument that Breathitt could not rely on evidence of Defendants' independent knowledge of a foreseeable risk of harm to prove their failure to warn. *Id.* at 30-31. The Court then said it would "deal with evidence according to Rule 403"—*i.e.*, it would consider the probative value of each relative to its prejudice, rather than assume some evidence is categorically barred. *Id.* at 18 n.9; *see also* Standing Order re: Pre-Trial Instructions in Civil Cases § 4(a) ("Parties frequently misuse motions *in limine*" to "attempt to exclude broad categories of possible evidence.").

Some habits, however, are hard to break. Defendants again seek to exclude key evidence they had independent knowledge their platforms were addictive, where that knowledge is based on features the Court determined are not actionable under a design defect theory. *Contra* MSJ Order at 30-31; Standing Order § 4(a) ("Motions [in limine] brought to re-litigate an issue will be denied as procedurally defective."). This gets the law wrong: Section 230 does not protect Defendants from a duty to warn of known risks attendant to use of those features, because that duty *would not* require Defendants to change anything about how, what, or when they publish. *See* MSJ Order at 30-31; *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 744 (9th Cir. 2024) (discussing *Internet Brands*, where platform faced liability not "because it failed to remove the ads, but because it failed to warn about their content"); *Est. of Bride by & through Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1179 (9th Cir. 2024) (no Section 230 protection where "online content is involved in these facts, and content moderation is one possible solution for [defendant] to fulfill its promise, [but] the underlying duty . . . is the promise itself")[1]; Mura Decl. Ex. 1, JCCP Order Denying YouTube Motion in Limine 4 (Cal. Super. Feb. 7, 2026) (evidence as to non-actionable defects admissible to show harms caused by *actionable* defects

---

[1] Defendants misread *Bride*, which rejected a failure-to-warn claim only because the plaintiffs failed to allege the defendant had any unique independent knowledge of risks, *not* because the harm was related to publishing. *Bride*, 112 F.4th at 1182; *contra* Mot. at 6 n.9. That is not this case. MSJ Order at 31 ("plaintiffs have proffered evidence of independent knowledge of harm from specific features").

and by addiction to platform *as a whole*) ("JCCP MIL Order"). The evidence Defendants seek to exclude is highly probative of actionable defects and of Defendants' independent knowledge of risks from both their platforms as a whole and specific features; it is not prejudicial let alone unduly so.

## II.  ARGUMENT

The contextual exercise this Court contemplated at summary judgment shows that all of the "exemplar" evidence Defendants marshal in their Motion is admissible for one or more permissible purposes, and none is unduly prejudicial. Analysis of specific evidence is essential because "Rule 403[ ] analysis cannot be performed in a vacuum." *Barry v. Shell Oil Co.*, 2018 WL 2327369, at *2 (D. Alaska May 22, 2018). Breathitt performs its evidence-specific analysis based on the groupings offered by Defendants in their Appendix A.

### A.  Attempted Exclusions Based on Third-Party Content

***Phillip Watts' 30(b)(6) Deposition at 71-73 [Dkt. 2368-05] ("Watts")***: Defendants are incorrect that Watts' testimony is excludable under Rule 403 merely because he discussed harms to Breathitt caused by "social media." *See* MSJ Order at 2 (crediting Watts' testimony about general "social media related concerns"). Watts' testimony about how "social media" led to classroom disruption is highly probative of the district's harms. It need not disentangle "the impact of various design features that are actionable or not actionable." *Id.* at 18-19. And it was *Defendants* who invited the testimony they now seek to exclude. In response to Defendants' cross examination *seeking* to show Breathitt's injuries stemmed from cell phone usage, Watts testified that "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" and that the "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Watts at 71:4-8, 71:25-72:5. When Defendants followed up, he testified that students "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" and "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮," which is a reference to the *compulsiveness* with which Breathitt's students are using social media, not a reference to the endless scroll feature (as Defendants claim). 72:6-16. Evidence of students' compulsive use is also admissible to explain the harms that the actionable defects (including lack of parental controls, screen time limits, age verification, and account deactivation) create or worsen. *See* MSJ Order at 12 (allowing "evidence that each defendant's platforms contained Actionable defects which engender compulsive use"); JCCP MIL Order at 6 ("negative comments and content have some probative value with respect to whether a plaintiff was addicted…"). Nor is Watts' testimony about compulsive use excludable merely because *Defendants* asked Watts whether group-chat features on social media were *also* contributors

to classroom distraction and Watts agreed—group-chat functionality may be part of the causal chain. 72:17-73:4; *Bride*, 112 F.4th at 1179 (anonymous chat functionality allowed as part of causal chain).

