# EXHIBIT 1

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF LOS ANGELES

*Social Media Cases*
JCCP5255
(Lead Case: 22STCV21355)

Dept. 12 SSC
Hon. Carolyn B. Kuhl
Date of Hearing: February 6, 2026

**YouTube Motion in Limine 4: To Exclude Evidence Regarding Alleged Negligence in YouTube's Design, Implementation, or Warnings about Features That Are Barred by Section 230 and/or the First Amendment**

Court's Ruling:  The Motion is denied, as explained below.


     Google's Motion "seeks to preclude Plaintiffs from introducing argument or evidence—including testimony, expert opinion, or documents—in support of a claim that a legally barred YouTube feature was negligently designed or that YouTube had a duty to publish different content via those features or warn about the risks of what those features published." (Google's MILs Nos. 1-5, at p. 14.)

     In supplemental briefing recently provided to the court, Google, Meta, and Plaintiffs discuss four types of evidence that K.G.M. may be seeking to mention during opening statements: (1) comments and likes; (2) recommendations and age verification; (3) autoplay, shorts, and notifications; and (4) negative third-party content.  The court addresses these types of evidence here.

     The court first addresses the "like" feature.  Google's MIL No. 4 directs the court to its arguments from its separate motion for summary judgment/adjudication.  In briefing that motion, Google argues that the evidence of the "like" feature is inadmissible for reasons dealing specifically with the nature of K.G.M.'s claims—Google does not appear to argue that evidence of the like feature would always be inadmissible:

1

> Plaintiff also embraces her theory that she would get "upset" if a video did not get sufficient likes or comments. Opp. 14 (citing P SS ¶¶ 197-98, 202, 223). But getting "upset" because enough people did not affirmatively respond to your video is not a basis for a lawsuit. Regardless, Plaintiff does not respond to YouTube's showing that this claim would impose a duty to either publish more third-party likes or (positive) comments—or none. Mot. 15-17. The First Amendment also bars this claim, as confirmed by the Ninth Circuit's recent decision enjoining, as unconstitutional "content discrimination," a statute restricting online platforms from displaying to minors the "number of likes or feedback that the post has received." [*NetChoice, LLC v. Bonta* (9th Cir. 2025) 152 F.4th 1002 (*Bonta*)]

(Google's Reply ISO MSJ RE K.G.M., at pp. 2-3.)  Google argues that "YouTube cannot be compelled to publish a certain number of comments or likes, and it cannot be held liable either for offering these speech-creation tools or because its users declined to use those tools to bestow sufficient praise on Plaintiff's videos."  (Google's MSJ re K.G.M., at p. 17.)

However, K.G.M. explains that she does not seek to hold Google liable simply for stating the number of likes a particular post/video by K.G.M. received.  K.G.M., referring to the "like" feature as a design feature regarding "social validation metrics," states:

> A jury could conclude, for example, that YouTube was negligent for sending notifications about social validation metrics to KGM during school hours or extremely late at night. A jury could also conclude that YouTube was negligent for not providing reasonable limits on the volume of use by children and that the lack of reasonable limits exacerbated harms to KGM related to social validation metrics. Additionally, a jury could conclude that YouTube was negligent for not providing adequate parental controls or failing to warn about harms to KGM related to addi[c]tion (including social validation metrics).

(Parties' Supplemental Statement re Google's MIL 4, at p. 10.)  K.G.M. is correct.  Moreover, if Google's affirmative design decision to include a "like" feature contributed to the addictive nature of the platform—regardless of the specific number of "likes" received—then the "like" feature would be relevant to K.G.M.'s claims that Google harmed her: as this court has repeatedly

2

stated, if the design features made the platform addictive and harmful regardless of the third-party content found on the platforms, then the defendant social media company cannot rely on Section 230 or the First Amendment to avoid liability.

Defendants rely on *Bonta* in arguing that allowing Plaintiffs to include discussion of the "likes" feature as an aspect of their argument regarding the allegedly addictive propensities of social media would violate the First Amendment. In *Bonta* the court considered the constitutionality of a statute that established an absolute prohibition on a social media platform's publication of the total number of "likes" received by a minor's posting. The court held that this was a content-based prohibition on speech by the social media platform and that strict scrutiny applies. Further, the Ninth Circuit reasoned that "the like-count default setting is not the least restrictive way to advance California's interest in protecting minors' mental health. … California could encourage websites to offer voluntary content filters related to like counts or educate children and parents on such filters." (*Bonta, supra,* at p. 1016, internal quotation marks and citations omitted.)

Based on this court's current understanding, the "like" feature as presented on Defendants' platforms is a mechanism whereby users can provide expressive reactions in the binary nature of "approve" or "disapprove." Similar to the filter tools that allow a minor user to create a modified picture of themselves (*see, e.g.*, Ruling on Defs' Demurrer to Amended Short-Form Complaints and Defs' Motion to Strike Allegations, Jan. 8, 2025, at pp. 18-20), the "like" tool is not speech of the social media platform itself. When used by a third party to express like or dislike of another user's posting, the expression of approval (thumbs up) or disapproval (thumbs down) is the speech of the third party. When the social media platform publishes the actual third party reaction (thumbs up or thumbs down), it is publishing third party speech. Insofar as the social media platform publishes an aggregate number of thumbs up or thumbs down reactions received, the aggregate number is the speech of the social media platform itself, as *Bonta* holds.

