# EXHIBIT D

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION

Case No. 22-md-03047-YGR (PHK)

**ORDER RESOLVING DISPUTE RE: META RESPONSE TO INTERROGATORY NO. 6 (TIME SPENT DATA)**

Re: Dkt. 2508

## INTRODUCTION

This MDL has been referred to the undersigned for all discovery purposes. *See* Dkt. 426. Now pending before the Court is a joint letter brief regarding a dispute between the State Plaintiffs and Meta regarding Meta's response to Interrogatory No. 6, directed to calculation of data on monthly average users of Meta's services. [Dkt. 2508]. The Court heard oral argument on the dispute on February 5, 2026. *See* Dkt. 269. After discussion with the Parties, the Court issued verbal rulings on this dispute at the hearing, which are incorporated by reference herein. *See* Dkt. 2718. This Order memorializes those rulings.

## LEGAL STANDARDS

A party seeking discovery bears the burden of establishing that its request satisfies the relevancy and proportionality requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418,

429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"). For example, the Court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

As part of its inherent discretion and authority, the Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). Similarly, a district court's determination as to proportionality of discovery is within the district court's discretion. *See Jones v. Riot Hospitality Group LLC*, 95 F.4th 730, 737-38 (9th Cir. 2024) (finding district court did not abuse discretion on proportionality ruling). Ultimately, "the timing, sequencing and proportionality of discovery is left to the discretion of the Court." *Toro v. Centene Corp.*, No. 19-cv-05163 LHK (NC), 2020 WL 6108643, at *1 (N.D. Cal. Oct. 14, 2020).

**ANALYSIS**

Interrogatory No. 6 requests the following: "For each month in the Relevant Time Period, identify by decile the Time Spent Per Day by users of each platform in each State, broken out as follows: in total, of Unidentified Age, of each Reported Age between 0 and 100, and of each inferred Age between 0 and 100." [Dkt. 2508 at 11.]. During meet and confers on this dispute, Meta agreed to provide not only decile information, but also data on the 95% and 99% percentiles.

Plaintiffs argue that Meta's latest supplemental response to Interrogatory No. 6 is deficient in two respects: (a) the data used by Meta included users who spent zero time on the Instagram or

2

Facebook platforms during a month (so-called "zero time users"), and (b) Meta's calculation of percentile distributions was not a direct calculation but rather resulted from the use of an approximation algorithm for computing the percentiles, where that algorithm has a maximum "accuracy parameter" (or, as Plaintiffs argue, an error rate) of 1.33%. *Id.* at 7.

As relief, Plaintiffs request leave to perform an on-site inspection of Meta's databases to extract the underlying data and an order directing Meta to produce the data with the involvement of the State AGs' expert, so that the MAU data can be recalculated without the zero time users and by arithmetically calculating the percentiles instead of approximating them. Plaintiffs also request a further Rule 30(b)(6) deposition of Meta as to the time spent and MAU data. *Id.* at 6.

Meta argues that the 1.33% accuracy parameter is a maximum number and that actual deviations fell far below this maximum. Meta argues that it does not calculate actual percentiles in the ordinary course of business at the scale requested here (over one million data points); rather, Meta uses the approximation algorithm (which Meta asserts is an industry-standard approach for handling computation of percentiles for large datasets). *Id.* at 8-9. Meta submits a declaration from one of its Data Scientists who estimates it would take at least six to seven weeks to calculate the actual percentages (instead of approximating them), because such computation would require development of a bespoke solution. [Dkt. 2508-1 at 3]. Meta argues that Plaintiffs' expert has already analyzed the data with the approximate percentiles, and Meta offered a stipulation not to attack or complain that the percentiles were approximated. [Dkt. 2508 at 10]. At the hearing on this dispute, the Parties confirmed that Meta's expert did not attack or rebut Plaintiffs' expert on the grounds that the percentiles used were approximations based on this accuracy parameter.

At the hearing, Meta's counsel explained that this 1.33% parameter is a variable setting used by the approximation algorithm, and that this accuracy parameter can be reset to a minimum of 0.01% error rate. Meta confirmed at the hearing that, instead of being required to calculate actual percentages (which would take almost two months), Meta could recalculate more quickly and with less burden the percentiles using the existing algorithm but with the accuracy parameter reset to the 0.01% rate. At the hearing, Plaintiffs confirmed that recalculating with the accuracy parameter set at the 0.01% rate was such a low enough number that recalculating at this rate would

3

address Plaintiffs' concerns about the accuracy of the data and the approximations of the percentiles.

As to the zero time users, at the hearing, Meta confirmed that it could identify and then exclude such users and then recalculate MAU without them within approximately two weeks. At the hearing, Plaintiffs confirmed that recalculating MAU by excluding zero time users would address their concerns about the accuracy of the data and the alleged skewing of the data.

Based on the representations of the Parties at the hearing on this dispute, then, there is no need for an on-site inspection of Meta's data, no need for involvement of Plaintiffs' expert in the recalculation process, and no need for a further Rule 30(b)(6) deposition on the MAU data.

Further, all Parties (including the PI/SD Plaintiffs, the State Plaintiffs, and Meta) committed on the record at the hearing that the recalculation and supplementing of the interrogatory response here would not require changing the existing expert discovery schedule or the overall case schedule. The Parties further committed to reasonably cooperate by stipulation or agreement between counsel, if needed, to address any issues arising from the supplementing of this interrogatory response. Accordingly, the Court **ORDERS** the Parties to abide by their representations to the Court on these matters.

## **CONCLUSION**

For all the reasons stated that February 5, 2026 hearing and as discussed herein, the Court **ORDERS** that Meta serve a supplemental response to Interrogatory No. 6 by no later than **March 6, 2026**, where such response will include a recalculation of previously identified percentiles with the accuracy parameter set at 0.01% rate, will remove all zero time users, and will include identification of the revised total MAU count.

Further, the Court **ORDERS** that Meta (including its expert witnesses) abide by Meta's representation not to use the fact that the MAU percentiles are approximations (instead of directly computed or mathematically calculated percentiles) as a basis to rebut or respond to Plaintiffs' experts' opinions.

Further, the Court **DENIES** Plaintiffs' request for inspection of Meta's databases to extract the subject data, Plaintiffs' alternative request for the involvement or supervision of its expert in

4

the formation of search queries and data calculations based on the Meta databases, and Plaintiffs' request for a further Rule 30(b)(6) deposition of Meta on time spent and MAU data. Such requests are both moot in light of the resolution discussed herein and disproportionate to the needs of the case.

At the February 5, 2026 hearing, counsel for all Parties acknowledged their understanding of the Court's rulings on this matter as stated on the record. Further, counsel confirmed that the Parties would not require a detailed order memorializing or formalizing the Court's rulings. Accordingly, as incorporated herein, the Court's rulings on the record at the February 5, 2026 hearing **RESOLVE** Dkt. 2508.

**IT IS SO ORDERED.**

Dated: February 13, 2026

_____
PETER H. KANG
United States Magistrate Judge