JONATHAN H. BLAVIN (State Bar No. 230269)
Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-2907
Telephone:   (415) 512-4000
Facsimile:    (415) 512-4077

E. MARTIN ESTRADA (State Bar No. 223802)
Martin.Estrada@mto.com
L. ASHLEY AULL (State Bar No. 257020)
Ashley.Aull@mto.com
VICTORIA A. DEGTYAREVA (State Bar No. 284199)
Victoria.Degtyareva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

*Attorneys for Defendant Snap Inc.*

*[Additional parties and counsel listed on signature pages]*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 <br><br> Case No. 4:22-MD-03047-YGR-PHK <br><br> Honorable Yvonne Gonzalez Rogers |
| THIS DOCUMENT RELATES TO: <br><br> *Breathitt County Board of Education v. Meta Platforms, Inc., et al.* <br> Case No.: 4:23-CV-1804 | **DEFENDANTS' REPLY IN SUPPORT OF MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OF CONTENT AND FEATURES PROTECTED BY SECTION 230 AND THE FIRST AMENDMENT** <br><br> **Hearing**: <br> Date:   March 18, 2026 <br> Time:   9:00 am <br> Place:  Courtroom 1, Floor 4 <br> Judge:  Hon. Yvonne Gonzalez Rogers |

1    Breathitt's opposition confirms that it seeks to put Defendants' protected publishing activity
2  on trial.  Breathitt frames its opposition as relying on an all-encompassing conception of failure to
3  warn liability, as well as vague, unsupported assertions that evidence of protected conduct is relevant
4  to actionable features.  But in substance and practical effect, Breathitt argues that Section 230 and the
5  First Amendment place *no* limits on its ability to present the jury with evidence of third-party content
6  and publishing features.  Breathitt's radical position is contrary to Ninth Circuit law and would vitiate
7  this Court's feature-by-feature approach, which was meant to place a "significant limitation on
8  [P]laintiffs' theories of recovery."  *In re Soc. Media*, 754 F.Supp.3d 946, 963 (N.D. Cal. 2024).

9    Defendants are not advocating an "all-or-nothing" approach, nor are they asking Breathitt, its
10 experts, or the Court to "disentangle" anything.  The evidence targeted by this Motion focuses on
11 protected conduct, not actionable features.  This Court has recognized that "evidence regarding the
12 barred features," including the "'danger' of unfair prejudice or jury confusion" such evidence may
13 cause, should be evaluated under Rule 403.  MSJ Order at 12, 18-19 & n.9.  Applying the traditional
14 balancing test—which Breathitt all but ignores—the challenged evidence should be excluded.

**I.    The Challenged Evidence Lacks Probative Value**

Evidence of protected features and third-party content is legally inadmissible to prove Breathitt's failure to warn claim and is not probative of a theory that *actionable* features caused Breathitt harm, including by promoting "compulsive use."  *See* Mot 6-7.  Breathitt's document-by-document assessment of the evidence only underscores the absence of probative value.

**A.    Failure to Warn Cannot Serve as a "Back Door" to Third-Party Content**

Breathitt's argument that virtually any evidence of content or publishing features is probative of its failure to warn theory would explicitly invite the jury to impose liability based on protected conduct.  This theory cannot be squared with this Court's rulings or with binding Ninth Circuit law.

Breathitt points to language from the Court's summary judgment order explaining that "independent knowledge of harm from specific features" gives rise to failure to warn, Opp. 1 & n.1 (quoting MSJ Order at 31), but it fails to acknowledge that the Court has cabined liability to *actionable* features.  Indeed, the portion of the Court's ruling that Breathitt cites expressly referenced its "above" discussion, which was devoted to actionable features.  S*ee* Mot. 6.  And the Court's statute

of limitations ruling—which covered failure to warn—further clarifies that evidence of content and protected features is not enough to trigger liability on a failure to warn theory. *See* Mot. 6-7.

