James P. Rouhandeh, *pro hac vice*
Antonio J. Perez-Marques, *pro hac vice*
Caroline Stern, *pro hac vice*
Corey M. Meyer, *pro hac vice*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:  rouhandeh@davispolk.com
        antonio.perez@davispolk.com
        caroline.stern@davispolk.com
        corey.meyer@davispolk.com

*Attorneys for Defendants Meta Platforms, Inc. and Instagram, LLC*

*Additional counsel listed on signature pages*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*People of the State of California, et al. v. Meta Platforms, Inc., et al.* | MDL No. 3047<br><br>Case Nos. 4:22-md-03047-YGR-PHK<br>           4:23-cv-05448-YGR<br><br>**META'S NOTICE OF MOTION AND MOTION TO EXCLUDE AND/OR STRIKE EXPERT TESTIMONY OF CARL SABA**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang<br><br>Date: To be determined<br>Time: To be determined<br>Place: Courtroom 1, 4th Floor |

**[PUBLIC REDACTED VERSION]**

# NOTICE OF MOTION AND MOTION TO EXCLUDE AND/OR STRIKE EXPERT TESTIMONY

PLEASE TAKE NOTICE THAT, at a date and time to be determined by the Court, before the Honorable Yvonne Gonzalez Rogers, in Courtroom 1, Floor 4 of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California, 94612, Defendants Meta Platforms, Inc. and Instagram, LLC (hereinafter, "Meta") will and hereby do move this Court, under Federal Rule of Evidence 702, for an order excluding and/or striking testimony of Plaintiffs' expert Carl Saba. This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, any Reply or other papers submitted in connection with the Motion, the accompanying Declaration of Antonio J. Perez-Marques and all exhibits thereto, and on such other written and oral argument as may be presented to the Court.

## STATEMENT OF RELIEF SOUGHT

Meta seeks an order granting its motion to exclude and/or strike the expert testimony of Carl Saba.

Dated: March 13, 2026

Respectfully submitted,

DAVIS POLK & WARDWELL LLP

/s/ Antonio J. Perez-Marques
James P. Rouhandeh, *pro hac vice*
Antonio J. Perez-Marques, *pro hac vice*
Caroline Stern, *pro hac vice*
Corey M. Meyer, *pro hac vice*
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
rouhandeh@davispolk.com
antonio.perez@davispolk.com
caroline.stern@davispolk.com
corey.meyer@davispolk.com

*Attorneys for Defendants Meta Platforms, Inc. and Instagram, LLC.*

*Additional counsel listed on signature pages*

**TABLE OF CONTENTS**

PAGE

LEGAL STANDARD ................................................................................................................. 1

ARGUMENT ............................................................................................................................... 2

I.    Saba's Calculation of Bad Experience Violations Should Be Excluded (Op. 5) ..................... 2

    A.    Saba's Method Imposes Liability for Immunized Publishing Activities .................... 2

    B.    Saba's Method Is Impermissible Under State Consumer Protection Laws ................ 2

    C.    Saba's Method of Counting Bad Experience Violations Is Unreliable ....................... 4

II.    Saba's Calculation of Time Spent Violations Should Be Excluded (Op. 2) ........................... 6

III.    Saba's Disgorgement Opinion Should Be Excluded (Ops. 3-4) .............................................. 7

IV.    Saba's U13 Usage Opinions Should Be Excluded (Ops. 8-9) ................................................ 9

V.    Portions of Saba's Reports Should Be Excluded or, in the Alternative, Struck ...................... 9

CONCLUSION ............................................................................................................................ 10

