# AMENDED Exhibit 619

# PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Case No.: 4:22-md-03047-YGR
MDL No. 3047
In Re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation

HIGHLY CONFIDENTIAL (COMPETITOR)

Geoffrey M. Drake, *pro hac vice*
TaCara D. Harris, *pro hac vice*
King & Spalding LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309-3521
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
Email: gdrake@kslaw.com
        tharris@kslaw.com

*Attorneys for Defendants*
*TikTok Inc., ByteDance Inc., TikTok Ltd.,*
*ByteDance Ltd., and TikTok LLC*

*Additional counsel listed on signature page*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | Case No. 4:22-md-03047-YGR<br><br>MDL No. 3047<br><br>**THE TIKTOK DEFENDANTS' OBJECTIONS AND SUPPLEMENTAL RESPONSES TO PLAINTIFFS' FOURTH SET OF INTERROGATORIES** |
| THIS DOCUMENT RELATES TO ALL ACTIONS | |

**PROPOUNDING PARTY:**     **PI and SD Plaintiffs**

**RESPONDING PARTIES:**     **TikTok Inc.; ByteDance Inc., TikTok Ltd., ByteDance Ltd.; and TikTok LLC**

**SET:**                            **FOUR**

CONFIDENTIAL

**INTERROGATORY NO. 10**: For each Named Feature, identify the following: (i) the date on which the Feature was first implemented on Your Platform; (ii) the Person(s) with primary responsibility for the Feature during each year of the Relevant Time Period; and (iii) major modifications to each Named Feature and when each such modification was implemented on Your Platform. For purposes of this Interrogatory, "major modification" means any change that materially improves and/or alters the source code, capacity, functionality, and/or the method of operation.

**Objections:** The TikTok Defendants object to this Interrogatory as compound and to the extent it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery under the Federal Rules of Civil Procedure and/or applicable local rules. The TikTok Defendants object to this Interrogatory as overly broad, unduly burdensome, disproportionate to the needs of the case, and seeking information that is not relevant to any party's claim or defense because it seeks information without regard to time, place, or a user's age. The TikTok Defendants object to this Interrogatory as overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it requires the TikTok Defendants to extract or recover data that is not reasonably accessible or would require extraordinary costs and efforts to retrieve. The TikTok Defendants object to this Interrogatory because of its use of the terms Named Feature, Your Platform, and Person for the reasons stated *supra*. The TikTok Defendants object to this Interrogatory as vague

CONFIDENTIAL

and ambiguous because Plaintiffs' instructions include two different definitions of "Relevant Time Period" and it is unclear which definition Plaintiffs seek to apply here. The TikTok Defendants object to this Interrogatory as vague and ambiguous because of its use of the phrases "first implemented", "primary responsibility", "materially improves", "alters the source code", "capacity", "functionality", and "the method of operation"; these phrases are vague and ambiguous because they are undefined and therefore subject to different meanings. The Interrogatory therefore fails to describe with reasonable particularity the information sought. The TikTok Defendants object to this Interrogatory as overly broad, unduly burdensome, disproportionate to the needs of the case, and inconsistent with the scope of permissible discovery under the Federal Rules of Civil Procedure and/or applicable local rules because it asks the TikTok Defendants to provide a separate answer "For each Named Feature" with additional separate answers for "each year of the Relevant Time Period" which creates multiple "new discrete subparts" within each Interrogatory, per Fed. R. Civ. P. 33(a)(1). The TikTok Defendants' discovery obligations are limited by principles of reasonableness and proportionality. The TikTok Defendants also object to this Interrogatory to the extent it seeks materials or information barred from use at trial under Fed. R. Evid. 407.

**Supplemental Answer**:  Subject to these Objections and Objections to Definitions above, the TikTok Defendants' responses below reflect the current state of their knowledge and information gained through a reasonable investigation in this action regarding the information Plaintiffs have requested. The TikTok Defendants' investigation and discovery in this action are ongoing, and they continue to evaluate what information may exist, how far back it is kept, and what burden may be associated with answering this interrogatory and producing information, to the extent it exists.

