**AMENDED Exhibit 715**

# PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Case No.: 4:22-md-03047-YGR
MDL No. 3047
In Re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation

CONFIDENTIAL

Page 310

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN RE: SOCIAL MEDIA                    Case No.
ADOLESCENT ADDICTION/                  4:22-MD-03047-YGR
PERSONAL INJURY PRODUCTS               MDL No. 3047
LIABILITY LITIGATION
-----------------------------/

This Document Relates to:

ALL ACTIONS
-----------------------------/

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER
VIDEO-RECORDED DEPOSITION OF CRISTOS GOODROW
VOLUME 2
(Pages 310 through 596)
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road, Palo Alto, California
THURSDAY, FEBRUARY 20, 2025

Stenographically reported by:
LORRIE L. MARCHANT, RMR, CRR, CCRR, CRC
California CSR No. 10523
Washington CSR No. 3318
Oregon CSR No. 19-0458
Texas CSR No. 11318
California Firm Registration No.:  48

CONFIDENTIAL

Page 311

A P P E A R A N C E S

For the JCCP Plaintiffs:

        SOCIAL MEDIA VICTIMS LAW CENTER
        BY:  GLENN S. DRAPER, ESQ.
        600 1st Avenue
        Suite 102-PMB 2383
        Seattle, WA 98104
        (206) 741-4862
        glenn@socialmediavictims.org

For the MDL Plaintiffs:

        LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
        BY:  FAITH ELIZABETH ALLAYNE LEWIS, ESQ.
        275 Battery Street, 29th Floor
        San Francisco, CA 94111
        (415) 956-1000
        flewis@lchb.com

        SEEGER WEISS LLP
        BY:  AUDREY CLAIRE SIEGEL, ESQ.
           JEROME MITCHELL, ESQ. (via Zoom)
        55 Challenger Road, Floor 6
        Ridgefield Park, NJ 07660
        (973) 639-5337
        asiegel@seegerweiss.com
        jmitchell@seegerweiss.com

For the Defendants Google and YouTube:

        WILSON SONSINI GOODRICH & ROSATI
        BY:  LAUREN GALLO WHITE, ESQ.
        BY:  ANDREW KRAMER, ESQ.
        BY:  SAVANNAH GRANT, ESQ. (via Zoom)
        650 Page Mill Road
        Palo Alto, CA 94304
        (650) 493-9300
        lwhite@wsgr.com
        akramer@wsgr.com
        sgrant@wsgr.com
        BY:  LAURA HERNANDEZ, ESQ.
        One Market Plaza
        Spear Tower, Suite 3300
        San Francisco, CA 94105
        (415) 947-2000
        lhernandez@wsgr.com

CONFIDENTIAL

Page 312

                    A P P E A R A N C E S
  For the Defendants Google and YouTube:
              WILSON SONSINI GOODRICH & ROSATI
              BY:  SAMANTHA MACHOCK, ESQ. (via Zoom)
              12235 El Camino Real
              San Diego, CA 92130
              (858) 350-2300
              smachock@wsgr.com

  For the Defendants Meta Platforms, Instagram,
  Siculus:

              SHOOK, HARDY & BACON, LLP
              BY:  EBEN FLASTER, ESQ. (via Zoom)
              Two Commerce Square
              2001 Market Street, Suite 3000
              Philadelphia, PA 19103
              (215) 278-2555
              eflaster@shb.com
              BY:  HANNAH SANCHEZ, ESQ. (via Zoom)
              2555 Grand Boulevard
              Kansas City, MO 64108
              (816) 474-6550
              hsanchez@shb.com
  For the Defendant TikTok:
              DLA PIPER LLP (US)
              BY:  POONAM KUMAR, ESQ. (via Zoom)
              80 South Eighth Street, Suite 2850
              Minneapolis, MN 55402
              (612)524-3000
              poonam.kumar@us.dlapiper.com


  (Continued)

