# AMENDED Exhibit 1019

# PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Case No.: 4:22-md-03047-YGR
MDL No. 3047
In Re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation

HIGHLY CONFIDENTIAL

Page 10

PROCEEDINGS

THE VIDEOGRAPHER:  Good morning.  We are now on the record.  My name is Miguel Concepcion. I'm a videographer for Golkow.

Today's date is March 13, 2025, and the time is 9:26 a.m. Pacific Time.

This video deposition is being held at Wilson Sonsini in Palo Alto, California, In Re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation, for the United States District Court, Northern District of California.

The deponent is Raj Iyengar in his 30(b)(1) capacity and his 30(b)(6) capacity for Google/YouTube.

All counsel will be noted on the stenographic record.  After the court reporter introduces herself, she will swear in the witness.

THE STENOGRAPHER:  My name is Jenny Griffin.  My CSR number is 3969.

- - -

RAJ IYENGAR, having been first duly sworn and/or affirmed by the Certified Shorthand Reporter to tell the truth, the whole truth, and nothing but the truth, testified as follows:

HIGHLY CONFIDENTIAL

Page 11

EXAMINATION

BY MS. PAULSON:

Q.    Good morning, Mr. Iyengar.  Thank you for being here today.  My name is Jenny Paulson.  I'm one of the plaintiffs' attorneys.

MS. PAULSON:  Before we start today, I'd like to state for the record that Mr. Iyengar was noticed as a 30(b)(1) fact witness and then designated as a 30(b)(6) corporate representative for Google and YouTube a few days ago.

We are going to proceed with the 30(b)(1) testimony to start, then move on to the 30(b)(6) testimony, and we will make that distinction clear in the record.

We understand that defense counsel disagrees with this order and will make their own record.

MS. MACHOCK:  Thank you.

This is Samantha Machock from Wilson Sonsini for the Google/YouTube defendants.  I just wanted to state on the record before we start that, given the timing and scope of the 30(b)(6) notice plaintiffs served only a few weeks ago, we have offered a topic today, the general types of Google accounts available to youth users to access the

HIGHLY CONFIDENTIAL

Page 28

account to their teen's account for the purposes of supervising it.

BY MS. PAULSON:

Q.   Can a parent see what their teen is watching?

A.   No.

Q.   How can a parent supervise through this experience?

A.   The -- what was launched in September is focused on supervising creation on YouTube.  And so if a teen that is being supervised uploads a video, parents get notified via email that this has happened.  They also get notified of the visibility of the video and they have access to a dashboard with high-level creation and participation stats.

Q.   Can they see stats on watch time?

A.   No.

Q.   Are these experiences available on both the YouTube main app and the YouTube main web experience?

MS. MACHOCK:  Objection.  Form.  Lacks foundation.

THE WITNESS:  These features are -- the dashboard is available for parents, and the email notifications are agnostic of platform.

Page 29

BY MS. PAULSON:

Q.    Is there an age limit of a user to whom a parent can link to?

MS. MACHOCK:    Objection.    Form.

THE WITNESS:    There is no upper age limit in terms of an account that a parent can link to.

BY MS. PAULSON:

Q.    And can a parent change the child or teen's settings after setting up the account?

A.    Can you clarify what you mean by "setting up the account"?

Q.    Sure.

So you said that when a parent creates or links his account, they have to choose certain settings?

A.    Are you --

MS. MACHOCK:    Objection.    Form.    And misstates prior testimony.

BY MS. PAULSON:

Q.    Did you describe earlier how you can't proceed through setting up this experience without setting, like, a content level; correct?

A.    In the context of the SupEx experience, yes, I did.

Q.    Okay.    That's not the same for the

HIGHLY CONFIDENTIAL

Page 30

teen-supervised experience?

MS. MACHOCK:  Objection.  Form.  And misstates prior testimony.

THE WITNESS:  That's correct.

BY MS. PAULSON:

Q.  Okay.  So what settings are available to a parent when they link the accounts for the teen-supervised experience?

MS. MACHOCK:  Objection.  Form.  And to the extent that it misstates prior testimony.

THE WITNESS:  The teen experience is really more designed around giving parents visibility and awareness.  It is not about providing restrictive controls in the current launch.

BY MS. PAULSON:

Q.  Are there any restrictive controls available to a parent?

MS. MACHOCK:  Objection.  Form.

THE WITNESS:  Parents that are supervising an account at the device level would have additional controls outside of YouTube -- YouTube's teen supervision offering.

BY MS. PAULSON:

Q.  What kind of controls?

A.  The parent that is supervising at an

HIGHLY CONFIDENTIAL

Page 31

operating system level, for example.  So whether they're supervising an Android device or an iOS device, there are various parent controls that are available where a parent can limit time spent on certain apps, for example.

Q.    That's outside of the YouTube app or web browser; correct?

MS. MACHOCK:  Objection.  Form.

THE WITNESS:  It's outside of the specific features that YouTube offers.

BY MS. PAULSON:

Q.    So does the parent get an alert if the teen creates something?

MS. MACHOCK:  Objection.  Form.

THE WITNESS:  Parents get an email if their teen that they are supervising creates something.

BY MS. PAULSON:

Q.    Okay.  And then can the parent view what the teen created?

A.    It would depend on the privacy setting of the video.  So if the video is public or if the video is unlisted, then the parent would receive a thumbnail of the video as well as a link to view it.

If the video is private, then we inform the parent that their teen has uploaded a private video.

Page 32

But we don't provide the link in that case.

Q.   So there may be a circumstance where the teen creates a private video, the parent gets an alert, but the parent can't view it because of the privacy settings the teen has placed on their account?

MS. MACHOCK:  Objection.  Form.  Misstates prior testimony.

