# AMENDED Exhibit 23

# PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Case No.: 4:22-md-03047-YGR
MDL No. 3047
In Re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION ) MDL No. 3047

) Case No. 4:22-md-3047-YGR

This Document Relates to:

ALL CASES

---

CAPTIONS CONTINUE ON FOLLOWING PAGES

---

Thursday, September 25, 2025

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

Video-Recorded Oral Deposition of FRANCES HAUGEN, held at the offices of McConnell Valdés LLC, 270 Av. Luis Muñoz Rivera, 7th Floor, San Juan, Puerto Rico, commencing at 9:10 a.m. AST on the above date, before Michael E. Miller, Fellow of the Academy of Professional Reporters, Certified Court Reporter, Registered Diplomate Reporter, and Notary Public.

GOLKOW - VERITEXT
877.370.DEPS | fax 917.591.5672
deps@golkow.com

                    IN THE CHANCERY COURT OF
DAVIDSON COUNTY, TENNESSEE
TWENTIETH JUDICIAL DISTRICT AT NASHVILLE

STATE OF TENNESSEE, ex rel. )
JONATHAN SKRMETTI, ATTORNEY )
GENERAL and REPORTER, )
)
Plaintiff, )
)
v. )
)
META PLATFORMS, INC. and )
INSTAGRAM, LLC, )
)
Defendants. )

----------------------------------------------------

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES
SPRING STREET COURTHOUSE

COORDINATION PROCEEDING )
SPECIAL TITLE [RULE 3.400] ) Lead Case No.
) 22STCV21355
SOCIAL MEDIA CASES )
______________________________ )

----------------------------------------------------

IN THE CIRCUIT COURT OF POLK COUNTY, ARKANSAS
CIVIL DIVISION

STATE OF ARKANSAS, ex rel. )
TIM GRIFFIN, ATTORNEY GENERAL )
)
Plaintiff, )
)
v. ) Case No.
) 57CV-23-47
META PLATFORMS, INC.; et al. )
)
Defendants. )
_______________________________)

----------------------------------------------------

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss SUPERIOR COURT
BUSINESS LITIGATION SESSION

COMMONWEALTH OF MASSACHUSETTS,

Plaintiff,

v.

META PLATFORMS, INC. and INSTAGRAM, LLC.

Defendant.

CIVIL ACTION NO. 2384CV02397-BLS1

---

COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

STATE OF NEW MEXICO, EX REL., RAÚL TORREZ, ATTORNEY GENERAL,

Plaintiff,

v. No. D-101-CV-2023-02838

META PLATFORMS, INC., INSTAGRAM, LLC, META PAYMENTS, INC., META PLATFORMS TECHNOLOGIES, LLC, and MARK ZUCKERBERG,

Defendants.

A P P E A R A N C E S:

MOTLEY RICE LLC
BY: ESTHER E. BEREZOFSKY, ESQUIRE
eberezofsky@motleyrice.com
210 Lake Drive East
Suite 101
Cherry Hill, New Jersey 08002
(856)667-0500

-and-

MOTLEY RICE LLC
BY: PREVIN WARREN, ESQUIRE
pwarren@motleyrice.com
401 9th Street NW, Suite 630
Washington, DC 20004
(202)232-5504

-and-

MOTLEY RICE LLC
BY: JADE A. HAILESELASSIE, ESQUIRE
jhaileselassie@motleyrice.com
ANNIE KOUBA, ESQUIRE (via Zoom)
akouba@motleyrice.com
SARA O. COUCH, ESQUIRE (via Zoom)
scouch@motleyrice.com
JODI WESTBROOK FLOWERS, ESQUIRE (via Zoom)
jflowers@motleyrice.com
28 Bridgeside Boulevard
Mt. Pleasant, South Carolina 29464
(843)216-9000

-and-

BEASLEY ALLEN LAW FIRM
BY: JOSEPH VANZANDT, ESQUIRE (via Zoom)
joseph.vanzandt@beasleyallen.com
CLINTON RICHARDSON, ESQUIRE (via Zoom)
clinton.richardson@beasleyallen.com
JENNIFER EMMEL, ESQUIRE (via Zoom)
jennifer.emmel@beasleyallen.com
218 Commerce Street
Montgomery, Alabama 36104
(334)269-2343

-and-

THE WITNESS:  Will do.

BY MS. BEREZOFSKY:

Q.    Thank you.

Would you please state your full name for the record.

