# AMENDED Exhibit 133

# PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Case No.: 4:22-md-03047-YGR
MDL No. 3047
In Re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation

CONFIDENTIAL

Page 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN RE: SOCIAL MEDIA
ADOLESCENT ADDICTION/
PERSONAL INJURY PRODUCTS                 MDL No. 3047
LIABILITY LITIGATION
------------------------------/
 SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE
   COUNTY OF LOS ANGELES - SPRING STREET COURTHOUSE

COORDINATION PROCEEDING
SPECIAL TITLE [RULE 3.400]
SOCIAL MEDIA CASES                       Lead Case No.
------------------------------/          22STCV21355
This Document Relates To
STATE OF TENNESSEE, ex rel.
JONATHAN SKRMETTI,
ATTORNEY GENERAL and
REPORTER,
v.
META PLATFORMS, INC., and
INSTAGRAM, LLC.
------------------------------/


         CONFIDENTIAL - ATTORNEYS' EYES ONLY
             PURSUANT TO PROTECTIVE ORDER
      VIDEO-RECORDED DEPOSITION OF TOM CUNNINGHAM
                 (Pages 1 through 184)
         Lieff, Cabraser, Heimann & Berstein
    275 Battery Street, 29th Floor, San Francisco,
                      California

Stenographically reported by:
LORRIE L. MARCHANT, RMR, CRR, CCRR, CRC
California CSR No. 10523
Washington CSR No. 3318
Oregon CSR No. 19-0458
Texas CSR No. 11318
Job No.:  MDLG 7212988
California Firm Registration No.:  48

CONFIDENTIAL

Page 2

A P P E A R A N C E S

For the Witness:

            BRADLEY BERNSTEIN SANDS
            BY:  ERIN BERNSTEIN, ESQ.
            1212 Broadway, Suite 1100
            Oakland, CA 94612
            (510) 380-5801
            ebernstein@bradleybernstein.com

For the Plaintiffs:

            MOTLEY RICE, LLC
            BY:  ANDREW P. ARNOLD, ESQ.
            BY:  JESSICA L. CARROLL, ESQ.
            28 Bridgeside Boulevard
            Mount Pleasant, SC 29464
            (843) 216-9229
            aarnold@motleyrice.com
            jcarroll@motleyrice.com

For the State of New Jersey:

            STATE OF NEW JERSEY
            DEPARTMENT OF LAW AND PUBLIC SAFETY
            DIVISION OF LAW
            BY:  VERNA J. PRADAXAY, ESQ.
            124 Halsey Street, 5th Floor
            Newark, NJ 07101
            (609) 712-2828
            verna.pradaxay@law.njoag.gov

For the Defendants TikTok, Ltd.; TikTok, LLC;
TikTok, Inc.; ByteDance Ltd.; and ByteDance Inc.:

            KING & SPALDING
            BY: LENNETTE LEE, ESQ. (VIA ZOOM)
            633 West Fifth Street, Suite 1600
            Los Angeles, CA 90071
            (213) 218-4011
            llee@kslaw.com

CONFIDENTIAL

Page 3

A P P E A R A N C E S

For the Defendants Meta Platforms, Inc., f/k/a
Facebook, Inc.; Facebook Holdings, LLC; Facebook
Operations, LLC; Facebook Payments, Inc.; Facebook
Technologies, LLC; Instagram, LLC; Siculus, Inc.;
and Mark Elliot Zuckerberg:

        COVINGTON & BURLING LLP
        BY: CHRISTOPHER K. EPPICH, ESQ.
        1999 Avenue of the Stars
        Los Angeles, CA 90067
        (424) 332-4764
        ceppich@cov.com
        BY:  CECILIA M. BOBBITT, ESQ.
        Salesforce Tower
        415 Mission Street, Suite 5400
        San Francisco, CA 94105
        (415) 591-7017
        cbobbitt@cov.com
        BY:  EVA LILIENFELD, ESQ. (VIA ZOOM)
        The New York Times Building
        620 Eighth Avenue
        New York, NY 10018
        (212) 841-1000
        elilienfeld@cov.com
        BY:  JON THOMPSON, ESQ. (VIA ZOOM)
        One CityCenter
        850 Tenth Street, NW
        Washington, DC 20001-4956
        (202) 662-6000
        jothompson@cov.com
        BASS, BERRY & SIMS PLC
        BY: DANIEL RILEY, ESQ. (VIA ZOOM)
        The Tower at Peabody Place
        100 Peabody Place, Suite 1300
        Memphis, TN 38103
        (901) 543-5916
        dan.riley@bassberry.com

