# AMENDED Exhibit 395

# PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Case No.: 4:23-cv-01804-YGR
MDL No. 3047
In Re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation

CONFIDENTIAL

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE: SOCIAL MEDIA ADOLESCENT        )   MDL Number:
ADDICTION/PERSONAL INJURY PRODUCTS    )   4:22-MD-C047-YGR
LIABILITY LITIGATION                  )
_____)

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES
SPRING STREET COURTHOUSE

COORDINATION PROCEEDING               )
SPECIAL TITLE [RULE 3.400]            )
SOCIAL MEDIA CASES                    )   Lead Case No. for
                                      )   Filing Purposes
_____)   22STCV21355
                                      )
This Document Relates to:             )
                                      )
STATE OF TENNESSEE,                   )
ex rel. JONATHAN SKRMETTI,            )
ATTORNEY GENERAL and REPORTER,        )
v.                                    )
META PLATFORMS, INC., and             )
INSTAGRAM, LLC,                       )
Case No. 23-1364-IV                   )
_____)

Confidential - Pursuant to Protective Order
VIDEOTAPED DEPOSITION of JENNIFER GUADAGNO, PhD
Palo Alto, California - November 14, 2024

Job No.  6933436
Pages 1 - 352
Stenographically reported by:
JENNY L. GRIFFIN, RMR, CSR, CRR, CCRR, CRC
CSR No. 3969

CONFIDENTIAL

Page 2

Videotaped deposition of JENNIFER GUADAGNO, PhD, taken on behalf of the Plaintiffs, at Morrison Foerster, 755 Page Mill Road, Palo Alto, California, on Thursday, November 14, 2024, beginning at 9:12 a.m. and ending at 6:50 p.m., before Jenny L. Griffin, a Certified Shorthand Reporter, Registered Merit Reporter, Certified Realtime Reporter, California Certified Realtime Reporter, Certified Realtime Captioner.

CONFIDENTIAL

Page 3

A P P E A R A N C E S:

ON BEHALF OF THE MDL AND JCCP PLAINTIFFS:

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

BY:  LEXI J. HAZAM, ESQ.

PATRICK I. ANDREWS, ESQ.

CELENA HEREDIA NELSON, ESQ.

MATIAS BUSTAMANTE, ESQ.        (Via Zoom)

KELLY McNABB, ESQ. (New York) (Via Zoom)

275 Battery Street, 29th Floor

San Francisco, California 94111-3339

415-956-1000

212-355-9500 - McNabb

lhazam@lchb.com

pandrews@lchb.com

chnelson@lchb.com

mbustamante@lchb.com

kmcnabb@lchb.com

CONFIDENTIAL

Page 4

A P P E A R A N C E S: (Continued)


MOTLEY RICE LLC

BY:  PREVIN WARREN, ESQ.        (Via Zoom)

         SARA O. COUCH, ESQ.  (SC)  (Via Zoom

         KATY LAWRIMORE, Paralegal  (Via Zoom)

401 9TH Street, NW, Suite 630

Washington, District of Columbia 20004

202-386-9610 - Warren

843-216-9000 - Couch

pwarren@motleyrice.com

scouch@motleyrice.com


WAGSTAFF & CARTMELL LLP

BY:  THOMAS CARTMELL, ESQ.  (Via Zoom)

         LUCY MALONE, ESQ.      (Via Zoom)

         JACK HYDE, ESQ.        (Via Zoom)

4740 Grand Avenue, Suite 300

Kansas City, Missouri 64112

816-701-1100  - Cartmell

816-701-1130 - Malone

816-701-1195 - Hyde

tcartmell@wcllp.com

lmalone@wcllp.com

jhyde@wcllp.com

CONFIDENTIAL

Page 5

A P P E A R A N C E S: (Continued)


SEEGER WEISS

BY:  ERICA KUBLY, ESQ.   (NY) (Via Zoom)

100 Church Street

New York, New York 10007

212-584-0700 - Kubly

ekubly@seegerweiss.com


ANAPOL WEISS

BY:  ALEXANDRA WALSH, ESQ.    (Via Zoom)

