**AMENDED Exhibit 399**

# PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Case No.: 4:22-md-03047-YGR
MDL No. 3047
In Re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation

CONFIDENTIAL

Page 1

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE: SOCIAL MEDIA ADOLESCENT ) MDL No.
ADDICTION/PERSONAL INJURY        ) 4:22-md-3047-YGR
PRODUCTS LIABILITY LITIGATION    )
_____  )
  SUPERIOR COURT OF THE STATE OF CALIFORNIA
        FOR THE COUNTY OF LOS ANGELES
             SPRING STREET COURTHOUSE
COORDINATION PROCEEDING          )
SPECIAL TITLE [RULE 3.400]       ) Lead Case No.
                                 ) 22STCV21355
SOCIAL MEDIA CASES               )
_____  )
                                 )
This Document Relates to:        )
                                 )
STATE OF TENNESSEE,              )
ex rel. JONATHAN SKRMETTI,       )
ATTORNEY GENERAL and REPORTER,   )
v.                               )
META PLATFORMS, INC., and        )
INSTAGRAM, LLC,                  )
Case No. 23-1364-IV              )
_____  )

                Monday, March 10, 2025
        CONFIDENTIAL - PROTECTIVE ORDER MATERIAL
                Video-Recorded Oral Deposition of
SUSAN LI held at the offices of Covington &
Burling LLP, 3000 El Camino Real, 5 Palo Alto
Square, Suite 1000, Palo Alto, California,
commencing at 9:05 a.m. PST on the above
date, before Michael E. Miller, Fellow of the
Academy of Professional Reporters, Certified
Court Reporter, Registered Diplomate
Reporter, Certified Realtime Reporter and
California CSR #13649.

                GOLKOW - VERITEXT
        877.370.DEPS | fax 917.591.5672
                deps@golkow.com

CONFIDENTIAL

Page 2

A P P E A R A N C E S:

CALIFORNIA OFFICE OF THE ATTORNEY GENERAL
BY:  MEGAN O'NEILL, ESQUIRE
     megan.oneill@doj.ca.gov
455 Golden Gate Avenue
Suite 11000
San Francisco, California 94012
(415)510-4400
Counsel for State of California

GOZA HONNOLD LLC
BY:  KIRK J. GOZA, ESQUIRE
     kgoza@gohonlaw.com
     GRACE QUINLAN, ESQUIRE (via Zoom)
     gquinlan@gohonlaw.com
9500 Nall Avenue
Suite 400
Overland Park, Kansas 66207
(913)451-3433
Counsel for MDL/JCCP Plaintiffs

WAGSTAFF & CARTMELL LLP
BY:  LUCY R. MALONE, ESQUIRE (via Zoom)
     lmalone@wcllp.com
4740 Grand Avenue
Suite 300
Kansas City, Missouri 64112
(816)701-1100
Counsel for Plaintiffs

MOTLEY RICE LLC
BY:  PREVIN WARREN, ESQUIRE (via Zoom)
     pwarren@motleyrice.com
401 9th Street NW
Suite 1001
Washington, D.C. 20004
(202)232-5504
Counsel for Plaintiffs

CONFIDENTIAL

Page 3

A P P E A R A N C E S:

KENTUCKY OFFICE OF THE ATTORNEY GENERAL
BY:  DANIEL KEISER, ESQUIRE
        daniel.keiser@ky.gov
        ZACHARY RICHARDS, ESQUIRE (via Zoom)
        zach.richards@ky.gov
        MATTHEW COCANOUGHER, ESQUIRE (via Zoom)
        matthew.cocanougher@ky.gov
1024 Capital Center Drive
Suite 200
Frankfort, Kentucky 40601
(502)696-5300
Counsel for the State of Kentucky

OFFICE OF THE TENNESSEE ATTORNEY GENERAL
BY:  ELIZABETH SPICA, PhD
        elizabeth.spica@ag.tn.gov
        CHRIS DUNBAR, ESQUIRE (via Zoom)
        chris.dunbar@ag.tn.gov
        BRIAN PHELPS (via Zoom)
        brian.phelps@ag.tn.gov
P.O. Box 20207
Nashville, Tennessee 37202-0207
(615)741-3491
Counsel for State of Tennessee, Office of the
Attorney General & Reporter

