# Exhibit 7



Andy Beshear
Governor

Lt. Gov. Jacqueline Coleman
Secretary
Education and Workforce
Development Cabinet

Jason E. Glass, Ed.D.
Commissioner of Education and Chief Learner
**KENTUCKY DEPARTMENT OF EDUCATION**
300 Sower Boulevard · Frankfort, Kentucky 40601
Phone: (502) 564-3141 · www.education.ky.gov

August 11, 2021

Superintendent Phillip Watts
Breathitt County School District
P.O. Box 750
Jackson, Kentucky 41339

Superintendent Chris Banks
Breathitt County Day Treatment
2665 Highway 30 West
Jackson, Kentucky 41339

**RE: 2020-2021 IDEA PRELIMINARY REPORT**

Dear Superintendent Watts and Superintendent Banks:

Enclosed is the *2020-2021 IDEA Preliminary Monitoring Report* based on the Individuals with Disabilities Education Act (IDEA) monitoring activities of the Breathitt County School District at Breathitt County Day Treatment on March 26, 2021.

This report reflects the findings of facts and conclusions for the Kentucky Department of Education (KDE), Office of Special Education and Early Learning (OSEEL), Division of IDEA Monitoring and Results (DIMR). The conclusions contained in this report are specific to the facility.

The district may submit additional clarifying documentation during a 10-business day clarification period. Evidence to clarify findings of fact must be submitted no later than Wednesday, August 25, 2021, through the Director of Special Education (DoSE) secure file upload system. The DIMR will consider the evidence and issue a final report on Wednesday, September 1, 2021.



#TeamKDE#TeamKentucky

An Equal Opportunity Employer M/F/D



If you have questions, please contact your DIMR Corrective Action Plan Lead, Erma White, at erma.white@education.ky.gov or (502) 564-4970 ext. 4105.

Sincerely,

*Sylvia M. Starkey*

Sylvia Starkey, Director
Division of IDEA Monitoring and Results

cc:    Hannah Watts, Director of Special Education
       Gretta Hylton, Associate Commissioner, OSEEL
       Jackie Williams, Assistant Director, DIMR
       Dionne Bates, Kentucky Valley Educational Cooperative
       Brenda Combs, Kentucky Valley Educational Cooperative
       Dena Burton, Division Director, DJJ
       Sallie Bolton, Justice Program Administrator, DJJ
       Shannon Jett, Justice Program Administrator, DJJ

CONFIDENTIAL        BREATHITT00139900



# PRELIMINARY MONITORING REPORT OF FINDINGS
# INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA)
# BREATHITT COUNTY SCHOOL DISTRICT and the BREATHITT COUNTY DAY TREATMENT

Issued by:
Kentucky Department of Education (KDE)
Office of Special Education and Early Learning (OSEEL)
Division of IDEA Monitoring and Results (DIMR)

Dates of Visit: February 5, 2021
Preliminary Report Issued: August 11, 2021

TABLE OF CONTENTS

RE: 2020-2021 IDEA Preliminary Report ...................................................................................1

INTRODUCTION AND PURPOSE OF VISIT................................................................................5

MONITORING TEAM MEMBERS ...............................................................................................6

EVIDENCE CONSIDERED ...........................................................................................................6

FOCUS OF VISIT ..........................................................................................................................8

EXECUTIVE SUMMARY ..............................................................................................................9

FINDINGS OF FACT AND CONCLUSIONS................................................................................9

  ISSUE #1 – General Supervision (GS) Indicators ....................................................................9

    Indicator GS-1: ......................................................................................................................9

    Indicator GS-2: ....................................................................................................................10

    Indicator GS-3: ....................................................................................................................11

    Indicator GS-4: ....................................................................................................................12

    Indicator GS-5: ....................................................................................................................13

    Indicator GS-6: ....................................................................................................................15

    Indicator GS-7: ....................................................................................................................16

    Indicator GS-8: ....................................................................................................................18

  ISSUE #2 - Public Agency (PA) Indicators:...........................................................................19

    Indicator PA-1: ....................................................................................................................19

    Indicator PA-2: ....................................................................................................................20

    Indicator PA-3: ....................................................................................................................21

    Indicator PA-4: ....................................................................................................................22

    Indicator PA-5: ....................................................................................................................25

CONFIDENTIAL

BREATHITT00139901



Indicator PA-6: ..................................................................................................26

Indicator PA-7: ..................................................................................................27

Indicator PA-8: ..................................................................................................28

Indicator PA-9: ..................................................................................................30

ADDITIONAL ISSUES ..........................................................................................31

Findings of Fact: ................................................................................................31

CORRECTIVE ACTION PLAN REQUIREMENTS .............................................32

ADDITIONAL CAP INFORMATION ...................................................................35

APPENDIX A – COMPLIANCE RECORD REVIEW ITEMS EXAMINED ...........36

APPENDIX B – REVIEW OF STUDENT-SPECIFIC RECORDS ..........................41

CONFIDENTIAL



## INTRODUCTION AND PURPOSE OF VISIT

The importance of monitoring was emphasized in the Individuals with Disabilities Education Act (IDEA) reauthorization in 2004. The IDEA states at 34 USC § 300.600 (b) (1) and (2) the primary focus of federal and state monitoring activities shall be on:

- improving educational results and functional outcomes for all children with disabilities; and,
- ensuring States meet the program requirements, with particular emphasis on those requirements that are *most closely related to improving educational results for children with disabilities.* (Emphasis added.)

The KDE must exercise its general supervision responsibilities, including monitoring, for all public agencies involved in the provision of special education and related services. To meet this requirement, the KDE conducts monitoring activities to identify and correct non-compliance at the individual student and systems levels.

The report that follows is based on the Office of Special Education Programs (OSEP) Dear Colleague Letter on the Individuals with Disabilities Education Act for Students with Disabilities in Correctional Facilities (December 5, 2014 ). A self-study document was created for State Education Agencies (SEAs) to use as part of their IDEA general supervision responsibilities to assess compliance in ensuring Free and Appropriate Public Education (GAPE) to eligible students with disabilities in adult and juvenile correctional facilities. As used in this report, the terms "public agency" and "public agencies" refer to both the local school district and the Kentucky Education Committee for State Agency Children (KECSAC) facility, unless otherwise specified.

Two critical points the OSEP emphasized are the following:

- "Absent a specific exception, all IDEA protections apply to students with disabilities in correctional facilities and their parents."
- "*Every* agency at *any* level of government that is involved in the provision of special education and related services to students in correctional facilities must ensure the provision of FAPE, *even if other agencies share that responsibility.*" (emphasis added)

The indicators in the monitoring report have been adapted by the KDE from the *State Correctional Educational Self-Assessment* (SCES), a USED self-study document, and are posed in question form under two headings: General Supervision (GS) and Public Agency (PA). The GS indicators are those for which the KDE directly bears responsibility through its monitoring of KECSAC facilities. PA indicators are considered the primary responsibility of the public agencies, such as the KECSAC and the school district serving special education students. The KDE is responsible for ensuring public agencies comply with these standards.

CONFIDENTIAL                                                                 BREATHITT00139903



**MONITORING TEAM MEMBERS**

The KDE established and trained staff to conduct all monitoring activities. Unless otherwise specified, this group will be referred to as the "monitoring team." Approval, implementation and closure of any CAP activities will be under the purview of designated KDE staff within the Division of IDEA Monitoring and Results (DIMR).

The monitoring team members who conducted this visit included the following:

- **Erma White** is an exceptional children consultant within the DIMR whose certifications include Teaching Learning and Behavior Disorders and Teacher Consultant. She has 22 years of teaching students with disabilities at the elementary and middle school level
- **Jarrod Slone** is a consultant within the KDE OSEEL whose work includes physical restraint and seclusion and significant disproportionality among special education students. Mr. Slone's certifications include teacher, principal, instructional supervisor, director of pupil personnel and superintendent. In addition, Mr. Slone has 14 years of teaching and administrative experience serving as Admissions and Release Committee chair, Response to Intervention (RtI) teacher and committee chair, and positive behavioral interventions and supports lead.
- **April Pieper** is an academic program manager within the DIMR whose certification includes English Education, Curriculum and Instruction, Educational Leadership, principal, director of pupil personnel and supervisor of instruction. She has 25 years of experience in education, 13 of which have been within the KDE. Additionally, Mrs. Pieper is a statewide RtI expert and trauma-informed care certified trainer.

**EVIDENCE CONSIDERED**

The monitoring team used various sources of information to triangulate or piece together what was happening in the facility. The monitoring team reviewed data obtained from a variety of sources including, but not limited to:

- student due process records from the 2019- 2020 and 2020-2021 school years (including conference summaries, IEPs, and related documents)
- interviews with the following individuals:
  - superintendent for DJJ facility (1)
  - director of special education (1)
  - principal (1)
  - counselors (2)
  - general education teacher (1)
  - special education teacher (1)
  - para educator (1)
  - students with disabilities (3)

CONFIDENTIAL    BREATHITT00139904



- o   DJJ youth worker (2)
- Documents reviewed and included as part of this report:
  - o   Commonwealth of Kentucky, Justice and Public Safety Cabinet, Department of Juvenile Justice, Interagency Agreement and Memorandum of Understanding (DJJ MOU)
  - o   Kentucky Educational Collaborative for State Agency Children (KECSAC), Eastern Kentucky University, Memorandum of Agreement Overview (KECSAC MOA)
  - o   704 KAR 7:160. Use of Physical Restraint and Seclusion in Public Schools; Prohibition of Aikido Control Training (ACT) memo from Kentucky Department of Education Commissioner Dr. Stephen Pruitt dated Tuesday, August 2, 2016
  - o   Breathitt County Schools Resource Guide for Post-Secondary Transition Assistance
  - o   Breathitt County School District Special Education Policies and Procedures
  - o   Breathitt County Schools Resource Guide for Post-Secondary Transition Assistance
  - o   Breathitt County Student Code of Acceptable Behavior and Discipline
- Breathitt County Juvenile Detention Center documents including:
  - o   Behavior Tracking Sheets
  - o   Breathitt County Day Treatment Transition Plan 2020-2021
  - o   Calendar
  - o   Master Schedule
  - o   Sample Transition Plan
  - o   Training Attendance Certificates
  - o   Breathitt County Special Education-webpage
- Safe Schools Data
- Virtual walkthrough of the facility

Student due process records chosen for review by the monitoring team were based on the current December 1, 2020 Child Count data.

