[*Submitting Counsel on Signature Page*]

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case No. 4:22-md-03047-YGR |
| THIS DOCUMENT RELATES TO: | **STATE ATTORNEYS GENERAL'S RESPONSE TO META'S MOTION TO EXCLUDE AND/OR STRIKE EXPERT TESTIMONY OF CARL SABA** |
| 4:23-cv-05448 | Judge: Hon. Yvonne Gonzalez Rogers |
| | Magistrate Judge: Hon. Peter H. Kang |

**TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................... 1

II.   LEGAL STANDARD............................................................................................... 1

III.  ARGUMENT ........................................................................................................... 1

    A.   Saba's Opinions Are Reliable. ...................................................................... 1

    B.   Meta's Arguments in Section V of Its Motion Misstate Saba's Opinions....................... 6

    C.   Meta's Legal Arguments Are Erroneous and Premature. ............................... 7

IV.   CONCLUSION ...................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
738 F.3d 960 (9th Cir. 2013).................................................................................. 4

*Am. Nat'l Univ. of Ky. v. Commonwealth*,
2019 WL 2479608 (Ky. Ct. App. 2019) ............................................................... 7, 8

*BBK Tobacco & Foods LLP v. Cent. Coast Agric. Inc.*,
615 F. Supp. 3d 982 (D. Ariz. 2022).................................................................... 3

*Brown v. Google, LLC*,
2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) .................................................... 7

*City of Pomona v. SQM N. Am. Corp.*,
750 F.3d 1036 (9th Cir. 2014)............................................................... 1, 2, 3

*Com. ex. rel Conway v. Thompson*,
300 S.W.3d 152 (Ky. 2009) ................................................................................. 10

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ............................................................................................. 1

*Elosu v. Middlefork Ranch Inc.*,
26 F.4th 1017 (9th Cir. 2022) ......................................................................... 1, 3

*Engilis v. Monsanto Co.*,
151 F.4th 1040 (9th Cir. 2025) ........................................................................ 1, 2

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
618 F.3d 1025 (9th Cir. 2010)............................................................................ 4, 6

*In re ConAgra Foods, Inc.*,
302 F.R.D. 537 (C.D. Cal. 2014) ........................................................................ 5, 6

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ...................................................................................... 10

*May Dep't Stores Co. v. State ex rel. Woodard*,
863 P.2d 967 (Colo. 1993) ................................................................................. 8

*Meshinksy v. Nichols Yacht Sales, Inc.*,
541 A.2d 1063 (1988) .......................................................................................... 8

*People ex rel. Kennedy v. Beaumont*,
3 Cal. Rptr. 3d 429 (Cal. Ct. App. 2003) .......................................................... 8

*People v. Ashford Univ., LLC*,
319 Cal. Rptr. 3d 132 (Cal. Ct. App. 2024) ...................................................... 8

*People v. Dollar Rent-a-Car Systems, Inc.*,
211 Cal. App. 3d 119 (1989)............................................................................... 7

*People v. Superior Ct.*,
9 Cal. 3d 283 (1973) .................................................................................................... 8

*Platkin v. Kizito*,
337 A.3d 354 (2025) .................................................................................................... 10

*SEC v. JT Wallenbrock & Associates*,
440 F.3d 1109 (9th Cir. 2006) ..................................................................................... 9

*SiteLock LLC v. GoDaddy.com LLC*,
562 F. Supp. 3d 283 (D. Ariz. 2022) ........................................................................... 6

*U.S. ex rel. Jordan v. Northrop Grumman Corp.*,
2003 WL 27366224 (C.D. Cal. Jan. 6, 2003) .............................................................. 5

*U.S. for Use & Benefit of Bergelectric Corp. v. Sauer, Inc.*,
2020 WL 470273 (N.D. Cal. Jan. 29, 2020) ............................................................... 6

*U.S. v. Diaz*,
876 F.3d 1194 (9th Cir. 2017) ..................................................................................... 7

**Statutes**

Cal. Gov't Code § 12527.6 ................................................................................................. 10

Ky. Rev. Stat. § 15.020 ...................................................................................................... 10

N.J. Stat. Ann. § 56:8-8 ...................................................................................................... 10

STATE ATTORNEYS GENERAL'S RESPONSE TO META'S MOTION TO EXCLUDE AND/OR STRIKE EXPERT TESTIMONY OF
CARL SABA
4:22-md-03047-YGR; 4:23-CV-05448-YGR

## I.    INTRODUCTION

The State Attorneys General's economic remedies expert, Carl Saba, is qualified to render his opinions and supports his opinions with ample facts and data, reasoned judgment, and reliable methods. Meta does not advance arguments that warrant exclusion under Rule 702 but instead mischaracterizes Saba's opinions and the record; argues factual disputes or disagreements between experts that go to weight rather than admissibility; and asserts erroneous legal arguments unrelated to the reliability of Saba's opinions. This Court should deny Meta's motion.

## II.    LEGAL STANDARD

In assessing a Rule 702 motion, "[t]he court's role is to determine 'the scientific validity' of an expert's 'principles and methodology,' not to determine whether their hypothesis is correct, or to evaluate whether it is corroborated by other evidence on the record." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1026 (9th Cir. 2022) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 594–95 (1993)). Once the expert's opinion "satisfies the threshold requirements" of Rule 702, Rule 702 should be applied with a "liberal thrust favoring admission." *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1050 (9th Cir. 2025) (cleaned up).

## III.    ARGUMENT

Meta does not challenge Saba's qualifications, as Saba has over two decades of experience in economic damages analyses and business valuation. Ex. 1, Rpt. ¶ 11. Nor can Meta credibly dispute the reliability of Saba's opinions, as detailed *infra* Section III.A. Instead, Meta raises dubious "factual dispute[s]" or "conflicting" testimony from its responsive experts, which are not grounds for exclusion. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014). Finally, Meta asserts erroneous legal arguments that are improper for this motion.

