James P. Rouhandeh, *pro hac vice*
Antonio J. Perez-Marques, *pro hac vice*
Caroline Stern, *pro hac vice*
Corey M. Meyer, *pro hac vice*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:    rouhandeh@davispolk.com
        antonio.perez@davispolk.com
        caroline.stern@davispolk.com
        corey.meyer@davispolk.com

*Attorneys for Defendants Meta Platforms, Inc. and Instagram, LLC*

*Additional counsel listed on signature pages*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION <br><br> THIS DOCUMENT RELATES TO: <br><br> *People of the State of California, et al. v. Meta Platforms, Inc., et al.* | MDL No. 3047 <br><br> Case Nos. 4:22-md-03047-YGR-PHK <br><br> **META'S OPPOSITION TO STATE ATTORNEYS GENERALS' MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY OF JUSTIN MCCRARY** <br><br> Judge: Hon. Yvonne Gonzalez Rogers <br><br> Magistrate Judge: Hon. Peter H. Kang |

**[REDACTED]**

**TABLE OF CONTENTS**

PAGE

BACKGROUND ...............................................................................................................................1

LEGAL STANDARD........................................................................................................................2

ARGUMENT ....................................................................................................................................3

I.      An Economic Damages Analysis Must Be Connected to the Issues in the Case ...................3

II.     McCrary's Opinions Are Proper Rebuttal Opinions Because They Challenge What Saba's Opinions Fail to Properly Consider ........................................................................................4

III.    Opinions 1 and 2 Apply Routine and Reliable Methodologies of Economic Analyses ..........7

IV.     McCrary's Opinions Are Economic Analysis That He Is Qualified to Give ........................10

V.      Opinions 1 and 2 Are Not Causation Opinions and Do Not Violate the Court's Scheduling Order Regarding Causation Experts ........................................................................................10

CONCLUSION ...............................................................................................................................10

## TABLE OF AUTHORITIES

<u>CASES</u>

PAGE(S)

*Autotech Techs., LP v. Palmer Drives Controls & Sys., Inc.*,
    2023 WL 2187476 (D. Colo. Feb. 23, 2023) ...............................................................................5, 6, 8

*Avila v. Willits Env't Remediation Tr.*,
    633 F.3d 828 (9th Cir. 2011) ...................................................................................................... 10

*Baker v. SeaWorld Ent., Inc.*,
    423 F. Supp. 3d 878 (S.D. Cal. 2019) .......................................................................................3, 5

*Celador Int'l, Ltd. v. Walt Disney Co.*,
    2008 WL 11342595 (C.D. Cal. Dec. 17, 2008) .........................................................................9, 10

*Daubert v. Merrell Dow Pharms., Inc.*,
    43 F.3d 1311 (9th Cir. 1995) .........................................................................................................4

*FireBlok IP Holdings, LLC v. Hilti, Inc.*,
    2025 WL 2209959 (N.D. Ill. Aug. 4, 2025)...................................................................................3

*K&N Engineering, Inc v. Spectre Performance*,
    2011 WL 13131157 (C.D. Cal. 2011)..............................................................................................8

*Kirola v. City & Cnty. of San Francisco*,
    2010 WL 3476681 (N.D. Cal. Sept. 2, 2010) .................................................................................9

*Mahaska Bottling Co., Inc. v. PepsiCo, Inc.*,
    441 F. Supp. 3d 745 (S.D. Iowa 2019) .........................................................................................7

*Messick v. Novartis Pharm. Corp.*,
    747 F.3d 1193, 1196 (9th Cir. 2014) .............................................................................................3

*Mission Viejo Florist, Inc. v. Orchard Supply Co., LLC*,
    2019 WL 13045054 (C.D. Cal. Feb. 28, 2019)..............................................................................3

*Perez v. State Farm Mut. Auto. Ins. Co.*,
    2012 WL 3116355 (N.D. Cal. July 31, 2012 ................................................................................5

*Pinterest, Inc. v. Pintrips*,
    2015 WL 2268498 (N.D. Cal. May 14, 2015) ............................................................................3, 6

*Plumley v. Mockett*,
    836 Supp. 2d 1053 (C.D. Cal. 2010) ............................................................................................5

*Pooshs v. Phillip Morris USA, Inc.*,
   287 F.R.D. 543 (N.D. Cal. 2012)................................................................................................10

