# EXHIBIT 4

REDACTED ECF 2879

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047<br><br>Case Nos.: 4:22-md-03047-YGR-PHK<br><br>**JOINT LETTER BRIEF REGARDING STATE AGS' MOTION TO COMPEL UNREDACTED COPY OF "DOCUMENT 4" ADDRESSED IN COURT'S PRIOR CRIME-FRAUD RULING AND UNDERLYING SLIDE DECK**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |
| This Filing Relates to:<br><br>*All Actions* | |

Dear Judge Kang:

Defendants Meta Platforms, Inc. f/k/a Facebook, Inc. and Instagram, LLC (together, "Meta") and the MDL State Attorneys General (collectively, "State AGs" and, together with Meta, the "Parties") respectfully submit this letter brief regarding the State AGs' motion to compel production of an unredacted copy of "Document 4" (addressed in the Court's prior ruling on Meta's motion for a protective order with respect to that document and three other documents over which Meta has asserted attorney-client privilege, *see* ECF 2629, 2633-1), and the underlying slide deck that is the subject of the attorney advice in Document 4, under the crime-fraud exception to the attorney-client privilege.

Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they repeatedly met and conferred by teleconference, email, and correspondence before filing this brief, including holding a final conference of lead trial counsel on Tuesday, March 17, 2026. Because all lead counsel were not located in the geographic region of the Northern District of California or otherwise located within 100 miles of each other, they met via teleconference. Lead trial counsel have concluded that no agreement or negotiated resolution can be reached.

Dated: March 25, 2026

Respectfully submitted,

**COVINGTON & BURLING LLP**

*/s/ Ashley M. Simonsen*
Ashley M. Simonsen (State Bar. No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars

1

Los Angeles, CA 90067
Telephone: + 1 (424) 332-4800
Email: asimonsen@cov.com

Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: + 1 (212) 841-1262
Facsimile: + 1 (202) 662-6291
Email: pschmidt@cov.com

*Attorneys for Defendants Meta Platforms, Inc.
f/k/a Facebook, Inc. and Instagram, LLC*


**ROB BONTA**
Attorney General
State of California

 */s/ Megan O'Neill*
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Emily Kalanithi (SBN 256972)
Supervising Deputy Attorneys General
Nayha Arora (CA SBN 350467)
David Beglin (CA SBN 356401)
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer (CA SBN 336428)
Marissa Roy (CA SBN 318773)
Brendan Ruddy (CA SBN 297896)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Joshua.OlszewskiJubelirer@doj.ca.gov

*Attorneys for Plaintiff the People of the State of
California*

2

**PHILIP J. WEISER**
Attorney General
State of Colorado
 /s/ Krista Batchelder
Krista Batchelder, CO Reg. No. 45066, *pro hac vice*
Deputy Solicitor General
Shannon Stevenson, CO Reg. No. 35542, *pro hac vice*
Solicitor General
Elizabeth Orem, CO Reg. No. 58309, *pro hac vice*
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6651
krista.batchelder@coag.gov
Shannon.stevenson@coag.gov
Elizabeth.orem@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel. Philip J. Weiser, Attorney General*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

*/s/ Philip Heleringer*
J. Christian Lewis (KY Bar No. 87109),
*Pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*Pro hac vice*
Zachary Richards (KY Bar No. 99209),
*Pro hac vice*
Daniel I. Keiser (KY Bar No. 100264),
*Pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*Pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV
ZACH.RICHARDS@KY.GOV

3

DANIEL.KEISER@KY.GOV
MATTHEW.COCANOUGHER@KY.GOV
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

**MATTHEW J. PLATKIN**
Attorney General
State of New Jersey

*/s/ Kashif T. Chand*
Kashif T. Chand (NJ Bar No. 016752008),
*Pro hac vice*
Attorney General
Thomas Huynh (NJ Bar No. 200942017),
*Pro hac vice*
Assistant Section Chief, Deputy Attorney General
Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*Pro hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiffs New Jersey Attorney General and the New Jersey Division of Consumer Affairs Matthew J. Platkin, Attorney General for the State of New Jersey, and Elizabeth Harris, Acting Director of the New Jersey Division of Consumer Affairs*

