# EXHIBIT 2

COVINGTON & BURLING LLP
Ashley M. Simonsen (Bar No. 275203)
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Email: asimonsen@cov.com
Facsimile: (424) 332-4749

*Attorneys for Defendants Meta Platforms, Inc.*
*f/k/a Facebook, Inc. and Instagram, LLC*

*[Additional parties and counsel listed on*
*signature pages]*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| COORDINATION PROCEEDING SPECIAL TITLE [RULE 3.400]<br><br>*SOCIAL MEDIA CASES* | **JUDICIAL COUNCIL COORDINATION PROCEEDING NO. 5255**<br><br>For Filing Purposes: 22STCV21355 |
| THIS DOCUMENT RELATES TO:<br><br>*Bellwether Plaintiff K.G.M. in P.F., et al. (K.G.M.) v. Meta Platforms, et al.*<br><br>Case No. 23SMCV03371 | **FILING OF CERTAIN K.G.M. TRIAL-RELATED CASE ANYWHERE MESSAGES POSTED PRIOR TO AND DURING K.G.M. TRIAL**<br><br>Judge: Hon. Carolyn B. Kuhl<br>Department: SSC-12 |

The parties enclose below certain messages, related to the K.G.M. trial, posted by the parties and the Court on Case Anywhere prior to and during the K.G.M. trial, to be included in the record.

**Rule 402 Hearing Update**

Message posted by Alice Greenhill, Esq. (Covington & Burling LLP) at 1/6/26 6:04 PM (PDT)

The Parties submit this CaseAnywhere post regarding whether a Rule 402 hearing on January 10th and 11th will be necessary to address whether Defendant-company documents are authentic and business records. As detailed in the Parties' December 23 joint pretrial report, Plaintiffs provided Defendants with a set of documents for which Plaintiffs requested stipulations as to authenticity and the business records exception, and Defendants have responded to Plaintiffs' requests. Defendants have stipulated that they will not object on authenticity or business records grounds to the significant majority of the documents Plaintiffs have identified. The Parties are continuing to meet and confer as to the small set of documents for which Defendants did not stipulate. The Parties believe that sufficient progress has been made at this time to warrant postponing the Rule 402 hearing tentatively scheduled for January 10th and 11th, and the Parties expect that continued progress will be made through ongoing meet and confer efforts. The Parties will promptly update the Court if circumstances change. Plaintiffs sent another batch of 50 documents per Defendant on January 5, and Defendants will respond on January 9th in the morning with respect to those documents.

Additionally, on December 15 and 18th, Defendants and Plaintiffs provided each other with a set of documents not produced by Defendants for which they requested stipulations as to authenticity and the business records exception. Defendants' set consisted principally of third-party medical, employment, educational, insurance, and other records produced by Plaintiffs or collected pursuant to authorizations by Defendants' records collection vendor. Plaintiffs stipulated that 12% (24 of 201) of the documents were authentic and did not stipulate that any were business records. Defendants stipulated that they would not object to the authenticity of 81% (330 of 406) or on grounds of the business records exception to 59% (241 of 406) of the documents. Defendants submit that a 402 hearing to address Plaintiffs' responses may be necessary at a later date following conferrals with Plaintiffs. Plaintiffs informed Defendants they believed a meet and confer regarding these documents would be fruitful and

2

allow for further agreement. The Plaintiffs do not believe a 402 regarding these third party documents is necessary, but will inform the Court promptly should that change.

Reply message posted by Michelle Miro (Los Angeles Superior Court) at 1/7/26 1:13 PM (PDT)

The court thanks the parties for this update and for your cooperation.

Department 12

**Statement to jury venire before hardship questionnaire**

Message posted by Hon. Carolyn Kuhl (Los Angeles Superior Court) at 1/20/26 6:15 PM (PDT)

The court is uploading to Case Anywhere a proposed Statement to each group of prospective jurors when they arrive in the courtroom. Plaintiffs and Defendants (collectively) may propose suggested edits (using a redline) by noon on Thursday, Jan. 22.

Reply message posted by Mariana McConnell, Esq. (Kiesel Law LLP) at 1/22/26 12:24 PM (PDT)

The parties are continuing to confer and will submit a proposed revised version, or agree to the Court's version, by 4pm.

We apologize for the delay.

Reply message posted by Mariana McConnell, Esq. (Kiesel Law LLP) at 1/22/26 3:43 PM (PDT)

Your Honor,

The parties posted a redlined version of the Court's draft statement for consideration titled "Redlined Court's Draft Statement to Prospective Jurors."

Plaintiffs were prepared to accept the statement as drafted by the Court yesterday. Defendants proposed the edits highlighted in green, which Plaintiffs would accept if the edits in yellow highlight were adopted. Defendants do not agree to the phrase "or worsened" at the end of the first paragraph, pending the Court's ruling on whether to pre-instruct the jury on CACI 3927. If the Court grants Plaintiff's request for that instruction, Defendants would not object to the phrase "or worsened."

Unfortunately, the parties are now at an impasse.

Mariana McConnell, Plaintiffs' Co-Lead Counsel

Alice Greenhill, on behalf of Defendants

Reply message posted by Hon. Carolyn Kuhl (Los Angeles Superior Court) at 1/22/26 7:43 PM (PDT)

The court has briefly reviewed the parties' proposed edits. The court has no idea why Defendants are objecting to use of the phrase "social media." Please explain in a joint posting. Thank you.

**Response to Court's Inquiry re Statement to Jury Venire Before Hardship Questionnaire**

Message posted by Shallen Torrez (Wilson Sonsini Goodrich & Rosati) at 1/23/26 12:35 PM (PDT)

YouTube's Position:

YouTube is primarily a video streaming platform. Indeed, Plaintiff KGM has primarily used YouTube to view videos and listen to music. While YouTube shares certain social features with its co-defendants' services, its primary use case is not for connecting with one's social network. Many academic studies do not identify YouTube as social media, but instead group it with other video streaming platforms like Netflix.

YouTube acknowledges that it is sometimes categorized as "social media." But contrary to Plaintiff's statement, YouTube did oppose consolidation in these mass proceedings. See Interested Parties YouTube, LLC, Google LLC, and Alphabet Inc.'s Response to Motion to Transfer, In Re: Social Media Adolescent Addiction / Personal Injury Products Liability Litigation, MDL No. 3047, ECF No. 46. This JCCP was formed only after YouTube was included, over its objections, in the parallel federal MDL.

Since the beginning of this case, YouTube consistently distinguished itself from traditional social media and noted that it is often excluded from that term. E.g., Demurrer (July 14, 2023) at 35 (explaining that "YouTube offers little or not of the features typical of 'social media' upon which several of Plaintiffs' liability theories rest"); Motion to Exclude Expert Testimony of Dr. Eva Telzer (July 28, 2025) at 20 (arguing for exclusion of opinions as to YouTube because Dr. Telzer "does not consider YouTube social media."); Motion to Exclude Expert Testimony of Dr. Jean Twenge (July 28, 2025) at 16 (noting "Dr. Twenge conceded that YouTube 'most likely' would not have been considered 'social media use'" by respondents of a survey on which Dr. Twenge relied); YouTube's Motion for Summary Adjudication on Plaintiff KGM's Remaining Causes of Action (August 14, 2025) at 23 (emphasizing that "Plaintiff testified that she does not consider YouTube to be 'social media'").

Regardless of how Court or the jury views the question of categorization, the fact of the parties' dispute only underscores that describing YouTube as "social media" is not a "neutral" statement.

4

Defendant YouTube therefore requests that the Court's neutral statement refer to the specific Defendant platforms at issue in the case without characterizing them or, alternatively, use a more general term, such as Internet platform.

