# EXHIBIT 3

E-Served: Dec 17 2025  4:11PM PST  Via Case Anywhere

**JOINT WITNESS LIST – K.G.M.**

"Will call" witness appear in bold. Total "will call" and "may call" times are listed at the bottom, pursuant to the Court's instruction.

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
| **Dimitri Christakis, M.D., M.P.H.** | P | Will | **Plaintiff expert. Christakis is both a pediatrician and epidemiologist who serves as the Editor-in-Chief of _JAMA Pediatrics_. His testimony will include an analysis of the scientific literature establishing a causal link between social media use and a number of mental health conditions in children, including sleep disorders, depression, anxiety, suicide, suicidal ideation, attentional capacity, addiction, and reduced school performance. Christakis will discuss numerous Defendant documents relevant to his causation opinions.** | Live | 1.75 (P) | 1.5 (D) |
| Ramin Mojtabai, M.D., Ph.D. | P | May | Plaintiff expert. Mojtabai is a licensed physician with Board Certification by the American Board of Psychiatry and Neurology, with a PhD in Clinical Psychology. Mojtabai is expected to testify that social media addiction and problematic use are substantial contributing causes of adverse mental | Live | 1.5 (P) | 1.25 (D) |

1

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
| | | | health outcomes, that young people are more vulnerable to problematic social media use and addiction than adults, and that multiple features built into the design of social media platforms are conducive to their excessive and problematic use by youth. | | | |
| Eva Telzer, Ph.D. | P | Will | **Plaintiff expert. Telzer is a neuroscientist who has conducted brain studies. Telzer is expected to testify about the function and structural changes that happen to the adolescent brain in relation to social media use, the neurobiological effects of social media in adolescents, as well as the neural vulnerabilities for problematic social media use and depression.** | Live | 1.25 (P) | 1 (D) |
| Jean Twenge, Ph.D. | P | May | Plaintiff expert. Twenge received a Ph.D. in personality psychology and completed post-doctoral studies in social psychology. Twenge is anticipated to testify about the relationship between social media use and mental health among adolescents, including time series studies on trends in adolescent mental health, correlational studies showing that the more hours a day an adolescent uses social media, the more likely they are | Live | 1 (P) | 1 (D) |

2

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
| | | | to be depressed or unhappy, and longitudinal studies showing that adolescents' social media use at an initial time leads to depression at a later time. | | | |
| Kara Bagot M.D. | P | Will | **Plaintiff expert. Bagot is a board-certified adult, child, and adolescent psychiatrist. Bagot is anticipated to testify about specific causation–that KGM's problematic social media use cause and/or substantially contributed to the deterioration of her overall psychological well-being and mental health status. Bagot will explain how social media platforms exploited KGM's adolescent neurobiological vulnerabilities during a crucial developmental stage.** | Live | 1.75 (P) | 2.25 (D) |
| Anna Lembke, M.D. | P | Will | **Plaintiff expert. Lembke is a professor of addiction medicine at Standford. Lembke's testimony will address what addiction is, how it affects adolescents, how addiction comes about, and why adolescents are particularly vulnerable to addiction. Her testimony will explain how social media platforms are addictive and how they use features to addict.** | Live | 1.75 (P) | 1 (D) |

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
| Meredith McCarron | P | Will | Plaintiff expert. McCarron holds a Master of Science in Applied Informatics and a Bachelor of Arts in Individualized Studies. McCarron is expected to testify about processing data produced by Meta, TikTok, Snap, and Google for KGM providing an opinion as to the completeness and reliability of the data. | Live | .75 (P) | 1 (D) |
| Jingwen Zhang, Ph.D. | P | May | Plaintiff expert. Zhang earned a PhD in Communication with a concentration in Health Communication. Zhang is expected to testify about the function and influence of common social media features and the resulting persuasive design environment, with a particular focus on the implications for adolescents. | Live | 1.5 (P) | 1 (D) |
| Timothy Estes | P | May | Plaintiff expert. Estes develops safe and secure digital platforms. Estes is expected to testify about the technological solutions Defendants could have, and should have, implemented to greatly reduce the harms and risks in kids to which the Defendants' social media platforms contribute. | Live | .75 (P) | 0.75 (D) |

4

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
| **Seth Noar, Ph.D.** | P | Will | **Plaintiff expert. Noar received a Ph.D. in Social Experimental Psychology. Noar is a warnings expert and is expected to testify that the Defendant Social Media companies should have, but did not, provide to adolescent users and their parents effective warnings about the harms that can result from using their platforms.** | Live | .75 (P) | 0.75 (D) |
| Robert Johnson | P | May | Plaintiff expert. Johnson, an economist, is expected to testify about the financial condition of the Defendant Social Media Companies. | Live | .5 (P) | 0.5 (D) |
| Colin Gray, Ph.D. | P | May | Plaintiff expert. Gray holds a Ph.D. in Instructional Systems Technology. Gray is expected to testify about dark patterns in social media use, and the extent to which each Defendant acted consistently or inconsistently with industry standards, guidelines, and principles. | Live | 1.5 (P) | 1.5 (D) |
| **Brooke Istook** | P | Will | **Plaintiff expert. Istook is a digital child safety expert. She will address flaws in the design of Defendants' social media apps and the feasibility of safer alternative designs. Her testimony will also address the inadequacy of the safety features on Defendants' social media** | Live | 1.5 (P) | 0.75 (D) |

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
| | | | apps and the challenges parents face when attempting to protect their kids on Defendants' apps. | | | |
| **Arvind Narayanan, Ph.D.** | P | Will | **Plaintiff expert. Narayanan is a computer scientist. Narayanan will explain how algorithms work and that Defendant's recommendation algorithms are optimized to maximize user engagement and not for safety.** | Live | 1.25 (P) | 0.75 (D) |
| **John Chandler, Ph.D.** | P | Will | **Plaintiff expert. Chandler is a digital monetization expert. Chandler will testify about how the Defendants' social media apps monetize their users, including children, and that Defendants exploited these market factors by focusing on capturing and holding children's attention on their platforms.** | Live | 1 (P) | 0.5 (D) |
| Drew Cingel, Ph.D. | P | May | Plaintiff expert. Cingel is an Associate Professor and Graduate Program Advisor in the Department of Communication at the University of California, Davis, with a Ph.D. in Media, Technology, and Society. Cingel is anticipated to testify that as designed, defendants' social media platforms pose various risks of harm to adolescents. | Live | 1.5 (P) | 1.5 (D) |

