UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE: SOCIAL MEDIA ADOLESCENT
ADDICTION/PERSONAL INJURY PRODUCTS
LIABILITY LITIGATION

This Document Relates To:

*ALL CASES*

MDL No. 3047

Case No. 4:22-md-03047-YGR (PHK)

**OPPOSITION TO META'S MOTION
TO PRECLUDE LIVE TESTIMONY
OF MARK ZUCKERBERG IN ALL
BUT THE FIRST BELLWETHER
TRIAL.**

Judge: Hon. Yvonne Gonzalez Rogers
Magistrate Judge: Hon. Peter H. Kang

Date:
Time: 8:00 AM
Place: Courtroom 1, 4th Floor

Meta seeks permission from this Court to bar any plaintiff in this MDL from obtaining live trial testimony from Mark Zuckerberg—except the first school district bellwether, Breathitt County School District. That testimony from a single initial trial would become the only trial testimony available to every other plaintiff in this MDL: every injured child, every school, every state. The Federal Rules do not authorize drastic, unique, wholesale protection just for Mr. Zuckerberg (and him alone) while irreparably prejudicing thousands of plaintiffs.[1] Whether Mr. Zuckerberg appears live should be decided trial-by-trial, with briefing tailored to each team's evidence and strategy. Only then would the trial court have sufficient information to determine whether the Breathitt trial recording of Mr. Zuckerberg is a sufficient substitute for live testimony under Fed. R. Civ. P. 43(a).

## I.    ARGUMENT

### A.  Meta's Requested Relief Violates FRCP 43(a)

"At trial, the witnesses' testimony ***must*** be taken in open court" absent a specific exception set forth in a rule or statute. Fed. R. Civ. P. 43(a) (emphasis added). The advisory committee notes to Rule 43(a) explain why, noting that the "ceremony of trial" and the jury's presence "may exert a powerful force for truth-telling," and that the ability to assess demeanor "face-to-face" is "accorded great value in our tradition." Fed. R. Civ. P. 43(a) advisory committee's note to 1996 amendment. "The importance of presenting live testimony in court cannot be forgotten." *Id.*; *see also Obrey v. England*, 215 F. App'x 621, 624 (9th Cir. 2006) (trial by deposition disfavored).

Rule 43(a) acknowledges the existence of exceptions, but Meta cannot satisfy any of them. The first exception appears on the face of the rule itself: "For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." Fed. R. Civ. P. 43(a).[2] Playing a witness's testimony from *a*

---

[1] In addition to violating the Federal Rules, Meta's request contravenes 28 U.S.C. § 1407, which authorizes the transfer of civil actions "for coordinated or consolidated **pretrial** proceedings." For cases destined for remand, an order directing the transferee court that Mr. Zuckerberg shall not be called live at trial is not a pretrial order — it is an order governing the conduct of a trial. Per § 1407, such decisions are for the transferee court to make.

[2] Mr. Zuckerberg is subject to a Rule 45 trial subpoena in this Court because, as a party's officer who regularly transacts business in person in California, he falls squarely within Rule 45(c)(1)(B)'s independent basis for compelled trial attendance anywhere within the state. The Ninth Circuit has

*different trial*, recorded months *if not years* earlier, is obviously not the same thing as a "contemporaneous transmission."

Meta also cannot identify any relevant exception that exists in a rule or a statute, as Rule 43(a) requires. Mr. Zuckerberg is not "unavailable" under Federal Rule of Evidence 804(a)—Meta does not and cannot contend that the specified criteria (death, physical illness, etc.) apply. Federal Rule of Civil Procedure 32 is irrelevant, as it applies by its terms only to prior *deposition* testimony. Fed. R. Civ. P. 32 ("Using Depositions in Court Proceedings"). To the extent Meta relies on cases applying the "apex doctrine" to trial testimony,[3] that precedent is irrelevant as well. Rule 43(a) says that testimony "must be taken in open court unless [(1)] a federal statute, [(2)] the Federal Rules of Evidence, [(3)] these rules, or [(4)] other rules adopted by the Supreme Court provide otherwise." Judicially crafted exceptions (other than those codified by the Supreme Court in a rule) are not on this list.

