UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 <br><br> Case Nos.:  4:22-md-03047-YGR-PHK <br><br> **JOINT LETTER BRIEF RE META'S MOTION FOR PROTECTIVE ORDER PREVENTING BOIES SCHILLER, LABATON, AND MILBERG FIRMS FROM ACCESSING OR USING META'S MDL DISCOVERY FOR PURPOSES OF PRIVATE ARBITRATIONS OR *ABRAHAM*** |
| This Filing Relates to: <br><br> *All Actions* | |
| | Judge: Hon. Yvonne Gonzalez Rogers <br> Magistrate Judge: Hon. Peter H. Kang |

Dear Judge Kang:

Pursuant to this Court's Discovery Standing Order and Case Management Order No. 34 (ECF 2965 at 2-3), Defendants Meta Platforms, Inc. f/k/a Facebook, Inc. and Instagram, LLC (together, "**Meta**"); the law firms of Boies Schiller Flexner LLP, Labaton Keller Sucharow LLP, and Milberg Coleman Bryson Phillips Grossman, PLLC ("**Boies/Labaton/Milberg**"); and Personal Injury and School District Plaintiffs' Co-Lead Counsel ("**PISD Plaintiffs**" and, together with Meta and Boies/Labaton/Milberg, the "**Parties**") respectfully submit this joint letter brief regarding Meta's motion for a protective order preventing Boies/Labaton/Milberg from accessing and/or using the discovery Meta has produced in this MDL for purposes of, or in their capacity as counsel for the claimants/plaintiff in, (a) private arbitrations they have filed or noticed an intent to file against Meta or (b) a stayed class action they have pending in the MDL, *Abraham v. Meta Platforms, Inc.*, No. 4:24-cv-04723-YGR ("***Abraham***").[1]

Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they repeatedly met and conferred by video and audio teleconference, email, and letter correspondence before filing this brief.  Lead trial counsel for Meta and Boies/Labaton/Milberg held a final conference on April 22, 2026, following an initial conference of lead trial counsel for Meta, Boies/Labaton/Milberg, and PISD Plaintiffs on April 13, 2026.  Because all lead counsel were not located in the geographic region of the Northern District of California or otherwise located within 100 miles of each other, they met via teleconference.  Lead trial counsel have concluded that no agreement or negotiated resolution can be reached.

---

[1] *Abraham* Counsel appears only as such, without waiving rights as to the Court's lack of jurisdiction over any private arbitration, and objects to Meta's drafted characterization of the dispute and caption.

Dated: April 24, 2026

Respectfully submitted,

**COVINGTON & BURLING LLP**

*/s/ Ashley M. Simonsen*
Ashley M. Simonsen (State Bar. No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: + 1 (424) 332-4800
Email: asimonsen@cov.com

Paul W. Schmidt, *pro hac vice*
Erin Thomas, *pro hac vice*
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: + 1 (212) 841-1262
Facsimile: + 1 (202) 662-6291
Email: pschmidt@cov.com
Email: ethomas@cov.com

*Attorneys for Defendants Meta Platforms, Inc.*
*f/k/a Facebook, Inc. and Instagram, LLC*

**BOIES SCHILLER FLEXNER LLP**

By: */s/ Joshua Michelangelo Stein*
Joshua Michelangelo Stein (Bar No. 298856)
jstein@bsfllp.com
Nicholas Antonio Santos (Bar No. 335767)
nsantos@bsfllp.com
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
Fax: (415) 293-6899

David Boies (pro hac vice forthcoming)
dboies@bsfllp.com
Alexander Boies (pro hac vice forthcoming)
aboies@bsfllp.com
333 Main Street

2

Armonk, NY 10504
Tel: (914) 749-8200
Fax: (914) 749-8300

Alison L. Anderson (Bar No. 275334)
alanderson@bsfllp.com
2029 Century Park East, 1520
Los Angeles, CA 90067
Tel: (213) 995-5720
Fax: (213) 629-9022

**LABATON KELLER SUCHAROW LLP**
Jonathan D. Waisnor (Cal. Bar No. 345801)
jwaisnor@labaton.com
Morris Dweck (NY Bar No. 5137302)
mdweck@labaton.com
Stephen Kenny (NY Bar No. 5982947)
skenny@labaton.com

Eric Freiman (NY Bar No. 5860531)
efreiman@labaton.com
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Gary M. Klinger (pro hac vice forthcoming)
gklinger@milberg.com
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Tel: 866.252.0878

