James P. Rouhandeh, *pro hac vice*
Antonio J. Perez-Marques, *pro hac vice*
Caroline Stern, *pro hac vice*
Corey M. Meyer, *pro hac vice*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:    rouhandeh@davispolk.com
          antonio.perez@davispolk.com
          caroline.stern@davispolk.com
          corey.meyer@davispolk.com

*Attorneys for Defendants Meta Platforms, Inc. and Instagram, LLC*

*Additional counsel listed on signature pages*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*People of the State of California, et al. v. Meta Platforms, Inc., et al.* | MDL No. 3047<br><br>Case Nos. 4:22-md-03047-YGR-PHK<br>4:23-cv-05448-YGR<br><br>**META'S REPLY IN SUPPORT OF MOTION TO EXCLUDE AND/OR STRIKE EXPERT TESTIMONY OF CARL SABA**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang<br><br>Date: To be determined<br>Time: To be determined<br>Place: Courtroom 1, 4th Floor |

**[PUBLIC REDACTED VERSION]**

## TABLE OF CONTENTS

PAGE

I.      Saba's Calculation of Bad Experience Violations Should Be Excluded (Op. 5).....................1

     A.      Saba's Method Imposes Liability for Immunized Publishing Activities....................1

     B.      Saba's Method Is Impermissible Under State Consumer Protection Laws ................1

     C.      Saba's Method of Counting Bad Experience Violations Is Unreliable ......................2

II.     Saba's Calculation of Time Spent Violations Should Be Excluded (Op. 2)...........................3

III.    Saba's Disgorgement Opinion Should Be Excluded (Ops. 3-4)...............................................4

IV.     Saba's U13 Usage Opinions Should Be Excluded (Ops. 8-9) ..................................................4

V.      Portions of Saba's Reports Should Be Excluded or, in the Alternative, Struck ......................5

CONCLUSION ............................................................................................................................5

As established in Meta's opening brief ("Mot.") (ECF 2845), Carl Saba's opinions are incompatible with the law because they conflict with Section 230, state laws on violation-counting, and federal and state laws of disgorgement. His methodologies also rest on the *ipse dixit* of counsel and fail to establish that the BEEF and Thorn Surveys may reliably be extrapolated beyond their results. The AGs' opposition ("Opp.") (ECF 2913), in turn, confuses the law, misstates Saba's opinions and testimony, and fails to respond to Meta's arguments.

## I.     Saba's Calculation of Bad Experience Violations Should Be Excluded (Op. 5)

### A.     Saba's Method Imposes Liability for Immunized Publishing Activities

As established, Saba's Bad Experience Violations opinion seeks to hold Meta liable as a publisher of third-party content in violation of Section 230. Mot. at 2. Contrary to the AGs' assertion, Opp. at 8, this violation-counting opinion is a theory of liability implicating Section 230, as the plain meaning of a "violation" is an "infraction or breach of the law." *Violation*, Black's Law Dictionary (12th ed. 2024); *see, e.g.*, *Oman v. Delta Air Lines, Inc.*, 610 F. Supp. 3d 1257, 1273 (N.D. Cal. 2022) (addressing "Delta's liability for its violations" of state law). The AGs' invocation of this Court's previous Rule 702 order (ECF 2857), Opp. at 9, fails, because, unlike the experts in that order, *all* of the Bad Experience Violations are caused by third parties, which the AGs do not dispute.

### B.     Saba's Method Is Impermissible Under State Consumer Protection Laws

Meta also showed that Saba's method is "incorrect as a matter of law." Mot. at 2-4. "[L]egal arguments" are neither misplaced in 702 motions nor "fit" arguments. *See* Opp. at 7; *see Lucas v. MGM Resorts Int'l*, 724 F. Supp. 3d 1142, 1150 (D. Nev. 2024) (excluding opinion "incorrect as a matter of law and thus unreliable"). And though courts have discretion in counting violations, Opp. at 7, the determination cannot be "arbitrary, unreasonable, unfair or unsupported by legal principles." *See Am. Nat'l Univ. of Ky. v. Commonwealth*, 2019 WL 2479608, at *6 (Ky. Ct. App. June 14, 2019).

