James P. Rouhandeh, *pro hac vice*
Antonio J. Perez-Marques, *pro hac vice*
Caroline Stern, *pro hac vice*
Kathryn S. Benedict, *pro hac vice*
Corey M. Meyer, *pro hac vice*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:    rouhandeh@davispolk.com
         antonio.perez@davispolk.com
         caroline.stern@davispolk.com
         kathryn.benedict@davispolk.com
         corey.meyer@davispolk.com

*Attorneys for Defendants Meta Platforms, Inc. and
Instagram, LLC*

## UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*All Actions* | MDL No. 3047<br><br>Case Nos. 4:22-md-03047-YGR-PHK<br>4:23-cv-05448-YGR<br><br>**DECLARATION OF MAX EULENSTEIN IN SUPPORT OF META'S OMNIBUS MOTION TO SEAL (EXHIBITS TO THE PARTIES' SUMMARY JUDGMENT BRIEFING)**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

## DECLARATION OF MAX EULENSTEIN

I, Max Eulenstein, declare and state as follows:

1.      I am Vice President and Head of Product of Instagram at Meta Platforms, Inc. ("Meta").  I joined Meta in 2011 and was previously Director of Product Management.  I submit this Declaration in support of Meta's Omnibus Motion to Seal Exhibits to the Parties' Summary Judgment Briefing.  This Declaration is based on my personal knowledge and experience at Meta and in my career.  If called upon to do so, I could and would competently testify as follows.

2.      I have reviewed the excerpts listed below that Meta seeks to seal.  These excerpts include confidential information that could enable online predators and other bad actors to avoid detection and/or enforcement on Meta's services for the reasons explained below:

| Document | Portion of Document at Issue |
|---|---|
| Meta's Opp. to State AGs' Partial MSJ Exhibit 25 – Meta's Third Supplemental Response to Plaintiffs' Second ROGs - excerpt | PDF pages 9, text following "Code Path to Final-Stage-Ranking Value Model"; all text in chart under headings "Model ID", "Team", "Input Name", and "Feature ID."<br><br>PDF pages 10-12, all text in chart under headings "Model ID", "Team", "Input Name", and "Feature ID". |
| State AGs' Partial MSJ Exhibit 21 - Meta Defendants' Third Supplemental Responses and Objections to Plaintiffs' Second Interrogatory – excerpt | PDF pages 3-4, all text in chart under headings "Model ID", "Team", "Input Name", and "Feature ID". |
| State AGs' Opposition to Meta's MSJ Exhibit 39 - META3047MDL-050-00343521 / slide deck titled "Company Milestones" | META3047MDL-050-00343524, content of "WhatsApp" row of chart of the columns titled "2023", "2024", "2025", "2026"<br><br>META3047MDL-050-00343524, content of all 6 rows of the columns titled "2023", "2024", "2025", "2026", other than rows for "WhatsApp" and "Instagram" |

| State AGs' Opposition to Meta's MSJ Exhibit 43 - Trial Report of Arvind Narayanan - excerpt | PDF page 6-8, content of paragraphs 74 through 79; all content in footnote 16 (other than agreed redactions on page 7) |
|---|---|
| | PDF page 7, formula at the top of Figure 3 and the numbers under the "weight" columns in Figure 3; |
| | PDF page 9, last sentence of paragraph 81; first two sentences of paragraph 82, first word of paragraph 83; content in footnote 24 after "which states in part..."; quotations in footnotes |
| | PDF page 11, text of paragraph 89 after "closely tied to revenue. . . ."; text of paragraph 90 between "single post and . . ." and "is too diffuse" |
| | PDF page 12-13, text of paragraphs 91 through 93; text of paragraph 94 between "Meta's efforts at ..." and "subordinated its ..." (other than agreed redactions on page 13) |
| | PDF page 13, text of paragraph 94 between "Meta's efforts at . . ." and "subordinated its . . ."; Portion of sentence from paragraph 93 on between "…(GVM) process…" and "…,which is then fed into an algorithm..." |
| | PDF page 16, statistics relating to Instagram usage and related commentary in paragraph 99 |
| | PDF page 16-17, text of paragraphs 102 through 104; text of paragraph 105 before "This does not . . ."; text of paragraph 105 after "regardless of context. . . ." |
| | PDF page 18, text of paragraph 106 |
| | PDF page 22, text of paragraph 119, content in footnote 66 after citation |
| | PDF page 24, text in paragraph 127, first sentence in paragraph 129 |

| | |
|---|---|
| | PDF pages 26-27, text in paragraph 135 |
| State AGs' Reply Exhibit 8 - META3047MDL-287-00005522 (excerpts) / Internal document titled tab from "Final Org Pillar Review (Source" | META3047MDL-287-00005522, content of columns D, G, H, I.<br><br>META3047MDL-287-00005523, content of columns D, H, I, AK and AL. |
| State AGs' Partial MSJ Exhibit 30 - META3047MDL-098-00016127 / Meta internal document titled "Headcount_Detail_crosstab-12" | All content (other than headers) of columns B, C, G, H, I, and J for all rows.<br><br>The employee names in Column F, for all rows.<br><br>Numerical cost center code in column E, for all rows. |
| State AGs' Partial MSJ Exhibit 31 - META3047MDL-098-00010191 / Meta internal document titled "6.30.16 FTE HC" | All content (other than headers) of columns F, G, H, and N for all rows.<br><br>The employee names in Column E, for all rows.<br><br>Numerical cost center codes in column D, for all rows. |
| State AGs' Partial MSJ Exhibit 32 - META3047MDL-072-01230259 / Meta internal document titled "Headcount_Detail_data (8)" | All content (other than headers) of columns E, H, I, and K, for all rows.<br><br>The employee names in Column D, for all rows.<br><br>Numerical cost center codes in column C, for all rows. |
| State AGs' Partial MSJ Exhibit 33 - META3047MDL-098-00035791 / Meta internal document titled "HC Report" | For PDF pages 1-100:<br><br>All content (other than headers) of column A, for all rows.<br><br>Numerical cost center codes in column C, for all rows.<br><br><br>For PDF pages 101-104: |

| | All content (other than headers) of columns B and C, for all rows.<br><br>All content (other than headers) of columns A, D and E. for all rows other than lines 4 and 24. |
|---|---|

3.      Meta does not disclose this information publicly in the ordinary course of business. It is confidential, proprietary, and valuable.  Disclosure of this information would provide Meta's competitors with insights about Meta's business that they would not otherwise have.

