UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case Nos.: 4:22-md-03047-YGR-PHK |
| | **JOINT LETTER BRIEF RE PLAINTIFFS' MOTION TO COMPEL METADATA PRODUCTION** |
| This Filing Relates to: | Judge: Hon. Yvonne Gonzalez Rogers Magistrate Judge: Hon. Peter H. Kang |
| *All Actions* | |

Dear Judge Kang:

The MDL State Attorneys General ("State AGs") and Defendants Meta Platforms, Inc. and Instagram, LLC (together, "Meta") respectfully submit this joint letter brief regarding the State AGs' motion to compel metadata production. The MDL Personal Injury and School District Plaintiffs ("PISD Plaintiffs" and, together with the State AGs, "Plaintiffs") join the State AGs' motion.

Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, Meta and the State AGs attest that they repeatedly met and conferred by teleconference, email, and correspondence before filing this brief, including holding a final conference of lead trial counsel on May 1, 2026, which counsel for PISD Plaintiffs also attended. Because all lead counsel were not located in the geographic region of the Northern District of California or otherwise located within 100 miles of each other, they met via teleconference. Lead trial counsel have concluded that no agreement or negotiated resolution can be reached.

Dated: May 7, 2026                          Respectfully submitted,

**COVINGTON & BURLING LLP**

*/s/ Ashley M. Simonsen*
Ashley M. Simonsen (State Bar. No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: + 1 (424) 332-4800
Email: asimonsen@cov.com

1

Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: + 1 (212) 841-1262
Facsimile: + 1 (202) 662-6291
Email: pschmidt@cov.com

Timony C. Hester, *pro hac vice*
Christian J. Pistilli, *pro hac vice*
Covington & Burling LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: +1 (202) 662-6000
Facsimile: +1 (202) 662-6291
Email: thester@cov.com
        cpistilli@cov.com

*Attorneys for Defendants Meta Platforms, Inc.
and Instagram, LLC*

**ROB BONTA**
Attorney General
State of California

*/s/ Megan O'Neill*
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Emily Kalanithi (SBN 256972)
Supervising Deputy Attorneys General
Nayha Arora (CA SBN 350467)
David Beglin (CA SBN 356401)
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer (CA SBN 336428)
Brendan Ruddy (CA SBN 297896)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400

2

Fax: (415) 703-5480
Joshua.OlszewskiJubelirer@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*


**PHILIP J. WEISER**
Attorney General
State of Colorado
*/s/ Jason Slothouber*
Jason Slothouber, CO Reg. No. 43496, *pro hac vice*
Krista Batchelder, CO Reg. No. 45066, *pro hac vice*
Deputy Solicitor General
Shannon Stevenson, CO Reg. No. 35542, *pro hac vice*
Solicitor General
Elizabeth Orem, CO Reg. No. 58309, *pro hac vice*
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6651
krista.batchelder@coag.gov
Shannon.stevenson@coag.gov
Elizabeth.orem@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel. Philip J. Weiser, Attorney General*


**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

*/s/ Philip Heleringer*
J. Christian Lewis (KY Bar No. 87109),
*Pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*Pro hac vice*
Zachary Richards (KY Bar No. 99209),
*Pro hac vice*
Daniel I. Keiser (KY Bar No. 100264),

3

*Pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*Pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV
ZACH.RICHARDS@KY.GOV
DANIEL.KEISER@KY.GOV
MATTHEW.COCANOUGHER@KY.GOV
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

**JENNIFER DAVENPORT**
Attorney General
State of New Jersey

*/s/ Kashif T. Chand*
Kashif T. Chand (NJ Bar No. 016752008),
*Pro hac vice*
Assistant Attorney General
Thomas Huynh (NJ Bar No. 200942017),
*Pro hac vice*
Section Chief, Deputy Attorney General
Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*Pro hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiffs Jennifer Davenport,
Attorney General for the State of New Jersey,*

4

*and Jeremy E. Hollander, Acting Director of the
New Jersey Division of Consumer Affairs*

**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**

By:  */s/ Lexi J. Hazam*
LEXI J. HAZAM
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

*Co-Lead Counsel for Personal Injury and School
District Plaintiffs*

**Joint Plaintiffs' Position:** Meta refuses to provide easily accessible and foundational metadata about who could edit and view crucial Google Drive documents – information which it appears Meta has already downloaded but has simply declined to turn over. The documents stored on Google Drive are some of the most important documents in the case: relevant to establish internal knowledge of the risks of Meta's platforms, and the reasoning for various business and research decisions. Plaintiffs intend to use the documents at issue in their exhibit lists and at trial. Meta refused to produce requested metadata for editors ("Collaborator" metadata field) and viewers ("Viewer" metadata field) which are key evidence of foundation, personal knowledge, and the credibility of witnesses' recollection. Moreover, Meta did not identify a single human custodian for any of these documents, instead listing only "Meta Platforms." Meta produced approximately 260,000 documents with no identified human custodian or Collaborators/Viewers, representing a bit less than 10% of the total discovery production in this case.

