# EXHIBIT 5

CONFIDENTIAL

Page 281

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

*****************************

                                        Case No.

IN RE:  SOCIAL MEDIA ADOLESCENT  4:22-MD-03047-YGR
ADDICTION/PERSONAL INJURY
PRODUCTS LIABILITY LITIGATION

                                        MDL No. 3047

*****************************

This Document Relates To:

ALL ACTIONS

*****************************

CONFIDENTIAL - ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER

CONTINUED VIDEOTAPED DEPOSITION OF
ALLISON L. HARTNETT

Held At:          Covington & Burling LLP
                  Salesforce Tower
                  4415 Mission Street
                  San Francisco, California

June 17th, 2025
10:03 a.m.

Reported By:
MAUREEN O. POLLARD, CSR #14449, RDR

CONFIDENTIAL

Page 298

disable state, and then there's deletion, right?

A.    Yes.

One, I do think it's a little bit weirdly worded.  Like, the checkpoint is a thing that happens that causes you to be in a disabled state, so when you are checkpointed the account is also disabled.

Q.    Okay.  So the account is checkpointed, right, for being under 13?

A.    Yes.

Q.    There's a period of time in which the user has to appeal the decision that they are likely under 13, right?

A.    That's right.

Q.    And that period has been 30 days?

A.    That's correct.

Q.    Since 2012, since this system has existed, the period has been 30 days to appeal, right?

A.    No.  It looks like in --

Q.    Let me -- maybe I can ask it again.

At some point maybe it was a shorter period of time, but since at least, let's say, 2022 it's been a 30-day period, right?

A.    Since at least 2022, yes.

CONFIDENTIAL

Page 299

Q.    Yeah.

A.    Yeah.

Q.    Okay.  And then at the end of that 30 days if the account -- if the person who belongs to the account has not successfully appealed a decision, then Meta keeps the account in a disabled state for a period of time, right?

A.    That is correct.

Q.    And it keeps the account and the data associated with the account in a disabled state for a period of time before it starts deleting that data, right?

A.    Yes, that's right.

Q.    And the period of time in which Meta maintained that data belonging to users who it determined were likely under 13 in that disabled state varied over the years?

MR. CHAPUT:  Object to the form.

THE WITNESS:  Yes, that is right, it varied over the years.

BY MR. OLSZEWSKI-JUBELIRER:

Q.    Okay.  And the -- so, for example, in 2022 and 2023 that period was six months, right?

A.    Yes.

Q.    So in 2022 and 2023, after Meta

CONFIDENTIAL

Page 300

determined a user was likely under 13 and the user failed to successfully appeal that determination, Meta kept that user's data for six months before beginning to delete it, right?

MR. CHAPUT:  Object to form. Characterization.

THE WITNESS:  Meta kept the user's data in a disabled state before beginning to delete it.  The reason Meta does that is for the possibility of needing to do legal discovery that would involve sharing the data on those disabled accounts.  That's why the disablement period exists.

BY MR. OLSZEWSKI-JUBELIRER:

Q.    Okay.  The disablement -- that's the reason the disablement period exists?

MR. CHAPUT:  Object to form.

THE WITNESS:  That is my understanding, yeah.

BY MR. OLSZEWSKI-JUBELIRER:

Q.    Okay.  In April 2023 Meta extended that period that it keeps the data of accounts it has determined likely belong to children under 13 before beginning to delete them to one year, right?

A.    Yeah.

CONFIDENTIAL

Page 301

MR. CHAPUT:  Object to the form. Characterization.

THE WITNESS:  In April 2023, the disablement period was one year, yes.

BY MR. OLSZEWSKI-JUBELIRER:

Q.   Okay.  And then in April 2024, at least for US accounts that Meta determined likely belonged to children under 13, Meta shortened that period that it keeps their data before beginning to delete it to 45 days, right?

MR. CHAPUT:  Object to form. Characterization.

THE WITNESS:  Yes.

BY MR. OLSZEWSKI-JUBELIRER:

Q.   Okay.  And then once Meta begins to delete the data of these accounts that it has determined likely belong to children under 13, it deletes that data over a period of 90 days, right?

A.   Yes.

MR. CHAPUT:  Object to the form. Characterization.

