UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

IN RE: SOCIAL MEDIA ADOLESCENT
ADDICTION/PERSONAL INJURY
PRODUCTS LIABILITY LITIGATION

Case No. 22-md-03047-YGR (PHK)

**ORDER RESOLVING DISPUTE RE:
META DOCUMENT NO. 4 AND
CRIME FRAUD EXCEPTION TO
ATTORNEY-CLIENT PRIVILEGE**

Re: Dkts. 2879 and 2881-1

## **INTRODUCTION**

This MDL has been referred to the undersigned for all discovery purposes. *See* Dkt. 419; Dkt. 426.  Now pending before the Court is a joint letter brief regarding a dispute between the State Attorneys General ("State AG's") and Meta regarding a specific Meta document (referred to as Document 4) which was partially redacted based on an assertion of the attorney-client privilege as to certain text in that document.  This is the second, follow-on dispute regarding this document. On January 12, 2026, the Court issued an Order resolving the earlier dispute regarding this document and other Meta documents, in which the Court resolved a dispute over whether the redacted passages are subject to the crime-fraud exception to the attorney-client privilege, on the grounds that communications from counsel to a client to spoliate evidence are not properly shielded by the privilege.  [Dkt. 2629, herein "January 12 Order"; redacted public version filed at Dkt. 2661-4].

Familiarity with the January 12 Order is assumed for purposes of this Order.  After carefully reviewing the Parties' submissions, the undersigned finds this matter fit for adjudication without oral argument. *See* Civil L.R. 7-1(b).

## **LEGAL STANDARDS**

### **A. Discovery Standards**

A party seeking discovery bears the burden of establishing that its request satisfies the relevancy and proportionality requirements under Rule 26(b)(1).  *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012).  The resisting party, in turn, has the burden to show that the discovery should not be allowed.  *Id.*  The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments.  *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

The Court has broad discretion and authority to manage discovery.  *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003).  The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested.  *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery").  For example, the Court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C)(i).

### **B. The Crime Fraud Exception to the Attorney-Client Privilege**

Federal common law governs the scope of the attorney-client privilege for claims brought under federal question jurisdiction, whereas state law governs the scope of the privilege in diversity actions.  Fed. R. Evid. 501.  "Where there are federal question claims and pendent state law claims present, the federal law of privilege applies."  *Agster v. Maricopa Cnty.*, 422 F.3d 836, 839 (9th Cir. 2005) (citing Fed. R. Evid. 501 advisory committee's note).

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice."  *In re Grand Jury*, 23 F.4th 1088,

2

1091 (9th Cir. 2021) (quoting *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020)).  The privilege attaches when "(1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived."  *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992)).

While the attorney-client privilege is one of the oldest and most fundamental common-law privileges, it is "not absolute."  *In re Grand Jury Investigation*, 810 F.3d 1110, 1113 (9th Cir. 2016) (citation omitted).  "The protection afforded by the attorney-client privilege does not extend to any communication 'in furtherance of intended, or present, continuing illegality.'"  *In re Grand Jury Proceedings*, 87 F.3d 377, 381 (9th Cir. 1996) (citation omitted).  "Thus the crime-fraud exception insures that the confidentiality enveloping the attorney-client relationship does not encompass communications made for the purpose of getting advice for the commission of a fraud or crime, but the exception does not sweep so broadly that it discourages clients from making full disclosure to their attorneys of *past* wrongdoings, in order that the client may obtain the aid of persons having knowledge of the law and skilled in its practice."  *Id.* (quoting *United States v. Zolin*, 491 U.S. 554, 562–63 (1989)) (internal citation omitted).  "Under the crime-fraud exception, communications are not privileged when the client 'consults an attorney for advice that will serve him in the commission of a fraud' or crime."  *In re Grand Jury Investigation*, 810 F.3d at 1113 (quoting *Clark v. United States*, 289 U.S. 1, 15 (1933)).

Both federal common law and California state law recognize a crime-fraud exception to the attorney-client privilege.  *Clark v. United States*, 289 U.S. 1, 15 (1933); *State Farm Fire & Cas. Co. v. Superior Ct.*, 54 Cal. App. 4th 625, 643 (Cal. Ct. App. 1997).

