ASHLEY M. SIMONSEN (Bar No. 275203)
asimonsen@cov.com
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749

Paul W. Schmidt, pro hac vice
Timothy C. Hester, pro hac vice
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
pschmidt@cov.com
thester@cov.com

*Attorneys for Defendants Meta Platforms,*
*Inc. f/k/a Facebook, Inc. and Instagram, LLC*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047<br><br>Case Nos.:  4:22-md-03047-YGR-PHK<br>4:23-cv-05448-YGR |
| THIS DOCUMENT RELATES TO:<br><br>*People of the State of California, et al. v. Meta Platforms, Inc., et al.* | **META'S OPPOSITION TO STATE AGS' MOTION TO PRECLUDE (1) THREE META 30(B)(6) WITNESSES AND (2) TWO META FACT WITNESSES FROM TESTIFYING AT MDL AG TRIAL**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang<br><br>Date: May 27, 2026<br>Time: 1:00 PM |

The State Attorney General ("AG") Plaintiffs ask this Court to preclude (a) three Meta 30(b)(6) witnesses (Felicia Chen, Nicholas Wakefield, and Jessica Walton) and (b) two Meta fact witnesses (Kyle Jensen and Funda Kivran-Swaine) from testifying at the MDL AG trial, for the formalistic reason that those witnesses were not included on Meta's initial September 2025 witness list—a list that was exchanged *months* before AG-specific discovery had even closed in the MDL AG action, and nearly *a year* before the existing trial date. The AGs' motion should be denied.

Meta disclosed these five witnesses as trial witnesses to the AGs on April 24, 2026—the deadline set by the Court to exchange Preliminary Witness Lists for the MDL AG trial—nearly *four months* in advance of the August 18, 2026 trial start date. *See* ECF 3038-1 at 2, 4. Moreover, the AGs *already deposed* three of these individuals as 30(b)(6) witnesses; and Meta has agreed to confine the scope of those individuals' trial testimony to their 30(b)(6) topics. *See Corcoran v. CVS Pharmacy, Inc.*, 2021 WL 633809, at *7 (N.D. Cal. Feb. 18, 2021) (Gonzalez Rogers, J.) ("persons who have been designated to testify on behalf of the corporation may be examined on specifically articulated topics [at trial] whether the representative obtained the information by personal experience or upon investigation in their corporate capacity."). As for the remaining two witnesses, Mr. Jensen is responsive to expert opinions that the AGs disclosed *after* the September 2025 witness list deadline, and Meta will make him available for a deposition and produce his documents, removing any claim of prejudice relating to him. And Meta will withdraw the other fact witness, Ms. Kivran-Swaine, in order to narrow the issues before the Court.

## BACKGROUND

On September 24, 2025, the parties exchanged preliminary trial witness lists in both the MDL AG and School District ("SD") actions, primarily for the purpose of identifying any individuals not yet deposed whom the parties anticipated at that time calling at trial. *See* ECF 2274 at 2; ECF 2312; Declaration of Ashley Simonsen ("Simonsen Decl.") Exs. A–B. To the extent Meta (or any other Defendant) included on its lists individuals who were previously deposed only in their capacity as 30(b)(6) designees, Plaintiffs (including the AGs) agreed that "[t]o the extent [Meta] [could] confirm that these witnesses would testify at trial only within the scope of the topics in the Rule 30(b)(6) notice, Plaintiffs [would] not seek to re-depose them" in their personal capacity—and, by implication, would not object to

1

the witnesses' remaining on Meta's lists. ECF 2312 at 2; *see also* Simonsen Decl. Ex. C at 2 (reflecting agreement between SD Plaintiffs and Meta with respect to Dayna Geldwert, Meta's 30(b)(6) designee on SD topics); ECF 2327 (Kang, M.J.) at 5 (endorsing same agreement as to other Defendants). By contrast, to the extent Meta (or any other Defendant) wished to reserve the ability to question these witnesses at trial on other topics, they agreed to put them back up for further deposition. *See* ECF 2312 at 2; Simonsen Decl. Ex. D at 1 (reflecting Meta and AGs' agreement to a further 4.5-hour deposition of Allison Hartnett, Meta's 30(b)(6) designee on age-related topics).[1]

