[*Submitting Counsel on Signature Page*]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>_____<br><br>THIS DOCUMENT RELATES TO:<br><br>4:23-cv-05448 | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR<br><br>**STATE ATTORNEYS GENERAL'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br><br>Magistrate Judge: Hon. Peter H. Kang |

Pursuant to Federal Rule of Civil Procedure 72(a), 28 U.S.C. § 636(b)(1)(A), and Civil Local Rule 72, Plaintiff State Attorneys General respectfully submit this Motion for Relief from the Nondispositive Pretrial Orders of the Magistrate Judge Regarding Crime-Fraud (ECF No. 3053 & 2629, hereafter "the Orders"). The Orders are clearly erroneous and contrary to law because they (1) apply an erroneous legal standard requiring "irreversible or unreviewable alteration of evidence" for the crime-fraud exception, and ignore Ninth Circuit law that intent to conceal evidence is sufficient for the exception to apply, and (2) disregard evidence showing Meta's intent to conceal material evidence. This Court should find the crime-fraud doctrine applies because after this MDL was commenced, Meta utilized attorneys to edit internal documents to remove evidence that Meta knew its platforms were dangerous for youth to reduce "litigation risk" and avoid creating "a paper trail tracing this back to information visually presented to leaders that may have to testify." (Ex E, line 8; Ex A:8).

This Court should overrule the Magistrate's order denying the State AGs motion to compel unredacted versions of Document 4 and all versions of the related PowerPoint deck, and overrule the order granting Meta a protective order as to the redacted portions of those same documents.

## I.    Legal Standard

This Court may "modify or set aside any part" of a nondispositive order of the magistrate that "is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

"A lawyer shall not: (a) . . . unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act[.]"). *See* Cal. Prof. Conduct Rule 3.4(a). The California Penal Code also prohibits attempts to conceal evidence in investigations: "A person who, knowing that any . . . thing, is about to be produced in evidence upon a trial, inquiry, or investigation… willfully destroys, erases, or conceals the same, with the intent to prevent it or its content from being produced, is guilty of a misdemeanor." *See, e.g.*, Cal. Penal Code § 135.

In the Ninth Circuit the crime-fraud exception applies where a preponderance of evidence shows: (1) the client sought or used legal advice to further a crime or fraud, and (2) the communications "sought are 'sufficiently related to' and were made '*in furtherance of* [the] intended, or present, continuing

illegality.'" *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007) (emphasis in original). "[I]t is the client's knowledge and intent that are relevant. The planned crime or fraud need not have succeeded for the exception to apply. The client's abuse of the attorney-client relationship, not his or her successful criminal or fraudulent act, vitiates the privilege." *Id*. (citations omitted).

## II.   The Magistrate Applied an Erroneous Standard of "Irreversible or Unreviewable Alteration of Evidence"

Ninth Circuit case law is clear that a crime-fraud attempt to conceal evidence "need not have succeeded for the exception to apply." *Id*. However, the Magistrate erroneously required Plaintiffs to demonstrate "irreversible or unreviewable alteration of evidence" to demonstrate crime-fraud. (ECF 3053 at 9:3-6). It appears this erroneous standard resulted from a misreading of a district court case out of Texas: *Tessera, Inc. v. Micron Tech., Inc.*, 2006 WL 8441639, at *2 (E.D. Tex. June 23, 2006). *Tessera* is not binding in this Circuit, applied a different legal standard than the intent-based inquiry used by the Ninth Circuit, and is factually distinguishable since *Tessera* had no attempted concealment of evidence.

In *Tessera*, defendant Micron published a technical paper at a conference. Subsequently alterations were made "following an email exchange wherein the authors were supposedly advised to remove [certain references] in light of this litigation." *Id*. at *1. Both the original and altered version of the paper were produced in discovery before the dispute reached that court. *Id*. at *2. The *Tessera* court applied a very different legal standard than the intent-based standard of the Ninth Circuit because it ignored arguments about the intent of the changes, and it required successful destruction or alteration of evidence to demonstrate crime-fraud. *Id*. at *2 ("[Tessera] may argue whatever it pleases concerning the motivation behind the alterations" and "spoliation… requires that Micron engaged in the destruction or significant and meaningful alteration of a document or instrument.").

