**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/ PERSONAL INJURY PRODUCTS LITIGATION** | **Case No. 22-md-3047-YGR** <br> **MDL No. 3047** |
| **This Document Relates to:** <br><br> James Sullivan, Jr. <br><br> Plaintiff, <br><br> v. <br><br> Meta Platforms, Inc., et al., <br><br> Defendants. | Case No. 2:25-cv-00456-KBH, (E.D. Pa.) |

**BRIEF IN SUPPORT OF MOTION TO DISMISS DEFENDANTS HOPKINS FORD, INC. D/B/A JOHN KENNEDY FORD OF JENKINTOWN (INCORRECTLY NAMED AS JOHN KENNEDY FORD OF JENKINTOWN AND HOPKINS FORD, INC.); KENNEDY REAL ESTATE MANAGEMENT ASSOCIATES, LLC (INCORRECTLY NAMED AS KENNEDY REAL ESTATE ASSOCIATES MANAGEMENT, LLC); AND KENNEDY <u>REAL ESTATE ASSOCIATES, LP</u>**

Defendants Hopkins Ford, Inc. d/b/a John Kennedy Ford of Jenkintown (incorrectly named as John Kennedy Ford of Jenkintown and Hopkins Ford, Inc.); Kennedy Real Estate Management Associates, LLC (incorrectly named as Kennedy Real Estate Associates Management, LLC); and Kennedy Real Estate Associates, LP, by and through their attorneys, Rawle & Henderson LLP, hereby file this Motion to Dismiss.

Defendants move to dismiss the cause of action against Defendants Hopkins Ford, Inc. d/b/a John Kennedy Ford of Jenkintown (incorrectly named as John Kennedy Ford of Jenkintown and Hopkins Ford, Inc.); Kennedy Real Estate Management Associates, LLC (incorrectly named as Kennedy Real Estate Associates Management, LLC); and Kennedy Real Estate Associates, LP,

under Rule 12(b)(6) of the various claims asserted against Defendants  Hopkins Ford, Inc. d/b/a John Kennedy Ford of Jenkintown (incorrectly named as John Kennedy Ford of Jenkintown and Hopkins Ford, Inc.); Kennedy Real Estate Management Associates, LLC (incorrectly named as Kennedy Real Estate Associates Management, LLC); and Kennedy Real Estate Associates, LP.

## I.    BACKGROUND

### a.  Procedural History

Plaintiff James Sullivan, Jr., Administrator of the Estate of John Michael Sullivan ("Decedent"), initiated the instant litigation via the filing of a Complaint in the Pennsylvania Court of Common Pleas of Philadelphia County on December 23, 2024, stemming from the death of Plaintiff's Decedent on January 4, 2023. See Complaint, attached as Ex. A.

Plaintiff asserted various causes of action against three categories of defendants. As to the "SEPTA Defendants," Plaintiff asserted claims sounding in negligence, recklessness and willful and wanton conduct (Count IV). See Ex. A, Compl. at ¶¶ 130-133, 41. He asserted claims against Meta Platforms, Inc., f/k/a Facebook, Inc., Facebook Holdings, LLC, Facebook Operations, LLC, Facebooks Payments, Inc., Facebook Technologies, LLC, Instagram, LLC ("Meta Defendants") and SNAP Inc. (erroneously sued as "SNAP, Inc.") (together "Social Media Defendants")— sounding in negligence (Count I), strict products liability (Count II), and breach of warranty (Count III). Id. at ¶¶ 107-129. Finally, Plaintiff asserted claims against Bryner Chevrolet, Inc., d/b/a Bryner Chevrolet, DBP Partners, LP., DB Pete Inc., John Doe Inc., 5-10, John Kennedy Ford of Jenkintown, Hopkins Ford, Inc., Kennedy Real Estate Associates, LP, Kennedy Real Estate Management Associates, LLC, and John Doe Corp 5-10 (collectively "Premises Liability Defendants")—sounding in negligence, recklessness, and willful and wanton conduct (Count V). Id. at ¶¶ 134-139, 42. The Complaint also asserts two counts against all defendants for wrongful death (Count VI) and survival (Count VII). Id.

at ¶¶ 50-58. Plaintiff seeks punitive damages against the Social Media Defendants only. Id. at "wherefore" clauses.

