# Exhibit 1

**Pages 1 - 109**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Yvonne Gonzalez Rogers, Judge

```
IN RE:  SOCIAL MEDIA              )
ADOLESCENT ADDICTION/PERSONAL     )
INJURY PRODUCTS LIABILITY         )
LITIGATION                        )
                                  )  NO. 22-MD-03047 YGR (PHK)
                                  )
_____ )
```

San Francisco, California
Wednesday, May 27, 2026


<u>**REPORTER'S TRANSCRIPT OF PROCEEDINGS**</u>


<u>**APPEARANCES**</u>**:**


For Plaintiff State of California:
>               CALIFORNIA DEPARTMENT OF JUSTICE
>               455 Golden Gate Avenue, 11th Floor
>               San Francisco, California 94102
>          BY:  **MEGAN O'NEILL, DEPUTY ATTORNEY GENERAL**
>               **NAYHA ARORA, DEPUTY ATTORNEY GENERAL**
>               **KATHERINE READ, DEPUTY ATTORNEY GENERAL**
>               **EMILY C. KALANITHI**
>               **SUPERVISING DEPUTY ATTORNEY GENERAL**
>
>               CALIFORNIA DEPARTMENT OF JUSTICE
>               OFFICE OF THE ATTORNEY GENERAL
>               1515 Clay Street, Suite 2000
>               Oakland, California 94612
>          BY:  **JOSHUA OLSZEWSKI-JUBELIRER**
>               **SAMANTHA R. BECKETT**
>               **DEPUTY ATTORNEYS GENERAL**


**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**


REPORTED STENOGRAPHICALLY BY:  ANA DUB, CSR No. 7445
                               RDR RMR, CRR, CCRR, CRG, CCG
                               OFFICIAL UNITED STATES REPORTER

information, and if it gives you information, then I might be inclined to just get it out and done.

MR. SCHMIDT:  One question on the prior topic, Your Honor.  Should we confer about the questions that would go to an advisory jury and report back to the Court?

THE COURT:  Yes.

MR. SCHMIDT:  Okay.

THE COURT:  And let's just have a list of things to do so we can figure out when we'll meet again, and I'll give you deadlines, but let's do that at the end.

MR. SCHMIDT:  Thank you.

THE COURT:  Okay.  All right.  So let's move to your agenda and joint statement.

First of all, I don't understand why I'm getting a motion to strike witnesses, which is effectively a motion in limine, and hearing argument that it shouldn't be a motion in limine. It is a motion in limine.

It's either -- you either should have brought a *Daubert* if they were experts or it's a motion in limine.  How can you argue that it's not?

MS. BATCHELDER:  Krista Batchelder for the State AGs from the State of Colorado.

Your Honor, it is our position that these should not count --

THE COURT:  Denied.

**MS. BATCHELDER:**  -- as --

**THE COURT:**  Look, I'm not going to play games with you all.  There are rules, and you need to follow the rules.

So do you want to proceed with them as a -- as a -- because it's going to count.  So do you want me to consider them, or do you want to withdraw them?

**MS. BATCHELDER:**  Your Honor, we would like you to consider them.

**THE COURT:**  Okay.  Go ahead, then.

**MS. BATCHELDER:**  So, Your Honor, the question is whether Meta's significantly late disclosures of these four witnesses were substantially justified or harmless under 37(c)(1), and they are not.

**THE COURT:**  Well, let's just go through it.

So Funda Kivran-Swaine Meta withdrew; right?

**MS. BATCHELDER:**  That is correct, Your Honor.

**THE COURT:**  All right.  So that's not an issue.

Kyle Jensen.  It sounds like -- Meta should have -- it's hard to believe that Meta doesn't know, when the statute talks about under 13, that under 13 isn't an issue.  It seems like it's late, and the motion should be granted on this manager.

**MS. SIMONSEN:**  May I respond to that, Your Honor?

**THE COURT:**  You may.

**MS. SIMONSEN:**  So with respect to Mr. Jensen, we added him to our preliminary trial witness list on April 24th.  We

did not -- we were not aware of the need to add him to our list in September 2025, which is when the AGs contend we should have disclosed Mr. Jensen; and the reason is that back in September 2025, first of all, we didn't yet even have the McDaniel expert report.  That's the expert who was ultimately replaced.

THE COURT:  Who is going to testify on this topic if not him?

MS. SIMONSEN:  Allison Hartnett will also testify on it, Your Honor, but Mr. Jensen provides a level of depth. Mr. Jensen --

THE COURT:  But you knew that.

