Ashley M. Simonsen, SBN 275203
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

*Attorneys for Defendants Meta Platforms,
Inc. f/k/a Facebook, Inc. and Instagram,
LLC*

*[Additional counsel listed on signature
pages]*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case No. 4:22-md-03047-YGR (PHK) 4:23-cv-05448-YGR |
| This Document Relates To: | |
| *People of the State of California, et al. v. Meta Platforms, Inc., et al.* | **DECLARATION OF ASHLEY M. SIMONSEN ATTACHING FOLLOW-UP MATERIALS RELEVANT TO META'S OPPOSITION (ECF 3060-1) TO STATE AGs' MOTION TO STRIKE FIVE META WITNESSES FROM META'S TRIAL WITNESS LIST (ECF 3056)** |
| | Judge: Hon. Yvonne Gonzalez Rogers Magistrate Judge: Hon. Peter H. Kang |

## DECLARATION OF ASHLEY M. SIMONSEN

I, Ashley M. Simonsen, declare and state as follows:

1.   I am a partner with the law firm Covington & Burling LLP, counsel of record for Defendants Meta Platforms, Inc. and Instagram, LLC (together, "Meta"). I submit this declaration pursuant to the Court's request to Meta at the May 27, 2026 First Pretrial Conference in the MDL AG action to submit certain follow-up materials relevant to arguments presented in connection with Meta's opposition to the State AGs' motion to strike (1) three 30(b)(6) witnesses and (2) Kyle Jensen from Meta's trial witness list. *See* ECF 3056 (Motion); ECF 3057, *as corrected* ECF 3060.1 (Opposition). This Declaration is based on my personal knowledge. If called upon to do so, I could and would competently testify as follows.

### Follow-Up Materials Relevant to Kyle Jensen

2.   At the May 27, 2026 conference, the Court directed Meta to provide "a package of material" consisting of "those portions of the briefing" and other "original source documents" relating to Meta's position "that age verification wasn't at issue with respect to the [AGs'] unfair and unconscionable trade practices [claims ('**Unfairness Claims**')]] at the beginning." Tr. 25:25–26:3; 27:23–28:2; 30:10–20. The Court specified that the submission should include "the portions of the motion to dismiss [briefing] where the AGs only put eight features at issue and [the Court] only allowed three to proceed," along with related materials bearing on whether and/or when age verification was raised as a feature supporting the AGs' Unfairness Claims. *Id.* at 30:21–31:4.

3.   The paragraphs that follow identify specific materials relevant to this issue for the Court's consideration, with the relevant portions attached as excerpts and highlighting added for the convenience of the Court.

4.   Attached hereto and lodged with the Court as **Exhibit A** is a true and correct copy of excerpted portions of the **State AGs' October 24, 2023 Complaint for Injunctive and Other Relief**, ECF 73-2, Case No. 4:23-cv-5448-YGR. In paragraph 847 of the Complaint, the AGs identified a list of specific features on which their Unfairness Claims were premised. *See id.* ¶ 847 (alleging that five features—"infinite scroll, ephemeral content features, autoplay, quantification and display of 'Likes,' and

disruptive alerts"—"promote compulsive, prolonged, and unhealthy use by young users"). The list did not include age verification.[1]

5. For comparison, attached hereto and lodged with the Court as **Exhibit B** is a true and correct copy of excerpted portions of the **Personal Injury Plaintiffs' April 14, 2023 Amended Master Complaint**, ECF 234-1. In paragraph 845 of the Complaint, the Personal Injury Plaintiffs identified a list of specific features on which their defective design claims were premised, including "age verification." *See id.* ¶ 845 (enumerating list of allegedly defective features, including "age verification").

6. Attached hereto and lodged with the Court as **Exhibit C** is a true and correct copy of excerpted portions of **Meta's December 22, 2023 Motion to Dismiss the Multistate Attorneys General Complaint and Florida Attorney General Complaint**, ECF 15, Case No. 4:23-cv-5885-YGR. Meta moved to dismiss the State AGs' Unfairness Claims on the ground that "this Court has already ruled that Section 230 bars claims based on the very features challenged by the States as constituting unfair trade practices," as listed in paragraph 847 of their Complaint. *Id.* at 19 (citing Court's Order Denying Defendants' Motion to Dismiss Personal Injury Plaintiffs' Master Complaint (ECF 430)). Meta then explained why Section 230 bars each of those five specific features: (1) infinite scroll and autoplay; (2) ephemeral content features; (3) notifications; (4) algorithms; and (5) Likes. *Id.* at 19–23.

