# Exhibit A

*LIST OF COUNSEL ON SIGNATURE PAGE*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

**STATE OF ARIZONA**, *ex rel.* KRIS MAYES, ATTORNEY GENERAL;

**THE PEOPLE OF THE STATE OF CALIFORNIA**;

**STATE OF COLORADO**, *ex rel.* PHILIP J. WEISER, ATTORNEY GENERAL;

**STATE OF CONNECTICUT**;

**STATE OF DELAWARE**, *ex rel.* KATHLEEN JENNINGS, ATTORNEY GENERAL OF THE STATE OF DELAWARE;

**STATE OF GEORGIA** *ex rel.* CHRISTOPHER M. CARR, ATTORNEY GENERAL OF THE STATE OF GEORGIA;

**STATE OF HAWAI'I**, *ex rel.* ANNE E. LOPEZ, ATTORNEY GENERAL;

**STATE OF IDAHO**, through ATTORNEY GENERAL RAÚL R. LABRADOR;

**THE PEOPLE OF THE STATE OF ILLINOIS**;

**STATE OF INDIANA**;

**STATE OF KANSAS**, *ex rel.* KRIS W. KOBACH, Attorney General;

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Complaint for Injunctive and Other Relief

**THE COMMONWEALTH OF KENTUCKY**;

**STATE OF LOUISIANA**;

**STATE OF MAINE**;

**OFFICE OF THE ATTORNEY GENERAL OF MARYLAND**;

**STATE OF MICHIGAN** *ex rel.* DANA NESSEL, ATTORNEY GENERAL;

**STATE OF MINNESOTA**, by its ATTORNEY GENERAL, KEITH ELLISON;

**STATE OF MISSOURI**, *ex rel.* ANDREW BAILEY, ATTORNEY GENERAL;

**STATE OF NEBRASKA** *ex rel.* MICHAEL T. HILGERS, ATTORNEY GENERAL;

**MATTHEW J. PLATKIN**, ATTORNEY GENERAL FOR THE **STATE OF NEW JERSEY**, AND **CARI FAIS**, ACTING DIRECTOR OF THE **NEW JERSEY DIVISION OF CONSUMER AFFAIRS**;

**THE PEOPLE OF THE STATE OF NEW YORK**, by LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK;

**STATE OF NORTH CAROLINA**, *ex rel.* JOSHUA H. STEIN, ATTORNEY GENERAL;

**STATE OF NORTH DAKOTA**, *ex rel.* DREW WRIGLEY, ATTORNEY GENERAL;

**STATE OF OHIO**, *ex rel.* ATTORNEY GENERAL DAVE YOST;

**STATE OF OREGON** *ex rel.* ELLEN F. ROSENBLUM, ATTORNEY GENERAL FOR THE STATE OF OREGON;

**COMMONWEALTH OF PENNSYLVANIA** BY ATTORNEY GENERAL MICHELLE A. HENRY;

**STATE OF RHODE ISLAND**;

**STATE OF SOUTH CAROLINA**, *ex. rel.* ALAN M. WILSON, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF SOUTH CAROLINA;

**STATE OF SOUTH DAKOTA** *ex rel.* MARTY J. JACKLEY, SOUTH DAKOTA ATTORNEY GENERAL;

**COMMONWEALTH OF VIRGINIA**, *ex rel.* JASON S. MIYARES, ATTORNEY GENERAL;

**STATE OF WASHINGTON**, *ex rel.* ROBERT W. FERGUSON, ATTORNEY GENERAL;

**STATE OF WEST VIRGINIA**, *ex rel.* PATRICK MORRISEY, ATTORNEY GENERAL; and

**STATE OF WISCONSIN**,

                 **Plaintiffs**,

        v.

**META PLATFORMS, INC.**;

**INSTAGRAM, LLC**;

**META PAYMENTS, INC.**; and

**META PLATFORMS TECHNOLOGIES, LLC**,

                 **Defendants**.

**TABLE OF CONTENTS**

Page

I.    SUMMARY OF THE CASE ................................................................................... 1

II.   PUBLIC INTEREST ............................................................................................ 4

III.  JURISDICTION, VENUE AND DIVISIONAL ASSIGNMENT ................................... 4

IV.   RELEVANT TIMES ........................................................................................... 5

V.    PLAINTIFFS ..................................................................................................... 6

VI.   DEFENDANTS .................................................................................................. 6

VII.  TRADE AND COMMERCE IN THE FILING STATES ............................................. 10

VIII. META'S SCHEME TO EXPLOIT YOUNG USERS FOR PROFIT ............................. 11

    A.    To maximize profit, Meta's business model focuses on increasing young users' engagement. ............................................................................ 12

        1.    Meta monetizes young users' attention through data harvesting and targeted advertising. ...................................................................... 12

        2.    Meta specifically targets young users. .......................................... 14

        3.    Meta designs and deploys features to capture young users' attention and prolong their time on its Social Media Platforms. ............................. 19

    B.    Meta falsely represents that its Social Media Platform features are safe and not designed to induce young users' compulsive and extended use. ..................... 23

        1.    Meta represents to the public that its Social Media Platforms are designed to support young users' well-being. .......................................... 24

        2.    Meta prioritizes maximizing engagement over young users' safety. ......... 25

        3.    Meta's Recommendation Algorithms encourage compulsive use, which Meta does not disclose. ...................................................... 28

        4.    The Recommendation Algorithms are harmful to young users' mental health, notwithstanding Meta's representations to the contrary. ................................................................................. 34

        5.    Meta's use of social comparison features such as "Likes" also promotes compulsive use and mental health harms for young users. ........ 41

