# Exhibit B

[*Submitting Counsel on Signature Page*]

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | No. 4:22-MD-3047<br><br>MDL No. 3047 |
| This Document Relates to:<br><br>ALL ACTIONS | **PLAINTIFFS' AMENDED MASTER COMPLAINT (PERSONAL INJURY)**<br><br>**JURY TRIAL DEMANDED** |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................................. 1

II. THE PARTIES ................................................................................................................ 7

    A. PLAINTIFFS ...................................................................................................... 7

    B. DEFENDANTS .................................................................................................. 8

        1. Meta.......................................................................................................... 8

        2. Snap.......................................................................................................... 9

        3. ByteDance ............................................................................................... 9

        4. Google ................................................................................................... 10

III. JURISDICTION AND VENUE ................................................................................... 11

IV. FACTUAL ALLEGATIONS ....................................................................................... 12

    A. GENERAL FACTUAL ALLEGATIONS APPLICABLE TO ALL
        DEFENDANTS ................................................................................................ 12

        1. Defendants have targeted children as a core market. .............................. 12

        2. Children are uniquely susceptible to harm from Defendants' apps. ......... 15

        3. Defendants designed their apps to attract and addict youth. .................... 19

        4. Millions of kids use Defendants' products compulsively. ....................... 24

        5. Defendants' apps have created a youth mental health crisis.................... 26

        6. Defendants' defective products encourage dangerous "challenges." ....... 35

        7. Defendants' defective social media apps facilitate and contribute to
            the sexual exploitation and sextortion of children, and the ongoing
            production and spread of child sex abuse material online. ...................... 38

        8. Defendants could have avoided harming Plaintiffs. ............................... 46

        9. Defendants consistently refer to and treat their apps as products. ........... 47

    B. FACTUAL ALLEGATIONS AS TO META ...................................................... 51

        1. Background and overview of Meta's products. ....................................... 51

            a. Meta's origins and the development of Facebook. ...................... 53

            b. Modifications of Facebook's product features over time. ........... 55

            c. Facebook's acquisition and control of Instagram. ...................... 61

            d. Modifications of Instagram's product features over time. ........... 65

        2. Meta intentionally encourages youth to use its products and then
            leverages that usage to increase revenue.................................................. 69

        3. Meta intentionally designed product features to addict children and
            adolescents. ............................................................................................ 78

PLAINTIFFS' AMENDED MASTER COMPLAINT
(PERSONAL INJURY)
CASE NO. 4:22-MD-03047

**TABLE OF CONTENTS**
**(continued)**

Page

a. Facebook's and Instagram's algorithms maximize engagement, promoting use at levels and frequency that is harmful to kids. ............................................................... 79

b. Facebook's and Instagram's user interfaces are designed to create addictive engagement. ........................................ 86

c. Instagram's defective product features cause negative appearance comparison and social comparison ........................... 94

d. Meta has failed to implement effective age-verification measures to keep children off of Facebook and Instagram. ........ 105

e. Facebook's and Instagram's parental controls are defective. ..... 112

f. Facebook's and Instagram's defective features include impediments to discontinuing use. ............................................... 116

4. Meta has concealed from Plaintiffs, the public, and Congress the harmful effects that Instagram's and Facebook's design have on children. ............................................................................................. 117

5. Meta facilitates the spread of CSAM and child exploitation. ................. 134

6. Meta failed to adequately warn Plaintiffs or Consortium Plaintiffs about the dangers and harms caused by Instagram and Facebook, or provide instructions regarding safe use. ........................................... 142

C. FACTUAL ALLEGATIONS AS TO SNAP ........................................................ 143

1. Background and overview of Snapchat. ............................................... 144

2. Snap targets children. ......................................................................... 145

a. Snap has designed its Snapchat product to grow use by children to drive the company's revenue. .................................. 145

b. Snap promotes Snapchat to children. ......................................... 149

3. Snapchat is designed to addict children through psychological manipulation. ....................................................................................... 153

a. Snap designed Snapchat to drive compulsive use through a set of social metrics and other manipulation techniques that induce compulsive use. ............................................................. 153

b. Snap's defective features are designed to promote compulsive and excessive use. ................................................... 160

