# Exhibit C

Phyllis A. Jones (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com

*Attorney for Defendants Meta Platforms, Inc.,
Instagram, LLC, Meta Payments, Inc.,
Meta Platforms Technologies, LLC, Facebook
Payments, Inc., Siculus, Inc., Facebook
Operations, LLC, and Mark Elliot Zuckerberg*

*Additional parties and counsel listed on
signature pages*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| *People of the State of California, et al.,* <br><br>         v. <br><br> *Meta Platforms, Inc.*, *Instagram, LLC, Meta Payments, Inc.*, *Meta Platforms Technologies, LLC* <br> _____ <br><br> *Office of the Attorney General, State of Florida, Department of Legal Affairs*, <br><br>         v. <br><br> *Meta Platforms, Inc.*, *Instagram LLC* <br> _____ <br><br> IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION <br><br> THIS DOCUMENT RELATES TO: <br><br> ALL ACTIONS | MDL No. 3047 <br><br> Case Nos. 4:23-cv-05448-YGR <br><br>         4:23-cv-05885-YGR <br><br>         4:22-md-03047-YGR-PHK <br><br> Honorable Yvonne Gonzalez Rogers <br><br> **META'S MOTION TO DISMISS THE MULTISTATE ATTORNEYS GENERAL COMPLAINT; FLORIDA ATTORNEY GENERAL COMPLAINT; AND PERSONAL INJURY PLAINTIFFS' CONSUMER PROTECTION AND MISREPRESENTATION CLAIMS** <br><br> **Hearing:** <br> Date:   TBD <br> Time:   TBD <br> Place:  Oakland, California <br> Judge:  Hon. Yvonne Gonzalez Rogers |

### NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT, at a hearing date and time to be determined in accordance with the Court's Case Management Order No. 6 (4:22-md-3047, Dkt. No. 451), before the Honorable Yvonne Gonzalez Rogers, in Courtroom 1, Floor 4, of the United States District Court, Northern District of California, located at 1301 Clay Street in Oakland, California, Defendants Meta Platforms, Inc., Instagram, LLC, Meta Payments, Inc., Meta Platforms Technologies, LLC, Facebook Payments, Inc., Siculus, Inc., and Facebook Operations, LLC (each a "Defendant," and collectively the "Defendants"), will and hereby do move this Court, under Federal Rule of Civil Procedure 12(b)(2) and/or 12(b)(6), for an order dismissing with prejudice Count I of the Multistate Complaint in part, and Counts II–LIV of the Multistate Complaint in their entirety; the Florida Complaint in its entirety; and Counts 7, 8, and 9 of the Personal Injury Second Amended Master Complaint in their entirety.[1]

This Motion is based on the Memorandum of Points and Authorities submitted herewith, any Reply Memorandum or other papers submitted in connection with the Motion, the Multistate Complaint, Multistate Complaint, and Personal Injury Second Amended Master Complaint, any matter of which this Court may properly take judicial notice, and any information presented at argument.

DATED:  December 22, 2023       By:  _/s/ Phyllis A. Jones_

Phyllis A. Jones

*Attorney for Defendants Meta Platforms, Inc., Instagram, LLC, Meta Payments, Inc., Meta Platforms Technologies, LLC, Facebook Payments, Inc., Siculus, Inc., Facebook Operations, LLC, and Mark Elliot Zuckerberg*

*Additional counsel listed on signature pages*

---

[1] Per the Court's Order, Defendant Mark Zuckerberg has filed a separate motion to dismiss the claims against him in his personal capacity.

