# Exhibit E

Phyllis A. Jones (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com

*Attorney for Defendants Meta Platforms, Inc.,*
*Instagram, LLC, Meta Payments, Inc.,*
*Meta Platforms Technologies, LLC, Facebook*
*Payments, Inc., Siculus, Inc., Facebook*
*Operations, LLC, and Mark Elliot Zuckerberg*

*Additional counsel listed on signature pages*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| *People of the State of California, et al.*,<br><br>v.<br><br>*Meta Platforms, Inc.*, *Instagram, LLC, Meta Payments, Inc.*, *Meta Platforms Technologies, LLC*<br>——————————————<br><br>*Office of the Attorney General, State of Florida, Department of Legal Affairs*,<br><br>v.<br><br>*Meta Platforms, Inc.*, *Instagram LLC*<br>——————————————<br><br>IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | MDL No. 3047<br><br>Case Nos. 4:23-cv-05448-YGR<br><br>4:23-cv-05885-YGR<br><br>4:22-md-03047-YGR-PHK<br><br>Honorable Yvonne Gonzalez Rogers<br><br>**META'S REPLY IN SUPPORT OF MOTION TO DISMISS THE MULTISTATE ATTORNEYS GENERAL COMPLAINT; FLORIDA ATTORNEY GENERAL COMPLAINT; AND PERSONAL INJURY PLAINTIFFS' CONSUMER PROTECTION AND MISREPRESENTATION CLAIMS**<br><br>**Hearing:**<br>Date: April 19, 2024<br>Time: 9:30 AM<br>Place: Oakland, California<br>Judge: Hon. Yvonne Gonzalez Rogers |

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

LAW & ARGUMENT ........................................................................................................... 1

I.    THE "CHILD-DIRECTED" COPPA CLAIM SHOULD BE DISMISSED................................ 1

    A.    The State's Procedural Objections Are Unavailing. ........................................................ 1

    B.    The States Misapply the Child-Directed Standard. ........................................................ 2

        1.    The States Cannot Establish That the Services "As A Whole" Are Child-Directed. ................................................................................................. 2

        1.    The States Cannot Establish That "Portions" of the Services Are Child-Directed. 5

II.    SECTION 230 LARGELY BARS THE CONSUMER PROTECTION CLAIMS. ...................... 7

    A.    Section 230 Bars the Vast Majority of the States' Claims that the Design of the Instagram and Facebook Services Constitute Unfair or Unconscionable Business Practices. ............ 7

        1.    The States' Allegations About Instagram's and Facebook's Overall Design Fail.. 7

        2.    The States' Allegations About Particular Features Fail. ...................................... 8

        3.    The States' Unpled Claims About Particular Features Fail. .............................. 11

    B.    Section 230 Bars the States' Claims That Meta Omitted or Failed To Provide Warnings Regarding Instagram and Facebook's Design Features. ............................................... 12

III.    THE STATES FAIL TO ALLEGE ACTIONABLE MISREPRESENTATIONS. ..................... 14

    A.    Meta's Opinions About the "Safety" of Its Services Are Not Actionable. ...................... 15

    B.    The States Fail to Establish That Alleged Statements Were False or Misleading............ 17

    C.    The States Fail to Establish That the Alleged Misrepresentations Were Material. .......... 19

    D.    The States' Claims Fail Insofar as They Are Premised on Statements to Congress......... 20

IV.    THE STATES FAIL TO ALLEGE UNFAIR BUSINESS ACTS OR PRACTICES.................. 22

    A.    Claims Based on or Guided by Section 5 of the FTCA Should Be Dismissed. ............... 23

    B.    To the Extent the *Sperry* Test Applies, Claims Based on It Should Be Dismissed.......... 25

    C.    The Remaining Unfairness Claims Should Be Dismissed. ........................................... 25

V.    THE STATES' CONSUMER PROTECTION CLAIMS FAIL BECAUSE THEY DO NOT APPLY TO META'S ALLEGED CONDUCT. .................................................................. 29

