# Exhibit I

*LIST OF COUNSEL ON SIGNATURE PAGE*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STATE OF ARIZONA,** ex rel. KRIS MAYES, ATTORNEY GENERAL; | **AMENDED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF** |
| **THE PEOPLE OF THE STATE OF CALIFORNIA**; | |
| **STATE OF COLORADO**, ex rel. PHILIP J. WEISER, ATTORNEY GENERAL; | |
| **STATE OF CONNECTICUT**; | |
| **STATE OF DELAWAR**E, *ex rel.* KATHLEEN JENNINGS, ATTORNEY GENERAL OF THE STATE OF DELAWARE; | |
| **STATE OF HAWAI'I**, ex rel. ANNE E. LOPEZ, ATTORNEY GENERAL; | |
| **STATE OF IDAHO**, through ATTORNEY GENERAL RAÚL R. LABRADOR; | |
| **THE PEOPLE OF THE STATE OF ILLINOIS**; | |
| **STATE OF INDIANA**; | |
| **STATE OF KANSAS**, ex rel. KRIS W. KOBACH, Attorney General; | |
| **COMMONWEALTH OF KENTUCKY**; | |

**STATE OF LOUISIANA**;

**STATE OF MAINE**;

**OFFICE OF THE ATTORNEY GENERAL OF MARYLAND**;

**STATE OF MINNESOTA**, by its ATTORNEY GENERAL, KEITH ELLISON;

**STATE OF NEBRASKA** *ex rel.* MICHAEL T. HILGERS, ATTORNEY GENERAL;

**MATTHEW J. PLATKIN**, ATTORNEY GENERAL FOR THE **STATE OF NEW JERSEY**, AND **ELIZABETH HARRIS,** ACTING DIRECTOR OF THE **NEW JERSEY DIVISION OF CONSUMER AFFAIRS**;

**THE PEOPLE OF THE STATE OF NEW YORK**, by LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK;

**STATE OF NORTH CAROLINA**, *ex rel.* JEFF JACKSON, ATTORNEY GENERAL;

**STATE OF OHIO**, *ex rel.* ATTORNEY GENERAL DAVE YOST;

**STATE OF OREGON** *ex rel.* DAN RAYFIELD, ATTORNEY GENERAL FOR THE STATE OF OREGON;

**COMMONWEALTH OF PENNSYLVANIA** BY ATTORNEY GENERAL DAVID W. SUNDAY JR.;

**STATE OF RHODE ISLAND;**

**STATE OF SOUTH CAROLINA,** *ex. rel.* ALAN M. WILSON, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF SOUTH CAROLINA;

2

**STATE OF SOUTH DAKOTA** *ex rel.*
MARTY J. JACKLEY, SOUTH DAKOTA
ATTORNEY GENERAL;

**COMMONWEALTH OF VIRGINIA**,
*ex rel.* JASON S. MIYARES,
ATTORNEY GENERAL;

**STATE OF WASHINGTON**, *ex rel.*
NICHOLAS W. BROWN, ATTORNEY
GENERAL;

**STATE OF WEST VIRGINIA**, *ex rel.* JOHN B.
MCCUSKEY, ATTORNEY GENERAL; and

**STATE OF WISCONSIN**,

                              **Plaintiffs,**

              **v.**

**META PLATFORMS, INC.;**

**INSTAGRAM, LLC;**

**META PAYMENTS, INC.**; and

**META PLATFORMS TECHNOLOGIES, LLC**,

                              **Defendants.**

3

Amended Complaint for Injunctive and Other Relief

**TABLE OF CONTENTS**

IN THE UNITED STATES DISTRICT COURT ............................................................................ 1

I.     SUMMARY OF THE CASE ................................................................................................ 1

II.    PUBLIC INTEREST ........................................................................................................... 4

III.   JURISDICTION, VENUE AND DIVISIONAL ASSIGNMENT ..................................... 4

     A.    Jurisdiction .............................................................................................................. 4

     B.    Venue ...................................................................................................................... 5

     C.    Divisional Assignment. .......................................................................................... 5

IV.   RELEVANT TIMES ........................................................................................................... 5

V.    PLAINTIFFS ...................................................................................................................... 6

VI.   DEFENDANTS ................................................................................................................... 6

VII.  TRADE AND COMMERCE IN THE FILING STATES .................................................. 10

VIII. META'S SCHEME TO EXPLOIT YOUNG USERS FOR PROFIT ............................... 11

     A.    To maximize profit, Meta's business model focuses on increasing young
            users' engagement. ................................................................................................ 11

          1.    Meta monetizes young users' attention through data harvesting and
                 targeted advertising. ................................................................................... 11

