# Exhibit K

[*Submitting Counsel on Signature Page*]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

THIS DOCUMENT RELATES TO:

IN RE: SOCIAL MEDIA ADOLESCENT
ADDICTION/PERSONAL INJURY PRODUCTS
LIABILITY LITIGATION

------------------------------------------------------------

*People of the State of California, et al. v. Meta
Platforms, Inc., et al.*

MDL No. 3047

Case Nos. 4:22-md-03047-YGR-PHK

4:23-cv-05448-YGR

**LETTER BRIEF BY THE STATE
ATTORNEYS GENERAL REGARDING
TRIAL STRATEGY**

Judge: Hon. Yvonne Gonzalez Rogers

Magistrate Judge: Hon. Peter H. Kang

1

**INTRODUCTION**

The 29 State AGs present a unified case: one single presentation of evidence that Meta engaged in nationwide misconduct to design its social media platforms in a manner that harmed the mental and physical health of children across the country, to illegally ensnare under-13 users onto its platforms, and to deceive the public of the true safety risks. Neither Meta's misconduct nor the widespread harm that resulted was affected by state borders. While different State AGs bring different state-law claims to hold Meta accountable, there is no material variation in the presentation of evidence necessary to establish that liability. This is a civil law-enforcement action seeking penalties, injunctive relief, and disgorgement of Meta's profits. Damages are not sought on behalf of any state, state agency, or individual. Therefore, a single joint trial, with a single presentation of evidence proving Meta's nationwide misconduct, is far and away the most efficient path forward.

From the outset, the State AGs have coordinated to investigate and litigate a single case. Over the course of a two-year investigation, the State AGs jointly examined Meta's conduct as a technology company that operates nationally—offering the same addictive, harmful social-media services and features to children, and lying in the same manner about those services and features—regardless of geography. The State AGs filed this enforcement action as a single complaint; have coordinated all aspects of litigation; briefed all substantive motions as a single unit; and planned for a single trial with a single set of common evidence and witnesses. To prove their case, the State AGs expect to offer several lay and expert witnesses, none of which is specific to any particular state.[1] This approach has already maximized efficiencies and conserved resources for the Court and all parties—including Meta, which has taken full advantage of the State AGs' pre-trial coordination. Now, Meta seeks to inject delay, uncertainty, and massive inefficiency, arguing for multiple trials to span years, involving copycat re-presentations of the exact same evidence and witnesses of Meta's nationwide misconduct, over and over again.

To be sure, this will be a complex trial. But multi-sovereign consumer-protection enforcement actions in federal court are not uncommon, even if most typically settle prior to trial. Since the November

---

[1] The State AGs will file a witness list with the Court in advance of the January case management conference to provide more insight into the presentation and scope of evidence.

LETTER BRIEF BY THE STATE ATTORNEYS GENERAL REGARDING TRIAL STRATEGY
4:22-md-03047-YGR-PHK; 4:23-CV-05448-YGR

meaningful value to be gained from staging a selection of the State AGs' claims as "bellwethers." Meta is already facing separate state-court actions, two of which—New Mexico and Tennessee—are scheduled to proceed to trial ahead of this Court's timeline. Judgments for the State AG case in this MDL—composed of the largest law enforcement Plaintiff group and reflecting the greatest impacted population total out of any related case in the country—would meaningfully advance resolution of all disputes against Meta for its nationwide conduct. Ultimately, Meta's effort to fragment the trial process reflects neither the realities of this case nor the scope of its nationwide conduct but is rather a transparent attempt to delay resolution through manufactured complexity.

## I.    A SINGLE JOINT TRIAL WITH A SINGLE PRESENTATION OF EVIDENCE IS MOST EFFICIENT

The State AGs propose a single joint trial, with the AGs' presentation of evidence (including cross-examination of Meta's witnesses) lasting approximately four weeks. This would involve the joint presentation of evidence proving all 37 counts in the State AGs' complaint, including the COPPA claims of all 29 State AGs and the 36 state-law consumer-protection counts alleged by 18 State AGs. A 37-count trial is manageable, particularly where, as discussed below, the consumer-protection counts all arise from a common nucleus of facts about Meta's misconduct and closely track one another in terms of the elements to be proven, with minor variations between state laws. *See, e.g.*, *Howard v. United States*, 372 F.2d 294, 301 (9th Cir. 1967) (rejecting defendant's argument that "sheer number of counts alone created an unfavorable impression on the jury" because "the use of multicount indictments charging offenses of similar character is a sanctioned practice").

