# Exhibit F

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| *PEOPLE OF THE STATE OF CALIFORNIA, et al.,*<br>Plaintiffs,<br><br>v.<br><br>*META PLATFORMS, INC, Instagram, LLC, Meta Payments, Inc., Meta Platforms Technologies, LLC., et al.,*<br>Defendants<br><br><br>IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>4:23-cv-05448 | MDL No. 3047<br><br>Case No. 4:23-cv-05448-YGR<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br><br>Magistrate Judge: Hon. Peter H. Kang |

**Disclosure for Unretained Experts**

**Federal Rule of Civil Procedure 26(a)(2)(C)**

**May 16, 2025**

## Plaintiffs' Disclosure for Unretained Experts

Pursuant to this Court's Standing Order in Civil Cases dated March 17, 2025, and Federal Rule of Civil Procedure 26(a)(2)(C), Plaintiffs make this submission providing disclosure and information on its non-retained experts.

Plaintiffs may call one or more witnesses at trial who are not retained experts and are not required to provide written reports but whose testimony may include information that could be considered expert testimony under Rules 702, 703 and/or 705 of the Federal Rules of Evidence ("expert opinion testimony"). If called, in addition to fact testimony the following witnesses are expected to testify as to their background, professional observations, education, and clinical and research experiences, work, and training, and provide expert opinion testimony consistent with this disclosure. Plaintiffs reserve the right to seek admission of this opinion testimony under Rules 702, 703 and/or 705 of the Federal Rules of Evidence. Plaintiffs specifically reserve the right to designate fact or expert testimony from these witnesses in accordance with any Court orders and instructions that may apply regarding pretrial orders and the procedure for deposition designations.

### 1.    Lotte Rubaek

Depending on the Court's rulings on pretrial motions and motions during trial, its evidentiary rulings, the evidence presented by Defendants and other factors, Plaintiff may call Lotte Rubaek as a witness at trial, or designate portions of Ms. Rubaek's deposition testimony to be presented at trial.

Ms. Rubaek is a Licensed Clinical Psychologist and Psychotherapy Specialist and is the current overall leader of the Clinical Academic Group for self-harm at Capital Region Psychiatry (Region Hovedstadens Psykiatri) in the Capital Region of Denmark. (Ms. Rubaek's *curriculum vitae* is attached hereto as Exhibit A and incorporated herein.) Ms. Rubaek has over eighteen years of clinical and research experience in the field of mental health, with at least sixteen of those years focusing on children and adolescent mental health. Ms. Rubaek has seven years of

Ms. Rubaek to date has not charged a fee for providing deposition and trial testimony and none has been paid to her. She has not charged or received any compensation from Plaintiffs' counsel.

### 2. Arturo Béjar

Depending on the Court's rulings on pretrial motions and motions during trial, evidentiary rulings, evidence presented by Defendants, and other factors, Plaintiffs may call Arturo Béjar as a witness at trial, or designate portions of his deposition testimony to be presented at trial. Mr. Béjar is not "retained or specially employed to provide expert testimony in the case," nor do his duties regularly involve giving expert testimony. He is therefore not required to provide a written report pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. Mr. Béjar may offer some or all of the opinions set forth in this disclosure. Additional opinions may be elicited to rebut or respond to opinions of Defendants' witnesses that have not been disclosed as of the date of this disclosure or to address new or additional information. Mr. Béjar has previously given a deposition in this matter spanning three days which contains the facts and opinions that Plaintiffs anticipate he may offer at trial.

Mr. Béjar has 30 years of experience in online and social media user safety. He began working in the tech industry at the age of 15 for IBM. Mr. Béjar graduated with a degree in mathematics from King's College in 1993. In 1994, he began work at Electric Communities, a social media startup, where he focused on security issues. Mr. Béjar joined Yahoo! in 1998, where he took on a role equivalent to the Chief Security Officer of the company. He was the first engineer at Yahoo! dedicated to writing security code. His job was to make sure that every product that Yahoo! made was safe for the people using it, which involved, among other things, implementing protections for kids and using test accounts to assess the safety of the platform and the effectiveness of safety features.

