Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

*Attorneys for Defendants Meta Platforms, Inc.*
*f/k/a Facebook, Inc. and Instagram, LLC*

[Additional counsel listed on signature pages]

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION <br><br> This Document Relates To: <br><br> *People of the State of California, et al. v. Meta Platforms, Inc. et al.* | MDL No. 3047 <br><br> Case Nos.: 4:22-md-03047-YGR <br> 4:23-cv-05448-YGR <br><br> **META'S MOTION *IN LIMINE* NO. 3 TO EXCLUDE TESTIMONY FROM CERTAIN FORMER EMPLOYEES UNDER SECTION 230 AND AS IMPERMISSIBLE LAY OPINION** <br><br> Judge: Hon. Yvonne Gonzalez Rogers <br> Magistrate Judge: Hon. Peter H. Kang <br><br> Date: June 26, 2026 <br> Time: 8:00 AM <br> Place: Courtroom 1, 4th Floor |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT, at 8:00 AM on June 26, 2026, before the Honorable Yvonne Gonzalez Rogers, in Courtroom 1, Floor 4, of the United States District Court, Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Meta will and hereby does move this Court for an order excluding testimony from certain former Meta employees as described in the accompanying Memorandum of Points and Authorities.  This Motion is based on this Notice, the accompanying Memorandum, any other papers submitted in connection with the Motion, the accompanying Declaration of Ashley M. Simonsen and the exhibits thereto, and any other matters presented at the time of the hearing.

DATED:  June 9, 2026                                    Respectfully submitted,


By:    /s/ Ashley M. Simonsen

Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc. and Instagram, LLC*

*[Additional counsel listed on signature pages]*

META'S MOTION IN LIMINE NO. 3 TO EXCLUDE TESTIMONY FROM CERTAIN FORMER EMPLOYEES UNDER SECTION 230 AND AS IMPERMISSIBLE LAY OPINION
4:22-md-03047-YGR; 4:23-cv-05448-YGR

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 1

I.      This Court Should Exclude Testimony From Adverse Former Employees About Content or Features Barred by Section 230. ................................................................... 1

II.     This Court Should Exclude Lay Opinion Testimony From Adverse Former Employees. . 8

CONCLUSION .................................................................................................................. 11

META'S MOTION IN LIMINE NO. 3 TO EXCLUDE TESTIMONY FROM CERTAIN FORMER EMPLOYEES UNDER SECTION 230 AND AS IMPERMISSIBLE LAY OPINION
4:22-md-03047-YGR; 4:23-cv-05448-YGR

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Baycol Prod. Litig.*,
    532 F. Supp. 2d 1029 (D. Minn. 2007) .......................................................................................10

*Camenisch v. Umpqua Bank*,
    763 F. Supp. 3d 871 (N.D. Cal. 2025) ........................................................................................10

*In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*,
    345 F. Supp. 3d 897 (S.D. Ohio 2015) .......................................................................................10

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) (en banc) ......................................................................................3

*Force v. Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019)............................................................................................................7

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) ......................................................................................................4

*Lemmon v. Snap*,
    995 F.3d 1085 (9th Cir. 2021) ......................................................................................................7

*M.P. by & through Pinckney v. Meta Platforms Inc.*,
    127 F.4th 516 (4th Cir. 2025) .......................................................................................................7

*United States v. Lopez*,
    762 F.3d 852 (9th Cir. 2014) ........................................................................................................8

**Other Authorities**

Fed. R. Evid. 702 .............................................................................................................................8

Fed. R. Evid. 401 .............................................................................................................................8

Fed. R. Evid. 403 .............................................................................................................................8

Fed. R. Evid. 701 .............................................................................................................................8

**INTRODUCTION**

The AGs have indicated that they may call multiple former Meta employees, contractors, or consultants as witnesses at trial. These potential witnesses are Arturo Béjar, Brian Boland, Vaishnavi Jayakumar, Alison Lee, Lotte Rubaek, Jason Sattizahn,[1] Natalie Troxel, and George Volichenko. Meta anticipates that their testimony will focus on alleged harms from third-party content and features that this Court has already held are subject to Section 230 immunity, including algorithmic recommendations, infinite scroll, autoplay, ephemeral content, notifications, and likes. *See* ECF 1214 at 25–29 ("MTD Order").

