# Exhibit T

SUPERIOR COURT FOR THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

DEPARTMENT 12 - HONORABLE CAROLYN B. KUHL, JUDGE PRESIDING

COORDINATION PROCEEDING            )
SPECIAL TITLE [RULE 3.550]         )
                                   )
SOCIAL MEDIA CASES                 )     JUDICIAL COUNCIL
_____    )     COORDINATION
                                   )     PROCEEDING
(LEAD CASE: CHRISTINA ARLINGTON    )     NO. 5255
SMITH, ET AL., V. TIKTOK INC.,     )
ET AL., CASE NO. 22STCV21355)      )
                                   )
THIS DOCUMENT RELATES TO:          )
P.F., ET AL. V. META PLATFORMS,    )
ET AL., CASE NO. 23SMCV03371       )


REPORTER'S DAILY TRANSCRIPT OF PROCEEDINGS

TUESDAY, FEBRUARY 17, 2026

(APPEARANCES OF COUNSEL ON FOLLOWING PAGES)


REPORTED BY:  CARRIE A. CAMPBELL, CSR NO. 13921, RDR, CRR
              COURT-APPROVED REPORTER PRO TEMPORE
              PAGES  1993-2023

Social Media Addiction Litigation JCCP No. 5255
Case 4:22-md-03047-YGR     Document 3120-22     Filed 06/09/26     Page 3 of 7

We'll add an appropriate -- well, let's talk about the witnesses, now we have a minute.

Okay.  So I've read over all of that.  As far as whistleblower designation is concerned, the issue we had previously with regard to designating people as whistleblowers had to do with opening statement and whether that's argument and so forth and so on.

We're now at a point where we have witnesses. Witnesses can describe themselves as they wish.  And so you can ask them, you know, do you consider yourself a whistleblower.  That's fine.

You know, it's not -- it's not a term of art, in my judgment.  We had a discussion about it previously. But as I say, that was in my judgment with respect to whether it was fair in opening.

So now that -- now things are unfolding with evidence and that -- but, you know, plaintiff's counsel shouldn't be saying, now we'll call our first whistleblower, right?  So we're not going to have that, and we'll see how it unfolds.

I have a concern about Dr. Lee.  So plaintiff's counsel says in the hasty brief they had to file that there was previous testimony about safety being a priority and that therefore that opens up the issue of -- I'm not sure this is what plaintiffs are saying, but one way of interpreting what they're saying is that this opens up safety as a priority in all areas.  And I think it does not.

Social Media Addiction Litigation JCCP No. 5255

So general statements by defense witnesses that, oh, yes, we were concerned about safety, doesn't open up safety in all areas, including content, as the subject matter of the trial.

So the rebuttal to the general statement of we were concerned about safety in all areas -- and I'm generalizing here.  But the rebuttal has to be limited to showing, if that's your point, that safety is not a priority in areas of relevance to this case, not a showing that safety is not a priority in areas as to which litigation is barred in this case; otherwise, it's just a 352 issue.

So it's -- and, you know, there is some basis, as I've previously stated, for impeachment if there is a statement by a particular witness that -- on the defense side that particularly references content, then that can be impeached.  But here we're talking about general statements about safety.

So Dr. Lee can talk about -- and I think plaintiffs want to talk about the fact that Reels is similar to TikTok and endless scroll and so forth and so on.  You can ask whether there was any research with regard to the issue of, you know, safety in light of time spent on the platform, that sort of thing.

But my understanding of Dr. Lee is that she was primarily involved in safety research and limitations thereon with regard to content, and I don't think that's appropriate.

So, you know, to put a point on it, I don't think she -- moreover, I don't think that she can generalize as to overall policy safety from her experience in content moderation when content moderation has no relevance to this case.

