[*Submitting Counsel on Signature Page*]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>4:23-cv-05448 | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR<br><br>**STATE AGS' MOTION IN LIMINE NO. 1 SEEKING TO EXCLUDE CERTAIN TESTIMONY OF STATE WITNESSES**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br><br>Magistrate Judge: Hon. Peter H. Kang<br><br>Date:    June 26, 2026<br>Time:    8:00 AM<br>Place:  Courtoom 1, 4th Floor |

**NOTICE OF MOTION IN LIMINE**

PLEASE TAKE NOTICE THAT, at 8:00 AM on June 26, 2026, before the Honorable Yvonne Gonzalez Rogers, in Courtroom 1, Floor 4, of the United States District Court, Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, the 29 State Attorneys General Plaintiffs will and hereby do move this Court, under the Federal Rules of Evidence, for an order precluding Meta from using certain testimony from state witnesses at trial. This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, any other papers submitted in connection with this Motion, the accompanying Declaration of Zachary Richards and exhibits thereto, and any other matters presented at the time of the hearing.

## STATEMENT OF RELIEF SOUGHT

The twenty-nine State AGs seek entry of an order barring Meta from introducing at trial testimony from state witnesses in violation of this Court's discovery orders, testimony which is irrelevant and prejudicial, and testimony from lay witnesses on issues suited for experts.

**TABLE OF CONTENTS**

NOTICE OF MOTION IN LIMINE ..................................................................................................... 1

STATEMENT OF RELIEF SOUGHT ............................................................................................... 2

INTRODUCTION................................................................................................................................ 1

    I.     BACKGROUND ...................................................................................................................... 2

    II.    ARGUMENT ............................................................................................................................ 4

    A.    Meta Should Not Be Permitted to Use Testimony on Topics Prohibited by this Court's Discovery Orders ...................................................................................................... 4

    B.    Testimony Regarding States' Own Programs, Policies and Use of Social Media Is Irrelevant to Any Claim or Defense at Issue ................................................................... 5

    C.    Rule 701 Precludes Meta from Introducing Lay Witness Testimony on What Research, Data, or Science Say Regarding Social Media's Impact on Mental Health ..................................... 10

CONCLUSION ................................................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*A. H. Benoit & Co. v. Johnson*,
160 Me. 201 (1964)....................................................................................................... 8

*Bannock Cnty v. Bell*,
8 Idaho 1 (1901) ............................................................................................................ 8

*Beckley v. Wolford*,
104 W. Va. 391 (1927) .................................................................................................. 8

*Blockchain Innovation, LLC v. Franklin Resources, Inc.*,
2025 WL 1002798 (N.D. Cal. Apr. 3, 2025) .............................................................. 12

*Central Collection v. DLD*,
112 Md. App. 502 (1996) .............................................................................................. 8

*Corvalis Sand & Gravel Co. v. State Land Bd.*,
250 Or. 319 (1968)........................................................................................................ 8

*Crow v. Neb. Dep't of Revenue*,
316 Neb. 154 (2024) ..................................................................................................... 8

*Farrow v. City Council of Charleston*,
169 S.C. 373 (1933) ...................................................................................................... 8

*Frisone v. U.S.*,
270 F.2d 401 (9th Cir. 1959) ...................................................................................... 11

*Galt v. Waianhuea*,
16 Haw. 652 (1905) ...................................................................................................... 8

*Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*,
467 U.S. 51 (1984)........................................................................................................ 9

*Illinois v. Kentucky*,
500 U.S. 380 (1991)...................................................................................................... 8

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*,
2021 WL 10282215 (N.D. Cal. Sep. 29, 2021) ........................................................... 6

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
753 F. Supp. 3d 849 (N.D. Cal. 2024) ......................................................................... 6

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
517 F. Supp. 3d 994 (N.D. Cal. 2021) ...................................................................... 8, 9

*McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*,
134 F.R.D. 275 (N.D. Cal. 1991)......................................................................... 2, 4, 5

*New Mexico ex rel. Balderas v. Tiny Lab Prods.*,
457 F. Supp. 3d 1103 (D.N.M. 2020) .......................................................................... 6

*New Mexico ex rel. Balderas v. Tiny Lab Prods.*,
  516 F. Supp. 3d 1293 (D.N.M. 2021) ................................................................................ 6

*Ohio State Bd. Of Pharmacy v. Frantz*,
  51 Ohio St. 3d 143 (1990) ................................................................................................. 8

*Old Chief v. U.S.*,
  519 U.S. 172 (1997) ........................................................................................................ 12

*Pro Home Health Care v. iCabinet for Health & Fam. Servs.*,
  730 S.W.3d 813 (Ky. 2025) ............................................................................................... 8

*Rhode Island v. Lead Indus. Ass'n*,
  2001 WL 345830 (Super. Ct. Apr. 2, 2001) ..................................................................... 8

*Robinson v. Am. Int'l Grp., Inc.*,
  2022 WL 17080132 (C.D. Cal. Sept. 22, 2022) ............................................................. 13

*Sibert v. Gene Sec. Network, Inc.*,
  75 F. Supp. 3d 1108 (N.D. Cal. 2014) ............................................................................ 12

*Sierra Club v. BNSF Ry. Co.*,
  2016 WL 4528452 (W.D. Wash. Aug. 30, 2016) ........................................................... 11

*State Dep't of Servs. for Children, Youth & Their Families v. Cedars Acad.*,
  1989 WL 110531 (De. Ch. Sept. 22, 1989) ...................................................................... 8

*State ex rel. Stovall v. Meneley*,
  271 Kan. 355 (2001) .......................................................................................................... 8

