# Exhibit V

**Pages 1 - 131**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Peter H. Kang, Magistrate Judge

IN RE:   SOCIAL MEDIA                )
ADOLESCENT ADDICTION/PERSONAL  )
INJURY PRODUCTS LIABILITY      )
LITIGATION                     )
                               )  **NO. 22-MD-03047 YGR (PHK)**
_____)

                              San Francisco, California
                              Thursday, March 20, 2025


**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiffs:
                    LIEFF, CABRASER, HEIMANN
                      & BERNSTEIN LLP
                    275 Battery Street, 29th Floor
                    San Francisco, California 94111
               BY:  **LEXI J. HAZAM, ATTORNEY AT LAW**
                    **PATRICK I. ANDREWS, ATTORNEY AT LAW**

                    MOTLEY RICE LLC
                    401 9th Street NW, Suite 630
                    Washington, D.C. 20004
               BY:  **PREVIN WARREN, ATTORNEY AT LAW**

                    SIMMONS HANLY CONROY LLP
                    One Court Street
                    Alton, Illinois 62002
               BY:  **ELLYN HURD**


        **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**


REPORTED BY:  Ana Dub, RDR, RMR, CRR, CCRR, CRG, CCG
              CSR No. 7445, Official United States Reporter

it's the best way, but at least an exemplar of someone who did lay a proper foundation.  Okay?

**MR. DRAKE:**  Okay.

**MS. SIMONSEN:**  Thank you, Your Honor.

**THE COURT:**  Okay.  So it's on you two to come up with a joint proposed order on this letter brief.  Okay?

**MS. SIMONSEN:**  Will do.

**MR. DRAKE:**  Okay.  Thank you.

**THE COURT:**  Who -- the next one is going to be -- let's do Docket 1770, Meta's 30(b)(6) notice amended to the COPPA states.

**MR. YEUNG:**  Christopher Yeung, Covington, for Meta.

**THE COURT:**  All right.  So, as -- okay.  So I think, actually, the easiest way to go through this, do you have the depo notice in front of you?

**MR. YEUNG:**  I do.

**THE COURT:**  All right.  So I've read the briefing, and I'm going to kind of tackle the issues topic by topic because that appears to be kind of the way people have briefed it.

So for Topic Number 1, policies, procedures, and practices, blah-blah-blah, this phrase "including without limitation to employees of the state and its agencies," I'm going to strike that.  Okay?

I think we made very clear at the last hearing that when Meta is taking a 30(b)(6) of the states, they're taking them as

depositions of the state as an entity and not drilling down to each individual employee and each individual agency.  In fact, your co-counsel, I think, told me if you wanted to take depositions of the agencies, you would.  All right?  So you're taking the deposition of the state, so it does not include without limitation employees and agencies.  So I think that addresses a lot of your overbreadth problems with Topic 1.

And the -- and I forget.  Is "social media platforms," as a defined term, limited to the defendants in this case?  Because you changed it in Topic 2.  So I just want to make sure that I understand that it's limited to the defendants in this case.

**MS. KORY:**  Alex Corey, Washington State Attorney General's Office.

It is not, Your Honor.

And if I may, I think Topic 1 really is not just overbroad here.  I think we're looking at some pretty serious relevance issues.  And I know Your Honor is trying to go through topic by topic here, but the threshold issue on all of these topics is really relevance.

And what we're looking at is the COPPA statute only.  This is not a consumer protection case that has overarching issues.  We're looking at COPPA and the affirmative defenses here.  Meta has not stated any particular affirmative defense that relates to COPPA, and that's the problem here.

COPPA is a very simple statute, and there's nothing in the COPPA statute or case law about what the states do.  The states' policies about social media have nothing -- no bearing on COPPA.  The only thing that matters for a COPPA violation is whether Meta is subject to COPPA and whether Meta violated COPPA.  What the states' policies are have no bearing on whether Meta violated COPPA.

THE COURT:  In the interest of time, I've read all -- I understand the argument from the briefing.  I'm sure Mr. Yeung will correct me.

As I understand, Meta's argued that this is relevant because the states got a ruling from Judge Gonzalez Rogers that third-party uses of the platforms can be relevant as to whether or not the platforms are directed to children or not.  Right?

MR. YEUNG:  Correct.  And they're taking discovery of third-party entities about targeted audiences.

THE COURT:  Right.  And their argument that they briefed -- right? -- in response to your relevance argument is that if the states -- I mean, it may or may not happen; but they want to take the discovery to find out if the states have a practice and policy officially of only using Facebook to send communications to adults -- right? -- only.

And there's some -- I'm just hypothetically speaking.  I don't know that to be true.  I'm just hypothetic.  But I assume in the best case, that's what Meta's looking for, is something

that shows that the states themselves, as a third-party user, ostensibly, for these purposes, of the platform, that you do only direct it at adults and not to children, which would tend to undercut the argument that they are directed to children. That's their relevance argument.

**MS. KORY:** I mean, even if that's true or not true, I don't understand how that undercuts the argument that Meta would be child directed or not. The states are just, you know, a collection of many millions of users on the platform. Whether we have, you know, some sort of policy that says that there may or may not be posts or users, you know, using the platforms in a particular way does not render Meta child directed or not.

**THE COURT:** But, again, I mean, he just said it. Right? I know he's going to say it again.

The states are -- part of the way you're trying to establish that they're directed to children is by taking individual discovery from individual third-party users of the platform to see whether their content is directed to children or not.

