James P. Rouhandeh, *pro hac vice*
Antonio J. Perez-Marques, *pro hac vice*
Caroline Stern, *pro hac vice*
Kathryn S. Benedict, *pro hac vice*
Corey M. Meyer, *pro hac vice*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email: rouhandeh@davispolk.com
       antonio.perez@davispolk.com
       caroline.stern@davispolk.com
       kathryn.benedict@davispolk.com
       corey.meyer@davispolk.com

*Attorneys for Defendants Meta Platforms, Inc. and
Instagram, LLC*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*All Actions* | MDL No. 3047<br><br>Case Nos. 4:22-md-03047-YGR-PHK<br>        4:23-cv-05448-YGR<br><br>**DECLARATION OF CURTISS COBB IN SUPPORT OF META'S AMENDED OMNIBUS MOTION TO SEAL (EXHIBITS TO THE PARTIES' SUMMARY JUDGMENT BRIEFING)**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

## DECLARATION OF CURTISS COBB

I, Curtiss Cobb, declare and state as follows:

1.      I am Vice President of Central Science, Strategy and Research at Meta Platforms, Inc. ("Meta").  I joined Meta in 2013 and was previously Director of Research for Demography and Survey Science.  I submit this Declaration in support of Meta's Omnibus Amended Motion to Seal Exhibits to the Parties' Summary Judgment Briefing.  This Declaration is based on my personal knowledge and experience at Meta.  If called upon to do so, I could and would competently testify as follows.

2.      I have reviewed the excerpts listed below that the Parties seek to seal.  These excerpts include confidential and proprietary information, including information related to Meta's internal research, and could cause Meta competitive harm if disclosed publicly for the reasons explained below:

| Document | Portion of Document at Issue |
|---|---|
| State AGs' Partial MSJ Exhibit 23: META3047MDL-047-01202953 | Page labeled Bates No. META3047MDL-047-01202953:<br><br>statistics appearing between "p_external_share for teens is very low" and "for overall users";<br><br>statistic appearing between "...suggest trying small weights" and "and adding tasks that showed promising...";<br><br>numerical figure appearing between "...a good amount of features (say" and "), that tag that is selected..."; statistics appearing between "...(half that of the overall user" and "), we can try techniques that handle..."; all text between "** Method**." and "...we see consistent and decent NE wins..."; text in parentheses between "couple of comer cases" and "[right diagram]";<br><br>text in parentheses between "more overall data" and "to check if we see";<br><br>text in parentheses between "overall NE regression" and "**(2) Teen data...";|

all text between "...benefits from using non-teen data **" and "Again we use two feature tages for more robustness...";

statistics appearing in parentheses in the two sentences following "*For overall users*";

all text appearing between "...benefits from using non-teen data **." and "** Suggestions for next half**";

statistics appearing in two sentences following "Our guess is that...";

all text appearing between "Apply higher weight on teen training losses directly." and "However, this observation aligns with the results we obtained....";

all text appearing between "(diagram left: primary organic; right secondary organic): and "That said, this work does not look like...";

statistics appearing in sentence commencing "Initial test on 4 predictors in primary organic model....";

statistics appearing in parentheses in sentence commencing "First, we think the 7D results...";

statistics in parentheses in the sentence commencing "We believe the 12D results...";

all text appearing between"....sort of features are more important to teens. **Method**" and "Note that the feature importance analysis done here...";

all text from "feature tage improves NE for teens. **Method**" to the end of page.

Page labeled Bates No. META3047MDL-047-01202954: numerical figures appearing in the four sentences following "We checked the feature tags selected...";

numerical figure in the sentence commencing "We showed that the model performance based on the tags...".

| | |
|---|---|
| Meta's MSJ Exhibit 71: Deposition of Sayed Otaru – Excerpt | Transcript page 30: line 7, text between "...it accurate that" and "of youth"; line 11, text between "A" and "of teen...." |
| Meta's MSJ - Ex. 84: Trial Report of Adam L. Alter, PH.D of August 1, 2025 (excerpted) | PDF page 42, statistic in line 3 of paragraph 251 before the text "of teens by April 2024…" |
| State AGs' Opposition to Meta's MSJ - Trial Report of Adam L. Alter, PH.D of August 1, 2025 - ECF 2775  Ex. 1 | PDF page 158, statistic in line 3 of paragraph 251 before the text "of teens by April 2024…" |
| Meta's R. 702 Mot. re Alter and Iyer- Trial Report of Adam L. Alter, PH. D. (Court Filed Attachment) - ECF 2702  Ex. 1 | PDF page 158, statistic in line 3 of paragraph 251 before the text "of teens by April 2024…" |
| State AG's Opposition to Meta's MSJ Exhibit 30: META3047MDL-074-00027496 | PDF page 8, content of chart (other than title row); text of first paragraph below chart<br><br>PDF page 11, statistics appearing next to "Low attentiveness" and "Low capability" in indented paragraph towards the top right of the slide (except for the "youth statistic"); "life inference" statistics for the "low capability" category appearing in paragraph second from the bottom on the right side of the slide<br><br>PDF page 15, all content of the seven substantive rows of the chart columns titled "Product" and "Detail"<br><br>PDF page 24, content of chart (other than title row); text of first paragraph below chart<br><br>PDF page 27, statistics appearing next to "Low attentiveness" and "Low capability" in indented paragraph towards the top right of the slide; "life inference" statistics for the same categories appearing in paragraph second from the bottom on the right side of the slide<br><br>PDF pages 31-32, all content of chart column titled "Product" (other than title row)<br><br>PDF pages 36-38, all substantive content of chart other than bold cell titles in top two rows<br><br>PDF pages 42-45, all substantive content of chart other than bold cell titles in top two rows |

