James P. Rouhandeh, *pro hac vice*
Antonio J. Perez-Marques, *pro hac vice*
Caroline Stern, *pro hac vice*
Kathryn S. Benedict, *pro hac vice*
Corey M. Meyer, *pro hac vice*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:    rouhandeh@davispolk.com
          antonio.perez@davispolk.com
          caroline.stern@davispolk.com
          kathryn.benedict@davispolk.com
          corey.meyer@davispolk.com

*Attorneys for Defendants*
*Meta Platforms, Inc. and Instagram, LLC*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*All Actions* | MDL No. 3047<br><br>Case Nos. 4:22-md-03047-YGR-PHK<br>4:23-cv-05448-YGR<br><br>**DECLARATION OF MAX EULENSTEIN IN SUPPORT OF META'S OMNIBUS MOTION TO SEAL (META'S AND STATE AGS' RULE 702 MOTIONS)**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

I, Max Eulenstein, hereby attest to the following facts based on my personal knowledge:

1.    I am Vice President and Head of Product of Instagram at Meta Platforms, Inc. ("Meta").  I joined Meta in 2011.

2.    I submit this declaration in support of Meta's Omnibus Motion to Seal (Meta's and State AGs' Rule 702 Motions).  The Declaration is based on my personal knowledge and experience at Meta.  If called upon to do so, I could and would competently testify as follows.

3.    I have reviewed the documents listed below that Meta seeks to maintain as sealed.  These documents include confidential and proprietary information and could cause Meta competitive harm if disclosed publicly for the reasons explained below:

| Document | Portion of Document at Issue |
| --- | --- |
| Expert report of Carl S. Saba (ECF 2844 Exhibit 1) | PDF page 59, granular statistic on fourth line of paragraph 90.<br><br>PDF page 60, granular statistic on third line of paragraph 92; granular statistic on first line of paragraph 93; granular statistic on second line of first bullet point under paragraph 94.<br><br>PDF page 65, portions of the charts covering period from Q1 2023 onwards.<br><br>PDF page 73, content of chart from Q1 2023 onwards.<br><br>PDF page 74, content of chart from Q1 2023 onwards.<br><br>PDF page 76, content of chart from Q1 2023 onwards.<br><br>PDF page 77, content of chart from Q1 2023 onwards.<br><br>PDF page 134, granular statistic in second last line of paragraph 253. |
| Expert report of Carl S. Saba (ECF 2846 Exhibit 1) | PDF page 60, granular statistic on fourth line of paragraph 90.<br><br>PDF page 61, granular statistic on third line of paragraph 92; granular statistic on first line of paragraph 93; granular statistic on second line of first bullet point under paragraph 94. |

1

| | |
|---|---|
| | PDF page 66, portions of the charts covering period from Q1 2023 onwards.<br><br>PDF page 74, content of chart from Q1 2023 onwards.<br><br>PDF page 75, content of chart from Q1 2023 onwards.<br><br>PDF page 77, content of chart from Q1 2023 onwards.<br><br>PDF page 78, content of chart from Q1 2023 onwards.<br><br>PDF page 135, granular statistic in second last line of paragraph 253. |
| Expert report of Carl S. Saba (ECF 2914 Exhibit 1) | PDF page 60, granular statistic on fourth line of paragraph 90.<br><br>PDF page 61, granular statistic on third line of paragraph 92; granular statistic on first line of paragraph 93; granular statistic on second line of first bullet point under paragraph 94.<br><br>PDF page 66, portions of the charts covering period from Q1 2023 onwards.<br><br>PDF page 74, content of chart from Q1 2023 onwards.<br><br>PDF page 75, content of chart from Q1 2023 onwards.<br><br>PDF page 77, content of chart from Q1 2023 onwards.<br><br>PDF page 78, content of chart from Q1 2023 onwards.<br><br>PDF page 135, granular statistic in second last line of paragraph 253. |
| Rebuttal Trial Report of Carl S Saba (ECF 2844 Exhibit 4) | PDF page 50, granular statistic on seventh line of paragraph 90.<br><br>PDF page 67, granular statistic on fourth line of paragraph 129. |

DECL. OF MAX EULENSTEIN IN SUPPORT OF META'S OMNIBUS MOT. TO SEAL (RULE 702 MOTS.)
Case Nos. 4:22-MD-03047-YGR-PHK, 4:23-CV-05448-YGR

| | |
|---|---|
| | PDF page 68, content of the first chart on the page showing red trend line covering period of July-21- March 2024, content of columns titled "Slope (%Yr)" and "R^2" for row covering July 21-March 2024; for second chart on page, under paragraph 130, all content of bottom row except the two leftmost columns.<br><br>PDF page 71, two granular statistics in footnote 205. |
| Rebuttal Trial Report of Carl S Saba (ECF 2846 Exhibit 7) | PDF page 51, granular statistic on seventh line of paragraph 90.<br><br>PDF page 68, granular statistic on fourth line of paragraph 129.<br><br>PDF page 69, content of the first chart on the page showing red trend line covering period of July-21- March 2024, content of columns titled "Slope (%Yr)" and "R^2" for row covering July 21-March 2024; for second chart on page, under paragraph 130, all content of bottom row except the two leftmost columns.<br><br>PDF page 72, two granular statistics in footnote 205. |
| Rebuttal Trial Report of Carl S Saba (ECF 2914 Exhibit 2) | PDF page 51, granular statistic on seventh line of paragraph 90.<br><br>PDF page 68, granular statistic on fourth line of paragraph 129.<br><br>PDF page 69, content of the first chart on the page showing red trend line covering period of July-21- March 2024, content of columns titled "Slope (%Yr)" and "R^2" for row covering July 21-March 2024; for second chart on page, under paragraph 130, all content of bottom row except the two leftmost columns.<br><br>PDF page 72, two granular statistics in footnote 205 |
| Trial Rebuttal Report of Sriraman Venkataraman (ECF 2775 Exhibit 6) | PDF page 41, all content in Table 1 columns titled "Total", "Facebook", and "Instagram" |

