[*Submitting Counsel on Signature Page*]

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case No. 4:22-md-03047-YGR |
| THIS DOCUMENT RELATES TO: | **STATE ATTORNEYS GENERAL'S MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY OF JUSTIN MCCRARY** |
| 4:23-cv-05448 | |
| | Judge: Hon. Yvonne Gonzalez Rogers |
| | Magistrate Judge: Hon. Peter H. Kang |

## TABLE OF CONTENTS

I.    Introduction .......................................................................................................... 1

II.   Legal Standard .................................................................................................... 1

III.  Background .......................................................................................................... 1

    A.    Saba's Testimony ........................................................................................ 1

    B.    McCrary's Opinions at Issue ...................................................................... 2

IV.   Argument ............................................................................................................. 3

    A.    McCrary is Unqualified to Offer Opinions on Causation or Harm ............. 3

    B.    Opinions 1 and 2 are Methodologically Unreliable. .................................. 5

    C.    McCrary's Opinions are Not Responsive to Saba and Thus Are Improper Rebuttal. ..... 9

    D.    McCrary's Late-Disclosed Causation Opinions are Independently Excludable as Violative of this Court's Scheduling Order. ......................... 10

V.    Conclusion ......................................................................................................... 10

STATE ATTORNEYS GENERAL'S MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY OF JUSTIN MCCRARY
4:22-md-03047-YGR; 4:23-CV-05448-YGR

# TABLE OF AUTHORITIES

**Cases**

*Avila v. Willits Env't Remediation Tr.*,
633 F.3d 828 (9th Cir. 2011)............................................................................................ 3

*Daubert v. Merrell Dow Pharms., Inc.*,
43 F.3d 1311 (9th Cir. 1995)............................................................................................ 5

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993).......................................................................................................... 1

*Engilis v. Monsanto Co.*,
151 F.4th 1040 (9th Cir. 2025) ......................................................................................... 1

*Fitzhenry-Russell v. Keurig Dr. Pepper Inc.*, No. 17-CV-00564-NC,
2018 WL 10472794 (N.D. Cal. Sep. 15, 2018) ............................................................... 1

*Int'l Bus. Machines Corp. v. Fasco Indus., Inc.*, No. C-93-20326 RPA,
1995 WL 115421 (N.D. Cal. Mar. 15, 1995)................................................................... 10

*Lust v. Merrell Dow Pharms., Inc.*,
89 F.3d 594 (9th Cir. 1996).............................................................................................. 1

*Mahaska Bottling Co., Inc. v. PepsiCo, Inc.*,
441 F. Supp. 3d 745 (S.D. Iowa 2019) ............................................................................ 5

*People v. Johnson & Johnson*,
77 Cal. App. 5th 295 (Ct. Cal. App. 2022) ...................................................................... 6

*People v. Overstock.com, Inc.*,
12 Cal. App. 5th 1064, 1078-79 (Cal. Ct. App. 2017)..................................................... 6

*Perez v. State Farm Mut. Auto. Ins. Co.*, No. C 06-1962 JW,
2012 WL 3116355 (N.D. Cal. July 31, 2012).................................................................. 7

*Plumley v. Mockett*,
836 F. Supp. 2d 1053 (C.D. Cal. 2010) ....................................................................... 1, 9

*Pooshs v. Phillip Morris USA, Inc.*,
287 F.R.D. 543 (N.D. Cal. 2012)..................................................................................... 3

*Self v. Perspecta Enter. Sols., LLC*, No. 21CV1230-AJB(MSB),
2023 WL 6020792 (S.D. Cal. Jan. 31, 2023).................................................................. 9

*Siquieros v. General Motors LLC*, No. 16-CV-07244-EMC,
2022 WL 74182 (N.D. Cal. Jan. 7, 2022) ....................................................................... 5

**Statutes**

Cal. Bus. Code § 17200 ....................................................................................................... 6

Colo. Rev. Stat. § 6-1-105(rrr)............................................................................................. 6

Conn. Gen. Stat. § 42-110b(a) ..................................................................................... 6

Ky. Rev. Stat. § 367.170 ............................................................................................. 6

N.J. Stat. Ann. § 56:8-2............................................................................................... 6

**Rules**

Fed. R. Civ. P. 26(a)(2) ........................................................................................... 1, 3

Fed. R. Civ. P. 37(c)................................................................................................. 1, 9

Fed. R. Evid. 702 ..................................................................................................... 1, 5

STATE ATTORNEYS GENERAL'S MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY OF JUSTIN MCCRARY
4:22-md-03047-YGR; 4:23-CV-05448-YGR

## I.    Introduction

The State Attorneys General ("State AGs") move to exclude two unqualified and unreliable causation opinions offered by Defendants' rebuttal expert, Dr. Justin McCrary. Defendants designated McCrary, an applied economist and law professor, as a rebuttal witness only in response to Mr. Carl Saba, the State AGs' expert on economic remedies. In Opinions 1 and 2 of his Rebuttal Trial Report, McCrary improperly opines on matters of causation and harm, including the causal link between use of Meta's platforms and harm to teens, the strength of allegations of addictive or problematic use of Meta's platforms, and trends in teen mental health at the population level. These opinions should be excluded, as they stretch beyond McCrary's expertise, are not supported by reliable methods, are outside the scope of proper rebuttal, and are untimely under the Court's Scheduling Order.

