Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

*Attorneys for Defendants Meta Platforms, Inc.
f/k/a Facebook, Inc. and Instagram, LLC*

*[Additional counsel listed on signature pages]*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>*People of the State of California, et al. v. Meta Platforms, Inc. et al.* | MDL No. 3047<br><br>Case Nos.: 4:22-md-03047-YGR<br>4:23-cv-05448-YGR<br><br>**META'S OPPOSITION TO STATE ATTORNEYS GENERAL MOTION *IN LIMINE* NO. 3 TO EXCLUDE LEGAL CONCLUSION TESTIMONY**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang<br><br>Date: June 26, 2026<br>Time: 8:00 AM<br>Place: Courtroom 1, 4th Floor |

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................... 1

ARGUMENT............................................................................................................................. 1

I.       Ms. Wirth Opines on Industry Standards, Not the Law........................................... 1

II.      Ms. Wirth Does Not Opine About the Constitutionality of Age Verification Laws in the United States. ......................................................................................................... 8

CONCLUSION......................................................................................................................... 9

META'S OPPOSITION TO STATE ATTORNEYS GENERAL MOTION IN LIMINE NO. 3 TO EXCLUDE LEGAL CONCLUSION TESTIMONY
4:22-md-03047-YGR; 4:23-cv-05448-YGR

**INTRODUCTION**

The State AGs' motion rests on the fundamentally flawed premise that Meta's expert, Mary Catherine Wirth, intends to proffer opinions about the legal requirements of the Children's Online Privacy Protection Act ("COPPA").  But as Ms. Wirth makes clear throughout her reports and in her deposition, her opinions about Meta's age gating practices rest on her extensive experience as a trust and safety professional for large technology companies, the Federal Trade Commission's ("FTC") guidance, and industry best practices.  She does not purport to opine on or interpret COPPA's legal requirements, and indeed has disclaimed any attempt to do so.  Similarly, she offers no legal opinions interpreting the meaning of the FTC's COPPA guidance or their legal import.  Instead, she refers to the guidance and opines on how it informs and establishes certain industry practices and standards.  An expert's opinion about industry standards is permissible even if that opinion references the law.  *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004).

Further, the AGs are wrong that Ms. Wirth opines about the constitutionality of age verification laws in the United States.  While Ms. Wirth describes her opinion that age verification conflicts with traditional free speech principles, she does *not* purport to claim that any age verification law would violate the First Amendment.

**ARGUMENT**

**I.      Ms. Wirth Opines on Industry Standards, Not the Law.**

The AGs' claim that Ms. Wirth provides legal opinions is based on a fundamental misunderstanding of Ms. Wirth's opinions and the law.  Meta does not dispute that an expert may not opine about the ultimate legal issue in a case.  But Ms. Wirth does not do so.  Instead, she opines about the *industry standards* that social media and other technology companies follow relating to age verification and age assurance.  These opinions do not infringe on the province of the Court and are permissible and relevant.

Ms. Wirth's opinions are relevant and helpful to the finder of fact.  Testimony about industry best practices for age gating and age verification, even if not dispositive, is relevant to Meta's defense that it complied with COPPA, the primary U.S. law governing Meta's obligations to under-13 users.  Moreover,

Ms. Wirth's testimony will directly rebut the opinions already proffered by the AGs' expert, Timothy Estes, who opines that ███████████████████████████████████████████████████████████ ██████████████████ *See* Ex. 1 (Estes Report) at ¶¶ 4; 72–73; 116.  Further, to the extent the AGs are permitted to challenge Meta's age verification processes under their "Unfairness Claims,"[1] testimony about industry practices of age gating would be highly relevant to whether Meta's age gating and age verification practices were reasonable.

These points hold even if the Court agrees with Meta that COPPA questions should not be submitted to the jury, including given the paucity of legal authority interpreting COPPA and the corresponding reality that COPPA compliance has been driven to a large degree by industry standards and informal FTC guidance and enforcement.  But these points are particularly true if the AGs do persuade the Court to submit COPPA claims to the jury.  A necessary basis for doing so would be that questions regarding COPPA compliance involve factual issues to which industry standards are plainly relevant.  And insofar as the Court strikes any specific opinions on this point that the AGs challenge as improper legal testimony, and submits COPPA questions to the advisory jury as the AGs request, Meta respectfully requests that *the Court* nonetheless instruct the jury on the points that are precluded on the grounds that they address matters of law.  *See, e.g.*, ECF 3131, AGs' Motion *in Limine* No. 3 ("Mot.") at 3 (challenging witness statements that ████████████████████████████████████████ and that the US ████████ ████████████████████████

*Multiple* cases cited by the AGs expressly hold that experts are permitted to testify about industry standards, even if doing so requires reference to the law.  For example, in *Hangarter*, while the Ninth Circuit acknowledged the general rule that "an expert witness cannot give an opinion as to her *legal conclusion*," it held that testimony that a party "failed to comport with industry standards" was permissible.  373 F.3d at 1016 (citation omitted and emphasis in original).  In *Hangarter*, an insurance dispute, the Court permitted an expert to testify that "Defendants deviated from industry standards" to "support[] a finding that they acted in bad faith," because the expert "never testified that he had reached a

---

[1] For the reasons stated in ECF 3123, Meta's Motion *in Limine* Number 5, the AGs should be precluded from introducing any evidence or argument about Meta's age verification features to support their claims.

