Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

*Attorneys for Defendants Meta Platforms, Inc.
f/k/a Facebook, Inc. and Instagram, LLC*

*[Additional counsel listed on signature pages]*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case Nos.: 4:22-md-03047-YGR |
| This Document Relates To: | 4:23-cv-05448-YGR |
| *People of the State of California, et al. v. Meta Platforms, Inc. et al.* | **META'S OPPOSITION TO STATE AGS' MOTION *IN LIMINE* NO. 2 SEEKING TO EXCLUDE FROM THE ADVISORY JURY PHASE OF TRIAL EVIDENCE OF META'S PLATFORM AND POLICY CHANGES MADE AFTER THE RELEVANT TIME PERIOD** |
| | Judge: Hon. Yvonne Gonzalez Rogers |
| | Magistrate Judge: Hon. Peter H. Kang |
| | Date: June 26, 2026 |
| | Time: 8:00 AM |
| | Place: Courtroom 1, 4th Floor |

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................... 1

ARGUMENT ..................................................................................................................................... 2

I.      The AGs' Motion Improperly Seeks to Exclude a Broad Category of Evidence. .............. 2

II.     The AGs' Motion Improperly Seeks to Exclude Relevant Evidence. ................................ 3

III.    A Categorical Bar on Post-RTP Evidence Would Be Unworkable at Trial. ...................... 6

IV.     Meta's Conduct During Discovery Is Consistent with Presenting Post-RTP Trial
        Evidence. ............................................................................................................................. 7

V.      If This Court Grants the AGs' Motion, the Ruling Should Apply Equally to Both Sides. 10

CONCLUSION ................................................................................................................................ 10

## **INTRODUCTION**

The AGs ask this Court to prospectively and categorically bar Meta from introducing, during the "advisory jury phase of trial," *any* evidence concerning *any* "changes Meta made to its platforms and/or policies" after the relevant time period ("RTP") applicable to discovery in these cases.  *See* AGs' Motion *in Limine* No. 2, ECF 3129 ("Mot.") at 1.[1]  The AGs do not identify any specific exhibit or portion of testimony they seek to exclude.  Instead, they ask the Court to arbitrarily preclude a range of evidence based solely on when it was created and without regard to whether it is a public document, is a previously produced document, or *relates* to the (admittedly relevant) RTP.  This Court's Civil Pre-Trial Standing Order makes clear that such sweeping requests are "routinely denied."  Pre-Trial Standing Order ¶ 4(a).  That is for good reason.  To determine whether any particular piece of post-RTP evidence should be excluded, the Court would have to conduct a particularized assessment that weighs the relevance of the evidence (and any prejudicial impact) at the time it is proffered, considering the context of trial and other evidence and argument being presented.

The Motion also fails on the merits.  Specific post-RTP evidence is directly relevant to the AGs' central assertion that Meta "has engaged in a widespread scheme of deceptive and unfair conduct."  AGs' Summary Judgment Opposition, ECF 2779 ("MSJ Opp.") at 1.  The AGs claim that certain statements *currently* on Meta's websites concerning its policies are inaccurate.  *See* ECF 3144, Statement No. 85 (describing date of alleged misrepresentation as "Current").  Evidence concerning the *current* nature and enforcement of those policies is thus necessary to prove that such statements are not false or misleading *currently*.  The AGs likewise assert that Meta intentionally "design[ed] its social media platforms in a manner that harmed the mental and physical health of children across the country."  Letter Brief by the AGs Regarding Trial Strategy, ECF 2626 ("Letter Brief") at 2.  Evidence concerning Meta's longstanding efforts to develop youth safety tools directly contradicts that assertion, and post-RTP evidence concerning the implementation and effectiveness of those tools provides necessary context underscoring that Meta's earlier efforts to develop those tools were sincere.

---

[1] For purposes of this Opposition only, Meta refers to the RTP as ending on October 30, 2024, the discovery cutoff date for documents relating to Teen Accounts.  *See* Mot. at 1 (seeking "to exclude evidence showing that Meta changed its platforms or policies after October 30, 2024").

