[*Submitting Counsel on Signature Page*]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case No. 4:22-md-03047-YGR |
| THIS DOCUMENT RELATES TO: | **STATE ATTORNEYS GENERAL'S OPPOSITION TO META'S MOTION IN LIMINE NO. 5 TO EXCLUDE EVIDENCE OR ARGUMENT THAT META'S AGE VERIFICATION FEATURES AND COSMETIC SURGERY OR OTHER THIRD-PARTY FILTERS ARE UNFAIR PRACTICES** |
| 4:23-cv-05448 | |
| | Judge: Hon. Yvonne Gonzalez Rogers |
| | Magistrate Judge: Hon. Peter H. Kang |

**Contents**

INTRODUCTION ...............................................................................................................................1

ARGUMENT.....................................................................................................................................2

    I.      Section 230 Does Not Bar Unfairness Claims Based on Age Verification Systems and Cosmetic Surgery Effect Filters. ........................................................................................................ 2

    II.    Meta Has No First Amendment Right to Permit Underage Users to Access Instagram. .............. 4

    III.   The State AGs Have Not Waived Unfairness Claims Based on Meta's Faulty Age Verification Systems.................................................................................................................................... 7

    IV.  Evidence of Meta's Misconduct With Respect to Its Faulty Age Verification Systems and Cosmetic Surgery Filters Are Relevant to Other Claims and Admissible ........................................... 11

CONCLUSION................................................................................................................................11

**Cases**

*Apple, Inc. v. Samsung Elecs. Co.*,
   2012 WL 3155574 (N.D. Cal. Aug. 2, 2012) ..................................................................... 10

*City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC*,
   596 U.S. 61 (2022) ................................................................................................................ 5

*Commonwealth v. Meta Platforms, Inc.*,
   277 N.E.3d 166, 189 (Mass. 2026) ....................................................................................... 3

*Doe (K.B.) v. Backpage, LLC*,
   768 F. Supp. 3d 1057 (N.D. Cal. 2025) ............................................................................ 3, 6

*Doe v. Grindr*,
   128 F.4th 1148 (9th Cir.) ....................................................................................................... 2

*Hughes v. Apple, Inc.*,
   723 F. Supp. 3d 693 (N.D. Cal. 2024) ................................................................................ 10

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*,
   515 U.S. 557 (1995) ............................................................................................................... 6

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
   702 F. Supp. 3d 809 (N.D. Cal. 2023) ................................................................................... 2

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
   754 F. Supp. 3d 946 (N.D. Cal. 2024) ................................................................................... 2

*Kaneka Corp. v. SKC Kolon Pi, Inc.*,
   2015 WL 12696109 (C.D. Cal. 2015) .................................................................................... 1

*Lemmon v. Snap, Inc.*,
   995 F.3d 1085 (9th Cir. 2021) ........................................................................................... 3, 4

*Miami Herald Pub. Co. v. Tornillo*,
   418 U.S. 241 (1974) ............................................................................................................... 6

Moody v. NetChoice, LLC,
   603 U.S. 707 (2024) ............................................................................................................... 6

*Neural Magic, Inc. Meta Platforms, Inc.*,
   659 F. Supp. 3d 138 (D. Mass 2023) ................................................................................. 7, 9

*Pauls v. Green*,
   816 F. Supp. 2d 961 (D. Idaho 2011) .................................................................................... 9

*Razaghi v. Razaghi*,
   2024 WL 4539244 (D. Nev. Oct. 21, 2024) ........................................................................ 11

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*,
   547 U.S. 47 (2006) ................................................................................................................. 5

*Sorrel v. IMS Health Inc.*,
   564 U.S. 552 (2011) ............................................................................................................... 5

*Texas v. Johnson,*
  491 U.S. 397 (1989)............................................................................................................. 5

*Turner Broad. Sys., Inc. v. F.C.C.,*
  512 U.S. 622 (1994)............................................................................................................. 5

*U.S. v. O'Brien,*
  391 U.S. 367 (1968)............................................................................................................. 5

*Vermont v. Meta Platforms, Inc.,*
  2024 WL 3741424 (Vt. Super. July 29, 2024)................................................................. 5

