*[Parties and counsel listed on signature pages]*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case No.: 4:22-md-03047-YGR |
| This Document Relates To: | **AGENDA AND JOINT STATEMENT FOR JUNE 26, 2026 SECOND PRETRIAL CONFERENCE (MDL AG ACTION)** |
| *ALL ACTIONS* | Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

## I.    Proposed Agenda

- Argument on Motions *in Limine* ("MILs") (delivered to the Court with oppositions on June 18)

- Argument on Meta's Admin. Motion re Partial Mooting of Stip. Re Videotaped Trial Testimony of M. Zuckerberg in First MDL AG Trial (fully briefed June 15) (ECF 3126 (Mot.), 3143 (Opp.))

- Argument on supplemental submissions on AGs' Motion to Strike Meta Witnesses (briefed May 20; argued May 27; supplemented June 4) (ECF 3056 (Mot.); ECF 3057, *as corrected* ECF 3060-1 (Opp.); ECF 3105 (Meta's supp.); ECF 3104, *as re-filed* ECF 3110 (AGs' supp.)

- Request for clarification regarding Pretrial Schedule deadlines

- Disputed/Other Issues: (1) State AGs' penalties and disgorgement calculations disclosure; (2) proposed jury instructions and special verdict forms; (3) *in limine* stipulations; (4) report on meet-and-confer re Rule 702 Order on AG expert Adam Alter; (5) deposition designations protocol

## II.    Meta's JCCP Update

**Trial Pool 1 Update.** On June 9, Judge Kuhl denied Defendants' post-trial motions with respect to the *K.G.M.* trial.  The next JCCP trial, *R.K.C.*, will start on July 27 and be completed by mid-September.

**Trials Pool 2 Update.**  The Court set the first two Trial Pool 2 cases for trial on October 28.

**Bellwether Wave 2 Discovery.**  On May 29, the Court ordered the parties to confer on a second bellwether discovery pool and to submit a joint status report by June 24, to be discussed on June 29.

## III.    Other Joint Updates

### A.    Pending Submissions

The following submissions remain pending before Your Honor:

- Stipulated [Proposed] Order of Dismissal of Instagram, LLC (filed June 5) (ECF 3108)[1]

- AGs' Motion for Relief from Nondispositive Order (filed June 1) (ECF 3091). Per L.R. 72-2(d), the Court must order responsive briefing if it wishes to address the merits of the motion.

- Meta's Rule 702 motion as to Carl Saba (fully briefed April 24) (ECF 2845, 2913, 2990); AGs' Rule 702 motion as to Justin McCrary (fully briefed April 24) (ECF 2843, 2915, 2988)[2]

- Meta's motion for summary judgment ("MSJ"), AGs' partial MSJ, and AGs' cross-partial MSJ (fully briefed March 27 and argued April 15) (ECF 2695, 2704, 2779, 2780, 2892, 2894)

---

[1] The Parties note that this Stipulation moots Meta's MSJ as to the AGs' claims against Instagram, LLC (ECF 2892 at 30) and moots the AGs' partial MSJ on the issue of whether Meta Platforms, Inc. and Instagram, LLC are "operators" of the Instagram platform for purposes of COPPA (ECF 2695 at 11–17).
[2] The AGs respectfully suggest that these motions can be decided on the papers without argument.

1

**B.      Update on Pretrial Protocols**

The Parties have been conferring on protocols relating to four issues: Deposition Transcripts (agreed-upon, *see* ECF 3149); Sealing Protocol (Meta draft shared June 8, AG comments shared June 18); Trial Protocol (Meta draft shared June 11); Deposition Designations Protocol (*see* Section IV.E below).

**C.      Pretrial Update**

Per the Pretrial Schedule (ECF 3139-1), the Parties have been exchanging, conferring on, and submitting various pretrial submissions, including: (1) proposed questions for the juror questionnaire (filed June 17, *see* ECF 3151, 3153); (2) proposed jury instructions and special verdict forms (exchanged June 12, due July 2; *see* ECF 3177, 3180 (draft verdict forms); § IV.B below); (3) statements of the case (exchanged June 12, due July 2); (4) witness lists (filed June 17, *see* ECF 3152, 3159); (5) exhibit lists (filed June 17, *see* ECF 3152, 3159); (6) trial/evidentiary stipulations (due July 13; *see* § IV.C); (7) deposition and discovery designations/objections (exchanges ongoing, disputes due June 30; *see* § IV.E).

