[*Parties and Counsel Listed on Signature Pages*]

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*People of the State of California, et al. v. Meta Platforms, Inc., et al.* | MDL No. 3047<br><br>Case Nos. 4:22-md-03047-YGR-PHK<br>          4:23-cv-05448-YGR<br><br>**STATE AGS' OPPOSITION TO META'S OMNIBUS MOTION TO SEAL (META'S AND STATE AGS' RULE 702 MOTIONS)**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br><br>Magistrate Judge: Hon. Peter H. Kang |

## I.    INTRODUCTION

Meta's sealing proposals are not narrowly tailored and cannot meet the high threshold for sealing. No compelling reasons exist to seal these materials, and any such reasons are outweighed by the public's interest in accessing information that goes to the heart of the merits of this government enforcement action and the parties' Rule 702 briefing. Unsealing this material now will also prevent unnecessary sealing disputes leading up to trial.

## II.    ARGUMENT

### A.    Meta Must Present Compelling Reasons for Sealing that Outweigh the Public Interest in Disclosure.

The "strong presumption in favor of access" to judicial records exists to "ensur[e] the public's understanding of the judicial process and of significant public events." *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1177–79 (9th Cir. 2006) (internal citations and quotations omitted). Parties seeking to seal materials attached to motions that are "more than tangentially related to the underlying cause of action" must present "compelling reasons" for sealing that outweigh the public's interest in disclosure. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096-1101 (9th Cir. 2016); *see also In re Midland Nat. Life Ins. Co. Annuity Sales Pracs. Litig.*, 686 F.3d 1115, 1119–20 (9th Cir. 2012) (the "compelling reasons" standard applied to *Daubert* motions connected to a pending summary judgment motion). This "high threshold" requires a showing of harm supported by specific factual findings, "without relying on hypothesis or conjecture." *Kamakana*, 447 F.3d at 1178–80. Sealing requests must be narrowly tailored to only seek sealing of sealable material. Civil L.R. 79-5.

### B.    Meta Fails to Meet the High Threshold for Sealing Information about the ███ Uptake of Various Safety Tools and Features.

Meta again seeks to seal research findings showing the ███████ uptake by U.S. youth and teens of certain safety features, including for the Daily Limit tool on Instagram, and for supervision through Family Center, Take a Break, Teen Accounts, and turning off notifications on Facebook. *See* ECF 2702-4, 2775-3 at PDF p. 158; ECF 2884-3, 2846-3, 2914-3 at PDF p. 60-61. Meta waived any claim of competitive harm as to the statistic in Paragraph 93 of Mr. Saba's report when it did not seek to seal the same statistic in Paragraph 123 of Mr. Saba's rebuttal report. *See* ECF 2846-9 at PDF p. 65;

1

ECF 3165 at 7-8. Meta's assertions of competitive harm are further belied by the fact that many similar research findings, including for the same tools for slightly different time periods, have already been made public. *See Kamakana*, 447 F.3d at 1184 (holding that public records should be unsealed because, among other reasons, some of the information sought to be sealed was "already publicly available" or publicly disclosed during the course of the lawsuit). Most strikingly, many similar findings were made public in Plaintiff's Exhibit 03559 in the *State of New Mexico v. Meta Platforms Inc.* trial and are now available online. *See* Beckett Decl., Ex. 1. For example, the exhibit includes the uptake of the Daily Limit tool by Instagram users aged 13-17 predicted to reside in the United States between January 8, 2023 and March 23, 2025. *Id.* at PDF p. 12. Meta now seeks to seal the same statistic about the uptake through April 2024, despite the significant time overlap. ECF 2702-4 at PDF p. 158; 2775-3 at PDF p. 158. Meta also seeks to seal the finding of youths' uptake of supervision through Family Center on Facebook, when the same statistic for a slightly different time period on Instagram has already been made public. Exhibit 1 at  PDF pp. 13, 15. Research statistics about the uptake of Quiet Mode, Take a Break, and limiting notifications on Instagram are also included in this public document for time periods up to May 7, 2025, depending on the feature. *Id.* at PDF pp. 8, 16. Meta has not asserted any harm stemming from the publicly available research findings or explained why the findings at issue here would be any more likely to cause competitive harm. Meta's vague assertions of potential harm are far too attenuated and fail to sufficiently explain exactly how a competitor would use the information to obtain an unfair advantage in light of what has already been publicly disclosed. *See Hodges v. Apple, Inc.*, 2013 WL 6070408, at *2 (N.D. Cal. Nov. 18, 2013) (denying motion to seal because Apple failed to explain "how a competitor would use th[e] information to obtain an unfair advantage"). Unlike in *Apple Inc. v. Samsung Electronics Co.*, public disclosure of these findings would not give competitors a "head-start" in light of their existing versions of similar safety tools. 727 F.3d 1214, 1228 (Fed. Cir. 2013). Meta cannot meet the "compelling reasons" sealing standard.

