James P. Rouhandeh, *pro hac vice*
Antonio J. Perez-Marques, *pro hac vice*
Caroline Stern, *pro hac vice*
Kathryn S. Benedict, *pro hac vice*
Corey M. Meyer, *pro hac vice*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:    rouhandeh@davispolk.com
          antonio.perez@davispolk.com
          caroline.stern@davispolk.com
          kathryn.benedict@davispolk.com
          corey.meyer@davispolk.com

*Attorneys for Defendants Meta Platforms, Inc. and Instagram, LLC*

*Additional counsel listed on signature pages.*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*People of the State of California, et al. v. Meta Platforms, Inc., et al.* | MDL No. 3047<br><br>Case Nos. 4:22-md-03047-YGR-PHK<br>4:23-cv-05448-YGR<br><br>**META'S AMENDED OMNIBUS MOTION TO SEAL (META'S AND STATE AGS' RULE 702 MOTIONS)**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

## I.  INTRODUCTION

Pursuant to Civil Local Rule 79-5 and the Court's Order Setting Sealing Procedures (ECF 341), Defendants Meta Platforms, Inc. and Instagram, LLC ("Meta") move for narrowly tailored redactions of confidential information filed in connection with the Parties' Rule 702 motions because there are compelling reasons to seal this information which outweigh the public's interest in access to such information.  As reflected in the concurrently filed Amended Omnibus Sealing Stipulation, the Parties agree to redact certain personally identifiable information (PII) and competitively sensitive information in these expert reports.  However, the State Attorneys General ("State AGs") oppose certain of Meta's requested redactions to competitively sensitive information in the expert report of Carl S. Saba ("Saba Report") (ECF 2844-1, 2846-1, 2914-1), the trial rebuttal report of Carl S. Saba ("Saba Rebuttal") (ECF 2844-4, 2846-7, 2914-2), the trial rebuttal report of Sriraman Venkataraman ("Venkataraman Report") (ECF 2775-6), Meta's Rule 702 Motion re Alter and Iyer ("Meta's MTE re Alter and Iyer") (ECF 2702-1), and the State AGs' Response to Meta's Rule 702 Motion re Alter and Iyer ("AGs' Opp. to Meta's MTE re Alter and Iyer") (ECF 2775-1), which Meta respectfully submits should be sealed for the compelling reasons explained  below.

The competitively sensitive information that Meta seeks to redact from these reports include Meta's internal business strategy and platform development milestones, as well as granular data about the inputs and results of Meta's internal research.  Disclosure of this information could cause irreparable damage to Meta's competitive position, including by allowing competitors to optimize their own products and attract Meta's users without incurring the same research and development costs.  Further, Meta's redactions are narrowly tailored and do not hinder the public's ability to understand the issues raised in these motions.

## II.  LEGAL STANDARD

Courts have consistently found that it is appropriate to seal sensitive information in expert reports under the "compelling reasons" standard.  *See Activision Publ'g, Inc. v. Engine Owning UG*, 2023 WL 2347134, at *2 (C.D. Cal. Feb. 27, 2023) ("under Ninth Circuit law, 'customer usage information, when kept confidential by a company, is appropriately sealable

1

under the 'compelling reasons' standard where that information could be used to the company's competitive disadvantage'" (quoting *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc*, 2015 WL 984121, at *2 (N.D. Cal. Mar. 4, 2015))).  These compelling reasons exist when court files might have become a vehicle for improper purposes, such as where disclosure would harm a litigant's competitive standing. *See Kamakana v. City and Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).

## III. ARGUMENT

Meta seeks to seal narrow portions of three expert reports, as well as references to these reports in the parties' motions, which contain competitively sensitive business information including (i) recent market research data on user engagement and value-driving features of Meta's platforms and (ii) granular statistics and internal benchmarks. Meta's proposed redactions are targeted and would not impede the public's understanding of the issues in this matter.

