# Proposed Jury Instructions and Special Verdict Forms

The Parties hereby submit these Joint Proposed Jury Instructions and Special Verdict Form pursuant to Paragraph 3(g) of the Court's Standing Order Re: Pretrial Instructions in Civil Cases (last updated March 17, 2025).

| No. | Description | Whether Parties Stipulate or Object |
|---|---|---|
| General Instructions | | |
| | | |
| First Claim: Violation of the Children's Online Privacy Protection Act | | |
| 1-P (p. 8) | Count I | Competing Instruction |
| 1-D (p. 14) | | *See* 1-D. |
| Second Claim: Alleged Violation of California Business and Professions Code Section 17500 (California's False Advertising Law) | | |
| 2-P (p. 22) | Count III | Competing Instruction |
| 2-D (p. 24) | | *See* 2-D. |
| Third Claim: Alleged Violation of California Business and Professions Code Section 17200 (California's Unfair Competition Law) | | |
| 2.1-P (p. 33) | Count IV | Competing Instruction |
| 2.1-D (p. 35) | | *See* 2.1-D. |
| Fourth Claim: Alleged Violation of the Colorado Consumer Protection Act (Deceptive Acts or Practices) | | |
| 3-P (p. 42) | Counts V and VI | Competing Instruction |
| | | *See* 2-D. |
| Fifth Claim: Alleged Violation of the Colorado Consumer Protection Act (Failure to Disclose) | | |
| 3.1-P (p. 45) | Count VII | Competing Instruction |
| | | *See* 2-D. |
| Sixth Claim: Alleged Violation of the Colorado Consumer Protection Act (Unfair Acts or Practices) | | |
| 3.2-P (p. 48) | Count VIII | Competing Instruction |
| | | *See* 2.1-D. |
| Seventh Claim: Alleged Violation of Kentucky Consumer Protection Act, Ky. Rev. Stat. Chapter § 367 et seq. | | |
| 4-P (p. 51) | Count XXII | Competing Instruction |
| | | *See* 2-D & 2.1-D. |
| Eighth Claim: Alleged Violation of the New Jersey Consumer Fraud Act (Commercial Practices in Violation of the Act) | | |
| 5-P (p. 55) | Count XXXIII | Competing Instruction |
| | | *See* 2-D & 2.1-D. |
| Civil Penalty Instruction | | |
| | | |
| AG Proposed Penalty Instruction (p. 61) | | Competing Instruction |
| | | *See* 2-D & 2.1-D. |
| Special Verdict Forms | | |
| AG Proposed Special Verdict Form (p. 70) | | Meta's Proposed Special Verdict Form (p. 80) |

2

Members of the Jury, now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The plaintiffs in this case are 29 States, referred to as the State Attorneys General or the AGs. This trial concerns two types of claims against Meta, which operates the Facebook and Instagram platforms. First, 29 States claim Meta violated a federal privacy law called the Children's Online Privacy Protection Act ("COPPA") by improperly collecting personal information from children under 13 without parental consent. Second, four of the States-California, Colorado, Kentucky, and New Jersey-claim that Meta made deceptive statements about its platforms that were likely to mislead consumers, and that Meta's actions related to features of Meta's platforms constitute unfair or unconscionable trade practices. In response, Meta maintains it satisfied the COPPA law's requirements; denies that the statements the AGs are suing over are deceptive or were likely to mislead any consumers; and denies that its actions related to features challenged by the AGs are unfair or unconscionable trade practices.

The State AGs have the burden of proving these claims.

Meta denies those claims and also contends [*Meta's* affirmative defenses]. Meta has the burden of proof on these affirmative defenses.

The State AGs deny Meta's affirmative defenses.[1]

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

---

[1] Although Meta maintains several affirmative defenses, it believes that the Court, rather than the advisory jury, should decide their applicability.  Because Meta does not intend to seek a factual finding from the advisory jury on affirmative defenses, it believes this language is unnecessary.

3

You should base your decision on all of the evidence, regardless of which party presented it.

You should decide the case as to each plaintiff separately. Unless otherwise stated, the instructions apply to all parties.

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

The evidence you are to consider in deciding what the facts are consists of:

(1)    the sworn testimony of any witness;
(2)    the exhibits that are admitted into evidence;
(3)    any facts to which the lawyers have agreed; and
(4)    any facts that I have instructed you to accept as proved.

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)    Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)    Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)    Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, some evidence was received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

(4)    Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

4

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

There are rules of evidence that control what can be received into evidence. When a lawyer asked a question or offered an exhibit into evidence and a lawyer on the other side thought that it was not permitted by the rules of evidence, that lawyer may have objected.

If I overruled the objection, the question could be answered, or the exhibit received. If I sustained the objection, the question could not be answered, and the exhibit was not received. If I sustained an objection to a question during trial, you must ignore the question and must not guess what the answer might have been.

I may have ordered that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)     the opportunity and ability of the witness to see or hear or know the things testified to;

(2)     the witness's memory;

(3)     the witness's manner while testifying;

(4)     the witness's interest in the outcome of the case, if any;

(5)     the witness's bias or prejudice, if any;

(6)     whether other evidence contradicted the witness's testimony;

(7)     the reasonableness of the witness's testimony in light of all the evidence; and

(8)     any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same

event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

The court has decided to accept as proved the fact that [*state fact*].You must accept this fact as true.

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

Evidence was presented to you in the form of admissions to the truth of certain facts. These admissions were given in writing before the trial, in response to requests that were submitted under established court procedures. You must treat these facts as having been proved.

You have heard testimony from witnesses who testified about their opinions and the reasons for those opinions. This opinion testimony is allowed, because of the specialized knowledge, skill, experience, training, or education of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness' specialized knowledge, skill, experience, training, or education, the reasons given for the opinion or opinions, and all the other evidence in the case.

Certain charts and summaries not admitted into evidence have been shown to you to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

6

Certain charts and summaries have been admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

The Court will now explain the substantive law applicable to the Claims brought in this action.

7

**First Claim: Violation of the Children's Online Privacy Protection Act**
Instruction 1-P

The State Attorneys General allege that Meta violated the Children's Online Privacy Protection Act, which is known as COPPA. Facebook and Instagram are "websites or online services."[2] Meta has been the operator of Facebook at all times relevant to this case.[3] Meta has also been the operator of Instagram since at least August 2012.[4] For the State Attorneys General to prevail on their claim under COPPA, the State Attorneys General must prove the following elements by a preponderance of the evidence:

1. Meta's website or online service, or a portion thereof, was
   a. directed to children; or
   b. Meta had actual knowledge that it was collecting or maintaining personal information from a child; and
2. Meta collected, used, maintained, or disclosed personal information from a child without providing all of the protections required by COPPA.[5]

In this case, the Court has determined that the State Attorneys General have proven that Meta collects personal information as defined by COPPA from all its users, including any child users, and did not provide the protections required by COPPA.[6] The Court found that Meta has never provided the following protections required by COPPA:

i)     provide notice to parents of what information it collects from children;
ii)    seek or obtain parental consent to the collection, use, or disclosure of such information; or
iii)   provide parents with a means of reviewing the personal data collected, requesting deletion of the data, or refusing further data collection.[7]

This means that where the State Attorneys General prove the first element above, they have also proved the second element.

Accordingly, you only need to determine whether the State Attorneys General have proven the first element by a preponderance of the evidence: that Facebook and/or Instagram, or portions of Facebook and/or Instagram, were directed to children, or that Meta had actual knowledge that it was collecting or maintaining personal information from children on Facebook and/or Instagram.

---

[2] ECF 236 (2628).

[3] *Id.*

[4] ECF 360 (3108) at ¶ 4(b).

[5] *See* 15 U.S.C. § 6502(a)(1); 16 C.F.R. §§ 312.3, 312.10.

[6] ECF 440 (3214) at 29, 37-38.

[7] *See* 16 CFR §§ 312.4- 312.6.

8

If you determine that Facebook and/or Instagram or portions of Facebook and/or Instagram were directed to children, or that Meta had actual knowledge that it was collecting or maintaining personal information from children, you have determined that the State Attorneys General should prevail on the First Claim: Violations of the Children's Online Privacy Protection Act.

**Definitions**

*Child*

"Child" in this context means an individual under the age of 13. "Children" means people under the age of 13.

*Directed to Children*

"Directed to children" means the website or online service was targeted to children. A website or online service as a whole can be directed to children, or portions of the website or online service can be directed to children. A website or online service can be directed to children even if it does not target children as its primary audience.

To determine whether a website or online service, or a portion of a website or online service, is directed to children, you should look to the totality of the circumstances, including,[8] but not limited to, its:
- subject matter;
- visual content;
- use of animated characters or child-oriented activities or incentives;
- music or other audio content;
- age of models;
- presence of child celebrities or celebrities who appeal to children;
- language or other characteristics of the website or online service;
- whether advertising promoting or appearing on the website or online service is directed to children;
- audience composition; and
- intended audience.[9]

---

[8] *See, e.g.,* Children's Online Privacy Protection Rule, 90 Fed. Reg. 16918, 16937 (April 22, 2025) ("[T]he Commission reiterates that the inquiry in determining child-directness requires consideration of the totality of circumstances."); Children's Online Privacy Protection Rule, 78 Fed. Reg. 3972, 3984 (Jan. 17, 2024) (describing "the Rule's totality of the circumstances standard" and the 2013 amendments "[t]o make clear that [the FTC] will look to the totality of the circumstances to determine whether a site or service is directed to children…").  The State AGs note that the COPPA Rule merely identifies a list of factors that the FTC considers when assessing whether websites or online services are directed to children. *See* 16 C.F.R § 312.2.

[9] 16 CFR § 312.2.

9

Third-party content hosted by a website or online service can be considered when determining whether the website or online service, or a portion thereof, is directed to children under COPPA.[10]

If a website or online service is directed to children but does not target children as its primary audience, then it may not collect personal information from visitors unless it first collects age information from visitors in a neutral manner that does not default to a set age of 13 or older or encourage visitors to falsify age information. If the website or online service collects age information in such a neutral manner for all users prior to collecting personal information, it shall not be deemed directed to children, but it must still comply with COPPA's required protections with regard to those visitors who identify themselves as under 13 years old, as well as any other visitors for whom the operator has actual knowledge are under 13 years old.[11]

**Actual Knowledge**

"Actual knowledge" in this context means that an operator of a website or online service was aware, understood, or perceived that it was collecting or maintaining personal information from a child.[12] Actual knowledge can be inferred based on the surrounding circumstances.[13] Actual knowledge may also be proved by showing that an operator acted with willful blindness.[14] Actual knowledge does not require that an operator have absolute certainty that it collected or maintained personal information from a child.[15]

---

[10] *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 878 (N.D. Cal. 2024), appeal dismissed sub nom. Fla. Off. of Att'y Gen. v. Meta Platforms, Inc., No. 24-7019, 2024 WL 5443167 (9th Cir. Dec. 16, 2024), and motion to certify appeal denied, No. 4:22-MD-3047-YGR, 2025 WL 1182578 (N.D. Cal. Mar. 11, 2025).

[11] 16 CFR § 312.2 (definition of "Mixed audience website or online service"); Children's Online Privacy Protection Rule, 90 Fed. Reg. 16918, 16919-20 (Apr. 22, 2025); *Complying with COPPA: Frequently Asked Questions*, FEDERAL TRADE COMMISSION, https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions (last visited Sept. 2, 2025).

[12] *U.S. ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 751 (2023) (describing "actual knowledge" as involving an awareness of something, and approvingly quoting Black's Law Dictionary definitions "'to understand,' or 'the perception of the truth'").

[13] ECF 440 (3214) at 29; *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178, 187-88 (2022); *Intel Corp. Inv. Policy Comm. v. Sulyma*, 589 U.S. 178, 189 (2020).

[14] ECF 440 (3214) at 29; Children's Online Privacy Protection Rule, 89 Fed. Reg. 2034, 2037 n.46 (proposed Jan. 11, 2024); *Unicolors*, 595 U.S. at 187; *Intel Corp.*, 589 U.S. at 190.

[15] *See U.S. ex rel. Schutte v. SuperValu, Inc.*, 598 U.S. 739, 751 (2023) ("'A defendant can have 'actual knowledge' that a condition is material without the Government expressly calling it a condition of payment.'") (quoting *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 191 (2016)); *Swanger v. Warrior Run School Dist.*, 346 F.Supp.3d 689, 705 (M.D. Penn.

10

### *Willful blindness*

"Willful blindness" means taking deliberate action to avoid learning a fact.[16] An operator of a website or online service acts with willful blindness when it intentionally shields itself from clear or obvious evidence, or avoids confirming a fact despite being aware of a high probability that the fact exists.[17]

If an operator acted with willful blindness, you may treat it as having actual knowledge of the fact.[18]

Whether an operator of a website or service has actual knowledge that it collected or maintained personal information of a child is fact specific and can vary based on the case.[19] Some examples of facts that would show that an operator has actual knowledge include, but are not limited to, the following:

---

2018) ("actual knowledge does not require absolute certainty that harassment has occurred"); *Rockwell Intern. Corp. v. SDL, Inc.*, 103 F.Supp.2d 1192, 1197 (N.D. Cal. 2000) (explaining that showing actual knowledge of infringement requires "more than a mere suspicion but less than absolute assurance"); *In re Robbins*, 91 B.R. 879, 886 (W.D. Mo. 1988) (actual knowledge "is not necessarily absolute certainty"); *U.S. v. Jewell*, 532 F.2d 697, 706 n.6 (9th Cir. 1976) (Kennedy, J., dissenting) ("The use of the term 'actual knowledge' in this manner is misleading in suggesting the possibility of achieving a state of total certainty, and that only such knowledge is 'actual.' In fact, we commonly act on less than complete information and in this world may never know one-hundred-percent certainty.").

[16] ECF 440 (3214) at 29; *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011).

[17] *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) ("courts applying the doctrine of willful blindness hold that defendants cannot escape the reach of these statutes by deliberately shielding themselves from clear evidence of critical facts that are strongly suggested by the circumstances."); *id.* ("persons who know enough to blind themselves to direct proof of critical facts in effect have actual knowledge of those facts") (citing *United States v. Jewell*, 532 F.2d 697, 700 (9th Cir. 1976) (en banc)); *id.* at 769 ("all [Circuit courts] appear to agree on two basic requirements: (1) The defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact.").

[18] ECF 440 (3214) at 29; *Unicolors*, 595 U.S. at 187 ("We have recognized in civil cases that willful blindness may support a finding of actual knowledge."); *Intel*, 589 U.S. at 190 ("evidence of 'willful blindness' supports a finding of 'actual knowledge'"); *Glob.-Tech*, 563 U.S. at 766 ("persons who know enough to blind themselves to direct proof of critical facts in effect have actual knowledge of those facts"); *see* Children's Online Privacy Protection Rule, 89 Fed. Reg. 2034, 2037 n.46 (proposed Jan. 11, 2024) (citing *Glob.-Tech Appliances*' discussion of "willful blindness" for proposition that "[t]he concept of actual knowledge includes willful disregard").

[19] Children's Online Privacy Protection Rule, 78 Fed. Reg. 3972, 3978 (Jan. 17, 2013).

11

- Where an operator of a website or service learns of a child's age or grade from a concerned parent.[20]
- Where a child user enters age information indicating they are under 13.[21]
- Where a child announces their age in a post on a website or online service and the operator of that website or service monitors user posts.[22]
- Where a child announces their age in a post on a website or online service and a responsible member of the operator's organization sees the post or the operator is made aware of the post by someone else.[23]
- Where an operator is willfully blind to the fact that a child is under the age of 13.[24]

***Protections Required by COPPA***

In addition to the protections this Court has already found Meta did not provide, COPPA requires additional protections for any operator of a website or online service that is directed to children or has actual knowledge that it is collecting or maintaining the personal information of a child. These additional protections are:

- Not condition a child's participation in a game, the offering of a prize, or another activity on the child disclosing more personal information than is reasonably necessary to participate in such activity.[25]
- Establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of personal information collected from children.[26]
- Not retain personal information collected from children longer than is reasonably necessary to fulfill the purpose for which the information was collected.[27]

---

[20] Children's Online Privacy Protection Rule, 64 Fed. Reg. 59888, 59892 (Nov. 3, 1999); *Complying with COPPA: Frequently Asked Questions*, FEDERAL TRADE COMMISSION, https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions (last visited Sept. 2, 2025), at H.1.

