# Exhibit D

PURSUANT TO PROTECTIVE ORDER

Page 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN RE: SOCIAL MEDIA                  )
ADOLESCENT ADDICTION/PERSONAL        )
INJURY PRODUCTS LIABILITY            ) MDL No. 3047
LITIGATION                           )
_____ )
THIS DOCUMENT RELATES TO:            )
ALL ACTIONS                          )

   SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES – SPRING STREET
                  COURTHOUSE

COORDINATION PROCEEDING        )
SPECIAL TITLE [RULE 3.400]     ) Lead Case No.
                               ) for Filing
SOCIAL MEDIA CASES             ) Purposes
_____) 22STCV21355

         MONDAY, DECEMBER 16, 2024

   CONFIDENTIAL - ATTORNEYS' EYES ONLY -
        PURSUANT TO PROTECTIVE ORDER
                  - - -

         Videotaped deposition of George
Volichenko, held at the offices of Lieff
Cabraser Heimann & Bernstein, LLP, 275
Battery Street, 29th Floor, San Francisco,
California, commencing at 9:05 a.m. Pacific
Time, on the above date, before Carrie A.
Campbell, Registered Diplomate Reporter,
Certified Realtime Reporter, Illinois,
California & Texas Certified Shorthand
Reporter, Missouri, Kansas, Louisiana & New
Jersey Certified Court Reporter.
                  - - -

Job No. 7053449

PURSUANT TO PROTECTIVE ORDER

Page 74

QUESTIONS BY MR. WARREN:

Q.     Okay.  Very well.

So let me reask some questions now that that's clarified, and thank you for clarifying it.

In the course of your work on problematic use with the mental well-being team, did actual or potential lawsuits about social media addiction come up?

MR. CHAPUT:  Object to the form.

THE WITNESS:  Yes.  I was made aware of a, you know, a high chance of lawsuits coming up by my management in kind of one-on-one meetings and conversations.

QUESTIONS BY MR. WARREN:

Q.     Okay.  And can you tell me with who those conversations were with?

A.     Yeah.  It was with my manager. His name is ████ █████████████, with an apostrophe after the D.

Q.     Okay.  And what did he say about potential litigation?

A.     He said that -- he said that

Page 75

part of the reason why our work is so important is that, you know, we are likely going to be facing litigation, and we need to present that we're, like, doing something about it, right?  That we're actually trying to tackle these issues by launching features, by, you know, doing analysis and all that stuff.

(Volichenko Exhibit 1 marked for identification.)

QUESTIONS BY MR. WARREN:

Q.    Okay.  Let me show you the first exhibit of the day.  We're going to mark this Volichenko 1.

MS. KRAMER:  Take your time.

THE WITNESS:  Yeah.  Okay.

QUESTIONS BY MR. WARREN:

Q.    I'm going to start with a very easy question.

A.    Okay.

Q.    Have you seen this document before?

A.    Yes, I believe I have.

Q.    Okay.  And for the record, this is a document with the Bates stamp ending in

PURSUANT TO PROTECTIVE ORDER

Page 160

So at the very least, they want to show that they're doing stuff to launch features.

We had a separate team doing, like, media for all these features that we launched, just to make it, like, more public.

QUESTIONS BY MR. WARREN:

Q.      George, did you feel like your job was to build features as a defense to potential litigation rather than to actually help the safety and health of teenagers?

MR. CHAPUT:  Object to form.

THE WITNESS:  Yes, I did.

QUESTIONS BY MR. WARREN:

Q.      And is that why you ultimately quit?

MR. CHAPUT:  Object to the form.

THE WITNESS:  That was a major factor; not the only one.

QUESTIONS BY MR. WARREN:

Q.      How much were you paid at the time you were working there?

A.      So I had about 210, 210,000, in