Ashley M. Simonsen, SBN 275203
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

*Attorneys for Defendants Meta Platforms, Inc.
f/k/a Facebook, Inc. and Instagram, LLC*

[Additional counsel listed on signature pages]

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION <br><br> THIS FILING RELATES TO: <br><br> *People of the State of California, et al. v. Meta Platforms, Inc. et al.* | MDL No. 3047 <br><br> Case Nos. 4:22-md-03047-YGR-PHK <br> 4:23-cv-05448-YGR <br><br> **META'S MOTION *IN LIMINE* NO. 1 TO PRECLUDE EVIDENCE OR ARGUMENT RELATED TO META'S ALLEGED OMISSION OR FAILURE TO WARN OF INFORMATION** <br><br> Judge: Hon. Yvonne Gonzalez Rogers <br> Magistrate Judge: Hon. Peter H. Kang <br><br> Date: June 26, 2026 <br> Time: 8:00 AM <br> Place: Courtroom 1, 4th Floor |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT, at 8:00 AM on June 26, 2026, before the Honorable Yvonne Gonzalez Rogers, in Courtroom 1, Floor 4, of the United States District Court, Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Meta will and hereby does move this Court, under the Federal Rules of Evidence, for an order excluding evidence and argument at trial as described in the accompanying Memorandum of Points and Authorities. This Motion is based on this Notice, the accompanying Memorandum, any other papers submitted in connection with the Motion, the accompanying Declaration of Ashley M. Simonsen and the exhibits thereto, and any other matters presented at the time of the hearing.

DATED: June 9, 2026                              Respectfully submitted,


                                                 By: /s/ Ashley M. Simonsen

                                                 Ashley M. Simonsen (SBN 275203)
                                                 COVINGTON & BURLING LLP
                                                 1999 Avenue of the Stars
                                                 Los Angeles, CA 90067
                                                 Telephone: (424) 332-4800
                                                 Facsimile: + 1 (424) 332-4749
                                                 Email: asimonsen@cov.com

                                                 *Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc. and Instagram, LLC*

                                                 *[Additional counsel listed on signature pages]*

META'S MOTION IN LIMINE NO. 1 TO PRECLUDE EVIDENCE OR ARGUMENT RELATED TO META'S ALLEGED OMISSION OR FAILURE TO WARN OF INFORMATION
4:22-md-03047-YGR-PHK | 4:23-cv-05448-YGR

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

I.      None of the Purportedly Omitted Information Is Directly Related to or Contradicts the Alleged Misstatements............................................................................................ 3

II.     Neither Generalized Statements About Safety Nor the AGs' "Deceptive Scheme" Theory Render Omission Evidence Relevant.......................................................... 6

III.    Omissions Evidence Would Confuse the Issues and Suggest Decision on an Improper Basis. ...................................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilar v. Int'l Longshoremen's Union Local #10,*
966 F.2d 443 (9th Cir. 1992) ...................................................................................................11

*Ahern v. Apple Inc.,*
411 F. Supp. 3d 541 (N.D. Cal. 2019) .............................................................................3, 5, 7, 9

*Apodaca v. Whirlpool Corp.,*
2013 WL 6477821 (C.D. Cal. Nov. 8, 2013)..............................................................................7

*Azoulai v. BMW of N. Am. LLC,*
2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) ............................................................................7

*Baton v. Ledger SAS,*
740 F. Supp. 3d 847 (N.D. Cal. 2024) .......................................................................................4

*Beyer v. Symantec Corp.,*
333 F. Supp. 3d 966 (N.D. Cal. 2018) .......................................................................................7

*Dandy v. Ethicon, Inc.,*
2023 WL 2714072 (D.N.J. Mar. 30, 2023)...............................................................................10

*Daugherty v. Am. Honda Motor Co.,*
144 Cal. App. 4th 824 (2006) ....................................................................................................3

*DotStrategy Co. v. Facebook Inc.,*
2020 WL 6591366 (N.D. Cal. Nov. 11, 2020) ...........................................................................6

*DotStrategy Co. v. Twitter Inc.,*
476 F. Supp. 3d 978 (N.D. Cal. 2020) .......................................................................................6

*Elias v. Hewlett-Packard Co.,*
950 F. Supp. 2d 1123 (N.D. Cal. 2013) .....................................................................................9

