# Filed Under Seal

# Exhibit C

CONFIDENTIAL

Page 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN RE: SOCIAL MEDIA               )
ADOLESCENT ADDICTION/             )
PERSONAL INJURY PRODUCTS          )  MDL No. 4:22-md-3047-YGR
LIABILITY LITIGATION              )
_____)

SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE
COUNTY OF LOS ANGELES - SPRING STREET COURTHOUSE

COORDINATION PROCEEDING           )
SPECIAL TITLE [RULE 3.400]        )
                                  )
SOCIAL MEDIA CASES                )   Lead Case No.
_____)   22STCV21355
This Document Relates To          )
                                  )
STATE OF TENNESSEE, ex rel.       )
JONATHAN SKRMETTI,                )
ATTORNEY GENERAL and              )
REPORTER,                         )
v.                                )
META PLATFORMS, INC., and         )
INSTAGRAM, LLC.                   )
Case No. 23-1364-IV               )
_____)

CONFIDENTIAL – PURSUANT TO PROTECTIVE ORDER

VIDEOTAPED DEPOSITION OF BRIAN BOLAND
APRIL 25, 2025
(Pages 1 - 422)
9:18 a.m. to 7:18 p.m.
Zuckerman Spaeder
2100 L Street, NW, Washington, DC 20037

Reported By: Amanda Blomstrom, RMR, CRR, and
CSR TX #8785/CA #12681/IL #84-3634

CONFIDENTIAL

Page 234

right?

A.    That is correct.

Q.    And that's a picture of you right up front, right?

A.    It is.

Q.    All right.  Are you familiar with this article?

A.    Very.

Q.    Okay.  And is it accurate that this article relates to a disagreement within Meta about whether the company should disclose certain data about which content was most viewed on Facebook?

MR. SNEED:  Object to form.

THE WITNESS:  It is.

BY MS. SINGER:

Q.    And on Page 2, if you look about a third of the way down, the paragraph beginning "On one side were executives ..."

A.    I see it.

Q.    Okay.

"On one side were executives, including Silverman and Brian Boland, a Facebook vice president

Page 235

in charge of partnerships strategy, who argued that Facebook should publicly share as much information as possible about what happens on its platform - good, bad, or ugly."

Now, who -- who is -- who is Brandon Silverman?

A.    Brandon Silverman was the cofounder and CEO of CrowdTangle when it was acquired, and continued to lead CrowdTangle's product and operations and sales teams while they were inside of Facebook.

Q.    Okay.  And does this article accurately represent the position that you and Brandon Silverman took about publicly sharing as much information as possible about content on Facebook's platform?

A.    It does.

Q.    And why do you think Facebook should share as much information as possible about what happens on its platform?

A.    I believe that, at the scale that Facebook operates, that it has a special level of influence on society.  At the same time, it is of such, not only

CONFIDENTIAL

Page 236

importance but complexity in the way that it could impact broad groups of diverse users. And trying to understand that alone felt impossible to me.

That in partnership with society broadly, that sharing more data would enable more bright minds to help Facebook be a better influence on society.

Q.    If you read down to the next paragraph, it says, "On the other side were executives, including the company's chief marketing officer and vice president of analytics, Alex Schultz, who worried that Facebook was already giving away too much."

Is it accurate -- are you familiar with whether Alex Schultz took a position against the disclosure of this kind of content information?

MR. SNEED:  Object to form.

THE WITNESS:  Yes, he did.

BY MS. SINGER:

Q.    And how do you know that?

A.    I had seen presentations that he had created around CrowdTangle as a "what to do with CrowdTangle," as well as discussions on emails around whether CrowdTangle was providing information that

Page 237

wasn't helpful to Facebook.

Q.   Okay.  And you saw those presentations?

A.   I did.

Q.   Okay.  And then if you read down one more paragraph, skip one, then move to, "These executives argued that Facebook should selectively disclose its own data in the form of carefully curated reports, rather than handing outsiders the tools to discover it themselves."

Do you understand that to be consistent with the position that Alex Schultz took?

A.   I do.

Q.   And who else took that position, if anybody, at Facebook?

A.   I -- I don't recall.

Q.   Okay.  And what was it that Alex Schultz wanted or didn't want to be disclosed?

MR. GOLDFARB:  Objection to form.

MR. SNEED:  Objection to form; foundation.

THE WITNESS:  It's been a while since I reviewed the specifics on it, but it was -- there was pushback on the idea that engagement was being

CONFIDENTIAL

Page 238

heavily discussed, as opposed to metrics like reach, which show you some level of data but they don't show you how content is really being -- is really impacting people.  And so the idea that you would change the type of data you made available, that you would move towards very high-level aggregated data, that you lose a lot of ability to understand what's happening on the platform if you look at, for example, all content in the United States, as opposed to being able to have a tool that you can choose your filters and study what's happening in the content landscape.

And so it pulled away from that type of transparency to something very curated by Meta for their own interests.

BY MS. SINGER:

Q.   Okay.  And then -- so this article and your testimony describes two points of view at Facebook.  Which one won?

A.   I lost, and we've seen subsequently that Meta has shut down CrowdTangle and doesn't provide that level of transparency today.

CONFIDENTIAL

Page 422

REPORTER'S CERTIFICATION

DEPOSITION OF BRIAN BOLAND

APRIL 25, 2025

I, Amanda Blomstrom, a Notary Public in and for the District of Columbia, hereby certify to the following:

That the witness, BRIAN BOLAND, was duly sworn by the officer and that the transcript of the oral deposition is a true record of the testimony given by the witness;

That the deposition transcript was submitted to the witness or to the attorney for the witness for examination and signature;

I further certify that I am neither counsel for, related to, nor employed by any of the parties or attorneys in the action in which this proceeding was taken, and further that I am not financially or otherwise interested in the outcome of the action.

Certified to by me this 29th day of April, 2025.

_____

Amanda Blomstrom, CRR, RMR, CLR

Texas CSR No. 8785

California CSR No. 12681

Illinois CSR No. 84-3634