Ashley M. Simonsen, SBN 275203
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

*Attorneys for Defendants Meta Platforms, Inc.
f/k/a Facebook, Inc. and Instagram, LLC*

*[Additional counsel listed on signature pages]*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS FILING RELATES TO:<br><br>*People of the State of California, et al. v. Meta Platforms, Inc. et al.* | MDL No. 3047<br><br>Case Nos. 4:22-md-03047-YGR-PHK<br>4:23-cv-05448-YGR<br><br>**META'S MOTION *IN LIMINE* NO. 2 TO PRECLUDE EVIDENCE SECOND-GUESSING META'S POLICIES AND PROCEDURES AS IRRELEVANT AND BARRED UNDER SECTION 230**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang<br><br>Date: June 26, 2026<br>Time: 8:00 AM<br>Place: Courtroom 1, 4th Floor |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT, at 8:00 AM on June 26, 2026, before the Honorable Yvonne Gonzalez Rogers, in Courtroom 1, Floor 4, of the United States District Court, Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Meta will and hereby does move this Court, under the Federal Rules of Evidence, for an order excluding evidence and argument at trial as described in the accompanying Memorandum of Points and Authorities.  This Motion is based on this Notice, the accompanying Memorandum, any other papers submitted in connection with the Motion, the accompanying Declaration of Ashley M. Simonsen and the exhibits thereto, and any other matters presented at the time of the hearing.

DATED: June 9, 2026

Respectfully submitted,

By: */s/ Ashley M. Simonsen*

Ashley M. Simonsen (SBN 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

*Attorneys for Defendants Meta Platforms, Inc. and Instagram, LLC*

*[Additional counsel listed on signature pages]*

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 3

I.      Statements that Meta "Could Have" Done Better Are Irrelevant, Not Probative, and Unfairly Prejudicial.................................................................................................... 3

II.     Evidence Second-Guessing Meta's Policies Is Barred by Section 230. ............................ 5

III.    Evidence Second-Guessing Meta's Policies Is Barred by the First Amendment. .............. 7

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bagdasaryan v. Bayview Loan Servicing LLC*,
2017 WL 11633143 (C.D. Cal. Jan. 13, 2017) ........................................................................4

*Estate of Bride v. Yolo Tech., Inc.*,
112 F.4th 1168 (9th Cir. 2024) ..............................................................................................6

*Brown v. Entm't Merchs. Ass'n*,
564 U.S. 786 (2011)................................................................................................................8

*Computer & Commc'ns Indus. Ass'n v. Uthmeier*,
2025 WL 1570007 (N.D. Fla. June 3, 2025) ..........................................................................7

*Cooper v. Brown*,
510 F.3d 870 (9th Cir. 2007) ..................................................................................................3

*Doe (K.B.) v. Backpage.com, LLC*,
768 F. Supp. 3d 1057 (N.D. Cal. 2025) ..............................................................................6, 7

*Doe v. Grindr LLC*,
128 F.4th 1148 (9th Cir. 2025) ..............................................................................................6

*Free Speech Coal., Inc. v. Paxton*,
606 U.S. 461 (2025)................................................................................................................7

*Martin v. City of Struthers*,
319 U.S. 141 (1943)................................................................................................................8

*Miami Herald Pub. Co. v. Tornillo*,
418 U.S. 241 (1974)................................................................................................................7

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024)............................................................................................................7, 8

*NetChoice v. Carr*,
789 F. Supp. 3d 1200 (N.D. Ga. 2025) ..................................................................................7

*NetChoice, LLC v. Griffin*,
2025 WL 978607 (W.D. Ark. Mar. 31, 2025) ........................................................................7

*NetChoice, LLC v. Reyes*,
748 F. Supp. 3d 1105 (D. Utah 2024)....................................................................................7

*NetChoice, LLC v. Yost*,
778 F. Supp. 3d 923 (S.D. Ohio 2025) ..................................................................................7

iv

*Old Chief v. United States*,
   519 U.S. 172 (1997)...............................................................................................3

*Regal v. Cnty. of Santa Clara*,
   2025 WL 1547631 (N.D. Cal. May 31, 2025) ......................................................4

