Filed Under Seal

# Exhibit N

CONFIDENTIAL

Page 1

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES

COORDINATION PROCEEDING     )     JUDICIAL COUNCIL
SPECIAL                     )     COORDINATION
TITLE [RULE 3.400]          )     PROCEEDING NO. 5255
SOCIAL MEDIA CASES          )
_____ )     For Filing
                            )     Purposes:
THIS DOCUMENT RELATES       )     22STCV21355
TO:                         )
                            )     Judge: Hon.
Cristina Arlington         )     Carolyn B. Kuhl
Smith, et al., v. TikTok    )     SSC-12
Inc., et al.,               )
Case No. 22STCV21355        )
_____ )


   _____
           CROSS-NOTICES ON FOLLOWING PAGES
   _____



                Tuesday, July 8, 2025

    CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

        Remote Video-Recorded Oral Deposition
   of LOTTE RUBÆK, MSc, held at the location of
   the witness, Copenhagen, Denmark, commencing
   at 3:12 p.m. CEST on the above date, before
   Michael E. Miller, Fellow of the Academy of
   Professional Reporters, Certified Court
   Reporter, Registered Diplomate Reporter, and
   California CSR #13649.


                   __ __ __
              GOLKOW - VERITEXT
         877.370.DEPS | fax 917.591.5672
               deps@golkow.com

CONFIDENTIAL

Page 2

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE: SOCIAL MEDIA ADOLESCENT ) MDL No.
ADDICTION/PERSONAL INJURY       ) 4:22-md-3047-YGR
PRODUCTS LIABILITY LITIGATION   )
_____ )

_____
IN THE CIRCUIT COURT OF POLK COUNTY, ARKANSAS
CIVIL DIVISION

STATE OF ARKANSAS, ex rel.
TIM GRIFFIN, ATTORNEY GENERAL

v.

Case No. 57CV-23-47

META PLATFORMS, INC.; FACEBOOK HOLDINGS, LLC;
FACEBOOK OPERATIONS, LLC; META PAYMENTS INC.;
FACEBOOK TECHNOLOGIES, LLC; INSTAGRAM, LLC;
and SICULUS, INC.
_____
COMMONWEALTH OF MASSACHUSETTS
SUFFOLK, ss          SUPERIOR COURT
                     BUSINESS LITIGATION SESSION
_____
COMMONWEALTH OF MASSACHUSETTS, |
                               |
     Plaintiff,                |   CIVIL ACTION NO.
                               |   2384CV02397-BLS1
v.                             |
                               |
META PLATFORMS, INC. and       |
INSTAGRAM, LLC.                |
                               |
     Defendant.                |
_____

Page 157

correct?

MS. KOUBA:  Object to form.

A.      No, that's not correct.  It's because the content does really affect the user, but, in fact, it's the design of the social media platforms that causes the greatest effect on the behavior like nonsuicidal self-injury, eating disorders, and suicidal behavior, because before social media, we still had the content because the content would be the people walking around in the classroom and the -- at sports.

But what social media do is that they spread the content and that they amplify the content and the social metrics of the platform, they reinforce the behavior through operant conditioning because specific behavior is reinforced through the reactions to behavior.

So if you post a deep cut, a deep bloody cut and you get hundreds of likes, then that behavior is reinforced, and that is only due to the social -- the metrics of the social media platform.

The same with the way the

CONFIDENTIAL

Page 159

are inviting a longer answer to attempt to answer that question, which Ms. Rubæk has also been very patient with all day in answering her questions.

And I also object to that question, object to form.

A.      And...

BY MR. KENNEDY:

Q.      So let me repeat my question.

A.      Only black boxes as content?

Q.      Yeah.  Let me, just for the record, let me repeat the question.

If Instagram worked exactly the way Instagram works, but the only content on Instagram were black boxes, would teenagers using Instagram still have negative mental health outcomes?

MS. KOUBA:  Object to form.

A.      I wouldn't know.  I've never seen how a platform -- that would depend on the other mechanisms that platform was using, but it would definitely not have the same effect on teenagers.

///

Page 160

BY MR. KENNEDY:

Q.    Because the content in my hypothetical would be different from the content you're addressing in your opinions, right?  That's why there would be a different effect on teenagers?

MS. KOUBA:  Object to form.

A.    The content -- if the content is eating, thinspiration content, eating disorder content and suicide -- content about suicide and methods of self-injury and content -- that is definitely different from black boxes.

