Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

*Attorneys for Defendants Meta Platforms, Inc.*
*f/k/a Facebook, Inc. and Instagram, LLC*

*[Additional counsel listed on signature pages]*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION <br><br> This Document Relates To: <br><br> *People of the State of California, et al. v. Meta Platforms, Inc. et al.* | MDL No. 3047 <br><br> Case Nos.: 4:22-md-03047-YGR <br> 4:23-cv-05448-YGR <br><br> **META'S MOTION *IN LIMINE* NO. 5 TO EXCLUDE EVIDENCE OR ARGUMENT THAT META'S AGE VERIFICATION FEATURES AND COSMETIC SURGERY OR OTHER THIRD-PARTY FILTERS ARE UNFAIR PRACTICES** <br><br> Judge: Hon. Yvonne Gonzalez Rogers <br> Magistrate Judge: Hon. Peter H. Kang <br><br> Date: June 26, 2026 <br> Time: 8:00 AM <br> Place: Courtroom 1, 4th Floor |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT, at 8:00 AM on June 26, 2026, before the Honorable Yvonne Gonzalez Rogers, in Courtroom 1, Floor 4, of the United States District Court, Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Meta will and hereby does move this Court for an order excluding evidence and argument that Meta's age verification features and third-party cosmetic filters or other third-party filters are unfair practices under the state laws at issue in this trial, as addressed in the accompanying Memorandum of Points and Authorities.  This Motion is based on this Notice, the accompanying Memorandum, any other papers submitted in connection with the Motion, the accompanying Declaration of Ashley M. Simonsen and the exhibits thereto, and any other matters presented at the time of the hearing.

DATED:  June 9, 2026

Respectfully submitted,

By:    /s/ Ashley M. Simonsen

Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc. and Instagram, LLC*

*[Additional counsel listed on signature pages]*

META'S MOTION IN LIMINE NO. 5 TO EXCLUDE EVIDENCE OR ARGUMENT THAT META'S AGE VERIFICATION FEATURES AND COSMETIC SURGERY OR OTHER THIRD-PARTY FILTERS ARE UNFAIR PRACTICES
4:22-md-03047-YGR; 4:23-cv-05448-YGR

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 3

I.      Section 230 Bars the AGs' Claim that Meta's Age-Verification Protocols and Third-Party Filters Are an Unfair or Unconscionable Practice. ............................................................. 3

II.     The First Amendment Bars the AGs' Claim that Meta's Age-Verification Processes Are an Unfair or Unconscionable Practice. ............................................................................... 6

III.    The AGs Have Waived Their Ability Challenge Meta's Age Verification Systems as an "Unfair and Unconscionable" Practice, Precluding Such Evidence at Trial. ..................... 7

CONCLUSION .................................................................................................................. 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Angelilli v. Activision Blizzard, Inc.*,
   781 F. Supp. 3d 691 (N.D. Ill. 2025) ........................................................................5

*Apple, Inc. v. Samsung Elecs. Co.*,
   2012 WL 3155574 (N.D. Cal. Aug. 2, 2012) .............................................................7

*Barnes v. Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009) ................................................................................4, 5

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*,
   457 U.S. 853 (1982).....................................................................................................6

*Carafano v. Metrosplash.com, Inc.*,
   339 F.3d 1119 (9th Cir. 2003) ................................................................................2, 6

*Doe v. Backpage.com, LLC*,
   768 F. Supp. 3d 1057 (N.D. Cal. 2025) ..............................................................1, 3, 4

*Doe v. Grindr Inc.*,
   128 F.4th 1148 (9th Cir. 2025) ...............................................................................3, 4

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
   521 F.3d 1157 (9th Cir. 2008) .....................................................................................5

*Hurley v. Irish-Am. Gay, Lesbian and Bisexual Group of Boston*,
   515 U.S. 557 (1995)..................................................................................................1, 6

