# Exhibit A

*LIST OF COUNSEL ON SIGNATURE PAGE*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STATE OF ARIZONA,** ex rel. KRIS MAYES, ATTORNEY GENERAL; | **AMENDED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF** |
| **THE PEOPLE OF THE STATE OF CALIFORNIA**; | |
| **STATE OF COLORADO**, ex rel. PHILIP J. WEISER, ATTORNEY GENERAL; | |
| **STATE OF CONNECTICUT**; | |
| **STATE OF DELAWAR**E, *ex rel.* KATHLEEN JENNINGS, ATTORNEY GENERAL OF THE STATE OF DELAWARE; | |
| **STATE OF HAWAI'I**, ex rel. ANNE E. LOPEZ, ATTORNEY GENERAL; | |
| **STATE OF IDAHO**, through ATTORNEY GENERAL RAÚL R. LABRADOR; | |
| **THE PEOPLE OF THE STATE OF ILLINOIS**; | |
| **STATE OF INDIANA**; | |
| **STATE OF KANSAS**, ex rel. KRIS W. KOBACH, Attorney General; | |
| **COMMONWEALTH OF KENTUCKY**; | |

**STATE OF LOUISIANA**;

**STATE OF MAINE**;

**OFFICE OF THE ATTORNEY GENERAL OF MARYLAND**;

**STATE OF MINNESOTA**, by its ATTORNEY GENERAL, KEITH ELLISON;

**STATE OF NEBRASKA** *ex rel.* MICHAEL T. HILGERS, ATTORNEY GENERAL;

**MATTHEW J. PLATKIN**, ATTORNEY GENERAL FOR THE **STATE OF NEW JERSEY**, AND **ELIZABETH HARRIS,** ACTING DIRECTOR OF THE **NEW JERSEY DIVISION OF CONSUMER AFFAIRS**;

**THE PEOPLE OF THE STATE OF NEW YORK**, by LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK;

**STATE OF NORTH CAROLINA**, *ex rel.* JEFF JACKSON, ATTORNEY GENERAL;

**STATE OF OHIO**, *ex rel.* ATTORNEY GENERAL DAVE YOST;

**STATE OF OREGON** *ex rel.* DAN RAYFIELD, ATTORNEY GENERAL FOR THE STATE OF OREGON;

**COMMONWEALTH OF PENNSYLVANIA** BY ATTORNEY GENERAL DAVID W. SUNDAY JR.;

**STATE OF RHODE ISLAND;**

**STATE OF SOUTH CAROLINA,** *ex. rel.* ALAN M. WILSON, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF SOUTH CAROLINA;

2

Amended Complaint for Injunctive and Other Relief

**STATE OF SOUTH DAKOTA** *ex rel.* MARTY J. JACKLEY, SOUTH DAKOTA ATTORNEY GENERAL;

**COMMONWEALTH OF VIRGINIA**, *ex rel.* JASON S. MIYARES, ATTORNEY GENERAL;

**STATE OF WASHINGTON**, *ex rel.* NICHOLAS W. BROWN, ATTORNEY GENERAL;

**STATE OF WEST VIRGINIA**, *ex rel.* JOHN B. MCCUSKEY, ATTORNEY GENERAL; and

**STATE OF WISCONSIN**,

                    **Plaintiffs,**

            **v.**

**META PLATFORMS, INC.;**

**INSTAGRAM, LLC;**

**META PAYMENTS, INC.**; and

**META PLATFORMS TECHNOLOGIES, LLC,**

                    **Defendants.**

3

**TABLE OF CONTENTS**

IN THE UNITED STATES DISTRICT COURT ........................................................... 1

I.      SUMMARY OF THE CASE ............................................................................ 1

II.     PUBLIC INTEREST .......................................................................... 4

III.    JURISDICTION, VENUE AND DIVISIONAL ASSIGNMENT ..................................... 4

        A.      Jurisdiction ................................................................ 4

        B.      Venue ............................................................................ 5

        C.      Divisional Assignment ..................................................... 5

IV.     RELEVANT TIMES ......................................................................... 5

V.      PLAINTIFFS ................................................................................. 6

VI.     DEFENDANTS ............................................................................. 6

VII.    TRADE AND COMMERCE IN THE FILING STATES ........................................ 10

VIII.   META'S SCHEME TO EXPLOIT YOUNG USERS FOR PROFIT ............................ 11

        A.      To maximize profit, Meta's business model focuses on increasing young
                users' engagement ........................................................... 11

