# Exhibit B



*LIST OF COUNSEL ON SIGNATURE PAGE*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| *People of the State of California, et al.* | MDL No. 3047 |
| *v.* | Case Nos. 4:23-cv-05448-YGR |
| *Meta Platforms, Inc., Instagram, LLC, Meta Payments, Inc., Meta Platforms Technologies, LLC* | 4:23-cv-05885-YGR |
| ------------------------------------------------------- | |
| *Office of the Attorney General, State of Florida, Department of Legal Affairs* | **STATES' OPPOSITION TO META'S MOTION TO DISMISS THE MULTISTATE ATTORNEYS GENERAL COMPLAINT AND FLORIDA ATTORNEY GENERAL COMPLAINT** |
| *v.* | |
| *Meta Platforms, Inc., Instagram LLC* | Date: TBD |
| | Time: TBD |
| ------------------------------------------------------- | Place: Oakland, California |
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | Judge: Honorable Yvonne Gonzalez Rogers |
| THIS DOCUMENT RELATES TO: 4:23-cv-05448, 4:23-cv-05885 | |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION AND BACKGROUND ................................................................................... 1

STANDARD OF REVIEW ....................................................................................................... 4

ARGUMENT ............................................................................................................................ 5

I.    The States' COPPA claim should not be dismissed ................................................. 5

    A.    Meta's motion is procedurally improper .................................................. 6

    B.    The States sufficiently plead that Meta's Platforms are directed to children ........................................................................................................ 7

        1.    Meta misconstrues the States' COPPA claim ................................ 8

        2.    The States adequately allege children are an intended audience of the Platforms ........................................................... 9

        3.    The States adequately allege empirical evidence of audience composition ................................................................. 10

        4.    The States adequately allege that Meta's Platforms feature child-oriented subject matter, characters, activities, music, and other content .................................................................. 10

        5.    The States adequately allege child-directed advertising promoting and appearing on the Platforms ............................... 12

        6.    The States adequately allege the Platforms' use of child models and celebrities who appeal to children ........................... 13

        7.    The States adequately allege child-oriented activities and incentives .................................................................................... 14

    C.    Endorsing the States' child-directed theory will not have dire consequences .......................................................................................... 14

II.    Section 230 does not bar the States' claims ............................................................ 14

    A.    Meta is not acting as a publisher of third-party content, as contemplated under Section 230 ................................................................ 15

    B.    This Court has previously held Section 230 does not bar claims based on numerous Platform features ......................................................... 17

    C.    Section 230 does not bar the States' additional claims based on Meta's addictive features .......................................................................... 19

        1.    Section 230 does not bar the States' claims based on Meta's features designed to keep users on its Platforms ........................ 19

        2.    Section 230 does not bar the States' claims based on Meta's features designed to lure users back onto its Platforms ............... 21

III.    The States adequately allege that Meta engaged in deceptive acts and practices ................................................................................................................... 23

**TABLE OF CONTENTS**
(continued)

Page

A.      Meta's misrepresentations are actionable statements of fact. ................... 25

B.      The States adequately plead deception under any pleading standard. ...... 26

     1.      The States adequately plead that Meta's stated policy regarding users under thirteen is deceptive because the policy does not reflect Meta's actual conduct............................. 27

     2.      The States adequately plead that Meta's emphasis on its CSER reports as the primary measure of online safety deceptively omits less favorable data............................. 28

     3.      The States adequately plead that Meta misled the public about its reasons for abandoning Project Daisy. ......................... 29

C.      Where necessary, the States readily allege Meta's misstatements are material.......................................................................................... 29

D.      Meta can be held liable for its deceptive statements before Congress. ........................................................................................ 32

IV.      The States sufficiently plead unfair and unconscionable business acts and practices............................................................................................. 34

A.      The States sufficiently plead that Meta violated Section 5 of the FTCA. ....................................................................................... 35

     1.      The States sufficiently plead substantial injury. .......................... 36

     2.      The States sufficiently plead that their alleged injury was not reasonably avoidable.............................................. 36

     3.      The States sufficiently plead that Meta's conduct is not outweighed by countervailing benefits. ...................................... 38

B.      The States sufficiently plead that Meta violated their unfairness or unconscionability laws. ................................................................. 39

