[*Submitting Counsel on Signature Page*]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case No. 4:22-md-03047-YGR |
| THIS DOCUMENT RELATES TO: | **STATE ATTORNEYS GENERAL'S OPPOSITION TO META'S MOTION IN LIMINE NO. 1 TO PRECLUDE EVIDENCE OR ARGUMENT RELATED TO META'S ALLEGED OMISSION OR FAILURE TO WARN OF INFORMATION** |
| 4:23-cv-05448 | |
| | Judge: Hon. Yvonne Gonzalez Rogers |
| | Magistrate Judge: Hon. Peter H. Kang |

**INTRODUCTION**

Meta's Motion seeks to exclude evidence central to the State AGs' deception claims. In doing so, Meta asks the Court to relitigate issues already addressed at the pleading stage, resolve merits questions currently before the Court on summary judgment, and adopt an artificially narrow conception of relevance that finds no support in Rule 401.

The evidence Meta seeks to exclude concerns internal information Meta had about the safety of its platforms, its prioritization of profits over safety, and the presence of under-13 children (U13s) on the platforms—information Meta chose not to disclose while simultaneously making affirmative statements designed to reassure users, parents, policymakers, and the public. Meta argues that such evidence is inadmissible unless it expressly "relates to or contradicts" a particular alleged misrepresentation. But neither Rule 401 nor the cases Meta cites impose such a requirement.

As explained below, Meta's proposed relevance standard is incorrect. The omissions evidence that Meta seeks to exclude is relevant because it bears directly on whether Meta's public statements conveyed a misleading impression to consumers and were deceptive. The evidence is also highly probative of core issues in the case, and Meta's speculation that the finder of fact might impose liability based on omissions untethered to challenged representations provides no basis for exclusion under Rule 403. The Motion should be denied.

**ARGUMENT**

Meta seeks to exclude evidence that it failed to disclose (1) the results of internal research; (2) information regarding the harms or risks associated with its platforms; and (3) information about children under the age of 13 ("U13s") on its platforms. Motion at 1–3. Meta contends that such evidence is inadmissible because, in its view, these omissions do not "directly relate to or contradict" the representations that the State AGs allege were deceptive and because admitting the evidence would risk confusion and unfair prejudice. Motion at 1, 9.

These arguments fail. First, Meta's proposed relevance standard finds no support in Rule 401 or the authorities that Meta cites. Second, the challenged evidence is relevant because it bears directly on whether Meta's public statements regarding platform safety, user wellbeing, age-based restrictions, and the effectiveness of Meta's safety measures conveyed a misleading impression to consumers. Third,

because the challenged evidence is highly probative of the AGs' deception claims and is directly tied to the misrepresentations at issue, Meta's Rule 403 arguments likewise fail.

## I.    Meta's proposed relevance standard finds no support in Rule 401.

Meta's motion rests on a fundamentally incorrect conception of relevance. According to Meta, evidence of omissions is admissible only if the omitted information is expressly or directly tied to a particular challenged representation. But that is not the standard under Rule 401.

Rule 401 defines relevant evidence broadly. Evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. The rule thus asks whether evidence bears on a consequential issue in the case—not whether it explicitly contradicts a particular statement.

As explained below, the omissions evidence at issue satisfies Rule 401. The AGs allege Meta misled users, parents, policymakers, and the public regarding the safety of its platforms, the wellbeing impacts of its products, the prevalence of U13s, and the effectiveness of its safety measures. Evidence that Meta possessed information undermining those representations, yet chose not to disclose it, tends to make it more probable that Meta's public statements created a misleading impression. That is enough to satisfy Rule 401.

