# Exhibit B

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| *PEOPLE OF THE STATE OF CALIFORNIA, et al.,*<br>Plaintiffs,<br><br>v.<br><br>*META PLATFORMS, INC, Instagram, LLC, Meta Payments, Inc., Meta Platforms Technologies, LLC., et al.,*<br>Defendants<br><br><br>IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>4:23-cv-05448 | MDL No. 3047<br><br>Case No. 4:23-cv-05448-YGR<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br><br>Magistrate Judge: Hon. Peter H. Kang |

**REBUTTAL TRIAL REPORT OF RAVI IYER, PHD
October 24, 2025**

HIGHLY CONFIDENTIAL (COMPETITOR)

Rebuttal Trial Report of Ravi Iyer, PhD

# Table of contents

I. Introduction ...................................................................................................................................... 2

    I.A. Summary of opinions ............................................................................................................... 2

    I.B. Assignment ............................................................................................................................. 4

II. Dr. Ferrara's report is non-responsive to my report ...................................................................... 6

III. Dr. Birnholtz mischaracterizes my methodology and routinely ignores cited evidence supporting my recommendations ........................................................................................................................ 7

    III.A. Dr. Birnholtz mischaracterizes my use of an established methodology ................................. 7

    III.B. Dr. Birnholtz routinely ignores cited evidence supporting my recommendations, including "ideal" experimental evidence ................................................................................................................ 8

IV. Dr. Birnholtz's opinion that Meta's features are "reasonable" is not based on an established methodology and is largely non-responsive to my report ................................................................. 13

    IV.A. Dr. Birnholtz's opinion that Meta's features are "reasonable" because they provide some potential benefits to users does not negate the fact that such features facilitate excessive usage ........................ 14

    IV.B. Dr. Birnholtz's opinion that Meta's features are "reasonable" relies on inappropriate comparisons to platforms that do not share Meta's combination of extended use features and engagement-based algorithms ....... 17

V. Defendants' Experts fail to rebut my opinion that young users' harmful experiences cannot be effectively mitigated by Meta's moderation efforts, safety tools, or user controls ............................................. 20

    V.A. Dr. Ferrara is incorrect that content moderation systems can effectively mitigate young users' harmful experiences ................................................................................................................................ 20

    V.B. Dr. Birnholtz provides no evidence that Meta's safety tools are effective for reducing young users' harmful experiences ................................................................................................................................ 21

    V.C. Dr. Birnholtz ignores evidence that Meta's safety tools are ineffective for reducing young users' harmful experiences ................................................................................................................................ 22

VI. Conclusion ................................................................................................................................ 26

Appendix A. Materials considered .................................................................................................. A-1

Rebuttal Trial Report of Ravi Iyer, PhD

## V.B. Dr. Birnholtz provides no evidence that Meta's safety tools are effective for reducing young users' harmful experiences

(37)   Dr. Birnholtz argues in his report that various tools and user controls are "reasonably designed" to allow teens to manage their activity on Meta Platforms and to allow parents to manage their teens' activity on Meta Platforms.[88] For example, Dr. Birnholtz argues that teens have tools such as "Time Spent," "Your Activity," "Daily Limit," "Supervision," "Sleep Mode," "Take a Break," and "Nighttime Nudge" that can be used to reasonably manage use of Meta's Platforms based on a teen's goals.[89] Dr. Birnholtz also states that parents have the ability to ask their teens to opt-in to supervising Teen Accounts, which he argues provides a "reasonable" mechanism for parents to control how much time their children spend on Meta's Platforms.[90] Dr. Birnholtz does not define the term "reasonable" or "reasonableness," and he provides no evidence that these tools are actually used by teens or parents or that they are effective at reducing young users' harmful experiences. As described in more detail below, I disagree that these tools, as described by Dr. Birnholtz and by Meta's documentation, are effectively designed to mitigate the harms I discussed above and throughout my opening report.

(38)   It is worth noting that Dr. Birnholtz fails to identify any tools or controls to specifically turn off engagement-based algorithms, infinite scroll, autoplay, or ephemeral content. To my knowledge, Meta does not offer an option for a feed based fully on quality[91] or explicit preferences without additional engagement optimization.[92] Nor is there any way to opt out of ephemeral content, autoplay, or infinite scroll. As a result, Dr. Birnholtz's opinions regarding safety tools are not directly responsive to my recommendations to remove these features.[93] It remains my opinion that redesigning such features as outlined in my opening report would reduce over-usage. With respect to certain other problematic aspects of the Platforms, safety tools exist that purport to address those specific features, but they are not effective as I discuss in more detail below.

---

[88]   Birnholtz Report, Section VI.

[89]   Birnholtz Report, ¶¶ 74–80.

[90]   Birnholtz Report, ¶¶ 92–93.

[91]   Meta makes content quality determinations based on whether or not Meta wants to allow that type of content to be posted and shared on Meta Platforms, per Meta's community standards. "Community Standards," Meta Transparency Center, accessed October 24, 2025, https://transparency.meta.com/policies/community-standards/.

[92]   As discussed in my opening report, Meta has introduced Favorites and Following Feeds on Instagram that offer users the option to reduce (but not eliminate as far as I am aware) emphasis on engagement and increase emphasis on user agency, although these are not currently the default feeds. Iyer Opening Report, ¶ 34.

[93]   Iyer Opening Report, ¶ 62.

Rebuttal Trial Report of Ravi Iyer, PhD

limits are generally optional. When presented with urgent notifications that may relate to their social status, teens may struggle to resist the desire to view such information given their limited willpower.[117] These usage reminders are also infrequent compared with the number of frictions or opportunities to exercise willpower that removing autoplay or infinite scroll would create. Only approximately 50% of teens see any Nighttime Nudges over a several month period[118] and independent testing has found that receiving Nighttime Nudges is a relatively rare occurrence.[119]

(46)    Overall, Meta's safety tools including Teen Accounts fail to address the root of the problem: the engagement-driven algorithms and extended use features that undermine self-control and perpetuate the very behaviors these tools seek to mitigate. It is unrealistic to expect safety tools to fully mitigate young users' harmful experiences on the Platforms, including excessive and unhealthy usage. Without meaningful changes to the core design of these algorithms or features (i.e., optimizing for quality signals and explicit user preference and removing or restricting extended use features), the risks and harms faced by young users will persist, rendering these surface-level solutions largely ineffective.

---

[117]  Roy F. Baumeister, Kathleen D. Vohs, and Dianne M. Tice, "The Strength Model of Self-Control," *Current Directions in Psychological Science,* vol. 16, no. 6 (2007): 351–355.

[118]  Deposition of Sayed Otaru, Exhibit 9.

[119]  "Teen Accounts, Broken Promises: How Instagram is Failing to Protect Minors," Fairplay, accessed October 7, 2025, https://fairplayforkids.org/wp-content/uploads/2025/09/Teen-Accounts-Broken-Promises-How-Instagram-is-failing-to-protect-minors.pdf ("We were also unable to find any evidence that Instagram's Nighttime Nudges feature was either in place or effective. In January 2024, Meta announced that teens would receive a notification when they had spent more than 10 minutes on a particular Instagram feature late at night. The prompts would remind teens that it's late and encourage them to close the app. However, during our safety testing, we were unable to trigger any of these prompts across multiple product surfaces that we tested during nighttime hours.").