# Exhibit F

[*Submitting Counsel on Signature Page*]

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| People of the State of California, et al.<br><br>v.<br><br>Meta Platforms, Inc., Instagram, LLC, Meta Payments, Inc., Meta Platforms Technologies, LLC<br><br>-------------------------------------------------<br><br>IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>4:23-cv-05448 | MDL No. 3047<br><br>Case Nos.: 4:23-cv-05448-YGR<br><br>**STATE ATTORNEYS GENERAL'S THIRD SUPPLEMENTAL RESPONSE TO META DEFENDANT META PLATFORMS, INC.'S FIRST SET OF INTERROGATORIES**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br><br>Magistrate Judge: Hon. Peter H. Kang |

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiffs the People of the State of California; State of Colorado, *ex rel.* Philip J. Weiser, Attorney General; State of Connecticut; State of Delaware, *ex rel.* Kathleen Jennings, Attorney General of the State of Delaware; the People of the State of Illinois; State of Indiana; State of Kansas, *ex rel.* Kris W. Kobach, Attorney General; the Commonwealth of Kentucky; State of Louisiana; State of Minnesota, by its Attorney General, Keith Ellison; State of Nebraska *ex rel.* Michael T. Hilgers, Attorney General; Matthew J. Platkin, Attorney General for the State of New Jersey, and Elizabeth Harris, Acting Director of the New Jersey Division of Consumer Affairs; the People of the State of New York, by Letitia James, Attorney General of the State of New York; State of North Carolina, *ex rel.* Jeff Jackson, Attorney General; Commonwealth of Pennsylvania by Attorney General Dave Sunday; State of South Carolina, *ex. rel.* Alan M. Wilson, in his official capacity as Attorney General of the State of South Carolina; Commonwealth of Virginia, *ex rel.* Jason S. Miyares, Attorney General; and State of Wisconsin (collectively, the "State AGs"), hereby submit their supplemental responses and objections to Defendants Meta Platforms, Inc., Instagram, LLC, Meta Payments, Inc., and Meta Platforms Technologies, LLC's (collectively, "Meta" or "Defendants") First Set of Interrogatories, dated May 3, 2024.

## **PRELIMINARY STATEMENT**

The following supplemental responses are based only on information presently available to the State AGs. These written responses are made without prejudice, and the State AGs reserve all rights to modify, amend, or add to these responses and objections at any time.

The responses that follow are based upon the State AGs' understanding of the reasonable meaning of Defendants' Interrogatories and in a good-faith effort to comply with the law. Moreover, while the State AGs may not have direct knowledge or possession of the facts, Documents, and other matters referenced in the responses below, the State AGs have fulfilled their obligation to provide answers based upon information that was available to the State AGs at the time of this response.  The State AGs reserve all rights including the right to refer to, conduct

discovery in reference to, and to offer into evidence at any time, including trial, any and all facts, Documents, and other things that are not presently known or available to the State AGs or that have not yet been reviewed or discovered by the State AGs but which may be learned at some time in the future, notwithstanding these supplemental responses. Ongoing discovery, investigation, research, and analysis may reveal additional facts, add meaning to known facts, establish new legal contentions, or lead to additions, variations, or changes to these supplemental responses.

The State AGs have interpreted these Interrogatories as seeking information maintained by the State AGs specifically, and the responses to these Interrogatories are therefore made on behalf of each state attorney general office's investigative/enforcement teams, not on behalf of any other state agencies or other entities of state government.[1]

## FIRST SET OF INTERROGATORIES

**Interrogatory No. 4:**

Identify all "unfair," "deceptive," and/or "unconscionable" practices or acts Plaintiff alleges Defendants engaged in that Plaintiff alleges violated the Consumer Protection Act and any State law under which Plaintiff seeks to recover.

