# Exhibit B

AGENDA AND JOINT STATEMENT FOR JULY 17, 2026 FINAL
PRETRIAL CONFERENCE (MDL AG ACTION)

*[Parties and counsel listed on signature pages]*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>*ALL ACTIONS* | MDL No. 3047<br><br>Case No.: 4:22-md-03047-YGR<br><br>**AGENDA AND JOINT STATEMENT FOR JULY 17, 2026 SECOND PRETRIAL CONFERENCE (MDL AG ACTION)**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

The State AGs oppose Meta's request for further briefing on the applicability of Section 230 to the State AGs' deception claims. The State AGs' misrepresentations about aspects of its platforms all involve Meta's own conduct and Meta's own statements—not the content of third parties. The Court is fully capable of precluding inadmissible evidence at trial, and Meta has had no less than four opportunities to raise this issue between Motions to Dismiss and for Summary Judgment—where Meta failed to litigate this argument—as well as Meta's Motion *in Limine* No. 4 and the Administrative Motion it filed on [DATE]. Meta should not receive a fifth bite at the apple here.

3. **<u>Appearance-Altering Filters</u>**

Regarding appearance-altering filters, the record does support the State AGs' proffers regarding Meta's involvement in third-party filters on its platforms. Meta's former Head of Responsible Innovation, Margaret Gould Stewart testified: **"**[T]he reality labs team was actually where some of these effects were being developed in a team called Spark AR." Stewart Dep. Tr. 51:9–11. She also provided: "Third party [effects] would be outside developers and designers, designing them and submitting them for use on the platform." Stewart Dep. Tr. 234:5-7. Ms. Stewart also testified that Spark AR was a platform created by Meta, and "that there was a developer tool kit that was created that people outside the company to use to develop effects[.]" *See* Stewart Dep. Tr. 233:25 – 236:20. Meta's internal documents from August 2019 also note that "[w]e launch third-party (developer) AR Effects to 100% of users," and Meta's 30(b)(6) witness, Sayed Otaru, testified that "we" in that sentence refers to Meta or Instagram. Otaru Dep. 177:5 – 178:6. Additionally, Magistrate Judge Kang has never expressly ruled that evidence about Meta's VR platforms are outside the scope of discovery, but rather, it has been a common understanding between all Parties that VR platforms were not part of this case. Sinha Dep. Tr. 145:6–10 ("Mr. Chaput: Object to form. Counsel, I'll give you some leeway here, but VR is out of the scope of relevance entirely in these cases."); Backstrom Dep. Tr. 22:2–6 ("[D]o you work with teams in the Horizon World or Reality Labs organization? Mr. Chaput: Objection; scope.") Although the precise mechanics are unclear regarding how third-party developers submit or design filters using Meta's toolkit or Spark AR platform, or how Meta in turn launches those filters; what is clear is that Meta plays a role in giving developers tools to create these effects and launching them on its platforms. Moreover, cosmetic surgery effect filters are tools, not

content; and the State AGs' claims seek to hold Meta liable for its unfair business practice in affirmatively deciding to make these tools available to young users—including by lifting a ban it had implemented—despite extensive internal knowledge about the known harms of these tools, especially on young girls.

Regardless, the State AGs have decided to no longer pursue unfairness theories of liability with respect to cosmetic surgery effect filters and do not seek to reopen discovery on this issue following trial. Meta's decisions to lift bans on these effects, however, speak directly to the State AGs' deception claims alleging that Meta made misleading statements about prioritizing the safety of its users. Despite these public misrepresentations, Mr. Zuckerberg's decision to lift the ban on these effects, at least in part due to concerns about company "growth," directly contradicts those representations.

### C.    State AGs Request for Meta to Confirm Representation of and Ability to Produce Witnesses for Trial

**State AGs' Position:** On June 18, the AGs' reached out to Meta's counsel to ask for confirmation of the party witnesses they represent, would accept service for, and would commit to producing at trial. Counsel provided a partial response nineteen days later, which indicated disagreement as to four classes of witnesses.

First, as to Instagram Chief Adam Mosseri, Meta indicated willingness to accept service for only one day of testimony. Mr. Mosseri made a number of the misrepresentations at issue in the case, and is central to many issues and documents in the case. The AGs will work in good faith to schedule Mr. Mosseri's testimony, but need some flexibility on when to call him. The AGs have offered to narrow the scope of their appearance request to six trial days at the end of August (Aug 20-31), in exchange for which they would agree to Meta's request that Mark Zuckerberg be called only on September 1.

Second, Meta indicated that they disagree with the AGs' position that Antigone Davis, Global Head of Safety for Meta, is within the Court's subpoena power. The fact that Ms. Davis "regularly transacts business in person… within 100 miles" of the presiding Court and has done so throughout the period at issue clearly establishes the Court's jurisdiction under FRCP 45(c)(1)(A). *See Jones v. PGA Tour, Inc.*, No. 22-cv-04486-BLF, 2023 U.S. Dist. LEXIS 61147, at *19-20 (N.D. Cal. Apr. 3, 2023) (collecting cases finding subpoena power attaches to patterns of work-related travel far less extensive than