Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

*Attorney for Defendants Meta Platforms, Inc. and Instagram, LLC*

*[Additional parties and counsel listed on signature pages]*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION <br><br> This Document Relates To: <br><br> *Charleston County School District v. Meta Platforms, Inc. et al.*, Case No.: 4:23-cv-04659 | MDL No. 3047 <br><br> Case No.: 4:22-md-03047-YGR <br>        4:23-cv-04659-YGR <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ADMINISTRATIVE RELIEF CONCERNING TRIAL SETTING** <br><br> Judge: Hon. Yvonne Gonzalez Rogers <br> Magistrate Judge: Hon. Peter H. Kang |

Plaintiffs' motion for "relief" concerning the *Charleston* trial setting is an unworkable (and uninvited) request for this Court to upend its bellwether process.[1]  The Court ordered the parties to "prepare both [the Tucson and Charleston] cases for trial so that *in the event the first resolves*, the second can proceed."  ECF 3062 at 1 (emphasis added).  The Court has also gone to great lengths to ensure that it can try all of the initial bellwethers itself—including those that will be tried outside of this district.  And with good reason:  Ensuring that the Court tries the initial bellwether cases in this MDL will provide the parties with clear and consistent guidance as they navigate the complex legal and factual issues presented by these novel cases in bellwether proceedings.  Charleston cannot  show good cause to modify this Court's order.  The Court should deny the motion.

*First*, at this stage of the litigation, when no school district bellwethers have been tried in either state or federal court, and no personal injury or school district bellwethers have been tried by this Court, holding two simultaneous bellwether trials before different judges will not provide the parties with the type of information likely to "facilitate broader resolution efforts."  Mot. 1.  To the contrary, it is more likely to do the opposite by generating conflicting guidance that could entrench the parties in their respective positions and ultimately hinder any broader effort to resolve these cases.  Asking a judge to come in at the eleventh hour and preside over a lengthy trial  with the many complex legal and evidentiary issues posed by these cases—and without having had the opportunity to consider and rule on summary judgment motions, Rule 702 motions, *in limine* motions, and jury instructions—would be unfair, counterproductive, and burdensome on the Court and the judiciary.

By contrast, this Court is intimately familiar with the parties, the facts, and the applicable law.  It has had the benefit of extensive briefing and argument on numerous key legal questions.  Having this Court conduct the first federal bellwether trials would give the parties the benefit of this Court's

[1] Plaintiffs did not raise the notion of trying *Charleston* and *Tucson* simultaneously until the afternoon of July 8, which was too late for the topic to be included in the Parties' CMC Statement due July 10. Defendants informed Plaintiffs on July 10 that they would oppose Plaintiffs' proposal, but that they had no objection to (1) including this issue in the CMC Statement for the next CMC (after July 17), or (2) otherwise agreeing on a reasonable briefing schedule.  Plaintiffs refused—insisting on filing an administrative motion on July 10, without any explanation for the apparent urgency.

knowledge of the MDL and would ensure consistency across bellwether trials—the importance of which this Court has recognized. *E.g.*, Oct. 25, 2024 Hr'g Tr. at 26:9–16 (noting the Court's willingness to travel to try cases "so that way [the parties] get consistency across various jurisdictions"); *accord In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, 2014 WL 715579, at \*2 (M.D. Ga. Feb. 24, 2014) ("[I]nter-circuit assignment would allow the parties to benefit from the Court's knowledge of [the MDL] and would minimize delay and expense."). In highly complex cases such as these, the interests of justice would be best served if this Court tries at least the first several bellwethers itself.

