# Exhibit 1

CONFIDENTIAL

Page 1

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE: SOCIAL MEDIA ADOLESCENT ) MDL No.
ADDICTION/PERSONAL INJURY      ) 4:22-md-3047-YGR
PRODUCTS LIABILITY LITIGATION  )
_____ )
-----------------------------------------------------
        COMMONWEALTH OF MASSACHUSETTS
SUFFOLK, ss                              SUPERIOR COURT
_____
COMMONWEALTH OF MASSACHUSETTS,
      Plaintiff,                  CIVIL ACTION NO.
                                  2384CV02397-BLS1
v.
META PLATFORMS, INC. and
INSTAGRAM, LLC.

      Defendants.
_____

            Monday, March 2, 2026

  CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

      Video-Recorded Oral Deposition of CARL
S. SABA held at the offices of Davis Polk &
Wardwell LLP, 900 Middlefield Road, Redwood
City, California, commencing at 9:03 AM PST
on the above date, before Michael E. Miller,
Fellow of the Academy of Professional
Reporters, Certified Court Reporter,
Registered Diplomate Reporter, Certified
Realtime Reporter, and California CSR #13649.
                  __ __ __
            GOLKOW - VERITEXT
        877.370.DEPS | fax 917.591.5672
              deps@golkow.com

Golkow Technologies,
877-370-3377          A Veritext Division          www.veritext.com

CONFIDENTIAL

MS. ARORA:  Objection to form.

A.    I didn't say that.  But they're based on thresholds of time.

BY MR. WILLIAMS:

Q.    Not the design features that are at issue?

MS. ARORA:  Objection to form, asked and answered.

A.    I -- they relate to the assertions regarding unfair practices and, therefore, these features.  But I'm saying that they don't have a numerical impact on my calculations.

BY MR. WILLIAMS:

Q.    Do you know how many teens used each of the remaining at-issue design features?

MS. ARORA:  Objection to form.

A.    I -- not explicitly, although I would say for the time management tools, there is a discussion in my report about low adoption rates.

BY MR. WILLIAMS:

Q.    As for the multiple accounts function and cosmetic filters, you don't know

CONFIDENTIAL

Page 54

how many teens used each of those specific design features?

MS. ARORA:  Objection to form.

A.    I don't.

BY MR. WILLIAMS:

Q.    And the number of teens who used the time -- the at-issue design features doesn't impact your calculations in this report, correct?

MS. ARORA:  Objection to form.

A.    Specifically, my time spent calculations are not impacted by that.

BY MR. WILLIAMS:

Q.    Your time spent calculations are not impacted by the number of teens who used the at-issue design features, correct?

A.    Correct, because it's based on the number of teens that exceed certain time spent thresholds.  That's the -- that's the basis for the calculations.

Q.    You don't know whether any particular teen used any specific design feature, correct?

A.    Any particular teen, no.

Q.    You don't know how long any

CONFIDENTIAL

Page 61

Did you consider whether teens were harmed by the allegedly deceptive statements?

MS. ARORA:  Objection to form.

A.    I don't have any opinions about harm.

BY MR. WILLIAMS:

Q.    That wasn't my question.

Did you consider whether teens were harmed by the allegedly deceptive statements?

MS. ARORA:  Same objection to form.

A.    I didn't conduct any analysis on harm, so I don't know why you would say -- I mean, I think I've answered your question.

BY MR. WILLIAMS:

Q.    So the answer to my question is you did not consider whether teens were harmed by the allegedly deceptive statements, correct?

A.    My answer is I didn't perform any analysis on whether harm did, in fact, occur or did not occur.

Q.    Was whether or not teens were

CONFIDENTIAL

Page 75

the States are asserting is that those are the result of the misconduct.

BY MR. WILLIAMS:

Q.    Okay.  And the same is true for the time spent calculations too, correct?

MS. ARORA:  Objection to form.

A.    Yes.  Again, with the caveat that I have calculated different time spent thresholds to allow for the possibility that the Court may decide that certain time spent thresholds constitute violations and others do not.

BY MR. WILLIAMS:

Q.    So if the State AGs do not prove that the wrongful conduct caused the time spent instances that you count, then your time spent instances would not be relevant in this action, correct?

MS. ARORA:  Objection to form.

MR. BERGE:  Objection to form.

A.    Well, in that instance, they may not be relevant as an indication of violations or a count of violations.  They may still be relevant in some other way.  They may be relevant in demonstrating how

Page 76

much certain groups of teens are spending --
how much time certain groups of teens are
spending on the platform.

BY MR. WILLIAMS:

Q.      But they wouldn't be relevant
for purposes of counting violations, correct?

MS. ARORA:  Objection to form.

A.      In that instance, they may not
be.

BY MR. WILLIAMS:

Q.      They would not be.

MS. ARORA:  Objection to form,
and asked and answered.

A.      It's a matter of legal
determination.  I'm not going to make --

BY MR. WILLIAMS:

Q.      I'm asking for your
understanding.

Is it your understanding that
if the AGs do not prove that the instances of
time spent that you calculate are caused by
the alleged misconduct, your calculations
would not be relevant to the number of
violations in this action?

MS. ARORA:  Objection to form.

CONFIDENTIAL

Page 105

teens during the relevant time period.

BY MR. WILLIAMS:

Q.      I don't think that answered my question.

You don't have any basis for your assumption that the specific design features at issue caused teens to spend time on the platform, correct?

