# Exhibit 6

CONFIDENTIAL

Page 1

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES


| | |
|---|---|
| COORDINATION PROCEEDING | ) JCCP No. 5255 |
| SPECIAL TITLE [RULE 3.400] | ) For Filing |
| | ) Purposes: |
| IN RE: SOCIAL MEDIA | ) 22STCV21355 |
| ADOLESCENT ADDICTION | ) Judge Carolyn Kuhl |
| _____ | ) |
| THIS DOCUMENT RELATES TO: | ) |
| Christina Arlington Smith, | ) |
| et al. v. TikTok Inc., et al., | ) |
| Case No. 22STCV21355, Los | ) |
| Angeles Superior Court | ) |
| _____ | ) |


VIDEOTAPED DEPOSITION OF JEAN M. TWENGE, Ph.D.

JUNE 26, 2025

9:06 A.M.


Job No.: 7396586

Pages: 1 - 508

Reported by: Leslie A. Todd, CSR No. 5129 and RPR

CONFIDENTIAL

Q.    If all you knew about that person is that on June 26, 2025, they spent five hours a day on Facebook or Instagram, could you say, more likely than not, they would experience the harms discussed in your report?

MS. McNABB:  Objection.  Calls for a legal conclusion.

THE WITNESS:  So the -- the more likely or not is just not generally how these types of research studies work.  That's -- putting a number on something like that is generally not how it works.

BY MR. HALPERIN:

Q.    So you couldn't offer that opinion, correct?

MS. McNABB:  Same objection.

THE WITNESS:  I mean, it's just not what my report was generally about so it's really hard for me to answer that question specifically.

BY MR. HALPERIN:

Q.    If all you knew about a person was that over the course of a single month they spent, on average, more than three hours a

CONFIDENTIAL

Page 415

THE WITNESS: So again, my charge in this report was not to look at those specific features; it was to review the literature mostly on time spent.

BY MR. HALPERIN:

Q. Sitting here today, can you identify any harm from disappearing content separate and apart from increasing time spent?

MS. McNABB: Objection.

THE WITNESS: Not --

MS. McNABB: Misstates testimony.

THE WITNESS: Not what I was supposed to do in this report.

BY MR. HALPERIN:

Q. Are you offering any opinions about like counts?

A. In this report, no.

Q. Do you intend to offer opinions about like counts at trial?

A. No.

Q. Do you offer any opinions about autoplay of video?

A. So that's another case where that

CONFIDENTIAL

Page 416

may increase time spent.  Apart from that, no.

Q.     Do you have any opinion that video autoplay leads to harm separate and apart from increasing time spent?

A.     No.

Q.     Do you have any opinion that endless scroll leads to harm separate and apart from increasing time spent?

A.     No.

Q.     What --

MS. McNABB:  Just objection to that.  Objection.  Vague.

BY MR. HALPERIN:

Q.     What material do you rely on for your opinion that notifications increases time spent?

A.     So, again, that was not what I was charged to do here.

Q.     Have you looked at -- have you seen evidence, other than your own personal beliefs, that notifications increase time spent?

A.     That was not something I researched in relation to this report.  That was not what I was charged to do.

CONFIDENTIAL

Page 469

Q. If an adolescent were to start watching a daily meditation video for 60 minutes a day on YouTube, is it your view that that would contribute to a negative mental health outcome?

A. No. Because usually an hour a day is not linked to negative mental health outcomes. It would have to be more than that.

Q. So -- but you -- but you think there's a dose response. Correct?

A. Yes.

Q. So one hour is not enough to cause a dose response in your opinion?

A. So what I'm referring to is that in many of these datasets -- and I'm sorry, I'm going to gesture -- but no use goes like this. So the best outcomes are often at half an hour or an hour a day not at zero. And that's not true in Kelly, but it's true in a few other -- in some other big datasets where you get the best outcomes at a small amount of use like half an hour or an hour a day. And then from there you get the clear dose response.

Q. So would it depend what other

CONFIDENTIAL

Page 505

CERTIFICATE OF CERTIFIED SHORTHAND REPORTER

The undersigned Certified Shorthand Reporter does hereby certify:

That the foregoing proceeding was taken before me at the place and time therein set forth, at which time the witness was duly sworn; That the testimony of the witness and all objections made at the time of the examination were recorded stenographically by me and were thereafter transcribed, said transcript being a true and correct copy of my shorthand notes thereof; That the dismantling of the original transcript will void the reporter's certificate.

In witness thereof, I have subscribed my name this date:  June 28, 2025.

_____

LESLIE A. TODD, CSR, RPR

Certificate No. 5129

(The foregoing certification of this transcript does not apply to any reproduction of the same by any means, unless under the direct control and/or supervision of the certifying reporter.)

Golkow Technologies,
877-370-3377                    A Veritext Division                    www.veritext.com