# Exhibit 21

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*People of the State of California, et al. v. Meta Platforms, Inc., et al.* | MDL No. 3047<br><br>Case Nos. 4:22-md-03047-YGR-PHK<br>4:23-cv-05448-YGR<br><br>Judge Yvonne Gonzalez Rogers |

**EXPERT REBUTTAL REPORT OF NICK FEAMSTER, PH.D.**

April 15, 2026

Highly Confidential

layered review process balances thoroughness with the operational realities of reviewing millions of potential cases.

79.     In fact, in many respects, Meta's processes err on the side of checkpointing—and ultimately disabling accounts—even where there is uncertainty as to whether the user is actually U13; and in many cases, accounts that are checkpointed or disabled belong to users that are *over* the age of 13. Neither Mr. Estes nor Dr. Sheatsley considers this. For example:

- Human reviewers are instructed "[w]hen in doubt, checkpoint," and "[w]hen you are unsure, checkpoint the profile."[24]  As a result, a checkpoint may only reflect that the reviewer was "unsure" or "in doubt" about the user's age.

- Human reviewers are instructed to checkpoint where a specified percentage of the photos on the account (50% or 25%, depending on the period)[25] represent the same underage user, even though many accounts belonging to adults (e.g., parents or grandparents) may frequently feature pictures of the same child below the age of 13 (e.g., photos of their children or grandchildren).

- Meta automatically checkpoints any account—without any human review—when the user manually changes their birthdate from an age over 13 to an age under 13.  It does so notwithstanding that, in as many as 70% of those cases, the user is actually someone over the age of 13 (often an adult) engaged in malicious activity attempting to delete their data.[26]

- After an account is checkpointed, Meta disables the account in circumstances where the user fails to respond, the user cannot (or chooses not to) provide an ID to verify their age, or the user's ID does not match their account name.  In all those instances, the user still may be over the age of 13—i.e., individuals over the age of 13 may fail to respond; individuals over the age of 13  may not have (or may choose not to provide) an ID to verify their age; and individuals over the age of 13 who do provide an ID may have a legal name that fails to match the name on their account.  Still, Meta errs on the side of disabling the account.

---

[24] META3047MDL-046-00068729 at -68737; *see also* META3047MDL-040-00000365 at -00429 ("Whenever in doubt about a user's age, **opt for underage**.")

[25] Hartnett Dep. Ex. 6 at 5.

[26] Hartnett Dep. Ex. 6 at 22.

Highly Confidential

- Meta disables accounts that are hard linked to other accounts that fail the age checkpoint, without any further review or appeal.[27]  Yet, in some cases, two accounts that are linked together in the Account Center do not belong to the same user—for example, when a parent hard links their child's account to their own account.[28]  Still, Meta errs on the side of disabling the account.

80.     Thus, it is not the case that Meta's processes are biased in favor of keeping user accounts active. To the contrary, Meta has adopted a defense-in-depth approach that, at multiple junctures, errs on the side of checkpointing and disabling accounts that do not, in fact, belong to U13s. The fact that Meta accepts those outcomes is evidence that its processes are carefully and reasonably calibrated to balance both the enforcement objective (i.e., identifying and removing U13s) and the problem of false positives (i.e., erroneously removing eligible users above the age of 13).

81.     Dr. Sheatsley's own analysis quantifies these layers: he reports that Meta checkpointed and disabled more than one million U.S. users during the time period covered by Meta's productions. This demonstrates that Meta's layered approach identifies and removes a significant volume of potential U13 accounts.

### 1.2 Plaintiffs' Experts Ignore the Full Scope of Defense-in-Depth

82.     Both Dr. Sheatsley and Mr. Estes criticize Meta's approach to identifying and removing U13s, but neither acknowledges (let alone considers) the full scope of defense-in-depth. Neither expert compares Meta's practices to other social media platforms, nor offers any opinion that Meta's practices are deficient compared to other social media platforms.

83.     Dr. Sheatsley quantifies components of Meta's detection system but does not evaluate them as an integrated whole. He analyzes individual metrics—checkpoint counts, review times, threshold selections—without considering how these components work together to form a comprehensive detection system. Mr. Estes compares Meta to other industries (gaming platforms, online gambling) rather than to peer social media platforms, implicitly acknowledging that Meta's practices are consistent with—if not superior to—every other large social media company's age assurance practices.

84.     This is a reasonable system design for platforms of Meta's scale. No platform has achieved—nor can achieve—perfect U13 detection, and plaintiffs' experts cite no platform that has done so.

---

[27] Meta Defendants Responses to Written Deposition Questions Identified in ECF No. 2441 at 2–3.

[28] META3047MDL-020-00545686 at 31.

Highly Confidential

The undersigned hereby certifies their understanding that they owe a primary and overriding duty of candor and professional integrity to help the Court on matters within their expertise and in all submissions to, or testimony before, the Court. The undersigned further certifies that their report and opinions are not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.

April 15, 2026

Nick Feamster, Ph.D.

47