UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

---

PEOPLE OF THE STATE OF CALIFORNIA,
 et al.,

Plaintiffs,

v.

META PLATFORMS, INC., et al.,

Defendants.

Case No. 4:22-md-03047-YGR
Case No. 4:23-cv-05448-YGR

Hon. Yvonne Gonzalez Rogers

Direct Member Case of MDL No. 3047

---

**SUPPLEMENTAL STATEMENT OF THE NATURAL LAW INSTITUTE EXPLAINING THE RELATIONSHIP AMONG ITS READER'S GUIDE, PROPOSED AMICUS BRIEF, AND SUPPORTING ANALYTICAL ARCHITECTURE**

**The Foundational Stewardship Conflict Underlying the Coordinated Proceedings**

1. The Natural Law Institute respectfully submits this supplemental statement to clarify the relationship among three related instruments:

    a. the Reader's Guide;

    b. the proposed amicus brief; and

    c. the complete supporting analytical architecture.

1

2. The three documents are not cumulative submissions seeking three separate opportunities to argue the same propositions.

3. They perform three distinct functions.

4. The Reader's Guide identifies the controlling propositions in a form capable of rapid judicial use.

5. The proposed amicus brief translates those propositions into a concise decisional structure suitable for application across the coordinated proceedings.

6. The supporting architecture preserves the complete reasoning, distinctions, causal sequences, remedy structures, and institutional analysis from which the shorter instruments were distilled.

7. Together, the three instruments address a conflict that is not fully captured by the conventional labels of product liability, youth addiction, harmful content, data privacy, or platform design.

8. The underlying conflict concerns the lawful ordering of several overlapping forms of authority:

> a. parental authority over children;
>
> b. institutional authority during delegated custody;
>
> c. creator responsibility for content;
>
> d. platform authority over service operation;
>
> e. governmental authority over rules and incentives; and
>
> f. judicial authority to allocate responsibility and remedy.

9. The coordinated proceedings place these forms of authority within the same factual environment.

10. They should not therefore be treated as one undifferentiated duty of child protection.

---

## I. THE FOUNDATIONAL CONFLICT IS BETWEEN OVERLAPPING FORMS OF STEWARDSHIP

11. Universal communications systems now allow global content, commercial systems, peer networks, political movements, institutions, and offenders to reach children through a single device.

12. The resulting environment combines:

      a. information seeking;

      b. content creation;

      c. editorial selection;

      d. automated recommendation;

      e. commercial optimization;

      f. data processing;

      g. parental custody;

      h. school supervision; and

      i. public regulation.

13. Each function is legally distinct.
14. The present difficulty arises because those functions overlap operationally while their duties remain institutionally separate.
15. A child may seek content voluntarily.
16. A third party may create it.
17. A platform may rank or recommend it.
18. A parent may authorize access.
19. A school may facilitate device use.
20. Government may regulate the system incompletely.
21. The resulting injury may arise from several contributions.
22. The Court should therefore begin with stewardship and authority before assigning causation and remedy.

## II. PARENTAL STEWARDSHIP SHOULD REMAIN PRIMARY

23. Parents and guardians should remain the principal decision-makers within the family relationship.
24. That authority includes decisions concerning:

      a. devices;

      b. application access;

      c. household rules;

d. duration;

e. nighttime possession;

f. treatment;

g. intervention;

h. continued use; and

i. removal from the digital environment.

25. A child's use of an application does not transfer custody to the application provider.
26. Commercial reach does not create developmental sovereignty.
27. Influence does not create guardianship.
28. A rule assigning the general health of children to platforms because platforms are widely used would weaken the direct stewardship the litigation seeks to protect.
29. It could encourage custodians and institutions to treat visible dysfunction principally as evidence against an external provider rather than as a trigger for immediate intervention.
30. Preserving parental responsibility does not immunize platform misconduct.
31. It establishes the first lawful boundary.

