**First Claim: Violation of the Children's Online Privacy Protection Act**
Instruction 1

The States Attorneys General[1] allege that Meta violated the Children's Online Privacy Protection Act, which is known as COPPA. Facebook and Instagram are "websites or online services."[2] Meta has been the operator of Facebook at all times relevant to this case.[3] Meta has also been the operator of Instagram since at least August 2012.[4] For the State Attorneys General to prevail on their claim under COPPA, the State Attorneys General must prove the following elements by a preponderance of the evidence You will be asked to decide whether the States have proven either of these questions by a preponderance of the evidence:

1. Whether Meta's website or online service, or a portion thereof, was
   a. directed to children under 13.[5]; or
   b. 2. Whether Meta had actual knowledge that it was collecting or maintaining personal information from a child under 13.[6]; and
2. Meta collected, used, maintained, or disclosed personal information from a child without providing all of the protections required by COPPA.[7] [8]

In answering these questions, you should not consider any conduct occurring before October 24, 2019.[9]

---

[1] Because the States themselves are party to this action, Meta objects to inclusion of the phrase "State Attorneys General."

[2] ECF 236 (2628).

[3] *Id.*

[4] ECF 360 (3108) at ¶ 4(b).

[5] 15 U.S.C. § 6501(10) (defining "website or online service that is directed to children").

[6] 15 U.S.C. § 6502(a)(1) ("It is unlawful for . . . any operator that has actual knowledge that it is collecting personal information from a child, to collect personal information from a child in a manner that violates the regulations prescribed under subsection (b).").

[7] *See* 15 U.S.C. § 6502(a)(1); 16 C.F.R. §§ 312.3, 312.10.

[8] The purpose of the advisory jury is not to determine whether the States "prevail" on their COPPA claim. It is to provide guidance to the Court on discrete outstanding factual questions. Consistent with the nature of the advisory jury, the instructions should pose "questions" rather than instruct on "elements." And the only questions the advisory jury must answer are related to child directedness and actual knowledge, not COPPA protections.

[9] Computed pursuant to 28 U.S.C. § 1658, providing for a four-year statute of limitations running from October 24, 2023, the filing date of the original complaint. The *nullum tempus occurrit regi* doctrine "does not—and, under the Supremacy Clause, could not—insulate the State from statutes of limitations applicable to federal laws." *Alaska v. Express Scripts, Inc.*, 774 F. Supp.

In this case, the Court has determined that the State Attorneys General have proven that Meta collects personal information as defined by COPPA from all its users, including any child users, and did not provide the protections required by COPPA.[10] The Court found that Meta has never provided the following protections required by COPPA:

    i)        provide notice to parents of what information it collects from children;

    ii)       seek or obtain parental consent to the collection, use, or disclosure of such information; or

    iii)     provide parents with a means of reviewing the personal data collected, requesting deletion of the data, or refusing further data collection.[11]

This means that where the State Attorneys General prove the first element above, they have also proved the second element.

Accordingly, you only need to determine whether the State Attorneys General have proven the first element by a preponderance of the evidence: that Facebook and/or Instagram, or portions of Facebook and/or Instagram, were directed to children, or that Meta had actual knowledge that it was collecting or maintaining personal information from children on Facebook and/or Instagram. If you determine that Facebook and/or Instagram or portions of Facebook and/or Instagram were directed to children, or that Meta had actual knowledge that it was collecting or maintaining personal information from children, you have determined that the State Attorneys General should prevail on the First Claim: Violations of the Children's Online Privacy Protection Act.[12]

**Definitions**

I will now explain the meaning of these terms in more detail for you.

***Child***

"Child" in this context means an individual under the age of 13. "Children" means people under the age of 13.[13]

---

3d 1150, 1162 (D. Alaska 2025); *see also United States v. California*, 297 U.S. 175, 186 (1936) (the "canon of construction that a sovereign is presumptively not intended to be bound by its own statute unless named in it" does not extend to states evading "provisions of an act of Congress").

