UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047<br><br>Case Nos.:  4:22-md-03047-YGR-PHK<br><br>**JOINT FURTHER DISCOVERY LETTER BRIEF REGARDING PLAINTIFFS' MOTION TO COMPEL METADATA PRODUCTION**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |
| This Filing Relates to:<br><br>*All Actions* | |

Dear Judge Kang:

Pursuant to the Court's Order of August 5, 2026 (ECF No. 3338), the MDL State Attorneys General ("State AGs") and Defendant Meta Platforms, Inc. respectfully submit this joint further discovery letter brief regarding the State AGs' motion to compel metadata production.


Dated: August 7, 2026

Respectfully submitted,

**COVINGTON & BURLING LLP**

*/s/ Ashley M. Simonsen*
Ashley M. Simonsen (State Bar. No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: + 1 (424) 332-4800
Email: asimonsen@cov.com

Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: + 1 (212) 841-1262
Facsimile: + 1 (202) 662-6291
Email: pschmidt@cov.com

*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.*

**ROB BONTA**
Attorney General
State of California

 */s/ Megan O'Neill*
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Emily Kalanithi (SBN 256972)
Supervising Deputy Attorneys General
Nayha Arora (CA SBN 350467)
David Beglin (CA SBN 356401)
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer (CA SBN 336428)
Marissa Roy (CA SBN 318773)
Brendan Ruddy (CA SBN 297896)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Joshua.OlszewskiJubelirer@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*

**PHILIP J. WEISER**
Attorney General
State of Colorado
 */s/ Shannon Stevenson*
Krista Batchelder, CO Reg. No. 45066, *pro hac vice*
Deputy Solicitor General
Shannon Stevenson, CO Reg. No. 35542, *pro hac vice*
Solicitor General
Elizabeth Orem, CO Reg. No. 58309, *pro hac vice*
Assistant Attorney General
Colorado Department of Law

2

Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6651
krista.batchelder@coag.gov
Shannon.stevenson@coag.gov
Elizabeth.orem@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel. Philip J. Weiser, Attorney General*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

*/s/ Philip Heleringer*
J. Christian Lewis (KY Bar No. 87109),
*Pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*Pro hac vice*
Zachary Richards (KY Bar No. 99209),
*Pro hac vice*
Daniel I. Keiser (KY Bar No. 100264),
*Pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*Pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV
ZACH.RICHARDS@KY.GOV
DANIEL.KEISER@KY.GOV
MATTHEW.COCANOUGHER@KY.GOV
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

**MATTHEW J. PLATKIN**
Attorney General
State of New Jersey

*/s/ Kashif T. Chand*

3

Kashif T. Chand (NJ Bar No. 016752008),
*Pro hac vice*
Attorney General
Thomas Huynh (NJ Bar No. 200942017),
*Pro hac vice*
Assistant Section Chief, Deputy Attorney General
Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*Pro hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiffs New Jersey Attorney General and the New Jersey Division of Consumer Affairs Matthew J. Platkin, Attorney General for the State of New Jersey, and Elizabeth Harris, Acting Director of the New Jersey Division of Consumer Affairs*

4

**Meta's Position:** Although Meta does not object to the AGs' request for a ruling on their demand for new document metadata, as this Court has already observed, an email to Court staff is not an appropriate path for relief. Plaintiffs raised this very issue at the most recent pretrial conference, *see* ECF 470 (3253) at 13:10–14, and, after receiving an unfavorable response from Judge Gonzalez Rogers, have now attempted to reraise the matter through informal channels in violation of the Court's Standing Order. The AGs' argument at the pre-trial conference, however, exposed the fundamental gap between the relief the AGs seek—lists of Meta employees who could theoretically have opened documents—and the AGs' claimed need to identify witnesses with actual knowledge of those potential exhibits. As Judge Gonzalez Rogers stated on the record, if a document is shown to a witness "who can say nothing about it, I will not admit it . . . ." 7/17/26 CMC Hr'g Tr. at 62:24–25. The AGs cannot establish they are entitled to this relief for any number of exhibits, nor can they overcome their waiver of the right to seek it. ECF 3023 at 7–10.

At the threshold, as Meta previously explained, ECF 3023 at 7–8, the AGs waived any right to relief they could have claimed. The Sedona Conference, *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, 196 (2018) ("Having not raised the issue earlier, [a] party waive[s] the right to seek metadata" if it moves for such data "[s]hortly before trial" absent timely objection); *accord Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (if the party seeking to be relieved from discovery deadlines for good cause "was not diligent, the inquiry should end"). The AGs were fully aware of the documents at issue for well over a year, yet chose not to seek timely relief. *See* L.R. 37-3 (discovery motion deadline set at one week following the close of fact discovery); *Eagle Eyes Traffic Industry USA Holding LLC v. E-Go Bike LLC*, 2023 WL 6629802, at *1 (Oct. 10, 2023) ("Untimely motions related to fact discovery are not permitted under Local Rule 37-3."). For the same reasons Meta previously articulated, and as the AGs essentially conceded with their initial request to modify the ESI Protocol, nothing in the existing, negotiated Protocol supports the AGs' demands, *see* ECF 3023 at 8. On the contrary, their requested relief would require modification of that Protocol on the eve of trial.

