# EXHIBIT 5

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: SOCIAL MEDIA ADOLESCENT
ADDICTION/PERSONAL INJURY
PRODUCTS LIABILITY LITIGATION

Case No. 4:22-md-03047-YGR

MDL No. 3047

This Document Relates to:

ALL CASES

**ORDER GRANTING-IN-PART AND
DENYING-IN-PART RELIEF FROM
MAGISTRATE JUDGE'S ORDER
REGARDING BEJAR AND JAYAKUMAR
SUBPOENAS AND DENYING RELIEF FROM
MAGISTRATE JUDGE'S ORDER
REGARDING HAUGEN SUBPOENA**

Dkt. Nos. 2006 and 2239

Before the Court are defendant Meta Platforms, Inc.'s ("Meta") Motions for Relief (Dkt. No. 2006 and Dkt. No. 2239), which involve a disagreement regarding discovery obligations of non-parties Arturo Bejar, Vaishnavi Jayakumar, and France Haugen, each of whom is a former employee who has spoken publicly regarding their views about Meta. Bejar, Jayakumar, and Haugen objected to certain of Meta's document requests, including on grounds of First Amendment privilege, whistleblower protections, journalistic privilege, and proportionality.

Magistrate Judge Kang issued two orders addressing those objections, one for each, namely Meta's document subpoena to (i) Bejar and Jayakumar and (ii) Haugen. (Dkt. No. 1963, Order Resolving Dispute Re: Document Subpoenas to Nonparties Bejar and Jayakumar, "May 19 Order"; Dkt. No. 2197, Order Resolving Dispute Re: Meta's Subpoenas Served on Nonparty Frances Haugen, "August 19 Order"). On June 2, 2025, Meta filed a motion for relief from Magistrate Judge Kang's Order regarding subpoenas to non-parties Bejar and Jayakumar. (Dkt. No. 2006,

1

"June 2 Mot."). On July 30, 2025, Bejar and Jayakumar filed their opposition to Meta's Motion. (Dkt. No. 2146, "July 30 Oppo."). On September 2, 2025, Meta filed a motion for relief from Magistrate Judge Kang's Order regarding subpoenas to non-party Haugen. (Dkt. No. 2239, "September 2 Mot."). On September 16, 2025, Bejar and Jayakumar filed their opposition to Meta's Motion. (Dkt. No. 2260, "September 16 Oppo.").

The Court has carefully reviewed the May 19 and August 19 Orders, Meta's motions for relief, and Bejar, Jayakumar, and Haugen's briefs in opposition. For the reasons discussed below, the Court hereby **GRANTS** in part and **DENIES** in part Meta's motion for relief from the May 19 Order and **DENIES** Meta's motion for relief from the August 19 Order.

## I.     STANDARD OF REVIEW

The district court's review of a magistrate judge's order is governed by federal statute and rules of civil procedure. "The power of federal magistrate judges is limited by 28 U.S.C. § 636." *Mitchell v. Valenzuela*, 791 F.3d 1166, 1168 (9th Cir. 2015) (quoting *Est. of Conners by Meredith v. O'Connor*, 6 F.3d 656, 658 (9th Cir. 1993)). Pursuant to 28 U.S.C. section 636(b)(1)(A), when a district judge "designate[s] a magistrate judge to hear and determine any pretrial matter pending before the court," the district judge may reconsider any pretrial matter "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." Under that standard, deference is afforded the non-dispositive order. *Id.* (citing Fed. R. Civ. P. 72(a)); 28 U.S.C. § 636(b)(1)(A). While "[t]he reviewing court may not simply substitute its judgment for that of the deciding court," *id.*, the Court considers timely objections and will modify or set aside any part of the Orders that are clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a).

## II.     FIRST AMENDMENT

Here, the "fundamental dispute concerns whether [Bejar, Jayakumar, and Haugen] should be required to produce their communications with current and former Meta employees (both identified and unidentified) regarding social media platforms and the health of minors."[1] (May 19

---

[1] RFP No. 2 in Meta's subpoena to Bejar seeks "[a]ll Documents and Communications with current and/or former Meta employees, regarding Social Media Platforms and the mental, social, emotional, or behavioral health, safety, or the sexual exploitation of persons under the age of 18." RFP No. 1 in the subpoena to Jayakumar is identical. Meta's RFP No. 10 to Bejar and RFP No. 2

2

Order at 6; August 18 Order at 6).  The May 19 and August 19 Orders found that Bejar, Jayakumar, and Haugen had demonstrated they had First Amendment associational rights with the current and former Meta employees sufficient to deny Meta's requests for production. Meta asks this Court to overrule.

