# EXHIBIT 8

# *STATE OF TENNESSEE, et al.*

v.

# *META PLATFORMS, et al.*

Trial

**Day Seven**

*July 30, 2026*



**HARPETH COURT REPORTERS**

(615) 933-6786

www.harpethcourtreporters.com

IN THE CHANCERY COURT OF DAVIDSON COUNTY, TENNESSEE
FOR THE TWENTIETH JUDICIAL DISTRICT AT NASHVILLE
_____

STATE OF TENNESSEE, ex rel.
JONATHAN SKRMETTI, ATTORNEY GENERAL
and REPORTER,

            Plaintiff,

  vs.                                Case No. 23-1364-IV

META PLATFORMS, INC., and
INSTAGRAM,

            Defendants.
_____


                      TRIAL TRANSCRIPT
                      (Pages 1591-1964)

                           Day 7

            Before Chancellor Russell T. Perkins

                      July 30th, 2026

                         8:00 a.m.


_____
                       Reported by:
                  Harpeth Court Reporters
                    Franklin, Tennessee
                   Julie Lyle, RPR, LCR

APPEARANCES:

FOR PLAINTIFFS:

      MATTHEW D. JANSSEN
      MARILYN GUIRGUIS
      BRIAN PHELPS
      MOLLY CAMPBELL
      Office of the Attorney General
      Consumer Protection Division
      UBS Building, 20th Floor
      315 Deaderick Street
      Nashville, Tennessee 37243
      matthew.janssen@ag.tn.gov
      marilyn.guirguis@ag.tn.gov
      brian.phelps@ag.tn.gov
      molly.campbell@ag.tn.gov

      THOMAS P. CARTMELL
      JONATHAN KIEFFER
      LINDSEY SCARCELLO
      ADAM DAVIS
      J. KIRK GOZA
      Wagstaff & Cartmell
      4740 Grand Avenue, Suite 300
      Kansas City, MO  64112
      (816)701-1102
      tcartmell@wcllp.com
      jpkieffer@wcllp.com
      lscarcello@wcllp.com
      adavis@wcllp.com
      jgoza@wcllp.com

FOR DEFENDANTS:

      KEVIN B. HUFF
      ALEX PARKINSON
      LILLIAN SMITH
      ANA NIKOLIC PAUL
      Kellogg, Hansen, Todd, Figel & Frederick, PLLC
      Sumner Square
      1615 M Street NW, Suite 400
      Washington, DC  20036
      (202)326-7919
      khuff@kellogghansen.com
      aparkinson@kellogghansen.com
      lsmith@kellogghansen.com
      apaul@kellogghansen.com

APPEARANCES:   (Continued)

    ROBERT E. COOPER, JR.
    Bass, Berry & Sims, PLC
    21 Platform Way South
    Suite 3500
    Nashville, TN  37203
    bob.cooper@bassberry.com

Q.    You put her in contact with your lawyer; is that right?

A.    One of several people that I have put in contact with my lawyer, most of which, by the way, chosen not to testify.

Q.    Okay.  Well, maybe we'll hear from Ms. Buffone.

We also heard in the opening about an individual named Alison Lee.

You know Ms. Lee, correct?

A.    Yes, I know Ms. Lee.

Q.    She's another former Meta employee, correct?

A.    That is correct.

Q.    You've texted with her, right?

A.    I have, yes.

Q.    You've put her in contact with your lawyer?

A.    Yes, I have.

Q.    Okay.  Another name that we heard about in the State's opening was Zamaan Qureshi.

You know Mr. Qureshi, correct?

A.    Yes.  I met him right after the Mark Zuckerberg hearing in Washington Hill -- in Washington, D.C.  He's -- works for Design It For Us, one of the organizations that I think was mentioned on Monday, which is young people who

worked for safety.

Q.     He's someone that you text with; is that right?

A.     Yes.  Him and other people in his organization.  I believe it's really important to support young people who are doing this work.

Q.     When you text, for example, with Dr. Buffone, do you use an app called Signal?

A.     Yes.  All of my communications on this area I use on an app called Signal.

Q.     And the settings that you have on Signal, is it ephemeral messaging?

A.     Yes, I have ephemeral messaging on Signal.  I have been doing this pretty much since the time that I -- that I started.  My background is a security engineer and from a professional paranoid, I try to be very mindful about my communications OPSEC as they would say in the field.

Q.     And so your texts with these individuals, they disappear?

A.     Yes, they do.  In a way, by the way, similar to the disappearing messages feature that Instagram recommends to 13-year-olds when they first open messages for the first time.

Q.     Do you see a difference between a 13-year-old

**posting a story and you texting with former Meta employees about your lawyer?**

A.      Excuse me?

**Q.      Do you see a difference between a 13-year-old posting an ephemeral story and you, a witness in this case, having ephemeral, disappearing, deleting text messages with other witnesses in this case, is there a difference?**

A.      No.  I actually was not talking about a teenager posting an ephemeral story.  I was talking about the exact same feature in Signal where you can go into a mode -- so when you're a 13-year-old and you open messages for the first time, you get a little bubble on top.  This is an example of them showing you a feature that they want you to use, that says, Swipe up for disappearing messages.

And when you swipe up, for disappearing messages, and when you swipe up, it rains emojis that go (indicating), and anything that you write or sent during that chat, when you exit the chat, it's deleted.

And so this is a feature in private messaging that gets recommended to a 13-year-old the moment that they open the app.  And once that happens, if there's any nudity, if there's any harassment, if

there's any grooming, if there's any drug sales, if there's any issues, those messages are all deleted and disappear after they exit the chat.

I believe something like disappearing messages is a good feature for an adult to have who wants to manage their communications.  I do not believe disappearing messages are a good feature for a 13-year-old to have, much less recommended.  I believe there should be records of minors' communications so that the parents can have access to them if something really bad happens, as it does.

Q.    **Your Signal text messages with other witnesses in this case are destroyed, correct?**

A.    My Signal's text messages with anybody I talk to get deleted, absolutely, yes.

Q.    **Now, you have even tried to contact some current Meta employees, correct?**

A.    So I have friends that still work there, certain friends that have left, friends that I go on walks with.  And I did try to reach to Sayed Otaro.

As we talked about, ever since they got the message about not talking to Meta employees, I don't believe I have knowingly reached out to anybody who still works at the company other than friends with whom I have regular communications.