# Exhibit B

Ashley M. Simonsen, SBN 275203
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

*Attorney for Defendant Meta Platforms, Inc.*
*f/k/a Facebook, Inc*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case No. 4:22-md-03047-YGR (PHK) |
| This Document Relates To: | 4:23-cv-05448-YGR |
| *People of the State of California, et al. v. Meta Platforms, Inc., et al.* | **DECLARATION OF ASHLEY M. SIMONSEN IN SUPPORT OF META'S MOTION FOR SPOLIATION SANCTIONS PRECLUDING STATE AGS FROM CALLING THIRD-PARTY WITNESS ARTURO BEJAR AT TRIAL OR, IN THE ALTERNATIVE, FOR ADVERSE-INFERENCE INSTRUCTIONS** |
| | Judge: Hon. Yvonne Gonzalez Rogers Magistrate Judge: Hon. Peter H. Kang |

## DECLARATION OF ASHLEY M. SIMONSEN

I, Ashley M. Simonsen, declare and state as follows:

1. I am a partner with the law firm Covington & Burling LLP, counsel of record for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc. ( "Meta"). I submit this declaration in support of Meta's Motion for Spoliation Sanctions Precluding State AGs From Calling Third-Party Witness Arturo Bejar at Trial or, in the Alternative, for Adverse-Inference Instructions. This declaration is based on my personal knowledge unless otherwise indicated. If called upon to do so, I could and would competently testify as follows.

2. Prior to filing the instant litigation against Meta, the 29 State AG Plaintiffs—along with other AGs who later filed independent actions against Meta in state court—conducted a pre-suit investigation. Based on a pre-suit Confidentiality Agreement, the Attorneys General Offices leading that investigation were California, Kentucky, Massachusetts, Nebraska, New Jersey, Tennessee, and Vermont. A true and correct copy of the Confidentiality Agreement entered into by Meta and these investigating AGs is attached hereto as **Exhibit 13.**

3. On November 13, 2023, the New Mexico AG filed a complaint against Meta. A true and correct copy of a December 6, 2023 email from Linda Singer, counsel for the New Mexico AG, to Mr. Bejar and Mr. Bejar's counsel Mike Ward, which Mr. Bejar produced at BEJAR002479, is attached hereto as **Exhibit 27**.

4. Meta put Mr. Bejar on its litigation hold for this lawsuit on March 17, 2023.

5. In January 2025, the MDL AGs and the MDL/JCCP Personal Injury and School District ("PISD") Plaintiffs noticed Mr. Bejar's deposition. A true and correct copy of the Amended Cross-Notice of Videotaped Deposition of Arturo Bejar, served by the MDL PISD Plaintiffs and the MDL AGs on January 31, 2025, is attached hereto as **Exhibit 3.** A true and correct copy of Plaintiffs' Cross Deposition

Notice of Arturo Bejar, served by the JCCP Plaintiffs on March 4, 2025, is attached hereto as **Exhibit 4**. In April-May 2025, the MDL AGs and the MDL/JCCP PISD Plaintiffs disclosed Mr. Bejar as a non-retained expert. True and correct copies of their non-retained expert disclosures are filed on the MDL docket at ECF 1887-2 (April 18, 2025 JCCP non-retained expert disclosure) and ECF 2006-10 (May 16, 2025 MDL non-retained expert disclosure).

6. On February 11, 2025, Meta served a document subpoena on Mr. Bejar. A true and correct copy of that subpoena was filed on the MDL docket at ECF 2006-3.

7. Request for Production ("RFP") No. 2 in Meta's document subpoena asked Mr. Bejar to produce "All Documents and Communications with current and/or former Meta employees, regarding Social Media Platforms and the mental, social, emotional, or behavioral health, safety, or the sexual exploitation of persons under the age of 18." *See* **ECF 2006-3**.

8. RFP No. 10 in Meta's document subpoena also asked Mr. Bejar to produce "All Documents and Communications between You and Frances Haugen, Vaishnavi Jayakumar (aka "Vaishnavi J"), Kang-Xing Jin (aka "KX Jin" or "Robert Jin"), Samir Patel, Margaret Gould Stewart, and Alison Lee concerning Social Media Platforms and the mental, social, emotional, or behavioral health, safety, or the sexual exploitation of persons under the age of 18." *See* **ECF 2006-3**.

