**Pages 1 - 105**

                  UNITED STATES DISTRICT COURT

                NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Yvonne Gonzalez Rogers, Judge

IN RE SOCIAL MEDIA ADOLESCENT  )
ADDICTION/PERSONAL INJURY      )
PRODUCTS LIABILITY LITIGATION. )
                               )    **NO. 4:22-md-03047-YGR**
                               )
_____)

                       Oakland, California
                       Friday, July 17, 2026

                  **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:
                    ANDRUS ANDERSON LLP
                    155 Montgomery Street - Suite 900
                    San Francisco, California  94104
              **BY:  JENNIE LEE ANDERSON, ATTORNEY AT LAW**

                    LIEFF, CABRASER, HEIMANN & BERNSTEIN LLP
                    275 Battery Street - 29th Floor
                    San Francisco, California  94111
              **BY:  LEXI J. HAZAM**
                    **ATTORNEY AT LAW**

            **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

STENOGRAPHICALLY REPORTED BY:
Kelly L. Shainline
CSR No. 13476, RPR, CRR
Official Reporter

corporate executives have a lot to say about documents that were prepared by underlings.  Were you made aware of this information that the underlings are discussing in here?  Was this consistent with your policy?  Is this something that you were aware of acting on or any policy bearing on?  So there's a lot of reasons to ask somebody who is not personally on the document about that document.  Particularly in a company as large as Meta with 100,000 employees, that's really important.

But the second issue is that we don't have a list of who else to ask it about.  Because they've only identified Meta, the company, as the custodian, and so our position is:  Well, if a custodian is the person who should be able to lay foundation, because they have only identified Meta Platforms, the company, as a custodian, then, therefore, by definition any employee of Meta should be able to lay the foundation for a business record or for an admission of party opponent.

**THE COURT:**  I see.

Response.

**MR. SCHMIDT:**  Yes, Your Honor, two responses.  I think two issues are being conflated here.  In terms of the Meta custodian documents, I will say right now if they give us a very targeted number, we will work with them to try to reach agreement on those.  The problem is we've had a very large number of them, and we don't think it's reasonable that we should have to do it for a large number that they're never

going to use.

There's a separate issue here, though, which is Your Honor responded to, which is the ability to use documents generally, more broadly with witnesses who don't know anything about them and --

**THE COURT:**  Well, we don't know if they know anything about them or not.

**MR. SCHMIDT:**  Yes.

**THE COURT:**  That was his point.

So, look, get your 300 documents and look at those, and don't waste my time and don't waste the jury's time.  If they're an internal document that many Meta employees have been editing or reviewing that came straight from Meta's Google Drive, I don't see how you can claim it's not a business record.  So I'll easily take care of that during trial.  I don't know that I need to do it, but I can easily do it.

If someone has -- if someone looks at a document and you show it to them -- and, by the way, remember, unless it's admitted, you don't show it -- I don't show it to the jury without my permission.  If someone looks at this and says, "I don't know what this is.  I've never seen it.  I have nothing to say about it," that's it.  It's done.  There's no questions that, you know -- well, maybe follow-up questions like, "How could you not have seen it?"  I don't know what you're going to ask.  But I guess I'll just have to take it on a case-by-case

basis if you can't resolve it.

But it just seems to me that if it's an internal document that is worked on by many people, it seems like it would fall within the business records exception of the hearsay rule as a business record.

**MR. SCHMIDT:** May I be heard briefly on this, Your Honor?

**THE COURT:** Okay.

**MR. SCHMIDT:** I don't expect we're going to have drop-dead disputes over business records. We may on some, but I don't think that's the issue. I think the issue is the admissibility.

And we have been guided by what Your Honor told us both here and in the lead up to Breathitt about needing witnesses for documents, about the parties working on exhibits, and about using that 8:00 a.m. session to avoid having to burden jury time with some of these issues.

And in that vein, we proposed something that is pretty standard that we did in Los Angeles with other plaintiffs' counsel where we would exchange exhibits -- the sponsoring party would exchange exhibits the night before. We would confer on objections. We would resolve most of the objections. We would take up issues in the morning. That worked extremely well in front of Judge Kuhl.

And they've refused to do that because I think they don't

want to tip their hand.  They think there's a strategic value there.

So we are trying to work with them on procedures that will streamline, but we will object to the suggestion, which I think Your Honor has already given us direction on and we're relying on that direction, that they can just put documents in front of the witnesses and move them into evidence without the witness knowing anything about it.

**THE COURT:**  Yeah, well, like I said, if they know nothing about it and there is no value, no probative value, it doesn't get admitted.

**MR. SCHMIDT:**  Yes.

**THE COURT:**  And you don't just throw documents into the trial record without a basis.  So there has to be some relevance.  There has to be some foundation.

