THE COURT:  Pistilli?

MS. SIMONSEN:  Pistilli, P-i-s-t-i-l-l-i.

MR. WEINKOWITZ:  And, Your Honor, for the plaintiffs that will be Sarah Emery, E-m-e-r-y.

And, Your Honor, just to let you know, we have all of the district lawyers here, individual lawyers that can address specific case law questions you may have, or if you need to go deep into the facts, they're here.

THE COURT:  Okay.  Do I have someone from the Kentucky Attorney General's office?

MR. RICHARDS:  Good morning, Your Honor.  Zachary Richards on behalf of the Commonwealth.

THE COURT:  And Mr. Richards, I do want -- someone's got to make some room for him, because I am going to have questions for him about the state of Kentucky law.  I don't know if you had planned on coming, but I appreciate you coming.

I think it is important that when we have these MDLs and the specific law of a specific state is at issue and that state happens to be involved in the litigation, that someone come from that state who has an obligation to the courts, and to the extent there's disagreement, provide us with your perspective.  So I appreciate you coming even if it was last minute.  Like I said, I don't know if you got a lot of snow, but we have no snow here.

MR. RICHARDS:  A lot of ice, a lot of ice.  Not much

snow, but a lot of ice.

And thank you, Your Honor.

**THE COURT:**  Thank you.

All right.  So let's get started, Mr. Blavin, Mr. Mura.

**MR. BLAVIN:**  Good morning, Your Honor.  Jonathan Blavin from Munger, Tolles and Olson on behalf of the defendant Snap and speaking on behalf of all defendants.

**THE COURT:**  You are going to have to speak into the microphone in order for you to be heard by the court reporter.

**MR. BLAVIN:**  Will do, Your Honor.  And I -- with the Court's permission, I also have a small number of slides to present.

**THE COURT:**  Okay.

**MR. MURA:**  Good morning, Your Honor.  Andre Mura for the plaintiffs.

**THE COURT:**  All right.  It's your motion, Mr. Blavin. Proceed.

**MR. BLAVIN:**  From the outset, the Court recognized that this case turns on what conduct is and is not actionable, and the Court dove into that question at the motion to dismiss stage and answered it in a series of orders that clearly laid out the boundaries of what conduct is at issue.

The Court held that Section 230 and the First Amendment imposed significant limitation on plaintiffs' theories of recovery by barring liability for third-party content and

protected publishing activities, and the Court implemented those significant limitations through a detailed feature-by-feature analysis.  The Court held that a number of features such as infinite scroll, notifications, recommendation algorithms are protected and are no longer part of this case. And the Court's rulings require that plaintiffs show that defendants' actionable conduct independently caused the alleged harms.

Indeed, as the Ninth Circuit's recent decision in *Doe versus Grindr* made clear, plaintiffs can only seek to impose liability for conduct that is independent of the defendants' role as a publisher of third-party content, and plaintiffs have ignored the Court's directives at each step of this case.

First, they lack any competent record evidence of actionable conduct to support specific causation for the school district cases; and, second, they lack any expert testimony that analyzes the causal impact of defendants' actionable conduct independently of their protected publishing activities, and each of these bases warrants summary judgment in this case.

**THE COURT:**  Response.

**MR. MURA:**  Your Honor, plaintiffs have a live failure to warn claim and the state attorney generals have a live deception claim, and those claims, the Court said, bring in the entire platform as a whole.

**THE COURT:**  I did not say that.

**MR. MURA:**  The Court's statement I'm referring --

**THE COURT:**  You're taking one sentence out of a quite huge order to make that argument.

**MR. MURA:**  Well, what Your Honor said about failure to warn and deception was that:  "Theories of failure to warn of the known risks of addiction attendant to any platform features or to the platform construction in general."

**THE COURT:**  I didn't say that.

**MR. MURA:**  That's ECF 1267, at 14, Your Honor.

And so from our perspective based on our understanding of how failure to warn --

**THE COURT:**  So you have misinterpreted my order.

I said, and I quote:  "Next, and consistent with the Court's order on the state AGs' claims, the Court declines at this stage to dismiss any theories of failure to warn of known risks of addiction attendant to any platform, features, or as to platform construction in general."  That was a pretty generic statement after a lengthy statement on what is protected and what is not.

So if I don't agree with you should I grant summary judgment?

