CONFIDENTIAL

Page 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: SOCIAL MEDIA            )
ADOLESCENT ADDICTION/          )
PERSONAL INJURY PRODUCTS       )   MDL No. 3047
LIABILITY LITIGATION           )
                               )
                               )


 SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE
   COUNTY OF LOS ANGELES - SPRING STREET COURTHOUSE

COORDINATION PROCEEDING      )
SPECIAL TITLE [RULE 3.400]   )
                             )
SOCIAL MEDIA CASES           )   Lead Case No.
_____ )   22STCV21355
This Document Relates To     )
                             )
STATE OF TENNESSEE, ex rel.  )
JONATHAN SKRMETTI,           )
ATTORNEY GENERAL and         )
REPORTER,                    )
v.                           )
META PLATFORMS, INC., and    )
INSTAGRAM, LLC.              )
_____ )

CONFIDENTIAL - ATTORNEYS' EYES ONLY
PURSUANT TO PROTECTIVE ORDER
VOLUME 1
VIDEO-RECORDED
DEPOSITION OF SHAYLI JIMENEZ
(Pages 1 - 356)
Covington & Burling
415 Mission Street, San Francisco, California
Tuesday, February 11, 2025, 9:12 a.m.
- - - -
REPORTED BY:  ELAINA BULDA-JONES, CSR 11720

Page 263

Q.   And the next clause -- okay.  And you, after drafting the teen fundamentals -- well, let me ask you this.

Do you see a reference to AI, a reliance on AI, "we cannot currently control for when content is being strategically leveraged."

Do you see that?

A.   Yes.

Q.   In the context of this, is it your understanding that that is a reference to the recommendation algorithm that Meta uses to deliver content to users?

MS. BARNHART:  Object to the form. Foundation.

THE WITNESS:  I honestly don't know what that is.

BY MR. PHELPS:

Q.   Okay.  But in any event, you are not aware that the company used -- warned users that its product triggered dopamine responses, right?

A.   I don't know.

Q.   Okay.  You're not aware that they did so, correct?

A.   I don't know if they did or did not.

Q.   Okay.  But after drafting the teen

CONFIDENTIAL

Page 264

fundamentals presentation a couple months after that, you believed that Instagram was a drug, right?

MS. BARNHART:  Object to the form.

THE WITNESS:  I don't believe Instagram is a drug.

BY MR. PHELPS:

Q.  But do you remember saying that a couple months after drafting the teen fundamentals project?

A.  I remember saying that sarcastically in a Chat.

Q.  Okay.  Is that an issue you take lightly?

A.  What?

Q.  The concept of problematic use that users might experience on Instagram, that a dependency that users might develop on Instagram?

MS. BARNHART:  Objection to the characterization and form.

THE WITNESS:  I don't take any -- any risks or issues like that lightly.

BY MR. PHELPS:

Q.  Okay.

A.  No.

Q.  Okay.  So discussions of that issue of problematic use and users' ability to control their time on Instagram, you would agree that those are

CONFIDENTIAL

Page 265

serious issues, right?

MS. BARNHART:  Object to the form.

THE WITNESS:  Serious issues -- what do you mean by that?

BY MR. PHELPS:

Q.  What does that phrase mean to you?

A.  Well, serious issues to me are ones that would result in physical harm or endangering somebody's safety.

Q.  Okay.  And if those issues were playing out on Instagram or Instagram was contributing to those issues, you would agree that that is serious -- that is serious, right?

A.  Of course.

Q.  Let's take a look at Tab L.

You would agree that discussions of drugs in the context of Instagram, that's a serious comparison, right?

MS. BARNHART:  Object to the form.

THE WITNESS:  Well, if you are referring to the time that I am admitting that I made that comparison in that Chat, that was a, you know, a private Chat, casual thread, and speaking off the cuff.

///

CONFIDENTIAL

Page 276

our users.

