[*Submitting Counsel on Signature Page*]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>*People of the State of California, et al. v. Meta Platforms, Inc., et al.* | MDL No. 3047<br><br>Case No.: 4:22-md-03047-YGR-PHK<br>　　　　　4:23-cv-05448-YGR<br><br>**JOINT LETTER BRIEF REGARDING TRIAL PROTOCOL**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang<br><br>Date: August 13, 2026<br>Time: 1:00 PM<br>Place: Courtroom 1, 4th Floor |

Dear Judge Gonzalez Rogers:

The State Attorneys General ("State AGs") and Defendant Meta Platforms ("Meta") (together the "Parties"), respectfully submit this letter brief regarding the Parties' outstanding disputes relating to a Trial Protocol. The Parties have been actively conferring via videoconference and email since July 1st regarding a trial protocol and have reached substantial agreement on most issues. There are a small number of issues on which the parties cannot agree, which are outlined in this letter brief. Attached hereto is the draft protocol, which the parties request the court to enter subject to the disputes identified. For each dispute, the language that the State AGs suggest and to which Meta objects language is highlighted in blue, and language Meta suggests and to which the AGs object is highlighted in yellow.

**JOINT** LETTER BRIEF REGARDING TRIAL PROTOCOL
4:22-md-03047-YGR

**State AGs' Position:**

Meta seeks to avoid meaningful pretrial review of key exhibits as directed by the Court's Standing Order Re: Pretrial Instructions in Civil Cases ("Pretrial Standing Order"), and instead largely shift that review and conferrals to 12 hours before a sponsoring witness takes the stand, thereby wasting time and resources, as well as seeking a tactical advantage by using a preview into the State AGs' examination to prepare witnesses. Similarly, Meta improperly seeks to facilitate lawyer guidance of witnesses while on the stand, by seeking leave to communicate with Meta affiliated witnesses at breaks during Meta's examination. Witnesses should not be coached at all while on the stand. The AGs request that the Court adopt their suggested version of the Trial Protocol to allow for greater efficiency, fairness and truth seeking.

**A.  Trial Protocol Paragraphs I.G.2 and 6.d and III.A:** Meta's proposals in Paragraph I.G.2. violates the Court's clear directive in Paragraph 6(e) of the Pretrial Standing Order. Meta's position that it cannot stipulate to the foundation and admissibility of documents before trial defies the Court's order and is a delay tactic. Meta also seeks to parse pretrial review for admissibility stipulations only as to Fed. R. Evid. ("FRE") 801(d)(2) and 803(6) and (8); ignoring potential stipulations based on FRE 803(5), 803(17), and 803(18).  Further, straightforward admissibility stipulations can be agreed upon as to many exhibits not offered for the truth, such as to prove only what Meta disclosed to the public. *See U.S. v. Arteaga*, 117 F.3d 388, 395 (9th Cir. 1997). In addition to advocating for incomplete disclosures of evidence stipulations, Meta also seeks to create inappropriate disputes relating to sponsoring witnesses, that Meta cabins as a document foundation issue. In most instances, the sponsoring witness will be clear, based upon custodians, authors, editors, and viewers of the statements and documents, as well as the knowledge of witnesses about the subject of the exhibit or the declarant in the exhibit. Further, Meta's standardized processes for creating business records for collaborating and sharing information within the enterprise, that many witnesses can establish, should apply to overcome hearsay objections as to numerous exhibits that both sides will seek to offer into evidence.

While the State AGs do not object to "night before" admissibility review of the opposing party's exhibits at Paragraph I.G.6.d and presentation to the Court at Paragraph III.A to address unresolved disputes, Meta seeks to delay admissibility stipulations until the night before exchange, creating

inefficiency. The Court's Pretrial Standing Order at ¶ 6.e, requires earlier efforts to resolve admissibility disputes. Most exhibits are not surprises and can be evaluated pretrial as they have been offered in motion practice or in other cases against Meta. Admissibility review during the trial should not be forced exclusively into the night before an exhibit is offered.  Just as the parties did in *Musk v. Altman*, the Parties should endeavor in good faith to stipulate to the admissibility of documents and include all current objections in their exhibit lists to promote efficiency at trial. *See* 4:24-cv-04722-YGR at ECF No. 440.

Notably, Meta's rejection of the State AGs' proposed language at Paragraph I.G.6.d.5, preventing an adverse party from using exhibits identified for evidence review in advance of testimony to prepare or inform the witness for anticipated examination demonstrates that Meta seeks a tactical advantage, rather than efficiency. The Court should adopt the State AGs' proposed language.

