Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

*Attorney for Defendant Meta Platforms, Inc. f/k/a
Facebook, Inc.*

*[Additional counsel listed on signature pages]*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION <br><br> This Document Relates To: <br><br> *People of the State of California, et al. v. Meta Platforms, Inc., et al.* | MDL No. 3047 <br><br> Case Nos.: 4:22-md-03047-YGR-PHK; 4:23-cv-05448-YGR <br><br> **META'S OPPOSITION TO STATE AGS' MOTION SEEKING PERMISSION TO USE EXHIBITS IN OPENING STATEMENT** <br><br> Judge: Hon. Yvonne Gonzalez Rogers <br> Magistrate Judge: Hon. Peter H. Kang <br><br> Date: August 13, 2026 <br> Time: 1:00 PM <br> Place: Courtroom 1, 4th Floor |

**TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................... 2

TABLE OF AUTHORITIES .............................................................................................. 3

I.      INTRODUCTION ................................................................................................ 5

II.     BACKGROUND ................................................................................................. 6

III.    ARGUMENT....................................................................................................... 7

        A.    The AGs' Motion Is an Improper Vehicle for Resolving Evidentiary Disputes. ... 8

        B.    The AGs' Identified Documents Illustrate Why Their Request Should Be Denied.
................................................................................................................................ 9

                1.    Foundation Objections Cannot Be Resolved Without a Sponsoring
Witness.......................................................................................... 10

                2.    Evidence of Third-Party Content Cannot Be Used to Establish Liability. 11

                3.    Casual Employee Chats Are Not Self-Evidently Admissible Business
Records. ........................................................................................ 13

                4.    Opening Exhibits Created by Third-Party Consultants Present Unresolved
Hearsay-Within-Hearsay Problems. ............................................. 14

                5.    Employee Speculation About Lawyers' Motivations Is Not Within the
Scope of Employment.................................................................... 15

                6.    The Probative Value of Several of the AGs' Opening Exhibits Is
Substantially Outweighed by the Risk of Unfair Prejudice. ...................... 16

        C.    Any Relief Granted to the AGs Should Be Granted Equally to Meta. ................. 17

IV.    CONCLUSION................................................................................................ 20

META'S OPPOSITION TO STATE AGS' MOTION SEEKING PERMISSION TO USE EXHIBITS IN OPENING STATEMENT
4:22-md-03047-YGR

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Doe v. Grindr*,
   128 F.4th 1148 (9th Cir. 2025) ...............................................................................................13

*Kimzey v. Yelp! Inc.*,
   836 F.3d 1263 (9th Cir. 2016) ...............................................................................................12

*Lemmon v. Snap Inc.*,
   995 F.3d 1085 (9th Cir. 2021) ...............................................................................................13

*Oki Am., Inc. v. Microtech Int'l, Inc.*,
   872 F.2d 312 (9th Cir. 1989) .................................................................................................11

*Parker v. Winwood*,
   938 F.3d 833 (6th Cir. 2019) .................................................................................................12

*Pfingston v. Ronan Eng'g Co.*,
   284 F.3d 999 (9th Cir. 2002) .................................................................................................15

*Sprint/United Mgmt. Co. v. Mendelsohn*,
   552 U.S. 379 (2008).................................................................................................................14

*Standard Oil Co. of Cal. v. Moore*,
   251 F.2d 188 (9th Cir. 1957) .................................................................................................13

*United States v. Brown*,
   490 F.2d 758 (D.C. Cir. 1973)...............................................................................................14

*United States v. Morales*,
   720 F.3d 1194 (9th Cir. 2013) ...............................................................................................15

*Weil v. Citizens Telecom Servs. Co., LLC*,
   922 F.3d 993 (9th Cir. 2019) .................................................................................................15

**Statutes & Rules**

47 U.S.C. § 230..............................................................................................................................12

Fed. R. Evid. 401 ..........................................................................................................................14

Fed. R. Evid. 402 ............................................................................................................................6

Fed. R. Evid. 403 ..............................................................................................................5, 14, 16

Fed. R. Evid. 602 ..........................................................................................................................10

Fed. R. Evid. 801 ...........................................................................................................12, 14, 15

Fed. R. Evid. 803 ...............................................................................................................13, 14

Fed. R. Evid. 805 ...........................................................................................................15, 16, 21

Fed. R. Evid. 901 ...................................................................................................................10

META'S OPPOSITION TO STATE AGS' MOTION SEEKING PERMISSION TO USE EXHIBITS IN OPENING STATEMENT
4:22-md-03047-YGR

## I.      INTRODUCTION

The Court should deny the AGs' request to show the jury during their opening statement dozens of exhibits whose admissibility is disputed.  The request is contrary to the Court's guidance on evidentiary issues generally and opening statements specifically, and it rests on an incomplete and inaccurate account of the parties' conferrals regarding document-admissibility issues.

