Michael Ward (SBN 146484)
michael.ward@bakerbotts.com
BAKER BOTTS L.L.P.
1001 Page Mill Road, Bldg. One, Suite 200
Palo Alto, California 94304
Telephone: 650-739-7557
Facsimile: 650-739-7699

Matthew Jacobs (SBN 171149)
matt.jacobs@bakerbotts.com
Karan Singh Dhadialla (SBN 296313)
karan.dhadialla@bakerbotts.com
BAKER BOTTS L.L.P.
101 California Street, Suite 3200
San Francisco, California 94111
Telephone: 415-291-6200
Facsimile: 415-291-6300

*Counsel for Non-Party Arturo Bejar*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONALINJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case Nos. 4:22-md-03047-YGR-PHK |
| | **DECLARATION OF NON-PARTY ARTURO BEJAR** |
| | Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |
| THIS FILING RELATES TO:<br><br>*All Actions* | |

- 1 -

DECLARATION OF NON-PARTY ARTURO BEJAR

BAKER BOTTS L.L.P.
ATTORNEYS AT LAW
PALO ALTO

## DECLARATION OF ARTURO BEJAR

I, Arturo Bejar, hereby declare as follows:

1.      I am a former employee of Meta Platforms, Inc. (formerly Facebook, Inc.), where I served as Director of Engineering for many years. I make this declaration in response to Meta's Motion for Spoliation Sanctions (ECF 3347) based on my personal knowledge, and if called as a witness, I could and would testify competently thereto.

2.      I was born and raised in Mexico City, Mexico. I attended university in the United Kingdom, but I am a non-native English speaker. Later in my career, I led safety and security for the internet platform, Yahoo!. While at Yahoo!, I was approached by executives at Meta (then Facebook) and was personally recruited by Mark Zuckerberg to lead its user security program. This role later expanded to oversee Facebook's safety programs which became known as Protect & Care. In the course of my duties, I had countless direct interactions with Mr. Zuckerberg and other members of the leadership team. After 6 years in this role, I decided to leave the company in 2015 to prioritize my time with my teenage children in the wake of my divorce. Approximately four years later, I was motivated to return to Meta as a consultant to its Instagram business unit. This move was instigated by the reports of my daughter and her friends about the volume of unwelcome sexual advances and misogynistic abuse they received on Instagram and the company's lack of response. I was also urged by members of the Instagram safety team to return and help them.

3.      Upon my return, I began to research the internal reasons why the company was not preventing and reducing these harms to children. I spent several months working with talented people on the safety team and learned that their efforts were being stymied by senior leadership. I gathered data about the different types of harm inflicted by the platform and their frequency for each age group, and delivered my findings in writing to Mark Zuckerberg, Adam Mosseri, Sheryl Sandberg and other senior leaders. This message was met with complete silence from Mark Zuckerberg (although I later confirmed that he did receive it) and inaction from other senior leaders. This was in October of 2021. My motive in making this communication was to spur these leaders to action and improve safety. I had and currently have no desire to harm the company. Soon

- 2 -

DECLARATION OF NON-PARTY ARTURO BEJAR

BAKER BOTTS L.L.P.
ATTORNEYS AT LAW
PALO ALTO

thereafter, I finished my consulting engagement with Instagram and left the company. I did not retain any of the documents or communications I sent, including the detailed email describing harms that I sent to Mark Zuckerberg and the other senior leaders.

4.     My involvement in the litigation involving Instagram and child online safety issues was initially at the request of Meta. I was contacted on June 2, 2022 by a lawyer from Meta's legal department who told me that I was needed to serve as a witness in the matter of *Federal Trade Commission v. Meta Platforms, Inc.* The FTC had raised issues about child online safety being harmed by the Meta acquisition of Instagram. I was then introduced to Meta's outside lawyers, who prepared me for a deposition taken by the FTC on February 2, 2023. At that deposition and since that time, I have been represented by Michael Ward from the Palo Alto office of Baker Botts LLP. I contacted him at the recommendation of Mary Wirth, a person I had worked with and who was a paid expert witness on behalf of Meta in the New Mexico litigation. To my knowledge, Mr. Ward had no prior involvement in the investigation or litigation of child online safety issues involving Meta. Meta paid my legal fees in connection with the deposition.

5.     Following my testimony in the FTC matter, I have been subpoenaed to testify in other proceedings, including before the US Senate Judiciary Committee on November 7, 2023. I have been interviewed multiple times by lawyers representing various parties in different lawsuits concerning child online safety, but I have never been consulted on the legal strategy. I have been asked to testify as an independent expert witness based on my long years of experience in online safety issues including my time with Meta, but I have never received any compensation for my testimony, and I have no economic interest in the outcome of any litigation. I was once asked to enter into an expert agreement with the State of New Mexico, but I declined to enter any formal arrangement with any party.

6.     Following my testimony in the FTC matter, I was asked by the Tennessee Attorney General's Office to sit for an investigative deposition. That contact was in April 2023, and I was never asked to provide or preserve any of my personal, post-employment private communications. I have never discussed my personal communications practices with any representative of any

- 3 -

DECLARATION OF NON-PARTY ARTURO BEJAR

Attorney General or any other plaintiffs' attorney.

