Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

*Attorneys for Defendant Meta Platforms, Inc. f/k/a Facebook, Inc.*

*[Additional counsel listed on signature pages]*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>*People of the State of California, et al. v. Meta Platforms, Inc. et al.* | MDL No. 3047<br><br>Case Nos.: 4:22-md-03047-YGR<br>4:23-cv-05448-YGR<br><br>**META'S BENCH BRIEF IN SUPPORT OF OBJECTIONS TO TRIAL TESTIMONY OF COLIN GRAY**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

The State AGs have designated Colin Gray as an expert in "dark patterns" who is "expected to testify that Meta employed dark patterns and attention capture patterns to maximize user engagement," and "that Meta declined to implement alternative designs that were better suited to safeguard user wellbeing." ECF 461 (3282) at 7. Dr. Gray had been listed as a may-call witness, but the State AGs have now indicated he will testify in the first week of trial. Meta hereby submits this bench brief in support of its objections to Dr. Gray's testimony.

## I. INTRODUCTION

This trial is confined to (i) state-law misrepresentation claims based on 51 specific statements identified by the State AGs, (ii) state-law unfairness claims based on three specific features of Meta's platform (time management tools, age-verification systems, and multiple accounts), and (iii) a federal COPPA claim. Dr. Gray's opinions are not probative of any claimed misrepresentations—none of which refer to "dark patterns" or "attention capture patterns." Dr. Gray's identification of "dark patterns" or "attention capture features" should also be barred insofar as it is based on features (particularly notifications, likes, infinite scroll and algorithms) that are subject to Section 230 immunity. His testimony on "dark patterns" should thus be confined to two alleged unfair features, age verification and time management tools—the only ones at issue in this trial that are addressed in his reports.[1] Further, Dr. Gray's opinions about "alternative designs" that Meta could have implemented are not relevant either to the misrepresentation or unfairness claims—which turn on what Meta actually said and did, not whether it could have done something differently.

## II. BACKGROUND

Dr. Gray defines "dark patterns" as "instances where design choices subvert, impair, or distort the ability of a user to make autonomous and informed choices in relation to digital systems regardless of a designer's intent." Ex. A (Gray Expert Report) at 3.[2] He defines "attention capture damaging patterns" as "practices focused on capturing users' attention that—in concept and implementation—overlap extensively with dark patterns." *Id.* at 17. He concludes that "Instagram embedded dark patterns

[1] Dr. Gray's reports contain no opinions about Meta's multiple accounts feature.

[2] All exhibit references herein are to the Simonsen Declaration.

throughout the user experience," creating "a platform environment that is easy to enter, difficult to leave, and calibrated to extract and retain user attention for as long as possible." *Id*. at 31-32. He concludes that "[t]hese are not failures of specific features" and rather that "Meta's platform operates as an integrated system of manipulative design" where the "harms of this system are the foreseeable result of design choices made in pursuit of platform growth, revenue, and data accumulation, at the expense of user autonomy and well-being." *Id*. at 33.

Dr. Gray also opines that Meta has "no mechanism to cross-validate age using alternative data sources (e.g., parental or ID verification, facial estimation, inferences based on IP address or device)" and that "[t]his lack of friction allows a child or teen to easily circumvent the age gate and access the platform." *Id*. at 36. But his rebuttal report states that he is "not proposing any one of these specific methods to resolve Meta's age verification failure" and that instead he "present[s] these as possibilities that Meta should have robustly tested and investigated." Ex. B (Gray Rebuttal Report) at 9. With respect to time management tools, Dr. Gray notes that Meta offered certain of these tools "only as opt-in settings, not defaults," and that these tools "place the burden of self-regulation on users without meaningfully addressing the structural design patterns—such as infinite scroll and recapture notifications—that drive overuse and harm." Ex. A at 50-51.

