Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

*Attorney for Defendant Meta Platforms, Inc. f/k/a Facebook, Inc.*

*[Additional counsel listed on signature pages]*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION

This Document Relates To:

*People of the State of California, et al. v. Meta Platforms, Inc., et al.*

MDL No. 3047

Case Nos.: 4:22-md-03047-YGR-PHK
4:23-cv-05448-YGR

**META'S BENCH BRIEF IN SUPPORT OF OBJECTIONS TO EXHIBIT NO. 1243**

Judge: Hon. Yvonne Gonzalez Rogers
Magistrate Judge: Hon. Peter H. Kang

Date: August 25, 2026
Time: 8:00 AM
Place: Courtroom 1, 4th Floor

## I. INTRODUCTION

Meta objects to the admission of Exhibit No. 1243, an internal chat between Meta employees, because it contains inadmissible hearsay and is substantially more prejudicial than probative to the issues in this case. Exhibit No. 1243 is an informal conversation in which Shayli Jimenez, a user experience researcher, describes Instagram as a "drug," and another Meta researcher responds, "Lol, I mean, all social media. We're basically pushers." Ex. A at 1.[1] Meta anticipates that the AGs will seek to introduce Exhibit No. 1243 through the testimony of Ms. Jimenez. *See* 8/18/26 Trial Tr. 211:18-22. The informal discussion in Exhibit No. 1243 does not constitute a business record, nor is a joking chat by a junior employee an admission of the Company. And even if not hearsay, the prejudicial effect of this joking, informal exchange vastly outweighs its probative value. The Court should thus exclude Exhibit No. 1243 under Rules 802 and 403, or in the alternative, apply redactions to remedy any prejudice to Meta. *See* *United States v. Hitt*, 981 F.2d 422, 424-25 (9th Cir. 1992) (admitting "highly prejudicial" document "with nothing at all to keep the jury from being misled—no limiting instruction, no redaction" is error).

## II. BACKGROUND

Ms. Jimenez has worked as a user experience researcher at Meta since 2015. *See* Ex. B, 2/11/25 Jimenez Dep. 16:7-9; Ex. C, 2/12/25 Jimenez Dep. 102:22. Between March 2020 and October 2023, Ms. Jimenez conducted user experience research for Instagram, with a focus on the teen market segment. *See id.* 25:4-12; 36:10-13. Her role was to provide "a foundational understanding of teens as a population" and "contextualize teens within understanding how we should create our product to provide them a better experience." 2/12/25 Jimenez Dep. 111:5-20. That function involved qualitative, rather than quantitative, research, meaning that Ms. Jimenez's work was "highly directional and self-reported." 2/11/25 Jimenez Dep. 32:15-20. While she nominally "sat within the IG growth research team," Ms. Jimenez was "not embedded on any IG growth product teams," and did not "consider [her]self an IG growth researcher." 2/12/25 Jimenez Dep. 177:3-6.

As a user experience researcher, Ms. Jimenez had a "remit to help the broader Instagram audience of employees understand teens as a user segment." *Id.* 105:5-9. That involved "collaborat[ion] with cross-

[1] Ms. Jimenez is identified as "Shayli Roiz" in Exhibit No. 1243.

functional partners" to give them "direction for how to improve the product." 2/11/25 Jimenez Dep. 24:2-6. However, Ms. Jimenez is not a "teen subject matter expert of teen well-being or mental health," and the relationship between social media use and mental health was not her "area of expertise or under my remit of research I was intending to do." 2/12/25 Jimenez Dep. 191:20-192:2; 192:20-22; *see also id.* 29:14-16 ("I never studied teen health or teen well-being. I never focused on those topics."). Ms. Jimenez also did not work on any research team specifically focused on well-being. *See id.* 105:1-5. Ms. Jimenez does not have training in psychology, neuroscience, or addiction, and she is neither a data scientist nor a medical doctor. *See id.* 21:6-12; 101:18-102:2; 2/11/25 Jimenez Dep. 106:7-8.

On September 10, 2020, Ms. Jimenez engaged in a "casual chat" with two fellow researchers. *See id.* 275:23. In the chat, Ms. Jimenez wrote "oh my gosh yall IG is a drug," to which her colleague responded, "Lol, I mean, all social media. We're basically pushers." Ex. A at 1. Ms. Jimenez further remarked in the chat that "[w]e are causing Reward Deficit Disorder bc people are binging on IG so much they can't feel reward anymore." *Id.* Ms. Jimenez testified at her deposition that the "drug" remark was not a serious observation but rather a "casual," "hyperbolic," and "sarcastic[]" "joke" and "exaggeration" designed to "grab [her colleagues'] attention" in an informal chat among fellow researchers. 2/11/25 Jimenez Dep. 264:9-10, 277:6-23, 278:24-279:17, 291:17-24; *id.* 344:20-23 ("this is a private conversation between colleagues talking shop, talking casually, I'm not going to type out every single thought in my head"). Those remarks were "not [] fact or anything researcher-based." *Id.* 280:11-12.

