UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PEOPLE OF THE STATE OF CALIFORNIA, ET AL.**,<br>Plaintiffs,<br>v.<br>**META PLATFORMS INC.**,<br>Defendant. | Case No. 4:23-cv-05448-YGR<br><br>**TRIAL ORDER NO. 3 RE TRIAL PROCEEDINGS, TIMING OF JUROR DISCHARGE, & PRIVILEGE DISPUTE** |

**TO ALL PARTIES AND COUNSEL OF RECORD:**

*First*, before the Court is the parties' joint Motion to Enter Consent Judgment (Dkt. No. 572). Earlier today, the Court **SUSPENDED** the trial in this action pending resolution of the motion.

*Second,* the Court grants the motion on the terms set forth in a contemporaneously filed order. Upon filing, judgment shall be entered, the trial is deemed vacated, and the jury shall be advised that they are each discharged immediately.

Now that the case is over, jurors may choose whether or not to discuss the case with anyone. Thus, the lawyers, parties, or their representatives may now talk to jurors. However, I hereby **ORDER** that those **discussions must occur at a reasonable time and place and with the juror's consent.**

Jurors shall be advised to immediately report to the Court any unreasonable contact made without their consent. A lawyer, party, or representative who violates this rule now violates a Court Order and may be fined.

*Third*, the Court notes here that on the record, the Court ruled that the privilege redactions in Exhibit 4255 were inappropriate and ordered Meta to produce the unredacted version. Each version is attached hereto as Attachments A and B, respectively. Meta objected to production and

United States District Court
Northern District of California

United States District Court
Northern District of California

admission of the unredacted exhibit on grounds of attorney-client privilege and Federal Rule of Evidence 403.

The parties do not dispute the legal standard for attorney-client privilege. "The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021) (quoting *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020)). The Ninth Circuit has directed courts to apply the "primary purpose test" which requires a court to consider "whether the primary purpose of the communication is to give or receive legal advice, as opposed to business" advice. *Id.*[1]

The exhibit in question is a "Workplace"[2] chat between three non-lawyer Meta employees. Meta contends that the privilege redactions reflect discussion of attorney legal advice. Based upon the testimony heard on the record in this trial and the content of the exhibit itself, the purported attorney advice consists solely of feedback provided on an internal slide deck the three employees prepared for submission to leadership.

On the record on August 25, 2026, Meta argued that the primary purpose of the advice was to ensure the slide deck had "accurate information" because any slide deck shown to a Meta executive might become discoverable in a lawsuit. Such a justification, even if true, is far too broad-based. By this logic, Meta could withhold all of its business communications with leadership as privileged simply by asserting the purpose of the communication was to ensure

---

[1] The standard for attorney-client privilege in the Ninth Circuit is different than in other jurisdictions, including California and other federal circuits. Here, the privilege is "narrowly and strictly construed." *United States v. Gray*, 876 F.2d 1411, 1415 (9th Cir. 1989) (citing *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981)). Importantly, the Ninth Circuit has explicitly rejected the "because of" test, which looks at whether a dual-purpose communication was made in anticipation of litigation, finding it too broad for the principles behind the attorney-client privilege and therefore more suited for the work-product doctrine. *In re Grand Jury*, 23 F.4th at 1093-94. Although *Grand Jury* left open the question of whether legal advice must be "*the* primary purpose" or just "*a* primary purpose," the Ninth Circuit has since declined to apply the test in the latter manner and instead endorsed the former test such that legal advice must be more than merely "*a* primary purpose" for the privilege to attach. *Epic Games, Inc. v. Apple Inc.*, 161 F.4th 1162, 1179 (9th Cir. 2025).

[2] The Court understands this to be an internal Meta messaging app, akin to Microsoft Teams or Slack.

accuracy of work product.

The Court has reviewed the entire document and finds that the primary purpose of the underlying attorney communications was not legal advice.

The Court highlights some examples here for purposes of elucidation. *One*, the following message was redacted to exclude the emphasized portion: "**I understand we don't want to publish it**, but it will be increasingly hard for adam/max to understand the severity of each space." This redaction is entirely inappropriate. There is no indication that the "we" referenced is legal – in fact, neither the speaker nor the other employees in the chat are lawyers. Given the testimony heard at trial, the Court finds that the referenced reticence to "publish"[3] the material was a business decision to prevent potential leaks of sensitive business information to the public.

*Two*, the message "So for Rachany's comment on slide 5, **if we have to remove the teen swop stat**, this section then becomes pretty weak" was redacted to exclude the emphasized portion. Regarding Meta's represented rationale, the Court finds that advice to remove the data referenced ("teen swop stat") would not make the slide more "accurate," much less a conveyance of legal advice.[4]

*Third*, Counsel for Meta specifically referenced the following message on the record in support of its argument to maintain these privilege claims: "**Apparently we need to limit their exposure to this information**. From Rachany, **'For Max or higher, we should try to get it buttoned up so that there's no litigation exposure risk for Max or Adam on what is in this deck** . . ." This quote is the closest the redactions come to the line of what may be privileged,

---

[3] The Court understands this likely referred to publishing the material to an internal Meta site.

[4] Meta also argued this Court should follow Magistrate Judge Kang's order on this issue. This Court previously upheld Magistrate Judge Kang's order finding the crime fraud exception did not apply. Pretrial Order No. 3, Dkt. No. 439. This Court's Pretrial Order was based only on the argument briefed, whether Magistrate Judge Kang applied the wrong legal standard. In his order, Magistrate Judge Kang explained that "a party in a civil action must establish the crime-fraud exception *by a preponderance of the evidence* when challenging attorney-client privilege." Dkt. No. 3091 (emphasis added). Although he found the AGs did not meet that standard, the Court finds that the evidence subsequently provided at trial, which was not before Magistrate Judge Kang at the time, could support a finding that the crime fraud exception applies. Because the Court has decided this issue on other grounds, it declines to reach this question.

United States District Court
Northern District of California

because it appears to be a direct quote of an in-house lawyer explaining why she is providing the advice in question. Meta's counsel argued on the record that the stated legal purpose was to ensure accuracy, not to limit Meta leadership's "exposure to" information from its research and design teams.

As the testimony revealed, many perspectives are brought to documents and slide decks in the normal course of business. Litigation risk is but one part of business risk. That a lawyer may approach a business document, and the words used therein, with an eye for litigation risk does not transform that lawyer's edits from business advice into attorney-client advice. There was no legal issue for which the drafters of that business document sought advice. The issue was merely an attorney's view of generic litigation risk.

**IT IS SO ORDERED.**

Dated: August 26, 2026

YVONNE GONZALEZ ROGERS
CHIEF UNITED STATES DISTRICT JUDGE