[*Submitting Counsel on Signature Page*]

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR<br><br>**PERSONAL INJURY AND SCHOOL DISTRICT PLAINTIFFS' RESPONSE TO META'S NOTICE OF INTENT TO UNDERTAKE REASSESSMENT OF PRIVILEGE REDACTIONS IN PRODUCED DOCUMENTS**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br><br>Magistrate Judge: Hon. Peter H. Kang |

The personal injury and school district Plaintiffs ("Plaintiffs") respectfully submit this Response to Meta's Notice of Intent to Undertake Reassessment of Privilege Redactions in Produced Documents (Dkt. No. 3465) (the "Notice"), filed by Meta without meeting and conferring with Plaintiffs or providing advance notice.

Plaintiffs welcome a meaningful review of Meta's privilege claims. Given testimony and other indicators of Meta's pattern of overbroad privilege designations, its voluminous belated de-designations, and this Court's recent finding that Meta applied an improper standard for privilege redactions, such a reassessment is clearly in order. But it will not be meaningful if Meta controls the process unilaterally, with it alone determining the scope, timing, and outcome.

A review also cannot be meaningful if permitted to take until the end of 2026, as Meta proposes. That is a mere month before the first school district trial and forecloses Plaintiffs' ability to make use of downgraded materials. Nor should the review be limited to redactions: if Meta applied the same overbroad standards when deciding whether documents should be produced at all, responsive, non-privileged materials have very likely been withheld in full.

Plaintiffs therefore respectfully request that the Court appoint a Special Master, at Meta's expense, to oversee a review of both redactions and documents withheld in full, with Plaintiffs permitted to identify an initial list of 300 priority privilege log entries and redactions for review.

The record supports this relief. This Court rejected Meta's privilege redactions in a trial exhibit as "entirely inappropriate" and Meta's theory to support them as "far too broad-based." Trial Order No. 3, Dkt. No. 3450, at 2–3 (Aug. 26, 2026). Meta had argued that attorney involvement in ensuring the "accuracy" of business presentations conferred privilege. On that logic, the Court explained, Meta could "withhold all of its business communications with leadership as privileged." *Id.* If Meta applied that same rationale elsewhere, the problem goes beyond redactions to business communications withheld in full. These demonstrated flaws are precisely why Meta should not be the sole arbiter of whether they are identified and corrected.

Meta's own privilege downgrades highlight the concern. After fact discovery closed in April 2025, Meta de-designated approximately 65,000 documents that it had previously withheld

or redacted as privileged. While Meta pats itself on the back for de-designating some documents that had been labeled as privileged within the company, its corrections show that Meta's original review was fundamentally flawed. They also came too late for Plaintiffs to use those materials in depositions and case development. Meta now proposes to continue its reassessment through the end of 2026, even though preliminary witness lists are due September 14, 2026, motions in limine October 16, 2026, and trial begins February 8, 2027. Dkt. No. 3265. De-designations arriving in late 2026 would leave Plaintiffs little if any opportunity to incorporate newly disclosed evidence into witness preparation, exhibit selections, motions in limine, and trial strategy, let alone to seek necessary follow-up discovery to, for example, establish foundation.

Meta's privilege practices have recently drawn significant judicial criticism. In the Cambridge Analytica litigation, a court in this District sanctioned Meta for a "sustained, brazen stonewalling campaign" involving excessive privilege claims over business communications. *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 655 F. Supp. 3d 899, 926, 936 (N.D. Cal. 2023). More recently, in related litigation, the D.C. Superior Court applied the crime-fraud exception to documents showing that Meta's counsel directed researchers to alter their research to reduce Meta's liability in this MDL—a ruling the D.C. Court of Appeals upheld. *Dist. of Columbia v. Meta Platforms, Inc.*, No. 2023 CAB 006550, 2025 WL 2993672, at *5 (D.C. Super. Oct. 23, 2025); *In re Meta Platforms, Inc.*, 359 A.3d 911, 921 (D.C. App. Jul. 2026).

