Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

*Attorney for Defendant Meta Platforms, Inc. f/k/a Facebook, Inc.*

*[Additional counsel listed on signature pages]*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION

This Document Relates To:

*ALL ACTIONS*

MDL No. 3047

Case Nos.: 4:22-md-03047-YGR-PHK

**META'S REPLY TO PI/SD PLAINTIFFS' "RESPONSE" TO META'S NOTICE OF INTENT TO UNDERTAKE REASSESSMENT OF PRIVILEGE REDACTIONS IN PRODUCED DOCUMENTS**

Judge: Hon. Yvonne Gonzalez Rogers
Magistrate Judge: Hon. Peter H. Kang

Throughout this litigation, Meta has taken a reasonable and proactive approach to ensuring that its privilege designations are accurate. For example, last fall, Meta undertook a voluntary review of its entire privilege log, and—applying the Ninth Circuit primary purpose test—downgraded approximately 65,000 documents off its log (60,000 excluding duplicates). *See* ECF (2838) at 7:12–13. And both before and after this re-review, the vast majority of privilege challenges brought by the plaintiffs in this MDL and in related litigation have been resolved in Meta's favor. Meta's decision to voluntarily undertake yet another re-review (of its privilege redactions)—which the PI/SD Plaintiffs agree they "welcome"—is a reflection of Meta's continued commitment to ensuring the accuracy of its privilege determinations. The Court should deny the PI/SD Plaintiffs' request to appoint a Special Master to oversee a review of Meta's privilege claims for three primary reasons.

*First*, like the State AGs, the PI/SD Plaintiffs have "put nothing in front of [the Court] to suggest" that Meta's counsel applied the wrong standard in conducting their privilege review. 8/20/26 Tr. at 657:14–21. To the contrary, Meta has specifically represented to the Court and the plaintiffs that it applied the Ninth Circuit primary purpose test in reviewing documents for privilege, including in conducting its re-review of documents fully withheld as privileged last fall. *See, e.g.*, 8/20/26 Tr. at 654:3-9. *Cf. City of Roseville Employees' Retirement Sys. v. Apple Inc.*, 2023 WL 5519304 at *4 (N.D. Cal. Aug. 25, 2023) (Spero, M.J.) (privilege re-review required under Rule 26(e) only "once it becomes clear that counsel applied the wrong standard in conducting the original review"). There is no basis for a *second* re-review of such fully withheld documents, particularly where Plaintiffs expressly agreed to forgo any further relief as a result of the resulting privilege-downgrade productions, *see* ECF (2949) ¶ 21; the New Mexico court upheld the resulting (narrowed) privilege log against a broad-based attack to 2,600 documents, based on an *in camera* review of 20 documents selected by the plaintiff, *see* Declaration of Ashley M. Simonsen ("Simonsen Decl.") ¶ 2 & Ex. A; and during the recent MDL trial, the Court sustained Meta's privilege claims over both documents withheld in full that the plaintiffs challenged, *see* 8/20/26 Tr. at 644:25–645:6, 650:15–651:18; ECF 562 at 2.

Nevertheless, since Meta's re-review last fall did not encompass Meta's privilege redactions (it involved only documents withheld in toto), *see* Simonsen Decl. ¶ 3, Meta has now elected to re-review those redactions with the Court's recent privilege guidance in mind—in particular, its Order de-

privileging Meta's redactions in one Workplace chat, *see* ECF 575 (3450). As the Court made clear, its decision to un-redact certain attorney comments reflected in that document was based on specific trial testimony that was not before Magistrate Judge Kang or the Court when they previously *upheld* Meta's privilege redactions in the document. *See* 8/25/26 Tr. at 1059:15–23; ECF 575 (3450) at 2:11–12. The Court simply "disagree[d]" with Meta's counsel on the redactions, while finding that no sanction was warranted. 8/25/26 Tr. at 1058:21–24; *see also* ECF 575 (3450) at 3:20 (recognizing that redaction in Workplace chat was "close[] . . . to the line of what may be privileged"). The Court also declined the plaintiffs' suggestion that Meta be ordered, based on the Court's ruling, to conduct a full re-review of its privilege claims. *See* 8/25/26 Tr. at 1056:6–12, 1058:21–24, 1060:1–10. In short, while Meta has voluntarily agreed to undertake a reassessment of its privilege redactions, Plaintiffs have not made the showing necessary to *require* a re-review, let alone by a Special Master.

