# Exhibit B

***Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.***

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 26-OA-0001

FILED 07/16/2026
District of Columbia
Court of Appeals

Jason LaVey
Acting Clerk of Court

IN RE META PLATFORMS, INC., *et al.*, PETITIONERS.

On Petition for a Writ of Mandamus to the Superior Court of the District of Columbia (2023-CAB-006550)

(Yvonne Williams, *Judge*)

(Argued April 13, 2026 Decided July 16, 2026)

*Mark W. Mosier*, with whom *Timothy C. Hester* and *John J. DeBoy* were on the petition, for petitioners.

*Ashwin P. Phatak*, Principal Deputy Solicitor General, with whom *Brian L. Schwalb*, Attorney General for the District of Columbia, *Caroline S. Van Zile*, Solicitor General, *Graham E. Phillips*, Deputy Solicitor General, and *Chris Edward Mendez*, Assistant Attorney General, were on the answer, for respondent District of Columbia.

*Jonathan D. Urick*, *Kevin R. Palmer*, *Paul D. Taske*, *Adam G. Unikowsky*, and *Allison N. Douglis* were on the brief for the Chamber of Commerce of the United States of America and NetChoice, *amici curiae*.

*Jonathan M. Redgrave* was on the brief for Lawyers for Civil Justice, *amicus curiae*.

*Michael Tremonte*, *Noam Biale*, *Rebecca Prager*, *Eleuthera Sa*, and *Kobie Flowers* were on the brief for the National Association of Criminal Defense Lawyers, *amicus curiae*.

Before BECKWITH and MCLEESE, *Associate Judges*, and STEADMAN, *Senior Judge*.

MCLEESE, *Associate Judge*: Petitioners Meta Platforms, Inc. and Instagram, LLC (which we refer to collectively as Meta) petition this court for a writ of mandamus directing the Superior Court to vacate two discovery orders requiring Meta to produce to respondent the District of Columbia four documents containing material that the Superior Court concluded was subject to the crime-fraud exception to the attorney-client privilege. "The writ of mandamus is an extraordinary remedy limited to extraordinary" cases. *In re Klayman*, 340 A.3d 1212, 1229 n.20 (D.C. 2025) (citation modified). A party seeking issuance of a writ of mandamus must show, among other things, "a clear and indisputable right to have the writ issue." *Yeager v. Greene*, 502 A.2d 980, 983 (D.C. 1985) (citation modified). We hold that Meta has failed to make that showing, and we therefore deny the petition.

## I. Factual and Procedural Background

Meta operates Facebook and Instagram, social-media platforms that allow users to share, view, and react to user-generated content including photos and videos. The District of Columbia brought suit against Meta in D.C. Superior Court alleging violations of the Consumer Protection Procedures Act (CPPA), D.C. Code § 28-3901 et seq. D.C.'s complaint alleges that Meta engages in unfair and deceptive acts or practices affecting D.C. consumers by developing "addictive features

designed to trick users—particularly children—into spending more time on its Platforms" and by "deceptively misrepresenting to consumers that its Social Media Platforms are safe for children."

Meta is defending against similar claims in several other jurisdictions, including a multidistrict litigation in the Northern District of California. *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, No. 4:22-md-03047-YGR (N.D. Cal.) (case pending); *see also, e.g.*, *Soc. Media Cases*, Nos. JCCP5255, 22STCV21355 (Cal. Super. Ct.) (case pending); *New Mexico v. Meta Platforms, Inc.*, No. D-101-CV-2023-02838 (N.M. Dist. Ct. Mar. 24, 2026) (jury verdict on liability).

The D.C. Superior Court case is currently in discovery. Meta has so far produced over 2.5 million documents to the District, most of which had also been produced in the multidistrict litigation. Meta subsequently issued "clawback" notices to the District seeking the return of several documents that Meta claimed contained privileged material that should not have been disclosed, including the four documents at issue in this petition. *See* Super. Ct. Civ. R. 26(b)(5)(B) ("If information produced in discovery is subject to a claim of privilege . . . , the party making the claim may notify any party that received the information of the claim

and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information . . . .").

