Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

*Attorney for Defendant Meta Platforms, Inc. f/k/a Facebook, Inc.*

*[Additional counsel listed on signature pages]*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION

This Document Relates To:

*ALL ACTIONS*

MDL No. 3047

Case No.: 4:22-md-03047-YGR-PHK

**META'S STATUS REPORT ON RE-REVIEW OF 300 "MOST IMPORTANT" DOCUMENTS IDENTIFIED BY PI/SD PLAINTIFFS**

Judge: Hon. Yvonne Gonzalez Rogers
Magistrate Judge: Hon. Peter H. Kang

Meta is committed to ensuring the accuracy of its privilege and work product determinations, and to meeting its privilege obligations proactively and in good faith. In furtherance of those commitments, and based on the Court's privilege guidance during the recent AG trial, Meta provided notice to the Court in late August of its intention to undertake a voluntary re-review of documents it had produced with privilege redactions. ECF 3465. Earlier, in 2025, and as part of that same commitment, Meta decided on its own initiative to re-review documents withheld in toto on grounds of privilege, and as a result voluntarily de-privileged a meaningful number of documents. *See, e.g.*, ECF 2312 at 4; ECF 2838 at 7.

At the September 22, 2026 CMC, the Court ordered PI/SD Plaintiffs to provide to Meta by September 30 a list of the 300 "most important" documents for which they seek "prioritized review" of Meta's attorney-client privilege or work-product claims. *See* 9/22/26 Tr. at 17:6-13; ECF 3534 (CMO No. 37) at 2. Meta hereby submits this Status Report[1] to provide the Court with (i) additional detail regarding the 300 documents identified by Plaintiffs and (ii) the results of Meta's review of these 300 documents, organized into three categories of documents: (a) the redacted documents selected by Plaintiffs; (b) the withheld documents on Plaintiffs' list that Meta continues to withhold or has now produced with redactions; and (c) the previously withheld documents that have now been produced to Plaintiffs in full. The third section of this Status Report proposes a path forward for next steps in light of Meta's review of the 300 documents identified by Plaintiffs.

Meta is also submitting with this Status Report as **Exhibit 1** an index listing each of the 300 documents on Plaintiffs' September 30 list, Meta's privilege or work product determination with respect to each document (including the bases for continued claims of privilege or work product[2]), and other relevant information about each document. To aid the Court and Plaintiffs, the index also includes an explanation for privilege and work-product *redactions* in these documents, even though the Privilege Log Protocol does not require logging of redactions. *See* ECF 740 § III.B.

---

[1] Meta submits this Status Report in accordance with the Court's direction at the September 22 CMC, in setting a further conference on this issue for October 9, that if "[y]ou can file something on the 8th that I can read [in advance of the conference], that would be better." 9/22/26 Tr. at 18:13-15.

[2] Meta produced this information to Plaintiffs yesterday in the form of a privilege log, along with the documents that it produced in connection with its review.

## I. The 300 Documents Identified by PI/SD Plaintiffs

Plaintiffs' list of 300 documents contains (a) 11 documents that Meta already previously produced in full and (b) one document that Plaintiffs listed twice. Removing these 12 documents, the effective sample size of Plaintiffs' list is 288 documents. Of those 288 documents:

1. 150 were withheld in full, and were never previously challenged by Plaintiffs;
2. Even though the September CMC was focused on Meta's re-review of its privilege *redactions*, only 138 documents on Plaintiffs' list are redacted documents (only a handful of which were previously challenged by Plaintiffs);
3. Only 49 of the redacted documents appear on Plaintiffs' most recent school district trial exhibit list (even though that list contained 209 redacted documents, *see* ECF 3015-1);[3]
4. 36 are duplicates or near-duplicates, in whole or in relevant part (collectively, "**Dupes**"), of documents that were already previously produced by Meta; and
5. 17 are Dupes of other documents on Plaintiffs' September 30 list.

It is particularly notable that, with the exception of a handful of documents, Plaintiffs never previously challenged Meta's privilege or work-product claims for (or redactions in) any of the documents on their list. Privilege challenges are "discovery motions" that, pursuant to Orders of this Court and the Local Rules, are required to be brought before the Magistrate Judge no later than one week after the close of fact discovery, or promptly after receipt of the corresponding privilege log.[4] Challenges to privilege clawbacks, meanwhile, must be brought within 14 days following receipt of a clawback notice.[5] In fact,

[3] The Court's original instruction at the last CMC was for Plaintiffs to identify their "300 most important [trial exhibits]," 9/22/26 Tr. at 16:22-23, which necessarily would be redacted documents.

