LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

*Co-Lead Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>*ALL ACTIONS* | MDL No. 3047<br><br>Case No.: 4:22-md-03047-YGR<br><br>**REPLY TO META'S STATUS REPORT**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

## A. INTRODUCTION

Meta's re-review of Plaintiffs' 300 priority documents reveals serious and systemic privilege abuses. By its own admission, Meta withdrew or narrowed its privilege claims for well over 50% of the documents, even after all the "carve outs" Meta seeks to make from the total.[1] Meta's improper privilege claims were clearly pervasive, affecting both documents withheld entirely and those produced with redactions at similar rates. Plaintiffs' review is continuing, constrained by a necessarily short turn-around but also by Meta not producing the documents until after midnight on the deadline, errors in Meta's cover letter with key information about the production, and Meta's failure to provide promised matching information until filing it with the Court.

Even so, Plaintiffs have already identified multiple documents in the production of high relevance to the case, including ones showing Meta's lawyers interfering with wellbeing research and Meta's efforts to undermine independent experts raising alarms about the harms in this case. These results show that Meta improperly concealed numerous and crucial documents for more than a year after fact discovery closed, doubled down on doing so after a prior re-review it claimed to have performed, and only began addressing those failures after the Court questioned its privilege practices during trial.

Downgrade rates like this cannot be dismissed as isolated errors or close judgment calls. Nor does Meta's assertion that Plaintiffs' list was not randomly selected diminish their significance. Plaintiffs selected the 300 documents for priority review because the limited information available (for many just privilege log entries) suggested they were more likely to contain important evidence that Meta's privilege claims were improperly hiding. The results confirm those concerns. Plaintiffs do not contend that Meta's error rate can be mechanically extrapolated to Meta's entire production. But clearly Meta improperly withheld many relevant documents, and there is little reason to trust that its remaining privilege determinations are more reliable.

Meta's effort to discount these results by pointing to a modest percentage of the newly-produced

[1] Plaintiffs believe it's more accurate to say 2/3 of designations have been changed, but have not been able to confirm Meta's claims of near-dupes for the reasons noted.

documents as duplicates of previously produced materials is no answer. In fact, it raises further concerns about the consistency of Meta's review: Meta maintained privilege claims over documents it acknowledges it otherwise produced in relevant part.[2] Nor can Meta defend its failures by invoking the size of its production, the involvement of attorneys in communications, or generalized concerns about waiver. None of those factors establish privilege or excuse withholding nonprivileged material.

Meta seeks to portray its belated corrections as evidence that no independent oversight is necessary. But the results establish the opposite. Plaintiffs were denied access to important discovery they should have received long ago, when they could have used it to develop their cases and examine witnesses. Meta's belated production a few months before trial cannot undo that prejudice. And a review that required correction of the majority of the challenged designations provides no basis for entrusting Meta alone to evaluate the thousands of privilege claims that remain. The Court should require Meta to re-review all of its remaining privilege claims on a timeline that will permit the use of downgraded documents at trial, and require meaningful, independent scrutiny of that review rather than allow Meta's demonstrably unreliable designations to stand on its assurances alone. That is why Plaintiffs have requested the relief outlined herein—relief that is proportionate to the circumstances, feasible given Meta's resources, and essential to holding Meta fully accountable for its conduct at trial.

**B. Newly Downgraded Documents Include Substantive, Non-Duplicative, and Non-Privileged Evidence.**

In the few hours Meta gave Plaintiffs to review these documents, Plaintiffs identified highly relevant and unique statements not previously disclosed.

Meta withheld or redacted documents written by non-attorneys, documents that did not request or reflect legal advice, and documents that concerned business decisions this Court has already held are not privileged. See ECF No. 3450 at 3 (the decision whether to "publish" research is "a business decision," and a chat is not privileged where "neither the speaker nor the other employees in the chat are lawyers"); ECF No. 562 at 2. For example:

---

[2] Plaintiffs could not rely on changed Bates numbers to identify duplicates and received Meta's matching chart late yesterday. And Plaintiffs had no way to match log entries to already produced documents when developing their list of 300 for re-review.

- [redacted] even though it had no attorney custodians. Ex. D, [redacted],
- A [redacted]
- [redacted]

The documents show Meta's legal department inserting itself "in day-to-day business operations under the mistaken belief that they could shield those business processes by inappropriately labeling anything the lawyers said or did as 'attorney client privilege.'" ECF No. 562 at 2. *See* Ex. B, [redacted]

The improperly withheld evidence goes to the core of Plaintiffs' case. It shows internal acknowledgment of the very harms at issue. *See* Ex. D, [redacted] (emphasis added). It also shows Meta's efforts to discredit outside experts raising alarm about the harms. [redacted]

**C. Meta's Explanations Show Its Designation Standard Was Wrong, Not Merely Misapplied.**

[3] It appears Meta has also withheld this document, and Plaintiffs intend to seek its production.

Meta does not defend its privilege claims one by one. It attempts to defend the rule it used to guide its review: that a document may be redacted or withheld because a lawyer appears on it. But that is not the law. Other excuses are also inadequate. Each of Meta's improper designations are legal errors and not close calls. They explain why Meta withdrew or narrowed its claims on well over half of the 300 priority documents—and why Meta cannot be trusted with the thousands that remain.

