*[Parties and counsel listed on signature pages]*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION

This Document Relates to:

*Charleston County School District v. Meta Platforms Inc., et al.*

Case No.: 4:23-cv-4659

Case No. 4:22-MD-03047-YGR

MDL No. 3047

**PLAINTIFF'S MOTION IN LIMINE #1, TO EXCLUDE REFERENCE TO ALLEGATIONS OF MISMANAGEMENT OF ESSER FUNDS**

Judge: Hon. Yvonne Gonzalez Rogers

Magistrate Judge: Hon. Peter H. Kang

## I. INTRODUCTION

Plaintiff Charleston County School District ("CCSD") respectfully submits this motion in limine to exclude evidence concerning allegations of mismanagement or compliance issues relating to federal COVID-Relief (ESSER) funds. Such evidence, including investigative reports, complaints, legal filings and media coverage, has no bearing on whether Defendants' social media platforms caused Plaintiff's harm. Even if the Court determines the evidence is relevant, exclusion remains warranted because its minimal probative value is substantially outweighed by the risk of unfair prejudice and will require the time-consuming presentation of evidence to address the wholly collateral issue.

## II. BACKGROUND

In 2024, CCSD paid $3 million in overdue charges to a vendor that provided services to improve reading levels in two areas of the district, Hollywood and Ravenel. Valerie Nava, *Details emerge of $3M Charleston Co. schools pain in COVID-relief fund debacle; director fired*, POST AND COURIER (July 21, 2024), https://www.postandcourier.com/education-lab/ccsd-charleston-esser-3-million-director-fired/article_baa9b07c-447a-11ef-982f-6f49ee044448.html. The payments were supposed to be covered by federal funds from the Elementary and Secondary School Emergency Relief plan ("ESSER"), a federal program providing pandemic relief aid to state and local education agencies. But the District's executive director of federal programs, John Cobb, mishandled the necessary steps in the procurement process and failed to obtain this funding. *Id.*

The District hired an outside law firm to conduct an investigation. *Id.* In July 2024, the firm released its findings, concluding that the District's inability to use ESSER funds was due to a failure to follow specific procurement processes. *Id.* The report further found that Cobb "demonstrated poor leadership," and "a lack of planning and oversight," and acted negligently, costing the district over $3 million. *Id.* Immediately upon the report's release, the District fired Cobb. *Id.*

Following his termination, Cobb accused the District of mismanaging the funds and claimed its superintendent, Dr. Anita Huggins, created a hostile work environment. *Id.* In July 2024, Cobb filed a complaint against the District under the federal False Claims Act; the lawsuit remains ongoing. Valerie Nava, *Former Charleston public schools exec sues district over alleged misspending of $3M in federal*

*funds*, POST AND COURIER (Jan. 23, 2026), https://www.postandcourier.com/education-lab/former-charleston-exec-sues-school-district/article_25b3390c-de73-4860-89c0-9ede8dca0569.html. In 2026, Cobb's complaint was unsealed by the Department of Justice when it declined to intervene but allowed the case to proceed. *Id.* CCSD has denied Cobb's allegations. Colt Yeargin*, Former Charleston Co. School District employee files federal lawsuit over alleged fund misuse*, LIVE 5 NEWS (Jan. 23, 2026), https://www.live5news.com/2026/01/23/former-charleston-co-school-district-employee-files-federal-lawsuit-over-alleged-fund-misuse/. During a meet and confer with CCSD about anticipated motions in limine, Defendants indicated they would seek to introduce at trial the evidence Plaintiff seeks to exclude here.

## III. LEGAL STANDARD

Evidence is admissible under Fed. R. Evid. 402 if it is relevant, meaning it "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence may nonetheless be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## IV. ARGUMENT

Federal Rule of Evidence 402 precludes Defendants from using evidence regarding allegations of mismanagement related to ESSER funding, as such evidence is irrelevant. Even assuming the evidence is relevant, the Court should nonetheless exclude it under Rule 403 because it is unfairly prejudicial and will require the time-consuming presentation of evidence with little probative value.

### a. Evidence Concerning the Alleged Mismanagement of ESSER Funds is Inadmissible Because it is Irrelevant.

Evidence is relevant if it makes a material fact more or less probable. Fed. R. Evid. 402; Fed. R. Evid. 401. In other words, evidence is considered relevant if it has a meaningful relation to a fact at issue in the case. *See United States v. Curtin*, 489 F.3d 935, 943 (9th Cir. 2007) (citing Advisory Committee's Notes on Fed. R. Evid. 401). The inquiry into the relevancy of evidence is "fact based and depends on

many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Sprint/United Management Co. v. Mendelsohn,* 552 U.S. 379, 388 (2008); *see, e.g.*, *Pham v. Bast*, No. 17-CV-04194-WHO, 2023 WL 4053415, at *2 (N.D. Cal. June 15, 2023). Evidence related to CCSD's management of ESSER funds is unrelated to the issues in the present case and is therefore irrelevant.

