*[Parties and counsel listed on signature pages]*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | Case No. 4:22-MD-03047-YGR<br>MDL No. 3047 |
| This Document Relates to:<br>*Charleston County School District v. Meta Platforms Inc., et al.*<br>Case No.: 4:23-cv-4659 | **PLAINTIFF'S MOTION IN LIMINE #2, TO EXCLUDE EVIDENCE OF CERTAIN RACE-RELATED INCIDENTS IN CHARLESTON COUNTY SCHOOL DISTRICT**<br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

## I. INTRODUCTION

Plaintiff moves pursuant to Federal Rules of Evidence 401, 402, and 403 to exclude any testimony or documents concerning allegations of specific instances of racial discrimination, hostility, or racist conduct involving students or personnel within Charleston County School District ("Charleston"). These collateral events concern highly prejudicial incidents that either pre-date the relevant time period of Plaintiff's damages or are disconnected from Charleston's theory of harm and/or Defendants' alternative causation theories or affirmative defenses.

Plaintiff specifically seeks to exclude evidence or argument concerning the following incidents and the underlying events giving rise thereto (together, the "Incidents"):

- a 2008 U.S. Department of Education Office for Civil Rights investigation in response to a complaint of racial discrimination at a Charleston school;
- a 2009 federal civil rights investigation into closure of five schools in predominantly Black neighborhoods;
- a 2014 lawsuit by a former teacher alleging race-based harassment;
- a 2014 controversy related to an allegedy racist celebration by a high school sports team, ensuing hiring decisions, and an ongoing lawsuit;
- a 2017 lawsuit alleging racial discrimination at certain schools;
- 2021 allegations of racially discriminatory hiring practices in the facilities department;
- a 2021 incident where students displayed the Confederate flag in violation of the student code of conduct;
- a 2022 lawsuit alleging that the Charleston curriculum used critical race theory and was thus racially discriminatory; and
- 2022 allegations of racially discriminatory employment practices at a high school.

The admission of evidence related to these Incidents would not make any material fact concerning Defendants' platform design or causation of Plaintiff's claimed damages more or less probable. Any alleged probative value is substantially outweighed by danger of unfair prejudice, would mislead the jury, and would lead to unnecessary "mini-trials" on collateral issues. The Court should exclude this evidence under Rules 401, 402, and 403.

## II. LEGAL STANDARD

Evidence is admissible under Fed. R. Evid. 402 if it is relevant, meaning that the evidence "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence may nonetheless be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## III. BACKGROUND

The Incidents at issue in this motion logically group into the following three discrete categories.

### a. Incidents that are Outside the Relevant Time Period

Several of the Incidents occurred prior to 2017, the first year for which CCSD will be seeking damages at trial. Dkt. 2385-18 at 1 (Second Amended Expert Report of Dr. Bryce Ward (Sept. 2, 2025)).

In 2008, the U.S. Department of Education Office for Civil Rights ("Office for Civil Rights") filed a complaint against Charleston alleging that the District discriminated against Black students by providing disparate resources compared to other students. U.S. Dept. of Educ. Off. of Civ. Rts., *OCR Complaint No. 11-08-1270 Resolution Letter* (2008), https://www.ed.gov/media/document/11081270-apdf-31072.pdf. Ultimately, the Office of Civil Rights concluded that the issues identified in the complaint were supported by inconclusive evidence or had been resolved by the District. *Id*.

In 2009, a then state representative alleged that race was a factor in the closure of five schools located in predominantly Black neighborhoods in Charleston County. WCSC, *Charleston School District Accused of Racial Discrimination* (Aug. 3, 2009), https://www.wistv.com/story/10820809/charleston-school-district-accused-of-racial-discrimination/.

In 2014 a former teacher at Baptist Hill High School filed a lawsuit alleging that Black students directed racially and sexually offensive comments at her that led to developing anxiety and PTSD. ABC News, *Discrimination Suit Filed Against CCSD By Former Baptist Hill Teacher* (Sep. 16, 2015), https://abcnews4.com/archive/discrimination-suit-filed-against-ccsd-by-former-baptist-hill-teacher. The alleged victim in this case was a Charleston employee, not a student.

