# EXHIBIT 8

# Embattled Charleston school board member defends herself to first-of-its-kind SC panel

Post & Courier (Charleston, SC)

September 29, 2026 Tuesday

Copyright 2026 The Post and Courier All Rights Reserved

**Section:** A; education-lab; to-edit; politics; Pg. 1

**Length:** 1002 words

**Byline:** Ian Grenier ; , *igrenier@postandcourier.com*

**Highlight:** A three-person panel has until Oct. 5 to make its recommendation to Gov. Henry McMaster, who will then decide whether to remove Darlene Roberson from the Charleston school board.

## Body

COLUMBIA - Darlene Roberson, the Charleston County School Board member accused of misconduct in a state investigative report last month, defended herself during a first-of-its-kind hearing in front of a panel tasked with recommending whether Gov. Henry McMaster should oust her from office.

The four-hour Sept. 28 session focused on three charges leveled by McMaster based on the August inspector general report:

that Roberson improperly disclosed information from executive session shared confidential emails with the press and district vendors helped her former campaign manager get work with the district

Roberson and her attorney, Kambrell Garvin, argued in a conference room in Columbia packed with her supporters that Inspector General Brian Lamkin had largely failed to provide adequate evidence to support the allegations.

"Today's testimony, as well as many of the things identified in the IG report, does not show that there is a Darlene Dunmeyer-Roberson problem," Garvin said. "It shows that problems, potentially, are greater."

A conflict of interest?

One of the more dramatic allegations from the inspector general's report centered on a 2023 meeting Roberson helped set up between her former campaign manager, Aaron White, and a district principal regarding help White wanted to give the school concerning mental health after his school-aged cousin was killed in a shooting.

After a formal procurement process, White's nonprofit, Circle of Life, was paid to provide student support services at the school in 2024.

The report says Roberson's role in introducing the two could have violated state ethics laws barring public officials from influencing decisions that their associates have an economic interest in. Lamkin testified during the hearing that her introduction gave the nonprofit an "unfair advantage" in the procurement process.

When asked by a panelist if he had information suggesting someone in the district felt pressured by Roberson, Lamkin said he did, and pointed out that she hadn't copied the district superintendent in the email introduction, which he argued could create a "chilling effect" for district staffers.

Garvin laid out a different version of events.

Roberson testified that she thought White wanted the meeting with the principal to talk about volunteering, not paid work. She maintained that she had no involvement with the later procurement process, and didn't talk to anyone about the matter after sending the email to set up the meeting.

"I never spoke to anyone about this contract," she said, noting it was "surprising" to hear years later that someone in the district had allegedly felt pressured by her message.

White also testified, via video call, telling the panel that Roberson didn't help him prepare his work proposal or make any money as a result of the arrangement.

Garvin additionally questioned whether White and Roberson could fairly be considered "associates" after he stopped being her campaign manager once the November 2022 election ended, as Lamkin argued.

"An introduction is not a procurement decision," he repeated multiple times.

Public or private?

After an extensive exchange with the panelists over the allegations that Roberson shared emails with reporters that were protected under attorney-client privilege, Garvin conceded that she had done so "inadvertently" at times, without realizing the messages were privileged.

But he continued to disagree with the report's framing of other emails, which Roberson had forwarded to an email address she said was a personal one.

Lamkin's report considered that address to be the email tied to her consulting firm, which contracted with the district before she was elected to the board.

He described forwarding emails to that address as sharing confidential information with a vendor and providing the firm an advantage in its work with the district. He added that his office had no way to know what happened with emails after they were forwarded from her district account because it can't subpoena private emails.

Garvin argued that the vendor relationship the firm had with the district ended when its work with the district ended. The email address still listed in the vendor system was just a holdover from when it was actually providing services and being paid, he said.

It's common practice for board members to forward themselves emails in order to preserve them, Roberson testified. She added that she didn't send the messages to anyone else.

"The evidence establishes a second email account; what the evidence doesn't establish is another vendor recipient," Garvin said.

A mystery member

While McMaster's order charges Roberson with disclosing information from executive session, the corresponding part of the inspector general report doesn't mention her name or that of any board member.

Instead, it cites the federal criminal indictment of former board member Kevin Hollinshead from March, which alleges a "fellow Board of Trustees member" gave Hollinshead information from a private meeting he couldn't participate in about the construction project for which he's alleged to have taken kickbacks.

When asked by panelists about whether Roberson was that fellow member, Lamkin said he couldn't answer, even in a private session. He did not detail why, but said it was because of confidentiality requirements.

For Garvin, that was clear reason why she shouldn't be hit with that charge.

"Before someone can be held responsible for making an improper disclosure, the evidence must first establish that she was the person who made it," he said.

The three-person panel has until Oct. 5 to make its recommendation to McMaster, who will then decide whether to remove Roberson from the CCSD board.

If he does, it would be the first time a school board member was pulled from office under a 2022 law that lets the governor do so if he thinks the member has willfully committed certain misconduct.



**Load-Date:** September 29, 2026

End of Document