*[Parties and counsel listed on signature pages]*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION

Case No. 4:22-MD-03047-YGR

MDL No. 3047

This Document Relates to:

*Charleston County School District v. Meta Platforms Inc., et al.*

Case No.: 4:23-cv-4659

**PLAINTIFF'S MOTION IN LIMINE #3, TO EXCLUDE EVIDENCE RELATED TO CCSD BOARD OF TRUSTEES CONTROVERSIES**

Judge: Hon. Yvonne Gonzalez Rogers

Magistrate Judge: Hon. Peter H. Kang

## I. INTRODUCTION

Plaintiff Charleston County School District ("CCSD" or the "District") moves pursuant to Federal Rules of Evidence 401, 402, and 403 to exclude evidence, testimony, and argument concerning controversies involving CCSD's Board of Trustees (the "Board") or individual Board members. Specifically, CCSD moves for an order excluding evidence, argument, or testimony about:

(1) The political organization Moms for Liberty, and any influence, involvement, or affiliation it allegedly had or has with the Board or any of its members;

(2) The suspension by the Board of former CCSD Superintendent Eric Gallien and a subsequent lawsuit filed by Mr. Gallien;

(3) The removal of members of the CCSD Health Advisory Committee and a subsequent lawsuit by the removed members;

(4) Controversial statements made by Board members Ed Kelley and Carlotte Bailey;

(5) The March 2026 indictment of Board member Kevin Dion Hollinshead; and

(6) An August 2026 report issued by the South Carolina Inspector General regarding the conduct of Board member Darlene Roberson, and the investigation into that conduct.

Exclusion of this material would also necessarily require the striking of paragraphs 84 through 86 of the CCSD-specific Expert Report of Robert G. Nelson, which CCSD also seeks through this motion.

The above referenced evidence is not probative of the District's claims and its admission would be exceedingly prejudicial, mislead the jury, and risk creating a sideshow of unnecessary "mini-trials" on collateral issues. The Court should exclude this evidence under Rules 401 and 402, or, alternatively, 403.

## II. LEGAL STANDARD

Evidence is admissible under Rule 402 if it is relevant, meaning that the evidence "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence may still be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## III. BACKGROUND

### A. Moms for Liberty and Purportedly Partisan Board Actions (Items 1-3)

Moms for Liberty is a conservative political organization that advocates for changes to the American public education system, including removing critical race theory and discussions of LGBTQIA+ identity from public school curricula. Ex. 1 to Decl. of Jessica C. Colombo in Supp. of Mot. in Limine #3 ("Colombo Decl.") (Hillary Flynn, *Controversial parents' rights group Moms for Liberty increases influence in SC*, Post & Courier (Nov. 13, 2022)). The organization's policy positions address some of the most contentious issues in politics today. *See, e.g.*, Moms for Liberty, *Model Policies* (last visited Oct. 14, 2026), https://portal.momsforliberty.org/model-policies/ (identifying model policy "[t]o protect the integrity of women's sports by prohibiting biological males from competing against females").

Moms for Liberty has engendered polarized reactions. On the one hand, the South Carolina chapter of the ACLU has decried Moms for Liberty's "harmful attacks on public education," and the Southern Poverty Law Center classifies it as a far-right extremist group. Jace Woodrum, *Why we're engaging in the Charleston County School Board Election*, ACLU South Carolina (Oct. 8, 2024), https://www.aclusc.org/news/why-were-engaging-charleston-county-school-board-election/; Moms for Liberty, SPLC (last visited Oct. 14, 2026), https://www.splcenter.org/resources/extremist-files/moms-liberty/. On the other hand, as of the time of the last South Carolina gubernatorial primary, every announced Republican candidate had joined President Trump in signing a Moms for Liberty sponsored "parent pledge." Moms for Liberty, *Join President Trump and Thousands More by Signing our Parent Pledge*, https://www.momsforliberty.org/candidates-elected-officials/ (last visited Oct. 15, 2026).

Following elections in November 2022, Moms for Liberty-backed candidates were elected as the majority on the CCSD Board of Trustees. *See* Nick Reagan, *Moms for Liberty candidates secure majority of Charleston Co. School Board seats*, Live 5 News (Nov. 11, 2022), https://www.live5news.com/2022/11/11/moms-liberty-candidates-secure-majority-school-board-seats/. A majority of the Board then proceeded to take actions that have created controversy in the Charleston community—though they have no bearing on the facts or circumstances of the District's lawsuit.

