Thomas P. Cartmell (*pro hac vice*)
Jonathan P. Kieffer (*pro hac vice*)
Austin Brane, SBN 286227
Michael P. Cutler, SBN 270663
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel: (816) 701-1100
tcartmell@wcllp.com
jpkieffer@wcllp.com
abrane@wcllp.com

*Attorneys for Plaintiff* (additional counsel on signature page)

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>*Tucson Unified School District v. Meta Platforms, Inc., et. al.*,<br><br>Case No.: 4:24-cv-1382 | MDL No. 3047<br><br>Case No. 4:22-MD-03047-YGR<br><br>**PLAINTIFF'S MOTION IN LIMINE NO. 3 TO EXCLUDE REFERENCES TO TUCSON UNIFIED SCHOOL DISTRICT'S DESEGREGATION LITIGATION**<br><br>Judge: Hon. Yvonne Gonzalez Rogers |

## I. INTRODUCTION

This trial will decide whether Defendants designed their platforms to keep students compulsively scrolling, and the damages that design caused to Tucson's schools. It will not decide whether any schools in the Tucson Unified School District ("TUSD") "continue[] to suffer the effects of the District's past intentional segregation," as a federal court found in 1977, resulting in a consent decree. *Mendoza v. Tucson Unified Sch. Dist.*, 125 F.4th 1262, 1267 (9th Cir. 2025). After 50 years of litigation, that question is closed, and the court has released TUSD from the consent decree. Defendants now seek to reopen it, in a case ***about social media addiction***, in front of the jury.

Defendants have made race and segregation a recurring theme of this case. In depositions, Defendants have asked numerous TUSD witnesses whether racism "can" affect students, have had TUSD's superintendent narrate the history of the Desegregation Case, and have asked the District's Chief Financial Officer, a witness there to discuss the budget, why TUSD had been under a desegregation order. *See infra* Part II.B; *Fisher v. Tucson Unified Sch. Dist.*, Nos. CV-74-00090-TUC-DCB, CV-74-00204-TUC-DCB (D. Ariz.) (the "Desegregation Case"). Defendants' school-administration expert now opines that "[t]he magnitude of these issues is illustrated by the desegregation litigation."[1] Ex. A. None of this concerns Defendants' platforms. Instead, this evidence presents race issues and a fifty-year-old lawsuit to the jury, inviting jurors to blame that history, and therefore blame TUSD, for harms that TUSD attributes to Defendants' platforms.

Four independent grounds support excluding that evidence: The Desegregation Case's findings are hearsay; Defendants' experts cannot smuggle that information in through Rule 703, as Defendants themselves asserted in *Breathitt*; Rule 403 favors excluding a half-century-old controversy that would prejudice the jury and require a mini-trial to explain; and the Settlement Agreement and the Unitary Status Plan—a plan adopted by the court to implement changes within TUSD—are legal compromises that Rule 408 protects.

---

[1] All "Ex. __" references are to the Declaration of Michael Cutler in Support of Plaintiff's Motion in Limine 4, to Exclude Evidence, Testimony, and Argument Concerning Isolated Incidents of Alleged Racism by TUSD Staff or Students Directed at or Near TUSD Students, filed concurrently.

TUSD does not ask the Court to pretend the court order in the Desegregation Case. TUSD asks for a narrow, two-sided ruling, like the one that already governs references to TUSD's prior JUUL and opioid litigations. (*Breathitt Cnty. Bd. of Educ. v. Meta Platforms, Inc.*, No. 4:23-cv-01804, ECF No. 91; *Tucson Unified Sch. Dist. v. Meta Platforms, Inc.*, No. 4:24-cv-01382, ECF No. 29 at 3.) The Court should permit either side to tell the jury that a program was "required by a prior federal court order." But the findings, agreements, and history behind that order have no place in a trial about how Defendants designed their platforms and the harms those platforms have caused TUSD.

