# EXHIBIT F

Pages 1 - 145

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Yvonne Gonzalez Rogers, Judge

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION. ) | NO. 22-MD-03047-YGR |
| BREATHITT COUNTY BOARD OF EDUCATION, Plaintiff, vs. META PLATFORMS, INC., et al., Defendants. ) | NO. 23-CV-01804-YGR |

Oakland, California
Wednesday, March 18, 2026

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiffs:

ANDRUS ANDERSON LLP
1970 Broadway, Suite 1070
Oakland, CA 94612
BY: **JENNIE L. ANDERSON, ATTORNEY AT LAW**

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
BY: **LEXI J. HAZAM, ATTORNEY AT LAW**
**PATRICK L. ANDREWS, ATTORNEY AT LAW**
**NICHOLAS W. LEE, ATTORNEY AT LAW**

(APPEARANCES CONTINUED ON THE NEXT PAGE.)

REPORTED REMOTELY BY: Kendra A. Steppler, RPR, CRR
Official United States Reporter

say defendants' platforms caused. And they've -- that's been explored at depositions. And they've admitted that they've made those claims. And so that's appropriate --

**THE COURT:** And how about *McKinsey*?

**MR. PISTILLI:** Similarly, at depositions, they were asked about the impact of opioids. And they said that opioid abuse and the opioid epidemic was responsible for in-class disruptions.

As Your Honor's aware, one of the major allegations in this case and the main way that plaintiffs intend to prove damages is through the claim that defendants' platforms caused significant in-class disruptions. So, to us, it's incredibly relevant and significant that they've said that there were these other things that were actually substantial causes of in-class disruption --

**THE COURT:** So you're not trying to get in evidence of other lawsuits. You're trying to get in evidence -- because what I'm not going to do is relitigate other cases. Now, if these exact witnesses have conceded other harm, that's potentially different. And I take --

So response?

**MR. ANDREWS:** Thank you, Your Honor. Patrick Andrews.

That is exactly the line that plaintiffs proposed in their motion. If there are legitimate lines of questioning regarding alternative harms that do not -- or causes of harm -- that do

1 and 2. The question -- I have a number of questions. First of all, is this person testifying? No.

**MS. AULL:** No.

**MR. JOHNSON:** No.

**THE COURT:** Then how do you expect to get this in?

**MS. AULL:** So, Your Honor, as we put it in the motion -- so the -- the school, as Your Honor knows and as plaintiffs don't contest should come in, was under state management for years, starting in 2012. There is testimony from the district's 30(b)(6) witnesses that one of the reasons it was under state management was because of this corruption and conviction of the then-superintendent, Mr. Turner. We got that from both the current superintendent and from Ms. McNight, who are testifying as 30(b)(6) witnesses.

It is shot through all of those audit reports that there was gross mismanagement, problems with the superintendent. And so it shows the reason for those things being implemented -- or one of the reasons. I think, Your Honor, it's also relevant to show that this is not just standard levels of financial mismanagement on behalf of the school district. Candidly, jurors may be acclimated to the idea that school districts are not terribly functional. This one is exceptionally dysfunctional.

**THE COURT:** So, typically, we would never let -- there are issues of criminal convictions that, not uncommonly, are

raised at trial. Typically, we would never let anything in that was older than ten years old. You're outside the ten-year limit by almost half. So, tentatively, my inclination would be no, it's too old. Why should I not go with that standard approach? And, by the way, it's not just my approach. It's most courts' approach.

**MS. AULL:** Yeah. Understood, Your Honor. Look, this isn't a standard case where we're trying to impeach a witness, obviously.

**THE COURT:** So, first of all, you need to pull that mic down.

**MS. AULL:** Oh, sorry. I was trying not to touch it. So --

**THE COURT:** Well --

**MS. AULL:** We -- we -- the reason here is because this leads directly into the damages period. The damages period in this case starts in 2014. Plaintiffs' position has been consistent that documents from well before 2014 with respect to plaintiff -- pardon -- with respect to defendants' actions should come in to show that their motivation -- whatever they're doing. So this is completely --

**THE COURT:** Those are two different issues. That's when you were developing the product. That has nothing to do with this issue. So that argument does not persuade. But if the damages period goes back to 2014, why isn't that a reason

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: Saturday, March 21, 2026

Kendra Steppler

Kendra A. Steppler, RPR, CRR

Official Reporter, U.S. District Court