*[Parties and counsel listed on signature pages]*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | Case No. 4:22-MD-03047-YGR<br>MDL No. 3047 |
| This Document Relates to:<br>*Charleston County School District v. Meta Platforms Inc., et al.*<br>Case No.: 4:23-cv-4659 | **PLAINTIFF'S MOTION IN LIMINE #4, TO EXCLUDE EVIDENCE RELATED TO CONSTITUENT BOARDS**<br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

## I. INTRODUCTION

Plaintiff Charleston County School District ("CCSD" or the "District") moves pursuant to Federal Rules of Evidence 401, 402, 403, and 404 to exclude any testimony, documents, or argument about (1) the history of constituent boards, including their roots in segregation; (2) allegations that constituent boards made disciplinary decisions that were motivated by race or racial animus; (3) allegations that constituent boards made disciplinary decisions that had a racially disparate impact; or (4) allegations that constituent boards were sites of unrest or drama among constituent board members.

The admission of such evidence would not make any material fact concerning Defendants' platform design or causation of Plaintiff's claimed damages more or less probable. Any alleged

probative value is substantially outweighed by the danger of unfair prejudice, misleading the jury, and delay by inviting unnecessary "mini-trials" on collateral issues. The evidence is also impermissible character evidence. The Court should exclude this evidence under Rules 401, 402, 403, and 404.

## II. LEGAL STANDARD

Evidence is admissible under Fed. R. Evid. 402 if it is relevant, meaning that the evidence "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence may nonetheless be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Finally, evidence of "a person's character or character trait" is inadmissible if offered "to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1).

## III. BACKGROUND

Prior to the landmark decision of *Brown v. Board of Education of Topeka*, 347 U.S. 483 (1954), Charleston County operated multiple independent school districts, each serving a geographically distinct area and distinct racial community. Act No. 340, 1967 S.C. Acts 470; *see also* S.C. Att'y Gen. Op., Mar. 6, 2015. Like much of South Carolina, these local systems operated legally segregated schools. *United States v. Charleston Cty. Sch. Dist.*, 738 F. Supp. 1513, 1518 (D.S.C. 1990). After *Brown*, Charleston found itself in a prolonged desegregation battle. One outcome of this battle was Act 340, commonly called the "Act of Consolidation," which created a single countywide district, CCSD. *See id.*; Act No. 340, §§ 1–7, 1967 S.C. Acts 470, 470-76. However, the Act retained the prior distinct school boards as well, rebranding these as "constituent districts." *Id.* The Act served as a political compromise, creating more equitable countywide funding and administration while retaining a significant amount of control at the local, "constituent" level. *See* Ex. 1 to Decl. of Jessica C. Colombo in Supp. of Pl.'s Mot. in Limine #4 ("Colombo Decl.") (*Charleston constituent school boards to become thing of past*, Charleston City Paper (Apr. 17, 2025)); Colombo Decl. Ex. 4 (Valeria Nava, *Gov. McMaster signs bill to abolish Charleston*

*County constituent school boards*, Post & Courier (April 30, 2025).

Needless to say, the history of segregation that initially gave rise to these local districts did not disappear overnight. According to critics, the eight constituent boards continued to serve as a vehicle for segregationist aims, whether expressly or in practice. Colombo Decl. Ex. 2 (Brian Hicks, *Charleston County constituent school boards, the bell may (finally) toll for thee…*, Post & Courier (Feb. 9, 2025)). The federal government ultimately intervened, filing a lawsuit alleging that the county's mixed governance structure violated the Equal Protection Clause and helped maintain segregated schools. *Charleston Cnty. Sch. Dist.*, 738 F. Supp. 1513 . This challenge did not succeed. In 1990, Judge Solomon Blatt rejected the principal challenge to Act 340, holding that the federal government failed to prove that Act 340 was enacted with a discriminatory purpose or that the alleged constitutional violations required the remedies sought. *Id.* at 1523. Judge Blatt's ruling largely remained in place after a trip up to the Fourth Circuit. *United States v. Charleston Cnty. Sch. Dist.*, 960 F.2d 1227 (4th Cir. 1992); *United States v. Charleston Cnty. Sch. Dist.*, 856 F. Supp. 1060 (D.S.C. 1994). As a result, the constituent boards survived.

