Thomas P. Cartmell (*pro hac vice*)
Jonathan P. Kieffer (*pro hac vice*)
Austin Brane, SBN 286227
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel: (816) 701-1100
tcartmell@wcllp.com
jpkieffer@wcllp.com
abrane@wcllp.com

*Attorneys for Plaintiff* (additional counsel on signature page)

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>*Tucson Unified School District v. Meta Platforms, Inc., et al.*,<br><br>Case No.: 4:24-cv-1382 | Case No. 4:22-MD-03047-YGR<br><br>MDL No. 3047<br><br>**PLAINTIFF TUCSON UNIFIED SCHOOL DISTRICT'S MOTION IN LIMINE NO. 5 TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT CONCERNING DEFENDANTS', THEIR EXECUTIVES', OR THEIR EMPLOYEES' "GOOD DEEDS" OR "CORPORATE PHILANTHROPY"**<br><br>Judge: Hon. Yvonne Gonzalez Rogers |

## I. INTRODUCTION

Plaintiff Tucson Unified School District ("TUSD") moves to exclude evidence, testimony, and argument that Defendants may offer to portray themselves, their executives, or their employees as good, generous, or virtuous. That evidence falls into four categories: (1) Defendants' charitable giving and community or school outreach; (2) praise, awards, and endorsements of Defendants by third parties; (3) stories and statistics about individuals Defendants helped, rescued, or saved, and about arrests or prosecutions attributed to Defendants; and (4) the personal philanthropy, character, and virtue of Defendants' executives and employees.

Defendants offer each category for the same purpose: to persuade the jury that good companies, and companies that employ good people, do not do bad things. The Federal Rules of Evidence forbid that inference. Rule 404(a) bars evidence of "a person's character or character trait" offered "to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). The evidence is also irrelevant to TUSD's negligence and public nuisance claims, which turn on how Defendants designed, operated, and marketed their platforms to minors. First Am. Master Compl. ¶¶ 969–972, 1015–1018, Dkt. No. 729; Fed. R. Evid. 401, 402. And it is unfairly prejudicial: character evidence "subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened." Fed. R. Evid. 404 advisory committee's note to 1972 proposed rules (internal quotation marks omitted); *see* Fed. R. Evid. 403.

This motion leaves Defendants free to present evidence and argument about how they design and operate their platforms.[1] It seeks to bar only evidence Defendants offer for a different purpose: to show that they, or the people who work for them, are good. TUSD identifies each category specifically below, including by reference to evidence Meta offered in recent jury trials. In one of those trials, the Tennessee court granted the State's motion directed at this evidence and

[1] TUSD does not concede the admissibility of any particular design or safety evidence, including evidence of platform or policy changes made after the relevant period or adopted under agreements with state attorneys general, and reserves its objections to that evidence. *See* Dkt. No. 3239 at 2 ("In general, evidence regarding policy and technology changes which post-date the remedial period at issue will not be allowed.").

barred it from jury selection and opening statements. (Ex. A to Brane Decl., Agreed Order on Parties' Mots. in Limine & Mots. to Strike, *State ex rel. Skrmetti v. Meta Platforms, Inc.*, No. 23-1364-IV (Tenn. Ch. Ct. July 7, 2026), at 10.)

## II. ARGUMENT

### A. Defendants' Charitable Giving and Community or School Outreach

The Court should exclude evidence and argument about Defendants' charitable giving and community or school outreach, including donations, grants, sponsorships, in-kind contributions, free resources, curricula, lesson plans, events, and awareness campaigns, offered to show that Defendants are generous or good. This motion does not bar evidence of Defendants' outreach to, and communications with, schools, parents, educators, and school-based organizations offered for a non-character purpose – for example, what Defendants told or failed to tell them about the risks of their platforms, or how Defendants used that outreach to market to and target minors. That evidence goes to warnings, notice, marketing, and knowledge, not character. *See* Fed. R. Evid. 404(b)(2). The Court has already treated such evidence as probative of Defendants' knowledge and their targeting of school-age users. *See* Dkt. No. 2728 at 27:24–28:4 (outreach to "organizations embedded in schools, such as the national PTA and Scholastic," among evidence creating "triable issues regarding defendants' knowledge"); *id.* at 3:6–11. And if TUSD offers evidence of a specific program, Defendants may respond about that program, but not with evidence of unrelated philanthropy.

