# EXHIBIT F

SUPERIOR COURT FOR THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

DEPARTMENT 12 - HONORABLE CAROLYN B. KUHL, JUDGE PRESIDING

COORDINATION PROCEEDING )
SPECIAL TITLE [RULE 3.550] )
)
SOCIAL MEDIA CASES ) JUDICIAL COUNCIL
_____________________ ) COORDINATION
) PROCEEDING
(LEAD CASE: CHRISTINA ARLINGTON ) NO. 5255
SMITH, ET AL., V. TIKTOK INC., )
ET AL., CASE NO. 22STCV21355) )
)
THIS DOCUMENT RELATES TO: )
P.F., ET AL. V. META PLATFORMS, )
ET AL., CASE NO. 23SMCV03371 )

REPORTER'S DAILY TRANSCRIPT OF PROCEEDINGS

WEDNESDAY, FEBRUARY 18, 2026

(APPEARANCES OF COUNSEL ON FOLLOWING PAGES)

---

REPORTED BY: CARRIE A. CAMPBELL, CSR NO. 13921, RDR, CRR
COURT-APPROVED REPORTER PRO TEMPORE
PAGES 2024-2293



APPEARANCES OF COUNSEL (AT COUNSEL TABLE):

FOR THE PLAINTIFFS:

THE LANIER LAW FIRM, PC
BY: W. MARK LANIER
wml@lanierlawfirm.com
SARAH LANIER
Sarah.lanier@lanierlawfirm.com
10940 West Sam Houston Parkway North, Suite 100
Houston, Texas 77064
(713) 659-5200

THE LANIER LAW FIRM, PC
BY: RACHEL LANIER
rachel.lanier@lanierlawfirm.com
2829 Townsgate Road, Suite 100
Westlake Village, California 91361
(310) 277-5100

PANISH | SHEA | RAVIPUDI LLP
BY: RAHUL RAVIPUDI
ravipudi@panish.law
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
(310) 477-1700

FOR META PLATFORMS, INC., f/k/a FACEBOOK, INC.; FACEBOOK HOLDINGS, LLC; FACEBOOK OPERATIONS, LLC; FACEBOOK PAYMENTS, INC.; FACEBOOK TECHNOLOGIES, LLC; INSTAGRAM, LLC; SICULUS, INC.; AND MARK ELLIOT ZUCKERBERG:

COVINGTON & BURLING LLP
BY: PAUL W. SCHMIDT
pschmidt@cov.com
PHYLLIS A. JONES
pajones@cov.com
DANIEL AUTEN
dauten@cov.com
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000



APPEARANCES (CONTINUED):

FOR ALPHABET INC., GOOGLE LLC, AND YOUTUBE, LLC:

WILSON SONSINI GOODRICH & ROSATI
BY: LUIS LI
luis.li@wsgr.com
MELISSA MILLS
mmills@wsgr.com
953 East Third Street, Suite 100
Los Angeles, California 90013
(323) 210-2900

WILSON SONSINI GOODRICH & ROSATI
BY: LAUREN GALLO WHITE
lwhite@wsgr.com
One Market Plaza Spear Tower, Suite 3300
San Francisco, California 94105
(415) 947-2000

---



SESSIONS INDEX
FEBRUARY 18, 2026

| WEDNESDAY, FEBRUARY 18, 2026 | PAGE |
|---|---|
| A.M. SESSION | 2032 |
| P.M. SESSION | 2154 |

Page 2040

A. I agree with that.
**Q. A reasonable company should not try to make money off the disadvantaged. That would be totally inappropriate.**
**Wouldn't it?**
A. I think a reasonable company should try to help the people who use its services.
**Q. And if they know that their help does more harm than it does good, then that company needs to reexamine its values and its actions.**
**Fair?**
A. I think that's probably right, yes.
**Q. All right. Great.**
**So within the framework of those options, I want to give you a roadmap of where we're going to go today in my examination of you.**
**I've drawn the roadmap. I hope you can see it there. The picture I took of you was a picture I think when you were testifying in Congress, if I remember right.**
**That is you, just with a little shorter hair.**
**Fair?**
A. I think that's right. Yes.
**Q. All right. Then the three stops we've got for your road this morning is the stop of credibility, the stop of truth, and the stop of harm. And I'll divide the testimony up into those areas.**
**Okay?**

Page 2041

A. Okay.
**Q. Now, under credibility, I want to talk to you about your economic motive to protect Meta. I want to talk about your extensive media training before you come to present today. And I want to talk about your testimony to Congress.**
**That's where we'll start. All right?**
A. Okay.
**Q. Great.**
**Now, we begin with the economic motive. And as I understand it, you own a good bit of Facebook.**
**Is that correct?**
**Meta. Excuse me. Thank you, Rachel.**
**Is that correct?**
A. Yes, that's correct.
**Q. Your financial interest in Meta is about 13 percent of Meta stock.**
**Is that right?**
A. I think it's something on that order of magnitude, yes.
**Q. Maybe a little bit more?**
A. I think maybe less, but it's -- it sounds like the right -- rough amount.
**Q. All right. So we'll just say plus or minus 13 percent of Meta.**
**Now, Meta is a publicly traded company.**
**True?**
A. Yes.

