Thomas P. Cartmell (*pro hac vice*)
Jonathan P. Kieffer (*pro hac vice*)
Austin Brane, SBN 286227
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel: (816) 701-1100
tcartmell@wcllp.com
jpkieffer@wcllp.com
abrane@wcllp.com

*Attorneys for Plaintiff* (additional counsel on signature page)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION, | Case No. 4:22-md-03047-YGR<br><br>MDL No. 3047 |
| This Document Relates to:<br><br>*Tucson Unified School District v. Meta Platforms Inc., et al.*<br><br>Case No.: 4:24-cv-01382-YGR | **PLAINTIFF'S MOTION IN LIMINE #2 TO EXCLUDE REFERENCE TO TUSD'S SOURCES OF FUNDING AND HOW TUSD WOULD SPEND A JURY AWARD**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br><br>Magistrate Judge: Hon. Peter H. Kang |

## I. INTRODUCTION

Plaintiff Tucson Unified School District ("TUSD") submits this motion in limine to: (1) exclude testimony, evidence, or argument that TUSD's reliance on external funding—or its failure to pursue other funding—reduces Defendants' liability or TUSD's damages, and (2) preclude testimony, evidence, or argument about how TUSD would spend a jury award. Neither topic bears on whether Defendants' platforms harmed TUSD, or on what TUSD lost, and both would invite the jury to decide the case on improper grounds.

## II. ARGUMENT

### A. The Court Should Exclude Evidence and Argument About TUSD's Actual and Potential Funding Sources.

TUSD anticipates that Defendants will argue that TUSD has sustained no financial losses because the funding it relied on came from external sources. The Court should exclude this evidence and argument: It would waste time, confuse the issues, and mislead the jury, and the danger of unfair prejudice substantially outweighs whatever minimal probative value it has. *See* Fed. R. Evid. 403.

The Court should bar Defendants from arguing that TUSD cannot recover losses it paid for with external funds. TUSD claims two relevant categories of damages: (1) lost time and financial resources that TUSD expended responding to harms Defendants' platforms caused ("Category 1"), and (2) the cost of external programs and services that mitigate those harms ("Category 2"). (Ex. A to Cutler Decl., Plaintiff's Amended Answers to Defs.' Third Set of Interrogatories, at 3–4) For Category 1, TUSD identified the cost of teachers and staff who provide mental health and student support services. (*Id.* at 4.) For Category 2, TUSD identified past expenditures to mitigate harms from Defendants' platforms. (*Id.*)

TUSD has funded its mental and behavioral health support and programming from a variety of sources, including federal grants, state mental health funding, recoveries in other litigation, and TUSD's 910(G) desegregation levy. For instance, federal ESSER funds[1] supported social workers,

[1] ESSER funding refers to the Elementary and Secondary School Emergency Relief Fund, which provided additional funding to school districts during the COVID-19 pandemic. (Ex. B to Cutler Decl., Trujillo Dep. at 253:1–12.)

counselors, MTSS staff,[2] and TUSD's social-emotional learning ("SEL") curriculum. (Ex. B to Cutler Decl., 5/8/25 Trujillo Dep. at 264:1–265:6). Federal funding has supported Talkspace, a virtual mental health platform, and federal Title IV funds also helped fund the SEL department. (Ex. C to Cutler Decl., Hernandez Dep. at 51:2–56:15.) State agencies, state mental health funding, and federal grants have paid for outside mental health services for students. (Ex. D to Cutler Decl., Carrier Dep. at 138:8–141:24.) TUSD has relied on 910(G) desegregation funding to support its student relations department. *See* A.R.S. § 15-910(G); (Ex. E to Cutler Decl., Warmbrand Dep. at 17:7-18.) TUSD has also used recoveries from the JUUL litigation to fund related services, including behavioral health services. (Ex. D to Cutler Decl., 5/7/25 Carrier Dep. at 141:13–24.)

