Thomas P. Cartmell (*pro hac vice*)
Jonathan P. Kieffer (*pro hac vice*)
Austin Brane, SBN 286227
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel: (816) 701-1100
tcartmell@wcllp.com
jpkieffer@wcllp.com
abrane@wcllp.com

*Attorneys for Plaintiff* (additional counsel on signature page)

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case No. 4:22-MD-03047-YGR |
| This Document Relates to: | **PLAINTIFF TUCSON UNIFIED SCHOOL DISTRICT'S MOTION IN LIMINE NO. 4 TO EXCLUDE EVIDENCE, TESTIMONY, AND ARGUMENT CONCERNING ISOLATED INCIDENTS OF ALLEGED RACISM BY TUSD STAFF OR STUDENTS DIRECTED AT OR NEAR TUSD STUDENTS** |
| *Tucson Unified School District v. Meta Platforms, Inc., et. al.*, | |
| Case No.: 4:24-cv-1382 | Judge: Hon. Yvonne Gonzalez Rogers |

## I. INTRODUCTION

Plaintiff moves pursuant to Federal Rules of Evidence 401, 402, and 403 to exclude any testimony or documents concerning allegations of specific instances of racial discrimination, hostility, or racist conduct involving students or personnel within Tucson Unified School District ("TUSD"). These collateral events concern highly prejudicial incidents that are disconnected from TUSD's theory of harm and Defendants' alternative causation theories or affirmative defenses.

Plaintiff seeks to exclude evidence or argument concerning the following incidents and underlying events:

- the alleged use of racial slurs by an opposing basketball team's players and fans in 2022;
- the use of racial slur directed at TUSD staff member in 2022;
- the forming of Turning Points USA club at Sabino High School in 2022;
- allegations of racial discrimination in the hiring of a new Borman Elementary School principal in 2022;
- allegations of racial discrimination in discipline of a TUSD school bus monitor in 2022;
- the use of racist and derogatory language in group chat involving Sabino High School students in 2020;
- the allegation of a teacher using a racial slur on staff training videoconference in 2020;
- the allegation of a teacher using racial slur in class in 2019.

The admission of evidence related to these incidents would not make any material fact concerning Defendants' platform design or the cause of TUSD's damages more or less probable. Any alleged probative value is substantially outweighed by danger of unfair prejudice, would mislead the jury, and would lead to unnecessary "mini-trials" on collateral issues. This Court, therefore, should exclude this evidence under Rules 401, 402, and 403.

## II. ARGUMENT

Evidence is admissible under Fed. R. Evid. 402 if it is relevant, meaning that the evidence "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence may nonetheless be excluded "if its probative value is substantially outweighed by a danger of one or

more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Several of these incidents are irrelevant because they have no connection to TUSD students. In 2022, allegations were made that TUSD discriminated against an African American woman by not promoting her to principal at Borman Elementary. (Ex. A.[1]) Instead, after interviewing multiple candidates, TUSD promoted an assistant principal from a TUSD middle school, who had been in that position for five years and with TUSD for several more years. Also in 2022, allegations were made that TUSD discriminated against an African American school bus monitor when it moved to terminate her employment. (*Id.*) The decision followed an incident where the bus driver and the monitor, after completing their drop off at school, did not realize a student was still on the bus. They stopped at a convenience store and left the student unattended before returning to the bus, realizing the student was there, and taking the student to school. In 2020, TUSD disciplined a high school principal for using the "n-word" during a staff training videoconference. (Ex. B.) The training addressed the appropriate way to respond to racially inflammatory language on campus and the principal used the "n-word" after warning attendees that it would be used.

The remaining incidents involve only a small group of students or some subset of students at one school. In 2022, an opposing high school basketball team's players and fans allegedly directed racial slurs at one or more TUSD players. (Ex. C.) In response, one TUSD player posted a video on TikTok of another TUSD player responding to the harassment by using a racial slur. (*Id.*) In September 2022, a TUSD student shouted a racial slur at a TUSD staff member. There were five student witnesses. (Ex. D.) The victim staff member then told another staff member that similar incidents had happened before. (*Id.*) In August 2021, TUSD received two community complaints regarding the formation of a Turning Points USA student club at Sabino High School. (Ex. E.) The first complaint conveyed that "a student was experiencing emotional trauma" as a result, and the second "did not speak to student experience at Sabino [High School] but did express a concern regarding … property values in the community." (*Id.*) In November 2020, TUSD staff received a

