JONATHAN H. BLAVIN (SBN 230269)
Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel: (415) 512-4000

E. MARTIN ESTRADA (SBN 223802)
Martin.Estrada@mto.com
L. ASHLEY AULL (SBN 257020)
Ashley.Aull@mto.com
VICTORIA A. DEGTYAREVA (SBN 284199)
Victoria.Degtyareva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel.: (213) 683-9100

*Attorneys for Defendant Snap Inc.*

*[Additional parties and counsel listed on signature page]*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION

THIS DOCUMENT RELATES TO:

*Tucson Unified School District v. Meta Platforms Inc., et al.*
Case No. 4:24-cv-01382-YGR

MDL No. 3047

Case No. 4:22-md-03047-YGR-PHK

**DEFENDANTS' NOTICE OF MOTION AND MOTION *IN LIMINE* TO EXCLUDE EVIDENCE, ARGUMENT, OR REFERENCE TO THE NCOSE "DIRTY DOZEN" OR THORN REPORTS (MIL NO. 2)**

**<u>Hearing:</u>**
Date: November 13, 2026
Time: 2:00 PM
Place: Courtroom 1, 4th Floor
Judge: Hon. Yvonne Gonzalez Rogers

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT, at 2:00 pm on November 13, 2026, before the Honorable Yvonne Gonzalez Rogers, in Courtroom 1, Floor 4, of the United States District Court, Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Defendants will and hereby do move this Court, under Federal Rules of Evidence 402, 403, and 801, for an order excluding argument, evidence and testimony at trial as described in the accompanying Memorandum of Points and Authorities. This Motion is based on this Notice, the accompanying Memorandum, any other papers submitted in connection with the Motion, the accompanying declaration of Jonathan H. Blavin and the exhibits thereto, and any other matters presented at the time of the hearing.

DATED: October 16, 2026

Respectfully submitted,

MUNGER, TOLLES & OLSON LLP

By: */s/ Jonathan H. Blavin*

Jonathan H. Blavin (SBN 230269)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
(415) 512-4000
Jonathan.Blavin@mto.com

E. MARTIN ESTRADA (SBN 223802)
Martin.Estrada@mto.com
L. ASHLEY AULL (SBN 257020)
Ashley.Aull@mto.com
VICTORIA A. DEGTYAREVA (SBN 284199)
Victoria.Degtyareva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel.: (213) 683-9100

*Attorneys for Defendant Snap Inc.*

*[Additional parties and counsel listed on signature page]*

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................ 1
II. BACKGROUND ......................................................................................................... 2
III. ARGUMENT ............................................................................................................. 4
A. These Materials Are Inadmissible Hearsay. .................................................................... 4
B. Evidence Regarding These Materials Is Also Irrelevant to Tucson's Claims. ........... 6
C. Evidence Regarding These Materials Poses An Overwhelming Prejudicial Risk. ........................................................................................................................... 8
IV. CONCLUSION ......................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Asetek Danmark A/S v. CoolIT Sys. Inc.*, 2022 WL 21306657 (N.D. Cal. Oct. 4, 2022) .......... 6

*Doe 1 v. Twitter, Inc.*, 148 F.4th 635 (9th Cir. 2025) .......... 9

*Est. of Bride by & through Bride v. Yolo Techs., Inc.*, 112 F.4th 1168 (9th Cir. 2024) .......... 9

*Gibson v. Vanjani*, No. 17-CV-01705-EMC, 2018 WL 4053458 (N.D. Cal. Aug. 24, 2018), aff'd, 790 F. App'x 116 (9th Cir. 2020) .......... 4

*Iorio v. Allianz Life Ins. Co. of N. Am.*, No. 05CV633 JLS (CAB), 2010 WL 11508761 (S.D. Cal. Jan. 27, 2010) .......... 5

