JONATHAN H. BLAVIN (SBN 230269)
Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel: (415) 512-4000

E. MARTIN ESTRADA (SBN 223802)
Martin.Estrada@mto.com
L. ASHLEY AULL (SBN 257020)
Ashley.Aull@mto.com
VICTORIA A. DEGTYAREVA (SBN 284199)
Victoria.Degtyareva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel.: (213) 683-9100

*Attorneys for Defendant Snap Inc.*

*[Additional parties and counsel listed on signature page]*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION

THIS DOCUMENT RELATES TO:

*Tucson Unified School District v. Meta Platforms Inc., et al.*
Case No. 4:24-cv-01382-YGR

MDL No. 3047

Case No. 4:22-md-03047-YGR-PHK

**DEFENDANTS' NOTICE OF MOTION AND MOTION *IN LIMINE* TO EXCLUDE CERTAIN OPINION TESTIMONY BY DR. BRYCE WARD (MIL NO. 1)**

**Hearing:**
Date: November 13, 2026
Time: 2:00 PM
Place: Courtroom 1, 4th Floor
Judge: Hon. Yvonne Gonzalez Rogers

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT, at 2:00 pm on November 13, 2026, before the Honorable Yvonne Gonzalez Rogers, in Courtroom 1, Floor 4, of the United States District Court, Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Defendants will and hereby do move this Court, under Federal Rules of Evidence 402, 403, 702, 703, and 801, for an order excluding argument, evidence and testimony at trial as described in the accompanying Memorandum of Points and Authorities. This Motion is based on this Notice, the accompanying Memorandum, any other papers submitted in connection with the Motion, the accompanying declaration of Jonathan H. Blavin and the exhibits thereto, and any other matters presented at the time of the hearing.

DATED: October 16, 2026

Respectfully submitted,

MUNGER, TOLLES & OLSON LLP

By: */s/ Jonathan H. Blavin*

Jonathan H. Blavin (SBN 230269)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
(415) 512-4000
Jonathan.Blavin@mto.com

E. MARTIN ESTRADA (SBN 223802)
Martin.Estrada@mto.com
L. ASHLEY AULL (SBN 257020)
Ashley.Aull@mto.com
VICTORIA A. DEGTYAREVA (SBN 284199)
Victoria.Degtyareva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel.: (213) 683-9100

*Attorneys for Defendant Snap Inc.*

*[Additional parties and counsel listed on signature page]*

# TABLE OF CONTENTS

Page

I. INTRODUCTION ....... 1
II. BACKGROUND ....... 2
  A. Dr. Ward's Calculations Based on Employee Affidavits ....... 2
  B. Tucson's Representations Regarding Its Intent to Present Witness Testimony ....... 3
III. ARGUMENT ....... 4
  A. Dr. Ward's Opinions Should Be Excluded Because They Are Founded on Unreliable and Inadmissible Hearsay by Tucson's Own Employees ....... 4
  B. Permitting Dr. Ward to Testify to Opinions Based on Foundational Facts That Have Not Been Admitted Would Be Unduly Prejudicial ....... 7
IV. CONCLUSION ....... 8

# TABLE OF AUTHORITIES


**Page(s)**

**FEDERAL CASES**

*Asetek Danmark A/S v. CoolIT Systems Inc.*, 2022 WL 21306657 (N.D. Cal. Oct. 4, 2022) .......... 2

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) .......... 7

*Droplets, Inc. v. Yahoo! Inc.*, 2021 WL 11701485 (N.D. Cal. Nov. 29, 2021) .......... 8

*In re Imperial Credit Indus., Inc. Secs. Litig.*, 252 F. Supp. 2d 1005 (C.D. Cal. 2003) .......... 7

*Nuveen Quality Income Mun. Fund Inc. v. Prudential Equity Grp., LLC*, 262 F. App'x 822 (9th Cir. 2008) .......... 4

*Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852 (9th Cir. 2019) .......... 6

*Therasense, Inc. v. Becton, Dickinson & Co.*, 2008 WL 2323856 (N.D. Cal. May 22, 2008) .......... 2, 4, 6

