WILLIAMS & CONNOLLY LLP
Ashley W. Hardin, *pro hac vice*
J. Andrew Keyes, *pro hac vice*
Neelum J. Wadhwani (SBN 247948)
680 Maine Avenue SW
Washington, DC 20024
Tel.: (202) 434-5000
ahardin@wc.com
akeyes@wc.com
nwadhwani@wc.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

*[Additional parties and counsel listed on signature pages]*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>*Charleston County School District v. Meta Platforms, Inc., et al.*<br><br>Case No.: 4:23-cv-04659 | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR-PHK<br><br>**DEFENDANTS' MOTION TO PRECLUDE CHARLESTON COUNTY SCHOOL DISTRICT FROM RELYING ON A LATE-DISCLOSED SCHOOL DISTRICT WITNESS**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang<br><br>Date: November 13, 2026<br>Time: 2:00 PM<br>Place: Courtroom 1, 4th Floor |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT, at 2:00 PM on November 13, 2026, before the Honorable Yvonne Gonzalez Rogers, in Courtroom 1, 4th Floor, of the United States District Court, Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Defendants will and hereby do move this Court, under Federal Rules of Civil Procedure 26 and 37, for an order granting Defendants' Motion to Preclude Charleston County School District from Relying on a Late-Disclosed School District Witness.

This Motion is based on the Memorandum of Points and Authorities submitted herewith, any other papers submitted in connection with the Motion, all other pleadings and papers on file in this action, any matter of which this Court may properly take judicial notice, and any information presented at argument.

Dated: October 22, 2026

Respectfully submitted,

By: */s/ Ashley W. Hardin*

WILLIAMS & CONNOLLY LLP
Ashley W. Hardin, *pro hac vice*
J. Andrew Keyes, *pro hac vice*
Neelum J. Wadhwani (SBN 247948)
680 Maine Avenue SW
Washington, DC 20024
Tel.: (202) 434-5000
ahardin@wc.com
akeyes@wc.com
nwadhwani@wc.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

*[Additional parties and counsel listed on signature pages]*

**TABLE OF CONTENTS**

INTRODUCTION ........ 1

BACKGROUND ........ 1

ARGUMENT ........ 4

CONCLUSION ........ 8

# TABLE OF AUTHORITIES

## CASES

*Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337 (9th Cir. 1995) .............................. 6

*Chinacast Educ. Corp. v. Chen Zhou Guo*, 2018 WL 7448913 (C.D. Cal. Dec. 28, 2018) ........... 6

*Leon v. IDX Sys. Corp.*, 464 F.3d 951 (9th Cir. 2006) ..................................................................... 6

*Ollier v. Sweetwater Union High Sch. Dist.*, 267 F.R.D. 339 (S.D. Cal. 2010) .............................. 5

*Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843 (9th Cir. 2014) ................................ 5, 7

*Perez v. U.S. Postal Serv.*, 2014 WL 10726125 (W.D. Wash. July 30, 2014) ............................... 6

*Pinterest, Inc. v. Pintrips, Inc.*, 2015 WL 2268498 (N.D. Cal. May 14, 2015) .............................. 7

## INTRODUCTION

Defendants already moved to preclude Tucson Unified School District ("Tucson") from relying on two school principals it disclosed for the first time on its preliminary trial witness list on September 14, 2026. Now, one month after the preliminary witness lists were due and one week after Charleston County School District ("Charleston") took the position that witnesses disclosed for the first time on the September preliminary lists were late and improper, Charleston announced that it would follow Tucson's approach and identified Gerilyn Leland, an eighth-grade social studies teacher, as a newly disclosed trial witness. But two wrongs do not make a right.

Charleston's disclosure is improper for every reason Tucson's is, and then some. Ms. Leland was never identified in any Plaintiff Fact Sheet, Charleston's Rule 26 disclosures, or its interrogatory responses, and was never deposed. She was never identified as a potential document custodian, let alone selected as a document custodian for purposes of document discovery. Even worse, she was never placed on a litigation hold. And Charleston has not identified her to replace a witness who was already disclosed but is no longer available. Instead, she belongs to a category of witnesses—classroom teachers—that Charleston and the other school district bellwethers fought for years to keep off limits in discovery. Charleston's only stated justification for identifying her (more than a month after it served its preliminary trial witness list) is that Tucson and Meta listed previously unidentified individuals on their preliminary trial witness lists. That is no justification at all. As to Meta, it withdrew its newly disclosed witnesses when Charleston challenged them, whereas Tucson has refused to withdraw its late-disclosed witnesses. Charleston cannot use one plaintiff's actions as license for its own even more untimely disclosure. The Court should preclude Charleston from relying on Ms. Leland—or any other late-disclosed school district witness—at trial.

