# EXHIBIT F

LEVIN SEDRAN & BERMAN, LLP
*Counsellors at Law and Proctors in Admiralty*

MICHAEL M. WEINKOWITZ
MWeinkowitz@lfsblaw.com
(215) 592-1500

KESSLER TOPAZ MELZER & CHECK, LLP

MELISSA L. YEATES
MYEATES@KTMC.COM
(610) 667-7056

**VIA EMAIL** July 24, 2024

**All Defense Counsel in the School District Bellwether cases**

**RE:** ***In re: Social Media Adolescent Addiction / Personal Injury Products Liability Litigation*, MDL No. 3047**

Dear Counsel:

The Bellwether School District Plaintiffs ("Plaintiffs") write this omnibus follow-up to Defendants' written correspondence and requests during the parties' numerous meet and confers including July 17, 2024, concerning issues raised in response to Plaintiffs' Responses to Defendants' First Set of Interrogatories ("Interrogatories") and Plaintiffs' Responses to Defendants' First Set of Requests for Production of Documents. ("Requests to Produce" or "Requests").[1]

## I. RELEVANT TIME PERIOD

As discussed during the parties' July 8, 2024, meet and confer and prior correspondence, it is the Plaintiffs' position that their proposed Relevant Time Period of August 1, 2017, to April 1, 2024, is appropriate and proportional. Indeed, the 2017 start date was negotiated by the parties and ordered by Judge Kuhl for the School District Plaintiff Fact Sheets. Nonetheless, in response to Defendants' objections, Plaintiffs will agree to a Relevant Time Period start date of August 1, 2014, if this will resolve the parties' disagreement. As previously explained, a 2014 start date provides for a reasonable period prior to the time when Plaintiffs anticipate claiming they began to incur recoverable damages, ranging from two to four years. To the extent any School District Bellwether is claiming damages for a period for which more or less of a pre-damages discovery

[1] It is unfortunate that certain Defense counsel found it necessary to lodge meritless complaints that meet and confers were unproductive because that Defense counsel did not get the answer desired on a particular issue. Attached and incorporated herein is a letter dated July 22, 2024, in the Charleston County School District case that sets forth the Plaintiffs' answer to that disappointing and meritless rhetoric.

period is appropriate, they will so notify Defendants, and the parties can discuss whether a different Relevant Time Period makes sense for that School District.

## II. INTERROGATORIES

### A. Objection to "Alleged Harm"

As discussed during the meet and confers, Plaintiffs are not withholding any materials based on the language and objections in the preliminary statement and definitions, including the objections to "Alleged Harm."

### B. Interrogatory No. 1

Defendants' questions regarding the use of the phrase "unique, material knowledge," used by a number of Plaintiffs in response to Interrogatory No. 1, were previously fully addressed and answered in the correspondence dated July 11, 2014, from the undersigned discussing the deposition limits for Plaintiffs' witnesses. As explained in that letter, Defendants' Interrogatory No. 1 is overly broad, seeking the names of *any* person that may *potentially* have *any* knowledge, no matter how small the amount, relevant to either party's claims or defenses or duplicative of another witness' knowledge. Plaintiffs objected on that basis and asked Defendants to narrow the scope to something Plaintiffs could reasonably respond to.[2] During the meet and confer, Defendants declined to withdraw and rephrase the interrogatory to a more reasonable scope. As Plaintiffs explained during the meet and confer, Defendants were provided lists of individuals using language such as "unique, material knowledge," or other language in an attempt to tailor the responses to the overly broad interrogatory. Indeed, Defendants acknowledged that they, in fact, did not want "every single person" with any knowledge identified but instead, focused on people with non-overlapping knowledge that supports or contradicts Plaintiffs' claims. As discussed in the July 11, 2024 letter and during the parties' conferral, some Plaintiffs have proffered lists of witnesses, more narrowly tailored to respond to Defendants' requests, as a courtesy to the Defendants. We expect that additional Plaintiffs will similarly submit such narrowed lists of witnesses in due course.

