Thomas P. Cartmell (*pro hac vice*)
Jonathan P. Kieffer (*pro hac vice*)
Austin Brane, SBN 286227
Michael P. Cutler, SBN 270663
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel: (816) 701-1100
tcartmell@wcllp.com
jpkieffer@wcllp.com
abrane@wcllp.com
mcutler@wcllp.com

*Attorneys for Plaintiff* (additional counsel on signature page)

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047<br><br>Case No. 4:22-MD-03047-YGR |
| This Document Relates to:<br><br>*Tucson Unified School District v. Meta Platforms, Inc., et. al.*,<br><br>Case No.: 4:24-cv-1382 | **PLAINTIFF TUCSON UNIFIED SCHOOL DISTRICT'S OPPOSITION TO DEFENDANTS' MOTION TO PRECLUDE PLAINTIFF FROM RELYING ON LATE-DISCLOSED SCHOOL DISTRICT WITNESSES**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Hearing: November 13, 2026, 2:00 p.m. |

## I. INTRODUCTION

Tucson Unified School District ("Tucson") intends to call two of its high school principals, Roberto Estrella and Tamara Ray, to tell the jury about the impact of Defendants' platforms inside their schools. Defendants ask the Court to bar them because they were not disclosed prior to the exchange of preliminary witness lists in September. ECF No. 3581 ("Motion" or "Mot."). But Rule 37(c)(1) does not require exclusion where a lack of earlier disclosure is harmless. Fed. R. Civ. P. 37(c)(1). Here, the balance of relevant factors weighs against exclusion.

*First*, the testimony matters. Principals are the District employees best situated to explain the building-level harms at issue: classroom disruption, discipline, safety incidents, and the administrative and teacher time diverted to managing students' compulsive use of Defendants' platforms. In fact, Defendants experts' central attack on Tucson's damages evidence is that it lacks firsthand, building-level support; one calls it "not believable" that a high school principal would spend the time Tucson's evidence reflects. Defendants cannot fairly urge the jury to discount Tucson's proof for want of a principal's firsthand account while asking the Court to keep the principals off the stand.

*Second*, any prejudice is modest and fully curable. Principals are not a "new category" of witness, as Defendants claim. The Court rejected that argument in June 2025, and Tucson's disclosed witnesses and document custodians have included current and former principals throughout. Tucson offered both principals' custodial files and depositions at the parties' first conference about them. It expects to produce the files by Thanksgiving and to complete both depositions in the first half of December, before final witness lists are due and nearly two months before jury selection. The trial date is not at risk.

*Third*, Tucson acted openly and in good faith. Tucson is candid that the disclosure comes after the close of fact discovery. But after longtime high school principal Frank Armenta, a document custodian and potential trial witness, left the District without having been deposed, Tucson identified these principals on the Court-ordered preliminary trial witness list upon confirming their willingness to testify. Meta listed never-disclosed witnesses on its preliminary trial

witness list and withdrew them only the morning after the parties met and conferred. And Meta still lists Dr. Bryce Bartlett, whom it first disclosed nearly a year after fact discovery closed.

Tucson does not ask the Court to overlook its schedule. It asks the Court to do what it has done before: cure any prejudice through prompt, targeted discovery and let the jury hear the evidence. The Motion should be denied.

## II. BACKGROUND

### A. School-Level Evidence Has Been Part of Tucson's Case Throughout.

Throughout discovery, Tucson has included current and former school-site administrators as custodians and produced documents from their work in its schools. And Defendants have questioned Tucson witnesses on their time working in schools. Tucson's document custodians included a sitting K-8 principal, Dr. Michael Konrad, and several others who held school-site roles during the relevant period, including former principals Shawna Rodriguez (Tucson High Magnet School), Brian Lambert (Hollinger K-8), and Richard Sanchez (Mansfeld Middle Magnet School). Brane Decl. ¶ 1.[1] Tucson identified each in its interrogatory responses as having knowledge of the impact of students' social media use on school or district operations, Ex. E at 6, and produced documents from their school-site roles, Brane Decl. ¶ 2. In 2024, Plaintiffs told Defendants that each district would "disclose some school-level custodians," and Defendants asked each district to identify every person who had served as a middle or high school principal since 2014. Ex. G at 4. Tucson also gave Defendants the names and titles of every employee placed on litigation hold, including Mr. Estrella and Ms. Ray, each listed as a high school principal. Ex. D.

