# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | | |
|---|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION, | ) | 22-MD-03047 YGR |
| | ) | OAKLAND, CALIFORNIA |
| THIS FILING RELATES TO: | ) | JUNE 13, 2025 |
| ALL ACTIONS. | ) | PAGES 1-54 |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

FOR THE PLAINTIFFS: LIEFF CABRASER HEIMANN & BERNSTEIN LLP
BY: LEXI J. HAZAM
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

MOTLEY RICE LLC
BY: ESTHER E. BEREZOFSKY
210 LAKE DRIVE EAST, SUITE 101
CHERRY HILL, NEW JERSEY 08002

APPEARANCES CONTINUED ON THE NEXT PAGE

OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
CERTIFICATE NUMBER 9595

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED WITH COMPUTER

APPEARANCES (CONTINUED)

FOR THE PLAINTIFFS: MOTLEY RICE LLC
BY: ANNIE KOUBA
28 BRIDGESIDE BOULEVARD
MT. PLEASANT, SOUTH CAROLINA 29464

LEIFF CABRASER HEIMANN & BERNSTEIN LLP
BY: KELLY K. MCNABB
250 HUDSON STREET, 8TH FLOOR
NEW YORK, NEW YORK 10013

WAGSTAFF & CARTMELL LLP
BY: AUSTIN P. BRANE
4740 GRAND AVENUE, SUITE 300
KANSAS CITY, MISSOURI 64112

BEASLEY ALLEN CROW METHVIN
PORTIS & MILES
BY: CLINTON K. RICHARDSON
DAVIS S. VAUGHN
218 COMMERCE STREET
MONTGOMERY, ALABAMA 36104

LEVIN SEDRAN AND BERMAN
BY: MICHAEL M. WEINKOWITZ
510 WALNUT STREET, SUITE 500
PHILADELPHIA, PENNSYLVANIA 19106

LAW OFFICES OF A. CRAIG EILAND
BY: ALLAN CRAIG EILAND
2211 THE STRAND, SUITE 201
GALVESTON, TEXAS 77550

CARELLA, BYRNE, CECCHI, OLSTEIN,
BRODY, AGNELLO
BY: MICHAEL A. INNES
5 BECKER FARM ROAD
ROSELAND, NEW JERSEY 07068

APPEARANCES CONTINUED ON THE NEXT PAGE

APPEARANCES (CONTINUED)

| | |
|---|---|
| FOR DEFENDANT META PLATFORMS, INC.: | COVINGTON & BURLING<br>BY: ASHLEY M. SIMONSEN<br>1999 AVENUE OF THE STARS, SUITE 3500<br>LOS ANGELES, CALIFORNIA 90025 |
| | BY: GREGORY L. HALPERIN<br>620 EIGHTH AVENUE<br>NEW YORK, NEW YORK 10018 |
| | BY: PAUL W. SCHMIDT<br>850 TENTH STREET, NW<br>WASHINGTON, D.C. 20001 |
| FOR DEFENDANT SNAP, INC.: | MUNGER TOLLES & OLSEN LLP<br>BY: JONATHAN H. BLAVIN<br>560 MISSION STREET, 27TH FLOOR<br>SAN FRANCISCO, CALIFORNIA 94105 |
| | KIRKLAND & ELLIS<br>BY: CATHERINE MULLALEY<br>200 CLARENDON STREET<br>BOSTON, MASSACHUSETTS 02116 |
| | BY: JOHN J. NOLAN<br>601 LEXINGTON AVENUE<br>NEW YORK, NEW YORK 10022 |
| FOR DEFENDANT TIKTOK, INC.: | KING & SPALDING<br>BY: GEOFFREY DRAKE<br>1180 PEACHTREE STREET<br>ATLANTA, GEORGIA 30309 |
| | BY: BAILEY J. LANGNER<br>50 CALIFORNIA STREET, SUITE 3300<br>SAN FRANCISCO, CALIFORNIA 94111 |

APPEARANCES CONTINUED ON THE NEXT PAGE

APPEARANCES (CONTINUED)

FOR DEFENDANT YOUTUBE/GOOGLE:

WILLIAMS & CONNOLLY
BY: JOSEPH ANDREW KEYES
680 MAINE AVENUE, SW
WASHINGTON, D.C. 20024

WILSON, SONSINI, GOODRICH & ROSATI
BY: SAMANTHA ALEXANDRA-BOOTH MACHOCK
12235 EL CAMINO REAL
SAN DIEGO, CALIFORNIA 92130

MORGAN LEWIS BOCKIUS
BY: YARDENA R. ZWANG-WEISSMAN
300 SOUTH GRAND AVENUE, 22ND FLOOR
LOS ANGELES, CALIFORNIA 90071

OAKLAND, CALIFORNIA JUNE 13, 2025

P R O C E E D I N G S

(COURT CONVENED AT 8:02 A.M.)

THE COURT: GOOD MORNING, EVERYONE.

THE CLERK: THANK YOU. YOU MAY BE SEATED.

THESE PROCEEDINGS --

THE COURT: GO AHEAD.

THE CLERK: THESE PROCEEDINGS ARE BEING COURT REPORTED BY THIS COURT. ANY OTHER RECORDING OF THESE PROCEEDINGS, EITHER BY VIDEO, AUDIO, INCLUDING SCREENSHOTS OR OTHER COPYING OF THE HEARING, IS STRICTLY PROHIBITED.

YOUR HONOR, CALLING THE CIVIL MATTER CASE NUMBER 22-MD-03047-YGR, IN THE CASE OF SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION.

TODAY'S APPEARANCES ON THE SIGN-IN SHEETS WILL FORM PART OF THE POSTED MINUTES.

COUNSEL, CAN YOU PLEASE STEP FORWARD AND STATE YOUR APPEARANCES.

THE COURT: SO DON'T DO THAT. WE'VE GOT A COURTROOM DEPUTY IN TRAINING.

SO THANK YOU VERY MUCH. THE ATTORNEY SHEET IS ALL I NEED, AND WHAT THEY WILL DO IS IDENTIFY THEMSELVES TO THE EXTENT THAT THEY'RE SPEAKING, AND THAT WILL HAPPEN AT THE MICS.

OKAY. I'M A LITTLE BIT SHOCKED HOW MANY PEOPLE ARE HERE. I WAS NOT EXACTLY SURE THAT THIS WAS GOING TO BE A HUGE

HEARING. SO IS IT SUMMER ASSOCIATE WEEK?

(LAUGHTER.)

THE COURT: OKAY. WELL, FOR ALL YOU SUMMER ASSOCIATES, WELCOME TO THE COURTHOUSE.

OKAY. I APPRECIATE YOU ALL GETTING HERE EARLY. I NEED TO GET OVER TO THE NINTH CIRCUIT THIS MORNING, AND I DIDN'T WANT US TO BE RUSHED. AND WHEN I CHANGED THE TIME, I JUST DIDN'T EXACTLY KNOW HOW MUCH TIME WE WERE GOING TO NEED, SO IT WAS EITHER 8:00, OR 2:00 O'CLOCK THIS AFTERNOON, AND I FIGURED THOSE GOING TO THE EAST COAST WOULD PREFER THE EARLY RISE RATHER THAN A FLIGHT TONIGHT OR THE RED EYE.

OKAY. SO I'VE SPENT A CONSIDERABLE AMOUNT OF TIME WITH YOUR FILINGS ON THE BELLWETHER. I KNOW THAT WE HAVE -- IN ADDITION TO THAT, THERE IS A MOTION. I'LL ADDRESS THAT MOTION AFTER THE BELLWETHER ISSUE BECAUSE IT MAY OR MAY NOT BE IMPACTED.

AND THEN THERE'S AN ISSUE, I THINK, WITH PLAINTIFF ABRAHAM, PERHAPS, WHO HAD QUESTIONS ABOUT WHETHER OR NOT THINGS REMAIN STABLE IN THAT CASE. IS THAT --

MS. SIMEON: GOOD MORNING, YOUR HONOR.

ASHLEY SIMONSEN, COVINGTON, FOR THE META DEFENDANTS.

I BELIEVE THERE IS AN ADMINISTRATIVE MOTION PENDING THAT WAS FILED BY THE BOIES SCHILLER FIRM WITH RESPECT TO THE ABRAHAM CLASS ACTION, WHICH META OPPOSED AND IT IS PENDING BEFORE YOUR HONOR. OUR UNDERSTANDING IS IT WAS NOT SET FOR

HEARING OR ANY KIND OF ARGUMENT TODAY.

THE COURT: IS SOMEONE HERE FROM BOIES SCHILLER? NO? OKAY. I MAY OR MAY NOT TAKE THAT UP.

SO ANYHOW, PRIMARILY WHAT I HAVE IS THE BELLWETHERS.

ANYTHING ELSE THAT YOU HAVE ON THE AGENDA? I DIDN'T SEE ANYTHING ELSE ON YOUR FILING.

MS. HAZAM: NOT FOR PLAINTIFFS, YOUR HONOR.

MS. SIMONSEN: NOTHING FROM DEFENDANTS' PERSPECTIVE, YOUR HONOR.

THE COURT: OKAY. I DID SEND A NOTE TO JUDGE KANG ASKING IF THERE WAS ANYTHING I NEEDED TO DO GIVEN THE, WHAT I -- WE GET -- WE GET DAILY, DAILY UPDATES OF THINGS THAT ARE IN THE NEWS, AND THERE WAS SOME NEWS ABOUT A HEARING IN THIS CASE IN FRONT OF HIM YESTERDAY.

SO I DON'T KNOW IF HE WANTS ME TO DO ANYTHING ABOUT IT TODAY, BUT IF HE DOES, I'M SURE HE'LL RESPOND TO MY EMAIL AND WE'LL ADDRESS THAT, TOO.

OKAY. SO WITH RESPECT TO THE BELLWETHERS THEN, WHO'S GOING TO SPEAK ON THAT ISSUE?

MS. HAZAM: YOUR HONOR, FOR PLAINTIFFS, MICHAEL WEINKOWITZ WILL SPEAK ABOUT THE SCHOOL BELLWETHERS, AND I WILL SPEAK ABOUT THE PERSONAL INJURY BELLWETHERS.

THIS IS LEXI HAZAM FOR PLAINTIFFS.

MS. SIMONSEN: YOUR HONOR, FOR THE DEFENDANTS, ANDY KEYES WILL ARGUE FOR THE SCHOOL DISTRICT BELLWETHERS, AND

GREG HALPERIN WILL ARGUE FOR THE PERSONAL INJURY BELLWETHERS.

THE COURT: OKAY. LET'S START WITH THE SCHOOL DISTRICT --

MR. KEYES: ONE CORRECTION. I'M SORRY, YOUR HONOR.

THE COURT: SO DO NOT SPEAK WITHOUT BEING AT THE MICROPHONE.

MR. KEYES: MY APOLOGIES, YOUR HONOR.

ANDREW KEYES FROM WILLIAMS & CONNOLLY.

I WILL BE ADDRESSING THE MOTION IF THE COURT HEARS ARGUMENT.

BAILEY LANGNER WILL BE ADDRESSING ARGUMENT ON TRIAL BELLWETHER SELECTION FOR THE SCHOOL DISTRICTS.

THE COURT: OKAY.

MR. KEYES: THANK YOU.

THE COURT: SO LET'S DO THE SCHOOL DISTRICTS FIRST.

AND, AGAIN, JUST FOR THE COURT REPORTER'S BENEFIT, MR. WEINKOWITZ.

MR. WEINKOWITZ: MIKE WEINKOWITZ ON BEHALF OF THE PLAINTIFFS.

MS. LANGNER: GOOD MORNING, YOUR HONOR.

BAILEY LANGNER FROM KING & SPALDING FOR THE DEFENDANTS.

THE COURT: OKAY. I'VE ALREADY MADE SOME DECISIONS JUST BASED ON YOUR FILINGS. I WILL ASK SOME QUESTIONS WITH RESPECT TO WHAT'S LEFT.

OKAY. A NUMBER OF YOU -- AND I WANT TO THANK THE

DEFENDANTS IN PARTICULAR FOR THE CHART YOU GAVE ME -- THAT WAS INCREDIBLY HELPFUL -- WHICH I ANNOTATED WITH INFORMATION THAT I HAD FROM THE PLAINTIFFS.

AND WHEN MY TERRIFIC LAW CLERK PUT IT IN AN EXCEL FORMAT FOR ME, IT ALLOWED ME TO MANIPULATE IT, WHICH I LIKED.

SO HERE'S WHAT I'VE DECIDED: FIRST, I NEED TO HAVE A -- LET ME JUST SAY THAT THE FACTORS THAT I LOOKED AT WERE THE FACTORS THAT YOU ALL GAVE ME, RIGHT? SO THE SIZE OF THE DISTRICT, WHETHER OR NOT IT WAS -- THE SCHOOL DEMOGRAPHICS; THE COMMUNITY IN WHICH THEY SAT OR THEY SERVED; RELATIVE LOCATION; PERCENTAGE OF REPRESENTATIVENESS IN TERMS OF THE MDL'S.

