GEOFFREY M. DRAKE, *pro hac vice*
*gdrake@kslaw.com*
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

DAVID P. MATTERN, *pro hac vice*
*dmattern@kslaw.com*
KING & SPALDING LLP
1700 Pennsylvania, NW, Suite 900
Washington, DC 20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737

*Attorneys for Defendants*
*TikTok Inc., ByteDance Inc., TikTok Ltd., ByteDance Ltd., and TikTok LLC*

[*Additional parties and counsel listed on signature pages*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>*Tucson Unified School District v. Meta Platforms Inc., et al.*<br><br>Case No. 4:24-cv-01382-YGR | MDL: 3047<br><br>Case No. 4:22-md-03047-YGR-PHK<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 5 TO EXCLUDE DEFENDANTS', THEIR EXECUTIVES, OR THEIR EMPLOYEES' "GOOD DEEDS" OR "CORPORATE PHILANTHROPY"**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang<br><br>Date: November 13, 2026<br>Time: 2:00 PM<br>Location: Courtroom 1, 4th Floor |

## TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ........ 1
II. ARGUMENT ........ 2
A. Tucson's Motion Is Overbroad and Premature. ........ 2
B. Tucson Concedes the Evidence Is Admissible for Some Purposes. ........ 3
C. The Evidence Is Critical to Tucson's Claims and Damages. ........ 4
1. Tucson's Liability Theory Makes Defendants' Safety Efforts Relevant. ........ 5
2. The Evidence Is Relevant to Tucson's Claim for Punitive Damages. ........ 6
D. The Evidence Is Not Unfairly Prejudicial. ........ 7
III. CONCLUSION ........ 9

## TABLE OF AUTHORITIES

**Page(s)**

*Aman v. Dillon Cos.*,
2014 WL 958712 (D. Colo. Mar. 11, 2014) .... 7

*Ansell v. Green Acres Contracting Co.*,
347 F.3d 515 (3d Cir. 2003) .... 4

*Austin v. Specialty Transp. Servs., Inc.*,
358 S.C. 298 (2004) .... 7

*In re Bard IVC Filters Prods. Liab. Litig.*,
2018 WL 934795 (D. Ariz. Feb. 15, 2018) .... 6

*Bullard v. Wastequip Mfg. Co. LLC*,
2015 WL 13757143 (C.D. Cal. May 4, 2015) .... 2

*Camenisch v. Umpqua Bank*,
763 F. Supp. 3d 871 (N.D. Cal. 2025) .... 2, 4

*Corcoran v. CVS Pharmacy, Inc.*,
2021 WL 633809 (N.D. Cal. Feb. 18, 2021) .... 2

*EEOC v. St. Joseph's/Candler Health Sys., Inc.*,
2022 WL 17978822 (S.D. Ga. Dec. 28, 2022) .... 7

*Gamble v. Stevenson*,
305 S.C. 104 (1991) .... 7

*Hawkins v. Allstate Ins. Co.*,
152 Ariz. 490 (1987) .... 7

*Holcomb v. Bos. Sci. Corp.*,
2016 WL 2962222 (S.D. W. Va. May 19, 2016) .... 3

*Intelligent Verification Sys., LLC v. Microsoft Corp.*,
2015 WL 1518099 (E.D. Va. Mar. 31, 2015) .... 3

*Johnson v. C.R. Bard, Inc.*,
2021 WL 2070448 (W.D. Wis. May 24, 2021) .... 6, 8

*King v. DePuy Orthopaedics, Inc.*,
2024 WL 6953089 (D. Ariz. July 9, 2024) .... 8

*McConnell v. Wal-Mart Stores, Inc.*,
995 F. Supp. 2d 1164 (D. Nev. 2014) .... 4

*Medtronic, Inc. v. Bos. Sci. Corp.*,
2002 WL 34447587 (D. Minn. Aug. 8, 2002) .... 8

*Musgrave v. Breg, Inc.*,
2011 WL 4620767 (S.D. Ohio Oct. 3, 2011) .......... 7

*In re National Prescription Opiate Litigation*
2021 WL 4341317, at *2 (N.D. Ohio Sept. 23, 2021) .......... 6

