Thomas P. Cartmell (*pro hac vice*)
Jonathan P. Kieffer (*pro hac vice*)
Austin Brane, SBN 286227
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel: (816) 701-1100
tcartmell@wcllp.com
jpkieffer@wcllp.com
abrane@wcllp.com

*Attorneys for Plaintiff* (additional counsel on signature page)

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>*Tucson Unified School District v. Meta Platforms, Inc., et al.*,<br><br>Case No.: 4:24-cv-1382 | MDL No. 3047<br><br>Case No. 4:22-MD-03047-YGR<br><br>**PLAINTIFF TUCSON UNIFIED SCHOOL DISTRICT'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE, ARGUMENT, OR REFERENCE TO THE NCOSE "DIRTY DOZEN" OR THORN REPORTS (MIL NO. 2)**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Hearing: November 13, 2026, 2:00 p.m. |

## I. INTRODUCTION

Defendants' request to exclude Thorn's reports and the National Center on Sexual Exploitation's ("NCOSE") "Dirty Dozen" lists relies on mischaracterizations of TUSD's case and the purpose for which it is offering these materials. ECF No. 3592. CSAM is a recurring problem in TUSD's schools, and the problem usually occurs on Defendants' platforms. When these incidents happen, "the District is unable to find out how far an image has spread on a social media platform, or alert the platform that a sexual image of one of our students is on its service." Ex. A, Warmbrand Decl. ¶ 8. The Thorn reports and Dirty Dozen materials address that same problem. TUSD offers them not for their truth, but to show that Defendants were on notice of it. That notice bears directly on a claim this Court held survives Section 230, namely Defendants' failure to provide adequate mechanisms to "report CSAM and adult predator accounts … ." *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 702 F. Supp. 3d 809, 829 (N.D. Cal. 2023). It also bears on TUSD's failure-to-warn claim, which rests on a duty arising from Defendants' knowledge, "based on public studies or internal research, of the ways that their products harm children." *Id.* at 834. Thus, the materials are not hearsay. The documents are highly relevant to TUSD's claims, and their probative value is not outweighed by unfair prejudice or other Rule 403 concerns.

## II. BACKGROUND

TUSD has faced significant CSAM-related disruptions attributable to Defendants' platforms. TUSD witnesses have testified about various CSAM-related issues within the District. TUSD Superintendent Trujillo testified that one type of issue within TUSD is "possession of sexually inappropriate images or materials," often on students' phones. Ex. B, Trujillo Dep. 5/8/25 at 217:21-219:4; Ex. C, Rodriguez Dep. 3/3/26 at 53:11-54:2. Predators have targeted students through Defendants' platforms, harming students' mental health because students "just don't necessarily know better than to give out some identifying information." Ex. D, Carrier Dep. 5/7/25 at 165:2-23. Anna Schwartz Warmbrand, TUSD's Director of Student Relations, attests that "incidents involving sexual images of TUSD students occur consistently across the District's middle and high schools." Ex. A, Warmbrand Decl. ¶ 3. As Ms. Warmbrand explains, "[t]hese

incidents are not only a cell-phone or text-message problem." *Id.* ¶ 4. The images "were most often posted, sent, or threatened to be posted on social media platforms, including Instagram and Snapchat." *Id.* The incidents include "students sharing a classmate's image without consent; students threatening to post a classmate's image; and accounts created to post images of students without consent." *Id.* Each incident demands significant District resources, often including an investigation, notice to families, a mandatory report to law enforcement, a Title IX process, disciplinary proceedings, and a safety plan and counseling for the student depicted. *Id.* ¶ 5.

When these incidents occur, however, "the District is unable to find out how far an image has spread on a social media platform, or alert the platform that a sexual image of one of our students is on its service." Ex. A, Warmbrand Decl. ¶ 8. To Ms. Warmbrand's knowledge, "TUSD has no way to report a sexual image of a student to Instagram, Facebook, Snapchat, or TikTok on behalf of the District without logging in to a personal account on that platform, and none of these platforms has given TUSD a dedicated channel for doing so." *Id.* And without an effective way to promptly report these images, "the incident lasts longer; more students see the image; the harm to the student depicted is greater; more discipline cases follow from the sharing; and the District spends more time responding." *Id.* ¶ 10.

