Thomas P. Cartmell (*pro hac vice*)
Jonathan P. Kieffer (*pro hac vice*)
Austin Brane, SBN 286227
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel: (816) 701-1100
tcartmell@wcllp.com
jpkieffer@wcllp.com
abrane@wcllp.com

*Attorneys for Plaintiff* (additional counsel on signature page)

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION, | Case No. 4:22-MD-03047-YGR<br>MDL No. 3047 |
| This Document Relates to:<br>*Tucson Unified School District v. Meta Platforms Inc., et al.*<br>Case No. 4:24-cv-01382 | **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE CERTAIN OPINION TESTIMONY BY DR. BRYCE WARD**<br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

## I. INTRODUCTION

Defendants Meta Platforms, Inc., et al., ("Defendants") previously brought a motion to exclude the opinions of Dr. Bryce Ward, an expert for Plaintiff Tucson Unified School District ("TUSD"). The Court rejected Defendants' *Daubert* motion, and should reject this motion also. Defendants' brief offers no authority as to why it is proper to file what is, effectively, a second *Daubert* motion against Dr. Ward. Even if Defendants were to claim that this motion is different because it relies primarily on Rules 403 and 703, rather than Rule 702, a motion based on Rules 703 and 403 still falls within the *Daubert* framework. *See Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 592, 595 (citing Fed. R. Evid. 703 & 403 as part of the analysis).

Dr. Ward's opinions have not changed since the Court permitted them before. (*See* Dkt. No. 2750, *Order Denying Rule 702 Motion to Exclude School District Experts* ("Order") at 1, 8-10.) Dr. Ward has a Ph.D. in economics from Harvard, and he is an expert in economic and statistical analysis. (*Id.* at 8; *see also* Ward Rpt., Ex. 1 to Def. Mot., at 1 (¶ 2).) His report calculates past damages from time lost by TUSD teachers and staff members, due to addressing problems caused by students' social media addiction. (Ward Rpt. at 2 (¶¶ 5-6).) This Court rejected arguments that these damages are legally barred, and that Dr. Ward "accepted unreliable inputs" for his calculations. (Order at 8-10.)

The latter argument mirrors the argument that Defendants raise now—nothing has changed about the inputs Dr. Ward used in his calculations. Defendants' second attack on Dr. Ward is based **solely** on the absence of three names from Plaintiff's Preliminary Witness List: TUSD employees Brian Lambert, Holly Hammel, and Dr. Sabrina Salmon. (Mot. at 3.) Neither of Defendants' arguments based on the witness list has merit.

Defendants first cite Rule 703, claiming that Dr. Ward improperly relies on hearsay. Rule 703 permits experts to rely on hearsay, and does not require supportive testimony. *See* Fed. R. Evid. 703. In calculating TUSD's damages, Dr. Ward relied on declarations given by Mr. Lambert, Ms. Hammel, and Dr. Salmon. These employees estimated the time that employees in various TUSD staff positions devote to solving problems created by students' social media use. (Ward Rpt. at 4-6, 10 (¶¶ 14-21, 36).) Dr. Ward also relied on expert Robert Klein, who surveyed teachers about

instructional time lost due to social media use. (*Id.* at 8-9 (¶¶ 29-33).) Dr. Ward used this information to calculate compensatory damages, applying the economic principle of "opportunity cost." (*Id.* at 7-8, 11 (¶¶ 7, 37-38).)

The TUSD employees' affidavits contain the "kinds of fact or data" that an expert in Dr. Ward's field—providing economic and statistical analysis—would reasonably rely on. Rule 703 asks whether Mr. Lambert, Ms. Hammel, and Dr. Salmon are reasonable sources of information, not whether they are planning to testify in court. They are, in fact, reasonable sources of information, and Defendants' motion does not contend otherwise.

