JONATHAN H. BLAVIN (SBN 230269)
Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

E. MARTIN ESTRADA (SBN 223802)
Martin.Estrada@mto.com
L. ASHLEY AULL (SBN 257020)
Ashley.Aull@mto.com
VICTORIA A. DEGTYAREVA (SBN 284199)
Victoria.Degtyareva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

*Attorneys for Defendant Snap Inc.*

*[Additional parties and counsel listed on signature page]*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*Tucson Unified School District v. Meta Platforms, Inc., et al.*<br>Case No. 4:24-cv-01382-YGR | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR-PHK<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE REFERENCES TO ALLEGATIONS OF MISCONDUCT BY INDIVIDUALS ASSOCIATED WITH TUCSON UNIFIED SCHOOL DISTRICT**<br><br>**<u>Hearing:</u>**<br>Date: November 13, 2026<br>Time: 2:00 PM<br>Place: Courtroom 1, 4th Floor<br>Judge: Hon. Yvonne Gonzalez Rogers |

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 3

A. TUSD Plans to Put Predatory Sexual Abuse and Reporting of Such Conduct Directly at Issue at Trial. .......... 3

B. These Incidents Are Plainly Relevant and Not Unfairly Prejudicial .......... 4

III. CONCLUSION .......... 9

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Beachy v. Boise Cascade Corp.*,
191 F.3d 1010 (9th Cir. 1999) .......... 8

*Claar v. Burlington N. R.R. Co.*,
29 F.3d 499 (9th Cir. 1994) .......... 8

*Nicholson v. Delgadillo*,
2014 WL 6895566 (D. Idaho Dec. 5, 2014) .......... 5

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
702 F. Supp. 3d 809 (N.D. Cal. 2023) .......... 4

*Sprint/United Mgmt. Co. v. Mendelsohn*,
552 U.S. 379 (2008) .......... 8

**STATE CASES**

*A.H. v. Tamalpais Union High Sch. Dist.*,
105 Cal. App. 5th 340 (2024) .......... 5

*State v. Velazquez*,
2026 WL 2409646 (Ariz. Ct. App. Aug. 17, 2026) .......... 5

**FEDERAL RULES**

Federal Rule of Evidence 403 .......... 2

## I. INTRODUCTION

TUSD's Motion in Limine No. 1 ("TUSD MIL No. 1") seeks to preclude Defendants from referencing incidents of child sexual abuse perpetrated by TUSD employees, and examples of employees' failure to report known instances of such abuse, on the grounds that this evidence is not relevant to TUSD's claims. But to the extent TUSD claims it was harmed by allegedly deficient mechanisms for reporting CSAM or other online sexual misconduct, Defendants are entitled to present evidence to show that such harms stem from criminal third-party conduct—not Defendants.[1] The Motion should be denied.

First, TUSD itself makes much of this evidence relevant. TUSD apparently intends to argue at trial that alleged deficiencies in Defendants' reporting mechanisms have caused or contributed to the sexual abuse of its students. Defendants should be able to present evidence that such conduct and harms have occurred in the District even without any connection to Defendants' platforms or reporting tools. Evidence that TUSD employees have committed such harms against students—without any indication that they used Defendants' platforms—and that other employees failed to timely report such harms to law enforcement authorities is directly relevant to proving that Defendants' reporting mechanisms are not the cause of the alleged harms to TUSD students' wellbeing or any attendant burdens on the District's time and resources. The problems are the third-party criminal acts themselves and the resulting impact on the community, and the District's failure to respond appropriately.[2]

Notably, Defendants were able to come to an agreement with bellwether Charleston County School District ("Charleston") to exclude similar incidents of employee misconduct, along with an agreement that Charleston would not pursue claims against Defendants for allegedly deficient reporting mechanisms. Joint Trial Stipulations Between Defendants and Charleston County School

---

[1] TUSD has agreed not to pursue any claim against the YouTube Defendants regarding allegedly deficient reporting tools for child sexual abuse material or predators.

