WILLIAMS & CONNOLLY LLP
Ashley W. Hardin, *pro hac vice*
J. Andrew Keyes, *pro hac vice*
Neelum J. Wadhwani (SBN 247948)
680 Maine Avenue SW
Washington, DC 20024
Tel.: (202) 434-5000
ahardin@wc.com
akeyes@wc.com
nwadhwani@wc.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

*[Additional parties and counsel listed on signature pages]*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>*Charleston County School District v. Meta Platforms, Inc., et al.*<br><br>Case No.: 4:23-cv-04659 | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR-PHK<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 2 TO EXCLUDE CERTAIN RACE-RELATED INCIDENTS AND MOTION IN LIMINE NO. 4 TO EXCLUDE EVIDENCE RELATED TO CONSTITUENT BOARDS**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang<br><br>Date: November 13, 2026<br>Time: 2:00 PM<br>Place: Courtroom 1, 4th Floor |

## TABLE OF CONTENTS

**INTRODUCTION** .......... **1**

**ARGUMENT** .......... **2**

A. Charleston's Motion in Limine No. 4 Is Overbroad and Premature as to Categories Two through Four. .......... 2

B. Evidence of Racial Disparities in Board Discipline (MIL No. 4) and of the Confederate Flag Incident (MIL No. 2) Is Relevant and Admissible. .......... 4

1. As Charleston Concedes, Race-Related Factors Are a Legitimate Alternative Cause Regarding Both Student Mental Health and Charleston's Claimed Discipline Costs. .......... 4

2. Rule 404 Does Not Apply. .......... 7

3. Rule 403 Does Not Justify Exclusion. .......... 8

**CONCLUSION** .......... **9**

# TABLE OF AUTHORITIES

## CASES

*Brown v. City of Los Angeles*, 2014 WL 13130752 (C.D. Cal. Oct. 27, 2014) ............................. 8

*Gaines v. Chicago Bd. of Educ.*, 717 F. Supp. 3d 746 (N.D. Ill. 2024) ......................................... 7

*McConnell v. Wal-Mart Stores, Inc.*, 995 F. Supp. 2d 1164 (D. Nev. 2014)................................. 4

*SA Music LLC v. Apple, Inc.*, 592 F. Supp. 3d 869 (N.D. Cal. 2022)............................................ 7

*United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000) ............................................................... 8

*United States v. Higuera-Llamos*, 574 F.3d 1206 (9th Cir. 2009) .................................................. 8

*United States v. Hitesman*, 2016 WL 3523854 (N.D. Cal. June 28, 2016).................................... 4

*United States v. Mills*, 704 F.2d 1553 (11th Cir. 1983) ................................................................. 8

## OTHER AUTHORITIES

Fed. R. Evid. 401 ............................................................................................................................ 6

Fed. R. Evid. 403 ................................................................................................................... 2, 8, 9

Fed. R. Evid. 404 ...................................................................................................................... 7, 8

## INTRODUCTION

When read together, Charleston's motions in limine seek to exclude evidence of the District's own conduct and circumstances during the damages period: the use of federal COVID-relief (ESSER) funds (ECF No. 3575); race-related incidents in the District (ECF No. 3576); controversies involving the Board of Trustees (ECF No. 3579); and the constituent boards (ECF No. 3585). If all four were granted, Charleston could tell the jury that social media drove the alleged decline in student well-being while Defendants would be barred from showing what else was happening in Charleston's schools at the same time. Charleston bears the burden of proving causation and damages, and Defendants are entitled to contest that showing with evidence of other causes.

Charleston's Motions in Limine No. 2 and No. 4 ask this Court to exclude various evidence relating to race-related incidents and the District's constituent boards. Motion in Limine No. 4 seeks to exclude four categories of evidence: (1) "the history of constituent boards, including their roots in segregation;" (2) "allegations that constituent boards made disciplinary decisions that were motivated by race or racial animus;" (3) "allegations that constituent boards made disciplinary decisions that had a racially disparate impact;" and (4) "allegations that constituent boards were sites of unrest or drama among constituent board members." Pl.'s Mot. in Lim. No. 4, ECF No. 3585 ("CCSD MIL No. 4") at 1. Its actual request for relief is even broader: exclusion of "any evidence, testimony, or argument referring to the District's historical constituent boards." *Id.* at 9. Motion in Limine No. 2 seeks to exclude evidence of nine "specific instances of racial discrimination, hostility, or racist conduct" by Charleston students or staff. Pl.'s Mot. in Lim. No. 2, ECF No. 3576 ("CCSD MIL No. 2") at 1–2.

