Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

*Attorney for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc. and Instagram, LLC*

*[Additional parties and counsel listed on signature pages]*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>*Tucson Unified School District v. Meta Platforms, Inc. et al.*, Case No.: 4:24-cv-01382 | MDL No. 3047<br><br>Case No.: 4:22-md-03047-YGR<br><br>**DEFENDANTS' JOINT OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 4 TO EXCLUDE EVIDENCE, TESTIMONY, AND ARGUMENT CONCERNING ISOLATED INCIDENTS OF ALLEGED RACISM BY TUSD STAFF OR STUDENTS DIRECTED AT OR NEAR TUSD STUDENTS**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang<br><br>Date: November 13, 2026<br>Time: 2:00 PM<br>Location: Courtroom 1, 4th Floor |

## TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. Evidence Regarding Specific Instances of Racial Discrimination and Animus Directed at Students Is Relevant. .......... 2

1. "[T]he forming of Turning Points USA club at Sabino High School in 2022" .......... 4

2. "[U]se of racist and derogatory language in group chat involving Sabino High School students in 2020" .......... 5

3. Multiple Incidents Involving the Use of Racial Slurs .......... 6

B. Evidence Regarding Specific Instances of Racial Discrimination and Animus Directed at Students Is Not Unduly Prejudicial. .......... 7

III. CONCLUSION .......... 8

# TABLE OF AUTHORITIES


Page(s)

**Cases**

*Alvarado v. Nw. Fire Dist.*,
2021 WL 4865192 (D. Ariz. Oct. 19, 2021) .......... 7

*Brown v. City of Los Angeles,*
2014 WL 13130752 (C.D. Cal. Oct. 27, 2014) .......... 4

*Felber v. Yudof,*
851 F. Supp. 2d 1182 (N.D. Cal. 2011) .......... 3, 4

*Hill v. Goodfellow Top Grade,*
2019 WL 4194277 (N.D. Cal. Sept. 4, 2019) .......... 4

*Kirola v. City & Cnty. of San Francisco*
2021 WL 1334153 (N.D. Cal. Mar. 12, 2021) .......... 3

*McConnell v. Wal-Mart Stores, Inc.*,
995 F. Supp. 2d 1164 (D. Nev. 2014) .......... 2

*Obrey v. Johnson*,
400 F.3d 691 (9th Cir. 2005) .......... 7

*United States v. Hankey*,
203 F.3d 1160 (9th Cir. 2000) .......... 7

*United States v. Hitesman*,
2016 WL 3523854 (N.D. Cal. June 28, 2016) .......... 2

*United States v. Jolly*,
2026 WL 445655 (9th Cir. Feb. 17, 2026) .......... 7

*United States v. Payne*,
944 F.2d 1458 (9th Cir. 1991) .......... 5

## I. INTRODUCTION

Plaintiff Tucson Unified School District ("TUSD") admits that the defense can raise racial disparities and discrimination in Tucson "as an alternative cause of TUSD's injuries." Mot. at 4. And documents TUSD produced in discovery demonstrate that TUSD staff spend significant time investigating and addressing allegations of racism and discrimination in TUSD schools. In depositions, TUSD's witnesses conceded the obvious: that when students experience or observe racist conduct in their schools, it can impact student mental health, disrupt the learning environment, and divert staff time. Yet TUSD asks this Court to excise allegations of racism and discrimination that its witnesses have spent time investigating, arguing that the examples explored in depositions are highly prejudicial and unrelated to the case. Not so. Specific evidence of the racism TUSD students experienced is relevant and admissible to prove alternative cause for mental health harms, and to undermine TUSD's contentions about how much time its staff devotes to issues related to Defendants' platforms (as opposed to other issues).

These documents are relevant. And even if they may harm TUSD's case—in the sense that these incidents reveal disturbing behavior within TUSD schools not connected to features of Defendants' platforms—any prejudice would not be "unfair" because it arises from the very thing that makes these incidents relevant: that racism is harmful to students' mental health. Defendants do not plan to introduce the incidents TUSD identified that did not involve students, and TUSD's motion as to those incidents is moot.[1] But, as the record reflects, incidents of racism involving students required TUSD to expend resources in response and are plainly admissible to support Defendants' theories of alternative causes of the district's claimed harm. TUSD's Motion in Limine No. 4 should be denied.

