JONATHAN H. BLAVIN (SBN 230269)
Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel: (415) 512-4000

E. MARTIN ESTRADA (SBN 223802)
Martin.Estrada@mto.com
L. ASHLEY AULL (SBN 257020)
Ashley.Aull@mto.com
VICTORIA A. DEGTYAREVA (SBN 284199)
Victoria.Degtyareva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel.: (213) 683-9100

*Attorneys for Defendant Snap Inc.*

*[Additional parties and counsel listed on signature page]*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION

THIS DOCUMENT RELATES TO:

*Tucson Unified School District v. Meta Platforms Inc., et al.*
Case No. 4:24-cv-01382-YGR

MDL No. 3047

Case No. 4:22-md-03047-YGR-PHK

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 3 TO EXCLUDE REFERENCES TO TUCSON UNIFIED SCHOOL DISTRICT'S DESEGREGATION LITIGATION**

**Hearing:**
Date: November 13, 2026
Time: 2:00 PM
Place: Courtroom 1, 4th Floor
Judge: Hon. Yvonne Gonzalez Rogers

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. ARGUMENT ........ 2

A. Defendants Have Already Agreed to Exclude the Desegregation Case. ........ 2

B. Evidence of the Unitary Status Plan and TUSD's Recent History of Desegregation Efforts Is Admissible and Relevant to Alternative Causation ........ 3

C. TUSD's Hearsay Objections Are Unwarranted. ........ 7

D. Rule 408 Does Not Bar Evidence about the Unitary Status Plan. ........ 8

E. Exclusion of the Desegregation Case Resolves TUSD's 403 Concerns. ........ 9

III. CONCLUSION ........ 10

# TABLE OF AUTHORITIES


**Page(s)**

**FEDERAL CASES**

*Christin v. Wal-Mart Assocs.*, Inc.,
2025 WL 391013 (E.D. Cal. Feb. 3, 2025) .......... 7

*Fisher v. Tucson Unified School District*,
Nos. CV-74-00090-TUC-DCB, CV-74-00204-TUC-DCB, 2022 WL 4482641 (D. Ariz. July 20, 2022).......... 2

*Haddad v. Lockheed California Corp.*,
720 F.2d 1454 (9th Cir. 1983) .......... 8

*L.E. v. Lakeland Joint Sch. Dist. #272*,
403 F. Supp. 3d 888 (D. Idaho 2019).......... 8

*Mendoza v. Tucson Unified School District*,
125 F.4th 1262 (9th Cir. 2025) .......... 2

*Trulove v. D'Amico*,
No. 16-CV-050 YGR, 2018 WL 1248095 (N.D. Cal. Mar. 11, 2018) .......... 8

*United States v. Yang*,
No. 16-CR-00334-LHK, 2019 WL 5536213 (N.D. Cal. Oct. 25, 2019) .......... 7

*Yue v. Chordiant Software, Inc.*,
2010 WL 11575579 (N.D. Cal. Apr. 22, 2010).......... 9

**STATE CASES**

*Kline v. Zimmer, Inc.*,
79 Cal. App. 5th 123 (2022).......... 7

*Scipione v. Kinkisharyo (USA) Inc.*,
No. MC027686, 2024 WL 2982179 (Cal.Super. Apr. 08, 2024) .......... 7

**FEDERAL RULES**

Fed. R. Evid. 408 .......... 8, 9

Fed. R. Evid. 801(c).......... 8

**OTHER AUTHORITIES**

2 McCormick on Evid. § 266 (9th ed. 2025).......... 8

# I. INTRODUCTION

The parties agree: evidence regarding (1) the Desegregation Case concerning segregation within Tucson Unified School District ("TUSD") in the 1970s; (2) historical conclusions in the Desegregation Case; (3) the 1978 Settlement Agreement; and (4) any characterization of why TUSD was under court supervision should be excluded from the instant case. Defendants said as much when they offered to stipulate to most of TUSD's proposed exclusions prior to filing this opposition. Ex. 2 (Defendants' Proposed Stipulation). In response, TUSD insisted that the parties must also exclude crucial documents that governed TUSD's operations during the period for which it seeks damages, as well as any other document that even *references* these governing documents unless redacted. Ex. 15 (Plaintiff's Counter Proposal). Evidence of TUSD's recent conditions—namely its administrative realities and the impact of racism in this decade—goes to the heart of the causation issues in this case and is admissible for that purpose.

