# EXHIBIT A

LEVIN SEDRAN & BERMAN LLP
*Counsellors at Law and Proctors in Admiralty*

510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106-3697

Michael M. Weinkowitz
MWeinkowitz@lfsblaw.com
(215) 592-1500

July 21, 2023

***VIA EMAIL***

Lauren Bell
Munger, Tolles & Olson LLP
601 Massachusetts Ave., NW Street
Suite 500 E
Washington, D.C. 20001-5369
lauren.bell@mto.com

Jonathan H. Blavin
Munger, Tolles & Olson LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
jonathan.blavin@mto.com

Emily Johnson Henn
Covington & Burling LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
ehenn@cov.com

Rose L. Ehler
Victoria A. Degtyareva
Ariel T. Teshuva
Munger, Tolles & Olson LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
rose.ehler@mto.com
victoria.degtyareva@mto.com
ariel.teshuva@mto.com

Phyllis A. Jones
Paul W. Schmidt
Michael X. Imbroscio
Covington & Burling LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
pajones@cov.com
pschmidt@cov.com
mimbroscio@cov.com

Ashley M. Simonsen
Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
asimonsen@cov.com

John H. Beisner
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Ave., N.W.
Washington, DC 20005
john.beisner@skadden.com

Geoffrey M. Drake
King & Spalding LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
gdrake@kslaw.com

Andrea Roberts Pierson
Faegre Drinker LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
andrea.pierson@faegredrinker.com

Joseph G. Petrosinelli
Ashley W. Hardin
Williams & Connolly LLP
680 Maine Avenue SW
Washington, DC 20024
jpetrosinelli@wc.com

**RE:** ***In re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*; MDL No. 3047**

Dear Counsel:

I write on behalf of the counsel for government entity plaintiffs and the Co-Lead counsel in the MDL, in response to the Defendants'[1] preservation demands to the government entity plaintiffs ("Preservation Demands"). Defendants' Preservation Demands include improper demands for Plaintiffs to preserve documents and tangible things with little—if any—relevance to the claims and defenses in this action from almost every school district employee going back more than a decade. Complying with the Defendants' Preservation Demand would impose an enormous financial and logistical burden on the Plaintiffs that far exceeds the needs of the case.

As Defendants are no doubt aware, a party's preservation obligations do not require the preservation of every shred of potentially relevant evidence or for a party to make extraordinary efforts to retain such evidence. Instead, courts are advised to apply the "principles of reasonableness and proportionality that guide discovery generally."[2]

Defendants' Preservation Demands go far beyond reason and any sense of proportion.

**Scope**. Defendants unreasonably demand that Plaintiffs preserve "all documents, information (including ESI), and tangible things" on an expansive range of topics untethered to the issues in this case. By way of example, Defendants demand Plaintiffs preserve "disciplinary actions related to students for *any* reason."[3] This categorical demand is unlimited by its terms. Similarly unreasonable is Defendants' unbounded demand that Plaintiffs preserve "all documents . . . *and*

---

[1] Meta Platforms, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Meta Payments Inc.; Meta Platform Technologies, LLC; Instagram, LLC; Siculus, Inc.; Snap Inc.; TikTok Inc.; ByteDance Inc.; YouTube, LLC; Google LLC; XXVI Holdings Inc.; and Alphabet Inc.

[2] Federal Judicial Center, Benchbook for U.S. District Court Judges at 196 (6th Ed. 2013); *see also Victor Valley Union High Sch. Dist. v. Superior Ct. of San Bernardino Cnty*., 91 Cal. App. 5th 1121, 309 Cal. Rptr. 3d 258, 273 (2023) ("Because of the similarity of California and federal discovery law, federal decisions have historically been considered persuasive absent contrary California decisions," and noting that "there is no known California authority on point regarding a party's duty to preserve ESI") (internal citations and quotations omitted); *Al Otro Lado, Inc. v. Nielsen*, 328 F.R.D. 408, 416 (S.D. Cal. 2018) (the reasonableness and proportionality limit of Rule 26(b)(1) apply to the duty to preserve.).

[3] Preservation Demand at 3 and 6 (demanding "All disciplinary reports, investigations, and actions of students, teachers, classroom assistants, administrators, or staff for *any* reason[.]") (emphasis added).

tangible things related to . . . [t]he school district's (including individual schools') use of technology." It is hard to conceive of what that would not include. Under the most charitable reading, Plaintiffs would have to preserve overhead projectors, thumb drives, and de-commissioned software used as far back as 2009; items that it is hard to imagine could have any evidentiary value.

Defendants have overreached even among the categories that are ostensibly related to this case. For example, Defendants demand all communications related to "mental health and behavioral disorders," with no limitation as to disorders caused by social media or pertaining to students. Read literally; Defendants would require Plaintiffs to ask teachers to preserve text messages in which they confided to a co-worker that they were in couple's counseling.[4] Another demand seeks "[a]ll budget documents, including accounting records, audits, funding requests/applications from *any* source, donations from *any* source, and grant-related documents,"[5] which would appear to include grants (including invoices, receipts, and other such documents) to purchase history textbooks or calculators donated for needy students. Several demands seek to preserve documents concerning staff conduct unrelated to students' use of social media, such as staff violations of a school's drug and alcohol policies.[6] That type of information is plainly irrelevant. These are just two examples of the overbreadth of Defendants' demand, of which there are many.[7]

The time and effort to comply with these overbroad demands would pale in comparison to their relevance to the issues (if any) and needs of this case.

