*[Parties and counsel listed on signature pages]*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION

This Document Relates To:

*ALL ACTIONS*

MDL No. 3047

Case No.: 4:22-md-03047-YGR

**AGENDA AND JOINT STATEMENT FOR NOVEMBER 13, 2026, CASE MANAGEMENT CONFERENCE**

Judge: Hon. Yvonne Gonzalez Rogers
Magistrate Judge: Hon. Peter H. Kang

The Parties submit this agenda and joint statement in advance of the November 13, 2026 CMC.

## I. Proposed Agenda for Case Management Conference

- School District Cases
  - Motions in Limine and Oppositions (Tucson / Charleston)
  - Defendants' Motions to Preclude Plaintiffs from Relying on Late-Disclosed School District Witnesses: ECF 3581, ECF 3665 (Tucson); ECF 3603 (Charleston)
  - Joint Stipulation and Proposed Order to Show Cause Why Plaintiffs' Claims Should Not be Dismissed for Failure to Serve Plaintiff Fact Sheets (ECF 3662) (*see* III.A below)
  - Survey Monkey Juror Questionnaire (*see* III.B below)
- Meta's Privilege Re-Review
  - PISD Plaintiffs' Update (*see* IV.A below)
  - Meta's Notice of Intended Downgrade Production (*see* IV.B below)

## II. Joint JCCP Update

**Trial Pool 2 Update.** All Parties settled all claims in advance of the trial that was set to start on October 28 in the *S.J.* (Case No. 23STCV04303) and *K.D.B.* (Case No. 23STCV28939) cases. The cases did not proceed to trial.

**Trial Pool 3 Update.** The Court set a status conference for November 20, 2026 for the Trial Pool 3 cases (*Loach* (Case No. 23STCV19697), *Kelly* (Case No. 24STCV09377), and *I.P.* (Case No. 23STCV22481)), which have a March 16, 2027 trial setting. Meta moved for summary judgment in the *Loach* and *Kelly* cases on October 21, 2026, with Plaintiffs' responses due on November 20, 2026.

**School District Cases.** On November 5, 2026, the California Court of Appeal affirmed Judge Kuhl's order granting Defendants' demurrer to the four representative school district cases (California, Florida, Rhode Island, and Washington).

## III. School District Updates

### A. Joint Stipulation and Proposed Order to Show Cause Why Plaintiffs' Claims Should Not be Dismissed for Failure to Serve Plaintiff Fact Sheets

The Parties thank the Court for entering their Joint Stipulation and [Proposed] Order to Show Cause Why Plaintiffs' Claims Should Not Be Dismissed for Failure to Serve Plaintiff Fact Sheets (ECF

3662) on November 5, 2026. As dictated by the stipulation, the Parties will jointly submit a proposed order for the Court's signature dismissing with prejudice the claims of all SD Plaintiffs subject to dismissal.

### B. Survey Monkey Juror Questionnaire

The Parties agree, and respectfully request that the Court so order, that there should be a date certain for each side to file five additional proposed questions for the "SurveyMonkey" juror questionnaire. The Parties have agreed on December 10, 2026 for this deadline.

## IV. Meta's Privilege Re-Review

### A. Plaintiffs' Update

**Plaintiffs' Position:** Meta's downgrade rates under the Court-ordered re-review of its privilege claims are staggering — 79% in the Court-ordered set of 1000 selected by Plaintiffs; 90% in the initial Protocol batch of 16,700 selected *by Meta*—and its recycled arguments, already addressed in Plaintiffs' prior briefing (see ECF 3604-1), do nothing to explain them. Highly-relevant, previously-concealed information continues to be revealed in these downgrades, including guidance to Meta youth researchers to proactively "A/C priv" documents without lawyers on them, instructions from Meta lawyers to include them on chats regarding youth safety to avoid the chats' production in litigation, and acknowledgments by Meta employees that allegations made in this litigation that the company optimizes teen feeds for time and money are accurate[1] (*see* Exs. A–C)—all key facts going to Meta's knowledge, intent, and practice of hiding the safety risks its platforms pose to youth. No guidance from the Court can excuse this years-long, systemic abuse of privilege—Meta has failed to follow settled Ninth Circuit law that has always applied. Nor are sanctions premature: the alarming downgrade rates combined with the nature of the concealed information now coming to light show Meta has deprived Plaintiffs from discovering crucial facts and laying foundation for trial, prejudice that a re-review alone cannot cure. Plaintiffs therefore ask that their request that Meta be barred from objecting to the use of downgraded documents with any trial witness on authenticity or foundation grounds, as well as for other sanctions

