# EXHIBIT 3

WILLIAMS & CONNOLLY LLP
Ashley W. Hardin, *pro hac vice*
J. Andrew Keyes, *pro hac vice*
Neelum J. Wadhwani (SBN 247948)
680 Maine Avenue SW
Washington, DC 20024
Tel.: (202) 434-5000
ahardin@wc.com
akeyes@wc.com
nwadhwani@wc.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

*[Additional parties and counsel listed on signature pages]*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>*Charleston County School District v. Meta Platforms, Inc., et al.*<br><br>Case No.: 4:23-cv-04659 | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR-PHK<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 3 TO EXCLUDE EVIDENCE RELATED TO CCSD BOARD OF TRUSTEES CONTROVERSIES**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang<br><br>Date: November 13, 2026<br>Time: 2:00 PM<br>Place: Courtroom 1, 4th Floor |

# TABLE OF CONTENTS

**INTRODUCTION** ........ 1

**ARGUMENT** ........ 2

- A. The Motion Is Impermissibly Vague and Overbroad. ........ 3
- B. The Evidence Is Relevant to Causation and Damages. ........ 4
- C. Rule 403 Does Not Warrant Exclusion. ........ 8
- D. The Evidence Is Neither Improper Character Evidence Nor Hearsay. ........ 9

**CONCLUSION** ........ 10

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Boucher v. CVS/Pharmacy, Inc.*, 822 F. Supp. 2d 98 (D.N.H. 2011) .......... 9

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) .......... 8

*Glover v. BIC Corp.*, 6 F.3d 1318 (9th Cir. 1993) .......... 8

*In re Pac. Fertility Ctr. Litig.*, 2021 WL 1054374 (N.D. Cal. Mar. 19, 2021) .......... 9

*Johnson v. Gen. Mills Inc.*, 2012 WL 13015023 (C.D. Cal. May 7, 2012) .......... 2

*PersonalWeb Techs. v. Int'l Bus. Machs.*, 2017 WL 8186294 (N.D. Cal. July 25, 2017) .......... 2

*Ruiz v. Walmart Inc.*, 2021 WL 5759043 (C.D. Cal. Oct. 28, 2021) .......... 8

*Shuler v. City of Los Angeles*, 849 F. App'x 671 (9th Cir. 2021) .......... 8

*Sidibe v. Sutter Health*, 103 F.4th 675 (9th Cir. 2024) .......... 8

*United States v. Hitesman*, 2016 WL 3523854 (N.D. Cal. June 28, 2016) .......... 4

## STATE CASES

*Wickersham v. Ford Motor Co.*, 853 S.E.2d 329 (S.C. 2020) .......... 4

## OTHER AUTHORITIES

Fed. R. Evid. 105 .......... 9

Fed. R. Evid. 403 .......... 3, 8, 9

Fed. R. Evid. 404 .......... 3, 9, 10

Fed. R. Evid. 702 .......... 7

Fed. R. Evid. 703 .......... 7

Fed. R. Evid. 801 .......... 10

## INTRODUCTION

Charleston County School District ("Charleston") asks the Court to exclude evidence about the top of the District: its own Board of Trustees (the "Board"). But that evidence goes to the heart of causation and damages. During the damages period, the Board was in open turmoil. Its members made public statements that Charleston's own Superintendent conceded could harm students. Charleston's principals and educators warned that the Board's conduct was causing anxiety in its students. Charleston bears the burden of proving that Defendants' platforms caused the decline in student mental health and diversion of resources it alleges, and Defendants are entitled to contest causation with evidence of other causes—including the Board's own role.

Further, Charleston's attempt to exclude evidence of Board controversies is difficult to square with the approach it took in discovery. Charleston built its case at the district level. For years, Charleston resisted discovery into what was happening inside individual schools. It, like the other school district bellwethers, called attempts to conduct school-level discovery "unreasonable and disproportionate" and limited preservation to those whose "primary responsibility and role is to address issues concerning students' use of social media." *See* Ex. A (July 21, 2023 Ltr. from M. Weinkowitz). Charleston insisted that the relevant evidence sat with district-level officials. It cannot now keep the jury from hearing what was happening at the very top of the District.

