# EXHIBIT 5

# EXHIBIT C

Filed Under Seal

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE: SOCIAL MEDIA ADOLESCENT )
ADDICTION/PERSONAL INJURY ) MDL No.
PRODUCTS LIABILITY LITIGATION ) 4:22-md-3047-YGR
_________________________________)
THIS DOCUMENT RELATES TO: )
)
CHARLESTON COUNTY SCHOOL )
DISTRICT V. META PLATFORMS INC.,)
ET AL. )
CASE NO.: 4:23-CV-04659 )
_________________________________)

Confidential - Pursuant to Protective Order

VIDEOTAPED DEPOSITION OF ANITA W. HUGGINS
Volume 2, Pages 172 - 319
Monday, May 19, 2025
Motley Rice
28 Bridgeside Boulevard
Mount Pleasant, South Carolina
12:12 p.m. Eastern

Reported by: Karen Kidwell, RMR, CRR
Job No.: 7375377

APPEARANCES:
For MDL Plaintiffs:
MOTLEY RICE LLC
BY: JADE A. HAILESELASSIE, ESQ.
jhaileselassie@motleyrice.com
TAMMY CAULEY RIVERS, ESQ.
tcrivers@motleyrice.com
28 Bridgeside Boulevard
Mount Pleasant, South Carolina 29464
843.216.9670

For the Defendants Meta Platforms, Inc., f/k/a Facebook, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Facebook Technologies, LLC; Instagram, LLC; Siculus, Inc.; and Mark Elliot Zuckerberg:
SHOOK, HARDY & BACON L.L.P.
BY: EBEN S. FLASTER, ESQ. (Via Zoom)
eflaster@shb.com
WILLIAM S. WALBERG, ESQ. (via Zoom)
wwalberg@shb.com
Two Commerce Square
2001 Market Street, Suite 3000
Philadelphia, Pennsylvania 19103
215.278.2555

For the Defendant Snap:
KIRKLAND & ELLIS, LLP
BY: CLAIRE MARIE KUHN, ESQ. (via Zoom)
clairemarie.kuhn@kirkland.com
200 Clarendon Street
Boston, Massachusetts 02116
617.385.7500

APPEARANCES CONTINUED:
For the Defendants Alphabet Inc., Google LLC, and YouTube LLC:

WILLIAMS & CONNOLLY LLP
BY: J. ANDREW KEYES, ESQ.
akeyes@wc.com
ARMANI J. MADISON, ESQ.
amadison@wc.com
680 Maine Street SW
Washington, DC 20024
202.434.5584

For the Defendants TikTok, Ltd.; TikTok, LLC; TikTok, Inc.; ByteDance Ltd.; and ByteDance, Inc.:

KING & SPALDING LLP
BY: ALESSANDRA M. GIVENS, ESQ. (Via Zoom)
agivens@kslaw.com
50 California Street, Suite 3300
San Francisco, California 94111
415.318.1200

Also Present:
Matt Walters, Videographer
Jon Knowles, Exhibit Technician

attention among certain groups of folk, but not the attention that Mr. Kelley's comments received.
I don't recall whether Mrs. Bailey's comments were reported in the paper or not, to be quite honest.
BY MR. KEYES:
Q. For those students who knew about what Mr. Kelley said, do you think that would be stressful?
MS. HAILESELASSIE: Objection to form.
THE WITNESS: So again, my understanding of Mr. Kelley's comments was that they were allegedly directed toward an adult, not a child, the impact of which I would think would have minimal impact on a child.
But nonetheless, with knowledge that -- and I don't believe children in general know who the Board of Trustees is. If they saw them on the side of the road, I don't think they would point to them and say, "Oh, there's my elected representative."
So I don't know. I don't know.
BY MR. KEYES:
Q. Well, if -- if a Charleston County School

District student who was transgendered heard reports that a board member was making comments deemed to be threatening and transphobic towards a teacher in the District, that would be stressful?
MS. HAILESELASSIE: Objection to form.
BY MR. KEYES:
Q. Do you disagree with that?
MS. HAILESELASSIE: Objection to form.
THE WITNESS: So I think that any comments that seem transphobic by anyone, including those online, on social media, that a child who is any sort LGBQTIA+ could be considered -- could have an impact on that child, I do, yes.
BY MR. KEYES:
Q. Adverse impact?
MS. HAILESELASSIE: Objection to form.
BY MR. KEYES:
Q. Yes?
A. Yes.
Q. Harmful impact?
MS. HAILESELASSIE: Objection to form.
THE WITNESS: That would be speculative on my case. I'm sorry.
BY MR. KEYES:
Q. You'll agree it has an adverse impact, but

you won't agree it has a harmful impact?
MS. HAILESELASSIE: Objection to form. Argumentative.
THE WITNESS: Again, I don't think, Counsel, that students in general know the Board of Trustees and/or are privy to a lot of what they do or say, quite frankly. I would actually advocate for a student to be a member of the board, but nonetheless, it would be hard for me to speculate.
But I would assume -- again, as an educator -- that any transphobic, racist, bigoted comments could have an impact that is negative and/or adverse on anyone.
BY MR. KEYES:
Q. If a Charleston County School District student who was gay heard that a member of the Board of Education said there's no such thing as gay children, that children who identify as gay are confused, or that children cannot make decisions about their gender identity until they're 18, you'd agree that would be stressful for the student?
MS. HAILESELASSIE: Objection to form.
THE WITNESS: Again, as an educator, I would assume such could be negative to a child.

I'm not a trained psychologist, Counselor, et cetera.
BY MR. KEYES:
Q. And when you say you assume it could be negative to a child, you're saying you assume it could be negative to a child's mental, emotional, and behavioral health. Correct?
MS. HAILESELASSIE: Objection to form.
THE WITNESS: Yes.
BY MR. KEYES:
Q. Did you ever speak with Mr. Kelley about his reported threatening and transphobic comments towards a teacher?
A. I did not.
Q. Why not?
A. That's not my role.
Q. It's not your role to question comments like that?
MS. HAILESELASSIE: Objection to form.
THE WITNESS: Not elected officials. They report to the public, to the voters. My job is to ensure equitable opportunities for kids in the Charleston County School District. That's a board matter.