Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

*Attorney for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc. and Instagram, LLC*

*[Additional parties and counsel listed on signature pages]*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>*ALL ACTIONS* | MDL No. 3047<br><br>Case No.: 4:22-md-03047-YGR<br><br>**META'S OBJECTIONS TO REPORT NO. 1 OF SPECIAL MASTER**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

Meta respectfully submits these limited objections to the rulings of the Special Master issued on November 9, 2026. While Meta believes that it had good-faith bases for the privilege claims that the Special Master has overruled, it recognizes that the vast majority involved small redactions of lawyer call-outs that are not substantively significant, and for that reason does not object to them. Meta objects to the Special Master's rulings as to only twelve documents (nine excluding duplicates), set out below.

## I. SM_000089 (META3047MDL-294-00037131): June 8, 2023 Chat re U13 Proactive Strategy Review

Meta respectfully objects to the Special Master's ruling that the single-sentence redaction in this document is not privileged. The redacted language discloses specific "legal guidance" from counsel in June 2023 about whether the company should continue to make public commitments regarding the efficacy of certain policies and features—including policies and features that were directly implicated in claims brought by the MDL State AGs in October 2023, for which Meta recently faced trial. This document—prepared at the same time those State AGs were conducting their pre-suit investigation, *see, e.g.*, Decl. of Holly Tambling ("Tambling Decl.") ¶ 2—reflects legal advice relating to the very litigation risks that later manifested when the State AGs filed their MDL Complaint. There, the State AGs alleged that Meta made misrepresentations about the efficacy of the very policies and features to which the "legal guidance" reflected in this chat related. *See id.* ¶ 5; *see also, e.g.*, Multistate AG Compl. ¶¶ 729, 770, Case No. 4:23-cv-05448 (ECF 207). Advice relating to specific legal concerns about public statements, particularly during a time when Meta was being investigated for allegedly making misrepresentations on the same topics, is privileged. *See*, *e.g.*, *In re Uber Techs. Inc. Passenger Sexual Assault Litig.*, 2025 WL 327742, at *7 (N.D. Cal. Jan. 29, 2025) (upholding privilege claim over document reflecting "comments on a draft press release" by in-house counsel "regarding pending litigation"). This single-sentence redaction of language reflecting and describing substantive legal advice from June 2023 about whether Meta should continue to make certain public commitments about its services is therefore proper to prevent disclosure of that legal advice.

**II. SM_000134 (META3047MDL-PLOG005-000100): Mar. 25, 2022 Email Re: "A/C Priv: Well-being external research"**

Documents "qualify for work-product protection" and are exempt from disclosure if they were (1) "prepared in anticipation of litigation or for trial'" and (2) "prepared 'by or for another party or by or for that party's representative.'" *Am. Civil Libs. Union of N. Cal. v. Dep't of Justice*, 880 F.3d 473, 484 (9th Cir. 2018) (quoting *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011)). If a document was prepared both in anticipation of litigation and for other purposes, it is subject to work product protection if, under "the totality of the circumstances," it "would not have been created in substantially similar form but for the prospect of litigation." *Richey*, 632 F.3d at 567-68; *see also Arfa v. Zionist Org. of Am.*, 2014 WL 815496, at *3 (C.D. Cal. Mar. 3, 2014) (Segal, M.J.).

Meta respectfully objects to the Special Master's ruling as to this email because it is protected attorney work-product. It reflects a March 2022 discussion that Meta's in-house counsel, including then-Head of Litigation Scott Tucker, had with Meta researchers to provide legal advice relating to two specific proposed research studies. *See* Tambling Decl. ¶ 6. Two months earlier, the first of what would become thousands of personal injury lawsuits against Meta had been filed, alleging that Meta knew based on its own internal research that Instagram and Facebook caused harm to teen well-being; and the proposed research studies on which in-house counsel were advising involved subjects that were directly at issue in this ongoing and anticipated future litigation. *See id.* ¶¶ 3, 6. The email was prepared *because* the Legal Department was undertaking an assessment of the possible implications of and risks associated with two specific proposed research studies, given that Meta was already defending this litigation, and was anticipating more litigation on these same issues; and it would not have been prepared except for this assessment by the Legal Department. *Id.* ¶ 6. The document was thus prepared in direct connection with the Company's defense of the litigation that it was already facing and was anticipating facing in the future, and "would not have been created in substantially similar form but for the prospect of litigation" and the ongoing litigation. *Richey*, 632 F.3d at 567-68. It is therefore protected attorney work product.

