*[Counsel listed on signature pages]*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>*ALL ACTIONS* | MDL No. 3047<br><br>Case Nos.: 4:22-md-03047-YGR-PHK<br><br>**PERSONAL INJURY AND SCHOOL DISTRICT PLAINTIFFS' NOTICE OF MOTION AND MOTION TO SANCTION META FOR PRIVILEGE ABUSES**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang<br><br>Date: December 14, 2026<br>Time: 9:00am<br>Location: Zoom |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 14 at 9:00 a.m. Pacific Time, or as soon thereafter as the matter may be heard, before the Honorable Yvonne Gonzalez Rogers, United States District Court for the Northern District of California, Oakland Division, the Personal Injury and School District Plaintiffs ("Plaintiffs") will and hereby do move for sanctions against Defendant Meta Platforms, Inc. ("Meta") pursuant to Federal Rules of Civil Procedure 37 and the Court's inherent authority. The parties have stipulated that this Motion may be heard at the December 14, 2026 Case Management Conference, notwithstanding the 35-day notice requirement under Civil Local Rule 7-2(a), subject to the Court's approval (ECF 3689).

Plaintiffs respectfully request that the Court enter an order: (1) permitting Plaintiffs to use all documents and newly disclosed portions downgraded through Meta's re-review with any trial witness, and precluding Meta's objections based on authenticity, foundation, personal knowledge, or other grounds of admissibility except Rule 403; (2) instructing the jury regarding Meta's improper withholding and its effect on Plaintiffs' opportunity to develop evidence; (3) modifying the Rule 502(d) Order (ECF 248) to require prior leave of Court, on a document-specific showing of good cause, before Meta may claw back a document or portion thereof released through the privilege re-review; and (4) awarding Plaintiffs the reasonable fees and costs caused by Meta's improper privilege assertions and the proceedings necessary to address them. This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum in Support, the Declaration of Lexi J. Hazam and exhibits thereto, the pleadings and records in this action, and such argument as the Court may permit.

DATED: November 13, 2026

Respectfully submitted,

By: */s/ Lexi J. Hazam*

LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

*Co-Lead Counsel*

*[Counsel listed on signature pages]*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>*ALL ACTIONS* | MDL No. 3047<br><br>Case Nos.: 4:22-md-03047-YGR-PHK<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO SANCTION META FOR PRIVILEGE ABUSES**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........ 1

I. BACKGROUND ........ 2

A. Meta's Expansive Privilege Claims and Its First Belated Re-Review. ........ 2

B. The August 2026 State A.G. Trial Exposed Continuing Improper Privilege Claims. ........ 3

C. Meta's Priority Re-Review Confirmed Pervasive Over-Designations. ........ 3

D. The Court Ordered a Comprehensive Re-Review Under Independent Oversight. ........ 4

E. Meta Has Downgraded Thousands of Improperly Withheld Documents and Redactions While Reserving Rights to Claw Documents Back. ........ 4

II. LEGAL STANDARD ........ 6

III. ARGUMENT ........ 8

A. Meta Violated Discovery Orders by Systematically Withholding Nonprivileged Evidence. ........ 9

B. Meta Should Not Be Permitted to Profit From the Evidentiary Gaps Its Withholding Created. ........ 10

C. The Jury Should Be Informed That Meta Improperly Withheld Discoverable Evidence. ........ 12

D. Meta Should Be Required to Show Good Cause Before Clawing Back Any Downgraded Documents. ........ 14

E. Meta Should Pay the Reasonable Fees and Costs Caused by Its Privilege Abuses. ........ 15

CONCLUSION ........ 16

# TABLE OF AUTHORITIES

Page

**Cases**

*Adriana Int'l Corp. v. Thoeren*,
913 F.2d 1406 (9th Cir. 1990) ....................7

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
421 U.S. 240 (1975) ....................7

*Anheuser-Busch, Inc. v. Natural Beverage Distribs.*,
69 F.3d 337 (9th Cir. 1995) ....................8, 13

*Caputo v. Tungsten Heavy Powder, Inc.*,
96 F.4th 1111 (9th Cir. 2024) ....................16

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) ....................7, 15

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*,
254 F.3d 882 (9th Cir. 2001) ....................7, 14

*Epic Games, Inc. v. Apple Inc.*,
781 F. Supp. 3d 943 (N.D. Cal. 2025), *aff'd in part, rev'd in part on other grounds*, 161 F.4th 1162 (9th Cir. 2025), *cert. granted in part*, 146 S. Ct. 2812 (2026) ....................14, 16

*F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*,
244 F.3d 1128 (9th Cir. 2001) ....................7

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*,
655 F. Supp. 3d 899 (N.D. Cal. 2023) ....................2, 3, 10

*Fink v. Gomez*,
239 F.3d 989 (9th Cir. 2001) ....................7, 15

*Garner v. Amazon.com, Inc.*,
No. C21-0750RSL, 2024 WL 4266665 (W.D. Wash. Sept. 23, 2024) ....................14

*Goodyear Tire & Rubber Co. v. Haeger*,
581 U.S. 101 (2017) ....................15

*In re Grand Jury*,
23 F.4th 1088 (9th Cir. 2021) ....................10

*Haeger v. Goodyear Tire & Rubber Co.*,
813 F.3d 1233 (9th Cir. 2016), *rev'd on other grounds*, 581 U.S. 101 (2017) ....................7

