*[Submitting Counsel on Signature Page]*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCT LIABILITY LITIGATION

This Document Relates To:

*ALL ACTIONS*

MDL No. 3047

Case No. 4:22-md-3047-YGR

**PLAINTIFFS' RESPONSE TO META'S OBJECTIONS TO REPORT NO. 1 OF SPECIAL MASTER**

**[REDACTED - PUBLICLY FILED]**

Judge: Hon. Yvonne Gonzalez Rogers

Magistrate Judge: Hon. Peter H. Kang

Meta's objections ask the Special Master to set aside the Rulings on twelve documents yet offer no evidence from anyone with personal knowledge of them. The objections rest on counsel's characterizations and on declarations from witnesses who say only that they reviewed the documents. Tambling Decl. ¶ 6; Turner Decl. ¶¶ 4–5. The MDL Court has already voiced serious concern about the reliability of Meta's privilege designations and has found Meta's account of a document's purpose contradicted by the document itself. Oct. 9, 2026 Tr. at 10:1–3, 18:6–12; ECF 3450 at 2–4. Because Plaintiffs cannot see the withheld material, the Special Master's *in camera* review is the only independent check on Meta's account of it. That review must rest on what the documents show and on first-hand evidence of why they were created, not on how Meta's attorneys describe them after the fact. Meta bears the burden of showing that each withheld document is protected, and it has not carried that burden. Plaintiffs therefore respectfully request that the Special Master overrule each objection.

## I. SM_000089 (META3047MDL-294-00037131)

The party asserting the attorney-client privilege bears the burden of showing that a communication is privileged, and the privilege is narrowly and strictly construed. *See United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011); ECF 3450 at 2 n.1. When a communication serves both legal and business purposes, it is privileged only if legal advice is its *primary* purpose. *See Epic Games, Inc. v. Apple Inc.*, 161 F.4th 1162, 1179 (9th Cir. 2025). The privilege also protects only communications, not the facts they contain. *See Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981) (explaining that a party may not withhold relevant facts merely because they were communicated to counsel).

After reviewing the single redacted sentence *in camera*, the Special Master found that its vague reference to legal review reveals neither legal advice nor a request for it. Report No. 1 of Special Master ("Report No. 1"), Ex. A, SM_000089. Meta asks the Special Master to set aside that finding but offers no declaration from anyone involved in the chat, and the Tambling Declaration recounts litigation history without once mentioning this document. Obj. at 2; Tambling Decl. ¶¶ 2, 5. The timing of the AG investigation does not fill that gap, because a chat does not become legal advice merely because litigation was in the background. Whether Meta should

continue making public commitments about the efficacy of certain policies and features is a communications decision, and "[l]itigation risk is but one part of business risk." ECF 3450 at 4.

The decision on which Meta relies, *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 2025 WL 327742 (N.D. Cal. Jan. 29, 2025) ("*Uber*"), does not help it; it shows what Meta has failed to provide. There, the court upheld privilege over in-house attorneys' comments on a draft press release only after reviewing the document alongside a declaration from one of the attorneys who wrote the comments and explained the legal advice they conveyed. *Id.* at *7. No comparable evidence supports Meta's claim here. Because Meta offers nothing to rebut what the Special Master saw on *in camera* review, the objection should be overruled.

## II. SM_000134 (META3047MDL-PLOG005-000100)

Work-product protection[1] applies only to documents prepared in anticipation of litigation by or for a party or its representatives. *See Richey*, 632 F.3d at 567. The party claiming protection bears the burden of showing that it applies. *See Arfa v. Zionist Org. of Am.*, 2014 WL 815496, at *2 (C.D. Cal. Mar. 3, 2014). When a document serves both litigation and business purposes, it qualifies only if it "would not have been created in substantially similar form but for the prospect of litigation." *Richey*, 632 F.3d at 568 (internal quotations omitted).

The email does not meet that standard. Deciding whether to pursue research is a business decision Meta had to make regardless of litigation, and an email assigning tasks on those studies would have been sent in the same form regardless of litigation. *See Am. Civ. Liberties Union of N. Cal. v. U.S. Dep't of Just.*, 880 F.3d 473, 486 (9th Cir. 2018) ("*ACLU*") (holding that DOJ instructions to investigators were not work product because they would have been prepared whether or not litigation followed). The Special Master likewise found that the email "discusses tasks to do" rather than legal advice. Report No. 1, Ex. A, SM_000134.

