WILLIAMS & CONNOLLY LLP
Ashley W. Hardin, *pro hac vice*
J. Andrew Keyes, *pro hac vice*
Neelum J. Wadhwani (SBN 247948)
680 Maine Avenue SW
Washington, DC 20024
Tel.: (202) 434-5000
ahardin@wc.com
akeyes@wc.com
nwadhwani@wc.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

*[Additional parties and counsel listed on signature pages]*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION,<br><br>THIS DOCUMENT RELATES TO:<br><br>*Charleston County School District v. Meta Platforms Inc., et al.* | MDL No. 3047<br><br>Case No.: 4:23-cv-04659-YGR<br><br>**PARTIES' JOINT PROPOSED JURY INSTRUCTIONS (CHARLESTON COUNTY SCHOOL DISTRICT) (REVISED)**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

## I. Index

Plaintiff Charleston County School District and Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Instagram, LLC (collectively, "Meta"); Snap, Inc. ("Snap"); ByteDance Ltd.; ByteDance Inc.; TikTok Ltd.; TikTok LLC; and TikTok Inc. (collectively, "TikTok"); and Google LLC and YouTube LLC (collectively, "YouTube"), by and through their attorneys of record (collectively, the "Parties"), hereby submit these Joint Proposed Jury Instructions pursuant to Paragraph 3(g) of the Court's Standing Order Re: Pretrial Instructions in Civil Cases (last updated March 17, 2025) and the Pretrial Schedule in this matter (ECF No. 40).[1]

The Parties respectfully reserve the right to amend or supplement these proposed instructions and their objections thereto as the case proceeds towards and progresses through the evidence at trial, as the Parties continue to meet and confer regarding these instructions, and as the Court considers these proposals and objections.

| No. | Description | Whether the Parties Stipulate or Object |
| --- | --- | --- |
| **Preliminary Instructions** | | |
| 1 | Duty of Jury | Stipulate. |
| 2 | Claims and Defenses | Charleston objects to this instruction in part. The Parties propose partial competing instructions. |
| 3 | Burden of Proof – Preponderance of the Evidence | Stipulate. |
| 4 | Companies and Public Entities | The Parties propose partial competing instructions. |
| 5 | Two or More Parties – Different Legal Rights | The Parties propose partial competing instructions. |
| 6 | What is Evidence | Stipulate. |
| 7 | Direct and Circumstantial Evidence | Stipulate. |
| 8 | What Is Not Evidence | Stipulate. |

[1] The Parties submit, as Exhibits A and B, redlines reflecting the Parties' proposed modifications to the 9th Circuit Model Instructions, consistent with the Court's Standing Order at Paragraph 3(g)(ii)(H). The Parties understand that this instruction relates solely to the 9th Circuit Model Instruction, and does not apply to any model or pattern instructions regarding state law. However, the Parties are happy to provide such redlines against the state law model instructions if it would be helpful to the Court.

| No. | Description | Whether the Parties Stipulate or Object |
|---|---|---|
| 9 | Evidence for a Limited Purpose | Stipulate (conditioned on limiting instruction being given). |
| 10 | Ruling on Objections | Stipulate (the Parties propose giving instruction before the start of evidence). |
| 11 | Credibility of Witnesses | Stipulate. |
| 12 | Publicity During Trial | Stipulate (the Parties propose giving instruction before the start of evidence). |
| 13 | No Transcript Available | Stipulate (the Parties propose giving instruction before the start of evidence). |
| 14 | Bench Conferences and Recesses | Stipulate (the Parties propose giving instruction before the start of evidence). |
| 15 | Video Deposition | Stipulate (the Parties propose giving instruction before the start of evidence). |
| 16 | Expert Opinion Testimony | Stipulate. |
| 17 | Protection for Publishing and Expressive Activity | The Parties propose complete competing instructions. |
| N/A | Transition Instruction | Stipulate. |
| **First Claim – Negligence** | | |
| 18 | Negligence – Elements | The Parties propose partial competing instructions. |
| 19 | Negligence – Proximate Cause | The Parties propose complete competing instructions. |
| 20 | [Intentionally omitted.] | |
| 21 | Negligence – Concurring Cause | Defendants object to this instruction in full. The Parties propose complete competing instructions. |
| 22 | Negligence – Intervening Cause | Defendants object to this instruction but propose an instruction in the event that an instruction is given on concurring cause. Charleston objects to this instruction in full. The Parties propose complete competing instructions. |
| **Additional Substantive Instructions** | | |
| 23 | Statute of Limitations | Charleston objects to this instruction in full. The Parties propose partial competing instructions. |
| 24 | Comparative Negligence | Charleston objects to this instruction in full. The Parties propose complete competing instructions. |
| 25 | Assumption of Risk | Charleston objects to this instruction in full. The Parties propose partial competing instructions. |

| No. | Description | Whether the Parties Stipulate or Object |
|---|---|---|
| 26 | Damages – Nominal Damages | Charleston objects to this instruction in full. The Parties propose partial competing instructions. |
| 27 | Damages – Actual Damages | The Parties propose partial competing instructions. |
| 28 | Damages – Elements of Actual Damages in Negligence Cases | Charleston objects to this instruction insofar as it proposes a separate actual-damages instruction. The Parties propose partial competing instructions. |
| 29 | Damages – Future Damages | Defendants object to this instruction in full. Charleston objects to this instruction insofar as it proposes a separate future-damages instruction. The Parties propose partial competing instructions. |
| 30 | Damages – Punitive Damages | Defendants object to this instruction in full. The Parties propose partial competing instructions. |
| 31 | Burden of Proof – Clear and Convincing Evidence | Defendants object to the punitive-damages instruction and therefore object to Instruction No. 31. The Parties stipulate as to language. |
| 32 | Damages – Pre-Existing Condition | Defendants object to this instruction in full. The Parties propose complete competing instructions. |
| 33 | Damages – Double Recovery | Charleston objects to this instruction in full. |
| 34 | Damages – Duty to Mitigate Damages | Charleston objects to this instruction in full. The Parties propose partial competing instructions. |
| **STOP (CLOSING ARGUMENTS)** | | |
| **Post-Closing Instructions** | | |
| 35 | Duty to Deliberate | Stipulate. |
| 36 | Consideration of Evidence | Stipulate. |
| 37 | Communications with Court | Stipulate. |
| 38 | Return of Verdict | Stipulate. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION

Case No. 4:23-CV-04659-YGR

This Document Relates to:

*Charleston County School District v. Meta Platforms Inc., et al.*

**JURY INSTRUCTIONS (COVER PAGE)**

Dated: ________________________

______________________________________

UNITED STATES DISTRICT JUDGE

## II. [Preliminary Instructions]

### 1. INSTRUCTION NO. 1: DUTY OF JURY

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

**AUTHORITY**: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2025 ed., last updated September 2025) ("Ninth Cir. Model Instructions"), Instruction No. 1.4.

**DATE SUBMITTED**: January 28, 2026

## 2. INSTRUCTION NO. 2: CLAIMS AND DEFENSES

**[*Charleston objects to instructing the jury on affirmative defenses in this instruction because Defendants have not demonstrated they are entitled to affirmative defenses instructions.***

***Defendants' proposal in green text; Charleston's proposal in blue text.*]**

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The Plaintiff in this case is the Charleston County School District, also referred to as "Plaintiff" or the "School District." The Defendants in this case are four separate groups of social media technology companies:

(1) Meta Platforms, Inc. f/k/a Facebook, Inc. and Instagram, LLC, referred to collectively as "Meta;"

(2) Snap, Inc., referred to as "Snap."

(3) TikTok Inc., ByteDance Inc., ByteDance Ltd., TikTok Ltd., and TikTok, LLC, referred to collectively as "TikTok;" and

(4) YouTube, LLC and Google LLC, referred to collectively as "YouTube."

Collectively, these four groups social media companies are referred to as "Defendants."

Charleston County School District brings a claim of negligence against each Defendant. Charleston County School District has the burden of proving its claim. Later, I will explain the legal requirements that the School District must prove for its claim.

Defendants deny the School District's claims. Defendants also assert four three affirmative defenses: (1) failure to mitigate, (2) (1) comparative negligence, (3) (2) statute of limitations, and (4) (3) assumption of risk. Defendants have the burden of proof on these affirmative defenses. If Defendants meet their burden of proof on any of these affirmative defenses, it will mean you cannot find for the School District, or it could reduce or eliminate Charleston County School District's claimed damages. Charleston County School District denies Defendants' affirmative defenses.

**PLAINTIFF'S AUTHORITY**: Ninth Circuit Manual of Model Jury Instructions 1.5.

**DEFENDANTS' AUTHORITY**: Ninth Cir. Model Instructions, Instruction 1.5.

**DATE SUBMITTED**: January 28, 2026

**DATE REVISED**: November 23, 2026

### 1. Plaintiff's Argument

**Social Media Companies.** Defendants' refusal to describe themselves as "social media companies" is unjustifiable. Demanding that they only be called "technology companies" is unduly restrictive for no legitimate reason, confusing, and prejudicial because it does not match reality, the testimony, or documentary evidence that will be admitted at trial, which commonly refers to Defendants as social media companies, including their own press releases. Nor is it prejudicial to Defendants to call them social media companies; that *is* what they are, hence the case caption.

**Evidence Does Not Support Instruction on Affirmative Defenses.** Charleston also objects to Defendants' instruction on affirmative defenses. Under South Carolina law, "the trial court is required to charge only principles of law that apply to the issues raised in the pleadings and developed by the evidence in support of those issues." *Clark v. Cantrell*, 529 S.E.2d 528, 539 (S.C. 2000); *see also State v. Gaines*, 667 S.E.2d 728, 732 (S.C. 2008). As explained in Charleston's specific objections to Defendants' proposed instructions on each of these defenses, Defendants have not substantiated any basis from which the jury may find failure to mitigate, comparative negligence, a statute of limitations bar, or assumption of risk. Thus, instructing on those defenses would "consist[] of irrelevant and inapplicable principles [that] may confuse the jury." *Berberich v. Jack*, 709 S.E.2d 607, 611 (S.C. 2011). If the Court denies any of Defendants' affirmative defense instructions, it should remove mention of those instructions here.

**Mitigation is Not a Defense to Claims.** Plaintiffs object to including "failure to mitigate" as an affirmative defense to "School District's *claims*." (emphasis added); *see infra* [Failure to Mitigate]. Failure to mitigate is a limitation on damages, not a defense to liability. *See Baril v. Aiken Reg'l Med. Centers*, 2005 WL 7083683, at *2 (S.C. Ct. App. Apr. 19, 2005) (rejecting defendant's argument that plaintiff "should be barred from any recovery in this action because she failed to mitigate her damages"). Thus, although mitigation is a "defense" in that Defendants bear the burden of proof, *see Sloan Const. Co. v. Southco Grassing, Inc.*, 717 S.E.2d 603, 608 (S.C. 2011), enumerating it alongside assumption of risk and comparative fault as a defense to Charleston's "claims" will likely mislead the jury into believing that a finding of failure to mitigate operates as a complete bar to recovery.

### 2. Defendants' Argument

Defendants' Instruction is consistent with Ninth Circuit Jury Instructions and the Court's Standing Order Re: Pretrial Instructions in Civil Cases ("Standing Order").[2] Defendants' Instruction is modeled after Model Instruction 1.5, which requires: "a brief summary of the positions of the parties" and goes on to identify the parties, "plaintiff's claims," "defendant's . . . affirmative defenses," which party has the burden of proving plaintiff's claims and defendant's affirmative defenses, and the denials of the same. Defendants' Instruction includes all of this information. By contrast, Plaintiff objects to instructing on affirmative defenses—a position that is in direct opposition to Model Instruction 1.5. Plaintiff can raise that argument after the close of evidence, but it did not move for summary judgment on these defenses so they remain in the case. Plaintiff's argument on mitigation is unfounded. Defendants' proposed instruction makes clear that not all affirmative defenses are a bar on liability: it states that the defenses "could reduce or eliminate Charleston County School District's claimed damages."

Defendants object to the use of "social media" to describe their platforms. YouTube and Snap do not agree with the characterization of their platforms as "social media," and that will be a contested fact at trial. Plaintiff factually asserts that references to "social media" in the record mean these Defendants, but that is disputed.

[2] Defendants maintain that summary judgment should be granted because Plaintiffs have not identified any actionable conduct that **caused** their alleged harms, and they submit these proposed instructions without waiving such arguments.

### 3. INSTRUCTION NO. 3: BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more likely true than not true.

Charleston County School District has the burden of proving its claim for negligence by a preponderance of the evidence. Defendants have the burden of proving their affirmative defenses by a preponderance of the evidence. You should base your decision on all of the evidence, regardless of which party presented it.

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions 1.6.

**DATE SUBMITTED**: January 28, 2026

**DATE REVISED**: November 23, 2026

## 4. INSTRUCTION NO. 4: COMPANIES AND PUBLIC ENTITIES

**[*Defendants' proposal in green text.*]**

The Defendants in this case are companies. The Plaintiff in this case is a public entity. All parties are equal before the law. Companies and public entities are entitled to the same fair and conscientious consideration by you as any party. Under the law, Plaintiff and Defendants are each considered to be a person and can only act through its subsidiaries, employees, agents, directors, or officers. Therefore, Plaintiff and Defendants are each responsible for the acts of its subsidiaries, employees, agents, directors, and officers performed within the scope of their authority. An employee, agent, director, or officer is acting within the scope of authority if he or she is engaged in the performance of duties which were expressly or impliedly assigned to them by the corporation.

**AUTHORITY**: Ninth Cir. Model Instructions, Instructions 4.1, 4.2, and 4.5 (modified).

**DATE SUBMITTED**: January 28, 2026

**1. Plaintiff's Argument**

The parties began with the Ninth Circuit Model Civil Jury Instructions 4.1 (Corporations and Partnerships – Fair Treatment) and 4.2 (Liability of Corporations – Scope of Authority Not in Issue), which instruct on treating corporate parties fairly and explain that corporations can be held accountable through their employees and officers. The parties agreed to revise the instruction to say "companies" rather than "corporations" (as LLCs are technically companies, but not corporations), and to instruct the jury that they also should not treat Bellwether School District Plaintiffs differently by nature of the fact that they are public entities.

The parties conferred about the applicability of Model Civil Jury Instruction 4.2, which instructs the jury on how to determine liability for corporations—a pattern instruction that contemplates that scope of authority is *not* at issue. Plaintiffs believe this instruction may be useful, as the jury will hear testimony from both parties' employees.

However, Defendants also suggested including language from Model Civil Jury Instruction 4.5 (Agent – Scope of Authority Defined), which goes on to describe what conduct falls "within the scope of authority." Plaintiffs objected to this language, because no party has suggested that any person was not acting within the scope of their authority. Further, Defendants have failed to bring to Plaintiffs' attention any live dispute regarding the liability of parent corporations with respect to the actions of their subsidiaries.[3] Because the jury will not be asked to determine when an employee acts within the scope of their authority, that instruction language is not relevant for the purposes of this case, and risks confusing the jury about what issues they must decide. When given this explanation, Defendants then objected that language from Model Instruction 4.5 is necessary to prevent juror confusion about the meaning of the reference to "scope of authority" in Model Instruction 4.2. The solution there is simple: rather than instruct the jury on an irrelevant concept which may introduce new legal issues and confusion, just remove the language regarding the scope of an employee's authority from Model Instruction 4.2.

---

[3] *E.g.* Order on Stipulation to Dismiss Certain Meta Defendants, ECF 2401 at 1 ("Meta Platforms Inc. agrees not to assert as a defense to liability in this Matter that it is not responsible for any actions or inactions alleged by Bellwethers as wrongful on the grounds that such actions or inactions were taken in whole or in part by any or all of the Meta Subsidiaries.").

Plaintiffs' proposal informs the jury on all relevant issues of law that will help them resolve the questions they are tasked with answering.

**2. Defendants' Argument**

The Parties jointly propose giving an instruction based on Ninth Circuit Model Instructions 4.1 and 4.2, slightly modified for the facts of this case. In doing so, Defendants also seek to include in this instruction Ninth Circuit Model Instruction 4.5, which is similarly modified for the facts of this case. Plaintiff objects to the inclusion of language from Model Instruction 4.5 ("An agent is acting within the scope of authority if the agent is engaged in the performance of duties which were expressly or impliedly assigned to the agent by the principal."), and the final clause of Model Instruction 4.2 ("Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.").

Defendants propose this language because the "scope of authority" is integral to understanding and then applying agency law. What is more, Plaintiff provides no authority for the position that Defendants can be held liable for acts of their agents performed outside the scope of their authority. Because several Defendant groups include parent companies and subsidiaries, this language is necessary for the jury to determine potential liability of parent organizations for actions taken by subsidiaries or employees of subsidiaries. *See, e.g.*, *Brit. Telecommunications PLC v. IAC/InteractiveCorp*, 356 F. Supp. 3d 405, 409 (D. Del. 2019) (holding that "a parent corporation is held liable for the actions of its subsidiary if the parent directed or authorized those actions" under an agency theory if the relationship is directly related to the cause of action (citing *Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.*, 842 F.2d 1466, 1477 (3d Cir. 1988))); *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017) (proving agency relationship between parent and subsidiary requires establishing that the agent "'act[ed] on the principal's behalf and subject to the principal's control.'" (quoting Restatement (Third) of Agency § 1.01 (2006))).

The Court should give Defendants' requested language in this instruction because it clearly states the law—and Plaintiff fails to provide any basis for rejecting a model instruction.

**5. INSTRUCTION NO. 5: TWO OR MORE PARTIES – DIFFERENT LEGAL RIGHTS**

**[*Defendants' proposal in green text.*]**

You should decide the case as to each party separately. Unless otherwise stated, the instructions apply to all parties. A Defendant is responsible only for its own conduct, and one Defendant cannot be liable as a result of conduct by a different Defendant.

**AUTHORITY**: Ninth Cir. Model Instructions, Instruction 1.8 (modified).

**DATE SUBMITTED**: January 28, 2026

**DATE REVISED**: November 23, 2026

**1. Plaintiff's Argument**

Plaintiffs propose the pattern instruction language from Ninth Circuit Model Civil Jury Instruction 1.8. Defendants' additional language ("A Defendant is responsible only for its own conduct, and one Defendant cannot be liable as a result of conduct by a different Defendant.") invites juror confusion and misstates the law for causation by multiple tortfeasors, which each Bellwether School District Plaintiff alleges.

"Where two or more causes combine to produce injury, a person is not relieved from liability for negligence because he is responsible for only one of the causes." Anderson, S.C. Requests to Charge – Civil, 20-3. In cases involving multiple alleged tortfeasors whose actions allegedly contributed to an indivisible harm, the plaintiff is required to show that each defendant's negligence was a "proximate concurring cause, that is, one that was so efficient in causation that, but for it, the injury would not have occurred." *Id*. If a defendant is determined to be a cause of the indivisible harm, then it is presumptively liable for causing the *entire* harm. This means that Defendants' language that a Defendant "is responsible only for its own conduct" is not wholly true. Plaintiffs must show that each Defendant was a cause-in-fact and a proximate cause of the harm the Plaintiff alleges, but once shown, all Defendants are responsible for the entire harm.

In South Carolina, every defendant is jointly-and-severally liable for the full amount of damages. *Pratt v. Amisub of SC, Inc.*, 912 S.E.2d 268, 282-83 (S.C. Ct. App. 2025). For purposes of causation, the defendant is considered to have *caused* the harm as a whole. *See Smith v. Tiffany*, 799 S.E.2d 479, 481 (S.C. 2017); S.C. Code § 15-38-15. The only way that a defendant can avoid responsibility for causing an entire indivisible harm is to show that its conduct is less than fifty percent of the total fault. S.C. Code §15-38-15(A). Defendants have the burden to show each aspect of apportionment—and they can only argue the issue to the jury *after* a liability verdict against them. S.C. Code § 15-38-15(C)(3)(b); *see also* Restatement (Second) Torts § 433B(2) (1965) ("Where the tortious conduct of two or more actors has combined to bring about harm to the plaintiff, and one or more of the actors seeks to limit his liability on the ground that the harm is capable of apportionment among them, the burden of proof as to the apportionment is upon each such actor.").

Otherwise, the harm is considered indivisible, and all contributing tortfeasors are considered responsible for the whole. *See* S.C. Code §15-38-15(A); Restatement (Second) Torts § 433A.

Because Defendants' proposed language suggests that liability must be limited according to each Defendants' causal contribution to the harm, despite no Defendant proving that any Plaintiff's harm is capable of divisibility, the proposal misstates the law and invites jurors to err in their consideration of the evidence. The Court should reject Defendants' added language, and instead give the Ninth Circuit pattern language as written.

**2. Defendants' Argument**

Defendants propose adding a sentence to Ninth Circuit Model Instruction 1.8 to explicitly instruct the jury on the implications of "decid[ing] the case as to each party separately." This additional language conveys the black letter law that one party cannot be held liable for the actions of another unless the principles of agency (on which the jury will be instructed) require such a finding of liability. In all other instances, a defendant is only responsible for its own conduct. Moreover, the law requires that Plaintiff prove that its injuries were individually caused by each defendant. *See McKnight v. S.C. Dep't of Corr.*, 684 S.E.2d 566, 569 (S.C. Ct. App. 2009) ("When the cause of a plaintiff's injury may be as reasonably attributed to an act for which the defendant is not liable as to one for which he is liable, the plaintiff has failed to carry the burden of establishing the defendant's conduct proximately caused his injuries."). Thus, Plaintiff has no legal basis to object to this instruction, which would be helpful to the jury alongside aiding in avoiding confusion over how to view corporate separateness among distinct legal entities.

This additional sentence "A Defendant is responsible only for" will also prevent confusion for the jury. Repeatedly throughout the proposed substantive instructions, Defendants are referenced as a group. Defendants have objected to this "lumping together" of Defendants and proposed alternative language where appropriate. Despite these objections, however, the jury may still fail to appropriately consider Plaintiff's claims against each Defendant separately or to recognize what it means to consider the claims separately. And this concern becomes particularly acute if the Court does not adopt Defendants' proposed language in the substantive instructions. Thus, this modification to the Model Instruction will aid the jury in faithfully applying the law.

Plaintiff's statement that "In South Carolina, every defendant is jointly-and-severally liable for the full amount of damages" is incorrect. S.C. Code § 15-38-15(A) is clear: "joint and several liability does not apply to any defendant whose conduct is determined to be less than fifty percent of the total fault for the indivisible damages." And *Smith v. Tiffany* does not hold that a "defendant is considered to have *caused* the harm as a whole," as Plaintiff claims. 799 S.E.2d 479, 481–85 (S.C. 2017). That case ruled on, as a matter of statutory interpretation, who could properly be included for fault allocation under S.C. Code § 15-38-15. *See Smith*, 799 S.E.2d at 481–85.

