Jonathan H. Blavin (State Bar No. 230269)
Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-2907
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

Victoria A. Degtyareva (State Bar No. 284199)
Victoria.Degtyareva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

*Attorneys for Defendant Snap Inc.*

*[Additional parties and counsel listed on signature pages]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION

This Document Relates to:

*Tucson Unified School District v. Meta Platforms, Inc. et al.*

Case No. 4:24-cv-01382-YGR

MDL No. 3047

Case No. 4:22-md-03047-YGR

**JOINT SET OF PROPOSED JURY INSTRUCTIONS (TUCSON UNIFIED SCHOOL DISTRICT)**

Judge: Hon. Yvonne Gonzalez Rogers
Magistrate Judge: Hon. Peter H. Kang

Pretrial Conference: December 14, 2026
Trial Date: February 8, 2027

Plaintiff Tucson Unified School District and Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Instagram, LLC; (collectively, "Meta"); Snap, Inc. ("Snap"); ByteDance Ltd.; ByteDance Inc.; TikTok Ltd.; TikTok LLC; and TikTok Inc. (collectively, "TikTok"); and Google LLC and YouTube LLC (collectively, "YouTube"), by and through their attorneys of record (collectively, the "Parties"), hereby submit these Joint Proposed Jury Instructions pursuant to Paragraph 3(g) of the Court's Standing Order Re: Pretrial Instructions in Civil Cases (last updated March 17, 2025).[1]

The Parties respectfully reserve the right to amend or supplement these proposed instructions and their objections thereto as the case proceeds towards trial, as the Parties continue to meet and confer regarding these instructions, and as the Court considers these proposals and objections.

| No. | Description | Whether the Parties Stipulate or Object |
|---|---|---|
| **Preliminary Instructions** | | |
| 1 | Duty of Jury | Stipulate. |
| 2 | Claims and Defenses | **The Parties propose partial competing instructions.** |
| 3 | Companies and Public Entities | **The Parties propose conflicting modifications.** |
| 4 | Burden of Proof – Preponderance of the Evidence | Stipulate. |
| 5 | Burden of Proof – Clear and Convincing Evidence | **Defendants object to the instruction in full. However, the Parties agree that this instruction is only appropriate if a Punitive Damages Instruction is given. If a Punitive Damages instruction is given over** |

[1] The Parties submit, as Exhibits A and B, redlines reflecting the Parties' proposed modifications to the 9th Circuit Model Instructions, consistent with the Court's Standing Order at Paragraph 3(g)(ii)(H). Exhibit A compares the Parties' stipulated instructions, as well as Defendants' proposals for contested instructions. Exhibit B compares Tucson's proposals for the contested instructions. The Parties understand that this instruction relates solely to the 9th Circuit Model Instruction, and does not apply to any model or pattern instructions regarding state law. However, the Parties are happy to provide such redlines against the state law model instructions if it would be helpful to the Court.

| | | |
|---|---|---|
| | | **Defendants' objection, the Parties stipulate to the proposed language for this instruction.** |
| 6 | Two or More Parties – Different Legal Rights | **The Parties propose partial competing instructions.** |
| 7 | What is Evidence | Stipulate. |
| 8 | Direct and Circumstantial Evidence | Stipulate. |
| 9 | What Is Not Evidence | Stipulate. |
| 10 | Evidence for a Limited Purpose | Stipulate (conditioned on limiting instruction being given). |
| 11 | Ruling on Objections | Stipulate (the Parties propose giving instruction before the start of evidence). |
| 12 | Credibility of Witnesses | Stipulate. |
| 13 | Publicity During Trial | Stipulate (the Parties propose giving instruction before the start of evidence). |
| 14 | No Transcript Available | Stipulate (the Parties propose giving instruction before the start of evidence). |
| 15 | Bench Conferences and Recesses | Stipulate (the Parties propose giving instruction before the start of evidence). |
| 16 | Video Deposition | Stipulate (the Parties propose giving instruction before the start of evidence). |
| 17 | Expert Opinion Testimony | Stipulate. |
| 18 | Jurors' Social Media Use During Trial | **The Parties propose complete competing instructions.** |
| 19 | Protection for Publishing and Expressive Activity | **The Parties propose complete competing instructions.**<br><br>**Tucson argues that this instruction should be given later—between No Duty to Prevent Harm Caused by Third Parties and Comparative Fault.** |
| N/A | Transition Instruction | Stipulate. |
| **Substantive Instructions** | | |

| | | |
|---|---|---|
| **First Claim – Negligence** | | |
| 20 | Negligence - Definition | **The parties propose conflicting modifications.** |
| **Second Claim – Public Nuisance** | | |
| 21 | Public Nuisance | **The parties propose conflicting modifications.** |
| 22 | Damages for Public Nuisance | **Defendants object to this instruction in full, and argue that if given it should be given later between compensatory damages and punitive damages.** |
| **Additional Substantive Instructions** | | |
| 23 | Burden of Proof | **Tucson objects to this instruction in part.**<br>**Defendants object to this instruction in full.**<br>**The parties propose conflicting modifications.** |
| 24 | Heeding Presumption | **Defendants object to this instruction in full.** |
| 25 | Causation – Generally | **Defendants object to this instruction in full.**<br>**The parties propose conflicting modifications.** |
| 26 | Causation – Multiple Causes | **Defendants object to this instruction in full.**<br>**The parties propose conflicting instructions.** |
| 27 | Causation – Harm | **The parties propose complete competing instructions.**<br>**Defendants argue Defendants' version of this instruction should be given instead of Causation-Generally.** |
| 28 | Liability | **Tucson objects to this instruction in part.**<br>**The parties propose conflicting modifications.** |
| 29 | Liability – Relative Degrees of Fault | **The parties propose conflicting modifications.** |

| | | |
|---|---|---|
| 30 | Unusually Susceptible Plaintiff | **Defendants object to this instruction in full.** |
| 31 | No Duty to Prevent Harm Caused by Third Parties | **The parties propose competing instructions.** |
| 32 | Comparative Fault | **Tucson objects to this instruction in full.** |
| 33 | Mitigation of Damages | **Tucson objects to this instruction in full.** |
| 34 | Assumption of Risk | **Tucson objects to this instruction in full.** |
| 35 | Damages | Stipulate |
| 36 | Compensatory Damages | **Tucson objects to this instruction in part, and argues it should be given directly after Negligence.** <br> **The parties propose conflicting modifications.** |
| 37 | Punitive Damages | **Defendants object to this instruction in full.** |
| 38 | Punitive Damages – Burden of Proof | **Defendants object to this instruction in full.** |
| **STOP (CLOSING ARGUMENTS)** | | |
| **Post-Closing Instructions** | | |
| 39 | Duty to Deliberate | Stipulate |
| 40 | Consideration of Evidence | Stipulate |
| 41 | Communications with Court | Stipulate |
| 42 | Return of Verdict | Stipulate |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>*Tucson Unified School District*<br><br>Case No. 4:24-cv-01382-YGR | Case No. 4:22-md-03047-YGR |

**JURY INSTRUCTIONS (COVER PAGE)**

Dated: ___________________________

_______________________________________________

UNITED STATES DISTRICT JUDGE

## I. PRELIMINARY INSTRUCTIONS

**Jury Instruction #1**

**Duty of Jury**

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

AUTHORITY: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2025 ed., last updated September 2025) ("Ninth Cir. Model Instructions"), Instruction No. 1.4.

DATE SUBMITTED: January 28, 2026

DATE REVISED: [insert date]

**Jury Instruction #2**

**Claims and Defenses±**

*[±Defendants' proposed language is in blue text. Tucson's proposed language in red text.]*

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The Plaintiff in this case is Tucson Unified School District, also referred to as "Plaintiff," "TUSD" or "the District." The Defendants in this case are four separate groups of [social media] [technology] companies:

1. Meta Platforms, Inc. f/k/a Facebook, Inc., referred to as "Meta;"
2. Snap Inc., referred to as "Snap;"
3. TikTok Inc., ByteDance Inc., ByteDance Ltd., TikTok Ltd., and TikTok, LLC, referred to collectively as "TikTok;" and
4. YouTube, LLC and Google LLC, referred to collectively as "YouTube."

Collectively, these [social media companies] [four groups] are referred to as "Defendants."

TUSD brings two legal claims against [Defendants] [each Defendant]: negligence and public nuisance. TUSD has the burden of proving these claims. TUSD also brings a claim for punitive damages.

The Defendants deny TUSD's claims. Defendants also assert the following affirmative defenses to TUSD's claims: (1) comparative fault, [(2) failure to mitigate,] and (3) (2) assumption of risk. Defendants have the burden of proving these affirmative defenses. TUSD denies Defendants' affirmative defenses.

Later I will explain the specific legal requirements that the parties must prove for each claim or defense.

AUTHORITY: Ninth Circuit Manual of Model Civil Jury Instructions 1.5

DATE SUBMITTED: January 28, 2026

DATE REVISED: November 23, 2026

**TUCSON'S POSITION ON INSTRUCTION 2:**

**Social Media Companies.** Defendants' refusal to describe themselves as "social media companies" is unjustifiable. Demanding that they only be called "technology companies" is unduly restrictive for no legitimate reason, confusing, and prejudicial because it does not match reality, the testimony, or documentary evidence that will be admitted at trial, which commonly refers to Defendants as "social media companies," including their own press releases. Nor is it prejudicial to Defendants to call them social media companies; that *is* what they are—hence the case caption.

**Simplicity.** TUSD's proposed instruction is in line with Arizona law and the applicable Ninth Circuit pattern instruction. *See* 9th Cir. Manual of Model Civil Jury Instructions 1.5 (stating only that "[t]he plaintiff asserts that [plaintiff's claims]" in reference to the nature of the claims; *Chiulli v. Barrington*, No. 1 CA-CV 14-0849, 2017 WL 525969, at *3 (Ariz. Ct. App. Feb. 9, 2017) ("No Arizona authority requires the superior court to instruct the jury on the precise parameters of a negligence duty under the facts of each case, and the superior court's use of the standard negligence instruction was appropriate.") This proposal is also in line with the Court's Pretrial Standing Order, which asks for "a short, non-argumentative joint statement of the case to be read to the jury." By focusing only on the nature of the claims, TUSD seeks to create a simple instruction that can truly be "joint," in that neither party should object to it.

TUSD's prior submission included substantially more detail about TUSD's claims. But after further reflection, TUSD concluded that it was best to simply tell the jury what the claims are, without going into detail about legal theories.

**"Defendants" vs. "a Defendant."** TUSD's references to "Defendants" in the collective is appropriate for this instruction because it summarizes allegations that TUSD asserts uniformly against all Defendants. It does not—as Defendants claim—relieve TUSD of its obligation to prove causation against each Defendant, which TUSD addresses in a separate instruction. *See infra* [Causation – Generally], [Causation – Multiple Causes].

**Evidence Does Not Support Instruction on Affirmative Defenses.** Tucson objects to including Defendants' affirmative defenses in this instruction, as they are unsupported by evidence. First, Arizona law recognizes that "[a] defendant is entitled to an instruction on 'any theory of

defense which is recognized by law *and supported by the evidence*.'" *State v. Johnson*, 2018 WL 328724, at *3 (Ariz. Ct. App. Jan. 9, 2018) (citing *State v. Strayhand*, 911 P.2d 577, 594 (Ariz. Ct. App. 1995)) (emphasis added). As explained in TUSD's specific objections to Defendants' proposed instructions on each of these defenses, Defendants have neither articulated nor substantiated any evidentiary basis from which a reasonable jury could find comparative fault, assumption of risk, or failure to mitigate, as to TUSD. *See infra* [Comparative Fault], [Assumption of Risk], [Mitigation of Damages]. In other words, Defendants' "version of the facts did not place [those defenses] at issue, and the jury would not [be] aided by" an instruction on those defenses. *State v. Almaguer*, 303 P.3d 84, 91 (Ariz. Ct. App. 2013).

To the extent the Court denies any or all of Defendants' affirmative defense instructions, it should also remove any mention of those instructions in this preliminary instruction.

**Mitigation is Not a Defense to Claims.** TUSD objects to including "failure to mitigate" damages as an affirmative defense "to Tucson Unified School District's *claims*." (emphasis added); *see infra* [Mitigation of Damages]. TUSD's legal objection to a mitigation instruction is in addition to its objection based on lack of evidence.

Failure to mitigate—sometimes called the "doctrine of avoidable consequences"—"affects the measure of damages, not the right to recover." *Universal Inv. Co. v. Sahara Motor Inn, Inc.*, 619 P.2d 485, 487 (Ariz. Ct. App. 1980). Mitigation is a "defense," in that Defendants bear the burden of proof. *See Next Gen Cap., L.L.C. v. Consumer Lending Assocs., L.L.C.*, 316 P.3d 598, 602 (Ariz. Ct. App. 2013) (placing "the burden of proof on the breaching party"). But enumerating that defense alongside assumption of risk and comparative fault, as a defense to TUSD's "claims," likely would mislead the jury into believing that a finding of failure to mitigate operates as a complete bar to recovery. This Court, therefore, should not include mitigation in this preliminary instruction, even if a mitigation instruction is given.

**DEFENDANTS' POSITION ON INSTRUCTION 2:**

Defendants' proposed Instruction on Claims and Defenses is consistent with Ninth Circuit Jury Instructions and the Court's Standing Order Re: Pretrial Instructions in Civil Cases (last updated March 17, 2025) ("Standing Order").[2] *See* Standing Order at 5–6. Specifically, Defendants' Instruction is modeled after and consistent with Ninth Circuit Model Instruction 1.5, which states that the instruction will "give a brief summary of the positions of the parties" and goes on to identify the parties, "plaintiff's claims," "defendant's . . . affirmative defenses," which party has the burden of proving plaintiff's claims and defendant's affirmative defenses, and the denials of the same.

**Affirmative Defenses.** Defendants include each of their affirmative defenses in their proposed language, whereas Tucson objects to instructing on affirmative defenses at all, and in particular, objects to including the failure to mitigate an affirmative defense. Tucson's position is in direct opposition to Model Instruction 1.5 and has no support. Defendants' defenses are properly asserted and Defendants intend to offer supporting evidence at trial.[3] Tucson has not moved to strike them and did not seek summary judgment on those defenses. Tucson concedes that each of these three defenses is a proper affirmative defense under Arizona law. *See, e.g.*, *Braunstein v. Honor Family Healthcare, LLC*, 2025 WL 1554316, at *2 (Ariz. Ct. App. May 22, 2025) ("Mitigation is an affirmative defense"); *Del E. Webb Corp. v. Super. Ct.*, 726 P.2d 580, 587 (Ariz. 1986) (en banc) ("contributory negligence and assumption of risk" are "affirmative defenses"). And Defendants' proposed instructions for each defense accurately explain the applicable Arizona law, including that if the jury finds the defenses apply, the Court will reduce Tucson's full damages by the corresponding amount. *See* Proposed Instructions 32 ("Comparative Fault"), 33 ("Mitigation of Damages"), 34 ("Assumption of Risk"). There is no risk of juror confusion.

---

[2] Defendants' motion for summary judgment remains pending. Defendants maintain that summary judgment should be granted because Plaintiffs have not identified any actionable conduct that caused their alleged harms, and they submit these proposed instructions without waiving such arguments.

[3] These affirmative defenses were raised in each of the Defendants' answers to the Districts' Master Complaint. *See* Dkt. No. 1419 (YouTube); Dkt. No. 1421 (TikTok); Dkt. No. 1423 (Snap); Dkt. No. 1424 (Meta).

**Referring to Each Defendant.** Tucson improperly attempts to lump Defendants together, despite Arizona requiring assessment of liability and apportionment of fault for each party. *See Scottsdale Ins. Co. v. Cendejas*, 205 P.3d 1128, 1132 (Ariz. Ct. App. 2009) (stating that under Arizona law, "a defendant is liable to an injured party only for his percentage of fault and may ask the trier of fact to apportion fault among all of those who contributed to the injury."); A.R.S. § 12–2506(B)–(C) ("[T]rier of fact shall consider the fault of all persons who contributed to the alleged injury" and apportion "the relative degree of fault" of the claimant, the defendants, and nonparties).

**Reference to "Social Media" Companies.** Defendants object to the use of "social media" to describe their platforms. YouTube and Snap do not agree with the characterization of their platforms as "social media." Tucson takes the position that "social media" references in the evidentiary record equal Defendants, but Defendants contest this. The Court's instructions should not unnecessarily weigh in on that factual dispute in Tucson's favor.

**Jury Instruction #3**

**Companies and Public Entities±**

*[±Defendants' proposed language is in blue text.]*

The Defendants in this case are companies. The Plaintiff in this case is a public entity. All parties are equal before the law. Companies and public entities are entitled to the same fair and conscientious consideration by you as any party. Under the law, Plaintiff and Defendants are each considered to be a person and can only act through its subsidiaries, employees, agents, directors, or officers. Therefore, Plaintiff and Defendants are each responsible for the acts of its subsidiaries, employees, agents, directors, and officers performed within the scope of their authority. An employee, agent, director, or officer is acting within the scope of authority if he or she is engaged in the performance of duties which were expressly or impliedly assigned to them by the company.

AUTHORITY: Ninth Cir. Model Instructions, Instructions 4.1, 4.2, and 4.5 (modified).

DATE SUBMITTED: January 28, 2026

DATE REVISED: November 23, 2026

**TUCSON'S POSITION ON INSTRUCTION 3:**

The parties began with the Ninth Circuit Model Civil Jury Instructions 4.1 (Corporations and Partnerships – Fair Treatment) and 4.2 (Liability of Corporations – Scope of Authority Not in Issue), which instruct on treating corporate parties fairly and explain that corporations can be held accountable through their employees and officers. The parties agreed to revise the instruction to say "companies" rather than "corporations" (as LLCs are technically companies, but not corporations), and to instruct the jury that they also should not treat TUSD differently as a public entity.

The parties conferred about the applicability of Model Civil Jury Instruction 4.2, which instructs the jury on how to determine liability for corporations—a pattern instruction that contemplates that scope of authority is *not* at issue. TUSD believes that this instruction may be useful, as the jury will hear testimony from both parties' employees.

However, Defendants also suggested including language from Model Civil Jury Instruction 4.5 (Agent – Scope of Authority Defined), which goes on to describe what conduct falls "within the scope of authority." TUSD objected to this language because no party has suggested that any person was acting outside the scope of their authority. Further, Defendants have failed to identify any live dispute regarding the liability of parent corporations for the actions of their subsidiaries.[4] Because the jury will not be asked to determine when an employee acts within the scope of their authority, that instruction language is not relevant for the purposes of this case, and it risks confusing the jury about what issues they must decide. Defendants claim that language from Model Instruction 4.5 is necessary to prevent juror confusion about the meaning of the reference to "scope of authority" in Model Instruction 4.2. The solution is simple: Rather than instruct the jury on an irrelevant concept that may introduce new legal issues and confusion, the Court should remove the language regarding the scope of an employee's authority from Model Instruction 4.2.

---

[4] *E.g.* Order on Stipulation to Dismiss Certain Meta Defendants, ECF 2401 at 1 ("Meta Platforms Inc. agrees not to assert as a defense to liability in this Matter that it is not responsible for any actions or inactions alleged by Bellwethers as wrongful on the grounds that such actions or inactions were taken in whole or in part by any or all of the Meta Subsidiaries.").

Thus, TUSD proposes that the instruction end with this sentence: "Therefore, Plaintiff and Defendants are each responsible for the acts of its subsidiaries, employees, agents, directors, and officers." This proposal informs the jury on all relevant issues of law that will help them resolve the questions they are tasked with answering.

**DEFENDANTS' POSITION ON INSTRUCTION 3:**

The Parties jointly propose giving an instruction based on Ninth Circuit Model Instructions 4.1 and 4.2, slightly modified for the facts of this case. In doing so, Defendants also seek to include in this instruction Ninth Circuit Model Instruction 4.5, which is similarly modified for the facts of this case. Plaintiffs object to the inclusion of language from Model Instruction 4.5 ("An agent is acting within the scope of authority if the agent is engaged in the performance of duties which were expressly or impliedly assigned to the agent by the principal."), and the final clause of Model Instruction 4.2 ("Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.").

Defendants propose this language because the "scope of authority" is integral to understanding and then applying agency law. What is more, Plaintiffs provide no authority for the position that Defendants can be held liable for acts of their agents performed outside the scope of their authority. Additionally, because several Defendant groups include parent companies and subsidiaries, this language is necessary for the jury to determine potential liability of parent organizations for actions taken by subsidiaries or employees of subsidiaries. *See, e.g.*, *Brit. Telecomm. PLC v. IAC/InteractiveCorp*, 356 F. Supp. 3d 405, 409 (D. Del. 2019) (holding that "a parent corporation is held liable for the actions of its subsidiary if the parent directed or authorized those actions" under an agency theory if the relationship is directly related to the cause of action) (citing *Phoenix Canada Oil Co. v. Texaco, Inc.*, 842 F.2d 1466, 1477 (3d Cir. 1988)); *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017) (proving agency relationship between parent and subsidiary requires that establishing that the agent "act[ed] on the principal's behalf and subject to the principal's control" (quoting Restatement (Third) Of Agency § 1.01 (2006)).

The Court should give Defendants' requested language in this instruction because it clearly states the law—and Plaintiffs fail to provide any basis for rejecting a model instruction.

**Jury Instruction # 4**

**Burden of Proof – Preponderance of the Evidence**

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more likely true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

AUTHORITY: Ninth Cir. Model Instructions, Instruction 1.6.

DATE SUBMITTED: January 28, 2026

DATE REVISED: [insert date]

**Jury Instruction # 5 - P**

**Burden of Proof – Clear and Convincing Evidence**

*[Defendants object to the instruction in full. However, the Parties agree that this instruction is only appropriate if a Punitive Damages Instruction is given. If a Punitive Damages instruction is given over Defendants' objection, the Parties stipulate to the proposed language for this instruction.]*

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

AUTHORITY: Ninth Cir. Model Instructions, Instruction 1.7.

DATE SUBMITTED: January 28, 2026

DATE REVISED: [insert date]

**Jury Instruction #6**

**Two or More Parties – Different Legal Rights**

*[±Defendants' proposal is in blue text.]*

You should decide the case as to each party separately. A Defendant is responsible only for its own conduct, and one Defendant cannot be liable as a result of conduct by a different Defendant. Unless otherwise stated, the instructions apply to all parties.

AUTHORITY: Ninth Cir. Model Instructions, Instruction 1.8 (modified).

DATE SUBMITTED: January 28, 2026

DATE REVISED: November 23, 2026

**TUCSON'S POSITION ON INSTRUCTION 6:**

Plaintiffs propose the pattern instruction language from Ninth Circuit Model Civil Jury Instruction 1.8. Defendants' additional language ("A Defendant is responsible only for its own conduct, and one Defendant cannot be liable as a result of conduct by a different Defendant.") invites juror confusion and misstates the law for causation by multiple tortfeasors, which TUSD alleges.

Where multiple causes combine or commingle to produce harm, Arizona law requires the plaintiff to show that each defendant was a substantial factor in contributing to the plaintiff's harm. *See Salica v. Tucson Heart Hosp.-Carondelet, L.L.C.*, 231 P.3d 946, 950 (Ariz. Ct. App. 2010) (holding that "when multiple tortfeasors are alleged to have created an indivisible injury and each defendant's causal role is potentially indeterminable, such causal uncertainty will not prevent a plaintiff from recovering altogether"); *see also id.* (recognizing Arizona's adoption of the "substantial factor" test and stating that "[t]o avoid the unfairness of denying the injured person redress simply because he cannot prove how much damage each tortfeasor did, when it is certain that between them they did all, tortfeasors are left to apportion damages among themselves when causation is potentially indeterminable") (quotations and alterations omitted). Thus, Defendants' language that a Defendant "is responsible only for its own conduct" is misleading, when the law permits the jury to consider the actions of more than one Defendant acting together. In Arizona, the jury apportions damages according to the proportionate fault of the tortfeasors. *Piner v. Superior Ct. in and for Cnty. of Maricopa*, 962 P.2d 909, 916 (Ariz. 1998). In this situation, each Defendant whose conduct was a substantial factor in contributing to TUSD's harm is considered to have *caused* the entire harm. *Id.* ("The operative fact is simply that the conduct of each defendant was a cause and the result is indivisible damage."). The only way that a Defendant can avoid responsibility for causing an entire indivisible harm is to prove that (1) the harm is actually divisible, and (2) evidence exists that would allow the jury to connect a particular Defendant's actions to a particular part of the divisible harm. Defendants have the burden to show each aspect of apportionability; otherwise, the harm is considered indivisible, and all contributing tortfeasors

are considered responsible for the whole. *See* Restatement (Second) Torts §§ 433A, 433B (1965); *Piner*, 962 P.2d at 916.

Because Defendants' proposed language suggests that liability must be limited according to each Defendants' causal contribution to the harm, despite no Defendant proving that any Plaintiff's harm is capable of divisibility, the proposal misstates the law and invites jurors to err in considering the evidence. The Court should reject Defendants' added language and, instead, give the Ninth Circuit pattern language as written.

**DEFENDANTS' POSITION ON INSTRUCTION 6:**

Defendants propose adding a sentence to Ninth Circuit Model Instruction 1.8 to explicitly instruct the jury on the implications of "decid[ing] the case as to each party separately." This additional language makes good sense not least because it is black letter law in all six bellwether jurisdictions that one party cannot be held liable for the actions of another unless the principles of agency (on which the jury will be instructed) require such a finding of liability. In all other instances, a defendant is only responsible for its own conduct.

Tucson argues that Defendants' proposed language is misleading because multiple tortfeasors may contribute to a single indivisible injury. As an initial matter, Tucson has presented no evidence or argument that its injuries are indivisible. And even if they were, under Arizona law (even in cases that do not implicate protected speech), the plaintiff always bears the "burden of proving that the conduct of *each defendant* was a cause of the injury." *Piner v. Super Ct.*, 962 P.2d 909, 916 (Ariz. 1998) (emphasis added) (quoting Restatement (Second) of Torts § 433B). Indeed, Tucson itself argues that Arizona law requires proof that each Defendant's conduct was a substantial factor in causing the alleged harm. *See Salica v. Tucson Heart Hosp.-Carondelet, LLC*, 231 P.3d 946, 950 (Ariz. Ct. App. 2010). Defendants' proposed instruction is entirely consistent with that requirement. It does not prevent the jury from considering whether multiple Defendants' conduct was a proximate cause to the same injury; it simply clarifies that the jury must determine each Defendant's legal responsibility individually.