**Kera Howard's Affidavit at ¶ 13 [Dkt. 2368-07] ("Howard I"):** Defendants argue Howard's testimony is inadmissible because it includes discussion of third-party content. That argument fails on the law, as it is "not enough that a claim, including its underlying facts, stems from third-party content for § 230 immunity to apply." *Calise*, 103 F.4th at 742. Howard's testimony concerns students' compulsive use of social media and the "negative mental health impacts" and "long-term damage" to students and the school district that resulted. *See* Howard I ¶¶ 11, 13. In providing that testimony, Howard is permitted to use examples of *how* compulsive use manifests at Breathitt. Specifically, she may testify that compulsive use leads to the taking and posting of photographs of "specific body parts or private moments" of other students "without their knowledge or consent," or to the posting of content to "spread rumors, humiliate, or slander [other] students." ¶ 13. Breathitt does not seek to hold Defendants liable for publication or failure to remove this content; however, it is part of the causal chain that explains the harm and damage to Breathitt from the platforms' engineering of compulsive use by the students. *Doe 1 v. Twitter, Inc.*, 148 F.4th 635, 646–48 (9th Cir. 2025) (allowing negligence per se where causal chain included third-party content). Such examples are also admissible to explain the harms caused by actionable defects (*e.g.*, defective parental controls preventing restriction of social media use during school hours).

**Jeremy Hall's Deposition at 59 [Dkt. 2368-08] ("Hall"):** Defendants claim Hall's testimony is inadmissible because he discusses kids "using" a Defendant's platform "to bully [children]." This ignores the context of Hall's testimony. Hall stated that █████████████████████████████████ ████████████████████████████████████████" enhancing the disruptive effects. Hall at 59:15-21. He further testified that the "████████████████████████████████████████ █████████████████████. 58:6-12. And he testified that students are "████████████ ████████████████████████████████████████████████████████████. 58:23-59:14. Such testimony is highly probative of classroom disruption and Snap's and Meta's knowledge of the same. Indeed, it corroborates company documents showing that Snap's █████████████ ███████████████████████████████████████, and that Meta wanted ████████████████████████████████████████████████" Dkt. 2414.1 at 17, 123 (MSJ Omn. Opp.).

1   Breathitt does not seek to hold Defendants liable for failure to remove students' "bully[ing]" messages but
2   offers such evidence as part of the causal chain to explain the harm and damages from compulsive use,
3   including from actionable defects that could have prevented student access while at school. *See* JCCP MIL
4   Order at 6. A limiting instruction can clarify for the jury how it may consider the evidence.

5   ***Kera Howard's 30(b)(6) Deposition at 104-113 [Dkt. 2368-16] ("Howard II"):*** Defendants target
6   Howard's testimony because it discusses social media generally and mentions specific instances of students
7   posting on social media. But Howard's testimony that over 200 students "have been seen [by Breathitt
8   administrators] due to issues explicitly relating to social media" is highly probative of harm and damages, as
9   it shows the extent of the disruption and diversion of school resources from compulsive use of Defendants'
10  platforms. When Defendants asked her about her testimony that students "were seen due to issues relating to
11  social media," she said it was due to compulsive use. Howard II at 105:17-23 ("███████████████
12  ███████████████████████████████████████████████████████████████
13  ███████████"). When pressed further, Howard testified that compulsive use often *manifests* as students
14  spreading rumors or "nude pictures" of other students. *Id.* at 106:5-16. Breathitt doesn't seek to hold
15  Defendants liable for failure to remove content; instead, this testimony helps explain the harm and damages
16  from compulsive use, including from actionable defects that could have prevented access.

17  ***Regulation 28 Report to Prevent Future Deaths, Rubaek Ex. 13 at 3 [Dkt. 2558-11]:*** Defendants
18  argue this report is inadmissible because it mentions "content" that "romanticized acts of self-harm." But this
19  coroner's report (and Meta's acknowledgment of it in 2019) are highly probative of Meta's independent
20  knowledge from an external source that its platform could and did cause mental health harms in schoolchildren.
21  *See* MSJ Omn. Opp. at 69 (addressing Meta's response to report). Breathitt may proffer such evidence to
22  show Meta had a duty to warn of known risks attendant to platform usage. MSJ Order at 30-31.