Plaintiffs wish to argue that the consequences of the existence of the "like" feature on the social media platform is that it caters to minors' craving for social validation as a means of keeping minors returning to the platforms, allegedly resulting in addiction. Unlike the aggregate "like counts" number considered in *Bonta*, the "like" feature is not itself content until used by a third party. To be sure, the "like" feature is a mechanism provided by social media companies for the communication of third-party content. But in that respect, it is subject to regulation insofar as it violates the law. (*See, e.g.*, *HomeAway.com v. City of Santa Monica (*9th Cir. 2018)

3

918 F.3d 676, 682 [provider that hosted postings by persons offering Airbnb rentals was required to comply with an ordinance prohibiting short-term home rentals unless licensed as "home-sharing"]; *Lee v. Amazon.com, Inc.* (2022) 76 Cal.App.5th 200, 256 [provider was required to post a warning under California's "Proposition 65" where the product offered for sale by a third party on defendant's website exposed consumers to mercury].)

Moreover, this is not a case in which the court is asked to determine whether or not the Defendants may be precluded from providing a "like" feature.  Insofar as the Plaintiffs are able to prove that the "like" feature, as it is used in the context of a particular social media platform or video streaming service, causes harm to minors, Defendants may be able to ameliorate that harm by modifications in how they configure their service rather than by eliminating the "like" feature altogether.  Even in *Bonta*, where a content-based restriction on speech was at issue, the court indicated that measures short of precluding the publication of the aggregate number of "likes" might be a permissible regulation of speech as less restrictive alternatives.  Here, the evidence may show that less restrictive alternatives to a total constraint on the publication methodology (the "likes" feature) on which liability might be premised are available to the platforms that offer the "likes" feature in order to avoid foreseeable harm to minors.

Google and Meta have not established a basis for precluding all evidence concerning their "like" features in this trial.

Google also seeks to exclude evidence regarding age verification and recommendations.  This court has determined that, under binding California caselaw, "[c]laims based on Defendants' failure to implement effective age verification software and on implementing a default public setting for user profiles are barred … ."  (Ruling on Motion to Strike, July 19, 2024, at p. 27.)  However, the court also declined to strike allegations regarding such features, reasoning that "the facts pleaded concerning a lack of age verification and the default public setting are not irrelevant matter because they may be admissible to explain … why parental controls are allegedly inadequate to protect minors from other dangers, including addiction to Defendants' platforms."  (Ruling on Motion to Strike, July 19, 2024, at p. 27.)  The court added: "Although Section 230 precludes liability for the absence of age verification and the decision to make minors' profiles public, the fact that these features exist is not irrelevant matter because it allegedly explains in part why other actions by Defendants were negligent."  (Ruling on Motion to Strike, July 19, 2024, at p. 27.)  The court's previous reasoning stands and applies here.  Evidence regarding age verification and the default public setting is relevant at trial.

4

As for "recommendations," it is true that, as this court has held, when a plaintiff is harmed by third-party content on a platform, the social media company cannot be held liable for recommending that content. (See Ruling on Motion to Strike, July 19, 2024, at p. 12 [the court addressed recommendation of certain "challenge videos"].) The court relied on *Wozniak v. YouTube, LLC* (2024) 100 Cal.App.5th 893, where the relevant claim was based on harm arising from the recommendation of particular content ("scam videos"). The court thus plans to instruct the jurors that they cannot hold Defendants liable for recommending any third-party content to a plaintiff. However, Plaintiffs are correct that these prior rulings do not prevent Plaintiffs from describing "how Defendants collect data from children and youth then use[] that data to create a unique content-agnostic algorithmic profile to ensure that children and youth lack the ability to look away." (Parties' Supplemental Statement RE Google's MIL 4, at p. 7.) Section 230 does not prevent Plaintiffs from holding Defendants liable for using data collection to make their platforms addictive to minor users regardless of the specific content that is shown. The court thus rejects Meta's attempt to exclude all evidence regarding how Defendants recommend content to users.

The third type of evidence consists of autoplay, shorts, and notifications. But Google merely seeks a ruling for preservation purposes:

> As discussed in YouTube's MIL 4, YouTube objects under Evidence Code Sections 350 and 352 to the admission of evidence contending that these features contributed to YouTube's alleged negligence. For preservation purposes— and to avoid YouTube needing to repeatedly lodge objections throughout trial in the context of live trial testimony and presentation, as Plaintiff suggests—YouTube requests clarification that, pursuant to the standing objection entered into the record on January 26, 2026, the Court has overruled YouTube's objection as to the evidence listed in Appendix A and similar evidence of YouTube's design and operation of Autoplay, Shorts, and Notifications.

(Parties' Supplemental Statement RE Google's MIL 4, at p. 4.) Plaintiffs do not oppose Google's request. Thus, the court grants the unopposed request as to evidence regarding autoplay, shorts, and notifications that is listed in Exhibit A to the parties' Supplemental Statement Re Google's Motion in limine No. 4 or similar evidence. (See Ex. A, at pp. 4-7.)

Finally, Meta argues that the court should exclude all evidence of "negative comments and negative content." Meta is correct that Defendants

cannot be held liable for harm caused by negative third-party comments and content posted on their platforms; Plaintiffs do not dispute this point. Plaintiffs nonetheless argue that negative comments and content is still relevant at trial:

> The fact that KGM continued to keep coming back to YouTube and Instagram in spite of negative content is a testament to the degree of her addiction. Contrary to Meta's argument, this is relevant to KGM's experience with the platforms. Section 230 is not a rule of evidence that should blindfold the jury to her story.

(Parties' Supplemental Statement RE Google's MIL 4, at p. 8.)  Plaintiffs have demonstrated that negative comments and content have some probative value with respect to whether a plaintiff was addicted to a platform.  In light of the jury instructions that will be given in this case, Meta has not shown that evidence of negative comments and content will prejudice Defendants or mislead the jury as to the proper bases for liability.  Accordingly, there is no reason to exclude this evidence at trial.