Breathitt accuses Defendants of "misread[ing]" Ninth Circuit law, Opp. 1 n.1, but it is Breathitt that distorts the governing precedents. As the Ninth Circuit clarified just last year, an online platform may face failure to warn liability only where it has knowledge of alleged harm that is "independent of the site's publishing function." *Doe v. Grindr Inc.*, 128 F.4th 1148, 1154 (9th Cir. 2025) (quoting *Est. of Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1181 (9th Cir. 2024)). Yet Breathitt argues that *Bride* stands for the proposition that "unique independent knowledge" of harm from a *protected* publishing feature may give rise to liability. Opp. 1 n.1, 8-9. That is wrong. The plaintiff in *Bride* made the same argument, alleging that the platform had knowledge of harm from its "anonymity feature," including because it "understood that anonymous online communications pose a significant danger to minors" and because "[m]any user reviews of the YOLO app on Apple's app store reflected frustration with harassing and bullying behavior" caused by the feature. 112 F.4th at 1173, 1180-81. The Ninth Circuit rejected this argument, holding that the failure to warn claim was barred under Section 230 because *the alleged harm itself* was not "independent of the site's publishing function"—it was related to the protected anonymity feature. *Id.* at 1181. Applying *Bride*, a court in this District similarly barred a failure to warn claim where the platform allegedly had knowledge of harm caused by publishing features. *See Doe v. Backpage.com, LLC*, 768 F.Supp.3d 1057, 1060, 1067 (N.D. Cal. 2025) (Section 230 barred failure to warn claim based on Instagram's inadequate identity verification and "'connections' between traffickers and victims . . . even *when they know* those connections are harmful," as alleged harm was "on its platform" (emphasis added)).

Breathitt cites no case holding that a failure to warn claim premised on harm from a protected publishing function may proceed notwithstanding Section 230. Breathitt instead relies on *dicta* from *Calise v. Meta*, 103 F.4th 732 (9th Cir. 2024), a case that **did not involve a failure to warn claim**.[1]

Breathitt's analysis of specific pieces of challenged evidence only underscores its

---

[1] Breathitt's view that knowledge of harm from publishing *removes* immunity would also incentivize platforms to "bury their heads in the sand in order to avoid liability," which is contrary to Congress's goal in enacting Section 230. *Bennett v. Google, LLC*, 882 F.3d 1163, 1166 (D.C. Cir. 2018).

misunderstanding of the applicable law.  Breathitt argues, for example, that Jeremy Hall's testimony is probative of its failure to warn claim because it reflects Defendants' knowledge that their platforms "make[] it easy for bullying messages" to spread at school and incentivize students to "'sneak[]' behind the teachers' backs to message each other." Opp. 3.  But *Bride* squarely held that Section 230 barred a failure to warn theory of liability where "***the activity encouraged is the sharing of messages between users***." 112 F.4th at 1180 (emphasis added).  Breathitt also suggests that a platform's knowledge of harm from user exposure to "self-harm" content on its platform is admissible to show the platform "had a duty to warn of known risks attendant to platform usage." Opp. 4.  In addition to directly contradicting Breathitt's counsel's representations to the Court that "we are definitely not arguing about . . . failure to warn about bad or harmful content," Blavin Decl. Ex. A (Tr. at 219:7-12), this argument, too, runs headlong into *Bride*, which held that a failure to warn claim cannot be used to hold a platform liable for "***not mitigating, in some way, the harmful effects of . . . content***," 112 F.4th at 1180 (emphasis added).  Under governing law, evidence of protected features and third-party content is irrelevant to prove liability, including with respect to failure to warn.[2]