**MEMORANDUM OF POINTS AND AUTHORITIES**

Carl Saba, a financial consultant, is the AGs' "damages" expert. Saba opines on the number of violations Meta purportedly committed under the MDL states' consumer protection laws using two methods: First, extrapolating the results of a single 11-day Meta survey to estimate the number of times teens had certain "bad experiences" relating to third-party content on Instagram ("Bad Experience Violations," Op. 5)[1] over a span of six years, and second, counting the number of times any teen averaged more than 30 minutes per day in a month on Instagram or Facebook ("Time Spent Violations," Op. 2). Those opinions are unreliable and fail to apply any method for counting violations recognized by state law. Saba's Bad Experience Violations opinion also violates Section 230 of the Communications Decency Act, 47 U.S.C. § 230 ("Section 230"), because it seeks to hold Meta liable as a publisher of third-party content, treating immunized conduct as "violations." Saba also purports to calculate the amount of "disgorgement" based on Meta's advertising profits ("Disgorgement Opinion," Ops. 3-4), which is impermissible under both state and federal law on disgorgement and also lacks a reliable basis. Saba also purports to calculate the number of U13s on Meta's platforms ("U13 Usage Opinions," Ops. 8-9), using an unreliable methodology. Lastly, portions of Saba's reports should be excluded (or struck) as unreliable analysis, impermissible factual narrative, state of mind testimony, or outside Saba's expertise.

Saba's opinions suffer yet another flaw: They are based almost entirely on the *ipse dixit* of counsel, who designed his methodology, told him what to count, when to count, and what statistical relationships to assume. As a damages expert, Saba acknowledges that he *must* have a reasonable basis to conclude that his calculations are tethered to the alleged misconduct, *but concedes that he does not*.

**LEGAL STANDARD**

The AGs must establish by a preponderance of the evidence that (i) Saba is qualified, (ii) his testimony "will help the trier of fact;" (iii) it "is based on sufficient facts or data," (iv) it "is the product of reliable principles and methods," and (v) it "reflects a reliable application of the principles and methods to the facts of the case." *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049 (9th Cir. 2025)

---

[1] "Opinion" or "Op." refers to the opinions in Paragraphs 2-9 of Saba's opening report. Ex. 1 (Saba Rep. ("Rep.")) ¶¶ 2-9.

1

(citing Fed. R. Evid. 702). Weight issues arise "*only if* a court first finds it more likely than not that an expert has a sufficient basis to support an opinion." *Id.* (emphasis added).

## ARGUMENT

### I. Saba's Calculation of Bad Experience Violations Should Be Excluded (Op. 5)

Saba's Bad Experience Violations opinion should be excluded because its methodology is incorrect as a matter of law and unreliable. Saba's starting point is the Bad Experiences and Encounters Framework ("BEEF") Survey, an internal Meta survey conducted over 11 days in mid-2021 that asked if respondents had any of 22 negative experiences on Instagram, such as witnessing discrimination, in the past week. Rep. ¶ 66; Ex. 2 (Saba Dep. Ex. 9 ("BEEF Results")) at -033. Saba takes the rate of teens experiencing 10 of the 22 experiences, which he extrapolates to all teen Instagram users in the MDL states over a period of six years, from February 2018 to March 2024, to calculate ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[2] Op. 5, Rep. ¶¶ 62, 218.

#### A. Saba's Method Imposes Liability for Immunized Publishing Activities

Saba's opinion should be excluded because it purports to establish Meta's liability for third-party content, which is immunized under Section 230. *See Senne v. Kansas City Royals Baseball Corp.*, 591 F. Supp. 3d 453, 488 (N.D. Cal. 2022) (excluding damages opinion applying methodology that is "incorrect as a matter of law"). Section 230 immunity applies when a "theory of liability would treat a defendant as a publisher or speaker of third-party content." *Calise v. Meta*, 103 F.4th 732, 740 (9th Cir. 2024). Here, as Saba concedes, his calculations treat Meta as liable for teens' encounters of "bad" content *posted by third parties*. Ex. 5 (Saba Dep. ("Dep.")) 198:6-12 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). Immunity applies because, "to avoid liability here, Meta . . . would need to actively vet and evaluate third party [content]." *Calise*, 103 F.4th at 744. Nor can Saba ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *see* Dep. 153:2-8, making his calculations entirely unhelpful to the Court.

#### B. Saba's Method Is Impermissible Under State Consumer Protection Laws[3]

Saba's method is also "incorrect as a matter of law" under the laws of the four lead states.

---

[2] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. 3 (Saba Sch. 5.2); Ex. 4 (Saba Sch. 5.3).

[3] Per the Court's instructions, this motion focuses on the laws of the four "lead" states. Ex. 6

2

1    All four states permit counting each wrongful act or transaction as a separate violation.[4]
2    However, Saba is *not* purporting to apply that methodology here. *See, e.g.*, Dep. 59:22-60:6
3    (█████████████████████████████████████████████████████), 52:1-53:13 (same
4    for at-issue features).