1.  **Age Verification:** Age verification has been implemented on the TikTok Platform

CONFIDENTIAL

since its launch in the U.S.  The TikTok Platform employs an industry-standard neutral age gate that is consistent with the Federal Trade Commission's ("FTC") guidance under the Children's Online Privacy Protection Act ("COPPA") Rule as a method of age assurance. The neutral age gate occurs during the account creation process when a user inputs a date of birth. In the U.S., if an individual provides a birthdate that corresponds to an age under 13, they are directed to the TikTok Platform's under 13 experience. Users aged 13–15 are classified as "early teens," and users aged 16–17 are classified as "older teens." Between the two groups, early teens will have more default privacy settings and protective limitations. TikTok has made several modifications to its age protection processes since 2017. For example, once a user is on the TikTok Platform, TikTok uses technologies and human moderators, as well as user and third-party reporting, to detect and remove accounts that violate the Platform's minimum age requirement. TikTok uses technology, such as a natural language processing model that detects text in a user's bio for indicators that the user may be underage. TikTok has implemented features and processes to allow users or third parties to report accounts as being underage. An account that is identified as being potentially underage is then routed to a dedicated team of moderators who review the account to determine if it should be banned for not meeting the minimum age requirement. TikTok moderators review various sources of information, including videos, LIVE replay (including audio therein), and visual signals in other content (such as a user's profile image) as available to identify individuals who may be underage. A user whose account is banned for being suspected as underage may appeal the ban. The appeal process requires the user to

CONFIDENTIAL

submit proof of age by providing either a selfie photo holding a government-issued ID and a unique number provided by the TikTok Platform or a valid credit card, or to ask a validated adult, parent, or guardian to validate their age (limited to 13-17 year old users). The TikTok Platform uses its human moderators and Yoti to review the information provided via selfie method; Jumio, a third-party, to verify the authenticity of government-issued IDs; and Stripe to verify credit card information. The use of Yoti for age appeals began in the U.S. in November 2023.

2. **Algorithmic Recommendation:** The development of the TikTok Platform's recommendation system is an ongoing process, constantly evolving through the refinement of models and reassessment of influential factors based on user feedback, research and data analysis. For a description of the recommendation system, the TikTok Defendants refer Plaintiffs to their Objections and Supplemental Responses to Plaintiffs' Fifth Set of Interrogatories.

3. **Default Protective Limit:** The Default Protective Limit feature has a number of different limitations incorporated, including but not limited to:

   a. Direct Messaging Age Threshold: Only users over the age of 16 are able to send and receive Direct Messages on the TikTok Platform. This feature was implemented in approximately April 2020. This age threshold has not been modified since its implementation.

   b. Go-LIVE Age Threshold: Only users over the age of 18 may go LIVE on the TikTok Platform. This feature, which originally set an age threshold of 16 to go LIVE, was implemented in approximately December 2019. The age threshold was later changed to 18 years old in approximately November 2022.

41

CONFIDENTIAL

c.  LIVE Gifting Age Threshold: Prior to December 2019, users 14 and over could send virtual gifts, and users over 16 could receive them.  In December 2019, the TikTok Platform updated its virtual gifting policy to only allow those users 18 and over to purchase, send, or receive virtual gifts on the TikTok LIVE Platform.

d.  View-LIVE Traffic Restriction: When content containing mature or complex themes is identified in a LIVE stream, the LIVE stream is not recommended for users under the age of 18. This feature was implemented on the TikTok Platform in approximately October 2023. This age threshold has not been modified since its implementation.

e.  Suggesting Account to Others: By default, this setting is turned off for users under the age of 18. This feature was implemented in approximately January 2021.

f.  Video Commenting Restrictions: For users under the age of 16, only friends may comment on their videos. For users ages 16 and 17, other users may comment on videos for public accounts, but only followers may comment on videos for private accounts. This feature was implemented in approximately January 2021.

g.  Mention Threshold: Only friends may mention users under the age of 16.

h.  Video Download Restrictions: Videos posted by users under the age of 16 are not available for download. For users ages 16 and 17, downloads are only available to friends. This feature was implemented in approximately January 2021.

i.  Duet and Stitch Threshold: Videos posted by users under the age of 16 are not able to be dueted or stitched. Videos posted by users ages 16 and 17 may only

THE TIKTOK DEFENDANTS' OBJECTIONS AND SUPPLEMENTAL RESPONSES
TO PLAINTIFFS' FOURTH SET OF INTERROGATORIES
Case No. 4:22-MD-03047-YGR

be dueted or stitched by friends of the user. This feature was implemented in approximately January 2021.

4.      **CSAM – Reporting Protocols:** TikTok aims to detect, report, and remove CSAM content or accounts through the following methods:

a.  Proactive Detection Efforts: Content posted to the TikTok Platform goes through technology that reviews the content against TikTok's Community Guidelines. If the content is identified as potentially violative, it is automatically removed and/or flagged for additional review by moderators. Since 2020, TikTok has implemented National Center for Missing and Exploited Children ("NCMEC") and the Internet Watch Foundation ("IWF") hash banks to detect known CSAM, NCMEC and IWF indexing process for faster recall and increase in true positives, keyword and link detection from IWF and other partners to prevent content distribution, Google and YouTube APIs to score CSAM risks, and similarity match upgrade to more broadly identify similar content.