CONFIDENTIAL

Page 313

              A P P E A R A N C E S
For the Defendant Snap, Inc.:
          MUNGER, TOLLES & OLSON, LLP
          BY:  LYNDSEY FRANKLIN, ESQ. (via Zoom)
          601 Massachusetts Avenue NW, Ste 500 E
          Washington, DC 20001
          (202) 220-1109
          lyndsey.franklin@mto.com
          BY:  KAYSIE GONZALEZ, ESQ. (via Zoom)
          350 South Grand Avenue, Floor 50
          Los Angeles, CA 90071
          (213) 683-9578
          kgonzalez@mto.com

Also present:

          Jim Lopez, Trial technician
          James von Wiegen, Legal Videographer
          Raven Norris, Google in-house counsel
          Marissa Urban, Google in-house counsel
Via Zoom:
          Ron Austin
          Reilly Dunne
          Kevin White
                    ---oOo---

CONFIDENTIAL

Page 314

I N D E X
INDEX OF EXAMINATION
EXAMINATION BY                                          PAGE
  MS. SIEGEL                                            317
  MS. GALLO WHITE                                       547
  MR. DRAPER                                            576
                        ---oOo---
    INDEX OF EXHIBITS MARKED FOR IDENTIFICATION
   EXHIBIT        DESCRIPTION                          PAGE
    Google-YouTube-Goodrow
    Exhibit 28  Slide deck entitled "Teen tech     323
                bans" (GOOG-3047MDL-02147893)
    Google-YouTube-Goodrow
    Exhibit 29  Deck slide entitled "YouTube       332
                Main App"
    Google-YouTube-Goodrow
    Exhibit 30  e-mail correspondence, dated       342
                11/9/2015, subject: Stuff we're
                doing in DAV Growth
                (GOOG-3047MDL-02009802)
    Google-YouTube-Goodrow
    Exhibit 31  e-mail correspondence, dated       381
                3/8/2018, subject: Snacking /
                increasing visit use cases
                (GOOG-3047MDL-02026373 -
                GOOG-3047MDL-02026374)

    Google-YouTube-Goodrow
    Exhibit 32  Slide deck entitled "See Fewer     362
                Shorts Proposal"
                (GOOG-3047MDL-02194639)
    Google-YouTube-Goodrow
    Exhibit 33  e-mail correspondence, dated       394
                5/24/2017, subject: RSPH study
                on Social Networks impact on
                well-being
                (GOOG-3047MDL-02022090 -
                GOOG-3047MDL-02022093)

CONFIDENTIAL

Page 315

```
 INDEX OF EXHIBITS MARKED FOR IDENTIFICATION
EXHIBIT       DESCRIPTION                      PAGE
 Google-YouTube-Goodrow
 Exhibit 34  e-mail correspondence, dated       396
             1/26/2018, subject: getting
             ahead of tech addition
             (GOOG-3047MDL-02025665 -
             GOOG-3047MDL-02025666)

 Google-YouTube-Goodrow
 Exhibit 35  e-mail correspondence, dated       409
             2/5/2018, subject: Binge
             (GOOG-3047MDL-02025745 -
             GOOG-3047MDL-02025746)

 Google-YouTube-Goodrow
 Exhibit 36  e-mail correspondence, dated       426
             9/4/2018, subject: social
             science research: two-pager
             proposal (GOOG-3047MDL-02029253
             - GOOG-3047MDL-02029254)
 Google-YouTube-Goodrow
 Exhibit 37  Deck Slide entitled "YouTube       429
             Wellbeing Vision"
             (GOOG-3047MDL-02029236)

 Google-YouTube-Goodrow
 Exhibit 38  Document entitled "DWB Reminders   477
             on Desktop [DRAFT]"
             (GOOG-3047MDL-02119037 -
             GOOG-3047MDL-02119035)

 Google-YouTube-Goodrow
 Exhibit 39  YouTube deck slides entitled       483
             "Filter status," dated 12/2016
             (GOOG-3047MDL-05380433)
 Google-YouTube-Goodrow
 Exhibit 40  Document entitled "Upcoming        486
             Agenda Items" dated 1/25/2023
             (GOOG-3047MDL-02124900 -
             GOOG-3047MDL-02124959)
```