Go ahead.

THE WITNESS:  Parents would not be able to view the information about the video in that case, although the purpose of sending the notification is so that they have awareness that their teen has uploaded privately.  The intention is that they can follow up with them and have a conversation with them about it and find out more.

BY MS. PAULSON:

Q.   And if the setting is public and the parent views it and doesn't want their teen to have that kind of video out there, is there anything within that experience that the parent can do to get that video taken down?

MS. MACHOCK:  Objection.  Form.

THE WITNESS:  The parent can have a conversation with their teen and basically, like,

HIGHLY CONFIDENTIAL

Page 33

work with them to make the video private.

BY MS. PAULSON:

Q. But there's no control or setting within YouTube itself that the parent can unilaterally have that video taken down?

MS. MACHOCK: Objection. Form.

THE WITNESS: Parents are not in control of the teen's channel; but the intention, as I said, is that parents would have a positive conversation with their teen to sort of steer them in the right direction and also work with them to course-correct as needed.

MS. PAULSON: I am going to hand you what we'll mark as G/YT-Iyengar Exhibit 3.

(Exhibit 3 was marked for identification and is attached to the transcript.)

THE WITNESS: Can I close this?

BY MS. PAULSON:

Q. Sure.

A. Okay.

Q. Do you recognize this document?

A. Yes.

Q. Can you describe this document?

A. This document was a promo packet write-up

HIGHLY CONFIDENTIAL

Page 1

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA


IN RE: SOCIAL MEDIA          Case No. 4:22-MD-03047-YGR

ADOLESCENT                   MDL No. 3047

ADDICTION/PERSONAL INJURY

PRODUCTS LIABILITY LITIGATION

_____

                                    |

This document Relates to:           |

                                    |

ALL ACTIONS                         |

_____|




HIGHLY CONFIDENTIAL COMPETITOR


VIDEOTAPED DEPOSITION OF RAJ IYENGAR

IN HIS 30(b)(1) CAPACITY

PALO ALTO, CALIFORNIA

MARCH 13, 2025

9:26 A.M




Job No.  7222056-30(b)(1)

Pages 1 - 146

Stenographically reported by:

JENNY L. GRIFFIN, RMR, CSR, CRR, CCRR, CRC

CSR No. 3969

HIGHLY CONFIDENTIAL

Page 126

Q.   Is YouTube promoting these device-level controls?

MS. MACHOCK:   Object to form.

THE WITNESS:   We do mention in our help center articles that there are device supervision available via Family Link.

BY MS. PAULSON:

Q.   What is Family Link?

A.   Family Link is a Google app that another team at Google has created for the purpose of supervising other Google accounts, including Unicorn accounts, as well as any Android and maybe some iOS limits as well.

Q.   How do you link an account?   In other words, do you need permission from an account to link it in Family Link?

MS. MACHOCK:   Object to form.

THE WITNESS:   For an under-13 account, the under-13 account can't exist unless the parent creates the account.   So it's linked because the parent created it.

For an over-13 account, the -- I believe that the over-13 account must agree to be supervised.   But I don't work on that day to day; so I don't have the specifics.

HIGHLY CONFIDENTIAL

Page 127

BY MS. PAULSON:

Q.    Okay.  And last tab here.

"How would we measure success?"

A.    Yes.

Q.    Do you see "digital well-being" under "objective"?

A.    Yes.

Q.    And then the potential metrics, it says:

"Research to measure outcomes."

Does this mean YouTube was researching how to measure an outcome for digital well-being?

A.    I don't remember.

MS. MACHOCK:  Object to form.

MS. PAULSON:  I think those are all the questions I have right now.  Do you mind if we take a short break and just make sure?

MS. MACHOCK:  Uh-huh.

THE VIDEOGRAPHER:  Going off the record at 1:17 p.m.

(Recess taken.)

THE VIDEOGRAPHER:  We're back on the record at 1:53 p.m.

MS. PAULSON:  Mr. Iyengar, subject to any questions by your attorney, I have no more questions for the 30(b)(1) portion of this deposition.  Thank

HIGHLY CONFIDENTIAL

Page 128

you.

EXAMINATION

BY MS. MACHOCK:

Q.    Thank you.

Good afternoon, Mr. Iyengar.

A.    Good afternoon.

Q.    I know you spoke about this previously, but could you please remind us of your current role at YouTube?

A.    I'm a group product manager at YouTube, and I oversee a team that works on all of the parent-supervised experiences at YouTube.

Q.    What has kept you at YouTube for so long?

A.    A lot of things.  You know, I like the culture at the company.  It's a consumer-facing product that's known and loved by people all over the world.  So that's always fun to be able to say that I work at YouTube.

I like my colleagues.  I like the work that we do.  It gives me some sense of fulfillment to know that I'm working on responsible experiences that are used by families.

Q.    Do you believe that YouTube is committed to the safety of children and teens who use its service?

HIGHLY CONFIDENTIAL

Page 143

---oOo---

I, JENNY L. GRIFFIN, hereby certify:

That I am a certified shorthand reporter in and for the County of Alameda, State of California;

Prior to being examined, RAJ IYENGAR, the witness named in the foregoing deposition, was by me duly sworn to testify to the truth, the whole truth, and nothing but the truth; that said deposition was taken pursuant to notice at the time and place therein set forth, and was taken down by me in stenotype and thereafter transcribed by means of computer-aided transcription, and that said deposition is a true record of the testimony given by the witness.

I further certify that I am neither counsel for nor related in any way to any party to said action, nor otherwise interested in the outcome thereof.

In witness whereof, I have hereunto subscribed my name March 18, 2025.

_____

JENNY L. GRIFFIN, CSR #3969

Certified Shorthand Reporter