A.    Frances Haugen.

Q.    Okay.  Where do you currently live?

A.    I live in Carolina, Puerto Rico.

Q.    What college degrees did you obtain?

A.    I have a bachelor's of science in engineering and I have a Master's in Business Administration from Harvard.  The BS is from Olin College.

Q.    And do you have any degrees in computer engineering?

A.    Mine is in electrical and computer engineering.

Q.    Okay.  And you said that you have another degree from Harvard?

A.    Yes, I have a Master's in Business Administration or an MBA.

Q.    And when did you obtain that

degree?

A.    2011.

Q.    Did you work for any tech companies before going to Harvard Business School?

A.    Yes, I worked for Google for three years.

Q.    Is it correct that after earning your master's degree from Harvard, you worked at three different tech companies, including Google and Yelp?

A.    I worked for four.  I worked for -- I returned to Google, I went to Yelp, I worked at Pinterest.  I was briefly at Gigster, and I then I went to Facebook.

Q.    And were those all social media companies?

A.    At Google, I worked on Google+, which is a social media platform.  Yelp is a social media platform and Pinterest is a social media platform.

Q.    Okay.  And when did you begin working at Meta?

A.    I began working at Meta in 2019.

Q.    Did you have a specific interest or an interest in working in a specific area or on a specific team at Meta?

A.    They offered me a position on the civic misinformation team, which was under civic integrity.

Q.    Was that important to you to work on that team?

A.    And I was excited to work on it because I thought I would be working on preparation for the 2020 election.

Q.    Okay.  Do you feel that you had a special skill set or skills to work on that team in particular?

A.    I had seen how, in 2016, maybe a lack of consideration for how features might be misused, like Facebook later on recognized that they had maybe not been as proactive at critically looking at their design as they needed to before 2016.

I felt that because I had worked on so many social media platforms, I could potentially add insight in preparation for the election.

Q.    What part of the company were

you hired to work in?

A.    So it's civic integrity, which was under the main integrity team.

Q.    Would that have been part of the broader umbrella team called civic integrity?

A.    So I was on civic misinformation, which is under civic integrity, which was under the larger integrity work.

Q.    Did you report to the head of civic integrity?

A.    Yes.

Q.    And what did your work and responsibilities on that team include?

A.    We focused on misinformation that was outside the scope of the third-party fact-checking team for the big misinformation team.

Q.    What was your title there?

A.    I was a product manager.

Q.    So you were product manager for the civic misinformation team?

A.    Yes.

Q.    And what did -- were there

specific areas or problem areas that you worked on while you were part of that team?

A.    Like what were my responsibilities or what --

Q.    What did you work on?  Yeah, what were your responsibilities?

A.    As a product manager, I was responsible for helping to identify problems to solve, articulating those problems and gaining consensus with the team of what that meant, helping the team to work together to identify how to solve that problem, for example, helping the engineers to articulate these are the specific things we'll build to solve it, and then helping to monitor and course correct that work over the course of deployment.

Q.    Can you please provide an example or two about the kinds of issues or harms that you were referring to --

A.    Sure.

Q.    -- to problems?

A.    Initially, we primarily focused on misinformation under languages that Facebook did not serve through third-party

fact checking, which was the vast majority of languages in the world.

Basically, if you look outside of the United States and Europe, it was likely you didn't have third-party fact checking.

Misinformation in times of crises, because it takes reporters time to catch up, and misinformation that was too small, like too narrowly focused to be caught by the viral misinformation team.

Q.    And were you tasked with finding solutions to address those problems?

A.    Yes.

Q.    And did you understand that Meta had the capability to address problematic issues, the problematic issues that you were discussing?

A.    Yes.  There's many ways you could approach those problems.

Q.    Were you at some point assigned to another team at Meta?

A.    Our whole team was repurposed to focus only on narrowcasting after about three months.

MS. BEREZOFSKY:  Yeah.

MR. WARREN:  Great.

(Whereupon, Haugen-9,
Photograph of File, Have we made
people addicted to Facebook,
Haugen_00016893 - Haugen_00016920, was
marked for identification.)

BY MS. BEREZOFSKY:

Q.    I'm also going to hand you a series of documents that I'm going to -- it's a list of documents -- strike that.  Okay.

I've handed you a stack of documents, and we're going to mark them individually as we go along.  And I'm going to ask you a series of questions about them, and I'm going to read off the Bates numbers.

And I'm going to ask you if you recognize them and if they came from Meta's files, and if you took photos of the original documents.  All right.