CONFIDENTIAL

Page 4

A P P E A R A N C E S

For the State of Massachusetts:
        OFFICE OF THE ATTORNEY GENERAL
        STATE OF MASSACHUSETTS
        BY: KAITLYN KARPENKO, ESQ. (VIA ZOOM)
        One Ashburton Place, 20th Floor
        Boston, Massachusetts 02108
        (617) 727-2200
        kaitlyn.karpenko@mass.gov

For the State of Tennessee:
        STATE OF TENNESSEE
        ATTORNEY GENERAL
        BY: KEATON MURPHY, ESQ. (VIA ZOOM)
        UBS Tower
        315 Deaderick Street
        Nashville, Tennessee 37238
        615.741.3519
        keaton.murphy@ag.tn.gov

For the State of Arkansas:

        ROBBINS GELLER RUDMAN & DOWD LLP
        BY: SNEHEE KHANDESHI, ESQ.
        One Montgomery Street, Suite 1800
        San Francisco, California 94104
        415.288.4545
        skhandeshi@rgrdlaw.com

For the Defendant Snap:
        MUNGER TOLLES & OLSON
        BY: KYLE GROVES, ESQ. (VIA ZOOM)
        350 South Grand Avenue, 50th Floor
        Los Angeles, California 90071-3426
        (213) 683-9205
        kyle.groves@mto.com

CONFIDENTIAL

Page 5

A P P E A R A N C E S

For the Defendants Google and YouTube:
          WILSON SONSINI GOODRICH & ROSATI
          BY:  RASHEED EVELYN, LAW CLERK (VIA ZOOM)
          One Market Plaza
          Spear Tower, Suite 3300
          San Francisco, CA 94105
          (415) 947-2000
          revelyn@wsgr.com
For the State of Colorado:
          STATE OF COLORADO
          OFFICE OF THE ATTORNEY GENERAL
          BY: CORIN STIGALL, PARALEGAL (VIA ZOOM)
          1300 Broadway, 10th Floor
          Denver, Colorado 80203
          720.508.6000
          corin.stigall@coag.gov
Also present:
          Arvind Narayanan, Professor of Computer
            Science at Princeton (via Zoom)

          Brady Freeman, Meta Assoc. General Counsel

          Brian Fronzaglia, LSTech
          Sheikh Shaheen (via Zoom)
                    ---oOo---

CONFIDENTIAL

Page 18

and ...

A.   No.

Q.   Okay.  I -- I want to start by just asking you a little bit about your background.

Could you describe your formal education?

A.   I have a PhD in economics.

Q.   From where?

A.   From the London School of Economics.

Q.   And what year did you get your PhD?

A.   2012.

Q.   You previously worked for Facebook; correct?

A.   Correct.

Q.   How many years were you --

A.   Five years.

Q.   -- there?

MS. BERNSTEIN:  Let's make sure you wait until he finishes.

THE WITNESS:  Oh, sorry.

MS. BERNSTEIN:  I have the same -- I have the same habit.

MR. ARNOLD:  Yeah.  It's very common, which is why we say something.

BY MR. ARNOLD:

Q.   Approximately when was that that you worked

CONFIDENTIAL

Page 19

for Facebook for five years?

A.   2015 to 2020.

Q.   What was your job title there when you started?

A.   Data scientist.

Q.   Could you describe at a general level what you did as a data scientist at Facebook?

A.   Analyzed data, wrote memos on -- on a variety of business problems.

Q.   Did you rely on your training in economics?

A.   I did.

Q.   Where does your -- obviously, you have a PhD in economics.

Where does your expertise in data science that you got hired for by Facebook -- where does that come from?

A.   Statistical analysis and analysis of sort of social systems.

Q.   Just very briefly to sort of round this out, what was the next job you had after you left Facebook in 2020?

A.   At Twitter.

Q.   Okay.  Did you have a similar role there?

A.   I did.  I did.

Q.   And how about -- how long did you stay at

CONFIDENTIAL

Page 20

Twitter?

A.    For a year.

Q.    Okay.  And what did you do after Twitter?

A.    I -- my next paid job was working with a nonprofit called the Integrity Institute.  And then after that, I started working in AI, which is where I am right now.

Q.    What does the Integrity Institute do?

A.    It's a nonprofit which is a -- more or less, a think tank and related to online platform moderation.

Q.    At OpenAI are you also a data scientist to -- a similar role to the roles you've had in the past?

A.    I had been, although my title is now economist.

Q.    Okay.  But does that involve doing similar work to what you did at Facebook and then Twitter?

A.    Broadly speaking, yes.

Q.    I am going to hand you what we will mark Exhibit 1.

We have four copies, so ...

(Marked for identification purposes, Exhibit 1.)

MR. ARNOLD:  Witness, witness counsel.

CONFIDENTIAL

Page 21

MS. BERNSTEIN:  Thank you.