         PAIGE BOLDT, ESQ.       (Via Zoom)

130 N 18th St #1600

Philadelphia, Pennsylvania 19103

215-929-8822

awalsh@anapolweiss.com

pboldt@anapolweiss.com

CONFIDENTIAL

Page 6

A P P E A R A N C E S: (Continued)


GOZA & HONNOLD, LLC

BY:  KIRK GOZA, ESQ.           (Via Zoom)

          LYNNETTE SIEGEL, ESQ.    (Via Zoom)

          GRACE QUINLAN, ESQ.      (Via Zoom)

9500 Nall Avenue, Suite 400

Overland Park, Kansas 66207

913-451-3433

kgoza@gohonlaw.com

lsiegel@gohonlaw.com

gquinlan@gohonlaw.com


ON BEHALF OF PLAINTIFFS INCLUDING THE STATE OF ARKANSAS:

ROBBINS GELLER RUDMAN & DOWD LLP

BY:  AELISH M. BAIG, ESQ.

          SNEHEE KHANDESHI, ESQ.   (San Diego)

One Montgomery Street, Suite 1800

San Francisco, California 94104

415-288-4545 - Baig

619-231-1058 - Khandeshi

aelishb@rgrdlaw.com

skhandeshi@rgrdlaw.com

CONFIDENTIAL

Page 7

A P P E A R A N C E S: (Continued)

ON BEHALF OF THE STATE OF TENNESSEE OFFICE OF THE
ATTORNEY GENERAL & REPORTER:

TENNESSEE ATTORNEY GENERAL'S OFFICE

BY:  BRIAN PHELPS, ESQ.

CHRIS DUNBAR, ESQ.

KEATON W. MURPHY, ESQ.   (Via Zoom)

MATTHEW JANSSEN, ESQ.    (Via Zoom)

ELIZABETH SPICA, ESQ.    (Via Zoom)

P.O. Box 20207

Nashville, Tennessee 37202-0207

615-741-3491 - Phelps & Spica

615-741-3519 - Dunbar

615-837-5155 - Murphy

215-850-6479 - Janssen

brian.phelps@ag.tn.gov

chris.dunbar@ag.tn.gov

keaton.murphy@ag.tn.gov

matthew.janssen@ag.tn.gov

elizabeth.spica@ag.tn.gov

CONFIDENTIAL

Page 8

APPEARANCES: (Continued)

ON BEHALF OF THE COMMONWEALTH OF MASSACHUSETTS
ATTORNEY GENERAL'S OFFICE:

COMMONWEALTH OF MASSACHUSETTS OFFICE OF THE

ATTORNEY GENERAL:

BY:  DOUGLAS S. MARTLAND ESQ.

CHRISTINA CHAN, ESQ.      (Via Zoom)

CAMY RUCK, ESQ.          (Via Zoom)

NICHOLAS WILLING, Legal Analyst (Zoom)

One Ashburton Place, 18th Floor

Boston, Massachusetts 02108

617-963-2912

douglas.martland@mass.gov

christina.chan@mass.gov

camy.ruck@mass.gov


OFFICE OF THE WASHINGTON ATTORNEY GENERAL

BY:  RABI LAHIRI, ESQ.

800 Fifth Avenue, Suite 2000

Seattle, Washington 98104

206-464-7744

rabi.lahiri@atg.wa.gov

CONFIDENTIAL

Page 9

A P P E A R A N C E S: (Continued)

ON BEHALF OF THE WITNESS:

MORRISON FOERSTER

BY:  RYAN KEATS, ESQ.

425 Market Street

San Francisco, California 94105-2482

415-268-7064

rkeats@mofo.com


ON BEHALF OF THE META DEFENDANTS AND THE WITNESS:

COVINGTON & BURLING LLP

BY:  DAVID N. SNEED, ESQ.

PAUL BANKS, ESQ.

(CA) ALEXANDER KENNEDY, ESQ.  (Via Zoom)

One CityCenter, 850 Tenth Street, N.W.