THE COMMONWEALTH OF MASSACHUSETTS, OFFICE
OF THE ATTORNEY GENERAL
BY:  DOUGLAS MARTLAND, ESQUIRE
        douglas.martland@mass.gov
        PETER DOWNING, ESQUIRE (via Zoom)
        peter.downing@mass.gov
        CHRISTINA CHAN, ESQUIRE (via Zoom)
        christina.chan@mass.gov
        NICHOLAS WILLING, ESQUIRE (via Zoom)
        nicholas.willing@mass.gov
One Ashburton Place, 18th Floor
Boston, Massachusetts 02108
(617)963-2912
Counsel for the Commonwealth of Massachusetts

CONFIDENTIAL

Page 4

A P P E A R A N C E S:

ROBBINS GELLER RUDMAN & DOWD LLP
BY:   THOMAS EGLER, ESQUIRE
      tegler@rgrdlaw.com
655 West Broadway
Suite 1900
San Diego, California 92101
(619)231-1058
Counsel for the State of Arkansas

OFFICE OF THE WEST VIRGINIA ATTORNEY GENERAL
BY:   LAUREL K. LACKEY, ESQUIRE (via Zoom)
      laurel.k.lackey@wvago.gov
      ABBY CUNNINGHAM, ESQUIRE (via Zoom)
      abby.g.cunningham@wvago.gov
P.O. Box 1789
Charleston, West Virginia 25326
(304)558-8986
Counsel for the State of West Virginia

OFFICE OF THE COLORADO ATTORNEY GENERAL
BY:   CORIN STIGALL, ESQUIRE (via Zoom)
      corin.stigall@coag.gov
      STEVEN KAUFMANN, ESQUIRE (via Zoom)
      steven.kaufmann@coag.gov
Ralph L. Carr Judicial Building
1300 Broadway, 10th Floor
Denver, Colorado 80203
(720)508-6000
Counsel for the State of Colorado

OFFICE OF THE NEW JERSEY ATTORNEY GENERAL
BY:   MANDY K. WANG, ESQUIRE (via Zoom)
      mandy.wang@law.njoag.gov
      VERNA PRADAXAY, ESQUIRE (via Zoom)
      verna.pradaxay@law.njoag.gov
Richard J. Hughes Justice Complex
25 Market Street
Trenton, New Jersey 08611
(609)292-4925
Counsel for the State of New Jersey

CONFIDENTIAL

Page 5

A P P E A R A N C E S:

COVINGTON & BURLING LLP

BY:   PHYLLIS A. JONES, ESQUIRE

       pjones@cov.com

       NICOLE ANTOINE, ESQUIRE

       nantoine@cov.com

One City Center

850 Tenth Street NW

Washington, D.C. 20001

(202)662-6000

-and-

COVINGTON & BURLING LLP

BY:   OURANIA SOPHIA YANCOPOULOS, ESQUIRE

       nyancopoulos@cov.com

The New York Times Building

620 Eighth Avenue

New York, New York 10018

(212)841-1000

-and-

BASS BERRY & SIMS PLC

BY:   VIRGINIA M. YETTER, ESQUIRE (via Zoom)

       vyetter@bassberry.com

21 Platform Way

Suite 3500

Nashville, Tennessee 37203

(615)742-6200

-and-

DAVIS POLK & WARDWELL LLP

BY:   KAITLIN CAMPANINI, ESQUIRE (via Zoom)

       kaitlin.campanini@davispolk.com

450 Lexington Avenue

New York, New York 10017

(212)450-4000

Counsel for Defendants Meta Platforms, Inc.

f/k/a Facebook, Inc.; Facebook Holdings, LLC;

Facebook Operations, LLC; Facebook Payments, Inc.;

Facebook Technologies, LLC; Instagram, LLC;

Siculus, Inc.; and Mark Elliot Zuckerberg

CONFIDENTIAL

Page 6

A P P E A R A N C E S:

    KING & SPALDING LLP
    BY:  RACHEL YEUNG, ESQUIRE (via Zoom)
         ryeung@kslaw.com
    633 West Fifth Street
    Suite 1600
    Los Angeles, California 90071
    (213)443-4355
    Counsel for Defendants TikTok Inc. and
    ByteDance Inc.


    MUNGER TOLLES & OLSON LLP
    BY:  KYLE GROVES, ESQUIRE (via Zoom)
         kyle.groves@mto.com
         ARIELLA PARK, ESQUIRE (via Zoom)
         ariella.park@mto.com
    350 South Grand Avenue
    50th Floor
    Los Angeles, California 90071
    (213)683-9100
    Counsel for Defendant Snap Inc.