CONFIDENTIAL

BREATHITT00139905



**FOCUS OF VISIT**

| Area Reviewed | Regulatory Authority |
|---|---|
| **Issue #1**<br><br>General Supervision Indicators | 703 KAR 5:070<br>704 KAR 3:305, Section 2<br>707 KAR 1:320, Section 7 (1)<br>707 KAR 1:320, Section 7 (2) (b)<br>707 KAR 1:300, Sections 1-12<br>707 KAR 1:340, Section 1<br>707 KAR 1:340, Section 3<br>707 KAR 1:340, Section 6<br>707 KAR 1:320, Section 3 (4)<br>707 KAR 1:320, Section 3 (1) (h))<br>707 KAR 1:320, Section 5 (10)<br>707 KAR 1:320, Section 6 |
| **Issue #2**<br><br>Public Agency Indicators | 707 KAR 1:290<br>704 KAR 7:160<br>707 KAR 1:300, Section 4<br>704 KAR 3:305, Section 2<br>707 KAR 1:320, Section 7 (1)<br>707 KAR 1:320, Section 7 (2) (b)<br>704 KAR 3:305, Section 2<br>707 KAR 1:320, Section 1 (1)<br>707 KAR 1:320, Section 5<br>707 KAR 1:320, Section 5 (2) (a)<br>707 KAR 1:320, Section 7 (1)<br>707 KAR 1:320, Section 7 (2)<br>707 KAR 1:320, Section 10<br>707 KAR 1:340, Section 1<br>707 KAR 1:350, Section 1<br>704 KAR 3:305, Section 2<br>34 CFR §300.156 |

CONFIDENTIAL

BREATHITT00139906



**EXECUTIVE SUMMARY**

The IDEA monitoring team observed several areas of strength at Breathitt County Day Treatment as well as opportunities for growth. Due to COVID-19 the monitoring process was completed through virtual interviews with facility staff and virtual walkthroughs of the campus.

Breathitt County Day Treatment (BCDT) is housed in Jackson, Kentucky. It can accept up to 24 students in the day treatment program. The BCDT collaborates to offer an education to those students who reside in the Jackson Group Home.

A relative strength of the facility is attention to the mental health and social-emotional needs of the students. The BCDT employs two mental health professionals that provide individual and group counseling to all students at the BCDT. They also offer family counseling when requested. BCDT's approach to behavior relies first on relationship building and de-escalation practices. Students at the BCDT may receive incentives for following behavior guidelines set forth by the facility. The student population was small at the time of the audit allowing students to receive one on one support from the staff.

Per district interviews and documentation from the Kentucky Education Professional Standards Board (EPSB), all faculty at the BCDT are certified. Interviews and documentation evidenced during the visit indicated students received their education through paper packets and virtual instruction using Edmentum's online learning platform. Edmentum is used for credit recovery and day-to-day core instruction, though limited direct instruction is provided for special education students.

During the review, several opportunities for growth were identified among special education programs and practices at the BCDT. As determined in a review of documentation submitted by the district and as evidenced in interviews with school administration and staff, the lack of access to a continuum of special education services for all students with disabilities was specifically noted. Even though the Breathitt County School District has special education policies and procedures documented, there are limited opportunities for training to ensure the requirements of IDEA are met.

**FINDINGS OF FACT AND CONCLUSIONS**

**ISSUE #1 – General Supervision (GS) Indicators**

**<u>INDICATOR GS-1:</u>**

*For Admissions and Release Committee (ARC) meetings, is the student (beginning at age 14) invited to the meeting whenever appropriate and unless there is an applicable exception, to attend an ARC meeting if a purpose will be the consideration of postsecondary goals and transition services needed to assist the student in reaching those goals?*

CONFIDENTIAL                                                                                                BREATHITT00139907



**Relevant Information:**

Public agencies must invite each student with a disability to attend the student's Admissions and Release Committee (ARC) meeting if a purpose of the meeting will be the consideration of the postsecondary goals for the student and the transition services needed to assist the student in reaching those goals, as required in 707 KAR 1:320, Section 3 (4). If the student does not attend the ARC meeting, the public agency must take other steps to ensure the student's preferences and interests are considered.

**Findings of Fact (Indicator GS-1):**

1. Student record reviews and interviews indicated staff could articulate the ARC membership requirements.
2. Record reviews indicated five of nine students (56%) were invited to their ARC meetings when postsecondary goals and transition services were discussed.
3. Interviews confirmed students were not routinely invited to their ARC meetings.
4. As documented in the student's due process records, no students (0%) attended their ARC meetings, and the ARC did not document a discussion of their postsecondary preferences and interests.

**Conclusions:**

A. According to 704 KAR 1:320, Section 3 (4), public agencies must invite each student to their ARC meetings if the purpose of the meeting is to consider the postsecondary goals for the student and the transition services needed to assist the student in reaching those goals.
B. Students at the BCDT are not routinely invited to, nor do students participate or provide input to the ARC when postsecondary transition goals and services are discussed.
C. The above findings support the conclusion that the BCDT and the Breathitt County School District are **in violation** of the requirements of Indicator GS-1.

**INDICATOR GS-2:**

*Are students with disabilities required to be included in state and districtwide assessment programs? Do these students receive individual appropriate accommodations and alternate assessments?*

**Relevant Information:**

The KDE must ensure all students with disabilities, including those in correctional facilities, are appropriately included in all general state and districtwide assessment programs. Students with disabilities who are required to take any general state assessment when they are confined to a correctional facility must be provided appropriate accommodations on the State assessment or administered an appropriate alternate assessment is determined to be necessary for the student and determined by the student's ARC. (707 KAR 1:320, Section 5 (10) and 703 KAR 5:070).

CONFIDENTIAL                                                                 BREATHITT00139908



**Findings of Fact (Indicator GS-2):**

5. According to a review of student due process records, nine of nine students (100%) had testing accommodations documented in their Individual Education Plan (IEP).
6. According to the MOU between DJJ and Breathitt County School District students enrolled must be included in district and statewide assessments.
7. Interviews revealed staff did not participate in district Administration Code for Kentucky's Educational Assessment Program and the Inclusion of Special Populations in the State-Required Assessment and Accountability Program training in order to provide accommodation on state assessments for the 2019-2020 school year.
8. No students enrolled at BCDT were eligible to participate in the Kentucky Alternate Assessment Program during the 2019- 2020 school year.
9. Interviews revealed the district tested student achievement using the Measurement of Academic Performance (MAP) assessment.
10. Students enrolled at BCDT did not participate in MAP assessments.
11. Indicator 3 of the State Performance Plan required all students with disabilities to participate in statewide assessments.
12. Due to the effects of COVID-19, the *COVID-19 Impact of U.S. Department of Education Waiver on 2019-2020 Assessment Programs* was issued. This waiver granted the state's request to not administer statewide assessments during the 2019-2020 school year.
13. No student at BCDT participated in statewide assessments for the 2019-2020 school year due to the waiver of assessments mentioned above.

**Conclusions (Indicator GS-2):**

A. According to 707 KAR 1:320, Section 5 (10), the IEP should contain a statement of any individual accommodations to be provided to the child in order to participate in state and districtwide assessments.
B. Students with disabilities must participate in all state assessments, as indicated in 703 KAR 5:070.
C. Students with disabilities enrolled at BCDT did not participate in districtwide assessments as stated in the MOU between DJJ and the Breathitt County School District.
D. Therefore, the BCDT and the Breathitt County School District are **in violation** of the requirements of Indicator GS-2.

**INDICATOR GS-3:**

*Do personnel who provide special education and related services to students in the facility meet IDEA's personnel qualification requirements? IDEA Chapter 33, Subchapter II (Part B), Section 1412(a)(14)? This means staff:*

- *are appropriately and adequately trained and prepared*

CONFIDENTIAL                                        BREATHITT00139909



- *have the content knowledge and skills to serve students with disabilities in correctional facilities*

## Relevant Information:

States and public agencies must establish and maintain qualifications to ensure that personnel providing special education and related services, including those serving students with disabilities in correctional facilities, are appropriately and adequately prepared and trained.

Public school special education teachers in correctional facilities must be appropriately certified to deliver specially designed instruction (34 CFR §300.156). The KDE must monitor to ensure appropriate special education teachers in schools and education programs within correctional facilities.

## Findings of Fact (Indicator GS-3):

14. Breathitt County School District provided one certified general education teacher and one certified special education teacher to the BCDT.
15. According to the Education Professional Standards Board (EPSB) Kentucky Educator Certification Inquiry (KECI) database, the teaching staff at the BCDT were certified educators.
16. The school administrator is certified in Instructional Leadership-Principal-All Grades, Director of Pupil Personnel, middle school teaching in English and communications, and mathematics.

## Conclusions (Indicator GS-3):

A. The educational staff at the BCDT are certified to deliver specially designed instruction, as noted in 34 CFR §300.156.
B. All teachers and administrators are certified educators.
C. Therefore, the BCDT and the Breathitt County School District are **in compliance** with the requirements of Indicator GS-3.

## INDICATOR GS-4:

*Are there child find policies and procedures to address identifying, locating, and evaluating eligible students with disabilities who need special education and related services used in the KECSAC facility?*

## Relevant Information:

Public Agencies must have child find policies and procedures in effect that ensure all age-eligible students with disabilities, including those in correctional facilities, who need special education and related services, are identified, located and evaluated, regardless of the severity of the disability.

CONFIDENTIAL

BREATHITT00139910



Public agencies must have child find policies and procedures in effect that ensure all age-eligible students with disabilities, including those in correctional facilities, who require special education and related services, are identified, located, and evaluated, regardless of the severity of their disability (707 KAR 1:300, Section 1).

## Findings of Fact Indicator (GS-4):

17. The Breathitt County Special Education Policies and Procedures contains child find policies and procedures.
18. The Breathitt County School District posted a notification to the public regarding child find policies on the district's website.
19. Interviews indicated staff were aware of a child find referral form should a child be suspected of having a disability.
20. A virtual walkthrough of the BCDT evidenced that a child find poster is clearly posted in the intake area of the facility.
21. In a review of IEP documentation, all students reviewed were previously identified for special education prior to enrollment at the BCDT.

## Conclusions (Indicator GS-4):

A. The BCDT and Bullitt School District have child find policies and procedures as required by 707 KAR 1:300, Section 1.
B. The above findings support the conclusion that the BCDT and the Breathitt County School District are **in compliance** with the requirement Indicator GS-4.
C. Indicator PA-1 below specifies additional requirements related to child find for the BCDT and the Breathitt County School District beyond the general conditions outlined in Indicator GS-4.

## INDICATOR GS-5:

*Are reasonable efforts made to ensure the assignment of a surrogate parent, in accordance with IDEA's selection criteria, not more than 30 days after it is determined that a student with a disability in the correctional facility needs a surrogate parent?*

## Relevant Information:

In circumstances where the appointment of a surrogate parent is necessary, the SEA must make reasonable efforts to ensure the assignment of a qualified surrogate parent not more than 30 days after a public agency determines the student needs a surrogate parent. The surrogate parent may represent the student in all matters relating to the identification, evaluation, and educational placement of the student and the provision of FAPE. The surrogate parent must meet the knowledge, skills, impartiality, and other required criteria described in the IDEA and its implementing regulations, including that the individual is not an employee of the KDE, the

CONFIDENTIAL     BREATHITT00139911



district or any other agency is involved in the education or care of the student. (707 KAR 1:340, Section 6 (6) and (7).