### A.  Saba's Opinions Are Reliable.

***Bad Encounter Calculations.*** In his Bad Encounter Calculations, Saba reliably calculates the number of bad encounters that 13 to 17 year olds ("Teens") experienced on Instagram from February 2018 through March 2024 ("Extrapolation Period"). Saba bases this Calculation on the results of Meta's own 2021 Bad Encounter and Experiences Framework ("BEEF") Survey.

Meta claims that there is a "too large an 'analytical gap'" between the BEEF Survey data and Saba's opinion. Mot. at 4. But "[i]t is where expert opinion is connected to existing data only by the *ipse dixit* of the expert that there may be too great an analytical gap . . . to support inclusion of the testimony." *City of Pomona*, 750 F.3d at 1049 (internal quotation omitted). That is not the case here, where Saba supports his reliance on and extrapolation from the BEEF Survey with objective facts and data and his sound judgment and expertise.

First, Saba confirmed that the BEEF Survey provides information that is relevant to his Bad Encounter Calculations. In the BEEF Survey, Meta identified 22 ███████████ and asked Instagram users whether and how often they encountered them on the platform. *See* Ex. 1, Rpt. ¶¶ 62–66, 73. Meta used the Survey data to tabulate the ███████████ and average number of times respondents experienced each of the 22 bad experiences over the prior seven days. Ex. 1, Rpt. ¶¶ 68–69. Saba used this data to estimate the number of instances in which Teens in each applicable State encountered ten of Meta's 22 bad experiences during the Extrapolation Period:

███████████████████████████████████████████████

████████████████████████████ Ex. 1, Rpt. ¶¶ 214–28.

Saba also extensively supported his reliance on the BEEF Survey. For example, Saba reviewed Meta's internal documents and found that the BEEF Survey was superior to other available data sources because it was conducted during the Relevant Time Period (January 2012 through March 31, 2024),[1] had a large number of respondents,[2] posed questions about a variety of bad experiences, and was designed by Meta to provide ███████████

---

[1] Meta suggests the BEEF Survey was conducted during ███████████ Mot. at 5, based only on their responsive expert's unadorned opinion, without elaboration. This disagreement between experts does not bear on the admissibility of Saba's opinions. *See City of Pomona*, 750 F.3d at 1049.

[2] Meta claims that █████████████████████████████████████████ This is irrelevant, as Saba relied upon the subset of BEEF Survey responses that Meta internally reported, and Saba testified that those Survey responses appear to be correlated with the number of U.S. respondents to the BEEF Survey. Ex. 3, Dep. 173:11–176:2. Meta does not refute this point. Moreover, Meta only cites to Exhibit 7 of Dr. Bruce Isaacson's deposition—a single chart—to support its assertion regarding the BEEF Survey respondents' geographical makeup. Mot. at 5. Meta first disclosed this chart on the morning of Dr. Isaacson's deposition; it was not in his reports, and the calculation methodology has not been described. Ex. 4, Isaacson Dep. 96:6–96:15. Thus, the chart was not properly disclosed and Meta cannot rely upon it. *See Engilis*, 151 F.4th at 1051.

███████████████████████████ Ex. 1, Rpt. ¶¶ 64, 66–67; Ex. 3, Dep. 156:3–157:23, 161:16–162:24. Saba further identified that the Survey results reported a ███████████████████ ████████ Ex. 3, Dep. 158:21–23. Saba also reviewed the deposition testimony of Meta employee Dr. Kyle Andrews, who designed the BEEF Survey. Dr. Andrews testified to the ██████████ of the Survey, his significant survey design experience, and Meta's use of the Survey results to guide wellbeing goals. Ex. 3, Dep. 157:24–158:20; Ex. 2, Reb. Rpt. ¶ 40; Ex. 5, Andrews Dep. 163:18–165:12; 243:1–245:24; 250:13–252:23. To the extent that Meta disputes the credibility of a survey it "conducted for [its] own business use," such an argument "would . . . be dubious." *BBK Tobacco & Foods LLP v. Cent. Coast Agric. Inc.*, 615 F. Supp. 3d 982, 1006 (D. Ariz. 2022).

Finally, Saba reviewed a variety of data and information to find that ██████████████ ██████████ of Bad Encounters were not █████████████████ before or after the BEEF Survey period—to ensure that his extrapolation from the BEEF Survey data will not overcount Teens' Bad Encounters, Ex. 1, Rpt. ¶¶ 78–79. *See Elosu*, 26 F.4th at 1025 ("the requirement of sufficient facts or data does not preclude an expert from making projections based on reliable methodology"). Saba reviewed Meta and third-party studies—including surveys that Meta conducted in 2019 and 2025— and found ██████████████████████████████████ over time. Ex. 1, Rpt. ¶¶ 76–77; Ex. 2, Reb. Rpt. ¶¶ 134–35. Saba also found that several tools that Meta purportedly introduced to address wellbeing issues (such as Bad Encounters) were ineffective and had low adoption rates.[3] *See* Ex. 2, Reb. Rpt. ¶¶ 122–24; Ex. 1, Rpt. ¶¶ 81–103. Further, according to Meta's data, average duration of platform use among Teens was at a relatively low point during the BEEF Survey period relative to the rest of the Extrapolation Period. *See* Ex. 1, Rpt. ¶¶ 104–5, 109–16. Accordingly, Saba reasoned that █████████████████████████ Instagram before and after the Survey period, ████████████████████████████████████████████████ during the Extrapolation Period ████████████████████ Ex. 2, Reb. Rpt. ¶¶ 125–26.