*Reflex Media, Inc. v. SuccessfulMatch.com*,
   758 F. Supp. 3d 1046 (N.D. Cal. 2024) .....................................................................................3

*Shaver v. Libbey Glass LLC*,
   2024 WL 3050719 (C.D. Cal. Apr. 12, 2024) ............................................................................5

*Sinclair Wyoming Ref. Co. v. Infrassure Ltd*,
   2017 WL 11094221 (D. Wyo. May 19, 2017)..............................................................................8

*Siquieros v. Gen. Motors LLC*,
   2022 WL 74182 (N.D. Cal. Jan. 7, 2022) ...................................................................................7

*Space Data Corp. v. Alphabet Inc.*,
   2019 WL 2603285 (N.D. Cal. June 25, 2019) .........................................................................3, 7

*United States v. Mamah*,
   332 F.3d 475 (7th Cir. 2003) ......................................................................................................3

*Van Alfen v. Toyota Motor Sales, U.S.A., Inc.*,
   2012 WL 12930456 (C.D. Cal. Nov. 9, 2012).............................................................................6


RULES

Fed. R. Civ. P. 26(a)(2)(D) .................................................................................................3, 4

Fed. R. Evid. 702 ......................................................................................................................3

OTHER AUTHORITIES

Michael Weisberg & Anastasia Thanukos, *How Science Works*, *in* Reference Manual on Scientific
   Evidence 47 (4th Ed. 2025)........................................................................................................7

The AGs' motion to exclude certain rebuttal expert testimony of Dr. Justin McCrary should be denied. McCrary is an economist who rebuts the opinions of the AGs' "damages" expert, Carl Saba. *See* Ex. A (Saba Dep.) at 151:9-14 (confirming he is ██████████████████). McCrary's challenged opinions—Opinions 1 and 2, *see* Mot. at 2-3[1]—present a proper economic critique of Saba's methodology, identifying a critical step that damages experts must take to determine an appropriate damages model and illustrating how Saba's omission of this step raises significant concerns about the foundation, reliability, and usefulness of Saba's analyses. Specifically, McCrary highlights Saba's failure to analyze or substantiate any connection between the tallies he calculated at the AGs' direction and the AGs' allegations, and analyzes publicly available evidence suggesting the absence of such connection, disregarded by Saba. Assessing and establishing such connection is an indispensable step, if not the core, of any economic damages analysis. It is one that McCrary has undertaken countless times in his work as an economist. And McCrary is well within his expertise and remit as a rebuttal economist expert to demonstrate the wholesale absence of any such analysis from Saba's work. The AGs' challenge to McCrary's opinions fails, fundamentally, because it is premised on a mischaracterization of McCrary's opinions as causation opinions. The AGs' motion should be denied.

## **BACKGROUND**

McCrary is an applied economist with expertise in econometric and statistical methodology, among other subjects, with a Ph.D. in Economics, approximately 23 years of teaching experience, and extensive scholarship and expert experience. *See* McCrary Rep. ¶ 14, App. A.

He rebuts the opinions offered by Saba, the AGs' "damages" expert. *See* Mot. at 2 (explaining that Saba "performs calculations" that "inform or form the basis of the tabulation of violations" and "assist in determining the amount of Meta's profits that should be disgorged"); Saba Dep. at 151:9-14. In relevant part, Saba provides "calculations [that] provide methods for quantifying the number of instances of . . . violations," *see* Mot. Ex. 4 (Saba Reply Rep.) ¶ 105, under the MDL states'

---

[1] "Opinion 1" or "Op. 1" refers to the opinion at Section VI of McCrary's rebuttal report, as described in Paragraph 2 of his report. *See* Mot. Ex. 2 (McCrary Rep.) ¶ 2. "Opinion 2" or "Op. 2" refers to the opinion at Section VII of McCrary's rebuttal report, as described in Paragraph 3 of his report. *See id.* ¶ 3.

consumer protection laws using two methods: First, extrapolating the results of a Meta survey to estimate the number of times Teens had certain "bad experiences" relating to third-party content on Instagram over a span of six years, and second, counting the number of times any Teen averaged more than 30 minutes per day in a month on Instagram or Facebook. *See* Mot. Ex. 1 (Saba Rep.) ¶¶ 2, 5, 7; *id.* §§ IX, XIII-XIV; Saba Reply Rep. ¶ 105. Saba's calculations are stated to be for purposes of calculating civil penalties. *See* Saba Rep. ¶¶ 2, 5, §§ IX, XIII; *see also id.* ¶¶ 3-4, §§ X-XII.