4

**State AGs' Position**: Meta has improperly claimed privilege to conceal key documents and statements from discovery: the statements demonstrate Meta's knowledge of its platforms' dangers to teens, and the statements and the attorney efforts to conceal those statements are relevant facts to establish the falsity and deceptiveness of Meta's public misrepresentations at issue in the State AG's consumer protection deception claims. The State AG's seek a determination that the redacted portions of crime-fraud Document 4 (Ex A) and of the prior versions of the PowerPoint it refers to are not privileged because: 1) Meta's attorneys successfully spoliated evidence by concealing or destroying intraday versions of the document that contained document comments and their responses, 2) the newly produced privilege log and prior versions of the PowerPoint demonstrate that the attorney advice was intended to spoliate evidence and perpetrate a fraud on the Court, therefore the crime-fraud exception applies regardless of whether spoliation was successful, and 3) in the alternative, the new evidence establishes the redacted advice was non-privileged business advice about the risk of leaks to business reputation.

This Motion is properly before the Court on fresh review because the Court's prior ruling was "without prejudice" and "without the need to seek leave from the undersigned to file a motion for reconsideration" and because this motion relies on the new evidence that arose from the Court's prior order (the privilege log and prior versions of the PowerPoint). (ECF 2629).

After this Court ordered "Meta to perform a diligent and reasonable search for and then produce all non-duplicative versions of the slide deck… including those versions Meta has already confirmed it has retained" Meta produced end-of day snapshots of the PowerPoint including those for July 5 (Ex B), 6 (Ex C), and 7 (Ex D). (ECF 2629 at 22). The Plaintiffs have inquired about the existence of change logs or intraday versions, but Meta has declined to produce any that exist despite this Court's statement that the Google Vault "search limitations" were "unpersuasive" and the claim of undue burden not sufficiently substantiated. (ECF 2629 at 17).

Under applicable ethical rules, a California lawyer cannot counsel a client to unlawfully conceal evidence. *See* Cal. Prof. Conduct Rule 3.4(a) ("A lawyer shall not: (a) . . . unlawfully alter, destroy or conceal a document or other material having potential evidentiary value.") "The planned crime or fraud need not have succeeded for the exception to apply. The client's abuse of the attorney-client relationship, not his or her successful criminal or fraudulent act, vitiates the privilege." *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007), *abrogated on other grounds by Mohawk Indus. Inc. v. Carpenter*, 558 U.S. 100 (2009). "Because both the legal advice and the privilege are for the benefit of the client, it is the client's knowledge and intent that are relevant." *Id*. at 1090.

Though only the intent to conceal evidence is necessary to establish crime-fraud, Meta successfully concealed and may have destroyed the intraday versions of the PowerPoint that occurred during the 10-hour long chat in Document 4. The missing change logs and intraday versions would show "unresolved comments… on slide 16", "████ comments on slide 5," and the crucial employee responses to those and other comments mentioned in Document 4. (Ex A:1, 3, 5, 8). As this Court said: "if it turns out that the prior versions of the documents do not in fact exist, then a fundamental premise of the Court's rulings would be lacking." (ECF 2629 at 23.). Now it is apparent that key information has been spoliated—Meta has not produced change

5

logs or versions of the slide deck that existed between the end-of-day snapshot on July 6 and the final document on July 7 when critical changes to the document were being made.

Meta's newly produced privilege log concedes the attorney advice was to reduce "litigation risk" (Ex E, line 8) and according to Ms. ▮▮▮▮▮ that redacted advice "limits our ability to learn and develop the best products for them. It sucks." (Ex A:8). There is no legal justification for the other redactions in the document. (Ex E, line 7, 9). Side by side comparison of Slide 5 in the July 6 PowerPoint (Ex C) with the July 7 version (Ex D) shows the advice from lawyers reduced "litigation risk" in this case by removing key admissions of Meta's knowledge: "Teens who spend more than 3 hours/day on social media face double the risk of poor mental health outcomes." On Slide 22 the attorney advice reduced "litigation risk" by deleting the admission of deception that Meta's published prevalence rates for harmful content are dramatically low because Suicide/Self-Injury and Eating Disorder ("SSI/ED") content has a "disproportionately large teen audience" that leads to them being exposed to that harmful content 2.5x as much as adults. Attorney advice also led to additions to slides that brought them more in line with Meta's future litigation strategy. (*E.g.* Ex. C, D: Slides 5, 16, 19, 22, and 35.).