Plaintiffs' Response:

YouTube's position is nonsensical and frankly, strains credulity. This is the Social Media JCCP, and Google/YouTube did not argue against that title or to not be included at the time of coordination. That makes sense because YouTube's internal documents confirm that YouTube considers itself to be social media. As far back as 2020, YouTube explicitly stated that "YouTube is the most popular social media site used by 15-25 year olds." (GOOG-3047MDL-00402817) (emphasis added).

Further, If you "Google" "Is YouTube social media?", Google's AI says (as of 1/23/26 assuming this doesn't prompt defendants to now go change what Google says):

"YouTube is widely considered a social media platform, functioning as a video-sharing site with strong social features like user-generated content, comments, subscriptions, and community building, although it also acts as a massive search engine for video content. It allows for networking, sharing, and interaction, just like other social platforms, but focuses on video, making it a hybrid media and social hub for diverse audiences and creators."

This is not a genuine issue in dispute and is a waste of the Parties and Court's time.

**Plaintiffs' Request to Videotape Witnesses for Future Trials**

Message posted by Jesse Creed, Esq. (Panish | Shea | Ravipudi LLP) at 1/31/26 1:03 PM (PDT)

Plaintiffs' Position

Plaintiffs request that the Court permit a certified videographer to videotape the testimony of live witnesses in the upcoming KGM trial. As the Court has previously referenced, this coordinating proceeding involves 3,000 individual actions that may require trial. The Court has expressed hope that the bellwether process facilitates resolution, but has also referenced contingency plans if all the cases require trial, including breaking up the cases and sending them out to trial courts throughout the County or State. Defendants have objected to the appearance of executive live witnesses, and TikTok has recently begun to object to the appearance of non-executive witnesses at the second trial, in both cases under the subpoena power of the Court. The Court has indicated at some point it may not require an

FILING OF CERTAIN K.G.M. TRIAL-RELATED CASE ANYWHERE MESSAGES POSTED PRIOR TO AND DURING K.G.M. TRIAL

executive to testify live. Because of the uncertainty of global resolution and the need to protect the due process and trial rights of all plaintiffs before this Court against the alleged burdens on the Defendants and their witnesses, Plaintiff believes it is appropriate to permit videotaping of Defendants' witnesses starting with the KGM trial.

For KGM, at this time, we would request video recording of the following witnesses:

Zuckerberg

Mosseri

Mohan

Goodrow

Plaintiffs are open to agreeing to some kind of a protective order to limit the dissemination or use of these videos.

Plaintiffs are also open to the Court retaining custody of the original videotaped footage for security to prevent dissemination. Defendants' objections do not trump the obligations owed to ensure a fair trial for over 3,000 cases when the Court decides to deny those plaintiffs the benefit of the testimony of the C-suite executives. As for the hearsay objection, though meritless as these executives' statements are party admissions, it need not be decided at this time. As for the use of this deposition by those outside the JCCP, the protective order and custody of the original footage can easily resolve those issues. As for the emphasis on certain witnesses, the videotaping can be minimized (videographers can use very small, inconspicuous cameras) or can appear to be running for other witnesses too. As for YouTube's claim the Court has denied cameras in the courtroom, it has as to the general press and media, but this footage is not for the public but for the other 3,000 parties to whom the Court and counsel owe an obligation to provide a fair trial. As for the fact that the executives have been deposed, a deposition does not excuse a witness from complying with a trial subpoena, so the amount of deposition testimony is irrelevant for witnesses under this Court's subpoena power. In the end, there is no harm to the videotaping of the witnesses with inconspicuous cameras, under protective order, with the court retaining custody of the footage, subject to a later court's ruling on admissibility.

Meta's Position

FILING OF CERTAIN K.G.M. TRIAL-RELATED CASE ANYWHERE MESSAGES POSTED PRIOR TO AND DURING K.G.M. TRIAL

After refusing to rely on more than 25 hours of testimony from the depositions of Mr. Zuckerberg and Mr. Mosseri at this trial, Plaintiff now argues they need to record their trial testimony, so it can be used at future JCCP trials and beyond. For example, the State of New Mexico has already notified Meta that it intends to play Mr. Zuckerberg's recorded JCCP trial testimony at that trial. Plaintiff's counsel cites no authority to support their request. The Court should deny Plaintiff's request to record witness testimony because it is not contemplated by the California rules and could prejudice Meta and confuse the jury.

California law expressly permits a party to rely on a witness's deposition testimony at trial. See, e.g., Cal. Civ. Proc. Code § 2025.620 ("At the trial . . . any part or all of a deposition may be used against any party who was present or represented at the taking of the deposition. . . ."). But Plaintiff has declined to do so for Mr. Zuckerberg and Mr. Mosseri in this case. Plaintiff instead seeks to record their live testimony in this case for use in future cases, but California law is clear that a party cannot introduce prior trial testimony from a different case unless, among other things, the witness is unavailable. Cal. R. Evid. 1291(a); see also Berroteran v. Superior Ct., 12 Cal. 5th 867, 882 (2022) ("section 1291(a)(2) recognizes an exception to the hearsay rule and allows introduction of 'former testimony' if the declarant is unavailable").

Plaintiff notes that the Court may not require Mr. Zuckerberg and Mr. Mosseri to testify at future JCCP trials. But the reason these witnesses would not be required to testify at future trials would not mean they are "unavailable," as California law defines that term. See Cal. Evid. Code 240 (witness is "unavailable" where, for example, they are incapacitated or beyond the court's process). Rather, Meta has sought to preclude their testimony at future trials by invoking the apex doctrine, which protects corporate executives from burdensome requests for testimony. See Liberty Mut. Ins. Co. v. Superior Ct., 10 Cal. App. 4th 1282, 1284, 1288-89 (1992). If the Court agrees with Meta that, for subsequent trials, these witnesses do not need to provide live testimony, those plaintiffs will be permitted to introduce portions of the witnesses' deposition testimony. See Cal. Civ. Proc. Code § 2025.620. Contrary to Plaintiff's suggestion, requiring plaintiffs in future cases to rely on prior deposition testimony, rather than prior trial testimony, does not raise any due process concerns. The California rules expressly contemplate that result.

Moreover, Plaintiff's request, if granted, risks prejudice to Meta and juror confusion. The Court may permit trial testimony to be recorded only if it can ensure that "the fairness and dignity of the proceedings are not adversely affected." Cal. R. Ct. 1.150(a). The presence of video cameras for only certain witnesses will signal to the jury that the testimony of those witnesses has additional importance, prejudicing Meta. Similarly permitting videotaping of only some witnesses and not others would necessarily invite juror speculation about the reasons for the different protocols being followed by the Court.

That risk of prejudice to Meta and juror confusion will extend any future trial in which the testimony from an earlier trial is used. Plaintiffs were permitted to take lengthy depositions of the Meta witnesses to obtain testimony on a broad range of topics for use in all related cases. The testimony given in this particular case should be limited to issues relevant to this case. It should not cover issues that may be relevant to future cases, which may involve different time periods and different alleged injuries.

Plaintiff suggests that Mr. Zuckerberg's and Mr. Mosseri's testimony would be treated as party admissions, though they acknowledge it is premature to make that determination. But that is no reason to permit videotaping. If portions of the testimony are admissible as party admissions, a plaintiff in a future case can rely on the transcript of that testimony. Likewise, Plaintiff is incorrect to suggest that a protective order will protect Meta from prejudice. A protective order is unlikely to protect Meta from the videotapes being compelled for production for use in other jurisdictions. And the process Plaintiff envisions-videographers using "small, inconspicuous cameras" and pretending to video other witnesses-creates a greater risk of distraction and juror confusion.