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
| Jacqueline Beauchere | P<br><br>Snap | May (P)<br><br>May (D) | P: Snap Senior Director, Global Head of Platform Safety. Beauchere is expected to testify about specific features of Snapchat, including Snapscores, Streaks, and Family Center, as well as knowledge of harms.<br><br>D: Snap would call Ms. Beauchere to testify about Snap's safety policies and practices, Safety Advisory Board, and Snap's collaboration with third-party organizations. | Deposition | 1.5 (P) | 1.75 (D direct/cross) |
| David Boyle | P<br><br>Snap | May (P)<br><br>May (D) | P: Former Snap Senior Director, Product Management. Boyle is expected to testify about age gating, age inference models, and under 13 accounts on spotlight.<br><br>D: Snap would call Mr. Boyle to testify about the Snapchat platform, features, reporting tools and privacy settings | Live (P) | 1.5 (P) | 1 (D direct/cross) |
| Jonathan Brody | P | May | Snap Vice President of Product. Brody is expected to testify about ads, revenue, algorithms, and mental health harms, as well as safety and parental controls. | Deposition | 1.5 (P) | 0.5 (D direct/cross) |
| Claudia Chan | P<br><br>Snap | May (P)<br><br>May (D) | P: Snap Staff Product Manager. Chan is expected to testify about school-based outreach, notifications, account deletion and sign-up, and age gating. | Live (P)<br><br>Deposition (D) | 1.5 (P) | 1 (D direct/cross) |

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
| | | | D: Snap would call Ms. Chan to testify about Snapchat features, users, account creation, and age verification | | | |
| Morgan Hammerstrom | P Snap | May (P) May (D) | P: Snap Senior Manager, Product Research. Hammerstrom is expected to testify about a lack of research on mental health, product research, youth targeting, back to school, lenses, and streaks.<br><br>D: Snap would call Ms. Hammerstrom to testify about Snap's product research and Snapchat features | Deposition (P) Deposition (D) | 2 (P) | 0.75 (D direct/cross) |
| Juliet Shen | P | May | Snap Senior Product Manager. Shen is expected to testify about Trust and Safety, dark patterns, and lenses/filters. | Deposition | 2 (P) | 0.75 (D direct/cross) |
| **Evan Spiegel** | **P** | **Will** | **Snap CEO. Spiegel is expected to testify about safety, user metrics, under 13 accounts, age inference, mental health and addiction, and vulnerability of young users. He is anticipated to discuss numerous defendant documents.** | **Live** | **2.5 (P)** | **1.25 (D direct/cross)** |
| **Jennifer Stout** | **P** **Snap** | **May (P)** **Will (D)** | P: Snap Senior Vice President of Global Policy and Platform Operations. Stout is expected to testify about child safety, lenses/filters, Quick Add, media training, and user research. She is anticipated to discuss numerous | Deposition (P) **Live (D)** | 1.25 (P) | 2 (D direct/cross) 1 (P) |

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
| | | | defendant documents.<br><br>**D: Snap would call Ms. Stout to testify about Snap's trust and safety policies and practices, Safety Advisory Board, community guidelines, Snap's collaboration with law enforcement and third-party organizations, user feedback research age verification, as well as the Snapchat platform, features, including safety features, reporting tools and privacy settings** | | | |
| Abby Tran | P<br><br>Snap | May (P)<br><br>May (D) | P: Snap Product Manager, Communications and Friends. Tran is expected to testify about notifications, direct messaging restrictions, streaks, and family center.<br><br>D: Snap would call Ms. Tran to testify about Snapchat features and settings, parental tools, and product development and improvement | Live | 2 (P) | 1.5 (D direct/cross) |
| Jeremy Voss | P | May | Snap VP, Product. Voss is expected to testify about user research, streaks, autoplay, gamification, Snapscore, and ad monetization. | Deposition | 1.5 (P) | 0.5 (D direct/cross) |
| **Jordan Furlong** | P | Will | **Former Product Manager for Digital Wellbeing – Minor Safety for TikTok. Furlong is expected to testify about TikTok's advertising business model,** | Live | 2.5 (P) | 0.5 (D direct/cross) |

9

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
|  |  |  | efforts to address user addiction, and safety concerns. Furlong is anticipated to discuss numerous defendant documents. |  |  |  |
| Ryn Linthicum | P | May | Former Trust & Safety Global Issue Policy Lead – Mental Health & Wellbeing for TikTok. Linthicum is expected to testify about TikTok's efforts to keep kids safe on the platform, beauty filters, and rabbit holes. | Deposition | 1 (P) | 1 (D direct/cross) |
| Wenjia Zhu | P | May | Former head of IES recommendation team, and former Head of Product and Recommendation Teams for TikTok. Expected to testify that TikTok's recommendation algorithm was designed to prioritize growth, not safety. Zhu gave guidance that the Trust & Safety team should not reduce users' stay duration by more than 5%. | Deposition | 2 (P) | 2 (D direct/cross) |
| **Adam Wang** | **P** | **Will** | **Project Manager in the product strategy department and for the For You Feed focusing on aging up the platform, and Head of TikTok Live Streaming. Wang will likely testify about his roles in the Musical.ly to TikTok rebranding and subsequent growth strategies. Wang is anticipated to discuss numerous defendant documents.** | **Live** | **1.5 (P)** | **0.5 (D direct/cross)** |

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
| Raegan Maher | P | May | Worked at TikTok from 2021-2024, holding positions including Former Head of Issue Product & Process, Product Exploitation Hunt Manager, and Head of Investigations and Insight within the USDS Safety department. Maher will likely testify about TikTok's awareness of underage users, including those under 13, and the risks of exploitation, grooming, and addiction for minors on TikTok LIVE, as well as the potential for transactional sexual content to be pushed to users due to the algorithm prioritizing engagement. | Deposition | .75 (P) | 0.75 (D direct/cross) |
| Andrew ("Drew") Kirchhoff | P | May | Kirchhoff, a former TikTok and ByteDance employee, was a Project Manager in Beijing, China, and a Data Scientist in Los Angeles and San Jose, California. Kirchhoff will likely testify about TikTok's early history and growth, focusing largely on the acquisition of musical.ly and the platform's initial popularity among younger users, particularly middle school and high school females. | Deposition | 1.25 (P) | 1.25 (D direct/cross) |
| Eric Han | P | May | TikTok Former Head of U.S. Safety. Han is expected to testify about tensions between Core Product and Trust and Safety regarding implementation of new features, as well as regarding TikTok's | Live or Deposition | 2.5 (P) | 2.5 (D direct/cross) |