**B.  Meta's Requested Relief Ignores the Differences Between these Cases.**

The bellwether trials—indeed, all member cases—are not uniform. Importantly, Breathitt's case against Meta does not include certain claims and facts that would be highly probative to other plaintiffs. First, as Breathitt has previously informed Meta, deficiencies in Meta's tools for reporting Child Sexual Abuse Material ("CSAM") are not at issue in Breathitt's case. Because facts related to CSAM reporting are not "of consequence in determining the action," Fed. R. Evid. 401(b), they will not be elicited from Mr. Zuckerberg at Breathitt's trial. But CSAM reporting will be extremely

---

confirmed that Rule 45(c) governs the court's power to compel trial testimony according to its plain text, and that power is unqualified when the geographic predicate is satisfied. *See In re Kirkland*, 75 F.4th 1030, 1036–37 (9th Cir. 2023). That Mr. Zuckerberg appears to maintain a personal residence in Florida is irrelevant — Rule 45(c)(1)(B) draws no distinction based on domicile, and a CEO who regularly conducts corporate affairs in California in person cannot invoke his out-of-state residence as a shield against live trial testimony in the state where he regularly does business.

[3] The apex doctrine is a discovery tool designed to limit *depositions* of senior executives—not a license to avoid testifying at trial. *DataQuill Ltd. v. Kyocera Wireless Corp.*, 2005 WL 8173292, at *2 (S.D. Cal. Oct. 26, 2005) (declining to extend to trial testimony and collecting cases re same). Cases that have applied the doctrine to preclude trial testimony are distinguishable, as they concerned executives who lacked a unique, first-hand, non-repetitive knowledge and/or were not the target of discovery. *See, e.g.*, *Reddy v. Nuance Commc'ns, Inc.*, 2015 WL 4648008, at *4 & n.38 (N.D. Cal. Aug. 5, 2015); *Pinn, Inc. v. Apple Inc.*, 2021 WL 4775969, at *3 (C.D. Cal. Sept. 10, 2021)); *Rodriguez v. Google LLC*, 2025 WL 1871101, at *1 (N.D. Cal. May 6, 2025).

germane to other plaintiffs, including in other bellwethers. Consider a personal injury plaintiff who has been sextorted on Instagram due to Meta's inadequate CSAM reporting tools. Or a school district that repeatedly attempted (to no avail) to report CSAM that spread like wildfire on campus, causing significant disruption. It would be highly prejudicial for these plaintiffs to be precluded from eliciting testimony on this topic from Mr. Zuckerberg just because it was irrelevant to *another* plaintiff.

Second, while Meta's knowledge of and failure to police underage users is relevant to Breathitt's case, Breathitt has not (and, statutorily, could not have) brought a cause of action under the Children's Online Privacy Protection Act ("COPPA"). But COPPA is central to the State AGs' case against Meta. And there is no dispute over the centrality of Mr. Zuckerberg as a witness in the AGs' Meta-only case—he is Meta's self-proclaimed decision-maker. It would be extremely prejudicial for the strategic decisions of a school district representing less than two thousand students to govern a trial prosecuted by 29 State AGs (for the COPPA claim) representing millions of citizens.

Third, both the personal injury bellwethers and the AGs have pursued statutory misrepresentation claims that do not exist as causes of action in the Breathitt bellwether trial. That places the veracity of Mr. Zuckerberg's specific statements to the public and to Congress front and center in those other cases, where they may be less so for Breathitt. And as the State AGs have repeatedly emphasized, a school district's failure to warn claim is not legally or factually equivalent to a deception claim under state consumer protection statutes, a position confirmed by this Court during the April 14 CMC: "I can see how it would not be the same for the AG's case because they're fundamentally different claims." Apr. 14, 2026 CMC Tr. p. 61.