Melissa H. Nafash
mnafash@milberg.com
Christian Torres
ctorres@milberg.com
405 E. 50th Street
New York, New York 10022
Tel: (212) 946-9305

*Counsel for Abraham putative class*

3

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**

By: */s/ Lexi J. Hazam*
LEXI J. HAZAM
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

*Co-Lead Counsel for Individual Plaintiffs*

## ATTESTATION

I, Ashley M. Simonsen, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: April 24, 2026

By: */s/ Ashley M. Simonsen*

4

**Meta's Position:** After the Court rejected their application for a position in MDL Plaintiffs' Leadership and to open a fourth "class" track of MDL proceedings (beyond the PI, SD, and AG cases),[2] Boies/Labaton/Milberg—in their capacity as counsel for arbitration claimants ("**Arbitration Counsel**")—began threatening Meta with what are now ~200,000 arbitrations, 14 of which have been filed with the American Arbitration Association (**AAA**). Although their clients' claims are nearly identical to those of MDL PI Plaintiffs, Arbitration Counsel have insisted on staking out their own turf before the AAA—despite the more limited discovery rights there. *See Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1270 (9th Cir. 2017) ("Limitation on discovery is one important component of the simplicity, informality, and expedition of arbitration."). At the same time, they have demanded access to *all* "MDL discovery," expressly so that it "may be used in arbitration notwithstanding its origin in the MDL." *See* Ex. A. The MDL Protective Order ("PO") prohibits such access and use; and neither Arbitration Counsel nor PISD Plaintiffs have identified anything that would override those prohibitions. For these reasons, the Court should enter an order prohibiting these firms from accessing and/or using Meta's MDL discovery—in their capacity as Arbitration *or Abraham*'s counsel.

***First***, the PO permits only a "Receiving Party" to access Meta's protected discovery material, and permits use of that material only "in connection with this Action," with "Action" limited to cases in this MDL. ECF 1209 §§ 2.1, 2.15, 2.21, 7.1. Here, the only "Receiving Parties" of Meta's MDL discovery are Plaintiffs in the PI, SD, and AG cases—the *only* cases for which Judge Gonzalez Rogers has opened MDL proceedings.[3] Nor may PISD Plaintiffs disclose Meta's protected discovery materials to Boies/Labaton/Milberg under the PO's limited exceptions for disclosing another Party's protected materials to others. *See* ECF 1209 §§ 7.2, 7.4. Even if they could, Arbitration Counsel are not seeking access to Meta's MDL discovery so they can use it "in connection with this Action"; they are seeking access for the express purpose of trying to use it in private arbitration (*see* Ex. A). Any such access or use is barred by the PO.

***Second***, the fact that Boies/Labaton/Milberg, in their capacity as Arbitration Counsel, signed the form Participation Agreement attached to the Common Benefit Order (ECF 190) ("**CBO**"), and are counsel for an MDL plaintiff (*Abraham*), does not change this outcome. The CBO is an order endorsing an agreement among MDL plaintiff-side counsel to establish an account into which a portion of any judgment or settlement paid by any MDL Defendant is directed, to compensate counsel for "Common Benefit Work"—defined as "all work done and expenses incurred that inure to the common benefit of Plaintiffs in this MDL." *Id.* §§ II(A), V(A)-(C). The CBO in turn

---

[2] *See* ECF 1229 at 14-18 (first request); 10/25/24 CMC Tr. at 191:3–24, ECF 1290 at 6 (rulings denying request); *Abraham* ECF 34 (second request); 7/18/25 CMC Tr. at 54:4–12, ECF 2124 at 2 (rulings denying second request); ECF 1492 (leadership application); 1/17/25 CMC Tr. at 29:3–14, ECF 1608 at 1-2 (rulings denying application).