As Meta explained in its Motion, the four lead states only permit counting violations "per act," i.e., for each wrongful act or transaction, and/or "per consumer" exposed or injured. Mot. at 3. Having conceded that Saba does not count violations "per act," the AGs incorrectly assert that "proof of exposure or injury" is not required when counting violations "per consumer." Opp. at 7. None of the AGs' cases support that proposition. *May Dep't Stores Co. v. State ex rel. Woodard* expressly

held that while proof of injury is not required for the "per act" method, the "per consumer" method "almost necessarily involves an actual injury." 863 P.2d 967, 974 (Colo. 1993). *Meshinksy v. Nichols Yacht Sales, Inc.* did not involve civil penalties at all. 541 A.2d 1063, 1067 (N.J. 1988). And the remaining two cases all used the "per act" method. *See People v. Dollar Rent-A-Car Systems, Inc.*, 211 Cal. App. 3d 119, 132 (Cal. Ct. App. 1989); *Am. Nat'l Univ. of Ky.*, 2019 WL 2479608 at *7-8.

Nor can one consumer incur multiple violations under the "per consumer" method. Opp. at 7-8.[1] The AGs rely on *People v. Ashford University, LLC*, but that case merely observed in dicta that courts may use the "per act" method, despite some litigants' misinterpretation of *Jayhill* to require "per consumer" counting in every case. 319 Cal. Rptr. 3d 132, 160-61 (Cal. Ct. App. 2024).

**C.    Saba's Method of Counting Bad Experience Violations Is Unreliable**

As Meta established, Saba's opinion is also unreliable because there is too large an "analytical gap" between the BEEF data and his opinion. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

*First*, Saba conducted *no statistical or empirical analysis* to validate counsel's assumption that the 11-day BEEF Survey could be extrapolated over six years. Mot. at 4-5. The AGs argue that this is a weight issue, relying on *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036 (9th Cir. 2014) and *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960 (9th Cir. 2013). Opp. at 1, 2, 4. But neither case holds that issues of extrapolation categorically go to weight, and neither changes the rule that weight issues arise "only if a court first finds . . . that an expert has a sufficient basis to support an opinion." *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049 (9th Cir. 2025).

Instead, the AGs argue that Saba's "reviewed" data showing ███████████████ ████████████, Opp. at 3, but Saba merely ███████████████████████ █████████████████████████████████████████, Mot. Ex. 7 (Reply Rep.) ¶ 134, Ex. 19 (Dep.) 296:1-309:12. Saba's "reason[ing]" that he ████████████ ████████████████████████████████████████████, Opp. at 3, is circular because it requires assuming a rate of negative experiences over time, which is precisely the assumption Saba was analyzing. Finally, Saba ignored over 20 tools launched after the

---

[1] The AGs' assertion that Meta overstates the number of violations per teen by using the low end of Saba's teen count, Opp. at 8 n.5, rings hollow. Even at the high end, Saba counts, per teen, ██████ ████ Bad Experiences Violations and ████████ Time Spent Violations. *See* Mot. at 4 n.6, 6 n.7.

BEEF Survey that were intended to decrease negative experiences and evidence of their effectiveness. Mot. at 5. The AGs assert that Meta failed "to establish the tools' effectiveness," Opp. at 3 n.3, but it is *the AGs'* burden to show the admissibility of Saba's opinions, Fed. R. Civ. P. 702.

*Second*, Saba failed to show that the BEEF results are representative of MDL state teens, as only ▮ of BEEF respondents were from the U.S. and approximately half were in a control group that ▮▮▮. Mot. at 5-6. The AGs have no response to the second issue, and assert that the first is "irrelevant" because Saba used results that "appear to be correlated" with U.S.-only respondents. Opp. at 2 n.2. That is false: Saba admitted, ▮▮▮ ▮▮▮ Mot. Ex. 5 (Dep.) 411:18-412:15.[2] The AGs' other arguments were already addressed—i.e., the inquiry is not whether BEEF itself is reliable, Opp. at 2-3, but whether Saba reliably used the survey for another purpose, Mot. at 5. He did not.