4.      The excerpted portions of the Meta's Opposition to State AGs' Partial MSJ Exhibit 25, and State AGs' Partial MSJ Exhibit 21 contain details about the design of Meta's ranking and recommendation algorithms and systems on its platforms, including which signals are used for intended outcomes and internal descriptions of source code developed for certain models and inputs for Meta's algorithms and systems.   Competitors can use this information to target these demographics and to improve, refine, and create ranking and recommendation algorithms that they otherwise would not be able to develop.  Competitors can also use this information to better understand, emulate, or even replicate Meta's applications, which would harm Meta's efforts to deliver services to its users that are higher quality and more innovative than those offered by competitors or potential competitors.

5.      The excerpted portions of State AGs' Opposition to Meta's MSJ Exhibit 39 contain granular usage data and related revenue for 2023 through 2026 milestones for families of apps that competitors would not otherwise be able to estimate.  These excerpts also contain information about which of Meta's users drive activity on the platforms—specifically, which group of users drives a significant portion of that activity.  Competitors can use this information to understand how value is created on Meta's platforms and to emulate the behavior leading to

that value. They can also use it to position themselves in the market and thereby strategically undercut Meta. For example, competitors could attempt to entice users driving value on Meta's platforms to join their platforms and/or leave Meta's platforms, which would undercut Meta.

6. The excerpted portions of State AGs' Opposition to Meta's MSJ Exhibit 43 contain details about the design of Meta's ranking and recommendation algorithms and systems on its platforms. These details include descriptions of signals and how they are used for intended outcomes, and plain-language descriptions of source code developed for certain models and inputs. These excerpts also contain detailed descriptions of the classifiers that Meta uses to review and categorize content on its applications and step-by-step descriptions of how the classifiers operate. Competitors can use this information to develop products and business strategies they otherwise would not be able to develop and to enhance their own platform offerings to compete with Meta's services and to attract Meta's users.

7. The excerpted portions of State AGs' Reply Exhibit 8 contain specific details about Meta's sharing and use of data across Instagram and Facebook, including descriptions of features and improvements, how data informs such features and improvements, the business impact of data sharing, the retention periods for that data, and the intended business result of sharing such data. Competitors can use this information to generate their own counter strategies to undercut Meta's goals and to use Meta's improvement plans and future investments to anticipate Meta's competitive moves and speed up or modify their own research and platform development efforts to stay ahead of Meta.

8. The excerpted portions of State AGs' Partial MSJ Exhibits 30, 31, 32, and 33 contain detailed information from which Competitors could infer how Meta has strategically invested in certain areas of product development and improvement, including how Meta has

prioritized these objectives, specific distribution of headcount within teams and projects, and division of roles throughout groups.  Competitors can use this information to generate their own counterstrategies to undercut Meta's goals and use Meta's improvement plans and future investments to anticipate Meta's competitive moves and speed up or modify their own research and platform development efforts to stay ahead of Meta.

9. Meta expends significant data science and engineering resources to develop its applications. Disclosure of this information to Meta's competitors would give them an unfair competitive advantage, including because they would receive the benefit of the information without having to expend the significant resources Meta devoted to developing the information.

10. Information on Meta's users and their usage activity would provide competitors with another competitive advantage they otherwise would not have.  Competitors could use this information to test the accuracy of their own internal estimates of usage of Meta's platforms, which they otherwise would not be able to do.  In other words, if a competitor estimated (but did not know) which users drive value on Meta's platforms, possessing this information would provide them with information to either confirm that their data is accurate or confirm that it is not accurate, requiring them to adjust.  And, with the precise data calculations, they can predict Meta's future development strategies and ultimately try to incorporate Meta's plans into their own plans and undercut the features of Meta's services that set it apart.  In either circumstance, competitors would not be able to do that without this information, just as Meta cannot without those competitors' information.

11. Meta keeps the above information confidential and takes steps to maintain its confidentiality, including not sharing it publicly and limiting who can access it.

12.    Meta derives value from this information's confidentiality. As explained above, if the information were publicly disclosed, competitors could make use of it to undercut Meta.

13.    Meta competes with many companies, including companies that facilitate the ability of users to share, communicate, and discover content and information online, as well as from potential new entrants. Meta faces intense competition in every aspect of its business. As a result, Meta takes great care to protect information related to user statistics, performance metrics, and business strategy. For the reasons described, this information could give Meta's competitors an unfair advantage and thereby cause Meta competitive harm.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on: May 1, 2026.

By: _____
Signed by:
Max Eulenstein
AD65CFBDC12D4E8...
Max Eulenstein

DECL. OF MAX EULENSTEIN IN SUPPORT OF META'S OMNIBUS MOT. TO SEAL (EXS. TO SUMM. J. BRIEFING)
Case Nos. 4:22-MD-03047-YGR-PHK, 4:23-CV-05448-YGR