Meta's business practice is for employees to conduct nearly all substantive document work (i.e., most things except email and Workplace chats) in documents shared via Google Drive. This Court has familiarity with examples of the type of documents stored in Google Drive from the recent crime-fraud litigation. Examples include business planning PowerPoints like "Leading on IG Youth Protections (ECF 2881-4)," research results like those for the Bad Experiences and Encounters Framework (BEEF) Survey (ECF 2506-5), and research design plans like those for the MYST study (produced by Meta in response to ECF 2629).

Under the ESI Protocol Meta was required to produce "for each document" "[e]ach of the metadata and coding fields set forth below that can be extracted." (ECF 690:21). All produced documents thus required a "[l]ist of all custodians associated," even if that requires Meta to capture, collect, or "manually populate" the "ALLCUSTODIANS" field. (*Id*. at 21-22). Meta has, over Plaintiffs' repeated objections, declared the documents at issue to be "non-custodial." However, no language in the ESI protocol supports that definition, and it is at odds with the large body of case law treating people with power to edit and view Google Drive documents as custodians of those documents. *IQVIA, Inc. v. Veeva Systems, Inc.*, 2019 WL 3069203 (Dist. N.J. 2019); *In re Uber Technologies, Inc., Passenger Sex. Ass. Lit.*, 2024 WL 1772832, *1 (N.D. Cal. 2024); *Sunlight Financial LLC v. Hinkle*, 2022 WL 17487686, *8 (S.D.N.Y. 2022). It is also just common sense to treat them as custodial: whether a PowerPoint or other working document is stored on a local drive, network drive, or cloud drive, it is important to identify who had access to that document. This is true regardless of whether it is characterized as custodian metadata or Collaborator/Viewer metadata.

Federal Rule of Civil Procedure 34 also requires that ESI be produced in a "reasonably usable form." Without Collaborator/Viewer metadata, Plaintiffs lack an effective way to identify who had access and personal knowledge of a document. Meta stated during conferrals that they believed Plaintiffs should have used depositions to ask if witnesses were familiar with a document. Plaintiffs attempted just that, but many witnesses denied current memory of documents – many of which were up to a decade old – and it is simply unrealistic for Plaintiffs to guess which out of 260,000 documents a witness actually had access to. Meta's suggestion would leave the entire question of personal knowledge to the fallible, present-sense, and sometimes biased memory of witnesses.

Meta has also tactically flouted the discovery deadlines in this case when it serves their purpose to disclose late information, while simultaneously refusing to provide even minimal data in response to Plaintiffs' requests. In late 2025, many months after the close of discovery, Meta produced over 60,000 new documents removed from their privilege log – many of those documents are the ones Plaintiffs seek metadata for here. Likewise, in April 2026, while simultaneously denying the metadata requests discussed in this brief, Meta unilaterally provided new custodian metadata for 5,449 documents to support their late disclosure of Dr. Bartlett as a witness – thus allowing them to shield Dr. Bartlett from personal knowledge questions.

Meta's categorical refusal to provide any "Collaborator" and "Viewer" metadata is particularly astounding given that there is every reason to believe they have already downloaded that data for the documents at issue. Google Vault explains that "Collaborator" and "Viewer" metadata is "[i]ncluded with each file" of Google Drive exports.[1] Meta has refused to answer whether they already have the metadata Plaintiffs are requesting.

Plaintiffs are entitled to foundational "Collaborator" and "Viewer" metadata relevant to personal knowledge for all 260,000 documents at issue. Under the ESI protocol that information should have been populated into the "custodian" field, but Plaintiffs have also communicated to Meta a willingness to accept the information in a new metadata field if that is easier. Plaintiffs tried to resolve this dispute without burdening the Court by asking for Collaborator/Viewer metadata for only high-relevance documents: less than 1% of the documents at issue (2,000 documents). After negotiations, Plaintiffs reduced that request to only 500 trial-critical documents. Meta did not offer to produce the metadata for even a single document, while simultaneously issuing new custodian metadata overlays for many thousands of documents to support their late endorsement of witnesses. This Court should order Meta to produce the Collaborator/Viewer metadata for all documents at issue, or at a minimum order Meta to produce that metadata for the much smaller number of high-relevance (2,000) or trial-critical (500) documents to be identified jointly by Plaintiffs as part of their respective trial exhibit lists.