THE WITNESS:  Yes.

MR. OLSZEWSKI-JUBELIRER:  Okay.  Let's go off the record, please.

THE VIDEOGRAPHER:  The time is 10:15.

CONFIDENTIAL

Page 302

We're off the record.

(Whereupon, a recess was taken.)

THE VIDEOGRAPHER:  The time is 10:28. We're back on the record.

BY MR. OLSZEWSKI-JUBELIRER:

Q.    I'd like to talk about age modeling.

A.    Okay.

Q.    Meta has been developing age models since before 2018, right?  I'm on page 27 of your notes.

A.    Yes, that is correct.

Q.    Age models are models or algorithms that Meta uses to predict a user's age, right?

A.    Yeah, that's right.

Q.    Okay.  And in 2018 Meta consolidated its age modeling work into a team called core dimensions, right?

A.    Yes, that's right.

Q.    And you talked yesterday -- you testified yesterday about how Meta uses happy birthday posts as a source of ground truth for its age models, is that right?

A.    Yes, that's right.

Q.    And happy birthday posts in this context are posts where a user wishes another user

CONFIDENTIAL

Page 338

delete the data.  So if a user is disabled and deleted for being under 13, we don't have any data to then match them creating a new account because it's deleted.

Q.    This morning counsel has asked you some questions about the deletion framework.

Do you recall generally that testimony?

A.    Yes.

Q.    Counsel walked you through a number of time frames to deletion that are described in your notes.  Are those deletion time frames specific to under 13 reports?

MR. OLSZEWSKI-JUBELIRER:  Objection.  Foundation, characterization.

THE WITNESS:  Just to share, so we talked about deletion time frames, they've changed over time.  When we were talking about the time frames that have changed over time, those referred to deletion timelines for any enforcement, not specific to 13.

The u13 enforcement is now deleted at 45 days, and that began -- I think I can get that date, but it's in the notes.  That is specific to u13, but the other ones were

CONFIDENTIAL

Page 339

not specific to u13 that we discussed.

BY MR. CHAPUT:

Q.     During your education on the deletion framework, did you learn information about the impact of the disabled state on Meta's processing of data associated with those accounts?

MR. OLSZEWSKI-JUBELIRER:  Objection. Scope.

THE WITNESS:  So when the account is disabled, what that means is that any systems that would be processing the accounts data ignore that account. Basically the account has a flag on it that says disabled, and therefore the data is not processed.

BY MR. CHAPUT:

Q.     Yesterday counsel asked you some questions about Meta's collection of logged-out user data.

Do you recall that line of questioning?

A.     Yes.

Q.     Are you able to describe what portions of Facebook and Instagram an individual is able to access without having logged into those services?

A.     Yes.  A user can access the

CONFIDENTIAL

Page 340

registration page, which we spoke about, as well as public -- select public pages.  Like, if a profile is public, that can be visited.

Q.  Are there any limitations on the volume of public pages apart from the registration page that individuals are able to access on Facebook and Instagram without logging in?

MR. OLSZEWSKI-JUBELIRER:  Objection. Scope.

THE WITNESS:  Yes, there are limitations.  Users today -- the exact limitation depends on -- I do not have the exact limitation, but it's something in the range of three to five pages that a user can visit before they're prompted to register.

BY MR. CHAPUT:

Q.  How have those access limitations changed over time, if at all?

MR. OLSZEWSKI-JUBELIRER:  Same objection.

THE WITNESS:  That access limitation which I refer to as rate limiting has -- it has not always existed.  It has existed -- I believe it started to exist around 2020.

CONFIDENTIAL

Page 355

CERTIFICATE OF COURT REPORTER

I, MAUREEN O'CONNOR POLLARD, Registered Diplomate Reporter, CSR No. 14449 for the State of California, the officer before whom the foregoing deposition was taken, do hereby certify that the foregoing transcript is a true and correct record of the testimony given; that said testimony was taken by me stenographically and thereafter reduced to typewriting under my direction; and that I am neither counsel for, related to, nor employed by any of the parties to this case and have no interest, financial or otherwise, in its outcome.

Dated this 17th day of June, 2025.

_____

MAUREEN O'CONNOR POLLARD

CSR No. 14449