Under federal law, a party seeking to vitiate the attorney-client privilege must satisfy a two-part test.  First, the challenging party must make a *prima facie* showing that "the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme."  *In re Grand Jury Investigation*, 810 F.3d at 1113.  Second, the challenging

party must demonstrate that the sought after communications are "sufficiently related to" and were made "in furtherance of the intended, or present, continuing illegality." *Id.* (alterations omitted). "The attorney need not have been aware that the client harbored an improper purpose.  Because both the legal advice and the privilege are for the benefit of the client, it is the client's knowledge and intent that are relevant." *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007), *abrogated on other grounds by Mohawk Indus. Inc. v. Carpenter*, 558 U.S. 100 (2009).

The Ninth Circuit has held that a party in a civil action must establish the crime-fraud exception by a preponderance of the evidence when challenging attorney-client privilege. *In re Outlaw Lab'ys, LP Litig.*, No. 18CV840 GPC (BGS), 2020 WL 3268581, at *6 (S.D. Cal. June 17, 2020); *Impossible Foods Inc. v. Impossible X LLC*, No. 21-CV-02419-BLF (SVK), 2025 WL 1810263, at *2 (N.D. Cal. June 30, 2025) ("The appropriate standard for this determination in a civil case is preponderance of the evidence.").

In California, the crime-fraud exception applies when lawyers assist their clients in making affirmative misrepresentations during business transactions, even if the lawyers are not shown to have made the affirmative misrepresentations themselves.  *See BP Alaska Exploration, Inc. v. Superior Ct.*, 199 Cal. App. 3d 1240, 1268–69 (1988).  In *BP Alaska*, a client hired counsel to perform an investigation, and then used the results of the investigation to send allegedly fraudulent letters to a business competitor in furtherance of a scheme to usurp a business venture that arose from confidential business information misappropriated from the competitor. *Id.* at 1247–48.  The Court ruled that the crime-fraud exception to the attorney-client privilege applied because the client "sought its attorney's services to assist in the commission or planning of a fraud by making misrepresentations of fact aimed at" the competitor. The Court did not require the attorneys to be involved in the fraud: it was enough that the "fraudulent scheme . . . evolved from [a] privileged communication." *Id.* at 1268–69.

## ANALYSIS

As discussed in the January 12 Order, the Parties and the undersigned refer to the document at issue here as Document 4.  Document 4 was produced in redacted form during discovery in this MDL starting with Bates number META3047MDL-111-00468706 (and also a

4

produced (with redactions) bearing Bates No. META3047MDL-299-00000001). [Dkt. 2594-1 at 5 n.3].  Meta's counsel also avers that Meta produced another document, META3047MDL-111-00158033, containing slides "with significant overlapping content" to the slide deck referenced in META3047MDL-111-00468706.  *Id*.  Because it is an internal Meta document, the produced, redacted version of Document 4 was filed under seal pursuant to the Protective Order.  *See* Dkt. 2647-7.

Without revealing the contents of the document, in general Document 4 is a fourteen page printout of a series (or thread) of electronic messages dated July 7, 2023 between three Meta employees, Cristina Foung (Project Manager), Francesco Fogu (Product Design Director), and Meagan Palatino (Product Manager).  There are well over 100 separate messages in this string or thread.  Out of this series of electronic chat messages, approximately fifteen messages interspersed in the thread authored by Ms. Foung and by Ms. Palatino were redacted, some in whole and some in part, on grounds of attorney-client privilege on pages with Bates numbers.  The bulk of the document was produced unredacted.  Neither Ms. Foung, Ms. Palatino, nor Ms. Fogu are (or were at the relevant time) attorneys.

In general, the redacted chat messages at issue refer to multiple alterations suggested by Meta's counsel to text in the slide deck.  The chat thread here at some points mentions two Meta (or Instagram) in-house lawyers by name. [Dkt. 2594-1 at 6].  There is also mention in this thread that, at one point, a total of five lawyers have been "added" to the slide deck at issue.  *Id*.  Not every single redacted chat message refers to a Meta attorney, however.  There is no real dispute that the slide deck discussed by Ms. Foung and Ms. Palatino in Document 4 changed over time.

The Court previously conducted an *in camera* review of the unredacted version of Document 4 as part of the process of resolving the disputes as set forth in the January 12 Order.  As set forth in the January 12 Order, the Court also ordered Meta to serve a privilege log to address the assertion of privilege as to the redacted portions of Document 4 (among other documents at issue at that time).  [Dkt. 2629 at 24, 27; Dkt. 2661-4 at 27–28].  Meta filed that privilege log under seal on January 27, 2026.  *See* Dkt. 2675-1.