The next witness list exchange deadline in the MDL AG action (after the initial September 2025 exchange) was April 24, 2026—the deadline for the Parties to exchange Preliminary Witness Lists. *See* ECF 3003 at 2, *as ordered* ECF 3038-1. On April 24, 2026, Meta filed its Preliminary Witness List. ECF 2992. As relevant here, that list included three Meta employees who had previously served as 30(b)(6) designees in the MDL AG action: (1) Nicholas Wakefield, (2) Jessica Walton, and (3) Felicia Chen. *See id.* at 4, 7. Consistent with the approach taken earlier with respect to 30(b)(6) witnesses, Meta agreed to limit the scope of these witnesses' trial testimony, if any, to the topics on which they were designated as 30(b)(6) witnesses (or questioned in the deposition, if broader). Simonsen Decl. ¶ 9 & Ex. H at 4. Meta also produced to the AGs transcripts of depositions that were taken of Ms. Walton (in her personal capacity) and Ms. Chen (as a corporate representative) in related state-court AG actions. *Id*. Exs. E–G.

Meta's April 24, 2026 Preliminary Witness List also included Kyle Jensen, a Manager of Problem Integrity Operations at Meta who would testify about "Meta's U13 reporting and review policies and processes." ECF 2992 at 5. Meta added Mr. Jensen to its witness list to rebut certain expert testimony by Dr. Ryan Sheatsley, *see* Simonsen Decl. ¶ 16—one of two expert witnesses disclosed by the AGs in March 2026 as replacements for Dr. McDaniel, *see* ECF 2874 ¶¶ 4–6. Although Dr. McDaniel's opening report included similar expert testimony, that opening report was served in November 2025, *after* the initial September 2025 witness list exchange deadline. *See* ECF 2251 ¶ 10. Accordingly, when Meta served its

---

[1] By agreement of the Parties, Meta produced Ms. Hartnett's e-mails and Workchats on February 13, 2026, and the AGs are scheduled to depose her on June 8, 2026. Simonsen Decl. Ex. J–K.

2

initial witness list in September 2025, it was unaware of the need to include Mr. Jensen; nor did Meta fully appreciate that need  until after digesting Dr. Sheatsley's opening report, which was served on March 20, 2026. *See* ECF 2901 ¶ 13; Simonsen Decl. ¶ 17.  Meta will produce documents for Mr. Jensen—who has been on the litigation hold for this matter— by this Friday, May 22, and will make him available for deposition at the AGs' convenience in the nearly three months until the August 18, 2026 trial date.  *See* Simonsen Decl. ¶ 14 & Ex. M at 1.

Finally, Meta's April 24, 2026 witness list also included Funda Kivran-Swaine, a Director of Research at Meta who was one of the original MDL document custodians in this case.  *See* ECF 2992 at 6; Simonsen Decl. ¶ 20.  Ms. Kivran-Swaine was deposed in a related state-court action on April 25, 2025, and Meta reproduced a copy of her deposition transcript to the AGs shortly after disclosing her as a trial witness.  Simonsen Decl. ¶¶ 6–7 & Ex. F at 1.  On May 12, 2026, Meta offered to withdraw Ms. Kivran-Swaine as a trial witness if the AGs would agree not to strike Mr. Jensen.  *Id*. ¶ 9 & Ex. H at 1–2.  Although the AGs declined that offer, Meta will withdraw her as a witness to narrow the issues before the Court.

On May 19, 2026,  Meta also offered to withdraw Ms. Chen as a trial witness if the AGs would agree not to strike Ms. Walton or Mr. Wakefield.  Alternatively, Meta offered to withdraw both Ms. Chen and Ms. Walton if the AGs would agree that both sides could designate freely from a different witness's deposition testimony at trial.  *Id*. ¶ 14 & Ex. M at 1.  Meta urged the AGs to postpone this briefing by a day to see if the Parties could reach resolution on these terms, but the AGs insisted on moving forward before the meet-and-confers were complete.  *Id*. ¶ 21.

The State AGs now ask this Court to strike all of the aforementioned witnesses from Meta's trial witness list.

## **ARGUMENT**

The State AGs are not entitled to the drastic remedy of striking the Meta witnesses at issue.  This Court has previously stated, pursuant to Rule 37(c), that an allegedly late witness disclosure will be permitted if it is "substantially justified or harmless."  ECF 2348 at 4–5, 9.  Here, including the newly-added witnesses is harmless.  The AGs have already deposed three of them, Meta is withdrawing Ms.

META'S OPPOSITION TO STATE AGS' MOTION TO PRECLUDE (1) THREE META 30(B)(6) WITNESSES AND (2) TWO META FACT WITNESSES FROM TESTIFYING AT MDL AG TRIAL

Kivran-Swaine (and also offered to withdraw Ms. Chen), and the AGs have sufficient time, in advance of the trial, to depose the fifth witness, Mr. Jensen, after reviewing his documents.