## III.   The Magistrate Ignored Evidence of Meta's Intent to Conceal Evidence

Meta used attorney advice to conceal evidence showing that it knew its platforms were harmful to children and that its published rates of harmful content were inaccurate, misleading, and deceptive. A 10-hour chat among several Meta employees (described as Document 4 in the crime-fraud litigation, Ex

A) discussed attorney comments and edits to an internal PowerPoint slide deck entitled: "Leading on IG Teen Protections." (Ex B, C, D). Exhibit D reflects the July 7, 2023 version incorporating those attorney edits. Exhibits B and C (July 5 and 6 versions, respectively) were concealed from plaintiffs and produced only after the Magistrate's crime-fraud order in January 2026. Although these documents most clearly illustrate Meta's crime-fraud abuse of the attorney-client privilege to conceal evidence, the record in discovery indicates that Meta broadly adopted a practice of routing documents through attorneys for edits before producing only the attorney-edited versions in discovery.

Over the course of the 10-hour chat, participants grew increasingly alarmed by the scope and degree of the attorneys' edits and comments. The discussion begins with the team noting that the deck is nearly ready for "shipping off to IG Leads" but attorneys quickly "start leaving more legal comments." (Ex A, 1). Soon, participants express frustration that "it's a little annoying having three different lawyers" editing the deck and the chat participants question whether the attorneys' input constitute orders or "can be considered suggestions." *Id*. at 4-5. The number of attorneys grows to five; eventually there's "a million ppl leaving feedback" with "more lawyers" contributing edits that "dilute" the narrative. *Id*. at 5.

Side by side comparison of Slide 5 in the July 6 PowerPoint (Ex C) with the July 7 version (Ex D) shows the advice from lawyers reduced "litigation risk" in this case by removing key admissions of Meta's knowledge such as: "Teens who spend more than 3 hours/day on social media face double the risk of poor mental health outcomes" and "Scientific evidence suggests… excessive and problematic social media use are primary areas of concern." On Slide 22 the attorney advice reduced "litigation risk" by deleting the admission that Meta's published prevalence rates for harmful content are shockingly misleading because Suicide/Self-Injury and Eating Disorder ("SSI/ED") content has a "disproportionately large teen audience" that leads to them being exposed to that harmful content 2.5x as much as adults. Similar admissions of deceptive statistics were removed for bullying/harassment and other violative content on Slide 19 and 21.

The redaction of attorney advice and the employees' responses to that advice has made it impossible for the State AGs to effectively cross-examine witnesses about their - and Meta's - knowledge and intent. The pattern of edits reflected in the drafts leaves only two plausible explanations

3

for the attorneys' involvement in revising a PowerPoint intended to brief the head of Instagram on a "vision for teen protections on IG": either 1) to conceal Meta's knowledge, deceptions and misrepresentations in this MDL and related litigation, or 2) to guard against reputational harm in the event the slide deck leaked. The latter is implausible (and would not constitute business, not legal advice); Meta's own employees described the intended audience of "IG Leadership" as "low-risk" to leak the deck. (Ex A:4).

The edits instead strip the slide deck of its core business purpose. Employees repeatedly noted that the attorney-driven revisions were "intentionally omitting stats that could help [IG leadership] properly assess the situation" and making it "increasingly hard" for IG leadership "to understand the severity of each space." (Ex A:7). The attorney edits were so severe and extensive that one employee questioned whether there was "no point" in taking the deck to leadership at all, asking "how can we make product decisions if we are omitting information from strategies we show them." (Ex A:5, 7). Meta's own privilege log admits and reinforces the only reasonable conclusion: the redactions were made to reduce "litigation risk," not to mitigate leakage concerns (Ex E, line 8). In short, the attorney edits were not meant to advance legitimate business objectives—they were meant to hide damaging evidence.

This evidence demonstrates that Meta's attorney advice was intended to conceal evidence of Meta's knowledge of harms to teens on its platforms – making this case factually distinguishable from *Tessera*. In *Tessera,* the defendant produced both original and altered versions of the paper in discovery, so the legal advice there did not result in the concealment of evidence. Here, by contrast, discovery closed in April 2025, yet Meta did not produce even the attorney-scrubbed July 7 version of "Leading on IG Teen Protections" until December 2025. And Meta produced the prior versions in Ex B and C only because the Magistrate ordered production under the crime-fraud order in January 2026. Moreover, Meta has not produced prior versions of the multitude of other documents that were undoubtedly modified by attorneys to reduce "litigation risk." Meta therefore succeeded in concealing this evidence throughout discovery and revealed it only when compelled by crime-fraud proceedings. Even now, Meta continues to withhold critical information about its knowledge and intent behind the extensive privilege redactions implicated by the same crime-fraud rationale.