On January 27, 2025, the Meta Defendants removed the matter to the United States District Court for the Eastern District of Pennsylvania. See EDPA Transferor Ct. Docket, ECF No. 1 (Notice of Removal). Therein, the Meta Defendants argued that the SEPTA Defendants and Premises Liability Defendants (citizens of Pennsylvania) should be ignored for purposes of diversity jurisdiction because they were improperly joined, and alternatively that these defendants should be ignored because they should be severed under Federal Rule of Civil Procedure 21. Id. Plaintiff filed a Motion to Remand on January 31, 2025, id. at ECF No. 9, which the Meta Defendants opposed on February 14, 2025. Id. at ECF No. 23.  Plaintiff's Complaint is mis-numbered at various paragraphs starting after ¶ 133, with the pertinent paragraphs in Count IV, for example, starting at ¶ 130 and running though ¶ 133, before ending with the paragraph ¶ 41.

On February 24, 2025, while the Motion to Remand was pending, the Meta Defendants filed a Motion to Stay Proceedings Pending Likely Transfer to Multidistrict Litigation, which Plaintiff opposed on February 26, 2025. Id. at ECF Nos. 26 and 29.[2] The motion to stay proceedings was granted by order entered May 29, 2025. Id. at ECF No. 34. The Judicial Panel on Multidistrict Litigation ("JPML") transferred the action to this Court by order entered June 2, 2025. See MDL Docket, EFC No. 525. Plaintiff's Motion to Remand remains outstanding and subject to disposition by "the transferee judge." Id. at p. 3.

### b.  Pertinent Allegations

The majority of the factual averments set forth in the Complaint center on the Social Media Defendants, and concern alleged design defects in these services. Ex. A, Compl. at ¶¶ 107-129. At the time of his death, Decedent was a college student at Kutztown University. Id. at ¶ 72. Plaintiff

alleges that Decedent used the Social Media Defendants' services "for many years since his early adolescent age." Id. at ¶¶ 81, 83. Plaintiff further alleges that in the days immediately preceding Decedent's death, he was exposed to harm on these services—namely "sextortion"—due to the criminal acts of a Nigerian criminal group. Id. at ¶¶ 71-73 78-80. The "sextortionists" obtained and threatened to release them unless he sent them money. Id. at ¶¶ 75-76, 78-79. When Plaintiff's Decedent could not meet their demands, the criminals used the Social Media Defendants' products to threaten Plaintiff's Decedent and his family. Id. at ¶ 80.

Against Defendants Hopkins Ford, Inc. d/b/a John Kennedy Ford of Jenkintown (incorrectly named as John Kennedy Ford of Jenkintown and Hopkins Ford, Inc.); Kennedy Real Estate Management Associates, LLC (incorrectly named as Kennedy Real Estate Associates Management, LLC); and Kennedy Real Estate Associates, LP, Defendants,

Plaintiff asserts claims for negligence, recklessness, and willful/wanton conduct, wrongful death, and survival. Id. at ¶¶134-139, 42.

Plaintiff alleges that, after receiving "unyielding threats from the sextortionists," Decedent "went to a nearby SEPTA train track, where he was killed by a SEPTA train." Id. at ¶¶ 81-82. Plaintiff further alleges that "the tracks were accessible by the Plaintiff's Decedent as a result of the failure to maintain and/or fence the area surrounding the tracks." Id. at ¶ 90. According to Plaintiff, "there is a high degree of pedestrian activity in the area of the location where the incident occurred," and SEPTA knew or should have known about the activity and "should have taken reasonable steps to prevent access to this area of the tracks." Id. at ¶ 96.

Similarly, as to Premises Liability Defendants plaintiff alleges as follows:

> 134. It is alleged and therefore averred that prior to January 4, 2023, Defendants had actual knowledge of the dangers associated with the proximity of their property and business to the exposed and unfenced train tracks adjacent to their property.