MS. SIMONSEN:  But let me -- if I could explain, Your Honor.  I'll get to the point.

The AGs -- we did motion to dismiss briefing.  Your Honor sustained their unfair and unconscionable trade practices claims based on three features.  You undertook a feature-by-feature analysis.  The AGs had put eight features at issue.  They never put age verification at issue.

So we have proceeded through discovery, based on Your Honor's ruling, based on the features that the AGs were premising their unfair claims on, on the understanding that there are three features.  Those features do not include age verification.

I understand they've got a COPPA claim.  I understand

they've got one -- a misrepresentation claim that's premised on statements describing "Are you 13?" policy.

But evidence relating to the adequacy of our age verification systems, double -- you know, second-guessing whether those were adequate, that is an entirely different category of evidence that goes much farther beyond the type of evidence relating to age verification that would be coming in with respect to the COPPA claim and this narrow slice of the misrepresentation claim.

**THE COURT:** All right.  I want you to stop.

**MS. SIMONSEN:** Yes.

**THE COURT:** Is the procedural statement that has just been made accurate?

**MS. BATCHELDER:** No, Your Honor.

**THE COURT:** So you didn't have -- you didn't put eight features at issue and I didn't allow three to proceed?

**MS. BATCHELDER:** Apologies, Your Honor.  That portion was accurate.

The representation about the fact that these -- the features that Dr. McDaniel was addressing that they claim Mr. Jensen is needed to address have been a part of this case since the complaint and have continued to be a part of this case since the complaint, including depositions of Allison Hartnett, Dr. Memon, Dr. Gray.  These are not --

**THE COURT:** I need to understand -- well, then respond

to this issue that age verification wasn't at issue with respect to the unfair and unconscionable trade practices at the beginning.  Or maybe I'm misunderstanding what you're saying.

MS. SIMONSEN:  No.  You're understanding correctly, Your Honor.  It was not --

THE COURT:  Okay.  Then stop.

MS. SIMONSEN:  Okay.

MS. BATCHELDER:  I'm sorry, Your Honor.

So Meta's deficient practices for removing underage users has been a part of this case from the beginning.  It's not a feature.  It is a -- it is one the core AG claims, that they have been ineffectively removing underage users from their platform.  It was not a specific feature that was at issue in the way that Ms. Simonsen is framing it.

MS. SIMONSEN:  Your Honor, it was not one of the features listed in the section of the AG's complaint relating to their unfair claims.  In their opposition to our motion to dismiss, they put at issue three more features beyond the five they listed there.  Your Honor allowed the claims to move forward only as to those three features.

THE COURT:  Okay.  So I have to -- I don't -- look, the inability of Meta to deal with under 13-year -- adolescents under the age of 13 and keeping them off their platform I have understood to be a core feature of the dispute from the outset.  So I can go back and check.  If I disagree with you, then the

motion is granted because you knew or should have known.

**MS. SIMONSEN:**  Your Honor, if I may respond on that point.  I agree with you that, of course, like, age verification in general has been at issue; but where it's been at issue with respect to the COPPA claims, the AGs point to our age verification systems to try to prove the element of actual knowledge.  We're talking about age verification in that context.

**THE COURT:**  So they're pointing to your systems and that comes from Dr. Sheatsley?

**MS. SIMONSEN:**  Dr. Sheatsley and Dr. Estes are two of their more recent experts that go into that.

But, Your Honor, it's not just the fact of the systems or how they work.  Ms. Hartnett can absolutely address those issues.  It's their attempt, by virtue of their unfair practices claims, to question the adequacy of the age verification systems because that was not a part of the unfair claims.

**THE COURT:**  Of course it was.

**MS. SIMONSEN:**  It -- Your Honor, it wasn't.  In their --

**THE COURT:**  Okay.  This is what I want.  This is what I want.  I want a package of material, because I don't want to go search for it.  In the package of materials, I want the portions of the -- so Exhibit A is going to be only those

portions of the briefing that relate to this issue that you're arguing about.  That's Exhibit A.

Exhibit B is the portions of the reports that you claim have put this at issue.  And has -- Ms. Hartnett, has she been deposed?  Did she write -- is she an expert?  What is she?

**MS. SIMONSEN:**  She's a fact witness.  She is going to be deposed on June 8th, and there's no disagreement that she's properly on Meta's witness list.