7. Attached hereto and lodged with the Court as **Exhibit D** is a true and correct copy of excerpted portions of the **State AGs' February 5, 2024 Opposition to Meta's Motion to Dismiss the Multistate Attorneys General Complaint and Florida Attorney General Complaint**, ECF 18, Case No. 4:23-cv-5448-YGR. In that Opposition, the State AGs asserted that Section 230 does not bar their Unfairness Claims based on the five features identified in paragraph 847 the Complaint, *see id.* at 18–22, as well as three additional features not identified in paragraph 847 of their Complaint: (1) the ability to maintain multiple Instagram accounts, (2) appearance-altering filters, and (3) users' inability to

---

[1] Two other portions of the State AGs' Complaint—pertaining to their deception claims and their COPPA claim—referenced age verification, but only in the context of (1) explaining why statements describing Meta's policy of prohibiting under-13 users on the platforms were allegedly misleading (*see* ECF 73-2 ¶¶ 430–57), (2) alleging that Meta had actual knowledge of under-13 users on the platforms (*see id.* ¶¶ 699–731), and (3) alleging that Meta's platforms are directed towards under-13 users (*see id.* ¶¶ 767–70).

self-restrict time spent on the services. *Id.* at 17. The Opposition did not contend that the State AGs' Unfairness Claims were premised on age-verification features; the term "age verification" did not appear anywhere in the Opposition.

8. Attached hereto and lodged with the Court as **Exhibit E** is a true and correct copy of excerpted portions of **Meta's March 1, 2024 Reply in Support of Meta's Motion to Dismiss the Multistate Attorneys General Complaint and Florida Attorney General Complaint**, ECF 662. In that Reply, Meta argued that the five features identified in paragraph 847 of the Complaint were barred from challenge under Section 230. *Id.* at 8–11. With respect to the three additional features identified in the AGs' Opposition brief, Meta argued that the AGs could not premise their Unfairness Claims on those features because "their Complaint does not plead challenges to these features as part of their unfair practices claims," *id.* at 11–12; however, Meta recognized that "the Court previously ruled that claims based on appearance-altering filters and the lack of options to self-restrict time are not barred by Section 230 or the First Amendment," *id.* at 12 n.13 (citing ECF 430).

9. Attached hereto and lodged with the Court as **Exhibit F** is a true and correct copy of excerpted portions of the **State AGs' June 3, 2024 Response to Meta's First Set of Interrogatories**. Meta's Interrogatory No. 4 asked the State AGs to identify all "unfair" or "unconscionable" practices that they allege violated any state law under which they seek recovery. *Id.* at 11. The response identified only the following features as unfair practices: "features known to promote compulsive, prolonged, and unhealthy use by young users"[2]; "infinite scroll, ephemeral content features, autoplay, quantification and display of 'Likes,' and disruptive alerts"; "notifications"; "ephemeral content features"; "beautification

---

[2] Here, the response cited "Complaint Paragraphs 68–85," *id.*, which correspond to a subsection of the Complaint entitled "2. Meta specifically targets young users," Ex. A ¶¶ 86–85. Since that subsection did not identify any such "features," Meta assumes the response should instead have cited the immediately following subsection of their Complaint—entitled "3. Meta designs and deploys features to capture young users' attention and prolong their time on its Social Media Platforms"—which identifies the following alleged "features known to promote compulsive, prolonged, and unhealthy use by young users": "engagement-based (as opposed to chronological) feeds; infinite scroll; push notifications; ephemeral content; and video-based content." *See* Ex. A ¶¶ 86–116. That subsection did not identify "age verification" as such an alleged feature.

and other camera filters"; and "Recommendation Algorithms." *Id.* at 12–14. The response did not list age verification as an unfair practice. *See id.* at 11–16.[3]