        6.    Meta's use of disruptive audiovisual and haptic notifications interferes with young users' education and sleep. .................................... 51

        7.    Meta promotes Platform features such as visual filters known to promote eating disorders and body dysmorphia in youth. ....................... 56

        8.    Meta offers features that it claims promote connection between friends, but actually serve to increase young users' time spent on the Platform. .............................................................................. 61

        9.    Through its Platform features, Meta discourages young users' attempts to disengage, notwithstanding Meta's representations to the contrary ..................................................................................... 62

**TABLE OF CONTENTS**
(continued)

| | | Page |
|---|---|---|

10. Meta knows its Platform features are addictive and harmful, but misrepresents and omits this information in public discourse. ................. 67

11. Meta makes its Platforms and associated harmful features available to especially young and vulnerable users. ................................................ 70

C. Meta has misled its users and the public by boasting a low prevalence of harmful content on its Social Media Platforms—while concealing internal studies showing the high incidence of user harms. ............................................... 73

D. Meta's Platform features cause young users significant physical and mental harm, of which Meta is keenly aware. ................................................................. 80

IX. META'S COPPA NONCOMPLIANCE ............................................................................. 105

A. COPPA requires Meta to obtain verifiable parental consent for Instagram and Facebook users under the age of 13. ................................................................ 106

B. Meta does not comply with COPPA with respect to Instagram. ........................ 107

1. Meta possesses actual knowledge of children on Instagram and collects their personal information without obtaining parental consent ........................................................................................................ 107

2. Instagram is "directed to children." ......................................................... 124

3. Meta does not obtain verifiable parental consent before collecting personal information from users under the age of 13 on Instagram. ...... 136

C. Meta does not comply with COPPA with respect to Facebook. ......................... 137

1. Meta has actual knowledge of users under age 13 on Facebook. .......... 137

2. Facebook is "directed to children." ......................................................... 138

3. Meta does not obtain verifiable parental consent before collecting personal information from users under age 13 on Facebook. ................. 141

X. META CONTINUES TO EXPAND AND INTRODUCE NEW PLATFORMS .......... 142

XI. SUMMARY OF META'S DECEPTIVE AND UNFAIR OR UNCONSCIONABLE ACTS AND PRACTICES ....................................................... 143

CLAIMS FOR RELIEF ........................................................................................................ 145

PRAYER FOR RELIEF ....................................................................................................... 198

Complaint for Injunctive and Other Relief

are more likely to: (1) be influenced by advertisements; (2) become lifelong customers; and (3) set trends that the rest of society emulates. To draw young people into its ecosystem and keep them coming back, Meta employs technologies designed to maximize young users' time on, and engagement with, its Social Media Platforms.

83.     And, because advertisers want to target ads to young users, Meta permits targeting of advertising to teenagers based on their age, gender, and location. As one Meta employee expressed in an August 2017 email, one of Meta's "Longer-term Focus Areas" was how to "get teens to share their location with us so we can leverage that data for awesome product experiences and also analytics around high schools."

84.     Meta has acknowledged the importance of its young user market by quantifying those users' value to the company in internal correspondence. For example, an internal email circulated in September 2018 showed Meta characterizing its youngest users in terms of their "Lifetime Value (LTV)" to the company, defined as the cumulative total profit expected from a user: "The lifetime value of a 13 y/o teen is roughly $270 per teen." That email went on to caution that, "[t]his number is core to making decisions about your business," and, accordingly, "you do not want to spend more than the LTV of the user."

85.     But externally, Meta has denied that it places a monetary value on young users. On September 30, 2021, at a Senate subcommittee hearing, Senator Amy Klobuchar asked Meta executive Antigone Davis what Meta believed the lifetime monetary value of young users was; Davis responded, "[t]hat's just not the way we think about [it]." Davis also denied that Meta "considered the profit value of developing products when [Meta] make[s] their decisions of how those products look," testifying that this would be a "terrible business model."

### 3.     Meta designs and deploys features to capture young users' attention and prolong their time on its Social Media Platforms.

86.     Acquiring young users helps secure Meta's profit stream over time. By capturing users' attention and engagement when they are young, Meta ensures future engagement and monetization as those young users grow up.

19

87.     Meta thus develops and implements features to attract young users and keep them engaged on its Social Media Platforms for as long as possible. These features include: engagement-based (as opposed to chronological) feeds; infinite scroll; push notifications; ephemeral content; and video-based content.

88.     Meta had originally displayed content on a user's "Feed" chronologically, i.e., in the order the content was posted by people the user elected to follow. Meta moved from chronological Feeds to engagement-based Feeds in 2009 (for Facebook) and 2016 (for Instagram).

89.     The engagement-based Feed is different and alters the users' experience. It algorithmically presents material to users based on several engagement components: posts with more "Likes," comments, and other indicia of user engagement are displayed to users first.

90.     This change was designed to prioritize material most likely to engage users for longer periods of time.

91.     In the fall of 2016, Instagram debuted its infinite scroll system.

92.     Infinite scroll is characterized by the partial display of additional content at the bottom of the user's screen, such that the user is typically unable to look at a single post in isolation (without seeing the top portion of the next post in their Feed).

93.     The "teasing" of yet-to-be-viewed content continues indefinitely; as the user scrolls down the Feed, new content is automatically loaded and "teased."

94.     This "teasing" feature is intended to keep young users of the Platform engaged and continuing to scroll to the new content.

95.     In April 2015, Meta introduced a variety of "push notifications" to Instagram. Push notifications are auditory and visual cues to alert users when accounts they follow add new content.