4. Snap designed Snapchat with features that harm children directly or expose children to harm. .................................................................. 162

2779607.1

**TABLE OF CONTENTS**
**(continued)**

| | | Page |
|---|---|---|
| a. | Disappearing "Snaps" and "My Eyes Only" encourage destructive behavior among Snap's teen users | 163 |
| b. | Snapchat's "Snap Map" feature endangers children. | 164 |
| c. | Snapchat's "Quick Add" feature endangers children | 165 |
| d. | Snapchat's Lenses and Filters features promote negative appearance comparison. | 165 |

5. Snap has implemented ineffective and misleading parental controls, further endangering children. ... 168

6. Snap facilitates the spread of CSAM and child exploitation. ... 169

7. Snap failed to adequately warn Plaintiffs about the harms its product causes or provide instructions regarding safe use. ... 173

D. FACTUAL ALLEGATIONS AS TO BYTEDANCE ... 175

1. Background and overview of TikTok. ... 176

2. ByteDance intentionally encourages youth to use its product and then leverages that use to increase revenue. ... 177

3. ByteDance intentionally designed product features to addict children and adolescents. ... 178

    a. TikTok's age-verification measures are defective. ... 178

    b. TikTok's parental controls are defective. ... 180

    c. ByteDance intentionally designed TikTok's defective features and algorithms to maximize engagement using automatic content, time-limited experiences, intermittent variable rewards, reciprocity, and ephemeral content. ... 181

    d. ByteDance's defective features include impediments to discontinuing use. ... 194

    e. ByteDance's defective features inflict impossible image standards and encourage negative appearance comparison. ... 196

4. ByteDance facilitates the spread of CSAM and child exploitation ... 197

5. ByteDance failed to adequately warn Plaintiffs about the harms its product causes or to provide instructions regarding safe use. ... 201

E. FACTUAL ALLEGATIONS AS TO GOOGLE ... 204

1. Background and overview of YouTube. ... 204

2. Google intentionally encourages youth to use YouTube and then leverages that use to increase revenue. ... 206

- iii -

**TABLE OF CONTENTS**
(continued)

Page

3. Google intentionally designed product features to addict children and adolescents ................................................................................ 211

    a. Google's age-verification measures and parental controls are defective. ........................................................................ 211

    b. YouTube is defectively designed to inundate users with features that use intermittent variable rewards and reciprocity. ............................................................................ 213

    c. Google's algorithms are designed to maximize "watch time." ................................................................................... 218

    d. YouTube's defective features include impediments to discontinuing use .................................................................... 228

4. Google facilitates the spread of CSAM and child exploitation .............. 229

5. Google failed to adequately warn Plaintiffs about the harm its products cause or provide instructions regarding safe use. ..................... 234

V. TIMELINESS AND TOLLING OF STATUTES OF LIMITATIONS ......................... 235

VI. PLAINTIFFS' CLAIMS ................................................................................ 237

COUNT 1: STRICT LIABILITY – DESIGN DEFECT  (Against All Defendants) ...... 237

COUNT 2: STRICT LIABILITY – FAILURE TO WARN (Against All Defendants) ........................................................................................... 242

COUNT 3: NEGLIGENCE – DESIGN  (Against All Defendants) .............................. 245

COUNT 4: NEGLIGENCE – FAILURE TO WARN  (Against All Defendants).......... 248

COUNT 5: NEGLIGENCE (Against All Defendants) .................................................... 251

COUNT 6: NEGLIGENT UNDERTAKING  (Against All Defendants)....................... 256

COUNT 7: VIOLATION OF UNFAIR TRADE  PRACTICES/CONSUMER PROTECTION LAWS  (Against All Defendants) .......................................... 258

COUNT 8: FRAUDULENT CONCEALMENT AND MISREPRESENTATION (Against Meta) ...................................................................................... 261

COUNT 9: NEGLIGENT CONCEALMENT AND MISREPRESENTATION (Against Meta) ...................................................................................... 263

COUNT 10: NEGLIGENCE PER SE  (Against All Defendants) ................................ 265