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 4

LAW & ARGUMENT ........................................................................................................... 5

I.     THE COMPLAINT'S "CHILD-DIRECTED" COPPA THEORY FAILS. ....................... 7

     A.     "Child-Directed" Has a Specific Meaning Under the COPPA Statute and Rule. .. 7

     B.     The States Have Not Alleged That Instagram and Facebook Are "Directed to Children" As That Term Is Used In COPPA. ......................................................... 9

          1.     The "child-oriented activities and incentives" factor supports the conclusion that Instagram and Facebook are general audience services. ... 9

          2.     The "age of models" factor supports the conclusion that Facebook and Instagram are general audience services. .................................................. 12

          3.     The "advertising" factor supports the conclusion that Instagram and Facebook are general audience services. .................................................. 13

          4.     The "audience composition" factor supports the conclusion that Facebook and Instagram are general audience services. .......................................... 14

          5.     The "intended audience" factor supports the conclusion that Instagram and Facebook are general audience services. .................................................. 16

          6.     The States' allegations regarding the registration process for Facebook and Instagram further confirm that they are general audience services. ......... 17

          7.     Additional factors ignored by the States further reinforce that Facebook and Instagram are general audience services. .......................................... 18

     C.     Endorsing the States' Child-Directed Theory Would Have Serious Consequences. ............................................................................................................... 19

META'S MOTION TO DISMISS THE MULTISTATE ATTORNEYS GENERAL COMPLAINT; FLORIDA ATTORNEY GENERAL COMPLAINT; AND PERSONAL INJURY PLAINTIFFS' CONSUMER PROTECTION AND MISREPRESENTATION CLAIMS

II.  SECTION 230 LARGELY BARS THE STATES' CONSUMER PROTECTION CLAIMS. .......................................................................................... 19

    A.  Section 230 Bars the Vast Majority of the States' Claims that Instagram's and Facebook's Designs Constitute Unfair or Unconscionable Business Practices.... 19

    B.  Section 230 Bars the States' Claims That Meta Omitted or Failed To Provide Warnings Regarding Instagram and Facebook's Design Features. ...................... 23

III.  THE STATES FAIL TO ALLEGE ACTIONABLE MISREPRESENTATIONS OR DECEPTION. ......................................................................................... 25

    A.  Representations About the "Safety" of Meta's Services And Several Other Challenged Statements Are Non-Actionable Statements of Opinion, Not Misstatements of Fact. ........................................................................... 26

    B.  The States Fail to Establish That Alleged Misrepresentations Were False or Misleading Under the Heightened Pleading Requirements of Rule 9(b). ............ 29

    C.  The States Fail to Establish That the Alleged Misrepresentations Were Material to Users. ............................................................................................... 33

    D.  The States' Claims Fail Insofar as They Are Premised on Alleged Misrepresentations to Congress. ........................................................... 35

IV.  THE STATES FAIL TO ALLEGE UNFAIR BUSINESS ACTS OR PRACTICES. ...... 38

    A.  The States' Claims Brought Pursuant to the Terms of Section 5 of the FTCA Should Be Dismissed. ....................................................................... 39

    B.  The Remaining States' Claims Should Also Be Dismissed................................. 46

V.  THE STATES' CONSUMER PROTECTION CLAIMS FAIL BECAUSE THE RELEVANT CONSUMER PROTECTION LAWS DO NOT APPLY TO META'S ALLEGED CONDUCT. ............................................................................ 49

VI.  THE STATES' CLAIMS FOR RESTITUTION FAIL AS A MATTER OF LAW. ....... 54

VII.  THE PERSONAL INJURY PLAINTIFFS' CONSUMER PROTECTION CLAIMS FAIL. ................................................................................................. 56

META'S MOTION TO DISMISS THE MULTISTATE ATTORNEYS GENERAL COMPLAINT; FLORIDA ATTORNEY GENERAL COMPLAINT; AND PERSONAL INJURY PLAINTIFFS' CONSUMER PROTECTION AND MISREPRESENTATION CLAIMS

A.    The Count 7 Claims Fail Because the Relevant State Consumer Protection Laws Do Not Apply to Plaintiffs' Claims. ................................................................ 56

B.    Count 7 Fails for the Same Reasons the States' Deceptive Practices Claims Fail. .............................................................................................................................. 59

C.    Count 7 Also Fails Because Plaintiffs Do Not Allege Actual Reliance. .............. 60

D.    Count 7 Further Fails Because Plaintiffs Do Not Allege An Ascertainable Loss. 63

VIII.   THE PERSONAL INJURY PLAINTIFFS' COMMON LAW CONCEALMENT AND MISREPRESENTATION CLAIMS LIKEWISE FAIL. ................................................... 64