ii

VI.    THE STATES' CLAIMS FOR RESTITUTION FAIL AS A MATTER OF LAW. ................... 32

VII.   THE PI PLAINTIFFS' CONSUMER PROTECTION CLAIMS FAIL. .................................... 35

     A.    The Count 7 Claims Fail Because the State Laws Do Not Apply to Plaintiffs' Claims... 35

     B.    Count 7 Fails for the Same Reasons the States' Deceptive Practices Claims Fail. .......... 36

     C.    Count 7 Also Fails Because Plaintiffs Do Not Allege Actual Reliance. ........................ 36

     D.    Count 7 Fails Because PI Plaintiffs Do Not Allege An Ascertainable Loss. ................... 37

VIII.  THE PI PLAINTIFFS' COMMON LAW CONCEALMENT AND MISREPRESENTATION CLAIMS LIKEWISE FAIL. ................................................................................................... 39

IX.    FLORIDA'S CLAIMS SHOULD BE DISMISSED FOR LACK OF JURISDICTION. ............. 39

CONCLUSION ................................................................................................................................... 40

**INTRODUCTION**

The States' Opposition fails to overcome the Complaints' deficiencies identified in Meta's Motion. The States' COPPA claim requires impermissibly and implausibly treating general audience internet services as "child directed" based on a small fraction of third-party content. And permitting the States' consumer protection claims would run roughshod over this Court's prior rulings regarding the reach of Section 230. The Court has already held that the very features that lie at the core of the States' claims—such as the design of algorithms that recommend content and other features that determine whether and how content is displayed—are barred. Moreover, the States fail to identify even a single case from any jurisdiction holding that, without more, designing a service in a way that makes the service more appealing to users—*i.e.*, makes more people want to use it or makes people want to use it more frequently—constitutes an unfair business practice. Punishing businesses for allegedly seeking to increase use of the businesses' services would be an unprecedented and unwarranted expansion of state consumer protection law. For these reasons, and the additional reasons explained below, the Court should grant Meta's Motion.

**LAW & ARGUMENT**

**I.      THE "CHILD-DIRECTED" COPPA CLAIM SHOULD BE DISMISSED.**

The States' procedural objections to Meta's motion to dismiss their "child-directed" COPPA claim are meritless. And the Attorney Generals' Opposition ("AG Opp.") (ECF 599) does not overcome Meta's showing that they have failed to plead that Instagram or Facebook (or "portions thereof") are "child-directed."

**A.      The State's Procedural Objections Are Unavailing.**

Meta's motion is procedurally proper because it seeks to dismiss an entire cause of action. COPPA provides two distinct causes of action. First, it provides that it is unlawful "for an operator of [an] online service" that is "directed to children to collect personal information from a child in a manner that violates the [COPPA] regulations." 15 U.S. Code § 6502. Second, it provides that it is unlawful for "any operator that has actual knowledge that it is collecting personal information from a child[] to collect personal information from a child in a manner that violates the regulations." *Id.* Those causes of action operate independently from one another and the proof required to establish a violation of each is entirely different. The Opposition itself recognizes this, describing the States' child-directed claim as an "independent

Court has already held, the "structure and operation of a website," including "features that are part and parcel of the overall design and operation of the website … reflect choices about what content can appear on the website and in what form and thus fall within the purview of traditional publisher functions." *Fields v. Twitter, Inc.*, 200 F. Supp. 3d 964, 972 (N.D. Cal. 2016) (cleaned up). At bottom, the States take issue with how Meta publishes third-party content and want Meta to do it differently—by forcing Meta to change the order in which third-party content is displayed, the manner in which it is presented, and how users are alerted to it. That is precisely what Section 230 forbids. *See* Prior Order 16–19 (Section 230 extends to "editorial decisions and functions ancillary to the decision to make content available").