          2.    Meta specifically targets young users. ....................................................... 14

          3.    Meta designs and deploys features to capture young users'
                 attention and prolong their time on its Social Media Platforms. .............. 19

     B.    Meta falsely represents that its Social Media Platform features are safe and
            not designed to induce young users' compulsive and extended use. .................... 22

          1.    Meta represents to the public that its Social Media Platforms are
                 designed to support young users' well-being. ............................................ 23

          2.    Meta prioritizes maximizing engagement over young users' safety. ....... 25

          3.    Meta's Recommendation Algorithms encourage compulsive use,
                 which Meta does not disclose. ................................................................... 27

          4.    The Recommendation Algorithms are harmful to young users'
                 mental health, notwithstanding Meta's representations to the
                 contrary. ..................................................................................................... 34

          5.    Meta's use of social comparison features such as "Likes" also
                 promotes compulsive use and mental health harms for young users. ........ 40

          6.    Meta's use of disruptive audiovisual and haptic notifications
                 interferes with young users' education and sleep. ..................................... 50

i

7.      Meta promotes Platform features such as visual filters known to promote eating disorders and body dysmorphia in youth. ........................ 56

8.      Meta offers features that it claims promote connection between friends, but actually serve to increase young users' time spent on the Platform. .................................................................................... 60

9.      Through its Platform features, Meta discourages young users' attempts to disengage, notwithstanding Meta's representations to the contrary. ...................................................................................... 61

10.     Meta knows its Platform features are addictive and harmful, but misrepresents and omits this information in public discourse. ................. 66

11.     Meta makes its Platforms and associated harmful features available to especially young and vulnerable users. ................................................. 69

C.      Meta has misled its users and the public by boasting a low prevalence of harmful content on its Social Media Platforms—while concealing internal studies showing the high incidence of user harms. ................................................. 73

D.      Meta's Platform features cause young users significant physical and mental harm, of which Meta is keenly aware. ........................................................ 80

IX.     META'S COPPA NONCOMPLIANCE ............................................................. 103

A.      COPPA requires Meta to obtain verifiable parental consent for Instagram and Facebook users under the age of 13. ............................................................. 103

B.      Meta does not comply with COPPA with respect to Instagram. ........................ 105

1.      Meta possesses actual knowledge of children on Instagram and collects their personal information without obtaining parental consent. ...................................................................................... 105

2.      Instagram is "directed to children." ......................................................... 121

3.      Meta does not obtain verifiable parental consent before collecting personal information from users under the age of 13 on Instagram. ...... 133

C.      Meta does not comply with COPPA with respect to Facebook. ........................ 134

1.      Meta has actual knowledge of users under age 13 on Facebook. ........... 134

2.      Facebook is "directed to children." ........................................................ 135

3.      Meta does not obtain verifiable parental consent before collecting personal information from users under age 13 on Facebook. ................. 137

X.      META CONTINUES TO EXPAND AND INTRODUCE NEW PLATFORMS ......... 138

XI.     SUMMARY OF META'S DECEPTIVE AND UNFAIR OR UNCONSCIONABLE ACTS AND PRACTICES ........................................................ 139

A.      Deceptive Acts and Practices ............................................................................ 139

B.      Unfair and/or Unconscionable Acts and Practices ............................................. 140

ii

CLAIMS FOR RELIEF .................................................................................................. 141

PRAYER FOR RELIEF ................................................................................................ 193

iii

Antigone Davis what Meta believed the lifetime monetary value of young users was; Davis responded, "[t]hat's just not the way we think about [it]." Davis also denied that Meta "considered the profit value of developing products when [Meta] make[s] their decisions of how those products look," testifying that this would be a "terrible business model."

> **3.** **Meta designs and deploys features to capture young users' attention and prolong their time on its Social Media Platforms.**

86.    Acquiring young users helps secure Meta's profit stream over time. By capturing users' attention and engagement when they are young, Meta ensures future engagement and monetization as those young users grow up.

87.    Meta thus develops and implements features to attract young users and keep them engaged on its Social Media Platforms for as long as possible. These features include: engagement-based (as opposed to chronological) feeds; infinite scroll; push notifications; ephemeral content; and video-based content.

88.    Meta had originally displayed content on a user's "Feed" chronologically, i.e., in the order the content was posted by people the user elected to follow. Meta moved from chronological Feeds to engagement-based Feeds in 2009 (for Facebook) and 2016 (for Instagram).

89.    The engagement-based Feed is different and alters the users' experience. It algorithmically presents material to users based on several engagement components: posts with more "Likes," comments, and other indicia of user engagement are displayed to users first.