To promote clarity in the jury's deliberations and resulting verdicts, the jury instructions will begin with the standard Ninth Circuit Manual of Model Jury Instructions (Chapters 1 and 3), appropriately edited for delivery after the close of evidence. In accordance with this Court's standing order on Pretrial Instructions in Civil Cases (as updated March 17, 2025), the transition instruction will be tailored to introduce the jury to the structure of the remaining instructions. This includes a brief explanation of how the elements of each claim and relevant legal definitions will be presented. This format ensures that the jury can consider each state's claims independently and accurately, reducing the risk of conflating legal standards and safeguarding Meta's due process rights. The parties will use opening statements and closing arguments to further assist the jury in understanding the similarities and differences among the applicable

state laws. Although the states' respective legal standards are substantively aligned such that any potential prejudice is minimal, the process outlined above, including individual jury instruction packets, ensures that any conceivable prejudice or juror confusion is eliminated.

### A.     The Same Evidence Will Prove Meta's Misconduct in Every State

All categories of evidence are relevant as to all consumer protection states. As alleged—and as the State AGs will prove—Meta has engaged in massive, pervasive nationwide misconduct. In an effort to stay relevant and maintain growth of its platforms, Facebook and Instagram, Meta's business model depends on obtaining, retaining, and engaging teens to spend time on those platforms. As part of this strategy, Meta's platforms provide its young users with capabilities and features designed to promote this growth and encourage increased use of its platforms, all while Meta knows of serious, documented harms relating to using its platform and these features. Sixteen State AGs have remaining claims asserting that this conduct amounts to unfair business acts or practices with respect to four of Meta's platforms' features: appearance-altering filters, time restriction tools, the multiple accounts function, and ineffective age verification tools. Aware of the potential negative brand impacts from the perception that its platforms were addictive or unsafe, Meta engaged in a concerted campaign to downplay the risks of its platforms, which 18 State AGs allege constitute deceptive business acts or practices. There is no evidence that Meta's unfair conduct varies meaningfully from state to state, and the same deceptive statements and omissions apply to all states' claims. Accordingly, a single trial will be sufficient to prove all state consumer protection claims.

### 1.     Evidence Supporting the State AGs' Unfairness Claims

The State AGs' unfairness claims will rely upon a universal body of evidence across the sixteen states' claims premised on unfair business acts or practices. These claims concern four discrete features: appearance-altering filters, time restriction tools, the multiple accounts function, and Meta's age verification tools.

First, regarding appearance-altering filters, the State AGs have robust evidence of deliberate actions taken at the very top of Meta where executives, specifically Mark Zuckerberg himself, chose to disregard company-solicited expert research and feedback regarding the negative effects of appearance-altering filters, especially on teenage girls. Instead, Mr. Zuckerberg directed that a temporary ban on

5

cosmetic surgery filters be rescinded and that users of all ages be permitted to use even filters depicting "nip and tuck" plastic surgery effects. Why? He thought the ban was paternalistic and that removing it would be in the interests of platform growth, and purportedly, innovation and expression. But other executives at Meta—notably, those with teenage daughters themselves—opposed lifting that ban, or at least, preferred less dramatic alternatives where such filters might not have been available to users under certain ages. The harms ascribed to these filters include body dysmorphia, eating disorders, anxiety and depression—the last two of which are known preconditions for suicidality. These harms are described by experts retained by Meta internally prior to litigation, internal company research conducted by Meta, witness testimony, and the State AGs' experts in this case.

Second, regarding Meta's time restriction tools, the State AGs plan to submit evidence that these tools are insufficient to mitigate the excessive and unhealthy usage of Meta's platforms. Meta's tools like Sleep Mode, Quiet Mode, Take a Break, Daily Limit, and Teen Accounts rely on teens exercising self-regulation, which Meta knows is a vulnerability of its teen users and their underdeveloped prefrontal cortex, or alternately, it requires teens to voluntarily cooperate with their parents. Even with that cooperation, other features of Meta's platforms like the multiple accounts feature permit users to avoid parental detection and circumvent time restriction tools. Meta's time restriction tools typically either send users a notification regarding their time spent on the platform at certain intervals or do not send notifications during certain hours. But those tools do not effectively restrict time spent on the platform because at no point does Meta actually restrict use of its platforms. These tools are dismissible and do not constitute a meaningful amount of friction designed to reduce platform usage in light of other features on the platform encouraging use. This is particularly problematic given internal communications, research, and testimony discussing paltry adoption rates for these tools, teens' lack of self-control, teens having an addict's narrative about their social media use, and feedback from young users and high time-spent users that they desired effective time restriction tools at higher rates than older users and users with lower time spent.