Mr. Béjar joined Meta in 2009, as the company's site integrity team manager. He continued to work at Meta through 2015, and his role greatly expanded during that time to include not only site integrity, but also customer care and other teams. In coordination with Meta CEO Mark

- His personal knowledge and experience related to online child safety and well-being;

- His personal knowledge and experience related to the ethical design of online platforms, and necessary safety designs for online platforms;

- His personal knowledge and experience of the safety of Meta's platforms for minors;

- His personal knowledge and experience related to how design defects on Meta's platforms can cause harm to minors (e.g., age verification, reporting processes, beauty filters, public like counts, infinite scroll, default settings, private messages, reels, ephemeral content, and connecting children with adult strangers);

- His personal knowledge and experience related to Meta's prioritization of growth and engagement over safety;

- His personal knowledge and experience about online predation and prevention efforts, including the prevalence and harmful effect of child sexual abuse material (CSAM), child exploitative imagery (CEI), minor sexualization, endangerment, exploitation, and grooming;

- His personal knowledge and experience related to online bullying and harassment;

- His personal knowledge and experience of harms associated with Meta's platforms including addiction/problematic use, anxiety, depression, eating disorders, body dysmorphia, suicidality, self-harm, and sexualization;

- His personal knowledge and experience drafting and assessing the adequacy of disclosures concerning risks or known issues of online platforms to the public;

- His personal knowledge and experience related to the design and efficacy of Meta's safety features, and viable alternative technologies that would have improved the platforms' safety;

- His personal knowledge and experience related to Meta's community standards/policies and enforcement, Meta's community standards enforcement

reports, the accuracy or inaccuracy of Meta's public statements about safety and harms, Meta's disclosure and warning of the risks and harms on Meta's platforms (or lack thereof), and the need for transparency, and Meta's concealment of information about harms on Meta's platforms;

- His personal knowledge and experience regarding evaluations and tests that he performed on the safety of Instagram and Facebook for children, videos of which were previously produced by Mr. Béjar;

- His personal knowledge and experience interpreting survey results and user testimonials concerning the safety of online platforms.

The facts and opinions to which Mr. Béjar may testify on the subjects listed above are set forth in his deposition testimony given in this case and may include the following:

- It is important for social media companies like Meta to protect kids who use their apps. Meta has a responsibility to make the platform safe for teens. User safety needs to be top priority for social media companies like Meta. If Meta knows that kids are being harmed on its app, its top priority should be to swiftly take action to prevent harm to kids.

- Meta does not adequately protect kids on Instagram. Instagram is not a safe place for kids. Kids are more vulnerable to online harms than adults. Instagram was not built to be safe or good for kids.

- Growth and engagement were a top priority for Meta, and safety was not a priority but an afterthought. Meta does not provide the necessary resources or support to the teams working on safety and wellbeing. Building safety measures can have a negative impact on user engagement, which disincentivizes Meta from building safety measures. Meta's organizational structure creates a conflict in favor of growth, not safety, and that caused Instagram to be unsafe for kids.

- Instagram should have had appropriate age verification in place to keep kids safe. Instagram acknowledged that kids do not accurately report their age. Instagram had a "don't ask, don't tell policy" regarding the age of users. It was understood at Meta that young kids were using Instagram and that was a substantial reason behind Meta's acquisition of the platform. Meta wanted very young kids on their apps. There were no serious efforts to detect or remove under 13 accounts on Instagram. It is easy to find under 13 accounts on Instagram, but it is difficult to report those accounts. Mr. Béjar's own testing on teen accounts further demonstrates this. Instagram is not safe for kids under 13.

- Meta's platforms were designed to keep users, including kids, engaged and to maximize time spent on the platforms. Platform features that cause or contribute to engagement and potentially excessive time spent include the nature and frequency of notifications, never-ending infinite scroll of images and videos, and rewards such as likes and hearts.

- Instagram and social media can be addictive, and the design of the platforms can cause or contribute to addiction. Meta redefined the issue as problematic use, and it was not studied and understood in good faith. Meta did not publish any internal data on addiction or problematic use and did not publicize this risk. Meta did not do enough to prevent or substantially reduce kids' engagement or time spent or addiction or problematic use on Instagram. Meta did not monitor kids' excessive use or engagement. Meta did not properly monitor its platforms for addiction or problematic use and does not take adequate steps to prevent or substantially reduce kids' addiction or problematic use.

- Meta misleads the public to believe that its platforms are safe for teens and that it has policies that it effectively enforces that do not allow sexual exploitation. Meta fails to disclose that the design of the platform rewards dangerous behavior and encourages young girls to create racy content. Meta fails to disclose and warn that