Beyond the Section 230 bar on testimony from these witnesses, any other testimony they could provide—untethered from third-party content or immunized features—would be improper lay opinion testimony and should be independently excluded on that basis.[2]

**ARGUMENT**

**I.  This Court Should Exclude Testimony From Adverse Former Employees About Content or Features Barred by Section 230.**

Meta anticipates that much of these witnesses' trial testimony will discuss either third-party content or features barred by Section 230. Such testimony includes the following:

**Arturo Béjar.** Meta anticipates that the AGs will seek to elicit testimony from Mr. Béjar, a former engineering and product supervisor at Meta, about allegedly harmful third-party content on Facebook and Instagram. This testimony will likely include, among other things, Mr. Béjar's use of "test accounts" to survey third-party content purportedly viewed by certain users of Meta's platforms, and third-party communications Mr. Béjar's daughter received on Instagram. This includes:

- **Bad Experiences and Encounters Framework ("BEEF") Surveys and the Negative Experiences Surveys.** The BEEF survey focused on users' subjective experiences with third-party content on Instagram. The survey elicited ███████████████████████████████

---

[1] Dr. Sattizahn's prior testimony includes extensive disclosures of privileged communications with Meta in-house counsel. Because Meta maintains its claims of privilege over that testimony, it does not provide specific examples of it in this motion. To the extent this motion quotes from or summarizes Dr. Sattizahn's prior testimony, it is limited to testimony over which Meta does not claim privilege.

[2] Mr. Béjar has been designated to provide expert testimony, and Meta therefore does not move to exclude his testimony on lay-opinion grounds. *See* Ex. A, AGs' Non-Retained Expert Disclosure at 3–6.

██████████████████████████████ *See* Ex. B, META3047MDL-004-00015029 at -5033.  The Negative Experience Surveys asked users ████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████ *See* Exs. C, D, Exs. 2 & 3 to March 14, 2025 Deposition of Shilpa Mody.  Mr. Béjar has previously discussed the results of these surveys and expressed his view that the survey results should have been made public.  *See, e.g.*, Ex. E, 2/10/26 New Mexico Attorney General Trial Transcript ("NM Tr.") at 1694:13–15 ("And so I think that BEEF . . . should have been made public . . . ."); *id.* at 1695:10–12 (Q. "[D]id Meta ever make the BEEF survey results public? A. They did not."); Ex. F, Written Testimony before the Subcommittee on Privacy, Technology, and the Law, Nov. 7, 2023.[3]  Mr. Béjar should be precluded from testifying about these studies and whether they should have been made public because they relate to Meta's publishing of third-party content and its purported failure to warn about that content— neither of which provide a basis for liability in this case.  *See, e.g.*, MTD Order at 25–29; *see also* Ex. G, 3/4/26 Judicial Council Coordinated Proceedings Trial Transcript ("JCCP Tr.") at 4467:14–17 (Judge Kuhl ruling that Mr. Béjar "can't just pick out that area of content and . . . point to . . . numbers in the BEEF survey and say, this was a particular problem for the company").

- **Community Standards Enforcement Reports ("CSER").**  These public, Meta-produced reports address the prevalence of certain negative or harmful third-party content on Instagram and Facebook. The CSER data, for example, tracks the prevalence of certain kinds of content that violate Meta's Community Standards, such as adult nudity and sexual activity, terrorism content, and violence and incitement.[4]  Because these reports are about third-party content and content moderation, Mr. Béjar should not be permitted to testify about them.

---

[3] While Mr. Béjar testified in New Mexico on these surveys, the court there did not exclude evidence of content-based harms and thus did not apply the law that this Court has applied under Section 230.