So that doesn't mean she doesn't have something relevant to say, but it does mean that I think much of what plaintiffs would be interested in with regard to how many people were on the safety team and how -- and whether the safety team was not sufficient or was -- their recommendations weren't followed, et cetera, if that has to do with safety with regard to content specifically, then I don't think it can be generalized with regard to the areas that are at issue in this case, which is the non-content features.

Okay?  Plaintiffs need further guidance or want to talk about that?

MS. RACHEL LANIER:  Could I ask for a little clarification --

THE COURT:  Sure.

MS. RACHEL LANIER:  -- and guidance?

Rachel Lanier for the plaintiff.

I hear the Court's tentative, and I want to make sure that I know the pathway we need to follow.

So can Dr. Lee testify about her observations as to the Reels team as a whole, that she was working with and interacting with, that would include safety teams that may or may not have been measuring time spent and

Social Media Addiction Litigation JCCP No. 5255

engagement metrics like that?

She does have testimony to that effect.  She does discuss priorities when it comes to time spent and engagement metrics over safety, and it's not just safety issues of content moderation.  It's other levels of safety.

THE COURT:  So the short answer is, you have to lay the foundation.  Okay.

So was your safety team supposed to cover safety with regard to overuse, et cetera.  Okay.  Yes, it was.  No, it wasn't.

If it was, then did you make recommendations.  Were your recommendations taken.  Did you -- was there research that you wanted to do you couldn't do.  Those kinds of things.

But she needs to be instructed before she takes the stand, she can't answer questions with regard to her safety work with regard to content.

MS. RACHEL LANIER:  Yep, understood, your Honor.

THE COURT:  Okay.  Counsel?  Yes, you may.

MS. ANTOINE:  Nicole Antoine on behalf of Meta.

Your Honor, I just want to make very clear that Dr. Lee was not on a safety team.  We asked her that question and said:  "As you testified, that there is an entire separate team at Meta focused on safety issues, trust and safety?

"Yes, that's correct."

That was her answer.

SUPERIOR COURT FOR THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

DEPARTMENT 12 - HONORABLE CAROLYN B. KUHL, JUDGE PRESIDING

COORDINATION PROCEEDING          )
SPECIAL TITLE [RULE 3.550]       )
                                 )
SOCIAL MEDIA CASES               )    JUDICIAL COUNCIL
_____  )    COORDINATION
                                 )    PROCEEDING
(Lead Case: Christina Arlington  )    NO. 5255
Smith, et al., v. TikTok Inc.,   )
et al., Case No. 22STCV21355)    )
                                 )
THIS DOCUMENT RELATES TO:        )
P.F., et al. V. Meta Platforms,  )
et al., Case No. 23SMCV03371     )

I, CARRIE A. CAMPBELL, OFFICIAL PRO TEMPORE REPORTER OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, FOR THE COUNTY OF LOS ANGELES, DO HEREBY CERTIFY THAT THE FOREGOING PAGES, 1993 - 2023 INCLUSIVE, COMPRISE A FULL, TRUE AND CORRECT TRANSCRIPT OF THE PROCEEDINGS HELD IN DEPARTMENT 9 ON FEBRUARY 17, 2026, IN THE MATTER OF THE ABOVE-ENTITLED CAUSE.

DATED THIS 17TH OF FEBRUARY, 2026.

_____
CARRIE A. CAMPBELL, CSR NO. 13921
NCRA REGISTERED DIPLOMATE REPORTER
CERTIFIED REALTIME REPORTER
CALIFORNIA CERTIFIED SHORTHAND REPORTER #13921
MISSOURI CERTIFIED COURT REPORTER #859
ILLINOIS CERTIFIED SHORTHAND REPORTER #084-004229
TEXAS CERTIFIED SHORTHAND REPORTER #9328
KANSAS CERTIFIED COURT REPORTER #1715
NEW JERSEY CERTIFIED COURT REPORTER #30XI00242600
LOUISIANA CERTIFIED COURT REPORTER #2021012
NOTARY PUBLIC