*State ex rel. Weiser v. Ctr. for Excellence in Higher Educ., Inc.*,
  499 P.3d 1081 (Colo. Ct. App. 2021) ............................................................................. 10

*State v. LG Elecs., Inc.*,
  186 Wash. 2d 1 (2016) ....................................................................................................... 8

*State v. Owen*,
  23 N.J. Misc. 123 (1945) ................................................................................................... 8

*U.S. v. Barragan*,
  871 F.3d 689 (9th Cir. 2017) .......................................................................................... 10

*U.S. v. Figueroa-Lopez*,
  125 F.3d 1241 (9th Cir. 1997) ........................................................................................ 11

*U.S. v. Hitt*,
  981 F.2d 422 (9th Cir. 1992) ............................................................................................ 7

*U.S. v. Holmes*,
  163 F.4th 547 (9th Cir. 2025) ......................................................................................... 11

*U.S. v. HVI Cat Canyon, Inc.*,
  2016 WL 11683593 (C.D. Cal. Oct. 26, 2016) ............................................................... 11

v

STATE AGS' MOTION IN LIMINE NO. 1 SEEKING TO EXCLUDE CERTAIN TESTIMONY OF STATE WITNESS
4:22-md-03047-YGR; 4:23-cv-05448-YGR

*U.S. v. Perez,*
   962 F.3d 420 (9th Cir. 2020) ................................................................................................ 10

*Watkins v. U.S. Army,*
   875 F.2d 699, 707 (9th Cir. 1989) .......................................................................................... 8

**Statutes**

15 U.S.C. **§** 6501(2) ...................................................................................................................... 7

15 U.S.C. § 6504(a)(1) ................................................................................................................ 10

**Rules**

Fed. R. Evid. 403 ........................................................................................................................ 10

Fed. R. Evid. 701 ........................................................................................................................ 10

Fed. R. Evid. 702 ........................................................................................................................ 10

**Regulations**

16 C.F.R. § 312.2 .......................................................................................................................... 6

**INTRODUCTION**

Plaintiff State Attorneys General (State AGs) respectfully submit the following motion in limine to exclude certain testimony provided by state witnesses that Meta has identified in its Preliminary Witness List filed on April 24, 2026. *See* Meta's Preliminary Witness List at 11–21, ECF 2992. First, Meta should be barred from relying on testimony obtained in violation of this Court's repeated orders limiting the permissible scope of its 30(b)(6) topics directed to state witnesses. Second, evidence regarding states' social media policies and use is irrelevant to the claims and defenses in this litigation and should be excluded. Third, testimony about the data, research, and science examining the impacts of social media on mental health exceeds the scope of proper lay witness testimony and intrudes upon subject matters reserved for expert witnesses. On these grounds, the State AGs seek to exclude certain testimony from Meta's designations of the 30(b)(6) depositions of Amos Hartston and Nathan Blake[1] and similar testimony of other state witnesses that Meta will later seek to designate.[2]

---

[1] *See* Ex. A, Hartston Dep. 131:18–132:11, 137:21–138:15, 139:6–17, 144:5–12, 148:10–22, 150:9–152:22, 173:13–177:24, 189:8–194:2, 194:3–196:6, 196:8–198:7, 200:17–201:14, 209:12–210:12, 210:14–216:1, 219:6–20, 221:12–222:25, 227:22–230:9, 250:11–251:14, 254:2–255:1, 255:2–23, 256:22–263:8, 263:6–8, 275:8–276:19, 280:2–281:8, 283:3–287:23, 301:5–302:16, 326:14-326:25, 327:8–328:7, 338:9–13, 367:9–368:6, 83:12–384:15; Ex. B, Blake Dep. 96:9–98:15, 134:22–135:8, 140:25–142:6, 143:19–145:15, 147:11–150:2, 152:12–156:9, 178:12–182:10, 182:14–183:13, 190:11–193:16, 195:3–198:25, 209:14–214:20, 217:20– 220:7, 225:1–230:6, 236:7–240:22, 246:12–252:14, 253:14–254:25, 256:10–257:21, 265:7–24, 267:12–25, 271:11–21, 275:7–21, 276:8–21, 277:15–280:9, 303:1–306:20, 309:13–311:8, 314:8–315:8, 317:9–318:1, 319:13–324:12, 330:10–20, 332:17–333:16, 344:1–348:18. The State AGs reserve all rights to make further objections on other grounds or to other designations.

[2] The State AGs file this Motion in Limine after receiving designations for only two witnesses on Meta's Preliminary Witness List, even though Meta has marked 13 out of the 44 state witnesses as "Will Call." *See id.* Meta has indicated it will not fully disclose its designations until after seeing the AGs' case. Based on the limited designations received and Meta's witness descriptions, the State AGs have provided representative examples of testimony they reasonably expect Meta to offer. The State AGs respectfully request that the Court's rulings on the Hartston and Blake deposition designations and these examples define the scope of admissible testimony Meta may later designate, and that the Court enter a deadline by which both Parties must identify the deposition testimony they reasonably anticipate presenting at trial, to ensure a fair and orderly process and avoid surprise at trial.