And so Meta's rebuttal -- this is all in the briefing. The rebuttal to all that is: Well, if the state plaintiffs are allowed to try to establish their case by showing that a few individual exemplary users are directed to children, then they should be able to take discovery from the plaintiffs -- in this

case, the states -- and other third parties, I assume, to show that their content is not directed to children, and then get into a fight over the impact of all that.

I mean, that's -- as I understand it -- tell me if I'm wrong.  As I understand, that's generally your argument.

**MR. YEUNG:**  That's right.

**THE COURT:**  So, I mean, within the scope of discovery relevance -- right?  I'm not saying they're right.  But within the scope of discovery relevance, especially because Judge Gonzalez Rogers ruled on the motion to dismiss in your favor, that you could use third-party content as a way to show whether or not it's directed to children, I don't see how I foreclose them from this discovery.

**MS. KORY:**  The purpose of that ruling and the purpose of that particular rule is to demonstrate that the third-party content shows that Meta is child directed.  I mean, the fact that the states, you know, post content that may be adult directed does not render Meta not child directed.

**THE COURT:**  But that's the ultimate question, isn't it?  Essentially, you're -- you, the state COPPA plaintiffs, are going to put in a bunch of evidence arguing just that.  Right?  Look at all these content providers on Meta's platform that are directed to children.  And there's a lot of content directed to children.  We know all the statutory factors.  Right?  And one of the factors is the intended audience.

Right?  And you're going to say, here, for these exemplary content providers, the intended audience is children.

I mean, I'm not saying they're right, but they're going to -- they're telling me they're going to argue that:  Well, okay, but the states are cherry-picking, and here are -- you know, here's a parade of a million other users that are not.  And so overall, when you look at the platform overall, we are not directed to children because you've got to look at the content overall.

I don't know the answer ultimately to the -- who's going to win or lose on that fight.  But in terms of the discovery relevance, I don't -- I think -- I guess I'm not persuaded that it's not within the scope of relevance for discovery.

**MS. KORY:**  Well, I mean, if you look at the actual ruling, it specifically lays out the types of empirical evidence that can be used to determine whether or not a website is directed or targeted --

**THE COURT:**  I read the ruling --

**MS. KORY:**  -- to children.

**THE COURT:**  -- in advance of this.

**MS. KORY:**  I mean, it specifically says "subject matter, visual content, the use of animated characters."  It's very specifically laid out there.  And what is not included in there is policies, procedures, and practices.

So it specifically lays out very -- you know, it's

and if you think they stray beyond what they've identified as the purpose of each topic, then you can make those objections. Hopefully, you'll work them out with each other without needing to call me.

All right.  Number 4, again, with the limitation of social media platforms to just the ones at issue in this MDL, yeah, that one is fine.

Again, I assume you're going to make your relevance objection to Number 4 as well.

**MS. KORY:**  Your Honor, it's very difficult for me to understand how anything here is relevant to a COPPA claim or an affirmative defense.  And frankly, Meta still has not told us which affirmative defense they are raising.  Even today, in the briefing, I don't understand which affirmative defense relates to COPPA.  They have not told us.  They cannot tell us, because none apply.

Can they tell us today?  That's a question I have right now.

**THE COURT:**  Tell them what this defense goes -- what defense this all goes to.

**MR. YEUNG:**  It's to the liability.  Under COPPA, one of the ways that the states intend to prove that COPPA even applies is that -- is that Instagram and Facebook are directed to children.  This is what this is about.  It's a -- it is about the defense to liability.

I don't know why they're so hung up on affirmative defenses.  There may also be ways that we can use this to support our affirmative defenses, but it is in defense of the primary theory of lia- -- the claim that they have.

MS. KORY:  So my understanding is that there are no affirmative defenses being asserted against COPPA.

MR. YEUNG:  That's not correct either.  But the discovery we're talking about here at issue in connection with the "directed to children" element, that is something that you have -- that the states have to show and that we can defend against.

I don't know why they're so hung up on affirmative defenses with respect to the "directed at children" analysis.

THE COURT:  Defendants rebut the plaintiffs' claim.  I mean, and so challenging an element of the plaintiffs' claim is not an affirmative defense; it's rebutting your prima facie case, whatever case you try to put in.

MS. KORY:  Understood, Your Honor.  I'm just trying to get at -- there are several statements in the letter briefing that get at affirmative defense-type issues, unclean hands-type issues, and Meta simply has not stated which affirmative defenses they are getting at, and I'm trying to understand that specifically.

MR. YEUNG:  I think they're making a reference to the things that we said about equitable relief.  They're the ones

also seeking equitable relief in connection with COPPA.  We disagree that they're entitled to what they're seeking.

But putting that aside, if you're going to be seeking equitable relief, there's certainly a balancing of the equities that occurs, just as a natural course of discussing what equitable relief is.

So putting aside any other arguments that we may have as to their entitlement to the relief that they seek, if it's equitable, it would be considered.

**THE COURT:**  That's their contention.  Does that clarify it for you?

**MS. KORY:**  Clear as mud, sir.

**THE COURT:**  So Number 4 is okay with that limitation on social media platforms.

Number 5, I'm going to strike that because this is information -- it's asking for communications and collaboration with the social media platforms.  That's within the -- if you're asking for communications with the defendants, then the defendants have those communications.  So you don't need a witness to tell you what you already have in your own possession, custody, and control.  So 5 is out.

6, again, if we limit social media platforms to just the defendants at issue, then 6 is okay.

**MR. YEUNG:**  Your Honor, can I just go back to 5 for a second?