3

| | |
|---|---|
| | PDF page 48, granular statistics in the columns titled "Gain (marginal effect of predictive accuracy)", "Frequency (of behavior)", "Correlation"<br><br>PDF page 62, all content in bottom three rows of chart<br><br>PDF pages 65-72, charts on right hand side of each slide<br><br>PDF page 73, all content in bottom three rows of chart<br><br>PDF pages 76-83, charts on right hand side of each slide<br><br>PDF page 85, all content of chart (other than title row)<br><br>PDF page 89, all content of chart (other than title row)<br><br>PDF page 93, all content of first three columns of chart (other than title row)<br><br>PDF pages 108-115, charts on right hand side of each slide. |
| Meta's Opp. to AGs' Partial MSJ Ex. 19, ECF No. 2781 | PDF page 3, all content of columns titled "2023" and "2024" in chart<br><br>PDF page 5, all content of columns titled "2023" and "2024" in chart |

3.      Meta does not disclose this information publicly in the ordinary course of business.  It is confidential, proprietary, and valuable.  Meta invests significant time and financial resources in its research and development efforts, including compiling data and statistics on how users drive activity on Meta's platforms, the percentage of activity these users drive, and the features of its services that provide the most value to its users.  Disclosure of this information would provide Meta's competitors with insights about Meta's business that they would not otherwise have and without incurring the same development costs or risks as Meta.

4.      Meta is a leader in its market and its competitive advantage in part is derived from its internal understanding of its users and the features of Meta's services they value most. Meta

uses its market data and research on users and their activity to generate and provide innovative features in the competitive social media market, inform future development priorities, and prepare new services and marketing strategies to stay ahead of our competitors.  Public disclosure of this information would provide competitors with another competitive advantage they would not otherwise have.  Competitors could use this information to test the accuracy of their own internal estimates of usage of Meta's platforms, which they otherwise would not be able to do.  In other words, if a competitor estimated (but did not know) which users drive value on Meta's platforms, possessing this information would provide them with information to either confirm that their data is accurate or confirm that it is not accurate, requiring them to adjust.  With precise data on Meta's users, competitors would have our proprietary insight into what makes Meta's services competitive to our users, allowing them to reliably infer or predict Meta's future development efforts and ultimately undercut Meta's competitor's advantage.  In either circumstance, competitors would not be able to do that without this information, just as Meta cannot without those competitors' information.

5.      The excerpted portions of Exhibits 71 and 84 to Meta's Motion for Summary Judgment, Exhibit 1 to Meta's Rule 702 Motion re Alter, and Iyer and Exhibit 1 to the State AGs' Opposition contain a granular statistical assessment of the uptake of a specific tool that Meta is focused on deploying to help users manage their time on Meta's Platforms. Competitors could use this information to prioritize their own interventions or optimize their own platforms, which could undercut Meta in the market. Public disclosure of this information may influence the competitive decision-making and business strategies employed by Meta's competitors, for example by influencing how those competitors develop similar features, critique Meta's platforms prior to their launch, or otherwise distinguish themselves from Meta. The information is thus extremely valuable to any competitor seeking to enhance their own platform offerings to compete with Meta's services and attract Meta's users.

DECL. OF CURTISS COBB IN SUPPORT OF META'S AMENDED OMNIBUS MOT. TO SEAL (EXS. TO SUMM. J. BRIEFING)
Case Nos. 4:22-MD-03047-YGR-PHK, 4:23-CV-05448-YGR

6. The excerpted portions of Exhibit 23 to the State AG's Partial Motion for Summary Judgment and of Exhibit 30 to State AG's Opposition contain descriptions that identify which platform surfaces and behaviors are priorities for Facebook and Instagram to develop future interventions and which platforms drive the most engagement. Competitors can use this information to inform themselves about Meta's internal research strategies and to influence their own research strategy. Competitors could use this information to position themselves on sensitive topics of research to undercut Meta.

7. Meta keeps the above information confidential and takes steps to maintain its confidentiality, including not sharing it publicly and limiting who can access it.

8. Meta derives value from this information's confidentiality. As explained above, if the information were publicly disclosed, competitors could make use of it to undercut Meta.

9. Meta competes with many companies, including companies that facilitate the ability of users to share, communicate, and discover content and information online. Meta faces intense competition in every aspect of its business. As a result, Meta takes great care to protect information related to user statistics, performance metrics, and business strategy. For the reasons described above, this information could give Meta's competitors an unfair advantage and thereby cause Meta competitive harm. I have no doubt that competitors would capitalize on the release of the competitively sensitive information and data that Meta seeks to seal if it were released.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on:  June 17, 2026          .

By: _____
Signed by:

*Curtiss L Cobb III*
DA1EB48B7B68452...
Curtiss Cobb

6
DECL. OF CURTISS COBB IN SUPPORT OF META'S AMENDED OMNIBUS MOT. TO SEAL (EXS. TO SUMM. J. BRIEFING)
Case Nos. 4:22-MD-03047-YGR-PHK, 4:23-CV-05448-YGR