3

| | PDF pages 42-43, granular statistics in columns under heading "Age Groups" in tables 2 and 3. |
|---|---|
| | PDF page 44, text of paragraph (c.) from "The normalized follower measure shows that...." until end of sentence; all content in table 4 of columns titled "Total", "Facebook", and "Instagram" |
| | PDF pages 45-46 granular statistics in columns under heading "Age Groups" in tables 5 and 6. |
| | PDF page 64, all text in parentheses in paragraphs 94(a.) and (b.); all content of columns titled "Ad IDs", "Impressions", "Clicks", and "Ad Revenue" in table. |
| | PDF page 65, all content in columns titled "Instagram" and "Facebook" in table |
| | PDF pages 147-148, content of last two columns titled "2023" and "2024" in charts. |
| | PDF page 150, content of all columns in chart other than row and column headers. |

4.    Meta does not disclose this information publicly in the ordinary course of business.  It is confidential, proprietary, and valuable.  Disclosure of this information would provide Meta's competitors with insights about Meta's business that they would not otherwise have and without incurring the same development costs or risks as Meta.

5.    The excerpted portions of the expert report of Carl S. Saba (ECF 2844 Exhibit 1, ECF 2846 Exhibit 1, 2914 Exhibit 1), the rebuttal trial report of Carl S Saba (ECF 2844 Exhibit 4, ECF 2846 Exhibit 7, 2914 Exhibit 2), and the trial rebuttal report of Sriraman Venkataraman (ECF 2775 Exhibit 6) contain granular usage and revenue information from 2023 through 2026, which should be sealed to prevent competitors from replicating certain features of Meta's platforms.  Competitors can use this information to target these demographics and to improve and refine their negotiation strategies with specificity that they otherwise would not be able to

develop.  Competitors can also use this information to better understand, emulate, or even replicate Meta's systems, which would harm Meta's efforts to deliver services to its users that are higher quality and more innovative than those offered by competitors or potential competitors.

6.      The excerpted portion of the expert report of Carl S. Saba (ECF 2844 Exhibit 1, ECF 2846 Exhibit 1, 2914 Exhibit 1), the rebuttal trial report of Carl S Saba (ECF 2844 Exhibit 4, ECF 2846 Exhibit 7, 2914 Exhibit 2), and the trial rebuttal report of Sriraman Venkataraman (ECF 2775 Exhibit 6) also contain internal benchmarks and metrics that competitors would not otherwise be able to estimate.  These excerpts also contain information about which of Meta's users drive activity on the platforms—specifically, which group of users drives a significant portion of that activity.  Competitors can use this information to understand how value is created on Meta's platforms and to emulate the behavior leading to that value.  They can also use it to position themselves in the market and thereby strategically undercut Meta, for example, by using this information to entice users driving value on Meta's platforms to join their platforms and/or leave Meta's platforms.  Competitors can use this information to develop products and business strategies they otherwise would not be able to develop and to enhance their own platform offerings to compete with Meta's services and to attract Meta's users.

7.      Meta expends significant data science and engineering resources to develop its applications. Disclosure of this information to Meta's competitors would give them an unfair competitive advantage, including because they would receive the benefit of the information without having to expend the significant resources Meta devoted to developing the information.

8.      Information on Meta's users and their usage activity would provide competitors with another competitive advantage they otherwise would not have.  Competitors could use this information to test the accuracy of their own internal estimates of usage of Meta's platforms, which they otherwise would not be able to do.  In other words, if a competitor estimated (but did not know) which users drive value on Meta's platforms, possessing this information would provide them with information to either confirm that their data is accurate or confirm that it is not

accurate, requiring them to adjust.  And, with the precise data calculations, they can predict Meta's future development strategies and ultimately try to incorporate Meta's plans into their own plans and undercut the features of Meta's services that set it apart.  In either circumstance, competitors would not be able to do that without this information, just as Meta cannot without those competitors' information.

9.      Meta keeps the above information confidential and takes steps to maintain its confidentiality, including not sharing it publicly and limiting who can access it.

10.     Meta derives value from this information's confidentiality.

11.     Meta competes with many companies, including companies that facilitate the ability of users to share, communicate, and discover content and information online, as well as from potential new entrants. Meta faces intense competition in every aspect of its business. As a result, Meta takes great care to protect information related to user statistics, performance metrics, and business strategy.  For the reasons described, this information could give Meta's competitors an unfair advantage and thereby cause Meta competitive harm.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on: __June 17, 2026_____.

By: _____
    Signed by:
    Max Eulenstein
    AD65CFBDC12D4E8...
    Max Eulenstein

DECL. OF MAX EULENSTEIN IN SUPPORT OF META'S OMNIBUS MOT. TO SEAL (RULE 702 MOTS.)
Case Nos. 4:22-MD-03047-YGR-PHK, 4:23-CV-05448-YGR