## II.    Legal Standard

For expert testimony to be admissible, the expert must: (1) be qualified in their field; (2) use reliable data and methodology; and (3) offer testimony that will assist the trier of fact. Fed. R. Evid. 702; *see also Engilis v. Monsanto Co.*, 151 F.4th 1040, 1047 (9th Cir. 2025). The proponent of expert testimony must establish that the admissibility requirements are met by a preponderance of the evidence. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 n.10 (1993); *see also Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

Further, Federal Rule of Civil Procedure 26(a)(2) provides that the testimony of a rebuttal expert is intended "solely to contradict or rebut evidence on the same subject matter identified by another party." *Fitzhenry-Russell v. Keurig Dr. Pepper Inc.*, No. 17-CV-00564-NC, 2018 WL 10472794, at *1 (N.D. Cal. Sept. 15, 2018) (internal citations omitted). "Those portions of an expert's rebuttal that opine on subjects that were not addressed in the expert report purportedly being rebutted should be excluded" as improper rebuttal testimony under Rule 37(c). *Plumley v. Mockett,* 836 F. Supp. 2d 1053, 1065 (C.D. Cal. 2010) (internal citation omitted).

## III.    Background

### A. Saba's Testimony

The State AGs' expert on economic remedies, Carl Saba, has over two decades of experience in economic damages analyses, business valuation, and assessing the financial conditions of companies. Ex. 1, Saba Rep. ¶ 11. His expert opinion includes data analysis and modeling to support the calculation of civil penalty and disgorgement awards. Ex. 1, Saba Rep. ¶¶ 1-9, 17. Saba uses Meta's own internal data to calculate (1) the number of instances in which accounts belonging to 13- to 17-year-olds ("Teens") spent more than 0.5, 1, 2, 3, 4, or 5 hours per day on average on Instagram or Facebook in a given month during the Relevant Time Period ("Time Spent Instances"), and (2) the number of bad encounters Teens experienced on Instagram during the Relevant Time Period, as reported in Meta's Bad Experiences and Encounters Framework ("BEEF") Survey ("Bad Encounter Instances"). Saba also performs calculations to estimate the number of Teen and under-13 persons on Instagram or Facebook during the Relevant Time Period. These calculations can inform or form the basis of the tabulation of violations of the consumer protection statutes and the Children's Online Privacy Protection Act. Additionally, Saba calculates the revenues, costs, and profits associated with Teens who exceeded the 0.5, 1, 2, 3, 4, or 5 hour thresholds. These profit calculations can assist in determining the amount of Meta's profits that should be disgorged.

### B. McCrary's Opinions at Issue

The State AGs seek to exclude McCrary's Opinions 1 and 2, which comprise Section VI and VII, respectively, of the Expert Rebuttal Report of Justin McCrary, Ph.D.[1] In Opinion 1, McCrary starts with the incorrect premise that Saba's Time Spent and Bad Encounter calculations must be tied to consumer harm. See, e.g., Ex. 2, McCrary Rep. ¶ 53. McCrary critiques Saba for not proving that each of the Time Spent and Bad Encounter Instances "caused" or "resulted in harm"—particularly harm to Teen mental health. See, e.g., Ex. 2, McCrary Rep. ¶¶ 58, 81. McCrary also critiques Saba for not proving that the time thresholds in his Time Spent calculations represent excessive or addictive use. See, e.g., Ex. 2, McCrary Rep. ¶ 54. McCrary then opines on (i) the causal connection between consumer harm and Teen use of Meta's platforms and (ii) the occurrence

---

[1] The State AGs do not concede the accuracy, reliability, or admissibility of Opinions 3 through 5 but do not seek to exclude those opinions in this motion. The State AGs reserve the right to later move to exclude those opinions on other grounds, including on Rule 702 "fit" requirements.

of addictive or compulsive use of Meta's platforms, by identifying evidence that he claims contradicts both.

In Opinion 2, McCrary begins with the incorrect premise that Saba's Time Spent and Bad Encounter Instances are "indicators of . . . consumer harm," and concludes that Saba's calculations imply that the "vast majority of teens were harmed." Ex. 2, McCrary Rep. ¶ 91. McCrary then draws conclusions about trends in Teen mental health, opining that "consistent[] deteriorati[on]" in Teen mental health or "consistent, widespread increases in mental health challenges" did not occur at the population level. See, e.g., Ex. 2, McCrary Rep. ¶¶ 92, 98. McCrary claims that these trends undermine both "Mr. Saba's analysis and the Plaintiffs' allegations." Ex. 2, McCrary Rep. ¶100. McCrary also uses this data to make a further causal opinion, asserting that these trends "may be driven by other factors not at issue in this matter." Ex. 2, McCrary Rep. ¶100. He goes on to speculate that these other factors could include "poverty and income shocks, domestic violence, school shootings, and adverse childhood experiences generally." Ex. 2, McCrary Rep. ¶ 101.

## IV.    Argument

The State AGs move to exclude McCrary's Opinions 1 and 2 on four grounds: (1) McCrary lacks the qualifications to offer opinions on causation, harm, Teen mental health, and addictive use of Meta's platforms; (2) McCrary does not ground the opinions in reliable, scientific principles and methods; (3) the opinions exceed the scope of proper rebuttal under Fed. R. Civ. P. 26(a)(2), as they focus on issues of causation and harm that Saba does not opine on as an expert in economic remedies; and (4) these causation opinions were disclosed six months late under the Court's Scheduling Order, ECF No. 1290 at 3.