META'S OPPOSITION TO STATE ATTORNEYS GENERAL MOTION IN LIMINE NO. 3 TO EXCLUDE LEGAL CONCLUSION TESTIMONY
4:22-md-03047-YGR; 4:23-cv-05448-YGR

legal conclusion that Defendants actually acted in bad faith." *Id.* And this was permitted even though the expert's "testimony that Defendants departed from insurance industry norms relied in part on his understanding of the requirements of state law" because "a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible. Indeed, a witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms." *Id.* at 1017 (citation omitted); *see also King v. GEICO Indem. Co.*, 712 F. App'x 649, 651 (9th Cir. 2017) (holding that expert testimony about industry standards and policies of the defendant was permissible even when the defendant's policies incorporated the statute at issue). Additionally, in *Nationwide Transport Finance v. Cass Information Systems*, while the Ninth Circuit approved of the trial court's decision to exclude an expert's testimony directly referring to and interpreting the Uniform Commercial Code and other legal sources of contractual duty, the trial court *did* permit that same expert to "'discuss industry conditions, standards, and practices,' as well as 'factual corporate norms.'" 523 F.3d 1051, 1058 (9th Cir. 2008). As these cases acknowledge, experts may not provide opinions about the meaning of the law or apply the law to the facts of a case. But experts may provide testimony about industry norms and standards—even if those norms require an understanding of legal requirements—without invading the province of the court or the jury.

Ms. Wirth's reports fall into these accepted limits. *First*, she bases her opinions on (1) her extensive experience as a trust and safety professional at large technology companies,[2] *see* Wirth Rep. ¶ 19; (2) the FTC's staff guidance for compliance with the Children's Online Privacy Protection Act (Mot Ex. E) ("COPPA FAQs"), *see* Wirth Rep. ¶ 6; and (3) industry best practices, drawn from Ms. Wirth's personal experience in the industry, as well as industry publications relied upon by large technology companies such as the Digital Trust & Safety Partnership ("DTSP") Age Assurance Best Practices, *see id.* ¶¶ 6, 8. Ms. Wirth expressly does not rely on or interpret the COPPA statute. *See id.* ¶ 33 n.21 ██

██████████████████████████████████████████████████████████████████████

████████████████████████████████████████████ *see also* Wirth Dep. Tr.

---

[2] Although Ms. Wirth is an attorney, she explained that ████████████████████████████ ████████████████████████ *See* Mot. Ex. A ("Wirth Rep.") ¶ 33 n.20; *see also* Ex. 2 ("Wirth Dep. Tr. (Feb. 24, 2026)") at 97:23–98:3.

(Feb. 24, 2026) at 188:2–8 ███████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

███████████████████████████ She instead provides opinions about whether Meta's age gating practices fall within industry-accepted standards and best practices.

*Second*, based as they are on this industry guidance, Ms. Wirth's opinions do not interpret COPPA or other laws, but merely describe industry standards. Her opinions do not, for example, interpret terminology in COPPA or describe what the regulation means. Instead, she ███████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████ *See* Wirth Rep. ¶¶ 31, 33 & n.21. And nowhere in her report or her deposition does she opine on the ultimate legal issue: whether Meta has complied with COPPA. *See Hangarter*, 373 F.3d at 1016 (expert testimony permissible when expert "never testified that he had reached a legal conclusion that Defendants actually acted in bad faith (i.e., an ultimate issue of law)"); *see also King*, 712 F. App'x at 651 (expert testimony permissible when expert "did not address an ultimate issue of law, but rather testified to GEICO's handling of the claim in relation to industry standards and GEICO's own claim manual").

Indeed, Ms. Wirth repeatedly disclaimed providing a legal opinion throughout her reports and depositions. *See, e.g.*, *supra* at pp. 3–4; Wirth Dep. Tr. (Feb. 24, 2026) at 108:5–14 ███████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████ *id.* at 112:13–18 ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

███████████████████████████████████ *id.* at 197:14–20 ████████████████████

████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████ Alongside Ms. Wirth's informed explanation about how practitioners rely on the COPPA FAQs, Ms. Wirth's express disclaimers that she is not providing legal conclusions make clear that she is speaking from her industry—not legal—expertise.