META'S OPPOSITION TO STATE AGS' MOTION IN LIMINE NO. 2 SEEKING TO EXCLUDE FROM THE ADVISORY JURY PHASE OF
TRIAL EVIDENCE OF META'S PLATFORM AND POLICY CHANGES MADE AFTER THE RELEVANT TIME PERIOD
4:22-md-03047-YGR; 4:23-cv-05448-YGR

A blanket exclusion of post-RTP evidence would also create unworkable practical problems at trial, because evidence relevant to injunctive relief cannot be cleanly segregated from evidence relevant to liability, and witnesses cannot realistically be expected to testify about Meta's platforms without drawing on their knowledge of matters occurring after October 30, 2024. Even if they could, the Motion would effectively require at least some witnesses to testify twice—once in the liability phase (about the past) and then again during the injunctive-relief phase (about the present), an approach that would be inefficient and burdensome for the Court, the parties, and the witnesses. Further, during discovery, the AGs asked for and in fact received substantial amounts of post-RTP evidence, undermining their central argument. The parties' reliance on a discovery cutoff date to organize complex document searches also has little bearing on the relevance of evidence at trial. The Motion should be denied.

## ARGUMENT

### I.    The AGs' Motion Improperly Seeks to Exclude a Broad Category of Evidence.

The AGs seek to exclude all "evidence and testimony related to changes Meta made to its platforms and/or policies after the Relevant Time Period." Mot. at 1. In effect, the Motion seeks an order barring an entire temporal category of evidence without individualized analysis of the relevance of any particular testimony or document. Such a "wholesale exclusion of evidence" would be "arbitrary because it deprive[s] [Meta] of the evidence essential to" mounting a defense. *Sidibe v. Sutter Health*, 103 F.4th 675, 704 (9th Cir. 2024) (reversing trial court's application of a "*per se* rule" excluding pre-2006 evidence) (citation omitted); *see also, e.g., Cerabio LLC v. Wright Med. Tech., Inc.*, 410 F.3d 981, 994 (7th Cir. 2005) (listing decisions that "have not hesitated to overturn blanket evidentiary rulings" excluding evidence based on a particular date).

This Court's Civil Pre-Trial Standing Order expressly provides that courts "routinely" deny motions *in limine* that seek to "exclude broad categories of possible evidence." Pre-Trial Standing Order ¶ 4(a). The AGs' Motion does just that. It encompasses *any* "evidence or testimony related to changes Meta made to its platforms and/or policies after the Relevant Time Period." Mot. at 1. That covers nearly two years' worth of evidence ranging from Meta's "███████████████████████████████," Ex. A, Otaru Dep. Tr. at 144:5–7, to "████████████" designed "███████████," Ex. B, Mosseri Dep. Tr. at 907:4–8, to Meta's "███████████████████████

████████████████████████,” Ex. C, Clegg Dep. Tr. at 642:19–25.[2]  Such sweeping pretrial motions are "disfavored because courts are better situated during the actual trial to assess the value and utility of evidence, instead of tackling the matter in a vacuum." *Vincent v. Reyes*, 2021 WL 4262289, at *1 (N.D. Cal. Sept. 20, 2021) (cleaned up).  The Court should resolve any issues of relevance or prejudice concerning post-RTP evidence as the evidence comes in at trial.  *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008) ("Relevance and prejudice under Rules 401 and 403 . . . are generally not amenable to broad *per se* rules.").

## II.    The AGs' Motion Improperly Seeks to Exclude Relevant Evidence.

The AGs do not clearly delineate the evidence they seek to exclude, and for good reason: there is no clear, temporally-based way to delineate relevant from irrelevant evidence.  *See* Mot. at 2 (broadly seeking to exclude evidence "*related to* changes Meta made to its platforms and/or policies after the [RTP]") (emphasis added).  By its terms, the Motion seeks to exclude evidence encompassing publicly available or produced documents that bear on a variety of issues directly relevant to this case.