*Ward v. Rock Against Racism,*
  419 U.S. 781 (1989)............................................................................................................. 5

**Rules**

Fed. R. Civ. P. 37(c)(1)............................................................................................................. 9

Fed. R. Evid. 403 .................................................................................................................... 11

**INTRODUCTION**

Meta asks the Court to effectively dismiss two bases of the State AGs' claims in a Motion in Limine: that its age verification and cosmetic surgery effect features are unfair pursuant to state consumer protection law. This request comes after the Parties have repeatedly and extensively debated these issues in the motion to dismiss and summary judgment phases of this case, and through expert discovery, depositions, and other filings with the Court. As with several of its other Motions in Limine, Meta improperly attempts to use this Motion as a disguised second Motion for Summary Judgment. *See Kaneka Corp. v. SKC Kolon Pi, Inc.*, 2015 WL 12696109, at *11 (C.D. Cal. 2015) (citing *C & E Services, Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008)) (motion in limine should not "be used as a substitute for a motion for summary judgment"). As Meta sees it, the Court interpreted Section 230 incorrectly in its motion to dismiss orders, and the State AGs have purportedly waived certain claims by supposedly not timely disclosing them. Neither proposition is correct, however, and the Court should again reject Meta's arguments here. In any event, all of the evidence that Meta seeks to exclude in this motion is also relevant and admissible to support the State AGs' deception and COPPA claims, which Meta does not challenge in this motion.

Meta first argues that Section 230 precludes the AGs from introducing evidence supporting their claims that Meta's cosmetic surgery effect features and ineffective age verification systems are unfair. But Section 230 bars claims that seek to hold Meta liable for third-party content, not Meta's own design and business choices. Meta's arguments regarding the First Amendment and age verification are similarly unavailing. The First Amendment applies to protect speech, not Meta's *conduct* relating to the presence of underage users on its platforms. Finally, Meta argues that the State AGs have waived using evidence of its inefficient age verification systems as a basis for their unfairness claims, but the State AGs have repeatedly and consistently pointed to this issue in the Complaint, interrogatories, expert discovery, and in multiple other instances since the start of this case.

**ARGUMENT**

I. **Section 230 Does Not Bar Unfairness Claims Based on Age Verification Systems and Cosmetic Surgery Effect Filters.**

*Age Verification:* Meta's faulty age verification systems are design features that do not implicate Meta's role as a publisher or speaker of any third-party content. As this Court has already held in the context of the Personal Injury and School District claims, claims that Meta employs a deficient age verification system are not barred by 230. *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 702 F. Supp. 3d 809, 829–30 (N.D. Cal. 2023), ECF 430 ("PI Order"); *accord In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.,* 754 F. Supp. 3d 946, 963 (N.D. Cal. 2024, ECF 1267 ("SD Order"). Like those claims, the State AGs' unfairness claim regarding Meta's age verification systems would not require Meta to publish or not publish any content. ECF 430, at 15 (using age verification to "notify[] parents that a child is on the site, enabling the parent to . . . limit the child's access"). Indeed, State AG expert Tim Estes opines that Meta could have used an age verification and parental consent system that was in wide use among other online platforms with large numbers of U13s, like gaming services. Ex. A, Estes Rpt., ¶¶ 4–5. Meta's refusal to do so, or to take other steps that would be effective at keeping children under 13 off the platform without parental consent, unfairly exposed children to the addiction, mental and physical health risks of the platform and allowed Meta to obtain their personal data without parental consent. These risks are based on time spent on Meta's platforms independent of any content. *See* Ex. B, Twenge  Dep. (Sep. 17, 2025) 131:15–134:18; 139:2–140:13 ██████ ███████████████████████████████████████████████████████████████; ECF 430, at 15 (Section 230 is no bar to "theory under which failure to validly verify user age harms users that is distinct from harm caused by consumption of third-party content").