**IV.    Disputed/Other Issues**

**A.      State AGs' Penalties and Disgorgement Calculations Disclosure**

**Meta's Position:** The morning this Statement was due, the AGs provided Meta with a months-late disclosure of remedies tables.  Meta is analyzing these tables but it appears that they (i) appear nowhere in their expert reports, (ii) are not directly tied to any of the challenged features or statements, and (iii) do not answer the Court's questions regarding how much they intend to actually seek at trial.  Consistent with these points, the AGs' disclosure further states that the AGs may "reformat, recalculate, or remix the information" and "present subsets, portions, or permutations" at trial.  Meta respectfully asks to discuss this issue on June 26, after it has more time to analyze this data and determine appropriate relief to request.[3]

**State AGs' Position:** The AGs have timely provided Meta with tables, with clear citations to the underlying expert reports to articulate the monetary relief (disgorgement and penalties) that the AGs seek. The timing of the tables is a result of Meta's actions. The tables rest on expert analysis of data that Meta

---

[3] Meta timely produced data in March 2026 consistent with Judge Kang's February 13, 2026 Order, ECF 2744, incorporating two methodological changes requested by the AGs.  Meta's prior productions were not "erroneous," but rather additional productions with alternative methodologies.

produced extremely late, including critical user and time spent data that Meta produced in March 2026—after four erroneous productions and almost a year after the close of fact discovery. See ECF 2508 at 6-7. With these tables, the AGs do not purport to restate legal arguments about their entitlement to penalties and disgorgement. Meta also partially quotes a reservation of rights that accompanied the tables—the AGs reasonably reserve the right to continue further shaping and winnowing their presentation of the case before trial.

**B.      Proposed Jury Instructions & Special Verdict Forms**

**Meta's Position:** Meta wishes to apprise the Court of two points regarding the jury instructions and special verdict form it plans to submit to the Court by the July 2 deadline for that submission.

*First*, Meta intends to propose instructions and a special verdict form that simplify and streamline the issues to be addressed by the advisory jury. *See, e.g.*, ECF 3180 (working draft of Meta's proposed Special Verdict Form). Meta's proposed instructions and special verdict form on the AGs' COPPA claims focus on key factual issues that the Court may deem appropriate for input from the advisory jury—namely, child directness and actual knowledge. Meta's proposed instructions for the AGs' unfair and deceptive practices claims focus on common elements cutting across the laws of the four co-lead States rather than providing separate, individual instructions and findings for each state law claim. Meta believes this streamlined approach furthers the purpose of the advisory jury by permitting it to focus on the central, cross-cutting issues (*e.g.*, deceptive or "unfair" practices), thereby assisting the Court in making its own findings and conclusions. This approach also aligns with the Court's prior guidance to identify common elements across the state law claims. *See* Oct. 24, 2025 Hr'g at 25–26.

In contrast, the AGs have proposed detailed, technical instructions on COPPA's elements, which the AGs have conceded are "technical" and "may not need to go to the advisory jury." May 27, 2026 Hr'g at 12. And the AGs are proposing separate instructions and special verdict form findings for each separate consumer protection claim under each State's law. This leads to bloated, repetitive instructions and questions that Meta believes are not warranted for an advisory jury, who will not be tasked with making separate liability determinations on each state law claim. Indeed, the AGs' "working draft of potential verdict forms" is 25 pages long—*not* including the referenced "Appendix A." *See* ECF 3177 at 3–28.