Moreover, the public's interest in this information greatly outweighs any risk of competitive harm because Meta's proposed redactions conceal important facts that would "materially increase the public's understanding of the alleged wrongdoing in this case." *In re Google Inc. Gmail Litig.*, No. 13-

2

MD-02430-LHK, 2013 WL 5366963, at *3, n.1. These statistics go directly to the State AGs' deception and unfairness claims, and many were cited in the State AGs' Opposition to Meta's Motion to Exclude Saba's testimony, to rebut Meta's arguments for exclusion. *See* ECF 2914-1 at 3; *cf. Apple Inc.*, 727 F.3d at 1228 (in granting the sealing request, the Court noted that the information sought to be sealed was not cited by the parties or lower court). The balancing of interests clearly favors unsealing.

### C. Meta Fails to Meet the High Threshold for Sealing Usage and Revenue Data.

*Charts in Mr. Saba's Opening Report.* Meta seeks to seal portions of certain charts included in Mr. Saba's report containing teen usage information from January 2023 to March 2024. *See* ECF 2844-3, 2846-3, and 2914-3 at PDF pp. 66, 74-78. Meta's vague assertions that competitors can use the information to "target these demographics" and "better understand, emulate, or even replicate Meta's systems" (ECF 3166-1 at ¶ 5) lose all power in the context of the portions of the charts before 2023 that Meta has already agreed to unseal. As Judge Kuhl held in JCCP 5255, "Surely, the fact that minors constitute an important customer base for Meta's platforms is no secret; no competitor needs to wait for more precise data to attempt to compete with Meta for this age cohort." *See* ECF 3014-2 at 17. The Court's general guidance about information from 2023 onwards being more likely to be sealable and its granting of prior stipulated redaction requests with other plaintiffs should not change the analysis here. Meta has not shown compelling reasons for sealing. Additionally, these charts are critical to Mr. Saba's opinions, and Meta criticizes these charts in its motion to exclude his testimony. *See* ECF 2914-3 at PDF p. 79; 2846-1 at 13. The portions at issue show the interplay between the introduction of certain safety tools, including Quiet Mode on Instagram and Family Center on Facebook, and trends in teen average daily usage. The public will be unable to understand that interplay if they are left to rely on data before 2023, which is critical to their understanding of the claims at issue and the Rule 702 motions. These interests outweigh any asserted risks of competitive harm, and the information must be unsealed.

*Saturation Rate Statistic from Mr. Saba's Opening and Rebuttal Reports.* Meta also seeks to seal a statistic relating to the average percentage of 9–12-year-olds among the teen saturation rate on Instagram from 2019 to 2023. *See* ECF 2846-9 at PDF p. 51; ECF 2914-3 at PDF p. 135. Under the Court's guidance, this information is less likely to be competitively sensitive due to the time period.

3

Max Eulenstein's declaration also lacks sufficient detail about why this older information would pose a competitive threat to Meta. The statistic is critical to Mr. Saba's calculations (which inform monetary remedies) and Meta's criticisms of the same. *See* ECF 2846-9 at PDF p. 51. The public has an interest in understanding how many children under 13 were on Instagram and how this impacts the potential remedies calculations in this case. The balancing of interests favors unsealing this statistic.

*Other information from Mr. Saba's Rebuttal Report.* Meta also seeks to seal a chart and analysis regarding teen usage in California from July 2021 through March 2024 that utilizes the same data included in Dr. McCrary's public report. *See* ECF 2914-4 at PDF pp. 68-69; ECF 3168-18 at PDF p. 42. Meta's claims of competitive harm fall apart in light of this public disclosure and the fact that most of the data covers a time period before 2023. *See* ECF 3168-18 at PDF p. 42. Moreover, the public has an interest in understanding the competing analyses of teen usage between the two experts, both of whom are subject to Rule 702 motions, which clearly outweighs Meta's baseless claims of harm.

Additionally, Meta's request to seal statistics reflecting the analysis of revenue from teens based upon predicted age versus stated age (*see* ECF 2846-9 and 2914-4 at PDF p. 72) fails to consider that competitors likely can already estimate the "total teen-generated revenue on Meta's services" based upon public disclosures in the recent JCCP and New Mexico trials. *See, e.g.*, Beckett Decl., Ex. 2 (Trial Tr. JCCP No. 5255, Feb. 19, 2026 at 2526) (describing Meta internal document says that teen opportunity cost (i.e. the cost of not having teens on the platform), is $150 million in 2019). It is also not apparent from Mr. Eulenstein's declaration how knowing the statistics would give competitors a "roadmap to replicate Meta's features" when they simply shed light on how much lower revenue would be under a certain calculation method. Meta's justification cannot meet the "compelling reasons" standard. The public has a significant interest in viewing these statistics because they demonstrate how conservative Mr. Saba's calculations are, which the public cannot appreciate simply by understanding that the revenue would be "lower" under his approach. The public's interest in this information clearly outweighs the minimal, if any, threat of competitive harm, and the information must be unsealed.