***Internal research about user engagement and platform features***.  Narrow portions of these expert reports and Rule 702 Motions reveal specific data about the adoption rate of various platform features.  As Meta's Vice President and Head of Product of Instagram Max Eulenstein attests, Meta invests substantial resources in the research and development underlying this data to understand activity on Meta's platforms in order to guide platform development and strategy.  Max Eulenstein Decl. ("Eulenstein Decl.") ¶¶ 4; 7-8 (June 17, 2026). Disclosure of this information would allow competitors to optimize their own products and attract Meta's users without incurring the same research and development costs.  *Id*; *see also IntegrityMessageBoards.com v. Facebook, Inc.*, 2020 WL 6544411, at *13-14 (N.D. Cal. Nov. 6, 2020) (sealing information about ad targeting systems because disclosure would unfairly give competitors insight into how Facebook is improving its offerings).

Exhibit 1 to Meta's MTE re Alter and Iyer and Exhibit 1 to AGs' Opp. to Meta's MTE re Alter and Iyer contain a granular statistical assessment of user uptake of a specific tool that Meta has developed to help users manage their time on Meta's services.  As Meta's Vice President of Central Science, Strategy, and Research Curtiss Cobb attests, "[c]ompetitors could use this information to prioritize their own interventions or optimize their own platforms, which could

undercut Meta in the market." *See* Curtiss Cobb Declaration in support of Meta's Omnibus Amended Motion to Seal Exhibits to the Parties' Summary Judgment Briefing ¶ 5 (June 17, 2026). This information may influence the decision-making and business strategies employed by Meta's competitors, for example by influencing how those competitors develop similar features, critique Meta's platforms prior to their launch, or otherwise distinguish themselves from Meta. *Id.* The information is thus extremely valuable to any competitor seeking to enhance their own platform offerings to compete with Meta's services and attract Meta's users.

The exact adoption rate of specific platform features and associated granular detail (Saba Report ¶¶ 89-90, 92-94) is not necessary for the public to understand the issues raised in the Parties' motions or the State AGs' argument that the adoption rate of this particular feature was "low." Saba Report ¶ 90. As such, disclosure of the precise percentage would only benefit competitors which can use this information to tailor their own platform features and avoid these same costs.

Courts in this district have sealed similar information, finding that internal research methodologies are sufficiently sensitive to satisfy the compelling reasons standard, *e.g.*, *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1111 (N.D. Cal. 2025), and that "research and data on customers and employees . . . could be used by those seeking to replicate business practices and circumvent the time and resources necessary in developing their own practices and strategies," *Hyam v. CVS Health Corp.*, 2023 WL 2960009, at *2 (N.D. Cal. Mar. 15, 2023) (cleaned up). *Apple Inc. v. Samsung Electronics Co.*, 727 F.3d 1214 (Fed. Cir. 2013) is instructive. In *Apple*, the Federal Circuit reversed the denial of Apple's motion to seal "market research documents" detailing customer habits, buying preferences, and demographics because public disclosure would competitively harm Apple. *Id.* at 1228. That court held, Apple had a "competitive advantage by being the first company to introduce products with new features," and disclosure of its research would give "Apple's competitors a head-start" identifying Apple's future releases and market strategies that "could provide them with an enormous benefit—to Apple's detriment." *Id.* As in *Apple*, the release of Meta's competitively sensitive information

here would permit competitors to anticipate Meta's plans to improve its features and services, draw its users, and potentially weaken its competitive standing.

*Granular data and internal benchmarks.*  Meta seeks to redact narrow information in the Saba Report, Saba Rebuttal, and the Venkataraman Report which reveal competitively sensitive internal benchmarks and granular data.

*First*, granular usage and revenue information from 2023 through 2026 should be sealed to prevent competitors from replicating certain features of Meta's platforms.  These data points are not publicly disclosed and unnecessarily advantage competitors against Meta platforms. Eulenstein Decl. ¶ 4-5.  This Court has previously allowed redactions for similar information from within the same time period.  *See, e.g.,* ECF 2729-7 (February 9, 2026 Declaration of Max Eulenstein describing similar information) ¶¶ 4-6; ECF 2748 at 3 (granting sealing requests in ECF 2729); *see also* Jan. 26, 2026 CMC Tr. 235:2-8 (providing general guidance that "operational or other metrics" could be sealed if within the last three years).