[21] *Complying with COPPA: Frequently Asked Questions*, FEDERAL TRADE COMMISSION, https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions (last visited Sept. 2, 2025), at H.3.

[22] *Id.*, at H.6.

[23] *Id.*

[24] Children's Online Privacy Protection Rule, 89 Fed. Reg. 2034, 2037 n.46 (proposed Jan. 11, 2024).

[25] 16 C.F.R. §§312.3(d), 312.7.

[26] 16 C.F.R. §§312.3(e), 312.8.

[27] 16 C.F.R. § 312.10.

12

If you find that Meta operated a website or online service that was directed to children or that Meta had actual knowledge that it was collecting or maintaining the personal information of any children, then Meta was required to collect, use, maintain, and disclose the personal information of those children in a way that was consistent with these protections. Any failure to do so was a violation of COPPA.

***Personal Information***

"Personal information" means individually identifiable information about an individual collected online, including:

- first and last names;
- a home or other physical address, including street name and name of a city or town;
- online contact information, such as an email address or other similar identifier that permits direct contact with a person online;
- a screen name or username that functions in the same manner as online contact information;
- a telephone number;
- a persistent identifier that can be used to recognize a user over time and across different websites or online services, including identifiers in cookies, an IP address, a processor or device serial number, or a unique device identifier;
- a photograph, video, or audio file where such file contains a child's image or voice;
- geolocation information sufficient to identify street name and name of a city or town; and
- information concerning the child or the parents of that child that the operator collects online from the child and combines with an identifier described in this definition.[28]

---

[28] 16 C.F.R. § 312.2.

13

Instruction 1-D

The States allege that Meta violated the Children's Online Privacy Protection Act, which is known as COPPA, through its operation of Facebook and Instagram.  When I refer below to "Meta" in these instructions, that will refer to both Facebook and Instagram.

You will be asked to decide whether the States have proven either of these questions by a preponderance of the evidence:

1. Whether Meta's online service, or a portion thereof, was directed to individuals under the age of 13.[29]

2. Whether Meta had actual knowledge that it was collecting or maintaining personal information from specific individuals under the age of 13.[30]

In answering these questions, you should not consider any conduct occurring before October 24, 2019.[31]

I will now explain the meaning of these terms in more detail for you.

***Whether Meta's Services Were Directed to Children***
Whether an online service is "directed to children" depends on whether it targets individuals under 13.[32]

To determine whether an online service is "directed to children," you must consider whether the website or online service is (1) a "general audience" service, (2) a "mixed audience" service, or (3) a service whose "primary audience" is individuals under 13.

---

[29] 15 U.S.C. § 6501(10) (defining "website or online service that is directed to children"); *see also id.* § 6501(1) (defining "child").

[30] 15 U.S.C. § 6502(a)(1) ("It is unlawful for . . . any operator that has actual knowledge that it is collecting personal information from a child, to collect personal information from a child in a manner that violates the regulations prescribed under subsection (b).").

[31] Computed pursuant to 28 U.S.C. § 1658, providing for a four-year statute of limitations running from October 24, 2023, the filing date of the original complaint.  The *nullum tempus occurrit regi* doctrine "does not—and, under the Supremacy Clause, could not—insulate the State from statutes of limitations applicable to federal laws."  *Alaska v. Express Scripts, Inc.*, 774 F. Supp. 3d 1150, 1162 (D. Alaska 2025); *see also United States v. California*, 297 U.S. 175, 186 (1936) (the "canon of construction that a sovereign is presumptively not intended to be bound by its own statute unless named in it" does not extend to states evading "provisions of an act of Congress").

[32] 15 U.S.C. § 6501(10) (defining "website or online service that is directed to children").

14

- (1) A "general audience" service is a website or online service that does not specifically target individuals under 13.  A "general audience" service is **not** considered "directed to children."

- (2) A "mixed audience" service is an online service that does not target individuals under 13 as its primary audience, provided that it does not collect personal information before verifying the age of its users.[33]  A "mixed audience" service is **not** considered directed to children with regard to any visitor not identified as under 13.[34]

- (3) An online service that is targeted to individuals under 13 as its primary audience is considered "directed to children."[35]  If a portion of a website or online service is targeted to individuals under 13 as its primary audience, that portion is considered "directed to children."  You cannot decide that a **portion** of an online service is targeted to individuals under age 13 unless you find that there is a **distinct** children's portion or area of the service.[36]

In evaluating whether a service (or portion thereof) targets individuals under 13, you should consider all factors relevant to whether or not the service is targeted to under 13 users, including its:

- subject matter,
- visual content,
- use of animated characters or child-oriented activities or incentives,
- music or other audio content,
- age of models,
- presence of celebrities under 13 or celebrities who appeal to individuals under 13,
- language or other characteristics of the website or online service,
- language or other characteristics of advertising promoting or appearing on the website or online service, and
- competent and reliable empirical evidence regarding audience composition and intended audience.[37]

---

[33] 16 C.F.R. § 312.2 (defining "[m]ixed audience website or online service").

[34] *Id.* ("A mixed audience website or online service shall not be deemed directed to children with regard to any visitor not identified as under 13.").

[35] *Id.* (defining "website or online service that is directed to children"); *see also* 15 U.S.C. § 6501(10) (defining "website or online service that is directed to children").

[36] Children's Online Privacy Protection Rule, 64 Fed. Reg. 59888, 59893 (Nov. 3, 1999) ("[I]f a general audience site has a distinct children's 'portion' or 'area,' then the operator would be required to provide the protections of the Rule for visitors to that portion of the site.").

[37] 16 C.F.R. § 312.2 (listing the factors the Commission will consider in determining child directedness).

15

***Whether Meta Had Actual Knowledge It Was Collecting or Maintaining Personal Information From Individuals Under 13***

In determining whether Meta had "actual knowledge" it was collecting or maintaining personal information from individuals under age 13, you must consider whether it had such knowledge with respect to specific individuals. You cannot find that Meta had "actual knowledge" it was collecting or maintaining personal information from specific individuals under 13 unless you find that it had direct, clear knowledge it was doing so.[38] Evidence that Meta believes or suspects that, as a general matter, there are individuals under the age of 13 who use its services is not sufficient to establish that Meta had actual knowledge that it was collecting or maintaining personal information from specific individuals.[39]

An operator of a website or online service that screens its users for their age may rely on the age information entered by its users, even if that age information is not accurate.

You may also find that Meta had actual knowledge it was collecting or maintaining personal information from specific individuals under 13 if you find that it acted with willful blindness.[40] This finding of willful blindness requires a showing that (1) Meta believed there was a high probability that a specific individual was under 13 and (2) Meta took deliberate actions to avoid learning the age of the individual.[41] Evidence that Meta acted with a lack of due care or recklessly disregarded a substantial and unreasonable risk that a specific individual was under 13 years old is insufficient to establish that Meta was willfully blind with respect to that individual's age.[42]

---

[38] *New Mexico ex rel. Balderas v. Tiny Lab Prods.*, 457 F. Supp. 3d 1103, 1113 (D.N.M. 2020), *on reconsideration*, 516 F. Supp. 3d 1293 (D.N.M. 2021) ("Further, the definition of 'actual knowledge,' which is 'direct and clear knowledge,' specifically distinguishes it from 'constructive knowledge,' which is 'knowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person.'" (cleaned up)); *U.S. ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 751 (2023) ("[T]he term 'actual knowledge' refers to whether a person is 'aware of' information." (citing *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 184 (2020))).

[39] *See Balderas*, 457 F. Supp. 3d at 1112–13; *Malhotra v. Steinberg*, 770 F.3d 853, 860 (9th Cir. 2014) (reasoning that "generalized suspicion" does not constitute "knowledge").

[40] Meta maintains its position that COPPA's "actual knowledge" standard does not encompass "willful blindness" or "willful disregard."

[41] *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011); *see also* Docket No. 440 (3214) at 29 (holding that "willful blindness . . . requires taking deliberate action to avoid learning a fact").

[42] *Global-Tech Appliances, Inc.*, 563 U.S. at 769; *see also United States v. Heredia*, 483 F.3d 913, 917 (9th Cir. 2007); *United States v. One 1973 Rolls Royce*, 43 F.3d 794, 809 n.13 (3d Cir. 1994).

16

*The Meaning of Personal Information*

The standards I have described above involve the collection of personal information.  The term "personal information" means individually identifiable information about an individual that was collected online, including:

- first and last names;
- a home or other physical address including street name and name of a city or town;
- an email address;
- a telephone number;
- a Social Security number.[43]

Information is not protected "personal information" for purposes of these instructions if the website or service collects that information to:
- Maintain or analyze the functioning of the website or online service; or
- Protect the security or integrity of the user, website, or online service.

If an operator of a website or online service obtains actual knowledge that it is collecting or maintaining personal information from an individual who is under age 13, the operator cannot collect any further personal information from that individual unless it complies with the notice provisions of COPPA.[44]

If an operator of a website or online service collects personal information from an individual without actual knowledge that the individual was under the age of 13, and later obtains actual knowledge that the individual was under the age of 13, the operator must delete such personal information using reasonable measures to protect against unauthorized access to, or use of, the information in connection with its deletion.[45]

---

[43] 15 U.S.C. § 6501(8) (defining "personal information").

[44] 16 C.F.R. § 312.3.

[45] 16 C.F.R. § 312.10.

17

**AGs' Objection to Instruction 1-D (COPPA)**

Meta's proposed COPPA jury instructions should be rejected. They are inconsistent with those Meta proposed in October, COPPA's statutory and regulatory text, and the Court's prior orders. Meta's newest proposal narrows COPPA at each point: the conduct the jury must consider, what qualifies as child-directed, when age screening matters, what proves actual knowledge, what information is protected, and the relevant time period. The Court should adopt the AGs' proposal, which tracks what the parties previously agreed to, the COPPA Rule, and this Court's prior rulings.

First. Meta omits "maintaining personal information from a child," 16 C.F.R. § 312.3, as a basis for liability. That omission contradicts the COPPA Rule and this Court's order. *See* ECF 440 (3214) at 35 (quoting 16 C.F.R. § 312.3); *id*. at 36 ("collection, use, or disclosure") (quoting 15 U.S.C. § 6502(b)(1)(A)(ii)). The instruction must include "maintaining" and should not limit the jury's consideration to only initial collection of a child's personal information.

Second. Meta misstates the law governing so-called "mixed-audience" services. It removes the Rule's requirement that age collection "must be done in a neutral manner that does not default to a set age or encourage visitors to falsify age information," 16 C.F.R. § 312.2, instead suggesting that any means of "verifying the age of its users" is sufficient.

Third. Meta invents a "distinct children's portion or area" requirement, which this Court has already rejected. COPPA covers "that portion of a . . . service that is targeted to children." 15 U.S.C. § 6501(10)(A)(ii). As this Court held, it does not require a formally segregated children's area. *See* ECF 123 (1214) at 21 n.17; *cf.* ECF 440 (3214) at 27 (targeted "in part" looks to totality of circumstances). The instruction should apply that standard, not add extra-textual requirements.

Fourth. Meta overstates the actual knowledge standard. Meta would require that the jury find "direct, clear knowledge" that it was collecting personal information from "specific individuals" under 13. That is not the law. Actual knowledge may be proven by circumstantial evidence, and this Court has already said so. ECF 440 (3214) at 29 (quoting *Intel Corp. v. Sulyma*, 589 U.S. 178, 185, 189 (2020)). The instruction should not impose a heightened "direct, clear" formulation that risks confusing the preponderance standard.

18

Fifth. Meta's age-screen instruction, for which it provides no authority, is dangerously overbroad. Meta instructs that a service that screens for age "may rely" on user-entered age "even if that age information is not accurate." Meta treats age screening as a categorical safe harbor. It is not, which this Court has recognized. *See* ECF 440 (3214) at 35-36 (operator can be liable if learns of child's age after data collection, or is willfully blind) (citations omitted). FTC guidance confirms this.[46] The instruction must not suggest that age-screening creates an irrebuttable safe harbor.

Sixth. Meta's definition of personal information is materially incomplete. It lists only five categories, and only from the statute. Meta's arguments for such a limitation fail for the reasons stated in the State AGs' summary judgment reply. ECF 285-1 (2899-1) at 12–14. All categories enumerated in the Rule must be included, as Meta previously agreed in its October proposal. ECF 2313-1 at 15. Meta's new proposal even omits categories in the statute, such as "information concerning the child. . . combine[d] with an identifier. . .," 15 USC § 6501(8)(G). In a social-media case, those omitted categories are central. The instruction should use the Rule's full definition.

Seventh. Meta improperly transforms a limited exception to parental consent for *persistent identifiers* collected to "maintain or analyze" the service's functioning that does not apply here into a broad safe harbor for collection of *any* personal information. *See* 16 C.F.R. §§ 312.5(c)(7), 312.2 ("Support for the internal operations of the Web site" definition). The Court has already held that Meta collects personal information, including email addresses and phone numbers (which are not "persistent identifiers"), from all users, ECF 440 (3214) at 29, so the exception cannot apply.

Eighth. Meta improperly asks the jury to disregard conduct before October 24, 2019. The Court already rejected Meta's attempt to impose a four-year statute of limitations on the AGs' COPPA claims. ECF 440 (3214) at 24. Meta's two new authorities do not change that result. Neither involved a State acting to vindicate public rights in a public-enforcement action, as the State AGs do here, or even the relevant statute. The instruction should include no date restriction.

---

[46] *Complying with COPPA: Frequently Asked Questions*, FTC, https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions at A.12; *see also id.* at D.4 ("for the most part, a[n] . . . online service directed to children may not screen users for age").

19

**Meta's Objections to Instruction 1-P (COPPA)**

Meta submits that the advisory jury should not address COPPA, given the complex issues of statutory construction and mixed questions of law and fact that claim involves.  In addition, Meta has the following principal objections to the States' proposed COPPA instruction:

*COPPA Rulings.*  The States' proposed instruction discusses (at 8) what "the Court has determined" on summary judgment.  These points are unnecessary for the advisory jury and they are unfairly prejudicial, by suggesting the Court has already found statutory violations.

*Child Directedness.*  The States' proposed instruction (at 9) that "[a] website or online service can be directed to children even if it does not target children as its primary audience" is contrary to the regulations, which state that a service that "does not target children as its primary audience" "shall not be deemed directed to children with regard to any visitor not identified as under 13," provided it does not collect personal information before collecting age information.  16 C.F.R. § 312.2.  Further, the States' instruction does not define the term "portion" of a website or online service that can be directed to children, whereas Meta's proposed instruction does (at 15).  Without an explanation of "portion," the jury would be left to guess what that term means.

*Actual Knowledge.*  Meta maintains its position that the statutory requirement of "actual knowledge" does not encompass "willful blindness."  The statute does not refer to "willful blindness," instead requiring "direct and clear awareness."  *New Mexico ex rel. Balderas v. Tiny Lab Prods.*, 457 F. Supp. 3d 1103, 1113 (D.N.M. 2020), *on reconsideration*, 516 F. Supp. 3d 1293 (D.N.M. 2021).  Moreover, while Congress initially considered a standard of "actual, implied, or constructive knowledge,"[47] the statute as enacted rejected that formulation.

---

[47] *See* 89 Fed. Reg. 2034, 2037 (summarizing legislative history).