*Giddings & Lewis, Inc. v. Indus. Risk Insurers,*
348 S.W.3d 729 (Ky. 2011) .......................................................................................................9

*In re Google RTB Consumer Priv. Litig.,*
2024 WL 2242690 (N.D. Cal. Apr. 4, 2024) ...........................................................................10

*Hodsdon v. Mars, Inc.,*
891 F.3d 857 (9th Cir. 2018) ............................................................................................ *passim*

*Jones v. Corus Bankshares, Inc.,*
701 F. Supp. 2d 1014 (N.D. Ill. 2010) .......................................................................................8

iv

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ........................................................................................9

*Krystofiak v. BellRing Brands, Inc.*,
    737 F. Supp. 3d 782 (N.D. Cal. 2024) ...........................................................................4

*Lam v. General Mills, Inc.*,
    859 F. Supp. 2d 1097 (N.D. Cal. 2012) .........................................................................4

*Long v. Hewlett–Packard Co.*,
    2007 WL 2994812 (N.D. Cal. July 27, 2007)................................................................4

*Old Chief v. United States*,
    519 U.S. 172 (1997)......................................................................................................11

*Ong v. Chipotle Mexican Grill, Inc.*,
    294 F. Supp. 3d 199 (S.D.N.Y. 2018)............................................................................9

*Sciacca v. Apple, Inc.*,
    362 F. Supp. 3d 787 (N.D. Cal. 2019) ................................................................. *passim*

*Shaeffer v. Califia Farms, LLC*,
    44 Cal. App. 5th 1125 (2020) ........................................................................................7

*Sipe v. Countrywide Bank*,
    690 F. Supp. 2d 1141 (E.D. Cal. 2010)..........................................................................8

*Stuart v. Cadbury Adams USA, LLC*,
    2010 WL 11596555 (C.D. Cal. Feb. 3, 2010).................................................................8

*United States v. Condon*,
    720 F.3d 748 (8th Cir. 2013) .......................................................................................10

*Vess v. Ciba–Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) .......................................................................................9

*In re Welding Fume Prods. Liab. Litig.*,
    2010 WL 7699456 (N.D. Ohio June 4, 2010)...............................................................11

*Williams v. Gerber Prod. Co.*,
    552 F.3d 934 (9th Cir. 2008) .........................................................................................8

*Yastrab v. Apple Inc.*,
    173 F. Supp. 3d 972 (N.D. Cal. 2016) ...........................................................................9

**Statutes and Rules**

Fed. R. Evid. 401 ...............................................................................................................1, 3

v

Fed. R. Evid. 402 ...................................................................................................................1

Fed. R. Evid. 403 ...............................................................................................................1, 4

**INTRODUCTION**

Meta moves *in limine* to preclude evidence or argument that it omitted information from its public disclosures, unless those omissions directly relate to or contradict one of the alleged misrepresentations on which the AGs plan to proceed at trial.  The AGs have represented that their "deception claims" are not "based on pure omissions." *See, e.g.*, May 27, 2026 Case Mgmt. Statement, ECF 3066 ("Statement") at 5.  Evidence of omissions unrelated to the claimed misrepresentations is thus irrelevant under Rules 401 and 402 and risks confusing the issues and misleading the jury under Rule 403.

Specifically, Meta moves *in limine* to preclude the following testimony by AG expert Adam L. Alter, AG expert Timothy Estes, AG fact witness Brian Boland, and AG expert Arturo Béjar[1] that Meta allegedly omitted or failed to warn about information or issues not directly related to or contradictory of any alleged misrepresentation, which fall into three general buckets:

*(1) Testimony that Meta failed to disclose the results of internal research:*

- Dr. Alter's testimony that "Meta's decision to promote and publicize the CSER [Community Standards Enforcement Report] metric is in stark contrast to its *decision not to disclose other internal metrics* such as its Bad Experiences and Encounters Framework ('BEEF'), Tracking Reach of Integrity Problems Survey ('TRIPS'), or Negative Experiences Tracking Survey ('NETS') data."  Alter Rpt. ¶ 285.

- Dr. Alter's testimony that "Meta's *decision to withhold* [BEEF survey data] from consumers, while at the same time pushing a highly favorable narrative based on the prevalence metric, has the tendency [to] mislead consumers about the safety of its platforms."  Alter Rpt. ¶ 332.