*In re Rezulin Prods. Liab. Litig.*,
   309 F. Supp. 2d 531 (S.D.N.Y. 2004).....................................................................5

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011)...............................................................................................8

*Students Engaged in Advancing Texas v. Paxton*,
   765 F. Supp. 3d 575 (W.D. Tex. 2025)....................................................................7

*United States v. Skillman*,
   922 F.2d 1370 (9th Cir. 1990) ...............................................................................5

*In re Welding Fume Prods. Liab. Litig.*,
   2010 WL 7699456 (N.D. Ohio June 4, 2010)..........................................................5

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & PMF Prods. Liab. Litig.*,
   2011 WL 6740391 (S.D. Ill. Dec. 22, 2011)............................................................5

*Zeran v. America Online, Inc.*,
   129 F.3d 327 (4th Cir. 1997) .................................................................................6

**Constitutional Provision**

U.S. Const. amend. I ....................................................................................... *passim*

**Statutes and Rules**

47 U.S.C. § 230............................................................................................... *passim*

16 C.F.R. § 312 ......................................................................................................4

Fed. R. Evid. 401 ...............................................................................................3, 4

Fed. R. Evid. 402 ...............................................................................................3, 4

Fed. R. Evid. 403 ...................................................................................................3

Fed. R. Evid. 702 ...................................................................................................3

**INTRODUCTION**

Meta moves *in limine* to preclude evidence that its policies and procedures should or could have been different.  Evidence that Meta "could have" implemented different policies and procedures, and that second-guesses what Meta has actually done, is not relevant to or probative of the AGs' misrepresentation claims.  Likewise, evidence that Meta "could have" implemented *different* policies and procedures is not relevant to or probative of the AGs' claims for unfair and unconscionable trade practices ("Unfairness Claims")—which challenge what Meta has actually done, not what it might have done differently.  For the same reasons, evidence that Meta could have adopted different procedures is not relevant to or probative of the AGs' claim under the Child Online Privacy Protection Act ("COPPA"), which again turns on Meta's procedures as implemented, not whether it could have adopted different procedures.  Further, such evidence is independently barred by Section 230 and the First Amendment because it seeks to impose liability on Meta for its decisions about how to publish third-party content and who can access that content.

On these bases, Meta moves in *limine* to preclude the following testimony by AG expert Adam L. Alter, AG expert Timothy Estes, AG expert Ryan Sheatsley, AG expert Colin Gray, AG expert Ravi Iyer, and AG expert Arturo Béjar[1] that Meta could or should have adopted different policies:

- "Meta *could have done more* to prioritize tools designed to improve user well-being."  Alter Rpt. ¶ 188.

- "Meta *could have (and should have)* greatly reduced these harms and risks with technological solutions that were readily available to them."  Estes Rpt. ¶ 3.

- "Having failed to create a safe environment for children, Meta *should have* implemented systems to help parents protect children from the potential harms of their platforms."  Estes Rpt. ¶ 41; *accord id.* ¶ 4.

- "If Meta had a predictive age model sufficient for purposes of ad targeting, surely it *could have deployed* that model to identify and kick off children under the age of 13 consistent with its stated policy."  Estes Rpt. ¶ 60.

---

[1] *See* Ex. A, Trial Report of Adam L. Alter, Ph.D. (ECF 2775-3) ("Alter Rpt."); Ex. B, Trial Report of Timothy Estes ("Estes Rpt."); Ex. C, Corrected Trial Report of Ryan Sheatsley, Ph.D. ("Sheatsley Rpt."); Ex. D, Trial Report of Colin Gray, Ph.D. ("Gray Rpt."); Ex. E, Trial Report of Ravi Iyer, Ph.D. (ECF 2775-10) ("Iyer Rpt."); Ex. F, AGs' Non-Retained Expert Disclosure ("Disclosure").  All emphases on pages 1–3 are added.

META'S MOTION IN LIMINE NO. 2 TO PRECLUDE EVIDENCE SECOND-GUESSING META'S POLICIES AND PROCEDURES AS IRRELEVANT AND BARRED UNDER SECTION 230
4:22-md-03047-YGR-PHK | 4:23-cv-05448-YGR

- "The fact that Apple and Google – two of the world's largest tech companies – implemented these measures demonstrates that these systems *could have been deployed* at scale by Meta, which is similarly large and technologically sophisticated." Estes Rpt. ¶ 113.