It is still -- the most important thing to note here is the way that the social media, that they are designed to amplify that content and to reinforce a behavior and the -- the features they use such as beauty filters and so on.

So you can't -- yeah, I'm not sure I answered your question, but otherwise...

BY MR. KENNEDY:

Q.    If a teenager uses Instagram and Instagram serves eating disorder content,

CONFIDENTIAL

Page 161

your view is that that would increase the risk that the teenager would get an eating disorder, right?

A.    Yes.

MS. KOUBA:  Object to form.

BY MR. KENNEDY:

Q.    Now, if a teenager --

A.    It is shown to affect teenagers in that way.

Q.    Now, if a teenager uses Instagram, Instagram has exactly the same features that it had in the eating disorder example, but now Instagram is serving up NSSI content, then your view is that that would increase the risk the teenager would get NSSI, right?

MS. KOUBA:  Object to form.

A.    Yes, that is also proven by research.

BY MR. KENNEDY:

Q.    So the only difference between the two hypotheticals I just gave you is the content, not the features of Instagram, correct?

MS. KOUBA:  Object to form.

Page 162

A.    Yes, in the two that -- the features on social media, they interact around content.  The only reason why they are there, that is because of the content.

Instagram would want young people to have much -- as much content in their feed as possible about the subject that they are occupied with at the exact moment to make them -- yeah, to make them -- yeah, their time on the platform, to increase that.

BY MR. KENNEDY:

Q.    Now, in order to establish a causal link between the features of a social media platform and negative mental health outcomes, you would need to design a study that isolates the effect of the features of the platform from the content on the platform, correct?

MS. KOUBA:  Object to form.

A.    Yeah.  For example, there's a study which has looked at people who for the past month tell that they have seen self-harm, for example, self-harm images on Instagram, and then it's at a later point in time, they have started to self-harm.

CONFIDENTIAL

Page 163

The group who has been exposed to self-harm, they have started to self-harm more often than the group who didn't watch that kind of content.

BY MR. KENNEDY:

Q.     Okay.  I think we're talking past each other a little bit.

A.     Yeah, maybe we do.

Q.     Yeah.

So in order to establish a causal link between the features of a social media platform as opposed to the content on the platform, you would need to design a study that isolates the effect of the platform's features from the platform's content, correct?

MS. KOUBA:  Object to form.

A.     I wouldn't say that is correct because they are interconnected.

BY MR. KENNEDY:

Q.     So the content of a social media platform and the features of a social media platform are interconnected --

A.     Yes.

Q.     -- such that any negative

CONFIDENTIAL

Page 164

mental health outcomes for teenagers arising from the platform are a result of both the content and the features?

MS. KOUBA:  Object to form.

BY MR. KENNEDY:

Q.    That's your opinion, right?

A.    Yes.  The content and talking about content, suicide, self-injury and eating disorder content, that is not allowed on the platform, so that -- if the platform worked as they claim to do, then moderators would have removed content like that.  But it still floats around the platform, yeah, to a great -- to a great extent.

Q.    In studying the effect of a social media platform on teen mental health, is it not possible to separate out the effect of the platform's content and the platform's features, correct?

MS. KOUBA:  Object to form, outside of scope.

A.    The content of the platform is a part of the platform.  If we didn't have that social media, a young person would never lie on their bed scrolling through content

CONFIDENTIAL

Page 172

CERTIFICATE

I, MICHAEL E. MILLER, Fellow of the Academy of Professional Reporters, Registered Diplomate Reporter, Certified Realtime Reporter, Certified Court Reporter and Notary Public, do hereby certify that prior to the commencement of the examination, LOTTE RUBÆK, MSc was duly sworn by me to testify to the truth, the whole truth and nothing but the truth.

I DO FURTHER CERTIFY that the foregoing is a verbatim transcript of the testimony as taken stenographically by and before me at the time, place and on the date hereinbefore set forth, to the best of my ability.

I DO FURTHER CERTIFY that I am neither a relative nor employee nor attorney nor counsel of any of the parties to this action, and that I am neither a relative nor employee of such attorney or counsel, and that I am not financially interested in the

_____
MICHAEL E. MILLER, FAPR, RDR, CRR
Fellow of the Academy of Professional Reporters
NCRA Registered Diplomate Reporter
NCRA Certified Realtime Reporter
California CSR #13649

Dated: July 9, 2025