*Lemmon v. Snap, Inc.*,
   995 F.3d 1085 (9th Cir. 2021) .....................................................................................5

*Martin v. City of Struthers, Ohio*,
   319 U.S. 141 (1943).....................................................................................................6

*Miami Herald Pub. Co. v. Tornillo*,
   418 U.S. 241 (1974).....................................................................................................6

*Moody v. NetChoice LLC*,
   603 U.S. 707 (2024).....................................................................................................6

*People v. Overstock.com, Inc.*,
   12 Cal. App. 5th 1064 (Cal. Ct. App. 2017) ..............................................................8

v

**Other Authorities**

U.S. Const. amend. I ................................................................................................................1, 6

15 U.S.C. § 6502(a)(1)..................................................................................................................8

47 U.S.C. § 230(c)(1)....................................................................................................................5

**INTRODUCTION**

Meta moves *in limine* to preclude the AGs from introducing evidence or argument at trial that (1) Meta's age-verification systems or (2) third-party cosmetic surgery filters constitute an unfair or unconscionable practice (i.e., the AGs' "Unfairness Claims"). Section 230 and the First Amendment bar those theories. And as to age verification, the AGs waived the theory that Meta's systems are an unfair practice by failing to disclose it as a premise of their claims until six months after discovery closed.

***Age verification.*** Liability premised on purportedly inadequate age verification would require Meta to "limit[] who will create an Instagram [or Facebook] account," and thus is barred by Section 230. *Doe v. Backpage.com, LLC*, 768 F. Supp. 3d 1057, 1065 (N.D. Cal. 2025). And Meta's decisions about who may access its platforms fall squarely within its First Amendment "right as a private speaker to shape its expression." *Hurley v. Irish-Am. Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557, 570, 574 (1995). Independent of these legal bars, the AGs have waived any theory that Meta's approach to age verification is "unfair or unconscionable." When the Court engaged in a "feature-by-feature" analysis of the AGs' Unfairness Claims on Meta's motion to dismiss, ECF 1214 at 25 ("MTD Order"), *the AGs did not include age verification among the features they sought to challenge*. The Court permitted the AGs' Unfairness Claims to proceed *only* as to three features: (1) appearance-altering filters, (2) multiple accounts, and (3) time management tools. *Id.* at 45. Then, late last year, six months after the close of fact discovery, and with no prior notice, the AGs disclosed age verification as a fourth purported basis for their Unfairness Claims. Further, in a notice filed in February 2026, the AGs disclosed *for the first time* that— as a remedy for their Unfairness Claims premised on age verification—they seek an injunction "compelling Meta to effectively prevent children from joining the Platforms, and to effectively and promptly identify and remove them if they join." Notice Regarding Injunctive Relief Sought ("Notice"), ECF 2724 at 3.

On these bases, Meta moves *in limine* to preclude the following testimony by AG expert Timothy Estes, and AG expert Arturo Béjar:[1]

---

[1] *See* Ex. A, Trial Report of Timothy Estes ("Estes Rpt."); Ex. B, AGs' Disclosure for Unretained Experts ("Disclosure"). All emphases in quotations on pages 1–3 are added.

META'S MOTION IN LIMINE NO. 5 TO EXCLUDE EVIDENCE OR ARGUMENT THAT META'S AGE VERIFICATION FEATURES AND COSMETIC SURGERY OR OTHER THIRD-PARTY FILTERS ARE UNFAIR PRACTICES
4:22-md-03047-YGR; 4:23-cv-05448-YGR

- Evidence that Meta's "deficient age verification tools" are linked to "a myriad of negative mental health outcomes from using Meta's platforms, like anxiety, depression, insomnia, impaired sleep, eating disorders, suicide, and a host of other negative outcomes—all of which are particularly acute for kids under age 13." AGs' December 12, 2025 Letter Brief Regarding Trial Strategy, ECF 2626 ("AGs' Trial Planning Brief") at 7.