                1.      Meta monetizes young users' attention through data harvesting and
                        targeted advertising. ............................................ 11

                2.      Meta specifically targets young users. ............................. 14

                3.      Meta designs and deploys features to capture young users'
                        attention and prolong their time on its Social Media Platforms. ............. 19

        B.      Meta falsely represents that its Social Media Platform features are safe and
                not designed to induce young users' compulsive and extended use. .................... 22

                1.      Meta represents to the public that its Social Media Platforms are
                        designed to support young users' well-being ......................... 23

                2.      Meta prioritizes maximizing engagement over young users' safety. ....... 25

                3.      Meta's Recommendation Algorithms encourage compulsive use,
                        which Meta does not disclose. ..................................... 27

                4.      The Recommendation Algorithms are harmful to young users'
                        mental health, notwithstanding Meta's representations to the
                        contrary. ........................................................ 34

                5.      Meta's use of social comparison features such as "Likes" also
                        promotes compulsive use and mental health harms for young users. ........ 40

                6.      Meta's use of disruptive audiovisual and haptic notifications
                        interferes with young users' education and sleep. .................. 50

i

7.    Meta promotes Platform features such as visual filters known to promote eating disorders and body dysmorphia in youth. ........................ 56

8.    Meta offers features that it claims promote connection between friends, but actually serve to increase young users' time spent on the Platform. ................................................................................ 60

9.    Through its Platform features, Meta discourages young users' attempts to disengage, notwithstanding Meta's representations to the contrary. ................................................................................ 61

10.   Meta knows its Platform features are addictive and harmful, but misrepresents and omits this information in public discourse. ................ 66

11.   Meta makes its Platforms and associated harmful features available to especially young and vulnerable users. .................................................. 69

C.    Meta has misled its users and the public by boasting a low prevalence of harmful content on its Social Media Platforms—while concealing internal studies showing the high incidence of user harms. ............................................... 73

D.    Meta's Platform features cause young users significant physical and mental harm, of which Meta is keenly aware. ...................................................... 80

IX.    META'S COPPA NONCOMPLIANCE ...................................................................... 103

A.    COPPA requires Meta to obtain verifiable parental consent for Instagram and Facebook users under the age of 13. ............................................................. 103

B.    Meta does not comply with COPPA with respect to Instagram. ........................ 105

1.    Meta possesses actual knowledge of children on Instagram and collects their personal information without obtaining parental consent. ................................................................................ 105

2.    Instagram is "directed to children." ........................................................ 121

3.    Meta does not obtain verifiable parental consent before collecting personal information from users under the age of 13 on Instagram. ...... 133

C.    Meta does not comply with COPPA with respect to Facebook. ........................ 134

1.    Meta has actual knowledge of users under age 13 on Facebook. ........... 134

2.    Facebook is "directed to children." ........................................................ 135

3.    Meta does not obtain verifiable parental consent before collecting personal information from users under age 13 on Facebook. ................. 137

X.    META CONTINUES TO EXPAND AND INTRODUCE NEW PLATFORMS .......... 138

XI.    SUMMARY OF META'S DECEPTIVE AND UNFAIR OR UNCONSCIONABLE ACTS AND PRACTICES ........................................................ 139

A.    Deceptive Acts and Practices .............................................................................. 139

B.    Unfair and/or Unconscionable Acts and Practices ............................................. 140

ii

CLAIMS FOR RELIEF ................................................................................................ 141

PRAYER FOR RELIEF ............................................................................................... 193

Amended Complaint for Injunctive and Other Relief

664. Externally, Meta denies that it strives to attract underage users to its Platforms. For example, in September 2021, in response to a Wall Street Journal article regarding underage users on Instagram, Meta provided a written statement claiming that "[l]ike all technology companies, of course we want to appeal to the next generation, but that's entirely different from the false assertion that we knowingly attempt to recruit people who aren't old enough to use our apps."