V.      The States adequately plead conduct taking place in connection with trade and commerce and consumer transactions.......................................... 43

VI.      The States are entitled to restitution................................................... 45

VII.      The Middle District of Florida has personal jurisdiction over Meta Platforms, Inc. and Instagram, LLC.................................................... 47

CONCLUSION .......................................................................................... 50

ii

**III.    The States adequately allege that Meta engaged in deceptive acts and practices.**

The States plead a multifaceted scheme of statements and omissions by Meta that has misled consumers about the true harm, addictiveness, and COPPA non-compliance of its Platforms, as well as its own responsibility for these defects. Meta seeks dismissal of statements in isolation, but the States' claims must be evaluated according to the framing of the Complaint, not Meta's desired revision. And the appropriate inquiry is whether the many statements and omissions pleaded in the Complaint "contribute[] to the deceptive context . . . as a whole," even if they may not be actionable individually. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 n.3 (9th Cir. 2008).

The States allege that Meta engaged in deceptive acts and practices in violation of their consumer protection laws in five broad categories.[12] *First*, Meta created the false perception that its Platforms are not designed to induce extended or compulsive use,[13] when in reality they are so designed.[14] *Second*, Meta made misleading statements and omissions about the harmfulness and addictive nature of its Platforms,[15] in disregard of its own internal research and data.[16] *Third*, Meta publicized and promoted the prevalence metrics in its Community Standards Enforcement Reports ("CSER"), while omitting material and less favorable data on the prevalence of harmful experiences as set out in its Bad Experiences & Encounters Framework ("BEEF") and Tracking Reach of Integrity Problems Survey ("TRIPS") data.[17] *Fourth*, Meta misrepresented that it prioritized young users' health and safety over maximizing profits.[18] But in reality it subordinated the former to the

---

[12] Compl. ¶ 846; *see also, e.g., id.* at ¶¶ 122–33, 222, 829; Florida Attorney General Complaint, ("FL Compl."), *State of Florida v. Meta Platforms, Inc., et al.,* N.D. Cal. No. 4:23-cv-05885, ECF. 1 (filed Oct. 24, 2023), ¶¶ 45–72.

[13] *See* Compl. ¶ 846(a), (f); *see also, e.g., id.* at ¶¶ 135–37, 167–69, 191–92, 330–31, 374–75, 574.

[14] *See, e.g., id.* at ¶¶ 57, 66-116, 140–71, 376–413.

[15] *See id.* at ¶ 846(b); *see also, e.g., id.* at ¶¶ 120–33, 185–88, 265–66, 284–87, 294, 334–36, 375, 415, 419, 425, 427, 562–65, 571, 592–93, 596, 598, 829.

[16] *See, e.g., id.* at ¶¶ 179–82, 195–212, 228–47, 256–60, 262, 268–74, 290–92, 295, 312, 349–54, 364–66, 419, 428, 469–71, 482–86, 489, 491–500, 531–60, 584–85, 597, 599, 613–14, 618, 621.

[17] *See id.* at ¶ 846(c); *see also id.* at ¶¶ 458–507.

[18] *See id.* at ¶ 846(d); *see also, e.g., id.* at ¶¶ 85, 123, 125–27, 136, 222–23, 265, 275, 448.

23

latter, including by declining to invest in health and safety initiatives that would impact its bottom line.[19] *Fifth,* Meta claimed that it prevents under-13 users from using its Platforms when it was aware that a significant number of users under 13 can easily circumvent its porous age-gate, while employees look the other way.[20] Together the statements and omissions in the Complaint show a complex, multifaceted scheme of deception.

In any case, the States' claims of deception can proceed even were the Court to disregard some statements, so long as there remain some actionable predicates for deception. *See, e.g.*, *LeGrand v. Abbott Labs.*, 655 F. Supp. 3d 871, 893–94 (N.D. Cal. 2023). The States adequately plead many predicate statements that are actually false or misleading as well as predicate omissions—which Meta declines to address at all[21]—sufficiently under each of their State laws.