None of the cases that Meta cites holds that an omission must be "explicitly" connected to an alleged representation to be relevant, as Meta contends. Motion at 4.  Rather, the cases deal with a different issue—whether the plaintiffs adequately pled a misrepresentation at the dismissal stage. Moreover, the reasoning of Meta's cases contradicts Meta's position, and shows that omissions may be relevant where they would affect how a consumer understands an affirmative representation. *See Krystofiak v. BellRing Brands, Inc.*, 737 F. Supp. 3d 782, 791, 800-801 (N.D. Cal. 2024) (statement touting "immune health" while omitting mention of lead content found nonactionable, not because the two concepts were insufficiently connected, but because the plaintiff failed to adequately allege that the lead content was excessive); *Long v. Hewlett–Packard Co.*, 2007 WL 2994812, at *8 (N.D. Cal. July 27, 2007), *aff'd* 316 Fed. App'x 585 (9th Cir. 2009) (acknowledging that omissions regarding a faulty inverter can impact consumers' impressions of the longevity of a laptop, without reference to an explicit connection between the two); *Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1104 (N.D. Cal. 2012)

STATE ATTORNEYS GENERAL'S OPPOSITION TO META'S MOTION IN LIMINE NO. 1 TO PRECLUDE EVIDENCE OR ARGUMENT RELATED TO META'S ALLEGED OMISSION OR FAILURE TO WARN OF INFORMATION
4:22-md-03047-YGR; 4:23-cv-05448-YGR

("objectively true" statement that "strawberry" Fruit Snacks were "made with real fruit" could be deceptive where the product contained pears from concentrate, oils, and sugars, rather than real strawberries). The reasoning in these cases underscores that the omissions evidence Meta seeks to preclude is relevant to the misrepresentations the AGs allege and should thus not be excluded.[1]

**II.      The omissions evidence that Meta seeks to exclude is relevant to whether Meta's affirmative statements were misleading.**

The omissions evidence at issue satisfies Rule 401 because it tends to show that Meta's public representations regarding its research, the risks and harms of its platforms, and the prevalence of U13 users created a misleading impression when viewed against information Meta possessed but chose not to disclose.[2]

**A. Meta's undisclosed internal research is relevant to whether Meta's public safety messaging was deceptive.**

Meta first seeks to exclude evidence concerning internal research and measurements that it did not disclose publicly. It focuses on a comparison between two internal studies, which it claims "illustrat[es] [its] point" that Meta's purported omissions do not "come close to the direct contradiction necessary" to make them relevant. Motion at 4–5. As part of the AGs' affirmative case, the AGs will present evidence that Meta made misleading statements involving its Community Standards Enforcement Reports ("CSERs") and various other statements about platform safety. CSERs contain statistics regarding the amount of violating content on Meta's platforms. Motion at 5. The AGs allege that Meta's statements

---

[1] Nor do Meta's remaining authorities support its proposed "explicit contradiction" test for relevance. *See, e.g.*, *In Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 902-03 (claim failed not for want of an explicit connection between the omissions and representations at issue, but rather because plaintiff failed to identify *any* representation concerning the security of the product that was hacked); *dotStrategy Co. v. Facebook, Inc.,* 2020 WL 6591366, at *7-8 (N.D. Cal. Nov. 11, 2020) (holding that Meta's statement that advertisers would "only pay to reach the right people" could be misleading notwithstanding Meta's efforts to remove fake accounts—much as Meta's statements regarding under-13 users can be misleading even if Meta maintained a formal policy prohibiting such users from its platforms); *dotStrategy Co. v. Twitter, Inc*., 476 F.Supp.3d 978, 982-83 (N.D. Cal. 2020) (concerning the ambiguous meaning of "fake" accounts—an analysis that has no relevance here because the definition of users under the age of thirteen is objective).

[2] The AGs have clarified that they are not pursuing liability based on "pure omissions" untethered to deceptive conduct. That does not mean omission-related theories are absent from this case. Colorado and New Jersey continue to pursue claims based on deceptive nondisclosures and misleading half-truths and have proposed separate jury instructions addressing those claims. Thus, even apart from the relevance of the challenged evidence to the AGs' affirmative-misrepresentation theories, Meta's premise that omission-related evidence has no independent relevance is incorrect.

about safety, including with respect to CSERs, were deceptive in part because Meta did *not* disclose other internal research measuring the prevalence of certain content and negative user interactions, including the results of the Bad Experiences and Encounters Framework ("BEEF") user survey and other internal research that directly contradicted its reassuring public statements.