**State AGs' Supplemental Response:**

The State AGs incorporate by reference their June 3, 2024 and April 10, 2025 Responses and Objections to Meta's First Set of Interrogatories, including their General Objections, Objections to Definitions and Instructions, and specific objections to Interrogatory No. 4. Subject to and without waiving their objections to this Interrogatory, the State AGs provide the following supplemental response. In providing this supplemental response, the State AGs reserve all rights.[2]

---

[1] To the extent these Interrogatories seek information that is in the possession, custody, or control of state agencies or any other entities of state government, the State AGs reassert their objection that such information is not within the possession, custody, control of the State AGs. *See* In re California, No. 25-584, 2025 WL 2427608 (9th Cir. Aug. 22, 2025).

[2] In supplementing the State AGs' response to Interrogatory No. 4, the State AGs directly incorporate our June 3, 2024 response and supplement that. The supplementation focuses on the aspects of the claims that remain in the case following the Court's order on Meta's Motion to Dismiss, ECF No. 1214. The State AGs reserve the right to supplement our Responses insofar as any claims or elements of claims are reinstated after appeal or otherwise.

STATE ATTORNEYS GENERAL'S THIRD
SUPPLEMENTAL RESPONSE TO META'S
FIRST SET OF INTERROGATORIES

- 3 -

CASE Nos.: 4:23-cv-05448-YGR
4:22-md-03047-YGR

Meta engaged in deceptive acts and practices by deceiving consumers, including young users and parents, about the design, safety, and harmful impacts of its Platforms through many statements made in different forums over the course of several years.  Meta acted unfairly by engaging in the unfair and unconscionable acts described herein while also deceiving consumers, including young users and parents, through false and misleading statements and omissions. State AGs incorporate by reference their responses to Interrogatory No. 3 of Meta's First Set of Interrogatories.

Meta engaged in unfair and unconscionable acts and practices by capitalizing on the vulnerabilities of young users and encouraging their compulsive and harmful use of its Platforms. For example:

*First*, Meta targets its Platforms to young users while knowingly designing its Platforms to include features that Meta knows to be psychologically and physically harmful to young users—including features known to promote compulsive, prolonged, and unhealthy use by young users. (*See, e.g.*, Complaint Paragraphs 68-85.) In addition, Meta incentivizes its employees to develop ways to increase the time that young users spend on its Platforms, all while touting the efficacy of its own time restriction tools that, in reality, do not meaningfully curb excessive time young users spend on its platforms in place of offline, often necessary, activities. (*See, e.g.*, May 16, 2025 Expert Trial Report of Colin Gray at ¶¶ 104-14.)

*Second*, Meta utilizes Platform features that unfairly and/or unconscionably harm young users. These features include infinite scroll, ephemeral content features, autoplay, quantification and display of "Likes," and disruptive alerts, all of which are unfairly and/or unconscionably utilized by Meta to extract additional time and attention from young users whose developing brains are not equipped to resist those manipulative tactics. Meta designed content-presentation formats, such as infinite scroll, to discourage young users' attempts to self-regulate and disengage

from its Platforms. (*See, e.g.*, Complaint Paragraphs 91-94; May 16, 2025 Expert Trial Report of Colin Gray at ¶¶ 82, 119.)

Meta is aware both that young users have a propensity to compare themselves to peers, and that the quantification and public display of Like counts on its Platforms are harmful to young users' mental health. (*See, e.g.*, Complaint Paragraphs 226-298.) Social comparison through features such as Likes, however, is also associated with greater time spent on Meta's Platforms. Although Meta studied the effects of Like counts in Project Daisy, including receiving continual advice from experts that Daisy should be on by default for teens, Meta declined to remove Like count visibility by default for any users.

*Third*, Meta designed, developed, and deployed disruptive audiovisual and vibration notifications and alerts and ephemeral content features in a way that unfairly and/or unconscionably exploits young users' psychological vulnerabilities and cultivates a sense of "fear of missing out" in order to induce young users to spend more time than they would otherwise choose on Meta's Platforms. Meta designed ephemeral content so that young users open Meta's Platforms more frequently in order to not "miss out" on any new content. (*See, e.g.*, Complaint Paragraphs 97-101.)