Take, for instance, the impact of Section 230. While the Court has issued several orders regarding Section 230, it has not had the opportunity to apply them at trial. *See, e.g.*, Mar. 18, 2026 Hr'g Tr. at 67:9–15 ("[The Court:] I have been thinking a lot about this [Section 230] . . . . I suspect what I will end up doing is, on a daily basis . . . , the jury will be told that all this content information is not actionable."). Defendants submit that the parties would benefit greatly from this Court's applications of its pretrial holdings—and in particular its Rule 403 balancing approach to Section 230—at trial. *See* ECF 2728 at 12 ("The issue of evidence regarding the [features Defendants argue are barred from liability by Section 230 and the First Amendment] is largely one of admissibility under Federal Rule of Evidence 403 . . . ."). So too would any other jurists who may preside over a future trial, who could look to this Court's decisions (in addition to the Court's pretrial rulings) as they approach the same or similar disputes.

***Second***, Charleston's suggestion that its "proposal is in keeping with precedent," Mot. 3, is wrong. While Judge Kuhl has indicated that cases in the JCCP's second wave of cases in the first bellwether trial pool will be tried concurrently in front of different judges, such simultaneous trials will only take place *after* Judge Kuhl presided over two trials in the first bellwether pool. Similarly, in the 3M earplug litigation, the court set concurrent trials to commence only *after* it had tried several rounds of bellwethers itself.[2] By contrast, this Court will not have tried a single school district or personal injury bellwether case as of February 2027. The *Engle* litigation cited by Plaintiff is even more inapposite. That case was consolidated in 2009 following over a decade of tobacco litigation beginning in 1994, *see generally In re:*

---

[2] *See In re: 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3-19-md-2885 (N.D. Fla.), ECF 1629 (Jan. 25, 2021) (setting trial for March 2021); ECF 1675 (Feb. 24, 2021) (setting trials for May and June 2021); ECF 1802 (June 3, 2021) (setting trial for October 2021).

*Engle Cases*, No. 09-cv-10000, ECF 1-4 (M.D. Fla. Nov. 27, 2009), that resulted in the appointment of "a visiting judge . . . with the responsibility of managing the *Engle* tobacco docket cases to trial," *In re: Engle Cases*, No. 9-cv-10000, ECF 1120 at 1 (M.D. Fla. Aug. 13, 2013).

*Third*, there will be no efficiency gains in setting simultaneous trials.  In fact, as discussed above, it will be *inefficient* given the need to get another judge quickly up to speed.  Plaintiffs point to "hundreds of person-hours" spent on "meeting and conferring on witnesses and deposition designations, preparing exhibits, briefing the court on pre-trial issues, and other essential tasks," Mot. 3, but none of that work will be wasted or need to be redone irrespective of when the *Charleston* trial occurs.  Likewise, as demonstrated by Plaintiffs' preliminary witness disclosures, the company and expert witnesses expected to testify at both trials overlap substantially, meaning that most of the witnesses would need to prepare and make arrangements to testify regardless of which or how many trials proceed in February 2027.  The same is almost certainly true for Tucson's and Charleston's exhibit lists.

*Fourth*, Charleston understates the considerable prejudice Defendants would face by setting simultaneous trials.  As noted, the vast majority of Defendants' employee and expert witnesses overlap across the two cases; requiring these witnesses to testify twice in a short period of time would impose a substantial incremental burden on Defendants and these witnesses, and it would pose significant difficulties in scheduling witnesses' testimonies.  These concerns are especially acute with respect to Defendants' senior leadership, whom Plaintiffs will doubtless seek to call in each case.[3]  Plaintiffs' suggestion that the witnesses' "additional commute could be as short as a walk across the hall," *id.* at 4, ignores the reality that the two trials are likely to have different daily schedules and proceed at different paces.  Plaintiffs' proposal could also deprive Defendants of their chosen counsel for the first school district bellwethers.  While it is true that Meta has already faced—and continues to face—simultaneous

---

[3] Meta reserves the right to request that the testimony of its senior leaders, including its CEO, Mark Zuckerberg, be recorded at the first school district bellwether trial in which they testify for use at all other MDL trials (or school district trials).  *See generally* ECF 2985.