MS. ARORA:  Objection to form, asked and answered.

A.      I didn't -- I did not do an analysis that is specific to those features. What I looked at were broader indicators of wanting to acquire, retain and engage teens.

BY MR. WILLIAMS:

Q.      So apart from Meta's efforts to acquire and retain teens, you did not look at any evidence indicating that the specific design features at issue caused users to spend -- sorry, caused teens to spend time on the platform, correct?

MS. ARORA:  Objection to form.

A.      I didn't do an analysis of the impact of each feature, you know, individually on time spent.  I didn't do

CONFIDENTIAL

Page 106

that.

BY MR. WILLIAMS:

Q.      I'm not asking if you did an analysis.

I'm asking if you have any evidence -- strike that.

I'm asking if you looked at any evidence indicating that the specific design features at issue caused users to spend time on the -- caused teens to spend time on the platform.

MS. ARORA:  Objection to form, and asked and answered.

A.      That's not something that I did as part of my calculation, so I wasn't looking for that evidence.

BY MR. WILLIAMS:

Q.      So you don't have a reasonable basis to assume that the specific design features at issue caused teens to spend time on the platform, correct?

MS. ARORA:  Objection to form.

A.      I don't think I agree with that because those features may well have contributed to time spent on the platform.

CONFIDENTIAL

Page 113

asking me if I'm -- if I analyzed whether some specific teen was exposed to that conduct?

Q.    Let me ask a different way.

Your time spent calculations aren't limited to calculating teens or counting teens who are exposed to the unfair design practices, correct?

A.    They're not limited -- again, I think that you're getting back at whether I did some sort of an apportionment to specific conduct or features, and I did not do that.

Q.    I'm asking something a little different.

Your time spent calculations don't take into account whether teens who you count were exposed to the unfair design practices, correct?

MS. ARORA:  Objection to form.

A.    I did not determine what portion of those teens were exposed to those.

BY MR. WILLIAMS:

Q.    And the same is true as to what portion of the teens were exposed to the allegedly deceptive statements, correct?

CONFIDENTIAL

Page 114

MS. ARORA:  Objection to form.

A.    Correct.

But again, I think it depends on how "exposed" is defined, because "exposed" could mean that those statements are made in public, and therefore, everybody is exposed.

BY MR. WILLIAMS:

Q.    Is that your understanding of the attorney generals' theory here?

MS. ARORA:  Objection to form.

A.    I think you're getting pretty far into a matter of legal claims, which is not my area of expertise.

BY MR. WILLIAMS:

Q.    Well, I --

A.    I have a general understanding of what the claims are.

Q.    Let me ask it differently.

Your time spent calculations don't take into account whether the teens who you count were exposed to the deceptive statements regardless of how you define "exposed"?

MS. ARORA:  Objection to form.

CONFIDENTIAL

Page 115

A.    I don't think that's necessarily true, because if the States define "exposed" as the statements were made in public, I know that that occurred.

BY MR. WILLIAMS:

Q.    Your time spent calculations don't take into account how many -- strike that.

Your time spent calculations don't take into account whether teens heard the deceptive statements, correct?

A.    What do you mean by "heard"? Orally heard or read?

Q.    Were aware of the deceptive statements.

MS. ARORA:  Objection to form.

A.    I don't know.

BY MR. WILLIAMS:

Q.    You don't know whether your time spent calculations take into account whether teens were aware of the deceptive statements?

A.    I don't know what teens in my calculations were aware or not aware of those statements.

CONFIDENTIAL

Page 116

Q.      You don't take that into account one way or another in your calculation, correct?

A.      Yes.  It's not something that impacts my calculations.

Q.      You don't offer any opinions on whether your time spent calculations are associated with an actual or likely harm, correct?

A.      No, I don't -- I don't have any opinions about whether harm occurred or did not occur.

Q.      It's not your opinion that every instance of a time spent violation that you calculate reflects an actual or likely harm, correct?

MS. ARORA:  Objection to form.

A.      No.

BY MR. WILLIAMS:

Q.      It's not your opinion that every instance of the time spent violation that you calculate reflects an instance of problematic use, correct?

A.      That's correct.  I agree with that statement.

CONFIDENTIAL

Page 363

CERTIFICATE

I, MICHAEL E. MILLER, Fellow of the Academy of Professional Reporters, Registered Diplomate Reporter, Certified Realtime Reporter, Certified Court Reporter and Notary Public, do hereby certify that prior to the commencement of the examination, CARL S. SABA was duly sworn by me to testify to the truth, the whole truth and nothing but the truth.

I DO FURTHER CERTIFY that the foregoing is a verbatim transcript of the testimony as taken stenographically by and before me at the time, place and on the date hereinbefore set forth, to the best of my ability.

I DO FURTHER CERTIFY that pursuant to FRCP Rule 30, signature of the witness was not requested by the witness or other party before the conclusion of the deposition.

I DO FURTHER CERTIFY that I am neither a relative nor employee nor attorney nor counsel of any of the parties to this action, and that I am neither a relative nor employee of such attorney or counsel, and that I am not financially interested in the action.

_____
MICHAEL E. MILLER, FAPR, RDR, CRR
Fellow of the Academy of Professional Reporters
NCRA Registered Diplomate Reporter
NCRA Certified Realtime Reporter
California CSR #13649
Dated: March 3, 2026