---

## III. PLATFORM RESPONSIBILITY SHOULD REMAIN COMPLETE WITHIN THE PLATFORM BOUNDARY

32. Platforms should remain fully responsible for:

a. their representations;

b. data practices;

c. controls;

d. age systems;

e. account architecture;

f. recommendation objectives;

g. notification systems;

h. known exploitation pathways;

4

i. preservation and reporting duties; and

j. proved operational increments of harm.

33. Parental authorization of access does not constitute consent to:

a. deception;

b. unlawful child-data collection;

c. undisclosed profiling;

d. defective controls;

e. concealed limitations;

f. unlawful targeting; or

g. knowingly harmful operation.

34. The proper rule is therefore reciprocal.
35. Custodial responsibility and platform responsibility may coexist.
36. Neither should erase the other.

---

## IV. THE SYSTEMIC DEFECT EXTENDS BEYOND META

37. Meta is a central defendant because of its scale, historical position, reach, and internal architecture.
38. The broader complaints, however, describe an industry environment involving multiple services, recommendation systems, devices, application stores, and forms of digital interaction.
39. Comparable structural issues may arise across:

a. Meta services;

b. TikTok;

c. YouTube;

d. Snapchat;

e. Discord;

f. X;

g. Reddit;

h. gaming systems;

i. streaming services;

j. operating systems; and

k. application stores.

40. The mechanisms are not identical.

41. TikTok, for example, may present a materially different and potentially more acute operational structure through rapid adaptive recommendation, continuous short-form delivery, and low-friction repetition.

42. The Court should therefore distinguish:

a. defendant-specific misconduct suitable for adjudication; and

b. industry-wide incentives requiring prospective common standards.

43. A remedy directed to one defendant may shift users, attention, data, and advertising revenue while leaving the underlying market incentive intact.

44. That result would constitute displacement rather than functional correction.

---

## V. THE LAW SHOULD NOT CREATE A STATE-PLATFORM CUSTODIAL SYSTEM

45. A generalized duty to protect children can expand by degrees.

46. It may begin with safety tools.

47. It may then require monitoring, inference, prediction, intervention, restriction, reporting, and increasingly complete child-data collection.

48. Safety can thereby become surveillance.

49. Surveillance can become intervention.

50. Intervention can become government-directed corporate custodianship.

51. That development would weaken:

a. parental primacy;

b. family privacy;

c. lawful expression;

6

       d. institutional responsibility;

       e. data minimization; and

       f. clear boundaries between public and private authority.

52. The Court should preserve a structure in which government governs the market and platforms govern their systems without either becoming the ordinary substitute parent.

---

## VI. THE THREE DOCUMENTS PROVIDE THREE LEVELS OF JUDICIAL USE

53. The Reader's Guide provides the controlling propositions.
54. The proposed amicus provides the compressed legal architecture.
55. The complete supporting analysis provides the full derivation and preserves the broader explanatory record.
56. The governing hierarchy is:

       a. Reader's Guide — immediate orientation;

       b. proposed amicus brief — adjudicative application;

       c. full architecture — complete analytical support.

57. This structure permits the Court to use the concise documents without losing access to the deeper reasoning from which they were derived.

---

## CONCLUSION

58. The coordinated proceedings reveal a foundational conflict among family authority, platform operation, content creation, institutional custody, and governmental regulation.
59. The lawful resolution begins with restored stewardship.
60. Parents govern the child.
61. Platforms govern their systems.
62. Creators answer for their content and conduct.
63. Institutions answer for delegated environments.
64. Government governs rules and incentives.
65. Courts allocate proved responsibility.
66. Legislation corrects market-wide defects.

7

67. Amicus respectfully submits that the Reader's Guide, proposed amicus brief, and complete analytical architecture should be understood as complementary instruments directed toward that single settlement.

---

Respectfully submitted,

**NATURAL LAW INSTITUTE**
By: /s/ Brandon Michael Hayes
Brandon Michael Hayes
President, Natural Law Institute
159 Indian Hill Street
West Newbury, Massachusetts 01985
(617) 438-2049
brandon@hayeshaus.com

Proposed Amicus Curiae, Self-Represented

Dated: July 13, 2026

8