[10] ECF 440 (3214) at 29, 37-38.

[11] *See* 16 CFR §§ 312.4- 312.6.

[12] To perform its advice-giving function—which is to resolve factual disputes concerning child directedness and actual knowledge—the advisory jury need not be instructed on the Court's decisions regarding COPPA protections.  Including this unnecessary language prejudices Meta by suggesting that the Court has already found statutory violations.

[13] 15 U.S.C. § 6501(1) (defining "child").

2

***Directed to Children***

"Directed to children" means the website or online service was targeted to children.[14]  To determine whether an online service is "directed to children," you must consider whether the website or online service is (1) a "general audience" service, (2) a "mixed audience" service, or (3) a service whose "primary audience" is children under 13. A website or online service as a whole can be directed to children under 13, or portions of the website or online service can be directed to children under 13.  You cannot decide that a portion of an online service is directed to children under 13 unless you find that there is a distinct children's portion or area of the service.[15]  A website or online service can be directed to children even if it does not target children as its primary audience.[16]

- (1) A "general audience" service is a website or online service that does not specifically target children under 13.  A "general audience" service is **not** considered "directed to children."[17]

- (2) A "mixed audience" service is an online service that targets children under 13 but that does not target children under 13 as its primary audience, provided that it does not collect personal information before verifying the age of its users.[18]  A "mixed audience" service

---

[14] The States misleadingly suggest that "target[ing]" is dispositive of the child directedness inquiry.  But this suggestion elides key concepts, such as the "mixed audience" exception.  Meta submits that its tripartite framing—which uses common labels such as "general audience," "mixed audience," and "targeted to children"—is more clarifying for the advisory jury than the States' proposal.

[15] Children's Online Privacy Protection Rule, 64 Fed. Reg. 59888, 59893 (Nov. 3, 1999) ("[I]f a general audience site has a distinct children's 'portion' or 'area,' then the operator would be required to provide the protections of the Rule for visitors to that portion of the site."); 16 C.F.R. § 312.4(d) ("An operator of a general audience website or online service that has a separate children's area must post a link to a notice of its information practices with regard to children on the home or landing page or screen of the children's area.").

[16] Meta objects to this sentence as a misstatement of the law.  Under the "mixed audience" exception, a website or online service that does not target children as its primary audience is not deemed "directed to children."  16 C.F.R. § 312.2.  Likewise, a "general audience" site that has incidental child-related content would not be "directed to children."

[17] Under the COPPA Rule, "[a]n operator of a general audience website or online service" must provide notice of its information practices only when it "has a separate children's area."  16 C.F.R. § 312.4(d).  From this provision, it necessarily follows that a "general audience website or online service" without such a "separate children's area" is not "directed to children" and therefore is not subject to the COPPA requirements.

[18] 16 C.F.R. § 312.2 (defining "[m]ixed audience website or online service").

3

is **not** considered directed to children under 13 with regard to any visitor not identified as under 13.[19]

- (3) An online service that is targeted to children under 13 as its primary audience is considered "directed to children."[20]

To determine whether a website or online service, or a portion of a website or online service, is directed to targeted at[21] children under 13, you should look to the totality of the circumstances, including,[22] but not limited to, its:
- subject matter;
- visual content;
- use of animated characters or child-oriented activities or incentives;
- music or other audio content;
- age of models;
- presence of child celebrities or celebrities who appeal to children;
- language or other characteristics of the website or online service;
- whether advertising promoting or appearing on the website or online service is directed to children;
- competent and reliable empirical evidence regarding[23] audience composition; and
- evidence regarding[24] intended audience.[25]

---

[19] *Id.* ("A mixed audience website or online service shall not be deemed directed to children with regard to any visitor not identified as under 13.").

[20] *Id.* (defining "website or online service that is directed to children"); *see also* 15 U.S.C. § 6501(10) (defining "website or online service that is directed to children").