As discussed at the final pretrial conference, even if the AGs were to receive this wide-ranging metadata, it could not plausibly render any document admissible. The AGs demand a catalog of employees who had the ability to access each exhibit. Given the extraordinary breadth of this request, they effectively demand, in many instances, lists of dozens, if not hundreds, of employees staffing entire teams, pillars, and platforms at Meta—a list too sweeping to provide any real benefit to the AGs in establishing foundation at trial. Even where fewer individuals had access, since nothing about authorization to open a document substantiates anything resembling personal knowledge, the requested metadata would not give the AGs the information needed to lay the foundation to admit documents through a witness at trial. As Judge Gonzalez Rogers's comments at the last pretrial conference made clear, a Meta employee with mere access to a file, who knows nothing of the document, cannot get that document into evidence. *See* 7/17/26 CMC Hr'g Tr. at 58:20–22 ("THE COURT: If someone looks at [a document] and says, 'I don't know what this is. I've never seen it. I have nothing to say about it,' that's it. It's done."); *id.* at 62:24–63:1 ("THE COURT: But if you provide that business record to five people who can say nothing about it, I will not admit it because it has no probative value . . . ."). Accordingly, the AGs cannot show good cause, as they have failed to show any "likelihood that the discovery will lead to relevant evidence." *U.S. ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1526 (9th Cir. 1995), *vacated on other grounds*, 520 U.S. 939, 117 S. Ct. 1871, 138 L.Ed.2d 135 (1997).

Moreover, despite their insistence upon the necessity of this wholesale access data, only 49 of the 285 documents on the AGs' Priority Exhibit List, ECF 497.1 (3306.1), identify "Meta Platforms" as the sole custodian. Many of these 49 plainly bear the names of Meta employees on their face, including employee work chats and email threads. *See, e.g., id.* at 10 (Exs. 1782, 1755), 14 (Ex. 1253), 18 (Ex. 598), 19 (Ex. 417), 20 (Ex. 308). The AGs have had ample information and opportunity to identify deponents with personal knowledge of these exhibits—some of the 49 even contain names of Meta employees *in their exhibit descriptions*. The AGs' choice not to depose

5

those named individuals, or else to omit them from their trial witness list, does not now entitle the AGs to fish for far-fetched sponsors by demanding Meta provide any amount of irrelevant metadata outside the ESI Protocol. If the AGs truly wanted additional information about their most important exhibits, they bore the burden of pursuing *appropriate* relief in a timely manner.

Finally, even if the metadata the AGs seek would permit the admission into evidence of any documents at issue—which it would not—the Parties' ongoing conferrals on procedures to resolve disputes concerning authenticity (which are not implicated here) and admissibility provide another avenue for the AGs to pursue their ultimate goal of admitting exhibits at trial. For example, Meta has agreed to make good-faith efforts to stipulate authenticity and admissibility wherever appropriate, and the Parties are in the final stages of negotiating a trial protocol that establishes a process for advance notice of objections during trial. Meta's proposed protocol will inform the AGs as to whether Meta intends to object to a witness's personal knowledge of an internal company document *before* that witness takes the stand, enabling the Parties to confer accordingly and narrow disputes. Meta has additionally committed to providing admissibility objections to all of the States' priority documents before the start of trial, with one tranche of objections being exchanged today, August 7.

**Joint Plaintiffs' Position:** As trial fast approaches, Meta seeks to manipulate the discovery process so that it can prevent the admission of specific material documents in this case. Before this Court, Meta refuses to provide—pursuant to the ESI protocol—metadata reflecting who had access to priority trial exhibits. At the same time, Meta has refused to stipulate to the documents' admissibility and argued that Plaintiffs cannot establish admissibility based on witness personal knowledge. Meta does not even attempt to argue it would be a burden to produce this metadata. Instead, Meta contends that fact discovery has "closed," even though Meta has produced self-serving discovery of, among other things, different custodian metadata, as recently as last week. On this basis—or, separately, in the interest of justice—Meta must produce the necessary metadata.