In the Ninth Circuit, a party asserting First Amendment associational privilege must make "a prima facie showing of arguable first amendment infringement" demonstrating that "enforcement of the discovery requests will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or chilling of, the members' associational rights."  *Chevron Corp. v. Donziger*, 2013 WL 1402727 at *2 (N.D. Cal. Apr. 5, 2013) (quoting *Perry v. Schwarzenegger*, 591 F.3d 1126, 1139–41 (9th Cir. 2009) ("Perry I").  Once the party makes their *prima facie* showing, the burden shifts to the party seeking discovery to show that the requested information is "highly relevant to the claims or defenses in the litigation," carefully tailored, and otherwise unavailable.  *Id.*

This framework presupposes the existence of any "associational rights" to be infringed upon.  *Id.*  Though a formal organization is not required, those rights exist only when "individuals have associated to advance shared views, or engaged in collective effort on behalf of shared goals." *Sullivan v. Univ. of Wash.*, 60 F.4th 574, 580 (9th Cir. 2023) (internal quotations omitted); *see also Beinin v. Ctr. for Study of Popular Culture,* 2007 WL 1795693, at *2 (N.D. Cal. June 20, 2007) (associational privilege implicated "notwithstanding the fact that there is no formal organization"). Meta claims there is no "authority for treating all current and former company employees who are communicating about issues relevant to litigation against a company as having formed an 'expressive association' that qualifies for the First Amendment privilege." (July 30 Oppo. at 3.)

Ninth Circuit case law is clear that associational privilege may attach to expression regarding a wide range of public issues.  *See Brock v. Loc. 375, Plumbers Int'l Union of Am., AFL-*

---

to Jayakumar are similar requests for documents and communications with certain named individuals, most of whom are former Meta employees. Meta's RFP No. 2 to Haugen combines these approaches, seeking her documents and communications with named and unnamed current and former Meta employees about the same topics. Given their similarity, I analyze RFP Nos. 2 and 10 to Bejar, RFP Nos. 1 and 2 to Jayakumar, and RFP No. 2 to Haugen together.

*CIO*, 860 F.2d 346, 349 (9th Cir. 1988) ("[I]mplicit in the right to engage in activities protected by the First Amendment [is] a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends."). That range extends to the issues in this case. Social media's impact on health is undoubtedly a topic of public import, much as in other Ninth Circuit cases finding expressive associations. *See Chevron,* 2013 WL 1402727, at \*1 (environmental degradation); *Perry I*, 591 F.3d 1126, 1140 (9th Cir. 2009) (California's Proposition 8). As a result—and contrary to Meta's arguments—the examples from *Stanglin* and *Sullivan* of groups that cannot claim associational privilege (random patrons in a dance hall, or a "couple out on the town") are inapt comparisons. *Dallas v. Stanglin*, 490 U.S. 19, 25 (1989); *Sullivan*, 60 F.4th at 580.

That said, the existence of a "collective effort on behalf of shared goals" is less obvious here than in *Perry* and *Chevron*. The problem is that the document requests, in effect, encompass two groups: (1) current or former Meta employees who communicated with Bejar, Jayakumar, or Haugen in support of their positions, and (2) current or former Meta employees who communicated with Bejar, Jayakumar, or Haugen but did not support their positions. The first group plausibly constitutes an association under the First Amendment because their communications would reflect "cooperation towards a common goal." *Sullivan*, 60 F.4th at 580. The second group, however, does not have "shared views" to advance. *Id.*

That dichotomy mirrors the disagreement between the parties here. Meta asserts that it seeks the second group, because it wants to "determine whether the communications are inconsistent with [Bejar's, Jayakumar's, or Haugen's] opinions and views . . . so as to impeach them or otherwise attack their credibility." (May 19 Order at 10.) Bejar, Jayakumar, and Haugen respond that, really, Meta wants to identify employees it considers traitorous—that is, the first group, who agree with Bejar, Jaykumar, and Haugen's anti-Meta activism. (*See* Dkt. No. 1765 at 4 ("The requests seek to expose current and former Meta employees who have critical views of Meta and force them to divulge their private communications").)