9. Mr. Bejar served Responses and Objections to Meta's document subpoena on February 28, 2025. A true and correct copy of those Responses and Objections was filed on the MDL docket at **ECF 2006-5**.

10. On March 31, April 4, and April 8, 2025, Mr. Bejar made his initial productions in response to Meta's subpoena. Those productions included communications between Mr. Bejar and former Meta employees, such as PDF printouts of emails or PDFs of text messages, without providing any metadata.

11. In Mr. Bejar's production served on March 31, 2025, which was one week before his deposition, Mr. Bejar included two Signal threads (consisting of eight screenshots) from January 24, 2024 and February 1-2, 2024, including one with Frances Haugen. Those Signal threads are discussed in paragraphs 52–53 below, and true and correct copies are attached hereto as **Exhibits 32–33**.

12. Mr. Bejar sat for three separate depositions, spanning five days, and over 40 hours – one fact deposition and two non-retained expert depositions. On April 7, 8, and 9, 2025, the plaintiffs who had noticed or cross-noticed Mr. Bejar's MDL fact deposition deposed Mr. Bejar over the course of three days at Baker Botts LLP, 1001 Page Mill Road, Palo Alto, California. True and correct copies of relevant excerpts from the transcripts of Mr. Bejar's April 2025 deposition are attached hereto as **Exhibit 20.** On July 10, 2025 and then again on December 11, 2025, Meta took a further deposition of Mr. Bejar in his capacity as a non-retained expert. The July 10, 2025 deposition was attended by counsel from eight different AG offices, including California, New Jersey, Kentucky, and Tennessee, as well as counsel for the MDL/JCCP PISD Plaintiffs. A true and correct copy of relevant excerpts from Mr. Bejar's December 11, 2025 non-retained expert deposition transcript is attached hereto as **Exhibit 45.**

13. After Mr. Bejar made his initial document productions in March–April 2025, discussed above in paragraphs 10–11, Meta spent the next nine months seeking to compel Mr. Bejar and other former employees whose testimony plaintiffs were relying on in the litigation, including the MDL AGs, to produce all of their communications with any current or former Meta employees, or at least their communications with the specific former employees identified in Meta's subpoenas. However, Mr. Bejar (and other former employees represented by Mr. Ward) refused to produce any additional documents beyond those produced in his initial March–April 2025 productions.

14. On December 9, 2025, this Court issued an Order overruling Mr. Bejar's objections to RFP Nos. 2 and 10 in Meta's document subpoena in relevant part and ordered that if "Bejar may testify at trial,

Meta must have the opportunity to explore the bases of his views," including specifically through discovery into his communications with both current and former employees. A true and correct copy of this Court's December 9, 2025 Order, which was filed on the MDL docket at **ECF 2525**, is attached hereto as **Exhibit 5.**

15.    Mr. Bejar produced documents in response to the Court's December 9, 2025 Order on January 12, 2026. Together with the documents he had previously produced in March 2025, those documents show that Mr. Bejar communicated with other former Meta employees about topics directly relevant to this litigation. Examples of such documents are discussed in paragraphs 52–589 below.

16.    On January 20, 2026, Meta's counsel at Davis Polk & Wardell, Antonio Perez-Marques, emailed Mr. Bejar's counsel Mike Ward, copying me and others, to clarify whether Mr. Bejar had produced the full universe of responsive Signal, text, and WhatsApp messages because "[m]any of the documents produced by Mr. Bejar [in January 2026] include instances where Mr. Bejar shares his phone number and suggests that the conversation be moved to a different platform (i.e., text messages, WhatsApp, or Signal)." A true and correct copy of Mr. Perez-Marques's January 20, 2026 email and subsequent emails on the same thread, with redactions, is attached hereto as **Exhibit 6**.