Who is negotiating this issue?  Are you?

**MR. SLOTHOUBER:**  Myself and Mr. Kaufman primarily from our office and Mr. Schmidt and others from theirs.

So, Your Honor, I think one of the -- I think there's really two issues.  As to the timing issue, what we're trying to do is get Meta to agree to prereview these ahead of trial so that we're not doing --

**THE COURT:**  All 4,000?

**MR. SLOTHOUBER:**  No, no.  The current draft I think is in batches of 25.  So we're trying to work with very manageable

small batches.

THE COURT:  What does that mean?  20 batches of 25?  200 --

MR. SLOTHOUBER:  25 doc- -- sorry.

MR. SCHMIDT:  625, Your Honor.

THE COURT:  625?

MR. SLOTHOUBER:  So what Mr. Schmidt is doing is multiplying, I think, the number of days before trial times 25. Obviously we would not intend to swamp them with 625 exhibits. I'd be shocked if it was even more than 150.

But it's 25 at a time, which is what we've been trying to get them to review, and they've indicated that they're not willing to stipulate to the admissibility of anything unless we tie it to a specific witness and they want that to come in ahead of time.

Our position, I think this is very well supported in the Ninth Circuit case law, is that a corporate executive can admit a document that they've never seen as long as they can lay either the business records or the admission of party opponent foundation to get past the hearsay.  Then the document is in evidence and then the question just becomes an objection about trial testimony.

If your -- what your --

THE COURT:  It is -- so I agree that it is admissible. It is admissible.  That is different than whether it is

admitted.  The tense matters.  You don't get to throw documents into evidence for which there is no evidentiary record as to its probative value.

MR. SLOTHOUBER:  Completely understand, Your Honor.

And so just to give you an example of what I'm talking about as where I think our disagreement comes from --

THE COURT:  So, look, it seems to me that there should be no problem from Meta's perspective to stipulate as to authenticity.

MR. SCHMIDT:  Correct.

THE COURT:  If it's authentic, that's half the battle.

MR. SLOTHOUBER:  I think we do have agreement on that. I think it's just --

THE COURT:  Okay.

MR. SLOTHOUBER:  -- the next stage.  Is it a business record?  Is it a --

THE COURT:  And if it is a business record, again, if the form of the business practice was that five people would work on this as part of a, you know, iterative writing in terms of slide decks or whatever it is, then it seems to me it falls within the business records exception to the hearsay rule. That means that it is -- that it is potentially admissible as a business record.

But if you provide that business record to five people who can say nothing about it, I will not admit it because it has no

probative value whether or not it's a business record.  There is a difference.

It can be admitted because it's a business record but whether it is, in fact, admitted is a question for trial.  Do you understand the difference?

MR. SLOTHOUBER:  I do, and I want to make sure I understand it exactly.

So if we have an internal Meta slide deck, the only custodian on it is Meta Platforms.  So we don't know who actually wrote it, we don't know who edited it because they're refusing to provide that information.  That's what we moved to compel on.

I want to show that to somebody like Mr. Mosseri or Mr. Zuckerberg, and I want to say:  Look at this research report that your people prepared.  Did they tell you about it before you made this public statement, which we believe misrepresents the facts as are laid out in this document?

We want to ask questions like:  Would this approach in this document be consistent with Meta's policy?  Is this the kind of thing you did frequently?

So even if the witness eschews knowledge of this specific document, they can offer probative testimony about the issues in the document.

THE COURT:  You can also ask the questions.  I mean, I can't tell you what the answer is going to be as to whether or

not it's admitted.  And I think you do -- right?  It sounds like you need an issue from Magistrate Judge Kang:  Why don't we have custodians?  Why haven't the custodians for these documents been produced?  It absolutely matters.  If the head of some group that reports to Zuckerberg every month is one of the authors, that matters.

**MS. SIMONSEN:**  Your Honor, these documents have metadata that includes the author.  They are noncustodial documents.  That is why the custodian who is specified is Meta Platforms, and I can cite you to the various authorities that make clear that that's proper.

We entered an ESI protocol three years ago where the parties agreed to the metadata fields that would be produced.  We've  always produced those metadata fields.  They include the author.  Also, on the face of these documents plaintiffs can tell who was working on them.

And that is why the other plaintiffs in this litigation have been able to go into depositions with these documents, figure out from things like the file path knowing which research team, for instance, might have worked on it, who to ask about the documents so they know who they can lay the foundation with to get them admitted.

**THE COURT:**  So do they have the list of people who edited or just one author?

**MS. SIMONSEN:**  They have an author but, Your Honor,

## CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:    Monday, July 20, 2026

_____

Kelly Shainline, CSR No. 13476, RPR, CRR
U.S. Court Reporter