**MR. MURA:**  No, Your Honor.

**THE COURT:**  Why?

**MR. MURA:**  Because we disagree also on the facts that the experts did not consider the attendant features that the

here -- you asked earlier about injunctive relief.  The solution here could just be the warning, right?  They put up the warning saying, warning this is addictive -- and we have a warnings expert that fleshes that out a bit more, so I'm being a little bit abbreviated.  They do that, they've satisfied the duty, and then whatever content they want up or not up, it is what it is.  But the *HomeAway* test makes pretty clear that it's really about what the duty requires and how you solve it.

So, you know, it's not -- we're not trying to find some backdoor to talk about bad content.  We're trying to apply the law and we're trying to solve the problem our plaintiffs are facing, which is -- and to go to the statute of limitations point, nobody was on warning.  I mean, to this day the defendants insist their platforms aren't addictive and can't cause harm.  They got close to saying that about an hour ago.  They have not acknowledged that publicly.  They contest the studies that come out, they insist and deny and deflect about any sort of general causation issues.  They're doing that in this litigation.  So how's the public supposed to know, right, come they're getting these conflicting signals and there's no clear acknowledgment from the defendants about this?  That's ultimately what our warning claim is about.

We're not gonna sit here and play a bunch of risque photos and videos and try to shock the jury.  That's just not what we're trying to accomplish.

**MR. BLAVIN:**  Your Honor, may I respond very briefly?

I'll just say that with respect to *Calise* it didn't even deal with a failure to warn claim.  The discussion that Mr. Warren is discussing is complete dicta, and *Bride versus Yolo* and *Doe versus Grindr* control on this point.

And just more broadly, I think we do have very legitimate concerns that what they are trying to do at this trial is bring in conduct and content which this Court has held is protected by Section 230 or the First Amendment.  I mean, even the example they gave earlier today with respect to streaks, Your Honor has held that streaks are types of rewards and notifications which are protected by the First Amendment.  So they're trying to bring into this case a whole suite of activity which we think is protected by law, and we have very, very serious concerns that if that content comes in, that if that protected publishing activity comes in, it's going to invite the jury to impose liability in which there is both statutory immunity and constitutional protection.

**THE COURT:**  This goes back to my concern.

You know, your concerns, I mean, you would have brought this motion anyway, but you have concerns about the overbreadth and you want me to through the entire thing out.  My view's different.  My view is that's not my job.  My job is to say, no, denied, and figure out how to cabin it so that the appropriate case can be tried, and that's not gonna happen two

weeks before trial.

**MR. BLAVIN:** We agree, Your Honor, that these are core foundational legal questions that, if the case is moving forward to trial, should -- the Court should consider them and figure out what this trial is going to look like. And if that means that the parties need to do supplemental briefing on certain issues defendants are certainly happy to do that, but at least the position that plaintiffs are espousing with respect to the breadth of their failure to warn claim and what they're really trying to do, Your Honor, is say that list of protected features, we can introduce all the evidence we want about that, which really is foundational to their general causation opinions, their specific causation opinions, because of their failure to warn claim, and we think that creates a gigantic loophole in the Court's order. I don't think the Court intended that in its order, and it's also flatly inconsistent with Ninth Circuit law at this point.

**MR. WARREN:** Your Honor, it is what the defendants understood Your Honor to mean. That's why they wrote that in their briefing to the Ninth Circuit, and frankly that's why they took an appeal to the Ninth Circuit. They wouldn't have bothered if they thought Your Honor held --

**THE COURT:** I don't know that that's true that they wouldn't have bothered.

**MR. WARREN:** Well, mean, if the failure to -- no, I

mean it sincerely.  If the failure to warn ruling was truly cabined just to the features that plaintiffs could bring design defect claims on, I don't think there would have been a reason to bother appealing, because the scope of the case would have remained exactly where it was.  Their concern is exactly the concern Mr. Blavin is expressing now, that somehow this is a loophole.

Now, I guess my point is it's ultimately rhetorical.  We don't see it as a loophole, we see it as a legitimate basis for liability that's not protected by Section 230.  Does it bring in some of the conduct that, you know, would be off limits for a design defect claims?  Yes.  Is that okay?  Yes.  That's because of what *Calise* says.

Again, the jury may hear evidence about infinite scroll, but the jury's not going to be assigning liability to defendants because infinite scroll is bad, they're going to be assigning liability to defendants because they didn't warn anybody that the features and the platform as a whole were addictive.  That's the duty that was breached.  And that's not a loophole, that's a very important legal distinction that allows us to litigate this case the way it should be litigated.

And that's why we have the evidence we do in the brief, Your Honor.  I would not take the number of exhibits -- which, again, mea culpa on that -- as a sign of overbreadth in terms of Section 230.  That's not what it was.  It was our effort to