Q.   But in the context -- you are saying in this casual Chat you said, quote [as read]:

We are causing reward deficit disorder because people are binging on IG so much they can't feel reward anymore.

And you are -- your testimony is that is just a casual statement?

A.   There is a shared context amongst us researchers in this Chat.  Believe it or not, we throw around hypotheses, frameworks, and things like this on a pretty normal, regular basis to spark conversation, to provoke thought, to inform new hypotheses and the like.  So this is not to imply that this is a real thing.  This is a casual conversation amongst us researchers, who -- like I said, this is contextual to another conversation that we had had before.

Q.   Okay.  And do you see the word "hypothesis" anywhere in this Chat?

A.   It's not in this Chat, but, like I said, there is a shared context and a shared understanding among researchers.  These are all researchers in this conversation.

Q.   Okay.  And so a hypothesis that you are

CONFIDENTIAL

Page 277

throwing out there for discussion is that IG is a drug?  That's your testimony?

A.   No.

Q.   What did you mean when you said "IG is a drug"?

A.   When I said, "Oh, my gosh, y'all, IG is a drug," it's -- you see I started the conversation. It's to grab their attention.  It's a joke.

Q.   You thought this concept that IG was a drug was a joke?

A.   In this context, shared between myself and other researchers, it's a hyperbole for some problems that we were discussing around needing to possibly increase the value that users were getting from Instagram.

Q.   Okay.  And you say, you followup, the next thing you say after IG is a drug is "seriously, it is," exclamation mark, right?

A.   Yes.

Q.   And you don't say JK, LOL, right?

A.   I don't need to say JK, LOL.  As you can see, Ebo said LOL and made another hyperbolic statement.  So it's implied.

Q.   Okay.  Either way, you put this -- as part of this lighthearted conversation, you put in a

CONFIDENTIAL

Page 278

schematic about addiction that originated from an academic article analyzing alcohol addiction, right?

MS. BARNHART:  Object to the characterization.

THE WITNESS:  I -- like I mentioned, I never saw that article.  So where it came from, that is irrelevant to this conversation.  And as I mentioned before, this type of Chat amongst researchers is very, very common in the sense of sharing things we find, sparking ideas, and conversation around it.

BY MR. PHELPS:

Q.  Okay.  And was -- was your decision to share this schematic, was that a -- kind of a continuation of the joke?

MS. BARNHART:  Object to the form.  Characterization.

THE WITNESS:  In a way.  It's to continue the thought, but the conversation -- it's not that the whole conversation is a joke, but it is a casual conversation amongst researchers exchanging ideas and hypotheses.

BY MR. PHELPS:

Q.  I want to make sure I understand, because you said -- I'm looking at your testimony.  You

CONFIDENTIAL

Page 279

said, "When I said, oh, my gosh, y'all, IG is a drug, I started the conversation to grab their attention.  It's a joke."

So the first sentence is a joke, right?

A.    The first sentence is a conversation starter.

Q.    It's not a joke or it is?

A.    It's -- depends on how you define a joke. The way that I'm defining a joke is saying something exaggerated, something that is going to catch their attention.

Q.    Okay.  Well, you testified that that sentence was a joke.

So how did you mean that?

A.    Like I just said, it's an exaggeration. It's a hyperbole.  It's a joke in that it's an exaggerated statement to catch their attention.

Q.    Okay.  When you say " seriously, it is!" is that still part of the joke?

A.    That is still part of the way that we converse in the sense of exaggeration or exclamation.

Q.    So it is part of the joke still?

MS. BARNHART:  Object to the characterization.  Asked and answered many, many,

CONFIDENTIAL

Page 280

many times.

BY MR. PHELPS:

Q.    Okay.   Let's go to the next.   You say [as read]:

We are causing reward deficit disorder because people are binging on IG so much that they can't feel reward anymore, like their reward tolerance is so high.

Is that statement serious or is that statement a joke?