**B. Trial Protocol Paragraph I.A.2.b**: Meta refuses to agree that its lawyers will not communicate with their own witnesses about the substance of their testimony or the trial during direct or re-direct examination. Meta wants to limit any restriction on communication to when their witness is being examined by the other party. An order preventing all counsel from conferring with witnesses about the substance of their testimony or the trial during all examinations will best lead to the discovery of the truth and avoid any risks of inadvertent counseling or access to other information about the trial that excluded witnesses should not receive. *See* Pretrial Order No. 2, ECF No. 384 at 2 ("The Court hereby orders that: (a) witnesses shall be excluded until testimony is completed"). The Court may order this relief as part of its authority to exercise reasonable control over the mode of examining witnesses in order to "make those procedures effective for determining the truth." FRE. 611(a). The restriction the State AGs seek is permissible, even in criminal cases where there are countervailing constitutional protections, including the right to effective assistance of counsel. *See Villareal v. Texas*, 607 U.S. 465 475 (2026) (Upholding lower court's instruction to attorneys not to manage defendant's testimony during a 24-hour overnight recess during his direct examination). It is even more appropriate here where the witnesses at issue are not defendants and no Sixth Amendment concerns attach. Preventing witnesses from conferring with their counsel while on the stand is "more likely to lead to the discovery of the truth," and is a corollary to

witness sequestration rules like the one adopted in this case. *Id*. at 476. The Court should adopt the State AGs' proposed language to best ensure the discovery of truth at trial.

**State AGs' Response Position:**

Meta seeks to draw too narrow of a line relating to the personal knowledge required of witnesses to overcome hearsay objections to documents. In the Ninth Circuit, witnesses may lay the foundation for documents they have not seen before under various circumstances. FRE 801(d)(2) admissions enjoy "freedom … from technical demands of searching for an assurance of trustworthiness . . . and the rule requiring firsthand knowledge." *See* Fed. R. Evid. 801 advisory committee note to 1972 proposed rules. A witness need not have "seen the challenged exhibits (emails and documents alike) before his testimony was used as the basis for their admission under Rule 801(d)(2)(D),… [and would] know that, for example, the author of an email was a … [company] employee at the time the statement was made or that the logo on a slideshow presentation belonged to … [the company]." *United States v. P. Gas and Electric Co.*, 2016 WL 3903384, at *3–6 (N.D. Cal. July 19, 2016); *see also Sea-Land Serv., Inc. v. Lozen Intern., LLC.*, 285 F.3d 808, 821–22 (9th Cir. 2002) (holding internal email admissible under Rule 801(d)(2)(D) where the author's electronic signature identified him and his position, record evidence confirmed his employment, and the email concerned a matter within the scope of that employment). And an employee's statement may concern a matter within the scope of employment even if the employee is no longer involved with that particular matter when the statement is made, so long as the employee was involved with the matter at some earlier point during the employment. *Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 999 (9th Cir. 2019).

Similarly, as the Ninth Circuit has held:

> The foundation requirement for Rule 803(6) may be satisfied by the testimony of anyone who is familiar with the manner in which the document was prepared, even if he lacks firsthand knowledge of the matter reported, and even if he did not himself either prepare the record or even observe its preparation. Indeed, we have previously noted that "it is not even necessary that a sponsoring witness be employed by the business at the time of the making of each record.... Objections, relating to the identity or competency of the actual preparer, may be relevant to the evidentiary weight or credibility of the documents, but do not affect their admissibility."

*Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 514 (9th Cir. 1989), *as amended on denial of reh'g and reh'g en banc* (Sept. 19, 1989) (citation modified for readability).

The overnight disclosure of witness specific exhibits and demonstratives for admissibility review should not be used by Meta to coach its affiliated witnesses. Because this is a government enforcement action, much of Meta's case will come through cross examination of witnesses offered by the AGs. Indeed, the AGs will call a number Meta employees in their case and the draft Trial Protocol provides that Meta's examination of these witnesses may go beyond the scope of direct. *See* ¶ I.G.6.f. While parties are free to use their knowledge of the case and exhibits to prepare their witnesses for examination, they should not game the system by using documents disclosed to resolve evidence disputes to their tactical advantage, and the Court should adopt the AGs' suggested ¶ I.G.6.d.5. The case *In re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. 614, 621 (D. Nev. 1998), cited by Meta, deals with deposition protocols, has no application to the issue of using disclosed documents, and fails to address the issues raised by the AGs regarding conferring with witnesses while on the stand in Trial Protocol ¶ I.A.2.b. Meta's counsel is well able to distinguish between documents they identified on their own to prepare a witness and documents identified by the AGs as part of the in-trial admissibility exchange. Counsel should not use the latter to prepare their witnesses.