The Court's Standing Order is unambiguous: absent express approval and "[u]ntil it is admitted, NO EXHIBIT may be shown to the jury, including during Opening Statements."  *See* March 17, 2025 Standing Order Re: Pretrial Instructions in Civil Cases ("Standing Order") at 9.  The AGs' motion asks the Court to treat a broad collection of disputed exhibits as effectively admitted before any sponsoring witness has testified and before the Court has had an opportunity to evaluate the exhibits in the context of the trial.  That request collapses a distinction the Court has repeatedly emphasized: the difference between a document being *admissible* and a document being *admitted*.  A document may qualify under a hearsay exception yet still not be admitted because a sponsoring witness cannot establish its relevance, probative value, or proper foundation, or because its admission would violate Rule 403.  The admissibility analysis does not end with a hearsay exception, and documents cannot simply be placed before the jury untethered from witness testimony and the context of other evidence.

The motion therefore should be denied because it seeks to resolve, in the abstract and before trial testimony, evidentiary questions that the Court has repeatedly indicated must be addressed in the context of specific witnesses and specific uses of evidence.  Many of the identified documents present one or more genuine admissibility disputes, including unresolved hearsay-within-hearsay issues, contested business-records arguments, scope-of-employment challenges, Section 230 issues, prejudice concerns, and foundation objections.  Those issues cannot be resolved categorically across a broad swath of exhibits; their resolution will vary depending on the witness through whom the AGs seek to introduce a given exhibit, the purpose for which they seek to use it, and considerations of prejudice versus probative value.  Consistent with the Court's prior guidance, Meta does not believe the Court should depart from its presumptive rule against the use of unadmitted exhibits in opening statements.  If, however, the Court permits exhibits to be displayed during opening statements before they are admitted, that relief should apply equally to both parties.

## II.     BACKGROUND

Meta has been conferring with the AGs for more than a month on document-admissibility issues in the context of negotiating a trial protocol. Greenhill Declaration ("Decl.") ¶ 3. During these conferrals, Meta proposed the following process for reaching stipulations on exhibit admissibility issues:

1. The parties would review each other's Priority Exhibit Lists before trial to identify stipulations or objections as to whether the documents were (a) authentic, (b) statements of a party opponent, and/or (c) business or public records.

2. The parties would disclose exhibits to be used on direct examination with a witness the night before that witness testified, meet and confer, and present any remaining disputes to the Court during the daily 8 a.m. session.

Greenhill Decl. ¶ 4. This process would resolve many or most disputes as to high-priority exhibits while preserving other objections for the context in which they matter: the specific witness, the specific exhibit excerpt, and the specific purpose for which the exhibit is offered. This approach is particularly beneficial in a trial of this complexity, where recurring questions will include various hearsay exceptions, Section 230 issues, and the application of Rules 402 and 403 in light of the targeted claims asserted by the AGs in these cases. Rather than requiring blanket advance objections to broad categories of documents, this process would allow the parties to assess those objections in the context of specific witnesses and with the ongoing benefit of the Court's rulings to date in the trial. It also reflects Meta's experience in the JCCP trial, where night-before exhibit disclosures and conferrals enabled the parties to meaningfully narrow their disputes once each side knew how, when, and with whom an exhibit would be used. Greenhill Decl. ¶ 5.

Although the JCCP plaintiffs agreed to a similar night-before process, the AGs refused it throughout the course of the Parties' negotiations. Greenhill Decl. ¶ 6. They only proposed to agree to a mandatory night-before provision on August 9th, after receiving Meta's opening position statement on the Joint Letter Brief concerning the Trial Protocol disputes. Greenhill Decl. ¶ 9. After conferring further on potential options, the Parties have reached agreement on a mandatory nightly disclosure provision for the exchange of exhibits either side seeks to admit into evidence with the next day's witnesses. Greenhill Decl. ¶ 9.

Early in the Parties' negotiations, Meta agreed to review these exhibits for authenticity and hearsay objections. Greenhill Decl. ¶ 7. Then, to resolve this aspect of the trial-protocol dispute, Meta agreed to assert the objections it can identify pre-trial to the AGs' priority exhibits. Greenhill Decl. ¶ 7. Meta is proceeding with that process on the agreed-upon rolling schedule—150 exhibits by August 7 and the balance by August 14. Greenhill Decl. ¶ 8. Meta reserves all rights to assert additional objections depending on how the documents are used at trial, which portions are used, and through which witnesses they are offered.

During the Parties' discussions about this exhibit pre-review process, Meta's counsel directed AG counsel to the Court's Standing Order requiring express Court approval before any exhibit may be shown during opening statements, after AG counsel indicated that they were not aware of the Order. Greenhill Decl. ¶ 9. Only after that reminder did the AGs ask Meta to stipulate that the AGs could use dozens of different exhibits in their opening statement. Greenhill Decl. ¶ 10. Although Meta did to not agree to that broader request, Meta offered that it would consider agreeing to allow the AGs to use evidentiary materials containing statements that the AGs allege are misstatements. Greenhill Decl. ¶ 9. The AGs instead brought the instant motion about a broader swath of exhibits.