7. The very first and only time that my post-Meta personal communications were requested by any party was on February 11, 2025, when I received a subpoena from Meta. This was surprising because, dating back to my first contacts with Meta's lawyers on this subject in 2022, they had never before asked me to preserve my personal communications. I had also been examined under oath by Meta multiple times by that point, yet they had never asked me about these communications in the prior depositions.

8. In 2023, before this MDL lawsuit was filed, I did receive two requests for information from state attorneys general investigating Meta. On April 27, 2023, the Tennessee Attorney General issued a Request for Information. I complied with the document subpoena on May 3, 2023, and sat for an investigative interview on May 16, 2023. On November 13, 2023, the New Mexico AG issued a Civil Investigative Demand. I complied with that demand as well. The Tennessee request sought documents related to my employment at Meta and the New Mexico documents request expressly sought documents I had already produced to government agencies. Neither sought production of my private communications with current or former Meta employees; and I was not asked by either of the Attorney General Offices to preserve such communications.

9. As described above, I am a security professional by training and profession. As part of this role, I was responsible for protecting some of the largest platforms in the world from external threats, including hacks, and for the security of millions of user accounts. One of the most significant consequences of a security breach is when adverse actors gain control over an account or access to its contents, enabling them to compromise other platforms including banks, credit card companies, and health care providers. As a result of my training and experience, I have always been scrupulous about my own digital security. I have routinely purged unnecessary information from my email accounts for many years. I and most security professionals view this as the digital equivalent of shredding your monthly credit card bill or bank statements after reviewing them, rather than leaving them as unnecessary clutter or in an unattended waste bin. Many "free" messaging services such as Meta's WhatsApp also routinely scrape the contents of user messages

BAKER BOTTS L.L.P.
ATTORNEYS AT LAW
PALO ALTO

DECLARATION OF NON-PARTY ARTURO BEJAR

and sell information from the contents of those messages to data brokers and advertisers. I am among the 100 million privacy-minded citizens who have recognized this vulnerability and turned to more secure messaging platforms like Signal, which offers more complete encryption and inhibits data scraping while facilitating routine decluttering of messages that are no longer needed.

10.     I have personally used Signal since 2023, more than a year before Meta served me with its subpoena for personal communications in February 2025. At the time I downloaded Signal in 2023, I had no expectation that my personal communications would be sought in connection with this or any other litigation. Generally, I do not use the messaging service for substantive conversations. I find that understanding and intent are better communicated in a live conversation either in person or by telephone. I generally use the platform to make or receive contact and then arrange a time for a live conversation. I never direct people to contact me via Signal, but some people interested in discussing issues like online safety are fearful that they will be retaliated against by Meta if their communications are discovered. Many of these people prefer to communicate over Signal, which I retain to allow these contacts.

11.     As I stated, I was not aware that my private communications with current or former Meta employees were of interest to this litigation until Meta served its subpoena on me on February 11, 2025. Initially, the subpoena sought a broad range of information, such as my communications with the US Senate. These and other demands were objected to by my lawyers, and Meta eventually agreed to withdraw them. However, one of the categories that persisted was any communications in my possession with current or former Meta employees concerning social media child online safety. In particular, Meta sought my communications with several former employees it had identified as potential witnesses against them, including Frances Haugen, Vaishnavi Jayakumar, Alison Lee, Margaret Gould Stewart, Robert Kang-Xing Jin, and Samir Patel. I understand several of these persons also received subpoenas for their communications. Immediately upon receipt of the subpoena, I stopped deleting any potentially responsive documents, emails, or other messages. I had little to no contact with any of these individuals by email or other platforms so there were very few messages to collect. However, it was time-consuming to search through messages backed

BAKER BOTTS L.L.P.
ATTORNEYS AT LAW
PALO ALTO

DECLARATION OF NON-PARTY ARTURO BEJAR

up from Meta's own Messenger platform and from old, unused email accounts for anyone using a Facebook email address, including people whom I did not know had once worked for Meta. Between February and early April 2025, I searched all sources of electronically stored information in my possession, including email, WhatsApp, Signal, iMessage, and Messenger, for broadly responsive communications. Although the entire process was laborious, the few Signal chats I possessed were collected almost immediately, and I understand that my counsel produced my Signal chats to Meta in March 2025. We produced more documents from other platforms in April 2025, and a final production of previously collected but withheld communications were produced on January 12, 2026. This followed this Court's Order of December 9, 2025, resolving the discoverability of communications with unnamed and current employees.

12.     In preparing my production of communications to Meta, I collected all responsive Signal messages with any current or former employees. Meta's counsel has alleged that I used a feature they called "auto delete" or that I otherwise deleted messages. That is false. I want to be very clear that from the time that I first downloaded Signal in 2023 through the collection of responsive communications after the subpoena was served on me in February 2025, I did not utilize the "auto delete" function for any of my exchanges with former employees. I fully produced all of the information that was required of me, and only after my full compliance with the subpoena did I ever alter those settings on my Signal account.