## III. ARGUMENT

### A. Dr. Gray's Opinions on "Dark Patterns" Are Not Probative of any Alleged Misrepresentation.

Dr. Gray's opinions about "dark patterns" or "attention capture damaging patterns" are not relevant to the question whether any of the alleged misrepresentations at issue in this trial are false or misleading. Not one of those statements mentions "dark patterns," and not one would be proven false or misleading by testimony on "dark patterns." The phenomenon of "dark patterns"—even if it can be proven—is entirely unrelated to any statements that the State AGs are challenging as misrepresentations. Dr. Gray's testimony is thus not relevant under Rule 401; or at a minimum the risk of confusion and misleading the jury outweighs any probative value of such testimony as proof of a misrepresentation.

Put another way, it cannot be the case that these 51 at-issue statements open the door to a general referendum on the impact of social media on teens. That is not the legal issue presented by the State AGs'

misrepresentation claims. Allegations of a generalized "scheme" do not supplant the State AGs' burden to prove that each alleged misrepresentation is independently actionable—particularly when the State AGs have disclaimed an omissions theory.[3] Even the State AGs' claim of a "deceptive scheme" requires proof of the existence of that scheme and that each individual statement is a deceptive part of it, or is separately false or misleading. And by Dr. Gray's own admission, deception is not required for something to be a dark pattern. *See* Ex. C (Gray Dep. Tr.) at 140:12–14.

Permitting broad-ranging critiques of social media, unmoored from the at-issue statements, would turn these misrepresentation claims into a free-ranging challenge to the impact of social media on teen users. But that is not the claim the State AGs have pled. They are asserting narrow misrepresentation claims—not, for instance, a public nuisance claim or a broad-based challenge to the impact of social media in their states—and they should be held to the boundaries of that claim in terms of the evidence they can present to prove it.

**B. Dr. Gray's Opinions on "Dark Patterns" Should Be Excluded Insofar as They Are Based on Features Subject to Section 230 Immunity.**

Dr. Gray bases his opinions about "dark patterns" and "attention capture damaging patterns" on features that are subject to immunity under Section 230. In particular, he describes "manipulative design practices" involving "interactive hooks" such as infinite scroll and auto-play and "social brokering" through tactics that "maximize connecting with multiple people." Ex. A at 20-21. As he notes, "infinite scroll and auto-play … contribute to what has been termed attention capture," and "push notifications, countdowns, infinite scroll and auto-play" are "specifically designed to induce addictive behavior." *Id*. at 22. He opines that Meta's features are "designed to normalize constant engagement: immediate exposure to algorithmically curated content, auto-play videos and stories, persistent notifications, and a continuous feed structure that reinforces return behaviors," *id*. at 45, and that "structural design patterns—such as infinite scroll and recapture notifications—… drive overuse and harm," *id*. at 50.

This Court has already held that algorithms, infinite scroll, notifications and auto-play are subject to Section 230 immunity. *See* ECF 123 (1214) at 25-29. Dr. Gray therefore should not be permitted to

[3] See Meta's Proposed Findings of Fact and Conclusions of Law, ECF 503 (3321) at 131-44.

testify about "dark patterns" and "attention capture damaging patterns" related to those features. He should only be able to testify about the features at issue in the unfairness claims that are addressed in his reports—namely, time management tools and age verification.

### C. Dr. Gray's Opinions on Alternative Designs Should Be Excluded.

Dr. Gray opines that Meta "*could have* designed Instagram to be less harmful." Ex. A at 56 (emphasis added). He opines that Meta "*could have* implemented additional layers of [age] verification," that it "*could have* introduced onboarding sequences that prioritized safety, social media literacy, and patterns of intentional use," that it "*could have* developed parental controls much earlier," and that it "*could have* offered a clear, linear path to deletion" of accounts," that it "*could have* encouraged users to set boundaries around communication, offering bulk notification control, opt-out defaults, and custom engagement strategies for teens." *Id*. at 56-57 (emphases added).[4] He opines that Meta "had the tools and responsibility to design a safer platform" and its approach was "an active abdication of professional responsibility." *Id*. at 58.