In their opening statement, the AGs pointed to Exhibit No. 1243 as evidence that "Meta's own employees repeatedly acknowledged that the platforms and its features were constructed, were built, were designed to encourage compulsive use." 8/18/26 Trial Tr. 261:2-4. Meta objected to the AGs' use of Exhibit No. 1243 in their opening. *See, e.g.*, ECF No. 519 (3356) at 13-14; 8/18/26 Trial Tr. 211:1-5. The Court denied Meta's objection while reserving final decision on the admissibility of exhibits referenced in opening. *See* 8/13/26 Hrg. Tr. 6:11-16 ("Whether or not they ultimately come in, that's on you. I'm expecting that you've got some reasonable basis for being able to proffer what you show to the jury.").

## III. ARGUMENT

### A. Exhibit No. 1243 is Not a Business Record.

The Ninth Circuit has long recognized that a writing "patently intended as [a] communication[] between employees, and not as [a] record[] of company activity," and "apparently written as a result of the exercise of individual judgment and discretion," is not a business record. *Standard Oil Co. of Cal. v. Moore*, 251 F.2d 188, 214-15 (9th Cir. 1957). Under the business records exception, "hearsay statements are admissible only if the observer or participant in furnishing the information to be recorded was acting routinely, under a duty of accuracy, with employer reliance on the result, or in short in the regular course of business." *Clark v. City of Los Angeles*, 650 F.2d 1033, 1037 (9th Cir. 1981) (cleaned up).

The casual conversation between Ms. Jimenez and her colleagues lacks the imprimatur of a business record. *See Monotype Corp. v. Int'l Typeface Corp.*, 43 F.3d 443, 450 (9th Cir. 1994) (emails are not automatically admissible under the business records exception because e-mail is less of "systematic business activity" than other computer-generated business records). "[C]asual form[s] of communication" between employees do "not hold the same expectation of trustworthiness as other records usually kept in the course of business." *Rogers v. Oregon Trail Elec. Consumers Co-op., Inc.*, 2012 WL 1635127, at *8 (D. Or. May 8, 2012) (emails between company employees inadmissible hearsay). The conversation in Exhibit No. 1243 instead reflects "casual and spontaneous informality" and is therefore "far removed from systematic and permanent recordkeeping." *See id.* at *8 n.3 (citation omitted); *see also United States v. Browne*, 834 F.3d 403, 410-11 (3d Cir. 2016) ("Facebook chat logs" are not business records when "Facebook does not purport to verify or rely on the substantive contents of the communications in the course of business"). Ms. Jimenez's comments were also the product of her "individual judgment and discretion," untethered to any specific research she conducted in her role at Meta. *Moore*, 251 F.2d at 215. Nor is it dispositive that the chat logs were stored by Meta. "Many business-related emails will be stored forever in electronic purgatory. But absent a showing that the emails were kept for future, business-related reference, the showing required for Rule 803(6)(B) will be lacking." *United States v. Kachkar*, 2022 WL 2704358, at *7 (11th Cir. July 12, 2022) (citations omitted).

### B. Exhibit No. 1243 is Not a Party Admission Under Rule 801(d)(2)(D).

Under Rule 801(d)(2)(D), the critical question is whether the statement concerns a matter that was

within the scope of the declarant's employment. *Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 999 (9th Cir. 2019). Scope must be assessed by reference to the specific nature of the employee's duties, not the company's business writ large. *See Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002) (party failed to lay a foundation for admission by merely stating declarant's job title without "provid[ing] any description of [his] job responsibilities" and "show[ing] that [the] job duties had anything to do with" the matter at hand). "[N]ot everything that relates to one's job falls within the scope of one's agency or employment." *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 950 (7th Cir. 1998).