Recent trial testimony in this MDL and related cases reinforces this record. Meta researchers have testified that privilege designations were applied indiscriminately to internal research. *See* Trial Tr. at 853:25–854:14, 856:3–10, *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, No. 4:22-md-3047 (N.D. Cal. Aug. 24, 2026) ("A.G. Trial") (George Volichenko testifying that privilege was applied as a "blanket policy"); *id.* at 992:7–12 (Aug. 25, 2026) (Francesco Fogu testifying that he was never told why documents were marked privileged); Ex. A (Trial Tr. at 5210:7-5211:4, *State ex rel. Torrez v. Meta Platforms, Inc.*, No. D-101-CV-2023-02838 (N.M. Dist. Ct. Feb. 20, 2026)) (Dr. Alison Lee testifying that Meta's legal department was "closely involved in looking at [researchers'] slides, editing charts, editing words,

editing our interpretation") (excerpt); *see also* A.G. Trial Tr. at 646:7-9, 652:2-9, 1150: 2-5. This Court also observed that testimony from witnesses suggested Meta's privilege designations extended "well beyond what the privilege is designed to protect." A.G. Trial Tr. at 1042:15–2.

Perhaps nothing better illustrates the culture of privilege abuse at Meta than [redacted] *See* Ex. B (META3047MDL-129-00078018 (highlights added)); Ex. C (META3047MDL-318-00017941) (highlights added. [redacted]. Ex. D (META3047MDL-112-00050279) (highlights added).

Despite this record, Meta asserts that it has "prevailed on virtually all" prior privilege challenges in this litigation. Notice at 1–2. This omits significant qualifications in the orders themselves. Judge Kang's December 2024 Rothschild order (Dkt. No. 1620) did not simply uphold Meta's privilege claims. The Court found the slide decks to be "mixed-use documents" containing both potentially privileged material and nonprivileged factual or business information, unredacted substantial portions, and found Meta's declarations "insufficient to justify and support the assertion of privilege on a blanket basis across all redacted materials." *Id.* at 6–8.

Meta's reliance on the January and May 2026 crime-fraud rulings (Dkt. Nos. 2629, 2661-4, 3053, 3096) is similarly misplaced. Those orders resolved whether Plaintiffs had established the crime-fraud exception as to four specific documents, one of which is the same document as to which this Court later rejected a Meta privilege redaction as "entirely inappropriate." Trial Order No. 3 at 3. The D.C. Superior Court also reached the opposite crime-fraud conclusion from Judge Kang as to the same documents, and its ruling was upheld on appeal. And contrary to Meta's claim, Judge Kang did not endorse Meta's privilege process more broadly: he identified deficiencies in Meta's privilege process, including missing versions and privilege-log entries, and attorney declarations he found "of limited utility" and "unpersuasive." Dkt. No. 2661-4 at 20.

Meta also points to Apple's assertion of privilege as to over "one third of the responsive documents" in *Epic Games*, seeking to distinguish its own practices by volume. *Epic Games, Inc.*

*v. Apple Inc.*, 2024 WL 5318836, at *1 (N.D. Cal. Dec. 31, 2024). But the court's concern was not simply the percentage of documents withheld. It found the record "rife with . . . examples of over-designation of privilege" reflecting "a desire to conceal Apple's real decisionmaking process." *Id.* The question is not how Meta's privilege volume compares to Apple's, but whether it repeatedly extended privilege to communications that did not seek or convey legal advice.

Meta itself agrees that further review is warranted—that is the premise of its Notice. The dispute is therefore not whether Meta's privilege claims should be reassessed, but whether Meta should have exclusive control over the scope, methodology, timing, and outcome of that review. Given the record above, neutral oversight is warranted. Plaintiffs respectfully request that the Court appoint a Special Master or other neutral, at Meta's expense, to oversee the reassessment; require that the review encompass both redactions and documents withheld entirely; and permit Plaintiffs to identify an initial list of 300 privilege-log entries and redactions for priority review.

Respectfully submitted,

By: /s/ Lexi J. Hazam

DATED: September 2, 2026

LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

**ATTESTATION**

I, Lexi J. Hazam, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: September 2, 2026

By: *<u>/s/ Lexi J. Hazam</u>*