*Second*, as the PI/SD Plaintiffs' own arguments illustrate, a full re-review of Meta's privilege claims by a Special Master would be infeasible. Plaintiffs argue that Meta's commitment to *complete* its re-review of privilege redactions by the end of 2026 is too late, given the Tucson trial is set for February 2027. ECF (3469) at 2:10–12. As an initial matter, Meta plans to sequence its re-review to first address priority categories of redacted documents, including those on the Tucson and Charleston exhibit lists, and is open to prioritizing other redacted documents that the PI/SD Plaintiffs reasonably identify, including a 300-document sample as their Response specifically references, *see id.* at 2:15–17. But the more fundamental point is that a Special Master process would take vastly more time than the re-review Meta is now undertaking. It took the three Special Masters appointed in *Epic v. Apple* approximately ***six months*** to complete their re-review of just ***23,000 documents*** withheld for privilege, at a pace of 900–1,200 documents per week.[1] Here, Plaintiffs are suggesting a Special Master re-review approximately ***170,000 documents***—50,000 fully withheld for privilege and 120,000 containing privilege redactions, *see* Simonsen Decl. ¶ 3—in ***less than three months***. While Meta believes that only documents

---

[1] *See Epic Games, Inc. v. Apple, Inc.*, Case No. 4:20-cv-05640-YGR, Dkt. No. 1070 (Dec. 11, 2024 Joint Stipulation and Order Regarding Special Master Appointment), Dkt. No. 1171 at 1 (order specifying that, following a re-review, Apple maintained its privilege assertions over 23,000 of the 55,000 documents originally claimed as privileged), Dkt. No. 1574 at 2 (status report disclosing that Special Master review concluded on May 15, 2025).

containing privilege redactions need to be part of the upcoming process, there is simply not enough time to undertake the type of Special Master process this Court implemented in *Epic v. Apple*, or anything close to it, even if the review is limited to privilege-redacted documents.

Notably, the first step of the *Epic v. Apple* process ordered by the Court was a re-review *by the defendant*, *see* Dkt. No. 1092 at 1—exactly what Meta has already done for the documents on its privilege log, and has now committed to do for its privilege redactions.[2] That process will inevitably require further consultations with individual business people and attorneys involved in certain documents to further assess certain redactions—consultations that Meta's attorneys are uniquely positioned to conduct. Particularly given the time remaining to trial and the lack of any showing by Plaintiffs that Meta applied the wrong standard, it would not be appropriate, and would be much less efficient, to appoint a third party with no knowledge of this case, Meta's business, or the individuals and business units involved in the documents at issue to try to conduct such a review.

Indeed, Plaintiffs have offered no basis to question Meta's counsel's ability to narrow Meta's prior privilege redactions in light of the Court's recent guidance. While Plaintiffs now assert that Meta's prior de-privileging of 65,000 documents "show[s] that Meta's original review was fundamentally flawed," *see* ECF (3469) at 3:2–3, that argument overlooks that Meta had just produced hundreds of thousands of documents over a highly accelerated period, with the de-privileged documents constituting less than 2.5% of all documents produced (which total nearly 2.7 million to date), *see* Simonsen Decl. ¶ 3. Moreover, Plaintiffs did not seek any relief with respect to that re-review until March 2026, *see* ECF (2838) at 4–6—over six months after Meta first alerted them (in July 2025) that it was undertaking a re-review, *see id.* at 7, and approximately three months after Meta's last privilege-downgrade production was made (in early December 2025), *see id.* Then, after Meta agreed to various concessions demanded

[2] The process in *Epic v. Apple* then involved identifying and appointing three Special Masters; the defendant submitting any additional information necessary to support its privilege assertions; the Special Masters requesting any additional information needed to assess the claims; the Special Masters providing weekly reports with their rulings; and the Parties filing objections with the Magistrate Judge, including declarations, the other side responding, and the Magistrate Judge ruling. *See* Dkt. No. 1092 at 2-4. At the conclusion of that process, the Special Masters had sustained in full 95.24% of the defendant's privilege assertions. Dkt. No. 1574 at 3.

by Plaintiffs (largely on unrelated issues, *see* ECF (2949) ¶¶ 2, 4, 7, 16–17), they promptly agreed not to seek any further relief as a result of Meta's privilege downgrades, *see id.* ¶ 21.[3]