The four documents at issue in the current dispute are communications among Meta researchers about internal research related to youth-user wellbeing. Our description in this opinion of the documents and the arguments of the parties is somewhat general because parts of the record in this case are sealed and both the trial court and this court reviewed the documents themselves ex parte. We therefore limit ourselves in this opinion to a description of the documents and the parties' arguments that is consistent with the descriptions that are in the public record.

The District asked the trial court to review the documents in camera and to conclude that even if the documents would otherwise be protected by the attorney-client privilege, the documents were unprivileged under the crime-fraud exception. *See In re Pub. Def. Serv.*, 831 A.2d 890, 904, 906, 910 (D.C. 2003) (explaining that privileged status of attorney-client communications is "forfeited" when party seeking disclosure establishes probable cause to believe that "communications [we]re intended directly to advance a particular criminal or fraudulent endeavor" and communications "furthered the client's improper purpose") (citation modified). The District argued, among other things, that there was probable cause to believe that Meta engaged in a crime, fraud, or misconduct

by acting on the advice of its counsel to "block research and instruct researchers to alter research to stymie law enforcement investigations." (Brackets omitted.)

Meta opposed the motion, arguing that the District had not met its burden to establish that the crime-fraud exception applies to the documents and that ex parte review of the documents was not warranted. Meta contended that the District's characterization of the documents was "neither factually accurate nor legally cognizable as fraud." The communications in the documents, in Meta's view, consisted of "conventional" advice to a client "to mitigate legal risk" and "modify or use careful language."

In reply, the District argued that it had met its burden to show probable cause that the documents "show advice from lawyers in furtherance of a consumer fraud." Specifically, the District argued that the documents, understood in the context of other documents that Meta had produced, showed that Meta's attorneys "were part of such a scheme to defraud" by suppressing unfavorable research while publicly claiming that it was not hiding internal research. The District subsequently filed a notice of supplemental authority in support of its crime-fraud argument, citing congressional testimony in which a former Meta researcher testified that Meta stopped research projects into child safety because Meta did not want to know the results, restricted the information researchers could collect, altered research designs

and modified research results, and required Meta researchers to delete data showing harms to children that were occurring on Meta's platforms.

Meta filed a sur-reply objecting to the District's characterization of the material raised in the District's reply and notice of supplemental authority, arguing that the District presented a "misleading picture of reasonable efforts that Meta undertook to evaluate its research programs."

The trial court granted the District's request for in camera review of the documents. The trial court described the documents as follows:

> Documents 1 and 2 contain communications between Meta researchers relaying advice from Meta's counsel that researchers should remove portions of research showing Meta's knowledge of teen users' developmental vulnerability because the research could be used by government enforcers investigating Meta. Document 3 contains communications between Meta researchers about efforts of Meta's counsel to block or redesign research about teen mental health harms due to litigation risks in lawsuits against Meta. Finally, Document 4 contains communications between Meta researchers recounting legal advice and attorney work product related to a presentation about teens' exposure to harmful content on Meta's platforms that the researchers had planned to provide to Meta's executives. (Citations omitted.)

Based on its review of the documents, the trial court held that the documents were subject to the crime-fraud exception. The trial court noted that the documents were dated after the related multidistrict litigation began, so that the attorney

communications described in the documents were relayed to Meta researchers while Meta was the subject of litigation relevant to the employees' research. The trial court found that the documents described attorney communications that "explicitly advised Meta researchers to 'remove,' 'block,' 'button[] up,' 'limit,' and 'update' their research" in order to "specifically limit Meta's potential liability, while Meta was already the subject of a related multidistrict litigation."

The trial court concluded:

> [T]he communications in the [d]ocuments establish sufficient probable cause[] to show that Meta sought and heeded the advice of its counsel to obfuscate its potential liability during the related multidistrict litigation, or in other words, to engage in a crime, fraud, or any other type of misconduct fundamentally inconsistent with the basic premises of the adversary system. (Footnote and internal quotation marks omitted.)

Meta filed a motion for reconsideration under Super. Ct. Civ. R. 59(e) (permitting trial court to alter or amend judgment). *See generally In re Est. of Derricotte*, 885 A.2d 320, 324 (D.C. 2005) ("A trial court may grant a Rule 59(e) motion in order to correct manifest errors of law or fact."). First, Meta argued that the documents did not reflect instructions by counsel to "alter, delete, or falsify" research findings or data but rather, when read in context, consisted of appropriate attorney advice about how to "*describe* and *present*" research. Second, Meta argued that the trial court erred by resting its crime-fraud holding on the premise that it is

improper attorney conduct to provide legal advice aimed at limiting potential liability during ongoing litigation. Third, Meta argued that the trial court erred by applying the crime-fraud exception to a "broad and undefined category" of "misconduct" that does not consist of a crime, fraud, or an unlawful act.