[4] *See, e.g.*, Privilege Log Protocol (ECF 740) at 7 ("Resolution of disputes regarding claims of privilege shall be in accordance with Section H of [Magistrate Judge Kang's] Standing Order for Discovery in Civil Cases" ("**Kang Standing Order**")); Kang Standing Order § H (describing procedure for bringing discovery motions); ECF 2633-1 at 14 (describing Plaintiffs' challenge to Meta's privilege claims as to four documents as "a discovery dispute"); ECF 562 (No. 4:23-cv-05448-YGR) at 2 (agreeing with Plaintiffs that "Meta should have raised this [privilege motion] as a pretrial motion"); *see also* Civ. L.R. 37-3; Kang Standing Order § G (directing prompt service of privilege logs "to allow for resolution of any disputes over any assertions of privilege … prior to the fact discovery cutoff").

[5] *See* Rule 502(d) Order (ECF 248) at 3 (allowing party receiving privilege clawback notice to keep clawed-back material for 14 days for purposes of raising privilege challenge, after which material must be destroyed); *see also* ECF 562 (No. 4:23-cv-05448-YGR) at 2 (noting that "there also appears to have been a deadline that the AGs failed to meet with respect to claw backs" of Meta's privileged material).

the plaintiffs in this litigation brought several privilege challenges during the discovery period; periodically requested privilege downgrades for one-off documents (which Meta routinely granted); and opposed a discovery motion by Meta earlier this year on the ground that "no motions related to fact discovery may be filed more than 7 days after the fact discovery cut-off," ECF 3364 at 4.

Yet with the exception of just a handful of documents, Plaintiffs did not challenge any of the documents on their September 30 list during the discovery period, or even after Meta had completed its re-review of documents withheld as privileged last fall. Moreover, Plaintiffs entered into a Stipulation with Meta this past spring in which they affirmatively agreed not to seek "any other substantive relief" with respect to the roughly 65,000 documents that Meta downgraded as part of its re-review last fall, which include 95 of the documents on Plaintiffs' September 30 list. ECF 2949 ¶ 21. If the documents on Plaintiffs' list were among Plaintiffs' "most important" documents in the litigation, Plaintiffs could have (and presumably would have) challenged Meta's privilege and work-product claims long ago; certainly, they would not have relinquished their right to seek any further relief with respect to 95 of them.

## II. Results of Meta's Re-Review

### A. Redacted Documents Selected by Plaintiffs

Plaintiffs' September 30 list includes 138 documents that were produced with redactions of privileged or work product material. Meta has withdrawn all redactions in 76 of those documents, and has narrowed its redactions in 36 of those documents. For the 26 documents for which Meta has retained its original redactions of privileged or work product material, as well as the 36 for which it has narrowed its redactions, the accompanying index (Exhibit 1) specifies the basis for each redaction.[6]

---

[6] As relevant to the work-product claims reflected in the index, during the period of time when most of the documents on Plaintiffs' September 30 list were prepared, Meta was facing a significant volume of threatened, anticipated, and ongoing litigation, regulatory investigations, and related proceedings. From 2021 through approximately October 2023, Meta was facing an active investigation by a Multistate AG Coalition and several other State AGs acting independently, while simultaneously defending against the Molly Russell Coronial Inquest in the UK and a large volume of personal injury cases, which were centralized in this MDL in the fall of 2022. The State AG investigations culminated in the filing in October 2023 of the MDL Multistate AG Complaint (which ultimately encompassed 29 States) and, eventually, 16 separate State AG actions. During this same time period, Meta was facing related shareholder and derivative litigation in the U.S.; related proceedings or investigations in the UK, Ireland,

(continued…)

The meaningful number of downgrades of redacted material raises the obvious question why that material was initially redacted in Meta's document production. The core reason is that virtually all of these redactions involve documents either sent by or to lawyers, or reflect communications either referring matters to lawyers or paraphrasing their advice and guidance. Such communications, if disclosed, present risks of waiver of the attorney-client privilege; redactions were applied to avoid such waiver risks. *See* Fed. R. Evid. 502 (advisory comm. note to 2007 amend.) ("In complex litigation the lawyers spend significant amounts of time and effort to preserve the privilege and work product" because "if a protected document is produced, there is a risk that a court will find a subject matter waiver that will apply not only to the instant case and document but to other cases and documents as well."). The risks of waiver are magnified in a large document production—such as this one, encompassing over 2.6 million documents—being conducted under highly accelerated timetables with the necessary involvement of large teams of associate lawyers, staff attorneys, and contract reviewers who are called upon to make rapid determinations about producing material that could later be said to have waived privilege or work product protection in this or other litigation. *Cf. Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) (in resolving disputes arising from privilege downgrades, courts should consider factors including "the magnitude of the document production" in a "holistic reasonableness analysis"). Notably, the re-review that Meta voluntarily conducted last fall did *not* encompass documents produced with redactions; that review was limited to documents withheld in full.