**1. The "lawyer on the document" approach**

Meta's own explanations confirm that it designated documents based merely on a lawyer's presence. For documents it now concedes were not privileged, Meta explains that "in-house and/or outside counsel are identified in the documents and/or metadata". ECF No. 3550 at 5. However, a lawyer's involvement does not make a document privileged. "[A] party cannot simply 'cc' their attorney to privilege a document—they must be communicating with their attorney in order to receive legal advice." *In re Facebook, Inc. Consumer Priv. User Profile Litig.,* 655 F. Supp. 3d 899, 909 (N.D. Cal. 2023). Addressing the same question against the same defendant, Judge Corley rejected Meta's position as "unpersuasive given that Plaintiffs [were] not seeking documents created by counsel, counsel's edits, or any communications with counsel." *Id.*

**2. Waiver risk is not a basis for privilege**

The risk of waiver is a reason to assert privilege carefully where it exists, not a license to assert it where it does not. Meta's cited authority does not hold otherwise, because it does not address whether *non-privileged* material may be withheld. *See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.,* 408 F.3d 1142, 1149 (9th Cir. 2005) (holding that the magnitude of a document production may reasonably result in a delayed privilege log). The court in *In re Facebook, Inc.* also refused to accept the explanation "that nervous associates over-designated the documents to avoid waiving privilege," because counsel "has an obligation to ensure that even its nervous associates follow the law" finding that "[t]he more likely explanation" was that, pressed for time, they "took the shortcut of over-designating documents rather than reviewing them properly." *Id.* at 933.

**3. Volume and timing do not excuse over-designation**

Finally, Meta says that in "a voluminous document production requiring huge review teams working under heavy time pressure, it is not possible to achieve perfection in these judgment calls." ECF

No. 3550 at 6. But this is not a dispute about perfection. Meta withdrew or narrowed its claims on a *majority* of the priority documents. This is evidence of a systemically wrong standard. This echoes Meta's own prior conduct: the re-review sample in *In re Facebook, Inc.* resulted in withdrawal of privilege claims over "63% of those documents," and the court treated "that significant rate of error" as reason to re-review the entire withheld population of documents. *Id.* at 923.

**D. Meta Cannot Shift Responsibility for Its Improper Privilege Claims to Plaintiffs.**

Unable to excuse its privilege abuses, Meta attempts to shift blame by arguing Plaintiffs' 300 priority documents were not representative, Plaintiffs should have challenged Meta's designations sooner, and a prior stipulation forecloses relief. None has merit.

First, the Court directed Plaintiffs to identify the 300 "most important" documents for priority review. Plaintiffs did exactly that. The extraordinary rate of withdrawn and narrowed privilege claims confirms Plaintiffs' concerns that evidence important to the case has been concealed.

Second, Meta's suggestion that Plaintiffs should have challenged its designations during discovery gets the burden backward. Meta bore the burden of establishing privilege. Plaintiffs had no obligation to uncover defects concealed by Meta's redactions and withholding, particularly where its formulaic privilege-log descriptions made those defects difficult to detect. In any event, Plaintiffs did challenge tens of thousands of Meta's privilege claims, resulting in thousands of downgrades.

Third, the parties' prior stipulation (ECF 2949 ¶ 21) does not shield Meta's remaining privilege claims. That stipulation resolved the consequences of Meta's prior downgrade of approximately 65,000 documents. It did not prospectively validate surviving privilege claims or immunize them from further scrutiny. Meta cannot turn an agreement resolving its earlier errors into a license to perpetuate them.

**E. Meta's Proposed "Path Forward" Is Inadequate.**

Meta proposes a limited review of another 150 redacted documents and otherwise allowing its self-directed review to "run its course." That is no solution to systemic over-designation. The problem demands comprehensive review, not another round of piecemeal challenges. Nor can Meta's repeated, unsuccessful internal reviews provide any assurance that the remaining claims are sound. At this point, Meta cannot again be left to police itself: independent oversight is essential.

Time is equally critical. As Meta acknowledges, Plaintiffs need downgraded documents as soon as possible to prepare for trial. A review completed too late for meaningful examination and use of the evidence would provide little relief. Firm deadlines, rolling productions, and detailed tracking are necessary to make the process effective and to reconcile changes across Meta's produced documents.

The prejudice from Meta's late productions also requires relief beyond document review. By withholding evidence until a few months before trial, Meta deprived Plaintiffs of opportunities to authenticate documents and establish their foundation. Meta should not be permitted to exploit that prejudice through evidentiary objections to downgraded documents at trial. Nor should Plaintiffs be denied access to additional, specific relevant evidence identified in newly downgraded documents merely because Meta withheld the underlying materials until now. An expedited mechanism for obtaining such evidence would address that problem without reopening discovery wholesale.

Plaintiffs therefore respectfully request that the Court order:

1. Comprehensive re-review. By November 30, 2026, Meta shall re-review all remaining documents withheld or redacted (approximately 175,000), at a rate of 25,000 per week. Meta shall produce downgraded documents weekly, with spreadsheets recording each document's disposition and linking downgraded documents to their prior Bates numbers and/or privilege-log IDs, where applicable.

2. Independent Special Master oversight. The Court shall appoint a Special Master to (a) review all documents among Plaintiffs' initial 300 for which Meta has not fully withdrawn its privilege claims; (b) review another 300 documents selected by Plaintiffs; (c) oversee the comprehensive re-review, including examination of up to 200 documents from each batch for which Meta maintains privilege, selected randomly or by the Special Master; and (d) review up to 100 documents selected by Plaintiffs from prior downgrades that remain partially redacted.

3. Trial use of downgraded documents. Meta shall not object to Plaintiffs' use of downgraded documents with any trial witness on authenticity, foundation, or other admissibility grounds, except under Federal Rule of Evidence 403.

4. Expedited follow-on production. Meta shall promptly and in good faith consider Plaintiffs' requests for specific relevant documents identified or referenced in newly downgraded materials, with any disputes presented promptly to Judge Gonzalez Rogers for resolution.

DATED: October 8, 2026

Respectfully submitted,

By: */s/ Lexi J. Hazam*

LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

*Co-Lead Counsel for Plaintiffs*