Plaintiff raises a single count of negligence against Defendants. Specifically, as laid out in the District's proposed jury instructions, Plaintiff alleges that the Defendants breached their duty to use ordinary care by (1) "not providing the warnings that a reasonably prudent, competent company concerned with user safety would have provided"; (2) "designing, operating, and/or marketing their social media platforms in a way that caused students to engage in problematic use, compulsive use, and/or become addicted"; (3) "deliberately targeting school-aged children, when the Defendants knew or reasonably should have foreseen the impact that doing so would have on schools"; and (4) "not designing, operating, and/or marketing their social media platforms as a reasonably prudent, safety conscious, and competent company would have done." Dkt. 2681 at 46. In their discussions with Plaintiff, Defendants have been unable to articulate a plausible connection between any of these elements of the negligence cause of action and the timeliness of the District's use of federal pandemic funds. Allegations of procurement mismanagement plainly have nothing to do with whether Defendants provided safety warnings, whether they operated their platforms in an unsafe way, whether they targeted students, or whether they designed their platforms as a reasonable prudent company would have done.

That connection is also facially nonexistent with respect to the causation element of Plaintiff's negligence claim (whether "Defendants' failure to use ordinary care was a substantial factor in causing harm to Charleston," *id.*). While Defendants' experts discuss COVID-19 pandemic and its purported impact on school systems, Defendants have proffered no expert testimony purporting to establish that the District's alleged mismanagement of COVID-era federal funds is an alternative cause of the District's injury.[1]

---

[1] Through this motion, the District does not seek to bar Defendants from raising the COVID-19 pandemic more generally as an alternative cause of the District's injuries.

Finally, any assertion that this evidence is relevant to damages is unavailing. The damages element concerns whether the district "incurred expenses related to the harm Defendants' social media platforms caused." *Id.* at 47. It does not concern whether, at an impressionistic level, a jury thinks CCSD will use an award competently. Importantly, *even if that were* a valid consideration, CCSD and independent investigators concluded that the mishandling of ESSER funds was attributable to the negligence of a single employee. CCSD promptly fired that employee upon learning of the funding gap. There is no evidence the incident was demonstrative of a systemic problem at CCSD and the incident was not repeated. Evidence of an isolated instance of mismanagement by a past employee who has since been terminated has no proper bearing on the damages element and should thus be excluded.

Defendants purport to have preserved four affirmative defenses in this case— statute of limitations, assumption of risk, failure to mitigate damages, and comparative negligence.[2] *Id.* at 7. The evidence at issue in this motion bears on none of them. Defendants have no credible basis to argue that the District's use or nonuse of ESSER funds addresses whether this lawsuit was timely filed. *See id.* at 84 (Defendants' proposed jury instruction on statute of limitations). The ESSER issue is equally irrelevant to the assumption of risk defense and Plaintiff's supposed failure to mitigate damages, both of which concern the District's relationship to the harm <u>caused by the Defendants</u>. *See id.* at 97 (assumption of risk defense is "predicated on the situation of a defendant's acts alone creating the risk of harm … with the plaintiff voluntarily exposing itself to such an obvious risk"), 131 ("party who has suffered injury or damage from the actionable conduct of another is under a duty to make all reasonable efforts to minimize the damages incurred.").

Finally, Defendants' comparative negligence affirmative defense does not provide a relevancy basis for the introduction of this collateral issue. Defendants bear the burden of proving comparative negligence, which requires them to show that the District breached a duty <u>owed to the Defendants</u>. *Bloom v. Ravoira*, 529 S.E.2d 710, 713 (S.C. 2000) is instructive. In that case, an injured pedestrian brought a

[2] For the reasons set out in the parties' joint filing, Charleston objects to Defendants' proposed instructions on these four issues. *See generally* Dkt. 2681; *e.g.*, *id.* at 93 (explaining that Defendants' proposed comparative negligence instruction should not be given due to Defendants' failure to build a record supporting the defense).

negligence claim against a driver, alleging the driver breached their duty to exercise due care and avoid collisions with pedestrians. But the driver was able to raise a successful comparative negligence defense, because the pedestrian breached *its* duty owed to *drivers*—namely, a duty not to cross the street except at marked crosswalks. Here, the Defendants have made no efforts to show (and cannot show) that the District owed any duty to the Defendant social media platforms. And even if such a duty did exist, Defendants cannot logically explain how the district's failure to access federal funds would have breached it.

In short, evidence of allegations regarding ESSER fund compliance and oversight has nothing at all to do with Defendants. It is irrelevant.

**b. Evidence Concerning Alleged Mismanagement of ESSER Funds is Inadmissible Because Its Probative Value is Substantially Outweighed by the Risk of Unfair Prejudice and Wasting Time.**

Even if the Court were to find this evidence relevant, it should still be excluded because it is unfairly prejudicial and would waste the jury's time.