In 2014, a football coach facilitated a post-game victory celebration that involved smashing a watermelon allegedly emblazoned with "tribal-like" or "monkey-like" caricatures. Kevin Bilodeau, *CCSD: Academic Magnet Football Coach Removed for Post-Game Watermelon Ritual*, WCSC Live 5 (Oct. 22, 2014), https://www.live5news.com/story/26835720/ccsd-academic-

magnet-football-coach-removed-for-post-game-watermelon-ritual/. The coach was dismissed by Charleston and then subsequently reinstated. *Id*. In response to these events, the coach filed a lawsuit against Charleston for discrimination and defamation. Declaration of Previn Warren ("Warren Decl."), Ex. 1 (Jenna Schiferl, *SC Court Of Appeals Upholds Dismissal of Academic Magnet Watermelon Ritual Defamation Case*, Post & Courier (Nov. 7, 2019)). Those claims were ultimately dismissed by the South Carolina Court of Appeals. *Id*.

**b. Incidents Alleged in Lawsuits that were Dismissed**

In 2017, three former Charleston administrators filed a lawsuit against the District alleging a pattern of discrimination against Black students and employees. *See Lenhardt v. Charleston County Sch. Dist.*, No. 2:17-cv-01705-RMG-MGB (D.S.C. filed Jun. 29, 2017). The case was voluntarily dismissed two months later. *See id*., ECF No. 9.

In 2022, a group of legislators in the South Carolina Freedom Caucus filed a lawsuit against Charleston concerning the inclusion of critical race theory and structural racism in the District's curriculum. Warren Decl. Ex. 4 (Maura Turcotte, *Right-Wing Legislators Sue CCSD Over CRT Claims*, Post & Courier (Dec. 1, 2022)). The case was dismissed with prejudice on June 11, 2024. *See S.C. Freedom Caucus vs. Charleston County Sch. Dist.*, No. 2022-CP-10-05451, Stipulation of Dismissal (SC. Ct. Com. Pl. filed Jun. 11, 2024).

c. **Other Incidents**

In 2021, an incident occurred at Lucy Beckham High School in which multiple students wore or displayed Confederate flags during the school's 'Merica themed spirit day. Warren Decl. Ex. 2 (Libby Stanford, *Lucy Beckham High Parents Call for Action After Confederate Flag Incident*, Post & Courier (Oct. 30, 2021)). This behavior did not comply with Charleston's Student Code of Conduct, which prohibits students from wearing jewelry, clothing, or other apparel depicting the Confederate flag on campus. Warren Decl. Ex. 3 (Bo Petersen, *Charleston County School District Bans Images of Confederate Flag*, Post & Courier (Aug 18, 2015)). All students involved were punished in accordance with the District's policy. Warren Decl. Ex. 2.

In 2022, a former Spanish teacher at Buist Academy alleged that she was racially harassed by individuals she could not identify. Brooke Leigh Howard, *Monkey Books, Rescinded Jobs:*

*School District Accused of Rampant Racism*, Daily Beast (Aug. 15, 2022), https://www.yahoo.com/news/monkey-books-rescinded-jobs-school-223012476.html.

In 2022, a local nonprofit alleged that the District demoted, fired, or passed over for hiring African Americans for jobs in the CCSD Facilities Maintenance Department, replacing them with less-qualified white employees or applicants. Nick Reagan, *Civil Rights group accuses school district of racist hiring practices*, WCSC Live 5 (Apr. 5, 2022), https://www.live5news.com/2022/04/06/civil-rights-group-accuses-school-district-racist-hiring-practices. In response to these allegations, the District conducted an internal investigation, hired an outside law firm to review its hiring practices, and committed to changing the District's hiring processes as a result. *Id.*

## IV. ARGUMENT

### A. The Incidents are Not Relevant Under Rules 401 and 402.

Evidence is only relevant if it "has any tendency" to make a fact of consequence more or less probable. Fed. R. Evid. 401. The Incidents do not satisfy this standard.