Specifically, in September 2023, the Moms for Liberty-backed majority of the Board voted in closed session to remove CCSD's superintendent, Dr. Eric Gallien. Emily Johnson, *'We need answers': Concerns raised over Charleston Co. school superintendent's suspension*, Live 5 News (September 26, 2023), https://www.live5news.com/2023/09/26/we-need-answers-concerns-raised-over-charleston-co-school-superintendents-suspension/. Dr. Gallien had only served three months before he was placed on paid administrative leave while a staff complaint against him was investigated. Following the decision, the Board was accused of violating state open-meeting laws, and lawmakers from both political parties called for an investigation into the Board's conduct. Colombo Decl. Ex. 2 (Hillary Flynn and Nicholas Reynolds, *Gov. McMaster addresses CCSD turmoil: 'School district needs to follow the law'*, Post & Courier (Oct. 4, 2023)). While the governor chastised the Board, he declined to open an investigation. Dr. Gallien subsequently sued the District, which led to a settlement and his resignation. Claire Weber, *CCSD to pay roughly $359K to release superintendent, effective immediately*, ABC 4 News (Oct. 27, 2023), https://abcnews4.com/news/local/charleston-county-school-district-to-pay-roughly-359000-to-release-superintendent-effective-immediately.

At the same September 2023 meeting, the same majority Board members voted in closed session to replace almost all the members of CCSD's Health Advisory Committee, which is responsible for reviewing health and sex education curricula in CCSD. *See* Blaid Sabol, *Health advisory committee members blindsided by board decision to remove them*, Live 5 News (Oct. 6, 2023), https://www.live5news.com/2023/10/06/health-advisory-committee-members-blindsided-by-board-decision-remove-them/. The next month, the ousted committee members sued the Board and CCSD, alleging the Board violated open-meeting laws and they were wrongfully terminated in retaliation for enacting a more inclusive sexual education curriculum. Colombo Decl. Ex. 3 (Hillary Flynn, *CCSD, school board sued following Health Advisory Committee overhaul*, Post & Courier (Oct. 24, 2023)).

The substance of and process leading to the Board's decisions have been met with criticism. Some members of the community accused the Board of removing Dr. Gallien for racist reasons. *See* Colombo Decl. Ex. 4 (Maura Turcotte, *Frustration, confusion follow chaotic CCSD board meeting* (Sept. 27, 2023)). One former Health Advisory Committee member referred to the Mom's for Liberty majority

members as the "fascist five." *Id.* Community members have criticized the Board for allowing politics to overtake the education system. *See* Johnson, *supra*.

**B. Controversial Statements Made by Board Members (Item 4)**

In March 2023, Board member Ed Kelley was asked to resign after making comments regarding a transgender teacher at a Moms for Liberty meeting. Colombo Decl. Ex. 5 (Sara Gregory, *Charleston school board member asked to resign amid transgender talk, alleged threat* (Mar. 29, 2023)). Kelley was quoted as saying that if his child's teacher came out as transgender, he would show up at the teacher's house with a gun. *Id.* Kelley refused to resign, and the Board subsequently censured him and removed him from his leadership positions on the Board. Matthew Sockol, *CCSD board member censured, removed from leadership positions*, ABC 4 News (Apr. 7, 2023), https://abcnews4.com/news/local/ccsd-board-member-censured-removed-from-leadership-positions-charleston-county-school-district-board-of-trustees-ed-kelley-violations-transgender-teacher-policy-wciv.

In October 2023, recordings of Board member Carlotte Bailey were posted to Facebook, in which she purportedly stated, among other things, that "there's no such thing as gay children" and Black families have a "different conception of the value of education." Colombo Decl. Ex. 6 (Hillary Flynn et al., *CCSD board member Bailey under fire for purported comments on gay children, Black parents*, Post & Courier (Oct. 10, 2023)). Despite public calls for her resignation, the Board voted against requiring her to do so. Claire Weber, *Charleston Co. school board grapples with member's controversial behavior in marathon meeting*, ABC 4 News (Oct. 24, 2023), https://abcnews4.com/news/local/ccsd-board-discusses-a-members-controversial-conduct-during-six-hour-meeting-wciv-south-carolina-charleston-school-district-board-of-trustees-abc-news-4.

**C. Recent Investigations of Board Member Conduct (Items 5-6)**

On March 17, 2026, Board member Kevin Dion Hollinshead was indicted for fraud related to COVID relief loans and for taking a bribe to support a construction company's appeal of a failed bid. U.S. Dep't of Justice, *Charleston County School Board Member Indicted for Bribery and COVID Fraud* (Mar. 17, 2026), https://www.justice.gov/usao-sc/pr/charleston-county-school-board-member-indicted-bribery-and-covid-fraud. Mr. Hollinshead resigned from the Board after being indicted. Marissa Thompson,

*Charleston County School Board member federally indicted on bribery charges*, Live 5 News (Mar. 17, 2026), https://www.live5news.com/2026/03/17/charleston-county-school-board-member-federally-indicted-bribery-charges/.