## II. BACKGROUND

### A. The Desegregation Case ended in 2022.

In 1974, two groups of families sued TUSD in the District of Arizona, alleging that its schools were segregated. The court consolidated the cases in 1975, and the United States joined as a plaintiff the next year. *Fisher v. Tucson Unified Sch. Dist.*, 652 F.3d 1131, 1137 (9th Cir. 2011). After a 1977 trial, the court found unlawful segregation at certain specific schools, and the parties settled in 1978. *Fisher v. Tucson Unified Sch. Dist.*, No. CV-74-00090-TUC-DCB, 2021 WL 1526455, at *3–4 (D. Ariz. Apr. 19, 2021). The case was inactive until the court reopened it in 2004. *Fisher*, 652 F.3d at 1137–38. In 2008, the court found that TUSD had not acted in good faith under the settlement, but the court held that it would end its supervision once TUSD adopted a plan for the transition. The Ninth Circuit reversed. *Fisher*, 652 F.3d at 1138–39, 1142–43 (holding that a district must show good-faith compliance before court supervision can end). In 2013, the court adopted a negotiated Unitary Status Plan ("USP"). *Fisher*, 2021 WL 1526455, at *5. The plan set goals and requirements for TUSD in areas such as student assignment, transportation, staffing, quality of education, student discipline, family and community engagement, extracurricular activities, and facilities. Among other things, it led to programs and positions that remain part of TUSD's operations today, including its student relations department and restorative practice facilitators. Ex. B, at 78:11–79:15.

In April 2021, the court found that disparities in student discipline had been "eliminated to the extent practicable" and were not the result of past unlawful segregation or current discrimination. *Fisher*, 2021 WL 1526455, at *25. In July 2022, the court ended its supervision of the District. *Fisher v. Tucson Unified Sch. Dist.*, No. CV-74-00090-TUC-DCB, 2022 WL 4482641, at *10 (D. Ariz. July 20, 2022). The Ninth Circuit affirmed. *Mendoza*, 125 F.4th at 1283. While the order was in place, TUSD paid for some of its programs through what is commonly called "910(G)" funding. Arizona law allows a school district operating under a desegregation order to budget additional funds for the costs of complying with that order. *See* A.R.S. § 15-910(G).

**B. Defendants plan to make the Desegregation Case a trial theme.**

Defendants' experts plan to tell the jury that the Desegregation Case helps to explain TUSD's challenges. Dr. Michele Moore, a former superintendent, opines that the District "has long-standing challenges related to racism and desegregation," and that "[t]he magnitude of these issues is illustrated by the desegregation litigation." Ex. A, at 1. A section of her report titled "Racism and Desegregation" recounts the litigation. Ex. A, at 23–25. Dr. Diana Wildermuth opines that racism "obviously impacts the mental, behavioral, and social wellbeing of students in schools." Ex. C, at 17. She then describes the court-ordered desegregation plan, relying on TUSD Superintendent Gabriel Trujillo's testimony about the litigation. Ex. C, at 27.

Defendants laid the groundwork in discovery. Their counsel had Dr. Trujillo narrate the history of the Desegregation Case, Ex. D at 90:25–96:6, and had another witness read the plan's discipline provisions into the record. Ex. E, at 96:9–99:15. They even asked the District's Chief Financial Officer, a witness there to discuss the budget, why TUSD had been under a desegregation order. Ex. B, at 76:12–77:9. Defendants also list "racial segregation and discrimination" among the factors affecting TUSD in their summary judgment motion. (*Tucson*, ECF No. 16, at 1.)

## III. ARGUMENT

**A. The findings in the Desegregation Case are hearsay, and no exception admits them.**

Court orders regarding the Desegregation Case are inadmissible hearsay. A judgment from another case is hearsay when offered to prove the facts it found. *United States v. Sine*, 493 F.3d

1021, 1036 (9th Cir. 2007). "It is even more plain" that a judge's specific findings are hearsay when offered for their truth. *Id*. The Ninth Circuit joined the Fourth, Tenth, and Eleventh Circuits in so holding. *Id.*; *see also Herrick v. Garvey*, 298 F.3d 1184, 1192 (10th Cir. 2002); *United States v. Jones*, 29 F.3d 1549, 1554 (11th Cir. 1994); *Nipper v. Snipes*, 7 F.3d 415, 417 (4th Cir. 1993). Courts in this Circuit apply the rule in civil cases, including on motions in limine. *ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, No. 3:12-cv-1058-SI, 2019 WL 1651038, at *22–23 (D. Or. Apr. 17, 2019) (excluding prior judicial and agency decisions offered for their truth, except for facts given preclusive effect).