Constituent boards retained three primary functions: to (1) draw attendance lines; (2) manage school transfers; and (3) handle student discipline appeals. Colombo Decl. Ex. 3 (Tr. of May 19, 2025 Dep. of A. Huggins at 290:8-13). Over the ensuing decades, controversy over constituent boards increased while their actual relevance waned significantly. Colombo Decl. Ex. 2 (Hicks). One investigation raised concerns that students accused of the same disciplinary offenses were "met with different outcomes" depending on the constituent board in question. Emily Johnson et al., *Drama, accusations and unrest displayed inside Charleston Co. constituent boards*, Live 5 News (Feb. 8, 2025), https://www.live5news.com/2025/02/07/drama-accusations-unrest-displayed-inside-charleston-co-constituent-boards/. But another found that most disciplinary decisions imposed by the constituent boards were overturned at the countywide Board level. Emily Johnson, *Overturned student discipline decisions in Charleston Co. schools raise concerns*, Live 5 News (Jul. 25, 2024), https://www.live5news.com/2024/07/25/overturned-student-discipline-decisions-charleston-co-schools-raise-concerns/. More generally, constituent boards became a locus for "[o]ngoing drama and accusations" among constituent board members. Johnson et al.,

*supra*.

The foregoing ultimately led to South Carolina's decision in 2025 to abolish constituent boards as a historical artifact and to transfer their existing powers to the countywide CCSD Board. *See* Patrick Phillips, *Governor signs law abolishing constituent districts in Charleston County Schools*, Live 5 News (Apr. 29, 2025), https://www.live5news.com/2025/04/29/governor-signs-law-abolishing-constituent-districts-charleston-county-schools/. Constituent boards are an historical oddity unique to Charleston. But they no longer exist.

## IV. ARGUMENT

Federal Rule of Evidence 402 precludes Defendants from introducing evidence regarding: (1) the history of constituent boards, including their roots in segregation; (2) allegations that constituent boards made disciplinary decisions that were motivated by race or racial animus; (3) allegations that constituent boards made disciplinary decisions that had a racially disparate impact; or (4) allegations that constituent boards were sites of unrest or drama among constituent board members. None of that evidence has anything to do with the claims or defenses at issue in this case. Even assuming it is relevant, the Court should nonetheless exclude it under Rule 403 because raising evidence that necessarily draws upon Charleston's segregationist past is unfairly prejudicial and will require the time-consuming presentation of evidence with little, if any, probative value. Finally, attempting to present such evidence would constitute an impermissible use of character evidence and should be excluded under Rule 404.

### A. Historical Controversies Regarding Constituent Boards are Not Relevant Under Rules 401 and 402.

Evidence is only relevant if it "has any tendency" to make a fact of consequence more or less probable. Fed. R. Evid. 401. Evidence concerning constituent boards does not satisfy this standard.

Plaintiff raises a single count of negligence against Defendants. Specifically, as laid out in the District's proposed jury instructions, the District alleges that the Defendants breached their duty to use ordinary care by (1) "not providing the warnings that a reasonably prudent, competent company concerned with user safety would have provided"; (2) "designing, operating, and/or

marketing their social media platforms in a way that caused students to engage in problematic use, compulsive use, and/or become addicted"; (3) "deliberately targeting school-aged children, when the Defendants knew or reasonably should have foreseen the impact that doing so would have on schools"; and (4) "not designing, operating, and/or marketing their social media platforms as a reasonably prudent, safety conscious, and competent company would have done." Dkt. 2681 at 46.

There is no plausible connection between constituent boards and their history and the elements of the negligence cause of action at issue in this litigation. Nothing the constituent boards have done, and nothing about the boards' history, has any bearing on the warnings Defendants should have provided, whether the design of their platforms caused addiction, whether they targeted students, and whether they operated in a reasonably prudent manner. Any such link would be entirely speculative and untethered to the expert presentation that Defendants have made in this case, or the fact evidence they have developed in discovery. This type of evidence "thus has no probative value." *Brown v. City of Los Angeles*, 2014 WL 13130752, at *13 (C.D. Cal. Oct. 27, 2014) (excluding evidence about corruption from trial about racial discrimination).