Before a jury trial this summer, Meta told the Tennessee court that it intended to offer evidence of its partnerships with the National Center for Missing and Exploited Children ("NCMEC"), the International Bullying Prevention Association, and the Boys and Girls Club of America; its campaigns with eating-disorder organizations; and technology it had given other companies for free to identify harmful content. (Ex. B to Brane Decl., Meta's Opp'n to State's Mot. to Strike Defenses & Exclude Evid., *Skrmetti* (Tenn. Ch. Ct. May 15, 2026), at 32–33.) At trial, Meta told jurors in opening statement that it "wrote school online safety lesson plans that it gives away to teachers" and "built a school partnership program to work directly with schools." (Ex. C to Brane Decl., Tenn. Trial Tr. (July 27, 2026) at 783:12–784:10.) Meta made the same free-

technology point to the jury in a New Mexico trial. (Ex. D to Brane Decl., *State ex rel. Torrez v. Meta Platforms, Inc.*, No. D-101-CV-2023-02838 (N.M. Dist. Ct.), Trial Tr. (Feb. 9, 2026) at 1159:7–18.)

Other Defendants have similar programs. Google, for example, has announced that its philanthropic arm funded "Be Internet Awesome" online-safety classroom kits for 10,000 schools nationwide. (Ex. E to Brane Decl., Google, Google.org and Highlights for Children Have Helped 1 Million Students Navigate the Digital World (Apr. 1, 2026).)

Defendants offer this evidence to show that they are generous—the very inference Rule 404(a) forbids—and it says nothing about how they designed their platforms. Courts routinely exclude it. In this District, the court in *Shenwick v. Twitter, Inc.* excluded evidence of "charitable contributions, philanthropy, or non-profit work by or on behalf of Twitter, the Individual Defendants, or any witness," holding that "[e]vidence of good acts is irrelevant to the question of whether the Twitter Defendants violated the securities laws or to the credibility of any witness." 2021 WL 1232451, at *6 (N.D. Cal. Mar. 31, 2021); *see also In re Nat'l Prescription Opiate Litig.*, 2021 WL 4341317, at *2 (N.D. Ohio Sept. 23, 2021) (excluding pharmacy defendants' in-store charitable promotions and other corporate conduct unrelated to opioids as "good deeds" evidence); *In re Tylenol (Acetaminophen) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2016 WL 3125428, at *11 (E.D. Pa. June 3, 2016) (holding that evidence of defendants' "good corporate character" was "not admissible in the defendants' case-in-chief under Rule 404(a)" and that "[e]vidence of the defendants' charitable work would have no probative value"); *Ruberti v. Ethicon, Inc.*, 2022 WL 17887527, at *7 (M.D. Ala. Dec. 22, 2022) (excluding manufacturer's "community employment, charitable donations, and medical contributions" over objection that the motion targeted "overly broad categories of evidence rather than specific items").

Outreach to schools poses a particular risk in a school district's case, because it invites jurors to see Defendants as partners to the very schools suing them. Defendants may describe such programs as proof of their commitment to safety. But negligence asks whether Defendants' conduct in designing, operating, and marketing their platforms was reasonable. A lesson plan for teachers does not show that Defendants reasonably designed a platform. Nor does location matter: a

donation or education initiative in Arizona says no more about platform design than a donation anywhere else. Defendants also should not be permitted to argue that TUSD should have partnered with them instead of suing them, as Meta told the New Mexico jury: "We wish the State would partner with us rather than sue us." (Ex. D to Brane Decl., N.M. Trial Tr. at 1189:6–11.) TUSD does not seek to exclude evidence that schools or teachers use Defendants' platforms; that evidence bears on the platforms' utility, not on Defendants' character.

**B. Praise, Awards, and Endorsements from Third Parties**

The Court should exclude evidence of praise, awards, commendations, endorsements, and letters of thanks from third parties, including government agencies and nonprofit organizations, and any document or testimony describing them.

In Tennessee, Meta told jurors in opening statement that NCMEC's CEO had said Meta "has done more for child safety than any other tech company." (Ex. C to Brane Decl., Tenn. Trial Tr. (July 27, 2026) at 756:24–757:7.) It later elicited testimony from its executive about a Department of Homeland Security letter stating that Meta's partnership in an awareness campaign "will save lives." (Ex. C to Brane Decl., Tenn. Trial Tr. (Aug. 17, 2026) at 5398:12–5402:8.) Meta invoked NCMEC's praise again in New Mexico. (Ex. D to Brane Decl., N.M. Trial Tr. at 1178:9–20.)

Third-party praise is character evidence delivered secondhand. Defendants offer it to show that they are good companies, *see United States v. Brown*, 503 F. Supp. 2d 239, 242–43 (D.D.C. 2007) (explaining that commendations and awards are character evidence, not "background evidence," because "the only purpose for offering such information would be to portray a defendant in a positive light"), and when Defendants offer it to prove that they in fact do good work, it is hearsay from declarants who will not testify. Fed. R. Evid. 801(c), 802. The Court should exclude it, together with any document or testimony describing it.