Page 2042

**Q. So 13 percent of Meta, based upon the share price yesterday, is something on the order of $215 billion.**
**Fair?**
A. I think that's roughly correct.
**Q. And if Meta's stock price goes up, your investment in the company has a greater value. It goes up.**
**Right?**
A. That's correct.
**Q. And if Meta's stock goes down, your investment in the company, the value you have, goes down.**
**True?**
A. That's correct.
**Q. And that was true when you were testifying to Congress.**
**Right?**
A. Yes.
**Q. And that was true when you were making decisions about how Instagram should be run.**
**True?**
A. Yes, that kind of basic economic point is true.
**Q. All right.**
A. I think it might be worth adding that -- I mean, I have pledged to give almost all of my money to charity, and I focus on giving billions of dollars to science research to help cure diseases.
So, I mean, it's -- the better that Meta does,

Page 2043

the more we're able to do that kind of research, which I think is a positive thing.
MR. LANIER: Your Honor, I object to that in light of the motion in limine that was moved on this morning by Meta's counsel and ask that it be stricken from the record.
MR. SCHMIDT: We oppose that, your Honor. We think it's an appropriate answer, and it's not covered by our motion at all.
THE COURT: Overruled. It could be brought up in -- it was volunteered, but it could be brought in by Meta's counsel, so we'll let it stand.
QUESTIONS BY MR. LANIER:
**Q. Sir, are you suggesting we should examine your spending habits and what you own?**
A. I'm not suggesting anything. I am answering your question about my economic motives and simply saying that the better that Meta does, the more money I will be able to invest in science, research and causes like that, which I've pledged to use more than 99 percent of my wealth to do. So that's --
**Q. So have you pledged that money already?**
A. I pledged that I was going --
**Q. No, no, no, no. That wasn't my question.**
**Have you already said -- signed it over? Have you signed over your money, sir?**
A. I think most of the stock in Meta actually is owned by the CZI organization, yes.

Page 2044

**Q. Yeah.**
**And the trust that you're talking about, the CZI, are you telling us now that you have absolutely no income from that stock? You have no right to dictate where it goes? You have no right to borrow against it?**
A. Oh, of course I determine where it goes, because I also co-run CZI with my wife. But we -- but we invest in science, research and other charitable causes.
**Q. Your science, research you invest in includes the AI and the other things that are related to this case.**
**Fair?**
A. I don't think it's relevant to this case.
MR. SCHMIDT: Objection, your Honor. I don't know how AI is related to this case.
THE COURT: Okay. The last part will be stricken.
Ask it again without the AI reference.
QUESTIONS BY MR. LANIER:
**Q. Sir, you determine where that money is going to be invested with your wife.**
**Fair?**
A. Yes, for the most part. I mean, I -- like, we run that organization. There are other people who obviously are part of the organization, so I don't want to overstate it, but, yes.
And it predominantly goes towards scientific research and a large amount towards helping with

Page 2045

education as well.
**Q. A large amount toward what?**
A. Helping with education.
**Q. Okay. And how much have you pledged towards helping with those people who have been hurt by social media?**
A. That's not a part of the focus of the foundation.
**Q. That wasn't my question, sir.**
**How much have you pledged to the victims of social media?**
A. I disagree with the characterization of that.
**Q. You were asked by Senator Hawley in Congress whether or not you would set aside money to help the victims of social media.**
**Do you remember being asked that?**
A. Not specifically in those words.
**Q. Generally in that concept do you remember, sir?**
**I've got the specific words. We'll put them down in a minute.**
**But do you just generally remember?**
A. There were a lot of questions that day. I don't remember specifically, no.
**Q. You don't remember Senator Hawley asking whether or not you would set aside any of your money for the victims of the harms that have come from social media?**
A. I believe that he would have asked something like that, but I don't recall it myself right now.

Page 2046

**Q. Well, I'll ask it of you.**
**Have you?**
A. No, but I disagree with the characterization of your question.
**Q. You control a good bit of the decision-making within Meta.**
**Right?**
A. Yes.
**Q. You are the CEO of Meta.**
**Right?**
A. I am.
**Q. You are chairman of the board of Meta?**
A. That's correct.
**Q. You hold the majority of the voting power?**
A. Yes.
**Q. The board cannot outvote you on company direction.**
**True?**
A. I don't think that's how that works.
**Q. Well, you told Joe Rogan that you have the benefit of not having to convince the board not to fire you.**
**Correct?**
A. Yeah, I think that that's roughly true, although it's a little more technically complicated than that.
**Q. Well, you think that that's roughly true on what you told Joe Rogan, or maybe what you told Joe Rogan was roughly true?**

Page 2047

A. I think what I told Joe Rogan was a simplified version of it.
I think the technical way that it works is that the board members can vote on whatever they want, but because I am the majority shareholder, I can choose who is on our board.
MR. LANIER: Let's play -- your Honor, we ask to play the Joe Rogan video. It's Exhibit 6282, and so I can clarify whether or not he was being fully correct in that conversation.
THE COURT: Mr. Schmidt?
MR. SCHMIDT: Your Honor, we object. What he said to Joe Rogan is not a fact in this case. It's not impeachment, or certainly not proper impeachment.
THE COURT: Sustained.
QUESTIONS BY MR. LANIER:
**Q. You're telling us that what you told Joe Rogan was false?**
A. No, that's not what I said at all.
I said what I explained to him was a kind of simplified version to make a broader point. It is roughly true, although your version of the question is -- was one that I disagreed with.
And being in court now, I think it's important to give a more technical and precise answer.
But what I explained to him is true as a summary, and I simplified the concept.
**Q. You said, "Because I control our company, I have**