The Court should exclude all of this funding-source evidence. TUSD's funding sources for combating the harms Defendants' platforms have caused to TUSD are irrelevant to liability. Evidence is relevant only if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. TUSD claims that Defendants designed their social media platforms to addict minor users and interfered with the right to public education by disrupting the classroom environment. How TUSD paid to mitigate those harms says nothing about whether Defendants caused them. In other words, the salary source of a counselor who spends time addressing problems Defendants' platforms caused in TUSD's schools is irrelevant. Defendants may argue that other factors—such as the COVID-19 pandemic—caused or contributed to TUSD's injuries. This motion does not seek to prevent Defendants from doing so. Instead, it seeks to bar funding sources as a proxy for alternate causation. Defendants' experts' opinions on this point are flimsy. For instance, Dr. Moore opines that because certain ESSER-funded line items overlap with expenses sought by TUSD in this litigation, those expended stemmed from the COVID-19 pandemic, not social media. (Dkt. 3587-3, Moore Rpt. at ¶ 86.) However, as Superintendent Gabriel Trujillo explained, ESSER funds could be used for mental health support and social-emotional learning, which encompasses the harms that

---

[2]MTSS refers to "Multi-Tiered Systems of Support," an intervention framework involving teachers, counselors, administrators, special education representatives, and parents working together to intervene with a student who might be struggling with problems such as grades or school attendance. (Ex. B to Cutler Decl., Trujillo Dep. 227:21–229:15.)

TUSD claims Defendants' platforms caused. (Ex. B to Cutler Decl., Trujillo Dep. 263:14-18.)

Accordingly, the Court should exclude evidence of TUSD's funding sources as irrelevant and likely to confuse the issues and mislead the jury. Fed. R. Evid. 401 & 402, 403; *United States v. Espinoza-Baza*, 647 F.3d 1182, 1189 (9th Cir. 2011) (noting that when evidence has minimal probative value, even a small risk of misleading the jury justifies exclusion under Rule 403).

Nor should TUSD's reliance on external funding reduce its damages.[3] (*See* MTD Order, Dkt. 1267 at 21 ["The alleged injuries here are distinct and borne exclusively by the school districts."].) The collateral source rule rests on the same principle: A defendant may not reap a windfall because the plaintiff received benefits from another source. *See W. Towboat Co. v. Vigor Marine, LLC*, 85 F.4th 919, 926 (9th Cir. 2023) ("The collateral source rule allows a tortfeasor to be assessed the full amount of damages when the victim receives compensation from a source collateral to the tortfeasor."); *McLean v. Runyon*, 222 F.3d 1150, 1156 (9th Cir. 2000) ("The primary justifications for the collateral source rule are that the defendant should not get a windfall for collateral benefits received by the plaintiff and that the defendant should not profit from benefits that the plaintiff has paid for himself."); *see also Michael v. Cole*, 122 Ariz. 450, 452 (1979) ("The collateral source rule is well established in Arizona tort law."); *Restatement (Second) of Torts* § 920A(2) & cmt. c (1979) (rule applies to gratuitous benefits and social legislation benefits). Whoever paid their salaries, the hours TUSD's teachers and staff spent responding to Defendants' harms were hours lost to TUSD's educational mission, and every grant dollar spent on those harms was a dollar TUSD could not spend elsewhere. Permitting Defendants to argue or imply that TUSD did not spend its own money on mental health staff and programming—and thus sustained no loss—risks confusing the issues and misleading the jury about the damages TUSD may recover. The Court should exclude any such evidence and argument under Rule 403.

Evidence about funding TUSD did not pursue is likewise unfairly prejudicial and threatens a mini-trial over grant requirements and applications. For instance, Defendants' expert Dr. Michele

---

[3] Separately from Rule 403, Defendants are precluded from introducing evidence, testimony, or argument about the JUUL litigation. (Dkt. 3051 at 2 [¶ 1].) By extension, Defendants should not be permitted to argue that TUSD sustained no financial loss because it was relying, in part, on funds recovered in the JUUL litigation.