[1] All "Ex. __" references are to the Declaration of Austin Brane in Support of Plaintiff's Motion in Limine 4 to Exclude Evidence, Testimony, and Argument Concerning Isolated Incidents of Alleged Racism by TUSD Staff or Students Directed at or Near TUSD Students, filed concurrently.

complaint about a group chat involving Sabino High School students and students from outside TUSD. (Ex. F.) The complainant asserted, during an election cycle, that the chat contained political views that they viewed as "racist, xenophobic, homophobic, and sexist." (*Id.*) In August 2019, an anonymous parent complained to TUSD about a TUSD teacher allegedly using the "N-word" in class. (Ex. G.) It is not clear how many students were present or heard the slur.

**A. The Incidents are Not Relevant Under Rules 401 and 402.**

Evidence is only relevant if it "has any tendency" to make a fact of consequence more or less probable. Fed. R. Evid. 401. These incidents do not satisfy this standard.

To start, certain incidents do not involve TUSD students: the 2022 employment discrimination allegations concerning an elementary school principal and a school bus monitor, and the use of a racial slur by a TUSD staff member during training with other TUSD staff. Such allegations do not concern the mental health of students; by definition, they are focused on the employment relationship between staff and the district. As such, there is no credible argument that these incidents affected the mental health or behavioral issues facing TUSD students, or that they increased the disruption to the academic environment of TUSD's schools. Any other relevance Defendants may claim would be even more tenuous. Because these incidents do not relate to TUSD's students, they necessarily do not relate to whether those students compulsively used Defendants' social media platforms or suffered harm therefrom.

Next, allegations regarding specific instances of racial discrimination or racist conduct are immaterial to any element of a claim or defense. These incidents, therefore, should be excluded under Fed. R. Evid. 401, 402, and 403.

TUSD raises a single count of negligence against Defendants. Specifically, Plaintiff alleges that the Defendants breached their duty to use ordinary care by (1) "not providing the warnings that a reasonably prudent, safe, and competent company would have provided"; (2) "designing, operating, and/or marketing their social media platforms in a way that caused minors to experience problematic use, compulsive use, and/or addiction"; (3) "deliberately targeting school-aged children, knowing of the impact that doing so could have on schools"; or (4) "not designing,

operating, and/or marketing their social media platforms as a reasonably prudent, safe, and competent company would have done." (ECF No. 2688 at 46.[2])

None of these incidents bear on whether Defendants used reasonable care. Neither a student directing a racial slur at a staff member; nor a teacher using a racial slur in front of some subset of her class; nor students at one high school forming a Turning Points USA club have any bearing on the warnings Defendants should have provided, whether Defendants designed their platforms to be addictive, or whether they operated those platforms in a reasonably prudent manner. This type of evidence "thus has no probative value." *Brown v. City of Los Angeles*, 2014 WL 13130752, at *13 (C.D. Cal. Oct. 27, 2014) (excluding evidence about corruption from trial about racial discrimination).

There is also no connection between these incidents and causation—i.e., whether "Defendants' failure or failures to use ordinary care were a substantial factor in causing [TUSD] to suffer harm or harms." (ECF No. 2688 at 46). Defendants have a theory of alternative causation that relates, in general terms, to race. This motion does not seek to preclude defense experts from raising population-level racial disparities or discrimination in Tucson as an alternative cause of TUSD's injuries (however implausible that theory might be). But evidence—including expert testimony—about isolated, inflammatory incidents involving a few staff members and students cannot establish overarching concerns of racism or that TUSD does not treat students equally. (*See, e.g.,* ECF No. 3587-5 (Wildermuth Rpt.) at ¶90; ECF No. 3587-3 (Moore Rpt.) at §IV.) This evidence should be precluded because any alleged connection between a few isolated incidents and pervasive mental health problems is extremely tenuous—in addition to the Rule 403 issues discussed below.