*Musk v. OpenAI, Inc.*, 769 F. Supp. 3d 1017 (N.D. Cal. 2025) .......... 5

*Sana v. Hawaiian Cruises, Ltd.*, 181 F.3d 1041 (9th Cir. 1999) .......... 5

*In re Soc. Media*, 702 F. Supp. 3d at 858–59 .......... 6

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 702 F. Supp. 3d 809 (N.D. Cal. 2023) .......... 1, 6, 7

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 754 F. Supp. 3d 946 (N.D. Cal. 2024) .......... 9

*United States v. Aranda-Diaz*, 2014 WL 459607 (D.N.M. Jan. 8, 2014) .......... 9

*United States v. Curtin*, 489 F.3d 935 (9th Cir. 2007) (en banc) .......... 9

*Young v. Wolfe*, 2017 WL 985632, at *4 (C.D. Cal. Mar. 14, 2017) .......... 4

**FEDERAL RULES**

Fed. R. Evid. 402 .......... 1, 6

Fed. R. Evid. 403 .......... 1, 8, 9

Fed. R. Evid. 801 ........ 1, 4

Fed. R. Evid. 805 ........ 4

**OTHER SOURCES**

Janis Wolak & David Finkelhor, *Sextortion: Findings From an Online Survey about Threats to Expose Sexual Images*, CRIMES AGAINST CHILDREN RESEARCH CENTER UNIV. OF N.H. (June 2016) ........ 3, 5

NCOSE, *The 2017 Dirty Dozen List* ........ 3

NCOSE, *The 2019 Dirty Dozen List* ........ 3

NCOSE, *The 2026 Dirty Dozen List* ........ 2, 5

NCOSE, *Snapchat* ........ 3. 5

Thorn, *Online Grooming: Examining Risky Encounters Amid Everyday Digital Socialization* (Apr. 2022) ........ 3, 4, 5, 8

Thorn, *The Role of Caregivers: Safeguarding & Enhancing Youth Resilience Against Harmful Sexual Encounters Online* (July 2022) ........ 3

Thorn, *Sextortion: Summary Findings from a 2017 Survey of 2,097 Survivors* (2017) ........ 3

Thorn, *Trends in Financial Sextortion: An Investigation of Sextortion Reports in NCMEC CyberTipline Data* ........ 4

## I. INTRODUCTION

Defendants move pursuant to Federal Rules of Evidence 402, 403, and 801 to preclude Tucson Unified School District ("Tucson") from offering any evidence, argument, or reference to any version of the "Dirty Dozen" List published by the National Center on Sexual Exploitation ("NCOSE"), or any reports published by Thorn—third-party publications focused on inflammatory, hearsay claims about the alleged nature and scope of child sexual abuse perpetrated by third-party predators online, including on Defendants' communication platforms. The JCCP Court recently excluded similar evidence; this Court should too.

The "Dirty Dozen" Lists and Thorn reports have no place at trial for three independent reasons. ***First***, the publications constitute quintessential hearsay—and often multiple layers of hearsay because they repeat other out-of-court statements from news articles, complaints, and other sources. These incendiary claims about predatory behavior by third-party criminals on Defendants' platforms, which cannot be probed through cross-examination, should not reach the jury.

***Second***, these publications are simply irrelevant to Tucson's claims.[1] This Court has already made clear that any viable claim pertaining to third-party predators is narrow: the Court dismissed "plaintiffs' product-based negligence claims *to the extent* such claims are premised on the existence of a duty to protect users from third party actors using their platforms," and held that Section 230 separately prohibits any claim based on third-party predators except in narrow instances pertaining specifically to alleged deficiencies in Defendants' reporting mechanisms for such conduct. *See In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 702 F. Supp. 3d 809, 829, 859 (N.D. Cal. 2023). Judge Kuhl likewise held that Section 230 barred plaintiffs from seeking to "hold Defendants' liable for facilitating adult-minor contact and grooming" and thus "the fact that Defendants may have had 'notice' that their platforms 'facilitated adult-minor contact and grooming' is . . . irrelevant." Declaration of Jonathan H. Blavin ("Blavin Decl.") Ex. 1 (Order Granting Defendants' Motion in Limine to Exclude Evidence, Argument, or Reference to the

[1] Tucson has agreed not to pursue any claim against the YouTube Defendants regarding allegedly deficient reporting tools for child sexual abuse material or predators.