*United States v. Rincon*, 28 F.3d 921 (9th Cir. 1994) .......... 7

*Wi-LAN Inc. v. Sharp Elecs. Corp.*, 992 F.3d 1366 (Fed. Cir. 2021) .......... 2

*Williams v. Illinois*, 567 U.S. 50 (2012), abrogated on other grounds *by Smith v. Arizona*, 602 U.S. 779 (2024) .......... 4

**FEDERAL RULES**

Fed. R. Evid. 402 .......... 1

Fed. R. Evid. 403 .......... 1, 7

Fed. R. Evid. 702 .......... 1, 4

Fed. R. Evid. 703 .......... 1

Fed. R. Evid. 801 .......... 1

Fed. R. Evid. 801(c) .......... 5

Fed. R. Evid. 802 .......... 5

## I. INTRODUCTION

Defendants move pursuant to Federal Rules of Evidence 402, 403, 702, 703, and 801 to exclude certain damages opinions of Dr. Bryce Ward, which are based on affidavits submitted by employees of Tucson Unified School District ("Tucson") whom Tucson does not intend to present as witnesses at trial. Specifically, Defendants move to exclude the damages opinions expressed in paragraphs 1(b), 1(c) (solely as it relates to non-teaching staff), 17, 36, 37, and 38 of Dr. Ward's report. Defendants also move to exclude the damages opinions expressed in Table 4 and Table 5 (solely as they relate to non-teaching staff) of Dr. Ward's report.[1]

Dr. Ward is an economist who purports to offer expert testimony regarding Tucson's alleged [redacted] Declaration of Jonathan H. Blavin ("Blavin Decl.") Ex. 1 (Ward Tucson Rep.) ¶ 1. Dr. Ward's opinions for time diverted by non-teaching staff are based entirely on "lost-time" estimates provided in affidavits by four Tucson employees. But Tucson has now removed from its latest witness list three of the four affiants who can testify about those lost-time estimates for non-teaching staff. *See* Pl. Tucson Unified School District's Prelim. Trial Witness List ("Tucson Witness List") (Dkt. No. 3492). That leaves Dr. Ward as the only channel through which the majority of the lost-time estimates would reach the jury, and directly contradicts Tucson's prior assurances that it would introduce the "underlying evidence" upon which Dr. Ward relies—i.e., the lost-time estimates—"at trial through witness testimony." Pls.' Opposition to Defs.' Motion to Exclude Testimony of School District Experts ("Daubert Opp.") at 21 (Dkt. No. 2407).

Dr. Ward's opinions as to the damages incurred from time lost by non-teacher staff should be excluded for two reasons.

First, the opinions are not a permissible use of hearsay under Rule 703. An expert may rely on otherwise inadmissible hearsay only "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703. But "Rule 703 was not

[1] This motion does not seek to exclude damages opinions for Tucson *teachers*, which are based on another expert's survey, which is not at issue in this motion.

intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." *Asetek Danmark A/S v. CoolIT Systems Inc.*, 2022 WL 21306657, at *20 (N.D. Cal. Oct. 4, 2022) (quoting *Wi-LAN Inc. v. Sharp Elecs. Corp.*, 992 F.3d 1366, 1375 (Fed. Cir. 2021)). That is exactly what Dr. Ward does here. His "calculations" amount to nothing more than taking hearsay statements from Tucson employees' affidavits and doing basic math. Tucson should not be allowed to backdoor in this unreliable and inadmissible hearsay from its own employees when it does not intend to prove those facts at trial with admissible evidence.

Second, permitting Dr. Ward to testify to opinions based on foundational facts that have never been admitted would be unduly prejudicial. As a court in this district has recognized, "[o]ne of the worst abuses in civil litigation is the attempted spoon-feeding of client-prepared and lawyer-orchestrated 'facts' to a hired expert who then 'relies' on the information to express an opinion." *Therasense, Inc. v. Becton, Dickinson & Co.*, 2008 WL 2323856, at *1 (N.D. Cal. May 22, 2008). Tucson should not be permitted to do so here.

## II. BACKGROUND

### A. Dr. Ward's Calculations Based on Employee Affidavits

Dr. Ward purports to offer expert testimony regarding Tucson's alleged [redacted] Blavin Decl. Ex. 1 (Ward Tucson Rep.) ¶ 1. To come up with his estimates of Tucson's alleged [redacted] Blavin Decl. Ex. 6 (Ward Dep. Tr.) 182:18–25.