## BACKGROUND

The parties are preparing Charleston for trial, and Charleston will proceed to trial on February 8, 2027, if Tucson's case is resolved before then. Pursuant to the pretrial schedule, the parties filed preliminary trial witness lists on September 14, 2026. Charleston's preliminary witness list identified five of its own employees. *See* Pl. Charleston Cnty. Sch. Dist.'s Prelim. Trial Witness List, ECF No. 3491 at 2–3. It did not include any teachers. The only school-level employees on

Charleston's list were a counselor and a principal whom Charleston disclosed in December 2024, months before the close of fact discovery. *See* Ex. A (Dec. 20, 2024 Email from J. Haileselassie Re: Charleston County School District - Non-Custodial Sources).

On September 14, both Tucson and Meta disclosed new witnesses for the first time. But upon seeing that both had done so, Charleston did not seek to add any witnesses to its list. Instead, it took the position that Meta had improperly disclosed its new witnesses and informed Meta that it would move to exclude them. Defendants similarly informed Tucson that they would move to exclude Tucson's new witnesses. Meta then withdrew its witnesses. Hours later, on October 15, 2026, Charleston identified Ms. Leland as a trial witness. Charleston does not contend that it only recently learned of her, and it admits that the disclosure is otherwise untimely. It justifies its late addition solely on the basis that Tucson (and previously Meta) added new witnesses:

> On yesterday's meet and confer with Tucson, it became clear that Tucson intends to bring to trial witnesses who were neither disclosed on their Rule 26 disclosures nor previously the subject of discovery. It also became clear that Meta tacitly endorsed this, insofar as Meta itself had identified four trial witnesses who were also "late disclosed." While [Charleston is] in receipt of [Meta's] email from a couple hours ago [withdrawing its witnesses], it does not change the fundamental fact that parties on both sides seem to think there is sufficient time to add a modest number of trial witnesses to their lists. So, with that in mind, Charleston will take the same approach. We are hereby identifying Gerilyn Leland as a trial witness.

*See* Ex. B (Oct. 15, 2026 Email from P. Warren Re: Tucson and Charleston Witness Lists).

Charleston's October 15, 2026 email was the first time Defendants had ever heard the name Gerilyn Leland and the first time Charleston had ever suggested that it might rely on any teacher at all at trial. Charleston never placed Ms. Leland on a litigation hold before October 15, 2026. It never designated her as a document custodian. It never collected or produced her documents. And apart from routine human-resources spreadsheets listing district employees, Ms. Leland does not appear in a single document produced in discovery—not in any disclosure, interrogatory response, Plaintiff Fact Sheet, deposition, or discovery correspondence. Defendants know nothing about Ms. Leland beyond the two sentences in Charleston's email.

From the outset of this litigation, the school district plaintiffs—including Charleston—resisted preservation and discovery of teachers and other school-level employees. In response to

Defendants' preservation demand, Plaintiffs' counsel called "***unreasonable and disproportionate***" the request that Plaintiffs preserve "communications . . . of school board members, school administrators, teachers, and staff," complaining that it would "apply to almost every school employee" and that "Defendants would require Plaintiffs to ask teachers to preserve text messages." *See* Ex. C (July 21, 2023 Ltr. from M. Weinkowitz) at 3–4 (emphasis added). Plaintiffs instead limited preservation to "those individuals, administrators, departments, committees, and boards whose primary responsibility and role is to address issues concerning students' use of social media." *See id.* at 5.

Charleston followed that approach. Although it filed suit on August 15, 2023, Charleston did not issue a single litigation hold until September 2023, and then only to a handful of district officials. *See* Ex. D (June 10, 2024 Ltr. from A. Keyes). The litigation hold lists that Charleston produced in May 2024 (and updated in June 2024) consist of ***district-level*** personnel. Not a single teacher was included on those lists.

Charleston's Initial Custodian List likewise identified 16 ***district-level*** officials and no teachers. When Defendants asked Charleston to add school-level custodians, including middle and high school principals and mental health professionals, Charleston refused. *See* Ex. E (June 26, 2024 Ltr. from A. Keyes). Instead, Charleston and the other school district Plaintiffs agreed that each would disclose "some school-level custodians" (not teachers) and called a request to identify every principal and counselor "classic discovery-on-discovery." *See* Ex. F (July 24, 2024 Ltr. from M. Weinkowitz) at 4.