### C. Interrogatory No. 2

Notwithstanding Defendants' request during the meet and confer that the response to Interrogatory No. 2 should include the period for which the Plaintiffs are seeking damages, Interrogatory No. 2 does not actually ask for that. Instead, it asks for the years during which Plaintiffs claim that Defendants engaged in ***conduct*** for which Plaintiffs seek damages, to which Plaintiffs have already responded. Nevertheless, as a courtesy, and to the extent this will resolve

[2] Despite the Plaintiffs' repeated requests, it is disappointing that Defendants refuse to revise Interrogatory No. 1 to directly ask the intended question. This obstinate refusal forces the Plaintiffs to do the Defendants' work for them by providing narrowed lists of individuals. It appears that the Defendants deliberately drafted Interrogatory No. 1 in an overly broad manner to manufacture a baseless argument for needing more deposition hours than the Court's ordered limit. This tactic reveals the Defendants' intent to manipulate the process and waste time.

Defendants' meritless objection to Plaintiffs' answers to this interrogatory, Plaintiffs will supplement their responses consistent with the response provided by Plaintiff Baltimore City Board of School Commissioners.[3] Please confirm that this resolves the issue.

### D. Interrogatory No. 3

Although providing the level of detail that Defendants request for each incident is very burdensome and not proportional, Plaintiffs are continuing to investigate and will supplement with additional information obtained about incidents of vandalism that the Plaintiffs have attributed to social media. Some of this information may also be provided in the forthcoming damages disclosure.

Plaintiffs believe that the above responses resolve all common issues raised in the Defendants' Deficiency Notices Regarding Responses to First Set of Interrogatories. Please advise if the Defendants disagree.

## III. REQUESTS TO PRODUCE

### A. Publicly Available Documents

Plaintiffs have responded to certain document requests that the information sought is publicly available. Plaintiffs maintain these objections; however, Plaintiffs will agree to identify the location of those publicly available documents for Defendants to the extent known and can be located after a reasonably diligent search. Where Plaintiffs have the requested documents readily accessible, they will provide them or direct Defendants to them.

### B. Definition of "Alleged Harm"

In their Responses, Plaintiffs objected to Defendants' definition of "Alleged Harm" on the grounds that it calls for a legal conclusion or expert opinion, and further because since discovery is just beginning, the factual record is not yet complete. Accordingly, additional injury and harms may need to be supplemented during fact and expert discovery. Defendants contend that Plaintiffs must supply an alternative definition that Plaintiffs will apply, or inform Defendants if Plaintiffs are withholding documents on the basis of its objection. Plaintiffs maintain these objections; however, Plaintiffs do not intend to withhold non-privileged responsive documents based on this objection.

---

[3] Specifically, "Based on the information currently available, Plaintiff seeks damages connected with Defendants' conduct from at least the 2017-2018 academic year. Plaintiff reserves the right to amend and/or supplement its response to this Interrogatory as more information becomes available. Plaintiff states further that it will make appropriate expert disclosures concerning damages and abatement or other equitable relief in accordance with the deadlines set by the Court and the Federal Rules of Civil Procedure."

### C. Definition of "Online Media & Communications Services"

In their Responses, Plaintiffs objected to Defendants' definition of "Online Media & Communications Services" as vague and ambiguous because the phrases "websites and applications that enable users to create and share content" and "participate in social networking" are subject to multiple interpretations. Plaintiffs further objected that the definition is overly broad, unduly burdensome, and irrelevant because it purports to include several applications or products that do not reasonably relate to the issues in this action. Defendants contend that Plaintiffs must supply an alternative definition that Plaintiffs will apply or inform Defendants if Plaintiffs are withholding documents based on this objection, or through their use of the term "social media." Plaintiffs interpret the phrase "social media" to mean websites or applications designed for social networking where users create online communities to share information. This phrase does not include the mere sending and receiving of information over the internet or the posting of school-related information for students and parents to view but not necessarily interact with. Consistent with TikTok's request that the scope of Request to Produce 211-212 (industry communications) be limited to the social media platforms at issue in this litigation, Plaintiffs similarly will limit the scope of this request to the social media platforms at issue in this litigation.