Tucson's interrogatory responses also identified Frank Armenta, who served as principal of Cholla High School from the 2009–10 through the 2021–22 school years before becoming an Assistant Superintendent. Ex. A at 4; Brane Decl. ¶ 3. Mr. Armenta left the District at the end of the 2025–26 school year. He was never deposed, and he lives in Arizona. Brane Decl. ¶ 4.

---

[1] Citations to "Ex. __" are to the exhibits to the Declaration of Ashley W. Hardin (ECF No. 3581-1). Citations to "Brane Decl. Ex. __" are to the exhibits to the Declaration of Austin Brane in Support of Tucson's Opposition, filed concurrently.

**B. The Court Rejected Defendants' "New Category" Argument in June 2025.**

On the last day of fact discovery, Tucson supplemented its interrogatory responses to add four school-level witnesses.[2] Ex. E. Defendants moved to preclude Tucson from relying on those witnesses. ECF No. 1951. Defendants argued that school-level witnesses were "an entirely new category." June 13, 2025 CMC Hr'g Tr. ("2025 Tr.") (Brane Decl. Ex. A) at 27:2–4. The Court questioned the premise ("How many administrators do you know who are not principals?"), *id.* at 31:6–7, and was advised that other bellwether districts had disclosed and deposed sitting principals, *id.* at 34:8–37:25. The Court excluded only the student witness and overruled the objection as to the school-level administrator, instructing the parties to "meet and confer and get your discovery done." *Id.* at 28:6–29:14, 38:14–16; ECF No. 2055 at 3.

**C. The Preliminary Witness Lists and Tucson's Offer to Cure.**

The pretrial schedule required the parties to file preliminary trial witness lists on September 14, 2026, describing "the scope of their anticipated testimony." ECF No. 3542 at 2 & n.1. Tucson listed Mr. Estrella, principal of Sahuaro High School, and Ms. Ray, principal of Santa Rita High School, and described their testimony. ECF No. 3492 at 3; Brane Decl. ¶ 6. Tucson's counsel first spoke with them in late June and only recently confirmed their willingness to testify. Brane Decl. ¶ 7. Defendants' lists included two Meta employees, Kate Gotimer and Brad Ruderman, who had never been document custodians or deponents. ECF No. 3497 at 7–8; Brane Decl. ¶8; Mot. at 2 n.2.

Defendants raised no concern about the principals for a month and did not include their Motion on the motion in limine lists required to be exchanged October 7.[3] *See* ECF No. 3542 at 2; Brane Decl. ¶ 9. On the morning of October 14, Defendants asked to add the issue to that day's previously scheduled meet and confer on motions in limine. Brane Decl. ¶ 10. During the conferral, Defendants announced that they would move to exclude Mr. Estrella and Ms. Ray. Tucson offered to produce both custodial files and to make both principals available for deposition. Defendants declined to schedule depositions but asked Tucson to prepare the custodial files, which Tucson

[2] During the parties' negotiations on Defendants' motion to exclude these witnesses, Tucson offered to not pursue two of the four if it resolved Defendants' 2025 motion. Tucson's offer did not resolve the dispute, but Tucson nonetheless only pursued two of the four at that time.

[3] The Court could deny the Motion for this reason alone.

agreed to do. Brane Decl. ¶ 11. The next morning, Meta withdrew Ms. Gotimer and Mr. Ruderman, Ex. H at 3, and Defendants filed the Motion the following day. Tucson expects to produce both custodial files by Thanksgiving and to make both principals available so that their depositions conclude in the first half of December. Brane Decl. ¶ 12. Final witness lists are due December 17, jury selection begins February 3, 2027, and trial begins February 8. ECF No. 3542 at 3–4.

## III. ARGUMENT

Rule 37(c)(1) bars use of a witness not disclosed as required by Rule 26(a) or (e) "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Tucson bears the burden of showing harmlessness or justification. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001). Courts consider "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence." *Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1192 (9th Cir. 2022). This Court has also considered "the importance of the evidence." *West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295, 303 n.9 (N.D. Cal. 2017) (Gonzalez Rogers, J.). Throughout, the disclosure rules aim "to encourage parties to try cases on the merits." *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862 (9th Cir. 2014).