AND I ALSO AM TRYING TO ACCOMMODATE YOUR PICKS, BECAUSE IF I DON'T HAVE SOME KIND OF BALANCE, THEN WHEN YOU -- IF YOU ATTEMPT TO SETTLE THESE CASES, YOU'RE GOING TO ALL BE ARGUING THAT YOU DIDN'T HAVE YOUR PICKS AND SO THEY'RE NOT REPRESENTED. SO THERE HAS TO BE BALANCE.

I NEED A HIGH INCOME DISTRICT, AND I AM NOT GOING TO CHOOSE THE UTAH SCHOOL DISTRICT, PERIOD. THERE IS JUST TOO MUCH THAT IS DIFFERENT ABOUT UTAH AND UNIQUE ABOUT UTAH THAT IS NOT REPRESENTATIVE NECESSARILY OF THE OTHER DISTRICTS.

SO THAT LEAVES ONE OPTION, AND THAT OPTION IS HARFORD.

HARFORD WAS A PLAINTIFF PICK. PLAINTIFFS OBJECTED, BUT THEY REALLY OBJECTED BECAUSE THEY WANTED UTAH, NOT FOR ANY OTHER REASON.

SO HARFORD IS IN.

NEXT -- AND THAT'S MARYLAND.

NEXT, PLAINTIFFS OBJECT TO HAVING TWO FROM MARYLAND GIVEN THE LEGAL ISSUES THAT ARE HEADING THROUGH THE COURTS THERE, WHICH I THINK IS APPROPRIATE.

SO I NEED A DISTRICT THAT'S VERY LARGE, AND IT CAN'T BE MARYLAND, SO IT CAN'T BE BALTIMORE, WHICH LEAVES ME WITH DEKALB, AND THAT WAS A DEFENSE PICK TO WHICH PLAINTIFFS AGREED.

SO DEKALB IS IN. THAT'S NUMBER TWO.

I NEED A SMALL DISTRICT, AND IN TERMS OF THE OPTIONS FOR A SMALL DISTRICT, I'M ONLY LEFT WITH -- AND I DON'T KNOW IF I'M SAYING IT RIGHT, BREATHITT FROM -- GOSH, EVEN WITH MY GLASSES THIS IS TOO SMALL -- KENTUCKY.

SO BREATHITT IS IN.

NOW WHAT I HAVE IS A DEFENSE PICK, A PLAINTIFFS' PICK, AND A DEFENSE PICK TO WHICH PLAINTIFFS AGREE. I HAVE MARYLAND, GEORGIA, AND KENTUCKY. I HAVE A HIGH INCOME, MEDIUM INCOME, AND LOW INCOME. I HAVE SOMETHING THAT'S REPRESENTATIVE OF 85 PERCENT OF THE MDL'S IN THE EAST, 42 PERCENT OF THE RURAL MDL'S, AND 40 PERCENT OF THE MID-ATLANTIC AND EAST MDL'S.

I NEED TWO MORE.

SO AT THIS POINT IN THE ANALYSIS, WHAT I DON'T HAVE IS -- LET'S SEE. I NEED AN URBAN, AND I NEEDED MEDIUM SIZE.

SO -- AND I HAVE TWO PICKS LEFT.

IN TERMS OF MEDIUM SIZE, THERE WERE THREE OPTIONS: IRVINGTON, ST. CHARLES, AND SPARTANBURG.

IN TERMS OF URBAN, THERE WERE TWO CHOICES: TUCSON AND IRVINGTON.

I GET TWO FOR THE PRICE OF ONE WITH IRVINGTON. IRVINGTON IS IN.

SO NOW I HAVE MEDIUM, URBAN, HUGELY MINORITY, SO 99 PERCENT MINORITY, 67 PERCENT BLACK, 32 PERCENT LATINO.

IT IS LOW INCOME, AND IT IS -- IT BRINGS IN NEW JERSEY, WHICH IS NORTHEAST.

THAT WAS A DEFENSE PICK.

SO NOW I HAVE THREE DEFENSE PICKS AND ONLY ONE PLAINTIFFS' PICK.

SO MY LAST CHOICE -- AND THIS IS THE ONE THAT YOU GET TO TALK ABOUT -- I'M GOING TO TRY TO ACCOMMODATE A PLAINTIFFS' PICK. THERE ARE TWO OPTIONS LEFT: TUCSON AND CHARLESTON.

TUCSON IS URBAN. I HAVE ONE OF THOSE. CHARLESTON IS A MIX OF ALL THREE. TUCSON IS 65 PERCENT LATINO, 18 PERCENT WHITE. CHARLESTON, 50 PERCENT WHITE, 50 PERCENT MINORITY, WITH 31 PERCENT BLACK, 13 PERCENT LATINO.

I HAVE NO -- NO INFORMATION FROM ANYBODY ABOUT WHETHER A HIGHLY LATINO POPULATION MAKES A DIFFERENCE IN TERMS OF REPRESENTATIVENESS IN THIS MDL.

TUCSON IS LOW INCOME, BUT I ALREADY HAVE TWO OF THOSE.

CHARLESTON IS MEDIUM INCOME, OF WHICH I ONLY HAVE ONE.

CHARLESTON DOESN'T HAVE PUBLIC NUISANCE, WHICH WOULD BE INFORMATION THAT IS SEPARATE AND DISTINCT FROM THE OTHERS.

IN TERMS OF DAMAGES, IT'S EFFECTIVELY -- IT'S NOT ALL THAT DIFFERENT BETWEEN THE TWO.

AND IN TERMS OF THE BELL SCHEDULE POLICIES THAT WERE IDENTIFIED BY THE DEFENSE, CHARLESTON WOULD BRING IN SOMETHING DIFFERENT. THEY HAVE BELL-TO-BELL FOR ALL GRADES, WHEREAS THE ONLY ONE THAT HAS BELL-TO-BELL FOR ALL GRADES IS HARFORD, BUT THAT'S ONLY K THROUGH 8. THAT'S NOT IN HIGH SCHOOL.

TUCSON IS SIMILAR TO THE OTHERS, OR AT LEAST IT'S SIMILAR TO BREATHITT IN THAT RESPECT.

SO THOSE ARE THE LAST TWO THAT I'M THINKING ABOUT. THREE HAVE BEEN -- FOUR HAVE BEEN DECIDED. THE LAST ONE COMES WITHIN ONE OF THOSE THREE.

ALL RIGHT. NOW YOU CAN SPEAK. WE'LL START WITH PLAINTIFFS.

MR. WEINKOWITZ: YOUR HONOR, MIKE WEINKOWITZ ON BEHALF OF THE PLAINTIFFS.

THE PLAINTIFFS WOULD --

THE COURT: WELL, LET ME ALSO SAY, BEFORE YOU START, MR. WEINKOWITZ, TUCSON HAS A DISCOVERY PROBLEM.

GO AHEAD.

MR. WEINKOWITZ: OKAY.

WE WOULD CHOOSE TUCSON, AND I'LL EXPLAIN WHY. IT PROVIDES GEOGRAPHIC DIVERSITY --

THE COURT: I -- AT SOME POINT I SAW A MAP.

MR. WEINKOWITZ: I HAVE IT FOR YOU.

THE COURT: ALL RIGHT. CAN YOU TURN ON THE OVERHEAD.

MR. WEINKOWITZ: YOUR HONOR, WITH JORDAN OUT, AND IF TUCSON IS NOT IN, WHAT WILL HAPPEN IS THIS MDL COURT SITTING IN CALIFORNIA WILL HAVE NO BELLWETHER CASES FROM WEST OF THE MISSISSIPPI.

AND WHY DOES THAT MATTER?

IT MATTERS BECAUSE 40 PERCENT OF THE CASES IN THIS MDL ARE FROM WEST OF THE MISSISSIPPI.

TUCSON IS NOT AN OUTLIER. TUCSON REPRESENTS A KEY PART OF THIS COUNTRY'S PUBLIC EDUCATION SYSTEM. IT'S NEEDED TO BALANCE THE POOL THAT YOUR HONOR HAS PUT TOGETHER, BECAUSE ALL OF THE OTHER CASES ARE TO THE EAST OF THE MISSISSIPPI, AND EXCLUDING TUCSON WOULD LEAVE ONE ENTIRE HALF OF THE COUNTRY OUT OF THE BELLWETHER POOL, AND THAT IS SIMPLY NOT BALANCED.

THE DEFENDANTS POINT TO UNIQUE FACTORS AND SAY THAT THESE UNIQUE FACTS AND CIRCUMSTANCES MAKE TUCSON AN OUTLIER.

AND THAT UNIQUE FACT AND CIRCUMSTANCE, THERE'S TWO: ONE IS THE DESEGREGATION ISSUE; AND THE OTHER IS THE DISCOVERY ISSUE.

THE DISCOVERY ISSUE WILL BE ADDRESSED PRIMARILY BY MR. AUSTIN, AUSTIN BRANE, WHOSE LAST NAME I FORGOT. I CAN ADDRESS THAT, TOO. THERE IS NO DISCOVERY ISSUE WITH REGARD TO TUCSON.

BUT I -- WHAT I'D LIKE TO ADDRESS FIRST IS THE DESEGREGATION ISSUE.

WHAT THE DEFENDANTS REALLY HAVE DONE IS REPACKAGED ALTERNATIVE CAUSATION AND CALLED IT -- TO CALL IT A UNIQUE FACT AND CIRCUMSTANCES.

DEPENDING ON THE BELLWETHER DISTRICT IN THE POOL, WE'VE HEARD A DIZZYING ARRAY OF UNIQUE FACTS AND CIRCUMSTANCES, AND THE DESEGREGATION ISSUE IS JUST ONE THAT CAN BE ADDRESSED.

IN THE BELLWETHER POOL, WE -- IN ONE DISTRICT, THEY BLAME THE SINGLE DETERIORATING BUILDING MORE THAN ANOTHER INSTEAD OF SOCIAL MEDIA; AND IN ANOTHER, THEY BLAME A HOT CLASSROOM WITHOUT AIR CONDITIONING; IN ONE, THEY BLAME POVERTY, BUT THEN TURN AROUND IN ANOTHER AND THEY BLAME ENTITLED CHILDREN.

IN TUCSON, THE ISSUE THAT WAS RAISED WAS THE DESEGREGATION. THAT IS NOT ANYTHING THAT IS UNIQUE AND SHOULD RENDER TUCSON OUT OF THE -- OUT OF THE POOL.

FIRST, THE DESEGREGATION ORDER THAT THEY POINT TO AND THE UNITARY STATUS PLAN SIMPLY HAVE NO IMPACT ON THE CORE CLAIMS IN THIS CASE, WHETHER SOCIAL MEDIA IS A NUISANCE AND WHETHER DEFENDANTS ARE NEGLIGENT.

IN THEIR BRIEF, THE DEFENDANTS SPECULATE ABOUT SOME OVERLAP BETWEEN THE REQUIREMENT OF THE UNITARY STATUS PLAN AND SOME OF THE COSTS THAT TUCSON SEEKS TO RECOVER.

DEFENDANTS PROVIDE NO REAL DETAIL ABOUT THAT, AND EVEN IF THERE IS SOME OVERLAP, ALL THAT IS, THE DEFENDANTS RAISE, IS A POTENTIAL DISPUTE ABOUT HOW TO CALCULATE DAMAGES.

HOW TO CALCULATE DAMAGES IS SOMETHING THAT ARISES IN

NEARLY EVERY SINGLE CIVIL CASE. DISPUTES ABOUT CALCULATING DAMAGES ARE ROUTINELY ADDRESSED THROUGH EXPERT TESTIMONY, AND THIS CASE WILL BE NO DIFFERENT.

IF I WAS A BETTING MAN, I WOULD SAY THAT IN EVERY SINGLE SCHOOL DISTRICT CASE IN THIS MDL, THE DEFENDANTS WILL CHALLENGE THE CALCULATION OF DAMAGES.

EXPERT DISCOVERY IS IN ITS EARLY STAGES. WE HAVEN'T EVEN HAD THE DEFENDANTS' REPORTS YET. DEFENDANTS RAISE NOTHING MORE THAN A TEXTBOOK DAMAGES DISPUTE.

BEYOND A ROUTINE DAMAGE DISPUTE, DEFENDANTS RELY ON IRRELEVANT ALLEGATIONS TO CAST TUCSON IN A NEGATIVE LIGHT. LACKING ANY SUBSTANTIVE REASON TO STRIKE THE CASE, DEFENDANTS HIGHLIGHT TUCSON'S DESEGREGATION HISTORY. THEY MAKE HYPERBOLIC ARGUMENTS TO CONVINCE THE COURT THAT THEIR INSTITUTIONAL DISCRIMINATION WILL TAKE CENTER STAGE, CITING THINGS LIKE PAST DISPARITIES IN STUDENT DISCIPLINE AS AN EXAMPLE.