*Nunez v. Coloplast Corp.*,
2020 WL 2315077 (S.D. Fla. May 11, 2020) .......... 3

*Rawlings v. Apodaca*,
151 Ariz. 149 (1986) .......... 6

*SA Music LLC v. Apple, Inc.*,
592 F. Supp. 3d 869 (N.D. Cal. 2022) .......... 4

*Scott v. Porter*,
340 S.C. 158 (Ct. App. 2000) .......... 6

*Thompson v. Better-Bilt Aluminum Prods. Co.*,
171 Ariz. 550 (1992) .......... 6

*United States v. Hankey*,
203 F.3d 1160 (9th Cir. 2000) .......... 8

*United States v. Hitesman*,
2016 WL 3523854 (N.D. Cal. June 28, 2016) .......... 3, 4

*United States v. Pac. Gas & Elec. Co.*,
178 F. Supp. 3d 927 (N.D. Cal. 2016) .......... 3

*United States v. Sine*,
493 F.3d 1021 (9th Cir. 2007) .......... 6

*UPMC v. CBIZ, Inc.*,
2021 WL 1176746 (W.D. Pa. Mar. 29, 2021) .......... 8

*Von Wiegen v. Shelter Mut. Ins. Co.*,
2013 WL 6632020 (E.D. Ky. Dec. 17, 2013) .......... 5

*In re Wright Med. Tech. Inc.*,
2015 WL 6690046 (N.D. Ga. Oct. 30, 2015) .......... 7

**Other Authorities**

Fed. R. Evid. 401 .......... 6

Fed. R. Evid. 403 .......... 1, 7, 8

Fed. R. Evid. 404 .......... 3, 4, 6

## I. INTRODUCTION

In its Motion in Limine No. 5, Plaintiff Tucson Unified School District seeks to preclude Defendants from telling the jury about their so-called "good deeds." As a practical matter, that request is unnecessary because Defendants do not intend to introduce evidence of corporate good deeds for the purpose of demonstrating their good character. The problem, however, is that Tucson's motion seeks to exclude directly relevant evidence that could be introduced to undermine Tucson's theories. The motion should be denied.

Tucson asks the Court to exclude four sweeping categories of evidence: (1) Defendants' "charitable giving and community or school outreach"; (2) "praise, awards, and endorsements of Defendants by third parties"; (3) "stories and statistics about individuals Defendants helped, rescued, or saved, and about arrests or prosecutions attributed to Defendants"; and (4) "the personal philanthropy, character, and virtue of Defendants' executives and employees." Mot. at 2.

The motion fails for multiple independent reasons. For starters, it is premature and overbroad. Tucson identifies its target evidence only in vague, open-ended categories. Its handful of "examples" are drawn largely from other proceedings and concern only two of the four Defendants. Whether any particular item of evidence is admissible, and for what purpose, is a question best answered at trial, when the Court knows what is being offered and why. On the merits, Tucson concedes that much of the evidence within its categories is admissible for non-character purposes—dooming any attempt to exclude it outright. Indeed, the challenged evidence is directly relevant to Tucson's claims and requested damages. Tucson's theory is that Defendants deliberately targeted students and schools and put profits ahead of youth safety, and it seeks punitive damages on the ground that Defendants' conduct was "willful, wanton, malicious, fraudulent, and/or grossly negligent." Evidence of Defendants' safety-related efforts, outreach, and partnerships directly rebuts that theory. Finally, Tucson has not shown—and cannot show—that any danger of unfair prejudice substantially outweighs the evidence's probative value under Rule 403. Defendants have no interest in a trial by anecdote, but it would be particularly improper for the trial to consist of only the anecdotes Tucson prefers.