Despite these predictable and pervasive issues, Defendants have inadequate mechanisms for reporting CSAM on their platforms. ECF No. 2480 at 72-74 (Meta), 124-25 (TikTok), 156-158 (Snap). The Court's Motion to Dismiss Order holds that TUSD may assert a claim based on Defendants' "failure to create adequate processes for users to report suspected CSAM to defendants' platforms." *In re Soc. Media*, 702 F. Supp. 3d at 829, 839 (permitting claim based on defendants "[n]ot implementing reporting protocols to allow users or visitors of defendants' platforms to report CSAM and adult predator accounts specifically without the need to create or log in to the products prior to reporting"). In support of this claim, TUSD seeks to present evidence from external organizations—specifically Thorn and NCOSE—that alerted Defendants to this serious problem on their platforms.

Both Thorn and NCOSE are organizations dedicated to combating child sexual abuse and exploitation. Thorn seeks to prevent online sexual abuse and exploitation of children. ECF No.

3593-9 at 6. It produces research reports on various topics related to child sexual exploitation, such as online grooming, sextortion, CSAM, and responding to online threats. Ex. E, Istook Rep. ¶ 17. For instance, Thorn published a report in August 2020 titled "Self-Generated Child Sexual Abuse Material: Attitudes and Experiences." Ex. F, Aug. 2020 Thorn Rep. This report discusses the high prevalence of self-generated CSAM among teenagers on social media, and the "circulation of nonconsensual intimate images" among young people, among other related issues. *See, e.g.*, *id.* at 7, 10, 25. Thorn's research is, therefore, not limited to "child sexual abuse perpetrated by third-party predators online," as Defendants portray it. Mot. at 1. It covers a range of CSAM issues, including the problems that TUSD routinely confronts.

Complementing Thorn's research, NCOSE publishes an annual "Dirty Dozen" list. *See, e.g.*, ECF No. 3593-4 at 2. The Dirty Dozen list "catalogs top mainstream promoters of sexual exploitation and pornography in America." ECF No. 3593-8 at 2. In 2026, for instance, NCOSE listed Snapchat, TikTok, and Meta CEO Mark Zuckerberg as contributors to sexual exploitation. ECF No. 3593-4 at 4-5. The list specifically notes that it "puts these companies on notice and cautions the public" about the risk of child sexual exploitation on the platforms. *Id.* at 5. Indeed, NCOSE sends a letter to the entities on the list notifying them of their placement and NCOSE's "concern regarding the cyberbullying and distribution of pornography—including self-produced child pornography—and other sexually explicit content facilitated via your photo-sharing app." ECF No. 3593-8 at 2. The letter "ask[s] that you implement aggressive measures to quickly address these issues on your platform" and explains, in detail, concerns about trends of cyberbullying and sexting—including posting humiliating pictures and self-produced child pornography—and the attendant risks of "depression, decreased self-worth, hopelessness, and loneliness—precursors to suicidal thoughts and behaviors." *Id.* at 2. NCOSE's materials, like Thorn's research, therefore address the same harms TUSD confronts in its schools, including cyberbullying, the circulation of sexual images among students, and the resulting risks to students' mental health.

## III. ARGUMENT

### A. The Thorn Reports and NCOSE's "Dirty Dozen" Lists Are Not Inadmissible Hearsay.

The Court should reject Defendants' arguments that these documents are inadmissible hearsay because they misstate the purpose for which TUSD offers these materials. TUSD's use of these exhibits is not premised on the truth of their contents, as Defendants assert. Mot. at 5. Instead, TUSD seeks to use the documents to show that Defendants had knowledge and notice of the risk, and the need for, effective CSAM reporting mechanisms. A statement is hearsay only if "a party offers [it] in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(2). Courts routinely admit out-of-court statements for the purpose of showing that a defendant had notice or knowledge of potential problems, without regard for the "truth" of the documents. *See MacDonald v. Ford Motor Co.*, 142 F. Supp. 3d 884, 898 (N.D. Cal. 2015) (admitting documents showing consumer complaints for purpose of showing that defendant "*knew* of at least two alleged accidents" arising from the alleged vehicle defect); *Kunz v. Utah Power & Light Co.*, 913 F.2d 599, 605 (9th Cir. 1990) (affirming trial court's decision to admit press releases showing that party had notice of potential flooding circumstances); *United States v. Rogers*, 321 F.3d 1226, 1229 (9th Cir. 2003) (admitting criminal complaint against ponzi scheme's organizer "to show that once [defendant] received a copy of it, he was aware that [investment program] may be a fraudulent scheme."); *F.T.C. v. AMG Servs., Inc.*, 558 F. Supp. 3d 946, 958 (D. Nev. 2021) (admitting emails for non-hearsay purpose of showing that defendant "was *aware* that the loan repayment model was problematic and confusing to consumers … ." (internal quotation marks omitted)). Here, TUSD seeks to use the Thorn reports and Dirty Dozen lists to show Defendants had detailed notice and knowledge of sexual exploitation problems on their platforms, and thus the need for effective reporting mechanisms.