Defendants also claim that the risk of unfair prejudice from Dr. Ward's testimony substantially outweighs its probative value unless all of his TUSD sources testify. (Mot. at 7-8 (citing Fed. R. Evid. 403).) This argument fares no better. First, Dr. Ward's calculations have significant probative value. If jurors find for TUSD, they will have to calculate damages. Dr. Ward's calculations are an invaluable resource for jurors, with or without the testimony at issue. Second, Defendants vastly overstate their inability to cross-examine Dr. Ward if Mr. Lambert, Ms. Hammel, and Dr. Salmon do not testify. Defendants **have deposed** all three declarants. When cross-examining Dr. Ward, they may use information gained from those depositions about the inputs into Dr. Ward's calculations. The fourth TUSD employee who supported Dr. Ward's calculations, Julie Shivanonda, will testify live. Defendants can question her about the process that she used in estimating time lost to social media. Defendants also have placed Mr. Lambert, Ms. Hammel, and Dr. Salmon on their witness list. And, Defendants can cross-examine Dr. Ward using the argument that they have used in their motion—i.e., that he cannot independently verify the time estimates. Defendants have multiple ways to challenge Dr. Ward's calculations, so the risk of unfair prejudice from allowing Dr. Ward to testify to them would not substantially outweigh the probative value of this testimony. Fed. R. Evid. 403.

For all of these reasons, the Court should deny Defendants' Motion in Limine No. 1.[1]

[1] TUSD has added Mr. Lambert, Ms. Hammel, and Dr. Salmon to its witness list. But their addition does not moot Defendants' motion. Plaintiff has limited trial time and would prefer to maintain the choice as to how many of these declarants it will call at trial. So, Plaintiff would appreciate the Court's ruling as to whether calling all four declarants at trial is necessary for Dr. Ward to testify based, in part, on their declarations.

## II. ARGUMENT

It is difficult to pinpoint the rules under which Defendants bring their motion. The first line cites Federal Rules of Evidence 402, 403, 702, 703, and 801. (Mot. at 1.) But Defendants do not mention Rules 402 (relevance) and 702 (admission of expert testimony) again, and mention Rule 801 only in passing. (Mot. at 5.) It appears that Defendants principally seek to exclude his testimony under Rule 703, claiming it is "not a permissible use of hearsay," and under Rule 403, claiming that the risk of unfair prejudice substantially outweighs the testimony's probative value. Again, the Court should deny Defendants' motion as an improper second *Daubert* motion. But if it addresses the merits, the Court should reject each argument.

### A. Rule 703 does not bar Dr. Ward's testimony because the information he relies on has not changed since the Court held that he was permitted to rely on it.

Rule 703 permits experts to rely "on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. The rule allows experts to rely on otherwise inadmissible information "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703. A court may conclude from the expert's testimony alone that experts in that field reasonably rely on the "kinds of facts or data" at issue. *Christiansen v. Syverson*, 516 F. Supp. 3d 1151, 1156 (D. Idaho 2021) (citing *Ward v. Dixie Nat. Life Ins. Co.*, 595 F.3d 164, 182 (4th Cir. 2010); and *Sphere Drake Ins. PLC v. Trisko*, 226 F.3d 951, 955 (8th Cir. 2000)).

Here, Dr. Ward relies on "facts or data" that have been made known to him through the declarations of TUSD employees. And, he will testify that experts in his field—economic and statistical analysis—would reasonably rely on the information provided in the TUSD employees' affidavits. Defendants' argument also ignores critical language in Rule 703, which focuses on the "kinds of facts or data" relied on by the expert. Fed. R. Evid. 703. The "kinds of facts or data" that Dr. Ward relies on have not changed. Indeed, the **specific** data that Dr. Ward relies on has not changed. This Court previously found that "defendants have not carried their burden to demonstrate that plaintiffs' employee affidavits are barred from forming the basis of an expert's opinions." (Order at 10.) Dr. Ward is relying on the same affidavits that the Court addressed in its Order.

A misreading of that Order animates Defendants' second bite at this apple. The Court wrote that "experts may rely on information that is otherwise hearsay in forming their opinions, and hearsay evidence can be considered upon summary judgment if it may be converted at trial to admissible form. *Supra* Section II." (Order at 10 n.9.) Defendants claim that "the Court's prior ruling turned on whether the affidavits could 'be converted at trial to admissible form'" (Mot. at 5), but that interpretation reads the first clause out of the Court's Order. Rule 703 permits experts to rely on hearsay. *Fannie Mae v. LaRuffa*, 702 F. App'x 505, 507 (9th Cir. 2017). Trial testimony is not hearsay. *See* Fed. R. Evid. 801(c)(1). So, if experts can only rely on information if it is presented in court, then they cannot rely on hearsay at all. As this Court recognized, that is not the law.