[2] Defendants do not intend to introduce evidence regarding the Delgado, Sonier, Drake, and Badger incidents described in TUSD's Motion. The Delgado incident involved a TUSD teacher and his own child. The other incidents do not have a direct connection to TUSD students. *See* TUSD MIL No. 1 at 3–5. Accordingly, TUSD's Motion is moot as to those incidents.

District (Oct. 19, 2026), Dkt. No. 3596 ¶¶ 4, 5. For both Defendants and the districts, this evidence goes far afield of the school districts' core claims about the alleged impact of problematic social media use. But because TUSD maintains its claim that deficient reporting mechanisms harmed the District, Defendants are entitled to demonstrate that any harm has an alternative cause.

Second, this evidence is no more prejudicial than the isolated (and at-present unidentified) incidents of deficient reporting mechanisms that TUSD intends to present. And given that Federal Rule of Evidence 403 focuses on *unfair* prejudice, it would be patently unfair to exclude evidence of incidents directly involving TUSD's own students and employees, while allowing evidence of third-party adult predators on Defendants' platforms that have *no* connection to TUSD's alleged harms. *See* Defendants' MIL No. 2 to Exclude Evidence, Argument, or Reference to the NCOSE "Dirty Dozen" or Thorn Reports (Oct. 16, 2026), Dkt. No. 3592 (seeking exclusion of evidence regarding the National Center on Sexual Exploitation's "Dirty Dozen" List and reports on adult predatory behavior published by Thorn). TUSD's position is untenable. It cannot manufacture a one-way street where the District is permitted to present evidence of purported incidents of "sexual abuse, failure to report sexual abuse, or physical abuse of a child" on Defendants' platforms, including incidents untethered to the District's actual harms, while preventing Defendants from presenting relevant evidence of actual harms experienced *by TUSD students* at the hands of TUSD employees in rebuttal. TUSD MIL No. 1 at 3.

In short, this is a problem of TUSD's own making. It is TUSD's decision to pursue a deficient reporting claim against Defendants that makes the evidence of its own employees' misconduct relevant and important. TUSD could obviate the need for any such evidence by agreeing, as Charleston did, not to pursue its deficient reporting claims. But while those claims remain in the case, TUSD should not be permitted to limit Defendants' ability to rebut the claims. The Motion should be denied.

## II. ARGUMENT

### A. TUSD Plans to Put Predatory Sexual Abuse and Reporting of Such Conduct Directly at Issue at Trial.

TUSD argues that individual incidents of predatory behavior and failure to report such behavior by TUSD employees are irrelevant to their claims and unduly prejudicial. But TUSD itself apparently intends to put the incidence of, and harms caused by, sexual abuse of its students directly at issue by presenting similar evidence allegedly involving Defendants' platforms and their reporting mechanisms. Defendants are entitled to use examples of employee misconduct, which harmed TUSD students, to demonstrate the harm has nothing to do with Defendants' platforms.

To be clear, Defendants' primary position is that sexual abuse and other such serious misconduct are third-party harms divorced from Defendants' actionable conduct, and from TUSD's claim that Defendants' platforms have harmful effects on TUSD. Indeed, despite extensive documentary discovery and over a dozen depositions, the record is devoid of any examples of TUSD's failed attempts to use Defendants' reporting mechanisms—let alone any widespread problem that would amount to district-wide harm. *See, e.g.*, Defendants' MIL No. 2 at 2–3, 6–8. For similar reasons, in the Charleston case, Defendants agreed "not [to] offer evidence relating to specific incidents of alleged sexual abuse, sexual misconduct, or grooming involving [district] employees or students," and Charleston agreed "not [to] pursue claims against Defendants related to their allegedly deficient mechanisms for reporting CSAM, sexual abuse, sexual misconduct, or grooming." Joint Trial Stipulations, Dkt. No. 3596 at 2. In meet-and-confers prior to filing motions in limine, Defendants asked whether TUSD could come to a similar agreement, but TUSD refused.