Both Motions should be denied for multiple independent reasons. To start, Motion in Limine No. 4 is vague, overbroad, and premature; it never identifies the specific evidence it seeks to exclude. Charleston identifies no exhibit, witness testimony, or incident within any category—despite this Court's Standing Order requiring exactly that, and despite this Court's recent warning to these trial teams that it routinely denies overbroad motions. The opacity of the Motion's request for relief is compounded by its internal contradictions—the Motion seeks to exclude "allegations that

constituent boards made disciplinary decisions that had a racially disparate impact" while expressly conceding that Defendants' experts may "rais[e] population-level racial disparities in Charleston County as an alternative cause of the District's injuries." CCSD MIL No. 4 at 4–5. The evidence of disparate impact is directly relevant: Charleston's own records show that the students expelled by its constituent boards were overwhelmingly African American, and Charleston's own Superintendent testified that racism harms students' mental health. Finally, Charleston's own aggregate disciplinary data is not the kind of inflammatory material that Rule 403 guards against. The jury is entitled to weigh this evidence in deciding what actually harmed Charleston's students.

For similar reasons, the Court should deny what remains of Motion in Limine No. 2. That motion is largely moot: Defendants have informed Charleston that they do not intend to introduce evidence or argument regarding eight of the nine incidents.[1] But the Court should admit evidence of the 2021 incident at Lucy Beckham High School in which multiple students displayed Confederate flags during a school spirit day. That incident affected students' well-being and required Charleston to spend time and resources responding to it, which bears directly on the same alternative-causation theory Charleston concedes Defendants may present.

## ARGUMENT

### A. Charleston's Motion in Limine No. 4 Is Overbroad and Premature as to Categories Two through Four.

The origins of constituent boards in pre-1968 segregated school districts significantly predate the damages period, and Defendants do not intend to offer evidence of that history.

[1] These eight incidents are: (1) the 2008 U.S. Department of Education Office for Civil Rights investigation in response to allegations of racial discrimination at a Charleston school, *see* CCSD MIL No. 2 at 3; (2) the 2009 federal civil rights investigation into the closure of five District schools in predominantly Black neighborhoods, *see id.*; (3) the 2014 lawsuit filed by a Baptist Hill High School teacher, *see id.*; (4) the lawsuit stemming from a 2014 incident involving a football coach at Academic Magnet High School, *see id.* at 3–4; (5) the 2017 racial discrimination lawsuit, *see id.* at 4; (6) the 2022 allegations of racial discrimination in hiring practices in the facilities department, *see id.* at 5; (7) the 2022 lawsuit filed by the South Carolina Freedom Caucus concerning the inclusion of critical race theory in the Charleston curriculum, *see id.* at 4; and (8) the 2022 allegations of racial discrimination, *see id*. at 4–5.

Accordingly, Charleston's Motion in Limine No. 4 is moot as to the evidence described in Category One.

But for Categories Two through Four, Charleston's Motion does not come close to meeting the Court's standard that a motion in limine "must specify the precise exhibits or proffered testimony the party seeks to exclude." Standing Order Re: Pretrial Instructions in Civil Cases (Mar. 17, 2025) ¶ 4(a). Addressing only "allegations," it does not cite any exhibit, produced document, or deposition testimony that it seeks to exclude. It references only press articles and the testimony of Charleston's Superintendent, Dr. Anita Huggins, which Charleston does not actually seek to exclude. CCSD MIL No. 4 at 2–4. Under Category Two, Charleston seeks to exclude "allegations that constituent boards made disciplinary decisions that were motivated by race or racial animus," *id.* at 1, but the Motion does not identify any evidence within that description that it seeks to exclude. Similarly, Charleston seeks to exclude "allegations that constituent boards made disciplinary decisions that had a racially disparate impact" under Category Three, but fails to identify any specific disciplinary decision. And Charleston's request to exclude "allegations that constituent boards were sites of unrest or drama among constituent board members" under Category Four does not identify a single specific instance of "unrest or drama."