## II. ARGUMENT

The documents TUSD seeks to exclude are not the only instances of racism and discrimination in TUSD; they are simply the ones that Defendants highlighted during depositions. But the problem is not isolated. During the period for which TUSD seeks damages, TUSD had an Equity, Diversity, and

[1] These incidents are: allegations of racial discrimination in the hiring of a new Borman Elementary School principal in 2022, *see* Mot. at 2; allegations of racial discrimination in discipline of a TUSD school bus monitor in 2022, *see id.*; and the allegation of a teacher using a racial slur on a staff training videoconference in 2020, *see id.*

Inclusiveness Department ("EDI Department") that was tasked with responding to allegations of discrimination and harassment on a district-wide level. As described *infra*, concerns about racism led to the district conducting a climate and culture study within at least one TUSD high school, which found that racism, homophobia, and other animus was common. And it led to the district conducting a "No Slur Campaign" to educate its students about the harm of using racial slurs like the N-word. The incidents TUSD seeks to exclude are examples of a problem that is real and pervasive. These incidents are not unduly prejudicial; the jury is more than aware that racism sometimes occurs in the world, including in high schools. But they are relevant to the jury's assessment of what causes mental health harms in students at TUSD, and to how TUSD's staff spend its time.

### A. Evidence Regarding Specific Instances of Racial Discrimination and Animus Directed at Students Is Relevant.

A movant seeking exclusion before trial must show that the evidence could not come in for any purpose. *See United States v. Hitesman*, 2016 WL 3523854, at *2 (N.D. Cal. June 28, 2016) (citing *McConnell v. Wal-Mart Stores, Inc.*, 995 F. Supp. 2d 1164, 1167 (D. Nev. 2014)). TUSD's own Motion forecloses that showing. TUSD admits that evidence regarding "racial disparities or discrimination in Tucson" is relevant to the question of alternative causation. Mot. at 4. This admission is fatal to their assertion that testimony and evidence concerning specific examples of that discriminatory behavior should be excluded. The Court should reject Plaintiff's self-serving attempt to sanitize the presentation of admittedly relevant evidence regarding racism and its impact on the mental health of TUSD students to the jury.

As TUSD's own witnesses have admitted, incidents of racism can impact students' mental health and learning. When asked about one of the incidents cited by Plaintiff, TUSD Superintendent Gabriel Trujillo testified that a culture of racist remarks could impact students' mental health, be disruptive to the learning environment, and affect academic performance. Ex. A, Trujillo Dep. 113:2–11.[2] Similarly, when asked about a racist incident at Sabino High School, Director of Social Emotional Learning and School

[2] Unless otherwise specified, exhibits cited in this opposition are exhibits to the Declaration of Ashley M. Simonsen in Support of Defendants' Joint Opposition to Plaintiff's Motion in Limine No. 4.

Counseling Julie Shivanonda agreed that a culture where racist remarks are the norm could "[a]bsolutely" be disruptive to the learning environment. Ex. B, Shivanonda Dep. 288:13–18. Defendants should be allowed to introduce that evidence.

TUSD argues that "any alleged connection between a few isolated incidents and pervasive mental health problems is extremely tenuous." Mot. at 4. But the evidence shows otherwise. TUSD has a Department of Equity, Diversity, and Inclusiveness that was enlisted to investigate and respond to some of these incidents. *See* Mot. Ex. E at 3. That Department did not exist merely to address a handful of isolated incidents; it instituted district-wide programs as recently as the 2023–24 school year to respond to and address issues of racism in TUSD's schools. Ex. D, Trujillo Dep. Ex. 14 (discussing "No Slur Initiative," which was described as "a multifaceted approached for classroom, school, and district level practices and activities that create safe and inclusive environments," and which included student, staff, and parent training and a $65,000 budget for the first year of the initiative). The fact that a district-wide department was instituting district-wide programming to address racism undermines Plaintiff's claim that these incidents were isolated—and in any case, the jury should be permitted to make that determination. Moreover, TUSD intends to argue at trial that the vast majority of staff time and resources are devoted specifically to social media-related concerns. *See, e.g.*, Oct. 26, 2026 Affidavit of Julie Shivanonda (Dkt. 3595-7; 37-7) ¶ 18; Ex. F, Shivanonda Dep. 77:3–78:14. Defendants therefore should be permitted to introduce evidence of staff time being spent addressing non-social media related issues, as reflected in several of the incidents that TUSD is attempting to exclude.