The thesis of TUSD's motion is that Defendants "seek to reopen" the Desegregation Case "[a]fter 50 years of litigation," and their arguments for exclusion rest on that false premise. But Defendants agree not to introduce the "Desegregation Case's findings," including through expert witnesses. Tucson MIL No. 3 at 1. Defendants also agree not to argue that the "half-century-old controversy" is evidence of present-day harms to TUSD students. *Id.* Moreover, Defendants will not argue that the 1978 Settlement Agreement and the Unitary Status Plan—TUSD's court-supervised blueprint for remedying racial discrimination—are proof that TUSD operated a discriminatory school district. *Id.*

So what is left? Defendants seek to introduce evidence concerning the programs, policies, practices, and positions established or maintained as a consequence of the Desegregation Case's resolution and evidence concerning the District's ongoing challenges involving discrimination, disparate treatment, and racism. Some of that evidence requires reference to the Unitary Status Plan and a "prior court order" because they affect the District's *current* operations. Indeed, the District operated under the Unitary Status Plan from 2013 through to 2022. References to desegregation efforts thus permeate TUSD's annual reports, governing board documents, strategic plans, budget documents, disciplinary analyses, magnet school planning, complaints from the community, and

everything else. Even the Deputy Superintendent's *resume* identifies [redacted] Ex. 1 (Rodriguez Dep. Ex. 1). Given this scope, Defendants should be able to present otherwise admissible evidence that is relevant to alternative cause and damages, even if that evidence references the Unitary Status Plan or desegregation. And witnesses, including Defendants' experts, should be able to acknowledge that present-day alternative cause concerns related to racism and discrimination arise in the context of long-standing efforts to address similar concerns. The Court should deny TUSD's motion and enter Defendants' alternative proposed order.

## II. <u>ARGUMENT</u>

Defendants have already agreed to not discuss—let alone relitigate—the Desegregation Case. And TUSD's motion purports to target that narrow request. But what remains in dispute is TUSD's attempt to artificially restrict Defendants' presentation of the programs, policies, practices, and positions adopted or implemented within the damages period that have some connection or reference to the Unitary Status Plan or to TUSD's recent desegregation efforts. Evidence about the District's focus on eliminating discrimination is relevant to establishing alternative causes for the very harms for which the District seeks to hold Defendants liable. Such evidence is not hearsay, nor rendered inadmissible by the rule governing settlement evidence, and is not unfairly prejudicial.

### A. Defendants Have Already Agreed to Exclude the Desegregation Case.

Prior to filing this opposition, Defendants offered to resolve this motion without court involvement by stipulating that they will not offer evidence or argument about the Desegregation Case at trial. Ex. 2 (Defendants' Proposed Stipulation). In that proposal, Defendants agreed in full to TUSD's three main requests: (1) not to offer evidence or argument about *Fisher v. Tucson Unified School District*, Nos. CV-74-00090-TUC-DCB, CV-74-00204-TUC-DCB, 2022 WL 4482641 (D. Ariz. July 20, 2022), *aff'd sub nom. Mendoza v. Tucson Unified School District*, 125 F.4th 1262 (9th Cir. 2025) or any related appeals; (2) not to offer evidence or argument about "any allegations, findings, or conclusions in the Desegregation Case that TUSD segregated or discriminated against students or acted in bad faith," and (3) not to offer any "characterization of why TUSD was under court supervision." Ex. 2 (Defendants' Proposed Stipulation). Moreover, Defendants *also* agreed

to TUSD's remaining requests, with modest modifications: (4) not to offer evidence or argument about the 1978 Settlement Agreement (although reserving the option to present evidence about the more recent Unitary Status Plan); (5) not to offer expert testimony about the Desegregation Case (although clarifying that experts may still offer other opinions about alternative cause); and (6) agreeing to refer to the Desegregation Case as "a prior federal court order." *Id.* Defendants' concessions address all of the concerns TUSD identified in its motion.

First, TUSD argues that the Desegregation Case findings are hearsay. Tucson MIL No. 3 at 3-4. But Defendants do not seek to introduce "[t]he findings in the Desegregation Case" nor do they intend to tell the jury "that a federal court found that TUSD segregated students" so that jurors will "infer that TUSD remains a place where students are treated unequally because of race." *Id.* TUSD's hearsay objection is therefore moot.