**Custodial Sources**. The custodial sources Defendants demand Plaintiffs preserve are also unreasonable and disproportionate to the needs of the case. Defendants demand Plaintiffs preserve documents, including a wide range of communications, and tangible things from almost every one of its employees. In one request—applicable to *fifteen (15)* sub-topics—Defendants demand Plaintiffs preserve "[a]ll communications, including but not limited to, electronic messages, text messages, chats, instant messages, and social media posts, of school board members, school administrators, teachers, and staff[.]"[8] This would apply to almost every school employee and presumably include personal communications unrelated to school operations. Because the demand applies to communications concerning, among other generic topics, student discipline "for any reason," every employee of a Plaintiff may have such a communication. But many of those communications will not be relevant to this action, nor would it be reasonable or proportionate to expect Plaintiffs to preserve every employees' communications across multiple platforms and

[4] *Id*. at 2–3.

[5] *Id*. at 5 (emphasis added).

[6] *See, e.g.*, *Id*. at Nos. 3, 5(i), 9 and 25.

[7] *See, e.g.*, Preservation Demand at 5 (demanding "all information relating to levies proposed, whether passed or failed, in the district," whether to fund mental health or not); at 6 (demanding "[a]ll records of law enforcement involvement or activity in schools (including school resource offices)," regardless of the activity); (communications concerning "mental health and behavioral disorders," with no limitation as to disorders caused by social media or pertaining to students).

[8] *Id*. at 2–3.

custodial sources. Defendants' demand that Plaintiffs preserve not just communications, but documents and tangible things from an even more expansive list of employees is defective for the same reason.[9]

**Timeframe**. Defendants' blanket demand that Plaintiffs preserve documents and tangible things back to 2009 does not appear to be based on any reasonable principle and is disproportionate to the needs of the case. It is unclear why, for example, Defendants would need documents indicating whether teachers used PowerPoint in class in 2009 or offered a C++ course at that time.[10] Plaintiffs are willing to discuss with Defendants an appropriate timeframe for specific, potentially discoverable categories of documents.

**Plaintiffs' Reasonable and Proportionate Steps**. Plaintiffs are taking reasonable and proportionate steps to preserve potentially discoverable documents, including ESI, and tangible things in their possession, custody, or control. Although what each Plaintiff agrees to preserve will depend on the unique circumstances of each Plaintiff, the types of information Plaintiffs are taking reasonable efforts to preserve—to the extent such materials exist and to the extent they contain potentially unique and discoverable information and preserving them would not impose on Plaintiffs a burden that is disproportionate to the needs of the case—include:

- Documents relating to the provision of student health services, including the name and description of any programs and services offered, the retention, deployment, or training of mental health professionals, funding for mental health services, demands for mental health services, and research regarding mental health services;

- Correspondence, including letters, memoranda, faxes, e-mails, electronic text messages or instant messages, to or from an employee relating to students' use of social media platforms and their impact on student mental health and school operations;

- Student handbooks, codes of conduct, and disciplinary policies, including updates to such policies and procedures, relating to student mental health, usage of electronic devices, or students' usage of social media platforms;

- School Board policies, Board packets, and supporting documents relating to student mental health, usage of electronic devices, or usage of social media platforms;

---

[9] *See, e.g.*, *Id.* at 6 (demanding Plaintiff preserve "[a]ll disciplinary reports, investigations, and actions of students, teachers, classroom assistants, administrators, or staff for *any* reason[.]") (emphasis added).

[10] *Id.* at 4 (demanding Plaintiff preserve documents regarding "which computer programs or apps were used by teachers for class instructions" and "any computer coding or gaming extracurricular activities offered by the school" in 2009).

- Databases or other compilations reflecting students' violations of school policies relating to social media;

- Databases or other compilations of student attendance records;

- Surveys, reports, and other compilations of data related to students' mental health, usage of electronic devices, or usage of social media platforms;

- PowerPoint or similar slide decks, handouts, and supporting materials related to any training offered by a Plaintiff or given to a Plaintiff's employees regarding students' mental health, usage of electronic devices, or students' usage of social media platforms; and,

- Budgetary and accounting documents describing the resources Plaintiff allocated to address students' use of social media and mental health.

While every employee of Plaintiffs has a role to play in student health and safety, Plaintiffs have reasonably limited their efforts to preserve the above-referenced categories of documents from only those individuals, administrators, departments, committees, and boards whose primary responsibility and role is to address issues concerning students' use of social media, including to provide health and physical safety supports for students, including policy development, enforcement, treatment, funding, and information technology support.

Plaintiffs' preservation efforts from these individuals and departments will account for the following sources to the extent they exist and are likely to contain potentially relevant information and the preservation of them is necessary, proportionate, and appropriate to the needs of the case:

- Hard copy documents of relevant information;

- Employees' desktops or PCs, laptops, and other hardware provided to employees by Plaintiff (including removable storage devices such as USB thumb drives or removable hard drives);

- Plaintiffs' networked and shared drives and certain individual user drives;

- Relevant email servers;

- Certain active databases; and,

- Other centralized storage media that Plaintiffs' employees may access.

For the avoidance of doubt, Plaintiffs are not taking efforts to preserve back-up tapes and other archival sources, inaccessible data, logs of internet traffic, and data stored in decommissioned systems.

As stated, Plaintiffs are taking reasonable efforts to preserve potentially discoverable information and will continue to do so as appropriate. If Defendants have questions concerning Plaintiffs' preservation efforts, we are available to discuss.

Respectfully submitted,



MICHAEL M. WEINKOWITZ

cc: Chris Seeger
Lexi Hazam
Previn Warren
Dean Kawamoto