[1] As for Meta's extensive process discussion, its lengthy response this evening belies any prejudice. In any event, Meta put the downgraded documents at issue by claiming they contain nothing new. Plaintiffs have attached the documents under seal so the Court can evaluate that issue for itself.

that may be appropriate, be briefed such that the issue can be heard at the December 14 pretrial conference.

**Meta's Position:** Contrary to Plaintiffs' accusations of privilege misconduct, since the beginning of discovery in this MDL Meta has withheld less than 2%, and redacted less than 5%, of all responsive documents for privilege and/or work product; has produced thousands of documents with "Attorney-Client Privileged" and similar in-house labels; has voluntarily undertaken two privilege re-reviews and agreed to oversight by a Special Master; and has proactively worked to address the privilege guidance received from the Court at the August AG trial. That guidance provided a new reference point for where the Court draws the line on privilege—a fact Plaintiffs acknowledged when they (i) added to the Re-Review Protocol a specification that the Special Master shall apply not only the "general principles governing privilege and work product protections in the Ninth Circuit," but also "the [MDL District] Court's guidance as reflected in prior transcripts and rulings," ECF 3599 ¶ 1(f), and then (ii) directed the Special Master at the Parties' first conference to the Court's August 2026 and later hearing transcripts. Any discussion of sanctions, or of motions practice, would be premature at best, when the entire point of Meta's highly accelerated re-review has been to enable Plaintiffs to take steps over the coming months, before trial, to seek stipulations or additional discovery that would mitigate or avoid any claimed prejudice from Meta's downgrades—prejudice Plaintiffs have yet to actually articulate. For example, under the stipulated Re-Review Protocol, Meta has agreed that Plaintiffs may, at any time during the re-review, request from Meta up to 150 additional documents (to the extent those documents appear in hyperlinks identified for the first time in newly downgraded materials), *see* ECF 3599 ¶ 7; and Meta stands ready to confer with Plaintiffs on authenticity and business-records stipulations for a reasonable number of downgraded documents, which would obviate any need for the sanctions relief Plaintiffs seek.

Moreover, the vast majority of documents that Meta is now "downgrading" are documents that were already previously produced to Plaintiffs with redactions (that they never previously challenged in court), and that cover the same subjects found in Meta's voluminous production of over 2.6 million documents—subjects Plaintiffs have extensively explored in depositions and at trial. Demonstrating this point, after Meta downgraded 65,000 documents from its privilege log last fall, Plaintiffs did not make

any further document requests; elected to attend only two of the Tennessee privilege-downgrade depositions Meta agreed they could attend (while Tennessee, represented by Tucson's lead trial counsel here, took only three of the twelve depositions authorized by the Tennessee court, *see* ECF 2949 ¶¶ 9, 11); and waived their right to "seek[] any sanctions or any other substantive relief as a result of [Meta's] privilege downgrades," including an order "establishing the admissibility and authenticity of all [downgraded] documents"—the very relief they now again seek. ECF 2949 ¶¶ 10 & n.2, 21.