This Motion cannot be viewed in isolation. Of the five Motions in Limine Charleston filed, four ask the Court to wall off a category of evidence about the District's own conduct and circumstances during the damages period: alleged mismanagement of federal COVID-relief (ESSER) funds;[1] race-related incidents in the District; controversies of the Board of Trustees; and the District's constituent boards. Taken together, these categories cover nearly every alleged source of school-climate disruption and resource strain identified by the parties and their experts other than social media. Charleston's own motions acknowledge as much.[2] If all four motions were granted,

[1] *See* Pl.'s Mot. in Lim. No. 1, ECF No. 3575 ("CCSD MIL No. 1"). The parties have agreed to resolve that Motion by stipulation. *See* ECF No. 3613.

[2] *See* CCSD MIL No. 1 at 3 (acknowledging that Defendants might raise the "alleged mismanagement of COVID-era federal funds [as] an alternative cause"); Pl.'s Mot. in Lim. No. 2, ECF No. 3576 ("CCSD MIL No. 2") at 7 ("To be sure, Defendants have a theory of alternative

Charleston could tell the jury that social media drove the alleged decline in student wellbeing and the District's alleged expenses while Defendants were barred from showing what else was happening in Charleston's schools at the same time and what else cost Charleston time and money. That is not a proper use of motions in limine. *See PersonalWeb Techs. v. Int'l Bus. Machs.*, 2017 WL 8186294, at *3 (N.D. Cal. July 25, 2017) ("The denial of a motion *in limine* is warranted where the moving party seeks to argue the merits of its case and preclude the non-moving party from presenting its case." (citation omitted)); *Johnson v. Gen. Mills Inc.*, 2012 WL 13015023, at *1 (C.D. Cal. May 7, 2012) ("A party cannot use a motion in limine to sterilize the other party's presentation of the case."). Charleston bears the burden of proving causation and damages, and Defendants are entitled to contest both with evidence of other causes. The Court should reject Charleston's effort to win those issues piecemeal, one pretrial motion at a time.

## ARGUMENT

Charleston asks this Court to exclude six categories of evidence concerning its own Board of Trustees: (1) the political organization Moms for Liberty, and any influence, involvement, or affiliation it allegedly had or has with the Board or any of its members; (2) the suspension by the Board of former CCSD Superintendent Eric Gallien and a subsequent lawsuit filed by Dr. Gallien; (3) the removal of members of the CCSD Health Advisory Committee and a subsequent lawsuit by the removed members; (4) controversial statements made by Board members Ed Kelley and Carlotte Bailey;[3] (5) the March 2026 indictment of former Board member Kevin Dion Hollinshead; and (6) an August 2026 report issued by the South Carolina Inspector General regarding the conduct of Board member Darlene Dunmeyer-Roberson. *See* CCSD MIL No. 3 at 1. Its proposed relief is even broader: Charleston also asks the Court to strike paragraphs 84 through 86 of the expert report

causation that relates, in general terms, to race."); Pl.'s Mot. in Lim. No. 4, ECF No. 3585 ("CCSD MIL No. 4") at 5 (same); Pl.'s Mot. in Lim. No. 3, ECF No. 3579 ("CCSD MIL No. 3") at 5 ("Defendants confirmed that they intended to introduce evidence regarding Board dysfunction . . . to support their alternative causation arguments.").