**III. SM_000276 (META3047MDL-PLOG004-0000092); SM_000280 (META3047MDL-PLOG004-000855); SM_000282 (META3047MDL-PLOG005-000338): "A/C Priv Youth Topics Touched on by UX Research 9/24"**

Meta respectfully objects to the Special Master's ruling as to these three documents because they are protected attorney work product. Meta addresses them together because they are substantively identical duplicates. These documents were created in September of 2021, shortly after a former Meta employee, Frances Haugen, leaked certain of Meta's internal research and other documents to the *Wall Street Journal*. *See* Declaration of James Turner ("Turner Decl.") ¶¶ 2, 6. They reflect information that Meta in-house counsel directed be compiled for purposes of preparing Meta's defense to litigation expected to arise from those leaks, *see id.* ¶ 6—litigation that indeed arose beginning in January 2022, and that now includes thousands of personal injury, school district, and State AG lawsuits, *see* Tambling Decl. ¶¶ 2–5.[1] Notably, these lawsuits allege (and alleged) that Meta knew, based on internal research it had conducted, that its services caused harm to young users. *See id.* ¶¶ 3, 5. These three documents were prepared to allow counsel for Meta to assess and have a comprehensive understanding of Meta's internal research and base of knowledge related to well-being issues associated with the use of Meta's services—an understanding that was important for Meta's counsel to have in order to help defend the company on the issues in the anticipated litigation. Turner Decl. ¶ 6. Demonstrating that purpose, the documents were shared with outside counsel representing Meta in connection with the MDL State AGs' pre-suit investigation, which publicly commenced in November 2021, to assist those outside counsel in preparing Meta's defense to the litigation that was anticipated to arise—and that did arise—from that investigation. *Id.* ¶ 6.[2] In short, these documents "would not have been created in substantially similar form but for the prospect of litigation." *Richey*, 632 F.3d at 567-68. They are therefore properly withheld as attorney work product.

[1] *See, e.g.*, MDL Personal Injury ("PI") Plaintiffs' First Am. Compl. (Apr. 14, 2023) (ECF 234-1) ¶¶ 217–220, 376–377 (referencing documents leaked by Haugen); MDL PI Plaintiffs' Second Am. Master Compl. (Dec. 15, 2023) (ECF 494) ¶¶ 19, 99, 180, 214, 267 (similar); *see also* Complaint ¶¶ 1, 101, 116, *Rodriguez v. Meta Platforms, Inc.*, No. 4:22-cv-00401 (N.D. Cal. Jan. 20, 2022), ECF No. 1; Complaint ¶¶ 1, 111, 125, *Doffing v. Meta Platforms, Inc.*, No. 1:22-cv-00100-CL (D. Or. Jan. 20, 2022), ECF No. 1.

[2] *See generally*, N.Y. AG Press Release (Nov. 18, 2021) (announcing Multistate AG Coalition's pre-suit investigation); Ark. AG Press Release (Mar. 28, 2023) (announcing AR AG's state-court lawsuit); N.Y. AG Press Release (Oct. 24, 2023) (announcing Multistate AGs' MDL lawsuit).

**IV. SM_000277 (META3047MDL-PLOG004-000164); SM_000283 (META3047MDL-PLOG005-000341): "A/C Priv: IG Teen x Well-Being related research since 2020"[3]**

Meta respectfully objects to the Special Master's ruling as to these two documents because they are protected attorney work product. Meta addresses them together because they are substantively identical duplicates. These documents were created in September of 2021, shortly after a former Meta employee, Frances Haugen, leaked certain of Meta's internal research and other documents to the *Wall Street Journal*. *See* Turner Decl. ¶¶ 2, 6. They reflect information that Meta in-house counsel directed be compiled for purposes of preparing Meta's defense to litigation expected to arise from those leaks, *see id.* ¶ 6—litigation that indeed arose beginning in January 2022, and that now includes thousands of personal injury, school district, and State AG lawsuits, *see* Tambling Decl. ¶¶ 2–5.[4] Notably, these lawsuits allege (and alleged) that Meta knew, based on internal research it had conducted, that its services caused harm to young users. *See id.* ¶¶ 3, 5. These two documents were prepared to allow counsel for Meta to assess and have a comprehensive understanding of Meta's internal research and base of knowledge related to well-being issues associated with the use of Meta's services—an understanding that was important for Meta's counsel to have in order to help defend the company on the issues in the anticipated litigation. Turner Decl. ¶ 6. Demonstrating that purpose, the documents were shared with outside counsel representing Meta in connection with the MDL State AGs' pre-suit investigation, which publicly commenced in November 2021, to assist those outside counsel in preparing Meta's defense to the litigation that was anticipated to arise—and that did arise—from that investigation. *Id.* ¶ 6.[5] In short, these documents "would not have been created in substantially similar form but for the prospect of litigation." *Richey*, 632 F.3d at 567-68. They are therefore properly withheld as attorney work product.