*Hyde & Drath v. Baker*,
24 F.3d 1162 (9th Cir. 1994) ....................7

## TABLE OF AUTHORITIES
## (continued)


**Page**

*Linde v. Arab Bank, PLC*, 269 F.R.D. 186 (E.D.N.Y. 2010) .......... 10

*Pierce v. Underwood*, 487 U.S. 552 (1988) .......... 7

*Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644 (9th Cir. 1997) .......... 7

*RG Abrams Ins. v. L. Offices of C.R. Abrams*, 342 F.R.D. 461 (C.D. Cal. 2022) .......... 13

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, No. 4:22-md-3047 (N.D. Cal. Aug. 24, 2026) .......... 3

*Staley v. U.S. Bank National Ass'n*, No. 1:10-cv-00591-BLW, 2013 WL 331271 (D. Idaho Jan. 29, 2013) .......... 12, 13

*Tessera, Inc. v. Sony Corp.*, No. C11-04399 EJD (HRL), 2013 WL 5692109 (N.D. Cal. Oct. 18, 2013) .......... 12

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363 (9th Cir. 1992) .......... 7, 10

*United States v. Ruehle*, 583 F.3d 600 (9th Cir. 2009) .......... 1, 2, 10, 12

**Court Rules**

Fed. R. Civ. P. 26(g) .......... 2

Fed. R. Civ. P. 26(g)(3) .......... 15

Fed. R. Civ. P. 37 .......... 2, 6, 7

Fed. R. Civ. P. 37(b) .......... 12

Fed. R. Civ. P. 37(b)(2) .......... 10

Fed. R. Civ. P. 37(b)(2)(A) .......... 7, 10

Fed. R. Civ. P. 37(b)(2)(C) .......... 15

Fed. R. Civ. P. 37(c)(1)(B) .......... 13

Fed. R. Evid. 104 .......... 7

## TABLE OF AUTHORITIES
## (continued)

**Page**

Fed. R. Evid. 403 ....................4, 11, 12, 16

Fed. R. Evid. 502(d).................... passim

**Treatises**

8B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2289 (3d ed.) ....................7

## INTRODUCTION

"Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009). But not by Meta. For years, Meta used the attorney-client privilege to conceal highly relevant evidence about the negative effects of Instagram and Facebook on young users. It also used the privilege to hide the involvement of its own lawyers in actively manipulating the evidentiary record at issue in this litigation.

Meta's improper withholding only began to emerge over a year after the close of fact discovery, after this Court scrutinized Meta's privilege claims during the State A.G. trial. Even then, it required a Court ordered re-review process, overseen by a special master, for the extent of Meta's abuse of privilege to become clear. The numbers are extraordinary. Meta downgraded 79% of the documents identified in Plaintiffs' updated index for priority review—727 of 926 documents. In the first weekly re-review ordered by the Court, Meta downgraded 90% of the documents—14,397 of 16,038. Meta's downgrade rate has continued to climb since then. The following week, Meta downgraded 94% of the documents at issue—56,747 of 60,462 documents. <u>This brings the cumulative downgrade rate to **93%** as of the date of this filing.</u>[1] And despite these staggering rates, Meta continues to withhold improperly. The Special Master has *further* downgraded or narrowed Meta's privilege assertions on nearly 10% of the documents for which Meta continued to assert privilege after its initial reviews.[2] ECF 3677-2.

The numbers speak for themselves. They reveal systemic over-designation, not isolated error: Meta's in-house and outside counsel repeatedly asserted privilege over evidence they had no basis to withhold. This, in turn, has created serious and unacceptable prejudice. Meta's misconduct has resulted in Plaintiffs receiving material from *tens of thousands* of documents for the first time less than three months before trial. That includes documents evidencing the core of Plaintiffs' case, including Meta's negligence in designing and operating its platforms, and its notice and knowledge of the risks those platforms posed to young users—the factual basis for Plaintiffs' failure-to-warn claims.

Meta's belated, compelled disclosures have not cured the harm. Plaintiffs deposed witnesses,

---

[1] To be conservative, Plaintiffs calculated these rates by excluding all documents Meta identified as duplicates in each tranche.

[2] Meta has objected to the Special Master's rulings on 11 of those documents, and its objections remain pending as of this filing.

developed and served expert opinions, and made critical litigation decisions without documents that should have been available during discovery (which closed 1.5 years ago). Meta should not be permitted to benefit from the evidentiary gaps it created by withholding its own records until after discovery, and then objecting that Plaintiffs lack the testimony or foundation they could have obtained had the evidence been timely produced. Nor should it be allowed to release documents under judicial scrutiny while retaining an unrestricted ability to claw them back when Plaintiffs seek to use them at trial. That would convert privilege from a protection for legal advice into a means of controlling whether and when adverse evidence becomes available. And it would contravene longstanding law from this Circuit that "the privilege stands in derogation of the public's right to every man's evidence and as an obstacle to the investigation of the truth, and thus . . . ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." *Ruehle*, 583 F.3d at 607 (cleaned up).

In short, Meta and its attorneys have engaged in sanctionable misconduct. Pursuant to Rule 37, Rule 26(g), and the Court's inherent authority, Plaintiffs seek sanctions directed at the consequences of Meta's conduct: removing the evidentiary obstacles caused by its late production, informing the jury of its improper withholding, protecting the trial record against renewed its unilateral clawbacks, and requiring it to pay Plaintiffs' reasonable attorneys' fees and costs associated with addressing its privilege abuses. Meta was required to produce this evidence during discovery, and it did not. The Court should now ensure that Meta does not benefit from its failure to do so.