[1] Meta logged SM_000134, SM_000277, SM_000280, SM_000282, and SM_000283 as protected by both the attorney-client privilege and the work-product doctrine but now asserts only work-product protection over them. Report No. 1, Ex. A, SM_000134, SM_000277, SM_000280, SM_000282, SM_000283; Obj. at 3–5. Meta has therefore abandoned its privilege claims over these documents and may not revive them on appeal. Joint Stipulation and Order Approving Privilege Re-Review Protocol ("Protocol"), ECF 3599 ¶ 2(c)(ii).

Meta's only contrary evidence is the Tambling Declaration, which lacks foundation. Ms. Tambling does not claim to have sent, received, or discussed the email; she states only that she reviewed it. Tambling Decl. ¶ 6; *see also Uber*, 2025 WL 327742, at *4–5, *13 n.9 (finding declarations insufficient where the declarants had no personal involvement and described only what appeared on the face of the documents). Her conclusion that the email "would not have been prepared except for this assessment by the Legal Department" simply restates the standard above without supporting facts. Tambling Decl. ¶ 6. Meta has not shown that this email is work product, and its objection should be overruled.

### III. SM_000276 (META3047MDL-PLOG004-000092), SM_000277 (META3047MDL-PLOG004-000164), SM_000280 (META3047MDL-PLOG004-000855), SM_000282 (META3047MDL-PLOG005-000338), and SM_000283 (META3047MDL-PLOG005-000341)

Meta has not shown that these compilations would have taken a different form without the prospect of litigation, and its own declarant concedes they served other purposes Mr. Turner states that the information was compiled for anticipated litigation "(among other reasons)." Turner Decl. ¶ 6. When a document has "a true independent purpose," work-product protection is "less likely." *Arfa*, 2014 WL 815496, at *4 (internal quotation marks omitted). Meta never identifies those other reasons. It also never explains how litigation changed what the compilations contain, which is the showing *Richey* requires. 632 F.3d at 568.

Meta's own documents supply the reasons its declarant leaves out. First, the compilations were prepared as Meta's leadership sought answers about its youth research. In a September 2021 chat, [redacted] asked [redacted], the compilations' author, [redacted]. She needed the answer because [redacted]. Ex. 1 (META3047MDL-277-00001953). Hours later, [redacted]. *Id.* at -1955. Briefing executives on the company's own research is a business function, not preparation for litigation.

Second, Meta's production decisions confirm that business purpose. In late September and early October 2021, Meta prepared summaries of the internal research at issue in the Haugen leaks.

Ex. 2 (META3047MDL-322-00000991); Ex. 3 (META3047MDL-294-00099971); Ex. 4 (META3047MDL-321-00000017). Meta initially withheld those summaries but has since produced them without claiming any protection. Meta has also produced a version of [redacted] one of the very documents at issue here. Ex. 5 (META3047MDL-091-00005304). Meta offers no reason to treat these compilations differently from summaries it prepared at the same time, in response to the same leaks, and has already produced.

Meta's evidence does not fill the gap. Meta's objection asserts that in-house counsel directed the compilations. Obj. at 4. Its declarant does not say so; he states only that the information "was compiled." Turner Decl. ¶ 6. That omission matters, because whether counsel directed a document's preparation is central to the inquiry. *See Arfa*, 2014 WL 815496, at *6 (considering whether counsel directed the document and whether litigation was then anticipated). Like Ms. Tambling, Mr. Turner claims only to have reviewed the documents. Turner Decl. ¶¶ 4–5. His assertion that the document was later shared with outside counsel "[d]emonstrat[es] that purpose" is advocacy the Protocol bars. Turner Decl. ¶ 6; ECF 3599 ¶ 2(b)(iv). Sharing documents in an investigation that began in November 2021 also says nothing about why they were created two months earlier.

Even if the compilations were work product, Plaintiffs' substantial need would overcome that protection. Fed. R. Civ. P. 26(b)(3)(A)(ii); *Arfa*, 2014 WL 815496, at *4 (explaining that substantial need and undue hardship can overcome ordinary work product). Meta acknowledges that these cases allege Meta knew from its own internal research that its services harmed young users. Obj. at 4. An inventory of that research, organized as Meta itself organized it, has no substitute among the underlying studies.