Plaintiff's arguments about indivisible injury miss the mark—there has been no determination that Plaintiff's injury is indivisible, and it is not. Plaintiff bears the burden to establish that its purported injuries are indivisible. South Carolina has a statutory requirement that the jury apportion *fault* in cases of indivisible injuries: "if indivisible damages are determined to be proximately caused by more than one defendant, joint and several liability does not apply to any defendant whose conduct is determined to be less than fifty percent of the total fault for the indivisible damages." S.C. Code § 15-38-15(A). In that situation, "[a] defendant whose conduct is determined to be less than fifty percent of the total fault shall only be liable for that percentage of the indivisible damages determined by the jury or trier of fact" and the jury must apportion specific percentages of fault to the plaintiff and the defendant(s). *Id.* & § 15-38-15(C). However, Plaintiff's assertion that it is Defendants' burden "to show that its conduct is less than fifty percent of the total fault" and "to show each aspect of apportionment" is incorrect. The statute does not impose that burden on Defendants, and Plaintiff cites no other authority holding that the burden on this issue shifts to Defendants. *See* S.C. Code § 15-38-15. Accordingly, it would be error to so instruct the jury. Plaintiff has not established that its injuries are indivisible. This is not the case where a plaintiff suffers a single injury, like a broken leg, as a result of multiple alleged tortfeasors. Plaintiff is claiming damages based on thousands of different behavioral incidents relating to thousands of different children over the years (along with discrete out of pocket costs paid to different organizations over many years). These separate incidents and resulting alleged harms each stem from independent, divisible causes.

### 6. INSTRUCTION NO. 6: WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

(1) the sworn testimony of any witness;

(2) the exhibits that are admitted into evidence;

(3) any facts to which the lawyers have agreed; and

(4) any facts that I have instructed you to accept as proved.

**AUTHORITY**: Ninth Cir. Model Instructions, Instruction 1.9.

**DATE SUBMITTED**: January 28, 2026

## 7. INSTRUCTION NO. 7: DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

**AUTHORITY**: Ninth Cir. Model Instructions, Instruction 1.12 (modified to include illustrative example suggested in comment to Instruction 1.12).

**DATE SUBMITTED**: January 28, 2026

**8. INSTRUCTION NO. 8: WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they say in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**AUTHORITY**: Ninth Cir. Model Instructions, Instruction 1.10 (modified).

**DATE SUBMITTED**: January 28, 2026

**9. INSTRUCTION NO. 9: EVIDENCE FOR A LIMITED PURPOSE**

*[The Parties agree to this instruction on the condition that it be given only if there is a limiting instruction ordered.]*

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you may consider it only for that limited purpose and not for any other purpose.

**AUTHORITY**: Ninth Cir. Model Instructions, Instruction 1.11.

**DATE SUBMITTED**: January 28, 2026

**10. INSTRUCTION NO. 10: RULING ON OBJECTIONS**

*[The Parties propose this instruction be given before the start of evidence.]*

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.

If I overrule the objection, the question may be answered, or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

**AUTHORITY**: Ninth Cir. Model Instructions, Instruction 1.13.

**DATE SUBMITTED**: January 28, 2026

**11. INSTRUCTION NO. 11: CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**AUTHORITY**: Ninth Cir. Model Instructions, Instruction 1.14.

**DATE SUBMITTED**: January 28, 2026

**12. INSTRUCTION NO. 12: PUBLICITY DURING TRIAL**

*[The Parties propose this instruction be given before the start of evidence.]*

If there is any news media account or commentary about the case or anything to do with it, you must ignore it. You must not read, watch or listen to any news media account or commentary about the case or anything to do with it. The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies. If any juror is exposed to any outside information, please notify me immediately.

**AUTHORITY**: Ninth Cir. Model Instructions, Instruction 1.16.

**DATE SUBMITTED**: January 28, 2026

**13. INSTRUCTION NO. 13: NO TRANSCRIPT AVAILABLE**

*[The Parties propose this instruction be given before the start of evidence.]*

I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony.

**AUTHORITY**: Ninth Cir. Model Instructions, Instruction 1.17.

**DATE SUBMITTED**: January 28, 2026

**14. INSTRUCTION NO. 14: BENCH CONFERENCES AND RECESSES**

*[The Parties propose this instruction be given before the start of evidence.]*

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of you the jury, either by having a conference at the bench when you the jury are present in the courtroom, or by calling a recess. Please understand that when this happens and you are waiting, we will be working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

**AUTHORITY**: Ninth Cir. Model Instructions, Instruction 1.20 (modified).

**DATE SUBMITTED**: January 28, 2026

**15. INSTRUCTION NO. 15: VIDEO DEPOSITION**

*[The Parties propose this instruction be given before the start of evidence.]*

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.

You will be shown video-recorded testimony of certain witnesses. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

**AUTHORITY**: Ninth Cir. Model Instructions, Instruction 2.4 (modified).

**DATE SUBMITTED**: January 28, 2026

**16. INSTRUCTION NO. 16: EXPERT OPINION TESTIMONY**

You have heard testimony from experts who testified about their opinions and the reasons for those opinions. This opinion testimony is allowed, because of the specialized knowledge, skill, experience, training, or education of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's specialized knowledge, skill, experience, training, or education, the reasons given for the opinion, and all the other evidence in the case.

**AUTHORITY**: Ninth Cir. Model Instructions, Instruction 2.14.

**DATE SUBMITTED**: January 28, 2026

## 17. INSTRUCTION NO. 17: PROTECTION FOR PUBLISHING AND EXPRESSIVE ACTIVITY

### Instruction 17.1-P

[***Charleston continues to object to the inclusion of this instruction and any instruction on the First Amendment, but if one is given Charleston proposes the following language and proposes that the Court instruct on Section 230 only. Defendants do not believe the jury should be instructed on failure to warn, but include the language below in green if the Court does so instruct.***]

In this case, you may not hold Defendants liable for content posted by their users, or because Defendants hosted or published users' content, or because Defendants removed or failed to remove content posted by users.

However, in deciding whether Defendants are liable for negligence, you may hold Defendants liable for their own actions, even if users' content contributed to the harm, so long as Defendants' actions were a cause of Charleston's harm. You may also hold Defendants liable for failing to warn about the risks of harm caused by their platforms even if users' content contributed to the harm, so long as Defendants' failure to warn was a cause of Charleston's harm.

### Instruction 17.1-D[4]

The Defendants in this case are providers of interactive computer services. The law provides certain protections for the Defendants when they act as publishers of third-party content, including when they make decisions about what third-party content to put on their platforms and about what third-party content to remove from their platforms. "Third-party content" means words, pictures, video, audio, or any other form of communication that is not spoken by, created by, or developed by a Defendant, including "bullying" words communicated on a platform, viral "challenges," or inappropriate or hurtful posts that one person makes about another. The law also provides certain

[4] Defendants maintain that their previously proposed Instruction No. 17.2-D (*see* ECF No. 32) should be given. Defendants are providing the revised instruction with the understanding that the Court rejected instructions similar to those previously proposed by Defendants at the March 18, 2026 Pretrial Conference in the Breathitt matter.

protections for the Defendants when they choose to convey their own speech or expression to users of their platforms.

Therefore, you may not find any Defendant liable on the basis of any of the following "Protected Conduct," [or on the basis of any alleged failure to warn about the following Protected Conduct][5]:

1. Allowing any third-party content to appear on its platform;
2. Failing to remove any third-party content from its platform;
3. Recommending any third-party content to users, including recommending that a user "add" or "friend" another user's account or profile;
4. Making decisions about whether and how to recommend, compile, organize, disseminate, and display third-party content to users;
5. Allowing users to post or provide comments or to receive comments posted by others;
6. Use of algorithms to display content or use of algorithms that causes users to spend more time on a platform;
7. Providing content in a short-form video format;
8. Displaying third-party content in a continuous feed, such as through an "endless scroll" or "infinite scroll" feature;
9. Displaying third-party content automatically and continuously, without user intervention, such as through an "autoplay" feature;
10. Sending users notifications, including the timing and clustering of those notifications and "awards" or "rewards" for platform usage or engagement;
11. Displaying "Likes" or listing the number of "Likes" certain content has received;
12. Allowing third-party content to be private or to disappear after a period of time;
13. Displaying user geolocation data, including by allowing users to share their geolocation data with others;

[5] Defendants request that this language be included only if the Court instructs on failure to warn over Defendants' objection.

14. Failing to place default protective limits on the length and frequency of use of a Defendant's platform;

15. Failing to institute blocks that prevent use of a Defendant's platform during certain times of day (such as during school hours or late at night); or

16. Failing to warn users about the potential risks of third-party content on a Defendant's platform or about the potential risks of any of the Protected Conduct just listed.

However, a Defendant may be held liable for harm caused by a feature or activity that was part of the design or operation of a Defendant's platform, and that was not part of the Protected Conduct listed in the previous paragraph, (the "Non-Protected Conduct"), if Plaintiff proves every element of its claim as to the Non-Protected Conduct.

**PLAINTIFF'S AUTHORITY**: 47 U.S.C. § 230(c)(1); *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 702 F. Supp. 3d 809, 825–37 (N.D. Cal. 2023) ("PI Order"); *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 754 F. Supp. 3d 946, 962–64 (N.D. Cal. 2024) ("SD Order"); *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 878–85, 894–95 (N.D. Cal. 2024) (AG order); *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1107 (9th Cir. 2009), *as amended* (Sept. 28, 2009); *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 739 (9th Cir. 2024); *Est. of Bride by & through Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1175 (9th Cir. 2024); *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1093 (9th Cir. 2021); *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 684 (9th Cir. 2019).

**DEFENDANTS' AUTHORITY**: 47 U.S.C. § 230(c)(1); *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 702 F. Supp. 3d 809, 825–37 (N.D. Cal. 2023) (outlining relevant protections under Section 230 and the First Amendment) ("PI Order"); *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 754 F. Supp. 3d 946, 962–64 (N.D. Cal. 2024) (same, for school districts' claims) ("SD Order"); *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 878–85, 894–95 (N.D. Cal. 2024) (same, for state attorneys general claims); *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1107 (9th Cir. 2009), *as amended* (Sept. 28,

2009) (holding that Section 230 "precludes liability when the duty the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a publisher or speaker."); *id.* at 1102 (publication "involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content."); *Estate of Bride by and through Bride v. Yolo Technologies, Inc.*, 112 F.4th 1168, 1180 (9th Cir. 2024) (Section 230 precludes failure-to-warn theories that fault platform "for not mitigating, in some way, the harmful effects of . . . content"); *Doe v. Grindr Inc.*, 128 F.4th 1148, 1154 (9th Cir. 2025) (similar); U.S. Const. Amend. I; *Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) ("If the acts of 'disclosing' and 'publishing' information do not constitute speech, it is hard to imagine what does fall within that category[.]"); *NetChoice, LLC v. Bonta*, 113 F.4th 1101, 1119 (9th Cir. 2024) (holding law that would require platforms to "opine on potential speech-based harms to children" was subject to strict scrutiny and was likely invalid); *NetChoice v. Carr*, 789 F. Supp. 3d 1200, 1225 (N.D. Ga. 2025) (holding that age verification requirement "imposes a sweeping burden on adults' access to speech"); *Students Engaged in Advancing Texas v. Paxton*, 765 F. Supp. 3d 575, 595–600 (W.D. Tex. 2025) (similar); *NetChoice, LLC v. Griffin*, 2025 WL 978607, at *13 (W.D. Ark. Mar. 31, 2025) (similar).

**DATE SUBMITTED**: January 28, 2026

**DATE REVISED**: November 23, 2026

### 1. Plaintiff's Argument

Charleston's proposal accurately instructs the jury that it cannot impose liability on Defendants for hosting or publishing users' content, or for removing or failing to remove content posted by users. It also explains that Defendants may be held liable for their own actions, including failing to warn of known risks from the platform as a whole, even if content is in the causal chain. That latter instruction is in keeping with the Court's past rulings,[6] the parties' longstanding understanding of past rulings,[7] and Ninth Circuit precedent. *See Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 744 (9th Cir. 2024) ("Plaintiffs' claims may fare better if they sought to impose liability on Meta for failing to warn about fraudulent content…."); *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 682 (9th Cir. 2019) ("*Internet Brands* rejected use of a 'but-for' test").

Defendants propose a sweeping factual carveout for "Protected Conduct," which should be rejected for three reasons. First, Defendants imply that Section 230 limits liability for "act[ing] as publishers of 'third-party content.'" This invites jurors to ask whether the conduct involved publishing, but Section 230 hinges on the *legal duties* imposed. *See* 47 U.S.C. § 230(c) (barring claims that "*treat*[]"platform as "publisher or speaker"); *e.g.*, *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1092-93 (9th Cir. 2021);[8] *Calise*, 103 F.4th at 740-42; *see also Doe 1 v. Meta Platforms*, 174 F4th 1159, 1167 (9th Cir. 2026) (asking "what the claimed duty requires" (cleaned up)). The duties here are, roughly, (a) to warn students, parents, and school districts about the risk of compulsive and addictive use from Defendants' platforms and (b) not to negligently design and target at young people, and their schools, platforms with defective age verification, parental controls, and other

---

[6] ECF 430 at 20 (failure to warn claims "plausibly allege that defendants are liable for conduct other than publishing"); ECF 716 at 4-5 ("based on" motion to dismiss ruling, "the scope of discovery in this matter encompasses all product defects alleged"); ECF 1214 at 45 (Section 230 does not "bar[] liability predicated on a failure to warn of known risks of addiction attendant to any platform features or as to platform construction in general"); ECF 1267 at 14 (same); Hr'g Tr. 27:24-28:9, Nov. 16, 2023 (affirming that failure to warn claim extends beyond features barred by Section 230 for product liability claims); Hr'g Tr. 33:22-34:23, Mar. 21, 2024 (Judge Kang: "Claims 2 and 4 were not dismissed and on the face of it keep any and all of the alleged defects in the case.").

[7] *See, e.g.*, Br. For Meta at 2, *California et al. v. Meta*, No. 24-7037 (9th Cir. Mar. 31, 2025) (Court permitted "plaintiffs' failure to warn claims relating to certain platform features to proceed, even though . . . other claims as to the same features are barred by Section 230").

[8] *Lemmon* did not hold that *claims* against online platforms "must be '*fully independent of* [their] role in monitoring or publishing third-party content." The court concluded that Section 230 did not bar the negligent-design claim because the underlying *duty* to design a reasonably safe product was "fully independent" from "monitoring or publishing third-party content." *Id.* at 1093.

Court-specified features. *See* ECF 430 at 14-15; ECF 1267 at 13-14, 26-27 n.19. Neither would require Defendants to monitor or remove third-party content, or change how they publish content.

Second, Defendants propose a *per se* instruction on "protected" versus "non-protected" features. Under the Court's pretrial rulings, Defendants are protected from a state law duty to modify certain features. But Section 230 does not protect Defendants from a duty to warn of known risks attendant to use of those features. *See* ECF 430 at 20. That duty *would not* require Defendants to change anything about how, what, or when they publish. *See Doe v. Internet Brands, Inc.*, 824 F.3d 846, 851 (9th Cir. 2016); *see also Est. of Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1179 (9th Cir. 2024) (no Section 230 protection where "content moderation is one possible solution," but "the underlying duty . . . is the promise itself"). Nor would it require Defendants to warn about what third parties might say or do online.[9] *Cf. Doe v. Grindr Inc.*, 128 F.4th 1148, 1154 (9th Cir. 2025) (rejecting failure to warn about child sexual exploitation); *Doe (K.B.) v. Backpage.com, LLC*, 768 F.Supp.3d 1057, 1067 (N.D. Cal. 2025) (same); *Bride*, 112 F.4th at 1180-81 (cyberbullying).

Third, Defendants erroneously ask to disregard whole categories of evidence *even if* deemed admissible for certain purposes. Defendants assert that they may not be liable "on the basis of" "Protected Conduct." That language suggests that there can be no liability if any enumerated features played a part at all.[10] This is the "but for" test the Ninth Circuit rejected. Moreover, facts that are not independently actionable may still be evidence in support of other claims. *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 633 n.61 (N.D. Cal. 2020). This principle extends to cases involving Section 230. *Calise*, 103 F.4th at 742. Accordingly, the jury may properly hear evidence about the various mechanisms through which Defendants fostered compulsive use, their corporate knowledge about the same, and the resulting harm.

---

[9] Defendants' instruction is also legally incorrect because it implies that the "protected" features are covered by both Section 230 and the First Amendment, but "the First Amendment only affords protection with respect to the timing and clustering notifications of defendants' content." ECF 430 at 22. Judge Kuhl declined to give a First Amendment instruction, as the scope of protection is not a jury question, *Social Media Cases*, JCCP No. 5255 (Cal. Super. Ct. Mar. 24, 2026), and the Court should take the same approach here.

[10] Defendants' companion causation instruction, No. 19.1-D, makes this explicit, borrowing the "sole, pervasive, or dominant" formulation from *Democracy Partners, LLC v. O'Keefe*, 188 F.4th 433, 448-49 (D.C. Cir. 2026). As discussed below, that decision does not support the instruction.

**2. Defendants' Argument**

The Court has already ruled that Section 230 and the First Amendment impose a "significant limitation on Plaintiffs' theories of recovery." SD Order at 2. To give effect to these rulings, the Court must instruct the jury on which conduct may—and may not—form the basis of liability. Defendants' proposed instruction identifies the specific features and activities that this Court has already held are protected as a matter of law, as well as those that may form the basis of liability.[11] Without that specificity, the instructions would improperly invite the jury to find a Defendant liable for conduct that is "no longer part of this case."[12]

Plaintiff's proposal disregards the Court's "feature-by-feature" analysis altogether and does not even mention any of the features this Court held are protected. SD Order at 12; PI Order at 14–16. Plaintiff's instruction would thus improperly require the jury to determine on its own which features are protected, rather than applying this Court's answers to those legal questions. *See Tortu v. L.V. Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009) (courts must resolve legal questions and instruct the jury accordingly). And it creates a high risk of confusing the jury into thinking that *none* of Defendants' conduct is protected. *See L.A. Mem'l Coliseum Comm'n v. NFL*, 726 F.2d 1381, 1398 (9th Cir. 1984) ("Well-tailored and specific instructions" may be necessary where "abstract legal principles are not self-explanatory to a lay jury" and the facts "are complex").

Plaintiff's misguided assertion that its failure-to-warn theory renders the distinction between protected and unprotected conduct irrelevant fails for numerous reasons. First, a substantial body of recent, binding authority has confirmed that Section 230 bars failure-to-warn claims arising from publishing activity, including challenged features.[13] *See, e.g.*, *Doe v. Grindr*, 128 F.4th 1148, 1154

[11] Plaintiff cannot explain why Defendants' alleged failure to explicitly explain which features are protected by Section 230 versus the First Amendment would be misleading to the jury. And its suggestion that a First Amendment instruction is inappropriate altogether, based on Judge Kuhl's decision to forgo one, misreads that court's order, which held that "the instruction concerning Section 230 places limits on permissible liability in this case that also vindicate First Amendment rights." Mar. 24, 2026 Ruling at 2–3, JCCP No. 5255 (Cal. Super. Ct.).

[12] Defendants reserve the right to argue for the exclusion at trial of any evidence of content and protected publishing features.

[13] In light of this intervening authority, Defendants did not include failure to warn in their list of non-protected conduct, and omitted age verification from the list for similar reasons. *See, e.g.*, *NetChoice v. Carr*, 789 F. Supp. 3d 1200, 1230 (N.D. Ga. 2025).

(9th Cir. 2025); *Bride*, 112 F.4th at 1179–80; *Doe (K.B.) v. Backpage.com, LLC*, 768 F. Supp. 3d 1057, 1067 (N.D. Cal. 2025). *Calise v. Meta Platforms, Inc.* is not to the contrary, because that case did not involve any failure-to-warn claims at all, and held that Section 230 barred all of the plaintiff's non-contractual claims. 103 F.4th at 743, 746. Further, *Calise*'s discussion of failure-to-warn claims is *dicta,* and inconsistent with the Ninth Circuit's subsequent decisions in *Bride* and *Grindr*.

In any event, even if the Court permits the failure-to-warn claim to proceed in its entirety, the jury still could not find liability for any damages caused by protected conduct; it could find liability only for damages caused by failing to warn about that protected conduct.[14] Plaintiff's proposal ignores that distinction and renders the vast majority of the Court's rulings null.

It is not correct that the jury "may hold Defendants liable for their own actions even if users' content contributed to the harm, so long as Defendants' actions were a cause of Charleston's harm." This instruction ignores this Court's rulings that many categories of "Defendants' actions" are protected publishing conduct that cannot form the basis of liability. *See* SD Order at 14; PI Order at 5, 22. Further, Plaintiff invites error by encouraging the jury to hold Defendants liable for harms so long as any unprotected conduct is involved in any minimal way in the causal chain. But claims against online platforms must "ha[ve] nothing to do" with their role as publishers of third-party content. PI Order at 11. Plaintiff suggests Defendants attempt to impose a "but for" test. To the contrary, it is "analytically insignificant whether [the plaintiff's] injuries would not have occurred 'but for' [a platform's] role as a publisher." *Grindr*, 128 F.4th at 1153 n.3. The relevant question is whether the claims are "*fully independent of* [Defendants'] role in monitoring or publishing third-party content." *Lemmon*, 995 F.3d at 1093 (emphasis added); *Grindr*, 128 F.4th at 1153.

Finally, because Section 230 and the First Amendment cut across all of Plaintiff's claims, Defendants submit that this instruction must be given early to give important context to the remaining instructions. Placing the instruction near the end, as Plaintiff proposes, would risk confusing the jury into erroneously concluding that Section 230 and the First Amendment are distinct issues that do not affect the proper framing of Plaintiff's claims.

[14] If the Court permits the jury to hold Defendants liable for failure to warn about protected conduct, the proper approach would be to add failure to warn to the list of non-protected conduct.

## III. [Substantive Instructions]

The Court will now explain the substantive law applicable to the Claim brought in this action.

## 1. INSTRUCTION NO. 18: NEGLIGENCE – ELEMENTS

**[*Defendants' proposal in green text; Charleston's proposal in blue text.*]**

In this case, the plaintiff, Charleston County School District, claims that it has suffered harms for which the Defendants are responsible in damages.

Charleston County School District has brought this lawsuit against the Defendants alleging a cause of action for negligence. There are three essential elements of its negligence claim against each Defendant: Each element is denied by the Defendants' answers. Since the Charleston County School District has initiated and brought this lawsuit against the Defendants, and the burden of proof is upon the School District to establish the following by a preponderance of the evidence with respect to each Defendant:

(1) that the Defendant breached its duty to use ordinary care in one or more ways;

(2) that its failure to use ordinary care was a proximate cause of harm suffered by Charleston County School District; and

(3) that, as a result of this harm, Charleston County School District incurred expenses and/or the diversion of time and resources, which it claims as damages.

1. that the Defendant's Non-Protected Conduct was negligent or careless;
2. that negligent or careless Non-Protected Conduct caused Charleston County School District's students to suffer mental health harms;
3. that those students' mental health harms caused Charleston County School District to incur additional expenses it claims as damages.

What is negligence? Negligence is defined in the law as the absence of due care. In other words, the lack of ordinary care. Negligence is the failure, by omission or commission, to exercise due care as a company exercising ordinary reason and prudence would exercise in the same circumstances. It is the doing of some act which a person or company exercising due care would not have done under similar circumstances, or failure to do what a person or company exercising ordinary prudence would have done under similar circumstances. A company can be found negligent if it fails to warn about harms it knows, or has reason to know, can result from the use of its platform when used in the manner intended.