Arizona law does not provide any exception to the threshold causation requirement, including where a plaintiff experienced an indivisible injury. Rather, in a case of indivisible injury, "each tortfeasor whose *conduct caused the injury* is severally liable only for a percentage of the total damages recoverable by the plaintiff, the percentage based on each actor's allocated share of fault." *Piner*, 962 P.2d at 915 (emphasis added); *Salica*, 231 P.3d at 951 ("A plaintiff therefore will be allowed to recover if he or she shows multiple defendants '*contributed to the final result*,' in which case 'the burden of proof is on them.'") (quoting *Piner*, 962 P.2d at 916 (emphasis added)); *Cramer v. Starr*, 375 P.3d 69, 73 (Ariz. 2016) (same). *Salica* does not support Tucson's argument because in that case, the court permitted claims against a defendant based on evidence that the

defendant's conduct "substantially increased the likelihood of [the decedent's] death" and specified that a plaintiff "cannot leave causation to the jury's speculation." 231 P.3d at 951–52. Nothing about this framework is inconsistent with instructing jurors to evaluate each Defendant's legal responsibility separately. While a plaintiff does not always bear the burden of establishing the proper apportionment of damages, they always bear the burden of showing causation as to each defendant before they can be held liable for any amount.

Tucson also argues that any Defendant whose conduct was a substantial factor in contributing to TUSD's harm is considered to have caused the entire harm, but that claim precisely describes the rule of joint and several liability, where all defendants who proximately caused a harm were "jointly and severally liable for the whole amount of damage." *Piner*, 962 P.2d at 914. By statute, the Arizona legislature "abolish[ed] joint liability and replac[ed] it with a system that requires the court to allocate responsibility among all parties who caused the injury, whether or not they are present in the action." *Id.* at 915; *see also* A.R.S. § 12–2506(B)–(C) ("[T]rier of fact shall consider the fault of all persons who contributed to the alleged injury" and apportion "the relative degree of fault" of the claimant, the defendants, and nonparties). Thus, Tucson has no legal basis to object to this instruction, which would be helpful to the jury alongside aiding in avoiding confusion over how to view corporate separateness among distinct legal entities.

This modification to the Model Instruction will also prevent confusion for the jury. Repeatedly throughout the proposed substantive instructions, Defendants are referenced as a group. Defendants have objected to this "lumping together" of Defendants and proposed alternative language where appropriate. Despite these objections, however, the jury may still fail to appropriately consider Plaintiff's claims against each Defendant separately or to recognize what it means to consider the claims separately. And this concern becomes particularly acute if the Court does not adopt Defendants' proposed language in the substantive instructions. Thus, this modification to the Model Instruction will aid the jury in faithfully applying the substantive law in each case.

**Jury Instruction # 7**

**What Is Evidence**

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;
2. the exhibits that are admitted into evidence;
3. any facts to which the lawyers have agreed; and
4. any facts that I have instructed you to accept as proved.

AUTHORITY: Ninth Cir. Model Instructions, Instruction 1.9.

DATE SUBMITTED: January 28, 2026

DATE REVISED: [insert date]

**Jury Instruction # 8**

**Direct and Circumstantial Evidence**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

AUTHORITY: Ninth Cir. Model Instructions, Instruction 1.12 (modified to include illustrative example suggested in comment to Instruction 1.12).

DATE SUBMITTED: January 28, 2026

DATE REVISED: [insert date]

**Jury Instruction #9**

**What Is Not Evidence**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

AUTHORITY: Ninth Cir. Model Instructions, Instruction 1.10 (modified).

DATE SUBMITTED: January 28, 2026

DATE REVISED: [insert date]

**Jury Instruction #10**

**Evidence for a Limited Purpose**

*[The Parties agree to this instruction on the condition that it be given only if there is a limiting instruction ordered.]*

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you may consider it only for that limited purpose and not for any other purpose.

AUTHORITY: Ninth Cir. Model Instructions, Instruction 1.11.

DATE SUBMITTED: January 28, 2026

DATE REVISED: [insert date]

**Jury Instruction # 11**

**Ruling on Objections**

*[The Parties propose this instruction be given before the start of evidence.]*

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.

If I overrule the objection, the question may be answered, or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

AUTHORITY: Ninth Cir. Model Instructions, Instruction 1.13.

DATE SUBMITTED: January 28, 2026

DATE REVISED: [insert date]

**Jury Instruction # 12**

**Credibility of Witnesses**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

AUTHORITY: Ninth Cir. Model Instructions, Instruction 1.14.

DATE SUBMITTED: January 28, 2026

DATE REVISED: [insert date]

**Jury Instruction # 13**

**Publicity During Trial**

*[The Parties propose this instruction be given before the start of evidence.]*

If there is any news media account or commentary about the case or anything to do with it, you must ignore it. You must not read, watch or listen to any news media account or commentary about the case or anything to do with it. The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies. If any juror is exposed to any outside information, please notify me immediately.

AUTHORITY: Ninth Cir. Model Instructions, Instruction 1.16.

DATE SUBMITTED: January 28, 2026

DATE REVISED: [insert date]

**Jury Instruction # 14**

**No Transcript Available**

*[The Parties propose this instruction be given before the start of evidence.]*

I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony.

AUTHORITY: Ninth Cir. Model Instructions, Instruction 1.17.

DATE SUBMITTED: January 28, 2026

DATE REVISED: [insert date]

**Jury Instruction # 15**

**Bench Conferences and Recesses**

*[The Parties propose this instruction be given before the start of evidence.]*

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of you the jury, either by having a conference at the bench when you the jury are present in the courtroom, or by calling a recess. Please understand that when this happens and you are waiting, we will be working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

AUTHORITY: Ninth Cir. Model Instructions, Instruction 1.20 (modified).

DATE SUBMITTED: January 28, 2026

DATE REVISED: [insert date]

**Jury Instruction # 16**

**Video Deposition**

*[The Parties propose this instruction be given before the start of evidence.]*

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.

You have been shown video-recorded testimony of certain witnesses. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

AUTHORITY: Ninth Cir. Model Instructions, Instruction 2.4 (modified).

DATE SUBMITTED: January 28, 2026

DATE REVISED: [insert date]

**Jury Instruction # 17**

**Expert Opinion Testimony**

You have heard testimony from experts who testified about their opinions and the reasons for those opinions. This opinion testimony is allowed, because of the specialized knowledge, skill, experience, training, or education of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's specialized knowledge, skill, experience, training, or education, the reasons given for the opinion, and all the other evidence in the case.

AUTHORITY: Ninth Cir. Model Instructions, Instruction 2.13.

DATE SUBMITTED: January 28, 2026

DATE REVISED: [insert date]

**Jury Instruction # 18**

**Jurors' Social Media Use During Trial**

*[The Parties propose complete competing instructions.]*

**(1) Instruction #18-P (Tucson's Proposed Instruction)**

As I have already instructed you, jurors may not independently investigate any facts bearing on this case. Many of you use social media or video sharing platforms. You are not being asked to stop your use of social media during the time of this trial. However, until you are excused as a juror you should not change how you normally use social media and you should not investigate features that you do not normally use. Do not create new accounts or change your settings to attempt to explore the evidence in this case. Do not look up or research any of the parties or witnesses you may hear from in this case. Do not conduct any research, on the internet or otherwise, about the facts of this case or about the claims made by the parties. In deciding this case, you may consider only the evidence presented in this court about how the Defendants' platforms actually operated during the time periods relevant to this case.

**(2) Instruction #18-D (Defendants' Proposed Instruction)**

Jurors may not independently research or investigate the topics discussed in this case. You may not use your pre-existing social media accounts or create new ones to test the features or investigate the facts described in this case.

AUTHORITY: Special Instruction given in KGM (modified).
Court's admonishment to jurors given in *California v. Meta Platforms, Inc.*, 4:23-CV-05448, 8/18/26 Trial Tr. 386:18-22.

DATE SUBMITTED: November 23, 2026
DATE REVISED: [insert date]

**TUCSON'S POSITION ON INSTRUCTION 18:**

This proposed instruction could be given in place of, or in addition to, other instructions that the Court gives regarding jurors' personal social media use and duty not to investigate the case outside of the courtroom. TUSD recognizes that the Court gave an instruction on this topic for the attorneys general trial, and TUSD does not object to anything that was in that admonition. TUSD also does not object to any of the language offered by the Defendants in their alternative instruction. But TUSD is providing this instruction, given in the KGM bellwether case before Judge Kuhl, for the Court's consideration.

The theory behind this instruction is that some jurors will likely use social media during a trial that lasts several weeks. So, it will help the jurors if they are told not only what they cannot do, but also what they can do. The primary goal, of course, is to prevent jurors from investigating social media features that are the focus of this trial. TUSD believes that if jurors are given affirmative permission to use social media as they have in the past, that will give them guidance to police their own behavior on social media. Hopefully, the jurors would know to ask themselves: Is this a site I would normally visit? If not, then I am violating the Court's instructions and should stop what I am doing.

**DEFENDANTS' POSITION ON INSTRUCTION 18:**

The Parties' stipulated instructions sufficiently inform jurors that they should not conduct research during the trial. For example, Instruction No. 9 (What Is Not Evidence) instructs jurors that "anything [they] may have seen or heard when the court was not in session is not evidence." This necessarily tells jurors not to consider information jurors might obtain through their own use of Defendants' platforms. Similarly, Instruction No. 13 (Publicity During Trial) instructs jurors that they "must not read, watch or listen to any news media account or commentary about the case or anything to do with it" and that "[t]he case must be decided by [them] solely and exclusively on the evidence that will be received in the case." Together, these instructions adequately convey that jurors must decide the case solely on the evidence presented at trial, without conducting independent research.

To the extent the Court determines that additional instruction is warranted, it should adopt Defendants' proposed language. In *California v. Meta Platforms, Inc.*, this Court instructed jurors using language nearly identical to that now proposed by Defendants. No. 4:23-cv-05448, 8/18/26 Trial Tr. 386:18–22. As in that case, Defendants' proposed instruction adequately informs jurors of their obligation to refrain from independently testing the platforms at issue. In contrast, Tucson's instruction is unnecessarily detailed, spelling out particular methods by which jurors could attempt to conduct research on Defendants' platforms when jurors otherwise would not be primed to "create new accounts," "change [their] settings," or "investigate features that [they] do not normally use." Accordingly, if the Court concludes that further instruction is necessary, Defendants' proposed language echoing that of this Court should be adopted.

**Jury Instruction # 19**

**Protection for Publishing and Expressive Activity**

*[The Parties propose complete competing instructions. Tucson also argues that this instruction should be given later—between No Duty to Prevent Harm Caused by Third Parties and Comparative Fault. Defendants do not believe the jury should be instructed on failure to warn, but include the language below in blue if the Court does so instruct.]*

**(1) Instruction # 19-P (Tucson's Proposed Instruction)**

In this case, you may not hold Defendants liable simply because Defendants hosted or published users' content, or because they removed or failed to remove content posted by users.

However, in deciding whether Defendants are liable for negligence or public nuisance, you may hold Defendants liable for their own actions, even if users' content contributed to the harm, so long as Defendants' actions were a substantial factor in causing TUSD's harm. You may also hold Defendants liable for failing to warn about the risks of harm caused by their platforms even if users' content contributed to the harm, so long as Defendants' failure to warn was a substantial factor in causing Tucson's harm.

**(2) Instruction # 19-D (Defendants' Proposed Instruction)[5]**

The Defendants in this case are providers of interactive computer services. The law provides certain protections for the Defendants when they act as publishers of third-party content, including when they make decisions about what third-party content to put on their platforms and about what third-party content to remove from their platforms. "Third-party content" means words, pictures, video, audio, or any other form of communication that is not spoken by, created by, or developed by a Defendant, including "bullying" words communicated on a platform, viral "challenges," or inappropriate or hurtful posts that one person makes about another. The law also provides certain protections for the Defendants when they choose to convey their own speech or expression to users of their platforms.

[5] Defendants maintain that their previously proposed Instruction # 18-D (see ECF No. 24) should be given. Defendants are providing the revised instruction with the understanding that the Court rejected instructions similar to those previously proposed by Defendants at the March 18, 2026 Pretrial Conference in the *Breathitt* matter.

Therefore, you may not find any Defendant liable on the basis of any of the following "Protected Conduct"[," or on the basis of any alleged failure to warn about the following Protected Conduct][6]:

1. Allowing any third-party content to appear on its platform;
2. Failing to remove any third-party content from its platform;
3. Recommending any third-party content to users, including recommending that a user "add" or "friend" another user's account or profile;
4. Making decisions about whether and how to recommend, compile, organize, disseminate, and display third-party content to users;
5. Allowing users to post or provide comments or to receive comments posted by others;
6. Use of algorithms to display content or use of algorithms that causes users to spend more time on a platform;
7. Providing content in a short-form video format;
8. Displaying third-party content in a continuous feed, such as through an "endless scroll" or "infinite scroll" feature;
9. Displaying third-party content automatically and continuously, without user intervention, such as through an "autoplay" feature;
10. Sending users notifications, including the timing and clustering of those notifications and "awards" or "rewards" for platform usage or engagement
11. Displaying "Likes" or listing the number of "Likes" certain content has received;
12. Allowing third-party content to be private or to disappear after a period of time;
13. Displaying user geolocation data, including by allowing users to share their geolocation data with others;
14. Failing to place default protective limits on the length and frequency of use of a Defendant's platform;

[6] Defendants request that this language be included only if the Court instructs on failure to warn over Defendants' objection.

15. Failing to institute blocks that prevent use of a Defendant's platform during certain times of day (such as during school hours or late at night); or
16. Failing to warn users about the potential risks of third-party content on a Defendant's platform or about the potential risks of any of the Protected Conduct just listed.

However, a Defendant may be held liable for harm caused by a feature or activity that was part of the development or operation of a Defendant's platform, and that was not part of the Protected Conduct listed in the previous paragraph, (the "Non-Protected Conduct"), if Plaintiff proves every element of its claims as to the Non-Protected Conduct.

AUTHORITY: 47 U.S.C. § 230(c)(1)

Prior Court rulings (see FN No. 7);

Calise v. Meta Platforms, Inc., 103 F.4th 732 (9th Cir. 2024); Lemmon v. Snap, Inc., 995 F.3d 1085 (9th Cir. 2021)

Doe v. Internet Brands, Inc., 824 F.3d 846 (9th Cir. 2016)

Est. of Bride by & through Bride v. Yolo Techs., Inc., 112 F.4th 1168 (9th Cir. 2024)

Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC, 521 F.3d 1157 (9th Cir. 2008)

In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig., 497 F. Supp. 3d 552 (N.D. Cal. 2020).

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 702 F. Supp. 3d 809, 825–37 (N.D. Cal. 2023) (outlining relevant protections under Section 230 and the First Amendment)

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 754 F. Supp. 3d 946, 962–64 (N.D. Cal. 2024) (same, for school districts' claims)

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 878–85, 894–95 (N.D. Cal. 2024) (same, for state attorneys general claims)

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102, 1107 (9th Cir. 2009), *as amended* (Sept. 28, 2009) (publication "involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content") (holding that Section 230 "precludes liability when the duty the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a publisher or speaker")

*Estate of Bride by and through Bride v. Yolo Technologies, Inc.*, 112 F.4th 1168, 1180 (9th Cir. 2024) (Section 230 precludes failure-to-warn theories that fault platform "for not mitigating, in some, way, the harmful effects of . . . content")

*Doe v. Grindr Inc.*, 128 F.4th 1148, 1154 (9th Cir. 2025) (similar)

U.S. Const. Amend. I

*Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) ("If the acts of 'disclosing' and 'publishing' information do not constitute speech, it is hard to imagine what does fall within that category[.]")

*NetChoice, LLC v. Bonta*, 113 F.4th 1101, 1119 (9th Cir. 2024) (holding law that would require platforms to "opine on potential speech-based harms to children" was subject to strict scrutiny and was likely invalid)

*NetChoice v. Carr*, 789 F. Supp. 3d 1200 (N.D. Ga. 2025) (holding that age verification requirement "imposes a sweeping burden on adults' access to speech")

*Students Engaged in Advancing Texas v. Paxton*, 765 F. Supp. 3d 575, 595–600 (W.D. Tex. 2025) (similar)

*NetChoice, LLC v. Griffin*, 2025 WL 978607, at *13 (W.D. Ark. Mar. 31, 2025) (similar)

DATE SUBMITTED: January 28, 2026

DATE REVISED: November 23, 2026

**TUCSON'S POSITION ON INSTRUCTION 19:**

Plaintiffs' proposal accurately instructs the jury that it cannot impose liability on Defendants for hosting or publishing users' content, or for removing or failing to remove content posted by users. It also explains that Defendants may be held liable for their own actions, even if content is in the causal chain. Courts have consistently rejected a "but-for" test that would apply Section 230 wherever content was a "but-for" cause of the harm. *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 853 (9th Cir. 2016) (stating that "[p]ublishing activity is a but-for cause of just about everything Model Mayhem is involved in," but "the CDA does not provide a general immunity against all claims derived from third-party content"); *see also Social Media Cases*, No. 22STCV21355, 2025 WL 2807828, at *33 (Cal. Super. Sep. 22, 2025) ("Defendants cannot be allowed to apply an improper but-for test that excludes liability under section 230 if the harm would not have occurred *but* for the third-party content.").

TUSD's instruction also dictates that failure-to-warn claims are viable even if the warnings would address potential harms from speech or third-party content, in line with this Court's rulings,[7] and Ninth Circuit precedent. *See Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 744 (9th Cir. 2024) ("In *Internet Brands*, the platform faced liability not because it failed to remove the ads, but because it failed to warn about their content. Thus, Plaintiffs' claims may fare better if they sought to impose liability on Meta for failing to warn about fraudulent content … .").

By contrast, Defendants' bloated instruction invites the jury to apply the wrong Section 230 test and disregard admitted evidence. Defendants' instruction presents at least three problems. First, the instruction improperly tells the jury that Defendants "are not liable when they act as publishers of 'third-party content.'" This is wrong. Section 230 protection hinges on the *legal duties* being imposed, not on whether Defendants act as publishers. *See e.g.*, *Lemmon v. Snap, Inc.*, 995 F.3d

[7] *See, e.g.*, ECF 430 at 20 (failure to warn claims "plausibly allege that defendants are liable for conduct other than publishing of third-party content and that they could address their duty without changing what they publish"); ECF 716 at 4-5 ("based on" Court's motion to dismiss ruling, "particularly with respect to Claims 2 and 4, the scope of discovery in this matter encompasses all product defects alleged"); ECF 1214 at 45 (Section 230 does not "bar[] liability predicated on a failure to warn of known risks of addiction attendant to any platform features or as to platform construction in general"); ECF 1267 at 14 (same).

1085, 1092–93 (9th Cir. 2021); *Calise*, 103 F.4th at 740-42. Here, the duties at issue are, roughly, (a) a duty to warn students, parents, and school districts about the risk of compulsive and addictive use from Defendants' platforms; (b) a duty not to negligently design Defendants' platforms, *see* ECF 430 at 14-15; and (c) a duty not to interfere with the public rights to health, safety, and education through the foregoing actions. None of these duties require Defendants to monitor or remove third-party content, or change how they publish content. As such, claims based on these duties are not protected by Section 230. *See Calise*, 103 F.4th at 741.

Second, Defendants' instruction includes an instruction on "protected" versus "non-protected" features that is both confusing and legally incorrect. Section 230 does not protect Defendants from a duty to warn of known risks. That duty *would not* require Defendants to change anything about how, what, or when they publish. *See Internet Brands, Inc.*, 824 F.3d at 851; *see also Est. of Bride by & through Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1179 (9th Cir. 2024). Section 230 also does not protect Defendants from all claims that in some way involve third-party content in the causal chain, as discussed above. *See Internet Brands, Inc.*, 824 F.3d at 853. And, Section 230 does not protect Defendants from claims based on third-party content where Defendants contributed to the illegality of that content. *Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1167–68 (9th Cir. 2008).

Third, Defendants' instruction erroneously asks the jury to disregard whole categories of evidence *even if* the Court deems it admissible for certain purposes. Facts that are not independently actionable may still be evidence in support of other claims. *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 633 n.61 (N.D. Cal. 2020). This principle extends to cases involving Section 230. *Calise*, 103 F.4th at 742 ("How could Internet Brands warn about certain harmful content without considering what it was? Such a rudimentary fact-bound inquiry quickly falls apart and runs up against our precedent."). Accordingly, the jury may properly hear evidence about the various mechanisms through which Defendants fostered compulsive use, their corporate knowledge about the same, and the resulting harm to students and school districts. Finally, Judge Kuhl has indicated that a First Amendment instruction would be improper, as the scope of protection is not a jury question, and the Court should take the same approach here.

**DEFENDANTS' POSITION ON INSTRUCTION 19:**

The Court has already ruled that Section 230 and the First Amendment impose a "significant limitation on Plaintiffs' theories of recovery." Dkt. No. 1267 ("SD Order") at 2. To give effect to these rulings, the Court must instruct the jury on which conduct may—and may not—form the basis of liability. Defendants' proposed instruction identifies the specific features and activities that this Court has already held are protected as a matter of law, as well as those that may form the basis of liability. Without that specificity, the instructions would improperly invite the jury to find a Defendant liable for conduct that is "no longer part of this case."[8]

Tucson's proposed instruction disregards the Court's "feature-by-feature" analysis altogether and does not even mention any of the features or activities this Court held are protected. SD Order at 12; *see also* Dkt. No. 430 ("PI Order") at 14–16. Tucson's instruction would thus improperly require the jury to determine on its own which features are protected, rather than applying this Court's answers to those legal questions. *See Tortu v. L.V. Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009) (courts must resolve legal questions and instruct the jury accordingly). And it creates a high risk of confusing the jury into thinking that *none* of Defendants' conduct is protected. *See L.A. Memorial Coliseum Comm'n v. Nat'l Football League*, 726 F.2d 1381, 1398 (9th Cir. 1984) ("Well-tailored and specific instructions" necessary where "abstract legal principles are not self-explanatory to a lay jury" and facts "are complex" (citation omitted)).

Tucson's misguided assertion that its failure-to-warn theory renders the distinction between protected and unprotected conduct irrelevant fails for numerous reasons. First, a substantial body of recent, binding case law confirmed that Section 230 bars failure-to-warn claims arising from publishing activity, including challenged features.[9] *See, e.g., Doe v. Grindr*, 128 F.4th 1148, 1154 (9th Cir. 2025); *Bride*, 112 F.4th at 1179–80; *Doe (K.B.) v. Backpage.com, LLC*, 768 F. Supp. 3d 1057, 1067 (N.D. Cal. 2025). *Calise v. Meta Platforms, Inc.* is not to the contrary, because that

[8] Defendants reserve the right to argue for the exclusion at trial of any evidence of content and protected publishing features.

[9] In light of this intervening authority, Defendants did not include failure to warn in their list of non-protected conduct. Defendants omitted age verification from the list for similar reasons. *See, e.g.*, *NetChoice v. Carr*, 789 F. Supp. 3d 1200, 1230 (N.D. Ga. 2025).

case did not involve any failure-to-warn claims at all, and it held that Section 230 barred all of the plaintiff's non-contractual claims. *See* 103 F.4th at 743, 746. Further, *Calise*'s discussion of failure-to-warn claims is *dicta* that is inconsistent with the Ninth Circuit's subsequent decisions in *Bride* and *Grindr*.

In any event, even if the Court permits the failure-to-warn claim to proceed in its entirety, the jury still could not find liability for any damages caused by protected conduct; it could find liability only for damages caused by failing to warn about that protected conduct.[10] Tucson's proposal ignores that distinction and renders the vast majority of the Court's rulings null.

Tucson's proposal is also erroneous because it states that the jury "may hold Defendants liable for their own actions even if users' content contributed to the harm, so long as Defendants' actions were a cause of Plaintiff's harm." This instruction ignores this Court's rulings that many categories of "Defendants' actions" are protected publishing conduct that cannot form the basis of liability. *See* SD Order at 13–14; PI Order at 5, 22. Tucson's instruction also invites error by encouraging the jury to hold Defendants liable for harms so long as any unprotected conduct is involved in any minimal way in the causal chain. But claims against online platforms must "ha[ve] *nothing to do*" with their role as publishers of third-party content. PI Order at 11 (emphasis added). Tucson suggests Defendants attempt to impose a "but-for" test. To the contrary, it is "analytically insignificant whether [the plaintiff's] injuries would not have occurred 'but for' [a platform's] role as a publisher." *Grindr*, 128 F.4th at 1153 n.3. The relevant question is whether the claims are "*fully independent of* [Defendants'] role in monitoring or publishing third-party content." *Lemmon*, 995 F.3d at 1093 (emphasis added); *Grindr*, 128 F.4th at 1153.

Finally, because Section 230 and the First Amendment cut across all of Tucson's claims, Defendants submit that this instruction must be placed early in the instructions to give important context to the remaining instructions. Placing the instruction near the end, as Tucson proposes, would risk confusing the jury into erroneously concluding that Section 230 and the First Amendment are distinct issues that do not affect the proper framing of Tucson's claims.

---

[10] If the Court permits the jury to hold Defendants liable for failure to warn about protected conduct, the proper approach would be to add failure to warn to the list of non-protected conduct.

**Transition Instruction**

*[The parties agree that a transition instruction is appropriate. TUSD objects to including instructions on Defendants' three affirmative defenses, for reasons expressed below.]*

The Court will now explain the substantive law applicable to the claims and defenses brought in this action. These include Tucson's negligence claim and public nuisance claim, and Defendants' affirmative defenses of comparative fault, mitigation of damages, and assumption of risk.

AUTHORITY: Standing Order, § 3(g)(ii)(B) (modified to reflect the claims and defenses in this case).

DATE SUBMITTED: January 28, 2026

DATE REVISED: [insert date]

## II. SUBSTANTIVE INSTRUCTIONS

**Jury Instruction # 20**

**Negligence – Definition±**

*[±Defendants' proposed language is in blue text. Tucson's proposed language is in red text. Defendants do not believe the jury should be instructed on failure to warn, but if the jury is so instructed, Defendants believe the highlighted language should be provided as well.]*

TUSD claims that Defendants were at fault. Defendants claim that TUSD [was at fault] [contributed to causing the alleged harms].