23  ***META3047MDL-003-00068863 at 8889 [Dkt. 2757-08]:*** Defendants argue this document is
24  inadmissible because it concerns "suicide and self-injury" content. This document is a Meta PowerPoint from
25  2019 ██████████████████████████████. The document shows Meta knew the "████
26  ██" for Instagram users were: "████████████████████████." 8867. This PowerPoint shows
27  that Meta was ████████████████████████████████. 8868-69 (collecting sources). The
28  document is highly probative to show Meta's "independent knowledge" that compulsive use of its platforms

- 4 -

OPPOSITION TO DEFENDANTS' MOTION IN LIMINE #1
MDL NO. 3047
CASE NO. 4:22-MD-3047-YGR

could cause mental health harms, giving rise to a duty to warn. *See* MSJ Order at 30-31.

**TIKTOK3047MDL-078-LARK- 01818485 at 8487 [Dkt. 2755-23]:** Defendants argue this document is inadmissible because it concerns suicide and self-harm content. This document captures TikTok's ███████████████████████████████████████████████████████, so the company could "███████████████████████████████████████████████████████[.]" 8485 (emphasis in original). "[I]nternal research" is admissible to show TikTok's knowledge of the risks that its platform could cause mental health harms, giving rise to a duty to warn. PI MTD Order at 20.

### B. Attempted Exclusions Based on Likes

***Daphne Noble's 30(b)(6) Deposition at 74 [Dkt. 2368-09] ("Noble"):*** Defendants argue Noble's testimony that "kids are addicted to social media" is inadmissible because she also mentioned that kids want "likes." But this testimony is highly probative to show Defendants' platforms cause compulsive use, harming Breathitt. *See* MSJ Order at 18-19. Defendants' own counsel asked Noble to explain why students were "damaging our bathrooms"; Noble testified students are "addicted to [] social media" (specifically TikTok) and their compulsive use drives them to do *anything* to bolster "their social media presence," which they measure in "likes." Noble at 73:10-11, 74:7-19. In so testifying, Noble (a layperson) wasn't required to "segregate between the impact of various design features." MSJ Order at 18-19. Breathitt offers this evidence as part of the chain of causation to explain the harm and damages to Breathitt, including from failure to warn and actionable defects, such as preventing student access while at school.

### C. Attempted Exclusions Based on Recommendation Algorithms

***TIKTOK3047MDL-002-00119724 at 9725 [Dkt. 2755-18]:*** This document is part of an internal communication to TikTok employees informing them that ███████████████████████████████████████████. 9725. The document is highly probative to show TikTok's knowledge that its platform was designed in a manner that fosters compulsive use, giving rise to a duty to warn. *See* MSJ Order at 30-31; JCCP MIL Order at 5 (while "Defendants [cannot be] liable for recommending any third-party content to a plaintiff…Plaintiffs [may] describ[e] 'how Defendants collect data from children and youth then use[] that data to create a unique content-agnostic algorithmic profile to ensure that children and youth lack the ability to look away.'"). Breathitt isn't asking the jury to find negligence based on which content it is showing to kids via its algorithmic recommendations. Rather, it is offering this document to show TikTok's independent

knowledge of a foreseeable risk of compulsive engagement, in support of Breathitt's failure to warn theory.

**TIKTOK3047MDL-015-00331402 at 13 [Dkt. 2568-03]:** This document is part of a presentation from 2019 intended for TikTok employees to understand how TikTok works. It explains that TikTok's recommendation algorithm ▇▇▇▇." 22. It is admissible for the same reasons as the last document: it goes to intentional design to foster compulsive use, giving rise to a duty to warn. *See* JCCP MIL Order at 5.

**TIKTOK3047MDL-024-LARK-00040453 at 0457 [Dkt. 2568-05]:** This document is part of a chat conversation between TikTok employees, where a member of the recommendation team candidly admits that "▇▇▇▇." 0457. This document is highly probative to show TikTok's knowledge that its platform was intentionally designed to foster compulsive use. *See* JCCP MIL Order at 5.

**TIKTOK3047MDL-002-00077196 [Dkt. 2755-19]:** This document outlines TikTok's ▇▇▇▇. TikTok employees write that ▇▇▇▇ 7196. Social media apps' ▇▇▇▇ 7200. The document notes that TikTok had the capability to "▇▇▇▇" and "▇▇▇▇" are ▇▇▇▇. 7199. Such "internal research" is highly probative of TikTok's knowledge that its platform posed a risk of harm to users. *See* PI MTD Order at 20. It shows that TikTok could have ▇▇▇▇—yet did nothing to warn those users of the potential risks. 7199; *see* JCCP MIL Order at 5.