### B.  Breathitt's "Actionable Features" Theory of Relevance Is Mere Pretext

Breathitt also argues that some of the challenged evidence is probative of harm from age verification or other actionable features—including harm from "compulsive use" promoted by such features—but its own recitations of the evidence reveal that this is pretext to admit evidence designed to premise liability on protected conduct.  Breathitt's only argument as to why many pieces of the challenged evidence are relevant to "actionable defects" is its say-so.  For example, Breathitt argues that a Meta document bearing on the *protected* notifications feature is "highly probative" of "actionable defects that promote problematic use" but fails to identify a single actionable feature discussed in the document at issue. Opp. 10.  Breathitt likewise argues that a YouTube document "is admissible evidence to show YouTube's knowledge that its platform was designed to foster

---

[2] Contrary to Breathitt's suggestion, the JCCP Court's MIL Order provides no basis for its theory of relevance.  For example, Breathitt cites that Court's ruling that evidence that Defendants created a "unique content-agnostic algorithmic" means to recommend content could in theory be admissible, Opp. 5, but this Court has held that "defendants' recommendation algorithms are barred by Section 230 and no longer part of this case," *In re Soc. Media*, 702 F.Supp.3d 809, 846 (N.D. Cal. 2023).

compulsive use," but Breathitt's own citations establish that the document is about the *protected* features of "autoplay [and] recommendations," *id*. at 9, and it does not identify any *actionable* feature implicated by the document. Even if Breathitt were to identify specific actionable features, any theory of harm from an actionable feature must be "distinct from harm caused by consumption of third-party content" and protected features. Mot. 7 (quoting *In re Soc. Media*, 702 F.Supp.3d at 830 (discussing age verification)). Breathitt does not attempt to articulate such a theory of harm.

### C. Expert Testimony of Content and Protected Features Should Be Excluded

Contrary to Breathitt's suggestion, Opp. 10, this Court's prior orders do not permit Breathitt's experts to offer opinions about content and protected features. The Court's summary judgment order invited Rule 403 challenges to expert opinions on this basis. MSJ Order at 18 n.9. And the Court's Rule 702 order held only that certain of Breathitt's experts' testimony would not be excluded *in their entirety* for failing to disentangle harm caused by actionable conduct from harm caused by protected conduct. Dkt. No. 2750 at 5. This Motion does not ask Breathitt's experts to "disentangle" anything; Defendants seek to exclude only expert testimony that *directly* concerns protected features or content.

### D. Generalized Evidence Should Be Excluded Absent Foundation

Breathitt does not dispute that it must connect generalized lay testimony about harm from "social media" to actionable features, but its opposition suggests that it intends to offer generalized testimony that in fact has no such connection. Breathitt argues that the challenged testimony is about "compulsive use" fostered by Defendants, which is not correct, but even if it were, the testimony is solely about protected conduct and makes no mention of actionable conduct. For instance, Breathitt argues that Phillip Watts's testimony is "admissible to explain the harms that the actionable defects . . . create or worsen," Opp. 2, but it does not identify anything in Watts's testimony connecting his statements to *any* actionable feature. Similarly, Kera Howard did not testify that when "students were seen due to issues relating to social media, . . . it was due to compulsive use," as Breathitt claims. *Id.* at 4. She said it was because "they are upset because of the content posted by another student[] [n]ormally directed toward them." Dkt. 2368-16 (Howard (30)(b)(6) Dep. at 106:5-15). Breathitt again materially mischaracterizes Howard's testimony, suggesting that she "testified that compulsive use often *manifests* as students spreading rumors or 'nude pictures' of other

-4-    Case No. 4:22-MD-03047-YGR
DEFENDANTS' REPLY ISO MIL NO. 1 TO EXCLUDE EVIDENCE OF CONTENT AND FEATURES PROTECTED BY SECTION 230 AND THE FIRST AMENDMENT

students." Opp. 4.  In fact, the relevant portion of Howard's testimony says *nothing* about compulsive use, and Howard clarified that *all* of the instances cited by Breathitt as "issues explicitly related to social media" were directly related to *content*.  Howard (30)(b)(6) Dep. at 105:17-113:13.  Even if Howard's testimony *could* be read to be about "compulsive use," it has nothing to do with non-protected features *causing such use* and provides no basis to admit evidence of content-related harms.