5    California, Colorado, and New Jersey[5] additionally permit counting violations "per
6    consumer," but *only if* the consumer (i) has been *exposed* to the alleged misconduct or (ii) suffered
7    an *actual injury* as a result. *See, e.g.*, *People v. Superior Ct. (Jayhill)*, 9 Cal. 3d 283, 289 (1973)
8    (counting persons "to whom the misrepresentations were made"); *People v. JTH Tax, Inc.*, 212 Cal.
9    App. 4th 1219, 1252 (2013) (counting unique viewers of commercial plus number of commercials);
10   *Chiesa v. Levine*, 2013 WL 3284131, at *2 (N.J. Super. Ct. App. Div. July 1, 2013) (counting four
11   "representative consumers" who purchased animals in reliance on misrepresentations); *May Dep't*
12   *Stores Co. v. State ex rel. Woodard*, 863 P.2d 967, 973-74 (Colo. 1993) (when counting violations
13   per "'each consumer . . . involved,'" the inquiry "almost necessarily involves an actual injury").

14   Yet Saba concedes that ████████████████████████████████████████████████
15   ████████████████████████████████████. Ex. 7 (Saba Reply Rep. ("Reply Rep.")) ¶ 104
16   (██████████████████████████████████████████████████████████████████████);
17   Dep. 113:13-21 (██████████████████████████████████████████████████████
18   █████), 115:19-25 (███████████████████████████████████████████████████).
19   Moreover, even where violations are counted based on consumers exposed or harmed, the law does
20   not permit counting *multiple* violations per consumer. *See, e.g.*, *Jayhill*, 9 Cal. 3d at 289 (rejecting

---

21   (February 11, 2026 Case Management Conference Transcript) 38:4-6.  Meta reserves the right to move to exclude under any other state's laws.

23   [4] *See, e.g.*, *People ex rel. Kennedy v. Beaumont Inv., Ltd.*, 111 Cal. App. 4th 102, 128 (2003), *as modified* (Sept. 9, 2003) (counting times defendant collected illegal rent); Colo. Rev. Stat. Ann. § 6-1-112(1)(a) ("[A] violation of any provision [of the Colorado Consumer Protection Act ("CCPA")] shall constitute a separate violation with respect to each consumer or transaction involved."); *Am. Nat'l Univ. of Ky. v. Commonwealth*, 2019 WL 2479608, at *7-8 (Ky. Ct. App. June 14, 2019) ("[A] violation *must* be based on a *separate, affirmative act or decision*[] by the defendant." (emphasis added) (unpublished)); *Platkin v. 22Mods4All Inc.*, 2023 WL 6629692, at *1-2 (N.J. Super. Ct. App. Div. Oct. 12, 2023) (counting New Jersey Consumer Fraud Act [("NJCFA")] violations as number of items sold plus number of transactions, equal to number of wrongful failures to disclose).

27   [5] Kentucky does not allow counting violations "per consumer;" instead, "violations *must* be based on" a defendant's "separate, affirmative act[s] or decisions." *Am. Nat'l Univ. of Ky.*, 2019 WL 2479608, at *7-8 (emphasis added) (unpublished).

calculation of 25 violations per consumer "regardless of how many misrepresentations" were made because "it is unreasonable to assume that the Legislature intended to impose" more than one violation per consumer). Yet Saba's method effectively results in ▆▆▆▆▆▆▆▆▆▆ violations per teen for the four lead states.[6] Saba's method is contrary to those states' laws.

### C. Saba's Method of Counting Bad Experience Violations Is Unreliable

Saba also fails to establish that the BEEF Survey provides a reliable basis for his methodology (assuming it were legally permissible) because there is too large an "analytical gap" between the survey data and his opinion. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (excluding expert with "analytical gap" between facts and opinion). Instead, Saba's calculation "rests on unsupported assumptions and unsound extrapolation." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 807 (9th Cir. 1988) (excluding opinion that extrapolated one year of financial data over nine years).