b.  The initial model trained directly on CSAM detection was developed in 2022. In February 2023, the model was transitioned to a privacy-compliant embedding-based approach, which utilized a domain-specific video embedding framework, pre-trained with classification tasks in adjacent domains to detect CSAM without relying on raw video content. In May 2023, the CSAM reporting model was again enhanced with the Privacy-Preserving CSAM Classification Model to ensure there was no direct linkage to original content or victim identities during training. In June 2024, a Unified Detection Framework was introduced with the goal of improving detection efficiency and accuracy before

subsequently being retired in favor of the more effective Privacy-Preserving CSAM classification Model.

   c. <u>Reporting Protocols:</u> If content posted to the TikTok Platform involves incidents of youth sexual exploitation and abuse, such content may be disclosed to NCMEC in accordance with TikTok's legal obligations. TikTok may also report such incidents to relevant law enforcement authorities when there is a specific, credible, and imminent threat to human life or serious physical injury.

5. **Short-Form and Ephemeral Content:** Users can engage with Short-Form and Ephemeral Content through a number of different features, including but not limited to:

   a. <u>TikTok Stories:</u> This feature was implemented in approximately March 2022.

   b. <u>TikTok Now:</u> This feature was implemented in approximately September 2022 and discontinued in approximately June 2023.

6. **Friend Recommendation:** This feature launched prior to March 2020. In March 2020, friend recommendations were available in a user's Inbox, on a user's Profile, and on a user's For You Page. In July 2022, the Friend Recommendation Big Card was added to the user's For You Page and Friends Tab. In July 2022, TikTok also introduced a Friend Recommendation pop-up in the user's For You Page. From 2020 to 2024, the Friend Recommendation algorithm was optimized.

7. **Image Filters:** This feature has been available since the TikTok Platform launched in the U.S. The TikTok Platform does not collect any sensitive user data from this feature. While in kids' mode, 99.865% of the image filters are not available.

8. **Family Pairing:** This feature has been available on the TikTok Platform since April

CONFIDENTIAL

2020. *See also* the TikTok Defendants' response to interrogatory No. 8 above related to safety features, such as Family Pairing and  Screen Time Limits, related to modifications to the Named Feature. Modifications and enhancements to Family Pairing have been made over the years, including allowing parents to turn off comments on their teen's videos (November 2020), letting parents decide whether the teen can search for videos, hashtags, and LIVE videos (November 2020), allowing parents to restrict direct messaging for users who are 16 or older (while DM is already turned off for U16 users) (November 2020), allowing parents to create a list of keywords that are used to filter out videos that contain those keywords (February 2023), giving parents access to a screen time dashboard that provides a summary of the teen's TikTok usage, allowing parents to mute all push notifications on their teen's account (March 2023), and providing parents with a weekly summary of their teen's screentime (April 2023).

9.  **User-Complaint Protocols:** TikTok introduced its user feedback platform in 2018. There are currently 19 ways a user can report on the TikTok Platform. Specifically, a user can report videos, comments, accounts, hashtags, direct messages, audio, LIVE, LIVE comments, ads, e-commerce, Q&A, search results, effects, shoutouts, third-party anchor reports, photos, LIVE events, and libraries.

10. **Notifications:**   TikTok introduced default mute windows for minor users in approximately 2021. Users can set a schedule to mute push notifications on their device for a specific amount of time. For users under 15 years old, push notifications are always muted from 9 p.m. to 8 a.m. by default, and this setting cannot be changed. For users aged 16 to 17 years old, push notifications are always muted

45

from 10 p.m. to 8 a.m. by default, and this setting cannot be changed. Parents and guardians can also schedule additional time to mute their teen's push notifications in Family Pairing. The default scheduled time overrides any custom time. For example, if a parent sets their 13-year-old's scheduled time from 11 p.m. to 7 a.m., the default time from 9 p.m. to 8 a.m. will override the parent's setting. Users over the age of 18 may opt-in to muted push notifications.

11. **User Options:**

a. <u>Deletion/Deactivation of User Account</u>: Users have had the ability to delete or deactivate their account since the TikTok Platform's launch in the U.S.

b. <u>Screen Time Limits:</u> TikTok introduced daily screen time limits in approximately February 2019 by launching a feature that allowed users to set personalized, in-app screen time limits that are locked behind a four-digit passcode. In approximately 2019, parents were also able to set a cap on their teen's screen time. In approximately March 2023, TikTok introduced a 60-minute default daily screen time limit for users under 18 years old. Once the 60-minute limit has been reached, teens are prompted to enter a passcode to continue watching, requiring them to make an active decision to extend the time spent on the TikTok platform. For users in TikTok's Under 13 Experience, the daily screen time limit is enabled by default to 60 minutes. Once the 60-minute limit has been reached, a parent or guardian must enter a passcode to enable 30 minutes of additional watch time. New screen time limit features were also added to Family Pairing in approximately March 2023, including (1) letting parents set custom daily screen time limits for their teen, (2) giving parents