CONFIDENTIAL

Page 316

INDEX OF EXHIBITS MARKED FOR IDENTIFICATION

EXHIBIT        DESCRIPTION                          PAGE

Google-YouTube-Goodrow
Exhibit 41  Deck slide entitled                499
            "Autoplay/DPC feedback YTPR,
            2022-03-21"
            (GOOG-3047MDL-00616722)
Google-YouTube-Goodrow
Exhibit 42  Deck slide entitled "DAV growth   518
            update" (GOOG-3047MDL-02013534)
Google-YouTube-Goodrow
Exhibit 43  YouTube slide deck entitled        521
            "Shorts Viewer Notifications
            PRD" (GOOG-3047MDL-02115397 -
            GOOG-3047MDL-02115411
Google-YouTube-Goodrow
Exhibit 44  YouTube slide deck entitled        528
            "Understanding our YT Users
            (2011-2014), June 2015
            (GOOG-3047MDL-02060554)
Google-YouTube-Goodrow
Exhibit 45  Slide deck entitled "DAV Cohort   533
            Analysis"
            (GOOG-3047MDL-01077996)

Google-YouTube-Goodrow
Exhibit 46  YouTube slide deck entitled        535
            "Growth 2022 Update:  YT Stats"
            (GOOG-3047MDL-02114067)
Google-YouTube-Goodrow
Exhibit 47  Document entitled "YouTube         539
            School Access and HTTPS"
            (GOOG-3047MDL-00853535 -
            GOOG-3047MDL-00853539)
                    ---oOo---

CONFIDENTIAL

Page 317

THURSDAY, FEBRUARY 20, 2025

SAN FRANCISCO, CALIFORNIA

9:11 a.m. PST

THE VIDEOGRAPHER:  We're now on the record. Today's date is February 20th, 2025.  This is a continuation of Cristos Goodrow's deposition in the matter of Social Media Adolescents Addiction/Personal Injury Products Liability Litigation.

The time is 9:11.

The court reporter is Lorrie Marchant and will now swear in the witness.

CRISTOS GOODROW,

FIRST DULY SWORN/AFFIRMED, TESTIFIED AS FOLLOWS:

EXAMINATION BY MS. SIEGEL

BY MS. SIEGEL:

Q.    Good morning, Mr. Goodrow.  My name is Audrey Siegel.  I'm an attorney representing the plaintiffs in this action on behalf of the MDL.

How are you doing today?

A.    Fine.  Thank you.

Q.    My colleague, Glenn Draper, took some questions yesterday on behalf of the JCCP.  I'm going to try not to be too repetitive, but bear with me because sometimes it does take a moment to get

CONFIDENTIAL

Page 318

back into the thread of the questioning; okay?

A.    Okay.

MS. GALLO WHITE:  I just want to state for the record that we're starting a few minutes late at plaintiffs' counsel's request.

MS. SIEGEL:  Thank you.

BY MS. SIEGEL:

Q.    And is there any reason today why you can't give your best testimony?

A.    No.

Q.    Did you have the opportunity to speak with your lawyers between the break last night and this morning?

A.    Yes.

Q.    Can you tell me approximately how long you spoke?

A.    Maybe 45 minutes.

Q.    Okay.  And did you review any documents between the end of your deposition yesterday and today?

A.    No.

Q.    Okay.  Great.

The first thing that I want to ask you about is underage use of the YouTube platform.

So is YouTube aware that underage users,

CONFIDENTIAL

Page 324

about five pages in.  It says -- it looks like this (indicating).

It says (as read):

"If YouTube must be age gated, it will lead to more signed-out usage."

Do you see that page?

A.    I do.

Q.    And this particular document appears to be about users under the age of 18.  But is YouTube aware that individuals, if presented with age gating on YouTube, may just choose to use the service logged out?