Let's go through them.  The first one is Haugen_00016893.

A.    Uh-huh.

Q.    It's a document, We've made people -- Have we made people addicted to

A.      Yes, I do.

Q.      And do you recognize it as one that you brought out of Meta?

A.      Yes.

MR. PEREZ-MARQUES:  Object to form, and I'll interpose an objection to the prior question of do you recognize this document.

Objection, form.

BY MS. BEREZOFSKY:

Q.      Let's look at the next one, Exhibit -- marked as Exhibit 19, and that's Bates number Haugen_00017069 through Haugen_00017176, and it's titled -- or the front page of it, the first page is -- the top reads:  Wendy Gross uploaded a file in this group, Instagram Insights, October -- dated October 10th, 2019.

(Whereupon, Haugen-19, Photograph of File, Teen Mental Health Deep Dive, Haugen_00017069 - Haugen_00017176, was marked for identification.)

BY MS. BEREZOFSKY:

Q.      Do you recognize this document?

MR. PEREZ-MARQUES: Object to form.

A. Yes, I do.

BY MS. BEREZOFSKY:

Q. And do you recognize it as one that you brought out of Meta?

MR. PEREZ-MARQUES: Object to form.

A. Yes, I do.

BY MS. BEREZOFSKY:

Q. Let's look at Exhibit 20, and that's Haugen_00008 --

THE WITNESS: Wait. Sorry, I have 22.

MR. LEVY: There you go.

THE WITNESS: Okay. Thank you. Okay. Yep.

BY MS. BEREZOFSKY:

Q. -- Haugen_00008303 through Haugen_00008315.

(Whereupon, Haugen-20, Photograph of File, Households & IG: Experiential Needs, Haugen_00007988 - Haugen_00008016, was marked for identification.)

interpreted by you with the benefit of your experience; is that fair?

MR. LEVY:  Objection, form.

A.    And in addition, my experiences at Facebook prior to reading those documents.

BY MR. PEREZ-MARQUES:

Q.    Right.

So you know, on that issue of what considerations went into adopting or declining to adopt any particular teen mental health product change, you know only what you've seen in the documents as interpreted with the benefit of your experience; is that right?

MR. LEVY:  Objection, form.

A.    Well, I think it's important to contextualize it within the framework of how changes were shipped within Facebook.  So, for example, I brought out multiple documents that go into detail of people talking about safety being an afterthought, that there was a firefighter -- an arsonist firefighter culture where you didn't get rewarded for fixing problems up front, but you get rewarded after there was a fire drill.

So while I can't tell you directly, like, this is exactly why this feature did or did not ship or why this feature did or did not ship or this is why they didn't fund this group that would have developed those features in the first place, there was an ongoing trend of not prioritizing safety as high as it should have been, especially when dealing with a vulnerable group like children.

BY MR. PEREZ-MARQUES:

Q.   Okay.  And that's something, as pertains to teen mental health, you're relying on your reading of the documents to come to that view; is that right?

MR. LEVY:  Objection, asked and answered.

A.   What I just said was based on, you know, multiple experiences within civic integrity, of watching products come into these conflicts between growth and safety, and numerous documents discussing the internal culture and a practice of rewarding people after things went wrong, not beforehand -- remember, this plays into the

CERTIFICATE

I, MICHAEL E. MILLER, Fellow of the Academy of Professional Reporters, Registered Diplomate Reporter, Certified Realtime Reporter, Certified Court Reporter and Notary Public, do hereby certify that prior to the commencement of the examination, FRANCES HAUGEN was duly sworn by me to testify to the truth, the whole truth and nothing but the truth.

I DO FURTHER CERTIFY that the foregoing is a verbatim transcript of the testimony as taken stenographically by and before me at the time, place and on the date hereinbefore set forth, to the best of my ability.

I DO FURTHER CERTIFY that pursuant to FRCP Rule 30, signature of the witness was not requested by the witness or other party before the conclusion of the deposition.

I DO FURTHER CERTIFY that I am neither a relative nor employee nor attorney nor counsel of any of the parties to this action, and that I am neither a relative nor employee of such attorney or counsel, and that I am not financially interested in the action.

<%20911,Signature%>

_________________________________

MICHAEL E. MILLER, FAPR, RDR, CRR
Fellow of the Academy of Professional Reporters
NCRA Registered Diplomate Re9porter
NCRA Certified Realtime Reporter

Dated: September 29, 2025