BY MR. ARNOLD:

Q.    So do you recognize this as your profile on LinkedIn?

A.    It -- it seems to be similar.

Q.    Let me ask a different question, and it may help to explain that when you print something off of the LinkedIn site, it actually formats the document for you so that it doesn't quite exactly look like LinkedIn; right?

But does the content of this document, which I'll represent to you I've printed off of LinkedIn -- does that reflect your experience that we just spoke about?

A.    Seems to be similar.

Q.    You don't have any reason to think that anything on here is inaccurate?

A.    No.

Q.    Okay.  All right.  Let's talk about your time at Facebook in a little bit more depth.  You can set that aside if you'd like.

So you mentioned you were a data scientist when you started in 2015; correct?

A.    Correct.

Q.    And did your title or position change

CONFIDENTIAL

Page 22

during the time you were at Facebook?

A.  I don't recall.  My position changed.  I moved to a different department from analytics to core data science.  I don't remember if my job title changed.

Q.  Did you continue doing the same type of work after you moved?

A.  Broadly speaking, yes.

Q.  So it was more of a -- an organizational change than a substantive change for what you were doing day to day?

A.  Correct.

Q.  While you were at Facebook, did the work that you did relate to multiple -- well, let me clarify first.

So at the time you worked for Facebook, the company was called Facebook; correct?

A.  Correct.

Q.  And now you understand, I'm guessing, that it's called Meta Platforms?

A.  Correct.

Q.  So I may refer to the company as "Facebook" because that's how it's reflected in the documents that we received out of your custodial files, but do you understand that I'm referring to the company

CONFIDENTIAL

Page 23

that's currently Meta Platforms?

A.   Understood.

Q.   Okay.  So while you were at Facebook, did the -- did the work you do relate to multiple Facebook products or just one product?

A.   Multiple.

Q.   Did those products include the Facebook app?

A.   Yes.

Q.   And that's sometimes referred to as "Facebook blue"; right?

A.   Correct.

Q.   And how about Instagram?  Did you do work related to Instagram?

A.   I did.

Q.   Any other applications that your work related to or products?

A.   WhatsApp and Messenger.

Q.   Is that all that you can recall?

A.   Correct.

Q.   Is it fair to say that you were one of the most senior data scientists at Facebook?

A.   Correct.

Q.   Okay.  I'm going to hand you another document that we'll mark --

Page 71

things in this document.

Directly under the paragraph we were just talking about, you write (as read):

"Higher Facebook use is correlated with worse psychological states (well-being, loneliness, et cetera), although changes in Facebook use are uncorrelated with changes in well-being measures."

And then you have two footnotes, 8 and 5.

Did I read that right?

A.   Yes.

Q.   So could you tell me what Footnote 5 is?

A.   It appears to be this ███████ internal note called "User Perception of Time Spent on Instagram."

Q.   So that's an internal Facebook study that was published as a note?

A.   It appears to be, although it's -- I couldn't rule out that it refers to something externally.

Q.   Do you see a URL right under the --

A.   I do.

Q.   -- title of the -- of the article?

A.   I do.

CONFIDENTIAL

Page 72

Q.   Does that appear to be an internal Facebook --

A.   Correct.

Q.   -- URL?

A.   Yeah.

Q.   fb.workplace.com?

A.   Correct.  Yep.

Q.   To your knowledge, was this study made public at the time that you wrote this note?

MR. EPPICH:  Objection to form. Foundation.

THE WITNESS:  I have no knowledge, actually.  I -- I don't recall -- I don't recall who the person, ███████, was.  So I don't have any recollection of that note.

BY MR. ARNOLD:

Q.   Okay.  Lets look at one more thing back on the previous page, -68267, paragraph 4.  It says (as read):

> "A significant minority report serious difficulties.  3.1 percent of Facebook users in the U.S. report 'serious problems with sleep, work, or relationships that they attribute to Facebook and concerns or preoccupations

CONFIDENTIAL

Page 184

STENOGRAPHER'S CERTIFICATE

I, LORRIE L. MARCHANT, Certified Shorthand Reporter, Certificate No. 10523, for the State of California, hereby certify that TOM CUNNINGHAM  was by me duly sworn/affirmed to testify to the truth, the whole truth and nothing but the truth in the within-entitled cause; that said deposition was taken at the time and place herein named; that the deposition is a true record of the witness's testimony as reported to the best of my ability by me, a duly certified shorthand reporter and a disinterested person, and was thereafter transcribed under my direction into typewriting by computer; that request [  ] was [ X ] was not made to read and correct said deposition.

I further certify that I am not interested in the outcome of said action, nor connected with, nor related to any of the parties in said action, nor to their respective counsel.

IN WITNESS WHEREOF, I have hereunto set my hand this 21st day of March, 2025.

_____

LORRIE L. MARCHANT, RMR, CRR, CCRR, CRC
Stenographic Certified Shorthand Reporter #10523