Washington, District of Columbia 20001

202-662-6000

dsneed@cov.com

pbanks@cov.com

akennedy@cov.com

--- AND ---

YALE FU, ESQ.                 (Via Zoom)

3000 El Camino Real

Palo Alto, California 94306-2112

yfu@cov.com

CONFIDENTIAL

Page 10

A P P E A R A N C E S: (Continued)


ALSO ON BEHALF OF THE META DEFENDANTS AND THE WITNESS:

BY:  HOLLY TAMBLING, ESQ.     (Via Zoom)

In-House Counsel for Meta

1 Hacker Way

Menlo Park, California 94025

650-543-4800

hollytambling.meta.com


BASS, BERRY & SIMS PLC

BY:  ALEX AGEE,  ESQ.        (Via Zoom)

100 Peabody Place Suite 1300

Memphis, Tennessee 38103.

901-543-5916

alex.agee@bassberry.com


DAVIS POLK & WARDWELL LLP

BY:  ANDREW CELLI, Law Clerk  (Via Zoom)

450 Lexington Avenue

New York, New York 10017

212-450-4881

CONFIDENTIAL

Page 11

A P P E A R A N C E S: (Continued)

ON BEHALF OF THE TikTok, INC. DEFENDANTS:

KING & SPALDING LLP

BY:  LENNETTE LEE, ESQ.      (Via Zoom)

633 West Fifth Street

Suite 1600

Los Angeles, CA 90071

213-218-4011

llee@kslaw.com

ON BEHALF OF SNAP, INC. DEFENDANTS:

MUNGER, TOLLES & OLSON

BY:  KAYSIE GONZALEZ, ESQ.    (Via Zoom)

350 South Grand Avenue

50th Floor

Los Angeles, CA 90071-3426

213-683-9100

kaysie.gonzalez@mto.com

CONFIDENTIAL

Page 12

A P P E A R A N C E S: (Continued)

ON BEHALF OF THE YouTube, LLC AND GOOGLE LLC DEFENDANTS:

WILSON SONSINI GOODRICH & ROSATI

BY:  ANDREW KRAMER, ESQ.      (Via Zoom)

LIZETTE VALLES, ESQ.     (Via Zoom)

650 Page Mill Road

Palo Alto, California 94304-1050

650-565-3641 - Kramer

650-849-3182 - Valles

akramer@wsgr.com

lvalles@wsgr.com

PRESENT ON ZOOM:

Jimmie Webb, Legal Assistant - Tennessee AGO

Karen Berger - Florida AGO

Michael Dirckx - Florida AGO

Daniel Keiser - Kentucky AGO

Matthew Cocanougher - Kentucky AGO

Joe Kanada - Washington AGO

Alex Kory - Washington AGO

Mandy Wang - New Jersey AGO

Megan Paris Rundlet - Colorado AGO

Abby Cunningham - West Virginia AGO

Charles White - North Carolina DOJ

Diana Anderson - Delaware DOJ

Matthew M. Ford

CONFIDENTIAL

Page 13

A P P E A R A N C E S: (Continued)

VIDEOGRAPHER:  Miguel Concepcion

Golkow, a Veritext Division

TRIAL TECH:  Lance Hoeppner

Golkow, a Veritext Division

TRIAL TECH:  Chris Reynolds

Core Legal Concepts

CONFIDENTIAL

Page 14

C O N T E N T S

WITNESS: JENNIFER GUADAGNO, PhD                    PAGE

PROCEEDINGS                                         27

EXAMINATION BY MS. HAZAM:                           29

EXAMINATION BY MR. SNEED:                          325

STENOGRAPHER'S CERTIFICATE:                        348

DECLARATION:                                       349

DEPOSITION ERRATA SHEET:                           350

CONFIDENTIAL

Page 34

and hear out any position and discuss whether there's any good cause for that purpose, but we are not agreeing to that at this stage.

MS. HAZAM:  Any other preliminaries?

Okay.

BY MS. HAZAM:

Q.   Good morning again, Dr. Guadagno.

Could you introduce yourself for the jury?

A.   My name is Jennifer Guadagno.

Q.   Thank you.

My name is Lexi Hazam.  I'm taking your deposition today on behalf of hundreds of children and their families and hundreds of school districts who alleged they were harmed by Meta's acts and who sued Meta in federal court.