    MORGAN LEWIS & BOCKIUS LLP
    BY:  RACHEL RAPHAEL, ESQUIRE (via Zoom)
         rachel.raphael@morganlewis.com
    1111 Pennsylvania Avenue NW
    Washington, D.C. 20004
    (202)739-3000
    Counsel for Defendants YouTube LLC and
    Google, LLC

ALSO PRESENT:
    CHRISTEN DUBOIS, ESQUIRE
    Meta Platforms Inc.

    NAYHA ARORA
    California Office of the Attorney General

    TARA LAMER (via Zoom)
    Goza Honnold LLC

CONFIDENTIAL

Page 7

A P P E A R A N C E S:

TRIAL TECHNICIANS:

        JIM LOPEZ

        Precision Trial


        JOHN MORALES

        Core Legal Concepts


VIDEOGRAPHER:

        TIMOTHY HUNTER

        Golkow - Veritext

CONFIDENTIAL

Page 8

INDEX

SUSAN LI

March 10, 2025

APPEARANCES                                                    2

PROCEEDINGS                                                   16


EXAMINATION OF SUSAN LI:

    BY MS. O'NEILL                             17

    BY MR. EGLER                              261

    BY MS. O'NEILL                            282

    BY MR. GOZA                               294

    BY MS. JONES                              353

    BY MS. O'NEILL                            401

    BY MR. GOZA                               417

    BY MS. JONES                              430

    BY MR. GOZA                               433


CERTIFICATE                                                 436

ERRATA                                                      439

ACKNOWLEDGMENT OF DEPONENT                                  440

LAWYER'S NOTES                                              441



LITIGATION SUPPORT INDEX                          PAGE

Instruction Not To Answer                          304

verbal response to the questions instead of shaking your head or nodding so that the court reporter can transcribe that.

Do you understand?

A.    Understood.

Q.    And then I may not always make complete sense or be totally clear with my questions.  If you don't understand my question, just let me know and I'll rephrase it.  But if we -- if you do answer, I'm going to assume that you understood the question.

Do you agree?

A.    Sounds good.

Q.    And then finally, we can take breaks when you need them.  Just let me know. The only exception is that you'll need to answer the pending question before we take the break.

Is that okay?

A.    Understood.

Q.    Ms. Li, can you please state your name for the record?

A.    My name is Susan J. Li.

Q.    And is there any reason why you can't testify truthfully today?

CONFIDENTIAL

Page 21

A.    No.

Q.    Have you ever been deposed before?

A.    Yes.

Q.    And what were the circumstances of that?

A.    Other litigation related to Meta.

Q.    Okay.  And when was that?

A.    I believe my last deposition, unfortunately, the exact dates will be fuzzy, but was sometime in the last one to two years.  And prior to that I have done depositions significantly earlier in my career, probably in excess of five years ago.

Q.    Okay.  Let's talk about that most recent deposition first.

You said that that case involved Meta?

A.    Yes.

Q.    And what was the subject of that litigation?

A.    That was the FTC antitrust case.

Q.    Okay.  And you gave a

CONFIDENTIAL

Page 22

deposition in that case?

A.    I did.

Q.    And what was the subject of your testimony?

MS. JONES:  Objection to the form.

You can answer.

A.    Honestly, my memory is not serving me extremely well because it was lengthy, over the course of the day, and covered a lot of topics, but it was primarily around topics related to monetization and how we thought about things like ad load on Instagram, things like that.

BY MS. O'NEILL:

Q.    And to be clear, it involved your employment at Meta, right?

A.    Yes.

Q.    And what was the next most recent time that you were deposed?  Do you remember the time?

A.    I -- I don't really.  It was definitely more than five years ago, and I think it involved like IP litigation.

Q.    And again, this involved Meta

CONFIDENTIAL

Page 23

and your employment at Meta?

A.    Yes.

Q.    And what was the subject of your deposition testimony in that case?

A.    It was an IP-related trial of some kind, but I just don't remember the details anymore unfortunately.

Q.    No worries.

And have you been deposed aside from these two times that we've discussed?

A.    My recollection, which is not perfect here, is that I've done two IP-related depositions, both in the five years prior-type window, and I just don't remember very much about them because they were so long ago.