In carrying out this responsibility, the district must have a method for determining whether a student needs a surrogate parent and for assigning a surrogate parent to the student (707 KAR 1:340, Section 5). The IDEA also permits a judge overseeing the case of a student who is a ward of the State to appoint a surrogate parent (707 KAR 1:340, Section 5 (3)). However, public agencies must not assume all students with disabilities in correctional facilities need a surrogate parent. Instead, a surrogate parent acts in place of a student's parent only when: (1) the parent cannot be identified; (2) the parent cannot be located after reasonable efforts; (3) the student is a ward of the State under the laws of that State; or (4) the student is an unaccompanied or homeless youth, as defined in section 725(6) of the McKinney-Vento Homeless Assistance Act (707 KAR 1:340, Section 6 (8)).

Surrogate parents cannot be an employee of the KDE, the Local Educational Agency (LEA) or any other public agency that is involved in the education or care of the child. Additionally, surrogate parents shall not have any personal or professional interest that conflicts with the interests of the child and shall have knowledge and skills that ensure adequate representation of the child.

### Findings of Fact (Indicator GS-5):

22. The Breathitt County Special Education Policies and Procedures manual defines the term "surrogate" and outlines policies and procedures related to the selection and representation of students who qualify for surrogacy.
23. Interviews revealed that the ARC chair and special education staff were aware of the district's policy on the requirements of an educational surrogate.
24. Interviews indicated when a surrogate was required, the district used a retired teacher of the visually impaired or trained surrogates from a local church.
25. A review of student due process records indicated there was not a need for an educational surrogate.

### Conclusions (Indicator GS-5):

A. According to 707 KAR 1:340, Section 5 (3) and 707 KAR 1:340, Section 6 (8), the district must assign a surrogate parent when needed for the student.
B. The Breathitt County School District provides guidelines for use and qualifications for surrogate parent use in special education procedures.
C. The above findings support the conclusion that the BCDT and the Breathitt County School District are **in compliance** with the requirements of Indicator GS-5.

CONFIDENTIAL

BREATHITT00139912



## INDICATOR GS-6:

*How is it ensured all the procedural safeguards and protections under the IDEA are extended to eligible students with disabilities and their parents?*

### Relevant Information:

Parental engagement in a student's education is particularly important when a student with a disability is in a correctional facility. Parents who remain involved with their child's education while the student is in a correctional facility will be better equipped to provide needed support to the student when he or she exits the facility and returns to the community and/or school. Unless the State has opted to transfer parental rights at the age of majority under 707 KAR 1:340, Section 6 (11) (see Transfer of Parental Rights at Age of Majority, above), parents do not lose their rights under the IDEA when their child is placed in a correctional facility, even if the student has been convicted as an adult and incarcerated in an adult prison.

Parents of students in correctional facilities are entitled to receive "prior written notice" and procedural safeguards. The district or other responsible public agency must provide the parents with prior written notice, a reasonable time before the public agency proposes or refuses to initiate or change the identification, evaluation, or educational placement of a child with a disability, or the provision of FAPE to the child. These notices must be written in language understandable to the general public and provided in the native language of the parent or other mode of communication used by the parent unless it is not feasible to do so (707 KAR 1:340, Section 3).

Furthermore, correctional facilities may not assume the role of a parent under the IDEA, and therefore may not, for example, provide or refuse consent for a student's initial evaluation or reevaluation, or provide, refuse, or revoke consent for services under the IDEA or serve as the parent on an IEP Team. It may be difficult for some parents to participate in person in ARC Team meetings if the correctional facility is not located near the parent's residence. Nevertheless, the parent participation requirements in 707 KAR 1:340, Section 1 and 707 KAR 1:320, Section 1 (a) are fully applicable to public agencies responsible for educating students with disabilities in correctional facilities.

### Findings of Fact (Indicator GS-6):

26. In nine of nine student due process records (100%), reviewed the parent or legal guardian were invited to participate in their student's ARC meeting.
27. Student due process records revealed all ARC meetings (100%) for the 2019-2020 and 2020-2021 school years were held without the parents or guardians.
28. As documented in the contact logs provided in IC, parents requested the district to convene their student's ARC meeting without their presence.
29. Per interviews and documentation in student due process records indicated the ARC paperwork and procedural safeguards were mailed at the time of the ARC meeting or

CONFIDENTIAL

BREATHITT00139913



given to the parent when in-person instruction resumed. No student at the BCDT required an evaluation in the 2019-2020 school year up until the time of the audit according to three of three student due process records (100%) reviewed.

## Conclusions (Indicator GS-6):

A.   707 KAR 1:340, Section 1 and 707 KAR 1:320, Section 3 (1) (a) require a parent or legal guardian of the student to be a participant in their student's ARC meeting.

B.   According to 707 KAR 1:340 Section 3 (a) the district may have a student's ARC meeting without the parent attending if unable to convince the parent to attend and have a record of attempts to convince the parent to attend.

C.   All student's due process records at the BCDT indicated parents were given the opportunity to participate in their student's ARC meeting. However, in every case, the parent declined to attend.

D.   The above findings support the conclusion that the BCDT and the Breathitt County School District are **in compliance** with the requirements of Indicator GS -6.

## INDICATOR GS-7:

*How is it ensured there is no undue interruption in the provision of special education and related services when students are confined to correctional facilities?*

*How is it ensured that requirements for IEPs of transfer students are met for in-state and out-of-state transfer students with IEPs who transfer into the facility in the same school year, including requirements for providing a FAPE through services comparable to those described in the student's IEP from the previous public agency?*

## Relevant Information:

The rules governing the responsibility for FAPE in connection to students with IEPs who transfer from one public agency to another, apply when a student with a disability is in a correctional facility and the responsibility for the provision of FAPE transfers **from** one public agency (generally a district) to another public agency, generally, another district that includes the correctional facility. All agencies involved must have policies and procedures that ensure that the education records of students with disabilities who move to and from correctional facilities are transferred as expeditiously as possible.

The failure of a public agency to obtain educational records promptly can interfere with the student's ability to receive FAPE and to receive credits towards graduation. Public agencies are encouraged to assign specific staff the responsibility to work with correctional staff to promptly transfer education records to facilitate the student's timely connection to educational or training activities.

The new public agency in which the student enrolls must take reasonable steps to promptly obtain the student's records (including the IEP and supporting documents and any other records

CONFIDENTIAL                                                                                     BREATHITT00139914



relating to the provision of special education or related services to the student) from the previous public agency in which the student was enrolled, according to the Family Educational Rights and Privacy Act (FERPA). The previous public agency in which the student was enrolled must take reasonable steps to promptly respond to the request from the new public agency (707 KAR 1:320, Section 6). Also, the parent of a student with a disability may provide a copy of the IEP directly to the new public agency.

However, if, after taking reasonable steps, the new public agency is not able to obtain the IEP from the parent or the previous public agency, the new public agency must, at a minimum, place the student in the regular school program, conduct an evaluation, and make an eligibility determination according to 707 KAR 1:310, if the new public agency determines an evaluation is necessary (707 KAR 1:320, Section 6 (2)). Although the new public agency is not required to provide special education and related services to the student because it would be unable to determine what constitutes comparable services for the student without an IEP from the previous public agency, excluding the student from all educational services is not permissible.

Moreover, even if the new public agency is unable to obtain the student's IEP from the previous public agency, if the new public agency decides that an evaluation is necessary because it has reason to suspect that the student has a disability, nothing in the IDEA or its implementing regulations would prevent the agency from providing special education services to the student while the evaluation is pending, subject to an agreement between the parent and the agency.

**Findings of Fact (Indicator GS-7):**

30. The MOA between KECSAC and the Breathitt County School District had policies in place for the transmittal of records which stated educational records must be transmitted to receiving school within five days of notice.
31. The process for student records requests is outlined in the Breathitt County Special Education Policies and Procedures submitted by the district
32. According to KAR 1:320 Section 6, IEP services must be comparable to those in the previous IEP until the Breathitt County School District (BCSD) adopts, develops and implements a new IEP.
33. As revealed in interviews, the records clerk interviewed the student upon enrollment to the facility to determine if the student was a student with a disability.
34. According to interviews, after intake at the facility, the records clerk was notified to review, and request needed records from the student's prior school district or facility.
35. As indicated in nine of nine student due process records (100%), students were enrolled into this facility prior to the 2019-2020 school year.
36. As per interviews and based on the school calendar provided, student records were accessed virtually due to COVID-19.

CONFIDENTIAL

BREATHITT00139915



**Conclusions (Indicator GS-7):**

A.  It is required the receiving agency make considerable efforts to obtain student due process records from previous placement to alleviate an interruption in the student's special education services.

B.  As evidenced, the district has documented policies and procedures directly related to the transfer of records for special education students.

C.  The above findings support the conclusion that the Breathitt County School District and the BCDT are **in compliance** with the requirements of Indicator GS-7.

## INDICATOR GS-8:

*Are policies and procedures in place to ensure the transmittal of relevant records for those students who move to and from correctional facilities so that these students' educational records can be transferred as expeditiously as possible?*

**Relevant Information:**

Section 1425 of the Every Student Succeeds Act requires each correctional facility entering into an agreement with an LEA to provide services to children and youth shall: upon the child's or youth's entry into the correctional facility, work with the child's or youth's family members and the local educational agency that most recently provided services to the child or youth (if applicable) to ensure that the relevant and appropriate academic records and plans regarding the continuation of educational services for such child or youth are shared jointly between the correctional facility and local educational agency to facilitate the transition of such children and youth between the local educational agency and the correctional facility.

**Findings of Fact (Indicator GS-8):**

37.  DJJ Policy Number 134, dated December 1, 2014, includes procedures to ensure DJJ student records are transferred from one facility to another in an expeditious manner, including records requested from out-of-state facilities.

38.  According to the KECSAC MOA with the BCDT, facilities had five days to transfer records to or from a facility.

39.  According to the DJJ MOU, the BCDT must complete an Educational Passport that addresses student educational records' transfer.

40.  The Breathitt County School District had special education policies and procedures for the transmission of records as outlined in the Breathitt County Special Education Policies and Procedures manual.

41.  Interviews indicated the process for obtaining records from other in-state facilities is completed through IC and that all records transmittals occur within three days.

42.  In interviews with administrators, it was noted when students transfer from out-of-state facilities, the previous school district is contacted via phone to aid in the transmittal of student records.

CONFIDENTIAL    BREATHITT00139916



43. The student due process records reviewed indicated all students were residents of Kentucky prior to being enrolled to the BCDT.

**Conclusions (Indicator GS-8):**

A. 707 KAR 1:320, Section 6 lists procedures to facilitate the prompt transmission of student records.
B. The BCDT and the Breathitt County School District have policies and procedures for the transmission of student due process records.
C. The above findings support the conclusion that the BCDT and the Breathitt County School District are **in compliance** with the requirements of Indicator GS-8.