---

[3] Meta claims that Saba should have considered more of Meta's purported safety tools and then cites to a list of such tools from its responsive expert, several of which launched after the period of Saba's calculations. Mot. at 5 (citing Ex. 6, McCrary Rep. App. H). Meta and its expert make no attempt to establish the tools' effectiveness at reducing Bad Encounters. This undeveloped factual argument does not bear on the admissibility of Saba's opinions. *See City of Pomona*, 750 F.3d at 1049.

In sum, the BEEF Survey is a reliable, relevant data source, and Saba's extrapolation is grounded in sufficient facts and data and reasonable methods. Meta attempts to challenge Saba's extrapolation by raising ill-supported factual disputes that go to the weight rather than the admissibility of Saba's opinions. *See Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 968–69 (9th Cir. 2013) (challenges to a damages expert's "assumptions and comparisons," including an "extrapolation from the Juneau market" to the Alaska market, "amount to impeachment"). Similarly, Meta's technical critiques of the BEEF Survey's design features, answer formats, and controls, Mot. at 5–6, lack support and "bear on the weight of the evidence, not its admissibility." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010) (internal quotation omitted).

***Saba's Time Spent and Disgorgement-Related Calculations.*** In his Time Spent Calculations, Saba uses Meta's internal platform usage data to reliably calculate the number of instances in which Teen accounts spent more than 0.5, 1, 2, 3, 4, or 5 hours per day on average on Instagram or Facebook in a given month during the Relevant Time Period. In his disgorgement-related calculations, Saba calculates the revenues, costs, and profits associated with Teen accounts that exceeded the 0.5, 1, 2, 3, 4, or 5 hour thresholds of average daily use ("Affected Teens"). He also calculates the revenues, costs, and profits associated with the Affected Teens once they turn 18 during the Relevant Time Period until March 2024 ("Aged Up Teens").

The time thresholds are not arbitrary or the product of the "*ipse dixit* of counsel," as Meta contends. Mot. at 7. The AGs will proffer other experts' testimony and record evidence that use these and similar thresholds in examining problematic use and mental health impacts linked to time spent on the platforms. For example, Dr. Jean Twenge—an expert in the AGs' case—opines on the link between increased time spent on social media and mental health. *See* Ex. 7, Twenge Rpt. ¶¶ 34–93; s*ee also, e.g.*, *id.* ¶ 68 and Fig. 12 (examining unhappiness at 0, 0.5, 1, 2, 3, 4, 5, and 6 hours of time spent). Meta also used overlapping time thresholds when assessing ████████████████ ████████████████ *See, e.g.*, Ex. 8, META3047MDL-032-00000933 at -937, -946–48. Further, as a general matter, Meta cannot (and does not) dispute that data on Teens' time spent on the platforms is relevant to the AGs' claims—particularly claims pertaining to problematic use—and

4

that the time thresholds assist the factfinder by organizing the relevant data in a logical manner. In sum, Saba's calculations readily satisfy Rule 702's requirements, and the time thresholds are consistent with the opinions of other AG experts, grounded in Meta's own internal documents, and helpful to the fact finder. *See, e.g.*, *U.S. ex rel. Jordan v. Northrop Grumman Corp.*, 2003 WL 27366224, at \*6 (C.D. Cal. Jan. 6, 2003) (damages expert's "reliance on assumptions provided by counsel or other experts is not a bar to her testimony").

*Saba's U13 Person Calculations.* From 2012 through 2024, Saba reliably calculates the number of Under 13 ("U13") persons who used the platforms at least daily. Saba also calculates the number of unique U13 persons on the platforms during the Relevant Time Period. Though requested by the AGs, Meta did not produce data regarding the number of U13 users on its platforms. Ex. 9, Letter from Meta Platforms, Inc. To Plaintiffs' Counsel (Mar. 5, 2025), at 2–3. Thus, Saba found relevant surveys on this topic, which were conducted by Thorn & Benenson Strategy Group annually from 2019 through 2023. Ex. 1, Rpt. ¶ 251. Saba focused on the published responses to the question of ███████████████████████████████████ ██████████████████████████████████████ *Id.*

Saba provides ample support for his reliance on the Thorn Surveys. Saba assessed other available data sources, including Meta's ████████████████████████████ ████████████████████████ Ex. 1, Rpt. at ¶¶ 240–48; Ex. 3, Dep. 239:18–240:2. Saba considered the questions in and results of the Thorn Surveys and identified that the Surveys contained information that was pertinent to his inquiry and spanned a longer time than Meta's point estimates. Ex. 3, Dep. 240:3–241:21. Saba found further support in Meta's internal documents describing Thorn's research—including research closely related to the Thorn Surveys Saba relies on—as ████████████████████ Ex. 3, Dep. 241:22–242:3; Ex. 1, Rpt. ¶¶ 249, 252.

Meta suggests that Saba should have further analyzed the Thorn Surveys to justify his reliance on them, Mot. at 9, and cites to *In re ConAgra Foods, Inc., 3*02 F.R.D. 537 (C.D. Cal. 2014). But *Conagra* sets forth no such requirement. And, in any case, "experts' decisions about what data to use in their analysis bear on the weight, not the admissibility, of expert testimony."

*U.S. for Use & Benefit of Bergelectric Corp. v. Sauer, Inc.*, 2020 WL 470273, at *2 (N.D. Cal. Jan. 29, 2020).

The *ConAgra* court asserts that "so long as the surveys are relevant and reliable, [an expert] need not be an expert in survey methodology to incorporate the results of surveys into [their] work." *ConAgra*, 302 F.R.D. at 555. Meta cannot credibly argue that the Thorn Surveys are irrelevant or unreliable. Rather, Meta speculates as to potential biases or technical issues in the Surveys, Mot. at 9, but these arguments are unsupported and go to weight rather than admissibility. *See, e.g.*, *Fortune Dynamic*, 618 F.3d at 1036. Meta suggests that the Surveys' population sample is biased, but makes no attempt to substantiate this claim with data or expert opinion. And Meta avers that respondents who view other peoples' social media accounts would respond affirmatively to the subject survey question, based only on a tortured definition of the term ▇▇▇▇ Ex. 3, Dep. 258:24–259:7 (disagreeing with Meta's illogical construal of the term 'use' in the subject survey question).