The AGs seek to exclude McCrary's first two opinions, which challenge the very foundations of Saba's calculations, identifying Saba's failure to establish any connection between what he purports to quantify and the issues in the case—a necessary threshold step that an economic damages expert must perform. In Opinion 1, McCrary examines and challenges Saba's analytical design, opining how Saba has failed to provide any methodological justification for the particular metrics he chose (or was instructed) to quantify for his damages opinion, having made no effort to explain why

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████ McCrary Rep. ¶¶ 2, 53. McCrary also examines and opines on other of Saba's methodological flaws, including finding that Saba has failed to ████████████████████

███████████████████████████████████████████ *See id.* ¶¶ 66-67, 77, 84, 88.

In Opinion 2, McCrary underscores the lack of justification he found for Saba's methods by identifying publicly available evidence, disregarded by Saba, that demonstrates the lack of connection between Saba's tallies and the Complaint's allegations of consumer harm. Specifically, McCrary opines that Saba has disregarded ████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████ *See id.* ¶¶ 3, 90-93 & n.151.

## LEGAL STANDARD

An expert must, by a preponderance of the evidence, (i) be qualified; (ii) offer testimony that will "help the trier of fact;" and (iii) offer opinions "based on sufficient facts or data" (iv) that are

"the product of reliable principles and methods" and (v) that "reflect[] a reliable application of the principles and methods to the facts of the case." *Reflex Media, Inc. v. SuccessfulMatch.com*, 758 F. Supp. 3d 1046, 1048 (N.D. Cal. 2024) (citing Fed. R. Evid. 702).

"Rebuttal disclosures of expert testimony are 'intended solely to contradict or rebut evidence on the same subject matter identified by another party' in its expert disclosures." *Baker v. SeaWorld Ent., Inc.*, 423 F. Supp. 3d 878, 896 (S.D. Cal. 2019); *see* Fed. R. Civ. P. 26(a)(2)(D). "[C]hallenging the assumptions of an [opposing] expert witness' report" is squarely within the scope of a rebuttal expert, *see Pinterest, Inc. v. Pintrips, Inc.*, 2015 WL 2268498, at *1 (N.D. Cal. May 14, 2015), as is "opining on what [the opposing expert] failed to properly account for in forming [his] opinions or solidifying [his] assumptions." *Space Data Corp. v. Alphabet Inc.*, 2019 WL 2603285, at *4 (N.D. Cal. June 25, 2019).

## **ARGUMENT**

### I.     **An Economic Damages Analysis Must Be Connected to the Issues in the Case**

An economic damages expert must select a damages model that bears a meaningful connection to the claims at issue. As a result, analyzing—and explaining—a connection between what is being quantified and the issues in the case is a necessary threshold step that the expert must perform. *See, e.g.*, *Mission Viejo Florist, Inc. v. Orchard Supply Co., LLC*, 2019 WL 13045054, at *2 (C.D. Cal. Feb. 28, 2019) ("Expert testimony must have 'a valid connection to the pertinent inquiry.' Courts reject or exclude expert testimony that fails to connect damages calculations to the theory of liability." (quoting *Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1196-97 (9th Cir. 2014)); *FireBlok IP Holdings, LLC v. Hilti, Inc.*, 2025 WL 2209959, at *2 (N.D. Ill. Aug. 4, 2025) ("A damages expert must present some reasonable basis for his computations, including 'a link between the facts or data the expert has worked with and the conclusions the expert's testimony is intended to support.' (quoting *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003)).

The materials Saba considered when drafting his report acknowledge that such analysis is part and parcel of a damages expert's task. A principal treatise upon which Saba relies explains that a damages expert "should not blindly accept the conclusions of others without exercising due professional skepticism in applying these conclusions to the facts of the case"—and "[e]ven if

3

damages experts do not provide testimony regarding causation, they must nevertheless understand the plaintiff's theory of causation . . . and be ready to opine on both alternative outcomes and alternative causes." Ex. B (*Litigation Services Handbook*) at 153, 163; *see also* Saba Rebuttal Rep. ¶¶ 22, 26-28 (citing the handbook); Saba Dep. at 32:8-33:2 (stating he is ███████████████ with the handbook and other cited treatises and has ████████████████████████████).