The only logical explanations for these changes to the PowerPoint to brief the head of Instagram on a "vision for teen protections on IG" are to 1) conceal evidence of Meta's knowledge and deceptions in this ongoing MDL and related litigation, or 2) protect Meta's business reputation in case the PowerPoint leaked. The latter is implausible; the changes were unlikely to be reputational advice in case of leaks because the audience of "IG Leadership" is "low-risk" to leak the PowerPoint. (Ex A:4). Instead, the attorney edits eviscerate the business purpose of the PowerPoint and are "intentionally omitting stats that could help [IG leadership] properly assess the situation" and make it "increasingly hard" for IG leadership "to understand the severity of each space." (Ex A:7). The attorney edits were so severe that Mr. ▮▮▮▮ worries there was "no point" taking the PowerPoint to leadership and "how can we make product decisions if we are omitting information from strategies we show them." (Ex A:5, 7).

The Court need not guess what Meta's intent was when attorneys suggested edits to the slide deck that were contrary to Meta's business interests, but very much in its litigation interests. Ms. ▮▮▮▮▮ articulated Meta's intent to conceal evidence: "they don't want a paper trail tracing this back to information visually presented to leaders that may have to testify." (Ex A:8).

The new evidence of the privilege log and prior document versions demonstrates by a preponderance of the evidence that the crime-fraud exception applies because attorney-client communications were made with the intent to conceal documents from the Plaintiffs that are evidence of Meta's knowledge and deception.

**Meta's Position:** The Court already ruled against Plaintiffs on the precise issue the AGs seek again to raise. In its January 12, 2026 ruling (ECF 2629, 2633-1) ("MDL Order"), the Court held that the redacted portions of four documents, including "Document 4," reflect attorney-client communications made for the purpose of conveying legal advice and upheld Meta's assertion of privilege, finding the crime-fraud exception did not apply (subject to Meta producing additional versions of the underlying documents—which Meta has done). Having now received those additional versions (totaling 1,071 documents), the AGs seek reconsideration of the Court's ruling as to Document 4 based on speculation that the same communications in that document this Court

*already reviewed in camera* and determined to be privileged were *not* in fact for the purpose of offering legal advice.  Instead, the AGs theorize—based on changes that were made to the underlying slide deck around the time of the advice—that those communications must have been for the purpose of offering either (1) business advice or (2) advice to withhold internal company documents from Plaintiffs in this litigation.  The AGs waived the former argument, and already made the latter in prior briefing.  More importantly, both arguments were already rejected by the findings of this Court and Judge Kuhl.  The Court should deny the AGs' motion.

***First***, "[n]o party may notice a motion for reconsideration without first obtaining leave of Court." Civil L.R. 7-9(a).  The AGs did not obtain leave before filing their motion.  It may be denied on that basis alone.  *See Oliver v. City and Cnty. of S.F.*, 2009 WL 10736489, at \*2 (N.D. Cal. Mar. 23, 2009).  While the Court's prior Order was "without prejudice," that was only because "a fundamental premise of the Court's rulings"—i.e., "that there has been no spoliation"—"would be lacking" if "Meta refuses or otherwise fails to produce the documents as ordered herein."  MDL Order at 23-24.  Meta has now produced the documents as ordered by the Court (and agreed-to by all Plaintiffs), so there is no basis for the AGs to renew their effort to pierce privilege.  *See* ECF 2674 (Notice of Compliance with Order); ECF 2714 at 3-4 (so-ordered stipulation among Plaintiffs and Meta agreeing on universe of underlying documents "for which Meta has an obligation to produce prior versions" under Order).  Nor are the AGs seeking "other or different relief with regard to these four documents" based on a change in "the status of these four documents"—the only other basis on which the Court deemed its Order "without prejudice."  MDL Order at 26.