YouTube's Position

The Court has already decided to not to permit recording in the courtroom, and there is no reason the outcome should be different when Plaintiffs' counsel is making the request. The process to preserve testimony for future use is through depositions, and the Plaintiffs have already taken videotaped depositions. Further, permitting video recording in the courtroom risks disruption and prejudice as jurors speculate about the reasons for filming, or for only filming specific witnesses. The Court should not complicate this first bellwether with disruptive and unnecessary video recording.

Reply message posted by Hon. Carolyn Kuhl (Los Angeles Superior Court) at 2/1/26 2:24 PM (PDT)

8

The court has reviewed the positions and argument of each side regarding this issue as set forth in the joint Case Anywhere posting. The court denies Plaintiffs' request.

Plaintiffs have not previously requested to videotape the testimony of specified Defendant representatives during the trial of K.G.M. Plaintiffs' current request is been made during the course of voir dire for the K.G.M. trial and within less than 10 days of the scheduled testimony of Mr. Zuckerberg. This court months ago denied the request of Mr. Zuckerberg to be excused from attending this trial. It is too late now to substantially change the conditions under which he will testify.

As has been stated on the record, this case has attracted substantial media attention. The court has ensured an open courtroom for the media despite space limitations. However, the court has refused to allow audio or video recording of courtroom proceedings, in part due to Plaintiff's concern for K.G.M.'s privacy, which this court has agreed to accommodate in this trial, issuing a written decision after briefing by both sides.

Reversing course now and allowing video taping of portions of this trial would appear to the public to disadvantage the media. Moreover, the video record might be construed to be a court record that the public could have a right to access. Neither side has presented briefing on this issue, and the court does not have time to research or consider authorities bearing on that issue as the trial is proceeding. In the event the video record were made public, such one-sided publication of a portion of filmed testimony of this trial would be unfair to Defendants because they would not have an opportunity to publish videotaped testimony of the Plaintiff or her mother or of any other witness the Defendants believe is favorable to their case.

The parties are ordered to agree on a format for filing in the court record their Case Anywhere posting on this issue and this response thereto.

Judge Kuhl

**Joint Request to Resolve Certain Evidentiary Disputes Before Opening**

Message posted by Alice Greenhill, Esq. (Covington & Burling LLP) at 2/4/26 9:54 AM (PDT)

Your Honor,

The parties have identified a narrow set of issues they have not been able to resolve after meeting and conferring in good faith and believe would benefit from resolution by the Court prior to opening statements. In addition to the three issues listed below, Plaintiff and YouTube will submit a separate post today regarding specific evidence at issue in YouTube's pending Motion in Limine No. 4. The parties agree that resolution of these four issues would help mitigate the risk of undue prejudice to any party during the presentation of opening statements.

(1) Defendants' Joint Motion in Limine No. 19 (To Exclude References of Comparisons to Recognized Addictive Substances)

**DEFENDANTS' POSITION**

Plaintiffs have indicated that in opening they intend to invoke comparisons to recognized addictive substances, such as tobacco, opioids, or other drugs. This issue has been fully briefed in Defendants' Joint MIL No. 19. Given the undue prejudice that would result from such a comparison during opening statements, Defendants respectfully request the Court rule on Defendants' motion prior to opening.

**PLAINTIFFS' POSITION**

Plaintiffs have briefed this issue in opposition to Defendants' Joint MIL No. 19 and also rely on that briefing. Plaintiffs may analogize social media addiction to other recognized behavioral and substance addictions in opening statement and through causation expert testimony, as does the scientific community. Plaintiff believes such analogies are proper and supported by the evidence, including Defendant's own internal documents in which Meta employees compare their platforms to addictive substances and drugs. These types of comparisons go directly to the issues of causation, notice, and are probative, not unfairly prejudicial.

(2) Defendants' Joint Motion in Limine No. 18 (To Exclude the Improper Lay Opinions of Aza Raskin)

**DEFENDANTS' POSITION**

Plaintiffs have indicated they intend to introduce Mr. Raskin as a witness the jury will hear from during opening statements. Mr. Raskin, who has never worked for any defendant, has no relevant personal knowledge as a fact witness in this case. And having withdrawn Mr. Raskin's disclosure as a non-retained expert, Plaintiffs cannot elicit expert testimony from Mr. Raskin, including that infinite

10

scroll is harmful or addictive. This issue has been fully briefed in Defendants' Joint Motion in Limine No. 18. Given that Plaintiffs plan to introduce Mr. Raskin and describe his anticipated testimony, Defendants respectfully request the Court rule on Defendants' motion prior to opening.

**PLAINTIFFS' POSITION**

This issue has been fully briefed in Plaintiffs' opposition to Defendants' Joint MIL No. 18, upon which Plaintiffs rely. Mr. Raskin has relevant personal knowledge as a fact witness because he invented infinite scroll, a feature available on Defendants' platforms. Mr. Raskin can testify to facts and circumstances surrounding his invention of this feature, including how and why it was designed. Plaintiffs will not be eliciting expert opinions from Mr. Raskin. His fact testimony is relevant and admissible.

(3) KGM's mother's declaration stating that KGM's father's drug use was the cause of him puncturing KGM's ear drum

**DEFENDANTS' POSITION**

KGM's mother stated in a sworn declaration during her divorce from KGM's father that he "has had a drug use problem and I believe the drug use was the cause of him puncturing our youngest daughter's ear drum in August 2008." Evidence tending to show that KGM's father's substance abuse had an impact on KGM, including in this case causing her physical harm, is relevant to alternative causes of the harms she attributes to Defendants' platforms.

**PLAINTIFFS' POSITION**

In opening, Defendants seek to discuss a Q-Tip incident, where KGM's father accidentally injured her ear with a Q-Tip when she was approximately three years old. Plaintiff respectfully objects to any reference in Defendants' opening statement to this so-called "Q-tip accident" and specifically to speculative statements made by Plaintiff's mother in divorce proceedings suggesting Plaintiff's father might have been under the influence of drugs at the time of the accident.

A. The Q-Tip Incident Lacks Relevance

No expert (either Plaintiff's or Defendants') has opined that this childhood Q-Tip accident caused the harms at issue in this case. Medical records confirm Plaintiff's ear healed completely, and she

11

remained asymptomatic for years before developing the mental health conditions central to this litigation. The incident is therefore not probative of any issue properly before this Court.

B. KGM's Mother's Drug Speculation Is Inadmissible and Highly Prejudicial

The mother's statements in divorce documents speculating that she believed the father was "on drugs" during the incident are:

1. Speculation by a lay witness with no medical training or expertise;

2. Unsupported by any of father's medical records, toxicology reports, or drug testing - none of these records have been produced in discovery or shown to exist;

3. A disputed collateral issue that would necessitate a trial within a trial;

4. Overwhelmingly prejudicial with virtually no probative value.

Under California Evidence Code § 352, this speculative opinion should be excluded as its prejudicial effect substantially outweighs any minimal probative value.

Plaintiff respectfully requests the Court preclude any mention of this incident, any suggestion that the father was "on drugs" during this incident, and the associated divorce statements in opening statement.

Rachel Lanier (Plaintiff's counsel)

Daniel Auten (Meta's counsel)

**KGM Jury Instructions**

Message posted by Madeleine Dolan, Esq. (Covington & Burling LLP) at 2/6/26 12:56 PM (PDT)

Your Honor,

The parties reviewed and corresponded regarding the Court's KGM jury instructions. The parties have submitted on Case Anywhere a memorialized version of the Court's order and flag the following items for the Court:

1. Titles. Plaintiffs believe that the titles should not be on the version of the instructions that goes back to the jury, which CACI permits (see CACI pg. 3). Defendants do not oppose this request. The version the parties have provided to the Court currently has titles to help organize the document. The parties are happy to prepare a different version that will go back to the jury if the Court so intends.