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
| | | | and the algorithm's prioritization of engagement over user safety. | | | |
| Rosie King | P | May | TikTok former Community Content Moderator. King is expected to testify that TikTok had insufficient and ineffective policies regarding how to respond to dangerous and harmful content on the platform, insufficient and ineffective mechanisms for users to report that content, and failed to use industry-standard safety tools and processes (for both CSAM reporting and response, and for other sorts of safety measures, like responses to risk-to-life incidents). | Live or Deposition | 1.5 (P) | 1.5 (D direct/cross) |
| Matthew Tenenbaum | P<br><br>TikTok | May (P)<br><br>May (D) | P: TikTok Senior Product Manager, Family Pairing and Age Assurance. Tenenbaum is likely to testify about Family Pairing and age verification.<br><br>D: The TikTok Defendants would call Mr. Tenenbaum to testify about the TikTok platform's safety features. | Deposition (P) | 1.25 (P) | 1.25 (D direct/cross) |
| Amy Classen Ulucay | P<br><br>TikTok | May (P)<br><br>May (D) | P: TikTok former Head of Product and Process, Minor Safety. Ulucay is expected to testify about age assurance, underage user detection, platform design and safety features, reporting | Deposition | 1.25 (P) | 1.25 (D direct/cross) |

12

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
| | | | mechanisms for inappropriate content, and TikTok's awareness of risks to minors including sexual exploitation, grooming, and compulsive usage.<br><br>D: The TikTok Defendants would call Ms. Ulucay to testify about the TikTok platform's safety features. | | | |
| Amber Burchell | P | May | Burchell has worked in various positions at TikTok, including as a user support associate, social media support senior associate, USDS user operations lead for young users and age assurance, and community risk control program manager. Burchell is likely to testify about age gating, and that TikTok did not proactively communicate potential risks associated with the platform, such as addiction, mental health issues, or increased risks of depression and self-harm in teens, to users or their parents. | Deposition | .75 (P) | 0.75 (D direct/cross) |
| Julie de Bailliencourt | P<br><br>TikTok | May (P)<br><br>May (D) | P: De Bailliencourt will likely testify about their role as former Global Head of Product Policy at TikTok.<br><br>D: The TikTok Defendants would call Ms. de Bailliencourt to testify about TikTok's trust and safety policies and practices and the TikTok platform's safety features | Deposition | 1 (P) | 1 (D direct/cross) |

13

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
| Natalie Medoff | P | May | Medoff will likely testify about their role as former Program Manager, Trust and Safety at TikTok and age assurance at TikTok. | Live or Video Deposition | 1 (P) | 1 (D direct/cross) |
| J.L. | P | May | J.L. is anticipated to testify about YouTube Shorts. | Deposition | .5 (P) | 0.5 (D direct/cross) |
| Sharon Stovezky | P | May | Stovezky is anticipated to testify about algorithm and volume impact wellbeing at YouTube. | Live | .5 (P) | 0.5 (D direct/cross) |
| Matt Halprin | P / YouTube | May (P) / May (D) | P: Halprin is anticipated to testify about Trust and Safety regarding content moderation signals at YouTube.<br><br>D: YouTube would call Mr. Halprin to testify about YouTube's trust and safety policies and practices | Deposition (P) / Live (D) | 1 (P) | 0.5 (D direct/cross) |
| Woojin Kim | P / YouTube | May (P) / May (D) | P: Kim is anticipated to testify about product development, design, youth, autoplay, and infinite scroll at YouTube.<br><br>D: YouTube would call Mr. Kim to testify about YouTube's design and experiences for both adults and youth on the platform, as well as company goal-setting. | Live | 1 (P) | 1 (D direct/cross) |
| Caitlin Niedermeyer | P / YouTube | May (P) / May (D) | P: Niedermeyer is anticipated to testify about internal policies at YouTube.<br><br>D: YouTube would call Ms. | Deposition (P) / Live (D) | 1 (P) | 1 (D direct/cross) |

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
| | | | Niedermeyer to testify about YouTube's work on youth safety and warnings to the public. | | | |
| Raj Iyengar | P<br><br>YouTube | May (P)<br><br>May (D) | P: Iyengar is anticipated to testify about digital wellbeing features, accounts, and age verification at YouTube.<br><br>D: YouTube would call Mr. Iyengar to testify about YouTube's youth experiences and safety features. | Deposition (P)<br><br>Live (D) | 1 (P) | 1 (D direct/cross) |
| Bill Saphir | P<br><br>YouTube | May (P)<br><br>May (D) | P: Saphir is anticipated to testify about tech at YouTube.<br><br>D: YouTube would call Mr. Saphir to testify about YouTube's policies and practices concerning user data, including the KGM/RKC data produced in this case.. | Deposition (P)<br><br>Live (D) | .5 (P) | 0.5 (D direct/cross) |
| John Harding | P | May (P) | Harding is anticipated to testify about OKRs at YouTube. | Deposition (P) | .5 (P) | 0.5 (D direct/cross) |
| James Beser | P<br><br>YouTube | May (P)<br><br>May (D) | P: Beser is anticipated to testify about youth product design at YouTube.<br><br>D: YouTube would call Mr. Beser to testify about YouTube's youth experiences and safety features. | Live or Deposition (P)<br><br>Live or Deposition (D) | 1 (P) | 1 (D direct/cross) |

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
| Neal Mohan[1] | P | Will | Neal Mohan is CEO of YouTube. Mohan is anticipated to testify about knowledge, strategy, and age inference at YouTube. Mohan is anticipated to discuss numerous defendant documents. | Live | 1.5 (P) | 1.5 (D direct/cross) |
| Tom Saffell | P<br><br>YouTube | May (P)<br><br>May (D) | P: Leads product management for the infrastructure team at YouTube. Tom Saffell is expected to testify about age assurance, age verification, declared age, and logged out users on YouTube.<br><br>D: YouTube would call Mr. Saffell to testify about Google's Age Assurance model and related issues, including the signed-out experience. | Live or Deposition (P)<br><br>Live (D) | .5 (P) | 0.5 (D direct/cross) |
| Adi Jain | P<br><br>YouTube | May (P)<br><br>May (D) | P: Product Manager at YouTube focused on child safety. Adi Jain is expected to testify about YouTube's efforts to detect and prevent unsupervised children from using YouTube, the ability for children to change their birthdate during the account creation process, and communications to | Live or Deposition (P)<br><br>Live (D) | .5 (P) | 0.5 (D direct/cross) |

---

[1] Defendant YouTube opposes the inclusion of YouTube's CEO Neal Mohan on the witness list. YouTube reserves the right to move to quash any demand for Mr. Mohan to appear at trial. By including time estimates, YouTube does not concede that Mr. Mohan should appear live at trial.