Fourth and finally, Breathitt has agreed on a specific allocation of time—3.25 hours for the plaintiff, 1.25 hours for Meta. Breathitt – and the PSC – would not have agreed to that stipulation if it had known that Meta would seek to bind other plaintiffs, particularly the AGs, who were not parties to that stipulation and who intend to conduct AG case specific examinations of Mr. Zuckerberg covering additional, important topics at their trials.

In short, a single videotaped examination by Breathitt cannot cover fairly the diverse range of facts that will be critical in future trials and Mr. Zuckerberg's role perpetrating and perpetuating the harms at issue in those trials. Future plaintiffs and their trial counsel should not be foreclosed now

from making their own strategic decisions about whether and how to examine Mr. Zuckerberg, what ground to cover, and how to use their time at trial. A ruling shielding Mr. Zuckerberg from testifying in those trials would foreclose those choices before they can even arise for any plaintiff besides Breathitt.

### C.  Meta Seeks a Tactical Advantage, Not Case Management.

Courts reject the substitution of pre-recorded testimony for live in-person testimony when sought for tactical rather than genuine convenience reasons. Rule 43 reflects the baseline principle that live, in-court testimony is the norm, and departure from that norm requires "good cause in compelling circumstances." Fed. R. Civ. P. 43(a). In the MDL context, courts evaluating requests to substitute live testimony with recorded testimony apply a five-factor test articulated in *In re Vioxx Prod. Liab. Litig.*, 439 F. Supp. 2d 640 (E.D. La. 2006): (1) the control exerted over the witness by the defendant; (2) the complex, multi-party, multi-state nature of the litigation; (3) the apparent tactical advantage, as opposed to any real inconvenience to the witness, that the defendant is seeking by not producing the witness voluntarily; (4) the lack of any true prejudice to the defendant; and (5) the flexibility needed to manage a complex multidistrict litigation. *Id.* at 643. The *Vioxx* framework is now the touchstone in MDL practice, and the Court should follow it.

Here, factors one, two, four, and five are either not in dispute or are premature. Meta has complete control over Mr. Zuckerberg. This is a complex MDL involving thousands of plaintiffs from many states divided into three distinct sub-groups—with even more variation of facts and claims within each subgroup. At this juncture, any claimed inconvenience, conflict, or burden is speculative. And the MDL requires flexibility to develop a full, responsive record in each bellwether proceeding.

The third factor is dispositive. In *Vioxx*, the court faced a similar attempt to control the mode of testimony for a defense-aligned witness. The court identified the decisive question as whether the resistance to live examination reflected genuine hardship or was "purely tactical." *Id.* at 643. Finding no real burden, the court ordered live testimony. *Id.* Other courts have reached the same result. For example, *In re 3M Combat Arms Earplug Prods. Liab. Litig.* addressed whether "key witnesses in the MDL litigation" who testified live at earlier bellwether trials "should be compelled to testify live at [an additional] eight trials, albeit from a remote location." 2021 WL 6327374, at *1 (N.D. Fla. Oct.

4

28, 2021). There, as here, the witnesses played a central role in the design and development of the product. And, as here, the defendant argued that prior "videotaped deposition testimony and trial transcripts" were sufficient and that requiring further live appearances (remotely) "posed an undue burden both on them and counsel tasked with preparing them." *Id.* Focusing on "the third *Vioxx* factor…the most important one" the court determined that 3M sought a "tactical advantage by withholding [the key] witnesses" from testifying live in front of the jury." *Id.* at *4. !

Testifying in future trials does not present any bona fide inconvenience to Mr. Zuckerberg—not any more than the inconvenience *any* witness would face. Mr. Zuckerberg's power, wealth, or executive status should not privilege his time over that of other witnesses, be they low-level employees or school teachers. Mr. Zuckerberg is a key witness, and he should be called to trial in person.