[3] *See* ECF 2 at 5-6 (suspending answer deadlines and "all outstanding discovery proceedings"; ordering that "no further discovery shall be initiated" or Rule 11, 12, or 56 motions filed), *accord* ECF 119 at 4; ECF 451 at 2-3, 4-5 (setting MTD "tracks" for PI and SD Master Complaints and AG cases; confirming PI, SD, and AG leadership); ECF 619, ECF 664 (ordering process for PI and SD plaintiffs to adopt Master Complaints); ECF 1023 at 5 (selecting PI and SD bellwethers); *see also* ECF 1290 at 6 ("Efficiency interests of the MDL urge that the Court maintain its current course" and not open separate "class" track); ECF 2124 at 2 (confirming stay of class cases).

purports to provide a mechanism for counsel for any MDL plaintiff (and certain "Participating Counsel") to access "Common Benefit Work Product" (*id.* § IV)—defined as "all *work performed* for the benefit of all claimants, including pre-trial matters, discovery, trial preparation, a potential settlement process, and *all other work* that advances this litigation to conclusion." *Id.* §§ I, IV (emphasis added). Another Party's documents do not constitute "work performed" by Plaintiffs' counsel.[4] Even if "Common Benefit Work Product" could reasonably be interpreted to encompass the entirety of the discovery produced by any Party in the MDL (it cannot), the CBO could not override the (later-entered) PO's prohibitions on (1) disclosing another Party's protected discovery material or (2) using that discovery for purposes *other than* "this Action." Accordingly, to the extent Arbitration Counsel or PISD Plaintiffs contend the CBO permits (or even *requires*) PISD Plaintiffs to disclose Meta's MDL discovery to counsel for any MDL Plaintiff or anyone who signs the Participation Agreement, they are mistaken; such an interpretation would "render a portion of the protective order entirely superfluous." *E.g.*, *Beilstein-Instiut Zur Forderung Der Chemischen Wissenschaften v. MDL Info. Sys., Inc.*, 2006 WL 2578264, at *1 (N.D. Cal. Sept. 6, 2006) (rejecting similar argument).

***Third***, while it may someday be proper—if the Court opens a new track of cases encompassing *Abraham*—for Boies/Labaton/Milberg to seek *portions* of Meta's MDL discovery (to the extent relevant to *Abraham*), that does not mean they may access *all* of that discovery, and certainly not *now*. *See* Fed. R. Civ. P. 26(b)(1) (permitting only discovery "relevant to any party's claim or defense"); 1/17/25 CMC Tr. at 29:22-23 (instructing that Boies Schiller "can litigate [*Abraham*] within the context of your own lawsuit"). Just as the AGs have no right to access Snap's, TikTok's, and YouTube's discovery (because the AGs are not asserting claims against those Defendants like those against Meta), Ms. Abraham may not automatically access all of Meta's discovery (because her claims, which are stayed, are different from those in the PI, SD, and AG cases, among other reasons). Indeed, PISD Plaintiffs previously (properly) refused to give access to Meta's MDL discovery to *Abraham*'s counsel, who conceded that their case "requires additional and different [discovery] than what is currently sought by the other MDL actions." *Abraham* ECF 34 at 1, 5; ECF 34-1 ¶ 4. Even if it were proper for *Abraham*'s counsel to access Meta's MDL discovery now (it is not), it would be wholly improper for them to then *use* that discovery for purposes of private arbitrations, which are not part of "this Action." ECF 1209 § 2.1. For these reasons, if the Court ever permits *Abraham*'s counsel to access Meta's MDL discovery, it should require Boies/Labaton/Milberg to screen attorneys working on *Abraham* from those working on the private arbitrations, and vice versa.

**_Abraham_ Counsel's Position:** There is no ripe dispute between *Abraham* Counsel and Meta. Nor is there a pending "demand" for discovery by "Arbitration Counsel" as Meta represents. In the exchange cited by Meta, *Abraham Counsel* only expressed its "understanding" that it signed the Participation Agreement (and thus became subject to the "MDL tax") with the understanding that

---

[4] The Participation Agreements signed by Arbitration Counsel state that "Co-Lead Counsel will provide access to Participating Counsel the Common Benefit Work Product defined in the [CBO], *including access to the document depository*." ECF 190 Ex. C § I(B)(5) (emphasis added). However, the Participation Agreement is "a private and cooperative agreement between Co-Lead Counsel and plaintiffs' attorneys only. It is not an agreement with any Defendants." ECF 190 § IV & Ex. C I(A)(1); it cannot override the terms of the PO (or the CBO).

it would ultimately get access to and use of the discovery in this MDL (i.e. to get the benefit of that bargain). Meta's request seeks a prophylactic ruling premised on future conduct. In any event, the plain language of the Court's Common Benefit Order ("CBO") entitles *Abraham* Counsel access to the MDL discovery. Meta quotes the very language it functionally ignores, as the CBO defines "Common Benefit Work Product" to include "discovery." ECF 190 § I.