*Third*, the BEEF Survey likely had biases that make Saba's use of it unreliable. Mot. at 6. The AGs' only response is that such issues go to weight. Opp. at 4. But their sole case, *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, held that survey design goes to weight when the expert himself "conducted [the survey] according to accepted principles," because any "criticisms" can be "attack[ed]" through "[v]igorous cross-examination." 618 F.3d 1025 (9th Cir. 2010). Here, Saba, who is not a survey expert, indiscriminately adopted the BEEF results at the instruction of counsel. *See In re ConAgra Foods, Inc.*, 302 F.R.D. 537, at 555-57 (C.D. Cal. 2014).

## II.     Saba's Calculation of Time Spent Violations Should Be Excluded (Op. 2)

Meta demonstrated that Saba's Time Spent Violations method is incorrect as a matter of law and arbitrary. *First*, for similar reasons addressed *supra* Part I, this opinion does not comport with applicable law. Mot at 6-7. *Second*, Saba's time thresholds are arbitrary and unreliable, *see* Fed. R. Evid. 702(c), as they were dictated entirely by counsel, Mot. at 7. The AGs' reliance on other evidence Saba did not consider, *see* Opp. at 4; Opp. Exs. 7-8, is irrelevant to Meta's critique that

---

[2] The AGs argue that Isaacson did not properly disclose his testimony that only ▮ of BEEF respondents were from the U.S. Opp. at 2, n.2. Not so. Isaacson merely elaborated on his opinion that ▮▮▮. *See* Mot. Ex. 14 (Isaacson Rep.) ¶¶ 63-66. ▮▮▮ the percentage of U.S. respondents, Reply Rep. ¶ 73, which Isaacson did using data Saba himself had access to. Experts may "testify at their depositions" on "critiques of their opinions." *Cave Consulting Grp., Inc. v. OptumInsight, Inc.*, 2018 WL 1938555, at *4 (N.D. Cal. Apr. 25, 2018).

3

Saba did not provide his own "methodological justification" for using those thresholds. *Persian Gulf Inc. v. BP W. Coast Prods. LLC*, 632 F. Supp. 3d 1108, 1166-68 (S.D. Cal. 2022).

**III.    Saba's Disgorgement Opinion Should Be Excluded (Ops. 3-4)**

Meta demonstrated that Saba's Disgorgement Opinion should be excluded because it is based on the inadmissible Time Spent Violations, which the AGs do not contest, and for two more reasons. Mot. at 7. *First*, the AGs do not dispute that ████████████████████████████████████████ ████████████████████████████████████████████████. Mot. at 7; Opp. at 9. That the Court, not Saba, decides any final award, Opp. at 9, is unresponsive to Meta's argument that Saba used counsel's inexplicable methodology for calculating disgorgement while refusing to opine on "how [damages] should be calculated," *Lucas*, 724 F. Supp. 3d at 1151.

*Second*, the opinion is incorrect as a matter of law because there is no relationship between the disgorgement figure and the alleged misconduct. Mot. at 7-8. The "reasonable approximation" standard the AGs cite, Opp. at 9, refers to the "reasonable approximation of profits *causally connected to* [a] violation," *S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1096 (9th Cir. 2010) (emphasis added); *see also* ECF 2892 Part III.C. Here, however, Saba has *no basis* to conclude that his figures are "causally connected" to any wrongdoing, Mot. at 7-8.

*Third*, Saba attempts to advance a nonrestitutionary disgorgement claim, which is incorrect as a matter of law. Mot. at 7-8. Neither federal nor state law permits such a claim. *See* ECF 2892 Parts III.A-B. The New Jersey statute the AGs cite does not permit "broad equitable relief," Opp. at 10, as it only authorizes what "may be necessary" to "*restore* to any person in interest any moneys or property," N.J. Stat. Ann. § 56:8-8 (emphasis added)—in other words, restitutionary disgorgement.