**Meta's Position:** The AGs' years-late argument that Meta should be compelled, through newly-requested metadata fields, to identify all individuals who had access to the non-custodial documents Meta produced in discovery (or at least the Google documents) is time-barred and waived. Nor can the AGs show good cause why they failed to raise their request sooner. Even if the Court were to reach the merits of the AGs' request, it should be rejected, as neither the ESI Protocol nor Rule 34 supports the production of the additional metadata fields they seek.

*First*, the Parties negotiated an ESI Protocol, entered by the Court in March 2024, that specifies the metadata fields the Parties are required to collect and produce. ECF 690 App. 1 ¶ 4. Meta began producing non-custodial documents with the metadata required under the ESI Protocol (including Google docs) in June 2024, specifying "Meta Platforms" in the "ALL CUSTODIANS" metadata field. Eventually, Meta produced over 200,000 non-custodial documents with a "Meta Platforms" custodian value. The AGs have thus been aware of the absence of individual custodian information for Google documents since May 2024. Indeed, in March 2025, Plaintiffs raised a separate dispute in which they argued that Meta had "produced 58,627 [Highly Confidential] Documents from shared sources without comprehensive custodial metadata, instead only listing 'Meta Platforms' as the custodian." ECF 1775 at 1.[2] Fact discovery then closed on April 4, 2025, triggering an April 12, 2025 deadline for all remaining discovery motions. *See* L.R. 37-3; *Eagle Eyes Traffic Industry USA Holding LLC v. E-Go Bike LLC*, 2023 WL 6629802, at *1 (Oct. 10, 2023) ("Untimely motions related to fact discovery are not permitted under Local Rule 37-3."). Yet the AGs waited a full year before raising their current demand—namely, that Meta produce two additional metadata fields for all non-custodial documents (or at least for all Google docs). Because the AGs failed to raise this dispute within the time allowed, they waived it. *Id.*; *accord* The Sedona Conference, *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, 196 (2018) ("Having not raised the issue earlier, [a] party waive[s] the right to seek metadata" if it moves for such data "[s]hortly before trial" but did not object when ESI was originally produced without it).

*Second*, the AGs cannot show good cause why they should be excused from the earlier deadlines

---

[1] https://support.google.com/vault/answer/6099459?hl=en#drive_export&drivexml&metadata

[2] While Plaintiffs suggested that Meta "should have produced this data to Plaintiffs at the time of production," *id.* at 2, they *did not* ask (and the Court did not require) Meta to produce it, ECF 1936.

to raise this dispute. *See* L.R. 37-3. The AGs argue that fact discovery has not closed, or that any waiver should be excused because Meta has continued to produce documents. As an initial matter, counsel for the AGs admitted during an April 7 conferral that they did not bring this motion sooner due to strategic decisions that had to be made due to limited resources. The pretextual reasons now advanced for their delay are squarely foreclosed by this Court's confirmation nearly eleven months ago that "Meta is correct that fact discovery has closed." ECF 1979 at 6. While Meta has continued to make narrow "clean-up" productions pursuant to orders or agreements with Plaintiffs to resolve discrete disputes, those productions are an exception to the fact-discovery cutoff; they did not reopen discovery. Certainly, they provide no basis for the AGs to now demand additional metadata fields that they could have requested when the Parties negotiated the ESI Protocol over two years ago, when Meta began producing non-custodial documents in June 2024, or when Plaintiffs raised a related dispute in March 2025. To the extent the AGs now claim to need the additional metadata to help lay the foundation to admit documents at trial, they could and should have taken the discovery necessary to ensure they could do that during the fact discovery period. *See Integra Lifesciences I, Ltd. v. Merck KGaA*, 190 F.R.D. 556, 559 (S.D. Cal. 1999) (a party that "makes a tactical decision during discovery" "takes the risk" that evidence will be absent at trial).