As set forth in the January 12 Order, the Court found that the crime-fraud exception to the

United States District Court
Northern District of California

United States District Court
Northern District of California

attorney client privilege was not sufficiently shown to apply to the redacted portions of Document 4. [Dkt. 2629 at 22; Dkt. 2661-4 at 23]. In sum, because the various versions of the slide deck discussed in Document 4 were shown to exist both before and after the edits or changes referenced in Document 4, there was no actual spoliation of evidence. *Id.* However, during discovery Meta had not produced all those versions of the slide deck. The January 12 Order therefore ordered Meta to search for and produce all non-duplicative versions of the slide deck which predate the July 7, 2023 messages in Document 4, where Meta represented that Meta had already produced the versions which post-date July 7, 2023. *Id.*

With this background, the Court now turns to the current dispute. After the January 12 Order, Meta searched for and produced "end of day" versions of the slide deck dated July 5, 6, and 7, 2023 which were retained in Google Vault. [Dkt. 2879 at 5]. The State AG's sought intra-day versions or change logs of the slide deck specifically for July 7, the date of the messages in Document 4. Those change logs or intraday versions were not produced. The State AG's argue that "[t]he missing change logs and intraday versions would show 'unresolved comments … on slide 16', 'comments on slide 5,' and the crucial employee responses to those and other comments mentioned in Document 4." *Id.* (confidential text redacted from public version of Joint Discovery Letter Brief).

Meta now argues that the January 12 Order limited Meta's obligation to search for and produce versions of the slide deck which were retained in Google Vault and nothing more. *Id.* at 8. As to the intraday versions, Meta asserts that "the AGs' assertion that Meta 'conceal[ed] or destroy[ed] intraday versions of the' slide deck is demonstrably false" because "***intraday versions of Google documents are retained in Google Docs***—just not in Google Vault." *Id.* (emphasis in original). Meta asserts that it did not decline to produce any versions of the intraday versions, but "[t]o the contrary, ***Meta offered to take the manual steps required to produce intraday versions of the slide deck from July 7, 2023***—all 9 of which have been retained—if the AGs would accept the Court's prior ruling and stop raising crime-fraud issues with respect to these four documents (as the PI/SD and JCCP Plaintiffs have done)." *Id.* at 9 (emphasis in original).

First, Meta's interpretation of the January 12 Order with regard to the duty to search and

6

produce is facially incorrect as to Document 4.  The portion of the January 12 Order which discussed Google Vault in connection with Meta's search obligations was with regard to Document 3 (the so-called MYST study documents), which was in dispute at that time, not Document 4.  Indeed, the portion of the January 12 Order cited by Meta now is the section discussing Document 3, not Document 4.  *See* Dkt. 2879 at 8 (citing January 12 Order at p. 17-18).

In the January 12 Order, the Court noted that prior versions of the slide deck (the underlying document relating to Document 4) were retained in Meta's "document repositories" without limiting those repositories to only Google Vault.  *See* Dkt. 2629 at 21; Dkt. 2661-4 at 22. The Court ordered Meta to search for and then produce "***all*** non-duplicative versions of the slide deck …, ***including*** those versions Meta has already confirmed it has retained but not previously produced."  *See* Dkt. 2629 at 22 (emphasis added); Dkt. 2661-4 at 23 (emphasis added).  The Court's use of the word "all" was unambiguous.  The January 12 Order's use of the word "including" was not properly construed as a term of limitation, because the use of the term "including" to introduce a phrase does not mean "only constituting" where it is "'hornbook law' that [a] list following the word 'including' is 'illustrative, not exclusive'".  *In re Mark Anthony Constr. Inc.*, 886 F.2d 1101, 1106 (9th Cir. 1989) (quoting *Puerto Rico Maritim Shipping Auth. v. I.C.C.*, 645 F.2d 1102, 1112 n.26 (D.C. Cir. 1981).

For these reasons, the Court is disappointed that Meta knew of and has intraday versions of the slide deck stored in Google Docs and, despite the clear language of the January 12 Order with regard to Document 4, chose to only produce the versions stored in Google Vault.  Nothing in the discussion of Document 4 in the January 12 Order granted Meta the ability to limit its search obligations in this manner.  To be clear, nothing in this Order grants Meta any such ability either. To the extent Meta relied on its unsupported interpretation of the January 12 Order and to the extent Meta has vaguely attempted to argue or object that producing intraday (July 7) versions of the slide deck would be either nonproportional or unduly burdensome by referencing "manual" work needed to obtain them, any such objections are **OVERRULED**.