**I.    The Court should not strike the 30(b)(6) designees—Mr. Wakefield, Ms. Walton, and Ms. Chen—from Meta's witness list; nor should their trial testimony be limited to matters for which they have direct knowledge.**

Meta's decision to include on its Preliminary Witness List Mr. Wakefield, Ms. Walton, and Ms. Chen—three of Meta's prior 30(b)(6) witnesses—is both justified and harmless. These witnesses were deposed as 30(b)(6) witnesses "and thus, during months earlier as part of the discovery process, Plaintiffs knew that each witness had knowledge of information that might be used by [Meta] to support [its] defenses." ECF 2327 (Kang, M.J.) at 6 (rejecting argument that 30(b)(6) designees added to other Defendants' preliminary witness lists should have been disclosed earlier via Rule 26 disclosures). Accordingly, any claim by the AGs "that they were surprised to see these 30(b)(6) designees on the [April 24, 2026] Preliminary Trial Witness List[] for [Meta] rings hollow." *Id*.; *see also Shaffstall v. Old Dominion Freight Line, Inc.*, 2021 WL 1401572, at *2 (W.D. Wash. Apr. 14, 2021) (a party "should have known that" the opposing side "might call" its 30(b)(6) "witness at trial the moment" that side "identified [her] as its corporate representative[s] and offered to make [her] available to testify at the 30(b)(6) deposition"). The AGs chose the topics on which these witnesses would testify and had a full and fair opportunity to depose each of them—which they took. Thus, the AGs "either knew or should have known that" these witnesses "might testify at trial," especially "regarding the topics in 30(b)(6) notice" that those witnesses were designated to cover. *Shaffstall*, 2021 WL 1401572, at *2.

The AGs make three principal arguments for seeking to exclude these three witnesses. *First*, the AGs claim that they had insufficient time to depose these individuals during their 30(b)(6) deposition last Spring. To the extent that is true, it is a problem of their own making. Indeed, far from being constrained in terms of timing, Meta agreed to give the AGs *17 hours* for their single 30(b)(6) deposition notice—10 more hours than the default 7-hour deposition limit—and they were free to allocate those hours across all designees as they saw fit. *See* ECF 2024 at 2. In any event, if this is the AGs' chief complaint, it can and should be addressed by taking supplemental half-day depositions of these witnesses (who could then also

testify at trial beyond the scope of their 30(b)(6) topics)—just as the Parties agreed with respect to Alison Hartnett, *see* Simonsen Decl. Ex. D at 1—not striking them from Meta's trial witness list. *See* ECF 2348 (Kang, M.J.) at 7 (allowing for a deposition "can cure [any] prejudice suffered by the opposing party (rather than striking the witness entirely)").

*Second*, the AGs argue that the scope of topics on which these individuals were designated is too broad for the AGs to reasonably be on notice of (or have had the chance to explore) the full scope of their potential trial testimony. Again, that is a problem of the AGs' own making. *They* drafted the 30(b)(6) topics. They are also the ones who, despite months of negotiations in which Meta repeatedly sought narrowing of the topics, refused to meaningfully narrow them. *See* Simonsen Decl. ¶ 19; ECF No. 2218 at 8; *see also* ECF 2441 (Kang, M.J.) at 7 (finding that one of the AGs' 30(b)(6) topics "was . . . broadly phrased" and thus failed to "provide[] reasonable notice" of the specific questions the AGs ultimately posed). Moreover, there is always a possibility with any witness that a party may not ask all of the questions it might later wish it had; that is not grounds for excluding that witness at trial. And again, to the extent the Court believes there is any risk of prejudice to the AGs, it should direct the Parties to confer over an appropriate amount of supplemental deposition time for each witness, *see* ECF 2348 (Kang, M.J.) at 7—something Meta would readily facilitate.