4

**IV.     The Court Should Find Crime-Fraud Doctrine Applies**

The Court should find that Meta used attorney advice to conceal evidence and that Meta "need not have succeeded for the [crime-fraud] exception to apply." *In re Napster*, 479 F.3d at 1090. Only such a ruling will allow the State AGs to effectively cross-examine witnesses about Meta's knowledge and deceptive intent. One participant in the Exhibit A chat is a disclosed witness, as is Mr. Mosseri, the recipient of the slide deck. The Court should also deny Meta's request for a protective order over the existing redactions. Although Meta's use of attorney advice to conceal evidence appears to extend far beyond the documents at issue in this motion, the State AGs are not seeking further discovery and are prepared to proceed to trial as scheduled.

In the alternative, the Court should order the redactions removed from these documents because at most, they represent business advice about mitigating reputational risk to Meta if the PowerPoint was leaked. There is no legitimate basis for these redactions to be considered a proper invocation of attorney-client privilege, and throughout the two joint letter briefs on this issue Meta has not offered one. Meta's abuse of the attorney-client privilege strikes to the core of fairness in the discovery process. By utilizing attorneys to scrub documents of information which posed "litigation risks" and then only producing those scrubbed versions of the documents, Meta has effectively replaced the truth-seeking process of discovery with a process where Meta's attorneys define what the truth is. The Court should hold, in accordance with Ninth Circuit precedent, that Meta's attempt to conceal evidence via attorney advice is not privileged. It is a crime and a fraud on the Court.

DATE: June 1, 2026

Respectfully submitted,

**PHILIP J. WEISER**                          **ROB BONTA**
Attorney General                                  Attorney General
State of Colorado                                 State of California

 /s/ Jason Slothouber                          /s/ Megan O'Neill
Jason Slothouber, CO Reg. No. 43496, pro hac      Nicklas A. Akers (CA SBN 211222)
vice                                              Senior Assistant Attorney General
Chief Trial Counsel                               Bernard Eskandari (SBN 244395)

Krista Batchelder, CO Reg. No. 45066,
pro hac vice
Deputy Solicitor General
Lauren M. Dickey, CO Reg. No. 45773
First Assistant Attorney General
Elizabeth Orem, CO Reg. No. 58309
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 9th Floor
Denver, CO 80203
Phone: (720) 508-6651
Krista.Batchelder@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel. Philip J. Weiser, Attorney General*

Emily Kalanithi (SBN 256972)
Supervising Deputy Attorneys General
Nayha Arora (CA SBN 350467)
David Beglin (CA SBN 356401)
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer
(CA SBN 336428)
Brendan Ruddy (CA SBN 297896)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Megan.oneill@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*


**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

*/s/ Philip Heleringer*
Philip Heleringer (KY Bar No. 96748),
*pro hac vice*
J. Christian Lewis (KY Bar No. 87109),
Zachary Richards (KY Bar No. 99209),
Daniel I. Keiser (KY Bar No. 100264),
Matthew Cocanougher (KY Bar No. 94292),
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
Philip.Heleringer@ky.gov
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

**JENNIFER DAVENPORT**
Attorney General
State of New Jersey

*/s/ Kashif Chand*
Kashif T. Chand (NJ Bar No. 016752008),
pro hac vice
Assistant Attorney General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov

*Attorney for Plaintiffs Jennifer Davenport, Attorney General for the State of New Jersey, and Jeremy E. Hollander, Acting Director of the New Jersey Division of Consumer Affairs*

**<u>SIGNATURE CERTIFICATION</u>**

Under Civ. L.R. 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in this filing's content and have authorized this filing.

DATED: 06/01/2026

*/s/ Jason Slothouber*

Jason Slothouber

*Attorney for Plaintiff State of Colorado, ex rel. Philip J. Weiser, Attorney General*

STATE ATTORNEYS GENERAL'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE
4:22-md-03047-YGR-PHK; 4:23-CV-05448-YGR