135.    Defendants were aware that these train tracks established an attractive nuisance to individuals in the area and/or proximity.

136.    Defendants were aware of the existence of numerous other pedestrian strikes on the tracks by trains yet did nothing to obstruct access to the tracks on their property.

137.    Defendants were aware of the presence of the Plaintiff's Decedent on their property for a sufficient period of time in which they observed him wandering in a distressed fashion in the area of the train tracks to take reasonable steps to intervene and prevent him from being struck by the train.

139.    The negligence, carelessness, recklessness and/or willful/ wanton conduct of Defendants consisted of, but it not limited to:

a.    Failure to exercise reasonable care to eliminate the danger or otherwise to protect Plaintiff's Decedent.

b.    failure of its employees, agents, ostensible agents and servants to monitor the safety of pedestrians in and around the tracks where this incident occurred;

c.    failure of its employees, agents, ostensible agents and servants to observe pedestrians in the area of the train tracks;

d.    failure of its employees, agents, ostensible agents and servants to observe pedestrians in and around the tracks in a reasonable time;

e.    failure to install any kind of barriers and/or fencing along its tracks in the immediate areas surrounding the tracks where the incident occurred to prevent anticipated pedestrians from entering the tracks;

f.    failure to repair the dangerous condition of the lack of fencing surrounding the tracks in and around the tracks where the incident occurred despite knowledge pedestrians were accessing the train tracks from the locations which lacked fencing;

g.    failure to post warning signs along the train tracks;

h.    failure to install fencing along its tracks in the immediate areas surrounding the tracks where the incident occurred to prevent anticipated pedestrians from entering the tracks;

i.    failure to monitor surveillance cameras;

j.    failure to intervene with the Plaintiff's Decedent;

k.    failure to restrict Plaintiff's Decedent from accessing the tracks;

l.    failure to remove the Plaintiff's Decedent from the area of the tracks;

m.   failure to take reasonable steps to protect the Plaintiff's Decedent from the hazard associated with the unfenced tracks;

n.    creating a dangerous condition;

o.    creating an attractive nuisance;

p.    observing the Plaintiff's Decedent on their property, acting nervously, scared, and distressed in the area of the train tracks for a significant period of time before he was struck and failing to intervene, call the police, or make contact with the Plaintiff's Decedent;

q.    failing to exercise ordinary care to avoid injuring others;

r.    failure to properly train its employees, agents, ostensible agents and servants, including but not limited to its Engineer and Conductor on the risks associated with pedestrians on the tracks;

s.    failure to warn its employees, agents, ostensible agents and servants, of the existence of prior complaints or knowledge of pedestrians on the train tracks in the vicinity of the location of the incident; and

t.    failure to inspect the condition of the fences in the area of the tracks where the incident occurred.

42.  [misnumbered] The negligence and/or carelessness of the Defendants as set forth herein was a proximate and sole cause of the injuries and damages to Plaintiff's Decedent, John Michael Sullivan and the expenses incurred as set forth above.

Exhibit "A", Complaint, ¶¶ 134-139, 42 [misnumbered].

## II.    LEGAL STANDARD[1]

In an MDL, the transferee court applies the law of its circuit to issues of federal law, but on issues of state law it applies the state law that would have been applied to the underlying case

as if it had never been transferred into the MDL. In re Anthem, Inc. Data Breach Litig., 2015 WL 5286992, at *2 (N.D. Cal. Sept. 9, 2015) (collecting cases).

Fed. R. Civ. P. 12(b)(6) allows a party to move for dismissal of a complaint or a portion of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests "the sufficiency of the allegations contained in the complaint." Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted). The Court will grant a motion to dismiss if the factual allegations do not "raise a right to relief above the speculative level." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Zuber v. Boscov's, 871 F.3d 255, 258 (3d Cir. 2017) (quoting Santiago v. Warminster Twp., 629 F.3d 121, 128 (3d Cir. 2010)) (internal quotation marks omitted). A complaint is plausible on its face when the plaintiff pleads a factual contention that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Courts are required to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). However, the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. A complaint will not survive if it contains merely "an unadorned, the defendant-unlawfully-harmed-me accusation," Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555) or "'naked assertion[s]' devoid of 'further factual enhancement,'" *id.* (quoting Twombly, 550 U.S. at 557) (alteration in original).