**MS. BATCHELDER:**  And she has also been previously deposed as a 30(b)(6) witness.  And we actually referenced her previous deposition, where we had over a hundred pages on this exact topic from last summer.

**THE COURT:**  Okay.

**MS. SIMONSEN:**  Your Honor, the issue is one of depth.

No one is denying that we knew there was going to be some coverage of age verification, but the AGs have -- and I'm happy to provide it to Your Honor.  I can give you citations.  The first time that they purported to be proceeding on their unfair claims at trial based on age verification was in an amended response to Meta's Interrogatory Number 4 that they served last fall, months after the close of fact discovery.

They then dropped a reference to having four features be the premise of their unfair claims in their trial planning brief that they submitted in January.

And then in their opposition to our motion for summary

judgment, when we moved for summary judgment as to the only three features that Your Honor allowed to proceed for their unfair claims, they opposed, saying, "Oh, Meta hasn't moved on age verification." Well, that's because it was never a part of that claim.

And the reason that we have put Mr. Jensen on our list is simply to provide a greater depth of testimony on an issue that we now understand is -- apparently, the AGs are planning to put it front and center for their case at trial.

And I do just want to point out, Your Honor, that we will be filing a motion in limine with respect to evidence that goes to second-guessing our content moderation policies and practices under Section 230. That includes age verification.

Your Honor does not have to decide that today. We want to give you the full legal landscape on that in our motion in limine. But I only mention it because, Your Honor, to the extent that that type of evidence is excluded from trial, it may moot this issue entirely because we can then meet and confer with the AGs about whether we even need Mr. Jensen.

MS. BATCHELDER: And if I may respond, Your Honor? Needing the greater depth, that is not substantial justification. These issues have been -- these topics have been at issue from the beginning of this case. We have deposed their witnesses on these topics. We have had to file letter briefs in order to get the data supporting these topics. So

any claim that this is a new revelation is false and is not supported by the record.

MS. SIMONSEN:  Your Honor, I --

THE COURT:  Okay.  It's an uphill battle for you.

MS. SIMONSEN:  I understand that, Your Honor, but --

THE COURT:  So we're going to move to the next one. And you get me the package, and I'll take a look at it.  But it is an uphill battle, so don't be surprised.

MS. SIMONSEN:  I understand, Your Honor.

Just to clarify, you mentioned Exhibit A, only those portions of the briefing that relate to this issue.  Are you referring to the --

THE COURT:  Yeah.  So I just -- I don't want argument. I want you to just give me the materials.  So we can have a notice of filing or whatever you want to call it.  A is going to be the briefing excerpts, two is going to be the portions of the report or maybe it's whatever you think is the reason for the justification.  I just don't want a ton of argument.  I want the original source documents that I can read and review on my own.

MS. SIMONSEN:  Understood.  And I just want to make sure I'm clear.  That would include, like, the portions of the motion to dismiss where the AGs only put eight features at issue and Your Honor only allowed three to proceed?  That's what you're referring to by "the briefing"?

**THE COURT:** Correct.

**MS. SIMONSEN:** Thank you. Understood.

**THE COURT:** And if you want me to read anything, then you let me know.

**MS. BATCHELDER:** Okay. Thank you, Your Honor.

**THE COURT:** All right.

**MS. BATCHELDER:** And within that, are we able to address the harm that is caused by the --

**THE COURT:** Well, the harm is that you would have to take a deposition now. That's the harm.

**MS. BATCHELDER:** Correct.

**THE COURT:** And, by the way, that happens all the time in trials. So, anyhow, I've had people depose people in trial. Yes, I understand, we don't do that very often. The question is: How do I get what I need to get, keeping the playing field fair? If you did your job, then it's going to be -- your motion is going to be granted. If I think you didn't do your job, then the motion will be denied.

**MS. BATCHELDER:** Thank you, Your Honor.

**THE COURT:** All right. The next person you had -- on these 30(b)(6) witnesses, it's not clear to me what the dispute is.

If a 30(b)(6) witness comes in and was identified as a 30(b)(6) witness, the scope of their testimony is only what was previously identified unless they were identified for a

different purpose.  So what is the issue?

**MS. BATCHELDER:**  So, Your Honor, the issue is that, in this case, the State AGs have not identified these three witnesses as being called.  In our review of the cases that were cited by Meta in support of calling these 30(b)(6) witnesses live at trial, it was a situation where, in this context, the AGs were putting the witness on the stand and Meta would be objecting to their live testimony because it is their corporate representative.  But we're --

**THE COURT:**  They will put on corporate representatives limited to the scope of what they testified to in deposition and you're objecting?