10. Attached hereto and lodged with the Court as **Exhibit G** is a true and correct copy of excerpted portions of the **Court's October 15, 2024 Order Largely Denying in Part Meta's Motion to Dismiss the Multistate Attorneys General Complaint but Limiting the Scope of Claims** (ECF 1214). The Court's Order explained that the State AGs' Unfairness Claims "focus on the harm caused by specific product features (eight identified in this motion)." *Id.* at 21. The Court found that the Unfairness Claims were "subject to the same conduct-specific, feature-by-feature analysis that the Court undertook in its prior order relating to products liability claims." *Id.* at 25. The Court held that "Section 230 bars the States' unfairness claims relating to many platform features, *except for* allegations relating to appearance-altering filters, features that hinder time restrictions, and the 'multiple accounts' function." *Id.* at 45 (emphasis added).

11. Attached hereto and lodged with the Court as **Exhibit H** is a true and correct copy of excerpted portions of the **State AGs' April 10, 2025 Second Supplemental Response to Meta's First Set of Interrogatories**. The supplemental response to Interrogatory No. 4 incorporated by reference the June 3, 2024 response (Exhibit F) and did not identify any additional features as unfair practices. *See id.* at 8–10. The response did not mention age verification. *See id.*

12. Attached hereto and lodged with the Court as **Exhibit I** is a true and correct copy of excerpted portions of the **State AGs' June 9, 2025 Amended Complaint for Injunctive and Other Relief**, ECF 207, Case No. 4:23-cv-5448-YGR. In paragraph 847 of the Amended Complaint, the AGs again identified a list of specific features on which their Unfairness Claims were premised. *See id.* ¶ 847 (alleging that five features—"infinite scroll, ephemeral content features, autoplay, quantification and

---

[3] Age verification also is not mentioned in the portion of the response identifying Meta's alleged violation of COPPA—i.e., the purported "collection of personal information of under-13 users without first obtaining verifiable parental consent"—as a separate basis for the State AGs' Unfairness Claims. *See id.* at 14–15 (asserting that Meta has "actual knowledge" of under-13 users on its platforms and that Meta "directs Instagram and Facebook to children").

4

DECLARATION OF ASHLEY M. SIMONSEN IN SUPPORT OF NOTICE OF FILING MATERIALS RELEVANT TO META'S OPPOSITION (ECF 3060-1) TO STATE AGS' MOTION TO STRIKE FIVE META WITNESSES FROM META'S TRIAL WITNESS LIST (ECF 3056)
4:22-md-03047-YGR
4:23-cv-05448-YGR

display of 'Likes,' and disruptive alerts"—"promote compulsive, prolonged, and unhealthy use by young users"). The list again did not include age verification.[4]

13. Attached hereto and lodged with the Court as **Exhibit J** is a true and correct copy of the **State AGs' October 6, 2025 Third Supplemental Response to Meta's First Set of Interrogatories**. The supplemental response to Interrogatory No. 4 cited, for the first time, a "Sixth" purported basis for the State AGs' Unfairness Claims: Meta's purported "fail[ure] to employ processes to effectively prevent children under the age of 13 from joining and/or using Instagram and Facebook." *Id.* at 9. On the date this response was served (October 6, 2025), fact discovery had been closed for six months (i.e., since April 4, 2025).

14. Attached hereto and lodged with the Court as **Exhibit K** is a true and correct copy of excerpted portions of the **State AGs' December 12, 2025 Letter Brief Regarding Trial Strategy**, ECF 2626. In the letter brief, the State AGs asserted that their Unfairness Claims "concern four discrete features: appearance-altering filters, time restriction tools, the multiple accounts function, *and Meta's age verification tools*." *Id.* at 5 (emphasis added); *see also id.* at 7.