96.     Push notifications allowed Instagram to draw its users back to the Platform at any time of day. Once push notifications were introduced, Meta sought to increase the number of these notifications, tracking "notification growth" and designing "new push campaign" tools to test their impact on user engagement.

20

97.     Meta also sought to increase engagement through making certain content available to users only temporarily—with notifications and visual design cues indicating that the content would soon disappear forever (ephemeral content).

98.     Ephemeral content leads young users to more frequently open Meta's Social Media Platforms so they do not "miss out" on any new content. This phenomenon is called "Fear of Missing Out," or "FOMO." Meta designed ephemeral content features in its Social Media Platforms to induce this sense of FOMO in young users.

99.     For example, on August 2, 2016, Meta introduced a feature to Instagram designed to show images and narratives for only a short amount of time before disappearing, known as the "Stories" feature. Meta released a similar feature to Facebook in 2017.

100.    The purpose of this feature was in large part to help drive teen engagement.

101.    An internal Meta document from 2018 states: "we've invested in FB stories—and have seen engagement more than double[;] teen original sharing [is] up for the first time since 2012."

102.    Another example is "Live," which gives users the ability to livestream videos to followers or the public.

103.    Meta launched Facebook Live on a limited basis to celebrities and other high-profile users in August 2015, with the feature being available to all users by April 2016. Instagram soon followed in November 2016.

104.    Live allows users to create video content in real time that their followers can watch and react to, often called "going Live."

105.    When an account goes Live, the Instagram Platform sends out a notification.

106.    Meta saw fairly quickly that the Live feature was successful among young users, including younger teens. As an internal highlights memo noted in February 2017, of the 9.2 million broadcasts per day, "[Meta] found that 35% of [Live] broadcasters are teens (early and late high school)."

107.    In addition to video-streaming offered through the Live feature, Meta has also designed and implemented several video features, including "IGTV," "Instagram Video," and

21

ultimately "Reels."[7] As with prior features, Meta focused on teen engagement with these video features.

108. For instance, an internal email from April 2019 revealed that Meta's "Q2 stretch goal" was "2M[illion] hours of teen watch time" on IGTV.

109. In 2020, when Meta introduced its short-form video feature, "Reels," to the U.S. market on Instagram, it was designed to compete with other platforms like TikTok that were growing in popularity. Reels were made available on Facebook in September 2021.

110. Reels are algorithmically presented to users based on a number of factors, including the user's activity, the popularity of the content, and the viewer's connection to the creator.

111. Reels display metrics such as Like counts, comments, and views in the video itself, which reduces the need for the user to navigate away from the video.

112. The Reels feature is central to Meta's efforts to attract and retain young users. As noted in a presentation on engaging young users, Meta said that it was "investing heavily in Reels, Stories & Creators in an effort to generate more value for teens" on Instagram.

113. As with other features Meta has deployed, young users are critical to Reels' success. One Meta employee put it best: "obviously teens are key to winniing [sic] in Reels."

114. Meta's anxiety about the growth in popularity of video-based platforms like TikTok and Snapchat was evident in the rapidity with which Meta introduced Reels. Meta employees stated, with regard to Reels, that it was "scary the speed we are moving" and that introducing Reels was "purely opportunistic."

115. Meta Data Scientist and current Director of Data Science ████████ reflected on Meta's introduction of Reels in an internal chat: "we either do things WAY TOO FAST without Data. Or do things WAY TO[O] SLOW becau[se] of Design/Principles."

---

[7] IGTV was revamped in October 2021 (in a shift to Instagram Video), and ultimately removed completely from the Platform in March 2022. Reels was merged with and superseded "Instagram Video" in June 2022.

116. Meta's development of these engagement features disregarded its own internal research about how design choices cause compulsive use. In June 2018, an internal presentation called "Facebook 'Addiction'" acknowledged that although "habits can be changed by behavior regulation," "aspects of Facebook," including "mindless" consumption of a feed and the fact that "it is easy to keep scrolling and go on frequently" make it "difficult to limit one's use."

**B.      Meta falsely represents that its Social Media Platform features are safe and not designed to induce young users' compulsive and extended use.**

117. Meta has misrepresented the impact of the features used by its Social Media Platforms that drive young users to spend extended time on the Platforms.

118. While Meta consistently reassures parents, lawmakers, and users that its Social Media Platforms are suitable for young users and designed to promote their well-being, it continues to develop and implement features that it knows induce young users' extended, addictive, and compulsive social media use. These features include:

- Algorithmic recommendation and sequencing;
- Public display and quantification of engagement metrics such as Likes;
- Face and body image manipulation filters;
- Disruptive audiovisual and haptic alerts;
- Infinite scroll and autoplay formats;
- Permitting and encouraging users to create multiple accounts; and
- "Ephemeral" presentation of social content.

119. Meta's own researchers have concluded that due to Meta's deliberate design choices, "the benefits and drawbacks for Instagram are closely linked." Instagram had the potential to positively affect its users by providing, among other things, a positive community and connection with others who shared identities, abilities, and interests—including isolated youth in marginalized racial, ethnic, and sexual minorities.[8] But due to Meta's deliberate design choices, the net result has been that young users are negatively affected by using Instagram compulsively.

_____

[8] *See Social Media and Youth Mental Health: The U.S. Surgeon General's Advisory* 6, Dept. Health & Human Servs. (2023) ("[S]tudies have shown that social media may support the

Complaint for Injunctive and Other Relief

722. In the same 2017 email, Zuckerberg noted that because "kids are getting their first devices at 7, 8 or 9," Meta was choosing to build a different product targeted instead at that even younger group of under-13 users.