COUNT 11: VIOLATIONS OF 18 U.S.C. §§ 1595 and 1591  (Against All Defendants) ............................................................................................. 267

COUNT 12: VIOLATIONS OF 18 U.S.C. §§ 2255 and 2252  (Against All Defendants) ............................................................................................. 270

2779607.1

# TABLE OF CONTENTS
## (continued)

Page

COUNT 13: VIOLATIONS OF 18 U.S.C. §§ 2252A(f), and 1466A  (Against All Defendants) ....................................................................................... 271

COUNT 14: VIOLATIONS OF 18 U.S.C. §§ 2255, and 2252A(5)(b)  (Against All Defendants) ............................................................................... 272

COUNT 15: VIOLATIONS OF 18 U.S.C. §§ 2258B and 2258A  (Against All Defendants) ....................................................................................... 274

COUNT 16: WRONGFUL DEATH  (Against All Defendants) ................................... 275

COUNT 17: SURVIVAL ACTION  (Against All Defendants) .................................... 276

COUNT 18: LOSS OF CONSORTIUM AND SOCIETY (Against All Defendants) ....................................................................................... 277

VII.    PRAYER FOR RELIEF ................................................................................ 278

VIII.   JURY DEMAND ......................................................................................... 279

829.    Consortium Plaintiffs were unaware and could not have reasonably known or learned through reasonable diligence that the harms they suffered were directly and proximately caused by Defendants' acts and omissions.

830.    For the foregoing reasons, Defendants are estopped from relying on any statutes of limitation or repose as a defense in this action. All applicable statutes of limitation and repose have been tolled by operation of the discovery rule and by Defendants' active concealment with respect to all claims against Defendants.

## VI.    PLAINTIFFS' CLAIMS

831.    Plaintiffs and Consortium Plaintiffs plead all Causes of Action of this Complaint in the broadest sense, pursuant to all laws that may apply under choice-of-law principles, including the law of the resident states of Plaintiffs and Consortium Plaintiffs. To the extent applicable to specific Causes of Action, Plaintiffs and Consortium Plaintiffs plead these Causes of Action under all applicable product liability acts, statutes, and laws of their respective States.

**COUNT 1:**
**STRICT LIABILITY – DESIGN DEFECT**
**(Against All Defendants)**

832.    Plaintiffs and Consortium Plaintiffs reallege and incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.

833.    At all relevant times, each Defendant designed, developed, managed, operated, tested, produced, labeled, marketed, advertised, promoted, controlled, sold, supplied, distributed, and benefitted from its products used by Plaintiffs.

834.    Each of the Defendant's respective products are designed and intended to be social media products.

835.    Each of the Defendant's respective products are distributed and sold to the public through retail channels (i.e., the Apple App "Store" and the Google Play "Store").

836.    Each of the Defendant's respective products are marketed and advertised to the public for the personal use of the end-user / consumer.

PLAINTIFFS' AMENDED MASTER COMPLAINT
(PERSONAL INJURY)
CASE NO. 4:22-MD-03047

837. Each of the Defendant's defectively designed its respective products to addict minors and young adults, who were particularly unable to appreciate the risks posed by the products, and particularly susceptible to harms from those products.

838. The defects in the design of each of the Defendant's respective products existed prior to the release of these products to Plaintiffs and the public, and there was no substantial change to any of the Defendants' products between the time of their upload by each Defendant to public or retail channels (e.g., the App Store or Google Play) and the time of their distribution to Plaintiffs via download or URL access.

839. Plaintiffs used these products as intended, and each Defendant knew or, by the exercise of reasonable care, should have known that Plaintiffs would use these products without inspection for its addictive nature.

840. Each Defendant defectively designed its respective products to take advantage of the chemical reward system of users' brains (especially young users) to create addictive engagement, compulsive use, and additional mental and physical harms.

841. Each Defendant failed to test the safety of the features it developed and implemented for use on its respective products. When each Defendant did perform some product testing and had knowledge of ongoing harm to Plaintiffs, it failed to adequately remedy its respective product's defects or warn Plaintiffs.