IX.    FLORIDA'S CLAIMS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION. ................................................................................................................. 66

CONCLUSION ................................................................................................................. 69

### C. Endorsing the States' Child-Directed Theory Would Have Serious Consequences.

Endorsing the States' theory that Instagram and Facebook are child-directed services based on the scant evidence presented in the Complaint would have serious implications for every website or online service operating today. Under the States' interpretation of COPPA, practically all websites or online services could be deemed child-directed simply because their audience includes a small percentage of children, placing virtually the entire internet under regulation as child-directed services by COPPA. As the FTC has recognized, that is not the law. *See, e.g.*, 71 Fed. Reg. at 13252 (recognizing that "[g]eneral audience" webpages or services nonetheless "may attract a substantial number of children"); *see also* 78 Fed. Reg. at 3982, n. 126 (pointing to Facebook and YouTube as exemplar "general audience" services).

### II. SECTION 230 LARGELY BARS THE STATES' CONSUMER PROTECTION CLAIMS.

Section 230 of the CDA applies with full force to the States' consumer protection claims, and bars *all* of the States' unfair acts or practices claims aside from those predicated on alleged COPPA violations.[25] Indeed, this Court has already ruled that Section 230 bars claims based on the very features challenged by the States as constituting unfair trade practices. *See* 4:22-md-3047, Dkt. 430 (Order Granting in Part and Denying in Part Defendants' Motion to Dismiss). Section 230 likewise bars the States' consumer protection claims insofar as they seek to hold Meta liable for failing to provide warnings regarding those features.[26]

### A. Section 230 Bars the Vast Majority of the States' Claims that Instagram's and Facebook's Designs Constitute Unfair or Unconscionable Business Practices.

Section 230 provides immunity for interactive computer service providers against any claims that seek to hold them liable for third-party content on their services and the manner in which that content is presented. *See* 47 U.S.C. § 230(c)(1) ("No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."); *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) (Section 230(c)(1) provides "broad

---

[25] *See infra* n.45.

[26] *See infra* n.28.

META'S MOTION TO DISMISS THE MULTISTATE ATTORNEYS GENERAL COMPLAINT; FLORIDA ATTORNEY GENERAL COMPLAINT; AND PERSONAL INJURY PLAINTIFFS' CONSUMER PROTECTION AND MISREPRESENTATION CLAIMS

federal immunity to any cause of action that would make service providers liable for information originating with a third-party user." (internal quotation marks omitted)).

This Section 230 immunity applies with full force to state-law consumer protection claims. *See Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 (9th Cir. 2009) (recognizing that Section 230 "provide[s] immunity from state unfair competition and false advertising actions" (citing *Perfect 10, Inc.*, 488 F.3d at 1118–19); *Bride v. Snap Inc.*, 2023 WL 2016927, at *6 (C.D. Cal. Jan. 10, 2023) ("[T]he nature of Plaintiffs' legal claim does not alter the court's conclusion, whether based on negligence or false advertising."). This includes consumer protection claims asserted by State attorneys general. *See, e.g.*, *Free Speech Coal., Inc. v. Colmenero*, --- F. Supp. 3d ---, 2023 WL 5655712, at *26 (W.D. Tex. Aug. 31, 2023) ("The text of the CDA is clear: No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.' '[A]ny' state law necessarily includes those brought by state governments." (internal quotation marks and citation omitted)); *Google, Inc. v. Hood*, 96 F. Supp. 3d 584, 597 (S.D. Miss. 2015) (noting that Section 230 limits the attorney general's ability to prosecute Internet services), *vacated and remanded on other grounds*, 822 F.3d 212 (5th Cir. 2016) (noting that Section 230 may bar claims if the attorney general were to bring an enforcement action).