### 2.　　The States' Allegations About Particular Features Fail.

The States next argue that their challenges to specific features of Facebook and Instagram are not barred by Section 230. To start, this argument is predicated on an overly narrow interpretation of Section 230, under which its protections would depend on whether Meta needs to "alter" any third-party content to comply with the duties the States seek to impose under consumer protection law. AG Opp. 16. But courts, including this one, have rejected that cramped view of Section 230, recognizing that immunity also applies where imposing liability for a claim would "requir[e] defendants to change *how* they publish such content." Prior Order 17 (emphasis added); *see also, e.g.*, *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019).[10] The States also disregard the Court's prior order, which held that Section 230 barred materially identical challenges to these precise features. While the States occasionally attempt to manufacture distinctions between the features they challenge and the ones the Court has ruled on, their argument largely boils down to the contention that the Court misapplied the law or committed errors in its prior order. The States' attempted distinctions fail and the Court's prior order controls:

***Infinite scroll and autoplay.***　　The Court previously found that challenges to the design of the infinite scroll and autoplay features "would necessarily require defendants to publish less third-party content" and "inherently limit what defendants are able to publish." Prior Order 16. The States simply

---

[10] For some challenged features, the States' assertion is simply not true; disabling content's ephemerality, for instance, would alter it. *See* Prior Order 16 (so finding). For the other challenged features, the States' claims necessarily depend on Meta's alleged decisions regarding whether and how to display third-party content; changing Meta's algorithms, for example, would change the sequencing of content—a traditional publishing decision. *See id.* 18–19 (so finding).

META'S REPLY IN SUPPORT OF MOTION TO DISMISS THE MULTISTATE ATTORNEYS GENERAL COMPLAINT; FLORIDA ATTORNEY GENERAL COMPLAINT; AND PERSONAL INJURY PLAINTIFFS' CONSUMER PROTECTION AND MISREPRESENTATION CLAIMS

disagree, contending that "Meta *could* change these features without publishing less third-party content," because this change would only limit what "users might ***see***," not "prohibit any third-party user from ***posting***." AG Opp. 20–21 (second and third emphases added). But that misses the Court's point and is irrelevant. Section 230 protects decisions about how to publish user content (in the States' words, those regarding what "users might see"), not just users' ability to post it. *See, e.g.*, *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009) (Section 230 precludes liability when "the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker'").

***Ephemeral content features.*** The Court previously found that the ephemerality of third-party content is also covered by Section 230. *See* Prior Order 16. The States again disagree, arguing that Meta can be forced to disable ephemerality without changing the underlying content. *See* AG Opp. 21–22. But the Court already dispensed with that argument, finding that "determining the length of content published and how long to publish content are 'traditional editorial functions' immune under Section 230, where exercised with regard to third-party content." Prior Order 16 (citing *Barnes*, 570 F.3d at 1102). *Lemmon v. Snap, Inc.* (which the Court already considered) does not suggest a different conclusion, contrary to what the States argue: the "speed filter" at issue there was found to be independent of third-party content and Snap could have satisfied its obligations "without altering the content that Snapchat's users generate." *Id.* 12 (quoting *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1092 (9th Cir. 2021)). Here, the States' claims would force Meta to ***remove*** ephemeral content, ***alter*** the content to be non-ephemeral, or ***prohibit*** Meta from publishing ephemeral third-party content in the future—actions protected by Section 230. *See, e.g.*, *Lemmon*, 995 F.3d at 1091 ("'[P]ublication' generally involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." (cleaned up)).

***Notifications***. The Court previously found that notifications regarding third-party content are protected by Section 230. Prior Order 18 (citing *Dyroff*, 934 F.3d at 1093).[11] To dispute this, the States argue that the Court misread and misapplied the Ninth Circuit's decision in *Dyroff*. AG Opp. 22. They

---

[11] As the Motion pointed out, notifications regarding Meta's own content are shielded by the First Amendment. *See* Mot. 22 (citing Prior Order 22 (so finding)). The States did not respond to this point in their brief, conceding that they do not seek to impose liability on that basis and/or that these allegations would not be actionable.

argue that their challenge is to the design of the notifications—that they are allegedly too frequent and disruptive—which does not require Meta to "monitor or remove content." *Id.* But again, this argument improperly challenges Meta's publishing decisions about when and how to publish third-party content by providing users with notifications about such content. *See, e.g.*, *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1118 (N.D. Cal. 2020) (Koh, J.) (citing *Dyroff* to hold that "notifications" are entitled to Section 230 protection because they "are tools meant to facilitate the communication and content of others"). The Court correctly applied Section 230 (including *Dyroff*) to reject this argument, which is not materially different from the arguments already made by the Personal Injury ("PI") Plaintiffs. *See* ECF 337 at 12 ("liability for these defective 'tools,' would not hold Defendants responsible for publishing anything, or require them to monitor the legality of third-party content" (citation omitted)). The Court correctly rejected that mistaken framing then and should do so again now.