90.    This change was designed to prioritize material most likely to engage users for longer periods of time.

91.    In the fall of 2016, Instagram debuted its infinite scroll system.

92.    Infinite scroll is characterized by the partial display of additional content at the bottom of the user's screen, such that the user is typically unable to look at a single post in isolation (without seeing the top portion of the next post in their Feed).

93.    The "teasing" of yet-to-be-viewed content continues indefinitely; as the user scrolls down the Feed, new content is automatically loaded and "teased."

94.    This "teasing" feature is intended to keep young users of the Platform engaged and continuing to scroll to the new content.

95.    In April 2015, Meta introduced a variety of "push notifications" to Instagram. Push notifications are auditory and visual cues to alert users when accounts they follow add new content.

96.    Push notifications allowed Instagram to draw its users back to the Platform at any time of day. Once push notifications were introduced, Meta sought to increase the number of these notifications, tracking "notification growth" and designing "new push campaign" tools to test their impact on user engagement.

97.    Meta also sought to increase engagement through making certain content available to users only temporarily—with notifications and visual design cues indicating that the content would soon disappear forever (ephemeral content).

98.    Ephemeral content leads young users to more frequently open Meta's Social Media Platforms so they do not "miss out" on any new content. This phenomenon is called "Fear of Missing Out," or "FOMO." Meta designed ephemeral content features in its Social Media Platforms to induce this sense of FOMO in young users.

99.    For example, on August 2, 2016, Meta introduced a feature to Instagram designed to show images and narratives for only a short amount of time before disappearing, known as the "Stories" feature. Meta released a similar feature to Facebook in 2017.

100.    The purpose of this feature was in large part to help drive teen engagement.

101.    An internal Meta document from 2018 states: "we've invested in FB stories—and have seen engagement more than double[;] teen original sharing [is] up for the first time since 2012."

102.    Another example is "Live," which gives users the ability to livestream videos to followers or the public.

103.    Meta launched Facebook Live on a limited basis to celebrities and other high-profile users in August 2015, with the feature being available to all users by April 2016. Instagram soon followed in November 2016.

20

Amended Complaint for Injunctive and Other Relief

104.    Live allows users to create video content in real time that their followers can watch and react to, often called "going Live."

105.    When an account goes Live, the Instagram Platform sends out a notification.

106.    Meta saw fairly quickly that the Live feature was successful among young users, including younger teens. As an internal highlights memo noted in February 2017, of the 9.2 million broadcasts per day, "[Meta] found that 35% of [Live] broadcasters are teens (early and late high school)."

107.    In addition to video-streaming offered through the Live feature, Meta has also designed and implemented several video features, including "IGTV," "Instagram Video," and ultimately "Reels."[7] As with prior features, Meta focused on teen engagement with these video features.

108.    For instance, an internal email from April 2019 revealed that Meta's "Q2 stretch goal" was "2M[illion] hours of teen watch time" on IGTV.

109.    In 2020, when Meta introduced its short-form video feature, "Reels," to the U.S. market on Instagram, it was designed to compete with other platforms like TikTok that were growing in popularity. Reels were made available on Facebook in September 2021.

110.    Reels are algorithmically presented to users based on a number of factors, including the user's activity, the popularity of the content, and the viewer's connection to the creator.

111.    Reels display metrics such as Like counts, comments, and views in the video itself, which reduces the need for the user to navigate away from the video.

112.    The Reels feature is central to Meta's efforts to attract and retain young users. As noted in a presentation on engaging young users, Meta said that it was "investing heavily in Reels, Stories & Creators in an effort to generate more value for teens" on Instagram.

113.    As with other features Meta has deployed, young users are critical to Reels' success. One Meta employee put it best: "obviously teens are key to winning [sic] in Reels."

---

[7] IGTV was revamped in October 2021 (in a shift to Instagram Video), and ultimately removed completely from the Platform in March 2022. Reels was merged with and superseded "Instagram Video" in June 2022.

21

114.    Meta's anxiety about the growth in popularity of video-based platforms like TikTok and Snapchat was evident in the rapidity with which Meta introduced Reels. Meta employees stated, with regard to Reels, that it was "scary the speed we are moving" and that introducing Reels was "purely opportunistic."

115.    Meta Data Scientist and current Director of Data Science ███████ reflected on Meta's introduction of Reels in an internal chat: "we either do things WAY TOO FAST without Data. Or do things WAY TO[O] SLOW becau[se] of Design/Principles."

116.    Meta's development of these engagement features disregarded its own internal research about how design choices cause compulsive use. In June 2018, an internal presentation called "Facebook 'Addiction'" acknowledged that although "habits can be changed by behavior regulation," "aspects of Facebook," including "mindless" consumption of a feed and the fact that "it is easy to keep scrolling and go on frequently" make it "difficult to limit one's use."