Third, regarding Meta's multiple accounts function, Meta estimated at one time that its teen users had secondary, "Finsta," or "Spam" accounts on its platforms at over double the rate as did adults. The State AGs will rely on internal research, communications, and witness and expert testimony to show how

LETTER BRIEF BY THE STATE ATTORNEYS GENERAL REGARDING TRIAL STRATEGY
4:22-md-03047-YGR-PHK; 4:23-CV-05448-YGR

Meta thought secondary accounts drove increased usage; how Meta knew that teens used this feature to avoid parental supervision; how multiple, unconnected accounts could limit the efficacy of its time restriction tools; how multiple accounts might encourage risky behavior or facilitate inappropriate contacts; and how multiple accounts can exacerbate mental health harms and stimy development when used in conjunction with curated, public-facing "main" accounts on Meta's platforms.

Fourth, regarding Meta's age verification tools, Meta fails to employ processes which either effectively prevent children under age 13 from joining or using Instagram and Facebook or effectively detect and remove those children and their data after they joined. For example, Meta has failed and continues to fail to remove multiple accounts belonging to child users it has identified, including failing to remove accounts hard-linked to child user accounts prior to at least December 2021, and continuing to fail to remove accounts soft-matched to child users' accounts. Meta further fails to take measures to prevent child users whose accounts it detects and disables from creating new accounts on Facebook and Instagram, and Meta employs deficient processes for reviewing reports of children under 13 on its platforms, including because the review process ignores evidence of children admitting that they are underage. These deficient age verification tools exist in the face of research showing a myriad of negative mental health outcomes from using Meta's platforms, like anxiety, depression, insomnia, impaired sleep, eating disorders, suicide, and a host of other negative outcomes—all of which are particularly acute for kids under age 13. Internal communications, company research, and employee and expert testimony will prove these violations.

## 2.    Evidence Supporting the States' Deception Claims

Meta's deceptive practices were similarly universal. Aware that public concern over its platform's health and safety risks threatened its brand, Meta engaged in a nationwide messaging campaign to downplay these risks, which the State AGs will show misled reasonable consumers. The State AGs will enter into evidence Meta's "internal narrative audit" and messaging tests, where the company sought to craft the optimal messaging to quiet widespread consumer concern about its platforms' addictiveness and safety impacts for teens. The State AGs will also provide dozens of examples of statements by high-level Meta executives mirroring these internal messaging guidelines, which all worked together to create misleading impressions along four overarching themes.

Meta thought secondary accounts drove increased usage; how Meta knew that teens used this feature to avoid parental supervision; how multiple, unconnected accounts could limit the efficacy of its time restriction tools; how multiple accounts might encourage risky behavior or facilitate inappropriate contacts; and how multiple accounts can exacerbate mental health harms and stimy development when used in conjunction with curated, public-facing "main" accounts on Meta's platforms.

Fourth, regarding Meta's age verification tools, Meta fails to employ processes which either effectively prevent children under age 13 from joining or using Instagram and Facebook or effectively detect and remove those children and their data after they joined. For example, Meta has failed and continues to fail to remove multiple accounts belonging to child users it has identified, including failing to remove accounts hard-linked to child user accounts prior to at least December 2021, and continuing to fail to remove accounts soft-matched to child users' accounts. Meta further fails to take measures to prevent child users whose accounts it detects and disables from creating new accounts on Facebook and Instagram, and Meta employs deficient processes for reviewing reports of children under 13 on its platforms, including because the review process ignores evidence of children admitting that they are underage. These deficient age verification tools exist in the face of research showing a myriad of negative mental health outcomes from using Meta's platforms, like anxiety, depression, insomnia, impaired sleep, eating disorders, suicide, and a host of other negative outcomes—all of which are particularly acute for kids under age 13. Internal communications, company research, and employee and expert testimony will prove these violations.

### 2. Evidence Supporting the States' Deception Claims

Meta's deceptive practices were similarly universal. Aware that public concern over its platform's health and safety risks threatened its brand, Meta engaged in a nationwide messaging campaign to downplay these risks, which the State AGs will show misled reasonable consumers. The State AGs will enter into evidence Meta's "internal narrative audit" and messaging tests, where the company sought to craft the optimal messaging to quiet widespread consumer concern about its platforms' addictiveness and safety impacts for teens. The State AGs will also provide dozens of examples of statements by high-level Meta executives mirroring these internal messaging guidelines, which all worked together to create misleading impressions along four overarching themes.