[4] *See, e.g.*, Community Standards Enforcement Report: Adult Nudity and Sexual Activity, *available at* https://transparency.meta.com/reports/community-standards-enforcement/adult-nudity-and-sexual-activity/facebook/; *see also* Community Standards Enforcement Report: Bullying and Harassment, *available at* https://transparency.meta.com/reports/community-standards-enforcement/bullying-and-harassment/.

- **"Instagram Teen Accounts Are Missing the Mark."[5]**  This non-Meta report is also wholly about third-party content on Instagram.  It asked participants about seven different types of content they may have seen on Instagram: (1) "Graphically violent or bloody content or memes"; (2) "Self-harm content or memes"; (3) "Content or memes related to buying, selling, or using drugs or alcohol"; (4) "Unwanted sexually suggestive content or memes"; (5) "Hate speech, racist, or discriminatory content or memes"; (6) "Unwanted messages or contact from another user"; and (7) "Content or memes related to eating disorders or body shaming."  *See* Heat Initiative at 2.  Because the report is solely about third-party content, Mr. Béjar should not be permitted to testify about it.

- **"Teen Accounts, Broken Promises."[6]**  This report addresses Instagram's tools, including content-based tools, and third-party content on Instagram.  Specifically, Mr. Béjar purportedly used "test" accounts to assess the effectiveness of those tools by collecting information about "sensitive" content on Instagram, including sexual content, violent content, content that promotes self-harm and self-injury, body image content, sexualized content of minors, unwanted sexual advances, and bullying and harassment.  *See* Fairplay Report at 10.  For the reasons discussed above, Mr. Béjar should be precluded from testifying about this report's discussion of third-party content and Instagram's tools for publishing, removing, and recommending content.

Mr. Béjar will also likely testify about his "test" accounts, which he used to view third-party content on Instagram.[7]  Such testimony about "material that third parties seek to post online is perforce immune under section 230," and should be excluded on that basis.  *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1171 (9th Cir. 2008) (en banc).  Beyond that, these

---

[5] *See* Heat Initiative, *Instagram Teen Accounts Are Missing the Mark*, *available at* https://heatinitiative.org/wp-content/uploads/2025/09/Instagram-Teen-Accounts-are-Missing-the-Mark.pdf ("Heat Initiative").

[6] *See Teen Accounts, Broken Promises*, *available at* https://fairplayforkids.org/wp-content/uploads/2025/09/Teen-Accounts-Broken-Promises-How-Instagram-is-failing-to-protect-minors.pdf ("Fairplay Report").

[7] Mr. Bejar has produced and previously testified in detail about numerous videos and photos documenting his "testing," including: (1) a 1-minute video of a young girl dancing on Instagram and the comments on the video, *see* Ex. H, BEJAR0002355; and (2) a 3-minute video showing various examples of young girls performing a trend on Instagram where they point to text describing "my name, my age, my favorite color," *see* Ex. I, BEJAR0002542.  The AGs have included these and other videos from Mr. Bejar on their preliminary exhibit list.

META'S MOTION IN LIMINE NO. 3 TO EXCLUDE TESTIMONY FROM CERTAIN FORMER EMPLOYEES UNDER SECTION 230 AND AS IMPERMISSIBLE LAY OPINION
4:22-md-03047-YGR; 4:23-cv-05448-YGR

examples of third-party content and related discussion of "test" accounts involving disturbing and inflammatory third-party content are irrelevant and unduly prejudicial.