## I.    BACKGROUND

Meta identified forty-four "State-Specific" witnesses that it may call at trial, including eighteen 30(b)(6) witnesses and twenty-six fact witnesses from nonparty state agencies. *See id.*

First, Meta identified twelve 30(b)(6) witnesses to testify regarding the states' awareness of any evidence that Meta has actual knowledge that it collects data from children under the age of 13 ("U13s"), identification of instances of U13s on Meta's platforms, and/or that Meta takes certain steps to keep U13s off its platforms. *See id.* (identifying Hartston (CA), Black (DE), Han (HI), Estes (ID), Rodriguez (KS), Bryan (MD), Huxoll (NE), Doty (OH), Feretti (OR), Wolfe (PA), Provazza (RI), and Cole (SC)). Second, Meta identifies nine 30(b)(6) witnesses, and six fact witnesses, to speak about state use of and policies on social media platforms. *See id.*  (identifying Estes (ID), Rodriguez (KS), Hicks, Marks, Richards (KY), Bryan (MD), Moylan (ME), Doty (OH), and Price (WV) as 30(b)(6) witnesses and Orrock (CA), Couch, Fletcher, Ginn (KY), Ehling (NJ), and Spaulding (WA) as fact witnesses). Third, Meta identifies four 30(b)(6) witnesses, and fifteen fact witnesses, to speak about data, research, and science on the harms, benefits, or impacts of social media and other facts on youth mental and behavioral health. *See id.* at 12–21 (identifying Blake (CO) Hicks, Marks, and Richards (KY) as 30(b)(6) witnesses and Bolanos, Gallegos, Pate, Siador (CA), Causey, Castillo, Dunn, Stephens (CO), Clark, Fine, Park, Weeter (KY), Mielke, O'Reilly, and Wentz (NJ) as fact witnesses). Meta also identifies five fact witnesses to testify regarding a purported lack of research conducted by the state relating to the mental health impacts of social media. *See id.* at 12–19 (identifying Chan (CA), Barnes (CO), Stack (KY), Mielke, and Schiff (NJ)).

Prior to any 30(b)(6) depositions of state witnesses, the Court struck "contention" topics from Meta's 30(b)(6) notices, noting that it was "more appropriate" for "Meta to take discovery on [the State AGs'] contentions using appropriately framed contention interrogatories, and not contention deposition topics under Rule 30(b)(6)." Discovery Management Order No. 14 at 22, ECF 1646 (citing *McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 134 F.R.D. 275, 286–87 (N.D. Cal. 1991) (noting the potential for such testimony to be unfairly used), *rev'd on other grounds*, 765 F. Supp. 611)); *see also* Order Resolving Joint Letter Brief on State 30(b)(6) Depositions at 4–7, ECF 1679 (rejecting Meta's attempt to reword the

contention topics and again granting the State AGs' objections). The Court prohibited Meta from inquiring about six such topics. *See id.* at 4–5.[3]

Undeterred, Meta nevertheless asked contention questions on these topics over the State AGs' objections. *See, e.g.*, Ex. A, Hartston Dep. 74:12–76:13, 98:12–25, 103:25–105:8, 107:2–15, 111:12–20, 126:16–127:17; Ex. B, Blake Dep. 100:22–105:6, 113:19–114:19, 128:3–129:5, 288:21–289:20, 300:25–301:7; Ex. C, Han Dep. 47:2–17; Ex. D, Estes Dep. 47:1–6; Ex. E, Rodriguez 284:13–285:14; Ex. F, Richards Dep. 94:23–97:13, 104:8–105:23, 234:4–235:5; Ex. G, Bryan Dep. 57:1–13; Ex. H, Huxoll Dep. 353:15–356:16; Ex. I, Doty Dep. 40:25–41:12, 97:7–15; Ex. J, Feretti Dep. 176:19–177:8, 179:11–180:25, 196:1–197:10; Ex. K, Wolfe Dep. 108:4–19, 113:20–114:10; Ex. L, Provazza Dep. 65:24–66:9; Ex. M, Cole Dep. 101:25–102:19. Now, Meta tries its luck again by seeking to introduce 30(b)(6) deposition testimony on these very topics, plainly contravening the Court's orders on the permissible scope of 30(b)(6) testimony. *Compare* ECF 1679 at 4–5 *with* ECF 2992 at 11–21.

The parties intend to present extensive expert testimony at trial regarding what research, data, and scientific evidence show regarding the relationship between social media and mental health, as well as other contributing factors. *See* ECF 2992 at 7–10 (identifying Auerbach, Bartlett, Baiocchi, Berman, Gotlib, Hendrix, Honaker, Platt, and Shear as expert witnesses); *see also* State AGs Updated Preliminary Witness List at 7–8, ECF 2964 (same for Hale, Prinstein, Twenge, and Zicherman). Unlike the designated experts, none of the "State-Specific" witnesses Meta lists have been identified as experts on these topics, and many testified that they have not conducted, published, or even reviewed research on these issues. *E.g.*, Ex. N, Dunn Dep. 82:22–84:1; Ex. O, Bolanos Dep. 29:4–34:12, 60:2–61:22, 66:10–69:17. Nevertheless, Meta intends to use numerous lay witnesses to offer testimony on specialized subject matters. ECF 2992 11–21.

---

[3] These topics cover testimony that Meta now intends to introduce at trial, including "[t]he factual basis for the State's belief that" (1) "Defendants engaged in unfair, deceptive, or unconscionable practices during the Relevant Period"; (2) "the State or State residents suffered harm related to the use of Social Media Platforms by individuals under the age of 18 during the Relevant Period"; (3) "individual(s) under the age of 13 used Instagram or Facebook during the Relevant Period, including but not limited to any assessment or evaluation by the State of such use"; and (4) "the State or State residents have suffered harm related to the use of Instagram or Facebook by any individual(s) under the age of 13 during the Relevant period, including but not limited to any assessment or evaluation of such harm by the State." *Id.*

## II.   ARGUMENT

### A.  Meta Should Not Be Permitted to Use Testimony on Topics Prohibited by this Court's Discovery Orders

Contention testimony Meta elicited in violation of this Court's Orders over the State AGs' objections is inadmissible at trial. This Court has consistently observed the "unreliable" and prejudicial potential of using 30(b)(6) depositions in the way Meta intends here: "[N]o one human being can be expected to set forth, especially orally in deposition, a fully reliable and sufficiently complete account of all the bases for the contentions made and positions taken by" the State AGs in their consumer protection and COPPA cases. *See McCormick-Morgan*, 134 F.R.D. at 286. This is particularly true in complicated cases like this one, where "contentions do not consist exclusively of relatively straightforward facts or evidence." *Id.* This Court previously agreed by entirely striking or limiting contention topics. *See* ECF No. 1646 at 22; ECF 1679 at 4-5. Such risks are amplified when, as here, a 30(b)(6) witness is asked about topics that ultimately were excluded from the deposition notice and for which a witness likely did not prepare.