### A.  McCrary is Unqualified to Offer Opinions on Causation or Harm.

Courts routinely exclude experts who opine on causation beyond their academic discipline or opine on medical or psychological harm without relevant expertise. See, e.g., Pooshs v. Phillip Morris USA, Inc., 287 F.R.D. 543, 547-48 (N.D. Cal. 2012) (faculty member at tobacco research center was not qualified to testify regarding addiction where she lacked expertise in "any scientific discipline" bearing on "addiction, the addictive qualities of cigarettes," or the effects of nicotine and secondhand smoke on the human body, such as biochemistry, biology, chemistry, epidemiology,

psychology, or psychiatry); *Avila v. Willits Env't Remediation Tr.*, 633 F.3d 828, 837-39 (9th Cir. 2011) (affirming district court's exclusion of immunology, biology, and toxicology expert for lack of "special training or knowledge regarding metal working industries" and excluding his causal opinion that a chrome plating facility's activities "must have caused dioxins").

McCrary has a Ph.D. in Economics from U.C. Berkeley and claims to be an expert in economics and statistics. Ex. 3, McCrary Dep. 35:17-18, 60:16-19; Ex. 2, McCrary Rep. ¶ 7. McCrary does not have specialized skills, experience, training, or education in the areas of social media, social media addiction, mental health, epidemiology, psychology, public health, or adolescent development. Ex. 2, McCrary Rep. App. A and B; Ex. 3, McCrary Dep. 34:3-22, 62:10-63:17. McCrary has never taught or engaged in research on these topics. Ex. 2, McCrary Rep. App. A at 2-6; Ex. 3, McCrary Dep. 43:10-44:12, 49:21-50:17.

Nor has McCrary testified on mental health, social media addiction, or related harms prior to 2025. Ex. 2, McCrary Rep. App. B-; Ex. 3, McCrary Dep. 52:9-53:5. McCrary's sole experience opining on social media or teen mental health comes from work he performed for Meta as a rebuttal expert in a parallel proceeding to this matter, *State of New Mexico v. Meta Platforms, Inc., and Instagram LLC*, D-101-CV-2023-02838. Ex. 2, McCrary Rep. App. B at 2.

McCrary goes well beyond his expertise in economics and statistics in Opinions 1 and 2. In Opinion 1, he opines on whether time spent on platforms is "addictive," "excessive," or "caused harm"—all of which are psychological or behavioral constructs. *See, e.g.*, Ex. 2, McCrary Rep. ¶¶ 54-55, 65. He opines on the causal link between use of Meta's platforms and harm to Teens, despite having no expertise in mental health, psychology, public health, or related fields. *See, e.g.*, Ex. 2, McCrary Rep. ¶¶ 76, 85. In Opinion 2, McCrary offers opinions on population-level trends in adolescent mental health and their causes, despite having no expertise in epidemiology, public health, or mental health. McCrary plots trends in portions of mental health data from the National Survey of Children's Health ("NSCH"), Mental Health Client-Level Data ("MH-CLD"), and the Youth Risk Behavior Surveillance System ("YRBSS"). He opines, based on his observations of these trends, that the data does not show consistent, widespread increases in mental health challenges among adolescents. *See, e.g.*, Ex. 2, McCrary Rep. ¶¶ 98-100. He asserts that this finding

undermines both Saba's opinions and the States AGs' claims. Ex. 2, McCrary Rep. ¶ 99-100.  He proceeds to draw an unreliable causal conclusion that the trends "may be driven by other factors not at issue in this litigation." Ex. 2, McCrary Rep. ¶¶ 99-100.

McCrary does not have the requisite scientific, technical, or specialized knowledge in any discipline that would qualify him to provide opinions about the causal link between social media and harm to Teens, addictive or problematic social media use, or trends in Teen mental health and their causes.  Opinions 1 and 2 should thus be excluded under Rule 702(a).

**B.  Opinions 1 and 2 are Methodologically Unreliable.**

In Opinions 1 and 2, McCrary begins with the incorrect assumption that Saba's Bad Encounter and Time Spent calculations must be associated with harm—specifically, McCrary's own, unsupported definition of harm. McCrary also contends that the data he selected—arbitrarily and without analytical foundation—refutes the State AGs' claims of problematic use and mental-health harms associated with Meta's platforms. McCrary does not articulate any reliable principles or methodology underlying (i) his assertion that Saba must link his calculations to harm, (ii) his specific definition of harm, (iii) his selection of data as indicators of addictive use or mental health harm, or (iv) his process for reaching his opinions on causation, harm, and addictive use from his selected data. In this way, McCrary's Opinions 1 and 2 fail the reliability prong of Rule 702(c), which requires that an expert "must explain precisely how they went about reaching their conclusions and point to some objective source . . . to show that they have followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in their field." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995).

First, McCrary does not rely on any principles applicable to damages or economic remedies experts to support his faulty premise that Saba's Time Spent and Bad Encounter Instances must result in harm, and that Saba must demonstrate or establish this causal connection. That is unsurprising, as McCrary's assertion is incorrect on at least two fronts. Saba, as an expert in economic remedies tasked with performing calculations related to civil penalty and disgorgement awards, can assume issues of liability in order to calculate remedies. *See, e.g.*, *Siquieros v. General Motors LLC*, No. 16-CV-07244-EMC, 2022 WL 74182, at *10 (N.D. Cal. Jan. 7, 2022) (a "damages

expert . . . is entitled to *assume* liability in order to model the damages") (citing cases) (emphasis in original); *Mahaska Bottling Co., Inc. v. PepsiCo, Inc.*, 441 F. Supp. 3d 745, 757 (S.D. Iowa 2019) (a party's damages expert can assume liability "without directly opining on the validity of the party's underlying legal theories . . . in order to address damages") (citing cases). And, in any event, the State AGs do not need to prove that Meta's unlawful conduct resulted in harm in order to establish violations of applicable state consumer protection statutes.[2]