Moreover, the AGs are wrong that Ms. Wirth's discussion of the COPPA FAQs contains any impermissible legal opinions. *See* Mot. at 6–7. *First*, this Court has already stated that the "FAQ[s] do not control." ECF 1214 at 20. And, as the AGs admit in their Motion, "[t]he issues in this case are whether Meta complied with COPPA and violated the State AGs' consumer-protection laws—*not whether Meta complied with the COPPA FAQs*." Mot. at 7 (emphasis added). *Second*, Ms. Wirth makes clear that she relies on the FAQs because they are guidance to industry in plain language that non-attorneys can understand, and, therefore, relied on by the industry to evaluate their compliance with COPPA. *See* Wirth Dep. Tr. (Feb. 24, 2026) at 188:4–8; *see also id.* at 189:13–16 ███████████████████████ ███████████████████████████████████████████████████ ███████████████████████████ As such, the FAQs inform and establish standards within the industry.

Indeed, even if some portions of the FAQs could be viewed as interpreting the law—*e.g.*, sections attempting to define terms used in the statute like "directed to children," *see* COPPA FAQ D.1—many instead address practical questions without any attempt to define the law—*e.g.*, statements about how the industry may technically comply with COPPA, on issues such as stated age, *see id.* A.12, or investigating individuals' ages, *see id.* H.1. It is the latter type of FAQ that Ms. Wirth emphasizes in her report. As she testified in her deposition, she focuses primarily on three key principles from the FAQs: (1) ███████ ██████████████████████████████████████ (2)████████████████████████████ ████████████████ and (3)███████████████████████ ████████████████████████████████████████████████████ Wirth Dep. Tr. (Feb. 24, 2026) at 104:2–12. These principles are addressed to specific industry guidance—not interpreting the COPPA statute.

Indeed, all of the opinions that the AGs cite from Ms. Wirth as "legal conclusions" are supported by sources on industry best practices—not legal authority—and are analyzed by Ms. Wirth in the context of identifying industry standards:

- ██████████████████████████████████████ *Mot. at 3 (quoting Wirth Rep. ¶ 12).* Here, Ms. Wirth cites a publication from the International Association of Privacy Professionals

5

that describes age verification laws in other countries (*e.g.*, Australia and the United Kingdom), and, conversely, the lack of such requirements in the United States. Wirth Rep. ¶ 12 n.3. Moreover, the AGs omit the entire sentence, which reads: *Id.* (emphasis added). Ms. Wirth here merely highlights specific types of age verification laws that have been adopted in other countries, and notes the absence of similar laws in the United States. She does not purport to interpret or give meaning to any specific U.S. legal requirements.

- *Mot. at 3* (quoting Wirth Rep. ¶ 35), and *id.* (quoting Wirth Rep. ¶ 58). Although Ms. Wirth does not support these specific sentences with citations, these propositions are supported by the same industry publication described directly above. Moreover, although Ms. Wirth makes reference to one U.S. Supreme Court case when later discussing the United States's lack of age verification law, "a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible." *Hangarter*, 373 F.3d at 1017 (citation omitted).

- *Mot. at 3* (quoting Wirth Rep. ¶ 47). As Ms. Wirth explained in her deposition, she is not describing the legal effect of the COPPA FAQs, but instead describing how the industry views compliance with the COPPA FAQs in her experience (Wirth Dep. Tr. (Feb. 24, 2026) at 175:12–18):

- *Mot. at 3 (quoting Wirth Rep. ¶ 32).* Ms. Wirth cites the COPPA FAQs for this opinion, and explicitly writes that (quoting *FTC Business Guidance, available at* https://www.ftc.gov/business-guidance). Thus, Ms. Wirth's reference to platforms' "obligation[s]" is not tethered to any *law*, but to the industry standards that platforms follow.

- *Mot. at 3 (quoting Ex. C, Wirth Dep. (May 8, 2026) 57:13–15).* Ms. Wirth made clear on the very same page of her deposition transcript that she was referring to the COPPA FAQs with this statement: Wirth 5/8/26 Dep. Tr. at 57:5–12. Thus, Ms. Wirth's statement about a "baseline rule" is not a legal opinion, but an opinion about the "baseline rule" that the industry follows.

- *Mot. at 3 (quoting Wirth Rep. ¶ 12).* Although Ms. Wirth cites here to COPPA's implementing regulations, she later supports this exact proposition with the DTSP Age Assurance Best Practices publication, an industry standards publication. *See* Wirth

Rep. ¶ 58 & n.48 ████████████████████████████████████████

Moreover, this opinion is directly responsive to the *AGs'* expert, who opines that Meta's age assurance program is ████████████████████████████████████████████████████ *See id.* (quoting Estes Rep. at ¶ 4).