For instance, in response to the AGs' discovery requests, Meta produced data detailing whether and how users on its platforms employed Meta's safety features, such as the "Take a Break" or "Daily Limit" tools—tools the AGs directly challenge as unfair or unconscionable practices under the consumer protection statutes of the four States at issue ("Unfairness Claims").  *See* Letter Brief at 6 (asserting that "Meta's tools like Sleep Mode, Quiet Mode, Take a Break, Daily Limit, and Teen Accounts" constitute unfair or unconscionable practices).  For some of those safety features, Meta provided the AGs with data showing usage rates extending well past October of 2024.  *See* Simonsen Decl. ¶¶ 14–15 & Ex. Z, Meta's Seventh Supp. Resps. & Objs. to Pls' 2nd Interrogatories, at 3 ("████████████████████████

████████████████████████████████████████

---

[2] The AGs' attempt to exclude deposition testimony related to Teen Accounts from after October 30, 2024, *see* Mot. at 2, is particularly incongruous given it was the AGs themselves who requested discovery on Teen Accounts, requiring the parties to negotiate a new set of search terms and custodians to be applied to newly collected documents post-dating April 1, 2024 through to the then-present date, *see* Mot. Ex. 7, Meta Defs.' Resp. & Objs. to Pls' 15th Set of RFPs (Nov. 4, 2025) at 4; and given that the AGs otherwise concede that Teen Accounts is a relevant issue, Mot. at 1 (conceding that AGs received discovery on Teen Accounts, but arguing for arbitrary cutoff of October 30, 2024, even though they received deposition and other discovery on Teen Accounts past this date).

META'S OPPOSITION TO STATE AGS' MOTION IN LIMINE NO. 2 SEEKING TO EXCLUDE FROM THE ADVISORY JURY PHASE OF TRIAL EVIDENCE OF META'S PLATFORM AND POLICY CHANGES MADE AFTER THE RELEVANT TIME PERIOD
4:22-md-03047-YGR; 4:23-cv-05448-YGR

█████████████████████████.”).  Meta may understandably at trial need to rely on such data, detailing how users interacted with its time management tools, given the AGs' Unfairness Claims.

Other more recent documents that may be relevant include public blog posts, news articles, and press releases about Meta's ongoing safety initiatives and integrity reporting, including Meta's ongoing efforts to moderate content on its platforms.  *See, e.g.*, Simonsen Decl. ¶ 33 & Ex. AA (Meta's 12/11/2025 publication on "Integrity Reports, Third Quarter 2025").  It is hardly surprising that Meta would rely on such post-RTP evidence when the AGs' list of alleged actionable misrepresentations includes several statements Meta made about its content moderation efforts *after* October 30, 2024.  *See* ECF 3144, Statement No. 80 (3/6/2025 statement that "[a]nother way to think of prevalence is how many views of violating content we didn't prevent"); No. 81 (11/4/2025 statement about Meta's "Best Interests of the Child Framework"); No. 83 (Meta's "Q4 2025" "Community Standard Enforcement Report[]").[3]

This type of evidence, while post-dating the RTP, may also bear directly on events that occurred *before* October 30, 2024 (which the Motion concedes is relevant).  For instance, Meta has published articles detailing the evolution of its policies and practices during the RTP, such as an October 2025 blog post titled "Empowering Parents, Protecting Teens: Meta's Approach to AI Safety."  *See* Simonsen Decl. ¶ 34 & Ex. BB (discussing "automatic safeguards already provided by Teen Accounts").  These articles, while related to post-RTP changes, describe safety frameworks that Meta had already developed and implemented *during* the RTP, and thus may be relevant.

Post-RTP evidence is also directly relevant to the AGs' claims that Meta made deceptive statements about its under-13 policies.  At the May 27, 2026 Pretrial Conference, the Court ordered the AGs to submit a list that identifies, for each of Meta's alleged misrepresentations, the "who, what, where, when, and why"—i.e., who made each statement, where the statement was made, *when the statement was made*, and why it is misleading.  *See* May 27, 2026 Tr. at 46:24–47:4.  In the list submitted by the AGs, they identified the "current" period as the time "when" certain alleged misrepresentations were made.  Specifically, they identified certain representations that *currently* appear on Meta's websites concerning

---

[3] Meta maintains that challenges to its content-moderation efforts are categorically barred by Section 230.  *See generally* ECF 3122-1, Meta's Motion *in Limine* No. 4 to Exclude Evidence of Publishing Activities or Barred Features to Prove Misrepresentation Claims (including statements regarding publishing activities).