Meta attempts to relitigate this Court's Section 230 orders on age verification by citing two recent cases. Neither applies to the State AGs' age verification unfairness claim. In *Doe v. Grindr*, the plaintiff's claims about a dating site's failures to prevent communications between adults and children that could lead to sexual assault "implicate[d] Grindr's role as a publisher of third-party content" because the underlying duty would "require Grindr to monitor third-party content and prevent adult communications to minors." 128 F.4th 1148, 1152 (9th Cir.), *cert. denied*, 146 S. Ct. 319 (2025). But here, the State AGs'

STATE ATTORNEYS GENERAL'S OPPOSITION TO META'S MOTION IN LIMINE NO. 5 TO EXCLUDE EVIDENCE OR ARGUMENT THAT META'S AGE VERIFICATION FEATURES AND COSMETIC SURGERY OR OTHER THIRD-PARTY FILTERS ARE UNFAIR PRACTICES
4:22-md-03047-YGR; 4:23-cv-05448-YGR

claim is not based on Meta's monitoring communications between children under 13 and other users or preventing them from being harmed by third-party content. *Doe (K.B.) v. Backpage, LLC* is inapposite for the same reason. There, Section 230 precluded the claim because the theory of liability was aimed at limiting particular third-party content, namely, "sex trafficking communications." 768 F. Supp. 3d 1057, 1065 (N.D. Cal. 2025). In contrast, here the State AGs challenge Meta's deficient age verification systems "for reasons independent of the third-party content." *Id.*; *see also* ECF 430, at 15. Because the State AGs' age verification unfairness theory "does not allege harm stemming from the content of any information published," Section 230 is no bar. *Commonwealth v. Meta Platforms, Inc.*, 277 N.E.3d 166, 189 (Mass. 2026) (rejecting the same arguments regarding the same two cases); *see also Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1093 (9th Cir. 2021) (holding that "§ 230(c)(1) cuts off liability only when a plaintiff's claim faults the defendant for information provided by third parties").

***Cosmetic Surgery Effect Filters***: This Court has already held that "filters are neutral, non-expressive tools," ECF 430, at 22, not third-party content. Cosmetic surgery effect filters themselves do not convey information, but rather, they operate according to programmed rules and functions to achieve pre-determined effects, such as ███████████████████████████████████ ███████████████████ Ex. C, META3047MDL-003-00179481 at -481. These functions are identified in Meta's internal documents discussing these cosmetic surgery effects, as reflected in the following table compiling examples from one company document:

███████████████████████████████████████████████████████████████

*Id.* at -483–85. Cosmetic surgery effects, which can go by various names like ██████████████ or ███████████████ are examples of ████████████████ whereby an effect is introduced, █████████

██████████████████████████████████████████████████████████

████████████████████████████ Ex. D, Stewart Dep. 43:13–45:1. These cosmetic surgery effects and filters are thus akin to well understood image-processing tools like the suite of functions on photoshop, sepia-tone filters, or red-eye detection technologies that overlay a specific function onto a photo or image to manipulate it in a predetermined manner. As opposed to the photos or videos upon which they are used, none of these image-processing tools could be reasonably construed as content in their own right.

"[W]hile providing content-neutral tools does not render an internet company a 'creator or developer' of the downstream content that its users produce with those tools, [the Ninth Circuit's] case law has never suggested that internet companies enjoy absolute immunity from all claims related to their content-neutral tools." *Lemmon*, 995 F.3d at 1094. To the contrary, defendants "continue to face the prospect of liability, even for their 'neutral tools,' so long as plaintiffs' claims do not blame them for the content that third parties generate with those tools." *Id.* The State AGs do not seek to hold Meta liable for any third-party content created with beauty filters. Rather, they seek to hold Meta accountable for the harm that users experience by using beauty filters, even if they never post the images or videos they have altered. *See* Ex. D, Stewart Dep. 73:22–74:22; Ex. E, META3047MDL-014-00376297 at -300 (noting that ████

██████████████████████████████████████████████████████████

Thus, the State AGs' unfairness claims regarding beauty filters are not barred by Section 230. *Lemmon*, 995 F.3d at 1093 (holding that Section 230 did not bar claims in part because "the Parents d[id] not fault Snap in the least for publishing [the deceased's] snap")