3

*Second*, the AGs recently proposed that the Parties exchange new jury instructions on disgorgement and civil penalties.  Meta does not believe these are appropriate subjects for the advisory jury.  It is well-established that disgorgement is an equitable remedy, as the AGs have recognized, *see* Feb. 23, 2024 Hr'g at 80, and that juries do not "determine the amount of [any] penalty," *Tull v. United States*, 481 U.S. 412, 427 (1987).  Accordingly, Meta seeks the Court's guidance on whether the Parties should invest the time and effort in preparing instructions on those remedies.  As a matter of timing, moreover, Meta submits that the AGs' proposal comes too late.  Under the Pretrial Order, the Parties were obligated to exchange their proposed jury instructions and verdict forms by June 12; provide comments by June 16; and file by July 2.  ECF 3139-1 at 3–4.  The States did not include any proposed instructions or questions on remedies in their June 12 exchange, instead proposing that the Parties agree on a new schedule to govern the exchange of such instructions.  This comes far too late in an already-crowded schedule for pretrial preparation.  On this procedural basis—as well as the substantive points outlined above—the Court should deny the AGs' tardy proposal for a new exchange of instructions on remedies.

**State AGs' Position:** Meta's proposal to "streamline and simplify" the issues to be addressed by the jury is nothing more than an effort to undermine the advisory jury's role and usefulness to the Court, and to such an extent that it calls into question whether Meta intends for the jury to serve any meaningful role at all. The instructions that the State AGs propose for the Court's consideration will be neither less tailored nor more technical for the advisory jury than they otherwise would be for a petit jury. That is because the very purpose of the advisory jury here is to assist the Court by helping to "guide the Court in making its findings and conclusions." *Rearden LLC v. Walt Disney Co.*, 2023 WL 9187385 at *2 (N.D. Cal. Dec. 14, 2023). The scope and depth of the advisory jury's review should not be curtailed simply because the Court will render the ultimate decision, the value of the advisory jury lies precisely in offering the comprehensive perspective the Court will empanel them to provide.[4]

---

[4] Meta takes the AGs' statements about the COPPA instructions out of context. The more "technical" aspects of COPPA may not need to be presented to the advisory jury because they are undisputed – that is why the AGs moved for partial summary judgment to resolve questions such as, who is the "operator," whether Meta collects "personal information" from users, and whether Meta has provided (continued…)

AGENDA AND JOINT STATEMENT FOR JUNE 26, 2026 SECOND PRETRIAL CONFERENCE (MDL AG ACTION)
4:22-md-03047-YGR

The advisory jury can provide valuable input on monetary issues by identifying the numbers of people affected by various practices, the number of statutory violations, and appropriate penalty amounts. Meta's assertion that because disgorgement is "equitable" it should not be before the jury is unpersuasive. The Court "may try *any* issue with an advisory jury." F.R.C.P. 39(c)(1) (emphasis added) and this Court has previously empaneled advisory juries on claims for disgorgement. *Rearden LLC v. Walt Disney Co.*, 2023 WL 9187385 (N.D. Cal. Dec. 14, 2023); *Guardant Health, Inc. v. Natera, Inc.*, 2025 WL 2106522 (N.D. Cal. July 28, 2025). The Parties should continue to confer on this issue. It should be noted that, at Meta's own request, the Parties shared competing proposals for every instruction, including the COPPA instruction – and the Parties reached substantial agreement on substance and format as of October 10. *See* ECF 2313-1 at 6-15. This procedural posture forecloses any credible claim of prejudice resulting from the AGs' submission of a remedies instruction after the initial exchange but before filing, as Meta will, by definition, have the opportunity to submit its own competing proposal.

The Parties are scheduled to provide their proposed instructions to this Court for consideration on July 2. ECF 3139-1 at 3-4. All other deadlines were internal exchanges between the parties, intended solely to facilitate review and conferral prior to that filing. The State AGs' decision to continue conferring on remedies and anticipated affirmative defense instructions, to attempt to reach agreement on some aspects with Meta before exchanging proposals, should not bar their later submission. Because conferrals remain ongoing and no instructions have yet been filed with the Court, any order limiting the Parties' ability to submit proposals at this stage would be premature.

C.     *In Limine* Stipulations

**Meta's Position:** Meta respectfully requests that the Court direct the AGs to further confer with Meta on Meta's proposed MIL stipulations to reach agreement on more than just a handful of those proposals, so as to streamline the presentation of evidence at trial.