*Metrics in Venkataraman Report.* Meta's sealing requests relating to Dr. Venkataraman's report are not narrowly tailored and are inadequately supported in Meta's declaration. For example, Meta seeks

to seal advertising metrics for Nickelodeon on both Instagram and Facebook ranging from 2012 to 2024. *See* ECF 2775-8 at PDF pp. 64, 150. Meta fails to provide sufficient factual detail about how this data, especially the older metrics or metrics that aggregate data across 12 years, could be used by competitors to "predict Meta's future development strategies" and "undercut the features of Meta's services that set it apart." ECF 3166-1 at ¶¶ 6-8. Revealing the number of clicks, impressions, and ad revenue of certain groups is far from revealing the "architecture of [company's] technology" in a patent case. *See* *Synchronoss Techs., Inc. v. Dropbox, Inc.* 2017 WL 11527607 at *2 (N.D. Cal. Dec. 27, 2017). Meta's attempt to seal the follower distribution by age bracket for Nickelodeon fails for the same reasons. *See* ECF 2775-8 at PDF p. 65. Meta's claims of competitive harm are further undercut by the information in Dr. Alter's report that Meta did not seek to seal, which reveals similarly specific information about advertising revenue and metrics from Nickelodeon ads on Instagram *See* ECF 2702-4 at PDF p. 311.

Furthermore, Meta seeks to seal statistics about the number of active users in certain age groups that follow certain Plaintiff-identified accounts. ECF 2775-8 at PDF pp. 41, 44. Meta overstates competitors' ability to create a "valuable outline and marketing plan" from this high-level information from 2024 that aggregates follower share over 50 Facebook accounts and 49 Instagram accounts. *Id*. at PDF p. 39. Meta's attempt to analogize to *Doe v. Meta Platforms, Inc.* fails because unlike here, that case involved more specific information about the data Meta receives and proprietary techniques. 2022 WL 17970394 at *2-3 (N.D. Cal. Dec. 21, 2022). Meta has not met its burden.

On the other hand, the public has a significant public interest in accessing this information, particularly because Meta relies heavily on this information in its attempt to discredit Dr. Alter's conclusions, and Meta's most recent witness list shows that they intend Dr. Venkataraman to testify about the same at trial. *See* ECF 2775-8; ECF 3159 at 8. The public has the right to understand these arguments and the proof that underlies them. For these reasons, the public's interest in accessing this information outweighs any interests Meta identified in sealing it, and Meta's motion must be denied.

## III.    CONCLUSION

The public's interest in accessing the information contained in these expert reports significantly outweighs any reasons that Meta identified to seal it. Meta's motion must be denied.

Dated: June 24, 2026

Respectfully submitted,

By: */s/ Samantha Beckett*

**ROB BONTA**
Attorney General
State of California

Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Emily Kalanithi (SBN 256972)
Supervising Deputy Attorneys General
Nayha Arora (CA SBN 350467)
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer (CA SBN 336428)
Brendan Ruddy (CA SBN 297896)
Samantha Beckett (CA SBN 308456)
Katherine Read (CA SBN 341463)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Megan.Oneill@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*

**PHILIP J. WEISER**
Attorney General
State of Colorado

*/s/ Krista Batchelder*
Krista Batchelder, CO Reg. No. 45066,
*pro hac vice*
Deputy Solicitor General
Shannon Stevenson, CO Reg. No. 35542, *pro hac vice*
Solicitor General
Elizabeth Orem, CO Reg. No. 58309, *pro hac vice*
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section

6

1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6651
krista.batchelder@coag.gov
Shannon.stevenson@coag.gov
Elizabeth.orem@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel.*
*Philip J. Weiser, Attorney General*


**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

*/s/ Philip Heleringer*
J. Christian Lewis (KY Bar No. 87109),
*Pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*Pro hac vice*
Zachary Richards (KY Bar No. 99209),
*Pro hac vice*
Daniel I. Keiser (KY Bar No. 100264),
*Pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*Pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV
ZACH.RICHARDS@KY.GOV
DANIEL.KEISER@KY.GOV
MATTHEW.COCANOUGHER@KY.GOV
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

**JENNIFER DAVENPORT**
Attorney General
State of New Jersey

*/s/ Kashif T. Chand*
Kashif T. Chand (NJ Bar No. 016752008),
*Pro hac vice*
Assistant Attorney General

7

Thomas Huynh (NJ Bar No. 200942017),
*Pro hac vice*
Section Chief, Deputy Attorney General
Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*Pro hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiffs New Jersey Attorney General
and the New Jersey Division of Consumer Affairs
Jennifer Davenport, Attorney General for the State of
New Jersey, and Jeremy E. Hollander, Acting Director
of the New Jersey Division of Consumer Affairs*

STATE AGS' OPPOSITION TO META'S OMNIBUS MOTION TO SEAL (RULE 702 MOTIONS)
Case Nos. 4:22-md-03047-YGR-PHK; 4:23-cv-05448-YGR

## **SIGNATURE CERTIFICATION**

Under Civ. L.R. 5-1(i)(3), I, Samantha Beckett, hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in this filing's content and have authorized this filing.

DATED: June 24, 2026                                   */s/ Samantha Beckett*

STATE AGS' OPPOSITION TO META'S OMNIBUS MOTION TO SEAL (RULE 702 MOTIONS)
Case Nos. 4:22-md-03047-YGR-PHK; 4:23-cv-05448-YGR