Absent redaction, this granular usage and revenue data will be readily available to Meta's competitors, who will have every incentive to exploit it—whether to gain leverage in negotiations or otherwise secure a competitive advantage.  For example, the Saba Rebuttal discloses the ratio of teen monetization to overall revenue impact for this user demographic, *see* Saba Rebuttal ¶ 137 n.205 —figures that, when cross-referenced with publicly available data, may allow a competitor to reverse-engineer total teen-generated revenue on Meta's services.  Eulenstein Decl. ¶ 5-6.  That intelligence is of acute commercial value in commercial and business negotiations, and its disclosure cannot be justified when the unredacted text of the footnote already serves the public interest by confirming that revenue would be "lower" and analyzing the underlying metrics of this profit dynamic.  And as Mr. Eulenstein attests, releasing this information would give competitors a roadmap to replicate Meta's features on their own platforms in order to divert Meta's users.  Eulenstein Decl. ¶ 6; *Kamakana*, 447 F.3d 1172, 1179 (sealing information when "court files might have become a vehicle for improper purposes").

*Second*, internal benchmarks and metrics, such as those revealed Venkataraman Rebuttal, should be sealed because disclosure would give Meta's competitors a roadmap "to develop

products and business strategies they otherwise would not be able to develop," "predict Meta's future development strategies," and "undercut the features of Meta's services that set it apart." Eulenstein Decl. ¶¶ 6-8; *see also Synchronoss Techs., Inc. v. Dropbox, Inc.*, 2017 WL 11527607, at *2 (N.D. Cal. Dec. 27, 2017) (sealing information about "the architecture of [a company's] technology" that could give competitors "an unfair economic competitive advantage").

Certain information contained in the Venkataraman Rebuttal collectively demonstrate follower distribution in the context of top performing accounts. *See* Venkataraman Rebuttal, ¶ 66. This information provides a valuable outline and marketing plan for the age demographic distribution of a top-performing creator. This information is incredibly valuable to competitors. It details how Meta leverages valuable information from its platforms' users to inform product development, which would allow competitors to replicate Meta's methods to improve their own products. Meta's competitors "can use this information to develop products and business strategies they otherwise would not be able to develop and to enhance their own platform offerings to compete with Meta's services and to attract Meta's users." Eulenstein Decl. ¶ 6; *see Doe v. Meta Platforms, Inc.*, 2022 WL 17970394, at *2–3 (N.D. Cal. Dec. 21, 2022) (sealing information on the amount of data Meta receives, its techniques for detecting and filtering sensitive information, and the design of its filtration system because of potential competitive harm). Accordingly, Meta's requested sealing should be granted.

## IV.    CONCLUSION

Because the compelling interests identified above outweigh the public's interest in access to the limited information proposed to be sealed, Meta respectfully requests that the Court grant Meta's Motion and enter the accompanying Proposed Order.

5

META'S AMENDED OMNIBUS MOT. TO SEAL (META'S AND STATE AGS' RULE 702 MOTS).
Case Nos. 4:22-MD-03047-YGR-PHK, 4:23-CV-05448-YGR

Dated: June 25, 2026

Respectfully submitted,

DAVIS POLK & WARDWELL LLP

*/s/ Antonio J. Perez-Marques*

James P. Rouhandeh, *pro hac vice*
Antonio J. Perez-Marques, *pro hac vice*
Caroline Stern, *pro hac vice*
Kathryn S. Benedict, *pro hac vice*
Corey M. Meyer, *pro hac vice*
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
rouhandeh@davispolk.com
antonio.perez@davispolk.com
caroline.stern@davispolk.com
kathryn.benedict@davispolk.com
corey.meyer@davispolk.com

COVINGTON & BURLING LLP

Ashley M. Simonsen, SBN 275203
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-2749
asimonsen@cov.com

Paul W. Schmidt, *pro hac vice*
Phyllis A. Jones, *pro hac vice*
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
pschmidt@cov.com
pajones@cov.com

*Attorneys for Defendants Meta Platforms, Inc.
and Instagram, LLC*