20

None of the States' cited cases construes a statute involving this legislative history. *See, e.g., Glob. Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011) (patent infringement); *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178 (2022) (Copyright Act); *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 189 (2020) (ERISA). That case law does not apply to COPPA, given that Congress specifically rejected a broader knowledge standard. The States also rely (at 10) on an FTC Notice of Proposed Rulemaking to support their "willful blindness" standard, but "proposed regulations have no legal effect," much less agency commentary on such proposals. *Ctr. for Food Safety v. Vilsack*, 718 F.3d 829, 843 (9th Cir. 2013).

Finally, if the Court were to instruct on "willful blindness," the States' instruction erroneously suggests the standard is whether an operator "avoids confirming a fact." Willful blindness requires a showing that Meta (1) believed there was a high probability that a specific child was under 13 and (2) took "deliberate actions" to avoid learning the child's age. *Global-Tech Appliances,* 563 U.S. at 769; *see also* ECF 440 (3214) at 29. Meta's proposal provides the correct standard (while reserving its position that COPPA does not encompass willful blindness at all).

The States' proposal (at 11–12) lists "examples of facts that would show that an operator has actual knowledge." This is based on the FTC's FAQs, which this Court has held is not law. *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 877 (N.D. Cal. 2024). Also, the States' instruction (at 11) asserts that these examples "*would show*" actual knowledge," (emphasis added), while the FAQs say only that they "*may*" do so.

**Statute of Limitations.** The AGs' COPPA instruction omits language on the statute of limitations. As Meta has proposed in its instructions, COPPA claims are subject to the limitations period of 28 U.S.C. § 1658. *See Alaska v. Express Scripts, Inc.*, 774 F. Supp. 3d 1150, 1162 (D. Alaska 2025) (*nullum tempus* doctrine "does not—and, under the Supremacy Clause, could not—insulate the State from statutes of limitations applicable to federal laws").

**Second Claim: Alleged Violation of California Business and Professions Code Section 17500 (California's False Advertising Law)**
Instruction 2-P

The People of the State of California allege that Meta violated California's False Advertising Law, which prohibits corporations from making or causing to be made untrue or misleading statements to the public.

For the People of the State of California to prevail on their claim under the False Advertising Law, you must find that the People of the State of California have proven each of the following elements by a preponderance of the evidence:[48]

1. Meta made a statement that was viewable by or available to the public;[49]
2. The statement was made about Meta's services or for purposes of inducing the public to use Meta's services;
3. At the time it was made, the statement was untrue or misleading; and
4. At the time Meta made the statement, it knew or should have known the statement was untrue or misleading.

The People of the State of California do not need to prove any of the following: (1) that any individual relied on Meta's statement; (2) that Meta's statement caused any individual injury or harm; or (3) that Meta intended to deceive the public.[50] Separate disclosures or disclaimers by Meta cannot cure an untrue or misleading statement.[51]

---

[48] *People v. Johnson & Johnson*, 77 Cal.App.5th 295, 317 (Ct. Cal. App. 2022).

[49] Where, as here, violations of the False Advertising Law ("FAL") emanate from California, the California Attorney General has authority to prosecute such violations regardless of whether those statements were directed to residents of California or another state. *See People v. Ashford Univ., LLC*, 100 Cal. App. 5th 485, 522 (Cal. Ct. App. 2024) (upholding trial court's imposition of civil penalties nationwide based on FAL violations that occurred within California and stating that "the Legislature did not signal an intent to limit the Attorney General's authority to prosecute violations of the UCL or FAL to cases involving false or misleading statements directed at California residents.").

[50] *Chern v. Bank of America*, 544 P.2d 1310, 1316 (1976); *People v. Overstock.com, Inc.*, 12 Cal.App.5th 1064, 1079 (Cal. Ct. App. 2017); *People v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 532 (Cal. Ct. App. 2002); *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 332 (Cal. Ct. App. 1998).

[51] *Chern v. Bank of America* 1 544 P.2d 1310, 1316 (Cal. 1976); *Prata v. Superior Court*, 91 Cal. App. 4th 1128, 1145 (Cal. Ct. App. 2001).

22

**Definitions**

*Untrue or Misleading Statement*

A statement is untrue if it is false. A statement is misleading if it is  likely to deceive a reasonable consumer, even if the statement is literally true.[52]

A literally true statement is misleading if it is couched a manner that it is likely to deceive a reasonable consumer, such as by failure to disclose other relevant information.[53]

A representation need not contain an express falsehood, when viewed in isolation, to be false or misleading. You must consider the challenged representation in context. A statement can be false or misleading if, when taken together with other statements, omissions, or surrounding circumstances, it creates an overall impression that is untrue or deceptive. Even if a statement is literally true, it can be false or misleading if it is part of a campaign of misrepresentation. In assessing whether a statement is false or misleading, you should consider whether, when read in context, the statement would likely mislead a reasonable person.[54]

---

[52] *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1063 (N.D. Cal. 2017) ("Under the FAL, the CLRA, and the fraudulent prong of the UCL, conduct is considered deceptive or misleading if the conduct is 'likely to deceive' a 'reasonable consumer.'") (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)); *People v. Johnson & Johnson*, 77 Cal. App. 5th 295, 319 (Cal. Ct. App. 2022) ("The FAL 'substantively overlap's with the fraudulent prong of the UCL and the 'burden under these provisions is the same: To prevail on a claim under the false advertising law, the plaintiff must show that members of the public are likely to be deceived'. . . In assessing the likelihood of deception, the challenged advertisement or practice is typically viewed 'through the eyes of the 'reasonable consumer'—that is, the 'ordinary consumer acting reasonably under the circumstances." (citations removed) (cleaned up)); *Nationwide Biweekly Admin., Inc. v. Superior Ct.*, 9 Cal. 5th 279, 318 (Cal. 2020) ("Thus, to state a claim under either the UCL or the false advertising law, based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived." (citations omitted)).

[53] *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 332–33 (1998) ("A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under these sections.").

[54] ECF 3214 at 6-7; *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1471 (2006); *see also People v. Overstock.com*, 12 Cal. App. 5th 1064, 1079 (2017); *Williams v. Gerber Products Co.*, 552 F.3d 934, 939 n.3 (9th Cir. 2008); *In re Toyota Motor Corp. Unintended Acc. Mktg., Sales Pracs., & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1177 (C.D. Cal. 2010);.

23

Instruction 2-D: Alleged Violations of State Consumer Deception Statutes

The States allege that Meta made false or misleading statements in violation of the laws of California, Colorado, Kentucky and New Jersey.

When I refer to "Meta" in these instructions, that will refer to the operations of both Facebook and Instagram.

In connection with each alleged statement, you will be asked to consider the following questions:

1. Whether Meta made a statement of fact;
2. Whether the statement was viewable by or available to the public;
3. Whether the statement was directed at consumers;
4. Whether the statement concerns goods or services of Meta;
5. Whether, at the time it was made, the statement was false or misleading;
6. Whether the statement was material;
7. Whether the statement had a significant impact on the public; and
8. Whether, in making the statement, Meta acted intentionally, or knowingly, or recklessly, or with gross negligence.[55]

I will now explain the meaning of these terms in more detail for you.

***The Meaning of "Statement of Fact"***
A "statement of fact" is a specific and measurable assertion that is capable of being proven true or false. [56]

***The Meaning of "Viewable by or Available to the Public"***
A statement is "viewable by or available to the public" if it is made accessible to the general public rather than limited to a private or restricted group.[57]

***The Meaning of "Directed at Consumers"***
A statement is "directed at consumers" if it is made in connection with the advertisement, offering for sale, or distribution of its goods or services.[58]

---

[55] Cal. Bus. & Prof. Code §§ 17200, 17500; Colo. Rev. Stat. § 6-1-105(1)(e), (g); Ky. Rev. Stat. § 367.170; N.J. Stat. Ann. § 56:8-2.

[56] *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 890 (N.D. Cal. 2024) ("To be actionable, a statement must be specific and measurable and capable of being proven true or false." (cleaned up)).

[57] Cal. Bus. & Prof. Code § 17500 (requiring "disseminat[ion] before the public"); N.J. Model Civ. Jury Charges § 4.43(B) (defining "advertisement" as "a notice designed to attract public attention").

[58] Docket No. 440 (3214) at 15 (noting that "Meta will have the opportunity at trial to make their case that statements were not sufficiently directed at consumers or otherwise not made in the

24

***The Meaning of "Concerns Meta's Goods or Services"***
A statement "concerns Meta's goods or services" if it makes a representation about the characteristics, uses, benefits, alterations, quantities, standard, quality, grade, style, or other attributes of Facebook or Instagram.[59]

***The Meaning of "Material"***
A misrepresentation is "material" if a reasonable person would consider it in determining his choice of action.[60]

***The Meaning of "Significant Impact on the Public"***
Factors relevant to whether a statement has a "significant impact on the public" include the number of consumers directly affected by the statement, the relative sophistication and bargaining power of the affected consumers, and evidence that the statement has impacted other consumers or has a significant potential to do so in the future.[61]

---

course of commerce"); Ky. Rev. Stat. § 367.110(2) (requiring statement to be made in "in the conduct of any trade or commerce," defined as "the advertising, offering for sale, or distribution of any services and any property"); N.J. Stat. Ann. § 56:8-2 (requiring statement to be made "in connection with the sale or advertisement of any merchandise or real estate"); Colo. Rev. Stat. § 6-1-105(1)(e), (g) (requiring statement to be made "in the course of [a] person's business").

[59] Colo. Rev. Stat. § 6-1-105(1)(e) ("A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person . . . [e]ither knowingly or recklessly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith."); *id.* § 6-1-105(g) ("A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person . . . [r]epresents that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another."); Ky. Rev. Stat. § 367.110(2) (requiring alleged misrepresentation to involve "trade" or "commerce"); N.J. Model Civ. Jury Charges § 4.43(B) (defining "merchandise" to "include[] any objects, wares, goods, commodities, services or anything offered directly or indirectly to the public for sale"); Cal. Bus. & Prof. Code § 17500 (actionable misrepresentations must concern "dispos[ition] of real or personal property" or the "perform[ance] [of] services").

[60] *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d at 894 n.42 ("A misrepresentation is judged to be 'material' if a reasonable person would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." (cleaned up)).

[61] *Shekarchian v. Maxx Auto Recovery, Inc.*, 487 P.3d 1026, 1034 (Colo. App. 2019).

25

### The Meaning of "False or Misleading"

A statement is "false" if it is actually untrue.[62]  A statement is "misleading" if it is likely to deceive or mislead a reasonable consumer. [63]  This requires a probability that a significant portion of the general consuming public, acting reasonably in the circumstances, could be misled.[64]  In determining whether a statement is "misleading," you should consider the context in which it was made, such as other statements made contemporaneously with it.[65]

Omitted information cannot render an affirmative statement "false" or "misleading" unless the omitted information directly relates to or contradicts the affirmative statement.[66]

### The Meaning of Statements Made with a Particular State of Mind

---

[62] Cal. Bus. & Prof. Code § 17500 (prohibiting statements that are "untrue or misleading"); Colo. Jury Instr. (CJI-Civ.) 29:3 (defining "misrepresentation" or "false representation" to require the statement to be "false"); N.J. Model Civ. Jury Charges § 4.43(B) (defining "misrepresentation" to require "an untrue statement"); *Craig & Bishop, Inc. v. Piles*, 247 S.W.3d 897, 905 (Ky. 2008) (giving "false" under the KCPA its ordinary meaning).

[63] *People v. Johnson & Johnson*, 77 Cal. App. 5th 295, 319 (Cal. Ct. App. 2022) ("To prevail on a claim under the false advertising law, the plaintiff must show that members of the public are likely to be deceived . . . In assessing the likelihood of deception, the challenged advertisement or practice is typically viewed through the eyes of the reasonable consumer—that is, the ordinary consumer acting reasonably under the circumstances." (cleaned up)); N.J. Model Civ. Jury Charges § 4.43(B) (requiring a "capacity to mislead"); CJI-Civ. 29:3 (requiring "capacity to deceive"); *Craig & Bishop*, 247 S.W.3d at 905 (giving "misleading" under the KCPA its ordinary meaning).

[64] *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228–29 (9th Cir. 2019) ("[T]he reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." (citation omitted)); *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012) (a "representation does not become 'false and deceptive' merely because it will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed").

[65] *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 n.3 (9th Cir. 2008) (claim that children's food is "nutritious" was misleading when joined with specific deceptive statements on the same packaging).

[66] *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018) (requiring actionable omission to "be contrary to a representation actually made by the defendant" (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006)); *Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787, 799 (N.D. Cal. 2019).

26

A false or misleading statement is "intentionally" made if, at the time the statement was made, the defendant made the statement with the purpose of misleading consumers.[67]

A false or misleading statement is "knowingly" made if the defendant knew the statement was false or misleading at the time it was made, or with the exercise of reasonable care should have known it was false or misleading.[68]

A false or misleading statement is "recklessly" made if the defendant acts with reckless disregard for the truth or falsity of the statement.[69]

A false or misleading statement is made with "gross negligence" if the defendant acts with wanton or reckless disregard for the safety of other persons. [70]

The law provides certain protections for Meta when it makes decisions about what third-party content to put on its platforms and about what third-party content to remove from its platforms. "Third-party content" means words, pictures, video, audio, or any other form of communication that is not spoken by, created by, or developed by Meta.

You may not find that particular statements are misleading or deceptive statements based on any of the following:

---

[67] *State ex rel. Coffman v. Robert J. Hopp & Assocs., LLC*, 442 P.3d 986, 1001 (Colo. App. 2018), *as modified* (Nov. 1, 2018) ("[A] misrepresentation [i]s a false or misleading statement made 'either with knowledge of its untruth, or recklessly and willfully made without regard to its consequences, and with an intent to mislead and deceive [another].'" (quoting *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 147 (Colo. 2003)); *Capitol Cadillac Old, Inc. v. Roberts*, 813 S.W.2d 287, 291 (Ky. 1991) ("The [KCPA] requires some evidence of 'unfair, false, misleading or deceptive acts' and does not apply to simple incompetent performance of contractual duties unless some element of intentional or grossly negligent conduct is also present." (quoting *Dare to Be Great, Inc. v. Com. ex rel. Hancock*, 511 S.W.2d 224 (1974)).

[68] *Crowe v. Tull*, 126 P.3d 196, 204 (Colo. 2006) ("A CCPA claim will only lie if the plaintiff can show the defendant knowingly engaged in a deceptive trade practice."); *State ex rel. Suthers v. Mandatory Poster Agency, Inc.*, 260 P.3d 9, 14 (Colo. App. 2009) ("'[K]nowingly,' as used in the CCPA, requires actual knowledge."); Cal. Bus. & Prof. Code § 17500.

[69] Colo. Rev. Stat. § 6-1-105(4)(b) (defining "[r]ecklessly" to "mean[] a reckless disregard for the truth or falsity of a statement or advertisement").

[70] *Ali v. Allstate Northbrook Indem., Co.*, No. 3:23-cv-108-RGJ, 2024 WL 1199023, at *4 (W.D. Ky. Mar. 20, 2024) (recognizing that Kentucky law defines gross negligence as "wanton or reckless disregard for the safety of other persons."); *Sparks v. Re/Max Allstar Realty, Inc.*, 55 S.W.3d 343, 348 (Ky. Ct. App. 2000) ("Gross negligence is a conscious and voluntary act or omission which is likely to result in grave injury when in face of clear and present danger of which alleged tortfeasor is aware." (cleaned up)).

27

- Allowing any third-party content to appear on its platform;
- Failing to remove any third-party content from its platform;
- Descriptions of its policies and systems to moderate third-party content;
- Recommending any third-party content to users, including through algorithms;
- The alleged harms from any third-party content;
- Allowing third-party content to be private or to disappear after a period of time;
- Failing to warn users about the potential risks of third-party content on its platform;
- Providing notifications to users about third-party content; and
- Displaying and quantifying users' likes on third-party content.[71]

**Counting Violations[72]**

If you determine that Meta made a false or misleading statement with the requisite mental state, you must determine how many individuals viewed the statement in each of California, Colorado, Kentucky, and New Jersey.[73]

---

[71] *Doe v. Grindr Inc.*, 128 F.4th 1148, 1154 (9th Cir. 2025) (Section 230 bars liability for alleged misrepresentations about content moderation policies); *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d at 879–80 (defining "publishing" functions).