- Dr. Alter's testimony that "[Meta] *omitted the alarming results* of its internal research on the frequency of harms experienced by large numbers of users."  Alter Rpt. ¶ 285.

- Mr. Béjar's testimony that "Meta *failed to disclose these survey results* and the harms experienced by users to the public.  Meta's lack of transparency by failing to inform the public of its research contributed to harms to kids on Instagram."  Disclosure at 13.

- Mr. Béjar's testimony that "Meta *failed to disclose and warn* about the risk of bullying on Instagram that can lead to mental health issues and suicide."  Disclosure at 12.

---

[1] *See* Ex. A, Trial Report of Adam L. Alter, Ph.D. (ECF 2775-3) ("Alter Rpt."); Ex. B, Trial Report of Timothy Estes ("Estes Rpt."); Ex. C, April 25, 2025 Deposition Transcript of Brian Boland ("Boland Dep. Tr."); Ex. D, AGs' Non-Retained Expert Disclosure ("Disclosure").  All emphases on pages 1–3 are added.

META'S MOTION IN LIMINE NO. 1 TO PRECLUDE EVIDENCE OR ARGUMENT RELATED TO META'S ALLEGED OMISSION OR FAILURE TO WARN OF INFORMATION
4:22-md-03047-YGR-PHK | 4:23-cv-05448-YGR

- Mr. Béjar's testimony that "Meta also is aware that suicide and self-injury content is easily accessed by kids on Instagram, despite its community standards, and *fails to disclose and warn* of that risk." Disclosure at 12.

**(2) *Testimony that Meta failed to disclose information on alleged harms or risks:***

- Dr. Estes's testimony that "Instagram *does not ... alert a parent* or guardian if their child's device spins up a new account or if the child has multiple accounts." Estes Rpt. ¶ 64.

- Mr. Béjar's testimony that "Meta *fails to disclose* that the design of the platform rewards dangerous behavior and encourages young girls to create racy content." Disclosure at 11.

- Mr. Béjar's testimony that "Meta *fails to disclose and warn* that its platforms facilitate grooming, sexual endangerment, child exploitation, and the production, sharing and sale of child sexual abuse material." Disclosure at 11–12.

- Mr. Béjar's testimony that "Meta *fails to disclose and warn* that bullying and harassment on Instagram gets amplified by the platform and is more harmful than bullying offline because online bullying is persistent, amplified, and it lives a much longer period of time." Disclosure at 12.

- "I have seen *no evidence that Meta disclosed these risks* to the public, despite these same documents acknowledging that 'most DM requests are unwanted.'" Estes Rpt. ¶ 62.

- "Meta had internal data and knowledge of the frequency of harms occurring and/or being experienced on its platform by users, including young users, and knew its policies and procedures were not fully effective in eradicating or preventing such harmful experiences, yet *failed to disclose such information*." Alter Rpt. ¶ 2(G)(c).

- Mr. Béjar's testimony that "If Meta knows that kids are at risk of harm from use of its apps, *it should inform users and the public* about the risks." Disclosure at 12–13.

- Mr. Béjar's testimony about "Meta's *disclosure and warning of the risks and harms* on Meta's platforms (or lack thereof), and the need for transparency, and Meta's *concealment of information* about harms on Meta's platforms[.]" Disclosure at 8–9.

- Mr. Béjar's testimony that "Meta *did not publish any internal data* on addiction or problematic use and *did not publicize this risk*." Disclosure at 11.

- Mr. Boland's testimony that Meta "*pulled away from that type of transparency* to something very curated by Meta for their own interests," and describing "disagreement within Meta about whether the company should *disclose certain data* about which content was most viewed on Facebook[.]" Boland Dep. Tr. 234:9–238:22.

**(3) *Testimony that Meta omitted information about U13 use on its platforms:***

- Dr. Alter's testimony that "because Meta's statements [about its age restriction policy] *omit important and highly relevant information* about the extent of improper underage usage of

2

its platform and ineffectiveness of its age enforcement efforts, and therefore provided an overall impression that U13 use is essentially a 'non-issue,' they had the tendency to mislead consumers who might have otherwise acted differently in monitoring their U13's use or ensuring disuse." Alter Rpt. ¶ 384.

- Dr. Estes's testimony that "While Meta denied or downplayed what was happening on their platforms, *internal records indicate a gap* between their public stance ('we don't allow under-13s, problem solved') and private reality ('millions of kids are here and driving our metrics')." Estes Rpt. ¶ 115.