- "Meta *could have disabled* tens of thousands of additional underage accounts on Facebook and Instagram that were soft-matched to accounts that were disabled for being underage." Sheatsley Rpt. ¶ 8.

- "Meta *could have detected* tens of thousands of additional underage accounts on Facebook and Instagram, *if it had queried* its soft-matching data, as [it] has done for years for disabling accounts for other types of policy violations." Sheatsley Rpt. ¶ 200.

- "Meta *could have implemented* additional layers of verification—such as facial age estimation, device-based inferences, or multi-step confirmations involving parents or IDs—to substantially reduce access by underage users." Gray Rpt. ¶ 127.

- "Meta *could have introduced* onboarding sequences that prioritized safety, social media literacy, and patterns of intentional use." Gray Rpt. ¶ 128.

- "While each element of the ACM Code of Ethics and ABET standards is broadly defined, each aligns with decisions that Meta *should have taken* in order to support user autonomy, agency, and well-being." Gray Rpt. ¶ 73.

- "Given how these features facilitate excessive and unhealthy usage, infinite scroll and autoplay, quantification of engagement, and ephemeral content *should be removed*, and notifications *should be substantially restricted* for teens." Iyer Rpt. ¶ 47.

- "*[I]t is feasible for Meta to implement these changes.* Infinite scroll and autoplay can readily be removed and many successful companies have done so, proving the feasibility." Iyer Rpt. ¶ 54.

- Mr. Béjar's testimony about "the design and efficacy of Meta's safety features, and viable *alternative technologies* that *would have improved the platforms' safety*." Disclosure at 8.

- Mr. Béjar's testimony that "Meta *does not provide the necessary resources* or support to the teams working on safety and wellbeing." Disclosure at 9.

- Mr. Béjar's testimony that "Instagram *should have had* appropriate age verification in place to keep kids safe." Disclosure at 11.

- "Meta has the *technical capability and means to implement alternatives* to engagement-based recommendation algorithms that prioritize well-being and integrity and provide young users and their parents with increased controls." Notice by State AGs Regarding Injunctive Relief Sought, ECF 2724 at 2.

- Meta "*should … use[]*" "[r]obust age assurance" that "*should include …* processes, techniques, and data that Meta already relies on for enforcing many of its policies, but which Meta has intentionally refused to apply at scale to its detection of underage users." *Id.* at 3.

2

**ARGUMENT**

**I.     Statements that Meta "Could Have" Done Better Are Irrelevant, Not Probative, and Unfairly Prejudicial.**

This case is not about what Meta could or should have done differently. Instead, it is about whether what Meta actually did and said was misleading or unfair, and whether Meta's services as implemented were "directed to children" under 13 or collected information with "actual knowledge" it was from children under 13. Evidence that Meta "could have" or "should have" adopted *different* policies or procedures does not bear on those questions, and should be excluded under Rules 401 and 402 because it is not relevant, and under Rule 403 because its probative value (if any) is outweighed by its likelihood to confuse the issues and waste trial time. Such evidence is also unfairly prejudicial because it would erroneously suggest that Meta can be held liable if its policies or procedures "could have" been different.

**A.     The AGs' Claims Relate to What Meta *Did*—Not What it *Could Have* Done.**

The AGs' claims involve what Meta actually did, not whether Meta could have done something differently. Evidence of the latter therefore does not "assist the trier of fact to understand or determine a fact in issue." *See Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007) (discussing Fed. R. Evid. 702). Such evidence also has "an undue tendency to suggest decision on an improper basis"—namely, that Meta can be held liable for choices it did not make. *See Old Chief v. United States*, 519 U.S. 172, 180 (1997).

The AGs' allegations of misrepresentations and unfair practices all involve Meta's actual practices and procedures and its statements about them, not what Meta could have done differently. *See, e.g.*, ECF 2994, Statement No. 3 ("We do not allow people under 13 to have a Facebook account."); Statement No. 32 ("we have 40,000 people working on safety and security"). Evidence that Meta "could have" implemented different procedures or policies thus does not have any tendency to show that Meta's statements were false or misleading, or that its practices as implemented were unfair.