- "In practice, however, Meta's age verification systems were either *non-existent* or *broken*. Meta allowed millions of pre-teens to use its addictive platforms[.]"  Estes Rpt. ¶ 4.

- "[W]hile they outwardly posted 'No Under-13 Allowed' signs on the front door, they *left the door unattended*. . . . Preteens swarmed these platforms en masse. Children lied about their birth dates, clicked a self-attestation box, and instantly joined the digital crowd."  Estes Rpt. ¶¶ 43–44.

- "Meta's age verification and parental consent systems became a *broken facade*, [and] . . . . each platform's fail[ed] to keep young children out."  Estes Rpt. ¶ 45.

- "The true cost to these platforms is the potential loss of revenue they earn from advertising to the millions of young children's accounts on their platforms. . . . That, however, does not justify the unlawful and irresponsible targeting of young children with platforms known to be harmful to them."  Estes Rpt. ¶ 106.

- Mr. Béjar's testimony about "how design defects on Meta's platforms can cause *harm to minors* (e.g., age verification[)]."  Disclosure at 9.

- Mr. Béjar's testimony that "[i]t is easy to find under 13 accounts on Instagram, but it is *difficult to report* those accounts.  Mr. Béjar's own testing on teen accounts further demonstrates this. Instagram is *not safe* for kids under 13."  Disclosure at 12.

***Cosmetic Surgery Filters.***  Meta also moves *in limine* to preclude evidence that cosmetic surgery filters developed by third parties constitute an unfair or unconscionable practice.  Under Section 230, the AGs may challenge *only* those appearance-altering filters developed by Meta itself.  *See Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003).  However, Meta never made any filters mimicking the effects of plastic surgery available ("cosmetic surgery filters") to users.  Any such filters, to the extent they were ever available on Instagram or Facebook, were designed and made available to users exclusively by third parties.  *See* Ex. C, META3047MDL-278-00005350 at -359 ("Instagram does

META'S MOTION IN LIMINE NO. 5 TO EXCLUDE EVIDENCE OR ARGUMENT THAT META'S AGE VERIFICATION FEATURES AND COSMETIC SURGERY OR OTHER THIRD-PARTY FILTERS ARE UNFAIR PRACTICES
4:22-md-03047-YGR; 4:23-cv-05448-YGR

not produce any first party cosmetic surgery effects."). On this basis, Meta moves *in limine* to preclude the following evidence:

- Evidence that "Meta leadership . . . restor[ed] augmented reality cosmetic beauty filters to Instagram[.]" Ex. D ("Jayakumar Dep. Tr.") at 163:17–23.

- Evidence of alleged "harms that cosmetic surgery effects could create" for users, particularly for young users. Ex. E ("Stewart Dep. Tr.") at 32:25–34:22; *see also* Ex. F, META3047MDL-040-00337135 (Jayakumar Dep. Ex. 16) (discussing how "extreme beauty effects can have severe impacts on both the individuals using the [cosmetic surgery effects] and those viewing the images").

- Evidence that Mr. Zuckerberg allegedly directed that "a temporary ban on [third party] cosmetic surgery filters be rescinded and that users of all ages be permitted to use even filters depicting 'nip and tuck' plastic surgery effects." AGs' Trial-Planning Brief at 5–6; *see also* Jayakumar Dep. Tr. at 194:8–12 ("[I]nstead of banning those [cosmetic beauty] filters, [Meta] allowed them to continue being used on Instagram.").

- Evidence of other executives' views on "lifting that ban" or that they "preferred less dramatic alternatives where such filters might not have been available to users under certain ages." AGs' Trial-Planning Brief at 6. *See also* Ex. C (document prepared in conjunction with internal proposal regarding "cosmetic surgery effects"); Ex. G, META3047MDL-014-00314941 (email among Meta executives discussing cosmetic filter policies); Ex. H, META3047MDL-022-00009683 (similar).