### c. Emails and policies document Meta's mishandling of known accounts for users under the age of 13.

665. Meta also acquired actual knowledge of specific under-13 user accounts through external complaints regarding users under the age of 13 on Instagram. In such cases, Meta frequently elected to continue retaining and collecting data from those accounts without obtaining verifiable parental consent as required by COPPA.

666. In February 2018, after learning of a potential under-13 user, Meta employees exchanged emails discussing how to contact the user's mother. One Meta employee suggested telling the mother that if her daughter was under 13, "we can keep her account up if you would like to take control over the account and update the bio accordingly." A Meta product policy manager acknowledged that Meta had "done something similar like this in the past" to "coach[]" a parent or parents to keep their under 13-year-old children's accounts online.

667. "Coaching" or offering parents ways to keep accounts open for their children under the age of 13 does not satisfy Meta's obligation to obtain verifiable parental consent under COPPA for the collection and use of the child's personal information. Meta's "coaching" does not provide parents with the notices required by COPPA, including notices of what personal information Meta is collecting from their children, nor does it satisfy COPPA's requirement to ensure that the person providing consent is actually the parent of the child.

668. In another email thread, Meta employees discussed why a 12-year-old girl's four accounts were not deleted, despite complaints from the girl's mother stating her daughter was 12 years old and requesting the accounts to be taken down. The employees concluded that "the accounts were ignored" in part because representatives of Meta "couldn't tell for sure the user was underage."

669.    In this instance and many others, Meta did not meaningfully enforce its nominal age restriction on Instagram, despite its external claims to the contrary, including in Davis's September 30, 2021 congressional testimony, in which she stated that "we will remove [underage accounts]."

670.    Upon information and belief, Meta did not promptly delete the personal data of these and other under-13 users upon obtaining actual knowledge that the user was under the age of 13, and instead retained and used some or all of the underage user's personal data, without first obtaining verifiable parental consent.

671.    Additionally, Meta has a policy of automatically ignoring certain external reports that Instagram users are under 13 years old. After Meta receives a report that an Instagram user is under 13 years old, Meta's policy is to allow the user to continue using their Instagram account and disregard the report if the account does not contain a user bio or photos.

672.    While Meta ignores reports that users are under 13, Meta continues collecting personal information from those users without obtaining or even seeking parental consent.

673.    In 2021, Meta received over 402,000 reports of under-13 users on Instagram via its underage reporting webform and in-app underage reporting process. But Meta's records show that fewer than 164,000—far fewer than half of the reported accounts—were "disabled for potentially being under the age of 13" that year.

674.    Despite receiving reports of users under the age of 13, Meta continually failed to prioritize effective age gates and COPPA compliance. For example, Meta chose not to build a classifier to detect minors under 13. This type of work was often sidelined and received neither adequate resources nor adequate leadership support.

675.    In sum, after Meta failed to effectively exclude under-13 users from using Instagram, Meta acquired actual knowledge that specific children were on Instagram when concerned parents, siblings, teachers, and community members *told* Meta about individual children on Instagram. Still, Meta declined to remove many of those children's accounts and instead elected to continue unlawfully collecting personal information from those children.

Amended Complaint for Injunctive and Other Relief

676.    Between the first quarter of 2019 and the second quarter of 2023, Meta received over 1.1 million reports of under-13 users on Instagram via its underage reporting webform and in-app underage reporting process. These processes were only a few of many ways that Meta acquired actual knowledge of under-13 users on its Social Media Platforms. Despite this actual knowledge, Meta disabled only a fraction of those accounts and routinely continued to collect children's data without parental consent.

677.    Similarly, Meta routinely mishandled and failed to disable Instagram accounts that were "linked" to Facebook accounts where Meta had actual knowledge that Facebook users were under the age of 13.

678.    Meta collects information that identifies accounts on its various Social Media Platforms that belong to the same individual user. For example, Meta collects email addresses from users when they set up new Facebook and Instagram accounts. Meta instructs its Instagram and Facebook users to provide an email address "that only you can access." In or around September 2020, Meta released a feature called "Accounts Center," which allows users to link their accounts on Facebook, Instagram, and Messenger using a single sign on.