Because the States' deception claims survive, it is inappropriate to separately evaluate every single statement as detailed in Meta's lengthy appendix. As a preliminary matter, Meta does not explain the rationale behind its conclusory designations sufficiently to allow the States to respond, nor are these generic categories grounded in caselaw across the States. Indeed, Meta's arguments and appendix underscore why it is generally inappropriate to rule on the deceptive character of claims at the motion-to-dismiss stage, except in a "rare situation." *Williams*, 552 F.3d at 939. The States have more than met their burden for pleading deception, and Meta's specific objections to the States' deception claims are meritless.

---

[19] *See, e.g., id.* at ¶¶ 57, 63, 84, 248–50, 280–82, 322, 339–63, 610–30.

[20] *See id.* at ¶ 846(e); *see also, e.g., id.* at ¶¶ 434–40, 646–88, 695, 713–19.

[21] Meta misapprehends the States' allegations of deceit as "premised on Meta's failure to provide warnings about its algorithms or other 'engagement-inducing features.'" MTD at 25. To be clear: this is not just a failure-to-warn case. Meta's omissions contributed to the overall deceptive nature of its conduct. *See, e.g., Day v. AT&T Corp.*, 74 Cal. Rptr. 2d 55, 60 (Cal. Ct. App. 1998) ("A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable."). This includes, for example, Meta's many omissions of internal research and knowledge that would have detracted from Meta's public narrative regarding safety on its Platforms. Meta addresses none of these omissions in its motion or the attached appendix.

24

deception claims, *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 n.11 (9th Cir. 2020)—particularly salient here where many state courts do not treat deception claims as sounding in fraud[25]—this Court need not resolve this question because the States adequately plead deception under either Rule 8 or Rule 9(b). Meta suggests that all allegedly deceptive statements must be matched to allegations demonstrating their actual falsity, but the States need only show that these statements are likely to mislead when read in context. *Moore*, 966 F.3d at 1017.

> **1.** **The States adequately plead that Meta's stated policy regarding users under thirteen is deceptive because the policy does not reflect Meta's actual conduct.**

The States plead that Meta is aware that it does not follow its own age-gating policies to delete an account if it "can't verify" age. Compl. ¶¶ 680–88. The States plead specific instances where Meta had actual knowledge of under-13 accounts that it did not delete, such as an email where a Meta employee told a mother that her 12-year-old daughter's four accounts were not deleted because Meta "couldn't tell for sure." *Id.* at ¶ 668. The States also allege that Meta routinely ignored reports of under-13 users when there was no bio or photo associated. *Id.* at ¶ 671. Between the first quarter of 2019 and the second quarter of 2023, Meta received over 1.1 million reports of under-13 accounts. *Id.* at ¶ 676. Of the 402,000 reports that Meta received in 2021, 60% of the associated accounts were not disabled. *Id.* at ¶ 673. Employees at Meta know that age-gates can be easily circumvented, noting that "roughly 90%" of users claiming to be 13 years old misrepresent their age. *Id.* at ¶¶ 713–19. Despite this knowledge, employees admit that Meta "do[es] very little to keep U13s off our platform."[26] *Id.* at ¶ 647. Accordingly, the States sufficiently allege that Meta does not follow its own policy to delete an account *unless* age is verified.

Meta cannot deny its knowledge and inaction—indeed, Meta does not challenge the States' COPPA claims on the basis of its actual knowledge. Instead, Meta argues that it can both be true that there are under-13 users on the Platform and that Meta removes them upon discovery. MTD at 30. Yet, the States plead examples showing the opposite. Compl. ¶ 668. Meta further argues that

---

[25] *See supra* note 5.

[26] The States refer to under-13, while Meta's internal documents use various terms, including U13.

27

delays and errors do not render its policy deceptive because Meta never claimed to detect every under-13 user "instantaneously and without error." MTD at 30. That misapprehends the deception claim. As alleged, Meta misled the public because its public statements were contradicted by its pervasive inaction, not any isolated errors.

### 2. The States adequately plead that Meta's emphasis on its CSER reports as the primary measure of online safety deceptively omits less favorable data.