Meta argues that its non-public studies and internal assessments of user experiences, including BEEF, are irrelevant because BEEF and CSER measure different things. But that argument merely reprises a merits position that the Court already considered and rejected at the pleading stage, *see* ECF 1214 at 42–43, and that Meta did not pursue in summary judgment. *See generally* ECF 2705. A motion in limine is not a vehicle for obtaining a second-round merits review. *Kaneka Corp. v. SKCkc Kolon Pi, Inc.*, 2015 WL 12696109, at *10-11 (C.D. Cal. 2015) (citing *C & E Services, Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008)); *SPX Corp. v. Bartec USA*, 2008 WL 3850770, at *3 (E.D. Mich. Aug. 12, 2008) ("[M]otions *in limine* are not proper procedural devices for the wholesale disposition of theories or defenses.").

Even under Meta's proposed standard of direct contradiction, Meta's motion fails because the BEEF survey results directly relate to and contradict Meta's public-facing CSER representations. Meta repeatedly touted CSER data as "a critical metric" that Meta "care[s] most about." *E.g.*, ECF 3144 at 9 (Statement No. 5). Yet contemporaneous BEEF survey results paint a very different picture of user experiences on Meta's platforms, showing that users have negative experiences on Meta's platforms at dramatically higher rates than reflected in CSER data. *See* Ex. A, Andrews Dep. Ex. 14, at 10 (BEEF Survey finding in the Summer of 2021 that 28.3% and 6.7% of Instagram users surveyed reported witnessing bullying and self-harm content, respectively, on the platform in the previous seven days). The contrast is particularly significant because both CSER and BEEF purport to measure harms relevant to user wellbeing, including bullying, suicide and self-harm. *Compare id. with* Ex. B, META3047MDL-003-00079927 at –929-30 (CSER from the Third Quarter of 2021 measuring "prevalen[ce]" of only 0.05-0.06% for bullying or harassment and "less than 0.05%" for suicide or self-injury). These discrepancies are directly relevant to whether Meta's statements about the reliability and significance of CSER metrics were misleading. In any event, the distinction Meta draws goes to evidentiary weight, not admissibility. The relevant question is not whether BEEF and CSER are identical metrics, but whether Meta's decision

to publicize one set of metrics while withholding another contributed to a misleading impression regarding the prevalence of harmful experiences on its platforms. The existence of those undisclosed metrics has a tendency to make it more probable that Meta's public representations created such a misleading impression. Whether those differing metrics can be reconciled, and what conclusions should be drawn from them, are questions for the finder of fact.

### B. Evidence that Meta omitted information regarding harms or risks on its platforms is relevant to whether its safety representations were deceptive.

Meta argues that evidence of its failure to disclose information regarding harms and risks on its platforms is irrelevant, because the safety-related statements that the State AGs allege were deceptive are merely generalized statements about safety and therefore non-actionable puffery. Motion at 6–9. But that argument is simply a repackaged version of Meta's longstanding contention that its safety-related representations are non-actionable. The Court rejected that argument at the pleading stage. ECF 1214, at 37–40. The issue has since been fully briefed at summary judgment. ECF 2704, at 27–28; ECF 2779, at 25–26; ECF 2892, at 14–15. After unsuccessfully seeking additional briefing on that motion, *see* ECF 3038, at 2, Meta now attempts to relitigate the same issues through a motion in limine. That effort is procedurally improper and substantively unavailing. *See* YGR Standing Order Re: Pretrial Instructions in Civil Cases 4(a) at 8 ("Motions brought to re-litigate an issue will be denied as procedurally defective."). In any event, Meta's argument fails because it again misconstrues the relevance inquiry. The question is not whether the challenged evidence expressly references the precise words contained in a particular affirmative representation. The question is whether the evidence has any tendency to make it more or less probable that Meta's representations were misleading. Fed. R. Evid. 401. Evidence concerning information Meta possessed regarding the harms and risks associated with its platforms easily satisfies that standard because it bears directly on the accuracy and completeness of Meta's public messaging on those same subjects.

That is especially true because courts do not evaluate allegedly misleading statements in isolation, but rather in context. *See Williams v. Gerber Products Co.*, 552 F.3d 934, 939 n.3 (9th Cir. 2008). Safety-related representations that might appear generalized when standing alone can take on actionable meaning when made as part of a broader effort to shape consumer perceptions regarding product safety. *See, e.g.*,

*In re Toyota Motor Corp. Unintended Acc. Mktg., Sales Pracs., & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1177 (C.D. Cal. 2010) (finding that statements part of "campaign" to prioritize "safety" were not puffery). Here, the relevant context includes Meta's concerted efforts to influence public perceptions regarding the safety and wellbeing impacts of its platforms. Meta tracked public sentiment regarding the company and its platforms, monitored concerns relating to safety and wellbeing, and implemented a coordinated "drumbeat messaging" strategy designed to reassure users, parents, policymakers, and the public. *See* ECF 2783-1, at 26-27. Through that campaign, Meta repeatedly emphasized the safety of its platforms and its prioritization of safety. *See id.* at 25-26.