Meta employs incessant notifications that recall young users' attention back to its Platforms when they are engaging in other activities, such as attending school, or when they are (or should be) sleeping or preparing to sleep. (*See, e.g.*, Complaint Paragraphs 299-332; July 30, 2025 Expert Rebuttal Trial Report of Lauren Hale at ¶ 45.) For example, the default notifications for Instagram include haptic alerts (vibrate or pulse), banner notifications, sounds notifications, badge notifications (persistently displayed red indicator encircling a number representing certain events that have not yet been viewed by the user), and email notifications. These notifications are especially intrusive and harmful for young users, who are particularly vulnerable to distraction

and psychological manipulation.

Meta actively chooses to retain Platform features it knows promote eating disorders, despite expert warnings about the resulting harms to young users. (*See, e.g.*, Complaint Paragraphs 333-368.) For example, Meta knows that the use of beautification and other camera filters on its Platforms is associated with body image issues, body dysmorphia, and a decrease in young users' well-being.  Furthermore, Platform features quantifying metrics such as Likes, Followers, comments, reposts—in conjunction with Meta's Platforms' focus on visuals rather than text—creates a fertile ground for social comparison, and this environment is associated with lower self-image and distorted body perceptions among young people. Nevertheless, Meta continues to provide young users on its Platforms with access to such features, including visual filters that simulate plastic surgery.

*Fourth*, Meta algorithmically serves content to young users according to "variable reinforcement schedules."  Meta thereby manipulates dopamine releases in young users, unfairly or unconscionably inducing them to repeatedly engage with its Platforms—much like a gambler at a slot machine. (*See, e.g.*, May 16, 2025 Trial Report of Bradley Zicherman at ¶¶ 2, 36; May 16, 2025 Expert Trial Report of Arvind Narayanan at ¶¶ 138-48.) Meta knows its Recommendation Algorithms trigger intermittent dopamine releases in young users whose developing brains are especially susceptible to such tactics. (*See, e.g.*, Complaint Paragraphs 162-165.) Moreover, Meta uses data harvested from young users to target their engagement on an individual level via its Recommendation Algorithms—making continued engagement even more difficult for young users to resist. (*See, e.g.*, Complaint Paragraphs 166-175.)

*Fifth*, Meta collects, uses, and discloses the personal information of under-13 users of Instagram and Facebook without first obtaining verifiable parental consent, which is an unfair and unconscionable practice that also violates the Children's Online Privacy Protection Act

("COPPA") and the COPPA Rule. The following are non-exhaustive examples of these acts and practices. Meta routinely obtains actual knowledge that users on Instagram and Facebook are under 13 years old, and it targets children as users of Instagram and Facebook, making the Platforms directed to children. (*See, e.g.*, Complaint Paragraphs 631-835.) Meta fails to provide sufficient notice to parents of its data collection, use, and disclosure practices concerning under-13 users' personal information, nor does it provide sufficient notice to parents of their right to review or delete their children's personal information. Meta also fails to provide parents with the ability to effectively exercise their rights with respect to their children's personal information. (*See, e.g.*, Meta Defendants' Amended Responses and Objections to Plaintiffs' First Set of Requests for Admission, Request No. 7; Meta Defendants' Amended Responses and Objections to Plaintiffs' Third Set of Requests for Admission, Request Nos. 20-21; Hartnett Dep. 206:7-209:24.) Additionally, Meta fails to timely delete the personal information of children under the age of 13, including by taking up to ninety days to delete personal information after beginning the final deletion process, and, from 2022 to April 2024, preserving personal information of so-called "deactivated" children's accounts for six months or a year prior to starting the final deletion process. (*E.g.*, Hartnett Dep. 299:14-301:19; 350:2-351:22, June 17, 2025.) Moreover, Meta continues to use the personal information of children under 13 after determining that they are likely under 13 to train its machine learning and generative AI models, without obtaining parental consent. (*See* Backstrom Dep. 28:25-32:21, 40:11-21 and errata sheet.)