3

trials, that fact only reinforces the prejudice Meta would face if *Tucson* and *Charleston* were set for trial concurrently in February 2027.[4]

*Finally*, the Court should likewise reject Plaintiffs' fallback request to set the *Charleston* trial for "45 days after the conclusion of the Tucson trial." *Id.* Both the Court and the parties will need sufficient time after the end of the first school district trial (which may include multiple phases, *see* Mar. 18, 2026 Hr'g Tr. at 10:23–1) to interpret and respond to its result, including post-trial briefing and the framing of any potential appellate issues. Defendants respectfully suggest that the Court should wait until after the conclusion of the February 2027 trial to set the second school district bellwether case for trial. Defendants are committed to moving forward with the second and all subsequent bellwether trials on an efficient timeline. But there is no need to adopt Plaintiffs' artificially compressed 45-day schedule, which could leave the Court and the parties with insufficient time to prepare without providing any corresponding benefits.

---

[4] In addition to the school district trial set for February 2027, Meta faces state-court attorney general trials in January 2027, as well as November 2026 and April 2027. The parties also anticipate that Judge Kuhl may set additional person injury cases for trial during Q1 2027. All of these cases involve an overlapping group of employee witnesses, experts, and counsel.

DATED:  July 14, 2026

Respectfully submitted,

By:    */s/ Ashley M. Simonsen*

Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones (*pro hac vice*)
Paul W. Schmidt (*pro hac vice*)
Christian J. Pistilli (*pro hac vice*)
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
Email: pajones@cov.com
Email: pschmidt@cov.com
Email: cpistilli@cov.com

*Attorneys for Defendants Meta Platforms, Inc.
and Instagram, LLC*

**KING & SPALDING LLP**

By: */s/ Geoffrey M. Drake*
Geoffrey M. Drake, *pro hac vice*
TaCara D. Harris, *pro hac vice*
King & Spalding LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309-3521
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
Email: gdrake@kslaw.com
Email: tharris@kslaw.com

David P. Mattern, *pro hac vice*
King & Spalding LLP
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone: (202) 737-0500

Facsimile: (202) 626-3737
Email: dmattern@kslaw.com

Bailey J. Langner (SBN 307753)
King & Spalding LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300
Email: blangner@kslaw.com

**O'MELVENY & MYERS LLP**

By*: /s/ Daniel M. Petrocelli*
Daniel M. Petrocelli (SBN 97802)
dpetrocelli@omm.com
Sabrina H. Strong (SBN 200292)
sstrong@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 553-6700

Stephen D. Brody, *pro hac vice*
sbrody@omm.com
1625 Eye Street
Washington, DC 20006
Telephone: (202) 383-5300
*Attorneys for Defendants TikTok Inc.,*
*ByteDance Inc., TikTok Ltd., ByteDance Ltd.,*
*and TikTok LLC*

**MUNGER, TOLLES & OLSEN LLP**

By*: /s/ Jonathan H. Blavin*
Jonathan H. Blavin, SBN 230269
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
Email: jonathan.blavin@mto.com

E. Martin Estrada (SBN 223802)
Martin.Estrada@mto.com
L. Ashley Aull (SBN 257020)
Ashley.Aull@mto.com
Victoria A. Degtyareva (SBN 284199)
Victoria.Degtyareva@mto.com

6

MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel.: (213) 683-9100

*Attorneys for Defendant Snap Inc.*

**WILLIAMS & CONNOLLY LLP**

By: */s/ Ashley W. Hardin*
WILLIAMS & CONNOLLY LLP
Ashley W. Hardin, *pro hac vice*
J. Andrew Keyes, *pro hac vice*
Neelum J. Wadhwani (SBN 247948)
680 Maine Avenue SW
Washington, DC 20024
Tel.: (202) 434-5000
ahardin@wc.com
akeyes@wc.com
nwadhwani@wc.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ADMINISTRATIVE RELIEF CONCERNING TRIAL SETTING
4:22-md-03047-YGR

**ATTESTATION**

I, Ashley M. Simonsen, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED:  July 14, 2026

By:     */s/ Ashley M. Simonsen*

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ADMINISTRATIVE RELIEF CONCERNING TRIAL SETTING
4:22-md-03047-YGR