[21] Whether a website or online service is "directed to children" turns on whether the website or online service is targeted at children under 13 as its *primary audience*. The factors listed at 16 CFR § 312.2 relate to the preliminary "targeting" question and do not answer the ultimate question of child-directedness. Meta's proposal makes this point clear.

[22] *See, e.g.,* Children's Online Privacy Protection Rule, 90 Fed. Reg. 16918, 16937 (April 22, 2025) ("[T]he Commission reiterates that the inquiry in determining child-directness requires consideration of the totality of circumstances."); Children's Online Privacy Protection Rule, 78 Fed. Reg. 3972, 3984 (Jan. 17, 2024) (describing "the Rule's totality of the circumstances standard" and the 2013 amendments "[t]o make clear that [the FTC] will look to the totality of the circumstances to determine whether a site or service is directed to children…"). The States AGs note that the COPPA Rule merely identifies a list of factors that the FTC considers when assessing whether websites or online services are directed to children. *See* 16 C.F.R § 312.2.

[23] This modifying language comes from the COPPA Rule.

[24] This modifying language comes from the COPPA Rule.

[25] 16 CFR § 312.2 (listing the factors the Commission will consider in determining child directedness).

4

Third-party content hosted by a website or online service can be considered when determining whether the website or online service, or a portion thereof, is directed to children under 13 under COPPA.[26][27]

If a website or online service is directed to children but does not target children as its primary audience, then it may not collect personal information from visitors unless it first collects age information from visitors in a neutral manner that does not default to a set age of 13 or older or encourage visitors to falsify age information. If the website or online service collects age information in such a neutral manner for all users prior to collecting personal information, it shall not be deemed directed to children, but it must still comply with COPPA's required protections with regard to those visitors who identify themselves as under 13 years old, as well as any other visitors for whom the operator has actual knowledge are under 13 years old.[28][29]

### *Actual Knowledge*

"Actual knowledge" in this context means that an operator of a website or online service was aware, understood, or perceived that it was collecting or maintaining personal information from a specific child.[30][31]  You cannot find that Meta had "actual knowledge" it was collecting or

---

[26] *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 878 (N.D. Cal. 2024), appeal dismissed sub nom. Fla. Off. of Att'y Gen. v. Meta Platforms, Inc., No. 24-7019, 2024 WL 5443167 (9th Cir. Dec. 16, 2024), and motion to certify appeal denied, No. 4:22-MD-3047-YGR, 2025 WL 1182578 (N.D. Cal. Mar. 11, 2025).

[27] Meta maintains its position that third-party content cannot be considered in determining whether an online service is directed to children.  But Meta recognizes that the Court has ruled on this issue, and if the Court adheres to its position, Meta does not object to the language used above.

[28] 16 CFR § 312.2 (definition of "Mixed audience website or online service"); Children's Online Privacy Protection Rule, 90 Fed. Reg. 16918, 16919-20 (Apr. 22, 2025); *Complying with COPPA: Frequently Asked Questions*, FEDERAL TRADE COMMISSION, https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions (last visited Sept. 2, 2025).

[29] Meta objects to this description of the "mixed audience" exception as unduly confusing. Meta's proposal above enables the advisory jury to clearly distinguish among general audience services, mixed audience services, and services directed to children.

[30] *U.S. ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 751 (2023) (describing "actual knowledge" as involving an awareness of something, and approvingly quoting Black's Law Dictionary definitions "'to understand,' or 'the perception of the truth'").