***Meta is Improperly Withholding Metadata to Prevent Plaintiffs from Laying Foundation to Admit Documents.*** Meta asserts it does not have to produce custodian metadata because the documents at issue are "non-custodial." Yet Meta knows and will not disclose the collaborators and viewers of each document. At the same time, Meta reserves the right to object to those documents' admissibility based on lack of foundation and personal knowledge—which cannot be established without a human custodian. Meta maintains that the metadata it provided, listing "Meta Platforms" as custodian and often providing little to no reference to any human beings, is all the ESI protocol required for non-custodial documents.

To argue the documents are non-custodial, Meta proposes an unsupported and overly narrow definition of "custodian." In doing so, Meta ignores the common understanding in case law that individuals with access to edit and view Google Drive documents are custodians of those documents. *See, e.g.*, *IQVIA. Inc. v. Veeva Systems, Inc.*, 2019 WL 3069203, *1–5 (Dist. N.J. 2019) (discussing production of Google Drive documents that "any custodian *authored, edited, reviewed, accessed, or otherwise had access to . . .*" (emphasis added)). Whether an individual had access to edit and view a document is highly probative evidence of personal knowledge about that document and its topics. To deprive a party of adequate custodian metadata also deprives that party of a reliable ability to admit the evidence through witness' personal knowledge at trial.

On admissibility, Meta suggests that Plaintiffs can rely on the contents of *some* of the documents to ascertain their "authors," but this does not remedy the problem. First, it ignores the other priority exhibits that facially lack association with any person. Second, the "author" may have less or different knowledge of the documents than others who edited or reviewed the document.

In effect, Meta's definition of "custodian" allows it to game the discovery process by withholding information necessary to establish the admissibility of their exhibits. As a result, to admit this critical evidence at trial, Plaintiffs are left to rely on a combination of guesswork and the subjective,

fallible memories of witnesses. This is an untenable approach to the admission of hundreds of critical documents, some of which are more than ten years old.

***There is No Burden on Meta.*** Meta's position is especially absurd given the near certainty that Meta has already downloaded the custodian metadata and the low number of documents for which metadata is requested. Google's policies state that "Collaborator" and "Viewer" metadata is automatically included in each file exported from Google Drive.[1] Even though Meta agreed that all produced documents would include a "[l]ist of all custodians" irrespective of whether that information was auto-populated, it is very likely that Google automatically provided Meta with that information. (*See* ECF 690:21–22). There is no reason to think Google's policy did not apply to Meta's Google Drive exports. Meta has never denied Plaintiffs' repeated contentions that it possesses the metadata at issue, nor has it argued production would be unduly burdensome. Indeed, Plaintiffs' request is non-burdensome and *de minimis*. Meta either already has the custodian metadata or can easily access it. Further, given Plaintiffs' urgent need for the custodian metadata and the limited time before trial, Plaintiffs have narrowed the request to ask for the custodian metadata associated with only 300 trial-critical documents (about 0.1% of the documents for which Meta disclosed "Meta Platforms" as the custodian).

***Meta Cannot Rely on the "Close" of Discovery to Cure its Discovery Failures.*** The ESI protocol required disclosure of custodian metadata. When the required metadata was omitted, Plaintiffs made a timely demand for it in a December 2024 letter to Meta. Meta's primary argument is that it should not have to now produce the metadata because fact discovery has "closed." But Plaintiffs' request for the omitted metadata, to bring already-disclosed documents into compliance with the ESI protocol, is (at most) a request for discovery "clean up." And Meta concedes it has continued to make "clean-up" productions after the close of fact discovery because it believes such productions are excepted from the discovery cut off. In reality, Meta's timeliness argument is simply another attempt to have their cake and eat it too.

Illustrating this point, in the last three weeks alone, there have been four supplemental depositions of late-disclosed Meta witnesses and Meta has supplemented its interrogatory responses to make changes regarding data Plaintiffs requested almost two years ago. Meta issued six letters attempting to clawback eighty-five allegedly privileged documents between March 1 and July 21 of this year, many of which had already been repeatedly used pretrial. Similarly, between April 25 and July 27 of this year, Meta has made nine new productions and provided metadata overlays for the "all custodians" field for tens of thousands of documents. Meta has also produced hyperlinked documents, replaced clawed back documents, reproduced documents with fewer redactions and/or higher quality imaging, and provided additional overlays of File Path and Version Date. Simply put, Meta is certainly comfortable with continuing discovery to its benefit. Meta cannot plausibly contend that it needs not comply with these longstanding ESI obligations by invoking timeliness.

***Principles of Justice and Equity Provide a Separate Basis to Grant Plaintiffs' Request.*** Plaintiffs simply seek for this Court to require Meta's compliance with the ESI protocol; furthermore, this Court "is vested with broad discretion to manage discovery in the interest of justice." *See, e.g.*, *Foster v. Russell*, 2021 WL 6500721,*2 (E.D. Cal. 2021) (granting motion to compel production of discovery in a "reasonably usable" format).