4

While Meta's perspective is plausible, it is more likely that the first group, who are characterized by the "collective effort" and "shared goals" required of protected association, predominate. Bejar's and Haugen's letter briefs[2] suggest that the communications at issue were with people who supported their efforts, even if they do not categorically declare that every single responsive communication was of this nature. (*See* March 14 Bejar Letter Brief, Dkt. No. 1765 ("[C]ommunications [were] with those who have ***assisted [him] in providing information to authorities***" pursuant to his Congressional testimony about Meta's safety) (emphasis supplied); (July 24 Haugen Letter Brief, Dkt. No. 2136-1) (Meta's request "demands disclosure of my non-public communications with ***fellow social critics*** such as, among others, other former Meta employees") (emphasis supplied).  The Court cannot ignore Bejar and Haugen's representations that the bulk of the responsive communications were with employees interested in supporting in their activism.

Communications in which employees provided information to support Bejar, Jayakumar, or Haugen's positions on social media and health, or discussed strategies for how best to advance those positions, fall squarely into *Perry I.* 591 F.3d at 1142 (the First Amendment protects "the right to exchange ideas and formulate strategy and messages, and to do so in private," when "associat[ing] with others to advance one's shared political beliefs.")  As Magistrate Judge Kang noted, Bejar and Jayakumar argue that disclosing those communications "will result in discouraging other such employees from speaking or associating with them," and that "the current and former Meta employees, if identified, would fear adverse employment actions and/or the risk of being "blackballed" in the industry." (May 19 Order at 8.)  Haugen likewise declared that compelled disclosure of these communications would diminish what her contacts are willing to share with her, due to fears of reprisal. (Dkt. 2136-1 at ¶¶ 8-14.)  As such, Magistrate Judge Kang

[2] Contrary to Meta's position, the Ninth Circuit has no absolute rule that declaration evidence is required to establish a *prima facie* case of First Amendment infringement.  *See Perry*, 591 F.3d at 1143 (9th Cir 2009) ("[S]elf-evident" that First Amendment rights were implicated); *see also Sines v. Kessler* (ND Cal 2018) (concluding, without relying on declarations, that "[i]t is clear" that First Amendment rights implicated); *Music Grp. Macao Com. Offshore Ltd.* (N.D. Cal. 2015) ("[A]rguable first amendment infringement" was possible "[j]udging even from Music Group's complaint"). The letter briefs here suffice.

5

was correct to conclude that revealing the communications through discovery could chill protected associational rights, as required for a *prima facie* showing of "arguable first amendment infringement." *Perry I*, 591 F.3d at 1140; *see Beinin*, 2007 WL 1795693, at *4 ("Had Plaintiff's email correspondents realized that privately supporting his litigation would potentially subject them to intrusive depositions or other discovery, they may have chosen to refrain from speaking").

As required by the second part of *Perry*'s test, Magistrate Judge Kang next weighed the communicators' rights against Meta's interests in the documents, concluding that the "harms to the First Amendment associational rights here are not outweighed by the interest in disclosure of communications." (May 19 Order at 13; *see also* August 19 Order at 20.)  Magistrate Judge Kang drew this conclusion including upon grounds that Bejar, Jayakumar, and Haugen's views are not "central to the issues in this case." (May 19 Order at 11; August 19 Order at 11.)

With respect to that issue, at the November 19 case management conference, the Court obtained clarity regarding the use of these non-parties as trial witnesses.  First, the Attorneys General, school districts, and personal injury plaintiffs confirmed they will not call Haugen as a witness live or via videotape deposition.  (Dkt. No. 2488, Tr. 29:2-8.)  Likewise, the school district and personal injury plaintiffs clarified they will not call Jaykumar as a witness live at trial. (*Id.*)  As such, the Court agrees with Magistrate Judge Kang's conclusion that Meta's interest in the communications among Jayakumar, Haugen, and Meta's former/current employees remains less weighty than the risk of chilling associational rights.