17.    In his January 20, 2026 email, Mr. Perez-Marques pointed out that "despite there being no text messages in Mr. Bejar's own [January 2026] production, the single document produced by Ms. [Alison] Lee is a text thread between her and Mr. Bejar, which again suggests that searches were not adequately conducted, responsive documents are being unreasonably withheld, and/or relevant materials were insufficiently preserved." *See* **Ex. 6**.

18.    One of Mr. Ward's colleagues at Baker Botts, Karan Singh Dhadialla, responded on January 23, 2026 that "Diligent searches have been conducted, we have produced many documents (where such documents exist), and no documents are being withheld on the First Amendment protection. . . .

4

Beyond that, we believe our clients have met their obligations and we have sufficiently engaged with your requests." *See* **Ex. 6**.

19. On January 23, 2026, Mr. Perez-Marques replied, "we would appreciate it if you could simply confirm" a few points, including "that you discussed with your clients (i.e., Mr. Bejar, Ms. Lee, Dr. Sattizahn, Ms. Jayakumar, and Ms. Stewart) and searched all relevant sources of ESI (including text messages) as part of your search efforts" and "that you will amend the respective responses and objections to Meta's subpoenas to each of your clients (i.e., Mr. Bejar, Ms. Lee, Dr. Sattizahn, Ms. Jayakumar, and Ms. Stewart) to reflect what was ultimately searched and produced and state that all responsive documents have been produced." *See* **Ex. 6**.

20. Mr. Dhadialla responded on January 27, 2026: "Each of our clients has conducted a diligent search of their electronic messages (including e-mail and text/messenger, as you will see reflected in the productions)." *See* **Ex. 6**.

21. Mr. Perez-Marques noted in response on January 30, 2026 "that you did not respond to our request that your clients' respective responses and objections to Meta's subpoenas be updated to reflect their search efforts and what they ultimately produced, and Meta reserves all rights in that regard." *See* **Ex. 6**.

22. At no point did Mr. Ward disclose to Meta's counsel that responsive communications with former employees previously existed but had been destroyed, including because Mr. Bejar used Signal to communicate with them with the auto-delete functionality turned on. During a meet-and-confer on the instant motion held on August 6, 2026, and in an email I sent on August 3, 2026, discussed in paragraph 28 below, I asked Mr. Ward to confirm whether such responsive communications existed but had been destroyed, and in both instances he declined to answer.

23.    Mr. Bejar did not produce any Signal messages with Ms. Buffone, Ms. Jayakumar, Ms. Gould Stewart, or Ms. Lee with his April-May 2025 or January 2026 productions.  Meta believes that Ms. Lee may also have communicated with Mr. Bejar via Signal ephemeral messaging.  Despite receiving a subpoena requesting such communications, Ms. Lee did not produce any Signal communications.  Footnote 5 of Meta's motion, in support of which this declaration is filed, mistakenly refers to "Ms. Jayakumar" rather than to "Ms. Lee" as the individual whom Meta believes may also have communicated with Mr. Bejar via Signal ephemeral messaging.  *See* ECF 511 (3347) at 8 n.5.

24.    In the New Mexico AG trial, which commenced in February 20276, Mr. Bejar was called as the State's first non-New-Mexico-specific witness and testified over the course of two full trial days.

25.    Less than a month later, Mr. Bejar testified in the first JCCP bellwether trial over the course of two days.

26.    In the Tennessee AG trial that commenced July 27, 2026, Mr. Bejar testified over the course of two four days.  A true and correct copy of excerpts of Mr. Bejar's testimony at the Tennessee AG trial is attached as **Exhibit 8.**

27.    Mr. Bejar's testimony in all three trials has gone to the core of the MDL AGs' and other plaintiffs' claims.  He has testified extensively about his purported findings of under-13 users on Meta's services, his belief that Meta made misstatements to the public, and his belief that Facebook and Instagram's design features "cause" addiction.  In offering this testimony, Mr. Bejar has created various documents and claims to substantiate his views, including videos showing the content that fake accounts Mr. Bejar created allegedly encountered on Instagram between winter 2024 and spring 2025.