A.    That statement is not a fact or anything researcher-based.   It's a hypothesis I'm throwing out there as a follow-on to the joke, jokingly, but something to share, to share with my like-minded research colleagues.   These are things that we exchanged amongst -- exchange among each other often, our frameworks and different artifacts.

Q.    Okay.   And so -- when you share this image, is this image, to your mind, a continuation of the joke or is this serious?

MS. BARNHART:   Object to the form.

THE WITNESS:   In the context of this Chat, it is additional -- additional content for the conversation that we're having.

///

CONFIDENTIAL

Do you see that?

A.   Yes.

Q.   And then you pull up -- you insert another image, right?

A.   Yes.

MR. PHELPS:  And why don't we do a dual screen, Jim, with that second image in the Chat. And you could put a red box around the second dot PNG file.

Q.   And this is an image titled "The Hook Model."

Do you see that?

A.   Yes.

Q.   And we had talked before the break that this Chat was sort of -- the context of the Chat was that it was sort of hyperbole or hypothesis, somewhat jokey.  And just for me to continue to be properly oriented, when you inserted this image of the hook model, you know, are -- is this your attempt at humor or are you making sort of a serious contribution to this discussion?

Help me understand that.

MS. BARNHART:  Object to the form. Characterization.

THE WITNESS:  I'm adding more content to

CONFIDENTIAL

the conversation.

BY MR. PHELPS:

Q.   And is this -- was this a serious contribution to this conversation or was this sort of in jest?

A.   Well, this whole conversation is kind of jokey, like you said.  And -- but it's also, you know, it is -- we're talking shop, basically, as researchers and, you know, sharing ideas.  And this is another sort of -- in the same spirit of the last diagram, just a -- another sort of, like, framework that we're -- that I'm sharing with them.

Q.   And just to be clear, I didn't -- I wasn't the one who initially said "jokey," I think you were the one who used that word to describe this Chat, right?

A.   I described this --

MS. BARNHART:  Object to the characterization.

THE WITNESS:  Yeah.  I described this Chat as a casual Chat between me and my fellow researcher colleagues that is pretty typical of how we exchange ideas and share information because we have a shared context and shared understanding, so...

///

Page 292

BY MR. PHELPS:

Q. Uh-huh. And you would agree that, though, the discussion -- I think we established -- this is -- you're discussing serious topics, right?

A. I'm not discussing drug addiction or any particular, like, proven harmful thing in particular. It's more of -- this is a comparison. It's a hypothesis or an exchange of ideas. It's not that we're discussing something serious.

Q. You don't think that this is a serious discussion?

MS. BARNHART: Object to the form.

THE WITNESS: It just depends on what you mean by "serious."

BY MR. PHELPS:

Q. Okay.

A. Do I think it's serious in that I really think that Instagram is a drug, no. As I said, that is, you know, an exaggeration or hyperbole. These frameworks that I'm sharing are ideas that I am -- that support, you know -- they are content that supports the ideas that -- that we're discussing, but they are not to be taken literally.

Q. In any event -- and I think you testified that you understood addiction to be a serious

CONFIDENTIAL

Page 356

STATE OF CALIFORNIA  )

COUNTY OF YOLO        )

        I, ELAINA BULDA-JONES, a Certified Shorthand Reporter of the State of California, duly authorized to administer oaths pursuant to Section 2025 of the California Code of Civil Procedure, do hereby certify that

                        SHAYLI JIMENEZ,

the witness in the foregoing deposition, was by me duly sworn to testify the truth, the whole truth and nothing but the truth in the within-entitled cause; that said testimony of said witness was reported by me, a disinterested person, and was thereafter transcribed under my direction into typewriting and is a true and correct transcription of said proceedings.

        I further certify that I am not of counsel or attorney for either or any of the parties in the foregoing deposition and caption named, nor in any way interested in the outcome of the cause named in said deposition dated the  _____ day of _____, 2025.

ELAINA BULDA-JONES, CSR 11720