**Meta's Position:**

*Consultation with witnesses (Section I.A.2.b)*.  As is common practice, Meta proposes the Parties be permitted to consult with their witnesses while the witness is on friendly examination (*e.g.*, a current Meta employee who Meta produced, while being examined by Meta's counsel).[1]  Indeed, the Court has recognized this as standard.  *See* Mar. 18, 2026 Hr'g Tr. at 32:5–6 ("[The Court: I]f you've got a witness on the stand, and it's your direct, during a break, I let you talk to the witness."); *see also In re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. 614, 621 (D. Nev. 1998) ("This Court is not aware of any cases, at least in the Ninth Circuit, which precludes counsel from speaking to his or her client/witness during recesses called by the court during trial.").  Allowing the Parties to communicate with their witnesses during their own examinations will increase efficiency and streamline the presentation of evidence.

*Language regarding exhibit stipulations (Section I.G.2)*.  Meta believes it is appropriate for the Parties to recognize, consistent with this Court's guidance, that "whether a document is ultimately admitted into evidence will depend on how it is used at trial, including whether it is used with a witness who can provide foundation for it."  The State AGs' objection to that language is baseless.  This Court has made clear that regardless of whatever stipulations the Parties reach, an exhibit will not be admitted without percipient witness testimony.  *See, e.g.*, July 17, 2026 Tr. at 58:17–20 ("[I]f someone looks at a document and says, 'I don't know what this is. I've never seen it. I have nothing to say about it,' that's it. It's done."); *id.* at 62:25–63:5 ("[I]f you provide that business record to five people who can say nothing about it, I will not admit it because it has no probative value whether or not it's a business record.  There is a difference."); *see also id.* at 61:24–62:3 (noting that whether an exhibit is "admissible" "is different than whether it is admitted").  In addition, Meta also believes that pre-trial stipulations are most readily reached as to the "hearsay status" of a document than as to "foundation."  The State AGs have disclosed numerous sponsoring witnesses for many exhibits, some but not all of whom appear to have foundation to testify about certain documents.  Only when Meta knows which witness the State AGs seek to admit a document through will Meta know that it can stipulate to foundation for that document.

---

[1] The Parties have agreed, in accordance with the Court's guidance, that they may not consult with friendly witnesses while those witnesses are being cross-examined by the other side.  *See* Mar. 18, 2026 Hr'g Tr. at 32:6–8 ("[The Court:] If [the witness is] in the middle of cross . . . you can't talk to them.").

*Use of pre-identified exhibits (Section I.G.6.d.5)*. In addition to objecting to mandatory nightly exhibit disclosures generally, the State AGs also insist that no pre-identified exhibits be "used by the adverse party to prepare or inform the witness." Meta has already agreed that neither side shall inform a witness that a given exhibit was identified by the opposing party in the nightly disclosure. But the State AGs overreach. The State AGs' proposal would go so far as to bar Meta from using a document it identified weeks earlier as relevant to preparation efforts merely because the State AGs' disclosed the same document for use. As this Court has recognized, the universe of "core" documents is well-established and well-known by both sides by this point in a litigation of this nature. *See* July 17, 2026 Hr'g Tr. at 17:4–8. The Parties have already exchanged priority exhibits, further narrowing the set of core documents likely to be used at trial. When Meta's counsel sought to clarify during a conferral whether the State AGs' position would require counsel to abruptly halt discussion on a document if a disclosure of that document occurred in the midst of an ongoing prep session, the State AGs quite remarkably confirmed that that was their position. The State AGs' proposal raises serious concerns about administrability and interference with the attorney-client relationship. Any attempt to enforce the State AGs' provision would require intruding on privileged witness-preparation sessions. Adopting the State AGs' language would also substantially interfere with Meta's "right to prepare a witness." *See In re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. at 621. Meta should not be barred from discussing whatever documents it chooses with its witnesses because the State AGs have identified the document for use at trial. Indeed, the State AGs' proposal could incentivize over-disclosure of trial exhibits in an attempt to interfere with preparation.

**Meta's Reply**

The AGs' position statement ignores that Meta has already provided its objections across a variety of evidentiary rules—including Rules 403, 602, and 803(5), among others—to the AGs. Meta provided those objections as to the first half of the AGs' priority exhibit list on Friday, August 7th (even while the AGs were disclosing changes to that list on August 7th), and will provide the rest of its objections to the AGs' priority exhibits by August 14th. It is simply incorrect that Meta is suggesting that all exhibit objections should wait to be raised as part of the nightly disclosure process. But Meta will not stipulate to "ultimate admissibility" of documents before trial given this Court's clear guidance that whether an