## III.    ARGUMENT

Meta opposes the AGs' request to use dozens of disputed exhibits in opening statements. That request is contrary to the guidance the Court has provided about evidence issues generally and opening statements specifically. As the Court has made clear, without foundational support from a sponsoring witness, documents are not admitted into evidence whether or not they may be admissible–and the AGs have not established how they will admit these documents into evidence. The point is compounded by the AGs' failure, in their recently submitted Proposed Findings of Fact and Conclusions of Law, ECF 502 ("Proposed Findings"), to provide the Court with a roadmap of the evidence they seek to present at trial and how that evidence will be admitted. Further, many of the exhibits the AGs seek to use in opening have marginal if any probative value, and seem clearly designed to prejudice the jury against Meta before the jury hears any witness testimony. And in all events, as explained below, Meta has good-faith evidentiary objections to many of the exhibits that the AGs propose to show the jury. Consistent with this Court's guidance and Standing Order, now is not the time to resolve those disputes.

**A.      The AGs' Motion Is an Improper Vehicle for Resolving Evidentiary Disputes.**

The question before the Court is whether the AGs should be permitted to show the jury evidence in opening statements outside of the context of any sponsoring witness and over well-founded objections. *See* Section III.B *infra*.

The dispute that the AGs emphasize concerning pretrial exhibit review has no bearing on that question.  As described above, Meta engaged in good-faith conferrals over document-admissibility issues and offered to consider agreeing to allow the use of materials containing alleged misstatements; the AGs instead brought this motion.  At the same time, refuting any suggestion that they are acting reasonably regarding documents, they have lodged a series of meritless objections to the Meta exhibits they have commented on to date.[1]

The scope of the AGs' request reveals its true purpose.  Despite proceeding to trial on 51 alleged misstatements, the AGs have requested permission to use only one document that is a source of a claimed misstatement.  Instead, nearly a third of the documents the AGs seek to show the jury in opening appear nowhere in their Proposed Findings, contradicting the AGs' claim that these documents are "foundational to their case," Mot. at 1.

This Court has made clear that exhibits should be introduced with witnesses, not placed before the jury untethered from testimony.  The Court has repeatedly explained that a document cannot be admitted through a witness who has nothing meaningful to say about it.  *See, e.g.*, Ex. 1, July 17, 2026 Tr. at 58:20–23 ("[I]f someone looks at [a document] and says, 'I don't know what this is. I've never seen it. I have nothing to say about it,' that's it.  It's done."); *id.* at 62:24–63:5 ("[I]f you provide that business record to five people who can say nothing about it, I will not admit it because it has no probative value whether or not it's a business record.  There is a difference.").[2]  When the AGs' counsel asked about this point, the

---

[1] For example, the AGs objected on relevance grounds to a Meta website from its Safety Center, despite them challenging a wave of statements about safety.  They objected on relevance to Meta website pages on how to report U13 users, despite their COPPA claims, their challenges to Meta's age verification practices, and their challenges to Meta's statements on U13s.  They will not agree that another document on Meta's website is a business record.  And they claim that they cannot evaluate the authenticity and business record status of various Meta documents simply because they contain permissible redactions.

[2] All citations to exhibits refer to the exhibits appended to the attached Greenhill Declaration.

META'S OPPOSITION TO STATE AGS' MOTION SEEKING PERMISSION TO USE EXHIBITS IN OPENING STATEMENT
4:22-md-03047-YGR

Court reiterated that an agreement that a document is admissible does not determine whether the document will actually be admitted; that question must be decided in the context of a specific witness. *See id.* at 61:24–62:5.

The Court has repeatedly declined to resolve evidentiary issues broadly or in advance. Its guidance on *limine* motions is consistent with that approach: the Court limited each side to five such motions, instructed that they should not be topically overbroad, and then denied those motions to the extent the Court determined that they addressed questions not properly resolved in the abstract, *see, e.g.*, Ex. 2, June 26, 2026 Tr. at 91:19–92:1. The Court has instead directed that evidentiary disputes be taken up as the evidence is presented. *See, e.g.*, Ex. 3, May 27, 2026 Tr. at 84:2–14 (instructing parties that foundation must be established at trial, not assumed). Meta therefore does not believe the Parties should be permitted to use evidence in Opening, given the scope of evidentiary disputes the Court would have to resolve in connection with the request to use evidence in Opening.

The Court's Standing Order is explicit about how the prohibition on showing evidence to the jury before it is admitted applies to opening statements. Consistent with the Court's repeated instructions in this case, the Standing Order provides: "Until it is admitted, NO EXHIBIT may be shown to the jury, *including during Opening Statements*, without the express approval of the Court." *See* Standing Order at 9 (emphasis added). That language forecloses the sweeping relief the AGs seek. Their arguments for avoiding this rule would render the Standing Order a nullity: they want to show specific disputed exhibits to the jury in opening, over Meta's objection, and to treat those exhibits as effectively admitted before showing them to a witness who can establish foundation, relevance, and probative value.