13.     I should add a few additional points about my understanding and experience with Signal and particularly the so-called "auto-delete" function. First, this is a setting by which the platform will automatically delete a message after a variable period of time set by the user. This period can range from seconds to weeks. This saves the user from having to periodically go into their account and manually declutter unneeded messages. Second, this setting can vary from one conversation to the next. Theoretically, this means you can set messages with your tax accountant to never delete but have messages with your psychotherapist delete within a minute or so. Finally, Signal empowers both participants in the exchange with privacy rights. That means a message already received can be deleted from your inbox by the platform because the sender has settings to

BAKER BOTTS L.L.P.
ATTORNEYS AT LAW
PALO ALTO

DECLARATION OF NON-PARTY ARTURO BEJAR

control how long their message can be retained.

14. One of the Signal exchanges I produced was with former Meta employee Frances Haugen, who had earned the animosity of Mark Zuckerberg and the rest of Meta's senior management when she disclosed to the US Senate Judiciary Committee research data and other internal documents documenting the breadth of harm caused to teens by Instagram and Meta's awareness of that harm. In this Signal exchange, which I produced to Meta on March 31, 2025, Ms. Haugen and other participants commented on the unsealing that day of the State of New Mexico's complaint against Meta and the publication of supporting documents. That public unsealing occurred on December 6, 2023, so this message exchange took place several months before the date of Meta's subpoena. Clearly, if I had "auto-deleted" this or similar messages, I would not have still had a copy of the exchange several months later when I received Meta's subpoena. Later, in February 2026, during the trial of the *State of New Mexico v. Meta*, I was cross-examined by Meta about the contents of this Signal exchange. Meta also questioned me about this Signal communications with Ms. Haugen at my April 2025 deposition.

15. Since my disclosure to Meta of this Signal exchange, I have sat for depositions with Meta on April 7–9, 2025; July 10, 2025; and December 11, 2025. I testified at the New Mexico trial on February 9-10, 2026, the JCCP trial on March 5-6, 2026, and the Tennessee trial beginning July 27, 2026.

16. July 30, 2026 in Tennessee was the first time Meta asked me about my Signal settings or use of the auto-delete function. At no deposition or prior trial did Meta ask about my Signal settings or my use of auto-delete. Never has Meta asked me whether I had deleted any responsive communications.

17. In my testimony in Tennessee, which has now been taken out of context and distorted by Meta, they have mischaracterized a discussion of my *current* use of Signal and falsely suggested I used Signal to delete messages sought by their subpoena. I was initially asked if I have had communications with a witness named Anneke Buffone. Dr. Buffone is a former Meta safety researcher who was laid off by Meta in December 2025. I did not know Dr. Buffone when she

BAKER BOTTS L.L.P.
ATTORNEYS AT LAW
PALO ALTO

DECLARATION OF NON-PARTY ARTURO BEJAR

worked at Meta and had never met or communicated with her until after she was terminated. I initially received a Signal message from her shortly after she was let go but did not have any discussions with her about child online safety issues until March 2026. All of my contacts and any substantive conversations with her occurred in 2026, approximately one year after I had produced my Signal messages to Meta in March 2025. As I readily disclosed to Meta's counsel, any contacts with her would have "always" been via the Signal app, and I have set my messages with her to not be retained for more than one week. I believe I clearly stated that all of my *current* communications with former employees or whistleblowers are "always" conducted via Signal. Even as a non-native English speaker, I assert that Meta's interpretation of my statement is unreasonable given the clear use of the present tense in both their question and my answer and Meta has long been aware that I did not auto-delete all of my Signal messages and has in fact used my disclosed Signal messages in prior proceedings.

18.    In fact, even though I currently "always" use an auto-delete setting on my Signal exchanges, to this day I have still not deleted all prior Signal exchanges with former Meta employees as alleged. If Meta's counsel had sought to clarify instead of trying to take things out of context, they could have, for instance, learned that the Signal exchange with Dr. Alison Lee that was described in my Tennessee testimony was not only not "auto-deleted," *it has still not been deleted*. To be clear, this exchange occurred in December 2025 long after the subpoena coverage period, and it would not have been responsive in any event because it did not address social media safety issues for children. In her message, Dr Lee simply said some complimentary things to me and followed up with a question about artificial intelligence safety issues for children, which is her new area of research. Clearly, I was not bent on deleting all records of my communications with other former employee witnesses.

19.    I do not ever recall communicating over Signal with former employee witnesses Vaishnavi Jayakumar, Samir Patel, Kang-Xing Jin, or Margaret Gould Stewart.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

BAKER BOTTS L.L.P.
ATTORNEYS AT LAW
PALO ALTO

DECLARATION OF NON-PARTY ARTURO BEJAR

Executed on August 11, 2026, in Oakland, California

_____
Arturo Bejar

BAKER BOTTS L.L.P.
ATTORNEYS AT LAW
PALO ALTO

DECLARATION OF NON-PARTY ARTURO BEJAR