This testimony should be excluded on two separate bases. First, the issue in this trial is not what Meta "could have" done differently, but rather whether what it actually did was an unfair practice. Testimony about whether Meta could have adopted different designs is not probative of whether Meta's actual conduct was an unfair practice—because not one of the state laws at issue recognizes a principle of unfairness based on alternatives that the defendant did not adopt. The question instead is whether what Meta *actually did* was an unfair practice, not whether an expert can hypothesize an alternative that would have been "better." *See*, *e.g.*, ECF 123 (1214) at 46-49 (summarizing FTC Section 5 standard, focusing on whether "Meta's purported unfair acts and practices cause substantial injury to consumers" that were "not outweighed by countervailing benefits to consumers") (quotation omitted). If unfairness claims can

---

[4] Notably, while Dr. Gray expresses numerous opinions about what Meta *could* have done, he disclaims offering any opinions about what Meta *should* have done. *See* Ex. C (Gray Dep. Tr.) at 418:24–419:4 ("I did provide opinions on techniques that could be used and that were commonly known in different industry settings. But I did not draw any conclusions about which of the specific techniques Meta should have used."). To the extent the State AGs proffer his testimony in the liability phase of trial to support their claims for injunctive relief, Dr. Gray's admitted failure to offer opinions about whether Meta should have done something differently makes this testimony irrelevant to injunctive relief as well.

be proven by proffering evidence about what a major corporation *could* have done, rather than whether what the corporation actually did is unfair, the scope of state-law unfair practices claims would be virtually limitless because a company's actual practices and policies can always be second-guessed by experts who opine—years later—that the company "could have" done something different or better. Such evidence is not relevant to whether the *actual acts* "cause substantial injury to consumers" that were "not outweighed by countervailing benefits." At a minimum, the probative value of such evidence is outweighed by the risks of jury confusion—since the natural tendency would be to find a practice "unfair" if a better alternative can be identified, even though that is not the legal standard for an unfair practice.

Second, Dr. Gray is opining on various features that the State AGs have not challenged as unfair practices—in particular, (i) its "onboarding sequences," (ii) its processes for deleting accounts, and (iii) its parental controls. Because the State AGs have not alleged that these three features are unfair practices, Dr. Gray should not be permitted to inject them into the trial through his opinions on what Meta could have done differently. Dr. Gray's testimony should be confined to the specific features at issue in the unfair practices claims—and should also be confined to what Meta actually did, not what it could have done differently.

## IV. CONCLUSION

For these reasons, the Court should exclude testimony from Dr. Gray that it not specifically addressed to the features at issue in the unfairness claims that he addresses in his report—time management and age verification. He should be barred from broader testimony on "dark patterns" and "attention capture damaging patterns," both because such testimony is not probative of any alleged misrepresentations and would be based on features subject to Section 230 immunity. He should also be barred from opining on what Meta could have done differently, and should be confined to testimony about what Meta actually did.

DATED: August 17, 2026

Respectfully submitted,

By: */s/ Ashley M. Simonsen*

Ashley M. Simonsen (State Bar. No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: + 1 (424) 332-4800
Email: asimonsen@cov.com

Paul W. Schmidt, *pro hac vice*
Timothy C. Hester, *pro hac vice*
David N. Sneed, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-5324
Facsimile: + 1 (202) 778-5324
Email: pschmidt@cov.com
Email: thester@cov.com
Email: dsneed@cov.com

Brian L. Stekloff, *pro hac vice*
WILKINSON STEKLOFF LLP
2001 M Street, NW
Washington, DC 20036
Telephone: + 1 (202) 847-4030
Email: bstekloff@wilkinsonstekloff.com

Moira Penza, *pro hac vice*
WILKINSON STEKLOFF LLP
130 W 42nd Street
New York, NY 10036
Telephone: + 1 (212) 294-8914
Email: mpenza@wilkinsonstekloff.com

*Attorneys for Defendant Meta Platforms, Inc. f/k/a Facebook, Inc.*