Rule 801(d)(2)(D) is motivated by the understanding that an employee is typically "well informed about acts in the course of the business," and that "while the employment continues, the employee is not likely to make the statements unless they are true." *Weil*, 922 F.3d at 1000 (cleaned up). Those circumstances are not present here. Ms. Jimenez was a user experience researcher whose work focused broadly on teen market demographics. *See* 2/11/25 Jimenez Dep. 35:2-6. Meta has dedicated researchers who study Instagram and teen mental health and well-being; Ms. Jimenez was not a part of that team. *See* 2/12/25 Jimenez Dep. 105:1-5. Her comparison of Instagram to a "drug" was a self-described joke, not a professional assessment within her area of competence. 2/11/25 Jimenez Dep. 277:6-8; *see also Oki Am., Inc. v. Microtech Int'l, Inc.*, 872 F.2d 312, 314 (9th Cir. 1989) (excluding statement where declarant testified that subject matter was "not in my geography" and so the statement "did not concern a matter within the scope of his employment"). It was, in her own words, an "exaggeration" designed "to grab their attention" in a casual chat, and therefore cannot be deemed an admission by Meta. 2/11/25 Jimenez Dep. 277:6-8; 279:15.

### C. The Probative Value of Exhibit No. 1243 Is Substantially Outweighed by the Risk of Unfair Prejudice.

Exhibit No. 1243 contains precisely the kind of inflammatory characterization that Rule 403 is designed to exclude. *See United States v. LeMay*, 260 F.3d 1018, 1026 (9th Cir. 2001) (Rule 403 is meant to "ensure that potentially devastating evidence of little probative value will not reach the jury"). The probative value of Exhibit No. 1243 is minimal. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008). The AGs seek to use it as evidence that Meta employees knew its platforms were designed to encourage "compulsive use." ECF No. 533 (3391) at 33. But Ms. Jimenez's statements in

this chat reflect nothing more than casual banter by an employee who, by her own admission, lacks expertise in the relationship between teen mental health and social media, and did not base her comments on facts or research. 2/11/25 Jimenez Dep. 277:6-8; 280:11-12. A junior employee's offhand quip that "IG is a drug" is hardly probative of Meta's corporate knowledge or intent, particularly when it was not that employee's responsibility to study those issues.

The risk of unfair prejudice, by contrast, is high. The labels "drug" and "pushers" carry powerful connotations that would invite the jury to decide the case on an emotional basis rather than on "proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). Such emotionally laden terms would plainly "appeal[] to the jury's sympathies, arouse[] its sense of horror, provoke[] its instinct to punish." *United States v. Skillman*, 922 F.2d 1370, 1374 (9th Cir. 1990). The Rule 403 implications are particularly acute here given that Ms. Jimenez lacks the specialized expertise required to opine on mental health disorders. *See, e.g.*, *Sowers v. R.J. Reynolds Tobacco Co.*, 2015 WL 12839775, at *2 (M.D. Fla. Jan. 23, 2015), *aff'd*, 975 F.3d 1112 (11th Cir. 2020) (excluding "characterization of [] illnesses and alleged addiction as a 'death sentence'" as "unduly inflammatory"). In any event, testimony on such matters would be impermissible lay opinion because it is not "rationally based on the witness's perception," Fed. R. Evid. 701—particularly because Ms. Jimenez testified she has no expertise on the subject of addiction. 2/12/25 Jimenez Dep. 101:22-23.

Put differently, the AGs' allegations that Meta designed its platforms to be addictive should not be proven through an inflammatory, off-the-cuff comment by a junior employee—particularly one who testified unambiguously that she has no qualifications on the subject of addiction and through this joking, informal exchange did not intend to convey that Instagram was a "drug." Nor can the AGs establish foundation for the statements of the two other chat participants, who are not testifying at trial and whose remarks would reach the jury without context or cross-examination.

## IV. CONCLUSION

For these reasons, the Court should exclude Exhibit No. 1243 under Rules 802 and 403. In the alternative, Meta requests that the Court redact certain statements contained in Exhibit No. 1243 to address the prejudice to Meta from introducing such statements.

DATED: August 24, 2026

Respectfully submitted,

By: */s/ Ashley M. Simonsen*

Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

Paul W. Schmidt (*pro hac vice*)
Timothy C. Hester (*pro hac vice*)
David N. Sneed (*pro hac vice*)
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
Email: pschmidt@cov.com
Email: thester@cov.com
Email: dsneed@cov.com

By: */s/ Brian L. Stekloff*

Brian L. Stekloff (*pro hac vice*)
WILKINSON STEKLOFF LLP
2001 M Street, NW, Floor 10
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
Email: bstekloff@wilkinsonstekloff.com

Moira Penza (*pro hac vice*)
WILKINSON STEKLOFF LLP
130 W 42nd Street, Floor 24
New York, NY 10036
Telephone: (212) 294-8910
Facsimile: (202) 847-4005
Email: mpenza@wilkinsonstekloff.com

*Attorneys for Defendant Meta Platforms, Inc. f/k/a Facebook, Inc.*