*Third*, none of Plaintiffs' points or authorities counsels toward a different outcome. Cambridge Analytica was an entirely different case from three years ago, involving different issues, in which Meta was represented by different outside counsel. *See In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 933 (N.D. Cal. 2023). Nor has Meta engaged in a "stonewalling campaign" in this litigation, as Plaintiffs suggest. ECF (3469) at 3:12. Instead, Meta has now *twice* voluntarily agreed to re-review its privilege determinations. As for the D.C. Superior Court's October 23, 2025 crime-fraud ruling, Magistrate Judge Kang reached the opposite conclusion, twice, in decisions that were affirmed by this Court, as did Judge Kuhl in the JCCP.[4] And contrary to Plaintiffs' assertion, the D.C. Court of Appeal did not "uphold" the D.C. Superior Court's erroneous order; the appellate court held that Meta had not met the high standard for mandamus relief, but expressly did not decide whether the trial court's ruling was correct. *See* Simonsen Decl. Ex. B at 11 ("To be clear, we do not decide whether the trial court's crime-fraud ruling was legally and factually correct.").

Plaintiffs are also wrong in asserting that Magistrate Judge Kang "identified deficiencies in Meta's privilege process, including missing versions and privilege-log entries." ECF (3469) at 4:23–24. In his Order *rejecting* Plaintiffs' crime-fraud argument for piercing privilege on four Meta documents, Magistrate Judge Kang ordered Meta to produce prior versions of certain documents and to prepare a privilege log for certain privilege redactions, but not based on a finding of any "deficiencies" or that anything was "missing." *See* ECF (2629) (sealed), ECF (2633-1) (redacted) at 13, 18, 22, 24; ECF

---

[3] As part of this deal, Meta agreed to allow the PI/SD Plaintiffs to attend any of the up-to 12 privilege-downgrade depositions authorized by the Tennessee court, *see* ECF (2949) ¶¶ 9, 11, to take a further deposition of their choice, *see id.* ¶ 11, and to supplement their exhibit list and their experts' MCLs with downgraded documents, *id.* ¶¶ 13–14. The PI/SD Plaintiffs elected to attend three (of four) privilege-downgrade depositions ultimately taken by Tennessee, and not to take the further deposition of their choice, *see* Simonsen Decl. ¶ 5—underscoring the lack of prejudice from Meta's privilege-downgrade productions, and demonstrating that those productions did not, as Plaintiffs assert, "c[o]me too late for Plaintiffs to use those materials in depositions and case development," ECF (3469) at 3:3–4.

[4] *See* ECF (2629) (sealed initial Order); ECF (2633-1) (redacted initial Order); ECF (3053) (sealed reconsideration Order); ECF (3096) (redacted reconsideration Order); ECF 439 (3212) (Order on motion for relief); ECF (2644-14) (JCCP Order).

(3053) (sealed), ECF (3096) (redacted) at 9–11. Indeed, during discovery, Plaintiffs never moved to compel additional versions of the documents at issue (or of any other documents). *See* ECF (2594-1) (sealed), ECF (2600-2) (redacted) at 3–4. And the Privilege Log Protocol negotiated by the Parties and entered by the Court *does not require Parties to log privilege redactions*—only documents withheld as fully privileged. *See* ECF (740) § III.B. Finally, Plaintiffs' assertion that former Meta employees recently testified that "privilege designations were applied indiscriminately to internal research," in addition to mischaracterizing those witnesses' testimony, is beside the point: there is no dispute that Meta's privilege claims *in this litigation* were not determined by such in-house designations. Illustrating the point, Meta produced as *wholly non-privileged* more than 110,000 documents containing the phrase "A/C Priv." Simonsen Decl. ¶ 4; *see also* ECF 586 (3465) at 1.

For all of these reasons, the Court should deny the PI/SD Plaintiffs' request to appoint a Special Master to review Meta's privilege claims. Meta's commitment to reassess documents it redacted for privilege in this litigation is more than sufficient to address the Court's recent privilege guidance.

DATED: September 8, 2026

Respectfully submitted,

By: */s/ Ashley M. Simonsen*

Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

Paul W. Schmidt (*pro hac vice*)
Timothy C. Hester (*pro hac vice*)
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
Email: pschmidt@cov.com
Email: thester@cov.com

**FILER'S ATTESTATION**

I, Ashley M. Simonsen, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED: September 8, 2026 By: */s/ Ashley M. Simonsen*