In support of its factual argument, Meta submitted for the trial court's in camera review three declarations from Meta employees involved in the documents. The first declaration was from the Meta researcher who commented on advice from outside counsel in two of the documents. The second declaration was from the Meta research director who was involved in the exchange reflected in another of the documents. Both declarations stated that "[n]o Meta lawyer has ever advised me to delete, conceal, alter, or amend research data, results, or conclusions." The third declaration was from the in-house counsel whose advice was referred to in the final document. Counsel's declaration stated that "I have never advised—nor would I ever advise—anyone to delete, conceal, alter, or amend research data, results, or conclusions." Meta asked the trial court to hold an evidentiary hearing "to further elucidate the legal advice summarized in the documents."

Relying on the declarations, Meta challenged the trial court's characterization of the documents. Meta described the statement at issue in the first two documents as related to "legal advice about language in the ***background section*** of a research

plan" for a proposed study. According to Meta, the third document discussed legal advice pertaining to the risks posed by the same proposed study. Meta argued that the final document contained descriptions of legal "advice on language to be used in ***internal*** (not public) documents discussing research." According to Meta, none of the documents reflected legal advice that underlying research data or results should be altered.

Meta also submitted a declaration from an attorney whom Meta proffered as an expert in attorney ethics. The attorney, who had not reviewed the documents at issue or any other "highly confidential" material, opined that, based on the material she had reviewed, the crime-fraud exception was not applicable.

The District opposed Meta's motion for reconsideration. The District urged the trial court not to consider Meta's newly submitted declarations because Meta had not justified its failure to submit the declarations before the trial court ruled. The District also argued, among other things, that the documents showed advice in furtherance of both consumer fraud and the crime of "[c]oncealing material evidence from a government investigation."

The trial court denied Meta's motion for reconsideration. The trial court rejected Meta's factual challenges to the trial court's characterization of the documents. Specifically, the trial court concluded that the relevant communications

on their face did not refer to "summaries" or "descriptions" of research, as Meta contended, but rather referred to "'research,' 'stud[ies],' 'data,' 'quantifiable measurements,' '[s]tats,' 'outcomes,' and 'data points.'"

The trial court declined to consider the newly submitted declarations because Meta did not submit the declarations before the trial court's ruling and offered no reason for its failure to do so. *See, e.g.*, *Dist. No. 1–Pac. Coast Dist. v. Travelers Cas. & Sur. Co.*, 782 A.2d 269, 279 (D.C. 2001) (When ruling on Rule 59(e) motion, court is "not required to consider a new argument and new facts that [the moving party] could not justify failing to present to the court earlier."). Further, the trial court concluded that the declarations did not rebut the trial court's finding of probable cause for purposes of the crime-fraud analysis but rather provided evidence supportive of Meta's position on the merits of the underlying consumer-fraud action. The trial court declined to weigh "conflicting evidence" that would be for the jury to assess.

The trial court concluded that there were no manifest errors of law in its original order. The trial court disagreed that its original order "overexpan[ded]" the crime-fraud exception to cover general "misconduct" and clarified that, in its view, "the communications in the [d]ocuments would provide direct evidence that Meta engaged in a consumer fraud in violation of the CPPA." The trial court also disagreed

that it had applied the crime-fraud exception to the provision of "conventional" legal advice about potential legal risk during ongoing litigation.

The trial court ordered Meta to produce the documents within seven days. Before producing the documents, Meta filed a petition for a writ of mandamus in this court seeking to vacate both trial-court orders. The trial court stayed its order to produce the documents pending this court's resolution of the petition for a writ of mandamus.

Meta also filed a motion asking this court to review the documents and the three sealed declarations ex parte. This court granted that motion.