Meta takes very seriously its obligations to ensure it is properly applying the standards governing privilege and work product protections when producing documents in litigation. That is why, when the Court provided its guidance on privilege standards during the recent AG trial, Meta voluntarily concluded that a re-review of its privilege redactions was warranted to ensure that the proper line was drawn in relation to the waiver risks noted above. ECF 3465. Importantly, the Court's guidance provided confirmation that production of some of this previously-redacted material would not be deemed a waiver

---

Australia, Israel, and Brazil; and a spate of other litigations going back to 2018, including *Cambridge Analytica*, the FTC and multistate antitrust actions relating to Meta's acquisitions of Instagram and WhatsApp, and proceedings relating to enforcement of a 2019 FTC privacy consent order.

of the attorney-client privilege—a crucial input given that waiver risks lie at the heart of virtually all redacted material. The Court's recent guidance also provided clarity that has governed (and will continue to govern) Meta's ongoing re-review of its privilege and work product redactions.

Given that Meta is already well underway with its re-review of its redactions, Meta respectfully submits that the Court need do nothing more at this stage to address Meta's redacted documents. The core reason that Meta has launched this re-review is to ensure that the proper line is drawn in its redactions. That process should be allowed to run its course; there is no need to interfere with it, particularly through the cumbersome and unnecessary step of injecting a special master into it. And the fact that a number of redactions are being withdrawn is precisely why Meta has undertaken that re-review on its own initiative.

### B. Previously Withheld Documents on Plaintiffs' List that Meta Continues to Withhold or Has Now Produced with Redactions

From among the 150 fully-withheld documents on Plaintiffs' September 30 list, Meta has determined after further review that 55 are properly withheld in full as privileged or subject to work product protection, for the reasons stated in the index included as Exhibit 1. Meta has also determined that 48 other withheld documents (45 excluding Dupes) include privileged communications or attorney work product, but can be produced with redactions rather than being withheld in full. Those redacted documents have now been produced to Plaintiffs, along with a privilege log reflecting the bases for the redactions (which are also reflected in the index included in Exhibit 1).

### C. Previously Withheld Documents Now Produced to Plaintiffs

Plaintiffs' September 30 list includes 47 withheld documents that Meta has now produced to Plaintiffs in full and without redactions. Of those 47 documents, 20 are Dupes of documents that were already previously produced to Plaintiffs.

In Meta's assessment, these newly produced documents cover virtually no substantive ground that was not already covered in Meta's prior voluminous document productions. Nonetheless, these privilege downgrades raise the question why these 47 documents were initially withheld. As an initial matter, for virtually all of these 47 documents, in-house and/or outside counsel are identified in the documents and/or metadata (*e.g.*, as authors, commenters, senders, and/or recipients, etc.); many reflect a large number of lawyers in such fields. More fundamentally, in a voluminous document production requiring huge review

teams working under heavy time pressure, it is not possible to achieve perfection in these judgment calls. *See, e.g.*, *In re Zetia (Ezetimibe) Antitrust Litig.*, 2019 WL 6122012, at *8 (E.D. Va. July 16, 2019) ("[T]he high volume of material produced by [defendant] (and the relatively small number of disputed documents) puts this case squarely in the same context as [other cases] which recognize that unintended errors arise in large volume cases despite a party's best efforts to guard against them."); *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 614-15 (C.D. Cal. 2013) ("the Federal Rules do not demand perfection").

That point applies not only to the 2.6 million documents Meta produced in discovery, but also to the roughly 65,000 documents Meta downgraded last fall after re-reviewing its privilege log (initially comprising roughly 128,000 documents), which was itself a massive undertaking under intense time pressure. This is why one element of any large-scale litigation is the opportunity for opposing counsel to raise *timely* questions about withheld documents of significance—which then gives the producing party the opportunity to focus its attention on particular privilege or work product claims in more depth. *See supra* notes 4-5. But Plaintiffs never raised any prior questions about any of these withheld documents, even though with few exceptions Plaintiffs have had for over a year (and sometimes years) the same privilege-log information they used to compile their September 30 list.