Relevant evidence may be excluded if its probative value is substantially outweighed by risk of unfair prejudice. Fed. R. Evid. 403. Evidence is unfairly prejudicial when it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927, 941 (N.D. Cal. 2016) (citing *Old Chief v. United States*, 519 U.S. 172, 180 (1997). Courts in this Circuit consistently exclude evidence that risks inviting the jury to base its decision on emotion, bias, or their view of the party, rather than on the relevant facts. *See, e.g.*, *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 993 (9th Cir. 2009) (affirming exclusion of evidence unrelated to the relevant legal issues where the jury might improperly rely on the evidence to penalize a party for unrelated conduct); *Henderson v. Peterson*, No. C 07-2838 SBA PRA, 2011 WL 2838169, at *5 (N.D. Cal. July 15, 2011) (finding that "unless the prior lawsuits have been shown to be fraudulent, the probative value of evidence pertaining to a plaintiff's litigation history is substantially outweighed by the danger of jury bias").

Here, evidence of allegations regarding Plaintiff's management of federal funds, or compliance with procurement of those funds, should be excluded under Rule 403. First, as discussed above, this

evidence has minimal if any probative value as it has no meaningful connection to whether either party breached a duty owed to the either or caused the harms at issue. Second, evidence concerning the alleged mismanagement of ESSER funds is highly prejudicial. The only reason for Defendants to even introduce such evidence is to inflame the jury by planting in their minds the idea that the District is incapable of handling funds appropriately (including, one imagines, any damages the jury may award). That would be an improper consideration—it does not speak to any actual element of a claim or defense, and it is designed to bias the jury against Plaintiff and its administrators. Worse, it is designed to create such bias over an issue that both the CCSD and an independent investigation concluded was the result of one past employee's negligence. Cobb was the cause of the purported mismanagement, and Cobb has since been terminated. His actions say nothing about the district's competence to handle its finances, let alone its ability to use a damages award to fix the problem Defendants created in Charleston County.

Importantly, to the extent Defendants seek to claim that the mishandling of federal funds was a systemic issue rather than an isolated incident, such claims are hotly contested by the District and remain the subject of ongoing litigation unrelated to this case. Colt Yeargin*, Former Charleston Co. School District employee files federal lawsuit over alleged fund misuse*, LIVE 5 NEWS (Jan. 23, 2026), https://www.live5news.com/2026/01/23/former-charleston-co-school-district-employee-files-federal-lawsuit-over-alleged-fund-misuse/. Admission of such evidence would inevitably require the parties to conduct a mini-trial on the subject matter of that separate lawsuit. To rebut allegations that the District mismanages its finances, CCSD would be required to present extensive evidence such as information on its procurement process, its programs and policies, the findings from the independent investigation, and the circumstances surrounding Cobb's termination. Defendants would likely present Cobb's disputed allegations as fact, thus requiring the jury to sift through competing allegations that are the source of separate litigation.

Requiring the parties to litigate these disputed allegations before the jury would therefore be a significant and distracting waste of time in what is already a time-constrained proceeding. Relevant evidence may be excluded if its probative value is substantially outweighed by the risk of wasting time through "mini-trials" on separate issues. Fed. R. Evid. 403; *see, e.g.*, *United States v. Tsarnaev*, 595 U.S.

302, 321 (2022) (upholding the exclusion of evidence because "its bare inclusion risked producing a confusing mini-trial"); *Diederich v. Providence Health & Servs.*, 742 F. App'x 177, 179 (9th Cir. 2018) (affirming exclusion of evidence that would lead to mini-trials on the conduct of other employees); *Freeman v. Astrue*, 405 F. App'x 148, 151–52 (9th Cir. 2010) (upholding exclusion of co-workers' discrimination complaints to avoid mini-trials on collateral allegations); *United States v. Jones*, 123 F. App'x 773, 775 (9th Cir. 2005) (excluding evidence because of the risk of "wasting time with mini-trials regarding the events underlying different complaints"); *Holland v. City of San Francisco*, No. C10-2603 THE, 2013 WL 1808866, at *2 (N.D. Cal. Apr. 29, 2013) (probative value of defendants' photographs was substantially outweighed by the risk of "time-wasting, distracting mini-trials").

## V. CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion and exclude any evidence concerning allegations of mismanagement related to ESSER funding. In the alternative, if the Court finds this evidence relevant, it should nonetheless be excluded because any minimal probative value is substantially outweighed by the significant risk of unfair prejudice and wasting time.

Dated: October 16, 2026

Respectfully Submitted,

**MOTLEY RICE LLC**

By: *<u>/s/ Previn Warren</u>*
Previn Warren
401 9th Street NW Suite 630
Washington, DC 20004
Tel: 202-386-9610
pwarren@motleyrice.com

Esther Berezofsky
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002
Tel: 856-667-0500
Fax: 856-667-5133
eberezofsky@motleyrice.com

Lance V. Oliver
Sara O. Couch
Jade Haileselassie
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464
Telephone: 843-216-9000
jflowers@motleyrice.com
scouch@motleyrice.com
jhaileselassie@motleyrice.com

*Counsel for Plaintiff*

**ATTESTATION**

I, Previn Warren, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: October 16, 2026

By: /s/ Previn Warren