***First***, many of these events pre-date the 2017-2018 school year, the first year that Charleston will be seeking damages at trial. *See* Dkt. 2385-18 at 1. Any probative value the evidence could conceivably have is outweighed by the remoteness in time between those Incidents and Charleston's claimed harms. *See United States v. Sleugh*, 2015 WL 3866270, at *5 (N.D. Cal. June 22, 2015) (six years between events "lessens any probative value the evidence might have"). The 2008 Office of Civil Rights Complaint, which necessarily concerned events that transpired earlier, was filed nine years before the beginning of the damages that Charleston will be seeking at trial, and fully fifteen years before Charleston filed its Complaint in this case. The allegedly discriminatory closure of five schools—raised by a state representative in 2009—likewise substantially pre-dates the relevant time period in this case. That is also true of the Incidents from 2014 described above. A search of Defendants' expert reports revealed no opinions explaining how these specific Incidents worsened the mental health of the District's students in 2017 and beyond.

***Second***, allegations raised in lawsuits that were dismissed, and therefore never credited or proven, do not have any tendency to make a fact of consequence in this case (or any case) more or

less probable. *See Camenisch v. Umpqua Bank*, 763 F. Supp. 3d 871, 899 (N.D. Cal. 2025) (prohibiting any testimony about dismissed litigation given the "risk that the jury will conclude that the dismissal … bears upon the merits of this case" which "would be incorrect and unduly prejudicial"); *Gray v. Clark*, 654 F.Supp.3d 1062, 1070 (E.D. Cal. 2023) (excessive-force case against prison guard, excluding as irrelevant evidence of a dismissed failure-to-train claim against warden). Evidence of the dismissed 2017 discrimination lawsuit and the dismissed 2022 Freedom Caucus lawsuit can be excluded on this ground alone.

***Third***, certain Incidents do not involve CCSD students. This is true of the 2022 employment discrimination allegations (allegations by one Spanish teacher and allegations concerning the facilities maintenance department). Such allegations do not concern the mental health of students; by definition, they are focused on the employment relationship between staff and the district. Indeed, the incident related to the facilities department involved staff members who have no educational contact with students at all. As such, there is no credible argument that these incidents could have served as an alternative cause to the mental health or behavioral issues facing CCSD students, or the increasing disruption to the academic environment of CCSD's schools. Any other relevance Defendants may claim would be even more tenuous—because these incidents do not relate to Charleston's students, they necessarily do not relate to whether those students compulsively used Defendants' social media platforms or suffered harm therefrom. *See* Dkt. 2681 at 46. In short, the 2022 incidents do not make any facts at issue in this case more or less probable.

***Fourth***, allegations of specific instances of racial discrimination or racist conduct do not speak to any element of a claim or defense in this case and therefore do not meet the standards for admissibility set out in Fed. R. Evid. 401, 402, and 403.

Plaintiff raises a single count of negligence against Defendants. Specifically, as laid out in the District's proposed jury instructions, Plaintiff alleges that the Defendants breached their duty to use ordinary care by (1) "not providing the warnings that a reasonably prudent, competent company concerned with user safety would have provided"; (2) "designing, operating, and/or marketing their social media platforms in a way that caused students to engage in problematic use, compulsive use, and/or become addicted"; (3) "deliberately targeting school-aged children, when

the Defendants knew or reasonably should have foreseen the impact that doing so would have on schools"; and (4) "not designing, operating, and/or marketing their social media platforms as a reasonably prudent, safety conscious, and competent company would have done." Dkt. 2681 at 46.

In a meet and confer with Plaintiff earlier this week, Defendants insisted they should be able to present the jury with evidence of the Confederate flag incident. But they were unable to articulate a plausible connection between that incident (or any other discrete incident of alleged racial discrimination) and the elements of the negligence cause of action at issue in this litigation. The fact that a student brought a Confederate flag to a Charleston school has no bearing on the warnings Defendants should have provided, whether the design of their platforms caused addiction, whether they deliberately targeted students, and whether they operated in a reasonably prudent manner. Any link between the flag incident and the effect of Defendants' platforms on Charleston's students or the district would be entirely speculative. This type of evidence "thus has no probative value." *Brown v. City of Los Angeles*, 2014 WL 13130752, at *13 (C.D. Cal. Oct. 27, 2014) (excluding evidence about corruption from trial about racial discrimination).