On August 27, 2026, the state inspector general issued a report identifying acts of malfeasance and misconduct allegedly committed by Board member Darlene Dunmeyer-Roberson. Colombo Decl. Ex. 7 (Valerie Nava, *SC Inspector General alleges serious misconduct within Charleston County School Board*, Post & Courier (Aug. 28, 2026)). Among other things, the inspector general alleged that Roberson wrongfully disclosed confidential information to the media, used her Board position for personal gain, fraudulently billed for services, and engaged in irrelevant and disruptive behavior during Board meetings. Roberson appeared before a panel on September 28, 2026 to defend her conduct. Colombo Decl. Ex. 8 (Ian Grenier, *Embattled Charleston school board member defends herself to first-of-its-kind SC panel*, Post & Courier (Sept. 29, 2026)). On October 14, 2026, the governor decided to allow Ms. Roberson to remain in her Board position. *See Gov. McMaster decides against removing local school board member accused of misconduct*, ABC 4 News (Oct. 14, 2026), https://abcnews4.com/news/lowcountry-and-state-politics/gov-mcmaster-decides-against-removing-local-school-board-member-accused-of-misconduct-darlene-dunmeyer-roberson-ccsd-charleston-county-school-district-board-of-trustees.

During a conferral regarding this proposed motion *in limine*, Defendants confirmed that they intended to introduce evidence regarding Board dysfunction (particularly with respect to Moms for Liberty) to support their alternative causation arguments.

## IV. ARGUMENT

The instances described above have no relevance to the claim of negligence brought by CCSD. They do not address, in any direct or even indirect way, whether Defendants targeted students in the design of their platforms, failed to warn of the associated risks with student use, or behaved consistently with the actions of a prudent company. As discussed below, they also do not credibly advance any alternative causation theory Defendants could offer at trial. As such, the evidence should be excluded pursuant to Federal Rules of Evidence 401 and 402.

The Board controversies are also inflammatory character evidence and should be excluded pursuant to Rules of Evidence 403 and 404. The prejudicial effect of the controversies and actions described above far outweighs any probative value such evidence might have, would require the time-consuming presentation and rebuttal of such evidence, and would distract the jury.

**A. The Challenged Evidence Is Not Relevant Under Rules 401 and 402.**

Evidence is only relevant if it "has any tendency" to make a fact or consequence more or less probable. Fed. R. Evid. 401. Evidence is considered relevant if it has a meaningful relation to a fact at issue in the case. *See United States v. Curtin*, 489 F.3d 935, 943 (9th Cir. 2007) (citing Advisory Committee's Notes on Fed. R. Evid. 401). The evidence at issue here does not.

Plaintiff raises a single count of negligence against Defendants. Specifically, as laid out in CCSD's proposed jury instructions, Plaintiff alleges that Defendants breached their duty to use ordinary care by: (1) not providing the warnings that a reasonably prudent, competent company concerned with user safety would have provided; (2) designing, operating, and/or marketing their social media platforms in a way that caused students to engage in problematic use, compulsive use, and/or become addicted; (3) deliberately targeting school-aged children, when Defendants knew or reasonably should have foreseen the impact that doing so would have on schools; and (4) not designing, operating, and/or marketing their social media platforms as a reasonably prudent, safety conscious, and competent company would have done. Dkt. 2681 at 46. The controversies described above—whether Moms for Liberty affiliated Board members should have fired health committee members over their sex ed curriculum, for instance—have no relevance to whether Defendants provided warnings, whether they operated their platforms unsafely, whether they targeted students, or whether they acted as a reasonable prudent company would have.

That connection is also facially deficient with respect to the causation element of Plaintiff's negligence claim (whether "Defendants' failure to use ordinary care was a substantial factor in causing harm to Charleston," *id.*). Defendants have proffered expert testimony from Robert Nelson, who purports to establish Board dysfunction as an alternative cause of CCSD's harms. But Professor Nelson does little beyond making the unsupported statement that "[redacted]." Colombo Decl. Ex. 9

(Expert Rep. of Robert G. Nelson, Ed.D for Charleston Cty. Sch. Dist. ¶¶ 84-86). Professor Nelson's "[redacted]" does not rise to the level of an expert opinion "based on sufficient facts or data" that is "the product of reliable principles and methods" and that "reflects a reliable application of [those] principles and methods to the facts of the case." Fed. R. Evid. 702.