Defendants cannot circumvent that rule. The hearsay exceptions that admit judgments cover only criminal convictions and matters of personal, family, or general history or boundaries. *Sine*, 493 F.3d at 1036–37; Fed. R. Evid. 803(22), (23). The public-records exception does not reach a court's findings at all. *Sine*, 493 F.3d at 1037 n.16 (holding that Rule 803(8) "covers only factual findings by executive branch agencies and officials, not judicial factfinding"). Nor is judicial notice a backdoor: A court may notice another court's opinion for its existence, not for the truth of its findings. *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001).

Defendants want the jury to hear that a federal court found that TUSD segregated students at certain schools, and then to infer that TUSD remains a place where students are treated unequally because of race. That is the very use *Sine* forbids. Counsel also may not slip the findings in through their questions. A line of "speaking" questions conveying another court's findings "can be just as improper as the direct admission" of them. *Sine*, 493 F.3d at 1031.

**B. Defendants' experts may not serve as conduits for the Desegregation Case.**

Expert testimony is a way to bring specialized knowledge to the jury, not a way around the rules of evidence. Defendants' experts would use it for the second purpose. Dr. Moore opines that the desegregation litigation illustrates the magnitude of TUSD's challenges, and Dr. Wildermuth recounts TUSD's court-ordered desegregation plan in her discussion of racism in TUSD schools. *See supra* Part II.B.

An expert may rely on inadmissible facts, but she may not disclose them to the jury. Rule

703 allows disclosure only if the facts' "probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703. That standard creates "a presumption against disclosure." *Id.* advisory committee's note to 2000 amendment. An expert may explain what she relied on, but she may not offer it "to establish the truth of what [it] assert[s]." *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1261–62 (9th Cir. 1984).

Defendants know this rule well. In *Breathitt*, they asked the Court to stop Plaintiff's expert from relaying staff interviews, arguing that parties cannot use expert testimony to "regurgitate ... hearsay at trial." (*Breathitt*, ECF No. 60, at 4.) They warned that "a party cannot launder hearsay into a trial by offering it for an irrelevant non-hearsay purpose." *Id.* at 3 (quoting *United States v. Kent*, 93 F.4th 1213, 1219 (11th Cir. 2024)). The Court agreed. It held that Breathitt's expert could "refer generally to the fact that she conducted interviews," but "may not repeat the content of the conversations." (*Breathitt*, ECF 81 at 6.) That ruling applies here by stipulation. (*Tucson*, ECF No. 29, at 2.)

The Desegregation Case cannot meet Rule 703's standard. Its findings are judicial findings, and judicial findings "would likely be given undue weight by the jury." *Sine*, 493 F.3d at 1034; *see supra* Part III.A. Whatever help they might give the jury in evaluating an expert's opinion cannot substantially outweigh that risk.

Dr. Moore's opinion also should be excluded because it is not expert opinion at all. She opines that "[t]he magnitude of these issues is illustrated by the desegregation litigation." (Moore Report at 1.) Pointing to a lawsuit and calling it proof requires no expertise. It is a narrative "which a juror is equally capable of constructing." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004).

This Court should bar both experts from describing the case, its findings, or the terms of the agreements, and should preclude disclosure of those findings as the basis for any opinion. *See United States v. W.R. Grace*, 504 F.3d 745, 760–61 (9th Cir. 2007).