That connection is also facially nonexistent with respect to the causation element of Plaintiff's negligence claim (whether "Defendants' failure to use ordinary care was a substantial factor in causing harm to Charleston," Dkt. 2681 at 46). To be sure, Defendants have a theory of alternative causation that relates, in general terms, to race. This motion does not seek to preclude defense experts from raising population-level racial disparities in Charleston County as an alternative cause of the District's injuries (however implausible that theory might be). However, there is no probative value in tying any such disparities to the structure, history, or actions of Charleston's constituent boards. And, as discussed below, any marginal probative value that context might provide is outweighed by the significant risk of prejudice to the Plaintiff.

Any assertion that evidence concerning the constituent boards is relevant to damages is also unavailing. The damages inquiry is whether the District "incurred expenses related to the harm Defendants' social media platforms caused." *Id.* at 47. That has nothing to do with constituent boards.

Defendants purport to have preserved four affirmative defenses in this case—statute of limitations, assumption of risk, failure to mitigate damages, and comparative negligence.[1] *Id.* at 7. The evidence at issue in this motion bears on none of them. Defendants have no credible basis to argue that evidence about constituent boards addresses whether the district's lawsuit was timely filed. *See id.* at 84 (Defendants' proposed jury instruction on statute of limitations). Such evidence is equally irrelevant to the assumption of risk defense and Plaintiff's supposed failure to mitigate damages, both of which concern the district's relationship to the harm caused by the Defendants. *See id.* at 97 (assumption of risk defense is "predicated on the situation of a defendant's acts alone creating the risk of harm … with the plaintiff voluntarily exposing itself to such an obvious risk"), 131 ("party who has suffered injury or damage from the actionable conduct of another is under a duty to make all reasonable efforts to minimize the damages incurred.").

Finally, Defendants' comparative negligence affirmative defense does not provide a relevancy basis for the introduction of these collateral events. Defendants bear the burden of proving comparative negligence, which requires them to show that the District breached a duty owed to the Defendants. *Bloom v. Ravoira*, 529 S.E.2d 710, 713 (S.C. 2000) is instructive. In that case, an injured pedestrian brought a negligence claim against a driver, alleging the driver breached their duty to exercise due care and avoid collisions with pedestrians. But the driver was able to raise a successful comparative negligence defense, because the pedestrian breached *its* duty owed to *drivers*—namely, a duty not to cross the street except at marked crosswalks. Here, the Defendants have made no efforts to show (and cannot show) that the District owed any duty to the Defendant social media platforms. Defendants cannot logically explain how the district has breached any duty, let alone one owed to Defendants.

In short, evidence related to the history and functioning of constituent boards does not make any facts at issue more or less probable. The Court should exclude the evidence, as other courts have done under like circumstances. *See, e.g.*, *Felber v. Yudof*, 851 F. Supp. 2d 1182, 1188 (N.D.

---

[1] For the reasons set out in the parties' joint filing, CCSD objects to Defendants' proposed instructions on these four issues. *See generally* Dkt. 2681; *e.g.*, *id.* at 93 (explaining that Defendants' proposed comparative negligence instruction should not be given due to Defendants' failure to build a record supporting the defense).

Cal. 2011); *Hill v. Goodfellow Top Grade*, 2019 WL 4194277, at *2 (N.D. Cal. Sept. 4, 2019).

**B. Any Minimal Relevance Is Substantially Outweighed By Rule 403 Dangers.**

Even if the challenged evidence were minimally relevant, exclusion would still be warranted under Rule 403 because the risks of unfair prejudice, jury confusion, and undue delay substantially outweigh any conceivable probative value. Constituent boards are an administrative mechanism entirely unique to Charleston. Indeed, from their creation through their abolition in 2025, Charleston was the only place in the country in which constituent boards existed. *See* Sophie Brams, *House advances bill to abolish Charleston County constituent school boards*, News 2 (Mar. 28, 2025), https://www.counton2.com/news/local-news/charleston-county-news/house-advances-bill-to-abolish-charleston-county-constituent-school-boards/; Colombo Decl. Ex. 3 (Huggins Dep.) at 295:18-25. Explaining their existence, structure, and functioning would, as an initial matter, simply waste the jury's time. *See* Fed. R. Evid. 403. But time-wasting is only one problem. An equally important problem is that explaining constituent boards would necessarily require discussing their roots in our nation's ugly history of racial segregation. That presents a significant risk of "distract[ing] jurors from resolving the actual issues in the case." *Brown v. City of Los Angeles*, 2014 WL 13130752, at *6, 13 (C.D. Cal. Oct. 27, 2014) (excluding evidence of N word in racial discrimination case; "mere utterance of the word will inflame jurors' emotions and invite them to decide the case on an emotional basis").