**C. Stories and Statistics About Individuals Helped or Criminals Caught**

The Court should exclude stories and statistics about individuals Defendants helped, rescued, or saved, including through wellness checks or crisis interventions, and about arrests, prosecutions, or other law-enforcement outcomes attributed to Defendants.

In its Tennessee opening, Meta described a man in Memphis who, based on Meta's tip, was "arrested and sentenced to 30 years in prison" (Ex. C to Brane Decl., Tenn. Trial Tr. (July 27, 2026) at 756:14–23), said it had conducted wellness checks "over 15,000 times," and told the story of a man in Indiana whom law enforcement found "so that he did not end his own life." (*Id.* at 753:17–754:15.) Meta told the New Mexico jury the same wellness-check and Indiana stories, adding that its investigators had saved children "right next door in Arizona." (Ex. D to Brane Decl., N.M. Trial Tr. at 1165:18–1166:9, 1188:14–19.)

Anecdotes and tallies like these have little or no probative value and invite exactly the collateral disputes Rule 403 guards against. In *King v. DePuy Orthopaedics, Inc.*, the District of Arizona excluded "success stories" from unnamed patients as "irrelevant and unfairly prejudicial under Rule 403," in part because the plaintiffs could not investigate the patients' "procedures and recovery." 2024 WL 6953089, at *3 (D. Ariz. July 9, 2024). The same is true of Meta's unverifiable references to individuals it has allegedly helped save. In *Medtronic, Inc. v. Boston Scientific Corp.*, the court excluded a party's claim that its products "save a life every twelve seconds," rejecting the argument that the figure supplied "context" and holding that "evidence of 'good corporate character,' such as a comment about how many lives are saved per minute by Medtronic products, is irrelevant to any issue that the jury will be asked to decide." 2002 WL 34447587, at *44–45 (D. Minn. Aug. 8, 2002). Here, stories about lives saved or criminals caught are equally irrelevant and risk "mini-trials" on collateral matters the Court has already declined to hold in this litigation. Dkt. No. 2898 at 7. Defendants remain free to describe how their reporting, enforcement, and crisis-response systems work; they may not tell the jury stories, or recite tallies, of the people they helped.

**D. The Personal Character and Virtue of Defendants' Executives and Employees**

The Court should exclude evidence or argument concerning the personal philanthropy, character, dedication, and pride of Defendants' executives and employees, including conclusory testimony that a witness would not work for a Defendant that acted wrongfully.

In Tennessee, Meta's executive told the jury that she had worked at "a Fresh Air Fund camp" for inner-city children (Ex. C to Brane Decl., Tenn. Trial Tr. (Aug. 17, 2026) at 5241:20–5242:1), and, asked whether she would still be at Meta if its products "were designed to be unsafe,"

answered that she "would not be at Meta" (Ex. C to Brane Decl., Tenn. Trial Tr. (Aug. 18, 2026) at 5594:20–5595:11).

Meta's chief executive did the same in a California bellwether trial. Asked about his financial stake in Meta, Mr. Zuckerberg volunteered that he had "pledged to give almost all of [his] money to charity," that "the better that Meta does," the more he can give, and that the organization he runs with his wife directs "a large amount towards helping with education." (Ex. F to Brane Decl., *Social Media Cases*, JCCP No. 5255 (Cal. Super. Ct. L.A. Cnty.), K.G.M. Trial Tr. (Feb. 18, 2026) at 2042:24–2043:2, 2044:23–2045:3.)

Rule 404(a) reaches "a person's character," Fed. R. Evid. 404(a)(1), and courts apply it to bar a company's evidence of its leaders' commitments, *see Feighan v. Res. Sys. Grp., Inc.*, 2023 WL 4623123, at *9–10 (D.D.C. July 19, 2023). This evidence does not bear on credibility: the *Shenwick* court held that good acts are irrelevant "to the credibility of any witness" and required any party seeking an exception to obtain a stipulation or raise the issue outside the jury's presence. 2021 WL 1232451, at *6. And a witness's charitable giving does not rebut evidence of his or her financial stake in a Defendant; the stake is the same however he or she later spends the money. Defendants' executives and employees may describe their professional backgrounds and the work they did on the platforms; they may not tell the jury about their charitable history or personal virtue, or vouch for the company by saying they would not work there if it did wrong.