Moore opines that TUSD has mismanaged its finances, including by spending $4.2 million per year on its own security department, rather than applying for grants for school resource officers. (Dkt. 3587-3, Moore Rpt. at ¶ 65.) To rebut that opinion, TUSD would have to walk the jury through the requirements of various grants and whether the Tucson Police Department even has enough officers to assign to TUSD schools. For every other untapped source, TUSD would need testimony explaining why it did not apply to rebut the suggestion that it left money on the table. That sideshow would lengthen trial and shed no light on the central issue in this case: Defendants' role in addicting minors to their platforms and disrupting school operations. The Court should exclude any evidence or argument about funding TUSD did not pursue. *See* Fed. R. Evid. 403.

### B. The Court Should Exclude Evidence and Argument About How TUSD Would Spend a Jury Award.

The Court should also bar Defendants from offering evidence, testimony, or argument about how TUSD would spend a jury award. Such evidence has no probative value, and it threatens unfair prejudice, jury confusion, and wasted time. It would also invite the jury to believe, wrongly, that TUSD must spend any award in a particular way. Compensatory damages "are measured by the harm the defendant has caused the plaintiff." *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 872 (9th Cir. 2017). Their purpose is to "make good or replace the loss caused by the injury." *Id.* The award itself evens the scales; once it does, the law imposes no obligation on the recipient to use the money in any particular way. Because the law leaves that choice to TUSD, the Court should not invite the jury to speculate about what TUSD would do with it. The risk of unfair prejudice is especially acute here because Defendants' expert Dr. Moore opines at length that TUSD mismanages its finances. (Dkt. 3587-3, Moore Rpt., § II.) Speculation about how TUSD would spend an award would let Defendants repackage that opinion as a reason to shrink the award. The Court should exclude this evidence and argument. *See* Fed. R. Evid. 403.

## III. CONCLUSION

The Court should grant Plaintiff's MIL No. 2 and preclude Defendants from introducing testimony, evidence, or argument (1) that TUSD's reliance on external funding, or its failure to pursue other funding, reduces Defendants' liability or TUSD's damages; and (2) about how TUSD would spend a jury award.

Dated: October 16, 2026

Respectfully Submitted,

**WAGSTAFF & CARTMELL LLP**

/s/Thomas P. Cartmell
Thomas P. Cartmell (*pro hac vice*)
Jonathan P. Kieffer (*pro hac vice*)
Austin Brane, SBN 286227
Michael P. Cutler, SBN 270663
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel: (816) 701-1100
tcartmell@wcllp.com
jpkieffer@wcllp.com
abrane@wcllp.com
mcutler@wcllp.com

Kirk J. Goza (*pro hac vice*)
Brad Honnold (*pro hac vice*)
**GOZA & HONNOLD LLC**
9500 Nall Ave., Ste 400
Overland Park, KS 66207
Tel. (913) 451-3433
kgoza@gohonlaw.com
bhonnold@gohonlaw.com

Joseph G. VanZandt (*pro hac vice*)
Davis Vaughn (*pro hac vice*)
Jennifer Emmel (*pro hac vice*)
Clinton Richardson (*pro hac vice*)
Seth Harding (*pro hac vice*)
**BEASLEY ALLEN CROW**
**METHVIN PORTIS & MILES, LLC**
234 Commerce Street
Montgomery, AL 36103
Tel: 334-269-2343
Joseph.VanZandt@BeasleyAllen.com
Davis.Vaughn@BeasleyAllen.com
Jennifer.Emmel@BeasleyAllen.com
Clinton.Richardson@BeasleyAllen.com
Seth.Harding@BeasleyAllen.com

***Counsel for Plaintiff Tucson Unified School District***

**ATTESTATION**

I, Austin Brane, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

**Dated:** October 16, 2026

By: /s/*Austin Brane*

**Austin Brane**

**CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing on October 16, 2026, using the Court's ECF filing system, thereby sending notice of the filing to all counsel of record.

By: /s/*Austin Brane*

**Austin Brane**