These incidents are also irrelevant to damages. The damages element concerns whether TUSD "incurred expenses and/or the diversion of time and resources" resulting from Defendants' conduct. (ECF No. 2688 at 46). It does not concern whether isolated incidents of alleged racism—the impact of which cannot be, and has not been, generalized across TUSD as a whole—caused

[2] TUSD reserves the right to revise its proposed jury instructions consistent with the Pretrial Order's November 2, 2026 deadline to do so. (ECF No. 3542.)

TUSD's injuries. These episodes are bound to specific periods of time, affected a small number of individuals, and occurred at a limited number of schools operated by TUSD.

Defendants purport to have preserved three affirmative defenses in this case: assumption of risk, failure to mitigate damages, and comparative negligence.[3] (*Id.* at 7.) The evidence at issue in this motion bears on none of them. The incidents are irrelevant to the assumption-of-risk defense and Plaintiff's supposed failure to mitigate damages, both of which concern TUSD's relationship to the harm caused by the Defendants. (*See id.* at 110 (assumption of risk requires showing that TUSD knew of the risks from Defendants' conduct and voluntarily subjected itself to those risks), 104 (mitigation of damages defense requires a showing that TUSD "failed to use reasonable efforts to mitigate damages").)

Finally, Defendants' comparative negligence affirmative defense does not make these collateral events relevant. Defendants bear the burden of proving comparative negligence—i.e., that TUSD failed to use reasonable care and proximately caused its own harm. (ECF No. 2688 at 99-101.) These incidents do not show that TUSD breached any duty, or that any alleged breach caused harm to TUSD. For example, where a TUSD staff member used a racial slur—in an attempt to educate staff on how to respond to use of such language on campus—they were reprimanded for violation of TUSD staff policies. (Ex. B.) That demonstrates TUSD exercising reasonable care through its policies and enforcement thereof.

In short, evidence of these incidents does not make any fact at issue more or less probable. *See* Fed. R. Evid. 401, 402. The Court should exclude the evidence, as other courts have done under comparable circumstances. *See Kirola v. City & Cnty. of San Francisco*, 2021 WL 1334153, at *18 (N.D. Cal. Mar. 12, 2021), *aff'd in part, rev'd in part and remanded on other grounds*, 2023 WL 2851368 (9th Cir. Apr. 10, 2023) (holding that evidence of repeated barriers to access was not probative of system-wide ADA violation, absent evidence that barriers were frequent across all locations); *Felber v. Yudof*, 851 F. Supp. 2d 1182, 1188 (N.D. Cal. 2011) (holding that events occurring on other campuses of university system and/or before plaintiffs had enrolled had

[3] For the reasons set out in the parties' joint filing, TUSD objects to Defendants' proposed instructions on affirmative defenses. *See* ECF No. 2688 at 7.

"extremely marginal relevance" to whether plaintiffs had encountered hostile environment as students); *see also Hill v. Goodfellow Top Grade*, 2019 WL 4194277, at *2 (N.D. Cal. Sept. 4, 2019) (excluding evidence of other complaints of discrimination where plaintiff did not establish "that any of the three witnesses reported to the same supervisors as Plaintiff, that they had the same duties as Plaintiff, or that they were allegedly subject to the same adverse employment actions as Plaintiff").

**B. Any Minimal Relevance Is Substantially Outweighed By Rule 403 Dangers.**

Even if the challenged evidence were minimally relevant, this Court should exclude it under Rule 403. The risks of unfair prejudice, jury confusion, and undue delay substantially outweigh any probative value that the evidence might have.

Evidence concerning allegations of racial discrimination and racially motivated conduct is "likely to cause jury confusion and distract jurors from resolving the actual issues in the case." *Brown*, 2014 WL 13130752, at *6, 13 (excluding evidence of the N-word in a racial discrimination case because "mere utterance of the word will inflame jurors' emotions and invite them to decide the case on an emotional basis"). The jury will not determine whether Plaintiff is liable for racial discrimination; it will determine whether the design of Defendants' platforms harmed TUSD's students and TUSD itself. Evidence about allegedly racist behavior would trigger deep, personal memories and feelings among jurors, and would "invite them to decide the case on an emotional basis" having nothing to do with the facts at issue in this lawsuit. *See id.*