NCOSE "Dirty Dozen") at 2 ("JCCP Order"). Tucson not only fails to surmount such legal obstacles, but it has presented little evidence that its students or employees have even been harmed by an instance of online sexual abuse by a third-party predator *at all*—let alone harmed by Defendants' alleged deficient reporting mechanisms for such conduct. Accordingly, third-party publications focused on harms perpetrated by online sexual predators, with no connection to Tucson's alleged harms, are simply irrelevant.

***Third***, even if there were any probative value to the evidence, it is far outweighed by the risk of undue prejudice to Defendants. Introducing highly upsetting allegations about child sexual abuse presents a substantial risk that the jury will erroneously conclude Defendants are liable based on accusations that Defendants have facilitated harmful third-party criminal acts that are completely unrelated to Tucson or its students—an outcome barred by federal law. Admitting evidence about the "Dirty Dozen" Lists or Thorn reports would confuse the issues and waste substantial trial time by spawning mini-trials about statements included in those materials.

As the JCCP Court recently concluded with respect to the "Dirty Dozen" Lists, such evidence must be excluded because it is "obviously hearsay," "irrelevant to the question of whether Defendants are liable in this litigation," and "involves a substantial risk of undue prejudice and jury confusion." Blavin Decl. Ex. 1 (JCCP Order) at 2–3. The Court should preclude Tucson from offering any evidence, argument, or reference to any of NCOSE's "Dirty Dozen" Lists or any Thorn reports.

## II. BACKGROUND

NCOSE is an advocacy group that publishes a yearly "Dirty Dozen" List, which the group describes as a "campaign that calls out twelve mainstream entities" for allegedly "facilitating" child sexual abuse and exploitation.[2] For example, NCOSE named Snapchat and Meta's founder and CEO Mark Zuckerberg to its 2026 "Dirty Dozen" List, as well as Chromebook, Android, the Apple App Store, and Amazon, among others. In past years, the List has included entities such as the American

[2] *See* Blavin Decl. Ex. 2 (NCOSE, *The 2026 Dirty Dozen List*, https://endsexualexploitation.org/dirty-dozen-list-2026/) (last visited Oct. 14, 2026).

Library Association, United Airlines, and the state of Nevada.[3] As to Snapchat, NCOSE claims that "Snapchat is a tool of choice for sextortionists, sex traffickers, and child abusers."[4] And in letters to Snap regarding its placement on the "Dirty Dozen" List, NCOSE provides detailed descriptions and screenshots of content by third-party sexual predators purportedly uploaded to Snapchat.[5]

Thorn is a digital safety technology nonprofit that develops software solutions for the detection of online child sexual abuse[6] and periodically publishes reports on topics such as "sadistic online exploitation" and "commodified sexual interactions involving minors."[7] These reports assert claims about the frequency and nature of online predatory incidents on platforms including Defendants', based on and featuring direct quotes from surveys of unidentified minors.[8] For example, these reports assert that "Instagram and Snapchat are the most common platforms used for

---

[3] Blavin Decl. Ex. 3 (NCOSE, *The 2017 Dirty Dozen List*, https://endsexualexploitation.org/dirtydozen-2017/); Blavin Decl. Ex. 4 (NCOSE, *The 2019 Dirty Dozen List*, https://endsexualexploitation.org/dirtydozen-2019/) (last visited Oct. 14, 2026).

[4] Blavin Decl. Ex. 5 (NCOSE, *Snapchat*, https://endsexualexploitation.org/snapchat/) (last visited Oct. 14, 2026).

[5] *See, e.g.*, Blavin Decl. Ex. 6 (E. Spiegel Dep. Ex. 23 (2017 "Dirty Dozen" List notification letter)).