Dr. Ward's calculations apply to two distinct categories of employees: (1) teachers, and (2) non-teacher staff (e.g., principals, counselors, social workers). *See* Blavin Decl. Ex. 1 (Ward Tucson Rep.) ¶ 1. Dr. Ward's estimates for diverted teacher time are based on another expert's survey—not the four

Tucson employee affidavits—and those estimates for diverted *teacher* time are thus not at issue in this motion.[2] In this motion, Defendants challenge only the opinions related to *non-teacher staff*.

As relevant here, when calculating compensatory damages for Tucson's non-teacher staff, Dr. Ward based his analysis entirely on affidavits submitted by four Tucson employees—Brian Lambert, Holly Hammel, Sabrina Salmon, and Julie Shivanonda. Blavin Decl. Ex. 1 (Ward Tucson Rep.) ¶¶ 13, 29; Blavin Decl. Exs. 2–5 (Tucson Employee Decls.). In each of the four affidavits, the employees provided their opinions on what percentage of their time certain non-teacher staff spend addressing issues related to social media. Blavin Decl. Ex. 1 (Ward Tucson Rep.) ¶ 36. Dr. Ward then used those affidavits to, first, identify which specific non-teaching staff positions to include in his calculations. *Id.* ¶¶ 14–17. Second, he calculated the total salary and benefits paid for each category of non-teaching staff positions included in the affidavits. *Id.* ¶¶ 19–21. Third, he multiplied the total salary and benefits by the percentages of "time diverted" that the four affiants estimated for each non-teaching staff position. *Id.* ¶¶ 36–38.

Dr. Ward admitted that he took no steps to validate the reliability of the affiants' estimates or their choices of staff positions to include: He simply [redacted] Blavin Decl. Ex. 6 (Ward Dep. Tr.) 100:6–9, 101:16–20.

**B. Tucson's Representations Regarding Its Intent to Present Witness Testimony**

In Defendants' Daubert motion to exclude Dr. Ward, Defendants reserved the right to challenge Dr. Ward's opinions regarding non-teacher-employee-related damages "if Plaintiffs fail to present relevant admissible evidence of how much non-teacher employee time was diverted." Daubert Motion at 24 n.14 (Dkt. No. 2297).

In response, Tucson expressly stated that "[w]hile [Dr. Ward] relied on affidavits . . . to calculate the 'amount of time diverted', the District[] *will introduce the same underlying evidence at trial through witness testimony*." Daubert Opp. at 21 (emphasis added). The Court's subsequent ruling regarding the

---

[2] Defendants preserve the arguments raised in their previous motion seeking to exclude Dr. Ward's testimony. *See* Defs.' Notice of Motion and Motion to Exclude Testimony of School District Experts ("Daubert Motion") (Dkt. No. 2297).

admissibility of Dr. Ward's testimony relied on Tucson's representation, finding that Defendants had not yet "carried their burden to demonstrate that plaintiffs' employee affidavits are barred from forming the basis of an expert's opinions" and noting that "hearsay evidence can be considered upon summary judgment *if it may be converted at trial to admissible form*." Order Denying Rule 702 Motion to Exclude School District Experts ("Daubert Order") at 10 & n.9 (Dkt. No. 2750) (emphasis added).

Contrary to its prior representations, however, Tucson has now made clear that it will *not* introduce the underlying evidence that supports the bulk of Dr. Ward's opinions regarding Tucson's non-teacher staff. Specifically, Tucson withdrew from its preliminary witness list three of the four Tucson employees who submitted the affidavits that Dr. Ward relies upon for his opinions. *See* Tucson Witness List (Dkt. No. 3492). Although one of the four employees—Julie Shivanonda—remains on Tucson's preliminary witness list, the estimates provided in her affidavit represent only a small fraction of Dr. Ward's overall calculations. Ms. Shivanonda's lost-time estimates only account for 8 of the 37 non-teaching staff positions for whom Dr. Ward calculated damages—and those 8 were not among the highest-paying positions. *See* Blavin Decl. Ex. 5 (Shivanonda Decl.) ¶ 18; Blavin Decl. Ex. 1 (Ward Tucson Rep.) ¶¶ 21, 36.