Charleston knew how to identify school-level witnesses when it wanted to. In December 2024, Charleston identified seven additional "individuals with knowledge"—counselors and principals (again, not teachers)—and committed to amend its Plaintiff Fact Sheet and produce their custodial files within 60 days.[1] *See* Ex. A. And the parties have already been before this Court due

[1] Charleston previously added witnesses to its trial witness list. On September 24, 2025, pursuant to deadlines set by the Court, the parties exchanged preliminary trial witness lists. Charleston's list named eight witnesses, four of whom had not been Priority Witnesses under the Priority Witness Stipulation. *See* Stipulation and Order Regarding Rule 26(a)(1)(A)(i) Identification of Priority Witnesses in School District Cases, ECF No. 1752 ("Priority Witness Order"). But all four of those

to bellwether plaintiffs' prior attempt to belatedly add new categories of witnesses. At that time, over a year ago, this Court inquired about the categories of school-level witnesses bellwether plaintiffs had disclosed during discovery. Plaintiffs' counsel conceded that ***none*** of the districts had disclosed teachers. *See* June 13, 2025 CMC Hr'g Tr. at 33:5–11. Yet Charleston now seeks to call ***one*** out of the ***3,600-plus*** current teachers in its district as a witness at trial to testify about her experience in her classroom. *See* Ex. B. Given the number of teachers and schools in the district, it strains credulity that this single teacher's experience is representative of the teacher experiences across the district. But more fundamentally, Defendants would have no way of knowing whether that was the case, given that they were denied discovery into any other school-level witnesses. When the parties met and conferred about this motion, Charleston claimed that it cherry-picked Ms. Leland from among the thousands of teachers only because she is willing to be deposed.

## ARGUMENT

The Court should preclude Charleston from relying on its new witness for any purpose. Charleston concedes that the disclosure is untimely. It offers two justifications for its late disclosure: (1) the schoolyard logic that other parties did it first, and (2) the contention that there is no prejudice to Defendants because there is time for Defendants to receive Ms. Leland's "custodial file" and depose her. Neither has merit.

*First*, the only other party attempting to rely on late-disclosed witnesses at trial is fellow plaintiff, Tucson. While Meta did name some new witnesses on its September 14, 2026 preliminary witness list, it voluntarily withdrew them after Charleston indicated that it would move to exclude them and before Charleston disclosed its new witness. Defendants asked Tucson to withdraw its untimely witnesses, too, but it refused to do so. Charleston's logic appears to be that because Tucson added witnesses, it is free to do so as well. But one plaintiff's actions do not give every other plaintiff license to do the same and certainly do not give them license to disclose new witnesses on the eve of trial, as Charleston has done here.

---

witnesses had been disclosed in Charleston's interrogatory responses, and Charleston had produced their custodial files.

*Second*, there is significant and undue prejudice to Defendants from Charleston's late disclosure that cannot be cured by collecting one custodial file and taking one deposition about one teacher's experience in one classroom. Charleston has approximately 3,600 classroom teachers, serving roughly 50,000 students across 88 schools. Having resisted teacher-level discovery for years, Charleston now proposes to select just one of those thousands of teachers to present "eyewitness" testimony about social media's effect on her classroom. Charleston does not contend that her testimony is representative. Ms. Leland was chosen because she was willing to sit for a deposition. But Defendants are nonetheless entitled to show the jury that her experience is not representative. *See Ollier v. Sweetwater Union High Sch. Dist.*, 267 F.R.D. 339, 343 (S.D. Cal. 2010) (excluding witnesses added 15 months after the close of discovery, noting that "the untimely disclosure of witnesses potentially impacts decisions already made during the course of the litigation"), *aff'd*, 768 F.3d 843 (9th Cir. 2014). That requires discovery from other teachers in other Charleston classrooms and schools, as well as school-level records concerning any incident Ms. Leland describes. That is precisely the discovery that Charleston refused to provide and that cannot now be provided on the Court's trial schedule.

Charleston's damages theory demonstrates why it would be so prejudicial to allow the testimony of just one handpicked teacher. Charleston seeks tens of millions of dollars for teacher time purportedly diverted by social media, relying on survey responses from 259 unnamed, self-selected teachers. *See* Ex. G (Expert Report of Robert L. Klein for Charleston County School District) ¶ 40. Defendants built their expert rebuttal and summary judgment arguments on that record. *See Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862 (9th Cir. 2014) ("After disclosures of witnesses are made, a party can conduct discovery of what those witnesses would say on relevant issues, which in turn informs the party's judgment about which witnesses it may want to call at trial . . . to put it in context."). Ms. Leland would become the face of all those 259 teachers, and her testimony could be used to bolster the expert's survey and lend legitimacy to Charleston's theory in ways that Defendants never had an opportunity to test during discovery or address with their own experts. *See Ollier*, 267 F.R.D. at 343 ("Disclosure of witnesses also allows a party to determine if the testimony would be of use to experts.").