### D. Definition of "School District"

Defendants have raised a concern that the definition of "School District" excludes schools that fall under the districts' authority and would, therefore, exclude documents dealing with particular schools. Plaintiffs consider the schools within their districts as being within their possession, custody, and control for purposes of responding to discovery, and will collect documents pertaining to particular schools that are responsive to Defendants' requests to the extent that doing so is reasonable and proportionate to the needs of the case. Each Plaintiff will also disclose some school-level custodians or sources they believe have potentially relevant information consistent with how Plaintiffs have provided narrowed lists in response to Interrogatory No. 1. in response to Defendants' requests. Related, Defendants' request for each Plaintiff to identify "every individual who worked at any [District] middle or high school from August 1, 2014, to present as (i) a principal or (ii) a mental, behavioral, emotional or social health psychologist, counselor or therapist" is overly broad and classic discovery-on-discovery. As noted in Section III.I, Plaintiffs will search for and produce organizational charts to the extent they exist.

### E. Non-Custodial ESI Repositories

Defendants have requested information about non-custodial ESI repositories. Specifically, for any such repository, Defendants inquire: (a) whether it is a proprietary or off-the-shelf software or system; (b) if it is proprietary, who developed it; (c) if it is off-the-shelf, the vendor from which it was purchased; (d) who at the relevant Plaintiff maintains it; (e) how data is entered into it; (f) the period of time for which it contains data; (g) a listing of all fields it includes; (h) how it can be queried to extract and export data; and (i) how the relevant Plaintiff proposes to search it for ESI that is responsive to Defendants' discovery requests. Defendants further request information about any repository that Plaintiffs believe contains relevant ESI but is not discoverable under proportionality factors or is not reasonably accessible or which contains discoverable information, but which Plaintiff proposes avoiding or postponing searching for any reason.

Defendants' requests improperly seek discovery-on-discovery,[4] are overbroad and not proportional to the needs of the case. Plaintiffs agree to identify non-custodial ESI repositories, and follow the ESI Protocol. (ECF 623). Note that the ESI Protocol does not require descriptions of the types of information kept in the database

**E. Documents Relating to Crime, Crime Prevention, Drug Use, Alcohol Use, Sexual Activity, or Nicotine Use (Request Numbers 8, 9, 10, 12, 28, 29, 30, 33, 35, 64, 69, 70, 72)**

Defendants have challenged Plaintiffs' objections to producing documents relating to crime or crime prevention; sexual activity; drug or alcohol use, prevention, and treatment; and nicotine use. Defendants' basis for this expansive discovery is "alternative causation." But alternative causation is not limitless. There must be some reasonable nexus to the issues in the case and the discovery sought must be proportionate. Insisting that Plaintiffs search for, collect, review, and produce documents that touch in any way on any of these issues is neither reasonable nor proportionate. Indeed, Plaintiffs maintain that these objections are appropriate. However, in the interest of compromise, Plaintiffs will agree 1) to not exclude documents relating to these issues on a *per se* basis and 2) to produce the following types of documents concerning these issues: Board materials (RFP 8); handbooks/Student Codes of Conduct (RFP 9); surveys, studies, or reports (RFP 10), public speeches, presentations, newsletters (RFP 12) reports concerning arrests of students relating to on-campus activity (RFP 28); aggregate reporting concerning student on-campus drug, alcohol, or nicotine use in violation of District policy (RFPs 29-30, 33, 72); aggregate reporting concerning number of students seen or referred for mental health or behavioral issues, including the issue addressed, if tracked (RFP 35); and budgets expressly relating to crime prevention, drug or alcohol prevention or treatment, or eating disorder treatment (RFPs 64, 69-70). Furthermore, Plaintiffs will agree to produce documents concerning those types of documents if returned by Plaintiffs' search terms. However, considering the little, if any, relevance of some of these issues, the search for and production of these documents must be limited by appropriately narrow search terms. Plaintiffs will not agree to produce any individually identifying information about any students.