### A. The Principals' Testimony Is Important to a Full and Fair Presentation of Tucson's Case.

#### 1. Principals Are Close to the Harm, and Defendants Have Made Their Absence a Centerpiece of the Defense.

Mr. Estrella and Ms. Ray will testify about the impact of Defendants' platforms on their high schools and the District, "including its effects on students' mental, emotional, social, and behavioral health and the corresponding burdens on District discipline, safety, operations, and resources." Mot. at 2 (quoting ECF No. 3492 at 3). School-site administrators, including principals and the assistant principals and deans they supervise, are those on whom a significant portion of those burdens land. They handle discipline, respond to safety incidents, and decide how staff time is redirected when classrooms and campuses are disrupted. Principals are well-positioned to describe those burdens firsthand.

That on-the-ground perspective is exactly what Defendants say Tucson lacks. Defendants' damages expert faults Tucson's time estimates as resting on "second-hand evidence" from district administrators that "do not reflect an understanding of building level time spent on task," and asserts that "[i]t is not believable that a high school principal would spend 22% of their time on social media." Brane Decl. Ex. B (Moore Rpt.) ¶¶ 105–06. Other defense experts dismiss Tucson's evidence as "self-reported recollection" that "may not be representative," Brane Decl. Ex. C(Lakdawalla Rpt.) ¶ 249, and as "specific to the schools they supervise and not necessarily generalizable across TUSD," Brane Decl. Ex. D (Springer Rpt.) ¶¶ 83–85.

At summary judgment, Defendants criticized Tucson's district-level administrator affidavits regarding time diverted by school-site staff for an alleged "lack of personal knowledge." ECF No. 2290 at 29.[4] Having built a defense around the absence of building-level testimony, Defendants now ask the Court to exclude the building-level witnesses.[5] Rule 37(c)(1) exists to prevent unfairness, not to produce a one-sided record on the very question the jury must decide. Where late-disclosed testimony is "important to Plaintiff's case," that factor weighs against exclusion. *S.F. Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 733–34 (N.D. Cal. 2011).

Present conditions matter, too. In discovery and at recent trials, Defendants have emphasized changes they have made to their platforms in recent years, including as late as 2025. *See, e.g.*, Brane Decl. Exs. E (Tennessee AG Trial Ex. DX1063) and F (KGM Trial Ex. 7816). The disclosed witnesses who led Tucson high schools, Mr. Armenta (Cholla High School) and Ms. Rodriguez (Tucson High Magnet), last served as principals in 2021–22. Mr. Estrella (Sahuaro High School) and Ms. Ray (Santa Rita High School) can tell the jury what principals at two more Tucson high schools have experienced, and can speak to those conditions both before and after the recent changes Defendants tout.

---

[4] The Court rejected the same attack on an administrator's affidavit in *Breathitt* and held that challenges to the inputs behind lost-time estimates go to "weight and credibility for a jury." ECF No. 2728 at 20–21; ECF No. 2750 at 10.

[5] No one can know precisely what Defendants' witnesses will say at trial, but if they tell the jury that Tucson has no evidence of classroom or school-site disruption, or that Tucson's diverted-time damages lack firsthand support, Tucson could ask the Court for leave to call rebuttal witnesses to answer that testimony.

**2. The Jury Should Hear the Whole Story.**

Defendants contend that the principals add nothing because 18 other disclosed witnesses have knowledge of the impact of social media on school operations. Mot. at 2. First, those witnesses are overwhelmingly district-level administrators, the assistant superintendents and directors whose knowledge Defendants' experts dismiss as second-hand. Ex. A at 4–7. Second, the one-sentence descriptions Defendants point to are high-level and general, and each witness's testimony will be more nuanced and specific to their personal experience and knowledge base. More fundamentally, "the mere fact that two pieces of evidence might go to the same point would not . . . necessarily mean that only one of them might come in"; a party has a legitimate "need for evidentiary richness and narrative integrity in presenting a case." *Old Chief v. United States*, 519 U.S. 172, 183 (1997). "A syllogism is not a story," and jurors "can feel put upon at being asked to take responsibility knowing that more could be said than they have heard." *Id.* at 189. And the "public policy favoring disposition of cases on their merits" supports permitting the witnesses. *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997).