THEY WANT TO SHOW, AS THEY SAY IN THEIR BRIEF, THAT TUCSON HAS SPENT YEARS GRAPPLING WITH FUNCTIONALLY SEGREGATED SYSTEMS.

DEFENDANTS' OWN DATA SHOW A DIFFERENT STORY.

TUCSON TRACKS DISCIPLINE RATIOS --

THE COURT: I CAN'T SEE THAT.

MR. WEINKOWITZ: OH, I'M SORRY.

THE COURT: NO, IT'S NOT THAT -- I MEAN, I SEE SOMETHING IS THERE, BUT YOU DO NEED TO ADJUST IT AT THE TOP. THERE'S A LITTLE WHEEL.

MR. WEINKOWITZ: SURE. I CAN ALSO HAND A COPY UP IF THAT WOULD BE --

THE COURT: THAT'S FINE, BUT WE'VE GOT LOTS OF PEOPLE IN THE COURTROOM. JUST USE THE LITTLE LEVER ON THE TOP. NOPE.

MR. WEINKOWITZ: NO. THIS?

THE COURT: YEAH. AND THAT WILL HELP YOU FOCUS.

OTHER WAY MAYBE.

MR. CUENCO MAYBE CAN HELP YOU. THERE YOU GO.

MR. WEINKOWITZ: A LITTLE BETTER?

THE COURT: THERE YOU GO.

OH, IT WAS FINE UNTIL A MOMENT AGO.

THE CLERK: IT'S COMING INTO FOCUS, YOUR HONOR.

THE COURT: OKAY. AND IF YOU HAVE A COPY FOR ME, I'LL TAKE IT.

GO AHEAD.

MR. WEINKOWITZ: TUCSON TRACKS DISCIPLINE/RISK RATIOS, WHICH MEASURES HOW OFTEN STUDENTS IN A SPECIFIC GROUP ARE DISCIPLINED COMPARED TO WHITE STUDENTS.

IN 2021, THE RATIO FOR AFRICAN AMERICAN STUDENTS WAS 1.84.

AS OF 2023 SCHOOL YEAR, IT DECLINED TO 1.50. THAT'S MEASURABLE PROGRESS, THAT'S NOT CONJECTURE, AND IT SHOWS THAT THE DISTRICT IS ACTIVELY WORKING TO REDUCE DISPARITIES.

BUT MORE IMPORTANTLY, NONE OF THIS HAS ANY BEARING WHATSOEVER ON THE CASE. THE REFERENCES SERVE ONLY TO PAINT TUCSON IN A NEGATIVE LIGHT, EFFECTIVELY ARGUING THAT IT IS A

RACIST DISTRICT.

SUCH ARGUMENTS DON'T JUSTIFY REMOVING A GEOGRAPHICALLY IMPORTANT CASE FROM THE BELLWETHER POOL.

NEXT, DESEGREGATION IS A COMMON ISSUE ACROSS THE COUNTRY. NATIONALLY, THERE ARE OVER 300 U.S. SCHOOL DISTRICTS STILL OPERATING UNDER DESEGREGATION ORDERS, PRIMARILY IN ALABAMA, GEORGIA, MISSISSIPPI, FLORIDA, LOUISIANA, AND SOUTH CAROLINA.

TUCSON IS NOT AN OUTLIER. IT'S PART OF A BROAD, HISTORICALLY ROOTED PATTERN THAT AFFECT SCHOOL OPERATIONS ACROSS THIS COUNTRY.

THE DEFENDANTS' PICKS, ST. CHARLES AND DEKALB, THAT ARE BASED -- ARE IN STATES THAT SPECIFICALLY HAVE ACTIVE DESEGREGATION PLANS, AND THAT'S NOT A BAD THING, OBVIOUSLY.

EXCLUDING TUCSON UNDERMINES LATINO REPRESENTATION IN THIS MDL. TUCSON IS THE ONLY LATINO MAJORITY WESTERN URBAN DISTRICT --

THE COURT: HOW MANY -- SO, AGAIN, I DON'T HAVE -- I UNDERSTAND THAT IT IS PREDOMINANTLY LATINO. WHAT I DON'T KNOW IS WHAT PERCENTAGE OF THE CASES THAT HAVE BEEN FILED HAVE THAT KIND OF DEMOGRAPHIC.

MR. WEINKOWITZ: YOUR HONOR, I SHOULD HAVE ANTICIPATED THAT YOU WERE GOING TO ASK THAT, AND WE DID LOOK INTO THAT AND WE KNOW THAT IT'S AT LEAST OVER 30 PERCENT.

THE COURT: SO 30 PERCENT OF WHAT?

MR. WEINKOWITZ: 30 PERCENT OF THE OVERALL STUDENT

POPULATION -- 30 TO 35 PERCENT OF THE OVERALL STUDENT POPULATION IS MAJORITY LATINO OR IS LATINO.

SO REMOVING TUCSON WOULD ERASE A SIGNIFICANT DEMOGRAPHIC FROM THE BELLWETHER POOL.

THE COURT: WELL, THAT IT DOESN'T, I MEAN, BECAUSE IRVINGTON HAS 30 PERCENT.

DEKALB HAS -- LET'S SEE. DEKALB IS LOW AT 8 PERCENT. SO IT'S PRIMARILY BLACK.

AND THEN CHARLESTON, THE OTHER ONE I'M LOOKING AT, IS 13.

MR. WEINKOWITZ: IT'S 13 PERCENT, CORRECT, YOUR HONOR.

SO IN THE POOL, BASED ON THE --

THE COURT: IT ACTUALLY SEEMS TO BE PRETTY UNIQUE TO -- AND I'M NOT -- I HAVE TO TELL YOU RIGHT NOW, I'M NOT CONVINCED AT ALL ON THIS DESEGREGATION ARGUMENT, SO I'M NOT TAKING THAT INTO MUCH CONSIDERATION. I'M REALLY LOOKING MORE AT THESE OTHER OBJECTIVE ISSUES.

IT SEEMS TO BE, RELATIVE TO THE MDL'S THAT HAVE BEEN FILED, I MEAN, FOR INSTANCE, MUCH MORE LATINO THAN ANYBODY ELSE. I DON'T HAVE TEXAS LAWSUITS. I DON'T HAVE FLORIDA LAWSUITS. I DON'T HAVE ILLINOIS LAWSUITS WHERE -- AND I DON'T HAVE CALIFORNIA WHERE THAT POPULATION IS -- OR NEW MEXICO OR NEVADA.

MR. WEINKOWITZ: SO THE --

THE COURT: SO IT SEEMS TO BE A BIT UNREPRESENTATIVE

IN THAT WAY.

MR. WEINKOWITZ: WELL, LET'S TALK ABOUT TEXAS, AND I KNOW YOUR HONOR LIKES TEXAS.

THE COURT: I GREW UP IN TEXAS.

MR. WEINKOWITZ: YOU GREW UP IN TEXAS, RIGHT.

AND THERE IS A -- THE FIRST TEXAS SCHOOL DISTRICT CASE HAS BEEN FILED IN THIS MDL, AND ONE OF THE TEXAS LAWYERS, MR. EILAND, IS IN THE COURTROOM, AND HE TELLS ME THAT OVER THE SHORT ORDER, THERE WILL BE ANOTHER 60 TO 80 TEXAS SCHOOL DISTRICT LAWSUITS FILED IN THIS MDL. SO YOU'RE GOING TO HAVE A SIGNIFICANT NUMBER OF TEXAS LAWSUITS.

THERE ARE A NUMBER OF LAWSUITS FROM FLORIDA -- SCHOOL DISTRICTS FROM FLORIDA THAT HAVE FILED SUIT.

SO YOU WILL HAVE A SIGNIFICANT PROPORTION OF HISPANIC STUDENT POPULATIONS IN THIS MDL.

SO THAT IN AND OF ITSELF IS WHY TUCSON IS IMPORTANT, IN ADDITION TO THE FACT THAT YOU NEED REPRESENTATION FROM THE WEST SIDE OF THE -- FROM THE MIDDLE OF THE COUNTRY TO THE WEST.

ALL OF THE OTHER SCHOOL DISTRICTS THAT ARE IN THE POOL ARE EAST OF THE MISSISSIPPI. YOU NEED GEOGRAPHIC REPRESENTATION, AND EXCLUDING TUCSON WOULD BE REMOVING THE HISPANIC POPULATION, WHICH WILL BE HIGHLY REPRESENTED IN THIS MDL.

THE COURT: OKAY. WELL, THAT'S INFORMATION THAT WAS NOT PROVIDED TO ME.

MR. WEINKOWITZ: YOUR HONOR, I DID NOT KNOW THAT

UNTIL RECENTLY, FRANKLY.

THE COURT: OKAY. YOU MAY CONTINUE.

MR. WEINKOWITZ: ALL RIGHT.

SO WITH REGARD TO TUCSON'S COVID POLICY, THE DEFENDANTS ARGUE THAT TUCSON'S RESPONSE TO THE COVID-19 PANDEMIC IS NOT PARTICULARLY INFORMATIVE.

THAT IS NOT TRUE. TUCSON'S RESPONSE TO COVID DEMONSTRATES ITS REPRESENTATIVENESS IN THE MDL POOL. TUCSON HAD A TYPICAL COVID RESPONSE THAT MAKES IT REPRESENTATIVE. LIKE MOST SCHOOL DISTRICTS IN THE COUNTRY, TUCSON CLOSED ITS CAMPUSES AND WENT TO REMOTE LEARNING STARTING IN MARCH OF 2020. THAT'S ACCORDING TO THE TESTIMONY OF DR. GABRIEL TRUJILLO, THE SUPERINTENDENT.

FROM 2020 TO 2021, CERTAIN SCHOOL SITES WENT HYBRID, AND OTHER SCHOOL -- AND SOME SCHOOLS WERE COMPLETELY CLOSED FOR A PERIOD OF TIME.

2021 TO 2022, TUCSON BEGAN PHASING IN PERSON LEARNING AND WERE FULLY BACK IN PERSON INTO THE SPRING OF 2022, WITH THE EXCEPTION OF THE CREATION OF A UNIFIED VIRTUAL ACADEMY.

THE BOTTOM LINE THAT I'M TRYING TO GET AT IS THAT WHILE THE DEFENDANTS SAY THAT THE COVID RESPONSE HAD NOTHING -- IT DOESN'T MAKE IT REPRESENTATIVE, IT, IN FACT, DOES.

THE OTHER PROBLEM WITH THE DEFENDANTS' ARGUMENT IS THE PRE-COVID SOCIAL MEDIA IMPACT. THE DAMAGES -- AND THIS IS REPRESENTATIVE OF MOST CASES IN THIS MDL -- THE DAMAGES TO THE SCHOOL DISTRICT STARTED BEFORE COVID, AND SOCIAL MEDIA

EXACERBATED THOSE -- THE COVID IMPACT. THAT IS SOMETHING THAT ALL OF THE SCHOOL DISTRICTS HAVE ALLEGED.

WITH REGARD TO THE CELL PHONE POLICY, YOUR HONOR, TUCSON'S CELL PHONE POLICY, THE DEFENDANTS ARGUE, IS NOT PARTICULARLY INFORMATIVE.

TUCSON'S DISTRICT-WIDE POLICY ALLOWED STUDENTS TO POSSESS CELL PHONES. TUCSON'S POLICY ALLOWED STUDENTS TO POSSESS THE USE OF CELL PHONES ON CAMPUS SUBJECT TO CERTAIN CONDITIONS. THEIR POLICY IS CONSISTENT WITH MANY OF THE DISTRICTS IN THIS MDL, SO IT IS INFORMATIVE AND IT DOES MITIGATE AGAINST INCLUDING TUCSON INTO THE MDL.

YOUR HONOR, WITH -- I HAVE NO, REALLY NOTHING ELSE TO ADD WITH REGARD TO TUCSON UNLESS YOU HAVE QUESTIONS FOR ME.

THE COURT: OKAY.

YOU MAY PROCEED, MS. LANGNER.

MS. LANGNER: YES, YOUR HONOR, THANK YOU.

BAILEY LANGNER FOR THE DEFENDANTS.

THE COURT: I CAN'T HEAR YOU. YOU NEED TO SPEAK LOUDER.

MS. LANGNER: I APOLOGIZE, YOUR HONOR.

YOUR HONOR, DEFENDANTS WOULD PICK CHARLESTON OVER TUCSON, AND I HAVE A FEW POINTS TO ADDRESS IN TERMS OF THAT.

THE COURT: YOU SHOULD PRIMARILY ADDRESS THE POINT OF -- OR START WITH THE GEOGRAPHIC ISSUE.

MS. LANGNER: UNDERSTOOD, YOUR HONOR. THANK YOU.