## II. ARGUMENT

### A. Tucson's Motion Is Overbroad and Premature.

Tucson's attempt to exclude wholesale evidence of Defendants' "good acts" is improperly broad. Tucson's motion sweeps in broad, ill-defined categories of evidence—including any "donations, grants, sponsorships, in-kind contributions, free resources, curricula, lesson plans, events, and awareness campaigns"; any "praise, awards, commendations, endorsements, and letters of thanks from third parties"; any "stories and statistics about individuals Defendants helped, rescued, or saved"; and any "personal philanthropy, character, dedication, and pride of Defendants' executives and employees." Mot. at 3, 5, 6. None of these has a discernible boundary. It is unclear, for example, where a "curricul[um]" or "awareness campaign[]" offered to "show generosity" ends and where that same program offered to show "what Defendants told … [schools] about the risks of their platforms"—which Tucson concedes is admissible—begins. *Id.* at 3. Nor is it clear how a witness could describe how Defendants' "reporting, enforcement, and crisis-response systems work," which Tucson says is permitted, without describing what those systems accomplish, which Tucson says is not. *Id.* at 6.

For that reason, "[m]otions in limine that seek exclusion of broad and unspecific categories of evidence … are generally disfavored," and courts instead "rule on individual objections to specific testimony at trial." *Camenisch v. Umpqua Bank*, 763 F. Supp. 3d 871, 893–94 (N.D. Cal. 2025) (quotation marks omitted). Indeed, "failure to specify the evidence" that a party "seek[s] to exclude constitutes a sufficient basis upon which to deny [its] motion." *Bullard v. Wastequip Mfg. Co. LLC*, 2015 WL 13757143, at *7 (C.D. Cal. May 4, 2015) (collecting cases); *accord Corcoran v. CVS Pharmacy, Inc.*, 2021 WL 633809, at *1 (N.D. Cal. Feb. 18, 2021) (Gonzalez Rogers, J.) (warning parties not to "misuse motions in limine in an attempt to exclude broad categories of possible evidence" and advising that such motions "are routinely denied").

The examples that Tucson provides do not save its motion from this fatal defect. *See* Brane Decl. ¶¶ 1–6. As addressed *infra*, all of those examples are admissible for a non-character purpose. Nearly all of those examples consist of evidence adduced in other litigation, and none pertains to Snap or TikTok. *See, e.g.*, *id*. Exs. A, B (an order and a brief from a Tennessee state-court action

against Meta); *id.* Exs. C, D, F (excerpts of trial transcripts from that Tennessee action against Meta, a New Mexico state-court action against Meta, and a California JCCP bellwether trial against Meta and YouTube). The Court's rulings about this type of evidence—if it is introduced at all—must be assessed in the context of this trial, and the purpose for which any Defendant seeks to offer it at this trial. The rulings should not be based on evidence presented to a different jury, under different state law, for a different set of claims, brought by a different plaintiff. As just one example, Meta does not intend to introduce evidence about Mr. Zuckerberg's charitable giving, *see id.* Ex. F at 2042:24–2043:2, 2044:23–2045:3, so there is no need for a ruling on such evidence in this case.

At bottom, Tucson's motion fails to "provide a single record citation … [to] evidence in this case," and asks the Court to issue "a ruling that is preemptive and speculative in nature." *Nunez v. Coloplast Corp.*, 2020 WL 2315077, at *10 (S.D. Fla. May 11, 2020) (deferring consideration of motion in limine to exclude evidence of "good acts or reputation"). The Court need not "order a blanket exclusion of evidence without knowing the particular evidence at issue and the context in which the evidence will be presented." *Holcomb v. Bos. Sci. Corp.*, 2016 WL 2962222, at *4 (S.D. W. Va. May 19, 2016); *accord Intelligent Verification Sys., LLC v. Microsoft Corp.*, 2015 WL 1518099, at *11 (E.D. Va. Mar. 31, 2015) (denying motion to exclude evidence of "corporate citizenship" and "charitable acts" where the court had not "been presented with the factual context for which these arguments and evidence may be proffered"). The motion can be denied as premature on this basis alone, and any objection that actually arises at trial can be addressed case by case, with adequate context. *See United States v. Hitesman,* 2016 WL 3523854, at *2 (N.D. Cal. June 28, 2016) (evidentiary rulings should ordinarily "be deferred until trial," where objections "may be resolved in proper context"); *United States v. Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927, 941 (N.D. Cal. 2016) (same).