Defendants' argument about multiple layers of hearsay fails for the same reasons. Defendants reference "unsubstantiated statements from other sources," such as survey results, newspaper reports and allegations from complaints filed in other civil cases. Mot. at 5. But TUSD does not seek to prove the truth of these survey results, newspaper quotes, or allegations in other

lawsuits, only that Defendants had notice through these lists and reports about the need for adequate reporting mechanisms. To the extent TUSD seeks to use documents that reference allegations in other lawsuits, TUSD is open to reasonable redactions. But Defendants have supplied no basis to exclude an entire category of relevant evidence.

The JCCP Order excluding the Dirty Dozen lists should not govern here. ECF No. 3593-3 at 3. First, the JCCP Court only excluded the Dirty Dozen lists. The Thorn reports were not at issue. *Id.* Second, the JCCP plaintiffs offered the Dirty Dozen lists for a purpose TUSD does not advance. The JCCP plaintiffs offered the Dirty Dozen lists to show "notice of harms resulting from their platforms, including that platform features facilitated adult-minor contact and grooming." *Id.* The JCCP Court rejected that notice argument, because "Plaintiffs have not shown that, under Section 230, they can hold Defendants[ ] liable for facilitating adult-minor contact and grooming." *Id.* Thus, the question of whether Defendants had notice that their platforms facilitated adult-minor contact and grooming was irrelevant. *Id.*

Third, the JCCP plaintiffs also offered the list to rebut Defendants' safety claims by showing that Meta's "practices have gotten worse, not better, when it comes to protecting teens." *Id.* Because that use depended on the "truth" of the Dirty Dozen lists, the JCCP Court excluded the evidence. *Id.* at 4. Here, by contrast, TUSD offers these materials to show notice relevant to a claim this Court has held survives under Section 230. That is, TUSD may assert a claim based on Defendants' failure to provide adequate mechanisms to report CSAM and adult predator accounts. *In re Soc. Media*, 702 F. Supp. 3d at 829–30. Accordingly, the JCCP Order excluding the Dirty Dozen lists should not control.

Defendants' Statement of Recent Decision does not change the analysis. ECF No. 3615-1. The October 20, 2026, JCCP order addressed a different motion seeking to exclude references to grooming, sextortion, inappropriate interactions with children, or similar child safety harms. *Id.* at 2. It does not mention Thorn or NCOSE. More importantly, it turned on a Section 230 theory and a different evidentiary record. Under the JCCP Court's prior rulings, the only actionable theory of third-party sexual harm was a "feature that recommends a personal contact to a minor," meaning Defendants "generally cannot be held liable in this action for 'platform-based sexual harm' caused

by third parties unless the harm arose from a friend recommendation." *Id.* at 2, 4. The JCCP Court concluded that the plaintiffs had no alleged harms arising from adult friend recommendations. Both plaintiffs "testified that they do not believe or recall that they were ever sexually groomed or sextorted on Defendants' platforms." *Id.* at 3. Thus, because the JCCP plaintiffs did not assert "claims for harm from third-party content that are actionable under this court's prior rulings," the court deemed the evidence irrelevant. *Id.*

TUSD's case is different on both counts. This Court has held that Section 230 does not bar TUSD's claim that Defendants failed to provide adequate mechanisms to "report CSAM and adult predator accounts … ." *In re Soc. Media*, 702 F. Supp. 3d at 829–30. TUSD's evidence ties its harms directly to that defect. Incidents involving sexual images of students "occur consistently across the District's middle and high schools," and when they do, "the District is unable to find out how far an image has spread on a social media platform, or alert the platform that a sexual image of one of our students is on its service." Ex. A, Warmbrand Decl. ¶¶ 3, 8.

In sum, Defendants are incorrect that the only purpose of introducing these matters is to prove that Defendants are facilitating, enabling, and profiting from sexual abuse and exploitation. Mot. at 5. The purpose is to show that Defendants had notice of the risk of CSAM on their platforms, and thus the need for effective CSAM and adult predator reporting mechanisms. That purpose does not depend on whether NCOSE's Dirty Dozen list or Thorn's research reports are true. At minimum, the Court should reserve ruling for trial, because the issue will be presented in a narrower fashion, i.e., TUSD will seek to introduce only a limited subset of the evidence Defendants seek to exclude, and the Court will have the benefit of context. Accordingly, the Court should reject Defendants' hearsay arguments.