The Court's cross-reference to Section II of its ruling also clarifies the issue. There, the Court stated: "Experts may also rely on 'reports that would otherwise be hearsay' for the basis of their opinion." (Order at 3.) The Court continued: "**Additionally**, evidence that 'could be presented in an admissible form at trial' may be considered in opposition to summary judgment." (*Id.* (emphasis added).) So, the Court gave two reasons for rejecting Defendants' motion: that experts may rely on hearsay in forming their opinions, and that courts may consider hearsay evidence at summary judgment if it could be presented at trial in an admissible form. The first rationale supports Dr. Ward's reliance on the four affidavits, regardless of who testifies at trial, and thus Rule 703 provides no basis for excluding his testimony.

Defendants' cited cases do not change this analysis. Dr. Ward is not trying to pass off a document as corroborating evidence that he received from counsel though he "does not know where the document came from." *See Asetek Danmark A/S v. CoolIT Sys. Inc.*, No. 19-CV-00410-EMC, 2022 WL 21306657, at *20 (N.D. Cal. Oct. 4, 2022). Rather, Dr. Ward gathered information from multiple sources and used that information in his report. Dr. Ward also is not relying on "an assumption that is unsupported by evidence." *See Nuveen Quality Income Mun. Fund Inc. v. Prudential Equity Grp., LLC*, 262 F. App'x 822, 824 (9th Cir. 2008). Again, Dr. Ward relies on the same information that this Court has determined to be proper. (Order at 8-10.) *Williams v. Illinois*, 567 U.S. 50 (2012), is distinguishable as a criminal case, but on balance it supports TUSD's

argument. The Court held that an expert **could** rely on a DNA profile produced by an outside lab and testify about it on direct examination. *Id.* at 56-59. Dr. Ward intends to do something similar, taking factual information from four TUSD employees and testifying about the conclusions that he drew from that information. As to *Stephens v. Union Pacific Railroad Co.*, 935 F.3d 852 (9th Cir. 2019), Defendants cite part of a sentence that, in full, is unremarkable: "The expert's opinion must rest on 'facts or data in the case that the expert has been made aware of or personally observed,' not merely assumptions and speculation." *Id.* at 856. Dr. Ward relies on TUSD employees' affidavits—along with other sources—to **avoid** merely assuming or speculating as to TUSD's damages.

Finally, the unpublished case cited by Defendants focuses on distinguishable facts and issues. *See Therasense, Inc. v. Becton, Dickinson & Co.*, No. C 04-02123 WHA, 2008 WL 2323856, at *1 (N.D. Cal. May 22, 2008). The court there expressed concern about lawyers "spoon-feeding" facts to experts. *Id.* For instance, an expert—instead of a fact witness—might opine that a coating was made from zinc rather than copper. *Id.* That example involves a single underlying fact, presumably essential to liability. Here, Dr. Ward mines multiple sources for one category of damages. Two sources, Ms. Shivanonda and Mr. Klein, will testify as to how they calculated lost time. In other words, TUSD is not using an expert to testify that a stoplight was red. The TUSD employees at issue provided information to help an economist determine the value of lost time. *Therasense* also harped on two factors that are missing here: secrecy and using Rule 703 to smuggle in information from outside of the expert's field. *Id.* at *1-2. TUSD has not hidden the TUSD declarations from Defendants. In fact, Defendants have already filed a motion to exclude this information. And, the time lost estimates provided by TUSD employees are exactly the type of information economists would use in valuing lost time—as Dr. Ward will testify at trial.

This case is more like *Christiansen*, wherein the court permitted an appraiser to rely on the opinions of an expert in asbestos abatement. *Christiansen*, 516 F. Supp. 3d at 1156. So long as an expert is offering his own expertise, he may rely on information (or opinions) provided by others, and that reliance goes to the weight of his testimony, not its admissibility. *Id.* at 1156-57. The witness relied on need not testify in court, as is evident from another case from within the Ninth

Circuit. *See Exxon Mobil Corp. v. AECOM Energy & Constr., Inc.*, No. CV 19-107-BLG-SPW, 2024 WL 5245649, at *3 (D. Mont. Dec. 11, 2024) (permitting an expert "to testify to an opinion formed on the basis of information that is handed to them rather than developed by them, as long as the court makes sure that the expert isn't being used as a vehicle for circumventing the rules of evidence"). In *Exxon Mobil*, the court permitted an expert to rely on information in a spreadsheet provided by an expert who had been **excluded** from testifying. *Id.* at *4.

Here, the jury will hear from two sources of Dr. Ward's data: Mr. Klein and Ms. Shivanonda. So the case for admissibility is stronger than in *Christiansen* and *Exxon Mobil*. But again, the main point is that this Court already allowed Dr. Ward's opinions, and the data that he relies on has not changed. Rule 703 provides no barrier to admissibility.