Notably, there is little evidence in the record that TUSD's students have been harmed by an instance of online sexual abuse by a third-party predator, and *no* evidence—in documents, depositions, or otherwise—connecting such harm to Defendants' allegedly deficient reporting mechanisms. *See* Defendants' MIL No. 2, Dkt. No. 3592 at 6–8. In rejecting a stipulation similar to one entered with Charleston, TUSD apparently intends to rely on yet-to-be-disclosed accounts from trial witnesses, reserving the right to have them testify to incidents not discussed during depositions and not documented in its production. At the same time, TUSD apparently intends to present

evidence, refer to, or argue about third-party publications, like NCOSE's Dirty Dozen List, that are focused on inflammatory, hearsay claims without any reference to the School District Plaintiffs—evidence that Charleston agreed not to present. *See generally* Defendants' MIL No. 2, Dkt. No. 3592; Joint Trial Stipulations, Dkt. No. 3596 at 2. Those publications discuss the alleged nature and scope of child sexual abuse perpetrated by third-party predators online, including on Defendants' communications platforms, but have no tie to TUSD or its claims.

If TUSD pursues a claim against Defendants for having allegedly deficient reporting mechanisms for predatory behavior, and uses that narrow claim to present evidence regarding incidents of predatory behavior on Defendants' platforms,[3] Defendants must be permitted to rebut with evidence that such conduct and harms occur in the District without any connection to Defendants. Specifically, evidence that TUSD employees have similarly harmed *TUSD students*, and that TUSD employees have failed to timely report similar harms involving TUSD students, shows that Defendants' reporting mechanisms are not the cause of the alleged harms. Third-party criminal conduct, not deficient reporting, is what impacts TUSD students' wellbeing and burdens the District's resources.

**B. These Incidents Are Plainly Relevant and Not Unfairly Prejudicial.**

The incidents that TUSD seeks to exclude bear directly on TUSD's claim that Defendants' allegedly provided deficient reporting mechanisms for adult predatory conduct. These incidents relate to (1) TUSD employees that sexually abused TUSD students, substantially impacting the mental health and wellbeing of the student(s) involved and others in the TUSD community; and/or (2) TUSD employees' failure to report or warn of known instances of sexual abuse of students, showing that Defendants' reporting mechanisms made little or no difference given the District's practices for reporting such crimes. TUSD's argument that these incidents are irrelevant simply

[3] This Court has already dismissed "plaintiffs' product-based negligence claims to the extent such claims are premised on the existence of a duty to protect users from third party actors using their platforms," and held that Section 230 separately prohibits any claim based on third-party predators *except* in narrow instances pertaining specifically to alleged deficiencies in Defendants' reporting mechanisms for such conduct. *See In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 702 F. Supp. 3d 809, 829, 859 (N.D. Cal. 2023).

because they did not involve social media misses the point. The fact that these incidents occurred *independent* of social media is precisely what makes them relevant for evaluating TUSD's claims: third-party bad actors and TUSD employees' own conduct, not social media, are responsible for the related burdens on district personnel's time and student mental health.

***Criminal Allegations About TUSD Employees***. The first category of incidents involves accusations of certain TUSD employees' inappropriate sexual conduct toward students.[4] Such incidents—and knowledge of those incidents by TUSD employees and other students—connect directly to students' wellbeing and educational needs, which underlie TUSD's claimed harms. Indeed, sexual abuse committed by a trusted school authority is a particularly egregious form of harm, affecting not just the individual victim, but the broader student community. *See, e.g.*, *Nicholson v. Delgadillo*, 2014 WL 6895566, at *6 (D. Idaho Dec. 5, 2014) (awarding punitive damages where defendant's "use of his position as a School Resource Officer . . . to gain access to and victimize an underage student was an outrageous abuse of power and authority"); *State v. Velazquez*, 2026 WL 2409646, at *1 (Ariz. Ct. App. Aug. 17, 2026) (affirming criminal conviction of basketball coach for sexual abuse of a student on the team "while in a position of trust"); *A.H. v. Tamalpais Union High Sch. Dist.,* 105 Cal. App. 5th 340 (2024) (affirming jury verdict of $10 million against school district for negligent supervision in failing to protect student from sexual abuse by school staff).