The Court cannot evaluate relevance or prejudice without knowing what specific evidence is at issue. As framed, these categories of evidence could reach anything from a press account[2] to Charleston's own produced documents to expert testimony—including the topics discussed by Dr. Robert Nelson—about how discipline was administered, which only confirms that these categories cannot be evaluated in the abstract. For example, as to Category Four, Defendants do not intend to feature board members' personal disputes for their own sake. But Charleston seeks damages for increased discipline-related costs and staff time, which it attributes to social media. If the constituent boards' own dysfunction—for example, inconsistent outcomes for similar offenses or decisions that were routinely appealed and overturned—generated additional hearings, appeals, and staff time

[2] To be clear, Defendants do not intend to offer press reports as evidence.

during the damages period, that evidence would show that something other than Defendants' platforms drove those costs.

The undefined, overbroad scope of Charleston's Motion in Limine No. 4 is further illustrated by its requested relief—barring anything "referring to" these constituent boards. *Id.* at 9. Charleston's requested relief would exclude all kinds of evidence including, for example, the undisputed, neutral fact that the boards heard student discipline appeals during the damages period. *Id.* at 3. Charleston also asks to bar "evidence or argument about" all four categories of "allegations," with no limit on time period or purpose. [Proposed] Order Granting Pl.'s Mot. in Limine No. 4, ECF No. 3585-2 at 1.

As courts in this District have explained, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *United States v. Hitesman*, 2016 WL 3523854, at *2 (N.D. Cal. June 28, 2016) (quoting *McConnell v. Wal-Mart Stores, Inc.*, 995 F. Supp. 2d 1164, 1167 (D. Nev. 2014)). Charleston can raise any specific objection at trial, where the Court should have the context it needs. Charleston's Motion in Limine No. 4 should therefore be denied.

### B. Evidence of Racial Disparities in Board Discipline (MIL No. 4) and of the Confederate Flag Incident (MIL No. 2) Is Relevant and Admissible.

#### 1. As Charleston Concedes, Race-Related Factors Are a Legitimate Alternative Cause Regarding Both Student Mental Health and Charleston's Claimed Discipline Costs.

Even setting aside its overbreadth, Charleston's attempt to exclude Category Three of Motion in Limine No. 4 fails on the merits. Evidence of the disparate impact of board discipline and of a specific race-related in-school incident that affected the entire school population is relevant for two reasons: (1) it is an alternative cause of the student mental health harms Charleston attributes to Defendants; and (2) it is an alternative cause of the increased discipline costs for which Charleston seeks damages. A movant seeking exclusion before trial must show that the evidence could not come in for any purpose. *See Hitesman*, 2016 WL 3523854, at *2 (quoting *McConnell*, 995 F. Supp. 2d at 1167). Charleston cannot make that showing, and its own Motion forecloses it.

As an initial matter, Charleston itself concedes that race-related factors are a legitimate alternative cause of its claimed harms. Charleston expressly "does not seek to preclude defense

experts from raising population-level racial disparities in Charleston County as an alternative cause of the District's injuries." CCSD MIL No. 4 at 5. It acknowledges that Defendants relied at summary judgment on the Superintendent's testimony that the issues with the most impact on Charleston's students include race. *Id.* at 8 (citing Defs.' MSJ, ECF No. 2293 at 3). And it acknowledges that Defendants' expert—Dr. Robert Nelson—opines that racial disparities are alternative causes of the harms Charleston claims. *Id.* But the expert paragraphs Charleston cites as "[redacted]" testimony address the constituent boards directly: Dr. Nelson explains that the boards were "[redacted]," and that Charleston "[redacted]." Ex. A[3] (Expert Rep. of Robert G. Nelson for Charleston Cnty. Sch. Dist.) ¶ 73. Dr. Nelson also relies on Charleston's own records showing that its Progressive Discipline Plan was adopted to reduce "[redacted]" in discipline, to rebut Charleston's expert's attribution of that plan to social media. *Id.* ¶ 138. Granting the Motion would thus exclude the very opinions Charleston acknowledges should be permitted.