Each of the specific instances discussed below involves relevant evidence of the pervasive climate of racism experienced and witnessed by TUSD students throughout the district. Plaintiff's cases provide no support to the contrary. *Kirola v. City & Cnty. of San Francisco* concerned the admissibility of testimony about how frequently step stools were left in library stacks on an ADA claim. 2021 WL 1334153 at *18 (N.D. Cal. Mar. 12, 2021), Mot. at 5. The plaintiff there sought to testify that stools were left in stacks "about 40 percent of the time" to support a claim that the stools were a barrier to access, but there was no evidence of how frequently the plaintiff went to the library at all. Defendants do not seek to use these incidents as statistical evidence of the frequency of racist incidents. In *Felber v. Yudof*, the

plaintiffs were individual students claiming to have encountered a hostile environment, so the court determined that other incidents that the plaintiffs did not experience were not relevant. 851 F. Supp. 2d 1182, 1188 (N.D. Cal. 2011). The same reasoning undermines their citation to *Hill v. Goodfellow Top Grade*, where a single plaintiff pursuing discrimination claims was foreclosed from introducing "witnesses' stories involv[ing] circumstances and theories of discrimination that are substantially different from Plaintiff's claims." 2019 WL 4194277 at *2 (N.D. Cal. Sept. 4, 2019). Here, TUSD as a whole is a plaintiff, seeking to recover for its expenditures that resulted from harm across the district and across many years. *Brown v. City of Los Angeles* involved the potential use of the N-word at trial, which is not at issue here. 2014 WL 13130752 (C.D. Cal. Oct. 27, 2014). The incidents, and the attendant cost on District resources, as described below, should be admissible for the jury to weigh against Plaintiff's theory of harm.

**1. "[T]he forming of Turning Points USA club at Sabino High School in 2022"**

Turning Point USA is a conservative youth movement that has chapters throughout the United States, including in high schools. *See* Turning Point USA, https://www.tpusastudents.com/. In August 2021, Tucson's EDI Department received a community complaint regarding a Turning Point USA club at Sabino High School, as detailed in an email with the subject line "Unaddressed Racism in TUSD." Mot. Ex. A. The email detailing the community complaint describes "several incidents of overt racism" related to the group, not an isolated incident. Mot. Ex. A at 2.

TUSD then expended time and money running focus groups at Sabino High School, where students complained that "[l]ots of racist slurs are being said," "teachers ignore the derogative slurs," and "[t]eachers need to be educated on racism." Ex. E, A. Schwartz Warmbrand Dep. Ex. 23 (report summarizing September 2021 focus group in which Sabino students also reported that teachers are "saying racist stuff in class"). The same focus group revealed additional alternative causes to the mental health harms TUSD attributes to Defendants' platforms, including that "teachers don't mention mental health, like it is taboo," "teachers don't create safe space," and "Sabino [is] not a safe place as a LGBTQI." *Id.* TUSD's EDI department then produced a Culture and Climate Support report that found, among other

things, that "students and teacher have experienced a culture and climate where racist remarks, jokes, and gestures are the 'norm' among students." Mot. Ex. E at 3.

The EDI report included a recommendation to "promote mental health supports provided by district," explicitly tying the founding of the Turning Point USA chapter to student mental health. *Id.* Similarly, Superintendent Trujillo—who "had no reason to doubt the findings" of the EDI report—testified that a culture where racist remarks are the norm could affect students' mental health, the learning environment, and academic performance. Ex. A, Trujillo Dep. 112:24–11. And Director of Social Emotional Learning Shivanonda agreed that a culture where racist remarks are the norm could harm student mental health and learning. Ex. B, Shivanonda Dep. 288:13–18. These are the exact harms that Plaintiffs contend are caused by Defendants' conduct, and such evidence is plainly relevant to Defendants' rebuttal of those theories.