Second, TUSD argues that Defendants' experts cannot testify to hearsay. Tucson MIL No. 3 at 4-5. But although the Desegregation Case is relevant context appropriately considered by Defendants' experts, to streamline the issues for trial, Defendants have agreed that their experts will not specifically point to the desegregation litigation, nor recount its history in their testimony. *Id.* Consequently, TUSD's concerns that Defendants' experts will serve as a conduit for the Desegregation Case are also moot.

Third, TUSD argues that the Desegregation Case has minimal probative value. Tucson MIL No. 3 at 6. But Defendants do not seek to discuss "segregation at certain TUSD schools in the 1970s," nor "highlight at trial [findings that] date to the 1970s." *Id.* TUSD's assessment about the probative value of this evidence is thus irrelevant, and TUSD's arguments about the prejudice it would face from this evidence are misplaced.

### B. Evidence of the Unitary Status Plan and TUSD's Recent History of Desegregation Efforts Is Admissible and Relevant to Alternative Causation.

The remaining dispute revolves around the impact of the Unitary Status Plan on the District during the period for which TUSD seeks damages, and the fact that TUSD's focus on desegregation has continued into that period. Defendants' proposed stipulation—and alternative proposed order—would exclude evidence of the Desegregation Case without precluding Defendants from: (1)

offering testimony about the Unitary Status Plan (or the Post-Unitary Status Reporting and Accountability Plan), which have been in effect during the relevant time period; or (2) offering otherwise admissible evidence that references or discusses the Desegregation Case or the Unitary Status Plan. Indeed, Defendants understood TUSD's motion to only take issue with using evidence of the Unitary Status Plan "as proof of fault" of TUSD's discrimination. Tucson MIL No. 3 at 7.

Defendants do, however, anticipate introducing evidence that references the modern-day operation and impact of the court-ordered Unitary Status Plan and TUSD's desegregation efforts. The Unitary Status Plan drove many of TUSD's budget and managerial decisions; recent complaints about discrimination reference long-standing concerns; and remedying discrimination and harassment—alternative causes for student mental health harms—has been a documented priority for the District. The Unitary Status Plan and desegregation efforts also appear so frequently in TUSD documents (as set forth below) that the parties would have to redact a substantial number of the District's official documents, and contort witness testimony, to remove all references to them. TUSD's core stated concern is preventing an argument or inference that because of a finding from the 1970s, TUSD is a district that discriminates against its students. Defendants will not make that argument, but need to be able to use documents and evidence that reference the Unitary Status Plan and desegregation efforts to provide context and present theories of alternative cause.

Even without naming the Desegregation Case, TUSD's desegregation efforts, including its implementation of the Unitary Status Plan, are relevant to show that TUSD attributes harm to Defendants that it previously attributed to racial disparities; that various positions and programs were instituted to eliminate discrimination—not to address the impact of Defendants' platforms; and that addressing racism and discrimination remain priority concerns in the District. As TUSD acknowledges, the Unitary Status Plan "set goals and requirements for TUSD in areas such as student assignment, transportation, staffing, quality of education, student discipline, family and community engagement, extracurricular activities, and facilities." Tucson MIL No. 3 at 2. Among other things, the Unitary Status Plan required the District to collect and retain specific categories of data concerning student behavior and discipline. It created important District programs and staff positions, including the Student Relations Department and restorative practice facilitators. *Id.* And

the Unitary Status Plan "had a significant impact on TUSD's budget." Ex. 3 (Hernandez 30(b)(6) Dep.) 72:17–20. The Unitary Status Plan required TUSD to implement and maintain these initiatives for the purpose of remedying racial disparity—efforts that had concrete, measurable consequences for the District's operations, including its spending and hiring practices. Tucson MIL No. 3 at 2; Ex. 4 (Schwartz-Warmbrand Dep.) Ex. 13; Ex. 3 (Hernandez Dep.) 72:17–76:11; Ex. 5 (Schwartz-Warmbrand Dep.) 17:19–18:4; Ex. 6 (Shivanonda 30(b)(6) Dep.) 289:13–25. Yet TUSD now claims that many of the programs and positions established because of the Unitary Status Plan are instead necessary because of Defendants' platforms.