The day this CMC Statement was due, just before the Parties were set to exchange final revisions (under an exchange schedule Plaintiffs dictated), Plaintiffs announced that they would be attaching to the CMC Statement three documents recently downgraded by Meta. These are documents Plaintiffs never previously identified to Meta during the Parties' back-and-forth on this issue, and did not even cite in their opening position statement, thus depriving Meta of the opportunity to prepare a substantive response on the timeline dictated by Plaintiffs' exchange schedule. Plaintiffs also obfuscated the nature of the "issue" they planned to raise in this position statement, describing it initially to Meta as merely "an update on the special master process and Meta's privilege re-review, and a statement of the other relief Plaintiffs have reserved the right to seek" and—after Meta requested more detail—"a status update of the re-review and a statement of relief sought given the downgrade rates," for which Plaintiffs insisted both sides must be limited to only five sentences. Not until after Meta had sent Plaintiffs its five-sentence response to their "status update" did Plaintiffs reveal for the first time their plan to attach to the Parties' joint filing three specific documents that, while (inaccurately) discussed at a high level in their position statement, they deliberately chose *not* to identify to Meta; and, despite having no logical explanation for why the documents needed to be attached at this late stage, refused Meta's request to remove them.[2] Accordingly, in the limited time remaining to file this Statement, Meta prepared the following substantive response:

[2] Meta did not "put the downgraded documents at issue by claiming they contain nothing new"; its original response (above) says nothing about the specific documents mischaracterized in Plaintiffs' position, addressing "the vast majority of documents that Meta is now 'downgrading'" only generally. Plaintiffs also fail to explain how attaching the documents in full will enable the Court to "evaluate … for itself" whether they contain anything "new," when that analysis requires comparing any newly unredacted material (and only that material) to all of the documents and witness testimony Meta

The newly unredacted material in Plaintiffs' three attachments, which they mischaracterize, does not reflect "new" information—the same basic points are reflected elsewhere in the discovery and trial record. To illustrate, the substance of the previously redacted portion of Exhibit A—discussing Meta's algorithms—is found in another document that was written by the same person in the same month, and that Plaintiffs questioned both deposition and JCCP trial witnesses about. *See* K.G.M. Trial Ex. 34 (META3047MDL-047-00706686); K.G.M. Trial Tr. (Feb. 18, 2026) 2101:11–2104:9; Drabkin Dep. Tr. (May 13, 2026) 315:5–317:8.[3] As for the previously redacted portion of Exhibit B, the in-house lawyer's understanding that privilege is established by copying lawyers on a document is incorrect, but as the Court knows, it is not "new" information, and it is not the standard Meta has applied in its privilege determinations. Illustrating the latter point, Meta produced the Workplace chats to which the in-house lawyer asked to be added, including both before and after the in-house lawyer was added to the chat, and did not withhold on the basis of privilege any of the referenced chats. Likewise, the non-lawyer statement in Exhibit C about the use of privilege labels in connection with sensitive research did not determine Meta's approach to its document production. Moreover, Plaintiffs have extensively explored researchers' use of "A/C priv" labels at the direction of non-lawyer managers in depositions and at trial. *See, e.g.*, Lee Dep. (Feb. 6, 2025) 259:20–263:16 ("we work in really sensitive areas, so we need to add this label, AC priv, for any of the research"); MDL AG Trial Tr. (Aug. 24, 2026) 854:2-4 (Volichenko) ("The practice was to put this label on any documents or emails that could be considered sensitive, essentially anything that we wouldn't want the public to see."). In short, the newly unredacted material in these three documents adds no "key facts" or "previously-concealed" information to the mix, including as to Meta's knowledge, intent, or relevant practices.

---

previously produced. This is not the first time Plaintiffs have improperly used court filings as a vehicle to try to publicize documents cherry-picked from Meta's productions. As the Court will recall, last fall Plaintiffs attached over 1,000 of Defendants' Confidential documents to their summary-judgment opposition, prompting the Court to strike Plaintiffs' "dump" and order them to narrow the exhibits, *see* 11/19/25 Tr. at 44:13-17, and later warn that it would sanction Plaintiffs' counsel if further narrowing did not occur, *see* 12/15/25 Tr. at 10:5-8.

[3] Because Meta does not believe it is appropriate to attach documents produced in discovery to CMC Statements, which the Court has repeatedly instructed the Parties to limit, Meta does not attach these materials here, but will bring copies to the November 13 CMC.