[3] One Board member reportedly said that if his child's teacher came out as transgender, he would show up at the teacher's house with a gun. Another was recorded saying "there's no such thing as gay children," and that Black families have a "different conception of the value of education." *See* CCSD MIL No. 3 at 4.

of Defendants' school-administration expert, Dr. Robert G. Nelson. *Id.*

Though Defendants do not oppose the Motion as to Categories Five and Six,[4] the Motion's four other requests should be denied for multiple independent reasons. *First*, the Motion is vague and overbroad—it would bar Defendants from even identifying who controlled the District's Board during the damages period. *Second*, the evidence at issue in Categories One through Four is directly relevant to causation and damages. Charleston claims that Defendants' platforms caused a deterioration in student mental health and school climate that forced the District to divert resources. Defendants are entitled to show the jury that, during the very same period, the District's own governing body was in a state of open dysfunction that the District's own principals told the Board was creating "mass confusion, distrust, and unnecessary anxiety in our students." Ex. B (MR_CCSD_012045). *Third*, Charleston's request to strike Dr. Nelson's opinions is too broad. It is also an untimely *Daubert* challenge dressed up as a motion in limine, and it fails on its own terms. *Fourth*, Charleston's Rule 403 and Rule 404 arguments misapprehend the purpose for which the evidence will be offered, and any risk of prejudice can be managed with a limiting instruction. The Court should deny Charleston's motion as to Categories One, Two, Three, and Four.

**A. The Motion Is Impermissibly Vague and Overbroad.**

Contrary to this Court's order that motions in limine may not be used to exclude broad categories of evidence, Charleston's proposed order asks for a great deal: it would bar all evidence or argument "related to" each of the six categories, with no limit as to purpose, and would strike three paragraphs of Dr. Nelson's report. *See* Proposed Order Granting Pl.'s Mot. in Lim. No. 3, ECF No. 3579-2 ("CCSD MIL No. 3 Proposed Order").

Category One illustrates the problem. It seeks to exclude "evidence or argument related to . . . the political organization Moms for Liberty, and any influence, involvement, or affiliation it allegedly had or has with the CCSD Board of Trustees or any of its members." *Id.* Read literally,

[4] Defendants do not intend to offer evidence regarding the March 2026 indictment of former Board member Hollinshead or the August 2026 Inspector General report regarding Board member Dunmeyer-Roberson. Defendants reserve the right to revisit this position if Charleston opens the door at trial.

that would prohibit Defendants from asking Charleston's witnesses about the Board's decision-making or how the community responded to the Board's actions—facts that Charleston's own witnesses have already testified to, and admitted had an impact on students. *See* Ex. C (Huggins May 19, 2025 Fact Dep.) at 282:25–285:9. Category Four is no more precise. It identifies no exhibit or testimony, only two Board members' "[c]ontroversial statements." *See* CCSD MIL No. 3 Proposed Order; CCSD MIL No. 3 at 1. Although the category may appear narrow, the phrase "related to" sweeps in far more than the statements themselves. Read literally, it would bar Defendants from asking Charleston's witnesses whether students and staff heard or saw those statements, how the school community reacted, what the Board did in response, and whether the statements affected students' sense of safety at school.

This Court has previously cautioned the parties that the task at this stage is not to "throw the entire thing out," but to "figure out how to cabin it so that the appropriate case can be tried." *See* Jan. 26, 2026 CMC Hr'g Tr. at 225:23–226:1. Evidentiary rulings should ordinarily be "deferred until trial," where objections "may be resolved in proper context." *United States v. Hitesman*, 2016 WL 3523854, at *2 (N.D. Cal. June 28, 2016) (citation omitted). To the extent Charleston has an objection to a specific exhibit or line of questioning, the Court can resolve it then.

**B. The Evidence Is Relevant to Causation and Damages.**

Charleston must prove that Defendants' conduct caused the harm it alleges—a decline in student mental health and school climate that, it says, required the District to expend resources. *See* *Wickersham v. Ford Motor Co.*, 853 S.E.2d 329, 332 (S.C. 2020) ("Causation in fact is proved by establishing the plaintiff's injury would not have occurred 'but for' the defendant's negligence." (citation omitted)). Charleston concedes Defendants intend to offer evidence of Board dysfunction "to support their alternative causation arguments." *See* CCSD MIL No. 3 at 5. Evidence that some other factor contributed to the same alleged harms during the same time period is the most basic form of causation evidence there is because it directly rebuts the plaintiff's assertion of causation. And that evidence is squarely relevant to this case.