---

[3] Note: this Objection is substantively identical to the Objection presented in Section III *supra*.

[4] *See, e.g.*, MDL Personal Injury ("PI") Plaintiffs' First Am. Compl. (Apr. 14, 2023) (ECF 234-1) ¶¶ 217–220, 376–377 (referencing documents leaked by Haugen); MDL PI Plaintiffs' Second Am. Master Compl. (Dec. 15, 2023) (ECF 494) ¶¶ 19, 99, 180, 214, 267 (similar); *see also* Complaint ¶¶ 1, 101, 116, *Rodriguez v. Meta Platforms, Inc.*, No. 4:22-cv-00401 (N.D. Cal. Jan. 20, 2022), ECF No. 1; Complaint ¶¶ 1, 111, 125, *Doffing v. Meta Platforms, Inc.*, No. 1:22-cv-00100-CL (D. Or. Jan. 20, 2022), ECF No. 1.

[5] *See generally*, N.Y. AG Press Release (Nov. 18, 2021) (announcing Multistate AG Coalition's pre-suit investigation); Ark. AG Press Release (Mar. 28, 2023) (announcing AR AG's state-court lawsuit); N.Y. AG Press Release (Oct. 24, 2023) (announcing Multistate AGs' MDL lawsuit).

**V. SM_000298 (META3047MDL-PLOG009-016825): Nov. 15, 2022 Chat re ATT Compliance**

Meta respectfully objects to the Special Master's ruling that this document should be produced with redactions. The document is a chat between three lawyers (B.P., A.G., and B.F.) and a non-lawyer (K.B.[6]) evaluating "the most defensible way" to comply with "ATT"—a privacy framework that requires apps to ask for user permission before tracking data across other companies' apps. In the chat, the lawyers request technical information from the non-attorney, who provides responses that were then used by the attorney to evaluate proposed technical solutions necessary to comply with Meta's contractual obligations pertaining to advertising. Moreover, while the Special Master may have analyzed the application of attorney-client privilege premised on the belief that B.F., one of the four participants in the chat, was not an attorney, *see* Ruling on SM_000650, B.F. is an attorney who was acting as Lead Counsel, Advertising Products at the time of this exchange in 2022. Meta recently updated its list of "Legal Actors" (submitted with its weekly *in camera* productions) to clarify that B.F. transitioned from a legal to non-legal role in 2024.

Because this entire chat is a discussion among in-house counsel and a non-lawyer to gather and evaluate information needed for purposes of providing legal advice to Meta on its advertising business, and to assess different solutions for complying with Meta's legal obligations, it is properly withheld as privileged in its entirety.

[6] Meta identifies certain lower-level Meta employees by their initials only given prior rulings from the MDL Court sealing the names of such employees in public court filings.

## VI. SM_000302 (META3047MDL-PLOG009-016866): Dec. 13, 2022 Chat re User Data Classification

Meta respectfully objects to the Special Master's ruling that SM_000302 should be produced with redactions. This document is a chat between two attorneys (in-house counsel B.F. and outside counsel E.V.) and two non-attorney Meta employees discussing Meta's treatment of certain types of user biometric data to comply with Meta's obligations with respect to the handling of Personal Identifying Information ("PII") on Meta's platforms. The chat reflects an extended exchange between attorney B.F. and the two non-attorneys regarding those obligations. Because the entire document is a discussion between Meta in-house attorneys and other Meta employees regarding specific actions necessary for Meta's compliance with its legal obligations with respect to the treatment of PII, it is properly withheld in its entirety.

Meta further notes that B.F. was employed as an in-house attorney at Meta during the time this exchange took place. He later took a non-legal position, but at the time of this discussion he was acting as Lead Counsel, Advertising Products. It is possible that the Special Master's ruling on this document was based on a misunderstanding of B.F.'s role, *see* Ruling on SM_000650, given that he later held a non-legal position at Meta.