## I. BACKGROUND

### A. Meta's Expansive Privilege Claims and Its First Belated Re-Review.

Throughout fact discovery, Meta improperly asserted attorney-client privilege and work-product protection over large volumes of records concerning its operations, research, and decisions affecting young users. This was not Meta's first offense. In the Cambridge Analytica litigation, a court in this District sanctioned Meta with fees for its "sustained, brazen stonewalling campaign" after a re-review revealed that Meta had improperly asserted privilege over 63% of a sample of withheld documents. *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 655 F. Supp. 3d 899, 923, 926, 933–36 (N.D. Cal. 2023). The court rejected Meta's practice of treating the mere inclusion of attorneys on communications as sufficient to establish privilege. *See id.* at 909 ("[A] party cannot simply 'cc' their attorney to privilege a document—

they must be communicating with their attorney in order to receive legal advice."). The court found that Meta's over-designation was part of a broader pattern and practice of bad-faith discovery misconduct. *Id.* at 933.

Despite that rebuke, Meta again asserted sweeping privilege claims over business records in this litigation. By the April 4, 2025 discovery cutoff, Meta had withheld approximately 130,000 documents in full and redacted substantial portions of thousands more. ECF 2838 at 7.

Months after discovery closed, Meta performed an initial re-review of its privilege claims and downgraded approximately 65,000 previously withheld documents—roughly half of the documents it had withheld in full. ECF 2838 at 5–7. The productions came after Plaintiffs had completed fact depositions and served expert reports, depriving them of the opportunity to examine witnesses about the newly disclosed evidence or incorporate it into their discovery and expert work.

**B. <u>The August 2026 State A.G. Trial Exposed Continuing Improper Privilege Claims.</u>**

Meta's privilege abuses came under renewed scrutiny during the State A.G. trial. After disputes arose over Meta's privilege redactions in trial exhibits, the Court found Meta's redactions in one exhibit "entirely inappropriate" and rejected as "far too broad-based" Meta's theory that an attorney's involvement in ensuring the "accuracy" of business presentations rendered the underlying information privileged. ECF 3450 at 2–3. Trial testimony revealed that Meta researchers had applied privilege labels as a blanket policy to sensitive materials, including "anything that [Meta] wouldn't want the public to see." *See* Trial Tr. at 853:23–854:14, *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, No. 4:22-md-3047 (N.D. Cal. Aug. 24, 2026) ("A.G. Trial").

**C. <u>Meta's Priority Re-Review Confirmed Pervasive Over-Designations.</u>**

On August 31, in response to the Court's privilege rulings during the A.G. Trial, Meta announced another unilateral re-review, this time focused on documents produced with privilege redactions. ECF 3465. Meta's earlier review had addressed only fully withheld documents, leaving redacted documents untouched. ECF 3550 at 4. Plaintiffs sought independent scrutiny of both fully withheld and redacted documents, but Meta insisted that Plaintiffs had presented "nothing" suggesting it had applied an incorrect privilege standard. ECF 3509-1 at 1–2, 4; ECF 3479 at 1.

At the September 22, 2026 case management conference, the Court directed Plaintiffs to identify 300

of their "most important" documents for priority review. ECF 3534 at 2. Meta completed that review on October 7, withdrawing or narrowing privilege claims for well over half of the documents at issue. Of the 150 fully withheld documents on that list—a category Meta had previously insisted required no further review—Meta withdrew or narrowed its privilege claims to over 95. ECF 3550 at 3–6. Of all 300 documents, only 81 of Meta's original privilege determinations survived unchanged. *Id.*

### D. <u>The Court Ordered a Comprehensive Re-Review Under Independent Oversight.</u>

Following the priority review, the Court directed a comprehensive examination of Meta's remaining privilege claims at the October 9, 2026 conference. The Court rejected Meta's proposal to use artificial intelligence to narrow the universe requiring re-review. Oct. 9, 2026 Tr. 10:6–11:12. Shortly after the hearing, Meta agreed to independent oversight, and the Court appointed the Honorable Suzanne H. Segal (Ret.) as Special Master. ECF 3574.

The Court-ordered Re-Review Protocol requires Meta to re-review both fully withheld and redacted documents, produce downgrades weekly, and complete the process by December 30, 2026, maintaining a cumulative average review pace of at least 20,000 documents per week. ECF 3599 ¶ 1. The Protocol also requires independent Special Master review of weekly random samples of 200 documents from categories over which Meta continues to assert privilege. *Id.* ¶¶ 1(e)–(f).

The Protocol expressly preserves Plaintiffs' right to seek remedies for Meta's improper privilege assertions, including an order permitting use of downgraded documents with any trial witness without objections based on authenticity, foundation, or other admissibility grounds, except Rule 403. *Id.* ¶ 7. Plaintiffs also advised the Court in the Joint Statement for the November 13, 2026 Case Management Conference that they intended to move for such sanctions and other appropriate relief. ECF 3667 at 2–3. Such relief is critical: although the re-review may finally produce evidence Meta improperly withheld, it cannot restore the discovery opportunities Plaintiffs lost.

### E. <u>Meta Has Downgraded Thousands of Improperly Withheld Documents and Redactions While Reserving Rights to Claw Documents Back.</u>

Meta's re-review results confirm that it improperly withheld documents as an overwhelming rule, not an exception. As stated above, Meta's cumulative downgrade rate has reached 93%. The highest rates are from its two most recent reviews, which comprise the large bulk of documents re-reviewed to date. The

universe of documents for those re-reviews was chosen by Meta, not Plaintiffs. And the rates are extremely high both for previously withheld documents (79%)—those that Meta purportedly already re-reviewed a year ago—and for previously redacted documents (96%).