Finally, the Special Master already protected anything counsel contributed. The Special Master found most of the content non-legal and permitted Meta to redact legal advice and comments by legal staff. Report No. 1, Ex. A, SM_000276–283. That ruling preserves counsel's mental impressions, which is all Rule 26(b)(3)(B) requires. What Meta now seeks to withhold is the underlying research itself. Meta cannot convert ordinary business research into work product by

sharing it with counsel after the fact, and its objections should be overruled.

**IV. SM_000298 (META3047MDL-PLOG009-016825)**

The Ruling already protects every legal communication in this chat, and Meta identifies nothing more that deserves protection. The Special Master ordered the chat produced with legal advice and comments by legal staff redacted. Report No. 1, Ex. A, SM_000298. Meta nonetheless seeks to withhold the entire chat, arguing that lawyers sought technical information from a non-lawyer to evaluate privacy and advertising compliance. Obj. at 6. Meta never identifies a privileged communication beyond what the Ruling already allows it to redact. *See Richey*, 632 F.3d at 567 (reversing a ruling that an entire file was privileged where the proponent identified no specific privileged communications).

By Meta's own description, what remains is technical information that a non-lawyer supplied. Obj. at 6. Those facts do not become privileged because they were shared with counsel. *See Upjohn*, 449 U.S. at 395–96 (explaining that a party may not withhold relevant facts merely because they were communicated to counsel). *Upjohn* protects an employee's communications with counsel when made at the company's direction to obtain legal advice. *Id.* at 394–95. Meta offers no declaration showing those circumstances here. Its account of the chat is also incomplete: Meta describes one non-lawyer, but Meta's Index of Documents ("Index") lists two additional non-lawyer participants, including the listed sender. Obj. at 6; Report No. 1, Ex. A, SM_000298.

Meta's description also confirms the chat's business purpose. According to Meta, the participants were evaluating "the most defensible way" to comply with Apple's tracking framework and Meta's advertising contracts. Obj. at 6. That is compliance work, which is not privileged unless legal advice is its *primary* purpose. *See Epic Games*, 161 F.4th at 1179–80 (holding that compliance presentations focused on business options were not privileged).

B.F.'s role does not change the result. Meta's claim about his role rests on an unsworn, recently updated list of "Legal Actors," while the employee list before the Special Master identified him as a software engineer. Obj. at 6; Report No. 1, Ex. A, SM_000650. A recently updated label cannot change B.F.'s role when the chat occurred. Meta's objection should be overruled.

**V. SM_000302 (META3047MDL-PLOG009-016866)**

SM_000302 and SM_000650 are part of the same chat thread and bear the same thread identifier. Report No. 1, Ex. A, SM_000302, SM_000650. When the Special Master found that B.F.'s redacted language in SM_000650 was not legal advice, Meta responded, "No objection - will produce." Meta's Index of Documents at SM_000650. Meta cannot accept that Ruling for one part of the thread and dispute the same reasoning for another. Obj. at 7. The rest of the objection fails for the reasons stated in Section IV, and it should be overruled.

**VI. SM_000310 (META3047MDL-PLOG009-017419)**

Meta never identified what it claimed in this spreadsheet, and an objection cannot cure that failure. The Protocol required Meta to identify clearly whether it asserted privilege over a document in whole or part, and to mark any privileged portions with transparent redaction boxes. ECF 3599 ¶ 1(d). Meta concedes that its markings in Excel files can be difficult to identify. Obj. at 8 n.7. The Special Master ruled on the submission Meta made. A document's "AC-Priv" label does not substitute for identifying the specific communications Meta claims. *Uber*, 2025 WL 327742, at *5 n.2 (holding that boilerplate privilege labels are insufficient without extrinsic support).

The Special Master ruled that the spreadsheet is not privileged because a list of meeting attendees is not privileged. Report No. 1, Ex. A, SM_000310. Meta agrees that the Ruling accurately describes the first tab, a list of training attendees, yet still seeks to withhold the entire spreadsheet. Obj. at 8. At a minimum, that tab should be produced immediately.