In determining whether each Defendant's conduct is negligent, the test you must apply is what a reasonable company exercising due care, or ordinary prudence, would do under those circumstances at that time and place. "Due care," as applied to Defendants in this case, means such care a company of ordinary reason and prudence would exercise in the design or operation of an online platform. Conduct that breached the duty to exercise due care is negligent conduct.

"Negligent Non-Protected Conduct" is Non-Protected Conduct that you find breached the Defendant's duty to use reasonable care.

Negligence, like any other fact in the case, must be proved. The mere allegation, or filing of a complaint, or the fact that damages have been sustained, does not create a presumption of negligence. A surmise or conjecture that a Defendant was negligent is not evidence thereof. The bare fact that an innocent party sustained harm or damage does not place any responsibility on another party unless you find that there was some act of negligence on the part of that party which caused the injury or damage.

If you find that Charleston County School District has proved any of the Defendants were negligent, your next inquiry is whether the School District has proved that such Defendant's negligence was the proximate cause of the harm injury or damage. Negligence is not actionable unless it proximately caused the School District's injuries. Charleston County School District may only recover for injuries proximately caused by a Defendant's negligent Non-Protected Conduct.

Even if you find that Charleston County School District has proved that a Defendant was negligent, but has failed to prove that such negligence was a proximate cause of injury or damage, the School District would have failed to make out its case and you would be required to find for that Defendant. However, if Charleston County School District has proved these two propositions, then the School District must prove its damages.

**PLAINTIFF'S AUTHORITY**: Anderson, S.C. Requests to Charge – Civil, 20-1; *see also Thomasko v. Poole*, 349 S.C. 7, 561 S.E.2d 597 (2002); *Arthurs v. Aiken County*, 346 S.C. 97, 551 S.E.2d 579 (2001); *Holst v. KCI Konecranes Intern. Corp.*, 699 S.E.2d 715, 723 (S.C. Ct. App. 2010).

**DEFENDANTS' AUTHORITY**: Anderson, South Carolina Requests to Charge – Civil, § 20-1 (rev. 2d ed. 2016).

**DATE SUBMITTED**: January 28, 2026

**DATE REVISED**: November 23, 2026

### 1. Plaintiff's Argument

Charleston's instruction is drawn from South Carolina's pattern instruction on the elements of negligence. *See* Anderson, S.C. Requests to Charge – Civil, 20-1. Given the verbosity of these unofficial instructions, Charleston has sought to streamline language without altering the meaning. Additionally, Charleston has substituted the word "harm" for "injury." The former fits this case because Charleston, an institutional plaintiff, seeks recovery for economic and operational harms, rather than for personal injuries. *Rickborn v. Liberty Life Insurance Co.*, 468 S.E.2d 292 (S.C. 1996), is instructive. The court upheld negligence liability arising from an insurance agent's failure to procure life insurance. The insured died from automobile-accident injuries, but the harm was economic—the loss of insurance benefits. *Id.* at 298-99. The court held that the agent's breach "proximately caused *harm* to [the insured's] estate." *Id.* (emphasis added).

**Elements.** Charleston's recitation is preferable because it (1) explains that a failure to warn is negligence; (2) does not improperly limit Charleston's theory of harm to its students' mental health harms; and (3) does not improperly repeat the Section 230 defense. Defendants also argue that Charleston's language "does not fully explain Plaintiff's theory of harm," but nothing in the South Carolina pattern instruction cited by the parties requires such granularity.

**Failure to Warn.** Charleston draws language from South Carolina caselaw discussing when a failure to warn qualifies as negligence. *See Holst v. KCI Konecranes Int'l Corp.*, 699 S.E.2d 715, 723 (Ct. App. 2010). This will assist the jury in applying the correct legal standard when evaluating the negligence claim, which includes failure to warn. Defendants complain that the instruction does not follow the specific product-liability formulation that appears in *Holst*, which focuses on a manufacturer's duty to the user of its product. But the duty here extends to school districts. *See* ECF No. 1267 at 27 n.19; *accord id*. at 34. It attaches when the defendant "knew or should have known" of the risk. 18 S.C. Jur. Negligence § 19.2.

**Improper Limitation to Mental Health Harms.** Defendants improperly suggest that Charleston's harm is entirely derivative of students' mental health harms. This is contrary to the Court's prior orders. ECF 729 at ¶ 194; *see also* ECF 1267 at 21 ("That the school districts suffer a corollary impact does not render their injuries 'derivative.'"); *accord id.* at 26. Defendants'

instruction will mislead the jury into believing that mental health harms to Charleston's students are the only kind of harm they may be liable for.

**Repeated 230 Instruction.** Defendants' repetition of the phrases "Non-Protected Conduct" and "Protected Conduct" throughout their proposed instructions is prejudicial, wrong, and improper. "Repetitious instructions which place undue emphasis on matters favorable to either side constitute reversible error," *Flentie v. Am. Cmty. Stores Corp.*, 389 F.2d 80, 83 (8th Cir. 1968), and the repetition here exceeds what courts have found prejudicial, *e.g., Mack v. Precast Indus., Inc.*, 369 Mich. 439, 448 (1963) (reversible error where burden of proof was repeated 16 times); *see also United States v. Schilleci*, 545 F.2d 519, 526 (5th Cir. 1977) (reversible error where trial court likely caused "undue concentration on a specific paragraph" of instructions). Because the improper Section 230 instruction permeates the entire set, any error is unlikely to be harmless. *See Sidibe v. Sutter Health*, 103 F.4th 675, 705 (9th Cir. 2024) (court must consider "cumulative error").

Defendants' repeated term also violates the mandate that jury instructions should be "simple" and "use language that laypersons can understand." *Manual for Complex Lit.*, § 12.431 (4th ed. 2025). By requiring the reader to turn to the definition repeatedly, defined terms introduce excessive ambiguity. This concern is magnified where, as here, the definition itself is "cumbersome" (spanning 3 full pages). *See LG Philips LCD Co. v. Tatung Co. of Am.*, 2005 WL 6219893, at *4 (C.D. Cal. May 5, 2005). Jurors will "carefully follow" an instruction once it is given. *Francis v. Franklin*, 471 U.S. 307, 324 (1985). That is why courts generally do not instruct on statute of limitation and preemption and then use the phrase "non-time-barred non-preempted conduct" throughout the instruction set. Following a single instruction on Section 230, the Court should simply refer to Defendants' "conduct" as it gives remaining instructions, removing further references to "Non-Protected Conduct" or "Protected Conduct." *See infra* [Section 230].

**2. Defendants' Argument**

The phrase "Negligent Non-Protected Conduct" should be included in this instruction and other applicable instructions because not all potential negligence by Defendants is actionable given the Court's rulings about Section 230 and the First Amendment. PI Order, 702 F. Supp. 3d 809, 825–37 (N.D. Cal. 2023) (outlining relevant protections under Section 230 and the First Amendment); SD Order, 754 F. Supp. 3d 946, 962–64 (N.D. Cal. 2024) (same, for school districts' claims). Instructions to the jury that explain how to evaluate Defendants' conduct should include language that incorporates that limitation on liability. Negligent Non-Protected Conduct is easy to understand, defined, and does not require that the jury look back to the Section 230 instruction each time they see the term. Defendants propose this language because the jury *must* consider only Defendants' Non-Protected Conduct at each step of the factfinding inquiry.

Plaintiff's proposal fails to sufficiently explain that each case against each Defendant must be evaluated separately. Plaintiff must prove ***that each Defendant*** was negligent with respect to the Non-Protected Conduct because a finding that one Defendant is negligent does not mean a verdict can be found against all Defendants.

Defendants object to Plaintiff changing throughout the word "injury," used in the South Carolina model instructions and case law, to "harm." All instructions should use "injury." Plaintiff does not define the vague term "harm" and does not provide authority supporting deviating from the term "injury." The elements of a negligence claim require showing injury (or damages), not "harm." *Wright v. S.C. Dep't of Transp.*, 877 S.E.2d 788, 791 (S.C. Ct. App. 2022) (elements include showing "plaintiff suffered an injury or damages") (quoting *Doe v. Marion*, 645 S.E.2d 245, 250 (S.C. 2007)). Plaintiff's use of "harm" is an attempt to lower what it must prove. If Plaintiff wants to make clear that its injury is economic, the word "economic" can be added before "injury."

Defendants object to the language "that, as a result of this harm, Charleston County School District incurred expenses and/or the diversion of time and resources." Plaintiff's alleged injuries are the alleged expenses and diversions of time and resources. This language could mislead the jury into thinking that there is some other purported injury, or that Plaintiff can seek recourse for

purported injuries of students. It also fails to explain the theory of injury, which is that its students suffered mental health harms which in turn allegedly injured Plaintiff.

Defendants object to any instruction about Plaintiff's failure to warn theory because it is not legally viable. *See* ECF No. 2293 at 39–43; ECF No. 2510 at 6–12.

If the Court instructs on this over Defendants' objection, Defendants object to Plaintiff's proposed language that "A company can be found negligent if it fails to warn about harms it knows, or has reason to know, can result from the use of its platform when used in the manner intended." None of Plaintiff's cited authorities support that proposal. A failure to warn claim requires showing that Defendants "know or have reason to know the product is or is likely to be dangerous for its intended use; they have no reason to believe the user will realize the potential danger; and, they fail to exercise reasonable care to inform of its dangerous condition or of the facts which make it likely to be dangerous." *Holst v. KCI Konecranes Int'l Corp.*, 699 S.E.2d 715, 723 (S.C. Ct. App. 2010). Plaintiff's burden is to show actual knowledge or reason to know that a product is likely to be dangerous for its intended use. Plaintiff would lower that burden to require only knowledge that some injuries can result from use of Defendants' products.

Plaintiff is incorrect that Defendants "improperly suggest that Charleston's harm is entirely derivative of students' mental health harms." Plaintiff premised its case on allegations that Defendants negligently designed their platforms in such a way as to render them addictive and cause mental health harms to students. Plaintiff must therefore prove that Defendants' platforms caused such harms to students and then also prove that those harms to students caused Charleston to expend additional resources. Charleston's alleged damages must be tied to the alleged breach—which, here, is the platforms' supposed harmful impact on students' mental health.

Defendants object to Plaintiff's instruction to the extent it does not instruct that Plaintiff must prove each element of its negligence claim by a preponderance of the evidence.

## 2. INSTRUCTION NO. 19: NEGLIGENCE – PROXIMATE CAUSE

**Instruction 19.1-P**

To recover against a Defendant, Charleston County School District must prove that each Defendant's negligence was a proximate cause of harm to the School District. This means two things.

First, Defendants' actions or failures to act must have set into motion a natural chain of events that resulted in the harm. A proximate cause is a cause without which the harm at issue in this case would not have occurred. However, there may be more than one proximate cause. A Defendant's negligence can be a proximate cause in bringing about the harm, even if the conduct of others also contributed to it.

Second, the harm must be a foreseeable result of the Defendant's actions or failures to act. Charleston County School District does not need to prove that a Defendant should have contemplated the particular harm that occurred as a result of its negligence. It is enough that a Defendant should have foreseen that its negligence would probably result in harm of some kind to someone. The fact that the Defendant neither foresaw nor should have foreseen the extent of the harm, or the exact manner in which it occurred, does not relieve the Defendant of liability.

**Instruction 19.1-D**

Negligence is not actionable unless it proximately caused Charleston County School District's injuries. Proximate cause means the direct cause of an injury. Charleston County School District bears the burden of proving that the Negligent Non-Protected Conduct of each Defendant was a cause of the injury. You may find causation as to all Defendants, as to none of the Defendants, or as to some Defendants and not others.

Proximate cause requires proof of both causation in fact and legal cause. Causation in fact is proved by establishing the School District's injuries would not have occurred "but for" the Defendant's negligence. Legal cause is proved by establishing foreseeability.

Foreseeability of some injury from a negligent act or omission is a prerequisite to its being a proximate cause of the injury for which recovery is sought. The test of foreseeability is whether some injury to another is the natural and probable consequence of the complained of act.

The law requires only reasonable foresight, so you should consider the circumstances and what each Defendant knew at the time of the conduct. If the injuries are not reasonably foreseeable when due care is exercised, there is no liability. However, if that injury is within the scope of foreseeable risks from the alleged negligent conduct, Defendants may be held liable.

While it is not necessary that a Defendant must have contemplated or could have anticipated the particular event which occurred, liability cannot rest on mere possibilities. A Defendant cannot be charged with that which is unpredictable or that which could not be expected to happen. The School District therefore proves legal cause by establishing the injury in question occurred as a natural and probable consequence of the Defendant's Negligent Non-Protected Conduct. In determining whether a consequence is one that is natural and probable, a Defendant's conduct must be viewed in the light of the attendant circumstances.

Proximate cause does not mean the only cause. A Defendant's conduct can be a proximate cause if it was at least one of the direct causes of the injury.

The law defines proximate cause of an injury to be something that produces a natural chain of events which, in the end, brings about the injury. In other words, proximate cause is the direct cause, without which the injury would not have occurred. If the injury would have happened as a natural and probable consequence, even in the absence of the alleged breach of duty of care, then the School District has failed to demonstrate proximate cause.

Further, if the cause of Charleston County School District's injury may be as reasonably attributed to an act for which a Defendant is not liable as to one for which they are liable, then Charleston County School District has failed to carry the burden of establishing that its injuries were the proximate result of that Defendant's negligence.

A Defendant's Protected Conduct, as used in these instructions, is defined in Instruction 17.1-D. All other conduct by a Defendant is a Defendant's "Non-Protected Conduct."

Charleston may recover damages only for harm caused by a Defendant's Non-Protected Conduct. You may not award damages for any harm caused by a Defendant's Protected Conduct. This is true even if that Protected Conduct occurred at the same time as, alongside, or as part of the same course of events as Non-Protected Conduct.

Charleston must prove that the Defendant's Non-Protected Conduct, and not Protected Conduct, was the sole, pervasive, or dominant cause of its harm. It is not enough for Charleston to show that Non-Protected Conduct occurred, or that it contributed to or was a factor in the harm.

Non-Protected Conduct is not a cause of harm if the same harm would have occurred without that conduct.

If you cannot reasonably determine which harm, if any, was caused by Non-Protected Conduct rather than by Protected Conduct, you may not find that the Defendant caused the harm. You must consider each Defendant separately.

Defendants do not have a duty to prevent third parties (for example, individuals who post dangerous "challenges" on Defendants' platforms, commit crimes, or post threats on Defendants' platforms) from using their platforms in ways that may cause harm to Charleston County School District or its students. However, Defendants may be held liable for their own actions, when those actions foreseeably cause a third party to harm the School District.

You may not impose liability based on any injuries that you believe may have been caused by the Defendants' Protected Conduct, even if you think it was wrongful.

**PLAINTIFF'S AUTHORITY**: Anderson, S.C. Requests to Charge – Civil, 20-2; 18 S.C. Jur. Negligence § 20; 18 S.C. Jur. Negligence § 21; *see also Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 371 S.C. 123, 638 S.E.2d 650 (2006); *J.T. Baggerly v. CSX Transp., Inc.*, 370 S.C. 362, 635 S.E.2d 97 (2006); *Hurd v. Williamsburg Cnty.*, 363 S.C. 421, 611 S.E.2d 488 (2005); *Brown v. Nat'l Oil Co.*, 105 S.E.2d 81, 84-85 (S.C. 1958); *Hicklin v. Jeff Hunt Machinery Co.*, 226 S.C. 484, 85 S.E.2d 739, 743 (1955); *Little v. Brown & Williamson Tobacco Corp.*, 243 F. Supp. 2d 480, 498 (D.S.C. 2001) (noting that causation in fact is determined under a substantial factor test where several causes combine to produce an injury to avoid perverse result (citing *South Carolina Ins. Co. v. James C. Greene and Co.*, 348 S.E.2d 617, 620 (S.C. 1986))); *see also* S.C. Code § 15-38-15 (modifying joint-and-several liability scheme but expressly recognizing indivisible injury rule); *Glenn v. 3M Co.*, 890 S.E.2d 569, 591 (S.C. Ct. App. 2023) ("negligence of a third party . . . does not relieve [original tortfeasor] of liability."); *Small v. Pioneer Mach., Inc.*, 494 S.E.2d 835, 844

(Ct. App. 1997) ("A third party's acts of negligence do not break the causal chain if the acts are foreseeable." (internal citations omitted)); *Matthews v. Porter*, 239 S.C. 620, 626–27 (1962) ("If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable." (internal quotation marks omitted)).

**DEFENDANTS' AUTHORITY**: Anderson, South Carolina Requests to Charge – Civil, § 20-2 (rev. 2d ed. 2016); SD Order, 754 F. Supp. 3d 946, 971–72 (N.D. Cal. 2024); Anderson, South Carolina Requests to Charge – Civil, § 20-1 (rev. 2d ed. 2016); *Wickersham v. Ford Motor Co.*, 853 S.E.2d 329, 332 (S.C. 2020); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 922–23, 934 (1982); *Democracy Partners, LLC v. O'Keefe*, 188 F.4th 433, 449 (D.C. Cir. 2026).

**DATE SUBMITTED**: January 28, 2026

**DATE REVISED**: November 23, 2026

**1. Plaintiff's Argument**

The parties have revised South Carolina's unofficial pattern instruction to reduce repetition and prioritize plain statements of South Carolina law. *Cf. State v. Burkhart*, 350 S.C. 252, 261, 565 S.E.2d 298, 303 (2002) ("The substance of the law must be charged to the jury, not particular verbiage."); *Manual for Complex Lit.*, § 12.431 (4th ed. 2025) ("avoid a generalized pattern of instructions"). Charleston's instruction tracks the two-part framework of but-for causation and "legal cause," but avoids using the term "legal cause" because it is likely to confuse the jury. Charleston also uses "harm" rather than "injury" because it better suits the facts of the case. *See Rickborn v. Liberty Life Insurance Co.*, 468 S.E.2d 292, 298-99 (S.C. 1996). Defendants propose additional, inapposite language concerning their First Amendment defense and third-party harm.

**But-For Cause and Foreseeability.** Defendants are wrong that Plaintiff's instruction on foreseeability is outdated—it has been cited approvingly as recently as 2008 alongside Defendants' preferred "natural and probable consequence" language. *Mellen v. Lane*, 659 S.E.2d 236, 248 (S.C. Ct. App. 2008); *see also J.T. Baggerly v. CSX Transp., Inc.*, 635 S.E.2d 97, 101 (S.C. 2006) ("while foreseeability of some injury from an act or omission is a prerequisite . . . the plaintiff need not prove that the defendant should have contemplated the particular event which occurred").

**First Amendment.** Defendants assert that Charleston must prove Defendants' conduct "was the sole, pervasive, or dominant cause of its harm." But the First Amendment does not require Charleston to prove content played no causal role. *See* ECF 2728 at 18 ("That the damages evidence does not neatly segregate between the impact of various design features that are actionable or not actionable under Section 230 or the First Amendment does not vitiate the damages claim."). Defendants take their standard from *Democracy Partners, LLC v. O'Keefe*, 188 F.4th 433 (D.C. Cir. 2026). In it, the plaintiff sued for reputational harm over a video—fourteen minutes were protected speech; two minutes were not. *Id.* at 446-47. The court held that where "it is uncontested that protected speech contributed to a damages award," the plaintiff must show the unprotected conduct was the "sole," "pervasive," or "dominant" cause. *Id.* at 448-49.

The D.C. Circuit relied on *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982), which involved a civil-rights boycott. *Id.* at 899-900. The boycott was protected under the First

Amendment. *Id.* at 907-11. But a few participants also used violence and threats, which were not protected. *Id.* at 904-906, 916. The Mississippi Supreme Court held every defendant liable for all damages "resulting from the boycott." *Id.* at 921. The Supreme Court reversed. "Only those losses proximately caused by unlawful conduct may be recovered," *id.* at 918, but the Court rejected the conclusion that the entire boycott was unlawful, *id.* at 933-34. The language Defendants borrow from *Democracy Partners* comes from the latter determination. "Sole," "pervasive," and "dominant" described what it would take for the "taint of violence" to render the entire boycott unlawful. *See Claiborne*, 458 U.S. at 933-34. They are not the test for determining proximate cause.

Moreover, in both *Democracy Partners* and *Claiborne*, the defendant engaged in a single expressive course of conduct—only part of which was unprotected—and the plaintiff's harm flowed from that expression. Charleston's claim is different. It is an ordinary negligence claim aimed at design choices the Court has already held are unprotected. Generally applicable laws "do not offend the First Amendment simply because their enforcement . . . has incidental effects," and they receive no heightened scrutiny. *Cohen v. Cowles Media Co.*, 501 U.S. 663, at 669-70 (1991).

**Third Party Harm.** Plaintiff objects to instructing the jury on third-party harm. It is unlikely that challenges, crimes, or threats will be introduced at trial, much less play a role that would warrant cautioning the jury here. Defendants' duty is a question of law that it has already resolved. Defendants' language risks misleading jurors into confusing duty with the proximate cause question. Defendants also create the false impression that third-party negligence absolves liability. A negligent wrongdoer may be liable for causing foreseeable third-party misconduct. *See Glenn v. 3M Co.*, 890 S.E.2d 569, 591 (S.C. Ct. App. 2023). If the Court concludes that an instruction addressing third-party conduct is warranted, then the appropriate instruction would be on intervening cause. *See id.* at 590. *See infra* [Negligence – Intervening Cause].

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence]; *infra* [Section 230].

**2. Defendants' Argument**

To show proximate causation, Plaintiff must prove both causation in fact (but for) and legal cause. *Wickersham v. Ford Motor Co.*, 853 S.E.2d 329, 332 (S.C. 2020). That burden is not lessened where, as here, the theory of causation is attenuated; it is "a difficult burden" where the plaintiff must "prove [a] sequence of causal events." *Id.* at 332–33. The jury should be told both elements plainly, not a paraphrase that drops "legal cause."

Defendants object to Plaintiff's language that "[i]t is enough that a Defendant should have foreseen that its negligence would probably result in harm of some kind to someone." Plaintiff must prove that Defendants' Non-Protected Conduct, if any, caused students to suffer mental health harms that in turn caused economic injury to Plaintiff. South Carolina courts measure foreseeability by "the natural and probable consequences of the defendant's act or omission," *Wickersham*, 853 S.E.2d at 332—a higher standard than expecting harm to some indeterminate person. Defendants also object to changing "injury" to "harm."

Defendants' language follows the Court's prior orders that non-foreseeable third-party conduct on Defendants' platforms is not actionable, nor is general knowledge about harmful third-party content. *See* SD Order, 754 F. Supp. 3d 946, 971–72 (N.D. Cal. 2024). Plaintiff's instruction omits that Defendants' role as a mere publisher of content is not sufficient for liability. *See id.* An intervening-cause instruction alone would not convey these limits.