Fault is negligence that was a cause of TUSD's harm.

Negligence is the failure to use reasonable care. Negligence may consist of action or inaction. Negligence is the failure to act as a reasonably careful person or organization would act under the circumstances. The failure to warn of a risk that a reasonably prudent company would have known warned about is negligence. To establish this claim, TUSD must prove all of the following as to each Defendant by a preponderance of the evidence:

1. That the Defendant's Non-Protected Conduct breached the duty to use reasonable care under the circumstances;
2. That such breach caused TUSD's students to suffer mental health harms; and
3. That those students' harms caused TUSD to incur the additional expenses it claims as damages.

In determining whether each Defendant was negligent, you must consider only whether the Defendant exercised reasonable care with respect to the specific Non-Protected Conduct at issue. You may not make your determination based on the Defendant's platform(s) as a whole, and you may not make your determination based on consideration of any Protected Conduct, even if you find it negligent. Defendants cannot be held liable for alleged failures to warn about any Protected Conduct. You must identify the precise conduct at issue and disregard any claims based on platform-wide features or user-generated content.

AUTHORITY: RAJI (Civil) FI 5 (7th ed.)

*Powers v. Taser Intern., Inc.*, 174 P.3d 777, 783 (Ariz. Ct. App. 2007), as corrected (Jan. 4, 2008) (for failure to warn language).

*Quiroz v. ALCOA Inc.*, 416 P.3d 824, 827-28 (Ariz. 2018) ("To establish a defendant's liability for a negligence claim, a plaintiff must prove: (1) a duty requiring the defendant to conform to a certain standard of care; (2) breach of that standard; (3) a causal connection between the breach and the resulting injury; and (4) actual damages.")

*Markowitz v. Ariz. Parks Bd.*, 706 P.2d 364, 368 (Ariz. 1985) ("In negligence cases that is usually 'reasonable care under the circumstances,' though it may differ, depending on the relationship.")

*Johnson v. Pankratz*, 2 P.3d 1266, 1270 (Ariz. Ct. App. 2000) ("In an ordinary negligence case, 'it is not necessary for the plaintiff to present evidence to establish the standard of care because the [fact finder] can rely on its own experience in determining whether the defendant acted with reasonable care under the circumstances." (quoting *Bell v. Maricopa Med. Ctr.*, 755 P.2d 1180, 1182 (Ariz. Ct. App. 1988)))

*Johnson v. Pankratz*, 2 P.3d 1266, 1270 (Ariz. Ct. App. 2000) ("In an ordinary negligence case, 'it is not necessary for the plaintiff to present evidence to establish the standard of care because the [fact finder] can rely on its own experience in determining whether the defendant acted with reasonable care under the circumstances." (quoting *Bell v. Maricopa Med. Ctr.*, 755 P.2d 1180, 1182 (Ariz. Ct. App. 1988)))

DATE SUBMITTED: January 28, 2026

DATE REVISED: November 23, 2026

**TUCSON'S POSITION ON INSTRUCTION 20:**

TUSD's proposed instruction is the same as Arizona's pattern instruction on negligence. *See* RAJI (Civil) FI 1 (7th ed.). Arizona courts have held that this instruction is a proper instruction in a negligence case. *Galindo v. TMT Transport, Inc.*, 733 P.2d 631, 633–34 (Ariz. Ct. App. 1986).

**Elements.** Tucson's instruction is preferable because it (1) defines negligence consistent with the Arizona pattern instruction; (2) explains that a failure to warn can constitute actionable negligence; (3) does not improperly limit TUSD's theory of harm; and (4) does not include improper Section 230 or First Amendment language. Defendants argue that TUSD cites no authority for "omitting [ ] required elements" of the instruction, but ignores that TUSD is relying on the Arizona pattern instruction for negligence. The pattern instruction is consistent with the Court's Pretrial Standing Order regarding jury instructions. Standing Order ¶ 3(g)(ii).

**Failure–to–Warn Theory.** TUSD's instruction includes language from caselaw discussing when a failure to warn qualifies as negligence. *See Powers v. Taser Int'l, Inc.*, 174 P.3d 777, 783 (Ariz. Ct. App. 2007). This will assist the jury in applying the correct legal standard because part of TUSD's negligence claim is based on a failure-to-warn theory. TUSD's Opp. to Defs' Mot. for Summ. J., ECF No. 2369, at 13–14.

**Improper Limitation to Mental Health Harms.** Defendants' instruction improperly suggests that the harm Defendants caused was to students' mental health, and that TUSD's harm is entirely derivative of students' mental health harms. This is contrary to the Court's prior order, which allowed TUSD's alleged harms—including damages stemming from "disruption to the school environment"—to proceed past dismissal under a negligence claim. ECF No. 729 at ¶ 194; *see also* ECF No. 1267 at 25-26. Defendants' instruction would, therefore, mislead the jury into believing that mental health harms to TUSD's students are the only kind of harm to which liability may attach.

**Repeated 230 Instruction.** Defendants' repetition of "Non-Protected Conduct" and "Protected Conduct" throughout their instructions is prejudicial, misstates the law, and unduly emphasizes one affirmative defense. "Repetitious instructions which place undue emphasis on matters favorable to either side constitute reversible error," *Flentie v. Am. Cmty. Stores Corp.*, 389

F.2d 80, 83 (8th Cir. 1968). *See, e.g.*, *United States v. Jones*, 353 F.3d 816, 819 (9th Cir. 2003) (cautioning against "overemphasis of isolated parts" of jury instructions); *Mack v. Precast Indus., Inc.*, 120 N.W.2d 225, 229 (Mich. 1963) (reversible error where burden of proof was repeated 16 times); *see also United States v. Schilleci*, 545 F.2d 519, 526 (5th Cir. 1977) (reversible error where trial court likely caused "undue concentration on a specific paragraph" of instructions). Because the improper Section 230/First Amendment instruction permeates the entire set of instructions, any error is unlikely to be harmless. *See Sidibe v. Sutter Health*, 103 F.4th 675, 705 (9th Cir. 2024) (court must consider "cumulative error" in deciding whether error in instructions was harmless). Second, grouping the Defendants' conduct into to two sets of conduct that are always "Protected" or "Non-Protected" is inconsistent with the law. As explained in TUSD's argument on Instruction No. 19, whether conduct is protected by Section 230 or the First Amendment depends on the context, including the nature of the claim and the duty that the claim would impose on Defendants.

Defendants' repetition of this term also violates the mandate that jury instructions should be "simple" and "use language that laypersons can understand." Manual on Complex Lit., Fourth, § 12.431. By requiring the reader to turn to the definition repeatedly, defined terms introduce excessive ambiguity. This concern is magnified where, as here, the definition itself is "cumbersome" (spanning 3 full pages). *See LG Philips LCD Co. v. Tatung Co. of Am.*, 2005 WL 6219893, at *4 (C.D. Cal. May 5, 2005).

Finally, it is unnecessary to repeat Defendants' Section 230/First Amendment defense in other instructions. It is presumed that jurors will "carefully follow" each instruction. *Francis v. Franklin*, 471 U.S. 307, 324 (1985). That is why courts generally do not instruct on statute of limitations and preemption, for example, and then use the phrase "non-time-barred non-preempted conduct" throughout the instructions. Here, it is confusing and unnecessary to instruct the jury that "Defendants cannot be held liable for alleged failures to warn about any Protected Conduct," because the jury will be separately instructed on that concept. *See supra* [Section 230].

Plaintiffs propose that, following a single instruction on immunity, the Court should simply refer to Defendants' "conduct" as it gives remaining instructions. *See supra* [Protection for Publishing and Expressive Activity].

**DEFENDANTS' POSITION ON INSTRUCTION 20:**

The Court should adopt Defendants' proposed instruction because it informs the jury of the elements of Tucson's negligence claim while minimizing the risk of the jury improperly holding Defendants liable for protected conduct.

**Comparative Fault.** Defendants' instruction states that Defendants claim that Tucson "contributed to causing the harms that the District alleges," rather than stating that Defendants claim that Tucson "was at fault." This statement would avoid jury confusion by clarifying that Defendants claim that Tucson contributed to its alleged harms, rather than claiming that Tucson is entirely at fault for those harms. That statement comports with the remainder of the pattern instruction on contributory negligence (now referred to by courts as comparative fault), which specifies that if the jury applies this defense, "the court will later reduce" any damages, rather than negating them altogether. *See* RAJI (Civil) FI 19 (7th ed.).

**Failure to Warn.** Defendants oppose Tucson's proposed statement about failure to warn. Defendants do not owe Tucson a legal duty to warn. Tucson MSJ at 45–48. But even putting that aside, it is improper to inject failure to warn into the instruction. The addition goes beyond reciting the elements of Tucson's claim to improperly present an argument that Defendants are liable. *See United States v. Jackson*, 72 F.3d 1370, 1380 (9th Cir. 1995) (affirming rejection of argumentative proposed instructions). Further, it would risk confusing the jury into thinking that allegations of failure to warn present an alternative basis for finding Defendants negligent without establishing the required elements of negligence. *See* RAJI (Civil) FI 5 (7th ed.).

**Mental Health Harms.** Defendants propose explaining that to prevail on its negligence claim, Tucson must show that a breach caused Tucson's students to suffer mental health harms, and that those students' harms in turn caused Tucson's alleged damages. As explained in Defendants' motion for summary judgment, all of Tucson's alleged damages flow from its students' alleged mental health harms caused by their use of Defendants' platforms, including Tucson's allegations that students' "addiction" to the platforms disrupted the school environment. Tucson MSJ at 7–10. Defendants' instruction would explain that fact to the jury and clarify that Tucson has no theory that Defendants' platforms directly harmed Tucson in any way.

**Statement of Elements.** Tucson's proposed instruction fails to identify the elements necessary to establish a negligence claim, in direct contravention of this Court's Standing Order. Specifically, the Standing Order expressly requires that instructions "shall begin with the elements" of each claim. *See* Standing Order ¶ 3(g)(ii)(C). Tucson identifies no authority applicable to this Court that would permit an instruction omitting these required elements. Moreover, in Tucson's prior submission, Tucson explicitly agreed that the parties should specify the elements of a negligence claim, and Tucson did so while citing this Court's standing order. Given the novel nature of Tucson's claims, the instructions should clearly outline Tucson's theory that Defendants caused alleged mental health harms to students which then resulted in increased costs to the District. Without these elements, Tucson's proposed instructions simply ask the jury to find whether Defendants were "at fault." But, at fault, for what? Outlining the elements ensures that the jury assesses whether there was any breach of duty in the first place, whether any breach caused students to suffer mental health harms, and even if so, whether any mental health harms resulted in any injury to Tucson.

**Protected Conduct.** Defendants propose specifying that Tucson must show that "Defendants' Non-Protected Conduct" breached the relevant duty of care and caused Tucson's alleged damages. Defendants also propose clarifying that the jury cannot hold any Defendant liable for negligence based on Defendants' Protected Conduct or "Defendants' platforms as a whole." As explained in Defendants' briefing regarding the instruction addressing Section 230 and the First Amendment, the jury cannot be permitted to hold Defendants liable for any harms allegedly caused by their Protected Conduct. *See* Defendants' Position on Proposed Instruction 19 ("Protection for Publishing and Expressive Activity"). Referencing these protections again when instructing on the elements of Tucson's claims is warranted to explain to the jury how to apply these highly complex legal concepts to the specific claims and elements. Without such an explanation, there is a serious risk that the jury will hold Defendants liable on protected conduct. Especially in a case this complex, it is proper to "repeatedly remind[]" the jury of "the proper legal standard." *See United States v. Ancheta*, 38 F.3d 1114, 1116–17 (9th Cir. 1994) (finding no error where jury "instructions repeatedly and exhaustively reminded the jury of the proper legal standard").

**Jury Instruction # 21**

**Public Nuisance±**

*[±Defendants' proposed language is in blue text. Tucson's proposed language is in red text.]*

TUSD's second claim is public nuisance. TUSD claims that Defendants caused, created, or contributed to a public nuisance in its schools consisting of interference with the community's right to health [and] safety[, and/or education].

A public nuisance is a substantial and unreasonable interference with a right common to the general public. A right common to the general public is collective in nature and not like the individual right that everyone has not to be assaulted or defamed or defrauded or negligently injured.

An interference with a public right is unreasonable where the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort, or the public convenience, or where the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon a public right. An interference is also unreasonable if its social utility is outweighed by the gravity of the harm inflicted. In order to recover on this claim, TUSD must prove each of the following elements as to each Defendant:

1. The [Defendant's Non-Protected Conduct] [condition] substantially interfered with the community's [comfortable enjoyment of life or property] [right to public health and safety];
2. The [Defendant's] [Defendants] Non-Protected Conduct intentionally caused, created, or contributed to this interference, or set in motion a force or chain of events resulting in the interference;
3. The interference was unreasonable under the circumstances; and
4. TUSD was substantially damaged.

In determining whether any Defendant's conduct caused a public nuisance, you must consider only whether each Defendant's Non-Protected Conduct caused a nuisance. You may not make your determination based on Defendants' platforms as a whole, and you may not make your

determination based on consideration of any Defendant's Protected Conduct, even if you find it unreasonable.

AUTHORITY: RAJI (Civil) NUISINST 3 (7th ed.)

*Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Ariz.*, 712 P.2d 914, 917 (Ariz. 1985) (adopting the definition of public nuisance from Restatement (Second) of Torts § 821B).

*Mutschler v. City of Phoenix*, 129 P.3d 71, 77 (Ariz. Ct. App. 2006)

*Bradford v. City of Tucson*, 573 P.3d 557, 562 (Ariz. Ct. App. 2025), *review denied* (Nov. 4, 2025)

Restatement (Second) of Torts §§ 821B, 825, 826

DATE SUBMITTED: January 28, 2026

DATE REVISED: November 23, 2026

**TUCSON'S POSITION ON INSTRUCTION 21:**

**Public Rights.** TUSD's proposed instruction makes clear that public health and safety, and public education, are rights common to the public, which is consistent with Arizona law. The law defines public nuisance as anything "injurious to health, indecent, offensive to the senses or an obstruction to the free use of property that interferes with the comfortable enjoyment of life or property by an entire community or neighborhood or by a considerable number of persons." Ariz. Rev. Stat. Ann. § 13-2917(A)(1); *see also Mutschler v. City of Phoenix*, 129 P.3d 71, 77 (Ariz. Ct. App. 2006) (noting that a public nuisance is broadly defined and includes damage to "the public health, the public safety, the public peace, the public comfort, or the public convenience" (internal citations omitted)). It is also consistent with Defendants' previous position. *See* ECF No. 1332 at 21 (noting Defendants' lack of dispute on Plaintiffs' claim that education is a public right).

TUSD's proposed instruction also closely tracks the pattern instruction, only substituting words for clarity or providing additional context grounded in Arizona law. *See* RAJI (Civil) NUIINST 3, 4 (7th ed.). Defendants' proposal misconstrues Arizona law by omitting that the interference is to the "community's comfortable enjoyment of life or property," omitting that a defendant can be liable if it "set in motion a force or chain of events resulting in the interference," and switching out "condition" for "each Defendant['s]" "conduct," contrary to the pattern instruction. Neither Defendants' sources nor the facts of this case support Defendants' changes to the pattern instruction.

"Public education" is appropriate for inclusion because Arizona recognizes the public right to an education and public nuisance is meant to address public rights. *Shofstall v. Hollins*, 515 P.2d 590, 592 (Ariz. 1973) ("We hold that the constitution does establish education as a fundamental right of pupils between the ages of six and twenty-one years."); *Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Ariz.*, 712 P.2d 914, 917 (1985) (defining public nuisance as "encompass[ing] any unreasonable interference with a right common to the general public"). Defendants ignore this evidence in their attempt to delete "comfortable enjoyment of life or property" and "the public peace, the public comfort, or the public convenience" from the pattern instruction. Plaintiff will present evidence that Defendants substantially interfered with both.

**Definition of Unreasonable Interference.** Defendants' proposed instruction presents an improperly narrow definition of unreasonable interference by omitting well-established, alternative grounds for finding unreasonableness under Arizona law. Plaintiff's proposal, by contrast, tracks the language from the Second Restatement on what unreasonable interference means:

> Circumstances that may sustain a holding that an interference with a public right is unreasonable include ... [w]hether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or … whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.

Restatement (Second) of Torts § 821B; *see also Armory Park*, 712 P.2d at 922 (quoting § 821B). Defendants' proposal only includes balancing test language that fails to explain what the jury is meant to balance and does not explain what "significant" means. TUSD's instruction captures these alternative bases for finding unreasonableness, whereas Defendants' instruction is improperly limited to a social utility balancing test and therefore risks misleading the jury.

**Causation.** TUSD's instruction recognizes that Defendants need not have "intentionally caused, created, or contributed" to an interference to a public right to be held liable for public nuisance; rather, Defendants will also be held liable "when its acts 'set in motion a force or chain of events resulting in the invasion.'" *Bradford v. City of Tucson*, 573 P.3d 557, 562 (Ariz. Ct. App. 2025), *review denied* (Nov. 4, 2025) (quoting *Armory Park*, 712 P.2d at 920). TUSD's instruction is thus necessary to prevent the jury from conflating the causation elements of its negligence and public nuisance claims, and from applying a stricter causation standard to the public nuisance claim than Arizona law requires. The need to determine whether each Defendant individually caused TUSD's harms will be addressed in a separate instruction and need not be repeated here. *See supra* [Causation – Generally].

**Repeated 230/First Amendment Instruction.** Defendants improperly insert their 230 and First Amendment defenses here. *See supra* [Negligence – Definition]; [Protection for Publishing and Expressive Activity].

**DEFENDANTS' POSITION ON INSTRUCTION 21:**

**Public Rights.** Defendants oppose Tucson's proposal to reference an interference with the community's right to education because Tucson has not identified any Arizona (or any other) authority recognizing such a right enforceable by a nuisance claim. Nor has this Court held that Arizona recognizes such a right. Order Granting in Part and Denying in Part Defendants' Motion to Dismiss (Nov. 15, 2024) Dkt. No. 1332 ("Second SD Order") at 23 ("[T]he Court declines to rule on the issue of whether defendants[] have unreasonably interfered with a public right to education."). *See also* Defendants' Motion to Dismiss (N.D. Cal. Feb. 5, 2024), Dkt. No. 601 at 45; Defendants' Reply (N.D. Cal. Mar. 25, 2024), Dkt. No. 723 at 21–22.

Tucson's authority does not say otherwise. *Shoftstall v. Hollins*, 515 P.2d 590, 592 (Ariz. 1973), affirmed that *students* had a right to public education, not a school district. And *Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Ariz.*, 712 P.2d 914 (Ariz. 1985), addressed a claim where "a considerable number of people suffer[ed] an interference with their use and enjoyment *of land*." *Id.* at 917-18 (emphasis added). Neither case supports the contention that Tucson can bring a public nuisance claim *on its own behalf* involving an interference with *students'* right to education.

Similarly, Defendants oppose instructing the jury regarding an alleged interference with the "comfortable enjoyment of life or property" or "the public peace, the public comfort, or the public convenience" because Tucson has not identified any evidence to support such alleged harms. Indeed, these claims are referenced nowhere in Tucson's complaint, opposition to the motion to dismiss, or for summary judgment.

**Unreasonableness Standard.** Defendants also oppose Tucson's proposed addition to the unreasonableness standard. The parties agreed to the definition of unreasonableness included in the pattern instruction. RAJI (Civil) NUISNST 3 (7th ed.) n.1 ("Reasonableness is assessed using a balancing test, considering 'the utility and reasonableness of the conduct and balanc[ing] these factors against the extent of the harm inflicted and the nature of the affected [area].'") (quoting Restatement (Second) Torts § 821B)). Tucson's additional, alternative definition has no basis in the pattern instructions and would risk confusing the jury by offering two different definitions.

**Defendants' Alleged Conduct Must Interfere With a Public Right.** Defendants also object to Tucson's proposal that the "condition" can be the unreasonable interference with a right common to the general public. The Restatement states explicitly that the defendant's *conduct* must unreasonably interfere with a public right. Restatement (Second) Torts § 821B (factors for evaluating nuisances are "[w]hether the *conduct* involves a significant interference . . . ", "whether the *conduct* is proscribed by a statute . . . ", and "whether the *conduct* is of a continuing nature . . . ." (emphasis added)).

**Finding as to Each Defendant.** Defendants propose clarifying that the jury must find that each of the elements is true for *each* Defendant. That instruction respects the requirement that "the plaintiff has the burden of proving that the conduct of *each defendant* was a cause of the injury." *Piner,* 962 P.2d at 916 (emphasis added) (quoting Restatement (Second) of Torts § 433B); *see also, e.g.*, *Salica,* 231 P.3d at 952 (same). Tucson's proposal to merely reference all "Defendants" together would invite the jury to ignore that requirement. As explained above, under Arizona law, the causation standard for negligence applies equally to nuisance claims. *See* Defendants' Position on Proposed Instruction 25 ("Causation – Generally").

**Protected Conduct.** Defendants also propose specifying that Tucson must show that "Defendants' Non-Protected Conduct" created the alleged public nuisance and that the jury cannot make this determination based on Defendants' Protected Conduct or Defendants' platforms as a whole. As explained in Defendants' briefing regarding the instruction addressing Section 230 and the First Amendment, the jury cannot be permitted to hold Defendants liable for any harms allegedly caused by their Protected Conduct. *See* Defendants' Position on Proposed Instruction 19 ("Protection for Publishing and Expressive Activity"). And referencing that instruction here explains how the general Section 230 and First Amendment instruction applies to the elements of a nuisance claim; failing to do so could invite the jury to hold Defendants liable based on protected conduct. *See* Defendants' Position on Proposed Instruction 20 ("Negligence – Definition").

**Causation Element.** Defendants' proposed language copies the pattern instruction verbatim, and Tucson's proposed addition to the pattern instruction would risk confusing the jury into thinking that an improperly attenuated relationship can show causation.

**Jury Instruction # 22 - P**

**Damages for Public Nuisance±**

*[±Defendants object to this instruction in full. Defendants have proposed edits to the extent this instruction is included over Defendants' objection. Defendants' proposed language is in blue text. Tucson's proposed language is in red text.]*

If you find that Defendants are liable to TUSD on the claim of public nuisance, you must then decide the full amount of money that will reasonably and fairly compensate TUSD for any of the following elements of damage proved by the evidence to have resulted from the nuisance:

1. Harm to the schools;
2. Loss of use of, diversion of, and interference with the schools' operation and resources; and
3. Discomfort and annoyance through disruption to the learning environment at TUSD.

If you find that Defendants are liable to TUSD on the claim of public nuisance, only those damages that have accrued up to the time of the filing of the complaint are recoverable.

AUTHORITY: RAJI (Civil) NUISINST 5 (7th ed.).

RAJI (Civil) NUISINST 7 (7th ed.).

*Teutscher v. Woodson*, 835 F.3d 936, 954 (9th Cir. 2016)

*Garcia v. Sumrall*, 58 Ariz. 526, 533 (1942)

*City of Phoenix v. Johnson*, 51 Ariz. 115, 124-25 (1938)

*City of Tucson v. Apache Motors*, 74 Ariz. 98, 104-06 (1952)

DATE SUBMITTED: January 28, 2026

DATE REVISED: November 23, 2026

**TUCSON'S POSITION ON INSTRUCTION 22:**

Plaintiff's proposed instruction adapts Arizona's pattern instruction on public nuisance damages, with only minor revisions to tailor the pattern instruction to the facts of this case and to insert the parties' names. *See* RAJI (Civil) NUIINST 5 (7th ed.). Defendants have not articulated any reasonable basis for objecting to this instruction, which is relevant and will assist the jury in applying the correct legal framework when assessing damages for Plaintiff's public nuisance claim. TUSD's proposed instructions address the damages for each claim separately. Its proposed Compensatory Damages instruction applies only "[i]f you find for TUSD on its negligence claim." Instruction No. 21. Without this instruction, the jury would receive no guidance on damages for the public nuisance claim.

Instead, Defendants argue that the instruction should not be given "because Tucson has failed to show that it is entitled to any recovery for public nuisance," arguing that nuisance requires harm to property, and that TUSD cannot prove loss of use to schools. TUSD and other Plaintiffs addressed these arguments in their responses to Defendants' Motion to Dismiss and Motion for Summary Judgment, and TUSD incorporates that briefing here. The Court has already rejected the first argument, declining "to impose a land- or product-related limitation on a public nuisance cause of action under the laws of" Arizona. MTD Order, ECF 1332 at 28. Defendants' authorities are not to the contrary. *Graber v. City of Peoria*, 753 P.2d 1209 (Ariz. 1988), involved sewage entering private homes—a private intentional nuisance. *Id.* at 1211. And *Congress Elementary School Dist. No. 17 Yavapai Cnty. v. Warren*, 251 P.3d 395 (Ariz. Ct. App. 2011), did not limit public nuisance to land; it held only that the district had not alleged an interference with a public right. *Id.* at 399 (¶¶ 18–19). Nor does Defendants' abatement argument bear on this instruction, which addresses only legal damages for the jury to award. *See* ECF No. 2728 at 23 & n.14.

This Court should reject Defendants' proposed limitation to only past damages. The hearing statement Defendants quote explained the holding of *Teutscher v. Woodson*, 835 F.3d 936, 954 (9th Cir. 2016), not TUSD's damages theory. More importantly, the Court did not accept the Plaintiffs' argument. School district counsel stated we were arguing for "future damages to compensate for past harm"—i.e., the future cost of repairing harm already done—and separately for abatement as

to future harms. MSJ Hearing Tr., 01/26/26, at 181:20–182:8. However, in addressing the strategic plan created by expert Sharon Hoover—this Court ruled that everything in the plan could be categorized as future damages. *See* ECF No. 2750 at 13 ("The Court agrees that Hoover's plan cannot be used for abatement purposes; however, because the plan ***supports future damages***, her opinions are admissible for that purpose." (emphasis added)). Cases Defendants cite for this limitation simply acknowledge that an ongoing nuisance might be abated—and that a new cause of action may arise if it is not. *See City of Phoenix v. Johnson*, 51 Ariz. 115, 124-25 (1938); *City of Tucson v. Apache Motors*, 74 Ariz. 98, 104-06 (1952). But this is not a case where Defendants can abate the nuisance by fixing a culvert that is flooding, for example. They can only abate the nuisance by providing TUSD with sufficient funds to eliminate it, and this Court has characterized those funds as future damages.