**TIKTOK3047MDL-004-00144763 [Dkt. 2568-09]:** This document contains notes taken by TikTok's Head of U.S. Safety from an April 2020 meeting of TikTok's Content Advisory Council, where ▇▇▇▇. These experts informed TikTok that ▇▇▇▇" 4763. These external experts warned TikTok that ▇▇▇▇

1  ██████████████████████████████████████████████████████████████████████████") and
2  offered solutions that ████████████████
3  ████████████████████████████████████████████████████. 4763-64. This evidence is highly probative to show
4  TikTok had knowledge, based on warnings from external experts in early 2020, of the potential mental health
5  harms that TikTok could cause. And it is highly probative for actionable defects to show that external experts
6  ████████████████████████████████████████████████████. JCCP MIL Order at 5. TikTok will
7  undoubtedly argue in its defense that it retained experts, including those on the Content Advisory Council, to
8  advise it about safety and wellbeing issues, so this evidence is highly probative to show ████████
9  ████████████████████████████. *See* MSJ Om. Opp. at 106-07 (████████████████
10 ████████████████████████████████████████████████████████████████████████).

   **D.  Attempted Exclusions Based on Account Recommendation Features**

12    ***SNAP0276106 at 6130 [Dkt. 2574-06]:*** Defendants say a portion of this document is inadmissible
13 because it concerns account recommendation features, Snap Scores, and Snap Streaks. The document is a
14 ████████████████████████████████████████████████████████████████████████
15 ████████████████████████████████" (6109), exactly the sort of "public studies or
16 internal research" that are highly probative of "independent knowledge" for purposes of failure to warn. PI
17 MTD Order at 20; MSJ Order at 30-31. The cited page demonstrates that Snap was aware ████████
18 ████████████████████████████████████████████████████████████████████████
19 ████████████████████████████████████████████████████████████████████████
20 ████████████████████" 6130. On the very next page, the research ████████████████
21 ████████████████████████. 6131. Breathitt is offering this document for failure to warn and to show
22 the harm from actionable defects.

   **E.  Attempted Exclusions Based on User Geolocation Features**

24    ***SNAP1368077 at 8084 [Dkt. 2574-09]:*** The document reports Snap's "internal research" of ██
25 ████████████████████, including an "████████████████████████████████████," which is
26 highly probative of Snap's independent knowledge of the risks of harm. PI MTD Order at 20; MSJ Order at
27 30-31; Dkt. 2574-09 at 8077. The cited page shows Snap was aware that Snap Map and Streaks were
28 ████████████████████████████████████████████████████████████████████████

1  ." Dkt. 2574-09 at 8084. The page also discusses

3  " *Id*. Consistent with the Court's summary judgment order, Breathitt offers
4  this document for failure to warn and for actionable defects, including defective parental controls. The Court
5  already determined this "relatively short document[]" is "relevant." Dkt. 2812 at 1-2 (Omni. Ex. 809).

6  **F.  Attempted Exclusions Based on Rewards Features**

7  ***SNAP6118652 at 8652 [Dkt. 2574-12]:*** This document is an engineering document that says
8  Snap Scores

10  . 8652. It evidences
11  Snap's knowledge of compulsive use, giving rise to a duty to warn. Breathitt offers the document for failure
12  to warn and for actionable defects, such as defective parental controls. *See Lemmon v. Snap, Inc.*, 995 F.3d
13  1085, 1088 (9th Cir. 2021) ("To keep its users engaged, Snapchat rewards them with 'trophies, streaks, and
14  social recognitions'").

15  ***SNAP6145093 [Dkt. 2576-33]:*** This is a user-experience document that records how Snap users
16  . Specifically, it explains how "Snap Streaks" turn the app into a "

18  ." 5093. "                                              "—users feel Streaks
19  "                                         ." *Id*. Breathitt offers it to establish Snap's knowledge and its failure to
20  warn, and to establish actionable defects that spurred compulsive use. *See Lemmon*, 995 F.3d at 1088.

21  **G.  Attempted Exclusions Based on Ephemerality Features**

22  ***SNAP1342053 at 2064 [Dkt. 2582-02]:*** The cited portion says that Snap's design "
23  " the app. 2064. Breathitt offers this evidence to show Snap's knowledge of
24  compulsive use for failure to warn.