## II.     Breathitt Ignores the Serious Risk of Unfair Prejudice

Defendants' Motion established a serious risk of prejudice from evidence of protected conduct, as recognized by numerous precedents concerning the *Noerr-Pennington* doctrine—authority that Breathitt ignores.  Mot. 7-8.  Indeed, Breathitt fails to respond on prejudice at all beyond a conclusory assertion that the challenged evidence "is not prejudicial let alone unduly so."[3]  Opp. 2.

Breathitt's own recitation of the challenged evidence in fact underscores the threat of prejudice by showing just how clearly it could lead to liability from protected conduct.  For instance, Breathitt argues for admission of Howard's affidavit testimony, which it describes *almost entirely in terms of content*, including the "posting of photographs of 'specific body parts or private moments' of other students" and "content to 'spread rumors, humiliate, or slander [other] students.'" Opp. 3 (quoting Dkt. 2368-07 (Howard Aff. ¶ 13)).  Even if, as Breathitt claims, a permissible inference to harm from actionable features "*could* be drawn from this evidence," the jury will likely see exactly what Breathitt describes: "the more *direct* link" to the publication of harmful content.  *Weit v. Cont'l Ill. Nat. Bank & Tr. Co.*, 641 F.2d 457, 467 (7th Cir. 1981) (emphases added).  So too with documents pertaining to protected features.  Breathitt claims, for example, that a Snap document is relevant "for failure to warn and for actionable defects," yet its description of the document is focused entirely on alleged harm from Snap Streaks, which this Court held to be a protected rewards feature (something Breathitt does not dispute).  Opp. 8.  A jury is likely to make the direct inference that the harm stems from the protected feature—not from some unrelated feature absent from the document altogether.

* * *

The Court should grant the Motion and exclude evidence of content and protected features.

---

[3] Breathitt suggests "[a] limiting instruction can clarify for the jury how it may consider the evidence." Opp. 4.  An instruction will be necessary with respect to certain evidence, but it cannot alone cure the prejudice from the challenged evidence, which directly concerns protected conduct.  *See* Mot. 9.

| | |
|---|---|
| DATED: March 11, 2026 | Respectfully submitted, |
| | MUNGER, TOLLES & OLSON LLP |
| | |
| | By:    /s/ Jonathan H. Blavin |
| | JONATHAN H. BLAVIN (State Bar No. 230269) |
| | Jonathan.Blavin@mto.com |
| | MUNGER, TOLLES & OLSON LLP |
| | 560 Mission Street, 27th Floor |
| | San Francisco, CA 94105 |
| | Tel: (415) 512-4000 |
| | |
| | E. MARTIN ESTRADA (State Bar No. 223802) |
| | Martin.Estrada@mto.com |
| | L. ASHLEY AULL (State Bar No. 257020) |
| | Ashley.Aull@mto.com |
| | VICTORIA A. DEGTYAREVA (State Bar No. 284199) |
| | Victoria.Degtyareva@mto.com |
| | MUNGER, TOLLES & OLSON LLP |
| | 350 South Grand Avenue, 50th Floor |
| | Los Angeles, CA 90071 |
| | Tel.: (213) 683-9100 |
| | |
| | ALLISON BROWN (*pro hac vice*) |
| | alli.brown@kirkland.com |
| | KIRKLAND & ELLIS LLP |
| | 2005 Market Street, Suite 1000 |
| | Philadelphia, PA 19103 |
| | Tel.: (215) 268-5000 |
| | |
| | JESSICA DAVIDSON (*pro hac vice*) |
| | jessica.davidson@kirkland.com |
| | JOHN J. NOLAN (*pro hac vice*) |
| | jack.nolan@kirkland.com |
| | KIRKLAND & ELLIS LLP |
| | 601 Lexington Avenue |
| | New York, NY 10022 |
| | Tel: (212) 446-4800 |
| | |
| | *Attorneys for Defendant Snap Inc.* |