*First*, Saba conducts *no statistical analysis or any other type of empirical analysis* to establish the reasonableness of extrapolating the results of a single survey—which asked about users' experiences over 11 days in mid-2021—over a six-year period. Dep. 290:4-10 (▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆); Ex. 9 (McCrary Rep.) ¶ 126; Ex. 10 (McCrary Dep.) 305:21-306:10 (▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆). Indeed, Saba does not even opine that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. *See* Dep. 286:2-15. Instead, Saba's methodology was, in large part, designed by counsel, *see, e.g.*, Rep. ¶¶ 78, 217, which is impermissible, because an expert must provide his own "methodological justification[s] grounded in" his expertise. *Persian Gulf Inc. v. BP W. Coast Prods. LLC*, 632 F. Supp. 3d 1108, 1166-68 (S.D. Cal. 2022) (excluding expert who relied solely on "instruction of counsel"). That is especially true where, as here, the expert is "asked to apply a particular methodology" based on the "*ipse dixit* of counsel," which goes far beyond merely "being asked to assume certain facts in order to calculate damages." *Lucas v. MGM Resorts Int'l*, 724 F. Supp. 3d 1142, 1150 (D. Nev. 2024). What cursory "analysis" he conducts to support the extrapolation, which he does not offer as an expert opinion, is unreliable and should be excluded or struck. *See infra* Part V.

---

[6] ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Ex. 8 (Saba Sch. 6.3.1).

1    The "gap" between the underlying facts and Saba's assumption that extrapolation is
2    appropriate and is clear from "critical record evidence" that the BEEF results were *not* representative
3    of his six-year period. *Cambridge Lane, LLC v. J-M Mfg. Co.*, 2025 WL 1843110, at *9 (C.D. Cal.
4    Feb. 24, 2025) (excluding opinion because it "do[es] not consider all of the critical record evidence
5    in this particular case"); *see Engilis*, 151 F.4th at 1055 (excluding expert who "inadequately
6    explained his reasons" for "reject[ing] obesity as a possible cause" of plaintiff's diagnosis; expert
7    failed to establish his opinion was "based on sufficient facts or data") (citing Fed. R. Evid. 702(b)).
8    For example, Saba fails to consider that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
9    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. McCrary Rep. ¶ 126-27.  And Saba
10   does not consider ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
11   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *see* McCrary Rep. App. H, Dep. 330:8-334:8, despite
12   evidence that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *see* Ex. 11 (Otaru Dep.) 166:7-
13   12. Saba's assumption is not "based on sufficient facts or data." Fed. R. Evid. 702(b).
14   *Second*, Saba has no basis to conclude that the BEEF results are representative of the MDL
15   states' teen population. Saba's only "justification" is that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
16   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Reply Rep. ¶¶ 40-41. The question, though, is not
17   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, but whether Saba can reliably use its
18   results for a different purpose. He cannot. Nor can Saba rely on counsel's instruction to use the
19   BEEF Survey. *See* Rep. ¶ 17.f; *supra* Part I.B. Again, the evidence demonstrates that the BEEF
20   results are *not* representative of the negative experiences of the MDL states' teen population on
21   Instagram. To begin, the survey was conducted internationally, with ▮▮▮▮▮▮▮▮ of respondents
22   from the U.S.—a fact Saba did not consider or account for in his calculations. *See* BEEF Results
23   -034 (survey contains "country" field); Ex. 12 (Isaacson Dep.) 109:14-110:13; Ex. 13 (Isaacson Dep.
24   Ex. 7); Dep. 173:3-8, 411:16-412:15 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). Saba also
25   failed to consider that approximately half of respondents were in a control group, ▮▮▮▮▮▮▮
26   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* BEEF Results at -
27   038; Ex. 14 (Isaacson Rep.) ¶ 27; Ex. 15 (Andrews Dep.) 438:17-439:19. Saba nonetheless uses the
28   survey results for *all teens*, including those residing outside the U.S. and those in the control group,

1  and simply assumes that the results from this limited, ▮▮▮ foreign population captured over 11
2  days are representative of teens in the MDL states over *six years*.  That renders Saba's reliance on
3  the survey unreliable.  *See, e.g.*, *Sound View Innovations, LLC v. Hulu, LLC*, 2019 WL 9047211, at
4  *10 (C.D. Cal. Nov. 18, 2019) (excluding opinion based on study completed in different country on
5  different population of consumers from the ones at issue), *aff'd*, 33 F.4th 1326 (Fed. Cir. 2022).