46

access to their teen's screen time dashboard, and (3) allowing parents to set times when notifications are muted (in addition to the default notification mute settings). In approximately June 2023, TikTok released usage reminders for users spending more than 100 minutes on TikTok, which prompted these users to utilize the available screen time management tools.

c.  Screen Time Breaks: Screen Time Breaks were first made available on the TikTok platform in approximately June 2022. This feature allows users to set custom reminders to take breaks from the Platform.

d.  Muting of Notifications: Default mute windows for minor users were introduced on the TikTok Platform in approximately August 2021. For users under 15 years old, push notifications are always muted from 9 p.m. to 8 a.m. by default, and this setting cannot be changed. For users aged 16 to 17 years old, push notifications are always muted from 10 p.m. to 8 a.m. by default, and this setting cannot be changed. In approximately March 2023, the TikTok Platform introduced a feature that enables parents to set a schedule to mute notifications for their teen using Family Pairing. The default scheduled time overrides any custom time set by the parent. For example, if a parent sets their 13-year-old's scheduled time from 11 p.m. to 7 a.m., the default time from 9 p.m. to 8 a.m. will override the parent's setting.

e.  Comment Management:  As of at least April 2019, users have been able to manage comments on their videos using the "Filter Comments" tool. This tool allows users to make a custom list of keywords that are automatically blocked from any comments on the user's videos. Additionally, since at least April 2019,

THE TIKTOK DEFENDANTS' OBJECTIONS AND SUPPLEMENTAL RESPONSES
TO PLAINTIFFS' FOURTH SET OF INTERROGATORIES
Case No. 4:22-MD-03047-YGR

CONFIDENTIAL

users have been able to restrict comments to friends or turn comments off completely. In approximately March 2021, a "Filter All Comments" feature, which allows users to hide all comments on their videos until the user approves them, was introduced on the TikTok Platform. Additionally, in approximately March 2021, a new comment prompt that asks people to reconsider posting a comment that may be inappropriate or unkind, and directs them to the Community Guidelines, was introduced on the TikTok Platform. In approximately May 2021, the TikTok Platform launched a method for creators to delete multiple comments at once or report them for potentially violating Community Guidelines. In approximately July 2023, the TikTok Platform introduced Comment Care Mode, which filters out comments similar to those that the creator has previously reported or deleted or are inappropriate, offensive or contain profanity.

The TikTok Defendants refer Plaintiffs to their Objections and Responses to Plaintiffs' Second Set of Interrogatories for the person(s) who have responsibility and/or knowledge of the above-referenced "Named Features."

Dated: February 24, 2025

**KING & SPALDING LLP**

*/s/ Geoffrey M. Drake*
Geoffrey M. Drake, *pro hac vice*
TaCara D. Harris, *pro hac vice*
King & Spalding LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309-3521
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
Email: gdrake@kslaw.com
tharris@kslaw.com

CONFIDENTIAL

Kristen R. Fournier, *pro hac vice*
King & Spalding LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036-2601
Telephone: (212) 556-2100
Facsimile: (212) 556-2222
Email: kfournier@kslaw.com

David P. Mattern, *pro hac vice*
King & Spalding LLP
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone: (202) 737-0500
Facsimile: (202) 626-3737
Email: dmattern@kslaw.com

Bailey J. Langner (SBN 307753)
King & Spalding LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300
Email: blangner@kslaw.com

*Attorneys for Defendants TikTok Inc., ByteDance Inc., TikTok Ltd., ByteDance Ltd., and TikTok LLC*

49

## **VERIFICATION**

I, ▮▮▮▮▮▮▮, am an ▮▮▮▮▮▮▮▮▮▮▮▮ at TikTok Inc., and I am authorized to make this verification for, and on behalf of, TikTok Inc., ByteDance, Inc., TikTok Ltd., ByteDance Ltd., and TikTok LLC (collectively the "TikTok Defendants"), who are the parties to this action. I have reviewed the foregoing document entitled THE TIKTOK DEFENDANTS' OBJECTIONS AND SUPPLEMENTAL RESPONSES TO PLAINTIFFS' FOURTH SET OF INTERROGATORIES and know its contents. I have reviewed the information available to the TikTok Defendants and their employees. Based on such review, I am informed and believe that the matters stated in the foregoing document are true and correct as of the date of service.

I declare under the penalty of perjury under the laws of the State of New York that the foregoing is true and correct.

Executed this 24th day of February, 2025 at New York, New York.