A.    Well, I think that's a reasonable thing to be concerned about.

Q.    And why is that?

A.    Well, because if the signed-in experience isn't sufficiently compelling, then -- or easy to use -- then people might instead use signed out.

Q.    What do you mean by "compelling"?

A.    If it doesn't contain the features or content that people are looking for.

MS. GALLO WHITE:  I'm sorry to interrupt. I just want to state for the record that portions of this document appear to be privileged and may need to be clawed back.  We'll allow questioning on it

Page 351

continue sending -- strike that.

          MS. SIEGEL:  Okay.  Let's turn to the next -- let's enter the next exhibit, which is going to be internal Tab 45.  It's in the other room.

          MS. LEWIS:  Perhaps.

          MS. SIEGEL:  Do we have Tab 49?

          BY MS. SIEGEL:

     Q.   In 2019 was there a change from the Watch Next feature to -- moved to being an infinite feed?

          MS. GALLO WHITE:  Object to form.

          THE WITNESS:  I don't remember the year that it changed, but probably around that time.

          BY MS. SIEGEL:

     Q.   Okay.  And why was that change done?

     A.   Because we wanted to help people find the views they want to watch.

     Q.   Did it increase the amount of time that users spent on YouTube?

          MS. GALLO WHITE:  Object to form.

          THE WITNESS:  It increased -- we think it increased the amount of value users got from YouTube as measured by time.

          BY MS. SIEGEL:

     Q.   As measured by time.

CONFIDENTIAL

Page 352

And so it did increase the amount of time that users spent on YouTube?

MS. GALLO WHITE:  Object to form.

THE WITNESS:  I think it may have.

BY MS. SIEGEL:

Q.   And it was designed to increase the amount of time that users spent on YouTube?

MS. GALLO WHITE:  Object to form.

THE WITNESS:  It was designed to increase the value that people get from YouTube.  We measure that, in part, by time.

BY MS. SIEGEL:

Q.   What value -- strike that.

In this context, is there any way that they would get what you're calling value without spending more time on YouTube?

MS. GALLO WHITE:  Object to form.

THE WITNESS:  Well, we discussed that before where people can get value out of simple things on YouTube, finding answers to problems and things like that.

BY MS. SIEGEL:

Q.   We did.

But in the context of expanding Watch Next, is the only way that Watch Next would -- that they

CONFIDENTIAL

Page 353

would get an increased, what you're calling, value from YouTube by spending more time on YouTube?

MS. GALLO WHITE:  Object to form.

THE WITNESS:  Not necessarily, but it's a reasonable measure.

BY MS. SIEGEL:

Q.   Can you give an example of a different value -- of a different way that they would get value by extending the Watch Next feed into an Infinite feed?

MS. GALLO WHITE:  Object to form.

THE WITNESS:  Sure.  If -- if the first few things weren't what they were looking for and they chose one of those and spent more time looking for the thing that they couldn't find and -- but -- you know, but instead we expanded the feed and put the thing they were looking for a little further down, then, yeah, expanding it would help them find more value faster without spending more time.

BY MS. SIEGEL:

Q.   Isn't the search function already used when an individual comes to YouTube looking for something specific?

MS. GALLO WHITE:  Object to form.

THE WITNESS:  Sure, that's one of the

things they use.  But oftentimes people watch a video and then they're looking for something specific and then they look through the Watch Next to find it.

BY MS. SIEGEL:

Q.   Okay.  I'll direct you back to what was the 2019 Strategy Off-Site Two-Pagers.

MS. GALLO WHITE:  Do you remember the exhibit number?

MS. SIEGEL:  It's 12.

THE WITNESS:  Twelve.

BY MS. SIEGEL:

Q.   Okay.  So can I direct your attention to 4269572.

Is one of the reasons that YouTube determined to change to an Infinite Watch Next feed in order to compete with Facebook and Instagram's monetization?

MS. GALLO WHITE:  Object to form.

THE WITNESS:  I don't know, but that's not -- wasn't the main reason.