The children in schools I represent have a common interest with the state attorney general plaintiffs present through their counsel here today who have sued in federal court and in their state courts, but I do not represent the state attorneys general.

Is that clear?

A.   Yes.

Q.   Okay.  We are here today in Palo Alto to take your deposition.  You have been sworn in by a

CONFIDENTIAL

Page 35

court reporter, which means you are under oath.

Do you understand that?

A.   Yes.

Q.   That means you're testifying just as though you were sitting in a courtroom before a jury and a judge.  And, in fact, you may sometimes hear counsel questioning you today refer to a jury, even though the jury is not physically present.  And that's because this deposition, as you can see, is being videotaped and recorded, and the video and the written transcript may be presented later in court or used for other purposes authorized under state and federal law.

Do you have any questions about that?

A.   I don't.

Q.   Great.

So I'd like to go over some ground rules for the deposition today, some of which I can see you are already following, which is great.

The first is you need to answer verbally, not just by nodding your head or shaking your head.

We need to try to not talk over each other.  That's part of natural conversation, but in a deposition, the reporter needs a clear record.  So if you can wait until I finish with my question, I

CONFIDENTIAL

Page 36

will try to wait until you finish with your answer.

Is that okay?

A.   Yes.

Q.   Thanks.

You will hear objections made by various counsel today.  Those are to preserve the record.  You should let the objection be stated and then proceed to answer.  You will need to answer unless you're specifically instructed not to.

Do you understand?

A.   Yes.

Q.   If you need a break at any time, please just let me know.  We will simply have you complete your answer to any pending question and then we can take a break.  Okay?

A.   Yes.

Q.   Is there anything that would affect your memory today?

A.   No.

Q.   Okay.  Anything that would affect your ability to tell the truth today?

A.   No.

Q.   Okay.  We're here in the office of the law firm Morrison & Foerster.  Are you represented by attorneys from Morrison & Foerster today?

A.    I am.

Q.    Did you sign an engagement letter with them?

A.    I did.

Q.    Are you paying them to represent you?

A.    I'm not.

Q.    Do you know who is paying them to represent you?

A.    I believe Meta.

Q.    Okay.  Have you entered into a common interest agreement with Meta?

A.    I'm not sure of the term, but I'm co-represented by Meta.

Q.    Okay.  Have you entered into an agreement that says that you share an interest with Meta such that you can share information within the attorney-client privilege?

A.    I believe so.

Q.    Okay.  So have you decided that your interest and Meta's interests are aligned for purposes of this litigation?

A.    No.  Not necessarily.

        MR. KEATS:  Object to form.

BY MS. HAZAM:

Q.    I'm sorry.  Could you repeat your answer?

CONFIDENTIAL

Page 38

A.   Not necessarily, no.

Q.   Okay.  Do you understand that if your interests and Meta's interests diverge in the course of the deposition, your obligation is to tell the truth regardless of whose interest the truth serves?

A.   Yes.

Q.   Okay.  Have you spoken with anyone about this deposition other than your lawyers?

A.   A few people.

Q.   Okay.  Who have you spoken to?

A.   My partner, my current employer, a few close family members and close friends.

Q.   By your partner, you mean your romantic partner?

A.   Yes.

Q.   And your current employer is Apple; correct?

A.   Correct.

Q.   Did any of the people you speak to other than your lawyers work at Meta?

A.   No.

Q.   So, to be clear, you have not spoken to any current or former employees of Meta about this deposition?

A.   I have not.

CONFIDENTIAL

Page 39

Q.    Have you been deposed before?

A.    No.

Q.    Okay.  Have you testified in court before?

A.    No.

Q.    How many times did you meet with the lawyers at Morrison & Foerster to prepare for this deposition?

A.    I believe about seven times.

Q.    Were Meta's lawyers also present at those preparation meetings?

A.    For some of them.

Q.    Can you give me a sense of the total amount of time you spent in those meetings?

A.    About three hours, three or four hours.

Q.    Three or four hours per meeting?

A.    Uh-huh.  Yes.

Q.    So if you met seven times for three or four hours, you might have prepared for 20 to 30 hours in those meetings?

A.    About 20 to 25 most likely.

Q.    Did you review documents in preposition -- in preparation for this deposition?

A.    Yes.

Q.    Do you have a sense of how many?

A.    I don't.

CONFIDENTIAL

Page 79

counts?