I've also testified in trial once in the IRS tax case.

Q.    Okay.  And just to be clear, all of the depositions you've given were in cases involving Meta as a litigant?

A.    Yes.

Q.    And you were testifying about your employment at Meta?

A.    Yes.

CONFIDENTIAL

Q.    Can you tell me when it was that you testified in court?

A.    That would have been probably in 2022, is my best guess.  Unfortunately, I don't remember the exact time frame.

Q.    That's okay.

A.    But it was in the post-COVID period.

Q.    And again, you said before, but just to make sure I'm clear, which case was that that you testified in court for?

A.    That was the IRS tax case against Meta.

Q.    And what was the subject of your testimony in court?

A.    It was about our revenue models.  And actually, I apologize.  I think I'm getting the years incorrect.  I think this might have been earlier.  I think this might have been pre-COVID, so I'm struggling a little bit with the exact timing, so I apologize.

But it's the IRS case against Meta.

Q.    Okay.  Shifting gears, I just

CONFIDENTIAL

Page 25

want to get some terminology clear.

So you understand that one of the defendants in this case is a company called Meta, right?

A.    Yes.

Q.    And Meta used to have a different corporate name, Facebook, right?

A.    Yes.

Q.    So for consistency, I'm just going to refer to this company as Meta throughout this deposition, even if we're talking about a time before Meta had a different corporate name.

Is that okay?

A.    Yes.

Q.    And then if we want to talk about the particular platforms, we can talk about Facebook or Instagram.

Does that work?

A.    Yes.

Q.    Ms. Li, you're here today with lawyers from Covington & Burling, right?

A.    Yes.

Q.    Are you represented by Covington & Burling?

CONFIDENTIAL

Page 26

A.    Yes.

Q.    And you understand that Covington represents Meta in this litigation as well, right?

A.    Yes.

Q.    Meta is paying Covington for its representation of you, right?

A.    Yes.

Q.    Did you meet with lawyers from Covington in advance of this deposition?

A.    Yes.

Q.    How many times?

A.    I'm -- I would say around four times, but I'm not totally precisely sure.

Q.    And on average, how long were those meetings?

A.    Two to three hours, I would say.

Q.    Which lawyers attended those meetings?

A.    I think effectively the three lawyers from Covington who you see here.

Q.    What are their names?

A.    Phyllis Jones, and I'm going to butcher everyone else's.

CONFIDENTIAL

Page 27

Q.    It's not a memory test, it's not important.

Was anyone from Meta present at those meetings?

A.    Typically, a member of the Meta legal team would have been there.

Q.    And were you shown documents in those meetings?

A.    Yes.

Q.    How many documents were you shown?

A.    I would estimate around 20 documents.

Q.    And did you review any other documents outside of those meetings?

A.    I mean, as --

Q.    In preparation for your deposition.

A.    Oh.  No.

Q.    And did you talk to anyone at Meta about this deposition?

A.    No.

Q.    Any former colleagues at Meta that you talked to about this deposition?

A.    No.  I should say outside of

Page 28

scheduling.

Q. Yes.

And, Ms. Li, just to be clear, you're currently employed by Meta, right?

A. I am.

MS. O'NEILL: Okay. Let's look at a document. We're going to look at document C, and we'll mark this as Exhibit 1.

THE WITNESS: Thank you.

(Whereupon, Meta-Li-1, LinkedIn Profile, was marked for identification.)

BY MS. O'NEILL:

Q. Ms. Li, do you recognize this document?

A. This appears to be a printout of my LinkedIn profile.

Q. And according to this profile, you have worked at Meta for almost 17 years, right?

A. Yes.

Q. That's the vast majority of your career, right?

A. Yes.

CONFIDENTIAL

Page 29

Q.    And you're currently Meta's chief financial officer, right?

A.    Yes.

Q.    And you became CFO in 2022?

A.    Yes.

Q.    Can you tell me about your role and responsibilities as CFO?

A.    Sure.  I mean, very briefly, I oversee financial planning and management of the company; that includes both financial planning-type functions, such as forecasting and budgeting for the company.

It includes financial operations for the company, for example, the accounting, treasury, tax-type functions; overseeing the company's financial disclosures, and, you know, our quarterly financial reporting processes; overseeing our internal audit function.

It's kind of a nutshell, maybe recap of some of the core parts of my job.