**ISSUE #2 - Public Agency (PA) Indicators:**

**INDICATOR PA-1:**

*What process is used to work with individuals most likely to come into contact with students in the juvenile justice system to ensure age-eligible students suspected of having disabilities are identified?*

**Relevant Information:**

Public agencies must have child find policies and procedures in effect that ensure that all age-eligible students with disabilities, including those in correctional facilities, who are in need of special education and related services, are identified, located, and evaluated, regardless of the severity of their disability (707 KAR 1:300, Section 1). Existing child find policies and procedures frequently focus on teachers and staff in traditional schools, as well as the local medical community. Child find policies and procedures should include those individuals in the community who come in contact with students in the juvenile justice system, including intake staff, social workers, probation officers, truant officers, police, and medical and mental health professionals who treat students in correctional facilities, as well as other staff in the juvenile justice system and correctional facilities.

**Findings of Fact (Indicator PA-1):**

44. All the above Findings of Fact and Conclusions are incorporated herein by reference.
45. BCDT had child find policies and procedures in place as documented above in Indicator GS-4.
46. Interviews and documentation in student due process records indicated that when a student was enrolled in the BCDT, they were administered the Test of Adult Basic Education (TABE) and other assessments to determine learning styles and interests.
47. In interviews of instructional administration and staff at the BCDT, four of five (80%) indicated a consistent lack of understanding of district child find policies and procedures.

CONFIDENTIAL    BREATHITT00139917



48.   In interviews of instructional administration and staff, five of five (100%) indicated the BCDT did not employ a response to intervention system to address the educational needs of students at the facility.

## Conclusions (Indicator PA-1):

A.   According to 707 KAR 1:300, Section 1, the required child find policies must include those individuals in the community that come in contact with the student in the correctional facility.

B.   This regulation also explains, prior to or as part of the referral process, students must be provided appropriate, relevant research-based instruction and intervention services in regular education settings, with the instruction provided by qualified personnel.

C.   While policies exist for child find in the district, BCDT staff have a lack of understanding of child find policies and procedures as it applies to the IDEA.

D.   Therefore, the BCDT and the Breathitt County School District are **in violation** of the requirements of PA-1.

## INDICATOR PA-2:

*What is the process used to ensure initial evaluations of students in correctional facilities take place within the Kentucky established timeline of 60 school days?*

## Relevant Information:

LEAs are responsible for implementing the SEA's child find policies. It is not sufficient to assume that a student who enters a correctional facility is not a student with a disability simply because they have not yet been identified as such. Therefore, LEAs should work with individuals who are most likely to come into contact with students in the juvenile justice system (see *Child Find* above) to identify students suspected of having a disability and ensure that a timely referral for an evaluation is made. To determine if a student has a disability, a parent or a public agency may initiate a request for an evaluation. Moreover, the evaluation of a student suspected of having a disability must occur once parental consent has been obtained, even if the student will not be in the facility long enough to complete the process.

Kentucky has a state-established timeline for completion of initial evaluations within 60 school-days of receiving parental consent for the evaluation. If the student is transferred to a correctional facility in the same school year, in the same State or a different State, after the previous district has begun but has not completed the evaluation, both public agencies must ensure that assessments are coordinated to ensure completion of the evaluation. This must occur as necessary and as expeditiously as possible (707 KAR 1:300, Section 4 (13)). However, the relevant time frame does not apply when the following two conditions are present: (1) the new school district is making sufficient progress to ensure prompt completion of the evaluation; and (2) the parent and new school district agree to a specific time when the evaluation will be completed (707 KAR 1:320, Section 2 (5)).

CONFIDENTIAL

BREATHITT00139918



**Findings of Fact (Indicator PA-2):**

49. All the above Findings of Facts and Conclusions are incorporated herein by reference.
50. All students with IEPs currently enrolled were identified as requiring special education and related services prior to their arrival at the facility, as noted in the due process records reviewed.
51. Interviews noted there were no general education students in the referral process at the BCDT.
52. The Breathitt County School District had special education policies and procedures regarding evaluation timelines located in the Breathitt County School District Special Education Procedures document.
53. Interviews revealed the BCDT staff were knowledgeable of the special education evaluation timelines.

**Conclusions: (Indicator PA-2):**

A. The BCDT and the Breathitt County School District have evaluation guidelines set forth in <u>707 KAR 1:300</u>.
B. The above findings support the conclusion that the BCDT and the Breathitt County School District are **in compliance** with the requirements Indicator PA-2.

## INDICATOR PA-3:

*How is it ensured all personnel necessary to carry out Part B of the IDEA are appropriately and adequately prepared?*

**Relevant Information:**

States and their public agencies must establish and maintain qualifications to ensure personnel providing special education and related services, including those serving students with disabilities in correctional facilities, are appropriately and adequately prepared and trained. Public school special education teachers in correctional facilities must meet Kentucky certification criteria and related services personnel and paraprofessionals in correctional facilities must meet state qualifications. The KDE must monitor to ensure that there are appropriate special education teachers in schools and education programs within correctional facilities.

**Findings of Fact (Indicator PA-3):**

54. All the above Findings of Facts and Conclusions are incorporated herein by reference.
55. The Breathitt County School District provided one part-time administrator, one master teacher/special education teacher and one general education teacher to the BCDT. Additionally, a career and technical education teacher was provided to the facility.
56. All educational staff at the BCDT are certified according to the <u>Education Professional Standards Board (EPSB) Kentucky Educator Certification Inquiry (KECI) database</u>.

CONFIDENTIAL                                                                                    BREATHITT00139919



**Conclusions (Indicator PA-3):**

A.   All educational staff are certified according to the certification requirements set forth by EPSB.

B.   Therefore, the BCDT and the Breathitt County School District are **in compliance** of the requirements of Indicator PA-3.

## INDICATOR PA-4:

*How is it ensured non-educational training staff serving students with disabilities are included in professional development activities regarding IDEA (e.g., the use of Positive Behavior Interventions and Supports (PBIS), discipline procedures and cross-agency staff discussions?)*

**Relevant Information:**
Public agencies should consider including non-educational training staff in professional development activities regarding the IDEA, including PBIS and discipline procedures. They should provide opportunities for discussions across agency staff regarding any problems students with disabilities may experience in correctional facilities.

**Note:** Indicator **PA-4** will be reviewed by the KDE to determine the extent of implementation and to provide feedback and recommendations. However, Indicator PA-4 is not considered by the Office for Special Education Programs (OSEP) to be a compliance indicator and will not be cited by the KDE for noncompliance or required corrective action. Please note that failure to fully implement Indicator PA-4 may result in findings of noncompliance related to other indicators and regulatory requirements, including appropriate documentation of the requirements of the Kentucky Regulation "Use of Physical Restraint and Seclusion in Public Schools."

**Related Indicator:**

Kentucky Administrative Regulation 704 KAR 7:160, Use of Physical Restraint and Seclusion in Public Schools.

**Findings of Fact (Indicator PA-4):**

57.   All the above Findings of Facts and Conclusions are incorporated herein by reference.

58.   Interviews and documentation provided in proof of professional learning indicate that both non-instructional district and DJJ staff at the facility did not participate in district trainings related to IDEA.

59.   The following required trainings were completed by the BCDT staff as per documentation received from the district.
   a.   Quarterly Emergency Procedures
   b.   Annual Training HSP and Annual Review of DJJ Standard Operating Procedures
   c.   Cardiopulmonary Resuscitation (CPR)
   d.   Automated External Defibrillator (AED)
   e.   First Aid Renewal/Review

CONFIDENTIAL                                                     BREATHITT00139920



 f. Suicide Precautions

 g. Phase 1 Prison Rape Elimination Act (PREA) Training

### Conclusions (Indicator PA-4):

A. As stated in the <u>Dear Colleague letter</u> (December 5, 2014), it is recommended the public agency include the noneducational staff employed at the DJJ at the facility in professional development activities regarding the IDEA, PBIS and discipline procedures.

B. The DJJ staff are not included in professional development activities related to IDEA at the BCDT.

### Findings of Fact (704 KAR 7:160 Implementation):

60. All the above Findings of Facts and Conclusions are incorporated herein by reference.

61. An MOU exists between the DJJ and the Breathitt County School District to operate a school facility at the BCDT in which the Breathitt County School District agreed to "comply with all applicable federal and state laws and regulations for the services provided under this agreement."

62. Interviews indicated only the DJJ staff are trained to physically restrain or seclude a student.

63. Interviews indicated it is the head teacher's responsibility to enter behavioral incidents into IC.

64. In an interview with the school administration, they stated they do not complete reviews of behavior incidents at the facility.

65. When asked about the seclusion rooms at the BCDT, the principal of the school stated she had never seen the seclusion room at the facility.

66. The recording of behavior incidents into IC falls under the head teacher's role as mentioned by the administration; however, this was not discussed with the head teacher.

67. Interviews consistently revealed DJJ staff are solely responsible for implementing disciplinary procedures within the BCDT.

68. Interviews indicated there is no core team trained for physical restraint as required under <u>704 KAR 7:160, Section 6</u> at the facility.

69. According to a review of Safe Schools data, there were no incidents of physical restraint or seclusion at the facility in the school year 2019-2020 until the date of the audit.

70. Students spend time with the counselor upon request either from themselves or other adults in the building to take a break, cool down and discuss the concerning behavior as indicated in interviews.

71. Staff revealed in interviews, the time out of a classroom due to a behavioral issue is not documented into IC.

CONFIDENTIAL                       BREATHITT00139921

72. A virtual walkthrough of the seclusion area showed a small room with a window where students could be viewed in the event of seclusion. The seclusion area of the school contained several items, including books, clothing items and other storage items.

73. The DJJ and educational staff both confirmed in interviews that DJJ staff receive Aikido Control Training (ACT).

74. ACT is a form of physical restraint that includes forms of prone and supine restraints

75. According to 704 KAR 7:160, Section 3(2), school personnel shall not impose prone or supine restraint on any student at any time during the school day or during school events.

76. According to interviews and a review of Safe Schools data, there has not been a behavioral event in which ACT was used. During the 2019-2020 school year.

77. The restraint and seclusion regulation defines "school personnel" to mean "teachers, principals, administrators, counselors, social workers, psychologists, paraprofessionals, nurses, librarians, school resource officers, sworn law enforcement officers and other support staff who are employed in a school or who perform services in the school on a contractual basis.

**Conclusions (704 KAR 1:760) Implementation:**

A. ACT which utilizes prone and supine physical restraint practices is forbidden by 704 KAR 7:160, Section 3.

B. When the district receives Support Education Excellence in Kentucky (SEEK) funding it assures the SEA it will comply with applicable school laws and regulations. Therefore, the district has the responsibility of ensuring the MOA with DJJ adheres to the state's regulations on physical restraint and seclusion.

C. The inappropriate use of physical restraint or seclusion, including ACT, during school hours, could also result in a denial of FAPE for students with disabilities.

D. However, evidence reviewed indicated there were no physical restraints which utilized ACT. Additionally, no physical restraints or seclusions were documented at the facility during the 2019-2020 and 2020-2021 school years.