**B. Meta's Arguments in Section V of Its Motion Misstate Saba's Opinions.**

Meta challenges Section VII of Saba's Report, claiming that Saba supports the extrapolation of the BEEF Survey data based on changes in usage data trends following the implementation of Meta's purported safety tools. Mot. at 9–10. Meta then cites to case law asserting that causation opinions cannot rest on temporal relationships alone. This argument ignores the ample, objective information and reasoned judgment Saba applies to support the extrapolation, described *supra* Section III.A. Further, Saba does not, and need not, opine on the causal relationship between Meta's purported safety tools and platform usage or safety, as Saba is an expert in economic remedies, not liability. Instead, in Section VII, Saba analyzes data and record evidence to explain the basis of his extrapolation, as is proper under Rule 702. *See, e.g.*, *SiteLock LLC v. GoDaddy.com LLC*, 562 F. Supp. 3d 283, 332 (D. Ariz. 2022) (declining to exclude portions of expert report "set[ting] forth relevant portions of the record that will help the jury understand his opinions"); *Bergelectric Corp.*, 2020 WL 470273, at *3 (expert "reasonably relie[d] on" documentary evidence "to provide background information and to demonstrate the bases for his opinions").

In Section V.3, Saba does not set forth a factual narrative or opine on Meta's state of mind. Saba "synthesiz[es] information from a variety of different sources" and "interpret[s]" the

information in light of his expertise to (i) identify that Teens present a long-term value proposition for Meta and, relatedly, (ii) provide context and a basis for his calculation of profits associated with both Affected Teens and Aged Up Teens. S*ee Brown v. Google, LLC*, 2022 WL 17961497, at *12 (N.D. Cal. Dec. 12, 2022).

Finally, Saba does not "opine on the law," Mot. at 10, but rather discusses principles and standards applicable in his field to explain the basis of his opinions. The use of language that "recurs in the applicable legal standard" does not transmute expert opinions into legal conclusions, particularly where, as here, the expert is not "attempt[ing] to instruct the jury on the law, or how to apply it in this case." *See U.S. v. Diaz*, 876 F.3d 1194, 1198–99 (9th Cir. 2017) (citing cases).

### C.  Meta's Legal Arguments Are Erroneous and Premature.

Meta sets forth legal arguments that are wholly unrelated to the reliability of Saba's opinions under Rule 702. These arguments misconstrue applicable law and are misplaced in a Rule 702 Motion or, at best, are premature "fit" arguments. Ex. 10, ECF 2153 at 38:7–22.

***State law on violation counting methods.***[4] The factfinder has broad discretion to determine what constitutes a violation and how to count violations. *See, e.g.*, *Am. Nat'l Univ. of Ky. v. Commonwealth*, 2019 WL 2479608, at *7 (Ky. Ct. App. 2019) ("creativity is permitted in determining what constitutes a violation in order to effectuate the legislature's intent that the KCPA 'in the hands of the Attorney General, be a flexible and effective means of combating abusive trade practices'"); *People v. Johnson & Johnson*, 77 Cal. App. 5th 295, 352 (2022) ("The UCL and FAL do not specify what constitutes a single violation, so courts must decide what amounts to a violation on a case-by-case basis." (internal citation omitted)).

Contrary to Meta's assertion, Mot. at 3, state law does not require proof of exposure or injury for "per consumer" violation counting methods. *See, e.g.*, *People v. Dollar Rent-a-Car Systems, Inc.*, 211 Cal. App. 3d 119, 131 (Cal. Ct. App. 1989) (counting violations only for consumers who read defendants' deceptive contracts would "defeat the [UCL's and FAL's] purpose" of "protect[ing] against the *likelihood* of deception to the public, not just *actual* harm" (emphasis

---

[4] Meta focuses this argument on the laws of the four lead states. Mot. at 2 n.3. The State AGs do the same for purposes of this opposition motion.

in original)); *Meshinksy v. Nichols Yacht Sales, Inc.*, 541 A.2d 1063, 1067 (1988) ("the [AG] does not have to prove that the victim was damaged by the unlawful conduct"); *May Dep't Stores Co. v. State ex rel. Woodard*, 863 P.2d 967, 973 (Colo. 1993) ("the CCPA does not require proof of an actual injury or loss"); *Am. Nat'l Univ. of Ky.*, 2019 WL 2479608, at *8 (violations are not tied to harm and can be found whenever the deceptive statement was edited). Further, Kentucky does not bar the counting of violations by consumer; Meta misreads *Am. Nat'l Univ. of Ky.*, where the court analyzed the permissibility of counting violations per day. Finally, Meta incorrectly cites *People v. Superior Ct. (Jayhill)*, 9 Cal. 3d 283 (1973), to argue that counting multiple violations per consumer is improper; in fact, counting separate violations for "repeat encounters" with the same consumer is permitted.[5] *People v. Ashford Univ., LLC*, 319 Cal. Rptr. 3d 132, 161 (Cal. Ct. App. 2024)*; see also id.* at 160 (California "courts have limited *Jayhill* to its facts").

**Section 230.** Saba's Bad Encounter Calculations do not implicate Section 230, Mot. at 2, because they do not define or advance a theory of liability. Rather, they provide a proxy for or measure of the vast reach, extent, and injurious impact of Meta's deceptive and unfair acts.

The AGs will prove at trial that Meta's web of lies and half-truths created a misleading picture as to, among other things, the safety of its platforms and its prioritization of safety over profits. Meta's deceptive scheme stretched across the public sphere, misleading people on and off of its platforms, from youth, to parents, to regulators. The AGs will also prove that Meta engaged in unfair acts, such as promulgating ineffective time restriction tools as a public relations stunt. Meta's unlawful acts had sweeping, harmful impacts—for example, for youth compulsively using the platforms and for the families and communities experiencing the spillover effects.