Moreover, Saba conceded at his deposition ████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████ *Id.* at 101:19-109:18, 151:9-19.

## II. McCrary's Opinions Are Proper Rebuttal Opinions Because They Challenge What Saba's Opinions Fail to Properly Consider

In his two challenged opinions, McCrary analyzes Saba's methodologies and addresses Saba's failure to draw the necessary connection, through any analysis, evidence, or even explanation, between the metrics that Saba has purported to quantify and any conception of the issues in this case. In doing so, McCrary illustrates a fundamental defect in the design of Saba's methodology as a matter of economics. S*ee* McCrary Rep. ¶¶ 53, 61 (criticizing Saba for failing to ████████████ ████████████████████████████████████████████████████████████ ███████████████ and seeking to illustrate the lack of a ███████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████; Ex. C (McCrary Dep.) at 105:16-18 ("He's putting forward a particular methodology" to which "I'm putting forward a criticism . . . .").

It is entirely proper for McCrary to challenge and illustrate the absence of this key methodological step in Saba's damages calculations. McCrary's Opinions 1 and 2 are appropriate rebuttal testimony because they "contradict or rebut evidence" on precisely "the same subject matter," Fed. R. Civ. P. 26(a)(2)(D), as Saba's report: Saba's proffering of several quantifications in the context, and for the understood purpose, of counting the number of alleged violations in this case.[2] S*ee* Saba Rep. ¶ 17(a) (explaining that he ████████████████████████████

---

[2] The AGs' cited cases regarding relevance, *see* Mot. at 1, 5, 7, pertain to affirmative opinions unrelated to damages and are therefore inapposite. *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d

4

████████████████████████████████████████████████); *Baker*, 423 F. Supp. 3d at 897 (holding rebuttal expert's opinion that opposing experts' conclusions were "are at odds with the facts of the case and generally accepted financial economic principles and published empirical research" appropriately "contradict[ed]" the opposing expert's opinion "on the same subject matter"). Inherent in Saba's opinions is his implicit, expertised imprimatur that his calculations can serve the purpose for which he has proffered them.

In his Opinions 1 and 2, McCrary identifies factors that "a reasonable expert would have taken . . . into account" in selecting metrics to measure to quantify potential "violations," and explains why several of these factors suggest that Saba's metrics may *not* be meaningful or relevant metrics. *Autotech, LP v. Palmer Drives Controls & Sys., Inc.*, 2023 WL 2187476, at *10 (D. Colo. Feb. 23, 2023); *see Shaver v. Libbey Glass LLC*, 2024 WL 3050719, at *3 (C.D. Cal. Apr. 12, 2024) ("Surely, a rebuttal expert is permitted to discuss overlooked evidence and perceived flaws in the methodology of the original expert's testimony."). For example, McCrary notes an opinion from the American Academy of Pediatrics about why screen time is not a meaningful proxy for harm. McCrary Rep. ¶ 59. He criticizes Saba's tallies for failing to ████████████████████████████████████ ████████████████████████████████████████████████████ *Id.* ¶¶ 66-67, 77, 84, 88, 98, 101. He questions Saba's choice to use certain time-spent thresholds ████ ████████████████████████████████████████████████████ *Id.* ¶ 65. And he illustrates in greater depth the absence of an obvious justification for Saba's assumptions by comparing the implication of Saba's tallies, which ██████████████████████████████ ████████████████████ against public data related to a core theme in the AGs' claims: that the Teens experienced harm as a result of Meta's at-issue features.[3] *See id.* ¶¶ 91, 93 & n.151 (citing Amended Complaint), 99 & n.157 (same); McCrary Dep. at 191:12-193:1; *see also* Am. Compl. ¶ 847 (claiming 1311, 1314 (9th Cir. 1995) (affirmative causation experts); *Perez v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 3116355, at *2 (N.D. Cal. July 31, 2012) (expert opining on "which categories of non-OEM parts are inferior to OEM parts"); *Plumley v. Mockett*, 836 Supp. 2d 1053, 1065 (C.D. Cal. 2010) ("purported rebuttal expert to [a] financial expert," who affirmatively opined on "matters relating to patent validity and inequitable conduct" not "as it relates to damages").

[3] Despite the AGs' insistence that harm is irrelevant to Saba's opinions, *see* Mot. at 9, Saba testified to the contrary, agreeing that ████████████████████████████████ ████████████████████ Saba Dep. 71:3-16.