***Second***, the AGs have failed to allege "a material difference in fact or law," "[t]he emergence of new material facts or a change of law," or "[a] manifest failure by the Court to consider material facts or dispositive legal arguments."   Civil L.R. 7-9(b); *see Lizarraga-Davis v. Transworld Systems Inc.*, 2022 WL 4485813, at \*1 (N.D. Cal. Sept. 27, 2022) (motion for reconsideration must satisfy Rule 7-9(b) requirements).  To the contrary, the AGs are making arguments Plaintiffs either already made or expressly waived[1] in prior briefing.  *See, e.g.*, ECF 2474 (MDL Mot.) at 13, 15 (premising crime-fraud theory on argument that counsel "instructed researchers to destroy unfavorable evidence during the pendency of this litigation"); 12/1/25 MDL Hr'g Tr. at 55:5-10 (arguing that "attorney communications … were in furtherance of crime-fraud or misconduct[—]namely, obfuscating the adjudication of Meta's liability in the [MDL]"); *see also* ECF 2506-4 (JCCP Mot.) at 9 (arguing that Meta "perpetrated a fraud" because it "intended its actions to keep bad information away from adverse parties and limit its litigation risk"); 1/14/26 JCCP Hr'g Tr. at 11:2-8 (arguing that intent to conceal evidence, even without spoliation, is enough because "California law does not require the fraud to be completed").  Both this Court and Judge Kuhl already rejected these arguments.  *See* MDL Order at 11-12, 15, 17, 21; ECF 2644-14 ("JCCP Order") at 4; *see also* JCCP Order at 3 ("It does not appear that concealing evidence from an opponent in litigation is typically treated as fraud."); 1/14/26 JCCP Hr'g Tr. at 23:22-23:1 ("the duty [to disclose for purposes of fraud] has to exist outside the course of litigation").

---

[1] Plaintiffs previously conceded that the four documents reflect "legal" (not "business") advice, *see, e.g.*, ECF 2474 (MDL Mot.) at 13, 15; ECF 2506-4 (JCCP Mot.) at 3.  *See Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (reconsideration motion "may not be used to raise arguments … for the first time when they could reasonably have been raised earlier").

Nor do the different versions of the slide deck that Meta recently produced provide a basis for reconsideration. The AGs contend those versions reveal that counsel for Meta advised Meta employees on July 7, 2023 to "conceal evidence of Meta's knowledge and deceptions in this ongoing MDL and related litigation." As an initial matter, there is no basis to infer that every change made to the deck around July 7, 2023 was due to advice of *counsel*; Document 4 confirms that multiple Meta employees, including attorneys and non-attorneys, had access to and suggested edits to the deck that day. And, as Meta previously showed, the advice relating to the slide deck (reflected in Document 4) was provided for an entirely proper purpose. *See* ECF 2661-3 (redacted version of attorney declaration previously submitted by Meta *in camera*); *see also* JCCP Order at 4 (finding that "[a]dvice by counsel concerning the direction of a client's future research activities, how that research should be characterized, and whether research findings should be made public is within the protection of the attorney-client privilege"). Meta's prior showing and the courts' prior privilege determinations as to Document 4 apply equally to the privileged comments in the slide deck, which contain the attorney advice that is conveyed in Document 4.

More to the point, any changes to the slide deck discernable from the different versions Meta produced do not constitute "new material facts" bearing on the privilege issue at hand. This Court already reviewed the advice at issue (in Document 4), upheld Meta's assertion of privilege (subject to Meta's production of additional versions of the slide deck), MDL Order at 21-23, and specifically ruled that the production of those additional versions *would not* be a basis for a further privilege challenge: "the production of the various edited versions of the underlying documents provides … the underlying factual material from which [Plaintiffs] can make arguments as to the merits of the case, *without the need to pierce the privilege*." *Id.* at 14, 19, 22 (emphasis added). The AGs cannot use that underlying factual material to try again to pierce privilege, because the Court held that the advice was privileged and that "the crime-fraud exception should not apply … if the underlying documents and evidence which demonstrate the changes made to the documents are produced," *id.* at 23, which they now have been. The Court has thus already determined that this was privileged legal advice—this was the premise of evaluating an exception to the privilege.