2. CACI 101. Based on the Court's subsequent ruling on YouTube's instructions, the parties believe the following language should be struck: "YouTube further contends that KGM's claim for damages are barred by the Terms of Service agreement she entered into with YouTube and that independent, intervening, or superseding events after its alleged negligence cause KGM's alleged harms." The parties have omitted this sentence in the instructions provided to the Court.

3. CACI 412. During the January 9, 2026 hearing, the parties offered an additional sentence at the end that was not included in the Court's order (i.e., "This instruction applies only to the time in which the plaintiff was a minor.") The version of CACI 412 in the instructions the parties have provided to the Court currently includes the additional sentence. The parties request clarification on whether including that sentence is not the Court's intent.

4. CACI 401, 413, 431, 3928, and 3946. Plaintiffs request using "and/or" in these three instructions. While the CACI directs the user to insert the defendant's name, it contemplates only one defendant. The "or" suggests mutual exclusivity-that the jury can only find one defendant liable, not both. Plaintiffs believe "and/or" accurately reflects the law and request this modest change. Plaintiffs note that, while CACI does not offer draft language for multiple defendants, CACI does use "and/or" for other contexts. See CACI 4500, element 4. Defendants do not oppose this request and have added the same language in CACI 401 and 413. The versions of these instructions provided to the Court reflect this "and/or" formulation.

5. CACI 3933. Defendants have adjusted "and [third party]" in the third sentence of CACI 3933 to read "and third parties," consistent with CACI 406.Plaintiffs note that Meta and YouTube both include a line for "others" on their proposed verdict forms, and YouTube also includes lines for KGM's mother and father. Plaintiffs believe that a vague line for "others" on the verdict form is improper, as would be corresponding vague identifications in CACI 406 and 3933. Plaintiffs believe that CACI 406 and 3933 should accurately reflect that Defendant YouTube seeks to blame KGM's mother and father. Defendants believe it is premature to list specific third parties on the pre-instructions before evidence has come in.

The parties are happy to discuss these items with the Court.

**(1) Ruling on YouTube MIL 4; (2) Order of Witnesses; (3) Exhibit List; (4) Jury Instructions**

FILING OF CERTAIN K.G.M. TRIAL-RELATED CASE ANYWHERE MESSAGES POSTED PRIOR TO AND DURING K.G.M. TRIAL

<u>Message posted by Hon. Carolyn Kuhl (Los Angeles Superior Court) at 2/7/26 2:32 PM (PDT)</u>

This posting addresses several issues:

(1) Ruling on YouTube MIL 4. This has just been served. It will be filed on Monday.

(2) Order of Witnesses. The court would appreciate knowing the order of upcoming witnesses when counsel exchange those lists. This is especially helpful to the court regarding expert witnesses, so the court can review the relevant Sargon motion ruling before the expert's testimony.

(3) Please bring at least 2 copies of the properly formatted exhibit list on Monday - one for the court and one for the clerk.

(4) Thank you for the re-typed and formatted instructions served yesterday and for the parties' collaboration on this. I have no problem with the changes listed in items 1-4 in the joint Case Anywhere posting of 2/6. I have a few changes/additions, which are set forth below, as well as a proposal regarding which pre-instructions will be given.

(a) I am adding CACI 112 - Questions from Jurors. We can discuss if you wish but I always allow juror questions under the conditions specified in that instruction.

(b) I propose giving the "Special Instruction Regarding Juror Duty Not to Investigate Social Media Functionality" after CACI 116.

(c) I propose giving the "Special Instruction Regarding Redacted Documents" after CACI 202.

(d) I propose giving the "Special Instruction Regarding Limitation on Defendants' Liability for Certain Activities" just before CACI 400 (i.e., just before the instructions that define the causes of action because the Section 230 instruction applies to both causes of action).

(e) I propose leaving out CACI 3933 (damages from multiple defendants) and CACI 3944 (damages on multiple legal theories) at this time. The rest of the damages instructions would be helpful if given at the beginning because they direct the jurors as to what to consider for emotional distress. CACI 3933 and 3944 will be much more helpful to the jurors when they have the verdict form. I would also leave out CACI 3964 (jurors not to consider attorney fees) at this time. The last instruction at this point would be t he punitive damages liability instruction. I

will also state that additional instructions will be given at the end of trial and all of the instructions are equally important whether given before or after the evidence is received.

Thank you for your continuing collaboration in moving this case forward.

Judge Kuhl

Reply message posted by Madeleine Dolan, Esq. (Covington & Burling LLP) at 2/8/26 2:42 PM (PDT)

Your Honor: thank you for the Court's February 7 message about jury instructions. The parties write in response to clarify a few points.

First, the Court's edits noted in Part 4(a)-(d) of the message make sense to the parties. Please let us know if the Court would like the parties to prepare an updated copy of the instructions implementing those changes.

Second, the parties wish to confirm the Court intended to identify CACI 3934, not 3944, as the damages on multiple legal theories instruction that the Court proposes reading at the end of the trial (in addition to CACI 3933 and 3964).

Third, the parties agree with the Court that CACI 3933, 3934, and 3964 should be read at the end of trial. The parties would also leave out CACI 406 at this time. Plaintiff's counsel notes that CACI 406 (like VF-402) envisions specificity as to the non-party tortfeasors at issue.(See CACI 406 with four brackets to "[insert name(s) or description(s) of nonparty tortfeasor(s)]"; VF-402 with two brackets for "[name/description of first nonparty]", two brackets for "[name/description of second nonparty]" and two brackets for "[Repeat as necessary for other nonparties]"). Defendants believe it is more appropriate to provide that specificity after the evidence has come in, and Plaintiffs do not object to that timing.

Finally, as for the remaining damages instructions (in the 3900 series), Defendants propose that 3905A be included at this stage but that the Court leave out 3900, 3925, 3927, 3928, and 3946 at this time and only read at the end. As the Court notes, the instruction on emotional distress (3095A) could be helpful at the beginning to direct the jurors as to what to consider for emotional distress. In Defendants' view, the remainder of the damages instructions are more focused on how to determine the amount of damages or the question of whether punitive damages are appropriate, as opposed to what to consider regarding the Plaintiff's claims. The Plaintiff disagrees and believes that 3900, 3925, 3927, 3928, and 3946 should be read at the beginning.

Reply message posted by Hon. Carolyn Kuhl (Los Angeles Superior Court) at 2/8/26 5:07 PM (PDT)

Thank you for your response. The court did intend to refer to CACI 3934. I will also leave out CACI 406 at this time as the parties suggest. The court will give the damages instructions as indicated in yesterday's posting.

I do not need an updated copy - thank you for your offer.

Judge Kuhl

**Dispute Regarding YouTube's Violation of Opening Slide Stipulation**

Message posted by Joseph VanZandt, Esq. (Beasley Allen Law Firm) at 2/10/26 8:14 AM (PDT)

Plaintiff respectfully requests to be heard regarding YouTube's brand new opening slides disclosed this morning at 7:33 am. Opening slides were due to be (and were) exchanged at 7:30am yesterday pursuant to the pre-trial stipulation and order. YouTube significantly altered their opening slides from what they served yesterday and violated the parties' protocol to not use opposing counsel's slides in opening. Today's disclosure of a new set of opening slides from YouTube is highly prejudicial to Plaintiff, as Plaintiff did not have the opportunity to review these new slides prior to Plaintiffs opening and violates the letter and the spirit of the parties' agreement and the Court's pre-trial order.

Plaintiff provided notice to YouTube regarding this post but YouTube did not provide a response in sufficient time. YouTube did not consent to this post. Due to the time sensitive nature of this issue, Plaintiff respectfully make this post.

Reply message posted by Rachel Lanier, Esq. (Lanier Law Firm) at 2/10/26 8:43 AM (PDT)

Your Honor,

The Parties have narrowed their dispute to one slide and Plaintiff wishes to be heard.