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
| | | | users who reach the age of 13. D: YouTube would call Mr. Jain to testify about YouTube's child safety policies and processes, including underage account detection. | | | |
| Cristos Goodrow | P YouTube | Will (P) Will (D) | P: Goodrow is anticipated to testify about algorithm design and goals at YouTube. Goodrow is anticipated to discuss numerous defendant documents. D: YouTube would call Mr. Goodrow to testify about YouTube's features, including content recommendations, as well as company goal setting. | Live | 1.5 (P) | 2 (D direct/cross) 1 (P) |
| Lotte Rubaek | P | May | Lotte Rubaek was an Advisor on Meta's Board. Rubaek will testify to the facts and circumstances related to her role. | Live or Deposition | 1.5 (P) | 1.5 (D direct/cross) |
| Adam Mosseri | P | Will | Head of Instagram. Mosseri is expected to testify about core metrics, product features, user experience, youth and child safety, resource allocation, and communications. Mosseri is anticipated to discuss numerous defendant documents. | Live | 2.5 (P) | 1.75 (D direct/cross) |
| Darius Kilstein | P | May | Director of Data Science. Kilstein is expected to testify about teen user | Deposition | 1 (P) | 0.75 (D direct/cross) |

17

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
| | | | acquisition, engagement, and retention, core metrics, problematic use, social comparison and other mental health impacts, and corporate decision-making. | | | |
| Arturo Bejar | P | Will | Plaintiff non-retained expert and Meta fact witness. Arturo Bejar is the former Leader for Integrity and Care at Facebook, who then returned as an independent contractor with an expertise in child safety. Mr. Bejar will testify as to Meta's lack of systems to adequately protect children. He will also testify as to research he conducted at Meta related to user harms, including the reliability of his research, his interactions with Meta's leadership on his research findings, and the lack of response by Meta's leadership. His testimony will address testing he independently performed on Meta's safety features following his departure from Meta and testing performed in collaboration with other organizations. | Live or Deposition | 1.75 (P) | 1.25 (D direct/cross) |
| Aza Raskin | P | May | Aza Raskin invented infinite scroll, a feature available on Meta's platforms. He will likely testify about infinite scroll, dark patterns in technology, infinite scroll's effect on tech addiction, and other facts and circumstances related to his invention of this feature. | Live or Deposition | 1.5 (P) | 1.5 (D direct/cross) |

18

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
| Kyle Andrews | P<br><br>Meta | May (P)<br><br>May (D) | P: Kyle Andrews is a former Staff User Experience Researcher. He is expected to testify on the studies, surveys, and tests he ran on the experience of Meta's users, Meta's safety policies and features, and Meta's reactions to and use of survey data.<br><br>D: Meta would call Mr. Andrews to testify about internal user surveys at Meta, and how Meta works to improve user well-being. | Deposition | 1 (P) | 1 (D direct/cross) |
| Margaret Gould Stewart | P | May | Margaret Gould Stewart is the former Vice President of Product Design and Responsible Innovation at Meta. She is likely to testify to the facts and circumstances related to this role, Meta's use of filters on the app, and Meta's safety policies and procedures. | Deposition | 1.25 (P) | 1.25 (D direct/cross) |
| **Mark Zuckerberg** | P | Will | **Mark Zuckerberg is the co-founder of Facebook and the CEO and controlling shareholder of Meta Platforms, Inc, which also owns Instagram. He is expected to testify about the design of Meta's social media platforms; corporate decision-making; resource allocation; communications; internal Meta research; child safety; CSAM and** | Live | 2.75 (P) | 1.75 (D direct/cross) |

19

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
| | | | CSE; age verification; core and user metrics; under 13 accounts; youth mental health and addiction; vulnerability of young users; and teen user acquisition. Zuckerberg is anticipated to discuss numerous defendant documents. | | | |
| Josh Simons | P | May | Josh Simons is a former visiting research scientist who contracted with and then was employed part-time at Meta. He is expected to testify about machine learning systems at Meta, ranking and recommendations; algorithms; and the advertising delivery system. | Deposition | 1.25 (P) | 1.25 (D direct/cross) |
| Vaishnavi Jayakumar | P | May | Vaishnavi Jayakumar was Head of Safety & Wellbeing at Instagram and later Head of Youth Policy at Meta. She is expected to testify about product features, child safety, teen mental health, and harassment of youth on Meta's platforms; Meta's child safety and well-being efforts; age verification; and under 13 accounts. | Deposition | 1.5 (P) | 1.5 (D direct/cross) |
| Shayli Jimenez | P | May | Shayli Jimenez is a Senior User Experience Researcher at Meta. She is expected to testify to her research on teen users, design and features geared towards teens, the apps habit enforcing | Live or Deposition | 2.5 (P) | 1 (D direct/cross) |

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
| | | | design, and other facts and circumstances related to her employment. | | | |
| Alison Lee | P | May | Alison Lee is a former Senior Researcher, first in relevant integrity at Instagram and later in the central Meta team in Responsible AI. She is expected to testify about youth mental health and child safety research, features geared towards teens, feature development, and other facts and circumstances related to her employment. | Deposition | 1.5 (P) | 1.5 (D direct/cross) |
| Brian Boland | P | May | Boland will likely testify about their role as former Vice-President for partnership data at Meta, including that Meta prioritized profits over safety, transparency efforts or lack thereof, and Meta's internal research efforts. | Live or Deposition | 1.5 (P) | 1.5 (D direct/cross) |
| Thomas Wynter | P | May | Wynter will likely testify about their role as a user-experience researcher at Meta, including internal research and work related to youth wellbeing and mental health, potential product changes to reduce harm to teens, prioritization of user engagement over safety, research priorities, and communication strategies. | Deposition | 1.5 (P) | 1.5 (D direct/cross) |
| Moira Burke | P  Meta | May (P)  May (D) | P: Burke will likely testify about their role as a research scientist at Meta, | Deposition | 1 (P) | 1 (D direct/cross) |