## II.    CONCLUSION

"[T]he importance of presenting live testimony…takes on added importance [when] the trials are bellwether trials," because the verdicts they generate serve the entire MDL. *3M Combat Arms*, 2022 WL 504451, at *2. Verdicts produced through pre-recorded video testimony of key witnesses do not have the same value to the litigants, Court, or public. Meta's motion would negatively impact future bellwether trials in this case and set a precedent that invites other "repeat" witnesses—executives, corporate representatives, and experts—to raise their hands for the same relief. Rule 43 commands live testimony, and Mr. Zuckerberg is subject to a Rule 45 trial subpoena in this Court. The Court can, and should, nip this problem in the bud.

For these reasons, Plaintiffs respectfully request that the Court deny Meta's motion in full and reaffirm that the mode of Mr. Zuckerberg's testimony must be determined on a trial-by-trial basis, upon a properly developed record for each trial. This approach preserves the flexibility essential to the MDL process and protects future bellwethers - including the State Attorneys General trials, which present distinct claims and evidence - without collapsing them into the Breathitt examination. Only individualized determinations will ensure fairness to all plaintiffs and fidelity to Rule 43(a).

Dated:  April 24, 2026

/s/ Previn Warren
PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

Co-Lead Counsel


JAMES E. CECCHI
MICHAEL A. INNES
DAVID G. GILFILLAN
**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
T: 973.994.1700
F: 973.994.1744

ZACHARY S. BOWER
**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
2222 Ponce De Leon Blvd.
Miami, Florida 33134


**ROB BONTA**
Attorney General
State of California

/s/ Megan O'Neill
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Emily Kalanithi (SBN 256972)
Supervising Deputy Attorneys General
Nayha Arora (CA SBN 350467)
David Beglin (CA SBN 356401)
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer (CA SBN 336428)
Marissa Roy (CA SBN 318773)

6

Brendan Ruddy (CA SBN 297896)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Megan.ONeill@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*

**PHILIP J. WEISER**
Attorney General
State of Colorado

*/s/ Krista Batchelder*
Krista Batchelder, (CO Reg.45066), *pro hac vice*
Deputy Solicitor General
Shannon Stevenson (CO Reg. 35542), *pro hac vice*
Solicitor General
Elizabeth Orem (CO Reg. 58309), *pro hac vice*
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6384
krista.batchelder@coag.gov
Shannon.stevenson@coag.gov
Elizabeth.orem@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel. Philip J. Weiser, Attorney General*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

*/s/ J. Christian Lewis*
J. Christian Lewis (KY Bar No. 87109),
*pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*pro hac vice*
Zachary Richards (KY Bar No. 99209),
*pro hac vice*

7

Daniel I. Keiser (KY Bar No. 100264), *pro hac vice*
Matthew Cocanougher (KY Bar No. 94292), *pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Ste. 200
Frankfort, KY 40601
Christian.Lewis@ky.gov
Philip.Heleringer@ky.gov
Zach.Richards@ky.gov
Daniel.Keiser@ky.gov
Matthew.Cocanougher@ky.gov
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

**MATTHEW J. PLATKIN**
Attorney General
State of New Jersey

By: /s/ *Kashif T. Chand*
Kashif T. Chand (NJ Bar No. 016752008), *Pro hac vice*
Assistant Attorney General
Thomas Huynh (NJ Bar No. 200942017), *Pro hac vice*
Assistant Section Chief, Deputy Attorney General
Verna J. Pradaxay (NJ Bar No. 335822021), *Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021), *Pro hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General, Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiffs Matthew J. Platkin, Attorney General for the State of New Jersey, and Elizabeth Harris, Acting Director of the New Jersey Division of Consumer Affairs*

8

## ATTESTATION

I, Previn Warren, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: April 24, 2026

*/s/ Previn Warren*
Previn Warren
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
T: 202-386-9610
pwarren@motleyrice.com