Furthermore, though not part of a ripe dispute, Meta's position renders the very existence of the Participation Agreement, along with key provisions therein, a nullity. The Agreement, adopted in that same Order provides that: "*There is no need for an attorney who already has a case filed in or transferred to this Court to sign the Participation Agreement, because they are automatically subject to this Order with regard to all cases and any amendments.*" ECF 190 § IV (emphasis added). The Agreement thus expressly envisions sharing of discovery with Counsel working on cases outside of the MDL. *See also id.* ("even if not filed in this MDL"); *id* ("Participating Counsel…shall be entitled access to the Common Benefit Work Product for use in all of the cases or claims of their clients, whether the case *or claim* has been filed or not. . . ) (emphasis added). If Meta had a problem with this language, it should not have stipulated to it over three years ago (or moved to relate *Abraham* with the MDL). Meta's argument further rests on the incorrect premise that *Abraham* Counsel are not a "Receiving Party" under a different order: the PO. But the PO's definition of "Receiving Party" and its use restrictions do not govern the threshold right of access to Party Counsel. In any event, the PO defines "Receiving Party" as "a Party that receives Disclosure or Discovery Material from a Producing Party," and "Party" is defined to include "any party to this Action". ECF 1209 §§ 2.15, 2.21. *Abraham* falls within the scope of the PO's definition of "Action", ECF 1209 § 2.1.

Moreover, although *Abraham* may be stayed, class litigants are entitled to develop their case. Meta does not point to a Court order directing *Abraham* counsel to stop its work because no such court order exists. Moreover, there should be no dispute that MDL discovery is relevant for the *Abraham* case. *Compare Abraham* Compl., 24-cv-04723, ECF 1 *with* MDL Master Compl., 22-md-03047, ECF 138. Meta's contrary argument citing Abraham's request for "additional and different" discovery is based on an attempt to seek *more* discovery and does not disclaim the relevance of the MDL's discovery. There is also no indication whatsoever, nor does Meta raise one, that *Abraham* Counsel will violate the clear terms of the Protective Order. Lawyers are often entrusted with following a Protective Order by using and accessing documents for one case but not another. *Fed. Trade Comm'n v. Deere & Co.*, 350 F.R.D. 278, 289 (N.D. Ill. 2025) (citing a "lack of any evidence that any of the attorneys or firms involved in this litigation have failed to comply with a protective order or inadvertently disclosed confidential information in the past."). The undersigned also offered to execute a similar Protective Order once arbitrations begin apace. Ex A. Finally, to the extent there are issues arising in or out of the Arbitrations, they are neither ripe nor under the jurisdiction of the Court. *See* 02/11/2026 CMC Tr. at 120:9-12 (the Court noting a lack of jurisdiction over the arbitrations).[5] Meta's motion for a PO should be denied.

---

[5] No discovery has been requested in the arbitrations. And that discovery may be limited in arbitrations generally speaking is not germane. The scope of discovery there is for the arbitrator to decide.

**PISD Plaintiffs:** Meta's position rests on an implausibly narrow reading of the CBO. *Abraham* counsel are subject to the CBO because they have a case in this MDL—a point Meta concedes. *See* ECF No. 2717 at 8 ("as a firm with claims already pending in this MDL, [*Abraham*] Counsel are required to pay into the Common Benefit Fund"). Meta now argues that although *Abraham* counsel will pay into the Common Benefit Fund, they are not entitled to the corresponding discovery and work product. That one-sided interpretation is irreconcilable with the purpose of the CBO, which is to ensure that all plaintiffs fairly share both the costs of common benefit work and the benefits derived from it. *See* CBO at 1 (establishing a framework for the "fair and equitable sharing . . . of the burden of services performed and expenses incurred" for the common benefit of all plaintiffs); *see also In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640, 648 (E.D. La. 2010) (explaining that the common benefit doctrine compensates counsel for work that benefits all plaintiffs—such as coordinating and conducting discovery). No rational attorney would agree to a substantial assessment without access to the discovery it funds. Consistent with that structure, the CBO provides that "Participating Counsel . . . shall be entitled access to the Common Benefit Work Product." *Id.* at 21. Meta's effort to avoid that result by redefining "Common Benefit Work Product" fails. The CBO defines it broadly to include "all work performed for the benefit of all claimants, including . . . discovery . . . ." *Id.* at 2. That definition necessarily encompasses the coordinated acquisition, management, and use of party discovery—central work of MDL leadership. Meta's contrary view would sever "work product" from the discovery it is built upon, rendering the CBO's access provision largely meaningless. The PO does not change this. It governs confidentiality and use, not whether counsel who are already bound by the PO may access common benefit materials under the CBO. What the PO does not permit is denying access to counsel in this MDL who are entitled by court order to Common Benefit Work Product.