**IV.    Saba's U13 Usage Opinions Should Be Excluded (Ops. 8-9)**

Meta also demonstrated that Saba's U13 Usage Opinions should be excluded. *First*, Saba fails to justify his use of the Thorn Surveys. Mot. at 9. The AGs' reference to a single employee praising Thorn, Opp. at 5, is irrelevant to whether Saba can use the surveys for an unintended purpose. Mot. at 9. The AGs also argue that ██████████████████████████████████ ███████, Opp. at 5, ██████████████████████████████████████████████ ███████████████████████████. *See* Mot. Ex. 1 (Rep.) ¶¶ 240-45, 251; Ex. 19 (Dep.) 236:6-12.

*Second*, Meta pointed to several biases in the Thorn Surveys that Saba ignored, e.g., the surveys were limited to U13s who can and are permitted to access the internet, which is unrepresentative of *all* U13s, the population Saba bases his calculations on.  Mot. at 9.  The AGs assert this bias is "unsupported," Opp. at 6, but Saba conceded ██████████, Mot. Ex. 5 (Dep.) 250:2-24.  Saba also did not consider that the surveys' question about ██████████████████ ██████████████████████████████████.  Mot. at 9.  This is far from a "tortured" interpretation, Opp. at 6—Saba conceded that ████████████████████████, Mot. Ex. 5 (Dep.) 256:18-257:23, and another AG expert, Adam Alter, ████████████████, *see* Ex. 20 (Alter Rep.) ¶ 510.  The AGs' assertion that these biases go to weight, Opp. at 5-6, is only true when an expert offers a survey they conducted themselves, not where, as here, a witness with no survey expertise uncritically adopts a survey's results, *see* Mot. at 9; *see also supra* Part I.C.

**V.    Portions of Saba's Reports Should Be Excluded or, in the Alternative, Struck**

*First*, Meta demonstrated that Saba's analysis of the ████████████████████████ ████ based solely on a temporal relationship and his parroting of others' testimony is improper, Mot. at 9-10, which the AGs do not dispute, *see* Opp. at 6.  Instead, the AGs assert that Saba is not "opin[ing] on the causal relationship between Meta's purported safety tools and platform usage or safety."  Opp. at 6.  But that is exactly what he is doing.  *See, e.g.*, Rep. ¶ 81 ███████████ ████████████████████████); Opp. at 3 (Saba "found" the tools were "ineffective").

*Second*, Section V.3 of Saba's report is impermissible factual narrative and state of mind opinion.  Mot. at 10.  Contrary to the AGs' assertion, this section does not "provide[] context" for Saba's opinions, Opp. at 7, because Meta's supposed "focus" on teens, Rep. ¶ 35, is not "necessary" to understand those calculations; it is, rather, no "more than summariz[ing Meta's] documents" to opine on intent, *Brown v. Google, LLC*, 2022 WL 17961497, at *12 (N.D. Cal. Dec. 12, 2022).

*Third*, contrary to the AGs' assertion, Saba tries to "instruct the [factfinder] on the law" and "how to apply it," Opp. at 7, because he █████████████████████████ ████████████████████████████, *see, e.g.*, Reply Rep. ¶ 93.

**CONCLUSION**

Meta respectfully requests that the Court exclude and/or strike Saba's opinions.

Dated:  April 24, 2026

Respectfully submitted,

DAVIS POLK & WARDWELL LLP

*/s/ Antonio J. Perez-Marques*

James P. Rouhandeh, *pro hac vice*
Antonio J. Perez-Marques, *pro hac vice*
Caroline Stern, *pro hac vice*
Corey M. Meyer, *pro hac vice*
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
rouhandeh@davispolk.com
antonio.perez@davispolk.com
caroline.stern@davispolk.com
corey.meyer@davispolk.com

COVINGTON & BURLING LLP

Ashley M. Simonsen, SBN 275203
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-2749
asimonsen@cov.com

Paul W. Schmidt, *pro hac vice*
Phyllis A. Jones, *pro hac vice*
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
pschmidt@cov.com
pajones@cov.com

*Attorneys for Defendants Meta Platforms, Inc.
and Instagram, LLC.*