*Third*, the AGs' arguments fail on the merits. The ESI Protocol does not require Meta to produce the metadata fields the AGs are now demanding for non-custodial documents. Documents collected directly from shared locations in collaboration platforms like Google Workspace Shared Drives are considered to be non-custodial—i.e., collected from sources that do not belong to any specific custodian. As a result, there is typically no one "owner" of the ESI located in a collaborative workspace. *See generally* The Sedona Conference, *Commentary on Discovery of Collaboration Platforms Data*, 26 Sedona Conf. J. 627, 636, 640-41 (2025). Accordingly, Meta properly specified "Meta Platforms" in the "ALL CUSTODIANS" field for all non-custodial documents it produced, including Google documents. As the AGs (eventually) conceded in conferrals, the additional metadata they are now demanding is *not* additional "custodian" information; that an individual may have had *access* to a shared-drive document (which is all the "Viewer" and "Collaborator" metadata fields denote) does not make them a custodian of the document. *See id*. at 637-38, 640-44. Notably, while the ESI Protocol requires the collection of ESI from "non-custodial data sources" specifically, ECF 690 at 2–3, it does not require the Parties to collect different or additional metadata for such sources. Had the Parties or the Court intended that result, they would have included "Viewer" and "Collaborator" fields in the 35 metadata fields specified in the ESI Protocol—as parties in other cases have. *See, e.g.*, ESI Protocol, *In re Google Digital Advertising Antitrust Litig.*, 2023 WL 2557433, at *8 (S.D.N.Y. Mar. 17, 2023) (requiring "DRIVE COLLABORATORS" and "DRIVE VIEWER" metadata fields). Nor does Rule 34's requirement to produce ESI in a "reasonably usable form" require Meta to produce the requested metadata. Rule 34(b)(2)(E) by its terms applies *only* "[u]nless otherwise stipulated," Fed. R. Civ. P. 34(b)(2)(E)—which the Parties did here, *see* ECF 690 at 21. *See Melian Labs, Inc. v. Triology LLC*, 2014 WL 4386439, at *1-2 (N.D. Cal. Sept. 4, 2014) (rejecting similar argument, where parties had stipulated to format of ESI to be produced). The AGs' effort retroactively to rewrite Meta's obligations under the ESI protocol should be denied. *See Kadrey v. Meta Platforms, LLC*, Case No. 23-cv-03417-VC (TSH) (N.D. Cal. Dec. 20, 2024), ECF 401 at 2 (rejecting request that "would effectively blow up the custodial limitations in the ESI Order").

**Plaintiffs' Reply**: Notably absent from Meta's position is any citation to the ESI protocol or legal authority classifying Google Drive documents as "non-custodial." The ESI Protocol metadata requirements apply to all documents: "The names of all custodians… [or other persons] known by the Producing Party to have been in <u>possession or custody</u> of a document… will be populated in the ALL CUSTODIANS metadata field." (ECF 690:7) (emphasis added).

Plaintiffs' request is timely – Meta's obligation to produce this data was memorialized in the ESI protocol, and far from making a strategic decision not to pursue this metadata, Plaintiffs' made a timely demand for this metadata via letter on December 19, 2024: "Plaintiffs request that Meta

provide a supplemental production containing an overlay that reflects the complete list of custodians for each document that lists Meta Platforms as the document's custodian."

Discovery requests may be granted "for good cause shown" regardless of the timing. N.D. Cal. Local Rule 37-3. Many of the documents at issue were late disclosed: in the 60,000+ documents produced late in 2025, or in 2026 productions related to crime-fraud and to Meta's late-disclosed witnesses. It was not until 2026 that Meta disclosed in conferrals that nearly all employees' substantive work is done in shared documents. And most importantly, Meta has continued even in April 2026 to update custodian metadata when it benefits them. They produced self-serving new custodian metadata for 5,449 documents related to Dr. Bartlet and another 2,901 related to Ms. Hartnett – vastly more documents than Plaintiffs sought in compromise offers.[3]

Good cause and proportionality clearly favor ordering production of this metadata given the *de minimis* request at issue: 1) Meta already has the metadata, 2) the universe of documents is narrow, 3) the relevance is high as to witness knowledge, credibility, and memory, 4) the metadata is the only way to put the parties on equal footing in understanding who had access to documents, and 5) the information in the metadata cannot be reliably obtained from another source.