Second, and equally importantly, the Court is disappointed that the State AG's did not accept Meta's offer to receive the intraday versions of the slide deck, but rather refused that offer

and instead persisted in presenting this dispute to the Court.  It is clear that the State AG's are seeking a second bite at the apple to re-argue the crime-fraud issue with regard to Document 4, without having shown a material change in the factual scenario that would justify piercing the privilege.  Rather, the dispute here is readily resolved with a straightforward application of the Court's analysis from the January 12 Order and the State AG's have made no showing why that analytical approach would not apply with regard to the intraday versions of the slide deck.

In that January 12 Order, the Court held that, where various versions of an underlying document (both pre- and post- the attorney communication) are produced in discovery, there is insufficient cause to pierce the privilege based on the crime-fraud exception.  *See Tessera, Inc. v. Micron Tech., Inc.*, 2006 WL 8441639, at *2 (E.D. Tex. June 23, 2006).  The Court followed the analytical approach in *Tessera* because the factual scenario in *Tessera* is remarkably similar if not identical to the situation here:  Meta argues that the redacted text from the chat thread here is privileged, but the State AG's argue that the crime-fraud exception applies because the redacted chat messages advise Meta employees to change text in the slides (which the State AG's equate with spoliating evidence).  The *Tessera* opinion resolved the crime-fraud dispute as follows:

> Tessera has both the Paper and the Revised Paper. It may argue whatever it pleases concerning the motivation behind the alterations, but the mere fact that the Paper was altered does not automatically transform those changes into spoliation, which requires that Micron engaged in the destruction or significant and meaningful alteration of a document or instrument.  Neither destruction nor alteration occurred in this case, therefore no spoliation occurred.

*Id.* (citation omitted).

Based on the record submitted on this dispute, the State AG's have not shown spoliation of documents at issue here.  As discussed in the January 12 Order, the record demonstrates that there was discussion about alterations to the language in the underlying slide deck discussed in the chat messages of Document 4.  And as resolved in that Order, the analogous *Tessera* opinion guides the resolution of the current dispute as to the intraday versions of the slide deck and Document 4. Meta has confirmed that multiple versions of the underlying slide deck have now been produced in discovery, including versions that both pre- and post- date the redacted chat messages.  Meta has confirmed that intraday versions of the slide deck which reflect the edits made during July 7 exist

United States District Court
Northern District of California

in Google Docs and are capable of being produced. Based on this record, there has been no destruction of evidence, because the July 7 intraday versions of the slide deck which both pre- and post-date the redacted chat messages here still exist. And there has been no irreversible or unreviewable alteration of evidence, because the versions both pre- and post- attorney-client communications exist and thus any changes are discoverable from simple comparison of the text of the various versions.

As noted, unlike in *Tessera* where all versions were produced, here Meta has not produced the July 7 intraday versions of the slide deck (for reasons the Court has overruled). This is straightforward to remedy and brings the current dispute over Document 4 in line with the reasoning of *Tessera*. As discussed below, the Court **ORDERS** Meta to produce intraday versions of the slide deck, similar to the resolution in the January 12 Order. With these intraday versions of the slide deck in-hand, as well as the already-produced various versions of that slide deck, Plaintiffs will be able to determine readily what changes were made to the language of that document over time. Because July 7 intraday versions of the slide deck were not destroyed, Plaintiffs have not made a sufficient showing that the crime-fraud exception to the attorney-client privilege applies to the redacted portions of Document 4. As the January 12 Order concluded, the production of the various edited versions of the underlying document provides the underlying factual material from which a party can make arguments as to the merits of the case, without the need to pierce the privilege. Accordingly, the Court **GRANTS** Meta's motion for a protective order as to the redacted portions of Document 4, subject to Meta's compliance with the directives herein to produce the various versions of the slide deck and timely serve a privilege log as discussed herein.