*Third*, the AGs argue that if Meta calls its 30(b)(6) witnesses to testify at trial, those witnesses cannot provide testimony that exceeds their personal knowledge. But, as this Court previously explained, while "the case authority is split on . . . whether a corporate designee may testify concerning matters outside of his or her personal knowledge at trial," a "corporation is deemed to be a 'person' and therefore can only testify through the embodiment of individuals." *Corcoran*, 2021 WL 633809, at *7. Therefore, under this Court's precedent, "persons who have been designated to testify on behalf of the corporation may be examined on specifically articulated topics whether the representative obtained the information by personal experience or upon investigation in their corporate capacity." *Id*. Indeed, Plaintiffs readily agreed last Fall to allow all of Defendants' corporate designees on school district topics testify at trial without further deposition—and without imposing any "personal knowledge" limitation—so long as Defendants agreed to limit the scope of the witnesses' testimony to their 30(b)(6) topics. *See* ECF 2312

5

at 2–3; Simonsen Decl. ¶ 4 & Ex. C at 2; *see also* ECF 2327 (Kang, M.J.) at 5 (endorsing notion that Defendants may "rely on [their] witness's Rule 30(b)(6) testimony to support their respective defenses" at trial without the need for further depositions). The AGs agreed to the same basic framework for any such Meta witnesses. *See* ECF 2312 at 2.

Though the Ninth Circuit has not expressly addressed this issue, the Fifth Circuit has, and it reached the same conclusion this Court did in *Corcoran*—namely, that "if a rule 30(b)(6) witness is made available at trial, he should be allowed to testify as to matters within corporate knowledge to which he testified in deposition." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 434 (5th Cir. 2006). As the Fifth Circuit explained, when a 30(b)(6) witness testifies at trial, she "does not testify as to [her] personal knowledge or perceptions," but rather "testifies 'vicariously,' for the corporation, as to *its* knowledge and perceptions." *Brazos River Auth.*, 469 F.3d at 434. So "if a certain fact is within the collective knowledge or subjective belief of [the relevant corporation], [the 30(b)(6) designee] should be . . . allowed to testify as to it, even if it is not within [her] direct personal knowledge, provided the testimony is otherwise permissible lay testimony." *Id.* Multiple other courts have agreed.[2]

Furthermore, the AGs' position—that a 30(b)(6) witness testifying at trial is limited to her direct knowledge—would create practical issues, "forc[ing] a corporation to take a position on multiple issues through a Rule 30(b)(6) deposition, only to be left with the daunting task of identifying which individual employees and former employees will have to be called at trial to establish the same facts." *Russell*, 2023 WL 2628699, at \*13 (quoting *Sara Lee Corp. v. Kraft Foods, Inc.*, 276 F.R.D. 500, 503 (N.D. Ill. 2001)). This case exemplifies that concern. Mr. Wakefield, for example, is a Vice President at Meta who oversees the organization that supports data engineering and data science as it relates to shared systems used across

---

[2] See, *e.g., Russell v. Walmart Inc.*, 2023 WL 2628699, at \*13 (C.D. Cal. Jan. 12, 2023) ("The Court acknowledges the split in authority as to whether a corporate witness must have personal knowledge of the topics he or she will testify to at trial" but "the Court notes that it is not inclined to strictly adhere to the personal knowledge requirement when it comes to Walmart's corporate witnesses."); *Univ. Healthsystem Consortium v. UnitedHealth Grp., Inc.*, 68 F. Supp. 3d 917, 921 (N.D. Ill. 2014) ("courts have held that . . . a Rule 30(b)(6) witness may testify both in a deposition and at trial to matters as to which she lacks personal knowledge, notwithstanding the requirements of Federal Rule of Evidence 602").

META'S OPPOSITION TO STATE AGS' MOTION TO PRECLUDE (1) THREE META 30(B)(6) WITNESSES AND (2) TWO META FACT WITNESSES FROM TESTIFYING AT MDL AG TRIAL

Meta, including certain data at issue in this litigation. During his 30(b)(6) deposition, Mr. Wakefield was able to (and did) provide testimony—within his personal knowledge—concerning how that data is maintained in the ordinary course of business, the meaning of various metrics maintained by Meta, and other substantive information about the data. Simonsen Decl. Ex. I at 18:16–19:7; 44:6–45:15; 132:19–133:17. But he did not have preexisting personal knowledge about how the data was collected and produced; rather, he gained personal knowledge as he prepared for his 30(b)(6) deposition, based on consulting with data scientist and engineer colleagues within Meta's eDiscovery team. *Id*. Ex. I at 22:9–23:4; 99:10–100:22, 103:22–24.

If Mr. Wakefield were not allowed to provide that type of testimony at trial, Meta would potentially be forced to call an additional witness solely to authenticate the data sets at issue, even though Mr. Wakefield acquired the knowledge necessary to authenticate the data set—creating inefficiencies at trial that were absent during the 30(b)(6) deposition. Thus, both applicable case law and practical considerations support Meta's position here. Reinforcing the wisdom of that approach, Breathitt's counsel agreed that Mr. Wakefield could testify at the *Breathitt* trial about data on which he was questioned during his 30(b)(6) deposition. *See* Simonsen Decl. ¶ 15 & Ex. N.