To state a claim for negligence under Pennsylvania law, a plaintiff must allege: (1) the existence of a legal duty; (2) a breach of that duty; and (3) a causal relationship between the defendant's breach of that duty and the plaintiff's damages. Green v. Pa. Hosp., 123 A.3d 310, 31516 (Pa. 2015). The existence of such a duty is a question of law. Maas v. UPMC Presbyterian Shadyside, 234 A.3d 427, 436 (Pa. 2020). The standard of care a possessor of land owes to one who enters upon the land depends upon whether the latter is a trespasser, licensee, or invitee. Jones v. Three Rivers Management Corp., 394 A.2d 546, 552 (Pa. 1978). A trespasser may recover for injuries sustained on land only if the possessor of land was guilty of wanton or willful conduct. Evans v. Philadelphia Transp. Co., 212 A.2d 440, 442 (Pa. 1965) ("The legal obligation to trespassers is the avoidance of willful or wanton misconduct.").

Plaintiffs cannot sustain a claim for negligence, which requires a plaintiff to establish the following four elements: 1) the existence of a duty or obligation recognized by law; 2) a failure on the part of the defendant to conform to that duty, or a breach thereof; 3) a causal connection between the defendant's breach and the resulting injury; and 4) an actual loss or damage suffered by the complainant. Orner v. Mallick, 527 A.2d 521, 523 (Pa. 1987).

## III.     ARGUMENT

**a. The Claims Against Defendants Hopkins Ford, Inc. d/b/a John Kennedy Ford of Jenkintown (incorrectly named as John Kennedy Ford of Jenkintown and Hopkins Ford, Inc.); Kennedy Real Estate Management Associates, LLC (incorrectly named as Kennedy Real Estate Associates Management, LLC); and Kennedy Real Estate Associates, LP ((Ford Defendants) Predicated on a Failure to Warn or Prevent Plaintiff's Decedent from Accessing the Railroad Tracks Should be Dismissed Under Rule 12(b)(6) Because Ford Defendants, Had No Duty to Prevent Access to its Tracks**

Plaintiff alleges that Decedent, a college student who was being extorted and threatened by foreign criminals on the Social Media Defendants' platforms, voluntarily walked to train tracks owned by SEPTA where he was struck by a SEPTA train. See Ex. A., Compl. at ¶¶ 80-81, 85, 88.

He further alleges that "the tracks were accessible by the Plaintiff's Decedent as a result of the failure to maintain and/or fence the area surrounding the tracks." Id. at ¶ 90. Plaintiff contends that SEPTA should have taken reasonable steps to prevent access to the area of the tracks where Plaintiff's Decedent was killed because of the "high degree of pedestrian activity in the area." Id. at ¶ 96; see also id. at ¶ 133 (a), (c)-(d), (k)-(o), (x).

Plaintiff avers that decedent walked through the "Premises Defendants" properties in order to gain access train tracks which abut both properties. Complaint at ¶87. Plaintiff also avers that Premises Defendants were negligent, reckless, and/or careless by virtue of their failure to install barriers that prevented pedestrians to gain access to the train tracks, failing to install fencing along the tracks, and/or failing to repair the lack of fencing around the train tracks. Complaint at ¶139. In other words, all of Plaintiff's claims against Premises Defendants hinge on the assertion that Defendants had a duty of care to prevent persons from crossing their property and accessing the adjacent train tracks.

But no such duty of care exists under Pennsylvania law. "[I]t is well settled that the law imposes no duty upon a possessor of adjacent land to erect fencing or provide warnings so as to deter persons from entering a third party's property on which there exists a dangerous condition not created or maintained by the landowner and over which the landowner has no control." Kearns v. Rollins Outdoor Advertising, Inc., 89 Pa.Commw. 596, 492 A.2d 1204 (1985); Magner v. Baptist Church, 174 Pa. 84, 34 A. 456 (1896); Heller v. Consolidated Rail Corporation, 576 F.Supp. 6 (E.D. Pa. 1982), aff'd 720 F.2d 662 (3d Cir. 1983); Cousins v. Yaeger, 394 F.Supp. 595 (E.D.Pa. 1975).