**MS. BATCHELDER:**  Because they were calling them -- excuse me.  Apologies, Your Honor.

Because the designation --

**THE COURT:**  So the answer to my question is yes.  I want to understand what the issue is first.

They want to call corporate representatives who were identified to speak on specific topics and who you deposed, and now you object to them calling them live?  Is that -- do I understand that right?

**MS. BATCHELDER:**  The objection was the scope of the test- -- no, Your Honor.

**THE COURT:**  Okay.

**MS. BATCHELDER:**  The issue was that what was submitted

when they identified their list, it was not limited to the scope of the 30(b)(6) testimony.

**THE COURT:** So the answer to my question is no, that's not --

**MS. BATCHELDER:** No, we are not objecting to -- correct. The answer is no.

**THE COURT:** That's what I need you to do --

**MS. BATCHELDER:** Okay.

**THE COURT:** -- is, first, answer my question. Then you will get -- I will be so much more patient with you if you just answer my question first.

**MS. BATCHELDER:** I apologize, Your Honor.

**THE COURT:** So the answer to my question is no. Your objection is that then they are seeking to expand the scope of the testimony?

**MS. BATCHELDER:** That is correct, Your Honor.

**MS. SIMONSEN:** Your Honor, we're not.

**MS. BATCHELDER:** For exam- --

**MS. SIMONSEN:** We've agreed to confine them to the scope of their 30(b)(6) topics. I don't know why this is where we're going. That's the -- we agreed to narrow repeatedly in writing and in our brief. We narrowed what we are putting these witnesses on at trial to the scope of their 30(b)(6) topics.

So --

**THE COURT:**  Okay.

**MS. SIMONSEN:**  -- their issue was that our original disclosure, I think, had them listed on something a little bit broader, but we immediately agreed to narrow the scope of what they would testify on at trial to their 30(b)(6) topics.

**THE COURT:**  Okay.  So there is no issue, then.

**MS. BATCHELDER:**  If that is the agreement, then there is no issue.

**THE COURT:**  So ordered.  Okay.

**MS. SIMONSEN:**  Your Honor, I want to be clear, because we've spent weeks negotiating this and this has always been our position.  What we've agreed to do is put these witnesses -- confine their trial testimony to the scope of the topics on which they were designated as 30(b)(6) designees.  I want to make sure it's understood that that is the agreement.

**THE COURT:**  So, okay.  And are you saying that they haven't been deposed on those topics?

**MS. SIMONSEN:**  No.  They have been.  The State AGs had, I think it was 18 hours, 15 or 18 hours of time to question all of our 30(b)(6) designees, and they did question these three witnesses.

**THE COURT:**  I don't have the 30(b)(6) notices.  So if you will send them to me by email, I will put that in the order which will define the scope of the testimony.

**MS. SIMONSEN:**  Thank you, Your Honor.  We'll do that.

**MS. BATCHELDER:** And, Your Honor, if we can just confirm that it is the 30(b)(6) topics that were noticed and not the expansion of the deposition testimony.

**THE COURT:** So you asked them -- you asked them more in the deposition testimony?

(Pause in proceedings.)

**MS. BATCHELDER:** Okay. Your Honor --

Do you want to step in?

**MR. SLOTHOUBER:** If you don't mind, Your Honor.

**THE COURT:** And identify yourself from the record.

**MR. SLOTHOUBER:** Thank you, Your Honor. Jason Slothouber from Colorado.

I think the fundamental issue here is that Meta is seeking to use these 30(b)(6) witnesses for the broader topics that they were set to testify about at the 30(b)(6) rather than what they actually did testify to at the 30(b)(6), which opens up a whole new can of area that was not explored during the depositions that we have no notice of.

**THE COURT:** But they were identified. I mean, I agree. They just said they were -- it sounds like there have been a range of things that were happening.

This is the state of play: The state of play is that you issued 30(b)(6) notices on particular topics. Right so far?

**MR. SLOTHOUBER:** Yes.

**THE COURT:** Let's make sure that I understand how your

discovery process went.

You issued 30(b)(6) notices with topics.  Meta identified individuals who were designated to speak on those topics.

**MR. SLOTHOUBER:**  Correct.

**THE COURT:**  All right.  Of those who were identified were Chen, Wakefield, and Walton; right?

**MR. SLOTHOUBER:**  Yes.

**THE COURT:**  And what Meta is saying is that they are calling Chen, Wakefield, and Walton to testify on those things for which they had been designated.