15. Attached hereto and lodged with the Court as **Exhibit L** is a true and correct copy of excerpted portions of the **State AGs' February 27, 2026 Opposition to Meta's Motion for Summary Judgment**, ECF 2779. The Opposition observed in a footnote that Meta had not sought summary judgment "with respect to unfairness claims regarding [Meta's] deficient age verification tools and functions," before citing the Court's order resolving Defendants' motion to dismiss *the Personal Injury Plaintiffs' Complaint*. *Id.* at 29 n.51. The Opposition then asserted that "Meta had notice of these claims." In support of this assertion, the Opposition cited (1) the State AGs' December 2025 letter brief on trial strategy (Exhibit K); (2) their June 3, 2024 response to Meta's Interrogatory No. 4 (Exhibit J), which did not disclose age verification as an allegedly "unfair" practice; and (3) four paragraphs of their Amended

---

[4] Again, two other portions of the Amended Complaint—pertaining to the State AGs' deception claims and their COPPA claim—referenced age verification, but only in the context of (1) explaining why statements describing Meta's policy of prohibiting under-13 users on the platforms were allegedly misleading (*see* ECF 207, No. Case No. 4:23-cv-5448-YGR, ¶¶ 430–57), (2) alleging that Meta had actual knowledge of under-13 users on the platforms (*see id.* ¶¶ 699–731), and (3) alleging that Meta's platforms are directed towards under-13 users (*see id.* ¶¶ 767–70).

Complaint (¶¶ 725–29) (Exhibit I), which discussed age verification only in the context of alleging that Meta had actual knowledge of under-13 users on its platforms (not as an allegedly unfair practice). *Id.*

16.    Attached hereto and lodged with the Court as **Exhibit M** is a true and correct copy of Meta's March 17, 2026 **Reply in Support of Meta's Motion for Summary Judgment**, ECF 2892. Meta's Reply explained why the State AGs' Unfairness Claims "as to the three remaining features" (i.e., the three features remaining following the Court's motion-to-dismiss Order (Exhibit G)) targeted Meta's status or conduct as a publisher of third-party content. *Id.* at 17. Addressing the State AGs' suggestion in footnote 51 of their Opposition that their Unfairness Claims should survive summary judgment based on a challenge to Meta's "deficient age verification tools and functions," Exhibit L at 29 n.51, Meta explained that "[e]ven if allegedly deficient age verification tools could constitute a fourth 'feature' on which the AGs' remaining unfairness claims are premised, those claims would be barred by Section 230," citing *Doe (K.B.) v. Backpage.com, LLC*, 768 F. Supp. 3d 1057, 1065 (N.D. Cal. 2025). *Id.* at 17 n.32.

17.    Attached hereto and lodged with the Court as **Exhibit N** is a true and correct copy of excerpted portions of the **State AGs' March 3, 2026 Fifth Supplemental Response to Meta's First Set of Interrogatories**. The supplemental response to Interrogatory No. 4 did not list the age-verification feature as an unfair practice, but did incorporate by reference the State AGs' prior responses to the interrogatory. *See id.* at 9–10.

18.    On May 30, 2026, I sent counsel for the State AGs, Megan O'Neill, an email attaching an updated Pretrial Schedule reflecting the additional deadlines that were set at the May 27, 2026 conference, including the June 4, 2026 deadline for the instant submission. The draft Pretrial Schedule attached to my email described that deadline as the date "Meta Submits Follow-Up Materials on AGs' Motion to Strike," and included a footnote describing the materials the Court had instructed Meta to submit. Despite returning redlines to the draft on June 2, 2026, counsel for the State AGs never disclosed that they planned to file "supplemental" materials on June 4, 2026. To the contrary, they sought to justify certain edits they made to the description of that deadline (and proposed deletion of the footnote) by explaining in a comment, "Instead of haggling over the language, let's just avoid lengthy and unnecessary footnotes."

**Motion to Strike Briefing**

19.    Attached hereto and lodged with the Court as **Exhibit O** is a true and correct copy of excerpted portions of the **State AGs' Motion to Strike Late-Disclosed Witnesses** (ECF 3056) that pertain to Mr. Jensen.

20.    Attached hereto and lodged with the Court as **Exhibit P** is a true and correct copy of excerpted portions of **Meta's Opposition to State AGs' Motion to Preclude (1) Three Meta 30(B)(6) Witnesses and (2) Two Meta Fact Witnesses from Testifying at MDL AG Trial (ECF 3060.1)** that pertain to Mr. Jensen.