723. In other words, Meta knows that 11- and 12-year-olds have used and will continue to use the version of Instagram that nominally excludes them. While Meta externally claimed that it built under-13 products for kids and tweens in a September 27, 2021 post on Instagram's website entitled "Pausing 'Instagram Kids' and Building Parental Supervision Tools," internally it recognizes that the under-13 products were truly directed to the younger age group of 7- to 9-year-olds (not tweens) with the expectation that tweens would continue to lie about their age to access the unrestricted adult version of Instagram.

724. In a 2022 research document, Meta noted that tweens and teens "deal[t] with bad actors [on Instagram] in different ways," using a 13- to 14-year-old age bucket to capture "tweens," showing that Meta knows that users who claim to be 13 or 14 often actually include users under the age of 13.

725. Meta has access to, and chooses not to use, feasible alternative age verification methods that would significantly reduce or eliminate the number of underage users on Meta's Social Media Platforms, for example, by requiring young users to submit student IDs upon registration.

726. Internal communications reveal that Meta has strategically chosen to eschew effective age verification designs in favor of user growth and retention of Instagram's youngest users.

727. In December 2017, an Instagram employee indicated that Meta had a method to ascertain young users' ages but advised that "you probably don't want to open this pandora's box" regarding age verification improvements.

728. Similarly, Meta has expressed concerns that any efforts to exclude "u13 age liars" could "impact growth" —i.e., Meta's bottom line. In an internal email from 2019, Davis asked Nick Clegg to "clarify with product leadership whether goal for age collection is to implement

121

measures needed to identify and remove u13 age liars, which may impact growth, or whether we are waiting to test growth impact before committing to anything."

729. Externally, Meta misleads the public by claiming, in a March 17, 2021 post on Instagram's website, that "we know that young people can lie about their date of birth. We want to do more to stop this from happening," and by developing talking points stating that "we are continuously looking for better ways to identify and remove underage accounts." But internal documents show that Meta consistently avoids research and projects that could unearth the existence of users under the age of 13—because it would impact Meta's bottom line.

730. Rather than excluding under-13 users from Instagram, Meta could alternatively comply with COPPA by obtaining informed parental consent after providing notice to parents of its intent to collect and use children's personal information. Meta chooses not to do so.

731. Despite knowing that its lack of age gates and later implementation of minimal age gate designs have allowed users under age 13 onto Instagram, Meta does not obtain verifiable parental consent before collecting the personal information of those users who routinely register for, and provide their personal information to, Instagram.

> f.     Data from Meta's age-estimation algorithms confirms that millions of individual accounts belong to children under age 13.

732. Because Meta knows that the self-reported ages of its youngest users are inaccurate, Meta maintains additional repositories of user age data generated by Meta's "age modeling algorithms" (or age models) that calculate each user's age based on sources of information that are more reliable than mere self-disclosures provided by children. These calculated ages are referred to internally as "modified" ages, "estimated" ages, or "imputed" ages.

733. Meta creates and retains records reflecting the estimated ages of all of its users, as determined by those age-modeling algorithms, sometimes referred to as "age affinity."

734. Upon information and belief, when Meta internally tracks users' ages for purposes of planning and strategy, Meta internally modifies the "stated" age of users to yield "modified" ages (i.e., Meta's best estimate of the users' actual ages based on data collected from their use of Meta's Platforms).

122

f.  Meta misrepresented, directly or indirectly, expressly or by implication that Meta's collection of user data was not for the purpose of causing those users to become addicted to the Social Media Platforms, when in reality that was one of the purposes for which Meta collected user data;

g.  Meta has made other false and deceptive representations, including as set forth in paragraphs 1 through 835.

**B.   Unfair and/or Unconscionable Acts and Practices**

847.   Meta engaged in unfair and unconscionable acts and practices, including the following unfair and/or unconscionable acts and practices, in connection with young users' use of and/or addiction to Meta's Social Media Platforms:

a.  Meta targeted its Social Media Platforms to young users while knowingly designing its Social Media Platforms to include features that Meta knew to be psychologically and physically harmful to young users—including features known to promote compulsive, prolonged, and unhealthy use by young users;

b.  Meta utilized Social Media Platform features that unfairly and/or unconscionably harm young users independently of any actions taken by third-party users of Meta's Platforms. These features include infinite scroll, ephemeral content features, autoplay, quantification and display of "Likes," and disruptive alerts, all of which were unfairly and/or unconscionably utilized by Meta to extract additional time and attention from young users whose developing brains were not equipped to resist those manipulative tactics;

c.  Meta designed, developed, and deployed disruptive audiovisual and vibration notifications and alerts and ephemeral content features in a way that unfairly and/or unconscionably exploited young users' psychological vulnerabilities and cultivated a sense of "fear of missing out" in order to induce young users to spend more time than they would otherwise choose on Meta's Social Media Platforms;

d.  Meta algorithmically served content to young users, according to "variable reinforcement schedules," thereby manipulating dopamine releases in young users,

144

unfairly or unconscionably inducing them to engage repeatedly with its products— much like a gambler at a slot machine; and

e.  Meta collected the personal information of under-13 users of Instagram and Facebook without first obtaining verifiable parental consent, which violated COPPA and the COPPA Rule.

848.  Meta's deployment of manipulative and harmful features, both on their own and especially in combination, for use by young users are unfair and/or unconscionable acts or practices.

849.  At all relevant times, Meta had a thorough understanding of the mental and physical harms and addiction suffered by young users of its Social Media Platforms. Instead of taking adequate measures to mitigate these damaging effects, Meta turned a blind eye to them, and persisted in exploiting young users' psychological vulnerabilities. Meta's acts and practices alleged herein are immoral, unethical, oppressive, and unscrupulous, including because they constitute knowing decisions causing unnecessary and unjustified harm to young users for Meta's financial gain.