842. Each of the Defendant's respective products are defective in design and pose a substantial likelihood of harm for the reasons set forth herein, because the products fail to meet the safety expectations of ordinary consumers when used in an intended or reasonably foreseeable manner, and because the products are less safe than an ordinary consumer would expect when used in such a manner. Children and teenagers are among the ordinary consumers of each of the Defendant's products. Indeed, each Defendant markets, promotes, and advertises its respective products to pre-teen and young consumers. Pre-teen and young consumers, and their parents and guardians, do not expect Defendants' products to be psychologically and neurologically addictive when the products are used in its intended manner by its intended audience. They do not expect the algorithms and other features embedded by each Defendant in its respective products to make them

- 238 -

initially and progressively more stimulative, to maximize young consumers' usage time. They do not expect each Defendant's revenues and profits to be directly tied to the strength of this addictive mechanism and dependent on young consumers spending several hours a day using their respective products.

843.   Each of the Defendant's respective products are likewise defectively designed in that it creates an inherent risk of danger; specifically, a risk of abuse, addiction, and compulsive use by youth which can lead to a cascade of harms. Those harms include but are not limited to dissociative behavior, withdrawal symptoms, social isolation, damage to body image and self-worth, increased risky behavior, exposure to predators, sexual exploitation, and profound mental health issues for young consumers including but not limited to depression, body dysmorphia, anxiety, suicidal ideation, self-harm, insomnia, eating disorders, death, and other harmful effects.

844.   The risks inherent in the design of each of the Defendant's respective products significantly outweigh any benefit of such design.

845.   Each of the Defendants could have utilized cost-effective, reasonably feasible alternative designs including algorithmic changes and changes to the addictive features described above, to minimize the harms described herein, including, but not limited to:

    a.   Robust age verification;

    b.   Effective parental controls;

    c.   Effective parental notifications;

    d.   Warning of health effects of use and extended use upon sign-up;

    e.   Default protective limits to the length and frequency of sessions;

    f.   Opt-in restrictions to the length and frequency of sessions;

    g.   Self-limiting tools, including but not limited to session time notifications, warnings, or reports;

    h.   Blocks to use during certain times of day (such as during school hours or late at night);

    i.   Beginning and end to a user's "Feed;"

    j.   Redesigning algorithms to limit rather than promote addictive engagement;

- 239 -

k.  Implementing labels on images and videos that have been edited through product features such as "filters;"

l.  Limits on the strategic timing and clustering of notifications to lure back users;

m.  Removing barriers to the deactivation and deletion of accounts;

n.  Designing products that did not include the defective features listed in this Complaint while still fulfilling the social networking purposes of a social media product;

o.  Implementing freely available and industry-proven child protection API tools such as Project Arachnid Shield to help limit and prevent child sexual exploitation, sextortion, and distribution of known CSAM through their products;

p.  Implementing reporting protocols to allow users or visitors of Defendants' products to report CSAM and adult predator accounts specifically without the need to create or log in to the products prior to reporting;

q.  Implementing the legal definition of CSAM under 18 U.S.C. § 2256(8) and related case law when scanning for CSAM using tools such as PhotoDNA and CSAI to prevent underreporting of known CSAM;

r.  Prioritizing "tolerance" rather than "efficiency" and "distinctness" of the detection model when using scanning tools such as PhotoDNA and CSAI to prevent underreporting of known CSAM;

s.  Implementing client-side scanning and hashing and/or secure enclaves in the direct messaging features of Meta's, Snap's, and ByteDance's products, to prevent underreporting of known CSAM, and implementing proactive detection measures to scan for known CSAM within all Defendants' social media products and remove it;

t.  Limiting or eliminating the use of geolocating for minors;

- 240 -

    u. Eliminating product features that recommend minor accounts to adult strangers; and

    v. Others as set forth herein.

846. Alternative designs were available that would reduce minors' addictive and compulsive engagement with each of the Defendants' respective products, and which would have served effectively the same purpose of Defendants' products while reducing the gravity and severity of danger posed by those products' defects.

847. Plaintiffs used Defendants' respective products as intended or in reasonably foreseeable ways.

848. The physical, emotional, and economic injuries of Plaintiffs and Consortium Plaintiffs were reasonably foreseeable to each of the Defendants at the time of their respective products' development, design, advertising, marketing, promotion, and distribution.