Section 230 immunity applies if (1) the defendant is a "provider . . . of an interactive computer service," and (2) the claim seeks to hold the defendant liable as a "publisher or speaker" of (3) content provided by someone else. *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019). As this Court has already held, Meta is an interactive computer service provider. *See* 4:22-md-3047, Dkt. 430 at 10. Thus, the determinative question here is whether, under the overlapping second and third prongs of the test, the States' claims seek to hold Meta liable as a publisher or speaker of third-party content. *See* 4:22-md-3047, Dkt. 430 at 12 (noting that the third prong overlaps with the second prong as a practical matter, and does not require further discussion) (citing *In re Apple Inc. App Store Simulated Casino-Style Games Litig.*, 625 F. Supp. 3d 971, 978 (N.D. Cal. 2022)). Because the States' unfair or unconscionable business acts or practices claims overwhelmingly seek to hold Meta liable for its decisions about whether and how to publish third-party content—decisions about how much content to publish, how to arrange and present it, and for how long to publish it—the claims are almost all barred by Section 230. *See* Multistate Compl. ¶ 847(a)–(d); *see also Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009).

The States' claims that Meta designed its services "to promote compulsive, prolonged, and unhealthy use," Multistate Compl. ¶ 847(a), and "to extract additional time and attention from young users," *id.* ¶ 847(b), are foreclosed by Section 230. *See also* Florida Compl. ¶ 26 ("To draw young people into its ecosystem and keep them coming back, Meta employs technologies designed to maximize their time on and engagement with its Social Media Platforms."). In essence, this claim seeks to hold Meta liable for the volume of third-party content it publishes. But this Court has previously recognized that such a claim "would inherently limit what defendants are able to publish" by "requir[ing] defendants to publish less third-party content." *See* 4:22-md-3047, Dkt. 430 at 16 (dismissing Personal Injury Plaintiffs' claims premised on alleged failures to limit time, frequency, and time-of-day of use of social media services). Notably, this Court has already examined each of the specific design features that the States allege led to excessive use and held that Section 230 bars challenges to all of them:

***Infinite scroll and autoplay.*** The States challenge the alleged "infinite scroll" and autoplay of content on Meta's services. Multistate Compl. ¶¶ 847(b)–(c); *see id.* ¶ 377 ("The infinite scroll system . . . makes it difficult for young users to disengage [from the content] because there is no natural end point for the display of new information."); *id.* ¶ 381 ("Much like infinite scroll, the autoplay feature encourages young users to continuously engage on the Platform because it provides them with an ongoing supply of content."); *see also id.* ¶ 273; Florida Compl. ¶¶ 28, 32. This Court has already held that the alleged defect of "[n]ot providing a beginning and end to a user's 'Feed' . . . would necessarily require defendants to publish less third-party content," and so was barred by Section 230. *See* 4:22-md-3047, Dkt. 430 at 16.

***Ephemeral content features.*** The States also challenge "ephemeral"" publication of content, *see* Multistate Compl. ¶¶ 847(b)–(c), by which "content [is] temporarily made available to users with notifications and visual design cues indicating that the content will soon disappear," *id.* ¶¶ 387–88; *see* Florida Compl. ¶ 35. This Court previously held that Section 230 immunizes features that "provide . . . ephemeral content" because "[e]ditorial decisions such as determining . . . how long to publish content are 'traditional editorial functions' immune under Section 230, where exercised with regard to third-party content." 4:22-md-3047, Dkt. 430 at 18.

***Notifications.*** The States next challenge allegedly "disruptive audiovisual and vibration notifications and alerts." Multistate Compl. ¶ 847(b)–(c); *see* Florida Compl. ¶ 115 ("disruptive alerts").

21

This Court previously held that "where notifications are made to alert users to third-party content," Section 230 bars challenges to those features. 4:22-md-3047, Dkt. 430 at 18. Moreover, as this Court has recognized, the States' claims regarding notifications about Meta's own content are foreclosed by the First Amendment. *See* 4:22-md-3047, Dkt. 430 at 22 ("[T]he timing and clustering of notifications of *defendants' content* to increase addictive use is entitled to First Amendment protection. There is no dispute that the content of the notifications themselves, such as awards, are speech." (citation omitted)).