***Algorithms***. The Court previously found that, "to the extent plaintiffs challenge defendants' use of algorithms to determine whether, when, and to whom to publish third-party content, Section 230 immunizes defendants" because "these are traditional editorial functions that are essential to publishing." Prior Order 18–19. The States argue that the Court ignored Ninth Circuit precedent in making this finding because content recommendation algorithms "promot[e], market[], or boost[] content," which the States assert is not protected by Section 230. AG Opp. 19. But choosing—or "promoting," "boosting," or any other synonym—which content to show is at the heart of what Section 230 protects. *E.g.*, *Dyroff*, 934 F.3d at 1098 (finding algorithmic recommendations protected); *Force v. Facebook, Inc.*, 934 F.3d 53, 66 (2d Cir. 2019) (rejecting "contention that Facebook's use of algorithms renders it a non-publisher"); *M.P. v. Meta Platforms, Inc.*, 2023 WL 5984294 (D.S.C. Sept. 14, 2023) (Section 230 barred challenges to "algorithms and internal architecture of social media sites"). And none of the purportedly contrary precedent cited by the States concerned content algorithms.

***Likes.*** The Court previously found that "notifications that someone has commented on or liked a user's post" are shielded by Section 230. Prior Order 18. As Meta explained, "[t]hat reasoning" applies whether the "Like" is presented with an alert-style notification or by displaying the information on the post itself. *See* Mot. 22. The States respond that Section 230 does not apply to their claims to the extent they challenge Meta's alleged choice to display ***total*** "Like" counts for users. AG Opp. 18. But the States

offer no reason why Section 230's applicability would depend on whether Meta displays Likes individually or tallies them up. Likes are user-generated content: as the States themselves allege, Likes are a "way for users to express validation or approval" of third-party content. Compl. ¶ 227. Accordingly, Meta's decision whether and how to display that third-party content (including total Like count) is protected by Section 230. Courts, including the Ninth Circuit, have repeatedly held that the aggregation of user reactions in this manner is covered by Section 230. *See, e.g.*, *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1270 (9th Cir. 2016) ("We fail to see how Yelp's rating system, which is based on rating inputs from third parties and which reduces this information into a single, aggregate metric is anything other than user-generated data."); *Klayman v. Zuckerberg*, 753 F.3d 1354, 1358 (D.C. Cir. 2014) ("[A] website does not create or develop content when it merely provides a neutral means by which third parties can post information of their own independent choosing online."); *Levitt v. Yelp! Inc.*, 2011 WL 5079526, at *7 (N.D. Cal. Oct. 26, 2011), *aff'd*, 765 F.3d 1123 (9th Cir. 2014) (similar).

### 3. The States' Unpled Claims About Particular Features Fail.

After Meta explained in its Motion to Dismiss why each feature the States challenge is shielded from liability, the States changed tack in their Opposition, arguing that an entirely new set of features is also at issue. *See* AG Opp. 17. The States now assert unfair or unconscionable practices claims based on (1) the ability of users to have multiple Instagram accounts, (2) appearance-altering filters, and (3) users' inability to self-restrict time on the services. *Id.* They say that Meta "concedes" these allegations can proceed because it did not move to dismiss them. *Id.*

The most basic flaw in the States' argument is that their Complaint does not plead challenges to these features as part of their unfair practices claims. Those claims explicitly include a list of challenged features (all of which Meta addressed in its Motion) and none of these newly added features are on that list. *See* Compl. ¶¶ 847–50 (collecting allegations to support these claims); *id.* ¶ 847(b)–(e) (listing challenged features). The new features the States point to in their brief, by contrast, are pulled from stray allegations throughout the Complaint, with no nexus drawn to this set of claims. For instance, the "multiple accounts" allegation the States cite appears in three paragraphs that are nearly 500 paragraphs removed from the States' unfair practices allegations. *See* AG Opp. 17 (citing Compl. ¶¶ 370–72). The States' "attempt to rewrite the [complaint] in their Opposition [to survive a motion to dismiss] is not