**B.      Meta falsely represents that its Social Media Platform features are safe and not designed to induce young users' compulsive and extended use.**

117.    Meta has misrepresented the impact of the features used by its Social Media Platforms that drive young users to spend extended time on the Platforms.

118.    While Meta consistently reassures parents, lawmakers, and users that its Social Media Platforms are suitable for young users and designed to promote their well-being, it continues to develop and implement features that it knows induce young users' extended, addictive, and compulsive social media use. These features include:

- Algorithmic recommendation and sequencing;
- Public display and quantification of engagement metrics such as Likes;
- Face and body image manipulation filters;
- Disruptive audiovisual and haptic alerts;
- Infinite scroll and autoplay formats;
- Permitting and encouraging users to create multiple accounts; and
- "Ephemeral" presentation of social content.

22

"Pausing 'Instagram Kids' and Building Parental Supervision Tools," internally it recognizes that the under-13 products were truly directed to the younger age group of 7- to 9-year-olds (not tweens) with the expectation that tweens would continue to lie about their age to access the unrestricted adult version of Instagram.

724. In a 2022 research document, Meta noted that tweens and teens "deal[t] with bad actors [on Instagram] in different ways," using a 13- to 14-year-old age bucket to capture "tweens," showing that Meta knows that users who claim to be 13 or 14 often actually include users under the age of 13.

725. Meta has access to, and chooses not to use, feasible alternative age verification methods that would significantly reduce or eliminate the number of underage users on Meta's Social Media Platforms, for example, by requiring young users to submit student IDs upon registration.

726. Internal communications reveal that Meta has strategically chosen to eschew effective age verification designs in favor of user growth and retention of Instagram's youngest users.

727. In December 2017, an Instagram employee indicated that Meta had a method to ascertain young users' ages but advised that "you probably don't want to open this pandora's box" regarding age verification improvements.

728. Similarly, Meta has expressed concerns that any efforts to exclude "u13 age liars" could "impact growth" —i.e., Meta's bottom line. In an internal email from 2019, Davis asked Nick Clegg to "clarify with product leadership whether goal for age collection is to implement measures needed to identify and remove u13 age liars, which may impact growth, or whether we are waiting to test growth impact before committing to anything."

729. Externally, Meta misleads the public by claiming, in a March 17, 2021 post on Instagram's website, that "we know that young people can lie about their date of birth. We want to do more to stop this from happening," and by developing talking points stating that "we are continuously looking for better ways to identify and remove underage accounts." But internal documents show that Meta consistently avoids research and projects that could unearth the existence of users under the age of 13—because it would impact Meta's bottom line.

f.  Meta misrepresented, directly or indirectly, expressly or by implication that Meta's collection of user data was not for the purpose of causing those users to become addicted to the Social Media Platforms, when in reality that was one of the purposes for which Meta collected user data;

g.  Meta has made other false and deceptive representations, including as set forth in paragraphs 1 through 835.

**B.  Unfair and/or Unconscionable Acts and Practices**

847.  Meta engaged in unfair and unconscionable acts and practices, including the following unfair and/or unconscionable acts and practices, in connection with young users' use of and/or addiction to Meta's Social Media Platforms:

a.  Meta targeted its Social Media Platforms to young users while knowingly designing its Social Media Platforms to include features that Meta knew to be psychologically and physically harmful to young users—including features known to promote compulsive, prolonged, and unhealthy use by young users;

b.  Meta utilized Social Media Platform features that unfairly and/or unconscionably harm young users independently of any actions taken by third-party users of Meta's Platforms. These features include infinite scroll, ephemeral content features, autoplay, quantification and display of "Likes," and disruptive alerts, all of which were unfairly and/or unconscionably utilized by Meta to extract additional time and attention from young users whose developing brains were not equipped to resist those manipulative tactics;

c.  Meta designed, developed, and deployed disruptive audiovisual and vibration notifications and alerts and ephemeral content features in a way that unfairly and/or unconscionably exploited young users' psychological vulnerabilities and cultivated a sense of "fear of missing out" in order to induce young users to spend more time than they would otherwise choose on Meta's Social Media Platforms;

d.  Meta algorithmically served content to young users, according to "variable reinforcement schedules," thereby manipulating dopamine releases in young users, unfairly or

140

Amended Complaint for Injunctive and Other Relief

unconsciably inducing them to engage repeatedly with its products— much like a gambler at a slot machine; and

e.     Meta collected the personal information of under-13 users of Instagram and Facebook without first obtaining verifiable parental consent, which violated COPPA and the COPPA Rule.

848.     Meta's deployment of manipulative and harmful features, both on their own and especially in combination, for use by young users are unfair and/or unconscionable acts or practices.