First, the State AGs will show that Meta's statements deceptively sought to reassure consumers that it prioritizes health and safety over its own business interests. The State AGs will contrast statements like CEO Mark Zuckerberg posting on his own page that "these accusations . . . that we prioritize profit over safety and well-being . . . . [are] just not true," with evidence that Meta weakened, delayed or altogether shelved changes that their own researchers believed could improve well-being at the expense of engagement, and underfunded or disbanded teams dedicated to user well-being.

Second, the State AGs will prove that Meta downplayed the addictiveness of its platforms. The State AGs will contrast statements such as a Medium article by a top Meta executive stating that the goal of platform features is "to make sure you see what you find most meaningful[,] not to keep you glued to your smartphone for hours on end," with internal research showing how Meta was well-aware of the addictiveness of its platforms and designed and implemented several novel features intended to induce more compulsive use, all based on extensive internal research into the unique vulnerabilities of the teenage brain.

Third, the State AGs will show that Meta downplayed the safety risks of its platforms. The State AGs will introduce into evidence Meta's statements that its Community Standards Enforcement Reporting was the "most significant" metric for measuring well-being on its platforms even as the company suppressed less favorable research showing higher numbers of negative user experiences on the platforms. Fourth, the State AGs will show that Meta misled the public that it was keeping under-13 users off its platforms. The State AGs will contrast several executive statements reassuring the public that under-13-year-olds are "not allowed" on Instagram with documented evidence of Meta failing to enforce its age policies and internal knowledge that its age-gates were insufficient to keep these users off the platform.

The State AGs' expert Adam Alter will explain how a reasonable consumer would understand these statements and why consumers would be misled into thinking that the platforms were more secure and less harmful than they actually are. Alter explains that unlike many tangible consumer products whose nature allows for independent evaluation of company claims, social media platforms are "credence goods" whose nature consumers do not fully understand, thus requiring consumers to rely more on companies' official statements about product safety. Meta's scheme of deceptive reassurance relied on several brand management tactics, such as drumbeat messaging—where consumers are continuously and repeatedly

exposed to key messages about safety, and which has been effective in public health campaigns—and the use of "proof points" and favorable research to lend credibility. These tactics play on a reasonable consumer's lack of ability to evaluate the true health and safety risks of social media, and resulting reliance on the company to provide this material information, in order to instill a misleading impression that the platforms are safer and less addictive and harmful than they actually are.

## B.  The States' Consumer Protection Claims are Substantially Similar

Sixteen State AGs assert claims under their respective unfairness statutes and eighteen assert claims under their respective deception statutes. While the precise language may vary across these laws, at their base, these statutes prohibit Meta from engaging in unfair or deceptive business practices in the interests of growth and engagement at the expense and detriment of its vulnerable, minor users. As most of the statutes have been interpreted, states' consumer protection laws are afforded broad and flexible interpretation in order to provide consumers with remedial protection from harmful business practices.[3]

---

[3] *See*, *e.g.*, **California:** *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 540 (Cal. 1999) (California's Unfair Competition Law "was intentionally framed in its broad, sweeping language, precisely to enable judicial tribunals to deal with the innumerable new schemes which the fertility of man's invention would contrive." (cleaned up)); Cal. Bus. & Prof. Code § 17002 ("This chapter shall be liberally construed[.]"); **Colorado:** *Showpiece Homes Corp. v. Assurance Co. of Am.*, 38 P.3d 47, 54 (Colo. 2001) (the legislature "could not have possibly enumerated all, or even most, of the practices that the CCPA was intended to cover."); **Connecticut:** Conn. Gen. Stat. § 42-110b(d) ("It is the intention of the legislature that this chapter be remedial and be so construed."); **Delaware:** *Young v. Joyce*, 351 A.2d 857, 859 (Del. 1975) (The DCFA's "primary purpose is to protect the consumer and accordingly is to be liberally construed."); **Illinois:** *Scott v. Ass'n for Childbirth at Home, Int'l*, 430 N.E. 2d 1012, 1018 (Ill. 1981) ("'[U]nfair practice[s]' . . . are inherently insusceptible of precise definition . . . the concept [is] flexible, [and] defined on a case-by-case basis, 'in view of the futility of attempting to anticipate and enumerate all of the (unfair) methods' and practices that fertile minds might devise.") (citation omitted); **Indiana:** *Gasbi, LLC v. Sanders*, 120 N.E.3d 614, 618 (Ind. Ct. App.), *transfer granted, opinion vacated,* 130 N.E.3d 1137 (Ind. 2019), *vacated*, 130 N.E.3d 94 (Ind. 2019) ("The [DCSA] "is a "remedial statute."' It "shall be liberally construed and applied to promote its purposes and policies.") (quoting *Kesling v. Hubler Nissan, Inc.*, 997 N.E. 2d 327, 332 (Ind. 2013); Ind. Code § 24-5-0.5-1)).; **Kansas:** *Via Christi Reg'l Med. Ctr., Inc. v. Reed*, 314 P.3d 852, 863–64 (Kan. 2013) ("The KCPA expressly provides that it is to be construed liberally in order to protect consumers[.]"); **Kentucky:** *Stevens v. Motorists Mut. Ins. Co.*, 759 S.W.2d 819, 821 (Ky. 1988) ("The Kentucky legislature created a statute which has the broadest application in order to give Kentucky consumers the broadest possible protection for allegedly illegal acts."); **Louisiana:** *Monroe Medical Clinic, Inc. v. Hospital Corp. of America*, 522 So.2d 1362, 1365 (La. App. 2d Cir. 1988) ("It has been established that this legislation is broad and does not specify particular violations[;] [t]hus what constitutes an unfair trade practice is to be determined on a case-by-case basis.")