Mr. Béjar will also likely testify about his daughter's experiences with negative or harmful third-party content on Instagram. For example, during the New Mexico AG trial and in the book *Broken Code*, Mr. Béjar described how his 14-year-old daughter received misogynistic comments and explicit photos from third parties on Instagram. *See, e.g.*, 2/10/26 NM Tr. 1507:8–9 ("she started getting really sort of awful comments, awful messages"); *id.* at 1523:15–17 (other users would "comment on her body, would send her messages, extremely inappropriate, like sexual propositions"). Such comments and photos are classic examples of third-party content that Meta cannot be liable for under Section 230. *See Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1266 (9th Cir. 2016) ("an online messaging board (or bulletin board) on which Internet subscribers post comments and respond to comments posted by others" is the "prototypical" situation to which Section 230 applies). Evidence of the experiences of Mr. Béjar's daughter is also highly prejudicial with little to no probative value, as they reflect anecdotal interactions with third-party users not bearing on the specific alleged misrepresentations and features the AGs have challenged in this case.

**Alison Lee.** Dr. Lee, a former Instagram researcher, will likely testify about her work on Reels, a short-form video product on Instagram similar to TikTok. Ex. L, Lee Dep. Tr. at 26:10–27:9; 32:7–8; 62:16–25.[8] As Dr. Lee stated at her deposition, Reels consists entirely of content created by other users. *See id.* at 31:7–12 ██████████████████ *see also id.* at 35:10–14 ████████████████████ ██████ *id.* at 56:23–57:12. The primary focus of Dr. Lee's research regarding Reels addressed content moderation and ways to minimize exposure to various types of content, as she explained in her deposition:

██████████████████████████████████████████████████
██████████████████
██████████████████████

* * *

---

[8] Dr. Lee also ██████████████████████████████████████ *Id.* at 27:7–9. Aside from offering a description of her work history, there was effectively no discussion of the substance of Dr. Lee's AI-related research in her deposition.

[9] *Id.* at 304:5–9 (objection omitted).



* * *

**Lotte Rubaek.** Ms. Rubaek, a former consultant for Meta's suicide and self-injury expert group, is expected to testify about third-party content related to suicide, self-injury, and eating disorders that appears on Meta's services. For example, she testified that ███████ ██ ████████ ████████████████████████████████ Ex. M, Rubaek 4/1/25 Dep. Tr., at 68:11–15.[12] Ms. Rubaek also testified about features of Meta's services that she believes cause harm, but entirely failed to disentangle these features from the harm caused by third-party content. Instead, in her view, ████████████████████████████████████████ ██████████████ Ex. N, Rubaek 7/8/25 Dep. Tr. at 163:21–164:7; *see also id.* at 157:13–16 (asserting that the problem with social media platforms █████████████████████ ██████████ Additionally, in her deposition, Ms. Rubaek repeatedly referred to specific pieces of third-party content that purportedly cause mental health harms. For instance, she testified that ███ ████████████████████████████████ Ex. M at 45:17–21 (emphasis added); *see also id.* at 114:19–24 ████████████ █████████████████████████████████████

---

[10] *Id.* at 304:11–24 (objection omitted).

[11] *Id.* at 311:10–15 (objection omitted).

[12] The AGs did not designate certain cited portions of Ms. Rubaek's and Ms. Troxel's testimony in their priority deposition designations. Meta nevertheless moves to exclude this testimony because the parties were unable to reach agreement on the categories of evidence addressed in this Motion and the AGs may seek to counter-designate these cited portions of testimony.

█████████████████████████ (emphases added)); Ex. N at 163:1–4 (noting that some studies have shown that when teens are ███████████████████████ ██████████████████████ (emphasis added)). She also tied body image problems to content viewed by teens, noting that ████████████████████████ ████████████████████████████████████████ ███████████████████ Ex. M at 31:23–32:3 (emphasis added). Indeed, when asked whether Instagram would have the same effect on teens if ████████████████████████ Ex. N at 159:15–16, she testified: ██████████████████████████ *id.* at 159:23–24. And she admitted that ████████████████████████ ███████████████████████████ *Id.* at 162:1–4. So, ████████████ ████████████████████████████████████████ ████████████████████ *Id.* at 160:8–13.