Meta's proposed use of 30(b)(6) testimony at trial violates the Court's holdings. Starting with the State AGs' COPPA claims, Meta seeks to admit 30(b)(6) witness testimony regarding states' awareness of evidence showing that Meta had actual knowledge of U13 data collection; the states' identified instances of U13s on Meta's platforms; and/or the states' understanding of what conduct Meta has undertaken to keep U13s off of its platforms. ECF 2992 at 11–21. In addition to the fact that the Court prohibited Meta from asking about these topics, *see* ECF No. 1646 at 22; ECF 1679 at 4-5, none of them are "relatively straightforward." *McCormick-Morgan*, 134 F.R.D. at 286. To be able to speak to these topics—i.e. the entire predicate for the State AGs' legal positions—would have required an enormous amount of information and recall that is not reasonable for "one human being" to set forth in oral testimony. *Id*. Instead, the State AGs will present the bases for their claims at trial through appropriate documentary evidence and witness testimony brick-by-brick as in any trial. As Judge Kang recognized in his discovery orders, interrogatories were the appropriate mechanism through which to test the State AGs' contentions, *see* ECF 1679 at 3–4, and, indeed, the State AGs identified extensive evidence of Meta's knowledge of U13s on its platforms and the insufficiency of efforts to keep U13s off of its platforms in their responses

to Meta's interrogatories. *See* Ex. P, State AGs' Resp. to Meta's 2d Interrog., Dec. 23, 2024; Ex. Q, State AGs' 2d Supp. Resp. to Meta's 1st Interrog., Sept. 17, 2025. It is unreasonable to expect a single person to provide the same level of detailed information in verbal testimony, on the spot in a 30(b)(6) deposition, and Meta's purpose for using these witnesses as the vehicle for this information would serve only to embarrass the Parties and witnesses at trial. *See McCormick-Morgan,* 134 F.R.D. at 286.

The same is true as it concerns the State AGs' consumer protection claims, where Judge Kang struck topics Meta proposed relating to the factual basis for the State AGs' belief that Meta has made misrepresentations; that Meta engaged in unfair, deceptive, or unconscionable practices; and that states' residents suffered harm related to the use of social media platforms by minors, including any assessment or evaluation by the state of such harm. *See* ECF 1679 at 3–4. Meta should not be able to use 30(b)(6) testimony that essentially constituted an improper memory test regarding the entirety of the legal and evidentiary basis for the State AGs' consumer protection claims, especially in a complicated case such as this. *See McCormick-Morgan*, 134 F.R.D. at 286; *see also* Ex. R, State AGs' 3rd Supp. Resp. to Meta' 1st Interrog., Oct. 6, 2025 at No. 4; Ex. S, State AGs' 4th Supp. Resp. to Meta's 1st Interrog., Jan. 7, 2026 at No.3; Ex. T, State AGs' Resp. to Meta's 1st Interrog., June 3, 2024 at No. 3.

**B. Testimony Regarding States' Own Programs, Policies and Use of Social Media Is Irrelevant to Any Claim or Defense at Issue**

In its Preliminary Witness List, Meta has identified multiple fact and 30(b)(6) witnesses to introduce testimony regarding states' "use" of social media or states' "policies" with respect to social media or mental health. *See* ECF 2992 at 11–21 (identifying Estes (ID), Rodriguez (KS), Hicks, Marks, Richards (KY), Bryan (MD), Moylan (ME), Doty (OH), and Price (WV) as 30(b)(6) witnesses and Orrock (CA), Couch, Fletcher, Ginn (KY), Ehling (NJ), and Spaulding (WA)[4] as fact witnesses).

This testimony, whether from fact or 30(b)(6) witnesses, however, is irrelevant to the claims and defenses in this case. The states' social media policies and use have no bearing on whether Meta's conduct was deceptive with respect to the safety of its platforms, whether Meta engaged in unfair conduct with respect to features at issue in the states' unfairness claims, or whether Meta violated COPPA by illegally

---

[4] Meta designated Director Spaulding to testify regarding Washington "State's use of social media." ECF 2992 at 20. Washington State, however, employs over 70,000 people; Director Spaulding was not a 30(b)(6) witness for Washington State; and he spoke only to his agency's use of social media and so is not a proper witness to speak to the entire state's social media use. Ex. U, Spaulding Dep. Subpoena.

collecting and using the data of U13s on its platforms. Nor is information about state policies or use of social media relevant to any defense Meta may raise against the State AGs acting in their law enforcement capacities. At the very least, even if this evidence is marginally probative, it is unduly prejudicial, confusing, and wasteful of trial time.

First, no state policy or state use of Meta's platforms is of any consequence for the states' COPPA claim. That the Court allowed Meta to examine 30(b)(6) designees on these topics is of no moment because "relevance for purposes of discovery is broader than relevancy for purposes of trial." Order Resolving Dispute re Meta's Amended 30(b)(6) Notices to State AGs at 2, ECF 1964 (quoting *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 2021 WL 10282215, at *4 (N.D. Cal. Sep. 29, 2021)). When questioned before the depositions about how any state's social media policy, or any state's, state agency's, or single public employee's use of social media might be relevant to this claim or any defense thereto, Meta's only response was to refer to whether Meta's platforms are "child-directed" and a "balancing of the equities" analysis at the remedies stage. Ex. V, March 20, 2025 DMC Tr. at 41–46, 54–56.