Thus, contrary to McCrary's assertion, it is both appropriate and consistent with his role as an economic remedies expert for Saba to assume matters going to liability—such as the harmful and addictive nature of Meta's platforms—instead of opining on them. Saba focuses on data analysis and calculations supporting the quantification of remedies, and the State AGs will present evidence and expert testimony supporting the State AGs' theories of liability.[3]

Second, McCrary's Opinions 1 and 2 rest on a narrow and unsubstantiated definition of "harm" which he insists that Saba must connect to the Time Spent or Bad Encounter Instances. McCrary does not base his definition of harm on any reliable, scientific methods or principles. Without an articulated basis, McCrary defines "consumer harm" almost entirely as negative mental health outcomes *See, e.g.*, Ex. 2, McCrary Rep. ¶¶ 53-54, 56, 79-82, 91 (equating "consumer harm" with a negative effect on mental health or mental health "outcomes," or "declining mental health among Teens"). McCrary's framing of "harm" is also heavily focused on diagnosable, measurable declines in teen mental health at the population level. Indeed, in Opinion 2, McCrary claims that the absence of "consistent, widespread increases" in the overall "rates of

---

[2] Indeed, to prove their deception claims the State AGs must, at a basic level, show that Meta's statements or actions were likely to deceive members of the public. *See, e.g.*, *People v. Johnson & Johnson*, 77 Cal. App. 5th 295, 310-14 (Ct. Cal. App. 2022); *People v. Overstock.com, Inc.*, 12 Cal. App. 5th 1064, 1078-79 (Cal. Ct. App. 2017). With respect to their unfairness claims, the State AGs must show that Meta engaged in unfair, unconscionable, deceptive and/or misleading conduct. *See, e.g.*, Cal. Bus. Code § 17200; Colo. Rev. Stat. § 6-1-105(rrr); Conn. Gen. Stat. § 42-110b(a); Ky. Rev. Stat. § 367.170; N.J. Stat. Ann. § 56:8-2.

[3] Relatedly, the time spent thresholds that Saba uses in his Time Spent calculations are not "arbitrary" as McCrary repeatedly claims, *e.g.*, Ex. 2, McCrary Rep. ¶61, 65, merely because Saba does not opine on the relationship between these thresholds and the State AGs' claims. Other experts' testimony and record evidence use these thresholds in examining problematic use and other mental health impacts linked to time spent on the platforms.

receiving treatment of mental health challenges, depression, ADD or ADHD, anxiety, [and] insufficient sleep" undermines the validity of Saba's Bad Encounter and Time Spent calculations. Ex. 2, McCrary Rep. ¶¶ 98-100.

Beyond lacking any source or scientific method, McCrary's unfounded definition of "harm" also conflicts with the State AGs' unfairness claims, which allege unfair practices that raise the risk of harms that are not necessarily tethered to clinical diagnoses or captured in McCrary's chosen data, such as effects on adolescent social development, effects on adolescent brain development, disruption to offline healthy activities, or negative social comparison. McCrary's insistence on proof of harm in the form of a measurable "mental health challenge" or a clinical diagnosis is a legal non sequitur that risks confusing the jury as to the applicable legal standards and the factual issues in this case.

Third, Opinions 1 and 2 are unreliable because McCrary does not articulate any scientific method for selecting data to support his opinions, or for drawing conclusions on causation, mental health harms, and addictive use based on his selected data. *See Perez v. State Farm Mut. Auto. Ins. Co.*, No. C 06-1962 JW, 2012 WL 3116355, at *5 (N.D. Cal. July 31, 2012) (excluding an expert's testimony for failure "to identify any methodology for choosing which surveys and reports to include in his analysis[,] render[ing] th[e] analysis far too subjective to constitute a workable methodology"). For example, McCrary relies on a single public data source—YRBSS data—to find that, on average, total school day screentime among Teens has "remained relatively constant" from roughly 2015-2021, though Teens are spending more time on "computers, tablets, and smartphones" rather than television over time. Ex. 2, McCrary Rep. ¶¶ 62-63. Based on his observation of this specific trend in school day screentime, McCrary concludes that the data "is inconsistent with Plaintiffs' allegations that Instagram and Facebook are 'addictive' for Teens." Ex. 2, McCrary Rep. ¶ 62. Based on "the amount of time teens typically spent on screens" on school days according to YRBSS, as well as the duration of certain daily tasks like eating, McCrary also opines that the 0.5- and 1-hour thresholds used in Saba's Time Spent calculations are "arbitrarily low" to result in harm. Ex. 2, McCrary Rep. ¶ 65. But aggregate averages do not negate Meta's addictive design or disprove harm merely because McCrary asserts it. McCrary identifies no

scientific or reliable basis for selecting the YRBSS average school day screentime data or using it as he does to assess and draw conclusions regarding addictive or harmful use of Meta's platforms.

Similarly, McCrary opines that the average duration of Teen use of Meta's platforms during the Relevant Time Period is "inconsistent" with the State AGs' claims that Meta designed its platforms to be addictive. Ex. 2, McCrary Rep. ¶ 68. Again, McCrary does not articulate his basis for selecting aggregate, average usage data—as opposed to, for example, more granular data on Teens with higher-than-average use—to assess addictive design or use. McCrary cites no method for selecting various other data sources and deriving opinions on causation, harm, and addictive use from them. McCrary charts the percentage of Teens exceeding each time spent threshold in Saba's Time Spent calculations during the Relevant Time Period and summarily concludes that the data does not support allegations of addictive use absent a "statistically significant increase in slope." Ex. 2, McCrary Rep. ¶¶ 73-75. He further opines that because social media comprises 15.8 percent of youth screen time—according to a single data point in one 2019 survey—and other social media platforms are also popular among Teens, Meta's platforms are not "solely responsible for any harm to Teens" from screens or social media. Ex. 2, McCrary Rep. ¶ 76.[4]