- ██████████████████████████████████████████████ *Mot. at 3 (quoting Wirth Rep. ¶ 56).* Ms. Wirth explicitly cites the COPPA FAQs for this opinion. *See* Wirth Rep. ¶ 56 ███████████████████████████████████████████ Again, Ms. Wirth's opinion here does not interpret COPPA or make any conclusions about the liability Meta may face under it, but simply describes what the FAQs say.

Similarly, the opinions that the AGs describe as "appl[ying] COPPA's legal classifications to the facts of this case," Mot. at 4, are all supported by Ms. Wirth's experience or non-legal sources, such as the COPPA FAQs or industry standards, and reflect her opinion about how the industry views and applies certain standards:

- ████████████████████████████████████████████████████ *Mot. at 4–5 (quoting Wirth Dep. (May 8, 2026) 58:3–12).* As Ms. Wirth made clear at her deposition, she based this opinion on her experience—not her legal interpretation of the term.

- *"Ms. Wirth similarly relies throughout her report* ██████████████████████████ ███████████ *Mot. at 5 (citations omitted).* Ms. Wirth does not opine anywhere in her report that Meta is not "directed to children." Instead, she declined to answer multiple questions in her deposition about ██████████████ Wirth Dep. Tr. (Feb. 26, 2026) at 195:5–19 ████████████ ████████████████████████████████████████████████████████

- *Ms. Wirth* ████████████████████████████████████ ██████████ *Mot. at 5 (citing Wirth Rep. ¶¶ 12, 58).* Again, here, Ms. Wirth supports her opinion by citation to industry standards. Wirth Report ¶ 58 & n.48. While she cites to the COPPA implementing regulations, she later supports the same opinion with an industry publication. *Id.*

Finally, although the AGs claim that Ms. Wirth's testimony is prejudicial and risks confusing the jury, Mot. at 7, *not* allowing Ms. Wirth's testimony would seriously prejudice Meta. The AGs will put forward an expert who claims that ████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████ *See, e.g.,* Ex. 1 (Estes Report) at ¶¶ 4; 72–73; 116. Ms. Wirth is

7

permitted to rebut these claims by offering opinions about Meta's compliance with the best practices actually followed by members of the industry. Merely because those best practices—understandably—have developed with reference to COPPA's legal requirements does not make her opinions impermissible. *See Hangarter*, 373 F.3d at 1017 ("testimony that Defendants departed from insurance industry norms relied in part on his understanding of the requirements of state law" was permissible and not legal opinion).

II.     **Ms. Wirth Does Not Opine About the Constitutionality of Age Verification Laws in the United States.**

The AGs' claim that Ms. Wirth opines that the First Amendment prohibits age verification laws in the United States is false. Ms. Wirth does not opine about the constitutionality of age verification laws in the United States. Instead, in only five paragraphs of her report, she explains her view that imposing age verification requirements would ███████████████████████████████████████ ████████████████████ Wirth Rep. ¶ 62. And she opines that █████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████ *Id.* ¶ 63. Because of these tradeoffs, she opines that █████████████ ████████████████████████████████████████ *Id.* ¶ 61. Instead, the closest Ms. Wirth comes to discussing the constitutionality of age verification is █████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████ *See id.* But "a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible." *Hangarter*, 373 F.3d at 1017. Ms. Wirth does not offer a legal conclusion as to the constitutionality of age verification statutes. Rather, she merely describes the tradeoffs associated with requiring age verification at sign up. That those tradeoffs implicate the constitutional right to free speech does not transform her opinions about industry practices to legal conclusions.

Nor are these opinions substantially more prejudicial than probative, as the AGs argue. Mot. at 9 n.4. The tradeoffs that Meta faces when deciding what type of age verification practices to implement are highly relevant to Meta's defense, particularly in light of the AGs' experts' multiple opinions that second-guess Meta's age verification practices. *See* ECF 3118-1 (Meta's Motion *in Limine* Number 2). And the

8

jury is not likely to be "misled" by her testimony because she does not offer an opinion about the constitutionality of age verification.

## CONCLUSION

For the foregoing reasons, Meta respectfully requests that the Court deny the State AGs' Motion *In Limine* No. 3 to Exclude Legal Conclusion Testimony.

DATED:  June 17, 2026

Respectfully submitted,

By:    */s/ Ashley M. Simonsen*

Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

Paul W. Schmidt, *pro hac vice*
Timothy C. Hester, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
Email: pschmidt@cov.com
Email: thester@cov.com

*Attorneys for Defendants Meta Platforms, Inc.
f/k/a Facebook, Inc. and Instagram, LLC*

9