the effectiveness of its under-13 policy. *See, e.g.*, ECF 3144, Statement No. 85 (identifying "Current" statement on "Meta Webpage" that "[w]e will delete the account if we can't verify the account is managed by someone over 13 years old"). By targeting statements Meta is making *now*—and that the AGs contend are misleading *now*—the AGs are requiring the jury to assess Meta's continuing efforts to enforce its U13 policies. Evidence concerning Meta's present-day enforcement mechanisms is therefore directly probative of whether any such representations are misleading. If Meta is precluded from presenting such evidence, the AGs will be free to argue that Meta's representations about its policies are "[c]urrent[ly]" deceptive without Meta being able to demonstrate the actual measures it employs to enforce those policies. No rule of evidence supports that one-sided result. *Cf.* Mot. at 2.

The AGs also allege that Meta engaged in unfair and unconscionable practices by "knowingly design[ing] its Social Media Platforms to include features that Meta knew to be psychologically and physically harmful to young users." ECF 1214 ("MTD Order") at 14; *see also, e.g.*, MSJ Opp. at 30 ("Meta designed frictionless account switching that serves as an end-run around safety tools … [,] promoting compulsive engagement"). Central to this claim is the assertion that Meta's platform design is *intentionally* harmful to minors. Post-RTP evidence concerning the implementation and effectiveness of youth safety tools that were designed and developed *during* the RTP is directly relevant to rebutting this theory: The AGs cannot allege that Meta designed its platforms to harm teens and then preclude Meta from showing the jury the safety tools it developed and deployed to protect them. Such evidence is probative of Meta's intent and undermines the AGs' theory of deliberate indifference to youth safety.

Through introduction of post-RTP evidence, Meta "is not seeking to expand or amend the scope of [the AGs'] claims." *Jones v. Perez-Pantoja*, 2024 WL 3748328, at *5 (N.D. Cal. Aug. 8, 2024). Rather, Meta "seeks to present evidence that puts [the AGs'] claims in context and helps explain the connection between the alleged events." *Id.* (denying motion *in limine* to preclude evidence outside a relevant time period); *see also United States v. Chaudhry*, 2008 WL 2128197, at *21 (N.D. Cal. May 20, 2008) (similar). The AGs have stated unequivocally that they will seek to prove their misrepresentation claims "based on deceptive conduct more generally or a deceptive scheme." ECF 3103 at 1 (arguing that "numerosity is important" to proving "scheme to deceive"); *see also, e.g.*, ECF 2972 at 1 ("the number of misrepresentations reflects the widespread and pervasive nature of Meta's scheme to deceive the public

about the safety of its social media platforms"). To be clear, Meta strenuously disputes this framing, both as a matter of law and on the merits, *see generally* ECF 3115, Meta's Motion *in Limine* No. 1 at 8–9; but by framing their claims as a broad, continuing "scheme," the AGs have clearly opened the door to evidence bearing on the scope, nature, and duration of Meta's alleged conduct.

### III.     A Categorical Bar on Post-RTP Evidence Would Be Unworkable at Trial.

The AGs concede that post-RTP evidence "may bear on injunctive relief." Mot. at 3. Indeed, the AGs have previously argued that "testimony post dating April 1, 2024" concerning the "development of safety initiatives" would be "directly relevant in establishing the appropriateness and scope of injunctive relief in this action" and in addressing the "likelihood of recurrence" of any allegedly unlawful conduct. ECF 1956 at 5.