**II.    Meta Has No First Amendment Right to Permit Underage Users to Access Instagram.**

The State AGs' claims relating to Meta's ineffective age verification systems are not prohibited under the First Amendment because those claims do not target speech. Rather, the State AGs challenge Meta's platform design and business policy choices that resulted in many underage users being on its platforms during the relevant time period. Meta did not even require users to input any age information on Instagram until the end of 2019, and since then, it has repeatedly failed to take reasonable steps to identify or remove users under 13 from its platforms. For example, as discussed in the State AGs' Motion for Partial Summary Judgment, Meta continues to ignore accounts that its soft-matching models predict

to belong to users it determines are underage, even as it uses the same data to take action against multiple accounts of users who violate other policies. ECF 2695, at 24–26,

Conduct is what an entity does, while speech is what it says. *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.* , 547 U.S. 47, 60 (2006). Because the State AGs' unfairness claims challenge what Meta does—implementing age verification policies and designing age verification systems—the State AGs' claims regulate non-expressive conduct and are not subject to heightened scrutiny. *Sorrel v. IMS Health Inc.*, 564 U.S. 552, 567 (2011) (noting that "restrictions on protected expression are distinct from restrictions . . . on nonexpressive conduct.").

Even if the State AGs' unfairness claims addressing ineffective age verification systems have some incidental impact on speech, they do not result in "suppression of free expression," *Texas v. Johnson*, 491 U.S. 397, 403 (1989), nor do they target "particular speech because of the topic discussed or the idea or message expressed." *City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 69 (2022) (citation omitted); *see also* Ex. F, State AGs' 3d Supp. Resp. Meta's 1st Interrog., Oct. 6, 2025, at 9–10. The State AGs' claims depend on the harmful link between time spent on Meta's platforms, ████████ ████, *see* Ex. B, Twenge Dep. (Sep. 17, 2025) 131:15–134:18, 139:2–140:13, and these risks are more acute for users under age 13 based on their developmental vulnerabilities beginning around ages 10 to 12. *See* Ex. G, Prinstein Rpt. ¶¶ 1, 23–31. In other words, Meta's platforms are equally harmful regardless of what content they feed users—whether that content is "porn or puppies" makes no difference, because young users "are harmed by the time spent, not by what they are seeing." *Vermont v. Meta Platforms, Inc.*, 2024 WL 3741424, at *5 (Vt. Super. July 29, 2024).  And the privacy harms from Meta's unfair collection of children's personal information without parental consent similarly do not depend on what content children see on the platforms while Meta harvests their data. Accordingly, at most, intermediate scrutiny would apply to these claims. *U.S. v. O'Brien,* 391 U.S. 367, 376–77 (1968); *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 641–42 (1994).

Government action survives intermediate scrutiny if it (1) promotes a substantial governmental interest (2) that would be achieved less effectively absent the government action. *Ward v. Rock Against Racism*, 419 U.S. 781, 799 (1989). As enforcers of their states' consumer protection laws, the State AGs have a substantial interest in protecting children, especially young children, from the risks and harms

caused by social media. The remedies that the State AGs seek would ensure that children under 13 are protected from the risks linked to social media, and Meta's current policies and practices do not achieve this goal effectively. *See* Ex. A, Estes Rpt. at ¶¶ 138–42; Ex. H, Bejar Dep. (Apr. 7, 2025) 192:20–194:3, 195:1-24; 198:1–202:17; 202:15–21; Ex. I, Corrected Sheatsley Rpt. ¶¶ 2–5, 7–8. Thus, even if the Court finds that intermediate scrutiny applies, the State AGs' unfairness claims addressing ineffective age verification systems survive.

As discussed above, unlike the plaintiffs in *Backpage*, the State AGs' unfairness claims addressing Meta's ineffective age verification systems are not premised on any communications or content on Meta's platforms. *See Backpage.com, LLC*, 768 F. Supp. 3d at 1065. Nor do the State AGs seek to require Meta to alter the mix of views expressed on its platforms. Ex. F, State AGs' 3d Supp. Resp. Meta's 1st Interrog., Oct. 6, 2025, at 9–10. So, cases addressing laws designed to ensure that a variety of views were expressed—like *Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 248 (1974), which struck down a right to reply law that compelled newspapers to publish views with which they disagreed, and *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 575 (1995), which held that the state could not force the organizers of a parade to allow a certain group to march in the parade—are inapposite. *Moody v. NetChoice, LLC*, which held that the First Amendment is implicated when a law impedes a platform's ability to "prohibit[] or discourage[]" certain "subjects or messages," is also inapposite. 603 U.S. 707, 719 (2024). As this Court correctly held, addressing Meta's ineffective age verification systems "would not require that [Meta] change how or what speech [it] disseminate[s]." ECF 430, at 21.