On May 29, Meta sent the AGs 40 proposed stipulations covering evidentiary issues designed to streamline trial. Meta's proposals were based on stipulations reached by the parties in the JCCP, *Breathitt*,

---

COPPA's protections (notice and parental consent, etc.) to its users. Indeed, the parties have recently stipulated to resolve the "operator" question. Moreover, the parties already agreed to jury instructions on these aspects of COPPA months ago – Meta's attempt to backtrack are not productive.

and the New Mexico State AG action, or on orders issued by courts in those cases granting MILs on the same topics. Meta subsequently proposed another stipulation (to resolve one of the AGs' exchanged MILs) to exclude evidence related to CSAM, CSE, or the grooming of children on Meta's platforms.

The day before the MILs filing deadline, the AGs informed Meta that they would not file their CSAM/CSE MIL, while refusing to enter or even negotiate a stipulation along the lines Meta had proposed. *See generally* ECF 3121 at 9 & n.6. Then, on June 9, they outright rejected 25 of Meta's proposed stipulations, indicated that 8 of them warranted further discussion, and agreed to only 7 of them.

The Parties conferred on June 10 and June 12. During the first conferral, the AGs said it would be "extremely helpful" if Meta identified which proposed stipulations had been agreed to in the related cases. Meta provided that information. *See* **Exhibit A**. Despite this effort, the AGs arrived at the June 12 conferral unwilling to agree to any additional stipulations. The AGs contended that certain stipulations were too broad or vague as worded, that others addressed evidence unlikely to arise at trial, and that the F.R.E. would suffice to handle any issues. Meta responded that if the AGs believed the stipulations were too broad, they should propose revised language to narrow them, and that if certain evidence was unlikely to arise at trial, there was no reason to refuse to stipulate to its exclusion. The AGs declined to do either.[5]

Meta requests that the Court direct the AGs to confer further with Meta in a good-faith attempt to agree on more than just a handful of Meta's proposed stipulations. Given the parties' ability to reach agreement on most of them in related cases, there is no reason the Parties cannot here. For example:

- Proposed MIL #9 would "exclude references to Mark Zuckerberg's time in college or Facemash." Judge Kuhl granted a materially identical MIL. *See* **Exhibit B** at 2. There is no apparent reason for the AGs to reserve the right to introduce evidence concerning Mr. Zuckerberg's college experience and a defunct social media platform in a case that involves neither of those issues.

  - Proposed MIL #11 would exclude testimony from former employee Jason Sattizahn about Meta's attorney-client privileged communications. Judge Kuhl already ruled that "Sattizahn

---

[5] On June 16, the AGs proposed to narrow 6 of Meta's proposed stipulations. They simultaneously reiterated that they would not agree, and were unwilling to further negotiate, 21 of Meta's proposals (highlighted in yellow in **Exhibit A**). Meanwhile, Meta has confirmed that it will agree to both of the MIL stipulations proposed by the AGs, with minor clarifying revisions, and to the AGs' proposed revisions to 2 of Meta's proposed stipulations. While Meta will continue to confer with the AGs about the 6 stipulations for which the AGs proposed narrowing late on June 16, it is clear that further direction from the Court is required given their outright refusal to even engage with Meta on 21 MILs.

may not offer testimony regarding specific attorney-client privileged communications," ECF 2949-1 at 1—an Order MDL PISD Plaintiffs subsequently "agreed to be bound by … for purposes of MDL trials, with such Order being adopted in its entirety by this Court," ECF 2949 ¶ 2, *as entered* ECF 2965 at 2.  Judge Kang has also twice rejected the AGs' attempt to pierce Meta's privilege under similar crime-fraud theories.  ECF 2633, 3053.  Nevertheless, the AGs have refused to confer on this proposed stipulation or to remove privileged documents used at Sattizahn's deposition from their exhibit list.  Instead, the AGs informed Meta that it is *Meta's* duty to file a protective order on this issue, and *Meta's* duty to object to the exhibits' use at trial—despite the clear ethical prohibitions on seeking to rely on evidence known to be the subject of a privilege claim.  *See* A.B.A. Comm. on Ethics & Pro. Resp., Formal Op. 91-359 (1991) (attorneys must "be careful not to seek to induce [a] former employee to violate the privilege attaching to attorney-client communications"); *see also City & Cnty. of S.F. v. Cobra Solutions, Inc.*, 38 Cal.4th 839, 852 (2006) ("ABA Model Rules … may serve as guidelines").