[72] Meta maintains its position that the Court, rather than the advisory jury, should decide questions related to remedies, such as civil penalties.

[73] *See, e.g.*, *People v. Superior Court (Olson)*, 96 Cal. App. 3d 181, 198 (Cal. Ct. App. 1979) (linking violations to the number of "persons who read [an] advertisement or who responded to the advertisement").

28

**<u>AGs' Objection to Instruction 2-D (Consumer Deception)</u>**

Meta's proposed instruction on the four Lead States' deception claims should be rejected. It collapses distinct state-law standards into a single, generic instruction and fails to capture critical differences among the four Lead States' laws. That approach prejudices the Lead States by omitting standards material to their claims and reduces the usefulness of the advisory verdict for the 14 additional consumer-protection States whose claims will be tried later. The Court can of course apply multiple States' laws, but if it seeks advisory-jury findings, those findings should track the applicable legal standards to best assist the Court in resolving the various States' claims.

Meta's objection to Colorado's three deception theories rests on their overlapping elements, but each theory has distinct elements and an independent statutory basis. For example, one of the theories advanced in the Fourth Claim, which encompasses Colorado Counts V and VI, requires demonstrating false representation as to the "characteristics, … uses, benefits, alterations, or quantities of goods,… [or] services..." *See* Colo. Rev. Stat. § 6-1-105(1)(e). Several non-Lead States assert claims with the same or materially similar elements. *See* ECF 2434-2 (identifying Delaware, Illinois, Indiana, Minnesota, Nebraska, and Virginia). Likewise, the Fifth Claim, which addresses Colorado Count VII, turns in part on the materiality of nondisclosed information and aligns with the standards in Connecticut, Delaware, Illinois, Kansas, Minnesota, New York and Virginia. *See* ECF 2434-2. New Jersey's theories based on deception, fraud, false pretense, false promise, and misrepresentations likewise mirror standards applicable to numerous States in the later trial phase, including Connecticut, Delaware, Illinois, Indiana, Louisiana, Minnesota, Nebraska, New York, North Carolina, Pennsylvania, South Carolina, Virginia, and Wisconsin. *See* ECF 2434-2. The point is not to multiply instructions for their own sake; it is to obtain findings keyed to the elements at issue. Meta's single, generic instruction risks imprecise findings and undermines the advisory jury's usefulness for this trial and future trials.

Meta also seeks to fracture the State AGs' deception claims by requiring the jury to decide deceptiveness on a statement-by-statement basis. But that is not the case that the State AGs bring, and it is not what the law requires. The State AGs' claims are organized around four overarching deceptive themes, each supported by multiple statements that should be considered together in context. *See* ECF 3214 at 6-7*; McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1471 (2006); *People v. Overstock.com*, 12 Cal. App. 5th 1064, 1079 (2017)*; Williams v. Gerber Products Co.*, 552 F.3d 934, 939 n.3 (9th Cir. 2008); *In re Toyota Motor Corp. Unintended Acc. Mktg., Sales Pracs., & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1177 (C.D. Cal. 2010); *Dare To Be Great, Inc. v. Commonwealth ex rel. Hancock*, 511 S.W.2d 224, 226 (Ky. 1974); *Miller v. American Family Publ'g*, 284 N.J. Super. 67, 85-87 (Ch. Div. 1995). A statement-by-statement instruction would isolate individual statements from the surrounding course of conduct and obscure the alleged deceptive scheme.

Finally, Meta objects to the State AGs' proposal to instruct the advisory jury on what each State's law does *not* require. That objection lacks merit. Clarifying instructions are routine and appropriate. These instructions will help the advisory jury apply the correct legal standards and will reduce, not create, confusion. The Court should reject Meta's effort to remove those clarifying instructions and should provide state-specific guidance sufficient for the advisory jury to perform its fact-finding role.

**Meta's Objections to Instructions 2-P, 3-P, 3.1-P, 4-P, and 5-P (Consumer Deception)**

***Simplifying Approach.***  Given that this is an advisory jury, Meta proposes to instruct the jury on common elements across the States' misrepresentation claims.  The States' proposed state-by-state, claim-by-claim instructions are duplicative, unnecessarily multiply the jury's burden, and make findings on the at-issue statements unduly cumbersome.

***Omissions Instructions.***  The States (at 45, 57) propose omissions instructions under the laws of Colorado and New Jersey.  But the States have disclaimed a pure omissions theory.  *See* May 27, 2026 Case Mgmt. Statement, ECF 3066 at 1 ("[T]he State AGs do not bring failure to warn claims, nor are any of their deception claims based on pure omissions.").  The Court should thus strike their proposed omissions instructions under Colorado and New Jersey law, and the statement (at 52) that "[d]eceptive acts include omissions of material fact" under the KCPA.

For the same reason, the Court should strike the States' proposed instruction (at 23, 43, 52, 56) that unspecified "omissions" can create an "overall impression" that is untrue or deceptive. The Court should instead adopt Meta's instruction (at 26) that an omission does not render a statement false or misleading unless directly related to or contradictory of the affirmative statement.  *See Hodson v. Mars*, 891 F.3d 857, 861 (9th Cir. 2018).

***Puffery.***  Meta has proposed an instruction (at 24) defining a "statement of fact" to mean "a specific and measurable assertion that is capable of being proven true or false" (quoting *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d at 890).  The States' submission, by contrast, is deficient because it omits any instruction on puffery.

***"Campaign of Misrepresentation."***  The States propose (at 23, 43, 52, 56) an instruction (repeated for each state-law deception instruction) that "[e]ven if a statement is literally true, it can be false or misleading if it is part of a campaign of misrepresentation."  This misstates the law. The States must prove that each individual statement is false or misleading, *see* 4/15/26 Hr'g Tr. 31

at 17:17–23; they cannot avoid that burden by pointing to a "campaign of misrepresentation." *See*, *e.g.*, *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 557–58 (N.D. Cal. 2019) (rejecting argument that "various puffery statements merge to form one overarching misrepresentation"); *In re Iphone 4S Consumer Litig.*, 2014 WL 589388, at *5 (N.D. Cal. 2014) (plaintiff could not establish a UCL fraud claim based on the theory that "the overall impact of [defendant's] commercials and advertisements misled Plaintiffs"); *Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1134 (N.D. Cal. 2013) (a "combination of several" nonactionable statements "does not automatically create an actionable misrepresentation"). The States' cited cases do not support a different rule and simply reflect that context can be considered in evaluating whether statements are deceptive. *See, e.g.*, *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 n.3 (9th Cir. 2008) (claim that children's food is "nutritious" was misleading when joined with deceptive, specific factual statements on the *same packaging*); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1171 (C.D. Cal. 2010) (automobile manufacturer made a "general promise of safety *and specific promise* that the new electronic components . . . are more reliable" (emphasis added)).

*Disclaimers*. The States mischaracterize the law when they assert (at 22) that "[s]eparate disclosures or disclaimers by Meta cannot cure an untrue or misleading statement." Just as context may render a statement misleading, it can also clarify that a statement is *not* misleading. *See, e.g.*, *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) ("Any ambiguity" in the "particular statement is dispelled by the promotion as a whole," when "no reasonable reader could ignore" "qualifying language"); *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012) (disclosure that "[o]ther restrictions may apply" defeated deception claim).

32

**Third Claim: Alleged Violation of California Business and Professions Code Section 17200 (California's Unfair Competition Law)**
Instruction 2.1-P

The People of the State of California allege that Meta violated California's Unfair Competition Law, which prohibits corporations from engaging in unfair competition through unlawful, unfair, or fraudulent business acts or practices.

For the People of the State of California to prevail on their claim under the Unfair Competition Law, you must find that the People of the State of California have proven each of the following elements by a preponderance of the evidence:

1. Meta engaged in a business act or practice; and
2. The act or practice is either unlawful, unfair, or fraudulent.

The Unfair Competition Law imposes strict liability. It is not necessary for the People of the State of California to show that Meta intended to injure anyone.[74]

*Unlawful*

To prove a violation of the unlawful prong of the California Unfair Competition Law, the People of the State of California must prove by a preponderance of the evidence that Meta engaged in a business act or practice that violated COPPA (First Claim) or the California False Advertising Law (Second Claim).[75] If the People of the State of California have proven by a preponderance of the evidence that Defendant violated the First Claim or Second Claim, then the People have also proven by a preponderance of the evidence that Defendant violated the unlawful prong of the California Unfair Competition Law.[76]

*Unfair*

To establish a violation of the unfair prong of the California Unfair Competition Law, the People of the State of California must prove by a preponderance of the evidence that Meta engaged in a

---

[74] *Hewlett v. Squaw Valley Ski Corp.*, 54 Cal.App.4th 499, 520 (Cal. Ct. App. 1997).

[75] *Abbott Labs. v. Superior Court*, 467 P.3d 184, 188 (Cal. 2020); *Nationwide Biweekly Admin., Inc. v. Superior Court*, 462 P.3d 461, 473 (Cal. 2020); *People v. Ashford Univ., LLC.* 100 Cal.App.5th 485, 507 (Cal. Ct. App. 2024).

[76] California's Unfair Competition Law "'borrows' violations of other laws and treats them as unlawful practices independently actionable." *State Farm Fire & Cas. Co. v. Super. Ct.*, 45 Cal. App. 4th 1093, 1103 (Cal. Ct. App. 1996). "[T]he UCL specifically provides that that any practice that violates the FAL is also prohibited by the UCL." *Nationwide Biweekly Admin., Inc. v. Super. Ct.*, 462 P.3d 461, 473 (Cal. 2020). Not only are violations of other laws independently actionable as separate violations of the UCL, the remedies that the California Attorney General can seek under the UCL are cumulative. *See Ashford Univ., LLC*, 100 Cal. App. 5th at 508; *People v. Johnson & Johnson*, 77 Cal. App. 5th 295, 317 (Cal. Ct. App. 2022).

33

business act or practice for which the harm to consumers outweighs the utility of the conduct.[77]

*Fraudulent*

To establish a violation of the fraudulent prong of the California Unfair Competition Law, the People of the State of California must prove by a preponderance of the evidence that Meta engaged in a business act or practice that is likely to deceive members of the public, including by making an untrue or misleading statements to the public. You are to consider the effect the alleged business act or practice would have on a reasonable consumer.[78]

An untrue or misleading statement means the same thing as used in Instruction 2, above.[79]

The People of the State of California do not need to prove any of the following: (1) that any individual relied on Defendant's statement; (2) that Defendant caused any individual injury or harm; (3) that Defendant knew or should have known its statements were deceptive; or (4) that Defendant intended to deceive the public.[80]

---

[77] *Progressive West Ins. Co. v. Superior Court,* 135 Cal.App.4th 263, 285 (Cal. Ct. App. 2005) ("Determination of whether a business practice or act is 'unfair' within the meaning of the UCA entails examination of the impact of the practice or act on its victim... *In brief*, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." (emphasis added)); *Motors, Inc. v. Times Mirror Co.,* 102 Cal. App. 3d 735, 740 (Cal. Ct. App. 1980) ("To these open-ended definitions of unfairness, we would add this obvious thought: that the determination of whether a particular business practice is unfair necessarily involves an examination of its impact on its alleged victim.… *In brief*, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the plaintiff a weighing process quite similar to the one enjoined on us by the law of nuisance." (emphasis added)).

[78] *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012) ("A business practice is fraudulent under the UCL if members of the public are likely to be deceived. The challenged conduct 'is judged by the effect it would have on a reasonable consumer.'") (citations removed)).

[79] *E.g.*, *Nationwide Biweekly Admin., Inc. v. Superior Ct.*, 9 Cal. 5th 279, 318 (Cal. 2020) ("Thus, to state a claim under either the UCL or the false advertising law, based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived." (citations omitted)).

[80] *Chern v. Bank of America*, 544 P.2d 1310, 1316 (Cal. 1976); *People v. Overstock.com, Inc.,* 12 Cal.App.5th 1064, 1079 (Cal. Ct. App. 2017); *People v. Fremont Life Ins. Co.,* 104 Cal. App. 4th 508, 532 (Cal. Ct. App. 2002); *Day v. AT&T Corp.,* 63 Cal. App. 4th 325, 332 (Cal. Ct. App. 1998).

34

Instruction 2.1-D: Alleged Violations of State Unfair and Unconscionable Practices Statutes

The States allege that Meta engaged in unfair practices in violation of California, Colorado, Kentucky and New Jersey law.

When I refer to "Meta" in these instructions, that will refer to the operations of both Facebook and Instagram.

The States allege that the following acts or practices are unfair or unconscionable:
1. Appearance-altering filters created by Meta
2. The ability of users to create multiple accounts on Facebook and Instagram
3. Time-management tools made available by Meta to users

You may not find that Meta engaged in any unfair practices based on any of the following:

- Allowing or not allowing third-party content to be posted on its platforms
- Using algorithms to recommend third-party content to users;
- Infinite scroll and autoplay features;
- Features that cause third-party content to disappear after a given amount of time;
- Notifications and alerts about third-party content;
- Quantifying and displaying "likes" about third-party content;
- Failing to have effective systems for verifying the age of its users; and
- Allowing third parties to post cosmetic filters on its platforms.[81]

In connection with each allegedly unfair act or practice, you will be asked to consider:

1. Whether Meta engaged in the act or practice;
2. Whether the act or practice took place in the course of Meta's business;
3. Whether the act or practice was unfair or unconscionable pursuant to various tests under state law;
4. Whether the act or practice had a significant impact on the public; and
5. Whether Meta acted intentionally, or knowingly, or recklessly, or with gross negligence.[82]

I will now explain the meaning of these terms in more detail for you.

***The Meaning of "Unfair or Unconscionable"***
A business act or practice is "unfair or unconscionable" only if it meets one of the following standards:

---

[81] *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d at 880–83; *Doe (K.B.) v. Backpage.com, LLC*, 768 F. Supp. 3d 1057, 1065 (N.D. Cal. 2025).

[82] Cal. Bus. & Prof. Code § 17200; Colo. Rev. Stat. § 6-1-105(1)(rrr); Ky. Rev. Stat. § 367.170; N.J. Stat. Ann. § 56:8-2.

35

- In some states, an act or practice is considered "unfair" if it causes harm to consumers and that harm outweighs the utility of the act or practice.[83]

- An act or practice may be "unfair" in other states if it represents a departure from standards of good faith, honesty in fact and fair dealing in the public marketplace.[84]

- Finally, under some state laws, an act or practice may be considered "unfair" only if it arises between parties to a contract. In that setting, a defendant may act "unfair[ly]" if it intentionally misuses its superior resources or bargaining power to enforce grossly unfair terms or conditions on another party after formation of the contract.[85]

You will be asked to consider whether Meta's business acts or practices are "unfair" using any of these different meanings.

### The Meaning of "Significant Impact on the Public"

Factors relevant to whether an act or practice has a "significant impact on the public" include the number of consumers directly affected by the challenged practice, the relative sophistication and bargaining power of the affected consumers, and evidence that the challenged practice has impacted other consumers or has a significant potential to do so in the future.[86]

### The Meaning of Actions Taken with a Particular State of Mind

For some of the state laws at issue, you must also decide whether Meta had a particular mental state when it undertook the allegedly unfair act or practice. If you find that Meta engaged in an unfair act or practice, you will also be asked whether Meta did so intentionally, knowingly, recklessly, or with gross negligence.

An unfair act or practice is "intentional" if the defendant's conduct was undertaken with the purpose of acting unfairly in the course of its business.