## <u>ARGUMENT</u>

**I.    None of the Purportedly Omitted Information Is Directly Related to or Contradicts the Alleged Misstatements.**

The omission of information is relevant to consumer deception claims only where that information is "contrary to a representation actually made by the defendant." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018) (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006)).[2] The "alleged fraudulent misrepresentation" must "relate[] *directly* to the omitted information." *Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787, 799 (N.D. Cal. 2019) (emphasis added).  For that reason, courts routinely hold that omissions are irrelevant to misrepresentation claims when the omitted information does not expressly contradict what the defendant has said. *See, e.g.*, *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 562 (N.D. Cal. 2019) (partial omissions not actionable where statements about "rigorous testing methods" "ma[de] no representations about anything related to" undisclosed "screen 'smudges'"); *Sciacca*, 362 F. Supp. 3d at 799 ("none of the alleged misrepresentations about" watch features "relate to the 'omitted' information" concerning an alleged defect).  Omissions of unrelated information thus have no "tendency to make" affirmative statements about different topics "more or less" likely to be false or misleading under the consumer protection laws at issue. Fed. R. Evid. 401.  Admitting such evidence would instead confuse

---

[2] Omissions may be relevant when they relate to "a fact the defendant was obliged to disclose." *Daugherty*, 144 Cal. App. 4th at 835; *see* ECF 1214 ("MTD Order") at 36–37 ("declin[ing] to foreclose the States' … failure-to-warn theories" premised on alleged duty to disclose at the pleadings stage "because these novel theories test the boundaries of an area of law in some flux," while noting the Court's "skepticism" of such theories).  However, the AGs have disavowed any theory of consumer deception based on a duty to disclose. *See* AGs' Dec. 16, 2025 Letter Brief Regarding Trial Strategy, ECF 2626 ("Letter Brief") at 3 ("The AGs' deception claims do not impose a duty to disclose[.]").  So that prong is not relevant here.

the issues by inviting the jury to infer liability from omissions that do not contradict any actual representation made by Meta. *See* Fed. R. Evid. 403.

Mere topical overlap between an omission and an alleged misrepresentation does not suffice to render the omission relevant. An omission is not relevant unless Meta "explicitly" referred to and misrepresented the omitted information. *Krystofiak v. BellRing Brands, Inc.*, 737 F. Supp. 3d 782, 791, 799–800 (N.D. Cal. 2024). Thus, in *Krystofiak*, a failure to disclose that the defendants' products "contain[ed] high levels of lead" was irrelevant to a deceptive practices claim when "none" of the alleged misrepresentations "refer[red] to lead or otherwise heavy metals explicitly." *Id.* at 799–800. And when a computer manufacturer did not make "any representation as to the life of its inverters," it did not matter that the manufacturer "failed to disclose that the inverters … were defective." *Long v. Hewlett–Packard Co.*, 2007 WL 2994812, at *8 (N.D. Cal. July 27, 2007), *aff'd* 316 Fed. App'x 585 (9th Cir. 2009); *see also, e.g.*, *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 903 (N.D. Cal. 2024) ("representations regarding the security of [defendant's] hardware wallets do not pertain to the security of [plaintiff's personal identifying information] which was not on the hardware wallet at all"); *Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1103–04 (N.D. Cal. 2012) ("gluten free" label had nothing to do with amounts of "hydrogenated oils" and "sugar or corn-syrup").

None of Meta's purported omissions comes close to the direct contradiction necessary to make omission evidence relevant. The AGs instead rely on free-standing omission evidence, such as testimony that Meta "fails to disclose and warn" about "inappropriate interactions between adults and kids," Disclosure at 11–12 (Béjar), or that "Instagram does not … alert a parent or guardian if their child's device spins up a new account or if the child has multiple accounts," Estes Rpt. ¶ 64. That evidence—and the other purported omissions evidence listed above—does not "relate[] directly," *Sciacca*, 362 F. Supp. 3d at 799, to any of the alleged affirmative misrepresentations that the AGs have placed at issue. Such evidence of information Meta purportedly failed to disclose is not "contrary to a representation actually made," *Hodsdon*, 891 F.3d at 861, and instead goes to a theory of liability based on Meta's nondisclosure alone—a theory the AGs have expressly disclaimed, *see* Statement at 5; Letter Brief at 3. That wide-ranging omissions "evidence is not relevant to the more narrow issues to be tried" in this case about the