For example, the AGs challenge Meta's statements about its age-restriction policy. *See, e.g.*, Statement No. 3 ("We do not allow people under 13 to have a Facebook account."); Statement No. 65 (describing "work … keeping underage users off our platform"). But evidence that Meta "could have" implemented different age verification policies is not relevant to whether those statements were false or

misleading, or whether Meta's practices, as implemented, contravene public policy. The AGs' experts opine that Meta "could have" adopted the age-verification policies used by other industries, *see* Alter Rpt. ¶ 379 (suggesting Meta should have followed procedures used for "other age-restricted activities such as gambling, smoking, and voting"), and by other companies, *see* Estes Rpt. ¶ 113 (discussing "Apple and Google" age-verification measures). But evidence that Meta "could have (and should have)" enforced its age restriction policy through "technological solutions … available to them" does not bear on what Meta *actually did* to keep children under 13 off its platforms. Estes Rpt. ¶¶ 3, 39. Because none of Meta's alleged misrepresentations say that Meta's age verification processes are the best or only approach—or that Meta could not have done something differently—evidence that Meta "could have" implemented different age verification procedures or policies does not have any tendency to show that Meta's statements were false or misleading. Meta was "under no obligation to follow" certain policies or procedures, and therefore evidence that it could have adopted different policies or procedures should be excluded "due to a lack of relevance." *Bagdasaryan v. Bayview Loan Servicing LLC*, 2017 WL 11633143, at *7 (C.D. Cal. Jan. 13, 2017) (excluding evidence of standard industry operating procedure as proof that practices violated UCL). And "even if it was marginally relevant, that relevance would be substantially outweighed by the risk of confusing the issues or misleading the jury." *Regal v. Cnty. of Santa Clara*, 2025 WL 1547631, at *5 (N.D. Cal. May 31, 2025).

Nor is evidence of hypothetical age-verification policies relevant under COPPA. Under COPPA, "actual knowledge" of under-13 users requires evidence of what Meta actually knew, not what Meta hypothetically "could have" done to learn more. *See* 16 C.F.R. § 312. Likewise, whether Meta is "child-directed" is an inquiry into its services as implemented. Thus, evidence that Meta "could have (and should have)" implemented other age-gating procedures, Estes Rpt. ¶ 3, is not relevant to any issue under the AGs' claims, and should be excluded under Rules 401 and 402. Further, the marginal (if any) probative value of evidence that Meta "could have" adopted different age-gating procedures is vastly outweighed by the risk of confusing the issues because it would suggest that Meta can be held liable for failing to do something different from what it actually did.

4

The AGs' experts also opine about a myriad of technological processes that Meta "could have" adopted to promote safety on its platforms. *See, e.g.*, Sheatsley Rpt. ¶ 92 (contending that "if Meta decided to expand SURF, it *would be* a valuable tool" for detecting underage users); *id.* ¶ 200 ("Meta *could have* detected" underage accounts "*if* it had queried its soft-matching data"); Gray Rpt. ¶ 128 ("Meta *could have* introduced onboarding sequences that prioritized safety") (all emphasis added).  Such evidence of what Meta could have done differently is not probative of whether its operations as implemented violated consumer protection laws or COPPA. *See In re Welding Fume Prods. Liab. Litig.*, 2010 WL 7699456, at *24 (N.D. Ohio June 4, 2010) (excluding testimony discussing "what a corporation *should* do" and "*should have* done" in products liability and negligence trial) (emphases in original).  That is because "[i]t is only the defendants' conduct itself that is relevant and admissible, not whether that conduct measures up to any moral or social standard held by an expert." *Id.* at *25; *see also id.* at *43 (excluding opinion "that, in [expert's] view, the welding rod industry engaged in 'unacceptable' activity").