## ARGUMENT

**I.    Section 230 Bars the AGs' Claim that Meta's Age-Verification Protocols and Third-Party Filters Are an Unfair or Unconscionable Practice.**

*Age Verification.* The AGs' theory that Meta's age-verification systems are an unfair practice is barred by Section 230. The AGs' theory appears to be that, because Facebook and Instagram allegedly lack "effective[]" age verification, users might claim to be older than 12 and thereby evade Meta's age policy, leading to purportedly "negative mental health outcomes." *See* AGs' Trial-Planning Brief at 7.

Meta's age verification processes are "not independent" of its role as a "facilitator and publisher of third-party content." *Doe v. Grindr Inc.*, 128 F.4th 1148, 1152–53 (9th Cir. 2025) (holding Section 230 bars claims that an app should use "alternative designs" to protect minor users). Rather, age verification "cuts to the core of Meta's role as a publisher: that is, determining who can and cannot speak on its platform." *Backpage*, 768 F. Supp. 3d at 1065. Thus, in *Backpage*, the court held that Section 230 barred the plaintiff's claim—identical to the AGs' here—"that Meta should have incorporated identity and age

verification procedures into its account setup process" on Instagram. *Id.* at 1064. The court explained that age-verification "is a classic publication decision"—"a determination of who may speak, and thus, whose content may be barred on the platform." *Id*. at 1065. Evidence of Meta's efforts to moderate (i.e., take down) under-13 accounts (which constitute third-party content) is thus barred. *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1103 (9th Cir. 2009) (claim for failure to "remov[e] . . . indecent profiles" "necessarily involves treating [defendant] as a publisher of the content it failed to remove").[2]

The reasoning of *Backpage* is equally applicable here. For one, the AGs' own expert opines that Meta's purportedly insufficient age verification leads to inappropriate contact with child predators— nearly identical to the conduct alleged in *Backpage*. *See* Estes Rpt. ¶¶ 35–39 (opining that "the platforms . . . have become hunting grounds for predators seeking to sexually exploit children" and that "[m]any of these harms could be prevented or greatly reduced with technical solutions that were readily available to Meta," including enhanced age verification). Thus, the AGs' challenge to Meta's age verification feature targets Meta's "role[] as [a] publisher[] of third-party content," MTD Order at 25 (citation omitted), and its ability to "determine[e] who can and cannot speak on its platform," *Backpage*, 768 F. Supp. 3d at 1065.

The AGs' age-verification unfairness theory also operates as an end-run around Section 230. By adding age verification as a predicate for their Unfairness Claims—which generally require proof of harm to consumers, *see* MTD Order at 46—the AGs seek to premise liability on harms to U13 users allegedly resulting from *all of the other features* on Meta's platforms. *See, e.g.*, Estes Rpt. ¶ 31 (purporting to link Meta's age verification to harms from "infinite scroll, autoplay[] [and] push notifications"). But this Court has already found several of those features barred from challenge under Section 230. *See* MTD Order at 25–29 ("infinite scroll," "ephemeral content," "notifications," like counts, and algorithms protected under Section 230).

***Third-Party Filters.*** The AGs contend that "appearance-altering filters" had negative effects on certain users of Meta's platforms. *See* AGs' Trial Planning Brief at 5–6. To the extent those filters are

---

[2] The Court's ruling denying Meta's motion to dismiss the personal injury plaintiffs' claims premised on purportedly inadequate age verification, ECF 430 at 14–15, predated *Backpage* and *Grindr*. And this Court did not previously address whether the AGs' Unfairness Claims survived Section 230 based on allegedly inadequate age verification because the AGs did not purport to premise those claims on that feature until six months after the close of fact discovery, as discussed *infra* Part III.