679.    On information and belief, Meta also provided its users with other ways to link their Facebook and Instagram accounts before September 2020, including as early as 2017. For example, an internal memo from June 2017 proposes suggesting friends to Facebook users using their followers on Instagram, "[f]or Instagram users we can match to Facebook accounts (either through linking or inference)."

680.    As with Instagram, Meta routinely learns that users of its Facebook Platform are under 13 from sources including reports from concerned parents, siblings, friends, and teachers.

681.    But even after acquiring actual knowledge that Facebook users are under 13 years old, Meta has neither promptly disabled those users' linked accounts on Instagram nor obtained parental consent for those users.

682.    For example, from September 2020 to December 2021, when Meta obtained actual knowledge that Facebook users were under 13 and placed their Facebook accounts into an "age checkpoint," Meta continued collecting personal information from the users' linked Instagram accounts

111

in their "Accounts Center" and failed to seek parental consent. Externally, however, Meta claimed in a July 27, 2021 post, titled "How Do We Know Someone Is Old Enough to Use Our Apps?," that it used a users' age stated to either Platform to gate users' access to both Platforms.

683.    Upon information and belief, even after Meta obtains actual knowledge that a Facebook user is under 13 years old, Meta neither stops collecting personal information from Instagram accounts that are connected to the same email address (without being officially "linked" through Meta's "Accounts Center"), nor does it obtain parental consent for those users.

684.    Meta knows that its failure to take action after learning of under-13 users jeopardizes its compliance with the law: an internal Meta report reveals that "our basic COPPA compliance is at risk when product does not prioritize checkpointing and disabling u13s. We also do not yet cross-enforce against u13s discovered on IG who have hard-linked FB accounts."

685.    Meta deceives the public regarding its policies when underage accounts are reported. If someone reports that an account belongs to an individual under the age of 13, Meta claims on its Instagram Help Center that "we will delete the account if we can't verify the account is managed by someone over 13 years old." Meta also has prepared talking points stating that the company requires users "to prove they are over 13 in order to regain access to their account" after it has been reported to belong to an underage user. Zuckerberg told Congress on March 25, 2021, "if we detect that someone might be under the age of 13, even if they lied, we kick them off."

686.    In practice, and as detailed above, Meta employees often do not take action unless they can verify that the account actually belongs to an underage user. This results in underage accounts remaining on the Platform despite having been reported to Meta as belonging to users under the age of 13. As a matter of policy, Meta employees generally do not take action if the reported account does not contain a user bio or photos.

687.    And while Meta has developed talking points to claim that it "promptly delete[s]" underage accounts after they are reported, in reality, Meta at times has a backlog of 2-2.5 million under 13 accounts awaiting action—and permits the collection of data from those accounts until Meta can evaluate the reported account.

688.    Internal documents from April 2021 recognize that "[a]ge verification (for under 13) has a big backlog and demand is outpacing supply" because of the "lack of [staffing] capacity."

### d.    Meta's researchers discussed strategic exclusion of 10- to 12-year-old Instagram users.

689.    Meta employees tasked with conducting quantitative research related to users of Instagram routinely encountered the problem of how to conduct research into Instagram's user base without revealing the fact that millions of Instagram users are under the age of 13.

690.    One approach Meta's researchers employed was to purposely exclude Instagram's under-13 users from their studies, in order to avoid creating a paper trail documenting the company's unlawful collection of personal data from children.

691.    In February 2018, while discussing research on bullying on Instagram, Meta employee Fiona Brown cautioned: "we just want to make sure to be sensitive about a couple of Instagram-specific items. For example, will the survey go to under 13 year olds? Since everyone needs to be at least 13 years old before they create an account, we want to be careful about sharing findings that come back and point to under 13 year olds being bullied on the platform."

692.    Similarly, in February 2021, Meta researcher ███████████████████ noted that she was "not includ[ing] younger kids (10-12 yrs) in this research" that involved studying "child-adult sexual-related content/behavior/interactions," explaining that there "are definitely kids this age on IG" but that she was "concerned about risks of disclosure since they aren't supposed to be on IG at all."