The States allege precisely how Meta creates a false impression that encountering harmful content is rare on its Platforms by publishing only favorable data from its CSER reports while omitting relevant data from its TRIPS and BEEF reports. Meta emphasizes the prevalence metrics in its CSER reports—measuring the percentage of content that Meta removes for violating its community standards—as "the most important measure of a healthy online community," Compl. ¶ 463, even going so far as to compare its CSER metrics to objective scientific measures like the concentration of pollutants in the air, *id.* at ¶ 464. This is profoundly misleading. *Id.* at ¶ 468. For example, in the third quarter of 2021, Meta reported that only 0.05–0.06% of views were of content that Meta determined to be bullying or harassment, whereas 28.3% of users polled at the same time reported witnessing bullying on the Platform. *Compare id.* at ¶¶ 491–92, *with id.* at ¶ 490. In the same time frame, Meta determined that less than 0.05% of views were of what Meta determined to be suicide or self-injury content, whereas 6.7% of users reported witnessing self-harm content. *Compare id.* at ¶ 481, *with id.* at ¶ 482. Meta is aware of the discrepancies between its user-generated TRIPS and BEEF data and its self-generated CSER data, *id.* at ¶¶ 502–05, and the relevance of the user-generated data to the measure of online well-being, *see, e.g.*, *id.* at ¶ 468. Despite this, Meta misrepresents the prevalence metrics in its CSER reports as an "objective" measure of online safety, MTD at 31, while omitting less favorable BEEF and TRIPS data that it knows is also relevant to understanding online safety.

Meta claims a "mismatch" between the CSER metrics and TRIPS and BEEF data, *id.* at 31–32, suggesting that because the two sets of data are logically compatible, it could not have been deceptive for Meta to publish the CSER data while concealing the BEEF and TRIPS data. But this

28

Moreover, contrary to Meta's assertion, an injury arising from an unfair practice is not reasonably avoidable merely because an alternative product or service exists. MTD at 42–43. Meta conspicuously relies on cases interpreting only *one* State's consumer protection law in making this remarkable assertion. *Id.* And its reliance on cases such as *Philips v. Double Down Interactive LLC* and *Ristic v. Machine Zone, Inc.* is further misplaced: the cases apparently relate to *adult*—rather than youth—use of an online casino game and videogame. *See Phillips v. Double Down Interactive LLC*, 173 F. Supp. 3d 731, 743 (N.D. Ill. 2016); *Ristic*, No. 15-cv-8996, 2016 WL 4987943, at *2–4 (N.D. Ill. Sept. 19, 2016). [43] Meta again misses the mark by disregarding the Complaint's allegations of Meta's aggressive strategy to make its Platforms a near-ubiquitous fixture amongst young users—as opposed to one of many online videogames or casino games—and Meta's choice to target and addict *young* users by purposefully exploiting their vulnerabilities, *see* Compl. ¶¶ 73-77, 696.

Finally, with respect to "claims predicated on purported COPPA violations," Meta inaptly focuses on under-13 users "lying" about their age, characterizing this as "reasonably avoidable." MTD at 45. The occurrence of millions of under-13 users on Meta's Platforms demonstrates it is not "reasonably avoidable." *See* Compl. ¶¶ 631–835. Further, Meta disregards that laws such as COPPA exist in order to protect young children from making "choices" they are not mature enough to make, such as whether to sign up for Facebook or Instagram without the consent of a parent. *See, e.g., Ideal Toy Corp.,* 64 F.T.C. 297, 310 (1964) (treating children as a vulnerable class).

**3.    The States sufficiently plead that Meta's conduct is not outweighed by countervailing benefits.**

With no examples or further elaboration, Meta suggests that the States fail to show that the Platforms' harms to young users are not outweighed by countervailing benefits. MTD at 45. The States' Complaint sufficiently pleads an array of serious harms that compulsive Instagram and

---

[43] Moreover, Illinois disputes Meta's reading of these cases to mischaracterize its unfairness standard. Illinois follows *Sperry*. *See Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960–61 (Ill. 2002). In fact, The *Phillips* court applied the *Sperry* test in analyzing unfairness. *See Phillips*, 173 F. Supp. 3d at 742 (citing *Robinson*, 775 N.E.2d 951). The Phillips court failed to analyze all of the Sperry factors, in particular the immoral and unethical factors, which this Court should include in its analysis. *See* 815 Ill. Comp. Stat. 505/2; MTD at 39 n.47.