Against that backdrop, the omissions evidence Meta seeks to exclude is plainly relevant. Meta possessed information concerning negative user experiences, like bullying and self-harm, and underage usage—which it chose not to disclose while simultaneously making affirmative representations designed to reassure the public about those very subjects. *See*, *e.g.*, ECF 3144, Statement Nos. 5, 7, and 59 (touting significance of prevalence metrics or citing them as to bullying), 74 (stating Meta has "taken important steps" to hide suicide and self-harm content "completely" from teens), 26 (stating that the effect of Instagram on teen mental health seems to be "quite small"), 42 (suggesting Meta does not collect data on U13 users "since we don't allow them on our apps"). Evidence that Meta withheld information bearing on those issues tends to make it more probable that consumers would understand Meta's statements differently. That is relevance.

The omitted information is also relevant because it forms part of the context necessary to evaluate the messages Meta affirmatively chose to communicate. Meta's omissions and its public statements therefore cannot be separated in the manner Meta proposes. The omitted information is part of what made the public messaging misleading. *See, e.g., City of Miami v. Quality Sys. Inc. (In re Quality Sys. Inc. Sec. Litig.)*, 865 F.3d 1130, 1143 (9th Cir. 2017) ("Even 'general statements of optimism, when taken in context, may form a basis for a securities fraud claim' when those statements address specific aspects of a company's operation that the speaker knows to be performing poorly.") (internal citation omitted).

None of Meta's authorities require the Court to evaluate the challenged statements in a vacuum, without regard to the surrounding context. *See* Motion at 6-9. To the contrary, Meta's cases broadly agree that statements which may appear innocuous in isolation may contribute to a deceptive overall message

when viewed alongside related representations and withheld information. *See Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1134 (N.D. Cal. 2013) (differentiating cases where the statements at issue "are all mere puffery" from cases such as *Williams*, 552 F.3d at 939 n.3, in which what would otherwise be non-actionable puffery contributes "to the deceptive context of the packaging as a whole" and thus becomes actionable). Most of Meta's cases simply hold that a deception claim fails if *no* specific misrepresentations are identified. *See, e.g., Sipe v. Countrywide Bank*, 690 F. Supp. 2d 1141, 1157 (E.D. Cal. 2010) (common law fraud pleading failed for "fail[ure] to specify what these 'false statements' were, when they were made, and how they were false"); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (car buyer plaintiff "failed to articulate the who, what, when, where, and how of the misconduct alleged," or what the allegedly misleading "television advertisements or other sales material specifically stated"); *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) (plaintiff "does not identify any specific misrepresentations or specify when and where they occurred"); *Yastrab v. Apple, Inc.*, 173 F. Supp. 3d 972, 978 (N.D. Cal. 2016) (plaintiffs "had only made 'unadorned references to Apple's advertising campaign and marketing materials,' and did not describe 'even one specific'" misrepresentation). In contrast, the State AGs have identified numerous specific misrepresentations about Meta's platforms. *See* ECF 3144.

Finally, even if the Court were to view each contested misrepresentation in isolation, all are precisely the type of concrete, verifiable representations that courts distinguish from non-actionable puffery. *See Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008) (noting that actionable statements include "quantifiable... claim[s] as to the 'specific or absolute characteristics of a product'"). As one of Meta's own cases notes, an otherwise non-actionable statement can become actionable where it "arguably promise[d] consumers that the product [was] capable of producing *some effect*." *Ahern v. Apple Inc.,* 411 F. Supp. 3d 541, 558 (citing *Vigil v. Gen. Nutrition Corp.*, 2015 WL 2338982, at *9 (S.D. Cal. May 13, 2015)).