Meta has actual knowledge that children under the age of 13 are on Instagram. (*See, e.g.*, Complaint Paragraphs 646-745 and 814.)  This knowledge is demonstrated, for example, by Meta's charts boasting Instagram's penetration into 11- and 12-year-old demographic cohorts, an internal report presented to Zuckerberg regarding the four million under-13 users on Instagram, emails and policies documenting Meta's mishandling of known under-13 user accounts,

discussions among Meta's researchers taking pains to avoid uncovering Instagram's under-13 users through their studies, documents admitting that Instagram's registration process regularly elicits false self-reported ages from its under-13 users, and data from Meta's age-estimation algorithms confirming that millions of individual Instagram accounts belong to children under the age of 13. Meta also obtained actual knowledge in the circumstances described in the State AGs' responses to Interrogatory No. 1 from Meta's Second Set of Interrogatories, including, but not limited to, instances in which Meta continued collecting personal information from children under the age of 13 through accounts that Meta knew belonged to children through its hard-linking and soft-matching techniques.

Further, Meta directs Instagram and Facebook to children, in whole or in part, through the child-oriented design, content, and information appearing on its Platforms. (*See, e.g.*, Complaint Paragraphs 794-805 and 828-31; Part 2 of the August 1, 2025 Trial Report of Adam Alter.) Examples include, but are not limited to, the thousands of child-oriented pages and accounts that Instagram and Facebook host and promote, advertisements that feature or are directed to children, such as children's television and movies, and child or child-oriented models and celebrities featured on the Platforms. Meta's account registration process, which did not include an age gate for many years, and then included a faulty system that was easily bypassed by children, further demonstrates Meta's targeting of children.  (*See, e.g.*, Complaint Paragraphs 667-770.) Children are also an intended and actual audience of Instagram and Facebook, as demonstrated through, among other things, internal communications and research describing Meta's overt efforts to design its Platforms in ways that would reach and be appealing to children. (*See, e.g.*, Complaint Paragraphs 771-793, 823-827; *see also* the State AGs' responses to Meta's Interrogatory No. 4 of Meta's Second Set of Interrogatories.) Meta's non-neutral age gates, which defaulted to a date of birth that would make the user above 13, also failed to effectively collect "age information"  in

the manner required by COPPA for websites or online services directed to children that collect personal information. (16 CFR Section 312.2; *see, e.g.*, Hartnett Dep. 43:25-45:4.)

*Sixth*, Meta fails to employ processes to effectively prevent children under the age of 13 from joining and/or using Instagram and Facebook and to effectively detect and remove them and their data after they joined. Examples of such processes and practices include, but are not limited to, those detailed in the reports of Colin Gray and Adam Alter. (*See, e.g.*, May 18, 2025 Trial Report of Colin Gray at ¶¶ 84-90, 127 (Meta's insufficient age verification processes at account creation and inadequate underage reporting tool); July 30, 2025 Rebuttal Report of Colin Gray at ¶¶ 27-29, 41-46 (same); August 1, 2025 Trial Report of Adam Alter at ¶¶ 370-382 (Meta's ineffective age gating processes, age enforcement processes, and age classifiers.)) Meta's practices detailed in the State AGs responses to Interrogatory No. 1 of Meta's Second Set of Interrogatories contain other examples of Meta's failures to effectively prevent children under 13 from joining and/or using Meta's platforms, and failures to effectively remove them after they have joined. For example, Meta has failed and continues to fail to remove multiple accounts belonging to child users it has identified, including failing to remove accounts hard-linked to child user accounts prior to at least December 2021, and continuing to fail to remove accounts soft-matched to child users' accounts. (*See* Hartnett Dep. 236:17-23, 242:16-243:6, 296:23-297:16; META3047MDL-053-00012717.) Meta also fails to take measures to prevent child users whose accounts it detects and disables from creating new accounts on Facebook and Instagram. (*See* Hartnett Dep. 243:7-244:5.) As another example, Meta employs deficient processes for reviewing reports of children under 13 on its platforms, including because the review process ignores categories of relevant information, such as children admitting they are underage in direct messages or comments. (*See* Hartnett Dep. 198:7-204:7, 254:8-21.) Other such practices and processes are the subject of ongoing expert analysis and not yet due to be disclosed.