[31] Meta has added the word "specific" to make clear, as COPPA requires, that "actual knowledge" is keyed to specific individuals.  The requirement that an operator must have "actual knowledge" of the age of a specific child is established by the notice provisions of the COPPA

maintaining personal information from specific children under 13 unless you find that it had direct, clear knowledge it was doing so.[32]  Actual knowledge can be inferred based on the surrounding circumstances.[33]  Actual knowledge does not require that an operator have absolute certainty that it collected or maintained personal information from a child.[34][35]  However,

---

Rule, which require operators to "make reasonable efforts to obtain verifiable parental consent" that are "reasonably calculated, in light of available technology, *to ensure that the person providing consent is the child's parent*."  16 C.F.R. § 312.5(b)(1) (emphasis added).  And operators must give "*that parent*" the ability to prevent future "collection of personal information *from that child*," and must "[e]nsure that the requestor is a parent of *that child*."  16 C.F.R. § 312.6(a) (emphases added).  The same point is reflected in the COPPA statute, which applies to an operator "that has actual knowledge that it is collecting personal information from *a child*," and permits the operator "to terminate service provided to *a child whose parent* has refused" to permit the collection or maintenance of "personal information *from that child*."  15 U.S.C. §§ 6502(a)(1), 6502(b)(3) (emphases added).  Those provisions could only apply if the operator has actual knowledge of the age of a specific child.

[32] *New Mexico ex rel. Balderas v. Tiny Lab Prods.*, 457 F. Supp. 3d 1103, 1113 (D.N.M. 2020), *on reconsideration*, 516 F. Supp. 3d 1293 (D.N.M. 2021) ("Further, the definition of 'actual knowledge,' which is 'direct and clear knowledge,' specifically distinguishes it from 'constructive knowledge,' which is 'knowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person.'" (cleaned up)); *SuperValu Inc.*, 598 U.S. at 751 ("[T]he term 'actual knowledge' refers to whether a person is 'aware of' information." (citing *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 184 (2020))).

[33] ECF 440 (3214) at 29; *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178, 187-88 (2022); *Intel Corp. Inv. Policy Comm. v. Sulyma*, 589 U.S. 178, 189 (2020).

[34] *See U.S. ex rel. Schutte v. SuperValu, Inc.,* 598 U.S. 739, 751 (2023) ("'A defendant can have 'actual knowledge' that a condition is material without the Government expressly calling it a condition of payment.'") (quoting *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 191 (2016)); *Swanger v. Warrior Run School Dist.*, 346 F.Supp.3d 689, 705 (M.D. Penn. 2018) ("actual knowledge does not require absolute certainty that harassment has occurred"); *Rockwell Intern. Corp. v. SDL, Inc.*, 103 F.Supp.2d 1192, 1197 (N.D. Cal. 2000) (explaining that showing actual knowledge of infringement requires "more than a mere suspicion but less than absolute assurance"); *In re Robbins*, 91 B.R. 879, 886 (W.D. Mo. 1988) (actual knowledge "is not necessarily absolute certainty"); *U.S. v. Jewell*, 532 F.2d 697, 706 n.6 (9th Cir. 1976) (Kennedy, J., dissenting) ("The use of the term 'actual knowledge' in this manner is misleading in suggesting the possibility of achieving a state of total certainty, and that only such knowledge is 'actual.' In fact, we commonly act on less than complete information and in this world may never know one-hundred-percent certainty.").

[35] Meta objects to this language as unnecessary and confusing in light of the prior sentences articulating the "actual knowledge" requirement.  However, if this sentence is included in the instructions, Meta has proposed the immediately following sentence to provide the appropriate balance in the articulation of this standard.

6

evidence that the operator believes or suspects, as a general matter, that there are children under 13 who use its services is not sufficient to establish actual knowledge.[36]

---

[36] *See Balderas*, 457 F. Supp. 3d at 1112–13; *Malhotra v. Steinberg*, 770 F.3d 853, 860 (9th Cir. 2014) (reasoning that "generalized suspicion" does not constitute "knowledge").