Plaintiffs face substantial injustice and inequities without the requested metadata, essentially forced to attempt admitting key trial documents in the dark as a result of Meta's tactical discovery omissions and hypocrisy. Especially given Meta's refusal to stipulate to the documents' admissibility and reservation of objections for lack of personal knowledge and foundation, absent this Court's order, Meta's duplicitous tactics deny Plaintiffs access to easily accessible and crucial information. This renders many of Plaintiffs' priority trial documents not "reasonably usable." *See*

---

[1] https://support.google.com/vault/answer/6099459?hl=en#drive_export&drivexml&metadata.

7

Fed. R. Civ. P. 34. Meanwhile, Meta argues that Plaintiffs' request is time-barred despite its own late disclosures including other custodial metadata, made at Meta's convenience. At bottom, this court should order Meta to disclose the metadata because its omission defies principles of fundamental fairness.

**Meta's Reply:** Nothing in the AGs' response alters the fundamental fact that the AGs failed to timely move for relief, cannot show good cause to be relieved of the consequences of that failure, and now ask the Court to rewrite the agreed-to ESI Protocol at the eleventh hour.  The AGs made a "tactical decision during discovery" not to ask deponents and future trial witnesses about their familiarity with the AGs' preferred documents, and accordingly took the risk that the evidence they now wish to admit would be absent at trial.  *Integra Lifesciences I, Ltd. v. Merck KGaA*, 190 F.R.D. 556, 559 (S.D. Cal. 1999).  Notably, despite (two) briefings before this Court and argument before Judge Gonzalez Rogers, the AGs have yet to identify specific documents for which they cannot figure out any Meta employee with personal knowledge, and even concede *supra* that some of the documents they have repeatedly demanded relief on are associated with known, named Meta employees *on their face.  See supra*; ECF 3023 at 9–10.

Moreover, the AGs' misrepresentation of their demand as one for "compliance" with the ESI Protocol, rather than a departure from that agreement, highlights their continued conflation of *custodians*, which the Protocol required Parties to disclose, with non-custodial "Viewers" and "Collaborators" (Google's vocabulary for anyone with the ability to open a document).  *See id.* at 8. Construing "custodian" to include anyone who could have theoretically viewed a document distorts the term beyond recognition, opening the floodgates to thousands of individuals qualifying as custodians for documents they have no reason to know exist.  *See* ECF 3023 at 8. None of the AGs' cited cases, *IQVIA* included, compel a producing party to identify individuals with access to view or edit documents on a collaboration platform as "custodians."

In any event, the window for the AGs to raise such a challenge closed more than a year ago, *id.* at 7–8.  While Meta has indeed made narrow "clean-up" productions largely pursuant to agreements with Plaintiffs, these agreements have not reopened discovery. In contrast, the AGs now seek to override the agreed-upon Parties' ESI Protocol in place since March 2024.

While the AGs seek to rehash the same arguments they previously raised, the simple fact is that Meta is not "withholding" any metadata to which the AGs are entitled or that would even assist them in laying the foundation to admit exhibits at trial. *See* ECF 3023 at 8, 9–10. The sole new authority the AGs cite, in which a court granted a "timely" request—unlike the AGs'—for production of "video footage," material substantively distinct from access metadata, is entirely inapplicable.  *Foster*, 2021 WL 6500721,*2 (E.D. Cal. 2021).

**Plaintiffs' Reply:** The circularity of Meta's position is apparent—Meta demands that Plaintiffs prove a custodian's knowledge of a document in order to learn the identity of the custodian. That is not what was required by the ESI protocol, nor is it consistent with basic principles of discovery or fairness. Plaintiffs should not be left to wait until a witness' testimony to learn whether the witness was a custodian of an important document, nor should Plaintiffs be left unable to challenge a witness's representation that they do not recall a particular document. Meta also misrepresents the district court's instruction on this issue—**"It sounds like you need an issue from Magistrate Judge Kang: Why don't we have custodians? Why haven't the custodians for these documents been produced? It absolutely matters."** 7/17/26 CMC Hr'g Tr. at 63:24-64:6. Nor did the judge indicate the issue was waived. Meta has articulated **no burden** to provide this information. Meta's misleading cites to the Sedona Conference and case law only confirms the reasonableness of Plaintiffs' ask. Plaintiffs have already narrowed their request to only 300 priority documents, and Meta has refused to provide the information for an even narrower subset.

**ATTESTATION**

I, Ashley M. Simonsen, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: August 7, 2026

By: /s/ *Ashley M. Simonsen*
Ashley M. Simonsen