By contrast, Bejar has been identified as a non-retained expert witness, and plaintiffs indicated they would call him at trial.  (Dkt. No. 2488, Tr. 29:2 ("Mr. Bejar will be testifying").)  Plaintiffs may not use privilege "both as a sword to defeat [Meta's] arguments" and as "a shield to protect against the disclosure of the basis" for Bejar's opinions.  *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992).  Given that Bejar may testify at trial, Meta must have the opportunity to explore the bases of his views. Fed. R. Civ. P. 72(a); *see also Pineda v. City & Cnty. of San Francisco*, 280 F.R.D. 517, 522 (N.D. Cal. 2012) (Defendants must be able to "meaningfully" cross-examine testifying expert on the "reasons and bases [for]" and "the facts or

6

data" underlying their opinions).  To the extent that the Attorney Generals choose to call Jayakumar as a witness, the weighing of interests is also likely to change.  In light of this, the May 19 Order was contrary to law or reflected clear error in its assessment that the First Amendment barred disclosure of Bejar's communications with current/former Meta employees.

The Court affirms as to the other two without prejudice to reconsidering if called as trial witnesses.  Notwithstanding the foregoing, and given the balancing which needs to be afforded given the First Amendment concerns, the issue is remanded to Magistrate Judge Kang to oversee protocols to afford measures of protection, such as disclosure under an attorney's eyes only order.

## III.    THE WHISTLEBLOWER STATUTES

Next, Magistrate Judge Kang found "that Mr. Bejar's objections to the subpoena directed to him under Sarbanes-Oxley and the California Labor Code are additional bases to deny Meta's motion to compel disclosure of his communications with Meta employees."  (May 19 Order at 14.) The orders are based on 8 U.S.C. section 1514A ("Sarbanes-Oxley," or "SOX") and California Labor Code section 1102.5(b) (together with Sarbanes-Oxley, the "Whistleblower Statutes"). The May 19 Order concludes that because "Mr. Bejar has testified before Congress regarding Meta," if "Mr. Bejar had communications with Meta employees regarding information disclosed to Congress," Sarbanes-Oxley must bar discovery of those communications. (Order at 14.)

Sarbanes-Oxley "prohibits publicly traded companies from retaliating against employees who report what they reasonably believe to be *instances of criminal fraud or securities law violations*." *Murray v. UBS Sec., LLC*, 601 U.S. 23, 27 (2024) (emphasis supplied). Here, Bejar does not suggest that his congressional testimony disclosed fraud upon shareholders or violations of securities laws. Rather, Bejar's testimony, cited in the May 19 Order, proposes only forward-looking regulatory changes and suggests that such changes will not materially change Meta's financial position. *Social Media and the Teen Mental Health Crisis: Hearing Before the S. Subcomm. on Priv., Tech. & the Law*, 118TH CONG. (2023) (written testimony of Arturo Bejar, Former Director of Engineering for Protect and Care, Facebook), available at https://www.judiciary.senate.gov/imo/media/doc/2023-11-07_-_testimony_-_bejar.pdf (last visited

7

November 4, 2025) ("Regulators should require changes"; "I don't believe such reforms will significantly affect revenues or profits for Meta."). Bejar attempts to connect his testimony to Sarbanes-Oxley's protections by noting that product safety information can be "material for investors to make sound investment decisions." (Dkt. No. 2146 at 5.)

This theory, and the corollary order, expand the scope of the statute without citation to legal authority. First, the theory does not fit within the plain language of the statute which is limited to securities violations. Second, expressing one's belief that a company ought to change its product safety policies is not the same as disclosing specific instances of shareholder fraud or other legal violations. *See Gjovik v. Apple Inc*., 2024 WL 2309100, at \*12 (N.D. Cal. May 20, 2024) (no whistleblower protection where "many of these [alleged] acts do not have anything to do with the kinds of criminal fraud identified in [Sarbanes-Oxley] or with securities law violations.").

Similarly, California Labor Code section 1102.5(b) is also limited in scope. Section 1102.5(b) requires the employee to reasonably believe that the "information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation." Again, Bejar never suggested that his congressional testimony disclosed existing violations. Rather, his policy recommendations are what he believes companies "should be required" to do—not what they are required to do. (*Social Media and the Teen Mental Health Crisis: Hearing Before the S. Subcomm. on Priv., Tech. & the Law* at 14.)