28.    On August 3, 2026, I emailed counsel for Mr. Bejar and counsel for the MDL State AGs to inquire, among other things, as to the dates of the Signal communications referred to in Mr. Bejar's Tennessee trial testimony, whether these communications were deleted, what preservation methods were

used, and whether these responsive communications still exist.   Mr. Ward did not answer any of these questions.  He stated in response on August 4, 2026 that "all relevant communications with current and former Meta employees then in Mr. Bejar's possession were collected and produced to you."  A true and correct copy of my August 3, 2026 email to Mr. Ward and his August 4, 2026 response (which split the primary thread) is attached hereto as **Exhibit 43**.  A true and correct copy of my August 3, 2026 email and other emails on the same (primary) thread is attached hereto as  **Exhibit 46**.  **Exhibit 7** contains an email from Mr. Ward that split the same thread on August 5, 2026.

29.      In my August 3, 2026 email to counsel for Mr. Bejar and counsel for the MDL State AGs, I also conveyed a request from Meta for a supplemental deposition of Mr. Bejar to inquire about the Signal communications he testified to at the Tennessee AG trial.  *See* **Ex. 43**.  Mr. Ward similarly declined Meta's request for a supplemental deposition, responding in his email of August 4, 2026 that "Meta has long known of and had the opportunity to ask Mr. Bejar about his use of Signal, and it neglected to do so." *See* **Ex. 43**.

30.      Counsel for the AGs similarly declined Meta's request for a supplemental deposition, taking the position in an email dated August 4, 2026 that "Meta's claim that it only learned last Thursday that Mr. Bejar uses Signal is incorrect," and that "Mr. Bejar fulfilled his obligations under the subpoena on January 12, 2026." *See* **Ex. 46.**

31.      On August 5, 2026, I attended a meet-and-confer with counsel for the State AGs during which we discussed multiple issues, including the requests in my August 3, 2026 email to counsel for Mr. Bejar and the State AGs and the issues presented in the instant motion.   During that conferral, I informed counsel for the State AGs that, in light of the AGs' and Mr. Bejar's positions on Meta's request for a supplemental deposition of Mr. Bejar as reflected in their emails of August 4, 2026 (*see* **Exs. 43 and 46**)— including their position that any dispute should be raised to Judge Gonzalez Rogers and not to Magistrate

Judge Kang, and the apparent lack of dispute that Mr. Bejar used Signal ephemeral messaging to engage in responsive communications that were destroyed—Meta would instead proceed with filing a motion for spoliation sanctions with Judge Gonzalez Rogers. I explained that the motion would seek an order precluding Mr. Bejar from testifying for the AGs at the MDL AG trial based on his knowing destruction of responsive communications that he was under a duty to preserve and that the Court ordered him to produce if the AGs wished to call him as a live witness at trial. Based on contemporaneous notes I took on the call, Krista Batchelder, counsel for the Colorado AG and co-lead counsel for the MDL AGs, responded that, "he's not a party to the case so I don't think he has any preservation obligations"; asserted that "his communications are protected under the First Amendment"; and asserted that "he complied with the subpoena back in January." Based on my contemporaneous notes, Ms. Batchelder further stated: "I don't know why this is coming up now given" that "when this came up in January that he used Signal" "you didn't do anything with it."

32. Based on these comments, I asked Ms. Batchelder during our August 5, 2026 meet-and-confer to confirm whether the AGs knew Mr. Bejar was communicating using Signal's ephemeral messaging feature; after pausing, she responded that she was "not in a position" to answer, and likewise declined to answer the same question during a follow-up conferral we had the next day (August 6, 2026) that Mr. Ward also attended. Before filing this motion, I sent counsel for Mr. Bejar and the State AGs an email on August 5, 2026 stating: "Of course, if you have a basis to dispute any of the facts as we understand them—namely, that Mr. Bejar used Signal ephemeral messaging to communicate with former employees about relevant issues during the pendency of this litigation, including after Meta served its subpoena requesting such communications and after Judge Gonzalez Rogers ordered him to produce such communications, and that the AGs were aware that Mr. Bejar was using ephemeral messaging to communicate with former employees—we invite you to bring that to our attention. In the absence of any