exhibit is "admissible" "is different than whether it is admitted," *see* July 17, 2026 Tr. at 61:24–62:3. While the AGs suggest that Meta should be able to stipulate use of exhibits that the AGs do not plan to offer for the truth, the AGs have not told Meta which exhibits those are. As Meta told the AGs in serving its August 7th objections, Meta must preserve hearsay objections unless the AGs identify documents they would stipulate to use only for non-truth purposes. They have not done so, so Meta must preserve its objections. On the issue of foundation for a witness to testify to a document, this Court has already rejected the claim that the presence of a document in Meta's files (where many employees may have had access without actually accessing the document) overcomes the need for a witness with relevant knowledge to talk about it, *see* Mar. 18, 2026 Hr'g Tr. at 32:5–6. The AGs and Meta are in agreement on a mandatory nightly disclosure of all exhibits either party seeks to admit into evidence through the next day's witnesses, which will facilitate close-in-time conferrals about exhibits sought to be admitted with each witness, including based upon guidance from the Court. Meta anticipates that the night-before disclosure process will result in meaningfully narrowed objections that the Court must adjudicate.

As to **I.G.6.d.6.5**, governing disclosure of disclosed exhibits to witnesses, the additional sentence the AGs have added after the Parties exchanged Opening position statements does nothing to mitigate Meta's concerns. Indeed, the AGs' attempt to somehow police whether "counsel" is "rely[ing] on information provided pursuant to the disclosure" of exhibits should not be countenanced, not least because the mental impressions of counsel about the exhibits disclosed are work product. Meta has agreed to not tell witnesses what exhibits are disclosed, and will abide by both the letter and broader spirit of that proposal. But this Court should not accept the AGs' invitation to police the thought process of counsel.

DATED:  August 10, 2026

Respectfully submitted,

By:    _Krista Batchelder_

_/s/ Samantha Beckett_

**ROB BONTA**
Attorney General
State of California

Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Emily Kalanithi (SBN 256972)
Supervising Deputy Attorneys General
Nayha Arora (CA SBN 350467)
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer (CA SBN 336428)
Brendan Ruddy (CA SBN 297896)
Samantha Beckett (CA SBN 308456)
Katherine Read (CA SBN 341463)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Megan.Oneill@doj.ca.gov

_Attorneys for Plaintiff the People of the State of California_

**PHILIP J. WEISER**
Attorney General
State of Colorado

_/s/ Krista Batchelder_
Krista Batchelder, CO Reg. No. 45066,

*pro hac vice*
Deputy Solicitor General
Shannon Stevenson, CO Reg. No. 35542,
*pro hac vice*
Solicitor General
Elizabeth Orem, CO Reg. No. 58309,
*pro hac vice*
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6651
krista.batchelder@coag.gov
Shannon.stevenson@coag.gov
Elizabeth.orem@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel.*
*Philip J. Weiser, Attorney General*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

*/s/ Philip Heleringer*
J. Christian Lewis (KY Bar No. 87109),
*Pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*Pro hac vice*
Zachary Richards (KY Bar No. 99209),
*Pro hac vice*
Daniel I. Keiser (KY Bar No. 100264),
*Pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*Pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV
ZACH.RICHARDS@KY.GOV
DANIEL.KEISER@KY.GOV
MATTHEW.COCANOUGHER@KY.GOV
Phone: (502) 696-5300
Fax: (502) 564-2698

11

*Attorneys for Plaintiff the Commonwealth of Kentucky*

**JENNIFER DAVENPORT**
Attorney General
State of New Jersey

*/s/ Kashif T. Chand*
Kashif T. Chand (NJ Bar No. 016752008),
*Pro hac vice*
Assistant Attorney General
Thomas Huynh (NJ Bar No. 200942017),
*Pro hac vice*
Section Chief, Deputy Attorney General
Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*Pro hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiffs New Jersey Attorney General and the New Jersey Division of Consumer Affairs Jennifer Davenport, Attorney General for the State of New Jersey, and Jeremy E. Hollander, Acting Director of the New Jersey Division of Consumer Affairs*

**COVINGTON & BURLING LLP**

*/s/ Ashley M. Simonsen*

Ashley M. Simonsen (Bar No. 275203)
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

Paul W. Schmidt (*pro hac vice*)
David Sneed (*pro hac vice*)
Timothy C. Hester (*pro hac vice*)
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
Email: pschmidt@cov.com
Email: dsneed@cov.com

**WILKINSON STEKLOFF LLP**

Brian L. Stekloff, *pro hac vice*
2001 M Street, NW
Washington, DC 20036
Telephone: + 1 (202) 847-4030
Email: bstekloff@wilkinsonstekloff.com

Moira Penza, *pro hac vice*
WILKINSON STEKLOFF LLP
130 W 42nd Street
New York, NY 10036
Telephone: + 1 (212) 294-8914
Email: mpenza@wilkinsonstekloff.com

*Attorneys for Defendants Meta Platforms, Inc.
f/k/a Facebook, Inc.*