The timing of the request only heightens the problem. The AGs could have raised this issue at any of the several pretrial conferences the Court has afforded the parties. Greenhill Decl. ¶ 11. They did not do so, because they apparently did not review the Court's Standing Order on this point. Instead, they have sought this relief shortly before openings, and only after Meta identified the relevant Standing Order provision during a recent meet and confer.

**B.      The AGs' Identified Documents Illustrate Why Their Request Should Be Denied.**

The AGs' motion does not simply seek permission to display exhibits in opening: it asks the Court to pre-adjudicate the admissibility of contested documents weeks before the relevant sponsoring witnesses

take the stand.  That is precisely the untethered, context-free adjudication that both the Standing Order and this Court's case-specific instructions were designed to prevent.  The documents that the AGs identify illustrate why.  A host of these documents are subject to genuine admissibility disputes that cannot be resolved in the abstract and instead require the context of live testimony.

### 1.    Foundation Objections Cannot Be Resolved Without a Sponsoring Witness.[3]

The AGs have not yet laid any foundation for the exhibits they seek to show the jury.  The Court has emphasized, as the Rules of Evidence require, that a witness with personal knowledge must lay the foundation for an exhibit before the exhibit is admitted and presented to the jury.  *See* Ex. 1, July 17, 2026 Tr. at 58:17–20; Ex. 3, May 27, 2026 Tr. at 84:2–14 ("If there's not a stipulation, you are going to use your trial time to set foundation so that something is, in fact, admitted.").  This requirement cannot be satisfied by counsel's argument, nor can it be resolved merely by determining whether a hearsay exception applies.  *See* Ex. 1, July 17, 2026 Tr. at 61:24–62:3 ("It is *admissible*.  That is different than whether it is *admitted*.  The tense matters.  You don't get to throw documents into evidence for which there is no evidentiary record as to its probative value." (emphases added)).  The AGs' motion seeks to bypass that framework by obtaining blanket pre-admission of contested exhibits before any witness has testified to lay a sufficient foundation for their admission.

The AGs urge that foundation will not be an issue because they erroneously assert that senior executives like Adam Mosseri, Antigone Davis, or Mark Zuckerberg can lay foundation for documents even if they lack personal knowledge.[4]  They assert that, for documents listing "Meta Platforms" as the custodian, *any* company witness can supply the testimony necessary to admit the document, regardless of personal involvement.  Mot. at 15.  But that misstates the requirements for foundation.  Rules 602 and 901 require actual personal knowledge, not simply a corporate officer's association with the company.  *See* Ex. 2, June 26, 2026 Tr. at 92:21–93:7 (explaining that the Court will evaluate designations based on

---

[3] On August 7, 2026, Meta withdrew its clawback of Plaintiff Exhibit 1358B.  Greenhill Decl. ¶ 22.  The AGs' discussion of the privilege dispute as to that document, *see* Mot. at 11 n.6,  is therefore moot.

[4] To end-run Rule 602, the AGs baselessly suggest that these executives might falsely "disclaim" knowledge of documents on the stand, Mot. at 12 n.7, but they offer no good-faith basis to assume that Meta's executives would not testify truthfully about the scope of their knowledge.

"whether there's any foundation for that particular witness to answer the question that is being asked"). A witness who lacks personal knowledge cannot lay foundation or establish the probative value of an exhibit. *See Oki Am., Inc. v. Microtech Int'l, Inc.*, 872 F.2d 312, 314 (9th Cir. 1989) (party failed to lay a foundation for admission where declarant "knew nothing" about the contracts at issue).

## 2.    Evidence of Third-Party Content Cannot Be Used to Establish Liability.

The AGs propose to show the jury "child-directed social media content" posted by third parties on Instagram (Pltf. Ex. Nos. 2168, 4032, 4021, 2169, 2176). Mot. at 16. Of these five posts, only Plaintiff Exhibit No. 2176 appears in the AGs' Proposed Findings, further confirming that this evidence is not probative of the merits and is offered to prejudice Meta before the evidentiary record is built. *See infra* Section III.B.6.

The AGs claim the posts are offered for a purported "non-hearsay purpose" of showing that content was "published on Meta's platforms." Mot. at 16. But that purpose would be using them for their truth. The AGs seek to use these posts to argue that Meta's platforms are "directed to children" within the meaning of COPPA—*i.e.*, that the character of the content establishes that Meta's audience includes children. That use depends on the content's meaning and effect, as even one of the AGs' own 30(b)(6) witnesses agrees. *See* Ex. 8, July 31, 2026 N.J. 30(b)(6) Dep. at 407:2–408:8. And the AGs have identified no hearsay exception that would permit the posts to be used substantively. Indeed, no such exception applies. *See infra* Section III.B.4.