## II. Analysis

Because we hold that Meta has failed to establish a clear and indisputable right to relief, we deny the petition for a writ of mandamus. To be clear, we do not decide whether the trial court's crime-fraud ruling was legally and factually correct. "The writ of mandamus is not to be used as a substitute for appeal." *Horton v. United States*, 591 A.2d 1280, 1283 (D.C. 1991) (citation modified). Even where a petitioner "poses facially significant issues" that might be a basis for relief on direct appeal, we will not issue a writ of mandamus unless the petitioner demonstrates a clear and indisputable right to relief that "warrant[s] invocation of the extraordinary

remedy of mandamus under the established strictures on that writ." *Id.* "Thus, by denying the petition, we in no way preclude subsequent challenges to the contested actions on precisely the same grounds raised in the [petition for a] writ." *Id.* at 1283 n.6.

**A. Legal Background**

The attorney-client privilege "encourage[s] full and frank communication between attorneys and their clients and thereby promote[s] broader public interests in the observance of law and administration of justice." *United States v. Zolin*, 491 U.S. 554, 562 (1989) (citation modified). "[T]he confidences of [alleged] wrongdoers," therefore, are protected by the attorney-client privilege until the rationale for the privilege "ceases to operate . . . , namely, where the desired advice refers *not to prior wrongdoing,* but to *future wrongdoing.*" *Id.* at 562-63 (citation modified). "The crime-fraud exception . . . assures that the seal of secrecy between lawyer and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime." *In re Pub. Def. Serv.*, 831 A.2d at 901 (citation modified).

The party seeking disclosure of privileged communications must show probable cause that the crime-fraud exception applies. *In re Pub. Def. Serv.*, 831 A.2d at 904. Specifically, the party seeking disclosure must demonstrate that "the

totality of the facts and circumstances presented would warrant a reasonable and prudent person in the belief that the attorney-client communications in question were in furtherance of an ongoing or future crime or fraud." *Id.* It does not suffice that the attorney-client communications provide "relevant evidence of criminal or fraudulent activity." *Id.* at 906 (citation modified). To show that the communications "furthered the client's improper purpose," the party seeking disclosure must show that the attorney's services were "misused," typically through evidence of "some activity" following the communications in pursuit of the crime or fraud. *Id.* at 910. The criminal or fraudulent endeavor, however, need not be completed for the crime-fraud exception to apply. *Id.* at 908.

**B. Meta's Claim of a Clear and Indisputable Right to Relief**

Disclosure was lawful under the crime-fraud exception if there was probable cause to believe that Meta used the advice of attorneys, as reflected in the communications at issue, to further a fraud. Mandamus relief would be warranted only if the record clearly and indisputably foreclosed such a conclusion.

Based on the record in this case, including our review of sealed evidence and our in camera review of the documents at issue, we do not see an adequate basis for mandamus relief. Specifically, we conclude that the record does not clearly and indisputably foreclose the conclusions that there was probable cause to believe that

(1) Meta engaged attorneys to (2) advise Meta researchers, as reflected in the communications referenced in the documents at issue, to modify or conceal research projects or findings that (3) Meta believed might show or did show harms to teenage users, and (4) researchers acted on that advice, which (5) furthered an ongoing scheme to "misrepresent . . . a material fact which has a tendency to mislead" consumers in violation of the CPPA, D.C. Code § 28-3904(e). *Cf. State v. Am. Tobacco Co.*, No. 96-2-15056-8 SEA, 1997 WL 728262, at *9 (Wash. Super. Ct. Nov. 21, 1997) (concluding that certain documents, if understood as privileged, were subject to crime-fraud exception as communications in furtherance of civil fraud by furthering company efforts to misrepresent research findings regarding health effects of smoking tobacco). We are not persuaded by Meta's arguments to the contrary.

1. Meta contests the trial court's factual findings. We ordinarily review the trial court's factual findings deferentially. *See generally, e.g.*, *Am. Sec. Bank, N.A. v. Am. Motorists Ins.*, 538 A.2d 736, 740 (D.C. 1988) ("The rationale for deference to the original finder of fact is not limited to the superiority of the trial judge's position to make determinations of credibility. The trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise.") (citation modified). This court does not appear to have decided whether a challenge to a factual finding can be raised by way of a petition for a writ of mandamus. *Cf. Cordoza v. Pac. States Steel Corp.*, 320 F.3d 989, 1001 (9th Cir. 2003) ("This attack

at best raises a factual dispute, not the prospect that the district court made a clear error requiring a writ of mandamus."). We assume without deciding, however, that a sufficiently baseless factual finding could support issuance of a writ of mandamus. *Cf. In re Huffines Retail Partners*, 978 F.3d 128, 131-32 (5th Cir. 2020) ("On mandamus review," court considers "whether the disputed order relies on clearly erroneous factual findings" but "will only grant mandamus relief when such errors produce a patently erroneous result.") (citation modified).