It also bears emphasis that Plaintiffs' September 30 list is not a representative sampling of Meta's withheld documents. Plaintiffs' counsel made clear during a conferral held October 7 that they did not include documents on their list where the basis for Meta's privilege claim was clear. A representative sampling of Meta's withheld documents, by contrast, would randomly select documents from among the full withheld population, necessarily resulting in a lower proportion of overall downgrades.

The list also inflates the number of full downgrades—and could not in Meta's view reflect Plaintiffs' "most important" documents—because the previously withheld documents on Plaintiffs' list include multiple versions of essentially the same document several times over, as well as documents Plaintiffs already have access to in whole or relevant part through Meta's prior productions. To be clear, Meta recognizes that the production of duplicates, near-duplicates, or less or more inclusive threads of the same email with different privilege redactions should not occur if possible. But such outcomes are understandable in a document review that, like this one, encompassed millions of documents that were required to be produced, on a rolling basis, over an extremely accelerated period. And in such a large

production, it is simply not practicable to make perfectly conforming redactions—an exercise that would require retroactively adjusting redactions in any previously produced documents (across the entire production universe) that are duplicates, near duplicates, or parts of the same thread as a later-produced documents bearing different redactions. Nor are Plaintiffs prejudiced, if they have a less-redacted or fully unredacted copy of a document, by the fact that another version of that document (or portion of that document) may be found elsewhere in the production.

## III. A Path Forward

While Meta does not believe Plaintiffs' September 30 list is a representative sampling of Meta's privileged or work product-protected documents, Meta recognizes that the Court may conclude that a further review of Meta's privilege claims is warranted. Meta's number one priority is to ensure that it has correctly applied its claims of privilege and work product. But Meta is also mindful of the time remaining to trial, and of Plaintiffs' need to receive any downgraded documents as soon as possible. With these considerations in mind, Meta respectfully submits that the objective at this stage should be to identify a practical solution that can realistically be achieved over a reasonable timeline.

For that reason, Meta reached out to Plaintiffs' counsel on October 7 to preview its forthcoming downgrade productions and privilege log, and to propose a solution. Specifically, Meta offered, in addition to continuing its re-review of redacted documents, to review on an accelerated timeline another 150 documents identified by Plaintiffs as trial-critical. These would presumably include at least some of the 160 redacted documents on Plaintiffs' most recent school district exhibit list that were *not* included on Plaintiffs' September 30 list, and could also include fully withheld documents. This approach would rapidly accelerate Meta's review of the documents that are expected to matter most to Plaintiffs.

As was borne out by this review, these privilege and work-product claims are not always straightforward and often involve difficult judgment calls. There is often plenty of room for disagreement, and some documents require considerable investigation, analysis, and discussion to reach a final determination. As a result, with a relatively smaller number of documents requiring review, there is more ability to focus on particular documents to verify the privilege and work product determinations (and redactions as appropriate). Moreover, as with any production of over 2.6 million documents (and particularly given the broad scope of "relevant" documents produced in this litigation), there is almost

certainly a large volume of produced documents—and, in turn, a large number of documents on Meta's privilege log—that are of virtually no interest to Plaintiffs, or that are substantively redundant of other material in the production. *Cf. Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) ("[M]uch of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action").

With these considerations in mind, Meta's objective is to find a way to hone in on the subset of its roughly 47,000 withheld documents (and 128,000 redacted documents) that are most likely to actually matter to Plaintiffs. The objective would be to focus any further review, first and foremost, on such documents. This will allow any such further review to be completed promptly, and with focused attention on the privilege and work product claims for those documents.

For these reasons, Meta respectfully submits that it would be most efficient and sensible to require (a) Plaintiffs to identify 150 additional documents that they view as potentially trial-critical, by next Friday, October 16, and (b) Meta to complete its review and any downgrade productions (including a privilege log) by the following Friday, October 23. Furthermore, in light of the Court's upcoming criminal trial, and given that Plaintiffs should have presented their privilege challenges to Magistrate Judge Kang during discovery, *see supra* notes 4-5, Meta respectfully suggests that the Court refer any further issues arising from Meta's ongoing privilege review(s) to Magistrate Judge Kang for resolution.

DATED: October 8, 2026

Respectfully submitted,

By: /s/ *Isaac Chaput*

Isaac Chaput (Bar No. 326923)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105
Telephone: (415) 591 7020
Email: ichaput@cov.com

Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067

Telephone: (424) 332-4800
Email: asimonsen@cov.com

Paul W. Schmidt (*pro hac vice*)
Timothy C. Hester (*pro hac vice*)
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Email: pschmidt@cov.com
Email: thester@cov.com