That connection is also facially nonexistent with respect to the causation element of Plaintiff's negligence claim (whether "Defendants' failure to use ordinary care was a substantial factor in causing harm to Charleston," Dkt. 2681 at 46). To be sure, Defendants have a theory of alternative causation that relates, in general terms, to race. This motion does not seek to preclude defense experts from raising population-level racial disparities in Charleston County as an alternative cause of the District's injuries (however implausible that theory might be). However, while Defendants' experts have identified racial disparities in educational outcomes as an alternative cause, a search of their reports did not reveal any opinion linking any of the specific Incidents at issue in this motion to Charleston's injuries.

Any assertion that evidence of the Incidents are relevant to damages is also unavailing. The damages element concerns whether the District "incurred expenses related to the harm Defendants' social media platforms caused." *Id*. at 47. It does not concern whether isolated incidents of alleged racism (the impact of which cannot be, and has not been, generalized across the District as a whole) are attributable to the District's injuries. These episodes are bound to specific periods of time,

affected a small number of individuals, and occurred at a limited number of schools and programs operated by CCSD.

Defendants purport to have preserved four affirmative defenses in this case— statute of limitations, assumption of risk, failure to mitigate damages, and comparative negligence.[1] *Id.* at 7. The evidence at issue in this motion bears on none of them. Defendants have no credible basis to argue that the Incidents address whether the district's lawsuit was timely filed. *See id.* at 84 (Defendants' proposed jury instruction on statute of limitations). The Incidents are equally irrelevant to the assumption of risk defense and Plaintiff's supposed failure to mitigate damages, both of which concern the district's relationship to the harm caused by the Defendants. *See id.* at 97 (assumption of risk defense is "predicated on the situation of a defendant's acts alone creating the risk of harm … with the plaintiff voluntarily exposing itself to such an obvious risk"), 131 ("party who has suffered injury or damage from the actionable conduct of another is under a duty to make all reasonable efforts to minimize the damages incurred.").

Finally, Defendants' comparative negligence affirmative defense does not provide a relevancy basis for the introduction of these collateral events. Defendants bear the burden of proving comparative negligence, which requires them to show that the District breached a duty owed to the Defendants. *Bloom v. Ravoira*, 529 S.E.2d 710, 713 (S.C. 2000) is instructive. In that case, an injured pedestrian brought a negligence claim against a driver, alleging the driver breached their duty to exercise due care and avoid collisions with pedestrians. But the driver was able to raise a successful comparative negligence defense, because the pedestrian breached *its* duty owed to *drivers*—namely, a duty not to cross the street except at marked crosswalks. Here, the Defendants have made no efforts to show (and cannot show) that the District owed any duty to the Defendant social media platforms. Defendants cannot logically explain how the district has breached any duty, let alone one owed to Defendants. For example, the flag incident involved students bringing Confederate flags to school in express violation of the district's Student Code of Conduct—and

[1] For the reasons set out in the parties' joint filing, Charleston objects to Defendants' proposed instructions on these four issues. *See generally* Dkt. 2681; *e.g.*, *id.* at 93 (explaining that Defendants' proposed comparative negligence instruction should not be given due to Defendants' failure to build a record supporting the defense).

those students were punished in accordance with that policy. Warren Decl. Exs. B-C.

In short, evidence of the Incidents does not make any facts at issue more or less probable. The Court should exclude the evidence, as other courts have done under comparable circumstances. *See Kirola v. City & Cnty. of San Francisco*, 2021 WL 1334153, at *18 (N.D. Cal. Mar. 12, 2021), *aff'd in part, rev'd in part and remanded on other grounds*, 2023 WL 2851368 (9th Cir. Apr. 10, 2023) (holding that evidence of repeated barriers to access was not probative of system-wide ADA violation, absent evidence that barriers were frequent across all locations); *Felber v. Yudof*, 851 F. Supp. 2d 1182, 1188 (N.D. Cal. 2011) (holding that events occurring on other campuses of university system and/or before plaintiffs had enrolled had "extremely marginal relevance" to whether plaintiffs had encountered hostile environment as students); *see also Hill v. Goodfellow Top Grade*, 2019 WL 4194277, at *2 (N.D. Cal. Sept. 4, 2019) (excluding evidence of other complaints of discrimination where plaintiff did not establish "that any of the three witnesses reported to the same supervisors as Plaintiff, that they had the same duties as Plaintiff, or that they were allegedly subject to the same adverse employment actions as Plaintiff.").