The reliability of Professor Nelson's statement is not improved by his related observations that, "[redacted]" Colombo Decl. Ex. 9 ¶ 86. Experts may rely on hearsay in certain circumstances—but not where, as here, that hearsay is (a) unattributed to any specific individual (let alone a witness, or a representative of a party), and (b) the sole evidentiary support for the expert's opinion. *Morgutia-Johnson v. Hustedde*, 2015 WL 3507130, at *7 (E.D. Cal. Jun. 3, 2015) (rejecting hearsay as unreliable where "the source of this information remains clear;" "Experts may rely on hearsay, but only on the sort customarily relied upon, and that which is reliable."). "Experts should not be a conduit for attorney argument." Dkt. 3068 at 3. That is all Professor Nelson accomplishes in these paragraphs, which should be stricken. And beyond his unsupported statements, Defendants have not proffered any expert testimony linking the Board controversies at issue in this motion to any of the harm experienced by CCSD or its students, let alone to the critical question of whether that harm was caused by Defendants' conduct.

Finally, any assertion that this evidence is relevant to damages is unavailing. The damages element concerns whether the district "incurred expenses related to the harm Defendants' social media platforms caused." Dkt. 2681 at 47. It does not concern whether, at an impressionistic level, a jury thinks the District's Board is well-positioned to use an award competently.

Defendants purport to have preserved four affirmative defenses in this case—statute of limitations, assumption of risk, failure to mitigate damages, and comparative negligence.[1] *Id.* at 7. The evidence at issue in this motion bears on none of them. Defendants have no credible basis to argue that Board

[1] For the reasons set out in the parties' joint filing, Charleston objects to Defendants' proposed instructions on these four issues. *See generally* Dkt. 2681; *e.g.*, *id.* at 93.

controversies address whether the District's lawsuit was timely filed. *See id.* at 84 (Defendants' proposed jury instruction on statute of limitations). Those controversies are equally irrelevant to the assumption of risk defense and Plaintiff's supposed failure to mitigate damages, both of which concern the district's relationship to the harm caused by the Defendants. *See id.* at 97 (assumption of risk defense is "predicated on the situation of a defendant's acts alone creating the risk of harm … with the plaintiff voluntarily exposing itself to such an obvious risk"), 131 ("party who has suffered injury or damage from the actionable conduct of another is under a duty to make all reasonable efforts to minimize the damages incurred.").

Finally, Defendants' comparative negligence affirmative defense does not provide a relevancy basis for the introduction of this collateral issue. Defendants bear the burden of proving comparative negligence, which requires them to show that the District breached a duty owed to the Defendants. *Bloom v. Ravoira*, 529 S.E.2d 710, 713 (S.C. 2000), is instructive. In that case, an injured pedestrian brought a negligence claim against a driver, alleging the driver breached their duty to exercise due care and avoid collisions with pedestrians. But the driver was able to raise a successful comparative negligence defense, because the pedestrian breached *its* duty owed to *drivers*—namely, a duty not to cross the street except at marked crosswalks. Here, Defendants have made no efforts to show (and cannot show) that the District owed or breached any duty to the Defendant social media platforms.

**B. Any Minimal Relevance is Substantially Outweighed by Rule 403 Dangers.**

Even if the Court were to find any of this evidence at all relevant, it should nevertheless be excluded because any probative value it might have is substantially outweighed by the risk of unfair prejudice. Fed. R. Evid. 403. Evidence is unfairly prejudicial when it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927, 941 (N.D. Cal. 2016). Evidence should be excluded when it risks inviting the jury to base its decision on emotion, bias, or their view of the party, rather than on the relevant facts. *See, e.g.*, *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 993 (9th Cir. 2009) (affirming exclusion of evidence unrelated to the relevant legal issues where the jury might improperly rely on the evidence to penalize a party for unrelated conduct).

The Board controversies at issue in this motion concern hotly contested and highly polarized political issues. The injection of issues regarding gender identity, for example, would serve to inflame the jury, prejudicing its members to one side or the other depending on their own social and political beliefs. Indeed, that is true with respect to the Moms for Liberty organization, period. Its polarizing nature and the strong, differing opinions people have about it risk dividing and distracting the jury, taking it far off course from the task it will be presented with at trial. CCSD would be substantially prejudiced by having to contend with suggestions from the Defendants that the District is overseen by people who are possibly bigots and extremists, never mind potential criminals.[2] Those are improper considerations in the purest sense—they have nothing to do with any actual element of a claim or defense, and they risk biasing the jury against CCSD and the people charged with overseeing it.