**C. Rule 403 independently requires exclusion.**

**1. The probative value is minimal.**

The findings Defendants want to highlight at trial date to the 1970s, decades before the 2016–2024 damages period. This Court has previously indicated hesitation in admitting old evidence. Ex. F, at 50:24–51:6 ("Typically, we would never let anything in that was older than ten years old. ... [I]t's not just my approach. It's most courts' approach.").) In *Breathitt*, the Court excluded an incident that "occurred more than 10 years prior to this litigation and is too attenuated to the core issues at trial." (*Breathitt*, ECF No. 81, at 3.) The desegregation findings are nearly four decades older than that, and they are further removed from the issues here. They concern segregation at certain TUSD schools in the 1970s, not whether Defendants' platforms harmed TUSD's students half a century later.

**2. The risk of unfair prejudice is severe.**

Findings that a public school system discriminated against children by race invite the jury to judge TUSD's character, rather than Defendants' platforms. A legal settlement proves little about the conduct it resolved, yet a jury is likely to treat it as an admission. *See SEC v. Jensen*, 835 F.3d 1100, 1116 (9th Cir. 2016) (affirming exclusion of a consent decree as "minimally probative at best"); *infra* Part III.D. In *Breathitt*, this Court recognized that "[e]vidence offered for the purpose of describing or relitigating prior lawsuits is inappropriately prejudicial." (*Breathitt*, ECF No. 81, at 2.) The parties have already agreed that the same approach governs references to TUSD's prior JUUL and opioid litigation in this case. (*Tucson*, ECF No. 29, at 3.) The same is true of references to the District's "910(G)" funding. That funding existed only because of the desegregation order, so explaining the source of that funding necessarily would inform the jury about the Desegregation Case. *See* A.R.S. § 15-910(G).

**3. The evidence would produce a trial within a trial and waste the jury's time.**

Rule 403 also guards the jury's time. It permits exclusion when evidence would cause "undue delay" or "wast[e] time." Fed. R. Evid. 403. The Ninth Circuit has affirmed exclusion where admitting evidence would cause "confusion of the issues for the jury as well as ... an unnecessary waste of the court's time." *McEuin v. Crown Equip. Corp.*, 328 F.3d 1028, 1034–35 (9th Cir. 2003). That is what the Desegregation Case findings would do.

If the findings come in, TUSD cannot leave them unanswered. The trial would stop being about Defendants' platforms. TUSD would have to walk the jury through five decades of litigation, then spend the rest of trial fighting the shadow of findings made half a century ago. Exclusion is "particularly persuasive when detailed rebuttal testimony would be necessary." *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1223, 1255 (E.D.N.Y. 1985); *see also McKenzie v. St. Tammany Par. Sch. Bd.*, No. 04-0420-SS, 2006 WL 8456064, at *2 (E.D. La. Sept. 5, 2006) (excluding a school district's desegregation order in a later employment-discrimination suit against the district). A trial about platform design would become a trial about the history of Tucson's schools.

Calling TUSD's discrimination history "alternative causation" does not change the analysis. Courts may exclude "clearly collateral" evidence of other causes that would "protract[] the trial," because excluding collateral issues is "a concession to the shortness of life." *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 230 (1940). The Desegregation Case is collateral.

This Court has already declined to hold "mini-trials" on collateral questions of law and history in this litigation, (*Breathitt*, ECF No. 81, at 7); (*Tucson*, ECF No. 29, at 2), and has said it will not "relitigate other cases." (*Breathitt*, ECF No. 73, at 43:16–20.) The jury's time should focus on the questions this trial must answer, not on a case federal courts have already closed.

**D. Rule 408 bars using the Settlement Agreement and the Unitary Status Plan to prove that TUSD discriminated.**

The law encourages parties to settle by promising that a settlement will not later be used as proof of fault. Admitting TUSD's 1978 Settlement Agreement and the USP for that purpose would break that promise. Rule 408 bars evidence of a compromise, and of statements made in reaching that compromise, when offered to prove the validity of a disputed claim. Fed. R. Evid. 408(a). Both documents fall within that rule for three reasons.