The jury will not be determining whether Plaintiff is worthy of compensation based on its history of race relations; it will be determining whether the design of Defendants' platforms harmed CCSD's students and in turn, the District. Evidence relating to a constituent board structure that has no bearing on this litigation and requires an examination of the history of South Carolina race relations would trigger deeply personal feelings among jurors, risk inviting biases that some jurors may feel towards the South, and risk "invit[ing] [jurors] to decide the case on an emotional basis" having nothing to do with the facts at issue in this lawsuit.

A related 403 problem is the likelihood that admission of this evidence would result in "time-consuming mini trials" on collateral issues. *Hill v. Goodfellow Top Grade*, 2019 WL 4194277, at *2 (N.D. Cal. Sept. 4, 2019); *see also In re Cathode Ray Tube (CRT) Antitrust Litig.*,

2016 WL 7803893, at *2 (N.D. Cal. Nov. 15, 2016) ("One function of Rule 403 is to avoid the introduction of large quantities of extrinsic evidence to create mini-trials regarding tangentially related matters.") (internal citations and quotations omitted). Evidence about specific controversies at the constituent board level—for instance, controversies about disciplinary infractions or variations in the administration of discipline between constituent boards—would require Plaintiff to present evidence rebutting any inferences the jury might otherwise draw about the motivations and intentions of the constituent boards. To put the matter more plainly: if Defendants are permitted to raise the inference that constituent boards have administered discipline in inequitable ways that vary based on race, Plaintiff should be permitted to rebut that inference and show that any such variations were based on factors unrelated to race. To say this would constitute a sideshow is putting it mildly.

Finally, any points about causation or the design of their platforms that Defendants might seek to make through the challenged evidence can be made "through less prejudicial means." *United States v. Higuera-Llamos*, 574 F.3d 1206, 1209 (9th Cir. 2009). In their Motion for Summary Judgement on CCSD's claims, Defendants argued that "Charleston's superintendent testified that the issues with the most impact on its students are . . . race." Dkt. 2293 at 3. Similarly, Defendants' expert, Robert Nelson, argues that racial disparities between students are alternate causes of the harms experienced by Charleston's students and the District. Warren Decl. Ex. 2 at ¶¶ 72-74. Neither of these evidentiary presentations requires collateral evidence related to Charleston's constituent boards, their history, or their controversies.

**C. The Challenged Evidence is Impermissible Character Evidence.**

The evidence at issue would serve only one conceivable purpose—signaling to the jury that the District has a racist history and therefore does not deserve compensation. That is impermissible. Rule 404(a) bars evidence of "a person's character or character trait" offered "to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). Character evidence "subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened." Fed. R. Evid. 404 advisory committee's note to 1972 proposed rules (internal

quotation marks omitted); *see* Fed. R. Evid. 403. The Court should not allow that to happen and should not allow the Defendants to bias the jury against the District.

Plaintiff accordingly moves this Court to exclude any evidence, testimony, or argument referring to the District's historical constituent boards.

Dated: October 16, 2026

Respectfully Submitted,

**MOTLEY RICE LLC**

By: /s/ *Previn Warren*
Previn Warren
401 9th Street NW Suite 630
Washington, DC 20004
Telephone: 202-386-9610
Fax: 202-232-5513
pwarren@motleyrice.com

Esther Berezofsky
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002
Tel: 856-667-0500
Fax: 856-667-5133
eberezofsky@motleyrice.com

Lance V. Oliver
Marlon E. Kimpson
Sara O. Couch
Jade Haileselassie
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464
Telephone: 843-216-9000
Fax: 843-216-9450
loliver@motleyrice.com
mkimpson@motleyrice.com
scouch@motleyrice.com
jhaileselassie@motleyrice.com

Jessica C. Colombo
20 Church Street, 17th Floor
Hartford, CT 06103
Tel: 860-882-1681
Fax: 860-882-1682
jcolombo@motleyrice.com

*Counsel for Plaintiff*

**ATTESTATION**

I, Previn Warren, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: October 16, 2026

By: /s/ *Previn Warren*