### E. TUSD's Claims Do Not Open the Door, and the Order Should Apply Throughout Trial

Defendants may argue that TUSD's contention that they put profits ahead of young users' safety opens the door to this evidence. It does not. A party opens the door only by making partial or misleading use of particular evidence, which the other side may then answer with "evidence on the same issue to rebut any false impression." But the doctrine "is not so capacious as to allow the admission of any evidence made relevant by the opposing party's strategy." *United States v. Sine*, 493 F.3d 1021, 1037 (9th Cir. 2007) (emphasis omitted) (quoting *United States v. Whitworth*, 856 F.2d 1268, 1285 (9th Cir. 1988)). TUSD's contention is a theory about how Defendants designed their platforms, not a statement about their moral record. Nearly every plaintiff suing a company

contends that it puts profits first; if that were enough to open the door, Rule 404(a) would offer no protection in any case against a corporate defendant. The court in the opioid litigation rejected the same argument. The pharmacy defendants there contended that the plaintiffs would open the door "by offering evidence to demonstrate Defendants prioritized profits over patients." *Opiate*, 2021 WL 4341317, at *2. The court "decline[d] to engage in the hypothetical exercise" and granted the motion. *Id.* Meta has already made this argument to a jury. After telling the New Mexico jury its rescue stories, Meta's counsel said: "The State claims that Meta doesn't care about its users and puts profit over people. When the State says that, I want you to remember these kinds of stories." (Ex. D to Brane Decl., N.M. Trial Tr. at 1166:14–17.) Defendants remain free to answer TUSD's theory with evidence about their platforms and how they built them; they may not answer it with evidence of their good deeds.

The order must apply throughout trial. The Tennessee order reached only jury selection and opening statements (Ex. A to Brane Decl., Tenn. Agreed Order at 10), and Meta later elicited much of this evidence through witness testimony. Defendants themselves have explained why that matters. In their own motion in limine in *Breathitt*, which the Court has ordered treated as filed in this case, *see* Dkt. No. 3457 ¶¶ 1, 5, Defendants argued that "[c]ross-examination alone, or an after-the-fact curative instruction, cannot unring that bell." Defs.' Mot. in Limine No. 4 at 4, Dkt. No. 2794.

## III. CONCLUSION

TUSD therefore respectfully requests an order, as set out in the accompanying proposed order, that (1) excludes evidence, testimony, and argument offered to show that a Defendant is a caring or virtuous company or that its executives or employees are good people, including evidence of (a) Defendants' charitable giving and community or school outreach, (b) praise, awards, and endorsements from third parties, (c) stories and statistics about individuals helped, rescued, or saved, or about arrests or prosecutions attributed to Defendants, and (d) the personal character and virtue of Defendants' executives and employees, but not evidence of Defendants' outreach to, or communications with, schools, parents, educators, and school-based organizations offered for a non-character purpose, or Defendants' evidence about a specific program that TUSD itself offers;

(2) applies throughout trial, including jury selection, opening statements, demonstratives, deposition designations, witness examinations, and closing arguments; and (3) requires any Defendant that contends specific evidence of this kind has become admissible to obtain a stipulation from TUSD or raise the issue with the Court outside the presence of the jury before offering it, as in *Shenwick*, 2021 WL 1232451, at *6.

Dated: October 16, 2026

RESPECTFULLY SUBMITTED

**WAGSTAFF & CARTMELL LLP**

*/s/ Thomas P. Cartmell*
Thomas P. Cartmell

Thomas P. Cartmell (*pro hac vice*)
Jonathan P. Kieffer (*pro hac vice*)
Austin Brane, SBN 286227
Michael P. Cutler, SBN 270663
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel: (816) 701-1100
tcartmell@wcllp.com
jpkieffer@wcllp.com
abrane@wcllp.com
mcutler@wcllp.com

Kirk J. Goza (*pro hac vice*)
Brad Honnold (*pro hac vice*)
**GOZA & HONNOLD LLC**
9500 Nall Ave., Ste 400
Overland Park, KS 66207
Tel. (913) 451-3433
kgoza@gohonlaw.com
bhonnold@gohonlaw.com

Joseph G. VanZandt (*pro hac vice*)
Davis Vaughn (*pro hac vice*)
Jennifer Emmel (*pro hac vice*)
Clinton Richardson (*pro hac vice*)
Seth Harding (*pro hac vice*)
**BEASLEY ALLEN CROW**
**METHVIN PORTIS & MILES, LLC**
234 Commerce Street
Montgomery, AL 36103
Tel: 334-269-2343
Joseph.VanZandt@BeasleyAllen.com
Davis.Vaughn@BeasleyAllen.com
Jennifer.Emmel@BeasleyAllen.com
Clinton.Richardson@BeasleyAllen.com
Seth.Harding@BeasleyAllen.com

***Counsel for Plaintiff Tucson Unified School District***

## ATTESTATION

I, Austin Brane, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: October 16, 2026

By: /s/ *Austin Brane*

**Austin Brane**

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing on October 16, 2026, using the Court's ECF filing system, thereby sending notice of the filing to all counsel of record.

By: /s/*Austin Brane*

**Austin Brane**