A related Rule 403 problem is the likelihood that admission of this evidence would result in "mini-trials" on collateral issues. Evidence about specific alleged instances of racially motivated conduct would "necessarily ... require time-consuming mini trials to adjudicate the truth or falsity of the complaints." *Hill v. Goodfellow Top Grade*, 2019 WL 4194277, at *2 (N.D. Cal. Sept. 4, 2019); *see also Synergy Hematology-Oncology Med. Assocs. Inc. v. Abbott Labs., Inc.*, 2023 WL 4761550, at *5 (C.D. Cal. June 6, 2023) (excluding "evidence of and references to unrelated litigation, disputes, and controversies involving [defendant]" under Rule 403 because admission would require mini-trials on the validity of the complaints). For instance, the allegation of a teacher using the N-word during class was anonymous. And although the complainant said that the teacher

confessed to the incident, that alleged confession would need to be proved. That would require evidence about what was or was not said, as well as any impact the alleged word had on those who heard it. Likewise, whether a student directing a racial slur at a staff member impacted that student's, or a witnesses', mental health or success in school would require further inquiry and evidence. The same is true for the forming of a Tuning Points USA student club at one high school, racial slurs allegedly used by opposing players and fans at one basketball game, and the alleged use of inflammatory political speech on a student group chat. All these incidents would require counter evidence and testimony that would distract from the issues and delay the proceedings.

Rule 403 is designed to prevent juror confusion and avoidable trial delays. *See In re Cathode Ray Tube (CRT) Antitrust Litig*., 2016 WL 7803893, at *2 (N.D. Cal. Nov. 15, 2016) ("One function of Rule 403 is to avoid the introduction of large quantities of extrinsic evidence to create mini-trials regarding tangentially related matters.") (internal citations and quotations omitted).

Finally, any points Defendants might seek to make through the challenged evidence can be made "through less prejudicial means." *United States v. Higuera-Llamos*, 574 F.3d 1206, 1209 (9th Cir. 2009). As discussed above, Defendants have a theory of alternative causation tied to race. Defendants have questioned TUSD witnesses on whether they have experienced or observed racism on TUSD campuses, at a general level. This Motion does not seek to preclude that evidence. But the Court should prevent mini-trials about the details of isolated incidents involving only TUSD staff or a small group of TUSD students.

## III. CONCLUSION

For the reasons stated above, this Court should preclude any evidence, testimony, or argument regarding any of the alleged incidents addressed in this Motion. *See supra* at p. 1 (itemizing incidents).

Dated: October 16, 2026

RESPECTFULLY SUBMITTED

**WAGSTAFF & CARTMELL LLP**

*/s/ Thomas P. Cartmell*
Thomas P. Cartmell

Thomas P. Cartmell (*pro hac vice*)
Jonathan P. Kieffer (*pro hac vice*)
Austin Brane, SBN 286227
Michael P. Cutler, SBN 270663
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel: (816) 701-1100
tcartmell@wcllp.com
jpkieffer@wcllp.com
abrane@wcllp.com
mcutler@wcllp.com

Kirk J. Goza (*pro hac vice*)
Brad Honnold (*pro hac vice*)
**GOZA & HONNOLD LLC**
9500 Nall Ave., Ste 400
Overland Park, KS 66207
Tel. (913) 451-3433
kgoza@gohonlaw.com
bhonnold@gohonlaw.com

Joseph G. VanZandt (*pro hac vice*)
Davis Vaughn (*pro hac vice*)
Jennifer Emmel (*pro hac vice*)
Clinton Richardson (*pro hac vice*)
Seth Harding (*pro hac vice*)
**BEASLEY ALLEN CROW**
**METHVIN PORTIS & MILES, LLC**
234 Commerce Street
Montgomery, AL 36103
Tel: 334-269-2343
Joseph.VanZandt@BeasleyAllen.com
Davis.Vaughn@BeasleyAllen.com
Jennifer.Emmel@BeasleyAllen.com
Clinton.Richardson@BeasleyAllen.com
Seth.Harding@BeasleyAllen.com

***Counsel for Plaintiff Tucson Unified School District***

**ATTESTATION**

I, Austin Brane, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: October 16, 2026

By: /s/ *Austin Brane*

**Austin Brane**

**CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing on October 16, 2026, using the Court's ECF filing system, thereby sending notice of the filing to all counsel of record.

By: /s/*Austin Brane*

**Austin Brane**