[6] Blavin Decl. Ex. 7 (*Thorn*, https://www.thorn.org/) (last visited Oct. 14, 2026).

[7] Blavin Decl. Ex. 8 (Thorn, *Research Library*, https://www.thorn.org/research/library) (last visited Oct. 15, 2026).

[8] *See, e.g.*, Blavin Decl. Ex. 9 (Thorn, *Online Grooming: Examining Risky Encounters Amid Everyday Digital Socialization* (Apr. 2022), https://www.thorn.org/research/library/online-grooming-examining-risky-encounters-amid-everyday-digital-socialization); Blavin Decl. Ex. 10 (Janis Wolak & David Finkelhor, *Sextortion: Findings From an Online Survey about Threats to Expose Sexual Images*, CRIMES AGAINST CHILDREN RESEARCH CENTER UNIV. OF N.H. (June 2016), https://www.unh.edu/ccrc/sites/default/files/media/2022-02/sextortion-report-final-june-2016.pdf); Blavin Decl. Ex. 11 (Thorn, *Sextortion: Summary Findings from a 2017 Survey of 2,097 Survivors* (2017), https://www.thorn.org/wp-content/uploads/2019/12/Sextortion_Wave2Report_121919.pdf); Blavin Decl. Ex. 12 (Thorn, *The Role of Caregivers: Safeguarding & Enhancing Youth Resilience Against Harmful Sexual Encounters Online* (July 2022), https://info.thorn.org/hubfs/Research/Thorn-RoleOfCaregivers-2022-FullReport.pdf).

sextortion,"[9] and that "2 in 3 9-12-year-olds interact with unfamiliar adults online."[10]

In a meet-and-confer prior to the filing of this motion, Tucson's counsel refused to agree not to present evidence, reference to, or argument regarding any version of the "Dirty Dozen" List or any Thorn report. But Tucson has not put forward any deposition testimony or documentary evidence connecting its alleged harms to grooming, sextortion, or other types of sexual exploitation of minors by adults on Defendants' platforms that are described in those third-party publications.

## III. ARGUMENT

### A. These Materials Are Inadmissible Hearsay.

The NCOSE's "Dirty Dozen" Lists and the Thorn reports are inadmissible because they are "obviously hearsay." Blavin Decl. Ex. 1 (JCCP Order) at 2 (excluding evidence, reference to, and arguments regarding the "Dirty Dozen" Lists). It is well settled law that reports and articles are hearsay that cannot be admitted for their truth. Fed. R. Evid. 801; *see, e.g.*, *Gibson v. Vanjani*, No. 17-CV-01705-EMC, 2018 WL 4053458, at *9 n.5 (N.D. Cal. Aug. 24, 2018), *aff'd*, 790 F. App'x 116 (9th Cir. 2020) ("[P]rofessional articles are not freely admissible in evidence to prove the substantive or testimonial facts stated therein, since they are subject to the hearsay rule."); *Young v. Wolfe*, No. CV 07-03190 RSWL (AJWx), 2017 WL 985632, at *4 (C.D. Cal. Mar. 14, 2017) ("Where a party seeks to introduce a newspaper article, television program or other media reports 'for the truth of the matter asserted, they clearly constitute hearsay.'").

The "Dirty Dozen" Lists are quintessential hearsay because they are out-of-court statements in the form of a list of entities and individuals to which certain actions are attributed. And because the lists incorporate unsubstantiated statements from other sources, they present multiple additional layers of hearsay. Fed. R. Evid. 805. For example, the lists extensively quote newspaper reports and

---

[9] Blavin Decl. Ex. 13 (Thorn, *Trends in Financial Sextortion: An Investigation of Sextortion Reports in NCMEC CyberTipline Data*, at 1, https://www.thorn.org/research/library/financial-sextortion/) (last visited Oct. 15, 2026).