## III. ARGUMENT

### A. Dr. Ward's Opinions Should Be Excluded Because They Are Founded on Unreliable and Inadmissible Hearsay by Tucson's Own Employees

"An expert opinion is properly excluded where it relies on an assumption that is unsupported by evidence in the record and is not sufficiently founded on facts." *Nuveen Quality Income Mun. Fund Inc. v. Prudential Equity Grp., LLC*, 262 F. App'x 822, 824 (9th Cir. 2008). If a party "cannot muster any independent admissible evidence to prove the foundational facts that are essential to the relevance of the expert's testimony, then the expert's testimony cannot be given any weight by the trier of fact." *Williams v. Illinois*, 567 U.S. 50, 81 (2012), *abrogated on other grounds by Smith v. Arizona*, 602 U.S. 779 (2024).

Where, as here, an expert's opinions are based on "foundational" facts provided by a witness, "[t]he traditional and correct way to proceed is for a foundational witness to testify firsthand at trial to the foundational fact or test and to be cross-examined. Then the expert can offer his or her opinion on the assumption that the foundational fact is accepted by the jury." *Therasense*, 2008 WL 2323856, at *1–2.

A party cannot substitute its own witness's affidavit for that live testimony because such an affidavit, when offered to prove the truth of the matters asserted, is inadmissible hearsay. *See* Fed. R. Evid. 801(c), 802. That is why the Court's prior ruling turned on whether the affidavits could "be converted at trial to admissible form." Daubert Order at 10 & n.9 (Dkt. No. 2750); *see also* Order Granting in Part and Denying in Part Rule 702 Motions to Exclude Plaintiffs' Experts' General Causation Opinions at 25 (Dkt. No. 2857) (excluding certain opinions of Plaintiffs' expert Dr. Eva Telzer because although "an expert may support her analysis with published studies, she cannot merely parrot their results to a jury"). Tucson seeks to evade these basic rules by offering expert testimony without any admissible evidence to prove the vast majority of the foundational facts upon which the expert relied. It should be precluded from doing so, and Dr. Ward's at-issue opinions should be excluded.

Dr. Ward's opinions about the lost-time damages incurred by Tucson non-teacher staff are wholly dependent on the hearsay statements provided by Brian Lambert, Holly Hammel, Sabrina Salmon, and Julie Shivanonda in their affidavits. Dr. Ward chose which non-teaching staff positions to include in his analysis based solely on which positions were included in the affidavits. *See* Blavin Decl. Ex. 1 (Ward Tucson Rep.) ¶¶ 12, 16–17 [redacted]; Blavin Decl. Ex. 6 (Ward Dep. Tr.) 119:21–120:13 [redacted]. And he [redacted] Blavin Decl. Ex. 6 (Ward Dep. Tr.) 99:22–100:4. Indeed, Dr. Ward's damages estimates are based almost exclusively on those time estimates; the only other data point Dr. Ward used in his calculation was the salary and benefits amounts.

Moreover, Dr. Ward did not apply any of his own expertise to ensure that the employees' time estimates—and consequently, his own calculations based on those estimates—were reliable. Dr. Ward [redacted] *Id.* at 100:6–9, 101:16–20. Indeed, Tucson itself previously argued

that Dr. Ward's opinions relating to lost-time damages are admissible *because* the district intended to introduce the same underlying evidence at trial through witness testimony. *See* Daubert Opp. at 21.

Yet, despite its earlier representations to the contrary, Tucson has now made clear that it does not intend to call at trial three of the four affiants who provided the time estimates that form the foundation of Dr. Ward's damages opinions as to Tucson's non-teacher staff. *See* Tucson Witness List (Dkt. No. 3492). Because Tucson plans to withhold virtually all of its potential witness testimony on these suspect estimates—in what appears to be an apparent attempt to protect the estimates from the rigors of cross-examination—it will not be able to prove the foundational facts underlying Dr. Ward's at-issue opinions, and those opinions must be excluded.[3]

The absence of record evidence to support the "foundational" time estimates underlying Dr. Ward's opinions is particularly concerning given that those estimates are provided by Tucson's own employees. A party's employees are especially suspect as a source for an expert's opinion because they are "almost always highly partisan." *Therasense*, 2008 WL 2323856, at *1; *see also Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856–57 (9th Cir. 2019) (explaining that experts cannot base opinions on a party's "assumptions and speculation").