Even if broader discovery were not implicated by the late disclosure of Ms. Leland, the prejudice to Defendants cannot now be cured because her contemporaneous documents are likely lost and cannot be produced. Ms. Leland was never placed on a litigation hold. Charleston never instructed her to preserve her documents, emails, messages, or files. Indeed, as of the parties' meet and confer on this motion, she still had not been placed on a litigation hold. Defendants cannot know whether Ms. Leland's relevant materials exist in full, and there is no way to remedy the gap at this juncture. Without her prior communications and documents, Defendants have no way of testing her recollection and personal account. Plaintiffs themselves insisted that a fact witness's full custodial file is a precondition to fairly examining that witness, and Defendants have no doubt that Plaintiffs would object if a Defendant attempted to bring live at trial a witness whose documents were never preserved. *See* Joint Ltr. Br. Re YouTube's Am. Rule 26(a) Initial Disclosures, ECF No. 1803 at 9 (arguing that, had YouTube timely disclosed its witnesses, "Plaintiffs would have demanded their custodial files . . . so that Plaintiffs could fairly confront the witnesses with their own documents"). Any late production of Ms. Leland's file cannot cure Charleston's failure to preserve her documents in the first place. A party should not be allowed to benefit from the uncertainty created by its own failure to preserve evidence. *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) ("[The Ninth Circuit has] found prejudice when a party's refusal to provide certain documents 'forced [the opposing party] to rely on incomplete and spotty evidence' at trial." (quoting *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 354 (9th Cir. 1995))); *Perez v. U.S. Postal Serv.*, 2014 WL 10726125, at *4 (W.D. Wash. July 30, 2014) (finding USPS's litigation hold "inadequate" where USPS decided, among other things, "to issue litigation holds only to a select group of managers," which "excluded emails retained by non-management employees, regardless of the employees' relationship to the events at issue").

Charleston claims that there is no prejudice to Defendants because there is ample time for the deposition given that Charleston's trial is likely many months away. But that is contrary to the Court's instruction that Charleston's case be ready for trial on February 8. "Having to commit any amount of trial preparation on late-disclosed discovery materials is, in itself, a harm." *Chinacast Educ. Corp. v. Chen Zhou Guo*, 2018 WL 7448913, at *7 (C.D. Cal. Dec. 28, 2018) (quotation

omitted). And the "last thing a party or its counsel wants in a hotly contested lawsuit is to make last-minute preparations and decisions on the run." *Ollier*, 768 F.3d at 863. Spending resources on discovery that should have occurred in 2024 and 2025 would disrupt this Court's schedule and prejudice every party. *See Pinterest, Inc. v. Pintrips, Inc.*, 2015 WL 2268498, at *7 (N.D. Cal. May 14, 2015) ("The Court will not delay these proceedings to permit the parties to depose the surprise witnesses or to amend their submissions to account for their testimony.").

That Defendants deposed two Charleston school-level witnesses in September 2026 does not suggest there is no prejudice. Charleston identified both as individuals with knowledge and committed to produce their custodial files in December 2024. *See* Ex. A. Charleston named both on its preliminary witness list on September 24, 2025. Defendants had ample time to review those witnesses' custodial files and prepare to depose them over the summer of 2026 while the parties were not in the midst of trial preparation. Ms. Leland was disclosed for the first time last week, has no custodial file, and even if she has now been placed on a litigation hold, it was not until ***after*** Charleston announced it would add her as a witness. What Charleston "seeks is trial by ambush." *See* Joint Ltr. Br. Re YouTube's Am. Rule 26(a) Initial Disclosures, ECF No. 1803 at 9.

* * *

Permitting Charleston's witness would reward exactly the gamesmanship that courts in this Circuit, including this one, have warned against. *See Ollier*, 768 F.3d at 863 ("We—and the Advisory Committee on the Federal Rules of Civil Procedure—have warned litigants not to indulge in gamesmanship with respect to the disclosure obligations of Rule 26." (quotations omitted)); *see also* Apr. 22, 2025 Hr'g Tr. at 15:23–16:4 ("I will remind you -- I think I've reminded the parties, since day one -- of your obligations under Rule 26 to supplement initial disclosures. So if there was a very late identification of witnesses in response to an interrogatory, the question . . . that leaps immediately to my mind is why weren't they listed in the initial disclosures?"). Charleston did not choose to add any new witnesses to its preliminary witness list—not even after it knew that Tucson and Meta had done so. It threatened to move to exclude Meta's new witnesses. And then, when Tucson refused to withdraw its late-disclosed witnesses, Charleston decided to belatedly follow

Tucson's misguided approach.[2] Allowing Charleston to add a witness now simply because another plaintiff did so would create a free-for-all that would render the Court's schedule a dead letter.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court preclude Charleston from calling Gerilyn Leland—or any other late-disclosed school district witness—at trial or otherwise relying on her for any purpose.