**F. Documents Relating to COVID-19 and Remote Learning (Request Numbers 9-10, 42, 44, 46, 47)**

Defendants have challenged Plaintiffs' objections to producing certain documents relating to COVID-19 and remote learning. Plaintiffs maintain that these objections are appropriate, but to resolve this dispute, Plaintiffs will agree to produce any district-wide policies that were issued regarding the implementation of mandatory remote or hybrid learning lasting longer than 10 school days (RFPs 9, 42) to the extent they exist and can be located after a reasonably diligent search. Plaintiffs also agree to produce surveys, studies, or reports concerning the impact of remote or hybrid learning on students' mental health (RFP 10). Plaintiffs also do not intend to withhold non-

---

[4] *See, e.g. In re Google RTB Consumer Privacy Litigation*, 2023 WL 5836816, at *6 (N.D. Cal., 2023); *Ushold v. Carriage Services, Inc*. 2019 WL 8298261, at *4 (N.D. Cal., 2019); *Brewer v. BNSF Railway Company*, 2018 WL 1756432, at *2 (D. Mont. 2018).

privileged communications about these documents to the extent they are located through the use of reasonable search terms.

### G. Objection to Producing Individual Student Records as Opposed to Aggregate Data (Request Numbers 10, 32, 34, 35, 36, 48, 72)

Unlike the personal injury claims, the School Districts' claims do not involve harm to a particular individual, but instead concern harm sustained by the School Districts and thus in the aggregate of individual or specific occurrences. As such, the production of aggregate data, instead of individual student records, is appropriate. Defendants' Requests recognize this distinction and seek only documents sufficient to show, for instance, the rate of student attendance or number of students disciplined for a particular reason. Moreover, individual student information is subject to heightened confidentially, including under the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, which limits our ability to share individual student information. Accordingly, we will only produce aggregate student information. Plaintiffs anticipate that the reporting they produce will address Defendants' concerns regarding sufficient detail around student incidents, e.g., underlying conduct and disposition.

### H. Documents Relating to Teachers' Use of Online Media & Communications Services (Request Numbers 51, 52, 54, 58, 68)

Defendants have raised questions about the extent to which Plaintiffs will produce documents relating to teachers' use of social media. Plaintiffs maintain their objections as appropriate, but in the interest of compromise, Plaintiffs will agree to produce any district policies regarding staff use of social media during the course and scope of their employment. Plaintiffs do not intend to withhold non-privileged communications about teachers' use of social media platforms during the course and scope of their employment to the extent they are located through the use of reasonable search terms. Plaintiffs object to and will not search for or produce documents regarding teachers or other staff's personal use of social media.

### I. Documents Regarding Personnel (Request Numbers 3, 5, 31)

Several of Defendants' Requests seek information about personnel. Plaintiffs have raised various objections to these Requests, but will agree to produce the following to the extent they exist, are not privileged, and can be located after a reasonably diligent search in the agreed upon custodial files or relevant non-custodial sources: (1) organizational charts; (2) job descriptions for the agreed-to custodians; and (3) documents identifying the number of and minimum qualifications for employees that provide students with mental, social, or behavioral health services. Plaintiffs also agree to produce documents related to show teacher turnover and discussion of reasons for teacher turnover within the districts generally.

### J. Request Number 8

This Request seeks minutes, agendas, transcripts, recordings, presentations, newsletters, summaries, or other documentation from any meeting of a School District's governing board or

body where certain topics were discussed. Plaintiffs will agree to conduct a reasonable search for responsive written Board materials expressly discussing the listed topics.

### K. Request Number 9

This Request seeks policy documents and communications regarding the same. Plaintiffs will agree to produce any responsive district-wide policies regarding the listed topics to the extent they exist and can be located after a reasonably diligent search. Plaintiffs do not intend to withhold non-privileged communications regarding these policies to the extent they are located through the use of reasonable search terms, agreed-upon custodians, and non-custodial sources.

### L. Request Number 12

This Request seeks speeches, notes, presentations, comments, newsletters, or public quotes provided by school administrators on a number of listed topics. Plaintiffs will agree to conduct a reasonable search for public speeches, presentations, and newsletters regarding all of the listed topics.

### M. Request Number 13

Plaintiffs stand on their objections with respect to this Request, which seeks document reporting the number and percentage of Students living below the Federal Poverty Level.

### N. Request Numbers 15, 18, 40, 64

These Requests seek documents regarding the financial management of the School Districts, sources of funding, budgets, expenditures, and grants. Plaintiffs object to Defendants' Requests as overbroad. As stated in their objections and during meet and confers, Plaintiffs disagree that Defendants are entitled to every budget, expenditure, or financial matter of a district. Plaintiffs previously agreed to produce district budgets and expenditure reporting. As previously stated during meet and confers, Plaintiffs anticipate these documents will provide information concerning sources of funding, including grants, and expenditures for the entire district. Plaintiffs will also agree to search for and produce documents and communications concerning grants related to student mental or behavioral health.