**B. Any Prejudice Is Modest and Can Be Fully Cured Before Trial.**

**1. There Is No Genuine Surprise.**

Defendants' prejudice argument rests on the premise that principals are "a new category of witnesses," Mot. at 1, which the Court has already rejected. Brane Decl. Ex. A (2025 Tr.) at 31:2–11, 36:11–14, 38:14–15. Tucson's custodians include a current principal and three former principals, and several custodians who held other school-site roles during the relevant period; the Court permitted Tucson's Dean of Students, a school-level administrator, to testify; and other bellwether districts disclosed and produced principals for deposition. *Supra* Part II.A–B. Any school-level discovery Defendants needed to test such testimony was available during fact discovery, and it was taken. Indeed, Tucson's productions already include *more than 1,400 documents that include Mr. Estrella and more than 1,200 for Ms. Ray*. Brane Decl. ¶ 18. Nor will Defendants need to rebuild their expert case. *Contra* Mot. at 7. Their experts have already opined on how much time a Tucson high school principal does or does not spend on these issues. Brane Decl. Ex. B (Moore Rpt.) ¶¶ 9, 106.

**2. The Cure Is Already Underway and Will Be Complete Well Before Trial.**

The prejudice Defendants identify—the absence of custodial files and depositions, Mot. at 7—is precisely the kind that straightforward discovery cures. Tucson expects to complete production of both custodial files by Thanksgiving and to complete both depositions in the first half of December, before final witness lists are due on December 17 and nearly two months before jury selection. Brane Decl. ¶ 12; ECF No. 3542 at 3–4. Defendants' own alternative proposal, which contemplates depositions within weeks of the Court's ruling, confirms that this discovery fits within the pretrial schedule. Mot. at 9.

The parties anticipated this kind of pretrial discovery. The Priority Witness Order provides that if a bellwether district "includes a non-Priority Witness on their Trial Witness List," it "shall make that witness available for a deposition of up to four and one-half (4.5) hours at a mutually agreed-upon time." ECF No. 1752 ¶ 3. Defendants read that provision to reach only previously disclosed witnesses, Mot. at 8, but its text contains no such limit. At a minimum, it reflects the parties' shared expectation that trial-listed witnesses might need to be deposed in the months or weeks before trial.

This Court has previously treated a deposition as the remedy for a late-identified witness. In *Epic Games, Inc. v. Apple Inc.*, the Court denied a motion to exclude three third-party witnesses roughly three weeks before trial, explaining that a Rule 37 sanction for a Rule 26 violation is "remedied by providing the party an opportunity for a deposition." 2021 WL 1375860, at *1–2 (N.D. Cal. Apr. 12, 2021) (citing, *e.g.*, *Bookhamer v. Sunbeam Prods. Inc.*, 2012 WL 6000230, at *3 (N.D. Cal. Nov. 30, 2012) (unjustified, harmful nondisclosure remedied by deposition)). In this MDL, the Court permitted late-produced expert materials on the condition that Meta could take updated depositions, because "[t]he point of the depositions is to eliminate the prejudice to Meta." ECF No. 3244 (Pretrial Order No. 5) at 2. And in 2025, when the Court denied exclusion of Tucson's school-level administrator despite her being disclosed at the end of discovery, it ordered discovery on that witness to cure any prejudice—discovery the parties promptly completed. ECF No. 2055 at 3. *See also Palantir Techs. Inc. v. Abramowitz*, 639 F. Supp. 3d 981, 989 (N.D. Cal.

2022) (ordering pretrial deposition rather than exclusion). Once the depositions are taken, there will be no "surprises" at trial. *See* Mot. at 8.

**3. Trial Will Not Be Disrupted, and Defendants' Authorities Are Inapposite.**

Two half-day depositions, completed nearly two months before trial, will not "throw[] a wrench into the machinery of trial." *Ollier*, 768 F.3d at 863. The trial date is unaffected. Defendants say they should not have to "divert their trial preparation resources" to this work while preparing two bellwether cases. Mot. at 1, 7. But the parties are already absorbing a far larger task in the same window, one that stems from Meta's own misapplication of the attorney-client privilege throughout discovery. Under the Court's October 20, 2026 order, Meta must re-review, under the supervision of a court-appointed special master, the documents it withheld in full or redacted as privileged, at a pace of at least 20,000 documents per week, and must produce downgraded documents to Plaintiffs every week through December 30, 2026, with rulings, objections, and appeals proceeding alongside. ECF No. 3599 at 2 & ¶¶ 1, 1(e)–(h), 2. While Meta's burden from this task is of its own making, Tucson must commit considerable resources to review each of those productions as it arrives and evaluate documents for trial. By comparison, reviewing two custodial files and taking two half-day depositions is modest.