SO --

THE COURT: HOW AM I SUPPOSED TO DEAL WITH THE FACT THAT I'VE GOT ALL THESE WESTERN DISTRICTS AND NO WESTERN BELLWETHER CASE?

MS. LANGNER: YOUR HONOR, AS A STARTING POINT, BY DEFENDANTS' CALCULATION, THERE ARE ONLY 15 PERCENT OF DISTRICTS IN THE WESTERN HALF OF THE UNITED STATES. I DON'T KNOW WHAT THE DISCREPANCY IS BETWEEN MR. WEINKOWITZ'S NUMBERS AND OURS, BUT WE DID LOOK AT THIS AND --

THE COURT: RIGHT. BUT AS I -- AS I INDICATED TO YOU, RIGHT, I'VE GOT THE EAST; I'VE GOT THE SOUTH; I HAVE, YOU KNOW, THE -- WELL, EASTERN WITH NEW JERSEY; LOWER EASTERN MID-ATLANTIC, I'M NOT EXACTLY SURE WHERE KENTUCKY, WHERE THEY PUT THEMSELVES; GEORGIA FOR THE SOUTH; AND SOUTH CAROLINA.

ABSOLUTELY NOTHING IN THE WEST.

MS. LANGNER: CERTAINLY, YOUR HONOR. TUCSON IS THE ONLY REMAINING CASE IN THE WEST. THERE'S NO WAY AROUND THAT.

HOWEVER, THERE ARE OTHER CONSIDERATIONS.

AND CERTAINLY I UNDERSTAND YOUR HONOR'S COMMENTS ABOUT THE TUCSON DESEGREGATION ORDER, BUT WE DO BELIEVE THAT WOULD MAKE IT AN UNREPRESENTATIVE --

THE COURT: THE ARGUMENT IS DENIED ON THAT GROUND.

MS. LANGNER: UNDERSTOOD.

THE COURT: I DON'T HAVE A LOT OF TIME TO WASTE, SO I DON'T WANT YOU TO SIT THERE AND TALK ABOUT THINGS THAT ARE

IRRELEVANT TO ME.

MS. LANGNER: I APOLOGIZE, YOUR HONOR.

THE COURT: IT'S NOT AN APOLOGY. I JUST DON'T WANT TO HEAR IT.

MS. LANGNER: IN TERMS -- SO CERTAINLY, YOUR HONOR, DEFENDANTS UNDERSTAND THAT THE ONLY REMAINING CASE IS IN -- IN THE WEST IS THE TUCSON CASE.

HOWEVER, ON SEVERAL OF THE OTHER POINTS YOU RAISED, SUCH AS THE STUDENT DEMOGRAPHICS, PLAINTIFFS' OWN BRIEF ACKNOWLEDGES THAT THE HISPANIC LATINO POPULATION OF IRVINGTON WOULD ADEQUATELY COVER THAT STUDENT POPULATION, YOU KNOW, AMONG THE CASES PICKED FOR THE TRIAL POOL. THAT'S ONE POINT.

FURTHER, YOUR HONOR, NEITHER PARTY HAS ACTUALLY OBJECTED, AT LEAST IN THE BRIEFING, TO THE INCLUSION OF CHARLESTON, AND SO THAT IS ANOTHER REASON WHY IT WOULD MAKE A GOOD FIFTH PICK.

AND FINALLY, YOUR HONOR, I WOULD ADD THAT I UNDERSTAND MR. WEINKOWITZ'S REPRESENTATIONS ABOUT ADDITIONAL CASES BEING FILED FROM TEXAS AND THE WEST.

BUT I DON'T THINK WE CAN MAKE DECISIONS SITTING HERE TODAY BASED ON CASES THAT HAVE NOT YET BEEN FILED.

THE COURT: ALL RIGHT. LET ME GET THE LAWYER UP HERE.

MR. BRANE, ARE YOU HERE?

MR. WEINKOWITZ: MR. BRANE ISN'T THE ATTORNEY FROM TEXAS. IT'S MR. EILAND.

THE COURT: EILAND. WHERE IS HE?

MR. WEINKOWITZ: HE WAS SUPPOSED TO BE --

THE COURT: NO?

MR. WEINKOWITZ: I SPOKE TO HIM LAST NIGHT. HE WAS AT THE SAME HOTEL AS ME, SO I'M NOT SURE WHY HE'S NOT HERE, YOUR HONOR. I APOLOGIZE FOR THAT.

MS. LANGNER: AND FINALLY --

MR. WEINKOWITZ: BUT, YOUR HONOR, IF YOU WOULD LIKE A SUBMISSION --

THE COURT: NO.

MR. WEINKOWITZ: I'M SORRY.

THE COURT: FINISH.

MS. LANGNER: FINALLY, YOUR HONOR, THERE IS THE CONSIDERABLE DISCOVERY ISSUE WHICH MY COLLEAGUE, MR. KEYES, IS PREPARED TO ADDRESS TODAY. THAT IS AN OVERRIDING CONSIDERATION THAT OVERRIDES THE GEOGRAPHICAL CONSIDERATIONS THAT WE'RE FACING HERE TODAY.

YOUR HONOR, I WOULD ALSO LIKE TO POINT OUT, AS YOUR HONOR POINTED OUT, I THINK THERE ARE SOME FACTORS ABOUT CHARLESTON THAT MAKE IT PARTICULARLY REPRESENTATIVE AND WOULD BE A GOOD ADDITION TO THE POOL.

IT IS RACIALLY DIVERSE, SO YOU HAVE A STUDENT POPULATION THAT IS 50 PERCENT WHITE, 31 PERCENT BLACK, AND 13 PERCENT HISPANIC LATINO. IT HAS A MIX OF COMMUNITY TYPES IN THE DISTRICT, URBAN, SUBURBAN, AND RURAL. IT IS ANOTHER MEDIUM

HOUSEHOLD INCOME AREA.

AND THEN I THINK ONE THING THAT IS IMPORTANT, YOUR HONOR, CHARLESTON IS THE ONLY SCHOOL DISTRICT THAT IS REMAINING THAT HAD A VERY SHORT COVID BAN. SO IN CHARLESTON, THERE WAS A THREE MONTH -- I'M SORRY, NOT A COVID BAN, A COVID CLOSURE.

IN CHARLESTON, THERE WAS A VERY SHORT, THREE-MONTH CLOSURE WHERE REMOTE LEARNING WAS, YOU KNOW, THE NORM ACROSS THE DISTRICT.

AFTER THAT, STUDENTS AND THEIR PARENTS, FOR THE FOLLOWING SCHOOL YEAR, THE 2020/2021 SCHOOL YEAR, HAD THE CHOICE TO BE VIRTUAL OR IN PERSON.

AND THERE ARE NO OTHER SCHOOL DISTRICTS REPRESENTED THAT HAVE THAT SHORT OF A COVID CLOSURE.

MR. WEINKOWITZ: YOUR HONOR, IF I MAY BE HEARD ONE LAST -- WELL, MAYBE ONE LAST TIME.

THE COURT: IS THAT ALL, MS. LANGNER?

MS. LANGNER: YES. THANK YOU, YOUR HONOR.

MR. WEINKOWITZ: I'LL JUST MAKE TWO POINTS.

THERE ARE MORE CASES IN THE POOL THAT YOU'VE PUT TOGETHER, YOUR HONOR, THAT WERE DEFENSE PICKS THAN PLAINTIFFS' PICKS. THAT SHOULD MITIGATE --

THE COURT: WELL, BOTH OF THESE ARE PLAINTIFFS' PICKS.

MR. WEINKOWITZ: I UNDERSTAND.

THE COURT: SO YOU CAN'T CHANGE YOUR POSITION NOW.

EITHER ONE OF THESE THAT I CHOOSE IS A PLAINTIFF PICK.

MR. WEINKOWITZ: CORRECT.

I THINK THE WEST NEEDS TO BE REPRESENTED. I THINK THAT EXCLUDING A WHOLE HALF, MORE THAN HALF OF THE COUNTRY, WITH CASES FROM TEXAS AND FLORIDA COMING IN, I THINK WOULD BE A DISSERVICE TO THE BALANCE OF THE POOL.

THE COURT: LET ME ASK THIS QUESTION: WHAT ABOUT TAKING BOTH?

MR. WEINKOWITZ: WE WOULD HAVE NO OBJECTION TO THAT.

THE COURT: WHAT ABOUT TAKING BOTH?

MS. LANGNER: I THINK WE WOULD HAVE NO OBJECTION TO THAT, YOUR HONOR.

THE COURT: ALL RIGHT. THEY'RE BOTH IN.

MR. WEINKOWITZ: THANK YOU, YOUR HONOR.

THE COURT: SO LET'S NOW DEAL WITH TUCSON'S MOTION.

TUCSON MAY HAVE TO GO LAST, BUT I CAN'T TELL WITHOUT, FRANKLY, THE NITTY GRITTY, I JUST DON'T UNDERSTAND -- AND I MAY HAVE TO SEND IT TO MAGISTRATE KANG TO GET -- TO DRILL DOWN.

AT THIS POINT, THE OBJECTION ABOUT 17 INDIVIDUALS IS MOOT. THERE AREN'T 17 AT ISSUE.

AND GIVEN MY PICKS, WE'RE DOWN TO TWO. THAT'S IT. SO WE'RE DEALING WITH TWO INDIVIDUALS.

ARE YOU TELLING ME YOU CAN'T DEAL WITH TWO INDIVIDUALS?

AND GO AHEAD STATE YOUR NAMES FOR THE RECORD.

MR. KEYES: YES, YOUR HONOR.

ANDREW KEYES FOR GOOGLE AND YOUTUBE DEFENDANTS.

YOUR HONOR, I THINK WHAT IS KEY IS THAT IT'S NOT ABOUT TWO WITNESSES. IT'S ABOUT INTRODUCING AT THIS LATE JUNCTURE AN ENTIRELY NEW CATEGORY OF WITNESSES.

WHEN TUCSON SERVED ITS INITIAL DISCLOSURES, WHEN TUCSON --

THE COURT: CATEGORY? I DON'T UNDERSTAND -- SO I DON'T UNDERSTAND THAT.

MR. KEYES: SURE.

THE COURT: YOU SAY CATEGORY, AND THERE ARE TWO.

MR. KEYES: RIGHT. SO I'LL TRY TO BE MORE CLEAR.

FOR THE FIRST TIME, ON THE LAST DAY OF FACT DISCOVERY, TUCSON DISCLOSED A STUDENT AND A SCHOOL ADMINISTRATOR AT THE SCHOOL LEVEL.

THIS IS AFTER A YEAR OF DISCOVERY THAT WAS ENTIRELY FOCUSSED ON DISCOVERY AT THE DISTRICT LEVEL.

THE COURT: OKAY.

MR. KEYES: SO --

THE COURT: SO IT IS -- HOLD ON.

MR. KEYES: SURE.

THE COURT: IS THAT CORRECT?

AND STATE YOUR NAME ON THE PLAINTIFFS' SIDE.

MR. BRANE: SURE, YOUR HONOR.

AUSTIN BRANE, WAGSTAFF & CARTMELL, FOR THE TUCSON DISTRICT.

IT IS NOT CORRECT.

THE COURT: SO WHO WERE THE STUDENTS THAT YOU IDENTIFIED FROM TUCSON PRIOR TO THIS ONE AT ISSUE?

MR. BRANE: THE STUDENT PART IS CORRECT, YOUR HONOR. I APOLOGIZE.

THE STAFF PART IS NOT. ONE OF THE CUSTODIANS --

THE COURT: SO THE STUDENT IS CORRECT. YOU NEVER IDENTIFIED A STUDENT IN ADVANCE?

MR. BRANE: NOT IN OUR DISCOVERY RESPONSES OR AS A CUSTODIAN, WHICH WE COULD NOT AS A CUSTODIAN. THEY'RE THIRD PARTIES, YOUR HONOR.

BUT WE HAD NOT PREVIOUSLY IDENTIFIED A STUDENT IN OUR DISCOVERY RESPONSES AT ISSUE, THAT'S CORRECT.

THE COURT: OKAY. WHY?

MR. BRANE: YOUR HONOR, WE FOCUSSED INITIALLY ON DISTRICT STAFF, THOSE THAT WOULD HAVE THE MOST INFORMATION, ESPECIALLY AS CUSTODIANS.

AGAIN, THE STUDENTS ARE THIRD PARTIES, SO WHEN WE WERE LOOKING AT CUSTODIANS, STUDENTS ARE NOT AN OPTION. I DON'T KNOW THAT THEY WOULD HAVE CUSTODIAL FILES AS WELL.

BUT INITIALLY OUR INVESTIGATION AND EFFORTS FOCUSSED ON DISTRICT-LEVEL STAFF THAT WOULD HAVE THE MOST INFORMATION.