### B. Tucson Concedes the Evidence Is Admissible for Some Purposes.

Tucson asks that its requested exclusion apply at every stage of trial, from jury selection through closing argument, and that Defendants be required to obtain Tucson's stipulation or leave of Court outside the jury's presence before offering any "good acts" evidence. Mot. at 8–9. To justify that demand, Tucson invokes Rule 404(a), which bars character evidence offered "to prove

that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1); *see* Mot. at 2. However, Rule 404 itself makes clear that evidence of a party's acts "may be admissible for *another* purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2) (emphasis added); *see, e.g., SA Music LLC v. Apple, Inc.*, 592 F. Supp. 3d 869, 885 (N.D. Cal. 2022) (holding evidence of prior acts admissible under Rule 404(b) for non-propensity purposes in civil action); *Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 519–23 (3d Cir. 2003) (affirming admission of "good act[s]" evidence in civil case under Rule 404(b)).

Tucson expressly concedes that much of the evidence it targets is admissible for other purposes. It acknowledges that its motion "does not bar evidence of Defendants' outreach to, and communications with, schools, parents, educators, and school-based organizations offered for a non-character purpose," which "goes to warnings, notice, marketing, and knowledge," and this Court "has already treated such evidence as probative of Defendants' knowledge and their targeting of school-age users." Mot. at 3 (citing Fed. R. Evid. 404(b)(2); Dkt. 2728 at 3:6–11, 27:24–28:4). It admits that Defendants may "describe how their reporting, enforcement, and crisis-response systems work," *id.* at 6; that their witnesses "may describe their professional backgrounds and the work they did on the platforms," *id.* at 7; and that if Tucson offers evidence of a specific program, "Defendants may respond about that program," *id.* at 4.

These concessions are fatal. "To exclude evidence on a motion in limine[,] the evidence must be inadmissible on *all* potential grounds." *Hitesman*, 2016 WL 3523854, at *2 (emphasis added) (alteration in original) (quoting *McConnell v. Wal-Mart Stores, Inc.*, 995 F. Supp. 2d 1164, 1167 (D. Nev. 2014)); *see also Camenisch*, 763 F. Supp. 3d at 893 ("The Court will bar use of the evidence in question only if the moving party establishes that the evidence clearly is not admissible for any valid purpose." (quotation marks omitted)). The fact that evidence may also put Defendants in a good light does not make it inadmissible. Accordingly, Tucson's motion should be denied.

### C. The Evidence Is Critical to Tucson's Claims and Damages.

As Tucson's concessions make clear, the evidence it asks the Court to exclude has independent relevance to its claims and requested damages.

### 1. Tucson's Liability Theory Makes Defendants' Safety Efforts Relevant.

The very nature of Tucson's claims renders much of this evidence relevant. The operative complaint is replete with allegations that Defendants specifically targeted schools to maximize their profits at the expense of students' health and safety:

- Defendants "deliberately embedded design features in their platforms to maximize youth engagement to drive advertising revenue," and, knowing that young people are "particularly vulnerable," "target them anyway in pursuit of additional profit." First Am. Master Compl. ¶ 7, Dkt. 729 ("FAMC").
- "Young people, including the students in the Plaintiffs' school districts and communities," are "central to Defendants' business models." *Id.* ¶ 13.
- "Defendants recognized the importance of infiltrating high schools to their platforms' success"; for example, Meta "categorize[d] high schools as either Facebook or non-Facebook and analyze[d] Instagram penetration on a school level," TikTok "knew it was disrupting students' school days and their sleep," "Snapchat knew it appealed to school-aged children [and] ran with it and never looked back," and YouTube "advertise[d] itself for use in schools." *Id.* ¶ 16.
- "Defendants could have worked with the Local Government and School District Plaintiffs to warn, educate, and protect youth from the risks of their platforms," but "[i]nstead, they prioritized their growth and financial gain." *Id.* ¶ 28.
- "Defendants have deliberately targeted school-aged children," and "counted on use of their addictive platforms spreading through entire school communities." *Id.* ¶ 214.
- "[I]n order to maximize profits, Defendants have aggressively designed and marketed their social media platforms to attract and addict minors." *Id.* ¶ 977.
- "Defendants' decision to prioritize their own profit making over the substantial negative effects of their conduct on children—and the school districts and local communities on the front lines of combatting the youth mental health crisis caused by Defendants' actions—was unreasonable." *Id.* ¶ 1018.
- "There is also moral blame attached to Defendants' conduct," because Defendants' design decisions were "driven by a desire to maximize profits with complete disregard for the horrible impact of their actions." *Id.* ¶¶ 1027, 1033.