### B. The Thorn Reports and NCOSE Dirty Dozen Lists Are Relevant to TUSD's Negligence and Failure to Warn Claims.

Defendants' relevance argument misconstrues both TUSD's claims and this Court's rulings. Mot. at 6. Consistent with the Court's Motion to Dismiss Order, TUSD does not seek to hold Defendants liable for the conduct of third parties who use their platforms, for third-party content, or for facilitating criminal misconduct. Mot. at 6; *In re Soc. Media*, 702 F. Supp. 3d at 859

(dismissing Plaintiffs' claims "to the extent such claims are premised on the existence of a duty to protect users from third party actors using their platforms"). Defendants do acknowledge that TUSD has a claim "predicated upon Defendants' alleged failure to provide a way for users to report such third-party predators without first creating an account or logging in … ." Mot. at 7. But Defendants overlook that TUSD may hold Defendants liable not just for failing to provide a mechanism for reporting adult predator accounts, but also for "[n]ot implementing reporting protocols to allow users or visitors of defendants' platforms to report CSAM" without the need to create an account or log in to the platform prior to reporting. *In re Soc. Media*, 702 F. Supp. 3d at 829. Thus, TUSD's claims encompass both CSAM reporting and adult predator account reporting, contrary to Defendants' narrower characterization.

The NCOSE Dirty Dozen lists and the Thorn reports are directly relevant to TUSD's claims regarding CSAM and adult predator reporting. These materials are not solely focused on adult predator accounts. As described above, Thorn reports cover a wide range of sexual exploitation issues—including self-generated CSAM on social media platforms—which is a significant issue facing TUSD and for which Defendants lack an adequate reporting mechanism. Ex. F, Aug. 2020 Thorn Rep. Similarly, NCOSE's Dirty Dozen lists broadly encompass child sexual exploitation issues, including cyberbullying and distribution of CSAM. ECF No. 3593-8 at 2. In any event, Defendants concede that TUSD has evidence that adult predators are also a problem for TUSD, although a less frequent occurrence than student-generated CSAM. Mot. at 8 n.2 (acknowledging that School Counseling Department Coordinator Rebecca Carrier testified that predators target students through Snapchat and other platforms). Evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence" and that fact is "of consequence in determining the action." Fed. R. Evid. 401. Further, "[a] motion in limine should not be used to resolve factual disputes or weigh evidence." *Kaneka Corp. v. SKC Kolon PI, Inc.*, No. CV 11-3397 JGB (RZX), 2015 WL 12696109, at *11 (C.D. Cal. Nov. 5, 2015). This evidence bears directly on Defendants' knowledge and notice of the need for adequate reporting mechanisms for CSAM and adult predators.

The NCOSE and Thorn reports are also relevant to TUSD's failure to warn claim. A failure to warn claim is actionable only if Defendants would not have to monitor third-party content to appreciate the risk. *Doe v. Internet Brands*, 824 F.3d 846, 853 (9th Cir. 2016). The Court's Summary Judgment Order notes that "plaintiffs may pursue failure to warn claims only if the duty derives from defendants' independent knowledge of a foreseeable risk of harm." ECF No. 2728 at 30 (citing *Doe v. Grindr Inc.*, 128 F.4th 1148, 1154 (9th Cir. 2025)). That independent knowledge cannot derive from Defendants' status as publishers or speakers, and instead must arise from "'another source.'" *Id.* (quoting *Grindr*, 128 F.4th at 1154). The Thorn reports and NCOSE Dirty Dozen lists are exactly the kind of source that can support a failure to warn claim against Defendants. Accordingly, the Thorn reports and Dirty Dozen lists are highly relevant to TUSD's claims.

### C. The Probative Value Is Not Substantially Outweighed by the Danger of Unfair Prejudice.

Defendants' unfair prejudice argument provides no basis for exclusion. "Exclusion of relevant evidence under Rule 403 is proper only if one or more of the rule's articulated dangers or considerations 'substantially outweigh[s]' the evidence's probative value." *Sidibe v. Sutter Health*, 103 F.4th 675, 698–99 (9th Cir. 2024). Evidence cannot be excluded merely because it is prejudicial. *United States v. Booth*, 669 F.2d 1231, 1239 (9th Cir. 1981).