**B. Dr. Ward's testimony is highly probative, and Defendants have numerous ways to test his calculations, so the Court should not exclude his testimony under Rule 403.**

There is also no basis to exclude Dr. Ward's opinions under Rule 403. That rule permits exclusion only if evidence's probative value is "substantially outweighed by a danger of … unfair prejudice." Fed. R. Evid. 403. The balancing test "favors the admission of evidence." *Scott v. City of Pasadena*, No. CV0707856MMMAJWX, 2014 WL 12806259, at *4 (C.D. Cal. Feb. 6, 2014) (citing *United States v. Booth*, 669 F.2d 1231, 1240 (9th Cir. 1981) ("Relevant evidence is not rendered inadmissible merely because it is prejudicial.")).

The probative value of Dr. Ward's testimony is significant. If the jury finds for TUSD, they will have to determine damages. Dr. Ward's calculations attach value to the time that TUSD teachers and staff have devoted to addressing problems caused by students' social media addiction. (*See* Order at 8; Ward Rpt. at 2 (¶¶ 5-6).) The complexity of that calculation adds to the probative value of experts such as Dr. Ward and Mr. Klein. *Cf. Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 968 (9th Cir. 2013) ("As in any damages case, the calculation had to address a hypothetical world that never existed, one in which other things remained the same but the breach had not occurred."). If Dr. Ward were barred from testifying, then TUSD would have no expert witness to calculate damages from a category that the law recognizes. (Order at 8-9.)

Despite Defendants' claims, that probative value will not deteriorate if fewer than all of the TUSD declarants testify. Defendants assert that "Dr. Ward's opinion cannot have any probative value if Tucson does not separately establish the foundation for the time estimates upon which his calculations depend." (Mot. at 8.) Taken to its logical conclusion, Defendants' argument would lead to absurd results. If an expert obtained data from 200 sources, would every underlying source have to testify for the expert's testimony to have **any** probative value? The jury would be sleeping for days. TUSD agrees that one declarant needs to testify, so that the jury can understand how it is possible to estimate lost time due to social media addiction. Ms. Shivanonda will provide that testimony. But it is illogical to conclude that all probative value disappears if TUSD fails to put every declarant on the witness stand. And Defendants offer no caselaw holding that it is unfairly prejudicial for a damages expert to use outside sources for his calculations unless every outside source testifies at trial.

Relatedly, the danger of unfair prejudice from Dr. Ward's testimony is low. Defendants claim that Dr. Ward's testimony "would be unduly prejudicial and contravene this Court's prohibition on experts regurgitating inadmissible hearsay." (Mot. at 7). First, Dr. Ward's testimony would not be "unduly"—or unfairly—prejudicial. See Fed. R. Evid. 403. Defendants have all of the following tools to challenge Dr. Ward's opinions:

- Their deposition of Dr. Ward;
- Their cross-examination of Dr. Ward at trial;
- Their depositions of all four TUSD declarants, any of which could be used as part of their cross-examination of Dr. Ward;
- Their cross-examination of Ms. Shivanonda at trial;
- Their cross-examination of Mr. Klein at trial;[2]
- The potential to call any of the four TUSD declarants at trial, all of whom they have placed on their witness list.

---

[2] While the instant motion does not address Mr. Klein, Dr. Ward uses data from Mr. Klein in essentially the same way that he uses data from the TUSD declarants.

Notably, this Court held that Dr. Ward may rely on Mr. Klein's teacher surveys. (Order at 9-10.) Defendants do not challenge that ruling. (Mot. at 1 n.1.) Clearly, TUSD will not call every teacher who responded to Mr. Klein's survey as a witness. So, Defendants do not challenge Dr. Ward's ability to rely on Mr. Klein's survey, which relies on data from TUSD teachers who will not testify. Yet, Defendants challenge Dr. Ward's ability to rely on TUSD employees who responded directly to him, answering questions that he posed. It would be illogical to hold that using data directly submitted to Dr. Ward is unfairly prejudicial, given the Court's ruling as to Mr. Klein's surveys.