The District's witnesses concede as much. One of the incidents TUSD seeks to exclude involved a high school counselor who had an inappropriate sexual relationship with a student. When the incident became public, TUSD's current Deputy Superintendent emailed TUSD's current Counseling Program Coordinator—both priority witnesses on TUSD's preliminary witness list—to address support services the school community would need in response. *See* Declaration of Jonathan H. Blavin ("Blavin Decl.") Ex. 1 (SM_TUSD_00170327) (Shawna Rodriguez email to Rebecca

[4] These incidents involved Zobella Brazil Vinik, a high school counselor who had an inappropriate sexual relationship with a student, TUSD MIL No. 1 at 6 & Ex. E; John Angel Corral, a middle school security monitor who made inappropriate contact with or obscene comments to multiple students at different schools in the district, TUSD MIL No. 1 at 6 & Ex. F; and Eddie Rodriguez, a high school teacher who sexually assaulted a student, TUSD MIL No. 1 at 7 & Ex. I.

Carrier and other TUSD employees regarding the Vinik incident). Far from viewing the situation as an isolated incident, Ms. Rodriguez stated that "[redacted]" acknowledging that "[redacted]." *Id*. In response, Ms. Carrier copied in TUSD's former Social Emotional Learning director, a TUSD priority witness who claims that *100% of her time* is spent on issues related to social media, noting that *staff* would also need support from their department. *Id*. (Rebecca Carrier email to Julie Shivanonda, among others, noting that counselors at other schools were "[redacted]" and that "[redacted]"); *see* Declaration of Julie Shivanonda (May 13, 2025) ("Shivanonda Decl.") ¶ 18, Dkt. No. 3595-7. At trial, TUSD apparently intends to argue that Defendants' allegedly deficient reporting mechanisms caused the sexual abuse of its students, and that Defendants are therefore responsible for harming its students' wellbeing. But incidents like this one—which occurred independent of any use of Defendants' platforms or any attempt to report predatory conduct through Defendants' reporting tools—show that third-party conduct is the true cause of any harm.

Furthermore, incidents of sexual abuse perpetrated by TUSD employees against students connect directly to TUSD's claims about lost time and resources. In response to incidents like these, TUSD—including its mental and behavioral health professionals—devotes substantial time and resources to "comprehensive investigation[s]," remediation, and coordination with law enforcement, in addition to time counseling and communicating with students and parents. TUSD MIL No. 1, Ex. E at 4 (Superintendent Gabriel Trujillo's public statement regarding Vinik's crimes); Blavin Decl. Ex. 1 at 2 (email discussing mobilization of "[redacted]" and [redacted]). And examples of incidents, wholly unrelated to use of Defendants' platforms or their reporting mechanisms, that have taken up significant staff time and resources are especially relevant because TUSD witnesses have claimed that the vast majority of staff time is devoted specifically to social media-related concerns. *See, e.g.*, Declaration of Dr. Sabrina Salmon (May 13, 2025) ("Salmon Decl.") ¶ 18, Dkt. No. 3595-5 (estimating that 50–80% of time spent by social workers, psychologists, and behavioral intervention specialists is on students' social media use). For instance,

as noted above, Julie Shivanonda, former Director of Social Emotional Learning & Development, asserts that 100% of her job is spent on social media-related concerns. *See* Shivanonda Decl., Dkt. No. 3595-7 ¶ 18; Blavin Decl. Ex. 2 (June 30, 2025 J. Shivanonda Dep. Tr.) at 77:3–78:14. Evidence of the time spent addressing misconduct by TUSD employees is relevant to undermining such assertions.