Charleston and its witnesses' concessions are unsurprising. Charleston must prove that Defendants' conduct was a substantial factor in causing harm to the District and that its claimed expenses were "related to the harm Defendants' social media platforms caused." CCSD MIL No. 4 at 5 (quoting Parties' Proposed Jury Instructions, ECF No. 2681 at 46–47). Evidence of the disparate impact of board discipline, and of a specific race-related in-school incident that affected the entire school population, demonstrates how these race-related factors bear on both elements.

The evidence shows an alternative cause of the student mental health harms Charleston claims. Charleston's own Superintendent testified that racism harms students' (both minority

[3] Both parties cite the Expert Report of Robert G. Nelson. *See* CCSD MIL No. 2 at 10 (citing Warren Decl. Ex. 2 ¶¶ 72–74); CCSD MIL No. 4 at 8 (same). Charleston's counsel has advised that Dr. Nelson's report was inadvertently omitted as an exhibit to Charleston's Motions in Limine No. 2 and No. 4, although portions were filed as an exhibit to a different Motion in Limine (ECF No. 3579-11). For ease of reference, Defendants are attaching excerpts of Dr. Nelson's report as Exhibit A, which includes the portions cited by both parties. To avoid filing additional corrected materials and exhibits, the parties jointly ask the Court to refer to Defendants' Exhibit A for all citations to Dr. Nelson's report.

students' and majority-group students') mental, emotional, and behavioral health; that Charleston, as a district "[redacted]," will "[redacted];" that "[redacted];" and that the top three issues in the District are: (1) poverty, (2) race, and (3) substance abuse. *See* Ex. B (May 19, 2025 Huggins Fact Dep.) at 203:3–16, 212:5–16, 216:7–23, 284:4–14. Evidence that the constituent-board expulsions fell overwhelmingly on African American students is therefore evidence of a district-specific, damages-period stressor on precisely the population whose mental health Charleston places at issue. It allows the jury to assess whether the student harms Charleston claims had other contributing factors, and how much of that harm, if any, is attributable to Defendants. That is relevant under any reading of Rule 401, which requires only that evidence have "any tendency" to make a fact of consequence more or less probable, and it is entirely distinct from the historical evidence in Category One that Defendants do not intend to offer.

Charleston's own records demonstrate the disparity. For example, a Charleston-commissioned 2018 equity report found that African American students received [redacted] of expulsions without services while making up [redacted] of enrollment, and noted that expulsion decisions begin at the constituent boards. Ex. C (Clemson University Inclusion & Equity Report (Sept. 2018), MR_CCSD_006803) at -854. And in the first quarter of the 2019–20 school year, African American students accounted for [redacted] District Disciplinary Review referrals. Ex. D (2019–20 Discipline Hearing Data (Dec. 6, 2019), MR_CCSD_460907) at -908. These are not press accounts or speculation. They are Charleston's own data about the Charleston students whose mental health is at issue. And their relevance does not depend on why the disparities arose. Whether they reflect bias, poverty—as Charleston's Superintendent has suggested—or other factors, the disparities themselves are a district-specific stressor on Charleston's students and a driver of its discipline costs. Having put student discipline at issue as a category of damages, Charleston cannot exclude its own records showing an alternative cause of the increased discipline costs Charleston claims. *See* Ex. E (Third Am. Pl. Fact Sheet, MR_CCSD_779239) at -254 to -255 (seeking damages for "increasing disciplinary services" and "[i]ncreasing staff time associated with student discipline"). If discipline in Charleston fell disproportionately on African American students, the jury may conclude that the

District's discipline costs reflect how discipline was administered, why, and by whom rather than any effect of Defendants' platforms.