**2. "[U]se of racist and derogatory language in group chat involving Sabino High School students in 2020"**

The incident in which racist and derogatory language was used in a group chat with Sabino High School students and students at other schools is likewise relevant and admissible. The complaining student reported—in an email titled "Racism And Homophobia In Our Schools"—that Sabino High School "ha[s] come to be known among teens as one of the most racist schools in TUSD." Mot. Ex. F at 4. The complaining student similarly states that "this is not the first time I have experienced a micro aggression at the hands of [TUSD] students" and notes the need to feel safe on school campus, suggesting that the racist culture she described in her complaint is impacting her experience at school, and which the school counseling department's district coordinator has acknowledged could affect students' performance at school. Ex. C, Carrier Dep. 190:11–19. The statements in the group chat are admissible for the effect they had on the complaining student's state of mind, which is relevant. *See United States v. Payne*, 944 F.2d 1458, 1472 (9th Cir. 1991) (finding out-of-court statement admissible because it was introduced to show the effect on the listener). And whether or not the allegations within the complaint were accurate, TUSD witnesses must spend time investigating these types of reports—issues that stem from problematic student behavior, not from Defendants' platforms.

### 3. Multiple Incidents Involving the Use of Racial Slurs

TUSD's district-wide "No Slur Initiative" makes clear that concerns about racism, and in particular the use of racial slurs, is not confined to one school. Belying Plaintiff's attempt to portray these incidents as isolated, TUSD seeks to exclude evidence regarding multiple separate instances where the N-word was used by and/or directed at TUSD students. This evidence is relevant and admissible, not least because it serves to provide concrete examples of the problematic "culture and climate" identified by Tucson's EDI Department.[3]

First, evidence surrounding a 2022 basketball game, in which the N-word was used by and against a Tucson High Magnet School student, is relevant and admissible. TUSD acknowledged that "whether [students] have experienced or observed racism" can be relevant. Mot. at 7. This incident is actual evidence that students have had those experiences. Indeed, the evidence shows that racial slurs and epithets were "regularly uttered" at the school, that "teachers and staff mostly ignore the misconduct," and that such racial incidents "seem widespread throughout TUSD schools." *See* Mot. Ex. C at 3. The parent making the report went on to complain that their child was being disciplined in a discriminatory manner, despite TUSD's failure to address other instances of racism at the school and across the district. *Id.*

Second, evidence regarding a 2022 incident in which a student, "surrounded by five other students," shouted the N-word at Mr. Hoskins, dean of Pueblo High School, is also relevant and admissible. As TUSD's superintendent testified, even one racist remark can affect mental health. Ex. A, Trujillo Dep. 102:9–12 ("Q: And would you agree that even if the racist remark is used just once at somebody, that can impact mental health? A: Yes."). A jury could logically infer that multiple students shouting racial slurs at an adult authority figure within a school is indicative of a larger problem. Here, moreover, there is evidence that this was not an isolated incident, citing "almost daily" racist remarks at the school. *See* Mot. Ex. D. at 2.

Finally, evidence regarding a 2019 incident in which a middle school teacher admittedly used the N-word in class, is likewise relevant and admissible. A jury can easily, and rightfully, infer that hearing

---

[3] While the N-word was used in each of these incidents, Defendants will not use that word in court and will refer only to "racial slurs" or the "N-word" being used.

their own teacher—or knowing that a teacher in their school—openly used racial slurs has a negative impact on students and school culture. And TUSD's witnesses have admitted as much: as the Director of Social Emotional Learning and School Counseling for TUSD at the time of the incident testified, the use of such a slur could harm student mental health and disrupt learning. Ex. B, Shivanonda Dep. 285:15–21 ("Q: You would agree that the use of a racial slur by a teacher in a class could harm student mental health? A: Yes. Q: It can be disruptive to the learning environment? A: It could.").

### B. Evidence Regarding Specific Instances of Racial Discrimination and Animus Directed at Students Is Not Unduly Prejudicial.

Plaintiff argues that even if relevant, the risk of unfair prejudice warrants exclusion. But the risk of unfair prejudice here is not so extreme as to substantially outweigh its probative value. "Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000). The prejudice here arises from the suggestion that TUSD has experienced racist incidents, but it is precisely those racist incidents that are relevant to potential alternative causes of TUSD students' harm. "Here, the prejudicial material and the probative material are one and the same." *United States v. Jolly*, 2026 WL 445655, at *2 (9th Cir. Feb. 17, 2026); *see also Alvarado v. Nw. Fire Dist.*, 2021 WL 4865192, at *4 (D. Ariz. Oct. 19, 2021) ("although the evidence may prejudice [TUSD], it is not unfair prejudice, *i.e.*, it would not have a tendency to suggest a decision on an improper basis"). Moreover, Plaintiff is expected to present cherry-picked incidents related to Defendants' platforms as evidence of mental health harms allegedly caused by Defendants' platforms. Defendants should be allowed to present alternative evidence of what goes on in TUSD schools that impacts student mental health, disrupts the learning environment, or expends district resources.