Although the Unitary Status Plan is no longer in effect, Tucson operated under the Plan for most of the relevant time period—and, regardless, its impact on the District's operations and finances persists today. For example, the District continues to collect and maintain detailed data concerning factors affecting student discipline and academic outcomes, consistent with the requirements previously imposed by the Unitary Status Plan. *See, e.g.*, Ex. 5 (Schwartz-Warmbrand Dep.) 18:5–20:4. The District's ability to document the details of disciplinary incidents, and its practice of tracking and analyzing such information, is not merely incidental; it reflects obligations imposed through federal court oversight. *Id.* This is relevant to rebut TUSD's anticipated claim that it simply does not, or could not, document the harms it alleges Defendants' platforms caused. The District also continues to maintain staffing positions created as a result of the Unitary Status Plan, including positions within the Student Relations Department, alongside other student behavior roles. *See, e.g.*, *id* at 17:19-18:4. Evidence concerning the Unitary Status Plan's financial and operational consequences is thus directly relevant to the District's claimed damages. Where behavioral and mental health services were established or funded to address racial disparity—thus fulfilling the goals of the Unitary Status Plan—TUSD cannot recover those costs as damages from its claimed injury by Defendants' platforms. Yet Plaintiffs seek to exclude the Unitary Status Plan in its entirety. Dkt. No 3584 (Plaintiff's Proposed Order).

The District's desegregation efforts bear directly on the issues the jury must decide. The existence and scope of the District's programs and policies, the District's detailed student data, and the District's present budgetary constraints are all relevant to assessing whether Defendants'

platforms have imposed costs on TUSD—but are also intertwined with the Unitary Status Plan. And the District cannot attribute these costs to Defendants without accounting for the independent obligations, institutional changes, and financial circumstances arising from the Unitary Status Plan. Moreover, references to desegregation and the Unitary Status Plan are pervasive in the District's records. *See, e.g.*, Ex. 7 (Hallums Dep. Ex. 4) at 5; Ex. 8 (Hernandez Dep. Ex. 8) at 1; Ex. 9 (Trujillo Dep. Ex. 42) at 6; Ex. 10 (Salmon Dep. Ex. 15) at 19; Ex. 13 (Schwartz-Warmbrand Dep. Ex. 24) at 3-4; Ex. 14 (Shivanonda 30(b)(6) Dep. Ex. 35) at 1. Evidence related to TUSD's desegregation efforts is essential to distinguishing the effects of court-imposed requirements and their termination from those allegedly caused by Defendants' platforms. And it provides critical context necessary to assess whether, and to what extent, Defendants actually caused the harms TUSD claims.

Additionally, even while agreeing not to discuss or reference the Desegregation Case, experts and fact witnesses should be allowed to provide context for TUSD's recent initiatives addressing perceived racism and discrimination issues.[1] Within the period for which TUSD seeks damages, TUSD has often spent time investigating allegations of discrimination and harassment, as well as attempting to remedy and prevent racial disparities. The Unitary Status Plan and similar documents identifying desegregation as a recent priority for the District provide context for those initiatives, and contain admissions about the District's priorities (i.e., things other than mitigating the purported impact of Defendants' platforms) that Defendants should be permitted to present at trial. The mere fact that a document discusses or refers to the Unitary Status Plan or desegregation does not make it unduly prejudicial, and TUSD's proposal to exclude any document that references the Unitary Status Plan unless all references are redacted is overbroad and unduly burdensome.

Presenting evidence that undermines TUSD's claims about how much time it spends mitigating the impact of Defendants' platforms, and separately presenting evidence of alternative causes for the claimed mental harms, is vital to Defendants' case. *See, e.g., Christin v. Wal-Mart*

[1] Defendants do not understand TUSD's MIL No. 3 to seek exclusion of evidence about racism generally—separate from the desegregation litigation—as an alternative cause. Defendants address TUSD's arguments with respect to specific incidents of racism in the district in their opposition to Tucson MIL No. 4. Defendants' proposal for Tucson MIL No. 3 simply clarifies that excluding the Desegregation Case does not exclude other evidence of discrimination or racial disparity.