### B. Meta's Notice of Intended Downgrade Production

**<u>Meta's Position</u>:** On November 9, Meta will produce in full to Plaintiffs roughly 10,000 documents that were previously withheld in full for privilege and/or work product, and will remove all redactions from approximately 60,000 other documents. Meta has identified these documents for early, accelerated production to Plaintiffs through a re-review conducted largely via keyword searches and TAR (technology-assisted review) tools, including Generative AI. The ESI Protocol—which was negotiated at length by the Parties before it was entered by the Court—authorizes the use of TAR to "identify, search, collect, cull, review, and produce responsive and non-privileged ESI," *see* ECF 690 at 3–5; and the TAR principles set forth in that Protocol apply equally to GenAI-assisted review (a type of TAR), *see, e.g.*, *Schulte v. LinkedIn Corp.*, 2026 WL 1905851, at *3 (N.D. Cal. July 1, 2026).[4]

Meta has not determined that these documents were incorrectly withheld or redacted.[5] Rather, given the limited time to trial and the Court's recent privilege guidance, Meta is erring on the side of production, in reliance on the non-waiver protections of the stipulated Rule 502(d) Order (*see* ECF 248 § 1). Contrary to Plaintiffs' claim below, Meta is not "unilaterally deviating" from the [Re-Review] Protocol while preserving its ability to clawback." Through the use of Gen AI, Meta has conducted a sufficiently thorough, good-faith re-review to stand behind its downgrades while producing them on an accelerated basis—something Plaintiffs acknowledge they "welcome." Meta also understands that any further clawbacks at this stage would have to be exercised judiciously. But Meta is entitled to rely on the stipulated protections of the Rule 502(d) Order—including its requirement that Plaintiffs "shall not

---

[4] The ESI Protocol does not require a Party to disclose the use of TAR unless it is being used to *exclude* documents from production. Here, Meta is using TAR (including GenAI) to identify documents that can be *produced in full*; human reviewers will make every final determination to *withhold or redact* a document. This is an entirely different use of AI than Meta proposed (and the Court rejected) at the last hearing—namely, to use AI to *narrow* the re-review population. *See* 10/9/26 Tr. at 10:6-11:12.

[5] This statement does not (as Plaintiffs claim) "contradict" Meta's statement above that, for any material Meta decides to *maintain* as privileged or work product following re-review, a human reviewer will make that determination. Meta is not representing to the Court that a human reviewer has reviewed every document for which Meta is *withdrawing* its privilege and work product claims *in their entirety*. To the contrary, Meta is proactively disclosing that it used keyword searches and TAR, including GenAI, to identify those documents. In part *because* human reviewers have not re-reviewed every single one of those documents (thus facilitating their early delivery to Plaintiffs), it is accurate to say that "Meta has not determined that th[o]se documents were incorrectly withheld or redacted."

argue" waiver "regardless of the procedures used to identify Protected Material prior to production." ECF 248 at 2. The purported clawback "uncertainty" of which Plaintiffs complain is, in any event, illusory: Meta already manually re-reviewed each of Plaintiffs' 1,300 "most important" documents; agreed previously to waive further clawbacks as to any document on SD Plaintiffs' first trial exhibit list, *see* ECF 2949 ¶ 17; and will conduct a prompt clawback review of any new documents Plaintiffs add.

**Plaintiffs' Position:** Plaintiffs would welcome Meta increasing the pace of its Court-ordered review in order to make accelerated productions of downgraded documents. But Meta acknowledges that it "has not determined that these documents were incorrectly withheld or redacted"—contradicting its claim that (despite its use of GenAI) human reviewers have made final determinations—and reserves the right to claw them back under the Rule 502(d) Order. That leaves Plaintiffs in an untenable position: receiving tens of thousands of documents without knowing whether they can rely on them at trial. Meta should not be permitted to have it both ways, especially given its history of privilege abuse here. Moreover, Plaintiffs will be unable to identify which documents remain in dispute, or bring timely challenges before the Special Master. That risks pushing disputes to the eve of trial, burdening the Court with challenges that should have been resolved earlier through the orderly re-review process.