**Category One: Moms for Liberty.** Telling the story of Charleston's own governance during the damages period requires identifying who controlled the Board of Trustees and describing

what actions it took. In November 2022, a five-member majority endorsed by a single external political organization took control of the Board and voted as a bloc consistent with the Moms for Liberty agenda, triggering turmoil at the District and inciting intense community reaction. *See* CCSD MIL No. 3 Ex. 9 (ECF No. 3579-11) (Expert Report of Robert G. Nelson for Charleston County School District) ¶ 85. That context is necessary for the jury to evaluate whether the Board's attention to internal disputes and peripheral issues, rather than its core educational responsibilities, made the District's student-achievement and school-climate problems worse. *Id.* ¶ 86. Charleston's own documents, produced in discovery, show that the community drew exactly that connection when looking at the influence that Moms for Liberty had over the Board. Written public comments submitted to the Board for its March 27, 2023 meeting attributed the Board's agenda to Moms for Liberty, complaining that "the liberty moms have taken over the board," and warned that the majority's proposed policies would harm students. *See* Ex. D (MR_CCSD_013378). The same public comment submission included a call for the resignation of Board member Ed Kelley over threatening remarks he allegedly made at a Moms for Liberty meeting, alongside public comments criticizing Board prayer practices. *Id.* Further, one parent told the Board that, "[b]ecause of your actions," their child and the child's friends "currently do not feel safe or welcomed in school." *Id.* Others warned that the proposals would increase "student depression" and were "extremely detrimental to LGBTQ+ youth who have significantly higher rates of depression and suicide." *Id.*

**Category Two: Superintendent Gallien's Suspension.** The abrupt removal of the District's chief executive less than three months into his tenure—followed by weeks of leadership turmoil, open letters from dozens of principals, and bipartisan calls for a state investigation—is the most concrete example of Board dysfunction during the damages period. Almost half of Charleston's own principals told the Board, in real time, that ***the Board's conduct was causing "unnecessary anxiety in our students.***" *See* Ex. B (MR_CCSD_012045) ("In today's challenging educational landscape, continuity and experience are crucial. Changing leadership amid our current initiatives will undoubtedly disrupt the momentum we are experiencing. We urge the board to set aside partisan politics and do what is right for children[.]"); *see also* Ex. E (MR_CCSD_317117) (letter from 160 educators noting they "have a calling and a profound and unselfish duty to educate

every student who enters our school building regardless of our beliefs" and demanding transparency regarding the suspension of Dr. Gallien). That is direct contemporaneous evidence from District educators of a non-social-media cause of the very harms Charleston attributes to Defendants. It also bears on damages: a District whose leadership is consumed by governance crises is less able to deploy resources efficiently, which is relevant to whether the expenses Charleston seeks were caused by Defendants or by its own decisions.

Defendants do not intend to litigate the merits of Dr. Gallien's separate lawsuit or the hostile-work-environment complaint against him; the relevant fact is that the suspension occurred, how it occurred, how the District's own principals and educators reacted, and the impact it had on students.

**Category Three: The Health Advisory Committee Overhaul.** In September 2023, the Board's five-member majority voted in closed session to replace almost all the members of the Health Advisory Committee—the body responsible for reviewing the District's health and sex-education curriculum—including members whose terms had not expired. *See* CCSD MIL No. 3 at 3. Charleston paints the overhaul as a political sideshow, but its own educators did not. Almost half of Charleston's principals authored a letter in which they identified "dismantling the Health Advisory Board" as one of the Board's "actions" responsible for creating "mass confusion, distrust, and unnecessary anxiety in [the District's] students." *See* Ex. B (MR_CCSD_012045). Less than two weeks later, more than 150 District educators sent the Board a letter protesting "the actions of the CCSD Board of Trustees" and demanding transparency regarding "the appointment of 12 new Health Advisory Committee members." *See* Ex. E (MR_CCSD_317117) ("CCSD Educators have been committed to the alignment of the motto 'Students are the Heart of our Work,' whereas the members of the board have held politics at the heart of their work."). Those letters, authored by the District's own personnel responsible for student wellbeing, are evidence that the Board's overhaul of the committee contributed to disruption and anxiety in schools.