## VII. SM_000310 (META3047MDL-PLOG009-017419): "AC-Priv- xMeta Youth Design- Legal Training" (Jan. 25, 2024 Spreadsheet)

The Special Master ruled that this spreadsheet is not privileged because a "list of attendees at a meeting is not privileged." While the quoted language accurately describes the first tab of the spreadsheet ("Training Attendees"), Meta respectfully objects to the Special Master's ruling because it does not address the privileged portion of the document, which is contained in the second tab of the spreadsheet. That tab, called "Q&A," contains specific requests for legal advice from Meta employees made to Meta's in-house counsel on the scope and parameters of the attorney-client privilege. Those communications reflect confidential requests for legal advice by the client to an attorney acting in that capacity, and are accordingly privileged. *See In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021). Judge Gonzalez Rogers has previously ruled that legal advice from in-house counsel on the elements and scope of the attorney-client privilege is properly withheld as privileged. *See* Special Master E-Binder Tab 68 (holding that an exhibit with "the primary purpose" of "outlin[ing] the attorney's view of how the attorney client privilege works and its scope" is privileged). A request from a client for legal advice on the parameters and scope of the attorney-client privilege is similarly privileged and properly withheld.[7]

[7] Understanding that the "[PRIV]" redaction markings in Excel files can be difficult to identify, Meta will going forward identify for the Special Master in the Index, for any given Excel file, the specific sheet and cell where Meta's redactions can be located.

### VIII. SM_000315 (META3047MDL-PLOG009-032669): "WS3: Well-being YRR Strategy & Roadmap (2-pager) [A/C Priv]"

Meta respectfully objects to the Special Master's ruling on this document *only* with respect to three narrow passages that Meta believes should be redacted for privilege, reflected in yellow-highlight in the updated copy submitted herewith (LINK). Meta does not object to the Special Master's ruling that the rest of the document is not privileged.

The first redacted passage (on page 2) reflects legal advice from Meta lawyers that certain product features are "Tier 3" and therefore should only be rolled out in select jurisdictions. *See* Appendix Section 1 (defining "Tier 3"). The second redacted passage (on page 3) discusses "Litigation Risks Mitigation" "based on legal guidance for well-being based on litigation," and then sets out that legal advice under the heading of "Legal guidance for well-being." Because these two portions of the document explicitly reflect and convey legal advice relating to current and future regulations and ongoing and anticipated litigation, they are properly privileged. *See In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021) ("The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice.") (quotation omitted).

Finally, the third redacted passage (on page 4) is a specific request for legal advice from a Meta employee to Meta in-house counsel, R.B., asking whether—in light of specific ongoing litigation identified by name by the Meta employee in their request and particular language used by the plaintiffs in that litigation—different language should be used for purposes of describing the company's internal objectives. This specific request for legal advice, related specifically to an identified (ongoing) litigation matter, is entirely different from an in-house attorney's unsolicited revisions to business documents based on her assessment of general litigation risk, which Judge Gonzalez Rogers previously found not privileged in the context of one document. *See* Special Master E-Binder Tab 72 at 4.

**IX. SM_000447 (META3047MDL-294-00014041): "Meta & Youth Social Emotional Trends. Phase 3. Teen Screener & Consent"**

Meta objects to the Special Master's ruling only as to the first redaction in this document (on page 3), which is a draft screener for a research study. The redacted material is a comment from Meta in-house counsel, P.D., on the draft screener, explaining why the fourth proposed "RESPONSE OPTION" for one of the questions should be re-framed to account for the types of data that may arguably be called for (and thus collected) via that response option. The data at issue ("health data") is regulated under multiple global privacy laws.[8] An attorney's advice on the risks arising from, and how to comply with, a complex, international regulatory regime is privileged. *See Upjohn Co. v. United States*, 449 U.S. 383, 392 (1981) ("In light of the vast and complicated array of regulatory legislation confronting the modern corporation, corporations, unlike most individuals, constantly go to lawyers to find out how to obey the law.") (cleaned up). The redacted comment here is different in kind from a product counsel's suggestion to change wording in a research slide deck, which Judge Gonzalez Rogers has (at least in one context) held is not privileged. *See* Special Master E-Binder Tab 72 at 4. Here, the in-house attorney is doing more than merely suggesting different wording for the response option; he is giving the legal analysis behind the suggested change, which discloses his reasoning and his advice on regulatory compliance. That is core privileged counseling, confirming that the advice at issue is indeed legal. *See United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) ("The attorney-client privilege applies to communications between lawyers and their clients when the lawyers act in a counseling and planning role, as well as when lawyers represent their clients in litigation.").

---

[8] *See, e.g.*, Cal. Code Regs. tit. 11, §§ 7001, 7012 (requiring notice of collection of "sensitive personal information" including "[p]ersonal information collected and analyzed concerning a consumer's health, sex life, or sexual orientation"); GDPR Art. 9(1)-(2) (processing "data concerning health or data concerning a person's sex life or sexual orientation" is prohibited without explicit consent or meeting other requirements).

DATED: November 11, 2026

Respectfully submitted,

By: */s/ Ashley M. Simonsen*

Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

Paul W. Schmidt, *pro hac vice*
Timothy C. Hester, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
Email: pschmidt@cov.com
Email: thester@cov.com

*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc. and Instagram, LLC*