The downgraded documents go to the heart of this litigation. They include a 2023 chat in which a Meta employee acknowledged that [redacted]—a conversation that included no attorney (ECF 3668-1, at -32557). They also include numerous documents evincing Meta's awareness of underage users on its platforms and a concerted effort to look the other way, including a previously fully withheld 2016 slide deck [redacted] acknowledging that [redacted] and that [redacted] (Ex. B, META3047MDL-321-00003495) (referring to Mark Zuckerberg and Sheryl Sandberg); a 2017 document conceding that Meta's model showed [redacted] because users [redacted] and that Meta had [redacted] (Ex. C, META3047MDL-321-00003509) (previously fully withheld); as well as a 2017 research deck [redacted] (Ex. D, META3047MDL-321-00001293) (previously fully withheld). Other previously-withheld evidence acknowledges that defective age verification prevented young users from receiving the safety protections Meta has long publicly touted—such as a 2022 document warning that [redacted] (Ex. E, META3047MDL-321-00003402, at -3413) (referring to Meta CTO Andrew Bosworth).

Many of the downgraded documents reveal that Meta's legal department was involved not to provide legal advice, but to shape, restrict, and conceal internal research. A previously fully-withheld 2023 MYST study document notes that [redacted] even though research and product viewed it as [redacted] (Ex. F, META3047MDL-321-00004092). A related comment states, [redacted] (Ex. G, META3047MDL-321-00003282, at -03283) (previously fully

withheld). In a January 2023 chat, Meta counsel instructed a researcher to revise a [redacted] including by [redacted] (Ex. H, META3047MDL-284-00011842). Other documents indicate that members of Meta's C-suite were intentionally shielded from research because of this very litigation. For example, in a 2023 chat, employees discussed [redacted] (Ex. I, META3047MDL-111-00468706, at -00468713).

Other downgraded documents show that Meta employees deliberately applied privilege labels to avoid discovery. A Meta attorney asked [redacted] because [redacted] ECF 3668-2. Meta fact and non-retained expert witness Kristin Hendrix admitted that [redacted]—i.e., [redacted]. ECF 3668-3.

Even as Meta has now belatedly released these documents, it asserts that as to the over 56,000 downgraded documents in its most recent and largest production, it has "not determined that these documents were incorrectly withheld or redacted." ECF 3667 at 6. That is because Meta has not performed human review of these produced documents, instead relying on generative AI, *id.*, in contravention of the Court's guidance, 10/9/26 Tr. at 10:25-11:6. Meta has availed itself of this shortcut by invoking the Rule 502(d) Order (ECF 248) to preserve its ability to claw these documents back. ECF 3667 at 6. Thus, after withholding evidence throughout fact discovery and producing it only under judicial scrutiny, Meta now tries to have it both ways: it continues to reserve the ability to withdraw the very evidence it is producing, while avoiding the costs and time of the human review that would allow it to stand by its downgrades. Meta's belated productions cannot undo the prejudice caused by years of improper withholding, and its asserted clawback rights threaten to compound that prejudice by leaving Plaintiffs uncertain what evidence they can ultimately use at trial.

## II. LEGAL STANDARD

The Court may impose sanctions for Meta's privilege-related misconduct under Federal Rule of Civil Procedure 37 and the Court's inherent powers. Rule 37(b)(2)(A) authorizes sanctions when a party

"fails to obey an order to provide or permit discovery" and empowers the Court to "issue further just orders." The Rule affords the Court "broad discretion to make whatever disposition is just in the light of the facts of the particular case." 8B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2289 (3d ed.).

Under Rule 37, the party being sanctioned bears the burden of demonstrating that its conduct was "substantially justified." *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994). No finding of bad faith is required for sanctions. *See id*. Rather, substantial justification requires that the party's conduct was "justified to a degree that could satisfy a reasonable person," with a "reasonable basis both in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 565–66 (1988).

The Court also possesses inherent authority to remedy "a full range of litigation abuses." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). Courts may, among other things, bar evidence, award fees, and fashion measures necessary to protect the judicial process. *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1136 (9th Cir. 2001). That power "can be invoked even if procedural rules exist which sanction the same conduct," including Rule 37. *Haeger v. Goodyear Tire & Rubber Co.*, 813 F.3d 1233, 1243 (9th Cir. 2016) (citations omitted), *rev'd on other grounds*, 581 U.S. 101 (2017). Inherent-power sanctions require conduct "tantamount to bad faith," including willful disobedience, conduct undertaken for an improper purpose, or recklessness coupled with an improper purpose. *Id.* at 1244 (citations omitted); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975); *Fink v. Gomez*, 239 F.3d 989, 992–94 (9th Cir. 2001). Bad faith includes conduct that delays or disrupts litigation or hampers enforcement of a court order. *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648–49 (9th Cir. 1997). In determining bad faith, the Court may consider the party's entire discovery conduct. *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1411 (9th Cir. 1990).

In addition, the Court retains broad authority to manage evidence for a fair and orderly trial, *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) (citation omitted), and to modify interlocutory orders when circumstances require, *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 884–86 (9th Cir. 2001). Finally, the Court has authority under Fed. R. Evid. 104 to take evidence and make factual determinations on privilege claims, including holding an evidentiary hearing to develop the factual record regarding discovery abuses.