Meta's only argument for the second tab is that it contains employees' requests for legal advice about the scope of the attorney-client privilege. *Id.* Meta supports that description with no evidence. It offers no declaration from the attorney who led the training or from any employee who posed a question. Instead, Meta argues by analogy to a prior ruling that an in-house attorney's explanation of the privilege was itself privileged. Obj. at 8 (citing Special Master E-Binder Tab 68). That ruling protected a lawyer's legal advice. It says nothing about questions employees raised during a group training session and recorded in a shared spreadsheet. Those questions are privileged only if each was a confidential request for legal advice made primarily for that purpose. *See Epic Games*, 161 F.4th at 1179 (requiring that legal advice be the primary purpose of a dual-purpose

communication). Meta offers to identify the specific cells it claims are privileged, Obj. at 8 n.7, but that identification belonged in its original submission, and its objection cannot supply it now. As such, Meta's objection should be overruled.

**VII. SM_000315 (META3047MDL-PLOG009-032669)**

Meta contests only three passages: a passage designating certain product features as "Tier 3," a section on "Litigation Risks Mitigation," and an employee's question to in-house counsel. Obj. at 9. The first two passages describe a product rollout plan and a risk mitigation strategy. Those are business decisions, and they do not become privileged because counsel's views informed them. *Uber*, 2025 WL 327742, at *3 (holding that a policy informed by legal advice was not itself privileged). The MDL Court has held that a lawyer's review of a business document "with an eye for litigation risk does not transform that lawyer's edits from business advice into attorney-client advice." ECF 3450 at 4.

The third passage, as Meta describes it, is an employee's question about how the company should word its internal objectives in light of language used by plaintiffs in pending litigation. Obj. at 9. How a company describes its own business goals is a business question. Meta offers no declaration from the employee or counsel showing that legal advice was the primary purpose of the request. *See Epic Games*, 161 F.4th at 1179 (requiring that legal advice be the primary purpose of a dual-purpose communication). At most, any redaction should be limited to the question itself, with the surrounding text produced. *See id*. None of the three passages reflect legal advice as its primary purpose, and thus, Meta's objection should be overruled.

**VIII. SM_000447 (META3047MDL-294-00014041)**

Meta's own description of this redaction defeats its objection. Meta objects only to the first redaction in this draft research screener. Obj. at 10. Even on Meta's account, that redaction is a lawyer's comment on how a response option should be worded. *Id*. The MDL Court has held that this kind of edit to a business document is not privileged. ECF 3450 at 4. Meta's effort to distinguish the Court's decision rests on counsel's description of the comment, not evidence. No declaration from the comment's author accompanies the objection, nor does Meta claim that the comment itself cites or discusses any privacy law. The privacy laws Meta cites in footnote 8 appear only in its

brief, as after-the-fact argument about why the comment might have been legal advice. Obj. at 10 n.8. How a study frames the answer choices offered to teen participants is a research design decision, and a lawyer's participation in that decision does not make legal advice its primary purpose. *See Epic Games*, 161 F.4th at 1179-80 (holding that compliance presentations focused on business options were not privileged).

Meta's authorities do not hold otherwise. *Upjohn* recognized that corporations "constantly go to lawyers to find out how to obey the law," 449 U.S. at 392 (internal quotation omitted), but it did not hold that every lawyer comment on an operational document is privileged. Likewise, *United States v. Chen* confirms that a person's status as a lawyer does not "ipso facto" make communications with that person privileged. 99 F.3d 1495, 1501 (9th Cir. 1996). Accordingly, Meta's objection should be overruled.

## CONCLUSION

Meta's objections ask the Special Master to replace findings made during *in camera* review with counsel's characterizations of documents Plaintiffs cannot see. Meta has not carried its burden as to any of them. Plaintiffs therefore respectfully request that the Special Master overrule each of Meta's objections and, consistent with Report No. 1, direct Meta to produce the materials at issue.

DATED: November 16, 2026

Respectfully submitted,

*/s/ Michael Weinkowitz*

MICHAEL M. WEINKOWITZ
ALICIA ARMSTRONG
**GIBBS MURA, LLP**
One Commerce Center
2005 Market Street, 32nd Floor
Philadelphia PA 19103
Telephone: 215-486-0150
mweinkowitz@classlawgroup.com
aarmstrong@classlawgroup.com

*Plaintiff Leadership Committee and*
*Co-Chair of the School District Committee*

LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

*Co-Lead Counsel for Plaintiffs*