Defendants' language applies the heightened causation standard when conduct is in part protected by the First Amendment. *Claiborne*, 458 U.S. at 922–23, 934; *Democracy Partners,* 188 F.4th at 449. *Claiborne* held that where unprotected "conduct occurs in the context of constitutionally protected activity, . . . 'precision of regulation' is demanded," and that protected activity "imposes restraints on the grounds that may give rise to damages liability." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 916–17 (1982) (citation omitted). The Mississippi Supreme Court upheld a damages award against civil rights organizations after finding that they agreed to use force, violence, and threats during protests and boycotts. *Id.* at 889–90, 895–97. The Supreme Court reversed: the award was "flatly inconsistent with the First Amendment" even though the unprotected activity "formed *part* of the boycott activity" and "*contributed* to its almost

complete success," because "all business losses were not proximately caused by the violence and threats of violence." *Id.* at 921–22. Because unlawful conduct was not the "sole[]," "pervasive," or "dominant force" behind the losses, no damages could be awarded. *Id.* at 922–23, 934. Plaintiff attempts to cabin this language to "describe[] what it would take for the 'taint of violence' to render the entire boycott unlawful." That is wrong and cannot be reconciled with the opinion.

Applying *Claiborne*, the D.C. Circuit held that "if it is uncontested that protected speech contributed to a damages award, the First Amendment imposes a heightened standard of proof," which "is not satisfied by evidence the unprotected conduct occurred or even that it contributed to the plaintiff's damages." *Democracy Partners*, 188 F.4th at 449. The First Amendment thus bars any causation standard that would allow full recovery where protected activity was the predominant cause; "'[o]nly those losses proximately caused by'" unprotected conduct may "'be recovered.'" *Id.* at 448–49 (quoting *Claiborne*, 458 U.S. at 918).

Providing this instruction is critical in this case given that Plaintiff has already acknowledged that it will not isolate the harms caused by protected and non-protected conduct—the very issue central to *Claiborne* and *Democracy Partners*. Pls.' Opp'n to Defs.' Mot. for Summ. J. (Charleston) at 1, ECF No. 2373; Pls.' Omnibus Opp'n to Defs.' Mots. for Summ. J. at 194, ECF No. 2480.

Nor does *Cohen v. Cowles Media Co.*, 501 U.S. 663 (1991), change this analysis. *Cohen* held that a generally applicable promissory estoppel doctrine could be enforced against a newspaper that broke a promise of confidentiality to a source. *Id.* at 669–71. *Cohen* addresses what type of press activity qualifies for First Amendment protection; *Claiborne* and *Democracy Partners* address the question here—once protected conduct is identified, what must a plaintiff show to recover damages consistent with the First Amendment? *Cohen* has no answer to that question.

The same standard governs Protected Conduct shielded by Section 230. *Claiborne* grounded its rule in the principle that federal protection limits state-law damages, drawing an analogy to federal statutory preemption, *see* 458 U.S. at 918, and Section 230 operates the same way, 47 U.S.C. § 230(e)(3). Instructions related to conduct should therefore incorporate the limitations on liability in the Court's Section 230 and First Amendment rulings. *See* SD Order at 14; PI Order at 5, 22; Defs.' Position on Section 230 Instr.

**3. INSTRUCTION NO. 20: [INTENTIONALLY OMITTED]**

**DATE SUBMITTED**: January 28, 2026

**DATE REVISED [INTENTIONALLY OMITTED]**: November 23, 2026

### 4. INSTRUCTION NO. 21: NEGLIGENCE – CONCURRING CAUSE

[***Defendants object to inclusion of this instruction.***]

**Instruction 21.1-P**

Causes are concurring if two or more forces combine to cause the harm, such that the harm would not have occurred in the absence of either. In that case, each of the contributing forces is a proximate cause of the harm. The fact that a concurring cause may not have been foreseeable does not relieve a Defendant from liability. In other words, where several causes produce a harm, the harm may be attributed to all or any of the causes, and recovery may be had against any of the responsible persons or entities.

**Instruction 21.1-D**

When deciding if a Defendant's actions were the proximate cause of the School District's harm, you must distinguish between an intervening cause and a concurring cause. An intervening cause happens after the main or primary cause, while concurring causes work together at the same time to cause harm.

If, by the exercise of reasonable foresight and diligence, a concurring cause should have been foreseen and foreguarded, a Defendant can still be held liable. However, the mere fact that one of several concurring causes may not have been reasonably anticipated, is not enough to shield a Defendant from liability. Causes are concurrent if the individual acts of negligence combine to cause the harm. In such case, each of the contributing acts or omissions is regarded in law as a proximate cause for which each of the Defendants may be held responsible. A Defendant's negligence need not be the sole cause of the injury. It is enough to show that it is a proximate concurring cause, that is, one that was so efficient in causation that, but for it, the injury would not have occurred.

Consequently, if a person's negligence is a proximate cause of an injury to another, the fact that the negligence of a third party concurred with his own negligence to produce the injury does not relieve the original entity of liability. In such cases, both wrongdoers are in breach of a duty of care owed to the plaintiff and, because the negligence of both concurred to produce the injury, both are liable.

In other words, where several causes producing an injury are concurrent, and each is a direct cause without which the injury would not have happened, the injury may be attributed to all or any of the causes, and recovery may be had against any of the responsible persons or entities, although one of them was more responsible.

If an injury occurs through the concurrent negligence of two or more entities, and it would not have happened in the absence of the negligence of either one entity, the negligence of each participant is the proximate cause of the injury, although they may have acted independently of one another, and both are responsible.

**PLAINTIFF'S AUTHORITY**: Anderson, S.C. Requests to Charge – Civil, 20-3; *see also J.T. Baggerly v. CSX Transp., Inc.*, 370 S.C. 362, 635 S.E.2d 97 (2006); *Bishop v. South Carolina Dep't of Mental Health*, 331 S.C. 79, 502 S.E.2d 78 (1998); *Newton v. South Carolina Pub. Rys. Comm'n*, 319 S.C. 430, 462 S.E.2d 266 (1995); *Am. Motorcycle Assn. v. Superior Ct.*, 20 Cal. 3d 578, 588-89 (1978); *Brown v. Nat'l Oil Co.*, 105 S.E.2d 81, 84–85 (S.C. 1958).

**DEFENDANTS' AUTHORITY**: Anderson, South Carolina Requests to Charge – Civil, § 20-3 (rev. 2d ed. 2016).

**DATE SUBMITTED**: January 28, 2026

**DATE REVISED**: November 23, 2026

### 1. Plaintiff's Argument

**Instruction is Warranted.** Defendants object to the inclusion of a concurring cause instruction without providing any authority that suggests the instruction should not be given. To the contrary, failing to instruct on concurring causation in a case involving multiple defendants who all allegedly contributed to a single harm risks severely prejudicing Charleston. Contrary to Defendants' claim, the model instruction on concurring cause is not limited to non-parties, but in any case, the position that Defendants have taken—that they posit alternative, rather than concurring, causes—does not make the causes mutually exclusive. If the evidence permits the jury to find that a Defendant's negligence and another cause combined to produce the injury, then there is a sound basis for a concurring-cause instruction. Given multiple defendants who contributed to a single harm, as well as Defendants' references to third-party misconduct, it is doubly important to include an instruction which clearly explains how to evaluate Defendants' alleged negligence in the context of third parties acting during the same period. *See Bishop v. S.C. Dep't of Mental Health*, 502 S.E.2d 78, 83 (1998) (recognizing that whether a third party's negligence insulates the original wrongdoer from liability may depend on whether it is a concurring or intervening cause to the plaintiffs' harm).

**Charleston's Language is Preferable.** Charleston's proposed language follows South Carolina's pattern instruction on concurring cause. *See* Anderson, S.C. Requests to Charge – Civil 20-3. Given that South Carolina's pattern instructions, which are unofficial, are particularly lengthy, Charleston has sought to streamline language where doing so would not alter the meaning. Charleston also substitutes "harm" for "injury." Defendants object to the language "[t]he fact that a concurring cause may not have been foreseeable does not relieve a Defendant from liability." But the pattern instruction they quote embodies this very rule: "the mere fact that one of several concurring causes may not have been reasonably anticipated, is not enough to shield a Defendant from liability." Anderson, South Carolina Requests to Charge – Civil, § 20-3. Put another way, the Defendant's negligence is a concurring cause, then the Defendant is not relieved of liability because another concurring cause was not foreseeable.

Defendants are also wrong that the jury must be instructed that "concurrent causes must work contemporaneously to produce the injury." This misstates South Carolina law, which does not require acts to occur contemporaneously with one another to be concurrent causes—indeed, the only case Defendants cite involved *sequential* concurring causes. *See J.T. Baggerly v. CSX Transp., Inc.*, 635 S.E.2d 97, 101 (S.C. 2006) (citing railroad operators' failure to maintain tracks and street sweeper's subsequent collision with tracks as concurring causes of derailment). Other cases cited in the pattern instructions also show that concurrent causes need not happen simultaneously. *See, e.g.*, *Brown v. Nat'l Oil Co.*, 105 S.E.2d 81, 84-85 (S.C. 1958) (whether oil company's negligence in failing to construct underground gas tank with adequate vents was concurring cause of fire sparked by smoker's match was question for jury).

Defendants' objection to language about indivisible injury is not well taken. The harm in this case is indivisible because it is "not obviously assignable to the respective wrongdoers." 2 Modern Tort Law: Liability and Litigation § 18:4 (2d ed.); *see also* Dan B. Dobbs, et al., The Law of Torts § 487 (2d ed.) ("the loss cannot be reasonably allocated" among tortfeasors "by causal measures"); *accord Rourk v. Selvey*, 164 S.E.2d 909, 913 (S.C. 1968).

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence]; *infra* [Section 230].

**2. Defendants' Argument**

Defendants object to the inclusion of this instruction in its entirety. As the model instruction states, a concurring cause instruction is appropriate where "the negligence of a third party concur[s] with [a defendant's] own negligence to produce the injury." That is not Defendants' position, nor has Plaintiff made allegations supporting a concurring cause instruction. Defendants contend that other causes, such as broader, endemic issues like violence, poverty, racial issues, substance abuse, and more, have caused the alleged injuries to Plaintiff, but Defendants do not contend that those are "concurring" or "intervening" causes under the law. They are simply alternative causes. *See* ECF No. 2293 at 1–2. Alternative causes are causes that Defendants contend are the actual causes of alleged injuries suffered by Plaintiff. They exist independently of Defendants' actionable conduct. And Defendants do not agree that there is a single harm here.

If the Court gives the instruction over Defendants' objection, Defendants object to Plaintiff adding the language "The fact that a concurring cause may not have been foreseeable does not relieve a Defendant from liability" because it is not an accurate statement of the law. The South Carolina model instruction clearly states that foreseeability is still required, but that not all concurring causes have to be foreseen: "If, by the exercise of reasonable foresight and diligence, a concurring cause should have been foreseen and foreguarded, a Defendant can still be held liable. However, the mere fact that one of several concurring causes may not have been reasonably anticipated, is not enough to shield a Defendant from liability." Plaintiff's language elides that distinction and erases the foreseeability requirement, contrary to South Carolina law.

Defendants object to Plaintiff removing the language from the model instruction that "are concurrent and each is a direct cause without which the injury would not have happened" because that language is important for the jury to understand that concurrent causes must work contemporaneously to produce the injury. Causes that work at different times to produce the injury are not concurring causes under South Carolina law. *See J.T. Baggerly v. CSX Transp., Inc.*, 635 S.E.2d 97, 101 (S.C. 2006) ("[C]oncurring causes operate contemporaneously to produce the injury, so that it would not have happened in the absence of either." (alteration in original) (quoting *Player v. Thompson*, 193 S.E.2d 531, 534 (S.C. 1972))). Defendants do not claim, as Plaintiff argues, that

the causes must "occur" simultaneously—that is not how Defendants describe the point in their proposed language. However, it is black letter law that concurring causes must "operate contemporaneously to produce the injury." *Id.*

Defendants object to Plaintiff's language to the extent it suggests its alleged injuries are indivisible. In South Carolina, injuries are treated as separate where they result from independent tortious conduct. *See Collins v. Bisson Moving & Storage, Inc.*, 504 S.E.2d 347, 349, 356 (S.C. Ct. App. 1998) (finding that plaintiff's injuries were separate where some injuries occurred in one car accident, and other injuries resulted from a second car accident while riding to the hospital in an ambulance). Moreover, Plaintiff has not explained why or how its alleged injuries are not divisible. Plaintiff's argument on indivisible injury puts the cart before the horse. Whether an injury is indivisible is a question of apportionment of damages, which can only come after a finding of causation and liability.

Defendants object to Plaintiff changing "injury" to "harm." Plaintiff does not present any authority that supports deviating from the model instruction.

Defendants object to Plaintiff using "negligence" instead of "Negligent Non-Protected Conduct." Instructions to the jury related to conduct should include language that incorporates the limitations on liability set forth in the Court's rulings about Section 230 and the First Amendment. *See* SD Order at 14; PI Order at 5, 22; Defs.' Position on Section 230 Instr.

### 5. INSTRUCTION NO. 22: NEGLIGENCE – INTERVENING CAUSE

[*Charleston objects to inclusion of this instruction. Defendants maintain that the Court should provide this instruction if it instructs on concurring cause.*]

**Instruction 22.1-P**

When deciding if a Defendant's actions were the proximate cause of the School District's harm, you must distinguish between a concurring cause and an intervening cause. Concurring causes work together to cause harm. An intervening cause happens after the main or primary cause.

An intervening cause breaks the chain of responsibility only if it was completely unexpected and not something the Defendants should have anticipated.

To determine if the Defendant is still responsible after the intervening cause, ask yourself if the Defendant could have reasonably predicted that another's actions would cause harm. If the Defendant should have foreseen that the actions of another could cause harm, then the Defendant may still be liable and the original negligence remains an active and contributing cause of the harm and liability exists for the consequences of negligent acts or omissions proximately flowing therefrom.

The test is whether the harm could reasonably have been anticipated. If the harm was a natural result of the Defendants' conduct and actions, even if their actions set off a chain of events leading to harm, if those events were foreseeable, Defendants are responsible, even if other factors were involved.

The law regarding foreseeability does not require proof of Defendants being able to foresee the exact consequences of their conduct. The test is whether the probable harm could reasonably have been anticipated. It is sufficient if they should have foreseen that their wrongful conduct was likely to cause some harm. The key is whether the harm was a foreseeable result of their conduct and actions, in which case they are liable, even if other causes were involved.

**Instruction 22.1-D**

The test by which the negligent conduct of the original wrongdoer is to be insulated as a matter of law by the independent negligent act of another is whether the intervening act and the injury resulting therefrom are of such character that the author of the primary negligence should

have reasonably foreseen and anticipated them in the light of attendant circumstances. The law requires only reasonable foresight, and when the injury complained of is not reasonably foreseeable, in the exercise of due care there is no liability. One is not charged with foreseeing that which is unpredictable or that which could not be expected to happen. When the negligence appears merely to have brought about a condition of affairs, or a situation in which another and entirely independent and efficient agency intervenes to cause the injury, the latter is to be deemed the direct or proximate cause, and the former only the indirect or remote cause.

Liability exists for the natural and probable consequences of negligent acts or omissions proximately flowing therefrom. The intervening negligence of a third person will not excuse the first wrongdoer if such intervention should have been foreseen in the exercise of due care. In such case, the original negligence still remains active, and a contributing cause of the injury. The test is whether the probable injurious consequences could reasonably have been anticipated.

Any cause which is natural and of continuous sequence, unbroken by any efficient intervening cause, produces the result complained of, and without which the result would not have occurred is proximate cause. A prior and remote cause cannot be made the basis of an action if such remote cause did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible, if there intervened between such prior or remote cause and the injury a distinct, successive, and unrelated and efficient cause of the injury, even though such injury would not have happened but for such condition or occasion. If no danger existed in the condition except because of the independent cause, such condition was not the proximate cause. If an independent negligent act or defective condition sets into operation the circumstances which result in injury because of the prior defective condition, such subsequent act or condition is the proximate cause.

The intervening negligence of another will not excuse the first tortfeasor, if the intermediate wrong or a similar one should have been foreseen in the exercise of due care; the original negligence remains active and constitutes a concurring proximate cause of the ultimate injury.

When you come to foreseeing a cause or a happening, the law does not require proof of your being able to foresee the exact consequences. It is sufficient if a person should have foreseen that his wrongful conduct was likely to cause some injury to some other person.

Such an intervening cause must be at least new and independent, not under the control of the original wrongdoer, or one which by the exercise of reasonable foresight and diligence he should have anticipated and guarded against. It must break the continuity of causal connection between the original wrongful act or omission and the injury, so that the former cannot be said to have been the efficient cause of the latter.

An intervening cause is an independent cause that intervenes between the original wrongful act or omission and the injury, turns aside the natural sequence of events, and produces a result that would not otherwise have followed and which could not have been reasonably anticipated. It is an act of an independent agency which destroys the causal connection between the negligent act of the defendant and the wrongful injury; the independent act being the immediate cause, in which case damages are not recoverable because the original wrongful act is not the proximate cause. The Defendants are liable for the intervening cause if it is foreseeable.

The mere fact that the intervention of a responsible human being can be traced between the defendant's wrongful act and the injury complained of will not absolve a defendant. On the contrary, the general rule is that whoever does a wrongful act is answerable for all the consequences that may ensue in the ordinary course of events. Even though such consequences are immediately and directly brought about by an intervening cause, if such intervening cause was set in motion by the original wrongdoer, or was in reality only a condition on or through which the negligent act operated to produce the injurious result, the wrongdoer is still liable. Any number of causes and effects may intervene between the first wrongful cause and the final injurious consequence. If they are such as might, with reasonable diligence have been foreseen, the last result, as well as the first, and every intermediate result is to be considered a proximate result of the first wrongful cause. The question always is: Was there any unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a succession of events so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? An intervening act of a third person breaks the chain of causation and obviates liability for the original breach of duty if it is a superseding cause and one which the original wrongdoer was not bound to anticipate as the natural or ordinary result of his acts. If, subsequent to an original wrongful

or negligent act, a new cause has intervened, of itself sufficient to stand as the cause of the injury, the former must be considered as too remote. However, if the character of the intervening act claimed to break the connection between the original wrongful act and the subsequent injury was such that its probable or natural consequences could reasonably have been anticipated or foreseen by the original wrongdoer, the causal connection is not broken and the original wrongdoer is responsible for all the consequences resulting from the intervening act.

The fact that an intervening act of a third person is negligent does not make it a superseding cause so as to relieve the original entity of liability if:

(1) the entity at the time of its conduct should have realized that a third person or entity might so act; or

(2) a reasonable entity knowing the situation existing when the act of the third person or entity was done would not regard it as highly extraordinary that the third person or entity had so acted; or

(3) the intervening act is a reasonable response to a situation created by the original entity's conduct and the manner in which it is done is not extraordinarily negligent.

A third party's acts of negligence do not break the causal chain if the acts are foreseeable. For an intervening force to be a superseding cause that relieves a defendant from liability, the intervening cause must be a cause that could not have been reasonably foreseen or anticipated. That is, the intervening negligence of a third person or entity will not excuse the first wrongdoer if such intervention ought to have been foreseen in the exercise of due care. In such case, the original negligence still remains active, and a contributing cause of the ultimate injury.

Evidence of an independent negligent act of a third party is directed to the question of proximate cause. To exculpate a negligent defendant, the intervening cause must be one which breaks the sequence or causal connection between the defendant's negligence and the injury alleged. The superseding act must so intervene as to exclude the negligence of the defendant as one of the proximate causes of the injury.

In order to relieve the defendant of responsibility for the event, the intervening cause must be a superseding cause. It is a superseding cause if it so entirely supersedes the operation of the

defendant's negligence that it alone, without his negligence contributing thereto in the slightest degree, produces the injury.

If the intervening acts are: (1) set in motion by the original wrongful act; and (2) are the normal and foreseeable result of the original act, the final result, as well as every intermediate cause, is considered in law to be the proximate result of the first wrongful cause. An intervening act does not break the chain of causation if it is a normal response to the situation created by the original wrongful act.

**PLAINTIFF'S AUTHORITY**: Anderson, S.C. Requests to Charge – Civil, 20-4; *see Bishop v. South Carolina Dep't of Mental Health*, 331 S.C. 79, 502 S.E.2d 78 (1998); *Oliver v. South Carolina Dep't of Hwys. and Pub. Transp.*, 309 S.C. 313, 422 S.E.2d 128 (1992).

**DEFENDANTS' AUTHORITY**: Anderson, South Carolina Requests to Charge – Civil, § 20-4 (rev. 2d ed. 2016).

**DATE SUBMITTED**: January 28, 2026

**DATE REVISED**: November 23, 2026

**1. Plaintiff's Argument**

**Instruction is Not Warranted.** Charleston objects to instructing the jury on intervening cause. In *Clark v. Cantrell*, the South Carolina Supreme Court held that "when instructing the jury, the trial court is required to charge only principles of law that apply to the issues raised in the pleadings and developed by the evidence in support of those issues." 529 S.E.2d 528, 539 (2000). The court further emphasized that "the trial court is not required to instruct the jury on a principle of law that is irrelevant to the case as proved." *Id*. An intervening-cause instruction is unwarranted, absent evidence that a subsequent, independent, and unforeseeable act by a third-party was alone sufficient to produce the injury. Defendants respond by citing the unofficial concurring-cause pattern instruction, which begins: "In determining the question of proximate cause, you must distinguish between an intervening cause and a concurring cause." That directive appears to be Judge Anderson's own drafting, not a holding of any case he cites.

**Charleston's Language is Preferable.** Charleston proposes non-substantive changes to the pattern instruction to improve readability, eliminate redundancy, and focus on a plain language explanation. *See* Anderson, S.C. Requests to Charge – Civil § 20-4. The pattern language is extremely repetitive and spans six double-spaced pages—length unnecessary to communicate the law to the jury. For example, most paragraphs of the pattern instruction simply restate the foreseeability test. Charleston's condensed version omits no governing rule and adds none.

Defendants' argument that this instruction "duplicate[s] core proximate cause concepts" overlooks that it explains distinct law on intervening cause that is not covered elsewhere. Defendants point to nothing in this instruction that is inconsistent with any proximate cause concepts. Nor does their objection account for the purpose of the instruction, which is to explain that "the original wrongful act is not the proximate cause" when "an independent cause which intervenes between the original wrongful act or omission and the injury, turns aside the natural sequence of events, and produces a result which would not otherwise have followed and which could not have been reasonably anticipated." Anderson, S.C. Requests to Charge – Civil 20-4.

Defendants further claim that Plaintiff's instruction misstates the standard of foreseeability. However, this reading is based on snippets plucked out of context. First, Defendants object to the

language that an "intervening cause only breaks the chain of responsibility if it was completely unexpected and not something the Defendants should have anticipated." But this is consistent with the model language (which Defendants adopt) that a defendant "is not charged with foreseeing that which is unpredictable or that which could not be expected to happen." Something that "could not be expected to happen" is unexpected. Defendants also ignore that Plaintiff's instruction fleshes out the standard by 1) instructing the jury that subsequent actions of others do not break the causal chain only if Defendants "could have reasonably predicted" and "should have foreseen" them, and 2) stating that "[t]he test is whether the harm could reasonably have been anticipated."