Defendants' authorities are statute-of-limitations rulings that govern how far back damages reach, not whether future or post-filing damages are recoverable. *Garcia v. Sumrall*, 58 Ariz. 526, 533 (1942); *Fix v. Union Pacific Railroad Company*, 982 F. Supp. 2d 1052, 1056 (D. Ariz. 2013). Arizona law permits both: In *Graber*, homeowners recovered for "subsequent injuries from the same source" after filing suit. *Graber*, 753 P.2d at 556.

This Court, therefore, should instruct the jury on Public Nuisance Damages as outlined in TUSD's proposed instruction.

**DEFENDANTS' POSITION ON INSTRUCTION 22:**

**Not Entitled to Public Nuisance.** Tucson is not entitled to any recovery for public nuisance. Tucson has proposed the "Hoover Strategic Plan" to compensate for harm allegedly incurred as a result of the public nuisance. But Tucson has failed to show that it is entitled to recover under that theory.[11] Tucson MSJ at 38. Because Arizona nuisance law does not support Tucson's alleged theory of damages, any instruction as to damages for public nuisance is inappropriate. To the extent Tucson seeks to recover its alleged "lost time" and out-of-pocket compensatory damages based on its public nuisance claim, the proposed compensatory damages instruction is sufficient. *See* Proposed Instruction 36 ("Compensatory Damages"). A separate instruction on damages for Tucson's public nuisance claim could only confuse the jury. And to the extent Tucson seeks an abatement remedy, that determination would be reserved for the Court, not the jury. *See Walnut Creek Manor, LLC v. Mayhew Ctr., LLC*, 2010 WL 653561, at *8 (N.D. Cal. Feb. 22, 2010) (courts decide abatement remedies for nuisance after jury finds a nuisance).

**Improper Expansion.** Even if the court allows Tucson to proceed with its public nuisance claim, Tucson's proposed instruction is improper. Tucson's proposed instruction deviates from the pattern instruction in material ways and improperly expands what is recoverable as damages under a claim for public nuisance. The pattern instruction is explicitly limited to recovering money to compensate for "harm to the *property*," "loss of use of the *property*" and "discomfort and annoyance to [plaintiff] as an *occupant of the property*." RAJI (Civil) NUISINST 5 (7th ed.).(emphasis added). That narrow scope reflects Arizona nuisance law, which has only recognized public nuisance claims that are tied to damage to property. *See, e.g.*, *Graber v. City of Peoria*, 753 P.2d 1209, 1211 (Ariz. Ct. App. 1988) ("[A] nuisance is a condition which represents an unreasonable interference with another person's use and enjoyment of his property and causes damage."); *Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs.,* 712 P.2d 914, 923 (Ariz. 1985) (finding a public nuisance where the use of property to operate a soup kitchen in a residential area "unreasonably and significantly interfere[d] with the public health, safety, peace, comfort, or

[11] Tucson also may not recover the "Hoover Strategic Plan" as abatement, which in any event is not a question for the jury.

convenience”); *see also Congress Elementary School Dist. No. 17 of Yavapai Cnty. v. Warren*, 251 P.3d 395, 399 (Ariz. Ct. App. 2011) (rejecting the plaintiff's argument that the trial court “erred by confining the concept of public nuisance to interference with the use of land); *Brown v. City of Phoenix*, 557 P.3d 321, 328 (Ariz. Ct. App. 2024) (“One who owns land and fails to act to abate a public nuisance originating on that land can be held liable under a public nuisance theory.”) (internal quotation marks omitted). Tucson's proposal ignores this limitation and permits recovery for nebulous and undefined “harm to the schools,” “loss of use of the schools,” and “diversion of” and “interference with” the schools' “operations and resources.” Arizona nuisance law does not support recovery for such alleged harms, divorced from any specific harms to physical property.

**Damages Limitation.** Tucson seeks “backward-looking damages from the jury and forward-looking relief from the court.” MSJ hearing at 186-187. However, where a litigant seeks both compensatory and equitable relief, a court must ensure it “avoid[s] awarding a litigant double recovery for the same harm.” *Teutscher v. Woodson*, 835 F.3d 936, 954 (9th Cir. 2016). Additionally, Arizona limits damages for continuing nuisance suits to those that have accrued at the time of filing. *See* RAJI NUISINST 7; *City of Phoenix v. Johnson*, 51 Ariz. 115, 124-25 (1938); *City of Tucson v. Apache Motors*, 74 Ariz. 98, 104-06 (1952). Accordingly, damages may only be recovered for “all of the statutory period *prior to the commencement of the action*.’” *Fix v. Union Pacific R.R. Co.*, 982 F. Supp. 2d 1052, 1056 (D. Ariz. 2013) (quoting *Garcia v. Sumrall*, 58 Ariz. 526, 533 (1942) (emphasis added)); *see also Vizzetti v. Az. Water Co., Inc.*, 2025 WL 1872144, at *3 (Ariz. App. July 7, 2025) (applying *Garcia* to limit recovery to the statutory period “preceding [the plaintiff's] complaint's filing”); *Two Bros. Distrib. v. Valero Mktg. & Supply Co.*, 2015 WL 7567487, at *4 (D. Ariz. Nov. 25, 2015) (quoting *Garcia*); *Las Ventanas I, LLC v. Ariz. Dep't of Env't Quality*, 2023 WL 1126753, at *3 (Ariz. App. Jan. 31, 2023) (same). If the Court instructs on public nuisance damages, Tucson should not be allowed to recover future damages. That would be the precise type of double recovery the law precludes, and is barred by Arizona's limitation on continuing nuisance damages.

**No Evidentiary Basis.** Tucson's not presented evidence of any loss of use of its schools and public nuisance claims do not extend to alleged diversion of or interference with resources.

**Jury Instruction # 23 - P**

**Burden of Proof±**

*[±Defendants object to this instruction in full. Defendants have proposed edits to the extent this instruction is included over Defendants' objection. Defendants' proposed language is in blue text. Tucson's proposed language is in red text.]*

To establish Defendants' liability, TUSD must prove:

1. Defendants were at fault;
2. TUSD was harmed; and
3. TUSD's damages.

To establish that TUSD is partially responsible for the harm that it suffered, Defendants must prove: TUSD [contributed to causing the harms that TUSD alleges] [was at fault].

It will be your duty to decide the facts. You must decide the facts only from the evidence presented in court. You must not speculate or guess about any fact. You must not be influenced by sympathy or prejudice.

AUTHORITY: RAJI (Civil) FI 7 (7th ed.).

DATE SUBMITTED: January 28, 2026

DATE REVISED: [insert date]

**TUCSON'S POSITION ON INSTRUCTION 23:**

**Instruction is Warranted.** TUSD's proposed instruction is drawn from Arizona's pattern instructions on fault, which are expressly "drafted for negligence claims" and are, therefore, applicable to this case. RAJI (Civil) FI Intro. 1 (7th ed.). Defendants' argument that the instruction duplicates the parties' "Negligence" and "Liability" instructions is belied by the pattern instruction. The pattern instruction includes—within its fault instructions—separate instructions addressing all three subjects. *See* RAJI (Civil) FI 1 (7th ed.) ("Definition of Negligence"); RAJI (Civil) FI 7 (7th ed.) ("Burden of Proof"); RAJI (Civil) FI 8 (7th ed.) ("Statement of Liability Issues"). The preliminary burden-of-proof instructions tell the jury how much proof is required. The Claims and Defenses instruction, while identifying which party bears the burden on each claim and defense, expressly defers the specifics: "Later I will explain the specific legal requirements that the parties must prove for each claim or defense." Instruction No. 2. This instruction provides the promised explanation. Accordingly, TUSD's proposed instruction is warranted.

**"Duty of Jury" Instruction.** Defendants' objection is further undermined by their proposed alternative, which includes language about the jury's duty to decide facts. That language appears nowhere in the relevant pattern instruction. *See* RAJI (Civil) FI 7 (7th ed.). Defendants' proposal unhelpfully reiterates or deviates from the language that the parties have already agreed to use for their "Duty of Jury" instruction, in a way that risks confusing the jury. *See* Ninth Circuit Model Instruction § 1.4; *see also State v. Mott*, 931 P.2d 1046, 1056 (Ariz. 1997) ("A trial court is not required to give a proposed instruction when its substance is adequately covered by other instructions." (internal citations omitted)).

**Comparative Fault Instruction Not Supported by Evidence.** TUSD objects to including an instruction about comparative fault unless and until Defendants demonstrate that the evidence supports instructing the jury about TUSD's alleged negligence. *See supra* [Claims and Defenses]; *see infra* [Comparative Fault].

**"At Fault" vs. "Contributed to Causing Harm."** Defendants' proposed instruction is also improper because it mischaracterizes the showing required to prevail on that defense by

substituting "contributed to causing the harms" for the pattern instruction's "at fault" language. *See infra* [Contributory Negligence/Comparative Fault].

**DEFENDANTS' POSITION ON INSTRUCTION 23:**

**Tucson's Proposed Instruction is Unnecessarily Repetitive and Prejudicial.** "Where other instructions properly inform the jury as to the issues it is not error to refuse requested instructions covering the same subject matter." *Gibbons v. Williams*, 378 P.2d 926, 927-28 (Ariz. 1963) (citing *Johnson v. Orcutt*, 376 P.2d 557 (Ariz. 1963)); ("A trial court . . . does not err in refusing to give a jury instruction that is . . . adequately covered by the other instructions."); *Hing v. Youtsey*, 460 P.2d 646, 651 (Ariz. Ct. App. 1969) (similar). Defendants' proposed Negligence instruction states that, to establish its negligence claim, Tucson must show fault, harm, and damages. *See* Proposed Instruction 20 ("Negligence – Definition"). (Before Tucson removed the elements of a negligence claim, its January proposal also required showing fault, harm, and damages.). The proposed Liability instruction further expands on the issues of fault and comparative fault. *See* Proposed Instruction 28 ("Liability"). And the proposed preliminary instructions explain how to apply the burden of proof. *See* Proposed Instructions 4 ("Burden of Proof – Preponderance of the Evidence"), 5 ("Burden of Proof – Clear and Convincing Evidence"). This additional standalone, generic instruction as to burden of proof is unnecessary and likely to confuse the jury by providing different formulations of the burden of proof. *See Aguilar v. Carpenter*, 399 P.2d 124, 127 (Ariz. Ct. App. 1965) ("[T]he trial court's refusal to give plaintiff's requested instruction on burden of proof was not erroneous" because other instructions "properly instructed the jury on burden of proof."). Including an unnecessarily repetitive instruction could create prejudicial error. As the Arizona Supreme Court cautioned, "[b]ecause of the high regard the jury holds for the trial judge, unnecessary repetition may result in creating the impression that the judge feels a certain way on a particular issue and thereby creates prejudicial error." *Orlando v. Northcutt*, 441 P.2 58, 63 (Ariz. 1968) (citing *Dubreuil v. Gardner*, 409 P.2d 23 (Ariz. 1965); *Bean v. Gorby*, 292 P.2d 199 (Ariz. 1956)).

**If the Instruction is Given, Comparative Fault Should Be Included.** Should the Court decide to include this instruction, Defendants' proposed language addressing comparative fault should also be included. Defendants' comparative fault affirmative defense is properly asserted, and Tucson has not moved to strike it and did not seek summary judgment on that defense. *See*

Defendants' Position on Proposed Instruction 2 ("Claims and Defenses"). Under Arizona law, "[t]he defense of contributory negligence or of assumption of risk is in all cases a question of fact and shall at all times be left to the jury." A.R.S. § 12-2505(A); *see also Franklin v. Clemett*, 382 P.3d 802, 807 (Ariz. Ct. App. 2016) (recognizing defense of contributory negligence). And "[a] trial court must instruct the jury on all valid legal theories framed by the pleadings and supported by substantial evidence." *AMERCO v. Shoen*, 907 P.2d 536, 542 (Ariz. Ct. App. 1995). "When there is any evidence that a plaintiff is contributorily negligent, that issue must be presented to the jury." *Aztlan Lodge No. 1, Free & Accepted Masons of Prescott v. Ruffner*, 745 P.2d 611, 613 (Ariz. Ct. App. 1987). As the Arizona Supreme Court stated, a trial court cannot "deprive[] the parties of their right to have the jurors deal with [a plaintiff's] conduct as they [see] fit." *Williams v. Thude*, 934 P.2d 1349, 1352 (Ariz. 1997).

Defendants' instruction states that Defendants claim that Tucson "contributed to causing the harms that the District alleges," rather than stating that Defendants claim that Tucson "was at fault." This statement would avoid jury confusion by clarifying that Defendants claim that Tucson contributed to its alleged harms, rather than claiming that Tucson is entirely at fault for those harms. That statement comports with the remainder of the pattern instruction on contributory negligence (now referred to by courts as comparative fault), which specifies that if the jury applies this defense, "the court will later reduce" any damages, rather than negating them altogether. *See* RAJI (Civil) FI 19 (7th ed.).

Should any Defendant fail to present any evidence of comparative fault on the part of Tucson at trial, Tucson may object to the inclusion of comparative fault instructions at the close of evidence. However, objecting to the instruction at this point is premature and invades the province of the jury. *See Gunnell v. Ariz. Pub. Serv. Co.*, 46 P.3d 399, 405 (Ariz. 2002) ("[I]n a negligence case, the jury is the sole arbiter of fact and law as to the defenses of contributory and comparative negligence.").

**Jury Instruction # 24 – P**

**Heeding Presumption±**

*[±Defendants object to this instruction in full.]*

TUSD claims that Defendants failed to adequately warn about the risks of their platforms. You may begin with the assumption that if an adequate warning had been given, TUSD, its students, and the parents of those students would have read and followed the warning. If Defendants present evidence to counter that assumption, then you should decide whether TUSD's or Defendants' evidence is more persuasive, based on the preponderance of the evidence standard.

AUTHORITY: RAJI (Civil) PLI 4 (7th ed.);

*Golonka v. Gen. Motors Corp.*, 65 P.3d 956, 967–58 (Ariz. Ct. App. 2003)

*Walsh v. LG Chem Am.*, 2021 WL 5177864, at *5 (D. Ariz. Nov. 8, 2021)

*Clover v. DGL Group Ltd.*, No. CV-23-00153-PHX-KML, 2025 WL 2771057, at *5 (D. Ariz. Sept. 26, 2025).

*Golonka v. Gen. Motors Corp.*, 65 P.3d 956, 967 (Ct. App. 2003)

*Sheehan v. Pima Cnty.*, 660 P.2d 486, 489–90, 490 n.3 (Ariz. Ct. App. 1982)

DATE SUBMITTED: November 23, 2026

DATE REVISED: [insert date]

**TUCSON'S POSITION ON INSTRUCTION 24:**

Arizona law applies a limited heeding presumption in failure-to-warn cases, and this instruction accurately reflects how the heeding presumption shifts the burden of production—but not the burden of proof—to the defendant. As stated in *Golonka v. Gen. Motors Corp.*, 65 P.3d 956 (Ariz. Ct. App. 2003), a heeding presumption "is a rebuttable presumption … to allow the fact-finder to presume that the person injured by product use would have heeded an adequate warning." *Id.* at 967. Later, the court explained that "the heeding presumption serves to shift the burden of production to the manufacturer. The manufacturer meets this burden by introducing evidence that would permit reasonable minds to conclude that the injured party would not have heeded an adequate warning." *Id.* at 971. TUSD's proposed instruction reflects that construct.

There is no major difference in Arizona failure-to-warn law for strict liability and negligence claims, such that this presumption would not apply to a negligent failure-to-warn claim. The main difference is that a negligent failure-to-warn requires that the defendant's conduct fall below the standard of care. *Powers v. Taser Int'l, Inc.*, 174 P.3d 777, 783 (Ariz. Ct. App. 2007), *as corrected* (Jan. 4, 2008). Because the presumption applies to causation, the presumption does not address any element where the strict liability and negligence warnings claims differ.

*Golonka* is a strict liability/information defect case, as are the other cases in Arizona state and federal courts that have recognized this doctrine. *See, e.g.*, *Walsh v. LG Chem Am.*, 2021 WL 5177864, at *5 (D. Ariz. Nov. 8, 2021); *Clover v. DGL Group Ltd.*, No. CV-23-00153-PHX-KML, 2025 WL 2771057, at *5 (D. Ariz. Sept. 26, 2025). But there does not appear to a negligent failure-to-warn case that has rejected the doctrine. And, the policy reasons for applying the doctrine apply equally to negligent failure-to-warn claims. Those policy reasons include: the difficulty in determining how certain plaintiffs would have reacted to a stronger warning; providing "a powerful incentive for manufacturers to abide by their duty to provide adequate warnings"; and, the presumption is often procedurally desirable, in that it prevents speculation by juries. *Golonka*, 65 P.3d at 969. This Court, therefore, should predict that the Arizona Supreme Court would adopt the heeding presumption in a negligent failure-to-warn case, if presented with that question.

Finally, the Court should reject any argument based on leadership counsel's prior

representations in a wholly different context. In arguing six summary judgment motions, counsel reasonably placed the six states into two buckets, including putting Arizona in the bucket without a heeding presumption. (MSJ Hearing Tr., 01/26/26, at 125:3-14.)[12] When dealing with six states, Plaintiffs did not want to burden the Court with unpacking the above-mentioned issue where the presumption has only been expressly applied in strict liability cases, as well as unpacking the difference between a burden of production and a burden of persuasion. But now a single Arizona case is going to trial, and TUSD has a right to a heeding presumption instruction if the law supports it, and TUSD believes that it does.

For these reasons, the Court should give the proposed heeding presumption instruction.

**Duty to warn:** This Court should reject Defendants' argument that they had no duty to warn users, their parents, or school districts about the harm their platforms were causing, as this Court has held, and as explained in Plaintiffs' Omnibus summary judgment response. *See* ECF No. 2533 at 4-5 (citing *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 754 F. Supp. 3d 946, 972–78 (N.D. Cal. 2024)).

**Defendants' evidence:** Defendants' argument that this Court should declare the heeding presumption to be defeated is premature. If Defendants believe they have defeated the presumption, such that the jury should not be instructed on it, then they should raise that issue after the close of evidence and before the jury is instructed. As explained in TUSD's summary judgment response, TUSD has taken significant action to reduce the use of social media in TUSD schools, and it could have eliminated or reduced its damages if Defendants had warned TUSD—as well as its students and their parents—long before TUSD filed its lawsuit. An outright ban is impractical, and enforcement is strained by lack of funding. But TUSD has implemented Yondr pouches, cellphone lockers, and clear-bag policies, among other measures, in recent years. ECF No. 2369 at 13-14.

---

[12] In a subsequent e-mail, Plaintiffs' counsel confirmed to Defendants' counsel that Plaintiffs would withdraw their heeding presumption instruction before the next exchange of briefs regarding jury instructions. But Plaintiffs also stated that they "reserve all rights to advance any arguments consistent with the laws of Arizona … with respect to bellwether Plaintiff[] Tucson." (Jensen e-mail of 01/27/26, attached as Exhibit C.)

**DEFENDANTS' POSITION ON INSTRUCTION 24:**

Defendants object to instructing the jury on a heeding presumption. Tucson's present position departs from its prior representation to the Court that Arizona was among the jurisdictions without an applicable heeding presumption. *See, e.g.*, 1-26-26 H'rg at 125:3-14 (Plaintiffs' counsel explaining to the Court that "the three states that do not have a heeding presumption . . . are South Carolina, Arizona, and Georgia."). Tucson now characterizes that representation as a simplification made for purposes of the six-state summary judgment proceedings. But that explanation is disingenuous: Tucson's previous argument was not that it did not want to "burden the Court" with the complexity of Arizona law; it unequivocally told the Court that the presumption did not apply. In any event, as Tucson previously acknowledged, the heeding presumption under Arizona law is inapplicable for several reasons.

**No Duty to Warn.** First, Defendants have no duty to warn Tucson in the first place. Tucson MSJ at 45–48.

**Heeding Presumption Not Applicable Outside Strict Products Liability.** Second, even where a duty exists, under Arizona law, the "heeding presumption" applies only "in a strict liability information defect case." *Golonka v. Gen. Motors Corp.*, 65 P.3d 956, 967 (Ariz. Ct. App. 2003); *see also, e.g.*, *Walsh v. LG Chem Am.*, 2021 WL 5177864, at *5 (D. Ariz. Nov. 8, 2021); *Clover v. DGL Grp. Ltd.*, 2025 WL 2771057, at *5 (D. Ariz. Sept. 26, 2025). Tucson concedes that none of these decisions applied the presumption to a negligent failure-to-warn claim. The sole pattern instruction addressing this doctrine governs strict liability product defect claims, and Tucson acknowledges it has not identified a single case applying this presumption to negligence or public nuisance claims. *See* RAJI (Civil) PLI 4 (7th ed.).

Notwithstanding the lack of authority, Tucson asks the Court to predict that, because the doctrine concerns causation, the Arizona Supreme Court would expand the heeding presumption doctrine equally to negligence claims if presented with the question. This Court should reject the invitation to "predict" that Arizona courts would adopt Tucson's unprecedented expansion of Arizona law. Indeed, a federal court sitting in diversity addressing state law "should opt for the interpretation [of state common law] that restricts liability, rather than expands it, until the [state's

highest court] decides differently." *Davidson v. Apple, Inc.*, 2017 WL 3149305, at *18 (N.D. Cal. July 25, 2017); *see also* Dkt. No. 601 at 31; Dkt. No. 723 at 26.

Moreover, Tucson's argument overlooks the foundation of the doctrine. *Golonka* did not recognize a generally applicable presumption of causation in every case alleging inadequate warnings. Rather, the court justified the presumption by reference to the policies underlying strict products liability, including deterring manufacturers from placing defective and unreasonably dangerous products into the stream of commerce. 65 P.3d at 968–69. Tucson does not bring a products liability claim, let alone a strict liability one. That strict products liability and negligence claims may share a causation requirement does not establish that an evidentiary presumption recognized in one context also governs the other.

**Tucson Would Not Have Acted Differently.** Third, even if the heeding presumption could apply to Tucson's claims (and it cannot), all record evidence demonstrates that Tucson would not have acted differently if given any warning. *See* Tucson MSJ at 47–48 (demonstrating that even after Tucson filed this lawsuit, it allows students to use cellphones and social media at school, actively uses Defendants' platforms, and has never posted any warning in connection with that use). "The court determines whether the manufacturer has rebutted the [heeding] presumption and, if so, the presumption is destroyed, the existence or non-existence of the presumed fact must be determined as if the presumption had never operated in the case, and the jury is never told of the presumption." *Golonka*, 65 P.3d at 971–72; *see also, e.g.*, *Sheehan v. Pima Cnty.*, 660 P.2d 486, 489 (Ariz. Ct. App. 1982) (explaining that the heeding presumption "disappears entirely upon the introduction of *any* contradicting evidence" (emphasis added)); *Walsh*, 2021 WL 5177864, at *6 (similar); *D'Agnese v. Novartis Pharms. Corp.*, 952 F. Supp. 2d 880, 890–91 (D. Ariz. 2013) (similar). Therefore, if Defendants provide *any* evidence that would permit reasonable minds to believe Tucson would not have heeded an adequate warning—which Defendants have done here—the Court must determine that the presumption is destroyed, and the jury cannot be instructed on the presumption at all.

**Jury Instruction # 25**

**Causation – Generally±**

*[±Defendants object to this instruction and instead request the Court provide one single causation instruction (Instruction #27 – Causation – Harm). In the event that the Court includes this instruction over Defendant's objection, Defendants' proposed language is in blue text. Tucson's proposed language is in red text.]*

Before you can find any [party] [Defendant] at fault, you must find [that party's negligence] [the specific Defendant's Actionable Non-Protected Conduct] was a cause of TUSD's harm. [Negligence] [As used throughout these instructions, "Actionable Non-Protected Conduct" is Non-Protected Conduct that you find (1) breached the Defendant's duty to use ordinary care or (2) substantially and unreasonably interfered with a public right to health or safety.

Actionable Non-Protected Conduct] causes a harm if it helps produce the harm, if the harm would not have happened without the Actionable Non-Protected Conduct, and if it directly caused the harm. There may be more than one cause of a harm.

TUSD asserts that the independent wrongful conduct of each Defendant unites to produce a single indivisible injury. When the independent wrongful conduct of more than one defendant contributes to one indivisible harm, you may find each defendant liable even if it is not possible to determine whether or not the wrongful acts of any particular defendant, acting alone, would have caused the same injury.

Each Defendant can be liable only for harms that you determine were caused by that Defendant's Actionable Non-Protected Conduct.

You may not impose liability based on any harm(s) that you believe may have been caused by the Defendant's Protected Conduct, even if you find that Protected Conduct breached the Defendant's duty to use ordinary care or substantially and unreasonably interfered with a public right to health or safety.

AUTHORITY: RAJI (Civil) FI 6 (7th ed.).

*Piner v. Superior Ct. in and for Cnty. of Maricopa*, 962 P.2d 909, 915–16 (Ariz. 1998 (en banc)

*Salica v. Tucson Heart Hosp.-Carondelet*, 231 P.3d 946, 950 (Ariz. Ct. App. 2010)

*Am. Motorcycle Assn. v. Superior Ct.*, 20 Cal. 3d 578, 588–89 (1978)

*Brown v. City of Phoenix*, 557 P.3d 321, 328 (Ariz. Ct. App. 2024)

DATE SUBMITTED: January 28, 2026

DATE REVISED: November 23, 2026

**TUCSON'S POSITION ON INSTRUCTION 25:**

TUSD's proposed instruction hews closely with Arizona's pattern instruction on causation. *See* RAJI (Civil) FI 6 (7th ed.). TUSD's proposal only differs in that it inserts the parties' names, replaces the word "injury" with "harm," and adds language addressing the indivisible injury rule—as Tucson will present evidence that Defendants all contributed to an indivisible harm.