25  **H.  Attempted Exclusions Based on Endless Scroll and Autoplay**

26  ***GOOG-3047MDL-04625648 [Dkt. 2754-20]:*** This is a "                                  " from early 2018,
27  described as a "                     " that should "                            ." 6. It is highly probative as it
28  articulates YouTube's understanding of                                                                  . 3. After

acknowledging that " ▮ " in causing " ▮ " has been " ▮ ", *id.*, it describes Google's awareness of " ▮ " on YouTube. 6. The report ▮ , which frames the feature as " ▮ ." 7. Through the lens of autoplay, the report ▮ , and ▮ ▮ 16, 25, 34. Breathitt offers it for failure to warn.

**GOOG-3047MDL-00874191 at 13 [Dkt. 2754-21]:** This document is a " ▮ " by the YouTube User Experience Research team, to " ▮ ▮ ." 2-3. The cited page summarizes two external studies ▮ ▮ " 13. The page further explains that YouTube is ▮ ▮ ." *Id*. The document is admissible evidence to show YouTube's knowledge that its platform was designed to foster compulsive use. It also supports Breathitt's claims concerning actionable defects that promoted compulsive use.

**GOOG-3047MDL-05193823 at 10-12 [Dkt. 2573-40] and -00641947 at 1962 [Dkt. 2573-39]:** The first document is a May 2019 internal company presentation that discusses ▮ ▮ " 4, 18. It notes ▮ , depending on the device. 7. Defendants' cited pages admit that YouTube has " ▮ " (emphasis in original) and survey results show " ▮ ▮ '" 10. This evidence is highly probative of YouTube's knowledge of the risks of compulsive use and its failure to share that knowledge via warnings. It also supports actionable defects, such as parental controls. *Id*. (" ▮ ."). Dkt. 2573-39 is a later draft of the same document offered to show that the company did not address these known risks.

**META3047MDL-050-00184006 at 4015 [Dkt. 2557-05]:** This 2019 Meta internal research explores the " ▮ ." 4007 (emphasis added). Defendants' cited page captures " ▮ ," including " ▮ ▮ ," including ▮ . 4015. The cited page concludes, " ▮

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████" *Id*. The document is highly probative of Meta's knowledge of the risks of compulsive use and its failure to share that knowledge (via warnings), and for actionable defects, such as tools to voluntarily control usage.

### I. Attempted Exclusions Based on Notifications

***META3047MDL-079-00000177 at 0201 [Dkt. 2756-49]:*** This Meta Wellbeing Researcher report titled "████████████████████," 0177, discusses "████████████████████████████████ ████████████" in 2019. 0178. The challenged page says, "████████████████████████████████" (████████████). 0201. It is highly probative of Meta's knowledge of the risks of problematic use and failure to share that knowledge (via warnings) and for actionable defects' that promote problematic use.

***META3047MDL-136-00013164 at 3213 [Dkt. 2758-14] and META3047MDL-038-00000085 at 0086 [Dkt. 2758-43]:*** Dkt. 2758-14 is a PowerPoint titled "████████████████████████," with the listed objective to "████████████████████████" (████████████). 3164-65. Defendants' challenged page is highly probative to show Meta's knowledge that teens are "████████████████" Instagram "████████████████████████" and that this compulsive use of Instagram "████████████████████████████████████████." 3213. The same page *also* notes that "████████████████████████████." *Id*. Dkt. 2758-43 similarly says that ████████████ and ████████████████████████████████ 0086. Meta employees want to fix ████████████████████████████████████ *Id*. Breathitt offers this evidence to show Meta knew of the risks of compulsive use and did not share that knowledge (via warnings).

### J. Defendants' (Renewed) Challenge to Expert Testimony on "Protected Features & Content"

Defendants again move to exclude "expert testimony discussing content or protected publishing features." Mot. at 4 (targeting six experts including two Breathitt withdrew in whole or part). This expert testimony helps the jury understand the drivers of students' compulsive use of Defendants' platforms, which "speak[s] directly to [Breathitt's] theory." Rule 702 Order at 5, 11-12. There is no reason to re-litigate this issue. *See* Standing Order § 4(a).

### III. CONCLUSION

Defendants' motion in limine based on Section 230 and the First Amendment should be denied in full.

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated: March 9, 2026 | Respectfully submitted, |
| 3 | | By: /s/ *Lexi J. Hazam* |

Lexi J. Hazam
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

RONALD E. JOHNSON, JR.
SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KT 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com
semery@justicestartshere.com

Counsel for Breathitt

ANDRE M. MURA
**GIBBS MURA LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: 510-350-9700
amm@classlawgroup.com

Plaintiffs' Steering Committee Leadership

## ATTESTATION

I, Andre M. Mura, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: March 9, 2026

By: */s/ Andre M. Mura*
　　　Andre M. Mura