| | |
|---|---|
| 1 | |
| 2 | /s/ Ashley W. Hardin |
| 3 | JOSEPH G. PETROSINELLI (*pro hac vice*) |
|   | jpetrosinelli@wc.com |
| 4 | ASHLEY W. HARDIN (*pro hac vice*) |
|   | ahardin@wc.com |
| 5 | J. ANDREW KEYES (*pro hac vice*) |
|   | akeyes@wc.com |
| 6 | NEELUM J. WADHWANI (SBN 247948) |
| 7 | nwadhwani@wc.com |
|   | WILLIAMS & CONNOLLY LLP |
| 8 | 680 Maine Avenue, SW |
|   | Washington, DC 20024 |
| 9 | Tel.: (202) 434-5000 |

*Attorneys for Defendants YouTube, LLC and Google LLC*

/s/ Christian J. Pistilli

ASHLEY M. SIMONSEN (State Bar No. 275203)
asimonsen@cov.com
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800

PHYLLIS A. JONES (*pro hac vice*)
pajones@cov.com
PAUL W. SCHMIDT (*pro hac vice*)
pschmidt@cov.com
CHRISTIAN J. PISTILLI (*pro hac vice*)
cpistilli@cov.com
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Tel.: (202) 662-6000

*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc. and Instagram, LLC*

|   |   |
|---|---|
| 1 | /s/ Geoffrey M. Drake |
| 2 | GEOFFREY M. DRAKE (*pro hac vice*) |
|   | gdrake@kslaw.com |
| 3 | TACARA D. HARRIS (*pro hac vice*) |
|   | tharris@kslaw.com |
| 4 | KING & SPALDING LLP |
| 5 | 1180 Peachtree Street, NE, Suite 1600 |
|   | Atlanta, GA 30309 |
| 6 | Tel.: (404) 572-4600 |

          /s/ Geoffrey M. Drake

          GEOFFREY M. DRAKE (*pro hac vice*)
          gdrake@kslaw.com
          TACARA D. HARRIS (*pro hac vice*)
          tharris@kslaw.com
          KING & SPALDING LLP
          1180 Peachtree Street, NE, Suite 1600
          Atlanta, GA 30309
          Tel.: (404) 572-4600

          DAVID P. MATTERN (*pro hac vice*)
          dmattern@kslaw.com
          KING & SPALDING LLP
          1700 Pennsylvania Avenue, NW
          Suite 900
          Washington, D.C. 20006
          Tel.: (202) 737-0500

          BAILEY J. LANGNER (State Bar No. 307753)
          *blangner@kslaw.com*
          KING & SPALDING LLP
          50 California Street, Suite 3300
          San Francisco, CA 94111
          Tel.: (415) 318-1200

          /s/ Daniel M. Petrocelli

          DANIEL M. PETROCELLI 9SBN 97802)
          SABRINA H. STRONG (SBN 200292)
          O'MELVENY & MYERS
          1999 Avenue of the Stars
          8th Floor
          Los Angeles, CA 90067
          Telephone: (310) 553-6700
          Email: dpetrocelli@omm.com
               sstrong@omm.com

          STEVE BRODY (pro hac vice)
          O'MELVENY & MYERS
          1625 Eye Street
          Washington, DC 20006
          Telephone: (202) 383-5300
          Email: sbrody@omm.com

          *Attorneys for Defendants*
          *TikTok Inc., ByteDance Inc., TikTok Ltd., ByteDance Ltd.,*
          *and TikTok LLC*

# **ATTESTATION**

I, Jonathan H. Blavin, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED: March 11, 2026          By:   */s/ Jonathan H. Blavin*
                                     Jonathan H. Blavin