6      *Third*, Saba fails to consider that the design of the BEEF Survey likely introduced biases that
7  would inflate his calculations.  *See* Isaacson Rep. ¶ 46; *In re ConAgra Foods, Inc.*, 302 F.R.D. 537,
8  555-57 (C.D. Cal. 2014) (excluding opinion where expert relied on surveys without "independent
9  evaluation of that evidence").  For example, ▮▮▮
10 ▮▮▮
11 ▮▮▮
12 ▮▮▮.  Isaacson Rep. ¶¶ 37, 52.  And the survey ▮▮▮
13 ▮▮▮.  *See id.* ¶¶ 67-68.  Saba fails to account for these issues,
14 which are fatal to his efforts to generalize and extrapolate the BEEF Survey.  *Id.* ¶¶ 45-46, 70.

15 **II.    Saba's Calculation of Time Spent Violations Should Be Excluded (Op. 2)**

16     In his Time Spent Violations opinion, Saba tallies every teen who used Instagram or Facebook
17 over 0.5, 1, 2, 3, 4, and 5 hours on average per day in any given month between January 2012 and
18 March 2024.  Op. 2; Rep. ¶ 17.a.  Saba's opinion—offered for purposes of calculating penalties and
19 disgorgement—should be excluded as legally impermissible, not helpful to the Court, and unreliable.

20     *First*, Saba's methodology is "incorrect as a matter of law," *Senne*, 591 F. Supp. 3d at 488,
21 and thus unhelpful.  As explained in connection with the Bad Experience Violations, the lead states
22 require a violation to represent (i) a wrongful act or transaction and/or (ii) a consumer exposed to or
23 harmed by the alleged misconduct.  *See supra* Part I.B.  Saba concedes ▮▮▮,
24 *see* Dep. 54:6-24, 115:19-116:12, and he again counts multiple violations per person—▮▮▮
25 ▮▮▮,[7] *see supra* Part I.B.  Nor can Saba ▮▮▮
26 ▮▮▮

---

[7] ▮▮▮.  Rep. ¶¶ 132, 137.

Saba Sch. 6.3.1.

*Second*, Saba's calculations are based on entirely arbitrary time thresholds, and are thus not "the product of reliable principles and methods." Fed. R. Evid. 702(c). There is no legal or analytical basis supporting the use of those specific thresholds. Counsel directed him to use that method, and Saba did not analyze ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌. Dep. 126:1-127:10. An expert's methodology cannot rest on the *ipse dixit* of counsel. *See supra* Part I.C.

### III.    Saba's Disgorgement Opinion Should Be Excluded (Ops. 3-4)

Saba's Disgorgement Opinion purports to calculate gross profits Meta earned from the alleged wrongdoing, specifically "for purposes of disgorgement." Rep. ¶ 17.e. This opinion should be excluded because it is based on the inadmissible Time Spent Violations opinion, *see In re Apple Inc. Sec. Litig.*, 2023 WL 4556765, at *6 (N.D. Cal. July 17, 2023), and for two independent reasons.

*First*, Saba's methodology, which was directed by counsel, Dep. 215:20-216:12; Reply Rep. 140, is unreliable and, indeed, completely inexplicable. Saba calculates the ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌. Rep. ¶¶ 139, 155, 175. However, according to Saba's calculation, ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌. McCrary Rep. Fig. 21 at 96. ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ Rep. ¶ 17.e, ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌. Despite being a damages expert, Saba refused to opine on the ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ Dep. 207:22-208:10. Saba cannot rely entirely on counsel to direct his methodology. *See, e.g.*, *Lucas*, 724 F. Supp. 3d at 1151 (excluding expert who "refused to opine" on "how losses should be calculated").

*Second*, Saba's Disgorgement Opinion should be excluded as "incorrect as a matter of law," *Senne*, 591 F. Supp. 3d at 488 (excluding expert for applying incorrect method for allocating offsets against wages), because there is no "causal relationship" between Saba's disgorgement figure and the alleged misconduct, *Out of the Box Enters., LLC v. El Paseo Jewelry Exch., Inc.*, 732 F. App'x