BY MS. SIEGEL:

Q.   Can you read for me the "Problem Statement and Background" section?

A.   Yes.  (As read):

CONFIDENTIAL

Page 379

A.   Yes.

Q.   Who is Matthew?

A.   Matthew refers to Matthew Mengerink.

Q.   And who is -- can you repeat the last name for me?

A.   Mengerink, Matthew Mengerink.

Q.   And what was Matthew Mengerink's position as of February 4th, 2016?

A.   I believe he was a VP of engineering.

Q.   And is he still with YouTube?

A.   No.

Q.   And so these were very senior people who would have been giving this presentation; is that right?

A.   No.  This presentation would have been given to them.

Q.   I understand.

And so these were very senior people who would have been present at the presentation; right?

A.   That's correct.

Q.   And would you have been present at this presentation?

A.   I would likely have been present.

Q.   Okay.  And so none of the senior people who were present felt any need to object to the use of

Page 380

the phrase "addictive" to describe the app experience; is that right?

MS. GALLO WHITE:  Object to form.

THE WITNESS:  I don't remember the meeting well enough to know if that's true.

BY MS. SIEGEL:

Q.   Have you ever heard anyone object -- well, strike that.

Okay.  In regard to Shorts, have you heard of Shorts being referred to as "snackible consumption"?

A.   Yes.

Q.   Okay.  And what is meant by the term "snackible consumption"?

MS. GALLO WHITE:  Object to form.

THE WITNESS:  I think what people mean is that it's content that you can watch in little bits, like when you're in line at Starbucks or waiting for an Uber.

BY MS. SIEGEL:

Q.   Do you think that snackible consumption is likely to lead to time well spent on the platform?

MS. GALLO WHITE:  Object to form.

THE WITNESS:  Yes, I think so.  I think people in those moments sometimes want some

Page 381

distraction.

MS. SIEGEL:  I'll mark this as Exhibit 31.

(Marked for identification purposes,

Google-YouTube-Goodrow Exhibit 31.)

BY MS. SIEGEL:

Q.    And this is -- for the record, this is Bates No. 02026373.  And it's an e-mail from ███████████████ between him and █████████████ and yourself, Cristos Goodrow, and ███████████ and someone named ███████████ .

Do you see that?

A.    Yes.

Q.    Okay.  And 2018 is before Shorts was introduced?

MS. GALLO WHITE:  Object to form.

THE WITNESS:  Yes, I think so.

BY MS. SIEGEL:

Q.    Was there other snackible consumption on the platform at that time?

MS. GALLO WHITE:  Object to form.

THE WITNESS:  I think there were short videos that people might watch in a snacky kind of way, yes.

BY MS. SIEGEL:

Q.    And would Stories perhaps be another

Page 389

to unlock on-the-go usage.  But that's one of the potential uses for it, yes.

Q.   Okay.  And then it says (as read):

"There is a strong argument not to pursue building such a feed at this time."

Do you see that?

A.   Yes.

Q.   Okay.  And could you read Bullet Point 6 for me?

A.   (As read):

"Driving more frequent daily usage is not aligned with our efforts to improve digital well-being."

Q.   And so at least at this time when this strategy paper was written, it was believed that driving more frequent visits would not align with efforts to improve digital well-being.

Is that fair to say?

A.   Well, that's what this says.

MS. GALLO WHITE:  Object to form.

BY MS. SIEGEL:

Q.   And yet, nonethe- --

THE STENOGRAPHER:  I'm sorry, was there an answer?

Page 390

THE WITNESS:  That's what this says.

THE STENOGRAPHER:  Thank you.

BY MS. SIEGEL:

Q.    And so has there been some new research or development that disagrees with this determination that driving more frequent daily usage is not well-aligned with our efforts to improve digital well-being?

MS. GALLO WHITE:  Object to form.

THE WITNESS:  I would say that the rise of short-form video is something people appreciate and enjoy is a -- is a big change.  It's a new development.