A.   I did.

Q.   Why would mitigation be needed if the decision was not to ship the product, to hide like counts?

A.   Because it was a product that could be in support of well-being.  And then if a product is not shipped, there just could be some response to that needed.  And I believe something was spoken about that externally too at that point.

Q.   What do you mean by "externally"?

A.   There was some public statement made about it.  I don't know at what point, but there was something that if it didn't ship, then there would be some answers that I felt would be needed.

Q.   Are you saying that Facebook would need to publicly answer for the fact that it decided not to ship if that was the decision?

A.   I don't know what that response would have been necessarily.  But just would have been -- mitigate meaning think through what that would mean and what possible avenues there were for that.

Q.   Avenues for what?

A.   For talking about the decision to not ship the feature.

Page 80

Q.   And talking about the decision to not ship publicly; correct?

A.   Not necessarily, but it could encompass many different stakeholders in that way.

Q.   If you look further down in this email, you have a couple of bullet points with some bold text in them.  The first one in bold says:

"Social comparison is the most important driver of well-being."

Correct?

A.   That's what it says.

Q.   And so, then, the same as to loneliness in the next bullet point:

"Social comparison is important to loneliness," it says in bold, followed by:

"Social comparison is the most important driver of loneliness."

Do you see that?

A.   I see that it says that.

Q.   Okay.  And you, then, in the next bullet point, state in bold:

"People perceive Facebook and Instagram as having negative impact on social comparison."

Page 81

Is that correct?

A.   That's what it says.

Q.   And in the final bullet point in bold you state:

"Best way for Facebook to significantly contribute to reducing social comparison is through like counts."

Is that correct?

A.   That's what it says.

Q.   Okay.  So reducing comparison through like counts would mean hiding or removing like counts; correct?

A.   Yes.  That's the product direction that was being explored, yes.

Q.   Okay.  When you talk about social comparison being the most important driver of well-being, you're referring to the impact of social comparison on well-being being negative; correct?

A.   Yes.  So this was based on research that's linked above that my team did that was a very complex and kind of rather convoluted study that I feel like probably wouldn't have surfaced that study again, knowing kind of just the complexity of it.

Though I think the point remains that

Page 82

social comparison is very important to well-being. I don't know if I could accurately really say it's the most important driver of well-being, but it's very important to well-being.

Q.   Do you think social comparison has a negative impact on well-being?

A.   It could for some people.  The impact would -- could be negative for some people on well-being.

Q.   Is the impact of social comparison on well-being more negative than positive?

A.   There are ways that social comparison can be positive for well-being.  There's upward and downward social comparison.  They work in different ways.  Certain people respond to them differently.

Though I think net how people talk about social comparison is in the negative sense, in a negative way impacting well-being.

Q.   If we go down to the bottom paragraph of this email -- actually, if you could read the first two sentences of that paragraph, please, for the record.

A.   (Reading):

"Taken together as we develop the strategic plan to approach well-being

CONFIDENTIAL

Page 348

---oOo---

I, JENNY L. GRIFFIN, hereby certify:

That I am a certified shorthand reporter in and for the County of Alameda, State of California;

Prior to being examined, JENNIFER GUADAGNO, the witness named in the foregoing deposition, was by me duly sworn to testify to the truth, the whole truth, and nothing but the truth; that said deposition was taken pursuant to notice at the time and place therein set forth, and was taken down by me in stenotype and thereafter transcribed by means of computer-aided transcription, and that said deposition is a true record of the testimony given by the witness.

I further certify that I am neither counsel for nor related in any way to any party to said action, nor otherwise interested in the outcome thereof.

In witness whereof, I have hereunto subscribed my name November 29, 2024.

_____

JENNY L. GRIFFIN, CSR #3969

Certified Shorthand Reporter