Q.    And so just to recap that, you have overall responsibility for finance at Meta, right?

A.    Yes.

CONFIDENTIAL

Page 224

rereading this.

BY MS. O'NEILL:

Q.      Sure.

So at the bottom of the first page, Mr. Ginsberg notes that they're facing scrutiny on Facebook and Instagram's impact on well-being, especially around areas of problematic use, addiction and teens.

A.      That's what it says.

Q.      So just to sum up again, Mr. Ginsberg is requesting, in this e-mail, additional employees to work on well-being issues, right?

A.      I mean, I don't remember the details of this now from 2019, but I agree that that is the reading of the e-mail, yeah.

Q.      And that includes as related to teens, right?

A.      Yes.

Q.      Okay.  A little further down the second page, we see Mr. Ginsberg's ask.

A.      Uh-huh.

Q.      His ask is for 17 HC (6 ENG) on Blue, and 7 HC (1 ENG) for IG.  Right?

A.      Yes.

CONFIDENTIAL

Page 225

Q.    And so that's for 17 employees, including 6 engineers, for Facebook, right?

A.    Yes.

Q.    And seven employees, including one engineer, for Instagram, right?

A.    Yes.

Q.    So a total of 24 employees?

A.    Yes.

Q.    On the next page, under Landscape of Current Heads, we see that Mr. Ginsberg noted that:  Funding has been limited so far in these areas.

Right?

A.    That's what it says.

Q.    Okay.  So let's flip back to the first page and look at your e-mail --

A.    Yep.

Q.    -- kind of in the middle.

A.    Yes.

Q.    You respond to Mr. Ginsberg and you say:  Following up on the review yesterday - this was not funded.

Right?

A.    In part, given the number of open heads on Blue -- especially on Blue --

CONFIDENTIAL

Page 226

at the moment.

Q.    Okay.  But just to be clear, you said:  Following up on the review yesterday - this was not funded.

Right?

A.    Well, I think it would more be clear:  We didn't allocate sort of additional contingency head count as part of this, but clarified that Mark and Sheryl want them to reprioritize other things in order to do this work.

Q.    Understood.  But this particular request for the 24 head count was not funded, right?

A.    The 24 head count were not funded, but the request was for them to do the work with existing head count that they have.

MS. O'NEILL:  I'll just move to strike after "were not funded" as nonresponsive.

BY MS. O'NEILL:

Q.    You mentioned a review in this e-mail.  Is that the kind of review that we were just talking about, the monthly head

CONFIDENTIAL

Page 227

count allocation review?

A.    Yes.

Q.    And who attended that meeting?

A.    I don't recall who was in an April 2019 meeting.

Q.    Did Mr. Zuckerberg attend that meeting?

A.    I mean, I assume both Mark and Sheryl were there because I conveyed instructions from them.

Q.    And did Mr. Zuckerberg make the decision not to fund this request for 24 head count?

A.    Again, to be clear, the decision was to not give 24 incremental head count, but to ask the team to do this work while reprioritizing other things.

Q.    And that was Mr. Zuckerberg's decision?

A.    I mean, that was a -- I'm pausing here because I don't recall exactly what words were said in the meeting, but the sort of decision that came out, which, you know, Mark and Sheryl would have been part of was to not grant the open heads but ask the

CONFIDENTIAL

Page 437

CERTIFICATE

I, MICHAEL E. MILLER, Fellow of the Academy of Professional Reporters, Registered Diplomate Reporter, Certified Realtime Reporter, Certified Court Reporter and Notary Public, do hereby certify that prior to the commencement of the examination, SUSAN LI was duly sworn by me to testify to the truth, the whole truth and nothing but the truth.

I DO FURTHER CERTIFY that the foregoing is a verbatim transcript of the testimony as taken stenographically by and before me at the time, place and on the date hereinbefore set forth, to the best of my ability.

I DO FURTHER CERTIFY that pursuant to FRCP Rule 30, signature of the witness was not requested by the witness or other party before the conclusion of the deposition.

I DO FURTHER CERTIFY that I am neither a relative nor employee nor attorney nor counsel of any of the parties to this action, and that I am neither a relative nor employee of such attorney or counsel, and that I am not financially interested in the a

_____
MICHAEL E. MILLER, FAPR, RDR, CRR
Fellow of the Academy of Professional Reporters
NCRA Registered Diplomate Reporter
NCRA Certified Realtime Reporter
California CSR #13649

Dated: March 24, 2025