E. The BCDT staff does not participate in state mandated training required of other district staff related to physical restraint and seclusion as defined in 704 KAR 7:160, Section 6.

F. The BCDT does not maintain a qualified and trained core team as mandated in 704 KAR 7:160, Section 6 (3).

G. The area designated for seclusions at the BCDT fails to meet the minimum requirements under 704 KAR 7:160, Section 4 (4) (a) which states, "A setting used for seclusion shall: be free of objects and fixtures with which a student could inflict physical harm to self or others".

H. Therefore, the BCDT and the Breathitt County School District are **in violation** of 704 KAR 7:160.

CONFIDENTIAL                                                                 BREATHITT00139922



I.    Furthermore, the BCDT and the Breathitt County School District are **in violation** of board policy for physical restraint and seclusion as defined under <u>Breathitt County Board Policy 09.2212</u> which details specific district requirements for physical restraint and seclusion, including training requirements for all school personnel, core team requirements and required procedures that must occur during and after the occurrence of a physical restraint or seclusion.

## INDICATOR PA-5:

*How is it ensured all IEP requirements are met for students with disabilities in the facility? Do ARCs comply with the requirement to consider:*
- *the special factors relating to positive behavior interventions and supports, and*
- *other strategies to address behavior in developing, reviewing and revising IEPs of students with disabilities in correctional facilities, whose behavior impedes the students' learning or that of others?*

## Relevant Information

The special factors that the ARC must consider in developing, reviewing and revising the IEP of each student with a disability are particularly relevant to students with disabilities in correctional facilities. Among these special factors is the requirement for the IEP Team to consider the use of positive behavioral interventions and supports and other strategies to address behavior in the case of a student whose behavior impedes his or her learning or the learning of others (<u>707 KAR 1:320, Section 5 (2) (a)</u>). Appropriate implementation of these positive behavioral interventions and supports and other strategies to address behavior should ensure the student can benefit from his or her educational program in the correctional facility and hasten the student's transition from the facility and re-entry into the community.

## Findings of Fact (Indicator PA-5):

78.    All the above Findings of Facts and Conclusions are incorporated herein by reference.
79.    According to staff interviews, students were made aware of facility expectations upon intake.
80.    Interviews revealed DJJ and educational staff reviewed all individual student's behavior data in weekly team meetings and adjusted their behavior goals based on student needs.  However, these meetings were not held during COVID-19 due to building restrictions.
81.    In three of the nine student due process records (33%) reviewed indicated special factors regarding behavior did not include positive behavior interventions and supports within their IEP.
82.    Interventions in six of the nine student due process records (67%) included but not limited to positive feedback, direct instruction in appropriate replacement behaviors and social skills strategies.

CONFIDENTIAL                                                                                    BREATHITT00139923



83. In nine of the nine student due process records (100%) reviewed did not document the student's progress toward their annual goals.
84. Multiple student-specific violations were present in the review of student records. Those violations are listed in Appendix B and are incorporated herein by reference.

## Conclusions (Indicator PA-5):

A. Both student-specific and systemic violations of the IDEA were present in student records
B. The BCDT did not consistently document positive behavioral interventions and supports and other strategies to address student's behavior in the Special Factors section of the IEP as required by 707 KAR 1:320, Section 5 (2) (a).
C. The lack of progress monitoring data in student record reviews suggests the BCDT and the Breathitt County School District failed to ensure all IEP requirements were met for students with disabilities in the facility.
D. Without progress data, ARCs cannot make appropriate adjustments to student IEPs.
E. Additionally, the lack of progress data calls into question whether progress data were reviewed regularly as was suggested in interviews.
F. As such, the BCDT and Breathitt County School District are **in violation** of the requirements PA-5.

## INDICATOR PA-6:

*How is it ensured all least restrictive environment (LRE) requirements are met for students with disabilities in correctional facilities, including that a continuum of alternative placements is available, to the extent necessary to implement the student's IEP?*

## Relevant Information:

Guidance from the OSEP is clear. The IDEA requirements related to LRE apply to the education of students with disabilities within correctional facilities. It is *solely* the responsibility of the ARC to make *individualized* placement decisions and not routinely place all students with disabilities in the same setting. (707 KAR 1:350 Section 1)

While co-teaching classes may be appropriate for many students in a KECSAC facility, there still must be a continuum of placement options available to ensure the needs of all students are met, including more restrictive settings when needed.

## Findings of Fact (Indicator PA-6):

85. All the above Findings of Facts and Conclusions are incorporated herein by reference.
86. The Breathitt County School District Special Education Procedures stated, "The BCSD shall ensure that a continuum of alternative placements is available to meet the needs of children with disabilities for special education and related services."

CONFIDENTIAL    BREATHITT00139924



87.   Staff interviews indicated all students, including students with disabilities, participated in general education classes with co-teaching services.

88.   It was revealed in interviews and a review of student due process records, upon enrollment to the BCDT, all IEPs were amended to change the LRE to the general education classroom with co-teaching services.

89.   Interviews and a virtual walkthrough demonstrated students were served in a small group co-teaching environment.

**Conclusions (Indicator PA-6):**

A.   According to 707 KAR 1:350, Section 1, it is the responsibility of the LEA to ensure a continuum of alternative placements is available for all students with disabilities.

B.   It is the responsibility of the ARC to make individualized placement options and not place all students with disabilities in the general education setting for the purpose of administrative convenience.

C.   The BCDT and Breathitt County School District are **in violation** of the requirements of PA-6.

**INDICATOR PA-7:**

*How does the facility ensure that the first IEP to be in effect for a student who turns 16, or younger if determined appropriate by the ARC, and updated annually thereafter, includes appropriate measurable postsecondary goals based upon age-appropriate transition assessments related to training, education, employment and where appropriate independent living skills; and the transition services (including courses of study) needed to assist the student in reaching the goals.*

**Relevant Information:**

There are inherent difficulties associated with reentry from a correctional facility to home or another community environment. Therefore, public agencies must comply with the IDEA requirements related to secondary transition in 707 KAR 1:320, Section 7. Accordingly, beginning no later than the first IEP to be in effect when the student turns 16 (or younger if determined appropriate by the IEP Team), and updated annually thereafter, the IEP must include: (1) appropriate measurable postsecondary goals based upon age-appropriate transition assessments related to training, education, employment, and, where appropriate, independent living skills; and (2) the transition services (including courses of study) needed to assist the student in reaching those goals. Also, the public agency must invite the student with a disability to attend the student's IEP Team meeting if a purpose of the meeting will be the consideration of the postsecondary goals for the student and the transition services needed to assist the student in reaching those goals, as required in 707 KAR 1:320, Section 3 (4).

If the student does not attend the IEP Team meeting, the public agency must take other steps to ensure that the student's preferences and interests are considered. Moreover, to the extent

CONFIDENTIAL

BREATHITT00139925



appropriate, with the consent of the parents or a student who has reached the age of majority, the public agency must invite a representative of any participating agency that is likely to be responsible for providing or paying for transition services (707 KAR 1:320, Section 3 (4)). Finally, beginning not later than one year before the student reaches the age of majority under State law, the IEP must document that the student has been informed of the student's rights under the IDEA, if any, that will transfer to the student on reaching the age of majority under 707 KAR 1:320, Section 5 (14).

## Findings of Fact (Indicator PA-7):

90. All the above Findings of Facts and Conclusions are incorporated herein by reference.
91. A review of student due process records and interviews indicated the ARC documented the transfer of rights of the student at the age of majority.
92. In due process records reviewed where the student was in grade 8 or aged 14 or older, the district failed to document transition needs aligned to the ILP in two (22%) of nine IEPs.
93. In the two of the seven due process records reviewed where the student was age 16 years or older, the district failed to document an appropriate post-secondary goal.
94. Seven of nine student due process records (78%) reviewed for postsecondary transitions services failed to identify specific courses in the multi-year course of study aligned to students' individualized postsecondary goals.

## Conclusions (Indicator PA-7):

A. 707 KAR 1:320, Section 3 (4) requires a student's IEP to contain postsecondary goals and transitions.
B. 707 KAR 1:320, Section 5 (14) mandates the IEP include a statement of the student being informed of the transfer of rights under the Kentucky Administrative Regulations, at the age of majority. This shall take place one year before the student reaches the age of majority.
C. The BCDT and Breathitt County School District failed to properly document or address postsecondary transition in several instances as documented in the student's due process records.
D. Therefore, the Breathitt County School District and the BCDT are **in violation** of the requirements of Indicator PA-7.

## INDICATOR PA-8:

*How is it ensured students with disabilities in a correctional facility who violate the code of conduct are afforded the protections that must be afforded to all students with disabilities (e.g., change of placement, manifestation determinations, provision of services beginning with the 11th cumulative day of removal in a school year)?*

CONFIDENTIAL

BREATHITT00139926



**Relevant Information:**

Any exclusion from the classroom is particularly harmful to students with disabilities in correctional facilities because they often have already lost instructional time due to their involvement in the juvenile justice system. Collaboration between the correctional facility and the public agency responsible for FAPE, if a different entity, is essential to minimize behavioral incidents and avoid disciplinary exclusions from school. For students whose behavior impedes their learning or that of others, the ARC must consider behavioral intervention strategies, including the use of PBIS when developing or modifying an IEP, to reduce the need for discipline removals of students with disabilities.

Public agencies cannot avoid IDEA obligations, including the discipline procedures, by contracting, transferring or sharing with another agency. Therefore, it is expected that correctional facilities will not use discipline methods that deprive eligible students with disabilities of FAPE.

A student with a disability in a correctional facility who violates a code of student conduct is entitled to the protections afforded to all students with disabilities related to disciplinary procedures. This includes provisions related to change of placement, manifestation determinations and provision of services beginning with the 11th cumulative day of removal in a school year. These disciplinary protections apply regardless of whether a student is subject to discipline in the facility or removed to restricted settings, such as confinement to the student's cell or living quarters or "lockdown" units.

In any event, a removal that results in a denial of educational services for more than 10 consecutive school days, or a series of removals that constitute a pattern that totals more than 10 school days in a school year, constitutes a change in placement, which, in turn, requires a manifestation determination.

**Findings of Fact (Indicator PA-8):**

95. All the above Findings of Facts and Conclusions are incorporated herein by reference.
96. The district's special education policies and procedures required a manifestation determination to occur within ten school days after a change of placement due to a violation of student code of conduct.
97. According to interviews, staff are not aware of any students who have been removed from the classroom setting for more than 10 days therefore no manifestation determinations were needed.
98. Interviews with administrators revealed they knew the process of manifestation determinations but did not have the need to hold manifestation determination meetings.