Following liability determinations, the factfinder can use Saba's conservative calculations—in whole or in part, and in conjunction or independently—to count violations, guided by specific factual findings as to liability. As examples, the factfinder can count violations based

---

[5] Meta divides the *high end* of Saba's Bad Encounter and Time Spent Calculations by the *lowest end* of Saba's unique Teen Person Calculations to calculate multiple violation counts per teen. Mot. at 4, 6. Meta's equation myopically presumes that only platform users could be affected by Meta's wrongdoing and ignores "the nature and extent of the public injury that defendants inflicted," including on families and communities. *People ex rel. Kennedy v. Beaumont*, 3 Cal. Rptr. 3d 429, 451 (Cal. Ct. App. 2003).

on the total number of Teen or U13 persons using Meta's platforms when deceptive and unfair practices occurred; a subset of Teen accounts that exceeded problematic or harmful time thresholds; or the number of specific Bad Encounters that Teens experienced, in stark contrast to Meta's misrepresentations regarding platform safety. The Bad Encounter Calculations provide a measure of the extent of Meta's deception as to safety and the injurious impact of Meta's unlawful acts.

Meta claims that Saba's calculations are ███████████████ because they do not disaggregate what is ██████████████████████████ Mot. at 2; *see also* Mot. at 6–8. The Court already rejected this argument. *See* ECF No. 2857 at 4–7 (declining to exclude expert testimony based on Meta's argument that the experts do not disentangle the effects of "actionable defects from features and content" purportedly "barred by Section 230").

***Disgorgement.*** First, Meta does not argue that Saba's calculations of profits associated with Affected and Aged Up Teens are insufficient or methodologically unsound; instead, Meta takes issue with Saba's "present[ation]" of these two calculations in separate tables, Ex. 1, Rpt. at ¶¶ 167–68, 174, 201, 208. Mot. at 7. To the extent that Meta is attempting to argue how the factfinder should use Saba's profit calculations to formulate the disgorgement award, that argument is ill-developed and improper for a Rule 702 motion. Meta also insinuates that Saba must opine on Meta's preferred measure of disgorgement, but it is for the factfinder, not Saba, to determine the proper disgorgement award. *See, e.g.*, *SEC v. JT Wallenbrock & Associates*, 440 F.3d 1109, 1113 (9th Cir. 2006) (the court "has broad discretion in calculating the amount to be disgorged").

Meta next reiterates a faulty argument from its Motion for Summary Judgment—that there is no "causal relationship" between some unidentified portion of the profits associated with Aged Up Teens "and the alleged misconduct." Mot. at 7–8. The AGs already rebutted this argument—detailing the undisputed ██████████████ standard applicable to the AGs' disgorgement figure, the causal relationship between the calculations and Meta's wrongdoing, and supporting evidence—in the AGs' Opposition to Meta's Motion for Summary Judgment. ECF No. 2779 at Section III.C.3.[6]

---

[6] Meta mischaracterizes Saba's opinions; he does not state that it would be ████████ to calculate profits ██████ Meta's wrongdoing. Mot. at 8. Meta misquotes a portion of Saba's Rebuttal Report in which he explains that Meta's responsive expert lobs speculative critiques of

Finally, Meta argues that nonrestitutionary disgorgement is unavailable under California, Kentucky, and New Jersey state law. Mot. at 8. Not so. Nonrestitutionary disgorgement is permitted under federal equitable principles,[7] and it is not barred under state law. The Kentucky AG exercises "all common law duties and authority," unless "modified by statut[e]," Ky. Rev. Stat. § 15.020. The statute Meta cites neither alters the AG's "power to bring any action . . . to protect the public interest," *Com. ex. rel Conway v. Thompson*, 300 S.W.3d 152, 173 (Ky. 2009), nor Kentucky courts' adoption of common law equitable relief. *See* ECF 1214 at 75 n.83. Meta ignores that California is seeking disgorgement for the period beginning January 1, 2024, the effective date of Cal. Gov't Code § 12527.6, which provides for a disgorgement remedy under the UCL and FAL. Meta's citation to *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1147–48 (2003), is inapposite, as it predates the enactment of the statute. Finally, with respect to New Jersey, Meta fails to address that the NJCFA permits the AG to seek broad equitable relief, N.J. Stat. Ann. § 56:8-8, and that it is well established that "disgorgement is an equitable remedy." *Platkin v. Kizito*, 337 A.3d 354, 359 (2025) (cleaned up).

## IV.    CONCLUSION

For the reasons stated above, the AGs respectfully request the Court to deny Meta's Motion to Exclude and/or Strike Expert Testimony of Carl Saba.

---

Saba's calculations without setting forth any alternative disgorgement calculation. Ex. 2, Reb. Rpt. ¶¶ 138–39.

[7] As it did in its Motion for Summary Judgment, ECF No. 2704 at 42, Meta cites *Liu v. SEC*, for the proposition that federal equitable principles bar disgorgement awards that will not be returned to the victims. Mot. at 8. This is incorrect, as explained in the AGs' Opposition to Meta's Motion for Summary Judgment. ECF No. 2779 at 44–45.