5

Meta "engaged in unfair and/or unconscionable acts and practices" by "includ[ing] features that Meta knew to be psychologically and physically harmful to young users" and "utiliz[ing] . . . features that unfairly and/or unconscionably harm young users").[4]  In short, McCrary's Opinions 1 and 2 address critical methodological flaws in Saba's tallies by illustrating Saba's failure to ascertain the extent to which his tallies are meaningfully related in any way to the AGs' claims regarding Meta's purported at-issue conduct and Saba's disregard of evidence that undercuts the salience of his chosen metrics.

The AGs' suggestion that Saba does "not opine on the causal links" in his report, *see* Mot. at 9, is not a basis for prohibiting McCrary from opining on his findings regarding the absence of such analysis, or identifying the evidence Saba disregarded that suggests the absence of such causal link. Identifying weaknesses and gaps in an opposing expert's methodology is squarely within the ambit of a rebuttal expert, including identifying steps the opposing expert did not take as part of his methodology.  *Autotech*, 2023 WL 2187476, at *10 (denying a motion to exclude rebuttal expert's testimony (1) regarding authorities discussing "the importance of testing the reasonableness of lost profits" since it is "relevant to . . . criticisms of [the opposing expert's] methodology and . . . calculation" and (2) arguing, without assuming any impact, "that a reasonable expert would have taken COVID into account"); *see also Van Alfen v. Toyota Motor Sales, U.S.A., Inc.*, 2012 WL 12930456, at *7 (C.D. Cal. Nov. 9, 2012) (rejecting implication that "a rebuttal expert must confine his or her opinion to whether the initial expert report drew wrong conclusions based on that expert's methodology" and explaining that a rebuttal expert may "tak[e] a different approach[,] . . . employ[] a different methodology, or . . . refram[e] an issue").  McCrary's analysis and conclusions as to what Saba "failed to properly account for in forming [his] opinions or solidifying [his] assumptions" are properly within the scope of a rebuttal opinion.  *Pinterest*, 2015 WL 2268498, at *1.

Regardless of whether Saba opines on causation, his quantifications are inevitably premised on (untested) assumptions about causation inasmuch as they are proffered for the explicit purpose of

_____

[4] McCrary makes similar observations in Opinion 1 regarding whether there is a relationship between time spent data and the AGs' allegations regarding addictive or compulsive use—the AGs' other main theory for their UDAP claims—which the AGs also mischaracterize as affirmative opinions, *see* Mot. at 2-3.  McCrary Rep. ¶¶ 54-55, 73; *see also* Am. Compl. ¶ 848 ("Meta's deployment of manipulative and harmful features, both on their own and especially in combination, for use by young users are unfair and/or unconscionable acts or practices.").

counting alleged violations. *See* Saba Rep. § 17. The untested and unsupported linchpin of Saba's analysis is the notion that his quantifications—of metrics selected by the AGs' ███████████ ████████████████████████████████████████████ *Id.* § 17. For this reason, the AGs' argument that Saba can "assume issues of *liability* in order to calculate remedies," Mot. at 5-6 (emphasis added), is a red herring: what Saba assumes goes far beyond "liability"[5] by assuming a *connection* between such assumed liability and the metrics he has quantified. As the court explained in *Space Data*, while a damages expert may assume liability based on what the plaintiff "contends" or "alleges," his assumptions related to that liability are not insulated from rebuttal where his opinions incorporate "the shape, form, and effect of particular aspects of the alleged and assumed" conduct. 2019 WL 2603285, at *3 (N.D. Cal. June 25, 2019).

Perhaps recognizing this gap, Saba himself testified that ███████████████████ ███████████████████ implicit in his calculations and that he has ███████████████ ██████████████████████████████ Saba Dep. at 22:22-23:4, 24:5-15, 26:3-13, 103:9-18. That Saba professes such basis—without any corresponding analysis in his report—underscores that McCrary's critiques are directly on target and proper rebuttal opinions. The Court should reject the AGs' attempt to recast McCrary's rebuttal criticisms as affirmative causation opinions.