**Meta's Reply:** The AGs' newfound suggestion that Meta failed to comply with the MDL Order because Meta did not produce "intraday" versions is groundless. The Order specifically noted that "Meta has confirmed that previous versions … are found within Google Vault" and required Meta to produce versions "retained in Google Vault" ("including" the versions Meta "ha[d] already confirmed" it had retained), MDL Order at 17-18. Meta then certified (with no contest from Plaintiffs) that it had complied with the Order by producing the versions "that Meta has retained in Google Vault" (ECF 2674 at 2-3). And all Plaintiffs stipulated—and the Court ordered—that (1) Meta would produce prior versions of certain documents "*that are retained in Google Vault*" and that (2) such documents "constitute all [such] documents for which Meta has an obligation to produce prior versions." ECF 2714 at 3-4 (emphasis added). Meta ultimately produced 1,071 versions. (In *Tessera*, by contrast, there were only two versions of the document at issue—one predating and one postdating publication, *see* MDL Order at 12-13 (citing *Tessera*, 2006 WL 8441639, at *2 (E.D. Tex. June 23, 2006)); *Tessera* does not support the AGs' argument that Meta should have produced all *intraday* versions.) Moreover, the AGs' assertion that Meta "conceal[ed] or destroy[ed] intraday versions of the" slide deck is demonstrably false. As the AGs know (from Meta's prior declarations and publicly available sources), *intraday versions of Google documents are retained in Google Docs*—just not in Google Vault. *See* ECF 2594-3 (re-filed as Ex. F) ¶ 6;

8

ECF 2600-2 ¶ 4(a); Google Vault Help.  Nor did Meta "decline[] to produce any [intraday versions] that exist," as the AGs claim.  To the contrary, ***Meta offered to take the manual steps required to produce intraday versions of the slide deck from July 7, 2023***—all 9 of which have been retained—if the AGs would accept the Court's prior ruling and stop raising crime-fraud issues with respect to these four documents (as the PI/SD and JCCP Plaintiffs have done).  Because the portions of those intraday versions over which Meta is (still) asserting privilege would be redacted, however, the AGs declined Meta's offer—underscoring that they do not need the intraday versions, because the versions already produced aptly "demonstrate the changes made to the [slide deck]," permitting the AGs to "make use of those facts in arguing the merits of this case."  MDL Order at 22-23.  On that point, the AGs' comparison of the July 6 and 7 versions *undermines* the inferences they urge: the AGs quote language on slide 22 that *was not changed* (the later version merely removed a specific statistic), and language on slide 5 *in speaker notes*—nearly *all* of which (including other speaker notes the AGs ignore) were removed or edited just prior to circulation of the deck to leadership.  Even crediting the AGs' theory of fraud, their own authority confirms that a company's "failure to disclose information" or efforts to "limit its liability" "does not ordinarily constitute fraud on the court."  *Napster*, 479 F.3d at 1096-97.  More to the point, the AGs *now have* versions of the slide deck from before and after these changes were made, meaning "there has been no spoliation" and "the crime-fraud exception should not apply."  MDL Order at 23.

**State AG's Response:** Meta's procedural objections fail: the PowerPoint versions show for the first time *what* was being scrubbed by Meta lawyers, the privilege log gives new insights into *why* the scrubbing took place, and Meta's failure to produce change logs or intraday versions shows *ongoing* efforts to conceal evidence in violation of this Court's prior order. Without the PowerPoint comments and responses, and the attorney advice and responses redacted from Document 4 (Ex A), the State AGs cannot effectively cross-examine witnesses about their and Meta's knowledge and intent.

Meta's attorneys took a PowerPoint that reflected the existing knowledge and intentions of Meta's employees (Ex B, C) and had it changed to represent positions Meta wanted to portray in litigation (Ex D). Unlike in *Tessera*, Meta concealed unvarnished versions of the documents for years, until after the close of discovery, and until explicitly ordered by the Court. 2006 WL 8441639 at 2 (E.D. Tex. 2006). This makes effective discovery and deposition impossible, and echoes some of the conduct for which Meta was recently sanctioned in this district in another matter. *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 923 (N.D. Cal. 2023) ("over-designation of documents as privileged supports the Court's finding of bad faith"). Meta intended this attorney advice about "litigation risk" to conceal evidence of Meta's knowledge and deception in ongoing litigation, and thus the crime-fraud exception applies.