For the remaining new slides, YouTube has removed the portions of the slides Plaintiff objected to as argumentative.

Thank you,

The Parties

**Plaintiffs' Refusal to Comply with Witness Disclosure Deadlines in Pretrial Order**

Message posted by Shannon Hill (Wilson Sonsini Goodrich & Rosati) at 2/12/26 6:26 AM (PDT)

Your Honor,

16

The Court's Order on Trial Exhibits and Witnesses ("Pretrial Order"), entered January 12, 2026, requires the parties to "disclose all witnesses the party intends to call . . . in the order they will be expected to testify, at 6:00 PM two 'in-trial' court days before the witnesses are expected to testify." (Pretrial Order at 5.) Because the Court is dark today, February 12, and Monday, February 16, Plaintiffs were obligated to disclose their witnesses for Tuesday, February 17, yesterday evening at 6:00 p.m. Plaintiffs refused to do so.

Plaintiffs contend that the examples in the Pretrial Order illustrating how the rule works in a typical week--"(i.e., on Monday at 6:00 PM for Wednesday; . . . on Thursday at 6:00 PM for the following Tuesday)"--define their obligation. In their view, their disclosures for Tuesday are not due until 6:00 p.m. this evening. But basic principles of textual construction make clear that it is the rule (two in-trial days), not the explanatory examples (premised on a typical trial week, which this is not), that controls. If it were otherwise, the rule would become a nullity. In a week with no dark days, for example, Defendants would be required to disclose their witnesses "on Wednesday at 6:00 PM for the following Monday," despite the fact that there would be three in-trial days in between.

As a professional courtesy, YouTube offered Plaintiffs a 12 hour extension to serve their witness disclosures for Tuesday. Plaintiffs refused. YouTube provided notice to Plaintiffs regarding this post, but Plaintiffs did not respond. Plaintiffs did not consent to this post. Due to the time sensitive nature of this issue, YouTube now respectfully makes this post.

YouTube regrets the necessity, but respectfully requests that Your Honor require Plaintiffs to comply with your Pretrial Order and immediately serve their witness disclosures for Tuesday.

Respectfully submitted,

Lauren Gallo White (YouTube)

Reply message posted by Joseph VanZandt, Esq. (Beasley Allen Law Firm) at 2/12/26 7:49 AM (PDT)

Your Honor,

Plaintiffs respectfully disagree with Defendants' assertion that Plaintiffs are in violation of the Court's Pretrial Order. The Order's operative disclosure schedule is unambiguous: witnesses to be called on Tuesdays must be disclosed by 6:00 p.m. on the prior Thursday. That is precisely what Plaintiffs intend to do-and have consistently done throughout trial.

17

Defendants' contrary reading would require Plaintiffs to disclose Tuesday's witnesses six calendar days in advance simply because two court holidays fall in between. Nothing in the Pretrial Order supports that result. The Order's illustrative examples are not mere surplusage-they define the parties' obligations for each day of the trial week, including Tuesdays. Defendants' interpretation would effectively rewrite the Order to impose a burden the Court never intended, particularly during a holiday week neither party controls.

Defendants' conduct in raising this issue is equally unreasonable. Defendants transmitted a proposed CaseAnywhere post at 11:42 p.m. last night-on a court holiday-and demanded a response by 6:00 a.m. this morning. This is not an issue that warrants the Court's attention on a dark day, and Defendants' manufactured urgency should not be rewarded.

As Your Honor is aware, Plaintiffs' order of proof had to be adjusted due to delays in the start of trial through no fault of Plaintiffs. Throughout this trial, Plaintiffs have gone above and beyond the Pretrial Order's requirements-frequently notifying Defendants of anticipated witnesses well in advance of any deadline and building our entire order of proof around the schedules of Defendants' own executives. It is disappointing that Defendants now disregard this extraordinary cooperation and transparency to raise this issue unnecessarily with the Court.

Plaintiffs are currently assessing which witnesses will be called on Tuesday, February 17, in light of how the evidence has developed to date. Plaintiffs will notify Defendants of their Tuesday witnesses as soon as that determination is made, but in no event later than 6:00 p.m. today, consistent with the Pretrial Order.

Joseph VanZandt (Plaintiffs' Co-Lead Counsel)

Reply message posted by Hon. Carolyn Kuhl (Los Angeles Superior Court) at 2/12/26 8:51 AM (PDT)

The court reminds counsel for YouTube that the court only responds to joint postings on the Message Board.

**Scope of Dr. Chandler's Testimony in First Phase of Trial**

Message posted by Madeleine Dolan, Esq. (Covington & Burling LLP) at 2/12/26 9:00 PM (PDT)

DEFENDANTS' POSITION

Defendants request the Court's guidance on an issue related to the scope of Dr. John Chandler's testimony in the first phase of trial: whether he may testify about the revenue estimates of the Defendants in the Raffoul et al. article in this first phase. The Raffoul article uses what the authors call a "novel" methodology to derive estimates of 2022 advertising revenue generated by Instagram and YouTube, among other social media companies, from U.S.-based users under 18. They propose that Instagram and YouTube made over $4.5B and over $2B, respectively, in advertising revenue that year. That evidence is clearly inadmissible under California Civil Code § 3295(d), which precludes all evidence of "defendants' profits or financial condition" in the first phase of a bifurcated trial. This rule is not discretionary. See, e.g., Torres v. Auto. Club of S. Cal., 15 Cal. 4th 771, 777-78 (1997) ("Bifurcation under § 3295(d) is mandatory upon a proper motion and ensures that "the trier of fact is not presented with evidence of the defendant's wealth and profits until after the issues of liability, compensatory damages, and malice, oppression, or fraud have been resolved against the defendant.").

Plaintiff cannot evade the mandatory and straight-forward application of California Civil Code § 3295(d) by claiming they are offering evidence of "Defendants' profits" for some other purpose. The California Civil Code codifies the bifurcation rule precisely because of the prejudicial effect of evidence of "profit" in the first phase of trial, irrespective of the purported "purpose" for which it is being proffered. Adams v. Murakami, 54 Cal. 3d 105, 121 (1991) (citing Cal. Civ. Code § 3295(d)). On October 7, 2025, the Court granted Defendants' motion to bifurcate Plaintiff's punitive damages claim and "preclud[ed] Plaintiff from introducing any argument or evidence related to, or eliciting testimony regarding, Defendants' financial condition, wealth, or profits in the first phase of the trial." 10.7.25 Order Granting Defendants' Joint Motion to Bifurcate KGM's Punitive Damages Claim, at 2. On November 10, the Court issued its ruling on Defendants' Sargon motion to exclude the opinions of Dr. Chandler, and held in that Order that while Dr. Chandler "may not testify about his own calculations and conclusions that purport to estimate Defendants' revenues from advertising to youth aged 0-17," he may "testify about the methodology and conclusions of the Raffoul article." 11.10.25 Order on Defendants' Motion to Exclude the Expert Testimony of Dr. Chandler, at 1.

Defendants respectfully submit that based on the Court's ruling excluding argument, evidence, and testimony related to Defendants' financial condition in the first phase of trial, Dr. Chandler should

FILING OF CERTAIN K.G.M. TRIAL-RELATED CASE ANYWHERE MESSAGES POSTED PRIOR TO AND DURING K.G.M. TRIAL

not be allowed to testify about the specific revenue figures set forth in the Raffoul article in this phase. Defendants' financial condition is not relevant to the issues the jury will decide in the first phase of the trial, as the Court's October 7 order reflects. See also CACI 117. If Defendants' actual revenue figures- which were produced in this case-are not admissible in the first phase, then Raffoul's estimated revenue figures should likewise be excluded. Further, if Dr. Chandler is permitted to testify about the conclusions of the Raffoul article regarding Defendants' advertising revenues, Defendants would be required to cross-examine him with Defendants' actual revenues, which contradict the Raffoul figures. Allowing Dr. Chandler to testify about Raffoul et al.'s figures would essentially undo the Court's October 7 Order.