21

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
| | | | including conducting and reporting on internal user surveys and research in the areas of problematic use/addiction, social comparison, and user mental health.<br><br>D: Meta would call Dr. Burke to testify about her user experience research at Meta related to problematic use, appearance comparison, and SSI and how that research led to platform changes | | | |
| Jason Sattizahn | P | Will | **Sattizahn will likely testify about his role as a former research scientist at Meta, including conducting and reporting on internal user surveys and research in the areas of problematic use/addiction, social comparison, user mental health, prioritization of engagement over safety, and lack of transparency.** | **Live or Deposition** | 2.5 (P) | 2.5 (D direct/cross) |
| George Volichenko | P | May | Meta Data Scientist, Mental Wellbeing Team. Expected to testify about Meta's decisions regarding implementation of safety features. | Live or Deposition | 1.5 (P) | 1 (D direct/cross) |
| Michael Rothschild | P | May | Meta's Senior Director of Product Management. Expected to testify about Meta's business model, the work of Meta's Well-being Team, and Meta's | Live or Deposition | 3 (P) | 1.5 (D direct/cross) |

22

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
| | | | knowledge regarding children under the age of 13 on Instagram. | | | |
| Natalie Troxel | P | May | Natalie Troxel is a Senior User Experience researcher at Meta. She will likely testify to her research on child safety and mental wellbeing, the company's reaction to this research, and actions taken in light of this research, as well as other facts and circumstances of her employment. | Live or Deposition | 1.5 (P) | 1.5 (D direct/cross) |
| Frances Haugen | P | May | Frances Haugen is a former product manager at Facebook. She is expected to testify about the design of Meta's platforms and product features including its algorithms, youth mental health, and child safety on Meta's platforms. | Live or Deposition | 1.5 (P) | 1.5 (D direct/cross) |
| Victoria Burke, LMFT | P<br><br>D | May (P)<br><br>May (D) | P: Burke is a licensed marriage and family therapist with a Masters of Science in Psychology. Burke is anticipated to testify about her treatment of KGM as an adolescent teen beginning in 2019 and how social media use contributed to KGM's mental health harms.<br><br>D: Defendants would call Ms. Burke, KGM's treating therapist January 2019 | Live or Deposition (P)<br><br>Deposition (D) | .5 (P)<br><br>0.75 (D) | .5 (P) |

23

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
| | | | to June 2019, to testify that she did not attribute KGM's mental health diagnoses to social media. | | | |
| Grace Scott | P | Will | Scott is a licensed clinical social worker. Scott is anticipated to testify about her treatment of KGM at Victor Community Support Services beginning in 2018. | Live or Deposition | .5 (P) 0.25 (D) | .5 (P) |
| Allison Pratt, LMFT, MA | P D | Will (P) Will (D) | P: Plaintiff treater. Pratt is a marriage and family therapist. She treated KGM at Victor Counseling and Three Rivers Counseling and is anticipated to testify about Plaintiff's treatment. D: Defendants would call Ms. Pratt, KGM's treating therapist from 2020 to the present, to testify about the various alternative causes and stressors impacting KGM's mental health. | Live or Deposition | .5 (P) 0.75 (D) | .5 (P) |
| Matt McLaughlin | P D | Will (P) Will (D) | P: McLaughlin is the director of special education and school psychologist at Inspire School of Arts & Science. McLaughlin is anticipated to testify about his evaluation of KGM and her school environment from approximately 2019-2023. | Live or Deposition | .5 (P) | 0.5 (D) |

24

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
| | | | D: Defendants would call Mr. McLaughlin, KGM's high school counselor, to testify about various alternative causes and stressors impacting KGM's mental health from the school setting, such as learning difficulties, social isolation, and bullying. | | | |
| Keanna GM | P | Will | Keanna is KGM's sister and is likely to testify about KGM's life and what she has observed regarding how social media has impacted her sister. Keanna may testify regarding other matters within her personal knowledge of KGM. | Live | .5 (P) | 0.75 (D) |
| Karen Ann G | P | Will | Karen Ann G. is KGM's mother. She is anticipated to testify about what she has observed regarding KGM's life before and after social media use. The witness may testify regarding other matters within her personal knowledge of KGM. | Live | .75 (P) | 1.25 (D) |
| KGM | P | Will | Plaintiff. Anticipated to testify about her life before and after social media use, including information regarding her usage of various social media platforms and addictive features, and | Live | 1 (P) | 1.75 (D) |

25

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
| | | | how social media has impacted her mental health. | | | |
| Sonia Krishna, M.D. | P<br><br>D | May (P)<br><br>Will (D) | P: Dr. Krishna is a defense expert who is anticipated to testify about the existence and potential causes of mental psychiatric conditions alleged by KGM.<br><br>**D: Dr. Krishna is a board-certified child and adolescent psychiatrist. Defendants would call Dr. Krishna to testify about the alternative causes of KGM's claimed mental health harms, and that Defendants' social media platforms (including any feature) did not cause KGM's claimed mental health disorders** | Deposition (P)<br><br>Live (D) | .5 (P)<br><br>2 (D) | 2.25 (P) |
| Thomas Suberman | P<br><br>D | May (P)<br><br>Will (D) | P: Dr. Suberman is a psychiatrist. He is anticipated to testify about the relationship between KGM's phone usage and her body dysmorphia.<br><br>**Defendants would call Dr. Suberman, a psychiatrist who treated KGM from 2019 to 2022, to testify about various alternative causes and stressors impacting KGM's mental health, including peer and family relationships.  Dr. Suberman would** | Deposition (P)<br><br>**Deposition (D)** | 1 (P)<br><br>0.75 (D) | .75 (P) |