**Meta's Further Position:** Boies/Labaton/Milberg refused to provide an opening position for this brief or to "appear" as Arbitration Counsel—even though Judge Gonzalez Rogers "**ORDER[ED]** *counsel for claimants asserting mass arbitration demands* and [Meta] to submit their disputes to" Your Honor.  ECF 2965 at 2-3 (emphasis added).  Notably, these firms signed the Parties' last "Joint Statement" as "Attorneys for Abraham putative class *and Arbitration Counsel*"; asserted "*Arbitration Counsel*'s Position" that Meta's objection is "inconsistent with the CBO's clear access-and-use provisions"; and appeared at the April 14-15 CMCs to raise the dispute with the Court.  ECF 2926 at 23, 8-9 (emphasis added); ECF 2945-1, ECF 2955-2, 4/15/26 CMC Tr. at 115:6-116:7.  Their *only* argument was that "any motion Meta may file should be decided by [Judge Gonzalez Rogers]," quoting *Meta's* prior position that the Court "do[es] have jurisdiction over Boies Schiller even for purposes of claims that they've brought in arbitration, insofar as the common benefit [order requires them to pay into that fund]."  ECF 2926 at 8-9.[6]  They then voluntarily executed the Participation Agreement, establishing a "working relationship with Leadership for Plaintiffs for the mutual benefit of their clients"; granting Co-Lead Counsel a security interest in any arbitration recovery they may obtain; and agreeing to an "assessment" on any such recovery—subject to MDL Court approval—to help pay for "all work done and expenses incurred that inure to the common benefit *of Plaintiffs in this MDL*."  ECF 190 §§ IV, II(A) & Ex.

---

[6] Prior to that, these firms had signed two other "Joint" statements (ECF 2838 at 26; ECF 2782 at 6); appeared at two other CMCs (2/11/26 CMC Tr. at 2; 3/18/26 CMC Tr. at 4); and filed two letters (ECF 2723; ECF 2911) as "Arbitration Counsel," arguing arbitration-related issues.

C at 1, § II (emphasis added).[7]  Nor have they disclaimed their demand to access all of Meta's MDL discovery for use in arbitration.  *See* Ex. A.  Arbitration Counsel have thus clearly submitted to the jurisdiction of the MDL Court on behalf of their arbitration clients and waived any jurisdictional objection they may now seek to assert.  *Cf. Christensen v. Dewor Dev'ts*, 33 Cal.3d 778, 784 (1983) ("The courtroom may not be used as a convenient vestibule to the arbitration hall so as to allow a party to create his own unique structure combining litigation and arbitration."); *TDBBS LLC v. Ethical Prods. Inc.*, 2019 WL 1242658, at *3 (D. Ariz. Mar. 18, 2019) (defendant waived jurisdictional defense through multiple court appearances).  And, having simply not responded to Meta's motion on behalf of their arbitration clients, they have conceded its merit. *See Lansdown v. Bayview Loan Servicing, LLC*, 2023 WL 2934932, at *4 (N.D. Cal. Apr. 12, 2023) ("failure to respond in an opposition to an argument constitutes waiver or abandonment, and thus concedes the argument").[8]  For these reasons, the Court may easily grant Meta's motion as to Boies/Labaton/Milberg in their capacity as Arbitration Counsel and, for the reasons stated above, also in their capacity as *Abraham*'s counsel.

---

[7] During Meta's H(2) conference with Boies—which they requested to discuss an arbitration tolling agreement (and thus clearly were attending as Arbitration Counsel)—Boies claimed they had signed the Participation Agreement based on a "perception" that the Court wanted them to do so.  When asked what that perception was based on, Boies responded: "I don't know."

[8] By refusing to exchange an opening position (depriving Meta of the ability to respond to their arguments), they have also violated this Court's requirement that parties "plan for and cooperate in preparing the joint letter so that each side has adequate time to address the arguments." Discovery Standing Order § H(3).  If helpful to the Court, Meta is prepared to submit further briefing and/or a Declaration attesting to Boies's statements during the Parties' H(2) conference.