**Meta's Reply:** The crux of the AGs' argument is that they should be excused from Local Rule 37-3's plain prohibition on untimely discovery motions because, absent the newly requested metadata, they will purportedly lack "an effective way to identify who had access and personal knowledge of a document." But the very documents they cite show that is wrong. "Leading on IG Youth Protections" was produced with metadata identifying its creator in the "AUTHOR" metadata field. Meta's BEEF Survey prominently identifies its lead author on the first slide and was used by Plaintiffs' counsel at his and other witnesses' depositions. Thousands of other Google documents likewise identify their authors and collaborators on their face. And Plaintiffs know the identities of Meta employees who contributed to, and commented on, the "MYST study" documents. *See* ECF 2474 (crime-fraud briefing); ECF 2647-1, 2647-2, 2647-3 (employee declarations). Meta also agreed to let Plaintiffs attend *any* of the up-to-twelve privilege-downgrade depositions the Tennessee AG was permitted to notice, which include Meta employees who participated in the chats that gave rise to the crime-fraud dispute. *See* ECF 2949 ¶¶ 11-12. Notably, after Meta also agreed to let Plaintiffs depose another Meta witness of their choice, *id.* ¶ 11, they selected an employee who is on very few priv-downgrade documents—underscoring that those productions are mere pretext for the additional metadata they seek. Indeed, the AGs do not cite *any* documents for which they cannot ascertain a creator, contributor, or viewer. They have not identified any reason the Court should excuse them from the basic discovery task of questioning deposition witnesses about documents to learn who had personal knowledge of their contents.

The AGs' claim that Meta has "continue[d] to update custodian information to its benefit" misconstrues the facts and is beside the point. On April 10, Meta produced an updated metadata overlay to account for the fact that—at the AGs' request—it had recently produced documents for a new custodian. More to the point, the AGs are not seeking *custodian* information; they're seeking metadata that is not required under the ESI Protocol or the Rules. None of the AGs' cited cases compelled a producing party to identify as "custodians" users with access to view or edit documents on a collaboration platform. *See IQVIA, Inc.*, 2019 WL 3069203; *In re Uber*

---

[3] Meta's contention – first raised on reply in Footnote 4 – that PISD participation in this dispute should be denied with prejudice is without basis and contradicts representations made during the parties' conferrals, in which it stated that "if the PISD Plaintiffs wish to simply indicate that they join the AGs' position, we won't stop you, but we do not believe it would be appropriate for PISD Plaintiffs to present a separate position statement." Ex. A at 1. PISD Plaintiffs have done exactly that: joined in the AGs position without a separate statement.

*Technologies,*, 2024 WL 1772832, *1; *Sunlight Financial*, 2022 WL 17487686, *8.  Nor is it "common sense," as the AGs suggest, to conflate documents collected from individual custodians with those collected from collaboration platforms, where "[t]he notion of a custodian may not be applicable." *Commentary*, 26 Sedona Conf. J. at 637.  Finally, the AGs' claim that they're entitled to know if Meta has the metadata they seek is wrong; that inquiry is impermissible (and years-late) "discovery-on-discovery."  The AGs also fail to explain how a witness's *ability* to view or edit a document could substitute for personal knowledge; and as the AGs' own authority explains, "parties should not demand metadata fields" that "do not materially aid in the discovery process." *Uber Techs.*, 2024 WL 1772832, *6.  To the contrary, the party seeking to compel the production of metadata bears the burden to prove that the documents at issue were not produced in reasonably usable form, *Bah v. Sampson Bladen Oil Co.*, 2024 WL 3678337, at *4 (E.D.N.C. Aug. 5, 2024), which the AGs here have not done.  The issue of burden is thus beside the point; the AGs' motion fails at the threshold.  *See KST Data, Inc. v. DXC Tech. Co.*, 344 F. Supp. 3d 1132, 1136 n.1 (C.D. Cal. 2018) ("Untimeliness is sufficient ground, standing alone, to deny a discovery motion.").[4]

---

[4] The Court should deny the requested relief as to PISD Plaintiffs, with prejudice, for failure to comply with §§ H(1)-(2) of the Discovery Standing Order.  PISD Plaintiffs did not participate in any of Meta and the AGs' pre-H(2) conferrals; announced their intent to join the AGs' briefing for the first time at the H(2) conference while seeking different relief (limited to the ~200 Google documents on Breathitt's trial exhibit list); and then dropped that request so they could join the AGs' briefing in full.  Meta previewed this position during the H(2) and by email.  *See* Ex. A at 3; *accord id.* at 1-2.  Notably, PISD Plaintiffs have asked none of the other Defendants for similar information about their non-custodial documents—underscoring that they do not need it.

## **ATTESTATION**

I, Ashley M. Simonsen, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: February 26, 2026

By: */s/ Ashley M. Simonsen*
Ashley M. Simonsen