Accordingly, for all the reasons stated herein, the Court **ORDERS** Meta to perform a diligent and reasonable search for and then produce ***all*** non-duplicative intraday versions of the slide deck from the relevant time and date range. The relevant time and date range for Meta's search and production **SHALL** encompass any and all intraday versions of the slide deck from the following range: starting on July 6 but after the time associated with the July 6, 2023 "end of day" version which Meta produced and up to and ending on July 7, 2023 at the time associated with the

United States District Court
Northern District of California

July 7, 2023 "end of day" version which Meta produced.  Meta's search obligation **SHALL INCLUDE BUT SHALL NOT BE LIMITED** to Google Docs (or Google Vault or any other electronic repository however denominated).  Rather, Meta's search obligations for intraday versions of the slide deck **SHALL BE** reasonably construed to require a search of all locations, persons, custodians, and repositories which are consistent with a reasonable and diligent search as required by this Order, by the Federal Rules of Civil Procedure, the Civil Local Rules, this Court's Standing Discovery Order, and prior guidance from this Court to counsel in this MDL on their obligations to comply reasonably with discovery rulings.  Accordingly, Meta's search obligations **SHALL** also include but not be limited to all hard drives, folders, network locations, email accounts, repositories, paper files, or any electronic, optical, or other storage mediums of any kind used, controlled by, possessed by, or otherwise accessible in the ordinary course of business from July 6–8, 2023 by any person whose name appears in Document 4.

Meta **SHALL** produce all the intraday versions of the slide deck found in response to this Order on or before June 1, 2026, and to avoid delay, Meta **SHALL** produce them on a rolling basis starting on May 22, 2026 and continuing thereafter as they are found and processed for production.

Additionally, Meta has indicated that portions of the slide deck are or will be produced in redacted form because portions of the slide deck contain privileged attorney-client communications.  [Dkt. 2879 at 9; Dkt. 2881-1 at 9].  The party asserting the attorney-client privilege has the burden of proving that the privilege applies. *United States v. Gray*, 876 F.2d 1411, 1415 (9th Cir. 1989) (citations omitted). The Ninth Circuit has "previously recognized a number of means of sufficiently establishing the privilege, one of which is the privilege log approach." *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992) (citation omitted). "The Ninth Circuit has held that a party meets its burden of demonstrating the applicability of the attorney-client privilege by submitting a log that identifies (a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or

<div style="writing-mode: vertical">United States District Court
Northern District of California</div>

dated." *Khasin v. Hershey Co.*, No. 5:12-cv-01862-EJD-PSG, 2014 WL 690278, at *2 (N.D. Cal. Feb. 21, 2014) (citing *In re Grand Jury Investigation*, 974 F.2d at 1071); *see also Club Level, Inc. v. City of Wenatchee*, 618 Fed. Appx. 316, 319 (9th Cir. 2015) (affirming district court's determination that challenged privilege log satisfied Rule 26(b)(5) where privilege log "disclosed the nature of the correspondence, the date of sending, the sender and recipient(s), and a brief statement describing the subject of the content."). Accordingly, the Court **ORDERS** Meta to prepare and serve on Plaintiffs a privilege log for the redacted portions of the versions of the slide deck produced in response to this Order and the January 12 Order, and to serve that privilege log on Plaintiffs on or before June 5, 2026.

**CONCLUSION**

For all the reasons discussed herein, the Court **ORDERS** that the State AG's motion to compel an unredacted version of Document 4 is **DENIED** and Meta's motion for a protective order with regard to the redacted portions of Document 4 is **GRANTED**. In accordance with the discussion herein, the Court **ORDERS** Meta to produce the documents and serve the privilege log as directed herein by the deadlines noted above. Meta is further **ORDERED** to file a Notice of compliance with the document production and privilege log requirements set forth herein (and attach a copy of that privilege log) by June 8, 2026.

This Order was drafted specifically to avoid disclosure of the substance of any alleged attorney-client communications. The summaries and discussion of Document 4 herein are at a level of generality which would normally be found on a privilege log (identifying authors, recipients, dates, and summary of subject matter). Accordingly, the Court **ORDERS** that there is no waiver of any applicable attorney-client privilege by virtue of this Court's description or discussion of Document 4 in this Order. The Court further **ORDERS** that no Party to this MDL shall argue that anything in this Order supports a finding of a waiver of any applicable attorney-client privilege.

Because this Order discusses an internal Meta document and because of the Protective Order's confidentiality provisions, the Parties are further **ORDERED** to meet and confer promptly

United States District Court
Northern District of California

and jointly file a proposed redacted version of this Order for public filing.  That proposed public version of this Order **SHALL** be filed on or before May 26, 2026.

This **RESOLVES** Dkts. 2879 and 2881-1.

**IT IS SO ORDERED.**

Dated: May 18, 2026

PETER H. KANG
United States Magistrate Judge

United States District Court
Northern District of California

12