During the Parties' conferrals, the AGs referenced *Tijerina v. Alaska Airlines, Inc.*, where the Southern District of California implied that a 30(b)(6) designee may generally "provide testimony not based on personal knowledge" *only* if she is called to testify at trial by "the *opposing side[]*," in part because that party can rely on F.R.C.P. 32(a)(3) (which allows an "adverse party" to use a 30(b)(6) *transcript* at trial in certain circumstances) and the party-admission hearsay exception. 2024 WL 270090, at *2 (S.D. Cal. Jan. 24, 2024). But respectfully, not only did that decision mistakenly rely on a rule governing the use of 30(b)(6) *transcripts*—which has no bearing on *trial testimony* by a 30(b)(6) witness—it also misunderstands why other courts (including this Court) have held that 30(b)(6) witnesses can provide trial testimony going beyond their pre-existing direct knowledge. As explained above, the basis for those courts' holding that 30(b)(6) witnesses are not subject to a personal knowledge requirement was *not* that the witnesses' testimony qualifies for some hearsay exception available only to party-opponents; rather, they held that those witnesses "testif[y] 'vicariously'" for the corporation, and thus they

7

can testify about any "fact . . . within the collective knowledge or subjective belief" of the corporation without creating any hearsay problem at all.[3] *Supra* at 8. That justification for relieving 30(b)(6) trial witnesses of any personal knowledge requirement applies regardless of which side calls those witnesses to testify at trial. Thus, in *Russell*, for example, the Central District of California explained that it was "not inclined to strictly adhere to the personal knowledge requirement when it [came] to a Walmart[] corporate witness[]" whom *Walmart* planned to introduce as a trial witness. 2023 WL 2628699, at *13.

For all of these reasons, the three 30(b)(6) designees at issue should be allowed to provide testimony at trial that goes beyond their direct knowledge, so long as it falls within the scope of their 30(b)(6) topics. To the extent the Court disagrees, straying from its decision in *Corcoran*, Meta respectfully requests that Meta be permitted to identify new witnesses who could provide, based on direct knowledge, whatever limited testimony those three witnesses would properly have provided if not for a personal-knowledge requirement.[4] Meta can coordinate with the AGs over any discovery they may reasonably need from those new witnesses.

## II. The Court should not strike Mr. Jensen from Meta's witness list because there is ample time remaining to trial for the AGs to review his documents and take his deposition.

The AGs' only basis for moving to strike Mr. Jensen and Ms. Kivran-Swain is that they were allegedly disclosed too late. This dispute is moot as to Ms. Kivran-Swaine because Meta will withdraw her from its witness list. As to Mr. Jensen, the expert opinions for which Meta disclosed Mr. Jensen as a

---

[3] *Tijerina* cites to *Brazos*—the Fifth Circuit case Meta relies on here—to show that "FRCP 30(b)(6) designees may not . . . offer testimony at trial that consists of 'hearsay not falling within one of the authorized exceptions.'" 2024 WL 270090, at *2 (*quoting Brazos*, 469 F.3d at 435). *Tijerina*, however, mischaracterizes *Brazos*. In *Brazos*, two separate corporate entities were named as defendants, and in the section of *Brazos* that *Tijerina* quotes from, the Fifth Circuit was simply explaining that if the 30(b)(6) designee of one corporate defendant wanted to testify about a statement made by the *other* corporate defendant, the testimony would have to "fall[] within one of the authorized [hearsay] exceptions." *Brazos*, 469 F.3d at 435. *Brazos* made clear, however, that when it came to the corporate defendant that the designee represented, he could freely testify on the topics covered during his deposition "based on the collective knowledge of [the defendant's] personnel." *Id*. at 434.

[4] For Mr. Wakefield, for example, this would likely be limited to the data scientist who ran the queries needed to retrieve the data in the format specified by the AGs, for which Mr. Wakefield can otherwise establish the elements of the business records hearsay exception.

META'S OPPOSITION TO STATE AGS' MOTION TO PRECLUDE (1) THREE META 30(B)(6) WITNESSES AND (2) TWO META FACT WITNESSES FROM TESTIFYING AT MDL AG TRIAL

rebuttal fact witness were not disclosed by the AGs until *after* the initial September 2025 witness list exchange. Moreover, the AGs later replaced the expert who had initially disclosed those opinions in November 2025 (Dr. McDaniel) with two different experts whose opening reports were not served until March 2026. *See* ECF 2251 at 4; ECF 2874 ¶¶ 4–6. Meta disclosed Mr. Jensen on April 24, 2026—approximately one month after those final reports were served and at the next witness disclosure deadline set by the Court. *See* ECF 3003 at 2, *as entered* ECF 3038-1 at 2.