And it would be incongruous to impose such a duty upon landowners adjacent to a railroad right-of-way when it long has been held that a railroad has no duty to erect fences on its right-of-

way to deter trespassers. <u>Dugan v. Pennsylvania Railroad Company</u>, 387 Pa. 25, 127 A.2d 343 (1956); <u>Malischewski v. Pennsylvania Railroad Co.</u>, 356 Pa. 554, 52 A.2d 215 (1947); <u>Magner v. Baptist Church</u>, 174 Pa. 84, 34 A. 456 (1896); <u>Lynch v. National Railroad Passenger Corp.</u>, 115 Pa.Commw. 474, 540 A.2d 635 (1988), allocatur granted 521 Pa. 632, 558 A.2d 533 (1989).

Premises Defendants assert that a Court should not establish a new and novel theory of liability against every landowner in Pennsylvania whose property happens to abut a railroad track. Indeed – and quite to the contrary – the Courts in this Commonwealth have routinely and uniformly held that there is *no such duty*.

### b. Plaintiffs Cannot Plausibly Allege that Ford Defendants Proximately Caused Decedent's Death Because, Under Pennsylvania Law, Suicide is Not Recognized as a Type of Harm Resulting from Ordinary Negligence.

We begin our negligence analysis with the element of causation and will then address the element of duty. Under Pennsylvania law, even if the Plaintiff "has established that a duty of care is breached, the Plaintiff must still establish a causal connection between the defendant's negligent conduct and the plaintiff's injuries." <u>McPeake v. William T. Cannon, Esquire, P.C.</u>, 553 A.2d 439, 441 (Pa. Super. Ct. 1989) (citation omitted). Proximate or legal causation is defined as "[t]hat which, in a natural and continuous sequence, unbroken by any [su]fficient intervening cause, produces the injury, and without which the result would not have occurred." <u>Wisniewski v. Great Atl. and Pac. Tea Co.</u>, 323 A.2d 744, 748 (Pa. Super. Ct. 1974) (citations omitted). "Generally, suicide has not been recognized as a legitimate basis for recovery in wrongful death cases. This is because suicide constitutes an independent intervening act so extraordinary as to not have been reasonably foreseeable by the original tortfeasor." <u>McPeake</u>, 553 A.2d at 440-41 (citations omitted).

Pennsylvania courts have recognized suicide as a legitimate basis for wrongful death in limited instances only, namely in cases involving hospitals, mental health institutions, and mental

health professions. See, e.g., Simmons v. St. Clair Mem'l Hosp., 481 A.2d 870, 877 (Pa. Super. Ct. 1984) (finding that jury could have concluded that decedent – a patient with suicidal tendencies receiving treatment in the psychiatric unit of a hospital – looked to the hospital for care); see also Smith v. United States, 437 F.Supp. 1004, 1010. (E.D. Pa. 1977) (suicide of a veteran under treatment for paranoia and schizophrenia and with a long history of violent behavior was reasonably foreseeable and hospital was negligent in releasing him). In these cases, there is a custodial relationship between hospital and patient, and the hospital has a recognized duty of care towards the defendant. McPeake, 553 A.2d at 441.

In other negligence cases involving suicide, "courts have required both a clear showing of a duty to prevent the decedent's suicide and a direct causal connection between the alleged negligence and the suicide." Id. (citing Malloy v. Girard Bank, 436 A.2d 991, 993-94 (Pa. Super. Ct. 1981) (employer's practice of keeping a loaded gun at work, which "feeble-minded" decedent used to commit suicide, did not constitute a dereliction of due care); Freedman v. City of Allentown, 651 F.Supp. 1046, 1048 (E.D. Pa. 1987) (no facts alleged support a conclusion that police should have known that prisoner might take his own life)).