That's what I understand your position to be.

**MS. SIMONSEN:**  Correct, Your Honor.

**THE COURT:**  Now, I also then, it sounds like, understand that you didn't, as plaintiffs, depose them on all of the topics for which they were identified in response to your 30(b)(6) notice.  If that's the case, that's on you, not on the defendants.  That was your choice.

**MR. SLOTHOUBER:**  I understand that, Your Honor, but that leaves the second major issue, which is that they're proposing to bring these witnesses in to testify about things they have no personal knowledge of and that they only know anything about because of hearsay.

That's why all the case law that we cited in our brief only says that the opposing side can call a 30(b)(6) witness because then it's an admission of a party opponent.  If they

call them self-servingly to then testify about things they don't have personal knowledge of, that's the real crux of the issue here.

THE COURT:  I see.

All right.  Response.

MS. SIMONSEN:  Your Honor answered that question in the *Corcoran* decision where you made clear that although there is some mixed case law on this question [as read]:

"Persons" -- and I'm quoting -- "Persons who have been designated to testify on behalf of the corporation may be examined on specifically articulated topics at trial, whether the representative obtained the information by personal experience or upon investigation in their corporate capacity."

There are multiple other cases that are in agreement, including the *Brazos* decision from the Fifth Circuit where the Court held that, quote [as read]:

"If a Rule 30(b)(6) witness is made available at trial, he should be allowed to testify as to matters within corporate knowledge to which he testified in deposition."

We also cited the *Russell vs. Wal-Mart* case, where the Court said, quote [as read]:

"The Court notes that it is not inclined to

strictly adhere to the personal knowledge requirement when it comes to Wal-Mart's corporate witnesses."

And I want to note that in that case in particular, just like the facts here, it was the defendant who was seeking to call its own 30(b)(6) designees.

And the final case we cited was *Universal Health System Consortium vs. UnitedHealthcare Group* from the Northern District of Illinois.  Courts have held that a Rule 30(b)(6) witness may testify both in a deposition and at trial to matters as to which he lacks personal knowledge, notwithstanding the requirements of the Federal Rules of Evidence 602.

And so the logic of these decisions, as Your Honor previously held in the *Corcoran* case, is that a 30(b)(6) designee may testify vicariously for the corporation and, therefore, may testify about any fact within the collective knowledge or subject belief of the corporation without creating any hearsay problem.  That's quoting from *Brazos*, 469 F.3d at 434.

And that justification applies under the logic of these cases, including Your Honor's decision in *Corcoran*, regardless of which side calls those witnesses to testify at trial.

The case law that the AGs rely on involves playing the deposition tape of a 30(b)(6) witness.  We're talking here about calling these witnesses live.

**THE COURT:** Okay. Response.

**MR. SLOTHOUBER:** Every single one of those cases was the opponent trying to call the 30(b)(6) witness of the opposite side. So it's a situation where an admission of a party opponent would apply.

And the situation here is very different because if Meta is allowed to call witnesses on broad 30(b)(6) topics -- obviously, you know, you phrase these initial notices relatively broadly, there's emails back and forth, and then you end up asking some certain small subset.

If what Meta can do is offer a witness with no personal knowledge and who's relying only on hearsay information to testify without us having any sort of disclosure as to what they're going to say about very broad topics of 30(b)(6), that really gives a corporation a perfect infinite end-around around establishing personal knowledge and going through the truth-testing process, and that's exactly what Meta's proposing here.

If all they wanted to do was designate portions of the 30(b)(6) testimony, we have knowledge of that, and we would be fine with that. I think that would still probably be hearsay; but just as a way to resolve it, we would be fine if they're just designating the actual testimony.

But if they're going to be calling these witnesses for the broad topics, they just can't get past the hearsay problem.

And every single case they just cited and every case in all the briefing is all when you're calling somebody from the opposing side so it's an admission of a party opponent.

MS. SIMONSEN:  Your Honor, that's just wrong.  And I just explained to Your Honor, the *Wal-Mart* case involved a defendant who was calling its own 30(b)(6) designees.  And it -- even when those cases involved --

THE COURT:  I'll take a look at the cases.

MS. SIMONSEN:  Thank you, Your Honor.

THE COURT:  Anything else on this one?