**30(b)(6) Witnesses**

21.    At the May 27, 2026 conference, the Court also directed Meta to provide the Court with a list of the 30(b)(6) topics on which the three 30(b)(6) witnesses at issue on the AGs' motion to strike— Felicia Chen, Nicholas Wakefield, and Jessica Walton—were designated as corporate designees for Meta. *See* Tr. 34:22–24, 107:7–11.  Attached hereto and lodged with the Court as **Exhibit Q** is a true and correct copy of the **State AGs' January 31, 2025 Amended Notice of 30(b)(6) Deposition of Meta Platforms, Inc.** (the "Notice").  The paragraphs that follow set forth the specific topics on which each of the three 30(b)(6) witnesses was prepared to testify as a corporate designee, based on Meta's good-faith understanding of the Parties' negotiations with respect to the scope of each topic set forth in the Notice.

22.    Felicia Chen was designated as a 30(b)(6) witness to provide testimony on the following topics:

    a.  The following fields in data produced to the Plaintiffs as Volume 237:
        i.  R&D, Payroll and Related_FBP
        ii.  M&S, Payroll and Related_FBP
        iii.  COR – Amortization of Intangibles
    b.  Data produced to the Plaintiffs as Volume 255. Specifically:
        i.  How data produced as Volume 255 is generated and maintained
        ii.  The following fields within Volume 255:
            1.  RL R&D
            2.  Infra R&D
            3.  Monetization R&D

4. COR – Amortization of Intangibles

iii. The meaning of the term "shared costs" in Volume 255.

Attached hereto and lodged with the Court as **Exhibit R** is a true and correct copy of excerpted portions of the transcript of Ms. Chen's August 19, 2025 deposition, regarding the topics on which Ms. Chen was designated.

2. Nicholas Wakefield was designated as a 30(b)(6) witness to provide testimony on the following topics:

a. Data that Meta produced in response to the Plaintiffs' Requests for Production of Documents ("RFP") Nos. 112, 148–50, and 161–64.[5] Those RFPs call for: (i) top 500 IG and FB accounts by followers, by quarter, (ii) quarterly and annual MAU and DAU by age and location, (iii) annual number of posts by teens, (iv) teen impressions and interactions with content posted by teens, (v) teen impressions and interactions with content posted by accounts identified in an appendix provided by the Plaintiffs, along with followers data for those accounts, and (vi) monthly new accounts by teen stated age.

b. Data that Meta produced that shows:[6] (i) daily Active Users ("DAU") and monthly Active Users ("MAU") by age and by city and state for Instagram and by zip code, city, and state for Facebook; (ii) time spent per day for Instagram and Facebook (broken down by state, month, and various age metrics), (iii) session length for Instagram and Facebook (broken down by state and various age metrics), and (iv) number of sessions per day for Instagram and Facebook (broken down by state and various age metrics).

Attached hereto and lodged with the Court as **Exhibit S** is a true and correct copy of excerpted portions of the transcript of Mr. Wakefield's June 10, 2025 deposition, confirming the topics on which Mr. Wakefield was designated.

3. Jessica Walton was designated as a 30(b)(6) witness to provide testimony on the following topics:

a. The development of, accuracy of, and data sources for the following sections in Meta's 10-Ks:

i. Item 7 – Management's Discussion and Analysis of Financial Condition and Results of Operations

---

[5] At the time of Mr. Wakefield's deposition, this included data produced as Volumes 77 and 77R (RFP Nos. 148–150) and Volume 150 (RFP Nos. 112 and 161–64).

[6] At the time of Mr. Wakefield's deposition, this included Volumes 77, 77R, 188, 212, 215, 225, and 235.