850.  Meta's acts and practices alleged herein, including Meta's actions taken to encourage young users' compulsive and unhealthy use of and addiction to its Social Media Platforms, are offensive to public policy, as defined by statute and common law. The protection of minors from the harms of addiction and related afflictions are well-established objectives underlying public policy in the Filing States; Meta's acts and practices alleged herein, including Meta's actions taken to encourage young users' compulsive and unhealthy use of and addiction to its Social Media Platforms, are therefore offensive to public policy.

## CLAIMS FOR RELIEF

### COUNT I: COPPA VIOLATIONS BY META

**(15 USC § 6501 *et seq.*; 16 C.F.R. § 312.1 *et seq.*)**

851.  The Filing States reallege and incorporate herein by reference each of the allegations contained in the preceding paragraphs as though fully alleged in this cause of action.

145

Dated: October 24, 2023

Respectfully submitted,

**KRIS MAYES**
Attorney General
State of Arizona

*/s/ Vince Rabago*
Vince Rabago (AZ No. 015522 CA No. 167033) *pro hac vice app. forthcoming, if required*
Chief Counsel - Consumer Protection and Advocacy Section
Nathan Whelihan (AZ No. 037560) *pro hac vice app. forthcoming, if required*
Assistant Attorney General
Arizona Attorney General's Office
2005 North Central Avenue
Phoenix, AZ 85004
Phone: (602) 542-3725
Fax:    (602) 542-4377
Vince.Rabago@azag.gov
Nathan.Whelihan@azag.gov

*Attorneys for Plaintiff State of Arizona*

**ROB BONTA**
Attorney General
State of California

*/s/ Bernard Eskandari*
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (CA SBN 244395)
Supervising Deputy Attorney General
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer
(CA SBN 336428)
Marissa Roy (CA SBN 318773)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Bernard.Eskandari@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*

218

Complaint for Injunctive and Other Relief

**PHILIP J. WEISER**
Attorney General
State of Colorado


 /s/ Bianca E. Miyata
Bianca E. Miyata, CO Reg. No. 42012,
*pro hac vice app. forthcoming, if required*
Senior Assistant Attorney General
Lauren M. Dickey, CO Reg. No. 45773
First Assistant Attorney General
Megan Paris Rundlet, CO Reg. No. 27474
Senior Assistant Solicitor General
Elizabeth Orem, CO Reg. No. 58309
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6651
bianca.miyata@coag.gov


*Attorneys for Plaintiff State of Colorado, ex rel. Philip J. Weiser, Attorney General*


**WILLIAM TONG**
Attorney General
State of Connecticut

/s/ Lauren H. Bidra
Lauren H. Bidra (CT Juris No. 440552)
Special Counsel for Media and Technology
*Pro hac vice app. forthcoming, if required*
Matthew Fitzsimmons (CT Juris No. 426834)
Chief Counsel
*Pro hac vice app. forthcoming, if required*
Connecticut Office of the Attorney General
165 Capitol Avenue
Hartford, Connecticut 06106
Phone: 860-808-5306
Fax: 860-808-5593
Lauren.Bidra@ct.gov
Matthew.Fitzsimmons@ct.gov


*Attorneys for Plaintiff State of Connecticut*

**KATHLEEN JENNINGS**
Attorney General
State of Delaware

/s/ Dashiell Raj Radosti
Owen Lefkon
Director of Fraud and Consumer Protection
Marion Quirk
Director of Consumer Protection
Dashiell Radosti (DE Bar 7100*), pro hac vice app. forthcoming, if required*
Deputy Attorney General,
Delaware Department of Justice
820 N. French Street, 5th Floor
Wilmington, DE 19801
Phone: (302) 683-8800
Dashiell.Radosti@delaware.gov

*Attorneys for Plaintiff State of Delaware*


**CHRISTOPHER M. CARR**
Attorney General
State of Georgia

/s/ Melissa M. Devine
Melissa M. Devine (GA Bar No. 403670),
*pro hac vice app. forthcoming, if required*
Assistant Attorney General
Office of the Attorney General of the State of Georgia
2 Martin Luther King Jr. Drive, SE, Ste. 356
Atlanta, GA 30334
Phone: (404) 458-3765
Fax: (404) 651-9108
mdevine@law.ga.gov


*Attorneys for Plaintiff State of Georgia*

Complaint for Injunctive and Other Relief

**ANNE E. LOPEZ**
Attorney General
State of Hawai'i

/s/ *Bryan C. Yee*
BRYAN C. YEE (HA JD No. 4050)
Supervising Deputy Attorney General
CHRISTOPHER T. HAN (HA JD No. 11311), *pro hac vice app. forthcoming, if required*
Deputy Attorney General
Department of the Attorney General
Commerce and Economic Development Division
425 Queen Street
Honolulu, Hawai'i 96813
Phone: (808) 586-1180
Bryan.c.yee@hawaii.gov
Christopher.t.han@hawaii.gov

*Attorneys for Plaintiff State of Hawai'i*


**RAÚL R. LABRADOR**
Attorney General
State of Idaho

By:      /s/ *Nathan Nielson*
Stephanie N. Guyon (ID Bar No. 5989)
*pro hac vice app. forthcoming, if required*
Nathan H. Nielson (ID Bar No. 9234)
*pro hac vice app. forthcoming, if required*
Deputy Attorneys General
Attorney General's Office
P.O. Box 83720
Boise, ID 83720-0010
(208) 334-2424
stephanie.guyon@ag.idaho.gov
nathan.nielson@ag.idaho.gov