849. Defendants' respective products were defective and unreasonably dangerous when they left the Defendants' respective possession and control. The defects continued to exist through the products' distribution to and use by consumers, including Plaintiffs, who used the products without any substantial change in the products' condition.

850. Plaintiffs and Consortium Plaintiffs were injured as a direct and proximate result of each of the Defendant's respective defective designs as described herein. The defective design of the products used by Plaintiffs was a substantial factor in causing harms to Plaintiffs and Consortium Plaintiffs.

851. As a direct and proximate result of Defendants' respective products' defective design, Plaintiffs and Consortium Plaintiffs suffered serious and dangerous injuries.

852. As a direct and proximate result of Defendants' respective products' defective design, Plaintiffs and Consortium Plaintiffs require and/or will require more healthcare and services and did incur medical, health, incidental, and related expenses.

853. The injuries of Plaintiffs and Consortium Plaintiffs cannot be wholly remedied by monetary relief and such remedies at law are inadequate.

PLAINTIFFS' AMENDED MASTER COMPLAINT
(PERSONAL INJURY)
CASE NO. 4:22-MD-03047

854.    The nature of the fraudulent and unlawful acts that created safety concerns for Plaintiffs are not the type of risks that are immediately apparent from using Defendants' respective products. Many Plaintiffs are continuing to use Defendants' respective products. When Plaintiffs use Defendants' respective products, they will not be independently able to verify whether Defendants' respective products continue to pose an unreasonable risk or rely on Defendants' respective representations in the future.

855.    The conduct of each Defendant, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers, and warrants an award of punitive damages in an amount sufficient to punish each Defendant and deter others from like conduct.

856.    Plaintiffs demand judgment against each Defendant for injunctive relief and for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**COUNT 2:**
**STRICT LIABILITY – FAILURE TO WARN**
**(Against All Defendants)**

857.    Plaintiffs and Consortium Plaintiffs reallege and incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.

858.    At all relevant times, each of the Defendants designed, developed, managed, operated, tested, produced, labeled, marketed, advertised, promoted, controlled, sold, supplied, distributed, and benefitted from its respective products used by Plaintiffs.

859.    Plaintiffs were foreseeable users of Defendants' respective products.

860.    Defendants' respective products are distributed and sold to the public through retail channels (e.g., the Apple App "Store" and the Google Play "Store").

861.    Each of the Defendants sold and distributed its respective products to Plaintiffs in a defective and unreasonably dangerous condition by failing to adequately warn about the risk of harm to youth as described herein, including a risk of abuse, addiction, and compulsive use by

912.    The conduct of each Defendant, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of their customers, and warrants an award of punitive damages in an amount sufficient to punish each Defendant and deter others from like conduct.

913.    Plaintiffs and Consortium Plaintiffs demand judgment against each Defendant for injunctive relief and for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT 5:
## NEGLIGENCE
### (Against All Defendants)

914.    Plaintiffs and Consortium Plaintiffs reallege and incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein, other than Counts 1-4 (each of which is pled on a product theory). Count 5 is pled in the alternative on a non-product theory.

915.    At all relevant times, each Defendant developed, set up, managed, maintained, operated, marketed, advertised, promoted, supervised, controlled, and benefitted from its respective platforms used by Plaintiffs.

916.    Each Defendant owed Plaintiffs a duty to exercise reasonable care in the development, setup, management, maintenance, operation, marketing, advertising, promotion, supervision, and control of its respective platforms not to create an unreasonable risk of harm from and in the use of its platforms (including an unreasonable risk of addiction, compulsive use, sleep deprivation, anxiety, depression, or other physical or mental injuries); to protect Plaintiffs from unreasonable risk of injury from and in the use of its platforms; and not to invite, encourage, or facilitate youth, such as Plaintiffs, to foreseeably engage in dangerous or risky behavior through, on, or as a reasonably foreseeable result of using its platforms.

917.    Plaintiffs were foreseeable users of the Defendants' respective platform(s).

- 251 -

918.    Each Defendant knew that minors such as Plaintiffs would use their respective platform(s).

919.    Each Defendant invited, solicited, encouraged, or reasonably should have foreseen the fact, extent, and manner of Plaintiffs' use of Defendants' respective platform(s).