*Algorithms.* The States also challenge "algorithmically served content," Multistate Compl. ¶ 847(d), or the use of algorithms to detect, "on a user-by-user basis," the "material each individual is likely to engage with and then increasingly displaying similar material," *id.* ¶ 65. This Court previously held that "to the extent plaintiffs challenge defendants' use of algorithms to determine whether, when, and to whom to publish third-party content, Section 230 immunizes defendants," and that "[w]hether done by an algorithm or an editor, these are traditional editorial functions that are essential to publishing." 4:22-md-3047, Dkt. 430 at 18–19.

*Likes.* Finally, the States challenge the "quantification and display of 'Likes,'" Multistate Compl. ¶ 847(b), which "are a quick way for users to express validation or approval of other users' photos or videos, by clicking or tapping a heart icon or the iconic thumbs-up icon", *id.* ¶ 227; *see* Florida Compl. ¶¶ 33–34. This Court has already held that Section 230 bars claims regarding "notifications [that] are made to alert users to third-party content, . . . includ[ing] notifications that someone has . . . liked a user's post." 4:22-md-3047, Dkt. 430 at 18. That reasoning applies whether the fact that another user "Liked" a post is presented through an alert notification or by displaying that information on the post itself.

The States cannot plead around Section 230 by offering the bare and conclusory allegation that "Meta utilized Social Media Platform features that unfairly and/or unconscionably harm young users *independently of any actions taken by third-party users* of Meta's Platforms." Multistate Compl. ¶ 847(b) (emphasis added). As this Court has already recognized in dismissing personal injury claims based on challenges to these same features, it is not "required to accept as true" such wholly "conclusory" allegations. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). The States offer no factual

allegations that plausibly explain how Meta could fix these allegedly unfair design features without altering when, how, and to whom they publish third-party content.[27]

**B.      Section 230 Bars the States' Claims That Meta Omitted or Failed To Provide Warnings Regarding Instagram and Facebook's Design Features.**

Section 230 likewise bars the States' claims that Meta's failure to provide warnings regarding these design features violate their consumer protection statutes. *See, e.g.*, Multistate Compl. ¶ 891. Section 230 bars failure-to-warn claims where the "theory of liability is inherently tied to content" and the dissemination of content. *Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1119, 1126 (N.D. Cal. 2016). Any other rule would render Section 230 a dead letter, as plaintiffs could simply repackage impermissible claims involving alleged harm from third-party content as an omission claim. For that reason, courts have consistently dismissed failure-to-warn claims where, as here, the claims are "inextricably linked" to a service's "alleged failure to edit, monitor, or remove" third-party content. *Herrick v. Grindr, LLC*, 765 F. App'x 586, 591 (2d Cir. 2019); *see also, e.g.*, *Anderson v. TikTok*, 637 F. Supp. 3d 276, 280 (E.D. Pa. 2022) (Section 230 barred failure-to-warn claim premised "on the 'defective' manner in which Defendants published" third-party content); *In re Facebook, Inc.*, 625 S.W.3d 80 (Tex. 2021) ("Regardless of whether Plaintiffs' claims are couched as failure to warn, negligence, or some other tort of omission, any liability would be premised on second-guessing of [service's] 'decisions relating to the monitoring, screening, and deletion of [third-party] content . . . .'"); *L.W. v. Snap Inc.*, --- F. Supp. 3d ---, 2023 WL 3830365, at *7 (S.D. Cal. 2023) (similar); *Jackson v. Airbnb, Inc.*, 2022 WL 16753197, at *1 (C.D. Cal. 2022) (similar). The same logic applies to consumer protection claims that are premised on the same theory of liability.