META'S REPLY IN SUPPORT OF MOTION TO DISMISS THE MULTISTATE ATTORNEYS GENERAL COMPLAINT; FLORIDA ATTORNEY GENERAL COMPLAINT; AND PERSONAL INJURY PLAINTIFFS' CONSUMER PROTECTION AND MISREPRESENTATION CLAIMS

plausible," and the Court should reject it. *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1023 (N.D. Cal. 2020). Meta had no reasonable and fair notice that the States would single out these features scattered across the Complaint when they explicitly listed other features as the basis for their unfair practices claims. The Court should dismiss the claims based on what the States actually pled.[12]

If the Court is inclined to consider these newly asserted features, Section 230 bars liability for permitting users to have multiple accounts. As another court in this District has explained, "decisions regarding the structure and operation of a website—***such as permitting users to register under multiple screen names***—reflect choices about what content can appear on the website and in what form and thus fall within the purview of traditional publisher functions." *Fields*, 217 F. Supp. 3d at 972 (emphasis added). Permitting users to open accounts (or multiple accounts) is analogous to traditional publishing functions because it is inseparable from choices about how and to whom content is published. *See, e.g.*, *id.* at 972 (holding that liability on this basis would violate Section 230 because it concerns "granting permission to post (through the provision of Twitter accounts) instead of for allowing postings that have already occurred"); *Friendfinder Network, Inc.*, 540 F. Supp. 2d 288, 295 (D.N.H. 2008) (holding that Section 230 covers "a feature that allowed a single individual to post under multiple screen names" and that holding otherwise would "eviscerate Section 230 immunity" (cleaned up)).[13]

### B. Section 230 Bars the States' Claims That Meta Omitted or Failed To Provide Warnings Regarding Instagram and Facebook's Design Features.

Just as Section 230 bars claims challenging how Meta publishes third-party content, it also bars claims seeking to hold Meta liable for omissions regarding the manner in which it publishes third party content. Such omission claims still seek to hold Meta liable as a publisher. *See, e.g.*, *Barnes*, 570 F.3d at 1101–02 (in applying Section 230, "what matters is not the name of the cause of action," but "whether the

---

[12] *See Baker v. Twitter, Inc.*, 2023 WL 6932568, at *3 (C.D. Cal. Aug. 25, 2023) (Rule 8 and "basic common sense call for pleadings that do not require the Court to immediately recall what was alleged in paragraph 97 in order to understand why one bolded sentence in a half-page-long block quote in paragraph 223 is false or misleading …. Lead Plaintiff is reminded that '[j]udges are not like pigs, hunting for truffles buried in' overlong complaints." (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

[13] Meta recognizes that the Court previously ruled that claims based on appearance-altering filters and the lack of options to self-restrict time are not barred by Section 230 or the First Amendment. *See* Prior Order 14–15, 21–22. While Meta respectfully disagrees with those rulings, and preserves its arguments as applied to the States' claims, Meta does not seek to relitigate those rulings here.

Dated: March 1, 2024                    Respectfully submitted,


**COVINGTON & BURLING LLP**

 */s/ Phyllis A. Jones*
Paul W. Schmidt, *pro hac vice*
  pschmidt@cov.com
Phyllis A. Jones, *pro hac vice*
  pajones@cov.com
Christian J. Pistilli, *pro hac vice*
  cpistilli@cov.com
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291

Emily Johnson Henn (State Bar No. 269482)
  ehenn@cov.com
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
Telephone: + 1 (650) 632-4700
Facsimile: +1 (650) 632-4800

*Attorneys for Defendants Meta Platforms, Inc.,
Instagram, LLC, Meta Payments, Inc., Meta Platforms
Technologies, LLC, Facebook Payments, Inc., Siculus,
Inc., Facebook Operations, LLC, and Mark Elliot
Zuckerberg*

META'S REPLY IN SUPPORT OF MOTION TO DISMISS THE MULTISTATE ATTORNEYS GENERAL COMPLAINT; FLORIDA ATTORNEY
GENERAL COMPLAINT; AND PERSONAL INJURY PLAINTIFFS' CONSUMER PROTECTION AND MISREPRESENTATION CLAIMS