849.     At all relevant times, Meta had a thorough understanding of the mental and physical harms and addiction suffered by young users of its Social Media Platforms. Instead of taking adequate measures to mitigate these damaging effects, Meta turned a blind eye to them, and persisted in exploiting young users' psychological vulnerabilities. Meta's acts and practices alleged herein are immoral, unethical, oppressive, and unscrupulous, including because they constitute knowing decisions causing unnecessary and unjustified harm to young users for Meta's financial gain.

850.     Meta's acts and practices alleged herein, including Meta's actions taken to encourage young users' compulsive and unhealthy use of and addiction to its Social Media Platforms, are offensive to public policy, as defined by statute and common law. The protection of minors from the harms of addiction and related afflictions are well-established objectives underlying public policy in the Filing States; Meta's acts and practices alleged herein, including Meta's actions taken to encourage young users' compulsive and unhealthy use of and addiction to its Social Media Platforms, are therefore offensive to public policy.

## CLAIMS FOR RELIEF

## COUNT I: COPPA VIOLATIONS BY META

### (15 USC § 6501 *et seq.*; 16 C.F.R. § 312.1 *et seq.*)

851.     The Filing States reallege and incorporate herein by reference each of the allegations contained in the preceding paragraphs as though fully alleged in this cause of action.

852.     Meta has repeatedly collected, used, or shared personal information about children under the age of 13 and continues to systematically do so.

141

Dated: _____                     Respectfully submitted,


**KRIS MAYES**                              **ROB BONTA**
Attorney General                            Attorney General
State of Arizona                            State of California


*/s/ Laura Dilweg*                          */s/ Megan O'Neill*
Laura Dilweg (AZ No. 036066, CA No. 260663)   Nicklas A. Akers (CA SBN 211222)
Chief Counsel - Consumer Protection and     Senior Assistant Attorney General
Advocacy Section                            Bernard Eskandari (CA SBN 244395)
Reagan Healey (AZ No. 038733), *pro hac vice*   Emily Kalanithi (CA SBN 256972)
Assistant Attorney General                  Supervising Deputy Attorney General
Arizona Attorney General's Office           Megan O'Neill (CA SBN 343535)
2005 North Central Avenue                   Nayha Arora (CA SBN 350467)
Phoenix, AZ 85004                           David Beglin (CA SBN 356401)
Phone: (602) 542-3725                       Joshua Olszewski-Jubelirer
Fax: (602) 542-4377                         (CA SBN 336428)
Laura.Dilweg@azag.gov                       Marissa Roy (CA SBN 318773)
Reagan.Healey@azag.gov                      Brendan Ruddy (CA SBN 297896)
                                            Deputy Attorneys General
*Attorneys for Plaintiff State of Arizona*   California Department of Justice
                                            Office of the Attorney General
                                            455 Golden Gate Ave., Suite 11000
                                            San Francisco, CA 94102-7004
                                            Phone: (415) 510-4400
                                            Fax: (415) 703-5480
                                            megan.oneill@doj.ca.gov

                                            *Attorneys for Plaintiff the People of the State of
                                            California*

**PHILIP J. WEISER**
Attorney General
State of Colorado

 _/s/ Krista Batchelder_____
Krista Batchelder, CO Reg. No. 45066,
*pro hac vice*
Deputy Solicitor General
Shannon Stevenson, CO Reg. No. 35542,
*pro hac vice*
Solicitor General
Elizabeth Orem, CO Reg. No. 58309,
*pro hac vice*
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6651
krista.batchelder@coag.gov
Shannon.stevenson@coag.gov
Elizabeth.orem@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel.*
*Philip J. Weiser, Attorney General*

**KATHLEEN JENNINGS**
Attorney General
State of Delaware

 _/s/ Ryan T. Costa_____
Marion Quirk (DE Bar 4136), *pro hac vice*
Director of Consumer Protection
Ryan T. Costa (DE Bar 5325), *pro hac vice*
Deputy Director of Consumer Protection
Delaware Department of Justice
820 N. French Street, 5th Floor
Wilmington, DE 19801
Phone: (302) 683-8800
Marion.Quirk@delaware.gov
Ryan.Costa@delaware.gov

*Attorneys for Plaintiff State of Delaware**, ex rel.***
***Kathleen Jennings, Attorney General***

218

Amended Complaint for Injunctive and Other Relief

**WILLIAM TONG**
Attorney General
State of Connecticut

 /s/ Tess E. Schneider
Tess E. Schneider
(CT Juris No. 444175), *pro hac vice*
Krislyn M. Launer
(CT Juris No. 440789), *pro hac vice*
Assistant Attorneys General
Matthew Fitzsimmons
(CT Juris No. 426834), *pro hac vice app.
forthcoming*
Chief Counsel
Connecticut Office of the Attorney General
165 Capitol Avenue
Hartford, Connecticut 06106
Phone: 860-808-5306
Fax: 860-808-5593
Tess.Schneider@ct.gov
Krislyn.Launer@ct.gov
Matthew.Fitzsimmons@ct.gov