(continued…)

9

DATED: 12/12/2025

Respectfully submitted,

**PHILIP J. WEISER**
Attorney General
State of Colorado

/s/ *Krista Batchelder*
Krista Batchelder, CO Reg. No. 45066, *pro hac vice*
Deputy Solicitor General
Jason Slothouber, CO Reg. No. 43496, *pro hac vice*
Chief Trial Counsel, Consumer Protection
Lauren M. Dickey, CO Reg. No. 45773, *pro hac vice*
First Assistant Attorney General
Elizabeth Orem, CO Reg. No. 58309
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6000
Krista.Batchelder@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel. Philip J. Weiser, Attorney General*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

/s/ *J. Christian Lewis*
J. Christian Lewis (KY Bar No. 87109), *pro hac vice*
Philip Heleringer (KY Bar No. 96748), *pro hac vice*
Zachary Richards (KY Bar No. 99209), *pro hac vice*
Daniel I. Keiser (KY Bar No. 100264), *pro hac vice*
Matthew Cocanougher (KY Bar No. 94292), *pro hac vice*

**ROB BONTA**
Attorney General
State of California

/s/ *Megan O'Neill*
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Emily Kalanithi (SBN 256972)
Supervising Deputy Attorneys General
Nayha Arora (CA SBN 350467)
David Beglin (CA SBN 356401)
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer (CA SBN 336428)
Marissa Roy (CA SBN 318773)
Brendan Ruddy (CA SBN 297896)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Megan.ONeill@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*

**MATTHEW J. PLATKIN**
Attorney General
State of New Jersey

By: /s/ *Kashif T. Chand*
Kashif T. Chand (NJ Bar No. 016752008), *Pro hac vice*
Assistant Attorney General
Thomas Huynh (NJ Bar No. 200942017), *Pro hac vice*
Assistant Section Chief, Deputy Attorney General
Verna J. Pradaxay (NJ Bar No. 335822021), *Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),

22

Assistant Attorneys General
1024 Capital Center Drive, Ste. 200
Frankfort, KY 40601
Christian.Lewis@ky.gov
Philip.Heleringer@ky.gov
Zach.Richards@ky.gov
Daniel.Keiser@ky.gov
Matthew.Cocanougher@ky.gov
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

*Pro hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiffs Matthew J. Platkin, Attorney General for the State of New Jersey, and Elizabeth Harris, Acting Director of the New Jersey Division of Consumer Affairs*

**KRIS MAYES**
Attorney General
State of Arizona

*/s/ Laura Dilweg*
Laura Dilweg (AZ No. 036066, CA No. 260663)
Chief Counsel - Consumer Protection and Advocacy Section
Assistant Attorney General
Arizona Attorney General's Office
2005 North Central Avenue
Phoenix, AZ 85004
Phone: (602) 542-3725
Fax: (602) 542-4377
Laura.Dilweg@azag.gov

*Attorneys for Plaintiff State of Arizona*

**WILLIAM TONG**
Attorney General
State of Connecticut

*/s/ Rebecca Borné*
Rebecca Borné
(CT Juris No. 446982), pro hac vice
Tess E. Schneider
(CT Juris No. 444175), *pro hac vice*
Krislyn M. Launer
(CT Juris No. 440789), *pro hac vice*
Assistant Attorneys General
Connecticut Office of the Attorney General
165 Capitol Avenue
Hartford, Connecticut 06106
Phone: 860-808-5306
Fax: 860-808-5593
Rebecca.Borne@ct.gov
Tess.Schneider@ct.gov
Krislyn.Launer@ct.gov