**Vaishnavi Jayakumar.** Ms. Jayakumar, a former head of youth policy at Meta, will likely testify about harm caused by third-party content, including purported deficient content moderation practices on features such as Instagram Reels. *See, e.g.*, Ex. O, Jayakumar 1/30/25 Dep. Tr. at 56:12–18 ███████ ███████████████████████████████████████ ███████████████████████████ *id.* at 119:4–7 (testifying that ████████████████████████████████ ████████████████████████████ Ms. Jayakumar also will likely testify about immunized features, such as the recommendation algorithm and Instagram "likes," and her belief that these features caused harm. *See id.* at 168:8–12 (testifying that █████████ ████████████████████████████████████████ ████████████████████████████████████████ *id.* at 138:6–12 ████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████

**Brian Boland.** Mr. Boland, a former advertising and marketing executive at Facebook, will likely testify—as he did in his deposition—that he believes the recommendation algorithm and content-ranking

6

drive increased use of Meta's services. *See, e.g.*, Ex. P (Boland Dep. Tr.) at 91:14–92:3 ███████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████ Mr. Boland further is likely to testify about content wholly divorced from the subject of this case—such as political conspiracy theories or divisiveness. *See, e.g.*, Ex. Q, 2/12/2026 NM Tr. at 2398:18–2401:10 (testifying, as an example of how users experience Meta's algorithms, about an individual user's journey into the QAnon conspiracy theory).

**Natalie Troxel.** Ms. Troxel, a former user experience researcher with Facebook, will likely testify about her involvement with research into "infinite scroll," and her proposal that the company shift to a chronological feed, whereby content would be displayed to users based on when it was posted. *See, e.g.*, Ex. R (Troxel Dep. Tr.) at 73:12–16 █████████████████████████

███████████████████████████████████████████████████████████████

████. Section 230 bars this evidence because features like "infinite scroll" are how Meta publishes third-party content. "[D]ecisions about whether and how to display certain information" are "traditional editorial functions of publishers," *M.P. by & through Pinckney v. Meta Platforms Inc.*, 127 F.4th 516, 526 (4th Cir. 2025), as is how much information to publish, *see, e.g.*, *Force v. Facebook, Inc.*, 934 F.3d 53, 70 (2d Cir. 2019) ("making information more available" is "an essential part of traditional publishing"); ECF 430, Personal Injury Motion to Dismiss Order at 16 (Section 230 bars "[n]ot providing a beginning and end to a user's 'Feed'").

**George Volichenko.** Mr. Volichenko, a former Instagram engineer, is likely to testify about ███

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████ Ex. S (Volichenko Dep. Tr.) at 40:17–41:6. Such social comparison necessarily depends on viewing the content of third parties. Under Section 230, evidence of content posted by others on Meta's platforms cannot serve as a basis for liability, and must be excluded. *See, e.g.*, *Lemmon v. Snap*, 995 F.3d

1085, 1093 n.4 (9th Cir. 2021) (Section 230 would bar liability for "snaps of friends," *i.e.*, "photo message[s]" created by Snap users).

Because evidence about third-party content and immunized features cannot serve as a basis for liability, it is of no "consequence in determining the action," and is irrelevant under Rule 401. Moreover, to the extent any evidence related to third-party content or barred features could be relevant,[13] permitting it would confuse the jury and unfairly prejudice Meta under Rule 403 by placing in issue features and third-party content that cannot be the basis for liability. Any probative value of this testimony would be substantially outweighed by the risk of undue prejudice to Meta and the potential for juror confusion.

**II.  This Court Should Exclude Lay Opinion Testimony From Adverse Former Employees.**

Beyond the Section 230 bar on content-based testimony from these witnesses, they should also be precluded from offering testimony that goes beyond their personal knowledge or opines on Meta's motives, incentives or culture.[14] Admitting such testimony would fail Rule 701's requirement that lay witnesses not venture past testimony that is "rationally based on the witness's perception."

The improper lay opinion testimony Meta seeks to exclude falls broadly into two categories.