Meta has never explained how state witness testimony on this topic is relevant to remedies, and, as this Court previously held, whether a web platform is "directed" or "targeted" to children depends primarily on the site's content: more specifically, its subject matter, visual content, use of animated characters or child-oriented activities and incentives, music or other audio content, age of models, presence of child celebrities or celebrities who appeal to children, language or other characteristics of the Web site or online service, as well as whether advertising promoting or appearing on the Web site or online service is directed to children. *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 876 (N.D. Cal. 2024) ("ECF 1214") (citing 16 C.F.R. § 312.2). "[C]ompetent and reliable empirical evidence regarding audience composition, and evidence regarding the intended audience" may also be considered. *Id.*; *see also New Mexico ex rel. Balderas v. Tiny Lab Prods.*, 457 F. Supp. 3d 1103, 1114 (D.N.M. 2020) ("[t]he factors identified in the COPPA Rule for evaluating whether an app is directed or targeted to children…focus on *the substance of the app itself.*"), on reconsideration, 516 F. Supp. 3d 1293 (D.N.M. 2021) (emphasis added).

The relevant focus is thus on the substance of Meta's platforms and their audience composition. Even if the State AGs' own use of social media represents a molecule in a drop of water in the bucket of

Meta's vast audience, "where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury." *U.S. v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992). Moreover, to the State AGs' knowledge, none of the proposed witnesses offered any testimony indicating that their states had policies addressing whether Meta's platforms were directed at children.

Further, the probative value of testimony about how certain public agencies or employees may have used Meta's platforms to direct content at adults or mixed audiences is low to none, and the potential prejudice to the public interest by including this marginally relevant and confusing evidence is great. *See* March 20, 2025 DMC Tr. at 51; *see also* Ex. W, Spaulding Dep. at 55:4–56:23 (in court statements and deposition transcript showing Meta intends to ask Washington State's Board of Education Director about their agency's use of a cartoon seal mascot on an Instagram account directed to parents and educators for the low probative purpose of asserting cartoons are not always child-directed content);[5] Ex. B, Blake Dep. 178:12–182:10 (post of a photo of the Governor with Sesame Street characters designated for trial). On the other hand, the risk of prejudice is high by tacitly suggesting to the jury that Meta's conduct cannot be unlawful if public entities or employees use Meta's platforms; the risk of confusing the issues is high if Meta turns the focus to the propriety of state agency practices and policies; and the risk of wasting trial time going over various agency policies and discrete state uses of social media is high because of the lengthy and cumulative nature of the testimony. *See* Fed. R. Evid. 403; *see also* Ex. A, Hartston Dep. 137:21–138:15, 139:6–17, 144:5–12, 148:10–22, 150:9–152:22; Ex. B, Blake Dep. 143:19–145:15, 178:12–182:10.

---

[5] Meta's questioning of Washington's State Board of Education (SBE) Director and similar witnesses suggests Meta intends to imply that the states have violated COPPA, even though COPPA does not apply to state governments. Any insinuation that the states could be out of COPPA compliance is unfounded, prejudicial, and irrelevant. *See* Ex. W, Spaulding Dep. at 56:16–57:8 (asking about Instagram posts featuring children and whether SBE has a COPPA policy or directs content to children); Ex. G, Bryan Dep. at 48:1–52:13, 61:7–11 (asking about the audience for Maryland agency Facebook posts and whether agency ever did a COPPA compliance audit). COPPA applies not to public entities, but to operators of "commercial websites" directed to children under 13 or that have knowledge they are collecting, using, or disclosing personal information from children under 13 for a commercial purpose. *See* 15 U.S.C. § 6501(2); *see also* Federal Trade Commission, *Complying with COPPA: Frequently Asked Questions*, https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions (last visited June 8, 2026).

STATE AGS' MOTION IN LIMINE NO. 1 SEEKING TO EXCLUDE CERTAIN TESTIMONY OF STATE WITNESS
4:22-md-03047-YGR; 4:23-cv-05448-YGR

Second, at this late stage, Meta has never identified any defense to which this state testimony is actually relevant. Meta may try to invoke laches, estoppel, unclean hands, contributory negligence, or other farfetched theories to justify introducing testimony about states' social media use or policies. But laches cannot bar a state government from enforcing its laws when acting in its sovereign capacity to protect the public interest. *See, e.g., Illinois v. Kentucky*, 500 U.S. 380, 388 (1991); *State Dep't of Servs. for Children, Youth & Their Families v. Cedars Acad.*, 1989 WL 110531, at *6 (De. Ch. Sept. 22, 1989); *Galt v. Waianhuea*, 16 Haw. 652, 657 (1905); *Bannock Cnty v. Bell*, 8 Idaho 1, 8 (1901); *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 389 (2001); *Pro Home Health Care v. iCabinet for Health & Fam. Servs.,* 730 S.W.3d 813, 818 (Ky. 2025), reh'g denied (Feb 19, 2026); *A. H. Benoit & Co. v. Johnson*, 160 Me. 201, 207–08 (1964); *Central Collection v. DLD*, 112 Md. App. 502, 508 (1996); *Crow v. Neb. Dep't of Revenue*, 316 Neb. 154, 170 (2024); *State v. Owen*, 23 N.J. Misc. 123, 130 (1945); *Ohio State Bd. Of Pharmacy v. Frantz*, 51 Ohio St. 3d 143, 146 (1990); *Corvalis Sand & Gravel Co. v. State Land Bd.*, 250 Or. 319, 331–32 (1968); *Rhode Island v. Lead Indus. Ass'n*, 2001 WL 345830 at *12 (Super. Ct. Apr. 2, 2001); *Farrow v. City Council of Charleston*, 169 S.C. 373, 383 (1933); *State v. LG Elecs., Inc.*, 186 Wash. 2d 1, 13 (2016); *Beckley v. Wolford*, 104 W. Va. 391, 393 (1927).