Finally, McCrary does not articulate a method for selecting the NSCH, MH-CLD, and YRBSS databases from which he draws conclusions about Teen mental health trends and their causes in Opinion 2. McCrary testified that he merely "looked at" public data "to see whether there were "proxies" for mental health issues listed in the State AGs' Complaint—which is not a well-defined or methodical process for selecting relevant data or information. Ex. 3, McCrary Dep. 190:2-22. McCrary also testified that "it may be possible that there [are] other datasets" on Teen mental health that he did not consider, Ex. 3, McCrary Dep. 204:15-205:2, but he identifies no basis for limiting his analysis to the three, selected databases. Notably, McCrary also did not consider relevant academic literature in order to opine on Teen mental health trends. Ex. 3, McCrary Dep. 205:4-205:18; *see also* Ex. 2, McCrary Rep. App. C. In describing the trends in his selected data,

---

[4] In addition to lacking any basis in scientific methods, McCrary's opinion is both legally irrelevant (given that the State AGs' claims focus on Meta's own conduct, not market shares of attention) and logically flawed (given that exposure intensity and design features can produce harm without dominating total screen time).

McCrary identifies variations, finding that some indicators "appear to improve or remain constant," while others "worsen" or "are more mixed." Ex. 2, McCrary Rep. ¶ 100. He nevertheless concludes, without an articulated basis or animating scientific principle, that the absence of "consistent, widespread increases" across the data "in all UDAP States" is sufficient to contradict "Saba's tallies" of Bad Encounter and Time Spent Instances. Ex. 2, McCrary Rep. ¶¶ 98, 100. McCrary does not even define what a "consistent, widespread increase" constitutes, aside from the vague notion of "an increase that continues from one period to the next and then from that period and so on," across all applicable States. Ex. 3, McCrary Dep. 212:18-24, 214:24-215:4.

### C. McCrary's Opinions are Not Responsive to Saba and Thus Are Improper Rebuttal.

Saba does not opine on the causal links between the use of Meta's platforms and harm to users, Teen mental health, or addictive or problematic use of Meta's platforms. These causation topics that comprise McCrary's Opinions 1 and 2 are well beyond the scope of Saba's report and should be excluded as improper rebuttal. See *Plumley*, 836 F. Supp. 2d at 1065-66 (excluding under Fed. R. Civ. P. 37(c) opinions from an expert rebuttal report that pertained to liability, as they did not respond to the initial expert witness's damages assessments).

Saba's testimony consists of data analysis and computations related to civil penalties and disgorgement. *See, e.g.*, Ex. 1, Saba Rep. ¶ 17 (describing his assignment as a series of calculations); Ex. 4, Saba Reb. ¶ 105 (describing his assignment again, noting that he was asked to perform calculations related to economic remedies and not provide opinions or analysis on teen mental health). As is appropriate for economic remedies and damages experts, Saba assumed liability and focused on calculating the associated remedies.

Rather than limiting his rebuttal to the subject matter of Saba's report, McCrary introduces new themes of causation and harm. For example, he interprets population-level mental health trends and draws conclusions about mental health harm to Teens, *see e.g.*, Ex. 2, McCrary Rep. ¶ 98; assesses youth screen time and its components to draw conclusions about the addictive nature of Meta's platforms, *see e.g.*, Ex. 2, McCrary Rep. ¶¶ 68, 76; and makes assertions about what constitutes harm to users or addictive or problematic social media use, *see, e.g.*, Ex. 2, McCrary Rep. ¶¶ 55, 65, 83, 85.

Meta has prejudiced the State AGs by presenting new causation opinions in response to the State AGs' economic remedies expert. Meta lacks justification for its prejudicial, delayed disclosure of McCrary's causation opinions. Opinions 1 and 2 should accordingly be struck under Fed. R. Civ. P. 37(c). *See Self v. Perspecta Enter. Sols., LLC*, No. 21CV1230-AJB(MSB), 2023 WL 6020792, at *3 (S.D. Cal. Jan. 31, 2023) (improperly disclosed expert testimony is excludable under Fed. R. Civ. P. 37(c) unless the propounding party proves that "the failure was substantially justified or harmless.").

**D. McCrary's Late-disclosed Causation Opinions Are Independently Excludable as Violative of This Court's Scheduling Order.**

As discussed above, McCrary's Opinions 1 and 2 provide new opinions on causation. This Court required Meta to disclose non-case-specific and causation experts by July 9, 2025. ECF No. 1290 at 3. Meta served McCrary's report six months after this Court-ordered deadline, on January 9, 2026. Opinions 1 and 2 should be struck for that reason alone. *Int'l Bus. Machines Corp. v. Fasco Indus., Inc.*, No. C-93-20326 RPA, 1995 WL 115421, at *4 (N.D. Cal. Mar. 15, 1995) ("The enforcement of discovery deadlines is absolutely essential in promoting the just and efficient administration of justice" and late-disclosed expert opinions "create[ ] a burdensome distraction from . . . pretrial preparation.").

**V.    Conclusion**

For the reasons stated above, the State AGs respectfully move for the Court to exclude Opinions 1 and 2 in the Expert Rebuttal Report of Justin McCrary, Ph.D.