It would be burdensome for the parties (and this Court) to present post-RTP evidence only during the "injunction" phase of the trial. *Contra* Mot. at 3. For one, the AGs have represented that they plan to use at trial only "*one day* for injunctive relief." Apr. 15, 2026 Tr. at 78:1–12 (emphasis added). And the same witnesses who will testify about liability issues will also testify about matters relevant to injunctive relief. Requiring those witnesses to testify in two separate phases, or to artificially cabin their testimony to RTP events during the advisory jury phase, only to return later for the injunctive relief phase, would be burdensome and inefficient. *Cf. Stevenson v. Holland*, 504 F. Supp. 3d 1107, 1127 (E.D. Cal. 2020) ("In so far as the liability evidence and damages evidence are entwined, bifurcating trial would raise additional line-drawing questions as to what evidence is relevant and admissible at the separate mini-trials."). The AGs rely on this Court's decision in *MediaTek Inc. v. Freescale Semiconductor, Inc.*, 2014 WL 587098, at *3 (N.D. Cal. Feb. 13, 2014), to argue that this evidence should be excluded from the advisory jury phase of trial. Mot. at 3. But "the *sole purpose* for which" the evidence at issue in *MediaTek* was "relevant concern[ed] the MediaTek's claim for injunctive relief." *MediaTek Inc.*, 2014 WL 587098, at *3 (emphasis added). Here, by contrast, much of the evidence the AGs seek to exclude is relevant to *both* liability and injunctive relief, making such segregation impracticable.

Nor can witnesses realistically be expected to testify only about the state of Meta's platforms before October of 2024. Meta's algorithms, features, and policies are constantly evolving. Witnesses who work on these platforms on a daily basis cannot reasonably be expected to recall and testify with

6

precision about the exact state of Meta's algorithms and features at specific points during the RTP (when the alleged statements were made, or when the challenged features were, according to the AGs, "unfair and unconscionable"), while ignoring the current state of those systems. If asked on cross-examination about how a particular feature works, a witness may be unable to answer without reference to the present day. The AGs' proposed bar would require witnesses to reconstruct from memory how each feature operated years ago—possibly at *different*, specific points in time—while studiously avoiding any mention of how it operates today. This is neither realistic nor conducive to truthful, complete testimony.

**IV.     Meta's Conduct During Discovery Is Consistent with Presenting Post-RTP Trial Evidence.**

The centerpiece of the AGs' Motion is the assertion that Meta "repeatedly relied on the Relevant Time Period end date to deny the State AGs' requests for discovery regarding changes in Meta's policies and platforms following that date." Mot. at 2. The AGs contend that Meta should therefore be estopped from presenting post-RTP evidence. *See id.* As a threshold matter, the AGs asked for and in fact received substantial post-RTP evidence during discovery, and they have confirmed their intention to introduce post-RTP evidence at trial. Their argument also reflects a fundamental misunderstanding about the purpose of discovery cutoff dates and the standard for admitting evidence at trial.

Contrary to the AGs' assertion (Mot. at 2), they *have* received a significant amount of post-RTP evidence. The AGs elicited testimony from multiple deponents about the current state of Meta's safety features, including testimony about Meta's U13 policies in June 2025 from a witness whom they will depose again (in her personal capacity) *next month*. *See* Ex. D, 6/16/25 Hartnett Dep. Tr. at 145:9–23 (███████████████████████████████████████████████ ██████████") (emphasis added); *see also id.* at 56:23–57:5 (asking for Ms. Hartnett's ████████ ████████████████████████████████) (emphasis added); Simonsen Decl. ¶ 6 (confirming July 2026 for Ms. Hartnett's follow-up deposition). The AGs have repeatedly asked questions that demand reference to the deponent's post-RTP knowledge. *See, e.g.*, Ex. E, 11/7/24 Dow Dep. Tr. at 27:14–17 (asking for ██████████████████████████████████████'"); Ex. F, 12/17/25 Otaru Dep. Tr. at 50:15–18 ("████████████████████████████████████████████ ████); *id.* at 118:9–10 ██████████████████████████████████████████████); Ex. G, 12/10/25 Backstrom Dep. Tr. at 98:21–24 (asking for ████████████████████████ *id.* at 43:2–22

(asking for ███████████████████████████████████████████████████████████ ████████████ Ex. H, 12/17/24 Kilstein Dep. Tr. at 48:3–25 (asking ██████████████████ ████████████████████████████████████) (all emphases added).