Meta's suggestions that its deficient age gating features allowing millions of children under 13 on its platforms "reflect its judgments about who should access and be published on Instagram, and facilitate the related expressive message Meta wishes to send about the community it seeks to foster," are unsupported by any evidence. Meta's MIL No. 5, ECF 3123, at 6. Meta presents no declarations or other evidence that its faulty age gating tools and the presence of U13s on its platform are part of any expressive message that the company has attempted to convey. To the contrary, Meta publicly claims that U13s are not allowed to be present on its platforms (part of the basis of the State AGs' deception claims), and told this Court that it was entitled to summary judgment on the State AGs' COPPA claims because the company does not intentionally allow children on its platforms. *See* Meta's Motion for Summ. J., ECF 2704, at 64–

66 ("It would be illogical for Meta to block and try to remove U13s if the goal of the platforms were to achieve a U13 audience."). Meta's motion should thus be denied because the State AGs' claims concern its conduct, not any expressive message.

### III. The State AGs Have Not Waived Unfairness Claims Based on Meta's Faulty Age Verification Systems

Meta has not met its burden to show any untimeliness of the State AGs' disclosure that its unfairness theories are based in part on Meta's age verification system. Parties requesting sanctions for violating disclosure requirements bear the initial burden to show that the opposing party failed to comply with the applicable requirement. *See Neural Magic, Inc. Meta Platforms, Inc.*, 659 F. Supp. 3d 138, 160 (D. Mass 2023). The efficacy of Meta's age verification system has been at issue in this litigation from the inception for all of the State AGs' claims. The State AGs' Amended complaint repeatedly discusses Meta's faulty age-gating system, Dkt. 4:32-cv-05448, ECF 207, at ¶ 846(a)–(f) ("Compl."). at ¶¶ 665–88, 699–731, 767–70, 819–20, including Meta's decision to forgo "alternative feasible age verification methods that would significantly reduce or eliminate the number of underage users on Meta's Social Media Platforms, for example, by requiring young users to submit student IDs upon registration." *Id.* at ¶ 768. The Complaint alleged both unfair and deceptive practices that were based in part on Meta's failure to keep children under 13 off the platform, leading to its collection of data without parental consent (which also violated COPPA), *id.* at ¶ 847(e), as well as its misrepresentations about its deficient efforts to prevent U13s from using its platform. *Id.* at ¶ 846(e). These underlying allegations about Meta's shoddy age-gating system also formed part of the basis for the State AGs' COPPA claims. *See id.* at ¶¶ 665–88, 699–731, 767–70, 819–20.

As early as June 2024, the State AGs identified in interrogatory responses Meta's deficient age verification practices as being at issue in the State AG's unfairness claims, consistent with the Complaint. *See* Ex. J, State AGs' Resp. Meta's 1st Interrog., June 3, 2024, at 14–16. Among other unfair practices, the State AGs identified Meta's collection of personal information without parental consent from the children under 13 its faulty age gate allowed to join the platform, pointing to "Meta's mishandling of known under-13 user accounts," and "Meta's account registration process, which did not include an age gate for many years, and then included a faulty system that was easily bypassed by children." *Id.* at 15. The response

also pointed to the harms suffered by children on Meta's platforms as part of the basis of the unfair practice claim, describing how Meta "engaged in the acts and practices discussed above despite research showing that young people's use of Meta's Platforms is associated with depression, anxiety, insomnia, eating disorders, suicide, interference with education and daily life, and many other negative outcomes." *Id.* at 15–16. In October 2025, in response to Meta's delayed provision of discovery into its age gating practices and analysis of that discovery by then-State AG expert Patrick McDaniel in preparation for his report, the State AGs provided a supplemental response to Meta's contention interrogatories which further clarified the State AGs' unfairness theories related to Meta's age verification system. *See* Ex. F, State AGs' 3d Supp. Resp. Meta's 1st Interrog., Oct. 6, 2025, at 10 ("By targeting children under the age of 13 to bring them on to its platforms, failing to effectively prevent under-13 users from joining and/or using Facebook and Instagram, and failing to effectively detect and remove under-13 users after they have joined, Meta unfairly exposes under-13 users to the risks posed to young users by the platforms[.]").