The AGs have offered no reasoned basis for resisting these stipulations.  The existence of the FRE is not a valid basis to refuse to confer on reasonable stipulations, particularly given the Court's indication (including through its limits on filed MILs) that the Parties should avoid burdening it with unnecessary disputes.  The purpose of MIL stipulations is to resolve evidentiary disputes before trial and give both sides clarity about the scope of admissible evidence.  *See, e.g.*, *U.S. v. Kail*, 2021 WL 261135, at *7 (N.D. Cal. Jan. 26, 2021) (ordering parties to "continue to meet and confer to reach an agreement" on evidentiary stipulations to "streamlin[e] certain aspects of the trial").  That is precisely why this Court's Standing Pretrial Order prescribes a robust meet-and-confer process, while limiting each side to five MILs.  *See* Pretrial Standing Order ¶ 4(a).  Meta thus respectfully requests that the Court order the AGs to adhere to the Court's prescribed procedures for conferring on reasonable MIL stipulations.

**State AGs' Position:** The State AGs and Meta continue to confer on the MIL stipulations proposed by Meta. An order to such effect is not necessary. Meta's position statement is a premature and performative manufacturing of an issue that does not exist and does not warrant the Court's time. Raising this issue with the Court is a clear attempt by Meta to eschew the Court's decision to limit each party to a maximum of five MILs. The State AGs respectfully request that the Court does not entertain counsel's attempt to argue additional MILs. Meta's account of the facts is not entirely false. Meta did provide a list of forty proposed MIL stipulations on May 29, and subsequent conferrals were held on June 10 and June 12. Meta is also correct that the State AGs indicated willingness to agree to seven of those proposals prior to a single conferral being held. The State AGs also proposed edits to five of Meta's proposals on June 9, and after conferring, suggested edits to an additional six of Meta's proposed MIL stipulations on June 16.

Pretrial stipulations are interpreted using the same principles for interpreting written contracts. *See U.S. v. McKinney*, 758 F.2d 1036, 1047 (5th Cir. 1985) (where trial court concludes that there was a misunderstanding of the parties as to the terms of a stipulation, court was justified in not enforcing what one party took to be the agreement). A meeting of the minds by the parties is essential to stipulate. *Id.* at 1047–1048. Therefore, stipulations must be clear and unambiguous. In the parties' conferrals, the AGs have communicated that a majority of the proffered stipulations are vague and ambiguous, *i.e.*, susceptible to more than one interpretation. Clarification has been requested; none has been provided.  The fact that Meta initiated the meet and confer process early indicates diligence but not necessarily good faith, particularly when Meta has not allowed for the conferral process to play out before seeking intervention.

**D.      Report on Meet-and-Confer Regarding Rule 702 Order re AG Expert Adam Alter**

<u>Meta's Position:</u> In the Court's Order resolving Meta's Rule 702 motion as to Adam Alter, it ordered the Parties to "meet and confer to ensure that the presentation of evidence occurs within th[e] parameters" set forth in the Court's opinion with respect to two of Dr. Alter's opinions.  ECF 3068 at 8, 12.  Meta understands that the Court held that Dr. Alter cannot testify about three ultimate issues in the case, outlined below.  Although Meta conferred with the AGs on these issues, they refused to agree to these parameters for Dr. Alter's testimony at trial.  Subject to any further guidance from the Court, Meta understands that the Court's Order bars trial testimony from Dr. Alter on the three points below.

*First*, Meta understands the Court's Order to hold that Dr. Alter cannot testify that Meta's statements are false, misleading, or have a tendency or are likely to deceive a reasonable consumer.  *See id.* at 8.  Addressing Meta's argument that "Alter's testimony that Meta's statements are false or have a 'tendency to mislead' invade the province of the factfinder," the Court explained that "[w]hile Alter may explain how his expertise informs how a company may use certain kinds of messages to communicate particular messages, *he cannot serve as a conduit for attorney argument when a reasonable juror is fully capable of making a factual decision without expert opinion*," because "[a] jury can determine for itself that a corporation is not acting consistently with its public statements." *Id.* (emphasis added).