---

[83] *Progressive West Ins. Co. v. Superior Court*, 135 Cal. App. 4th 263, 285 (Cal. Ct. App. 2005) ("Determination of whether a business practice or act is 'unfair'" requires the court to "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." (citation omitted)); *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 1000 (9th Cir. 2023) (clarifying that California courts use a "balancing test" in cases involving alleged "unfairness to consumers").

[84] N.J. Model Civ. Jury Charges § 4.43(B) (defining "unconscionable commercial practice" as "an activity which is basically unfair or unjust which materially departs from standards of good faith, honesty in fact and fair dealing in the public marketplace" and requiring "factual dishonesty and a lack of fair dealing").

[85] *Watson v. Progressive Direct Ins. Co.*, No. 5: 22-203-DCR, 2022 WL 18027628, at *6 (E.D. Ky. Dec. 30, 2022) (defining "unfair" under the KCPA "as any business practice that misuses a seller's superior resources or bargaining power to enforce grossly unfair terms or conditions on a buyer after formation of a contract." (cleaned up)); *Garrett v. State Auto & Prop. Cas. Ins. Co.*, No. 3:09–CV–404–S, 2009 WL 5125812, at *5 (W.D. Ky. Dec. 21, 2009) (same).

[86] *Shekarchian*, 487 P.3d at 1034.

36

An unfair act or practice is "knowing" if the defendant has knowledge of its unfair nature.[87]

An unfair act or practice is "reckless" if the defendant engaged in the conduct with conscious disregard for whether it was unfair or unconscionable.[88]

Finally, an unfair act or practice is "grossly negligent" if it shows wanton or reckless disregard for the safety of other persons. [89]

**Counting Violations[90]**

If you determine that Meta engaged in one of the allegedly unfair or unconscionable practices described above with the requisite mental state, you will next be asked to determine how many teenage individuals used the allegedly unfair or unconscionable feature in each of California, Colorado, Kentucky, and New Jersey.[91]

---

[87] *Cf. Crowe*, 126 P.3d at 204 ("A CCPA claim will only lie if the plaintiff can show the defendant knowingly engaged in a deceptive trade practice."); *Suthers*, 260 P.3d at 14 ("'[K]nowingly,' as used in the CCPA, requires actual knowledge.").

[88] *Cf.* Colo. Rev. Stat. § 6-1-105(4)(b) (defining "[r]ecklessly" to "mean[] a reckless disregard for the truth or falsity of a statement or advertisement").

[89] *Ali*, 2024 WL 1199023, at *4 (recognizing that Kentucky law defines gross negligence as "wanton or reckless disregard for the safety of other persons."); *Sparks*, 55 S.W.3d at 348 ("Gross negligence is a conscious and voluntary act or omission which is likely to result in grave injury when in face of clear and present danger of which alleged tortfeasor is aware." (cleaned up)).

[90] Meta maintains its position that the Court, rather than the advisory jury, should decide questions related to remedies, such as civil penalties.

[91] *See e.g.*, *People v. Nat'l Ass'n of Realtors*, 155 Cal. App. 3d 578, 585–86 (Cal. Ct. App. 1984) (counting violations according to the "number[] of persons directly affected by each act of unfair competition").

37

**AGs' Objection to Instruction 2-D (Unfairness)**

Meta's proposed unfairness instruction should be rejected because it collapses the distinct legal standards governing the Lead States into a single, oversimplified test. That approach erases meaningful differences among the governing unfairness frameworks, omits or misstates core elements, and deprives the advisory jury of the ability to make state-specific findings that the Court will need both for the Lead States and for the 14 additional states proceeding to trial next year.

Meta also improperly recasts the State AGs' unfairness claims as challenges to four isolated product features. But these features are not stand-alone claims; they are evidence of Meta's broader unfair and unconscionable course of conduct: designing, deploying, and representing platform features in a way that elevated engagement, growth, and market share over youth safety, parental oversight, and consumers' ability to make informed choices. Time-restriction tools illustrate the point. The alleged unfairness is not simply that Meta offered those tools; it is that Meta publicly assured parents and users that the tools were effective while internally recognizing their limits, and while continuing to prioritize increased time-spent metrics. The same is true of multiple accounts and age-verification practices. These features cannot be accessed in isolation. Their significance lies in how Meta used, designed, and represented them as a part of a broader strategy that placed Meta's commercial interests ahead of young users' health and safety. By slicing the claims into discrete features, Meta improperly strips them from their context, obscures the overarching unfair practices at the heart of this case, and fails to address the AGs' allegations that Meta turned a blind eye to the known harms and addiction suffered by young users of its platforms and continuing to exploit young users' psychological vulnerabilities.

Meta's proposed instruction further fails to capture the unfairness elements that govern the four Lead States. The Sixth Claim, which addresses Colorado Count VIII, expressly incorporates the unfair conduct framework consistent with *FTC v. Sperry & Hutchinson Co.*, yet Meta's

38

proposal omits that definition altogether. This omission is not a minor drafting flaw. It deprives the jury of the factors relevant to Colorado's unfairness claim and prevents the advisory jury from making findings that will be useful to the Court. The problem extends beyond Colorado. Several states whose claims will be tried next year define unfairness by reference to some or all of the *Sperry* factors. *See* ECF 2434-1 (identifying non-Lead states, in addition to Colorado: Connecticut, Delaware, Illinois, Louisiana, Minnesota, Nebraska, New York, North Carolina, Pennsylvania, South Carolina). The Court can, of course, apply different states' laws. But when relying on an advisory jury, the more efficient course is to collect findings tied to the operative elements of those laws, rather than to a single blended standard that does not accurately track any one State's framework.

Lastly, Meta affirmatively misstates certain states' laws. For example, consumer protection claims from the Kentucky Attorney General are not required to demonstrate a contract. *See Commonwealth of Kentucky v Marathon Petroleum Co., LP.*, 191 F. Supp. 3d 694, 706 (W.D. Ky. 2016) ("The Kentucky Attorney General's power to bring consumer-protection suits falls outside of § 367.220, and thus privity is not necessary."). Likewise, contrary to Meta's claim in footnote 36 that Colorado law requires a "knowing" state of mind to establish an unfair or deceptive trade practice, the statute makes clear that unfair practices can be made knowingly *or* recklessly, and that the mental state required for the remaining deceptive trade practices at issue in this case varies by the provision at issue. *See* Colo. Rev. Stat. §§ 6-1-105(1)(e), (g), (u), & (rrr).

**Meta's Objections to Instructions 2.1-P, 3.2-P, 4-P, and 5-P (Unfair Practices)**

***Simplifying Approach.***    As with its instructions on deceptive practices, Meta has undertaken to simplify the instructions on "unfair and unconscionable practices" by consolidating common elements into one unified set.  The States' proposal for separate state-by-state instructions is needlessly complex, repeats the same or similar definitions multiple times, and fails to consolidate common elements among the claims.  *See* 10/24/25 Hr'g Tr. at 25–26.  The States create further confusion by instructing on elements they purportedly do *not* need to prove.  For instance, the States include a paragraph (at 33) on what "[i]t is not necessary for" California to show to establish a violation of the Unfair Competition Law.  They outline (at 34) what "California do[es] not need to prove" to satisfy the "fraudulent" prong of its Unfair Competition Law.  And they instruct (at 51) on what "Kentucky is not required to show" under its Consumer Protection Act.  Because none of this language is necessary to enable the advisory jury to perform its advice-giving role, it should not be included in the jury instructions.

***Misstatements of the Law.***  The States' proposed instructions misstate the law in various respects.  These are the principal issues:

*First*, the States mischaracterize the showing necessary to establish an "unfair and unconscionable practice" under both Colorado and Kentucky law.  The Colorado Consumer Protection Act makes it unlawful to "knowingly or recklessly engage in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice," Colo. Rev. Stat. § 6-1-105(1)(rrr), but neither the CCPA nor Colorado courts have defined the terms "unfair" or "unconscionable."  Notwithstanding this dearth of Colorado authority, the States assert (at 48) that "[a]n act or practice is 'unfair' under the CCPA if it" satisfies the factors laid out in *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233 (1972).  Because neither Colorado courts nor the Colorado legislature has incorporated the *Sperry* test, it would be inappropriate to instruct that this is

40

Colorado law.

The States also mischaracterize the standard for "unfair" practices under Kentucky law. The Kentucky Consumer Protection Act prohibits "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Ky. Rev. Stat. § 367.170. Because the KCPA defines "unfair" to mean "unconscionable," any practice actionable under the KCPA must arise in a contractual context, where one party intentionally misuses its superior resources or bargaining power to enforce grossly unfair terms or conditions on another party after formation of the contract. *See Watson v. Progressive Direct Ins. Co.*, No. 5:22-203-DCR, 2022 WL 18027628, at *6 (E.D. Ky. Dec. 30, 2022) (defining "unfair" under the KCPA "as any business practice that misuses a seller's superior resources or bargaining power to enforce grossly unfair terms or conditions on a buyer after formation of a contract." (cleaned up)). The States gloss over this requirement, providing instead (at 53) that an unfair practice "*includes* any business practice that misuses a seller's superior resources or bargaining power." (emphasis added).

*Second*, the States mischaracterize the *mens rea* required for claims under various State laws. The States assert (at 52) that "Kentucky is not required to show that Meta intended to deceive consumers" to prevail under the KCPA. But the case law expressly provides that a plaintiff must show "intentional or grossly negligent conduct" to prevail under the KCPA. *Capitol Cadillac Old, Inc. v. Roberts*, 813 S.W.2d 287, 291 (Ky. 1991). So too with New Jersey. While a plaintiff need not show intent to prevail on a federal-predicate unfairness theory under the NJ CFA, the "capacity to mislead" remains a "prime ingredient" of such a claim. *Vagias v. Woodmont Props., L.L.C.*, 894 A.2d 68, 71 (N.J. App. Div. 2006). The States' instruction on this theory (at 58–59) omits that crucial requirement.

41

**Fourth Claim: Alleged Violation of the Colorado Consumer Protection Act (Deceptive Acts or Practices)**
Instruction 3-P

The State of Colorado alleges that Meta violated the Colorado Consumer Protection Act ("CCPA"), which prohibits persons from engaging in unfair or deceptive acts or practices in the course of their business.[92]

Colorado claims that Meta violated the CCPA by making false representations or misrepresentations about its goods or services. For Colorado to prevail on its claim, you must find that Colorado has proven, by a preponderance of the evidence, that:

1. Either:
    a. Meta knowingly or recklessly made a false representation as to the characteristics, uses, benefits, alterations, or quantities of goods, or services, or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith;[93] or
    b. Meta represented that goods, or services, are of a particular standard, quality, or grade, or that goods are of a particular style or model and knew or should have known that its goods or services are of another particular standard, quality, or grade, or that its goods are of another particular style or model than what was represented;[94] and

2. The false representation or misrepresentation occurred in the course of Meta's business.

**Definitions**

*Misrepresentation or False Representation*

A misrepresentation or false representation is a false statement that has the capacity or tendency to attract consumers, or has the capacity to deceive the recipient even if it did not.[95]

---

[92] Colo. Rev. Stat. §§ 6-1-101 to -115.

[93] Colo. Rev. Stat. § 6-1-105(1)(e) ("A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person . . . Either knowingly or recklessly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith.").

[94] Colo. Rev. Stat. § 6-1-105(1)(g) ("A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person . . . Represents that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another.").

[95] This instruction is supported by *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.,* 62 P.3d 142, 148 (Colo. 2003) ("[A] plaintiff may satisfy the deceptive trade practices

42

A representation need not contain an express falsehood, when viewed in isolation, to be false or misleading. You must consider the challenged representation in context. A statement can be false or misleading if, when taken together with other statements, omissions, or surrounding circumstances, it creates an overall impression that is untrue or deceptive. Even if a statement is literally true, it can be false or misleading if it is part of a campaign of misrepresentation. In assessing whether a statement is false or misleading, you should consider whether, when read in context, the statement has a tendency or capacity to deceive.[96]

### *Knowingly/Recklessly*

A misrepresentation or false representation is knowingly made when it is made with knowledge of its untruth.  A misrepresentation or false representation is recklessly made when it is made without regard to the truth or falsity of a statement or advertisement.[97]

---

requirement of section 6–1–105(1)(e) by establishing either a misrepresentation or that the false representation had the capacity or tendency to deceive, even if it did not.").

[96] *Williams v. Gerber Products Co.*, 552 F.3d 934, 939 n.3 (9th Cir. 2008) (While defendant's statement, "were it standing on its own, could arguably constitute puffery," the "statement certainly contributes . . . to the deceptive context of the packaging as a whole. Given the context of this statement, we decline to give [defendant] the benefit of the doubt by dismissing the statement as puffery."); *In re Toyota Motor Corp. Unintended Acc. Mktg., Sales Pracs., & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1177 (C.D. Cal. 2010) ("Here, however, the allegations about product safety are more than 'mere puffery' that Toyota's cars were superior to others. They constitute a campaign by Toyota in which it represented itself as prioritizing (even 'obsessing over') safety."); ECF 3214 at 6-7 ("Also, as noted in the MTD Order, 'each statement must be considered in the context of the alleged deceptive scheme as a whole, and so the Court is unwilling to parse and isolate every alleged misrepresentation as Meta requests.'").

[97] C.R.S. § 6-1-105(4)(b) ("'Recklessly' means a reckless disregard for the truth or falsity of a statement or advertisement.").

43

**Meta's competing instruction (2-D) is located at page 24, and its accompanying argument insert is located at page 31.**

**<u>Fifth Claim: Alleged Violation of the Colorado Consumer Protection Act (Failure to Disclose)</u>**
Instruction 3.1-P

Colorado claims that Meta violated the CCPA by failing to disclose material information about its goods or services.  For Colorado to prevail on its claim, you must find that Colorado has proven each of the following elements by a preponderance of the evidence:[98]

1. Meta failed to disclose information concerning goods, or services,

2. Meta knew this information at the time of the advertisement or sale of the goods or services;

3. The non-disclosed information was material;

4. Meta omitted this information with the intent to induce consumers to enter into a transaction; and

5. The failure to disclose occurred in the course of Meta's business.

**Definitions**

*Knowingly/Recklessly*

A misrepresentation or false representation is knowingly made when it is made with knowledge of its untruth.  A misrepresentation or false representation is recklessly made when it is made without regard to the truth or falsity of a statement or advertisement.

*Materiality*

A fact is material if a reasonable person under the circumstances would regard it as important in deciding what to do. A fact may also be material even though a reasonable person might not regard it as important, if the person concealing it knows that the person receiving the information would regard it as important in deciding what to do.[99]

---

[98] Colo. Rev. Stat. § 6-1-105(1)(u) ("A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person . . . Fails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction.").

[99] Colorado Civil Pattern Jury Instructions, Section 19:4 ("A fact is material if a reasonable person under the circumstances would regard it as important in deciding what to do. A fact may also be material even though a reasonable person might not regard it as important, if (the person stating it knows that) (the person concealing it knows that) the person receiving the information would regard it as important in deciding what to do."); *See also Wade v. Olinger Life Ins. Co.*,

45

560 P.2d 446, 452 n.7 (Colo. 1977) ("While the Colorado Jury Instructions are not intended to operate as positive law, they are intended to operate as consistent guides to the proper legal principles involved" and "[i]n the absence of authority to the contrary, the legal principles a[r]ticulated in the instructions should be considered persuasive.").

**Meta's competing instruction (2-D) is located at page 24, and its accompanying argument insert is located at page 31.**

**Sixth Claim: Alleged Violation of the Colorado Consumer Protection Act (Unfair Acts or Practices)**
Instruction 3.2-P

Colorado claims that Meta violated the CCPA by engaging in unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent acts or practices.  For Colorado to prevail on its claim, you must find that Colorado has proven each of the following elements by a preponderance of the evidence:

1.  Meta knowingly or recklessly engaged in any unfair practice;[100] and

2.  The act or practice occurred in the course of Meta's business.

**Definitions**

*Knowingly/Recklessly*

A misrepresentation or false representation is knowingly made when it is made with knowledge of its untruth.  A misrepresentation or false representation is recklessly made when it is made without regard to the truth or falsity of a statement or advertisement.