4

affirmative statements Meta made, and whether those statements were false or misleading. *See Apple iPod iTunes Antitrust Litig.*, 2014 WL 12719192, at *3 (N.D. Cal. Nov. 18, 2014) (Gonzalez Rogers, J.) (excluding "evidence of [defendant's] profitability at the corporate level or as to non-relevant products" because "[s]uch evidence is not relevant to the more narrow issues to be tried"); *see* ECF 118-1 ("AGs' Opening-Answering Brief on Appeal") at 22, 79, *Cal. v. Meta Platforms Inc.*, No. 24-703 (9th Cir. June 23, 2025) (AGs' deception claims "require only that Meta address its *own* statements") (emphasis added).

Illustrating the point, the AGs contend that statements in Meta's CSERs "reporting on prevalence numbers" are untrue and misleading. *See, e.g.*, Stat. No. 83. Those statements describe measurements of the frequency of content that violates Meta's Community Standards. *See, e.g.*, Stat. No. 5 ("We care most about how often content *that violates our standards* is actually seen.") (emphasis added). The AGs seek to prove that those statements are misleading based on the fact that Meta failed to disclose an entirely different set of measurements under the Bad Experiences and Encounters Framework ("BEEF"). *See, e.g.*, Alter Rpt. ¶ 332 ("Meta's decision to withhold" BEEF survey data "has the tendency [to] mislead consumers about the safety of its platforms."); Disclosure at 13 (Béjar) ("Meta failed to disclose [BEEF] survey results and the harms experienced by users to the public.").

The statements about CSER do not address BEEF at all—they make representations only about the "frequency at which content that violates our Community Standards was viewed," as defined by Meta. Stat. No. 6. That is, CSER measures the prevalence of content that violates specifically defined and objective policies. BEEF is an entirely different measurement of subjective "bad experiences" as reported by users. *See* Alter Rpt. ¶ 320. In some instances, these bad experiences are defined in sweepingly broad ways that expand well beyond policy-violating material. In other words, the BEEF data do not "relate[] directly" to a statement Meta actually made (about CSER), *Sciacca*, 362 F. Supp. 3d at 799, nor is the BEEF data "contrary to a representation actually made," *Hodsdon*, 891 F.3d at 861. Because the CSER data is measuring a different metric from BEEF, Meta's non-disclosure of BEEF data has no tendency to prove that Meta's statements about CSER were actionable misrepresentations. Put differently, the AGs cannot use this evidence to prove "what is false or misleading about these [CSER] statements, which make no representations about anything related to" BEEF data. *Ahern*, 411 F. Supp. 3d at 562.

Likewise, the AGs purport to challenge statements by Meta describing the company's policy that "[w]e do not allow people under 13 to have a Facebook account"; that "[i]f kids are under 13, they're not allowed on Instagram"; and that "[i]f we detect that someone might be under the age of 13, even if they lied, we kick them off." Stat. Nos. 3, 24, 36. The AGs seek to prove these statements false by citing evidence of "improper underage usage" of Meta's services, Alter Rpt. ¶ 384, or that "kids" allegedly "driv[e] [Meta's] metrics," Estes Rpt. ¶ 115. But the purported *existence* of underage users on Meta's services does not "relate[] directly" to statements about Meta's policy *prohibiting* underage users, *Sciacca*, 362 F. Supp. 3d at 799. Evidence that users lie about their age and are able to evade Meta's policy is not "contrary to a representation actually made" about the existence of that policy or what it says. *Hodsdon*, 891 F.3d at 861; *see, e.g.*, *DotStrategy Co. v. Facebook Inc.*, 2020 WL 6591366, at *7 (N.D. Cal. Nov. 11, 2020) (Alsup, J.) (evidence that "not all users on Facebook [] adhere to Facebook's authenticity policy" prohibiting fake accounts did not render statements describing that policy misleading); *DotStrategy Co. v. Twitter Inc.*, 476 F. Supp. 3d 978, 983 (N.D. Cal. 2020) (Breyer, J.) (evidence that some Twitter users "use the platform to disseminate spam, violate Twitter's terms of service, or otherwise qualify as 'fake' despite being human" did not contradict statements of Twitter's policy prohibiting fake accounts).