Statements about what Meta could or should have done are also irrelevant and may "cause a jury to base its decision on something other than the established propositions in the case." *U.S. v. Skillman*, 922 F.2d 1370, 1374 (9th Cir. 1990).  For instance, statements that "Meta *should have* taken" decisions that "align with" certain "broadly defined" ethics standards, Gray Rpt. ¶ 73 (emphasis added), do not relate to the unfairness of Meta's practices and may "provoke[] [the jury's] instinct to punish," *Skillman*, 922 F.2d at 1374.  For those reasons, courts regularly exclude testimony commenting on whether a corporation acted consistently with subjective ethical standards. *See, e.g.*, *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & PMF Prods. Liab. Litig.*, 2011 WL 6740391, at *12 (S.D. Ill. Dec. 22, 2011) (excluding inquiry "asking individual Bayer witnesses if they believe Bayer has acted morally or with decency or in an ethical manner" as "irrelevant"); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 543 (S.D.N.Y. 2004) (excluding "witnesses' opinions regarding ethical standards for reporting or analyzing clinical trial data" because they "articulate nothing save for the principle that research sponsors should be honest").

## II.      Evidence Second-Guessing Meta's Policies Is Barred by Section 230.

Section 230 bars evidence or argument that Meta could have or should have done a more effective job in removing third-party content or excluding certain users from its platforms.  Claims based on the

5

"failure to remove content . . . are explicitly foreclosed by § 230(c)(1)," and no suit can seek to "hold[] companies responsible for moderating or failing to moderate content." *Estate of Bride v. Yolo Tech., Inc.*, 112 F.4th 1168, 1177, 1182 (9th Cir. 2024).  The AGs cannot circumvent this well-established principle through opinion testimony second-guessing how Meta decides "which third-party content to remove and which to permit." *Doe (K.B.) v. Backpage.com, LLC*, 768 F. Supp. 3d 1057, 1063 (N.D. Cal. 2025).

Section 230 "forbids the imposition of publisher liability on a service provider *for the exercise of its editorial and self-regulatory functions*." *Zeran v. America Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997) (emphasis added).  And evidence that Meta could or should have implemented different "self-regulatory functions" bears directly on Meta's role as a publisher of third-party content, and is thus barred by Section 230.  For example, the AGs' experts cannot, consistent with Section 230, opine that Meta "should have implemented systems" to protect users "from the potential harms of" viewing content on Instagram, Estes Rpt. ¶ 4, or that Meta "could have" adopted "mandatory adult approval for sensitive settings," Gray Rpt. ¶ 130; *see also* Iyer Rpt. ¶ 47 ("ephemeral content should be removed").  Section 230 precludes second-guessing statements about Meta's "moderation or filtering system, however imperfect it proves to be." *Bride*, 112 F.4th at 1175–76 (emphasis added).

So, too, with age verification.  Under Section 230, Meta cannot be second-guessed for the decisions it has made about implementing its age-restriction policy, because that policy is part of its "moderation" practices and "thus [is] protected from liability under § 230." *Doe v. Grindr LLC*, 128 F.4th 1148, 1154 (9th Cir. 2025); *see also* 7/19/24 Mot. to Strike Order at 25–27 (Kuhl, J.) (Section 230 bars "[c]laims based on Defendants' failure to implement effective age verification software.").  Arguments that Meta did not do enough to keep certain users off its platforms "cut[] to the core of Meta's role as a publisher: that is, determining who can and cannot speak on its platform." *Backpage.com*, 768 F. Supp. 3d at 1065.  Section 230 thus bars evidence "that Meta *should have* incorporated identity and age verification procedures into its account setup process" on Instagram. *Id.* at 1064 (emphasis added).  For instance, opinions that Meta "could have deployed" a "predictive age model … [to] kick off children," Estes Rpt. ¶ 60, in effect, seek to "limit[] who will create an Instagram account, and more specifically, limit[] the types of content likely to be posted from those accounts." *Backpage.com*, 768 F. Supp. 3d at 1065.

6

Because determining "who may speak" on a platform and what "content may be barred on the platform" are "classic publication decision[s]," evidence second-guessing the efficacy of Meta's age verification procedures "cuts to the core of Meta's role as publisher" and thus should be excluded. *Id.* at 1065–66.