META'S MOTION IN LIMINE NO. 5 TO EXCLUDE EVIDENCE OR ARGUMENT THAT META'S AGE VERIFICATION FEATURES AND
COSMETIC SURGERY OR OTHER THIRD-PARTY FILTERS ARE UNFAIR PRACTICES
4:22-md-03047-YGR; 4:23-cv-05448-YGR

developed by third parties (as opposed to Meta), Section 230 immunizes Meta from liability for alleged harms flowing from them. Such filters are third-party content and thus Meta's decisions whether to include or exclude those filters are "perforce immune under section 230." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1170–71 (9th Cir. 2008)*; see also Angelilli v. Activision Blizzard, Inc.*, 781 F. Supp. 3d 691, 699 (N.D. Ill. 2025) (no liability based on "user-generated games" because they are "plainly . . . third-party content"); *cf. Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1091–93 (9th Cir. 2021) (Snap's own "speed filter," unlike here, involved Snap's own product design). By its terms, Section 230 bars courts from treating internet service providers like Meta as "the publisher or speaker of any information provided by *another* information content provider." 47 U.S.C. § 230(c)(1) (emphasis added). Yet testimony that "the existence of cosmetic surgery effects"—which Meta did not itself create—"could contribute to a teenage girl's mental health issues" does just that. Stewart Dep. Tr. at 45:2–24.

In their interrogatory responses, the AGs listed "visual filters that simulate plastic surgery" as an unfair practice, describing those filters as "features [Meta] knows promote eating disorders." ECF 2789-23 at 11–16. However, Meta *never* provided cosmetic surgery filters on Instagram or Facebook. *See* Ex. C at -359 ("Instagram does not produce any first party cosmetic surgery effects."). To the extent such filters were ever available on Meta's platforms, they were posted by third-party creators. *See id.* And evidence or argument about Meta's decisions about whether and how to ban third-party filters on its platforms "necessarily involves treating [Meta] as a publisher of the content it failed to remove." *Barnes*, 570 F.3d at 1103.

At the pleading stage, this Court found the AGs had plausibly alleged that "Meta's promotion" of certain appearance-altering filters created a "harm separate and apart from publication of any third-party content." MTD Order at 29–30. But this Court did not address whether Section 230 bars claims premised on filters created exclusively by and for third parties. Further, Meta's creation of a neutral platform for third parties to post filters does not transform it into a content provider of those filters. *See Roommates.Com*, 521 F.3d at 1167–68, 1182 ("development" "refer[s] not merely to augmenting the content generally, but to materially contributing to its [alleged] unlawfulness"). Because Meta "was not

META'S MOTION IN LIMINE NO. 5 TO EXCLUDE EVIDENCE OR ARGUMENT THAT META'S AGE VERIFICATION FEATURES AND COSMETIC SURGERY OR OTHER THIRD-PARTY FILTERS ARE UNFAIR PRACTICES
4:22-md-03047-YGR; 4:23-cv-05448-YGR

responsible, even in part" for the content of cosmetic surgery filters on its platforms, Meta "cannot be considered an 'information content provider' under" Section 230. *Carafano*, 339 F.3d at 1124.

## II. The First Amendment Bars the AGs' Claim that Meta's Age-Verification Processes Are an Unfair or Unconscionable Practice.

Permitting liability based on evidence of Meta's age-verification decisions would necessarily alter how Meta determines which users can access Instagram—that is, which users Meta chooses to speak to and publish, thereby burdening Meta's own speech.

The First Amendment protects Meta's "choices about the views [it] will, and will not, convey" in a compilation of speakers, as well as Meta's decision to speak to selected individuals in that group. *Moody v. NetChoice LLC*, 603 U.S. 707, 737 (2024); *see also, e.g.*, *Hurley*, 515 U.S. at 570, 574 ("selection of contingents to make a parade" implicated organizer's "right as a private speaker to shape its expression"); *Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 254 (1974) (First Amendment barred "enforceable right of access" to newspaper). Because the "overall message" of Meta's platforms is "distilled from the individual presentations," each user's "expression" is "perceived by spectators as part of the whole." *Hurley*, 515 U.S. at 577. And Meta's editorial decisions about which users can speak on its platforms— "whether fair or unfair"—"constitute[] the exercise of editorial control and judgment." *Tornillo*, 418 U.S. at 258. That editorial discretion necessarily includes the right to speak to chosen listeners. *See, e.g.*, *Martin v. City of Struthers, Ohio*, 319 U.S. 141, 146–47 (1943); *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 867 (1982).