693.    In 2021, Meta contracted with a vendor, Answer Lab, to conduct a survey of preteens. Meta instructed Answer Lab to not inform Meta employees if any of the preteen survey subjects were on Instagram, so that Meta "as a company won't be made aware of under 13."  However, despite Meta's efforts to shield itself from this knowledge, it learned that several of the preteen subjects were active on Instagram.

694.    An internal Meta presentation titled "User Trends" from 2021 reveals that Meta has completed studies on the privacy needs of tweens while building products for that target group.

730. Rather than excluding under-13 users from Instagram, Meta could alternatively comply with COPPA by obtaining informed parental consent after providing notice to parents of its intent to collect and use children's personal information. Meta chooses not to do so.

731. Despite knowing that its lack of age gates and later implementation of minimal age gate designs have allowed users under age 13 onto Instagram, Meta does not obtain verifiable parental consent before collecting the personal information of those users who routinely register for, and provide their personal information to, Instagram.

### f. Data from Meta's age-estimation algorithms confirms that millions of individual accounts belong to children under age 13.

732. Because Meta knows that the self-reported ages of its youngest users are inaccurate, Meta maintains additional repositories of user age data generated by Meta's "age modeling algorithms" (or age models) that calculate each user's age based on sources of information that are more reliable than mere self-disclosures provided by children. These calculated ages are referred to internally as "modified" ages, "estimated" ages, or "imputed" ages.

733. Meta creates and retains records reflecting the estimated ages of all of its users, as determined by those age-modeling algorithms, sometimes referred to as "age affinity."

734. Upon information and belief, when Meta internally tracks users' ages for purposes of planning and strategy, Meta internally modifies the "stated" age of users to yield "modified" ages (i.e., Meta's best estimate of the users' actual ages based on data collected from their use of Meta's Platforms).

735. An internal presentation from September 2019, entitled "How are Teens doing on IG," included historic data representing daily active users of Instagram in the United States according to Meta's "Age Affinity model." The presentation included usage trends in demographics identified as "13 y" and "<13 y" from March 2018 through July 2019. Meta's use of its Age Affinity model to track "<13 y" users of Instagram in the United States is one of many ways that Meta employees acquired actual knowledge that under-13 users were using Instagram and that Meta was therefore collecting their user data.

736.    In 2021, Mosseri "green lighted u13 modeling," approving the development of an age model specifically designed to identify users under the age of 13.

737.    As recently as September 2021, ████ instructed Meta employees to use stated ages for purposes of "privacy" and modeled ages for purposes of "engagement" (i.e., increasing users' engagement with Instagram and thereby increasing Meta's revenue). Meta does not use stated ages for engagement because Meta knows that stated ages are not accurate. Meanwhile, Meta publicly maintains that it does not allow under-13 users on its Platforms, relying primarily on its faulty age-collection at sign-up.

738.    Davis internally took issue with Meta's practice of cherry-picking the contexts in which it used stated ages and modeled ages. In September 2020, she wrote that Meta "need[s]  leadership to support the basic principle that if we're using a signal to predict age for business purposes, it should be used to enforce on age."

739.    On information and belief, Meta employees review Meta's age-modeling data—both through aggregate reports summarizing users' ages and on the basis of individual user accounts.

740.    On information and belief, some of Meta's age-estimation algorithms and related reporting methods have artificially imposed a minimum "floor" on predicted user ages, preventing the algorithm from reporting an under-13 age for a particular user, even when the user is in fact under 13 years of age.

741.    On information and belief, other age-estimation algorithms and related reporting methods used by Meta presently and/or historically do not prevent the algorithm from reporting an age under 13 for a particular user; such algorithms and reports can and do accurately report to Meta employees that individual users of Instagram are under 13 years of age.

742.    On information and belief, through its possession of and review of estimated age data, Meta employees have frequently acquired actual knowledge that individual users of Instagram are under 13 years of age and that the personal information of under-13 users on Instagram is being collected by Meta.

120

743. Meta externally claimed, through congressional testimony provided by Mosseri on December 8, 2021, that "we train our technology to identify if people are above or below 18 using multiple signals,"—including birthday posts—and that Meta is building new technology to do the same for users under 13. But internal documents reveal that Meta sometimes limits such age-modeling to users over the age of 13.