The statements Meta challenges here were not aspirational expressions of corporate values; they were representations about existing conditions on its platforms and how Meta conducted its business. *See, e.g.* Statement No. 8 ("We've been focused on well-being broadly . . . it's our number one priority."); Statement No. 13 ("We also have to keep people safe and give them control over their experience on our

apps. *And we are.*") (emphasis added).[3] These are representations about actual safety conditions and outcomes, not vague aspirations for the future, and therefore fall well outside the narrow category of statements that can be dismissed as puffery as a matter of law.

Whatever the ultimate disposition of particular statements, the question presented by this motion is whether the finder of fact may consider evidence regarding harms and risks that Meta chose not to disclose when evaluating the meaning and effect of Meta's safety-related messaging. For the reasons discussed above, the answer is yes. The challenged evidence bears directly on how consumers would have understood Meta's representations regarding safety, wellbeing, and the effectiveness of Meta's safety interventions. Whether that evidence concerns bullying, self-harm content, addiction-related concerns, negative user experiences, age-related risks, or other harms associated with Meta's platforms, it tends to make it more probable that Meta's public messaging conveyed a misleading impression. That is all Rule 401 requires, and it is sufficient to defeat Meta's request for wholesale exclusion.

### C. Evidence that Meta omitted information about U13 users on its platforms is relevant to the AGs' deception claims.

Meta also seeks to exclude evidence regarding what it knew, but did not disclose, about the prevalence of underage users on its platforms. According to Meta, evidence that millions of U13 users accessed Facebook and Instagram is irrelevant because the misrepresentations the AGs challenge merely describe Meta's policies prohibiting U13 use. Motion at 6.

Meta's argument mischaracterizes the AGs' theory. The AGs do not contend that Meta falsely represented the *existence* of age-based policies. Rather, the AGs contend that Meta repeatedly conveyed that those policies were effective and meaningfully enforced, while internally recognizing the substantial and persistent presence of underage users on its platforms.

The evidence Meta seeks to exclude is directly relevant to that theory. Meta possessed information concerning the prevalence of U13 users on its platforms, the limitations of its age-verification and enforcement mechanisms, and the continued participation of underage users despite Meta's public assurances regarding its age restrictions. *See, e.g.,* Ex. C, Zuckerberg Dep. Ex. 67, at –546 (Meta's estimate that "there were 4 [Million] people under 13 in 2015 on [Instagram.]"). Evidence concerning underage

---

[3] Furthermore, the State AGs have entirely removed the portions of Statements 60, 72, and 78 that Meta cites in its Motion. *See* ECF 3144, at 10-11. Meta's arguments as to those statements are therefore moot.

usage therefore bears directly on whether Meta's public messaging regarding U13 users conveyed a misleading impression.

The evidence is also relevant because it provides context necessary to evaluate Meta's affirmative representations. A consumer's understanding of Meta's statements regarding age restrictions would likely be different if the consumer knew that Meta internally recognized the widespread presence of underage users on its platforms. Whether Meta's public statements accurately conveyed the effectiveness of its age-based restrictions cannot be assessed while excluding evidence regarding what Meta knew about the actual operation of those restrictions. Meta's attempt to distinguish between statements about age-based policies and evidence concerning the prevalence of underage users again confuses evidentiary weight with admissibility. The AGs need only show that the evidence tends to make it more probable that Meta's statements regarding U13 users were misleading. Fed. R. Evid. 401. The challenged evidence satisfies that standard.[4]

**III.    Rule 403 does not support exclusion of evidence regarding Meta's omissions.**

Meta's Rule 403 arguments fare no better. According to Meta, evidence concerning information it failed to disclose should be excluded because it supposedly risks confusing the issues, encouraging liability based on omissions alone, or causing unfair prejudice. Motion at 9–11. But those concerns rest on the same faulty premise underlying the rest of Meta's motion: that the challenged evidence is untethered to the representations the AGs allege were deceptive. It is not.

As explained above, the omissions evidence Meta seeks to exclude bears directly on the AGs' theory that Meta misled users, parents, policymakers, and the public regarding the safety of its platforms, the prevalence of harmful content and conduct, the effectiveness of its safety measures, and the extent of underage use on its platforms. The evidence is therefore highly probative of core issues in the case, including whether Meta's public statements conveyed a misleading impression and whether consumers would have understood those statements differently had additional information been disclosed. Furthermore, such discrepancies are factual, not "speculat[ive]," Motion at 10, and there is nothing improper about presenting facts to a jury to allow them to infer a defendant's knowledge or intent. *See*

---

[4] In any case, this evidence will not be precluded because it is relevant to the AGs' COPPA claim, most notably the empirical audience composition factor of the directed-to-children test. *See* 16 CFR § 312.2.