By targeting children under the age of 13 to bring them on to its platforms, failing to effectively prevent under-13 users from joining and/or using Facebook and Instagram, and failing to effectively detect and remove under-13 users after they have joined, Meta unfairly exposes under-13 users to the risks posed to young users by the platforms, as discussed above.

*Seventh*, Meta engaged in the acts and practices discussed above despite research showing that young people's use of Meta's Platforms is associated with depression, anxiety, insomnia, impaired sleep, eating disorders, suicide, interference with education and daily life, and many other negative outcomes. Internal studies that Meta commissioned (which were kept private until they were leaked by a whistleblower) reveal that Meta has known for years about the serious harms associated with young users' time spent and use of features on its Platforms.  These physical and mental harms are particularly acute for young users, who are less able than adults to self-regulate the time they spend on Meta's Platforms, and Meta's tools that are purported to address these harms are ineffective.

Further examples of Meta's unfair practices include, but are not limited to, those described in the expert reports of Mitch Prinstein, Bradley Zicherman, Lauren Hale, Arvind Narayanan, and Colin Gray. Dr. Prinstein describes in his report how features and functions embedded within Meta's Platforms promote harmful social comparison processes; create stress that contributes to mental health symptoms; exploit youths' developmental vulnerabilities in harmful ways; encourage problematic social media use consistent with clinical dependency; interfere with relationship development and healthy peer socialization processes; disrupt offline, necessary activities like sleep; and promote other harms to youth mental health. Dr. Hale's report explains that the overall weight of the scientific evidence demonstrates that screen use, and particularly interactive forms of screen use such as social media use, impairs sleep health. Dr. Hale further opines that sleep loss impacts youth wellbeing, including cognitive and mental health outcomes.

Dr. Zicherman's report describes how the variable reward system inherent in the features and design of social media applications is particularly problematic for youth because it interacts with their underdeveloped brains, resulting in increased impulsivity, risk taking, and emotional dysregulation. He further opines that youth are more likely than adults to become addicted to social media and suffer resulting functional impairments and mental health harms; youth often circumvent or bypass Instagram's purported safety features or restrictions; parents often report having no control over addicted children's use of social media; and the treatment of youth addicted to social media presents considerable challenges and has limited success rates. Dr. Narayanan's report describes how Meta's recommendation algorithms are optimized to maximize user engagement and time spent (ultimately boosting advertising revenue), which in turn facilitates problematic use by pushing vulnerable users into feedback loops/rabbit holes. Dr. Gray's report identifies the features on Meta's platforms that utilize dark patterns and attention capture patterns in order to maximize engagement and facilitate problematic use/addiction. They also opine that Meta's design practices fall short of industry standards by subverting principles intended to safeguard user wellbeing, and rejecting implementation of safer alternative designs.

The State AGs make this supplemental response based on their current knowledge and information, and without prejudice to their ability to amend or supplement this response or to rely on additional facts and documents gained throughout the course of fact and expert discovery or at any time before trial.

**Dated: October 6, 2025**

Respectfully submitted,

**PHILIP J. WEISER**
  Attorney General
  State of Colorado

  */s/ Krista Batchelder*
  Krista Batchelder (CO Reg. No. 45066)
  Deputy Solicitor General
  Lauren M. Dickey (CO Reg. No. 45773)
  First Assistant Attorney General
  Elizabeth Orem (CO Reg. No. 58309)
  Assistant Attorney General
  Colorado Department of Law
  Ralph L. Carr Judicial Center
  Consumer Protection Section
  1300 Broadway, 7th Floor
  Denver, CO 80203
  Phone: (720) 508-6384
  krista.batchelder@coag.gov

  *Attorneys for Plaintiff State of Colorado, ex rel.*
  *Philip J. Weiser, Attorney General*