Actual knowledge may also be proved by showing that an operator acted with willful blindness.[37][38]  "Willful blindness" means taking deliberate action to avoid learning a fact.[39]  An operator of a website or online service acts with willful blindness when it intentionally shields itself from clear or obvious evidence, or avoids confirming a fact despite being aware of a high probability that the fact exists.[40]  If an operator acted with willful blindness, you may treat it as having actual knowledge of the fact.[41]  A finding of willful blindness requires a showing that (1) Meta believed there was a high probability that a specific child was under 13 and (2) Meta took deliberate actions to avoid learning the age of that child.[42]  However, evidence that Meta acted with a lack of due care or recklessly disregarded a substantial and unreasonable risk that a specific child was under 13 years old is insufficient to establish that Meta was willfully blind with respect to that child's age.[43]

Unless it has actual knowledge of a child's age, an operator of a website or online service that screens its users for their age may rely on the age information entered by its users, even if that age information is not accurate.

---

[37] ECF 440 (3214) at 29; Children's Online Privacy Protection Rule, 89 Fed. Reg. 2034, 2037 n.46 (proposed Jan. 11, 2024); *Unicolors*, 595 U.S. at 187; *Intel Corp.*, 589 U.S. at 190.

[38] Meta maintains its position that COPPA's "actual knowledge" standard does not encompass "willful blindness" or "willful disregard."  *See* Meta's Objection to Instruction (ECF 459-1 (3241-1) at 20–21.

[39] ECF 440 (3214) at 29; *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011).

[40] *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) ("courts applying the doctrine of willful blindness hold that defendants cannot escape the reach of these statutes by deliberately shielding themselves from clear evidence of critical facts that are strongly suggested by the circumstances."); *id.* ("persons who know enough to blind themselves to direct proof of critical facts in effect have actual knowledge of those facts") (citing *United States v. Jewell,* 532 F.2d 697, 700 (9th Cir. 1976) (en banc)); *id.* at 769 ("all [Circuit courts] appear to agree on two basic requirements: (1) The defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact.").

[41] ECF 440 (3214) at 29; *Unicolors*, 595 U.S. at 187  ("We have recognized in civil cases that willful blindness may support a finding of actual knowledge."); *Intel*, 589 U.S. at 190 ("evidence of 'willful blindness' supports a finding of 'actual knowledge'"); *Glob.-Tech*, 563 U.S. at 766 ("persons who know enough to blind themselves to direct proof of critical facts in effect have actual knowledge of those facts"); *see* Children's Online Privacy Protection Rule, 89 Fed. Reg. 2034, 2037 n.46 (proposed Jan. 11, 2024) (citing *Glob.-Tech Appliances*' discussion of "willful blindness" for proposition that "[t]he concept of actual knowledge includes willful disregard").

[42] Meta proposes to use the definition of "willful blindness" adopted by the Court—namely, taking "deliberate action to avoid learning a fact."  ECF 440 (3214) at 29.  The States' proposed language—"intentionally shields" from "obvious evidence" or "avoids confirming a fact"— misstates the law because it omits the requirement that "the defendant must take deliberate action

Whether an operator of a website or service has actual knowledge that it collected or maintained personal information of a child is fact specific and can vary based on the case.[44] Some examples of facts that would show that an operator has actual knowledge include, but are not limited to, the following:

- Where an operator of a website or service learns of a child's age or grade from a concerned parent.[45]
- Where a child user enters age information indicating they are under 13.[46]
- Where a child announces their age in a post on a website or online service and the operator of that website or service monitors user posts.[47]
- Where a child announces their age in a post on a website or online service and a responsible member of the operator's organization sees the post or the operator is made aware of the post by someone else.[48]
- Where an operator is willfully blind to the fact that a child is under the age of 13.[49][50]

*Protections Required by COPPA*

---

to avoid learning of that fact." *Global-Tech*, 563 U.S. at 769. The States' formulation would sweep in reckless or negligent conduct, which the Supreme Court has made clear cannot rise to the level of "willful blindness." *Id*. at 771.

[43] *Global-Tech Appliances, Inc.*, 563 U.S. at 769; *see also United States v. Heredia*, 483 F.3d 913, 917 (9th Cir. 2007); *United States v. One 1973 Rolls Royce*, 43 F.3d 794, 809 n.13 (3d Cir. 1994).