Next, the orders indicate that the Whistleblower Statutes protect against not just retaliation, but also anything that might cause the "discouraging effect of the fear of retaliation or blacklisting." (May 19 Order at 14.) In this regard, the Court agrees that the text of the Whistleblower Statutes protect certain employees against actual or threatened retaliation. 18 U.S.C. § 1514A(a) (a publicly traded company may not "discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee" when they engage in protected activities); Cal. Labor Code § 1102.5(b) ("[a]n employer . . . shall not retaliate against an employee" who engages in protected activity).

Here, Bejar seeks to expand the statute to prohibit disclosure of information *assuming* a future violation of Whistleblower statutes.  The plain text of the statutes does not so authorize.  Further, no courts have extended the statutes in such a manner.  Rather, courts in the Ninth Circuit regularly permit discovery in whistleblower cases. *See, e.g., EMC Corp. v. Sha*, 2014 WL 12955756, at *2 (N.D. Cal. Jan. 14, 2014); *McEuen v. Riverview Bancorp, Inc.*, 2013 WL 12095581, at *3 (W.D. Wash. 2013).  The reliance on *Bechtel v. Admin. Rev. Bd., U.S. Dep't of Lab*. 710 F.3d 443, 446 (2d Cir. 2013) does not compel otherwise. *Bechtel* states generally that one of Sarbanes-Oxley's purposes is to combat a culture that discourages fraud reporting.  As noted above, Sarbanes-Oxley does not apply here. Even if it did, *Bechtel* was about an employee who alleged retaliation after being fired, and so did not discuss whether a generalized fear of future retaliation might be actionable under Sarbanes-Oxley.

Thus, the Court finds the orders on this issue are clearly erroneous and contrary to law. Neither of the Whistleblower Statutes bar disclosure of Bejar's at-issue communications.

### IV.     META'S OTHER REQUESTS TO HAUGEN

In addition to Haugen's communications with current or former Meta employees, Meta sought requests for her communications with the press and with government officials. In the August 19 Order, Judge Kang concluded these requests were "not proportional to the needs of the case in light of Haugen's resources, the lack of importance of the discovery in resolving the issues disputed in this MDL, and the burden or expense of the proposed discovery which outweighs its likely benefit." (August 19 Order at 25.)  Meta objects. (September 2 Oppo. at 2.)

In its Motion for Relief, Meta does not cite additional case law or evidence regarding proportionality, but simply asserts that "Meta has a right to explore whether Haugen's communications with others" contradict her statements, demonstrating "the limitations of her knowledge," or show "the role of others in pushing the narrative of a connection between social media and teen mental health." (September 2 Mot. at 5.) Effectively, Meta seeks a different judgement on proportionality than that of Magistrate Judge Kang.  Given the deferential standard of review, *see Barnes & Noble, Inc. v. LSI Corp.*, 2013 WL 841334, at *1 (N.D. Cal. Mar. 6, 2013),

9

and that plaintiffs confirmed they will not use Haugen's testimony at trial, (Dkt. No. 2484 at 1), the Court does not disturb Magistrate Judge Kang's conclusion that these requests are disproportionate. The decision is not clearly erroneous or contrary to law.[3]

### V.    CONCLUSION

The Motion for Relief as to the May 19 Order is **GRANTED** in part and **DENIED** in part.  The Court grants Meta's motion to compel with regard to Request Nos. 2 and 10 of the subpoena to Bejar, and denies Meta's motion to compel with regard to Request Nos. 1 and 2 of the subpoena to Jayakumar and denies the Motion for Relief as to the August 19 Order.

This terminates Dkt. Nos. 2006 and 2239 in Case No. 22-md-03047.

**IT IS SO ORDERED.**

Dated: December 9, 2025

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**

---

[3] The August 19 Order also concluded that journalistic or First Amendment privileges constitute additional bases upon which to quash Meta's requests for Haugen's communications with the press and government. (August 19 Order at 7-23). Given that Magistrate Judge Kang's conclusions on proportionality provide an independent basis upon which to deny the requests, the Court declines to address those issues as unnecessary to a decision.