8

such clarification, given your opposition to a further deposition on these topics, we trust that we will not be hearing any factual dispute or disagreement with these premises from you in your opposition." *See* **Ex. 46 at PDF page 12.**  Having received no response, I followed up on August 5, 2026, writing: "Please identify the specific factual statements that the AGs contend are inaccurate. In particular, please identify whether the AGs dispute any of the following and, if so, on what basis: (1) that Mr. Bejar used Signal ephemeral messaging to communicate with former employees about relevant issues (a) during the pendency of this litigation, including (b) after Meta served its subpoena requesting such communications and (c) after Judge Gonzalez Rogers ordered him to produce such communications, and (2) that the AGs were aware that Mr. Bejar was using ephemeral messaging to communicate with former employees. If the AGs do not do so, Meta will proceed with its motion based on its current understanding of the facts and the evidentiary record." *See* **Ex. 46 at PDF page 9**.  In response, the State AGs (Ms. Batchelder) stated in an email dated August 6, 2023 that they "will neither agree nor stipulate to your factual recitation," but declined Meta's invitation to identify what they disagreed with.  *See* **Ex. 46 at PDF page 4**.  In an email dated August 5~~6~~, 2026, Mr. Ward responded that Mr. Bejar "does dispute your recitation of the facts" but declined to state on what basis, asserting only that "your alleged discovery violation is based on an objectively false inference" and that "Mr. Bejar's disclosure in his Tennessee testimony of his occasional use of Signal is not indicative of spoliation." *See* **Ex. 7 at PDF page 2~~1~~**.

33.     As noted above, on August 6, 2026, I attended a follow-up conferral with the State AGs on the instant motion that Mr. Ward also attended.  During this conferral, Mr. Ward specifically declined to answer the question of whether Mr. Bejar had engaged in communications with former Meta employees using ephemeral Signal messages that were deleted.  And, as noted previously, Ms. Batchelder again declined to answer the question of whether the State AGs knew that Mr. Bejar was engaged in ephemeral (disappearing) messaging on the Signal app with former Meta employees.

34. A true and correct copy of an email thread between Mr. Bejar and representatives from the Tennessee and Nebraska AG offices dated January 12, 2023, setting up a call, which Mr. Bejar produced at BEJAR0002646, is attached hereto as **Exhibit 9.**

35. A true and correct copy of a March 9, 2023 Microsoft Teams meeting invitation from Chris Dunbar at the Tennessee AG's office to Mr. Bejar and counsel for Mr. Bejar, along with representatives from the Vermont and Massachusetts AGs offices, which Mr. Bejar produced at BEJAR002432, is attached hereto as **Exhibit 10.**

36. A true and correct copy of a March 10, 2023 Microsoft Teams meeting invitation from Jamie Renner at the Vermont AG's office to Mr. Bejar and counsel for Mr. Bejar, along with representatives from the Mississippi, Tennessee, and Massachusetts AGs' offices, which Mr. Bejar produced at BEJAR002433, is attached hereto as **Exhibit 11.**

37. A true and correct copy of a Request for Information to Mr. Bejar issued by the Tennessee AG on April 27, 2023, which Mr. Bejar produced at BEJAR0000470, is attached hereto as **Exhibit 1.**

38. A true and correct copy of the cover page and appearances at the investigative interview Mr. Bejar gave under oath in the investigation that preceded this lawsuit, which Meta produced during the pre-suit investigation at AG-MDL3047-000774, is attached hereto as **Exhibit 12.**

39. A true and correct copy of a May 2-3, 2023 email exchange between Jamie Renner of the Vermont AG's office, Mr. Bejar, and Mr. Bejar's counsel, which Mr. Bejar produced at BEJAR002436, is attached hereto as **Exhibit 14**.

40. A true and correct copy of a May 10, 2023 email from Jamie Renner of the Vermont AG's office to Mr. Bejar and Mr. Bejar's counsel, attaching a Request for Information; and a true and correct copy of the Request for Information attached to the email, are attached hereto as **Exhibits 16 and 15**, respectively.