That is far from the only problem. The AGs propose (Mot. at 16) to introduce these third-party posts through their expert Adam Alter. But the Court has already made clear that "an expert is not a percipient witness," "does not have the foundation," and so "cannot offer factual evidence." Ex. 4, April 15, 2026 Tr. 15:22–25; *see also id.* at 105:20–22 ("Experts cannot be conduits for facts."); Ex. 5, March 18, 2026 Tr. 57:15–58:4 ("Experts are not conduits for information. … [T]hey cannot say, unless those things are in evidence, this corporate document said X."). The AGs' proposal would require Alter to do exactly that. Alter did not create, receive, or maintain these posts in the ordinary course; he found them during his work as a retained expert in this litigation. Because he lacks personal knowledge of the posts, their creation, or their intended audience, he cannot establish their foundation, authenticity, relevance, or admissibility. The AGs therefore cannot use Alter to circumvent the ordinary requirement that factual

11

exhibits be introduced through a witness with personal knowledge.

The AGs also cannot offer the third-party posts as party admissions under Rule 801(d)(2).  Posts made by third-party Instagram users were not made by Meta, adopted by Meta, authorized by Meta, or made by Meta's agent or employee.  *Cf. Parker v. Winwood*, 938 F.3d 833, 837–38 (6th Cir. 2019) (rejecting claim that third-party statements became party admissions through republication on a party's website and holding that "merely hosting a document on a Web site does not indicate that the hosting entity adopts the document as its own statement" (cleaned up)); *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1269–71 (9th Cir. 2016) (similarly holding under Section 230 that hosting "user-generated" speech does not render the platform the creator or developer of that content and that "proliferation and dissemination of content does not equal creation or development of content").  Instagram users are not Meta's officers, representatives, or agents; they cannot speak for the company.

More fundamentally, this evidence of third-party content—and any attempt to deem that content to be Meta's party admissions—runs headlong into Section 230.  The Court has not yet considered the extent to which Section 230 precludes the introduction of third-party content to prove elements of liability, and this motion is not the proper vehicle for resolving those important questions.  *See* Ex. 6, Jan. 26, 2026 Tr. at 225:22–226:1 (Court stating that it would "figure out how to cabin it so that the appropriate case can be tried" rather than resolving Section 230 issues categorically in advance); Ex. 2, June 26, 2026 Tr. at 113:1–15 (deferring resolution of Section 230 issues raised in a motion *in limine* to trial context).  Section 230 provides that "[n]o provider … of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).  If that immunity—and this Court's application of it to this case—is to have meaning, third-party content cannot be used to establish an element of the AGs' liability case.  *See* Pretrial Order No. 4, ECF 3239 at 6 ("Meta can be held liable for its own conduct, not for the conduct of others.").  Deeming a third party's Instagram post to be Meta's party admission under Rule 801(d)(2) would do exactly what Section 230 forbids: treat Meta as the speaker of third-party content, and punish it for not removing third-party content.

This Court has held that Section 230 and the First Amendment impose a "significant limitation on [P]laintiffs' theories of recovery" by "barring liability for third-party content and protected publishing

activities." Ex. 6, Jan. 26, 2026 Tr. at 11:18–12:5; ECF 1267 at 2. The Court conducted a "conduct-specific, feature-by-feature analysis," ECF 1214 ("MTD Order") at 25, and made clear that for the AGs' claims to proceed, they must be "fully independent of [Meta's] role in monitoring or publishing third-party content." *Lemmon v. Snap Inc.*, 995 F.3d 1085, 1093 (9th Cir. 2021); *see also Doe v. Grindr*, 128 F.4th 1148, 1152–53 n.3 (9th Cir. 2025) (where "the challenged features … [were] not independent of [the platform's] role as a facilitator and publisher of third-party content," it "is analytically insignificant whether [the plaintiff's] injuries would not have occurred 'but for' [the platform's] role as a publisher"). If the AGs cannot base *liability* on third-party content, they should not be permitted to show that content in opening for the purpose of proving an element of their case—namely, that Meta's platforms are "directed to children" under COPPA—before any witness has taken the stand and before the Court has resolved how Section 230 will constrain the presentation of evidence at this trial.

### 3. Casual Employee Chats Are Not Self-Evidently Admissible Business Records.

The AGs seek to use Plaintiff Exhibit No. 1243, an internal chat that was excluded from evidence in the JCCP in which one Meta employee describes Instagram as a "drug" and another responds, "Lol, I mean, all social media. We're basically pushers." Mot. at 7. The AGs' argument that the chat qualifies as a business record because "Meta employees routinely used internal chats to memorialize work-related commentary" proves too much. Mot. at 8. If every informal employee chat on a work platform were a business record, then any stray comment by any of Meta's many thousands of employees, past or present, about any work-adjacent topic would be automatically exempt from hearsay rules. That absurd result would swallow the requirements of Rule 803(6) that a business record must be written by "someone with knowledge," memorializing "regularly conducted activity," and prepared pursuant to a "regular practice." Fed. R. Evid. 803(6).

The Ninth Circuit has long recognized that a writing "patently intended as [a] communication[] between employees, and not as [a] record[] of company activity," and "apparently written as a result of the exercise of individual judgment and discretion," is not a business record. *Standard Oil Co. of Cal. v. Moore*, 251 F.2d 188, 214–15 (9th Cir. 1957). A chat accompanied by "Lol" is self-evidently not a systematic record made pursuant to any company procedure. At most, whether this chat reflects a regular business practice of recording observations, as opposed to an off-the-cuff joke between colleagues, is a

META'S OPPOSITION TO STATE AGS' MOTION SEEKING PERMISSION TO USE EXHIBITS IN OPENING STATEMENT
4:22-md-03047-YGR

factual determination best resolved with the benefit of knowledgeable witness testimony.[5]  It cannot be resolved before (and for use in) opening.