Meta has failed to demonstrate that the trial court's factual findings were not merely clearly erroneous but clearly and indisputably so. Meta challenges the trial court's findings on several grounds, including (i) taking issue with the trial court's characterization of the documents, (ii) emphasizing the second-hand nature of the documents, and (iii) noting evidence that Meta argues contradicts the trial court's findings. We express no view on the ultimate merits of these arguments, but we do conclude that on the present record they do not meet the stringent standards applicable to a petition for a writ of mandamus.

2. Meta argues that the trial court erroneously suggested that simply advising clients to take steps to avoid liability provides a sufficient predicate for a finding that otherwise privileged communications are subject to disclosure under the crime-fraud exception. We understand Meta's concern about the breadth of some of the trial

court's reasoning. The issue for this court at present, however, is not whether the trial court's decision was correct in all respects or would be affirmed on direct appeal. Rather, the issue is whether Meta has shown that it is clearly and indisputably entitled to relief. *See, e.g.*, *In re Reynolds*, 721 S.W.3d 48, 54 (Tex. App. 2025) ("[W]hen considering a writ of mandamus, we focus on the result reached by the trial court rather than its reasons. If the trial court expresses an incorrect legal reason for its ruling, we will nevertheless uphold the order on any other grounds supported by the record.") (citation modified); *Duffy v. Dier*, 465 F.2d 416, 418 (8th Cir. 1972) (agreeing with mandamus petitioner that trial court's order was "overly broad" but opining "this alone does not justify this court to issue a writ of mandamus" where record did not demonstrate that trial court's disposition was clearly and indisputably erroneous). As we have already explained, *supra* at 15, we conclude that Meta has not made that showing. For the same reason, Meta's concern about the trial court's references to "misconduct" as a basis for applying the crime-fraud exception does not provide grounds for relief. As we have noted, we see no clear and indisputable error in the trial court's ruling that there was probable cause that Meta used attorneys to further an alleged fraud.

3. Meta argues that the trial court failed to address one of the essential requirements of the crime-fraud exception: that the communications "furthered" fraud. To the contrary, the trial court repeatedly noted the "in furtherance

requirement" and concluded that there was probable cause to believe that Meta not only sought advice of counsel to further its ongoing fraud but also "heeded" that advice. In any event, as we have noted, the issue for this court at present is not whether the trial court's reasoning was sufficient to support affirmance on a direct appeal. Rather, the issue is whether the trial court's conclusion that the crime-fraud exception applies in the present case was clearly and indisputably incorrect. As we have held, Meta has not made that showing.

4. Finally, Meta argues that the trial court clearly abused its discretion by failing to consider the three declarations Meta submitted with its motion for reconsideration and by failing to hold an evidentiary hearing. We see no clear and indisputable abuse of discretion.

In opposing the District's motion seeking disclosure of the documents under the crime-fraud exception, Meta (i) did not request an evidentiary hearing, (ii) did not present the declarations at issue (although it did present other evidence), and (iii) did not argue that the trial court should first review the documents at issue in camera and then give Meta a chance to later submit additional evidence. Rather, those issues were first raised after the trial court granted the District's motion.

Motions for reconsideration pursuant to Rule 59(e) are "committed to the broad discretion of the trial judge." *Dist. No. 1–Pac. Coast Dist.*, 782 A.2d at 278.

Rule 59(e) motions are not "designed to enable a party to complete presenting its case after the court has ruled against it," and so "may not be used to raise arguments or present evidence that could have been raised prior to the entry of judgment" without a showing of good reason for failing to raise the argument or evidence sooner. *Id.* (citation modified). Given the trial court's broad discretion on this issue, we are unable to conclude that the trial court clearly and indisputably abused its discretion by following the general rule and not considering belatedly presented evidence and arguments.

For the foregoing reasons, we deny the petition for a writ of mandamus.

*So ordered.*