**B. Any Minimal Relevance Is Substantially Outweighed By Rule 403 Dangers.**

Even if the challenged evidence were minimally relevant, exclusion would still be warranted under Rule 403 because the risks of unfair prejudice, jury confusion, and undue delay substantially outweigh any probative value the evidence might have.

Evidence concerning allegations of racial discrimination and racially motivated conduct is "likely to cause jury confusion and distract jurors from resolving the actual issues in the case." *Brown v. City of Los Angeles*, 2014 WL 13130752, at *6, 13 (C.D. Cal. Oct. 27, 2014) (excluding evidence of N word in racial discrimination case; "mere utterance of the word will inflame jurors' emotions and invite them to decide the case on an emotional basis"). The jury will not be determining whether Plaintiff is liable for racial discrimination; it will be determining whether the design of Defendants' platforms harmed Charleston's students and harmed the District. Evidence about allegedly racist behavior has the predictable risk of triggering deep, personal memories and feelings among jurors, and would "invite them to decide the case on an emotional basis" having nothing to do with the facts at issue in this lawsuit.

A related 403 problem is the likelihood that admission of this evidence would result in "mini-trials" on collateral issues. Evidence about specific alleged instances of racially motivated conduct would "necessarily . . . require time-consuming mini trials to adjudicate the truth or falsity of the complaints." *Hill v. Goodfellow Top Grade*, 2019 WL 4194277, at *2 (N.D. Cal. Sept. 4, 2019); *see also Synergy Hematology-Oncology Med. Assocs. Inc. v. Abbott Labs., Inc.*, 2023 WL 4761550, at *5 (C.D. Cal. June 6, 2023) (excluding "evidence of and references to unrelated litigation, disputes, and controversies involving [defendant]" under Rule 403 because admission would require mini-trials on the validity of the complaints, regardless of whether or not the complaints have been made public). Take the flag incident. If Defendants were to present evidence that certain students brought the Confederate flag to school, the District would have to acquit itself by presenting evidence of its code of conduct and the disciplinary steps it took. The Defendants would presumably try to contest the sufficiency of those steps, and the entire trial would be derailed by a gratuitous mini-trial on an unrelated, highly inflammatory topic. A core function of Rule 403 is preventing  the risk of juror confusion as well as avoidable trial delays. *See In re Cathode Ray Tube (CRT) Antitrust Litig*., 2016 WL 7803893, at *2 (N.D. Cal. Nov. 15, 2016) ("One function of Rule 403 is to avoid the introduction of large quantities of extrinsic evidence to create mini-trials regarding tangentially related matters.") (internal citations and quotations omitted).

Finally, any points about causation or the design of their platforms that Defendants might seek to make through the challenged evidence can be made "through less prejudicial means." *United States v. Higuera-Llamos*, 574 F.3d 1206, 1209 (9th Cir. 2009).  In their Motion for Summary Judgement on Charleston's claims, Defendants argued that "Charleston's superintendent testified that the issues with the most impact on its students are . . . race." Dkt. 2293 at 3. Similarly, Defendants' expert, Robert Nelson, argues that racial disparities between students are alternate causes of the harms experienced by Charleston's students and the District. Warren Decl. Ex. 2 at ¶¶ 72-74. Neither argument requires the evidence of specific allegations of racist conduct that Plaintiff seeks to exclude here.

Plaintiff accordingly moves this Court to exclude any evidence, testimony, or argument referring to the Incidents discussed herein. *See supra* at 1-2 (itemizing Incidents).

Dated: October 16, 2026

Respectfully Submitted,

**MOTLEY RICE LLC**

By: _/s/ Previn Warren_

Previn Warren
401 9th Street NW Suite 630
Washington, DC 20004
Tel: 202-386-9610
pwarren@motleyrice.com

Esther Berezofsky
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002
Tel: 856-667-0500
Fax: 856-667-5133
eberezofsky@motleyrice.com

Lance V. Oliver
Marlon E. Kimpson
Sara O. Couch
Jade Haileselassie
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464
Telephone: 843-216-9000
loliver@motleyrice.com
mkimpson@motleyrice.com
scouch@motleyrice.com
jhaileselassie@motleyrice.com

*Counsel for Plaintiff*

**ATTESTATION**

I, Previn Warren, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: October 16, 2026

By: /s/ *Previn Warren*