The evidence should be excluded for a separate reason—it would create needless delay in an already compressed trial schedule. Fed. R. Evid. 403. Admission of this evidence would force CCSD to introduce its own evidence to counter Defendants' points regarding some of these controversies. For instance, Professor Nelson claims that the Moms for Liberty-controlled Board has "[redacted]." *See* Colombo Decl. Ex. 9 ¶ 85. But CCSD's superintendent, Dr. Anita Huggins, testified that CCSD has *not* instituted any book bans that did not come from the state level, and that she was not aware of the introduction of any classroom censorship policies regarding sexual orientation or gender. *See* Colombo Decl. Ex. 10 (Huggins May 19, 2025 Dep.) at 286:18-288:24. Similarly, Professor Nelson claims that the Board "[redacted]." Colombo Decl. Ex. 9 ¶ 85. But local news media reported that the amendment related to prayer before Board meetings was changed to prohibit reference to any specific deity. *See*

[2] With respect to the statements made by Board members Kelley and Bailey, the indictment against former Board member Hollinshead, and the inspector general's report regarding Board member Roberson, CCSD does not believe that Defendants would seek to admit these out-of-court statements for their truth. To the extent that they do, this evidence is inadmissible hearsay. *See* Fed. R. Evid. 801(c), 802; *AngioScore, Inc. v. TriReme Med., Inc., et al.*, 2015 WL 5258786, at *2 (N.D. Cal. Sept. 8, 2015) ("[A]s out-of-court statements offered for the truth of the matters asserted, they are also hearsay under Rule 801."); *Bassett v. City of Burbank*, 2014 WL 12573395, at *4 (C.D. Cal. Nov. 14, 2014) (indictment in separate criminal proceeding excluded as hearsay because an indictment is "nothing more than argument made by a party in a criminal prosecution"); *Cooper v. Nev. ex rel. Dept. of Transp.*, 2011 WL 13305449, at *2 (D. Nev. Nov. 4, 2011) (excluding investigative report because it contains inadmissible hearsay, but allowing it to be used on cross-examination to challenge witness credibility).

Colombo Decl. Ex. 11 (Devna Bose, *Charleston school board may add a meeting prayer and give trustees more access to schools*, Post & Courier (Jan. 11, 2023)). These differing accounts demonstrate the danger of introducing "mini trials" on particular Board actions and whether they had any impact at all on CCSD.

Even relevant evidence may be excluded if its probative value is substantially outweighed by the risk of wasting time through "mini-trials" on separate issues. Fed. R. Evid. 403; *see, e.g.*, *United States v. Tsarnaev*, 595 U.S. 302, 321 (2022) (upholding exclusion of evidence because "its bare inclusion risked producing a confusing mini-trial"); *Diederich v. Providence Health & Servs.*, 742 F. App'x 177, 179 (9th Cir. 2018) (affirming exclusion of evidence that would lead to mini-trials on the conduct of other employees).

### C. The Challenged Evidence is Impermissible Character Evidence.

The evidence at issue would serve only one conceivable purpose—persuading the jury that a bad plaintiff, who employs bad and bigoted people, does not deserve compensation. That is illegitimate. Rule 404(a) bars evidence of "a person's character or character trait" offered "to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). Character evidence "subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened." Fed. R. Evid. 404 advisory committee's note to 1972 proposed rules (internal quotation marks omitted); *see* Fed. R. Evid. 403. The Court should not allow that to happen and should not allow the Defendants to bias the jury against the District.

## V. CONCLUSION

The Board controversies discussed in this motion are irrelevant, prejudicial, inflammatory, bias-provoking, and time-wasting. They should be excluded.

Dated: October 16, 2026.

**MOTLEY RICE LLC**

By: /s/ Previn Warren
Previn Warren
401 9th Street NW Suite 630
Washington, DC 20004
Telephone: 202-386-9610
Fax: 202-232-5513
pwarren@motleyrice.com

Esther Berezofsky
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002
Tel: 856-667-0500
Fax: 856-667-5133
eberezofsky@motleyrice.com

Lance V. Oliver
Marlon E. Kimpson
Sara O. Couch
Jade Haileselassie
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464
Telephone: 843-216-9000
Fax: 843-216-9450
loliver@motleyrice.com
mkimpson@motleyrice.com
scouch@motleyrice.com
jhaileselassie@motleyrice.com

Jessica C. Colombo
20 Church Street, 17th Floor
Hartford, CT 06103
Tel: 860-882-1681
Fax: 860-882-1682
jcolombo@motleyrice.com

*Counsel for Plaintiff*

**ATTESTATION**

I, Previn Warren, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: October 16, 2026

By: /s/ Previn Warren