*First*, each agreement resolved a disputed claim. The 1977 trial decided liability, not how TUSD would have to address those issues. The parties compromised that question twice: first in the 1978 Settlement Agreement, and again in the USP. Parties may "settle the dispute over the proper remedy" even after a violation is found. *Gilmore v. California*, 220 F.3d 987, 1005–06 (9th Cir. 2000). These agreements are compromises, and Rule 408 protects them.

*Second*, both agreements became orders of the court. The court approved the 1978 Settlement Agreement and adopted the USP in 2013. *See supra* Part II.A. A settlement entered as a court order, known as a consent decree, is "both a contract of settlement and a final judgment." *Gilmore*, 220 F.3d at 1000. Consent decrees "generally admit nothing in the way of guilt." *Reynolds v. Roberts*, 202 F.3d 1303, 1315 (11th Cir. 2000). The language the parties agreed to, including the USP's acknowledgment that TUSD's discipline "can result in unlawful discrimination," is part of the compromise. And, Rule 408 bars the compromise itself, not just the talks that produced it. Fed. R. Evid. 408(a)(1)–(2).

*Third*, it makes no difference that Defendants were never parties to the Desegregation Case. The rule's drafters anticipated this situation. Rule 408 protects a completed compromise "when offered against a party thereto," which ordinarily happens "when a party to the present litigation has compromised with a third person." Fed. R. Evid. 408, adv. comm. note to 1972 proposed rules. TUSD, a party here, compromised with the families who sued it in 1974. Rule 408 forbids using those compromises against TUSD now.

**E. A neutral, two-sided description gives the jury the context it needs.**

TUSD proposes a simple rule: Either side may say that a particular TUSD program was required by a prior federal court order, but no one may say more. Where a TUSD program or position existed because of the court order, either party may say so, using the phrase "required by a prior federal court order." That approach tracks the stipulation this Court entered for the JUUL and opioid litigation, which bars any description of those lawsuits but preserves the parties' ability to use TUSD's own statements. (*Breathitt*, ECF No. 91, at 1; *Tucson*, ECF No. 29, at 3.) The rule is fair to both sides, simple to apply, and already familiar to the parties.

## IV. Conclusion

The Court should grant Plaintiff's MIL No. 3 to exclude references by parties, attorneys, or witnesses—including within exhibits or deposition designations—to TUSD's Desegregation Case.

Dated: October 16, 2026

Respectfully submitted,

**WAGSTAFF & CARTMELL LLP**

*/s/ Thomas P. Cartmell*

Thomas P. Cartmell (*pro hac vice*)
Jonathan P. Kieffer (*pro hac vice*)
Austin Brane, SBN 286227
Michael P. Cutler, SBN 270663
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel: (816) 701-1100
tcartmell@wcllp.com
jpkieffer@wcllp.com
abrane@wcllp.com
mcutler@wcllp.com

Kirk J. Goza (*pro hac vice*)
Brad Honnold (*pro hac vice*)
**GOZA & HONNOLD LLC**
9500 Nall Ave., Ste 400
Overland Park, KS 66207
Tel. (913) 451-3433
kgoza@gohonlaw.com
bhonnold@gohonlaw.com

Joseph G. VanZandt (*pro hac vice*)
Davis Vaughn (*pro hac vice*)
Jennifer Emmel (*pro hac vice*)
Clinton Richardson (*pro hac vice*)
Seth Harding (*pro hac vice*)
**BEASLEY ALLEN CROW**
**METHVIN PORTIS & MILES, LLC**
234 Commerce Street
Montgomery, AL 36103
Tel: 334-269-2343
Joseph.VanZandt@BeasleyAllen.com
Davis.Vaughn@BeasleyAllen.com
Jennifer.Emmel@BeasleyAllen.com
Clinton.Richardson@BeasleyAllen.com
Seth.Harding@BeasleyAllen.com

**ATTESTATION**

I, Austin Brane, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

**Dated:** October 16, 2026

By: /s/*Austin Brane*

**Austin Brane**

**CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing on October 16, 2026, using the Court's ECF filing system, thereby sending notice of the filing to all counsel of record.

By: /s/*Austin Brane*

**Austin Brane**