[10] Blavin Decl. Ex. 9 Thorn, *Online Grooming: Examining Risky Encounters Amid Everyday Digital Socialization*, at 14).

allegations from complaints filed in other civil cases[11]—which themselves are hearsay. *See Musk v. OpenAI, Inc.*, 769 F. Supp. 3d 1017, 1026 (N.D. Cal. 2025) ("Newspaper articles are classic hearsay and, in a court of law, cannot be relied upon for the truth of statements made therein."); *Iorio v. Allianz Life Ins. Co. of N. Am.*, No. 05CV633 JLS (CAB), 2010 WL 11508761, at *10 (S.D. Cal. Jan. 27, 2010) ("allegations . . . in prior civil cases and regulatory proceedings in general are out of court statements and therefore are inadmissible hearsay to the extent they are offered for the truth of the matter asserted"). Similarly, the reports published by Thorn are out-of-court hearsay statements that, again, contain further layers of hearsay because the reports incorporate information from other out-of-court statements made by interview and survey participants.[12]

The only conceivable purpose for introducing these materials would be to prove the truth of the incendiary matters asserted—e.g., that Snap and Meta are in fact engaged in "facilitating, enabling, and even profiting from sexual abuse and exploitation,"[13] as asserted by the "Dirty Dozen" Lists, or that "2 in 3 9-12-year-olds interact with unfamiliar adults online," as asserted by Thorn."[14] There is no legitimate non-hearsay purpose for admitting them. For example, any purported notice to Snap regarding alleged harms from third-party predators on Snapchat, as described in the "Dirty Dozen" List and Thorn reports, "is premised on the truth of the matters stated in the document" and thus still presents a hearsay problem. Blavin Decl. Ex. 1 (JCCP Order) at 2 (finding no hearsay exception applies for purported notice or rebuttal purposes). And because these materials incorporate statements from other sources, they are rife with *additional* layers of inadmissible hearsay. *Sana v. Hawaiian Cruises, Ltd.*, 181 F.3d 1041, 1045 (9th Cir. 1999) ("each layer of

---

[11] Blavin Decl. Ex. 5 (NCOSE, *Snapchat).*

[12] *See, e.g.*, Blavin Decl. Ex. 10 (Janis Wolak & David Finkelhor, *Sextortion: Findings From an Online Survey about Threats to Expose Sexual Images,* CRIMES AGAINST CHILDREN RESEARCH CENTER UNIV. OF N.H. (June 2016)).

[13] Blavin Decl. Ex. 2 (NCOSE, *The 2026 Dirty Dozen List*).

[14] Blavin Decl. Ex. 9 (Thorn, *Online Grooming: Examining Risky Encounters Amid Everyday Digital Socialization*) at 14.

hearsay must satisfy an exception to the hearsay rule"). These sensational accusations, which cannot be probed through cross-examination, should not reach the jury.[15]

**B. Evidence Regarding These Materials Is Also Irrelevant to Tucson's Claims.**

Evidence of the "Dirty Dozen" Lists and the Thorn materials is separately inadmissible because it is irrelevant. Fed. R. Evid. 402.

This Court has held that "plaintiffs' product-based negligence claims *to the extent* such claims are premised on the existence of a duty to protect users from third party actors using their platforms" fail as a matter of law, because "plaintiffs only allege that defendants sought to increase minors' use of their platforms while 'knowing or having reason to know' that adult predators also used the sites and therefore increased the risk to the minors," which "is insufficient to show misfeasance." *In re Soc. Media*, 702 F. Supp. 3d at 858–59. And Plaintiffs never amended their pleadings, as the Court required, to plead a viable misfeasance theory. *Id.*

Moreover, any theory of liability premised on the incidence of criminal sexual abuse of minors by third-party predators on Defendants' platforms would be barred by the Court's Section 230 rulings. Tucson cannot hold Defendants liable for the publication of third-party content. Nor can it assert that Defendants' publishing features, such as ephemerality or connection recommendations, facilitated such criminal misconduct. *See, e.g.*, Order Granting in Part and Denying in Part Defendants' Mot. to Dismiss Personal Injury Plaintiffs' Non-Priority Claims at 15, 19 (Dkt. No. 1730) (dismissing CSAM-related claims against Snap and Meta as barred by "Section 230 immunity"); *In re Soc. Media*, 702 F. Supp. 3d at 831 (Section 230 bars claims based on "[l]imiting content to short-form and ephemeral content" or "[r]ecommending minor accounts to adult strangers"). Indeed, as the JCCP Court held in granting Defendants' motion in limine to