In sum, by refusing to present its employees as trial witnesses, Tucson seeks to circumvent the rules of evidence by having Dr. Ward testify without presenting sufficient admissible evidence of the foundational facts upon which he relies.

---

[3] Nor can Tucson cure this defect by offering other witnesses, including Ms. Shivanonda, to vouch for the absent affiants' estimates. The estimates are lay opinions that each affiant derived from his or her own experience with particular positions, and no other witness has personal knowledge of those inputs. Ms. Shivanonda's estimates cover only 8 of the 37 non-teaching staff positions. *See* Blavin Decl. Ex. 5 (Shivanonda Decl.) ¶ 18; Blavin Decl. Ex. 1 (Ward Tucson Rep.) ¶¶ 21, 36. [redacted] *See* Blavin Decl. Ex. 7 (Shivanonda Dep. Tr.) 38:5–16; 48:22–51:2; 64:14–65:11; 73:23–74:7.

### B. Permitting Dr. Ward to Testify to Opinions Based on Foundational Facts That Have Not Been Admitted Would Be Unduly Prejudicial

Federal Rule of Evidence 403 provides an independent basis for excluding Dr. Ward's opinions. Any probative value of Dr. Ward's opinions, which are dependent on untested out-of-court statements by Tucson employees, is substantially outweighed by the danger of unfair prejudice and misleading the jury.

Disclosing Tucson employees' estimates of diverted time through Dr. Ward's opinions—with no opportunity for Defendants to cross-examine the employees as witnesses—would be unduly prejudicial and contravene this Court's prohibition on experts regurgitating inadmissible hearsay. *See* Daubert Order at 18 (Dkt. No. 2750) (explaining an expert may not "repeat[] information and quotes" from hearsay evidence). As explained above, Dr. Ward made no effort to confirm the accuracy or reliability of Tucson's employees' out-of-court statements regarding the estimated amount of non-teacher-staff time diverted by students' social media use. But if Dr. Ward's testimony is admitted, those time estimates will be conveyed to the jury through a voice of authority. The admission of this testimony would therefore present a significant risk that the jury would accept the employees' time estimates as fact—with no opportunity for Defendants to cross-examine the witnesses who provided those estimates. *Cf. United States v. Rincon*, 28 F.3d 921, 926 (9th Cir. 1994) (warning about the "powerful nature of expert testimony" and its "potential to mislead the jury"); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993) ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it."). That Defendants may cross-examine Dr. Ward would not cure that prejudice because he admits he is unable to validate the underlying estimates. *See In re Imperial Credit Indus., Inc. Secs. Litig.*, 252 F. Supp. 2d 1005, 1012 n.5 (C.D. Cal. 2003) (explaining that when an expert cannot "validate" the underlying hearsay upon which he relies, the expert's "opinions cannot be subjected to meaningful adversarial testing through cross-examination").

On the other side of Rule 403's balancing test, the probative value of Dr. Ward's opinion is negligible without testimony from the witnesses who can establish the accuracy and reliability of the underlying time estimates upon which Dr. Ward relies. To state the obvious, if the time estimates provided by the employees are not accurate, Dr. Ward's calculations about the value of that time have no probative value because they do not reflect any harms actually suffered by Tucson. Yet, with testimony from just

one of the four Tucson employees, the jury cannot assess the reliability of the underlying time estimates upon which Dr. Ward necessarily relies. As explained above, Dr. Ward did not verify the reliability or reasonableness of the estimates provided by the Tucson employees. He [redacted] and then performed a simple arithmetic calculation to arrive at a dollar estimate for the time diverted due to student social media use. Blavin Decl. Ex. 6 (Ward Dep. Tr.) 100:6–9, 101:16–20. Accordingly, Dr. Ward's opinion cannot have any probative value if Tucson does not separately establish the foundation for the time estimates upon which his calculations depend.