If the Court denies this motion, Defendants respectfully request, in the alternative, that the Court order Charleston to (1) produce Ms. Leland's complete custodial file within two business days of the Court's ruling, together with a sworn affidavit explaining the steps taken to preserve her documents since the inception of this lawsuit and identifying the categories of documents that were not preserved; (2) make Ms. Leland available for a deposition at Defendants' convenience within 14 days of that production; (3) permit Defendants reasonable comparative discovery from other Charleston employees, including but not limited to the custodial files of other teachers and school-based data; (4) allow Defendants to identify additional witnesses; and (5) allow Defendants to supplement their expert reports to account for any information learned from the teacher-level discovery.

[2] The Priority Witness Order does not change the analysis. That order allocates deposition time among witnesses already disclosed in discovery; it does not excuse a failure to disclose.

Dated: October 22, 2026

Respectfully submitted,

*/s/ Ashley W. Hardin*

ASHLEY W. HARDIN, *pro hac vice*
ahardin@wc.com
J. ANDREW KEYES, *pro hac vice*
akeyes@wc.com
NEELUM J. WADHWANI (SBN 247948)
nwadhwani@wc.com
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Tel.: (202) 434-5000

*Attorneys for Defendants YouTube, LLC and Google LLC*

*/s/ Ashley M. Simonsen*
Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones (*pro hac vice*)
Paul W. Schmidt (*pro hac vice*)
Christian J. Pistilli (*pro hac vice*)
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
Email: pajones@cov.com
Email: pschmidt@cov.com
Email: cpistilli@cov.com

Beth A. Wilkinson (*pro hac vice*)
Matthew R. Skanchy (*pro hac vice*)
WILKINSON STEKLOFF LLP
2001 M Street, NW, 10th Floor
Washington, D.C. 20036
Telephone: (202) 847-4010
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
mskanchy@wilkinsonstekloff.com

Moira K. Penza (*pro hac vice*)
WILKINSON STEKLOFF LLP
130 W 42nd Street, 24th Floor
New York, NY 10036
Telephone: (212) 294-8925
Facsimile: (202) 847-4005
mpenza@wilkinsonstekloff.com

*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc. and Instagram, LLC*

*/s/ Jonathan H. Blavin*
JONATHAN H. BLAVIN (State Bar No. 230269)
Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel.: (415) 512-4000

E. MARTIN ESTRADA (State Bar No. 223802)
Martin.Estrada@mto.com
L. ASHLEY AULL (State Bar No. 257020)
Ashley.Aull@mto.com
VICTORIA A. DEGTYAREVA (State Bar No. 284199)
Victoria.Degtyareva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel.: (213) 683-9100
Facsimile: (213) 687-3702

ALLISON BROWN, *pro hac vice*
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Tel.: (215) 268-5000

JESSICA DAVIDSON, *pro hac vice*
jessica.davidson@kirkland.com
JOHN J. NOLAN, *pro hac vice*
jack.nolan@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800

*Attorneys for Defendant Snap Inc.*

*<u>/s/ Geoffrey M. Drake</u>*

GEOFFREY M. DRAKE, *pro hac vice*
gdrake@kslaw.com
TACARA D. HARRIS, *pro hac vice*
tharris@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

DAVID P. MATTERN, *pro hac vice*
dmattern@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, D.C. 20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737

BAILEY J. LANGNER (SBN 307753)
blangner@kslaw.com
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

*/s/ Daniel M. Petrocelli*
DANIEL M. PETROCELLI (SB #97802)
dpetrocelli@omm.com
SABRINA H. STRONG (SB #200292)
sstrong@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 553-6700

STEPHEN D. BRODY (*pro hac vice*)
sbrody@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006
Telephone: (202) 383-5300

*Attorneys for Defendants TikTok Inc., ByteDance Inc., ByteDance Ltd., TikTok Ltd., and TikTok, LLC*

**ATTESTATION**

I, Ashley W. Hardin, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: October 22, 2026

By: *<u>/s/ Ashley W. Hardin</u>*
Ashley W. Hardin