### O. Request Number 19

This Request seeks documents sufficient to show various numbers, rates, and scores for students in the School Districts. The relevance of many of the requested data points and several subparts are overlapping, unnecessarily duplicative, and their relevance questionable. Nevertheless, to resolve the parties' disputes, Plaintiffs will agree to conduct a reasonable search for reports showing SAT and ACT scores, graduation rates, college admissions, AP test results, GPA, and state test scores. Again, Plaintiffs are limiting their responses to aggregate data, to the extent any exists, and not individual student records.

**P. Request Number 37**

This Request seeks documents regarding any investigation or audit conducted by any governmental body into the School Districts or any school, employee, or Student in the School Districts. This Request, as drafted, is excessively broad and potentially encompasses an array of irrelevant information. Defendants make no attempt to tie this Request to the issues in this case. However, as such, Plaintiffs suggest that the parties confer to better understand what specifically Defendants are seeking through this Request.

**Q. Request Number 41**

This Request seeks subpoenas, FOIA requests, and other public records requests received by the School Districts relating to Plaintiffs' claims or the potential impact of social media use on students. As clarified during meet and confers, Plaintiffs will conduct a reasonable search for subpoenas, FOIA requests, or other public records requests received by a district relating to this litigation or Plaintiffs' allegations other than those propounded by Defendants.

**R. Request Numbers 74, 76, 77-81**

These Requests seek documents regarding litigation and other legal matters that the School Districts have been involved in. As drafted, these requests are excessively broad and potentially encompass an array of irrelevant and unrelated legal matters having nothing to do with this lawsuit. Defendants have provided no explanation for why other, unrelated legal matters involving Plaintiffs are relevant and moreover, the Plaintiff Fact Sheet addresses whether any district has been involved in litigation against any social media company. To help reach a resolution, the Plaintiffs agree to inform Defendants whether they have been sued concerning the misuse of district funds or whether they were plaintiffs in the National Opioids litigation.[5]

**R. Request Number 50**

This Request seeks all documents relating to the provision of electronic devices to Students, or Students' use of such electronic devices. Plaintiffs will agree to produce policies regarding the issuance of such devices to students, and documents sufficient to show any programs in place regarding the issuance of these devices, to the extent they exist and can be located after a reasonably diligent search. Plaintiffs also do not intend to withhold non-privileged communications concerning those policies and programs to the extent they are located through the use of reasonable search terms, agreed-upon custodians, and non-custodial sources.

**S. Request Numbers 51, 52, 53**

These Requests seek various documents regarding the use of online media and communication services. Plaintiffs maintain our objection to the definition of online media and communication services, as explained above. Plaintiffs also maintain our objection to producing

[5] Without waiving any objections, Plaintiffs will not produce what is publicly available and easily accessible to Defendants.

documents regarding staff's personal use of social media. Otherwise, Plaintiffs will agree to search for responsive documents regarding the listed topics. However, the search for and production of these documents must be limited by reasonable search terms and search locations.

**T. Requests 56, 58, 59, 62, 63**

These Requests seek various policies relating to the use of electronic devices or online media and communications services. Plaintiffs maintain our objections to the definition of online media and communication services and to documents concerning teachers' personal use of social media, as explained above. Plaintiffs will agree to produce any district-wide policies issued concerning students' use of electronic devices or social media or teachers' use of social media in their professional capacity to the extent they exist and can be located after a reasonably diligent search. Plaintiffs also do not intend to withhold non-privileged communications about these policies to the extent they are located through the use of reasonable search terms, agreed-upon custodians, and non-custodial sources.

Very truly yours,

**MICHAEL WEINKOWITZ**

MDL Plaintiff Steering Committee Leadership
Co-Chair of MDL Government Entity Subcommittee

**MELISSA YEATES**
Co-Chair of MDL Government Entity Subcommittee

cc: Lexi Hazam
Previn Warren
All Plaintiff School District Bellwether Attorneys