Defendants' cases involved trials that were days or weeks away, dozens of witnesses, third parties, or no offered cure. *See Pinterest, Inc. v. Pintrips, Inc.*, No. 13-cv-04608-HSG, 2015 WL 2268498, at *7 (N.D. Cal. May 14, 2015) (trial "only a few days away"); *McCollum*, *v. UPS Ground Freight Inc.*, No. CV11-0961-PHX-DGC, 2013 WL 105225, at *1, *3 (D. Ariz. Jan. 9, 2013) (exclusion about a week before trial); *T.R. v. Howard*, No. CV 20-276 GBW/JHR, 2024 WL 837133, at *1 (D.N.M. Feb. 28, 2024) (five weeks before trial; two of seventeen challenged witnesses struck); *Ollier*, 768 F.3d at 862–63 (38 witnesses; substantial justification not argued as to most); *Carl Zeiss X-Ray Microscopy, Inc. v. Sigray, Inc.*, No. 21-cv-01129-EJD, 2025 WL 974936, at *2–3 (N.D. Cal. Apr. 1, 2025) (third-party customer witnesses; no deposition offered); *Davis v. Clients on Demand, LLC*, No. 2:23-cv-10541-MWC-SSC, 2026 WL 712980, at *3 (C.D. Cal. Feb. 19, 2026) (eight witnesses and nineteen documents; no cure offered).

**C. Tucson Acted in Good Faith.**

Nothing in the record suggests "bad faith or willfulness." *Liberty*, 41 F.4th at 1192. Tucson did not conceal these witnesses or spring them on Defendants at trial. It identified them on the Court-ordered preliminary witness list nearly five months before trial, described their testimony, and offered files and depositions at the first opportunity. Tucson does not contend that a preliminary trial witness list substitutes for a Rule 26 disclosure, *see* Mot. at 8; the point is that the list gave Defendants notice in time to cure.

Tucson acknowledges that the disclosure is late, but the timing has an explanation. Tucson expected to list Mr. Armenta, who led Cholla High School for thirteen years, to provide the perspective of a longtime high school principal. He left the District at the end of the 2025–26 school year and was never deposed, so his testimony cannot be presented by designation, and he lives in Arizona, beyond the reach of a trial subpoena. Fed. R. Civ. P. 45(c)(1)(A); Brane Decl. ¶ 4. Mr. Estrella and Ms. Ray replace that testimony; they do not add a new type of witness. And unlike Mr. Armenta, they can speak to current conditions. *See* Part III.A.1. Tucson's investigation and understanding of the evidence have also continued to develop, informed by the trials that have taken place since discovery closed, as Tucson evaluates how best to present its case to the jury. Tucson of course knew that Mr. Estrella and Ms. Ray were among its employees, *see* Mot. at 2–3, 6, but knowing who works for a district of over 7,500 employees is not the same as knowing who the right witnesses are for trial. Tucson's counsel first spoke with these principals only recently; until then, counsel did not know what they knew or whether they would testify. Brane Decl. ¶7. Tucson takes seriously the Court's admonition about late disclosures. Brane Decl. Ex. A (2025 Tr.) at 29:11. But the question under Rule 37(c)(1) is not whether Tucson could have listed them sooner; it is whether Defendants will be unfairly prejudiced at trial. They will not.