THE COURT: RULE 26 REQUIRES THAT YOU IDENTIFY INDIVIDUALS LEADING UP TO TRIAL WHO YOU THINK HAVE INFORMATION. SO YOU COULD HAVE SAID, THERE ARE ALL SORTS OF STUDENTS OUT THERE THAT WE INTEND TO CALL FOR PURPOSES OF TRIAL PREP.

MR. BRANE: THAT'S FAIR, YOUR HONOR.

WE -- AGAIN, OUR INVESTIGATION STARTED WITH THE DISTRICT FOLKS, AND WE DID SPEND A LOT OF TIME THINKING ABOUT THE STUDENT ISSUE AND INVESTIGATING THAT, AND IT TAKES TIME.

AGAIN, WE DON'T HAVE DIRECT ACCESS TO THOSE FOLKS --

THE COURT: YOU CANNOT RELY ON THAT BECAUSE THE DEFENDANTS ASKED FOR MORE TIME IN THIS MDL AND EVERY PLAINTIFFS' ATTORNEY THAT GOT UP THERE SAID, WE CAN DO IT, NO ISSUE.

MR. BRANE: I UNDERSTAND, YOUR HONOR. I THINK --

THE COURT: SO DOING IT AT THE END IS A PROBLEM.

MR. BRANE: I UNDERSTAND.

THE COURT: THE STUDENT IS OUT FOR PURPOSES OF THE TRIAL AND THE BELLWETHER.

NOW THE SCHOOL ADMINISTRATOR. WAS ANY OTHER SCHOOL ADMINISTRATOR IDENTIFIED?

MR. BRANE: WE HAVE A -- TUCSON HAS A SCHOOL ADMINISTRATOR AS A CUSTODIAL FROM THE BEGINNING, A MIDDLE SCHOOL PRINCIPAL, YOUR HONOR. AND THERE ARE --

THE COURT: SO HOW CAN YOU SAY THAT THEY DIDN'T DO THAT?

MR. KEYES: YOUR HONOR, OUR UNDERSTANDING IS THAT THAT PARTICULAR CUSTODIAN WAS IDENTIFIED BECAUSE OF THE CUSTODIAN'S PRIOR ROLE AS A DEAN OR DIRECTOR OF MIDDLE SCHOOLS.

AND SO THAT PERSON WAS NOT IDENTIFIED BECAUSE THEY WERE A

PRINCIPAL. THEY WERE IDENTIFIED BECAUSE THEY HAD A DISTRICT-LEVEL POSITION IN THE PAST.

THE COURT: IS THAT ACCURATE?

MR. BRANE: YES AND NO. THEY DID HAVE A DISTRICT-LEVEL POSITION IN THE PAST.

BUT IF WE WANT TO GET INTO PRIOR ROLES, THERE WERE ACTUALLY NINE OTHER CUSTODIANS WHO, DURING THE RELEVANT TIME PERIOD, ALTHOUGH AT THE DISTRICT CURRENTLY, HAD SCHOOL SITE ROLES, AND THEY WERE SELECTED FOR THOSE REASONS AS WELL. THOSE ARE ISSUES THAT WERE DISCUSSED IN THE CUSTODIAN NEGOTIATIONS WITH THE DEFENDANTS.

THE COURT: WERE THERE DOCUMENTS PRODUCED BASED UPON THEIR ROLE FROM THE SCHOOLS, AS OPPOSED TO THEIR ROLE FROM THE ADMINISTRATION ROLE?

MR. BRANE: WE WOULD HAVE PRODUCED DOCUMENTS FOR EACH OF THOSE ROLES, AND BOTH, YOUR HONOR.

THE COURT: YOU SAID "WE WOULD."

MR. BRANE: WE DID.

THE COURT: I ASKED WHETHER THEY WERE.

MR. BRANE: THEY WERE, ABSOLUTELY.

THE COURT: OKAY. SO IT'S BEEN PRODUCED.

SO WHAT'S THE ISSUE?

MR. KEYES: WELL, I THINK THE ISSUE, YOUR HONOR, IS THE FACT THAT THERE ARE 80-SOME SCHOOLS AND TENS OF THOUSANDS OF STUDENTS --

THE COURT: I AM TALKING ABOUT ONE PERSON.

MR. KEYES: RIGHT. I'M TRYING TO ADDRESS THE COURT'S CONCERN ABOUT ONE PERSON, AND THE FACT IS THEY'RE INTRODUCING A NEW CATEGORY OF A PRINCIPAL TO COME IN TO TALK ABOUT SCHOOL-LEVEL EXPERIENCES.

THE COURT: HOW MANY ADMINISTRATORS DO YOU KNOW WHO ARE NOT PRINCIPALS?

MR. KEYES: WELL, I -- I BELIEVE, BASED ON MY OWN EXPERIENCE TAKING DEPOSITIONS IN THIS CASE, MANY ADMINISTRATORS HAVE HAD PRIOR EXPERIENCE AS PRINCIPALS.

THE COURT: RIGHT.

MR. KEYES: BUT I THINK THE QUESTION THAT WE'RE POSING IS, THEY WANT TO NOW BRING IN SOMEONE TO TALK ABOUT EXPERIENCE AT A PARTICULAR SCHOOL, WHEN THE OPERATING PROCEDURE FOR THE LAST YEAR WAS TO FOCUS ON DISTRICT-LEVEL INFORMATION.

AND THE PROBLEM IS THAT IF AT THIS LATE JUNCTURE THEY GET TO BRING IN SOMEONE TO TALK ABOUT WHAT'S HAPPENING IN ONE PARTICULAR SCHOOL, THAT IS A CHERRY PICKED EXAMPLE. IT DOESN'T SHOW WHAT IS HAPPENING IN ALL OF THE OTHER SCHOOLS.

AND SO IT'S IMPORTANT, IF WE HAD KNOWN THAT WITNESSES WERE GOING TO BE INTRODUCED, OR IN PLAY AT TRIAL TO TALK ABOUT WHAT WAS HAPPENING AT A PARTICULAR SCHOOL, FOR US TO BE ABLE TO SHOW -- NUMBER ONE, TEST THEIR EXPERIENCE AND, NUMBER TWO, BE ABLE TO SHOW THAT THAT'S NOT REPRESENTATIVE OF THE OTHER 85-PLUS SCHOOLS IN THE DISTRICT.

SO, AGAIN, IT'S NOT AN ISSUE OF THEY HAVE IDENTIFIED ONE PERSON AND WE'RE NOT ABLE TO DEPOSE THAT ONE PERSON.

THE POINT IS PUTTING INTO PLAY A CATEGORY OF DISCOVERY THAT WAS OFF LIMITS FOR THE PRIOR 13 MONTHS.

THE COURT: RESPONSE?

MR. BRANE: YOUR HONOR, THERE HAVE BEEN THOUSANDS, IF NOT TENS OF THOUSANDS, OF DOCUMENTS PRODUCED FROM SCHOOL SITES THROUGH THE CUSTODIANS THAT THE PARTIES AGREED TO. THERE HAVE BEEN NUMEROUS HOURS OF DEPOSITION TESTIMONY SPENT ON CUSTODIANS' TIME AT SCHOOL SITES.

THE COURT: WELL, LET ME ASK, ALL OF THE OTHER SCHOOLS THAT I JUST IDENTIFIED AND THAT ARE PART OF THE BELLWETHERS, I TAKE IT FROM THIS ARGUMENT THAT THIS APPROACH WAS NOT TAKEN IN ALL OF THE OTHER SCHOOLS. IS THAT CORRECT?

MR. BRANE: I'M SORRY, IF YOU COULD CLARIFY, YOUR HONOR, WHAT YOU MEAN BY "THIS APPROACH"?

THE COURT: OF HAVING SCHOOL-LEVEL AS OPPOSED TO DISTRICT-LEVEL EVIDENCE.

MR. BRANE: SOME DISTRICTS HAD SCHOOL SITE FOLKS AS PRINCIPALS.

OTHER DISTRICTS DID AS WELL, IF THAT'S WHAT YOU'RE ASKING, AND THE BELLWETHER POOL IDENTIFIED SCHOOL SITE FOLKS AS CUSTODIANS AND WERE DEPOSED.

THE COURT: OKAY. SO WHAT IS THE STATE OF PLAY FOR EACH OF THE OTHER FIVE THAT ARE IN THE POOL IN TERMS OF

COMPARING IT -- YOU'RE CLAIMING THAT THIS IS ALL NEW WITH RESPECT TO TUCSON.

I'D LIKE TO KNOW HOW IT COMPARES, THIS PARTICULAR SITUATION, TO EACH OF THE OTHER DISTRICTS.

MR. KEYES: I BELIEVE THAT NONE OF THE OTHER DISTRICTS DISCLOSED ANY TEACHERS OR PRINCIPALS.

THIS WAS A CATEGORY THAT THE PLAINTIFFS SAID WAS NOT APPROPRIATE, THAT --

THE COURT: MR. WEINKOWITZ?

MR. WEINKOWITZ: YOUR HONOR, THAT IS TRUE THAT -- BUT WE NEVER SAID THAT THIS CATEGORY WAS INAPPROPRIATE.

AND WHAT I'D LIKE TO DO -- SORRY. GO AHEAD.

THE COURT: I'M TRYING TO FIGURE OUT IF THIS IS A LAST MINUTE APPROACH AND CHANGE IN DISCLOSURE FROM TUCSON, OR WHETHER EVERYBODY ELSE, IN ALL THESE OTHER DISTRICTS, THE LAWYERS TOOK THE SAME APPROACH, BUT DISCOVERY WENT FORWARD AND THAT KIND OF EVIDENCE WAS FULLY VETTED.

MR. WEINKOWITZ: FIRST OF ALL, YOUR HONOR, THIS WAS NOT, WHETHER IT WAS THE STUDENTS OR THE OTHER WITNESSES, A LATE DISCLOSURE. AND WHAT I'LL -- WHAT I POINT TO IS THIS COURT'S CMO 17, ECF 1159. THAT ORDER DIRECTLY ANTICIPATES THE CONTINUED EVOLUTION OF WITNESS LISTS AND WITNESS DISCLOSURES.

IT SETS A SEPTEMBER 10TH, 2025 DATE FOR THE EXCHANGE OF PRELIMINARY WITNESSES, AND THEN ON SEPTEMBER 22ND, THE PARTIES GET TOGETHER TO SEE IF THERE'S ADDITIONAL DISCOVERY.

ALL OF THE WITNESSES THAT WERE DISCLOSED, STUDENT, PRINCIPAL, WHATEVER, WERE NOT LATE AT ALL.

THE COURT: I UNDERSTAND IT WASN'T LATE IN TERMS OF BEYOND THE INITIAL CUTOFF.

I'M TALKING ABOUT MORE IN TERMS OF MUCH LATER IN THE -- IN THE EVOLUTION OF THESE CASES TO GET THEM READY TO BE PICKED. THAT'S REALLY WHAT I'M -- THAT'S REALLY WHAT I'M TALKING ABOUT.

SO WHO'S THE PRIMARY LAWYER REPRESENTING DEKALB?

MR. WEINKOWITZ: DEKALB IS -- I THINK IT IS -- HE'S HERE. DAVIS VAUGHN FROM THE BEASLEY ALLEN FIRM.

MR. VAUGHN: GOOD MORNING, YOUR HONOR.

DAVIS VAUGHN ON BEHALF OF DEKALB.

THE COURT: GOOD MORNING.

SO DID YOU IDENTIFY INDIVIDUALS AT THE DISTRICT LEVEL?

MR. VAUGHN: AT THE DISTRICT LEVEL, YES. YES, YOUR HONOR.

THE COURT: AT THE SCHOOL LEVEL?

MR. VAUGHN: SCHOOL LEVEL, WE DID NOT IDENTIFY ANY PRINCIPAL OR ASSISTANT PRINCIPAL.

WE DID IDENTIFY DISTRICT FOLKS THAT HELD THAT TITLE PREVIOUSLY.

THE COURT: ALL RIGHT. THANK YOU.

HARFORD? DO I HAVE SOMEONE LATER FROM HARFORD?

MS. MCNABB: YES, YOUR HONOR.

THIS IS KELLY MCNABB FROM LIEFF, CABRASER.

THE COURT: OKAY. HOLD ON.

OKAY. HOW ABOUT YOU? DID YOU DISCLOSE ANY SITE LEVEL PRINCIPALS?

MS. MCNABB: YOUR HONOR, NO, I DO NOT BELIEVE WE HAD ANY SITE LEVEL PRINCIPALS THAT WERE DISCLOSED AS WITNESSES, ALTHOUGH I BELIEVE WE HAD SOME AS CUSTODIANS.

THE COURT: OKAY. THAT IS CUSTODIANS IN THE ROLE AS PRINCIPAL, OR CUSTODIANS WHO WERE NOW ADMINISTRATORS AND PREVIOUSLY PRINCIPALS?