Tucson cannot tell the jury that Defendants targeted schools for profit and failed to "work[] with" school districts "to warn, educate, and protect youth," *id.* ¶ 28, while barring Defendants from showing the jury the lesson plans, school partnership programs, online-safety curricula, and child-safety partnerships that directly rebut that claim. Such evidence is relevant to show what Defendants actually did with respect to students, schools, and safety risks to rebut Tucson's theory of the case.

Courts routinely reject motions like Tucson's on precisely this basis. *See, e.g., Von Wiegen v. Shelter Mut. Ins. Co.*, 2013 WL 6632020, at *2 (E.D. Ky. Dec. 17, 2013) (denying similar motion when "plaintiffs' case [was] centered upon the supposition that [defendant] acted improperly," and

the defendant "could rebut this assertion by offering evidence showing that it acted properly"); *In re Bard IVC Filters Prods. Liab. Litig.*, 2018 WL 934795, at *2 (D. Ariz. Feb. 15, 2018) (denying motion to exclude evidence of corporate defendants' good character because "Defendants must be permitted to rebut Plaintiffs' themes … that Defendants knowingly disregarded patient safety … and placed profits over safety"); *Johnson v. C.R. Bard, Inc.*, 2021 WL 2070448, at *8 (W.D. Wis. May 24, 2021) (declining to exclude all "good company" evidence given its relevance "particularly to rebut plaintiff's evidence that defendants knowingly disregarded patient safety"). Because Tucson presents a theory that Defendants disregarded young users' safety, Defendants must be allowed to answer it with evidence of their safety practices and youth-safety efforts.

Tucson's reliance on the "opening the door" doctrine, Mot. at 7–8, misses the point. Defendants do not contend merely that Tucson will make "partial or misleading use of particular evidence" at trial. *United States v. Sine*, 493 F.3d 1021, 1037 (9th Cir. 2007). Rather, the evidence is independently relevant under Rules 401 and 404(b)(2) because Tucson has made Defendants' intent, knowledge, motive, and treatment of schools and students part of its affirmative case. Nor does *In re National Prescription Opiate Litigation* help Tucson. There, the court excluded "in-store charitable promotions" and "other corporate conduct unrelated to opioids." Mot. at 4–5 (citing 2021 WL 4341317, at *2 (N.D. Ohio Sept. 23, 2021)). Here, by contrast, much of the challenged evidence—youth online-safety curricula, school partnership programs, child-exploitation reporting, and suicide-prevention interventions—relates directly to the youth-safety issues at the core of Tucson's claims.

**2. The Evidence Is Relevant to Tucson's Claim for Punitive Damages.**

Finally, the evidence is relevant to Tucson's request for punitive damages. To be entitled to punitive damages under Arizona law, Tucson must prove that Defendants' "evil hand was guided by an evil mind." *Rawlings v. Apodaca*, 151 Ariz. 149, 162–64 (1986); *Thompson v. Better-Bilt Aluminum Prods. Co.*, 171 Ariz. 550, 556 (1992).[1] Arizona courts look to "the nature of the defendant's conduct, including the reprehensibility of the conduct and the severity of the harm

[1] South Carolina's standard is similar, requiring that a plaintiff prove that the "defendant's misconduct was willful, wanton, or in reckless disregard of the plaintiff's rights." *Scott v. Porter*, 340 S.C. 158, 172 (Ct. App. 2000).

likely to result, as well as the harm that has occurred[,] … [t]he duration of the misconduct, the degree of defendant's awareness of the harm or risk of harm, and any concealment of it." *Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 497 (1987). Thus, evidence about the "nature of the defendant's conduct" is broadly relevant. *Id.*[2]