The fact that third-party content is implicated in the Thorn and Dirty Dozen Lists does not warrant exclusion. Section 230's applicability is determined by the duty at issue, not by the mechanism of harm. *HomeAway.com v. City of Santa Monica*, 918 F.3d 676, 682 (9th Cir. 2018). That is, "[e]ven if third-party content is a 'but-for' cause of the harm suffered by a plaintiff, the action is not barred by Section 230 if the cause of action does not seek to hold the provider liable as a publisher." *Social Media Cases*, No. 22STCV21355, 2023 WL 6847378, at *12 (Cal.Super. Oct. 13, 2023); *Commonwealth v. Meta Platforms, Inc.*, 277 N.E.3d 166, 180–82 (Mass. 2026) (rejecting that Section 230 immunity applies "anytime there is a 'but-for' causal relationship between the act of publication and liability"). Thus, this evidence does not "fl[y] in the face" of this Court's Section 230 rulings, as Defendants contend. Mot. at 9.

Defendants' concerns about the inflammatory nature of CSAM are misplaced. TUSD has a claim based on Defendants' failure to provide adequate reporting mechanisms for CSAM and adult predator accounts, so the topic will be an unavoidable part of the trial. "A party cannot use a motion in limine to sterilize the other party's presentation of the case." *San Bernardino Cnty. v. Ins. Co. of The State of Pennsylvania*, No. CV 21-01978 PSG (AS), 2024 WL 4003164, at *1 (C.D. Cal. Mar. 11, 2024). Defendants' cases on this point are distinguishable. In *United States v. Aranda-Diaz*, No. CR 12-2686 JB, 2014 WL 459607, at *10 (D.N.M. Jan. 8, 2014), the court excluded evidence about the government's narcotics expert's prior arrest for domestic violence and child abuse, reasoning that it was impermissible character evidence under Rule 608, and not probative of any material issue in the case. In *United States v. Curtin*, 489 F.3d 935, 957 (9th Cir. 2007), the Ninth Circuit concluded that the district court failed to properly conduct a Rule 403 balancing test with regard to "a particularly graphic description" of a young girl engaging in sexual acts, and that "under no circumstances was this [description] admissible with respect to any issue in this case." *Id.* Here, TUSD does not seek to introduce gratuitous allegations of child abuse or graphic content. Accordingly, Defendants' Rule 403 concerns are misplaced.

Finally, Defendants' vague concerns about a jury imposing liability based on user conduct in violation of Section 230 are baseless. Mot. at 10. The jury will be instructed on TUSD's claims and the applicable law, through limiting instructions during trial as necessary and at the close of the case. And because TUSD seeks to use the Thorn reports and NCOSE Dirty Dozen lists for notice purposes, there need not be a series of mini-trials about the truth of any information contained in those reports or lists. The Court should reject Defendants' Rule 403 argument.

## IV. CONCLUSION

The Court should deny Defendants' Motion in Limine No. 2 seeking to exclude evidence, argument, or reference to the NCOSE Dirty Dozen lists or Thorn reports.

Dated: October 29, 2026 RESPECTFULLY SUBMITTED

**WAGSTAFF & CARTMELL LLP**
*/s/ Thomas P. Cartmell*
Thomas P. Cartmell

Thomas P. Cartmell (*pro hac vice*)
Jonathan P. Kieffer (*pro hac vice*)
Austin Brane, SBN 286227
Michael P. Cutler, SBN 270663
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel: (816) 701-1100
tcartmell@wcllp.com
jpkieffer@wcllp.com
abrane@wcllp.com
mcutler@wcllp.com

Kirk J. Goza (*pro hac vice*)
Brad Honnold (*pro hac vice*)
**GOZA & HONNOLD LLC**
9500 Nall Ave., Ste 400
Overland Park, KS 66207
Tel. (913) 451-3433
kgoza@gohonlaw.com
bhonnold@gohonlaw.com

Joseph G. VanZandt (*pro hac vice*)
Davis Vaughn (*pro hac vice*)
Jennifer Emmel (*pro hac vice*)
Clinton Richardson (*pro hac vice*)
Seth Harding (*pro hac vice*)
**BEASLEY ALLEN CROW**
**METHVIN PORTIS & MILES, LLC**
234 Commerce Street
Montgomery, AL 36103
Tel: 334-269-2343
Joseph.VanZandt@BeasleyAllen.com
Davis.Vaughn@BeasleyAllen.com
Jennifer.Emmel@BeasleyAllen.com
Clinton.Richardson@BeasleyAllen.com
Seth.Harding@BeasleyAllen.com

***Counsel for Plaintiff Tucson Unified School District***

## ATTESTATION

I, Austin Brane, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: October 29, 2026

By: */s/ Austin Brane*

**Austin Brane**

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing on October 29, 2026, using the Court's ECF filing system, thereby sending notice of the filing to all counsel of record.

By: */s/Austin Brane*

**Austin Brane**