This Court should also reject any suggestion that Dr. Ward is simply "regurgitating" information. He opines that TUSD lost $51.1 million in wages and $66.4 million in wages and benefits (in 2025 dollars) for non-teaching staff, from the 2016-17 to 2023-24 school years. (Ward Rpt. at 11 (¶ 38).) No one fed him those numbers. He calculated those totals from a series of inputs, some of which came from the three declarants at issue. (*See id.* at 10 (¶ 36).) At trial, he can explain how he got to those numbers without simply parroting information that he received from Mr. Lambert, Ms. Hammel, or Dr. Salmon. *See Christiansen*, 516 F. Supp. 3d at 1156 (stating that "[t]he witness must be testifying to his or her own opinion"). Indeed, the Court has already rejected the argument that Dr. Ward's opinions should be excluded because he "unquestioningly accepted inadmissible inputs (Dr. Klein's survey and school district employee affidavits) to his calculations." (Order at 9.)

While Dr. Ward has no way to independently verify the specific numbers as to time lost to social media issues, he supplies valid expertise by determining the information that is needed to measure the opportunity cost, which he then obtained from the declarants; by using that data to determine various calculations of loss, based on base pay, supplemental pay, benefits, and combinations thereof; by adjusting the calculations from eight school years to match 2025 dollars; by comparing information in the affidavits with information in documents provided by TUSD; and by reviewing reports about problems with social media use in schools, to ensure that there is an underlying basis for the information provided. (Ward. Rpt. at 4-6 (¶¶ 13-21), 6-7 (¶¶ 23-28), 10-11 (¶¶ 36-38).)

Most of Defendants' cited cases do not suggest otherwise; they are offered merely for the point that expert testimony is powerful. (*See* Mot. at 7-8 (citing *United States v. Rincon*, 28 F.3d 921, 926 (9th Cir. 1994)); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993); *Droplets, Inc. v. Yahoo! Inc.*, 2021 WL 11701485, at *2 (N.D. Cal. Nov. 29, 2021)). That may be true generally, but Dr. Ward's damages calculations are not the type of testimony likely to adduce an emotional—and thereby potentially prejudicial—response.

The sole remaining case cited is *In re Imperial Credit Indus., Inc. Secs. Litig.*, 252 F. Supp. 2d 1005 (C.D. Cal. 2003), which is not on point. The *Imperial Credit* plaintiffs needed expert testimony to show that the company's valuations of residuals were inflated. *Id.* at 1012. Having produced no such expert, the plaintiffs instead had an accountant opine about residual valuation, based on another expert's opinions in another case. *Id.* Dr. Ward, by contrast, is qualified to give the opinions that he gives, and he has mined the best possible sources for the information that he needs. His opinions, therefore, are highly probative and not unfairly prejudicial.

**CONCLUSION**

For the foregoing reasons, this Court should deny Defendants' Motion in Limine No. 1.

**Dated:** October 29, 2026

Respectfully Submitted,

**WAGSTAFF & CARTMELL LLP**

*/s/ Thomas P. Cartmell*
Thomas P. Cartmell

Thomas P. Cartmell (*pro hac vice*)
Jonathan P. Kieffer (*pro hac vice*)
Austin Brane, SBN 286227
Michael P. Cutler, SBN 270663
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel: (816) 701-1100
tcartmell@wcllp.com
jpkieffer@wcllp.com
abrane@wcllp.com
mcutler@wcllp.com

Kirk J. Goza (*pro hac vice*)
Brad Honnold (*pro hac vice*)
**GOZA & HONNOLD LLC**
9500 Nall Ave., Ste 400
Overland Park, KS 66207
Tel. (913) 451-3433
kgoza@gohonlaw.com
bhonnold@gohonlaw.com

Joseph G. VanZandt (*pro hac vice*)
Davis Vaughn (*pro hac vice*)
Jennifer Emmel (*pro hac vice*)
Clinton Richardson (*pro hac vice*)
Seth Harding (*pro hac vice*)
**BEASLEY ALLEN CROW**
**METHVIN PORTIS & MILES, LLC**
234 Commerce Street
Montgomery, AL 36103
Tel: 334-269-2343
Joseph.VanZandt@BeasleyAllen.com
Davis.Vaughn@BeasleyAllen.com
Jennifer.Emmel@BeasleyAllen.com
Clinton.Richardson@BeasleyAllen.com
Seth.Harding@BeasleyAllen.com

***Counsel for Plaintiff Tucson Unified School District***

## ATTESTATION

I, Austin Brane, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

**Dated:** October 29, 2026

By: /s/*Austin Brane*

**Austin Brane**

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing on October 29, 2026, using the Court's ECF filing system, thereby sending notice of the filing to all counsel of record.

By: /s/*Austin Brane*

**Austin Brane**