***TUSD Employees' Failure to Report.*** The second category of incidents TUSD seeks to exclude involves its employees' failure to report to law enforcement known instances of the sexual abuse of students. This is also directly relevant to TUSD's claim that Defendants' allegedly deficient reporting tools have harmed the District.[5] Alleged deficiencies can only have a causal connection to TUSD's alleged harms if TUSD employees tried and failed to report sexual misconduct. But in addition to the absence of such instances of failed reporting in the documentary or deposition records, these examples of TUSD employees failing to act show that any reporting difficulties TUSD may attempt to attribute to Defendants are instead problems *independent* of Defendants' platforms. Instances of the District's reporting failures, unconnected to any use or attempt to use Defendants' reporting tools, are thus highly relevant to testing the basis of TUSD's reporting claim.

These are not peripheral instances of misconduct by individual employees. Repeated failures to report abuse go directly to TUSD's "theory of the case," TUSD MIL No. 1 at 7: whether the harms the District has allegedly suffered from the predatory sexual abuse of its students can be attributed to Defendants' allegedly deficient reporting tools, even though such conduct, and failures to report such conduct, occur when Defendants' platforms are not involved. And the cases TUSD cites to suggest that its employees' misconduct should not be "extrapolated" to the District are inapposite. *Id.* Those cases involved claims brought by individual plaintiffs who alleged harm by

---

[5] These incidents include (1) the Corral incident, in which Corral was permitted to continue working in the District even though he had a known history of inappropriate behavior toward students, TUSD MIL No. 1 at 6 & Ex. F; (2) the school bus incident in which a bus driver witnessed but failed to report a sexual assault of a student that occurred on the bus, TUSD MIL No. 1 at 6 & Ex. G; (3) the arrest of a vice principal and school counselor for failure to report a known sexual assault of a student that occurred in a classroom, TUSD MIL No. 1 at 7 & Ex. H; and (4) the District's failure to report the known sexual assault of a student by a teacher in a stairwell, TUSD MIL No. 1 at 7 & Ex. I.

specific individual employees of the defendant, and attempted to prove such wrongdoing based on the conduct of other employees toward other individuals. *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 381–82 (2008); *Beachy v. Boise Cascade Corp.*, 191 F.3d 1010, 1013–14 (9th Cir. 1999). Here, Defendants do not seek to establish liability on the part of the District based on the misconduct of certain employees. Instead, Defendants seek to rebut TUSD's claims that its harms must be attributed to Defendants' allegedly deficient reporting mechanisms.

TUSD's argument that evidence regarding allegations of misconduct by its employees should be excluded because it would "invite a series of mini-trials" is similarly unavailing. TUSD MIL No. 1 at 8. The relevance of this evidence does not depend on whether these instances of misconduct actually occurred—what matters is how the District responded when it had knowledge of these allegations. And regardless of the truth of the alleged conduct, the record demonstrates that knowledge about the related arrests and lawsuits involving TUSD employees impacted student wellbeing and the District's resources. *See, e.g.*, Blavin Decl. Ex. 1 at 1 (planning staff support for students affected by news of "[redacted]"); TUSD MIL No. 1, Ex. I at 5 (TUSD General Counsel Todd Jaeger describing that the District was conducting an "internal investigation" and "retrained employees in their obligations to report to law enforcement" in response to news reports that TUSD allegedly did not timely report a known sexual assault).[6]

Finally, TUSD's argument that expert testimony is required to establish an alternative cause of TUSD's harms is a red herring. Expert testimony is not required in "situations in which no special expertise [is] necessary to draw a causal inference." *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 504 (9th Cir. 1994). No special expertise is needed to determine whether incidents involving child sexual abuse of a student by a TUSD employee undermine a witness's claim that 100% of her job as Director of Social Emotional Learning & Development is devoted to students' social media use.

---

[6] Moreover, any evidence that the District intends to present regarding alleged incidents of predatory behavior on Defendants' platforms suffers from the same problems. That evidence also relates to unsubstantiated allegations of misconduct, relayed through the District's trial witness testimony, third-party publications, or the like. *See generally* Defendants' MIL No. 2, Dkt. No. 3592.

Nor is special expertise needed to determine whether TUSD's consistent failures to report known instances of predatory conduct, in the absence of any use of or attempt to use Defendants' reporting mechanisms, undermine TUSD's claims that those reporting mechanisms are to blame.