The same is true of the one race-related incident at issue in Charleston's Motion in Limine No. 2 on which Defendants intend to rely. In fall 2021, multiple Lucy Beckham High School students came to school during a planned spirit day displaying the Confederate flag, with one student displaying the flag on his truck, and District staff and administrators investigated and responded. Ex. F (Sept. 15, 2026 Dassing Dep.) at 146:3–18; Ex. G (Mem. from A. Dassing to A. Huggins re: Summary of Spirit Week Events for LBHS Fall 2021 (Oct. 22, 2021), MR_CCSD_664528) at -528. The school's principal acknowledged that the incident "[redacted]" and "[redacted]." Ex. F at 146:19–23, 148:5–15. Those are the very harms—to student mental health and to District resources—that Charleston attributes to Defendants. And having conceded that race-related factors are a legitimate alternative cause, Charleston cannot exclude evidence of a specific, damages-period incident showing how race-related conduct affected its students and required the District to expend resources.

**2. Rule 404 Does Not Apply.**

Charleston's Rule 404 argument is unavailing. Rule 404(a) addresses propensity: precluding the use of a party's "character" or "trait" to show conduct "on a particular occasion." Fed. R. Evid. 404(a)(1). And Rule 404(b)(2) expressly preserves other uses of a party's acts when offered for non-propensity purposes. Fed. R. Evid. 404(b)(2); *see also SA Music LLC v. Apple, Inc.*, 592 F. Supp. 3d 869, 885 (N.D. Cal. 2022) (applying Rule 404(b)(2)'s non-propensity uses in a civil action); *Gaines v. Chicago Bd. of Educ.*, 717 F. Supp. 3d 746, 763–64 (N.D. Ill. 2024) (in an action alleging that a student suffered psychological harm from an assault, holding the student's prior school disciplinary records admissible to show "the cause and extent of [the] claimed psychological harm," and that Rule 404(b)(1) posed "no bar" given that "non-propensity purpose"). Defendants do not offer evidence regarding the racial impact of the constituent boards' decisions to show that Charleston has a "character" for racism and acted in conformity with it "on a particular occasion." They offer it to show an alternative cause of the aggregate student harms for which Charleston seeks damages—the same non-propensity purpose Charleston concedes is proper. The same is true of the

Lucy Beckham incident, which involved the conduct of students, not Charleston, and which Defendants offer only to show its effect on students' well-being and on District resources. Rule 404 therefore has no application here.

**3. Rule 403 Does Not Justify Exclusion.**

Charleston's Rule 403 argument fares no better. Rule 403 does not reach evidence simply because it hurts a party's case. It reaches only unfair prejudice that substantially outweighs probative value, and courts are to invoke it in a "cautious and sparing" way. *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) (quoting *United States v. Mills*, 704 F.2d 1553, 1559 (11th Cir. 1983)); Fed. R. Evid. 403. None of Charleston's arguments clears that bar.

As to evidence regarding its constituent boards, Charleston argues that Defendants can make their causation point "through less prejudicial means"—namely, population-level data. CCSD MIL No. 2 at 10; CCSD MIL No. 4 at 8 (citing *United States v. Higuera-Llamos*, 574 F.3d 1206, 1209 (9th Cir. 2009)). But Charleston's own records—specific to its students, not just the local population—are more probative, not merely duplicative. Without them, Charleston will be free to argue that such county-wide disparities say nothing about its students.

Charleston also warns of "time-consuming mini trials" because it would need to show that disparities resulted from factors other than race. CCSD MIL No. 2 at 10; CCSD MIL No. 4 at 7–8. To the contrary, rebutting a contested causal fact is the ordinary business of trial, not a sideshow—and Charleston's Superintendent has already offered an explanation, attributing discipline disparities to poverty. Ex. B at 215:24–216:5.

Moreover, aggregate discipline data from Charleston's own files carries none of the inflammatory character of the evidence excluded in *Brown v. City of Los Angeles*, 2014 WL 13130752, at *6, *13 (C.D. Cal. Oct. 27, 2014), which involved a racial slur and unrelated corruption allegations. *See* CCSD MIL No. 2 at 7, 9; CCSD MIL No. 4 at 5, 7. Defendants' concession on Category One of Charleston's Motion in Limine No. 4 removes the segregation history that is the focus of Charleston's prejudice argument. Any residual concern can be addressed with a limiting instruction, as the Court intended to do with content-related evidence in *Breathitt*. *See* Pretrial Order No. 2, ECF No. 2898 at 5.