Defendants will be efficient in their trial presentation, including with respect to the evidence at issue in this motion. Moreover, Defendants have cabined their alternative causation theory on this issue to only the incidents relating directly to TUSD students. Plaintiff's argument that the admission of these incidents will result in mini-trials is premature, as Plaintiff has no idea how Defendants plan to introduce the evidence. *See Obrey v. Johnson*, 400 F.3d 691, 699 (9th Cir. 2005) (reversing exclusion of related claims of discrimination despite argument that evidence would result in mini-trials).

## III. CONCLUSION

The Court should deny Plaintiff's motion to exclude any testimony or documents concerning allegations of specific instances of racial discrimination, hostility, or racist conduct in the district.

DATED: October 29, 2026

Respectfully submitted,

By: *Ashley M. Simonsen*

Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones (*pro hac vice*)
Paul W. Schmidt (*pro hac vice*)
Christian J. Pistilli (*pro hac vice*)
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
Email: pajones@cov.com
Email: pschmidt@cov.com
Email: cpistilli@cov.com

Beth A. Wilkinson (*pro hac vice*)
Rakesh Kilaru (*pro hac vice*)
Jolee Porter (*pro hac vice pending*)
Matthew R. Skanchy (*pro hac vice*)
WILKINSON STEKLOFF LLP
2001 M Street, NW, 10th Floor
Washington, D.C. 20036
Telephone: (202) 847-4010
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jporter@wilkinsonstekloff.com
mskanchy@wilkinsonstekloff.com

Moira K. Penza (pro hac vice)
WILKINSON STEKLOFF LLP
130 W 42nd Street, 24th Floor
New York, NY 10036
Telephone: (212) 294-8925
Facsimile: (202) 847-4005
Email: mpenza@wilkinsonstekloff.com

*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc. and Instagram, LLC*

*/s/ Jonathan H. Blavin*
Jonathan H. Blavin (State Bar No. 230269)
Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel: (415) 512-4000

E. MARTIN ESTRADA (SBN 223802)
Martin.Estrada@mto.com
L. ASHLEY AULL (SBN 257020)
Ashley.Aull@mto.com
VICTORIA A. DEGTYAREVA (SBN 284199)
Victoria.Degtyareva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel.: (213) 683-9100

ALLISON BROWN (*pro hac vice)*
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Tel.: (215) 268-5000

JESSICA DAVIDSON (*pro hac vice)*
jessica.davidson@kirkland.com
JOHN J. NOLAN (*pro hac vice)*
jack.nolan@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800

*Attorneys for Defendant Snap Inc.*

/s/ Ashley W. Hardin
ASHLEY W. HARDIN (*pro hac vice)*
ahardin@wc.com
J. ANDREW KEYES (*pro hac vice)*
akeyes@wc.com
NEELUM J. WADHWANI (SBN 247948)
nwadhwani@wc.com
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
Tel.: (202) 434-5000

*Attorneys for Defendants YouTube, LLC and Google LLC*

/s/ Geoffrey M. Drake
GEOFFREY M. DRAKE (*pro hac vice)*
gdrake@kslaw.com
TACARA D. HARRIS (*pro hac vice)*
tharris@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel.: (404) 572-4600

DAVID P. MATTERN (*pro hac vice)*
dmattern@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, D.C. 20006
Tel.: (202) 737-0500

BAILEY J. LANGNER (State Bar No. 307753)
*blangner@kslaw.com*
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Tel.: (415) 318-1200

_/s/ Daniel M. Petrocelli_
DANIEL M. PETROCELLI (SB #97802)
dpetrocelli@omm.com
SABRINA H. STRONG (SB #200292)
sstrong@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 553-6700

STEPHEN D. BRODY (*pro hac vice*)
sbrody@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006
Telephone: (202) 383-5300

*Attorneys for Defendants*
*TikTok Inc., ByteDance Inc., TikTok Ltd., ByteDance Ltd., and TikTok LLC*

**ATTESTATION**

I, Ashley M. Simonsen, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: October 29, 2026

By: */s/ Ashley M. Simonsen*
Ashley M. Simonsen