*Assocs.*, Inc., 2025 WL 391013, at *3 (E.D. Cal. Feb. 3, 2025) (discussing relevance of evidence that can show "possible alternate causes or contributors."). As one court aptly put it, it is "imperative that the party without the burden of proof be allowed to suggest alternative causes." *Kline v. Zimmer, Inc.*, 79 Cal. App. 5th 123, 133 (2022), *superseded on other grounds*, *Scipione v. Kinkisharyo (USA) Inc.*, No. MC027686, 2024 WL 2982179, at *8 (Cal. Super. Apr. 08, 2024). And such evidence has nothing to do with the District's character; it shows how the District spends its time, or it is integrated with evidence of alternative causes.

**C. TUSD's Hearsay Objections Are Unwarranted.**

Consistent with the alternative proposed order, Defendants will not seek to introduce "a judge's specific findings" as proof of the matters determined in that litigation, Tucson MIL No. 3 at 4. Defendants thus believe that TUSD's articulated concern that the Desegregation Case's findings are barred by the hearsay rule is unwarranted. What remains is evidence of the documented, real-world consequences of the Unitary Status Plan, including the programs and policies implemented, obligations imposed, resources allocated, and institutional changes that followed. Such evidence is independently relevant to the District's claimed damages and the causes of those alleged harms. Those facts appear in a variety of documents: budget summaries, data reports, strategic plans, communications, and more. Depending on the particular evidence and the purpose for which it is offered, various hearsay exceptions and non-hearsay grounds for admissibility apply. Any attempt to categorically exclude such evidence on hearsay grounds at this stage would therefore be premature. *See, e.g.*, *United States v. Yang*, No. 16-CR-00334-LHK, 2019 WL 5536213, at *4 (N.D. Cal. Oct. 25, 2019) ("Without greater context, the Court cannot say that Defendants' out-of-court statements would be hearsay, let alone that an exception to hearsay does not apply.").

Nor would evidence of TUSD's current efforts to address racism and discrimination be inadmissible hearsay. Complaints about discrimination and harassment in the District may be supported by first-hand knowledge about the incidents. And experts should be allowed to acknowledge the context for such complaints: decades-long debates about lingering discrimination. Even if TUSD determined that a particular allegation of discrimination was unfounded, District witnesses acknowledge that they spend time investigating these issues. *See, e.g.*, Ex. 11 (Carrier

Dep.) 187:12–188:23; Ex. 6 (Shivanonda 30(b)(6) Dep.) 282:17-24. Moreover, statements offered for something other than the truth of the matter are definitionally not hearsay. Fed. R. Evid. 801(c); *see also Trulove v. D'Amico*, No. 16-CV-050 YGR, 2018 WL 1248095, at *2 (N.D. Cal. Mar. 11, 2018) (holding that statements offered to show their effect on the listener are not hearsay); *Haddad v. Lockheed California Corp.*, 720 F.2d 1454, 1456 (9th Cir. 1983); *see also L.E. v. Lakeland Joint Sch. Dist. #272*, 403 F. Supp. 3d 888, 897 (D. Idaho 2019).

To the extent the District's motion seeks wholesale exclusion of any documents, evidence, or expert testimony that reference the Unitary Status Plan or its impact on this District, hearsay rules do not allow the District to exclude such broad categories of evidence without regard to the nature of the particular statements, the purposes for which they will be offered, or the applicable grounds for admissibility. Those determinations are necessarily context-specific and should be made as the evidence is presented at trial, not through a blanket pretrial ruling.

### D. Rule 408 Does Not Bar Evidence about the Unitary Status Plan.

Federal Rule of Evidence 408(a) does not bar admission of the Unitary Status Plan because Defendants do not seek to introduce it to prove that TUSD was or was not a segregated school district. Instead, any evidence Defendants present would be for a permissible purpose. *See* Fed. R. Evid. 408(b) (permitting evidence of compromise negotiations when offered for a purpose other than those prohibited by Rule 408(a)); 2 McCormick on Evid. § 266 (9th ed. 2025) (Rule 408 only excludes "the [settlement] offer . . . , as well as any suggestions or overtures of settlement"). For example, it is undisputed that the Unitary Status Plan outlined various programs, policies, practices, and positions that provide behavioral and mental health support to students, and that require documentation of disciplinary incidents. Regardless of the District's underlying liability in the Desegregation Case, its efforts over the past decade are relevant to the District's claimed harms. Defendants seek to introduce evidence of those efforts—not to establish the validity or invalidity of the claims resolved in the Desegregation Case, but to present alternative causes for mental health harms, alternative explanations for expenditures, and context for ongoing issues that the District itself has identified as a priority. Such evidence serves an independent, permissible purpose and does not implicate the concerns underlying Rule 408.