The Re-Review Protocol was intended to avoid all of this. It requires Meta to classify documents, produce downgrades, and submit samples of remaining claims for the Special Master's review. ECF 3599 ¶¶ 1(b), 1(e)–(f). Meta has ample resources to complete its review faster if it wishes to do so. It should not be permitted to instead unilaterally deviate from the Protocol while preserving its ability to clawback. The Rule 502(d) Order protects Meta against waiver; it does not relieve Meta of its obligation to make privilege determinations in good faith or grant Meta an unlimited right to retract produced documents Alternatively, if Meta wishes to avoid the cost and time spent on review and compliance with the Protocol, it can choose to waive its 502(d) rights as to this (or all) productions.

If endorsed, Meta's approach would create troubling incentives. A party could indefinitely withhold documents in discovery, produce them en masse only after its privilege claims come under scrutiny from the opposing party and Court, and still reserve the right to retract documents when the opposing party seeks to use them. That approach would allow a party to reap the benefits of prolonged withholding while avoiding the costs of a timely review and shifting the uncertainty of an unfinished

review to the receiving party. With trial approaching, Plaintiffs must finalize exhibits and examinations without the risk that Meta will withdraw evidence they rely on at the last minute. The Rule 502(d) Order should not become a means of extending the prejudice caused by Meta's vastly overbroad privilege claims.

Respectfully submitted,

DATED: November 6, 2026 By: _/s/ Ashley M. Simonsen_

**COVINGTON & BURLING LLP**
Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones (*pro hac vice*)
Paul W. Schmidt (*pro hac vice*)
Christian J. Pistilli (*pro hac vice*)
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
Email: pajones@cov.com
Email: pschmidt@cov.com
Email: cpistilli@cov.com

Beth A. Wilkinson (*pro hac vice*)
Rakesh Kilaru (*pro hac vice*)
Jolee Porter (*pro hac vice pending*)
Matthew R. Skanchy (*pro hac vice*)
WILKINSON STEKLOFF LLP
2001 M Street, NW, 10th Floor
Washington, D.C. 20036
Telephone: (202) 847-4010
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jporter@wilkinsonstekloff.com
mskanchy@wilkinsonstekloff.com

Moira K. Penza (pro hac vice)
WILKINSON STEKLOFF LLP
130 W 42nd Street, 24th Floor
New York, NY 10036
Telephone: (212) 294-8925
Facsimile: (202) 847-4005

Email: mpenza@wilkinsonstekloff.com

*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc. and Instagram, LLC*

*/s/ Jonathan H. Blavin*
Jonathan H. Blavin (State Bar No. 230269)
Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel: (415) 512-4000

E. MARTIN ESTRADA (SBN 223802)
Martin.Estrada@mto.com
L. ASHLEY AULL (SBN 257020)
Ashley.Aull@mto.com
VICTORIA A. DEGTYAREVA (SBN 284199)
Victoria.Degtyareva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel.: (213) 683-9100

ALLISON BROWN (*pro hac vice)*
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Tel.: (215) 268-5000

JESSICA DAVIDSON (*pro hac vice)*
jessica.davidson@kirkland.com
JOHN J. NOLAN (*pro hac vice)*
jack.nolan@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800

*Attorneys for Defendant Snap Inc.*

*/s/ Ashley W. Hardin*
ASHLEY W. HARDIN (*pro hac vice)*
ahardin@wc.com
J. ANDREW KEYES (*pro hac vice)*
akeyes@wc.com
NEELUM J. WADHWANI (SBN 247948)

nwadhwani@wc.com
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
Tel.: (202) 434-5000

*Attorneys for Defendants YouTube, LLC and Google LLC*

*/s/ Geoffrey M. Drake*

GEOFFREY M. DRAKE (*pro hac vice)*
gdrake@kslaw.com
TACARA D. HARRIS (*pro hac vice)*
tharris@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel.: (404) 572-4600

DAVID P. MATTERN (*pro hac vice)*
dmattern@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, D.C. 20006
Tel.: (202) 737-0500

BAILEY J. LANGNER (State Bar No. 307753)
*blangner@kslaw.com*
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Tel.: (415) 318-1200