Defendants do not need to litigate the merits of the sudden, secret overhaul of the Health Advisory Committee. The relevant facts are that the overhaul occurred, how it occurred, and how the District's principals and educators reacted—which is all directly relevant to alternative causation and damages.

**Category Four: Statements by Board Members Kelley and Bailey.** In March 2023, Mr. Kelley was reportedly quoted as saying at a Moms for Liberty meeting that if his child's teacher came out as transgender, he would show up at the teacher's house with a gun. *See* CCSD MIL No. 3 at 4. And, in October 2023, recordings posted on Facebook captured Ms. Bailey saying "there's no such thing as gay children," that children who identify as gay are confused, and that Black families have a "different conception of the value of education." *See id.* Defendants do not seek to offer these statements to show that Mr. Kelley or Ms. Bailey are bad people. They are offered because the District's own Superintendent agreed that public comments of this kind—"including those online, on social media"—could adversely affect the mental, emotional, and behavioral health of students. *See* Ex. C at 283:9–19; *see id.* at 284:24–285:9 ("[A]s an educator, I would assume such [comments] could be negative to a child."). Defendants are entitled to show that statements by District leaders were, according to Charleston's own personnel, a source of stress for students. Indeed, students publicly addressed the Board about the impact of the proposed Kelley policy on LGBTQ students, telling the Board that school "is the only safe space for some queer teens." *See* CCSD MIL No. 3 Ex. 5 (ECF No. 3579-7). And the Board's decisions to reappoint Mr. Kelley and decline to remove Ms. Bailey from leadership are evidence of how the District's governing body chose to respond to issues affecting student wellbeing.

**Dr. Nelson's Opinions.** Charleston's request to strike paragraphs 84 through 86 of Dr. Nelson's expert report is, in substance, a Rule 702 challenge. *See* CCSD MIL No. 3 at 6–7. That challenge belongs in a *Daubert* motion, not in a motion in limine. In any event, Charleston's request fails. An expert "may base an opinion on facts or data in the case that the expert has been made aware of or personally observed," and if experts in the field "would reasonably rely on those kinds of facts or data," they "need not be admissible for the opinion to be admitted." Fed. R. Evid. 703. A former superintendent assessing a district's governance would naturally rely on board-commissioned studies, contemporaneous news coverage, and public comments submitted to the board. Contrary to Charleston's characterization, Dr. Nelson's opinions do not rest on "unattributed" hearsay. *See* CCSD MIL No. 3 at 7. They rest on a study commissioned by Charleston's own Board and public comments like the ones that Charleston itself collected and

produced. *See* CCSD MIL No. 3 Ex. 9 (ECF No. 3579-11) ¶¶ 84–86 & n.161; Ex. D (MR_CCSD_013378); Ex. F (MR_CCSD_006803). Charleston's disagreement with Dr. Nelson's conclusions—for example its contention that Dr. Huggins is unaware of certain policies, *see* CCSD MIL No. 3 at 9—is precisely the sort of dispute that is resolved through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof," the "traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993). And because Categories One, Two, Three, and Four are among the factual predicates for Dr. Nelson's opinions, excluding them would effectively strike an otherwise admissible expert opinion through the back door.

**C. Rule 403 Does Not Warrant Exclusion.**

Rule 403 permits exclusion only where probative value "is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Ninth Circuit has emphasized that Rule 403 should be used "sparingly" to exclude evidence entirely, noting that nearly every other circuit agrees that exclusion in civil cases should be "spare." *See Sidibe v. Sutter Health*, 103 F.4th 675, 691 (9th Cir. 2024). "Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." *Shuler v. City of Los Angeles*, 849 F. App'x 671, 673 (9th Cir. 2021) (quotation omitted). Charleston identifies no such danger here.