The Ninth Circuit has rejected the argument that later compliance cures a party's failure to meet its discovery obligations. *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 354 (9th Cir. 1995). It is enough that concealment impaired the opposing party's ability to prepare for trial; the moving party need not establish that each withheld document would change a verdict. *Id*.

## III. ARGUMENT

Meta's privilege practices were not substantially justified. The Court's rulings at the A.G. Trial exposed that Meta routinely claimed privilege over ordinary business presentations, while testimony from its employees revealed that privilege labels were regularly placed on sensitive information to shield it from public view. ECF 3450 at 2–3; ECF 3509-1 at 3–4. Meta's re-reviews, under compulsion, have resulted in the disclosure of a very large portion of the records it had insisted were protected. ECF 3550 at 3–6. The scale, persistence, and direction of these reversals support the conclusion that Meta applied the privilege far too broadly and did so deliberately, rather than making isolated good-faith mistakes.

That record supports a finding of conduct at least tantamount to bad faith. In particular, the use of privilege labels to protect information Meta did not want exposed, combined with the systematic treatment of counsel's mere presence on documents to justify the withholding of business records—by both in-house *and* outside counsel—permits the inference that Meta used the privilege for an improper purpose: to keep damaging evidence from Plaintiffs. The evidence of misconduct lies in the decisions Meta made, the documents it concealed, and the fact that those decisions persisted long after Plaintiffs lost the opportunity to use the documents in discovery.

The prejudice is concrete: Plaintiffs were deprived of records when deposing witnesses, undertaking expert work, and deciding what further evidence to seek. The Court-ordered re-review now provides access to some of those records, but it cannot restore the opportunities Meta's improper withholding eliminated. The four sanctions Plaintiffs seek address four distinct consequences of that misconduct.[3]

[3] During meet and confer, Meta argued that this matter should be presented to Magistrate Judge Kang or treated as a discovery dispute under the Court's Standing Order. Plaintiffs disagree. This motion seeks evidentiary sanctions to remedy prejudice at trial, not resolution of an ongoing discovery dispute. *See* ECF 1994 at 1 (Meta arguing that its own motion seeking "evidentiary sanctions" was not a discovery dispute subject to Section 8 of the Court's standing order).

### A. Meta Violated Discovery Orders by Systematically Withholding Nonprivileged Evidence.

Not only governing law but specific discovery orders entered in this case expressly prohibit the privilege practices Meta employed throughout this litigation. The 2024 Privilege Log Protocol required Meta to "review and analyze each document for privilege" and prohibited reliance "solely on the metadata to make the determination." ECF 740 § III.E. It further mandated that documents containing both privileged and nonprivileged material "must be disclosed with the purportedly privileged portion redacted." *Id.* § III.B. And the 2023 ESI Order independently required Meta to employ reasonable review methodologies consistent with applicable legal standards and authorized privilege redactions only for information actually entitled to protection. ECF 690 §§ 3, 8 & App. 1 § 18.

The results of Meta's successive re-reviews reveal the magnitude of its failure to comply with these obligations. For instance, in Week 3 of the court-ordered re-review alone, Meta downgraded more than 10,000 documents it had previously withheld *in full*. This means that, for well over a year, Meta withheld *entire documents* containing nonprivileged information, despite the Protocol's requirement that such information be disclosed. Worse, Meta withheld this information even after repeated assurances after the close of discovery that its privilege designations had been reviewed and confirmed. *See, e.g.*, ECF 2312 at 4 (representing that Meta had conducted "an extensive re-assessment of documents initially withheld as privileged" following the close of fact discovery).

These were not close calls or isolated mistakes, as further demonstrated by Meta's doubling-down on its designations even after the Court expressly rejected its theory that attorneys' involvement in ensuring the "accuracy" of business presentations rendered those communications privileged. ECF 3450 at 2–3 (finding that theory "far too broad-based"). Meta continued to defend its original designations by emphasizing that virtually every document it had previously withheld but subsequently produced in full identified an attorney as an author, commenter, sender, or recipient. ECF 3550 at 5–6. Even where that is true (and, for many documents, it is not), Meta's explanation underscores the very problem the Court had already identified: Meta improperly treats attorney involvement as a substitute for determining whether a communication actually sought or conveyed legal advice. And it uses the bare fact of attorney involvement to conceal evidence from discovery.

The governing law has never permitted this approach. Meta bore the burden of establishing each element of privilege, *Ruehle*, 583 F.3d at 607–08, including that the primary purpose of a dual-purpose communication was to obtain or provide legal advice, *In re Grand Jury*, 23 F.4th 1088, 1091–94 (9th Cir. 2021). Merely copying an attorney does not transform an otherwise nonprivileged business communication into privileged legal advice. *In re Facebook*, 655 F. Supp. 3d at 909. Meta's continued reliance on attorney involvement to justify its designations confirms the systemic flaw in its privilege practices and its failure to conduct the document-specific analysis expressly required by the 2024 Privilege Log Protocol.

Accordingly, Meta's repeated withholding of nonprivileged information, notwithstanding governing law and express discovery requirements, warrants sanctions under Rule 37(b)(2), as well as the Court's inherent authority. If testimony concerning Meta's review standards, instructions, or purpose is necessary to resolve the requisite bad-faith findings, Plaintiffs request a focused evidentiary hearing in which counsel for Meta who were involved in the misconduct at issue are examined.