Second, Defendants object to the language "[i]t is sufficient if [Defendants] should have foreseen that their wrongful conduct was likely to cause some harm" because it allegedly "fails to account for the fact that Defendants are only responsible for what can be reasonably foreseen." Here again, Defendants resist language from the pattern instruction they propose. Anderson, S.C. Requests to Charge – Civil, 20-4 ("It is sufficient if a person should have foreseen that his wrongful conduct was likely to cause some injury to some other person."). They are also wrong. *See, e.g., J.T. Baggerly v. CSX Transp., Inc.*, 370 S.C. 362, 369, 635 S.E.2d 97, 101 (2006) ("the plaintiff need not prove that the defendant should have contemplated the particular event which occurred"). Finally, Defendants object that Plaintiff's instruction "equates 'foreseeable' with 'predictable.'" Again, the support is the model instruction, which tells the jury that a defendant "is not charged with foreseeing that which is unpredictable." Anderson, S.C. Requests to Charge – Civil, 20-4. By defining what a defendant need not foresee as the unpredictable, South Carolina law treats foreseeability and predictability as two descriptions of the same line.

**Repeated 230 Instruction.** Defendants' objection that Plaintiff's instruction "does not cabin the claims to Non-Protected Conduct" is unwarranted, and their speculation that "Plaintiffs will use the proposed intervening cause instruction to sidestep this Court's rulings on Section 230, the First Amendment, and third party conduct" is unfounded. Any appropriate restrictions based on these rulings will be covered in the relevant instructions and should not be reiterated here. *See supra* [Negligence—Elements], [Section 230], [Causation—Proximate Cause]; [Causation—Concurring Cause].

**2. Defendants' Argument**

Defendants object to the inclusion of this instruction as unnecessary and likely to lead to jury confusion. If no instruction on concurring cause is given, there should be no instruction on intervening cause. However, in the event that the jury is instructed on concurring cause over Defendants' objections, the jury should be instructed on both concurring cause and intervening cause. The South Carolina model instruction on concurring cause is clear that the jury must consider and evaluate both concepts together: "When deciding if a Defendant's actions were the proximate cause of the School District's harm, you must distinguish between an intervening cause and a concurring cause." Anderson, South Carolina Requests to Charge – Civil, § 20-3. Accordingly, the jury must be instructed on both concepts, if instructed on the other. Absent an instruction on concurring cause, there is no basis for instructing on intervening cause in this case. Plaintiff's position appears to be that this instruction is necessary because Defendants may present evidence of alternative causes (e.g., COVID-19) at trial. That misunderstands the distinction between alternative causes, on the one hand, and intervening causes, on the other. An alternative cause is a cause that Defendants contend is the actual cause of any injuries suffered by Plaintiff. They exist independently of Defendants' actionable conduct. Because Defendants are not arguing that these alternative causes are intervening, the Court should not provide an instruction on intervening cause.

Plaintiff's proposed instruction introduces confusion by duplicating core proximate cause concepts. Refusing to give this instruction would not be error, as the proximate cause instruction adequately instructs the jury on principles of foreseeability. *See L.A. Mem'l Coliseum Comm'n v. NFL*, 726 F.2d 1381, 1398 (9th Cir. 1984) ("Well-tailored and specific instructions" may be necessary where "abstract legal principles are not self-explanatory to a lay jury" and the facts "are complex").

Defendants anticipate that Plaintiff will use the proposed intervening cause instruction to sidestep this Court's rulings on Section 230, the First Amendment, and third-party conduct; by omitting guidance tethered to those rulings and failing to delineate what may constitute "the natural, reasonable, and probable result" of Defendants' Non-Protected Conduct, the instruction invites juror confusion and encourages the jury to ascribe liability based on evidence of non-actionable conduct,

effectively nullifying the Court's rulings through an all-purpose causation workaround. Given the complexity of determining which conduct is protected by Section 230 and the First Amendment, as well as the bar on recovery for certain third-party conduct, the instruction is likely to mislead the jury and permit a verdict resting on evidence of non-actionable conduct, contrary to the Court's prior rulings. *See* SD Order at 2, 12–14; PI Order at 14; Defs.' Position on Section 230 Instr.

If the Court provides this instruction over Defendants' objection, Defendants object to Plaintiff's substantial re-write of the model instruction and request that the Court provide an instruction in line with the model instruction.

Defendants object to the language "An intervening cause breaks the chain of responsibility only if it was completely unexpected and not something the Defendants should have anticipated" because it misstates the standard for intervening causes. As the model instruction makes clear, the standard to anticipate intervening causes is *reasonable foresight* and that a defendant "is not charged with foreseeing that which is unpredictable or that which could not be expected to happen." Likewise, the statement that "It is sufficient if they should have foreseen that their wrongful conduct was likely to cause some harm" is not accurate because it fails to account for the fact that Defendants are only responsible for what can be reasonably foreseen and does not cabin the claims to Non-Protected Conduct.

Defendants further object to Plaintiff adding language that equates "foreseeable" with "predictable," as Plaintiff provides no support for this proposition.

Defendants object to Plaintiff changing "injury" to "harm." Plaintiff does not present any authority that supports deviating from the model instruction.

**6. INSTRUCTION NO. 23: STATUTE OF LIMITATIONS**

**[*Charleston objects to instructing the jury on the statute of limitations, as an instruction is not supported by the evidence and Defendants have not shown they are entitled to such an instruction. Defendants' proposal in green text; Charleston's proposal in blue text.*]**

Defendants raise the affirmative defense of the statute of limitations, which requires that Charleston County School District file its lawsuit within a certain period of time, depending on the type of claim. Defendants have the burden of proving this affirmative defense by a preponderance of the evidence. The statute of limitations for a negligence action is three years. The statute of limitations on a negligence claim accrues, or starts to run, at one of two times. First, a negligence claim can accrue at the time of the negligence. Alternatively, under what is called the discovery rule, a negligence claim can accrue when the facts and circumstances would put a person or entity of common knowledge on notice that they might have a claim against another party. The date on which discovery should have been made is an objective, not subjective, question.

An action accrues when the injury harm is discovered or "reasonably ought to have been discovered." The "reasonably ought to have been discovered" requirement is the "reasonable diligence" requirement. The exercise of reasonable diligence means simply that a party must act with some promptness where the facts and circumstances of the injury harm would put a person or entity an entity on notice that some claim against another party might exist.

The statute of limitations begins to run from this point and not when advice of counsel is sought or a full blown theory of recovery is developed. The fact that the injured harmed party may not comprehend the full extent of the damage is immaterial.

In this case, you should find that the statute of limitations bars Charleston County School District's recovery against a Defendant if you find that the Defendant proved by a preponderance of the evidence that by August 14, 2020, Charleston County School District knew or should have known, through the exercise of reasonable diligence, that it might have a cause of action against Defendants as of August 14, 2020:

(1) It had been harmed; and

(2) The Defendant was the cause of its harm.

**PLAINTIFF'S AUTHORITY**: Anderson, S.C. Requests to Charge – Civil, 27-29 (modified); *see also Dunbar v. Carlson*, 341 S.C. 261, 533 S.E.2d 913 (Ct. App. 2000); *Doe v. Bishop of Charleston*, 407 S.C. 128, 754 S.E.2d 494 (2014); *McClain v. Jarrard*, 354 S.C. 218, 580 S.E.2d 763 (Ct. App. 2003); *Simons v. Wal-Mart Stores East, L.P.*, 2014 WL 2434825, at *3 (D.S.C. May 29, 2014).

**DEFENDANTS' AUTHORITY**: There is no pertinent Ninth Circuit Model Instruction or South Carolina Instruction for general negligence cases. *See also* S.C. Code Ann. § 15-3-530(5) (2005); *Gibson v. Bank of Am., N.A.*, 680 S.E.2d 778, 782 (S.C. Ct. App. 2009); *Burgess v. Am. Cancer Soc'y, S.C. Div., Inc.*, 386 S.E.2d 798, 800 (S.C. Ct. App. 1989); *Grillo v. Speedrite Products, Inc.*, 532 S.E.2d 1, 3 (S.C. Ct. App. 2000); *Snell v. Columbia Gun Exch., Inc.*, 278 S.E.2d 333, 334 (S.C. 1981); *Brown v. Finger*, 124 S.E.2d 781, 786 (S.C. 1962).

**DATE SUBMITTED**: January 28, 2026

**DATE REVISED**: November 23, 2026

**1. Plaintiff's Argument**

**Instruction is Not Warranted.** Charleston objects to instructing the jury on the statute of limitations, as there is no evidentiary support for such an instruction, nor have Defendants demonstrated any basis for a determination that they are entitled to such an instruction. Under South Carolina law, the defendant bears the burden of proving the statute of limitations defenses, *Brown v. Finger*, 124 S.E.2d 781, 786 (1962), and courts should refrain from instructing juries on affirmative defenses in the absence of any evidentiary proof of such defense. *Hoffman v. Greenville Cnty*., 129 S.E.2d 757, 760 (1963).

**Charleston's Language is Preferable.** If the Court provides an instruction on statute of limitations, the parties agree on the substance of the instruction, but Charleston makes two important alterations that will be helpful for the jury. The first is to substitute "harm" for "injury," as Charleston has done throughout. The second is to break out the elements of the discovery rule into numbered components, which will make the rule easier for jurors to apply.

**2. Defendants' Argument**

Plaintiff provides no authority for why this instruction should not be given when Defendants are pursuing this affirmative defense. Plaintiff's cited cases support Defendants' position or are inapposite. *See Simons v. Wal-Mart Stores E., L.P.*, 2014 WL 2434825, at *5 (D.S.C. May 29, 2014) (granting statute of limitations defense at summary judgment stage); *McClain v. Jarrard*, 580 S.E.2d 763, 764 (S.C. Ct. App. 2003) (per curiam) (upholding summary judgment grant on statute of limitations ground where plaintiff sued defendants more than three years after discovery of their injury); *Dunbar v. Carlson*, 533 S.E.2d 913, 916 (S.C. Ct. App. 2000) (dismissing statute of limitations defense where it was not pled in the answer); *Doe v. Bishop of Charleston*, 754 S.E.2d 494, 501 (S.C. 2014) (overturning motion to dismiss in part on the grounds that a potential tolling issue precluded application of the statute of limitations).

Defendants' proposed reference to August 14, 2020, is not arbitrary, and does not tell the jury that Plaintiff's claim accrued on that date. Defendants do not disagree that it is the role of the jury to determine when Plaintiff's claim accrued. This instruction would tell the jury to determine whether Plaintiff knew or should have known that it had a cause of action before August 14, 2020—three years before Plaintiff filed its complaint in this litigation. If so, Plaintiff's claims are barred.

Defendants object to Plaintiff's proposed language, stating that the standard for when the statute of limitations begins to run is when a party knows "it had been harmed" and that "the Defendant was the cause of its harm." That is not the standard under South Carolina law. Plaintiff's language impermissibly raises the bar for what a potential plaintiff's level of knowledge should be. All that is required is that the plaintiff know or should know "that a cause of action might exist in his or her favor"—there is no requirement in South Carolina that the plaintiff know who caused its injuries before the statute of limitations begins to run. *Gibson v. Bank of Am., N.A.*, 680 S.E.2d 778, 782 (S.C. Ct. App. 2009).

Defendants object to Plaintiff changing "injury" to "harm." Plaintiff does not present any authority that supports deviating from the model instruction.

**7. INSTRUCTION NO. 24: COMPARATIVE NEGLIGENCE**

[***Charleston objects to instructing the jury on comparative fault to the extent that Defendants argue Charleston is at fault, as an instruction is not supported by the evidence and Defendants have not shown they are entitled to such an instruction.***]

**Instruction 24.1-P**

Defendants raise the affirmative defense of comparative negligence. Comparative negligence seeks to assess and compare the negligence of the Plaintiff and the Defendants, but only if Defendants meet their burden of proving by a preponderance of the evidence that Charleston County School District was negligent at all. To prove comparative negligence, Defendants have the burden of proving by a preponderance of the evidence that: (1) Charleston County School District owed a duty to the Defendants; (2) Charleston County School District breached that duty; and (3) Charleston County School District's negligence was a proximate cause of the same harm, if any, caused by Defendants.

If Defendants meet that burden, then you must compare the School District's negligence to the combined negligence of all Defendants. You will express your determinations in the form of percentages. The percentages allocated between Charleston County School District and the Defendants must total 100%. If a party was not negligent, or if its negligence did not proximately contribute to the harm, then the percentage of negligence attributed to that party would be zero (0).

**Instruction 24.1-D**

Under the doctrine of comparative negligence, a plaintiff's negligence does not automatically bar recovery unless such negligence exceeds that of the defendant. When there is more than one defendant, the plaintiff's negligence shall be compared to the combined negligence of all defendants. A plaintiff in a negligence action where there is more than one defendant may recover damages if its negligence is not greater than the combined negligence of all defendants. The amount of the plaintiff's recovery shall be reduced in proportion to the amount of its negligence, if any.

You, the jury, must apportion fault between the Charleston County School District and the Defendants in this action. The School District may recover damages when its negligence is not

greater than that of the Defendants. The School District's damages, however, may be reduced in proportion to the amount of its negligence, if any.

One of the defenses asserted by the Defendants is comparative negligence. The Defendants in essence say this: Even if the jury should find that we were at fault, Charleston County School District was more at fault than we were, and the fault of all of us combined and concurred to act as the proximate cause of the injury and, without which, the injury would not have happened. In other words, it required the fault of each of us for the injury to have happened, but the Charleston County School District was more at fault than we were.

Charleston County School District has the burden of proving the negligence and fault, if any, of each Defendant. The Defendants have the burden of proving the negligence and fault, if any, of Charleston County School District and the degree of such.

Where negligence has been established on the part of both the Defendants and Charleston County School District, then you must weigh or compare the respective contributions of each party to the occurrence. You must determine whether Charleston County School District's negligence made a larger contribution than the Defendants' negligent Non-Protected Conduct.

In making this comparison, the degree of negligence attributable to a party should be measured by the conduct of a party as a whole. That is to say, once it has been established that each has been at fault, it is then the jury's function to weigh their respective contributions to the result, which will, regardless of the nature of their acts or omissions, determine who made the larger contribution and to what extent it exceeds or is less than that of the other.

If you find that the occurrence was proximately caused by Negligent Non-Protected Conduct on the part of one or more Defendants and not by negligence on the part of Charleston County School District, then the School District is entitled to recover the full amount of any damages you may find it has sustained as a result of the occurrence.

If you find the occurrence was proximately caused by both the negligence of Charleston County School District and Negligent Non-Protected Conduct of one or more Defendants, then you must compare the percentages of that negligence. If the negligence of the School District is less than or equal to the combined Negligent Non-Protected Conduct of the Defendants, then the School

District is entitled to recover any damages which you may find it has sustained as a result of the occurrence after you have reduced its damages in proportion to the degree of the School District's own negligence. On the other hand, if the Defendants did not engage in Negligent Non-Protected Conduct or if the combined Negligent Non-Protected Conduct of the Defendants was less than the negligence of the Charleston County School District, then the School District is not entitled to recover any damages. If you find the School District's negligence to be greater than the combined Negligent Non-Protected Conduct of the Defendants against whom recovery is sought, then the School District shall not recover and you will find for the Defendants.

Comparative negligence, if proven by the Defendants, can have one of two possible effects. First, comparative negligence will totally defeat a recovery by the School District if the negligence of the School District was greater than that of the combined Negligent Non-Protected Conduct of the Defendants. Another way of saying this is to say that a School District can recover only when its negligence, if any, is equal to or less than the Negligent Non-Protected Conduct of the Defendants. In order to prevent a verdict in favor of a School District injured by the Negligent Non-Protected Conduct of a Defendant, the Defendants have the burden of proving by the greater weight or preponderance of the evidence that the School District was negligent and that the School District's negligence was greater than the Negligent Non-Protected Conduct of the Defendants.

The second possible effect of comparative negligence is that, if proven, it will reduce or partially defeat the School District's recovery. This applies when the School District's negligence is equal to or less than the combined Negligent Non-Protected Conduct of the Defendants. Such a reduction is made when the Defendants prove, by the preponderance or greater weight of the evidence, that the plaintiff was negligent but that the plaintiff's negligence was equal to or less than the combined Negligent Non-Protected Conduct of the Defendants.

Please remember that the School District's negligence must have contributed proximately to its injury. If the negligence of the School District operated only remotely and not proximately to cause the injury, the plaintiff is neither barred from recovery nor is its recovery reduced in any way. You will express your determinations in the form of percentages. The percentages allocated between Charleston County School District and the Defendants must total 100%.

If a Defendant did not engage in Negligent Non-Protected Conduct, or if such conduct did not proximately contribute to Charleston County School District's injuries, then the percentage of negligence attributed to that Defendant would be zero (0), and the 100% would be allocated among the remaining party or parties based on the greater weight of the evidence.

**PLAINTIFF'S AUTHORITY**: Anderson, S.C. Requests to Charge – Civil, 23-1; Anderson, S.C. Requests to Charge – Civil, 23-4; *see also Ross v. Paddy*, 340 S.C. 428, 532 S.E.2d 612 (Ct. App. 2000); *Creech v. South Carolina Wildlife & Marine Res. Dep't*, 328 S.C. 24, 491 S.E.2d 571 (1997); *Ott v. Pittman*, 320 S.C. 72, 78 (Ct. App. 1995).

**DEFENDANTS' AUTHORITY**: Anderson, South Carolina Requests to Charge – Civil, § 23-1 (rev. 2d ed. 2016); Anderson, South Carolina Requests to Charge – Civil, § 23-4 (rev. 2d ed. 2016).

**DATE SUBMITTED**: January 28, 2026

**DATE REVISED**: November 23, 2026

**1. Plaintiff's Argument**

**Instruction is Not Warranted.** Charleston objects to a jury instruction based on comparative fault, as there is no evidentiary support therefor, and as such Defendants have not demonstrated they are entitled to such an instruction. South Carolina law requires a clear evidentiary foundation requirement for all jury instructions. In *Clark v. Cantrell*, the South Carolina Supreme Court held that "when instructing the jury, the trial court is required to charge only principles of law that apply to the issues raised in the pleadings and developed by the evidence in support of those issues." 529 S.E.2d 528, 539 (2000). The court further emphasized that "the trial court is not required to instruct the jury on a principle of law that is irrelevant to the case as proved." *Id*. The South Carolina Court of Appeals recently reaffirmed this principle in a case specifically addressing comparative negligence instructions in *Mills v. South Carolina State Ports Authority*, holding that trial courts commit an abuse of discretion when their ruling "is based on an error of law or is not supported by the evidence." 865 S.E.2d 910, 914 (Ct. App. 2021) (quoting *Cole v. Raut*, 663 S.E.2d 30, 33 (2008)).

Since comparative negligence is an affirmative defense, Defendants bear the burden of presenting evidence sufficient to establish all elements of negligence against the Charleston County School District, including duty, breach, causation, and damages. Indeed, the *Mills* Court concluded that defendants seeking comparative negligence instructions must present evidence to support an inference that the plaintiff was negligent, including evidence that the plaintiff breached a duty of care owed to the defendant. 865 S.E.2d 910, 916. When defendants fail to meet this evidentiary burden, the trial court properly excludes this instruction to prevent jury confusion. As the South Carolina Supreme Court explained in *Berberich v. Jack*, "a jury charge consisting of irrelevant and inapplicable principles may confuse the jury and constitutes reversible error where the jury's confusion affects the outcome of the trial." 709 S.E.2d 607, 611 (2011) (quoting *Cole* at 33). Not charging the jury with inapplicable principles protects the integrity of jury deliberations by ensuring that legal instructions correspond to actual factual dispute presented by the evidence. Moreover, if such an instruction is given, it must include the elements of negligence to prevent confusion between a determination of liability and fault apportionment and be streamlined to clearly convey the legal

concept. "[t]he substance of the law is what must be instructed to the jury, not any particular verbiage." *State v. Marin*, 783 S.E.2d 808, 812 (2016).

**Charleston's Language is Preferable.** As with other South Carolina pattern instructions, Charleston has endeavored to streamline the heavily repetitive, and sometimes antiquated language without changing the substance. The two changes Charleston made to the instruction were (1) to clearly set forth what Defendants must prove, Charleston has provided the elements that must be met to find Charleston's negligence was a proximate cause of its harm, and (2) to substitute "harm" for "injury," to better fit the facts of the case. *See Rickborn v. Liberty Life Insurance Co.*, 468 S.E.2d 292, 298-99 (S.C. 1996).

Defendants argue the instruction should explain that there are two possible effects of comparative negligence: totally barring the claim, or reducing damages. To the contrary, the jury's task on comparative negligence is to find each side's share of the fault that proximately caused the harm. What follows from that finding happens by operation of law. Defendants' position that the instruction should explain the allocation of fault among *Defendants* misapprehends the application of S.C. Code § 15-38-15(C) ("The jury . . . shall: (1) specify the amount of damages; (2) determine the percentage of fault, if any, of plaintiff and the amount of recoverable damages under applicable rules concerning 'comparative negligence'; and (3) upon a motion by at least one defendant . . . specify in a separate verdict . . . the percentage of liability that proximately caused the indivisible injury, death, damage to property, or economic loss from tortious conduct . . . that is a attributable to each defendant whose actions are a proximate cause of the indivisible injury, death, or damage to property.").

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense again here. *See supra* [Negligence]; [Section 230].

**2. Defendants' Argument**

Plaintiff provides no authority for why this model instruction should not be given when Defendants are pursuing this affirmative defense. The evidentiary foundation for this defense will be laid at trial and is previewed in the summary judgment briefing. After the close of the evidence, Plaintiff can raise this objection, but Defendants preserve now their ability to seek this instruction. The Court can and should decide later whether to give this instruction after considering the evidence that Defendants present on this issue at trial.

For example, at trial, Defendants anticipate presenting evidence that Plaintiff's injuries were caused by Plaintiff's own decisions, e.g., funding priorities, staffing decisions, staff and teacher training (or lack thereof). Additionally, Defendants anticipate presenting evidence that Plaintiff itself, and its teachers and staff, promoted the use of Defendants' platforms to its students and families for educational and non-educational purposes, both in the classroom and outside the classroom. While Defendants dispute whether their platforms cause the injury Plaintiff alleges, Defendants anticipate arguing that if Plaintiff believed that Defendants' platforms were dangerous, the jury will have ample evidence to find that Plaintiff failed to exercise ordinary care, resulting in its injuries.

Defendants object to Plaintiff's proposed deletion of two paragraphs from the model instructions that explain that there are two possible effects of comparative negligence: totally barring the claim, or reducing damages. This language should be included to fully explain these diverging outcomes to the jury.

Defendants object to Plaintiff's removal of the paragraph explaining that if one Defendant is zero percent at fault, then 100% of the fault must be allocated to the remaining parties. That language is pulled from South Carolina model instruction 23-4 and explains an important concept to the jury that would aid their ultimate allocation of responsibility.

Plaintiff's cited cases do not support its position. In *Mills*, the court found that it was not error to reject a comparative negligence instruction because the party seeking that instruction "failed to present evidence to support an inference [plaintiff] was negligent." 865 S.E.2d 910, 915

(S.C. Ct. App. 2021). That is not the case here, and in any event, Plaintiff can make that argument after the close of evidence.