**Instruction Applies to Negligence Claim Only.** TUSD's proposed instruction reflects the causation standard for negligence claims. *Salica v. Tucson Heart Hosp.-Carondelet, L.L.C.*, 231 P.3d 946, 950 (Ariz. Ct. App. 2010) (defining causation as "that which unbroken by any efficient intervening cause, produces an injury, and without which the injury would not have occurred"). TUSD's proposed instruction No. 22 [Public Nuisance] includes Arizona's causation standard for public nuisance claims. TUSD's instruction is thus necessary to prevent the jury from conflating the causation elements of its negligence and public nuisance claims, and from applying a stricter causation standard to the public nuisance claim than Arizona law requires. *Bradford v. City of Tucson*, 573 P.3d 557, 562 (Ariz. Ct. App. 2025) (explaining that defendants may also be held liable "when its acts 'set in motion a force or chain of events resulting in the invasion'") (quoting *Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Ariz.*, 712 P.2d 914, 920 (1985)).

**Indivisible Injury.** Arizona law recognizes the indivisible injury rule, which eliminates the requirement that a plaintiff prove that its injury would not have happened *but-for* a particular defendant's negligence "when multiple tortfeasors are alleged to have created an indivisible injury and each defendant's causal role is potentially indeterminable." *Salica v. Tucson Heart Hosp.-Carondelet, L.L.C.*, 231 P.3d 946, 950 (Ariz. Ct. App. 2010). In such cases, Arizona requires that a plaintiff prove only that each defendant's actions "were 'a *substantial factor'* in producing the injury." *Id.*; *see also Piner v. Superior Ct. in and for Cnty. of Maricopa*, 962 P.2d 909, 910-11 (Ariz. 1998) (en banc) (emphasis added). Because TUSD will present evidence that Defendants collectively caused an indivisible harm, the substantial factor test governs. Defendants' proposed instruction ignores this standard by directing the jury to apply traditional but-for principles and limit liability to "harm[s that] would not have happened without" a particular Defendant's negligence.

Defendants' objection that the indivisible injury rule "applies only to the apportionment of damages," and that TUSD's instruction "is an improper attempt to reduce TUSD's burden to show causation," rests on a fundamental misunderstanding of the rule and TUSD's proposed language. The indivisible injury rule affects *both* the causation analysis and the jury's calculation of damages. As to causation, the indivisible injury rule replaces the traditional but-for requirement with the substantial factor test, but—as TUSD's proposed language captures—still requires the plaintiff to prove "that the conduct of *each defendant* was a cause of the injury." *Piner*, 962 P.2d at 916 (emphasis added); *see also Salica*, 231 P.3d at 952 (rejecting the argument that "existence of multiple defendants has no impact on plaintiff's burden to prove causation" as "an incorrect statement of the law"). TUSD addresses this standard in greater detail in the following two instructions. *See* [Causation – Substantial Factor]; [Causation – Multiple Causes].

As to damages, the indivisible injury rule requires the jury to "multiply ... the total amount of damage sustained by the plaintiff [by] the percentage of fault of each tortfeasor," and assigns defendants the burden of proving how fault should be apportioned. *Piner*, 962 P.2d at 916 (interpreting Ariz. Rev. Stat. Ann. § 12-2506—Arizona's statute on apportionment); *see also Salica*, 231 P.3d at 953. Tucson addresses this standard through the instruction [Liability – Relative Degrees of Fault].

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence – Definition]; [Protection for Publishing and Expressive Activity].

**DEFENDANTS' POSITION ON INSTRUCTION 25:**

**Redundancy.** Defendants object to this instruction because it is redundant with Defendants' Proposed Instruction 27 – Causation – Harm, and could confuse jurors by articulating a different standard. If the Court rejects Defendants' Instruction 27, Defendants propose this alternative.

**Instruction Applies to Negligence and Nuisance Claims.** Defendants propose properly instructing the jury that the causation standards in this instruction apply to both of Tucson's claims. Under Arizona law, the causation standard outlined in this instruction applies equally to negligence and nuisance claims. *See* Tucson MSJ Reply at 2–3; *see, e.g.*, *Brown v. City of Phoenix*, 557 P.3d 321, 328 (Ariz. Ct. App. 2024) ("[C]ausation is an essential element of a public nuisance claim"); *Thienes v. City Center Exec. Plaza, LLC*, 2016 WL 5219858, at *13 (Ariz. Ct. App. Sept. 22, 2016) (in a case that did not implicate protected conduct, nuisance claim required that defendant created condition that was a "substantial factor" in causing plaintiff's harm).

**Protected Conduct.** Defendants' proposed instruction reflects the Court's prior ruling that Tucson's recovery may not be premised on "protected conduct," and is instead limited to "Actionable Non-Protected Conduct." The jury cannot be permitted to hold Defendants liable for any harms allegedly caused by their Protected Conduct. *See* Defendants' Position on Proposed Instruction 19 ("Protection for Publishing and Expressive Activity"). Referencing these protections again when instructing on the elements of Tucson's claims is warranted to explain to the jury how to apply these highly complex legal concepts to the specific claims and elements. Without such an explanation, there is a serious risk that the jury will hold Defendants liable based on protected conduct. By contrast, Tucson's proposed statement that "Negligence causes a harm if it helps produce the harm" invites that error because it makes no distinction between protected and non-protected conduct. *See* Defendants' Position on Proposed Instructions 19 ("Protection for Publishing and Expressive Activity"), 20 ("Negligence – Definition").

**Single Indivisible Injury.** This proposed jury instruction is the first time Tucson has raised this "single indivisible injury" theory in this case, and it has presented no evidence or argument that its injuries are indivisible (and they are not). But even if the injuries were indivisible, Tucson's discussion of the "single indivisible injury" misstates Arizona law and is an improper attempt to

reduce Tucson's burden to show causation. While Tucson's proposed instruction suggests it need not prove that each Defendant's actionable conduct caused Tucson's injury, that statement is contrary to Arizona law: Tucson bears the "burden of proving that the conduct of *each defendant* was a cause of the injury." *Piner v. Super. Ct.*, 962 P.2d 909, 916 (Ariz. 1998) (emphasis added) (quoting Restatement (Second) of Torts § 433B). Cases addressing the "single indivisible injury" rule, on which Tucson relies, are inapposite because that rule applies only to the apportionment of *damages*, not to the determination of liability. *See id.* at 915 (explaining that damages are apportioned among "each tortfeasor whose conduct caused injury"); *Salica*, 231 P.3d at 952 (same); *Potts v. Litt*, 171 Ariz. 98 (App. 1991) (same); *see also Piner*, 962 P.2d at 916–17 (where one or more defendants is found liable for causing an indivisible harm, the factfinder must "allocate a percentage of fault" to each tortfeasor to determine the apportionment of damages).

Because this doctrine governs only the apportionment of damages among tortfeasors, it in no way abrogates Tucson's threshold burden of establishing that each Defendant is liable for its alleged injuries, including satisfying Arizona's causation requirements. *See, e.g.*, *Piner*, 962 P.2d at 915 ("[E]ach tortfeasor whose *conduct caused the injury* is severally liable only for a percentage of the total damages recoverable by the plaintiff, the percentage based on each actor's allocated share of fault." (emphasis added)); *Cramer v. Starr*, 375 P.3d 69, 73 (Ariz. 2016) (same). Tucson's citation to an out-of-state case is entirely irrelevant. *See Am. Motorcycle Assn. v. Super. Ct.*, 578 P.2d 899 (Cal. 1978) (applying California's joint-and-several liability law to a plaintiff's claim for injuries sustained during a cross-country motorcycle race).

Further, Tucson falsely asserts that where multiple defendants are each found liable for causing an indivisible injury, all of those defendants may be held liable for the whole injury. That claim describes joint and several liability, which the Arizona legislature abolished by statute, replacing it with a system that requires the court to allocate responsibility among all parties who caused the injury, whether or not they are present in the action." *Piner*, 962 P.2d at 915; *see also id.* ("Under the present version of UCATA, 'the liability of each defendant is several only and not joint'").

**Jury Instruction # 26 – P**

**Causation – Multiple Causes±**

*[±Defendants object to this instruction in full. To the extent this instruction is included over Defendants' objection, the parties have proposed competing instructions, and in the alternative Defendants have proposed additional text in blue. Defendants submit this instruction, if given over their objection, should be given after Instruction # 27.]*

**Instruction # 26-P (Plaintiff's Proposed Instruction)**

There can be more than one cause of TUSD's harm. One person's negligence may combine with another factor to cause harm. If you find that Defendants' negligence was a substantial factor in causing TUSD's harm, then that Defendant is liable for the harm. Conduct is not a substantial factor in causing harm if the same harm would have occurred without the conduct. A Defendant cannot avoid responsibility just because some other person, condition, or event was also a substantial factor in causing TUSD's harm.

**Instruction # 26-D (Defendants' Proposed Instruction)**

There can be more than one cause of TUSD's harm. One person's negligence may combine with another factor to cause harm. If you find that a Defendant's Actionable Non-Protected Conduct was the sole, pervasive, or dominant cause of its harm, then that Defendant is liable for the harm. It is not enough for Tucson to show that Actionable Non-Protected Conduct occurred, or that it contributed to or was a factor in the harm.

AUTHORITY: *State v. Aragon in and for Cnty. of Pima*, 505 P.3d 657, 660–61 (Ariz. 2022) (citing Restatement (Second) of Torts § 433 (1965))

*Piner v. Super. Ct. in and for Cnty. of Maricopa*, 962 P.2d 909, 915 (Ariz. 1998) (en banc)

*In re: JUUL Labs, Inc. Mktg., Sales Pracs. and Prods. Liab. Litig.*, 3:19-md-02913-WHO (N.D. Cal.), ECF No. 4006

*A Miner Contracting, Inc. v. Safeco Ins. Co. of Am.*, 2021 WL 4477441, at *4 (Ariz. Ct. App. 2021)

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 922–23, 933–34 (1982); *Democracy Partners, LLC v. O'Keefe*, 188 F.4th 433, 448–49 (D.C. Cir. 2026)

DATE SUBMITTED: January 28, 2026

DATE REVISED: November 23, 2026

**TUCSON'S POSITION ON INSTRUCTION 26:**

Although Arizona's pattern instructions do not explicitly discuss multiple causation, TUSD's proposed instruction is necessary to assist the jury in evaluating causation where, as here, Defendants argue that there were alternative causes to the plaintiff's injury. *Gomez v. Am. Med. Sys. Inc.*, 2021 WL 12313068, at *15 (D. Ariz. June 17, 2021) (granting the defendant's request for a superseding cause instruction because "the facts support giving it," even though it "is not included in the model instructions"); *see also Dupray v. JAI Dining Servs. (Phoenix), Inc.*, 432 P.3d 937, 944-45 (Ariz. Ct. App. 2018) (reversing trial court's refusal to give an intervening and superseding cause instruction where the parties presented evidence of such a cause, and "[t]he trial court's general causation instruction did not address this issue").

TUSD's instruction explains that Defendants cannot escape liability merely by pointing the finger at another cause—whether that be the "poverty," "homelessness," and "gun violence" that Defendants have historically argued to be the source of TUSD's harms, ECF No. 2290 at 1-2—or the "individuals who post dangerous 'challenges' on Defendant's platforms, commit crimes, or post threats on Defendants' platforms," which Defendants insist on including in jury instructions.

Defendants' proposed added sentence should be rejected. It tells the jury that a Defendant's conduct does not count if the same harm would have happened without it. Defendants say this sentence comes from the Restatement, but they leave out part of the rule. The section they cite, Restatement (Second) of Torts § 432(1), begins "[e]xcept as stated in Subsection (2)." Subsection (2) provides that when two causes are each enough on their own to bring about the harm, a defendant's negligence can still be a substantial factor even if the harm would have happened anyway. And, when several actors contribute to one harm, a plaintiff may recover even if the harm would not have happened without any one defendant's conduct. It is enough that each defendant's conduct was a substantial factor. *Salica v. Tucson Heart Hosp.-Carondelet, L.L.C.*, 231 P.3d 946, ¶ 21 (Ariz. Ct. App. 2010). Defendants' sentence would let each Defendant point to the others and claim the harm would have happened anyway—potentially absolving all of them even if they all engaged in behavior that was a substantial factor in causing TUSD's harm.

The Court also should reject Defendants' competing instruction. It contradicts itself: it tells the jury that "[t]here can be more than one cause of TUSD's harm," then permits liability only if a Defendant's conduct was the "sole," "pervasive," or "dominant" cause of the harm. Thus, Defendants open the door to holding more than one Defendant liable, and then slam it shut by creating a test under which only one of them could be held liable. Defendants' instruction also omits the key principle that this instruction espouses—i.e., that a Defendant "cannot avoid responsibility just because some other person, condition, or event was also a substantial factor in causing TUSD's harm." *See Robertson v. Sixpence Inns of Am., Inc.*, 789 P.2d 1040, 1047 (Ariz. 1990) (holding that proximate cause may be found even where a defendant contributes "only a little" to a plaintiff's damages); *Moorer v. Clayton Mfg. Corp.*, 128 Ariz. 565, 568–69 (App. 1981) (affirming instruction that "[a] defendant may not avoid liability by claiming that some other person helped cause the injury"). Defendants' "sole, pervasive, or dominant" standard is wrong for the reasons stated in TUSD's position on Instruction 27.

**DEFENDANTS' POSITION ON INSTRUCTION 26:**

Defendants object to this proposed instruction because it is redundant, unnecessary, and confusing; in any event, Tucson's proposed instruction does not set forth the correct legal test that applies when the conduct at issue may be protected conduct.

**Tucson's Proposed Instruction is Redundant and Unnecessary.** There is no pattern instruction addressing "multiple causes," and there is no need to fashion one here because this concept is already addressed in other instructions. *See* Proposed Instructions 25 ("Causation – Generally"), 28 ("Liability"), and 29 ("Liability – Relative Degrees of Fault"). Both Tucson's and Defendants' proposed Causation - Generally instructions explicitly state that there may be more than one cause of Tucson's harm. *See* Proposed Instruction 25 ("Causation – Generally"). Further, Defendants' Proposed Instructions 28 ("Liability") and 29 ("Liability – Relative Degrees of Fault") clearly state that a finding of fault as to one Defendant does not eliminate the possibility of finding fault as to another Defendant or actor. Taken together, these instructions explain to the jury that multiple factors may contribute to a harm, and fault is to be apportioned among all actors who caused harm. For these reasons, Tucson's proposed standalone instruction on "multiple causes" is, thus, superfluous and unnecessary. *See A Miner Contracting, Inc. v. Safeco Ins. Co. of Am.*, 2021 WL 4477441, at *4 (Ariz. Ct. App. 2021) (rejection of two of plaintiff's requested instructions was not error because "read as a whole, the instructions given" properly addressed the required elements of the claim); *AMERCO*, 907 P.2d at 542–45 (rejecting several proposed instructions as repetitive and stating that "[t]he trial court . . . need not instruct on every refinement suggested by counsel") (quoting *Pioneer Roofing v. Mardian Constr. Co.*, 733 P.2d 652, 659 (Ariz. Ct. App. 1986)); *State v. Hoskins*, 14 P.3d 997, 1015 (Ariz. 2000) (stating the trial court is not required to give a proposed jury instruction if its substance is adequately covered by other instructions and concluding the trial court did not err in omitting a proposed jury instruction because it would have been superfluous in light of other instructions).

**Tucson's Proposed Instruction Would Cause Juror Confusion.** Including this standalone instruction would risk confusing the jury by improperly suggesting that this instruction provides an alternative standard for satisfying the causation element that is separate

and independent of the causation standard proposed by Defendants in Proposed Instruction 27-D ("Causation – Harm") or the alternative in Proposed Instruction 25 ("Causation – Generally").

**No Case Law Supports Giving a Standalone Instruction on "Multiple Causes."** Tucson's cases do not support the inclusion of a standalone "multiple causes" instruction. In *State v. Aragon in and for Cnty. of Pima*, 505 P.3d 657, 660–61 (Ariz. 2022), the Court evaluated whether an "intervening cause" instruction was appropriate. In *Piner*, 962 P.2d 909, the Court addressed the propriety of instructions on apportioning damages and the scope of the indivisible injury rule.

**Heightened Causation Standard.** Tucson's proposed instruction states the incorrect standard for causation. As explained *infra*, Instruction 27-D – Harm, a heightened causation standard applies for cases involving conduct that in part is protected by the First Amendment. Under the U.S. Supreme Court's decision in *Claiborne*, where protected activity contributed to the claimed harm, the plaintiff must prove that unprotected conduct was the "sole[]," "pervasive," or "dominant force" behind the harm. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 922–23, 933–34 (1982); *Democracy Partners, LLC v. O'Keefe*, 188 F.4th 433, 448–49 (D.C. Cir. 2026). Evidence that unprotected conduct "occurred" or "contributed to" the harm is not enough, and if protected activity is the root cause, there is no recovery. *Democracy Partners*, 188 F.4th at 449. Accordingly, applying a substantial factor test for causation "does not comply" with the Supreme Court's decision in *Claiborne* and the First Amendment because it would have allowed full recovery even where protected activity was the predominant cause. *Id.* Put another way, "'[o]nly those losses proximately caused by'" unprotected conduct may "'be recovered.'" *Id.* at 448 (quoting *Claiborne*, 458 U.S. at 918). If the Court instructs on substantial factor, the Court should add Defendant's proposed language because Tucson's definition of substantial factor is incorrect under Arizona law. *See infra*, Instruction 27 – Causation – Harm. Tucson's objections to the applicability of *Claiborne* and *Democracy Partners* miss the mark as explained further in Instruction #27-D – Harm.

**Order**. If the Court determines that this multiple causes instruction should be given, it should be given after Instruction 27 – Causation - Harm, which explains the requirement for the jury to distinguish between protected and non-protected conduct.

**Jury Instruction # 27**

**Causation – Harm±**

*[Defendants propose this instruction as the sole causation instruction. Plaintiff proposes a competing instruction to define substantial factor in other causation instructions.]*

**(1) Instruction # 27-P (Tucson's Proposed Instruction)**

A "substantial factor" in causing is a factor that a reasonable person would consider to have contributed to the harm. To be a "substantial factor," the conduct must be more than a remote or trivial factor. It does not have to be the only cause of the harm. In determining whether conduct is a "substantial factor" in causing harm, you may consider (a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it; (b) whether the Defendant's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which Defendants are not responsible; and (c) lapse of time.

**(2) Instruction # 27-D (Defendants' Proposed Instruction)**

A Defendant's Protected Conduct, as used in these instructions, is defined in Instruction 19-D. All other conduct by a Defendant is a Defendant's "Non-Protected Conduct." "Actionable Non-Protected Conduct" is Non-Protected Conduct that you find (1) breached the Defendant's duty to use ordinary care or (2) substantially and unreasonably interfered with a public right to health or safety.

Tucson may recover damages only for harm caused by a Defendant's Actionable Non-Protected Conduct. You may not award damages for any harm caused by a Defendant's Protected Conduct. This is true even if that Protected Conduct occurred at the same time as, alongside, or as part of the same course of events as Actionable Non-Protected Conduct.

Before you can find any Defendant at fault, you must find the specific Defendant's Actionable Non-Protected Conduct, and not Protected Conduct, was the sole, pervasive, or dominant cause of its harm. It is not enough for Tucson to show that Actionable Non-Protected Conduct occurred, or that it contributed to or was a factor in the harm.

Actionable Non-Protected Conduct is not a cause of harm if the same harm would have

occurred without that conduct.

If you cannot reasonably determine which harm, if any, was caused by Actionable Non-Protected Conduct rather than by Protected Conduct, you may not find that the Defendant caused the harm. You must consider each Defendant separately.

AUTHORITY: *Barrett v. Harris*, 86 P.3d 954, 960–61 (Ariz. Ct. App. 2004) (citing Restatement (Second) of Torts §§ 431, 433 (1965))

*Piner v. Super. Ct. in and for Cnty. of Maricopa*, 192 Ariz. 182, 962 P.2d 909, 915 (Ariz. 1998) (en banc)

*Salica v. Tucson Heart Hosp.-Carondelet, L.L.C.*, 224 Ariz. 414, 418-19, 231 P.3d 946, 950-51 (Ariz Ct. App. 2010)

*Democracy Partners, LLC v. O'Keefe*, 188 F.4th 433, 449 (D.C. Cir. 2026)

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 922, 923, 933, 934 (1982)

DATE SUBMITTED: January 28, 2026

DATE REVISED: November 23, 2026

**TUCSON'S POSITION ON INSTRUCTION 27:**

**Indivisible Injury.** Defendants' proposed instruction suggests that the jury must find each Defendant's conduct to be the but-for cause of TUSD's harm for it to qualify as a "substantial factor." This is legal error. Where, as here, a plaintiff suffered an indivisible injury at the hands of multiple defendants, the substantial factor test requires the plaintiff to prove only that each defendant "contributed to the final result"—not that each defendant's negligence was a "necessary condition for the occurrence of the injury." *Salica v. Tucson Heart Hosp.-Carondelet, L.L.C.*, 231 P.3d 946, 950-52 (Ariz. Ct. App. 2010); *see also Piner v. Superior Ct. in and for Cnty. of Maricopa*, 962 P.2d 909, 916 (Ariz. 1998) (en banc). As TUSD's instruction explains, whether a cause "contributed" to a harm is evaluated under a reasonable person standard. *See* Restatement (Second) of Torts § 431, cmt. a; *see also Barrett v. Harris*, 86 P.3d 954, 961 (Ariz. Ct. App. 2004).

Neither *Barrett* nor Restatement (Second) Torts § 431 Defendants' but-for language in a case involving indivisible harm. As § 431 explains, "[t]he word 'substantial' is used to denote the fact that the defendant's conduct has such an effect in producing the harm *as to lead reasonable men to regard it as a cause*, using that word in the popular sense, ... *rather than* in the so-called 'philosophic sense,' which includes every one of the great number of events without which any happening would not have occurred." Restatement (Second) of Torts § 431, cmt. a. (emphasis added). *Barrett* similarly notes that "'substantial factor' is used to differentiate events that lead to the harm but would not be thought of by *reasonable persons* to have caused the harm." *Barrett*, 86 P.3d at 961 (citing § 431, cmt. a) (emphasis added). To the extent that *Barrett* contains but-for language, that language is inapplicable here; *Barrett* did not involve an indivisible injury and, therefore, it provides no basis for extending but-for principles to this case.

**First Amendment**. Defendants wrongly impose a heightened causation standard. They argue that TUSD must prove that Defendants' conduct "was the sole, pervasive, or dominant cause of its harm." Defendants import this standard from an out-of-circuit defamation case, *Democracy Partners, LLC v. O'Keefe*, 188 F.4th 433 (D.C. Cir. 2026). There, the D.C. Circuit held that the video that caused the plaintiffs' harm was protected speech. It also held that even if there could potentially be claims based on material obtained illegally, there was not enough connection between

the illegally obtained materials and the plaintiffs' damages. *Id.* at 446–49. The court reasoned that "[i]f it is uncontested that protected speech contributed to a damages award, the First Amendment imposes a heightened standard of proof on the plaintiff to show the defendant's unprotected conduct was the proximate cause of his losses." In that situation, the plaintiff must show that the unprotected conduct was the "sole," "pervasive," or "dominant force" causing the harm. *Id.* at 449.

The D.C. Circuit took that language from *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982). *Claiborne* involved a civil-rights boycott carried out mostly through protected speeches, marches, and picketing, though a few participants used violence and threats. *Id.* at 904–11, 916. The Supreme Court held that "[o]nly those losses proximately caused by unlawful conduct may be recovered." *Id.* at 918. "Sole," "pervasive," and "dominant" answered a different question, which was whether the "taint of violence" made the entire boycott unlawful. *Id.* at 933–34. They are not the test for proximate cause. *Id.* at 448–49.

*Democracy Partners* does not bind this Court, and its heightened standard applies only where "it is uncontested that protected speech contributed to a damages award." *Democracy Partners*, 188 F.4th at 449. Nothing is uncontested here. TUSD's claims rest on design features, not protected speech. *See* ECF 2728 at 4–5 (listing actionable design features on Defendants' platforms). Like Section 230, the First Amendment limits the grounds for liability, but it does not require TUSD to prove that content played no causal role. *See* ECF 2728 at 18 ("That the damages evidence does not neatly segregate between the impact of various design features that are actionable or not actionable under Section 230 or the First Amendment does not vitiate the damages claim.").

Defendants are improperly to prevent any possibility that they could all be held liable. With four Defendants, at most one could be the sole, pervasive, or dominant cause, so the instruction would let every Defendant avoid liability by pointing to the others. It also contradicts the parties' agreed statement that "[t]here may be more than one cause of a harm," and Defendants' own proposed statement that "[t]here can be more than one cause of TUSD's harm." *Democracy Partners and Claiborne*, therefore, do not govern here.

**Repeated 230/First Amendment Instruction.** Defendants improperly insert their Section 230/First Amendment defense here. *See supra* [Protection for Publishing and Expressive Activity].

**DEFENDANTS' POSITION ON INSTRUCTION 27:**

Defendants' instruction accurately reflects Arizona law and incorporates the Court's order on protected content. *See* SD Order at 13–14. Because it subsumes General Causation, Instruction 27 should be the sole Causation instruction..

**Protected Conduct.** Defendants' instruction properly recognizes that conduct protected by Section 230 and/or the First Amendment is irrelevant to causation. Tucson's instruction fails to tell the jury that Defendants cannot be liable for harms stemming from protected conduct, a clarification the Court's prior order makes necessary. SD Order at 13–14.

**Heightened Causation Standard.** Defendants' language reflects the heightened causation standard that applies for cases involving protected conduct. Where protected activity contributed to the claimed harm, the plaintiff must prove that unprotected conduct was the "sole[]," "pervasive," or "dominant force" behind the harm. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 922–23, 933–34 (1982); *Democracy Partners, LLC v. O'Keefe*, 188 F.4th 433, 448–49 (D.C. Cir. 2026) (finding substantial factor instruction insufficient in light of *Claiborne*). Evidence that unprotected conduct "occurred" or "contributed to" the harm is not enough. *Democracy Partners*, 188 F.4th at 449. Accordingly, applying a substantial factor test for causation "does not comply" with the Supreme Court's decision in *Claiborne* because it would have allowed full recovery even where protected activity was the predominant cause. *Id.* "'Only those losses proximately caused by'" unprotected conduct may "'be recovered.'" *Id.* at 448.

That standard governs Protected Conduct shielded by Section 230 as well as the First Amendment. *Claiborne* grounded its rule in the principle that federal protection of certain activity limits the state-law damages that may flow from it and drew the analogy to federal statutory preemption. *See* 458 U.S. at 918 (discussing limits on damages under federal labor policy). Section 230 operates the same way. 47 U.S.C. § 230(e)(3).