532, 534 (9th Cir. 2018) (disgorgement opinion that "assumed that all of [the defendant's] profits during the relevant period were due to its [alleged deception]" was "fatally flawed"); *see also, e.g.*, *State v. The Castle Law Grp., LLC*, 2017 WL 3449241, at *38 (Colo. Dist. Ct. Apr. 4, 2017) (dismissing CCPA disgorgement claim where plaintiff "failed to prove" payment would not have been made "had [the payor] only known" of the fraud), *aff'd in part, rev'd in part on other grounds*, 457 P.3d 699 (Colo. App. 2019). As noted *supra* Part II, Saba admits that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Further, there is no basis to conclude that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, McCrary Rep. ¶ 131-36, and Saba concedes as much, Dep. 227:17-228:4 (▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇); Reply Rep. ¶ 137 (▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇). Indeed, Saba posits ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Reply Rep. ¶ 139. Saba thus has no way of disaggregating profits attributable to lawful versus unlawful conduct and leaves the Court with *no way* of determining the appropriate measure of disgorgement, if any, caused by the alleged wrongdoing.

*Third*, Saba's calculations are separately "incorrect as a matter of law," *Senne*, 591 F. Supp. 3d at 488, because the AGs may not seek nonrestitutionary disgorgement. California and Kentucky permit only *restitutionary* disgorgement—i.e., value taken *from the plaintiff*. *See, e.g.*, *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1147-48 (2003) (UCL permits only "disgorgement" of monies "restitutionary in nature"); Ky. Rev. Stat. § 367.200 (permitting remedy that "*restore[s]* to any person in interest any moneys or property" paid "*as a result* of any [unlawful] practice" (emphasis added)). Here, Saba calculates ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See* Rep. ¶ 139. And as for New Jersey, "[d]isgorgement of profits is a punitive . . . form of damages. There is no law in New Jersey that allows such a recovery in [an NJCFA] claim." *Kleinman v. Merck & Co.*, 8 A.3d 851, 863 (Law. Div. 2009). Even if a state law purported to allow nonrestitutionary disgorgement, it would have no force here, because federal rules of equity preclude the AGs from seeking nonrestitutionary disgorgement that will not be returned to the victims. *See* ECF No. 2704 at 41-42 (citing *Liu v. SEC*, 591 U.S. 71 (2020)).

### IV. Saba's U13 Usage Opinions Should Be Excluded (Ops. 8-9)

Saba's U13 Usage Opinions purport to estimate the number of daily active U13s and unique U13 users on Meta's platforms from 2012 to 2023. Ops. 8-9. Saba bases his calculations on the Thorn Surveys—third-party surveys conducted annually from 2019 to 2023, Rep. ¶ 251, and created to evaluate children's online safety, *see* Ex. 16 (2019 Thorn Survey) at 5-6—which asked 9-12 year olds whether they used "at least once a day" or "ever used" a list of dozens of social media apps, including Facebook and Instagram, *see* Ex. 17 (2023 Thorn Survey) at 9-10. Saba's opinions should be excluded because the Thorn Surveys do not supply a reliable basis for Saba's calculations.

*First*, Saba does not conduct any analysis—such as investigating the survey population or potential biases—to justify his reliance on the Thorn Surveys. *See In re ConAgra*, 302 F.R.D. at 555-57. At most, Saba observes that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Rep. ¶ 252; Reply Rep. ¶ 84; Ex. 18 (Saba Dep. Ex. 4), but that falls far short of providing a reliable basis for Saba to use the Thorn Survey results to calculate U13 user counts over a 12-year period.

*Second*, the Thorn Surveys' population sample is biased, because it consisted only of U13s who have access to, and are permitted to use, the internet. *See* 2019 Thorn Survey at 6. As a result, the survey results are not representative of *all* U13s, because it excludes those *not* online. *See* Dep. 250:2-24 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

*Third*, although Saba purports to count U13s who actually have an Instagram account, the Thorn Survey questions are broader and encompass ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Dep. 256:18-257:23. As a result, Saba's use of the Thorn Surveys to tally U13s with Instagram accounts is inflated and unreliable.

*Fourth*, Saba lacked pertinent details regarding the Thorn Surveys to determine whether other biases exist. Saba relied on publicly available summary reports, which do not specify how questions were asked or how answer options were presented. As discussed above, such survey design features may introduce biases, which Saba did not and could not access. Isaacson Rep. ¶ 85-97.