BY MS. SIEGEL:

Q.    How does the -- strike that.

MS. GALLO WHITE:  State for the record that counsel for the JCCP plaintiffs is interfering with the questioning attorney, who's representing the MDL plaintiffs, and object to that interference.

BY MS. SIEGEL:

Q.    Does "the rise of short-form video" mean TikTok?

MS. GALLO WHITE:  Object to form.

THE WITNESS:  TikTok is one example of short-form video.

Page 457

bedtime reminders have on a user's behavior on the platform?

MS. GALLO WHITE:  Object to form.

THE WITNESS:  I suspect that we -- that YouTube has measured it, yes.

BY MS. SIEGEL:

Q.  Well, what do you think they've measured about it?

A.  I don't know specifically, but at the very least how often it's used.  Probably how often it's set.

Q.  What about how often people use -- end up using less YouTube?

MS. GALLO WHITE:  Object to form.

THE WITNESS:  I don't -- I don't know what else has been measured.

MS. SIEGEL:  Okay.

MS. GALLO WHITE:  For the record --

BY MS. SIEGEL:

Q.  Do you think --

MS. GALLO WHITE:  -- counsel for JCCP plaintiffs is again interfering in the questioning by counsel for the MDL plaintiffs.  We object.

BY MS. SIEGEL:

Q.  Do you think that YouTube ought to measure

Page 458

whether or not the take-a-break reminders and bedtime reminders actually changed and make a person get off YouTube?

MS. GALLO WHITE:  Object to form.

THE WITNESS:  I'm not sure.  I think you should probably measure its overall impact.

BY MS. SIEGEL:

Q.   Do you --

A.   My guess is, is we run an experiment where we measure lots of things, including viewership.

(Stenographer interrupted for clarification of the record.)

BY MS. SIEGEL:

Q.   And I'm sorry, I -- I've now -- I'll get better at interrupting you, I promise.

Do you think it's important to know whether or not the digital well-being features are effective?

MS. GALLO WHITE:  Object to form.

THE WITNESS:  Well, I -- that's how we are going to be able to improve them.  So, sure.  We should try to improve them by understanding how they work now.

BY MS. SIEGEL:

Q.   So if you don't know whether the features

CONFIDENTIAL

Page 459

as they are designed now are actually having the intended effect of helping users get off YouTube, there's no way to improve them?

MS. GALLO WHITE:  Object to form.

THE WITNESS:  No.  I think you could probably figure out ways to improve them, but it would be easier if you understood how they're working now.

BY MS. SIEGEL:

Q.  Thank you.

Then it says (as read):

"Give users choice and control."

It says (as read):

"Offer people opt-in solutions:

Tools to limit their usage and protect

their attention.  Get consent

for/disclose noticeable experience

changes."

And so is there a reason that you felt that -- strike that.

Could YouTube have designed whatever bedtime and take-a-break reminders to be either opt in or opt out if they wanted to?

MS. GALLO WHITE:  Object to form.

THE WITNESS:  Sure.  I'm sure -- I'm sure

CONFIDENTIAL

Page 596

STENOGRAPHER'S CERTIFICATE

I, LORRIE L. MARCHANT, Certified Shorthand Reporter, Certificate No. 10523, for the State of California, hereby certify that CRISTOS GOODROW  was by me duly sworn/affirmed to testify to the truth, the whole truth and nothing but the truth in the within-entitled cause; that said deposition was taken at the time and place herein named; that the deposition is a true record of the witness's testimony as reported to the best of my ability by me, a duly certified shorthand reporter and a disinterested person, and was thereafter transcribed under my direction into typewriting by computer; that request [  ] was [ X ] was not made to read and correct said deposition.

I further certify that I am not interested in the outcome of said action, nor connected with, nor related to any of the parties in said action, nor to their respective counsel.

IN WITNESS WHEREOF, I have hereunto set my hand this 5th day of March, 2025.



_____

LORRIE L. MARCHANT, RMR, CRR, CCRR, CRC
Stenographic Certified Shorthand Reporter #10523