**Conclusions (Indicator PA-8):**

A. The school district has outlined the procedures for a manifestation determination.

CONFIDENTIAL

BREATHITT00139927



B.    The school district has outlined policies and procedures for a manifestation determination.

C.    Therefore, the BCDT and the Breathitt County School District are **in compliance** with the requirements of PA-8.

## INDICATOR PA-9:

*How is it ensured information is disseminated to students with disabilities and their parents regarding reentry options after release (e.g., home visits, information sharing between schools and collaboration with community-based organizations)?*

**Note:** Indicator PA-9 will be reviewed by the KDE to determine the extent of implementation and to provide feedback and recommendations. However, Indicator PA-9 is not considered by the Office for Special Education Programs (OSEP) to be a compliance indicator and will not be cited by the KDE for noncompliance or required corrective action.

## Relevant Information:

Reentry services promote the effective reintegration of students back to communities upon release from correctional facilities. Evidence strongly supports the notion that juvenile offenders, both with and without disabilities, are significantly more likely to experience successful reentry into their home schools and communities if appropriate programs and supports are in place and discussed with the student prior to their release.

A comprehensive approach to reentry may include individualized reentry plans, vocational and life skills training, behavior management systems and direct academic instruction. Reentry planning supports the successful reentry of students into their communities. It has information about options that may include the student's school prior to commitment in the correctional facility, charter schools, virtual schools, evening schools, adult education programs, community colleges, alternative schools for students with specific needs, schools with a dual focus on diploma/GED and career and technical education and dual enrollment in high school/college programs.

Informing students of their options is an important part of the reentry process. Methods to disseminate information regarding reentry options may include:
- home visits;
- information sharing between schools/agencies;
- collaboration with community-based organizations;
- school expos/reengagement fairs;
- reengagement/transition centers;
- print and electronic media;
- collaboration with probation and parole practitioners from both public and private sectors; and
- community-wide campaigns.

CONFIDENTIAL    BREATHITT00139928

The IDEA's requirements related to parental engagement, record sharing among public agencies and transition planning complement these efforts.

**Findings of Fact (Indicator PA-9)**

99. All the above Findings of Fact and Conclusions are incorporated herein by reference.
100. The district provided students at the facility with the *Breathitt County Schools Resource Guide for Post-Secondary Transition Assistance.*
101. The *Breathitt County Schools Resource Guide for Post-Secondary Transition Assistance* contained vocational training, mental health supports, and other important post-secondary supports.
102. A review of the MOA between Breathitt County School District and KECSAC requires the sending district of a student to complete an Educational Passport, which includes basic demographic and academic information about the student to be transmitted via IC to the new school or facility.
103. The staff at BCDT held transition meetings with the staff at the receiving school to discuss student needs upon return to their original placement.

**Conclusions (Indicator PA-9):**

A. The BCDT has procedures in place to address student transitional needs.
B. Therefore, the BCDT and the Breathitt County School District are **in compliance** with the requirements of PA-9.

**ADDITIONAL ISSUES**

**FINDINGS OF FACT:**

104. All the above Findings of Facts and Conclusions are incorporated herein by reference.
105. Interviews indicated that while behavior events occurred at the facility, they are not entered into IC.
106. According to interviews, behavior data is documented on an excel sheet which is shared between DJJ and educational staff at BCDT.
107. Safe School data indicated the facility had zero behavioral incidents occur within the past two years.

**Conclusions:**

A. KRS 158.444 established several data collection and reporting requirements for school districts to be reported by sex, race and grade level.
B. This data is used for numerous state and federal reporting purposes, including, but not limited to, the Safe Schools Report, School and District Report Cards, Section 618 of the IDEA, The State Performance Plan (SPP) and Annual Performance Report (APR). Hence, it is important the data reporting be consistent and accurate.
C. District staff at the BCDT do not enter behavior data into IC as required.
D. Therefore, the district and the BCDT are **in violation** of KRS 158.444.

CONFIDENTIAL

BREATHITT00139929



**CORRECTIVE ACTION PLAN REQUIREMENTS**

| Language from 707 KAR 1:380, Section 1 (3), (4), (5), (6) and (7) | District Impact |
|---|---|
| Desk reviews may include:<br>  a. Review of individual children's records, including records of children served by private or state-operated schools;<br>  b. Interviews with staff;<br>  c. A survey of parents;<br>  d. Visits in schools and classrooms; and<br>  e. Other activities, including review of financial records. | This language empowers the KDE to conduct on-site visits to Kentucky school districts. |
| Following an off-site or on-site review, the Kentucky Department of Education shall issue a written report. | The KDE will issue a preliminary monitoring report following the on-site visit. |
| Deficiencies specified in the report shall be the basis for the LEA to develop a corrective action plan (CAP) for review and approval by the Kentucky Department of Education. | **The date the district receives the preliminary report is the beginning of the one-year correction timeline discussed below.** |
| Prior to the development of the CAP, the LEA shall have the opportunity to submit additional information to verify or clarify issues related to the report. Each CAP shall be monitored and enforced by the Kentucky Department of Education. | The district will be given two calendar weeks from the receipt of the preliminary report to submit any additional information to verify or clarify issues related to the report.<br><br>Neither federal nor state regulations include provisions to allow an "appeal" of a monitoring report. The KDE will consider any additional information provided by the district.<br><br>A final report will be issued following the KDE's review of any additional information submitted by the district. |

CONFIDENTIAL

BREATHITT00139930



| Language from 707 KAR 1:380, Section 1 (3), (4), (5), (6) and (7) | District Impact |
|---|---|
| A CAP shall be submitted to the Kentucky Department of Education no later than 30 business days after the LEA receives the [preliminary] report of noncompliance. | OSEP Memorandum 09-02 specifies the one-year timeframe for correction of noncompliance begins on the date the district is notified in writing of the findings of noncompliance.<br><br>**This means delivery of the preliminary report is the start date for the CAP timeline, not the date the final report is issued.**<br><br>Technical assistance to address any identified systemic issues will be offered to the district through the DIMR and the regional special education cooperative.<br><br>The district will be contacted within two weeks after the report is issued to discuss options to assist the district. |
| The CAP shall include:<br>  a. A statement of the matter to be corrected; and<br>  b. The steps the LEA shall take to correct the problem and document compliance. | The district will be provided a template for developing and submitting the CAP. |

CONFIDENTIAL

BREATHITT00139931



| Language from 707 KAR 1:380, Section 1 (3), (4), (5), (6) and (7) | District Impact |
|---|---|
| Within 30 business days of receiving the CAP, the Kentucky Department of Education shall notify the LEA of the status of the CAP. If the Kentucky Department of Education rejects the CAP, the LEA shall have 15 business days to submit a new CAP. | Staff from the DIMR will review the contents of the CAP and inform the district if the CAP is approvable. If the CAP is rejected, the district shall be given 15 business days to submit a new CAP. **Note**: Business day is defined in 707 KAR 1:002, Section 1 (6) to mean Monday through Friday except for federal and state holidays. Technical assistance from the DIMR will be provided to help ensure the first CAP submitted by the district will be in approvable form. |
| Any CAP approved by the Kentucky Department of Education shall be monitored and shall be an official document requiring the LEA to meet the specified activities. The Kentucky Department of Education shall not initiate further sanctions during the time period specified in the CAP unless requested by the LEA. | CAP implementation requirements and recommendations are discussed in the next section below. |
| Any noncompliance verified by monitoring shall be corrected within 12 months from the date of the notification to the LEA of the noncompliance. | This timeline is established in both federal and state regulations. OSEP Memorandum 09-02 states, "…noncompliance must be corrected as soon as possible but in no case more than one year from identification (e.g., the date on which the State provided written notification to the LEA or EIS program of the noncompliance." |

CONFIDENTIAL                                                                     BREATHITT00139932



## ADDITIONAL CAP INFORMATION

The following items should help the district understand the process of CAP development, implementation, and closure.

1.  Within two business days after the monitoring report has been issued, the DIMR CAP lead, either by telephone, or email will contact the DoSE to walk them through the process and answer general questions about the report or CAP process.

2.  As part of the CAP process, the district must first conduct a root cause analysis to discover the source of the problem areas so that appropriate corrective action activities can be developed to assist the district in achieving systemic compliance. Staff from the DIIP and the special education cooperative will be available to assist.

3.  To meet the one calendar year timeline for correction, the provision of technical assistance to staff cannot wait until summer or scheduled professional development days.

4.  All training activities must be KDE approved.

5.  The KDE expects all technical assistance including training must be provided to staff before convening ARC meetings to correct student-specific and systemic findings of noncompliance.

6.  Before the CAP can be closed, all corrections of student-specific findings of noncompliance must be corrected and all comparison records submitted must be in compliance in the previously determined areas of need. If all comparison records are not in compliance, they must be corrected, and additional comparison records must be submitted. This process will continue until all records reviewed are in compliance. **The CAP cannot be closed until 100% of the comparison records reviewed are in compliance.**

7.  The CAP template document the district will receive is designed to include monthly updates to assist the district and the CAP lead in the correction of all noncompliance within the established one calendar year timeline..

CONFIDENTIAL                                                                                    BREATHITT00139933



**APPENDIX A – COMPLIANCE RECORD REVIEW ITEMS EXAMINED**

| Items Reviewed from Compliance Record Review Document | | Regulatory Requirement |
|---|---|---|
| **Item Number** | **Compliance Requirement** These items correlate with the OSEP Related Requirements Document for SPP/APR Indicators 4A and 4B. | |
| 14. | For students who are in 8th grade or age 14 and older: the student is invited to the [ARC] meeting. **NOTE:** This requirement applies to a student who has reached the age of 14 and has not reached 8th grade. | 707 KAR 1:320, Section 3 (4) |
| 15 | Parent in attendance, OR In cases where the parent did not attend, documentation shows that all the following occurred: Parents were provided written notification of the meeting. Parents were provided notification of the meeting through multiple means. Parents were offered alternative meeting times and locations. Parents were given the opportunity for alternate means of participation (informal conference, phone or video conferencing, e-mail, home visit, initial or reevaluation parent rating scales) Parents were sent a copy of the IEP and Conference Summary Report (as indicated on the Conference Summary Report by method and date). | 707 KAR 1:320, Section 3 and 4 707 KAR 1:340, Section 1 |
| 16. | A regular education teacher of the student [is in attendance at the ARC meeting]. | 707 KAR 1:320, Section 3 (1) (b) |
| 17. | A special education teacher of the child, OR a special education teacher knowledgeable of the suspected disability | 707 KAR 1:320, Section 3 (1) (c) |
| 18. | A representative of the school district, qualified to provide or supervise the provision | 707 KAR 1:320, Section 3 (1) (d) |