DATED: 04/03/2026

Respectfully submitted,

**KRIS MAYES**
Attorney General
State of Arizona

*/s/ Reagan Healey*
Reagan Healey (AZ No. 038733), pro hac vice
Assistant Attorney General
Arizona Attorney General's Office
2005 North Central Avenue
Phoenix, AZ 85004
Phone: (602) 542-3725
Fax: (602) 542-4377
Reagan.Healey@azag.gov
*Attorneys for Plaintiff State of Arizona, ex rel. Kris Mayes, Attorney General*

**PHILIP J. WEISER**
Attorney General
State of Colorado

*/s/ Krista Batchelder*
Krista Batchelder, (CO Reg.45066), *pro hac vice*
Deputy Solicitor General
Shannon Stevenson (CO Reg. 35542), *pro hac vice*
Solicitor General
Elizabeth Orem (CO Reg. 58309), *pro hac vice*
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6384
krista.batchelder@coag.gov
Shannon.stevenson@coag.gov
Elizabeth.orem@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel. Philip J. Weiser, Attorney General*

**ROB BONTA**
Attorney General
State of California

*/s/ Megan O'Neill*
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (CA SBN 244395)
Emily Kalanithi (CA SBN 256972)
Supervising Deputy Attorneys General
Megan O'Neill (CA SBN 343535)
Nayha Arora (CA SBN 350467)
Joshua Olszewski-Jubelirer
(CA SBN 336428)
Marissa Roy (CA SBN 318773)
Brendan Ruddy (CA SBN 297896)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
megan.oneill@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*

**RAÚL R. LABRADOR**
Attorney General
State of Idaho

*/s/ James J. Simeri*
James J. Simeri (ID Bar No. 12332)
pro hac vice
Deputy Attorney General
Attorney General's Office
P.O. Box 83720
Boise, ID 83720-0010
(208) 334-2424
james.simeri@ag.idaho.gov

*Attorneys for Plaintiff State of Idaho*

**THEODORE E. ROKITA**
Attorney General
State of Indiana

*/s/ Scott L. Barnhart*
Scott L. Barnhart (IN Atty No. 25474-82),

**WILLIAM TONG**
Attorney General
State of Connecticut

*/s/ Rebecca Borné*
Rebecca Borné
(CT Juris No. 446982), pro hac vice
Tess E. Schneider
(CT Juris No. 444175), *pro hac vice*
Krislyn M. Launer
(CT Juris No. 440789), *pro hac vice*
Assistant Attorneys General
Connecticut Office of the Attorney General
165 Capitol Avenue
Hartford, Connecticut 06106
Phone: 860-808-5400
Fax: 860-808-5593
Rebecca.Borne@ct.gov
Tess.Schneider@ct.gov
Krislyn.Launer@ct.gov

*Attorneys for Plaintiff State of Connecticut*


**KATHLEEN JENNINGS**
Attorney General
State of Delaware

*/s/ Ryan Costa*
Marion Quirk (DE Bar 4136), *pro hac vice*
Director of Consumer Protection
Ryan Costa (DE Bar 5325), *pro hac vice*
Deputy Director of Consumer Protection
Delaware Department of Justice
820 N. French Street, 5th Floor
Wilmington, DE 19801
Phone: (302) 683-8811
Marion.Quirk@delaware.gov
Ryan.Costa@delaware.gov

*Attorneys for Plaintiff State of Delaware,*
*ex rel. Kathleen Jennings, Attorney General*
*for the State of Delaware*

*pro hac vice*
Chief Counsel and Director of Consumer
Protection
Corinne Gilchrist (IN Atty No. 27115-53),
*pro hac vice*
Section Chief, Consumer Litigation
Mark M. Snodgrass (IN Atty No. 29495-49),
*pro hac vice*
Deputy Attorney General
Office of the Indiana Attorney General
Indiana Government Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46203
Telephone: (317) 232-6309
Scott.Barnhart@atg.in.gov
Corinne.Gilchrist@atg.in.gov
Mark.Snodgrass@atg.in.gov

*Attorneys for Plaintiff State of Indiana*


**KRIS W. KOBACH**
Attorney General
State of Kansas

*/s/ Sarah M. Dietz*
Sarah M. Dietz, Assistant Attorney General
(KS Bar No. 27457), *pro hac vice*
Kaley Schrader, Assistant Attorney General
(KS Bar No. 27700), *pro hac vice*
Office of the Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Telephone: (785) 296-3751
Fax: (785) 296-3131
Email: sarah.dietz@ag.ks.gov

*Attorneys for Plaintiff State of Kansas*


**LIZ MURRILL**
Attorney General
State of Louisiana

*/s/ Asyl Nachabe*
Asyl Nachabe (LA Bar No. 38846)
*Pro hac vice*
Assistant Attorney General
Louisiana Department of Justice
Public Protection Division
Consumer Protection Section
1885 N 3rd Street, 4th Floor

**ANNE E. LOPEZ**
Attorney General
State of Hawai'i

/s/ *Douglas S. Chin*
Christopher J.I. Leong (HI JD No. 9662), *pro hac vice*
Supervising Deputy Attorney General
Kelcie K. Nagata (HI JD No. 10649), *pro hac vice*
Deputy Attorney General
Department of the Attorney General
Commerce and Economic Development Division
425 Queen Street
Honolulu, Hawai'i 96813
Phone: (808) 586-1180
Christopher.ji.leong@hawaii.gov
Kelcie.k.nagata@hawaii.gov
Douglas S. Chin (HI JD No. 6465), *pro hac vice*
John W. Kelly (HI JD No. 9907), *pro hac vice*
Special Deputy Attorney General
Starn O'Toole Marcus & Fisher
733 Bishop Street, Suite 1900
Honolulu, Hawai'i 96813
Phone: (808) 537-6100
dchin@starnlaw.com
jkelly@starnlaw.com

*Attorneys for Plaintiff State of Hawai'i*

**KWAME RAOUL**
Attorney General
State of Illinois

/s/ *Matthew Davies*
Susan Ellis, Chief, Consumer Protection Division (IL Bar No. 6256460), *pro hac vice*
Greg Grzeskiewicz, Chief, Consumer Fraud Bureau (IL Bar No. 6272322), *pro hac vice*
Jacob Gilbert, Deputy Chief, Consumer Fraud Bureau (IL Bar No. 6306019), *pro hac vice*
Matthew Davies, Supervising Attorney, Consumer Fraud Bureau (IL Bar No. 6299608),
*pro hac vice*
Daniel B. Roth, Assistant Attorney General, Consumer Fraud Bureau (IL Bar No.