**III.     Opinions 1 and 2 Apply Routine and Reliable Methodologies of Economic Analyses**

The methodology McCrary applies, in which he observes how public data sources support or conflict with the assumptions underlying an economic damages calculation, is accepted within the field of economics and appropriate for McCrary's role as a rebuttal expert. *See* Michael Weisberg & Anastasia Thanukos, *How Science Works*, *in* Reference Manual on Scientific Evidence 47, 85, 93 (4th Ed. 2025). Indeed, "[r]ebuttal experts are not required to generate independent conclusions" to

---

[5] The AGs' cited cases involve contract and tort claims with much clearer damages calculations, and moreover, generally support that economic damages experts' assumptions must be sufficiently justified. *See Siquieros v. Gen. Motors LLC*, 2022 WL 74182, at *10 (N.D. Cal. Jan. 7, 2022) (holding that certain of damages expert's assumptions were appropriate because he relied on a technical expert's opinion, a cost analysis in the record, and a reasonable consumer standard); *Mahaska Bottling Co., Inc. v. PepsiCo, Inc.*, 441 F. Supp. 3d 745 (S.D. Iowa 2019) (observing that there may be some situations where a damages expert's testimony could be "so deficient in its factual bases that it would not be helpful to the jury").

directly contradict the opposing expert, but may instead present "reliable" testimony that "highlight[s] potential problems with" a damages calculation and "focuse[s] on the proper application of a method for calculating" damages that "Plaintiff itself has implicitly accepted as proper." *Sinclair Wyo. Ref. Co. v. Infrassure Ltd*, 2017 WL 11094221, at *3 (D. Wyo. May 19, 2017).

The AGs argue that McCrary's Opinions 1 and 2 are unreliable because they only consider certain types of "harm," do not rely on "reliable, scientific methods or principles," and do not include an articulation of McCrary's methods for selecting data or for "drawing conclusions on causation, mental health harms, and addictive use based on his selected data." Mot. at 6-7. These opinions mischaracterize McCrary's opinions and his obligations as a rebuttal expert, and raise questions that go at most to the weight, but not the admissibility, of McCrary's opinions.

As an initial matter, these arguments again rely on the flawed premise that McCrary's observations regarding mental health data and related public health data are meant to support affirmative opinions, including on causation and harm. To the contrary, as explained above, they merely underscore Saba's failure to tether his quantifications to the AGs' allegations, in this case by McCrary illustrating the apparent *lack* of connection between Saba's metrics and available data on mental health outcomes—conflicting data that Saba failed to consider. Courts have found that use of data to illustrate its "consisten[cy] with [the rebuttal expert's] analysis" can be "proper rebuttal evidence." *K&N Eng'g, Inc v. Spectre Performance*, 2011 WL 13131157, *4, *11 (C.D. Cal. 2011). McCrary does precisely this by identifying data that would appear inconsistent to an economist looking to test whether Saba's methodology reaches a meaningful answer to the question of interest. His observations that certain data appears "inconsistent" are not affirmative opinions on causation, but rather additional support for McCrary's criticism of the work that Saba has failed to do in substantiating his own opinions. *See also Autotech*, 2023 WL 2187476, at *10 (denying a motion to exclude rebuttal expert's testimony "argu[ing] that a reasonable expert would have taken COVID into account" without assuming COVID's impact on the sales).

These types of observations about reliable public data sources—as interpreted through the lens of an economist to determine whether they support the connection between what is being

8

measured and the allegations—reflect a step consistent with both the routine work of an economist and the work that McCrary has done in the past. *See* McCrary Dep. at 53:22-54:18, 193:2-198:8, 310:2-311:11; *Celador Int'l, Ltd. v. Walt Disney Co.*, 2008 WL 11342595, at *6 (C.D. Cal. Dec. 17, 2008) ("Econometricians analyze a wide variety of industries. They learn about those industries as necessary to apply techniques from their own field of expertise . . . [and] need not possess expertise in the underlying discipline involved in the case in order to critique the methodology employed by another expert."), *R. & R. approved*, 2009 WL 10675217 (C.D. Cal. Feb. 13, 2009).

The AGs further criticize the specific public health data McCrary analyzed, and claim that McCrary uses an "unfounded definition of 'harm' [that] conflicts with the State AGs' unfairness claims." Mot. at 7. But, as McCrary explained, his selection of public health data is based directly on the Complaint's allegations of harm. *See* McCrary Rep. ¶ 99 & n.157 (explaining that ███████ ███████████████████████████████████████████████████ ████████ and citing the Amended Complaint); *see also id.* ¶ 93 & n.151 (similar); McCrary Dep. at 190:2-193:1, 232:14-233:3, 241:21-242:3. It is far from a "legal non sequitur," Mot. at 7, for McCrary to consider whether Saba's tallies may have been rooted in the unspoken assumption of a causal connection between Saba's tallies and the specific types of harm the AGs allege.