If Dr. Chandler is permitted to testify about the Raffoul revenue estimates, Defendants would also be put in the position of cross-examining him about the very topic on which the Court has excluded him, namely his attempt to generate and sponsor revenue models. Defendants do not wish to introduce the fact of the Court's exclusion ruling or the consistencies in his model between the JCCP and the NM cases, but allowing Dr. Chandler to sponsor Raffoul's revenue estimates would put those excluded facts at issue.

The Court should reject Plaintiff's position because the revenue estimates in the Raffoul article are not necessary for Plaintiff to make the arguments she wishes to make to establish liability, as stated below ("Defendants, as a matter of fundamental business strategy, chose to target underaged youth because of their value to Defendants' advertising customers"). Such arguments are available to them (and expected to be offered by Dr. Chandler) without injecting specific evidence of Defendants' financial condition into evidence during this phase of the trial. Notrica is not to the contrary; there, unlike here, financial information necessary to prove liability. See Notrica, 70 Cal.App.4th 911, 915 (1999). In addition, the Court found that the Defendant had opened the door by affirmatively putting the evidence at issue. Id. at 936.

Separately, for the Court's awareness, Plaintiffs have agreed that Dr. Chandler will not testify about the FTC or other regulatory issues.

PLAINTIFF'S POSITION

FILING OF CERTAIN K.G.M. TRIAL-RELATED CASE ANYWHERE MESSAGES POSTED PRIOR TO AND DURING K.G.M. TRIAL

Defendants' position is without merit. First, as Defendants note, the Court in its Sargon order expressly ruled that Dr. Chandler may testify about both the methodology and conclusions of the Raffoul article - conclusions which consist of estimates of the revenue generated by the Defendants' platforms from underaged youth. The Court nowhere limited such testimony by Dr. Chandler to the issue of punitive damages.

Plaintiffs are not offering this testimony from Dr. Chandler for the purpose of showing Defendants' financial condition or ability to pay exemplary damages. Instead, this testimony is directly relevant to show the extent to which the Defendants targeted youth as a fundamental part of their business strategy because youth are a very valuable audience to advertisers. This evidence and testimony also is directly relevant in response to claims by the Defendants (Meta's Adam Mosseri, for example) that that they do not target youth and that youth audiences are far less profitable than adult audiences.

There is a considerable trove of documents and testimonial evidence in this case about the desirability and potential profitability of young audiences and how critically important they are to the continued success of Defendants' platforms, which earn substantially all of their revenue from selling targeted advertising. The conclusions of the Raffoul article, and Dr. Chandler's testimony about it, simply places that issue into context.

Under these circumstances, there is no basis to relegate Dr. Chandler's testimony on this topic to the issue of punitive damages. Cal. Civ. Code § 3295 does not exclude evidence of a company's financials when the information is relevant to liability. Notrica v. State Compensation Ins. Fund (1999) 70 Cal.App.4th 911, 939 ("The trial court properly allowed Notrica to bring before the jury evidence of SCIF's overall financial condition to place SCIF's evidence [offered to show SCIF's financial difficulty] in perspective.").

Here, the evidence is directly relevant to liability in that Defendants, as a matter of fundamental business strategy, chose to target underaged youth because of their value to Defendants' advertising customers. The evidence also is relevant to respond to Defendants' attempts to downplay the value of the revenue they earn from youth as it relates to their business strategy. As to Defendants' contention that they produced their "actual" revenues from youth and those figures contradict the estimates from the Raffoul article, that is unsurprising given that Defendants do not know the actual ages of substantial

21

numbers of users and Defendants' estimates do not acknowledge the vast numbers of youth under 13 years old that are on those platforms but whose data is nonetheless monetized, topics which Dr. Chandler will explain. Further, nothing about Dr. Chandler's testimony about the youth revenue estimate from Raffoul "requires" Defendants to cross-examine Dr. Chandler with their own revenue figures.

The Court's previous order bifurcating punitive damages neither addresses nor precludes this evidence that is specific to revenues from youth. Additionally, such evidence and testimony is relevant to show that whatever expenditures the Defendants may have made related to the well-being of youth were extremely modest in comparison to the revenues that Defendants earned from youth. This evidence is highly probative of whether Defendants' conduct constituted malice, which the jury must determine during the liability phase of this trial. See Grimshaw v. Ford Motor Co. (1981) 119 Cal.App.3d 757, 813 disapproved of on other grounds by Kim v. Toyota Motor Corp. (2018) 6 Cal.5th 21 ("There was evidence that Ford could have corrected the hazardous design defects at minimal cost but decided to defer correction of the shortcomings by engaging in a cost-benefit analysis balancing human lives and limbs against corporate profits. Ford's institutional mentality was shown to be one of callous indifference to public safety. There was substantial evidence that Ford's conduct constituted 'conscious disregard' of the probability of injury to members of the consuming public.").

Finally, Defendants have indicated that they may attempt to cross-examine Dr. Chandler both on the fact that the Court excluded Dr. Chandler's revenue calculations and about inconsistencies between his revenue estimates in this case and in separate litigation brought by the New Mexico Attorney General. Neither of these lines of cross-examination would be proper. Defendants obtained the relief they sought on their Sargon motion and should not be permitted to inject the Court's ruling on that motion in the presence of the jury. Similarly, injecting the issue of Dr. Chandler's New Mexico report would open the door to the fact that the Attorney General has sued Meta raising similar claims as in this case, and has considerable potential to confuse, mislead and needlessly waste the jury's time on collateral issues.

If the Court prefers, Plaintiffs can further discuss with the Court tomorrow morning.

**Court's request for briefing on verdict form for damages and related instructions**

Message posted by Hon. Carolyn Kuhl (Los Angeles Superior Court) at 3/4/26 1:14 PM (PDT)

The parties previously submitted proposed special verdict forms. The court is going to organize the verdict forms similarly to the way the Meta verdict forms are organized - i.e., there will be a separate verdict form for damages pertaining to all Defendants.

Now that most of the evidence is in, the court requests the parties to file their respective proposed damages verdict forms. The court notes that Meta and YouTube previously disagreed about whether other persons/entities potentially contributing to Plaintiff's harm should be listed by name. The parties now may have different views on this subject or may request that other names be listed as potential contributors.

Accompanying the proposed verdict forms should be briefing on CACI 406 and CACI 3933 if any modification of these instructions is sought. At the request of the parties, these instructions were not given to the jury at the outset of the trial. CACI 3934 also was not given at the beginning of trial, but the court doubts that there is any disagreement on this instruction. If the parties want to suggest a modification to CACI 3934, please do so in the briefing.

The court requests that the proposed special verdict forms and respective briefs of the parties be served on Case Anywhere no later than midnight March 5.

**Karen G Deposition Designation Ruling Sheet & Highlighted Transcript**

Message posted by Mariana McConnell, Esq. (Kiesel Law LLP) at 3/5/26 8:13 PM (PDT)

Plaintiff has uploaded the Ruling Sheet and Highlighted Transcript for the Karen G deposition.

Reply message posted by Shannon Hill (Wilson Sonsini Goodrich & Rosati) at 3/5/26 9:49 PM (PDT)

At 8:13 p.m., Plaintiff submitted a unilateral posting regarding deposition designations for Karen G. That submission is wholly improper.

First, as the Court has repeatedly admonished, all postings on Case Anywhere must be made with the consent of the opposing party. Plaintiff did not even provide a draft of their submission to Defendants before submitting it unilaterally-much less obtain YouTube's consent.