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
| | | | also testify that social media was not the focus of his work with KGM, and that he did not diagnose KGM with social media addiction. | | | |
| Ken Hardy | D | May | Mr. Hardy is the associate principal of Inspire School of Arts and Sciences, Plaintiff's former high school. Defendants would call Mr. Hardy, the principal at KGM's high school, to testify about various alternative causes and stressors impacting KGM's mental health from the school setting, including an incident involving a sexually graphic act in a classroom that led to bullying and social isolation and affected KGM's mental health. | Deposition | 0.5 (D) | .5 (P) |
| Tasha Teeter | D | May | Defendants would call Ms. Teeter, a school counselor at KGM's high school, to testify about various alternative causes and stressors impacting KGM's mental health from the school setting, and an incident involving a sexually graphic act in a classroom that led to bullying and social isolation and affected KGM's mental health. | Deposition | 0.5 (D) | .5 (P) |
| Mary Nwabunor | D | May | Defendants would call Ms. Nwabunor, a nurse practitioner who treated KGM at a June 2023 visit, to testify about KGM's | Deposition | 0.5 (D) | .5 (P) |

27

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
| | | | mental health conditions as presented to the practice at that time in Ms. Nwabunor's records. | | | |
| KGM Father | D | May | Defendants would call KGM's father, to testify about various alternative causes and stressors impacting KGM's mental health in her family life, , and his observations of KGM's social media use. | Deposition | 0.75 (D) | .5 (P) |
| **Julian Ackert** | YouTube | Will | **YouTube would call Mr. Ackert to testify to his opinions regarding the data measuring KGM/RKC's use of YouTube.** | Live | 1.0 (D) | 1 (P) |
| Dmitry Asinski | D | May | Defendants would call Dr. Asinski to testify about KGM's usage of her phone and social media platforms. | Live | 0.75 (D) | .5 (P) |
| **Kendra Becker** | D | Will | **Defendants would call Dr. Becker to testify about KGM's claimed injuries (focusing specifically on body dysmorphic disorder) and that the scientific literature does not support that Defendants' social media platforms (including any feature) caused KGM's claimed BDD.** | Live | 0.75 (D) | 1 (P) |
| **Krista Hayakawa** | Snap | Will | **Ms. Hayakawa is a Data Engineer at Snap. Snap would call Ms. Hayakawa** | Live | 0.75 (D) | .75 (P) |

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
| | | | to testify about Snap's usage data and her analysis of the usage data of Plaintiff's Snapchat accounts. | | | |
| Praveen Kambam | YouTube | Will | YouTube would call Dr. Kambam to testify to his opinions regarding KGM/RKC's claimed mental health harms, and to his opinions that YouTube (including any features of YouTube) did not cause KGM/RKC's claimed mental health disorders | Live | 1.75 (D) | 1.75 (P) |
| Avigail Kifer | Snap | May | Ms. Kifer is a Principal of Cornerstone Research, with a A.B. in Mathematics, a certificate in Finance from Princeton University, and a Ph.D. in Economics from the University of Chicago.  Snap would call Ms. Kifer to testify about her analysis of Snapchat data and to rebut Ms. McCarron's data analysis. | Live | 0.5 (D) | .25 (P) |
| Randy Auerbach | D | May | Defendants would call Dr. Auerbach to testify about the state of the science on whether use of Defendants' social media platforms can cause clinical addiction and the other mental health harms Plaintiffs claim. | Live | 1.75 (D) | 1.5 (P) |
| Adriana Galvan | D | May | Defendants would call Dr. Galvan to testify about adolescent neurodevelopment, how the scientific | Live | 1 (D) | 1 (P) |

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
| | | | literature does not support that use of Defendants' social media platforms (including any feature) causes changes in brain structure, the benefits of social media, and to address Plaintiffs' theories of addiction. | | | |
| Eric Hammerquist | D | May | Defendants would call Dr. Hammerquist to testify about the manner of extracting data from Plaintiffs' devices, for analysis by Dr. Asinski. | Live | 0.5 (D) | .5 (P) |
| Keith Hampton | D | May | Defendants would call Dr. Hampton to testify that current data does not support that social media use (including any feature) causes mental health disorders, that there is no reliable data to claim that social media use caused a rise in mental health disorders in adolescents, and that social media use provides benefits to adolescents. | Live | 0.5 (D) | .5 (P) |
| **Chris Mattmann** | **TikTok** | **Will** | **The TikTok Defendants would call Dr. Mattman to testify about the platform's function, features, and safety architecture.** | **Live** | **1.75 (D)** | **1.75 (P)** |
| Neil Malhotra | TikTok | May | The TikTok Defendants would call Dr. Malhotra to testify about the company's corporate conduct and decision-making. | Live | 1.5 (D) | 1.5 (P) |

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
| Ayse Yesim Orhun | YouTube | May | YouTube would call Dr. Orhun to testify to her opinions regarding the existence and efficacy of YouTube's warnings to adolescents and parents about the potential harms associated with YouTube. | Live | 0.75 (D) | .75 (P) |
| Scott Patten | D | May | Defendants would call Dr. Patten to testify about the scientific literature on social media use and why that literature fails to establish a causal relationship between use of any platform (including any feature) and any mental health disorders or any other outcome assessed in that literature. | Live | 1.5 (D) | 1.5 (P) |
| Peter Rossi | Meta & TikTok | May | Defendants would call Dr. Rossi to testify that there is no evidence that social media warnings would be effective or would improve adolescents' mental health. | Live | 0.5 (D) | .5 (P) |
| Emilio Ferrara | Meta | May | Meta would call Dr. Ferrara to testify that Meta's content moderations systems are reasonably designed. | Live | 0.75 (D) | .75 (P) |
| Jeremy Birnholtz | Meta | May | Meta would call Dr. Birnholtz to testify that Meta's platform design is reasonable, and that Meta's platforms do not use so-called "dark patterns." | Live | 0.75 (D) | .75 (P) |

31

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
| John Starr | Meta | May | Meta would call Dr. Starr to testify that Meta's systems for preventing child sexual exploitation are reasonably designed. | Live | 0.75 (D) | .75 (P) |
| Monika Bickert | Meta | Will | Meta would call Ms. Bickert to testify about Meta's development and enforcement of its safety and well-being policies. | Live | 1 (D) | 1.25 (P) |
| Kristin Hendrix | Meta | Will | Meta would call Dr. Hendrix to testify about Meta's internal research on teen well-being on its platforms, how it relates to external research on teen mental health, and how Meta acts on that research. | Live | 1 (D) | 1.5 (P) |
| Suzy Loftus | TikTok | Will | The TikTok Defendants would call Ms. Loftus to testify about TikTok's trust and safety policies and practices, as well as the TikTok platform's safety features | Live | 1 (D) | 1.5 (P) |
| Sandeep Grover | TikTok | Will | The TikTok Defendants would call Mr. Grover to testify about TikTok's trust and safety policies and practices, the TikTok platform's safety features, and its content moderation policies and practices. | Live | 0.75 (D) | 1 (P) |