What is more, Meta does not intend to call Mr. Jensen at trial *unless* the AGs proffer Dr. Sheatsley on issues squarely foreclosed by Section 230—namely, the adequacy of Meta's age verification efforts. *See Doe (K.B.) v. Backpage.com, LLC*, 768 F. Supp. 3d 1057, 1065 (N.D. Cal. 2025) (Section 230 bars claim premised on the "failure to include adequate age and identity verification measures."). For instance, Dr. Sheatsley cannot opine that "Meta could have disabled … additional underage accounts," Trial Rep. of Dr. Ryan Sheatsley (Mar. 20, 2026) ¶ 8, because Meta's age verification processes are "not independent" of its role as a "facilitator and publisher of third-party content," *Doe v. Grindr Inc.*, 128 F.4th 1148, 1153 (9th Cir. 2025) (holding Section 230 bars claims that an app should use "alternative designs" to protect minor users).[5] For these reasons, Meta offered to withdraw Mr. Jensen from its witness list if the AGs would commit not to offer Dr. Sheatsley on such topics, but they declined. *See* Simonsen Decl. ¶ 18 & Ex. H at 2.

More to the point, a party opposing the addition of a new trial witness to the other side's list "is expected to demonstrate why, in the exercise of good faith and the mandates of the [FRCP] for efficient preparation of cases before trial, that opposing Party could not agree to such discovery [into that witness] for reasons other than simply that the request is after the Fact Discovery Cutoff date," ECF 606 at 8—or,

---

[5] The Court denied Meta's motion to dismiss the AGs' claims insofar as they are premised on the purported absence of meaningful age verification "features." ECF 430 at 14-15. That ruling predated *Backpage.com* and *Grindr*. In any event, the Court should exclude under Section 230 any *evidence* the AGs seek to offer for the purpose of second-guessing the adequacy of Meta's content moderation efforts—including Meta's efforts to moderate (i.e., take down) under-13 accounts (which constitute third-party content for purposes of Section 230). *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1103 (9th Cir. 2009) (claim for failure to "remov[e] … indecent profiles" "necessarily involves treating [defendant] as a publisher of the content it failed to remove").

META'S OPPOSITION TO STATE AGS' MOTION TO PRECLUDE (1) THREE META 30(B)(6) WITNESSES AND (2) TWO META FACT WITNESSES FROM TESTIFYING AT MDL AG TRIAL

as here, after the initial witness list exchange.  As this Court has explained, "the cure to whatever level of harm or prejudice flows from the late identification of [a witness] is not to strike him from Plaintiffs' trial witness lists," especially when "there are months remaining before" the relevant trial.  ECF 2348 (Kang, M.J.) at 6–7.  Notably, when the AGs sought Meta's agreement and the Court's approval in March to replace one of their experts with two new witnesses, they readily stipulated that there was

> sufficient time to permit the State AGs to serve opening reports from Dr. Sheatsley and Mr. Estes, to permit Meta to serve responsive reports from its previously disclosed experts . . . [and] to permit the State AGs to serve reply reports from Dr. Sheatsley and Mr. Estes, to complete depositions of the relevant experts, and to brief Rule 702 motions (if any) as to the relevant experts.

ECF 2901 ¶ 6.  That position is irreconcilable with their position now, when three months still remain until the AG trial.  Given Meta "does not object to the [AGs] taking the deposition of [Mr. Jensen]," the allegedly "late disclosure [is] harmless for purposes of Rule 37(c)(1)."  ECF 2348 at 7–8.

## CONCLUSION

For the foregoing reasons, the AGs' motion should be denied.

DATED:  May 20, 2026

Respectfully submitted,

By:  _/s/ Ashley M. Simonsen_

**COVINGTON & BURLING LLP**

ASHLEY M. SIMONSEN (Bar No. 275203)
asimonsen@cov.com
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749

Paul W. Schmidt, pro hac vice
Timothy C. Hester, pro hac vice
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

pschmidt@cov.com
thester@cov.com

*Attorneys for Defendants Meta Platforms, Inc.
f/k/a Facebook, Inc. and Instagram, LLC*

11