Finally, courts have recognized suicide as a basis for recovery under the Pennsylvania Workers' Compensation Act, in circumstances where an employer-employee relationship exists. In those instances, compensation may be granted if a suicide was caused by pain, depression, or despair resulting from a workplace injury so severe as to override rational judgment. See, e.g., Globe Sec. Sys. Co. v. W.C.A.B (Guerro), 520 A.2d 545, 547 (Pa. Commw. Ct. 1987) (medical evidence shows that decedent suffered a work-related injury which resulted in his suicide).

Here, none of these limited exceptions apply to override the general rule that under Pennsylvania law, suicide is not recognized as a legitimate basis for recovery in wrongful death

cases. Ford Defendants are not hospitals or mental health institutions, and the parties did not have a custodial relationship such that Defendants had a special duty of care to Decedent.

Plaintiffs thus attempt to circumvent the long-held principle of Pennsylvania law that suicide is not a legitimate basis for recovery in wrongful death cases by positing that this rule does not apply to the facts of this case. Plaintiffs will likely assert that Decedent's suicide was neither a superseding cause of harm nor so extraordinary as to make it unreasonably foreseeable. Rather, as noted above, Plaintiffs identify instances of alleged negligence, which Plaintiffs claim caused foreseeable harm to Plaintiffs. These breaches include:

134. It is alleged and therefore averred that prior to January 4, 2023, Defendants had actual knowledge of the dangers associated with the proximity of their property and business to the exposed and unfenced train tracks adjacent to their property.

135. Defendants were aware that these train tracks established an attractive nuisance to individuals in the area and/or proximity.

136. Defendants were aware of the existence of numerous other pedestrian strikes on the tracks by trains yet did nothing to obstruct access to the tracks on their property.

137. Defendants were aware of the presence of the Plaintiff's Decedent on their property for a sufficient period of time in which they observed him wandering in a distressed fashion in the area of the train tracks to take reasonable steps to intervene and prevent him from being struck by the train.

139. The negligence, carelessness, recklessness and/or willful/ wanton conduct of Defendants consisted of, but it not limited to:

a. Failure to exercise reasonable care to eliminate the danger or otherwise to protect Plaintiff's Decedent.

b. failure of its employees, agents, ostensible agents and servants to monitor the safety of pedestrians in and around the tracks where this incident occurred;

c. failure of its employees, agents, ostensible agents and servants to observe pedestrians in the area of the train tracks;

d.  failure of its employees, agents, ostensible agents and servants to observe pedestrians in and around the tracks in a reasonable time;

e.  failure to install any kind of barriers and/or fencing along its tracks in the immediate areas surrounding the tracks where the incident occurred to prevent anticipated pedestrians from entering the tracks;

f.  failure to repair the dangerous condition of the lack of fencing surrounding the tracks in and around the tracks where the incident occurred despite knowledge pedestrians were accessing the train tracks from the locations which lacked fencing;

g.  failure to post warning signs along the train tracks;

h.  failure to install fencing along its tracks in the immediate areas surrounding the tracks where the incident occurred to prevent anticipated pedestrians from entering the tracks;

i.  failure to monitor surveillance cameras;

j.  failure to intervene with the Plaintiff's Decedent;

k.  failure to restrict Plaintiff's Decedent from accessing the tracks;

l.  failure to remove the Plaintiff's Decedent from the area of the tracks;

m.  failure to take reasonable steps to protect the Plaintiff's Decedent from the hazard associated with the unfenced tracks;

n.  creating a dangerous condition;

o.  creating an attractive nuisance;

p.  observing the Plaintiff's Decedent on their property, acting nervously, scared, and distressed in the area of the train tracks for a significant period of time before he was struck and failing to intervene, call the police, or make contact with the Plaintiff's Decedent;

q.  failing to exercise ordinary care to avoid injuring others;

r.  failure to properly train its employees, agents, ostensible agents and servants, including but not limited to its Engineer and Conductor on the risks associated with pedestrians on the tracks;

s.   failure to warn its employees, agents, ostensible agents and servants, of the existence of prior complaints or knowledge of pedestrians on the train tracks in the vicinity of the location of the incident; and

t.   failure to inspect the condition of the fences in the area of the tracks where the incident occurred.