MS. SIMONSEN:  I just want to quickly note, Your Honor, the reason the topics are broad is because that's what the AGs noticed.  We spent months trying to get them to narrow their 30(b)(6) topics.  Judge Kang recognized those topics were overbroad when we had to go to briefing on this issue.

These were elections they made.  And it is always the case that a witness noticed for deposition in discovery may not be examined on every question that, come trial, the other party may want to question them about.

But these are the topics they selected for these witnesses, and they had 15 or 18 hours to depose all of these people.  So we think more than adequate notice has been provided but, respectfully, defer to the judge's -- to Your Honor's decision on this.

**THE COURT:** Okay. Anything else?

**MR. SLOTHOUBER:** No, Your Honor.

**MS. BATCHELDER:** No. Thank you, Your Honor.

**THE COURT:** Okay. Do you want to be heard on the issue about whether or not I have jurisdiction to proceed to trial? I have to say, I think I do, but go ahead.

**MR. SCHMIDT:** Paul Schmidt again for Meta, Your Honor.

That was something that we put in the statement when we were facing the Breathitt trial, which was very imminent. I think we have much more time now to hear from the Ninth Circuit, and we don't think it's as imminent.

Our position is what we stated in our papers, that we respectfully disagree on the jurisdictional point, but I don't think it's ripe at this point in time.

**MS. O'NEILL:** Megan O'Neill for the State AGs.

We agree with Meta that this is not an issue that the Court needs to concern itself with now. We obviously have different positions on, were we to get to the eve of trial, what Your Honor is empowered to do. We feel like you can move forward, but I agree that it's not an issue that we need to concern ourselves with at this point in May.

**THE COURT:** Okay. So next I have on the list, you want clarification on the reduction of misrepresentations.

**MS. SIMONSEN:** Yes. Thank you, Your Honor. Ashley Simonsen for the Meta defendants.

to the point of submitting a stipulation to the Court on potential video access to the trial for people who were not live, limited to parties and without recording.  If Your Honor is open to that, we'd like to propose the same here.

THE COURT:  Other than the overflow room?

MR. SCHMIDT:  Yes.  Just a feed, much like the Zoom feed we have for a conference, but limited to attorneys and without recording.

THE COURT:  Okay.  I think we'd have to -- we'll have to figure out if we can do it.  I think -- as long as we have parameters around that, I think that that should work, but we would have to know where it's going.  We might have requirements for kind of specific people who can be provided access, and we'd probably want to test it.

MR. SCHMIDT:  Understood.

THE COURT:  Because Mr. Cuenco will have to do all of that every morning.

MR. SCHMIDT:  Mm-hmm.

THE COURT:  So the fewer the lines that he's bringing in, the better.

MR. SCHMIDT:  Understood, Your Honor.

MR. SLOTHOUBER:  That's all I have, Your Honor.

THE COURT:  Okay.  So what we have outstanding then, the briefing on -- so I'm getting briefing on Jensen.  I need the buckets of information and the Excel spreadsheet of the

misrepresentations.  You're going to give me an amended motion on the motion to seal by June 17th.

So let's have the briefing on Jensen and the misrepresentations done at the same time.  Can you all get that to me by next -- well, by June 4th?

**MR. SCHMIDT:**  Yes, Your Honor.

**MS. O'NEILL:**  Yes, Your Honor.

**THE COURT:**  And then if somebody can send me the updated -- an updated pretrial schedule, that would be helpful.  We haven't received yet the expert -- the Saba expert with all the schedules so --

**MS. O'NEILL:**  Yes, Your Honor.  I do have an update on that.  Apparently, the schedules are quite large, so it would take a file share to get those to you.  We can provide those.

Another option is, if it would be more helpful, for us to kind of point Your Honor to tables within Mr. Saba's reports and particular schedules.

**THE COURT:**  But do we have them?

**MS. O'NEILL:**  You do not have them yet.  We have not sent them.  They're just very massive files, so we haven't provided those to -- we haven't been able to get them to you just yet.  We can do that either by tonight or tomorrow morning.  But I did want to ask if it would be helpful for us to point you to particular places because it is quite a lot of information.

MS. O'NEILL:  Thank you, Your Honor.

MR. SCHMIDT:  Bye.

THE COURTROOM DEPUTY:  Court is adjourned.

(Proceedings adjourned at 3:51 p.m.)

---oOo---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:  Thursday, May 28, 2026

_____

Ana Dub, CSR No. 7445, RDR, RMR, CRR, CCRR, CRG, CCG
Official United States Reporter