8

1. Consolidated and Segment Financial Results

2. Family of Apps Metrics

3. Developments in Advertising

4. Trends in Our Revenue by User Geography

5. Trends in Our Family Metrics

6. Trends in Our Ad Impressions and Average Price Per Ad

7. Critical Accounting Estimates

8. Change in Accounting Estimates

9. Components of Results of Operation including both Revenue and Cost of Revenue and Operating Expenses

10. Results of Operation

11. Liquidity and Capital Resources

12. Material Cash Requirements

ii. Item 8 – Financial Statements and Supplementary Data

1. Consolidated Balance Sheets

2. Consolidated Statements of Income

3. Consolidated Statements of Comprehensive Income

4. Consolidated Statements of Cash Flows

5. Note 1. Summary of Significant Accounting Policies

    a. Revenue Recognition

    b. Cost of Revenue

    c. Content Costs

    d. Software Development Costs

    e. Property and Equipment

    f. Lease Obligations

6. Note 2. Revenue

7. Note 3. Restructuring

8. Note 7. Property and Equipment

9. Note 8. Leases

10. Note 11. Accrued Expenses and Other Current Liabilities

11. Note 12. Commitments and Contingencies – Contractual Commitments Portion

12. Note 16. Segment and Geographical Information

9

DECLARATION OF ASHLEY M. SIMONSEN IN SUPPORT OF NOTICE OF FILING MATERIALS RELEVANT TO META'S OPPOSITION (ECF 3060-1) TO STATE AGS' MOTION TO STRIKE FIVE META WITNESSES FROM META'S TRIAL WITNESS LIST (ECF 3056)
4:22-md-03047-YGR
4:23-cv-05448-YGR

              iii.  Item 15 – Exhibit and Financial Statement Schedules

   b.  The development of, accuracy of, and data sources for the following sections in Meta's 10-Qs:

              i.  Part I, Item 1 – Financial Statements

1. Consolidated Balance Sheets
2. Consolidated Statements of Income
3. Consolidated Statements of Comprehensive Income
4. Consolidated Statements of Cash Flows
5. Note 1. Summary of Significant Accounting Policies
6. Note 2. Revenue
7. Note 3. Restructuring
8. Note 7. Property and Equipment
9. Note 8. Leases
10. Note 11. Accrued Expenses and Other Current Liabilities
11. Note 12. Commitments and Contingencies
12. Note 15. Segment Information

              ii.  Part I, Item 2 – Management's Discussion and Analysis of Financial Condition and Results of Operation

1. Consolidated and Segment Results
2. Family of Apps Metrics
3. Trends in Our Revenue by User Geography
4. Trends in Our Family Metrics
5. Trends in Our Ad Impressions and Average Price Per Ad
6. Revenue
7. Cost of Revenue and Operating Expenses
8. Results of Operation
9. Liquidity and Capital Resources

   c.  Produced data concerning average revenue per user, revenue, cost (along with how that cost data compares with cost data in SEC filings), and profitability.[7]

   d.  Meta's budgeting process, including how Meta estimates future costs, how Meta allocates costs, and the documents Meta produced in response to RFP No. 153 (Volumes 161 and 170).

---

[7] At the time of Ms. Walton's deposition, this included data produced as Volumes 131, 161, 170_001, 170_002, 170_003, 202, 209, 216, 233, and 237.

e.  Board of Directors processes and procedures related to financial segments.

f.  How Meta uses for advertising purposes user data collected pursuant to Meta's publicly available Privacy Policy.

Attached hereto and lodged with the Court as **Exhibit T** is a true and correct copy of excerpted portions of the transcript of Ms. Walton's June 6, 2025 deposition, regarding certain of the topics on which Ms. Walton was designated.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.  Executed on June 4, 2026.

By:       _/s/ Ashley M. Simonsen_
           Ashley M. Simonsen

COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Paul W. Schmidt, *pro hac vice*
Timothy C. Hester, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pschmidt@cov.com
           thester@cov.com

*Attorneys for Defendants Meta Platforms, Inc.*
*f/k/a Facebook, Inc. and Instagram, LLC*

DECLARATION OF ASHLEY M. SIMONSEN IN SUPPORT OF NOTICE OF FILING MATERIALS RELEVANT TO META'S OPPOSITION (ECF 3060-1) TO STATE AGS' MOTION TO STRIKE FIVE META WITNESSES FROM META'S TRIAL WITNESS LIST (ECF 3056)
4:22-md-03047-YGR
4:23-cv-05448-YGR