*Attorneys for Plaintiff State of Idaho*

**KWAME RAOUL**
Attorney General
State of Illinois

By:      /s/ *Susan Ellis*
**Susan Ellis**, Chief, Consumer Protection Division (IL Bar No. 6256460)
**Greg Grzeskiewicz**, Chief, Consumer Fraud Bureau (IL Bar No. 6272322)
**Jacob Gilbert**, Deputy Chief, Consumer Fraud Bureau (IL Bar No. 6306019)
**Daniel Edelstein**, Supervising Attorney, Consumer Fraud Bureau (IL Bar No. 6328692)
**Adam Sokol**, Senior Assistant Attorney General, Consumer Fraud Bureau (IL Bar No. 6216883)
**Hanan Malik**, Assistant Attorney General, Consumer Fraud Bureau (IL Bar No. 6316543)
**Emily María Migliore**, Assistant Attorney General, Consumer Fraud Bureau (IL Bar No. 6336392)
**Kevin Whelan**, Assistant Attorney General, Consumer Fraud Bureau (IL Bar No. 6321715)
**Office of the Illinois Attorney General**
100 W. Randolph Street
Chicago, Illinois 60601
312-814-2218
Susan.Ellis@ilag.gov
Greg.Grzeskiewicz@ilag.gov
Jacob.Gilbert@ilag.gov
Daniel.Edelstein@ilag.gov
Adam.Sokol@ilag.gov
Hanan.Malik@ilag.gov
Emily.Migliore@ilag.gov
Kevin.Whelan@ilag.gov
*(pro hac vice applications forthcoming, if required)*

*Attorneys for Plaintiff the People of the State of Illinois*

220

Complaint for Injunctive and Other Relief

**THEODORE E. ROKITA**
Attorney General
State of Indiana

/s/ Scott L. Barnhart
Scott L. Barnhart (IN Atty No. 25474-82)
*pro hac vice app. forthcoming, if required*
Chief Counsel and Director of Consumer
Protection
Corinne Gilchrist (IN Atty No. 27115-53)
*pro hac vice app. forthcoming, if required*
Section Chief, Consumer Litigation
Mark M. Snodgrass (IN Atty No. 29495-49)
*pro hac vice app. forthcoming, if required*
Deputy Attorney General
Office of the Indiana Attorney General
Indiana Government Center South
302 West Washington St., 5th Floor
 Indianapolis, IN 46203
Telephone: (317) 232-6309
Scott.Barnhart@atg.in.gov
Corinne.Gilchrist@atg.in.gov
Mark.Snodgrass@atg.in.gov

*Attorneys for Plaintiff State of Indiana*


**KRIS W. KOBACH**
Attorney General
State of Kansas

/s/   Sarah M. Dietz
Sarah Dietz, Assistant Attorney General
(KS Bar No. 27457), *pro hac vice app.
forthcoming, if required*
Office of the Kansas Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Telephone: (785) 296-3751
sarah.dietz@ag.ks.gov

*Attorney for Plaintiff State of Kansas*

**DANIEL J. CAMERON**
Attorney General
Commonwealth of Kentucky

 /s/ J. Christian Lewis
J. CHRISTIAN LEWIS (KY Bar No.
87109), *Pro hac vice app. forthcoming, if
required*
PHILIP HELERINGER (KY Bar No.
96748), *Pro hac vice app. forthcoming, if
required*
GREGORY B. LADD (KY Bar No. 95886),
*Pro hac vice app. forthcoming, if required*
ZACHARY RICHARDS (KY Bar No.
99209), *Pro hac vice app. forthcoming, if
required*
ASSISTANT ATTORNEYS GENERAL
1024 CAPITAL CENTER DRIVE
SUITE 200
FRANKFORT, KY 40601
CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV
GREG.LADD@KY.GOV
ZACH.RICHARDS@KY.GOV
PHONE: (502) 696-5300
FAX: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of
Kentucky*

221

**JEFF LANDRY**
Attorney General
State of Louisiana

/s/ *Arham Mughal*
Arham Mughal (LA Bar No. 38354), *pro hac vice app. forthcoming, if required*
L. Christopher Styron (LA Bar No. 30747), *pro hac vice app. forthcoming, if required*
Assistant Attorneys General
Louisiana Department of Justice
Office of the Attorney General
Public Protection Division
Consumer Protection Section
1885 N 3rd Street, 4th Floor
Baton Rouge, LA 70802
Tel: (225) 326-6438
MughalA@ag.louisiana.gov
StyronL@ag.louisiana.gov

*Attorneys for State of Louisiana*


**AARON M. FREY**
Attorney General
State of Maine

/s/ Brendan F.X. O'Neil
Brendan F.X. O'Neil, Maine Bar No. 9900, *pro hac vice app. forthcoming, if required*
Michael Devine, Maine Bar No. 5048
Laura Lee Barry Wommack, Maine Bar No. 10110
Assistant Attorneys General
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333
(207) 626-8800
brendan.oneil@maine.gov
michael.devine@maine.gov
lauralee.barrywommack@maine.gov

*Attorneys for Plaintiff State of Maine*


**ANTHONY G. BROWN**
Attorney General
State of Maryland

/s/ *Elizabeth J. Stern*
Philip D. Ziperman (Maryland CPF No. 9012190379), *pro hac vice app. forthcoming, if required*
Deputy Chief, Consumer Protection Division
Elizabeth J. Stern (Maryland CPF No. 1112090003), *pro hac vice app. forthcoming, if required*
Assistant Attorney General
Office of the Attorney General of Maryland
200 St. Paul Place
Baltimore, MD 21202
Phone: (410) 576-6417 (Mr. Ziperman)
Phone: (410) 576-7226 (Ms. Stern)
Fax: (410) 576-6566
pziperman@oag.state.md.us
estern@oag.state.md.us