920.    Each Defendant knew or, by the exercise of reasonable care, should have known, that the reasonably foreseeable use of its respective platforms (as developed, set up, managed, maintained, supervised, and operated by that Defendant) was dangerous, harmful, and injurious when used by youth such as Plaintiffs in a reasonably foreseeable manner.

921.    At all relevant times, each Defendant knew or, by the exercise of reasonable care, should have known that its respective platforms (as developed, setup, managed, maintained, supervised, and operated by that Defendant) posed unreasonable risks of harm to youth such as Plaintiffs, which risks were known and knowable, including in light of the internal data and knowledge each Defendant had regarding its platforms.

922.    Each Defendant knew, or by the exercise of reasonable care, should have known, that ordinary youth users of its respective platforms, such as Plaintiffs, would not have realized the potential risks and dangers of using the platform, including a risk of addiction, compulsive use, or excessive use, which foreseeably can lead to a cascade of negative effects, including but not limited to dissociative behavior, withdrawal symptoms, social isolation, damage to body image and self-worth, increased risk behavior, exposure to predators, sexual exploitation and profound mental health issues for young consumers including but not limited to depression, body dysmorphia, anxiety, suicidal ideation, self-harm, insomnia, eating disorders, and death.

923.    Each Defendant's conduct was closely connected to Plaintiffs' injuries, which were highly certain to occur, as evidenced by the significance of Plaintiffs' injuries.

924.    Each Defendant could have avoided Plaintiffs' injuries with minimal cost, including, for example, by not including certain features and algorithms in its respective platforms which harmed Plaintiffs.

925.    Imposing a duty on Defendants would benefit the community at large.

- 252 -

926.    Imposing a duty on Defendants would not be burdensome to them because they have the technological and financial means to avoid the risks of harm to Plaintiffs.

927.    Each Defendant owed a heightened duty of care to youth users of their respective platforms because the child brain is not fully developed, meaning young people are more neurologically vulnerable than adults to the addictive and other harmful aspects of Defendants' respective platforms, and meaning young people have a diminished capacity to make responsible decisions regarding the frequency, intensity, and manner of their use of Defendants' respective platforms.

928.    Each Defendant owes a particularly heightened duty of care to users under the age of 13 due to the recognized safety risks posed to such users from interactive online platforms, such as Defendants' respective products. *See* 15 U.S.C. § 6501 *et seq.*

929.    Each Defendant has breached its duties of care owed to Plaintiffs through its affirmative malfeasance, actions, business decisions, and policies in the development, setup, management, maintenance, operation, marketing, advertising, promotion, supervision, and control of its respective platforms. Those breaches include:

a.    Including features and algorithms in their respective platforms that, as described above, are currently structured and operated in a manner that unreasonably creates or increases the foreseeable risk of addiction to, compulsive use of, or overuse of the platform by youth, including Plaintiffs;

b.    Including features and algorithms in their respective platforms that, as described above, are currently structured and operated in a manner that unreasonably creates or increases the foreseeable risk of harm to the physical and mental health and well-being of youth users, including Plaintiffs, including but not limited to dissociative behavior, withdrawal symptoms, social isolation, depression, anxiety, suicide and suicidal ideation, body dysmorphia, self-harm, sleep deprivation, insomnia, eating disorders, and death;

c.    Including features and algorithms in their respective platforms that, as described above, are currently structured and operated in a manner that unreasonably exposes youth users to sexual predators and sexual exploitation, including features that recommend or encourage youth users to connect with adult strangers on or through the platform;

d.    Maintaining unreasonably dangerous features and algorithms in their respective platforms after notice that such features and algorithms, as structured and operated, posed a foreseeable risk of harm to the physical and mental health and well-being of youth users;

e.    Facilitating use of their respective platforms by youth under the age of 13, including by adopting protocols that do not ask for or verify the age or identity of users or by adopting ineffective age and identity verification protocols; and

f.    Facilitating unsupervised and/or hidden use of their respective platforms by youth, including by adopting protocols that allow youth users to create multiple and private accounts and by offering features that allow youth users to delete, hide, or mask their usage.