---

[27] Many of the States' consumer protection laws contain safe harbors that explicitly exempt publishers of third-party content from liability. These safe harbor provisions reinforce that Meta may not be held liable on the basis of third party content that it disseminates. *See, e.g.*, Ariz. Rev. Stat. Ann. § 44-1523; Colo. Rev. Stat. Ann. § 6-1-106; Conn. Gen. Stat. Ann. § 42-110c(a); Del. Code Ann. tit. 6, § 2513(b)(1); Del. Code Ann. tit. 6, § 2534 (a)(2); Ga. Code Ann. § 10-1-396(2); Haw. Rev. Stat. § 481A-5(a)(2); Idaho Code § 48-605(2); 815 ILCS 505/10b(3); Iowa Code Ann. § 714H.4; La. Stat. Ann. § 51:1406(2); Md. Code Ann., Com. Law § 13-104; Minn. Stat. Ann. § 325D.46; Mo. Ann. Stat. § 407.020.2(1); N.J. Stat. Ann. § 56:8-2; N.Y. Gen. Bus. Law § 349; N.C.G.S. § 75-1.1(c); N.D. Cent. Code § 51-15-03; Ohio Rev. Code § 1345.12(B); Or. Rev. Stat. 646.612(2); 73 Pa. Stat. Ann. § 201-3; S.C. Code Ann. § 39-5-40; Vt. Stat. Ann. tit. 9, § 2452; Va. Code Ann. § 59.1-199; W. Va. Code § 46A-6-105; Wash. Rev. Code Ann. § 19.86.140; Wis. Stat. 100.18(9)(b).

META'S MOTION TO DISMISS THE MULTISTATE ATTORNEYS GENERAL COMPLAINT; FLORIDA ATTORNEY GENERAL COMPLAINT; AND PERSONAL INJURY PLAINTIFFS' CONSUMER PROTECTION AND MISREPRESENTATION CLAIMS

allegations regarding its residents' access to Facebook and Instagram are therefore insufficient. Its claims should be dismissed pursuant to 28 U.S.C. § 1406, whereupon they could be re-filed in this Court alongside the claims of 33 other state attorneys general. *See, e.g.*, *In re: Abbott Lab'ys, et al., Preterm Infant Nutrition Prods. Liab. Litig.*, 2023 WL 8527415, at \*10 (N.D. Ill. Dec. 8, 2023) (MDL court dismissing claims filed in Missouri under 28 U.S.C. § 1406 because Missouri courts lacked personal jurisdiction over defendants).

**CONCLUSION**

Meta respectfully requests Count I of the Multistate Complaint be dismissed insofar as it alleges a COPPA "child-directed" claim, and that Counts II–LIV of the Multistate Complaint be dismissed in their entirety with prejudice. *See* Case No. 4:23-cv-05448, Dkt. No. 1. In addition, Meta respectfully requests that the Florida Complaint be dismissed in its entirety with prejudice. *See* Case No. 4:23-cv-05885, Dkt. No. 1.

Separately, Meta respectfully requests that Counts 7, 8, and 9 of the Personal Injury Second Amended Master Complaint be dismissed in their entirety with prejudice. *See* Case No. 4:22-md-3047, Dkt. No. 494.

Dated: December 22, 2023

Respectfully submitted,

**COVINGTON & BURLING LLP**

 */s/ Phyllis A. Jones*

Paul W. Schmidt, *pro hac vice*
  pschmidt@cov.com
Phyllis A. Jones, *pro hac vice*
  pajones@cov.com
Christian J. Pistilli (*pro hac vice* pending)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291

Emily Johnson Henn (State Bar No. 269482)
  ehenn@cov.com

69

COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
Telephone: + 1 (650) 632-4700
Facsimile: +1 (650) 632-4800

*Attorneys for Defendants Meta Platforms, Inc.,
Instagram, LLC, Meta Payments, Inc., Meta Platforms
Technologies, LLC, Facebook Payments, Inc., Siculus,
Inc., Facebook Operations, LLC, and Mark Elliot
Zuckerberg*

META'S MOTION TO DISMISS THE MULTISTATE ATTORNEYS GENERAL COMPLAINT; FLORIDA ATTORNEY GENERAL COMPLAINT;
AND PERSONAL INJURY PLAINTIFFS' CONSUMER PROTECTION AND MISREPRESENTATION CLAIMS