*Attorneys for Plaintiff State of Connecticut*

**ANNE E. LOPEZ**
Attorney General
State of Hawai'i

By: */s/ Christopher T. Han*
Christopher J.I. Leong (HI JD No. 9662), *pro
hac vice*
Supervising Deputy Attorney General
Kelcie K. Nagata (HI JD No. 10649), *pro hac
vice*
Christopher T. Han (HI JD No. 11311), *pro
hac vice*
Deputy Attorneys General
Department of the Attorney General
Commerce and Economic Development
Division
425 Queen Street
Honolulu, Hawai'i 96813
Phone: (808) 586-1180
Christopher.ji.leong@hawaii.gov
Kelcie.k.nagata@hawaii.gov
Christopher.t.han@hawaii.gov

*Attorneys for Plaintiff State of Hawai'i*

219

**RAÚL R. LABRADOR**
Attorney General
State of Idaho

By: */s/ James Simeri*
James Simeri (ID Bar No. 12332)
Deputy Attorney General
Attorney General's Office
P.O. Box 83720
Boise, ID 83720-0010
(208) 334-4114
james.simeri@ag.idaho.gov

*Attorneys for Plaintiff State of Idaho*

**KWAME RAOUL**
Attorney General
State of Illinois

By: */s/ Mathew Davies*
**Susan Ellis**, Chief, Consumer Protection
Division (IL Bar No. 6256460)
**Greg Grzeskiewicz**, Chief, Consumer Fraud
Bureau (IL Bar No. 6272322)
**Jacob Gilbert**, Deputy Chief, Consumer
Fraud Bureau (IL Bar No. 6306019)
**Matthew Davies**, Supervising Attorney,
Consumer Fraud Bureau (IL Bar No.
6299608), *pro hac vice*
**Kevin Whelan**, Supervising Attorney,
Consumer Fraud Bureau (IL Bar No.
6321715), *pro hac vice*
**Emily María Migliore**, Assistant Attorney
General, Consumer Fraud Bureau (IL Bar
No. 6336392)
**Daniel B. Roth**, Assistant Attorney General,
Consumer Fraud Bureau (IL Bar No.
6290613), *pro hac vice*
**Meera Khan**, Assistant Attorney General,
Consumer Fraud Bureau (IL Bar No.
6345895), *pro hac vice*
**Office of the Illinois Attorney General**
115 S. LaSalle Street
Chicago, Illinois 60603
312-814-2218
Susan.Ellis@ilag.gov
Greg.Grzeskiewicz@ilag.gov
Jacob.Gilbert@ilag.gov
Matthew.Davies@ilag.gov
Kevin.Whelan@ilag.gov
Emily.Migliore@ilag.gov
Daniel.Roth@ilag.gov
Meera.Khan@ilag.gov

*Attorneys for Plaintiff the People of the State
of Illinois*

220

Amended Complaint for Injunctive and Other Relief

**KRIS W. KOBACH**
Attorney General
State of Kansas

*/s/ Sarah Dietz*
Sarah Dietz, Assistant Attorney General
(KS Bar No. 27457), *pro hac vice*
Office of the Kansas Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Telephone: (785) 296-3751
sarah.dietz@ag.ks.gov

*Attorney for Plaintiff State of Kansas*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

*/s/ J. Christian Lewis*
J. Christian Lewis (KY Bar No. 87109),
*Pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*Pro hac vice*
Zachary Richards (KY Bar No. 99209),
*Pro hac vice*
Daniel I. Keiser (KY Bar No. 100264),
*Pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*Pro hac vice*
Gary Thompson (KY Bar No. 93733),
*Pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV
ZACH.RICHARDS@KY.GOV
DANIEL.KEISER@KY.GOV
MATTHEW.COCANOUGHER@KY.GOV
GARY.THOMPSON@KY.GOV
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

221

**LIZ MURRILL**
Attorney General
State of Louisiana

*/s/ Asyl Nachabe*
Asyl Nachabe (LA Bar No. 38846)
Pro hac vice
Assistant Attorney General
Louisiana Department of Justice
Office of the Attorney General
Public Protection Division
Complex Litigation Section
1885 N 3rd Street, 4th Floor
Baton Rouge, LA 70802
Tel: (225) 326-6435
NachabeA@ag.louisiana.gov