*Attorneys for Plaintiff State of Connecticut*

**KATHLEEN JENNINGS**
Attorney General
State of Delaware

*/s/ Ryan Costa*
Marion Quirk (DE Bar 4136), *pro hac vice*
Director of Consumer Protection
Ryan Costa (DE Bar 5325), *pro hac vice*

**ANNE E. LOPEZ**
Attorney General
State of Hawai'i

*/s/ Douglas S. Chin*
Christopher J.I. Leong (HI JD No. 9662), *pro hac vice*
Supervising Deputy Attorney General

23

Deputy Director of Consumer Protection
Delaware Department of Justice
820 N. French Street, 5th Floor
Wilmington, DE 19801
Phone: (302) 683-8811
Marion.Quirk@delaware.gov
Ryan.Costa@delaware.gov

*Attorneys for Plaintiff State of Delaware*

Kelcie K. Nagata (HI JD No. 10649), *pro hac vice*
Deputy Attorney General
Department of the Attorney General
Commerce and Economic Development Division
425 Queen Street
Honolulu, Hawaiʻi 96813
Phone: (808) 586-1180
Christopher.ji.leong@hawaii.gov
Kelcie.k.nagata@hawaii.gov
Douglas S. Chin (HI JD No. 6465), *pro hac vice*
John W. Kelly (HI JD No. 9907), *pro hac vice*
Special Deputy Attorney General
Starn O'Toole Marcus & Fisher
733 Bishop Street, Suite 1900
Honolulu, Hawaiʻi 96813
Phone: (808) 537-6100
dchin@starnlaw.com
jkelly@starnlaw.com

*Attorneys for Plaintiff State of Hawaiʻi*

**RAÚL R. LABRADOR**
Attorney General
State of Idaho

By: /s/ *James Simeri*
James Simeri (ID Bar No. 12332)
Deputy Attorney General
Attorney General's Office
P.O. Box 83720
Boise, ID 83720-0010
(208) 334-4114
james.simeri@ag.idaho.gov

*Attorneys for Plaintiff State of Idaho*

**KWAME RAOUL**
Attorney General
State of Illinois

/s/ *Matthew Davies*
Susan Ellis, Chief, Consumer Protection Division (IL Bar No. 6256460)
Greg Grzeskiewicz, Chief, Consumer Fraud Bureau (IL Bar No. 6272322)
Jacob Gilbert, Deputy Chief, Consumer Fraud Bureau (IL Bar No. 6306019)
Matthew Davies, Assistant Attorney General, Consumer Fraud Bureau (IL Bar No. 6299608), *pro hac vice*
Daniel B. Roth, Assistant Attorney General, Consumer Fraud Bureau (IL Bar No. 6290613)
Meera Khan, Assistant Attorney General, Consumer Fraud Bureau (IL Bar No. 6345895)
Office of the Illinois Attorney General
115 S. LaSalle Street
Chicago, Illinois 60603
312-814-2218
Susan.Ellis@ilag.gov
Greg.Grzeskiewicz@ilag.gov

24

Jacob.Gilbert@ilag.gov
Matthew.Davies@ilag.gov
Daniel.Roth@ilag.gov
Meera.Khan@ilag.gov

*Attorneys for Plaintiff the People of the State of Illinois*

**THEODORE E. ROKITA**
Attorney General
State of Indiana

*/s/ Scott L. Barnhart*
Scott L. Barnhart (IN Atty No. 25474-82)
*pro hac vice*
Chief Counsel and Director of Consumer
Protection Corinne Gilchrist (IN Atty No.
27115-53)
*pro hac vice*
Section Chief, Consumer Litigation
Mark M. Snodgrass (IN Atty No. 29495-49)
*pro hac vice*
Deputy Attorney General
Office of the Indiana Attorney General
Indiana Government Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46203
Telephone: (317) 232-6309
Scott.Barnhart@atg.in.gov
Corinne.Gilchrist@atg.in.gov
Mark.Snodgrass@atg.in.gov

*Attorneys for Plaintiff State of Indiana*

**LIZ MURRILL**
Attorney General
State of Louisiana

*/s/ Asyl Nachabe*
Asyl Nachabe (LA Bar No. 38846)
*pro hac vice*
Assistant Attorney General
Louisiana Department of Justice
Office of the Attorney General
Public Protection Division
Complex Litigation Section
1885 N 3rd Street, 4th Floor
Baton Rouge, LA 70802

**KRIS W. KOBACH**
Attorney General
State of Kansas
*/s/ Sarah Dietz*
Sarah Dietz, Assistant Attorney General
(KS Bar No. 27457), *pro hac vice*
Office of the Kansas Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Telephone: (785) 296-3751
sarah.dietz@ag.ks.gov