***First***, witnesses should not be permitted to offer lay opinions that lack any basis in their personal, factual knowledge. *See, e.g.*, *United States v. Lopez*, 762 F.3d 852, 864 (9th Cir. 2014) ("Rule 701(a) contains a personal knowledge requirement."). Such testimony includes the following:

**Alison Lee.** In her deposition, Dr. Lee answered extensive questions about the BEEF survey and offered interpretations on a BEEF slide deck, only to later admit that she had no personal involvement in the BEEF survey and was interpreting the slide deck in real time. *See* Ex. L at 419:9–422:11. And at the JCCP trial, Judge Kuhl limited the scope of Dr. Lee's testimony, reasoning that because Dr. Lee was "primarily involved in safety research and limitations thereon with regard to content," it would not be "appropriate" for her to testify about "overall policy safety." Ex. T, 2/17/26 JCCP Tr. at 2003:21–2006:18;

---

[13] As explained in Meta's concurrently filed Motion *in Limine* Number 4, any evidence relating to features barred by Section 230 is inadmissible.

[14] Subject to its prior motion under Fed. R. Evid. 702, Meta understands that Mr. Béjar may provide expert opinion testimony, but that this opinion testimony must be cabined to the specific issues under which the AGs qualify him to testify as an expert.

*see id.* at 2005:1–6 (Dr. Lee cannot testify about "her experience in content moderation when content moderation has no relevance to this case.").

**Brian Boland**. Mr. Boland offered broad opinions that Meta prioritized growth over safety, Ex. P at 119:9–13; 275:18–277:13, and did not attempt to understand the issues around teen mental health, *id.* 122:1–9. Yet he conceded that he had a complete lack of knowledge regarding the safety and integrity efforts at Meta, including on the specific topic of teen mental health. *See id.* at 70:15–21 (acknowledging he ████████████████████████████████████████ *id.* at 327:4–16 (conceding he ████████ ████████████████████████████████████████████████ ; *id.* at 333:5–334:21 (conceding he ████████████████████████████████████████ ████████████████████████████████████████████████ *id.* at 346:9–17 (conceding he █████████████████████████████ ██████).

**Vaishnavi Jayakumar.** At her deposition, Ms. Jayakumar repeatedly offered her views as to why various decisions at Meta were made. *See, e.g.*, Ex. O at 75:6–16 (offering opinion ██████████ ████████████████████████████████ Yet she conceded that she was not involved in key decisions made by senior leadership, and would not have any personal factual knowledge that would equip her to speak to why the company made various decisions. *See* Ex. U (Jayakumar 1/31/25 Dep. Tr.) at 575:5–17 (admitting █████████████████████████████████████████████ *id.* at 671:1–18 (admitting ████████████████████████████████ ███████████████ *id.* at 722:1–10 (admitting █████████████████ ████████████████████████████████████████████████.

**George Volichenko.** Mr. Volichenko offered several opinions during his deposition that were not supported by personal knowledge. For example, Mr. Volichenko testified that ████████████████ ████████████████████████████████████████████████ █████████████████ Ex. S at 206:6–8. He also testified about █████████████████ ████████████████████████████████████████████████ █████████████████████████████ *Id.* at 207:12–24, 208:11–15.

**Jason Sattizahn.** Dr. Sattizahn, a former researcher with Reality Labs, which oversees Meta's virtual reality services, testified extensively about his purported knowledge about safety features on Instagram. *See, e.g.*, Ex. V (Sattizahn Dep. Tr.) at 209:25–210:7 ███████████████████████████████████████████████████████████████████████████ *see id.* at 237:21–238:1 ███████████████████████████████████████████████████████████ But, as he admitted, he never worked at Instagram, and, instead, worked directly on services and features unrelated to this case. *See id.* at 406:18–22 ███████████████████ *id.* at 407:3–6 ███████████████████████ Instead, he learned about safety features on Instagram through conversations and the research performed by employees who *did* work on Instagram. *See id.* at 209:25:–210:7; 237:21–238:1. Dr. Sattizahn lacks the requisite first-hand knowledge to offer lay opinions regarding safety features on Instagram.