Regarding estoppel, the Ninth Circuit has held that estoppel may only be asserted against the government upon a showing that the government engaged in "affirmative misconduct" causing "serious injustice" and that "the public's interest will not suffer undue damage." *Watkins v. U.S. Army*, 875 F.2d 699, 707 (9th Cir. 1989). Not only does Meta have no evidence of affirmative misconduct or serious injustice, if estoppel were based on testimony from individual state employees or 30(b)(6) witnesses regarding employees' or a government division's use or policies on social media, the public interest will suffer undue damage.[6] *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 517 F. Supp. 3d 994, 999 (N.D. Cal. 2021) ("When the government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience

---

[6] As one example, Meta designated only a single Washington fact witness—Randall Spaulding—who was deposed solely in his personal capacity and serves as the Executive Director of the Washington Board of Education. Yet Meta broadly lists him as a witness on "among other things, the State's use of social media." ECF 2992 at 20. Similarly, other witnesses expressly limited their testimony to a single agency. *See, e.g.,* Ex. G, Bryan Dep. at 19:11–19:16 (Meta counsel affirming his understanding that Ms. Bryan's answers would only be on behalf of her agency, the Maryland Center for School Safety).

to the rule of law is undermined.") (quoting *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 59–60 (1984).

Even if a defendant could raise an unclean hands defense in response to government enforcement actions, Meta has failed to plausibly allege the elements of that defense here. *See In re Volkswagen*, 517 F. Supp. at 999–1000. The State AGs did not "unreasonably delay" in bringing this suit, and Meta has failed to identify any "misconduct" indicating that the State AGs have not acted in good faith in "immediate and necessary relation to the equity" the State AGs seek, as is required to assert this defense. *See id*. at 998–1000.

Meta also seeks to introduce evidence about states' social media policies, programs, and usage to highlight alleged benefits of its platforms. But even if some states have used social media effectively, these generic and broad "benefits" bear no connection to any element of the State AGs' specific deception, unfairness, or COPPA claims and are therefore irrelevant. *See id.*; *see also*, *e.g.*, Ex. A, Hartston Dep. 173:13–177:24; 189:8–194:2; 196:8–198:7; 200:17–201:14; 210:14–216:1; 219:6–20; 221:12–222:25, 227:22–230:9, 250:11–251:14, 327:8–328:7; Ex. B, Blake Dep. 134:22–135:8, 140:25–142:6, 147:11–150:2. 152:12–156:9, 182:14–183:13, 190:11–193:16, 195:3–198:25, 253:14–254:25, 256:10–257:21, 275:7–21, 276:8–20, 277:15–280:9, 303:1–306:20, 317:9–318:1, 319:13–324:12, 330:10–20, 332:17–333:16.

Meta seeks to introduce testimony regarding the states' programs, research, and efforts to address other factors affecting youth mental health—such as gun violence, climate change, or drug abuse—to imply that these issues are more significant than, or alternate causes of, the mental health harms linked to social media. Meta may also use this testimony to suggest that the states themselves bear responsibility for those harms or that the harms of social media are less serious because of the states' programs, research, and efforts in unrelated areas. *See*, *e.g.*, Ex. A, Hartston Dep. 194:3–196:6, 209:12–210:12; 255:2–23, 275:8–276:19; 280:2–281:8; 283:3–287:23; 301:5–302:16,326:14-326:25, 338:9–13, 367:9–368:6; Ex. B, Blake Dep. 309:13–311:8, 314:8–315:8; 344:1–348:18.  But whether other factors like gun violence, climate change, or drug abuse also negatively impact mental health is of no consequence to whether Meta engaged in deceptive conduct about the safety of its platforms, whether four specific platform features were unfair business practices, or whether U13s were on Meta's platforms in violation of COPPA.

Superseding causation, contributory negligence, and other defenses sounding in tort are categorically not applicable to COPPA or consumer protection actions. *See* 15 U.S.C. § 6504(a)(1); *State ex rel. Weiser v. Ctr. for Excellence in Higher Educ., Inc.*, 499 P.3d 1081, 1089 (Colo. Ct. App. 2021), *aff'd in part, rev'd in part*, 529 P.3d 599 (Colo. 2023) ("[A]n Attorney General's action [under state consumer protection law] requires no showing of either actual injury or causation."). Thus, any other potential factors that negatively impact mental health are of no consequence in this case. *See* Fed. R. Evid. 403.

### C. Rule 701 Precludes Meta from Introducing Lay Witness Testimony on What Research, Data, or Science Say Regarding Social Media's Impact on Mental Health

Meta has improperly identified at least fourteen state fact witnesses and four 30(b)(6) witnesses to address psychological and epidemiological research and data pertaining to the impact of a wide host of factors on mental health, including but not limited to social media, drug abuse, natural disasters, gun violence, stigma, and numerous other factors. *See* ECF 2992 at 11–21 (identifying Siador, Bolanos, Gallegos, Pate (CA); Castillo, Causey, Dunn, Stephens (CO); Clark, Park, Fletcher, Weeter (KY); Ehling, O'Reilly, and Wentz (NJ) as fact witnesses and Blake (CO); Hicks, Marks, and Richards (KY) as 30(b)(6) witnesses). Both Parties, however, have devoted extensive resources to debating these issues in expert discovery, with at least thirteen expert witnesses being proposed to opine at trial on the scientific support or lack thereof regarding social media platforms' impact—good or bad—on mental health. *See* ECF 2992 at 7–11; ECF 2964 at 7–8. Meta's effort to rely on non-experts only obscures what the research and science actually show, offering soundbites from state witnesses who were never designated as experts, lack the qualifications to address these topics, and do not have the necessary facts or data to provide reliable testimony. *See* Fed. R. Evid. 702.