Respectfully submitted,

**KRIS MAYES**
Attorney General
State of Arizona

*/s/ Reagan Healey*
Reagan Healey (AZ No. 038733), pro hac vice
Assistant Attorney General
Arizona Attorney General's Office
2005 North Central Avenue
Phoenix, AZ 85004
Phone: (602) 542-3725
Fax: (602) 542-4377
Reagan.Healey@azag.gov
*Attorneys for Plaintiff State of Arizona, ex rel.*
*Kris Mayes, Attorney General*


**PHILIP J. WEISER**
Attorney General
State of Colorado

*/s/ Krista Batchelder*
Krista Batchelder, (CO Reg.45066), *pro hac vice*
Deputy Solicitor General
Shannon Stevenson (CO Reg. 35542), *pro hac vice*
Solicitor General
Elizabeth Orem (CO Reg. 58309), *pro hac vice*
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6384
krista.batchelder@coag.gov
Shannon.stevenson@coag.gov
Elizabeth.orem@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel.*
*Philip J. Weiser, Attorney General*

**ROB BONTA**
Attorney General
State of California

*/s/ Megan O'Neill*
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (CA SBN 244395)
Emily Kalanithi (CA SBN 256972)
Supervising Deputy Attorneys General
Megan O'Neill (CA SBN 343535)
Nayha Arora (CA SBN 350467)
Joshua Olszewski-Jubelirer
(CA SBN 336428)
Marissa Roy (CA SBN 318773)
Brendan Ruddy (CA SBN 297896)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
megan.oneill@doj.ca.gov

*Attorneys for Plaintiff the People of the State*
*of California*


**RAÚL R. LABRADOR**
Attorney General
State of Idaho

*/s/ James J. Simeri*
James J. Simeri (ID Bar No. 12332)
pro hac vice
Deputy Attorney General
Attorney General's Office
P.O. Box 83720
Boise, ID 83720-0010
(208) 334-2424
james.simeri@ag.idaho.gov

*Attorneys for Plaintiff State of Idaho*

**WILLIAM TONG**
Attorney General
State of Connecticut

*/s/ Rebecca Borné*
Rebecca Borné
(CT Juris No. 446982), pro hac vice
Tess E. Schneider
(CT Juris No. 444175), *pro hac vice*
Krislyn M. Launer
(CT Juris No. 440789), *pro hac vice*
Assistant Attorneys General
Connecticut Office of the Attorney General
165 Capitol Avenue
Hartford, Connecticut 06106
Phone: 860-808-5400
Fax: 860-808-5593
Rebecca.Borne@ct.gov
Tess.Schneider@ct.gov
Krislyn.Launer@ct.gov

*Attorneys for Plaintiff State of Connecticut*


**KATHLEEN JENNINGS**
Attorney General
State of Delaware

*/s/ Ryan Costa*
Marion Quirk (DE Bar 4136), *pro hac vice*
Director of Consumer Protection
Ryan Costa (DE Bar 5325), *pro hac vice*
Deputy Director of Consumer Protection
Delaware Department of Justice
820 N. French Street, 5th Floor
Wilmington, DE 19801
Phone: (302) 683-8811
Marion.Quirk@delaware.gov
Ryan.Costa@delaware.gov

*Attorneys for Plaintiff State of Delaware,*
*ex rel. Kathleen Jennings, Attorney General*
*for the State of Delaware*

**THEODORE E. ROKITA**
Attorney General
State of Indiana

*/s/ Scott L. Barnhart*
Scott L. Barnhart (IN Atty No. 25474-82),
*pro hac vice*
Chief Counsel and Director of Consumer
Protection
Corinne Gilchrist (IN Atty No. 27115-53),
*pro hac vice*
Section Chief, Consumer Litigation
Mark M. Snodgrass (IN Atty No. 29495-49),
*pro hac vice*
Deputy Attorney General
Office of the Indiana Attorney General
Indiana Government Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46203
Telephone: (317) 232-6309
Scott.Barnhart@atg.in.gov
Corinne.Gilchrist@atg.in.gov
Mark.Snodgrass@atg.in.gov


*Attorneys for Plaintiff State of Indiana*


**KRIS W. KOBACH**
Attorney General
State of Kansas

*/s/ Sarah M. Dietz*
Sarah M. Dietz, Assistant Attorney General
(KS Bar No. 27457), *pro hac vice*
Kaley Schrader, Assistant Attorney General
(KS Bar No. 27700), *pro hac vice*
Office of the Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Telephone: (785) 296-3751
Fax: (785) 296-3131
Email: sarah.dietz@ag.ks.gov

*Attorneys for Plaintiff State of Kansas*

**ANNE E. LOPEZ**
Attorney General
State of Hawai'i

/s/ Douglas S. Chin
Christopher J.I. Leong (HI JD No. 9662), *pro hac vice*
Supervising Deputy Attorney General
Kelcie K. Nagata (HI JD No. 10649), *pro hac vice*
Deputy Attorney General
Department of the Attorney General
Commerce and Economic Development Division
425 Queen Street
Honolulu, Hawai'i 96813
Phone: (808) 586-1180
Christopher.ji.leong@hawaii.gov
Kelcie.k.nagata@hawaii.gov
Douglas S. Chin (HI JD No. 6465), *pro hac vice*
John W. Kelly (HI JD No. 9907), *pro hac vice*
Special Deputy Attorney General
Starn O'Toole Marcus & Fisher
733 Bishop Street, Suite 1900
Honolulu, Hawai'i 96813
Phone: (808) 537-6100
dchin@starnlaw.com
jkelly@starnlaw.com

*Attorneys for Plaintiff State of Hawai'i*


**KWAME RAOUL**
Attorney General
State of Illinois

/s/ Matthew Davies
Susan Ellis, Chief, Consumer Protection
Division (IL Bar No. 6256460), *pro hac vice*
Greg Grzeskiewicz, Chief, Consumer
Fraud Bureau (IL Bar No. 6272322), *pro hac vice*
Jacob Gilbert, Deputy Chief, Consumer Fraud
Bureau (IL Bar No. 6306019), *pro hac vice*
Matthew Davies, Supervising Attorney,
Consumer Fraud Bureau (IL Bar No. 6299608),
*pro hac vice*
Daniel B. Roth, Assistant Attorney General,
Consumer Fraud Bureau (IL Bar No. 6290613),
*pro hac vice*
Meera Khan, Assistant Attorney General,