The AGs had still further opportunity to obtain post-RTP evidence through four depositions of Meta witnesses taken by the Tennessee AG this Spring, which were focused on documents Meta had downgraded off its privilege log between September and December 2025. *See* ECF 2949 ¶ 11; Simonsen Decl. ¶ 11. At Plaintiffs' request, Meta agreed to allow the AGs to attend these depositions; to ask questions about documents post-dating the RTP (through December 31, 2025) that Meta had recently produced to New Hampshire AG relating to the "MYST" study; and to then use any such documents in the MDL "as if they were produced to Plaintiffs in the MDL/JCCP," including by adding them to their exhibit list or experts' materials considered lists. ECF 2949 ¶ 11–14; *see also* Simonsen Decl. ¶ 11.

Nor did the AGs object when post-RTP testimony was offered on the record. For instance, during one deposition, a Meta witness provided testimony concerning how Meta's algorithms operated as of the date of the deposition—which was months after the RTP cutoff date—and the AGs never objected. *See, e.g.*, 6/26/25 Backstrom Dep. Tr. at 25:4–15 ██████████████████████████████████ ██████████████████████████████████████████████████████████████████ █████████) (emphasis added); *see also* Ex. A, Otaru Dep. Tr. at 144:8–19 (████████████ ██████████████████████████████████████████████████████████████████) (Ex. J, ███████████████.

Meta also produced to the AGs a significant amount of data post-dating the end of the RTP. For example, at the AGs' insistence, Meta produced data reflecting the results of Meta's models that predict the likelihood that accounts may belong to the same users for dates spanning April 2025 through July 2025. Simonsen Decl. ¶ 14. Meta also produced data reflecting the usage rates of certain safety tools for the time period after October 30, 2024, including usage rates for "Your Activity" on Instagram between September 2024 and March 2025, and "Take a Break" on Facebook between June 2024 and May 2025. *See id.* ¶ 15. Similarly, when Meta answered interrogatories served by Plaintiffs (including the AGs), it did not artificially constrain its responses to April 1, 2024, though it asserted a general RTP objection. *See* Ex. K (Meta's 11/18/24 2nd Supp. Interrogatory Resps.). Meta answered questions about its algorithms

8

as of the present day because it would be impossible to recreate them as they existed at any particular prior point in time.  *See id.* at 8 ("███████████████████████████████████████ ██████████.]") (emphasis added).

The AGs themselves seek to rely on post-RTP evidence at trial.  Indeed, over 200 documents on the AGs' exhibit list post-date October 30, 2024, and over 500 documents post-date April 1, 2024.  Simonsen Decl. ¶ 17.  The AGs have also relied on purported tests on Meta's safety features conducted by former Meta employee Arturo Béjar **in 2025**.  *See, e.g.*, *id.*, Ex. L, 4/7/25 Béjar Dep. Tr. at 160:6–161:4 ("I keep testing this regularly[.]"); *id.* at 196:2–6 (discussing "testing that [Béjar] did a week ago" and over "the last month"); *id.* at 265:22–25 ("I tested it again in the last week.").[4]  To support their argument that "there is ample evidence of the addictive nature and design of Meta's platforms, and Meta's knowledge thereof," the AGs point to expert reports premised on research and literature post-dating October 2024.  MSJ Opp. at 8–10 (citing Ex. O, Trial Report of Mitch Prinstein, Ph.D.; Ex. P, Trial Report of Bradley Zicherman, Ph.D.; Ex. Q, Trial Report of Arvind Narayanan, Ph.D.; Ex. R, Trial Report of Adam Alter, Ph.D.).  Indeed, *every* expert that the AGs plan to call at trial relies on post-RTP research or evidence in their report.  *See* Simonsen Decl. ¶¶ 21–31 & Exs. O–Y.  The AGs cannot selectively rely on post-RTP evidence when it suits their case while seeking to bar Meta from doing the same.

The AGs contend that Meta "has not represented that its affirmative defenses rest on platform or policy changes post-dating the [RTP], nor has Meta timely disclosed evidence of such changes."  Mot. at 2.  But the AGs acknowledge that Meta elicited such testimony in depositions, *see id.*, which amounts to a concession that they had ample notice that Meta might rely on such evidence at trial, and the opportunity to develop the record on these issues through the depositions where such testimony was elicited.