Even if Meta were correct that the October 2025 supplemental response represented a new disclosure, it was timely, because fact discovery was ongoing. While fact discovery was scheduled to close on April 4, 2025, Case Management Order No. 17, ECF 1159, at 2, Meta repeatedly delayed in producing discovery, in particular in response to the State AGs' requests, for many more months. For example, when the State AGs served their Rule 30(b)(6) notice seeking testimony on Meta's age gating practices (among other topics) on January 10, 2025 (with a noticed date in late February), Meta refused to provide any testimony before the nominal close of fact discovery, insisting on extensive negotiation over the scope of topics for which it would provide testimony. *See* Ex. K, State AGs' Notice of 30(b)(6) Deposition of Meta Platforms, Inc., Jan. 10, 2025; Declaration of Zachary Richards ¶¶ 15–17. The first date Meta offered for a witness to testify was in May 2025, which Meta ultimately insisted on rescheduling to engage in further conferrals. Richards Decl. ¶ 17. The parties stipulated to three separate extensions to expert deadlines for the State AGs' expert on Meta's U13 detection system (Patrick McDaniel) because of delays in Meta producing data on its age verification systems. *See* Meta and State AGs Stipulation and Order Extending Certain Expert and Related Pretrial Deadlines, ECF 1955; Meta and State AGs Stipulation and Order Extending Certain Expert Deadlines, ECF 2139; Meta and State AGs Stipulation and Order Extending Certain Expert and Related Pretrial Deadlines, ECF 2251. Rule 30(b)(6) testimony related to Meta's age

verification system finally concluded on October 7, 2025, Richards Decl. ¶ 21, one day *after* the State AGs' supplemental response that Meta now claims was untimely. Meta would go on to produce approximately 60,000 additional documents that it had improperly withheld for privilege from September to December 2025, *see* Agenda and Joint Statement for Feb. 11, 2026 Case Management Conference, ECF 2717 at 3-4; Agenda and Joint Statement for Nov. 19, 2025 Case Management Conference, ECF 2439 at 3, and hundreds of thousands of additional underage reports in February 2026, Agenda and Joint Statement for Mar. 18, 2026 Case Management Conference, ECF 2838 at 3; Richards Decl. ¶ 22. Meta's failure to provide discovery related to these issues before the close of fact discovery is fatal to its claim that the State AGs untimely disclosed this theory.

Regardless of whether the State AGs' disclosure fell after the nominal close of fact discovery, it was substantially justified by Meta's delayed fact discovery and harmless. *See* Fed. R. Civ. P. 37(c)(1). The October 6, 2025 supplemental response was based on Meta's late 30(b)(6) testimony on its age verification practices and its delayed productions of underage reporting, enforcement, and soft-matching data, and came as the State AGs' then-expert Patrick McDaniel was preparing his report analyzing that late produced evidence in preparation for the extended November 21, 2025 expert deadline. Having failed to disclose the factual information until after the nominal close of discovery in April 2025, "it seems incongruous for [Meta] now to claim that such failure impeded any of its own discovery" into the State AGs' claims. *Neural Magic, Inc. v. Meta Platforms, Inc.*, 659 F. Supp. 3d 138, 162 (D. Mass. 2023) (denying motion to exclude expert testimony under Rule 37 when disclosure was due to late disclosure of the factual information on which it relied); *accord Pauls v. Green*, 816 F. Supp. 2d 961, 977 (D. Idaho 2011) (late disclosure of expert report substantially justified when moving party "had at least some hand in the delay" from its late production of relevant documents).