The AGs have refused to agree to these parameters for Dr. Alter's testimony at trial, relying on two other sentences in the Court's Order.[6]  Meta respectfully submits that these two sentences, taken out of context, do not support the AGs' contention that Dr. Alter may testify that Meta's statements were likely to deceive a reasonable consumer—or as framed by the AGs below, the statements' "likely … effect on consumers"—which is the ultimate issue on the AGs' deception claims.  Instead, they support Meta's understanding, because they are in sections of the Court's Order addressing the Court's holding that Dr. Alter cannot testify about (1) "what Meta 'knew'" or its state of mind[7] or (2) how consumers actually interpreted Meta's intended message (or that particular statements were "meaningful and important" to them).  *Id.* at 3, 5–7.  Thus, Meta's understanding is that while Dr. Alter may testify about how advertising themes *could* influence consumer perceptions, *see id.* at 7, he cannot testify about the ultimate issue: that Meta's statements are false, misleading, have a "tendency to deceive," or are likely to deceive.

*Second*, Meta understands the Court's Order to hold that Dr. Alter cannot testify that Instagram or Facebook as a whole (or particular accounts on Instagram or Facebook) are "directed to children" or "targeted to" children because this is the ultimate issue to be decided under COPPA—as compared to testimony explaining *how* platforms or particular accounts may be directed or targeted to children.  *Id.* at 10–12.  Although the Court suggested in a parenthetical that Dr. Alter could testify that specific Instagram or Facebook accounts (but *not* Instagram or Facebook as a whole) "target" children, *id.* at 11, Meta respectfully submits that such an opinion would also go to an ultimate issue, and thus would be improper, since the COPPA statute defines "directed to" to mean "targeted."  *See* 15 U.S.C. § 6501(10)(A).  Because the statute treats "directed to" and "targeted to" children as synonymous, *id.*, the AGs' argument that Dr. Alter can testify that Meta's services or particular accounts are "targeted to" children runs afoul of the Court's Order that he may not testify on this ultimate issue.

---

[6] *See id.* at 10 ("a marketing expert may testify to what messages defendant's communications were intended to convey based on their review of defendant's documents so long as it is presented appropriately"); *id.* at 6 (Dr. Alter may "synthesize Meta's messaging strategies to opine on what those communications were likely to convey to consumers … so long as they are couched in terms of what the expert would expect to occur as opposed to a statement of what did in fact occur").

[7] The AGs do not explain how Dr. Alter could offer opinions "about Meta's intended marketing messages" (*see infra*) without running afoul of this clear holding.

*Third*, the Court held that Dr. Alter may not "draw conclusions regarding the prevalence of under-13 accounts" on Instagram or Facebook or "testify to the specific results of studies he did not conduct." *Id.* at 11–12. During the Parties' conferral, the AGs did not offer any explanation for refusing to agree to this third parameter for Dr. Alter's testimony. But their statement below—which contends that Dr. Alter "may testify about *Meta's data sources* that support his expert opinion that Meta's platforms are more likely to be targeted to children *because they empirically have significant numbers of child users*"—runs directly counter to the Court's Order on this point.

**State AGs' Position:** Meta took the position here and in conferrals that the Court's repeated orders that: "marketing experts are permitted to opine on 'what a company intended to convey through their marketing,' as Alter does," (ECF 3068 at 8:7-8, 10:1-9, 6:17-18) must be disregarded and that he may only testify generically about how a company *may* use certain kinds of messages, rather than as to how Meta actually did use those messages. The State AGs' understanding of the Court's order is that Dr. Alter is permitted to offer opinions as a marketing expert about Meta's intended marketing messages and their likely (but not actual) effect on consumers. But he may not offer expert opinions about whether those marketing messages were actually false, or whether Meta knew they were false. Similarly, Meta takes the position that the plain language of the Court's repeated order permitting Dr. Alter to offer opinions as a marketing expert that Meta "targeted" children must also be disregarded. *Id*. at 11:1-9, 6:18. The State AGs' understanding is that Dr. Alter may offer opinions as a marketing expert that Meta's platforms were targeted to children, and certain accounts were targeted to children. The State AGs will instruct him to avoid the term "directed to children."