*Unfair Act or Practice*[101]

An act or practice is "unfair" under the CCPA if it:

1.  Offends public policy as it has been established by statutes, the common law, or otherwise, even if it the act or practice was not previously considered "unlawful";
2.  Is immoral, unethical, oppressive, or unscrupulous; or
3.  It causes substantial injury to consumers.

---

[100] Colo. Rev. Stat. § 6-1-105(1)(rrr) ("A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person . . . Either knowingly or recklessly engages in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice.").

[101] *FTC v. Sperry & Hutchinson Co*., 405 U.S. 233, 244 n.5 (1972) ("The Commission has described the factors it considers in determining whether a practice that is neither in violation of the antitrust laws nor deceptive is nonetheless unfair: '(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen).'").

48

If a practice satisfies even one of these factors, it is unfair.[102]

---

[102] *See, e.g.*, *State ex rel. Shikada v. Bristol-Myers Squibb Co.*, 526 P.3d 395, 443 (Haw. 2023) ("A practice is unfair if it (1) offended public policy, (2) was immoral, unethical, oppressive, or unscrupulous, *or* (3) substantially injured Hawaiʻi consumers") (emphasis added*)*; *Long v. Dell, Inc.*, 93 A.3d 988, 1001 (R.I. 2014) ("The plaintiffs need not establish every factor, and they may prove unfairness by showing that a trade practice meets one factor to a great degree or two or three factors to a lesser degree."); *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 418 (2002) ("As the Connecticut Supreme Court held in interpreting that state's unfair trade practices statute, all three of the criteria in *Sperry* do not need to be satisfied to support a finding of unfairness. . . . We believe [the Connecticut Supreme Court] expresse[d] the correct standard and hereby adopt it as our own.").

49

**Meta's competing instruction (2.1-D) is located at page 35, and its accompanying argument insert is located at page 40.**

50

**Seventh Claim: Alleged Violation of Kentucky Consumer Protection Act, Ky. Rev. Stat. Chapter § 367 et seq.**
Instruction 4-P

The Commonwealth of Kentucky alleges that Meta violated the Kentucky Consumer Protection Act ("KCPA"), which prohibits persons from engaging in unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce.[103]

For Kentucky to prevail on its claim, you must find that Kentucky has proven each of the following elements by a preponderance of the evidence:

1. Meta used an unfair, false, misleading, or deceptive act or practice;
2. Meta's unfair, false, misleading, or deceptive act or practice occurred in the conduct of any trade or commerce.[104]

Kentucky is not required to show that anyone relied on,[105] or was actually deceived by,[106] Meta's conduct in order for you to find that Meta violated the KCPA.  However, Kentucky must establish that the conduct is false, misleading, and deceptive to a reasonable consumer.[107]

A statement can be found to be false or misleading if it is part of a campaign of misrepresentation. In assessing whether a statement is false or misleading, you may consider the deceptive context of multiple statements and whether they would likely mislead a reasonable person.[108]

---

[103] Ky. Rev. Stat. § 367.170; *Craig & Bishop, Inc. v. Piles*, 247 S.W.3d 897, 904 & n.11 (Ky. 2008); *Stevens v. Motorists Mut. Ins. Co.*, 759 S.W.2d 819, 821 (Ky. 1988).

[104] Ky. Rev. Stat. §§ 367.170, 367.190(1).

[105] *Corder v. Ford Motor Co.*, 869 F. Supp 2d 835, 837 n.1, 838-39 (W.D. Ky. 2012).

[106] *Telcom Directories, Inc. v. Com. ex rel. Cowan*, 833 S.W.2d 848, 850 (Ky. App. 1991).

[107] *Craig & Bishop, Inc. v. Piles*, 247 S.W.3d 897, 905 (Ky. 2008); *Stevens v. Motorist Mut. Ins. Co.*, 759 S.W.2d 819, 820 (Ky. 1988); *Dare To Be Great, Inc. v. Com. ex. rel. Hancock*, 511 S.W.2d 224, 227 (Ky. 1974). *See also Williams v. Gerber Products Co.*, 552 F.3d 934, 939 n.3 (9th Cir. 2008); *In re Toyota Motor Corp. Unintended Acc. Mktg., Sales Pracs., & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1177 (C.D. Cal. 2010); ECF 3214 at 6-7.

[108] *See Dare To Be Great, Inc. v. Com. ex rel. Hancock*, 511 S.W.2d 224, 226 (Ky. 1974) ("We are of the opinion that the ***entire scheme*** was fraudulent and misleading with the principal design of bilking prospective customers of $1,000.00 in a chainletter type program. The motivational tapes were only incidental to the program and their chief function was to provide the appellants with a flimsy and transparent claim of legitimacy for their ***fraudulent enterprise.***") (emphasis added); *Stevens v. Motorists Mut. Ins. Co.*, 759 S.W.2d 819, 821 (Ky. 1988) ("Our examination and analysis of the various cases indicates clearly that the Kentucky legislature created a statute which has the broadest application in order to give Kentucky consumers the broadest possible

51

Kentucky must prove that Meta willfully used an unfair, false, misleading, or deceptive method, act, or practice in order to recover civil penalties.   Kentucky is not required to show that Meta intended to deceive consumers; a willful violation may occur if Meta acted with careless disregard as to whether or not it had the right to so act.[109]

**Definitions**

"Trade" and "commerce" under KCPA means the advertising, offering for sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value, and includes any trade or commerce directly or indirectly affecting the people of Kentucky.[110]

You should give the terms "false," "misleading," and "deceptive" their ordinary meaning as understood by a reasonably prudent person of common intelligence.[111]  Deceptive acts include omissions of material fact.[112]

A representation need not contain an express falsehood, when viewed in isolation, to be false or misleading. You must consider the challenged representation in context. A statement can be false or misleading if, when taken together with other statements, omissions, or surrounding circumstances, it creates an overall impression that is untrue or deceptive. Even if a statement is literally true, it can be false or misleading if it is part of a campaign of misrepresentation.[113] In

---

protection for allegedly illegal acts. In addition, KRS 446.080 requires that the statutes of this Commonwealth are to be liberally construed.").

[109] *See American Nat'l University of Kentucky, Inc. v. Commonwealth of Kentucky ex. rel. Andy Beshear*, 2019 WL 2479608, at *4 (Ky. App. 2019) (unpublished) (in discussing willful under the KCPA, noting that "it is settled that a showing of evil purpose or criminal intent is not a necessary prerequisite to a determination of statutory liability in a civil proceeding, and that a 'wilful' statutory violation may occur when the conduct in question is simply marked by careless disregard whether or not one has the right to so act.") (citing *Couch v. Natural Resources and Environmental Protection Cabinet*, 986 S.W.2d 158, 163 (Ky. 1999)); *Couch*, 986 S.W.2d at 159, 163.

[110] Ky. Rev. Stat. § 367.110(2).

[111] *Craig & Bishop, Inc. v. Piles*, 247 S.W.3d 897, 905 (Ky. 2008); *Stevens v. Motorist Mut. Ins. Co.*, 759 S.W.2d 819, 820 (Ky. 1988); *Dare To Be Great, Inc. v. Com. ex. rel. Hancock*, 511 S.W.2d 224, 227 (Ky. 1974).

[112] *Naiser v. Unilver U.S., Inc.*, 975 F. Supp. 2d 727, 741–42 (W.D. Ky. 2013).

[113] *See Dare To Be Great, Inc. v. Com. ex rel. Hancock*, 511 S.W.2d 224, 226 (Ky. 1974) ("We are of the opinion that the ***entire scheme*** was fraudulent and misleading with the principal design of bilking prospective customers of $1,000.00 in a chainletter type program. The motivational tapes were only incidental to the program and their chief function was to provide the appellants

assessing whether a statement is false or misleading, you should consider whether, when read in context, the statement would likely mislead a reasonable person.[114]

An "unfair" act or practice is one that is unconscionable.[115] "Unconscionable" means-manifestly unfair or inequitable[116] and includes any business practice that misuses a seller's superior resources or bargaining power.

"Willful" means careless disregard as to whether or not it had the right to so act.[117]

---

with a flimsy and transparent claim of legitimacy for their ***fraudulent enterprise.***") (emphasis added); *Stevens v. Motorists Mut. Ins. Co.*, 759 S.W.2d 819, 821 (Ky. 1988) ("Our examination and analysis of the various cases indicates clearly that the Kentucky legislature created a statute which has the broadest application in order to give Kentucky consumers the broadest possible protection for allegedly illegal acts. In addition, KRS 446.080 requires that the statutes of this Commonwealth are to be liberally construed.").

[114] *Craig & Bishop, Inc. v. Piles*, 247 S.W.3d 897, 905 (Ky. 2008); *Stevens v. Motorist Mut. Ins. Co.*, 759 S.W.2d 819, 820 (Ky. 1988); *Dare To Be Great, Inc. v. Com. ex. rel. Hancock*, 511 S.W.2d 224, 227 (Ky. 1974). *See also Williams v. Gerber Products Co.*, 552 F.3d 934, 939 n.3 (9th Cir. 2008); *In re Toyota Motor Corp. Unintended Acc. Mktg., Sales Pracs., & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1177 (C.D. Cal. 2010); ECF 3214 at 6-7.

[115] Ky. Rev. Stat. § 367.170(2).

[116] *Cf. Wilhoit v. Wilhoit*, 506 S.W.2d 511, 513 (Ky. 1974); *Snardon v. Snardon*, No. 2007-CA-002114-MR, 2009 WL 2059094, at *2 (Ky. App. July 17, 2009); *see also*, *e.g.*, *Stevens v. Motorists Mut. Ins. Co.*, 759 S.W.2d 819, 821 (Ky. 1988); *Com. ex rel Stephens v. North American Van Lines, Inc.*, 600 S.W.2d 459, 462 (Ky. App. 1979); *Com. ex rel. Chandler v. Anthem Ins. Companies, Inc.*, 8 S.W.3d 48, 55 (Ky. App. 1999).

[117] *Kirschner v. Louisville Gas & Electric Company*, 743 S.W.2d 840, 842-43 (Ky. 1988)*; Com. v. Alpharma USPD, Inc.*, No. 04-CI-1487, 2011 WL 5512891 (Ky. Cir. Ct. Jan. 19, 2011).

53

**Meta's competing deception instruction (2-D) is located at page 24, and its accompanying argument insert is located at page 31.**

**Meta's competing unfairness instruction (2.1-D) is located at page 35, and its accompanying argument insert is located at page 40.**

**Eighth Claim: Alleged Violation of the New Jersey Consumer Fraud Act (Commercial Practices in Violation of the Act)**
Instruction 5-P

The Attorney General of the State of New Jersey, Jennifer Davenport, and Acting Director of the New Jersey Division of Consumer Affairs, Jeremy E. Hollander (collectively, "New Jersey"), allege that Meta violated the New Jersey Consumer Fraud Act ("NJ CFA") which prohibits unconscionable and deceptive acts or practices. There are three possible bases for liability under the NJ CFA: affirmative acts, acts of omission, and violations of federal law.

*Affirmative Acts*

The first type of violation relates to affirmative acts under the NJ CFA.  An affirmative act may include an abusive commercial practice, an unconscionable commercial practice, deception, fraud, false pretense, false promise, or misrepresentation.[118]  For New Jersey to prevail on its claim under an affirmative acts theory, you must find that New Jersey has proven each of the following elements by a preponderance of the evidence:

1.  That Meta used an abusive commercial practice, unconscionable commercial practice, deception, fraud, false pretense, false promise, *or* misrepresentation; [119] and
2.  That Meta did so in connection with the sale or advertisement of any merchandise.[120]

**Definitions**[121]

***Unconscionable Commercial Practice***
An "unconscionable commercial practice" is an activity which is basically unfair or unjust which materially departs from standards of good faith, honesty in fact and fair dealing in the public marketplace.[122]  To be unconscionable, there must be factual dishonesty and a lack of fair dealing.

---

[118]  N.J. Civ. Jury Instructions 4.43(B).

[119] The terms "fraud," "false pretense," "false promise" and "misrepresentation" have traditionally been defined in this State as requiring an awareness by the maker of the statement of its inaccuracy accompanied by an intent to mislead.  However, in *Fenwick v. Kay Amer. Jeep, Inc.*, 72 *N.J.* 372, 377 (1977), the Supreme Court noted that "the requirement that knowledge and intent be shown is limited to the concealment, suppression or omission of any material fact." *See also D'Ercole Sales, Inc. v. Fruehauf Corp.*, 206 N.J. Super. at 22 (App. Div. 1985). Therefore, these four terms do **not** require either intent or knowledge.

[120] N.J. Stat. Ann. § 56:8-2; N.J. Civ. Jury Instructions 4.43(B).

[121] N.J. Civ. Jury Instructions 4.43(B).

[122] *See D'Ercole Sales, Inc. v. Fruehauf Corp.*, 206 N.J. Super. 11, 29 (App. Div. 1985) for illustrative criteria in evaluating unconscionability.

55

*Deception*

"Deception" is conduct or advertisement which is misleading to an average consumer to the extent that it is capable of, and likely to, mislead an average consumer. It does not matter that at a later time it could have been explained to a more knowledgeable and inquisitive consumer. It does not matter whether the conduct or advertisement actually have misled consumers. The fact that Meta may have acted in good faith is irrelevant. It is the capacity to mislead that is important.[123]

*Fraud*

"Fraud" is a perversion of the truth, a misstatement or a falsehood communicated to another person creating the possibility that that other person will be cheated.

*False Pretense*

"False pretense" is an untruth knowingly expressed by a wrongdoer.

*False Promise*

"False promise" is an untrue commitment or pledge, communicated to another person, to create the possibility that that other person will be misled.

*Misrepresentation*

A "misrepresentation" is an untrue statement made about a fact which is important or significant to the sale/advertisement, and is communicated to another person to create the possibility that other person will be misled. A "misrepresentation" is a statement made to deceive or mislead.

A representation need not contain an express falsehood, when viewed in isolation, to be false or misleading. You must consider the challenged representation in context. A statement can be false or misleading if, when taken together with other statements, omissions, or surrounding circumstances, it creates an overall impression that is untrue or deceptive. Even if a statement is literally true, it can be false or misleading if it is part of a campaign of misrepresentation. In assessing whether a statement is false or misleading, you should consider whether, when read in context, the statement would likely mislead a reasonable person.[124]

---

[123] *See* NJ Consumer Fraud Act; Charge 4.43(B) (approved 5/1998; Revised 01/2025).

[124] "A carefully constructed message which avoids literal misrepresentation while doing everything possible to create an inaccurate and misleading impression" may qualify as deceptive. *Miller v. American Family Publ'g*, 284 N.J. Super. 67, 85-87 (Ch. Div. 1995).

56

*Person*
A "person" includes not only a human being or the individual's legal representative but also a partnership, corporation, company, trust, business entity, association as well as the individual's agent, employee, salesperson, partner, officer, director, member, stockholder, associate, trustee or beneficiary of a trust.

*Sale*
A "sale" includes any sale, rental or distribution, offer for sale, rental or distribution or attempt directly or indirectly to sell, rent or distribute.

*Advertisement*
An "advertisement" includes the attempt, directly or indirectly, by publication, dissemination, solicitation, endorsement, or circulation in any way to induce any person to enter or not enter into any obligation, acquire any title or interest in any merchandise, increase the consumption of any merchandise, or make any loan.

*Merchandise*
"Merchandise" includes any objects, wares, goods, commodities, services or anything offered directly or indirectly to the public for sale.