## II.   Neither Generalized Statements About Safety Nor the AGs' "Deceptive Scheme" Theory Render Omission Evidence Relevant.

Given the AGs' concessions that they do not advance failure-to-warn claims and that their "deception claims [are not] based on pure omissions," Statement at 5, the Court should exclude the evidence above, purporting to show that Meta failed to disclose risks or harms from its services. *See, e.g.*, Alter Rpt. ¶ 285 (Meta "omitted … internal research on the frequency of harms"); Disclosure at 11 (Béjar) ("Meta fails to disclose that the design of the platform rewards dangerous behavior"); *id*. at 11–12 ("Meta fails to disclose and warn that its platforms facilitate grooming, sexual endangerment, child exploitation"); *id.* at 12 ("Meta fails to disclose and warn that bullying and harassment on Instagram gets amplified").

The AGs will presumably argue that this evidence is relevant as proof that Meta's generalized statements about its aspirations and objectives to provide a safe and positive experience are

misrepresentations.[3] But those generalized statements cannot be a basis for introducing wide-ranging evidence related to purported harms from Meta's services. Such broad, aspirational statements are "not likely to deceive a reasonable consumer and [therefore] cannot undergird a claim based on a material omission." *Ahern*, 411 F. Supp. 3d at 562; *see also Apodaca v. Whirlpool Corp.*, 2013 WL 6477821, at *8 (C.D. Cal. Nov. 8, 2013) ("reliability and durability representations" are "too general for Defendant[s] to incur a duty to disclose").

"A misrepresentation must be a 'specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact.'" *Beyer v. Symantec Corp.*, 333 F. Supp. 3d 966, 976 (N.D. Cal. 2018) (citation omitted). That requirement forecloses the AGs' attempt to use Meta's generalized statements about prioritizing safety as a vehicle for introducing wide-ranging evidence about undisclosed internal data, policies, or design choices. Because "there is nothing 'specific and measurable' about the word 'safely,'" omissions about a wide array of topics—from age verification to design features to content moderation—do not bear on the truth or falsity of these generalized safety statements. *See Azoulai v. BMW of N. Am. LLC*, 2017 WL 1354781, at *8 (N.D. Cal. Apr. 13, 2017); *accord* MTD Order at 39 ("In isolation, characterizing Instagram as 'safe and supportive' hardly resembles a 'specific and measurable' statement of fact") (citation omitted). And "a reasonable consumer is unlikely to make the series of inferential leaps" it would take to interpret Meta's general statements about safety to concrete representations about specific information that Meta purportedly failed to disclose. *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1139 (2020).

At the pleadings stage, this Court noted that "puffery can be actionable when the defendant knows facts that make[] the *at-issue statement* deceitful." MTD Order at 39 (emphasis added). But undisclosed

---

[3] *E.g.*, Stat. No. 1 ("Making the community a safer place, a place where people feel good, is a huge priority for Instagram"); Stat. No. 8 ("We've been focused on well-being broadly, … it's our number one priority"); Stat. No. 13 ("We also have to keep people safe and give them control over their experience on our apps."); Stat. No. 14 ("While we continue to invest in helping businesses, we are equally focused on keeping our platforms safe."); Stat. No. 53 ("We work tirelessly to put in place the right policies, products and precautions so they have a safe and positive experience."); Stat. No. 60 ("At Instagram, we've been working for a long time to keep young people safe on the app."); Stat. No. 72 ("We want teens to have a safe, age-appropriate experience[] on our apps."); Stat. No. 78 ("We care deeply about the safety of the people who use our apps.").

facts cannot render a statement deceitful unless those facts are "contrary" to assertions made. *See Hodsdon*, 891 F.3d at 861. Indeed, in *Jones v. Corus Bankshares, Inc.*, a securities fraud case this Court cited for the above proposition, the court observed that puffery may be actionable when it "reinforce[s] factual misstatements." 701 F. Supp. 2d 1014, 1027–28 (N.D. Ill. 2010). The Court also cited *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939 n.3 (9th Cir. 2008), for the proposition that puffery can be actionable "in context," but in that case the puffery—that a snack was "nutritious"—was on the same packaging alongside specific misrepresentations of fact.