## III. Evidence Second-Guessing Meta's Policies Is Barred by the First Amendment.

The First Amendment bars the AGs from introducing evidence or argument second-guessing the efficacy of Meta's implementation of its age-restriction and content moderation policies. The Supreme Court recently reaffirmed that the First Amendment protects Meta's editorial "choices about what third-party speech to display and how to display it." *Moody v. NetChoice, LLC*, 603 U.S. 707, 716 (2024). The AGs thus cannot introduce testimony suggesting that Meta could or should have exercised its "editorial control and judgment" differently. *Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 258 (1974) (decisions about what "material" to include and the "limitations on the size and content" of that compilation are protected).

Evidence second-guessing Meta's age verification efforts also "direct[ly] target . . . fully protected speech." *Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 484 (2025). Courts nationwide have held that mandated age-verification requirements for accessing protected speech on the Internet violate the First Amendment.[2] "[M]inors are entitled to a significant measure of First Amendment protection," and

---

[2] *See, e.g.*, *NetChoice v. Carr*, 789 F. Supp. 3d 1200, 1224 (N.D. Ga. 2025), *appeal docketed*, No. 25-12436 (11th Cir.) (enjoining Georgia law requiring age verification for websites); *Computer & Commc'ns Indus. Ass'n v. Uthmeier*, 2025 WL 1570007, at *18 (N.D. Fla. June 3, 2025), *stay granted*, 2025 WL 3458571 (11th Cir. Nov. 25, 2025) (holding that law prohibiting social media platforms from allowing individuals under 14 to create accounts violated First Amendment because "the scope of speech restricted" was not "necessary to further the state's interest in shielding children from addiction"); *Students Engaged in Advancing Texas v. Paxton*, 765 F. Supp. 3d 575, 600 (W.D. Tex. 2025), *appeal docketed*, No. 25-50096 (5th Cir.) (finding age verification provisions of similar Texas law violated the First Amendment, because "[t]he content monitoring and age-verification requirements … limit [websites'] editorial choices about ... how to display speech in all of their applications … and a substantial majority of the prevented speech is protected First Amendment activity … even where the state views certain topics as inappropriate or unseemly for minors") (cleaned up); *see also NetChoice, LLC v. Griffin*, 2025 WL 978607, at *13 (W.D. Ark. Mar. 31, 2025) (enjoining enforcement of Arkansas law that would have required verifiable parental consent for minors to access certain websites); *NetChoice, LLC v. Reyes*, 748 F. Supp. 3d 1105, 1111 (D. Utah 2024), *appeal docketed*, No. 24-4100 (10th Cir.) (enjoining similar Utah law); *NetChoice, LLC v. Yost*, 778 F. Supp. 3d 923, 957 (S.D. Ohio 2025) (permanently enjoining age verification requirement), *appeal docketed*, No. 25-3371 (6th Cir.).

7

protected speech "cannot be suppressed solely to protect the young from ideas or images that a legislative body"—or here, the AGs—"thinks unsuitable for them." *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 794–95 (2011). It follows that the AGs cannot prove their claims through evidence that Meta "could have" or "should have" done more to keep individuals under 13 off its platforms. *See, e.g.*, Gray Rpt. ¶ 127 ("Meta could have implemented additional layers of verification.").

Opinion testimony that Meta failed to implement effective age verification systems would also burden *Meta's* rights to disseminate Facebook and Instagram, which are themselves expressive curations of protected third-party speech. *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011) ("[T]he creation *and dissemination* of information are speech within the meaning of the First Amendment." (emphasis added)). Because Meta's "expressive product[s]" constitute fully protected speech, *Moody*, 603 U.S. at 731, the AGs cannot introduce testimony second-guessing how Meta disseminates protected expression "to every citizen wherever he desires to receive it." *Martin v. City of Struthers*, 319 U.S. 141, 146 (1943).

Respectfully submitted,

DATED: June 9, 2026

COVINGTON & BURLING LLP
By: */s/ Ashley M. Simonsen*
Ashley M. Simonsen, SBN 275203
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Paul W. Schmidt, *pro hac vice*
Timothy C. Hester, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pschmidt@cov.com
　　　thester@cov.com

*Attorneys for Defendants Meta Platforms, Inc.*
*f/k/a Facebook, Inc. and Instagram, LLC*

9