Just so here. Meta's age verification standards reflect its judgments about who should access and be published on Instagram, and facilitate the related expressive message Meta wishes to send about the community it seeks to foster. Evidence or testimony that Meta should have acted differently to keep certain users off Instagram effectively seeks to dictate how Meta "advance[s] its own political, social, and economic views." *Tornillo*, 418 U.S. at 255. Evidence of Meta's age-verification practices should therefore be excluded because those practices are protected as Meta's own speech.

### III.    The AGs Have Waived Their Ability to Challenge Meta's Age Verification Systems as an "Unfair and Unconscionable" Practice, Precluding Such Evidence at Trial.

The AGs did not disclose that theory of "Unfairness" until six months after the close of fact discovery.  *See Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL 3155574, at *5 (N.D. Cal. Aug. 2, 2012) (excluding evidence where party "failed . . . to disclose to [defendant] some of the bases of its . . . theories [of liability] until after the close of discovery").[3]  In their Original and Amended Complaints, the AGs identified a list of specific purported features on which their Unfairness Claims were premised.  *See* ECF 73-2 and 207, 4:23-cv-05448-YGR (6/4/26 Simonsen Decl. Exs. A & I), ¶ 847 (alleging that five features—"infinite scroll, ephemeral content features, autoplay, quantification and display of 'Likes,' and disruptive alerts"—"promote compulsive, prolonged, and unhealthy use by young users").  Those lists did *not* include age verification.  And, in opposing Meta's motion to dismiss, the AGs identified eight product features as claimed "Unfair" practices, none of which included age verification.  *See* MTD Order at 21 (AGs' claims for "unfair and/or unconscionable practices . . . focus on the harm caused by specific product features (eight identified in this motion)"); *id*. at 25–31 (listing the eight features at issue).

The Court winnowed the issues for trial at the MTD stage by addressing claims based on each of the challenged features.  From among the eight features the AGs sought to put at issue, the Court "held that Section 230 bars the States' unfairness claims relating to many platform features, *except for* allegations relating to appearance-altering filters, features that hinder time restrictions, and the 'multiple accounts' function."  MTD Order at 45 (emphasis added).  As to those three features only, the Court "proceed[ed] to an assessment on the merits" of the AGs' Unfairness Claims under the laws of each State.  *Id*.  Thus, as of the Court's ruling on October 15, 2024, the scope of the Unfairness Claims had been determined through the Court's "conduct-specific, feature-by-feature analysis" to assess Section 230's applicability to specific features.  MTD Order at 25.

---

[3] *See generally* Decl. of Ashley M. Simonsen Attaching Follow-Up Materials Relevant to Meta's Opposition to State AGs' Motion to Strike Five Meta Witnesses from Meta's Trial Witness List ("6/4/26 Simonsen Decl.") (ECF 3105-2 through -22) (attaching excerpts of pleadings, discovery responses, and briefing showing AGs did purport to premise Unfairness Claims on age verification until October 2025 at the earliest).