744. Former Meta Director of Site Integrity and former consultant to Meta Bejar testified that Meta does not meaningfully utilize birthday posts to identify users who claim to be over 13 years old but are not. In fact, Meta's internal reporting mechanism for using birthday posts is complicated which prevents most reports from reaching "completion," or the point where a person successfully submits a report to Instagram.

745. Despite Meta's actual knowledge, acquired through its possession and review of estimated age data and/or acquired through other sources, that Meta collects personal information of users under the age of 13 in the ordinary course of its operations, Meta does not obtain verifiable parental consent for under-13 users.

### 2. Instagram is "directed to children."

746. Independent of Meta's "actual knowledge" of users under age 13, Meta is also subject to COPPA's verifiable parental consent requirement because Instagram, or a portion thereof, is "directed to children." *See* 15 U.S.C. § 6502(a)(1); 16 C.F.R. § 312.2.

747. The FTC promulgated regulations implementing Section 6502(b) of COPPA, including 16 C.F.R. § 312.2, which defines website or online service "directed to children" as one "that is targeted to children." The regulation lists factors for determining whether an online service, or a part thereof, is directed to children and therefore subject to the statute's "verifiable parental consent" requirement. These factors include:

> subject matter, visual content, use of animated characters or child-oriented activities and incentives, music or other audio content, age of models, presence of child celebrities or celebrities who appeal to children, language or other characteristics of the Web site or online service, as well as whether advertising promoting or appearing on the Web site or online service is directed to children. The Commission will also consider



766.    Meta's practice of hosting advertisements targeting children is another way that Instagram is directed to children.

      c.     **Meta's design of the Instagram registration process allows children under 13 to use Instagram.**

767.    As set forth in detail above, Instagram first utilized no age gate for several years, then implemented an age gate that defaulted to a user age of 13 or above, then implemented an age gate that depends on children to self-report their own age. Meta is aware that because of these intentional design choices, under-13 users routinely supply a false date of birth when registering for Instagram.

768.    Meta has access to, and chooses not to use, alternative feasible age verification methods that would significantly reduce or eliminate the number of underage users on Meta's Social Media Platforms, for example, by requiring young users to submit student IDs upon registration.

769.    Instagram's decision not to use effective age verification that would exclude under-13 users is one way that it effectively targets and welcomes under-13 users onto the Platform.

770.    Because Meta does not effectively exclude users under the age of 13 from Instagram, Meta's external narrative regarding its COPPA compliance and age verification is misleading, including inaccurate public statements by Zuckerberg himself. This has been acknowledged by Meta's own employees. While discussing Zuckerberg's congressional statements in March 2021, Software Engineer ███████████████ noted: "Oof. This statement that mark made isn't accurate: 'And we have additional systems that try to determine what someone's age might be so if we detect that someone might be under the age of 13, even if they lied, we kicked them off.' We don't have u13 models today."

### d.    Users under age 13 are an "intended audience" of Instagram.

771.    Under 16 C.F.R. § 312.2, "evidence regarding the intended audience" of an online service is relevant to determining whether an online service, or a portion thereof, is directed to children. A platform is "directed to children" if it targets children as "one of its audiences—even if children are not the primary audience."[38]

772.    Meta's internal communications show users under age 13 are an intended audience of Instagram.

773.    An internal email from 2020 between Mosseri and ███████████████, then Facebook Engineering Director—Youth Team, states that Meta explicitly intended for its users under age 13 to "age up" from Messenger Kids (Meta's product that is designed and marketed to children under the age of 13) to the full Instagram Platform "*in their tweens years* as they get a cellular phone," before these users were nominally allowed on Instagram (emphasis added). The same email emphasized the importance of "solidifying [Meta's] dominance in the youth space" to secure a new generation of Instagram users.

774.    Additionally, Research Director for Instagram ██████ wrote to Davis in 2021 that "Instagram is investing in experiences targeting youth aged roughly 10- to 12," noting that "research

---

[38] July 2020 COPPA Guidance, *supra* note 35.

127

Amended Complaint for Injunctive and Other Relief