*United States v. Garrison*, 888 F.3d 1057, 1064 (9th Cir. 2018) ("Inconsistencies or lying can lead a jury to infer intent.").

Because the challenged evidence is directly tied to the AGs' deception theories, there is no meaningful risk that the finder of fact will impose liability based on omissions untethered to any challenged representation. To the contrary, the challenged evidence concerns information that bears on the very subjects addressed by Meta's public statements. Meta remains free to argue that particular omissions are unrelated to particular statements, that certain evidence should be given little weight, or that consumers would not have found the omitted information significant. Those are merits arguments, which provide no basis for wholesale exclusion under Rule 403.

Nor does the possibility that the evidence may be damaging to Meta justify exclusion. Rule 403 protects against unfair prejudice, not evidence that is merely adverse to a party's position. *See Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977) ("'[U]nfair prejudice' as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party."). The evidence Meta seeks to exclude is damaging precisely because it bears directly on the issues the finder of fact must resolve. That is a reason for admission, not exclusion.

To the extent the Court has any concern regarding the proper use of particular categories of evidence, those concerns can be addressed through ordinary trial tools, including limiting instructions and contemporaneous objections. Excluding broad categories of highly probative evidence central to the AGs' deception claims would be neither necessary nor appropriate.

## CONCLUSION

Because the challenged evidence is relevant to the State AGs' claims and Meta identifies no valid basis for its exclusion, the Motion should be denied.

DATED: 6/17/2026

Respectfully submitted,

**PHILIP J. WEISER**
Attorney General
State of Colorado

**ROB BONTA**
Attorney General
State of California

*/s/ Krista Batchelder*
Krista Batchelder, CO Reg. No. 45066, *pro hac vice*
Deputy Solicitor General
Jason Slothouber, CO Reg. No. 43496, *pro hac vice*
Chief Trial Counsel, Consumer Protection
Lauren M. Dickey, CO Reg. No. 45773, *pro hac vice*
First Assistant Attorney General
Elizabeth Orem, CO Reg. No. 58309
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6000
Krista.Batchelder@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel. Philip J. Weiser, Attorney General*

*/s/ Megan O'Neill*
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Emily Kalanithi (SBN 256972)
Supervising Deputy Attorneys General
Nayha Arora (CA SBN 350467)
David Beglin (CA SBN 356401)
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer (CA SBN 336428)
Marissa Roy (CA SBN 318773)
Brendan Ruddy (CA SBN 297896)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Megan.ONeill@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*

11

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

/s/ *Zachary Richards*
J. Christian Lewis (KY Bar No. 87109),
*pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*pro hac vice*
Zachary Richards (KY Bar No. 99209),
*pro hac vice*
Daniel I. Keiser (KY Bar No. 100264),
*pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Ste. 200
Frankfort, KY 40601
Christian.Lewis@ky.gov
Philip.Heleringer@ky.gov
Zach.Richards@ky.gov
Daniel.Keiser@ky.gov
Matthew.Cocanougher@ky.gov
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

**JENNIFER DAVENPORT**
Attorney General
State of New Jersey

By: /s/ *Thomas Huynh*
Kashif T. Chand (NJ Bar No. 016752008),
*Pro hac vice*
Assistant Attorney General
Thomas Huynh (NJ Bar No. 200942017),
*Pro hac vice*
Section Chief, Deputy Attorney General
Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*Pro hac vice*
Deputy Attorneys General
New Jersey Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiffs Jennifer Davenport, Attorney General for the State of New Jersey, and Jeremy E. Hollander, Acting Director of the New Jersey Division of Consumer Affairs*

## SIGNATURE CERTIFICATION

Under Civ. L.R. 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in this filing's content and have authorized this filing.

DATED: 06/17/2026

/s/ *Zachary Richards*
Zachary Richards

*Attorney for Plaintiff the Commonwealth of Kentucky*