**ROB BONTA**
  Attorney General
  State of California

  */s/ Megan O'Neill*
  Nicklas A. Akers (CA SBN 211222)
  Senior Assistant Attorney General
  Bernard Eskandari (CA SBN 244395)
  Emily Kalanithi (CA SBN 256972)
  Supervising Deputy Attorneys General
  Megan O'Neill (CA SBN 343535)
  Nayha Arora (CA SBN 350467)
  Joshua Olszewski-Jubelirer
  (CA SBN 336428)
  Marissa Roy (CA SBN 318773)
  Brendan Ruddy (CA SBN 297896)
  Deputy Attorneys General
  California Department of Justice
  Office of the Attorney General
  455 Golden Gate Ave., Suite 11000
  San Francisco, CA 94102-7004
  Phone: (415) 510-4400
  Fax: (415) 703-5480
  megan.oneill@doj.ca.gov

  *Attorneys for Plaintiff the People of the State*
  *of California*

**WILLIAM TONG**
Attorney General
State of Connecticut

*/s/ Rebecca Borne*
Rebecca Borné
(CT Juris No. 446982), *pro hac vice*
Tess E. Schneider
(CT Juris No. 444175), *pro hac vice*
Krislyn M. Launer
(CT Juris No. 440789), *pro hac vice*
Assistant Attorneys General
Connecticut Office of the Attorney General
165 Capitol Avenue
Hartford, Connecticut 06106
Phone: 860-808-5400
Fax: 860-808-5593
Rebecca.Borne@ct.gov
Tess.Schneider@ct.gov

**THEODORE E. ROKITA**
Attorney General
State of Indiana

*/s/ Scott L. Barnhart*
Scott L. Barnhart (IN Atty No. 25474-82),
*pro hac vice*
Chief Counsel and Director of Consumer
Protection
Corinne Gilchrist (IN Atty No. 27115-53),
*pro hac vice*
Section Chief, Consumer Litigation
Mark M. Snodgrass (IN Atty No. 29495-49),
*pro hac vice*
Deputy Attorney General
Office of the Indiana Attorney General
Indiana Government Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46203

STATE ATTORNEYS GENERAL'S THIRD
SUPPLEMENTAL RESPONSE TO META'S
FIRST SET OF INTERROGATORIES

- 12 -

CASE NOS.: 4:23-cv-05448-YGR
4:22-md-03047-YGR

Krislyn.Launer@ct.gov

Telephone: (317) 232-6309
Scott.Barnhart@atg.in.gov
Corinne.Gilchrist@atg.in.gov
Mark.Snodgrass@atg.in.gov

*Attorneys for Plaintiff State of Indiana*

**KATHLEEN JENNINGS**
Attorney General
State of Delaware

*/s/ Ryan Costa*
Marion M. Quirk (DE Bar 4136), *pro hac vice*
Director of Consumer Protection
Ryan T. Costa (DE Bar 5325), *pro hac vice*
Deputy Director of Consumer Protection
Delaware Department of Justice
820 N. French Street, 5th Floor
Wilmington, DE 19801
Phone: (302) 683-8811
Marion.Quirk@delaware.gov
Ryan.Costa@delaware.gov


*Attorneys for State of Delaware, ex rel.*
*Kathleen Jennings, Attorney General*
*for the State of Delaware*

**KRIS W. KOBACH**
Attorney General
State of Kansas

*/s/ Sarah M. Dietz*
Sarah M. Dietz, Assistant Attorney General
(KS Bar No. 27457), *pro hac vice*
Kaley Schrader, Assistant Attorney General
(KS Bar No. 27700), *pro hac vice*
Office of the Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Telephone: (785) 296-3751
Fax: (785) 296-3131
Email: sarah.dietz@ag.ks.gov