[44] Children's Online Privacy Protection Rule, 78 Fed. Reg. 3972, 3978 (Jan. 17, 2013).

[45] Children's Online Privacy Protection Rule, 64 Fed. Reg. 59888, 59892 (Nov. 3, 1999); *Complying with COPPA: Frequently Asked Questions*, FEDERAL TRADE COMMISSION, https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions (last visited Sept. 2, 2025), at H.1.

[46] *Complying with COPPA: Frequently Asked Questions*, FEDERAL TRADE COMMISSION, https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions (last visited Sept. 2, 2025), at H.3.

[47] *Id.*, at H.6.

[48] *Id.*

[49] Children's Online Privacy Protection Rule, 89 Fed. Reg. 2034, 2037 n.46 (proposed Jan. 11, 2024).

[50] This list derives largely from the FTC's FAQs page, which this Court has held is not law. *See In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d at 877. Moreover, even if it were permissible to rely on the COPPA FAQs, the States' proposed language would still be inappropriate since the FAQs themselves provide only that the listed events "*may*" create actual knowledge, not that they "*would*" establish such knowledge.

9

In addition to the protections this Court has already found Meta did not provide, COPPA requires additional protections for any operator of a website or online service that is directed to children or has actual knowledge that it is collecting or maintaining the personal information of a child. These additional protections are:

- Not condition a child's participation in a game, the offering of a prize, or another activity on the child disclosing more personal information than is reasonably necessary to participate in such activity.[51]
- Establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of personal information collected from children.[52]
- Not retain personal information collected from children longer than is reasonably necessary to fulfill the purpose for which the information was collected.[53]

If you find that Meta operated a website or online service that was directed to children or that Meta had actual knowledge that it was collecting or maintaining the personal information of any children, then Meta was required to collect, use, maintain, and disclose the personal information of those children in a way that was consistent with these protections. Any failure to do so was a violation of COPPA.[54]

### *Personal Information*

"Personal information" means individually identifiable information about an individual collected online, including:

- first and last names;
- a home or other physical address, including street name and name of a city or town;
- online contact information, such as an email address or other similar identifier that permits direct contact with a person online;
- a screen name or username that functions in the same manner as online contact information;
- a telephone number;
- a Social Security number.

---

[51] 16 C.F.R. §§312.3(d), 312.7.

[52] 16 C.F.R. §§312.3(e), 312.8.

[53] 16 C.F.R. § 312.10.

[54] To perform its advice-giving function—which is to resolve factual disputes concerning child directedness and actual knowledge—the advisory jury need not be instructed on the Court's decisions regarding COPPA protections. Including this unnecessary language prejudices Meta by suggesting that the Court has already found statutory violations.

10

- a persistent identifier that can be used to recognize a user over time and across different websites or online services, including identifiers in cookies, an IP address, a processor or device serial number, or a unique device identifier;
- a photograph, video, or audio file where such file contains a child's image or voice;
- geolocation information sufficient to identify street name and name of a city or town; and
- information concerning the child or the parents of that child that the operator collects online from the child and combines with an identifier described in this definition.[55]

Information is not protected "personal information" for purposes of these instructions if the website or service collects that information to:
- Maintain or analyze the functioning of the website or online service; or
- Protect the security or integrity of the user, website, or online service.

If an operator of a website or online service obtains actual knowledge that it is collecting or maintaining personal information from an individual who is under age 13, the operator cannot collect any further personal information from that individual unless it complies with the notice provisions of COPPA.[56]

If an operator of a website or online service collects personal information from an individual without actual knowledge that the individual was under the age of 13, and later obtains actual knowledge that the individual was under the age of 13, the operator must delete such personal information using reasonable measures to protect against unauthorized access to, or use of, the information in connection with its deletion.[57]

---

[55] 16 C.F.R. § 312.2.

[56] 16 C.F.R. § 312.3.

[57] 16 C.F.R. § 312.10.

11