DECLARATION OF ASHLEY M. SIMONSEN IN SUPPORT OF META'S MOTION FOR SPOLIATION SANCTIONS PRECLUDING STATE AGS FROM CALLING THIRD-PARTY WITNESS ARTURO BEJAR AT TRIAL OR, IN THE ALTERNATIVE, FOR ADVERSE-INFERENCE INSTRUCTIONS
4:22-md-03047-YGR; 4:23-cv-05448-YGR

41.     A true and correct copy of a May 2023 email exchange between Mr. Bejar and Jamie Renner of the Vermont AG's, copying Mr. Ward, which Mr. Bejar produced as BEJAR002455, is attached hereto as **Exhibit 17.**

42.     A true and correct copy of a May 25, 2023 Microsoft Teams meeting invitation from Jamie Renner of the Vermont AG's office, which Mr. Bejar produced as BEJAR002449, is attached hereto as **Exhibit 18.**

43.     A true and correct copy of a May 30, 2023 Microsoft Teams meeting invitation from Jamie Renner of the Vermont AG's office, which Mr. Bejar produced as BEJAR002449, is attached hereto as **Exhibit 19**.

44.     A true and correct copy of a November 7, 2023 email from Mr. Bejar to Mr. Renner, which Mr. Bejar produced at BEJAR002458, is attached hereto as **Exhibit 21.**

45.     A true and correct copy of a November 8, 2023 email from Linda Singer, counsel for the New Mexico AG, to Mr. Bejar, copying others, which Mr. Bejar produced at BEJAR002462, is attached hereto as **Exhibit 22.**

46.     A true and correct copy of a November 13, 2023 email from Linda Singer, counsel for the New Mexico AG, to Mr. Bejar, copying others, which Mr. Bejar produced at BEJAR002464, is attached hereto as **Exhibit 23.**

47.     A true and correct copy of the retainer and confidentiality agreement sent to Mr. Bejar in **Exhibit 23**, which Mr. Bejar produced at BEJAR0002687, is attached hereto as **Exhibit 24.  Exhibit 24** is on Plaintiff's exhibit list, document number Exhibit 2,690.

48.     A true and correct copy of a Civil Investigative Demand and Litigation Hold Notice from the New Mexico AG to Mr. Bejar, which Mr. Bejar produced at BEJAR0002631, is attached hereto as **Exhibit 2.**

49.     A true and correct copy of a November 15, 2023 email from Mr. Bejar to Ms. Singer, copying Mike Ward and others, which Mr. Bejar produced at BEJAR002474, is attached hereto as **Exhibit 26.**

50.     A true and correct copy of a November 13, 2023 email from Mr. Bejar to counsel at the Tennessee AG's office, which Mr. Bejar produced at BEJAR002466, is attached hereto as **Exhibit 25.**

51.     A true and correct copy of Judge Kuhl's ruling in the JCCP on Meta's motion to exclude Mr. Bejar's expert opinion testimony is attached hereto as **Exhibit 31.**

52.     A true and correct copy of a January 24, 2024 Signal chat thread between Mr. Bejar; former Meta employee Frances Haugen; Zaman Qureershi, co-founder of Design It For Us, an organization focused on "tech accountability"; and a person identified as "Jason," which Mr. Bejar produced at BEJAR002535 through BEJAR002538, is attached hereto as **Exhibit 33**.

53.     A true and correct copy of a February 1–22, 2024 Signal chat thread between Mr. Bejar and an unknown person, which Mr. Bejar produced at BEJAR002531 through BEJAR002534, is attached hereto as **Exhibit 32.**

54.     A true and correct copy of an October 2023 email thread between Mr. Bejar to former Meta employee Kang-Xing Jin, with redactions, which Mr. Bejar produced at BEJAR002485, is attached hereto as **Exhibit 35.**

55.     A true and correct copy of a document reflecting feedback Mr. Jin provided Mr. Bejar on a document titled "For Integrity and Trust and Safety workers," which Mr. Bejar produced at BEJAR0002697, is attached hereto as **Exhibit 36.**