The AGs' fallback theory—that the chat is admissible under Rule 803(3) as evidence of "state of mind" and "Meta's knowledge"—only underscores the problem.  State-of-mind evidence comes in for the limited purpose of showing what the declarant believed, not for the truth of the statement.  If admitted on that narrow basis, a limiting instruction would be required.  *See United States v. Brown*, 490 F.2d 758, 763 (D.C. Cir. 1973) (holding that "a limiting instruction is always necessary" where circumstantial evidence of state of mind is presented).  And the AGs would run into problems under Rules 401 and 403, given the chat at issue is by one single non-executive employee of a vast corporation.  That employee did not make any alleged misstatements, and so the relevance of her temporary state of mind is far outweighed by the prejudice to Meta.  The Court should not permit an exhibit subject to such a limitation to be shown to the jury in opening, before any limiting instruction has been given and before the jury has a framework for understanding the exhibit's restricted purpose.

In addition, the statement in Plaintiff Exhibit No. 1243 is precisely the kind of inflammatory characterization that Rule 403 is designed to exclude, particularly when presented without witness context.  An "Lol" remark between colleagues is by definition one person's hyperbole, not institutional policy.  Its risk of unfair prejudice substantially outweighs its probative value, especially if introduced in opening without a contemporaneous limiting instruction.  *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008).

### 4. Opening Exhibits Created by Third-Party Consultants Present Unresolved Hearsay-Within-Hearsay Problems.

The AGs seek to use Plaintiff Exhibit No. 1945 ("Teen Mental Health: Creatures of Habit"), a presentation that the AGs concede was "created for Meta by [a] third party agency."  Mot. at 3 (citing Gross Dep. at 74:9–18).  Even assuming the presentation as a whole would qualify as Meta's business

---

[5] Indeed, one of the involved employees, a trial witness, testified at her deposition that the "drug" remark was not a serious observation but rather a "casual," "hyperbolic," and "sarcastic[]" "joke" and "exaggeration" designed to "grab [her colleagues'] attention" in an informal chat among fellow researchers. Ex. 7, Dep. of Shayli Jimenez (Feb. 11, 2025), 264:9–10, 277:6–23, 278:24–279:17, 291:17–24.

record under Rule 803(6) or as a party admission under Rule 801(d)(2)(D), the data embedded within it—the survey results gathered and compiled by an outside agency—create multiple hearsay layers under Rule 805. "Hearsay within hearsay" must be excluded unless "each part of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805.

The AGs have identified no exception for the inner layers—the outside agency's reporting of the survey data and the survey responses themselves—and cannot do so without testimony about the participants, the survey design and methodology, the agency's recordkeeping, and whether the agency had a "business duty" to report accurately to Meta. *See United States v. Morales*, 720 F.3d 1194, 1202 (9th Cir. 2013). None of that can be resolved in the abstract before trial; it requires testimony from a qualified witness about the third-party agency's procedures. The Court cannot pre-admit this document based only on counsel's assertion that the outer layer of the document does not constitute hearsay. The parties have no guidance about the Court's intended management of embedded hearsay, and Meta would submit that any embedded hearsay that cannot be used for the truth must be accompanied by an appropriate limiting instruction.

### 5. Employee Speculation About Lawyers' Motivations Is Not Within the Scope of Employment.

The AGs seek to use Plaintiff Exhibit No. 4255, an employee chat containing the statement: "If I had to guess, they don[']t [] want a paper trail tracing this back to information visually presented to leader that may have to testify." Mot. at 15. This is an employee admittedly speculating—saying "[i]f I had to guess"—about why in-house lawyers requested edits to a presentation. *Id.* It is not a statement within the scope of a product lead's knowledge or employment.

Contrary to the AGs' assertion, that chat is not a non-hearsay party admission. A "guess" is not an admission. Moreover, under Rule 801(d)(2)(D), the critical question is whether the statement concerns a matter that was within the scope of the declarant's employment. *Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 999 (9th Cir. 2019). Product leads are not employed to opine on attorneys' litigation strategy, privilege, or the reasons behind legal-department editing requests. Scope must be assessed by reference to the specific nature of the employee's duties, not the company's business writ large. *See Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002) (party failed to lay a foundation for

admission by merely stating declarant's job title without "provid[ing] any description of [his] job responsibilities" and "show[ing] that [the] job duties had anything to do with" the matter at hand). The AGs have not even attempted to make that showing here.

This exhibit also presents a hearsay-within-hearsay problem under Rule 805. Even if the chat itself qualified as a party admission at the outer layer, the relevant content is an employee's guess about lawyers' mental states. If offered to prove what the lawyers allegedly thought, that inner layer requires its own exception, and the AGs identify none.