[15] Tucson cannot cure these hearsay problems by introducing these materials through expert testimony. "[A]n expert can rely on hearsay to form his opinion but may not regurgitate it." Order Denying Rule 702 Motion to Exclude School District Experts at 18 (Dkt. No. 2750) (an expert may not "repeat[] information and quotes" from hearsay); *Asetek Danmark A/S v. CoolIT Sys. Inc.*, 2022 WL 21306657, at *20 (N.D. Cal. Oct. 4, 2022) ("[A] party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." (citation omitted)).

exclude the "Dirty Dozen" Lists, "Plaintiffs have not shown that, under Section 230, they can hold Defendants' liable for facilitating adult-minor contact and grooming." Blavin Decl. Ex. 1 (JCCP Order) at 2. The same is true here.

While the Court has held that Section 230 would permit a very narrow claim predicated upon Defendants' alleged failure to provide a way for users to report such third-party predators without first creating an account or logging in, *see In re Soc. Media*, 702 F. Supp. 3d at 829, Tucson has produced *no* evidence connecting its harms to Defendants' allegedly deficient mechanisms for reporting the types of sexually abusive conduct by third-party predators described in the "Dirty Dozen" Lists or Thorn reports.

Indeed, Tucson has presented little evidence that its students or employees have been harmed by an instance of online sexual abuse by a third-party predator *at all*. Not a single Tucson witness identified the types of predatory sexual crimes described in the "Dirty Dozen" Lists and Thorn reports as a significant issue in the district. Instead, when asked to describe the challenges confronting their students and employees, Tucson's witnesses have consistently pointed to *other* issues. *See, e.g.*, Blavin Decl. Ex. 14 (Trujillo Dep.) at 188:3-21 (Superintendent testifying about [redacted]). And though witnesses stated that "inappropriate images" were also an issue related to students' social media use, *see, e.g.*, *id.* at 217:21-218:19, that testimony largely related to content exchanged *between students*—distinct from the type of targeted sexual exploitation described in the "Dirty Dozen" Lists and Thorn reports. *See, e.g.*, *id.* ([redacted] As Clarinda Rubio, Dean of Students, explained, [redacted] Blavin Decl. Ex. 15 (Rubio Dep.) at 81:4-82:10.

Tucson's district-wide safety data confirms that Tucson's harms are not connected to third-party predatory sexual abuse of the type described in the "Dirty Dozen" Lists and Thorn reports.

The handful of records from Tucson's Department of Safety and Security that contain predatory incidents involving students demonstrate the isolated nature of such incidents, and many describe incidents involving students and *Tucson's own* employees.[16]

The record thus makes clear that Tucson has failed to demonstrate any connection between its alleged district-wide harms and any viable claim regarding the types of online sexual abuse by third-party criminals that are the subject of the "Dirty Dozen" Lists and the Thorn reports. As a result, those materials are simply irrelevant to Tucson's claims.

### C. Evidence Regarding These Materials Poses An Overwhelming Prejudicial Risk.

Federal Rule of Evidence 403 independently requires exclusion of the "Dirty Dozen" Lists and Thorn reports. Even if the Court were to conclude that these materials were somehow relevant, any miniscule probative value of that evidence would be far outweighed by the risks of "unfair prejudice, confusing the issues, misleading the jury" and "undue delay." Fed. R. Evid. 403. As the JCCP Court held, a "conclusion by a third party that Defendants are responsible for sexual harms suffered by nonparties is likely to prejudice the jurors against Defendants"; "require Defendants to waste time responding to the allegations"; and "mislead the jury into believing that Defendants' alleged failures to prevent sexual harms by third parties is relevant." Blavin Decl. Ex. 1 (JCCP Order) at 3.