Because the prejudicial risk of Dr. Ward's opinions regarding non-teacher staff substantially outweighs the probative value, Dr. Ward's opinions should be excluded. *See Droplets, Inc. v. Yahoo! Inc.*, 2021 WL 11701485, at *2 (N.D. Cal. Nov. 29, 2021) (excluding an expert opinion because the expert's "aura of authority" was "likely to prejudice" the other side).

## IV. CONCLUSION

For the foregoing reasons, the Court should exclude Dr. Ward's opinions as to the damages incurred from time lost by non-teacher staff, in the absence of witness testimony from the Tucson employee affiants on whom those damages calculations rely.

DATED: October 16, 2026

Respectfully submitted,

By: <u>*/s/ Jonathan H. Blavin*</u>

JONATHAN H. BLAVIN (State Bar No. 230269)
Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel: (415) 512-4000

E. MARTIN ESTRADA (SBN 223802)
Martin.Estrada@mto.com
L. ASHLEY AULL (SBN 257020)
Ashley.Aull@mto.com
VICTORIA A. DEGTYAREVA (SBN 284199)
Victoria.Degtyareva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th floor
Los Angeles, CA 90071
Tel.: (213) 683-9100

ALLISON BROWN (*pro hac vice)*
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Tel.: (215) 268-5000

JESSICA DAVIDSON (*pro hac vice)*
jessica.davidson@kirkland.com
JOHN J. NOLAN (*pro hac vice)*
jack.nolan@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800

*Attorneys for Defendant Snap Inc.*

*/s/ Ashley W. Hardin*
ASHLEY W. HARDIN (*pro hac vice)*
ahardin@wc.com
J. ANDREW KEYES (*pro hac vice)*
akeyes@wc.com
NEELUM J. WADHWANI (SBN 247948)
nwadhwani@wc.com
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
Tel.: (202) 434-5000

*Attorneys for Defendants YouTube, LLC and Google LLC*

/s/ *Christian J. Pistilli*
ASHLEY M. SIMONSEN (State Bar No. 275203)
asimonsen@cov.com
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800

PHYLLIS A. JONES (*pro hac vice*)
pajones@cov.com
PAUL W. SCHMIDT (*pro hac vice*)
pschmidt@cov.com
CHRISTIAN J. PISTILLI (*pro hac vice*)
cpistilli@cov.com
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Tel.: (202) 662-6000

BETH A. WILKINSON (pro hac vice)
MATTHEW R. SKANCHY (pro hac vice)
WILKINSON STEKLOFF LLP
2001 M Street, NW, 10th Floor
Washington, D.C. 20036
Telephone: (202) 847-4010
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
mskanchy@wilkinsonstekloff.com

MOIRA K. PENZA (pro hac vice)
WILKINSON STEKLOFF LLP
130 W 42nd Street, 24th Floor
New York, NY 10036
Telephone: (212) 294-8925
Facsimile: (202) 847-4005
mpenza@wilkinsonstekloff.com

*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Meta Payments Inc. f/k/a Facebook Payments Inc.; Meta Platforms Technologies, LLC f/k/a Facebook Technologies, LLC; Instagram, LLC; and Siculus LLC f/k/a Siculus, Inc.*

*/s/ Bailey J. Langner*

GEOFFREY M. DRAKE (*pro hac vice)*
gdrake@kslaw.com
TACARA D. HARRIS (*pro hac vice)*
tharris@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel.: (404) 572-4600

DAVID P. MATTERN (*pro hac vice)*
dmattern@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, D.C. 20006
Tel.: (202) 737-0500

BAILEY J. LANGNER (State Bar No. 307753)
*blangner@kslaw.com*
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Tel.: (415) 318-1200

*/s/ Daniel M. Petrocelli*
DANIEL M. PETROCELLI (SB #97802)
dpetrocelli@omm.com
SABRINA H. STRONG (SB #200292)
sstrong@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 553-6700

STEPHEN D. BRODY (*pro hac vice*)
sbrody@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006
Telephone: (202) 383-5300

*Attorneys for Defendants*
*TikTok Inc., ByteDance Inc., TikTok Ltd., ByteDance Ltd., and TikTok LLC*

**ATTESTATION**

I, Jonathan H. Blavin, hereby attest, pursuant to N.D. Cal. Civil L.R. 5–1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED: October 16, 2026 By: */s/ Jonathan H. Blavin*

Jonathan H. Blavin