Defendants' own conduct confirms that late-identified witnesses are often handled through a cure, not exclusion. Meta first disclosed Dr. Bryce Bartlett, a Meta Research Director expected to testify "within the scope of his personal knowledge," on March 17, 2026, nearly a year after fact discovery closed. Brane Decl. ¶ A & Ex. G at 2. Tucson did not move to exclude him. Instead, it attended his deposition, noticed and led by the Utah Attorney General's office, so that a second

deposition would be unnecessary if Meta listed him for trial. *Id.* ¶ 20. Meta did list him, as both a live fact witness and a non-retained expert. ECF No. 3497 at 6, 12. If the rule were what Defendants say—that a trial witness must have been disclosed during fact discovery--Dr. Bartlett could not testify either; hence if the Court adopts that rule, it should apply it to him as well. Meta also identified two employees on its September 14, 2026 preliminary trial witness list who had never been custodians or deponents. ECF No. 3497 at 7-8 (identifying Kate Gotimer and Brad Ruderman). Although Meta withdrew them a month later, their inclusion demonstrates that Meta agrees that, in some circumstances, trial witnesses might not be identified until after discovery. Indeed, Meta's first witness at the recent trial of claims brought by the Tennessee Attorney General Office against Meta was first identified just over three months before trial and was neither a document custodian nor a deponent. Brane Decl. ¶ 21 & Ex. H. And Defendants' own list here expressly reserved the right to "amend or supplement." ECF No. 3497 at 2.[6]

## IV. CONCLUSION

Rule 37(c)(1) authorizes a remedy "instead of" exclusion. Tucson proposes to produce Mr. Estrella's and Ms. Ray's custodial files by Thanksgiving and to make both principals available for depositions in early December. That schedule completes this discovery before final witness lists are due. Brane Decl. ¶ 12. Mr. Estrella and Ms. Ray give the jury the building-level testimony Defendants say Tucson's case lacks, and any prejudice from the timing of their disclosure can be cured well before trial. Tucson respectfully requests that the Court deny the Motion and permit both witnesses to testify once their files are produced and they have been made available for depositions.[7]

---

[6] Charleston's separate disclosure, *see* Mot. at 1–2, 9, involves a different district and a later trial and will be decided on its own record.

[7] Defendants also ask the Court to preclude Tucson from calling "any other newly-disclosed witnesses." Mot. at 9. That request asks for a ruling on witnesses who are not before the Court. Whether a later-identified witness may testify depends on who the witness is, when and why the witness was identified, what the opposing party already knew, and whether any prejudice can be cured. Those questions call for a witness-by-witness decision under Rule 37(c)(1), not a categorical bar entered in advance. Indeed, that is contrary to the Court's guidance leading up to the Attorneys' General trial that rebuttal and impeachment witnesses may be added to the extent the Court allows. Mot. at 8.

Dated: October 29, 2026

RESPECTFULLY SUBMITTED

**WAGSTAFF & CARTMELL LLP**

*/s/ Thomas P. Cartmell*
Thomas P. Cartmell

Thomas P. Cartmell (*pro hac vice*)
Jonathan P. Kieffer (*pro hac vice*)
Austin Brane, SBN 286227
Michael P. Cutler, SBN 270663
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel: (816) 701-1100
tcartmell@wcllp.com
jpkieffer@wcllp.com
abrane@wcllp.com
mcutler@wcllp.com

Kirk J. Goza (*pro hac vice*)
Brad Honnold (*pro hac vice*)
**GOZA & HONNOLD LLC**
9500 Nall Ave., Ste 400
Overland Park, KS 66207
Tel. (913) 451-3433
kgoza@gohonlaw.com
bhonnold@gohonlaw.com

Joseph G. VanZandt (*pro hac vice*)
Davis Vaughn (*pro hac vice*)
Jennifer Emmel (*pro hac vice*)
Clinton Richardson (*pro hac vice*)
Seth Harding (*pro hac vice*)
**BEASLEY ALLEN CROW**
**METHVIN PORTIS & MILES, LLC**
234 Commerce Street
Montgomery, AL 36103
Tel: 334-269-2343
Joseph.VanZandt@BeasleyAllen.com
Davis.Vaughn@BeasleyAllen.com
Jennifer.Emmel@BeasleyAllen.com
Clinton.Richardson@BeasleyAllen.com
Seth.Harding@BeasleyAllen.com

***Counsel for Plaintiff Tucson Unified School District***

## ATTESTATION

I, Austin Brane, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: October 29, 2026

By: */s/ Austin Brane*

**Austin Brane**

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing on October 29, 2026, using the Court's ECF filing system, thereby sending notice of the filing to all counsel of record.

By: */s/Austin Brane*

**Austin Brane**