MS. MCNABB: THEY WERE IN THE ROLE -- CUSTODIANS IN THE ROLE AS PRINCIPALS AT THE TIME.

THE COURT: ALL RIGHT. NEXT I HAVE BREATHITT.

MR. WEINKOWITZ: YOUR HONOR, I CAN REPORT ON BREATHITT, BALTIMORE, AND IRVINGTON.

BREATHITT HAD MULTIPLE PRINCIPALS DISCLOSED WHO WERE DEPOSED.

BALTIMORE --

THE COURT: AND PRINCIPALS SOLELY, NOT ADMINISTRATORS WHO HAD PREVIOUSLY BEEN PRINCIPALS?

MR. WEINKOWITZ: CORRECT, YOUR HONOR.

SAME FOR BALTIMORE.

THE COURT: BALTIMORE IS NOT IN THE POOL.

MR. WEINKOWITZ: THAT'S RIGHT.

SAME FOR IRVINGTON.

THE COURT: OKAY. AND WHO HAS CHARLESTON?

MR. WEINKOWITZ: ESTHER BEREZOFSKY FROM THE MOTLEY RICE FIRM.

MS. BEREZOFSKY: YOUR HONOR, ESTHER BEREZOFSKY FOR THE PLAINTIFFS, MOTLEY RICE.

CHARLESTON HAS PRIOR PRINCIPALS THAT HAVE BEEN IDENTIFIED AND DEPOSED.

THE COURT: BUT NO CURRENT PRINCIPALS?

MS. BEREZOFSKY: NO CURRENT.

THE COURT: OKAY. SO TWO OF THE THREE IDENTIFIED PRINCIPALS AND WERE DEPOSED, BREATHITT AND IRVINGTON.

SO HOW CAN -- SO MY NEXT QUESTION IS, YOU SEEM TO BE TOTALLY SHOCKED, THAT THIS IS A NEW APPROACH, BUT I'VE GOT LAWYERS TELLING ME THAT IT'S NOT A NEW APPROACH, TWO OF THE FIVE -- TWO OF FIVE DISTRICTS IDENTIFIED THOSE INDIVIDUALS.

MR. KEYES: WELL, MY UNDERSTANDING, YOUR HONOR, IS THAT IF A PRINCIPAL -- IF A PRINCIPAL WAS DEPOSED, IT WAS AS A 30(B)(6) REPRESENTATIVE, OR IT WAS SOMEONE WHO HAD A DISTRICT-LEVEL FUNCTION, AS WELL AS BEING PRINCIPAL.

THE COURT: ALL RIGHT.

MR. WEINKOWITZ, BACK TO YOU.

IS THAT THE CASE IN BREATHITT AND IRVINGTON?

MR. WEINKOWITZ: YOUR HONOR, I DON'T KNOW THE ANSWER TO THAT QUESTION, YOUR HONOR.

THE COURT: OKAY. I HAVE SOMEONE ELSE COMING.

MR. WEINKOWITZ: BUT IT IS NOT TRUE, I'M TOLD, FOR

BREATHITT.

THE COURT: I HAVE SOMEONE ELSE COMING TO THE MIC.

MR. BRANE, STEP TO THE SIDE.

MR. INNES: GOOD MORNING, YOUR HONOR.

MIKE INNES FROM CARELLA BYRNE ON BEHALF OF IRVINGTON.

IRVINGTON DID HAVE PRINCIPALS --

THE COURT: HOLD ON. I'M TRYING TO FIND YOUR NAME. SORRY. WHAT'S THE FIRM AGAIN?

MR. INNES: CARELLA, BYRNE, CECCHI, BRODY & AGNELLO.

THE COURT: DID YOU SIGN IT?

MR. INNES: I DID NOT. I ARRIVED A LITTLE LATE.

THE COURT: SO I NEED YOUR NAME.

MR. INNES: MY NAME IS MICHAEL INNES, I-N-N-E-S.

THE COURT: I-N-N-E-S. AND THE LAW FIRM AGAIN?

MR. INNES: CARELLA, BYRNE --

THE COURT: HOW DO YOU SPELL THE FIRST NAME?

MR. INNES: C-A-R-E-L-L-A.

THE COURT: OKAY.

MR. INNES: B-Y-R-N-E.

THE COURT: ALL RIGHT. MAKE SURE TO CHECK IN BEFORE YOU LEAVE.

SO IN TERMS OF IRVINGTON?

MR. INNES: SO FOR IRVINGTON, THERE WERE THREE PRINCIPALS WHO ARE PRINCIPALS WHO WERE IDENTIFIED AND DEPOSED. THEY DID NOT HAVE DISTRICT-LEVEL RESPONSIBILITIES.

THE COURT: OKAY. SO RESPONSE?

MR. KEYES: THAT WAS NOT MY -- YOUR HONOR, THAT WAS NOT MY UNDERSTANDING.

OUR FOCUS WAS FIRST ON STUDENTS AND THEN IT WAS ON TEACHERS, AND YOU'VE IDENTIFIED THE DEAN AS THE ONE THAT REMAINS NOW FOR TUCSON.

AND WHAT I -- WHAT IS NOT DISPUTED IS THAT UNTIL APRIL 4TH, FOR THE TUCSON CASE, THERE WAS NO DISCLOSURE OF ANY STUDENT OR ANY TEACHER OR ANY PRINCIPAL, SO THERE WAS NO -- THERE WAS NO NOTICE THAT THOSE WITNESSES WOULD BE IN PLAY AT ALL, THAT THE DISCOVERY WOULD BE FOCUSSED ON WHAT WAS HAPPENING AT THE DISTRICT LEVEL AS OPPOSED TO THE SCHOOL OR THE CLASSROOM LEVEL.

THE COURT: THE OBJECTION IS SUSTAINED AS TO THE STUDENT, OVERRULED AS TO THE ADMINISTRATOR.

YOU ALL MEET AND CONFER AND GET YOUR DISCOVERY DONE.

MR. KEYES: OKAY. THANK YOU, YOUR HONOR.

THE COURT: THANK YOU.

MR. WEINKOWITZ: YOUR HONOR I JUST WANT TO LET YOU KNOW THAT MR. EILAND, WHO REPRESENTS THE TEXAS DISTRICTS, IS HERE IF YOU WOULD LIKE TO SPEAK WITH HIM.

THE COURT: ALL RIGHT. YES, I WOULD.

MR. EILAND: CRAIG EILAND, YOUR HONOR.

THE COURT: OKAY. SO IT'S -- YOU SAID IT'S CRAIG IRELAND?

MR. EILAND: EILAND, E-I-L-A-N-D.

THE COURT: WHERE ARE YOU FROM, SIR?

MR. EILAND: I'M FROM AUSTIN, TEXAS.

THE COURT: AND YOUR FIRM?

MR. EILAND: EILAND & BONNIN, B-O-N-N-I-N.

THE COURT: OKAY. SO I GUESS WHILE YOU WERE -- I DIDN'T SEE YOU WALK IN, BUT I GUESS WHILE YOU WERE OUT OF THE -- WHILE YOU WERE NOT IN THE COURTROOM, MR. WEINKOWITZ MADE SOME REPRESENTATIVES TO ME ABOUT ANTICIPATED FILINGS FROM WESTERN STATES, AND HE INDICATED THAT YOU MIGHT HAVE SOME SPECIFIC INFORMATION ON THAT.

MR. EILAND: YES, YOUR HONOR.

WE REPRESENT 70 DISTRICTS IN TEXAS AND ABOUT 2.5 MILLION STUDENTS PRESENTLY. WE EXPECT THAT TO BE AROUND 80 TO 90 BY THE END OF THE SUMMER, AND CLOSER TO 3 MILLION.

THE COURT: 80 TO 90 DISTRICTS?

MR. EILAND: YES.

THE COURT: HAVE ANY OF THOSE BEEN FILED?

MR. EILAND: WE FILED OUR FIRST ONE LAST WEEK.

THE COURT: AND WHERE ARE THOSE -- DO YOU HAVE ANY FROM FLORIDA? OR DO YOU ONLY -- ARE YOU ONLY FROM TEXAS?

MR. EILAND: ONLY TEXAS, YOUR HONOR.

THE COURT: OKAY. AND TEXAS IS A BIG STATE.

MR. EILAND: YES.

THE COURT: NOT AS BIG AS ALASKA, BUT IT'S A BIG

STATE.

SO WHERE DO THOSE 80 TO 90 DISTRICTS, OR 70 TO 90 DISTRICTS, GENERALLY SPEAKING, WHAT AREAS?

MR. EILAND: THE ENTIRE STATE, JUDGE. WE HAVE ALL OF HOUSTON, DALLAS, SAN ANTONIO -- THERE'S A COUPLE DISTRICTS OF SAN ANTONIO THAT WE REPRESENT -- THE VALLEY, EL PASO, AMARILLO. SMALL DISTRICTS HERE AND THERE, ABILENE.

THE COURT: IN TERMS OF THE RACIAL MAKEUP WITH RESPECT TO THESE, WHAT IS THE BREAKDOWN FROM WHAT YOU CAN TELL?

MR. EILAND: I DON'T HAVE THE SPECIFIC BREAKDOWN, BUT, I MEAN, DALLAS ISD, HOUSTON ISD, SAN ANTONIO NORTH SIDE, I MEAN, IT'S -- IT'S -- IT IS A BROAD MIX.

THE COURT: OKAY. THANK YOU, SIR.

OKAY. SO WE HAVE OUR SCHOOL DISTRICT CASES.

LET'S TALK ABOUT THE INDIVIDUALS.

OH, ACTUALLY, BEFORE WE LEAVE THE SCHOOL DISTRICTS, I DID WANT TO CONFIRM ONE ISSUE, AND THAT IS OF THE ONES THAT ARE LEFT, THE ONLY PLACE WHERE -- OR THE ONES THAT ARE IN THE POOL, THE ONLY PLACE WHERE IT SEEMS LIKE THERE'S NO LEXICON WAIVER IS DEKALB IN GEORGIA.

MR. WEINKOWITZ: THAT'S CORRECT, YOUR HONOR.

THE COURT: OKAY. I JUST WANTED TO MAKE SURE SO I CAN FOLLOW UP WITH THE CHIEF JUDGE DOWN THERE.

OKAY. THE OTHER THING THAT I WAS GOING TO NOTE FOR YOU ALL, AS I LOOKED AT THESE -- AGAIN, WHAT WE'RE TRYING TO DO IS

GET YOU INFORMATION BY DOING BELLWETHER TRIALS.

SO THE -- THE BREATHITT SCHOOL DISTRICT CASE, WHICH IS A RURAL COMPOSITION OR GEOGRAPHIC AREA, I ANTICIPATE THAT WHAT I WILL DO FOR THAT CASE IS TRY IT UP IN EUREKA. WE HAVE A EUREKA COURTHOUSE. IT IS RURAL. SO THAT'S WHAT I THINK I'LL DO.

MR. WEINKOWITZ: NO OBJECTION TO THAT, YOUR HONOR.

THE COURT: I DON'T THINK YOU COULD OBJECT.

(LAUGHTER.)

MR. WEINKOWITZ: I JUST HAD TO HEAR MYSELF SPEAK.

(LAUGHTER.)

THE COURT: OKAY. LET'S GO TO THE INDIVIDUALS.

IN THIS CASE, IN TERMS OF THE FIVE, THERE ARE THREE FOR WHICH THERE ARE NO OBJECTION, AND THOSE THREE ARE PART OF THE BELLWETHERS, DORAZIO, SMITH, AND MIDDLETON. SO THOSE THREE ARE IN. IT'S TWO PLAINTIFF PICKS, ONE DEFENSE PICK.

AND IN THIS CASE, I MADE MY OWN SPREADSHEET, AND WHAT I WAS LOOKING AT, THE NATURE OF THE INJURIES, WE'RE OBVIOUSLY LOOKING AT THE MALE/FEMALE DESIGNATION, AND WHO THE DEFENDANTS ARE. ALL OF THEIR -- THE FIRST USE AND CURRENT AGE, IT'S NOT ALL THAT DIFFERENT.

S.K. IS OUT. I'M NOT CHOOSING S.K. THAT PERSON IS NOT CAPABLE OF PARTICIPATING, AND CERTAINLY IF A DEPOSITION HAS PUT THAT PERSON INTO TRAUMA, A CASE OF TRIAL WOULD BE MUCH WORSE, AND I WILL NOT DO THAT TO THAT INDIVIDUAL.

MS. HAZAM: YOUR HONOR --

THE COURT: NO, I'M NOT DOING IT. NO.

AND -- I NEED TO FIND MY NOTE.

J.D. IS ALSO OUT.

THAT LEAVES THREE: MULLIN, CLEVENGER, AND CRAIG.

AND, AGAIN, YOU CAN PUT THREE. WE CAN GO TO SIX AND BE DONE WITH IT.