Evidence that Defendants invested in tools to detect and remove harmful content, partnered with child-safety organizations, built programs to help schools and parents protect students, and intervened to help at-risk young people is directly probative on these points. Courts regularly conclude that "good acts" evidence is relevant where punitive damages are sought. *See Musgrave v. Breg, Inc.*, 2011 WL 4620767, at *6 (S.D. Ohio Oct. 3, 2011) (denying motion in limine to exclude evidence that defendant "is a 'good corporate citizen'"); *In re Wright Med. Tech. Inc.*, 2015 WL 6690046, at *3 (N.D. Ga. Oct. 30, 2015) (finding it "conceivable, if not likely," that "corporate character evidence" was "probative of [their] intent for the purpose of the jury's consideration of a punitive damages award"); *EEOC v. St. Joseph's/Candler Health Sys., Inc.*, 2022 WL 17978822, at *6 (S.D. Ga. Dec. 28, 2022) (denying motion to preclude evidence of "good corporate character" in light of punitive damages claim); *cf. Aman v. Dillon Cos.*, 2014 WL 958712, at *15 (D. Colo. Mar. 11, 2014) (defendant's "good faith effort to adopt and enforce policies" was "relevant to whether punitive damages are recoverable"), *aff'd*, 645 F. App'x 719 (10th Cir. 2016). If Tucson may offer a wide range of evidence condemning Defendants' conduct toward young users and schools, Defendants must be able to offer evidence about that same conduct to show that no punitive award is justified.

**D. The Evidence Is Not Unfairly Prejudicial.**

Tucson's attempt to exclude evidence of Defendants' "good acts" under Rule 403 also fails. Rule 403 permits exclusion of relevant evidence only "if its probative value is *substantially outweighed* by a danger of … unfair prejudice." Fed. R. Evid. 403 (emphasis added). That is,

---

[2] The same is true in South Carolina, which permits broad consideration of the character of the defendant's acts; the nature and extent of the harm caused or intended; the defendant's degree of culpability; the punishment that should be imposed; the duration of the conduct; the defendant's awareness or concealment; the existence of similar past conduct; the likelihood of deterrence; and the defendant's wealth or ability to pay. *See Austin v. Specialty Transp. Servs., Inc.*, 358 S.C. 298, 313 (2004); *Gamble v. Stevenson*, 305 S.C. 104, 111–12 (1991).

"[r]elevant evidence is inherently prejudicial; but it is only *unfair* prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403," whose "application … must be cautious and sparing." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) (emphasis added). Tucson cannot meet that standard.

First, Tucson never identifies any unfair prejudice. It quotes the advisory committee's concern that character evidence may lead the jury "to reward the good man and to punish the bad man," Mot. at 2, and asserts that school outreach evidence "invites jurors to see Defendants as partners to the very schools suing them," *id.* at 4, but it never explains why any specific evidence would be *unfairly* prejudicial. That it may persuade the jury is not unfair prejudice; it is the evidence doing exactly what it is offered to do. *See, e.g., UPMC v. CBIZ, Inc.*, 2021 WL 1176746, at *2 (W.D. Pa. Mar. 29, 2021) (holding probative value of "corporate good acts and good character" was not substantially outweighed by unfair prejudice); *Johnson*, 2021 WL 2070448, at *8 (similar).

Second, Tucson's cases excluding "success stories" and unverifiable statistics are inapposite. *See* Mot. at 6 (citing *King v. DePuy Orthopaedics, Inc.*, 2024 WL 6953089, at *3 (D. Ariz. July 9, 2024), and *Medtronic, Inc. v. Bos. Sci. Corp.*, 2002 WL 34447587, at *44–45 (D. Minn. Aug. 8, 2002)). Those rulings involved wholly "irrelevant" evidence that plaintiffs lacked "the ability to investigate." *King*, 2024 WL 6953089, at *3; *see Medtronic*, 2002 WL 34447587, at *44–45 (excluding statistics about lives saved by defendant's medical devices from patent infringement trial). Here, whether Defendants' safety systems detect and respond to the very harms Tucson attributes to their platforms is central to the case, and any concern about verification or collateral "mini-trials" can be addressed through objections at trial—not a blanket pretrial exclusion.