## III. CONCLUSION

For the foregoing reasons, the Court should deny TUSD's Motion in Limine No. 1 in its entirety.

DATED: October 29, 2026

Respectfully submitted,

By: /s/ Jonathan H. Blavin

JONATHAN H. BLAVIN (State Bar No. 230269)
Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel: (415) 512-4000

E. MARTIN ESTRADA (SBN 223802)
Martin.Estrada@mto.com
L. ASHLEY AULL (SBN 257020)
Ashley.Aull@mto.com
VICTORIA A. DEGTYAREVA (SBN 284199)
Victoria.Degtyareva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel.: (213) 683-9100

ALLISON BROWN (*pro hac vice*)
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Tel.: (215) 268-5000

JESSICA DAVIDSON (*pro hac vice*)
jessica.davidson@kirkland.com
JOHN J. NOLAN (*pro hac vice*)
jack.nolan@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800

*Attorneys for Defendant Snap Inc.*

/s/ *Ashley W. Hardin*
ASHLEY W. HARDIN (*pro hac vice)*
ahardin@wc.com
J. ANDREW KEYES (*pro hac vice)*
akeyes@wc.com
NEELUM J. WADHWANI (SBN 247948)
nwadhwani@wc.com
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
Tel.: (202) 434-5000

*Attorneys for Defendants YouTube, LLC and Google LLC*

/s/ *Christian J. Pistilli*
ASHLEY M. SIMONSEN (State Bar No. 275203)
asimonsen@cov.com
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800

PHYLLIS A. JONES (*pro hac vice*)
pajones@cov.com
PAUL W. SCHMIDT (*pro hac vice*)
pschmidt@cov.com
CHRISTIAN J. PISTILLI (*pro hac vice*)
cpistilli@cov.com
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Tel.: (202) 662-6000

BETH A. WILKINSON (*pro hac vice*)
RAKESH KILARU (*pro hac vice*)
JOLEE PORTER (*pro hac vice*)
MATTHEW R. SKANCHY (*pro hac vice*)
WILKINSON STEKLOFF LLP
2001 M Street, NW, 10th Floor
Washington, D.C. 20036
Telephone: (202) 847-4010
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jporter@wilkinsonstekloff.com
mskanchy@wilkinsonstekloff.com

MOIRA K. PENZA (*pro hac vice*)
WILKINSON STEKLOFF LLP
130 W 42nd Street, 24th Floor
New York, NY 10036
Telephone: (212) 294-8925
Facsimile: (202) 847-4005

mpenza@wilkinsonstekloff.com
*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Meta Payments Inc. f/k/a Facebook Payments Inc.; Meta Platforms Technologies, LLC f/k/a Facebook Technologies, LLC; Instagram, LLC; and Siculus LLC f/k/a Siculus, Inc.*

*/s/ Geoffrey M. Drake*
GEOFFREY M. DRAKE (*pro hac vice)*
gdrake@kslaw.com
TACARA D. HARRIS (*pro hac vice)*
tharris@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel.: (404) 572-4600

DAVID P. MATTERN (*pro hac vice)*
dmattern@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, D.C. 20006
Tel.: (202) 737-0500

BAILEY J. LANGNER (State Bar No. 307753)
*blangner@kslaw.com*
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Tel.: (415) 318-1200

*/s/ Daniel M. Petrocelli*
DANIEL M. PETROCELLI (SB #97802)
dpetrocelli@omm.com
SABRINA H. STRONG (SB #200292)
sstrong@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 553-6700

STEPHEN D. BRODY (*pro hac vice*)
sbrody@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006
Telephone: (202) 383-5300

*Attorneys for Defendants TikTok Inc., ByteDance Inc., TikTok Ltd., ByteDance Ltd., and TikTok LLC*

**ATTESTATION**

I, Jonathan H. Blavin, hereby attest, pursuant to N.D. Cal. Civil L.R. 5–1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED: October 29, 2026

By: */s/ Jonathan H. Blavin*
Jonathan H. Blavin