Nor does Rule 403 warrant excluding the Lucy Beckham Confederate flag incident. Defendants offer it for its effect inside Charleston's schools: the principal acknowledged that the incident "[redacted]" and "[redacted]." Ex. F at 146:19–23, 148:5–15. Defendants would present the incident through that testimony and Charleston's own records. The incident occurred during the damages period, and its occurrence is documented and undisputed. Ex. F at 146:3–4; Ex. G.

**CONCLUSION**

For the foregoing reasons, the Court should deny Charleston's Motion in Limine No. 4 as to Categories Two through Four and should deny it as moot as to Category One. The Court should deny Charleston's Motion in Limine No. 2 as to the Lucy Beckham High School Confederate flag incident and deny it as moot as to the remaining incidents.

Dated: October 29, 2026

Respectfully submitted,

*/s/ Ashley W. Hardin*

ASHLEY W. HARDIN, *pro hac vice*
ahardin@wc.com
J. ANDREW KEYES, *pro hac vice*
akeyes@wc.com
NEELUM J. WADHWANI (SBN 247948)
nwadhwani@wc.com
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Tel.: (202) 434-5000

*Attorneys for Defendants YouTube, LLC and Google LLC*

*/s/ Ashley M. Simonsen*
Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones (*pro hac vice*)
Paul W. Schmidt (*pro hac vice*)
Christian J. Pistilli (*pro hac vice*)
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
Email: pajones@cov.com
Email: pschmidt@cov.com
Email: cpistilli@cov.com

Beth A. Wilkinson (*pro hac vice*)
Rakesh Kilaru (*pro hac vice)*
Jolee Porter (*pro hac vice*)
Matthew R. Skanchy (*pro hac vice*)
WILKINSON STEKLOFF LLP
2001 M Street, NW, 10th Floor
Washington, D.C. 20036
Telephone: (202) 847-4010
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jporter@wilkinsonstekloff.com
mskanchy@wilkinsonstekloff.com

Moira K. Penza (*pro hac vice*)
WILKINSON STEKLOFF LLP
130 W 42nd Street, 24th Floor
New York, NY 10036
Telephone: (212) 294-8925
Facsimile: (202) 847-4005
mpenza@wilkinsonstekloff.com

*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc. and Instagram, LLC*

*/s/ Jonathan H. Blavin*

JONATHAN H. BLAVIN (SBN 230269)
Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel: (415) 512-4000

E. MARTIN ESTRADA (SBN 223802)
Martin.Estrada@mto.com
L. ASHLEY AULL (SBN 257020)
Ashley.Aull@mto.com
VICTORIA A. DEGTYAREVA (SBN 284199)
Victoria.Degtyareva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel.: (213) 683-9100
Facsimile: (213) 687-3702

ALLISON BROWN, *pro hac vice*
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Tel.: (215) 268-5000

JESSICA DAVIDSON, *pro hac vice*
jessica.davidson@kirkland.com
JOHN J. NOLAN, *pro hac vice*
jack.nolan@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800

*Attorneys for Defendant Snap Inc.*

*<u>/s/ Geoffrey M. Drake</u>*

GEOFFREY M. DRAKE, *pro hac vice*
gdrake@kslaw.com
TACARA D. HARRIS, *pro hac vice*
tharris@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

DAVID P. MATTERN, *pro hac vice*
dmattern@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, D.C. 20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737

BAILEY J. LANGNER (SBN 307753)
blangner@kslaw.com
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

*/s/ Daniel M. Petrocelli*
DANIEL M. PETROCELLI (SB #97802)
dpetrocelli@omm.com
SABRINA H. STRONG (SB #200292)
sstrong@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 553-6700

STEPHEN D. BRODY (*pro hac vice*)
sbrody@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006
Telephone: (202) 383-5300

*Attorneys for Defendants TikTok Inc., ByteDance Inc., ByteDance Ltd., TikTok Ltd., and TikTok, LLC*

**ATTESTATION**

I, Ashley W. Hardin, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: October 29, 2026

By: */s/ Ashley W. Hardin*
Ashley W. Hardin