**E. Exclusion of the Desegregation Case Resolves TUSD's 403 Concerns.**

TUSD's 403 argument rests entirely on the relative probative and prejudicial value of the findings within the Desegregation Case that TUSD discriminated against its students in the 1970s. Defendants concur that the probative value of those findings is low and they have thus agreed not to present that evidence. Conversely, the probative value of the evidence Defendants would seek to admit is high—impacting central issues like damages calculations and alternative causation. *See supra* II.A, II.B. Any 403 objections to certain pieces of evidence that mention the Unitary Status Plan or TUSD's modern desegregation efforts should be resolved on a piecemeal basis and in the context in which they arise. TUSD's motion does not identify anything concrete about either of those categories of evidence that is unduly prejudicial or misleading. *Cf. Yue v. Chordiant Software, Inc.*, 2010 WL 11575579, at *1 (N.D. Cal. Apr. 22, 2010) ("[T]he Court finds it premature to decide whether evidence of prior litigation would be unduly prejudicial to Plaintiffs. The balancing of prejudice versus probative value will depend upon the specific reason for which the evidence is offered at trial."). Nor do the District's authorities support the categorical exclusion it seeks.

As explained above, Defendants do not seek to relitigate the allegations, findings, or conclusions of the Desegregation Case. No risk exists, therefore, of the type of "mini-trial" on a "collateral" issue that TUSD raises. Tucson MIL No. 3 at 7. Rather, Defendants seek to introduce evidence concerning the programs, policies, practices, and positions established or maintained as a consequence of the litigation's resolution; and evidence concerning the District's *ongoing* challenges involving discrimination, disparate treatment, and racism. Neither category requires the jury to revisit the District's fault or liability in the Desegregation Case, even if coupled with the context that this is a longstanding focus for the District. Discussion of the Unitary Status Plan, or reference to the requirements of a "prior court order," does not require extensive explanation. And even if more context were needed, in depositions TUSD's witnesses proved more than capable of succinctly explaining the history of TUSD's desegregation efforts. *See, e.g.*, Dkt No. 3583-5 at 90:25–96:21. Defendants' alternative proposed order addresses any concern about mini-trials.

Evidence regarding the Unitary Status Plan and TUSD's ongoing efforts to address racism in its schools is directly relevant to the District's claims and Defendants' defenses. *See supra* II.A,

II.B. The District's own statements regarding discrimination and racism are among the best evidence that its alleged injuries were not caused in substantial part by Defendants' platforms. Likewise, the obligations imposed through the Unitary Status Plan profoundly affected the District's budget, programs, policies, and operations, both during the period of federal court oversight and following its termination. *See supra* § II.B; *see also* Ex. 3 (Hernandez Dep.) 72:17–79:15. The jury cannot fairly assess the causes or extent of the District's alleged injuries without considering these independent influences on its operations and financial circumstances.

Finally, the District argues that explaining the source of its 910(G) funding (i.e., funding earmarked for desegregation efforts) creates a risk of unfair prejudice. But evidence regarding the availability of 910(G) funds, their role in supporting District programs and personnel, and the financial consequences of their subsequent loss are directly relevant to evaluating the District's claimed damages. The District cannot excise a substantial source of funding from this case—particularly one that by law was required to meet goals other than remediating the impact of Defendants' platforms—merely because it is associated with prior litigation. Likewise, myriad other documents and testimony reference the Desegregation Case, desegregation efforts, the Unitary Status Plan, and the aftermath of the Desegregation Case. Although the parties can agree to sanitize references to the Desegregation Case, mere mention of a statutorily required funding source, without in-depth explanation, does not carry sufficient prejudicial value to outweigh the probative import of the funds' availability and use.

In short, the District identifies no substantial danger of unfair prejudice, jury confusion, or undue delay that would justify excluding any categories of highly probative evidence. Its generalized concerns about prior litigation cannot outweigh Defendants' right to present evidence bearing directly on causation and damages.