*/s/ Daniel M. Petrocelli*

DANIEL M. PETROCELLI (SB #97802)
dpetrocelli@omm.com
SABRINA H. STRONG (SB #200292)
sstrong@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 553-6700

STEPHEN D. BRODY (*pro hac vice*)
sbrody@omm.com
O'MELVENY & MYERS LLP

1625 Eye Street, NW
Washington, D.C. 20006
Telephone: (202) 383-5300

*Attorneys for Defendants TikTok Inc., ByteDance Inc., TikTok Ltd., ByteDance Ltd., and TikTok LLC*

DATED: November 6, 2026

By: */s/ Lexi J. Hazam*
LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 CHALLENGER ROAD, 6TH FLOOR
RIDGEFIELD PARK, NJ 07660
Telephone: 973-639-9100
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel and Settlement Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel and Ombudsperson

MATTHEW BERGMAN
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone: 212-558-5500
jbilsborrow@weitzlux.com

ELLYN HURD
**SIMMONS HANLY CONROY, LLC**
112 MADISON AVE, 7TH FLOOR
NEW YORK, NY 10016
Telephone: 212-257-8482
ehurd@simmonsfirm.com

ANDRE MURA
**GIBBS MURA, A LAW GROUP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

MELISSA YEATES
**KESSLER TOPAZ MELTZER & CHECK LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com

Plaintiffs' Steering Committee Leadership

RON AUSTIN
**RON AUSTIN LAW**
400 MANHATTAN BLVD.
HARVEY, LA 70058
Telephone: 504-227–8100
raustin@ronaustinlaw.com

AELISH M. BAIG
**ROBBINS GELLER RUDMAN & DOWD LLP**
1 MONTGOMERY STREET, #1800
SAN FRANCISCO, CA 94104
Telephone: 415-288-4545
AelishB@rgrd.com

PAIGE BOLDT
**ANAPOL WEISS**
130 N. 18TH STREET, #1600
PHILADELPHIA, PA 19103
Telephone: 215-929-8822
pboldt@anapolweiss.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701-1100
tcartmell@wcllp.com

FELICIA CRAICK
**KELLER ROHRBACK LLP**
1201 THIRD AVENUE, SUITE 3400
SEATTLE, WA 98101
Telephone: 206-623-1900
fcraick@kellerrohrback.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KY 40202
Telephone: 859-600-6725
semery@justicestartshere.com

KIRK GOZA
**GOZA HONNOLD**
9500 NALL AVE. #400
OVERLAND PARK, KS 66207
Telephone: 913-412-2964
Kgoza @gohonlaw.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KY 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

MATTHEW P. LEGG
**BROCKSTEDT MANDALAS FEDERICO, LLC**
2850 QUARRY LAKE DRIVE, SUITE 220
BALTIMORE, MD 21209
Telephone: 410-421-7777
mlegg@lawbmf.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS & OVERHOLTZ, PLLC**
17 EAST MAIN STREET, SUITE 200
PENSACOLA, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

JOSEPH H. MELTER
**KESSLER TOPAZ MELTZER & CHECK LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
jmeltzer@ktmc.com

HILLARY NAPPI
**AWK ATTORNEYS**
1133 WESTCHESTER AVE, SUITE N-224
WHITE PLAINS, NY 10604
Telephone: 914-468-4840
hnappi@awk-saa.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 SOUTH BAYLEN STREET, SUITE 600
PENSACOLA, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, PC**
1500 ROSECRANS AVE., STE. 500
MANHATTAN BEACH, CA 90266
Telephone: 415-308-1915
rrizkalla@carlsonattorneys.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818-839-2333
rtellis@baronbudd.com
dfernandes@baronbudd.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205-855-5700
fu@dicellolevitt.com

Plaintiffs' Steering Committee Membership

JOSEPH VANZANDT
**BEASLEY ALLEN**
234 COMMERCE STREET
MONTGOMERY, LA 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

Federal/State Liaison

*Attorneys for Individual Plaintiffs*

**ATTESTATION**

I, Lexi J. Hazam, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: November 6, 2026

By: *<u>/s/ Lexi J. Hazam</u>*