*First*, the evidence concerns the conduct of Charleston's own governing body during the damages period. Charleston chose to put the condition of its students and the operation of its schools at issue. It cannot claim unfair prejudice because the jury will learn how the District was governed while those alleged harms occurred. Evidence supporting a defendant's theory that an injury was caused by something other than the defendant's product goes to "the central issue" of causation and should not be excluded under Rule 403. *See Glover v. BIC Corp.*, 6 F.3d 1318, 1328 (9th Cir. 1993); *see also Ruiz v. Walmart Inc.*, 2021 WL 5759043, at *3 (C.D. Cal. Oct. 28, 2021) (denying motion to exclude evidence under Rule 403 because the "evidence may be relevant to Defendant's position that there are other causes for some of Plaintiff's symptoms").

*Second*, Charleston's concern that the jury will be inflamed by "hotly contested and highly polarized political issues" is misplaced. *See* CCSD MIL No. 3 at 9. Politically or ideologically charged evidence is not unfairly prejudicial merely because of its subject matter. *See In re Pac. Fertility Ctr. Litig.*, 2021 WL 1054374, at *5 (N.D. Cal. Mar. 19, 2021) ("The Court recognizes that this evidence has an inflammatory quality to it, but that evidence is potentially damaging is not itself a basis to exclude it."). Defendants will not ask the jury to take sides on Moms for Liberty's platform, gender identity, or any other political question, and will not argue that Board members are "bigots," "extremists," or "potential criminals." *See* CCSD MIL No. 3 at 9. The point is not whether the Board majority's views are right or wrong; it is that the Board members' statements were alienating to students and the resulting conflict was disruptive to the District and, by its own educators' account, to its students. *See* Ex. C at 282:25–285:9; Ex. B; Ex. E. To the extent Charleston remains concerned, a limiting instruction under Rule 105 is the appropriate remedy. *See* Fed. R. Evid. 105.

*Third*, there is no risk of undue delay or a mini trial. *See* CCSD MIL No. 3 at 10. Defendants do not seek to litigate the merits of the limited issues that Charleston claims are disputed. *See id.* at 9–10. Nor does Charleston's complaint that it would have to "introduce its own evidence to counter Defendants' points" justify exclusion. *Id.* "[T]he mere fact that plaintiffs may have to present rebuttal evidence is not grounds for excluding evidence under Rule 403." *Boucher v. CVS/Pharmacy, Inc.*, 822 F. Supp. 2d 98, 106 (D.N.H. 2011). Responding to the other side's evidence on a disputed question of causation is what trials are for. And the core facts—the five-vote majority voting bloc, the suspension of the District's Superintendent, the overhaul of the Health Advisory Committee, and the controversial comments made by Board members—are matters of public record. Defendants intend to present this evidence primarily through Charleston's own witnesses and documents and Dr. Nelson's expert testimony.

**D. The Evidence Is Neither Improper Character Evidence Nor Hearsay.**

Rule 404(a) bars evidence of a person's character "to prove that on a particular occasion the person acted in accordance with a character or trait." Fed. R. Evid. 404(a)(1). Defendants do not offer this evidence to prove that any Board member acted in conformity with a character trait on any

occasion. They offer it to establish conditions within the District—governance turmoil, leadership instability, and public statements by District leaders—that bear on what caused the school-climate harms that Charleston alleges. That is not a propensity inference, and Rule 404 does not apply.

Nor is the evidence hearsay. Charleston acknowledges that Defendants are unlikely to offer Board members' statements for their truth. *See* CCSD MIL No. 3 at 9 n.2. That is correct. Defendants are not offering evidence of Ms. Bailey's statement that "there's no such thing as gay children" to prove that children are not gay, but to show that the making of the public statement had an adverse effect on students and the community. Statements offered for a purpose other than "to prove the truth of the matter asserted" are not hearsay. *See* Fed. R. Evid. 801(c)(2).