### B. <u>Meta Should Not Be Permitted to Profit From the Evidentiary Gaps Its Withholding Created.</u>

The most immediate prejudice to Plaintiffs concerns their ability to use Meta's own documents at trial. Had Meta produced the downgraded records during fact discovery, Plaintiffs could have questioned their authors and recipients to lay the basis for potential impeachment, not to mention simply learn more about the facts at issue in the case. Plaintiffs also could have taken corporate-representative testimony, served requests for admission, and questioned witnesses to establish the foundation for the admission of documents into evidence. Instead, Meta withheld those documents until after discovery had concluded. It should not be permitted to exploit the absence of foundational testimony created by its withholding.

Rule 37(b)(2)(A) authorizes orders deeming appropriate facts established and restricting evidentiary positions where a party has violated a discovery order. The Court's inherent trial-management authority likewise permits measures necessary to prevent discovery misconduct from distorting trial. *Unigard*, 982 F.2d at 368. For example, in *Linde v. Arab Bank, PLC*, the court deemed withheld records authentic and admissible, and prevented the withholding party from profiting from the evidentiary gaps it created. 269 F.R.D. 186, 204–05 (E.D.N.Y. 2010). That principle applies with particular force here: Plaintiffs seek to use records produced by Meta itself, from Meta's files, bearing Meta's own Bates numbers. Indeed, the ESI

Protocol already creates a presumption of authenticity for such documents. ECF 690 § 19.d. Meta should not be permitted to challenge their authenticity or argue they fall outside the scope of the business-records and party-admission exceptions to the hearsay rule.

The same prejudice extends to foundation and personal-knowledge objections. Some newly downgraded documents involve Meta employees who appear on neither party's witness list, leaving Plaintiffs with no opportunity to examine those individuals at trial. Even where the employees are on current witness lists as expected to appear live[4], Plaintiffs had no opportunity to confront them with these documents during depositions, develop testimony concerning their contents, or establish a record for cross-examination at trial.[5] A document revealing what Meta employees knew or discussed should not be excluded simply because Meta's improper withholding deprived Plaintiffs of the opportunity to establish the necessary foundation or personal knowledge during discovery. To be clear, the requested relief does not require witnesses to claim knowledge they lack; it prevents Meta from exploiting the evidentiary gaps its own conduct created. Meta should likewise be precluded from raising other admissibility objections except under Rule 403, as Plaintiffs expressly reserved in the Re-Review Protocol. ECF 3599 ¶ 7. Rule 403 preserves the Court's authority to address genuine concerns about unfair prejudice, confusion, and other trial considerations.

The Re-Review Protocol leaves no practical way to reconstruct the lost discovery. It authorizes up to 150 targeted requests for previously undisclosed hyperlinks and expressly forecloses other document requests based on newly downgraded materials. ECF 3599 ¶ 6. Nor can Meta's promise to confer on authenticity and business-records stipulations for a "reasonable number" of documents replace the depositions and foundation work Plaintiffs could have conducted if the evidence had been timely produced. ECF 3667 at 3. Requiring Plaintiffs to preview to Meta and then bargain over hundreds of individual documents against the trial clock would compound the harm, creating substantial burdens on Plaintiffs that would have been unnecessary absent Meta's misconduct.

---

[4] As to witnesses appearing by designation, downgraded materials could not have been used at depositions and therefore cannot be part of designations.

[5] Even if Plaintiffs could add new witnesses at this point, practically speaking their ability to do so is restricted both by subpoena power and trial time limits, in addition to the prejudice from being deprived of discovery relating to the documents.

Meta's suggestion that it previously produced similar documents addressing the same subjects is equally unavailing. Plaintiffs have had only a tiny fraction of the time ordinarily available to review these voluminous and belated productions, yet even their preliminary review has already uncovered highly damaging evidence that Meta improperly concealed throughout discovery. Of course, even documents containing substantially similar information can provide distinct and important evidence based on their authors, recipients, timing, and context. But Meta's argument also misses the point: Meta does not get to decide which responsive, nonprivileged documents are sufficiently important to warrant production and unilaterally withhold the rest under the guise of privilege. That would equate to Meta choosing Plaintiffs' trial exhibits. More fundamentally, the burden of supporting privilege has always rested with Meta. It is Meta's responsibility in the first instance to assert privilege in good faith and in compliance with long-standing federal law. It is not Plaintiffs' burden to challenge every log entry or redaction on the assumption that over 90% of a defendant's privilege assertions are improper. *Ruehle*, 583 F.3d at 607–08. No litigant would, or ever should have to, assume that its adversary is engaged in misconduct at that scale.

The Court should permit Plaintiffs to use all downgraded documents and newly disclosed portions with any trial witness, including any expert, and preclude Meta's authenticity, foundation, personal-knowledge, and other admissibility objections, except under Rule 403. Meta should not gain a trial advantage from evidence it improperly kept out of discovery.

### C. <u>The Jury Should Be Informed That Meta Improperly Withheld Discoverable Evidence.</u>

Admission of the documents alone will not eliminate the prejudice. Jurors may see exhibits introduced without the earlier witness examination that ordinarily gives contemporaneous records their context and allows for impeachment. Meta may then seek to minimize those records because no witness was confronted with them during discovery. Without an instruction, the jury will not know that Meta's improper withholding caused an evidentiary gap. Plaintiffs should not be forced to try this case as though the documents had been available all along.