The Court should not instruct the jury that it is a Defendant's burden to establish that Plaintiff owed a duty to a Defendant. Comparative negligence asks if a plaintiff's "own negligence is not greater than that of the defendant." *Hurd v. Williamsburg Cnty.*, 611 S.E.2d 488, 492 (S.C. 2005). Here, Plaintiff offers no explanation for how a breach of a duty it owes to Defendants could cause injury to Plaintiff. No South Carolina case has interpreted the state's comparative negligence jurisprudence in the same way that the Court of Appeals did in *Mills*, so this Court should not follow *Mills* here. The proper analysis is whether Plaintiff's negligence contributed to its own injuries. *See, e.g.*, *Bass v. Gopal, Inc.*, 680 S.E.2d 917, 922 (S.C. Ct. App. 2009), *aff'd*, 716 S.E.2d 910 (S.C. 2011) (comparing plaintiff's negligence in confronting an assailant against a hotel's possible innkeeper negligence); *Berberich v. Jack*, 709 S.E.2d 607, 615 (S.C. 2011) (purpose of comparative negligence is that "each party's relative fault in causing the *plaintiff's injury* will be given due consideration" (emphasis added)); *Wilson v. Marshall*, 195 S.E.2d 610, 612 (S.C. 1973) (parties have a "duty to exercise due care for one's own safety"). *Cf. Woods v. Rabon*, 368 S.E.2d 471, 473 (S.C. Ct. App. 1988) ("The defense of contributory negligence does not depend on any duty owed by the injured party to the party sued. All that is necessary to establish the defense is to prove to the satisfaction of the jury that the injured party did not in his own interest take reasonable care of himself and contributed, by this want of care, to his own injury.").

Any duty running from Plaintiff to Defendants here is irrelevant because Defendants are not asserting any counterclaims or injuries of their own. Defendants object to Plaintiff changing "injury" to "harm." Plaintiff does not present any authority that supports deviating from the model instruction.

Defendants object to Plaintiff using "negligence" instead of "Negligent Non-Protected Conduct." Instructions to the jury related to conduct should include language that incorporates the limitations on liability set forth in the Court's rulings about Section 230 and the First Amendment. *See* SD Order at 14; PI Order at 5, 22; Defs.' Position on Section 230 Instr.

**8. INSTRUCTION NO. 25: ASSUMPTION OF RISK**

**[*Charleston objects to instructing the jury on assumption of the risk, as an instruction is not supported by the evidence and Defendants have not shown they are entitled to such an instruction. Defendants' proposal in green text; Charleston's proposal in blue text.*]**

The Defendants raise assumption of risk as an affirmative defense. If you find that Charleston County School District assumed the risk of its alleged injury, you cannot find for the School District.

There are four requirements to establishing assumption of risk:

(1) the plaintiff must have knowledge of the facts constituting the risk harmful condition;

(2) the plaintiff must know the risk could cause its alleged injury condition is harmful;

(3) the plaintiff must appreciate the nature and extent of the risk harm; and

(4) the plaintiff must voluntarily expose itself to the risk harm.

This is predicated on the situation of a defendant's acts alone creating the risk of harm and causing the injury damages, with the plaintiff voluntarily exposing itself to such an obvious risk with appreciation of the danger which resulted in the injury harm. Assumption of risk may be implied from the plaintiff's conduct.

A plaintiff's conduct in assuming a risk can be compared with will not bar recovery unless its negligence exceeds the defendant's negligence. A plaintiff's conduct in assuming the risk will not bar recovery unless his negligence exceeds the defendant's negligence. A plaintiff is not barred from recovery by the doctrine of assumption of risk unless the degree of fault arising therefrom is greater than the negligence of the defendant.

**PLAINTIFF'S AUTHORITY**: Anderson, S.C. Requests to Charge – Civil, 23.8 Comparative Negligence – Doctrine of Assumption of Risk.

**DEFENDANTS' AUTHORITY**: Anderson, South Carolina Requests to Charge – Civil, § 23-8 (rev. 2d ed. 2016); *Hurst v. E. Coast Hockey League, Inc.*, 637 S.E.2d 560, 562 (S.C. 2006).

**DATE SUBMITTED**: January 28, 2026

**DATE REVISED**: November 23, 2026

### 1. Plaintiff's Argument

**Instruction is Not Warranted.** Plaintiffs object to instructing the jury on assumption of the risk, as such an instruction is neither supported by the evidence nor have Defendants demonstrated they are entitled to such an instruction.

The South Carolina Supreme Court in *Davenport v. Cotton Hope Plantation Horizontal Property Regime* held that "the absolute defense of assumption of risk is inconsistent with South Carolina's comparative negligence system." 508 S.E.2d 565, 573 (1998). The *Davenport* Court distinguished between three types of assumption of risk—express, primarily implied, and secondary implied assumption of risk—determining that only secondary implied assumption of risk is a defense to negligence. *Id.* at 570-71. "Express assumption of risk applies when the parties expressly agree in advance, either in writing or orally, that the plaintiff will relieve the defendant of his or her legal duty toward the plaintiff." *Id.* at 569. For this reason, an action for express assumption of risk "sounds in contract, not tort, and is based upon an express manifestation of consent." *Id.* at 570. "Primary implied assumption of risk arises when the plaintiff impliedly assumes those risks that are *inherent* in a particular activity." *Id.* (emphasis in original). Therefore, "[p]rimary implied assumption of risk is not a true affirmative defense," as it does not focus on plaintiff's conduct in assuming the risk, but "instead goes to the initial determination of whether the defendant's legal duty encompasses the risk encountered by the plaintiff." *Id.* For this reason, the query under the doctrine of implied assumption of risk goes to whether a duty of care exists which encompasses the risk involved, *Hurst v. E. Coast Hockey League, Inc.*, 637 S.E.2d 560, 562-63 (2006), rather than an apportionment of fault under the doctrine of comparative negligence.

Secondary implied assumption of risk "arises when the plaintiff knowingly encounters a risk created by the defendant's negligence" and operates as "a true defense because it is asserted only after the plaintiff establishes a *prima facie* case of negligence against the defendant." *Davenport*, 508 S.E.2d at 571. The Court found this form of assumption of risk fundamentally at odds with comparative negligence because it "may involve either reasonable or unreasonable conduct on the part of the plaintiff" yet still result in complete barring recovery. *Id.* at 572-73. It therefore held that

"a plaintiff is not barred from recovery by the doctrine of assumption of risk unless the degree of fault arising therefrom is greater than the negligence of the defendant." *Id*. at 573-74.

As a threshold matter, Defendants have not put forth evidence that Charleston knowingly encountered a risk created by their negligence which renders a jury instruction on assumption of risk inapplicable. South Carolina courts have recognized that instructing juries on assumption of risk can create harmful confusion when the defense does not properly apply. In *Cole v. Raut*, the Supreme Court held that "[a] jury charge consisting of irrelevant and inapplicable principles may confuse the jury and constitutes reversible error where the jury's confusion affects the outcome of the trial." 663 S.E.2d 30, 33 (2008). Assumption of the risk requires that "the injured party must have freely and voluntarily exposed himself to a known danger which he understood and appreciated." *Id*. Defendants want an assumption-of-risk instruction because CCSD runs Facebook pages, Instagram accounts, and YouTube channels to reach parents and students, and lets teachers use YouTube in class. But no element of the defense is met by an institution's adult-administered use of a platform.

**Charleston's Language is Preferable.** If an assumption-of-risk instruction is given, Charleston's language is preferrable. Defendants' instruction that, if the jury finds assumption of risk, "you cannot find for the School District" is the complete bar *Davenport* abolished. 508 S.E.2d at 573-74. And "harm" should be substituted for "injury," as it more closely aligns with the characterization in the pleadings and evidence in this matter and, therefore, more accurately conveys the basis for Charleston's claim. *See Rickborn v. Liberty Life Insurance Co.*, 468 S.E.2d 292, 298-99 (S.C. 1996); *see also Fairchild v. S.C. Dep't of Transp.*, 683 S.E.2d 818, 822 (Ct. App. 2009) ("[J]ury instructions should be confined to the issues made by the pleadings and supported by the evidence."), *aff'd*, 727 S.E.2d 407 (2012); *Carolina Home Builders, Inc. v. Armstrong Furnace Co.*, 191 S.E.2d 774, 780 (1972) ("[I]nstructions should be confined to issues made by the pleadings and evidence, and an instruction which tenders an issue not so raised is error.").

**2. Defendants' Argument**

Charleston County School District's continued use of some of Defendants' platforms (Facebook, Instagram, and YouTube) before and after filing its complaint warrants this instruction. To this day, Plaintiff uses these platforms to communicate with parents and students, creates content specifically designed for students to view, and even allows and encourages the use of YouTube as an educational tool. Defendants' proposed language that "A plaintiff's conduct in assuming a risk can be compared with the defendant's negligence. A plaintiff's conduct in assuming the risk will not bar recovery unless his negligence exceeds the defendant's negligence" adequately incorporates the standard from *Davenport*.

Defendants object to Plaintiff changing "injury" to "harm." Plaintiff does not present any authority that supports deviating from the model instruction.

Defendants object to Plaintiff using "negligence" instead of "Negligent Non-Protected Conduct." Instructions to the jury related to conduct should include language that incorporates the limitations on liability set forth in the Court's rulings about Section 230 and the First Amendment. *See* SD Order at 14; PI Order at 5, 22; Defs.' Position on Section 230 Instr.

**9. INSTRUCTION NO. 26: DAMAGES – NOMINAL DAMAGES**

**[*Charleston objects to inclusion of this instruction. Defendants' proposal in green text; Charleston's proposal in blue text.*]**

The Defendants have denied Charleston County School District sustained any real or substantial harm as a result of Defendants' conduct. If you find a Defendant's Negligent Non-Protected Conduct one or more Defendants' negligence caused the School District some damage, but the evidence does not convince you the School District sustained substantial damages as a proximate result of that Negligent Non-Protected Conduct negligence, you could find nominal damages in favor of the School District.

A small sum, known as nominal damages, may be awarded when the plaintiff has proved no substantial loss or injury harm but when the law recognizes the violation or invasion of a legal right or the breach of a duty, or when the plaintiff's evidence shows the existence but not the amount of an actual injury harm. Nominal damages are a trivial or trifling sum awarded to a plaintiff in an action where there is not substantial loss or injury harm to be compensated, but still the law recognizes a technical invasion of the plaintiff's rights or a breach of the defendant's duty. Nominal damages are awarded for the vindication of a right where no real loss or injury harm can be proved.

If no actual damages capable of pecuniary estimation have been sustained, but the legal rights of Charleston County School District have been thereby violated through a Defendant's Negligent Non-Protected Conduct one or more Defendants' negligence, you can award only nominal damages—such as one dollar, one cent, or other inconsiderable amount—to vindicate the School District's legal right.

**PLAINTIFF'S AUTHORITY**: Anderson, S.C. Requests to Charge – Civil, 13-1; *Stevens v. Allen*, 342 S.C. 47, 53 n.5, 536 S.E.2d 663, 665 n.5 (2000); *Stephens v. Draffin*, 327 S.C. 1, 488 S.E.2d 307 (1997).

**DEFENDANTS' AUTHORITY**: Anderson, South Carolina Requests to Charge – Civil, § 13-1 (rev. 2d ed. 2016).

**DATE SUBMITTED**: January 28, 2026

**DATE REVISED**: November 23, 2026

**1. Plaintiff's Argument**

**Instruction is Not Warranted.** Plaintiff objects to this instruction because Charleston is not seeking nominal damages. *See, e.g.*, *Vilkhu v. City of New York*, No. 06-CV-2095 CPS JO, 2009 WL 537495, at *6 (E.D.N.Y. Mar. 3, 2009) ("In cases where the proof of plaintiff's injury is ... contested ... a nominal damages instruction affords the jury an opportunity to engage in improper compromise. In such cases, a plaintiff should be allowed to determine whether to seek both nominal and compensatory damages, or whether to remove the option of nominal damages from the jury's consideration and instead seek an outcome in his case based on his showing of proximately caused actual injury.").

**Charleston's Language is Preferable.** Should the Court nevertheless include this instruction, Charleston's proposed language follows South Carolina's pattern instruction on nominal damages. *See* Anderson, S.C. Requests to Charge – Civil 13-1. Charleston's only edits are to substitute "harm" for "injury" to more accurately align with the facts and claims in this case, *see* *Rickborn v. Liberty Life Insurance Co.*, 468 S.E.2d 292, 298-99 (S.C. 1996), to clarify that the jury may award nominal damages in cases where one or more Defendants are found to be negligent, and to remove the word "trifling" which is redundant of "trivial" but less commonly understood.

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence]; [Section 230].

**2. Defendants' Argument**

This instruction should be given to guide the jury in the event they find that Plaintiff has not proved it suffered substantial damages, which is probable given the novel, tenuous, and unsupported damages theories Plaintiff has elected to pursue in this case. Plaintiff's cite to *Vilkhu*, which applied federal and New York state law, 2009 WL 537495, at *1, does not bear on South Carolina law.

Defendants object to Plaintiff changing "injury" to "harm." Plaintiff does not present any authority that supports deviating from the model instruction.

Defendants object to Plaintiff using "negligence" instead of "Negligent Non-Protected Conduct." Instructions to the jury related to conduct should include language that incorporates the limitations on liability set forth in the Court's rulings about Section 230 and the First Amendment.

**10. INSTRUCTION NO. 27: DAMAGES – ACTUAL DAMAGES**

**[*Charleston proposes giving this instruction as a single, consolidated compensatory damages instruction in lieu of separately instructing on the elements of actual damages (No. 28) and future damages (currently No. 29).*[15] *Defendants' proposal in green text; Charleston's proposal in blue text.*]**

If you find for Charleston County School District on the issue of negligence, then you must consider the question of damages. It will be your duty to determine what, if any, award amount of money will fully and fairly compensate Charleston County School District. The law calls this "actual" or "compensatory" damages, meaning the money is to compensate, or make the harmed party whole.

Actual damages are properly called compensatory damages, meaning to compensate, to make the injured party whole, to put it in the same position it was in prior to the damages received insofar as this is monetarily possible. In other words, actual or compensatory damages include compensation for all injuries which are naturally the proximate result of the alleged negligent Non-Protected Conduct of a Defendant.

Actual damages are awarded to a litigant in compensation for its actual loss or injury harm. Actual damages are such as will compensate the party for injuries harms suffered or losses sustained. They are such damages as will simply make good or replace the loss caused by the Negligent Non-Protected Conduct or injury. Actual damages are damages in satisfaction of, or in recompense for, loss or injury sustained. The goal is to restore the injured party harmed entity, as nearly as possible through the payment of money, to the same position it was in before the wrongful injury harm occurred.

The basic measure of actual damages is the amount needed to compensate Charleston County School District for the losses proximately caused by a Defendant's wrong so that the School District will be in the same position it would have been in if there had been no wrongful injury Defendants' wrongful conduct.

---

[15] If the Court gives separate instructions for out-of-pocket and future damages, Charleston respectfully submits that the future damages instruction (now Instruction No. 32) should come immediately after Instruction No. 28.

In determining the amount of compensation for harms suffered by Charleston County School District, it is proper for you to consider and award damages for out-of-pocket expenses. However, the School District's damages are not limited to its out-of-pocket expenses. If you find that Charleston County School District is entitled to actual damages, then your verdict should include an amount to cover any damages that result from the School District's existing harm. Your verdict should also include an amount to cover any harms the evidence shows will be reasonably certain to occur in the future resulting from Defendants' negligence. Any future damages that you award must be reduced to their present-day value.

Charleston County School District bears the burden of proving by the preponderance of the evidence that it is entitled to compensatory damages. Damages must be proved with a reasonable degree of certainty. The evidence presented by Charleston County School District must enable you, the jury, to determine what amount is fair, just and reasonable. The existence, causation, or amount of damages cannot be left to conjecture, guesswork or speculation. However, proof of the amount of loss with absolute or mathematical certainty is not required, and you may rely on reasonable estimates of future damages where necessary.

**PLAINTIFF'S AUTHORITY**: Anderson, S.C. Requests to Charge – Civil, 13-2; Anderson, S.C. Requests to Charge – Civil, 13-3; Anderson, S.C. Requests to Charge – Civil, 13-11; *see also Clark v. Cantrell*, 339 S.C. 369, 529 S.E.2d 528 (2000); *Baughman v. American Tel. and Tel. Co.*, 306 S.C. 101, 410 S.E.2d 537 (1991); *Barnwell v. Barber-Colman Co.*, 301 S.C. 534, 393 S.E.2d 162 (1989); *Bates v. Merritt Seafood, Inc.*, 663 F. Supp. 915 (D.S.C. 1987); *Whisenant v. James Island Corp.*, 277 S.C. 10, 281 S.E.2d 794 (1981); *McNeill v. United States*, 519 F. Supp. 283 (D.S.C. 1981); *Pearson v. Bridges*, 344 S.C. 366, 544 S.E.2d 617 (2001); *Haltiwanger v. Barr*, 258 S.C. 27, 186 S.E.2d 819 (1972).

**DEFENDANTS' AUTHORITY:** Anderson, South Carolina Requests to Charge – Civil, § 13-2 (rev. 2d ed. 2016); Anderson, South Carolina Requests to Charge – Civil, § 13-3 (rev. 2d ed. 2016);

Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, 2017 Edition (last updated Mar. 2025), Instruction 5.1 and 5.2.

**DATE SUBMITTED**: January 28, 2026

**DATE REVISED**: November 23, 2026

**1. Plaintiff's Argument**

Charleston's instruction is a single, consolidated compensatory-damages instruction, proposed in lieu of separate instructions on actual (out-of-pocket) damages and future damages. It is built on South Carolina's pattern instructions, Anderson, S.C. Requests to Charge – Civil §§ 13-2, 13-3, 13-11, and it retains § 13-2's burden-of-proof and reasonable-certainty language. Its principal departure from the pattern is to eliminate repetition. In contrast, Defendants' preferred language describes actual damages four ways—as compensation for "actual loss or injury"; for "injuries suffered or losses sustained"; to "make good or replace the loss"; and "in satisfaction of, or in recompense for, loss or injury sustained." These formulations invite jurors to hunt for distinctions among terms that the law does not draw. The very case Defendants point to demonstrates that such formulations are synonymous. *See Austin v. Specialty Transp. Sers., Inc.*, 594 S.E.2d 867, 874 (S.C. Ct. App. 2004). The substantive changes Charleston has made include (1) adding language to clarify that it is seeking future damages, which are permissible under South Carolina law, *see infra* [Future Damages], and (2) changing "injury" to "harm" and "person" to "entity" to avoid an overly legalistic phrasing which may confuse the jury about what "injury" a school district may sustain. *See Rickborn v. Liberty Life Insurance Co.*, 468 S.E.2d 292, 298-99 (S.C. 1996).

**Temporal Scope of Damages.** South Carolina law recognizes a comprehensive temporal scope of damages in negligence cases, including past expenses, present and ongoing losses, as well as future expenses. In *Green v. McGee*, 919 S.E.2d 903 (S.C. 2025), the South Carolina Supreme Court explained that "actual damages are awarded by a jury in a personal injury case to compensate a plaintiff for losses such as reasonably incurred medical expenses, future medical expenses, pain and suffering, loss of enjoyment of life, permanent impairment, disfigurement, lost wages, lost earning capacity, etc." *Id.* at 907.

**Reliance on Reasonable Estimates.** Defendants oppose the language "you may rely on reasonable estimates," insisting that *Pearson v. Bridges*, 544 S.E.2d 617 (2001) and *Haltiwanger v. Barr*, 186 S.E.2d 819 (1972), do not support it. In *Pearson*, the Supreme Court of South Carolina held that evidence of three different medical expense scenarios was admissible and that whether the

expenses were reasonably certain, entitling the plaintiff to an award of future damages, was a question for the jury. 544 S.E.2d at 620. The *Haltiwanger* Court similarly held that future damages may be recovered in an action for injury action so long as the damages are reasonably certain to result in the future from the injury. 186 S.E.2d at 821. In arriving at this conclusion, the *Haltiwanger* Court was mindful of "the fact that it became the duty of the jury to estimate…the future damages which are reasonably certain to accrue" to the plaintiff. *Id.* When properly admitted, the jury may rely on reasonable estimates when considering the likelihood of future damages, just as the jury in *Pearson* considered evidence of various medical expense scenarios and the jury in *Haltiwanger* considered a calculation of projected losses.

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence]; [Section 230].

**2. Defendants' Argument**

Defendants object to instructing the jury on future damages at all because the only future damages that Charleston seeks—payment for the Hoover "strategic plan"—are not proper future damages. *See* ECF No. 2293 at 35–39; ECF No. 2510 at 16–18. Defendants also object to the language "Your verdict should also include an amount to cover any harms the evidence shows will be reasonably certain to occur in the future resulting from Defendants' negligence," as it misstates the standard for future damages, which requires showing damages likely to occur in the future as a result of an existing injury. *E.g.*, *Wilder v. Blue Ribbon Taxicab Corp.*, 719 S.E.2d 703, 708 (S.C. Ct. App. 2011) (per curiam).

Defendants object to the proposed combining of instructions on past damages and future damages. South Carolina provides a separate instruction on future damages. Instructing on past damages and future damages in the same instruction is likely to cause juror confusion, particularly in this case. Charleston seeks entirely different types of recovery for past damages (the value of "lost" teacher time) compared to future damages (the costs of Dr. Hoover's proposed strategic plan). Moreover, the standards for past and future damages under South Carolina law are different. Past damages are designed to put an injured party in the position it would have been absent the negligence. Future damages, on the other hand, should compensate for damages that the evidence shows will be reasonably certain to occur in the future that result from the School District's existing injury.

Defendants object to Plaintiff proposing, without support, cutting language from the model instruction that explains black letter law in South Carolina: the "basic measure of actual damages is the amount needed to compensate the plaintiff for the losses proximately caused by the defendant's wrong so that the plaintiff will be in the same position he would have been in if there had been no wrongful injury." *Austin v. Specialty Transp. Servs., Inc.*, 594 S.E.2d 867, 874 (S.C. Ct. App. 2004). The instruction should explain that concept.

Plaintiff's modification of the model instruction to tell the jury that "you may rely on reasonable estimates where necessary" is improper and unsupported. Both sections 13-2 and 13-10 provide the language regarding conjecture, guesswork, or speculation, and neither include Plaintiff's

proposed language. Neither of the two cases Plaintiff cites provide support for modifying the pattern instruction in this way. *See Pearson v. Bridges*, 544 S.E.2d 617, 620 (S.C. 2001); *Haltiwanger v. Barr*, 186 S.E.2d 819, 820–21 (S.C. 1972).

Defendants object to Plaintiff changing "injury" to "harm." Plaintiff does not present any authority that supports deviating from the model instruction.

Defendants object to Plaintiff using "negligence" instead of "Negligent Non-Protected Conduct." Instructions to the jury related to conduct should include language that incorporates the limitations on liability set forth in the Court's rulings about Section 230 and the First Amendment. *See* SD Order at 14; PI Order at 5, 22; Defs.' Position on Section 230 Instr.