Tucson argues that *Claiborne* "answered a different question" than the proximate cause standard. But that cannot be reconciled with the opinion: where unprotected "conduct occurs in the context of constitutionally protected activity, . . . 'precision of regulation' is demanded." 458 U.S. at 916–17 (citation omitted). The Court reversed a damages award against organizations found

to have agreed to use violence during boycotts, *id.* at 889–90, 895–97, because, although unprotected activity "formed *part* of the boycott activity" and "*contributed* to its almost complete success," "all business losses were not proximately caused by the violence," *id.* at 921–22. Because unlawful conduct was not the "sole[]," "pervasive," or "dominant force" behind the losses, no damages could be awarded. *Id.* at 922–23, 934. Tucson also insists *Claiborne* and *Democracy Partners* do not apply because its "claims rest on design features, not protected speech." But Tucson has acknowledged that it will not isolate the injuries caused by protected and non-protected conduct—the very issue central to those cases. Pls.' Opp'n to Defs.' Mot. for Summ. J. (Charleston) at 1 (Nov. 7, 2025), Dkt. No. 2373; Pls.' Corrected Omnibus Opp'n to Defs.' Mots. for Summ. J. at 194 (Nov. 21, 2025), Dkt. No. 2480.

**Definition of "Substantial Factor."** While Defendants maintain that the "substantial factor" standard does not apply in light of *Clairborne* and *Democracy Partners*, Tucson's definition of substantial factor is incorrect under Arizona law. Arizona courts have adopted the substantial factor test set forth in the Restatement. *Barrett v. Harris*, 86 P.3d 954, 961 (Ariz. Ct. App. 2004) ("Arizona courts follow the substantial-factor test set forth in Restatement § 431"). Tucson's statement that a substantial factor "is a factor that a reasonable person would consider to have *contributed* to the harm" misstates Arizona law. The substantial factor test asks whether "the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a *cause*," not merely "a contribution." Restatement (Second) of Torts § 431, cmt. a; *Barrett*, 86 P.3d at 961 ("[T]he term 'substantial factor' is used to differentiate events that lead to the harm but would not be thought of by reasonable persons to have caused the harm."). Tucson's instruction improperly alters the meaning of "substantial factor" as set forth in the Restatement and embraced by Arizona courts. The cases cited by Tucson do not support its position. *Salica* states that a plaintiff may recover where multiple defendants "contributed to the final result," but only after clearly establishing that those multiple defendants were negligent. 231 P.3d at 953. *Salica* does not support expanding the meaning of "substantial factor" from conduct that "caused" harm to include conduct that merely "contributed" to the harm. *Piner v. Superior Court*, 962 P.2d 909 (Ariz. 1998), does not discuss the substantial factor test at all.

**Jury Instruction # 28**

**Liability±**

*[±Tucson objects to the inclusion of comparative fault in this instruction. Defendants' proposed language is in blue text.]*

For any Defendant, if you find that the Defendant was not at fault for TUSD's negligence or public nuisance claims, then your verdict must be for that Defendant on that claim or claims.

If you find that any Defendant was at fault for TUSD's negligence or public nuisance claim, then that Defendant is liable to TUSD and your verdict must be for TUSD as to that Defendant on that claim or claims. For each claim, you may find that one or more Defendants is at fault, one or more Defendants is not at fault, that all Defendants are at fault, or that no Defendants are at fault.

If you find that any Defendant was liable on either claim, you should then determine the full amount of TUSD's damages and enter that amount on the verdict form. You should then consider Defendants' claim that TUSD contributed to causing the harms that TUSD alleges.

AUTHORITY: RAJI (Civil) FI 8 (Statement of Liability Issues - Comparative Fault) (7th ed.)

DATE SUBMITTED: January 28, 2026

DATE REVISED: November 23, 2026

**TUCSON'S POSITION ON INSTRUCTION 28:**

The parties' proposed language follows Arizona's pattern instruction on liability where only "one plaintiff and one defendant each claim the other was at fault." *See* RAJI (Civil) FI 8 (7th ed.). The parties revised the pattern instruction to add language regarding liability where more than one Defendant may be at fault, as is the case here. This change is consistent with the drafters' recommendation that the pattern instruction "will need modification if the case involves additional fault claims," such as additional defendants. *Id.*

**Comparative Fault Instruction Not Supported by Evidence.** TUSD objects to including an instruction about comparative fault unless and until Defendants demonstrate that the evidence supports instructing the jury about TUSD's alleged negligence. *See supra* [Claims and Defenses]; *see infra* [Comparative Fault].

**"At Fault" vs. "Contributed to Causing Harm."** Defendants' proposed instruction is also improper because it mischaracterizes the showing required to prevail on that defense by substituting "contributed to causing the harms" for the pattern's "at fault" language. *See infra* [Contributory Negligence/Comparative Fault].

**DEFENDANTS' POSITION ON INSTRUCTION 28:**

**Reference to Comparative Fault.** Defendants' proposed language addressing comparative fault should be included in this instruction. Defendants' comparative fault affirmative defense is properly asserted, and Tucson has not moved to strike it and did not seek summary judgment on that defense. *See* Defendants' Position on Proposed Instruction 2 ("Claims and Defenses"). Under Arizona law, "[t]he defense of contributory negligence or of assumption of risk is in all cases a question of fact and shall at all times be left to the jury." A.R.S. § 12-2505(A); *see also Franklin*, 382 P.3d at 807 (recognizing defense of contributory negligence). And "[a] trial court must instruct the jury on all valid legal theories framed by the pleadings and supported by substantial evidence." *AMERCO*, 907 P.2d at 542. "When there is any evidence that a plaintiff is contributorily negligent, that issue must be presented to the jury." *Aztlan*, 745 P.2d at 613. As the Arizona Supreme Court stated, a trial court cannot "deprive[] the parties of their right to have the jurors deal with [a plaintiff's] conduct as they [see] fit." *Thude*, 934 P.2d at 1352. Should Defendants fail to present any evidence of comparative fault on the part of Tucson at trial, Tucson may object to the inclusion of comparative fault instructions at the close of evidence. However, objecting to the instruction at this point is premature and invades the province of the jury. *See Gunnell*, 46 P.3d at 405 ("[I]n a negligence case, the jury is the sole arbiter of fact and law as to the defenses of contributory and comparative negligence.").

**Referencing Contribution to Harm.** Defendants' instruction states that Defendants claim that Tucson "contributed to causing the harms that the District alleges," rather than stating that Defendants claim that Tucson "was at fault." This statement would avoid jury confusion by clarifying that Defendants claim that Tucson contributed to its alleged harms, rather than claiming that Tucson is entirely at fault for those harms. That statement comports with the remainder of the pattern instruction on contributory negligence, which specifies that if the jury applies this defense, "the court will later reduce" any damages, rather than negating them altogether. *See* RAJI (Civil) FI 12 (7th ed.).

**Jury Instruction # 29**

**Liability – Relative Degrees of Fault**

*[±Defendants' proposed language is in blue text.]*

If you find more than one Defendant at fault for TUSD's harm, you must then determine the relative degrees of fault of all those whom you find to have been at fault.

The relative degrees of fault are to be entered on the verdict form as percentages of the total fault for TUSD's harm.

The fault of one person may be greater or lesser than that of another, but the relative degrees of all fault, including TUSD or any Defendant, must add up to 100%. This will be clear from the verdict form.

AUTHORITY: RAJI (Civil) FI 11 (Determining Relative Degrees of Fault – Comparative Fault) (7th ed.)

DATE SUBMITTED: January 28, 2026

DATE REVISED: November 23, 2026

**TUCSON'S POSITION ON INSTRUCTION 29:**

TUSD's proposed instruction is a near verbatim reproduction of Arizona's pattern instruction on relative degrees of fault, with the only change being the insertion of the parties' names. *See* RAJI (Civil) FI 8 (7th ed.).

**Comparative Fault Instruction Not Supported by Evidence.** TUSD objects to including an instruction about comparative fault unless and until Defendants demonstrate that the evidence supports instructing the jury about TUSD's alleged negligence. *See supra* [Claims and Defenses]; *see infra* [Comparative Fault].

Plaintiff's concern about the language of Defendants' proposal is the use of the phrase "any Defendant," which might suggest to jurors that they must choose. If the Court is inclined to add a clause to the pattern instruction, then TUSD proposes this instruction: "The fault of one party may be greater or lesser than that of another, but the relative degrees of all fault *of any of the parties* must add up to 100%. This will be clear from the verdict form."[13]

[13] The italics show the location of the disputed language for the Court. The instruction would not include any italic text.

**DEFENDANTS' POSITION ON INSTRUCTION 29:**

The Court should apply Defendants' proposed instruction because it is consistent with Arizona state law.

**Reference to Tucson's Comparative Fault.** Including a specific reference to TUSD in the sentence addressing "relative degrees of fault" is necessary to clarify for the jury that a finding of fault by any of the Defendants does not alter the need to factor in TUSD's comparative fault.

As discussed above, Defendants are entitled to have the jury be instructed on comparative fault because they assert comparative fault as a defense. Defendants' comparative fault affirmative defense is properly asserted, and Tucson has not moved to strike it and did not seek summary judgment on that defense. *See* Defendants' Position on Proposed Instruction 2 ("Claims and Defenses"). Under Arizona law, "[t]he defense of contributory negligence or of assumption of risk is in all cases a question of fact and shall at all times be left to the jury." A.R.S. § 12-2505(A); *see also Franklin*, 382 P.3d at 807 (recognizing defense of contributory negligence). And "[a] trial court must instruct the jury on all valid legal theories framed by the pleadings and supported by substantial evidence." *AMERCO*, 907 P.2d at 542. "When there is any evidence that a plaintiff is contributorily negligent, that issue must be presented to the jury." *Aztlan*, 745 P.2d at 613. As the Arizona Supreme Court stated, a trial court cannot "deprive[] the parties of their right to have the jurors deal with [a plaintiff's] conduct as they [see] fit." *Thude*, 934 P.2d at 1352. Should any Defendant fail to present any evidence of comparative fault on the part of Tucson at trial, Tucson may object to the inclusion of comparative fault instructions at the close of evidence. However, objecting to the instruction at this point is premature and invades the province of the jury. *See Gunnell*, 46 P.3d at 405 ("[I]n a negligence case, the jury is the sole arbiter of fact and law as to the defenses of contributory and comparative negligence.").

Defendants' proposed instruction is also consistent with the relevant statute and Arizona caselaw. A.R.S. § 12-2506 requires the trier of fact to determine and apportion "[t]he relative degree of fault of the *claimant*, and the relative degrees of fault of all defendants and nonparties . . . as a whole at one time." A.R.S. § 12-2506(C) (emphasis added); *see also Cramer*, 375 P.3d at 72 ("[T]he trier of fact assesses percentages of fault after considering the fault of *all*

*persons* who contributed to the alleged injury.") (citing A.R.S. § 12–2506(B)) (emphasis added). Defendants' proposal makes it explicitly clear that jurors must consider the relative fault of the claimant in their apportionment. Arizona courts have "repeatedly held" that "the trier of fact must consider the fault of all parties and properly named nonparties in assessing and allocating percentages of fault." *Id.* at 73 (citing *State Farm Ins. Co. v. Premier Manufactured Sys., Inc.*, 172 P.3d 410, 416 (Ariz. 2007) (stating that § 12–2506(F)(2)'s "broad definition of fault" requires the trier of fact "to compare fault among all tortfeasors"); *Dietz v. Gen. Elec. Co.*, 821 P.2d 166, 169, 171 (Ariz. 1991) (observing that under UCATA, the trier of fact must "consider the fault of all persons who contributed to the alleged injury," and each tortfeasor is "responsible for paying for his or her percentage of fault *and no more*") (citing § 12–2506). Specifically naming TUSD is necessary for clarity when the majority of the instructions otherwise ask the jury to consider only the conduct of each Defendant.

**Jury Instruction # 30 – P**

**Unusually Susceptible Plaintiff±**

*[±Defendants object to this instruction in full. Defendants have proposed edits to the extent this instruction is included over Defendants' objection. Defendants' proposed language is in blue text. Tucson's proposed language is in red text.]*

TUSD is not entitled to compensation for any condition that pre-existed the fault of [all Defendants] [any Defendant]. However, if TUSD had any pre-existing condition that was aggravated or made worse by [Defendants'] [a Defendant's] fault, you must decide the full amount of money that will reasonably and fairly compensate TUSD for that aggravation or worsening.

You must decide the full amount of money that will reasonably and fairly compensate TUSD for all damages caused by the fault of [Defendants] [a Defendant], even if TUSD was more susceptible to harm than a typical school district would have been, and even if a typical school district would not have suffered similar harm.

AUTHORITY: RAJI (Civil) PIDI 2 (Pre-Existing Condition, Unusually Susceptible Plaintiff) (7th ed.)

*Gasiorowski v. Hose*, 897 P.2d 678, 685 (Ariz. Ct. App. 1994)

DATE SUBMITTED: January 28, 2026

DATE REVISED: November 23, 2026

**TUCSON'S POSITION ON INSTRUCTION 30:**

**Unusually Susceptible Plaintiff Instruction is Warranted.** TUSD's instruction is the standard Arizona pattern instruction for aggravation or worsening of a pre-existing condition and/or injury to an unusually susceptible plaintiff. *See* RAJI (Civil) PIDI 2 (7th ed.). Defendants intend to excuse their conduct by pointing to what they term "the litany of problems facing [TUSD]"—including students facing poverty and homelessness, students lacking health coverage and access to basic necessities, substance abuse, threats of gun violence, racial segregation, discrimination, racism, racially disparate discipline, and students who are refugees or undocumented—as the alleged true cause of the mental health issues facing TUSD's students. *See, e.g.*, ECF No. 2290 at 1, 3-4 (opening their MSJ brief with references to students' "lack [of] healthcare coverage and access to basic necessities"; the district's "history of racial segregation and discrimination"; and its presence in "one of the most impoverished cities of its size in the nation"). To the extent Defendants are permitted to introduce such evidence, TUSD should be entitled to an instruction that would help the jury to evaluate the relationship between these "conditions" —which are ongoing, variable, outside of TUSD's control, and predate Defendants' conduct—and the harm suffered by TUSD due to Defendants' conduct. *See Gasiorowski v. Hose*, 897 P.2d 678, 685 (Ariz. Ct. App. 1994) (finding an unusually susceptible plaintiff instruction appropriate "to give the jury a proper legal context for evaluating the interplay of predisposing susceptibility and precipitating cause").

Defendants' objection to this instruction takes the narrowest possible view of the established legal principle that defendants must take plaintiffs as they find them, including pre-existing conditions or vulnerabilities. Defendants insist that this instruction applies only in the personal injury context. But the same rationale applies to a plaintiff in any context, particularly where, as here, Defendants will argue to the jury that TUSD's claimed harms were caused or exacerbated by other conditions in the community that affect TUSD and its students. There are no cases finding that the unusually susceptible or "eggshell" plaintiff rule *does not* apply outside of personal injury cases, and there is authority that the rule applies in other contexts. *See, e.g., Colonial Inn Motor Lodge, for Use & Benefit of Cincinnati Ins. Co. v. Gay* 680 N.E.2d 407 (Ill. App. 1997) ("[T]he evidence suggests that a building rather than a person may have had an 'eggshell skull.' That

possibility alone does not foreclose liability for the injury."); Restatement (Second) of Torts § 461 cmt. b ("rule applies not only where a physical injury is unexpectedly increased by the unknown physical peculiarities of the other, but also where an injury to another's pecuniary interests is increased by the unexpected and unknown or unknowable value of the article damaged"); Restatement (Third) of Torts: Phys. & Emot. Harm § 31 cmt. d (2010) (rule applicable to property). Defendants' contrary description of *Colonial Inn*—i.e., that it "did not discuss the 'unusually susceptible' or 'eggshell plaintiff' rule"—is mistaken; the court applied that rule by name. Defendants further argue that TUSD has not identified any pre-existing condition aggravated by Defendants' conduct. But Defendants have, and that is enough. In *Gasiorowski*, the instruction was required even though the defendants "made no effort to prove plaintiff had a predisposing susceptibility," because they "implied such a susceptibility through the testimony" of their expert. *Gasiorowski*, 182 Ariz. at 382–83. Plaintiff's proposed instruction will aid the jury in considering those conditions in the context of Defendants' conduct and TUSD's claimed harms.

**"Defendants" vs. "a Defendant."** Because TUSD alleges an indivisible injury that all Defendants contributed to, instructing the jury to decide damages "caused by the fault of *a* Defendant"—rather than by multiple Defendants—would be misleading and risk suggesting that TUSD must prove each Defendant's specific proportion of fault in aggravating its injury. "The operative fact is simply that the conduct of each defendant was a cause and the result is indivisible damage." *Piner v. Superior Ct.*, 192 Ariz. 182, 189 ¶ 27 (1998). *See supra* [Causation – Substantial Factor].

**DEFENDANTS' POSITION ON INSTRUCTION 30:**

**Unusually Susceptible Plaintiff Instruction Cannot Apply to Entities.** Defendants object to instructing the jury that Defendants may be held liable for "aggravating or worsening" "any pre-existing condition" allegedly experienced by Tucson. The sole pattern instruction addressing this doctrine governs personal injury damages, and Tucson has not identified any authority applying it to an organization or the types of harms at issue in this case. *See* RAJI (Civil) PIDI 2 (7th ed.). The language of that pattern instruction (which Tucson omits from its proposal) confirms that it is limited to personal injuries, as it refers to, for example, "any physical or emotional condition" of the plaintiff and whether the plaintiff "was more susceptible to injury than a normally healthy person would have been." *Id.* An entity like Tucson (as opposed to a person) cannot suffer from a physical or emotional condition, much less one that Defendants' conduct could aggravate or worsen.

Tucson cites only one Arizona case applying this instruction, and the case it cites is a traditional one where the eggshell plaintiff was an individual person in a medical malpractice lawsuit. *See Gasiorowski v. Hose*, 897 P.2d 678 (Ariz. Ct. App. 1995). Tucson does not cite *any* cases like this one, where Tucson seeks to apply the eggshell plaintiff rule to a public entity asserting it suffered injury because of mental health harms to third parties. And Tucson's citation to an inapposite case from Illinois likewise does not support its expansion of the eggshell plaintiff rule. There, the court held that where the defendant hit a building with his car with a "substantial" impact, he may have been a proximate cause of a resulting explosion because there is a known risk "that colliding with a building will disrupt a gas line or create a fire hazard." *Colonial Inn Motor Lodge, for Use & Benefit of Cincinnati Ins. Co. v. Gay*, 680 N.E.2d 407, 415 (Ill. Ct. App. 1997). The case did not discuss the "unusually susceptible" or "eggshell plaintiff" rule, and it did not refer to the plaintiff's building as having any kind of "pre-existing condition."

Moreover, Tucson has not identified any supposed pre-existing condition it possessed or provided any evidence that Defendants aggravated such a condition. Nor has Tucson shown that factors such as poverty could be treated as a preexisting condition even for an individual plaintiff.

Therefore, giving this instruction would improperly extend a narrow doctrine beyond its permissible scope.

**If the Instruction is Given, it Should Not Lump Defendants Together.** If the Court gives any version of this instruction over Defendants' objection, it should reject Tucson's proposed references to the fault of "Defendants" or "Defendants'" fault. Instead, the Court should adopt Defendants' proposed references to the fault of "any Defendant" or "a Defendant's fault." Tucson's proposed language would impermissibly invite the jury to consider the alleged fault of all Defendants together, while Defendants' proposed language would properly require the jury to consider each Defendant's alleged fault individually. To establish liability, "the plaintiff has the burden of proving that the conduct of *each defendant* was a cause of the injury." *Piner,* 962 P.2d at 916 (emphasis added) (quoting Restatement (Second) of Torts § 433B); *see also, e.g.*, *Salica,* 231 P.3d at 952 (same). Accordingly, the use notes of the relevant pattern jury instruction state that "[t]he instruction is drafted for a one-defendant, no comparative fault case. In other cases, replace 'defendant' here with the same language used in Personal Injury Damages Instruction 1 from the '[any] [defendant] [party] [person]' options." RAJI (Civil) PIDI 2 (7th ed.) Use Notes. Defendants' proposal adopts that approach.

**Jury Instruction # 31**

**No Duty to Prevent Harm Caused by Third Parties±**

*[±Tucson objects to this instruction in full. To the extent this instruction is included over Tucson's objection, the parties have proposed competing instructions.]*

**(1) Instruction # 31-P (Tucson's Proposed Instruction)**

The mere fact that a Defendant generally knows that third-party bad actors may use their social media platforms to spread harmful challenges, transmit threats, or engage in crimes, is not, by itself, sufficient to show that Defendants caused TUSD's harm. However, even if a third party is involved in the harm, you may hold Defendants liable for their own conduct, including conduct that foreseeably facilitates harm from third parties.

**(2) Instruction # 31-D (Defendants' Proposed Instruction)**

Defendants do not have a duty to prevent third parties (for example, individuals who post dangerous "challenges" on Defendants' platforms, commit crimes utilizing Defendants' platforms, or post threats on Defendants' platforms) from using their platforms in ways that may cause harm to TUSD or its students.

AUTHORITY: ECF No. 1267 at 26 n.19

*Petolicchio v. Santa Cruz Cnty. Fair & Rodeo Ass'n, Inc.*, 866 P.2d 1342, 1349 (Ariz. 1994) (en banc) ("When a defendant's action increase the foreseeable risk of a particular harm occurring through the conduct of a third party, that defendant is not relieved of liability.")

SD Order (Dkt. 1267) at 26–27 n.19 (noting that allegations relating to "injuries caused by third-party conduct as with dangerous social media challenges, crimes, or threats on defendants' platforms" "have been excluded as a matter of proximate cause," and so "the Court's evaluation of legal duty focuses exclusively on the allegations that focus on defendants' own conduct—fostering compulsive use—and the corresponding

foreseeability of injury to school districts")

DATE SUBMITTED: January 28, 2026

DATE REVISED: November 23, 2026

**TUCSON'S POSITION ON INSTRUCTION 31:**

Plaintiff objects to instructing the jury on harms caused by third parties, but TUSD offers competing language if the Court decides an instruction is necessary.

**Instruction Not Warranted.** It is unlikely that evidence of challenges, crimes, or threats will be introduced at trial, much less play such a substantial role that it would justify a separate jury instruction. Moreover, the scope of the Defendants' duty is a question of law for the Court, and a question the Court has already resolved. *See* ECF No. 1267 at 26 n. 19. Including Defendants' proposed language risks misleading the jury into confusing duty with proximate cause—the question they *are* tasked with answering. If the Court is inclined to include an instruction on third-party conduct, Plaintiff's language more closely adheres to the Court's actual ruling and informs the jury about when it may consider foreseeable third-party misconduct in its determination of proximate cause. *See id.* at 26 ("[Tucson's] allegations are not barred to the extent defendants promoted, developed, or participated in a foreseeably dangerous challenge, beyond the algorithmic publication, curation, or amplification of that third-party challenge.").

**"Foreseeable" vs. "Non-Foreseeable" Third Party Conduct.** If the Court is inclined to give an instruction, it should give TUSD's proposed language. Defendants' proposed instruction is misleading in that it omits any discussion of foreseeability and, thus, presents an incomplete picture of the law. Defendants' instruction creates the false impression that third-party negligence categorically relieves the Defendants from liability, which is inconsistent with both this Court's order and Arizona law. *See* ECF No. 1267 at 25-26. By contrast, and as Plaintiff's proposed instruction makes clear, Arizona law holds a negligent wrongdoer liable for causing foreseeable third-party misconduct. *See Petolicchio v. Santa Cruz Cnty. Fair and Rodeo Ass'n, Inc.*, 866 P.2d 1342, 1349 (Ariz. 1994) ("When a defendant's action increases the foreseeable risk of a particular harm occurring through the conduct of a third party, that defendant is not relieved of liability."). Defendants' objection to the word "including" ignores what follows it: the instruction permits liability only for conduct that "*foreseeably* facilitates harm from third parties."

**DEFENDANTS' POSITION ON INSTRUCTION 31:**

**No Duty Regarding Third Parties.** Defendants' proposed instruction implements the Court's holding that "non-foreseeable third-party conduct"—such as "dangerous challenges, threats, and crimes disseminated or perpetrated on defendants' platforms"—"cannot be attributable to defendants." SD Order at 25–26; *id.* at 26 ("As to any alleged injuries to the school districts stemming from dangerous challenges, threats, and crimes disseminated or perpetrated on defendants' platforms caused by deteriorated youth mental health, those allegations fail proximate causation for a lack of particularized allegations.").

Defendants' proposed instruction tracks the Court's rulings that Defendants cannot be held liable for unforeseeable conduct of third parties. Defendants must be permitted to inform the jury of this legal rule so that they can apply it to the facts at trial. As Defendants explained in their motion for summary judgment, Tucson's witnesses have repeatedly and consistently testified that the District's alleged harms were caused by wrongful third-party conduct, and Tucson's databases of safety and disciplinary incidents show the same. *See* Tucson MSJ at 5–6, 18, 36; Tucson MSJ Reply at 4.

By contrast, Tucson's proposed instruction omits these important limitations and states that the jury "may hold Defendants liable for their own conduct, including conduct that foreseeably facilitates harm from third parties." Tucson's use of the word "including" improperly indicates that Defendants may be held liable for non-foreseeable third-party conduct, contradicting this Court's ruling. SD Order at 25–26.

**Protected Conduct.** Tucson's proposed instruction also provides no basis for the jury to determine which of Defendants' "own conduct" can support liability. This vague suggestion is especially dangerous because it appears to encompass conduct protected under Section 230 and the First Amendment. For example, this language could invite the jury to hold a Defendant liable for the "conduct" of offering a video-sharing platform that third parties used to transmit "dangerous challenges, threats, and crimes," in direct contravention of this Court's ruling. *See id.*

**No Evidentiary Basis.** Finally, Tucson has no evidentiary basis to instruct the jury that it may hold Defendants liable for harms caused by third parties. As Defendants explained in their

motion for summary judgment, Tucson has no evidence that Defendants promoted dangerous challenges on their platforms or that Tucson was damaged by any filter created by a Defendant, so all of Tucson's allegations about misuse of Defendants' platforms are barred as a matter of law by this Court's prior rulings. Tucson MSJ at 19–20; *see* SD Order at 25–26.