### V. Portions of Saba's Reports Should Be Excluded or, in the Alternative, Struck

*First*, Section VII of Saba's report—used to justify Saba's otherwise baseless assumption that

the BEEF Survey results can be extrapolated over a six-year period, Dep. 151:9-152:24, 318:24-319:8—is unreliable.  Saba ███████████████████████████████████████████████ ███████████████████████████████████████████████████████████████. Rep. ¶¶ 81, 114-16.  Saba's "analysis" consists of ████████ ███████████████████████████████████████████████████████████████ ██████████████████████████████. *See* Rep. ¶¶ 109-13.  His reasoning, "based solely on a temporal relationship[,] is not derived from the scientific method." *Alsadi v. Intel Corp.*, 2019 WL 4849482, at *6 (D. Ariz. Sept. 30, 2019); *see Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) (excluding opinion that drug caused birth defects based on "the timing of the[] mothers' ingestion of the drug").  Nor can Saba bolster his conclusion by adopting the testimony of fact witnesses as his own. *See* Rep. Sections VII.4-5.  An expert cannot "'parrot[]' the opinions of others, without providing an independent evaluation." *Zakaria v. Gerber Prods. Co.*, 2017 WL 9512587, at *7 (C.D. Cal. Aug. 9, 2017), *aff'd*, 755 F. App'x 623 (9th Cir. 2018).

*Second*, Section V.3 of Saba's opening report, "Meta's Focus on Teen Acquisition and Retention," is presented "solely for the purpose of constructing a factual narrative," with no expert analysis. *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 613 F. Supp. 3d 1308, 1322 (S.D. Cal. 2020), *aff'd*, 9 F.4th 1102 (9th Cir. 2021).  This section also impermissibly opines on Meta's state of mind. *Rodriguez v. Google LLC*, 2025 WL 1569361, at *3 (N.D. Cal. June 2, 2025) (excluding testimony on defendant's state of mind); Dep. 270:8-22 (████████████████ ██████████████████), 272:25-273:9 (████████████████████████████████████████).  Saba stated that he would testify on this topic at trial. Dep. 270:8-15.  He should not be permitted to do so.

*Third*, portions of Saba's Reply Report where he explains that ████████████████████ ██████████████████████████████████████████████ and opines on █████████████████ ██████████████████████, Reply Rep. Section VI.1., ¶¶ 43, 46, 82, 93, 97, should be excluded or struck because experts may not opine on the law, *see, e.g.*, *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008).

## CONCLUSION

Meta respectfully requests that the Court exclude and/or strike Saba's opinions.



| | | |
|---|---|---|
| 1 | Dated: March 13, 2026 | Respectfully submitted, |
| 2 | | DAVIS POLK & WARDWELL LLP |
| 3 | | */s/ Antonio J. Perez-Marques* |
| 4 | | James P. Rouhandeh, *pro hac vice* |
| 5 | | Antonio J. Perez-Marques, *pro hac vice*<br>Caroline Stern, *pro hac vice* |
| 6 | | Corey M. Meyer, *pro hac vice*<br>450 Lexington Avenue |
| 7 | | New York, New York 10017<br>Telephone: (212) 450-4000 |
| 8 | | Facsimile: (212) 701-5800<br>rouhandeh@davispolk.com |
| 9 | | antonio.perez@davispolk.com<br>caroline.stern@davispolk.com |
| 10 | | corey.meyer@davispolk.com |
| 11 | | COVINGTON & BURLING LLP |
| 12 | | Ashley M. Simonsen, SBN 275203 |
| 13 | | 1999 Avenue of the Stars<br>Los Angeles, California 90067 |
| 14 | | Telephone: (424) 332-4800<br>Facsimile: (424) 332-2749 |
| 15 | | asimonsen@cov.com |
| 16 | | Paul W. Schmidt, *pro hac vice*<br>Phyllis A. Jones, *pro hac vice* |
| 17 | | One CityCenter<br>850 Tenth Street, NW |
| 18 | | Washington, DC 20001-4956<br>Telephone: (202) 662-6000 |
| 19 | | Facsimile: (202) 662-6291<br>pschmidt@cov.com |
| 20 | | pajones@cov.com |
| 21 | | *Attorneys for Defendants Meta Platforms, Inc. and Instagram, LLC.* |

META'S MOTION TO EXCLUDE/STRIKE EXPERT TESTIMONY OF CARL SABA - Nos. 4:22-MD-03047, 4:23-CV-05448