CONFIDENTIAL

BREATHITT00139934



| Items Reviewed from Compliance Record Review Document | | Regulatory Requirement |
|---|---|---|
| | of specially designed instruction, knowledgeable of the curriculum and district resources | |
| 19. | An individual who can interpret the instructional implications of evaluation results which may be a member of the team described in sixteen through eighteen (16-18) | 707 KAR 1:320, Section 3 (1) (e) |
| 20. | Related services personnel, as appropriate | 707 KAR 1:320, Section 3 (1) (g) |
| 21. | For children who are in 8th grade or age 14 and older, the child is involved in the ARC process relative to transition planning. Documentation shows that the following occurred: The student attended the meeting OR If the student did not attend, other steps were taken to ensure that the student's preferences and interests were considered. | 707 KAR 1:320, Section 4 (3) |
| 22. | If a member of the ARC is dismissed from attending the ARC meeting in whole or in part, the parent and the district agree to the dismissal in writing prior to the meeting. | 707 KAR 1:320, Section 3 (2) |
| 23. | If a member of the ARC is dismissed, the member must submit input into the development of the IEP in writing to the parent(s) and the ARC, if the member's area of curriculum or related service is to be modified or discussed in the meeting. Input must be submitted prior to the meeting. | 707 KAR 1:320, Section 3 (3) |
| 32. | The ARC conducts a review of the IEP **annually** (within the calendar year) to determine whether the annual goals of the student are being achieved and revises the IEP as appropriate. | 707 KAR 1:320, Section 2 (6) (a) and (b) |
| 33. | The student's Present Levels of Academic Achievement and Functional Performance (Present Levels) including how the disability affects involvement and progress in the | 707 KAR 1:320, Section 5 (1) (a) and Section 7 (1) |

CONFIDENTIAL

BREATHITT00139935



| Items Reviewed from Compliance Record Review Document | | Regulatory Requirement |
|---|---|---|
| | general curriculum (or for preschool, participation in appropriate activities). OR The area is marked commensurate with peers, or not an area of concern. | |
| 33a. | Communication Status | |
| 33b. | Academic Performance | |
| 33c. | Health/Vision/Hearing /Motor Abilities | |
| 33d. | Social Emotional Status | |
| 33e | General Intelligence | |
| 33f. | Functional Vision/Learning Media Assessment | |
| 33g. | Functional Hearing, Listening and Communication Assessment | |
| 34. | Transition Needs (for children in 8th grade or age 14 and older) NOTE: There must be a minimum of one area (instruction; related service; community experience; development of employment and other postsecondary adult living objectives; and, if appropriate, acquisition of daily living skills and provision of a functional vocational evaluation) addressed. It must align with the child's ILP. | 704 KAR 3:305 707 KAR 1:320, Section 7 |
| 35. | A summary statement, included in the Present Levels, of how the student's disability affects the student's involvement and progress in the general curriculum. | 707 KAR 1:320, Section 5 (5) (b) |
| 36. | Consideration of Special Factors are completed for the following areas and are consistent with information provided in the Present Levels. The ARC shall include a statement on the IEP indicating the needs for a particular device or service for any areas of concern. | 707 KAR 1:320, Section 5 (5) (c) |
| 36a. | Behavior | 707 KAR 1:320, Section 5 (2) |

CONFIDENTIAL

BREATHITT00139936



| Items Reviewed from Compliance Record Review Document | | Regulatory Requirement |
|---|---|---|
| 36b. | Limited English Proficiency | |
| 36c. | Blind or visually impaired | |
| 36d. | Communication needs | |
| 36e. | Deaf or hard of hearing | |
| 36f. | Assistive technology needs | |
| 37. | Statement of measurable annual goals | 707 KAR 1:320, Section 5 (7) (b) |
| 38. | Evidence of progress data collection and analysis for each annual goal to show how the child's progress toward meeting the annual goals was measured. | 707 KAR 1:320, Section 5 (7) (b) |
| 39. | Statement of Specially Designed Instruction (SDI) for each measurable annual goal. | 707 KAR 1:320, Section 5 (8) |
| 41. | Statement of Supplementary Aids and Services (SAS)<br>• advance appropriately toward attaining the annual goals | 707 KAR 1:320 Section 5 (5) (b) |
| 44. | Statement of program modifications and supports for school personnel to be provided to the student to:<br>• advance appropriately toward attaining the annual goals<br>• be involved in the general curriculum<br>• participate in extracurricular and other nonacademic activities, and<br>• be educated and participate with other students with or without disabilities | 707 KAR 1:320, Section 5 (8) |
| 45a. | An explanation of the extent, if any, to which the student will not participate with nondisabled students in regular education classes | 707 KAR 1:320, Section 5 (9) |
| 45b. | The ARC considered potentially harmful effects of the placement on the student or the quality of services. | 707 KAR 1:350, Section 1 (8) |
| 45c. | Documentation shows that removal of the student from the regular education environment occurred only if education in the regular education environment with the use of | 707 KAR 1:350, Section 1 (1) |

CONFIDENTIAL

BREATHITT00139937



| Items Reviewed from Compliance Record Review Document | Regulatory Requirement |
|---|---|
| supplementary aids and services could not be satisfactorily achieved due to the nature or severity of the disability.<br>Notes:<br>● Documentation shows that placement in regular class was the first placement option considered<br>● This includes a statement for the reason's services cannot be provided in the regular educational environment | |
| 46. Special Education Services to include:<br>● projected date of the beginning of the services and modifications listed on the IEP<br>● anticipated frequency,<br>● location (whether regular or special education), and<br>● duration of the services and modifications | 707 KAR 1:320, Section 5 (12) |
| 47. Related Services to include:<br>● projected date of the beginning of the services and modifications listed on the IEP<br>● anticipated frequency<br>● location and<br>● duration of the services and modifications | 707 KAR 1:320, Section 5 (12) |
| 50. For students in the 8th grade or age 14 and older, the student has a multi-year course of study needed to assist the student in reaching postsecondary goals. | 707 KAR 1:320, Section 7 (1). |

CONFIDENTIAL

BREATHITT00139938



## APPENDIX B – REVIEW OF STUDENT-SPECIFIC RECORDS

Only items that did not meet compliance standards are included below. Items listed in Appendix A, which were not included below, were found to be compliant during the review.

### STUDENT #1 FINDINGS:

The following record review items did not meet required compliance standards:

- **#21.** The ARC did not include all relevant members during the meeting. The student, who is in 8th grade or age 14 and older, was not involved in the ARC process relevant to transition planning.
- **#33b.** The student's Present Levels of Academic Achievement and Functional Performance (Present Levels) did not include how the disability affects involvement and progress in the general curriculum. The statement in the area of Academic Performance did not include the strengths, areas of concerns supported by data and results of any current state or district-wide assessments or recent evaluation/IEP progress monitoring data.
- **#33e.** The student's Present Level did not include how the disability affects involvement and progress in the general curriculum. The statement in the area of General Intelligence did not include the strengths, areas of concerns supported by data and results of any current state or district-wide assessments or recent evaluation/IEP progress monitoring data.
- **#35.** The ARC did not include a summary statement of how the child's disability affects the child's involvement and progress in the general curriculum.
- **36a.** The ARC did not include the Consideration of Special Factors in the area of Behavior.
- **#38.** The ARC did not include progress data collection and analysis for each annual goal.
- **#45c.** The ARC did not include documentation that removal of the student from the regular education environment occurs only if education in the regular education environment with the use of SAS cannot be satisfactorily achieved.
- **#46d.** The ARC did not include the anticipated location of special education services.

### STUDENT #1 REQUIRED CORRECTIVE ACTION:

The District must submit documentation to verify all findings of noncompliance have been appropriately corrected pertaining to:

- Item #21
- Item #33b
- Item #33e
- Item #35

CONFIDENTIAL

BREATHITT00139939



- Item #36a
- Item #38
- Item #45c
- Item #46d

## STUDENT #2 FINDINGS:

The following record review items did not meet required compliance standards:

- **#21.** The ARC did not include all relevant members during the meeting. The student, who is in 8th grade or age 14 and older, was not involved in the ARC process relevant to transition planning.
- **#33c.** The student's Present Level did not include how the disability affects involvement and progress in the general curriculum. The statement in the area of Health/Vision/Motor/Hearing Abilities did not include the strengths, areas of concerns supported by data and results of any current state or district-wide assessments or recent evaluation/IEP progress monitoring data.
- **#33d.** The student's Present Level did not include how the disability affects involvement and progress in the general curriculum. The statement in the area of Social and Emotional Status did not include the strengths, areas of concerns supported by data and results of any current state or district-wide assessments or recent evaluation/IEP progress monitoring data.
- **#33e.** The student's Present Level did not include how the disability affects involvement and progress in the general curriculum. The statement in the area of General Intelligence did not include the strengths, areas of concerns supported by data and results of any current state or district-wide assessments or recent evaluation/IEP progress monitoring data.
- **#35.** The ARC did not include a summary statement of how the child's disability affects the child's involvement and progress in the general curriculum.
- **#38.** The ARC did not include progress data collection and analysis for each annual goal.
- **#45c.** The ARC did not include documentation that a removal of the student from the regular education environment occurs only if education in the regular education environment with the use of SAS cannot be satisfactorily achieved.
- **#46d.** The ARC did not include the anticipated location of special education services.
- **#50.** For students in the 8th grade or aged 14 and older, the ARC did not include a multi-year course of study to assist the student in reaching postsecondary goals.

CONFIDENTIAL

BREATHITT00139940



## STUDENT #2 REQUIRED CORRECTIVE ACTION:

The District must submit documentation to verify all findings of noncompliance have been appropriately corrected pertaining to:

- Item #21
- Item #33c
- Item #33e
- Item #35
- Item #36a
- Item #38
- Item #45c
- Item #46d
- Item #49
- Item #50

## STUDENT #3 FINDINGS:

The following record review items did not meet required compliance standards:

- **#21.** The ARC did not include all relevant members during the meeting. The student, who is in 8th grade or age 14 and older, was not involved in the ARC process relevant to transition planning.
- **#33a.** The student's Present Level did not include how the disability affects involvement and progress in the general curriculum. The statement in the area of Communication Status did not include the strengths, areas of concerns supported by data and results of any current state or district-wide assessments or recent evaluation/IEP progress monitoring data.
- **#33b.** The student's Present Level did not include how the disability affects involvement and progress in the general curriculum. The statement in the area of Academic Performance did not include the strengths, areas of concerns supported by data and results of any current state or district-wide assessments or recent evaluation/IEP progress monitoring data.
- **#33d.** The student's Present Level did not include how the disability affects involvement and progress in the general curriculum. The statement in the area of Social and Emotional Status did not include the strengths, areas of concerns supported by data and results of any current state or district-wide assessments or recent evaluation/IEP progress monitoring data.
- **#33e.** The student's Present Level did not include how the disability affects involvement and progress in the general curriculum. The statement in the area of General Intelligence did not include the strengths, areas of concerns supported by data and results of any current state or district-wide assessments or recent evaluation/IEP progress monitoring data.

CONFIDENTIAL

BREATHITT00139941



- **#35.** The ARC did not include a summary statement of how the child's disability affects the child's involvement and progress in the general curriculum.
- **#36d.** The ARC did not include the Consideration of Special Factors in the area of Communication Needs.
- **#37.** The ARC did not include a statement of measurable annual goals related directly to the Present Levels.
- **#38.** The ARC did not include progress data collection and analysis for each annual goal.
- **#46d.** The ARC did not include the anticipated location of special education services.
- **#47d.** The ARC did not include the anticipated location of related services.
- **#50.** For students in the 8th grade or aged 14 and older, the ARC did not include a multi-year course of study to assist the student in reaching postsecondary goals.