Baton Rouge, LA 70802
Tel: (225) 326-6438
NachabeA@ag.louisiana.gov

*Attorney for State of Louisiana*

**AARON M. FREY**
Attorney General
State of Maine

/s/ *Michael Devine*
Michael Devine, Maine Bar No. 5048, *pro hac vice*
Assistant Attorney General
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333
(207) 626-8800
michael.devine@maine.gov

*Attorney for Plaintiff State of Maine*

**KEITH ELLISON**
Attorney General
State of Minnesota

/s/ *Caitlin Micko*
Caitlin Micko (MN Bar No. 0395388), *pro hac vice*
Assistant Attorney General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1200
St. Paul, MN 55101-2130
Tel: (651) 724-9180
caitlin.micko@ag.state.mn.us

*Attorney for Plaintiff State of Minnesota, by its Attorney General, Keith Ellison*

**JENNIFER DAVENPORT**
Acting Attorney General
State of New Jersey

By: /s/ *Kashif T. Chand*
Kashif T. Chand (NJ Bar No. 016752008), *Pro hac vice*
Assistant Attorney General
Thomas Huynh (NJ Bar No. 200942017), *Pro hac vice*
Assistant Section Chief, Deputy Attorney General

13

6290613), *pro hac vice*
Meera Khan, Assistant Attorney General,
Consumer Fraud Bureau (IL Bar No.
6345895), *pro hac vice*
Office of the Illinois Attorney General
115 S. LaSalle Street
Chicago, Illinois 60603
312-814-8554
Susan.Ellis@ilag.gov
Greg.Grzeskiewicz@ilag.gov
Jacob.Gilbert@ilag.gov
Matthew.Davies@ilag.gov
Emily.Migliore@ilag.gov
Daniel.Roth@ilag.gov
Meera.Khan@ilag.gov

*Attorneys for Plaintiff the People of the State of Illinois*


**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

/s/ *Matthew Cocanougher*
J. Christian Lewis (KY Bar No. 87109),
*pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*pro hac vice*
Zachary Richards (KY Bar No. 99209),
*pro hac vice app. forthcoming*
Daniel I. Keiser (KY Bar No. 100264),
*pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Ste. 200
Frankfort, KY 40601
Christian.Lewis@ky.gov
Philip.Heleringer@ky.gov
Zach.Richards@ky.gov
Daniel.Keiser@ky.gov
Matthew.Cocanougher@ky.gov
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

**ANTHONY G. BROWN**
Attorney General
State of Maryland

/s/ *Elizabeth J. Stern*

Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*Pro hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov


*Attorneys for Plaintiffs Jennifer Davenport, Acting Attorney General for the State of New Jersey, and Jeremy E. Hollander, Acting Director of the New Jersey Division of Consumer Affairs*


**LETITIA JAMES**
Attorney General
State of New York

/s/ Nathaniel Kosslyn
Nathaniel Kosslyn, Assistant Attorney
General
(NY Bar No. 5773676), *pro hac vice*
nathaniel.kosslyn@ag.ny.gov
Alex Finkelstein, Assistant Attorney General
(NY Bar No. 5609623), *pro hac vice*
alex.finkelstein@ag.ny.gov
New York Office of the Attorney General
28 Liberty Street
New York, NY 10005
(212) 416-8000


**DAVE YOST**
Attorney General
State of Ohio

STATE ATTORNEYS GENERAL'S RESPONSE TO META'S MOTION TO EXCLUDE AND/OR STRIKE EXPERT TESTIMONY OF
CARL SABA
4:22-md-03047-YGR; 4:23-cv-05448-YGR

Philip D. Ziperman (Maryland CPF No. 9012190379), *pro hac vice*
Deputy Chief, Consumer Protection Division
Elizabeth J. Stern (Maryland CPF No. 1112090003), *pro hac vice*
Assistant Attorney General
Office of the Attorney General of Maryland
200 St. Paul Place
Baltimore, MD 21202
Phone: (410) 576-6417 (Mr. Ziperman)
Phone: (410) 576-7226 (Ms. Stern)
Fax: (410) 576-6566
pziperman@oag.state.md.us
estern@oag.state.md.us

*Attorneys for Plaintiff Office of the Attorney General of Maryland*

**MICHAEL T. HILGERS**
Attorney General
State of Nebraska

/s/ Anna M. Anderson
Anna M. Anderson (NE #28080),
*pro hac vice*
Benjamin J. Swanson (NE #27675),
*pro hac vice*
Assistant Attorneys General
Nebraska Attorney General's Office
1445 K Street, Room 2115
Lincoln, NE 68509
(402) 471-6034
anna.anderson@nebraska.gov
benjamin.swanson@nebraska.gov

*Attorneys for Plaintiff State of Nebraska*

**JEFF JACKSON**
Attorney General
State of North Carolina

*/s/ Charles White*
Charles G. White (N.C. State Bar No. 57735), *pro hac vice*
Assistant Attorney General

*/s/ Kevin R. Walsh*
Melissa G. Wright (Ohio Bar No. 0077843)
Section Chief, Consumer Protection Section
Melissa.Wright@ohioago.gov
Melissa S. Smith (Ohio Bar No. 0083551)
Asst. Section Chief, Consumer Protection Section
Melissa.S.Smith@ohioago.gov
Michael S. Ziegler (Ohio Bar No. 0042206)
Principal Assistant Attorney General
Michael.Ziegler@ohioago.gov
Kevin R. Walsh (Ohio Bar No. 0073999), *pro hac vice*
Kevin.Walsh@ohioago.gov
Senior Assistant Attorney General
30 East Broad Street, 14th Floor
Columbus, Ohio 43215
Tel: 614-466-1031