Furthermore, in making observations about public health data from NSCH, MH-CLD, and YRBS databases, McCrary used his expertise to contextualize and explain these sources, including their national scope, how the data were collected, the relevant survey questions (where applicable), and their widespread use in academic literature. McCrary Rep. ¶¶ 99, 103, 112, 116; McCrary Dep. at 205:8-18, 215:18-217:20. The AGs offer no basis to question McCrary's consideration of these nationwide, government data sources, which McCrary has previously engaged with in his research activities, in support of his opinions. *See* McCrary Dep. at 110:16-111:1, 199:3-23.

In any event, any challenge to the reliability of the public health data that McCrary considers goes to the weight, not the admissibility, of McCrary's opinion. *Kirola v. City & Cnty. of San Francisco*, 2010 WL 3476681, at *3 (N.D. Cal. Sept. 2, 2010) ("[Q]uestions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its

9

admissibility[.]"). McCrary's Opinions should not be excluded on this basis.

## IV. McCrary's Opinions Are Economic Analysis That He Is Qualified to Give

McCrary is an applied economist with a Ph.D. in Economics and a long history in teaching and serving as an economic expert. *See* McCrary Rep. ¶ 7, App. A. Because McCrary's Opinions 1 and 2 are fundamentally an economic analysis of Saba's damages methodology, McCrary is patently qualified to offer them.[6]

McCrary's discussion of mental health data does not place Opinions 1 and 2 outside of his expertise as an economist. As discussed above, *see supra* Section III, economists regularly apply the methods of economic analysis to data across a variety of fields. *See Celador*, 2008 WL 11342595, at \*6 ("Econometricians analyze a wide variety of industries."). McCrary has also applied his skills in economic analysis to public health data as part of his scholarship, and he has previously interacted with the public health data sources he considered in this case. *See* McCrary Rep., App. A; McCrary Dep. at 110:16-111:1, 199:3-23, 309:23-311:11. McCrary is more than qualified to opine on how public health data support his methodological criticism of Saba's analysis and undercut the salience of the metrics quantified by Saba.

## V. Opinions 1 and 2 Are Not Causation Opinions and Do Not Violate the Court's Scheduling Order Regarding Causation Experts

Finally, the AGs' argument that McCrary's Opinions 1 and 2 should be excluded for not being disclosed within the deadline for causation experts, *see* Mot. at 10, is meritless because McCrary did not opine on causation, nor has he held himself out to be offering any such opinions. *See, e.g.*, McCrary Dep. at 102:24-104:4 ███████████████████████████████

████████████████████████ 106:23-107:5 ████████████

████████████████████████████████████████████████████

## CONCLUSION

For the foregoing reasons, the Court should deny the AGs' motion.

---

[6] The AGs' cited cases regarding causation, *see* Mot. at 3-4, concern affirmative experts primarily opining on causation rather than rebuttal experts opining on the reasonableness of a damages expert's methodology, and are therefore inapposite. *See Pooshs v. Phillip Morris USA, Inc.*, 287 F.R.D. 543, 547-48 (N.D. Cal. 2012); *Avila v. Willits Env't Remediation Tr.*, 633 F.3d 828, 837-39 (9th Cir. 2011).

Dated:  April 3, 2026

Respectfully submitted,

DAVIS POLK & WARDWELL LLP

/s/ Antonio J. Perez-Marques

James P. Rouhandeh, *pro hac vice*
Antonio J. Perez-Marques, *pro hac vice*
Caroline Stern, *pro hac vice*
Corey M. Meyer, *pro hac vice*
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
rouhandeh@davispolk.com
antonio.perez@davispolk.com
caroline.stern@davispolk.com
corey.meyer@davispolk.com


COVINGTON & BURLING LLP

Ashley M. Simonsen, SBN 275203
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-2749
asimonsen@cov.com

Paul W. Schmidt, *pro hac vice*
Phyllis A. Jones, *pro hac vice*
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
pschmidt@cov.com
pajones@cov.com

*Attorneys for Defendants Meta Platforms, Inc. and Instagram, LLC.*

META'S OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF JUSTIN MCCRARY
Nos. 4:22-MD-03047-YGR, 4:23-CV-05448-YGR