Second, Plaintiff's post falsely purports to incorporate YouTube's position based on an email exchange between the parties. While YouTube does object to Plaintiff's improper deposition designations, Plaintiff gave YouTube no opportunity to review or formulate its formal objections to Plaintiff's improper deposition designations, and YouTube never reviewed or approved Plaintiff's

23

submission of any language to the Court. It is wholly improper for Plaintiff to make a representation about YouTube's position in a Court filing without giving YouTube the opportunity to approve the language used in the purported joint court submission.

Third, Plaintiff's purported deposition designations completely abandon the process set forth in the Court's January 12, 2026 Order on Trial Exhibits and Witnesses regarding the "exchange of deposition designations." See Section III(A). The process requires the exchange of deposition designations, counter designations, objections, reply, and sur-reply designations, and requires that any submission to the Court include the formal positions of both parties. Defendants have painstakingly complied with the Court-ordered process for months. And while YouTube is willing to consider an alternative process to bring the parties' dispute more quickly before the Court given the approaching end of trial, Plaintiff's ongoing disregard for the Court's orders in this case brings the parties no closer to resolution.

The Court should disregard Plaintiff's post; YouTube will be prepared to argue on the question of Plaintiff's belated and improper deposition designations tomorrow morning.

**Admission of Certain Documents**

Message posted by Mariana McConnell, Esq. (Kiesel Law LLP) at 3/5/26 10:46 PM (PDT)

Plaintiff's Position:

Plaintiff has simultaneously uploaded 3 separate PDFs that represent the 12 documents (6 per defendant) for which she is seeking admission. Meta responded to Plaintiff's requests, and their responses are set forth on the spreadsheet that precedes the PDF. Plaintiff submits that the Court should enter the Meta documents into evidence based on these responses. YouTube did not respond to Plaintiff's spreadsheet but instead proposed a stipulation, which is also attached. Plaintiff cannot agree to the proposed stipulation as it is not appropriate. Plaintiff requests that the Court enter the YouTube documents into evidence.

If the Court is not inclined to move the documents into evidence on its own motion, Plaintiff requests that the Defendants be ordered to bring an appropriate witness to testify.

YouTube's Position:

YouTube sent Plaintiff's counsel a proposed stipulation to resolve Plaintiff's requests on Wednesday, March 4, during the lunch break. In its stipulation, YouTube agreed to stipulate to the authenticity and admissibility of all six YouTube documents identified in Plaintiff's proposal, subject to the limitations on use of certain documents about subsequent remedial measures set forth in California Evidence Code § 1151. The stipulation also sought a modest reciprocal stipulation to a single YouTube blog post and to the Account Preservation Forms that KGM submitted in this litigation, in an effort to streamline the proceedings by resolving outstanding document issues on both sides. YouTube's proposal would resolve all issues simultaneously and avoid having to call unnecessary witnesses. Plaintiff never responded to YouTube's proposal, and YouTube is still in the dark as to what Plaintiff's specific objections to its stipulation might be. YouTube continues to believe these issues can be worked out without the need to involve the Court and is prepared to meet and confer with Plaintiffs at any time.

Meta's Position:

As to the Meta documents in the set of documents Plaintiff seeks to admit, Meta has already stipulated that Exhibits 5 and 52 are business records but does not waive its objection to their admission if proper foundation through a witness is not established. Further, in response to receiving the questions from Plaintiff reflected in the Meta documents PDF that Plaintiff has served, Meta informed Plaintiff that it stipulates to certain assertions for those documents, including for Exhibits 44, 59, 69, and 91. However, Exhibits 44, 59, 69, and 91 are not business records because they do not "record an act, condition, or event" that it was Meta's regular business practice to record (§ 1271(a)) and they do not on their face establish trustworthiness of the sources of information (§ 1271(d)). The Meta documents PDF that Plaintiff has served includes columns added by Meta as to these two elements. Thus, Meta does not stipulate that Exhibits 44, 59, 69, and 91 are business records, nor does it waive its objection to their admission if proper foundation through a witness is not established. In addition, a document custodian with no knowledge of the contents of exhibits 44, 59, 69, and 91 would not be able to establish that these documents "record an act, condition, or event" that it was Meta's regular business practice to record or that the sources of information underlying these documents are trustworthy. Plaintiff would have needed to question a witness with such knowledge to establish those elements.

25

FILING OF CERTAIN K.G.M. TRIAL-RELATED CASE ANYWHERE MESSAGES POSTED PRIOR TO AND DURING K.G.M. TRIAL

**STIPULATION REGARDING ADMISSIBILITY OF YOUTUBE DOCUMENTS AT KGM TRIAL (LASC NO. 23SMCV03371)**

Message posted by Shannon Hill (Wilson Sonsini Goodrich & Rosati) at 3/6/26 7:03 PM (PDT)

STIPULATION REGARDING ADMISSIBILITY OF YOUTUBE DOCUMENTS AT KGM TRIAL (LASC NO. 23SMCV03371)

As a compromise between the parties in light of time and scheduling concerns for this case, it is hereby stipulated and agreed between Plaintiff K.G.M. and Defendants YouTube, LLC and Google LLC in connection solely with Plaintiff's case in LASC Case No. 23SMCV03371, that:

1. Plaintiff will not call James Beser or any additional YouTube witnesses in her case-in-chief and will not seek to enforce Plaintiff's subpoena for a YouTube records custodian, for which a motion to quash is pending.

2. The parties agree TX 4631, TX 15473, and TX 15479 may be admitted into evidence as authentic copies of YouTube blog posts.

3. Subject to YouTube's objection under California Evidence Code Section 1151, the parties agree TX 61307, TX 6889, TX 4553, and TX 4812 may be admitted into evidence as documents produced from YouTube's files. This stipulation is made for purposes of the KGM trial only, and is made subject to and without waiving YouTube's objections regarding the inadmissibility or use of the foregoing documents in any other subsequent hearing, trial, or proceeding in this court or any other, including but not limited to JCCP No. 5255, MDL No. 3047, or in any subsequent legal hearing, trial, or proceeding of any kind.

**Plaintiff's Motion to Strike Dr. Krishna**

Message posted by Mariana McConnell, Esq. (Kiesel Law LLP) at 3/11/26 12:30 PM (PDT)

Your Honor:

After consultation with Defendants, Plaintiff withdraws her Motion to Strike the Testimony of Dr. Krishna.

Mariana McConnell

Plaintiff's Co-Lead & Liaison Counsel

**Final jury instructions**

Message posted by Hon. Carolyn Kuhl (Los Angeles Superior Court) at 3/11/26 5:52 PM (PDT)

The court has served the Final Jury Instructions. Please note a few items:

PAGINATION NEEDS TO BE INSERTED FOR THE DOCUMENT. When I removed the footers that referred to KGM as a "bellwether plaintiff" I was not able to insert page numbers. It will help the jurors and all of us to have page numbers.

I removed some repetitive instructions that resulted from having both introductory and concluding instructions in the document. For example, CACI 5002 substitutes for CACI 106; CACI 5030 substitutes for CACI 113.

I moved some instructions around to integrate the 5000 series concluding instructions.

I added a final paragraph to the Section 230 instruction.

I separately served two short instructions to be read prior to the Final Jury Instruction packet. One addresses the issue of the court's reference to a KGM posting as not being third party content.

**KGM Trial: YouTube Data Chart Demonstrative**

Message posted by Shannon Hill (Wilson Sonsini Goodrich & Rosati) at 3/11/26 7:19 PM (PDT)

YouTube and Plaintiff's counsel have met and conferred regarding the data chart demonstrative to be used in closing. Plaintiff does not waive her objection to this demonstrative, but understands this Court's ruling. The parties have agreed that YouTube will use the watch time chart displayed during the afternoon session where Ms. GM's watch time begins on May 5, 2020 and ends on December 17, 2024.