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
| Blake Chandlee | TikTok | May | The TikTok Defendants would call Mr. Chandlee to testify about TikTok's advertising policies and strategies. | Live or Deposition | 1 (D) | 1 (P) |
| Ethan Spector | TikTok | May | The TikTok Defendants would call Mr. Spector to authenticate produced account usage data. | Live or Deposition | 1 (D) | 1 (P) |
| Eric Ebenstein | TikTok | May | The TikTok Defendants would call Mr. Ebenstein to testify about TikTok's partnerships with third-party organizations. | Deposition | 1 (D) | 1 (P) |
| Yuyi Fu | TikTok | May | The TikTok Defendants would call Ms. Fu to testify about TikTok's trust and safety policies and practices and its content moderation policies and practices. | Deposition | 1 (D) | 1 (P) |
| Samantha Kersul | TikTok | May | The TikTok Defendants would call Ms. Kersul to testify about TikTok's partnerships with third-party organizations. | Deposition | 1 (D) | 1 (P) |
| Cormac Keenan | TikTok | May | The TikTok Defendants would call Mr. Keenan to testify about TikTok's trust and safety policies and practices and the TikTok platform's safety features. | Deposition | 0.5 (D) | .5 (P) |
| Matt Fischer- Colbrie | YouTube | May | YouTube would call Mr. Fischer-Colbrie to testify about YouTube's advertising policies and practices. | Live | 0.5 (D) | .5 (P) |

33

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
| Tanaya Kasavana | YouTube | May | YouTube would call Ms. Kasavana to testify about YouTube's youth safety features and communications with parents. | Live | 1 (D) | 1 (P) |
| Ian McMeans | YouTube | May | YouTube would call Mr. McMeans to testify about YouTube's policies and practices concerning user data, including the KGM/RKC data produced in this case. | Live | 0.5 (D) | .5 (P) |
| Erin Turner | YouTube | May | YouTube would call Ms. Turner to testify about YouTube's youth safety features. | Live | 1 (D) | 1 (P) |
| Antigone Davis | Meta | May | Meta would call Ms. Davis to testify about Meta's safety and parental supervision tools, and their development. | Deposition | 0.75 (D) | .75 (P) |
| Elena Davis | Meta  P | May  May | Meta would call Dr. Davis to testify about her user experience research at Meta related to problematic use, social comparison, and wellbeing generally and how that research led to platform changes. | Deposition | 1 (D)  1 (P) | 1 (P) |
| Wendy Gross | Meta | May | Meta would call Ms. Gross to testify about Meta's user research, including how it impacted platform development, | Deposition | 0.75 (D) | .75 (P) |

34

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
| | | | its design, and the limitations of its findings. | | | |
| Karina Newton | Meta | May | Meta would call Ms. Newton to testify about Meta's well-being and safety policy development, including policies on SSI and eating disorders and the deployment of tools for users related to those concerns. | Deposition | 1.5 (D) | 1.5 (P) |
| Sayed Otaru | Meta | May | Meta would call Mr. Otaru to testify about how Meta develops and improves safety and wellbeing features, policy enforcement, and efficacy of tools and features. These features include one covering bullying and harassment, inappropriate interactions with children, SSI and ED. | Live | 1.5 (D) | 1.5 (P) |
| Pratiti Raychoudhury | Meta | May | Meta would call Ms. Raychoudhury to testify about her work related to Meta's well-being and user experience research. | Deposition | 1 (D) | 1 (P) |
| Guy Rosen | Meta | May | Meta would call Mr. Rosen to testify about the evolution of Meta's proactive content moderation systems. | Deposition | 1.5 (D) | 1.5 (P) |
| Alex Schultz | Meta | May | Meta would call Mr. Shultz to testify about Meta's marketing, analytics, and growth practices, including Meta's | Deposition | 1.5 (D) | 1.5 (P) |

35

| NAME | PARTY CALLING | MAY V. WILL CALL | WITNESS DESCRIPTION | METHOD OF APPEARANCE | DIRECT TIME (in hours) | CROSS TIME (in hours) |
|---|---|---|---|---|---|---|
| | | | revenue by market segment and Mr. Schultz's work related to teen users of Meta's platforms. | | | |
| Yoav Shapira | Meta | May | Meta would call Mr. Shapira to testify about the development of Meta's safety tools and features for users. | Live | 1 (D) | 1 (P) |
| Jeremy Nuger | Meta | May | Meta would call Mr. Nuger to authenticate and testify about produced user data. | Deposition | 0.5 (D) | .5 (P) |
| Record custodian regarding Plaintiff's user account data | Meta | May | The custodian may testify to authenticate and testify about produced user data. | Live | 0.5 (D) | .5 (P) |

36

**Time Calculations[2]**

Plaintiff Total Will Call Time: 51
Plaintiff Total May Call Time: 102.25[3]
Defense Total Will Call Time: 42.25[4]
Defense Total May Call Time: 92.25

**Reservation of Rights**

**Plaintiff**: Plaintiffs reserve the right to call additional witnesses as may become necessary for rebuttal or impeachment, or as the evidence or testimony at trial may require. Plaintiffs further reserve the right to add, delete, or substitute witnesses as additional information becomes available through discovery or as circumstances may require. This witness list is submitted without prejudice to Plaintiffs' right to call any witness disclosed by any other party in this action.

**Defendants**: Defendants object to Plaintiffs' improper reservations of rights, but if Plaintiffs are permitted to call witnesses absent from this witness list, Defendants should be permitted to do so as well. In the event that Plaintiffs do not call witnesses who they included on this list as "will call" witnesses, Defendants reserve the right to call those witnesses.

**40-Hour-Per-Side Limit**

**Defendants**: The Court previously allocated equal time for Plaintiffs and Defendants at trial, *see* 10/6/2025 Hr'g Tr. 25:17-19,  and that allocation should not be disturbed.[5]  Nevertheless, Defendants submit that a 40-hour per side limit for trial (which is currently envisioned by

---

[2] The parties provide these descriptions in order to assist the Court in evaluating the Parties' witness lists, and the length of trial.  The parties reserve all rights to elicit testimony from a witness not captured by these descriptions.