42.   [misnumbered] The negligence and/or carelessness of the Defendants as set forth herein was a proximate and sole cause of the injuries and damages to Plaintiff's Decedent, John Michael Sullivan and the expenses incurred as set forth above.

Exhibit "A", Complaint, ¶¶ 134-139, 42 [misnumbered].

In short, Defendants Hopkins Ford, Inc. d/b/a John Kennedy Ford of Jenkintown (incorrectly named as John Kennedy Ford of Jenkintown and Hopkins Ford, Inc.); Kennedy Real Estate Management Associates, LLC (incorrectly named as Kennedy Real Estate Associates Management, LLC); and Kennedy Real Estate Associates, LP, had no duty to maintain or erect fencing. Plaintiff's negligence claim predicated on this theory of liability fails as a matter of law.

Based on the allegations in the Complaint, Plaintiff's Decedent was a trespasser at the time he stepped onto the train tracks. No facts are pleaded to support a reasonable inference that Plaintiff's Decedent was on the tracks with Ford Defendants' permission. Iqbal, 556 U.S. at 678. As such, Defendants Hopkins Ford, Inc. d/b/a John Kennedy Ford of Jenkintown (incorrectly named as John Kennedy Ford of Jenkintown and Hopkins Ford, Inc.); Kennedy Real Estate Management Associates, LLC (incorrectly named as Kennedy Real Estate Associates Management, LLC); and Kennedy Real Estate Associates, LP, only owed Plaintiff's Decedent a duty to refrain from willful or wanton misconduct Engel, supra. Willful misconduct is something akin to intentional conduct, where an "actor desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue. This, of course, would necessarily entail actual prior knowledge of the trespasser's peril." Id. at 443. Wanton misconduct is more akin

to recklessness, and "means that the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it and so great as to make it highly probable that harm would follow" and "[i]t usually is accompanied by a conscious indifference to the consequences." Id. (cleaned up; citation omitted).

However well-stated, these allegations have no legal foundation and do not support creating another exception to the general rule that suicide is not recognized as a legitimate basis for recovery in wrongful death cases. Accordingly, under the Court's negligence analysis, Plaintiffs' negligence claims fail because Plaintiffs fail to show a causal connection between Defendant's negligent conduct and Plaintiffs' injuries.

### c. The Attractive Nuisance Doctrine Even though it is Not Applicable to the Facts of the Case

Alternatively, Plaintiff alternatively claims that Fords Defendants were aware that the train tracks, posed an attractive nuisance to individuals in the area. Complaint at ¶ 136.

Under the "attractive nuisance" doctrine, landowners have been held responsible for injuries to children caused by dangerous conditions on the land when children were to be anticipated, and the burden of making the place safe was comparatively slight in view of the serious risk involved. The Supreme Court has adopted the definition of attractive nuisance from the Restatement of the Law of Torts specifically as applies to children.

The term has been defined as follows:

A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if

(a)   the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein.

See Bartleson v. Glen Alden Coal Co., 361 Pa. 519 (Pa. 1949).

Plaintiff is attempting to make the claim that Premises Defendants were aware of the "attractive nuisance" the train tracks create and thus had a duty to protect against that nuisance. However, there is no information within the Complaint that alleges Decedent was a minor at the time of the incident and upon information and belief Decedent had reached the age of majority. However, to the extent that Plaintiff failed to specifically aver that the Decedent was a minor, it can be fairly assumed for purposes of the pleadings that he had reached the age of majority and, as a result, the doctrine of attractive nuisance does not apply to this case.

Finally, and setting aside the application of the attractive nuisance doctrine based upon Plaintiff's age, it should further be noted that Plaintiff has specifically averred the train track reside on Defendant SEPTA's property. Complaint at ¶123. Consequently, Plaintiff has not, and will not be able to establish, that the train tracks were a condition maintained on Premises Defendant's property, which is a condition precedent to any attractive nuisance claim.