*Attorneys for Plaintiff Office of the Attorney General of Maryland*


**DANA NESSEL**
Attorney General
State of Michigan

/s/ Daniel J. Ping
Daniel J. Ping (P81482), *pro hac vice app. forthcoming, if required*
Assistant Attorney General
Michigan Department of Attorney General
Corporate Oversight Division
P.O. Box 30736
Lansing, MI 48909
517-335-7632
PingD@michigan.gov

*Attorneys for Plaintiff State of Michigan*

222

**KEITH ELLISON**
Attorney General
State of Minnesota

*/s/ James Van Buskirk*
JAMES VAN BUSKIRK (MN Bar No.
0392513), *pro hac vice app. forthcoming, if required*
Assistant Attorney General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1200
St. Paul, MN 55101-2130
Tel: (651) 757-1150
james.vanbuskirk@ag.state.mn.us

*Attorney for Plaintiff State of Minnesota, by its Attorney General, Keith Ellison*

**ANDREW BAILEY**
Attorney General
State of Missouri

By: */s/ Michael Schwalbert*
Michael Schwalbert, MO Bar #63229,
*pro hac vice app. forthcoming, if required*
Assistant Attorney General
Consumer Protection Section
Missouri Attorney General's Office
815 Olive Street | Suite 200
Saint Louis, Missouri 63101
michael.schwalbert@ago,mo.gov
Phone: 314-340-7888
Fax: 314-340-7981

*Attorney for Plaintiff State of Missouri, ex rel. Andrew Bailey, Attorney General*

**MICHAEL T. HILGERS**
Attorney General
State of Nebraska

*/s/ Michaela J. Hohwieler*
Michaela J. Hohwieler (NE #26826)
Assistant Attorney General
*pro hac vice app. forthcoming, if required*
Colin P. Snider (NE #27724)
Assistant Attorney General
*pro hac vice app. forthcoming, if required*
Nebraska Attorney General's Office
2115 State Capitol Building
Lincoln, NE 68509
Phone: (402) 471-3840
Email: michaela.hohwieler@nebraska.gov
Email: colin.snider@nebraska.gov

*Attorneys for Plaintiff State of Nebraska*

**MATTHEW J. PLATKIN**
Attorney General
State of New Jersey

By: */s/ Kashif T. Chand*
Kashif T. Chand (NJ Bar No. 016752008),
*pro hac vice app. forthcoming, if required*
Chief, Deputy Attorney General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov

*Attorneys for Plaintiff New Jersey Division of Consumer Affairs*

223

**LETITIA JAMES**
Attorney General
State of New York

/s/ *Christopher D'Angelo*
Christopher D'Angelo, Chief Deputy
Attorney General, Economic Justice
Division (NY Bar No. 4348744)
Christopher.D'Angelo@ag.ny.gov
Kim Berger, Chief, Bureau of Internet and
Technology (NY Bar No. 2481679)
Kim.Berger@ag.ny.gov
Clark Russell, Deputy Chief, Bureau of
Internet and Technology (NY Bar No.
2848323)
Clark.Russell@ag.ny.gov
Nathaniel Kosslyn, Assistant Attorney
General (NY Bar No. 5773676)
Nathaniel.Kosslyn@ag.ny.gov
New York State Office of the Attorney
General
28 Liberty Street
New York, NY 10005
(212) 416-8262
*Pro hac vice applications forthcoming, if*
*required*

*Attorneys for Plaintiff the People of the State*
*of New York*

**JOSHUA H. STEIN**
Attorney General
State of North Carolina

/s/ *Kevin Anderson*
Kevin Anderson (N.C. Bar No. 22635), *pro*
*hac vice app. forthcoming, if required*
Senior Counsel
Sarah G. Boyce
Deputy Attorney General & General Counsel
Jasmine McGhee
Senior Deputy Attorney General
Josh Abram
Kunal Choksi
Special Deputy Attorneys General
Charles G. White
Assistant Attorney General
N.C. Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6006
Facsimile: (919) 716-6050
kander@ncdoj.gov

*Attorneys for Plaintiff State of North*
*Carolina*

224

**DREW H. WRIGLEY**
Attorney General
State of North Dakota

By: /s/ Elin S. Alm
Elin S. Alm (ND Bar No. 05924)
*pro hac vice app. forthcoming, if required*
Assistant Attorney General
Parrell D. Grossman (ND Bar No. 04684)
Director, Consumer Protection and Antitrust
Division
Office of Attorney General
1720 Burlington Drive, Suite C
Bismarck, ND 58504-7736
Telephone (701) 328-5570
ealm@nd.gov
pgrossman@nd.gov

*Attorneys for Plaintiff State of North Dakota,*
*ex rel. Drew H. Wrigley, Attorney General*

**DAVE YOST**
Attorney General
State of Ohio

 */s/ Kevin R. Walsh*
Melissa G. Wright (Ohio Bar No. 0077843)
Section Chief, Consumer Protection Section
Melissa.Wright@ohioago.gov
Melissa S. Smith (Ohio Bar No. 0083551)
Asst. Section Chief, Consumer Protection
Section
Melissa.S.Smith@ohioago.gov
Michael S. Ziegler (Ohio Bar No. 0042206)
Principal Assistant Attorney General
Michael.Ziegler@ohioago.gov
Kevin R. Walsh (Ohio Bar No. 0073999)
Kevin.Walsh@ohioago.gov
Senior Assistant Attorney General
30 East Broad Street, 14th Floor
Columbus, Ohio 43215
Tel: 614-466-1031
*(pro hac vice application forthcoming, if*
*required)*