930.    Each Defendant has breached its duties of care owed to Plaintiffs through its nonfeasance, failure to act, and omissions in the development, setup, management, maintenance, operation, marketing, advertising, promotion, supervision, and control of its respective platforms. Those breaches include:

a.    Failing to implement effective protocols to block users under the age of 13;

b.    Failing to implement effective parental controls;

c.    Failing to implement reasonably available means to monitor for and limit or deter excessive frequency or duration of use of platforms by youth, including patterns, frequency, or duration of use that are indicative of addiction, compulsive use, or overuse;

- 254 -

d.    Failing to implement reasonably available means to limit or deter use of platforms by youth during ordinary times for school or sleep;

e.    Failing to implement reasonably available means to set up and operate its platforms without algorithms and features, discussed above, that rely on unreasonably dangerous methods (such as endless scroll, autoplay, IVR, social comparison, and others) as a means to engage youth users;

f.    Failing to set up, monitor, and modify the algorithms used on their platforms to prevent the platforms from actively driving youth users into unsafe, distorted, and unhealthy online experiences, including highly sexualized, violent, and predatory environments and environments promoting eating disorders and suicide;

g.    Failing to implement reasonably available means to monitor for, report, and prevent the use of their platforms by sexual predators to victimize, abuse, and exploit youth users; and

h.    Failing to provide effective mechanisms for youth users and their parents/guardians to report abuse or misuse of the platforms.

931.    A reasonable company under the same or similar circumstances as each Defendant would have developed, set up, managed, maintained, supervised, and operated its platforms in a manner that is safer for and more protective of youth users like Plaintiffs.

932.    At all relevant times, Plaintiffs used one or more of the Defendants' respective platforms in the manner in which they were intended to be used.

933.    As a direct and proximate result of each Defendant's breach of one or more of its duties, Plaintiffs and Consortium Plaintiffs were harmed. Such harms include addiction to, or compulsive or excessive use of, Defendants' platforms, and cascade of resulting negative effects, including but not limited to dissociative behavior, withdrawal symptoms, social isolation, damage to body image and self-worth, increased risky behavior, exposure to predators, sexual exploitation and profound mental health issues including but not limited to depression, body dysmorphia, anxiety, suicidal ideation, self-harm, insomnia, eating disorders, and death.

PLAINTIFFS' AMENDED MASTER COMPLAINT
(PERSONAL INJURY)
CASE NO. 4:22-MD-03047

934.    Each Defendant's breach of one or more of its duties was a substantial factor in causing harms and injuries to the Plaintiffs and Consortium Plaintiffs.

935.    The injuries of Plaintiffs and Consortium Plaintiffs cannot be wholly remedied by monetary relief and such remedies at law are inadequate.

936.    The nature of the fraudulent and unlawful acts that created safety concerns for Plaintiffs are not the type of risks that are immediately apparent from using Defendants' respective products. Many Plaintiffs are continuing to use Defendants' respective products. When Plaintiffs use Defendants' respective products, they will not be independently able to verify whether Defendants' respective products continue to pose an unreasonable risk or rely on Defendants' respective representations in the future.

937.    Each Defendant's conduct, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of their conduct, including to the health, safety, and welfare of their customers, and warrants an award of punitive damages in an amount sufficient to punish the Defendants and deter others from like conduct.

938.    Plaintiffs and Consortium Plaintiffs demand judgment against each Defendant for injunctive relief and for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**COUNT 6:**
**NEGLIGENT UNDERTAKING**
**(Against All Defendants)**

939.    Plaintiffs and Consortium Plaintiffs reallege and incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.

940.    Each Defendant rendered age verification services to Plaintiffs.

941.    Each Defendant should have recognized that effective age verification services were needed for the protection of pre-teen Plaintiffs (those under the age of 13).

942.    Each Defendant's conduct was closely connected to Plaintiffs' injuries, which were highly certain to occur, as evidenced by the significance of Plaintiffs' injuries.