*Attorney for State of Louisiana*

**ANTHONY G. BROWN**
Attorney General
State of Maryland

*/s/ Elizabeth J. Stern*
Philip D. Ziperman (Maryland CPF No.
9012190379), *pro hac vice*
Deputy Chief, Consumer Protection Div.
Elizabeth J. Stern (Maryland CPF No.
1112090003), *pro hac vice*
Assistant Attorney General
Office of the Attorney General of Maryland
200 St. Paul Place
Baltimore, MD 21202
Phone: (410) 576-6417 (Mr. Ziperman)
Phone: (410) 576-7226 (Ms. Stern)
Fax: (410) 576-6566
pziperman@oag.state.md.us
estern@oag.state.md.us

*Attorneys for Plaintiff Office of the Attorney General of Maryland*

**AARON M. FREY**
Attorney General
State of Maine

*/s/ Michael Devine*
Michael Devine (Maine Bar No. 5048), *pro hac vice*
Assistant Attorney General
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333-0006
(207) 626-8829
michael.devine@maine.gov
*Attorneys for Plaintiff State of Maine*

**KEITH ELLISON**
Attorney General
State of Minnesota

*/s/ Cailtin Micko*
Caitlin Micko (MN Bar No. 0395388),
*pro hac vice*
Assistant Attorney General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1200
St. Paul, MN 55101-2130
Tel: (651)724-9180
caitlin.micko@ag.state.mn.us

*Attorney for Plaintiff State of Minnesota, by its Attorney General, Keith Ellison*

222

**MICHAEL T. HILGERS**
Attorney General
State of Nebraska

*/s/ Anna M. Anderson*
Anna M. Anderson (NE #28080)
Assistant Attorney General
Consumer Protection Bureau
Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, NE 68509-8920
Phone: (402) 471-2682
Email: anna.anderson@nebraska.gov

*Attorney for Plaintiff State of Nebraska*

**MATTHEW J. PLATKIN**
Attorney General
State of New Jersey

*/s/ Thomas Huynh*
Kashif T. Chand (NJ Bar No. 016752008),
*pro hac vice*
Chief, Deputy Attorney General
Thomas Huynh (NJ Bar No. 200942017),
*Pro hac vice*
Assistant Section Chief, Deputy Attorney
General
Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*Pro hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiffs New Jersey Attorney
General and the New Jersey Division of
Consumer Affairs, Matthew J. Platkin,
Attorney General for the State of New Jersey,
and Elizabeth Harris, Director of the New
Jersey Division of Consumer Affairs*

223

**LETITIA JAMES**
Attorney General State of New York

*/s/ Kevin Wallace*
Kevin C. Wallace, Senior Enforcement Counsel
(NY Bar No. 3988482), *pro hac vice*
kevin.wallace@ag.ny.gov
Alex Finkelstein, Assistant Attorney General
(NY Bar No. 5609623), *pro hac vice*
alex.finkelstein@ag.ny.gov
Nathaniel Kosslyn, Assistant Attorney General
(NY Bar No. 5773676), *pro hac vice*
nathaniel.kosslyn@ag.ny.gov

New York Office of the Attorney General 28 Liberty Street
New York, NY 10005
(212) 416-8000

*Attorneys for Plaintiff the People of the State of New York*

**JEFF JACKSON**
Attorney General
State of North Carolina

*/s/ Charles G. White*
Charles G. White (N.C. State Bar No. 57735), *pro hac vice*
Assistant Attorney General
Kunal Choksi
Senior Deputy Attorney General
Josh Abram
Special Deputy Attorney General
N.C. Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6006
Facsimile: (919) 716-6050
cwhite@ncdoj.gov
*Attorneys for Plaintiff State of North Carolina*

224

**DAVE YOST**
Attorney General
State of Ohio

/s/ Kevin R. Walsh
MELISSA G. WRIGHT (0077843)
Section Chief, Consumer Protection Section
Melissa.Wright@ohioago.gov
MELISSA S. SMITH (0083551)
Asst. Section Chief, Consumer Protection Section
Melissa.S.Smith@ohioago.gov
MICHAEL S. ZIEGLER (0042206)
Principal Assistant Attorney General
Michael.Ziegler@ohioago.gov
KEVIN R. WALSH (0073999)
Kevin.Walsh@ohioago.gov
Senior Assistant Attorney General
30 East Broad Street, 14th Floor
Columbus, Ohio 43215
614-466-1031

*Attorneys for State of Ohio, ex rel. Attorney General Dave Yost,*

**DAN RAYFIELD**
Attorney General
State of Oregon

/s/ John J. Dunbar
John J. Dunbar  (Oregon Bar No. 842100)
Assistant Attorney General
Oregon Department of Justice
Consumer Protection Section
100 SW Market Street
Portland, Oregon 97201
Telephone: (971) 673-1880
Facsimile: (971) 673-1884
E-mail: john.dunbar@doj.oregon.gov