*Attorney for Plaintiff State of Kansas*

**AARON M. FREY**
Attorney General
State of Maine

*/s/ Michael Devine*
Michael Devine (Maine Bar No. 5048),
*pro hac vice*
Assistant Attorney General
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333-0006
(207) 626-8829
michael.devine@maine.gov
*Attorney for Plaintiff State of Maine*

25

Tel: (225) 326-6435
NachabeA@ag.louisiana.gov
*Attorney for State of Louisiana*

**ANTHONY G. BROWN**
Attorney General
State of Maryland

/s/ *Elizabeth J. Stern*
Philip D. Ziperman (Maryland CPF No.
9012190379), *pro hac vice*
Deputy Chief, Consumer Protection Division
Elizabeth J. Stern (Maryland CPF No.
1112090003), *pro hac vice*
Assistant Attorney General
Office of the Attorney General of Maryland
200 St. Paul Place
Baltimore, MD 21202
Phone: (410) 576-6417 (Mr. Ziperman)
Phone: (410) 576-7226 (Ms. Stern)
Fax: (410) 576-6566
pziperman@oag.state.md.us
estern@oag.state.md.us

*Attorneys for Plaintiff Office of the Attorney
General of Maryland*

**MICHAEL T. HILGERS**
Attorney General
State of Nebraska

/s/ Anna M. Anderson
Anna M. Anderson (NE #28080)
Assistant Attorney General
*pro hac vice*
Benjamin J. Swanson (NE #27675)
Assistant Attorney General
Nebraska Attorney General's Office
1445 K Street, Room 2115
Lincoln, NE 68509
(402) 471-6034
anna.anderson@nebraska.gov
benjamin.swanson@nebraska.gov

*Attorneys for Plaintiff State of Nebraska*

**KEITH ELLISON**
Attorney General
State of Minnesota

/s/ Caitlin Micko
Caitlin Micko (MN Bar No. 0395388)
Assistant Attorney General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
St. Paul, MN 55101
Tel: (651) 724-9180
Caitlin.micko@ag.state.mn.us

*Attorney for State of Minnesota, by its
Attorney General, Keith Ellison*

**LETITIA JAMES**
Attorney General
State of New York

/s/ Nathaniel Kosslyn
Nathaniel Kosslyn, Assistant Attorney General
(NY Bar No. 5773676), *pro hac vice*
nathaniel.kosslyn@ag.ny.gov
Alex Finkelstein, Assistant Attorney General
(NY Bar No. 5609623), *pro hac vice*
alex.finkelstein@ag.ny.gov
New York Office of the Attorney General
28 Liberty Street
New York, NY 10005
(212) 416-8000

LETTER BRIEF BY THE STATE ATTORNEYS GENERAL REGARDING TRIAL STRATEGY
4:22-md-03047-YGR-PHK; 4:23-CV-05448-YGR

**JEFF JACKSON**
Attorney General
State of North Carolina

/s/ Charles White
Charles G. White (N.C. State Bar No. 57735),
*pro hac vice*
Assistant Attorney General
Kunal Choksi
Senior Deputy Attorney General
Josh Abram
Special Deputy Attorney General
N.C. Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6006
Facsimile: (919) 716-6050
E-mail: cwhite@ncdoj.gov
*Attorneys for Plaintiff State of North Carolina*

**DAN RAYFIELD**
Attorney General
State of Oregon

/s/ John Dunbar
John J. Dunbar (Oregon Bar No. 842100)
Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, Oregon 97201
Telephone: (971) 673-1880
Facsimile: (971) 673-1884
E-mail: john.dunbar@doj.oregon.gov

*Attorneys for State of Oregon ex rel.*
*Dan Rayfield, Attorney General*

**PETER F. NERONHA**
Attorney General
State of Rhode Island

/s/ Stephen N. Provazza
Stephen N. Provazza (R.I. Bar No. 10435),
*pro hac vice*
Assistant Attorney General
Rhode Island Office of the Attorney General
150 South Main St.