***Second***, it would be improper for these fact witnesses to offer opinions (lay or otherwise) about what motivates Meta, what Meta "believes," or what Meta or its executives "value" or "prioritize." Even properly qualified experts are not permitted to testify on these subjects,[15] and these lay witnesses likewise should not be permitted to offer such testimony. This includes the following:

**Vaishnavi Jayakumar.** Ms. Jayakumar offered sweeping, general opinions about how Meta operated and its priorities. *See, e.g.*, Ex. O at 26:3–9 (offering opinion that ███████████████████

---

[15] *See, e.g.*, *Camenisch v. Umpqua Bank*, 763 F. Supp. 3d 871, 882 (N.D. Cal. 2025) ("Courts routinely exclude expert testimony as to intent, motive, or state of mind as issues better left to a jury." (citation omitted)); *In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 345 F. Supp. 3d 897, 902 (S.D. Ohio 2015) ("Courts have typically barred expert opinions or testimony concerning a corporation's state of mind, subjective motivation, or intent. In general, courts have found that this type of 'testimony is improper . . . because it describes "lay matters which a jury is capable of understanding and deciding without the expert's help.'" (citations omitted)); *In re Baycol Prod. Litig.*, 532 F. Supp. 2d 1029, 1053 (D. Minn. 2007) ("Personal views on corporate ethics and morality are not expert opinions.").

██████████████ *id.* at 70:24–71:4 (same); *id.* at 32:6–33:2 (offering opinions about ███████████████

███████████; *id.* at 75:6–16 (offering opinion about ██████████████████████

██████

**Lotte Rubaek.** Ms. Rubaek admitted that her work on Meta's Advisory Board was limited. Ex. M at 56:8–12; *id.* 127:15–18. She, however, purported to give broad opinions about Meta at her deposition that went beyond her specific factual knowledge, including that ██████████████████████

██████████████████████ *Id.* at 85:18–23; *see also, e.g., id.* at 59:8–20 (offering opinion on Congressional testimony of a Meta employee); *id.* at 62:23–64:4 (offering opinion on whether Meta acted in accordance with list of principles).

**Natalie Troxel.** Ms. Troxel repeatedly offered lay opinions at her deposition, including on whether Meta promoted ██████████████████████████████

██████████████████████ Ex. R at 51:20–52:4; 78:13–21.

**Jason Sattizahn.** Dr. Sattizahn similarly offered sweeping opinions about what Meta executives value and prioritize, including statements that ██████████████████████

██████████████████████████████

██████████████████████████████

██████████████████████ Ex. V at 484:2–3; 485:11–15.

These opinions are not based on personal, factual knowledge, which is required for admissibility; nor would they be necessary for the jury to understand the witnesses' factual testimony. And they risk unduly prejudicing Meta and confusing the jury on key questions. They should be excluded.

## CONCLUSION

For the foregoing reasons, Meta respectfully requests that the Court exclude the above-described testimony from former Meta employees, consultants, and contractors.

DATED:  June 9, 2026                                                          Respectfully submitted,

By:      */s/ Ashley M. Simonsen*

11

META'S MOTION IN LIMINE NO. 3 TO EXCLUDE TESTIMONY FROM CERTAIN FORMER EMPLOYEES UNDER SECTION 230 AND AS IMPERMISSIBLE LAY OPINION
4:22-md-03047-YGR; 4:23-cv-05448-YGR

Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

Paul W. Schmidt, *pro hac vice*
Timothy C. Hester, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
Email: pschmidt@cov.com
Email: thester@cov.com


*Attorneys for Defendants Meta Platforms, Inc.*
*f/k/a Facebook, Inc. and Instagram, LLC*

META'S MOTION IN LIMINE NO. 3 TO EXCLUDE TESTIMONY FROM CERTAIN FORMER EMPLOYEES UNDER SECTION 230 AND AS
IMPERMISSIBLE LAY OPINION
4:22-md-03047-YGR; 4:23-cv-05448-YGR