Lay witnesses are permitted to offer opinion testimony when it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. A lay witness's testimony improperly intrudes into the scope of expert testimony when it is based on "technical or specialized knowledge." *U.S. v. Perez*, 962 F.3d 420, 436-37 (9th Cir. 2020) (quoting *U.S. v. Barragan*, 871 F.3d 689, 704 (9th Cir. 2017)). "The fact that a witness personally observes a matter does not take the witness's opinion about the matter outside Rule 702's scope

if that opinion is the product of '*specialized* knowledge.'" *U.S. v. Holmes*, 163 F.4th 547, 560 (9th Cir. 2025) (quoting *U.S. v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (9th Cir. 1997)). Thus, "there is no 'on-the-job' exception to Rule 702," even if a witness is "percipient." *See id.* (holding that "testimony based on the . . . training, and experience of the witness" is properly characterized as expert testimony under Rule 702).

Meta seeks to use testimony from certain employees of nonparty agencies who have scientific, medical, or public health experience to opine on research in a manner that relies upon those witnesses' "specialized knowledge," training, or experience in order to rebut assertions the Parties have extensively addressed in expert discovery, *i.e.*, whether social media does or does not cause harm. *See, e.g.*, ECF 2992 at 11–21; Ex. O, Bolanos Dep. 60:2–23; 61:10–16; Ex. X, Castillo Dep. 20:23–21:17, 25:16–28:12. But Meta has not designated any state witnesses to testify as experts in this case, and even if they might otherwise possess commendable education and experience, their testimony on issues of causation as lay witnesses is therefore inadmissible. *See Figueroa-Lopez*, 125 F.3d at 1246.

Meta also seeks to admit testimony from multiple state witnesses who lack any education, training or experience that would qualify them to speak on issues of causation, even if they had been submitted as experts under Rule 702. These witnesses, for example, expressly stated that they lack the requisite expertise to address mental health issues or contributing factors. *See, e.g.*, Ex. A, Hartston Dep. 287:14–23, 317:15-318:24, 319:6–8; Ex. B, Blake Dep. 19:14–20:17; 217:20–220:7; Ex. F, Richards 26:13–16. Similarly, questioning 30(b)(6) witnesses about the basis for the State AGs' deception and unfairness claims, and what research the states have to support allegations relating to the harms of social media, are not only improper contention topics stricken by this Court, *see* ECF 1679 at 4–7, but they also require a lay witness to interpret or explain scientific conclusions, data, and other evidence more suited for expert testimony. *See U.S. v. HVI Cat Canyon, Inc.*, 2016 WL 11683593, at *7, *9 (C.D. Cal. Oct. 26, 2016); *Sierra Club v. BNSF Ry. Co.*, 2016 WL 4528452, at *3 (W.D. Wash. Aug. 30, 2016). Yet Meta seeks to do exactly that. *See, e.g.*, Ex. A, Hartston Dep. 131:18–132:11, 256:22–263:8; Ex. B, Blake Dep. 209:14–214:20, 217:20–220:7, 225:1–230:6, 236:7–240:22, 246:12–252:14; 265:7–24, 267:12–25, 271:11–21; Ex. F, Richards Dep. 224:7–228:16. "It is well settled that only expert testimony will be allowed on technical questions of causation," *Frisone v. U.S.*, 270 F.2d 401, 403 (9th Cir. 1959), and Meta cannot use

Rule 701 to dress a lay witness in the clothes of an expert to avoid the requirements of Rule 702. *See Blockchain Innovation, LLC v. Franklin Resources, Inc.*, 2025 WL 1002798, at \*11 (N.D. Cal. Apr. 3, 2025) (citing Fed. R. Evid. 701, adv. Committee note (2000)).

Moreover, testimony from these lay witnesses will be prejudicial to the State AGs, where the parties have designated at least thirteen witnesses to offer expert testimony based on their training, background, and familiarity with the science and facts relevant to this litigation. In applying Rule 403, courts evaluate "the degrees of probative value and unfair prejudice not only for the item in question but for any actually available substitutes as well." *Old Chief v. U.S.*, 519 U.S. 172, 182–83 (1997). "If an alternative were found to have substantially the same or greater probative value but a lower danger of unfair prejudice, sound judicial discretion would discount the value of the item first offered and exclude it if its discounted probative value were substantially outweighed by unfairly prejudicial risk." *Id.* Because alternate causation issues are irrelevant to the COPPA and consumer protection claims at issue, as discussed above, the risk of unfair prejudice from this testimony is especially high—particularly where far more appropriate evidence on these topics is available through expert witness testimony.