**LIZ MURRILL**
Attorney General
State of Louisiana

/s/ Asyl Nachabe
Asyl Nachabe (LA Bar No. 38846)
*Pro hac vice*
Assistant Attorney General
Louisiana Department of Justice
Public Protection Division
Consumer Protection Section
1885 N 3rd Street, 4th Floor
Baton Rouge, LA 70802
Tel: (225) 326-6438
NachabeA@ag.louisiana.gov

*Attorney for State of Louisiana*


**AARON M. FREY**
Attorney General
State of Maine

/s/ Michael Devine
Michael Devine, Maine Bar No. 5048,
*pro hac vice*
Assistant Attorney General
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333
(207) 626-8800
michael.devine@maine.gov

*Attorney for Plaintiff State of Maine*


**KEITH ELLISON**
Attorney General
State of Minnesota

/s/ Caitlin Micko
Caitlin Micko (MN Bar No. 0395388),
*pro hac vice*
Assistant Attorney General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1200
St. Paul, MN 55101-2130
Tel: (651) 724-9180

Consumer Fraud Bureau (IL Bar No. 6345895), *pro hac vice*
Office of the Illinois Attorney General
115 S. LaSalle Street
Chicago, Illinois 60603
312-814-8554
Susan.Ellis@ilag.gov
Greg.Grzeskiewicz@ilag.gov
Jacob.Gilbert@ilag.gov
Matthew.Davies@ilag.gov
Emily.Migliore@ilag.gov
Daniel.Roth@ilag.gov
Meera.Khan@ilag.gov

*Attorneys for Plaintiff the People of the State of Illinois*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

/s/ *Matthew Cocanougher*
J. Christian Lewis (KY Bar No. 87109), *pro hac vice*
Philip Heleringer (KY Bar No. 96748), *pro hac vice*
Zachary Richards (KY Bar No. 99209), *pro hac vice app. forthcoming*
Daniel I. Keiser (KY Bar No. 100264), *pro hac vice*
Matthew Cocanougher (KY Bar No. 94292), *pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Ste. 200
Frankfort, KY 40601
Christian.Lewis@ky.gov
Philip.Heleringer@ky.gov
Zach.Richards@ky.gov
Daniel.Keiser@ky.gov
Matthew.Cocanougher@ky.gov
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

caitlin.micko@ag.state.mn.us

*Attorney for Plaintiff State of Minnesota, by its Attorney General, Keith Ellison*

**JENNIFER DAVENPORT**
Acting Attorney General
State of New Jersey

By: /s/ *Kashif T. Chand*
Kashif T. Chand (NJ Bar No. 016752008), *Pro hac vice*
Assistant Attorney General
Thomas Huynh (NJ Bar No. 200942017), *Pro hac vice*
Assistant Section Chief, Deputy Attorney General
Verna J. Pradaxay (NJ Bar No. 335822021), *Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021), *Pro hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General, Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiffs Jennifer Davenport, Acting Attorney General for the State of New Jersey, and Jeremy E. Hollander, Acting Director of the New Jersey Division of Consumer Affairs*

**ANTHONY G. BROWN**
Attorney General
State of Maryland

/s/ *Elizabeth J. Stern*
Philip D. Ziperman (Maryland CPF No.
9012190379), *pro hac vice*
Deputy Chief, Consumer Protection Division
Elizabeth J. Stern (Maryland CPF No.
1112090003), *pro hac vice*
Assistant Attorney General
Office of the Attorney General of Maryland
200 St. Paul Place
Baltimore, MD 21202
Phone: (410) 576-6417 (Mr. Ziperman)
Phone: (410) 576-7226 (Ms. Stern)
Fax: (410) 576-6566
pziperman@oag.state.md.us
estern@oag.state.md.us

*Attorneys for Plaintiff Office of the Attorney
General of Maryland*

**MICHAEL T. HILGERS**
Attorney General
State of Nebraska

/s/ Anna M. Anderson
Anna M. Anderson (NE #28080),
*pro hac vice*
Benjamin J. Swanson (NE #27675),
*pro hac vice*
Assistant Attorneys General
Nebraska Attorney General's Office
1445 K Street, Room 2115
Lincoln, NE 68509
(402) 471-6034
anna.anderson@nebraska.gov
benjamin.swanson@nebraska.gov

*Attorneys for Plaintiff State of Nebraska*

**LETITIA JAMES**
Attorney General
State of New York

/s/ Nathaniel Kosslyn
Nathaniel Kosslyn, Assistant Attorney
General
(NY Bar No. 5773676), *pro hac vice*
nathaniel.kosslyn@ag.ny.gov
Alex Finkelstein, Assistant Attorney General
(NY Bar No. 5609623), *pro hac vice*
alex.finkelstein@ag.ny.gov
New York Office of the Attorney General
28 Liberty Street
New York, NY 10005
(212) 416-8000