The AGs' reliance on Meta's positions regarding the scope of Rule 30(b)(6) deposition topics is similarly misplaced.  As this Court has recognized, 30(b)(6) topics merely set "the minimum about which the witness must be prepared to testify, not the maximum."  *Detoy v. City & Cnty. of San Francisco*, 196

---

[4] Notably, Mr. Béjar testified about these purported "tests" at both the first JCCP trial and the New Mexico trial.  *See* Simonsen Decl. ¶¶ 19–20 & Exs. M, N.  At the JCCP Trial, Mr. Béjar testified that one such test video—which the AGs have included on their preliminary exhibit list—was "from the beginning of 2025."  Ex. M (3/5/26 JCCP Tr.) at 4912:11–17.  Meta has moved *in limine* to exclude such "test" account evidence as prejudicial and barred by Section 230.  *See* Meta's Motion *in Limine* No. 3, ECF 3119, at 3.

META'S OPPOSITION TO STATE AGS' MOTION IN LIMINE NO. 2 SEEKING TO EXCLUDE FROM THE ADVISORY JURY PHASE OF TRIAL EVIDENCE OF META'S PLATFORM AND POLICY CHANGES MADE AFTER THE RELEVANT TIME PERIOD
4:22-md-03047-YGR; 4:23-cv-05448-YGR

F.R.D. 362, 366 (N.D. Cal. 2000).  The fact that Meta argued certain topics fell outside the scope of Rule 30(b)(6) designations does not preclude those witnesses from testifying about post-RTP matters at trial.

Putting aside the AGs' mischaracterization of the discovery record, there is no inconsistency between enforcing a discovery cutoff date and later presenting post-RTP evidence at trial.  The purpose of a discovery cutoff is to provide structure and prevent the indefinite expansion of pretrial proceedings.  As this Court explained, "[c]ourts routinely set a logical or temporal end point to fact discovery—otherwise a party could insist on pursuing fact discovery on myriad issues right up to the eve of trial, thereby hindering other pretrial proceedings and, ultimately, the orderly preparation of a case for trial." *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 2025 WL 1530517, at *4 (N.D. Cal. May 29, 2025) (Kang, J.).  Meta's enforcement of the discovery cutoff date thus could not operate to waive its right to present relevant post-RTP evidence at trial.  Discovery limitations facilitate case management; they do not define the universe of admissible evidence at trial.

**V.      If This Court Grants the AGs' Motion, the Ruling Should Apply Equally to Both Sides.**

The AGs assert that "[i]t would be extremely prejudicial for the Court to allow Meta to present one-sided evidence of post-Relevant Time Period changes."  Mot. at 2.  Meta agrees that one-sided evidence is problematic.  But the solution is not to exclude all post-RTP evidence from Meta while permitting the AGs to rely on their own post-RTP materials.  Rather, both sides should be able to present relevant post-RTP evidence and allow the advisory jury to evaluate that evidence in its full context.  However, to the extent the Court is inclined to impose any limitations on post-RTP evidence, it should be clear that any such limitation applies equally to both sides.  The AGs cannot seek a blanket exclusion of Meta's post-RTP evidence while reserving the right to introduce their own post-RTP evidence, including purported tests and analyses conducted after the close of the RTP.  Accordingly, any order granting this Motion should expressly preclude the AGs from introducing post-RTP evidence.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court should deny the AGs' Motion *in Limine* No. 2.

DATED:  June 17, 2026

Respectfully submitted,

10

By:    /s/ Ashley M. Simonsen

Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

Paul W. Schmidt, *pro hac vice*
Timothy C. Hester, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
Email: pschmidt@cov.com
Email: thester@cov.com


*Attorneys for Defendants Meta Platforms, Inc.
f/k/a Facebook, Inc. and Instagram, LLC*

META'S OPPOSITION TO STATE AGS' MOTION IN LIMINE NO. 2 SEEKING TO EXCLUDE FROM THE ADVISORY JURY PHASE OF
TRIAL EVIDENCE OF META'S PLATFORM AND POLICY CHANGES MADE AFTER THE RELEVANT TIME PERIOD
4:22-md-03047-YGR; 4:23-cv-05448-YGR