Meta can make no credible assertions of prejudice from the timing of the State AGs' interrogatory response. Meta points to no additional discovery it could have or would have done into any issues raised by this theory. Instead, Meta all but admits that it has been developing evidence related to the "efficacy" of its age verification all along, since it concedes that such evidence "relates to the AGs' COPPA and deception claims." ECF 3123, at 9. The only prejudice Meta points to is a vague assertion that it had no incentive "to develop evidence related to alleged harms from its age verification practices, or evidence

9

demonstrating that the benefits of its practices outweigh those claimed harms," prior to the State AGs' supplemental response.

Meta's claim of prejudice fails. Meta had every incentive to develop the same evidence to defend against the PI/SD age verification design defect claims. *See e.g.*, *Hughes v. Apple, Inc.*, 723 F. Supp. 3d 693, 711 (N.D. Cal. 2024) ("risk benefit test" for design defect claim asks whether the "risks of the design outweigh its benefits"); Plaintiffs' Second Amended Master Complaint (Personal Injury), ECF 494, ¶ 844 ("The risks inherent in the design of each of the Defendant's respective products significantly outweigh any benefit of such design."). And Meta did develop that evidence, submitting numerous expert reports on these issues both before and after the State AGs' supplemental response. Meta served an expert report attesting to the reasonableness of its age verification system in July 2025 from Dr. Nasir Memon (the same report it served in the PI/SD cases), emphasizing the importance of ███████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████ Ex. L, Memon Rpt. ¶¶ 15, 19–20, 67–73, 88–95. And since the supplemental response came months before Meta's deadline to submit expert reports in response to the State AGs' main age verification expert, Meta's responsive reports from Mary Wirth and Dr. Nick Feamster both discuss the ████████████████ ██████ Ex. M, Wirth Rpt. ¶¶ 40–44, 54–55, 65–66, 76–79, 84–85, 87; Ex. N, Feamster Rpt. ¶¶ 4–8, 11–13, 64–73, 102, 106, 108–09. The parties engaged in extensive discovery on the risks that Meta's platforms pose to young users, including nearly a dozen expert reports on addiction and other physical and mental health harms of Meta's platforms. Unlike in *Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL 3155574 (N.D. Cal. Aug. 2, 2012), the only case Meta cites for its timeliness argument, the same issues are at stake in the State AGs' deception and COPPA claims, not to mention the PI/SD claims, so there is no different factual record that Meta would have created that would have been relevant to its experts. Meta was not prejudiced.[1]

---

[1] Further undermining its argument of unfair surprise, Meta declined to move for summary judgment on the State AGs' age verification unfairness theory on the basis of waiver or any of the other theories it asserts in this motion, even after the parties discussed it in pre-motion letter briefing and trial strategy briefing. *See* Meta's Affirmative Ltr. Br. re Summary Judgment and Daubert Motions, ECF 2446, at 3 (describing Meta's intent to move for summary judgment on "any consumer protection claims predicated on a COPPA violation or other allegations relating to under-13 users"); State AG's Responsive Ltr. Br., Dec. 1, 2025, ECF 2495 at 4-5 (arguing "State AGs' deception and unfairness

**IV.    Evidence of Meta's Misconduct With Respect to Its Faulty Age Verification Systems and Cosmetic Surgery Filters Are Relevant to Other Claims and Admissible.**

Even if the Court accepts Meta's arguments regarding the State AGs' cosmetic surgery effect and age verification unfairness claims, evidence regarding Meta's misconduct with respect to these two features are probative of other claims and thus admissible. Meta has conceded that evidence regarding the effectiveness of Meta's age verification systems, which describes much of the evidence listed in Meta's Motion, is relevant to the State AGs' deception and COPPA claims. ECF 3123, at 9. For example, evidence about Meta's faulty age verification systems is also relevant for the State AGs' COPPA claims to support Meta's actual knowledge that underage users were on its platform, *see* State AGs' Opp. To Meta's Motion for Summ. J., ECF 2779, at 65–67, and to rebut Meta's arguments that its U13 policies mean that its platforms are not directed to children, *see* ECF 2704 at 64–66. This evidence is also relevant to the State AGs' claims that Meta misrepresented the effectiveness of its policies on U13s. Moreover, Meta's statements about prioritizing the health and safety of its users over company growth and profits is directly contradicted by ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████ *See* Ex. C, META3047MDL-003-00179481 at -481–82, 490–93. Accordingly, evidence relating to both features are probative of the State AGs' deception and COPPA claims and are thus admissible. *See* Fed. R. Evid. 403.