Finally, the State AGs understand that Dr. Alter may offer his expert opinions that a "platform that attracts and retains users who are children is empirically more likely to [target children] because it in fact attracts and retains such users"" (Alter Report ¶454) and explain the data on which his opinion is based: Meta's internal studies and communications ""consistently [find] a significant number of children and tweens on the platform" (Alter Report ¶511). Dr. Alter may testify about Meta's data sources that support his expert opinion that Meta's platforms are more likely to be targeted to children because they empirically have significant numbers of child users -- the internal studies are admissions of a party opponent, and these are materials typically relied upon by experts in his field. But he cannot go beyond that to offer an

expert opinion that any one data source is the "specific" or accurate number of children on Meta's platforms because they are "studies he did not conduct" personally. (ECF 3068, at. 11:24-12:5).

E.    **Deposition Designations Protocol**

**State AGs' Position:** The parties have largely completed the priority deposition designations set forth in the Pretrial Order.  (ECF 3139-1).  The AGs produced five priority designations. Meta produced only two and refused to produce more.  The parties have exchanged designations, counter-designations, and objections.  Disputed excerpts will be submitted to the Court by the June 30, 2026 deadline. The parties disagree on the procedure for completing the remaining designations. While both agree to proceed on a rolling basis, they diverge on the endpoint.  The AGs maintain that all designations should be finalized before trial and propose a schedule by which all remaining designations will be exchanged by July 6 and all disputed excerpts submitted to the Court by July 20 –approximately four weeks before trial.

The AGs have offered to confer about the specifics of the proposed schedule, but Meta has refused to engage unless any schedule permits it to continue designating unlimited deposition testimony not only up to the eve of trial, but throughout the trial as long as it provides 16 days' notice. The AGs have rejected this as unworkable and unduly prejudicial, giving Meta the unfettered right to blanket the AGs with designations while the AGs are preparing and presenting their case. There is no reason this process cannot be completed before trial.  Meta has litigated this matter for years and cannot credibly claim surprise. The parties have already exchanged all other pretrial materials and   deposition designations are no different.

The prejudice which Meta's proposal poses to the AGs is palpable and concrete.  In its witness list filed on June 17, 2026, Meta listed 25 Meta witnesses it will or may call by designation, and 34 State-specific witnesses (24 from the four plaintiff states) it will or may call by designation. (ECF 3159).  Yet Meta has only produced two priority deposition designations.  Allowing Meta to wait until the eve of trial or the trial itself to serve numerous foreseeable designations would disrupt the AGs' presentation of their case and hinder any meaningful response. Nor has the Court provided any contrary guidance.  At the May conference, other than noting that designations and objections should be provided to the Court with adequate opportunity for review, the Court expressed no view on one approach as opposed to the other. May 27, 2026 Hrg. Tr. at 71:10. The AGs submit that providing these disputes to the Court several weeks

in advance of the trial will maximize the Court's opportunity to address these issues and minimize disruption to the trial with flurries of eleventh-hour designations.

**Meta's Position:** Meta respectfully requests that the Court issue guidance as to the timing of future exchanges of deposition designations and all ensuing rounds of counters and objections. On June 1, Meta shared a proposed Deposition Designations Protocol with the AGs based on a similar rolling schedule agreed upon by the *Breathitt* parties. Under Meta's proposal, the Parties would jointly submit unresolved disputes to the Court for review 7 calendar days before any play of the deposition video at trial, consistent with the Court's guidance at the last CMC. *See* May 27, 2026 Hr'g at 70:10–71:9 (Court indicating it "is fine with me" for the Parties to exchange deposition designations "a number of days in advance of when the video for that deposition is set to be played" so long as objections are teed up sufficiently in advance).

Meta also confirmed by email on June 1 that it would not agree to a timeline that requires all designations to be completed before trial begins. Nonetheless, on June 12, the AGs proposed a protocol that would require the Parties to finalize all deposition designations, objections, and counters before the start of trial. In fact, under the AGs' proposal, it is possible the Parties will not yet have guidance from the Court on any disputes regarding initial designations, obviating the purpose of the priority exchange process. *See* ECF No. 3139-1 (setting June 30 as deadline to submit disputes on priority designations). This counterproposal also eliminated all language in Meta's proposal allowing the Parties to withdraw portions of designated testimony closer in time to trial.