<u>Acts of Omissions</u>

The second type of violation relates to the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission.[125] For New Jersey to prevail on its claim under the NJ CFA based on an omissions theory, you must find that New Jersey has proven each of the following elements by a preponderance of the evidence:

1. That Meta knowingly concealed, suppressed, or omitted a material fact;
2. That Meta did so purposely or with the intent that others would rely on that concealment, suppression, or omission; and
3. That Meta did so in connection with the sale or advertisement of any merchandise.[126]

It is not necessary that any consumer be, in fact, misled or deceived by another's conduct. Where the alleged consumer fraud can be viewed as either an omission or an affirmative act, Meta is liable for the conduct as an act of omission only where Meta committed a consumer fraud by omission and intent is shown.

**Definitions**

---

[125] N.J. Stat. Ann. § 56:8-2; N.J. Civ. Jury Instructions 4.43(C).

[126] N.J. Stat. Ann. § 56:8-2.

57

*Knowingly*

A person acts "knowingly" if the person is aware that the person's conduct is of a nature that it is practically certain that the person's conduct will cause a particular result. The person acts with knowledge, consciously, intelligently, willfully or intentionally.

*Conceal*

To "conceal" is to hide, secrete, or withhold something from the knowledge of others or to hide from observation, cover or keep from sight or prevent discovery of. "Concealment" is a withholding of something which one is bound or has a duty to reveal so that the one entitled to be informed will remain in ignorance.

*Suppress*

To "suppress" is to put a stop to a thing actually existing, to prohibit or put down, or to prevent, subdue, or end by force. "Suppression" is the conscious effort to control or conceal unacceptable impulses, thought, feelings or acts.

*Omission*

An "omission" is neglecting to perform what the law requires. Liability must be imposed for an omission if there is a duty to act under the circumstances.

*Material*

A fact is "material" if either (1) a reasonable consumer would attach importance to it in making their decisions or determining their conduct or (2) if the speaker knows or has reason to know that consumers are likely to consider the fact important in making their decisions or determining their conduct.

*Purposely*

A person acts "purposely" if it is the person's conscious object to engage in conduct that of a certain nature or cause a particular result and the person is aware of hopes or believes that the attendant circumstances exist.

*Intent*

"Intent" is a design, resolve, or determination with which a person acts. It refers only to the state of mind existing when an act is done or omitted.

*Sale* (*See* Affirmative Acts Definition)

*Advertisement* (*See* Affirmative Acts Definition)

*Merchandise* (*See* Affirmative Acts Definition)


Violation of Federal Law

58

The third type of violation relates to violations of federal law.[127]  For New Jersey to prevail on its claim under the NJ CFA based on a violation of federal law, you must find that New Jersey has proven by a preponderance of the evidence that Meta engaged in a business act or practice that violated COPPA (First Claim).

---

[127] N.J. Stat. Ann. § 56:8-4(b).

59

**Meta's competing deception instruction (2-D) is located at page 24, and its accompanying argument insert is located at page 31.**

**Meta's competing unfairness instruction (2.1-D) is located at page 35, and its accompanying argument insert is located at page 40.**

**AGs' Civil Penalty Instructions**

If you decide that Meta violated any State's consumer protection statutes, then you may award civil penalties to each State whose statutes were violated. Civil penalties are different than compensatory damages. They are to punish a defendant's misconduct and to deter future misconduct. The State AGs must only show that Meta violated the law. They do not need to show that any individual consumer relied on or was harmed by Meta's conduct.

To determine civil penalties, you must determine, for each State, both (1) the number of statutory violations and (2) the penalty amount to be awarded for each violation. Violation counting is a flexible exercise subject to your discretion, based on the circumstances of the case, and the evidence before you.  In determining the number of violations and the penalty amount, you should look to the law of each State as described below, and consider the penalty which will punish and deter deceptive and unfair practices. When counting violations, you are not limited by the number of people who may have been exposed to unlawful conduct, or who may have viewed deceptive statements. You may also count more than one violation per consumer if that is appropriate under the circumstances of the case and to effectuate the purpose of the statutes.

To determine the number of violations, it is for you to decide from the evidence presented how many violations occurred based on the circumstances of the case, including, but not limited to, the type of violations, number of consumers, and repetition of the misconduct. You may look to:

1. The number of people under 18 in each respective State that used Meta's platforms.
2. The number of monthly instances of excessive use of Meta's platforms by people under 18 in each respective State.
3. The number of people under 13 in each respective State that used Meta's platforms.

Once you determine the number of violations for each State, it is up to you to decide the penalty amount for each violation, taking into account each State's penalty factors and maximum penalty amount. The factors are similar, but not identical across the four plaintiff states.

**California:** Civil penalties of up to $2,500 must be ordered for each violation of California's Unfair Competition Law and False Advertising Law. The civil penalties under each California statute are cumulative, such that a penalty amount of up to $5,000 may be awarded for an act that is a violation of both laws. You shall consider any one or more of the following factors, as well as any others you believe would be relevant: the nature and seriousness of the misconduct, the number of violations, the persistence of the misconduct, the length of time over which the misconduct occurred, the willfulness of Meta's misconduct, and Meta's assets, liabilities, and net worth.

**Colorado:** Under Colorado law, each consumer or transaction must be counted as a separate violation. For violations occurring before July 1, 2019, you must award civil penalties of up to $2,000 per violation, subject to a $500,000 maximum for any related series of violations. For violations occurring on or after July 1, 2019, Colorado law requires you to award civil penalties of up to $20,000 per violation. In determining the appropriate amount of civil penalties, you

61

should consider those factors you find relevant and that include: (1) the good or bad faith of the defendant, Meta; (2) the injury to the public; (3) the defendant Meta's ability to pay; and (4) the desire to eliminate the benefits derived by violations of the Colorado Consumer Protection Act.

**Kentucky:** Kentucky law authorizes civil penalties of up to $2,000 per violation from Meta if you find that Meta willfully used an unfair, false, misleading, or deceptive method, act, or practice. In assessing penalties under Kentucky law, you may consider, either alone or in combination: (1) whether Meta was acting in good faith or bad faith; (2) the nature, extent, and severity of the injury to consumers and the public; (3) Meta's ability to pay; (4) the amount of profit or gain obtained through the unlawful conduct; (5) the duration of the unlawful conduct; and (6) the desire to eliminate any benefit derived from the violation and to deter future violations.

**New Jersey:** New Jersey law authorizes civil penalties of not more than $10,000 for the first violation and not more than $20,000 for the second and each subsequent violation. Under New Jersey law, you may consider the following factors in setting civil penalties: (1) the good faith or bad faith of the defendant, Meta; (2) Meta's ability to pay; (3) the amount of profits obtained from the illegal activity; (4) injury to the public; and (5) the duration of the illegal activity.

62

**Meta's competing remedies instruction is located within its deception instruction (2-D) at page 28, and within its unfairness instruction (2.1-D) at page 37.**

**AGs' Argument Concerning Remedies**

Meta has failed to propose jury instructions for civil penalties requested by the State AGs. The State AGs maintain that penalties are proper to be heard by the advisory jury. The instructions proposed by the State AGs should be accepted should the jury hear argument regarding penalties. The proposal adequately addresses the elements that are to be considered when determining the amount of civil penalties, as provided by statute and common law. Further, it provides calculations to which the jury may look as to how many violations were committed by Meta, should they determine that such violations occurred. The calculations offered by the State AGs were performed by a retained expert and provide reasonable methods for counting violations based on applicable law. However, the advisory jury is not limited by these options as significant flexibility is permitted to effectuate the purpose of the states' statutes to combat unfair and deceptive consumer acts and practices.

The State AGs reserve the right for further briefing should Meta propose civil penalty jury instructions in the future.

64

**Meta's Objections to the States' Instruction on Remedies**

***Submission to Jury.*** The States concede (and Meta agrees) that disgorgement involves complex calculations "and is therefore best assessed exclusively by the Court." ECF 444 (3217) at 1. Meta also asserts that the advisory jury should address civil penalties.

The role of the advisory jury to provide input on "the common sense or standard of the community, or notions of efficiency or convenience," ECF 384 (3139) at 7, does not realistically apply to the complicated calculations required to assess civil penalties. Further, if the advisory jury is to play any role on these issues, the jury cannot simply be provided a set of charts and asked to pick numbers; it must hear evidence. And this will take time while adding to the jury's burden. There is also a severe risk of tainting the jury and unfairly prejudicing Meta if the States' purported remedies calculations are presented alongside their liability case. *See* Meta's Submission Regarding State AGs' Penalty & Disgorgement Charts & Supporting Materials ("Remedies Submission"), ECF 455 (3237) at 23–26.

***States' Proposed Instructions.*** If the Court elects to present any issues on civil penalties to the advisory jury, it should reject the States' proposed instruction, for two fundamental reasons.

*First*, the States' instruction misstates the law on the counting of UPA violations. The case law recognizes two general approaches to counting UPA violations: based either on (a) the number of consumers "exposed to" or affected by the defendant's violations, or (b) the defendant's affirmative unlawful acts. *See, e.g.*, *People v. Super. Ct. (Jayhill Corp.)*, 9 Cal. 3d 283, 289 (1973) ("the number of violations is to be determined by the number of persons to whom the misrepresentations were made"); *May Dep't. Stores Co. v. State ex rel. Woodard*, 863 P.2d 967, 974 (Colo. 1993) (in CCPA case, "defin[ing] separate violations in terms of the *dissemination* of false and misleading information" (emphasis in original)); *Am. Nat'l Univ. of Ky., Inc. v. Commonwealth ex rel. Beshear*, 2019 WL 2479608, at *7 (Ky. Ct. App. June 14, 2019)

65

(unpublished) (employing second approach); *Kugler v. Romain*, 58 N.J. 522, 533 (1971) (same). Under either approach, the counting of violations must be linked to the conduct that violated the statute. The States' instruction improperly eliminates this linkage and is thus contrary to the law governing the counting of UPA violations. *See* Remedies Submission at 1–5. Further, the States' instruction would permit impermissible double recoveries. *See id*. at 15–17.

*Second*, the States' proposal that the jury decide the amount of civil penalties is plainly inappropriate. Under the laws of all four states, *the court*—and not the jury—determines the amount of civil penalties. *See, e.g.*, Cal. Bus. & Prof. Code § 17206(b) (providing that "*the court* shall consider" six factors "[i]n assessing the amount of" civil penalties owed"); *id.* § 17536(b) (same); *People v. Wunder*, 371 P.3d 785, 793 (Colo. App. 2016) ("*A court should consider* several factors. . . ." (emphasis added)); Ky. Rev. Stat. § 367.990(26)(a) ("In any action brought under KRS 367.190, if *the court* finds . . . [a] practice declared unlawful by KRS 367.170, the Attorney General, upon *petition to the court*, may recover . . . a civil penalty." (emphasis added)); *Kimmelman v. Henkels & McCoy, Inc.*, 527 A.2d 1368, 1375 (N.J. 1987) ("the statute … allows *a court considerable discretion* in determining the penalty" and the "*trial court*" should weigh the relevant factors "in determining . . . [what] penalty should apply") (all emphases added). The law of these States does not provide for a jury determination of civil penalties. Further, the States' proposal improperly conflates the discretion afforded courts in determining the *amount* of the penalty with determining how to *count* the number of violations. Those inquiries are distinct.

At most, the advisory jury's role should be confined to counting users, by state, (i) who viewed alleged misrepresentations or (ii) used the alleged unfair features. Meta's proposed instructions and verdict form include these points, while reserving Meta's position that they should not be addressed by the advisory jury.

66

**STOP**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, the platform "X" formerly known as Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it[, although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved— including the parties, the witnesses, or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the

68

accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the court immediately.

If it becomes necessary during your deliberations to communicate with me, you may send a note through the courtroom deputy, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

69

**State AG's Proposed Verdict Forms**

**First Claim: Alleged Violations of the Children's Online Privacy Protection Act Verdict Form**

On the First Claim for Violations of the Children's Online Privacy Protection Act (COPPA), did the State Attorney General Plaintiffs collectively prove by a preponderance of evidence the answer to each question below:

1. Was Meta's website or online service, or a portion thereof, directed to children?

    _____ Yes    _____ No

2. Did Meta have actual knowledge that it collected or maintained personal information from a child?

    _____ Yes    _____ No

70

**Second Claim: Alleged Violations of California Business and Professions Code Section 17500 (California's False Advertising Law) Verdict Form**

On the Second Claim for Violations of California Business and Professions Code Section 17500 (California's False Advertising Law), did the People of the State of California prove by a preponderance of evidence the answer to each question below:

1. Did Meta make a statement that was viewable by or available to the public?
   _____ Yes   _____ No

2. Was that statement made about Meta's services or for the purpose of inducing the public to use Meta's services?
   _____ Yes   _____ No

3. At the time the statement was made, was the statement untrue or misleading?
   _____ Yes   _____ No

4. At the time the statement was made, did Meta know or should Meta have known that the statement was untrue or misleading?
   _____ Yes   _____ No

5. If you answered yes to each of the foregoing questions as to this Second Claim, what were the number of violations proved: _____

   and what is the penalty amount per violation that should be applied (not to exceed $2,500 per violation) $_____.

71

**Third Claim: Alleged Violations of California Business and Professions Code Section 17200 (California's Unfair Competition Law) Verdict Form**

On the Third Claim for Violations of California Business and Professions Code Section 17200 (California's Unfair Competition Law) did the People of the State of California prove the following by a preponderance of evidence against Meta:

1. That Meta engaged in any unlawful business act or practice that violated the First Claim (Violations of COPPA)?

   *If you answered YES as to Questions 1 and/or 2 as to the First Claim, your answer must be YES.*

   _____ Yes    _____ No

2. That Meta engaged in any unlawful business act or practice that violated the Second Claim (Violations of California's False Advertising Law)?

   *If you answered YES as to Questions 1 through 4 of the Second Claim, your answer must be YES.*

   _____ Yes    _____ No

   a. If you answered yes to the foregoing question as to this Third Claim, enter the number of violations proved from Question 5 as to the Second Claim: _____

   b. and what is the penalty amount per violation that should be applied (not to exceed $2,500 per violation) $_____.

3. That Meta engaged any unfair business act or practice?

   _____ Yes    _____ No

   a. If you answered yes to the foregoing question as to this Third Claim, what were the number of violations proved: _____

   b. and what is the penalty amount per violation that should be applied (not to exceed $2,500 per violation) $_____.

4. That Meta engaged any fraudulent business act or practice?

   _____ Yes    _____ No

   a. If you answered yes to the foregoing question as to this Third Claim, what were the number of violations proved: _____

72

b.  and what is the penalty amount per violation that should be applied (not to exceed $2,500 per violation) $_____.

**Fourth Claim: Alleged Violation of the Colorado Consumer Protection Act (Deceptive Acts or Practices – False Representations as to Characteristics, Uses, Benefits or Alterations) Verdict Form**

In answering each question below, you must assess whether the State of Colorado has met its burden of proving its claim by a preponderance of the evidence.

1. Did Meta knowingly or recklessly make a false representation as to the characteristics, uses, benefits, or alterations of goods or services?

_____ Yes    _____ No

2. Did that representation occur in the course of Meta's business?

_____ Yes    _____ No

   a. If you answered yes to each of the foregoing questions, what were the number of violations proved: _____

   b. and what is the penalty amount per violation that should be applied (not to exceed $20,000 per violation) $_____.

3. Did Meta represent that goods, or services, were of a particular standard, quality, or grade, or that goods were of a particular style or model?

_____ Yes    _____ No

4. Did Meta know, or should it have known, that its goods or services were of another particular standard, quality, or grade, or that its goods were of another particular style or model than what was represented?

_____ Yes    _____ No

5. If you answered yes to each of the foregoing questions, what were the number of violations proved: _____

and what is the penalty amount per violation that should be applied (not to exceed $20,000 per violation) $_____.