Here, the context is entirely different. Even assuming that Meta's generalized aspirations for a safe environment could be actionable, evidence that Meta purportedly "omitted … internal research on the frequency of harms," Alter Rpt. ¶ 285, or supposedly "fails to disclose that the design of the platform rewards dangerous behavior" or "facilitate[s] … sexual endangerment" and "bullying and harassment," Disclosure at 11–12 (Béjar), is not "contrary to a representation actually made," *Hodsdon*, 891 F.3d at 861—namely, that Meta's goal and objective is to provide a safe experience. Such evidence of purportedly omitted information about harms on Meta's services does not "relate[] directly" to Meta's aspirational statements and therefore should be excluded as not relevant to the AGs' misrepresentation claims. *Sciacca*, 362 F. Supp. 3d at 799.

Nor can the AGs introduce evidence of unrelated omissions by invoking their allegations of a "deceptive scheme," or the purported "widespread and pervasive nature" of Meta's alleged misstatements. ECF 2972 at 1. Although the Court construed the AGs' Complaint liberally at the motion-to-dismiss stage to allege "a scheme *to hide* a variety of objective risks to user safety and well-being," MTD Order at 40 (emphasis added), the AGs have now expressly disclaimed any intent to proceed on an omissions or failure-to-warn theory—which would include a theory that Meta engaged in a scheme to "hide" information about the purported harms or risks of using its services. *See* Statement at 5; Letter Brief at 3.

Even if the AGs did "describe[] a scheme to mislead customers," *Stuart v. Cadbury Adams USA, LLC*, 2010 WL 11596555, at *2 (C.D. Cal. Feb. 3, 2010), they must still establish "details on the specific misrepresentation[s] involved in the fraudulent scheme," *Sipe v. Countrywide Bank*, 690 F. Supp. 2d 1141, 1157 (E.D. Cal. 2010). Specifically, the AGs' deception claims require proof that *each* affirmative

8

statement was untrue or misleading:  they must prove that "Meta made a statement" that was "untrue or misleading," ECF 2313-1 (Preliminary Proposed Jury Instructions) at 16–17 (Cal. Unfair Competition Law), or that "Meta . . . made a false representation," *id.* at 21 (Colo. Consumer Protection Act). *See also id.* at 80 (similar for Ky. Consumer Protection Act), 108–09 (similar for N.J. Consumer Fraud Act).  As this Court has recognized, those "requirement[s] exist[]" for every statement." Apr. 15, 2026 Hr'g Tr. at 17:22.  The AGs' sweeping claims that Meta "engaged in a fraudulent course of conduct" thus do not excuse their obligation to explain what Meta "specifically stated" and "why the statement is false or misleading." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009); *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).  *See also Ong v. Chipotle Mexican Grill, Inc*., 294 F. Supp. 3d 199, 232 (S.D.N.Y. 2018) ("such logic is circular: Defendants would only have such duty [to disclose] if the statements were themselves misleading absent further disclosure").

Because the AGs must explain "what is false or misleading" about each "explicit representation" with "specificity," any omissions evidence must specifically relate to and contradict the alleged misrepresentation to be relevant. *Yastrab v. Apple Inc*., 173 F. Supp. 3d 972, 978 (N.D. Cal. 2016). Vague, aspirational statements about Meta's desire "to make our platforms better" and "minimize the bad and maximize the good," Stat. No. 40, are not contradicted by Meta's internal research on the individualized experiences of Instagram users, which should therefore be excluded. *Cf. Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1134 (N.D. Cal. 2013) ("combination of several" nonactionable statements "does not automatically create an actionable misrepresentation"); *Ahern*, 411 F. Supp. 3d at 557–58 (otherwise non-actionable statements do not "become actionable because they contribute to a 'deceptive context' of advertising").

**III.    Omissions Evidence Would Confuse the Issues and Suggest Decision on an Improper Basis.**

Deception by omission and deception by affirmative misrepresentation are distinct theories governed by different legal standards, and proven by different types of evidence. *E.g.*, *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011) ("Fraud by omission is not the same, at law, as fraud by misrepresentation, and has substantially different elements" because fraud by omission "is grounded in a duty to disclose.").  The AGs should not be able to introduce vast swaths of irrelevant

9

evidence about things Meta knew but did not publish to the world, when they have disclaimed a theory of liability premised on a duty to disclose. Letter Brief at 3; *see Dandy v. Ethicon, Inc.*, 2023 WL 2714072, at *3 (D.N.J. Mar. 30, 2023) (granting motion to exclude opinion that defendant "did not properly warn of risks … [g]iven that the Court has already dismissed Plaintiff's failure to warn claim"). Rather, evidence of omissions should be limited to those which directly relate to and contradict Meta's affirmative statements. *See supra* p. 3. Otherwise, Meta's purported omissions are not relevant and would prejudice Meta by suggesting to the jury that Meta may be held liable on a misrepresentation theory for failing to disclose information unrelated to the affirmative statements at issue.