Nevertheless, a year later—and six months after discovery had closed—the AGs served a third amended interrogatory response in which they identified age verification *for the first time* as a purported premise of their Unfairness Claims. Meta's Interrogatory No. 4—served on May 3, 2024—asked the AGs to identify all "unfair" or "unconscionable" practices that they allege violated any state law under which they seek recovery. *See* ECF 2789-23 (6/4/26 Simonsen Decl. Ex. F) at 11. Consistent with the allegations of their Complaint, their MTD briefing, and the Court's MTD Order, the AGs' First and Second Amended responses to that interrogatory—served June 3, 2024 and April 10, 2025—*did not list* Meta's age-verification processes as an unfair practice. *See* ECF 2789-23 (6/4/26 Simonsen Decl. Ex. F) at 11–16 (June 3, 2024); ECF 2787-18 (6/4/26 Simonsen Dec. Ex. H) at 8–10 (Apr. 10, 2025).[4] Six months after fact discovery ended, however, the AGs served a Third Amended Response in which they asserted *for the first time* that their Unfairness Claims were premised not only on appearance-altering filters, multiple accounts, and time-management tools, *but also age verification*. *See* October 6, 2025 AGs' Third Supp. Interrog. Resp. (6/4/26 Simonsen Decl. Ex. J) at 9–10.

The AGs' belated disclosure of age verification as an "Unfair" practice has unfairly prejudiced Meta. Unlike the AGs' COPPA or deception claims, the Unfairness Claims require a showing that—for each challenged feature—the harm to consumers outweighs the benefit from the practice. *See generally* MTD Order at 46–57, 59–60 (describing tests under Section 5 of FTC Act, the *Sperry* factors, and state-specific standards, including California, Colorado, and New Jersey). By contrast, neither the AGs' COPPA claim nor their deception claims require any showing of harm to consumers. *See*, *e.g.*, *People v. Overstock.com, Inc.*, 12 Cal. App. 5th 1064, 1078–79 (Cal. Ct. App. 2017) ("Actual deception or confusion caused by misleading statements is not required.") (citation omitted); 15 U.S.C. § 6502(a)(1) (COPPA liability requires "actual knowledge" or a service "directed to children"). Thus, without fair notice that the AGs planned to allege that age verification is an "Unfair" practice, Meta was not fairly apprised of the need to develop evidence related to alleged harms from its age verification practices, or

---

[4] Age verification also is not mentioned in the portion of the response identifying Meta's alleged violation of COPPA as a separate basis for the State AGs' Unfairness Claims, which in any event raises different issues from whether Meta's processes and systems for verifying users' ages constitute an unfair practice. *See* ECF 2789-23 (6/4/26 Simonsen Decl. Ex. F) at 14–15 (asserting that Meta has "actual knowledge" of under-13 users on its platforms and that Meta "directs Instagram and Facebook to children").

META'S MOTION IN LIMINE NO. 5 TO EXCLUDE EVIDENCE OR ARGUMENT THAT META'S AGE VERIFICATION FEATURES AND COSMETIC SURGERY OR OTHER THIRD-PARTY FILTERS ARE UNFAIR PRACTICES
4:22-md-03047-YGR; 4:23-cv-05448-YGR

evidence demonstrating that the benefits of its practices outweigh those claimed harms—the essential elements of an Unfairness claim.  Thus, the AGs' delay in disclosing this theory—until after fact discovery closed—unfairly prejudiced Meta.  Further, discovery related to the *efficacy* of Meta's age verification processes—which relates to the AGs' COPPA and deception claims—does not fully address the issues of consumer harm that are central to any Unfairness Claim involving age verification.

**CONCLUSION**

For the foregoing reasons, the Court should preclude the AGs from introducing evidence or argument at trial that Meta's age-verification processes or cosmetic surgery filters (and other filters developed exclusively by third parties) constitute unfair or unconscionable trade practices.

DATED:  June 9, 2026

Respectfully submitted,

By:    */s/ Ashley M. Simonsen*

Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

Paul W. Schmidt, *pro hac vice*
Timothy C. Hester, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
Email: pschmidt@cov.com
Email: thester@cov.com

*Attorneys for Defendants Meta Platforms, Inc.*
*f/k/a Facebook, Inc. and Instagram, LLC*