*Attorneys for Plaintiff State of Kansas*

**KWAME RAOUL**
Attorney General
State of Illinois

*/s/ Matthew Davies*
Susan Ellis, Chief, Consumer Protection
Division (IL Bar No. 6256460), *pro hac vice*
Greg Grzeskiewicz, Chief, Consumer
Fraud Bureau (IL Bar No. 6272322), *pro hac vice*
Jacob Gilbert, Deputy Chief, Consumer Fraud
Bureau (IL Bar No. 6306019), *pro hac vice*
Matthew Davies, Supervising Attorney,
Consumer Fraud Bureau (IL Bar No. 6299608),
*pro hac vice*
Adam Sokol, Senior Assistant Attorney
General, Consumer Fraud Bureau (IL Bar No.
6216883), *pro hac vice*
Emily María Migliore, Assistant Attorney
General, Consumer Fraud Bureau (IL Bar No.
6336392), *pro hac vice*

**LIZ MURRILL**
Attorney General
State of Louisiana

*/s/ Asyl Nachabe*
Asyl Nachabe (LA Bar No. 38846)
*Pro hac vice*
Assistant Attorney General
Louisiana Department of Justice
Public Protection Division
Consumer Protection Section
1885 N 3rd Street, 4th Floor
Baton Rouge, LA 70802
Tel: (225) 326-6438
NachabeA@ag.louisiana.gov


*Attorney for State of Louisiana*

Daniel B. Roth, Assistant Attorney General, Consumer Fraud Bureau (IL Bar No. 6290613), *pro hac vice*
Meera Khan, Assistant Attorney General, Consumer Fraud Bureau (IL Bar No. 6345895), *pro hac vice*
Office of the Illinois Attorney General
115 S. LaSalle Street
Chicago, Illinois 60603
312-814-8554
Susan.Ellis@ilag.gov
Greg.Grzeskiewicz@ilag.gov
Jacob.Gilbert@ilag.gov
Matthew.Davies@ilag.gov
Adam.Sokol@ilag.gov
Emily.Migliore@ilag.gov
Daniel.Roth@ilag.gov
Meera.Khan@ilag.gov

*Attorneys for Plaintiff the People of the State of Illinois*

**KEITH ELLISON**
Attorney General
State of Minnesota

*/s/ Caitlin Micko*
Caitlin Micko (MN Bar No. 0395388), *pro hac vice*
Assistant Attorney General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1200
St. Paul, MN 55101-2130
Tel: (651) 724-9180
caitlin.micko@ag.state.mn.us

*Attorney for Plaintiff State of Minnesota, by its Attorney General, Keith Ellison*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

*/s/ Philip R. Heleringer*
J. Christian Lewis (KY Bar No. 87109), *pro hac vice*
Philip Heleringer (KY Bar No. 96748), *pro hac vice*
Zachary Richards (KY Bar No. 99209), *pro hac vice app. forthcoming*
Daniel I. Keiser (KY Bar No. 100264), *pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Ste. 200
Frankfort, KY 40601
Christian.Lewis@ky.gov
Philip.Heleringer@ky.gov
Zach.Richards@ky.gov
Daniel.Keiser@ky.gov
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

**MATTHEW J. PLATKIN**
Attorney General
State of New Jersey

By: */s/ Thomas Huynh*
Kashif T. Chand (NJ Bar No. 016752008), *pro hac vice*
Section Chief, Deputy Attorney General
Deputy Attorneys General
Thomas Huynh (NJ Bar No. 200942017), *Pro hac vice*
Assistant Section Chief, Deputy Attorney General

New Jersey Office of the Attorney General, Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov

*Attorneys for Plaintiffs Matthew J. Platkin, Attorney General for the*

*State of New Jersey, and Elizabeth Harris,
Acting Director
of the New Jersey Division of Consumer
Affairs*

**MICHAEL T. HILGERS**
Attorney General
State of Nebraska

*/s/ Anna Anderson*
Anna Anderson (NE #28080)
Assistant Attorney General
Consumer Protection Bureau
Office of the Nebraska Attorney General
2115 State Capitol Building
Lincoln, NE 68509
Phone: (402) 471-2682
Email: anna.anderson@nebraska.gov