56.     A true and correct copy of an October through November 2023 email thread between Mr. Bejar and Mr. Jin, with redactions, which Mr. Bejar produced at BEJAR002499, is attached hereto as **Exhibit 37.**

DECLARATION OF ASHLEY M. SIMONSEN IN SUPPORT OF META'S MOTION FOR SPOLIATION SANCTIONS PRECLUDING STATE AGS FROM CALLING THIRD-PARTY WITNESS ARTURO BEJAR AT TRIAL OR, IN THE ALTERNATIVE, FOR ADVERSE-INFERENCE INSTRUCTIONS
4:22-md-03047-YGR; 4:23-cv-05448-YGR

57.    A true and correct copy of a November 2023 through January 2024 email thread between Mr. Bejar and Vaishnavi Jayakumar, a former Head of Youth Well-being at Meta whom the AGs have disclosed as a witness they are planning to call at the upcoming trial commencing August 18, 2026 (by designation), with redactions, which was produced by Mr. Bejar at BEJAR002507, is attached hereto as **Exhibit 38.**

58.    A true and correct copy of a Messenger conversation between Mr. Bejar and former Meta employee Margaret Gould Stewart, which bears the date "September 16" with no year, and which Mr. Bejar produced at BEJAR002530, is attached hereto as **Exhibit 39.**

59.    On June 26, 2026, former Meta employee Anneke Buffone testified at a deposition noticed by the Tennessee AG.  A true and correct copy of relevant excerpts from Ms. Buffone's June 26, 2026 deposition transcript is attached hereto as **Exhibit 42.**

60.    A true and correct copy of a printout of the website accessible at www.arturobejar.com is attached hereto as **Exhibit 28.**

61.    A true and correct copy of excerpts of the complaint in *State of New Mexico, ex rel. Raúl Torrez, Attorney General v. Meta Platforms, Inc., et al.*, Case No. D-101-CV-2023-02838 (N.M. 1st Jud. Dist. Ct., Dec. 5, 2023) is attached hereto as **Exhibit 29.**

62.    A true and correct copy of excerpts of the complaint in *State of Vermont v. Meta Platforms, Inc. and Instagram, LLC*, Case No. 23-CV-04453 (Chittenden Super. Ct., Oct. 24, 2023) is attached hereto as **Exhibit 30.**

63.    A true and correct copy of excerpts from a December 14, 2023 discovery management conference in this action is attached hereto as **Exhibit 34.**

DECLARATION OF ASHLEY M. SIMONSEN IN SUPPORT OF META'S MOTION FOR SPOLIATION SANCTIONS PRECLUDING STATE AGS FROM CALLING THIRD-PARTY WITNESS ARTURO BEJAR AT TRIAL OR, IN THE ALTERNATIVE, FOR ADVERSE-INFERENCE INSTRUCTIONS
4:22-md-03047-YGR; 4:23-cv-05448-YGR

64.     A true and correct copy, with redactions, of Mr. Bejar's Messenger conversation with a former Meta employee, from September 2014 to November 2023, which Mr. Bejar produced at BEJAR0004060, is attached hereto as **Exhibit 40.**

65.     A true and correct copy, with redactions, of Mr. Bejar's Messenger conversation with a Meta employee, which Mr. Bejar produced at BEJAR0002917, is attached hereto as **Exhibit 41.**

66.     A true and correct copy of relevant excerpts of Ms. Vaishnavi Jayakumar's deposition transcript is attached hereto as **Exhibit 44.**

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.  Executed on August 7, 2026.

By:     */s/ Ashley M. Simonsen*
        Ashley M. Simonsen

DECLARATION OF ASHLEY M. SIMONSEN IN SUPPORT OF META'S MOTION FOR SPOLIATION SANCTIONS PRECLUDING STATE AGS FROM CALLING THIRD-PARTY WITNESS ARTURO BEJAR AT TRIAL OR, IN THE ALTERNATIVE, FOR ADVERSE-INFERENCE INSTRUCTIONS
4:22-md-03047-YGR; 4:23-cv-05448-YGR