6.   **The Probative Value of Several of the AGs' Opening Exhibits Is Substantially Outweighed by the Risk of Unfair Prejudice.**

Finally, several categories of evidence that the AGs seek to display, even if deemed admissible, nonetheless should be excluded under Rule 403 because their minimal probative value is outweighed by their prejudicial effect.

The lack of probative value is demonstrated by the AGs' own recent filings. There is a significant disconnect between what the AGs want to show the jury in opening and what appears in their Proposed Findings. Much of the proposed opening evidence does not appear in the AGs' Findings, indicating that the AGs themselves do not view it as probative of the issues the Court will ultimately decide. If these exhibits were truly foundational to the AGs' case, they would naturally appear in the Proposed Findings. As this Court reminded the parties in June, the Findings "are … critical" and "must[] outline the entirety of [each side's] view of this trial"; "if [the evidence] is not in there, then I may not let you bring it in." *See* Ex. 2, June 26, 2026 Tr. 115:6–16. Because several of the AGs' proposed opening exhibits do not appear in their Proposed Findings, and appear to be offered primarily to prejudice Meta before the jury and before the evidentiary record can be built, the Court should preclude their use.

By way of example, the AGs have included three documents in their opening evidence (Pltf. Ex. Nos. 4255, 4256, 4257) that appear intended to suggest that Meta lawyers edited a slide deck to remove language so that Instagram leadership could deny knowledge of harm, and multiple third-party-content exhibits (Pltf. Ex. Nos. 2168, 4032, 4021, 2169) that would expose the jury to evidence precluded by Section 230. None of these documents is included in the AGs' Proposed Findings. And for good reason: they have *nothing* to do with the claims at issue, the elements that comprise them, or evidence that can

properly be used to prove or disprove them.  The AGs implicitly recognize as much by not relying on them.

**C.      Any Relief Granted to the AGs Should Be Granted Equally to Meta.**

If the Court permits the AGs to use these exhibits in opening, Meta respectfully requests the ability to use exhibits of its own.  Meta's case-in-chief will rely on documentary evidence on various topics, including:  its public statements, including the ones that the AGs allege are misstatements; Meta's investments in safety features, parental controls, and age-verification systems during the relevant period; and communications and testimony from the AGs' own state agencies contradicting the AGs' claims.

Meta does not presently seek to use exhibits in its opening, and reserves the right to disclose further exhibits for use in opening depending on the Court's ruling on which, if any, of exhibits the AGs may use.  Meta notes that after the AGs opposed the inclusion of Meta's 30(b)(6) witnesses on its witness list, and were unsuccessful, the AGs waited weeks before disclosing their own intention to call a 30(b)(6) witness.  Meta likewise reserves the right to seek equivalent relief should the Court overrule its position, upon learning that outcome.  Nevertheless, subject to learning what relief the Court is inclined to grant the AGs and on what bases, Meta seeks permission to use the following exhibits in its Opening statement.[6]  Meta requests to use these exhibits and offers the below explanations for its good faith bases for doing so without prejudice to its ability to object to these exhibits being used in the AGs' opening statements or at trial or for seeking to admit documents through alternative means.  Moreover, the AGs have sought to ask Meta employees about documents they do not have personal knowledge about; Meta objects to that practice, but identifies documents it would likewise have a good faith basis to admit through that avenue if the Court grants the AGs with their requested relief.

- Any document the Court grants the AGs permission to use.
- Internal documents reflecting the company's work on tools and features of the Instagram and Facebook apps, and on safety and integrity efforts.  These are business records, but at a minimum, Meta must be able to use them to respond to the AGs' claims that public statements regarding Meta's internal work were misstatements.  These documents provide

---

[6] Meta's exhibits are available on the hard drive lodged with the Court Friday, July 31.

META'S OPPOSITION TO STATE AGS' MOTION SEEKING PERMISSION TO USE EXHIBITS IN OPENING STATEMENT
4:22-md-03047-YGR

responsive context to those claims, reflecting what was actually said internally at Meta.

      o Exs. 2920[7] (a slide deck titled "Take a Break H1 '22 Opt-out for New Teens" – Adam Mosseri), 17210 (a presentation titled "Well-Being 10x" – Mark Zuckerberg), 17553 (an email exchange regarding "core app metrics" – Mark Zuckerberg)

- Statements Meta made to the public, including on its website and in other public forums. These are business records, but at a minimum, Meta must be able to use them for the fact of what was said given this is a case about claimed misstatements to the public. Witnesses including Monika Bickert, Antigone Davis, Allison Hartnett, Adam Mosseri, and Sayed Otaru can testify to personal knowledge regarding these documents.