The "Dirty Dozen" Lists and Thorn reports are intertwined with evidence of third-party content that has little probative force. The materials are full of inflammatory descriptions of illegal content generated by third-party adult abusers, and untested claims about the frequency of such instances on Defendants' platforms.[17] Allowing the jury to consider such evidence of content

---

[16] *See, e.g.*, Blavin Decl. Ex. 16 (SM_TUSD_00353291) ([redacted]); Blavin Decl. Ex. 17 (SM_TUSD_00416759) (same). Though Rebecca Carrier, School Counseling Department Coordinator, briefly stated she [redacted] Blavin Decl. Ex. 18 (Carrier Dep.) at 165:13-23, that testimony, lacking any other details, is not corroborated by the district's own records.

[17] *See, e.g.*, Blavin Decl. Ex. 6 (Spiegel Dep. Ex. 23) ("Dirty Dozen" Letter including screen captures of inappropriate content); Blavin Decl. Ex. 9 (Thorn, *Online Grooming: Examining Risky*

communicated by third-party users flies in the face of this Court's prior Section 230 decisions. As discussed, this Court has permitted Tucson only a narrow carveout to challenge alleged *inadequate reporting processes* for CSAM and other harmful content generated by third-party adult sexual abusers—Defendants cannot be held liable for the content itself. *See In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 754 F. Supp. 3d 946, 963 (N.D. Cal. 2024); *see also Doe 1 v. Twitter, Inc.*, 148 F.4th 635, 645 (9th Cir. 2025); *Est. of Bride by & through Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1175, 1180 (9th Cir. 2024).

This evidence seriously risks confusing the issues and inflaming the jury. Allegations involving child sexual abuse material are among the most emotionally charged issues that can be presented to a jury. *See United States v. Aranda-Diaz*, 2014 WL 459607, at *10 (D.N.M. Jan. 8, 2014) (evidence about "child abuse allegations" is the type of "evidence that rule 403 was designed to exclude, as it is evidence that will evoke an emotional response from the jury, and presents a danger that the jury will discredit [Defendants] based solely upon these allegations"). Even in child sexual abuse cases—where the government seeks to hold defendants liable for particular content—courts have recognized the "dangerously prejudicial" nature of particular descriptions that "are enough to sour the stomach." *United States v. Curtin*, 489 F.3d 935, 957 (9th Cir. 2007) (en banc).

Introducing highly upsetting material that the jury cannot use as a basis for liability poses a substantial risk of misleading the jury to impose liability on grounds prohibited by federal law. For example, the very label "Dirty Dozen" brands Snap and Meta as purportedly "bad" actors based on lurid accusations about third-party criminals alleged to have committed sextortion, grooming, and other forms of sexual exploitation. Presenting such materials would invite the jury to engage in precisely the sort of emotional and propensity-based decisionmaking that Rule 403 guards against—creating a substantial risk the jury would conclude that, because Defendants have been accused of facilitating harmful third-party conduct, they are more likely to have acted wrongfully with respect to Tucson and its entirely separate allegations of harm. Such an outcome would result in the jury

---

*Encounters Amid Everyday Digital Socialization*) (Thorn report discussing frequency of and quoting minors' descriptions of sexual interactions with adults).

imposing liability on the basis of user conduct in disregard of the boundaries of Section 230. These dangers are particularly acute because jurors may perceive published reports as authoritative, even though they are hearsay, are potentially biased, and contain unsupported allegations.

Moreover, admitting evidence about the "Dirty Dozen" Lists or Thorn reports would waste substantial trial time by spawning mini-trials about statements included in those materials. These collateral disputes related to the highly charged issue of sexual exploitation would divert the jury from the relevant issue before it: whether Defendants caused Tucson's alleged injuries.

Accordingly, any minimal probative value Tucson might attribute to these materials is substantially outweighed by the substantial dangers of unfair prejudice, confusing the issues, misleading the jury, and wasting time.