BUT IN TERMS OF THE OBJECTIONS, I'D LIKE TO UNDERSTAND WHAT THESE STATUTE OF LIMITATIONS ARGUMENTS, DEFENSES ARE. IT'S ONE OF THE ARGUMENTS THAT HAS BEEN MADE.

AND I'LL GO AHEAD AND HAVE YOU IDENTIFY YOURSELF FOR THE RECORD. GO AHEAD.

MR. HALPERIN: YES, YOUR HONOR.

GREG HALPERIN FROM COVINGTON ON BEHALF OF META AND ALL DEFENDANTS.

THE STATUTE OF LIMITATIONS ARGUMENT IN CLEVENGER IS SHE FILED HER CASE IN APRIL OF 2023, APPROXIMATELY FOUR YEARS AFTER HER 18TH BIRTHDAY.

THE STATUTE OF LIMITATIONS IN PENNSYLVANIA, WHICH IS WHERE THE LAW THAT WE BELIEVE YOUR HONOR SHOULD APPLY FOR PERSONAL INJURY CASES, IS TWO YEARS.

IN JANUARY OF 2016, SHE HAS A DIARY ENTRY THAT NOTES AS TO INSTAGRAM AND FACEBOOK THAT IT, QUOTE, "MESSED WITH MY MIND AND TELL ME I AM NOT SOCIETY'S PERCEPTION OF PERFECT OR BEAUTIFUL," AND, QUOTE, "BROKE ME DOWN TO PIECES, LEAVING ME VULNERABLE TO THE ED."

WE THINK THAT MEANS THAT SHE WAS ON NOTICE OF HER CLAIMS MORE THAN TWO YEARS BEFORE HER INJURY, EVEN WITH THE TOLLING THAT MAY APPLY TO HER AS SHE WAS A MINOR.

WE BELIEVE THAT THIS ISSUE WILL AFFECT THE BROADER POOL. 18 PERCENT OF ALL MDL PLAINTIFFS FILED SUIT AS ADULTS, AND ROUGHLY 10 PERCENT, 9.5 PERCENT, FILED SUIT MORE THAN TWO YEARS AFTER THEY TURNED 18.

OBVIOUSLY THE STATUTE OF LIMITATIONS IN TERMS OF DURATION DIFFERS A BIT STATE TO STATE, BUT WE DO ANTICIPATE THAT THERE MAY BE STATUTE OF LIMITATIONS ISSUES THAT PERMEATE THE POOL.

JUDGE *KOOL REJECTED AN ARGUMENT BY PLAINTIFFS IN THE JCCP THAT PLAINTIFFS WITH STATUTE OF LIMITATIONS POTENTIAL ISSUES SHOULD COME OUT OF THE TRIAL POOL.

THREE OF THE NINE CASES THAT SHE HAS INCLUDED IN HER TRIAL POOL DO HAVE STATUTE OF LIMITATIONS DEFENSES.

THE COURT: OKAY. AND IS THERE A STATUTE OF LIMITATIONS ISSUE WITH CRAIG?

MR. HALPERIN: CRAIG, SIMILARLY, DOES HAVE A STATUTE OF LIMITATIONS DEFENSE. I DON'T HAVE THE DETAILS, YOUR HONOR, OF CRAIG'S STATUTE OF LIMITATIONS ARGUMENT IN FRONT OF ME.

THE COURT: WELL, DOES ANYBODY ON THE DEFENSE SIDE HAVE THAT?

(PAUSE IN PROCEEDINGS.)

MR. HALPERIN: YOUR HONOR, MR. CRAIG TURNED 18 IN MAY OF 2019, DID NOT FILE SUIT UNTIL JULY OF 2022, MORE THAN THREE

YEARS AFTER TURNING 18.

HE TESTIFIED THAT IN 2018, WHILE HE WAS STILL A MINOR, SO MORE THAN THREE YEARS PRIOR, THREE SEPARATE HEALTHCARE PROVIDERS ATTRIBUTED HIS INJURIES TO SOCIAL MEDIA.

THE COURT: ALL RIGHT.

RESPONSE?

MS. HAZAM: LEXI HAZAM FOR PLAINTIFFS.

YOUR HONOR, I BELIEVE THAT PLAINTIFFS WOULD DISPUTE THE APPLICATION OF THE STATUTE OF LIMITATIONS. I'M NOT PREPARED TO DO SO IN ANY DETAIL TODAY. COUNSEL FOR THESE PLAINTIFFS IS IN THE COURTROOM.

BUT WHAT I WOULD LIKE TO NOTE IS THAT PLAINTIFFS DO NOT BELIEVE IT'S APPROPRIATE TO HAVE TWO PLAINTIFFS IN THE TRIAL BELLWETHER POOL AS TO WHOM DEFENDANTS ARE RAISING THESE AFFIRMATIVE DEFENSES AND WHO MAY, THEREFORE, BE DISPOSED OF AT SUMMARY JUDGMENT.

WE ALSO THINK THAT MR. CRAIG IS A VERY UNREPRESENTATIVE PLAINTIFF FOR REASONS WE NOTED IN OUR PAPERS. THEY ARE CURRENTLY DESIGNATING CONFIDENTIAL, BUT IF YOUR HONOR WISHES TO HEAR THEM, I WILL RECITE THEM.

BUT EVEN JUST AGE, WHICH IS ONE THAT I THINK I CAN DISCUSS, BY VIRTUE OF BEING A MALE AGE 24 OR OVER, THOSE TWO FACTS ALONE MAKE MR. CRAIG HIGHLY UNREPRESENTATIVE.

THERE ARE ONLY 12 OF 336 PLAINTIFFS WHO HAVE SUBMITTED PFS'S WHO ARE MALES AGE 24 OR OVER, OR JUST OVER 3 PERCENT.

MS. CLEVENGER IS ALSO OF THAT SAME AGE.

PLAINTIFFS WOULD SUBMIT THAT MS. MULLIN IS FAR MORE REPRESENTATIVE AS AN ALTERNATIVE.

YOUR HONOR, I WOULD ALSO SIMPLY LIKE TO NOTE THAT, WHEN APPROPRIATE, COUNSEL FOR PLAINTIFF S.K. WOULD LIKE TO MAKE A RECORD WITH REGARDS TO HER, UNDERSTANDING OUR COURT'S -- THE COURT'S INSTRUCTIONS.

THE COURT: OKAY.

ALL RIGHT. DO YOU WANT TO BE HEARD ON MULLIN BEYOND WHAT'S IN THE PAPERS?

MS. HAZAM: I WOULD SIMPLY SAY THAT WE BELIEVE THAT SEVERAL OF THE PLAINTIFFS IN THE POOL, AND THAT WOULD INCLUDE MS. MULLIN, ARE REPRESENTATIVE OF THE CORE CHARACTERISTICS OF THIS CASE BY VIRTUE OF BEING FEMALE PLAINTIFFS WHO ALLEGE NOT ONLY ADDICTION, BUT DEPRESSION, ANXIETY, AND BODY DYSMORPHIA OR EATING DISORDERS, ALSO FALLING WITHIN THE KEY AGE RANGES FOR BOTH AGE OF FIRST USE AND CURRENT AGE, MEANING BETWEEN THE 25TH AND 75TH PERCENTILES, RATHER THAN SEVERAL OF THE DEFENSE PICKS, INCLUDING BOTH CLEVENGER AND CRAIG, WHO FALL OUTSIDE OF THAT.

ALSO, THIS WOULD PROVIDE, WE THINK, A CLOSER APPROXIMATION TO THE OVERALL POOL IN TERMS OF THE DEFENDANTS WHO HAVE BEEN NAMED BY PLAINTIFFS.

I CAN PROVIDE MORE DETAIL IF YOUR HONOR WOULD LIKE.

THE COURT: OKAY.

MR. HALPERIN: YOUR HONOR, ON CRAIG, WITH REGARD TO

HIS AGE AND GENDER, 31 PERCENT OF MDL PLAINTIFFS WITH COMPLETED FACT SHEETS, AND 36 PERCENT OF MALES, ARE OVER THE AGE OF 21.

MR. CRAIG TURNS 20 --

THE COURT: SO HOW ARE -- ARE THESE -- ARE YOU ALL TALKING APPLES AND ORANGES HERE?

MS. HAZAM: I DON'T THINK SO, YOUR HONOR.

PLAINTIFFS HAVE REVIEWED LITERALLY ONE BY ONE ALL OF THE PFS'S AND SHORT FORM COMPLAINTS. NOW, NOT ALL PLAINTIFFS WHO HAVE FILED SHORT FORM COMPLAINTS HAVE SUBMITTED PFS'S YET.

PLAINTIFFS DO NOT DISPUTE THAT THERE SHOULD BE A MALE PLAINTIFF IN THE BELLWETHER POOL, BECAUSE BY BOTH SIDES' STATISTICS IN THEIR BRIEFS --

THE COURT: HOLD ON. HE SAID 30 PERCENT -- 36 PERCENT OF MALES OVER THE AGE OF 21.

YOU'RE SAYING 3 PERCENT OVER THE AGE OF?

MS. HAZAM: 24. MR. CRAIG IS 24 YEARS OLD.

THE COURT: SO 3 PERCENT ARE 24?

MS. HAZAM: 3 PERCENT OF MALES ARE 24 OR OLDER.

THE COURT: OR OLDER. SO THAT MEANS THAT 33 PERCENT ARE BETWEEN THE AGE OF 21 AND 24?

MS. HAZAM: I DON'T THINK THAT'S WHAT THAT MEANS, YOUR HONOR, BECAUSE THERE ARE QUITE A FEW WHO ARE YOUNGER THAN THAT ALSO.

THE COURT: WELL, HE SAID 36 PERCENT ARE OVER THE AGE OF 21.

MS. HAZAM: WHAT I CAN TELL YOU -- I DON'T HAVE THAT SPECIFIC STATISTIC. I DIDN'T GO YEAR BY YEAR IN THE POOL.

BUT WHAT I CAN TELL YOU IS THE MEDIAN AGE OF A MALE PLAINTIFF IN THE OVERALL POPULATION IS 19.

IT'S ACTUALLY ALSO THE SAME MEDIAN AGE OF FEMALE PLAINTIFFS AND IS REFLECTIVE OF ALL OF OUR SUGGESTIONS FOR SELECTIONS FOR THE TRIAL POOL.

MR. CRAIG ALSO HAS AN UNUSUAL, HIGHLY UNUSUAL CONSTELLATION OF INJURIES, EVEN FOR MALE PLAINTIFFS. OVER 70 PERCENT OF MALE PLAINTIFFS DO NOT ALLEGE EITHER BODY DYSMORPHIA OR ANY EATING DISORDER.

THAT IS TRUE OF THE OTHER MALE PLAINTIFF IN THE POOL WHO PLAINTIFFS HAVE NO OBJECTION TO INCLUDING.

THE COURT: YEAH. THE PROBLEM IS THAT THE PEOPLE THAT WE ARE -- IN THE THREE THAT ARE AGREED UPON, WHAT I DON'T HAVE ARE INDIVIDUALS WHO HAVE ALLEGED SELF-HARM. NONE OF THE THREE HAVE ALLEGED SELF-HARM.

MS. HAZAM: I DON'T BELIEVE THAT'S ACTUALLY THE CASE, YOUR HONOR. ONE OF THE PLAINTIFFS THAT YOU HAVE REGARDED AS, I BELIEVE, IN THE POOL THAT BOTH SIDES AGREE SHOULD BE IN THE POOL, PLAINTIFF L.S., MS. SMITH, DOES ALLEGE THAT.

THE COURT: WELL, THAT WASN'T WHAT I --

MS. HAZAM: IT'S ON OUR CHART IN OUR BRIEF ON PAGE -- EXCUSE ME -- PAGE 4 OF PLAINTIFFS' BRIEF.

THE COURT: OKAY. HOLD ON.

MR. HALPERIN: I THINK, YOUR HONOR, THE CONFUSION IS SHE DOES NOT ACTUALLY ALLEGE IT. BUT PLAINTIFFS ARE, ARE SORT OF IMPLYING IT FROM SEVERAL OTHER INJURIES THAT THOSE MUST ENCOMPASS SELF-HARM.

MS. HAZAM: I -- YOUR HONOR, I BEG TO DIFFER. I BELIEVE IT IS ACTUALLY ALLEGED THROUGH DISCOVERY, AND SHE ALSO ALLEGES, BEYOND SELF-HARM, AN ACTUAL SUICIDE ATTEMPT.

THE COURT: OKAY. WELL, THAT'S FINE THEN.

ALL RIGHT. OKAY.

MR. HALPERIN: YOUR HONOR, IF I --

THE COURT: WELL, THAT MAKES ME FEEL BETTER.

ALL RIGHT. I WANT TO HEAR ABOUT MULLIN FROM YOUR PERSPECTIVE. I HAVE TO SAY THAT I'M INCLINED TO LET MULLIN IN THE POOL.