Finally, granting the motion would unfairly prejudice Defendants, not Tucson. Barring Defendants' witnesses from referring to the safety work at the core of their defense would force them to contort their testimony to avoid describing what they actually do and would leave the jury with a one-sided picture of the evidence. For the same reasons, the Court should reject Tucson's request for an order applying "throughout trial" and requiring Defendants to obtain a stipulation or

leave of Court before offering any evidence within its categories. Mot. at 8–9. Contemporaneous objections, decided in context, are the appropriate mechanism.

## III. CONCLUSION

For the foregoing reasons, the Court should deny Tucson's Motion in Limine No. 5.

Dated: October 29, 2026

Respectfully submitted,

By: */s/ Geoffrey M. Drake*

GEOFFREY M. DRAKE, *pro hac vice*
gdrake@kslaw.com
TACARA D. HARRIS, *pro hac vice*
tharris@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-4600

DAVID P. MATTERN, *pro hac vice*
dmattern@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Suite 900
Washington, DC 20006
Telephone: (202) 737-0500

BAILEY J. LANGNER
blangner@kslaw.com
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1200

DANIEL M. PETROCELLI (SB #97802)
dpetrocelli@omm.com
SABRINA H. STRONG (SB # 200292)
sstrong@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 553-6700

STEPHEN D. BRODY, *pro hac vice*
sbrody@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006
Telephone: (202) 383-5300

*Attorneys for Defendants TikTok Inc., ByteDance Inc., TikTok Ltd., ByteDance Ltd., and TikTok LLC*

By: */s/ Ashley M. Simonsen*

Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800

Facsimile: (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones (*pro hac vice*)
Paul W. Schmidt (*pro hac vice*)
Christian J. Pistilli (*pro hac vice*)
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
Email: pajones@cov.com
Email: pschmidt@cov.com
Email: cpistilli@cov.com

Beth A. Wilkinson (*pro hac vice*)
Rakesh Kilaru (*pro hac vice*)
Jolee Porter (*pro hac vice*)
Matthew R. Skanchy (*pro hac vice*)
WILKINSON STEKLOFF LLP
2001 M Street, NW, 10th Floor
Washington, D.C. 20036
Telephone: (202) 847-4010
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jporter@wilkinsonstekloff.com
mskanchy@wilkinsonstekloff.com

Moira K. Penza (*pro hac vice*)
WILKINSON STEKLOFF LLP
130 W 42nd Street, 24th Floor
New York, NY 10036
Telephone: (212) 294-8925
Facsimile: (202) 847-4005
mpenza@wilkinsonstekloff.com

*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc. and Instagram, LLC*

By: *<u>/s/ Jonathan H. Blavin</u>*
Jonathan H. Blavin (State Bar No. 230269)
Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel: (415) 512-4000

E. MARTIN ESTRADA (SBN 223802)
Martin.Estrada@mto.com
L. ASHLEY AULL (SBN 257020)
Ashley.Aull@mto.com
VICTORIA A. DEGTYAREVA (SBN

284199)
Victoria.Degtyareva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel.: (213) 683-9100

ALLISON BROWN (*pro hac vice*)
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Tel.: (215) 268-5000

JESSICA DAVIDSON (*pro hac vice*)
jessica.davidson@kirkland.com
JOHN J. NOLAN (*pro hac vice*)
jack.nolan@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800

*Attorneys for Defendant Snap Inc.*

By: */s/ Ashley W. Hardin*
ASHLEY W. HARDIN, *pro hac vice*
ahardin@wc.com
J. ANDREW KEYES, *pro hac vice*
akeyes@wc.com
NEELUM J. WADHWANI (SBN 247948)
nwadhwani@wc.com
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Tel.: (202) 434-5000

*Attorneys for Defendants YouTube, LLC and Google LLC*

**ATTESTATION**

I, David P. Mattern, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: October 29, 2026

By: */s/ Geoffrey M. Drake*
Geoffrey M. Drake