## III. CONCLUSION

The Court should deny Plaintiff's Motion in Limine No. 3 and instead enter Defendants' proposed order that excludes explicit references to the Desegregation Case, but otherwise allows relevant evidence, testimony, and argument about the Unitary Status Plan and its consequences.

DATED: October 29, 2026

Respectfully submitted,

By: */s/ Jonathan H. Blavin*

JONATHAN H. BLAVIN (State Bar No. 230269)
Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel: (415) 512-4000

E. MARTIN ESTRADA (SBN 223802)
Martin.Estrada@mto.com
L. ASHLEY AULL (SBN 257020)
Ashley.Aull@mto.com
VICTORIA A. DEGTYAREVA (SBN 284199)
Victoria.Degtyareva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel.: (213) 683-9100

ALLISON BROWN (*pro hac vice)*
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Tel.: (215) 268-5000

JESSICA DAVIDSON (*pro hac vice)*
jessica.davidson@kirkland.com
JOHN J. NOLAN (*pro hac vice)*
jack.nolan@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800

*Attorneys for Defendant Snap Inc.*

*/s/ Ashley W. Hardin*
ASHLEY W. HARDIN (*pro hac vice)*
ahardin@wc.com
J. ANDREW KEYES (*pro hac vice)*
akeyes@wc.com
NEELUM J. WADHWANI (SBN 247948)
nwadhwani@wc.com
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
Tel.: (202) 434-5000

*Attorneys for Defendants YouTube, LLC and Google LLC*

/s/ *Christian J. Pistilli*
ASHLEY M. SIMONSEN (State Bar No. 275203)
asimonsen@cov.com
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800

PHYLLIS A. JONES (*pro hac vice*)
pajones@cov.com
PAUL W. SCHMIDT (*pro hac vice*)
pschmidt@cov.com
CHRISTIAN J. PISTILLI (*pro hac vice*)
cpistilli@cov.com
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Tel.: (202) 662-6000

BETH A. WILKINSON (pro hac vice)
RAKESH KILARU (*pro hac vice*)
JOLEE PORTER (*pro hac vice*)
MATTHEW R. SKANCHY (pro hac vice)
WILKINSON STEKLOFF LLP
2001 M Street, NW, 10th Floor
Washington, D.C. 20036
Telephone: (202) 847-4010
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jporter@wilkinsonstekloff.com
mskanchy@wilkinsonstekloff.com

MOIRA K. PENZA (pro hac vice)
WILKINSON STEKLOFF LLP
130 W 42nd Street, 24th Floor
New York, NY 10036
Telephone: (212) 294-8925
Facsimile: (202) 847-4005
mpenza@wilkinsonstekloff.com

*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Meta Payments Inc. f/k/a Facebook Payments Inc.; Meta Platforms Technologies, LLC f/k/a Facebook Technologies, LLC; Instagram, LLC; and Siculus LLC f/k/a Siculus, Inc.*

/s/ *Geoffrey M. Drake*
GEOFFREY M. DRAKE (*pro hac vice)*
gdrake@kslaw.com
TACARA D. HARRIS (*pro hac vice)*
tharris@kslaw.com

KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel.: (404) 572-4600

DAVID P. MATTERN (*pro hac vice)*
dmattern@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, D.C. 20006
Tel.: (202) 737-0500

BAILEY J. LANGNER (State Bar No. 307753)
*blangner@kslaw.com*
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Tel.: (415) 318-1200

*/s/ Daniel M. Petrocelli*
DANIEL M. PETROCELLI (SB #97802)
dpetrocelli@omm.com
SABRINA H. STRONG (SB #200292)
sstrong@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 553-6700

STEPHEN D. BRODY (*pro hac vice*)
sbrody@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006
Telephone: (202) 383-5300

*Attorneys for Defendants*
*TikTok Inc., ByteDance Inc., TikTok Ltd., ByteDance Ltd., and TikTok LLC*

**ATTESTATION**

I, Jonathan H. Blavin, hereby attest, pursuant to N.D. Cal. Civil L.R. 5–1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED: October 29, 2026 By: */s/ Jonathan H. Blavin*
Jonathan H. Blavin