The same is true of the written public comments submitted to the Board and the letters by principals and educators, which Charleston collected and produced. *See* Ex. B; Ex. D; Ex. E. Defendants do not offer those comments to prove that any one particular student was harmed. They offer them to show what the Board was told, and when: that parents, teachers, and community members warned the Board that its conduct was making students feel unsafe, anxious, and unwelcome at school; that the community's conflict with the Board was intense and sustained; and that Charleston leadership nevertheless continued to alienate the community. *See id.* Statements offered to show notice to, or their effect on, the listener are not offered for their truth and are not hearsay. *See* Fed. R. Evid. 801(c)(2). What the Board did after receiving that notice bears directly on whether the turmoil at the top of the District drove the harms Charleston alleges. To the extent Charleston is concerned that the jury may consider a particular comment for its truth, the appropriate remedy is a limiting instruction, not wholesale exclusion.

**CONCLUSION**

For the foregoing reasons, the Court should deny Charleston's Motion in Limine No. 3 as to Categories One, Two, Three, and Four, and deny Charleston's request to strike paragraphs 84 through 86 of Dr. Nelson's expert report.

Dated: October 29, 2026

Respectfully submitted,

*/s/ Ashley W. Hardin*

ASHLEY W. HARDIN, *pro hac vice*
ahardin@wc.com
J. ANDREW KEYES, *pro hac vice*
akeyes@wc.com
NEELUM J. WADHWANI (SBN 247948)
nwadhwani@wc.com
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Tel.: (202) 434-5000

*Attorneys for Defendants YouTube, LLC and Google LLC*

*/s/ Ashley M. Simonsen*

Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones (*pro hac vice*)
Paul W. Schmidt (*pro hac vice*)
Christian J. Pistilli (*pro hac vice*)
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
Email: pajones@cov.com
Email: pschmidt@cov.com
Email: cpistilli@cov.com

Beth A. Wilkinson (*pro hac vice*)
Rakesh Kilaru (*pro hac vice)*
Jolee Porter (*pro hac vice*)
Matthew R. Skanchy (*pro hac vice*)
WILKINSON STEKLOFF LLP
2001 M Street, NW, 10th Floor
Washington, D.C. 20036
Telephone: (202) 847-4010
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jporter@wilkinsonstekloff.com
mskanchy@wilkinsonstekloff.com

Moira K. Penza (*pro hac vice*)
WILKINSON STEKLOFF LLP
130 W 42nd Street, 24th Floor
New York, NY 10036
Telephone: (212) 294-8925
Facsimile: (202) 847-4005
mpenza@wilkinsonstekloff.com

*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc. and Instagram, LLC*

*<u>/s/ Jonathan H. Blavin</u>*
JONATHAN H. BLAVIN (SBN 230269)
Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel: (415) 512-4000

E. MARTIN ESTRADA (SBN 223802)
Martin.Estrada@mto.com
L. ASHLEY AULL (SBN 257020)
Ashley.Aull@mto.com
VICTORIA A. DEGTYAREVA
(SBN 284199)
Victoria.Degtyareva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel.: (213) 683-9100
Facsimile: (213) 687-3702

ALLISON BROWN, *pro hac vice*
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Tel.: (215) 268-5000

JESSICA DAVIDSON, *pro hac vice*
jessica.davidson@kirkland.com
JOHN J. NOLAN, *pro hac vice*
jack.nolan@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800

*Attorneys for Defendant Snap Inc.*

*/s/ Geoffrey M. Drake*

GEOFFREY M. DRAKE, *pro hac vice*
gdrake@kslaw.com
TACARA D. HARRIS, *pro hac vice*
tharris@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

DAVID P. MATTERN, *pro hac vice*
dmattern@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, D.C. 20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737

BAILEY J. LANGNER (SBN 307753)
blangner@kslaw.com
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

*/s/ Daniel M. Petrocelli*
DANIEL M. PETROCELLI (SB #97802)
dpetrocelli@omm.com
SABRINA H. STRONG (SB #200292)
sstrong@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 553-6700

STEPHEN D. BRODY (*pro hac vice*)
sbrody@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006
Telephone: (202) 383-5300

*Attorneys for Defendants TikTok Inc., ByteDance Inc., ByteDance Ltd., TikTok Ltd., and TikTok, LLC*

**ATTESTATION**

I, Ashley W. Hardin, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: October 29, 2026

By: *<u>/s/ Ashley W. Hardin</u>*
Ashley W. Hardin