Courts may instruct juries about discovery misconduct and permit reasonable inferences from withheld evidence. In *Tessera, Inc. v. Sony Corp.*, the court treated a permissive adverse-inference instruction as a "further just order" under Rule 37(b) and an exercise of inherent authority. No. C11-04399 EJD (HRL), 2013 WL 5692109, at *3–4 (N.D. Cal. Oct. 18, 2013). In *Staley v. U.S. Bank National Ass'n*,

the court permitted the jury to draw reasonable inferences, including adverse ones, from the defendant's discovery failure. No. 1:10-cv-00591-BLW, 2013 WL 331271, at *5 (D. Idaho Jan. 29, 2013). Rule 37(c)(1)(B) expressly authorizes informing the jury of a qualifying disclosure failure, and the Ninth Circuit recognizes that concealment of documents relevant to the merits can cast doubt on the concealing party's case. *Anheuser-Busch*, 69 F.3d at 354; *see also RG Abrams Ins. v. L. Offices of C.R. Abrams,* 342 F.R.D. 461, 520 (C.D. Cal. 2022) (permitting Plaintiffs to present evidence to the jury about spoliation of evidence).

The factual basis for an instruction here is compelling. The Court rejected Meta's redactions over business material, witnesses described applying privilege labels as a blanket practice to sensitive matters, and Meta has withdrawn or narrowed over 90% of its privilege claims in its re-review to date. ECF 3450 at 2–3; ECF 3509-1 at 3; ECF 3550 at 3–6. Plaintiffs seek a permissive inference tied to documents or categories the Court finds were improperly withheld, not a conclusive presumption as to all disputed materials. Plaintiffs propose the following instruction, with the scope to be completed after the Court's findings:

> During discovery, Meta was required to produce relevant documents that were not protected by the attorney-client privilege or attorney work-product doctrine. The attorney-client privilege protects confidential communications whose primary purpose is to seek or provide legal advice. It does not protect business communications simply because a lawyer was copied on them, or because Meta labeled a document "privileged," or because its contents were sensitive.
>
> Meta withheld certain documents in full or in part during discovery, claiming that they were privileged. However, a substantial portion of those privilege claims were improper. While the documents were eventually produced shortly before trial, Plaintiffs did not have them in time to use at depositions or in their expert preparations.
>
> You may consider Meta's improper use of the attorney-client privilege to shield documents when evaluating the evidence and when assessing Plaintiffs' claims, including the claim that Meta negligently failed to warn about alleged defects in its apps. You may, but need not, infer that Meta withheld the documents because it believed their contents would be unfavorable to Meta. You should draw only those inferences you find reasonable in light of all the evidence.

This instruction states the relevant discovery history, tracks the governing privilege standard, and leaves the inference to the jury. The Court should not permit Meta's withholding to create a misleading impression of how the evidence was developed.

### D. <u>Meta Should Be Required to Show Good Cause Before Clawing Back Any Downgraded Documents.</u>

The Court's Rule 502(d) Order (ECF 248) was intended to facilitate discovery and protect against inadvertent waiver. It was not a license to assert privilege too broadly, produce the withheld evidence years later, and preserve an unlimited right to withdraw it again when Plaintiffs prepare their trial exhibits. Yet Meta's November announcement did exactly that: it described the release of approximately 56,000 documents downgraded through the use of GenAI, while disclaiming a determination that the original privilege claims were incorrect and invoking Rule 502(d) to preserve clawback rights. ECF 3667 at 6. That makes the new production provisional at precisely the moment the trial record must become stable.[6]

The Court has authority to prevent this result. Rule 502(d) allows the Court to determine the waiver consequences of disclosure; the Court also retains authority to revise its interlocutory orders for sufficient cause. Fed. R. Evid. 502(d); *Santa Monica Baykeeper*, 254 F.3d at 885. In *Epic Games, Inc. v. Apple Inc.*, this Court declined to extend Rule 502(d) protection to documents it had held not privileged and refused to settle waiver questions prospectively for unspecified documents. 781 F. Supp. 3d 943, 995–96 (N.D. Cal. 2025), *aff'd in part, rev'd in part on other grounds*, 161 F.4th 1162 (9th Cir. 2025), *cert. granted in part*, 146 S. Ct. 2812 (2026). Independent scrutiny and meaningful disclosure safeguards are likewise appropriate when re-review exposes widespread improper withholding. *See Garner v. Amazon.com, Inc.*, No. C21-0750RSL, 2024 WL 4266665 (W.D. Wash. Sept. 23, 2024).

Good cause for modification is clear here. First, Meta's repeated reversals undermine any assumption that a later, unilateral clawback will reflect a sound privilege determination. Second, unrestricted clawbacks would leave Plaintiffs to prepare exhibit lists, witness examinations, and deposition designations without knowing which documents they will be able to use. Third, unrestricted clawbacks would undermine the independent process the Court just established: Meta is required to classify its privilege claims and submit continuing assertions to Special Master review. ECF 3599 ¶¶ 1(b), 1(e)–(f). It cannot avoid that safeguard by producing documents without human review or making a determination of privilege while retaining the power to change its position later. Finally, while Plaintiffs believe there is reason to doubt Meta's representation that its AI re-review is sufficiently thorough and that any later

---

[6] Even as Plaintiffs prepared to file this Motion, Meta initiated a clawback of a downgraded document from its most recent production of materials reviewed using GenAI.

clawbacks will be exercised judiciously, ECF 3667 at 6–7, if that is the case, showing good cause for a genuinely necessary clawback should present little burden.