**11. INSTRUCTION NO. 28: DAMAGES – ELEMENTS OF ACTUAL DAMAGES IN NEGLIGENCE CASES**

**[*Charleston objects to this instruction, insofar as it proposes giving Instruction No. 27 as single, consolidated compensatory damages instruction in lieu of separately instructing on the elements of actual damages (this Instruction No. 28) and future damages (currently No. 32).***

***Defendants' proposal in green text; Charleston's proposal in blue text.*]**

When one entity is injured harmed by the negligent acts of another, the injured harmed entity is entitled to be fully compensated for all injuries harms directly or proximately resulting from any negligent acts or omissions by the defendants.

In determining the amount of compensation for injuries harms suffered by Charleston County School District as a result of the Defendant's Negligent Non-Protected Conduct Defendants' negligence, it is proper for you to consider and award damages for out-of-pocket expenses. Charleston County School District bears the burden of proving these elements out-of-pocket expenses by the preponderance of the evidence.

**PLAINTIFF'S AUTHORITY**: Anderson, S.C. Requests to Charge – Civil, 13-3; *see also Bates v. Merritt Seafood, Inc.*, 663 F. Supp. 915 (D.S.C. 1987); *McNeill v. United States*, 519 F. Supp. 283 (D.S.C. 1981); *Baldowski v. United States*, 111 F. Supp. 653 (D.S.C. 1953); *Pearson v. Bridges*, 344 S.C. 366, 544 S.E.2d 617 (2001); *Haltiwanger v. Barr*, 258 S.C. 27, 186 S.E.2d 819 (1972).

**DEFENDANTS' AUTHORITY**: Anderson, South Carolina Requests to Charge – Civil, § 13-3 (rev. 2d ed. 2016).

**DATE SUBMITTED**: January 28, 2026

**DATE REVISED**: November 23, 2026

### 1. Plaintiff's Argument

**Instruction Is Not Warranted.** This instruction does no work that the preceding instruction does not already do. *See supra* [Damages – Actual Damages]. The unofficial pattern instruction for "Elements of Actual Damages in Negligence Cases" is a catch-all charge that lists twenty separate elements of actual damages, and its note instructs to "[s]ubtract from the charge any element not involved in the case" and to drop "future" where it does not apply. Anderson, S.C. Requests to Charge – Civil § 13-3, at 1–2 & note. Once that pruning is done here, the elements that remain are out-of-pocket expenses and future damages, which can easily be addressed in a single damages instruction. Separate instructions are redundant and risk confusing the jury.

**Charleston's Language is Preferable.** As in other instructions, Charleston has changed "injury" to "harm" and "person" to "entity" as they are more representative of the claims and parties, and to avoid an overly legalistic phrasing which has the potential to confuse the jury about what "injury" a school district may sustain. *See Rickborn v. Liberty Life Insurance Co.*, 468 S.E.2d 292, 298-99 (S.C. 1996). Defendants object to instructing on future damages, but that criticism does not correspond to anything in Charleston's proposed language or its argument.

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence]; [Section 230].

**2. Defendants' Argument**

Defendants object to Plaintiff's additions to the second paragraph, which are not contained in the model instruction. Defendants object to instructing the jury on future damages at all because the only future damages that Charleston seeks—payment for the Hoover "strategic plan"—are not proper future damages. *See* ECF No. 2293 at 35–39; ECF No. 2510 at 16–18. In any event, even if an instruction on future damages is given over Defendants' objection, adding reference to future damages here is unnecessary. If the Court decides such an instruction is proper, there will be a separate instruction on future damages. *See* Instruction No. 29.

Defendants object to Plaintiff changing "injury" to "harm." Plaintiff does not present any authority that supports deviating from the model instruction.

Defendants object to Plaintiff using "negligence" instead of "Negligent Non-Protected Conduct." Instructions to the jury related to conduct should include language that incorporates the limitations on liability set forth in the Court's rulings about Section 230 and the First Amendment. *See* SD Order at 14; PI Order at 5, 22; Defs.' Position on Section 230 Instr.

**12. INSTRUCTION NO. 29: DAMAGES – FUTURE DAMAGES**

**[*Defendants object to inclusion of this instruction. Charleston objects to this instruction insofar as it proposes giving Instruction No. 27 as single, consolidated compensatory damages instruction in lieu of separately instructing on the elements of actual damages (No. 28) and future damages (this Instruction No. 32). If the Court provides this instruction, Charleston proposes moving it immediately after Instruction No. 28. Defendants' proposal in green text; Charleston's proposal in blue text.*]**

A plaintiff cannot recover conjectural or speculative damages. However, if If you find the plaintiff is entitled to a verdict for actual damages, your verdict should include an amount to cover any damages that result from the School District's existing injury that the evidence shows will be reasonably certain to occur in the future. Future damages need not be proved to a mathematical certainty and often must be approximated. These future damages must be the result of the defendant's Negligent Non-Protected Conduct Defendants' negligence. Any future damages that you award must be reduced to their present-day value.

**PLAINTIFF'S AUTHORITY**: Anderson, S.C. Requests to Charge – Civil, 13-11.

**DEFENDANTS' AUTHORITY**: *Wilder v. Blue Ribbon Taxicab Corp.*, 719 S.E.2d 703, 708 (S.C. Ct. App. 2011); Anderson, South Carolina Requests to Charge – Civil, § 13-11 (rev. 2d ed. 2016).

**DATE SUBMITTED**: January 28, 2026

**DATE REVISED**: November 23, 2026

**1. Plaintiff's Argument**

**Separate Instruction Is Not Warranted.** Charleston's principal position is that future damages should be addressed in a single, consolidated compensatory-damages instruction and that no separate instruction is needed. *See supra* [Damages – Actual Damages].

**Future Damages Instruction is Warranted.** Charleston's proposed jury instruction on future damages (whether or not given as a stand-alone instruction) is necessary to ensure the jury understands and can apply the correct standard of proof required under South Carolina law. "Whether future damages are 'reasonably certain' to occur is the standard of proof for future damages[.] *Pearson v. Bridges*, 544 S.E.2d 617, 619 (2001). In addition, this instruction is necessary to instruct the jury on the level of confidence with which future damages must be proven. "Future damages in personal injury cases need not be proved to a mathematical certainty. Oftentimes a verdict involving future damages must be approximated. A wide latitude is allowed the jury." *Wilder v. Blue Ribbon Taxicab Corp.*, 719 S.E.2d 703, 708 (Ct. App. 2011). "The fact that difficulty may be involved in determining future damages[ ] does not prevent the granting of such relief where damages with reasonable certainty and probability will follow." *Id.* (internal quotation marks omitted). *Gray v. S. Facilities, Inc*. explains, "While proof, with mathematical certainty, of the amount of loss or damage is not required, in order for damages to be recoverable the evidence should be such as to enable the court or jury to determine the amount thereof with reasonable certainty or accuracy." 183 S.E.2d 438, 444 (S.C. 1971). This language is echoed in *Whisenant v. James Island Corp*., 281 S.E.2d 794,796 (S.C. 1981) ("proof with mathematical certainty of the amount of loss or damage is not required").

**Charleston's Language is Preferable.** Defendants would open the instruction with: "A plaintiff cannot recover conjectural or speculative damages." This statement comes from the unofficial pattern instructions, Anderson, S.C. Requests to Charge – Civil § 13-11, and, standing alone, it is correct. But here, would not stand alone. The jury will already have been told, in language the parties agree on, that "[t]he existence, causation, or amount of damages cannot be left to conjecture, guesswork or speculation." *See supra* [Damages – Actual Damages]. That instruction applies to all compensatory damages, future damages included. By repeating the statement again

here, Defendants would have the court signal that future damages are a category to be viewed with suspicion.

Defendants also seek to include a causal requirement not found in the pattern charge—that the jury may award only damages that "*result from the School District's existing injury that* the evidence shows will be reasonably certain to occur in the future." That emphasized language (Defendants' addition) is unnecessary and would confuse the jury.

First, it imposes a double causation requirement. Before reaching damages, the jury will have been instructed that Charleston must prove that Defendants' negligence proximately caused its harm. Under Defendants' proposal, the jury would then be told that future damages must result from that harm. Future damages would thus have to result from an injury that resulted from the negligence. South Carolina law does not require that additional step. Rather, "future damages must be the result of the defendant's negligence." Anderson, S.C. Requests to Charge – Civil § 13-11. Defendants keep that sentence and add their own, so the jury would receive two different causal tests. Jurors could reasonably conclude that each imposes a separate burden.

Second, *Wilder* does not support Defendants' addition. In *Wilder*, the court upheld an award of future pain and suffering in a car-accident case. It applied the rule that "future damages are generally recoverable in personal injury actions as long as the damages are reasonably certain to result in the future from the injury." 719 S.E.2d at 708. In a personal-injury case, "the injury" is the plaintiff's bodily injury; thus, requiring future damages to flow from "the injury" limits nothing. In contrast, tying Charleston's future damages to its "existing injury" risks limiting future damages to existing expenditures, even if Defendants' negligence makes other future spending reasonably certain.

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense again here. *See supra* [Negligence]; [Section 230].

**2. Defendants' Argument**

Defendants object to any instruction on future damages because Plaintiff's claim for future damages is not legally cognizable. The province of future damages is ongoing costs caused by the past "injury." *See, e.g.*, *Wilder*, 719 S.E.2d at 708; ECF No. 2293 at 35–39; ECF No. 2510 at 16–18. Plaintiff does not claim damages in the future as a result of its past injury. Plaintiff's alleged past injury is minimal out-of-pocket costs and "lost" teacher and staff time, which categories of alleged injury bear no relation to the Hoover Plan that Charleston is seeking as "future damages." Nor does Charleston offer any evidence of what lost time or out-of-pocket expenses it may incur in the future. Instead, Charleston claims that it needs money to fund a voluntary, recommended plan put forward by its expert that it has not implemented and has no plans to implement. The plan is not tied to alleged injuries caused by Defendants' platforms but is a sweeping aspirational plan to treat overall student mental health. That is not "future damages."

Plaintiff argues that Defendants' instruction "imposes a double causation" requirement, but that is no more than what the law requires to establish future damages in South Carolina. Future damages must "result from an injury that resulted from the negligence." Plaintiff points to the model instruction on this issue, and the cases cited by the model make this requirement clear: "Smith v. Wells, 258 S.C. 316, 188 S.E.2d 470 (1972) (only such future or prospective damages may be recovered as the evidence renders it reasonably certain *will of necessity result from the alleged injury*); . . . Ford v. A.A.A. Hwy. Express, Inc., 204 S.C. 433, 29 S.E.2d 760 (1944) (future or prospective damages must be confined to such as evidence renders it reasonably certain *will result from original injury*)." Anderson, South Carolina Requests to Charge – Civil, § 13-11 (rev. 2d ed. 2016) (emphases added).

*Wilder* further confirms that rule: "Future damages are generally recoverable in personal injury actions as long as the damages are reasonably certain to result in the future from the injury." 719 S.E.2d at 708. Plaintiff's argument that the phrase "the injury" from *Wilder* "limits nothing" is absurd. The limitation imposed by the language "the injury" is important: it limits Plaintiff to recover damages from an already-proven injury, and prohibits what Plaintiff seeks to do here: argue, in effect, that it will be injured repeatedly for the next 15 years because of Defendants' ongoing

conduct and that it should receive money now to *prevent* these different, as-yet-not-happened injuries in the future. Plaintiff cannot write out the requirement of South Carolina law that its future damages must result "from the injury."

While Plaintiff is right to point out that "tying Charleston's future damages to its 'existing injury' risks limiting future damages to existing expenditures," that is the result of Plaintiff's decisions as to what damages it has sought in this case. The correct application of South Carolina law prohibits Plaintiff's claimed future damages in this case.

Instructing the jury on the law that damages should not be awarded based on speculation does not "signal that future damages are a category to be viewed with suspicion." It is a helpful reminder for the jury of the standard they must apply when considering this separate type of damages.

*Pearson* does not aid Plaintiff's position. That case involved an award for future damages for medical expenses for an existing physical injury in a medical malpractice case. *Pearson*, 544 S.E.2d at 618–19.

If an instruction on future damages is given over Defendants' objection, Defendants object to Plaintiff's proposed addition, which is not included in the model instruction, that future damages can be awarded for "any harms that the evidence shows will be reasonably certain to occur in the future." Plaintiff provides no authority for the addition of that language, and it is contrary to South Carolina law, which requires showing that future damages stem from an existing injury. *See, e.g.*, *Wilder*, 719 S.E.2d at 708; ECF No. 2293 at 35–39; ECF No. 2510 at 16–18.

Defendants object to Plaintiff changing "injury" to "harm." Plaintiff does not present any authority that supports deviating from the model instruction.

Defendants object to Plaintiff using "negligence" instead of "Negligent Non-Protected Conduct." Instructions to the jury related to conduct should include language that incorporates the limitations on liability set forth in the Court's rulings about Section 230 and the First Amendment. *See* SD Order at 14; PI Order at 5, 22; Defs.' Position on Section 230 Instr.

### 13. INSTRUCTION NO. 30: DAMAGES – PUNITIVE DAMAGES

**[*Defendants object to inclusion of this instruction. Defendants' proposal in green text; Charleston's proposal in blue text.*]**

In this case, Charleston County School District seeks punitive damages in addition to actual damages. Punitive damages serve at least three important purposes: punishment of the defendant's reckless, willful, wanton, or malicious conduct; deterrence of similar future conduct by the defendant or others; and compensation for the reckless or willful invasion of the plaintiff's private rights. The paramount purpose for awarding punitive damages is not to compensate the plaintiff, but to punish and set an example for others.

As you consider the issue of punitive damages, the highest burden of proof known to the civil law is applicable: Punitive damages can only be awarded where the plaintiff proves by clear and convincing evidence the defendant's actions were willful, wanton, malicious, or in reckless disregard of the plaintiff's rights. The words recklessness, willfulness and wantonness are synonymous. The terms are used to describe a conscious failure to exercise and observe reasonable or due care. It is the present consciousness of wrongdoing that justifies the assessment of punitive damages against the wrongdoer. Punitive damages will be allowed even when the defendant does not realize it is invading the plaintiff's rights so long as the act is committed in such a manner that a person of ordinary prudence would conclude it was done in reckless disregard of the rights of another.

Recklessness is distinguished from negligence. Negligence is the failure to use due care. Negligence is carelessness. Negligence is failure by omission or commission to exercise due care as a person of ordinary reason and prudence would exercise in the same circumstances. Recklessness is a higher degree of culpability and responsibility. Recklessness signifies a conscious failure to exercise due care. Recklessness is a conscious indifference to the rights of the plaintiff, or a reckless disregard of the rights of the plaintiff. Recklessness is an awareness of wrongful conduct and a continuation to act regardless of consequences.

The test for determining reckless, willful or wanton conduct is whether it has been committed in such a manner and under such circumstances that a person of ordinary reason or prudence would have been conscious of it as an invasion of the rights of the injured party.

Before you can award punitive damages, you must first find Charleston County School District is entitled to actual or nominal damages. There must be an award of actual or nominal damages for a verdict of punitive damages to be supported. This rule is premised on the fact that liability must be established before a plaintiff can seek punitive damages. Therefore, if you do not award actual or nominal damages, then you cannot award punitive damages.

There is no formula or standard that can be used as a measure for assessing punitive damages. However, factors relevant to your consideration of punitive damages are:

(1) the character of the Defendant's acts;

(2) the nature and extent of the injury harm to plaintiff which the Defendant caused or intended to cause;

(3) the Defendant's degree of culpability;

(4) the punishment that should be imposed;

(5) duration of the conduct;

(6) the Defendant's awareness or concealment;

(7) the existence of similar past conduct;

(8) likelihood the award will deter the Defendant or others from like conduct;

(9) whether the award is reasonably related to the injury harm likely to result from such conduct; and

(10) the Defendant's wealth or ability to pay.

The financial condition of the Defendant is a factor you should consider in awarding punitive damages, but evidence of net worth is not a prerequisite to a punitive damage award. However, there There is no requirement that the Defendant be a company of means before you are justified in awarding punitive damages. While the wealth of a Defendant is a relevant factor in assessing punitive damages, it is not necessarily controlling. In other words, the financial worth of a Defendant

is a fact properly to be considered by you in determining the amount to be awarded as punitive damages, but evidence of net worth is not a prerequisite to a punitive damage award.

When under proper allegations a plaintiff proves, by clear and convincing evidence, a willful, wanton, reckless, or malicious violation of its rights, it is not only the right but the duty of the jury to award punitive damages. Accordingly, if you should find that Charleston County School District is entitled to recover punitive damages in addition to actual damages, it would be your duty to include such damages in your verdict and award such an amount as you may deem reasonable and proper in light of the facts and circumstances.

**PLAINTIFF'S AUTHORITY**: Anderson, S.C. Requests to Charge – Civil, 13.21

**DEFENDANTS' AUTHORITY:** Anderson, South Carolina Requests to Charge – Civil, § 13-21 (rev. 2d ed. 2016).

**DATE SUBMITTED**: January 28, 2026

**DATE REVISED**: November 23, 2026

**1. Plaintiff's Argument**

**Instruction is Warranted.** Charleston's proposed instruction on punitive damages is premised on South Carolina's statutory provision providing specific guidance in negligence cases. S.C. Code § 15-32-520(D) ("Punitive damages may be awarded only if the plaintiff proves by clear and convincing evidence that his harm was the result of the defendant's willful, wanton, or reckless conduct."). The clear and convincing evidence standard, codified in S.C. Code § 15-33-135, establishes that "[i]n any civil action where punitive damages are claimed, the plaintiff has the burden of proving such damages by clear and convincing evidence." This heightened burden of proof must be properly communicated to the jury through appropriate instructions. The South Carolina Supreme Court clarified the trial court's role in making threshold determinations in *Gurwood v. Servs. Grp.*, holding that "the trial court does not decide whether the evidence is clear and convincing, but only whether the jury could reasonably find that it is." 914 S.E.2d 149, 155 n.3 (2025).

In *S.C. Farm Bureau Mut. Ins. Co. v. Love Chevrolet, Inc.*, the South Carolina Supreme Court held that "trial judges in this state have long been required, as a threshold matter, to assess the culpability of a defendant's conduct to determine whether punitive damages are available in a given case (i.e., whether the issue should be submitted to the jury)" 478 S.E.2d 57, 58 (1996). The court must first determine whether the defendant's conduct rises to the level of culpability, warranting a punitive damages award, and if not, the issue may not be submitted to the jury. *Id.* at 59. However, "[i]f so, the jury should be adequately instructed to assess an appropriate amount of damages." *Id*. This language creates an affirmative duty to provide proper jury instructions once the threshold is met, rather than leaving the matter to the trial court's discretion.

South Carolina courts apply a liberal standard for determining when punitive damages issues should be submitted to the jury. In *Abel v. Lack's Beach Serv.*, the Court of Appeals stated that "the issue of punitive damages must be submitted to the jury if more than one reasonable inference can be drawn from the evidence as to whether the defendant's behavior was reckless, willful, or wanton." *Abel v. Lack's Beach Serv.*, 920 S.E.2d 283, 301 (Ct. App. 2025), *reh'g denied* (Sept. 22, 2025) (quoting *Welch v. Epstein*, 536 S.E.2d 408, 419 (Ct. App. 2000).

South Carolina courts have also established specific requirements for punitive damages jury instructions. In *Hollis v. Stonington Dev., LLC*, the Court of Appeals noted that proper instructions must explain that "[p]unitive damages can only be awarded when the Plaintiff proves by clear and convincing evidence the Defendant's actions were willful, wanton, malicious, or in reckless disregard of the Plaintiff's rights." 714 S.E.2d 904, 910 (Ct. App. 2011). The instructions must adequately explain that plaintiffs cannot be awarded punitive damages unless they meet the applicable burden of proof. *Id*. at 911. Charleston's proposed jury instruction on punitive damages meets this requirement.

**Charleston's Language is Preferable.** Charleston's revisions to this instruction eliminate redundancies, substitute "harm" for "injury," *see Rickborn v. Liberty Life Ins. Co.*, 468 S.E.2d 292, 298-99 (S.C. 1996), and otherwise reducing repetition or improving readability. For example, the charge repeatedly describes recklessness, willfulness, and wantonness as a conscious failure to exercise due care, judged by what a person of ordinary prudence would conclude. Anderson, S.C. Requests to Charge – Civil § 13-21. Charleston also proposes dropping the instruction not to award punitive damages in the absence of actual or nominal damages; this instruction would simply tell jurors what the jury form will rule out.

**2. Defendants' Argument**

**Ordering**: If given, this instruction should come after all other damages instructions.

Defendants object to instructing the jury on punitive damages. Plaintiff has not met its burden to show by clear and convincing evidence that a particular Defendant's actions were willful, wanton, or reckless. The Court will function as a gatekeeper on this issue and evaluate whether this issue should be given to the jury. Defendants also reserve all rights to a bifurcated trial in which the punitive damages stage follows separately from a proceeding on the merits, assuming a finding of liability.

If an instruction on punitive damages is given over Defendants' objection, Defendants object to Plaintiff's change of "injury" to "harm" in this instruction.

The instruction should instruct the jury that they cannot award punitive damages unless they first award compensatory or nominal damages. That language comes from the South Carolina model instruction and should be included.

Defendants object to Plaintiff using "negligence" instead of "Negligent Non-Protected Conduct." Instructions to the jury related to conduct should include language that incorporates the limitations on liability set forth in the Court's rulings about Section 230 and the First Amendment. *See* SD Order at 14; PI Order at 5, 22; Defs.' Position on Section 230 Instr.

**14. INSTRUCTION NO. 31: BURDEN OF PROOF – CLEAR AND CONVINCING EVIDENCE**

**[*Defendants object to instructing the jury on Punitive Damages and, therefore, object to this instruction which sets out the corresponding burden of proof. However, if a Punitive Damages instruction is given, the parties agree to the below language for the corresponding burden of proof instruction.*]**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

**PLAINTIFF'S AUTHORITY:** Ninth Cir. Model Instructions, Instruction 1.7.

**DEFENDANTS' AUTHORITY:** Ninth Cir. Model Instructions, Instruction 1.7.

**DATE SUBMITTED**: January 28, 2026

**DATE REVISED**: November 23, 2026

## 15. INSTRUCTION NO. 32: DAMAGES – PRE-EXISTING CONDITION

[*Defendants object to the inclusion of this instruction.*]

**Instruction 32.1-P**

If a person or entity is more vulnerable or susceptible to harm because of pre-existing conditions, a negligent Defendant is still responsible for the harm it caused or allowed to happen. A negligent Defendant must take the plaintiff as it finds the plaintiff, whether the plaintiff, in this case Charleston County School District, be in perfect condition or in poor condition, or somewhere in between.

A harmed entity can recover all damages caused by a defendant's negligence. When a plaintiff's pre-existing conditions are aggravated or activated by a subsequent act, a defendant is liable to the extent that its negligence proximately and naturally aggravated or activated the plaintiff's pre-existing conditions.

If you find that the School District was harmed as a result of the Defendants' negligence so that it is entitled to recover for said harms, the fact that the School District had any pre-existing conditions would not defeat its recovery. It is the law that one who negligently inflicts harm on another is responsible for all ill effects which, considering the condition in which the plaintiff was in when it was harmed, naturally and necessarily follow such harm. For this reason, a defendant is not relieved of liability if the harm would not have resulted were the plaintiff not compromised by pre-existing conditions. In other words, if the presence of existing conditions aggravates and prolongs the harm and correspondingly increases the damages, such increased or added damages may be recovered.