**Jury Instruction # 32 – D**

**Comparative Fault±**

*[±Tucson objects to this instruction in full. Tucson has proposed edits to the extent this instruction is included over its objection. Defendants' proposed language is in blue text. Tucson's proposed language is in red text.]*

On Defendants' claim that TUSD [contributed to causing the harms that TUSD alleges] [was at fault, to find that TUSD was comparatively at fault, Defendants must show by a preponderance of the evidence that:

(1) TUSD breached its duty to use reasonable care under the circumstances; and

(2) TUSD's failure to use reasonable care caused the harm it complains of in this lawsuit.]

[Y][y]ou must decide whether Defendants have proved that TUSD was at fault and, under all the circumstances of this case, whether any such fault should reduce TUSD's full damages. These decisions are left to your sole discretion.

If you decide that TUSD's fault should reduce its full damages, the court will later reduce those damages by the percentage of fault you have assigned to TUSD.

AUTHORITY: RAJI (Civil) FI 9 (Plaintiff's Fault – Contributory Negligence) (7th ed.)
A.R.S. § 12-2505
*Dykeman ex rel. Dykeman v. Engelbrecht*, 803 P.2d 119, 121-22 (Ariz. Ct. App. 1990)

DATE SUBMITTED: January 28, 2026
DATE REVISED: November 23, 2026

**TUCSON'S POSITION ON INSTRUCTION 32:**

**Instruction Not Supported by Evidence.** Consistent with Arizona's requirement that an instruction only be given "if there is evidence upon which the jury could rationally sustain the defense," Tucson objects to including an instruction about comparative fault unless and until Defendants present evidence from which a jury could rationally find Tucson to be at fault. *State v. Strayhand*, 184 Ariz. 571, 587-88 (Ariz. Ct. App. 1995); *see supra* [Claims and Defenses].

In arguing otherwise, Defendants rely on myriad cases interpreting Article 18, § 5 of the Arizona Constitution, which states that "[t]he defense of contributory negligence ... shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury." Those cases are inapposite. As the Arizona Court of Appeals held in *Franklin v. Clemett*, 382 P.3d 802 (Ariz. Ct. App. 2016)—a case Defendants cite—"Article 18, § 5 does not guarantee the existence of contributory negligence as a defense." *Id.* at 807 (citing Ariz. Const. art. XVIII, § 5). "Instead, [it] is a procedural guarantee, and prescribes the procedure that must be followed" if the defense "*is permitted to exist*." *Id.* (internal citations omitted) (emphasis in original). Put differently, the provision "does not mean that the trial judge must submit the issue of contributory negligence to the jury where there is *no* evidence from which a reasonable man could find the plaintiff guilty of contributory negligence." *Sax v. Kopelman*, 396 P.2d 17, 18 (Ariz. 1964) (emphasis in original).

Defendants' remaining cases are likewise distinguishable because each involved *some* evidence supporting the defense asserted; none of them eliminate the threshold requirement that Defendants first present evidence sufficient to warrant an instruction on that defense. *See e.g.*, *Aztlan Lodge No. 1, Free & Accepted Masons of Prescott v. Ruffner*, 745 P.2d 611, 613 (Ariz. Ct. App. 1987) (contributory negligence instruction warranted because there was "[s]ubstantial evidence" of the plaintiff's negligence); *Williams v. Thude*, 934 P.2d 1349, 1351 (Ariz. 1997) (contributory negligence instruction warranted because "there is evidence that the plaintiff negligently participated in causing his or her own injuries").

The Court will likely need to make this determination at the close of evidence, but to date Defendants have presented no evidence that would support holding TUSD liable for comparative fault.

**"At Fault" vs. "Contributed to Causing Harm."** If the Court gives a contributory negligence instruction, TUSD's proposed instruction is more faithful to Arizona law. It uses the pattern instruction's "at fault" language and accurately enumerates the elements of comparative fault. *See* RAJI (Civil) FI 9 (7th ed.). By contrast, Defendants' instruction falsely suggests that Defendants need only prove that "Tucson Unified School District *contributed to causing* the harms that [it] alleges" to succeed on their defense. As TUSD's proposed instruction and the pattern charge reflect, Defendants must also prove that "Tucson School District was *at fault,*" in the same way that TUSD must show Defendants were "*at fault*." *See* RAJI (Civil) FI 1 (7th ed.) (emphasis added). Arizona's comparative negligence statute expressly requires that a claimant's fault be "a proximate cause of the injury." A.R.S. § 12-2505; *see also Dykeman ex rel. Dykeman v. Engelbrecht*, 803 P.2d 119, 121-22 (Ariz. Ct. App. 1990) (holding that Arizona's comparative negligence statute abrogated the prior rule that a plaintiff "whose own negligence contributed *in any degree* to his injury" was barred from recovering (emphasis added)). Clearly, a party could contribute to a harm without being negligent, if its actions did not breach the standard of care. Defendants' proposal, therefore, misstates Arizona law and risks misleading the jury into believing that any amount of contribution to TUSD's harm suffices to establish comparative fault, regardless of whether TUSD breached the standard of care. In fact, Defendants' proposal does not mention the duty to use reasonable care in any manner.

**"Comparative Fault" vs. "Contributory Negligence."** Arizona has transitioned from a contributory negligence state to a comparative fault state. *Piner*, 962 P.2d at 914. Given the possibility that a juror may be familiar with these concepts, the name of this instruction should reflect the current state of Arizona law, to avoid confusion.

**DEFENDANTS' POSITION ON INSTRUCTION 32:**

**Defendants are Entitled to an Instruction on Comparative Fault.** As discussed above, Defendants are entitled to have the jury be instructed on comparative fault because they assert comparative fault, also referred to as contributory negligence, as a defense. Defendants' comparative fault affirmative defense is properly asserted, and Tucson has not moved to strike it and did not seek summary judgment on that defense. *See* Defendants' Position on Proposed Instruction 2 ("Claims and Defenses"). Under Arizona law, "[t]he defense of contributory negligence or of assumption of risk is in all cases a question of fact and shall at all times be left to the jury." A.R.S. § 12-2505(A); *see also Franklin,* 382 P.3d at 807 (recognizing defense of contributory negligence). And "[a] trial court must instruct the jury on all valid legal theories framed by the pleadings and supported by substantial evidence." *AMERCO,* 907 P.2d at 542. "When there is any evidence that a plaintiff is contributorily negligent, that issue must be presented to the jury." *Aztlan,* 745 P.2d at 613. As the Arizona Supreme Court stated, a trial court cannot "deprive[] the parties of their right to have the jurors deal with [a plaintiff's] conduct as they [see] fit." *Thude*, 934 P.2d at 1352.

Tucson's objection that Defendants have not demonstrated that the evidence supports such an instruction falls flat at this stage of the proceedings. Because Tucson has not moved to strike this defense or moved for summary judgment on it, Defendants have had no opportunity to present their anticipated evidence in support of the defense. Should Defendants fail to present any evidence of comparative fault on the part of Tucson at trial, Tucson may object to the inclusion of comparative fault instructions at the close of evidence. However, objecting to the instruction at this point is premature and invades the province of the jury. *See Gunnell,* 46 P.3d at 405 ("[I]n a negligence case, the jury is the sole arbiter of fact and law as to the defenses of contributory and comparative negligence.").

In any event, even the limited record that is currently before the Court on this point supports including Defendants' proposed instruction. *See* Tucson MSJ at 47–48 (demonstrating that Tucson allows students to use cellphones and social media at school, actively uses Defendants' platforms to communicate with students, and has never posted any warning in connection with that use).

**Reduction of Damages.** Defendants propose an instruction regarding comparative fault that closely follows the pattern instruction. Defendants' sole proposed modification to the pattern language is to clarify that Defendants claim that Tucson "contributed to causing the harms that [Tucson] alleges," rather than stating that Defendants claim that Tucson "was at fault." *See* RAJI (Civil) FI 10 (7th ed.). This statement would avoid jury confusion by clarifying that Defendants claim that Tucson contributed to its alleged harms, rather than claiming that Tucson is entirely at fault for those harms. That change comports with the pattern instruction on assumption of risk, which specifies that if the jury applies this defense, "the court will later reduce" any damages, rather than eliminating them altogether. *See id.* Plaintiff has offered no authority to support its deviation from the pattern instruction.

**Jury Instruction # 33 - D**

**Mitigation of Damages±**

*[±Tucson objects to this instruction in full. Tucson has proposed edits to the extent this instruction is included over its objection. Defendants' proposed language is in blue text. Tucson's proposed language is in red text.]*

TUSD has a duty to use reasonable efforts to mitigate damages. To mitigate means to avoid or reduce damages. If you decide that one or more Defendants caused harm to TUSD, the District is not entitled to recover damages for harms the District could have avoided with reasonable efforts or expenditures. However, Tucson is not prevented from recovering damages for a particular harm resulting from Defendants' conduct if you determine Defendants intended the harm or were aware of it and recklessly disregarded the harms caused by their conduct, unless Defendants prove that TUSD intentionally or heedlessly failed to protect their own interests.

The Defendants have the burden of proving by a preponderance of the evidence:

First, that TUSD failed to use reasonable efforts to mitigate damages; and

Second, the amount by which damages would have been mitigated.

If you apply the defense of mitigation of damages, the Court will later reduce the TUSD's full damages by the percentage of fault you have assigned to TUSD.

AUTHORITY: Use Notes from RAJI (Civil) NUISINST 7 (Continuing or Permanent Nuisance) (7th ed.) ("The duty to mitigate damages has no application in cases of nuisance.")

*City of Tucson v. Apache Motors*, 74 Ariz. 98, 107, 245 P.2d 255, 261 (1952)

*Graber v. City of Peoria*, 753 P.2d 1209, 1211 (Ariz. Ct. App. 1988)

*United Verde Extension Mining Co. v. Ralston*, 37 Ariz. 554, 296 P. 262 (1931)

Restatement (Second) of Torts § 918

*Cavallo v. Phoenix Health Plans, Inc.*, 518 P.3d 759, 767 (Ariz. 2022)

*Chancellor v. Taylor*, 7112 P.2d 660, 662 (Ariz. Ct. App. 1985)

*Law v. Super. Ct. In and For Maricopa Cnty.*, 755 P.2d 1135, 1142 (Ariz. 1988)

Ninth Circuit Manual of Model Civil Jury Instructions 5.3 (instructing, "The plaintiff has a duty to use reasonable efforts to mitigate damages. To mitigate means to avoid or reduce damages. The defendant has the burden of proving by a preponderance of the evidence: 1. that the plaintiff failed to use reasonable efforts to mitigate damages; and 2. the amount by which damages would have been mitigated.").

DATE SUBMITTED: January 28, 2026

DATE REVISED: November 23, 2026

**TUCSON'S POSITION ON INSTRUCTION 33:**

**Error to Instruct on Mitigation in Nuisance Cases.** Defendants' proposed instruction is contrary to Arizona law. There is no duty to mitigate under Arizona public nuisance law. *See* RAJI (Civil) NUISINST 7 (7th ed.) ("The duty to mitigate damages has no application in cases of nuisance.") (citing *City of Tucson v. Apache Motors*, 245 P.2d 255, 261 (Ariz. 1952)); *see also Graber v. City of Peoria*, 753 P.2d 1209, 1211 (Ariz. Ct. App. 1988). Instructing the jury that Tucson has a duty to mitigate its damages would, therefore, be erroneous. There is also a negligence claim in this case. But at Defendants' insistence, the jury will be instructed not to assign damages twice for the same harms. Thus, it would be extremely confusing for the jury to parse out applying a mitigation defense to the negligence claim but not the nuisance claim. Because the defense does not apply to a nuisance claim, and because there is no way to wholly separate nuisance and negligence damages, the Court should not give a mitigation instruction at all.

Defendants' authorities involve claims for general personal injury and bad faith torts, fact patterns not applicable here. *See Cavallo v. Phoenix Health Plans, Inc.*, 254 Ariz. 99, 107 (2022) (insurance bad faith); *Chancellor v. Taylor*, 147 Ariz. 521, 523 (Ariz. Ct. App. 1985) (car accident); *Law v. Super. Ct. In and For Maricopa Cnty.*, 157 Ariz. 147, 154 (1988) (car accident).

**Instruction Not Supported By Evidence.** Defendants have not cited evidence in the record supporting the instruction—i.e., evidence demonstrating that damages could reasonably have been avoided or reduced but TUSD failed to use reasonable efforts to do so. "Instructions must be based on some theory supportable by the evidence in the case." *Chavez v. Pima County*, 488 P.2d 978, 980 (Ariz. 1971) (en banc); *see also supra* [Claims and Defenses]. Defendants have not identified any damages that (1) could have been mitigated through the use of reasonable care or (2) instances where Tucson failed to use reasonable care. *See Strawberry Water Co. v. Paulsen*, 207 P.3d 654, 664 (Ariz. Ct. App. 2008) (affirming trial court's decision to reject mitigation instruction "as not supported by the evidence").

**Limitations.** Should the Court decide to include this instruction, Defendants' proposal should be revised to be consistent with the authorities Defendants cite. First, although Defendants include language from of Restatement (Second) Torts § 918(1), setting out when an injured party

may not be entitled to recover, they fail to include § 918(2), which is an important limitation on part (1) where, as here, TUSD alleges that Defendants intended, or at least recklessly disregarded, the harm that their conduct caused to TUSD. Similarly, Defendants' proposed instruction fails to explain what Defendants must establish to be entitled to a reduction in damages. If the instruction is given, it should include the applicable limitations to the instruction, plus a description of what Defendants must prove for the instruction to apply—particularly when those hurdles come from the same sources Defendants rely on for the instruction.

**DEFENDANTS' POSITION ON INSTRUCTION 33:**

**Defendants Are Entitled to an Instruction on Mitigation of Damages.** The Court should instruct the jury that Tucson has a duty to use reasonable efforts to mitigate damages in connection with its negligence claim. This is a foundational principle of tort remedies that Arizona courts have consistently applied to negligence claims. *See* Restatement (Second) of Torts § 918 (stating that except in cases of intentional harm, "one injured by the tort of another is not entitled to recover damages for any harm that he could have avoided by the use of reasonable effort or expenditure after commission of a tort"); *Cavallo v. Phoenix Health Plans, Inc.*, 518 P.3d 759, 767 (Ariz. 2022) ("Restatement § 918(1) provides the basis for a proper jury instruction where, as here, a party has allegedly failed to use 'reasonable effort or expenditure after commission of the tort' to avoid harm"); *Law v. Super. Ct. in and for Maricopa Cnty.*, 755 P.2d 1135, 1142 (Ariz. 1988) (applying doctrine to negligence claim); *McCaw v. Ariz. Snowbowl Resort*, 521 P.3d 381, 388 (Ariz. Ct. App. 2022) (same). Tucson has not identified any authority stating that this defense is unavailable in connection with negligence claims, and Arizona courts instruct juries on the duty to mitigate in negligence cases. *See, e.g.*, *Shepard v. Hewitt*, 2011 WL 941269, at *4–5 (Ariz. Ct. App. Mar. 17, 2011). And the fact that Tucson also asserts a public nuisance claim does not obviate the need to correctly instruct the jury on negligence.

Defendants' failure to mitigate affirmative defense is properly asserted, and Tucson has not moved to strike it and did not seek summary judgment on that defense. *See* Defendants' Position on Proposed Instruction 2 ("Claims and Defenses"). And "[a] trial court must instruct the jury on all valid legal theories framed by the pleadings and supported by substantial evidence." *AMERCO,* 907 P.2d at 542.

Tucson's objection that Defendants have not demonstrated that the evidence supports such an instruction falls flat at this stage of the proceedings. Because Tucson has not moved to strike this defense or moved for summary judgment on it, Defendants have had no opportunity to present their anticipated evidence in support of the defense. Should Defendants fail to present any evidence of Tucson's failure to mitigate damages at trial, Tucson may object to the inclusion of the mitigation of damages instructions at the close of evidence. However, objecting to the instruction at this point

is premature and invades the province of the jury. *See Cavallo*, 518 P.3d at 767 (jury must be instructed on mitigation of damages where a defendant "presented evidence and argued at trial" that the plaintiff "could have prevented" some of its damages). In any event, even the limited record that is currently before the Court on this point supports including Defendants' proposed instruction. *See* Tucson MSJ at 47–48 (demonstrating that Tucson allows students to use cellphones and social media at school, actively uses Defendants' platforms to communicate with students, and has never posted any warning in connection with that use).

**Reduction of Damages.** The Court should include Defendants' proposed explanation that if the jury finds Tucson failed to mitigate some extent of its alleged damages, the Court will reduce its total damages by that extent. This explanation would avoid jury confusion by clarifying that the Court will reduce Tucson's damages based on Tucson's failure to mitigate, rather than negating them altogether. This statement aligns with the pattern instruction's treatment of relevantly similar defenses, such as contributory negligence and assumption of risk. *See* RAJI (Civil) FI 9 (7th ed.); RAJI (Civil) FI 10 (7th ed.).

**Exceptions to the Duty to Mitigate.** Defendants oppose Tucson's proposed lengthy addition regarding potential exceptions to the duty to mitigate, as Tucson has not identified any evidence that these exceptions should apply.

**Jury Instruction # 34 – D**

**Assumption of Risk±**

*[±Tucson objects to this instruction in full. Tucson has proposed edits to the extent this instruction is included over its objection. Defendants' proposed language is in blue text. Tucson's proposed language is in red text.]*

Defendants claim that TUSD [contributed to causing the harms that the District alleges] [was at fault] by assuming the risk of injury. A person assumes the risk of injury when he has knowledge of a particular risk, appreciates its magnitude, and voluntarily subjects himself to the risk under circumstances that show his willingness to accept that particular risk.

As to this claim, Defendants must prove:

1. TUSD assumed a particular risk of injury; and
2. The particular risk was a cause of TUSD's injury.

You must decide whether Defendants have proved that TUSD [contributed to causing the harms that the District alleges] [was at fault] by assuming the risk of injury and, under all the circumstances of this case, whether any such fault should reduce TUSD's full damages. These decisions are left to your sole discretion.

If you apply the defense of assumption of risk, the court will later reduce the TUSD's full damages by the percentage of fault you have assigned to TUSD.

AUTHORITY: RAJI (Civil) FI 10 (Plaintiff's Fault – Assumption of Risk) (7th ed.)

DATE SUBMITTED: January 28, 2026

DATE REVISED: November 23, 2026

**TUCSON'S POSITION ON INSTRUCTION 34:**

**Instruction Not Supported by Evidence.** TUSD objects to instructing the jury on assumption of risk because the record is devoid of any evidence supporting the instruction. *See supra* [Claims and Defenses]. To justify an assumption of risk instruction, "there must be some element of acceptance of the defendant's negligence which indicates a willingness on the part of the plaintiff to take his own chances as far as the particular risk created by such negligence." *City of Tucson v. Holliday*, 411 P.2d 183, 190 (Ariz. Ct. App. 1966). Here, Defendants have presented no evidence that Tucson "expressly agree[d] in advance that [Defendants] ... shall not be liable for the consequences of conduct which would otherwise be negligent." *See Hildebrand v. Minyard*, 494 P.2d 1328, 1330 (Ariz. Ct. App. 1972). Nor have Defendants presented any evidence to support an implied assumption of risk theory—i.e., that they warned of the risks of their social media platforms or that Plaintiff had actual knowledge of the risks, appreciated the magnitude of the risks, and voluntarily subjected itself to those risks. *See Chavez v. Pima County*, 488 P.2d 978, 980 (Ariz. 1971) (en banc). On the contrary, the record is clear that TUSD, like millions of others, was ambushed by the significant risks of Defendants' platforms. TUSD did not volunteer to be subject to the wave of addiction and other significant and continuing harms that Defendants' platforms have caused. "Instructions must be based on some theory supportable by the evidence in the case." *Id*. Because the record lacks "substantial evidence from which the jury [could] conclude that" Plaintiff "subjectively had in mind" that it was willing to take its chances as to known risks posed by Defendants' platforms, an assumption of risk instruction is inappropriate. *City of Tucson*, 411 P.2d at 190-91.

To the extent that Defendants seek to instruct the jury that TUSD was somehow at fault for its damages, it must show that TUSD failed to exercise due care and lay out an argument for proximate cause, which the Court can evaluate under those instructions.

**"At Fault" vs. "Contributed to Causing Harm."** Defendants' proposed instruction is improper because it mischaracterizes the showing required to prevail on that defense by substituting "contributed to causing the harms" for the pattern's "at fault" language. *See supra* [Claims and Defenses]; *see supra* [Contributory Negligence/Comparative Fault].

**DEFENDANTS' POSITION ON INSTRUCTION 34:**

**Defendants are Entitled to an Instruction on Assumption of Risk.** Defendants propose an instruction regarding the assumption of risk that closely follows the pattern instruction, and the jury must be instructed "on assumption of the risk" "[i]f there is any evidence to establish such a theory." *Ashford v. Accuwright Indus., Inc.*, 2020 WL 950217, at *6 (Ariz. Ct. App. Feb. 27, 2020) (quoting *Pioneer Roofing Co. v. Mardian Constr. Co.*, 753 P.2d 652, 659 (Ariz. Ct. App. 1986)). Defendants' assumption of risk affirmative defense is properly asserted, and Tucson has not moved to strike it and did not seek summary judgment on that defense. *See* Defendants' Position on Proposed Instruction 2 ("Claims and Defenses"). And "[a] trial court must instruct the jury on all valid legal theories framed by the pleadings and supported by substantial evidence." *AMERCO,* 907 P.2d at 542. Tucson has not identified any authority demonstrating that this instruction should not be given in this case.

Tucson's objection that Defendants have not demonstrated that the evidence supports such an instruction falls flat at this stage of the proceedings. Because Tucson has not moved to strike this defense or moved for summary judgment on it, Defendants have had no opportunity to present their anticipated evidence in support of the defense. Should Defendants fail to present any evidence of Tucson's assumption of risk at trial, Tucson may object to the inclusion of the assumption of risk instruction at the close of evidence. However, objecting to the instruction at this point is premature and invades the province of the jury. *See Shaya v. Petzoldt*, 515 P.2d 1189, 1189–90 (Ariz. Ct. App. 1973) (upholding "jury instruction on assumption of risk" based on "[f]acts introduced at trial"). In any event, even the limited record that is currently before the Court on this point supports including Defendants' proposed instruction. *See* Tucson MSJ at 47–48 (demonstrating that Tucson allows students to use cellphones and social media at school, actively uses Defendants' platforms to communicate with students, and has never posted any warning in connection with that use).

Defendants have already demonstrated that after Tucson was aware of the alleged risks posed to it by Defendants' platforms—including after filing this lawsuit—Tucson voluntarily accepted those risks by not taking available steps to avoid them. *See* Tucson MSJ at 47–48 (noting

that Tucson has not banned possession or use of cellphones on campus). Further, Tucson has made the ongoing choice to maintain accounts on some of Defendants' platforms to engage with its students and their families, voluntarily including Defendants' platforms in the operations of its schools. *Id.* at 48. All this evidence could show that Tucson voluntarily assumed the risks of harm for which it seeks to recover against Defendants. And Defendants may demonstrate at trial that Tucson could have taken the steps outlined by Dr. Hoover and Ms. Shivanonda to avoid those risks after learning about them. *See* Tucson MSJ Opp. at 12–14 (discussing expert report of Dr. Sharon Hoover and testimony of Ms. Julie Shivanonda).

**Reduction of Damages.** Defendants' sole proposed modification to the pattern language is to clarify that Defendants claim that Tucson "contributed to causing the harms that the District alleges," rather than stating that Defendants claim that Tucson "was at fault." *See* RAJI (Civil) FI 10 (7th ed.). This clarification would avoid jury confusion by clarifying that Defendants claim that Tucson contributed to its alleged harms, rather than claiming that Tucson is entirely at fault for those harms. That change comports with the remainder of the pattern instruction, which specifies that if the jury applies this defense, "the court will later reduce" any damages, rather than negating them altogether.

**Jury Instruction # 35**

**Damages**

It is the duty of the Court to instruct you about the measure of damages as to TUSD's negligence and public nuisance claims. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

AUTHORITY: Ninth Circuit Manual of Model Civil Jury Instructions 5.1 (Damages – Proof)

**Jury Instruction # 36**

**Compensatory Damages±**

*[±Tucson objects to the inclusion of comparative fault in this instruction. Defendants' proposed language is in blue text. Tucson's proposed language is in red text.]*

If you find for TUSD on either its negligence claim or public nuisance claims, you must determine TUSD's damages.

TUSD has the burden of proving damages by a preponderance of the evidence. In this case, the School District is seeking compensatory damages. The [goal] [purpose] of compensatory damages is to [put] [make] TUSD [in the same position it would be had Defendants not committed the wrongful conduct.] [whole again, placing it back in the position the District would have been in but for the allegedly Actionable Non-Protected Conduct.]

It is for you to determine what damages, if any, TUSD has proved. [TUSD does not have to provide the exact amount of damages that will provide reasonable compensation for the harm. However, your] [Your] award must be based on evidence and not on speculation, guesswork, or conjecture. A damages award of zero is permissible.

[If you award Tucson damages under either one or both of its claims, you] [You] should not [double the amount of] [award compensatory] damages [simply because there are two claims in this case] [more than once for the same injury.] You must not include in your award of compensatory damages any damages to punish or make an example of Defendants. If you enter an amount of damages for TUSD on the verdict form, you should then consider Defendants' claim that the District contributed to causing the District's injuries.

AUTHORITY: Ninth Circuit Manual of Model Civil Jury Instructions 5.1 (first paragraph only)

*In re: JUUL Labs, Inc. Mktg., Sales Pracs. and Prods. Liab. Litig.*, 3:19-md-02913-WHO (N.D. Cal.), ECF No. 4006

*Phoenix Ry. Co. v. Landis*, 108 P. 247, 248 (Ariz. 1910)(affirming decision

where court charged the jury "it is not necessary on the part of the plaintiff to show the precise money value of the life of the deceased, or the exact amount of damages suffered by the beneficiaries, in order to sustain a recovery for substantial damages")

*Felder v. Physiotherapy Assocs*., 158 P.3d 877, 885 (Ariz. Ct. App. 2007) (citing Restatement (Second) of Torts § 912 (1979))

*Arizona Biltmore Hotel Villas Condominiums Ass'n v. Conlon Grp. Arizona, LLC*, 469 P.3d 463, 470 (Ariz. Ct. App. 2020) ("The Association is entitled to compensatory damages under general tort principles, which aim to place the plaintiff in the position it would have occupied had the defendant not committed the tort.") (citing Restatement (Second) of Torts § 903 cmt. a. (1979))

*Cole v. Gerhart*, 423 P.2d 100, 103 (Ariz. Ct. App. 1967) ("Of course, in computing damages, the trier of fact must not be permitted to allow double recovery.")