**STUDENT #3 REQUIRED CORRECTIVE ACTION:**

The District must submit documentation to verify all findings of noncompliance have been appropriately corrected pertaining to:

- Item #15
- Item #19
- Item #21
- Item #33a
- Item #33b
- Item #33e
- Item #34
- Item #35
- Item #36d
- Item #37
- Item #38
- Item #46d
- Item #47d
- Item #50

**STUDENT #4 FINDINGS:**

The following record review items did not meet required compliance standards:

- **#21.** The ARC did not include all relevant members during the meeting. The student, who is in 8th grade or age 14 and older, was not involved in the ARC process relevant to transition planning.
- **#33b.** The student's Present Level did not include how the disability affects involvement and progress in the general curriculum. The statement in the area of Academic Performance did not include the strengths, areas of concerns supported by data and results of any current state or district-wide assessments or recent evaluation/IEP progress monitoring data.

CONFIDENTIAL    BREATHITT00139942



- **#33c.** The student's Present Level did not include how the disability affects involvement and progress in the general curriculum. The statement in the area of Health/Vision/Motor/Hearing Abilities did not include the strengths, areas of concerns supported by data and results of any current state or district-wide assessments or recent evaluation/IEP progress monitoring data.
- **#33d.** The student's Present Level did not include how the disability affects involvement and progress in the general curriculum. The statement in the area of Social and Emotional Status did not include the strengths, areas of concerns supported by data and results of any current state or district-wide assessments or recent evaluation/IEP progress monitoring data.
- **#33e.** The student's Present Level did not include how the disability affects involvement and progress in the general curriculum. The statement in the area of General Intelligence did not include the strengths, areas of concerns supported by data and results of any current state or district-wide assessments or recent evaluation/IEP progress monitoring data.
- **#35.** The ARC did not include a summary statement of how the child's disability affects the child's involvement and progress in the general curriculum.
- **#37.** The ARC did not include a statement of measurable annual goals related directly to the Present Levels.
- **#38.** The ARC did not include progress data collection and analysis for each annual goal.
- **#45c.** The ARC did not include documentation that a removal of the student from the regular education environment occurs only if education in the regular education environment with the use of SAS cannot be satisfactorily achieved.
- **#46d.** The ARC did not include the anticipated location of special education services.
- **#50.** For students in the 8th grade or aged 14 and older, the ARC did not include a multi-year course of study to assist the student in reaching postsecondary goals.

## STUDENT #4 REQUIRED CORRECTIVE ACTION:

The District must submit documentation to verify all findings of noncompliance have been appropriately corrected pertaining to:

- Item #21
- Item #33b
- Item #33c
- Item #33d
- Item #33e
- Item #35
- Item #37
- Item #38
- Item #45c

CONFIDENTIAL                                                                        BREATHITT00139943



- Item #46d
- Item #50

## STUDENT #5 FINDINGS:

The following record review items did not meet required compliance standards:

- **#21.** The ARC did not include all relevant members during the meeting. The student, who is in 8th grade or age 14 and older, was not involved in the ARC process relevant to transition planning.
- **#33d.** The student's Present Level did not include how the disability affects involvement and progress in the general curriculum. The statement in the area of Social and Emotional Status did not include the strengths, areas of concerns supported by data and results of any current state or district-wide assessments or recent evaluation/IEP progress monitoring data.
- **#33e.** The student's Present Level did not include how the disability affects involvement and progress in the general curriculum. The statement in the area of General Intelligence did not include the strengths, areas of concerns supported by data and results of any current state or district-wide assessments or recent evaluation/IEP progress monitoring data.
- **#35.** The ARC did not include a summary statement of how the child's disability affects the child's involvement and progress in the general curriculum.
- **#37.** The ARC did not include a statement of measurable annual goals related directly to the Present Levels.
- **#38.** The ARC did not include progress data collection and analysis for each annual goal.
- **#46d.** The ARC did not include the anticipated location of special education services.
- **#50.** For students in the 8th grade or aged 14 and older, the ARC did not include a multi-year course of study to assist the student in reaching postsecondary goals.

## STUDENT #5 REQUIRED CORRECTIVE ACTION:

The District must submit documentation to verify all findings of noncompliance have been appropriately corrected pertaining to:

- Item #21
- Item #33d
- Item #33e
- Item 35
- Item #37
- Item #38
- Item #46d
- Item #50

CONFIDENTIAL     BREATHITT00139944



## STUDENT #6 FINDINGS:

The following record review items did not meet required compliance standards:

- **#21.** The ARC did not include all relevant members during the meeting. The student, who is in 8th grade or age 14 and older, was not involved in the ARC process relevant to transition planning.
- **#38.** The ARC did not include progress data collection and analysis for each annual goal.
- **#39.** The ARC did not include a statement of Specially Designed Instruction (SDI) for each annual goal.
- **#44.** The ARC did not include a statement of Program Modifications and Supports for School Personnel.
- **#45b.** The ARC did not consider potentially harmful effects of the placement on the student.
- **#45c.** The ARC did not include documentation that a removal of the student from the regular education environment occurs only if education in the regular education environment with the use of SAS cannot be satisfactorily achieved.
- **#47a**. The ARC did not include the anticipated frequency for related services
- **#47b.** The ARC did not include the anticipated amount of time for related services.
- **#47c**. The ARC did not include projected beginning and ending dates for related services
- **#47d**. The ARC did not include the anticipated location of related services
- **#50.** For students in the 8th grade or aged 14 and older, the ARC did not include a multi-year course of study to assist the student in reaching postsecondary goals.

## STUDENT #6 REQUIRED CORRECTIVE ACTION:

The District must submit documentation to verify all findings of noncompliance have been appropriately corrected pertaining to:

- Item #21
- Item #38
- Item #44
- Item #45b
- Item #45c
- Item #47a
- Item #47b
- Item #47c
- Item #47d
- Item #50

CONFIDENTIAL

BREATHITT00139945



## STUDENT #7 FINDINGS:

The following record review items did not meet required compliance standards:

- **#21.** The ARC did not include all relevant members during the meeting. The student, who is in 8th grade or age 14 and older, was not involved in the ARC process relevant to transition planning.
- **#37.** The ARC did not include a statement of measurable annual goals related directly to the Present Levels.
- **#38.** The ARC did not include progress data collection and analysis for each annual goal.
- **#45b.** The ARC did not consider potentially harmful effects of the placement on the student.
- **#50.** For students in the 8th grade or aged 14 and older, the ARC did not include a multi-year course of study to assist the student in reaching postsecondary goals.

## STUDENT #7 REQUIRED CORRECTIVE ACTION:

The District must submit documentation to verify all findings of noncompliance have been appropriately corrected pertaining to:

- Item #21
- Item #37
- Item #38
- Item #45b
- Item #50

## STUDENT #8 FINDINGS:
The following record review items did not meet required compliance standards:

- **#21.** The ARC did not include all relevant members during the meeting. The student, who is in 8th grade or age 14 and older, was not involved in the ARC process relevant to transition planning.
- **#33c.** The student's Present Level did not include how the disability affects involvement and progress in the general curriculum. The statement in the area of Health/Vision/Motor/Hearing Abilities did not include the strengths, areas of concerns supported by data and results of any current state or district-wide assessments or recent evaluation/IEP progress monitoring data.
- **#33e.** The student's Present Level did not include how the disability affects involvement and progress in the general curriculum. The statement in the area of General Intelligence did not include the strengths, areas of concerns supported by data and results of any current state or district-wide assessments or recent evaluation/IEP progress monitoring data.
- **#36a.** The ARC did not include the Consideration of Special Factors in the area of

CONFIDENTIAL

BREATHITT00139946



Behavior.

- **#38.** The ARC did not include progress data collection and analysis for each annual goal.
- **#45a.** The ARC did not include an explanation of the extent to which the student will not participate with non-disabled peers in regular education classes.
- **#45b.** The ARC did not consider potentially harmful effects of the placement on the student.
- **#45c.** The ARC did not include documentation that a removal of the student from the regular education environment occurs only if education in the regular education environment with the use of SAS cannot be satisfactorily achieved.
- **#47a**. The ARC did not include the anticipated frequency for related services.

**STUDENT #8 REQUIRED CORRECTIVE ACTION:**
The District must submit documentation to verify all findings of noncompliance have been appropriately corrected pertaining to:

- Item #21
- Item #33c
- Item #33e
- Item #36a
- Item #38
- Item #45a
- Item #45b
- Item #45c
- Item #47a
- Item #49

**STUDENT #9 FINDINGS:**
The following record review items did not meet required compliance standards:

- **#21** The ARC did not include all relevant members during the meeting. The student, who is in 8th grade or age 14 and older, was not involved in the ARC process relevant to transition planning.
- **#33b.** The student's Present Level did not include how the disability affects involvement and progress in the general curriculum. The statement in the area of Academic Performance did not include the strengths, areas of concerns supported by data and results of any current state or district-wide assessments or recent evaluation/IEP progress monitoring data.
- **#33c.**The student's Present Level did not include how the disability affects involvement and progress in the general curriculum. The statement in the area of Health/Vision/Motor/Hearing Abilities did not include the strengths, areas of concerns supported by data and results of any current state or district-wide assessments or recent

CONFIDENTIAL

BREATHITT00139947



evaluation/IEP progress monitoring data.

- **#33d.** The student's Present did not include how the disability affects involvement and progress in the general curriculum. The statement in the area of Social and Emotional Status did not include the strengths, areas of concerns supported by data and results of any current state or district-wide assessments or recent evaluation/IEP progress monitoring data.
- **#36a.** The ARC did not include the Consideration of Special Factors in the area of Behavior.
- **#37.** The ARC did not include a statement of measurable annual goals related directly to the Present Levels.
- **#38.** The ARC did not include progress data collection and analysis for each annual goal.
- **#45b.** The ARC did not consider potentially harmful effects of the placement on the student.
- **#45c.** The ARC did not include documentation that a removal of the student from the regular education environment occurs only if education in the regular education environment with the use of SAS cannot be satisfactorily achieved.
- **#46d.** The ARC did not include the anticipated location of special education services.
- **#47a.** The ARC did not include the anticipated frequency of related services.
- **#50.** For students in the 8th grade or aged 14 and older, the ARC did not include a multi-year course of study to assist the student in reaching postsecondary goals.

**STUDENT #9 REQUIRED CORRECTIVE ACTION:**
The District must submit documentation to verify all findings of noncompliance have been appropriately corrected pertaining to:

- Item #21
- Item #33b
- Item #33c
- Item #33d
- Item #36a
- Item #37
- Item #38
- Item #45b
- Item #45c
- Item #46d
- Item #47a
- Item #50

CONFIDENTIAL

BREATHITT00139948