*Attorneys for State of Ohio, ex rel. Attorney General Dave Yost*

**DAN RAYFIELD**
Attorney General
State of Oregon

/s/ John Dunbar
John J. Dunbar (Oregon Bar No. 842100)
Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, Oregon 97201
Telephone: (971) 673-1880
Facsimile:  (971) 673-1884
E-mail: john.dunbar@doj.oregon.gov

*Attorneys for State of Oregon ex rel. Dan Rayfield, Attorney General*

**ALAN WILSON**
Attorney General
State of South Carolina

*/s/ Anna C. Smith*

STATE ATTORNEYS GENERAL'S RESPONSE TO META'S MOTION TO EXCLUDE AND/OR STRIKE EXPERT TESTIMONY OF
CARL SABA
4:22-md-03047-YGR; 4:23-CV-05448-YGR

Kunal Choksi
Senior Deputy Attorney General
Josh Abram
Special Deputy Attorney General
N.C. Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6889
Facsimile: (919) 716-6050
E-mail: cwhite@ncdoj.gov
*Attorneys for Plaintiff State of North Carolina*

**DAVE SUNDAY**
Attorney General
Commonwealth of Pennsylvania

*/s/ Jonathan R. Burns*
Jonathan R. Burns
Deputy Attorney General
(PA Bar No. 315206), *pro hac vice*
Email: jburns@attorneygeneral.gov
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Tel: 717.787.4530

*Attorneys for Plaintiff the Commonwealth of Pennsylvania*

**PETER F. NERONHA**
Attorney General
State of Rhode Island

*/s/ Stephen N. Provazza*
Stephen N. Provazza (R.I. Bar No. 10435),
*pro hac vice*
Assistant Attorney General
Rhode Island Office of the Attorney General
150 South Main St.
Providence, RI 02903
Phone: 401-274-4400
Email: SProvazza@riag.ri.gov

*Attorney for Plaintiff State of Rhode Island*

**JAY JONES**
Attorney General
Commonwealth Of Virginia

*/s/ Joelle E. Gotwals*
Travis G. Hill

C. Havird Jones, Jr.
Senior Assistant Deputy Attorney General
Jared Q. Libet (S.C. Bar No. 74975),
*pro hac vice*
Assistant Deputy Attorney General
Anna C. Smith (SC Bar No. 104749),
*pro hac vice*
Assistant Attorney General
Office of the South Carolina Attorney General
Post Office Box 11549
Columbia, South Carolina 29211
jlibet@scag.gov
annasmith@scag.gov
803-734-0536

*Attorneys for Plaintiff the State of South Carolina, ex rel. Alan M. Wilson, in His Official Capacity as Attorney General of the State of South Carolina*

**MARTY J. JACKLEY**
Attorney General
State of South Dakota

*/s/  Amanda Miiller*
By: Amanda Miiller (SD Bar No. 4271)
Deputy Attorney General
South Dakota Office of the Attorney General
1302 East SD Hwy 1889, Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215
Email: Amanda.Miiller@state.sd.us

*Attorneys for Plaintiff State of South Dakota*

**JOHN B. MCCUSKLEY**
Attorney General
State of West Virginia

*/s/ Laurel K. Lackey*
Laurel K. Lackey (WVSB No. 10267),
*pro hac vice*
Abby G. Cunningham (WVSB No. 13388)
Assistant Attorneys General
Office of the Attorney General
Consumer Protection & Antitrust Division
Eastern Panhandle Office

16

Chief Deputy Attorney General
Helen O. Hardiman
Deputy Attorney General
Richard S. Schweiker, Jr.
Senior Assistant Attorney General and
Section Chief
Joelle E. Gotwals (VSB No. 76779),
Senior Assistant Attorney General
*pro hac vice*
Chandler P. Crenshaw (VSB No. 93452)
Assistant Attorney General
*pro hac vice*
Office of the Attorney General of Virginia
Consumer Protection Section
202 N. 9th Street
Richmond, Virginia 23219
Telephone: (804) 786-8789
Facsimile: (804) 786-0122
E-mail: jgotwals@oag.state.va.us

*Attorneys for the Plaintiff Commonwealth of Virginia ex rel. Jay Jones, Attorney General*


**NICHOLAS W. BROWN**
Attorney General State of Washington

*/s/ Claire McNamara*
Claire McNamara (WA Bar No. 50097)
Gardner Reed (WA Bar No. 55630)
Assistant Attorneys General
Washington State Office of the Attorney
General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 340-6783
claire.mcnamara@atg.wa.gov
gardner.reed@atg.wa.gov

*Attorneys for Plaintiff State of Washington*

269 Aikens Center
Martinsburg, West Virginia 25404
(304) 267-0239
laurel.k.lackey@wvago.gov

*Attorneys for Plaintiff State of West Virginia, ex rel. Patrick Morrisey, Attorney General*


**JOSHUA L. KAUL**
Attorney General
State of Wisconsin

*/s/ Brittany Copper*
Brittany A. Copper
Assistant Attorney General
WI State Bar # 1142446, *pro hac vice*
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-1795
Brittany.copper@wisdoj.gov

*Attorneys for Plaintiff State of Wisconsin*

## SIGNATURE CERTIFICATION

Under Civ. L.R. 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in this filing's content and have authorized this filing.

DATED: 04/03/2026

/s/ Shaheen Sheikh
Shaheen Sheikh

*Attorney for Plaintiff State of Colorado, ex rel.*
*Philip J. Weiser, Attorney General*

STATE ATTORNEYS GENERAL'S RESPONSE TO META'S MOTION TO EXCLUDE AND/OR STRIKE EXPERT TESTIMONY OF CARL SABA
4:22-md-03047-YGR; 4:23-CV-05448-YGR