**Easy juror question**

Message posted by Hon. Carolyn Kuhl (Los Angeles Superior Court) at 3/16/26 9:27 AM (PDT)

Dear counsel in KGM case - We have a short question from the jury this morning and I propose to answer it without having counsel come into court if everyone is in agreement. Please respond to this posting ASAP. If I do not have responses from the 3 sides by 9:45 am you will have to come into court - thank you.

Jury Question: Is either testimony or deposition to be considered "more true" than the other?

Court's Proposed Response: The short answer is "no." See your jury instruction CACI 208: "You must consider the deposition testimony that was presented to you in the same way as you consider testimony given in court."

Judge Kuhl

Reply message posted by Madeleine Dolan, Esq. (Covington & Burling LLP) at 3/16/26 9:35 AM (PDT)

The Court's proposed response works for Meta. Thank you.

Reply message posted by Savannah Grant, Esq. (Wilson Sonsini Goodrich & Rosati) at 3/16/26 9:39 AM (PDT)

The Court's proposed response works for YouTube as well. Thank you.

Reply message posted by Rachel Lanier, Esq. (Lanier Law Firm) at 3/16/26 9:39 AM (PDT)

Plaintiff thanks Your Honor for this post and respectfully requests Your Honor respond as follows: "The two instructions that you should read that apply to your question are CACI 208 and CACI 5003."

Please let us know if we should come to Court. If we do not see both Defendants post by 9:45, we will come to court pursuant to your instructions.

Reply message posted by Rachel Lanier, Esq. (Lanier Law Firm) at 3/16/26 9:40 AM (PDT)

Now that all counsel has responded, please let us know if you would like counsel to come to Court. Thank you.

Reply message posted by Hon. Carolyn Kuhl (Los Angeles Superior Court) at 3/16/26 9:47 AM (PDT)

In the court's view, 5003 is not on point to the very clear question. Please advise immediately if you wish to argue this issue, and if so, counsel will need to come to court.

Reply messaged posted by Rachel Lanier, Esq. (Lanier Law Firm) at 3/16/26 9:50 AM (PDT)

Thank you for your consideration. Plaintiff submits.

Reply message posted by Hon. Carolyn Kuhl (Los Angeles Superior Court) at 3/16/26 9:52 AM (PDT)

Since Plaintiff submits, the court's proposed response will be sent in to the jury. Thank you all for your collaboration.

Judge Kuhl

**Another easy jury question**

Message posted by Hon. Carolyn Kuhl (Los Angeles Superior Court) at 3/16/26 2:57 PM (PDT)

Question: "Are the expert reports in evidence? We made an attempt to locate them unsuccessfully".

Court's Proposed Response: "The expert reports are not in evidence."

Counsel, please reply as to whether or not you agree with the proposed response. Please do so by no later than 3:15pm. Thank you.

Judge Kuhl

Reply message posted by Rachel Lanier, Esq. (Lanier Law Firm) at 3/16/26 3:00 PM (PDT)

Thank you - Plaintiffs agree with Your Honor's response.

Reply message posted by Madeleine Dolan, Esq. (Covington & Burling LLP) at 3/16/26 3:03 PM (PDT)

The Court's proposed response works for Meta. Thank you.

Reply message posted by Savannah Grant, Esq. (Wilson Sonsini Goodrich & Rosati) at 3/16/26 3:03 PM (PDT)

The Court's proposed response also works for YouTube. Thank you.

**Wednesday 3/18 End-of-Day Admonition**

Message posted by Alice Greenhill, Esq. (Covington & Burling LLP) at 3/18/26 1:21 PM (PDT)

In the event the Parties are not otherwise called back to Court this afternoon, the Parties would be amenable to the Court giving the end-of-day admonition to the jurors in the jury room at the conclusion of the court day without counsel returning to the courthouse, if that is acceptable to the Court.

Reply message posted by Michelle Miro (Los Angeles Superior Court) at 3/18/26 1:37 PM (PDT)

It would be unwise for the court to enter the jury room until the conclusion of deliberations because the jurors may have displayed their deliberation notes in the jury room on the white board in that room or otherwise. The court can bring the jurors into the courtroom and admonish them, or the court can ask Ms. Miro to remind the jurors of the admonition before excusing them. At some point, the court does need to consult with counsel about plans for any hypothetical evidentiary presentation on punitive damages so that we have a plan in place should a second trial phase be needed.

Department 12

Reply message posted by Rachel Lanier, Esq. (Lanier Law Firm) at 3/18/26 2:09 PM (PDT)

29

The Parties agree it is acceptable to have Ms. Miro provide the admonition at the end of the day. The Parties are meeting and conferring this afternoon about a potential punitive phase and will update the Court accordingly. Thank you.

**3/19 End-of-Day Admonition**

Message posted by Alice Greenhill, Esq. (Covington & Burling LLP) at 3/19/26 3:46 PM (PDT)

The parties are in agreement that Ms. Miro can discharge the jury with proper admonitions.

*** 

Attached as Exhibits 1-2 are documents uploaded to Case Anywhere and referenced in connection with the "Statement to jury venire before hardship questionnaire" message above.  Attached as Exhibits 3-5 are the PDFs Plaintiff uploaded to Case Anywhere in connection with the "Admission of Certain Documents" message above.

DATED:  April 1, 2026

Respectfully submitted,

By:    *Ashley M. Simonsen*

**COVINGTON & BURLING LLP**

ASHLEY M. SIMONSEN (Bar No. 275203)
asimonsen@cov.com
Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749

PHYLLIS A. JONES (*pro hac vice*)
PAUL W. SCHMIDT (*pro hac vice*)
pajones@cov.com
pschmidt@cov.com
Covington & Burling LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

30

*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc. and Instagram, LLC*

**WILSON SONSINI GOODRICH & ROSATI**

Luis Li, SBN 156081
Melissa Mills, SBN 248529
Ariel C. Anaba, SBN 304780
Wilson Sonsini Goodrich & Rosati
Professional Corporation
953 East Third Street, Suite 100
Los Angeles, CA 90013

Lauren Gallo White, SBN 309075
Samantha A. Machock, SBN 298852
Wilson Sonsini Goodrich & Rosati
One Market Plaza, Spear Tower,
Suite 3300
San Francisco, CA 94105

*Attorneys for Defendants Google LLC and YouTube, LLC*

**KIESEL LAW LLP**

Mariana A. McConnell
KIESEL LAW LLP
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Tel.: 310-854-4444
Fax: 310-854-0812
kiesel@kiesel.law
mcconnell@kiesel.law

Rachel Lanier
THE LANIER LAW FIRM, P.C.
2829 Townsgate Road, Suite 100
Westlake Village, CA 91361
Tel.: 713-659-5200
Rachel.Lanier@LanierLawFirm.com

Joseph G. VanZandt
Davis Vaughn
BEASLEY ALLEN CROW METHVIN
PORTIS &
MILES, P.C.
234 Commerce Street

31

FILING OF CERTAIN K.G.M. TRIAL-RELATED CASE ANYWHERE MESSAGES POSTED PRIOR TO AND DURING K.G.M. TRIAL

Montgomery, AL 36103
Tel.: 334-269-2343
Joseph.VanZandt@BeasleyAllen.com
Davis.Vaughn@ BeasleyAllen.com

Brian J. Panish
Rahul Ravipudi
Jesse Creed
PANISH | SHEA | RAVIPUDI LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
Tel: (310) 477-1700
Fax: (310) 477-1699
panish@panish.law
ravipudi@panish.law
jcreed@panish.la

FILING OF CERTAIN K.G.M. TRIAL-RELATED CASE ANYWHERE MESSAGES POSTED PRIOR TO AND DURING K.G.M. TRIAL