[3] Plaintiff anticipates a maximum of 10 hours, and most likely far less, for 'may call' witnesses, depending on the testimony elicited from 'will call' witnesses.

[4] Defendants' will-call examination time estimate is based on Plaintiff's original time estimates and will-vs-may-call designations submitted in the parties' November 13 witness list.  Defendants submit that the Court should continue to limit both sides to 40 hours of will-call witness examination.  If the Court allows Plaintiff to present more than 40 hours of will-call witness examination, Defendants reserve the right to correspondingly revise their examination times.

[5] While Defendants believe they can try their case within 40 hours, in the event Plaintiffs get more time, Defendants will need an equal amount of additional time to cross-examine Plaintiffs' additional witnesses and call additional witnesses to respond to the testimony.

the Court) is a proportional and reasonable amount of time for a case of this nature.

The Court has previously indicated that the longest trial it has ever held was six weeks, *see* 9/24/2025 Hr'g Tr. 10:3-4, and that shorter trials are better. *See* 6/16/2025 Hr'g Tr. 56:20-21 ("I think a shorter trial is a better trial just in general."); 10/6/2025 Hr'g Tr. 26:23-27:1 (encouraging the Parties to "streamline the testimony").  As the Court indicated when tentatively setting a 40-hour-per-side limit, 40 hours will approximate that length (i.e., six weeks) in this case.  *See* 10/6/25 Hr'g Tr. 25:26–26:2.

In setting the tentative, the Court indicated that any side wanting more time would need to show why they needed it, *id.* at 25:24–25, something Plaintiffs have not done here.  In fact, despite the Court's guidance that it believes a lean case can be presented well within six weeks, Plaintiffs' witness list remains bloated.  For example, the Court indicated that it does not "see a reason why either side would need more than two general causation experts," 10/6/2025 Hr'g Tr. 27:9-14—experts the Court is familiar with from the *Sargon* briefing.  But Plaintiffs' witness list continues to identify three will-call GC experts and three further may-call GC experts.  And Plaintiffs' exhibit list bears no relation to a trial of any reasonable length, with approximately 4,500 company documents listed.

In addition, a per-trial limit of 40 hours per side will assist in moving all three bellwether trial pools forward to trial on the ambitious trial schedule set throughout 2026.  On a six-week schedule, the first bellwether trial commencing January 27 will not end until March 6.  Even if jury selection for the second bellwether trial in Trial Pool 1 were to commence the very next Monday, March 9, the second bellwether trial would not conclude until April 17—*after* the date currently set for the first trial in Trial Pool 2 (April 13).  Indeed, the Court's tentative ruling will already result in 54 weeks of trial time for the nine cases included in the trial pool.  Any time allocation longer than 40 hours per side lacks merit and, if adopted, would require a wholesale revision of the 2026 trial schedule.

**Plaintiff**

As indicated previously, Plaintiffs would like to be heard on the matter of overall trial time and look forward to discussing these matters with the Court.

Plaintiffs respectfully request the Court allocate 60 hours to Plaintiff and 60 hours to Defendants for the KGM trial, the first bellwether case in the nation involving personal injury claims against Defendants Meta, Snapchat, TikTok, and YouTube. This request reflects a measured and proportional adjustment to the current allocation grounded in the number of defendants, the breadth of the factual record, and the distinct theories of liability that the Plaintiff must present. Plaintiff does not seek to disturb the Court's earlier decision to divide trial time equally between Plaintiff and Defendants.

Courts overseeing complex litigation routinely tailor trial time to ensure that each side can fairly and efficiently present its case, and 60 hours

per side is well within the mainstream of modern trial management in comparable matters. *See, e.g., In re: Nat'l Prescription Opiate Litig.* (N.D. Ohio, Case No. 1:17-MD-2804) (allowing each side 100 hours for presentation of evidence in Track 1 bellwether cases involving numerous defendants and distinct theories of liability); *In re 3M Combat Arms Earplugs Prod. Liab. Litig.* (N.D. Fla. Case No. 3:19-md-2885) (allowing each side 82.5 hours for presentation of evidence in a multi-plaintiff trial with individual factual and scientific issues). *Fong, et al. v. Johnson & Johnson, et al.*, No. BC675449 (Cal. Super. Ct. L.A. Cnty. [LAOSD Asbestos Litigation], JCCP No. 4674) (allocating 50 hours of trial time to each side in a complex action involving a personal injury and loss of consortium claim against two Johnson & Johnson entities acting as a single defendant); *In re JUUL Labs, Inc., Marketing, Sales Practices & Prods. Liab. Litig..* (N.D. Cal. Case No. 3:19-cv-08177) (allowing 50 hours per side for presentation of evidence until settlement left only one defendant and trial time was adjusted to 40 hours per side). Given the number of parties and complexity of issues involved in this case, additional trial time will facilitate a clear presentation of the numerous claims and defenses before the jury.

Defendants argue Plaintiff's anticipated trial presentation is "bloated" given the number of general causation experts Plaintiffs identified as "will call" and "may call." Focusing on the limited set of issues susceptible to common proof disregards Plaintiff's significant burden of establishing liability as to each individual Defendant. Furthermore, Plaintiff's "will call" general causation experts have distinctly unique backgrounds and expertise and the testimony will not be cumulative. Plaintiff must submit individualized evidence on issues including but not limited to each separate Defendants' platform design choices, internal decision-making, feature functionality, and product warnings. This will involve the introduction of numerous Defendant-specific documents and testimonial evidence from experts and percipient fact witnesses, including current and former employees of each Defendant. Plaintiffs present their case first and must use substantial portions of their limited time to educate the jury on foundational concepts—including mental health principles, addiction mechanisms, adolescent development, platform functionality, and industry background—that Defendants will then benefit from without expending their own time to explain.

Defendants, acutely aware of Plaintiff's substantial burden, have up to this point refused to engage with a proposed procedure for stipulating to the authenticity of their own produced documents. Accordingly, it is clear that Defendants' insistence on a 40-hour per-side limit is not a good faith effort to promote efficiency, but a tactical attempt to force Plaintiff into a rushed and incomplete presentation of her case. Plaintiff, therefore, respectfully requests that the Court allocate 60 hours per side to ensure a full, orderly, and fair presentation of evidence to the jury.

2

3