> **d. Defendants Hopkins Ford, Inc. d/b/a John Kennedy Ford of Jenkintown (incorrectly named as John Kennedy Ford of Jenkintown and Hopkins Ford, Inc.); Kennedy Real Estate Management Associates, LLC (incorrectly named as Kennedy Real Estate Associates Management, LLC); and Kennedy Real Estate Associates, LP,' cannot recklessly or "wantonly disregarded a nonexistent duty any more than it could have negligently done so.**

To the extent that Plaintiff alleges, *with no supportive averments*, that failure of with Defendants Hopkins Ford, Inc. d/b/a John Kennedy Ford of Jenkintown (incorrectly named as John Kennedy Ford of Jenkintown and Hopkins Ford, Inc.); Kennedy Real Estate Management Associates, LLC (incorrectly named as Kennedy Real Estate Associates Management, LLC); and Kennedy Real Estate Associates, LP  to maintain or erect fences constituted reckless, willful or wanton conduct, this does not save his claim predicated on a failure to maintain or erect fences.

Defendants Hopkins Ford, Inc. d/b/a John Kennedy Ford of Jenkintown (incorrectly named as John Kennedy Ford of Jenkintown and Hopkins Ford, Inc.); Kennedy Real Estate Management Associates, LLC (incorrectly named as Kennedy Real Estate Associates Management, LLC); and Kennedy Real Estate Associates, LP,'  cannot recklessly or "wantonly disregarded a nonexistent duty any more than it could have negligently done so." King v. Nat'l R.R. Passenger Corp., No. 23-3883, 2024 WL 665335, 2024 U.S. Dist. LEXIS 27131 (E.D. Pa. Feb. 16, 2024); see also Wilson v. Moore Freightservice, Inc., No. 4:14-771, 2015 WL 1345261 (M.D. Pa. Mar. 25, 2015) ("There can be no negligence claim when there is no duty of care established, even if a defendant's actions were careless, reckless, or inadvertent"). Moreover, no facts have been pleaded to show that Defendants Hopkins Ford, Inc. d/b/a John Kennedy Ford of Jenkintown (incorrectly named as John Kennedy Ford of Jenkintown and Hopkins Ford, Inc.); Kennedy Real Estate Management Associates, LLC (incorrectly named as Kennedy Real Estate Associates Management, LLC); and Kennedy Real Estate Associates, LP, acted either willfully or wantonly in failing to maintain and/or erect fences, warn or to otherwise prevent any access to its tracks. Plaintiff's claims predicated on a failure to maintain and/or erect fencing, warn or prevent any access fail as a matter of settled Pennsylvania law, and should thus be should be dismissed under Rule 12(b)(6).

## IV.    CONCLUSION

For the reasons set forth above, this Court should grant the instant motion. The claims against Defendants Hopkins Ford, Inc. d/b/a John Kennedy Ford of Jenkintown (incorrectly named as John Kennedy Ford of Jenkintown and Hopkins Ford, Inc.); Kennedy Real Estate Management Associates, LLC (incorrectly named as Kennedy Real Estate Associates Management, LLC); and Kennedy Real Estate Associates, LP, predicated on a failure to warn or prevent access to its tracks fail as a matter of law and should be dismissed under Rule 12(b)(6).

Respectfully submitted,

**RAWLE & HENDERSON, LLP**

BY:_____

Orville R. Walls III, Esquire
PA Attorney Bar: 81223
William J. Carr, Esquire
PA Attorney Bar: 79735
Centre Square West
1500 Market Street, 19th Floor
Philadelphia, PA 19102
Telephone: (215) 575-4200
Email: owalls@rawle.com

*Pro Hac Vice Attorney for Defendants, Hopkins Ford, Inc. d/b/a John Kennedy Ford of Jenkintown (incorrectly named as John Kennedy Ford of Jenkintown and Hopkins Ford, Inc.); Kennedy Real Estate Management Associates, LLC (incorrectly named as Kennedy Real Estate Associates Management, LLC); and Kennedy Real Estate Associates, LP*

Date: June 4, 2026