*Attorneys for State of Ohio, ex rel. Attorney*
*General Dave Yost,*


**ELLEN F. ROSENBLUM**
Attorney General
State of Oregon

 /s/ *Jordan M. Roberts*
Jordan M. Roberts (Oregon Bar No.
115010), *pro hac vice app. forthcoming, if*
*required*
Assistant Attorney General
Oregon Department of Justice
Consumer Protection Section
100 SW Market Street
Portland, Oregon 97201
Telephone:     (971) 673-1880
Facsimile:     (971) 673-1884
E-mail: jordan.m.roberts@doj.state.or.us

*Attorneys for State of Oregon, ex rel. Ellen*
*F. Rosenblum, Attorney General for the*
*State of Oregon*

225

Complaint for Injunctive and Other Relief

**MICHELLE A. HENRY**
Attorney General
Commonwealth of Pennsylvania

*/s/ Timothy R. Murphy*
TIMOTHY R. MURPHY
Senior Deputy Attorney General (PA Bar No. 321294)
Email: tmurphy@attorneygeneral.gov
JONATHAN R. BURNS
Deputy Attorney General (PA Bar No. 315206)
Email: jburns@attorneygeneral.gov
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Tel: 717.787.4530
*(pro hac vice application forthcoming, if required*)

*Attorneys for Plaintiff the Commonwealth of Pennsylvania*


**PETER F. NERONHA**
Attorney General
State of Rhode Island

*/s Stephen N. Provazza*
Stephen N. Provazza (R.I. Bar No. 10435),
*pro hac vice app. forthcoming*
Special Assistant Attorney General
Rhode Island Office of the Attorney General
150 South Main St.
Providence, RI 02903
Phone: 401-274-4400
Email: SProvazza@riag.ri.gov

*Attorneys for Plaintiff State of Rhode Island*

**ALAN WILSON**
Attorney General
State of South Carolina

/s/ Anna C. Smith
C. HAVIRD JONES, JR.
Senior Assistant Deputy Attorney General
JARED Q. LIBET
Assistant Deputy Attorney General
ANNA C. SMITH (SC Bar No. 104749),
*pro hac vice app. forthcoming, if required*
Assistant Attorney General
CLARK C. KIRKLAND, JR.
Assistant Attorney General
**OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA**
P.O. Box 11549
Columbia, South Carolina 29211
Tel: (803) 734-0536
annasmith@scag.gov

*Attorneys for Plaintiff the State of South Carolina, ex rel. Alan M. Wilson, in His Official Capacity as Attorney General of the State of South Carolina*


**MARTY J. JACKLEY**
Attorney General
State of South Dakota

/s/ Jessica M. LaMie
By: Jessica M. LaMie) (SD Bar No. 4831),
*pro hac vice app. forthcoming, if required*
Assistant Attorney General
1302 East Highway 14, Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215
Jessica.LaMie@state.sd.us

*Attorneys for Plaintiff State of South Dakota*

226

**JASON S. MIYARES**
Attorney General
Commonwealth Of Virginia

*/s/ Joelle E. Gotwals*
Steven G. Popps
Deputy Attorney General
Richard S. Schweiker, Jr.
Senior Assistant Attorney General and
Section Chief
Joelle E. Gotwals (VSB No. 76779), *pro hac vice app. forthcoming, if required*
Assistant Attorney General
Office of the Attorney General of Virginia
Consumer Protection Section
202 N. 9th Street
Richmond, Virginia 23219
Telephone:    (804) 786-8789
Facsimile:    (804) 786-0122
E-mail: jgotwals@oag.state.va.us

*Attorneys for the Plaintiff Commonwealth of Virginia*
*ex rel. Jason S. Miyares, Attorney General*

**ROBERT W. FERGUSON**
Attorney General
State of Washington

*/s/ Joseph Kanada*
Joseph Kanada (WA Bar No. 55055), *pro hac vice app. forthcoming, if required*
Alexandra Kory
Rabi Lahiri
Gardner Reed
Alexia Diorio
Assistant Attorneys General
Washington State Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 389-3843
Joe.Kanada@atg.wa.gov

*Attorneys for Plaintiff State of Washington*

**PATRICK MORRISEY**
Attorney General
State of West Virginia

*/s/ Laurel K. Lackey*
Laurel K. Lackey (WVSB No. 10267), *pro hac vice app. forthcoming, if required*
Abby G. Cunningham (WVSB No. 13388)
Assistant Attorneys General
Office of the Attorney General
Consumer Protection & Antitrust Division
Eastern Panhandle Office
269 Aikens Center
Martinsburg, West Virginia 25404
(304) 267-0239
laurel.k.lackey@wvago.gov

*Attorneys for Plaintiff State of West Virginia, ex rel. Patrick Morrisey, Attorney General*

227

**JOSHUA L. KAUL**
Attorney General
State of Wisconsin

/s/ R. Duane Harlow
R. DUANE HARLOW
Assistant Attorney General
WI State Bar #1025622, *pro hac vice app*
*forthcoming, if required*
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-2950
harlowrd@doj.state.wi.us

*Attorneys for Plaintiff State of Wisconsin*


* *In compliance with Civil Local Rule 5-1(i)(3), the filer of this document attests under penalty of perjury that all signatories have concurred in the filing of this document.*

Complaint for Injunctive and Other Relief