PLAINTIFFS' AMENDED MASTER COMPLAINT
(PERSONAL INJURY)
CASE NO. 4:22-MD-03047

Dated: April 14, 2023                           Respectfully submitted,

*/s/ Christopher A. Seeger*                      */s/ Lexi J. Hazam*
CHRISTOPHER A. SEEGER                            LEXI J. HAZAM
**SEEGER WEISS, LLP**                            **LIEFF CABRASER HEIMANN &**
55 Challenger Road, 6th Floor                    **BERNSTEIN, LLP**
Ridgefield Park, NJ 07660                        275 Battery Street, 29th Floor
Telephone: 973-639-9100                          San Francisco, CA 94111-3339
Facsimile: 973-679-8656                          Telephone: 415-956-1000
cseeger@seegerweiss.com                          lhazam@lchb.com

*/s/ Previn Warren*
PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
T: 202-386-9610
pwarren@motleyrice.com                           ***Plaintiffs' Co-Lead Counsel***

MICHAEL M. WEINKOWITZ                            JOSEPH G. VANZANDT
**LEVIN SEDRAN & BERMAN,**                       **BEASLEY ALLEN CROW METHVIN**
**LLP**                                          **PORTIS & MILES, P.C.**
510 Walnut Street, Suite 500                     234 Commerce Street
Philadelphia, PA 19106                           Montgomery, AL 36103
Telephone: 215-592-1500                          Telephone: 334-269-2343
mweinkowitz@lfsbalw.com                          joseph.vanzandt@beasleyallen

EMILY C. JEFFCOTT                                JAYNE CONROY
**MORGAN & MORGAN**                              **SIMMONS HANLY CONROY, LLC**
220 W. Garden Street, 9th Floor                  112 Madison Ave, 7th Floor
Pensacola, FL 32502                              New York, NY 10016
Telephone: 850-316-9100                          Telephone: 917-882-5522
ejeffcott@forthepeople.com                       jconroy@simmonsfirm.com

ANDRE MURA                                       ALEXANDRA WALSH
**GIBBS LAW GROUP, LLP**                         **WALSH LAW**
1111 Broadway, Suite 2100                        1050 Connecticut Ave, NW, Suite 500
Oakland, CA 94607                                Washington D.C. 20036
Telephone: 510-350-9717                          T: 202-780-3014
amm@classlawgroup.com                            awalsh@alexwalshlaw.com

MATTHEW BERGMAN
**SOCIAL MEDIA VICTIMS LAW**
**CENTER**
821 Second Avenue, Suite 2100
Seattle, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org                      ***Plaintiffs' Leadership Committee***

PLAINTIFFS' AMENDED MASTER COMPLAINT
(PERSONAL INJURY)
CASE NO. 4:22-MD-03047

RON AUSTIN
**RON AUSTIN LAW**
400 Manhattan Blvd.
Harvey LA, 70058
Telephone: (504) 227–8100
raustin@ronaustinlaw.com

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone: 212-558-5500
jbilsborrow@weitzlux.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
T: (646) 666-8908
carrie@cagoldberglaw.com

EMMIE PAULOS
**LEVIN PAPANTONIO
RAFFERTY**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

DIANDRA "FU" DEBROSSE
ZIMMERMANN
**DICELLO LEVITT**
505 20th St North, Suite 1500
Birmingham, Alabama 35203
Telephone: 205.855.5700
fu@dicellolevitt.com

RUTH RIZKALLA
**CARLSON LAW FIRM**
100 E. Central Texas Expy
Killeen, TX 76541
(254) 526-5688
RRizkalla@carlsonattorneys.com

PAIGE BOLDT
**WATTS GUERRA LLP**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
T: 210-448-0500
PBoldt@WattsGuerra.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS &
OVERHOLTZ, PLLC**
17 East Main Street, Suite 200
Pensacola, Fl 32502
Telephone: 510-698-9566
mliu@awkolaw.com

ROLAND TELLIS
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: (818) 839-2333
rtellis@baronbudd.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Tel: 212.213.8311
hnappi@hrsclaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 Hudson Yards, 11th Floor
New York, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

*Plaintiffs' Steering Committee*

PLAINTIFFS' AMENDED MASTER COMPLAINT
(PERSONAL INJURY)
CASE NO. 4:22-MD-03047