*Attorneys for State of Oregon, ex rel. Dan Rayfield, Attorney General for the State of Oregon*

225

**DAVID W. SUNDAY JR.**
Attorney General
Commonwealth of Pennsylvania

*/s/ Jill T. Ambrose*
Jill T. Ambrose
Assistant Chief Deputy Attorney
General
(PA Bar No. 323549), *pro hac vice*
Jonathan R. Burns
Senior Deputy Attorney General
(PA Bar No. 315206), *pro hac vice*
Pennsylvania Office of the Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Tel: 717.645.7269
Email:jambrose@attorneygeneral.gov
Email:jburns@attorneygeneral.gov

*Attorneys for Plaintiff the Commonwealth of Pennsylvania*

**ALAN WILSON**
Attorney General
State of South Carolina

*/s/ Anna C. Smith*
C. Havird Jones, Jr.
Senior Assistant Deputy Attorney General
Jared Q. Libet (S.C. Bar No. 74975),
*pro hac vice*
Assistant Deputy Attorney General
Anna C. Smith (SC Bar No. 104749),
*pro hac vice*
Assistant Attorney General
Office of the South Carolina Attorney General
Post Office Box 11549
Columbia, South Carolina 29211
jlibet@scag.gov
annasmith@scag.gov
803-734-0057

*Attorneys for Plaintiff the State of South Carolina, ex rel. Alan M. Wilson, in His Official Capacity as Attorney General of the State of South Carolina*

**PETER F. NERONHA**
Attorney General
State of Rhode Island

*/s/ Stephen N. Provazza*
Stephen N. Provazza (R.I. No. 10435), *pro hac vice*
Special Assistant Attorney General
Rhode Island Office of the Attorney General
150 South Main St.
Providence, RI 02903
Phone: 401-274-4400
Email: SProvazza@riag.ri.gov

*Attorneys for Plaintiff State of Rhode Island*

**MARTY J. JACKLEY**
Attorney General
State of South Dakota

*/s/ Amanda Miiller*
Amanda Miiller (Bar # 4271), *pro hac vice*
Bret Leigh Nance (Bar # 5613), *pro hac vice*
Assistant Attorneys General
Attorney General State of South Dakota
1302 East Highway 14, Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215
amanda.miiller@state.sd.us
bretleigh.nance@state.sd.us

*Attorneys for Plaintiff State of South Dakota*

226

**JASON S. MIYARES**
Attorney General
Commonwealth Of Virginia

*/s/ Joelle E. Gotwals*
Joelle E. Gotwals (VSB No. 76779), *pro hac vice*
Assistant Attorney General
Thomas J. Sanford
Deputy Attorney General
Richard S. Schweiker, Jr. (VSB No. 34258),
*pro hac vice*
Senior Assistant Attorney General and Section
Chief
Chandler P. Crenshaw (VSB No. 93452)
*pro hac vice*
Assistant Attorney General and Consumer
Privacy Unit Manager
Office of the Attorney General of Virginia
Consumer Protection Section
202 N. 9th Street
Richmond, Virginia 23219
Telephone: (804) 786-8789
Facsimile: (804) 786-0122
E-mail: jgotwals@oag.state.va.us

*Attorneys for the Plaintiff Commonwealth of Virginia
ex rel. Jason S. Miyares, Attorney General*

**NICHOLAS W. BROWN**
Attorney General
State of Washington

*/s/Alexandra Kory*
ALEXANDRA KORY (WSBA No. 49889)
JOSEPH K. KANADA (WSBA No. 55055)
GARDNER U. REED (WSBA No. 55630)
CLAIRE E. MCNAMARA (WSBA No.
50097)
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 516-2997
alexandra.kory@atg.wa.gov
joe.kanada@atg.wa.gov
gardner.reed@atg.wa.gov
claire.mcnamara@atg.wa.gov

*Attorneys for Plaintiff State of Washington*

**JOHN B. MCCUSKEY**
Attorney General
State of West Virginia

*/s/ Laurel K. Lackey*
Laurel K. Lackey (WVSB No. 10267)
Abby G. Cunningham (WVSB No. 13388)
*Assistant Attorneys General*
Office of the Attorney General
Consumer Protection & Antitrust Division
Eastern Panhandle Office
269 Aikens Center
Martinsburg, West Virginia 25404
(304) 267-0239
laurel.k.lackey@wvago.gov
abby.g.cunningham@wvago.gov

*Attorneys for Plaintiff State of West Virginia, ex rel.*
*John B. McCuskey, Attorney General*

*In compliance with Civil Local Rule 5-1(i)(3), the filer of this document attests under penalty of perjury that all signatories have concurred in the filing of this document.*

228