**DAVE YOST**
OHIO ATTORNEY GENERAL

/s/ Kevin R. Walsh
Melissa G. Wright (0077843)
Section Chief, Consumer Protection Section
Melissa.Wright@ohioago.gov
Melissa S. Smith (0083551)
Asst. Section Chief, Consumer Protection Section
Melissa.S.Smith@ohioago.gov
Michael S. Ziegler (0042206)
Principal Assistant Attorney General
Michael.Ziegler@ohioago.gov
Kevin R. Walsh (0073999)
Senior Assistant Attorney General
Kevin.Walsh@ohioago.gov
30 East Broad Street, 14th Floor
Columbus, Ohio 43215
614-466-1031

**DAVID W. SUNDAY, JR.**
Attorney General
Commonwealth of Pennsylvania

/s/ Jonathan R. Burns
Jonathan R. Burns
Senior Deputy Attorney General
(PA Bar No. 315206), *pro hac vice*
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
717.787.3391
jburns@attorneygeneral.gov

*Attorneys for Plaintiff the Commonwealth of Pennsylvania*

**ALAN WILSON**
Attorney General
State of South Carolina

/s/ Anna C. Smith
C. Havird Jones, Jr.
Senior Assistant Deputy Attorney General
Jared Q. Libet (S.C. Bar No. 74975),
*pro hac vice*
Assistant Deputy Attorney General

27

Providence, RI 02903
Phone: 401-274-4400
Email: SProvazza@riag.ri.gov

*Attorneys for Plaintiff State of Rhode Island*

Anna C. Smith (SC Bar No. 104749),
*pro hac vice*
Assistant Attorney General
Office of the South Carolina Attorney General
Post Office Box 11549
Columbia, South Carolina 29211
jlibet@scag.gov
annasmith@scag.gov
803-734-0536

*Attorneys for Plaintiff the State of South Carolina,*
*ex rel. Alan M. Wilson, in His Official Capacity as*
*Attorney General of the State of South Carolina*

**MARTY J. JACKLEY**
Attorney General
State of South Dakota
  /s/  *Amanda Miiller*
By: Amanda Miiller (SD Bar No. 4271)
Deputy Attorney General
1302 East SD Hwy 1889, Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215
Amanda.Miiller@state.sd.us

*Attorneys for Plaintiff State of South Dakota*

**JASON S. MIYARES**
Attorney General
Commonwealth Of Virginia

*/s/ Joelle E. Gotwals*
Steven G. Popps
Chief Deputy Attorney General
Thomas J. Sanford
Deputy Attorney General
Richard S. Schweiker, Jr.
Senior Assistant Attorney General and Section Chief
Joelle E. Gotwals (VSB No. 76779),
Senior Assistant Attorney General
*pro hac vice*
Chandler P. Crenshaw (VSB No. 93452)
Assistant Attorney General
*pro hac vice*
Office of the Attorney General of Virginia
Consumer Protection Section
202 N. 9th Street
Richmond, Virginia 23219
Telephone:    (804) 786-8789
Facsimile:    (804) 786-0122
E-mail: jgotwals@oag.state.va.us

*Attorneys for the Plaintiff Commonwealth of Virginia*
*ex rel. Jason S. Miyares, Attorney General*

**NICHOLAS W. BROWN**
Attorney General State of Washington

*/s/ Claire McNamara*
Claire McNamara (WA Bar No. 50097)
Gardner Reed (WA Bar No. 55630)
Assistant Attorneys General
Washington State Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 340-6783
claire.mcnamara@atg.wa.gov
gardner.reed@atg.wa.gov

*Attorneys for Plaintiff State of Washington*


**JOSHUA L. KAUL**
Attorney General
State of Wisconsin

*/s/ Brittany Copper*
Brittany A. Copper
Assistant Attorney General
WI State Bar # 1142446
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-1795
Brittany.copper@wisdoj.gov

*Attorneys for Plaintiff State of Wisconsin*


**JOHN B. MCCUSKEY**
Attorney General
State of West Virginia

*/s/ Laurel K. Lackey*

Laurel K. Lackey (WVSB No. 10267)
Abby G. Cunningham (WVSB No. 13388)
Assistant Attorneys General
Office of the Attorney General
Consumer Protection & Antitrust Division
Eastern Panhandle Office
269 Aikens Center
Martinsburg, West Virginia 25404
Telephone: (304) 267-0239
Email: laurel.k.lackey@wvago.gov
abby.g.cunningham@wvago.gov

*Attorneys for Plaintiff State of West Virginia,
ex rel. John B. McCuskey, Attorney General*

LETTER BRIEF BY THE STATE ATTORNEYS GENERAL REGARDING TRIAL STRATEGY
4:22-md-03047-YGR-PHK; 4:23-CV-05448-YGR

## <u>SIGNATURE CERTIFICATION</u>

Under Civ. L.R. 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in this filing's content and have authorized this filing.

DATED: 12/12/2025

*/s/ Krista Batchelder*
Krista Batchelder

*Attorney for Plaintiff State of Colorado, ex rel. Philip J. Weiser, Attorney General*

LETTER BRIEF BY THE STATE ATTORNEYS GENERAL REGARDING TRIAL STRATEGY
4:22-md-03047-YGR-PHK; 4:23-CV-05448-YGR