Accordingly, Meta should not be permitted to use lay witness testimony at trial—whether from fact witnesses or 30(b)(6) designees—as a vehicle to introduce specialized knowledge or expertise on what research and science demonstrate regarding the harms or benefits of social media on mental health.[7]

---

[7] Meta may argue that the State AGs intend to use Meta's own employees in a similar fashion, but that assertion is incorrect. The State AGs do not intend to put forward Meta's employees or former employees to opine on overarching conclusions with respect to the scientific consensus or state of the literature on the impact of social media on mental health. Instead, Meta's employees have firsthand knowledge about the company's conduct, what Meta knew or did not know, and how that information either contrasts with Meta's deceptive representations or was handled with respect to unfair business practices relating to four specific features at issue. "Where . . . a witness is testifying as to institutional operations and practices based on personal knowledge that the witness has accrued over the course of several years of employment, the witness is providing lay testimony not subject to Rule 702." *Sibert v. Gene Sec. Network*, *Inc.*, 75 F. Supp. 3d 1108, 1114 (N.D. Cal. 2014). To the extent any internal Meta documents are relevant to whether research and science support social media impacts mental health, the Parties' experts had opportunity to (and did) consider the relevance of those documents on their scientific conclusions. Tellingly, Meta does not appear to have provided any of its general causation experts with state documents or testimony, underscoring the irrelevance of this information to the scientific issues in this case.

On the flip side of this coin, Meta has also identified at least five fact witnesses from whom it intends to offer testimony to the effect that states are not aware or have not conducted research on the impact of social media on mental health. *See* ECF 2992 at 11–21 (identifying Chan (CA), Barnes (CO), Stack (KY), Mielke and Schiff (NJ)). Many other witnesses who Meta identified to speak on research also testified to the same effect. *See*, *e.g.*, Ex. A, Hartston Dep. 254:2–255:1, 263:6–8, 287:21–23, 383:12–384:15; Ex. B, Blake Dep. 96:9–98:15; Ex. X, Castillo Dep. 141:22–143:13. Meta's reliance on testimony about states' purported lack of research on the harms of social media is simply an illogical appeal to ignorance, suggesting that the absence of evidence from certain state witnesses somehow proves the states lack support for demonstrating the mental health harms caused by Meta's platforms. This line of testimony not only intrudes on the domain of expert analysis regarding the state of scientific research, but also risks confusing and prejudicing the fact finder, especially where both Parties have thoroughly addressed these issues in expert discovery and interrogatories. *See Robinson v. Am. Int'l Grp., Inc.*, 2022 WL 17080132, at *15 (C.D. Cal. Sept. 22, 2022) ("It is generally difficult to draw conclusions from the absence of evidence, and it does not seem that an absence of evidence could meet one party's burden or defeat an opposing party's burden."). Accordingly, Meta's attempts to introduce testimony in this fashion should be rejected.

## CONCLUSION

For the reasons set forth above, the State AGs respectfully request that this Court limit the scope of testimony which Meta may designate from state witness depositions. Meta should not be permitted to introduce testimony obtained in violation of this Court's discovery Orders limiting the scope of 30(b)(6) topics; it should not introduce irrelevant and prejudicial evidence regarding states' social media use, programs, and policies; and it should not circumvent Rule 702 by offering lay witness testimony regarding scientific research or data.

DATED: 06/09/2026

Respectfully submitted,

**PHILIP J. WEISER**
Attorney General
State of Colorado

/s/ Krista Batchelder
Jason Slothouber, CO Reg. No. 43496, pro hac vice
Chief Trial Counsel
Krista Batchelder, CO Reg. No. 45066, pro hac vice
Deputy Solicitor General
Lauren M. Dickey, CO Reg. No. 45773
First Assistant Attorney General
Elizabeth Orem, CO Reg. No. 58309
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 9th Floor
Denver, CO 80203
Phone: (720) 508-6651
Krista.Batchelder@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel.*
*Philip J. Weiser, Attorney General*

**ROB BONTA**
Attorney General
State of California

/s/ Megan O'Neill
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Emily Kalanithi (SBN 256972)
Supervising Deputy Attorneys General
Nayha Arora (CA SBN 350467)
David Beglin (CA SBN 356401)
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer
(CA SBN 336428)
Brendan Ruddy (CA SBN 297896)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Megan.oneill@doj.ca.gov

*Attorneys for Plaintiff the People of the State of*
*California*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

/s/ Zachary Richards
Philip Heleringer (KY Bar No. 96748),
*pro hac vice*
J. Christian Lewis (KY Bar No. 87109),
Zachary Richards (KY Bar No. 99209),
Daniel I. Keiser (KY Bar No. 100264),
Matthew Cocanougher (KY Bar No. 94292),
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
Philip.Heleringer@ky.gov
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of*
*Kentucky*

**JENNIFER DAVENPORT**
Attorney General
State of New Jersey

/s/ Mandy Wang
Kashif T. Chand (NJ Bar No. 016752008),
pro hac vice
Assistant Attorney General
Thomas Huynh (NJ Bar No. 200942017),
*Pro hac vice*
Assistant Section Chief, Deputy Attorney
General
Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*Pro hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101

STATE AGS' MOTION IN LIMINE NO. 1 SEEKING TO EXCLUDE CERTAIN TESTIMONY OF STATE WITNESS
4:22-md-03047-YGR; 4:23-cv-05448-YGR

Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov

*Attorney for Plaintiffs Jennifer Davenport,
Attorney General for the State of New Jersey,
and Jeremy E. Hollander, Acting Director of
the New Jersey Division of Consumer Affairs*

STATE AGS' MOTION IN LIMINE NO. 1 SEEKING TO EXCLUDE CERTAIN TESTIMONY OF STATE WITNESS
4:22-md-03047-YGR; 4:23-CV-05448-YGR

# SIGNATURE CERTIFICATION

Under Civ. L.R. 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in this filing's content and have authorized this filing.

DATED: 06/09/2026

/s/ *Zachary Richards*
Zachary Richards

*Attorney for Plaintiff the Commonwealth*
*of Kentucky*

STATE AGS' MOTION IN LIMINE NO. 1 SEEKING TO EXCLUDE CERTAIN TESTIMONY OF STATE WITNESS
4:22-md-03047-YGR; 4:23-cv-05448-YGR