**DAVE YOST**
Attorney General
State of Ohio

/s/ Kevin R. Walsh
Melissa G. Wright (Ohio Bar No. 0077843)
Section Chief, Consumer Protection Section
Melissa.Wright@ohioago.gov
Melissa S. Smith (Ohio Bar No. 0083551)
Asst. Section Chief, Consumer Protection
Section
Melissa.S.Smith@ohioago.gov
Michael S. Ziegler (Ohio Bar No. 0042206)
Principal Assistant Attorney General
Michael.Ziegler@ohioago.gov
Kevin R. Walsh (Ohio Bar No. 0073999),
*pro hac vice*
Kevin.Walsh@ohioago.gov
Senior Assistant Attorney General
30 East Broad Street, 14th Floor
Columbus, Ohio 43215
Tel: 614-466-1031

*Attorneys for State of Ohio, ex rel. Attorney
General Dave Yost*

**JEFF JACKSON**
Attorney General
State of North Carolina

*/s/ Charles White*
Charles G. White (N.C. State Bar No. 57735), *pro hac vice*
Assistant Attorney General
Kunal Choksi
Senior Deputy Attorney General
Josh Abram
Special Deputy Attorney General
N.C. Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6889
Facsimile: (919) 716-6050
E-mail: cwhite@ncdoj.gov
*Attorneys for Plaintiff State of North Carolina*


**DAVE SUNDAY**
Attorney General
Commonwealth of Pennsylvania

*/s/ Jonathan R. Burns*
Jonathan R. Burns
Deputy Attorney General
(PA Bar No. 315206), *pro hac vice*
Email: jburns@attorneygeneral.gov
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Tel: 717.787.4530

*Attorneys for Plaintiff the Commonwealth of Pennsylvania*


**PETER F. NERONHA**
Attorney General
State of Rhode Island

*/s/ Stephen N. Provazza*
Stephen N. Provazza (R.I. Bar No. 10435), *pro hac vice*
Assistant Attorney General
Rhode Island Office of the Attorney General

**DAN RAYFIELD**
Attorney General
State of Oregon

/s/ John Dunbar
John J. Dunbar (Oregon Bar No. 842100)
Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, Oregon 97201
Telephone: (971) 673-1880
Facsimile:  (971) 673-1884
E-mail: john.dunbar@doj.oregon.gov

*Attorneys for State of Oregon ex rel. Dan Rayfield, Attorney General*


**ALAN WILSON**
Attorney General
State of South Carolina

*/s/ Anna C. Smith*
C. Havird Jones, Jr.
Senior Assistant Deputy Attorney General
Jared Q. Libet (S.C. Bar No. 74975),
*pro hac vice*
Assistant Deputy Attorney General
Anna C. Smith (SC Bar No. 104749),
*pro hac vice*
Assistant Attorney General
Office of the South Carolina Attorney General
Post Office Box 11549
Columbia, South Carolina 29211
jlibet@scag.gov
annasmith@scag.gov
803-734-0536

*Attorneys for Plaintiff the State of South Carolina, ex rel. Alan M. Wilson, in His Official Capacity as Attorney General of the State of South Carolina*

150 South Main St.
Providence, RI 02903
Phone: 401-274-4400
Email: SProvazza@riag.ri.gov

*Attorney for Plaintiff State of Rhode Island*

**JAY JONES**
Attorney General
Commonwealth Of Virginia

*/s/ Joelle E. Gotwals*
Travis G. Hill
Chief Deputy Attorney General
Helen O. Hardiman
Deputy Attorney General
Richard S. Schweiker, Jr.
Senior Assistant Attorney General and
Section Chief
Joelle E. Gotwals (VSB No. 76779),
Senior Assistant Attorney General
*pro hac vice*
Chandler P. Crenshaw (VSB No. 93452)
Assistant Attorney General
*pro hac vice*
Office of the Attorney General of Virginia
Consumer Protection Section
202 N. 9th Street
Richmond, Virginia 23219
Telephone: (804) 786-8789
Facsimile: (804) 786-0122
E-mail: jgotwals@oag.state.va.us

*Attorneys for the Plaintiff Commonwealth of Virginia ex rel. Jay Jones, Attorney General*

**MARTY J. JACKLEY**
Attorney General
State of South Dakota

*/s/ Amanda Miiller*
By: Amanda Miiller (SD Bar No. 4271)
Deputy Attorney General
South Dakota Office of the Attorney General
1302 East SD Hwy 1889, Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215
Email: Amanda.Miiller@state.sd.us

*Attorneys for Plaintiff State of South Dakota*

**JOHN B. MCCUSKLEY**
Attorney General
State of West Virginia

*/s/ Laurel K. Lackey*
Laurel K. Lackey (WVSB No. 10267),
*pro hac vice*
Abby G. Cunningham (WVSB No. 13388)
Assistant Attorneys General
Office of the Attorney General
Consumer Protection & Antitrust Division
Eastern Panhandle Office
269 Aikens Center
Martinsburg, West Virginia 25404
(304) 267-0239
laurel.k.lackey@wvago.gov

*Attorneys for Plaintiff State of West Virginia, ex rel. Patrick Morrisey, Attorney General*

**NICHOLAS W. BROWN**
Attorney General State of Washington

*/s/ Claire McNamara*
Claire McNamara (WA Bar No. 50097)
Gardner Reed (WA Bar No. 55630)
Assistant Attorneys General
Washington State Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 340-6783
claire.mcnamara@atg.wa.gov
gardner.reed@atg.wa.gov

*Attorneys for Plaintiff State of Washington*

**JOSHUA L. KAUL**
Attorney General
State of Wisconsin

*/s/ Brittany Copper*
Brittany A. Copper
Assistant Attorney General
WI State Bar # 1142446, *pro hac vice*
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-1795
Brittany.copper@wisdoj.gov

*Attorneys for Plaintiff State of Wisconsin*

## ATTESTATION

I, Shaheen Sheikh, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED: March 13, 2026

*/s/ Shaheen Sheikh*
Shaheen Sheikh