### CONCLUSION

For the reasons set forth above, claims based on Meta's design choices and business conduct are not within the scope of Section 230 or protected by the First Amendment. Meta's age verification systems

---

claims do not fail even if the COPPA claims fail, because those other claims are also based on Meta's broader failure to protect under-13's privacy and safety and its deceptive acts regarding its under-13 policies and practices—irrespective of Meta's COPPA compliance."); State AGs' Trial Strategy Ltr. Br., ECF 2715 at 7. Meta cannot explain this failure, in light of its current position that it has been on notice of the AGs' claims since at least October 6, 2025, ECF 3123, at 8, more than three months before it filed its motion for summary judgment. After the State AGs pointed out Meta's omission in their summary judgment opposition, ECF 2779, at 47 n.51, Meta responded with only a single footnote in its reply, ECF 2892 at 17 n.32 (vaguely noting "[e]ven if" age verification "could constitute" a basis of the unfairness claims, the claim "would be barred by Section 230" and citing *Backpage*). The Court should not allow Meta "to attempt a back door second summary judgment motion" in this motion in limine. *Razaghi v. Razaghi*, 2024 WL 4539244, at *3 (D. Nev. Oct. 21, 2024).

do not implicate its role as a publisher or speaker in any way, and the cosmetic surgery effect filters that it makes available on its platform are neutral, non-expressive tools—not content. Moreover, Meta has had ample notice of the State AGs' unfairness claims based on its age verification systems, and the State AGs have not waived this basis for liability. Accordingly, Meta's Motion in Limine No. 5 should be denied.

DATED: 6/17/2026

Respectfully submitted,

**PHILIP J. WEISER**
Attorney General
State of Colorado

**ROB BONTA**
Attorney General
State of California

*/s/ Krista Batchelder*
Krista Batchelder, CO Reg. No. 45066, *pro hac vice*
Deputy Solicitor General
Jason Slothouber, CO Reg. No. 43496, *pro hac vice*
Chief Trial Counsel, Consumer Protection
Lauren M. Dickey, CO Reg. No. 45773, *pro hac vice*
First Assistant Attorney General
Elizabeth Orem, CO Reg. No. 58309
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6000
Krista.Batchelder@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel. Philip J. Weiser, Attorney General*

*/s/ Megan O'Neill*
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Emily Kalanithi (SBN 256972)
Supervising Deputy Attorneys General
Nayha Arora (CA SBN 350467)
David Beglin (CA SBN 356401)
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer (CA SBN 336428)
Marissa Roy (CA SBN 318773)
Brendan Ruddy (CA SBN 297896)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Megan.ONeill@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

/s/ *Zachary Richards*
J. Christian Lewis (KY Bar No. 87109),
*pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*pro hac vice*
Zachary Richards (KY Bar No. 99209),
*pro hac vice*
Daniel I. Keiser (KY Bar No. 100264),
*pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Ste. 200
Frankfort, KY 40601
Christian.Lewis@ky.gov
Philip.Heleringer@ky.gov
Zach.Richards@ky.gov
Daniel.Keiser@ky.gov
Matthew.Cocanougher@ky.gov
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

**JENNIFER DAVENPORT**
Attorney General
State of New Jersey

By: /s/ *Thomas Huynh*
Kashif T. Chand (NJ Bar No. 016752008),
*Pro hac vice*
Assistant Attorney General
Thomas Huynh (NJ Bar No. 200942017),
*Pro hac vice*
Section Chief, Deputy Attorney
General
Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*Pro hac vice*
Deputy Attorneys General
New Jersey Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiffs Jennifer Davenport, Attorney General for the State of New Jersey, and Jeremy E. Hollander, Acting Director of the New Jersey Division of Consumer Affairs*

## SIGNATURE CERTIFICATION

Under Civ. L.R. 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in this filing's content and have authorized this filing.

DATED: 06/17/2026

/s/ *Zachary Richards*
Zachary Richards

*Attorney for Plaintiff the Commonwealth of Kentucky*