Meta cannot anticipate its complete trial strategy before the AGs even start their case. Requiring the Parties to finalize all designations, or even all initial designations, before the AGs so much as deliver their opening statement would greatly handicap the defense's ability to designate testimony effectively and efficiently. As a result, the AGs' proposal would force Meta to over-designate testimony out of an abundance of caution, increasing the volume of disputes that the Court must resolve. Meta seeks to limit its designations to testimony that will actually assist the Court and advisory jury. Material designated nearly two months before Meta ever puts on a witness can hardly be narrowly tailored to address the evidence actually received by the Court in the AGs' case. Meta therefore respectfully requests that the Court issue guidance as to the timing of future exchanges of designations and objections consistent with that set forth in Meta's proposed Deposition Designation Protocol.

Respectfully submitted,

DATED: June 19, 2026                    By:  */s/ Ashley M. Simonsen*

**COVINGTON & BURLING LLP**
Ashley M. Simonsen, SBN 275203
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com

**DAVIS POLK & WARDWELL LLP**

By:  */s/ James P. Rouhandeh*
James P. Rouhandeh, *pro hac vice*
Antonio J. Perez-Marques, *pro hac vice*
Caroline Stern, *pro hac vice*
Corey M. Meyer, *pro hac vice*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
rouhandeh@davispolk.com
antonio.perez@davispolk.com
caroline.stern@davispolk.com
corey.meyer@davispolk.com

*Attorney for Defendants Meta Platforms, Inc.*
*f/k/a Facebook, Inc.; and Instagram, LLC*

**PHILIP J. WEISER**
Attorney General
State of Colorado

_/s/ Krista Batchelder_
Krista Batchelder, CO Reg. No. 45066,
*pro hac vice*
Deputy Solicitor General
Shannon Stevenson, CO Reg. No. 35542, *pro hac vice*
Solicitor General
Elizabeth Orem, CO Reg. No. 58309, *pro hac vice*
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6651
krista.batchelder@coag.gov
Shannon.stevenson@coag.gov
Elizabeth.orem@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel.*
*Philip J. Weiser, Attorney General*

**ROB BONTA**
Attorney General
State of California

_/s/ Megan O'Neill_
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Emily Kalanithi (SBN 256972)
Supervising Deputy Attorneys General
Nayha Arora (CA SBN 350467)
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer (CA SBN 336428)
Marissa Roy (CA SBN 318773)
Brendan Ruddy (CA SBN 297896)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480

14

Megan.Oneill@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

*/s/ Philip Heleringer*
J. Christian Lewis (KY Bar No. 87109),
*Pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*Pro hac vice*
Zachary Richards (KY Bar No. 99209),
*Pro hac vice*
Daniel I. Keiser (KY Bar No. 100264),
*Pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*Pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV
ZACH.RICHARDS@KY.GOV
DANIEL.KEISER@KY.GOV
MATTHEW.COCANOUGHER@KY.GOV
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

**JENNIFER DAVENPORT**
Attorney General
State of New Jersey

*/s/ Thomas Huynh*
Brian F. McDonough (NJ Bar No. 026121980),
*Pro hac vice*
Kashif T. Chand (NJ Bar No. 016752008),
*Pro hac vice*
Assistant Attorneys General
Thomas Huynh (NJ Bar No. 200942017),
*Pro hac vice*
Section Chief, Deputy Attorney General
Patrick J. Misale (NJ Bar No. 401352022)
*Pro hac vice*

15

Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*Pro hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Brian.Mcdonough@law.njoag.gov
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiffs Jennifer Davenport, Attorney General for the State of New Jersey, and Jeremy E. Hollander, Acting Director of the New Jersey Division of Consumer Affairs*

**ATTESTATION**

I, Ashley M. Simonsen, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: June 19, 2026

By: */s/ Ashley M. Simonsen*

AGENDA AND JOINT STATEMENT FOR JUNE 26, 2026 SECOND PRETRIAL CONFERENCE (MDL AG ACTION)
4:22-md-03047-YGR