74

**Fifth Claim: Alleged Violation of the Colorado Consumer Protection Act (Deceptive Acts or Practices – Failure to Disclose) Verdict Form**

In answering each question below, you must assess whether Colorado has met its burden of proving its claim by a preponderance of the evidence.

1.  Did Meta fail to disclose information concerning goods or services?

    _____ Yes    _____ No

2.  Did Meta know this information at the time of the advertisement or sale of the goods or services?

    _____ Yes    _____ No

3.  Was the non-disclosed information material?

    _____ Yes    _____ No

4.  Did Meta omit this information with the intent to induce consumers to enter into a transaction?

    _____ Yes    _____ No

5.  Did the failure to disclose occur in the course of Meta's business?

    _____ Yes    _____ No

6.  If you answered yes to each of the foregoing questions as to this Fifth Claim, what were the number of violations proved: _____

    and what is the penalty amount per violation that should be applied (not to exceed $20,000 per violation) $_____.

75

**Sixth Claim: Alleged Violation of the Colorado Consumer Protection Act (Deceptive and Unfair Acts or Practices) Verdict Form**

In answering each question below, you must assess whether Colorado has met its burden of proving its claim by a preponderance of the evidence.

1. Did Meta knowingly or recklessly engage in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice?

   _____ Yes     _____ No

2. Did Meta engage in that act or practice in the course of its business?

   _____ Yes     _____ No

3. If you answered yes to each of the foregoing questions as to this Sixth Claim, what were the number of violations proved: _____

   and what is the penalty amount per violation that should be applied (not to exceed $20,000 per violation) $_____.

76

**Seventh Claim: Alleged Violation of Kentucky Consumer Protection Act, Ky. Rev. Stat. Chapter § 367 et seq. Verdict Form (Deceptive and Unfair Acts or Practices)**

As to Unfair Acts or Practices, in answering each question below, you must assess whether Kentucky has met its burden of proving its claim by a preponderance of the evidence.

1. Did Meta use an unfair act or practice?

    _____ Yes    _____ No

2. Did Meta's unfair act or practice occur in the conduct of any trade or commerce?

    _____ Yes    _____ No

3. Was the violative, unfair conduct engaged in willfully?

    _____ Yes    _____ No

4. If you answered yes to each of the foregoing questions as to the Seventh Claim, what were the number of violations proved: _____

    and what is the penalty amount per violation that should be applied (not to exceed $2,000 per violation) $_____.

As to Deceptive Acts or Practices, in answering each question below, you must assess whether Kentucky has met its burden of proving its claim by a preponderance of the evidence.

1. Did Meta use a false, misleading, or deceptive act or practice?

    _____ Yes    _____ No
2. Did Meta's false, misleading, or deceptive act or practice occur in the conduct of any trade or commerce?

    _____ Yes    _____ No
3. Was the violative, false, misleading, or deceptive conduct engaged in willfully?

    _____ Yes    _____ No
4. If you answered yes to each of the foregoing questions as to the Seventh Claim, what were the number of violations proved: _____

    and what is the penalty amount per violation that should be applied (not to exceed $2,000 per violation) $_____.

77

**Eighth Claim: Alleged Violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 to -233.**

As to Abusive or Unconscionable Commercial Acts or Practices, in answering each question below, you must assess whether New Jersey has met its burden of proving its claim by a preponderance of the evidence:

1. Did Meta engage in an abusive or unconscionable commercial practice?
   _____ Yes   _____ No

2. Did Meta engage in an abusive or unconscionable commercial practice in connection with the sale or advertisement of merchandise?
   _____ Yes   _____ No

3. If you answered yes to each of the foregoing questions as to the Eighth Claim (Abusive or Unconscionable Commercial Acts or Practices), what were the number of violations proved: _____

   and what is the penalty amount per violation that should be applied (not to exceed $10,000 for the first violation and not to exceed $20,000 for each subsequent violation): $_____.

As to Deceptive Acts or Practices, in answering each question below, you must assess whether New Jersey has met its burden of proving its claim by a preponderance of the evidence:

1. Did Meta engage in deception, fraud, false pretense, false promise, or misrepresentation?
   _____ Yes   _____ No

2. Did Meta engage in deception, fraud, false pretense, false promise, or misrepresentation in connection with the sale or advertisement of merchandise?

   _____ Yes   _____ No

3. If you answered yes to each of the foregoing questions as to the Eighth Claim (Deceptive Acts or Practices), what were the number of violations proved: _____

   and what is the penalty amount per violation that should be applied (not to exceed $10,000 for the first violation and not to exceed $20,000 for each subsequent violation): $_____.

As to Material Omissions, in answering each question below, you must assess whether New Jersey has met its burden of proving its claim by a preponderance of the evidence:

1. Did Meta conceal, suppress, or omit a fact?

   _____ Yes   _____ No

78

If your answer to Question 1 is yes, then answer Question 2.

2.  Was the fact Meta concealed, suppressed, or omitted material?

_____ Yes    _____ No

If your answer to Question 2 is yes, then answer Question 3.

3.  Did Meta conceal, suppress, or omit the material fact knowingly?

_____ Yes    _____ No

 If your answer to Question 3 is yes, then answer Question 4.

4.  Did Meta conceal, suppress, or omit the material fact knowingly, with the intent that others would rely on Meta's concealment, suppression, or omission?

_____ Yes    _____ No

If your answer to Question 4 was yes, answer Question 5.

5.  Did Meta conceal, suppress, or omit a material fact knowingly, with the intent that others would rely on Meta's concealment, suppression, or omission in connection with the sale or advertisement of merchandise?

_____ Yes    _____ No

6.  If you answered yes to each of the foregoing questions as to the Eighth Claim (Material Omissions), what were the number of violations proved: _____

    and what is the penalty amount per violation that should be applied (not to exceed $10,000 for the first violation and not to exceed $20,000 for each subsequent violation): $_____.

As to the Violation of Other Laws, in answering each question below, you must assess whether New Jersey has met its burden of proving its claim by a preponderance of the evidence:

1.  Did Meta engage in a commercial practice that violated the First Claim (Violations of COPPA)?

    *If you answered YES as to Questions 1 and/or 2 as to the First Claim, your answer must be YES.*

_____ Yes    _____ No

**Meta's Proposed Special Verdict Form**

**Verdict Form 1**

In answering each question below, you must assess whether the States have proven the answers to these questions by a preponderance of the evidence.  In answering these questions, you should not consider any conduct occurring before October 24, 2019.

*For Facebook*

1.  Was Facebook a "general audience" service?

    _____ Yes _____ No

    *If the answer to Question 1 is "No," proceed to Question 2.*

    *If the answer to Question 1 is "Yes," proceed to Question 4.*

2.  Was Facebook a "mixed audience" service?

    _____ Yes _____ No

    *If the answer to Question 2 is "No," proceed to Question 3.*

    *If the answer to Question 2 is "Yes," proceed to Question 4.*

3.  Was Facebook (or a portion of Facebook) targeted to individuals under age 13 as its primary audience?

    _____ Yes _____ No

    *Proceed to Question 4.*

4.  Did Meta have actual knowledge that it was collecting or maintaining personal information, through Facebook, from specific individuals under age 13?

    _____ Yes _____ No

    *If the answer to Question 4 is "No," proceed to Question 1 regarding Instagram.*

    *If the answer to Question 4 is "Yes," proceed to Question 5.*

5.  Did Meta delete the personal information using reasonable measures to protect against unauthorized access to, or use of, the personal information in connection with its deletion?

    _____ Yes _____ No

80

*Proceed to Question 1 regarding Instagram.*

**For Instagram**

1. Was Instagram a "general audience" service?

   _____ Yes _____ No

   *If the answer to Question 1 is "No," proceed to Question 2.*

   *If the answer to Question 1 is "Yes," proceed to Question 4.*

2. Was Instagram a "mixed audience" service?

   _____ Yes _____ No

   *If the answer to Question 2 is "No," proceed to Question 3.*

   *If the answer to Question 2 is "Yes," proceed to Question 4.*

3. Was Instagram (or a portion of Instagram) targeted to individuals under age 13 as its primary audience?

   _____ Yes _____ No

   *Proceed to Question 4.*

4. Did Meta have actual knowledge that it was collecting or maintaining personal information, through Instagram, from specific individuals under age 13?

   _____ Yes _____ No

   *If the answer to Question 4 is "No," proceed to Verdict Form 2.*

   *If the answer to Question 4 is "Yes," proceed to Question 5.*

5. Did Meta delete the personal information using reasonable measures to protect against unauthorized access to, or use of, the personal information in connection with its deletion?

   _____ Yes _____ No

   *Proceed to Verdict Form 2.*

81

**Verdict Form 2**

In answering each question below, you must assess whether the States have proven the answers to these questions by a preponderance of the evidence.  When these questions refer to "Meta," they are referring to the operations of both Facebook and Instagram.

**First Challenged Statement:**

1.  Did Meta make the following statement?

    ***[Add Alleged False or Misleading Statement]***

    _____ Yes _____ No

    *If the answer to Question 1 is "No," proceed to Question 1 regarding the Second Challenged Statement.*

    *If the answer to Question 1 is "Yes," proceed to Question 2.*

2.  Was the statement a statement of fact?

    _____ Yes _____ No

    *Proceed to Question 3.*

3.  Was the statement viewable by or available to the public?

    _____ Yes _____ No

    *Proceed to Question 4.*

4.  Was the statement directed at consumers?

    _____ Yes _____ No

    *Proceed to Question 5.*

5.  Did the statement concern Meta's goods or services?

    _____ Yes _____ No

    *Proceed to Question 6.*

6.  Was the statement false or misleading at the time it was made?

    _____ Yes _____ No

*Proceed to Question 7.*

7.  Was the statement material?

    _____ Yes _____ No

*Proceed to Question 8.*

8.  Did the statement have a significant impact on the public?

    _____ Yes _____ No

*Proceed to Question 8.*

9.  Did Meta act intentionally when it made the statement?

    _____ Yes _____ No

*Proceed to Question 10.*

10. Did Meta act knowingly when it made the statement?

    _____ Yes _____ No

*Proceed to Question 11.*

11. Did Meta act recklessly when it made the statement?

    _____ Yes _____ No

*Proceed to Question 12.*

12. Did Meta act with gross negligence when it made the statement?

    _____ Yes _____ No

*Proceed to Question 13.*

13. How many individuals viewed the statement

    in California?        _____

    in Colorado?         _____

    in Kentucky?         _____

    in New Jersey?       _____

83

*Proceed to Question 1 regarding the Second Challenged Statement.*


**Second Challenged Statement:**

. . .

84

**Verdict Form 3**

In answering each question below, you must assess whether the States have proven the answers to these questions by a preponderance of the evidence.  When these questions refer to "Meta," they are referring to the operations of both Facebook and Instagram.

**First Challenged Practice:**

1.  Did Meta engage in *[Add Alleged Unfair Practice]*?

    _____ Yes _____ No

    *If the answer to Question 1 is "No," proceed to Question 1 regarding the Second Challenged Practice.*

    *If the answer to Question 1 is "Yes," proceed to Question 2.*

2.  Did the *[Add Alleged Unfair Practice]* arise in a contractual context?

    _____ Yes _____ No

    *If the answer to Question 2 is "No," proceed to Question 3.*

    *If the answer to Question 2 is "Yes," proceed to Question 2a.*

    2a.    Did the *[Add Alleged Unfair Practice]* involve a misuse of Meta's superior resources or bargaining power to enforce grossly unfair terms or conditions?

    _____ Yes _____ No

    *Proceed to Question 3.*

3.  Did *[Add Alleged Unfair Practice]* cause harm to consumers?

    _____ Yes _____ No

    *If the answer to Question 3 is "No," proceed to Question 4.*

    *If the answer to Question 3 is "Yes," proceed to Question 3a.*

    3a.    Did the harm to consumers caused by *[Add Alleged Unfair Practice]* outweigh the utility of the conduct?

    _____ Yes _____ No

    *Proceed to Question 4.*

85

4. Did the *[Add Alleged Unfair Practice]* depart from standards of good faith, honesty in fact and fair dealing in the public marketplace?

_____ Yes _____ No

*Proceed to Question 5.*

5. Did the practice have a significant impact on the public?

_____ Yes _____ No

*Proceed to Question 6.*

6. Did Meta act intentionally?

_____ Yes _____ No

*Proceed to Question 7.*

7. Did Meta act knowingly?

_____ Yes _____ No

*Proceed to Question 8.*

8. Did Meta act recklessly?

_____ Yes _____ No

*Proceed to Question 9.*

9. Did Meta act with gross negligence?

_____ Yes _____ No

*Proceed to Question 10.*

10. How many teenage individuals used the *[Add Alleged Unfair Feature]*

in California? _____

in Colorado? _____

in Kentucky? _____

in New Jersey? _____

86

**Second Challenged Practice:**

. . .

87

**Meta's Objections to the States' Special Verdict Form**

***Deceptive Practices Claims.***  The States' proposed verdict form on state law deceptive practices fails to require any finding as to whether any particular statement was false or misleading. Instead, the States propose only a conclusory response as to whether Meta "ma[d]e a statement" that was false or misleading—without any separate finding as to any individual statement.  This approach ignores the AGs' obligation to prove that *each* individual at-issue statement is false or misleading.  And it would thwart the role of the advisory jury by leaving the Court to guess which statements (or how many statements) the jury deemed false or misleading.  Likewise, under the States' approach, the advisory jury would be asked to state "the number of violations proved," without any way for the Court to assess the basis for the jury's determination.  Just as problematic, the jury would be asked to provide a penalty amount "per violation" without any findings that would assist the Court in assessing the basis for that conclusion.

***Unfair Practices Claims.***  The States' proposed verdict form on state law unfair practices suffers from the same fundamental flaw.  For each of these claims, the advisory jury would simply answer whether Meta "engage[d] in" *any* unfair act or practice.  The advisory jury would not be asked to specify which of the at-issue features it found to be unfair; and the Court would be left to guess at that question.  This undermines the purpose of the advisory jury because, under the States' proposal, the Court would not be provided feature-by-feature findings to guide its Findings and Conclusions.  Likewise, as with deceptive practices, the States' approach does not ask the advisory jury to provide the basis for the number of violations (e.g., how may at-issue features it reflects) and per-violation penalty, leaving the Court no way to know how the jury reached those numbers.

***COPPA Claim.***  The States' proposed verdict form on COPPA fails to ask the advisory jury for findings on several necessary elements.  First, in contrast to Meta's proposed verdict form, the States' proposal does not ask for a finding on whether Meta's platforms are "general

88

audience" or "mixed audience" services.  Answers to these questions would be essential in helping the Court make its Findings and Conclusions.  Second, the States' proposed verdict form fails to acknowledge the statute of limitations, and thus would permit findings by the advisory jury based on conduct outside the four-year limitations period.  *See* 28 U.S.C. § 1658; *Alaska v. Express Scripts, Inc.*, 774 F. Supp. 3d 1150, 1162 (D. Alaska 2025) (*nullum tempus* doctrine "does not—and, under the Supremacy Clause, could not—insulate the State from statutes of limitations applicable to federal laws").   Third, unlike Meta's proposed verdict form, the States' proposal does not seek a finding on whether Meta deleted personal information using reasonable measures, to the extent the advisory jury finds Meta had actual knowledge that it was collecting or maintaining a child's personal information.  16 C.F.R. § 312.10.

89

**State AG's Objections to Meta's Verdict Form Brief**

The State AG's object to Meta's inclusion of a brief in connection with its proposed verdict forms, as such a submission directly contravenes the Court's Standing Order. Part 3.j governs the procedure for verdict forms and authorizes only the filing of proposed forms when the parties are unable to reach agreement; it does not permit briefing, position statements, or other argumentative materials. Any such briefing is also premature, as the form of the verdict should follow - and will be dictated by - the Court's finalized jury instructions. Meta's submission is improper, unauthorized, and outside the scope of the Court's prescribed procedure, it should be stricken and should not be considered.

90