Further, whatever limited probative value this evidence has is outweighed by the risk of confusing the jury into imposing liability on Meta for omissions untethered to its alleged misstatements. *See, e.g.*, *United States v. Condon*, 720 F.3d 748, 757 (8th Cir. 2013) (affirming the trial court's exclusion of evidence that could "confuse or mislead the jury" with respect to key legal issues). For instance, testimony that "Meta fails to disclose that the design of the platform . . . encourages young girls to create racy content," Disclosure at 11 (Béjar), implies that the AGs' deception claims impose liability on Meta for the failure to disclose that information. But the AGs' claims center around Meta's affirmative statements, not information on a smattering of topics that Meta supposedly should have disclosed to the public. *See* AGs' Opening-Answering Brief on Appeal at 79 (AGs' deception claims "require only that Meta address its own statements.").

This Court has repeatedly held that experts cannot "speculate as to someone's state of mind." May 20, 2026 Order on Rule 702 Motions, ECF 3068 at 3 (excluding Dr. Alter's opinions that "improperly speak[] to Meta's state of mind"). Omissions evidence of the sort the AGs seek to introduce is an end-run around that bar. By opining that Meta "failed to disclose" or "warn" about information, the AGs' experts invite the jury to infer what Meta allegedly knew or wanted to conceal. Allowing such testimony would permit experts to do indirectly what they may not do directly: opine on Meta's knowledge, intent, or motivations under the guise of "omissions." *See In re Google RTB Consumer Priv. Litig.*, 2024 WL 2242690, at *4 (N.D. Cal. Apr. 4, 2024) (Gonzalez Rogers, J.) (excluding opinion that defendant "*knowingly* gives account holders a 'false' expectation of control") (emphasis added). Statements that

10

"warnings are necessary" also "mis-state the applicable legal standards" and would "invade the province of the jury." *In re Welding Fume Prods. Liab. Litig.*, 2010 WL 7699456, at *26 (N.D. Ohio June 4, 2010) (excluding statements about "legal warning requirement" when that was "simply not the correct legal standard"); *see also* Pretrial Order No. 2, No. 23-cv-01804-YGR, ECF 2898 at 3 ("An expert may not draw legal conclusions or instruct the jury on how to decide the case.") (citing *Aguilar v. Int'l Longshoremen's Union Local #10*, 966 F.2d 443, 447 (9th Cir. 1992)).

There is also a substantial risk that the jury would "punish" Meta for the nondisclosure of information about its platforms, which is precisely the sort of improper basis that renders evidence unfairly prejudicial. *See Old Chief v. United States*, 519 U.S. 172, 180 (1997).  For instance, testimony that "Meta had internal data and knowledge" about the effectiveness of its "policies and procedures[,]" "yet failed to disclose such information," creates the impression that Meta owed some legal or moral obligation to disclose that information.  Alter Rpt. ¶ 2(G)(c).  But the AGs do not even attempt to prove that Meta owed a duty to disclose that information—instead, they contend that this atmospheric evidence about "internal" knowledge is relevant to a nebulous "deceptive scheme."  ECF 2972 at 1.  This Court should hold the AGs to their word, and preclude irrelevant, prejudicial evidence about theories not at issue in this trial, and not relevant to those that are at issue.

Respectfully submitted,

DATED: June 9, 2026

COVINGTON & BURLING LLP

By: */s/ Ashley M. Simonsen*
Ashley M. Simonsen, SBN 275203
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Paul W. Schmidt, *pro hac vice*
Timothy C. Hester, *pro hac vice*
COVINGTON & BURLING LLP
One City Center

11

850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pschmidt@cov.com
thester@cov.com

*Attorneys for Defendants Meta Platforms, Inc.
f/k/a Facebook, Inc. and Instagram, LLC*

12