*Attorney for Plaintiff State of Nebraska*

**LETITIA JAMES**
Attorney General
State of New York

*/s/ Christopher D'Angelo*
Christopher D'Angelo, Chief Deputy Attorney
General, Economic Justice Division
(NY Bar No. 4348744), *pro hac vice*
Christopher.D'Angelo@ag.ny.gov
Clark Russell, Deputy Chief, Bureau of
Internet and Technology
(NY Bar No. 2848323), *pro hac vice*
Clark.Russell@ag.ny.gov
Nathaniel Kosslyn, Assistant Attorney General
(NY Bar No. 5773676), *pro hac vice*
Nathaniel.Kosslyn@ag.ny.gov
New York Office of the Attorney General
28 Liberty Street
New York, NY 10005
(212) 416-8262

*Attorneys for Plaintiff the People of the State
of New York*

**JEFF JACKSON**
Attorney General of North Carolina

*/s/ Charles White*
Charles G. White (N.C. SBN 57735),
*pro hac vice*
Assistant Attorney General
Kunal Choksi
Senior Deputy Attorney General
Josh Abram
Special Deputy Attorney General
N.C. Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6889
Facsimile: (919) 716-6050
cwhite@ncdoj.gov

**ALAN WILSON**
Attorney General
State of South Carolina

*/s/ Anna C. Smith*
C. Havird Jones, Jr.
Senior Assistant Deputy Attorney General
Jared Q. Libet (S.C. Bar No. 74975),
*pro hac vice*
Assistant Deputy Attorney General
Anna C. Smith (SC Bar No. 104749),
*pro hac vice*
Assistant Attorney General
Office of the South Carolina Attorney General
Post Office Box 11549
Columbia, South Carolina 29211
jlibet@scag.gov

STATE ATTORNEYS GENERAL'S THIRD
SUPPLEMENTAL RESPONSE TO META'S
FIRST SET OF INTERROGATORIES

- 15 -

CASE Nos.: 4:23-cv-05448-YGR
4:22-md-03047-YGR

*Attorneys for Plaintiff State of North Carolina*

**DAVE SUNDAY**
Attorney General
Commonwealth of Pennsylvania

*/s/ Jonathan R. Burns*
Jonathan R. Burns
Deputy Attorney General
(PA Bar No. 315206), *pro hac vice*
Email: jburns@attorneygeneral.gov
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Tel: 717.787.4530

*Attorneys for Plaintiff the Commonwealth of Pennsylvania*

**JASON S. MIYARES**
Attorney General
Commonwealth of Virginia

*/s/ Joelle E. Gotwals*
Steven G. Popps
Chief Deputy Attorney General
Thomas J. Sanford
Deputy Attorney General
Richard S. Schweiker, Jr. (VSB No. 34258),
*pro hac vice*
Senior Assistant Attorney General and Section Chief
Joelle E. Gotwals (VSB No. 76779),
*pro hac vice*
Senior Assistant Attorney General
Chandler P. Crenshaw (VSB No. 93452),
*pro hac vice*
Assistant Attorney General
Office of the Attorney General of Virginia
Consumer Protection Section
202 N. 9th Street
Richmond, Virginia 23219
Telephone:     (804) 786-8789
Facsimile:     (804) 786-0122
E-mail: jgotwals@oag.state.va.us

*Attorneys for the Plaintiff Commonwealth of Virginia ex rel. Jason S. Miyares, Attorney General*

annasmith@scag.gov
803-734-0536

*Attorneys for Plaintiff the State of South Carolina, ex rel. Alan M. Wilson, in His Official Capacity as Attorney General of the State of South Carolina*

**JOSHUA L. KAUL**
Attorney General State of Wisconsin

By: */s/ Brittany A. Copper*
Brittany A. Copper, Assistant Attorney General
WI State Bar # 1142446, *pro hac vice*
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
Phone: (608) 261-9224
Email: Brittany.copper@widsoj.gov

*Attorneys for Plaintiff State of Wisconsin*

STATE ATTORNEYS GENERAL'S THIRD
SUPPLEMENTAL RESPONSE TO META'S
FIRST SET OF INTERROGATORIES

- 16 -

CASE Nos.: 4:23-cv-05448-YGR
4:22-md-03047-YGR