      o Exs. 10030 (a Meta Newsroom article titled "How Do We Know Someone Is Old Enough To Use Our Apps?" – Monika Bickert, Antigone Davis); 10036 (a guide published by Instagram titled "Know How to Talk with Your Teen About Instagram: A Parent's Guide" – Adam Mosseri, Sayed Otaru), 10154 (a guide published by Instagram titled "A parent and guardian's guide to Instagram – Adam Mosseri, Sayed Otaru), 10222 (a guide published by Instagram titled "A Parents' Guide to Instagram" – Adam Mosseri, Karina Newton); 11089 (a form for reporting an underage Instagram user – Monika Bickert, Antigone Davis, Allison Hartnett); 11102 (a publication titled "Know How to Talk With Your Teen About Instagram: A Parent's Guide" – Adam Mosseri, Karina Newton, Sayed Otaru), 11267 (a guide published by Instagram titled "A Toolkit Addressing the Pressure to Be Perfect" – Adam Mosseri, Sayed Otaru), 11269 (an Instagram Blog Post titled "Continuing to Keep Instagram Safe and Secure" – Adam Mosseri), 12760 (a publication titled "A Parent's Guide to Facebook" – Mark Zuckerberg), 12903 (a webpage titled "Facebook and Messenger Teen Accounts: How Built-in Protections Help Keep

---

[7] Meta identifies sponsoring witnesses through which it presently in good faith intends to offer exhibits, but Meta does not know what the AGs plan to do in their case and reserves all rights based upon how the AGs' case comes in.

Your Teen Safe" – Sayed Otaru, Mark Zuckerberg), 16888 (a Facebook post by Mark Zuckerberg on January 11, 2018 – Mark Zuckerberg), 17267 (a transcript of a Congressional Hearing on September 30, 2021 containing alleged misstatements by Antigone Davis), 17609 (a form for reporting an underage Facebook user – Monika Bickert, Antigone Davis, Allison Hartnett), 17781 (a Meta web post titled "Hard Questions: Is Spending Time on Social Media Bad for Us?" – Kristin Hendrix); announcements made on Meta or Instagram's blogs concerning features and functions of its apps (Exs. 10054, 10362, 10649, 12914, 10061, 10151, 10172, 10176, 10233, 10279, 10306, 10328, 10336, 10340, 10343, 10345, 10346, 10347, 10348, 10353, 10357, 10359, 10360, 10361, 10363, 10367, 10369, 10372, 10648, 10652, 10694, 10771, 10816, 10817, 10820, 10856, 10858, 10897, 10977, 10988, 11265, 11857, 12083, 12103, 12839, 12855, 12907, 12090, 12911, 12913, 12935, 12964, 12966, 16077, 17618, 17624, 1673, 17690, 17692, 17696, 17716, 17734)

- Meta's Community Standards Enforcement reports, which the AGs have claimed are misstatements, including Exs. 10390 and 10391 (public Community Standards Enforcement Report announcements that witnesses including Monika Bickert can testify to). These are business records, but at a minimum, Meta must be able to use them to respond to the claims that these and other CSER statements are misstatements.
  - Meta also seeks to use Ex. 12918, which is a report produced at Meta's direction auditing the Community Standards Enforcement Reports. Individuals including Monika Bickert and Guy Rosen have relevant personal knowledge.
- A scientific literature article published by Meta researchers: 17866 (a publication titled "Understanding Perceptions of Problematic Facebook Use" – Justin Cheng, Elena Davis)
- Ex. 15551 (The National Academies of Sciences, Engineering, and Medicine: Social Media and Adolescent Health (2024)). Meta will admit all portions it seeks to use under the learned treatise hearsay exception through testimony of qualified experts, including Plaintiffs' experts and Randy Auerbach, and/or Michael Baiocchi.

The AGs have claimed in their motion and in the Parties' discussions of exhibit stipulations that

many documents may be offered by the AGs for non-hearsay purposes (e.g., Mot. at 7 ("As an initial matter, the AGs may offer evidence of the chats for a non-hearsay purpose: as evidence of Meta's knowledge and 'state of mind.'"); Mot. at 16 ("The AGs do not offer these posts to assert the truth of the statements they contain, but for the non-hearsay purpose of showing that this kind of content was published on Meta's platforms.").  If the Court is inclined to allow the AGs to use a sweeping variety of documents for a non-hearsay purpose to show that a particular statement was made, then—in a case about claimed misrepresentations—Meta must be allowed to use documents to respond and show that other statements were made contradicting the AGs' claims.

## IV.    CONCLUSION

The Court should deny the AGs' motion.  To the extent any relief is granted, Meta requests (a) equal treatment and (b) that the AGs be limited to exhibits as to which no genuine admissibility dispute exists—excluding composite documents subject to live hearsay disputes and Rule 805 challenges, documents implicating Section 230, and documents for which foundation cannot be established without a live sponsoring witness.

DATED:  August 10, 2026

Respectfully submitted,

By:    /s/ Ashley M. Simonsen

Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

Paul W. Schmidt (*pro hac vice*)
Timothy C. Hester (*pro hac vice*)
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
Email: pschmidt@cov.com
Email: thester@cov.com

*Attorneys for Defendant Meta Platforms, Inc.
f/k/a Facebook, Inc.*

META'S OPPOSITION TO STATE AGS' MOTION SEEKING PERMISSION TO USE EXHIBITS IN OPENING STATEMENT
4:22-md-03047-YGR