## IV. CONCLUSION

For all of these reasons, the Court should exclude any evidence, argument, or reference to the NCOSE "Dirty Dozen" Lists and the Thorn reports.

DATED: October 16, 2026 Respectfully submitted,

By: */s/ Jonathan H. Blavin*

JONATHAN H. BLAVIN (State Bar No. 230269)
Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel: (415) 512-4000

E. MARTIN ESTRADA (SBN 223802)
Martin.Estrada@mto.com
L. ASHLEY AULL (SBN 257020)
Ashley.Aull@mto.com
VICTORIA A. DEGTYAREVA (SBN 284199)
Victoria.Degtyareva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel.: (213) 683-9100

ALLISON BROWN (*pro hac vice)*
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Tel.: (215) 268-5000

JESSICA DAVIDSON (*pro hac vice)*
jessica.davidson@kirkland.com
JOHN J. NOLAN (*pro hac vice)*
jack.nolan@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800

*Attorneys for Defendant Snap Inc.*

/s/ *Ashley W. Hardin*
ASHLEY W. HARDIN (*pro hac vice)*
ahardin@wc.com
J. ANDREW KEYES (*pro hac vice)*
akeyes@wc.com
NEELUM J. WADHWANI (SBN 247948)
nwadhwani@wc.com
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
Tel.: (202) 434-5000

*Attorneys for Defendants YouTube, LLC and Google LLC*

/s/ *Christian J. Pistilli*
ASHLEY M. SIMONSEN (State Bar No. 275203)
asimonsen@cov.com
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800

PHYLLIS A. JONES (*pro hac vice*)
pajones@cov.com
PAUL W. SCHMIDT (*pro hac vice*)
pschmidt@cov.com
CHRISTIAN J. PISTILLI (*pro hac vice*)
cpistilli@cov.com
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Tel.: (202) 662-6000
BETH A. WILKINSON (pro hac vice)
MATTHEW R. SKANCHY (pro hac vice)
WILKINSON STEKLOFF LLP
2001 M Street, NW, 10th Floor
Washington, D.C. 20036
Telephone: (202) 847-4010
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
mskanchy@wilkinsonstekloff.com

MOIRA K. PENZA (pro hac vice)
WILKINSON STEKLOFF LLP
130 W 42nd Street, 24th Floor
New York, NY 10036
Telephone: (212) 294-8925
Facsimile: (202) 847-4005
mpenza@wilkinsonstekloff.com

*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Meta Payments Inc. f/k/a Facebook Payments Inc.; Meta Platforms Technologies, LLC f/k/a Facebook Technologies, LLC; Instagram, LLC; and Siculus LLC f/k/a Siculus, Inc.*

*/s/ Bailey J. Langner*

GEOFFREY M. DRAKE (*pro hac vice)*
gdrake@kslaw.com
TACARA D. HARRIS (*pro hac vice)*
tharris@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel.: (404) 572-4600

DAVID P. MATTERN (*pro hac vice)*
dmattern@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, D.C. 20006
Tel.: (202) 737-0500
BAILEY J. LANGNER (State Bar No. 307753)
*blangner@kslaw.com*
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Tel.: (415) 318-1200

*/s/ Daniel M. Petrocelli*

DANIEL M. PETROCELLI (SB #97802)
dpetrocelli@omm.com
SABRINA H. STRONG (SB #200292)
sstrong@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 553-6700

STEPHEN D. BRODY (*pro hac vice*)
sbrody@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006
Telephone: (202) 383-5300

*Attorneys for Defendants*
*TikTok Inc., ByteDance Inc., TikTok Ltd., ByteDance Ltd., and TikTok LLC*

**ATTESTATION**

I, Jonathan H. Blavin, hereby attest, pursuant to N.D. Cal. Civil L.R. 5–1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED: October 16, 2026 By: */s/ Jonathan H. Blavin*
Jonathan H. Blavin