THERE ARE PROS AND CONS WHEN PEOPLE BECOME A LITTLE BIT TOO PUBLIC WITH THEIR CLAIMS, BUT IT'S NOT A DISQUALIFYING FACTOR, ESPECIALLY GIVEN WHAT MY OPTIONS ARE LEFT.

MR. HALPERIN: YES, YOUR HONOR.

AS TO MULLIN, THE ISSUES THAT PLAINTIFFS WANT TO TEST AND THAT THEY SAY MULLIN WOULD BE A GOOD TEST OF ARE ALL INCLUDED IN OTHER CASES THAT YOUR HONOR HAS ALREADY SAID WILL BE IN THE POOL.

FIRST, THEY SAY THAT MULLIN IS ALMOST --

THE COURT: IT'S MULLIN -- ALL THAT'S LEFT IS MULLIN, CLEVENGER, AND CRAIG. THE LATTER TWO, YOU'RE GOING TO BRING

MOTIONS FOR SUMMARY JUDGMENT, WHICH LEAVES ME WITH THREE.

SO ACTUALLY, MULLIN IS IN. THAT'S FOUR.

THE ONLY QUESTION IS WHETHER I PICK ONE OF THE OTHER TWO, EXCLUDE THE OTHER TWO, OR KEEP BOTH OF THEM IN AND WE'LL DEAL WITH THE SUMMARY JUDGMENTS. THOSE ARE THE OPTIONS.

MR. HALPERIN: OUR PREFERENCE, YOUR HONOR, WOULD BE TO INCLUDE BOTH IN THE POOL.

WE UNDERSTAND THAT NEITHER SIDE HAS OBJECTED TO CLEVENGER.

THE COURT: NO, I HAVE PLAINTIFF OBJECTING TO CLEVENGER.

MS. HAZAM: YOUR HONOR, OUR FIRST CHOICE WOULD BE THAT NEITHER OF THEM SHOULD BE INCLUDED BECAUSE WE DON'T THINK THEY'RE REPRESENTATIVE.

HOWEVER, WE UNDERSTAND THAT YOUR HONOR HAS ELIMINATED OTHERS, AND BETWEEN THE TWO, WE WOULD STRONGLY RECOMMEND MS. CLEVENGER OVER MR. CRAIG AS FAR MORE REPRESENTATIVE FOR THE REASONS THAT I NOTED, INCLUDING AGE, GENDER, AND CERTAIN VERY UNIQUE LIFE CIRCUMSTANCES OF MR. CRAIG.

THE COURT: CLEVENGER IS OLDER THAN CRAIG?

MS. HAZAM: THEY ARE BOTH 24.

MR. HALPERIN: I THINK BY A FEW MONTHS, YOU'RE RIGHT, YOUR HONOR. CRAIG TURNED 24 A COUPLE WEEKS AGO IN BETWEEN THE BRIEFING AND TODAY.

THE COURT: I HAD HIM AT 23. SO IT'S RIGHT THERE ON THE EDGE.

ALL RIGHT. CLEVENGER IS IN. AND WE CAN TEST THE STATUTE OF LIMITATIONS WITH HIM.

CRAIG IS OUT.

OKAY. COUNSEL FOR S.K. WANTS TO MAKE A RECORD?

MS. HAZAM: YES, YOUR HONOR.

MS. KOUBA: GOOD MORNING, YOUR HONOR.

IT'S ANNIE KOUBA WITH MOTLEY RICE FOR THE PLAINTIFFS.

THE COURT: OKAY. GOOD MORNING.

MS. KOUBA: UNDERSTANDING YOUR --

THE COURT: SO -- OH, I SEE YOUR NAME. THANK YOU.

MS. KOUBA: YES.

UNDERSTANDING YOUR RULING, YOUR HONOR, I DID PROMISE MY CLIENT THAT I WOULD ADVOCATE FOR HER AND MAKE A STATEMENT. I SPEAK WITH HER VERY REGULARLY, AND JUST LAST WEEK I WAS SPEAKING TO HER ABOUT THIS HEARING AND SHE VERY, VERY MUCH WANTED TO BE, AND WANTS TO BE, A BELLWETHER IN THIS CASE AND TO MOVE FORWARD WITH TRIAL.

SHE DID UNDERGO A RELAPSE EARLIER THIS YEAR. AT MY LAST CONVERSATION WITH HER, SHE HAS NOT BEEN EXHIBITING SYMPTOMS FOR MANY WEEKS NOW, AND SHE HAS SAID THAT SHE IS FEELING MUCH BETTER AND HEALTHY, THAT THE THERAPY THAT SHE HAS BEEN ENGAGED IN HAS BEEN HELPFUL.

IN FACT, I SPOKE TO HER YESTERDAY AND TALKED TO HER ABOUT SIGNING THE AUTHORIZATIONS DEFENDANTS HAVE REQUESTED FOR HER MEDICAL RECORDS, AND THOSE SIGNED AUTHORIZATIONS WERE SENT TO

DEFENDANTS THIS MORNING.

S.K. IS A TRULY REMARKABLE YOUNG LADY. SHE IS VERY STRONG. AND WE DON'T FEEL THAT IT WOULD BE FAIR TO HER TO BE ESSENTIALLY PENALIZED FOR WHAT IS A HALLMARK FEATURE OF EATING DISORDERS, AND ANOREXIA SPECIFICALLY. SOMEWHERE BETWEEN 40 AND 50 PERCENT OF ALL ANOREXIA PATIENTS DO RELAPSE AT LEAST ONE TIME. IT IS A LIFETIME DISEASE.

AND WE ACTUALLY THINK THAT THAT MAKES S.K. MORE REPRESENTATIVE AND NOT LESS.

I FEEL STRONGLY THAT SHE AND HER MEDICAL PROFESSIONALS KNOW BEST WHAT SHE CAN WITHSTAND, AND I THINK THAT HAVING STATEMENTS THAT WERE NOT ACCURATE FROM DEFENDANTS ABOUT HER WILLINGNESS AND ABILITY TO PROCEED SHOULD NOT BE THE BASIS FOR WHICH SHE IS EXCLUDED.

THE COURT: WHAT I WILL DO WITH RESPECT TO HER IS IF A SLOT OPENS UP, WE CAN REVISIT IT. ALL OF THE DISCOVERY HAS BEEN TAKEN. YOU'LL HAVE MORE TIME -- SHE'LL HAVE MORE TIME TO RECOVER.

AND, LOOK, I HAVE -- I HAVE TRIED MULTIPLE CRIMINAL CASES WITH WOMEN WHO WERE SEXUALLY ABUSED AT OUR LOCAL BUREAU OF PRISONS, AND IT IS DIFFICULT. IT IS -- SITTING ON THAT STAND UNDERGOING CROSS-EXAMINATION IN A FEDERAL COURTROOM IS NOT EASY.

SO I WILL NOT DO IT AT THIS JUNCTURE, BUT I WON'T SAY NEVER IF SOMETHING OPENS UP.

MS. KOUBA: UNDERSTOOD, YOUR HONOR.

AND I'LL JUST END BY SAYING, RESPECTFULLY, I UNDERSTAND YOUR POINT THERE.

BUT I THINK THAT THIS WILL BE VERY DIFFICULT FOR S.K. TO HEAR ABOUT HER CASE AND WILL LIKELY BE MORE TRAUMATIC FOR HER THAN MOVING FORWARD WITH A SHORT DEPOSITION, WHICH WE HAVE TOLD HER, YOU KNOW, WOULD BE ON THE HORIZON.

ALL OUR ARGUMENTS WERE SIMPLY BASED ON JUDICIAL EFFICIENCY AND LETTING HER TELL US WHEN SHE WAS READY. I'VE NOW HAD THAT CONVERSATION.

I WON'T BELABOR THE POINT, AND I RESPECT YOUR HONOR'S DECISION AND APPRECIATE THE OPTION TO REVISIT HER CASE.

THE COURT: OKAY.

ALL RIGHT. I THINK THAT'S ALL WE HAD.

I'D LIKE TO KNOW WHETHER -- LET'S SEE.

MR. BRANE, CAN YOU COME BACK UP TO THE PODIUM?

YOUR LAW FIRM RECENTLY FILED A CASE WHICH LANDED ON MY DESK, JANE DOE VERSUS ROBLOX. ARE YOU FAMILIAR WITH THAT CASE?

MR. BRANE: I AM NOT, YOUR HONOR. I APOLOGIZE.

THE COURT: IT SOUNDS LIKE ALL OF THE SAME KINDS OF, POTENTIALLY THE SAME KINDS OF ALLEGATIONS THAT ARE HAPPENING HERE, JUST -- THAT'S ALL RIGHT. WE WILL CONTACT THE LAWYERS.

I'M TRYING TO FIGURE OUT WHAT'S HAPPENING AND WHETHER WE CAN EXPECT SOME KIND OF EXPLOSION OF CASES FROM THEM.

MR. BRANE: IS THERE INFORMATION YOU'D LIKE ME TO

GATHER AND GET TO THE COURT?

THE COURT: NO, UNLESS SOMEBODY KNOWS ABOUT THESE CASES, THE ROBLOX CASES.

MS. HAZAM?

MS. HAZAM: WHAT I DO KNOW, YOUR HONOR, IS THAT THERE ARE A HANDFUL OF CASES IN THE CURRENT MDL THAT INCLUDE ROBLOX AS A DEFENDANT.

I THINK, LIKEWISE, THAT APPLIES TO DISCORD.

AND I BELIEVE -- MS. SIMONSEN MAY RECALL THIS AS WELL -- I BELIEVE THAT THERE IS AN AGREEMENT IN PLACE TO ESSENTIALLY STAY THOSE, EXCEPT AS TO DISCOVERY OF THE OTHER DEFENDANTS NAMED IN THOSE SAME CASES.

SO THERE ARE A FEW, NOT MANY, SUCH CASES CURRENTLY IN THIS MDL.

MS. SIMONSEN: ASHLEY SIMONSEN FOR THE DEFENDANTS.

I'M JUST CONFIRMING THAT'S CORRECT.

THE COURT: SO WE HAVE A FEW IN THE MDL. BUT THE CASES ARE STAYED?

MS. HAZAM: I BELIEVE THERE WAS A STIPULATION SO AGREEING, STAYED AS TO DISCOVERY OR PROCEEDINGS AS TO ROBLOX OR DISCORD, NOT AS TO OTHER DEFENDANTS WHO MAY HAVE BEEN NAMED IN THOSE SAME LAWSUITS, LIKE META OR TIKTOK, ET CETERA.

MS. SIMONSEN: THAT'S RIGHT. THE CLAIMS AGAINST ROBLOX WERE STAYED.

THE COURT: OKAY. AND THAT'S -- THAT'S HELPFUL.

THANK YOU.

OKAY. I BELIEVE WE ARE -- OKAY. WE HAVE OUR DATES GOING FORWARD: JULY 18TH; AUGUST 22ND; SEPTEMBER 19TH, ET CETERA.

ARE THERE ANY OTHER ISSUES THAT YOU ALL WANT TO DEAL WITH AT THIS JUNCTURE?

MR. SCHMIDT: PAUL SCHMIDT.

NOTHING ON THE DEFENSE SIDE, YOUR HONOR.

MS. HAZAM: NOT FROM PLAINTIFFS' SIDE, YOUR HONOR.

THE COURT: LET ME ASK SOMETHING. IF -- I MAY BE IN TRIAL, BUT I'M REALLY HOPING THE CASE SETTLES. IS THERE ANY PROBLEM MOVING AUGUST 22ND TO AUGUST 20TH?

MR. SCHMIDT: NONE ON THE DEFENSE SIDE, YOUR HONOR.

MS. HAZAM: NOT ON THE PLAINTIFFS' SIDE EITHER, YOUR HONOR.

THE COURT: OKAY. I'M GOING TO DO THAT. THAT'LL GIVE ME A LITTLE BIT OF FLEXIBILITY, AND THAT'S NECESSARY, EVEN IF I'M NOT IN TRIAL.

ALL RIGHT. WELL, EVERYBODY KEEP PLUGGING AWAY. WE'RE MAKING PROGRESS.

MR. SCHMIDT: THANK YOU, YOUR HONOR.

MS. HAZAM: THANK YOU, YOUR HONOR.

THE COURT: WE'LL SEE YOU ALL NEXT TIME. THANK YOU.

MR. SCHMIDT: THANK YOU, YOUR HONOR.

THE CLERK: THIS MATTER IS ADJOURNED.

(THE PROCEEDINGS WERE CONCLUDED AT 9:22 A.M.)

CERTIFICATE OF REPORTER

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 1301 CLAY STREET, OAKLAND, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

Lee-Anne Shortridge

LEE-ANNE SHORTRIDGE, CSR, CRR
CERTIFICATE NUMBER 9595

DATED: JUNE 24, 2025