This relief would not affect unrelated productions protected by the Rule 502(d) Order. It would require Meta to obtain approval before reversing a privilege downgrade made in its re-review process. Plaintiffs propose the following modification:

> Notwithstanding any other provision of this Order, Meta may not give notice of, or otherwise effect, a clawback of any document or portion of a document released from an attorney-client privilege or work-product claim in connection with the re-review conducted under ECF 3599, including the accelerated November 2026 production, without first obtaining leave of Court upon a showing of good cause. Any application must identify the document by Bates number, specify the precise material and legal basis for the renewed claim, include a declaration based on personal knowledge, and explain why the privilege or work-product claim was not resolved before production. No renewed clawback shall take effect absent leave of Court. Existing confidentiality protections shall remain in place pending resolution.

That modification preserves the ability to correct the rare genuine mistake without giving Meta unilateral control over the trial record. The alternative would create a perverse incentive to both Meta and future litigants appearing before this Court: withhold aggressively, release evidence only when the Court intervenes, and then reserve the right to retract it when the adversary is ready to use it. Rule 502(d) protects against inadvertent waiver. It does not excuse improper privilege determinations or shift their consequences to Plaintiffs.

### E. <u>Meta Should Pay the Reasonable Fees and Costs Caused by Its Privilege Abuses.</u>

Meta's conduct has forced Plaintiffs to spend substantial resources uncovering and addressing privilege claims Meta was obligated to assess correctly in the first place. Plaintiffs reviewed deficient logs and redactions, identified and litigated priority documents, briefed Meta's August announcement, argued the issue at repeated hearings, negotiated the Re-Review Protocol, participated in Special Master proceedings, and reviewed voluminous late productions on highly compressed deadlines. They have now been required to bring this motion. These are not ordinary litigation expenses; they are expenses caused by Meta's failure to make supportable privilege determinations during discovery.

Rule 37(b)(2)(C) requires a party that violates a discovery order to pay the reasonable expenses caused by the violation, unless the conduct was substantially justified or the award would be unjust. Rule 26(g)(3) likewise requires an appropriate sanction when counsel certifies an objection without the required reasonable inquiry and without substantial justification. The Court may also award fees under its inherent

authority upon a finding of bad-faith conduct, including recklessness combined with improper purpose. *Chambers*, 501 U.S. at 45–46; *Fink*, 239 F.3d at 993–94. The award must be compensatory and limited to expenses that would not have been incurred but for the sanctionable conduct. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108–10 (2017). Attorneys' fees are appropriate relief for sustained privilege abuses. *See Epic Games*, 781 F. Supp. 3d at 996–98, 1004 (awarding attorneys' fees related to Apple's improper privilege designations and the costs of special-master review); *see also Caputo v. Tungsten Heavy Powder, Inc.*, 96 F.4th 1111, 1121, 1153 (9th Cir. 2024) (recognizing that compensatory sanctions may cover the reasonable cost of pursuing relief and related special-master proceedings).

The record supports that relief here. Meta continued to maintain improper privilege claims throughout discovery, and continued to defend those privilege claims based on attorney participation even after the Court rejected an overbroad attorney-involvement theory. Its own trial witnesses described the use of privilege labels to shield material because it was sensitive, and its re-review has resulted in tens of thousands of withdrawn or narrowed privilege claims. This pattern of privilege abuse supports an inference of reckless over-designation undertaken for an improper purpose: to shield relevant discovery.

Plaintiffs request fees and costs[7] incurred from Meta's August 31, 2026 announcement forward for investigating and challenging its privilege claims, pursuing priority review, participating in Special Master proceedings, analyzing late downgrades, arguing the issue at hearings, and preparing and presenting this motion, to the extent those expenses were caused by sanctionable conduct. Plaintiffs propose submitting a supplemental declaration of fees and costs within 21 days after the Court determines entitlement, with a response from Meta 14 days thereafter.

## CONCLUSION

Meta's belated review has exposed widespread improper withholding of documents Plaintiffs should have had during discovery. The Court-ordered re-review is necessary, but it cannot cure the lost opportunity to examine witnesses, develop expert evidence, and prepare for trial on a complete record. Nor should Meta be permitted to capitalize on those lost opportunities or preserve an unrestricted right to retract the documents it has finally released. Plaintiffs respectfully request that the Court:

[7] Meta already bears the Special Master's fees under the Protocol, and Plaintiffs do not seek those costs again. ECF 3599 ¶ 5.

1. Permit Plaintiffs to use all documents and newly disclosed portions downgraded through Meta's re-review with any trial witness, and preclude Meta's objections based on authenticity, foundation, personal knowledge, or other grounds of admissibility except Rule 403;

2. Instruct the jury regarding Meta's improper withholding and its effect on Plaintiffs' opportunity to develop evidence, in the form proposed in Section III.C. or such other form as the Court finds appropriate;

3. Modify the Rule 502(d) Order (ECF 248) to require prior leave of Court, on a document-specific showing of good cause, before Meta may claw back a document or portion thereof released through the privilege re-review;

4. Award Plaintiffs the reasonable fees and costs caused by Meta's improper privilege assertions and the proceedings necessary to address them, in an amount determined upon supplemental submission; and

5. Grant such other relief as is just and appropriate, including a focused evidentiary hearing if necessary to resolve disputed facts concerning Meta's review practices or improper purpose.

DATED: November 13, 2026

Respectfully submitted,

By: */s/ Lexi J. Hazam*

LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

*Co-Lead Counsel*

## FILER'S ATTESTATION

I, Lexi J. Hazam, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED: November 13, 2026 By: */s/ Lexi J. Hazam*