**Instruction 32.1-D**

The fact that a person is more susceptible to injury or death because of a pre-existing condition or weakness does not serve to excuse an otherwise negligent defendant who has caused the injury. A negligent defendant takes his plaintiff as he finds him, whether the plaintiff be in perfect health or in poor health, or somewhere in between.

An injured person is entitled to recover all damages caused by the defendant's negligence. When plaintiff's pre-existing physical or mental condition is aggravated or activated by a

subsequent act, the defendant is liable to the extent that his wrongful act proximately and naturally aggravated or activated plaintiff's pre-existing condition.

The plaintiff can recover for pre-existing injuries only to the extent they were aggravated by the defendant's actions. Any portion of the injuries which was not caused by an act or omission on the part of the defendant is not compensable. You can award damages for any aggravation of a pre-existing condition, but not for the original injury itself.

If you find that the School District received an injury as a result of the negligence of Defendants so that it is entitled to recover for said injuries, the fact that he had a pre-existing defect would not defeat the School District's recovery. One who negligently inflicts a personal injury on another is responsible for all ill effects which, considering the condition of health in which the plaintiff was in when he received the injury, naturally and necessarily follow such injury. Hence, a defendant's liability is in no way lessened or affected by reason of the fact that the injury would not have resulted had the plaintiff been in good health or that they were aggravated and rendered more difficult to cure by reason of the fact that he was not in good health. In other words, if the presence of disease or existing physical condition aggravates and prolongs the injury and correspondingly increases the damages, such increased or added damages may be recovered.

**PLAINTIFF'S AUTHORITY**: Anderson, S.C. Requests to Charge – Civil, 13.13.

**DEFENDANTS' AUTHORITY**: *Watson v. Wilkinson Trucking Co.*, 136 S.E.2d 286, 291 (S.C. 1964); *Burnett v. Fam. Kingdom, Inc.*, 691 S.E.2d 170, 175 (S.C. Ct. App. 2010); Anderson, S.C. Requests to Charge – Civil, 13.3.

**DATE SUBMITTED**: January 28, 2026

**DATE REVISED**: November 23, 2026

### 1. Plaintiff's Argument

**Ordering.** This instruction should precede the affirmative defenses, if any such instructions are given. The concept is not limited to a measure of damages, but given Defendants' alternative causation theories, may help the jury determine whether Defendants' conduct was a proximate cause of Charleston's injuries. Its operative rule is framed in terms of proximate cause: a defendant is liable to the extent that its wrongful act "proximately and naturally aggravated or activated" the pre-existing condition.

**Instruction is Warranted.** Charleston's proposed instruction on pre-existing conditions is necessary to ensure the jury property applies the eggshell skull principle and understands that defendants remain fully liable for all proximately caused injuries, including aggravation of pre-existing conditions. South Carolina follows the well-established eggshell skull principle, which holds defendants liable for the full extent of injuries proximately caused by their negligence, regardless of whether the plaintiff had pre-existing conditions that made them more susceptible to injury. *See Watson v. Wilkinson Trucking Co.*, 136 S.E.2d 286 (1964). Accordingly, South Carolina courts recognize that injured persons are entitled to recover full compensation for all damages proximately resulting from a defendant's negligent acts, even when pre-exiting conditions are involved. *Id.* at 291 (citing 15 Am.Jr., Damages, Section 80 and 81). In *Watson v. Wilkinson Trucking Co.*, the Supreme Court held that, "[t]he plaintiff was entitled to recover all damages proximately resulting from the negligent acts of the defendant, including the aggravation of his pre-existing condition." *Id.* (affirming an award of substantial damages for a plaintiff who suffered severe aggravation of a pre-existing hip condition and a ruptured disc, emphasizing that defendants take their victims as they find them).

Pre-existing condition jury instructions are most critical when there is evidence, as here, that the defendant's conduct may have aggravated or exacerbated a plaintiff's pre-existing condition. The instruction is particularly important when the defense argues that the plaintiff's injuries were caused by pre-existing conditions rather than the defendant's negligence, or when the defense attempts to reduce damages based on the plaintiff's pre-existing vulnerabilities. South Carolina courts apply established standards for determining when trial courts must give requested jury

instructions. The fundamental rule is that trial courts commit reversible error when they fail to give a requested jury charge on an issue raised by the evidence. In *State v. Harrison*, the court held that the "trial court commits reversible error if it fails to give a requested charge on an issue raised by the evidence." 539 S.E.2d 71, 75 (S.C. Ct. App. 2000).

Defendants insist that the instruction does not apply to entities because the pattern jury instruction uses various examples specific to individuals—e.g., condition of health" and "presence of disease." Those words describe the usual facts. But the doctrine's logic is not tied to human biology: The jury must separate the harm that existed before the tort from the harm the tort added; Defendants are only responsible for latter, but they do not get a discount because the plaintiff was already struggling.

**Charleston's Language is Preferable.** Defendants retain personal-injury vocabulary that has no sensible application to a public-entity plaintiff: "injury or death," "perfect health or in poor health," "physical or mental condition," "personal injury," "condition of health," and "disease." Defendants also include unnecessarily redundant language. Defendants say Charleston "adds language that appears nowhere in the model instruction," pointing to the statement that a defendant "is not relieved of liability if the harm would not have resulted were the plaintiff not compromised by pre-existing conditions." That is wrong. The sentence maps directly to the pattern instruction's final paragraph: "Hence, a defendant's liability is in no way lessened or affected by reason of the fact that the injury would not have resulted had the plaintiff been in good health or that they were aggravated and rendered more difficult to cure by reason of the fact that he was not in good health." Anderson, S.C. Requests to Charge – Civil § 13-13.

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence]; [Section 230].

**2. Defendants' Argument**

Defendants object to any instruction on preexisting injuries. The preexisting injury doctrine has no application to this case, and Plaintiff tellingly has no case law to support giving such an instruction in a case involving alleged financial injuries to a plaintiff that is a public entity. Plaintiff's own authorities demonstrate that the rule applies only to pre-existing *physical* injuries and concerns whether a defendant's conduct aggravates an existing condition. *E.g.*, *Watson v. Wilkinson Trucking Co.*, 136 S.E.2d 286, 291 (S.C. 1964) (in a case concerning damages incurred after a trucking accident, the Court held that "plaintiff was entitled to recover all *damages* proximately resulting from the negligent acts of the defendant, including the aggravation of his pre-existing condition" (emphasis added)); *Burnett v. Fam. Kingdom, Inc.*, 691 S.E.2d 170, 175 (S.C. Ct. App. 2010) (applying rule in personal injury case). Plaintiff's argument that the straightforward application of the language of the model instruction is not "sensible" reveals that there is no sensible application of this rule outside of the personal injury context.

Plaintiff has no evidence that any condition *of the School District* was made worse by the actionable features of Defendants' platforms, nor does it even make sense to speak in those terms. This is an instruction about the condition of the *plaintiff* itself, not the condition of third-party students, so it is inappropriate here. Plaintiff's cases are not about whether a defendant posits an *alternative cause* of the alleged injuries, and this instruction is not permissible simply because Defendants here contest causation.

Plaintiff offers no support for the assertion that the preexisting injury rule "is not limited to a measure of damages." It would be error to instruct the jury on this issue without support.

Defendants object to Plaintiff using "negligence" instead of "Negligent Non-Protected Conduct." Instructions to the jury related to conduct should include language that incorporates the limitations on liability set forth in the Court's rulings about Section 230 and the First Amendment. *See* SD Order at 14; PI Order at 5, 22; Defs.' Position on Section 230 Instr.

Defendants object to Plaintiff changing "injury" to "harm." Plaintiff does not present any authority that supports deviating from the model instruction. Those changes are not stylistic: they remove the very terms that limit the model instruction to an individual's physical condition.

The text of the South Carolina model instruction confirms the point. Its terms repeatedly show that the doctrine concerns an individual's physical condition: it addresses a "person" who is "more susceptible to injury or death;" a plaintiff who may "be in perfect health or in poor health;" "[o]ne who negligently inflicts a personal injury on another" and is responsible for the ill effects that follow given "the condition of health in which the plaintiff was in when he received the injury;" and the "presence of disease or existing physical condition" that "aggravates and prolongs the injury." None of those concepts fits a public school district, which cannot die, contract a disease, suffer a personal injury, or be in good or poor health. That is why Plaintiff must rewrite the model to refer to a "person or entity," a plaintiff "in perfect condition or in poor condition," and one who "negligently inflicts harm on another."

If the Court provides this instruction over Defendants' objection, Defendants object to Plaintiff's substantial re-write of the model instruction and request that the Court give Defendants' proposed alternative instruction, which follows the model instruction. Defendants' alternative only deletes language from the model instruction that is duplicative or does not apply here. That includes the clause about injuries a defendant "allowed . . . to happen when there is a duty to act to prevent it," and the repeated statement that a defendant "must take the plaintiff as he finds him." By contrast, Plaintiff strikes the model instruction's limiting principles which provide that: "[t]he plaintiff can recover for pre-existing injuries only to the extent they were aggravated by the defendant's actions;" "[a]ny portion of the injuries which was not caused by an act or omission on the part of the defendant is not compensable;" and the jury may award damages "for any aggravation of a pre-existing condition, but not for the original injury itself." Plaintiff also adds language that appears nowhere in the model instruction, including that a defendant "is not relieved of liability if the harm would not have resulted were the plaintiff not compromised by pre-existing conditions." Plaintiff offers no authority for these departures from the model instruction.

**16. INSTRUCTION NO. 33: DAMAGES – DOUBLE RECOVERY**

[***Charleston objects to inclusion of this instruction. Defendants' proposal in green text.***]

As a general rule, there can be no double recovery for a single injury. Here, the injury of which Charleston County School District complains is that it allegedly incurred additional expenses to address student mental health harms caused by Defendants' Negligent Non-Protected Conduct. You may not award the same element of compensatory damages more than once. Any damages you award must compensate Plaintiff for the injury only once, and you must avoid overlapping or duplicative awards.

**PLAINTIFF'S AUTHORITY**: N/A

**DEFENDANTS' AUTHORITY**: There is no pertinent Ninth Circuit Model Instruction or South Carolina Instruction. *See New v. Max G. Crosby Const. Co.*, 2004 WL 6307901, at *3 (S.C. Ct. App. Apr. 27, 2004); *Collins Music Co. v. Smith*, 503 S.E.2d 481, 482 (S.C. Ct. App. 1998); *ARM Quality Builders, LLC v. Golson*, 2024 WL 180701, at *2 (S.C. Ct. App. Jan. 17, 2024).

**DATE SUBMITTED**: January 28, 2026

### 1. Plaintiff's Argument

This instruction is unnecessary and likely to confuse the jury. *See State v. Blurton*, 573 S.E.2d 802, 804 (S.C. 2002) ("Only law applicable to the case should be charged to the jury. Instructions that do not fit the facts of the case may serve only to confuse the jury."). Although there is no risk of confusion even in cases with two claims, the instruction is especially unwarranted here, where Charleston alleges a single claim for negligence. The distinguishable authorities that Defendants cite anticipate multiple theories of recovery for the same harm. *See, e.g.*, *New v. Max G. Crosby Const. Co., Inc.*, 2004 WL 6307901, at *3 (S.C. Ct. App. Apr. 27, 2004) (considering whether awarding cost of repairs and diminution in home value would be double recovery); *Collins Music Co., Inc. v. Smith*, 503 S.E.2d 481, 482 (S.C. Ct. App. 1998) (holding that where the plaintiff had not "pleaded nor proved any damages other than those damages that were the direct and natural consequence of the breach of contract[,] [t]he trial court, therefore, did not err in entering a single judgment"); *ARM Quality Builders, LLC v. Golson*, 2024 WL 180701, at *2 (S.C. Ct. App. Jan. 17, 2024) (finding error when same damages were awarded under multiple claims). Here, again, Plaintiff has only one claim, and has submitted clear evidence under a single theory of recovery. Defendants' authorities are therefore inapposite.

Defendants' brief separately argues that there exists a "possibility of overlapping recovery" because "Plaintiff seeks recovery for past, present, and future damages." But they cite no case for the proposition that this instruction is required if there is a mere possibility that different categories of damages for the same injury will overlap.

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence]; [Section 230].

**Improper Limitation to Mental Health Harms.** Defendants' instruction improperly suggests that Charleston's harm is derivative of its students' mental health harms. *See supra* [Limitations of Evidence - Must Evaluate Each Case Against Each Defendant Separately].

**2. Defendants' Argument**

The Court should provide this non-controversial statement of well-settled law that is necessary to give in a case with multiple categories of potentially overlapping injuries. Plaintiff seeks recovery for past, present, and future damages. Defendants deny that Plaintiff is entitled to any of those categories of damages. Within and between each category of damages, there exists the possibility of overlapping recovery. For example, Plaintiff seeks recovery for future damages under the Hoover Plan, which seeks payment for a number of different policy changes and resources. An award for a subset of the proposed changes may be sufficient to compensate the District for its injuries, and additional changes would address only future potential injuries rather than future costs arising from past injuries, so the jury must not be allowed to provide an award that exceeds the scope of compensation for past injuries.

**17. INSTRUCTION NO. 34: DAMAGES – DUTY TO MITIGATE DAMAGES**

[***Charleston objects to instructing the jury on the duty to mitigate damages, on the basis that the instruction is not supported by the evidence and Defendants have not shown they are entitled to such an instruction. Defendants' proposal in green text; Charleston's proposal in blue text.***]

A party who has suffered injury or damage from the actionable conduct of another is under a duty to make all reasonable efforts to minimize the damages incurred. To the extent that it reasonably could have minimized those damages and failed to do so, it is not entitled to recover from the other party. In other words, one cannot recover any damages that might have been avoided by the use of reasonable care and diligence. A plaintiff's failure to mitigate damages allows the defendant to avoid only those damages that reasonably could have been avoided by the plaintiff.

An injured harmed party is required to do that which an ordinary, prudent person or organization would do under similar circumstances to mitigate its damages. However, the injured harmed party is not required to unreasonably exert itself or incur substantial expense in an effort to mitigate damages.

The party who claims damages should have been minimized has the burden of proving the damages could have been avoided or reduced. It is Defendants' responsibility therefore to prove that Charleston County School District should have minimized damages and failed to do so.

**PLAINTIFF'S AUTHORITY**: Anderson, S.C. Requests to Charge – Civil, 13-12; *see also Newman v. Brown*, 228 S.C. 472, 90 S.E.2d 649 (1955); *Du Bose v. Bultman*, 215 S.C. 468, 56 S.E.2d 95 (1949); *Currie v. Davis*, 130 S.C. 408, 126 S.E. 119 (1923); *Heath v. Postal Telegraph-Cable Co.*, 87 S.C. 219, 69 S.E. 283 (1910); *Creative Commc'n Servs., Inc. v. Travelers Prop. & Cas. Co. of Am.*, No. 2011-UP-525, 2011 WL 11735816, at *1 (S.C. Ct. App. Dec. 5, 2011); *Moore v. Moore*, 360 S.C. 241, 262, 599 S.E.2d 467, 478 (Ct. App. 2004).

**DEFENDANTS' AUTHORITY**: Anderson, South Carolina Requests to Charge – Civil, § 13-12 (rev. 2d ed. 2016).

**DATE SUBMITTED**: January 28, 2026

**DATE REVISED**: November 23, 2026

**1. Plaintiff's Argument**

**Instruction Not Warranted.** Plaintiffs object to instructing the jury on the duty to mitigate damages based on the lack of any evidentiary support, or Defendants demonstrating they are entitled to such an instruction. South Carolina courts have consistently held that defendants seeking mitigation jury instructions bear a substantial evidentiary burden that must be satisfied before any such instruction is warranted. In *Lyons v. Fidelity Nat. Title Ins. Co.*, the Court of Appeals established the foundational principle that "a defendant who claims a plaintiff's damages could have been mitigated has the burden of proving that mitigation is possible and reasonable." 781 S.E.2d 126, 136 (Ct. App. 2015), *vacated pursuant to settlement* (Aug. 26, 2016); *see also Hughes v. Oconee Cnty., S.C.*, No. 2007 WL 8392131, at *8-9 (S.C. Ct. App. Oct. 11, 2007) (providing detailed guidance on what constitutes sufficient evidence to meet this burden). The *Lyons* Court recited "the party who claims damages should have been minimized has the burden of proving they could reasonably have been avoided or reduced." *Lyons* at 136.

As the Court in *Hughes* explained, defendants cannot make "naked assertions" about mitigation possibilities without providing concrete proof. Specifically, defendants must adduce evidence showing that proposed mitigation courses were "feasible," their costs, and "whether they would, in fact, reduce the damages." *Hughes* at *8. The court noted that, "at the very least, there is no proof that a net reduction of damages would have resulted" when defendants failed to provide this evidence. *Id*. The burden extends beyond mere speculation about what a plaintiff might have done differently. In *Sloan Const. Co., Inc. v. Southco Grassing, Inc.*, the South Carolina Supreme Court confirmed that "the defendant has the burden of establishing the plaintiff's lack of due diligence in mitigating damages." 717 S.E.2d 603, 608 (2011). Courts will refuse mitigation instructions when defendants cannot present proof that damages were avoidable and so should this Court. *See Darby v. Waterboggan of Myrtle Beach, Inc.*, 344 S.E.2d 153, 156 (Ct. App. 1986). Accordingly, this court should not include a mitigation of harm instruction absent concrete evidence that damages caused by defendants could have been mitigated.

**2. Defendants' Argument**

The Court should provide this non-controversial statement of well-settled law. Defendants asserted this affirmative defense in their Answer. Defendants plan to present evidence at trial that Charleston could have mitigated any alleged damages by taking certain actions, including instituting earlier a school-day cell phone ban, or purchasing Yondr or similar pouches for all of its schools rather than just a few.

Defendants object to Plaintiff changing "injury" to "harm." Plaintiff does not present any authority that supports deviating from the model instruction.

**IV. [Post Closing Instructions]**

**1. INSTRUCTION NO. 35: DUTY TO DELIBERATE**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**AUTHORITY**: Ninth Cir. Model Instructions, Instruction No. 3.1.

**DATE SUBMITTED**: January 28, 2026

**2. INSTRUCTION NO. 36: CONSIDERATION OF EVIDENCE**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media.

This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the

case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the court immediately.

**AUTHORITY**: Ninth Cir. Model Instructions, Instruction No. 3.2.

**DATE SUBMITTED**: January 28, 2026

**3. INSTRUCTION NO. 37: COMMUNICATIONS WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Courtroom Deputy, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

**AUTHORITY**: Ninth Cir. Model Instructions, Instruction No. 3.3.

**DATE SUBMITTED**: January 28, 2026

**4. INSTRUCTION NO. 38: RETURN OF VERDICT**

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the Courtroom Deputy that you are ready to return to the courtroom.

**AUTHORITY**: Ninth Cir. Model Instructions, Instruction No. 3.5.

**DATE SUBMITTED**: January 28, 2026

Dated: November 23, 2026

Respectfully submitted,

*/s/ Ashley W. Hardin*

ASHLEY W. HARDIN, *pro hac vice*
ahardin@wc.com
J. ANDREW KEYES, *pro hac vice*
akeyes@wc.com
NEELUM J. WADHWANI (SBN 247948)
nwadhwani@wc.com
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Tel.: (202) 434-5000

*Attorneys for Defendants YouTube, LLC and Google LLC*

*/s/ Ashley M. Simonsen*

Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones (*pro hac vice*)
Paul W. Schmidt (*pro hac vice*)
Christian J. Pistilli (*pro hac vice*)
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
Email: pajones@cov.com
Email: pschmidt@cov.com
Email: cpistilli@cov.com

Beth A. Wilkinson (*pro hac vice*)
Rakesh Kilaru (*pro hac vice)*
Jolee Porter (*pro hac vice*)
Matthew R. Skanchy (*pro hac vice*)
WILKINSON STEKLOFF LLP
2001 M Street, NW, 10th Floor

Washington, D.C. 20036
Telephone: (202) 847-4010
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jporter@wilkinsonstekloff.com
mskanchy@wilkinsonstekloff.com

Moira K. Penza (*pro hac vice*)
WILKINSON STEKLOFF LLP
130 W 42nd Street, 24th Floor
New York, NY 10036
Telephone: (212) 294-8925
Facsimile: (202) 847-4005
mpenza@wilkinsonstekloff.com

*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc. and Instagram, LLC*

*<u>/s/ Jonathan H. Blavin</u>*
JONATHAN H. BLAVIN (SBN 230269)
Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel: (415) 512-4000

E. MARTIN ESTRADA (SBN 223802)
Martin.Estrada@mto.com
L. ASHLEY AULL (SBN 257020)
Ashley.Aull@mto.com
VICTORIA A. DEGTYAREVA
(SBN 284199)
Victoria.Degtyareva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel.: (213) 683-9100
Facsimile: (213) 687-3702

ALLISON BROWN, *pro hac vice*
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Tel.: (215) 268-5000

JESSICA DAVIDSON, *pro hac vice*
jessica.davidson@kirkland.com
JOHN J. NOLAN, *pro hac vice*
jack.nolan@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800

*Attorneys for Defendant Snap Inc.*

*<u>/s/ Geoffrey M. Drake</u>*
GEOFFREY M. DRAKE, *pro hac vice*
gdrake@kslaw.com
TACARA D. HARRIS, *pro hac vice*
tharris@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

DAVID P. MATTERN, *pro hac vice*
dmattern@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, D.C. 20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737

BAILEY J. LANGNER (SBN 307753)
blangner@kslaw.com
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

*<u>/s/ Daniel M. Petrocelli</u>*
DANIEL M. PETROCELLI (SB #97802)
dpetrocelli@omm.com
SABRINA H. STRONG (SB #200292)
sstrong@omm.com
O'MELVENY & MYERS LLP

1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 553-6700

STEPHEN D. BRODY (*pro hac vice*)
sbrody@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006
Telephone: (202) 383-5300

*Attorneys for Defendants TikTok Inc., ByteDance Inc., ByteDance Ltd., TikTok Ltd., and TikTok, LLC*

By: /s/ *Previn Warren*
PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com
*Counsel for Plaintiffs and Co-Lead Counsel*

LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com
*Co-Lead Counsel*

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com
*Co-chair School District Committee*
*Plaintiffs' Steering Committee Leadership*

MELISSA YEATES
**KESSLER TOPAZ MELTZER & CHECK LLP**
280 King of Prussia Road

Radnor, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com
*Co-chair School District Committee*
*Plaintiffs' Steering Committee Leadership*

ANDRE M. MURA
**GIBBS MURA LLP**
1111 Broadway, Suite 2100
Oakland, CA 94612
Telephone: 510-350-9717
amm@classlawgroup.com
*Plaintiffs' Steering Committee Leadership*

**ATTESTATION PURSUANT TO LOCAL RULE 5-1**

I, Ashley W. Hardin, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED: November 23, 2026

By: */s/ Ashley W. Hardin*
Ashley W. Hardin

*Attorney for Defendants YouTube, LLC and Google LLC*