*Coury Bros. Ranches v. Ellsworth*, 446 P.2d 458, 464 (Ariz. 1968) ("Proof of the fact of damages must be of a higher order than proof of the amount of damages. Damages that are speculative, remote or uncertain may not form the basis of a judgment. The speculations, guesses or estimates of witnesses form no better basis of recovery than the speculations of the jury themselves." (citations omitted))

DATE SUBMITTED: January 28, 2026

DATE REVISED: November 23, 2026

**TUCSON'S POSITION ON INSTRUCTION 36:**

The parties' proposed instructions differ in seven respects. The Court should give this instruction as TUSD proposes, for the following reasons.

**Ordering:** TUSD proposes that the compensatory damages instruction be given immediately after the instruction on Negligence, as these two instructions work together. Defendants' preferred order has the liability instructions for Negligence and Nuisance long before any instructions on damages. TUSD believes that this is confusing in any circumstance, but it would be particularly confusing if—as TUSD proposes—the Court gives an instruction on damages for nuisance immediately after the Nuisance instruction. In that circumstance, the jury would be instructed on negligence liability, nuisance liability, and nuisance damages … and then would be instructed on negligence damages much later.

**Separate Instructions on Negligence and Public Nuisance.** Tucson proposes separate damages instructions for its negligence and public nuisance claims. This approach is consistent with Arizona's pattern instructions, which provide a standalone instruction for measuring damages on public nuisance claims. RAJI (Civil) NUISINST 5 (7th ed.); *see infra* [Damages for Public Nuisance Instruction]. It is also consistent with Arizona law, which recognizes distinct categories of damages recoverable for nuisance claims. *See Burns v. Jaquays Min. Corp.*, 752 P.2d 28, 32 (Ariz. Ct. App. 1987) (citing Restatement (Second) of Torts § 929 as identifying "the damages one can recover as a result of a nuisance," which includes the "cost of restoration," "loss of use of the land," and "discomfort and annoyance to [the plaintiff] as an occupant"). Defendants have not articulated any bases for departing from the pattern instruction or caselaw.

**Unnecessary to Prove Exact Damages.** TUSD's instruction explains that it need not prove the exact amount of its damages to recover. This is consistent with Arizona law and prevents the jury from assuming TUSD must quantify its losses with greater precision than the law demands. *See Phoenix Ry. Co. v. Landis*, 108 P. 247, 248 (Ariz. 1910) (affirming decision where the jury was instructed that "it is not necessary on the part of the plaintiff to show the precise money value of the life of the deceased, or the exact amount of damages suffered by the beneficiaries, in order to sustain a recovery for substantial damages.").

**Future Damages Instruction is Warranted.** TUSD's instruction on future damages is an accurate statement of Arizona law, which allows a plaintiff to recover future damages if they can be proven with "reasonable certainty." *Felder v. Physiotherapy Assocs.*, 158 P.3d 877, 885 (Ariz. Ct. App. 2007) (citing Restatement (Second) of Torts § 912 (1979)). Defendants' objection that the amount of funding necessary for Dr. Hoover's strategic plan is "speculative and uncertain" is inaccurate and exaggerates the governing standard. Arizona law recognizes that "[f]act-finders have no crystal ball" so that "any award for future damages can only be a reasonable guess." *Smith v. Myers*, 887 P.2d 541, 547 (1994). Accordingly, "[u]ncertainty alone does not justify taking away a party's right to have evidence heard by a jury." *Felder*, 158 P.3d at 886.

**Zero Damages Permissible Language.** Defendants' version instructs the jury that an award of zero damages is permissible. This instruction is unnecessary and risks instructing the jury that its damages award may be untethered from the evidence.

**Comparative Fault Instruction Not Supported by Evidence.** TUSD objects to including an instruction about comparative fault unless and until Defendants demonstrate that the evidence supports instructing the jury about TUSD's alleged negligence. *See supra* [Claims and Defenses]; *see supra* [Comparative Fault].

**Repeated 230/First Amendment Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence – Definition]; [Protection for Publishing and Expressive Activity].

**DEFENDANTS' POSITION ON INSTRUCTION 36:**

**Purpose of Compensatory Damages.** Defendants' instruction explains to the jury that the purpose of compensatory damages is to make the District whole and place it in the position it would have been absent the alleged wrong. This is a well-established principle in tort law and reduces the risk the jury will award compensatory damages for an improper purpose such as punishing Defendants or giving Tucson a windfall. *See Arizona Biltmore Hotel Villas Condominiums Ass'n v. Conlon Grp. Arizona, LLC*, 469 P.3d 463, 470 (Ariz. Ct. App. 2020) ("compensatory damages . . . aim to place the plaintiff in the position it would have occupied had the defendant not committed the tort.") (citing Restatement (Second) of Torts § 903 cmt. a. (1979)).

**Double Recovery.** Defendants' proposed instruction avoids impermissible double recovery. Under Arizona law, Tucson may not recover for the same injury twice, for negligence and again for public nuisance. *See Cole v. Gerhart*, 423 P.2d 100, 103 (Ariz. Ct. App. 1967) ("the trier of fact must not be permitted to allow double recovery."). Tucson's proposed instruction warns jurors that they should "not double the amount of damages simply because there are two claims in this case." But a double recovery instruction is necessary to help jurors understand that Tucson cannot recover twice for the same injury, whether in the same amount or not.

**Evidentiary Basis.** Defendants' proposed instruction instructs the jury that there must be an appropriate evidentiary basis for damages. *See Pompeneo v. Verde Vally Guidance Clinic*, 249 P.3d 1112, 1115 (Ariz. Ct. App. 2011) ("Damages . . . must be supported by admissible evidence.") (citing *Tritschler v. Allstate Ins. Co.*, 144 P.3d 519, 534 (Ariz. Ct. App. 2006); *Earle M. Jorgensen Co. v. Tesmer Mfg. Co.*, 459 P.2d 533, 540 (Ariz. Ct. App. 1969) ("[C]onjecture or speculation cannot provide the basis for an award of damages, and the evidence must make an approximately accurate estimate possible."). By contrast, Tucson improperly suggests that the jury be instructed that Tucson does not need to provide evidence to substantiate its claimed damages. Tucson's only Arizona citation for this addition is an inapposite case from 1910, which in no way supports that claim. The sole issue facing that court was whether an instruction permitting recovery for damages that "the estate has suffered" could lead the jury to inappropriately award double recovery to both

"the estate" and to the deceased's "dependents" or "beneficiaries." *Phoenix Ry. Co. v. Landis*, 108 P. 247, 248–49 (Ariz. 1910).

**Zero Dollars Award.** Defendants' instruction properly reminds the jury that it may award zero dollars in damages. Contrary to Tucson's argument, this statement reminds the jurors that any award of damages must be directly tethered to the evidence: if Tucson fails to proffer sufficient evidence of damages on either of its claims, the award of damages on that claim must be zero.

**Instruction Applicable to Negligence and Nuisance Claims.** Defendants' proposal properly instructs that the standard for compensatory damages is the same for Tucson's negligence and public nuisance claims. *See* Model Instructions 5.1 ("Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant"); RAJI NUISINST 5 ("[Y]ou must . . . decide the full amount of money that will reasonably and fairly compensate [the] [plaintiff . . . .]"). For the reasons noted below, Tucson's proposed standalone instruction on damages for public nuisance is improper. Tucson is incorrect that it seeks "distinct categories of damages" for its negligence and nuisance claims. It seeks "lost time" damages, out-of-pocket damages, and funding for the Hoover plan for both claims.

**Future Damages.** Defendants object to instructing the jury about future damages because Dr. Hoover's strategic plan, the only "future damages" for which Tucson seeks funding,, is not proper future damages. Tucson MSJ at 43; see *Coury Bros. Ranches, Inc. v. Ellsworth*, 446 P.2d 458, 464 (Ariz. 1968) ("Damages that are speculative, remote or uncertain may not form the basis of a judgment"). Tucson's proposed instruction also impermissibly seeks recovery for alleviating "negative impacts" of Defendants' conduct, which is not tied to a concrete economic loss that can be measured with "reasonably certainty." *See Gilmore v. Cohen*, 386 P.2d 81, 82 (Ariz. 1963).

**Comparative Fault.** Defendants have properly asserted a comparative fault affirmative defense. Tucson has not moved to strike it and did not seek summary judgment on that defense. *See* Defendants' Proposed Instructions 2 ("Claims and Defenses"), 30 ("Comparative Fault").

**Order**. Defendants' proposed sequence allows the jury to consider the elements of Tucson's liability theories before addressing damages.

**Jury Instruction # 37 – P**

**Punitive Damages±**

*[±Defendants object to this instruction in full. Defendants have proposed edits to the extent this instruction is included over Defendants' objection. Defendants' proposed language is in blue text. Tucson's proposed language is in red text.]*

If you find [Defendants] [a Defendant] liable for TUSD's damages, you may, but are not required to, assess additional damages to punish [Defendants] [that Defendant] or to deter [Defendants] [that Defendant] and others from similar misconduct in the future. Such damages are called "punitive damages." Punitive damages may not be awarded to compensate a plaintiff.

To recover punitive damages, TUSD must prove by clear and convincing evidence that:

1. The [Defendants'] [Defendant's] misconduct was intended to cause harm, or
2. The [Defendants'] [Defendant's] misconduct was motivated by spite or ill will[;] [,] or
3. The [Defendants'] [Defendant's] misconduct was
    a. Outrageous, oppressive, or intolerable, and
    b. The [Defendants] [Defendant] knew or intentionally disregarded that [their] [its] conduct created a substantial risk of serious harm to others.

You may not award punitive damages to punish any Defendant for Protected Conduct or for the development of the Defendant's platform as a whole.

If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice, or sympathy toward any party.

In considering the amount of any punitive damages, consider the degree of reprehensibility of the defendant's conduct, including whether the conduct that harmed the plaintiff was particularly reprehensible because it also caused actual harm or posed a substantial risk of harm to people who are not parties to this case. You may not, however, set the amount of any punitive damages in order to punish the defendant for harm to anyone other than the plaintiff in this case.

You may impose punitive damages against one or more of the Defendants and not others and may award different amounts against different Defendants.

AUTHORITY: RAJI (Civil) PIDI 4 (Punitive Damages) (7th ed.)

*Swift Transp. Co. of Ariz. L.L.C. v. Carman*, 515 P.3d 685, 692 (Ariz. 2022).

Ninth Cir. Model Instructions, Instruction No. 5.5

*Volz v. Coleman Co.*, 748 P.2d 1191, 1194 (Ariz. 1987)

*Piner v. Superior Ct. In & For Cnty. of Maricopa*, 192 Ariz. 182, 189 (1998)

DATE SUBMITTED: January 28, 2026

DATE REVISED: November 23, 2026

**TUCSON'S POSITION ON INSTRUCTION 37:**

Plaintiff's proposed instruction tracks Arizona pattern's instruction on punitive damages. *See* RAJI (Civil) PIDI 4 (7th ed.). The instruction is warranted here. TUSD will introduce evidence from which a jury could reasonably find that Defendants engaged in conduct that was willful, outrageous, and in deliberate disregard of its effects. *See Swift Transp. Co. of Ariz. L.L.C. v. Carman*, 515 P.3d 685, 688 (Ariz. 2022) (in a negligence case, a plaintiff must establish a reasonable likelihood that a punitive damages claim will be submitted to the jury to make a prima facie case for punitive damages). Defendants' contention that the evidence will not meet that standard is a sufficiency question to be decided on the trial record, not a reason to reject the instruction now. *See Thompson v. Better-Bilt Aluminum Prods. Co.*, 171 Ariz. 550, 558 ¶ 10, (1992) (punitive damages claim may go to the jury "if a reasonable jury could find the requisite evil mind by clear and convincing evidence").

**Damages Not to Compensate.** Defendants' instruction states that punitive damages cannot be awarded for the purpose of compensating a plaintiff. This is duplicative and risks juror confusion, since compensatory damages are available in this case and addressed in a separate instruction. *See supra* [Compensatory Damages].

**"Bias, Prejudice, or Sympathy."** Defendants' instruction also directs the jury not to use "bias, prejudice, or sympathy" when determining the amount of punitive damages to award. This language is duplicative of the preliminary instructions, which already caution the jury that they "must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy." *See supra* [Duty of Jury]. Repeating that directive here is unnecessary and risks suggesting that punitive damages warrant special scrutiny, which will prejudice TUSD.

Plaintiff also does not agree to the paragraph about using reason to set the amount without bias, prejudice, or sympathy toward any party because it is vague and does not assist the jury in any meaningful way. The two paragraphs that follow, each proposed by Defendant and each accepted by Plaintiff with only minor revisions, provide a clearer and more appropriate framework for the jury to use in determining a punitive damages award.

**"Defendants" vs. "a Defendant."** Because TUSD alleges an indivisible injury that all Defendants contributed to, instructing the jury to decide damages "caused by the fault of *a* Defendant"—rather than by multiple Defendants—would be misleading and risk suggesting that TUSD must prove each Defendant's specific proportion of fault for its conduct warranting punitive damages. *See supra* [Causation – Substantial Factor]. The last sentence in the instruction, which was proposed by Defendants, clarifies that the jury may impose punitive damages against different defendants in different amounts.

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence – Definition]; [Protection for Publishing and Expressive Activity].

**DEFENDANTS' POSITION ON INSTRUCTION 37:**

**There is No Basis for a Punitive Damages Instruction.** Defendants object to Tucson's proposed instruction on punitive damages because it is not supported by the evidence. Arizona courts have "expressly rejected awarding punitive damages based on gross negligence or mere reckless disregard of the circumstances." *Volz v. Coleman Co.*, 748 P.2d 1191, 1194 (Ariz. 1987) (en banc) (citing *Linthicum v. Nationwide Life Ins. Co.*, 723 P.2d 675, 680 (Ariz. 1986); *Gurule v. Illinois Mut. Life and Cas. Co.*, 734 P.2d 85, 88 (Ariz. 1987)). The standard for punitive damages requires a showing of "the evil mind, which is satisfied by evidence 'that defendant's wrongful conduct was motivated by spite, actual malice, or intent to defraud' or defendant's 'conscious and deliberate disregard of the interest and rights of others.'" *Volz*, 748 P. 2d at 1194. To support an instruction on punitive damages, a plaintiff must provide evidence demonstrating "outrageous conduct" on the part of the defendant. *Id.* (quoting *Thomas v. American Cystoscope Makers, Inc.*, 414 F. Supp. 255, 267 (E.D. Pa. 1976)). Tucson's proposed instruction is impermissible because there is no evidence that the conduct of any Defendant was "outrageous" or that any Defendant acted with conscious or deliberate disregard of the interest and rights of others.

If the Court gives any version of this instruction, it should adopt Defendants' version, which includes language directly from the pattern instruction that explains to the jury how to assess whether there is a basis for punitive damages. Tucson has provided no justification for excluding those factors a jury should use to assess "the degree of reprehensibility." Defendants' additional revisions include several important edits and additions to more accurately reflect Arizona law and to avoid juror confusion.

**Finding as to Each Defendant.** Defendants propose clarifying that the jury must evaluate liability and award of damages as to each Defendant, as opposed to all Defendants collectively. That instruction respects the requirement that "the plaintiff has the burden of proving that the conduct of *each defendant* was a cause of the injury." *Piner,* 962 P.2d at 916 (emphasis added) (quoting Restatement (Second) of Torts § 433B); *see also, e.g.*, *Salica,* 231 P.3d at 952 (same). The instruction also respects the requirement that "each defendant is liable only for the amount of damages allocated to that defendant in direct proportion to that defendant's percentage of fault."

*Cramer,* 375 P.3d at 72*; Dietz,* 821 P.2d at 167. Tucson's proposal to merely reference all "Defendants" together would invite the jury to ignore these requirements. Jurors must be informed that they may award punitive damages to some, but not all defendants.

**Punitive Damages May Not Be Awarded to Compensate.** Defendants' revisions clarify, consistent with Arizona law, that punitive damages may not be awarded to compensate a plaintiff. *See, e.g.*, *Wyatt v. Wehmueller*, 806 P.2d 870, 874 (Ariz. 1991) ("Well-settled doctrine holds that punitive damages are non-compensatory in nature and therefore are not designed to compensate for any actual injury."); *see also City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266–67 (1981) ("Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct."); *International Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 48 (1979) ("Punitive damages 'are not compensation for injury. Instead, they are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence.'" (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974)).

**Protected Conduct.** Defendants' proposed language states that punitive damages may not be awarded to "punish" for harm incurred as a result of protected conduct; this is necessary to mitigate the risk of a jury inappropriately awarding punitive damages for conduct that this Court has already held cannot form the basis of liability. *See, e.g.*, *BMW of N. Am. v. Gore*, 517 U.S. 559 (1996) (reducing punitive damage award where an Alabama jury inappropriately considered conduct of defendant that was permissible under the law of other states); *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 409 (2000) (a state "cannot punish a defendant for conduct that may have been lawful where it occurred.").

**Use of Reason.** The statement in Defendants' proposed instruction that "reason" must be used in setting the amount of punitive damages is pulled directly from the Ninth Circuit Model Instruction governing punitive damages. Ninth Circuit Model Instructions 5.5. This statement is also necessary to mitigate the risk of the jury awarding excessive punitive damages. Defendants also reserve all rights to bifurcate where a trial on the merits and a finding of liability is a condition precedent to a proceeding on punitive damages.

**Jury Instruction # 38 – P**

**Punitive Damages – Burden of Proof±**

*[±Defendants object to this instruction in full.]*

An award of punitive damages requires proof by clear and convincing evidence.

A party who has the burden of proof by clear and convincing evidence must persuade you by the evidence that the claim is highly probable. This standard is more exacting than the standard of more likely true than not true, but is less exacting than the standard of proof beyond a reasonable doubt.

You are to use the standard of more likely true than not true for all claims in this case except for those on which you are specifically instructed that the burden of proof is the standard of clear and convincing evidence.

In determining whether a party has met any burden of proof, you will consider all the evidence, whether presented by TUSD or Defendants.

AUTHORITY: RAJI (Civil) Standard 3 (Burden of Proof – Clear and Convincing) (7th ed.)

DATE SUBMITTED: January 28, 2026

DATE REVISED: November 23, 2026

**TUCSON'S POSITION ON INSTRUCTION 38:**

The parties agree on the language of this instruction if the Court instructs on punitive damages, which it should. *See supra* [Punitive Damages]; *see also* RAJI (Civil) PIDI (7th ed.), n.1 (explaining this instruction should be given with any punitive damages instruction).

**DEFENDANTS' POSITION ON INSTRUCTION 38:**

Defendants object to Tucson's proposed instruction on Punitive Damages – Burden of Proof because Tucson is not entitled to an instruction on Punitive Damages. Arizona courts have "expressly rejected awarding punitive damages based on gross negligence or mere reckless disregard of the circumstances." *Volz,* 748 P.2d at 1194 (en banc) (citing *Linthicum*, 723 P.2d at 680; *Gurule,* 734 P.2d at 88. The standard for punitive damages requires a showing of "the evil mind, which is satisfied by evidence 'that defendant's wrongful conduct was motivated by spite, actual malice, or intent to defraud' or defendant's 'conscious and deliberate disregard of the interest and rights of others.'" *Volz*, 748 P.2d at 1194. To support an instruction on punitive damages, a plaintiff must provide evidence demonstrating "outrageous conduct" on the part of the defendant. *Id.* (quoting *Thomas v. American Cystoscope Makers, Inc.*, 414 F. Supp. 255, 267 (E.D. Pa. 1976)). Tucson's proposed instruction is impermissible because there is no evidence that the conduct of any Defendant was "outrageous" or that any Defendant acted with conscious or deliberate disregard of the interest and rights of others.

Should the Court instruct on punitive damages over Defendants' objection, Defendants do not object to the language in Tucson's Proposed Instruction on Punitive Damages – Burden of Proof.

**STOP**
**(CLOSING ARGUMENTS)**

## III. POST-CLOSING INSTRUCTIONS

**Jury Instruction # 39**

**Duty to Deliberate**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

AUTHORITY: Ninth Cir. Model Instructions, Instruction No. 3.1.

DATE SUBMITTED: January 28, 2026

DATE REVISED: [insert date]

**Jury Instruction # 40**

**Consideration of Evidence**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media.

This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may

be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the court immediately.

AUTHORITY: Ninth Cir. Model Instructions, Instruction No. 3.2.

DATE SUBMITTED: January 28, 2026

DATE REVISED: [insert date]

**Jury Instruction # 41**

**Communications with Court**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Courtroom Deputy, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

AUTHORITY: Ninth Cir. Model Instructions, Instruction No. 3.3.

DATE SUBMITTED: January 28, 2026

DATE REVISED: [insert date]

**Jury Instruction # 42**

**Return of Verdict**

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the Courtroom Deputy that you are ready to return to the courtroom.

AUTHORITY: Ninth Cir. Model Instructions, Instruction No. 3.5.

DATE SUBMITTED: January 28, 2026

DATE REVISED: [insert date]

DATED: November 23, 2026

Respectfully submitted,

MUNGER, TOLLES & OLSON LLP

By: *_/s/ Jonathan H. Blavin_*

JONATHAN H. BLAVIN (State Bar No. 230269)
Jonathan.Blavin@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel: (415) 512-4000

E. MARTIN ESTRADA (SBN 223802)
Martin.Estrada@mto.com
L. ASHLEY AULL (SBN 257020)
Ashley.Aull@mto.com
VICTORIA A. DEGTYAREVA (State Bar No. 284199)
Victoria.Degtyareva@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel.: (213) 683-9100

ALLISON BROWN (*pro hac vice)*
alli.brown@kirkland.com
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Tel.: (215) 268-5000

JESSICA DAVIDSON (*pro hac vice)*
jessica.davidson@kirkland.com
JOHN J. NOLAN (*pro hac vice)*
jack.nolan@kirkland.com
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800

*Attorneys for Defendant Snap Inc.*

*/s/ Ashley W. Hardin*

ASHLEY W. HARDIN (*pro hac vice)*
ahardin@wc.com
J. ANDREW KEYES (*pro hac vice)*
akeyes@wc.com
NEELUM J. WADHWANI (SBN 247948)
nwadhwani@wc.com
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue, SW
Washington, DC 20024
Tel.: (202) 434-5000

*Attorneys for Defendants YouTube, LLC and Google LLC*

*/s/ Christian J. Pistilli*

ASHLEY M. SIMONSEN (State Bar No. 275203)
asimonsen@cov.com
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800

PHYLLIS A. JONES (*pro hac vice*)
pajones@cov.com
PAUL W. SCHMIDT (*pro hac vice*)
pschmidt@cov.com
CHRISTIAN J. PISTILLI (*pro hac vice*)
cpistilli@cov.com
**COVINGTON & BURLING LLP**
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Tel.: (202) 662-6000

*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; and Instagram, LLC*

/s/ David P. Mattern
GEOFFREY M. DRAKE (*pro hac vice)*
gdrake@kslaw.com
TACARA D. HARRIS (*pro hac vice)*
tharris@kslaw.com
**KING & SPALDING LLP**
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel.: (404) 572-4600

DAVID P. MATTERN (*pro hac vice)*
dmattern@kslaw.com
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW, Suite 900
Washington, D.C. 20006
Tel.: (202) 737-0500

BAILEY J. LANGNER (State Bar No. 307753)
*blangner@kslaw.com*
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, CA 94111
Tel.: (415) 318-1200

/s/ Daniel M. Petrocelli
DANIEL M. PETROCELLI (SB #97802)
dpetrocelli@omm.com
SABRINA H. STRONG (SB #200292)
sstrong@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 553-6700

STEPHEN D. BRODY (*pro hac vice*)
sbrody@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006
Telephone: (202) 383-5300

*Attorneys for Defendants*
*TikTok Inc., ByteDance Inc., TikTok Ltd., ByteDance Ltd., and TikTok LLC*

*/s/ Thomas P. Cartmell*
Thomas P. Cartmell (*pro hac vice*)
Jonathan P. Kieffer (*pro hac vice*)
Austin Brane, SBN 286227
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel: (816) 701-1100
tcartmell@wcllp.com
jpkieffer@wcllp.com
abrane@wcllp.com

Kirk J. Goza (*pro hac vice*)
Brad Honnold (*pro hac vice*)
**GOZA & HONNOLD LLC**
9500 Nall Ave., Ste 400
Overland Park, KS 66207
Tel. (913) 451-3433
kgoza@gohonlaw.com
bhonnold@gohonlaw.com

Joseph G. VanZandt (*pro hac vice*)
Davis Vaughn (*pro hac vice*)
Jennifer Emmel (*pro hac vice*)
Clinton Richardson (*pro hac vice*)
Seth Harding (*pro hac vice*)
**BEASLEY ALLEN CROW**
**METHVIN PORTIS & MILES, LLC**
234 Commerce Street
Montgomery, AL 36103
Tel: 334-269-2343
Joseph.VanZandt@BeasleyAllen.com
Davis.Vaughn@BeasleyAllen.com
Jennifer.Emmel@BeasleyAllen.com
Clinton.Richardson@BeasleyAllen.com
Seth.Harding@BeasleyAllen.com

*Counsel for Plaintiffs*

LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

*Co-Lead Counsel*

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

*Co-Lead Counsel*

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

*Co-chair School District Committee*
*Plaintiffs' Steering Committee Leadership*

MELISSA YEATES
**KESSLER TOPAZ MELTZER & CHECK LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com

*Co-chair School District Committee*
*Plaintiffs' Steering Committee Leadership*

ANDRE M. MURA
**GIBBS MURA LLP**
1111 Broadway, Suite 2100
Oakland, CA 94612
Telephone: 510-350-9717
amm@classlawgroup.com

*Plaintiffs' Steering Committee Leadership*

**ATTESTATION**

I, Jonathan H. Blavin, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: November 23, 2026

*/s/ Jonathan H. Blavin*